UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE: ZANTAC (RANITIDINE)            MDL NO. 2924
PRODUCTS LIABILITY                 20-MD-2924
LITIGATION

JUDGE ROBIN L. ROSENBERG
MAGISTRATE JUDGE BRUCE E. REINHART

_____/

**THIS DOCUMENT RELATES TO:**
**ALL ACTIONS**

### NOTICE OF FILING APPLICATION OF DANIEL A. NIGH FOR LEADERSHIP POSITION

COMES NOW Daniel A. Nigh, and submits his Application for Leadership Position, pursuant to Pretrial Order #1.

DATED:     March 6, 2020

                                       Respectfully submitted,

                                       /s/*Daniel A Nigh*
                                       Daniel A. Nigh
                                       FL Bar No. 30905
                                       **Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.**
                                       316 S. Baylen Street, Suite 600
                                       Pensacola, FL 32502
                                       Phone: (850) 435-7013
                                       Fax: (850) 436-6013
                                       Email: dnigh@levinlaw.com

## APPLICATION OF DANIEL A. NIGH FOR LEADERSHIP POSITION

**A.  WILLINGNESS AND AVAILABLITY TO COMMIT TO A TIME-CONSUMING PROJECT**

For the last two years, I have spent a considerable amount of time negotiating and managing the *In Re: Benicar (Olmesartan) Products Liability Litigation* (MDL No. 2606) global settlement with over 11,500 registered claimants, and personally representing approximately 800 claimants in that MDL.  The settlement was fully funded by defendants at the end of last year and now the vast majority of my clients have been paid and their claims resolved.  As a result, a significant portion of my time has been freed up to commit to this time-consuming litigation and I have been honored to serve as a member on this Court's Initial Census Team.

**B.  ABILITY TO WORK COOPERATIVELY WITH OTHERS**

I have been working with several of the leaders of this litigation for nearly six months, and I will continue to work cooperatively with them. Specifically, I hosted the first speakers panel (October 2019 MTMP) that presented the Zantac litigation to hundreds of plaintiff lawyers. I have also spoken at multiple other conferences regarding the underlying scientific issues and case-selection criteria for Zantac.  I helped organize and now co-chair the AAJ Zantac Litigation Group.  I have spoken with hundreds of plaintiffs' counsel across the country regarding case selection criteria that should be utilized.  I have also organized and participated in multiple plaintiffs' pre-MDL organizational meetings.  Finally, as a member of the Initial Census Team under the leadership of Professor Jaime Dodge, I have worked well with the other members of both my own team and the Practices and Procedures Team in preparation for this Court's initial hearing on March 20.

**C.  PROFESSIONAL EXPERIENCE IN THIS TYPE OF LITIGATION**

Since joining Levin, Papantonio nearly ten years ago, my professional experience has

1

been exclusively handling this type of mass tort litigation. My strengths include science, settlements, and leadership.

1) **Mass Tort Science Experience**

As one of four Co-Leads of the *In Re: Valsartan, Losartan, and Irbesartan Products Liability Litigation* (MDL No. 2875), my role has been managing the Science/Experts Committee and the Bellwether Committee. Valsartan and Zantac have the same carcinogen: NDMA (N-Nitrosodimethylamine). Through my experience in the Valsartan MDL, I have worked with numerous experts to develop the arguments as to how NDMA mechanistically causes cancer, and determining how contamination levels and length of exposure translate to an increased risk of cancer. Many of the same scientific principles that I have learned in the Valsartan litigation over the past year and a half will also apply to the Zantac litigation because they involve the same carcinogen. In addition, I led the team that developed the Valsartan scoring system to help lawyers across the nation understand the strengths and weaknesses of their cases based on the amount of cumulative NDMA contamination ingested, the type of diagnosed cancer, and cancer risk factors for each client. These same factors will also apply to a scoring system that can be developed in the Zantac litigation. These types of scoring systems are useful for case selection criteria, Bellwether selection, and settlement purposes.

Prior to the Valsartan MDL, my work in the Benicar MDL included developing the epidemiological themes utilized throughout the MDL, deposing the defendants' epidemiological expert witnesses, and deposing the defendants' pharmacovigilance custodial witnesses. In addition, I also handled the doctor Bellwether depositions (both treating and prescribing physicians) for four Bellwether cases, and worked with plaintiffs' case-specific causation experts on these four cases.

