UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: ZANTAC (RANITIDINE)<br>PRODUCTS LIABILITY<br>LITIGATION | MDL No. 2924<br>20-MD-2924<br><br>JUDGE ROBIN L. ROSENBERG<br>MAGISTRATE JUDGE BRUCE E. REINHART |

_____/

THIS DOCUMENT RELATES TO:
ALL ACTIONS
_____/

In accordance with the Court's Pretrial Order #1 [D.E. 13], Jorge A. Mestre submits his Application for a Leadership Position. This Application provides the information requested by the Order and sets forth the reasons why we and our client can provide adequate representation for third-party payers' significant stake in this case.

RIVERO MESTRE LLP

*Counsel for MSP Recovery Claims, Series LLC*
2525 Ponce de León Blvd., Suite 1000
Miami, Florida 33134
Telephone:  (305) 445-2500
Facsimile:   (305) 445-2505
E-mail: jmestre@riveromestre.com
Secondary: npuentes@riveromestre.com

By:     /s/ Jorge A. Mestre
          JORGE A. MESTRE
          Florida Bar No. 088145
          ANDRÉS RIVERO
          Florida Bar No. 613819
          ALAN H. ROLNICK
          Florida Bar No. 715085
          CHARLES E. WHORTON
          Florida Bar No. 46894

1

A.     **Third Party Payers Require Adequate Representation**

This hybrid MDL consists of personal injury and economic loss claims. Best practices recommend appointment of "different counsel to take primary responsibility for personal injury claims on the one hand, and economic loss claims on the other." Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices: Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions*, at 42-43 (Aug. 2018) (hereinafter referred to as "*Duke Best Practices*").[1] Because this hybrid MDL arises from sales of a defective drug that could not lawfully be sold, there are three distinct plaintiff groups: (1) consumer class plaintiffs (who purchased Zantac over-the-counter ("OTC") and assert economic damages only), (2) third-party payer ("TPP") class plaintiffs (which include the health insurance plans that paid the lion share for prescription Zantac and for OTC Zantac through OTC coverage), and (3) personal injury plaintiffs (who allege bodily harm from ingesting Zantac).

Although these three plaintiff groups have some overlapping interests that permit efficient coordination, they also present distinct and potentially conflicting interests. Those conflicting interests require balanced representation in the leadership structure for all three groups. At a minimum, each group needs representation at the highest possible level, whether through a co-lead or a position on an executive committee, to ensure that their voices are heard. Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs*, at 30 (2d ed. 2018) ("In determining the appropriate leadership structure, the type of cases included in the MDL is often the most important consideration.").

In another hybrid MDL, the district court recently appointed four co-leads (two for economic losses, and two for personal injury). Our firm was selected to: (1) represent the interests of TPPs on the executive committee, and (2) co-chair a TPP committee. *In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation*, MDL No. 2875, ECF No. 96 (D.N.J.). This structure allowed counsel for the TPPs to protect TPP interests and participate in determining strategy. *See* Dodge, Jamie, *Facilitative Judging: Organizational Design in Mass-Multidistrict Litigation*, 64 EMORY L.J. 329, 377 (2014) (discussing the need to "build[] a leadership team that reflects the diversity of claimants").

We respectfully request and propose appointment to a similar position here. Such an appointment would be best practice, which places a "premium" on the ability of lawyers with different perspectives to work with the "different norms, expectations, and styles of 'class' and 'mass tort' lawyers." *Duke Best Practices* at 46. Our capability in this role is demonstrated by support for this request from nearly every Valsartan lawyer that has filed a Zantac case. No other lawyer in this MDL can represent TPP interests because we are the

---

[1] *E.g., In re Toyota Motor Unintended Acceleration Marketing, Sales Practices and Prods. Liability Litigation*, MDL No. 2151, (C.D. Cal. May 14, 2010) (appointing one committee and co-leads for personal injury cases and a separate committee and co-leads for economic loss cases); *In re Takata Airbag Products Liability Litig.*, MDL No. 2599 (S.D. Fla. Mar. 17, 2015), ECF No. 393 at 4-5 (appointing separate co-leads for the "economic damages track" and the "personal injury track").

only firm that has brought a TPP case. Every other lawyer represents either personal injury plaintiffs, consumer class plaintiffs, or a mixture of both. Further, our client's relationships with TPPs across the country allows it to properly and adequately protect TPP interests.

