UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION | MDL NO. 2924<br>20-MD-2924 |
| THIS DOCUMENT RELATES TO: ALL CASES | JUDGE ROBIN L. ROSENBERG<br>MAGISTRATE JUDGE BRUCE E. REINHART |

### NOTICE OF FILING APPLICATION TO SERVE ON PLAINTIFFS' STEERING COMMITTEE OF ASHLEY KELLER

Pursuant to this Court's Pretrial Order #1, entered on February 14, 2020, Ashley Keller respectfully submits the following application for consideration to serve on the Plaintiffs' Steering Committee.

Dated: March 6, 2020

Respectfully submitted,

*/s/ Ashley Keller*
Ashley Keller
ack@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Keller | Lenkner

March 6, 2020

The Hon. Robin L. Rosenberg
United States District Judge
U.S. District Court for the Southern District of Florida
Paul G. Rogers Federal Building and Courthouse
701 Clematis Street, Courtroom 2
West Palm Beach, FL 33401

Dear Judge Rosenberg:

My name is Ashley Keller, and I am a co-founder of Keller Lenkner LLC, a national law firm that represents plaintiffs in complex litigation at the trial and appellate levels.  Our firm represents more than 1,500 clients who took Zantac or its generic equivalent, Ranitidine, and have since been diagnosed with cancer.  Pursuant to Pretrial Order #1, please allow this letter to serve as my application for a leadership position.  As set forth below, my professional experience, law firm resources, and commitment to collegiality leave me well equipped to make a positive contribution to this proceeding.

**Relevant Background and Professional Experience**

The Court expressed a desire to assemble a leadership team with a diverse set of experiences.  My background fits the bill.

Immediately following law school, I served as a law clerk for Judge Richard A. Posner at the United States Court of Appeals for the Seventh Circuit and then for Justice Anthony M. Kennedy at the Supreme Court of the United States.  Those were cornerstone experiences that honed my research and writing skills.  I regularly draw on those capabilities to brief and argue complex questions of law in trial and appellate courts across a variety of actions.

Following my clerkships, I was an Associate and then a Partner at Bartlit Beck LLP, a defense-oriented litigation boutique focused on high-stakes, complex disputes.  My mass-action experience included representing Bayer in the genetically-modified-rice MDL, where I was primarily responsible for briefing preemption and the economic-loss doctrine.

Apart from my legal career, I have relevant experience in the field of finance and the application of a quantitative approach to the law.  I highlight here the following credentials and positions:

– In addition to my law degree, I earned an MBA from the University of Chicago Booth School of Business, with concentrations in finance and economics.  I have a firm grasp of statistics and experience analyzing multiple regression models that measure the coefficient of correlation, which is the basis for assessing causation.

– I worked as an analyst at Alyeska Investment Group, L.P., a multi-billion-dollar, market-neutral investment firm.  I was primarily responsible for valuing companies facing legal and

**Keller | Lenkner**

- regulatory risk.  In that capacity, I interacted with sell-side analysts and corporate executives to learn how they valued and managed litigation.  I understand how high-stakes litigation affects investor sentiment (and the management incentives that creates).

- I co-founded Gerchen Keller Capital LLC, a multi-billion-dollar specialty finance company focused on investments in large litigation matters.  Among other things, I worked with plaintiffs and defendants to structure innovative financial products in order to facilitate settlements.  When requested by both parties, this required direct involvement in the settlement process and interaction with neutral mediators.

**Keller Lenkner's Resources and Capacity to Pursue Complex Litigation**

The Keller Lenkner team comprises more than 20 exceptional lawyers, including three former law clerks at the Supreme Court of the United States, five former law clerks for judges on United States Courts of Appeals, and four former law clerks for judges on United States District Courts.  Our firm also has a dedicated group of more than 50 non-lawyer professionals who focus on managing our clients' litigation matters.  Our commitment to hiring the very best people allows us to serve all our clients' needs, from engagement and fact development to settlement negotiation and administration.

