UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION | MDL No. 2924<br>20-MD-2924 |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | JUDGE ROBIN L. ROSENBERG<br>MAGISTRATE JUDGE BRUCE E. REINHART |

### NOTICE OF FILING APPLICATION OF STEVE W. BERMAN OF HAGENS BERMAN SOBOL SHAPIRO LLP TO BE APPOINTED TO A LEADERSHIP POSITION

Please take notice that pursuant to paragraph 16 of the Court's Pretrial Order No. 1 (DE. 13) entered on February 14, 2020, attorney Steve W. Berman of Hagens Berman Sobol Shapiro LLP, submits the attached application to be appointed to a leadership position in this MDL.

DATED: March 6, 2020

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: /s/Steve W. Berman

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Ave, Suite 2000
Seattle, WA 98101
T: (206) 623-7292
steve@hbsslaw.com

Jason A. Zweig
Zoran Tasić
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
T: (708) 628-4949
jasonz@hbsslaw.com
zorant@hbsslaw.com

*Attorneys for Plaintiffs Christina Garza,*
*Pankaj Khetarpal, Corina Lingerfelt, Justin Rowe,*
*Michael Burke, Stephanie Frasier, Richard Harris,*
*Jonathan Dimesky, Mohammed Haridi,*
*Mary Santorella, Kassie Benson, and*
*Lisa Prisinzano*

## Application of Steve W. Berman to Be Appointed to a Leadership Position

I am the managing partner of Hagens Berman Sobol Shapiro LLP (*HB*), one of the nation's leading plaintiff-side complex-litigation firms. HB is comprised of a diverse and talented group of over 80 full-time attorneys. For the past 35 years, I have been enmeshed in cases like this. I have been involved in every aspect of cases like this—including trials—and my firm has recovered more than $270 billion for our clients. In this case, my firm has already spent over $1 million in time and expense[1] over the last year developing the facts, science, and legal claims at issue in this case. After our thorough and lengthy investigation, we filed the very first Zantac case, and thereafter, the MDL petition which led to the creation of this MDL. This case also means a great deal to me personally, since several people I am close to regularly used Zantac for years. It is for these reasons that I submit this application for a leadership position with specific responsibility for leading the class actions, but will, of course, enthusiastically participate in any role.[2] Other large multi-claim MDLs like this one (i.e. GM and *Toyota*) have appointed counsel with responsibility for the class actions, because, among other things, conflicts may arise between the different claims particularly at settlement time. I look forward to sharing my knowledge and experience with the other team members—and the Court—to achieve a successful result for the plaintiffs and class members.

1. *Willingness and availability to commit to a time-consuming project.*

HB's attorneys and staff, spread over nine offices throughout the country, are driven, like me, by the desire to make a difference in people's lives through groundbreaking and innovative litigation. This case is no exception and my team and I will live and breathe this case, as we do every case, to achieve the best possible result. Our clients and the Court deserve nothing less. Furthermore, given HB's size, and my current commitments, we have the bandwidth for a time-consuming case like this.

2. *Ability to work cooperatively with others.*

Our firm's success is due in part to our ability to collaborate with co-counsel which we have in virtually every case we litigate. We have already been doing so here by participating in numerous meetings with other lawyers in this case and sharing information.[3] During litigation, we also develop strong working relationships with defense counsel. In this case, we already possess strong working relationships with some of the defense counsel, having litigated against them in the past. This mutual respect is beneficial to the Court, as it will diminish the number of disputes presented to the Court.

---

[1] We would be pleased to submit our time and expense records to the Court *in camera*.

[2] I did not wish to be presumptuous by specifying a specific role such as co-lead counsel; the Court will decide how I am best situated to assist.

[3] For example, we have been closely coordinating with the Court-appointed liaison counsel, Mr. Maderal of Colson Hicks Eidson, who supports my inclusion in the leadership structure.

3. *Professional experience in this type of litigation.*

For the last 35 years, all I have done is "this type of litigation," and I think I am one of the nation's most respected and experienced practitioners specializing in class actions and other complex litigation. I am humbled and honored to have my experience, integrity, and success recognized by distinguished federal jurists. For example, I was selected *sua sponte* by Judges James Selna (C.D. Cal.) and Jesse Furman (S.D.N.Y.) to serve as interim-lead counsel in two of the largest and most complex MDLs in history, before any applications for lead counsel had even been submitted.[4] And prior to my appointment as interim-lead counsel in those cases, I had never appeared before either Judge. In otherwords, my selection was based solely on my record and reputation. In *Toyota*, after several years of hard-fought litigation, we reached a successful $1.6 billion resolution (involving cash and safety features that saved lives). This remains one of the largest class-action settlements in history. Appendix B identifies other MDLs in which I was involved, and a few other non-MDL cases I wish to highlight for the Court that I believe are "highly relevant."

