UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE: ZANTAC (RANITIDINE)     MDL NO. 2924
PRODUCTS LIABILITY     20-MD-2924
LITIGATION

JUDGE ROBIN L. ROSENBERG
MAGISTRATE JUDGE BRUCE E. REINHART

_____/

THIS DOCUMENT RELATES TO ALL CASES

## PRETRIAL ORDER #16
Order Rescheduling Initial Conference, Establishing April
Deliverables Team, and Scheduling Interviews for Leadership Applicants

The Court, like the parties, continues to monitor the constantly evolving situation with COVID-19. The Court extends its wishes to everyone for good health and safety. Recognizing but notwithstanding the limitations imposed by the current pandemic, there is much highly productive work already that has been accomplished and that must continue in this litigation. The Court has reviewed the joint letter of the parties, dated March 18, 2020, with respect to the next steps that they believe are necessary and possible to accomplish over the coming weeks until the Court convenes its rescheduled Initial Conference and selects leadership. In light of the latest guidance received from health officials, coupled with the large number of interested parties and non-parties in this litigation, the Court has determined that it will not schedule an in-person proceeding to conduct its Initial Conference or its interviews of the leadership applicants. However, recognizing the need for permanent leadership in this case as well as the importance of conducting an initial conference, the Court issues the following Order to provide clarity to all parties and counsel.

Initial Conference & Agenda

1. The Initial Conference originally was scheduled for March 20, 2020 by Pretrial Order (PTO) #1 but was cancelled due to COVID-19 by PTO #9. The Initial Conference is hereby rescheduled to 9am ET on May 12, 2020. This conference will be held by videoconference; no persons, including the parties and counsel, will be permitted to attend in person. There will be a court reporter in attendance at the conference and a transcript will be made of the conference. The Court is continuing to work through the best manner in which to facilitate video and telephonic attendance and will provide connection information in a subsequent notification.

2. As this case proceeds into its next phase, it remains increasingly important that counsel continue to work cooperatively and in good faith to resolve issues through virtual meetings and conferrals. The Court envisions that this immediate next phase of the litigation can and should be used most importantly to begin that process of conferring to identify this common ground and work through areas of disagreement. Secondarily, this time will permit counsel to begin drafting pleadings and discovery requests that will, after permanent leadership is appointed, be used as strong work products allowing the parties to move forward most efficiently in filing their complaints and serving discovery. Paramount to these discussions materially advancing the litigation process is a willingness on the part of the plaintiffs to, as clearly as possible and based on the available information received and known this far, articulate their claims and/or theories of liability against the different defendants. Similarly, the defendants should inform plaintiffs of all known and anticipated defenses. The Court takes this opportunity to emphasize that it operates on the presumption that disputes will be raised with the Court

only after counsel have exhausted their own best efforts to resolve and/or narrow the issues for the Court.

3. Agenda. The Court directs the interim defense leadership and the April Deliverables Team, appointed in this Order, (collectively "Appointed Counsel"), to work together with each other and the Special Master to prepare a recommended joint agenda for this conference. The joint agenda should be filed by Robert Gilbert, pursuant to PTO #8, as a "Joint Proposed Agenda for Initial Conference" by 5pm ET on April 30, 2020,[1] and shall be emailed in WORD format to zantac_mdl@flsd.uscourts.gov. The Court encourages the parties to consider presenting jointly on foundational topics to introduce the Court to the key concepts in this case, such as case management, attorney presentations of science, or other areas in which common ground can be reached. The Court also encourages the parties to identify key areas of disagreement; as to these, the parties should be prepared to explain what predicate areas of agreement exist, before explaining the scope of disagreement.

4. Preliminary Orders. The Court appreciates the work of the parties in the submission of a number of jointly-stipulated proposed orders as to procedural matters. Given the pendency of leadership selection, the Court anticipates that most remaining orders will be filed after leadership is selected. However, to the extent that particular orders would be helpful to the efficient filing of cases or to unfiled claimants' decisions to register their cases in the Census Registry, or would otherwise be helpful to have on file prior to the

---

[1] Only the agenda items and approximate duration of each presentation is required by this deadline; no designation of speakers is required in this submission. The parties shall provide to the court an updated list, including designated speakers, at least 24 hours in advance of the Initial Conference.

