UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION | MDL NO. 2924<br>20-MD-2924<br><br>JUDGE ROBIN L. ROSENBERG<br>MAGISTRATE JUDGE BRUCE E. REINHART |

_____/

**THIS DOCUMENT RELATES TO: ALL CASES**

<u>**PRETRIAL ORDER #21**</u>
**Order Regarding Applications for Defense Leadership**

The Court established a procedure for the submission of applications for plaintiffs' leadership positions in Pretrial Order #1. The Court did not seek applications for defense leadership at that time, but acknowledged the potential need for the creation of a defense leadership structure in the future. In Pretrial Order #10, the Court recognized that several defendants had entered this litigation and that additional defendants were anticipated to enter the litigation. To facilitate coordination among the defendants, the Court appointed Joseph Petrosinelli (Williams & Connolly), Anand Agneshwar (Arnold & Porter), Andrew Bayman (King & Spalding), and Mark Cheffo (Dechert) to serve as the Defense Leadership Team on an interim basis. The Defense Leadership Team was charged with negotiating with the Plaintiffs' Initial Census and Practices and Procedures Teams regarding the census process and early procedural orders. The Defense Leadership Team later became part of the April Deliverables Team that was charged with moving this litigation forward amidst and despite the limitations that COVID-19 has caused and with preparing for the Initial Conference and the Preliminary Discovery Conference.

In addition, in Pretrial Order #10, the Court appointed Thomas Yoo (Holland & Knight) and Richard Barnes (Goodell Devries) to serve as interim liaisons for the generic manufacturer defendants. The Court appointed Sarah Johnston (Barnes & Thornburg) to serve as interim liaison counsel for the retailer defendants in Pretrial Order #17.

All of these appointments were made on an interim basis. The Court expected that a permanent defense leadership structure would be established when the Court had greater clarity from the parties about the nature and scope of the alleged claims and about the scope of the defendants whose interests will need to be represented in this litigation.

The Court is grateful for all of the work that these interim appointees have done thus far to advance this litigation, for their cooperation and congeniality in working with plaintiffs' counsel and Special Master Dodge to reach agreements as to many issues, and for the presentations that they made to educate the Court during the Initial and Preliminary Discovery Conferences on May 12 and 13, 2020. During the Initial Conference, all of the interim appointees expressed their beliefs that the interim defense leadership structure has served defendants well, and they proposed that the interim appointees become the permanent defense leadership. They also agreed that an application process to establish the permanent defense leadership positions modeled upon the interim structure was appropriate.

The Court agrees that this litigation has advanced to a stage where it is appropriate to establish a more permanent defense leadership structure. The Court does not presently intend to conduct defense leadership interviews, but will instead make appointments based on written submissions.

Accordingly, the Court welcomes the interim Defense Leadership Team and any other interested individuals to file applications for membership on the Defense Leadership Team, as well as applications for generic manufacturers' liaison counsel and for retailers' liaison counsel, on or before **May 20, 2020**.

The main criteria for selection for these positions will be: (a) professional experience in this type of litigation; (b) ability to work cooperatively with others; and (c) willingness of the applicant and client to commit the necessary resources to make an appropriate contribution to the time and costs that will be needed for leadership of the defense of this matter.

The Court seeks leadership that is diverse and that represents different skill sets, expertise, life experiences, and prior MDL experience, so that together the leadership members can bring together a multiplicity of approaches to select the best ideas for moving this matter forward. The Court recognizes the value of both seasoned leadership and energetic attorneys with new ideas, and welcomes applications that provide a proposal for bringing this balance to the MDL. Applications should succinctly address each of the above criteria as well as any other relevant matters. No submissions longer than two (2) pages will be considered. If counsel deem it prudent to submit a joint proposal, such joint proposal shall briefly describe the structure proposed, then attach the individual two-page applications as appendices within the same filing, for the convenience of the Court.

The Court takes very seriously the obligation of selecting leadership. The unique nature of an MDL, and particularly one of this potential size, warrants transparency, the highest regard for professional conduct, and confidence in the leadership and in the manner in which the case is handled by all parties. Because leadership often will be called upon to speak on behalf of all other counsel and their respective clients, they must comport their actions at all times to fulfill their leadership duties in a manner that is dignified and trusted.

To that end, the Court directs each applicant to provide the Court with written responses to the following questions:

    a. Do you have any personal financial interest or financial relationship, including but not limited to as an investor, Officer, Director, or employee, in or with any party or client/claimant involved in this MDL (other than with your client)? If so, please describe.

    b. Do you have any personal relationship (including but not limited to familial, romantic, or financial/business) with any party, client, claimant, counsel, or vendor involved in this MDL that would impact your professional judgment in this matter? If so, please describe.

  c. Finally, the applicant shall disclose any other relationship or fact that he or she believes, if known, would be material to the Court with respect to either an actual conflict of interest or the appearance of a conflict of interest that the applicant has not already disclosed to the Court with respect to his or her ability to represent the defendants in this MDL.

 These disclosure statements shall be provided to zantac_mdl@flsd.uscourts.gov on or before **May 20, 2020**, in the form of an affidavit under oath from counsel. Notarization is not required in light of the current COVID-19 restrictions. The disclosure statements will be reviewed by the Court in conjunction with Special Master Dodge. Special Master Dodge will be directed to investigate as she deems necessary to satisfy her as to whether any potential conflict could be created. As with the plaintiffs' disclosure statements, these statements shall not be discoverable to the maximum extent permitted by applicable law.

 The Court requires that these disclosures be immediately updated, if any change to a disclosure statement arises, by any appointed leadership counsel. The Court expressly reserves the right to revisit any individual's leadership position in light of these disclosures.

 **DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 14th day of May, 2020.

                 _____
                  ROBIN L. ROSENBERG
                  UNITED STATES DISTRICT JUDGE