**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IN RE: ZANTAC (RANITIDINE)                              MDL NO. 2924
PRODUCTS LIABILITY                                        20-MD-2924
LITIGATION

                                              JUDGE ROBIN L. ROSENBERG
                                    MAGISTRATE JUDGE BRUCE E. REINHART

_____/

THIS DOCUMENT RELATES TO:
ALL ACTIONS

<u>PRETRIAL ORDER # 37</u>
**Protocol for Common Benefit Work and Expenses**

On February 6, 2020, the Judicial Panel on Multidistrict Litigation transferred the initial group of 12 civil actions to this Court for coordinated and/or consolidasted pretrial proceedings. Since that time, more than 400 additional civil cases have been direct-filed or transferred to this Court and been made part of MDL 2924.  Moreover, pursuant to PTO # 15, a Registry has been established by this Court to hold a substantial number of additional potential claims as they are investigated and assessed for potential later filing.  On February 14, 2020, in PTO # 1, the Court established, *inter alia*, procedures for Plaintiffs' leadership applicants.  On May 8, 2020, in PTO # 20, the Court appointed Plaintiffs' Co-Lead Counsel (collectively, "Lead Counsel"), the Plaintiffs' Steering Committee ("PSC")[1], certain Committee Chairs and the Leadership Development Committee ("LDC") (collectively, "Leadership Counsel").

The Court recognizes that, at some time in the future, there may be applications submitted by attorneys requesting common benefit fees and/or expenses.  The Court expresses no opinion regarding whether payment of any common benefit fees or expenses will ever be appropriate. Anticipating that fees may be requested in the future, the Court places importance in providing

---

[1] The Plaintiffs' Liaison Counsel has an *ex officio* role within the PSC pursuant to PTO # 20, and is thus treated as a member of the PSC for purposes of this Order.

clarification to counsel regarding how fees and expenses must be documented contemporaneously so that appropriate documentation exists.  Further, there is importance in giving all counsel as much clarity as is possible at this stage in the litigation to aid in deciding whether to incur expenses for the common benefit or to participate in receiving the benefits of this MDL.

The Court acknowledges that reasonable common benefit work and expenses are necessary for the collective prosecution of all cases in this MDL litigation.  This Order establishes specific protocols and guidelines for common benefit work and expenses so that any attorney applying for common benefit fees and/or expenses in the future will have notice of the standards that will be employed in assessing those applications.  These protocols and guidelines are not meant to be exhaustive, and the Court may issue additional procedures, limitations, and guidelines in the future. Moreover, simply because an expense fits within a category of potential common benefit, or a time entry satisfies the standards for reporting set in this Order, it is not a guarantee that such time or expense will ultimately be deemed as compensable.  Rather, this Order is intended to provide guidance to counsel about what will not be considered as common benefit, and the Court expressly reserves the determination of whether there should be a common benefit payment, and if so, what it should be, until an appropriate time later in the course of this MDL.

The Court is mindful of the magnitude of the work that will be necessary in this consolidated litigation and the need to be efficient and effective in time management and cost sensitivity.  Further, the Court has as a fundamental goal that all Plaintiffs and Registry Claimants and their counsel are treated fairly in common benefit fees and expense assessments and considerations of settlement.  To further these aims, it is the Court's intention that the process of collecting, holding, and distributing common benefit fees and expenses be as open and transparent as possible.

Part I of this Order sets forth the application of the common benefit doctrine.  Part II of this Order addresses the timeliness of authorizing a common benefit fee and expense percentage and issuing a holdback.  Part III turns to the contemporaneous reporting requirements for any time or expenses that counsel may later seek to have compensated through any common benefit fund that may be established by this Court.

## I.     Scope of Common Benefit

This MDL is comprised of not only a number of filed cases in this Court, but also many unfiled potential claims in a Registry established pursuant to PTO # 15.  The Court anticipates that thousands of potential claims will be registered over the coming months.  In fact, the number of claims in this Court's Registry may be substantially larger than the number of filed lawsuits in the MDL.

This Order is entered to enable both Plaintiffs' and Claimants' Counsel to obtain access to and use common benefit work product developed, or to be developed, by Leadership Counsel, and also to provide for the fair sharing among Plaintiffs, Claimants, and others who benefit from the services performed and expenses incurred by counsel acting for the common benefit in this litigation.  In so doing, the Court enters this Order to further the purpose of avoiding unnecessary expense, conserving judicial resources, and expediting the disposition of all cases, filed, unfiled, and/or registered, with respect to the subject matter of this MDL.

Part I of this Order sets forth (A) the common benefit doctrine, (B) the application of this Order to cases filed in the MDL, (C) the application of this Order to potential claims filed in the Registry, and (D) the process for counsel or Claimants to complete the Registry Consent.

### A.  The Common Benefit Doctrine

The governing principles are derived from the United States Supreme Court's common benefit doctrine, as established in *Trustees v. Greenough*, 105 U.S. 527 (1881); refined in, *inter*

*alia*, *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1884); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); and approved and implemented in the MDL context in, *inter alia*, *In re Air Crash at Fla. Everglades on December 29, 1972*, 549 F.2d 1006, 1019-20 (5th Cir. 1977); *In re MGM Hotel Fire Litigation*, 660 F. Supp. 522, 525-29 (D. Nev. 1987); *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113 (2d Cir. 2010); and *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La. Aug. 4, 2005).   The Court's authority to establish a fund and to order contributions also derives from its equitable authority and its inherent managerial power over this consolidated and multidistrict litigation.  *See, e.g.*, *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *In re Diet Drugs*, 582 F.3d 524, 546-47 (3d Cir. 2009); *In re Air Crash Disaster at Fla. Everglades*, 549 F.2d 1006, 1008 (5th Cir. 1977); *In re Vioxx*, 802 F. Supp. 2d 740, 770 (E.D. La. 2011); Manual for Complex Litigation, § 14.121. Common benefit work product includes all work performed for the benefit of all Plaintiffs and Claimants, including pretrial matters, discovery, trial preparation, trial, a potential settlement process, and all other work that advances this MDL to conclusion.

### B.  Cases Filed in the MDL

This Order applies to all cases now pending in this MDL, as well as any case later filed, transferred to, or removed to this Court and treated as part of the coordinated pretrial proceedings known as *In re Zantac (Ranitidine) Products Liability Litigation*, MDL 2924 (collectively "the Zantac MDL Cases").[2]  Derivatively, this Order applies to each Plaintiff and Plaintiffs' Counsel in those cases.

---

[2] This Court recognizes the potential for certain cases to be removed from state court and then transferred to this MDL, and that retained counsel may at an appropriate point seek remand to state court.  The Court expressly reserves the determination of whether and how such cases will be treated.

### C.  Potential Claims Filed in the Registry

This Order applies to all claims now pending in the Registry, as well as any claim later filed in the Registry, and therefore treated as part of the Zantac MDL Cases for purposes of this Order.

