### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA

IN RE: ZANTAC (RANITIDINE)       MDL NO. 2924
PRODUCTS LIABILITY         20-MD-2924
LITIGATION

            JUDGE ROBIN L. ROSENBERG
      MAGISTRATE JUDGE BRUCE E. REINHART

_____/

THIS DOCUMENT RELATES TO: ALL CASES

---

### THE DISTRIBUTOR DEFENDANTS'
### RULE 12 MOTION TO DISMISS ON THE GROUND OF PREEMPTION AND
### INCORPORATED MEMORANDUM OF LAW

---

## TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................1

II.  FACTUAL BACKGROUND ................................................................................3

    A.  Description of Distributors' Unique Role in the Supply Chain ...........................3

    B.  Relevant PI Complaint and Consumer Complaint Allegations ...........................4

III.  ARGUMENT .......................................................................................................6

    A.  Legal Standard on Motion to Dismiss Pursuant to Rule 12(b)(6) .......................6

    B.  Adoption of Arguments Made By Brands, Generics, and Retailers
        and Pharmacies, and Distributor Defendants' Reservation of Rights.................7

    C.  Federal Law Preempts Plaintiffs' State Law Claims Against
        Distributor Defendants .........................................................................................7

        1.  The Drug Supply Chain Security Act Preempts Plaintiffs'
            State-Law Claims Against Distributor Defendants..................................8

        2.  The FDCA Expressly Preempts Plaintiffs' Economic Loss
            Claims ...................................................................................................11

        3.  The FDCA Preempts Plaintiffs' Claims, All of which are
            Based on Failure to Warn and Design Defect.........................................11

    D.  The Consumer Complaint's Magnuson-Moss Warranty Act Claim
        Should be Dismissed With Prejudice as to Distributors ....................................14

        1.  Mensing/Bartlett Preemption Applies to State Law Implied
            Warranty Claims ...................................................................................15

        2.  The MMWA Does Not Apply to FDCA-Regulated
            Labeling .................................................................................................16

        3.  Distributors Made No Non-Regulated Representations
            Regarding Ranitidine-Containing Products .............................................17

IV.  CONCLUSION..................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderman v. JP Morgan Chase Bank, Nat'l Ass'n,*
    803 F. App'x 290 (11th Cir. 2020) ...................................................................2

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................2, 6

*Brazil v. Janssen Res. & Dev. LLC,*
    196 F. Supp. 3d 1351 (N.D. Ga. 2016) ........................................................12

*Brown v. Air Line Pilots Ass'n,*
    813 F. App'x 353 (11th Cir. 2020) .................................................................6

*Caplinger v. Medtronic, Inc.*,
    921 F. Supp. 2d 1206 (W.D. Okla. 2013), *aff'd*, 784 F.3d 1335
    (10th Cir. 2015)............................................................................................16

*Cardenas v. Toyota Motor Corp.*,
    418 F. Supp. 3d 1090 (S.D. Fla. 2019) ........................................................14

*Carter v. Novartis Consumer Health, Inc.*,
    582 F. Supp. 2d 1271 (C.D. Cal. 2008) ........................................................11

*Cipollone v. Liggett Grp., Inc.*,
    505 U.S. 504 (1992)........................................................................................8

*Dapeer v. Neutrogena Corp.*,
    95 F. Supp. 3d 1366 (S.D. Fla. 2015) ............................................................6

*In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*,
    756 F.3d 917 (6th Cir. 2014) ........................................................................12

*Dopico v. IMS Trading Corp.*,
    No. 3:14-CV-1874-BRM-DEA, 2018 WL 4489677 (D.N.J. Sept. 28, 2018) ........................16

*In re Fosamax (Alendronate Sodium) Prod. Liab. Litig. (No. II)*,
    No. MDL 2243 JAP-LHG, 2012 WL 181411 (D.N.J. Jan. 17, 2012) ....................................12

*Goodlin v. Medtronic, Inc.*,
    167 F.3d 1367 (11th Cir. 1999) ......................................................................8

*Hernandez v. Johnson & Johnson Consumer, Inc.*,
  No. 3:19-cv-15679-BRM-TJB, 2020 WL 2537633 (D.N.J. May 19, 2020) ..........................16

*Jasper v. Musclepharm Corp.*,
  No. 14-CV-02881-CMA-MJW, 2015 WL 2375945 (D. Colo. May 15, 2015)......................17

*Kelly v. Lee Cty. RV Sales Co.*,
  No. 8:18-CV-424-JDW-JSS, 2018 WL 3126750 (M.D. Fla. Jun. 26, 2018),
  *aff'd*, No. 19-14955, 2020 WL 3485136 (11th Cir. June 26, 2020) ........................................14

*Lewis v. GE Healthcare, Inc.*,
  No. 5:19-CV-00490, 2020 WL 1243397 (W.D. La. Mar. 13, 2020)........................................8

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*,
  No. 2:14-CV-01810, 2016 WL 7644792 (D.S.C. Nov. 28, 2016)..........................................12

*Mahoney v. Endo Health Sols.*,
  No. 15CV9841(DLC), 2016 WL 3951185 (S.D.N.Y. Jul. 20, 2016)......................................16

*Moore v. Zydus Pharms. (USA), Inc.*,
  277 F. Supp. 3d 873 (E.D. Ky. 2017) ....................................................................................15

