**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IN RE: ZANTAC (RANITIDINE)                                    MDL NO. 2924
PRODUCTS LIABILITY                                           20-MD-2924
LITIGATION

                                        JUDGE ROBIN L. ROSENBERG
                            MAGISTRATE JUDGE BRUCE E. REINHART

_____/

**THIS DOCUMENT RELATES TO ALL CASES**

_____

**THE RETAILER AND PHARMACY DEFENDANTS'**
**RULE 12 MOTION TO DISMISS ON THE GROUND OF PREEMPTION**
**AND INCORPORATED MEMORANDUM OF LAW**

_____

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................................ 1

II. BACKGROUND AND FACTUAL ALLEGATIONS AGAINST THE RETAILER
AND PHARMACY DEFENDANTS .................................................................................. 3

    A.  The Roles of the Retailer and Pharmacy Defendants ............................................. 3

    B.  All Allegations Against the Retailer and Pharmacy Defendants Turn on a
Theory of Design Defect and/or Failure to Warn .................................................. 5

III. ARGUMENT ............................................................................................................... 7

    A.  Claims Against the Retailer and Pharmacy Defendants Fall Under
*Mensing/Bartlett* Conflict Preemption .................................................................. 7

        1.  The Retailer and Pharmacy Defendants Had No Legal Ability to Alter
Ranitidine's Design or Warnings .............................................................. 8

        2.  Any Claims that the Retailer and Pharmacy Defendants Should Not
Have Sold Ranitidine Are Preempted ..................................................... 11

        3.  All Remaining Claims Against the Retailer and Pharmacy Defendants
Are Preempted ....................................................................................... 12

    B.  The Drug Supply Chain Security Act Preempts All Claims Relating to
Prescription Ranitidine .......................................................................................... 15

        1.  The Drug Supply Chain Security Act Establishes a Framework of
Requirements Governing Pharmacies' Tracing and Investigation of
Potentially Misbranded Drugs ................................................................ 15

        2.  Plaintiffs' Claims Against the Pharmacy Defendants Are Expressly
Preempted ............................................................................................. 16

IV. CONCLUSION ........................................................................................................... 18

APPENDIX A .................................................................................................................. A-1

    Retailer/Pharmacy Defendants Named in the PI and Consumer Complaints ............... A-1
    Retailers/Pharmacies Not Named in the PI or Consumer Complaints ......................... A-3
    Other ............................................................................................................................. A-4

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Brazil v. Janssen Research & Dev. LLC*,
    196 F. Supp. 3d 1351 (N.D. Ga. 2016) ................................................................... 10

*Brinkley v. Pfizer, Inc.*, 772 F.3d 1133
    (8th Cir. 2014) ........................................................................................................ 12

*Buckman Co. v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001) ................................................................................................ 14

*Cardenas v. Toyota Motor Corp.*,
    418 F. Supp. 3d 1090 (S.D. Fla. 2019) .................................................................. 14

*Carter v. Novartis Consumer Health, Inc.*,
    582 F. Supp. 2d 1271 (C.D. Cal. 2008) ................................................................. 15

*Cipollone v. Liggett Group, Inc.*,
    505 U.S. 504 (1992) ................................................................................................ 17

*Cramer v. State of Fla.*,
    117 F.3d 1258 (11th Cir. 1997) ................................................................................ 4

*Drager v. PLIVA USA, Inc.*,
    741 F.3d 470 (4th Cir. 2014) .................................................................................. 12

*Fullington v. Pliva, Inc.*,
    No. 4:10CV00236 JLH, 2014 WL 806149 (E.D. Ark. Feb. 28, 2014) .................... 12

*Greager v. McNeil-PPC, Inc.*,
    414 F. Supp. 3d 1137 (N.D. Ill. 2019) ................................................................ 9, 10

*Hernandez v. Johnson & Johnson Consumer, Inc.*,
    No. 3:19-cv-15679-BRM-TJB, 2020 WL 2537633 (D.N.J. May 19, 2020) ......................... 14

*In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*,
    756 F.3d 917 (6th Cir. 2014) ............................................................................ 10, 14

*In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*,
    MDL No. 2243 (JAP-LHG), 2012 WL 181411 (D.N.J. Jan. 17, 2012) .................... 9

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*,
    MDL No. 2:14-mn-02502-RMG, 2016 WL 7368203 (D.S.C. Nov. 1, 2016) ......................... 10

*Mut. Pharm. Co. v. Bartlett*,
    570 U.S. 472 (2013) ................................................................................................. 3, 8, 12

*Nat'l Meat Ass'n v. Harris*,
    565 U.S. 452 (2012) ................................................................................................. 17

*PLIVA, Inc. v. Mensing*,
    564 U.S. 604 (2011) ................................................................................................. 3, 8

*Riegel v. Medtronic, Inc.*,
    552 U.S. 312 (2008) ................................................................................................. 17

*Smith v. Teva Pharm. USA, Inc.*,
    437 F. Supp. 3d 1159 (S.D. Fla. 2020) ................................................................... 9

*Stevens v. Cmty. Health Care, Inc.*,
    No. ESCV200702080, 2011 WL 6379298 (Mass. Super. Oct. 5, 2011) ................. 9

**Statutes**

21 C.F.R. § 314.150 ........................................................................................................ 10, 11

21 U.S.C. § 355 ................................................................................................................ 9, 13

21 U.S.C. § 379r .............................................................................................................. 4, 14

Drug Supply Chain Security Act,
    21 U.S.C. §§ 360eee to 360eee-4 ........................................................................... 3, 15, 16, 17

Food, Drug, and Cosmetic Act,
    21 U.S.C. § 301 *et seq.* ........................................................................................... 14

Magnuson-Moss Warranty Act,
    15 U.S.C. § 2301 ..................................................................................................... 14

**Other Authorities**

Cong. Rec. H5946, 62, 64 (daily ed. Sept. 28, 2013) .................................................... 16

Pursuant to this Court's Pretrial Orders #30, 31, and 36, the Retailer and Pharmacy Defendants[1] hereby submit this memorandum of law in support of their Rule 12 motion to dismiss the Master Personal Injury Complaint ("PI Complaint") and the Consolidated Consumer Class Action Complaint ("Consumer Complaint")[2] on the ground of preemption.

## I.   <u>INTRODUCTION</u>

Through their operative complaints, Plaintiffs ask this Court to overlook years of product liability and multidistrict litigation precedent and, for the first time, hold every entity in the supply chain accountable for an allegedly defective product—despite the fact that retailers and pharmacies have no legal ability to do what Plaintiffs claim they should have done.  Aside from sweeping overgeneralizations lobbed at the Retailer and Pharmacy Defendants in the PI and Consumer Complaints, which are addressed in Defendants' Shotgun Pleading Briefs,[3] Plaintiffs' claims can be, at best, distilled into allegations that (1) the design of Zantac/ranitidine is inherently defective due to the risk of formation of NDMA; and (2) the warnings accompanying the drug were defective because they did not sufficiently warn of this risk.  In other words, Plaintiffs claim that the Retailer

---

[1] Throughout this brief, the phrase "Retailer Defendants" refers to those allegedly engaging in the act of selling over-the-counter ranitidine, and the phrase "Pharmacy Defendants" refers to those allegedly engaging in the act of dispensing prescription ranitidine.  Many Defendants are both Retailer Defendants *and* Pharmacy Defendants.  As used herein, the phrase "Retailer and Pharmacy Defendants" encompasses both, and the roles of these respective Defendants are identified in Appendix A.

