## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

IN RE: ZANTAC (RANITIDINE)                        MDL No. 2924
PRODUCTS LIABILITY                                 20-MD-2924
LITIGATION
                                        JUDGE ROBIN L. ROSENBERG
                           MAGISTRATE JUDGE BRUCE E. REINHART

_____/

THIS DOCUMENT RELATES TO: ALL CASES

### DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE
### MASTER PERSONAL INJURY COMPLAINT ON GROUNDS OF IMPERMISSIBLE
### SHOTGUN PLEADING AND INCORPORATED MEMORANDUM OF LAW

# TABLE OF CONTENTS

Introduction ...................................................................................................................1

Background ....................................................................................................................2

Argument and Citation of Authority .........................................................................4

    I.    The Complaint Indiscriminately Lumps All Defendants' Conduct
    Together, Without Specifying Facts Showing Which Defendants Are
    Liable for Which Actions. ................................................................................5

        A.    The Complaint Violates Rule 8 by Lumping Defendants
            Together. ................................................................................................5

        B.    The Complaint Violates Rule 9(b) by Lumping Defendants
            Together. ................................................................................................9

        C.    The Complaint's Failure to Differentiate Between Corporate
            Affiliates Independently Violates the Shotgun Pleading Rule. ............10

    II.    Every Count in the Complaint Improperly Incorporates by Reference
    Every Other Count. ..........................................................................................11

    III.    The Complaint's Shotgun Pleading Frustrates the Purpose of
    Multidistrict Litigation by Concealing Defenses That Can and Should
    Be Addressed on the Pleadings, and by Making It Impossible for the
    Court to Streamline the Proceedings. .............................................................11

    CONCLUSION ........................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ace Tree Surgery, Inc. v. Terex Corp.*,
2017 WL 1836307 (N.D. Ga. Feb. 21, 2017) ............................................................9, 10, 11

*Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*,
77 F.3d 364 (11th Cir. 1996) ...................................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................10

*Bailey v. Bell-Rich Transp., LLC*,
2020 WL 3440585 (M.D. Fla. June 23, 2020)................................................................11, 12

*Brazil v. Janssen Research & Dev. LLC*,
249 F. Supp. 3d 1321 (N.D. Ga. 2016) ..............................................................................11

*Brooks v. Blue Cross & Blue Shield*,
116 F.3d 1364 (11th Cir. 1997) .................................................................................9

*Byrne v. Nezhat*,
261 F.3d 1075 (11th Cir. 2001) ............................................................................4, 11

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
779 F.3d 34 (1st Cir. 2015)........................................................................................12

*Chiron Recovery Ctr., LLC v. United Healthcare Servs., Inc.*,
2020 WL 3547047 (S.D. Fla. June 30, 2020) ......................................................5, 9

*United States ex rel. Clausen v. Lab. Corp. of Am.*,
290 F.3d 1301 (11th Cir. 2002) ...........................................................................9

*Cruz v. Royal Caribbean Cruises Ltd.*,
2020 WL 905238 (S.D. Fla. Feb. 25, 2020) ...........................................................11

*In re Darvon, Darvocet & Propoxyphene Prods. Liab. Litig.*,
756 F.3d 917 (6th Cir. 2014) ..................................................................................7, 8

*Deese v. Immunex Corp.*,
2012 WL 463722 (S.D. Miss. Feb. 13, 2012)........................................................14

*Ebrahimi v. City of Huntsville Bd. of Educ.*,
114 F.3d 162 (11th Cir. 1997) ...........................................................................9

*Fox v. Loews Corp.*,
309 F. Supp. 3d 1241 (S.D. Fla. 2018) ...........................................................5, 10

*Gibbons v. Bristol-Myers Squibb Co.*,
919 F.3d 699 (2d Cir. 2019)......................................................................................12

*Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*,
634 F.3d 1352 (11th Cir. 2011) ..............................................................................1

*Jackson v. Bank of Am., N.A.*,
    898 F.3d 1348 (11th Cir. 2018) ...................................................................1, 4, 11

*Kareem v. Ocwen Loan Serv., LLC*,
    2015 WL 7272765 (S.D. Fla. Nov. 18, 2015)...............................................4, 11

*Lamm v. State Street Bank & Trust*,
    749 F.3d 938 (11th Cir. 2014) ...............................................................................9

*Lane v. Cap. Acquisitions & Mgmt. Co.*,
    2006 WL 4590705 (S.D. Fla. Apr. 14, 2006) ............................................5, 9, 10

*Magluta v. Samples*,
    256 F.3d 1282 (11th Cir. 2001) .........................................................................4, 7

*McGrath v. Bayer HealthCare Pharm. Inc.*,
    393 F. Supp. 3d 161 (E.D.N.Y. 2019) ....................................................................12

*Merck Sharp & Dohme Corp. v. Albrecht*,
    139 S. Ct. 1668 (2019).............................................................................................12

*Mills v. Bristol-Myers Squibb Co.*,
    2011 WL 4708850 (D. Ariz. Oct. 7, 2011)..............................................................14

*Patterson v. Novartis Pharms. Corp.*,
    451 F. App'x 495 (6th Cir. 2011).............................................................................8

*Petrovic v. Princess Cruise Lines, Ltd.*,
    2012 WL 3026368 (S.D. Fla. July 20, 2012)............................................................5

*Piguet v. JP Morgan Chase Bank*,
    2014 WL 11350229 (S.D. Fla. Apr. 29, 2014) ........................................................5

*PLIVA, Inc. v. Mensing*,
    564 U.S. 604 (2011)....................................................................................................2

*Regenicin, Inc. v. Lonza Walkersville, Inc.*,
    997 F. Supp. 2d 1304 (N.D. Ga. 2014) ....................................................................5

