UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE: ZANTAC (RANITIDINE)            MDL NO. 2924
PRODUCTS LIABILITY                   20-MD-2924
LITIGATION

JUDGE ROBIN L. ROSENBERG
MAGISTRATE JUDGE BRUCE E. REINHART

_____/

## ORDER DENYING PLAINTIFFS' MOTION TO PERMIT ALTERNATIVE SERVICE

This matter is before the Court on Plaintiffs' Motion to Approve Alternative Service on Foreign Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3) [DE 1411]. The matter is fully briefed and ripe for review. For the reasons set forth below, the Motion is denied.

### I.     BACKGROUND

There are approximately one hundred and twenty-four Defendants in this MDL. All domestic Defendants have been formally served. DE 1411 at 10. Plaintiffs filed the Motion before the Court to permit alternative service as to the remaining twenty-three foreign Defendants. Plaintiffs seek authorization to effectuate service via, *inter alia*, email and internet publication. During the briefing of the Motion, however, Plaintiffs entered into stipulations with the majority of the foreign Defendants and, as a result, Plaintiffs no longer seek relief as to those Defendants. Eight Defendants remain subject to Plaintiffs' Motion (referenced hereafter simply as "Defendants.")[1] Only one of the eight Defendants filed a Response to the Motion—Teva Pharmaceuticals Industries Limited.

---

[1] The seven non-responding foreign Defendants are: Cadila Healthcare Limited; Emcure Pharmaceutical Limited; Granules India, Ltd.; J.B. Chemicals and Pharmaceuticals Ltd.; Mylan Laboratories Ltd.; Sun Pharmaceutical Industries Ltd.; and Unique Pharmaceutical Laboratories Ltd. DE 1637 at 1 n.1.

## II. LEGAL STANDARD

Service of process is governed by Rule 4. When the party at issue is a foreign business entity, Rule 4(h)(2) directs that service of process is authorized in the same manner as that prescribed by Rule 4(f) for serving individuals outside the United States. For its part, Rule 4(f) provides that such service may be made by means that include international agreements such as the Hague Convention or, under Rule 4(f)(3), "by other means not prohibited by international agreement, as the court orders." Rule 4(f)(3) "allows a district court to order an alternate method for service to be effected upon foreign defendants, provided that it is not prohibited by international agreement, and is reasonably calculated to give notice to the defendants." *Abercrombie & Fitch Trading Co. v. 2cheapbuy.com*, No. 14-CV-60087, 2014 WL 11721486, at *3–4 (S.D. Fla. Mar. 5, 2014). Here, the Hague Convention applies to all of the Defendants as they are located in India and Israel. Thus, the question before the Court is whether (i) service should be effectuated via the Hague Convention (Rule 4(f)(1)) or (ii) through alternative means (Rule 4(f)(3)).

While "compliance with the Convention is mandatory in all cases to which it applies," *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988) (citation omitted), the Court is permitted to order alternate means of service as long as the signatory nation has not expressly objected to those means. *See Codigo Music, LLC v. Televisa S.A.*, No. 15-CIV-21737, 2017 WL 4346968, at *7 (S.D. Fla. Sep. 29, 2017). "[T]he decision to issue an order allowing service by alternate means lies solely within the discretion of the district court." *Chanel, Inc. v. Lin*, No. 08-23490-CIV, 2009 WL 1034627, at *1 (S.D. Fla. Apr. 16, 2009) (citing *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 921 (11th Cir. 2003)); *see also Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1018 (9th Cir. 2002) ("[W]e leave it to the

discretion of the district court to balance the limitations of email service against its benefits in any particular case.") (citation omitted).

Service by email is not prohibited under international agreement in this case, and courts in this District have authorized service via email and through counsel pursuant to Rule 4(f)(3). *See*, *e.g.*, *Seaboard Marine Ltd., Inc. v. Magnum Freight Corp.*, No. 17-21815-CIV, 2017 WL 7796153, at *2 (S.D. Fla. Sept. 21, 2017) (permitting service via email where it appeared the defendant had been evading service); *U.S. Commodity Futures Trading Comm'n v. Aliaga*, 272 F.R.D. 617, 620-21 (S.D. Fla. 2011) (authorizing service via email and local counsel where plaintiff attempted service by other means and confirmed the defendant's email addresses). However, courts in this District have been "reluctant to use their discretion to authorize alternate service when Hague Convention service is available." *Int'l Designs Corp., LLC v. Qingdao SeaForest Hair Prod. Co.*, No. 17-60431-CIV, 2018 WL 2364297, at *2 (S.D. Fla. Jan. 4, 2018).[2]

### III.    THE PARTIES' RESPECTIVE ARGUMENTS

The central premise of Plaintiffs' Motion is that (i) alternative service is available, even though Hague Convention service is also available and (ii) alternative service is the best way to move this MDL forward. Each point is addressed in turn.

