UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-MD-2924-ROSENBERG/REINHART

IN RE ZANTAC (RANITIDINE)
PRODUCTS LIABILITY LITIGATION
_____/

## DISCOVERY ORDER

This matter came before me on September 14, 2020, for a discovery hearing. This Order memorializes my rulings from the bench and, in the event of a discrepancy, is controlling over my oral pronouncement.

Pursuant to Pretrial Order 32, the Parties submitted a Joint Discovery Memorandum, with attachments. ECF No. [1741]. The Plaintiffs sought to require responses to Request for Production 54, as clarified and narrowed by further communications between counsel. *See* ECF No. [1741-1]. Specifically, Plaintiffs seek:.

- With respect to a 2012 investigation of GlaxoSmithKline LLC (GSK) by the U.S. Department of Justice (DOJ) relating to pharmaceuticals other than Zantac:

  1.  All civil investigative demands, Grand Jury subpoenas, and administrative subpoenas;

  2.  All correspondence from the DOJ and all participating federal law enforcement agencies

  3.  All correspondence, reports, submissions, and presentations to the DOJ and all participating federal law enforcement agencies;

  4.  All copies, affidavits, transcripts, notes, recordings, summaries and reports, of any witness interview, testimony, interrogatory response, or statement, including those obtained as part of any internal investigation; and,

> 5. All documents and items produced in response to any civil investigative demands, grand jury subpoenas, and administrative subpoenas (or, preliminarily, a descriptive log of such documents).

- With respect to a Corporate Integrity Agreement (CIA) arising from the same 2012 investigation:

  > 1. All meeting minutes, resolutions, and reports of any individual, committee, meetings, reports, or reviews required or imposed by the CIA, whether internal or external.

- With respect to a 2020 False Claims Act Investigation by the DOJ relating to Zantac:

  > 1. All civil investigative demands, grand jury subpoenas, and administrative subpoenas;

  > 2. All correspondence from the DOJ and all participating federal law enforcement;

  > 3. All correspondence, reports, submissions, and presentations to the DOJ and all participating federal law enforcement agencies;

  > 4. All copies, affidavits, transcripts, notes, recordings, summaries and reports, of any witness interview, testimony, interrogatory response, or statement, including those obtained as part of any internal investigation; and

  > 5. All documents and items produced in response to any civil investigative demands, grand jury subpoenas, and administrative subpoenas.

*Id.* GSK objects to these requests in their entirety.

Based on my review of the joint memorandum and attachments, and with the benefit of excellent oral argument, I deny Plaintiffs' request to compel production from GSK.

## **LEGAL STANDARDS**

Federal Rule of Civil Procedure 26(b)(1) allows discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Thus, discovery is cabined by:

(1) the well-pled allegations in the pleadings stating claims for relief, that is, allegations that contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcraft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Grigorian v. Tixe Realty Servs., Inc.*, No. 19-81106-CIV, 2019 WL 6122662, at *3 (S.D. Fla. Nov. 18, 2019), *reconsideration denied,* No. 19-81106-CIV, 2019 WL 6307191 (S.D. Fla. Nov. 21, 2019) (J. Reinhart);

(2) defenses properly asserted by motion under Rule 12(b); and

(3) denials or affirmative defenses under Rules 8(b) and 8(c).

"The court . . . has the authority to confine discovery to the claims and defenses asserted in the pleadings, and  . . . the parties . . . have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." *See* Fed. Rule Civ. P. 26(b)(1), Advisory Committee Note (2000).

Once a proper objection is lodged, the party seeking discovery has the burden of proving relevance. *Cardenas v. Toyota Motor Corp.*, No. 18-CV-22798, 2020 WL 5291936, at *1 (S.D. Fla. Sept. 3, 2020) (J. Louis). Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.[1] Relevant evidence can include prior similar acts or

---

[1] Some older cases suggest that evidence is relevant and discoverable if it "bears on, or . . . reasonably could lead to other matter that could bear on, any issue that is, or may be in the case." *E.g., Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978). I reject this standard because it is based on the pre-2000 language of Rule 26(b)(1) which allowed discovery of evidence "relevant to the subject matter involved in the pending action." *See id.* This language was changed in 2000 to "relevant to the claim or defense of any party." *See* Jeffrey W. Stempel & David F. Herr, *Applying Amended Rule 26(b)(1) in Litigation: The New Scope of Discovery*, 199 F.R.D. 396

other extrinsic evidence that is circumstantial proof of an element of a claim or defense; it also can include impeachment evidence.  *See* Fed. R. Civ. P. 26(b)(1), Advisory Committee Note (2000); *see generally* 199 F.R.D., at 405–07.

