**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IN RE: ZANTAC (RANITIDINE)                                    MDL NO. 2924
PRODUCTS LIABILITY                                                20-MD-2924
LITIGATION

                                        JUDGE ROBIN L. ROSENBERG
                        MAGISTRATE JUDGE BRUCE E. REINHART

_____/

**THIS DOCUMENT RELATES TO: ALL ACTIONS**

**PLAINTIFFS' OPPOSITION TO BRAND-NAME**
**MANUFACTURER DEFENDANTS' MOTION**
**TO DISMISS PLAINTIFFS' INNOVATOR-LIABILITY CLAIMS**

DATED:  October 1, 2020

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................ii

INTRODUCTION ............................................................................................1

ARGUMENT ...............................................................................................6

I. Defendants Fail to Show That 48 States Reject Plaintiffs' Claims ...................................6

  A. This Court Must Make an *Erie* Guess Where the Law Is Unsettled...........................6

  B. Basic Foreseeability Principles Support Liability, and Defendants Offer
    No Analysis of Any State's Law to Defeat Plaintiffs' Claims..................................8

    1. The existence of duty turns on foreseeability ........................................8

    2. Defendants cannot sidestep a serious analysis of each state's law .......................14

II. States Recognizing Liability Have Personal Jurisdiction Over Defendants ...................16

III. Due Process Is Not Offended by Holding Brand-Name Manufacturer
    Defendants Accountable for Their Own Purposeful Acts Directed to
    California and Massachusetts ........................................................................19

CONCLUSION....................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas Cty.*,
  221 F.3d 1211 (11th Cir. 2000) ............................................................................ 19, 20

*Anicich v. Home Depot U.S.A., Inc.*,
  852 F.3d 643 (7th Cir. 2017) ........................................................................................ 8

*Bravo v. United States*,
  577 F.3d 1324 (11th Cir. 2009) .................................................................................... 6

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
  137 S. Ct. 1773 (2017) ....................................................................................... *passim*

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ..................................................................................................... 17

*Burger v. Time Ins. Co., Inc.*,
  115 F.3d 880 (11th Cir. 1997) ...................................................................................... 7

*Chufen Chen v. Dunkin' Brands, Inc.*,
  954 F.3d 492 (2d Cir. 2020) ......................................................................................... 7

*Clark v. Pfizer Inc.*,
  No. 1819, 2008 WL 7746430 (Pa. Com. Pl. Mar. 12, 2008) ............................. 15, 16

*Colacicco v. Apotex, Inc.*,
  432 F. Supp. 2d 514 (E.D. Pa. 2006), *aff'd*, 521 F.3d 253 (3d Cir. 2008), *vacated
  and remanded on other grounds*, 556 U.S. 1101 (2009), ........................................... 15

*Covell v. Bell Sports, Inc.*,
  651 F.3d 357 (3d Cir. 2011) ......................................................................................... 7

*Dolin v. SmithKline Beecham Corp.*,
  62 F. Supp. 3d 705 (N.D. Ill. 2014), *rev'd on other grounds sub nom.
  Dolin v. GlaxoSmithKline LLC*, 901 F.3d 803 (7th Cir. 2018) ................................. 14

*Erie R. Co. v. Tompkins*,
  304 U.S. 64 (1938) .................................................................................................. 4, 6

*Forest Labs., LLC v. Feheley*,
  296 So. 3d 302 (Ala. 2019) ........................................................................................ 14

ii

*Foster v. Am. Home Prods. Corp.*,
 29 F.3d 165 (4th Cir. 1994) ........................................................................... 9, 10, 13

*Garner v. Johnson & Johnson, Janssen Research & Dev. LLC*,
 No. 116-CV-01494, 2017 WL 6945335 (C.D. Ill. Sept. 6, 2017) ............................... 14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 564 U.S. 915 (2011) .............................................................................................. 17

*Guarino v. Wyeth, LLC*,
 719 F.3d 1245 (11th Cir. 2013) ................................................................................ 4

*Henry v. Angelini Pharma, Inc.*,
 No. 2:17-cv-02593, 2020 WL 1532174 (E.D. Cal. Mar. 31, 2020) ...................... 18, 19

*Howard v. Aspen Way Enters., Inc.*,
 406 P.3d 1271 (Wyo. 2017) ................................................................................... 15

*Huck v. Wyeth, Inc.*,
 850 N.W.2d 353 (Iowa 2014) .................................................................................. 4

*In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*,
 756 F.3d 917 (6th Cir. 2014) ................................................................................. 10

*In re Zofran (Ondansetron) Prods. Liab. Litig.*,
 261 F. Supp. 3d 62 (D. Mass. 2017) ....................................................................... 14

*Int'l Shoe Co. v. Washington*,
 326 U.S. 310 (1945) .......................................................................................... 6, 17

*Jackson v. Johns-Manville Sales Corp.*,
 781 F.2d 394 (5th Cir. 1986) ................................................................................... 7

*Johnson v. Dir. Gen. of Railroads*,
 123 A. 484 (Pa. 1924) .......................................................................................... 15

*Kellogg v. Wyeth*,
 762 F. Supp. 2d 694 (D. Vt. 2010) ......................................................................... 14

*King v. Order of United Commercial Travelers of Am.*,
 333 U.S. 153 (1948) ............................................................................................... 6

*LaClair v. Suburban Hosp., Inc.*,
 518 F. App'x 190 (4th Cir. 2013) ............................................................................. 8

*Lupu v. Loan City, LLC*,
 903 F.3d 382 (3d Cir. 2018) .................................................................................... 7

*McCarthy v. Olin Corp.*,
    119 F.3d 148 (2d Cir. 1997) ...................................................................................... 7

*McNair v. Johnson & Johnson*,
    818 S.E.2d 852 (W. Va. 2018) ................................................................................... 4

*Meier v. Chesapeake Operating L.L.C.*,
    778 F. App'x 561 (10th Cir. 2019) ........................................................................ 7, 8

*Meyer v. CUNA Mut. Ins. Soc'y*,
    648 F.3d 154 (3d Cir. 2011) ...................................................................................... 7

*Moning v. Alfono*,
    254 N.W.2d 759 (Mich. 1977) ................................................................................. 15

*Mosher v. Speedstar Div. of AMCA Int'l, Inc.*,
    52 F.3d 913 (11th Cir. 1995) ..................................................................................... 7

*Mu v. Omni Hotels Mgmt. Corp.*,
    882 F.3d 1 (1st Cir.) .................................................................................................. 7

*Novak v. Navistar Int'l Transp. Corp.*,
    46 F.3d 844 (8th Cir. 1995) ....................................................................................... 7

*PLIVA, Inc. v. Mensing*,
    564 U.S. 604 (2011) ................................................................................................. 13

