# EXHIBIT 1

**Henry, Terry M.**

| | |
|---|---|
| **From:** | Caroline McGlamry <CarolineMcGlamry@pmkm.com> |
| **Sent:** | Wednesday, September 30, 2020 4:35 PM |
| **To:** | Henry, Terry M. |
| **Cc:** | Mike McGlamry; Finken, Tracy; Mikal Watts (mcwatts@wattsguerra.com); Frank Woodson; Regina Carmony; MADERAL, FRANK; Marlene Goldenberg; Thomas, Jane |
| **Subject:** | RE: Zantac - 30b6 Notice |

Terry,

It is our understanding that Apotex USA is participating in the Core Discovery Agreement, whereas Apotex Canada is not.  Our position is that Apotex USA has "possession, custody, or control" of many documents which would be responsive to the CDA topics, even if those documents are housed at Apotex Canada.  We also understand that your position is that you will not produce documents from Apotex Canada, as your client insists that they are wholly separate entities.  You further indicated that you will be contesting personal jurisdiction regarding Apotex Canada.

At this time, we are willing to hold off on the deposition, but in the spirit of transparency, we wanted to let you know that once Apotex Canada files its personal jurisdiction motion to dismiss, we will be asking the court for the exact type of discovery we just served in this deposition notice.  As I am sure you are aware, courts routinely grant discovery on this issue before ruling on such motions.

Please let us know if you will agree to move forward with the CDA and with this deposition or whether we will need to seek the court's permission for this deposition to move forward once you bring your motion.

As always, we are available to discuss over the phone.

Best,
Caroline



Caroline McGlamry
Attorney at Law

3391 Peachtree Road, NE, Suite 300
Atlanta, GA 30326
T:  404.523.7706
E:  carolinemcglamry@pmkm.com
W: www.popemcglamry.com

*The contents of this email are confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521.  This email may contain attorney client and/or work product privileged information.  Interception of this email is unlawful and access by persons to whom the email is not addressed is unauthorized.  If you are not the intended recipient, any disclosure, copying, or distribution of the contents of this email may subject you to both criminal and civil penalties.  IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY POPE, McGLAMRY, KILPATRICK, MORRISON & NORWOOD, P.C. IMMEDIATELY AT THE TELEPHONE NUMBER LISTED ABOVE, RETURN THE EMAIL AND ANY ATTACHMENTS, AND DELETE THE FILE AND/OR MESSAGE FROM YOUR SYSTEM.*

**From:** Henry, Terry M. <THenry@blankrome.com>
**Sent:** Wednesday, September 23, 2020 2:47 PM
**To:** Caroline McGlamry <CarolineMcGlamry@pmkm.com>
**Cc:** Mike McGlamry <mmcglamry@pmkm.com>; Finken, Tracy <tfinken@anapolweiss.com>; Mikal Watts (mcwatts@wattsguerra.com) <mcwatts@wattsguerra.com>; Frank Woodson <Frank.Woodson@BeasleyAllen.com>;

Regina Carmony <rcarmony@wattsguerra.com>; MADERAL, FRANK <frank@colson.com>; Marlene Goldenberg <mjgoldenberg@goldenberglaw.com>; Thomas, Jane <JThomas@BlankRome.com>
**Subject:** RE: Zantac - 30b6 Notice

Caroline:

As you can see from the below report, Apotex Corp. has already produced the most important CDA documents in its possession, and is making good progress on the other areas.  We anticipate Apotex Corp. completing production of CDA materials well in advance of the end date of December 31, 2020.

Because Apotex Corp. is in compliance with the CDA, we do not understand why plaintiffs attempted to serve on us via email a Notice of Deposition for a corporate representative.  Setting aside the issue that email service of discovery is not yet permitted and that the unilateral noticing of a deposition is contrary to the express provisions of the draft deposition protocol, it seems to us that plaintiffs' Notice of Deposition and demand for formal discovery runs contrary to PTO 34, particularly when there has been no meet and confer.  Also, a critical factor in Apotex Corp. signing on to the CDA was plaintiffs agreement not to seek Apotex Inc. documents from Apotex Corp., which this formal discovery expressly seeks to do.  In light of plaintiffs' formal discovery request, Apotex is of the view that plaintiffs are no longer complying with their obligation under the CDA to refrain from serving formal discovery until, at least, January 2, 2021.

As you might imagine, if plaintiffs are not complying with the CDA, Apotex will not be motivated to continue to produce documents and information outlined in the CDA.  We also think plaintiffs' notice of deposition served on a generic manufacturer complying with the CDA will send a strong negative message to the other generic manufacturers and cause them to consider whether there should be continued production of documents if plaintiffs will seek formal discovery anyway.

