**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IN RE:  ZANTAC (RANITIDINE)                                    MDL NO. 2924
PRODUCTS LIABILITY                                                  20-MD-2924
LITIGATION

                                                              JUDGE ROBIN L. ROSENBERG
                                       MAGISTRATE JUDGE BRUCE E. REINHART

_____/

## ORDER ON JURISDICTIONAL DISCOVERY

Five defendants – Ajanta Pharma Ltd., Apotex Inc., Aurobindo Pharma Ltd., Cadila Healthcare Ltd., and Wockhardt Ltd. (collectively "the Foreign Defendants") – have moved to dismiss the claims against them in this MDL for lack of personal jurisdiction.  ECF No. 2040.[1]  In support of their Motions, they submitted sworn declarations ("the Declarations").  ECF Nos. 2041-1, 2042-1, 2043-1, 2046-1, 2047-1, 2047-2. Plaintiffs moved for jurisdictional discovery. ECF No. 2094.  Judge Rosenberg granted the request in part and referred the balance to me.  ECF No. 2185.  The Foreign Defendants then sought leave to propound their own jurisdictional discovery.  ECF No. 2278.  Judge Rosenberg also referred that matter to me.  ECF No. 2297.  I have reviewed the relevant pleadings.  A lengthy oral argument was held on November 18, 2020. I am fully advised and these matters are ripe for decision.

---

[1]  All of the Foreign Defendants are named in the Master Personal Injury Complaint ("MPIC"), the Consolidated Consumer Class Action Complaint ("Class Complaint"), and the Consolidated Third Party Payor Class Complaint ("TPP") (collectively "the Complaints").  A sixth defendant, ACIC Pharmaceuticals Inc., joined in the Motion to Dismiss, but has since been dropped from the case. ECF Nos. 2230, 2246.

Plaintiffs' proposed discovery requests fall into several broad categories:

- The identities, ownership, management, revenues, and business operations of U.S.-based entities involved in the purchase, manufacture, sale, labeling, repackaging, and/or distribution of ranitidine that are directly or indirectly affiliated with, or related to, the Foreign Defendants ("the Related Entities") (Interrogatories 1, 2, 4, 5; Requests for Production 1, 2, 13)

- The Foreign Defendants' ownership of, control over, and business relationships with the Related Entities (Requests for Production 3, 4, 5, 6, 7, 8, 9, 10, 12, 15)

- The Foreign Defendants' or the Related Entities' interactions with the FDA (Interrogatories 6 and 7, Request for Production 17)

- The Foreign Defendants' activities in the United States, including revenues (Interrogatories 3, 4; Requests for Production 11, 13, 14, 16, 18, 19, 20).

The Foreign Defendants objected to all of the discovery requests, but indicated that they would not oppose some if they are modified.  ECF No. 2319-1 at 2-7.

## DISCUSSION

*1. What is the legal framework for jurisdictional discovery?*

It is no small thing to file a lawsuit that brings someone involuntarily into federal court. Prior to filing such a lawsuit, a plaintiff is required to conduct a meaningful investigation to determine that the facts permit the defendant to be sued in the court where the lawsuit will be filed. Under Federal Rule of Civil Procedure 11, the Plaintiff must conduct "an inquiry reasonable under the circumstances" to confirm that the Plaintiff's "factual contentions have evidentiary support or if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).  The pre-certification inquiry should

2

be guided, in part, by the principle that the existence of personal jurisdiction is a "fact-intensive analysis." *In re Takata Products Liability Litigation,* 396 F. Supp. 3d 1101, 1157 (S.D. Fla. 2019) (J. Moreno).

Federal Rule of Civil Procedure 8(a)(1) requires a complaint to contain "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1).   This pleading standard requires the Plaintiff to allege a *prima facie* case of jurisdiction.  That is, the plaintiff must plead sufficient facts that are entitled to the assumption of truth which, viewed in the light most favorable to the plaintiff, could lead a reasonable finder of fact to conclude that personal jurisdiction exits.  *Storms v. Hoagland Energy Group, LLC,* No. 18-CV-80334, 2018 WL 4347603, at *2 (S.D. Fla. Aug. 17, 2018) (J. Reinhart), *report and recommendation adopted,* 18-CV-80334-BB, 2018 WL 4347604 (S.D. Fla. Sept. 4, 2018) (J. Bloom).

