## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

IN RE:  ZANTAC (RANITIDINE)                                    MDL NO. 2924
PRODUCTS LIABILITY                                             20-MD-2924
LITIGATION

JUDGE ROBIN L. ROSENBERG
MAGISTRATE JUDGE BRUCE E. REINHART

_____/

**THIS DOCUMENT RELATES TO:**

*Nathan Gibbons v. GlaxoSmithKline, et al.*            9:21-cv-80236-RLR

## MANUFACTURER DEFENDANTS' OPPOSITION
## TO PLAINTIFF'S MOTION TO REMAND

i

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ..................................................................................................................... 4

      I.      Plaintiff Fails to Plead a Cognizable Negligence Claim Against the Retailer
Defendants ......................................................................................................... 4

              A.      California Does Not Impose a Duty on Retailers to Discover Latent
Defects ................................................................................................... 4

              B.      Plaintiff's Conclusory Pleading Cannot Establish a Viable Claim Against
the Retailer Defendants ............................................................................. 7

              C.      Should the Court Find the Negligence Claim Viable, the Court Should
Sever the Claim As Improperly Joined with Claims Against the
Manufacturer Defendants......................................................................... 10

      II.     Plaintiff Fails to Plead Cognizable Strict Liability Claims Against the Retailer
Defendants ....................................................................................................... 14

CONCLUSION................................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Ambriz v. CVS Pharmacy, Inc.*,
   2020 WL 1660018 (E.D. Cal. Apr. 3, 2020) ..................................................... 6

*Berber v. Wells Fargo Bank, N.A.*,
   2018 WL 10436232 (S.D. Fla. May 2, 2018) ................................................. 10

*Black v. Cable News Network, Inc.*,
   2016 WL 4443622 (S.D. Fla. July 19, 2016) ................................................. 14

*Burgess v. Montgomery Ward & Co.*,
   264 F.2d 495 (10th Cir. 1959) ......................................................................... 7

*Cabral v. Ralphs Grocery Co.*,
   51 Cal. 4th 764 (2011) ...................................................................................... 7

*Calloway v. Baker Furniture Co.*,
   1995 WL 912708 (N.D. Ala. Feb. 16, 1995) ................................................... 8

*Cooke-Bates v. Bayer Corp.*,
   2010 WL 3984830 (E.D. Va. Oct. 8, 2010) ............................................. 12, 13

*Crowe v. Coleman*,
   113 F.3d 1536 (11th Cir. 1997) ....................................................................... 4

*Doe v. Roman Catholic Archbishop of Los Angeles*,
   247 Cal. App. 4th 953 (2016) .......................................................................... 8

*Drum v. San Fernando Valley Bar Ass'n*,
   182 Cal. App. 4th 247 (2010) .......................................................................... 8

*Dudley v. Eli Lilly & Co.*,
   778 F.3d 909 (11th Cir. 2014) ....................................................................... 10

*Eagle-Picher Indus., Inc. v. Balbos*,
   604 A.2d 445 (Md. 1992) ................................................................................ 7

*Eamer v. Tenet Healthcare Corp.*,
   2005 WL 1125056 (Cal. Ct. App. May 13, 2005) ........................................... 9

*Ferrari v. Nat. Partners, Inc.*,
   2016 WL 4440242 (N.D. Cal. Aug. 23, 2016) ................................................ 6

*Florence v. Crescent Res., LLC*,
   484 F.3d 1293 (11th Cir. 2007) ..................................................................... 15

*Garza v. Endo Pharm.*,
    2012 WL 5267897 (C.D. Cal. Oct. 24, 2012) ..................................................... 7

*Gobin v. Avenue Food Mart*,
    178 Cal. App. 2d 345 (1960) ....................................................................... 5

*Gonzalez v. J.C. Penney Corp.*,
    2005 WL 5304795 (S.D. Fla. Nov. 7, 2005) ................................................... 13

*Grancare, LLC v. Thrower by & through Mills*,
    889 F.3d 543 (9th Cir. 2018) ...................................................................... 10

*Greene v. Wyeth*,
    344 F. Supp. 2d 674 (D. Nev. 2004) ............................................................ 11

*Harris v. Cellco Partnership*,
    2016 WL 231191 (M.D. Fla. Jan. 15, 2016) ................................................... 8

*Hensley-Maclean v. Safeway, Inc.*,
    2014 WL 1364906 (N.D. Cal. Apr. 7, 2014) ................................................... 6

*Illoominate Media, Inc. v. CAIR Fla., Inc.*,
    --- F. App'x. ---, 2020 WL 7703141 (11th Cir. Dec. 29, 2020) ....................... 2, 8

*In re Guidance Implantable Defibrillators Prods. Liab. Litig.*,
    2007 WL 5377783 (D. Minn. June 4, 2007) .................................................. 11

*In re Stryker Rejuvenate & ABG II Hip Implant Prods. Liab. Litig.*,
    2013 WL 6511855 (D. Minn. Dec. 12, 2013) ................................................ 11

*In re Zantac (Ranitidine) Prod. Liab. Litig.*,
    2020 WL 4572675 (S.D. Fla. Aug. 7, 2020) .................................................. 3

