**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2924** <br> **20-MD-2924** <br><br> **JUDGE ROBIN L. ROSENBERG** <br> **MAGISTRATE JUDGE BRUCE E. REINHART** |
| _____/ | |

**THIS DOCUMENT RELATES TO:**

*Nathan Gibbons v. GlaxoSmithKline, et al.*     9:21-cv-80236-RLR

---

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

Plaintiff Nathan Gibbons, by and through the undersigned counsel, submit this Reply Memorandum in Support of Plaintiff's Motion to Remand pursuant to 28 U.S.C. § 1447(c). This Reply is filed with leave of Court pursuant to the Court's February 2, 2021 Order (Doc. 2732) and pursuant to Local Rule 7.1(c)(1).

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................................. i

ARGUMENT .................................................................................................................................. 1

    I.    The Drug Company Defendants Failed to Prove that a Negligence Claim Against the California Retailers Is Impossible ..................................................................................... 1

        A.    The California Retailer Are Being Sued for Negligently Contributing to the Creation of a Product Defect by Exposing the Ranitidine Products They Sold to Heat Despite the Product Label's Clear Warning to Avoid Heat .............................. 1

        B.    Plaintiff's Negligence Claim Is Sufficiently Alleged under California Pleading Standards ..................................................................................................................... 3

        C.    Severing Plaintiff's Claims Against the Drug Company Defendants from the Claims Against the California Retailers Would Be a Mistake ................................. 6

    II.    The Drug Company Defendants Failed to Prove that a Strict Liability Claim Against the California Retailers Is Impossible ..................................................................................... 8

CONCLUSION ............................................................................................................................... 9

# ARGUMENT

The Drug Company Defendants[1] have not met their heavy burden of establishing fraudulent joinder because they have not proven—*with clear and convincing evidence* and all legal and factual uncertainties going against them—that *any* claim against the California Retailers[2] is impossible. In their opposition brief, the Drug Company Defendants raise several arguments; however, none come close to meeting that burden.

## I. The Drug Company Defendants Failed to Prove that a Negligence Claim Against the California Retailers Is Impossible

### A. The California Retailer Are Being Sued for Negligently Contributing to the Creation of a Product Defect by Exposing the Ranitidine Products They Sold to Heat Despite the Product Label's Clear Warning to Avoid Heat

The Drug Company Defendants insist that California law imposes no duty on any retailer to discover or test for latent defects. *See* Opp. at 4-5. It is unclear if that legal proposition is true considering how the law against retailers in California has evolved over the last 80 years in the realm of product liability. *See, e.g.*, *Kaminski v. W. MacArthur Co.*, 220 Cal. Rptr. 895, 901 (Ct. App. 1985) ("In products liability cases, a consumer injured by a defective product may sue any business entity in the chain of production and marketing, from the original manufacturer down through the distributor and wholesaler to the retailer; liability of all such defendants is joint and several."). That said, this Court need not address this issue because the California Retailers are *not* being sued under a failure-to-test theory—indeed, that theory is expressly disavowed:

> [The California Retailers] breached their duty to Plaintiff by failing to properly store the Ranitidine-Containing Drugs supplied to Plaintiff, leading to dangerous levels of NDMA accumulating in the drugs that harmed Plaintiff.
>
> …
>
> ***Plaintiff is not alleging that the Retailer Defendants breached their duty of care by failing to test the defective Ranitidine-Containing Drugs that were sold to Plaintiff.*** Rather the Retailer Defendants breached their duty of care by failing to

---

[1] "Drug Company Defendants" collectively refers to Defendants GlaxoSmithKline, LLC, Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim USA Corp., Sanofi US Services Inc., and Sanofi-Aventis U.S. LLC.
[2] "California Retailers" collectively refers to Defendants Safeway, Inc., Safeway Health, Inc., The Vons Companies, Inc., Kaiser Permanente International, and Grocery Outlet.

1

> properly transport, store, and/or shelve the defective Ranitidine-Containing Drugs that caused Plaintiff's injuries. Had the Defendants properly stored, transported, and shelved their Ranitidine-Containing Drugs, they would have not breached their duty to the Plaintiff.").