Further, through my work in the *In Re Ethicon, Inc., Pelvic Repair System Products Liability Litigation* (MDL No. 2327), *In Re: DePuy Orthopaedics, Inc. ASR Hip Implant Products Litigation* (MDL No. 2197), and *In Re: Abilify (Aripiprazole) Products Liability Litigation* (MDL No. 2734), I deposed several defendants' pharmacovigilance and medical affairs witnesses.

2) **Mass Tort Settlement Experience**

Prior to my experience in mass tort litigation, I served as defense counsel at GEICO. In over three years with GEICO, I attended nearly 200 mediations and was extensively involved in settlement negotiations. The experience I gained at GEICO in personal injury settlement negotiation has helped me develop matrices for inventory and global settlements involving unique and complicated case-specific facts for each litigation, ultimately leading to fair individual case values based on the outcomes of each litigation. I was integrally involved in developing the matrices for the Benicar MDL Global Settlement, the Smith & Nephew Hip Implant Global Settlement, and the Attune Knee Implant and Pinnacle Hip Implant Inventory Settlements (which served as a model for the Attune Knee Implant and the Pinnacle Hip Implant inventory settlements for law firms nationwide).

    3) **Mass Tort Leadership Experience**

I have spoken at over 40 conferences on topics including Valsartan, Zantac, Benicar, Hip and Knee Implant litigations, Abilify, and mass tort practice skills. I have co-chaired Harris Martin conferences, and I have organized numerous speakers' panels at Mass Torts Made Perfect. Through my involvement at these conferences, I have collaborated with many of the nation's top attorneys and other professionals to learn new creative strategies which I can apply to my own work. This relationship building has given me the ability to draw upon a large network of allies.

In the Benicar MDL, I worked extensively to recruit and organize a leadership team that ultimately comprised the majority of the Benicar PSC. As co-chair of the Discovery Committee in that MDL, I led a three-hour session where I recruited five other attorneys to serve in various roles based on their individual strengths. As a committee, we drafted the white paper on the discovery themes of the litigation. I managed the document review team of over 100 attorneys, holding bi-weekly teleconferences to further refine and develop new discovery themes. In addition, I worked to identify which firms were best suited to take each custodial witness deposition in the case based on the professional experiences and interests of each firm.

As Co-Lead Counsel of the Valsartan MDL, I collaborated with my three fellow Co-Leads to design the complete leadership structure, including the PSC, PEC, and Co-Lead structure, as well as nine committees consisting of 40 attorneys. These committees were formed after thorough evaluation of the individual experiences, strengths, and interests of each attorney. To accomplish the formation of this leadership structure and committees, my team of Co-Leads and I led a group of over 40 attorneys to reach nearly complete agreement on which attorney would serve in each role. In addition to my work in designing the leadership structure, I have participated in regular Co-Lead Counsel and PEC litigation strategy calls, and presented arguments to the Court on numerous agenda items.

**D.   WILLINGNESS TO COMMIT THE NECESSARY RESOURCES TO PURSUE THIS MATTER**

Levin, Papantonio is one of the premier mass tort law firms in the nation. As a result, we have a staff of highly trained individuals. We have a proven track record of contributing the necessary financial commitments in the numerous MDLs that Levin, Papantonio has served on Plaintiffs' Steering Committees. Due to our reputation of expertise in mass torts, we have thousands of Zantac clients and we intend to pursue this litigation to finality. I would be pleased to serve as Plaintiffs' Co-Lead Counsel, as a member of this Court's Plaintiffs' Steering Committee, and/or on whatever committees this Court appoints me to serve.

/s/*Daniel A Nigh*
Daniel A. Nigh
FL Bar No. 30905
**Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.**
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7013
Fax: (850) 436-6013
Email: dnigh@levinlaw.com

### CERTIFICATE OF SERVICE

I do hereby certify that on March 6, 2020, a true and correct copy of the foregoing was served on all counsel listed on Schedule B of the Pretrial Order No. 1 in accordance with the email addresses provided.

/s/*Daniel A Nigh*
Daniel A. Nigh
FL Bar No. 30905
**Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.**
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7013
Fax: (850) 436-6013
Email: dnigh@levinlaw.com