To further illustrate the significant stake of TPPs in this MDL, we obtained data from IQVIA™ which, as we described in our census application, tracks and collects the distribution and sales of drugs from the point of sale. From 2008 until now, the total number of branded Zantac units (which could include oral, injection, or syrup) that were sold through a prescription was 40,187,463. That does not include additional over-the-counter sales that were covered by supplemental OTC coverage.[2] We estimate that the TPP stake is approximately 20% of the total economic loss claim, as the below chart depicts:



These amounts do not include payments made for generic ranitidine in states where innovator liability theories are accepted.

Because TPPs hold a significant stake in this MDL, balanced representation will ensure proper coordination among all three plaintiff groups. Coordination is paramount as to the theories of liability, discovery, class certification, and any potential recovery allocation. We have done this before, are doing it in the Valsartan MDL, and can apply what we have learned in such cases to foster and facilitate the cooperation of all plaintiff groups.

B.     **Willingness and Availability to Commit to a Time-Consuming Project**

For the past two years, our firm has represented the interests of TPPs in the Valsartan MDL—which involves the same cancer-causing agent at issue here. Despite our important

---

[2] More than 51% of Medicare Advantage plans offer over-the-counter supplemental coverage. *See* https://www.medicareadvantage.com/common-questions/does-medicare-cover-over-the-counter-otc, last visited March 6, 2020.

role in that case, we do not anticipate any difficulties in committing the necessary time and resources to a leadership position in this MDL. My partner, Andrés Rivero, serves on the Plaintiffs' Executive Committee in the Valsartan MDL and is co-chair of the TPP committee. Another of my partners, Charles Whorton, is co-chair of the discovery committee. I am ready, willing and able to take on a leadership role in this case.

### C.     Ability to Work Cooperatively with Others

Since filing the first, and only, TPP complaint in this case last November, I have participated in nearly every plaintiffs meeting and spoken at related conferences. I met with plaintiffs' counsel in Los Angeles prior to the formation of this MDL. I worked with plaintiffs' counsel to build a consensus to transfer this action to the Southern District of Florida. I have worked in other cases with many of the lawyers in this case, and I have excellent relationships with them.

### D.     Professional Experience

"Judges and attorneys alike are recognizing that diversity of all kinds—demographic diversity, skill diversity, diversity of prior case experiences—improve outcomes." *See* Dodge, *Facilitative Judging*, 64 EMORY L.J. at 367. Our firm and my prior experience satisfy all three factors.

I and our firm have a diverse skillset, having litigated high-stakes cases for both plaintiffs and defendants. One of our recent cases included representation of a Chevron attorney in a case that was part of the $100 billion, 18-year litigation over Chevron's alleged environmental damage in the Amazon. We also represented directors and officers in the largest FDIC lawsuit at the time, measured by loss to the deposit insurance fund. Other prior case experience includes our roles on the executive committee in the Valsartan MDL, noted above. I also was appointed to serve as one of only four members of the Plaintiffs Steering Committee (PSC) in a case that was related to and consolidated with the Madoff Ponzi scheme MDL in the Southern District of New York.

Finally, Florida Governor Rick Scott recently appointed me to the Judicial Nominating Commission for the Eleventh Circuit, Miami-Dade County. Florida state court judges also have appointed me as a Receiver and Assignee for the Benefit of Creditors. I have served in various leadership positions in the American Bar Association, including presidential appointments to the Commission on Hispanic Legal Rights and Responsibilities, and the Coalition on Racial and Ethnic Justice. I am also the current President of the Hispanic National Bar Foundation.

### E.     Willingness to Commit the Necessary Resources to Pursue this Matter

My firm and I have dedicated significant resources to prosecuting this action. We will continue to do so. We stand ready, willing, and able to commit the necessary resources. We appreciate the Court's consideration of this Application and look forward to working on this important case.

3

4

**CERTIFICATE OF SERVICE**

      I certify that on March 6, 2020, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record either by transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. Mail.

      /s/ Jorge A. Mestre  
      JORGE A. MESTRE