Our firm is well-resourced and has a significant mass-actions practice.  We have negotiated settlements for more than 60,000 clients where we were lead counsel.  In addition to this matter, I have played a substantive role in several MDLs, consolidated state-court proceedings, and mass actions. A sampling includes:

- <u>MDL No. 2885, In re: 3M Combat Arms Earplug Products Liability Litigation (N.D. Fla.)</u>.  We represent more than 4,000 military servicemembers who allege that 3M's dual-ended earplugs were defective, causing hearing loss and tinnitus.  Prior to the order establishing the MDL, I drafted a memorandum analyzing the key legal and factual issues presented by the case, which we shared freely with other plaintiffs' firms to foster a spirit of collaboration.  Several firms got involved in the MDL after reviewing and assessing our analysis.  My partner Nicole Berg was appointed to the law-and-briefing subcommittee of the PSC, and one of our clients was selected for a bellwether trial.  We have a strong working relationship with the entire MDL leadership team.

- <u>MDL No. 2804, In re: National Prescription Opiate Litigation (N.D. Ohio)</u>. Keller Lenkner is counsel for municipal plaintiffs alleging harm as a result of drug manufacturers' and distributors' conduct related to the opioid epidemic. We also serve as counsel for more than two dozen putative classes of private health insurance purchasers alleging that the opioid epidemic increased deductibles, co-payments, and premiums.  These cases rest on a novel theory of damages that we developed alongside co-counsel that include Morgan & Morgan, PA.  In related litigation, I am co-lead counsel on behalf of the state of Arizona against Purdue Pharma and related parties in bankruptcy court.  Although Arizona is not formally part of the MDL, I regularly coordinate with MDL leadership.

- <u>MDL No. 2714, In re: Roundup Products Liability Litigation (N.D. Cal.)</u>.  We are counsel for plaintiffs alleging that exposure to Roundup herbicide caused non-Hodgkin's lymphoma.

# Keller | Lenkner

    I am part of the appellate team defending the first verdict, which is on appeal to the U.S. Court of Appeals for the Ninth Circuit. My key area of focus is the interplay between preemption and administrative law.

- <u>JCCP No. 4887, In re: Essure Product Cases (Cal. Sup. Ct.)</u>. Keller Lenkner serves as counsel for plaintiffs alleging injury as a result of a defective birth-control device. The case involves complicated legal questions about the interplay between causation, preemption, and choice of law. Although we were not involved in the matter at the outset, leadership requested that we help brief and argue these issues. Our team prepared choice-of-law and preemption briefs, and I argued motions for summary judgment in December and January.

- <u>JCCP No. 5069, In re: Amazon.com Alexa Cases (Cal. Sup. Ct.)</u>. Along with co-counsel Quinn Emanuel Urquhart & Sullivan, LLP, we filed the first cases alleging that Amazon's Alexa device improperly records users without their consent, in contravention of California's two-party consent statute. I oversaw our firm's effort to identify, evaluate, and pursue this matter. We represent thousands of individual Alexa users who will participate in the JCCP or AAA arbitrations. I am responsible for briefing and arguing motions to dismiss, motions compelling arbitration, and motions for summary judgment.

In this proceeding, Keller Lenkner has already invested significant financial and human resources. Our strong level of commitment to prosecuting this matter will continue. We have the time, financial resources, and energy to effectively advance this matter.

**Ability to Work Cooperatively with Counsel**

Zealous legal advocacy must be accompanied by a commitment to civility and professionalism. I comport myself accordingly with opposing counsel. As one small illustration, I refer to defense counsel at oral argument as "my friend" or "my colleague," not as "my adversary" or "my opponent." That approach recently drew well-natured chuckles during oral argument in Essure. But small collegial gestures build a store of goodwill during the inevitably heated moments of high-stakes litigation. As a former member of the defense bar, I have deep respect and appreciation for colleagues on that side of the "v." Those sentiments ensure good lines of communication with defense counsel, permitting us to narrow inevitable disputes before burdening the Court, while allowing a vigorous yet respectful airing of more material differences.

I am equally adept at collaborating with co-counsel, and will work well with whatever leadership team the Court appoints. Appendix C to this letter identifies exceptional attorneys with whom we have worked in the past and are pleased to recommend for other leadership posts.

Thank you for considering my application.

Sincerely,

*Ashley Keller*

Ashley C. Keller

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2020, a true and correct copy of the foregoing was served via the Court's ECF system and on all counsel listed on Schedule B of the Court's Pretrial Order No. 1 in accordance with the email addresses provided therein.

/s/ Ashley Keller
Ashley Keller