Other federal judges have also commented favorably on the reputation and achievements of me and my firm. For example, when selecting me as sole lead counsel in *In re Stericycle, Inc., Sterisafe Contract Litig.*, the late Judge Milton Shadur stated: "it must be said that the track record of Hagens Berman and its lead partner Steven Berman is even more impressive . . . . It may be worth mentioning that to this Court's recollection, it had no first-hand judicial experience with either of the two finalists firms . . . but that is not true of its colleagues in this District of more recent vintage, an email inquiry to whom brought in return some high praise of attorney Berman's skills."[5]

My firm and I have also received numerous awards and recognition for our work including: Law 360 Class Action MVP of the Year (each year 2016–2019); American Antitrust Institute Honoree for Outstanding Antitrust Litigation Achievement in Private Law Practice (2018–2019); and National Law Journal Elite Trial Lawyers (2014–2016; 2018–2019).[6]

I believe I am likely one of the very few leadership applicants who regularly (and successfully) tries class actions and MDL cases. Also, given the numerous MDLs and other complex cases my firm and I have litigated, we possess a deep institutional knowledge of class-action law, as well as the laws in all 50 states that will be at issue here. We also possess a deep understanding of state medical-monitoring law, which will also be at issue here, in part from having just achieved as

---

[4] *See In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litig.*, MDL 2151 (C.D. Cal.)(Selna, J.)(*Toyota*); *In re General Motors LLC Ignition Switch Litig.*, MDL No. 2543 (S.D.N.Y.)(Furman, J.)(*GM*). In both cases, I was ultimately appointed as lead counsel following a competitive application process.

[5] MDL No. 2455 (N.D. Ill.) (Mem. Order dated October 11, 2013)(Dkt. No. 56).

[6] For more information about me and my firm, I encourage the Court to visit our firm website at www.hbsslaw.com.

co-lead counsel a groundbreaking 50 year 50 state medical-monitoring settlement in the *NCAA Concussions* MDL.

Given my extensive experience in cases like this with different types of claims, I bring a wealth of knowledge as to what has worked well in other cases, and what hasn't. For example, based on my experience in *GM* and *Toyota* (and other cases), I would ask that the Court consider appointing counsel with specific responsibility for the class actions, in order to avoid conflicts between the class claims and the other types of claims at settlement time. Counsel for the different claims still coordinate closely on the conduct of the overall litigation. In *GM*, I was co-lead counsel primarily responsible for the class actions, but I also tried bellwether personal-injury cases with co-lead counsel for the personal injury claims (Bob Hilliard). There are also other tools the Court might wish to employ in the class actions here to lessen the burden on the Court and the litigants, such as using a bellwether state process. I am eager to provide the Court with further information on these and other issues to help streamline this litigation.

4. *Willingness to commit the necessary resources to pursue this matter.*

HB has the human and financial resources necessary to prosecute a case like this, and commits to providing those resources to this litigation. HB is no stranger to cases of this magnitude, as we regularly invest millions of dollars in cases against the largest and wealthiest corporations and law firms in the world. I also intend to lead a team of myself, my partner Jason Zweig, and as many other partners and associates as needed to effectively prosecute this case. Finally, as a successful and well-managed firm, HB never relies on outside funding for its case, and has no plans to do so here.

5. *The work counsel has done in investigating and identifying the particular case.*

The four criteria that the Court asked all applicants to address, and which I addressed above, largely overlap with the criteria in Fed. R. Civ. P. 23(g) that Courts are *required* to apply when selecting class counsel in a class action. Because I seek to be appointed to a leadership position with responsibilities for class actions, I respectfully submit that an additional factor not identified by the Court—the *first* Rule 23(g) factor—should also be addressed: "the work counsel has done in investigating and identifying the particular case."[7] No one has been working on this case longer than my team and I, and most likely no one has spent more time advancing the claims in this case on behalf of plaintiffs. We have been investigating the facts, science, and law at issue in this case for nearly a year (since April 2019). We have received and reviewed hundreds of FDA documents obtained through a FOIA request; hired a leading toxicologist to help understand the science and toxicity of Zantac; consulted with leading biologists and pharmacokineticists to understand Zantac's metabolization in the body; interviewed numerous other players; and spoken to over 1,700 potential class representatives, hailing from all 50 states plus D.C.

---

[7] Fed. R. Civ. P. 23(g). *See also* THE MANUAL FOR COMPLEX LITIGATION (FOURTH), § 21.271, p. 278.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically on March 6, 2020. Notice and a copy of this filing will be served upon all counsel of record by operation of the Court's CM/ECF filing system.

By: _/s/ Steve W. Berman_
Steve W. Berman