Initial Conference, this Court authorizes Appointed Counsel to continue work on any proposed orders and to email in WORD format such proposed orders or proposed stipulations on an as-needed, rolling basis, to zantac_mdl@flsd.uscourts.gov. The Court will continue to determine whether, in its judgment, any such proposed orders should be entered at this time, or should be held pending its leadership appointment order.

5. Motion Practice/Case Management Issues. Appointed Counsel are directed to confer on a joint presentation regarding the motions the parties anticipate filing this calendar year and the proposed timing of those motions, together with any discovery that may be necessary prior to the filing of those motions. This presentation may include both areas of agreement and areas of disagreement between the parties. As the presentation will occur after permanent leadership is appointed, the Court also directs that the presentation begin with a summary of the theories of liability plaintiffs' leadership will advance and the defenses the defendants (or categories of defendants) currently contemplate advancing.

6. Discovery. Appointed Counsel shall meet and confer (via videoconference) regarding the timing and scope of discovery. Consistent with the Court's direction that the Initial Conference shall be directed to educating the Court as to areas of common agreement and areas in which disagreement exits, the Court instructs the parties to begin earnest discussions about the scope and timing of discovery to help elucidate these areas of agreement and disagreement.

   a. The Court expects Appointed Counsel to meet and confer concerning which categories of relevant documents defendants could reasonably produce in the near term, taking into account the limitations currently in effect due to COVID-19

restrictions, and a timeline for production of documents that it is agreed should be produced but which are not readily obtainable.

b. Such a meet and confer process should occur before the parties serve any of the written discovery requests, so that such requests might be informed and targeted by the parties' discussions.

c. The Special Master is directed to attend these discussions to assist the Court, although she will have no part in ruling on any discovery disputes, which remain the sole responsibility of the Court.

d. The Court encourages Appointed Counsel, as well as any additional parties that may participate in these discussions, to undertake these discussions with a spirit of cooperation and reasonability.

e. At the May 12, 2020 Initial Conference, a summary of the parties' vision for discovery shall be presented to help inform the broader case management discussions occurring at the Conference. The Court also orders that the parties shall appear by videoconference on May 13, 2020, for a preliminary discovery conference. This conference is intended to permit the Court (including the magistrate judge) to listen to more fulsome presentations from counsel on their visions for discovery, including more informal questions from the Court about the parties' expectations for the discovery process. This will also be the time at which the Court will take up any specific discovery matters, if warranted.

<u>Defense Leadership</u>

7. This Court previously noted that in light of the anticipated number of defendants in this litigation, it was necessary to appoint interim leadership for defendants, in addition to the plaintiffs. In PTO #10, this Court appointed a team of four attorneys to serve as interim

defense leadership. In the same Order, the Court appointed two attorneys to serve as interim liaison counsel for the generic manufacturers.

8. The Court now finds it prudent to appoint interim liaison counsel for the retailer defendants. The Court desires that the retailer defendants will be able to confer and seek consensus on the selection of an interim liaison counsel. If the retailer defendants reach consensus on or before April 9, 2020, a "Notice of Agreed Upon Interim Retailer Liaison Counsel" including the identity and contact information for the counsel shall be filed. If no consensus is reached, each candidate interested in applying for the position shall file a two-page application letter by April 9, 2020, in the form of "Notice of Filing Application Letter for Interim Retailer Liaison Counsel".

9. The interim defense leadership appointed in PTO #10, together with liaison counsel, are authorized to continue all work they deem necessary to prepare for the Initial Conference, as well as any work they deem beneficial to the litigation. They are further directed to confer with the interim generic and forthcoming retailer liaison counsel, including with respect to whether there are certain discovery issues specific to generics and/or retailers as to which the liaison counsel should work directly with plaintiffs' Appointed Counsel and the Special Master to create a structure that facilitates efficient and productive discussions prior to the Initial Conference.