### i.  Common Benefit to Registry Participants

This Court created a Registry in PTO # 15, which allows for the parties to jointly provide the resources necessary to conduct a preliminary investigation into potential claims.  These benefits to Registry Claimants are the result of substantial time spent by Lead Counsel negotiating with defendants as to the creation and implementation of the Registry; for example, Lead Counsel have negotiated for the receipt of certain corporate records, product identification information, and tolling, which inure to the benefit of the participating Registry Claimants and their counsel.  In addition, the expenses being incurred in connection with the Registry—for example, those for the platform vendor and the Special Master—are incurred as MDL expenses.  Registrants may also benefit from obtaining certain loyalty card information and/or prescription records from participating Retailer defendants, as well as certain cost-sharing on selected records retrieved by Lexitas, as set forth in PTO # 15.  In parallel with the Registry, Lead Counsel will be moving forward with discovery, defending motions to dismiss, and pursuing evidence toward the goal of establishing general causation, and ultimately informing the Court and parties of the alleged injuries.

Given the novel nature of the Registry, the Court deems it prudent to provide clarity to all stakeholders as to the operation of the Registry, including the application of this Order to the claims in the Registry, thus allowing all stakeholders to make an informed decision about whether to opt into participation in the Registry.  Indeed, while implemented by this Court's Order, the Registry was created by, and remains a vehicle of, party consent—no individual is obligated to put his or

her claim into the Registry, just as each defendant has made an election whether to participate in the Registry; the courthouse doors remain open to all.

### ii. Scope of Use of Common Benefit Work Product

The parties designed the Registry to continue in force until shortly after this Court's *Daubert* ruling on general causation. In designating this end-date, the parties represented to the Court that the Registry process is intended to toll claims not only as individual-specific information is gathered, but also to allow for threshold motion practice and for general evidence to be developed so that retained counsel have this information before deciding whether to file their potential claims as lawsuits.

Consistent with this intent, Lead Counsel have indicated that they intend to provide Registry Counsel with detailed and specific information obtained from each individual defendant about those defendants' involvement with Zantac/ranitidine, to help ensure that each counsel is more accurate in naming defendants in any subsequent litigation and that each claim is tied to the proper defendants in the Registry in the interim. So too, they have indicated that they intend to share work product about their views on the strength of causation evidence as to particular types of cancer, as well as the list of cancers they intend to pursue within this MDL, in furtherance of the Registry's purpose. More broadly, the Registry will necessarily incorporate the consequences of this information as the parties move forward with the Registry's purposes of helping assess the individual claims in the Registry.

Because of this intertwining of the Registry's operation with the core work product of the MDL, Lead Counsel have indicated that it is not feasible to allow Registry Counsel to opt-out of receiving this information as it is inherent to the purposes of the Registry. Indeed, without this educational purpose being fulfilled, the defendants would not receive one of the key benefits to their clients of the Registry.

The Registry was uniquely constructed by the parties for the purpose of jointly developing information about the Zantac/ranitidine claims in this MDL and cooperatively honing the claims of Claimants in the Registry. But this purpose cannot be served if Registry Counsel decline to receive that information, which would substantially undermine the purposes of the Registry. As a result, Lead Counsel have indicated that all Claimants must have full access to all work product in the litigation.

Equally importantly, Registry Counsel are agreeing to use that work product not just for Registered Claimants but all individuals they represent. One of the fundamental benefits of the Registry for defendants is this information-sharing, assuring that Registry Counsel will use the MDL work product to make better-informed decisions about which claims to file and against which defendants (if any), wherever filed. And it must be so: Consider a Registry Counsel who receives detailed information for example showing that of 21 ANDA holders, Lead Counsel have determined which of the 21 manufactured for a particular retailer in a particular year, and Registry Counsel is provided with access to the underlying documents on which that assessment was based. The Counsel also receives a statement from Lead Counsel that two of the 21 ANDA holders never manufactured, despite holding an ANDA, and access to the underlying documentation on which that conclusion was based. That Counsel would necessarily use that information in connection with deciding what defendants are properly named in any future lawsuit, whether or not the client was enrolled in the Registry. This simple example helps illustrate the uniqueness of the Registry— but also the reason that Lead Counsel have indicated that a Registry Counsel cannot receive this work product without using it for the benefit of all clients they represent, whether registered or not.

Recognizing the complexity of the interactions of these features, the Court believes it is essential that all counsel are expressly notified that this is the goal of the Registry and the

consequences of registering, and that counsel expressly affirm that understanding before their cases are registered.  If any counsel elects not to agree to these terms of the Registry, he or she remains able to file any litigation in any appropriate forum, including this Court, without any prejudice to any of their client's legal rights—but they will not be able to benefit from tolling, cost-sharing, and the other bargained features of the Registry.

### D.  Registry Consent Form

Pursuant to PTO # 23, the first deadline for unfiled Claimants seeking to participate voluntarily in the Registry to complete their registration via submission of a Census Plus Form is August 17, 2020.   Consistent with the Court's desire to ensure that counsel have a clear understanding of the Registry's functioning and an opportunity to make an informed election as to enrollment of their clients (or themselves, in the case of unrepresented Registry Claimants), the Court directs the following process for a Registry Consent to be obtained on behalf of all Registry Claimants.

#### i.  The Registry Consent Requirement

This Registry Consent process will ensure that the Lead Counsel, all retained counsel, and Registry Claimants have a clear understanding of the role and obligations of Lead Counsel, and the scope of the right of access and use of work product by retained counsel.  All Plaintiffs' or Claimants' Counsel in the MDL must complete the following acknowledgment of the terms of use for the Registry.  For counsel who presently represent only filed MDL Plaintiffs, the Registry Consent merely acknowledges their understanding that, if they in the future choose to enroll a Claimant in the Registry, then they will be bound by these terms.  For counsel who presently intend to represent Registry Claimants, the Registry Consent provides clarity on the operation of the Registry, the rights of the Claimants and Registry Counsel, and the obligations to which they are bound upon completion of the Registry Consent.

The Registry Consent will expressly affirm an understanding of the Registry's structure and the obligations of opting into the voluntary Registry, specifically: (a) Acknowledge that the Claimant is bound by the terms of the existing PTOs, and consents to the authority of the Court to issue additional PTOs governing Claimants, including but not limited to those furthering the Registry's purpose of assisting parties in the joint investigation and assessment of potential claims; and consents to this Court's jurisdiction as to the operation of the Registry, common benefit funds, and any other dispute related to the operation of any PTO in this MDL or contract related to the Registry. (b) Acknowledge that in order to negotiate these PTOs, the Claimants agree that Lead Counsel is authorized to represent them in these negotiations and more broadly to act on their behalf to the same extent as a Filed Plaintiff in this MDL; the scope of this authorization is that set forth in PTO # 20. (c) Acknowledge that the Claimants have a full right of access to the work product of this MDL, that such work product shall be kept confidential, and that counsel contractually agree that as a result all of the firm's Zantac/ranitidine clients will benefit from the MDL work product and thus are subject to the common benefit holdback issued by this Court with respect to common benefit fees and expenses (if any).