*Mutual Pharmaceutical Co. v. Bartlett*,
  570 U.S. 472 (2013)..........................................................................................7, 11, 15, 16

*PLIVA v. Mensing*,
  564 U.S. 604 (2011)..........................................................................................7, 11, 15, 16

*Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*,
  917 F.3d 1249 (11th Cir. 2019) ..............................................................................................6

*Reid v. GMC Skin Care USA Inc.*,
  No. 815CV277BKSCFH, 2016 WL 403497 (N.D.N.Y. Jan. 15, 2016)..................................16

*Shahar v. Bowers*,
  120 F.3d 211 (11th Cir. 1997) ................................................................................................4

*Smith v. Teva Pharm. USA, Inc.*,
  437 F. Supp. 3d 1159 (S.D. Fla. 2020) ............................................................................12, 13

*Stevens v. Cmty. Health Care, Inc.*,
  29 Mass. L. Rptr. 153 (Mass. Super. Ct. 2011). ....................................................................12

*Strayhorn v. Wyeth Pharms., Inc.*,
  737 F. 3d 378 (6th Cir. 2013) ................................................................................................15

*Vazquez v. Gen. Motors, LLC*,
  No. 17-22209-CIV, 2018 WL 447644 (S.D. Fla. Jan. 16, 2008)............................................14

**Statutes**

15 U.S.C. § 2301 ..................................................................................................................14

15 U.S.C. § 2311(d) ............................................................................................................16

21 U.S.C. § 379r(a) .............................................................................................................11

21 U.S.C. § (4)(a)-(b) ..........................................................................................................9

21 U.S.C. § 360eee-1(c)(1) ..................................................................................................9

21 U.S.C. § 360eee-1(c)(2) ..................................................................................................9

21 U.S.C. § 360eee-1(c)(4) ................................................................................................10

21 U.S.C. § 360eee-4(a) ...................................................................................................8, 9

21 U.S.C. § 360eee-5 ...........................................................................................................9

**Rules**

Fed. R. Civ. P. 11 ..........................................................................................................3, 17

Fed. R. Civ. P. 12(b)(6) ..................................................................................................2, 6

**Other Authorities**

Healthcare Distribution Alliance, *Primary Pharmaceutical Distributors Fact
   Sheet*, https://www.hda.org/~/media/pdfs/communications/primary-
   pharmaceutical-distributors.ashx?la=en ....................................................................4

Pursuant to Pretrial Order No. 36, ECF No. 1346, AmerisourceBergen Corporation, Cardinal Health, Inc., and McKesson Corporation (the "Distributor Defendants" or "Distributors")[1] move this Court to dismiss Plaintiffs' Master Personal Injury Complaint and Consolidated Consumer Class Action Complaint with prejudice. In support of this Motion, Distributor Defendants submit the following Memorandum of Law in Support of their Motion to Dismiss on Preemption.

## I.  <u>INTRODUCTION</u>

On June 22, 2020, Plaintiffs filed two complaints ("Complaints")[2] against the Distributor Defendants,[3] alleging personal injury and economic loss on behalf of themselves or putative classes of consumers allegedly exposed to N-Nitrosodimethylamine ("NDMA") in Zantac and generic ranitidine-containing products. Plaintiffs' factual allegations against the Distributor Defendants in both Complaints are sparse and mere conclusions, essentially non-existent. The

---

[1] ACIC Pharmaceuticals Inc. is still investigating what role, if any, it may have played with respect to any of the Plaintiffs' claims and allegations. To the extent that ACIC Pharmaceuticals Inc., identified by Plaintiffs as a generic manufacturer, can or should be considered a "distributor", ACIC joins in the arguments presented by the Distributors in this Motion.

[2] The Complaints are referred to as the "PI Complaint" for the Master Personal Injury Complaint, ECF No. 887 and the "Consumer Complaint," for the Consolidated Consumer Class Action Complaint, ECF No. 889. Distributor Defendants are not named in the Third Party Payor Class Complaint ("TPP Complaint"), ECF No. 888, and accordingly, this Memorandum does not address the allegations contained therein.

[3] Neither the PI Complaint nor the Consumer Complaint name any of the Distributor Defendants as "Repackager Defendants." However, both the PI Complaint and the Consumer Complaint contain allegations that each Distributor Defendant "purchased ranitidine and repackaged and/or relabeled it under Defendant's own brand. Therefore, all allegations referring to the 'Repackager Defendants' apply" to each Distributor Defendant. PI Compl. ¶¶ 147, 149, 153; Consumer Compl. ¶¶ 360, 362, 366; *see also id.* ¶ 420. Accordingly, to the extent Plaintiffs allege or consider the Distributor Defendants to be Repackager Defendants, the arguments herein apply equally to those repackaging-related allegations, and the claims against the Distributor Defendants must still be dismissed. In addition, to the extent they are considered Repackager Defendants, the Distributor Defendants incorporate and adopt all motion to dismiss arguments contained in the briefs filed concurrently with this Memorandum by other groups of Defendants that apply to the Repackager Defendants.

claims against Distributor Defendants in both Complaints cannot survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss under the standards required by the Supreme Court, as Plaintiffs do not present factual allegations that give rise to a viable cause of action.