[2] At issue in this memorandum are two complaints: (1) the PI Complaint [Dkt. No. 887]; and (2) the Consumer Complaint [Dkt. No. 889].  The Retailer and Pharmacy Defendants are not named in the Consolidated Third Party Payor Class Complaint [Dkt. No. 888].  Certain Retailer and Pharmacy Defendants are only named in the PI Complaint or in individual cases.  Appendix A.

[3] "Defendants' Shotgun Pleading Briefs" refer to (1) Defendants' Motion to Strike Consolidated Consumer and Third Party Payor Class Action Complaints on Grounds of Impermissible Shotgun Pleading and Lack of Article III Standing and Incorporated Memorandum of Law in Support; and (2) Defendants' Motion to Dismiss Plaintiffs' Master Personal Injury Complaint.  The arguments set forth therein are incorporated herein by reference.

and Pharmacy Defendants should be held liable for a design defect inherent in a product they neither designed nor manufactured, and that these Defendants should have defied federal law and unilaterally changed the ranitidine label to warn of dangers that were unknown to them.

The claims against the Retailer and Pharmacy Defendants are preempted and should be dismissed for the following reasons:

1. The Retailer and Pharmacy Defendants did not manufacture—nor are they alleged to have manufactured—ranitidine.  They likewise did not hold—nor are they alleged to have held—the New Drug Application ("NDA"), or even an Abbreviated New Drug Application ("ANDA"), for any ranitidine product.  Based on the thorough analyses set forth in the Brand Manufacturers' Preemption Brief[4] and the Generic Manufacturers' Preemption Brief,[5] the Retailer and Pharmacy Defendants had no legal authority or ability to alter the chemical composition of ranitidine, and any design defect claim against these Defendants is preempted.

2. The Retailer and Pharmacy Defendants likewise had no ability to alter the FDA-approved labeling and warnings for ranitidine products, whether sold over-the-counter ("OTC") or by prescription.  Accordingly, Plaintiffs' failure-to-warn and Magnuson-Moss Warranty Act claims must be dismissed, as explained in the Generic Manufacturers' Preemption Brief, addressing conflict preemption under *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 616-18

---

[4] The phrase "Brand Manufacturers' Preemption Brief" used herein refers to the Branded Defendants' Rule 12 Partial Motion to Dismiss Plaintiffs' Three Complaints as Preempted by Federal Law and Incorporated Memorandum of Law.

[5] The phrase "Generic Manufacturers' Preemption Brief" used herein refers to the Generic Manufacturers' and Repackagers' Rule 12 Motion to Dismiss on the Ground of Preemption and Incorporated Memorandum of Law.

(2011), and *Mutual Pharmaceutical Co. v. Bartlett*, 570 U.S. 472, 479-80 (2013), and as expanded upon herein.

3.  Specific to the Pharmacy Defendants, Plaintiffs' claims regarding prescription ranitidine are expressly preempted by the Drug Supply Chain Security Act. *See* 21 U.S.C. §§ 360eee to 360eee-4.

In an effort to most efficiently present these arguments, the Retailer and Pharmacy Defendants incorporate and adopt herein by reference the detailed preemption analyses set forth in the Brand Manufacturers' Preemption Brief, the Generic Manufacturers' Preemption Brief, and the Distributors' Preemption Brief.[6]  For the reasons articulated below, these arguments apply with even greater force and effect to the claims against the Retailer and Pharmacy Defendants.

Finally, pursuant to PTO #36 [Dkt. No. 1346], the instant memorandum does not address *all* legal deficiencies in the claims asserted against the Retailer and Pharmacy Defendants in the PI and Consumer Complaints, as those additional arguments will be addressed in subsequent briefing pursuant to the schedule set by the Court.  However, the Court need not reach those deficiencies because, for the reasons stated below, all claims against the Retailer and Pharmacy Defendants are preempted.

## II.   BACKGROUND AND FACTUAL ALLEGATIONS AGAINST THE RETAILER AND PHARMACY DEFENDANTS

### A.   The Roles of the Retailer and Pharmacy Defendants.

With respect to ranitidine, the Retailer and Pharmacy Defendants are not a homogeneous group of entities.  On one hand, the Retailer Defendants are those entities that sold *OTC* ranitidine, in either branded or generic form, to consumers.  On the other hand, only the Pharmacy Defendants

---

[6] The phrase "Distributors' Preemption Brief" used herein refers to the Distributor Defendants' Rule 12 Motion to Dismiss on the Ground of Preemption and Incorporated Memorandum of Law.

(those with licensed pharmacies) could dispense branded or generic **prescription** ranitidine to patients according to valid prescriptions from physicians.  Some Defendants are both Retailers and Pharmacies; others are only one or the other.  *See* Appendix A.  As set forth herein, the difference matters.  The *Mensing/Bartlett* analysis preempts all claims against both types of Defendants.  However, 21 U.S.C. § 379r preempts non-product liability claims against the Retailer Defendants only, and the Drug Supply Chain Security Act, a separate federal law, preempts claims against the Pharmacy Defendants only.  *See infra* Part III.B.

Importantly, no Retailer or Pharmacy Defendant is alleged to have designed or manufactured ranitidine, or to have held an NDA or ANDA for any branded or generic formulation of ranitidine.  *See* PI Complaint ¶ 155 (identifying the roles of "Retailers"); *id.* ¶¶ 231-244 (identifying NDA holders for branded Zantac); *id.* ¶¶ 251 (identifying ANDA holders for all prescription and OTC ranitidine).  Thus, regardless of the product that the Retailer Defendants sold or the Pharmacy Defendants dispensed, it is clear from both the PI and Consumer Complaints that these Defendants are named solely for their role in selling or dispensing ranitidine.[7]

---

[7] Plaintiffs characterize certain Retailer and Pharmacy Defendants as so-called "Repackagers" in the PI Complaint and Consumer Complaint, presumably because these Defendants sold generic OTC private label or "store brand" ranitidine manufactured by a Generic Manufacturer.  *See, e.g.,* PI Complaint ¶ 211.  These vague allegations are unclear, unsupported, and fail for the reasons set forth in the Defendants' Shotgun Pleading Briefs.  *E.g., Cramer v. State of Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997) (discussing how shotgun pleading impedes justice).  Because certain Generic Manufacturers are also named as so-called "Repackagers," these claims are discussed in the Generic Manufacturers' Preemption Brief and not further addressed here.  The Retailer and Pharmacy Defendants that are characterized as "Repackagers" do not concede that they are, in fact, Repackagers or subject to the allegations made as to Repackagers, but nevertheless adopt, by reference, the Generic Manufacturers and Repackagers' preemption analysis with respect to this characterization.