*Smith v. Teva Pharm. USA, Inc.*,
    437 F. Supp. 3d 1159 (S.D. Fla. 2020) .................................................................2, 7

*Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*,
    305 F.3d 1293 (11th Cir. 2002) ..............................................................................11

*Utts v. Bristol-Myers Squibb Co.*,
    226 F. Supp. 3d 166 (S.D.N.Y. 2016).....................................................................13

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ..................................................................................9

*Wagner v. First Horizon Pharm. Corp.*,
    464 F.3d 1273 (11th Cir. 2006) ..............................................................................11

*Weiland v. Palm Beach Cnty. Sheriff's Office*,
    792 F.3d 1313 (11th Cir. 2015) .....................................................................1, 2, 4, 5

*Yates v. Ortho-McNeil-Janssen Pharm., Inc.*,
    808 F.3d 281 (6th Cir. 2015) ....................................................................................12

*In re Zimmer, NexGen Knee Implant Prods. Liab. Litig.*,
    884 F.3d 746 (7th Cir. 2018) ....................................................................................13

*In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*,
    2019 WL 2137427 (E.D. Pa. May 2, 2019) ...........................................................1, 6

**Statutes**

21 U.S.C. § 355(j)(2)(A) ..................................................................................................2

28 U.S.C. § 1407(a) .......................................................................................................12

**Other Authorities**

21 C.F.R. §314.70(c)(6)(iii) ...........................................................................................12

Manual for Complex Litigation § 22.36 ..........................................................................1

Restatement (Third) of Torts, Physical & Emotional Harm § 7 (2010), cmt. i ............13

Defendants (as identified in the Complaints) move to dismiss or strike the Master Personal Injury Complaint for shotgun pleading, pursuant to Rule 12 and this Court's Pretrial Orders #30, 31, and 36. Defendants submit this memorandum in support.

## INTRODUCTION

In an MDL like this one, the purpose of a "master" personal-injury complaint is to promote judicial efficiency and economy by creating a single document that contains allegations suitable for incorporation by reference in individual "short-form" complaints. If done correctly, the master complaint (and corresponding master answer) avoid the need for the parties to file, and the Court to manage, hundreds or perhaps thousands of individual pleadings. *See Manual for Complex Litigation* (Fourth) § 22.36. The current "master" personal injury complaint is the antithesis of this. Nothing in the statute governing MDLs (or any other authority) gives plaintiffs who proceed by master complaint leave to disregard the pleading requirements of the Federal Rules of Civil Procedure. *See, e.g.*, *Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1360 (11th Cir. 2011) (affirming dismissal of master complaint for failure to satisfy Rules 8 and 9(b)). Nor, at least in this Circuit, are plaintiffs free to disregard the long-standing prohibition on use of so-called "shotgun pleadings" in a master complaint. *See, e.g.*, *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). Indeed, MDL plaintiffs may not resort to a "one-size-fits-all approach" to pleading, especially where that approach produces "allegations that are absurd on their face as to every plaintiff." *In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*, 2019 WL 2137427, at *2 (E.D. Pa. May 2, 2019). And yet, that is precisely what has happened here.

As is true of the two "consolidated" complaints filed on behalf of the putative class plaintiffs, the "Master Personal Injury Complaint" (Dkt. No. 887, the "Complaint") fails to meet the most basic requirements of notice pleading required in this Circuit. Although shorter and less byzantine than the other "master pleadings," the personal-injury Complaint is every bit the kind of shotgun-pleading the Eleventh Circuit "has filled many pages of the Federal Reporter condemning." *Jackson v. Bank of Am.*, *N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018). To begin with, the Complaint utterly fails to distinguish the alleged liability-creating conduct of one Defendant from another. On the contrary, the Complaint largely treats the more than 100 named Defendants as liable for the same alleged conduct across nearly four decades, even though the few Defendant-specific allegations contained in the Complaint show this cannot possibly be true. Moreover, the

Complaint commits the "sin" of asserting "multiple counts where each count adopts the allegations of all preceding counts." *Weiland*, 792 F.3d at 1321. Together, these forbidden pleading tactics produce absurd results and stymie any effort by any particular Defendant to ascertain the basis for the claims against it—exactly the reason such "shotgun" pleading is prohibited in this Circuit. Accordingly, the Court should dismiss or strike the Complaint.

## BACKGROUND

The Complaint asserts claims on behalf of an unspecified number of Plaintiffs who claim they used and were injured by medications containing ranitidine. Compl. ¶ 1. Ranitidine was "synthesized and discovered" in 1976. *Id.* ¶ 229. According to the Complaint, in 2019, 43 years after rantidine was discovered, testing of some Defendants' products revealed the presence of an allegedly carcinogenic chemical called NDMA. *Id.* ¶ 285. Based on those "recent revelations," *id.* ¶ 5, and a cherry-picked sampling of "studies" published over a nearly 40-year period, *id.* ¶¶ 309–32, Plaintiffs claim that more than 100 otherwise differently situated Defendants in the ranitidine supply chain somehow knew (or should have known) that ranitidine was dangerous from the day it was first placed on the market in 1983. *Id.* ¶ 360.