<u>Plaintiffs Argument that Alternative Service is Available</u>. Plaintiffs argue that Rule 4(f)(3) contains no restrictions on timing—the Rule includes no qualifiers or limitations to suggest that it may be invoked only after an attempt of service through some other means, such as the Hague Convention. For this proposition, Plaintiffs cite to *Brookshire Bros. Ltd. v. Chiquita Brands Int'l, Inc.*, No. 05-CV-21962, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007), and that case certainly

---

[2] Plaintiffs' counsel is advised that, to the extent Plaintiffs' counsel has no preference, the Court's preference is for cases to be cited to the Westlaw database, not the LexisNexis database.

3

did observe that Rule 4(f)(3) is not a method of service of "last resort."  Even so, *Brookshire Brothers* still referenced Rule 4(f)(3) in the context of when service upon foreign defendants "*has been cumbersome.*"  *Id.* (emphasis added).  The *Brookshire Brothers* court's utilization of the past tense stems from its prior decision in that case to authorize Rule 4(f)(3) service after the plaintiffs had spent over a year attempting to perfect service.  *Id.*

Plaintiffs also emphasize that Rule 4(f)(3) is a flexible rule subject to the discretion of the district court, with its only express limitation being that service cannot be prohibited by international agreement.  For this proposition, Plaintiffs cite to *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007, 1013-14 (9th Cir. 2002).  *Rio* was an unusual case, however, insofar as the plaintiff attempted to sue an elusive foreign-based website.  *Id.*  In *Rio*, the plaintiff attempted to serve the defendant at a U.S. address registered to the defendant but was unsuccessful.  *Id.*  The plaintiff then attempted to get U.S. based counsel to accept service for the defendant, but counsel declined.  *Id.*  Finally, the plaintiff searched international directories to try to locate the defendant and serve it in Costa Rica, but that effort too proved fruitless.  *Id.*  Ultimately the plaintiff in *Rio* learned through an investigator that the defendant company's preferred method of communication was actually through (i) email and (ii) an address in the United States via postal mail.  *Id.*  Based upon that record, the *Rio* trial court permitted alternative service under Rule 4(f)(3).[3]  *Id.*

Plaintiffs also emphasize that the Hague Convention does not prohibit service by other means, *In re Cathode Ray Tube (CRT) Antitrust Litig. Solar Secs. Litg*, No. 07-5944, 2008 WL 4104341 (N.D. Cal. Sept. 3, 2008) ("The Hague Convention therefore does not prohibit service on Defendants under Rule 4(f)(3)."), a point that Teva does not dispute.  Relatedly, Plaintiffs argue that

---

[3] This Court has followed *Rio* in the context of the service of international defendants that utilize elusive web-based operations.  *See Chanel, Inc. v. bestbuyhandbag.com*, No. 14-CV-62191, 2014 WL 7369640 (S.D. Fla. Dec. 29, 2014).

4

Rule 4(f)(3) is not part of a "hierarchy" and thus *may* be ordered prior to attempting to effectuate service through some other means—a point that Teva also does not dispute. Even so, however, Plaintiffs' legal support for this proposition is *TracFone Wireless, Inc. v. Bitton*, 278 F.R.D. 687, 692 (S.D. Fla. 2012) ("*TracFone II*"). It is certainly true that Rule 4(f)(3) service was permitted in that case before the plaintiffs attempted service. *Id.* Omitted from Plaintiffs reference to *TracFone II*, however, are several relevant points. First, the plaintiff in *TracFone II* had previously filed two almost identical cases against similar defendants on similar allegations. *Id.* at docket entry 17. Second, in prior cases *TracFone* attempted Hague Convention service. *Tracfone Wireless, Inc. v. Sunstrike Int'l, Ltd.*, 273 F.R.D. 697, 699 (S.D. Fla. 2011) ("*TracFone I*"); *see also TracFone Wireless, Inc. v. Bequator Corp., Ltd.*, 717 F. Supp. 2d 1307 (S.D. Fla. 2010). Third, *TracFone*'s prior efforts at service (presumably including *TracFone I*) had been slow. *Tracfone II* at docket entry 17-4. Fourth, *TracFone* represented to the district court in *TracFone II* that harm was continuing against it "unabated" if it could not quickly serve via alternate means. *Id.* at docket entry 17, page 3. Fifth and finally, *TracFone* only sought alternative service for a defendant located in a country not covered by the Hague Convention—Vietnam.[4] Based upon the foregoing record, the district court allowed service through email.