Where the objection is based on proportionality factors other than undue burden, the party seeking discovery bears the burden of proving the request is proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1), Advisory Committee Note (2015) ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them.").  A party objecting to discovery based on undue burden bears the burden of persuasion on that objection.[2]  *Accord Culhane v. MSC Cruises (USA), Inc.*, 290 F.R.D. 565, 566 (S.D. Fla. 2013) (J. Snow) *citing United States v. Garrett*, 571 F.2d 1323, 1326 (5th Cir. 1978) n. 3 (5th Cir.1978) (applying Fed. R. Civ. P. 26(c)).

---

(2001).  The new language is "purposefully narrower than the old language."  Morgan Cloud, *The 2000 Amendments to the Federal Discovery Rules and the Future of Adversarial Pretrial Litigation*, 74 Temp. L. Rev. 27, 49 (2001).  "The intent of the 2000 Amendment was to narrow the scope of discovery."  199 F.R.D., at 404.  Second, as a textual and logical matter, an issue that is not now but later "may be, in the case" is, by definition, not yet in the case, and therefore is not relevant to the existing claims or defenses.  Third, the 2015 Amendments made clear that the "reasonably could lead to" concept applies only to evidence that otherwise is relevant to a claim or defense, but may not be admissible at trial.  Fed. R. Civ. P. 26(b)(1), Advisory Committee Note (2015) ("The former provision for discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence' is also deleted. The phrase has been used by some, incorrectly, to define the scope of discovery . . . It is replaced by the direct statement that 'Information within this scope of discovery need not be admissible in evidence to be discoverable.'  Discovery of nonprivileged information not admissible in evidence remains available so long as it is otherwise within the scope of discovery.").

[2] The proportionality factor in Rule 26(b)(1) for "whether the burden or expense of the proposed discovery outweighs its likely benefit" overlaps with the grounds for a protective order under Rule 26(c) based on "undue burden or expense."  As the 2015 Advisory Committee Note recognizes, "A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination."  Fed. R. Civ. P. 26(b)(1), Advisory Committee Note (2015).  As such, it is appropriate to apply the Rule 26(c) standard and require the objecting party to shoulder the burden of persuasion under this proportionality factor.

4

"Discovery of nonprivileged information not admissible in evidence remains available so long as it is otherwise within the scope of discovery." Fed. R. Civ. P. 26(b)(1), Advisory Committee Note (2015). Therefore, although admissibility is not a prerequisite to evidence being discoverable, inadmissibility is a factor to be considered in assessing proportionality, particularly "the importance of the discovery in resolving the issues."

## DISCUSSION

### 1. The 2012 DOJ investigation

In 2012, GSK pled guilty to federal crimes and entered into a civil settlement arising from its practices relating to multiple drugs other than Zantac. The case involved conduct occurring over an 11 year period from 1999-2010. GSK was manufacturing and selling Zantac during this same period. Plaintiffs now request all communications between GSK and the DOJ associated with that investigation, including all materials GSK provided to the Government. Plaintiffs assert that the requested materials will show that GSK misrepresented product safety to the public and the FDA, concealed information about product safety to deceive consumers, and improperly influenced scientific data about GSK's products. They also argue that some of the same GSK employees involved in the prior illegal conduct were also involved with Zantac. Plaintiffs argue that this evidence is relevant to (1) prove GSK's intent to deceive and defraud consumers and third-party payors, (2) establish punitive damages, (3) show GSK's routine practices, (4) impeach GSK employees, and (5) prove GSK's participation in a RICO enterprise.

Only some of the requested information is relevant to the claims alleged in the Plaintiffs' Master Complaints. ECF Nos. [887, 888, 889]. First, as counsel for Plaintiffs conceded at oral argument, the correspondence with the DOJ will likely contain irrelevant, non-substantive discussions. Second, the Government's subpoenas, investigative demands, and statements in

correspondence to GSK are not, standing alone, relevant to the claims and defenses being asserted here. They merely reflect the Government's state of mind and the scope of its investigation. They do not make any fact at issue in this litigation more or less likely. They may be relevant, however, for the limited purpose of putting into context GSK's responses.

Correspondence from GSK to the Government may fall within Plaintiffs' theories of relevance if it discusses conduct that was under investigation.[3] Similarly, documents or witness statements that GSK produced to the Government would be relevant.

Production of the otherwise-relevant materials relating to the 2012 investigation is not proportional to the needs of the case. GSK pled guilty and entered into a civil settlement with the Government. Publicly-available documents can be used to prove that GSK admitted to engaging in improper conduct and the scope of that conduct. This information is equally available to both sides and is sufficient to create the inferences supporting Plaintiffs' arguments about GSK's intent, punitive damages, routine practices. and racketeering activity. Additionally, wholesale discovery of GSK's entire production to the Government is not necessary for Plaintiffs to ascertain whether GSK employees who were associated with Zantac were also implicated in the 2012 investigation. Nothing in this Order precludes Plaintiffs from propounding other, more targeted, discovery to try to identify these employees.