*Putman v. Erie City Mfg. Co.*,
    338 F.2d 911 (5th Cir. 1964) ..................................................................................... 6

*Rafferty v. Merck & Co.*,
    92 N.E.3d 1205 (Mass. 2018) ........................................................................ 3, 12, 13

*Rowland v. Christian*,
    443 P.2d 561 (Cal. 1968) .................................................................................... 11, 12

*Sewell v. Pub. Serv. Co. of Colo.*,
    832 P.2d 994 (Colo. Ct. App. 1991) ........................................................................ 15

*Smith v. Tenn. Valley Auth.*,
    699 F.2d 1043, (11th Cir. 1983) .............................................................................. 15

*Smith v. Wyeth, Inc.*,
    657 F.3d 420 (6th Cir. 2011) ................................................................................... 10

*Stalbosky v. Belew*,
    205 F.3d 890 (6th Cir. 2000) ............................................................................ 7, 8, 11

*Stephens v. Dep't of Health & Human Servs.*,
    901 F.2d 1571 (11th Cir. 1990) ................................................................................ 17

*T.H. v. Novartis Pharms. Corp.*,
    407 P.3d 18 (Cal. 2017) ......................................................................... 3, 11, 12

*Tomasella v. Nestle USA, Inc.*,
    962 F.3d 60 (1st Cir. 2020) ......................................................................... 7

*Turner v. Wells*,
    879 F.3d 1254 (11th Cir. 2018) ................................................................. 6

*Weber v. Sw. Bell Tel. Co.*,
    497 P.2d 118 (Kan. 1972) ....................................................................... 15

*Weisser v. Otter Tail Power Co.*,
    318 F.2d 375 (8th Cir. 1963) .................................................................. 8

*West v. Am. Tel. & Tel. Co.*,
    311 U.S. 223 (1940) ............................................................................... 6

*Wooten v. White Trucks*,
    514 F.2d 634 (5th Cir. 1975) .................................................................. 8

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ............................................................................. 18

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ............................................................................... 3

*Wyeth, Inc. v. Weeks*,
    159 So. 3d 649 (Ala. 2014) .......................................................... 3, 13, 14

**Statutes**

Ala. Code § 6-5-530(a) (2015) .................................................................. 4, 14

Wyo. Stat. Ann. § 8-1-101 ....................................................................... 15

**Regulations**

21 C.F.R. § 201.80(e) ............................................................................... 12

**Other Authorities**

Allen Rostron, *Prescription for Fairness: A New Approach to Tort Liability of Brand-Name and Generic Drug Manufacturers*,
60 Duke L.J. 1123 (2011) ............................................................................................ 9

Thomas P. Christenson et al., *Drug Product Selection: Legal Issues*,
41 J. Am. Pharm. Ass'n (Wash.) (2001) ........................................................................ 9

Wesley E. Weeks, *Picking up the Tab for Your Competitors: Innovator Liability After PLIVA, Inc. v. Mensing*,
19 Geo. Mason L. Rev. 1257 (2012) ............................................................................. 9

Restatement (Second) of Torts § 311 (1)(b) (Am. Law Inst. 1965) ................................ 15

Plaintiffs submit the following memorandum of law in opposition to the Brand-Name Manufacturer Defendants' Motion to dismiss plaintiffs' innovator-liability claims. *See* D.E. 1585 (Inn. Mot.).

## INTRODUCTION

For over a century, the common law of negligence has held that tortfeasors owe duties to foreseeable plaintiffs. Identifying those plaintiffs will always be a context-specific undertaking that relies on the perspective of a reasonable person. As one would expect in our federalist system, some states apply foreseeability broadly, while others give it a narrower compass. But it is now a point of common ground in *every* state that limiting the category of victims to contractual privities is anachronistic. *No* state retains this justly repudiated rule.

Applying foreseeability principles to the pharmaceutical industry, every state requires drug manufacturers to warn consumers of known or reasonably knowable risks. Performing this duty is complicated, however, by federal regulation. Federal law requires a generic manufacturer's label— which contains relevant warnings, precautions, and methods of administration—to be the same in many important respects as the label for the "reference listed drug" (RLD), which is controlled by a brand-name manufacturer. *See* Plaintiffs' Opp. to D.E. 1582 § I.B. For example, Plaintiffs agree that the Generic Manufacturer Defendants here could not unilaterally add a cancer or NDMA warning to their ranitidine labels. Only the brand-name manufacturer who controls the RLD's label can unilaterally make such a change. And if the brand-name manufacturer did add such a warning—as state law requires and federal law allows—the generic manufacturers would be impelled to follow suit.

The upshot of the federal regulatory regime is that brand-name drug makers are responsible for important content on *all* labels, branded or generic. And it is beyond peradventure that this fact comes as no surprise to brand-name manufacturers. They are intimately familiar with the Federal

Food, Drug, and Cosmetic Act and the associated Food and Drug Administration (FDA) regulations implementing its statutory commands.  Brand-name drug manufacturers are ostensibly content to shoulder responsibility for drug labels even *after* generic entry because of the eye-popping profits they reap *before* competition is possible.

The unique market dynamics attendant to the pharmaceutical industry are instructive on this score.  To encourage research and development, the U.S. legal and regulatory system gives branded pharmaceutical companies a time-limited monopoly over new drugs they develop.  Master Personal Injury Complaint  ¶ 8, D.E. 887 (MPIC).  The monopoly profits reaped from a brand-name drug are astronomical, with gross profit margins sometimes exceeding 90%.  *Id.* ¶ 10.  For that reason, brand-name manufacturers spend billions of dollars per year in sales and marketing efforts to persuade doctors and third-party payers to prescribe and cover their medicines.  *Id.*  That is precisely what Glaxo did with Zantac, making it the first drug ever to reach $1 billion in annual sales.  *Id.* ¶ 12.

Brand-name manufacturers have such heavy sales and marketing budgets because they know their monopolies are short lived.  To reduce the cost of drugs, Congress sought to incent rapid competition once a brand manufacturer's exclusivity period is complete.  At that point, generic manufacturers may enter the market following a streamlined FDA approval process.  *Id.* ¶ 14.  A generic company must show only that its drug is largely the same as the branded version to receive regulatory approval.  For that reason, the very sales and marketing activity brand-name manufacturers undertake to sell their own medicines pursuades doctors and third-party payers to prescribe and cover generic drugs.  *Id.* ¶ 14.  As the FDA notes, when four generics enter the market, the branded market share falls below 5%.  *Id.*  This is not because of *independent* sales and marketing spend by generic companies.  It is instead because generic drugs are replicas of the brand, allowing generic manufacturers to free ride on the marketing trail the brand-name manufacturers have already blazed. In most industries, it is not customary for a first mover to effectively perform all of the relevant sales

and marketing activity for their future competitors.  But that is precisely what brand-name manufacturers do, accepting monopoly profits as the tradeoff for building their competitors' future market share.