But before we get into weeds of a discovery dispute, perhaps plaintiffs want to reconsider the Notice they attempted to serve on Apotex Corp. this week.  In the meantime, it seems prudent for Apotex to pause its production while we discuss this issue.

Please let us know your thoughts and whether plaintiffs intend to withdraw the Notice.

**Terry M. Henry** (he/him) | BLANK**ROME**
One Logan Square | 130 North 18th Street | Philadelphia, PA 19103
O: 215.569.5644 | M: 215.694.5136 | thenry@blankrome.com
BLANK**ROME** COVID-19 Task Force Page

(1)  Ranitidine ANDA Files        **Already produced**
(2)  Ranitidine Drug Master File        **Do not have – with API manufacturer**
(3)  Contracts with any API manufacturer from whom ranitidine API was purchased or investigated for purchase        **Do not have – with Apotex Inc. the FDP manufacturer**
(4)  Communications with the FDA relating to or concerning:
    a.  the ranitidine recalls,        **Produced**
    b.  the investigation into the cause of the alleged contamination from any and all sources        **Produced as part of ANDA File**
    c.  efforts to contain, remove or detect the nitrosamine presence        **Produced as part of ANDA File**
    d.  supplements to the ranitidine Drug Master File re: manufacturing process changes from the time of manufacture to present  **Do not have – with API manufacturer**
    e.  all FDA Form 483's, Establishment Inspection Reports, CGMP inspection reports, and warning letters, as well as the responding defendants' responses to same, regarding any facility that manufactured or supplied the API at issue, and  **Do not have – with Apotex Inc, FDP manufacturer**

(5) a list of all United States customers from 2010 to present.   **Apotex Corp. has provided to us a draft list of customers, but must verify internally.  We anticipate having the final list next week.  Following our review for any irrelevant or privileged information, we should be able to produce it.**

(6) Processes and procedures for shipment and storage of ranitidine from API to the next link in the distribution chain.  **We have requested this from Apotex and it is working internally to obtain them.  Apotex has been focused on other of our requests and this one was lower on its priority list.  We will follow up next week on progress.**

(7) Documents reflecting the policies and procedures for manufacturing the completed drug and the storage and distribution of ranitidine.  **Do not have - with Apotex Inc, FDP manufacturer**

(8) All contracts with distributors and/or API manufacturers of ranitidine products.  **We received several distributor contracts from Apotex this week.  We need to review them to determine which pertain to ranitidine, and then review the internal confidentiality terms.  We will have a better understanding of our timing on production of these distributor contracts next week.**

(9) All contracts or agreements with brand name Zantac manufacturers.  **Do not have – none exist**

(10) Any and all stability and chromatography testing relating to ranitidine API and/or the finished dose version of ranitidine and/or Zantac  **Produced as part of ANDA**

(11) To the extent a responding defendant contends it does not have possession, custody or control of any of the listed documents, it shall identify where the documents are located.  **Provided**

---

**From:** Caroline McGlamry <CarolineMcGlamry@pmkm.com>
**Sent:** Thursday, September 17, 2020 1:57 PM
**To:** Henry, Terry M. <THenry@blankrome.com>
**Cc:** Mike McGlamry <mmcglamry@pmkm.com>; Finken, Tracy <tfinken@anapolweiss.com>; Mikal Watts (mcwatts@wattsguerra.com) <mcwatts@wattsguerra.com>; Frank Woodson <Frank.Woodson@BeasleyAllen.com>; Regina Carmony <rcarmony@wattsguerra.com>
**Subject:** Zantac - 30b6 Notice

Mr. Henry,
  Attached please find Plaintiffs' 30b6 notice to Defendant Apotex Corp.

Best,
Caroline



Caroline McGlamry
Attorney at Law

3391 Peachtree Road, NE, Suite 300
Atlanta, GA 30326
T:   404.523.7706
E:   carolinemcglamry@pmkm.com
W: www.popemcglamry.com

*The contents of this email are confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521.  This email may contain attorney client and/or work product privileged information.  Interception of this email is unlawful and access by persons to whom the email is not addressed is unauthorized.  If you are not the intended recipient, any disclosure, copying, or distribution of the contents of this email may subject you to both criminal and civil penalties.  IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY POPE, McGLAMRY, KILPATRICK, MORRISON & NORWOOD, P.C. IMMEDIATELY AT THE TELEPHONE NUMBER LISTED ABOVE, RETURN THE EMAIL AND ANY ATTACHMENTS, AND DELETE THE FILE AND/OR MESSAGE FROM YOUR SYSTEM.*

********************************************************************************************

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the Blank Rome LLP or Blank Rome Government Relations LLC sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

********************************************************************************************

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IN RE:  ZANTAC (RANITIDINE)                                      MDL NO. 2924
PRODUCTS LIABILITY                                                20-MD-2924
LITIGATION