A defendant challenges personal jurisdiction by filing a motion under Federal Rule of Civil Procedure 12(b)(2).  The challenge can be facial or factual.  "[A] motion to dismiss, without more, challenges only the facial sufficiency of the jurisdictional pleading." *Kemin Foods, L.C. v. Omniactive Health Techs., Inc.*, 654 F. Supp. 2d 1328, 1333 (M.D. Fla. 2009) (quoting *Walt Disney Co. v. Nelson,* 677 So. 2d 400 (Fla. Dist. Ct. App. 1996).  If the defendant includes affidavits or other evidence in support of the 12(b)(2) motion, the question of personal jurisdiction is resolved by reference to facts outside the four corners of the complaint.  *Id.*  The Court can, but is not required to, conduct an evidentiary hearing to resolve the personal jurisdiction issue.  *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 n.6 (11th Cir. 2004) ("[W]hen a defendant moves to dismiss for lack of personal jurisdiction, an evidentiary hearing is not required.").

3

When a factual challenge is made, the parties have a qualified right to jurisdictional discovery to develop the factual record, if they make a timely request and jurisdictional facts are genuinely in dispute. *See ACLU v. City of Sarasota,* 859 F.3d 1337, 1341 (11th Cir. 2017) ("[W]hen facts that go to the merits and the court's jurisdiction are intertwined and genuinely in dispute, parties have a 'qualified right to jurisdictional discovery.'") (citations omitted). Given the requirements of Rule 11, it should not be surprising that the scope of a plaintiff's jurisdictional discovery has limits. A plaintiff "is foreclosed from pursuing jurisdictional discovery in an attempt to marshal facts that he 'should have had – but did not – before coming through the courthouse doors." *Thompson v. Carnival Corp.,* 174 F. Supp. 3d 1327, 1339 (S.D. Fla. 2016) (J. Moore) *quoting Lowery v. Alabama Power Co.,* 483 F.3d 1184, 1216 (11th Cir. 2007). "[T]he failure of a plaintiff to investigate jurisdictional issues prior to filing suit does not give rise to a genuine jurisdictional dispute." *Yepez v. Regent Seven Seas Cruises, et. al.,* No. 10-23920-CIV, 2011 WL 3439943 at *1 (S.D. Fla. Aug. 5, 2011) (J. King). In order to justify jurisdictional discovery, the disputed facts must be material to the jurisdictional inquiry. *Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1321 (S.D. Fla. 2009) (J. Gold) ("Here, the declarations offered by the parties reflect certain contradictions. However, these contradictions must be sufficiently material to warrant jurisdictional discovery or an evidentiary hearing.").

The Eleventh Circuit's decision in *Lowery* is instructive. There, a mass tort action was brought against multiple defendants in Alabama state court. One defendant removed the case to federal court. The plaintiffs moved to remand the case to state court based on lack of subject matter jurisdiction. The District Court granted the motion. Defendants appealed to the Eleventh Circuit. Among their requests was that the case be remanded to the District Court to allow them to conduct limited jurisdictional discovery. The Eleventh Circuit affirmed the order remanding

4

the case to state court and denied the request to remand to the District Court for jurisdictional discovery.

Writing for the panel, Judge Tjoflat noted the "delicate balance struck by Federal Rules of Civil Procedure 8(a) and 11 and the policy and assumptions that flow from and underlie them." *Id.* at 1215.  The panel said:

> Rule 8(a) requires the plaintiff to set forth in the complaint the factual support for jurisdiction.  The plaintiff's factual allegations are subject to Rule 11's command – under penalty of sanctions – that the "allegations and other factual contentions have, [or are likely to have following discovery,] evidentiary support."  By filing the action in federal court, the plaintiff is making a representation that the action belongs before the court.  Because counsel is subject to Rule 11 sanctions, we assume that this representation is made in good faith and that the plaintiff has factual bases for believing that the federal court has jurisdiction to hear the claims.

*Id.* at 1216 (brackets in original) (internal citations omitted).   The *Lowery* court then discussed a hypothetical diversity case where, in response to a motion to dismiss for lack of subject matter jurisdiction, the plaintiff requested jurisdictional discovery.  It said,

> In our hypothetical diversity case, should the plaintiff request leave to conduct discovery to support its assertion that the case is properly before the court, the court would deny such a request.  In such a situation, the court would not reserve ruling on the motion to dismiss in order to allow the plaintiff to look for what the plaintiff should have had – but did not – before coming through the courthouse doors, even though the court would have the inherent power to do so.