*In re Zantac (Ranitidine) Prod. Liab. Litig.*,
    2020 WL 7864585 (S.D. Fla. Dec. 31, 2020) ........................................ *passim*

*In re Bard IVC Filters Prod. Liab. Litig.*,
    2016 WL 2347430 (D. Ariz. May 4, 2016) .................................................... 12

*Ingram v. CSX Transp., Inc.*,
    146 F.3d 858 (11th Cir.1998) ..................................................................... 10

*Joseph v. Baxter Int'l Inc.*,
    614 F. Supp. 2d 868 (N.D. Ohio 2009) ........................................................ 11

*Kelly v. Aultman Physician Ctr.*,
    2013 WL 2358583 (N.D. Ohio May 29, 2013) .............................................. 12

*Legg v. Wyeth*,
    428 F.3d 1317 (11th Cir. 2005) ................................................................ 1, 4

*M.W. v. Ford Motor Co.*,
    2015 WL 1311029 (M.D. Fla. Mar. 24, 2015) ....................................... 11, 12

*Manti v. Gunari*,
    5 Cal. App. 3d 442 (1970) .............................................................................. 9

*Mayfield v. London Women's Care, PLLC*,
    2015 WL 3440492 (E.D. Ky. May 28, 2015) ............................................... 11

*McElroy v. Hamilton Cty. Bd. of Educ.*,
    2012 WL 12871469 (E.D. Tenn. Dec. 20, 2012)......................................... 12

*Meyer v. Rich's Inc.*,
    12 S.E.2d 123 (Ga. App. 1940)...................................................................... 7

*Rahn v. Gerdts*,
    455 N.E.2d 807 (Ill. App. Ct. 1983) .............................................................. 7

*Rodriguez v. PCH Logistics, Inc.*,
    2006 WL 3073002 (Cal. Ct. App. Oct. 26, 2006).......................................... 9

*Sears, Roebuck & Co. v. Marhenke*,
    121 F.2d 598 (9th Cir. 1941) ..................................................................... 1, 5

*Stone v. Zimmer, Inc.*,
    2009 WL 1809990 (S.D. Fla. June 25, 2009) ..................................... 2, 11, 12

*Sullivan v. Calvert Mem'l Hosp.*,
    117 F. Supp. 3d 702 (D. Md. 2015)............................................................. 11

*Sutton v. Davol, Inc.*,
    251 F.R.D. 500 (E.D. Cal. 2008) ................................................................ 11

*Tapscott v. MS Dealer Serv. Corp.*,
    77 F.3d 1353 (11th Cir. 1996) .................................................................... 13

*Tourte v. Horton Mfg. Co.*,
    108 Cal. App. 22 (1930) ................................................................................ 5

*Zee Med. Distrib. Ass'n, Inc. v. Zee Med., Inc.*,
    23 F. Supp. 2d 1151 (N.D. Cal. 1998).......................................................... 13

*Ziglar v. E. I. Du Pont De Nemours & Co.*,
    280 S.E.2d 510 (N.C. App. 1981).................................................................. 7

**Statutes**

28 U.S.C. § 1332 .................................................................................................................... 1

28 U.S.C. § 1407 .................................................................................................................. 14

**Rules**

Fed. R. Civ. P. 20 ................................................................................................................ 14

Fed. R. Civ. P. 21 ...................................................................................................... 2, 10, 14

Defendants GlaxoSmithKline, LLC, GlaxoSmithKline, PLC, Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim USA Corporation, Sanofi US Services Inc., and Sanofi-Aventis U.S. LLC (collectively, "Manufacturer Defendants"), by and through undersigned counsel, submit this Opposition to Plaintiff's Motion to Remand.

## INTRODUCTION

The Eleventh Circuit has emphasized that "Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in Federal court." *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005) (citing *Wecker v. Nat'l Enameling Stamping Co.*, 204 U.S. 176 (1907)).  This action names three California-based retailers—Safeway, Inc., Safeway Health, Inc., and Grocery Outlet (collectively, the "Retailer Defendants")—as just such a device to thwart the exercise of federal jurisdiction and to seek refuge in a state court forum that Plaintiff considers favorable.  But because Plaintiff's claims against the Retailer Defendants cannot succeed, they are fraudulently joined and the Court has diversity jurisdiction, *see* 28 U.S.C. § 1332(a)(1), over Plaintiff's claims against the Manufacturer Defendants.

*First*, California law directly forecloses Plaintiff's negligence claim against the Retailer Defendants.  Plaintiff cannot dispute that long-settled precedent holds that a retailer "who purchases and sells an article in common and general use, in the usual course of trade, without knowledge of its dangerous qualities is not under duty to exercise ordinary care to discover whether it is dangerous or not."  *See Sears, Roebuck & Co. v. Marhenke*, 121 F.2d 598, 600 (9th Cir. 1941) (applying California law).  Contrary to Plaintiff's argument, his negligence theory—that the Retailer Defendants had a duty to independently identify that NDMA could form in ranitidine and to take steps to guard against that possibility—runs directly counter to this established precedent.  Such a theory would require every corner store that sells over-the-counter products to extensively

research every pharmaceutical product on its shelves to ferret out defects no one else has identified. That cannot be "ordinary care" for a retailer under any reading of California law.