Complaint, ¶¶ 317, 320 (emphasis added). And, because the California Retailers "failed to adhere to and/or follow its established practices and procedures in storing the Ranitidine-Containing Drugs[,] … [a]s a direct and proximate result of Defendants' improper storage practices of the Ranitidine-Containing Drugs, Plaintiff was exposed to dangerous levels of NDMA which caused Plaintiff's cancer." Complaint, ¶¶ 319, 321.

The negligence claim against the California Retailers rests on their role in creating the NDMA defect, not a failure to test for it. And, California law clearly allows negligence claims against a retailer for negligently creating a defect in a product, generally and in the pharmaceutical drug context. *See, e.g.*, *Fagerquist v. W. Sun Aviation, Inc.*, 236 Cal. Rptr. 633, 636 (Ct. App. 1987) (endorsing a negligence claim against a retailer for negligently maintaining the product—an airplane—which, in turn, caused injury); *Ambriz v. CVS Pharmacy, Inc.*, No. 119CV01391NONESKO, 2020 WL 1660018, at *4 (E.D. Cal. Apr. 3, 2020) (negligence sufficiently alleged against retailer because retailer incorrectly mixed prescription).

The Drug Company Defendants argue that this type of negligence is "circular" because it "assumes the Retailer Defendants had a duty in the first instance to identify and guard against the risk of NDMA formation[.]" Opp. at 6. Not true. The duty imposed here is the one mandated by California statute: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person[.]" Cal. Civ. Code § 1714(a); *Cabral v. Ralphs Grocery Co.*, 248 P.3d 1170, 1174 (Cal. 2011) ("The general rule in California is ... each person has a duty to use ordinary care and is liable for injuries caused by his failure to exercise reasonable care in the circumstances[.]") (internal quotation marks omitted). Nothing excludes a California Retailer from complying with that duty. *Hensley-Maclean v. Safeway, Inc.*, No. CV 11-01230 RS, 2014 WL 1364906, at *3 (N.D. Cal. Apr. 7, 2014) ("Safeway has not pointed to

2

any statutory provision limiting its general duty of care[.]").

The question is whether that general duty of ordinary care required a California Retailer to make sure the anitidine products it sold were not exposed to heat during transport and storage. If the need to avoid exposure to heat were unknown or unreasonably knowable, the Drug Company Defendants' argument might find some purchase. But, it's right on the label. Moreover, the Complaint alleges the opposite, i.e., that the California Retailers "were, or should have been, aware of the dangers of exposing Ranitidine-Containing Drugs to excess heat given that each Zantac box states, 'to avoid excessive heat' and to keep the drug below 77°F" and that they "were duty-bound to ensure their Ranitidine-Containing Drugs were not exposed to temperatures above 77°F." Complaint, ¶ 316. The Drug Company Defendants do not even bother to argue against this alleged fact, that the warning to avoid heat exposure was on the package. And it would be absurd to conclude, as a matter of law, that a retailer had no duty to store and transport a product according to the product's labeling—indeed, the Drug Company Defendants, who bear the burden of proof, cite no case supporting this irrational rule. And, in the removal context, this Court "*must* resolve any uncertainties about state substantive law in favor of the plaintiff." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (emphasis added).

The Drug Company Defendants attempt to cabin Plaintiff's claim into one for failure to test for a latent defect is contradicted by the allegations in the Complaint. It does not render Plaintiff's negligence claims against the California Retailers, as actually alleged, impossible. They have not carried their burden of establishing impossibility.

> **B.    Plaintiff's Negligence Claim Is Sufficiently Alleged under California Pleading Standards**

The Eleventh Circuit specifically holds that "[n]othing in our precedents concerning fraudulent joinder requires anything more than *conclusory allegations* … [t]o determine whether it is possible that a state court would find that the complaint states a cause of action, we must necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1334 (11th

3

Cir. 2011) (emphasis added).  Moreover, the California Supreme Court holds that "[i]n conformity with the rule that a complaint in a personal injury case is a 'statement of the facts constituting the cause of action[] in ordinary and concise language', plaintiffs may, *and should*, allege the foregoing facts succinctly, and may do so *in a conclusory fashion* if their knowledge of the precise cause of injury is limited." *Bockrath v. Aldrich Chem. Co.*, 980 P.2d 398, 404 (Cal. 1999) (emphasis added) (quoting Cal. Code Civ. Pro., § 425.10).  Thus, when the Drug Company Defendants concede that California pleading standards govern, *see* Opp. at 8, and that Plaintiff "generally avers … that the Retailer Defendants failed to store ranitidine 'below 77°F' and that during 'transport and storage of Ranitidine-Containing Drugs, temperatures routinely reached over 77°F,'" Opp. at 7-8 (quoting Complaint, ¶ 317), the inquiry should stop—there is no fraudulent joinder based on insufficient pleading.