Additional Appointments Prior to Leadership Interviews

10. The Court appreciates the work performed by the Initial Census and Practices and Procedures Teams (collectively, the "Teams"), appointed in PTO #4.

11. The Court, having entered PTO #15 establishing the census, understands that the focus of the census work has now shifted from drafting to implementation. Similarly, the Court

understands that many of the joint orders that were the focus of the Practices and Procedures Team have now been issued by this Court (in PTO #11, #12, and #13).

12. Given the breadth of the additional work to be completed before the Initial Conference, the Court considers it helpful to the litigation to make additional appointments at this time to facilitate the fulfillment of the April deliverables. The additional appointments will comprise the April Deliverables Team and will work in conjunction with the previously appointed Teams to prepare for the Initial Conference and to undertake the work set forth in this Order. These counsel shall work together as a singular team, hereinafter referred to as the "April Deliverables Team".

13. Having reviewed all of the applications submitted for the Plaintiffs' Steering Committee, the Court appoints to the April Deliverables Team the following five attorneys: Mark Dearman, Marlene Goldenberg, Fred Longer, Jennifer Moore, and Conlee Whitely.

14. While the Court leaves to the April Deliverables Team the ability to self-organize to make their work most productive and to utilize the strengths of each of its team members, the Court also finds it prudent to select certain counsel to be responsible for the ultimate effectuation of particular tasks.

    a. Robert Gilbert and Mike McGlamry shall be responsible for all filings or submissions on behalf of the plaintiffs (including any additional orders that the parties may deem appropriate to prepare or submit) and coordination between any sub-teams the April Deliverables Team may create.

    b. Fred Longer and Jennifer Moore shall be responsible for preparation of the master complaint for individual (non-class) cases and the short form complaint.

    c. Robert Gilbert shall be responsible for the preparation of materials related to class actions.

d. Mike McGlamry and Mikal Watts shall be responsible for directing the work related to discovery.

   e. Tracy Finken and Dan Nigh shall be responsible for directing work relating to the science underlying the MDL claims.

   f. Adam Pulaski shall remain responsible for implementation issues related to the census, together with Mike McGlamry, Dan Nigh, and Tracy Finken.

   These allocations of responsibility are not intended to preclude these team members from working on other tasks within the MDL, nor other team members from assisting with these; rather, they are intended simply to designate individuals responsible for directing and efficiently managing these areas to ensure a consistent strategy and efficient allocation of work. Indeed, the Court recognizes that the work on each of these tasks is part of an interrelated whole. Therefore, the Court expects those working on each of these tasks to discuss and coordinate their work with the others as part of the group's overall efforts.

15. The Court authorizes and directs the April Deliverables Team to perform that work it deems necessary or helpful in preparing for the Initial Conference, and the other items requested by this Order. In addition, the April Deliverables Team is specifically directed to draft and email a proposed common benefit order governing plaintiffs' common benefit time and expense no later than April 16, 2020, in WORD format to zantac_mdl@flsd.uscourts.gov.

Plaintiffs' Leadership Interviews

16. The Court seeks to provide additional transparency to its thought process, given the impact of the pandemic on the start of this MDL. Specifically, the Court takes this opportunity to clearly state that it has made no permanent leadership decisions. COVID-

19 has delayed the Court's ability to interview the applicants, but the Court has in this time extensively reviewed the applications and consulted with other judges listed as familiar with the applicants' work. The Court has a very high regard for the talent, experience, and diversity of the applicant pool, and is affirmatively looking forward to the opportunity to interview the candidates. The Court has many candidates identified for potential leadership positions, who have not yet served in an appointed position. Indeed, the appointments to-date have been for particular roles, not reflective of the full set of skills and talents this MDL will ultimately need to bring to bear. The Court assures counsel that it is taking this decision with all due deliberation and has not made any final leadership determinations at this point, but instead looks forward to the results of the initial census and the interview process to help inform its thinking.