### ii.   Completion of Registry Consent by Retained Counsel

The link to this Order and the Registry Consent shall be provided by Lead Counsel to those firms Lead Counsel are aware intend to participate in the Registry. Such Registry Consent shall be completed by an attorney from each participating firm within 15 days of this Order; only one Registry Consent need be completed by each firm, as it is on behalf of all clients. If a firm does not presently represent either any Plaintiffs in the MDL or Registry Claimants at this time, but does so in the future, the 15-day period to complete the form shall commence from the earlier of the date that LMI credentials for Zantac are requested or the date a CPF is uploaded on behalf of a client of the law firm.

LMI shall provide a deficiency notice to any counsel who has Zantac credentials on its system who has not provided this Registry Consent within that 15-day period.  If such deficiency is not corrected within 15 days, a final notice shall be provided to retained counsel by Lead Counsel with a 7-day cure period.  If the deficiency is not corrected during the 7-day cure period following notice by Lead Counsel, retained counsel shall be notified that all Claimants represented by the firm are being removed from the Registry.  As a consequence, the claims will no longer be subject to continued tolling pursuant to PTO # 15.  LMI will maintain a record of firms that have completed their Registry Consent and provide such list upon request to the Plaintiffs' and Defendants' Liaison Counsel, Coordinating Counsel, and the Special Master.

No records shall be obtained for a Registry Claimant until his/her counsel have completed the Registry Consent process.

### iii.  Completion of Registry Consent by Unrepresented Claimants

Any unrepresented Claimant who notifies Plaintiffs' Liaison Counsel of an interest in registering his/her claim in the Registry will be provided by LMI and/or Plaintiffs' Liaison Counsel with the Registry Consent and an explanation drafted by Lead Counsel of the timeline for and importance of completion.  The Registry Consent will need to be accepted by the Claimant and returned to LMI or Plaintiffs' Liaison Counsel prior to any records retrieval or other work being done on the claim in the Registry.  However, failure to correct this deficiency shall not be the sole basis for removing such case from the Registry for such *pro se* litigants.

### iv.  Interaction with Other Agreements; Special Master Authorization

Lead Counsel have indicated to this Court that they may further enter into Common Benefit Work Agreements with certain counsel who seek to perform work for the common benefit and whom Lead Counsel seek to authorize to perform such work, and/or a voluntary Participation Agreement with counsel that have filed cases in the MDL but do not utilize the Registry for any

unfiled Claimant. Nothing in Part I of this Order shall be construed to limit the terms or conditions of those Common Benefit Work and/or Participation Agreements. A copy of any such Common Benefit Work Agreement or Participation Agreement shall be provided contemporaneously to the Special Master via email, with copies to the Plaintiffs' Lead Counsel and the contracting counsel.

The Special Master is authorized to assist any *pro se* litigant or other stakeholder as-needed in her discretion, including arranging a meet and confer with Lead Counsel, the Plaintiffs' *Pro Se* Liaison, or their designee. The Special Master shall have the authority to extend the timelines provided in this Order within her sole discretion for a limited period of time. She shall only have the authority to modify other terms in Part I of this Order with the written consent of Lead Counsel, and only as she deems necessary to accommodate a situation or arrangement not contemplated by the terms of this Order as applied to a particular person/entity/stakeholder.

## II. Timeliness of Authorizing a Common Benefit Fee and Expense Percentage and Issuing a Holdback

In an effort to apprise all attorneys who represent a Plaintiff or Registry Claimant with a potential claim related to the Zantac MDL Cases of the proposed common benefit deductions at the earliest practicable time, Lead Counsel have requested that the Court approve common benefit deductions equal to six percent (6%) for attorneys' fees and two percent (2%) for expenses, for a total of eight percent (8%), to be withheld and deducted from all future settlements or judgments involving individual personal injury and/or wrongful death claims involving the subject matter of this litigation.

Lead Counsel have represented to the Court that at this early stage of the litigation— following months of discussions and negotiations with defense counsel, preparations for and presentations at the Initial Conference and Preliminary Discovery Conference held on May 12 and 13, 2020, negotiations resulting in entry of the Stipulated Discovery and Case Management Schedule (DE # 875), preparation and filing of the Master Personal Injury Complaint on June 22,

2020 (DE # 887), and preparation and service of initial discovery, as well as their own internal discussions—they recognize the likely scope and enormity of the work and expenses that will be necessary for the prosecution of the individual personal injury and wrongful death cases in this litigation, as well as the substantial risks inherent in litigation of this nature. Lead Counsel have represented to the Court their desire to clearly communicate to non-leadership Plaintiffs' and Claimants' Counsel, at this early stage in this MDL, their binding commitment to seek a common benefit fee and expense percentage that is fair and reasonable and, further, that Lead Counsel will not seek to increase the common benefit fee and expense percentage during the course of this litigation, thereby allowing non-leadership Plaintiffs' Counsel and Claimants' Counsel and their clients to make an informed decision whether to participate in this MDL. Lead Counsel believe that non-leadership Plaintiffs' Counsel and Claimants' Counsel and their clients are entitled to know, up front, what Lead Counsel anticipate that they will be charged or assessed and to rely on the representations of Lead Counsel that their request for a common benefit fee and expense percentage will not be increased at a later stage in the litigation.

With this spirit of transparency and to encourage and incentivize non-leadership Plaintiffs' Counsel and Claimants' Counsel and their clients to participate in this MDL and associated Registry, and based on their assessment of the likely scope and enormity of work and expenses that will be necessary for the prosecution of this litigation, as well as the substantial risks inherent in this litigation, Lead Counsel have requested that the Court approve common benefit fee and expense deductions equal to six percent (6%) for attorneys' fees and two percent (2%) for expenses, for a total of eight percent (8%), and have represented that, if approved by the Court, these percentages will remain fixed for the duration of this litigation and Lead Counsel will not later seek to increase the proposed common benefit deductions.

This Court recognizes the complexity of this litigation, including the substantial number of defendants, multiple causes of action and theories of liability of the individual personal injury and wrongful death claims, the magnitude of discovery from such a large number of defendants, and robust motion practice contemplated by the parties.

The Court's review of common benefit orders from other MDLs confirms that, in many instances, after setting an initial common benefit fee and cost percentage, plaintiffs' leadership in those MDLs later sought to increase that percentage. According to Lead Counsel, a subsequent increase in the common benefit fee and cost percentage can have an adverse affect on non-leadership Plaintiffs' Counsel and Claimants' Counsel and their clients. Lead Counsel have therefore requested that this Court preliminarily approve common benefit deductions equal to six percent (6%) for attorneys' fees and two percent (2%) for expenses, for a total of eight percent (8%), subject to the Court's plenary and final consideration at the time of any settlement reached in this MDL, as the maximum common benefit fee and expense deductions to be withheld and deducted from all future settlements or judgments involving individual personal injury and/or wrongful death claims involving the subject matter of this litigation.