Instead, while focusing their allegations to target the pharmaceutical manufacturer defendants, Plaintiffs offer back-hand and mere conclusory allegations against the Distributor Defendants.  Of course, conclusions alone cannot survive a motion to dismiss under Eleventh Circuit precedent.  *E.g.*, *Anderman v. JP Morgan Chase Bank, Nat'l Ass'n*, 803 F. App'x 290, 293 (11th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Pursuant to this Court's Pretrial Order No. 36, the Distributor Defendants focus this Memorandum on the multitude of ways that the Drug Supply Chain Security Act ("Drug Security Act") and the federal Food, Drug, and Cosmetic Act ("FDCA") preempt Plaintiffs' claims in the PI Complaint and Consumer Complaint.  *First*, the Drug Security Act preempts Plaintiffs' state law-based claims to the extent that they allege any obligations on Distributor Defendants related to tracing, investigation, and notification beyond those contained in the statute.  *Second*, the plain language of the FDCA expressly preempts Plaintiffs' state law-based claims alleging economic loss.  *Third*, pursuant to Supreme Court precedent, the FDCA impliedly preempts all of Plaintiffs' claims against the Distributor Defendants as each of Plaintiffs' claims – identical against *all Defendants* no matter the supply chain role – is based on a failure to warn or design defect theory.  *Fourth*, Plaintiffs' claim under the Magnusson Moss Warranty Act fails for numerous reasons, including implied preemption of state law warranty claims on which the MMWA is dependent.

II.     **FACTUAL BACKGROUND**

To promote brevity and avoid duplication, Distributor Defendants incorporate the Factual

Background and descriptions of the allegations in the Complaints described in the Generic

Manufacturers' and Repackagers' Rule 12 Motion to Dismiss on the Ground of Preemption and

Incorporated Memorandum of Law ("Generics Mem.") at 3-9 and the Retailer and Pharmacy

Rule 12 Motion to Dismiss on the Ground of Preemption and Incorporated Memorandum of Law

("Retailers and Pharmacies Mem.") at 3-7.

A.     **Description of Distributors' Unique Role in the Supply Chain**

The pharmaceutical supply chain, starting with the manufacturer and ending with the

consumer, is a complex network involving several groups of actors.  PI Compl. ¶¶ 411-13.

Wholesale pharmaceutical distributors ("Distributors"), including the Distributor Defendants,

play an integral, but limited role in this network.

Distributors do not design, manufacture, or label pharmaceuticals.  Distributors do not

diagnose medical conditions, nor do they write or fill prescriptions.  Plaintiffs do not allege

otherwise, as they cannot under Fed. R. Civ. P. 11.  Instead, Distributors serve as a pass-through,

distributing product between pharmaceutical manufacturers and retailers, with no authority to

control the design, manufacture, packaging, or labeling of the products.[4]  Distributors do not in

the normal course have any contact with the end users of the products that they distribute.

Again, Plaintiffs do not allege otherwise.

To facilitate this supply chain, Distributors enter into agreements with manufacturers,

through which they purchase pharmaceutical products directly.  Distributors then sell the

pharmaceutical products pursuant to separate agreements.  Per these agreements, Distributors fill

---

[4] Repackagers are similarly situated with the exception of adding new packaging to the products.

purchase orders from various retailers on a daily basis.[5]  Distributors' uniquely insulated role in the supply chain means that Plaintiffs' arguments and theories simply do not apply to them, and necessitates the dismissal of Plaintiffs' claims against them with prejudice.

**B.     Relevant PI Complaint and Consumer Complaint Allegations**

Plaintiffs name the Distributor Defendants in the PI Complaint and Consumer Complaint. PI Compl. ¶¶ 145-53; Consumer Compl. ¶¶ 358-66.  There are no allegations against the Distributor Defendants in the TPP Complaint.

These cases arise out of a series of voluntary recalls related to Zantac and other ranitidine-containing products.  Plaintiffs allege that Zantac and other ranitidine-containing products contain unacceptable levels of NDMA, which is a possible human carcinogen.  PI Compl. ¶¶ 283-84.  As to the Distributor Defendants, Plaintiffs otherwise allege merely that Distributor Defendants purchase bulk ranitidine-containing products from manufacturers and then distribute them to retailers and pharmacies as requested.  *Id*. ¶ 145.  Plaintiffs do not allege that the Distributor Defendants sold ranitidine-containing products directly to consumers, including to any of the Plaintiffs in the MDL.  Moreover, Plaintiffs do not allege that: (1) Distributor Defendants manufacture ranitidine-containing products, or (2) Distributor Defendants design the packaging or labeling content of ranitidine-containing products.  In fact, Plaintiffs never even allege that Distributors did not comply with FDA approved label-compliant practices in shipping and storage.  *See generally* PI Compl.

---

[5] Healthcare Distribution Alliance, *Primary Pharmaceutical Distributors Fact Sheet*, https://www.hda.org/~/media/pdfs/communications/primary-pharmaceutical-distributors.ashx?la=en (last visited August 24, 2020).  This Court may take judicial notice of the facts contained in the Primary Pharmaceutical Distributors Fact Sheet as they cannot be reasonably disputed.  *See Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997) (stating that courts may take judicial notice of certain facts and that "ordinarily" scientific facts are permitted).