**B.      All Allegations Against the Retailer and Pharmacy Defendants Turn on a Theory of Design Defect and/or Failure to Warn.**

The PI Complaint alleges that Plaintiffs developed cancer and other physical injuries as a result of taking medicines containing ranitidine.[8]  The Consumer Complaint focuses largely on the alleged economic loss associated with the purchase of ranitidine, alleging that Plaintiffs would not have purchased ranitidine products had they known of the drug's risk.  Consumer Complaint ¶ 721.  The Consumer Complaint Plaintiffs seek refunds for purchases of the drug, medical monitoring damages, and other economic loss remedies.  Both Complaints assert nearly identical facts against the Retailer and Pharmacy Defendants.

In both Complaints, Plaintiffs' claims against the Retailer and Pharmacy Defendants boil down to the allegation that, in Plaintiffs' words, "Defendants [collectively] concealed from the public a devastating secret . . . : Zantac and its generic forms inherently harbor a well-known cancer causing compound, N-Nitrosodimethylamine [NDMA]."  PI Complaint, p. 1 (Preamble); *see also id.* ¶ 1 ("ranitidine is anything but safe.  It is an unstable molecule that breaks down under normal conditions into high levels of NDMA, a carcinogen that is as potent as it is dangerous."); *id.* ¶ 6 ("The high levels of NDMA observed in ranitidine-containing products is a function of the drug's unstable nature.").

In other words, Plaintiffs allege that ranitidine is inherently defective because its formulation leads to certain cancers (a design defect claim) and that Defendants—including the Retailer and Pharmacy Defendants—failed to disclose this risk to the public (a failure-to-warn

---

[8] Plaintiffs use "ranitidine" and "ranitidine-containing drug" interchangeably, as do the Retailer and Pharmacy Defendants here.  FDA uses the drug name "ranitidine hydrochloride" in its databases (*see* PI Complaint ¶ n.1 (noting that Boehringer Ingelheim holds an ANDA for "generic ranitidine")) though the ANDA is technically listed as "ranitidine hydrochloride" in the FDA database.

claim). Although Plaintiffs assert eleven causes of action in the PI Complaint against the Retailer

and Pharmacy Defendants, the common thread across them all is the alleged inherent molecular

defect in ranitidine, and Defendants' alleged failure to warn consumers of this defect. The

allegations in each of the non-derivative counts of the PI Complaint further confirm the nature of

these claims against the Retailer and Pharmacy Defendants:

| Count | Para. | PI Complaint Allegations |
|---|---|---|
| **I**<br>Failure to Warn (Strict Liability) | ¶ 460 | Even though Defendants knew or should have known that ranitidine posed a grave risk of harm, they **failed to exercise reasonable care to warn of the dangerous risks** associated with use and exposure to ranitidine-containing products. The **dangerous propensities of ranitidine-containing products** and the carcinogenic characteristics of NDMA . . . were known to Defendants, or scientifically knowable to Defendants through appropriate research and testing by known methods, at the time they distributed, supplied or sold the product, and were not known to end users and consumers, such as Plaintiffs. |
| **II**<br>Design Defect (Strict Liability) | ¶ 486 | At the time ranitidine-containing products left Defendants' control, there was a practical, technically feasible, and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Defendants' ranitidine-containing products. For example, Defendants could have provided **proper warnings**, expiration dates, stability information, and associated information. |
| **IV**<br>Failure to Warn (Negligence) | ¶ 505 | At the time of manufacture, **Defendants could have provided warnings or instructions regarding the full and complete risks** of ranitidine because they knew or should have known **use of ranitidine-containing products was dangerous, harmful and injurious** when used by Plaintiffs in a reasonably foreseeable manner. |
| **VII**<br>General Negligence | ¶ 545 | At all relevant times, Defendants had a duty to exercise reasonable care in the marketing and sale of ranitidine-containing products. Defendants' owed to consumers and the general public a duty of care that included **providing accurate, true, and correct information** concerning the risks of using ranitidine-containing products and **appropriate, complete, and accurate warnings concerning the potential adverse effects of ranitidine and, in particular, its ability to transform into the carcinogenic compound NDMA**. |

| **IX**<br>Express<br>Warranty | ¶ 583 | Physicians would not have prescribed, and Plaintiffs would not have purchased or used ranitidine-containing products had Defendants properly **disclosed the risks** associated with ranitidine, either through advertising, labeling, or any other form of disclosure. |
|---|---|---|
| **X**<br>Implied<br>Warranty | ¶ 596 | Defendants intended that ranitidine-containing products be used in the manner in which Plaintiffs, in fact, used them and which Defendants **impliedly warranted to be of merchantable quality, safe, and fit for this use**, even though ranitidine-containing products were not adequately tested or researched. |
| **XI**<br>Deceptive<br>Acts | ¶ 608 | Unfair methods of competition or deceptive acts or practices [include] **Representing that** goods or services have characteristics, ingredients, uses benefits or qualities they do not have; [and] **Representing that** ranitidine-containing products are of a particular standard, quality, and grade when they are not. |
| **XII**<br>Unjust<br>Enrichment | ¶ 631 | Defendants were unjustly enriched as a result of their wrongful conduct, including through the false and misleading marketing, promotions, and advertisements that **omitted disclosure that the products presented an unreasonable risk** of substantial bodily injury resulting from their use. |

PI Complaint ¶¶ 460, 486, 505, 545, 583, 596, 608, 631 (emphasis added).

The Consumer Complaint contains hundreds of counts, but generally, asserts the same causes of action as the PI Complaint against the Retailer and Pharmacy Defendants, with the exception of Count Six. Count Six raises a state-law battery cause of action based on "promotion, advertisement, marketing, distribution, and sale" of ranitidine, which equally falls within the sphere of a failure-to-warn claim. *See* Consumer Complaint ¶ 894.

## III.   <u>ARGUMENT</u>

### A.   **Claims Against the Retailer and Pharmacy Defendants Fall Under *Mensing/Bartlett* Conflict Preemption.**

The Court is familiar with the *Mensing/Bartlett* framework from the arguments presented by the Brand and Generic Manufacturers, which the Retailer and Pharmacy Defendants adopt herein. Reiterated briefly, the U.S. Supreme Court has recognized three broad categories of state

law claims in the context of FDA-regulated drugs that are preempted because they conflict with federal law: (1) claims against any non-NDA holder based on the drug's label or other FDA-approved statements; (2) claims based on the drug's inherent design; and (3) claims that the drug never should have been sold in the first place.  The first is prohibited under *Mensing*; the second two are prohibited under *Bartlett*.