Defendants, however, could not all have been doing the same thing factually at any point in time, much less *the entire 40-year period*. On the contrary, different Defendants played different roles in the ranitidine supply chain with respect to different versions, dosages, and formulations of the medication, and at different points in time. And they were accordingly governed by different regulatory schemes, with different legal obligations and pathways available to them.[1] For example, Defendant GlaxoSmithKline manufactured *prescription* ranitidine under the brand name Zantac from 1983 to 2017. *Id.* ¶ 231. By contrast, Defendants Pfizer, Boehringer Ingelheim, and Sanofi *never* manufactured or sold prescription Zantac in any formulation. Instead, each of these three Defendants sold the over-the-counter ("OTC") version of Zantac, and did so sequentially (not

---

[1] Unlike branded companies, generic medication companies seeking to market copies of previously approved medications may file an Abbreviated New Drug Application ("ANDA") that demonstrates the product's chemical and biological equivalence to a previously approved medication. *See* 21 U.S.C. § 355(j)(2)(A). And, after the ANDA is approved by FDA, generic manufacturers cannot alter generic medications' labeling or design without prior FDA approval. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 618 (2011). Likewise, Retailer, Distributor, and Repackager Defendants that do not hold an New Drug Application ("NDA") or ANDA have no power to alter any aspect of the medication. *See Smith v. Teva Pharm. USA, Inc.*, 437 F. Supp. 3d 1159, 1165 (S.D. Fla. 2020).

simultaneously). *Id.* ¶¶ 234 (Pfizer: 1998–2006), 239–40 (Boehringer Ingelheim: 2006–2017), 243–46 (Sanofi: 2017–2019).

The differences between Defendants are equally, if not more, pronounced with respect to the generic Defendants. According to the Complaint, "numerous generic manufacturers" sold a variety of prescription and OTC generic formulations of ranitidine between 1997 and 2018. *Id.* ¶ 251. As with the brand-name Zantac manufacturers, the generic manufacturers named in the Complaint manufactured or sold their formulations at different times. *Id.* One need only peruse the four-page, six-column table Plaintiffs use to describe the history of ANDA approvals for the 42 generic Defendants to see just how differentiated they are; for example, many generic Defendants sold only prescription or only OTC generic medications, and the dosage form and route of administration for the generic medications varied widely. *Id.* After assembling this table, Plaintiffs cannot reasonably file a Complaint that treats the generic manufacturers as fungible with each other and Defendants anywhere else in the supply chain, and that does not acknowledge the transfer or discontinuation history of certain of the listed ANDAs.

Plaintiffs also name (1) four "distributor" Defendants that allegedly purchased unspecified ranitidine products, *id.* ¶¶ 145–54; (2) twenty-five "retailer" Defendants that allegedly marketed, handled, distributed, stored, and sold ranitidine products, *id.* ¶¶ 155–210; and (3) three "repackager" Defendants that allegedly took ranitidine products and repackaged them into different containers, *id.* ¶¶ 211–15. As to all three of these categories of Defendants, Plaintiffs provide no detail or factual allegations as to what ranitidine products they purchased, "repackaged," "distributed," and/or "sold." Nor do Plaintiffs say when or where these Defendants did what they allegedly did, or under what circumstances. Unsurprisingly, Plaintiffs offer no allegations as to how these Defendants acquired their alleged "knowledge" about the otherwise unidentified products they allegedly sold or repackaged.

Despite the obvious differences between Defendants conceded by their own pleading, Plaintiffs assert their legal claims indiscriminately against all Defendants. They assert eleven of their fifteen claims against "All Defendants," *id.* ¶¶ 100–42, and the other four counts against broad subgroups of "Brand-Name Manufacturer Defendants," "Generic Manufacturer Defendants," and "Repackager Defendants," *id.* ¶¶ 108, 114, 115, 124. Within those categories, the Complaint combines distinct corporate entities—parent corporations, subsidiaries, and affiliates—into single named Defendants. *Id.* ¶¶ 260–419. The Complaint does not distinguish

between the alleged liability-creating actions of any Defendants or specify which Defendants are liable for what conduct.

The Complaint's allegations about individual Plaintiffs' injuries are equally unhelpful. The Complaint alleges generally that Plaintiffs have been "diagnosed with various cancers and their sequelae." *Id.* ¶ 19. And although individual Plaintiffs' short-form complaints add some information about the Plaintiff's medication use and diagnosis, *see* Compl. Exh. A, they do not even attempt to clarify which Defendant engaged in what conduct. Nor do they require each Plaintiff to specify the Defendants whose ranitidine products they believe they used; in fact, they often name all Defendants. *See, e.g.*, Case No. 9:20-md-02924, Dkt. No. 1467, ¶ 6.[2] They are, therefore, no panacea for the fundamental flaws in the Complaint.

## <u>ARGUMENT AND CITATION OF AUTHORITY</u>

The Complaint is a "quintessential 'shotgun' pleading[]" that flouts Rule 8's demand to provide a "'short and plain statement of the claim.'" *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). A shotgun pleading is one that fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. As this Court has explained, the rule against such pleadings derives from foundational concerns about the administration of justice: "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Kareem v. Ocwen Loan Serv., LLC*, 2015 WL 7272765, at *5 (S.D. Fla. Nov. 18, 2015) (Rosenberg, J.) (quoting *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366–67 (11th Cir. 1996)). For these reasons, the Eleventh Circuit has condemned the use of shotgun pleadings in the strongest terms. *See, e.g.*, *Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001) (finding that shotgun pleadings not only "impede[] the due administration of justice" but also, "in a very real sense, *amount[] to obstruction of justice*" (emphasis added)), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); *Jackson*, 898 F.3d at 1356 ("This Court has filled many pages of the Federal Reporter condemning shotgun pleadings and explaining their vices.").

---

[2] Recently filed short-form complaints name every Defendant, regardless of whose ranitidine products the Plaintiffs actually have a good faith belief they used, and even where the dates of use and types of use are plainly incompatible with many of the Defendants' product histories.

Over the years, the Eleventh Circuit has identified four "sins" committed by shotgun pleadings, all of which deny "the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1321–23. One sin is "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Id.* at 1323. Another is asserting "multiple counts where each count adopts the allegations of all preceding counts." *Id.* at 1321.