<u>Plaintiffs' Argument that Alternative Service is the Best Way to Advance this MDL</u>.

The touchstone of the Court's administration of this litigation is that it must "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. And it is true that the United States Supreme Court has remarked that in some circumstances adherence to the Hague Convention (as a mandatory matter of first resort) would be contrary to the principles

---

4 The other defendant was located in Canada, a Hague Convention country; for that defendant, *TracFone* sought to effectuate service *both* though the Hague Convention and Rule 4(f)(3). *TracFone II*, 278 F.R.D. at 689.

5

encapsulated in Rule 1. *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522, 542-43 (1987) ("A rule of first resort [to the Hague Evidence Convention] in all cases would therefore be inconsistent with the overriding interest in the 'just, speedy, and inexpensive determination' of litigation in our courts."). Plaintiffs emphasize the need for the just, speedy, and inexpensive determination of this MDL matter by citing to the legislative history underscoring the implementation of MDLs:

> As said in the report of the House Judiciary Committee, "the objective of the legislation is to provide centralized management under court supervision of pretrial proceedings of multidistrict litigation to assure the 'just and efficient conduct' of such actions" and "to accomplish this objective the bill provides for the transfer of venue of an action for the limited purpose of conducting coordinated pretrial proceedings."

*In re N.Y.C. Mun. Sec. Litig.*, 572 F.2d 49, 51 (2d Cir. 1978) (quoting H.R. Rep. No. 1130, 90th Cong., 2d Sess.). Plaintiffs argue that this MDL has two pressing time-based concerns based upon the pretrial deadlines imposed by the Court. First, discovery must be completed in eighteen months; second, motions contesting personal jurisdiction must be filed by October 8, 2020. *See* Pretrial Order # 36. Plaintiffs represent in their Motion that Hague Convention service would take a minimum of six months. DE 1411 at 16. Based upon that delay and the Court's deadlines, Plaintiffs cite to three MDLs for the proposition that this Court should order Rule 4(f)(3) alternative service.

First, Plaintiffs cite to *In re Chinese-Manufactured Chinese Drywall Products Liability Litigation*, MDL No. 2047. In that MDL, the district court did permit Rule 4(f)(3) alternative service, but it did so after plaintiffs represented "that while [they had] properly undertaken to serve [the defendants] with various omnibus complaints in a manner consistent with the requirements of the Hague Convention, those efforts had been thwarted by [the defendants] repeated refusal to accept

6

service of process." *Id.* at docket entry 19713 at 1-2.[5] Second, Plaintiffs cite to *In re Takata Airbag Products Liability Litigation*, MDL No. 2599, but in *Takata*—just like in *Chinese Drywall*—the plaintiffs did attempt to serve the defendants pursuant to the Hague Convention before seeking court-ordered alternative service. *Id.* at docket entry 1485 at 2-3.[6] Third and finally, Plaintiffs cite to *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827, for the proposition that once discovery is underway, alternative service should be ordered so that the foreign-based defendant may participate in discovery as soon as possible. Plaintiffs' citation—which is based upon a docket entry on March 8, 2011—does stand for the proposition proffered by Plaintiffs. Omitted from Plaintiffs' citation, however, is the fact that while the district court allowed for alternative service so as to streamline discovery, the court did so when the MDL was four years old—the MDL was in an advanced state at the time alternative service was permitted. *In re TFT-LCD*, 483 F. Supp. 2d 1353 (Jud. Pan. 2007) (creating MDL 1827).[7]

<u>Teva's Response</u>.

Teva argues that Plaintiffs should first attempt service pursuant to the Hague Convention before resorting to a request for alternative service. Teva points out that while there are certain costs for service by the Hague Convention (such as translation), those costs are tied to Plaintiffs' unilateral decision to draft complaints measuring over 1,700 pages. Teva further argues that this Court should follow cases such as *International Designs Corp., LLC v. Qingdao SeaForest Hair Prod. Co.*, No. 17-CV-60431, 2018 WL 2364297, at *2 (S.D. Fla. Jan. 4, 2018). In *International Designs*, the

---

[5] Plaintiffs further represented to the court that without alternative service, formal Hague Convention service would "take several years." *Id.*
[6] The plaintiffs in *Takata* also attempted to serve the defendant in the United States "through a general manager," but that attempt was unsuccessful. *Id.* Further, not every defendant in *Takata* was subject to the Hague Convention. *See Takata*, 2017 WL 8809362, at *4.
[7] Additionally, at least one defendant was not subject to the Hague Convention.