The requested evidence is also disproportionate based on the relative importance of the issues to the litigation and the importance of this evidence in resolving those issues. The core liability issue in this case are general causation and knowledge – does Zantac cause cancer and, if so, did GSK know or should have known? If Plaintiffs can establish general causation and

---

[3] To be clear, I find the information relevant to the currently-pled RICO claims. It is not discoverable solely to substantiate a yet-unpled RICO claim.

knowledge, they will have strong circumstantial evidence that GSK intended to conceal these facts from the public and from payors. Similarly, they will have a good-faith basis to argue for punitive damages. Therefore, at least at this point in the litigation, there is a limited need for additional independent circumstantial evidence of GSK's alleged intent. GSK's guilty plea and civil settlement provide such independent circumstantial evidence. More than that is not necessary. The burden of producing the underlying evidentiary basis for conduct lasting 11 years outweighs the limited marginal value of that additional evidence.

### 2. The Corporate Integrity Agreement

As part of the 2012 resolution of the Government's investigation, GSK entered into a Corporate Integrity Agreement (CIA) that required it to make changes to its internal compliance procedures. Plaintiffs now seek "all meeting minutes, resolutions, and reports of any individual, committee, meetings, reports, or reviews required or imposed by the CIA, whether internal or external." Plaintiffs assert that this information will help it determine what changes GSK made, and thereby help (1) identify what GSK was doing wrong during the period from 1999-2010 and (2) see if GSK complied with its duties under the CIA. As noted above, GSK's behavior underlying the 2012 resolution is relevant to the claims and defenses in this MDL. Whether thereafter GSK failed to implement agreed compliance measures is relevant (at least) to intent, punitive damages, and routine practices.

Nevertheless, the request for production is not proportional to the needs of the case. For the reasons stated above, the settlement agreement, guilty plea, and CIA documents provide a sufficient basis to determine the illegal conduct to which GSK admitted, and to create inferences from that conduct. Those inferences certainly can be bolstered by evidence of GSK's post-settlement conduct. Requiring production of internal deliberations is not necessary to establish

7

what compliance changes GSK made and whether they complied with the CIA. Therefore, the request for production is overbroad and disproportionate to the needs of the case. Nothing in this Order precludes Plaintiffs from propounding other, more targeted, discovery about GSK's changes to policies and procedures in light of the CIA.

### 3. False Claims Act Investigation Regarding Zantac

In an SEC filing in June 2020, GSK disclosed that it had received a Civil Investigative Demand (CID) from the DOJ about possible violations of the False Claims Act relating to Zantac. Plaintiffs request a copy of the CID, correspondence between GSK and the DOJ pertaining to the CID, and copies of any documents GSK provided to the DOJ in response to the CID. At oral argument, counsel for GSK represented that Plaintiffs have been provided copies of all materials that were sent to the DOJ and offered to provide written confirmation of that fact. I therefore consider the request to produce these materials to be moot. I leave it to the parties to find a mutually-acceptable method to document this fact.

What remains is the request for a copy of the CID and for correspondence between GSK and the DOJ. The CID is not relevant to the claims and defenses in this MDL. It merely reflects the Government's state of mind. The Government pursues causes of action under the False Claims Act for itself, based on alleged economic damages to government-funded health plans, such as Medicare, Tricare, and the Veteran's Administration. It does not pursue economic damages claims for private parties such as the Plaintiffs, nor does it pursue state-law personal injury or product liability claims. Although there may be overlap in the factual basis for the Government's claims and the Plaintiffs', what the Government included in the CID does not tend to make the Plaintiffs' claims more or less probable. At best, it might indicate areas of discovery that Plaintiffs have not

8

considered. That outcome – adopting or cross-checking someone else's investigative strategy -- is not the purpose of civil discovery.

Moreover, Plaintiffs have not shown that they need the CID to put GSK's production in context or for any other legitimate discovery purpose. Plaintiffs filed their claims in this MDL pursuant to Rule 11, thereby representing that they had conducted a pre-filing factual investigation and that their factual claims had evidentiary support. The Factual Allegations section of the Master Personal Injury complaint comprises 39 pages and over 130 paragraphs. The Factual Allegations section of Consolidated Third Party Payor Class Complaint comprises over 100 pages and 350 paragraphs. The Factual Allegations section of the Consolidated Consumer Class Action Complaint comprises over 90 pages and over 300 paragraphs. Quite simply, these Plaintiffs do not need (and are not entitled to) the Government's help to figure out what discovery to request to help prove their claims.

## **CONCLUSION**

**WHEREFORE**, it is **ORDERED** that GSK's objections to Plaintiffs' Request for Production 54 are **SUSTAINED.**

**DONE and ORDERED** in West Palm Beach, Florida, this 16th day of September, 2020.

_____
BRUCE E. REINHART
U.S. MAGISTRATE JUDGE