Having reaped enormous profits during the exclusivity period, brand-name manufacturers are in no position to complain that they incur an ongoing obligation to ensure that *all* labels provide a state-law compliant warning, even if affixed to a generic competitor's packaging.  They knew that responsibility would persist after their market share inevitably shifted to copycat generic drugs; and they knew their sales and marketing activity was forging the demand curve for future generic sales. The alternative would be perverse: as a brand-name manufacturer's market share shrinks, it would have less and less incentive to keep up to date with new safety studies and testing.  In the extreme case, if all brand-name manufacturers left the market, *no* manufacturer would bear any liability on Defendants' theory, leaving no one with any incentive or enforceable obligation to update a drug's label.  Such a result would undermine the "central premise of federal drug regulation that the manufacturer bears responsibility for the content of its label at all times."  *Wyeth v. Levine*, 555 U.S. 555, 570–71 (2009).

Applying general and long-established common-law negligence principles to the specific context of the pharmaceutical industry, the highest courts in three states—Alabama, California, and Massachusetts—have concluded that brand-name manufacturers have a duty to warn consumers who take generic drugs.[1]  Breaching that duty can result in liability.  As with any other negligence case, these decisions found a duty based on foreseeability.  With the regulatory and market realities described above, it is not difficult to discern why these courts concluded that the RLD manufacturer could foresee harm to a generic consumer.  The brand-name manufacturer's own conduct—its failure

---

[1] *T.H. v. Novartis Pharms. Corp.*, 407 P.3d 18, 29 (Cal. 2017); *Rafferty v. Merck & Co.*, 92 N.E.3d 1205, 1219 (Mass. 2018); *Wyeth, Inc. v. Weeks*, 159 So. 3d 649, 676–77 (Ala. 2014).

to change an inadequate label that it marketed throughout the state—would foreseeably cause generic consumers to rely on inadequate warnings.

It is true enough that two state supreme courts have held that brand-name manufacturers have no legal duty to warn generic consumers, and the Alabama legislature abrogated its supreme court's contrary decision by statute.  The Eleventh Circuit has also predicted that Florida would not recognize such a duty.  Plaintiffs who consumed generic ranitidine, therefore, concede that they cannot pursue failure-to-warn claims against the Brand-Name Manufacturer Defendants under the laws of Alabama, Iowa, West Virginia, or Florida.[2]  Because most states have not considered this precise question, this Court—wielding diversity jurisdiction—must apply the foreseeability principles applicable in each of the remaining states to predict how their highest courts would rule.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Reasoning by analogy to state-law decisions in other contexts—which is standard fare for common-law torts—will help uncover the scope of a state's foreseeability doctrine.  This Court may predict that states with narrower foreseeability principles would track West Virginia law, while states embracing a more expansive conception of foreseeability would follow California.  The Court should conduct the analysis with specific plaintiffs for specific cases armed with full briefing on each state's foreseeability doctrine.

Defendants' Motion does not even pretend to carefully and individually articulate each state's common law of foreseeability.  They instead attach a chart with a laundry list of cases and make the sweeping assertion that they would prevail under the law of *every* state that has not yet expressly found a duty in this precise context.  They justify that extraordinary assertion by contending that Plaintiffs are asking the Court to apply some newfangled tort—a so-called "innovator-liability

---

[2] *See Huck v. Wyeth, Inc.*, 850 N.W.2d 353, 380 (Iowa 2014); *McNair v. Johnson & Johnson*, 818 S.E.2d 852, 867 (W. Va. 2018); *Guarino v. Wyeth, LLC*, 719 F.3d 1245, 1253 (11th Cir. 2013); Ala. Code § 6-5-530(a) (2015).

4

claim," Inn. Mot. at 7—and contend that federal courts sitting in diversity must presume that state courts would not embrace this shiny new cause of action.

Defendants' attempt to recast Plaintiffs' claims and to enforce a Plaintiffs-always-lose rule is pure sleight of hand.  Plaintiffs pleaded a claim for negligent failure to warn, not "innovator liability," which is made-for-litigation nomenclature first concocted by the defense bar.  When state courts apply ancient foreseeability principles to a previously unaddressed context, it does not give birth to a different cause of action.  Moreover, it is commonplace for federal courts to predict how state courts would apply foreseeability principles to the unique facts of a case.  A defendant cannot transform an *Erie* guess into immunity by requiring clearly established law before liability will attach.  The notion that plaintiffs always lose if there is no state decision on all fours is too mischievous to be taken seriously.

Unwilling to respect state sovereignty, Defendants claim that Plaintiffs are blocked even in states that unequivocally create liability.  Defendants variously argue that the Due Process Clause precludes the exercise of specific personal jurisdiction in California and Massachusetts and similarly forbids application of unfavorable law even where the Defendants are at home.  Normally, defendants contesting a court's personal jurisdiction assert that plaintiffs have sued in the wrong tribunal.  Defendants' unprecedented argument is that there is *no court* that can constitutionally adjudicate Plaintiffs' claims.  That contention is baseless, especially on a motion to dismiss.

Defendants' argument rests on the false assertion that the only relevant contact for constitutional purposes is where branded manufacturers make their "labeling decisions."  Inn. Mot. at 11.  That cramped argument finds no refuge in the very precedents Defendants cite.  Specific jurisdiction is present when the claims "arise out of or relate to the defendant's contacts with the forum."  *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) (alterations and emphasis omitted).  A plaintiff need only show "an affiliation between the forum and the

5

underlying controversy" through an "activity or an occurrence that takes place in the forum State." *Id.* Plaintiffs easily meet that burden. As noted, brand-name manufacturers invest millions of dollars in marketing and sales to hawk their wares. On information and belief, the Brand-Name Manufacturer Defendants sent marketing professionals to California, Massachusetts, and every other state to persuade prescribers and third-party payers that ranitidine is safe, effective, and accurately labeled. Those in-state "activities" created the market for generic ranitidine and are thus "affiliated" with the generic prescriptions that led to Plaintiffs' injuries. That is all the Due Process Clause requires to make Defendants' presence in state court compatible with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Court should deny Defendants' Motion to dismiss.