                                        JUDGE ROBIN L. ROSENBERG
                              MAGISTRATE JUDGE BRUCE E. REINHART

_____/

**THIS DOCUMENT RELATES TO: ALL ACTIONS**

**NOTICE OF ORAL AND VIDEO DEPOSITION OF APOTEX CORP. PURSUANT TO FED. R. CIV. P. RULE 30(b)(6)**

**(Corporate Structure, ESI and Jurisdiction)**

**TO:**    Terry M. Henry
         BLANK ROME LLP
         One Logan Square
         130 North 18th Street
         Philadelphia, PA 19103
         Ph: 215-569-5644
         Email: THenry@BlankRome.com

         *Attorneys for Defendant APOTEX CORP.*

         PLEASE TAKE NOTICE that pursuant to Rule 26 and Rule 30(b)(6) of the Federal Rules

of Civil Procedure, Plaintiffs, by and through their undersigned attorneys, the Plaintiffs will take

the oral videotaped deposition of APOTEX CORP. on October 16, 2020 at 10AM EST, via video

conferencing through US Legal Supprt.  Pursuant to Fed. R. Civ. P. 30(b)(6), Defendants shall

designate and produce a representative or representatives, as may be required, to testify on behalf

of APOTEX CORP., concerning the topics identified in Exhibit A attached hereto. The deposition

shall be recorded by stenographic and audiovisual means, as well as a webcast to a remote location,

and taken before a person authorized by law to administer oaths, pursuant to Fed. R. Civ. P. 28,

1

and will continue from day-to-day, excluding Sundays and court-recognized holidays, until the examination is completed.

PLEASE TAKE FURTHER NOTICE that we will be conducting this deposition utilizing the secure, web-based deposition option afforded by US Legal Support, or in the alternative, video teleconferencing (VTC) services offered by US Legal Support.  Also take notice that the court reporter may also be remote via one of the options above for the purposes of the proceeding, as well as swearing in the deponent, and may or may not be in the presence of the deponent.  Please contact the noticing attorney at least five (5) calendar days prior to the deposition to advise that it is your desire to appear via this remote participating means so that the necessary credentials, call-in numbers, testing and information, if necessary, can be provided to you prior to the proceedings.

**Rules for Web-Based Video Deposition:**

1. During the deposition the witness shall not communicate (orally, by chat room, email, text, etc.) with any person other than the attorney asking the questions;

2. The witness should endeavor to participate in the deposition from a quiet, well-lit, indoor location, while seated in front of a neutral background, and facing the camera being used to record the witness.

3. All persons in the room with the witness during the deposition must have Zoom video capabilities and must have the video camera directed toward them at all times during the deposition proceedings;

4. The witness shall neither read nor respond to any communication made to the witness from inside or outside the deposition location during the deposition except as to documents presented by the questioning attorney during the deposition;

5.  There is to be no communication – verbal or non-verbal – during the deposition by anyone other than the questioning attorney (or the attorney presenting the witness for an instruction not to answer a question regarding a privileged matter);

6.  No attorney or other person present in the room or outside of the room where the witness is presented is to use any communication intended to coach the witness;

7.  The witness shall not use any device (cell phone, laptops, etc.) during the deposition other than the computer used for Zoom access unless specifically requested by the questioning attorney during the normal course of the proceedings;

8.  The witness shall use a computer or device with the appropriately sized screen to allow for the witness to review documents during the remote deposition;

9.  There shall be no private chats during the deposition (the court reporter or other administrator of the proceedings shall make certain the chat function of the Zoom feature is disabled); and

10. "Zoom" includes the Zoom application or any similar software application intended to allow deposition proceedings to proceed electronically whether by audio, video, or both.

Dated:  September 17, 2020

/s/ Michael L. McGlamry
Michael L. McGlamry
POPE McGLAMRY, P.C.
3391 Peachtree Road NE, Suite 300
Atlanta, GA 30326
Ph: (404) 523-7706
Email: efile@pmkm.com

Tracy A. Finken
ANAPOL WEISS
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Ph: (215) 735-1130
Email: tfinken@anapolweiss.com

Adam Pulaski
PULASKI KHERKHER, PLLC
2925 Richmond Avenue, Suite 1725
Houston, TX 77098
Ph: (713) 664-4555
Email: adam@pulaskilawfirm.com

Robert C. Gilbert
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Ph: (305) 384-7269
Email: gilbert@kolawyers.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned herby certifies that a copy of the foregoing was served via electronic mail,

on the 17th day of September 2020 to the following, Counsel for Defendants:

Terry M. Henry
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Ph: 215-569-5644
Email: THenry@BlankRome.com

*Attorneys for Defendant Apotex Corp.*

<u>*/s/ Michael L. McGlamry*</u>
Michael L. McGlamry

5

## EXHIBIT A

## DEFINITIONS

1.      "YOU", "YOUR", or "DEFENDANTS" refers to APOTEX as defined herein unless otherwise limited, as well as all of their partners, directors, officers, employees, servants, agents, attorneys, joint venturers, licensors, third party contractors or other representatives, including all corporations and entities affiliated with Defendants.  The term "YOU" shall also include all predecessor business entities, as well as any predecessor's partners, directors, officers, employees, servants, agents, attorneys, joint venturers, licensors, third party contractors or other representatives. Additionally, the term "YOU" shall include all domestic or foreign subsidiaries or parent companies, as well as any domestic or foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, attorneys, joint venturers, licensors, or other representatives.