*Id.*   It also emphasized that jurisdiction must be shown "by fact, and not mere conclusory allegation."  *Id.* at 1217.

Although *Lowery* addressed subject matter jurisdiction and a discovery request by a removing defendant, the principles it articulates are equally applicable here.  *Yepez, supra,* at *2 ("The reasoning employed by the Eleventh Circuit [in *Lowery*] is equally applicable to personal jurisdiction issues.").

To summarize the applicable law: (1) when a plaintiff files a complaint, it must possess sufficient facts to support a good-faith belief that personal jurisdiction exists over every defendant; (2) the complaint must plead sufficient non-conclusory facts to establish a *prima facie* case of personal jurisdiction; (2) a defendant may, but is not required to, assert its own counter-facts to challenge the sufficiency of the well-pled jurisdictional facts alleged in the complaint; (3) if the counter-facts create a genuine dispute with the well-pled facts in the complaint, the plaintiff has a right to limited jurisdictional discovery on those genuinely-disputed facts; (4) a party is not entitled to jurisdictional discovery solely to remedy a lack of jurisdictional facts or an insufficient pre-filing investigation.

2. *Are there well-pled, genuinely disputed jurisdictional allegations in the Complaints?*

Many of the allegations in the Complaints are too conclusory to be entitled to the assumption of truth. The TPP and Class Complaints summarily allege that the Foreign Defendants have constitutionally-sufficient contacts with every State and territory of the United States:

> 17.     In addition and/or in the alternative, Defendants and/or their agents or alter egos each have significant contacts with each of the States and territories of the United States because they designed, manufactured, tested, marketed, labeled, packaged, handled, distributed, stored, and/or sold Ranitidine-Containing Products within each of the States and territories of the United States, and/or they derived revenue from the sale of their Ranitidine-Containing Products in each of the States and territories of the United States, through the purposeful direction of their activities to the States and territories of the United States and purposeful availment of the protections of the laws of the States and territories of the United States, such that personal jurisdiction would be proper in those States and territories under traditional notions of fair play and substantial justice.

> 18.     In addition and/or in the alternative, the district to which each Plaintiff's action may be remanded upon conclusion of these pretrial proceedings pursuant to 28 U.S.C. §1407(a) will have personal jurisdiction over the Defendants who themselves or through an agent or alter ego are incorporated within that district, have a principal place of business in that district, or conduct a substantial amount of business in that district, such that they are essentially at home in that district, or who have sufficient minimum contacts with that district through the purposeful direction of their activities to that district and/or purposeful availment

6

of the protections of the laws of that district, such that personal jurisdiction would be proper in that district under traditional notions of fair play and substantial justice.

TPP ¶¶ 17-18; Class Complaint ¶¶ 16-18.  The MPIC states:

> 220.   Defendants have significant contacts with the federal judicial district identified in each Plaintiff's [Short Form Complaint] such that they are subject to the personal jurisdiction of the courts in each of those districts.
>
> 221. At all relevant times, Defendants designed, manufactured, tested, marketed, labeled, packaged, handled, distributed, stored, and/or sold ranitidine-containing products within the judicial district listed in the SFCs and targeted the consumer market within those districts.
>
> 222. At all times alleged herein, Defendants were authorized to conduct or engage in business within each of the States and Territories of the United States and supplied ranitidine containing products within each of the States and Territories of the United States. Defendants received financial benefit and profits as a result of designing, manufacturing, testing, marketing, labeling, packaging, handling, distributing, storing, and/or selling ranitidine-containing products within each of the States and Territories of the United States.
>
> 223. Defendants each have significant contacts in each of the States and Territories of the United States, such that personal jurisdiction would be proper in any of them. Defendants have derived revenue from the sale of their ranitidine-containing products in each of the States and Territories of the United States.

MPIC ¶ 220-23.  Although not contained in the jurisdictional section, the Complaints also allege that each of the Foreign Defendants "have conducted business and derived substantial revenue from their design, manufacture, testing, marketing, labeling, packaging, handling, distribution, storage, and/or sale of ranitidine-containing products within each of the States and Territories of the United States."   MPIC ¶ 144; Class Complaint ¶ 357 (class complaint); TPP ¶ 121.