Nor can Plaintiff's bare and conjectural averments that the Retailers Defendants stored and transported ranitidine at high temperatures at some undisclosed time and place defeat federal jurisdiction. *See Illoominate Media, Inc. v. CAIR Fla., Inc.*, --- F. App'x ---, 2020 WL 7703141, at \*2 (11th Cir. Dec. 29, 2020) (affirming finding of fraudulent joinder where the allegations were "speculative, and, without more, conclusory"). Plaintiff offers no factual basis for how he could possibly know what storage and transport conditions exist inside the grocery stores he named as defendants.

***Second***, Plaintiff's storage and transport claim also cannot defeat federal jurisdiction because it is legally and factually distinct from the product liability claims asserted against the Manufacturer Defendants. Even if it were a viable negligence claim under California law, the Court should not permit separate claims relating to ***post***-manufacture storage and transport conditions to deprive the Manufacturer Defendants of the federal forum to which they are entitled, and should sever and remand these claims only. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms . . . sever any claim against a party."); *Stone v. Zimmer, Inc.*, 2009 WL 1809990, at \*5 (S.D. Fla. June 25, 2009) (denying motion to remand and severing and remanding claims against non-diverse defendants under Rule 21).

***Third***, Plaintiff's strict liability claims against the Retailer Defendants fare no better. As this Court squarely held, such claims against retailers—who have no control over labeling, design, or manufacturing of a pharmaceutical—are preempted by federal law. *See In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2020 WL 7864585, at \*13 (S.D. Fla. Dec. 31, 2020). Trying to avoid that holding, Plaintiff creates from whole-cloth a novel strict liability claim based on a

2

"manufacturing" defect even though the Retailer Defendants never manufactured the product. Unsurprisingly, Plaintiff cites no California precedent—because there is none—that extends strict liability to a non-manufacturing defect.

## BACKGROUND

On May 11, 2020, Plaintiff filed an action in state court in Alameda County.[1]  Alleging injuries from ranitidine use, Plaintiff brought product liability claims against the Manufacturer Defendants (who are all diverse from Plaintiff) and a negligence claim against the Retailer Defendants (who are all non-diverse from Plaintiff).  The Manufacturer Defendants removed the case to the Northern District of California, which stayed the case pending transfer to this MDL. Following transfer, this Court twice denied Plaintiff's request for leave to file a motion to remand, explaining that a remand motion would be considered after the Court decided overlapping issues raised in Defendants' motions to dismiss the master complaints filed by MDL Plaintiffs' Lead Counsel.  *See In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2020 WL 4572675 (S.D. Fla. Aug. 7, 2020), *reconsideration denied*, 2020 WL 6544627 (S.D. Fla. Nov. 6, 2020).

Rather than wait for the Court's ruling, on November 24, 2020, Plaintiff attempted an end-run.  He first voluntarily dismissed his case without prejudice in the MDL.  Notice of Voluntary Dismissal, *Gibbons v. GlaxoSmithKline LLC*, No. 20-cv-81108 (RLR) (Nov. 24, 2020), ECF No. 24.  He then promptly re-filed the case in state court, along with a motion seeking an expedited trial within 120 days.  The new complaint largely tracks the prior version, but adds strict liability claims against the Retailer Defendants based on a failure-to-warn and a "distribution" defect.  *See* Compl. ¶¶ 285–312.  On January 19, 2021, the Manufacturer Defendants removed Plaintiff's re-filed case to the Northern District of California.  The parties stipulated to transfer the case to the

---

[1] Counsel for Plaintiff filed forty-one other complaints—which largely mirror Plaintiff's Complaint—in May 2020.

MDL, and on February 2, 2021, the Court granted Plaintiff leave to file a remand motion.  *See* ECF Nos. 2732, 2740.

In the meantime, on December 31, 2020, the Court dismissed with prejudice the design and labeling claims in the MDL Master Complaints against various retailer defendants as preempted by federal law.  *See In re Zantac*, 2020 WL 7864585, at \*13.  With respect to the negligence claim, the Court expressed significant concerns, including the "individualized and fact-specific" nature of any negligent storage and transport claim and whether the "high-temperature allegation [is] consistent with the Plaintiffs' core theory of the case."  *Id.* at \*16–19.  Nevertheless, "to the extent it is possible to do so," the Court granted the MDL Plaintiffs leave to re-plead a negligence claim consistent with the order.  *Id.* at \*19; *id.* at \*18 ("[S]hould the Plaintiffs proceed with this [negligent overheating] theory, the Plaintiffs should address the Court's concerns.").

## ARGUMENT

### I.     Plaintiff Fails to Plead a Cognizable Negligence Claim Against the Retailer Defendants

#### A.     California Does Not Impose a Duty on Retailers to Discover Latent Defects

For diversity jurisdiction purposes, a federal court may disregard the citizenship of a defendant that has been fraudulently joined.  *See Legg*, 428 F.3d at 1322–23.  A defendant can establish fraudulent joinder by showing that "there is no possibility the plaintiff can establish a cause of action against the resident defendant."  *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).  Here, Plaintiff's negligence claim cannot succeed because retailers have no duty under California law to discover and guard against latent defects in products they merely stock on their shelves.