However, in their Opposition, the Drug Company Defendants ask this Court to impose a novel pleading requirement on Plaintiff, demanding to know "how he could possibly know the temperature inside the retailers' facilities—let alone the storage and transport conditions for the particular boxes or bottles of ranitidine he allegedly purchased and ingested." Opp. at 7.  Absent disclosing the source of Plaintiff's allegations, the Drug Company Defendants assert that "[t]hese allegations not only lack factual support but are utterly speculative." Opp. at 7.  But, this is not required under California law, either for pleading purposes or bringing a lawsuit.  All a plaintiff must do to survive a demurer (the California version of a motion to dismiss) is allege that a defendant was negligent and that the negligence substantially contributed to the Plaintiff's injury. *See, e.g.*, *Asker v. Wyeth Pharm., Inc.*, No. A112658, 2007 WL 61912, at *2 (Cal. Ct. App. Jan. 10, 2007) (to plead negligence plaintiff was not required to allege how the product caused his cancer, merely that it did); *Rannard v. Lockheed Aircraft Corp.*, 157 P.2d 1, 4 (Cal. 1945) ("[I]t is sufficient to allege that an act was negligently done by defendant and that it caused damage to plaintiff.").  Long ago, the California Supreme Court explained that "[t]he standard of pleading in negligence cases rests upon considerations of fairness and convenience … and the rule permitting the pleading of negligence *in general terms* finds justification in the fact that the

4

person charged with negligence may ordinarily be assumed to possess at least equal, if not superior, knowledge of the affair to that possessed by the injured party." *Rannard*, 157 P.2d at 5 (emphasis added). And, "[w]hile the statement of other facts auxiliary to the main fact 'the fact which caused the injury … might tend to provide a clearer conception of the principal act, it has been the settled rule in this state … that 'negligence and proximate cause may be simply set forth.'" *Id.* at 4.

Plaintiff, here, is not required to provide detailed allegations about the California Retailers Defendants' negligence, including why a Plaintiff believes a fact to be true. California's pleading standard centers on simply articulating ultimate facts. "Plaintiff need only plead such facts as are necessary 'to acquaint a defendant with the nature, source and extent of his claims.'" *Doe v. City of Los Angeles*, 169 P.3d 559, 570 (Cal. 2007) (internal citations omitted). Moreover, "[i]n cases of negligence, the sufferer may only know the general, the immediate, cause of the injury, and may be entirely ignorant as to the specific acts or omissions which lead up to it." *Id.* a 4. And, here, Plaintiff believes that NDMA in the ranitidine products he consumed substantially contributed to his development of prostate and colorectal cancer. It is entirely reasonable to believe that such NDMA was formed during transport and storage—a fact made evident by the FDA's recent request that all ranitidine products be pulled off the market due to the formation and accumulation of NDMA in the finished product during transport and storage. Thus, for the purposes of pleading, Plaintiff need only allege the ultimate facts related to negligence, i.e., that the California retailers exposed the product to heat; anything else is for discovery and the merits. *E.g.*, *Mize v. Mentor Worldwide LLC*, 265 Cal. Rptr. 3d 468, 478 (Ct. App. 2020) ("'An injured patient,' like Mize, thus 'cannot gain access to that information without discovery' … and cannot 'fairly be expected to provide a detailed statement of the specific bases for her claim' … She should not be required to meet a pleading standard that identifies specific … requirements breached by [defendant] based on information available only to [defendant] and the FDA.").

This Court should eschew the Drug Company Defendants' invitation to rewrite nearly one

hundred years of well-settled California law, especially in the context of removal where this Court must "construe removal jurisdiction narrowly and resolve any doubts regarding the existence of federal jurisdiction in favor of the non-removing party[.]" *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). As pleaded, the Complaint alleges a possible negligence claim against the California Retailers pursuant to California's pleading standard. As such, this Court cannot conclude the California Retailers are fraudulently joined.