17. Leadership presentations/interviews will be conducted in four sessions, on May 6-7, 2020. In light of the necessity of travel restrictions and social distancing protocols at this time and consistent with the way the Court is handling the scheduling of the Initial Conference, as set forth in paragraph 1, the Court will not permit any person to appear in person for the leadership presentations. These presentations will be held by videoconference; no persons, including the parties and counsel, will be permitted to attend in person. There will be a court reporter in attendance at the interview presentations and a transcript will be made of the presentations. The Court is continuing to work through the best manner in which to facilitate video and telephonic attendance and will provide connection information in a subsequent notification. It is the Court's desire that technology will permit all interested parties to view the proceedings.

18. In order to facilitate the videoconferencing, the leadership applicants have been assigned to one of four sessions. See Appendix A. The Court has assigned these times based upon

review of the applications. If an applicant has a conflict with the scheduled time provided, this may be communicated to the Special Master by email along with the reason for the conflict, and the Court will try to accommodate any unavoidable conflicts.

19. The Court seeks to maximize transparency and permit all interested persons to view these proceedings. However, there are limits to the number of individuals who can connect to the Court's secured videoconferencing system, and it is possible that interest will exceed its capacity. Connections will be allocated first to the leadership applicants and defense counsel; if additional capacity exists, the Court <u>may</u> be able to provide credentials to additional interested parties.

    a. The defense liaison counsel is directed to contact defendants and determine the number of connections needed for in-house and outside counsel who are interested in viewing the interviews, and also maintain a list of the email addresses for these individuals to facilitate provision of log-in credentials to the interviews.

    b. Any plaintiff or plaintiffs' counsel requesting credentials should contact the plaintiffs' liaison counsel. Applicants being interviewed need not request credentials, but any other attorney from the same law firm that desires to join from a different computer must request separate credentials in order to ensure an accurate headcount of expected connections.

    c. Any individual requesting credentials to view the interviews who is not affiliated with any party in this MDL may email zantac_mdl@flsd.uscourts.gov on or before April 23, 2020.

These requests will be reviewed to ascertain technology capabilities to accommodate the number of requested attendees. Recognizing that some interested individuals may not be

able to join the videoconference, there will be a court reporter in attendance at the proceeding and a transcript will be made.

Plaintiffs' Leadership Disclosures

20. The Court takes very seriously the obligation of selecting leadership counsel and the impact that has upon the work of retained counsel. The unique nature of an MDL, and particularly one of this potential size, warrants transparency, the highest regard for professional conduct, and confidence in the leadership and in the manner in which the case is handled by all parties. Because leadership often will be called upon to speak on behalf of all other counsel and their respective clients, they must comport their actions at all times to fulfill their leadership duties in a manner that is dignified and trusted.

21. To that end, the Court directs each applicant for plaintiffs' leadership/PSC, to provide the Court with written responses to the following questions:

    a. Do you represent any present parties or claimants in this litigation who you have represented in any other capacity or in any other court (either currently or within the past 3 years)? If so, please describe.

    b. Do you have any financial interest or financial relationship, including but not limited to as an investor, Officer, Director, employee, or contractor, in or with any party or client/claimant involved in this MDL (other than a written retainer or engagement agreement for a client identified as a client of your firm in the initial census)? If so, please describe.

    c. Do you have any financial interest (direct or indirect) in any Zantac/ranitidine claims or lawsuits filed or registered by any other counsel in this MDL, other than the co-counsel relationships disclosed in the initial census? If so, please describe.