The Court commends Lead Counsel for recognizing this problem and their willingness to take upon themselves a commitment to non-leadership counsel to provide this assurance to those counsel who are filing in this MDL and the Registry.  The Court has included this request and representation by Lead Counsel to provide transparency to counsel as they make these forum-selection and contractual decisions.  The Court also notes that Lead Counsel have spent an enormous amount of time over the past months, and thus may be well-situated to make an assessment of the appropriate common benefit percentage.

However, the Court is less well-situated to make this determination at this juncture.  While the Court has had the benefit of two status conferences, the coming months will provide the Court

with much more information about the scope and magnitude of this MDL and its Registry—including but not limited to the commencement of the Registry reports and the start of motion practice, which will not only inform the Court directly, but allow the Court to delve into these issues more deeply.   So too, while the Court understands that substantial work has been performed—and indeed, has repeatedly commended all counsel for their excellent work—the Court has not yet seen any common benefit time and expense submissions, which will be useful in understanding the magnitude of the work that has been and will be performed.

The Court therefore declines to authorize  a specific common benefit fee and percentage or issue a preliminary holdback in this Order at this early juncture.  In so declining, the Court notes that it has no information to suggest that the requested holdback would be unreasonable, and further that it will put substantial weight on Lead Counsel's representation that such holdback should not exceed 8% in total.  At an appropriate time, the Court may issue such an Order, and establish a mechanism for creating specific accounts to hold these common benefit fee and expense deductions for the purpose of reimbursing counsel for common benefit fees and expenses, as well as other procedures relating to this program including but not limited to defendants' obligations, if any.  But today is simply too early in the litigation.

The Court will revisit this issue at an appropriate time, and directs Lead Counsel and defense counsel to keep the Special Master apprised of any developments (whether in this MDL or otherwise) that would make it helpful for the Court to provide clarity on the scope of any preliminary common benefit holdback.

### III.    Adoption of Case Management Protocols for Common Benefit Work

The Court adopts the following protocols for the management of case-staffing, timekeeping, cost reimbursement, and related common benefit issues.

14

**A.  General Framework Protocols**

The recovery of common benefit attorneys' fees and cost reimbursements will be limited to "Common Benefit Counsel."   "Common Benefit Counsel" are defined as: (i) Leadership Counsel appointed by the Court in PTO # 20, as well as attorneys and staff of their respective firms; (ii) those Plaintiffs' Counsel previously appointed on an interim basis, pursuant to PTO #s 4, 5, 8, 9, 14 and 16, to perform certain common benefit work and incur associated expenses through the date of entry of PTO # 20; and (iii) other counsel authorized by Lead Counsel in writing (email or letter) to perform work and/or incur expenses that may be considered for common benefit compensation and/or expense reimbursement.

Common Benefit Counsel will be eligible to receive common benefit attorneys' fees and reimbursement of expenses only if the time expended, expenses incurred, and activity in question (a) were beneficial to the prosecution of this MDL and for the common benefit of Plaintiffs; (b) comply with the protocols set forth herein, including being timely submitted; and (c) were reasonable in the determination of Lead Counsel and the Court or its designee.  Eligibility does not pre-determine entitlement to and/or approval of attorneys' fees and/or expenses. No entitlement to and/or payment of common benefit fees or expenses shall be made without this Court's approval.  The Court retains discretion to evaluate and determine all requests for common benefit fees and expenses submitted by Common Benefit Counsel.

By performing any common benefit work and seeking payment of common benefit attorneys' fees and reimbursement of expenses, Common Benefit Counsel: (i) acknowledge and agree to the terms and conditions herein in writing, including submitting to the Court's jurisdiction, and that the Court will have final authority regarding the determination of common benefit attorneys' fees and expenses, as well as the allocation of such fees and expenses in this matter; (ii) agree to be bound by the Court's determination of common benefit attorneys' fees and expenses,

15

attorneys' fee allocations, and expense reimbursements; (iii) expressly waive any right to assert lack of enforceability of this Order or otherwise challenge its adequacy to the maximum extent permitted by law; and (iv) represent to this Court that they are either Registry Counsel and have completed the Registry Consent, or they have otherwise entered into a Common Benefit Work agreement with Lead Counsel.  Common Benefit Counsel shall provide this acknowledgement via email to Lead Counsel and to the Special Master prior to the submission of a first common benefit Time and/or Expense Report.

Lead Counsel, with the assistance of a third party neutral and/or independent Certified Public Accountant ("CPA"), specifically tasked with auditing responsibilities, shall be responsible for collecting and reviewing monthly common benefit time and expense submissions from Common Benefit Counsel, timely auditing such submissions for compliance with the protocols set forth in this Order, and informing Common Benefit Counsel in writing when their submissions do not comply with the directives and guidelines set forth in this Order.  Lead Counsel shall allow Common Benefit Counsel a reasonable opportunity to provide a response to notices of non-compliance, in order to demonstrate compliance, but in no event shall this time period extend beyond 30 days following the date of the notice of non-compliance.  The ultimate determination of what is compensable common benefit work and expenses, and the extent or rate at which it is compensable, is initially within the purview of Lead Counsel, subject to ultimate review and approval by the Court.

**B.  Compensable Common Benefit Time**

**i.   Authorization for Compensable Common Benefit Work**

Authorized common benefit work performed after the date of this Order shall be expressly authorized by Lead Counsel in writing to facilitate the litigation and avoid confusion about whether particular work was authorized as common benefit work by Lead Counsel.    No time spent on

developing or processing purely individual issues in any case, or for an individual client (Claimant), will be considered or should be submitted as common benefit work, nor will time spent on any unauthorized work. Common Benefit Counsel shall carry out only those tasks made or expressly authorized by Lead Counsel in writing. Tasks that are not authorized in writing will not be compensated as common benefit work. In the event Common Benefit Counsel are unsure if the action they are about to undertake is considered common benefit work and/or within the authorization received from Lead Counsel, they shall confirm such authorization to perform such work for the common benefit with Lead Counsel in advance in writing (this may be provided by email). Common Benefit Counsel shall include a copy of the written authorization for the work performed with the monthly time report.