As explained above, Distributors' unique role in the supply chain precludes Plaintiffs' claims against them. Plaintiffs fail to allege anything that would lead to liability on the part of the Distributor Defendants because they cannot. Yet, the PI Complaint contains eleven counts against the Distributor Defendants,[6] and the Consumer Complaint contains up to six counts against Distributor Defendants *per state*, *e.g.*, Counts 25-26, 28-30 (on behalf of the Arkansas class); Counts 296-97, 299-302 (on behalf of the West Virginia class); Counts 290-91, 293-95 (on behalf of the Washington class).[7] Despite asserting all of these "counts" against Distributor Defendants, Plaintiffs never allege any factual allegations to support *any* claim against the Distributors relating to the distribution of ranitidine-containing products.

At the core of Plaintiffs' claims are allegations that Zantac and ranitidine-containing products are inherently defective as manufactured: someone allegedly "concealed from the public a devastating secret . . . : Zantac and its generic forms inherently harbor a well-known cancer causing compound, [NDMA]." PI Compl., p. 1 (Preamble); *see also id.* ¶ 1 (" . . . ranitidine is anything but safe. It is an unstable molecule that breaks down under normal conditions into high levels of NDMA, a carcinogen that is as potent as it is dangerous."); ¶ 6 ("The high levels of NDMA observed in ranitidine-containing products is a function of the drug's unstable nature."). Other than alleging that Distributor Defendants distribute the products, Plaintiffs do not – as they cannot – assert any factual allegations against the Distributor

---

[6] The following PI Compl. Counts are against Distributor Defendants: Count I Strict Products Liability – Failure to Warn; Count II Strict Products Liability – Design Defect; Count IV Negligence – Failure to Warn; Count VII General Negligence; Count IX Breach of Express Warranties; Count X Breach of Implied Warranties; Count XI Violation of Consumer Protection and Deceptive Trade Practices Laws; Count XII Unjust Enrichment; Count XIII Loss of Consortium; Count XIV Survival Actions; Count XV Wrongful Death.

[7] Plaintiffs' PI Complaint and Consumer Complaint contain 657 and 5,902 paragraphs of allegations respectively and hundreds of counts against Defendants.

Defendants consistent with this theory, and for this reason, Plaintiffs' claims against Distributor

Defendants must be dismissed with prejudice.

Further, to the extent Plaintiffs attempt to reference the Distributor Defendants, federal

statutes, including the Drug Security Act and the FDCA, expressly or impliedly preempt all of

Plaintiffs' claims.  Thus, none of those counts contain factual allegations that, when taken as

true, rise to a cause of action against the Distributor Defendants.  Accordingly, the Court should

dismiss Plaintiffs' claims against Distributor Defendants with prejudice.

## III.   <u>ARGUMENT</u>

### A.   **Legal Standard on Motion to Dismiss Pursuant to Rule 12(b)(6)**

To survive a motion to dismiss for failure to state a claim upon which relief can be

granted, the Supreme Court has made it clear that a complaint must state sufficient facts to state a

claim for relief against the specific defendant that is plausible on its face.  *Dapeer v. Neutrogena

Corp.*, 95 F. Supp. 3d 1366, 1372 (S.D. Fla. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)); *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  A complaint's factual allegations must be

enough to raise a right to relief above speculative level.  *Twombly*, 550 U.S. at 555.  A complaint

must contain sufficient allegations to "state a claim for relief that is plausible, not merely

possible."  *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249,

1260 (11th Cir. 2019).  Without sufficient factual allegations in the complaint, a claimant cannot

satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on

which the claim rests.  *Twombly*, 550 U.S. at 555 n.3; *see also Brown v. Air Line Pilots Ass'n*,

813 F. App'x 353, 355 (11th Cir. 2020).

### B.   Adoption of Arguments Made By Brands, Generics, and Retailers and Pharmacies, and Distributor Defendants' Reservation of Rights

The Generics Mem., Branded Defendants' Rule 12 Partial Motion to Dismiss Plaintiff Three Complaints as Preempted by Federal Law and Incorporated Memorandum of Law ("Brands Mem."), and Retailers and Pharmacies Mem., present a number of grounds for dismissal of all Complaints as against all Defendants, including Distributor Defendants.  To avoid repeating duplicative arguments for the Court's consideration, Distributor Defendants adopt and incorporate herein all arguments in those Memoranda that provide grounds for dismissal of Distributor Defendants from Plaintiffs' Complaints, specifically including Generics Mem. arguments on preemption of all state law tort claims under *PLIVA v. Mensing*, 564 U.S. 604, 616-18 (2011), and *Mutual Pharmaceutical Co. v. Bartlett*, 570 U.S. 472, 479-80 (2013) at 9-23, 31-35, Brands Mem. arguments on preemption under the FDCA at 9-22, and Retailers and Pharmacies Mem. arguments on preemption under the Drug Security Act and *Mensing*/*Bartlett* conflict preemption at 8-21.  Distributor Defendants briefly expound on these issues below.[8]

### C.   Federal Law Preempts Plaintiffs' State Law Claims Against Distributor Defendants

All of Plaintiffs' claims against Distributors are preempted.  Though impossible to identify which of Plaintiffs' allegations actually apply to Distributors, each and every claim in the PI Complaint and the Consumer Complaint ultimately is based on more stringent or non-identical state requirements, *e.g.*, failure to warn and negligence, and are either directly

---

[8] Pursuant to Pretrial Order No. 36, this brief enumerates Distributor Defendants' arguments only on preemption.  Distributor Defendants do not waive any additional argument that, notwithstanding the Court's Pretrial Order, would have otherwise been briefed herein, but instead will be briefed in the later phases of the phased motion to dismiss briefing schedule. Distributor Defendants are not named in the TPP Complaint, and, accordingly, do not adopt any arguments against allegations contained therein.

preempted or are preempted derivatively as the direct claims underlying them fail, *e.g.*, loss of consortium, and must be dismissed with prejudice.