The same principles apply to the Retailer and Pharmacy Defendants, as they do not hold an NDA or even an ANDA for ranitidine and therefore have no legal authority to alter the composition, design, or labeling for ranitidine, and are also not alleged to have ever manufactured any formulation of ranitidine.  All of Plaintiff's claims against the Retailer and Pharmacy Defendants fall within the classes of claims preempted by *Mensing* and *Bartlett*, and should be dismissed.

        1.      <u>The Retailer and Pharmacy Defendants Had No Legal Ability to Alter Ranitidine's Design or Warnings</u>.

As explained by the Brand Manufacturers, claims against any manufacturer for design defect are preempted because no one can change the composition of an FDA-approved drug once it is approved.  *See Bartlett,* 570 U.S. at 486-87 (dismissing claim for design defect); Brand Manufacturers' Preemption Brief at Section II.   Likewise, as explained by the Generic Manufacturers, claims against generic drug manufacturers for design defect or for inadequate warnings are preempted because, as non-NDA holders, they are legally prohibited from unilaterally or independently changing either their labels or the chemical composition of the drug from that of the reference listed or brand-name drug.  *Bartlett*, 570 U.S. at 475, 483-84; *Mensing*, 564 U.S. at 612–15, 618 (dismissing claim for failure to warn); Generic Manufacturers' Preemption Brief at Section IV.A.1-3.  Because OTC drugs, like non-prescription ranitidine, are subject to the same rules and duty of sameness as prescription drugs, the *Mensing*/*Bartlett* analysis

applies to claims involving the sale or dispensing of both prescription and OTC ranitidine. *See* Generic Manufacturers' Preemption Brief at Section IV.B.2-3; *see also* 21 U.S.C. § 355(j); *Greager v. McNeil-PPC, Inc.*, 414 F. Supp. 3d 1137, 1142 (N.D. Ill. 2019).

Preemption under *Mensing/Bartlett* applies equally, if not more so, to downstream entities, like the Retailer and Pharmacy Defendants here. Pharmacies and retailers have no more authority than generic manufacturers to alter a drug's composition, label, or design. *See, e.g., Stevens v. Cmty. Health Care, Inc.*, No. ESCV200702080, 2011 WL 6379298, at *1 (Mass. Super. Oct. 5, 2011) (noting how distributor "had no ability to change labeling or warnings" and could not be subject to liability); *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL No. 2243 (JAP-LHG), 2012 WL 181411, at *3-4 (D.N.J. Jan. 17, 2012) (holding that the distributor defendant had no power to alter the drug's labeling because "[t]hat power lies with the applicant who filed the [NDA]"and "a contractual relationship between [the distributor defendant] and [NDA holder] cannot change the fact that [the distributor defendant] is not the NDA holder").

The Southern District of Florida recently rejected claims that a non-manufacturer, even one with a close relationship with the NDA holder and manufacturer, could change a drug's label or composition, thus finding claims against the non-NDA holder preempted. *See Smith v. Teva Pharm. USA, Inc.*, 437 F. Supp. 3d 1159, 1165-66 (S.D. Fla. 2020) ("The FDA's regulations nowhere contemplate a distributor of a brand drug, albeit a distributor closely affiliated with the NDA holder, initiating changes to an approved NDA . . . Fatal to Plaintiff's claims is that Defendant is not [the drug's] NDA holder."). There, the Court found "no reason to depart from the wealth of authority clearly stating that a company that does not hold an NDA, regardless of its connection to the NDA holder, is powerless to submit label changes to the FDA." *Id.* at 1166; *see also, e.g., In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 940 (6th Cir.

2014) (affirming dismissal of state claims against brand manufacturer as preempted because, once that defendant divested its NDA prior to plaintiff's use of the drug, that defendant had "no more power to change the [brand] label than did [the generic manufacturer]"); *Brazil v. Janssen Research & Dev. LLC*, 196 F. Supp. 3d 1351, 1364–65 (N.D. Ga. 2016) (noting that a "distributor, even of a brand name drug," cannot change labeling, and holding state claims against one company preempted even where the NDA was held by a related company).

Courts have routinely relied on *Mensing/Bartlett* to specifically find label- or design-based claims against retailers and pharmacies preempted. *E.g.*, *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2:14-mn-02502-RMG, 2016 WL 7368203, at *2 (D.S.C. Nov. 1, 2016) ("a pharmacy also has no authority to unilaterally change a drug's label" and thus, any claims against the pharmacy based on the label are preempted); *Greager*, 414 F. Supp. 3d at 1142 (dismissing claims against retail seller of OTC drug on preemption grounds).

Thus, the relevant inquiry under *Mensing/Bartlett* is not the type of defendant (*e.g.*, manufacturer, distributor, retailer) or even the nature of the drug product sold or dispensed (*e.g.*, generic or branded, prescription or OTC), but rather, whether the defendant holds an NDA and *can* unilaterally make changes to the drug's label or composition. *See Greager*, 414 F. Supp. 3d at 1142 (noting the "key distinction in the relevant regulatory structure and case law is not between prescription and non-prescription drugs but between NDA holders and ANDA holders" and dismissing all claims relating to an OTC drug against both the generic manufacturer and the retailer, including claims for design defect and failure to warn). Indeed, 21 C.F.R. § 314.150(b)(10) allows FDA to withdraw approval for a drug *whenever* the labeling "is no longer consistent with" the branded label, and FDA will notify not only ANDA holders, but also "all other

persons who manufacture or distribute" the drug if the labeling is inconsistent with the branded label.  § 314.150(a), (b)(10).

Here, the Retailer and Pharmacy Defendants are mere sellers or dispensers of ranitidine manufactured by others.  None of the Retailer or Pharmacy Defendants designed or manufactured any branded or generic formulation of ranitidine—nor are they alleged to.  Likewise, none of these Defendants held an NDA for brand name ranitidine, or even an ANDA for generic ranitidine—nor are they alleged to.  Similarly, none of these Defendants had any ability to change the allegedly defective design of the ranitidine they sold or dispensed—nor are they alleged to.

As non-NDA holders, the Pharmacy Defendants, who simply dispense prescriptions as written, and the Retailer Defendants, who simply place the OTC product on store shelves, are barred under federal law from unilaterally changing the FDA-mandated labels of the products they dispense or sell.  Put another way, it would make no sense to find that *Mensing* precludes failure-to-warn claims against a generic manufacturer—because it is powerless to change the label—and yet deny the application of those same preemption principles to the sellers and dispensers of ranitidine products, who are at least equally as powerless to make a chance to products for which they do not hold an NDA or ANDA.

In short, *Mensing* and *Bartlett* apply to the Retailer and Pharmacy Defendants because those entities do not hold an NDA for ranitidine and therefore had no legal authority to alter the composition of ranitidine or its FDA-approved labeling.

       2.     <u>Any Claims that the Retailer and Pharmacy Defendants Should Not Have Sold Ranitidine Are Preempted</u>.