The Complaint commits both sins and should, therefore, be dismissed or stricken.

## I.     The Complaint Indiscriminately Lumps All Defendants' Conduct Together, Without Specifying Facts Showing Which Defendants Are Liable for Which Actions.

The Complaint "indiscriminately lumps all defendants together" in its allegations and claims. *Fox v. Loews Corp.*, 309 F. Supp. 3d 1241, 1249 (S.D. Fla. 2018). It asserts eleven of its fifteen counts against "All Defendants," and the other four counts against broad subgroups of "Brand-Name Manufacturer Defendants," "Generic Manufacturer Defendants," and "Repackager Defendants," Compl. ¶¶ 453–656. Yet none of the Complaint's counts or factual allegations "specif[y] which Defendant engaged in what conduct." *Regenicin, Inc. v. Lonza Walkersville, Inc.*, 997 F. Supp. 2d 1304, 1313 (N.D. Ga. 2014). This fatal flaw requires dismissal or striking.

### A.     The Complaint Violates Rule 8 by Lumping Defendants Together.

As this Court and other courts within the District have repeatedly held, group pleading does not "satisfy the minimum standard of Rule 8."[3] *Lane v. Cap. Acquisitions & Mgmt. Co.*, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006); *see also Chiron Recovery Ctr., LLC v. United Healthcare Servs., Inc.*, 2020 WL 3547047, at *5 (S.D. Fla. June 30, 2020) (Rosenberg, J.); *Fox*, 309 F. Supp. 3d at 1249 ("When a complaint indiscriminately lumps all defendants together, it fails to comply with Rule 8."); *Piguet v. JP Morgan Chase Bank*, 2014 WL 11350229, at *2 (S.D. Fla. Apr. 29, 2014) (same); *Petrovic v. Princess Cruise Lines, Ltd.*, 2012 WL 3026368, at *3 (S.D. Fla. July 20, 2012) ("[A] complaint that 'lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct' fails to satisfy Rule 8."). Because the Complaint's claims do not distinguish between the individual Defendants' conduct, it violates Rule 8.

---

[3] As authorized by paragraph 3 of PTO #36, Defendants argue that the shotgun pleading violates Rule 8 and Rule 9. As required by PTO #36, Defendants reserve their other defenses, including those under Rules 8 and 9, for subsequent motions relating to the Master Complaints and their amendments.

Plaintiffs' tactic of attempting to erase obvious and material differences between both individual Defendants and categories of Defendants is evident in the very first paragraph of the Complaint. There, Plaintiffs allege labeling, design, manufacturing, marketing and other claims against all Defendants, without acknowledging that Defendants did not act uniformly when manufacturing, repackaging or selling the product. By way of example, Plaintiffs never try to allege specific facts explaining how:

- Generic manufacturers and distributers, which generally do not advertise their products to prescribers or patients, are required to answer for the allegations concerning the advertising of ranitidine products;[4]

- Retailers that did not advertise, and that sold generic forms of *prescription* ranitidine selected for their customers *by their customers' physicians*, are required to answer for the allegations concerning *direct-to-consumer* advertising of *OTC products;*

- Branded OTC manufacturers that sold their rights to the product could be liable for later advertisements published by other Defendants after they exited the business; or

- Repackagers and distributors, which allegedly repackage and distribute products "without manipulating, changing, or affecting the composition or formulation" of the product, Compl. ¶ 211, could be liable for the *design* of products they merely *repackage and distribute*.

These examples are just a few of the many ways in which Plaintiffs' failure to distinguish between Defendants yields "allegations that are absurd on their face." *In re Zostavax (Zoster Vaccine Live) Prod. Liab. Litig.*, 2019 WL 2137427, at *2.

As if these examples were not enough to require repleading, the Complaint also glosses over the varying degrees to which Defendants could possibly have been aware of the alleged safety risks. For example, Plaintiffs generally allege that all 100+ Defendants "knew or should have known" about various risks related to ranitidine, *see, e.g.*, Compl. ¶ 384, and "failed to report these risks," *id.* ¶ 395. In support of their claim for punitive damages, Plaintiffs go even further and allege that *literally all* "Defendants were fully aware of the safety risks of ranitidine . . . [and yet]

---

[4] Plaintiffs set forth allegations concerning advertising in paragraphs 226–48. It should be noted that while the Complaint alleges marketing activities dating back to 1983, *see* Compl. ¶¶ 231–32, it alleges the first generic came on the market in 1997, *id.* ¶ 251. In addition, it does not identify a single advertisement purportedly published by any generic manufacturer regarding ranitidine, let alone specify when, where, or how any such advertisements were published or by whom, or how any advertisement was false, misleading, or otherwise actionable.

deliberately crafted their label and marketing to mislead consumers." *Id.* ¶ 450. But different Defendants entered the ranitidine supply chain at different times and played fundamentally different roles. And Plaintiffs do not specify which Defendants knew (or even could have known) what information at any particular time or how they could have acquired that information. Sanofi entities, for instance, did not begin marketing Zantac until January 2017, *id.* ¶ 244, but the Complaint contains no allegation that any new information about ranitidine was revealed between that time and the time the initial lawsuits in these proceedings were filed. Similarly, Pfizer stopped marketing Zantac in 2006, *id.* ¶ 239, but the Complaint alleges that it should have responded to studies published between 2009 and 2018, *id.* ¶¶ 357–59. These allegations defy both logic and "temporal realit[y]." *Magluta*, 256 F.3d at 1284.