7

district court recognized that there is an abundance of caselaw that stands for the proposition that Rule 4(f)(3) is not a method of service of last resort, but the court ultimately concluded that Hague Convention service should be attempted first because, in that case, no "great urgency exist[ed]." *Id.* at *10. Teva then cites to various cases in which a plaintiff first attempted Hague Convention service before resorting to alternative service, including the *Takata* MDL, and to cases where alternative service was permitted because the defendants were hiding or using false information. *E.g., Codigo Music, LLC v. Televisa S.A. de C.V.*, No. 15-CV-21737, 2017 WL 4346968 (S.D. Fla. Sept. 29, 2017); *Abercrombie & Fitch Trading*, 2014 WL 11721486; *Chanel, Inc. v. Zhixian*, No. 10-CV-60585 (S.D. Fla. Apr. 29, 2010).

Finally, Teva relies upon *Commodity Futures Trading v. Fingerhut*, No. 20-CV-21887, 2020 WL 4499198, at *2 (S.D. Fla. May 29, 2020). In *Fingerhut*, the district court denied a request for alternative service because the plaintiff did not explain why it had not even attempted to serve the complaint under any other method (just as in the instant case). The district court ruled that the plaintiffs should first attempt Hague Convention service before seeking alternative service under Rule 4(f)(3). *Id.* at *3. The plaintiffs then attempted to effectuate Hague Convention service but were unsuccessful. As a result, the plaintiffs returned to the district court, provided a record of their service efforts, and, less than two months after its earlier denial, the district court permitted the plaintiffs to serve their complaint via Rule 4(f)(3), alternative service. *Fingerhut*, 2020 WL 3977147 (S.D. Fla. July 13, 2020). Teva contends that *Fingerhut* should serve as a model for this Court—Hague Convention service should first be attempted and then, if necessary, alternative service is considered. For their part, Plaintiffs contend in their Reply that the delay in *Fingerhut* is an example of why alternative service should be permitted now.

8

## IV. ANALYSIS AND RULING

For the most part, the parties do not dispute the law that governs Plaintiffs' request. Teva concedes that Hague Convention service is not, strictly speaking, a prerequisite to alternative service. Plaintiffs concede that a court may require service via the Hague Convention before permitting alternative service. Plaintiffs have cited cases where Hague Convention service was not required, and Teva has cited cases where Hague Convention service was required. All agree that this matter is committed to the sound discretion of this Court, but the Court notes that in the majority of the authority cited by Plaintiffs, Hague Convention service was attempted prior to any authorization for alternative service.

This is not a case where the Defendants are represented to be in hiding or where the Defendants do not maintain known, physical addresses. This is not an older case with discovery in an advanced stage and trials that are imminent. Finally, this is not a case where Plaintiffs have made prior, unsuccessful attempts to serve the well-known, corporate Defendants in their respective countries. "Typically, courts in this District permit alternative service 'only where the defendant's foreign address is unknown; the defendant has successfully evaded service; failure to permit alternate service will result in unduly long delays in litigation; or where attempted Hague Convention service has failed.'" *Fingerhut*, 2020 WL 4499198, at *2. Although such requirements are not expressly provided for in Rule 4(f)(3), "they are worthy of consideration 'to prevent parties from'" immediately "seeking alternative service" since it would always be preferable, in the present day, to simply email a complaint. *See id.*

Upon review and reflection, the Court concludes that the best resolution is for Plaintiffs to first attempt service via the Hague Convention and then, through their efforts, construct a record, if necessary, for a future request for alternative service. If Plaintiffs are able to provide the Court with

9

a record of their attempts to serve the Defendants and those attempts are unsuccessful, that record will best support any future exercise of discretion permitting alternative service. Indeed, should the Court permit alternative service by email as Plaintiffs request and should the case proceed into default posture against the Defendants, Plaintiffs' record of service attempts may be utilized in resisting any future motion to quash alternative service. Thus, the Court will exercise its discretion in a manner akin to the court in *Fingerhut*. The delay in *Fingerhut* (where the plaintiffs developed a record to support a motion for alternative service) was not substantial—less than two months. Here, the deadline driving Plaintiffs' request (the October 8, 2020 deadline to file motions contesting personal jurisdiction) is within the discretion of the Court—if necessary and upon proper motion, the Court would consider extending that deadline for a later-served Defendant. There is also much time remaining in the period for discovery, and that deadline too is within the discretion of the Court. In short, just as in *International Design*, "no great urgency exists" such that the Court should, without any record of frustrated service attempts, order alternative service.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion to Approve Alternative Service on Foreign Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3) [DE 1411] is **DENIED** with leave for Plaintiffs to refile the Motion after Hague Convention service has been attempted.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 11th day of September, 2020.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record