## ARGUMENT

## I.      Defendants Fail to Show That 48 States Reject Plaintiffs' Claims

### A.      This Court Must Make an *Erie* Guess Where the Law Is Unsettled

When sitting in diversity, federal courts are required to apply the substantive law of the states. *Erie*, 304 U.S. at 78. On questions of state law, this Court is bound by the rulings of state supreme courts. Where a state's highest court has not addressed a question, "'federal courts are bound by decisions of a state's intermediate appellate courts unless there is persuasive evidence that the highest state court would rule otherwise.'" *Bravo v. United States*, 577 F.3d 1324, 1325 (11th Cir. 2009) (quoting *King v. Order of United Commercial Travelers of Am.*, 333 U.S. 153, 158 (1948)). When there is no state decision on point, a federal court must act as a state court would, predicting as best it can how the state's highest court would rule. *Id.* at 1325–26 (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940), and *Putman v. Erie City Mfg. Co.*, 338 F.2d 911, 917 (5th Cir. 1964)) (noting "it is the duty" of the court, which is "forced" to "ascertain" what state law is based on "all available data"); *see Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018)

(same).[3]  Even with no guidance from a state's highest court, "[f]ederal courts, when sitting in diversity, are no ostriches."  *Lupu v. Loan City, LLC*, 903 F.3d 382, 395 (3d Cir. 2018).[4]

Liability for the Brand-Name Manufacturer Defendants turns on whether they owe a duty to generic consumers.  In most every state, the existence of a duty turns on foreseeability.  Federal courts routinely make *Erie* predictions based on state foreseeability principles.  *See, e.g.*, *Burger v. Time Ins. Co., Inc.*, 115 F.3d 880, 881–82 (11th Cir. 1997) (certifying question whether plaintiffs' damages were a "reasonably foreseeable result" of violation of statute to the Florida Supreme Court); *Mu v. Omni Hotels Mgmt. Corp.*, 882 F.3d 1, 9 (1st Cir.), *review denied*, 885 F.3d 52 (1st Cir. 2018) (*Erie* guess that Rhode Island would find spontaneous criminal conduct in a hotel lobby foreseeable based on its "sequence of events" approach to foreseeability, rejecting district court's more limited "past occurrence" theory); *McCarthy v. Olin Corp.*, 119 F.3d 148, 156–57 (2d Cir. 1997) (predicting no duty would be imposed on gun manufacturer for the reasonably foreseeable criminal misuse of its bullets); *Covell v. Bell Sports, Inc.*, 651 F.3d 357, 362–63 (3d Cir. 2011) (predicting Pennsylvania

---

[3] *See also Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 70 (1st Cir. 2020) ("Where the highest [state] court has not spoken directly on the question at issue, we must predict, as best we can, that court's likely answer."); *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020) ("Where state law is unsettled, we are obligated to carefully . . . predict how the state's highest court would resolve the uncertainty or ambiguity."); *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 164 (3d Cir. 2011) ("In the absence of a definitive ruling by a state's highest court, we must predict how that court would rule if faced with the issue."); *Stalbosky v. Belew*, 205 F.3d 890, 894 (6th Cir. 2000) ("[O]ur task [in a diversity case] is to make our best prediction, even in the absence of direct state court precedent, of what the [state] Supreme Court would do if it were confronted with this question."); *Novak v. Navistar Int'l Transp. Corp.*, 46 F.3d 844, 847 (8th Cir. 1995) ("If state law is unsettled, it is our duty to apply the rule we believe the [state] Supreme Court would follow."); *Meier v. Chesapeake Operating L.L.C.*, 778 F. App'x 561, 564–65 (10th Cir. 2019) (Even when "an arguably unsettled question of state law comes across our desks" the court is obliged to resolved the issue "even if no state supreme court precedent is directly on point.").

[4] When available, certification of questions to the appropriate state supreme court to obtain definitive rulings is encouraged.  "Where there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary *Erie* 'guesses' and to offer the state court the opportunity to interpret or change existing law."  *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 916–17 (11th Cir. 1995) (citing *Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 396 (5th Cir. 1986)).

would reject Restatement (Second)'s "foreseeable risk" definition of "defective" in favor of Restatement (Third)'s); *LaClair v. Suburban Hosp., Inc.*, 518 F. App'x 190, 191 (4th Cir. 2013) (predicting joint tortfeasor status based on the foreseeable consequences of the party's negligence); *Wooten v. White Trucks*, 514 F.2d 634, 636–37 (5th Cir. 1975) (predicting crashworthiness standard taking into account foreseeability of harm); *Stalbosky*, 205 F.3d at 893–96 (predicting whether defendant's violent conduct was sufficiently foreseeable to give rise to claim for negligent hiring); *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 654–55 (7th Cir. 2017) (predicting whether defendant's violent conduct was sufficiently foreseeable to give rise to claim for negligent hiring); *Weisser v. Otter Tail Power Co.*, 318 F.2d 375, 377 (8th Cir. 1963) (predicting electricity suppliers' state-law duty to maintain power lines in a foreseeably safe condition); *Meier*, 778 Fed. App'x at 564–69 (predicting whether defendants' conduct foreseeably caused increased insurance premiums absent any physical damage).

This Court is obliged to conduct an *Erie* prediction for each undecided state by carefully examining that state's general foreseeability law and applying it to the context here.

> **B.     Basic Foreseeability Principles Support Liability, and Defendants Offer No Analysis of Any State's Law to Defeat Plaintiffs' Claims**

Five states' highest courts have answered the question presented here, three of which have found that brand-name manufacturers owe a duty to generic consumers.  There is a strong basis to predict that other states would follow the majority rule.

> *1.     The existence of duty turns on foreseeability*

In contrast to Defendants' overly ambitious project, Plaintiffs do not pretend to articulate the common law of *every* state in a single, relatively short opposition brief.  Nonetheless, the background principles adumbrated here confirm that many states would likely embrace Plaintiffs' theory of liability.  That is sufficient to deny the Motion.

The MPIC asserts claims sounding in negligence and negligent misrepresentation. Plaintiffs allege that Brand-Name Manufacturer Defendants intended for Plaintiffs and their physicians to reasonably and foreseeably rely on their misrepresentations about ranitidine-containing products in prescribing or recommending the drug to Plaintiffs, leading to their injuries. MPIC ¶ 569. Under the FDA's regulatory scheme, doctors and consumers understand that generic drugs are supposed to be bioequivalent to—and have the same labeling as—their branded equivalent. It is therefore entirely reasonable and foreseeable that doctors will rely on representations by the brand-name manufacturer in writing prescriptions that are likely to be filled with the generic equivalent or in recommending both the branded and generic versions of the over-the-counter drug.[5]

Moreover, physicians and consumers are far more likely to receive information about a drug's risks and benefits from the brand-name manufacturer. During the period when a brand-name manufacturer holds exclusivity, it often expends millions of dollars to teach prescribing physicians about its drug and to promote its use to consumers. *See* MPIC ¶¶ 10–11. Most brand-name manufacturers also publish their approved drug labeling in the Physicians' Desk Reference (PDR), a primary source of information about drugs for most physicians. By contrast, generic manufacturers do little or no promotion of their products and do not publish their labeling in the PDR. *Cf. Foster v. Am. Home Prods. Corp.*, 29 F.3d 165, 169–70 (4th Cir. 1994) (discussing the risks "[w]hen a