2.      "APOTEX" refers to Apotex Corp., Apotex, Inc., Apotex Worldwide, Apotex Affiliates, as well as all of their partners, directors, officers, employees, servants, agents, attorneys, joint venturers, licensors, third party contractors or other representatives, including all corporations and entities affiliated with Apotex Inc.  The term "APOTEX" shall also include all predecessor business entities, as well as any predecessor's partners, directors, officers, employees, servants, agents, attorneys, joint venturers, licensors, third party contractors or other representatives. Additionally, the term "APOTEX" shall include all domestic or foreign subsidiaries or parent companies, as well as any domestic or foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, attorneys, joint venturers, licensors, third party contractors or other representatives.

3.      "CONCERNING," "RELATING TO", "PERTAINING TO", or "REGARDING" includes, evidencing, discussing, explaining, embodying, analyzing, describing, characterizing, summarizing, memorializing, listing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, setting forth, referring to in any way or manner, or in any way logically or factually connecting with the matter described in the paragraph of these demands, including documents attached to or used in the preparation of or concerning the preparation for the documents.

4.      "ACTION" refers to the above-captioned lawsuit: In re: Zantac (Ranitidine) Product Liability Litigation, MDL No. 2924 (Southern District of Florida).

5.      "INCLUDING" means "including, but not limited to."

6.      "COMMUNICATION" is intended in its broadest sense and refers to the transmittal of information or a request for information (in the form of facts, ideas, inquiries, or otherwise), whether by written, oral, electronic, or other means including voice to text communications, electronic communications (including e-mail, text messages, instant messaging, blogging, microblogging, or posting on websites or other means), or other records of conversations, meetings, conferences, or other oral communications. Communications include, but are not limited to, all discussions, conversations, meetings, conferences, telephone conversations, interviews, voicemails, negotiations, agreements, understandings, letters, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchanges, however transmitted or stored, including reports, notes, memoranda, lists, agendas, and other records of communications.

7.      "DOCUMENT" or "DOCUMENTS" as used in this request shall have the broadest possible meaning and interpretation ascribed to those terms under Federal Rule of Civil Procedure 34 and the applicable Local Rules for the Southern District of Florida.  Consistent with the above definition, the term document shall include, without limitation, any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained

or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, text-messages, or any communication on any collaborative system/hub like SLACK, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes of meetings, deposition or other testimony transcripts, or communications of any type, including inter- and intra-office communications, questionnaires, surveys, charts, graphs, photographs, phonographs, films, tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into usable forms), documents maintained on, stored in, or generated on any electronic transfer or storage system, any preliminary versions, drafts, or revisions of any of the foregoing, and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of you or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of you, or the former or present directors, officers, counsel, agents, employees, partners, consultants, principals, and/or persons acting on your behalf.  DOCUMENTS includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM, and ROM, on or in any other vehicle for digital data storage and/or transmittal. Electronic data includes

information on collaborative hubs, i.e. SLACK or any other on-line cloud based collaborative resource, including, but not limited to, BOX, Dropbox, and ShareFile.  DOCUMENTS also include the file, folder tabs, and/or containers and labels appended to or associated with any physical storage device associated with each original and/or copy.

8.      Singular or plural nouns shall be construed to bring within the scope of these request the broadest answer or response possible. The masculine gender should be deemed to include the feminine or neuter, where the context or circumstances so require or permit. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

9.      The terms "AND" and "OR" shall be construed either conjunctively or disjunctively to bring within the scope of these requests the broadest answer or response possible.

10.     "RANITIDINE-CONTAINING PRODUCT(S)" means any product in which an active ingredient is ranitidine, including but not limited to Zantac or ranitidine, whether or not the product was brought to market, including any branded, unbranded (i.e. generic), prescription, and over-the-counter ("OTC") products, that was or is in development and used to treat, among other things, heartburn, gastroesophageal reflux disease, ulcers in the stomach or intestines, or Zollinger-Ellison syndrome.