All of these allegations are non-specific statements providing "labels and conclusions" or "a formulaic recitation of the elements of [jurisdiction]." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, (2007). They are "no more than conclusions, [and therefore] are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679, (2009).  Judge Rosenberg reached

the same conclusion in finding, "These allegations alone do not establish a *prima facie* case of personal jurisdiction because they do not plead facts with any specificity and are not tailored to any of the dozens of Defendants named in the Master Personal Injury Complaint, much less to any [Foreign] Defendant." ECF No.  2185 at 4.

Plaintiffs had ample time to conduct a prefiling investigation.  This MDL commenced on or about February 6, 2020.  At that point, over 100 ranitidine-related cases had already been filed nationwide.  The Complaints were not filed until June 22, 2020 – over four months later.  Nothing required Plaintiffs to sue the Foreign Defendants at that time and yet, they did.  None of the Complaints specifically identify that further investigation or discovery is necessary to develop evidentiary support for the jurisdictional allegations.  Instead, the Complaints unconditionally allege that the Foreign Defendants "and/or their agents or alter egos" had constitutionally-sufficient significant contacts, purposefully directed their activities, and purposefully availed themselves of the protections of the laws in each of the 50 United States plus U.S. Territories. Consistent with Rule 11, the Plaintiffs could not have made these kinds of broad allegations unless they had meaningful evidence to support them, including evidence of (1) the Foreign Defendants' contacts with each State or Territory, (2) the manner in which each Foreign Defendant directed their activities in those States, (3) how each Foreign Defendant availed itself of the laws of those States, and (4) the identities of entities with whom the Foreign Defendants allegedly had agency or alter ego relationships, and the nature of those relationships.  Therefore, it is reasonable for the Court to infer that the Plaintiffs have a substantial corpus of specific facts to support their jurisdictional claims against the Foreign Defendants. *See Lowery,* 483 F.3d 1184, 1216 (11th Cir. 2007).

Yet, Plaintiffs chose not to plead any of those specific facts in the Complaints, which collectively comprise over 1600 pages and over 7000 paragraphs.[2] A careful review of these voluminous pleadings reveals a paucity of well-pled jurisdictional facts, none of which are genuinely disputed:

- As Judge Rosenberg noted, the Complaints plead that four of the Foreign Defendants hold ANDAs for Ranitidine Products. Class Complaint, ¶ 447; MPIC ¶ 251. The Foreign Defendants do not dispute that they hold these ANDAs.

- The Complaints contain allegations about the place of incorporation and principal place of business of the Foreign Defendants. The Foreign Defendants do not dispute these facts.

- The Complaints allege that Cadila Healthcare Ltd. has a subsidiary in the United States named Zydus Pharmaceuticals (USA) Inc. and that the two companies operate under the trade name "Zydus-Cadila." TPP ¶ 119; MPIC ¶144; Class Complaint ¶ 355. Similarly, the Complaints allege that Wockhardt Ltd. and Aurobindo Pharma Ltd each have two U.S. subsidiaries. Class Complaint ¶ 351; MPIC ¶ 138; TPP ¶ 115 (Wockhardt); TPP ¶ 62; Class Complaint ¶ 296; MPIC ¶ 63 (Aurobindo). The Complaints also allege that Ajanta and Apotex each has a U.S. subsidiary. TPP ¶ 48 (Ajanta); MPIC ¶ 43 (Ajanta); Class Complaint ¶ 279 (Ajanta). TPP ¶ 57 (Apotex); MPIC ¶ 57 (Apotex); Class Complaint ¶ 291 (Apotex). The Foreign Defendants do not dispute these facts.

---

[2] By way of comparison, a quick survey of amazon.com shows that a leather-bound edition of the Complete Works of William Shakespeare is 1392 pages, the hardcopy classic edition of War and Peace is 1296 pages, and the classic edition of Moby Dick is 736 pages.

- After lumping the Foreign Defendants together with their U.S. subsidiaries, the Complaints allege that each parent and subsidiary collectively purchased, repackaged and/or relabeled Ranitidine.; but do not allege where these actions occurred or which entity within the collective did them. TPP ¶¶ 49 (Ajanta), 58 (Apotex), 63 (Aurobindo), 116 (Wockhardt), 120 (Zydus-Cadila); MPIC ¶¶ 44 (Ajanta), 58 (Apotex), 64 (Aurobindo), 139 (Wockhardt), 143 (Zydus-Cadila); Class Complaint ¶¶ 280 (Ajanta), 292 (Apotex), 297 (Aurobindo), 352 (Wockhardt), 356 (Zydus-Cadila).