As the Ninth Circuit has explained, "a dealer who purchases and sells an article in common and general use, in the usual course of trade, without knowledge of its dangerous qualities ***is not***

4

***under duty*** to exercise ordinary care to discover whether it is dangerous or not." *Sears*, 121 F.2d at 600 (emphasis added); *see also Gobin v. Avenue Food Mart*, 178 Cal. App. 2d 345, 347 (1960) (rejecting *res ipsa loquitur* instruction against retailer in product defect case because "unless the law is to impose a duty of inspection to discover latent defects upon the wholesaler and retailer of packaged articles in which they deal we fail to see where any inference of negligence could be drawn against them"); *Tourte v. Horton Mfg. Co.*, 108 Cal. App. 22, 24 (1930) (affirming the holding of the Superior Court of Alameda County that the seller of a washing machine had no duty to examine the product where there was a latent defect unknown to the seller).

In *Sears*, for example, after suffering burns from hot water leaking from a rubber hot water bag, the plaintiff sued the retailer that sold him the product. 121 F.2d at 599. The plaintiff argued that the bag was defective because the faulty method of construction of the stopper and the socket led to a slight leakage of water around the stopper. *Id.* The Ninth Circuit explained that "[t]he question of whether or not the [retailer] should have known of such defects depends upon whether or not the vendor who sells goods manufactured by another is obligated to inspect the goods to determine whether or not they are defective." *Id.* at 600. It held that the retailer had no duty of care to inspect the product where the defects "could only be discovered by such investigations as were made by the experts, or could have been ascertained by the simple test of filling the bag with water and inverting it after the stopper had been screwed into its socket." *Id.*

None of Plaintiff's arguments save his claim from dismissal under California's rule against retailer negligence liability for latent defects. ***First,*** Plaintiff is wrong that the danger here was not latent. To the contrary, creating a negligence-based duty to identify the presence of NDMA in ranitidine would impose an even more onerous and specialized obligation than the "simple test" of a hot water bottle the *Sears* court rejected. Indeed, Plaintiff's Complaint acknowledges that the

FDA—the federal agency overseeing prescription drugs—did not discover this defect for almost forty years and made the finding only after extensive laboratory testing. *See, e.g.*, Compl. ¶¶ 66, 70, 74, 79. It defies common sense that every California pharmacy and retailer has the obligation to scour and analyze the body of medical literature for the dozens of pharmaceutical products they stock to second-guess FDA approval determinations. This duty would apply equally to every "mom and pop" store, gas station, and workplace cafeteria that happens to carry over-the-counter medications across the state for each of the scores of pharmaceutical products they sell. If the risk of NDMA in ranitidine is not a latent defect, it is unclear what kind of defect would ever qualify.[2]

**Second**, there is no merit to Plaintiff's argument that *Sears* is inapplicable because the Retailer Defendants contributed to NDMA formation through their storage of ranitidine. Pl.'s Mot. at 8–9. This circular argument assumes the Retailer Defendants had a duty in the first instance to identify and guard against the risk of NDMA formation. *But see supra* at p. 5. Unsurprisingly, Plaintiff cites no case finding a retailer negligent for unwittingly contributing to a latent defect.[3]

---

[2] Even if the retailers did have some duty to consult medical literature (and they do not), ***none*** of the pre-2019 medical literature cited in the Complaint examined whether high temperatures or humidity could cause NDMA to accumulate in ranitidine. *See* Compl. ¶¶ 117–126 (the studies examined ranitidine "exposed to human gastric fluid" or "acid conditions"—not high temperatures). The Complaint, in fact, acknowledges that the early "studies did ***not*** appreciate the full extent of NDMA formation risk for ranitidine." *Id.* ¶ 127 (emphasis added).

[3] None of Plaintiff's cited cases impose any duty on retailers to discover latent defects. For example, *Ambriz v. CVS Pharmacy, Inc.*, 2020 WL 1660018 (E.D. Cal. Apr. 3, 2020), involves a failure to mix a prescription in accordance with a doctor's order—a far cry from liability for failure to discover a latent product defect. Plaintiff's other cases impose negligence liability on retailers for conduct that is similarly far afield from the issues in this case. *See, e.g.*, *Ferrari v. Nat. Partners, Inc.*, 2016 WL 4440242 (N.D. Cal. Aug. 23, 2016) (improper drafting of recall notice); *Hensley-Maclean v. Safeway, Inc.*, 2014 WL 1364906 (N.D. Cal. Apr. 7, 2014) (failure to notify consumers about recalled food item); *Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 768 (2011) (automobile crash involving grocery store truck); *Garza v. Endo Pharm.*, 2012 WL 5267897, at *2 (C.D. Cal. Oct. 24, 2012) (packaging of pharmaceutical in wrong container).