### C. Severing Plaintiff's Claims Against the Drug Company Defendants from the Claims Against the California Retailers Would Be a Mistake

The Eleventh Circuit is clear: the starting point for this Court is "[a] presumption in favor of remand[.]" *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Id.* (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941)). "Indeed, *all doubts* about jurisdiction should be resolved in favor of remand to state court." *Id.* (emphasis added). The Drug Company Defendants ask this Court to turn this basic presumption on its head and, for only a few removed cases (as opposed to all cases in this MDL), sever the negligence claims against the California Retailers from the Drug Company Defendants using Rule 21, not Rules 19 or 20.[3] In the opening brief, Plaintiff presented the legal, prudential, and commonsense problems with using Rule 21 to fundamentally alter a lawsuit over which this Court otherwise lacks jurisdiction. Plaintiff will not belabor those points here—the Drug Company Defendants do not raise any counter points that merit response.

The Drug Company Defendants argue, however, that the California Retailers are "successive tortfeasors who were misjoined in a single action[.]" Opp. at 12. This argument is disingenuous. Previously, these very Drug Company Defendant attempted to remove those lawsuits naming only California Retailers, arguing that "[t]he Removing Defendants are … proper parties to this removal petition and" that the Drug Companies were "the real parties in

---

[3] The Drug Company Defendants have abandoned their fraudulent misjoinder argument. So, the only "severance" request is pursuant to Rule 21. Opp. at 13.

6

interest" in those cases. Exhibit 1 at ¶ 2.[4] Then, in that same removal, the Drug Companies argued that the claims against the California Retailers were fraudulently joined. In other words, not only did the Drug Company Defendants claim to be properly joined defendants, but they insisted on their inclusion in the case to stop the state court from moving forward.[5] And then, four days ago—the *same day* the Drug Company Defendants filed their opposition brief claiming these claims were misjoined—counsel for the Drug Company Defendants represented, under oath, to the California Court overseeing state court coordination, that the Drug Company Defendants "will invariably be at the front and center of this litigation" and are "the main defendants in this litigation" even though the underlying lawsuits only name the California Retailers. Exhibit 2 at ¶ 9. To make such claims in California federal and state court and then, here, argue that a case including both California Retailers and the Drug Company Defendants are "misjoined" is beyond the pale.

In truth, the Drug Company Defendants are not misjoined with the claims against the California Retailers. There is a legal and factual question about how, and who is responsible for, ranitidine causing Plaintiff to be exposed to NDMA. Whether it came from the design of the product, the transportation and storage of the product (by either the California Retailers or Drug Company Defendants), the way the product converts into NDMA within the human body, or all the above, there are overlapping factual and legal issues in Plaintiff's claims against all Defendants. Indeed, this is not a situation involving "successive tortfeasors" like in the medical malpractice context, where the negligence of a physician was a separate event involving separate breaches duty. Here, liability and causation against the Defendants are intertwined because they involve, literally, the same transaction or occurrence, i.e., the Plaintiff's purchase and ingestion of ranitidine containing products created by the Drug Company Defendants and sold by the California Retailers. This is why "[i]n products liability cases, a consumer injured by a defective

---

[4] All exhibits are attached to the Declaration of R. Brent Wisner filed concurrently with this Reply.
[5] A federal court in the Northern District of California immediately rejected this removal gambit as "improper" and promptly remanded the cases to state court. *See* Exhibit 3 at 2.

product may sue any business entity … from the original manufacturer down through … the retailer; liability of all such defendants is joint and several. … retailers and distributors remain free *to seek indemnity against the manufacturer of the defective product*." *Kaminski*, 220 Cal. Rptr. at 901 (emphasis added).

If the Court invokes Rule 21, Plaintiff will be forced to deal with a scenario at separate trials where the Drug Company Defendants blame the California Retailers (in federal court) and the California Retailers blame the Drug Companies (in state court). Such a scenario is, by definition, prejudicial to Plaintiff, and should, by itself, convince this Court not "rewrite Plaintiff's complaint in order to manufacture federal jurisdiction." *Gonzalez v. J.C. Penney Corp.*, No. 05-22254CIV, 2005 WL 5304795, at *3 (S.D. Fla. Nov. 7, 2005).