d. Do you have any personal relationship (including but not limited to familial, romantic, or financial/business) with any party, client, claimant, counsel, or vendor involved in this MDL? If so, please describe.
    e. Do you or your firm have any financing that is contingent upon this litigation? If yes, the following questions shall be answered:
        i. Does the litigation funder have any control (direct or indirect, actual or apparent or implied) over the decision to file or the content of any motions or briefs, or any input into the decision to accept a settlement offer?
        ii. Does the financing (1) create any conflict of interest for counsel, (2) undermine counsel's obligation of vigorous advocacy, (3) affect counsel's independent judgment, (4) give to the lender any control over litigation strategy or settlement decisions (as to either the common benefit work done by counsel or work for individual retained clients), or (5) affect party control of settlement?
        iii. Briefly explain the nature of the financing, the amount of the financing, and submit a copy of the documentation to the Special Master.
    f. Finally, the leadership applicant shall disclose any other relationship or fact that he or she believes, if known, would be material to the Court with respect to either an actual conflict of interest or the appearance of a conflict of interest that the applicant has not already disclosed to the Court.
22. These disclosure statements shall be provided to zanac_mdl@flsd.uscourts.gov no later than 4pm on April 16, 2020, in the form of an affidavit under oath from counsel; however, notarization is not required in light of the current COVID-19 restrictions. The disclosure statements will be reviewed by the Court in conjunction with the Special

Master. The Special Master will be directed to investigate as she deems necessary to satisfy her as to whether any potential conflict could be created. With respect to litigation funding, this shall include but not be limited to obtaining an explanation of the nature of the financing, the amount of the financing, and a review of the contract/documentation.

23. The Court requires that these disclosures be immediately updated if any change to this disclosure statement arises, by any appointed leadership counsel and any attorneys who seek to be eligible for common benefit fund compensation. Any attorney appointed to leadership has an affirmative duty to disclose any subsequent financing taken and amount within 24 hours to the Special Master. The Court expressly reserves the right to revisit any individual's leadership position in light of these disclosures.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 3rd day of April, 2020.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

# Appendix A - Leadership Schedule

**Session 1 (May 6, 9am-noon)**
1. Albert, Lee
2. Berman, Steve
3. Dearman, Mark
4. Fegan, Elizabeth
5. Gilbert, Robert
6. Honik, Ruben
7. Hyman, Kelly
8. Krause, Adam
9. Lear, Brad
10. Longer, Fred
11. Martinez-Cir, Ricardo
12. Mestre, Jorge
13. Westcot, Sarah
14. Whitely, Conlee
15. Wolfson, Tina

**Session 3 (May 7, 9am-noon)**
1. Babin, Steven
2. Boldt, Paige
3. Copeland, Erin
4. Crump, Martin
5. Hilliard, Robert
6. Jung, Je Yon
7. Keller, Ashley
8. Leopold, Ted
9. Love, Scott
10. Maher, Steve
11. McGlamry, Michael
12. Moore, Jennifer
13. Nicholas, Steve
14. Pulaski, Adam
15. Roark, Emily
16. Schlessinger, Scott
17. Tracey, Sean
18. Watts, Mikal
19. Yuhl, Christopher

**Session 2 (May 6, 1pm-5pm)**
1. Bogdan, Rosemarie
2. Finken, Tracy
3. Goldenberg, Marlene
4. Kraft, Kristine
5. Larmond-Harvey, Nicola
6. Luhana, Roopal
7. Muhlstock, Melanie
8. Nigh, Daniel
9. Osborne, Joe
10. Parekh, Behram
11. Rasmussen, Kristian
12. Restaino, John
13. Richards, Jason
14. Rodal, Yechezkel
15. Rotman, Steve
16. Scott, Carmen
17. Williamson, George
18. Wisner, Brent
19. Woodson, Frank

**Session 4 (May 7, 1pm-4pm)**
1. Assaad, Gabriel
2. Bachus, J. Kyle
3. Barfield, William
4. Dellacio, Doug
5. Elliott, J. Christopher
6. Ferraro, James
7. Fraser, Scott
8. Miller, Lauren
9. Murphy, John Martin
10. Parafinczuk, Justin
11. Philip, Meagan
12. Schanker, Darin
13. Susen, Marcus
14. Worley, Donald