### ii. Common Benefit Work Tasks

The following is a non-exhaustive list of examples of presumptively authorized and unauthorized common benefit work:

a. **Conference Calls, Video Conferences, and Meetings.** Lead Counsel will convene conference calls, video conferences, and/or meetings of Leadership Counsel to discuss ongoing matters and issues pertaining to the litigation. Likewise, PSC Committees and the LDC will convene conference calls, video conferences, and/or meetings to discuss ongoing matters and issues pertaining to the litigation. Time spent by Lead Counsel, members of the PSC, LDC, Committees, Liaison Counsel, and other Common Benefit Counsel authorized to participate in such calls, conferences, and meetings constitutes common benefit work. There is a presumption that only one participant per firm will qualify for common benefit work during such conference calls, video conferences, and meetings, unless otherwise authorized by Lead Counsel. The Court encourages the use of LDC attorneys wherever appropriate, reminding Lead Counsel of the importance of mentoring and development for these counsel and that, to the extent necessary, the Special Master may waive this presumption to facilitate appropriate use of LDC counsel.

b. **MDL Status Conferences and Hearings.** The Court will hold periodic status conferences and hearings to ensure that the MDL moves forward efficiently and that legal issues are resolved through formal rulings or guidance from the Court. Individual attorneys may attend any status

conference or hearing held in open court to stay up-to-date on the status of the litigation, but except for Lead Counsel and counsel specifically authorized by Lead Counsel, attending such conferences and hearings will presumptively not be considered compensable common benefit work. If the conference or hearing is offered with remote access, by Zoom, or otherwise, other Leadership Counsel may attend but such time shall presumptively not be considered compensable common benefit work. All attorneys have an obligation to keep themselves informed about the litigation so they can best represent their respective clients. The attorneys designated by Lead Counsel to address issues that will be raised at a given status conference or hearing, or requested by Lead Counsel to be present at a status conference or hearing, are working for the common benefit, and their time will be considered for the common benefit.

c. **Master and/or Consolidated Pleadings, Motions, and Briefs.** The following is a non-exhaustive list of work relating to pleadings, motions, and briefs that will be presumptively considered common benefit work: (i) research and preparation of master and/or consolidated complaints and related briefing; and (ii) research and preparation of motions, oppositions, and/or replies to motions, including but not limited to, motions pursuant to Federal Rules of Civil Procedure 12, 23, 45, and 56. If common benefit fees are sought, the Court will need to determine not only the reasonableness of the request but also the contribution of that work. Counsel are therefore directed to maintain descriptions that are detailed to permit the Court to review the reasonableness of time spent given the scope of work assigned to counsel, as well as the importance of the attorney's work to the outcome of the motion and/or litigation, particularly where multiple attorneys are working on the same briefing. For example, if working on a response to a motion to dismiss and work is divided among counsel, the entry should include not only which motion to dismiss is being worked on, but also which legal argument is being developed and whether the work is legal research, drafting, or collaborating with colleagues on the arguments.

d. **Depositions.** While it is impracticable to impose inflexible rules to cover every conceivable situation, Lead Counsel shall exercise discretion, judgment, and prudence to designate the appropriate number of attorneys to participate in any given deposition commensurate with the nature of that deposition to avoid over-staffing. Thus, for example, the deposition of a causation expert proffered by defendants would typically justify the assignment of more attorneys than would the defense of the deposition of one of Plaintiffs' fact witnesses. Time (and expenses) for Common Benefit Counsel who are not designated or otherwise authorized to attend the deposition by Lead Counsel may not be considered common benefit work but, rather, considered as attending on behalf of such counsel's individual client(s). In the event a deposition is offered with remote access, by Zoom or otherwise, other Common Benefit Counsel may attend if authorized in advance by Lead Counsel, but such time shall presumpively not be considered compensable common benefit work.

**e.  Document Review.**   Only document review authorized by Lead Counsel and assigned to specific Common Benefit Counsel will be considered common benefit work.  The document review done by designated Common Benefit Counsel shall be performed by appropriately trained individuals selected by the firm.  If a Common Benefit Counsel elects to review documents that have not been assigned by Lead Counsel, that review is not considered common benefit work.  Descriptions associated with "document analysis" or "document review" should contain sufficient detail to allow those reviewing the time entry to generally ascertain what was reviewed.  The descriptions should include, for example, the custodian of the document, a general description of the documents reviewed, and the number and bates-range of the documents reviewed.

**f.  Identification and Work Up of Experts.**   Lead Counsel and the PSC are expected to identify, retain, and work up experts.  If a Common Benefit Counsel retains an expert without the authorization of Lead Counsel, she/he understands that the MDL may not need or use that expert and the associated time (and expenses) may not be eligible for common benefit expenses/work.

**g.  Bellwether Trials.**  The work-up of individual cases is not considered common benefit work.  In the event a case is selected as part of an approved bellwether trial process in the MDL litigation, the work performed (and expenses incurred) following selection in working up and trying the case (including work performed as part of the approved bellwether process) may be considered common benefit time to the extent it complies with the other provisions of this Order.

**h.  MDL Video Conferences, Conference Calls, and Webinars.**   Lead Counsel and Leadership Counsel will convene periodic video conferences, conference calls, and/or webinars so non-leadership Plaintiffs' attorneys are kept updated on the status of the MDL litigation.  The attorneys designated by Lead Counsel to organize and/or give presentations during the periodic video conferences, conference calls, and/or webinars are working for the common benefit by keeping other lawyers informed and educated about the litigation and their time will be considered for common benefit.  However, time spent by Common Benefit Counsel who join such calls and/or webinars is presumptively not considered common benefit work.  Each attorney has an obligation to keep herself/himself informed about the litigation so she/he can best represent her/his clients, and that is a reason to listen in on those calls and webinars.

**i.  Review of Court Filings and Orders.**  All attorneys have an obligation to keep themselves informed about the litigation so that they can best represent their respective clients.  Review of pleadings, filings, and orders is part of that obligation. Only Lead Counsel and Common Benefit Counsel working on assignments that require them to review, analyze, or summarize those

filings or orders in connection with their assignments are doing so for the common benefit. All other counsel are reviewing those pleadings, filings, and orders for their own benefit and the benefit of their respective clients, and such review is presumptively not considered common benefit work. This paragraph shall not be construed to prevent Lead Counsel and Leadership Counsel from submitting common benefit time for reviewing pleadings, filings, and orders that are necessary for review to fulfill their respective obligations.

j.  **Review of Discovery Responses**. All attorneys have an obligation to keep themselves informed about the litigation so they can best represent their respective clients, and that may require them to review discovery responses served in this litigation. Only Lead Counsel and those Common Benefit Counsel designated by Lead Counsel to review and summarize discovery responses for the MDL are working for the common benefit, such that their time may be considered common benefit work. All other counsel are reviewing those discovery responses for their own benefit and the benefit of their respective clients; the review is thus not eligible to be considered as common benefit work.

k.  **Emails and Correspondence.** Time recorded for drafting and/or reviewing emails and correspondence, and providing non-substantive responses, generally is not compensable as common benefit work unless germane to a specific task being performed by the Common Benefit Counsel that is directly related to that email or correspondence. Lead Counsel or Common Benefit Counsel will inevitably spend time substantively communicating with opposing counsel, including negotiating particular terms or disputes by email, as part of their assigned common benefit tasks. These types of substantive email correspondence may qualify as common benefit time. Lead Counsel may spend time updating other counsel on matters via email, or task other Common Benefit Counsel with drafting such updates. Where this occurs, while the drafting attorney may be working for the common benefit in keeping others updated, the recipients who are not performing any substantive work on the matter are not working for the common benefit but instead for the benefit of their individual clients. Each attorney has an obligation to keep herself/himself informed about the litigation so that she/he can best represent her/his clients, and that is a reason to review emails to a larger group which involves a matter on which the recipient is not directly and immediately working. In addition, if time submissions are heavy on email review and usage with little related substantive work, that time may be significantly discounted or not compensated at all. Non-substantive administrative and clerical tasks will not be considered as common benefit work unless expressly authorized by Lead Counsel.

l.  **Contract Attorneys.** Contract attorneys may only be utilized to perform common benefit work if they are disclosed to and authorized in writing by Lead Counsel. The time incurred by contract attorneys working for

Common Benefit Counsel on authorized assignments is eligible for inclusion as common benefit work, provided it complies with the other requirements in this Order. However, the services of contract lawyers (whether used for document review or any other work) shall be billed at the actual cost of those services to Common Benefit Counsel with no markup or increase.