1. *The Drug Supply Chain Security Act Preempts Plaintiffs' State-Law Claims Against Distributor Defendants*

The Court should dismiss Plaintiffs' claims to the extent they seek to impose liability on Distributor Defendants for failure to comply with state laws that are inconsistent with, more stringent than, or in addition to any applicable requirements imposed by the Drug Security Act.

A "federal statute may preempt state law either expressly, by the statute's language, or implicitly, by the statute's structure and purpose." *Goodlin v. Medtronic, Inc.*, 167 F.3d 1367, 1371 (11th Cir. 1999) (citing *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992)).  When a distributor cannot comply with both a federal statute's requirements and a state's statutory or common law requirements, federal requirements preempt such state law-based requirements. *See Lewis v. GE Healthcare, Inc.*, No. 5:19-CV-00490, 2020 WL 1243397, at *4 (W.D. La. Mar. 13, 2020) ("Because federal law will not permit [the pharmaceutical distributor] to do what state law purports to require of it, Lewis's incompatible state law claims are preempted, i.e., his claims for strict liability–failure to warn; negligence; negligent misrepresentation; negligence per se; breach of express warranty; fraudulent misrepresentation and concealment; and civil battery.").  The Drug Security Act expressly preempts claims imposing state requirements that are "inconsistent with, more stringent than, or in addition to" any requirements applicable under the Drug Security Act, including requirements relating to traceability, investigation, and notification of drug products.  21 U.S.C. § 360eee-4(a).

In 2013, Congress passed the Drug Security Act in an effort to secure the supply chain for prescription pharmaceutical drugs.  The Drug Security Act is intentionally broad and comprehensive, governing all participants in the supply chain for prescription pharmaceutical

8

drugs, from manufacturers to retail pharmacies.  21 U.S.C. § 360eee to 360eee-5.  The Drug

Security Act imposes numerous requirements on "Wholesale distributors" related to product

tracing, product identification, and verification of both "suspect" and "illegitimate" products.  21

U.S.C. § 360eee-1(c)(1), (2), (4)(a)-(b).  To combat the patchwork of inconsistent and varying

state requirements prior to the enactment of the Drug Security Act, Congress mandated that the

Drug Security Act be a uniform national standard.  To effectuate the national standard, Congress

included an express preemption provision that precludes imposition of any state requirements

that are "inconsistent with, more stringent than, or in addition to" the Drug Security Act:

> Beginning on November 27, 2013 [the date of enactment of the
> Drug Supply Chain Security Act], no State or political subdivision
> of a State may establish or continue in effect any requirements for
> tracing products through the distribution system (including any
> requirements with respect to statements of distribution history,
> transaction history, transaction information, or transaction
> statement of a product as such product changes ownership in the
> supply chain, or verification, investigation, disposition,
> notification, or recordkeeping relating to such systems, including
> paper or electronic pedigree systems or for tracking and tracing
> drugs throughout the distribution system) which are inconsistent
> with, more stringent than, or in addition to, any requirements
> applicable under . . . [this subchapter] or this part (or regulations
> issued thereunder) . . . .

21 U.S.C. § 360eee-4(a).  Thus, the Drug Security Act has expressly preempted any State action

to impose requirements regarding tracing products through the distribution system, including

investigation requirements, that are inconsistent with and/or more burdensome than the Drug

Security Act.  *Id.*

Here, to the extent Plaintiffs attempt to assert claims against Distributor Defendants,

Plaintiffs' allegations against the Distributors amount to precisely what the Drug Security Act

prevents – a hodgepodge of state-law based claims – from which Distributors are exempt

pursuant to the plain language of the federal statute.  Although Plaintiffs' impermissible shotgun

pleading makes it impossible to decipher which allegations in the Complaints purportedly pertain to Distributor Defendants, [9] there are numerous vague and conclusory allegations that relate to requirements imposed by the Drug Security Act, including those involving investigation of ranitidine-containing products.  Indeed, the Consumer Complaint asserts claims that range from breaches of express and implied warranties to product liability-failure to warn to negligence pursuant to state statutes in all fifty states plus the District of Columbia and Puerto Rico.  *See generally* PI Compl. and Consumer Compl.  Those state law claims impose obligations on Distributor Defendants that are different from, additional to, or not identical with the Drug Security Act's requirements.  For example, Plaintiffs include the following allegation in more than 40 different paragraphs:

> At all relevant times, Defendants failed and deliberately refused to *investigate*, study, test, or promote the safety of, or to minimize the dangers to users and consumers, including Plaintiffs and members of the Class, of their product and to those who would and did foreseeably use or be harmed by Defendants' Ranitidine-Containing Products.

*E.g.*, Consumer Compl. ¶ 3173 (emphasis added).  But the Drug Security Act only imposes requirements for investigation of "suspect product" in conjunction with a supplier of the product, which does not apply here.  21 U.S.C. § 360eee-1(c)(4).

As such, to the extent Plaintiffs ground their claims on allegations that the Distributor Defendants should have taken steps beyond those required under the Drug Security Act, the statute expressly preempts those claims, mandating dismissal with prejudice.