As stated above in Section II.A, the Retailer and Pharmacy Defendants are named in this litigation because of their role in selling and dispensing ranitidine.  *See*, *e.g.,* PI Complaint ¶ 155.  However, because the Retailer and Pharmacy Defendants are precluded from changing the

formulation of ranitidine, and from changing the labeling and warnings associated with ranitidine, Plaintiffs' Complaints confirm that the only recourse these Defendants would have had to escape liability was to simply stop selling and dispensing ranitidine altogether.   This is likewise preempted.

As the *Bartlett* Court explained: "We reject this 'stop-selling' rationale as incompatible with our pre-emption jurisprudence.  Our pre-emption cases presume that an actor seeking to satisfy both his federal- and state-law obligations is not required to cease acting altogether in order to avoid liability."  570 U.S. at 488.  "Indeed," the Court wrote, "if the option of ceasing to act defeated a claim of impossibility, impossibility pre-emption would be 'all but meaningless.'"  *Id.*; *see also Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 478-79 (4th Cir. 2014) (holding that all state law claims against the non-NDA holder defendant were preempted because it "was not permitted to change its warnings or formulation" so it could not avoid liability for plaintiff's claims "except by leaving the market"); *Brinkley v. Pfizer, Inc.*, 772 F.3d 1133, 1140-41 (8th Cir. 2014) (dismissing plaintiff's state law claims as "preempted by impossibility" because the non-NDA holder could not avoid liability under Missouri law "without changing its product, changing its labeling, or leaving the market"); *Fullington v. Pliva, Inc.*, No. 4:10CV00236 JLH, 2014 WL 806149, at *4 (E.D. Ark. Feb. 28, 2014) (also rejecting plaintiff's argument that "defendants could have refrained from selling [the drug]" based on *Bartlett*).

3.   <u>All Remaining Claims Against the Retailer and Pharmacy Defendants Are Preempted</u>.

Further, and for the reasons articulated in the Brand Manufacturers' Preemption Brief at Section I and the Generic Manufacturers' Preemption Brief at Sections IV.A.1-2, IV.B-C, which the Retailer and Pharmacy Defendants adopt and incorporate herein by reference, Plaintiffs'

remaining claims are preempted or must otherwise be dismissed under controlling federal law. Briefly:

- Plaintiffs' characterization of certain Retailer and Pharmacy Defendants as so-called "Repackagers" in Counts V (negligent product design) and VIII (negligent misrepresentation) fails for the reasons articulated in the Generic Manufacturers' Preemption Brief at Sections III.A.3-4, III.B.1-2, IV.A.1-2. As noted above, the Retailer and Pharmacy Defendants do not hold an NDA or ANDA for any form of ranitidine and are not "Repackagers." Counts V and VIII fail substantively against the Retailers and Pharmacies for that reason, but are also preempted for all of the reasons stated herein and because they contain substantive allegations that easily fall within the types of claims that are preempted by *Mensing* and *Bartlett*.

- As stated in the Generic Manufacturers' Preemption Brief at Section III.B.2, Plaintiffs' attempts to circumvent *Mensing*/*Bartlett* preemption through creative pleading—*i.e.*, phrasing arguments as "failure to adequately test or inspect," "failure to follow CGMPs," *etc.*—are preempted. Indeed, as Plaintiffs apparently recognize by omitting manufacturing defect claims against the Retailer and Pharmacy Defendants in the Complaints, no manufacturing-related claim could lie against these Defendants because they are not alleged to have held any regulatory license to manufacture the product and are therefore powerless to change manufacturing processes for ranitidine.[9]

---

[9] Federal law requires that an NDA or ANDA holder describe and disclose all manufacturers of its product. *See* 21 U.S.C. § 355(b)(1)(D) (NDA must contain "a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and packing of such drug."); *id.* (j)(2)(A)(vi) (requiring same in an ANDA); 21 C.F.R. § 314.50(d)(1)(i)–(ii)(a) (NDA must contain a detailed technical "[c]hemistry, manufacturing, and controls section," detailing, among other things "the name and address of [the drug substance's] manufacturer" as well as "the name and address of each manufacturer of the drug product; [and] a description of the

- As explained in the Generic Manufacturers' Preemption Brief at Section IV.B.3 and the Distributors' Preemption Brief at Section III.D, Plaintiffs' claims under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, must be dismissed because the MMWA (1) requires a valid state-law "anchor" breach of warranty claim, and all such state law claims advanced by Plaintiffs are preempted under *Mensing*; and (2) is inapplicable to any written warranty otherwise governed by federal law, which includes drug labeling regulated under the federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq. See*, *e.g.*, *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1110-11 (S.D. Fla. 2019); *Hernandez v. Johnson & Johnson Consumer, Inc.*, No. 3:19-cv-15679-BRM-TJB, 2020 WL 2537633, at *5 (D.N.J. May 19, 2020).

- Plaintiffs' derivative claims (*i.e.,* Loss of Consortium, Survival, Wrongful Death, and Punitive Damages) are, of course, also preempted. *E.g., In re Darvocet*, 756 F.3d at 936; Generic Manufacturers' Preemption Brief at Section IV.A.5.

- Any claims based on a fraud-on-the-FDA theory are separately preempted pursuant to *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001), as explained in the Generic Manufacturers' Preemption Brief at Section III.B.2.

- The Brand Manufacturers and Distributors have contemporaneously argued that Plaintiffs' economic loss claims for OTC ranitidine are preempted by 21 U.S.C. § 379r, an argument which the Pharmacy and Retailer Defendants adopt wholesale. *See Carter v. Novartis*

---

manufacturing and packaging procedures and in-process controls for the drug product."). The Retailer and Pharmacy Defendants are not alleged to have held NDAs or ANDAs, nor are they alleged to have been identified in any Zantac NDA or ranitidine ANDA as an authorized manufacturer. To the extent any Plaintiff purports to assert a manufacturing defect claim against a Retailer or Pharmacy Defendant in an individual complaint, such a claim would clearly be preempted.

*Consumer Health, Inc*., 582 F. Supp. 2d 1271, 1277, 1287-88 (C.D. Cal. 2008) (noting it is plaintiff's burden to demonstrate that any state law claims fall within § 379r(e)'s savings clause and finding claims for economic loss only do not fall within the savings clause); *see also* Brand Manufacturers' Preemption Brief at Section I; Distributors' Preemption Brief at Section III.C.2.  This argument also defeats any claims for economic loss stemming from use of OTC ranitidine, whether branded or generic.

**B.      The Drug Supply Chain Security Act Preempts All Claims Relating to Prescription Ranitidine.**

Finally, Plaintiffs' claims against the Pharmacy Defendants are expressly preempted by the Drug Supply Chain Security Act ("Drug Security Act" or "Act"), 21 U.S.C. §§ 360eee to 360eee-4.  The Act is Congress' national, uniform framework for tracing prescription drugs throughout the supply chain.