In addition to belying any suggestion that each Defendant shared the same knowledge, the fact that different Defendants entered and left the market at different times also means they did not share the same legal duties. Many courts have acknowledged that a former NDA holder may not be held liable for products liability claims arising after transfer or withdrawal of the NDA because it no longer had the power to change the drug's warnings. *See, e.g.*, *In re Darvon, Darvocet & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 940 (6th Cir. 2014) (failure to warn claim preempted against former NDA holder that no longer had power to make label changes); *Smith*, 437 F. Supp. 3d at 1165–66 (dismissing as preempted claims against defendant that never held the NDA for the drug, even though its corporate affiliates did hold the NDA and it distributed the product, because defendant lacked power to change the label). Thus, in pleading these claims uniformly against all manufacturer Defendants, Plaintiffs necessarily seek to hold manufacturers categorically liable for acts and omissions that allegedly occurred before or after their involvement with ranitidine. This is precisely the kind of improper pleading tactic the shotgun pleading doctrine was intended to stop.

The problems of shotgun pleading are especially clear for the Generic Manufacturer Defendants. For example, the Complaint names 42 different generic manufacturers that it alleges hold ANDA approvals for ranitidine products, listing only the dates of approval for each ANDA. The Complaint does not mention the date each Defendant acquired the ANDA, the date it transferred or withdrew the ANDA, or whether each ANDA was ever transferred from one manufacturer to another. Compl. ¶ 251. This basic information is provided for brand manufacturers but is not even acknowledged for the generics, even though transfers are at least as common in the

generic industry. To make matters worse, the Complaint does not acknowledge that (1) some ANDAs were never used to manufacture product, (2) many of the ANDAs were owned by other entities at points in time since their first approval, and (3) some of the ANDAs were no longer being used to manufacture at the time of the 2019–2020 events alleged in the Complaint. Because the Complaint does not delineate the products and time periods for which each manufacturer was responsible—or whether they even had product on the market at the relevant time—it is not possible to determine which Plaintiffs allege they used and were injured by each particular ranitidine product, or which Defendant are purportedly liable.

In pharmaceutical products liability litigation, a complaint that alleges only a mere possibility that a defendant manufactured the products used by the plaintiff is insufficiently pled and subject to dismissal. *See Patterson v. Novartis Pharms. Corp.*, 451 F. App'x 495, 497–98 (6th Cir. 2011) (affirming dismissal for failure to sufficiently plead defendant's involvement with plaintiff's pharmaceutical product). Nor may Plaintiffs survive a motion to dismiss merely by saying they cannot determine which manufacturer's product they ingested. *In re Darvon*, 756 F. 3d at 917 (in MDL litigation, affirming dismissal of plaintiff who alleged she did not know exactly whose product she used). Indeed, even in MDLs such as this, Plaintiffs must make a good faith effort to identify the Defendants responsible for the products they allege caused their injuries and explain what aspects of those products caused or contributed to their injuries. That simply has not happened here.

Finally, far from absolving the Complaint's sins, individual Plaintiffs' short-form complaints filed to date serve only to highlight the mischief that Plaintiffs' group pleading fosters. For example, Plaintiff Saeed Deihimi purchased exclusively OTC Zantac beginning in 2007. Case No. 9:20-md-02924, Dkt. No. 1410, ¶¶ 9–10. But he asserts claims against GlaxoSmithKline entities that had stopped manufacturing OTC Zantac by that time, as well as Pfizer, which stopped selling the product in 2006. *Id.* ¶ 6; Compl. ¶ 234. Similarly, Plaintiff James Hardy purchased exclusively OTC Zantac beginning in 2016, but he also asserts claims against GlaxoSmithKline entities. Case No. 9:20-cv-81283, Dkt. No. 1, ¶¶ 6, 9–10. And Plaintiff Arthur Austermann asserts claims against "unknown" Generic Manufacturer and Distributor Defendants. Case No. 9:20-md-02924, Dkt. No. 1396, ¶ 6. Having a Master Complaint that properly distinguishes between different Defendants—and the distinct conduct by each Defendant that Plaintiffs allege renders them liable—is a foundational first step needed to avoid such confusion. And if *Plaintiffs* do not

even know which Defendants they are suing or why, then there is certainly no way for Defendants and this Court to figure it out and respond appropriately. A "name everyone now and sort it out later" approach is inconsistent with due process and the Federal Rules.

Because of these and similar issues, Defendants "cannot determine from the face of the Complaint [for] which acts or omissions the Plaintiffs seek to hold each of them liable." *Lane*, 2006 WL 4590705, at *5. And Plaintiffs' shotgun pleading will "impede the orderly, efficient, and economic disposition" of their personal-injury cases. *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997). This overarching flaw is sufficient, by itself, to require the dismissal or striking of the Complaint.

### B.     The Complaint Violates Rule 9(b) by Lumping Defendants Together.

Plaintiffs' improper shotgun pleading against all Defendants is also fundamentally deficient with respect to their fraud-based claims, which are subject to the heightened pleading standard of Rule 9(b). Plaintiffs rely on assertions of fraud for (at a minimum) their negligent misrepresentation, breach of warranty, and consumer protection claims, as well as their tolling by fraudulent concealment allegations. Compl. ¶¶ 444–49; 565–66, 577–82, 593, 606–17. Those claims, therefore, must satisfy Rule 9(b)'s heightened standard. *See Lamm v. State Street Bank & Trust*, 749 F.3d 938, 951 (11th Cir. 2014) ("Rule 9(b)'s heightened pleading standard applies to negligent misrepresentation claims."); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003) ("Where, as here, the averments in the complaint necessarily describe fraudulent conduct, Rule 9(b) applies to those averments."); *Ace Tree Surgery, Inc. v. Terex Corp.*, 2017 WL 1836307, at *3 (N.D. Ga. Feb. 21, 2017) (applying Rule 9(b) to negligent misrepresentation and consumer protection claims); *Chiron Recovery Ctr.*, 2020 WL 3547047, at *8 (applying Rule 9(b) to negligent misrepresentation claim). And to satisfy Rule 9(b), Plaintiffs must plead for each Defendant "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (internal quotation marks and citation omitted); *see also Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1381 (11th Cir. 1997) (dismissing complaint under Rule 9(b) where plaintiffs did not specify each defendant's fraudulent acts).