---

[5] In order to keep medical costs down, both states and private insurers have mandated the substitution of cheaper generic drugs for costly branded products. Allen Rostron, *Prescription for Fairness: A New Approach to Tort Liability of Brand-Name and Generic Drug Manufacturers*, 60 Duke L.J. 1123, 1180 (2011); Wesley E. Weeks, *Picking up the Tab for Your Competitors: Innovator Liability After PLIVA, Inc. v. Mensing*, 19 Geo. Mason L. Rev. 1257, 1262 n.36 (2012). All states have laws that mandate that pharmacists fill brand prescriptions with generic equivalents unless the physician (or consumer) specifically overrides the operation of the law. Rostron, *supra*, at 1132; Thomas P. Christenson et al., *Drug Product Selection: Legal Issues*, 41 J. Am. Pharm. Ass'n (Wash.) 868, 869 (2001); Wesley E. Weeks, *supra*, at 1260–61.

generic manufacturer adopts a name brand manufacturer's warnings and representations without independent investigation").

Holding brand-name manufacturers liable for injuries caused by generic versions of their drugs is consistent with the long-standing rule that those who disseminate misinformation to the public are liable for physical harm to third parties resulting from foreseeable reliance on those misrepresentations.  This principle is well-articulated in Section 311 of the Restatement (Second) of Torts, which provides:

> One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results . . . to such third persons as the actor should expect to be put in peril by the action taken.

Restatement (Second) of Torts § 311 (1)(b) (Am. Law Inst. 1965).

The Comments to Section 311 recognize it provides "broader liability" than that where the representation is for pecuniary loss under Section 552.  *See id.*, cmt. a.  Comment b highlights that the principle described "finds particular application where it is a part of the actor's business or profession to give information upon which the safety of the recipient or a third person depends."  *Id.*, cmt. b.  And Comment c proposes that liability applies to advice given "gratuitously" and even where "the actor derives no benefit from giving it."  *Id.*, cmt. c.  Comment c also advises that such liability is "fully justified" where the actor "purports to have special knowledge," *id.*, as is the case with any of the Brand-Name Manufacturer Defendants.  In contrast to this well-settled approach, Defendants advance an approach more akin to abstention or demanding clearly established law under qualified immunity principles, an approach that is not even consistently observed where Defendants found it in the Sixth Circuit.[6]

---

[6] Inn. Mot. at 7–8 (citing *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 937 (6th Cir. 2014), and *Smith v. Wyeth, Inc.*, 657 F.3d 420, 424 (6th Cir. 2011)).  These panel

Following these principles, three states have expressly held that generic consumers are foreseeable plaintiffs to whom branded manufacturers owe a legal duty.  These decisions are persuasive.

In *T.H. v. Novartis*, twin minors sued Novartis for negligence and negligent misrepresentation for failure to warn of risks of fetal brain development.  On appeal, the sole issue before the California Supreme Court was "the existence and scope of warning label liability for brand-name drug manufacturers under California law."  407 P.3d at 27.  Plaintiffs premised the validity of their claim on Section 311 of the Restatement (Second) of Torts.  The California Supreme Court thoroughly analyzed the federal regulatory scheme and state-law considerations addressing foreseeability and other public policy concerns.  *Id.* at 27–31 (citing *Rowland v. Christian*, 443 P.2d 561 (Cal. 1968)). The court's ruling was crystal clear:

> [I]t is entirely foreseeable that the warnings included (or not included) on the brand-name drug label would influence the dispensing of the generic drug, either because the generic is substituted by the pharmacist or the insurance company *after* the physician has prescribed the brand-name drug, or because the warning label on the generic drug is legally required to be identical to the label on the brand-name drug.

*Id.* at 30.

On the public policy issues, the court was equally direct.  Imposing a duty upon the brand-name manufacturer "ensur[es] that the brand-name manufacturer has sufficient incentive to prevent a known or reasonably knowable harm."  *Id.* at 32.  Against this public benefit, the court considered the burden on the Defendant, which it concluded was "zero."  *Id.*  Why?  "Brand-name manufacturers *already* have a continuing duty to warn of potential risks 'as soon as there is reasonable evidence of

---

decisions are inconsistent with *Stalbosky*, 205 F.3d at 894 (quoted earlier).

an association of a serious hazard with a drug; a causal relationship need not have been proved.'" *Id.*

(quoting 21 C.F.R. § 201.80(e)). The court concluded:

> [W]e find that brand-name drug manufacturers have a duty to use
> ordinary care in warning about the safety risks of their drugs,
> regardless of whether the injured party (in reliance on the brand-name
> manufacturer's warning) was dispensed the brand-name or generic
> version of the drug. We also conclude that a brand-name
> manufacturer's sale of the rights to a drug does not, as a matter of law,
> terminate its liability for injuries foreseeably and proximately caused
> by deficiencies present in the warning label prior to the sale.

*Id.* at 47–48.

The Massachusetts Supreme Court largely followed California's lead.  In *Rafferty*, the

Massachusetts high court held that brand-name manufacturers are liable for claims of recklessness if

the defendant "intentionally failed to update the label on its drug, knowing or having reason to know

of an unreasonable risk of death or grave bodily injury associated with its use."  *Rafferty*, 92 N.E.3d

at 1209.  Rejecting the defendant's contention that it could not owe a duty to generic consumers, the

court held:

> With generic drugs, it is not merely foreseeable but <u>certain</u> that the
> warning label provided by the brand-name manufacturer will be
> identical to the warning label provided by the generic manufacturer,
> and moreover that it will be relied on, not only by users of its own
> product, but also by users of the generic product.

*Id.* at 1215.  With this certitude, the court found the "special circumstance" necessary to impose

liability on the party responsible for the label, not the manufacturing of the product.  *Id.*  It held that

duty exists "[w]here a brand-name drug manufacturer provides an inadequate warning for its own

product, it knows or should know that it puts at risk not only the users of its own product, but also

the users of the generic product."  *Id.*  The court also found that deterring failure to warn while also

compensating victims of harm was in line with public policy, *i.e.*, a "duty not to intentionally or

recklessly cause harm to others."  *Id.* at 1218.  Thus, the court held:  "a brand-name manufacturer

that controls the contents of the label on a generic drug owes a duty to consumers of that generic drug not to act in reckless disregard of an unreasonable risk of death or grave bodily injury." *Id.* at 1219. The court reasoned that requiring recklessness rather than negligence balanced the competing interests of minimizing brand-name manufacturers' liability against deterrence and providing a compensatory remedy.