11.     "STUDIES" or "STUDY" refer to any scientific test, evaluation, or observation. This includes, but is not limited to, preclinical, nonclinical and clinical trials, post-marketing, post-clinical and/or epidemiological studies, any *in vivo* and *in vitro* assays in any species, any non-biological assay (i.e., gastric fluid testing), any test designed to study the absorption, distribution, metabolism, and exception, and any computer-modeling test as well as all chromatography, spectrometry, laboratory, and/or stability testing.  This definition is not limited to completed studies, but contemplates all proposed, stopped, or incomplete tests done as well.  This definition is not limited to those tests that have been summarized into a written form.  This definition is applicable to all

studies and tests whether performed in the United States or conducted in foreign countries and is not limited by location.  This definition includes drafts, partially completed, or final forms of any related document.

12.     The term "CARCINOGENICITY" means anything related to cancer.  This includes all mechanisms of carcinogenesis or tumorigenesis, initiation, promotion, effects on cancer treatment, etc.  This is not limited to the causes of cancer but contemplates any way cancer could be affected. This definition includes, but is not limited to, cancer, carcinoma, tumors, neoplasms, dysplasia, hyperplasia and any other term or description of cancer, precancer, or markers for cancer.

13.     "NDMA" refers to N-Nitrosodimethylamine, a member of a large class of N-nitrosamines or N-Nitroso compounds.

14.     "FDA" refers to the U.S. Food and Drug Administration and any of its committees, divisions, departments, advisory councils, or any of its partners, directors, officers, employees, servants, agents, attorneys, joint venturers, licensors, third party contractors or other representatives.

15.     "cGMP" refers to the current Good Manufacturing Practices as delineated in 21 CFR Part 210, interpreting the Federal Food, Drug and Cosmetics act.

16.     "EMA" refers to the European Medicines Agency or European Agency for the Evaluation of Medicinal Products or European Medicines Evaluation Agency, including any committee, agent, officer, or person employed, designed, or empowered by the agency.

17.     "H2 BLOCKERS" refers to any drug within the class of medications that block the action of histamine at the histamine $H_2$ receptors of the parietal cells in the stomach.  These include cimetidine, ranitidine, famotidine, nizatidine, roxatidine, and lafutidine.

18.     "MARKET RESEARCH" refers to the gathering, recording and analyzing of data about physicians, customers, sales, competitors and/or the consuming public.

19.     The terms "ANY," "EACH," "THE," "EVERY," and "ALL" shall be construed to

bring within the scope of these requests the broadest answer or response possible.

## **INSTRUCTIONS**

1.      Any request for production of DOCUMENTS or information included herein refers to DOCUMENTS or information in YOUR custody, control, and possession or known to YOU, as well as in the custody, control, and possession of or known to YOUR affiliates, subsidiaries, subcontractors, present or former counsel, representatives, agents, servants, investigators, independent contractors, accountants, directors, officers, partners, employees, and/or consultants and, unless otherwise privileged, their counsel, employees, representatives, agents, servants, investigators, and consultants, including licensors.

2.      If YOU object to a discovery request as calling for information which is beyond the scope of discovery, YOU must nevertheless answer the discovery request or subpart to the extent that it is not objectionable.

3.      If any requested DOCUMENT is unavailable because it was lost or destroyed, YOU shall, after fully identifying the DOCUMENT, state:

      a.   When and where it was destroyed, or why it is otherwise unavailable;

      b.   The name and address of each person who destroyed it;

      c.   The name and address of each person who directed, approved, or knew of its destruction; and

      d.   The name and address of each person who has knowledge of such DOCUMENT.

4.      If there is a claim of privilege with respect to any DOCUMENT requested, YOU shall:

      a.   Identify in YOUR answer each DOCUMENT for which a privilege is claimed;

      b.   Describe each DOCUMENT;

      c.   Provide the date the DOCUMENT was created;

    d.  Identify the addressees and addressors;

    e.  Provide the identity and address of every person to whom a copy of the DOCUMENT was given or to whom the information contained in the DOCUMENT was communicated;

    f.  Identify the general subject matter of the DOCUMENT;

    g.  Provide a statement of the facts constituting the basis for any claim of privilege; and

    h.  Identify the specific basis on which the privilege is claimed.

5.    If YOU cannot produce DOCUMENTS for any other reason, respond to the extent possible, stating your reasons for YOUR inability to respond in full.

6.    For the convenience of the Court and the parties, please quote each discovery request in full immediately preceding the answer.

7.    Whenever a reference to a business entity appears, the reference shall mean the business entity, its predecessor companies, affiliated entities, partnerships, divisions, subdivisions, directors, officers, employees, agents, clients, or other representatives of affiliated third parties.

8.    Identify by date, title, author, recipient, subject, bates number, and page length of each DOCUMENT responsive to this request but not produced pursuant to a claim other than privilege or a claim that the materials requested constitute non-discoverable trial preparation materials and/or for any other reason, and specify why the DOCUMENT is being withheld from production.