So, what the Plaintiffs are really arguing is that they need jurisdictional discovery to respond to the Foreign Defendants' denials that (1) the U.S. subsidiaries are agents or alter egos of the Foreign Defendants, (2) the Foreign Defendants have direct contacts with the United States, (3) the Foreign Defendants targeted their activities to particular States. These denials do not genuinely dispute well-pled facts in the Complaints.

On this point, Judge King's opinion in *Yepez* is instructive. There, plaintiff brought a maritime personal injury action against his employer. The defendant corporation moved to dismiss for lack of personal jurisdiction. It asserted that it was not registered to do business in Florida, did not do business in Florida, did not have a registered agent for service of process in Florida, was not owned or controlled by citizens of Florida, and had not committed any tort or breach of contract in Florida. 2011 WL 3439943. at *2. Plaintiff sought jurisdictional discovery to respond to these denials. Citing the Eleventh Circuit's opinion in *Lowery,* Judge King stated, "[T]hese are the types of facts plaintiffs are expected to investigate prior to filing suit. Because the typical plaintiff is expected to be able to allege these facts in good faith without the benefit of discovery, [no jurisdictional discovery was warranted.]" *Id.* So too, here.

*3. Can the Plaintiffs take jurisdictional discovery from Cadila?*

The short answer is, "No."   Aside from the same conclusory allegations that Judge Rosenberg already found did not establish a *prima facie* case, the Complaints merely allege that Cadila has a U.S.-based subsidiary.  Cadila does not dispute this fact.  Even viewed in the light most favorable to Plaintiffs, there is no *prima facie* case pled, nor is there a genuinely disputed well-pled jurisdictional fact.  Plaintiffs may not take jurisdictional discovery from Cadila.

*4. What jurisdictional discovery should be authorized for Plaintiffs?*

Even where an entitlement to jurisdictional discovery exists, the Court retains broad discretion in setting the scope of that discovery.   Federal Rule of Civil Procedure 26(b)(1) makes no distinction between jurisdictional discovery and merits discovery.  Fed. R. Civ. P. 26(b)(1); *see ACLU v. City of Sarasota*, 859 F.3d at 1340 ("Indeed, the Federal Rules of Civil Procedure expressly contemplate involvement by the parties in the discovery of relevant nonprivileged matter, which jurisdictional discovery undoubtedly is.") (internal citation omitted).  In both cases, a party "may obtain discovery regarding nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).

In her referral order, Judge Rosenberg directed that any jurisdictional discovery should be "limited and narrowly tailored." ECF No.  2185 at 5. She also noted, "Here, Plaintiffs have moved for jurisdictional discovery, which they maintain is necessary to enable them to rebut Moving Defendants' declarations." *Id.* at 6. As discussed above, Plaintiffs are not entitled to discovery to develop or support a new theory of personal jurisdiction.  Nor are they entitled to discovery solely to buttress the conclusory jurisdictional allegations in the Complaints.

The Foreign Defendants lodge an overall objection to the time frame of the proposed discovery.  Plaintiffs seek jurisdictional discovery for "the period beginning (1) one year prior to

the date [the Foreign Defendants] or any Related Entity first submitted an ANDA to the FDA for any Ranitidine-Containing Product through and including April 1, 2020."   The Complaints allege (and the Declarations do not dispute) that the Foreign Defendants first acquired an ANDA for Ranitidine on the following dates:

| | |
|---|---|
| Ajanta Pharma Ltd. | 2018 |
| Apotex Inc. | 1997 |
| Aurobindo Pharma Ltd. | 2010 |
| Wockhardt, Ltd. | 1998 |

Therefore, the Plaintiffs seek discovery from Apotex Inc. for a 23-year period, from Wockhardt Ltd. for a 22-year period, from Aurobindo Pharma Ltd. for a 10-year period, and from Ajanta Pharma Ltd. for a 2-year period.  Two years for Ajanta Pharma Ltd. is reasonable and proportional to the needs of the case; the time periods for the other Foreign Defendants are not proportional. Almost all States (including Florida) impose a statute of limitations of four years or less on personal injury claims, so that time period is a reasonable and proportional limit for jurisdictional discovery.  Unless otherwise stated, a four-year time period shall apply to the discovery authorized by this Order.