*Third*, unable to bypass its holding, Plaintiff seeks to minimize *Sears* as obscure and outdated.  Pl.'s Mot. at 7.  But it is Plaintiff who fails to cite a ***single case*** in the 70 years since *Sears* was decided to hold a retailer liable for carrying a product with a latent defect—because none have.  Far from being outliers, *Sears*, *Gobin*, and *Tourte* are fully consistent with the laws in other states, which similarly do not impose a duty on retailers to discover latent or hidden defects.[4]

## B.  Plaintiff's Conclusory Pleading Cannot Establish a Viable Claim Against the Retailer Defendants

The Retailer Defendants are fraudulently joined for an independent reason: Plaintiff's conclusory allegations that they improperly stored or transported Zantac are insufficient to defeat federal jurisdiction.  *See* Pl.'s Mot. at 9–11.  Here, the Complaint pleads no facts showing that the Retailer Defendants mishandled the product that Plaintiff ingested.  It generally avers only that the Retailer Defendants failed to store ranitidine "below 77°F" and that during "transport and storage of Ranitidine-Containing Drugs, temperatures routinely reached over 77°F."  Compl. ¶ 317.  These allegations not only lack factual support but are utterly speculative.  Plaintiff does not explain how he could possibly know the temperature inside the retailers' facilities—let alone the storage and transport conditions for the ***particular boxes or bottles*** of ranitidine he allegedly purchased and ingested.

---

[4] *See, e.g.*, *Eagle-Picher Indus., Inc. v. Balbos*, 604 A.2d 445, 456 (Md. 1992) ("[W]hen a seller or other nonmanufacturing supplier is nothing more than a conduit between a manufacturer and a customer, the retailer ordinarily has no duty in negligence to discover the defects or dangers of a particular product."); *Rahn v. Gerdts*, 455 N.E.2d 807, 810-11 (Ill. App. Ct. 1983) (holding that retailer is not under "any duty to generally inspect and discovery defects"); *Ziglar v. E. I. Du Pont De Nemours & Co.*, 280 S.E.2d 510, 514 (N.C. App. 1981) (holding that retailer of inherently dangerous toxic substance was under no duty to detect or remedy hidden defect); *Burgess v. Montgomery Ward & Co.*, 264 F.2d 495, 498 (10th Cir. 1959) (holding that it would be "completely unreasonable to expect the shopkeeper to perform the inspection or test which would have revealed to an expert the defect in the ladder rail"); *Meyer v. Rich's Inc.*, 12 S.E.2d 123, 124 (Ga. App. 1940) (holding that a seller of men's suits had no duty to analyze the suit chemically and was therefore not liable for buyer's injuries caused by poisonous dye and chemicals in suit).

The Eleventh Circuit and district courts within it have routinely found that similarly perfunctory and conjectural allegations cannot defeat federal jurisdiction. *See Illoominate Media, Inc.*, 2020 WL 7703141, at *2 (finding fraudulent joinder, where the complaint "offer[ed] nothing beyond vague speculation" and the allegations were "speculative, and, without more, conclusory"); *Harris v. Cellco P'ship*, 2016 WL 231191, at *3 (M.D. Fla. Jan. 15, 2016) (defendants established fraudulent joinder because plaintiff's "unsupported, conclusory allegations" were "simply insufficient"); *Calloway v. Baker Furniture Co.*, 1995 WL 912708, at *1 (N.D. Ala. Feb. 16, 1995) (finding fraudulent joinder where plaintiffs "attempted to allege, in a conclusory fashion, a conspiracy" and failed "to support the conclusory allegation with factual allegations"). The Court should reach the same result here.

Plaintiff tries to avoid federal jurisdiction by arguing that looser state law pleading rules govern the sufficiency of pleading in the context of fraudulent joinder. *See* Pl.'s Mot. at 9 (citing *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329 (11th Cir. 2011)). But in California, courts need not accept mere "contentions, deductions or conclusions of fact or law." *See Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 251 (2010). "[Courts] must accept as true all 'well-pleaded facts' in the complaint, but need not accept allegations containing legal conclusions, adjectival descriptions or unsupported speculation." *Doe v. Roman Catholic Archbishop of Los Angeles*, 247 Cal. App. 4th 953, 960 (2016). Plaintiff therefore cannot rely on state court pleading standards for refuge.

What is more, the facts supporting the negligent storage claim asserted against the Retailer Defendants contradict the facts supporting the claims against the Manufacturer Defendants. *Manti v. Gunari*, 5 Cal. App. 3d 442, 449 (1970) ("While inconsistent *theories* of recovery are permitted, a pleader cannot blow hot and cold as to the *facts* positively stated. . . . The code requirement is

to state the *facts*, not theories."); *Eamer v. Tenet Healthcare Corp.*, 2005 WL 1125056, at *9 (Cal.

Ct. App. May 13, 2005) (unpublished) (affirming dismissal of "fraud claims as inconsistent with

the complaint's contract claims"); *Rodriguez v. PCH Logistics, Inc.*, 2006 WL 3073002, at *4 (Cal.

Ct. App. Oct. 26, 2006) (unpublished) ("A complaint "cannot allege contradictory evidentiary facts

without explanation.") (citing California's Practice Guide on Civil Procedure).   On the one hand,

Plaintiff alleges that ranitidine was defective when it left the Manufacturer Defendants' hands, for

example, because those defendants failed to follow Good Manufacturing Practices.   Compl.