## II.    The Drug Company Defendants Failed to Prove that a Strict Liability Claim Against the California Retailers Is Impossible

Regarding the affirmative defense of preemption, and whether that defense can, as a matter of law, support a finding of fraudulent joinder, the Drug Company Defendants incorporate, by reference, their opposition to motion to remand filed by forty-one similar cases also removed from California State Court. *See* Opp. at 14 (citing Doc. 2702 at 11–14). Thus, Plaintiff here incorporates by reference the reply to that opposition, located at Doc. 2745 at 8–9.

Regarding Plaintiff's manufacturing defect claim, the Drug Company Defendants simply state that Plaintiff "does not identify a single case finding that a retailer's post-manufacture storage and transport of a product can give rise to strict liability." Opp. at 15. But, that is not Plaintiff's burden. To establish fraudulent joinder the Drug Company Defendants must prove, with clear and convincing evidence, that Plaintiff's claim is impossible. And, importantly, the Court "*must* resolve *any uncertainties* about state substantive law in favor of the plaintiff." *Crowe*, 113 F.3d at 1538 (emphasis added). Here, the Drug Company Defendants fail to cite any case indicating that Plaintiff's manufacturing claim is impossible under California law. And, considering the broad definition given to a manufacturing defect by California courts, the Drug Company Defendants cannot meet this burden.

8

In California, "retailers engaged in the business of distributing goods to the public are strictly liable in tort for personal injuries caused by defects in those goods." *Arriaga v. CitiCapital Commercial Corp.*, 85 Cal. Rptr. 3d 143, 149 (Ct. App. 2008) (citing *Vandermark v. Ford Motor Co.*, 391 P.2d 168, 171 (Cal. 1964)). "[T]he term defect as utilized in the strict liability context is neither self-defining nor susceptible to a single definition applicable in all contexts." *Barker v. Lull Eng'g Co.*, 573 P.2d 443, 453 (Cal. 1978). "A product has a manufacturing defect if it 'differs from the manufacturer's intended result or from other ostensibly identical units of the same product line.'" *Johnson v. United States Steel Corp.*, 192 Cal. Rptr. 3d 158, 165 (Ct. App. 2015) (quoting *Barker*, 573 P.2d at 453). Indeed, the California Jury Instructions do not limit "manufacturing defect" claims to manufacturers. *See* Judicial Council of California Civil Jury Instruction 1201. "Sellers of all products are responsible for defects that exist in the product when it leaves the seller's control and is placed on the market. Thus, the seller of a completed product is strictly liable for any defect in the completed product, *regardless of the "source" of the defect*[.]"). *Johnson*, 192 Cal. Rptr. 3d at 166 (emphasis added). Therefore, while a manufacturing defect *typically* arises in the context of the manufacturing process, the source of the defect is immaterial. All that matters is that there was, in fact, a manufacturing defect. And here, the defect is the presence of NDMA in the finished product—a "manufacturing defect" because NDMA was never supposed to be part of the finished product. Thus, Plaintiff's manufacturing defect claims against the California Retailers are possible.

## CONCLUSION

The Drug Company Defendants have failed to meet their heavy burden of demonstrating, by clear and convincing evidence—with all factual and legal uncertainties resolving in Plaintiff's favor—that any of Plaintiff's claims against the California Retailers are impossible under California law. This Court lacks subject matter jurisdiction. Accordingly, Plaintiff respectfully requests that the Court enter an order immediately remanding his cases to California Superior Court, County of Alameda.

9

Dated: February 16, 2021 Respectfully submitted,

By: */s/ R. Brent Wisner*
R. Brent Wisner
BAUM, HEDLUND, ARISTEI, &
GOLDMAN, P.C.
10940 Wilshire Blvd., 17th Floor
Los Angeles, CA 90024
Tel: (310) 207-3233
Fax: (310) 820-7444
RBwisner@BaumHedlund.com

*Attorneys for Plaintiff Nathan Gibbons*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February, 2021, I filed the foregoing **REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND** electronically through the CM/ECF system, which will send notice of filing to all CM/ECF participants.

Dated:  February 16, 2021      **BAUM, HEDLUND, ARISTEI & GOLDMAN, P.C.**

/s/ R. Brent Wisner
R. Brent Wisner, Esq.
rbwisner@baumhedlundlaw.com
10940 Wilshire Blvd., 17th Floor
Los Angeles, CA 90024
Telephone:  (310) 207-3233
Facsimile:  (310) 820-7444

*Attorneys for Plaintiff Nathan Gibbons*