### iii. Time Records and Hourly Rates

**a. Recording Requirements.** All Common Benefit Counsel shall record and maintain daily, contemporaneous time records for all work performed by attorneys and paralegals, indicating with specificity the name of the person who performed the work, the time billed in one-tenth-of-an-hour (0.10) increments, and the person's hourly billing rate, along with a description of the activity (such as "conducted deposition of John Doe"). Descriptions must be sufficiently detailed to identify the task and how it relates to Common Benefit Work. Individuals identified in time descriptions must be described by at least their first initial and last name, not by initials. "John Doe" is preferred; "J. Doe" is acceptable; and "JD" is unacceptable. Counsel shall maintain contemporaneous time records in such a way that each billed activity is recorded. Counsel will not be reimbursed for any item of time not described in sufficient detail to determine the nature and purpose of the service or expense. In addition, law clerk time is not compensable as common benefit time.

**b. Hourly Rates.** With the exception of Tier 1 document review (addressed below), customary hourly billing rates shall be used in the monthly time reports submitted to Lead Counsel. Use of these rates does not guarantee their payment. Billing rates should be the then-current hourly billing rates and, if those change, that needs to be reflected in the relevant report. Lead Counsel and the Court reserve the discretion to determine appropriate rates.

**c. Document Review.** Document review can be the most challenging area of a case to keep control over time and expenses. Lead Counsel will contract with a vendor(s) and strive to get the best services for the best price without sacrificing quality. Lead Counsel may direct the use of technology assisted review ("TAR") and/or predictive coding to prioritize and/or categorize documents produced by defendants and/or third parties, if they believe this will obtain efficiencies and enhance the quality of any systematic document review.

In general, once a document database is established on an electronic platform, searches may be used to create a universe of documents to be reviewed by the Tier 1 document reviewers. Procedures should be established to monitor how much time is spent reviewing documents and to monitor the efficiency and quality of the review. Customary hourly rates for attorneys and paralegals engaged in Tier 1 document review shall be billed at their customary hourly rates, while contract attorneys shall be

billed at actual cost; in no event should Tier 1 document review exceed the maximum rate of $350 per hour.

Depending on the volume of documents produced, it is possible that a large number of document reviewers will be needed. Where it proves economically advantageous, Lead Counsel and the PSC may employ contract attorneys to perform efficient and focused document review. Those attorneys would be subject to the procedures set forth herein. However, the services of contract lawyers for document review (or any other work) shall be billed at the actual cost of those services.

### C. Compensable Common Benefit Expenses

#### i. Common Benefit Fund for Common Shared Expenses

Lead Counsel will establish a Common Benefit Litigation Fund ("Fund") to receive, hold, and disburse funds deemed reasonable and necessary for Common Shared Expenses, as defined and outlined herein, to effectively prosecute the common interests of the Zantac MDL Cases. The Fund shall be held in an account at a federally insured banking institution, and Lead Counsel shall obtain a Federal Tax ID number for such account. The account shall be maintained by Lead Counsel. Any funds to be paid out of the Fund shall be paid only upon the direction of Lead Counsel. Lead Counsel may retain a CPA to assist in providing regular accountings of the Fund to Lead Counsel and the Court, if requested.

Lead Counsel will periodically make and collect assessments from Common Benefit Counsel and shall deposit those assessments into the Fund. All assessments from Common Benefit Counsel must be received within thirty (30) days of the request. Failure to pay timely assessments will be grounds for removal from court-appointed positions, removal from further common benefit work assignments, and/or denial or partial denial of common benefit attorneys' fees in the Zantac MDL Cases.

### ii. Common Shared Expenses

"Common Shared Expenses" are costs and expenses that will be paid out of the Fund. Common Shared Expenses are costs and expenses incurred for the common benefit of Plaintiffs as a whole in this MDL.  No specific client-related costs, save certain costs relating to cases selected as bellwether cases that will be for the common benefit (e.g., related to liability and causation), shall be considered Common Shared Expenses, unless exceptional circumstances exist and are approved by Lead Counsel and later Order of this Court.  All Common Shared Expenses must be approved by Lead Counsel prior to payment.

All costs and expenses that meet these requirements and fall under the following categories may be considered Common Shared Expenses, subject to the approval of the Court, and may qualify for submission and payment directly from the Fund:

    a.  Court, filing, and service costs (including translator costs for Hague service) related to common issues;

    b.  Deposition, court reporter, videographer, and translator costs;

    c.  Document repository (electronic and hard copy) creation, operation, staffing, equipment, and administration;

    d.  Equipment and leases for group common expenses (i.e., computer equipment);

    e.  Expert witness and consultant fees and expenses authorized by Lead Counsel;

    f.  Extraordinary postage for common issues (i.e., mass mailing);

    g.  Printing, copying, coding, and scanning relating to common issues (out-of-house or extraordinary firm costs);

    h.  PSC and other group meetings authorized by Lead Counsel;

    i.  Research by outside third-party vendors/consultants/attorneys for common issues authorized by Lead Counsel;

    j.  Common witness expenses;

k.  Investigative services authorized by Lead Counsel;

l.  Out-of-house or extraordinary administration fees and expenses relating to common issues authorized by Lead Counsel (i.e., equipment, technology, courier services, long distance, electronic service, photocopy and printing, secretarial/temporary staff, meetings, and conference calls, etc.);

m.  Accounting, tax, and/or legal fees and banking or financial institution charges;

n.  Special Master fees and expense; and

o.  All assessments paid by Common Benefit Counsel.

Lead Counsel shall prepare and be responsible for distributing reimbursement procedures and the forms associated therewith. Requests for payments from the Fund for Common Shared Expenses shall include sufficient information to permit Lead Counsel and/or the third party neutral and/or CPA to account properly for such costs and to provide adequate detail to the Court if necessary.

### iii. Common Held Costs

"Common Held Costs" are those reasonable costs that do not fall into the Common Shared Expenses categories but are incurred for the common benefit of all Plaintiffs in the Zantac MDL Cases, and are not subject to payment directly from and/or to reimbursement from the Fund during the course of the litigation of the Zantac MDL Cases. Common Held Costs may be eligible for payment at the end of the litigation subject to the policies and limitations set forth herein. Client-specific and/or case-specific costs are not considered Common Held Costs other than certain common benefit costs relating to class representatives and bellwether cases.