---

[9] For additional discussion of Plaintiffs' impermissible shotgun pleadings, Distributor Defendants direct the Court to Defendants' Motion to Strike Consolidated Consumer and Third Party Payor Class Action Complaints on grounds of Shotgun Pleading and Lack of Article III Standing and Defendants' Motion to Dismiss Master Personal Injury Complaint on the same grounds.

2.      *The FDCA Expressly Preempts Plaintiffs' Economic Loss Claims*

As detailed in the Brands Mem., the FDCA, 21 U.S.C. § 379r(a), preempts Plaintiffs'

economic loss state law claims as to all Defendants that Plaintiffs allege are involved in the

supply chain for over-the-counter Zantac/generic ranitidine, including Distributor Defendants.

*Carter v. Novartis Consumer Health, Inc.*, 582 F. Supp. 2d 1271, 1283 (C.D. Cal. 2008) ("The

touchstone of preemption under § 379r is the *effect* that a finding of liability on a particular claim

would have on the Defendants, and not the particular common law or state law theory upon

which that claim was brought.  As long as that claim imposes a 'requirement' that is at variance

with FDA regulations, it is preempted.").  Distributor Defendants adopt and incorporate those

arguments as though set forth fully herein.

3.      *The FDCA Preempts Plaintiffs' Claims, All of which are Based on Failure to Warn and Design Defect*

As explained in detail in the Generics Mem., Brands Mem., and Retailers and Pharmacies

Mem., the FDCA preempts Plaintiffs' claims against the Generics Manufacturers, Repackagers,

and Retailers and Pharmacies under Supreme Court precedent.  *See Mensing*, 564 U.S. at 618

(2011) and *Bartlett*, 570 U.S. at 486-87.[10]  The argument applies with equal force to the

Distributor Defendants.

Like Generic Manufacturers, Repackagers, and Retailers and Pharmacies, the FDCA

prohibits Distributors from changing the formulation of or warning labels for the drugs they

distribute.  This makes it impossible for the Distributor Defendants to comply with federal

obligations *and* do what Plaintiffs claim they should have done – design a safer formulation of or

change the warning labels for Zantac and ranitidine.  *See, e.g.*, PI Compl. ¶¶ 476, 503; Consumer

Compl. ¶¶ 948-54 (Ala.), 1810-1818 (Fla.), 5844-52 (Wyo.).

---

[10] *See also* Generics Mem. at Sections III(B) and IV(A)-IV(C); Brands Mem. at Section II, Retailers and Pharmacies Mem. at Section III(A).

Like Generic Manufacturers and Retailers, Distributors are not the New Drug Application (NDA) holders of the drugs they distribute and, consequently, cannot change the label of Zantac or generic ranitidine. *Brazil v. Janssen Res. & Dev. LLC*, 196 F. Supp. 3d 1351, 1364-65 (N.D. Ga. 2016) (dismissing plaintiff's failure to warn claims against distributor defendant as preempted). "When a company does not have the NDA, it has 'no . . . power to change the label' of a drug . . . ." *Id.* (quoting *In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 940 (6th Cir. 2014). A distributor, whether of branded or generic drugs, "'has no power to change . . . labeling. That power lies with the applicant who filed the New Drug Application (NDA).'" *Id.* at 1365 (quoting *In re Fosamax (Alendronate Sodium) Prod. Liab. Litig. (No. II)*, No. MDL 2243 JAP-LHG, 2012 WL 181411, at *3 (D.N.J. Jan. 17, 2012)); *see also In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, No. 2:14-CV-01810, 2016 WL 7644792, at *2 (D.S.C. Nov. 28, 2016) (finding that a distributor did not owe a duty to warn and granting the motion to dismiss because "the claims against [the pharmaceutical distributor] based on Lipitor's label are clearly preempted by federal law.").

Because distributors have no independent power under federal law to change the label of a drug, which state law failure to warn claims would require, courts in this Circuit have found that the FDCA preempts failure to warn claims against distributors. *Brazil*, 196 F. Supp. 3d at 1364; s*ee also Smith v. Teva Pharm. USA, Inc.*, 437 F. Supp. 3d 1159, 1165-67 (S.D. Fla. 2020) (determining that federal law prohibited distributors from changing labels and, accordingly, failure to warn claims against them were preempted). And, courts outside of this Circuit agree. *See, e.g., Stevens v. Cmty. Health Care, Inc.*, 29 Mass. L. Rptr. 153 (Mass. Super. Ct. 2011) ("As a distributor, however, [defendant] had no ability to change labeling or warnings

and thus, like a generic manufacturer, [distributor] cannot be subject to liability in connection with a state law claim premised on a 'failure to warn.'").

Similarly, this Court has found that design defect claims against distributors are likewise preempted. *Smith*, 437 F. Supp. 3d at 1165-67 (dismissing not only failure to warn claim but also design defect and negligence claims against distributors as preempted). Distributors cannot implement a design change in the drugs they distribute and cannot even request such a change by the FDA. *Id.* at 1166 ("The Court finds no reason to depart from the wealth of authority clearly stating that a company that does not hold an NDA, regardless of its connection to the NDA holder, is *powerless to submit label changes to the FDA*.") (emphasis added). Because distributors have no independent power under federal law to change the formulation of a drug, which state law design defect claims would require, the FDCA preempts design defect claims against distributors.