1.      <u>The Drug Supply Chain Security Act Establishes a Framework of Requirements Governing Pharmacies' Tracing and Investigation of Potentially Misbranded Drugs</u>.

In 2013, Congress passed the Drug Security Act in an effort to secure the supply chain for prescription pharmaceutical drugs.  21 U.S.C. §§ 360eee to 360eee-4.  The Act is intentionally broad and comprehensive, governing all trading partners (whether manufacturers, repackagers, distributors, or pharmacies) in the supply chain for prescription drugs and establishing a framework for the critical steps necessary to enable the eventual electronic identification and traceability of prescription drugs.  For example, since 2015, trading partners have been required to include specific transaction information for most transfers to other trading partners in the supply chain.  *See* 21 U.S.C. § 360eee-1.

The Act also imposes specific obligations on pharmacies, called "dispensers" in the Act's text.  First, pharmacies may not accept ownership of a prescription drug unless the previous owner

provides specific information about that drug, including its name, its strength and dose, and the manufacturer's confirmation that the drug is what it purports to be and is fit for distribution. § 360eee(26)-(27), § 360eee-1(d)(1)(A)(i).  A pharmacy must reject any shipment that is missing this information.   Second, the Act requires that pharmacies capture various information "as necessary to investigate a suspect product." § 360eee-1(d)(1)(A)(iii) (requiring capture of, *among other things*, transaction history, product name and dose, and manufacturer's verification of product legitimacy).  Suspect products include any drug that a pharmacy has reason to believe is adulterated, misbranded, or otherwise unfit for distribution.  § 360eee(21).  Finally, pharmacies must implement a system for quarantining suspect products and determining whether they are unfit for distribution.  § 360eee-1(d)(4).  Through this web of requirements for pharmacies and others in the supply chain, the Act creates a comprehensive, national framework that sets pharmacies' requirements for identifying, tracing, and isolating adulterated or misbranded drugs.

2. <u>Plaintiffs' Claims Against the Pharmacy Defendants Are Expressly Preempted</u>.

To give the Act effect, Congress included an express preemption provision that precludes imposition of any state requirement that is "inconsistent with, more stringent than, or in addition to" requirements under the Act, including investigation relating to systems for tracing misbranded or adulterated drugs.  21 U.S.C. § 360eee-4(a).  The preemption provision provides uniformity so that trading partners are not subjected to different rules for identifying, tracing, and quarantining suspect products.[10]  It reads, in relevant part:

> *[N]o State or political subdivision of a State may establish or continue in effect any requirements* for tracing products through the distribution system (including any requirements with respect to statements of distribution history, transaction history,

---

[10] Congress intended to replace the patchwork of state regulations about what is required when a dispenser accepts a drug from a trading partner.  *See* Cong. Rec. H5946, 62, 64 (daily ed. Sept. 28, 2013) (statements of Rep. Latta and Rep. Matheson).

> transaction information, or transaction statement of a product as such product changes ownership in the supply chain, or verification, investigation, disposition, notification, or recordkeeping relating to such systems, including paper or electronic pedigree systems or for tracking and tracing drugs throughout the distribution system) *which are inconsistent with, more stringent than, or in addition to, any requirements applicable under [the Act]*.

§ 360eee-4(a) (emphasis added). Through this broad preemption clause, the Act sets the rules, and no state requirements can add to or contradict them, including through lawsuits. *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521 (1992); *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324-25 (2008). Unlike other express preemption provisions, which preempt only those state requirements that are "inconsistent" with federal standards, the Drug Security Act additionally preempts any state requirements for product tracing that are "more stringent than, or in addition to" federal requirements. *Cf. Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 459-60 (2012) (clause that prevents a state from imposing any additional or different requirements "sweeps widely").

Plaintiffs do not plausibly allege that the Pharmacy Defendants violated the Drug Security Act. Their claims instead depend on a finding that a pharmacy's *compliance with the Act is not enough* under state common law. That, however, is precisely what the Act's preemption provision prohibits: state requirements (including common law requirements) that are inconsistent with, more stringent than, or in addition to those imposed by the Act.

Plaintiffs' claims rely on the theory that the Pharmacy Defendants should not have accepted prescription ranitidine from pharmacy suppliers because the ranitidine contained NDMA and was therefore misbranded or adulterated. Plaintiffs effectively seek to impose an artificial duty on the Pharmacy Defendants to reject prescription ranitidine that Plaintiffs believe was misbranded or adulterated. *See* PI Complaint ¶¶ 415-424 (alleging ranitidine was misbranded or adulterated). Were that true, state law would impose duties upon the Pharmacy Defendants that are more stringent than the Act's requirements. The Act does not mandate that dispensers identify every

misbranded, adulterated, or counterfeit drug—that would be impossible.  What it does require is that dispensers capture transaction information and refuse product if—but only if—a manufacturer does not certify that a product is what it says it is.  By seeking to impose obligations on pharmacies beyond the Act's requirements, Plaintiffs' claims threaten the balance struck by Congress.

The Act requires pharmacies to obtain a specific set of information from suppliers.  It does *not* require pharmacies to obtain lists of ingredients or impurities, demand a guarantee that the product is not adulterated, or insist upon safety beyond what FDA requires.  Plaintiffs' allegations would require the Pharmacy Defendants to refuse receipt of prescription drugs unless their trading partners provided safety and impurity information about the drug beyond its label, including chemical analyses of ranitidine's molecular structure, or to perform such chemical tests themselves, all of which would be in addition to and well beyond what the Act requires.

In effect, all of Plaintiffs' claims challenge the Act and FDA's requirements for identifying and investigating potentially adulterated or misbranded product by asserting that compliance with the Act is not enough.  The Act sets forth the *maximum* a pharmacy is required to do when accepting product from manufacturers and tracing it through the supply chain—it does not require what Plaintiffs propose.  Plaintiffs' claims, and the duties and warranties Plaintiffs seek to impose on the Pharmacy Defendants, would require the Pharmacy Defendants to identify and investigate every single product for safety, molecular instability, and adulteration.  This is not what the Act envisions or mandates.  Therefore, all of Plaintiffs' claims against the Pharmacy Defendants are preempted and should be dismissed.

## IV.   <u>CONCLUSION</u>

For the reasons stated herein, and as incorporated by reference from Defendants' Shotgun Pleading Briefs, the Brand Manufacturers' Preemption Brief, the Generic Manufacturers'

Preemption Brief, and the Distributors' Preemption Brief, all of Plaintiffs' state law claims in the

Master Personal Injury Complaint and the Consolidated Consumer Class Action Complaint against

the Retailer and Pharmacy Defendants are preempted and must be dismissed.