Plaintiffs' fraud-based claims fall far short of this standard. Plaintiffs generally allege that Defendants "affirmatively misrepresented" and falsely "warranted" Zantac or ranitidine's safety, *see, e.g.*, Compl. ¶¶ 426, 432, but Plaintiffs do not identify any specific misrepresentation by any individual Defendant. Further, the Complaint does not describe with particularity any individual misrepresentation or omission by any specific Defendant, much less identify "the time and place" of those statements or who made each statement. *Id.* Plaintiffs' "conclusions" are not accepted as true on a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, as shown above, allegations about Defendants' "advertising," *see, e.g.*, Compl. ¶¶ 328, 451, 556(r), 578, 615, are especially absurd with respect to the Generic Manufacturer and Distributor Defendants, since those Defendants do not advertise their medications. Compounding the problem, Plaintiffs' lead counsel have represented that they do not expect individual Plaintiffs to "supplement" their fraud-based allegations with further details in their short-form complaints, but that they believe the Complaint satisfies Rule 9(b) standing on its own. But each Defendant is entitled under the Rules to understand which alleged representation constitutes the claimed fraud, who made the statement or omission in question to whom, and when it was made. All of these critical facts are lacking.

### C. The Complaint's Failure to Differentiate Between Corporate Affiliates Independently Violates the Shotgun Pleading Rule.

Plaintiffs' impermissible group pleading "is particularly pertinent here since the Plaintiffs are suing both . . . parent corporation[s] and [their] subsidiar[ies]." *Lane*, 2006 WL 4590705, at *5. The Complaint presents itself as involving a smaller number of named Defendants, most of which are actually collections of distinct entities. For example, the Complaint defines the Defendant "Amneal" as Amneal Pharmaceuticals, Inc., and its subsidiaries Amneal Pharmaceuticals LLC and Amneal Pharmaceuticals of New York, LLC. Compl. ¶¶ 48–51. Similarly, the named defendant "Taro Pharmaceutical" is five separate entities, *id.* ¶¶ 119–24, and the named Defendant "CVS" includes "any current or former Target Corporation pharmacy," even those that existed before CVS's acquisition of Target pharmacies, *id.* ¶ 166. And this is just a sample: most of the named Defendants are defined as collections of distinct members of a corporate family. *Id.* ¶¶ 21–214. Yet the Complaint nowhere distinguishes between the individual corporate family members' actions, and it does not allege sufficient facts to "allow[] a piercing of the corporate veil." *Fox*, 309 F. Supp. 3d at 1249. As multiple courts have held, this failure to distinguish corporate parents from their subsidiaries alone violates Rule 8. *See, e.g.*, *id.*; *Ace Tree Surgery*, 2017 WL 1836307, at *3–4; *Lane*, 2006 WL 4590705, at *5.

10

II.     **Every Count in the Complaint Improperly Incorporates by Reference Every Other Count.**

The first allegation in each of the Complaint's counts "incorporate[s] by reference each allegation set forth in preceding paragraphs as if fully stated herein." Compl. ¶¶ 453, 473, 490, 500, 518, 531, 542, 562, 574, 590, 603, 628, 637, 644, 652. By "reincorporating all preceding paragraphs," the Complaint "improperly commingles and reasserts" fifteen distinct counts. *Bailey v. Bell-Rich Transp., LLC*, 2020 WL 3440585, at \*6 (M.D. Fla. June 23, 2020). The result is that "most of the counts . . . contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002); *see Anderson*, 77 F.3d at 366 (dismissing complaint where "each count" incorporated a paragraph asserting all of the plaintiff's claims).

As numerous courts in this Circuit have held, including in personal injury actions, this "commingling of claims and reincorporation of irrelevant allegations . . . fails to put [Defendants] on notice as to the causes of action asserted against [them]." *Bailey*, 2020 WL 3440585, at \*5; *accord Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006); *Cruz v. Royal Caribbean Cruises Ltd.*, 2020 WL 905238, at \*1 (S.D. Fla. Feb. 25, 2020); *Brazil v. Janssen Research & Dev. LLC*, 249 F. Supp. 3d 1321, 1336 (N.D. Ga. 2016); *Ace Tree Surgery*, 2017 WL 1836307, at \*3; *Kareem*, 2015 WL 7272765, at \*2. The Complaint should be dismissed or stricken for this reason as well.

III.    **The Complaint's Shotgun Pleading Frustrates the Purpose of Multidistrict Litigation by Concealing Defenses That Can and Should Be Addressed on the Pleadings, and by Making It Impossible for the Court to Streamline the Proceedings.**

As the Eleventh Circuit has explained, shotgun pleadings "exact an intolerable toll on the trial court's docket." *Jackson*, 898 F.3d at 1356 (internal quotation marks and citation omitted). At the motion-to-dismiss stage, they require the district court to "sift out the irrelevancies," *Strategic Income Fund*, 305 F.3d at 1295, and "rewrit[e] the complaint into an intelligible document," *Jackson*, 898 F.3d at 1357. The parties' "disjointed pleadings" then "make it difficult, if not impossible, to set the boundaries for discovery." *Byrne*, 261 F.3d at 1129. After discovery, either the plaintiffs "extort the settlement of unmeritorious claims" or the case "proceeds to trial with the issues unnarrowed," where "the potential for error—and an unjust result and a subsequent appeal—is considerable." *Id.* at 1130.