The Supreme Court of Alabama soon answered the following certified question:

> Under Alabama law, may a drug company be held liable for fraud or misrepresentation (by misstatement or omission), based on statements it made in connection with the manufacture or distribution of a brand-name drug, by a plaintiff claiming physical injury from a generic drug manufactured and distributed by a different company?

*Weeks*, 159 So. 3d at 653.

The brand-name manufacturer asserted that the plaintiff's misrepresentation claims were invalid products liability claims because it did not manufacture the product that injured Mr. Weeks. The court found that "the [products liability statute] did not subsume a common-law negligence or wantonness claim," and refused to "treat the Weekses' claims as [statutory] claims governed by the principles of the [products liability statute]." *Id.* at 656.

The court next examined the Hatch-Waxman regulatory scheme and noted that brand-name and generic drug manufacturers have different federal labeling duties. *Id.* at 658–61 (citing *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 611–13 (2011)). Noting the newly described sameness requirement, the court distinguished a number of contrary opinions, particularly the Fourth Circuit's seminal ruling of *Foster*, 29 F.3d 165, which found that generic manufacturers were responsible for the accuracy of the label on their drugs. *Weeks*, 159 So. 3d at 670 ("[W]e do not agree that the fact that a brand-name manufacturer did not produce the version of the drug ingested by the plaintiff bars the plaintiff's tort action when the plaintiff is arguing that he or she was injured by a failure to warn."). The court found the harm foreseeable: "[A]n omission or defect in the labeling for the brand-name

13

drug would necessarily be repeated in the generic labeling, foreseeably causing harm to a patient who ingested the generic product." *Id.* The court concluded:

> In the context of inadequate warnings by the brand-name manufacturer placed on a prescription drug manufactured by a generic manufacturer, it is not fundamentally unfair to hold the brand-name manufacturer liable for warnings on a product it did not produce because the manufacturing process is irrelevant to misrepresentation theories based, not on manufacturing defects in the product itself, but on information and warning deficiencies, when those alleged misrepresentations were drafted by the brand-name manufacturer and merely repeated, as allowed by the FDA, by the generic manufacturer.

*Id.* at 677.  The Alabama legislature eliminated this theory of liability by statute.  Ala. Code § 6-5-530(a) (2015); *Forest Labs., LLC v. Feheley*, 296 So. 3d 302 (Ala. 2019).  But *Weeks* correctly states the common law.

***

Other federal courts have predicted that Illinois and Vermont supreme courts would reach the same conclusions.  *See Dolin v. SmithKline Beecham Corp.*, 62 F. Supp. 3d 705, 714 (N.D. Ill. 2014*), rev'd on other grounds sub nom. Dolin v. GlaxoSmithKline LLC*, 901 F.3d 803 (7th Cir. 2018); *Garner v. Johnson & Johnson, Janssen Research & Dev. LLC*, No. 116-CV-01494, 2017 WL 6945335, at *7 (C.D. Ill. Sept. 6, 2017); *In re Zofran (Ondansetron) Prods. Liab. Litig.*, 261 F. Supp. 3d 62, 74 (D. Mass. 2017); *Kellogg v. Wyeth*, 762 F. Supp. 2d 694, 708–09 (D. Vt. 2010).

### 2.    *Defendants cannot sidestep a serious analysis of each state's law*

The obligation under *Erie* is to predict how a state's supreme court would rule.  Where there are claims from every state, this requires substantial work.  No sovereign's law should be short changed because Defendants believe they can capture the nuance of *each* state's law with a 15-page brief and a laundry list of cases—devoid of any analysis—attached as an exhibit.

The danger of that blunderbuss approach is readily apparent, as each state has developed its own common-law precepts that deserve appropriate attention before the Court makes an *Erie*

14

prediction.  For instance, in many states the existence of a duty *vel non* is a pure question of law for the court.  But in several, foreseeability—from which the existence of a duty flows—is a mixed question of law and fact.  Where disputed, it goes to the jury.  *See, e.g.*, *Smith v. Tenn. Valley Auth.*, 699 F.2d 1043, (11th Cir. 1983) ("[T]he question of foreseeability should have been submitted to the jury."); *Sewell v. Pub. Serv. Co. of Colo.*, 832 P.2d 994, 997–98 (Colo. Ct. App. 1991); *Moning v. Alfono*, 254 N.W.2d 759, 770 (Mich. 1977) ("It is for a jury to decide whether any negligence in marketing slingshots directly to children is a cause in fact of plaintiff's loss."); *Weber v. Sw. Bell Tel. Co.*, 497 P.2d 118, 130 (Kan. 1972) ("Foreseeability is the foundation of liability in the instant case, and we conclude that the duty to mark the lines is also a question for the trier of fact.").  These and countless other issues could be adequately explored if Defendants took the *Erie* obligation seriously.  Other than saying *ipse dixit* there is "no basis" for the claim, Defendants fail to present valid reasons why any particular, contested state would not follow the common law as set forth in Section 311 of the Restatement (Second) of Torts.  The absence of evidence is not evidence of absence.

Two examples drive this point home.  *First*, the Supreme Court of Wyoming, in adopting the right of privacy described in the Restatement (Second) of Torts, confirmed that the common law is operative unless legislatively repealed.  *See Howard v. Aspen Way Enters., Inc.*, 406 P.3d 1271, 1276 (Wyo. 2017) (citing Wyo. Stat. Ann. § 8-1-101).  The Brand-Name Manufacturer Defendants have not provided any Wyoming legislative enactment rejecting Section 311.  *Second*, the Pennsylvania Supreme Court long ago issued a seminal ruling that formed the basis for Section 311.  *See Johnson v. Dir. Gen. of Railroads*, 123 A. 484 (Pa. 1924) (finding the defendant owed a duty after tower guard negligently invited plaintiff to cross the tracks when a train was approaching that plaintiff could not see and was injured thereby).  In addition, Judge Bernstein in *Clark v. Pfizer Inc.*, No. 1819, 2008 WL 7746430, slip op. (Pa. Com. Pl. Mar. 12, 2008), rejected the reasoning of his brother judge on the federal bench in *Colacicco v. Apotex, Inc.*, 432 F. Supp. 2d 514, 538–39 (E.D. Pa. 2006), *aff'd*,

521 F.3d 253 (3d Cir. 2008), *vacated and remanded on other grounds*, 556 U.S. 1101 (2009), whose vacated opinion is relied upon by Defendants. The Pennsylvania court found that a claim was properly lodged against Pfizer, the brand-name manufacturer, as "[t]he consequences of imposing a duty upon the defendants herein is nothing greater than the requirement that pharmaceutical advertising of drugs and promotion be in accord with scientific knowledge and Federal law rather than marketing requirements and profitability concerns." *Clark*, 2008 WL 7746430, slip op. at 18.