9.    All DOCUMENTS produced in response to these Requests shall be organized and labeled either to correspond with the number of the specific request to which the DOCUMENTS are responsive or shall be produced in the order, format, and manner in which they are kept in the usual course of business.

10. All requests included herein are subject to any ESI protocol, agreement or Order in this ACTION; if the request calls for non-electronically stored information, please produce all DOCUMENTS which exist only in hardcopy in an electronic format such as a *.PDF format or equivalent.

11. In response to each request, please specifically reference which Bates numbered pages are responsive to that request. Generalized reference to categories of documents is the equivalent of no response at all. If no DOCUMENTS are responsive, please indicate such. If you are not responding to a request or any portion therein, please indicate such.

12. Estimated data should be given when exact data cannot be supplied. Any such estimated data should be designated as such and the basis, source or sources, and/or derivation of each estimate should be separately set forth.

13. Unless otherwise indicated, the Relevant Time Period for the information sought for each request is from 1977 to the present.

## DEPOSITION TOPICS
### (Corporate Structure and ESI)

1. The ownership, any transfer of ownership, mergers, acquisition or other transactions affecting the organization or, responsibilities of, or names of Defendants, during the relevant time period.

2. All persons, organizations, departments, entities, committee and/or task forces involved in the research, development, marketing, sales, and production of ranitidine-containing product(s), including but not limited to any vendors, consultants or third-party consultants or companies retained to provide services to any of these divisions.

3. All persons, organizations, departments, entities, committees and/or task forces involved in communicating with any US or foreign regulatory agency, or any Defendant, or who

is or was responsible for internal or external analysis or evaluation, regarding the following:

      a.    The Valisure findings related to NDMA and ranitidine-containing product(s);

      b.    The presence or formation of NDMA in any ranitidine-containing product(s);

      c.    Valisure's Citizen Petition filed on September 9th, 2019;

      d.    Any testing you performed to detect the presence of NDMA in ranitidine-containing product(s);

      e.    A study conducted by researchers at Memorial Sloan Kettering related to ranitidine-containing product(s) and the presence of NDMA;

      f.    Any other studies or testing performed to assess the levels of NDMA within ranitidine-containing product(s);

      g.    Any studies, testing, or analysis performed to asses the root cause of NDMA within ranitidine-containing product(s);

      h.    The Emery Pharma findings related to NDMA and ranitidine-containing product(s);

      i.    Emery Pharma's Citizen Petition filed in January 2020; and

      j.    Any studies or testing performed by YOU or others, underway or planned to determine the association between ranitidine-containing product(s)and NDMA, and/or carcinogenicity, and/or certain cancers.

    4.    The practices, protocols and/or procedures followed by Defendants to identify and preserve electronically stored information and paper-only documents, including any steps taken to identify or preserve information potentially relevant to any claims or defenses to this litigation, including any directives to any of your employees, agents, partners, independent consultants, or contractors concerning the same and any and all documents concerning those practices, protocols, and/or procedures.

14

5.      The identity of the persons involved with the identification and preservation of documents and electronically stored information responsive to paragraph 1 above.

6.      Defendants' standard document and electronic data retention or destruction policies in the ordinary course of its business, including the identity and current location of any and all documents that set forth those policies and the identity and current location of all current and former personnel who have been and/or are currently responsible for ensuring compliance with Defendants' document retention policies.

7.      Defendants' policies, practices, and procedures concerning backup of electronically stored data, as well as the preservation of any electronic media containing backups of such data and deletion of the same, including:

a.      The backup, preservation, and deletion of data contained on network servers or other network storage devices;

b.      The backup and preservation of data contained on your computers, including laptops, home computer systems, and local drives of networked computer systems and employee used mobile devices;

c.      The backup and preservation of data contained on the hard drives of computer systems no longer in active service within your company;

d.      The backup and preservation of data created or stored by or within your email, voicemail, instant message, and/or text message system;

e.      The backup of data related to any website designed or operated by you related to marketing of your ranitidine-containing products;

f.      The identity of all people with responsibility for, or the greatest knowledge of, your policies and practices regarding the foregoing items.

8.      The identity, description, contents, and general function of all Computer Databases,

15

Networks, data storage areas, software, computer programs, and Computer Systems utilized in connection with the research, design, testing, development, product launch, clinical trials, post-marketing studies, licensing, patents, Life Cycle Management, regulatory approval, regulatory submissions, quality assurance, communications with regulatory authorities including FDA and foreign regulatory bodies, management, advertising, marketing, labeling, sales, distribution, pharmacovigilance, medical coding, training, promotions, safety review, safety surveillance, financial monitoring, pricing, profitability, reimbursement, costs, or relating to or that contain or store information relating to Defendant's Zantac and/or other ranitidine products, including any changes over time. This topic includes the existence of any legacy systems, including the format of any such retained communications from legacy systems and what metadata is available in such legacy systems.