Considering Judge Rosenberg's prior findings, the Foreign Defendants' objections, and the other factors discussed above, the Court rules on the Foreign Defendants' objections to the proposed discovery as follows:

- Interrogatory 1:  Objection sustained in part.  Foreign Defendants shall provide a list of any U.S.-based business entity that is a parent or subsidiary of the Foreign Defendant, or is under common ownership or control with the Foreign Defendant.

- Interrogatory 2:  Objection sustained in part.  Foreign Defendants shall provide the name, date of incorporation, principal place of business, and a generic description of the nature of the corporate relationship ("parent," "wholly-owned subsidiary," "indirect subsidiary," "joint venture," or similar terms) between the Foreign Defendants and the U.S.-based subsidiaries identified in the Complaints.

- Interrogatory 3:  Objection sustained in part.  Foreign Defendants shall provide a list and job description for Foreign Defendants' employees who are located in the United States or perform job duties in the United States, but only to the extent the employee is involved in importation, marketing, sales, or distribution of ranitidine-containing products.

- Interrogatory 4:  Objection sustained.

- Interrogatory 5:  Objection sustained in part.  Foreign Defendants shall identify, and provide the location of, all U.S.-based entities to whom they directly sold or directly shipped ranitidine-containing products.

- Interrogatory 6:  Objection sustained.

- Interrogatory 7: Objection sustained.

- Requests for Production 1-3:  Objection sustained in part.  Foreign Defendants shall respond with information as it exists currently.

- Requests for Production 4-6, 8-11:  Objection sustained.

- Request for Production 7:  Objection sustained in part. The Request for Production shall extend only to employees who are involved in the importation, marketing, sales, or distribution of ranitidine-containing products.

- Request for Production 12:  Objection sustained in part.  The Foreign Defendants shall provide responsive insurance information only insofar as it provides coverage for claims asserted in this MDL.

- Request for Production 13:  Objection sustained.  The otherwise-proper portion of this Request for Production is cumulative to Interrogatory 5.  The Foreign Defendants may provide documents in lieu of the information responsive to Interrogatory 5.

- Requests for Production 14-20:  Objections sustained.

Plaintiffs are not authorized at this time to conduct any jurisdictional depositions.

5. *Defense Jurisdictional Discovery*

The Foreign Defendants seek jurisdictional discovery to try to determine whether a Plaintiff consumed or paid for the Foreign Defendant's product.  ECF No. 2278. As more fully articulated at oral argument, their jurisdictional challenge essentially goes as follows: (1) specific personal jurisdiction only exists if there is a nexus between the cause of action and the forum, (2) the cause of action alleges personal injury from consuming the Foreign Defendant's product or economic injury from paying for it, so (3) if Plaintiffs never bought or consumed a Foreign Defendant's product, there cannot be specific jurisdiction.  The Foreign Defendants say they are not seeking "proof of causation or even proof of injury on any level."  ECF No. 2278 at 4.  Rather, they ask for evidence only that each Plaintiff either consumed or paid for their product.  *Id.* Plaintiffs respond (1) that Defendants request is belated and merely a "tit-for-tat" litigation tactic and (2) the product-identification issue is inextricably intertwined with the merits, and therefore not eligible for jurisdictional discovery.  ECF No. 2293.

I arguably need not resolve these arguments because the Foreign Defendants did not assert this jurisdictional theory in their Motion to Dismiss.  *See In re Egidi*, 571 F.3d 1156, 1163 (11th

Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."); *EcoMed LLC v. Asahi Kasei Med. Co. Ltd.,* No. 17-61360-CIV, 2018 WL 4194079 at *2 n. 3 (S.D. Fla. July 26, 2018) (J. Reinhart)*, report and recommendation adopted*, 0:17-CV-61360, 2018 WL 4193643 (S.D. Fla. Aug. 14, 2018) (J. Rosenberg).  Nevertheless, for completeness of the record, I will address the merits.

First, I reject Plaintiffs' "tit-for-tat" argument, which implicitly alleges that the Foreign Defendants are seeking discovery in bad faith.  I find credible, and accept, the Foreign Defendants' argument that they initially believed (and argued) that there should not be any jurisdictional discovery, but that once Judge Rosenberg authorized the plaintiffs to have jurisdictional discovery (which would create a more expansive factual record), the Plaintiffs changed their position based on changed circumstances.  Plaintiffs have not cited any authority for the proposition that (absent bad faith, annoyance, or embarrassment) a party's motive for seeking discovery is relevant.