¶ 220(a); *see also id*. ¶ 229 ("At the time of manufacture, [Manufacturer] Defendants could have

provided warnings or instructions.").   On the other hand, Plaintiff claims that the Retailer

Defendants' failure "to properly store the Ranitidine-Containing Drugs . . . le[d] to dangerous

levels of NDMA accumulating in the drugs that harmed Plaintiff."  *Id*. ¶ 317.

In  dismissing  the  MDL-wide  negligence  claim  against  various  retailers,  this  Court

questioned how these types of claims could be asserted together:

> [T]he central premise . . . is that ranitidine was defectively designed and that the
> problems with the ranitidine molecule was concealed from the FDA . . . .  Viewed
> in that light, how are high-temperature allegations to be squared with [this] theory
> of the case?  Stated differently, it is the [Plaintiff's] theory that the [ ] harm was
> caused at the very moment ranitidine was manufactured—the Plaintiff[] ha[s] not
> alleged that, for some period of time, the ranitidine molecule was safe to consume
> but, because the [Retailer Defendants] negligently overheated the drug, the drug
> became unsafe to consume and therefore caused injury to [ ] Plaintiff[].

*In re Zantac*, 2020 WL 7864585, at *19.  The Court cautioned that plaintiff "must explain how

that *specific* theory of liability is compatible with the [ ] *global* theory of liability."  *Id.* (emphasis

in original).  Plaintiff's Complaint fails to do so.

Finally, Plaintiff cannot escape fraudulent joinder by invoking a possible amendment to

the Complaint.  *See* Pl.'s Mot. at 10–11.  Plaintiff relies on Ninth Circuit law for the proposition

that so long as an amendment is not futile, there is no fraudulent joinder.  *See, e.g.*, *Grancare, LLC*

*v. Thrower by & through Mills*, 889 F.3d 543 (9th Cir. 2018).  But in the Eleventh Circuit, the Court adjudicates removal based on the operative Complaint—not the possibility that plaintiff could state a viable claim in the future.  *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 913 (11th Cir. 2014) ("[J]urisdictional facts are evaluated as they stand at the time of removal."); *Berber v. Wells Fargo Bank, N.A.*, 2018 WL 10436232, at *4 (S.D. Fla. May 2, 2018) ("[O]nce it is determined that a defendant was fraudulently joined on a remand motion based on the state of the pleadings at removal, a plaintiff cannot amend away the federal court's jurisdiction by attempting to assert a viable claim against that same defendant."), *report and recommendation adopted*, 2018 WL 10436233 (S.D. Fla. May 9, 2018).  Plaintiff therefore cannot avoid federal jurisdiction by offering to add more allegations later.

### C.    Should the Court Find the Negligence Claim Viable, the Court Should Sever the Claim As Improperly Joined with Claims Against the Manufacturer Defendants

Even if Plaintiff could plead a viable claim for negligent storage and transport against the Retailer Defendants, those claims are factually and legally distinct from the product liability claims asserted against the Manufacturer Defendants.  Exercising its broad discretion under Federal Rule of Civil Procedure 21, this Court should therefore sever and remand the negligence claim against the Retailer Defendants to preserve its diversity jurisdiction over the remaining product liability claims against the Manufacturer Defendants.

Plaintiff does not contest that the Court has discretion under Rule 21 to sever and drop the Retailer Defendants and retain jurisdiction over claims against the Manufacturer Defendants.  *See* Fed. R. Civ. P. 21; *see also Ingram v. CSX Transp., Inc.*, 146 F.3d 858, 862 (11th Cir.1998) (noting district courts' authority under Rule 21 to "dismiss dispensable nondiverse parties to cure defects in diversity jurisdiction").  Use of the Court's discretion under Rule 21 is particularly apt where, as here, the negligence claims against non-diverse parties arise from different transactions and

occurrences than the product liability claims against the manufacturers. *See In re Zantac*, 2020 WL 7864585, at *18 ("By way of example, medical malpractice actions are sometimes severed from MDL suits against pharmaceutical companies because the individual questions posed by such claims are best addressed outside of an MDL.").

In *Stone v. Zimmer, Inc.*, for instance, the plaintiff brought negligence claims against both non-diverse physicians for failure to diagnose a fracture in a hip implant and product liability claims against the manufacturer of the device. 2009 WL 1809990, at *4–5. The court viewed the doctors as "successive, rather than joint tortfeasors" and concluded that the claims against them did not "arise out of the same transaction, occurrence or series of transactions or occurrences" as the product liability claims. *Id.* at *4. The court therefore denied the motion to remand and severed and remanded the claims against the physicians, retaining jurisdiction over the diverse manufacturers. *Id.* at *5. Numerous other courts have done the same.[5]

---

[5] *See also, e.g.*, *M.W. v. Ford Motor Co.*, 2015 WL 1311029, at *4 (M.D. Fla. Mar. 24, 2015) (severing and remanding medical malpractice claims that "involve questions regarding the medical appropriateness," and retaining product liability claims that "involve factual questions related to the design, engineering, manufacture, marketing, advertising, and maintenance of the vehicle"); *Joseph v. Baxter Int'l Inc.*, 614 F. Supp. 2d 868, 872 (N.D. Ohio 2009) (severing non-diverse defendants, where medical malpractice claims against those defendant "differ from the . . . products liability claim"); *Sullivan v. Calvert Mem'l Hosp.*, 117 F. Supp. 3d 702, 707 (D. Md. 2015) (severing nondiverse defendants, where medical negligence claims turn on standards of medical care, whereas product liability claims "turn on whether those defendants, at an earlier point in time, improperly designed, manufactured, tested, advertised, and gave directions regarding use of the [product]"); *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 505 (E.D. Cal. 2008); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 685 (D. Nev. 2004); *In re Stryker Rejuvenate & ABG II Hip Implant Prods. Liab. Litig.*, 2013 WL 6511855, at *4 (D. Minn. Dec. 12, 2013); *In re Guidance Implantable Defibrillators Prods. Liab. Litig.*, 2007 WL 5377783, at *7 (D. Minn. June 4, 2007); *Mayfield v. London Women's Care, PLLC*, 2015 WL 3440492, at *5 (E.D. Ky. May 28, 2015); *Kelly v. Aultman Physician Ctr.*, 2013 WL 2358583, at *3 (N.D. Ohio May 29, 2013); *McElroy v. Hamilton Cty. Bd. of Educ.*, 2012 WL 12871469, at *2–3 (E.D. Tenn. Dec. 20, 2012); *Cooke-Bates v. Bayer Corp.*, 2010 WL 3984830, at *4 (E.D. Va. Oct. 8, 2010).

Here too, the claims against the Manufacturer Defendants (that they failed to warn or properly design ranitidine) are separate and distinct from the negligence claim against the Retailer Defendants (that, at some undisclosed point *after* ranitidine was manufactured and shipped, the Retailer Defendants stored the medication under unsafe conditions). Indeed, this Court has already characterized such questions as "*individualized* and *fact-specific*." *In re Zantac*, 2020 WL 7864585, at *18 (emphases added); *see also M.W.*, 2015 WL 1311029, at *4 (finding that allegations supporting medical negligence claim "entirely distinct from" those supporting products liability claims and that medical negligence claim was egregiously misjoined).

None of Plaintiff's arguments weighs against severance under Rule 21. **First**, Plaintiff asserts there is a "logical relationship" between the claims against the Retailer Defendants and the Manufacturer Defendants. *See* Pl.'s Mot. at 13. But just as in *Stone*, "[a]ny liability that may be found against [each defendant] would not be a basis for lability as to the other, and separate as to each liability can be found." 2009 WL 1809990, at *4. A finding that the Retailer Manufacturers negligently stored or transported ranitidine has no effect on whether the Manufacturer Defendants are liable for the design, labeling, or manufacturing of the drug, and vice versa. There is accordingly no logical reason the claims must be joined together.

**Second**, Plaintiff cites case law urging sparing use of Rule 21 as a general matter. But none of those cases involved successive tortfeasors who were misjoined in a single action. Indeed, Plaintiff's cases reaffirm the Court's power to sever such misjoined claims to preserve federal jurisdiction. *See, e.g.*, *In re: Bard IVC Filters Prod. Liab. Litig.*, 2016 WL 2347430, at *8 (D. Ariz. May 4, 2016) ("Courts can sever and remand claims against non-diverse defendants when the test for permissive joinder has not been satisfied, *i.e.*, when fraudulent misjoinder has occurred."); *Gonzalez v. J.C. Penney Corp.*, 2005 WL 5304795, at *2 (S.D. Fla. Nov. 7, 2005)

("Notwithstanding this general deference afforded to plaintiff's autonomy in pleading, J.C. Penney has correctly observed that the Court has discretion under Fed. R. Civ. P. 21 to drop parties."); *Zee Med. Distrib. Ass'n, Inc. v. Zee Med., Inc.*, 23 F. Supp. 2d 1151, 1157 (N.D. Cal. 1998) (noting Rule 21 "deals specifically with misjoinder of parties," but "the parties [were] not asking the Court to drop certain named parties from the case so as to cure a misjoinder and thereby confer federal jurisdiction").

        **Third**, severing the negligent storage claim would not prejudice Plaintiff. *See* Pl.'s Mot. at 16–17. To the contrary, Plaintiff's federal case would benefit from the coordinated efforts of being in the MDL, where Plaintiff "will not alone bear the administrative and financial burdens of pursuing [his] claim against [the Manufacturer Defendants]." *Cooke-Bates*, 2010 WL 3984830, at *4. And Plaintiff's counsel is already seeking a separate coordination for cases filed in California state court against retailers—a request which the Manufacturer Defendants have not opposed. *See* Petition for Coordination, Ex. A.

        **Finally**, Plaintiff argues that, to support federal jurisdiction, the Manufacturer Defendants must show that the fraudulent misjoinder was "egregious." Pl.'s Mot. at 14. Defendants did invoke the "fraudulent misjoinder" doctrine as an alternative basis for removal here. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) ("A defendant's 'right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.'"), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). No showing of fraudulent or egregious misjoinder is required to sever claims under Rule 21. *See* Fed. R. Civ. P. 21 (allowing a court to drop a party "on just terms"). The Court thus need not reach the question.

In short, where federal jurisdiction exists, Plaintiff should not be permitted to spoil jurisdiction by tacking on claims against non-diverse defendants that do not arise from the same transactions and occurrences.  Accordingly, if this Court finds that Plaintiff's negligence claim against the Retailer Defendants is viable under California law, it should sever and drop those claims without prejudice under Rule 21, and retain jurisdiction over the remainder of Plaintiff's claim.[6]

## II.   Plaintiff Fails to Plead Cognizable Strict Liability Claims Against the Retailer Defendants

Plaintiff does not dispute that this Court's recent decision dismissing the failure-to-warn and design defect claims against the MDL retailer defendants as preempted forecloses the strict liability claim (Count VII) asserted here.  *See In re Zantac*, 2020 WL 7864585, at *13.  He instead claims that as a procedural matter, a preemption defense cannot "form the basis for fraudulent joinder."  *See* Pl.'s Mot. at 18.  For the reasons stated in the Manufacturer Defendants' opposition to California Plaintiffs' motion to remand, *see* ECF No. 2702 at 11–14, Plaintiff is wrong.  *See, e.g.*, *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1298 n.3 (11th Cir. 2007) ("[A]pplication of an affirmative defense can support a finding of fraudulent joinder.").

---

[6] Defendants are not suggesting that any future "storage" claims in this litigation should be handled outside of the MDL.  The standard for joinder is a more demanding one than for MDL coordination.  *Compare* Fed. R. Civ. P. 20(a) (requiring a common question of fact or law *and* that the joined claims arise from "the same transaction, occurrences, or series of transactions or occurrences"), *with* 28 U.S.C. § 1407 (requiring only a common question of fact or law).  Plaintiff also cites *Black v. Cable News Network, Inc.*, 2016 WL 4443622, at *3 (S.D. Fla. July 19, 2016), to suggest that the fraudulent misjoinder doctrine only applies when there is "absolutely no relationship" between the misjoined parties.  Pl.'s Mot. at 14.  Not so.  *See supra* at pp. 10–12.  In any event, unlike the defamation claims in *Black*—which were based on closely connected statements "in subject matter, in time, and in source"—the negligence claim here is based on different events in time, space, and entities involved.

Plaintiff also argues that he intended his newly asserted "distribution defect" claim (Count VIII) to be a manufacturing defect claim.[7]  Pl.'s Mot. at 17–18.  Regardless of how Plaintiff styles the claim, he does not identify a single case finding that a retailer's post-manufacture storage and transport of a product can give rise to strict liability.  In the sixty years since California courts imposed strict liability on retailers, there has not been a ***single case*** recognizing a manufacturing defect claim based on a retailer's post-manufacture storage of the product.  Therefore, and for the same reasons stated in the prior opposition to the California Plaintiffs' motion to remand, *see* ECF No. 2702 at 14–15, Plaintiff's allegation that the Retailer Defendants improperly stored and transported ranitidine provides no basis for a manufacturing defect claim.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's motion to remand.


Dated: February 12, 2021                    Respectfully submitted,

                                            By: */s/  Anand Agneshwar*
                                                Anand Agneshwar
                                                **ARNOLD & PORTER KAYE SCHOLER LLP**
                                                250 West 55th Street
                                                New York, NY 10019
                                                Tel.: (212) 836-8000
                                                Fax: (212) 836-8689
                                                anand.agneshwar@arnoldporter.com

                                                Daniel S. Pariser
                                                Paige H. Sharpe
                                                601 Massachusetts Avenue, NW
                                                Washington, DC 20001
                                                Tel.: (202) 942-5000
                                                Fax: (202) 942-5999
                                                daniel.pariser@arnoldporter.com

---

[7] Plaintiff erroneously states that he previously asserted a "Manufacturing Defect" claim against the Retailer Defendants.  *See* Pl.'s Mot. at 18 n.5.  The original complaint **only** asserted a negligence claim—and not a manufacturing or distribution defect claim—against the Retailer Defendants.

paige.sharpe@arnoldporter.com

*Attorneys for Defendants Sanofi US Services Inc.*
*and Sanofi-Aventis U.S. LLC*


/s/ Andrew T. Bayman
Andrew T. Bayman
Robert B. Friedman
Julia Zousmer
Mark Sentenac
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: (404) 572-3583
Fax: (404) 572-5100
abayman@kslaw.com
rfriedman@kslaw.com
jzousmer@kslaw.com
msentenac@kslaw.com

*Attorneys for Defendant Boehringer Ingelheim*
*Pharmaceuticals, Inc. and Boehringer*
*Ingelheim USA Corporation*


/s/ Mark Cheffo
Mark Cheffo
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10019
Tel.: (212) 689-3500
Fax: (212) 689-3590
mark.cheffo@dechert.com

Judy Leone
Will Sachse
**DECHERT LLP**
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
Tel.: (215) 994-4000
Fax: (215) 994-2222
judy.leone@dechert.com
will.sachs@dechert.com

*Attorneys for GlaxoSmithKline LLC and*
*GlaxoSmithKline, PLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of February, 2021, the foregoing Opposition to Plaintiff's Motion to Remand was filed electronically through the Court's CM/ECF system, which will send notice of filing to all CM/ECF participants.

*/s/   Anand Agneshwar*
Anand Agneshwar

17