Reasonable costs under the below categories may be eligible for reimbursement as Common Held Costs. All Common Held Costs are to be reported monthly by Common Benefit Counsel to Lead Counsel and held by the reporting firm until common benefit cost reimbursement applications are submitted and determined at the appropriate time during this MDL litigation:

a. Postage, certified mail, shipping, and overnight courier (at actual cost);

b. Fax charges (maximum of $1.00 per page);

c. Telephone– long distance, conference calls, and cellular (at actual cost);

d. In-House photocopying (maximum of $0.15 per page);

e. Outside photocopying, printing, or scanning when necessary (at actual cost);

f. Computerized research – Lexis, Westlaw, and other computerized legal research (expenses should be exact amount charged the firm for the research related to this MDL litigation and/or appropriately allocated for these research services);

g. Temporary personnel to the extent authorized in advance by Lead Counsel (at actual cost);

h. Investigative services authorized in advance by Lead Counsel;

i. Bellwether case costs as set forth herein including, but not limited to, case specific expert fees and expenses, deposition, and court reporter costs; and

j. Travel expenses (subject to the limitations set forth below) for depositions, court hearings, and other hearings or meetings at which Common Benefit Counsel's attendance has been authorized by Lead Counsel.

### iv. Travel Expense Limitations

Based on its experience utilizing Zoom technology during COVID-19, the Court believes that travel expenses can be reduced significantly through the use of Zoom and similar technology. The Court therefore urges Lead Counsel to implement procedures to minimize travel expenses of Common Benefit Counsel, wherever practicable, through the use of such technology. The Court will expect all Common Benefit Counsel who fail to utilize such technology and seek reimbursement for travel expenses to demonstrate why participation in the particular event was not possible through use of Zoom or similar technology. Only reasonable travel expenses will be eligible for reimbursement as Common Held Costs. Except in extraordinary circumstances

approved by Lead Counsel, all travel expense reimbursements are subject to the following limitations:

a. **Airfare.** Reasonable and appropriate airfare will be eligible for reimbursement. Airfare deemed to be excessive or which is not related to an assigned task or judicial requirement will not be considered for reimbursement. The price of a non-refundable coach seat, or its equivalent, will be eligible for reimbursement. If business/first class is used the difference between the business/first class fare and the refundable coach fare must be shown on the travel reimbursement form and only the coach fare will be eligible for reimbursement. Use of a private aircraft will not be reimbursed absent extraordinary circumstances and advance authorization from Lead Counsel. However, in the event any Common Benefit Counsel travel on private aircraft, reimbursement may be submitted for the lesser of coach or business class fare per person as described above;

b. **Hotel.** Reasonable and appropriate hotel accommodations will be eligible for reimbursement. Hotel accommodations and costs can vary greatly by city and location. Counsel are reminded that costs are ultimately paid by the individual Plaintiffs they represent. As a general matter, the maximum hotel reimbursement shall be $450 per night, plus taxes, absent authorization from Lead Counsel. At the same time, in many locations a lower expense may not be reasonable; for example, the current nightly rate in West Palm Beach is only $110 for business class hotels, such that even $200 would not be reasonable, even though it is less than the $450 cap. Counsel are therefore encouraged to keep documentation of the average available room rate of a business hotel (such as Hilton or Marriott) in the city in which the common benefit work was performed, and to seek advance approval from Lead Counsel if there is a unique reason for staying in a particular hotel (for example, proximity to the meeting or deposition being attended);

c. **Meals.** Reasonable meal expenses (excluding alcohol) will be eligible for reimbursement if incurred during travel relating to common benefit work authorized by Lead Counsel. Generally speaking, reasonable meal expenses shall not exceed $124.00 per day;

d. **Ground Transportation (e.g., Taxi, Uber).** Reasonable ground transportation expenses incurred in connection with authorized travel will be eligible for reimbursement;

e. **Rental Automobiles.** Reasonable and appropriate rental vehicle expenses will be eligible for reimbursement. Luxury automobile rentals will not be fully reimbursed. If luxury automobiles are selected, the difference between the luxury and non-luxury vehicle rates must be shown on the travel reimbursement form, and only the non-luxury rate may be claimed, unless a larger vehicle is needed to accommodate several counsel or to transport

materials necessary to be transported to a deposition or trial (in which case the names of counsel and/or description of the materials shall be included in the reimbursement request);

    **f.**   **Mileage.**   Mileage claims must be documented by stating origination point, destination, total actual miles for each trip, and rate per mile paid by the Common Benefit Counsel. The allowable rate will be the maximum rate allowed by the IRS; and

    **g.**   **Miscellaneous Travel Expenses.**   Reasonable miscellaneous cash expenses for which receipts generally are not available (tips, luggage handling, etc.) will be eligible for reimbursement up to $50.00 per trip, as long as the expenses are properly itemized and reasonable.

**D. Protocols for Submission of Time and Expenses**

    **i.**   **Format**

All monthly time and expense submissions by Common Benefit Counsel must include:

    a.   The Excel form attached as Exhibit A to this Order, which consists of one Excel workbook, within which there will be two "sheets" (marked by tabs at the bottom) - "Time Report" and "Expense Report";

    b.   In the "Time Report" the person who performed each task should be identified in the column called "Last Name, First Name" by their complete last name, a comma, and their complete first name (e.g., Smith, John). Please do not use abbreviations or initials in this column;

    c.   In the "Time Report" only the ABA Task and Activity Codes listed in Exhibit A shall be utilized unless otherwise directed in writing by the Special Master or Lead Counsel;

    d.   In all Time Reports and Expense Reports, the date must be provided in month/day/year format (e.g., 03/23/20);

    e.   Common Benefit Counsel's internal computerized time and expense report for the month at issue that supports the entries included on the Time Report and Expense Report for that month; and

    f.   Supporting documentation authorizing the time and expenses reported on the Time Report (i.e., emails or letters authorizing the work performed) and Expense Report (i.e. receipts).

### ii.  Deadlines

Monthly time and expense submissions shall be submitted by Common Benefit Counsel to Lead Counsel or its designee on a monthly basis, by deadlines and in accordance with the guidelines set forth herein.  The first submission is due on <u>September 1, 2020</u>, and should include all time and expenses from February 14, 2020 (date of entry of PTO # 1) through July 31, 2020.[3] After this first submission, each monthly submission should include all common benefit time and expenses incurred during the preceding month and should be submitted by the fifteenth (15th) day of the following month (e.g., the submission due September 15, 2020, should contain all common benefit time and expenses incurred from August 1, 2020, through August 31, 2020).  Although counsel should endeavor to submit all common benefit expenses incurred in a certain month in the submission made on the 15th of the next month, the realities of third-party billing and credit card statement schedules may make such quick expense submission difficult in some circumstances.  Thus, submission of "supplemental" common benefit expense reports will be permitted for those expenses incurred during the previous six months that—because of circumstances outside the Common Benefit Counsel's control—could not have been submitted by the deadline.  Any common benefit expenses submitted more than six months in arrears may not be considered or included in any compilation of common benefit expense calculation and may be disallowed, except for good cause shown and with approval of Lead Counsel.  Supplemental submissions of common benefit time will be permitted only for good cause shown and with the approval of Lead Counsel.

Lead Counsel or their designee will review submitted time records and expenses to ensure they are reasonable and will notify submitting counsel if time or expenses are deemed not reasonable or deficient in any respects.  Lead Counsel will take particular care to ensure that

---

[3] If Common Benefit Counsel seek recognition for any time and expenses incurred prior to February 14, 2020, this must be submitted by September 1, 2020 as well.  However, submission of such time and expenses does not guarantee eligibility and/or entitlement for consideration as common benefit time or expenses.

duplicative work is not being performed and will adhere to the procedures set forth herein. Lead Counsel will have the power to discount or eliminate non-compliant or unnecessary hours or expense.

For the purpose of coordinating these guidelines and tracking common benefit time and expenses, Lead Counsel may use a third-party neutral and/or CPA to input, analyze, and/or audit Time and Expense Reports. Submission of time and expense records by Common Benefit Counsel to a third-party neutral and/or CPA designated by Lead Counsel shall be considered as if submitted to Lead Counsel. The third-party neutral and/or CPA will assist in compiling all submissions and will provide monthly and quarterly reports to Lead Counsel. These reports will include both time and expenses and will summarize, with back-up detail, the submissions of all firms. These reports will also include summaries for the different categories of expenses.

### iii. Verification

All time and expense submissions shall be reviewed and certified by a partner or shareholder in the Common Benefit Counsel firm attesting to the accuracy of the submissions and attesting that Common Benefit Counsel believes in good faith that all claimed time and expenses are compensable under this Order. Common Benefit Counsel shall keep itemized receipts/invoices for all expenses or some other form of proof acceptable for ultimate presentation and approval by Lead Counsel and/or the Court. Credit card receipts are an appropriate form of verification so long as accompanied by a declaration from counsel that work was performed and paid for the common benefit.

### iv. Failure to Timely Submit Reports and Supporting Documentation

Common Benefit Counsel's failure to submit the requested reports in the proper format or timely manner is reason to exclude the time and expenses from consideration for payment or reimbursement.

### E.  Oversight

Lead Counsel shall provide the Court with monthly updates of time, cost, and expenses of Common Benefit Counsel (unless otherwise requested) *in camera* regarding the time and expenses of Common Benefit Counsel, as well as an accounting of the Fund, including any assessments or disbursements.  Lead Counsel shall provide the same report to the Special Master, including an additional notation of any time discounted, disallowed, or identified as non-compliant for any Common Benefit Counsel.  Lead Counsel are invited to seek assistance from the Special Master in obtaining guidance from the Court if issues arise concerning any of the protocols and guidelines set forth in this Order.  In addition, at the request of Lead Counsel, the Special Master may authorize a brief extension of any deadline set forth in this Order in her discretion.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida this 31st day of July, 2020.

**ROBIN L. ROSENBERG**
**UNITED STATES DISTRICT JUDGE**

IN RE ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION MDL 2924
**MONTHLY TIME REPORT**

| For Time Due: | | Time Report for: | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Last Name, First Name | Level | Date of Service (00/00/0000) | Activity Code | Task Code | Detailed Description of Work Performed | Plaintiffs' Lead Counsel Who Assigned or Approved Work or Committee Name | Billing Rate | Time spent (by .1 increments) | Fees Total | Case-Specific? Yes/No | Case Name |
| | | | | | | | | | $0.00 | | |
| | | | | | | | | | $0.00 | | |
| | | | | | | | | | $0.00 | | |
| | | | | | | | | | $0.00 | | |
| | | | | | | | | | $0.00 | | |
| | | | | | | | | | $0.00 | | |
| | | | | | | | | | $0.00 | | |
| | | | | | | | | | $0.00 | | |
| | | | | | | | | | $0.00 | | |
| | | | | | | | | | $0.00 | | |
| | | | | | | | | | | | |

**IN RE ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION MDL 2924**

**MONTHLY EXPENSE REPORT**

| For Expenses Due: | | Expense Report for: | | Month Total | | | | |
|---|---|---|---|---|---|---|---|---|
| ***************************ALL ORIGINAL RECEIPTS MUST BE MAINTAINED AND PROVIDED TO LEAD COUNSEL UPON REQUEST*************************** | | | | | | | | |
| Last Name, First Name | Date (00/00/0000) | Expense Type | Detailed Description | Amount | Explanation for any late expenses | Case-Specific? Yes/No | Case Name |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| Activity Codes | Task Codes | Expense Codes |
|---|---|---|
| A101 Plan and prepare for | L110 Fact Investigation/Development | E101 Copying |
| A102 Research | L120 Analysis/Strategy | E102 Outside printing |
| A103 Draft/revise | L130 Experts/Consultants | E103 Word processing |
| A104 Review/analyze | L140 Document/File Management | E104 Facsimile |
| A105 Communicate (in firm) | L150 Budgeting | E105 Telephone |
| A106 Communicate (with client) | L160 Settlement/Non-Binding ADR | E106 Online research |
| A107 Communicate (other outside counsel) | L190 Other Case Assessment, Development and Administration | E107 Delivery services/messengers |
| A108 Communicate (other external) | L210 Pleadings | E108 Postage |
| A109 Appear for/attend | L220 Preliminary Injunctions/Provisional Remedies | E109 Local travel |
| A110 Manage data/files | L230 Court Mandated Conferences | E110 Out-of-town travel |
| A111 Other | L240 Dispositive Motions | E111 Meals |
| | L250 Other Written Motions and Submissions | E112 Court fees |
| | L260 Class Action Certification and Notice | E113 Subpoena fees |
| | L310 Written Discovery | E114 Witness fees |
| | L320 Document Production | E115 Deposition transcripts |
| | L330 Depositions | E116 Trial transcripts |
| | L340 Expert Discovery | E117 Trial exhibits |
| | L350 Discovery Motions | E118 Litigation support vendors |
| | L390 Other Discovery | E119 Experts |
| | L410 Fact Witnesses | E120 Private investigators |
| | L420 Expert Witnesses | E121 Arbitrators/mediators |
| | L430 Written Motions and Submissions | E122 Local counsel |
| | L440 Other Trial Preparation and Support | E123 Other professionals |
| | L450 Trial and Hearing Attendance | E124 Other |
| | L460 Post-Trial Motions and Submissions | |
| | L470 Enforcement | |
| | L510 Appellate Motions and Submissions | |
| | L520 Appellate Briefs | |
| | L530 Oral Argument | |