Plaintiffs name the Distributor Defendants in the same counts of the PI Complaint and Consumer Complaint as the Retailers and Pharmacies. As the Retailers and Pharmacies explain in their brief, Plaintiffs base *all* of their claims against the Retailers and Pharmacies on allegations that ranitidine is inherently defective because its formulation leads to certain cancers (a design defect claim) or that Defendants failed to disclose this risk to the public (a failure-to-warn claim).[11] *See* Retailers & Pharmacies Mem. at 5-7. Thus, all of Plaintiffs' claims against the Distributors, like all of their claims against the Retailers and Pharmacies, are design defect or failure to warn claims at their core. Such claims are preempted for the reasons set forth above

---

[11] The Generic Manufacturers also explain why all of Plaintiffs' claims are design defect or failure to warn claims, and the Distributors adopt those arguments herein. *See* Generics Mem. at 6-10, 16-23 and 31-32. Unlike the Generic Manufacturers, however, the Distributors are not named in Plaintiffs' manufacturing defect claims, so the Generic Manufacturers' arguments regarding manufacturing defect claims do not apply here.

and in the Retailers and Pharmacies Mem. and the Generics Mem.  Consequently, the Court must dismiss all claims as to Distributor Defendants with prejudice.

## D. The Consumer Complaint's Magnuson-Moss Warranty Act Claim Should be Dismissed With Prejudice as to Distributors

In Count III of the Consumer Complaint, all class members sue all Defendants for alleged violations of the federal Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*. ("MMWA"). The MMWA provides a statutory remedy for state law express or implied warranty violations. *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1110 (S.D. Fla. 2019); *Kelly v. Lee Cty. RV Sales Co.*, No. 8:18-CV-424-JDW-JSS, 2018 WL 3126750, at *2 (M.D. Fla. Jun. 26, 2018), *aff'd*, No. 19-14955, 2020 WL 3485136 (11th Cir. June 26, 2020).  To state a claim under the MMWA, a plaintiff must also state a valid state law breach of warranty claim.  *Cardenas*, 418 F. Supp. 3d at 1110-11; *Vazquez v. Gen. Motors, LLC*, No. 17-22209-CIV, 2018 WL 447644, at *4 (S.D. Fla. Jan. 16, 2008) ("claims under the [MMWA] stand or fall with [a plaintiff's] express and implied warranty claims under state law").

The class alleges that "Defendants advertised, labeled, marketed, and promoted Ranitidine-Containing Products, representing the quality to consumers and the public in such a way as to induce their purchase or use . . . . " Consumer Compl. ¶ 810.  Count III goes on to list a series of alleged express warranties "Defendants" made via "media, advertising, marketing, websites, social media, packaging, labeling, and promotions . . . . "  *Id*. ¶ 811.  The claim further asserts that, by placing ranitidine-containing products in the stream of commerce, Defendants impliedly warranted that they "were of merchantable quality and safe and fit for their intended use . . . . "  *Id*. ¶ 814.  Count III accordingly asserts MMWA liability based on alleged breaches of both express and implied warranties as to all Defendants.

Count III should be dismissed with prejudice as to the Distributors for three reasons:

(1)      Plaintiffs' claims for breach of implied warranty of merchantability and implied warranty of fitness are expressly preempted for the reasons described above.  Plaintiffs therefore cannot state valid MMWA claims tied to state law implied warranty claims.

(2)      The MMWA does not apply to FDA-regulated labeling as to prescription or over-the-counter ranitidine-containing products.

(3)      Distributors engaged in no independent marketing of ranitidine-containing products and therefore made no non-regulated express warranties governed by the MMWA.

Thus, Plaintiffs fail to state a claim under the MMWA for which relief can be granted, and Plaintiffs' claims against Distributor Defendants must be dismissed with prejudice.

1.      *Mensing/Bartlett Preemption Applies to State Law Implied Warranty Claims*

The Consumer Complaint does not suggest that ranitidine-containing drugs are ineffective for treating acid reflux.  Instead, it claims that ranitidine-containing drugs are defectively designed because their active ingredient contains unsafe levels of a carcinogen, and Defendants should have warned consumers of this alleged danger.

As discussed above, because Distributors do not hold the NDA for the drugs they distribute, they lack the legal capacity to change their formulations or warning labels, and are thus immune from claims for alleged design defects or failures to warn.  *Mensing*, 564 U.S. at 618; *Bartlett*, 570 U.S. at 486-87.  Federal courts have applied this principle to exclude implied warranty claims similarly premised on allegedly unsafe drugs.  *Strayhorn v. Wyeth Pharms., Inc.*, 737 F. 3d 378, 395-396 (6th Cir. 2013) (implied warranty claims premised on a failure-to-warn theory preempted under *Mensing/Bartlett*); *Moore v. Zydus Pharms. (USA), Inc.*, 277 F. Supp. 3d 873, 886 (E.D. Ky. 2017) (plaintiff's implied warranty claim based on side

effects of heart medication preempted by *Mensing* and *Bartlett*); *Caplinger v. Medtronic, Inc.*, 921 F. Supp. 2d 1206, 1222 (W.D. Okla. 2013), *aff'd*, 784 F.3d 1335 (10th Cir. 2015).

Because Plaintiffs' state law implied warranty claims against Distributors are preempted under *Mensing* and *Bartlett*, their MMWA claims based on the same theories do not state a claim.

### 2.     *The MMWA Does Not Apply to FDCA-Regulated Labeling*

With implied warranty claims against Distributors preempted, Count III can survive only if Plaintiffs state a valid state law express warranty claim.  However, the MMWA does not apply to "written warranties" otherwise governed by federal law:

> This chapter . . . shall be inapplicable to any written warranty the making or content of which is otherwise governed by Federal law. If only a portion of a written warranty is so governed by Federal law, the remaining portion shall be subject to this chapter.

15 U.S.C. § 2311(d).

The FDCA governs not only the approval, marketing, and sale of new drugs, but also their labeling.  *Hernandez v. Johnson & Johnson Consumer, Inc.,* No. 3:19-cv-15679-BRM-TJB, 2020 WL 2537633, at *5 (D.N.J. May 19, 2020).  A new drug application will be refused if the FDA determines that its labeling is false or misleading.  *Id*.

Based on Section 2311(d), several courts have held that the MMWA does not apply to allegedly misleading labeling associated with FDA-regulated products.  *Id.* at *5 (applied to over-the-counter Tylenol Rapid Release Gelcaps); *Dopico v. IMS Trading Corp.*, No. 3:14-CV-1874-BRM-DEA, 2018 WL 4489677, at *6 (D.N.J. Sept. 28, 2018) (applied to over-the-counter dog treats); *Mahoney v. Endo Health Sols.*, No. 15CV9841(DLC), 2016 WL 3951185, at *7-9 (S.D.N.Y. Jul. 20, 2016) (applied to prescription fluoride tablets); *Reid v. GMC Skin Care USA Inc.*, No. 815CV277BKSCFH, 2016 WL 403497, at *12-13 (N.D.N.Y. Jan. 15, 2016) (applied to

over-the-counter anti-aging skin care products); *Jasper v. Musclepharm Corp.*, No. 14-CV-02881-CMA-MJW , 2015 WL 2375945, at *5-6 (D. Colo. May 15, 2015) (applied to over-the-counter fat-burning supplements).

The MMWA expressly does not apply to written representations on product labeling because those statements are FDA-regulated.  Accordingly, Plaintiffs' MMWA claim based on allegedly false labeling must be dismissed with prejudice.

3.    *Distributors Made No Non-Regulated Representations Regarding Ranitidine-Containing Products*

Based on the foregoing, to state a claim under the MMWA, Plaintiffs must plead that Distributors made non-regulated false representations regarding ranitidine-containing products on which they detrimentally relied.  The class attempts to skirt this requirement by shotgun pleading, asserting that all Defendants utilized media, advertising, websites, and other non-regulated communications to promote ranitidine-containing products as safe and effective. Consumer Compl. ¶ 811.  Defendants, by separate motion, have demonstrated why Plaintiffs' shotgun allegations violate federal pleading requirements.  The class has not and cannot consistent with Fed. R. Civ. P. 11 assert that the Distributors engaged in the marketing or advertising of ranitidine-containing products.  That is not what Distributors do.  Distributors, as the "middle-man" between manufacturers and sellers, have no contact whatsoever with consumers, either directly or through marketing.

In sum, Plaintiffs' allegations – that ranitidine-containing products are defectively designed and falsely labeled – cannot support a MMWA claim against Distributors.  The claim should be dismissed with prejudice.

IV.     **<u>CONCLUSION</u>**

Accordingly, for the foregoing reasons, as well as those reasons applicable to Distributor

Defendants as outlined in the co-Defendants' briefs and incorporated herein, Distributor

Defendants respectfully request the dismissal of all claims against them with prejudice.

Dated: August 24, 2020             Respectfully submitted,

                                             *Andrew D. Kaplan*
                                             Andrew D. Kaplan
                                             *Acting Liaison Counsel for Distributor*
                                             *Defendants*

| | |
|---|---|
| Spencer H. Silverglate | Andrew D. Kaplan |
| Craig Salner | Daniel T. Campbell |
| Shannon P. McKenna | Lyndsay A. Gorton |
| Trevor J. Gillum | Crowell & Moring LLP |
| Alexandra C. Hayes | 1001 Pennsylvania Avenue, N.W. |
| Clarke Silverglate, P.A. | Washington, D.C. 20004 |
| 799 Brickell Plaza, 9th Floor | (t) (202) 624-2500 |
| Miami, FL 33131 | (f) (202) 628-5116 |
| (t) (305) 377-0700 | AKaplan@crowell.com |
| (f) (305) 377-3001 | DCampbell@crowell.com |
| SSilverglate@cspalaw.com | LGorton@crowell.com |
| CSalner@cspalaw.com | |
| SMcKenna@cspalaw.com | *Counsel for Defendant Cardinal Health, Inc.* |
| TGillum@cspalaw.com | |

*Counsel for Defendant McKesson*
*Corporation*

Larry R. Wood, Jr.
Lauren E. O'Donnell
Blank Rome LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
(t) (215) 569-5659
(f) (215) 832-5735
LWood@BlankRome.com
ODonnell@BlankRome.com

*Counsel for Defendant AmerisourceBergen*
*Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of August 2020, a true and correct copy of the

foregoing Distributor Defendants' Rule 12 Motion to Dismiss on the Ground of Preemption and

Incorporated Memorandum of Law was filed electronically through the CM/ECF system, which

will send notice of filing to all CM/ECF participants.

*Andrew D. Kaplan*
Andrew D. Kaplan