Dated:  August 24, 2020                    Respectfully submitted,

                                           */s/ Sarah E. Johnston*
                                           Sarah E. Johnston
                                           BARNES & THORNBURG LLP
                                           2029 Century Park East, Suite 300
                                           Los Angeles, CA 90067
                                           Tel: (310) 284-3798
                                           Fax: (310) 284-3894
                                           sjohnston@btlaw.com
                                           *Liaison Counsel for All Retailer and Pharmacy*
                                           *Defendants; and Attorney for Defendants*
                                           *Albertsons Companies, Inc., improperly named as*
                                           *Albertson's Companies, Inc.; Amazon.com, Inc.;*
                                           *BJ's Wholesale Club Holdings, Inc.; Costco*
                                           *Wholesale Corporation; CVS Pharmacy, Inc.;*
                                           *Duane Reade, Inc.; Giant Eagle, Inc.; Publix Super*
                                           *Markets, Inc., Rite Aid Hdqtrs. Corp.; Safeway Inc.;*
                                           *ShopRite Supermarkets, Inc.; Southeastern Grocers,*
                                           *Inc.; Walgreen Co.; Walgreens Boot Alliance, Inc.;*
                                           *Wakefern Food Corporation; and Winn-Dixie*
                                           *Stores, Inc.*

                                           */s/ Andrew D. Kaplan (with consent)*
                                           Andrew D. Kaplan
                                           Daniel T. Campbell
                                           Lyndsay A. Gorton
                                           CROWELL & MORING LLP
                                           1001 Pennsylvania Avenue NW
                                           Washington, DC 20004
                                           Tel: (202) 624-2500
                                           Fax: (202) 628-5116
                                           akaplan@crowell.com
                                           dcampbell@crowell.com
                                           lgorton@crowell.com
                                           *Attorneys for Defendants Cardinal Health, Inc. and*
                                           *Medicine Shoppe International, Inc.*

*/s/ R. Trent Taylor (with consent)*
R. Trent Taylor
MCGUIRE WOODS LLP
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1182
Fax: (804) 225-5409
rtaylor@mcguirewoods.com

Emily Y. Rottmann
MCGUIRE WOODS LLP
50 N. Laura Street, Suite 3300
Jacksonville, FL 32202
Tel: (904) 798-3200
Fax: (904) 798-3207
erottmann@mcguirewoods.com
*Attorneys for Defendant Dolgencorp, LLC*

*/s/ Christopher M. Strongosky (with consent)*
Christopher M. Strongosky
DLA PIPER LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
Tel: (212) 335-4643
Fax: (212) 884-8543
christopher.strongosky@dlapiper.com
*Attorney for Defendants Dollar Tree Stores, Inc.
and Family Dollar, Inc.*

*/s/ Matt Knepper (with consent)*
Matt Knepper
Abraham James Spung
Sarah L. Zimmerman
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Tel: (314) 480-1500
Fax: (314) 480-1505
matt.knepper@huschblackwell.com
james.spung@huschblackwell.com
sarah.zimmerman@huschblackwell.com
*Attorneys for Defendant Express Scripts, Inc.*

/s/ Sophia B. Castillo (with consent)
Sophia B. Castillo
DOWNEY BRAND LLP
455 Market Street, Suite 1500
San Francisco, CA 94105
Tel: (415) 848-4800
Fax: (415) 848-4801
scastillo@downeybrand.com

Monica Browner
John McCarron
DOWNEY BRAND LLP
621 Capitol Mall, 18th Floor
Sacramento, CA 95814
Tel: (916) 444-1000
Fax: (916) 444-2100
mbrowner@downeybrand.com
jmccarron@downeybrand.com
*Attorneys for Grocery Outlet, Inc.**

/s/ Kirstin B. Ives (with consent)
Kirstin B. Ives
Tyler Johannes
FALKENBERG IVES LLP
230 W. Monroe Street, Suite 2220
Chicago, IL 60606
Tel: (312) 566-4803
Fax: (312) 566-4810
kbi@falkenbergives.com
tgj@falkenbergives.com
*Attorneys for Defendant Humana Pharmacy, Inc.*

/s/ Jeffrey A. Kennard (with consent)
Jeffrey A. Kennard
Cameron E. Grant
SCHARNHORST AST KENNARD GRIFFIN PC
1100 Walnut Street, Ste 1950
Kansas City, MO 64106
Tel: (816) 268-9400
Fax: (816) 268-9409
jkennard@sakg.com
cgrant@sakg.com
*Attorneys for Defendant Hy-Vee, Inc.*

*Not named as a Defendant in the PI or Consumer Complaints.

21

/s/ Robert J. Guite (with consent)
Robert J. Guite
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Tel: (415) 434-9100
rguite@sheppardmullin.com

Moe Keshavarzi
Jennifer Pennington
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071
Tel: (213) 620-1780
mkeshavarzi@sheppardmullin.com
jepennington@sheppardmullin.com
*Attorneys for Defendant Kaiser Permanente
International*

/s/ Fredrick H. L. McClure (with consent)
Fredrick H. L. McClure
William A. McBride
TRENAM, KEMKER, SCHARF, BARKIN,
FRYE, O'NEILL & MULLIS, P.A.
101 E. Kennedy Blvd., Suite 2700
Tampa, FL 33602
Tel: (813) 223-7474
Fax: (813) 229-6553
fmcclure@trenam.com; jamer@trenam.com
bmcbride@trenam.com; lbehr@trenam.com
*Attorneys for Defendants The Kroger Co., Fred
Meyer Stores, Inc. and Smith's Food & Drug
Centers, Inc.*

/s/ Jerauld E. Brydges  (with consent)
Jerauld E. Brydges
HARTER SECREST & EMERY LLP
1600 Bausch & Lomb Place
Rochester, NY 14604
Tel: (585) 231-1239
Fax: (585) 232-2152
jbrydges@hselaw.com

22

Manuel Farach
McGLINCHEY STAFFORD
One East Broward Blvd, Suite 1400
Fort Lauderdale, FL 33301
Tel: (954) 356-2501
Fax: (954) 333-3847
mfarach@mcglinchey.com
*Attorneys for Defendant Price Chopper Operating Co., Inc.*

*/s/ Harley Ratliff (with consent)*
Harley Ratliff
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Tel:  (816) 474-6550
hratliff@shb.com

William P. Geraghty
Devin A. Moss
SHOOK, HARDY & BACON L.L.P.
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, FL 33131
Tel: (305) 358-5171
Fax: (305) 358-7470
wgeraghty@shb.com
dmoss@shb.com
*Attorneys for Defendants Walmart, Inc. and Sam's West, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of August, 2020, I caused the foregoing Retailer and

Pharmacy Defendants' Rule 12 Motion to Dismiss on the Ground of Preemption and Incorporated

Memorandum of Law to be filed electronically through the CM/ECF system, which will send

notice of filing to all CM/ECF participants.

*/s/  Sarah E. Johnston*
Sarah E. Johnston

## APPENDIX A

### RETAILER/PHARMACY DEFENDANTS
### NAMED IN THE PI AND CONSUMER COMPLAINTS

| RETAILER DEFENDANTS (RETAILER OTC ONLY) | |
|---|---|
| **Defendant** | **Associated Corporate Entities (**named in the PI Complaint and/or Consumer Complaint) |
| Amazon.com, Inc. | |
| Dolgencorp, LLC* | |
| Family Dollar, Inc.* | Dollar Tree Stores, Inc. |

| PHARMACY DEFENDANTS (PHARMACY PRESCRIPTION ONLY) | |
|---|---|
| **Defendant** | **Associated Corporate Entities (**named in the PI Complaint and/or Consumer Complaint) |
| Express Scripts, Inc.[11] | |

| RETAILER AND PHARMACY DEFENDANTS (BOTH OPERATIONS) | |
|---|---|
| **Defendant** | **Associated Corporate Entities (**named in the PI Complaint and/or Consumer Complaint) |
| Albertsons Companies, Inc. (improperly named as Albertson's Companies, Inc.) | Safeway Inc.* (improperly named as Safeway, Inc.) |
| BJ's Wholesale Club Holdings, Inc.[12] | |
| Costco Wholesale Corporation* | |
| CVS Pharmacy, Inc.* | |
| Giant Eagle, Inc. | |

---

* Defendants who have also been named as Repackagers in the PI and Consumer Complaints.

[11] Express Scripts, Inc. is only named in the PI Complaint.  Further, Express Scripts, Inc. is not a pharmacy and does not dispense medications, including brand or generic ranitidine.

[12] BJ's Wholesale Club Holdings, Inc. is only named in the PI Complaint.

A-1

| | |
|---|---|
| Humana Pharmacy, Inc.[13] (improperly named as Humana Pharmacy Solutions, Inc.) | |
| Hy-Vee, Inc. | |
| Kaiser Permanente International[14] | |
| The Kroger Co.* | Fred Meyer Stores, Inc. Smith's Food & Drug Centers, Inc. (improperly named as Smith's Food and Drug Centers, Inc.) |
| Price Chopper Operating Co., Inc. | |
| Publix Super Markets, Inc.* (improperly named as Publix Supermarkets, Inc.) | |
| Rite Aid Hdqtrs. Corp.* (improperly named as Rite Aid Corporation) | |
| ShopRite Supermarkets, Inc. (improperly named as Shop-Rite Supermarkets, Inc.) | Wakefern Food Corporation |
| Walgreen Co. (improperly named as Walgreens Boot Alliance) | Duane Reade, Inc. Walgreens Boot Alliance, Inc.* |
| Walmart, Inc. | Sam's West, Inc. |
| Winn-Dixie Stores, Inc. (improperly named as Winn Dixie Stores, Inc.) | Southeastern Grocers, Inc.[15] (improperly named as Southeastern Grocers, Inc. f/k/a Southeastern Grocers, LLC) |

---

[13] Humana Pharmacy, Inc., improperly named as Humana Pharmacy Solutions, Inc., is only named in the PI Complaint.

[14] Kaiser Permanente International is only named in the PI Complaint.

[15] Southeastern Grocers, Inc., improperly named as Southeastern Grocers, Inc. f/k/a Southeastern Grocers, LLC, is only named in the PI Complaint.

A-2

## RETAILERS AND PHARMACIES
## NOT NAMED IN THE PI OR CONSUMER COMPLAINTS

| RETAILERS (RETAILER OTC ONLY) | |
|---|---|
| **Retailer** | **Associated Corporate Entities (**named in the PI Complaint and/or Consumer Complaint**)** |
| Grocery Outlet, Inc.[16] | |

| PHARMACIES (PHARMACY PRESCRIPTION ONLY) | |
|---|---|
| **Pharmacy** | **Associated Corporate Entities** |
| None. | |

| RETAILERS AND PHARMACIES (BOTH OPERATIONS) | |
|---|---|
| **Retailer/Pharmacy** | **Associated Corporate Entities (**named in the PI Complaint and/or Consumer Complaint**)** |
| The Vons Companies, Inc.[17] | Albertsons Companies, Inc. Safeway Inc. |
| Target Corporation[18] | |

---

[16]  Grocery Outlet, Inc. is named in three individual personal injury cases, *Gibbons v. GlaxoSmithKline LLC et al.*, Case No. RG20061365; *Elias v. GlaxoSmithKline LLC et al.*, Case No. RG20061726; and *Grag Amelino v. GlaxoSmithKline, LLC et al.*, Case No. RG20061342, filed in Alameda Superior Court in California, that have been tagged for transfer to this MDL. *See* Conditional Transfer Order 25 [Dkt. No. 1050]; Conditional Transfer Order 22 [Dkt. No. 941]. These actions currently are subject to a proposed motion to remand by the Plaintiffs' firms initiating these three actions [Dkt. No. 1205], which the Court has deferred until after rulings on the instant Motions.  Grocery Outlet, Inc. is not named as a Defendant in the PI or Consumer Complaints; however, due to the current procedural posture of the cases in which it is a Defendant, Grocery Outlet, Inc. is identified here as a moving party, subject to the Court's further rulings on these Motions and the proposed motion to remand.

[17] The Vons Companies, Inc. is not named in the PI or Consumer Complaints, but is named in an individual case that has since been added to this MDL.

[18] Target Corporation is named in one personal injury complaint, *Karon v. Boehringer, et al.*, MDL Case No. 9:20-cv-80779, prior to the filing of the PI and Consumer Complaints.  Target Corporation is not named as a Defendant in the PI or Consumer Complaints, but is identified in both.  The Complaints allege that "any current or former Target pharmacy" is included in the definition of "CVS."  PI Complaint ¶ 166; Consumer Complaint ¶ 378.

**OTHER**

| Defendant | Associated Corporate Entities (named in the PI Complaint and/or Consumer Complaint) |
|---|---|
| H-E-B LP f/k/a HEB Grocery Company*[19] | |
| Kmart Corporation[20] | |
| Medicine Shoppe International, Inc.[21] | Cardinal Health, Inc.*[22] |
| OptumRx, Inc.[23] | |
| Vitamin Shoppe Industries, LLC[24] f/k/a Vitamin Shoppe Industries, Inc. | |

---

[19] To date, H-E-B LP f/k/a HEB Grocery Company is not represented by counsel in this MDL.

[20] To date, Kmart Corporation is not represented by counsel in this MDL.

[21] Medicine Shoppe International, Inc. is named as a Retailer Defendant in the PI and Consumer Complaints, but does not consider itself to be a Retailer or Pharmacy Defendant.

[22] Cardinal Health, Inc. is named only as a Distributor Defendant in the PI and Consumer Complaints.

[23] To date, OptumRx, Inc. is not represented by counsel in this MDL.  OptumRx, Inc. is also only named in the PI Complaint.

[24] To date, Vitamin Shoppe Industries, LLC is not represented by counsel in this MDL.  Vitamin Shoppe Industries, LLC is also named only in the PI Complaint.