11

Multidistrict litigation compounds the potential harm from shotgun pleading. The point of these proceedings is to *streamline* the litigation of Plaintiffs' myriad claims. *See* 28 U.S.C. § 1407(a) (authorizing multidistrict litigation to "promote the just and efficient conduct of such actions"). But the Complaint's failure to articulate the basis for each Plaintiff's claims against each Defendant frustrates one of the basic tools the Court has to accomplish this critical objective: early motion practice designed to test the sufficiency of the Complaint's numerous claims. Indeed, these improper pleading tactics not only make basic motions to dismiss more difficult to brief, they hide from evaluation critical defenses that should otherwise appear on the face of the Complaint.

For example, the Complaint's failure to distinguish between individual Defendants frustrates Defendants' ability to raise the important defense of preemption to certain claims. *See, e.g.*, *Bailey*, 2020 WL 3440585, at *6 (holding plaintiff's "shotgun pleading prevents the Court from undertaking the relevant preemption analysis" because whether preemption attaches "depends in large part on the specific cause(s) of action asserted by the plaintiff, and the specific role the defendant played"). Whether Plaintiffs' label-based claims against Brand-Name Manufacturer Defendants are preempted depends on whether the brand-name manufacturers could have "unilaterally" modified Zantac's labeling during their ownership of the NDA without FDA's pre-approval pursuant to FDA's "changes being effected" ("CBE") regulation. *See In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 779 F.3d 34, 41 (1st Cir. 2015) ("The line *Wyeth* and [*Mensing*] thus draw [is] between changes that can be *independently* made using the CBE regulation and changes that require prior FDA approval." (emphasis added)); *Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281, 295 (6th Cir. 2015) ("The Court [in *Mensing*] thus limited [*Wyeth*] to situations in which the drug manufacturer can, '*of its own volition*, . . . strengthen its label in compliance with its statutory duty.'" (citation omitted; emphasis added)); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 708 (2d Cir. 2019) ("[T]o state a claim for failure-to-warn that is not preempted by the FDCA, a plaintiff must plead a 'labeling deficiency that [Defendants] could have corrected using the CBE regulation.'" (citations omitted)). Whether a CBE supplement was available to Brand-Name Manufacturer Defendants to modify Zantac's labeling, in turn, depends on whether there existed "newly acquired information" constituting "evidence of a causal association" between Zantac and malignancy following FDA's approval of the medication. 21 C.F.R. §314.70(c)(6)(iii); *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1677–78 (2019); *McGrath v. Bayer HealthCare Pharm. Inc.*, 393 F. Supp. 3d 161, 167

(E.D.N.Y. 2019). Moreover, information that pre-dates the NDA associated with a particular Defendant cannot constitute "newly acquired information." *See, e.g.*, *Utts v. Bristol-Myers Squibb Co.*, 226 F. Supp. 3d 166, 179 (S.D.N.Y. 2016), *aff'd sub nom. Gibbons*, 919 F.3d 699 (2d Cir. 2019).

But because the Complaint lumps all Defendants together, it is impossible to identify what information purportedly showing an association between Zantac and cancer Plaintiffs claim each Defendant was on "notice" of, and whether any such information constitutes "newly acquired information" under the regulations. The result is that Plaintiffs have hidden from the Court and Defendants the ability to properly evaluate whether differently situated Defendants have defenses that should otherwise exist on the face of the Complaint and which could help narrow the scope of issues in dispute and focus discovery.[5]

Similarly, lumping together Defendants that made OTC products with those that made only prescription medications glosses over the importance of the learned intermediary defense with respect to prescription products.[6] Indeed, the Plaintiff's prescribing physician stands at the causal center of every prescription medication claim in virtually every state. *See In re Zimmer, NexGen Knee Implant Prods. Liab. Litig.*, 884 F.3d 746, 751–52 (7th Cir. 2018) (finding "broad support" for learned intermediary doctrine in at least 48 states). And every Plaintiff claiming injuries allegedly caused by a prescription medication must account for the role of their physician *in their*

---

[5] Although the Complaint's shotgun pleading frustrates Defendants' ability to raise certain preemption defenses, the various Defendant groups have filed, in conjunction with this motion, motions to dismiss Plaintiffs' state law claims based on the preemption defenses that are apparent from the face of the allegations. And the issues raised in this motion should not affect preemption arguments raised in those other motions by Generic Manufacturer, Repackager, Retailer, and Distributer Defendants. Plaintiffs' claims against those Defendants, as explained in their motions, are preempted and cannot be saved through repleading. All Defendants reserve the right to raise any additional preemption arguments that may become apparent if Plaintiffs are required to replead.

[6] *See* Restatement (Third) of Torts, Physical & Emotional Harm § 7 (2010), cmt. i:

> [I]n the field of products liability, courts have declared that the warning obligation of prescription-drug manufacturers ordinarily is limited to the prescribing physician and does not extend to warning the patient directly. They reason that the physician can best assess the relevant risk information and determine the appropriate course of treatment.

(Cross-referencing § 6(d)).

pleadings. *See, e.g., Mills v. Bristol-Myers Squibb Co.*, 2011 WL 4708850, at *3 (D. Ariz. Oct. 7, 2011) (dismissing warning defect claim due to failure to plead any facts (other than on information and belief) that an adequate warning would have changed the medication selected by plaintiff's prescriber); *Deese v. Immunex Corp.*, 2012 WL 463722, at *5 (S.D. Miss. Feb. 13, 2012) (dismissing warning claims due to failure to allege causation under the learned intermediary rule).

Plaintiffs' punitive damage allegations likewise present an entirely undifferentiated and vague set of assertions that make it impossible for any particular Defendant to understand the basis for the claims against it. Plaintiffs astoundingly plead that *all* "Defendants were fully aware of the safety risks of ranitidine . . . [but] deliberately crafted their label and marketing to mislead consumers." Compl. ¶ 450. To support this claim, Plaintiffs also allege that "Defendants' object was accomplished . . . through a comprehensive scheme of selecting misleading research and testing, false advertising, and deceptive omissions as more fully alleged throughout this pleading." *Id.* ¶ 451. Setting aside the fact that these allegations cannot possibly be true of all 100+ Defendants and are contradicted by other Defendant-specific allegations in the Complaint, Plaintiffs cannot plead punitive damages without specifying the particular wrongdoing that they charge each Defendant with committing.

## **CONCLUSION**

The Master Personal Injury Complaint should be dismissed or stricken.


Dated: August 24, 2020                                    Respectfully submitted,


**Lead Counsel:**


                                                          */s/ Andrew T. Bayman*
                                                          Andrew T. Bayman
                                                          KING & SPALDING LLP
                                                          1180 Peachtree Street, NE, Suite 1600
                                                          Atlanta, GA 30309-3521
                                                          Tel: (404) 572-4600
                                                          Fax: (404) 572-5100
                                                          abayman@kslaw.com

                                                          *Counsel for Defendant*
                                                          *Boehringer Ingelheim Pharmaceuticals, Inc.*

                                                          */s/ Anand Agneshwar*
                                                          Anand Agneshwar

ARNOLD & PORTER
KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
Fax: (212) 836-8689
anand.agneshwar@arnoldporter.com

*Counsel for Defendants*
*Sanofi US Services Inc., Sanofi-Aventis U.S.*
*LLC, and Chattem, Inc.*

*/s/ Mark Cheffo*
Mark S. Cheffo
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3500
Fax: (212) 698-3599
mark.cheffo@dechert.com

*Counsel   for   Defendant   GlaxoSmithKline*
*LLC*

*/s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
jpetrosinelli@wc.com

*Counsel for Defendant Pfizer Inc.*

**Liaison Counsel for Generic**
**Manufacturer Defendants:**

*/s/ Richard M. Barnes*
Richard M. Barnes
GOODELL, DEVRIES, LEECH & DANN,
LLP
One South Street, 20th Floor
Baltimore, MD 21202
Tel: (410) 783-4000
rmb@gdldlaw.com

/s/ Thomas J. Yoo
Thomas J. Yoo
HOLLAND & KNIGHT LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: (213) 896-2400
thomas.yoo@hklaw.com

**Liaison Counsel for**
**Retailer Defendants:**

/s/ Sarah E. Johnston
Sarah E. Johnston
BARNES & THORNBURG LLP
2029 Century Park East, Suite 300
Los Angeles, CA 90067
Tel: (310) 284-3798
sarah.johnston@btlaw.com

**Counsel for Distributor**
**Defendants:**

/s/ Andrew D. Kaplan
Andrew D. Kaplan
Daniel T. Campbell
Lyndsay A. Gorton
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 624-2500
Fax: (202) 628-5116
AKaplan@crowell.com
DCampbell@crowell.com
LGorton@crowell.com

*Counsel for Defendant Cardinal Health, Inc.*

/s/ Spencer H. Silverglate
Spencer H. Silverglate
Craig Salner
Shannon P. McKenna
Trevor J. Gillum
Alexandra C. Hayes
CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, 9th Floor

16

Miami, FL 33131
Tel: (305) 377-0700
Fax: (305) 377-3001
SSilverglate@cspalaw.com
CSalner@cspalaw.com
SMcKenna@cspalaw.com
TGillum@cspalaw.com

*Counsel for Defendant McKesson
Corporation*

*/s/ Larry R. Wood, Jr.*
Larry R. Wood, Jr.
Lauren E. O'Donnell
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel: (215) 569-5659
Fax: (215) 832-5735
LWood@BlankRome.com
ODonnell@BlankRome.com

*Counsel for Defendant AmerisourceBergen
Corporation*

**Counsel for Repackager
Defendants:**

*/s/ Barry J. Koopmann*
Barry J. Koopmann
BOWMAN AND BROOKE LLP
150 S. Fifth St., Ste. 3000
Minneapolis, MN 55402
Tel: (612) 339-8682
Barry.Koopmann@bowmanandbrooke.com

*Counsel for Denton Pharma Inc.*

*/s/ Richards Huff Ford*
Richards Huff Ford
WICKER SMITH O'HARA MCCOY &
FORD, PA
390 N Orange Avenue
Suite 1000
Orlando, FL 32802

17

Tel: (407) 843-3939
Fax: (407) 649-8118
rford@wickersmith.com

*Counsel for Golden State Medical Supply,*
*Inc.*

*/s/ Tracey Zurzolo Quinn*
Tracy Zurzolo Quinn
HOLLAND & KNIGHT LLP
2020 Arch Street, Suite 800
Philadelphia, PA 19104
Tel: (215) 252-9522
tracy.quinn@hklaw.com

*Counsel for Precision Dose Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 24, 2020, I electronically filed the foregoing DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE MASTER PERSONAL INJURY COMPLAINT ON GROUNDS OF IMPERMISSIBLE SHOTGUN PLEADING AND INCORPORATED MEMORANDUM OF LAW with the Clerk of Court using the CM/ECF system, which will provide automatic notification to all counsel of record.

*/s/ Andrew T. Bayman*
Andrew T. Bayman