Defendants cannot simply point to a "mountain" of non-binding precedent, omit the reasoning of mostly federal decisions on which state predictions were made, and demand Plaintiffs' claims be dismissed with prejudice. And Plaintiffs cannot do justice in a short opposition brief to the laws of 45 unique sovereigns where this question is unsettled. The issue should be rejoined on summary judgment, where the Court can review and fully analyze the law of one sovereign at a time to properly inform the *Erie* guess.

## II.   States Recognizing Liability Have Personal Jurisdiction Over Defendants

Defendants' next argument is that even states that recognize liability under longstanding foreseeability and negligence principles are barred by the Due Process Clause of the Constitution from asserting personal jurisdiction (or, in the more aggressive version of the argument, any liability-inducing law) over the dispute. The days of limiting state law based on unenumerated "Due Process" economic rights are long behind us, and Defendants cannot gain through jurisdictional argument what they are denied on substantive law. Courts in California, Massachusetts, and other states allowing liability plainly have the power to adjudicate disputes involving Defendants.

The Supreme Court has required that "the *suit* must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers*, 137 S. Ct. at 1780 (alterations and internal quotation marks omitted). That means "there must be an affiliation between the forum and the underlying controversy," which is best demonstrated by an "activity or occurrence that takes place in the forum

16

State and is therefore subject to the State's regulation." *Id.* (internal quotation marks omitted) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Accordingly, the focus of a specific jurisdiction analysis is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (internal quotation marks omitted). The ultimate touchstone of personal jurisdiction is "foreseeability . . . that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). That is because the Due Process Clause implements an outer bound of "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316.

Defendants' attempted evasion of personal jurisdiction relies on self-serving assertions. They argue, without reference to the MPIC, that the claim arises entirely out of "labeling decisions," and that these decisions occurred exclusively at their principal places of business, and "did not take place in California or Massachusetts." Inn. Mot. at 11. Defendants' argument would presumably immunize them from *any* failure to warn or misrepresentation claim, since they could *always* assert that labeling decisions are made at their principal place of business, after which they simply sell the drugs to *distributors* who resell them elsewhere. Consumers never purchase generic *or* branded ranitidine directly from a brand-name manufacturer.

Plaintiffs have alleged enough to show personal jurisdiction. The parties are bound by the jurisdictional and factual allegations of the MPIC ¶¶ 220–23; all reasonable inferences must be drawn in Plaintiffs' favor. *See Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990). The MPIC alleges labeling and marketing efforts within the states of California and Massachusetts (and elsewhere), which is where the defendants "targeted the consumer market." *See, e.g.*, MPIC ¶ 221. Brand-Name Manufacturer Defendants enjoyed the substantial benefits of the federal regulatory scheme which encouraged them to develop new drugs by offering them patent

17

protection and FDA exclusivity rights.  *Id.* ¶ 8.  With those rights come monopoly profits, which incentivized them to spend billions of dollars to market the drugs across the country, including California and Massachusetts.  *Id.* ¶¶ 10–11.  GSK alone greatly expanded its sales force from 400 persons to approximately 1,200 sales and marketing professionals to encourage prescribers to prescribe or recommend Zantac to drive sales to realize blockbuster profits.  *Id.* ¶ 232.

Defendants targeted the Massachusetts and California consumer markets, persuaded prescribers and third-party payers that ranitidine is safe, effective, and accurately labeled, and thereby harmed consumers who purchased ranitidine with Defendants' defective label.  Those in-state "activities" created the market for generic ranitidine, and are thus "affiliated" with the generic prescription and over-the-counter purchases that led to Plaintiffs' injuries.  Unlike the plaintiffs in *Bristol-Myers*, Plaintiffs reside in the forum states (California and Massachusetts) and claim to have suffered harm in the state where they reside.  *Bristol-Myers*, 137 S. Ct. at 1782.  Because it was not only foreseeable but certain that the same misrepresentations in the label Defendants use for their own products would be on the generic ranitidine products ingested by Plaintiffs, it was clear that the brunt of the harm would be felt where Plaintiffs reside.  Under these circumstances, the Brand-Name Manufacturer Defendants should "reasonably anticipate being haled into court" in California and Massachusetts to answer for the truth of the statements made in their inadequate labels.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Defendants' reliance on *Henry v. Angelini Pharma, Inc.*, No. 2:17-cv-02593, 2020 WL 1532174 (E.D. Cal. Mar. 31, 2020) is misplaced.  In that case, the California plaintiff sued the current and former NDA holders of a *different* drug altogether, one that was not bioequivalent to the drug at issue.  The court rejected this novel claim as "attenuated" without even mentioning *T.H. v. Novartis*.  *Id.* at *4.  The plaintiff attempted to support his argument through the speculative conduct of a single salesperson that may have connected the defendants to his injury.  Because those California-specific

18

actions were not alleged in the complaint, were unsupported, and speculative, the court found there was no basis for linking the manufacturers of Oleptro to plaintiff's claims and dismissed the action for lack of specific jurisdiction. *Id.* None of the circumstances in *Henry* remotely apply here.

Defendants' Motion regarding lack of personal jurisdiction is premised exclusively on the allegations of the MPIC. However, the alleged facts do not support their argument, nor does the basic doctrine of personal jurisdiction. The MPIC alleges facts that place Defendants' misrepresentations in California or Massachusetts at the heart of the controversy. Traditional notions of fair play and substantial justice support the assertion of personal jurisdiction.[7] At the very least, Plaintiffs must be allowed to seek jurisdictional discovery into Defendants' labeling, sales, and advertising practices to disprove their denials of any connection to the forum.

### III. Due Process Is Not Offended by Holding Brand-Name Manufacturer Defendants Accountable for Their Own Purposeful Acts Directed to California and Massachusetts

Incredibly, Defendants' next argument is that Due Process blocks the supposedly extra-territorial scope of California and Massachusetts law protecting its own citizens. But the same personal jurisdiction analyses apply to Defendants' due process arguments directed to legislative jurisdiction. *See Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas Cty.*, 221 F.3d 1211, 1216 (11th Cir. 2000). Plaintiffs suing the Defendants where they are at home will face conflict of law analyses that will result in the application of laws of the state where the harm occurred or the state with the most significant interests. This will no doubt result in the application of California or Massachusetts law for Plaintiffs from those jurisdictions who sued the Defendants

---

[7] Plaintiffs focus on the specific jurisdiction arguments raised by the Defendants. Defendants concede that for those Plaintiffs who have filed claims where Defendants are "at home" and subject to general jurisdiction, all claims may be asserted against them there. Inn. Mot. at 10 n.5. But even for those Plaintiffs able to assert claims under general jurisdiction, the Defendants contend the claim is too attenuated and Plaintiffs' lose for failure to state a claim. That is not a jurisdictional argument and should be rejected as unripe.

where they are at home.  If Defendants' *home states* would apply foreign law, that cannot be unconstitutional.  For a Defendant's home state has the constitutional freedom—and territorial sovereignty—to borrow the rule of decision from any place it wishes.

Defendants adhere to their unsupported assertion that their "labeling decisions occurred at their principal places of business" and that "Plaintiffs do not allege that any such decisions occurred in California and Massachusetts." Inn. Mot. at 13.  The allegations of the MPIC do not support this made up fact.  Instead, the MPIC alleges the Defendants' marketing activities targeted Plaintiffs in California and Massachusetts.

Because the legislative jurisdiction analysis is the same, *American Charities*, 221 F.3d 1211, these facts of purposeful availment in the relevant states obviate any due process concerns.

## CONCLUSION

For the reasons set forth above, the Defendants' Motion to dismiss should be denied.

DATED:  October 1, 2020                                   Respectfully submitted,

*/s/ Tracy A. Finken*                          By: */s/ Robert C. Gilbert*
Tracy A. Finken                               Robert C. Gilbert, FBN 561861
Email: tfinken@anapolweiss.com                Email: gilbert@kolawyers.com
ANAPOL WEISS                                  KOPELOWITZ OSTROW FERGUSON
One Logan Square                              WEISELBERG GILBERT
130 North 18th Street, Suite 1600             2800 Ponce de Leon Boulevard, Suite 1100
Philadelphia, PA 19103                        Coral Gables, FL 33134
Tel: (215) 735-1130                           Tel: (305) 384-7270


*/s/ Michael L. McGlamry*                      */s/ Adam Pulaski*
Michael L. McGlamry                            Adam Pulaski
Email: efile@pmkm.com                          Email: adam@pulaskilawfirm.com
POPE McGLAMRY, P.C.                            PULASKI KHERKHER, PLLC
3391 Peachtree Road NE, Suite 300              2925 Richmond Avenue, Suite 1725
Atlanta, GA 30326                              Houston, TX 77098
Tel: (404) 523-7706                            Tel: (713) 664-4555


*Plaintiffs' Co-Lead Counsel*

Rosemarie R. Bogdan
Email:  Rosemarie.bogdan@1800law1010.com
MARTIN, HARDING & MAZZOTTI
1222 Troy-Schenectady Road
Niskayuna, NY 12309
Tel: (518) 862-1200

Mark J. Dearman, FBN 0982407
Email: mdearman@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Tel: (561) 750-3000

Elizabeth A. Fegan
Email: beth@feganscott.com
FEGAN SCOTT, LLC
1456 Sycamore Rd.
Yorkville, IL 60560
Tel: (312) 741-1019

Marlene J. Goldenberg
Email: mjgoldenberg@goldenberglaw.com
GOLDENBERG LAW, PLLC
800 LaSalle Avenue, Suite 2150
Minneapolis, MN  55402
Tel: (855) 333-4662

Ashley Keller
Email: ack@kellerlenkner.com
KELLER | LENKNER
150 N. Riverside Plaza, Suite 4270
Chicago, IL 60606
Tel: (312) 741-5222

Frederick S. Longer
Email: flonger@lfsblaw.com
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500

Roopal P. Luhana
Email:  luhana@chaffinluhana.com
CHAFFIN LUHANA LLP
600 Third Avenue, 12th Floor
New York, NY  10016
Tel: (888) 480-1123

Francisco R. Maderal, FBN 0041481
Email:  frank@colson.com
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Tel: (305) 476-7400

Ricardo M. Martinez-Cid, FBN 383988
Email: RMartinez-Cid@Podhurst.com
PODHURST ORSECK, P.A.
SunTrust International Center
One S.E. 3rd Avenue, Suite 3200
Miami, FL 33130
Tel: (305) 358-2800

Lauren S. Miller
Email: lmiller@corywatson.com
CORY WATSON, P.C.
2131 Magnolia Ave S
Birmingham, AL 35205
Tel: (205) 271-7168

Melanie H. Muhlstock
Email: mmuhlstock@yourlawyer.com
PARKER WAICHMAN LLP
9 Evelyn Road
Port Washington, NY 11050
Tel: (516) 723-4629

Daniel A. Nigh, FBN 30905
Email: dnigh@levinlaw.com
LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL  32502
Tel: (888) 435-7001

21

Carmen S. Scott
Email: cscott@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9160

Mikal C. Watts
Email: mcwatts@wattsguerra.com
WATTS GUERRA LLP
4 Dominion Drive
Building 3, Suite 100
San Antonio, TX  78257
Tel: (800) 294-0055

Sarah N. Westcot, FBN 1018272
Email: swestcot@bursor.com
BURSOR & FISHER, P.A.
2665 S. Bayshore Drive, Suite 220
Miami, FL 33133
Tel: (305) 330-5512

Conlee S. Whiteley
Email: c.whiteley@kanner-law.com
KANNER & WHITELEY, L.L.C.
701 Camp Street
New Orleans, LA  70130
Tel: (504) 524-5777

Frank Woodson
Email: Frank.Woodson@BeasleyAllen.com
BEASLEY ALLEN LAW FIRM
234 Commerce St
Montgomery, AL 36103
Tel: (334) 269-2343

*Plaintiffs' Steering Committee*
*Plaintiffs' Law and Briefing Committee Co-Chairs*
*Plaintiffs' Liaison Counsel*

Paige Boldt
Email: pboldt@wattsguerra.com
WATTS GUERRA LLP
1815 Windsong Circle
Keller, TX 76248
Tel: (210) 447-1534

Je Yon Jung
Email: JJung@maylightfootlaw.com
MAY LIGHTFOOT PLLC
3200 Martin Luther King Jr. Avenue,
S.E., 3rd Floor,
Washington DC 20032 (202) 918-1824

Adam W. Krause
Email: adam@krauseandkinsman.com
KRAUSE AND KINSMAN, LLC
4717 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 760-2700

Nicola Larmond-Harvey, FBN 0105312
Email: nicola@saunderslawyers.com
SAUNDERS & WALKER, P.A.
3491 Gandy Boulevard North, Suite 200
Pinellas Park, FL 33781
Tel: (727) 579-4500

Bradford B. Lear
Email: Lear@learwerts.com
LEAR WERTS LLP
103 Ripley Street
Columbia, MO 65203
Tel: (573) 875-1992

*Plaintiffs' Leadership Development Committee*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that the foregoing document is being served on all counsel of record or parties registered to receive CM/ECF Electronic Filings.

*/s/ Robert C. Gilbert*
Robert C. Gilbert

24