9.      Your ability to restore or produce electronic data contained on electronic backup media or legacy systems such that upon restoration it may be accessed, viewed, or exported, and the process, time, and expense associated with undertaking the restoration of electronic data in accordance with the foregoing topic.

10.      The comprehensiveness of the backups or archives of Defendants' electronic data concerning or relating to ranitidine-containing product(s), including documents, spreadsheets, electronic presentations, databases, voicemail, email, or peer-to-peer messages including text and instant messaging, including the ability to recover documents previously produced in other litigations and/or investigations which relate or pertain to the foregoing topics.

11.      The existence, identification, and description of policies, procedures, and protocols concerning the use by your employees, agents, partners, consultants, and independent contractors of your electronic data off premises, including any policies relating to telecommuting, laptop usage, or mobile devices as well as retention or preservation of such data.

12.     Identification of the devices, computer systems or platforms, including hardware, system software, and application software, as well as any backup and archive systems used in connection with such systems, used by Defendants for:

    a.    Email;

    b.    Short messaging data or peer-to-peer messaging platforms, including voicemail, text, instant messaging or other electronic communications;

    c.    E-rooms or groupware;

    d.    Computers or other electronic devices used to create or store electronic data;

    e.    Document management or document servers; cloud storage, or collaborative sites;

    f.    Websites and/or website design;

    g.    Social media platforms including but not limited to Twitter, Facebook, Instagram;

    h.    Clinical trial data capture, analysis, and reporting, including statistical analysis and reporting tools;

    i.    Database servers, including any server/database application used for or in connection with:

        i.    Adverse event monitoring, evaluation, reporting, and/or signal detection;

        ii.    Pre-Clinical and Clinical trial data capture, analysis, and reporting, including statistical analysis and reporting tools;

        iii.    Sales/physician detail monitoring/tracking;

        iv.    Sales to Wholesalers and Retailers;

        v.    Third Party Payor Marketing (including any marketing to Pharmacy Benefit Managers);

        vi.    IQVIA and/or market share data;

        vii.    Exponent and/or Plantrak data tracking drug formulary coverage;

17

viii.    Sample monitoring/tracking;

ix.    Medical education programs.

13.    The e-mail systems and peer-to-peer messaging systems, both internal and external, and software associated therewith, used by Defendants, including Defendants' practices, protocols, and/or procedures in saving, auto-deleting, backing up, and/or archiving emails, voice messages, text messages, instant messages, and other electronic communications.

14.    The practices, protocols, and/or procedures followed by Defendants in preserving documents in the possession, custody, and/or control of any agent, partner, consultant, contractor, or entity, whether acquired by Defendants or otherwise, that had any involvement with ranitidine-containing product(s).

15.    The steps undertaken to identify, retrieve, or collect potentially relevant electronically stored information with respect to this litigation.

**DEPOSITION TOPICS**
**(Jurisdiction)**

1.    Apotex's authority, by entity, to do business in the United States and each state that you have registered to do business.

2.    Your registered agents for each Apotex entity in each state in the United States.

3.    The amount of taxes each Apotex entity paid in the United States (including, but not limited to, franchise, Federal, State, Local real and personal property) for each year during the Relevant Time Period, including the basis for, entities paid and calculation of those payments.

4.    Any prosecutions in the United States for antitrust or otherwise against Apotex, including the details of: the particular Apotex entity at issue; the deferred prosecution agreement including any stipulations regarding submission to the jurisdiction of any United States court for purposes of enforcing the agreement; a copy of the charge and plea allocution by Apotex including

18

the overt acts in furtherance of the conspiracy that occurred in the United States, as referenced in the Department of Justice Office of Public Affairs May 7, 2020 release regarding Apotex's admitting to fixing the price of pravastatin.

5.      For each year during the Relevant Time Period, each United States lawsuit or sought judicial relief regarding the challenging of patents or any other form of relief, including:

      a.  The number of times you were sued or prosecuted in the United States, and provide the case style;

      b.  The number of times you brought suit as a Plaintiff in the United States, and provide the case style;

      c.  The number of lawsuits in which you have contested general jurisdiction, and provide the case style; and

      d.  The number of real or personal property tax valuations contest filed on behalf of you or related entities with any County Appraisal District, and identify the same.

## U.S. Sales, Income, and Finances

6.      The gross revenue generated from your products distributed in the United States, and specifically each state, for each year during the Relevant Time Period.

7.      Your total sales in both number of transactions and gross income within each state in the United States, for each year during the Relevant Time Period.

8.      Your bank accounts in the United States, including the names of the banks, number of accounts at each bank, type of bank account (e.g., money market, checking, etc.) and their purpose.

9.      Any United States financial institutions or services that hold, maintain, transfer or handle your stock, employee salaries, or company funds.

## Correspondence and Advertising

10.     During the Relevant Time Period, for each broadcast calendar year, identify your advertisements in the United States, including their contents, money spent on each advertisement and each state in which such advertisements they appeared or were transmitted.

11.     Your marketing documents, created or designed for United States consumers, the date of creation and publication date (if any) and the name of the particular Apotex entities that participated in the creation or design of such marketing documents.

12.     Communications, written materials, brochures, sales aids, training materials, scripts, and instructions provided to Apotex representatives who interact and communicate with health care providers, customers, or consumers in the United States.

13.     Documents, correspondence, emails sent from Apotex, Inc. to or from any of your employees in the United States related to the business activities in United States.

**Personnel and Office Locations**

14.     The locations (including addresses) for each of Apotex, Inc.'s offices or facilities located in the United States during the Relevant Time Period including the Research and Development facility in Broward County, Florida.

15.     The locations (including addresses) for each of the offices or facilities of Apotex Inc.'s located in the United States that are used weekly by your employees during the Relevant Time Period.

16.     Apotex, Inc.'s leasing (including agreements, contracts, bills and utilities paid) or ownership of real property in the United States during the Relevant Time Period.

17.     Equipment owned or leased by Apotex, Inc. of any type that is located in United States, or that may travel into or through the United States, and the location of the same by state and the products or services the equipment is used for.

18.     All of your United States mailing addresses, for each year during the Relevant Time Period, including the identity of the particular Apotex entity that received mail at each location.

19.     For each of Apotex, Inc.'s offices or facilities located in the United States during the Relevant Time Period:

a.    The general duties and responsibilities of said office/facility;

b.    The manager and/or the highest-ranking employee of said office/facility;

c.    The job title, salary, and duties of the manager and/or highest-ranking employee in said office/facility;

d.    The total number of employees of said office/facility; and

e.    The salary of each employee of said office/facility.

20.    Each time Apotex, Inc. employees travelled to United States for business, educational instruction, training, or seminars, during the Relevant Time period, including:

a.    The name of the employees involved,

b.    The date,

c.    The location,

d.    The reason for this travel, and

e.    If the purpose of the travel was training or educational instruction, state the name of the educational institute or seminar.

f.    The identity of every employee located in the United States including: name, years of employment, location, salary, and job description.

21.    Identify all sales, award, hiring, and/or recruiting events held and/or sponsored by you in the United States during the Relevant Time Period, including:

a.    The date of the event;

b.    The title of the event;

c.    The location of the event,

d.    The reason for the event,

e.    The particular Apotex entity that the employee was recruited to work for; and

f.    The names and titles of you employees present at the event.

22.    Any Apotex corporate organizational chart(s) and/or documents depicting, referencing, or pertaining to United States locations during the Relevant Time period.

## **Ranitidine-Containing Products**

23.    The total sales of Apotex's ranitidine-containing products in both number of transactions and gross income within each state in the United States, for each year during the Relevant Time Period.

24.    Documents, contracts, and insurance agreements that apply to ranitidine-containing products transported into the United States.

25.     Documents that identify, include, or describe any contract between you and other Defendants to transport ranitidine-containing products within the United States.

26.     Documents or files that identify, include, or describe any contracts and agreements to transport, sell, or label ranitidine-containing products within the United States, and the location of the same by full address.

27.     Your United States regulatory authority to sell, market, package, label, manufacture, research or develop ranitidine-containing products including any documents related to the same.

28.     Documents that identify, include, or describe any communication between you and the FDA regarding ranitidine-containing products that transported to or within the United States, including any communications regarding approval of the same and the voluntary recall of the same.

29.     The location of the personnel who answer the telephone 1-800-706-5575, 800-907-5952 and emails sent to [UScustomerservice@Apotex.com](mailto:UScustomerservice@Apotex.com), which were contained in the September 19, 2019 press release regarding Apotex's voluntary recall of ranitidine.

30.     The title, location (City, County, State and Country) and responsibilities of Jordan Berman who is the media contact on the September 19, 2019 release regarding Apotex's voluntary recall of ranitidine-containing products.

31.     Identities of the retailers of your ranitidine-containing products for each year during the Relevant Time period, including their name, each physical location where the ranitidine-containing product was sold, as well as the retailer's principle places of business.

32.     The location of any and all documents and communications pertaining to Inmar Rx Solutions' work on the ranitidine-containing products voluntary recall.

## **DOCUMENTS TO BE PRODUCED**

Deponent shall produce the following documents fourteen (14) days prior to the deposition:

1.     Current resume and curriculum vitae of deponent.

22

2.      All documents reviewed by deponent in preparing for this deposition.

3.      All documents in Deponent's possession related to the deposition's topics listed above.