Second, I reject Plaintiffs argument that the request for defense jurisdictional discovery is improper merits discovery and/or is subsumed within the Article III standing motions.  In their standing motion, the Foreign Defendants allege that there is no cognizable case or controversy between them and the named plaintiffs because any injury suffered by the plaintiffs is not fairly traceable to these defendants.  ECF No. 1630, 2129.  As clarified during oral argument, here, the Foreign Defendant allege that personal jurisdiction is lacking because the named plaintiffs have not identified any plaintiff that used, or paid for, the Foreign Defendants' products.

Personal jurisdiction is related to, but distinct from standing.  Both relate to the Court's ability to exercise its authority.  Article III standing relates to whether there is a cognizable case or controversy between the parties.  The relevant inquiry is whether the plaintiff has suffered an injury-in-fact that is fairly traceable to the defendant's conduct and can be remedied by action of

the Court.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).    In the absence of a

cognizable case or controversy, the Court cannot exercise the Judicial Power of the United States

over the parties.  Personal jurisdiction is a concept of due process.  It relates to whether a particular

court can properly exercise its authority over a particular defendant.  What is known as "specific

personal jurisdiction" requires a nexus between the plaintiff's claim and the jurisdiction where the

lawsuit is brought.  Even though both standing and personal jurisdiction relate to the Court's

authority to adjudicate a claim, they are not congruent.  A plaintiff may have Article III standing

to sue a particular defendant, but the chosen forum may lack personal jurisdiction.  Conversely, a

defendant may be properly sued in a particular forum but the plaintiff may lack standing to bring

the suit.  In both cases, the proceedings cannot go forward in that forum, but the remedy may be

different.  Hence, the fact that there are two pending motions that challenge this Court's authority

to adjudicate the claims against the Foreign Defendants is not a basis to deny the Foreign

Defendants jurisdictional discovery.

Plaintiffs conceded at oral argument that, in appropriate circumstances, the Court has

discretion to authorize a defendant to take jurisdictional discovery in support of a 12(b)(2) motion.

As the Eleventh Circuit said in *City of Sarasota*, "[W]hen facts that go to the merits and the court's

jurisdiction are intertwined and genuinely in dispute, *parties* have a 'qualified right to

jurisdictional discovery.'" 859 F.3d at 1341 (emphasis added).   Notably, the Court of Appeals

used the term "parties", not "plaintiffs."  Similarly, Rule 26(b)(1) states that "parties" may obtain

discovery.  It makes no distinction between plaintiffs and defendants.  At least one member of this

Court has allowed a defendant to have jurisdictional discovery as a matter of equity.  *See, e.g.*

*Vorbe v. Morisseau*, No. 14-20751-CIV, 2014 WL 12637924 at *5 (S.D. Fla. Aug. 27, 2014) (J.

Goodman).

Applying the same jurisdictional discovery principles to the Foreign Defendants as to the Plaintiffs, the request for defense jurisdictional discovery is denied.  The Complaints do not contain any well-pled allegations that an identifiable Plaintiff used or paid for the Foreign Defendants' products.  The Declarations do not specifically deny it.  Whatever relevance (if any) this fact may have for the merits determination, there is no genuinely disputed issue upon which to conduct jurisdictional discovery.

<u>**CONCLUSION**</u>

**WHEREFORE**, it is **ORDERED** that:

1.  Plaintiffs' request to take jurisdictional discovery from Cadila Healthcare Ltd. is **DENIED**.

2.  The Foreign Defendants' objections to the Plaintiffs' Jurisdictional Requests for Production and Interrogatories are **SUSTAINED IN PART and OVERRULED IN PART**.  On or before **December 15, 2020**, the Foreign Defendants shall respond to the Plaintiffs' jurisdictional discovery requests as narrowed by this Order.

3.  Plaintiffs' request for jurisdictional discovery depositions is **DENIED WITHOUT PREJUDICE** to renew after the Foreign Defendants respond to the Interrogatories and Requests for Production.

4.  The Foreign Defendants' request for jurisdictional discovery is **DENIED.**

**DONE and ORDERED** in Chambers this 24th day of November, 2020, at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE