UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

IN RE: ZANTAC (RANITIDINE)
PRODUCTS LIABILITY LITIGATION

MDL NO. 2924
20-MD-2924

JUDGE ROBIN L. ROSENBERG
MAGISTRATE JUDGE BRUCE E. REINHART

_____/

**CONSOLIDATED AMENDED CONSUMER ECONOMIC LOSS
<u>CLASS ACTION COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    PARTIES ..........................................................................................................6

    A.     Defendants ................................................................................................6

          1.     Brand Manufacturer Defendants (Prescription and OTC) ..........................7

          2.     Generic Prescription Manufacturer and/or Store-Brand Manufacturer Defendants......................................................................11

          3.     Store-Brand Defendants..............................................................21

    B.     Plaintiffs..................................................................................................23

III.   JURISDICTION & VENUE.....................................................................151

IV.   BACKGROUND FACTS..........................................................................153

    A.     The Science.............................................................................................153

          1.     The Creation of Ranitidine-Containing Products and Their Introduction to the Market ...............................................................153

               a.     GSK Develops Zantac Through a Flurry of Aggressive Marketing Maneuvers ...................................................153

               b.     Patents Expire, Allowing Prescription and Later, OTC Generics (and Store Brands) to Enter the Market.......................158

          2.     NDMA Is a Carcinogen Whose Dangerous Properties Are Well Established ..........................................................................163

          3.     NDMA Is Discovered In Ranitidine-Containing Products, Leading To Market Withdrawal...........................................................174

          4.     How Ranitidine Transforms Into NDMA ................................................180

               a.     Early Understandings as to Formation of NDMA in the Environment of the Human Stomach..........................................181

               b.     Formation of NDMA in Other Organs of the Human Body........192

               c.     Formation of NDMA by Exposure to Heat, Moisture, and/or Time...............................................................195

# TABLE OF CONTENTS

**Page**

    5.     Evidence Directly Links Ranitidine Exposure to Cancer ........................198

   B.     Defendants' Knowledge of the NDMA Risk.....................................................200

   C.     The Federal Regulatory Landscape ..................................................................203

        1.     Generic Drugs ........................................................................................203

        2.     Federal Law Required the Manufacturer Defendants To Notify the FDA About the Presence of NDMA In Ranitidine-Containing Products.......................................................................................................205

        3.     Good Manufacturing Practices ..............................................................207

**V.**     **EQUITABLE TOLLING OF APPLICABLE STATUTE OF LIMITATIONS**..............208

   A.     Discovery-Rule Tolling .....................................................................................208

   B.     Fraudulent-Concealment Tolling .......................................................................209

   C.     Estoppel..............................................................................................................209

**VI.**    **THE RICO CLAIM** ...................................................................................................210

   A.     Parties................................................................................................................210

        1.     The RICO Defendants............................................................................210

        2.     The RICO Plaintiffs ..............................................................................210

   B.     Factual Allegations ............................................................................................214

        1.     The RICO Defendants Worked Together to Develop, Manufacture, and Sell Zantac, Catapulting It to Continuing Market Success ..............214

        2.     NDMA Is Discovered in Ranitidine-Containing Products, Leading to Market Withdrawal ..........................................................................217

        3.     The RICO Defendants Knew of or Recklessly Disregarded Contemporaneous Red Flags Pointing to the Material Safety Risks Posed by Their Ranitidine-Containing Products.....................................224

        4.     The RICO Defendants Conducted an Association-In Fact Enterprise .............................................................................................240

## TABLE OF CONTENTS

<div align="right">**Page**</div>

5.     The RICO Defendants Developed and Implemented a Scheme to Mislead the Public, Including the RICO Plaintiffs ................................252

     a.     GSK's Early Marketing and Sale of Prescription Zantac Lays the Foundation for OTC Zantac ..........................................253

     b.     The RICO Defendants Launch OTC Zantac, Uniformly Omitting the Material Safety Risks from Consumer Marketing ...............................................................................258

     c.     The RICO Defendants Omitted from Disclosure the Material Safety Risks on OTC Zantac Labeling .........................270

     d.     The RICO Defendants Used KOLS and Industry Groups to Conceal and Omit from Disclosure to the Public the Material Safety Risks ...................................................................276

6.     Pattern of Racketeering Activity ..........................................................286

C.     Class Allegations ........................................................................................289

D.     The RICO Cause of Action ........................................................................293

1.     The Zantac OTC Enterprise ................................................................294

2.     Mail and Wire Fraud ..........................................................................299

3.     The RICO Defendants' Conduct Damaged the RICO Plaintiffs and Class Members ...................................................................................308

VII.     THE STATE LAW CLAIMS .........................................................................311

A.     Class Allegations ........................................................................................311

1.     Class Definition ..................................................................................311

     a.     Brand Manufacturer Defendants (Prescription and OTC) ...........311

     b.     Generic Prescription and Store Brand Manufacturer Defendants .................................................................................322

     c.     Store Brand Defendants .............................................................361

2.     Federal Rule of Civil Procedure 23 Requirements ...................................364

## TABLE OF CONTENTS

Page

B.   Additional Factual Allegations ..........................................................................367

   1.   Brand Name Prescription Manufacturer GSK's Misrepresentations or Omissions of Material Fact in the Labeling of Ranitidine-Containing Products.....................................................................................367

   2.   Generic Prescription Manufacturer Defendants' Misrepresentations or Omissions of Material Fact in the Labeling of Prescription Ranitidine-Containing Products.............................................................372

   3.   Brand Name OTC Manufacturer Defendants' Misrepresentations or Omissions of Material Fact in the Labeling and Packaging of OTC Ranitidine-Containing Products......................................................377

      a.   Misrepresentations or Omissions of Material Fact on the Labels........................................................................................378

      b.   Misrepresentations or Omissions of Material Fact in Packaging ..................................................................................383

   4.   Store-Brand Retailer Defendants' Misrepresentations or Omissions of Material Fact in the Labeling and Packaging of OTC Ranitidine-Containing Products.....................................................................................389

      a.   Walmart's Misrepresentations or Omissions of Material Fact in the Labeling and Packaging of OTC Ranitidine-Containing Products..............................................................390

         (i)   Walmart is a Private Label Distributor for the Private Label Product Equate Ranitidine.........................390

         (ii)   Walmart's Misrepresentations or Omissions of Material Fact on the Labels................................................394

         (iii)   Walmart's Misrepresentations or Omissions of Material Fact in Packaging ...............................................397

      b.   Walgreens' Misrepresentations or Omissions of Material Fact in the Labeling and Packaging of OTC Ranitidine-Containing Products..............................................................400

         (i)   Walgreens Is a Private Label Distributor for the Private-Label Product Wal-Zan Ranitidine ....................400

## TABLE OF CONTENTS

                                                                        Page

  (ii) Walgreens' Misrepresentations or Omissions of
    Material Fact on the Labels ..............................................404

  (iii) Walgreens' Misrepresentations or Omissions of
    Material Fact in Packaging .............................................407

 c. CVS's Misrepresentations or Omissions of Material Fact in
  the Labeling and Packaging of CVS Health Ranitidine ..............410

  (i) CVS Is a Private Label Distributor for the Private-
    Label Product CVS Health Ranitidine ...........................410

  (ii) CVS's Misrepresentations or Omissions of Material
    Fact on the Labels ..........................................................416

  (iii) CVS's Misrepresentations or Omissions of Material
    Fact in Packaging ..........................................................419

 d. Rite-Aid's Misrepresentations or Omissions of Material
  Fact in the Labeling and Packaging of Rite-Aid Acid
  Reducer Ranitidine ....................................................................422

  (i) Rite-Aid Is a Private Label Distributor for the
    Private-Label Product Rite-Aid Acid Reducer
    Ranitidine ......................................................................422

  (ii) Rite-Aid's Misrepresentations or Omissions of
    Material Fact on the Labels ............................................425

  (iii) Rite-Aid Misrepresentations of Omissions of
    Material Fact in Packaging .............................................428

5. Store-Brand Manufacturer Defendants' Misrepresentations or
 Omissions of Material Fact in the Labeling of Ranitidine-
 Containing Products ...........................................................................431

 a. Perrigo's Misrepresentations or Omissions of Material Fact
  in the Labeling and Packaging of Store-Brand Ranitidine
  Products .....................................................................................436

  (i) Perrigo is a Contract Manufacturing Organization
    for Private Label Distributors Walmart, Walgreens,
    CVS and Rite-Aid. .........................................................436

**TABLE OF CONTENTS**

Page

       (ii)     Despite Perrigo's agreements to comply with cGMPs, Perrigo was repeatedly cited by the FDA. .........442

       (iii)    Perrigo's Misrepresentations or Omissions of Material Fact on the Labels for the Private-Label Ranitidine Products ..........................................................444

       (iv)    Perrigo Misrepresentations of Omissions of Material Fact in Packaging ...............................................446

b.     Apotex's Misrepresentations or Omissions of Material Fact in the Labeling and Packaging of Ranitidine Products ...............449

       (i)      Apotex is a Contract Manufacturing Organization for Private Label Distributors Walmart, Walgreens, and Rite-Aid.....................................................449

       (ii)     Despite Apotex's agreements to comply with cGMPs, Apotex was repeatedly cited by the FDA. .........451

       (iii)    Apotex's Misrepresentations or Omissions in the Labeling of Ranitidine Products .....................................454

       (iv)    Apotex Misrepresentations of Omissions of Material Fact in Packaging ...............................................457

c.     Dr. Reddy's Misrepresentations or Omissions of Material Fact in the Labeling and Packaging of Ranitidine ......................460

       (i)      Dr. Reddy's is a Contract Manufacturing Organization for Private Label Distributors Walmart, Walgreens, and CVS. ......................................460

       (ii)     Dr. Reddy's Misrepresentations or Omissions in the Labeling of Ranitidine Products .....................................464

       (iii)    Dr. Reddy's Misrepresentations of Omissions of Material Fact in Packaging ...............................................466

d.     Strides' Misrepresentations or Omissions of Material Fact in the Labeling and Packaging of Private-Label Ranitidine ........469

## TABLE OF CONTENTS

Page

       (i)       Strides is a Contract Manufacturing Organization for Private Label Distributors Walmart, Walgreens, CVS, and Rite-Aid. ........................................................469

       (ii)      Despite Strides' agreements to conform to cGMPs, Strides has repeatedly been cited by the FDA. ...............471

       (iii)     Strides' Misrepresentations or Omissions in the Labeling of Ranitidine Products .....................................473

       (iv)     Strides' Misrepresentations or Omissions of Material Fact in Packaging ..............................................476

VIII.   CAUSES OF ACTION AGAINST BRAND PRESCRIPTION MANUFACTURER DEFENDANT ................................................479

    A.     Causes of Action Against GSK..........................................................479

       1.     Causes of Action on Behalf of the Arizona-GSK Classes ......................481

       2.     Causes of Action on Behalf of the Alaska-GSK Classes........................486

       3.     Causes of Action on Behalf of the Arkansas-GSK Classes....................491

       4.     Causes of Action on Behalf of the California-GSK Classes....................499

       5.     Causes of Action on Behalf of the Colorado-GSK Classes....................514

       6.     Causes of Action on Behalf of the Florida-GSK Classes .......................520

       7.     Causes of Action on Behalf of the Indiana-GSK Classes.......................525

       8.     Causes of Action on Behalf of the Iowa-GSK Classes...........................528

       9.     Causes of Action on Behalf of the Louisiana-GSK Classes ...................535

       10.    Causes of Action on Behalf of the Maryland-GSK Classes ...................542

       11.    Causes of Action on Behalf of the Massachusetts-GSK Classes............550

       12.    Causes of Action on Behalf of the Michigan-GSK Classes ...................557

       13.    Causes of Action on Behalf of the Minnesota-GSK Classes..................563

       14.    Causes of Action on Behalf of the Mississippi-GSK Classes.................570

## TABLE OF CONTENTS

**Page**

15. Causes of Action on Behalf of the Missouri-GSK Classes....................573

16. Causes of Action on Behalf of the New Jersey-GSK Classes ................580

17. Causes of Action on Behalf of the New York-GSK Classes ..................587

18. Causes of Action on Behalf of the Ohio-GSK Classes...........................604

19. Causes of Action on Behalf of the Oklahoma-GSK Classes ..................608

20. Causes of Action on Behalf of the Pennsylvania-GSK Classes .............615

21. Causes of Action on Behalf of the South Carolina-GSK Classes............623

22. Causes of Action on Behalf of the Tennessee-GSK Classes ..................630

23. Causes of Action on Behalf of the Texas-GSK Classes .........................637

24. Causes of Action on Behalf of the Wisconsin-GSK Classes..................645

IX. CAUSES OF ACTION AGAINST BRAND OTC MANUFACTURER DEFENDANTS ....................................................................................................652

    A. Causes of Actions Against GSK.................................................................652

        1. Causes of Action on Behalf of the Arkansas-GSK Classes....................654

        2. Causes of Action on Behalf of the California-GSK Classes....................662

        3. Causes of Action on Behalf of the Colorado-GSK Classes....................678

        4. Causes of Action Brought on Behalf of the Florida Class......................684

        5. Causes of Action on Behalf of the Louisiana-GSK Classes...................689

        6. Causes of Action on Behalf of the Maryland-GSK Classes ...................696

        7. Causes of Action on Behalf of the Michigan-GSK Classes ...................704

        8. Causes of Action on Behalf of the Missouri-GSK Classes.....................709

        9. Causes of Action on Behalf of the Nebraska-GSK Classes....................716

        10. Causes of Action on Behalf of the Nevada-GSK Classes.......................724

**TABLE OF CONTENTS**

Page

11.   Causes of Action on Behalf of the North Carolina-GSK Classes............729

12.   Causes of Action on Behalf of Oregon-GSK Classes..............................736

13.   Causes of Action on Behalf of Puerto Rico-GSK Classes.......................744

14.   Causes of Action on Behalf of the Texas-GSK Classes .........................748

15.   Causes of Action on Behalf of Vermont-GSK Classes ...........................756

16.   Causes of Action on Behalf of the Washington-GSK Classes ...............761

17.   Causes of Action on Behalf of the Wyoming-GSK Classes...................768

B.   Causes of Action Against Pfizer .......................................................772

   1.   Causes of Action on Behalf of the Arkansas-Pfizer Classes .................774

   2.   Causes of Action on Behalf of the California-Pfizer Classes ................782

   3.   Causes of Action on Behalf of the Colorado-Pfizer Classes .................799

   4.   Causes of Action on Behalf of the Connecticut Class ............................805

   5.   Causes of Action on Behalf of the Florida-Pfizer Classes......................811

   6.   Causes of Action on Behalf of the Georgia-Pfizer Classes ....................817

   7.   Causes of Action on Behalf of the Illinois-Pfizer Classes......................823

   8.   Causes of Action on Behalf of the Kentucky-Pfizer Classes.................828

   9.   Causes of Action on Behalf of the Louisiana-Pfizer Classes ................835

   10.   Causes of Action on Behalf of the Maryland-Pfizer Classes.................842

   11.   Causes of Action on Behalf of the Michigan-Pfizer Classes.................850

   12.   Causes of Action on Behalf of the Minnesota-Pfizer Classes ...............856

   13.   Causes of Action Brought on Behalf of the Mississippi-Pfizer Classes..................................................................................................863

   14.   Causes of Action on Behalf of the Missouri-Pfizer Classes...................867

## TABLE OF CONTENTS

**Page**

15. Causes of Action on Behalf of the Nebraska-Pfizer Classes ..................874

16. Causes of Action on Behalf of the Nevada-Pfizer Classes ....................881

17. Causes of Action on Behalf of the New York-Pfizer Classes ................886

18. Causes of Action on Behalf of the North Carolina-Pfizer Classes .........897

19. Causes of Action on Behalf of the North Dakota-Pfizer Classes ...........904

20. Causes of Action on Behalf of the Ohio-Pfizer Classes ........................909

21. Causes of Action on Behalf of the Oklahoma-Pfizer Classes.................913

22. Causes of Action on Behalf of Oregon-Pfizer Classes ..........................921

23. Causes of Action Brought on Behalf of Puerto Rico-Pfizer Classes .......928

24. Causes of Action on Behalf of Tennessee-Pfizer Classes ......................932

25. Causes of Action on Behalf of the Texas-Pfizer Classes.......................939

26. Causes of Action on Behalf of Vermont-Pfizer Classes.........................948

27. Causes of Action on Behalf of the Washington-Pfizer Classes..............953

28. Causes of Action on Behalf of the West Virginia-Pfizer Classes...........960

29. Causes of Action on Behalf of the Wisconsin-Pfizer Classes ................964

30. Causes of Action on Behalf of the Wyoming-Pfizer Classes .................971

C. Causes of Action Against BI..............................................................974

1. Causes of Action on Behalf of the Alabama-BI Classes ........................979

2. Causes of Action on Behalf of the Alaska-BI Classes............................985

3. Causes of Action on Behalf of the Arizona-BI Classes..........................990

4. Causes of Action on Behalf of the Arkansas-BI Classes........................995

5. Causes of Action on Behalf of the California-BI Classes.....................1003

6. Causes of Action on Behalf of the Colorado-BI Classes......................1019

## TABLE OF CONTENTS

**Page**

7.     Causes of Action on Behalf of the Connecticut-BI Classes .................1025

8.     Causes of Action on Behalf of the Florida-BI Classes .........................1032

9.     Causes of Action on Behalf of the Idaho-BI Classes.............................1037

10.   Causes of Action on Behalf of the Indiana-BI Classes..........................1043

11.   Causes of Action on Behalf of the Georgia-BI Classes.........................1047

12.   Causes of Action on Behalf of the Illinois-BI Classes ..........................1053

13.   Causes of Action on Behalf of the Iowa-BI Classes..............................1058

14.   Causes of Action on Behalf of the Kentucky-BI Classes .....................1065

15.   Causes of Action on Behalf of the Louisiana-BI Classes .....................1072

16.   Causes of Action on Behalf of the Maryland-BI Classes .....................1079

17.   Causes of Action on Behalf of the Massachusetts-BI Classes..............1087

18.   Causes of Action on Behalf of the Michigan-BI Classes .....................1094

19.   Causes of Action on Behalf of the Minnesota-BI Classes ....................1100

20.   Causes of Action on Behalf of the Mississippi-BI Classes...................1107

21.   Causes of Action on Behalf of the Missouri-BI Classes.......................1111

22.   Causes of Action on Behalf of the Montana-BI Classes.......................1118

23.   Causes of Action on Behalf of the Nebraska-BI Classes......................1123

24.   Causes of Action on Behalf of the Nevada-BI Classes.........................1130

25.   Causes of Action on Behalf of the New Hampshire-BI Classes............1135

26.   Causes of Action on Behalf of the New Jersey-BI Classes ..................1143

27.   Causes of Action on Behalf of the New Mexico-BI Classes ................1149

28.   Causes of Action on Behalf of the New York-BI Classes ....................1157

29.   Causes of Action on Behalf of the North Carolina-BI Classes.............1168

**TABLE OF CONTENTS**

**Page**

30.   Causes of Action on Behalf of the Ohio-BI Classes..............................1175

31.   Causes of Action on Behalf of the Oklahoma-BI Classes ....................1179

32.   Causes of Action on Behalf of Oregon-BI Classes................................1187

33.   Causes of Action on Behalf of the Pennsylvania-BI Classes ...............1194

34.   Causes of Action on Behalf of Puerto Rico-BI Classes........................1202

35.   Causes of Action on Behalf of the South Carolina-BI Classes.............1206

36.   Causes of Action on Behalf of Tennessee-BI Classes ..........................1212

37.   Causes of Action on Behalf of the Texas-BI Classes ...........................1220

38.   Causes of Action on Behalf of the Utah-BI Classes .............................1228

39.   Causes of Action on Behalf of Vermont-BI Classes ............................1239

40.   Causes of Action on Behalf of the Virginia-BI Classes .......................1245

41.   Causes of Action on Behalf of the Washington-BI Classes .................1253

42.   Causes of Action on Behalf of the West Virginia-BI Classes ..............1260

43.   Causes of Action on Behalf of the Wisconsin-BI Classes....................1264

44.   Causes of Action on Behalf of the Wyoming-BI Classes.....................1271

D.   Causes of Action Against Sanofi ....................................................1274

1.   Causes of Action on Behalf of the Arizona-Sanofi Classes .................1278

2.   Causes of Action on Behalf of the Arkansas-Sanofi Classes ...............1283

3.   Causes of Action on Behalf of the California-Sanofi Classes ..............1291

4.   Causes of Action on Behalf of the Colorado-Sanofi Classes ...............1307

5.   Causes of Action on Behalf of the Connecticut-Sanofi Classes...........1313

6.   Causes of Action on Behalf of the Florida-Sanofi Classes...................1319

7.   Causes of Action on Behalf of the Indiana-Sanofi Classes ..................1325

## TABLE OF CONTENTS

**Page**

8.      Causes of Action on Behalf of the Georgia-Sanofi Classes ..................1328

9.      Causes of Action on Behalf of the Illinois-Sanofi Classes ....................1334

10.     Causes of Action on Behalf of the Iowa-Sanofi Classes .......................1340

11.     Causes of Action on Behalf of the Louisiana-Sanofi Classes................1347

12.     Causes of Action on Behalf of the Maryland-Sanofi Classes................1354

13.     Causes of Action on Behalf of the Massachusetts-Sanofi Classes ........1362

14.     Causes of Action on Behalf of the Michigan-Sanofi Classes ................1369

15.     Causes of Action on Behalf of the Minnesota-Sanofi Classes ..............1375

16.     Causes of Action on Behalf of the Mississippi-Sanofi Classes .............1382

17.     Causes of Action on Behalf of the Missouri-Sanofi Classes .................1386

18.     Causes of Action on Behalf of the Nebraska-Sanofi Classes ................1393

19.     Causes of Action on Behalf of the New Hampshire-Sanofi Classes .....1400

20.     Causes of Action on Behalf of the New Jersey-Sanofi Classes.............1407

21.     Causes of Action on Behalf of the New Mexico-Sanofi Classes...........1414

22.     Causes of Action on Behalf of the New York-Sanofi Classes...............1421

23.     Causes of Action on Behalf of the North Carolina-Sanofi Classes .......1432

24.     Causes of Action on Behalf of the Ohio-Sanofi Classes ......................1439

25.     Causes of Action on Behalf of the Oklahoma-Sanofi Classes...............1443

26.     Causes of Action on Behalf of the Pennsylvania-Sanofi Classes ..........1451

27.     Causes of Action on Behalf of Puerto Rico-Sanofi Classes .................1458

28.     Causes of Action on Behalf of the South Carolina-Sanofi Classes .......1462

29.     Causes of Action on Behalf of Tennessee-Sanofi Classes....................1469

30.     Causes of Action on Behalf of the Texas-Sanofi Classes.....................1476

# TABLE OF CONTENTS

**Page**

      31.    Causes of Action on Behalf of the Utah-Sanofi Classes........................1485

      32.    Causes of Action on Behalf of the Virginia-Sanofi Classes.................1496

      33.    Causes of Action on Behalf of the Washington-Sanofi Classes............1504

X.     CAUSES OF ACTION AGAINST GENERIC PRESCRIPTION
MANUFACTURERS .................................................................................................1511

    A.    Causes of Action Against Amneal ...................................................................1511

      1.    Causes of Action on Behalf of the Alabama-Amneal Classes..............1517

      2.    Causes of Action on Behalf of the Alaska-Amneal Classes.................1522

      3.    Causes of Action on Behalf of the Arkansas-Amneal Classes ..............1527

      4.    Causes of Action on Behalf of the Arizona-Amneal Classes ...............1534

      5.    Causes of Action on Behalf of the California-Amneal Classes............1538

      6.    Causes of Action on Behalf of the Connecticut-Amneal Classes..........1552

      7.    Causes of Action on Behalf of the District of Columbia-Amneal
Classes..................................................................................................1556

      8.    Causes of Action on Behalf of the Florida-Amneal Classes.................1561

      9.    Causes of Action on Behalf of the Georgia-Amneal Classes ...............1565

      10.    Causes of Action on Behalf of the Illinois-Amneal Classes.................1571

      11.    Causes of Action on Behalf of the Indiana-Amneal Classes ................1575

      12.    Causes of Action on Behalf of the Iowa-Amneal Classes ....................1579

      13.    Causes of Action on Behalf of the Kentucky-Amneal Classes..............1585

      14.    Causes of Action on Behalf of the Louisiana-Amneal Classes ............1591

      15.    Causes of Action on Behalf of the Maryland-Amneal Classes.............1598

      16.    Causes of Action on Behalf of the Massachusetts-Amneal Classes......1605

      17.    Causes of Action on Behalf of the Michigan-Amneal Classes.............1611

# TABLE OF CONTENTS

**Page**

18.    Causes of Action on Behalf of the Minnesota-Amneal Classes ............1616

19.    Causes of Action on Behalf of the Mississippi-Amneal Classes...........1622

20.    Causes of Action on Behalf of the Missouri-Amneal Classes..............1626

21.    Causes of Action on Behalf of the Nevada-Amneal Classes.................1632

22.    Causes of Action on Behalf of the New Hampshire-Amneal
       Classes.................................................................................................1637

23.    Causes of Action on Behalf of the New Jersey-Amneal Classes...........1643

24.    Causes of Action on Behalf of the New Mexico-Amneal Classes ........1649

25.    Causes of Action on Behalf of the New York-Amneal Classes ............1656

26.    Causes of Action on Behalf of the North Carolina-Amneal Classes .....1665

27.    Causes of Action on Behalf of the Ohio-Amneal Classes ....................1671

28.    Causes of Action on Behalf of the Oklahoma-Amneal Classes ............1675

29.    Causes of Action on Behalf of the Oregon-Amneal Classes ................1682

30.    Causes of Action on Behalf of the Pennsylvania-Amneal Classes........1689

31.    Causes of Action on Behalf of the Puerto Rico-Amneal Classes ..........1696

32.    Causes of Action on Behalf of the South Carolina-Amneal Classes .....1699

33.    Causes of Action on Behalf of the Tennessee-Amneal Classes ............1706

34.    Causes of Action on Behalf of the Texas-Amneal Classes...................1713

35.    Causes of Action on Behalf of the Utah-Amneal Classes ....................1720

36.    Causes of Action on Behalf of the Vermont-Amneal Classes..............1730

37.    Causes of Action on Behalf of the Virginia-Amneal Classes...............1736

38.    Causes of Action on Behalf of the Washington-Amneal Classes..........1743

39.    Causes of Action on Behalf of the West Virginia-Amneal Classes.......1750

## TABLE OF CONTENTS

**Page**

B.    Causes of Action Against Dr. Reddy's ............................................................1753

    1.    Causes of Action on Behalf of the Alabama-Dr. Reddy's Classes........1759

    2.    Causes of Action on Behalf of the Alaska-Dr. Reddy's Classes ...........1764

    3.    Causes of Action on Behalf of the Arizona-Dr. Reddy's Classes .........1769

    4.    Causes of Action on Behalf of the Arkansas-Dr. Reddy's Classes .......1773

    5.    Causes of Action on Behalf of the California-Dr. Reddy's Classes ......1780

    6.    Causes of Action on Behalf of the Connecticut-Dr. Reddy's Classes ...............................................................................................1794

    7.    Causes of Action on Behalf of the District of Columbia-Dr. Reddy's Classes ...................................................................1798

    8.    Causes of Action on Behalf of the Florida-Dr. Reddy's Classes...........1803

    9.    Causes of Action on Behalf of the Georgia-Dr. Reddy's Classes .........1807

    10.   Causes of Action on Behalf of the Idaho-Dr. Reddy's Classes .............1813

    11.   Causes of Action on Behalf of the Illinois-Dr. Reddy's Classes...........1817

    12.   Causes of Action on Behalf of the Indiana-Dr. Reddy's Classes ..........1822

    13.   Causes of Action on Behalf of the Iowa-Dr. Reddy's Classes ..............1826

    14.   Causes of Action on Behalf of the Kentucky-Dr. Reddy's Classes.......1832

    15.   Causes of Action on Behalf of the Louisiana-Dr. Reddy's Classes ......1838

    16.   Causes of Action on Behalf of the Maryland-Dr. Reddy's Classes.......1845

    17.   Causes of Action on Behalf of the Massachusetts-Dr. Reddy's Classes.................................................................................................1852

    18.   Causes of Action on Behalf of the Michigan-Dr. Reddy's Classes.......1858

    19.   Causes of Action on Behalf of the Minnesota-Dr. Reddy's Classes .....1863

    20.   Causes of Action on Behalf of the Mississippi-Dr. Reddy's Classes....1869

# TABLE OF CONTENTS

**Page**

21. Causes of Action on Behalf of the Missouri-Dr. Reddy's Classes ........1873

22. Causes of Action on Behalf of the Nevada-Dr. Reddy's Classes ..........1879

23. Causes of Action on Behalf of the New Hampshire-Dr. Reddy's Classes....................................................................................................1884

24. Causes of Action on Behalf of the New Jersey-Dr. Reddy's Classes....1891

25. Causes of Action on Behalf of the New Mexico-Dr. Reddy's Classes....................................................................................................1897

26. Causes of Action on Behalf of the New York-Dr. Reddy's Classes .....1904

27. Causes of Action on Behalf of the North Carolina-Dr. Reddy's Classes....................................................................................................1913

28. Causes of Action on Behalf of the Ohio-Dr. Reddy's Classes ..............1919

29. Causes of Action on Behalf of the Oklahoma-Dr. Reddy's Class .........1923

30. Causes of Action on Behalf of the Oregon-Dr. Reddy's Class..............1930

31. Causes of Action on Behalf of the Pennsylvania-Dr. Reddy's Classes....................................................................................................1937

32. Causes of Action on Behalf of the Puerto Rico-Dr. Reddy's Classes....................................................................................................1944

33. Causes of Action on Behalf of the South Carolina-Dr. Reddy's Classes....................................................................................................1947

34. Causes of Action on Behalf of the Tennessee-Dr. Reddy's Classes......1954

35. Causes of Action on Behalf of the Texas-Dr. Reddy's Classes.............1960

36. Causes of Action on Behalf of the Utah-Dr. Reddy's Classes ..............1968

37. Causes of Action on Behalf of the Vermont-Dr. Reddy's Classes ........1978

38. Causes of Action on Behalf of the Virginia-Dr. Reddy's Classes.........1984

39. Causes of Action on Behalf of the Washington-Dr. Reddy's Classes....................................................................................................1991

## TABLE OF CONTENTS

**Page**

40. Causes of Action on Behalf of the West Virginia Class........................1998

41. Causes of Action on Behalf of the Wisconsin-Dr. Reddy's Classes .....2001

C. Causes of Action Against Glenmark................................................................2007

1. Causes of Action on Behalf of the Alabama-Glenmark Classes ...........2013

2. Causes of Action on Behalf of the Alaska-Glenmark Classes...............2018

3. Causes of Action on Behalf of the Arizona-Glenmark Classes.............2023

4. Causes of Action on Behalf of the Arkansas-Glenmark Classes...........2027

5. Causes of Action on Behalf of the California-Glenmark Classes..........2034

6. Causes of Action on Behalf of the Connecticut-Glenmark Classes ......2048

7. Causes of Action on Behalf of the District of Columbia-Glenmark Classes................................................................................................2052

8. Causes of Action on Behalf of the Florida-Glenmark Classes ..............2057

9. Causes of Action on Behalf of the Georgia-Glenmark Classes.............2061

10. Causes of Action on Behalf of the Illinois-Glenmark Classes ..............2067

11. Causes of Action on Behalf of the Indiana-Glenmark Classes..............2071

12. Causes of Action on Behalf of the Iowa-Glenmark Classes..................2075

13. Causes of Action on Behalf of the Kentucky-Glenmark Classes ..........2081

14. Causes of Action on Behalf of the Louisiana-Glenmark Classes ..........2087

15. Causes of Action on Behalf of the Maryland-Glenmark Classes ..........2094

16. Causes of Action on Behalf of the Massachusetts-Glenmark Classes................................................................................................2101

17. Causes of Action on Behalf of the Michigan-Glenmark Classes ..........2107

18. Causes of Action on Behalf of the Minnesota-Glenmark Classes.........2112

19. Causes of Action on Behalf of the Mississippi-Glenmark Classes........2118

## TABLE OF CONTENTS

**Page**

20. Causes of Action on Behalf of the Missouri-Glenmark Classes............2122

21. Causes of Action on Behalf of the Nevada-Glenmark Classes.............2128

22. Causes of Action on Behalf of the New Hampshire-Glenmark Classes.................................................................................2133

23. Causes of Action on Behalf of the New Jersey-Glenmark Classes .......2140

24. Causes of Action on Behalf of the New Mexico-Glenmark Classes .....2146

25. Causes of Action on Behalf of the New York-Glenmark Classes .........2153

26. Causes of Action on Behalf of the North Carolina-Glenmark Classes.................................................................................2162

27. Causes of Action on Behalf of the Ohio-Glenmark Classes.................2168

28. Causes of Action on Behalf of the Oklahoma-Glenmark Classes .........2172

29. Causes of Action on Behalf of the Oregon-Glenmark Classes..............2179

30. Causes of Action on Behalf of the Pennsylvania-Glenmark Classes ....2186

31. Causes of Action on Behalf of the Puerto Rico-Glenmark Classes.......2193

32. Causes of Action on Behalf of the South Carolina-Glenmark Classes.................................................................................2196

33. Causes of Action on Behalf of the Tennessee-Glenmark Classes .........2203

34. Causes of Action on Behalf of the Texas-Glenmark Classes ...............2209

35. Causes of Action on Behalf of the Utah-Glenmark Classes.................2217

36. Causes of Action on Behalf of the Vermont-Glenmark Classes...........2227

37. Causes of Action on Behalf of the Virginia-Glenmark Classes ...........2233

38. Causes of Action on Behalf of the Washington-Glenmark Classes ......2240

39. Causes of Action on Behalf of the West Virginia-Glenmark Classes.................................................................................2247

40. Causes of Action on Behalf of the Wisconsin-Glenmark Classes.........2250

## TABLE OF CONTENTS

**Page**

D.    Causes of Action Against Sandoz ........................................................ 2256

    1.    Causes of Action on Behalf of the Alabama-Sandoz Classes ............... 2262

    2.    Causes of Action on Behalf of the Alaska-Sandoz Classes .................. 2267

    3.    Causes of Action on Behalf of the Arizona-Sandoz Classes ................ 2272

    4.    Causes of Action on Behalf of the Arkansas-Sandoz Classes .............. 2276

    5.    Causes of Action on Behalf of the California-Sandoz Classes ............. 2283

    6.    Causes of Action on Behalf of the Colorado-Sandoz Classes .............. 2297

    7.    Causes of Action on Behalf of the Connecticut-Sandoz Classes .......... 2302

    8.    Causes of Action on Behalf of the District of Columbia-Sandoz Classes ................................................................................................ 2306

    9.    Causes of Action on Behalf of the Florida-Sandoz Classes ................. 2311

    10.    Causes of Action on Behalf of the Georgia-Sandoz Classes ................ 2315

    11.    Causes of Action on Behalf of the Idaho-Sandoz Classes .................... 2320

    12.    Causes of Action on Behalf of the Illinois-Sandoz Classes .................. 2325

    13.    Causes of Action on Behalf of the Indiana-Sandoz Classes ................. 2330

    14.    Causes of Action on Behalf of the Iowa-Sandoz Classes ..................... 2333

    15.    Causes of Action on Behalf of the Kentucky-Sandoz Classes ............. 2340

    16.    Causes of Action on Behalf of the Louisiana-Sandoz Classes ............. 2346

    17.    Causes of Action on Behalf of the Maryland-Sandoz Classes ............. 2352

    18.    Causes of Action on Behalf of the Massachusetts-Sandoz Class .......... 2359

    19.    Causes of Action on Behalf of the Michigan-Sandoz Classes .............. 2366

    20.    Causes of Action on Behalf of the Minnesota-Sandoz Classes ............ 2370

    21.    Causes of Action on Behalf of the Mississippi-Sandoz Classes ........... 2377

## TABLE OF CONTENTS

**Page**

22. Causes of Action on Behalf of the Missouri-Sandoz Classes ...............2380

23. Causes of Action on Behalf of the Nevada-Sandoz Classes .................2387

24. Causes of Action on Behalf of the New Hampshire-Sandoz Classes ....2391

25. Causes of Action on Behalf of the New Jersey-Sandoz Classes ...........2398

26. Causes of Action on Behalf of the New Mexico-Sandoz Classes .........2404

27. Causes of Action on Behalf of the New York-Sandoz Classes .............2411

28. Causes of Action on Behalf of the North Carolina-Sandoz Classes ......2420

29. Causes of Action on Behalf of the Ohio-Sandoz Classes .....................2426

30. Causes of Action on Behalf of the Oklahoma-Sandoz Classes .............2430

31. Causes of Action on Behalf of the Oregon-Sandoz Classes .................2437

32. Causes of Action on Behalf of the Pennsylvania-Sandoz Classes.........2444

33. Causes of Action on Behalf of the Puerto Rico-Sandoz Classes ...........2451

34. Causes of Action on Behalf of the South Carolina-Sandoz Classes ......2454

35. Causes of Action on Behalf of the Tennessee-Sandoz Classes .............2461

36. Causes of Action on Behalf of the Texas-Sandoz Classes ...................2467

37. Causes of Action on Behalf of the Utah-Sandoz Classes .....................2475

38. Causes of Action on Behalf of the Vermont-Sandoz Classes...............2485

39. Causes of Action on Behalf of the Virginia-Sandoz Classes................2491

40. Causes of Action on Behalf of the Washington-Sandoz Classes...........2498

41. Causes of Action on Behalf of the West Virginia-Sandoz Class...........2505

42. Causes of Action on Behalf of the Wisconsin-Sandoz Class ...............2508

E. Causes of Action Against Strides ....................................................2514

1. Causes of Action on Behalf of the Alabama-Strides Classes ...............2520

## TABLE OF CONTENTS

**Page**

2.      Causes of Action on Behalf of the Alaska-Strides Classes....................2525

3.      Causes of Action on Behalf of the Arizona-Strides Classes.................2530

4.      Causes of Action on Behalf of the Arkansas-Strides Classes...............2534

5.      Causes of Action on Behalf of the California-Strides Classes .............2541

6.      Causes of Action on Behalf of the Connecticut-Strides Class..............2555

7.      Causes of Action on Behalf of the District of Columbia-Strides
        Classes...............................................................................................2559

8.      Causes of Action on Behalf of the Florida-Strides Classes .................2564

9.      Causes of Action on Behalf of the Georgia-Strides Classes.................2568

10.     Causes of Action on Behalf of the Illinois-Strides Classes .................2574

11.     Causes of Action on Behalf of the Indiana-Strides Classes.................2578

12.     Causes of Action on Behalf of the Iowa-Strides Classes......................2582

13.     Causes of Action on Behalf of the Kentucky-Strides Classes ..............2588

14.     Causes of Action on Behalf of the Louisiana-Strides Classes..............2594

15.     Causes of Action on Behalf of the Maryland-Strides Classes ..............2601

16.     Causes of Action on Behalf of the Massachusetts-Strides Classes........2608

17.     Causes of Action on Behalf of the Michigan-Strides Classes ..............2614

18.     Causes of Action on Behalf of the Minnesota-Strides Classes.............2619

19.     Causes of Action on Behalf of the Mississippi-Strides Classes ...........2625

20.     Causes of Action on Behalf of the Missouri-Strides Classes ...............2629

21.     Causes of Action on Behalf of the Nevada-Strides Classes .................2635

22.     Causes of Action on Behalf of the New Hampshire-Strides Classes.....2640

23.     Causes of Action on Behalf of the New Jersey-Strides Classes ...........2646

## TABLE OF CONTENTS

**Page**

24.    Causes of Action on Behalf of the New Mexico-Strides Classes ..........2652

25.    Causes of Action on Behalf of the New York-Strides Classes ..............2659

26.    Causes of Action on Behalf of the North Carolina-Strides Classes .......2668

27.    Causes of Action on Behalf of the Ohio-Strides Classes .......................2674

28.    Causes of Action on Behalf of the Oklahoma-Strides Classes ..............2678

29.    Causes of Action on Behalf of the Oregon-Strides Classes ...................2685

30.    Causes of Action on Behalf of the Pennsylvania-Strides Classes .........2692

31.    Causes of Action on Behalf of the Puerto Rico-Strides Classes ............2699

32.    Causes of Action on Behalf of the South Carolina-Strides Classes .......2702

33.    Causes of Action on Behalf of the Tennessee-Strides Classes ..............2709

34.    Causes of Action on Behalf of the Texas-Strides Classes .....................2715

35.    Causes of Action on Behalf of the Utah-Strides Classes .......................2723

36.    Causes of Action on Behalf of the Vermont-Strides Classes ................2733

37.    Causes of Action on Behalf of the Virginia-Strides Classes .................2739

38.    Causes of Action on Behalf of the Washington-Strides Classes ...........2746

39.    Causes of Action on Behalf of the West Virginia-Strides Classes ........2753

40.    Causes of Action on Behalf of the Wisconsin-Strides Classes ..............2756

F.    Causes of Action Against Teva ....................................................................2762

1.    Causes of Action on Behalf of the Alabama-Teva Class ......................2767

2.    Causes of Action on Behalf of the Alaska-Teva Class .........................2772

3.    Causes of Action on Behalf of the Arizona-Teva Class .......................2777

4.    Causes of Action on Behalf of the Arkansas-Teva Classes ..................2781

5.    Causes of Action on Behalf of the California-Teva Classes .................2788

## TABLE OF CONTENTS

**Page**

6.    Causes of Action on Behalf of the Colorado-Teva Classes ................... 2802

7.    Causes of Action on Behalf of the Connecticut-Teva Classes ............. 2807

8.    Causes of Action on Behalf of the Florida-Teva Classes .................... 2811

9.    Causes of Action on Behalf of the Georgia-Teva Classes .................... 2816

10.    Causes of Action on Behalf of the Idaho-Teva Classes ........................ 2821

11.    Causes of Action on Behalf of the Illinois-Teva Class ......................... 2826

12.    Causes of Action on Behalf of the Indiana-Teva Classes ..................... 2830

13.    Causes of Action on Behalf of the Iowa-Teva Classes ......................... 2834

14.    Causes of Action on Behalf of the Kentucky-Teva Classes ................. 2840

15.    Causes of Action on Behalf of the Louisiana-Teva Classes ................. 2846

16.    Causes of Action on Behalf of the Maryland-Teva Classes ................. 2852

17.    Causes of Action on Behalf of the Massachusetts-Teva Classes ........... 2859

18.    Causes of Action on Behalf of the Michigan-Teva Classes ................. 2866

19.    Causes of Action on Behalf of the Minnesota-Teva Classes ................ 2870

20.    Causes of Action on Behalf of the Mississippi-Teva Classes ............... 2877

21.    Causes of Action on Behalf of the Missouri-Teva Classes ................... 2880

22.    Causes of Action on Behalf of the Nevada-Teva Classes ..................... 2887

23.    Causes of Action on Behalf of the New Hampshire-Teva Classes ........ 2891

24.    Causes of Action on Behalf of the New Jersey-Teva Classes .............. 2898

25.    Causes of Action on Behalf of the New Mexico-Teva Classes ............ 2904

26.    Causes of Action on Behalf of the New York-Teva Classes ................ 2911

27.    Causes of Action on Behalf of the North Carolina-Teva Classes .......... 2920

28.    Causes of Action on Behalf of the Ohio-Teva Classes ........................ 2926

# TABLE OF CONTENTS

**Page**

29. Causes of Action on Behalf of the Oklahoma-Teva Classes ................2930

30. Causes of Action on Behalf of the Oregon-Teva Classes.....................2937

31. Causes of Action on Behalf of the Pennsylvania-Teva Classes ...........2944

32. Causes of Action on Behalf of the Puerto Rico-Teva Classes..............2951

33. Causes of Action on Behalf of the South Carolina-Teva Classes..........2954

34. Causes of Action on Behalf of the Tennessee-Teva Classes ................2961

35. Causes of Action on Behalf of the Texas-Teva Classes .......................2968

36. Causes of Action on Behalf of the Vermont-Teva Classes...................2975

37. Causes of Action on Behalf of the Virginia-Teva Classes ...................2981

38. Causes of Action on Behalf of the Washington-Teva Classes .............2989

39. Causes of Action on Behalf of the West Virginia-Teva Classes ..........2995

40. Causes of Action on Behalf of the Wisconsin-Teva Classes................2999

XI. CAUSES OF ACTION AGAINST OTC STORE-BRAND DEFENDANTS .............3005

   A. Causes of Action Against CVS........................................................3005

     1. Causes of Action on Behalf of the California-CVS Classes.................3006

     2. Causes of Action on Behalf of the Connecticut-CVS Classes..............3020

     3. Causes of Action on Behalf of the Georgia-CVS Classes ....................3026

     4. Causes of Action on Behalf of the Indiana-CVS Classes .....................3033

     5. Causes of Action on Behalf of the Michigan-CVS Classes...................3036

     6. Causes of Action on Behalf of the Minnesota-CVS Classes ................3040

     7. Causes of Action on Behalf of the New Mexico-CVS Classes .............3047

     8. Causes of Action on Behalf of the New York-CVS Classes .................3053

     9. Causes of Action on Behalf of the Ohio-CVS Classes .........................3062

## TABLE OF CONTENTS

**Page**

|  |  |  |  |
|---|---|---|---|
| | 10. | Causes of Action on Behalf of the Texas-CVS Classes | 3065 |
| | 11. | Causes of Action on Behalf of the West Virginia-CVS Classes | 3072 |
| B. | | Causes of Action Against Rite Aid | 3079 |
| | 1. | Causes of Action on Behalf of the California-Rite Aid Classes | 3080 |
| | 2. | Causes of Action on Behalf of the Kentucky-Rite Aid Classes | 3094 |
| | 3. | Causes of Action on Behalf of the New York-Rite Aid Classes | 3100 |
| C. | | Causes of Action Against Walgreens | 3109 |
| | 1. | Causes of Action on Behalf of the Arizona- Walgreens Classes | 3110 |
| | 2. | Causes of Action on Behalf of the Arkansas-Walgreens Classes | 3116 |
| | 3. | Causes of Action on Behalf of the California-Walgreens Classes | 3123 |
| | 4. | Causes of Action on Behalf of the Colorado-Walgreens Classes | 3136 |
| | 5. | Causes of Action on Behalf of the Connecticut-Walgreens Classes | 3141 |
| | 6. | Causes of Action on Behalf of the Florida-Walgreens Classes | 3147 |
| | 7. | Causes of Action on Behalf of the Illinois-Walgreens Classes | 3153 |
| | 8. | Causes of Action on Behalf of the Iowa-Walgreens Classes | 3159 |
| | 9. | Causes of Action on Behalf of the Minnesota-Walgreens Classes | 3165 |
| | 10. | Causes of Action on Behalf of the New Mexico-Walgreens Classes | 3172 |
| | 11. | Causes of Action on Behalf of the Puerto Rico-Walgreens Classes | 3178 |
| | 12. | Causes of Action on Behalf of the Texas-Walgreens Classes | 3181 |
| | 13. | Causes of Action on Behalf of the Washington-Walgreens Classes | 3188 |
| D. | | Causes of Action Against Walmart | 3194 |
| | 1. | Causes of Action on Behalf of the Arizona-Walmart Classes | 3196 |
| | 2. | Causes of Action on Behalf of the Arkansas-Walmart Classes | 3200 |

## TABLE OF CONTENTS

**Page**

3.      Causes of Action on Behalf of the Colorado-Walmart Classes ............. 3207

4.      Causes of Action on Behalf of the Florida-Walmart Classes ............... 3212

5.      Causes of Action on Behalf of the Georgia-Walmart Classes .............. 3218

6.      Causes of Action on Behalf of the Illinois-Walmart Classes ............... 3225

7.      Causes of Action on Behalf of the Louisiana-Walmart Classes ............ 3231

8.      Causes of Action on Behalf of the Massachusetts-Walmart Classes ..... 3237

9.      Causes of Action on Behalf of the Minnesota-Walmart Classes ........... 3243

10.     Causes of Action on Behalf of the Mississippi-Walmart Classes .......... 3249

11.     Causes of Action on Behalf of the New Jersey-Walmart Classes ......... 3252

12.     Causes of Action on Behalf of the New Mexico-Walmart Classes ....... 3258

13.     Causes of Action on Behalf of the New York-Walmart Classes ........... 3264

14.     Causes of Action on Behalf of the South Carolina-Walmart Classes .... 3273

15.     Causes of Action on Behalf of the Tennessee-Walmart Classes .......... 3279

16.     Causes of Action on Behalf of the Texas-Walmart Classes ................. 3285

17.     Causes of Action on Behalf of the Virginia-Walmart Classes ............. 3292

18.     Causes of Action on Behalf of the Washington-Walmart Classes ........ 3299

XII.    CAUSES OF ACTION AGAINST OTC STORE-BRAND MANUFACTURERS ..... 3305

A.      Causes of Action Against Apotex with Respect to Private-Label Product Rite-Aid Ranitidine ........................................................................... 3305

        1.      Causes of Action on Behalf of the California-Apotex Classes ............. 3306

        2.      Causes of Action on Behalf of the New York-Apotex Classes ............. 3321

B.      Causes of Action Against Apotex with Respect to Private-Label Product Walgreens Wal-Zan ........................................................................... 3330

        1.      Causes of Action on Behalf of the Arizona-Apotex Classes ................. 3331

## TABLE OF CONTENTS

**Page**

2.      Causes of Action on Behalf of the Arkansas-Apotex Classes ..............3338

3.      Causes of Action on Behalf of the California-Apotex Classes..............3345

4.      Causes of Action on Behalf of the Colorado-Apotex Classes ..............3359

5.      Causes of Action on Behalf of the Florida-Apotex Classes .................3364

6.      Causes of Action on Behalf of the Illinois-Apotex Classes..................3369

7.      Causes of Action on Behalf of the Iowa-Apotex Classes .....................3373

8.      Causes of Action on Behalf of the Michigan-Apotex Classes..............3380

9.      Causes of Action on Behalf of the Minnesota-Apotex Classes.............3385

10.     Causes of Action on Behalf of the New Mexico-Apotex Classes .........3391

11.     Causes of Action on Behalf of the Puerto Rico-Apotex Classes...........3398

12.     Causes of Action on Behalf of the Texas-Apotex Classes ...................3401

13.     Causes of Action on Behalf of the Washington-Apotex Classes...........3409

C.   Causes of Action Against Apotex with Respect to Private-Label Product Walmart Equate Ranitidine................................................................................3415

1.      Causes of Action on Behalf of the Arizona-Apotex Classes ................3417

2.      Causes of Action on Behalf of the Arkansas-Apotex Classes ..............3421

3.      Causes of Action on Behalf of the Colorado-Apotex Classes ..............3428

4.      Causes of Action on Behalf of the Florida-Apotex Classes .................3433

5.      Causes of Action on Behalf of the Georgia-Apotex Classes ................3437

6.      Causes of Action on Behalf of the Illinois-Apotex Classes..................3443

7.      Causes of Action on Behalf of the Louisiana-Apotex Classes ..............3447

8.      Causes of Action on Behalf of the Massachusetts-Apotex Classes.......3454

9.      Causes of Action on Behalf of the Minnesota-Apotex Classes ............3461

**TABLE OF CONTENTS**

**Page**

10. Causes of Action on Behalf of the Mississippi-Apotex Classes............3467

11. Causes of Action on Behalf of the New Jersey-Apotex Classes ...........3471

12. Causes of Action on Behalf of the New Mexico-Apotex Classes ........3477

13. Causes of Action on Behalf of the New York-Apotex Classes ............3484

14. Causes of Action on Behalf of the Tennessee-Apotex Classes ............3493

15. Causes of Action on Behalf of the Texas-Apotex Classes ...................3500

16. Causes of Action on Behalf of the Virginia-Apotex Classes................3507

17. Causes of Action on Behalf of the Washington-Apotex Classes...........3514

D. Causes of Action Against Dr. Reddy's with Respect to Private-Label Product CVS Health Ranitidine .......................................................................3520

   1. Causes of Action on Behalf of the California-Dr. Reddy's Classes ......3522

   2. Causes of Action on Behalf of the Connecticut-Dr. Reddy's Classes...................................................................................................3536

   3. Causes of Action on Behalf of the Georgia-Dr. Reddy's Classes ........3540

   4. Causes of Action on Behalf of the Indiana-Dr. Reddy's Classes ..........3545

   5. Causes of Action on Behalf of the Michigan-Dr. Reddy's Classes.......3549

   6. Causes of Action on Behalf of the Minnesota-Dr. Reddy's Classes .....3554

   7. Causes of Action on Behalf of the New Mexico-Dr. Reddy's Classes...................................................................................................3560

   8. Causes of Action on Behalf of the New York-Dr. Reddy's Classes .....3567

   9. Causes of Action on Behalf of the Ohio-Dr. Reddy's Classes .............3576

   10. Causes of Action on Behalf of the Texas-Dr. Reddy's Classes............3580

   11. Causes of Action on Behalf of the West Virginia-Dr. Reddy's Classes...................................................................................................3587

## TABLE OF CONTENTS

**Page**

E.  Causes of Action Against Dr. Reddy's with Respect to Private-Label Product Walgreens Wal-Zan ............................................................................3594

    1.  Causes of Action on Behalf of the Arizona-Dr. Reddy's Classes .........3596

    2.  Causes of Action on Behalf of the Arkansas-Dr. Reddy's Classes .......3600

    3.  Causes of Action on Behalf of the California-Dr. Reddy's Classes .......3607

    4.  Causes of Action on Behalf of the Colorado-Dr. Reddy's Classes .......3621

    5.  Causes of Action on Behalf of the Connecticut-Dr. Reddy's Classes.............................................................................................3626

    6.  Causes of Action on Behalf of the Florida-Dr. Reddy's Classes...........3630

    7.  Causes of Action on Behalf of the Illinois-Dr. Reddy's Classes...........3635

    8.  Causes of Action on Behalf of the Iowa-Dr. Reddy's Classes ..............3640

    9.  Causes of Action on Behalf of the Minnesota-Dr. Reddy's Classes .....3646

    10.  Causes of Action on Behalf of the New Mexico-Dr. Reddy's Classes...............................................................................................3653

    11.  Causes of Action on Behalf of the Puerto Rico-Dr. Reddy's Classes...............................................................................................3660

    12.  Causes of Action on Behalf of the Texas-Dr. Reddy's Classes.............3663

    13.  Causes of Action on Behalf of the Washington-Dr. Reddy's Classes...............................................................................................3671

F.  Causes of Action Against Dr. Reddy's with Respect to Private-Label Product Walmart Equate Ranitidine ...............................................................3677

    1.  Causes of Action on Behalf of the Arizona-Dr. Reddy's Classes .........3679

    2.  Causes of Action on Behalf of the Arkansas-Dr. Reddy's Classes .......3683

    3.  Causes of Action on Behalf of the Colorado-Dr. Reddy's Classes .......3690

    4.  Causes of Action on Behalf of the Florida-Dr. Reddy's Classes...........3695

    5.  Causes of Action on Behalf of the Georgia-Dr. Reddy's Classes .........3699

## TABLE OF CONTENTS

Page

6.     Causes of Action on Behalf of the Illinois-Dr. Reddy's Classes ...........3707

7.     Causes of Action on Behalf of the Louisiana-Dr. Reddy's Classes ......3711

8.     Causes of Action on Behalf of the Massachusetts-Dr. Reddy's Classes...................................................................................................3718

9.     Causes of Action on Behalf of the Minnesota-Dr. Reddy's Classes .....3725

10.     Causes of Action on Behalf of the Mississippi-Dr. Reddy's Classes ....3731

11.     Causes of Action on Behalf of the New Jersey-Dr. Reddy's Classes....3735

12.     Causes of Action on Behalf of the New Mexico-Dr. Reddy's Classes...................................................................................................3741

13.     Causes of Action on Behalf of the New York-Dr. Reddy's Classes .....3748

14.     Causes of Action on Behalf of the South Carolina-Dr. Reddy's Classes...................................................................................................3757

15.     Causes of Action on Behalf of the Tennessee-Dr. Reddy's Classes......3763

16.     Causes of Action on Behalf of the Texas-Dr. Reddy's Classes.............3770

17.     Causes of Action on Behalf of the Virginia-Dr. Reddy's Classes.........3777

18.     Causes of Action on Behalf of the Washington-Dr. Reddy's Classes...................................................................................................3784

G.     Causes of Action Against Perrigo with Respect to Private-Label Product CVS Health Ranitidine ...................................................................................3791

1.     Causes of Action on Behalf of the California-Perrigo Classes..............3792

2.     Causes of Action on Behalf of the Connecticut-Perrigo Classes...........3806

3.     Causes of Action on Behalf of the Georgia-Perrigo Classes .................3810

4.     Causes of Action on Behalf of the Indiana-Perrigo Classes..................3816

5.     Causes of Action on Behalf of the Michigan-Perrigo Classes...............3819

6.     Causes of Action on Behalf of the Minnesota-Perrigo Classes .............3826

**TABLE OF CONTENTS**

**Page**

7.     Causes of Action on Behalf of the New Mexico-Perrigo Classes .........3832

8.     Causes of Action on Behalf of the New York-Perrigo Classes .............3839

9.     Causes of Action on Behalf of the Ohio-Perrigo Classes ....................3849

10.    Causes of Action on Behalf of the Texas-Perrigo Classes ...................3852

11.    Causes of Action on Behalf of the West Virginia-Perrigo Classes .......3859

H.   Causes of Action Against Perrigo with Respect to Private-Label Product
     Rite-Aid Ranitidine .........................................................................................3866

1.     Causes of Action on Behalf of the California-Perrigo Classes.............3867

2.     Causes of Action on Behalf of the Kentucky-Perrigo Classes .............3882

3.     Causes of Action on Behalf of the New York Class..............................3888

I.   Causes of Action Against Perrigo with Respect to Private-Label Product
     Walgreens Wal-Zan ........................................................................................3897

1.     Causes of Action on Behalf of the Arizona-Perrigo Classes ................3898

2.     Causes of Action on Behalf of the Arkansas-Perrigo Classes ..............3905

3.     Causes of Action on Behalf of the California-Perrigo Classes.............3912

4.     Causes of Action on Behalf of the Colorado-Perrigo Classes ..............3926

5.     Causes of Action on Behalf of the Connecticut-Perrigo Classes..........3933

6.     Causes of Action on Behalf of the Florida-Perrigo Classes .................3939

7.     Causes of Action on Behalf of the Illinois-Perrigo Classes..................3945

8.     Causes of Action on Behalf of the Iowa-Perrigo Classes .....................3952

9.     Causes of Action on Behalf of the Minnesota-Perrigo Classes ............3958

10.    Causes of Action on Behalf of the New Mexico-Perrigo Classes .........3965

11.    Causes of Action on Behalf of the Puerto Rico-Perrigo Classes ..........3972

12.    Causes of Action on Behalf of the Texas-Perrigo Classes ...................3975

## TABLE OF CONTENTS

**Page**

13. Causes of Action on Behalf of the Washington-Perrigo Classes ...........3982

J. Causes of Action Against Perrigo with Respect to Private-Label Product Walmart Equate Ranitidine .................................................................................3988

1. Causes of Action on Behalf of the Arizona-Perrigo Classes .................3990

2. Causes of Action on Behalf of the Arkansas-Perrigo Classes ..............3995

3. Causes of Action on Behalf of the Colorado-Perrigo Classes ..............4002

4. Causes of Action on Behalf of the Florida-Perrigo Classes ..................4008

5. Causes of Action on Behalf of the Georgia-Perrigo Classes ................4015

6. Causes of Action on Behalf of the Illinois-Perrigo Classes...................4022

7. Causes of Action on Behalf of the Louisiana-Perrigo Classes ..............4029

8. Causes of Action on Behalf of the Massachusetts-Perrigo Classes.......4035

9. Causes of Action on Behalf of the Minnesota-Perrigo Classes ............4042

10. Causes of Action on Behalf of the Mississippi-Perrigo Classes............4048

11. Causes of Action on Behalf of the New Jersey-Perrigo Classes ...........4052

12. Causes of Action on Behalf of the New Mexico-Perrigo Classes .........4058

13. Causes of Action on Behalf of the New York-Perrigo Classes .............4065

14. Causes of Action on Behalf of the Tennessee-Perrigo Classes ............4074

15. Causes of Action on Behalf of the Texas-Perrigo Classes ...................4081

16. Causes of Action on Behalf of the Virginia-Perrigo Classes.................4088

17. Causes of Action on Behalf of the Washington-Perrigo Classes...........4095

K. Causes of Action Against Strides with Respect to Private-Label Product CVS Health Ranitidine ...................................................................................4101

1. Causes of Action on Behalf of the California-Strides Classes ..............4103

2. Causes of Action on Behalf of the Connecticut-Strides Classes ..........4117

## TABLE OF CONTENTS

**Page**

3. Causes of Action on Behalf of the Georgia-Strides Classes..................4123

4. Causes of Action on Behalf of the Indiana-Strides Classes..................4130

5. Causes of Action on Behalf of the Michigan-Strides Classes ..............4134

6. Causes of Action on Behalf of the Minnesota-Strides Classes..............4140

7. Causes of Action on Behalf of the New Mexico-Strides Classes..........4147

8. Causes of Action on Behalf of the New York-Strides Classes..............4154

9. Causes of Action on Behalf of the Ohio-Strides Classes......................4163

10. Causes of Action on Behalf of the Texas-Strides Classes ....................4166

11. Causes of Action on Behalf of the West Virginia-Strides Classes........4173

L. Causes of Action Against Strides with Respect to Private-Label Product Rite-Aid Ranitidine .........................................................................................4181

1. Causes of Action on Behalf of the California-Strides Classes ..............4182

2. Causes of Action on Behalf of the Kentucky-Strides Classes ..............4196

3. Causes of Action on Behalf of the New York-Strides Classes..............4202

M. Causes of Action Against Strides with Respect to Private-Label Product Walgreens Wal-Zan .........................................................................................4211

1. Causes of Action on Behalf of the Arizona-Strides Classes..................4213

2. Causes of Action on Behalf of the Arkansas-Strides Classes...............4219

3. Causes of Action on Behalf of the California-Strides Classes ..............4226

4. Causes of Action on Behalf of the Colorado-Strides Classes...............4240

5. Causes of Action on Behalf of the Connecticut-Strides Classes ..........4247

6. Causes of Action on Behalf of the Florida-Strides Classes ..................4253

7. Causes of Action on Behalf of the Illinois-Strides Classes ..................4259

8. Causes of Action on Behalf of the Iowa-Strides Classes......................4266

# TABLE OF CONTENTS

**Page**

9. Causes of Action on Behalf of the Minnesota-Strides Classes .............4272

10. Causes of Action on Behalf of the New Mexico-Strides Classes ..........4279

11. Causes of Action on Behalf of the Puerto Rico-Strides Classes ...........4286

12. Causes of Action on Behalf of the Texas-Strides Classes ....................4289

13. Causes of Action on Behalf of the Washington-Strides Classes ..........4296

N. Causes of Action Against Strides with Respect to Private-Label Product Walmart Equate Ranitidine ...............................................................................4302

1. Causes of Action on Behalf of the Arizona-Strides Classes .................4304

2. Causes of Action on Behalf of the Arkansas-Strides Classes ...............4311

3. Causes of Action on Behalf of the Colorado-Strides Classes ...............4318

4. Causes of Action on Behalf of the Florida-Strides Classes ..................4324

5. Causes of Action on Behalf of the Georgia-Strides Classes .................4331

6. Causes of Action on Behalf of the Illinois-Strides Classes ..................4338

7. Causes of Action on Behalf of the Louisiana-Strides Classes ..............4345

8. Causes of Action on Behalf of the Massachusetts-Strides Classes........4351

9. Causes of Action on Behalf of the Minnesota-Strides Classes .............4358

10. Causes of Action on Behalf of the Mississippi-Strides Classes ...........4364

11. Causes of Action on Behalf of the New Jersey-Strides Classes ...........4368

12. Causes of Action on Behalf of the New Mexico-Strides Classes ..........4374

13. Causes of Action on Behalf of the New York-Strides Classes .............4381

14. Causes of Action on Behalf of the Tennessee-Strides Classes .............4390

15. Causes of Action on Behalf of the Texas-Strides Classes ....................4397

16. Causes of Action on Behalf of the Virginia-Strides Classes ................4404

## TABLE OF CONTENTS

**Page**

17. Causes of Action on Behalf of the Washington-Strides Classes ...........4411

XIII.   PRAYER FOR RELIEF ................................................4417

XIV.   JURY DEMAND .......................................................4418

Pursuant to Pretrial Order No. 31 and this Court's Orders [DE 2512, 2513, 2515, 2532, 2716 and 2720], Plaintiffs file this Consolidated Amended Consumer Economic Loss Class Action Complaint on behalf of themselves and all others similarly situated against the defendants named herein (collectively, "Defendants"), and seek damages and equitable relief to remedy the economic losses resulting from Defendants' design, manufacture, marketing, packaging, labeling, handling, distribution, storage, and/or sale of over-the-counter ("OTC") and prescription ranitidine-containing medications, including those sold under the brand-name Zantac (collectively, "Ranitidine-Containing Products"). Plaintiffs' allegations are based upon personal knowledge as to Plaintiffs' own conduct, investigation of counsel based on publicly-available information, and the limited discovery conducted to date.

## I.    INTRODUCTION

Zantac is the branded name for ranitidine, a drug that was touted and sold for nearly four decades as a safe and effective heartburn and indigestion drug. Zantac and other Ranitidine-Containing Products were among the most popular heartburn drugs purchased by U.S. consumers. Indeed, Zantac was the first-ever "blockbuster" drug to reach $1 billion in sales.

This unprecedented sales volume, and the additional billions of dollars generated through sales of Zantac and other Ranitidine-Containing Products for nearly 40 years, were made possible because of a deceptive and unlawful scheme by Defendants to defraud consumers regarding the purported safety of Zantac and other Ranitidine-Containing Products, and by concealing from consumers the known dangers and risks associated with use of this drug.

But, recent scientific studies confirmed what Defendants knew or should have known all along: ranitidine transforms over time and under natural conditions into high levels of N-Nitrosodimethylamine ("NDMA"), a carcinogen that is potent and dangerous. The U.S. Food &

Drug Administration ("FDA") recognizes NDMA as "a probable human carcinogen"[1] and the World Health Organization ("WHO") has described it as "clearly carcinogenic."[2]  Its only use is to induce cancerous tumors in animals in laboratory research and experiments; it has no medicinal purpose.

In 2019, an analytical pharmacy ran tests on Zantac and discovered the link between ranitidine and NDMA and that ranitidine itself is unstable and can break down into NDMA, particularly in the environment of the stomach.  On September 13, 2019, the analytical pharmacy filed a citizen petition asking the FDA to recall all products that contain ranitidine.  In early October 2019, the FDA ordered testing on Zantac and other Ranitidine-Containing Products and specified the protocols for such testing.  Within days of the FDA's announcement, certain Defendants recalled Zantac and Ranitidine-Containing Products in the United States and internationally.  On November 1, 2019, the FDA announced that its recent testing showed "unacceptable levels" of NDMA in Zantac and other Ranitidine-Containing Products, and requested that all manufacturers recall Zantac and other Ranitidine-Containing Products. Ultimately, on April 1, 2020, the FDA called for a withdrawal of Zantac and all other Ranitidine-Containing Products in the United States, citing unacceptable levels of NDMA in those drugs.

Over the nearly 40 years that Zantac and other Ranitidine-Containing Products were marketed and touted as safe and effective, Defendants uniformly deceived millions of U.S. consumers into purchasing a defective, misbranded, adulterated, and harmful drug.  Defendants

---

[1]   U.S. Food & Drug Admin., *FDA Requests Removal of All Ranitidine Products (Zantac) from the Market* (Apr. 01, 2020), https://www.fda.gov/news-events/press-announcements/fda-requests-removal-all-ranitidine-products-zantac-market.

[2]   R.G. Liteplo *et al.*, *Concise International Chemical Assessment Document 38: N-Nitrosodimethylamine*, at 4, World Health Organization (2002), https://www.who.int/ipcs/publications/cicad/en/cicad38.pdf.

engaged in a national, pervasive, and decades-long campaign to conceal the inherent dangers and risks associated with ranitidine use and to mislead consumers into believing that Zantac and other Ranitidine-Containing Products were safe for human consumption.  Through product labels and packaging; print, television, radio, and online advertising; Internet websites; and social media, Defendants uniformly represented that Zantac and other Ranitidine-Containing Products were safe, *e.g.*, so safe that they could be used frequently, for chronic conditions, and for fast relief with nitrite- and nitrate-rich foods (*i.e.* foods that induce heartburn).

These representations were false, deceptive, and misleading when made, and they omitted material facts known to Defendants regarding the true risks of Zantac and other Ranitidine-Containing Products.  Defendants knew or should have known that ranitidine is an unstable molecule that breaks down under normal conditions into dangerous NDMA, and that this breakdown process is made worse when Zantac and/or other Ranitidine-Containing Products are used in the manner directed or when exposed to routine heat or humidity.

These material facts were known to, or should have been known by, each Defendant, which was duty-bound to investigate the potential dangers and risks associated with Zantac and other Ranitidine-Containing Products to ensure that its drug was safe for human consumption.

Despite Defendants' knowledge of, or duty to know, these material facts, Defendants did not disclose that Zantac and other Ranitidine-Containing Products were unsafe; that the ranitidine molecule breaks down into carcinogenic NDMA at levels that exceed the maximum daily limit; that Zantac and other Ranitidine-Containing Products should not be used for long-term periods; or that Zantac and other Ranitidine-Containing Products should not be consumed with nitrite- and nitrate-rich foods.

As a direct and proximate result of Defendants' actions and omissions, Plaintiffs and the Classes suffered economic losses through their purchase of a drug that was unsafe at the point of sale.  Hence, Plaintiffs and the Classes suffered economic losses.

Defendants violated Federal and/or State laws and common law by designing, manufacturing, distributing, packaging, labeling, marketing, and/or selling Zantac and other Ranitidine-Containing Products without adequate testing or labels and warnings; by failing to ensure the proper conditions for the manufacture, transportation, handling, and storage of Zantac and other Ranitidine-Containing Products; and by misrepresenting and/or not disclosing material facts regarding the safety of Zantac and other Ranitidine-Containing Products and the dangers and risks associated with their intended use.  Plaintiffs and the Classes seek redress to compensate for their economic losses and to deter the type of misconduct that caused the economic losses they sustained.

This Consolidated Amended Consumer Economic Loss Class Action Complaint is drafted and organized based on the Court's recent Orders.  Plaintiffs, on behalf of the RICO Class, first assert claims against the Brand Manufacturers of OTC Zantac for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962(c)-(d).  Plaintiffs, on behalf of their respective State Classes, then assert separate state law claims against each Defendant, under the laws of the state in which each Plaintiff resided at the time of purchase, for violations of state consumer protection laws, breach of implied warranties, and unjust enrichment.  Plaintiffs' state law claims are organized by Defendant group, then by Defendant, and finally by the state in which each Plaintiff purchased the applicable Zantac and/or other Ranitidine-Containing Products, as follows:

(a)     Brand   Prescription   Manufacturer   GSK   for:   (i)   intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for prescription Zantac including that it was inherently defective, unreasonably dangerous, not fit to be used for its intended purpose, contained elevated levels of NDMA that rendered it unsafe and unfit for human consumption, and/or caused cancer; and (ii) printing expiration dates on its labels that exceeded the time period during which the product remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed;

(b)     Brand OTC Manufacturers GSK, Pfizer, BI, and Sanofi for knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for OTC Zantac including by: (i) omitting that it was inherently defective, unreasonably dangerous, not fit to be used for its intended purpose, contained elevated levels of NDMA that rendered it unsafe and unfit for human consumption, and/or caused cancer; (ii) printing expiration dates on its labels that exceeded the time period during which the product remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed; and (iii) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date;

(c)     Generic Prescription Manufacturers Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva for printing expiration dates on the labels for their generic prescription Ranitidine-Containing Products that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed;

(d)     Store Brand Defendants CVS, Rite-Aid, Walgreens, and Walmart for, directly or through their agents, knowingly and intentionally misrepresenting, omitting,

- 5 -

concealing, and failing to disclose material facts on the labels for their store-brand OTC Ranitidine-Containing Products, including by: (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed; and

   (e) Store Brand Manufacturers Apotex, Dr. Reddy's, Perrigo, and Strides for knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the store-brand OTC Ranitidine-Containing Products, including by: (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

## II. PARTIES

### A. Defendants

1. Defendants are entities that designed, manufactured, marketed, distributed, labeled, packaged, handled, stored, and/or sold Zantac or generic Ranitidine-Containing Products.

1.      **Brand Manufacturer Defendants (Prescription and OTC)**

**Boehringer Ingelheim (BI)[3]**

2.      Defendant Boehringer Ingelheim Pharmaceuticals, Inc. is a Delaware corporation with its principal place of business located at 900 Ridgebury Road, Ridgefield, Connecticut 06877. Defendant Boehringer Ingelheim Pharmaceuticals, Inc. is a citizen of Delaware and Connecticut.

3.      Defendant Boehringer Ingelheim Corporation is a Nevada corporation with its principal place of business located at 900 Ridgebury Road, Ridgefield, Connecticut 06877. Defendant Boehringer Ingelheim Corporation is a citizen of Nevada and Connecticut.

4.      Defendant Boehringer Ingelheim USA Corporation is a Delaware corporation with its principal place of business located at 900 Ridgebury Road, Ridgefield, Connecticut 06877. Defendant Boehringer Ingelheim USA Corporation is a citizen of Delaware and Connecticut.

5.      Defendant Boehringer Ingelheim International GmbH is a limited liability company formed and existing under the laws of Germany, having a principal place of business at Binger Strasse 173, 55216 Ingelheim AM Rhein, Rheinland-Phalz, Germany.  Defendant Boehringer Ingelheim International GmbH is a citizen of Germany.

6.      Defendant Boehringer Ingelheim Promeco, S.A. de C.V. is a foreign corporation organized and existing under the laws of Mexico with its principal place of business located at Maiz No. 49, Barrio Xaltocan, Xochimilco, Ciudad de Mexico, 16090 Mexico. Defendant Boehringer Ingelheim Promeco, S.A. de C.V. is a citizen of Mexico.

7.      Defendant Boehringer Ingelheim Pharmaceuticals, Inc. is a direct or indirect subsidiary of Defendants Boehringer Ingelheim Corporation and Boehringer Ingelheim USA

---

[3]   Defendant Boehringer Ingelheim also manufactured generic ranitidine under ANDA 074662, as well as through its former subsidiary Ben Venue Laboratories Inc. d/b/a Bedford Laboratories (ANDA 074764).  Ben Venue Laboratories Inc. is no longer in operation.

Corporation, which are themselves wholly owned, directly or indirectly, by Defendant Boehringer Ingelheim International GmbH.[4]  Collectively, all of these entities and Defendant Boehringer Ingelheim Promeco, S.A. de C.V. shall be referred to as "Boehringer Ingelheim" or "BI."

8.     Defendant BI is a manufacturer, distributor, and seller of brand OTC Zantac.

### GlaxoSmithKline (GSK)

9.     Defendant GlaxoSmithKline LLC is a Delaware limited liability company with its principal place of business located at Five Crescent Drive, Philadelphia, Pennsylvania 19112. Defendant GlaxoSmithKline LLC's sole member is Defendant GlaxoSmithKline (America) Inc., a Delaware corporation with its principal place of business in that state.   Defendant GlaxoSmithKline LLC is a citizen of Delaware.

10.     Defendant GlaxoSmithKline (America) Inc. is a Delaware corporation with its principal place of business located at 1105 North Market Street, Suite 622, Wilmington, Delaware 19801.  Defendant GlaxoSmithKline (America) Inc. is a citizen of Delaware.

11.     Defendant GlaxoSmithKline plc is a public limited company formed and existing under the laws of the United Kingdom, having a principal place of business at 980 Great West Road, Brentford Middlesex XO, TW8 9GS, United Kingdom.  Defendant GlaxoSmithKline plc is a citizen of the United Kingdom.

---

[4]     Pursuant to the Joint Stipulation Relating to Boehringer Ingelheim Defendants [DE 1478], Defendants Boehringer Ingelheim Pharmaceuticals, Inc. stipulated that Defendants Boehringer Ingelheim International GmbH and Boehringer Ingelheim Promeco, S.A. de C.V. are affiliated companies, and that Defendant Boehringer Ingelheim Pharmaceuticals, Inc. is the proper party for purposes of all claims asserted against Defendants Boehringer Ingelheim International GmbH and Boehringer Ingelheim Promeco, S.A. de C.V. in this litigation.

12.     Defendants GlaxoSmithKline LLC and GlaxoSmithKline (America) Inc. are subsidiaries of Defendant GlaxoSmithKline plc.[5]  Collectively, all of these entities shall be referred to as "GSK."

13.     Defendant GSK is a manufacturer, distributor, and seller of brand prescription and OTC Zantac.

### Pfizer

14.     Defendant Pfizer Inc. ("Pfizer") is a Delaware corporation with its principal place of business located at 235 East 42nd Street, New York, New York 10017.  Defendant Pfizer is a citizen of Delaware and New York.

15.     Defendant Pfizer is a manufacturer, distributor, and seller of brand OTC Zantac.

### Sanofi

16.     Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability company with its principal place of business located at 55 Corporate Drive, Bridgewater, New Jersey 08807. Defendant Sanofi-Aventis U.S. LLC's sole member is Defendant Sanofi U.S. Services, Inc., a Delaware corporation with its principal place of business in New Jersey.  Defendant Sanofi-Aventis U.S. LLC is a citizen of Delaware and New Jersey.

17.     Defendant Sanofi US Services Inc. is a Delaware corporation with its principal place of business located at 55 Corporate Drive, Bridgewater, New Jersey 08807.  Defendant Sanofi US Services Inc. is a citizen of Delaware and New Jersey.

---

[5]     Pursuant to the Joint Stipulation Relating to GlaxoSmithKline PLC [DE 1470], Defendant GlaxoSmithKline LLC stipulated that Defendants GlaxoSmithKline plc is an affiliated company, and that Defendant GlaxoSmithKline LLC is the proper party for purposes of all claims asserted against Defendant GlaxoSmithKline plc in this litigation.

18.     Defendant Sanofi SA is a corporation formed and existing under the laws of France, having a principal place of business at 54 Rue La Boetie, 8th Arrondissement, Paris, France 75008. Defendant Sanofi SA is a citizen of France.

19.     Defendant Patheon Manufacturing Services LLC is a Delaware limited liability company with its principal place of business located at 5900 Martin Luther King Jr. Highway, Greenville, North Carolina 27834.  Thermo Fisher Scientific, Inc. is the sole member of Defendant Patheon Manufacturing Services LLC.  Thermo Fisher Scientific, Inc. is a Delaware corporation with its principal place of business in Massachusetts.  Defendant Patheon Manufacturing Services LLC is a citizen of Delaware and Massachusetts.

20.     Defendant Chattem, Inc. is a Tennessee corporation with its principal place of business located at 1715 West 38th Street Chattanooga, Tennessee 37409.  Defendant Chattem, Inc. is a citizen of Tennessee.  Defendant Chattem, Inc. purchased ranitidine and repackaged and/or relabeled it under its own brand.

21.     Defendants Sanofi-Aventis U.S. LLC, Sanofi US Services Inc., and Chattem, Inc. are subsidiaries of Defendant Sanofi SA.[6]  Defendants Patheon Manufacturing Services LLC and Boehringer Ingelheim Promeco, S.A. de C.V. packaged and manufactured the finished Zantac product for Sanofi.  Collectively, all of these entities shall be referred to as "Sanofi."

22.     Defendant Sanofi is a manufacturer, distributor, and seller of brand OTC Zantac.

23.     Defendants BI, GSK, Pfizer, and Sanofi, shall be collectively referred to as the "Brand Manufacturer Defendants."  At all relevant times, the Brand Manufacturer Defendants

---

[6]     Pursuant to the Joint Stipulation Relating to Sanofi Defendants [DE 1450], Defendants Sanofi-Aventis U.S. LLC and Sanofi US Services Inc. stipulated that Defendant Sanofi SA is an affiliated company, and that Defendants Sanofi-Aventis U.S. LLC and Sanofi US Services Inc. are the proper parties for purposes of all claims asserted against Sanofi SA relief sought in this litigation.

have conducted business and derived substantial revenue from their design, manufacture, testing, marketing, labeling, packaging, handling, distribution, storage, and/or sale of Zantac within each of the states and territories of the United States, Puerto Rico, and the District of Columbia.[7]

### 2. Generic Prescription Manufacturer and/or Store-Brand Manufacturer Defendants

**Amneal**

24.     Defendant Amneal Pharmaceuticals LLC is a Delaware limited liability company with its principal place of business located at 400 Crossing Boulevard, Bridgewater, New Jersey 08807.  The sole member of Defendant Amneal Pharmaceuticals LLC is non-party Amneal Pharmaceuticals, Inc., a Delaware corporation with its principal place of business in New Jersey.  Amneal Pharmaceuticals LLC is a citizen of Delaware and New Jersey.

25.     Defendant Amneal Pharmaceuticals LLC registered an establishment with the United States Food and Drug Administration ("FDA"), allowing it to manufacture, repack, or relabel drug products within the United States.[8]

26.     Defendant Amneal Pharmaceuticals of New York, LLC is a Delaware limited liability company with its principal place of business located at 50 Horseblock Road, Brookhaven, New York 11719.  The membership interest of Defendant Amneal Pharmaceuticals of New York, LLC is owned by non-party Amneal Pharmaceuticals, Inc., a Delaware corporation with its principal place of business located in New Jersey, through an intervening limited liability company.  Defendant Amneal Pharmaceuticals of New York, LLC is a citizen of Delaware and New Jersey.

---

[7]    All references to "States" include American Samoa, Guam, the Northern Mariana Islands, Puerto Rico, the U.S. Virgin Islands, and the District of Columbia.

[8]    Amneal_prod1_0000001827; Amneal_prod1_0000001129.

27.     Defendant Amneal Pharmaceuticals of New York, LLC applied to the FDA for the right to manufacture and sell a generic form of ranitidine and subsequently received that approval as discussed herein.  Defendant Amneal Pharmaceuticals of New York, LLC applied to the FDA for the power and privilege of listing and labeling Ranitidine-Containing Products for sale in all states and territories within the United States.  Defendant Amneal Pharmaceuticals of New York, LLC registered an establishment with the FDA, allowing it to manufacture, repack, or relabel drug products within the United States.[9]

28.     Defendants Amneal Pharmaceuticals LLC and Amneal Pharmaceuticals of New York, LLC are subsidiaries of non-party Amneal Pharmaceuticals, Inc.  Collectively, these entities shall be referred to as "Amneal."

29.     Defendant Amneal is a manufacturer, distributor, and seller of generic prescription Ranitidine-Containing Products.

### Apotex

30.     Defendant Apotex Corporation is a Delaware corporation with its principal place of business located at 2400 North Commerce Parkway, Suite 400, Weston, Florida 33326. Defendant Apotex Corporation is a citizen of Delaware and Florida.

31.     Defendant Apotex Corporation applied to the FDA for the power and privilege of listing and labeling Ranitidine-Containing Products for sale in all states and territories within the United States. Further, Defendant Apotex Corporation is Defendant Apotex Inc.'s appointed agent in the United States for the very purpose of lawfully selling and distributing drugs including Ranitidine-Containing Products . Defendant Apotex Corporation as a regulatory agent also fulfills a regulatory compliance role for Defendant Apotex Inc. by regularly filing materials the FDA

---

[9]    Amneal_prod1_0000001129.

requires abbreviated new drug application ("ANDA") holders to provide to maintain their right to manufacture drugs.[10]

32.     Defendant Apotex Inc. is a corporation organized and existing under the laws of Canada with its principal place of business located at 150 Signet Drive, Toronto, Ontario, M9L 1T9 Canada.  Defendant Apotex Inc. is a citizen of Canada.

33.     Defendant Apotex Inc. applied to the FDA for the right to manufacture and sell a generic form of ranitidine and subsequently received that approval as discussed herein. Further, Defendant Apotex Inc. registered an establishment with the FDA, allowing it to manufacture, repack, or relabel drug products within the United States.[11]

34.     Defendant Apotex Corporation is a subsidiary of Defendant Apotex Inc. Collectively, these entities shall be referred to as "Apotex."

35.     Defendant Apotex is a contract manufacturer that contracted with one or more Store-Brand Defendants to manufacture store-brand Ranitidine-Containing Products.

### Dr. Reddy's

36.     Defendant Dr. Reddy's Laboratories, Inc. is a New Jersey corporation with its principal place of business located at 107 College Road East, Princeton, New Jersey 08540. Defendant Dr. Reddy's Laboratories, Inc. is a citizen of New Jersey.

37.     Defendant Dr. Reddy's Laboratories, Inc. applied to the FDA for the right to manufacture and sell a generic form of ranitidine and subsequently received that approval as discussed herein. Defendant Dr. Reddy's Laboratories, Inc. also applied to the FDA for the power

---

[10]   Apotex Corp 00255.

[11]   Apotex Corp 00121.

and privilege of listing and labeling Ranitidine-Containing Products for sale in all states and territories within the United States.

38.     Defendant Dr. Reddy's Laboratories, Inc. is also the appointed agent in the United States for the very purpose of lawfully selling and distributing drugs including Ranitidine-Containing Products manufactured by Defendant Dr. Reddy's Laboratories, Ltd. Defendant Dr. Reddy's Laboratories, Inc. as a regulatory agent also fulfills a regulatory compliance role for other Dr. Reddy's entities by regularly filing materials the FDA requires ANDA holders to provide to maintain their right to manufacture drugs.[12]

39.     Defendant Dr. Reddy's Laboratories, Ltd. is a corporation organized and existing under the laws of India with its principal place of business located at 8-2-337, Road No. 3, Banjara Hills, Hyderabad Telangana 500 034, India.  Defendant Dr. Reddy's Laboratories, Ltd. is a citizen of India.

40.     Defendant Dr. Reddy's Laboratories, Ltd. applied to the FDA for the right to manufacture and sell a generic form of ranitidine and subsequently received that approval as discussed herein. Defendant Dr. Reddy's Laboratories, Ltd. also applied to the FDA for the power and privilege of listing and labeling Ranitidine-Containing Products for sale in all states and territories within the United States. Defendant Dr. Reddy's Laboratories, Ltd. further registered an establishment with the FDA, allowing it to manufacture, repack, or relabel drug products within the United States.  Dr. Reddy's Laboratories LLC is a citizen of New Jersey.

41.     Defendant Dr. Reddy's Laboratories LLC is a limited liability company with its principal place of business located at 107 College Road East, Princeton, New Jersey 08540.  The LLC has three registered officers, each of whom are citizens of New Jersey.

---

[12]   DRLMDL 004629/008581.

42.     Defendant Dr. Reddy's Laboratories LLC registered an establishment with the FDA, allowing it to manufacture, repack, or relabel drug products within the United States.[13]

43.     Defendant Dr. Reddy's Laboratories SA is a corporation organized and existing under the laws of Switzerland with its principal place of business located at Elisabethenanlage, 11, Basel, 4051 Switzerland.  Defendant Dr. Reddy's Laboratories SA is a citizen of Switzerland.

44.     Defendant Dr. Reddy's Laboratories, Inc., Dr. Reddy's Laboratories, Ltd., and Dr. Reddy's Laboratories LLC are subsidiaries of Dr. Reddy's Laboratories SA.[14]  Collectively, these entities shall be referred to as "Dr. Reddy's."

45.     Defendant Dr. Reddy's is a manufacturer, distributor, and seller of generic prescription Ranitidine-Containing Products and is also a contract manufacturer that contracted with one or more Store-Brand Defendants to manufacture store-brand Ranitidine-Containing Products.

**Glenmark**

46.     Defendant Glenmark Pharmaceuticals, Inc., USA (f/k/a Glenmark Generics, Inc. USA) is a Delaware corporation with its principal place of business located at 750 Corporate Drive, Mahwah, New Jersey 07430.  Defendant Glenmark Pharmaceuticals, Inc., USA is a citizen of Delaware and New Jersey.

47.     Defendant Glenmark Pharmaceuticals, Inc., USA applied to the FDA for the right to manufacture and sell a generic form of ranitidine and subsequently received that approval as

---

[13]   DRLMDL 004629.

[14]   Pursuant to the Joint Stipulation Relating to Dr. Reddy's Defendants [DE 2029], Defendant Dr. Reddy's Laboratories, Inc. stipulated that Defendants Dr. Reddy's Laboratories, Ltd. and Dr. Reddy's Laboratories SA are affiliated companies, and that Defendant Dr. Reddy's Laboratories, Inc. is the proper party for purposes of all claims asserted against Defendants Dr. Reddy's Laboratories, Ltd. and Dr. Reddy's Laboratories SA in this litigation.

discussed herein. Defendant Glenmark Pharmaceuticals, Inc., USA also applied to the FDA for the power and privilege of listing and labeling Ranitidine-Containing Products for sale in all states and territories within the United States.

48.     Defendant Glenmark Pharmaceuticals, Inc., USA is also Defendant Glenmark Pharmaceuticals Ltd.'s appointed agent in the United States for the very purpose of lawfully selling and distributing drugs including Ranitidine-Containing Products . Defendant Glenmark Pharmaceuticals, Inc., USA as a regulatory agent also fulfills a regulatory compliance role for Glenmark Pharmaceuticals Ltd. by regularly filing materials the FDA requires ANDA holders to provide to maintain their right to manufacture drugs.[15]

49.     Defendant Glenmark Pharmaceuticals Ltd. (f/k/a Glenmark Generics Ltd.) is a corporation organized and existing under the laws of India with its principal place of business located at Glenmark House, B.D. Sawant Marg., Chakala, Western Express Highway, Andheri (E), Mumbai 400 099, India.  Defendant Glenmark Pharmaceuticals Ltd. is a citizen of India.

50.     Defendant Glenmark Pharmaceuticals Ltd. registered an establishment with the FDA, allowing it to manufacture, repack, or relabel drug products within the United States.

51.     Defendant Glenmark Pharmaceuticals, Inc., USA is a subsidiary of Defendant Glenmark Pharmaceuticals Ltd.  Collectively, these entities shall be referred to as "Glenmark."

52.     Defendant Glenmark is a manufacturer, distributor, and seller of generic prescription Ranitidine-Containing Products.

---

[15]   Glenmark 002130, 0030383, 0003691.

**Perrigo**

53.    Defendant L. Perrigo Co. is a Michigan corporation with its principal place of business located at 515 Eastern Avenue, Allegan, Michigan 49010.  Defendant L. Perrigo Co. is a citizen of Michigan.

54.    Defendant L. Perrigo Co. applied to the FDA for the right to manufacture and sell a generic form of ranitidine and subsequently received that approval as discussed herein. Defendant L. Perrigo Co. also applied to the FDA for the power and privilege of listing and labeling Ranitidine-Containing Products for sale in all states and territories within the United States. Defendant L. Perrigo Co. further registered an establishment with the FDA, allowing it to manufacture, repack, or relabel drug products within the United States.

55.    Defendant Perrigo Company is a Michigan corporation with its principal place of business located at 515 Eastern Avenue, Allegan, Michigan 49010.  Defendant Perrigo Company is a citizen of Michigan.

56.    Defendant Perrigo Research & Development Company is a Michigan corporation with its principal place of business located at 515 Eastern Avenue, Allegan, Michigan 49010. Defendant Perrigo Research & Development Company is a citizen of Michigan.

57.    Defendant Perrigo Research & Development Company applied to the FDA for the right to manufacture and sell a generic form of ranitidine and subsequently received that approval as discussed herein.

58.    L. Perrigo Co., Perrigo Company, and Perrigo Research & Development Company are subsidiaries of non-party Perrigo Company, plc., a corporation organized and existing under

the laws of Ireland with its principal place of business in Ireland. Collectively, these entities shall be referred to as "Perrigo."[16]

59. Defendant Perrigo is a contract manufacturer that contracted with one or more Store-Brand Defendants to manufacture store-brand Ranitidine-Containing Products.

**Sandoz**

60. Defendant Sandoz Inc. ("Sandoz") is a Colorado corporation with its principal place of business located at 100 College Road West, Princeton, New Jersey 08540. Defendant Sandoz is a citizen of Colorado and New Jersey.

61. Defendant Sandoz applied to the FDA for the right to manufacture and sell a generic form of ranitidine and subsequently received that approval as discussed herein. Defendant Sandoz applied to the FDA for the power and privilege of listing and labeling Ranitidine-Containing Products for sale in all states and territories within the United States.

62. Defendant Sandoz is a manufacturer, distributor, and seller of generic prescription Ranitidine-Containing Products.

**Strides**

63. Defendant Strides Pharma, Inc. ("Strides") is a New Jersey corporation with its principal place of business located at 2 Tower Center Boulevard, Suite 1102, East Brunswick, New Jersey 08816. Defendant Strides is a citizen of New Jersey.

64. Strides is a subsidiary of non-parties Strides Pharma Science Ltd., a corporation organized and existing under the laws of India, and Strides Global Pte Ltd, a corporation organized and existing under the laws of Singapore.

---

[16] Pursuant to the Joint Stipulation Relating to Perrigo Defendants [DE 1555], L. Perrigo Co., Perrigo Company, and Perrigo Research & Development Company stipulated that they are the proper parties for purposes of all relief sought in this litigation.

65.     Defendant Strides registered an establishment with the FDA, allowing it to manufacture, repack, or relabel drug products within the United States.[17]

66.     Defendant Strides is a manufacturer, distributor, and seller of generic prescription Ranitidine-Containing Products and is also a contract manufacturer that contracted with one or more Store-Brand Defendants to manufacture store-brand Ranitidine-Containing Products.[18]

**Teva**

67.     Defendant Actavis Mid Atlantic LLC is a Delaware limited liability company with its principal place of business located at 1877 Kawai Road, Lincolnton, North Carolina 28092. The membership interest of Defendant Actavis Mid Atlantic LLC is owned by Teva Pharmaceuticals U.S.A., Inc., a Delaware corporation with its principal place of business in Pennsylvania, either directly or through an intervening limited liability company. Defendant Teva Pharmaceuticals U.S.A., Inc. is a Delaware corporation with its principal place of business in Pennsylvania. Actavis Mid Atlantic LLC is a citizen of Delaware and Pennsylvania.

68.     Defendant Actavis Mid Atlantic LLC applied to the FDA for the right to manufacture and sell a generic form of ranitidine and subsequently received that approval as discussed herein.

69.     Defendant Teva Pharmaceuticals U.S.A., Inc. is a Delaware corporation with its principal place of business located at 1090 Horsham Road, North Wales, Pennsylvania 19454. Teva Pharmaceuticals U.S.A., Inc. is a citizen of Delaware and Pennsylvania.

---

[17]   SPIRND00011271.

[18]   Pursuant to the Joint Stipulation Relating to Strides Defendants [DE 1635], Defendant Strides stipulated that non-parties Strides Pharma Science Ltd. and Strides Global Pte Ltd. are affiliated companies, and that Defendant Strides is the proper party in interest for purposes of all claims asserted in this litigation.  As alleged below, multiple Strides entities held ANDAs and manufactured generic ranitidine.

70.     Defendant Teva Pharmaceuticals U.S.A., Inc. applied to the FDA for the right to manufacture and sell a generic form of ranitidine and subsequently received that approval as discussed herein.

71.     Defendant Watson Laboratories, Inc. is a Nevada corporation with its principal place of business located at 400 Interpace Parkway, Building A, Parsippany, New Jersey 07054. Watson Laboratories, Inc. is a citizen of Nevada and New Jersey.

72.     Defendant Watson Laboratories, Inc. applied to the FDA for the right to manufacture and sell a generic form of ranitidine and subsequently received that approval as discussed herein.

73.     In 2006, non-party Teva Pharmaceutical Industries Ltd. acquired IVAX Pharmaceuticals. IVAX LLC and IVAX Pharmaceuticals, Inc. are subsidiaries of Teva Pharmaceuticals U.S.A., Inc. (collectively, "IVAX"). IVAX applied to the FDA for the right to manufacture and sell a generic form of ranitidine and subsequently received that approval, which rights were subsequently transferred to Teva.

74.     Defendants Actavis Mid Atlantic LLC, Teva Pharmaceuticals U.S.A., Inc., and Watson Laboratories, Inc. are subsidiaries of non-party Teva Pharmaceutical Industries Ltd., a corporation organized and existing under the laws of Israel with its principal place of business located in Israel.  Collectively, all of these entities shall be referred to as "Teva."

75.     Defendant Teva is a manufacturer, distributor, and seller of generic prescription Ranitidine-Containing Products.

### 3.    Store-Brand Defendants

### CVS

76.    Defendant CVS Pharmacy, Inc. ("CVS") is a Delaware corporation with its principal place of business located at One CVS Drive, Woonsocket, Rhode Island 02895. Defendant CVS is a citizen of Delaware and Rhode Island.

77.    Defendant CVS is a private-label distributor that contracts with one or more contract manufacturers to manufacture Ranitidine-Containing Products sold by CVS under its store-brand, CVS Health.

### Rite Aid

78.    Defendant Rite Aid Corporation ("Rite Aid") is a Delaware corporation with its principal place of business located at 30 Hunter Lane, Camp Hill, Pennsylvania 17011.  Rite Aid is a citizen of Delaware and Pennsylvania.

79.    Defendant Rite Aid is a private-label distributor that contracts with one or more contract manufacturers to manufacture Ranitidine-Containing Products sold by Rite-Aid under its store-brand, Rite-Aid.

### Walgreens

80.    Defendant Walgreen Co. is a Delaware corporation with its principal place of business located at 108 Wilmot Road, Deerfield, Illinois 60015.  Walgreen Co. is a citizen of Delaware and Illinois.

81.    Defendant Duane Reade, Inc. is a Delaware corporation with its principal place of business located at 108 Wilmot Road, Deerfield, Illinois 60015.  Duane Reade, Inc. is a citizen of Delaware and Illinois.

82.     Defendant Walgreens Boots Alliance, Inc. is a Delaware corporation with its principal place of business located at 108 Wilmot Road, Deerfield, Illinois 60015.  Walgreens Boots Alliance, Inc. is a citizen of Delaware and Illinois.

83.     Defendant Walgreens Boots Alliance, Inc. purchased ranitidine and repackaged and/or relabeled it under Defendant's own brand.

84.     Walgreen Co. and Duane Reade, Inc. are subsidiaries of Walgreens Boots Alliance, Inc.  Collectively, these entities shall be referred to as "Walgreens."

85.     Defendant Walgreens is a private-label distributor that contracts with one or more contract manufacturers to manufacture Ranitidine-Containing Products sold by Walgreens under its store-brand, Wal-Zan.

**Walmart**

86.     Defendant Walmart Inc. f/k/a Wal-Mart Stores, Inc. is a Delaware corporation with its principal place of business located at 702 SW 8th Street, Bentonville, Arkansas 72716.  Walmart Inc. is a citizen of Delaware and Arkansas.

87.     Defendant Sam's West, Inc. is an Arkansas corporation with its principal place of business located at 702 SW 8th Street, Bentonville, Arkansas 72716.  Sam's West, Inc. is a citizen of Arkansas.

88.     Sam's West, Inc. is a subsidiary of Walmart Inc.  Collectively, these entities shall be referred to as "Walmart."

89.     Defendant Walmart purchased ranitidine and repackaged and/or relabeled it under Defendant's own brand.

90.     Defendant Walmart is a private-label distributor that contracts with one or more contract manufacturers to manufacture Ranitidine-Containing Products sold by Walmart under its store-brand, Equate.

### B.     Plaintiffs

91.     The following Plaintiffs bring claims against the corresponding Defendants as set forth below.

### Alabama

92.     Anthony McGhee (for the purpose of this paragraph, "Plaintiff") is a citizen of Alabama.  Plaintiff purchased Ranitidine-Containing Products in Alabama from approximately 2010 to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) over the counter ("OTC") 150 mg Zantac tablets and capsules from approximately 2010 to 2013, manufactured by BI; and (b) prescription 15 mg/ml generic ranitidine syrup from approximately 2013 to 2020.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 15 mg/ml ranitidine syrup from approximately 2013 to 2020 manufactured by one or more of the following Defendants: Amneal and Teva. Thus, BI, Amneal, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

93.     Plaintiff Daffeney Austin (for the purpose of this paragraph, "Plaintiff") is a citizen of Alabama.  Plaintiff purchased Ranitidine-Containing Products in Alabama from approximately 2016 to November 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 2016 to November 2019 (manufactured by Amneal).  Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription 150 mg generic ranitidine tablets and capsules from approximately 2016 to November 2019 manufactured by one or more of the following

- 23 -

Defendants: Dr. Reddy's, Glenmark, Sandoz, Teva, and Strides. Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, Teva, and Strides are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

94.     Plaintiff Lashonnah Gaitor (for the purpose of this paragraph, "Plaintiff") is a citizen of Alabama.   Plaintiff purchased Ranitidine-Containing Products in Alabama from approximately 2015 to 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription generic ranitidine tablets and capsules from approximately 2015 to 2019; and (b) prescription 15 mg/ml generic ranitidine syrup from approximately 2015 to 2019 (manufactured by Teva). Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva, and additional prescription 15 mg/ml generic ranitidine syrup manufactured by the following defendant: Amneal. Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

**Arkansas**

95.     Plaintiff Andy Green Jr. (for the purpose of this paragraph, "Plaintiff") is a citizen of Arkansas.  Plaintiff purchased Ranitidine-Containing Products in Arkansas and Tennessee from approximately 1983 to 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription Zantac tablets and capsules in Arkansas while a citizen of Arkansas from approximately 1983 to 1997 (manufactured by GSK) and in Tennessee while a citizen of Tennessee from approximately 1987 to 1988 (manufactured by GSK); (b) prescription ranitidine tablets and capsules in Arkansas while a citizen of Arkansas in approximately 1997; and (c) OTC Zantac tablets and capsules in Arkansas while a citizen of Arkansas from approximately 1995 to 2019 (manufactured by GSK, Pfizer, BI, and Sanofi). Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription generic ranitidine tablets and capsules manufactured by Sandoz. Thus, GSK, Pfizer, BI, Sanofi, and Sandoz are "Defendants" for the purposes of Plaintiff's claims for purchases in Arkansas while a citizen of Arkansas, and GSK is a "Defendant" for the purposes of Plaintiff's claims for purchases in Tennessee while a citizen of Tennessee, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

96.     Plaintiff Tina Culclager (for the purpose of this paragraph, "Plaintiff") is a citizen of Arkansas. Plaintiff purchased Ranitidine-Containing Products in Arkansas from approximately 2015 to 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) 300 mg prescription generic ranitidine tablets and capsules from approximately 2015 to 2019; and (b) OTC Zantac tablets and capsules from approximately 2015 to 2019 (manufactured by BI

and Sanofi). Plaintiff also purchased OTC Walmart-branded and Walgreens-branded ranitidine tablets and capsules from Walmart and Walgreens, respectively, in Arkansas from approximately 2015 to 2019 but, based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Perrigo, Dr. Reddy's Strides, and Apotex manufactured both OTC Walmart-branded ranitidine tablets and capsules for Walmart, and OTC Walgreens-branded ranitidine tablets and capsules for Walgreens, and, therefore, Perrigo, Dr. Reddy's, Strides, and Apotex are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva. Thus, Walmart, Walgreens, BI, Sanofi, Perrigo, Dr. Reddy's, Apotex, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

**Arizona**

97.     Plaintiff Armando Tapia (for the purpose of this paragraph, "Plaintiff"), is a citizen of Arizona.  Plaintiff purchased Ranitidine-Containing Products in Arizona from approximately 2007 to August 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 2007 to August 2019 (manufactured by Glenmark, Sandoz, Dr. Reddy's, and Amneal). Further, based on

the limited discovery obtained to date, Plaintiff purchased additional prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following defendants: Strides and Teva. Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

98.     Plaintiff Tangie Sims (for the purpose of this paragraph, "Plaintiff"), is a citizen of Arizona.  Plaintiff purchased Ranitidine-Containing Products in Arizona from approximately 2007 to 2020.  The Ranitidine-Containing Products purchased by Plaintiff specifically included OTC 150 mg Zantac tablets and capsules from approximately 2007 to 2020 manufactured by BI and Sanofi. Plaintiff also purchased OTC Walmart-branded ranitidine tablets and capsules and OTC Walgreens-branded ranitidine tablets and capsules from Walmart and Walgreens, respectively, but, based on the limited available sources of information and discovery conducted to date, does not yet know the additional manufacturer(s) of the store-branded ranitidine tablets and capsules. During that time period in question, Dr. Reddy's, Apotex, Strides, and Perrigo manufactured both OTC Walmart-branded ranitidine tablets and capsules for Walmart and OTC Walgreens-branded ranitidine tablets and capsules for Walgreens, and, therefore, Dr. Reddy's, Apotex, Strides, and Perrigo are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Thus, Walmart, Walgreens, BI, Sanofi, Dr. Reddy's, Apotex, Strides, and Perrigo are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of

Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

99.      Plaintiff Monica Costello (for the purpose of this paragraph, "Plaintiff") is a citizen of Arizona.  Plaintiff purchased Ranitidine-Containing Products in Arizona and Nevada from approximately 2008 to November 2018. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription 150 mg generic ranitidine tablets and capsules from approximately 2008 to 2016 in Nevada while a citizen of Nevada; and (b) prescription 150 mg generic ranitidine tablets from approximately 2016 to 2018 in Arizona while a citizen of Arizona. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following defendants: Amneal, Sandoz, Teva, Dr. Reddy's, Strides, and Glenmark with respect to purchases in Arizona while a citizen of Arizona, and Amneal, Sandoz, Teva, Dr. Reddy's, Strides, and Glenmark with respect to purchases in Nevada while a citizen of Nevada. Thus, Amneal, Sandoz, Teva, Dr. Reddy's, Strides, and Glenmark are "Defendants" for the purposes of Plaintiff's claims for purchases in both Arizona and Nevada while a citizen of Arizona and Nevada, respectively, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

100.    Plaintiff Jennifer Fox (for the purpose of this paragraph, "Plaintiff") is a citizen of Tennessee. Plaintiff purchased Ranitidine-Containing Products in Arizona while a citizen of Arizona from approximately March 2019 to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately March 2019 to 2020 in Arizona while a citizen of Arizona (manufactured by Strides). Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, and Sandoz. Thus, Strides, Amneal, Dr. Reddy's, Glenmark, and Sandoz are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

**California**

101.    Plaintiff Golbenaz Bakhtiar (for the purpose of this paragraph, "Plaintiff") is a citizen of California. Plaintiff purchased Ranitidine-Containing Products in California from approximately 2000 to December 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) OTC Zantac tablets and capsules from approximately 2000 to 2019 (manufactured by Pfizer, BI, and Sanofi); (b) prescription 150 mg generic ranitidine tablets and capsules from approximately 2005 to 2019; and (c) prescription Zantac tablets and capsules beginning in approximately 2000 (manufactured by GSK). Plaintiff also purchased OTC 150 mg Walgreens-branded and Rite-Aid-branded ranitidine tablets and capsules from Walgreens and Rite-Aid, respectively, from approximately 2005 to 2019, but based on the limited available

sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules.  During the time period in question, Dr. Reddy's Perrigo, Strides, and Apotex manufactured OTC 150 mg Walgreens-branded ranitidine tablets and capsules for Walgreens, and Perrigo, Strides, and Apotex manufactured OTC 150 mg Rite-Aid-branded ranitidine tablets and capsules for Rite-Aid, and, therefore, Dr. Reddy's, Perrigo, Strides, and Apotex are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides and Teva. Thus, Walgreens, Rite-Aid, GSK, Pfizer, BI, Sanofi, Dr. Reddy's, Perrigo, Apotex, Amneal, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct

102.    Plaintiff Richard Obrien (for the purpose of this paragraph, "Plaintiff") is a citizen of California. Plaintiff purchased Ranitidine-Containing Products in California from approximately 1998 to November 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included OTC Zantac tablets and capsules from approximately 1998 to 2019 (manufactured by GSK, Pfizer, BI, and Sanofi). Plaintiff also purchased OTC 150 mg CVS-branded and Rite-Aid-branded ranitidine tablets and capsules from CVS and Rite-Aid,

respectively, until approximately November 2019, but based on the limited available sources of
information and discovery conducted  to date, does not yet know the specific manufacturer(s) of
the store-branded ranitidine tablets and capsules.  During the time period in question, Dr. Reddy's,
Strides, and Perrigo manufactured OTC 150 mg CVS-branded ranitidine tablets and capsules for
CVS, and Strides, Perrigo, and Apotex manufactured 150 mg Rite-Aid-branded ranitidine tablets
and capsules for Rite-Aid, and, therefore, Strides, Dr. Reddy's, Perrigo, and Apotex are named as
Defendants until adequate information is produced to identify the specific entity(ies) that
manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Thus, CVS,
GSK, Pfizer, BI, Sanofi, Dr. Reddy's, Strides, Perrigo, and Apotex are "Defendants" for the
purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of
warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-
Containing Products that were unsafe for human ingestion and, therefore, were worthless at the
time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as
a result of Defendants' wrongful conduct.

103.    Plaintiff Royal Handy (for the purpose of this paragraph, "Plaintiff") is a citizen of
California. Plaintiff purchased Ranitidine-Containing Products in California from approximately
2015 to December 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically
included prescription generic ranitidine tablets and capsules from approximately 2015 to
December 2019 manufactured by Glenmark. Further, based on the limited discovery obtained to
date, Plaintiff purchased additional prescription generic ranitidine tablets and capsules
manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Sandoz, Teva,
and Strides. Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, Teva, and Strides are "Defendants"
for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants'

breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

104.    Plaintiff Virginia Aragon (for the purpose of this paragraph, "Plaintiff") is a citizen of California. Plaintiff purchased Ranitidine-Containing Products in California from approximately 2006 to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) OTC Zantac tablets and capsules from approximately 2006 to 2020 (manufactured by Pfizer, BI, and Sanofi); and (b) prescription 300 mg generic ranitidine tablets and capsules from approximately 2006 to 2020 (manufactured by Amneal). Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva. Thus, Pfizer, BI, Sanofi, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

## Colorado

105.    Plaintiff Jeffrey Pisano (for the purpose of this paragraph, "Plaintiff") is a citizen of Colorado. Plaintiff purchased Ranitidine-Containing Products in Colorado from approximately 1998 to February 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) OTC Zantac tablets and capsules from approximately 1998 to 2020 (manufactured by GSK, Pfizer, BI, and Sanofi); (b) prescription 150 mg generic ranitidine tablets and capsules

from approximately 1998 to 2003; and (c) prescription 150 mg Zantac tablets and capsules in approximately this same time frame (manufactured by GSK). Plaintiff also purchased OTC 150 mg Walmart-branded and Walgreens-branded ranitidine tablets and capsules from Walmart and Walgreens, respectively, until approximately 2020, but based on the limited available sources of information and discovery conducted  to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules.  During the time period in question, Perrigo, Dr. Reddy's, Strides, and Apotex manufactured OTC 150 mg Walmart-branded ranitidine tablets and capsules for Walmart, and Walgreens-branded ranitidine tablets and capsules for Walgreens, respectively, and, therefore, Perrigo, Dr. Reddy's, Strides, and Apotex are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Sandoz and Teva. Thus, Sandoz and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  Thus, Walmart, Walgreens, GSK, Pfizer, BI, Sanofi, Perrigo, Dr. Reddy's, Sandoz, Strides, Teva, and Apotex are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

106.    Plaintiff Ronald Ragan (for the purpose of this paragraph, "Plaintiff") is a citizen of Colorado.  Plaintiff purchased Ranitidine-Containing Products in Colorado from approximately 2012 to 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included

OTC 150 mg Zantac tablets and capsules from approximately 2012 to 2019 (manufactured by BI and Sanofi). Plaintiff also purchased OTC 150 mg Walmart-branded and Walgreens-branded ranitidine tablets and capsules from Walmart and Walgreens, respectively, from approximately 2012 to 2019, but based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules.   During the time period in question, Perrigo, Dr. Reddy's, Strides, and Apotex manufactured both OTC 150 mg Walmart-branded ranitidine tablets and capsules for Walmart, and Walgreens-branded ranitidine tablets and capsules for Walgreens, and, therefore, Perrigo, Dr. Reddy's, Strides, and Apotex are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff. Thus, Walmart, Walgreens, BI, Sanofi, Perrigo, Dr. Reddy's, Strides, and Apotex are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

### Connecticut

107.    Plaintiff Angel Cordero (for the purpose of this paragraph, "Plaintiff") is a citizen of Connecticut.   Plaintiff purchased Ranitidine-Containing Products in Connecticut from approximately 2005 to 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) OTC Zantac tablets and capsules from approximately 2005 to 2019 (manufactured by Pfizer, BI, and Sanofi); (b) prescription 300 mg generic ranitidine tablets and capsules from approximately 2018 to 2019 (manufactured by Strides); and (c) prescription 150 mg generic ranitidine tablets and capsules in approximately 2015, and from approximately 2017 to

2018 (manufactured by Sandoz). Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, and Glenmark. Thus, Amneal, Dr. Reddy's, Pfizer, BI, Sanofi, Sandoz, Strides, and Glenmark are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

108. Plaintiff Angel Vega (for the purpose of this paragraph, "Plaintiff") is a citizen of Montana. Plaintiff purchased Ranitidine-Containing Products in Connecticut and Montana from approximately 2011 to 2016. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) OTC Zantac tablets and capsules in approximately 2011, in Connecticut and while a citizen of Connecticut, manufactured by BI, and from approximately 2015 to 2016, in Montana and while a citizen of Montana, manufactured by BI; and (b) prescription generic ranitidine tablets and capsules from approximately 2011 to 2014 in Connecticut and while a citizen of Connecticut. Plaintiff also purchased OTC Walgreens-branded and CVS-branded ranitidine tablets and capsules from Walgreens and CVS, respectively, in Connecticut while a citizen of Connecticut, but based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Dr. Reddy's, Perrigo, and Strides manufactured OTC Walgreens-branded ranitidine tablets and capsules for Walgreens; and Dr. Reddy's, Strides, and Perrigo manufactured OTC CVS-branded ranitidine tablets and capsules for CVS and, therefore,

Perrigo, Dr. Reddy's, and Strides are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva.  Thus, Amneal, CVS, Dr. Reddy's, Glenmark, Perrigo, Sandoz, Strides, Teva, Walgreens, and BI are "Defendants" for the purposes of Plaintiff's claims for purchases in Connecticut while a citizen of Connecticut, and BI is a "Defendant" for the purposes of Plaintiff's claims for purchases in Montana while a citizen of Montana, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

### District of Columbia

109.    Plaintiff Kevin Nelson (for the purpose of this paragraph, "Plaintiff") is a citizen of the District of Columbia.  Plaintiff purchased Ranitidine-Containing Products in Maryland from approximately May 2018 to December 2018.  The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules in or around approximately 2018, in Maryland while a citizen of Maryland.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by Amneal, Dr. Reddy's, Glenmark, Sandoz, and Strides.  Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Strides are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing

Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

**Florida**

110.    Plaintiff Ana Pereira (for the purpose of this paragraph, "Plaintiff") is a citizen of Florida.  Plaintiff purchased Ranitidine-Containing Products in Florida from approximately May 2017 to 2020.  The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 2017 to 2020 manufactured by Glenmark.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Sandoz, and Strides.  Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Strides are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

111.    Plaintiff Clifton McKinnon (for the purpose of this paragraph, "Plaintiff") is a citizen of Florida. Plaintiff purchased Ranitidine-Containing Products in Florida from approximately 2008 to 2020.   The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) OTC 75 and 150 mg Zantac tablets and capsules from approximately 2008 to 2010, manufactured by BI; and (b) prescription 150 mg generic ranitidine tablets and capsules from approximately 2010 to 2020 (manufactured by Glenmark, Teva, and Strides). Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription

150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Sandoz, and Strides. Thus, BI, Glenmark, Strides, Amneal, Dr. Reddy's, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

112.    Plaintiff Daniel Taylor (for the purpose of this paragraph, "Plaintiff"), is a citizen of Florida. Plaintiff purchased Ranitidine-Containing Products in Florida from approximately May 2015 to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately May 2015 to 2020 (manufactured by Glenmark). Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Sandoz, Strides, and Teva. Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

113.    Plaintiff Gustavo Velasquez (for the purpose of this paragraph, "Plaintiff"), is a citizen of Florida. Plaintiff purchased Ranitidine-Containing Products in Florida from

approximately 2000 to February 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included OTC 75 mg and 150 mg Zantac tablets and capsules from approximately 2000 to 2020 (manufactured by Pfizer, BI, and Sanofi). Thus, Pfizer, BI, and Sanofi are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

114.    Plaintiff Hattie Kelley (for the purpose of this paragraph, "Plaintiff") is a citizen of Florida.  Plaintiff purchased Ranitidine-Containing Products in Florida from approximately 2012 to 2018. The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 2012 to 2018 (manufactured by Teva and Glenmark). Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Sandoz, and Strides. Thus, Amneal, Dr. Reddy's, Teva, Glenmark, Strides, and Sandoz are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

115.    Plaintiff Irma Arcaya (for the purpose of this paragraph, "Plaintiff") is a citizen of Florida.  Plaintiff purchased Ranitidine-Containing Products in Florida from approximately 2014

to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 2014 to 2020. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva. Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

116.    Plaintiff Jeannie Black (for the purpose of this paragraph, "Plaintiff") is a citizen of Florida. Plaintiff purchased Ranitidine-Containing Products in Florida from approximately 2015 to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) OTC Zantac tablets and capsules from approximately 2015 to 2018 (manufactured by BI and Sanofi); and (b) prescription 300 mg generic ranitidine tablets and capsules from approximately 2018 to 2020 (manufactured by Glenmark and Strides). Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's and Sandoz. Thus, BI, Sanofi, Glenmark, Strides, Dr. Reddy's, and Sandoz are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of

purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

117.    Plaintiff Joshua Winans (for the purpose of this paragraph, "Plaintiff") is a citizen of Florida. Plaintiff purchased Ranitidine-Containing Products in Florida from approximately 2000 to 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included OTC 75 and 150 mg Zantac tablets and capsules from approximately 2000 to 2019 (manufactured by Pfizer, BI, and Sanofi). Thus, Pfizer, BI, and Sanofi are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

118.    Plaintiff Joyce Taylor (for the purpose of this paragraph, "Plaintiff") is a citizen of Florida.  Plaintiff purchased Ranitidine-Containing Products in Florida from approximately 2010 to February 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 2010 to 2020. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva. Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff

has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

119.    Plaintiff Kristen Monger, as power of attorney and on behalf of, Alexander Monger (for the purpose of this paragraph, "Plaintiff"), is a citizen of Florida.   Plaintiff purchased Ranitidine-Containing Products in Florida from approximately 1999 to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription generic ranitidine syrup from approximately 1999 to 2020 (manufactured by Amneal); and (b) prescription Zantac syrup (manufactured by GSK). Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription generic ranitidine syrup (manufactured by Teva). Thus, Amneal, GSK, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.   Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

120.    Plaintiff Kristen Monger, as power of attorney and on behalf of, Laura Monger (for the purpose of this paragraph, "Plaintiff") is a citizen of Florida. Plaintiff purchased Ranitidine-Containing Products in Florida from approximately 1997 to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription generic ranitidine syrup from approximately 1997 to 2020; and (b) prescription Zantac syrup (manufactured by GSK). Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine syrup manufactured by Amneal and Teva. Thus, Amneal and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased

Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

121.    Plaintiff Marva Mccall (for the purpose of this paragraph, "Plaintiff") is a citizen of Florida. Plaintiff purchased Ranitidine-Containing Products in Florida from approximately 2007 to December 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) OTC Zantac tablets and capsules from approximately 2007 to 2015, manufactured by BI; and (b) prescription 300 mg generic ranitidine tablets and capsules from approximately 2015 to 2019 (manufactured by Strides and Glenmark). Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Sandoz, and Teva. Thus, BI, Strides, Glenmark, Dr. Reddy's, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

122.    Plaintiff Michael Fesser (for the purpose of this paragraph, "Plaintiff") is a citizen of Florida. Plaintiff purchased Ranitidine-Containing Products in Florida from approximately 2010 to December 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 2010 to 2019 (manufactured by Amneal). Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or

more of the following Defendants: Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva. Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

123.    Plaintiff Michael Tomlinson (for the purpose of this paragraph, "Plaintiff") is a citizen of Florida.    Plaintiff purchased Ranitidine-Containing Products in Florida from approximately 2000 to November 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) OTC 150 mg Zantac tablets and capsules from approximately 2014 to 2019 (manufactured by BI and Sanofi); (b) prescription 150 mg and 300 mg generic ranitidine tablets and capsules from approximately 2006 to 2019 (manufactured by Amneal); and (c) prescription 150 mg Zantac tablets and capsules from approximately 2000 to 2002 (manufactured by GSK). Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva. Plaintiff also purchased OTC Walmart-branded ranitidine tablets and capsules from Walmart from approximately 2014 to 2019 but, based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Perrigo, Dr. Reddy's, Strides, and Apotex manufactured OTC Walmart-branded ranitidine tablets and capsules for Walmart, and, therefore, Perrigo, Dr. Reddy's, Strides, and Apotex are named as Defendants until adequate information is produced to identify

the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff. Thus, Walmart, BI, Sanofi, Amneal, GSK, Dr. Reddy's, Glenmark, Sandoz, Strides, Teva, Perrigo, and Apotex are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

124. Plaintiff Ricardo Moròn (for the purpose of this paragraph, "Plaintiff") is a citizen of Florida. Plaintiff purchased Ranitidine-Containing Products in Florida from approximately 1995 to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included OTC Zantac tablets and capsules from approximately 1995 to 2020 manufactured by GSK, Pfizer, BI, and Sanofi. Thus, GSK, Pfizer, BI, and Sanofi are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

125. Plaintiff Roy Armstrong (for the purpose of this paragraph, "Plaintiff") is a citizen of Florida. Plaintiff purchased and used Ranitidine-Containing Products from approximately 2004 to 2008 in Minnesota, 2008 to 2012 in Georgia, 2011 in Alaska, 2012 to 2013 in New York, 2012 to 2017 in Florida, and 2017 to 2019 in Michigan. The Ranitidine-Containing Products Plaintiff purchased specifically included: (a) prescription 150 mg generic ranitidine tablets and capsules

from approximately 2010 to 2011 in Georgia, while a citizen of Georgia; (b) prescription 150 mg generic ranitidine tablets and capsules from approximately 2012 to 2013 in New York, while a citizen of New York (manufactured by Amneal); (c) prescription 150 mg generic ranitidine tablets and capsules from approximately 2013 to 2014 in Florida, while a citizen of Florida (manufactured by Sandoz and Teva); (d) OTC Zantac tablets and capsules from approximately 2005 to 2008 in Minnesota, while a citizen of Minnesota (manufactured by Pfizer and BI); (e) OTC extra strength Zantac tablets and capsules from approximately 2008 to 2011 in Georgia, while a citizen of Georgia, manufactured by BI; (f) OTC Zantac tablets and capsules in or around 2011 in Alaska, while a resident of Alaska, manufactured by BI; (g) OTC Zantac tablets and capsules from approximately 2012 to 2013 in New York, while a citizen of New York, manufactured by BI; (h) OTC Zantac tablets and capsules from approximately 2013 to 2017 in Florida, while a citizen of Florida (manufactured by BI and Sanofi); and (i) OTC Zantac tablets and capsules from approximately 2017 to 2019 in Michigan, while a citizen of Michigan (manufactured by Sanofi). Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following defendants: Amneal, Dr. Reddy's, Glenmark, and Teva. Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva are "Defendants" with respect to purchases made in Georgia while a citizen of Georgia, unless otherwise specified; Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva are "Defendants" with respect to purchases made in Florida while a citizen of Florida, unless otherwise specified; Pfizer is a "Defendant" with respect to purchases made in Minnesota while a citizen of Minnesota; BI is a "Defendant" with respect to purchases made in Georgia, Minnesota, Alaska, New York, and Florida while a citizen of each respective state, unless otherwise specified; and Sanofi is a "Defendant" with respect to purchases made in Florida and Michigan while a citizen of each

respective state, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

126.    Plaintiff Sharon Tweg (for the purpose of this paragraph, "Plaintiff") is a citizen of Florida. Plaintiff purchased Ranitidine-Containing Products in Florida from approximately 2010 to June 2018. The Ranitidine-Containing Products specifically included OTC 150 mg Zantac tablets and capsules in approximately 2010 to 2018 (manufactured by BI and Sanofi). Thus, BI, and Sanofi are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

127.    Plaintiff Sonia Diaz (for the purpose of this paragraph, "Plaintiff") is a citizen of Florida. Plaintiff purchased Ranitidine-Containing Products in Florida from approximately 2017 to 2020 while a resident of Florida, and in Puerto Rico from approximately 2004 to 2017 while a resident of Puerto Rico. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription 150 mg and 300 mg generic ranitidine tablets and capsules from approximately 2004 to 2017 in Puerto Rico; (b) prescription 150 mg and 300 mg generic ranitidine tablets and capsules from approximately 2017 to 2020 in Florida (manufactured by Amneal); (c) OTC Zantac tablets and capsules from approximately 2004 to 2017 in Puerto Rico (manufactured by Pfizer and BI); and (d) OTC Zantac tablets and capsules from approximately 2017 to 2020 in

Florida (manufactured by Sanofi).  Further, based on the limited discovery obtained to date, Plaintiff also purchased prescription 150 mg and 300 mg generic ranitidine tablets and capsules from approximately 2004 to 2017 manufactured by Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva in Puerto Rico while a citizen of Puerto Rico, and Plaintiff purchased additional prescription 150 mg and 300 mg generic ranitidine tablets and capsules from approximately 2017 to 2020 manufactured by Dr. Reddy's, Glenmark, Sandoz, and Strides in Florida while a citizen of Florida.  Thus, Pfizer, BI, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims for purchases in Puerto Rico while a citizen of Puerto Rico, and Dr. Reddy's, Glenmark, Sandoz, Strides, Sanofi and Amneal are "Defendants" for the purposes of Plaintiff's claims for purchases in Florida while a citizen of Florida, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

### Georgia

128.    Plaintiff Kathy Jeffries (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia.  Plaintiff purchased Ranitidine-Containing Products from approximately 1998 to 2002 while a citizen of Florida, and from approximately 2002 to 2019 while a citizen of Georgia. The Ranitidine-Containing Products specifically included: (a) OTC Zantac tablets and capsules from approximately 1998 to 2002 in Florida while a citizen of Florida (manufactured by Pfizer); (b) OTC Zantac tablets and capsules from approximately 2002 to 2019 in Georgia while a citizen of Georgia (manufactured by Pfizer, BI, and Sanofi); (c) prescription generic ranitidine tablets and capsules from approximately 1998 to 2002 in Florida while a citizen of Florida (manufactured by

Sandoz and Teva) (d) prescription generic ranitidine tablets and capsules from approximately 2002 to 2019 in Georgia while a citizen of Georgia (manufactured by Amneal, Dr. Reddy's, Glenmark, Sandoz, Teva, and Strides); (e) prescription Zantac tablets and capsules beginning in approximately 1998 in Florida while a citizen of Florida (manufactured by GSK); and (f) prescription Zantac tablets and capsules beginning in approximately 2002 in Georgia while a citizen of Georgia (manufactured by GSK). Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva. Plaintiff also purchased OTC Walmart-branded and CVS-branded ranitidine tablets and capsules from Walmart and CVS, respectively, in Georgia while a citizen of Georgia, but based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Perrigo, Dr. Reddy's, Strides, and Apotex manufactured OTC Walmart-branded ranitidine tablets and capsules for Walmart; and  Dr. Reddy's, Strides, and Perrigo manufactured OTC CVS-branded ranitidine tablets and capsules for CVS and, therefore, Strides, Perrigo, Dr. Reddy's, and Apotex are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Thus, Sandoz, Teva, GSK and Pfizer are "Defendants" with respect to purchases made in Florida while a citizen of Florida, unless otherwise specified; and Pfizer, BI, Sanofi, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, Teva, GSK, Walmart, CVS, Perrigo, and Apotex are "Defendants" with respect to purchases made in Georgia while a citizen of Georgia, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased

Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

129. Plaintiff Cynthia Starr (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia. Plaintiff purchased Ranitidine-Containing Products from approximately 2018 to 2020 in Georgia. The Ranitidine-Containing Products Plaintiff purchased specifically included prescription generic ranitidine tablets and capsules from approximately 2018 to 2020 manufactured by Amneal and Strides. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Glenmark, and Sandoz. Thus, Amneal, Strides, Dr. Reddy's, Glenmark, Sandoz, and Strides are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

130. Plaintiff Leon Greene (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia. Plaintiff purchased Ranitidine-Containing Products from approximately 2016 to 2020 in Georgia. The Ranitidine-Containing Products Plaintiff purchased specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 2016 to 2020. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva. Thus, Amneal, Dr. Reddy's, Glenmark,

Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

131.    Plaintiff Paula Shells (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia.   Plaintiff purchased Ranitidine-Containing Products from approximately 2016 to November 2019 in Georgia. The Ranitidine-Containing Products Plaintiff purchased specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 2016 to November 2019, manufactured by Strides.  Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants:  Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva.   Thus, Strides, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

132.    Plaintiff Tyrone Houston (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia.  Plaintiff purchased Ranitidine-Containing Products from approximately 2015 to 2020 in  Georgia.  The  Ranitidine-Containing  Products  Plaintiff  purchased  specifically  included prescription generic ranitidine tablets and capsules from approximately 2015 to 2020; and OTC Zantac tablets and capsules from approximately 2015 to 2020, manufactured by BI and Sanofi.

Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva. Thus, BI, Sanofi, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

133. Plaintiff Earlene Green (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia. Plaintiff purchased Ranitidine-Containing Products from approximately 1995 to 2011 in Washington, and from approximately 2011 to February 2020 in Georgia. The Ranitidine-Containing Products Plaintiff purchased specifically included: (a) OTC Zantac tablets and capsules from approximately 1995 to 2011 in Washington, while a citizen of Washington (manufactured by GSK, Pfizer, and BI); and (b) prescription 150 mg generic ranitidine tablets and capsules from approximately 2011 to February 2020, in Georgia and while a citizen of Georgia (manufactured by Strides). Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva. Thus, GSK, Pfizer, and BI are "Defendants" with respect to purchases made in Washington while a citizen of Washington, and Strides, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva are "Defendants" with respect to purchases made in Georgia while a citizen of Georgia, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing

Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

134.    Plaintiff Charlotte Sanders (for the purpose of this paragraph, "Plaintiff") is a citizen of Georgia.  Plaintiff purchased Ranitidine-Containing Products from approximately 2014 to 2020 in Georgia. The Ranitidine-Containing Products Plaintiff purchased specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 2014 to 2020, in Georgia while a citizen of Georgia, manufactured by Strides.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva.  Thus, Strides, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

## Illinois

135.    Plaintiff Denise Guy (for the purpose of this paragraph, "Plaintiff") is a citizen of Illinois Plaintiff purchased Ranitidine-Containing Products from approximately 2015 to November 2019 in Illinois. The Ranitidine-Containing Products Plaintiff purchased specifically included OTC 150 mg Zantac tablets and capsules from approximately 2015 to November 2019, manufactured by BI and Sanofi.  Thus, BI and Sanofi are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing

Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

136.    Plaintiff Heather Re (for the purpose of this paragraph, "Plaintiff") is a citizen of Illinois.  Plaintiff purchased Ranitidine-Containing Products from approximately 2013 to January 2020 in Illinois. The Ranitidine-Containing Products Plaintiff purchased specifically included prescription generic ranitidine tablets and capsules from approximately 2017 to 2020, manufactured by Teva and Glenmark; and OTC 75 mg and 150 mg Zantac tablets and capsules from approximately 2013 to 2017, manufactured by BI and Sanofi.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Sandoz, and Strides.  Thus Teva, Glenmark, BI, Sanofi, Amneal, Dr. Reddy's, Sandoz, and Strides are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

137.    Plaintiff Renee Chatman (for the purpose of this paragraph, "Plaintiff") is a citizen of Illinois.  Plaintiff purchased Ranitidine-Containing Products from approximately 2014 to 2019 in Illinois. The Ranitidine-Containing Products Plaintiff purchased specifically included OTC 150 mg Zantac tablets and capsules from approximately 2014 to January 2019, manufactured by BI and Sanofi.  Plaintiff also purchased OTC 150 mg Walgreens-branded ranitidine tablets and capsules from Walgreens from approximately 2014 to 2019 but, based on the limited available

sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Dr. Reddy's, Apotex, Strides, and Perrigo manufactured OTC 150 mg Walgreens-branded ranitidine tablets and capsules for Walgreens, and, therefore, Dr. Reddy's, Apotex, Strides, and Perrigo are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Thus, BI, Sanofi, Dr. Reddy's, Apotex, Walgreens, Strides, and Perrigo are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

138.    Plaintiff Vickie Anderson (for the purpose of this paragraph, "Plaintiff") is a citizen of Illinois.  Plaintiff purchased Ranitidine-Containing Products from approximately 2012 to 2015 in Illinois. The Ranitidine-Containing Products Plaintiff purchased specifically included OTC Zantac tablets and capsules from approximately 2012 to 2015, manufactured by BI, and prescription generic ranitidine tablets and capsules from 2007 to 2015.  Plaintiff also purchased OTC 150 mg Walmart-branded ranitidine tablets and capsules from Walmart from approximately 2012 to 2015 but, based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Dr. Reddy's, Strides, and Perrigo manufactured OTC 150 mg Walmart-branded ranitidine tablets and capsules for Walmart, and, therefore, Dr. Reddy's, Strides, and Perrigo are named as Defendants until adequate information is produced to identify

the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.   Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva.  Thus, BI, Dr. Reddy's, Perrigo, Amneal, Glenmark, Sandoz, Strides, Walmart, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

139.    Plaintiff Carol Harkins (for the purpose of this paragraph, "Plaintiff") is a citizen of Illinois.  Plaintiff purchased Ranitidine-Containing Products from  approximately 2005 to 2020 in Illinois.  The Ranitidine-Containing Products Plaintiff purchased specifically included: OTC Zantac tablets and capsules in or around 2005, manufactured by Pfizer.  Plaintiff also purchased OTC 150 mg Walmart-branded ranitidine tablets and capsules from Walmart, from approximately 2005 to 2020 but, based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Dr. Reddy's, Apotex, Strides, and Perrigo manufactured OTC 150 mg Walmart-branded ranitidine tablets and capsules for Walmart, and, therefore, Dr. Reddy's, Perrigo, Strides, and Apotex are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.   Thus, Pfizer, Dr. Reddy's, Apotex, Walmart, Strides, and Perrigo are referred to as "Defendants" for the purposes of Plaintiff's claims,

unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

### Indiana

140.    Plaintiff Alyson Humphrey (for the purpose of this paragraph, "Plaintiff") is a citizen of Indiana.   Plaintiff purchased Ranitidine-Containing Products in Indiana from approximately 2014 to February 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription 150 mg Zantac tablets and capsules (manufactured by GSK); (b) prescription 150 mg generic ranitidine tablets and capsules from approximately September 2019 to February 2020 (manufactured by Strides); and (c) OTC Zantac tablets and capsules from approximately 2014 to 2019 (manufactured by BI and Sanofi).   Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants:  Amneal, Dr. Reddy's, Glenmark, and Sandoz.  Thus GSK, Strides, Apotex, BI, Sanofi, Amneal, Dr. Reddy's, Glenmark, and Sandoz are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

141.    Plaintiff Rebecca Sizemore (for the purpose of this paragraph, "Plaintiff") is a citizen of Indiana.  Plaintiff purchased Ranitidine-Containing Products from approximately 2015 to February 2020 in Indiana. The Ranitidine-Containing Products Plaintiff purchased specifically

included OTC 75 mg Zantac tablets and capsules from approximately 2015 to February 2020, manufactured by BI and Sanofi; and prescription 150 mg generic ranitidine tablets and capsules from approximately 2015 to February 2020, manufactured by Sandoz, Strides, and Teva.  Plaintiff also purchased OTC 75 mg CVS Health-branded ranitidine tablets and capsules from CVS from approximately 2015 to 2020 but, based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Dr. Reddy's, Strides, and Perrigo manufactured OTC 75 mg CVS Health-branded ranitidine tablets and capsules for CVS, therefore, Dr. Reddy's, Strides, and Perrigo are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, and Glenmark. Thus, BI, Sanofi, Sandoz, Strides, Teva, Perrigo, Amneal, Dr. Reddy's, CVS and Glenmark are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

142.    Plaintiff Teresa Dowler (for the purpose of this paragraph, "Plaintiff") is a citizen of Indiana.  Plaintiff purchased Ranitidine-Containing Products from approximately 2011 to December 2019 in Indiana. The Ranitidine-Containing Products Plaintiff purchased specifically included: (a) OTC 150 mg Zantac tablets and capsules from approximately 2012 to 2019

(manufactured by BI and Sanofi); (b) prescription 150 mg generic ranitidine tablets and capsules from approximately 2017 to December 2019 (manufactured by Strides): (c) and prescription 150 mg Zantac tablets and capsules from approximately 2011 to 2013 (manufactured by GSK). Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, and Sandoz.  Thus, BI, Sanofi, Strides, GSK, Amneal, Dr. Reddy's, Glenmark, and Sandoz are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

143.    Plaintiff Timberly Goble (for the purpose of this paragraph, "Plaintiff") is a citizen of Indiana.  Plaintiff purchased Ranitidine-Containing Products from approximately 2010 to 2013 while a citizen of Texas, in or around 2014 while a citizen of Missouri, from approximately 2013 to 2019 while a citizen of Indiana, and from approximately 2019 to 2020 while a citizen of Kentucky.  The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: (a) prescription 150 mg generic ranitidine tablets and capsules from approximately March 2010 to August 2013 in Texas while a citizen of Texas; (b) prescription 150 mg generic ranitidine tablets and capsules in or around 2014 in Missouri while a citizen of Missouri; (c) prescription 150 mg generic ranitidine tablets and capsules from approximately 2013 to 2019 in Indiana while a citizen of Indiana (manufactured by Strides and Glenmark); and (d) prescription 150 mg generic ranitidine tablets and capsules from approximately 2019 to 2020 in Kentucky

while a citizen of Kentucky (manufactured by Glenmark).  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Sandoz, Strides, Glenmark, and Teva.  Thus, Amneal, Dr. Reddy's, Sandoz, Glenmark, and Teva are "Defendants" for purchases made in Texas while a citizen of Texas, unless otherwise specified; Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva are "Defendants" for purchases made in Missouri while a citizen of Missouri, unless otherwise specified; Glenmark, Amneal, Dr. Reddy's, Sandoz, Strides, and Teva are "Defendants" for purchases made in Indiana while a citizen of Indiana, unless otherwise specified; and Amneal, Dr. Reddy's, Glenmark, Strides, and Sandoz are "Defendants" for purchases made in Kentucky while a citizen of Kentucky, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

144.    Plaintiff Tracy Wells (for the purpose of this paragraph, "Plaintiff"), is a citizen of Indiana.  Plaintiff purchased Ranitidine-Containing Products from approximately 2013 to 2019 in Indiana.   The Ranitidine-Containing Products Plaintiff purchased specifically included the following: (a) OTC 150 mg Zantac tablets and capsules from approximately 2013 to 2019, manufactured by BI and Sanofi; and (b) prescription 300 mg generic ranitidine tablets and capsules from approximately 2013 to 2019.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following defendants: Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva.  Thus, BI, Sanofi, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes

of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

### Iowa

145.    Plaintiff Brian Nervig (for the purpose of this paragraph, "Plaintiff") is a citizen of Iowa.  Plaintiff purchased Ranitidine-Containing Products from approximately 2010 to 2020 in Iowa. The Ranitidine-Containing Products Plaintiff purchased specifically included prescription Zantac tablets and capsules beginning in approximately 2010, manufactured by GSK. Plaintiff also purchased OTC 75 mg and 150 mg Walgreens-branded ranitidine tablets and capsules from Walgreens from approximately 2015 to 2020 but, based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules.  During the time period in question, Dr. Reddy's, Apotex, Strides, and Perrigo manufactured OTC 75 mg and 150 mg Walgreens-branded ranitidine tablets and capsules for Walgreens, and, therefore, Dr. Reddy's, Apotex, Strides, and Perrigo are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Thus, GSK, Dr. Reddy's, Apotex, Walgreens, Strides, and Perrigo are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

146.     Plaintiff Tracy Losee (for the purpose of this paragraph, "Plaintiff") is a citizen of Iowa.  Plaintiff purchased Ranitidine-Containing Products from approximately 2017 to February 2020 in Iowa. The Ranitidine-Containing Products Plaintiff purchased specifically included prescription 300 mg generic ranitidine tablets and capsules from approximately 2017 to February 2020, manufactured by Dr. Reddy's.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Glenmark, Sandoz, and Strides.  Thus, Dr. Reddy's, Glenmark, Sandoz, and Strides are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

147.     Plaintiff Charles Longfield (for the purpose of this paragraph, "Plaintiff") is a citizen of Nebraska.  Plaintiff purchased Ranitidine-Containing Products from approximately 1995 to 1996 while a citizen of Maryland, approximately 1997 to 2010 while a citizen of Wyoming, approximately 2011 while a citizen of Maryland, and approximately 2012 to 2019 while a citizen of Iowa. The Ranitidine-Containing Products Plaintiff purchased specifically included: (a) OTC Zantac tablets and capsules from approximately 1995 to 1996 while a citizen of Maryland (manufactured by GSK and Pfizer); (b) OTC Zantac tablets and capsules from approximately 1997 to 2010 while a citizen of Wyoming (manufactured by GSK, Pfizer, and BI); (c) OTC Zantac tablets and capsules in or about 2011 while a citizen of Maryland, manufactured by BI; (d) OTC Zantac tablets and capsules from approximately 2012 to 2019 while a citizen of Iowa

(manufactured by BI and Sanofi); and (e) prescription 150 mg generic ranitidine tablets and capsules from approximately 2015 to November 2019 in Iowa while a citizen of Iowa.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva.  Thus, GSK, Pfizer, and BI are "Defendants" with respect to purchases made in Maryland while a citizen of Maryland, unless otherwise specified; GSK, Pfizer, and BI are "Defendants" with respect to purchases made in Wyoming while a citizen of Wyoming, unless otherwise specified; and BI, Sanofi, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" with respect to purchases made in Iowa while a citizen of Iowa, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

### Kentucky

148.    Plaintiff Janet Asbury (for the purpose of this paragraph, "Plaintiff") is a citizen of Kentucky.  Plaintiff purchased Ranitidine-Containing Products from approximately 2003 to 2013 in Kentucky. The Ranitidine-Containing Products Plaintiff purchased specifically included: (a) prescription 150 mg generic ranitidine tablets and capsules from approximately 2003 to November 2013; and (b) OTC Zantac tablets and capsules from approximately 2003 to 2013 (manufactured by Pfizer and BI).  Plaintiff also purchased OTC 150 mg Rite Aid-branded ranitidine tablets and capsules from Rite Aid from approximately 2011 to 2013 but, based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules.  During the time period in

question, Perrigo and Strides manufactured OTC 150 mg Rite-Aid branded ranitidine tablets and capsules for Rite Aid, and, therefore, Perrigo and Strides are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva.  Thus, GSK, Pfizer, BI, Perrigo, Amneal, Dr. Reddy's, Glenmark, Sandoz, Rite Aid, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

### Louisiana

149.    Plaintiff Jamie Mckay (for the purpose of this paragraph, "Plaintiff") is a citizen of Louisiana.  Plaintiff purchased Ranitidine-Containing Products from approximately 2018 to December 2019 in Louisiana. The Ranitidine-Containing Products Plaintiff purchased specifically included OTC 75 mg Zantac tablets and capsules in or around 2018, manufactured by Sanofi; and prescription 150 mg generic ranitidine tablets and capsules from approximately 2018 to December 2019.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Strides, and Sandoz.  Thus, Sanofi, Amneal, Dr. Reddy's, Glenmark, Strides, and Sandoz are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were

unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

150.    Plaintiff Randy Jones (for the purpose of this paragraph, "Plaintiff") is a citizen of Louisiana. Plaintiff purchased Ranitidine-Containing Products from approximately 1995 to 2020 in Louisiana. The Ranitidine-Containing Products Plaintiff purchased specifically included: (a) prescription 300 mg generic ranitidine from approximately 2002 to 2020 (manufactured by Glenmark); (b) prescription 150 mg Zantac tablets and capsules (manufactured by GSK); and (c) OTC Zantac tablets and capsules from approximately 1995 to 1997 and 2018 to 2020 (manufactured by Sanofi, GSK, Pfizer, and BI). Plaintiff also purchased OTC 150 mg Walmart-branded ranitidine tablets and capsules from Walmart from approximately 2018 to 2020 but, based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Perrigo, Dr. Reddy's, Strides, and Apotex manufactured OTC 150 mg Walmart-branded ranitidine tablets and capsules for Walmart, and, therefore, Perrigo, Dr. Reddy's, Strides, and Apotex are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff. Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Sandoz, Strides, and Teva. Thus, GSK, Sanofi, BI, Pfizer, Glenmark, Perrigo, Dr. Reddy's, Apotex, Dr. Reddy's, Sandoz, Strides, Walmart, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations

and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

### Maryland

151.    Plaintiff Alberta Griffin (for the purpose of this paragraph, "Plaintiff") is a citizen of Maryland.    Plaintiff purchased Ranitidine-Containing Products in Maryland from approximately 2000 to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription Zantac tablets and capsules beginning in approximately 2000 (manufactured by GSK); (b) prescription 150 mg generic ranitidine tablets and capsules from approximately 2013 to 2020 (manufactured by Strides and Glenmark); and (c) OTC Zantac tablets and capsules from approximately 2000 to 2020 (manufactured by Pfizer, BI, and Sanofi).  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Sandoz, and Teva.  Thus, GSK, Strides, Glenmark, Pfizer, BI, Sanofi, Amneal, Dr. Reddy's, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

152.    Plaintiff Darlene Whittington-Coates (for the purpose of this paragraph, "Plaintiff") is a citizen of Maryland.  Plaintiff purchased Ranitidine-Containing Products from approximately 2017 to October 2019 in Maryland. The Ranitidine-Containing Products Plaintiff purchased specifically  included  prescription  300  mg  generic  ranitidine  tablets  and  capsules  from

approximately 2017 to October 2019, manufactured by Amneal.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Glenmark, Sandoz, and Strides. Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Strides are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

153.    Plaintiff Ida Adams (for the purpose of this paragraph, "Plaintiff") is a citizen of Maryland.  Plaintiff purchased Ranitidine-Containing Products from approximately 2000 to 2005 and 2012 as a citizen of West Virginia, and from approximately 2005 to 2017 as a citizen of Maryland.  The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: (a) OTC Zantac tablets and capsules from approximately 2005 to 2017 in Maryland while a citizen of Maryland (manufactured by Pfizer, BI and Sanofi); and (b) OTC Zantac tablets and capsules from approximately 2000 to 2005 and 2012 in West Virginia while a citizen of West Virginia (manufactured by Pfizer and BI).  Thus, Pfizer, BI and Sanofi are "Defendants" with respect to purchases made in Maryland while a citizen of Maryland, unless otherwise specified; and Pfizer and BI are "Defendants" with respect to purchases made in West Virginia while a citizen of West Virginia, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of

purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

<div align="center">**Massachusetts**</div>

154.     Plaintiff Ana Guzman (for the purpose of this paragraph, "Plaintiff"), is a citizen of Massachusetts.   Plaintiff purchased Ranitidine-Containing Products in Massachusetts from approximately 1997 to February 2020.  The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription 150 mg Zantac tablets and capsules beginning in approximately 1997, manufactured by GSK; and (b) prescription 150 mg generic ranitidine tablets and capsules from approximately 2006 to February 2020, manufactured by Glenmark, Strides, Amneal, and Teva.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants:  Dr. Reddy's and Sandoz.  Thus, GSK, Glenmark, Strides, Amneal, Teva, Dr. Reddy's, and Sandoz are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

155.     Plaintiff Jose Amado (for the purpose of this paragraph, "Plaintiff") is a citizen of Massachusetts.  Plaintiff purchased Ranitidine-Containing Products from approximately 2015 to 2018 in Massachusetts. The Ranitidine-Containing Products Plaintiff purchased specifically included and prescription generic ranitidine tablets and capsules from approximately 2015 to 2018.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva.  Thus, Amneal, Dr. Reddy's, Glenmark,

Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

156.    Plaintiff Michelle Smith (for the purpose of this paragraph, "Plaintiff"), is a citizen of Massachusetts.  Plaintiff purchased Ranitidine-Containing Products from approximately 2015 to November 2019 in Massachusetts. The Ranitidine-Containing Products Plaintiff purchased specifically included: (a) OTC 150 mg Zantac tablets and capsules from approximately 2015 to November 2019, manufactured by BI and Sanofi; and (b) prescription 150 mg generic ranitidine tablets and capsules from approximately 2015 to November 2019.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva.  Thus, BI, Sanofi, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

157.    Plaintiff Jennifer Bond (for the purpose of this paragraph, "Plaintiff") is a citizen of Massachusetts.  Plaintiff purchased Ranitidine-Containing Products from approximately 2010 to September 2019 in Massachusetts and New Hampshire.  The Ranitidine-Containing Products Plaintiff purchased specifically included: (a) OTC 75 mg and 150 mg Zantac tablets and capsules

from approximately 2010 to 2013 and 2017 to September 2019 while a citizen of Massachusetts (manufactured by BI and Sanofi); and (b) OTC 75 mg and 150 mg Zantac tablets and capsules from approximately 2013 to 2017 while a citizen of New Hampshire, manufactured by BI. Plaintiff also purchased OTC Walmart-branded ranitidine tablets and capsules from Walmart in Massachusetts while a citizen of Massachusetts, but, based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Perrigo, Dr. Reddy's, Strides, and Apotex manufactured OTC Walmart-branded ranitidine tablets and capsules for Walmart, and, therefore, Perrigo, Dr. Reddy's, Strides, and Apotex are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff. Thus, BI, Sanofi, Walmart, Perrigo, Dr. Reddy's, Strides, and Apotex are "Defendants" with respect to purchases made in Massachusetts while a citizen of Massachusetts, unless otherwise specified, and BI is a "Defendant" with respect to purchases made in New Hampshire while a citizen of New Hampshire, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

158.    Plaintiff Rafael Bermudez (for the purpose of this paragraph, "Plaintiff") is a citizen of New Hampshire. Plaintiff purchased and used Ranitidine-Containing Products from approximately 2009 to February 2020 in Massachusetts and New Hampshire. The Ranitidine-Containing Products Plaintiff purchased specifically included: (a) OTC 150 mg Zantac tablets and

capsules from approximately 2009 to 2016 while a citizen of Massachusetts, manufactured by BI; (b) OTC 150 mg Zantac tablets and capsules from approximately 2016 to February 2020 while a citizen of New Hampshire (manufactured by BI and Sanofi); (c) prescription generic ranitidine tablets and capsules from approximately 2014 to 2016 while a citizen of Massachusetts; and (d) prescription generic ranitidine tablets and capsules from approximately 2016 to February 2020 while a citizen of New Hampshire.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants:  Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva. Thus, BI, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" with respect to purchases made in Massachusetts while a citizen of Massachusetts, unless otherwise specified, and BI, Sanofi, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" with respect to purchases made in New Hampshire while a citizen of New Hampshire, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

### Michigan

159.    Plaintiff Arthur Gamble (for the purpose of this paragraph, "Plaintiff"), is a citizen of Michigan.  Plaintiff purchased Ranitidine-Containing Products from approximately 2017 to May 2018 in Michigan.  The Ranitidine-Containing Products Plaintiff purchased specifically included; (a)  prescription generic ranitidine tablets and capsules from approximately 2017 to May 2018; and (b) OTC 75 mg and 150 mg Zantac tablets and capsules from approximately 2017 to May 2018, manufactured by Sanofi.  Plaintiff also purchased OTC 75 mg and 150 mg CVS Health-

branded ranitidine tablets and capsules from CVS from approximately 2017 to May 2018 but, based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer of the store-branded ranitidine tablets and capsules. During the time period in question, Strides, Dr. Reddy's, and Perrigo manufactured OTC 75 mg and 150 mg CVS-branded ranitidine tablets and capsules for CVS, and, therefore, Strides, Dr. Reddy's, and Perrigo are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, and Strides. Thus, Sanofi, CVS, Amneal, Dr. Reddy's, Glenmark, Perrigo, Sandoz, and Strides are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

160.    Plaintiff Benny Cope (for the purpose of this paragraph, "Plaintiff") is a citizen of Michigan. Plaintiff purchased Ranitidine-Containing Products from approximately 2016 to December 2019 in Michigan. The Ranitidine-Containing Products Plaintiff purchased specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 2016 to December 2019, manufactured by Amneal. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva.

Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

161.    Plaintiff Jerry Hunt (for the purpose of this paragraph, "Plaintiff") is a citizen of Michigan.  Plaintiff purchased Ranitidine-Containing Products from approximately 1989 to December 2019 in Michigan.  The Ranitidine-Containing Products Plaintiff purchased specifically included: (a) prescription Zantac tablets and capsules beginning in approximately 1989 (manufactured by GSK); (b) prescription 150 mg generic ranitidine tablets and capsules from approximately 1997 to 2020 (manufactured by Glenmark and Sandoz); and (c) OTC Zantac tablets and capsules from approximately 1995 until 2020 (manufactured by GSK, Pfizer, BI, and Sanofi). Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, BI, Strides, and Teva.  Thus, GSK, Glenmark, Sandoz, Pfizer, BI, Sanofi, Dr. Reddy's, Amneal, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

162.     Plaintiff Jody Beal (for the purpose of this paragraph, "Plaintiff") is a citizen of Michigan.  Plaintiff purchased Ranitidine-Containing Products from approximately 2008 to January 2020 in Michigan. The Ranitidine-Containing Products Plaintiff purchased specifically included: (a) prescription 150 mg and 300 mg generic ranitidine tablets and capsules from approximately 2010 to January 2020 (manufactured by Amneal and Glenmark); and (b) OTC Zantac tablets and capsules from 2010 to January 2020 (manufactured by BI and Sanofi).  Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Sandoz, Strides, and Teva.  Thus, Amneal, BI, Sanofi, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

163.     Plaintiff Judy Wilmot (for the purpose of this paragraph, "Plaintiff") is a citizen of Michigan.  Plaintiff purchased Ranitidine-Containing Products from approximately 2019 to 2020 in Michigan. The Ranitidine-Containing Products Plaintiff purchased specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 2019 to 2020, manufactured by Glenmark.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants:  Amneal, Dr. Reddy's, Sandoz, and Strides. Thus, Glenmark, Amneal, Dr. Reddy's, Sandoz, and Strides are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and

- 74 -

misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

164.    Plaintiff Lakisha Wilson (for the purpose of this paragraph, "Plaintiff") is a citizen of Michigan.  Plaintiff purchased Ranitidine-Containing Products from approximately 1997 to 2017 in Michigan.  The Ranitidine-Containing Products Plaintiff purchased specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 1997 to 2017, manufactured by Amneal; and OTC Zantac tablets and capsules on or around 1997 and from approximately 2010 to 2011, manufactured by GSK, Pfizer, and BI.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Glenmark, BI, Sandoz, Strides, and Teva.  Thus, Amneal, GSK, Pfizer, BI, Dr. Reddy's, Glenmark, BI, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

165.    Plaintiff Myra Allen (for the purpose of this paragraph, "Plaintiff") is a citizen of Michigan.  Plaintiff purchased Ranitidine-Containing Products in Michigan from approximately 2010 to 2020.  The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 2010 to 2020.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic

ranitidine tablets and capsules manufactured by Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva. Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

<div style="text-align:center"><strong>Minnesota</strong></div>

166.    Plaintiff Brad Hoag (for the purpose of this paragraph, "Plaintiff") is a citizen of Minnesota. Plaintiff purchased Ranitidine-Containing Products in Minnesota from approximately 2010 to 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included OTC 150 mg Zantac tablets and capsules manufactured by BI and Sanofi from approximately 2010 to 2019. Plaintiff also purchased OTC 150 mg CVS-branded ranitidine tablets and capsules from CVS from approximately 2010 to 2019 but, based on the limited available sources of information and discovery conducted  to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Dr. Reddy's, Strides, and Perrigo manufactured OTC 150 mg CVS-branded ranitidine tablets and capsules for CVS, and, therefore, Dr. Reddy's, Strides, and Perrigo are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Thus, Dr. Reddy's Perrigo, Strides, CVS, BI and Sanofi are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human

ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

167.    Plaintiff Donald Northrup (for the purpose of this paragraph, "Plaintiff"), is a citizen of Minnesota.  Plaintiff purchased Ranitidine-Containing Products in Minnesota from approximately 2000 to 2019.   The Ranitidine-Containing Products purchased by Plaintiff specifically included (a) OTC 75 mg Zantac tablets and capsules, manufactured by Pfizer, BI, and Sanofi from approximately 2000 to 2019; (b) prescription 150 mg generic ranitidine tablets and capsules from approximately 2000 to 2019; and (c) prescription 150 mg Zantac tablets and capsules, manufactured by GSK during the same time period. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva.   Thus, GSK, Pfizer, BI, Sanofi, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

168.    Plaintiff Sandra Erickson-Brown (for the purpose of this paragraph, "Plaintiff") is a citizen of Minnesota. Plaintiff purchased Ranitidine-Containing Products in Minnesota from approximately 1983 to 2018.   The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription Zantac tablets and capsules from approximately 1983 to 1996 (manufactured by GSK); and (b) prescription 150 mg generic ranitidine tablets and capsules

from approximately 2003 to 2016 (manufactured by Glenmark).  Plaintiff also purchased OTC 75 mg and 150 mg Walmart-branded and Walgreens-branded ranitidine tablets and capsules from Walmart and Walgreens, respectively, until approximately 2018, but, based on the limited available sources of information and discovery conducted  to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Perrigo, Dr. Reddy's, Strides, and Apotex manufactured OTC 75 and 150 mg Walmart-branded ranitidine tablets and capsules for Walmart, and Dr. Reddy's, Strides, Perrigo, and Apotex manufactured OTC 75 mg and 150 mg Walgreens-branded ranitidine tablets and capsules for Walgreens, and, therefore, Dr. Reddy's, Perrigo, Strides, and Apotex are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Sandoz, Strides, and Teva.  Thus, GSK, Glenmark, Dr. Reddy', Amneal, Sandoz, Strides, Teva, Perrigo, Apotex, Walgreens, and Walmart are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

169.    Plaintiff John Scholl (for the purpose of this paragraph, "Plaintiff") is a citizen of Minnesota.  Plaintiff purchased Ranitidine-Containing Products in approximately 2005 in North Dakota, and from approximately 2005 to 2016 in Minnesota.  The Ranitidine-Containing Products

purchased by Plaintiff specifically included: (a) OTC 75 mg Zantac tablets and capsules in North Dakota in approximately 2005, manufactured by Pfizer; and (b) OTC 75 mg Zantac tablets and capsules from approximately 2005 to 2016 in Minnesota (manufactured by Pfizer and BI). Thus, Pfizer and BI are "Defendants" for the purposes of Plaintiff's claims with respect to purchases made in Minnesota while a citizen of Minnesota, and Pfizer is a "Defendant" for the purposes of Plaintiffs' claims with respect to purchases made in North Dakota while a citizen of North Dakota, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

### Mississippi

170. Plaintiff Beverly Crosby (for the purpose of this paragraph, "Plaintiff") is a citizen of Mississippi. Plaintiff purchased Ranitidine-Containing Products in Mississippi from approximately 2000 to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription 150 mg generic ranitidine tablets and capsules from approximately 2014 to 2020 (manufactured by Strides and Amneal); and (b) OTC Zantac tablets and capsules from approximately 2000 to 2014 (manufactured by Pfizer and BI). Further, based on the limited discovery obtained to date, Plaintiff also purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Glenmark, Sandoz, and Teva. Thus, Amneal, BI, Dr. Reddy's, Glenmark, Pfizer, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human

ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

171.    Plaintiff David Weatherly (for the purpose of this paragraph, "Plaintiff") is a citizen of Mississippi.  Plaintiff purchased Ranitidine-Containing Products from approximately 2017 to 2019 in Mississippi. The Ranitidine-Containing Products Plaintiff purchased specifically included prescription 300 mg generic ranitidine tablets and capsules from approximately 2017 to 2019. Based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Glenmark, Sandoz, and Strides.  Thus Dr. Reddy's, Glenmark, Sandoz, and Strides are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

172.    Plaintiff Dorothy King (for the purpose of this paragraph, "Plaintiff") is a citizen of Mississippi.   Plaintiff purchased Ranitidine-Containing Products in Mississippi from approximately 2019 to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 300 mg generic ranitidine tablets and capsules from approximately 2019 to 2020 manufactured by Strides and Glenmark. Further, based on the limited discovery obtained to date, Plaintiff also purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, and Sandoz. Thus, Dr. Reddy's, Glenmark, Sandoz, and Strides are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful

acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

173. Plaintiff John Rachal (for the purpose of this paragraph, "Plaintiff") is a citizen of Mississippi. Plaintiff purchased Ranitidine-Containing Products in Mississippi from approximately 2000 to October 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included OTC 75 mg and 150 mg Zantac tablets and capsules from approximately 2000 to 2019 (manufactured by Pfizer, BI, and Sanofi). Thus, Pfizer, BI, and Sanofi are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

174. Plaintiff Korcis McMillian (for the purpose of this paragraph, "Plaintiff") is a citizen of Mississippi. Plaintiff purchased Ranitidine-Containing Products from approximately 2013 to 2020 in Mississippi. The Ranitidine-Containing Products Plaintiff purchased specifically included prescription 150 mg and 300 mg generic ranitidine tablets and capsules from approximately 2013 to 2020, manufactured by Strides, Glenmark, and Amneal. Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Sandoz, and Teva. Thus, Strides, Glenmark, Amneal, Dr. Reddy's, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of

Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

175.    Plaintiff Lora Mauffray (for the purpose of this paragraph, "Plaintiff") is a citizen of Mississippi.   Plaintiff purchased Ranitidine-Containing Products in Mississippi from approximately 2015 to October 2019.  The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 2015 to 2019. Plaintiff also purchased OTC 150 mg Walmart-branded ranitidine tablets and capsules from Walmart, from approximately 2015-2019, but, based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Dr. Reddy's, Perrigo, Strides, and Apotex manufactured OTC 150 mg Walmart-branded ranitidine tablets and capsules for Walmart, and, therefore, Dr. Reddy's Perrigo, Strides, and Apotex are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva. Thus, Dr. Reddy's Perrigo, Apotex, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, Teva, and Walmart are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore,

were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

176.    Plaintiff Martha Summers (for the purpose of this paragraph, "Plaintiff") is a citizen of Mississippi.  Plaintiff purchased Ranitidine-Containing Products in Arkansas, Missouri, and Mississippi from approximately 2006 to 2020.  The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription 150 mg generic ranitidine tablets and capsules in Arkansas from approximately 2006 to 2007 and 2012-2020 (manufactured by Glenmark); (b) prescription 150 mg generic ranitidine tablets and capsules in Mississippi in 2017-019 (manufactured by Glenmark); and (c) prescription 150 mg generic ranitidine tablets and capsules in Missouri from 2007 to 2012 (manufactured by Glenmark).  Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Sandoz, Strides, and Teva in Arkansas; Amneal, Dr. Reddy's, Sandoz and Strides while residing in Mississippi; and Amneal, Dr. Reddy's, Sandoz, and Teva while residing in Missouri. Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims for purchases in Arkansas while residing in Arkansas; Amneal, Dr. Reddy's, Glenmark, Sandoz, and Strides are "Defendants" for the purposes of Plaintiff's claims for purchases in Mississippi while residing in Mississippi; and Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva are "Defendants" for purposes of Plaintiff's claims for purchases in Missouri while residing in Missouri, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the

time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

177.     Plaintiff Michelle Tinker (for the purpose of this paragraph, "Plaintiff") is a citizen of Mississippi.   Plaintiff purchased Ranitidine-Containing Products in Mississippi from approximately 2014 to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription generic 150 mg ranitidine tablets and capsules from approximately 2014 to 2020 in Mississippi manufactured by Amneal, Glenmark and Strides. Further, based on the limited discovery obtained to date, Plaintiff also purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Sandoz, and Teva.  Thus Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

178.     Plaintiff Shirley Magee (for the purpose of this paragraph, "Plaintiff"), is a citizen of Mississippi.   Plaintiff purchased Ranitidine-Containing Products in Mississippi from approximately 1984 to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription Zantac tablets and capsules from approximately 1984 to 1997 (manufactured by GSK); and (b) OTC 150 mg ranitidine tablets and capsules from Wal-Mart until approximately 2020 (manufactured by Perrigo).  Plaintiff also purchased additional OTC 150 mg Walmart-branded ranitidine tablets and capsules from Walmart, until approximately 2020, but, based on the limited available sources of information and discovery conducted to date, does not

yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Dr. Reddy's, Strides, and Apotex also manufactured OTC 150 mg Walmart-branded ranitidine tablets and capsules for Walmart, and, therefore, Dr. Reddy's, Strides, and Apotex are also named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff. Thus, GSK, Walmart, Dr. Reddy's, Perrigo, Strides, and Apotex are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

### Missouri

179.    Plaintiff Antrenise Campbell (for the purpose of this paragraph, "Plaintiff") is a citizen of Missouri. Plaintiff purchased Ranitidine-Containing Products in Missouri from approximately 1998 to 2013. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription 150 mg generic ranitidine tablets and capsules from approximately 1998 to 2008; and (b) OTC 150 mg Zantac tablets and capsules from approximately 2008 to 2013, manufactured by BI. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Sandoz, and Teva. Thus, BI, Dr. Reddy's, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human

ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

180.    Plaintiff Brenda Newcomb (for the purpose of this paragraph, "Plaintiff") is a citizen of Missouri.   Plaintiff purchased Ranitidine-Containing Products in Missouri from approximately 2016 to 2020.   The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 2016 to 2020 manufactured by Strides.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva. Thus, Strides, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

181.    Plaintiff Cynthia Gibbs (for the purpose of this paragraph, "Plaintiff") is a citizen of Missouri.  Plaintiff purchased Ranitidine-Containing Products in Missouri from approximately 2005 to 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg and 300 mg generic ranitidine tablets and capsules from approximately 2005 to 2019.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides and Teva. Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides and Teva are "Defendants" for the purposes of Plaintiff's claims, unless

otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

182.    Plaintiff Elaine Aaron (for the purpose of this paragraph, "Plaintiff") is a citizen of Missouri.  Plaintiff purchased Ranitidine-Containing Products in Missouri from approximately 2009 to 2020.  The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 2009 to 2020 manufactured by Sandoz and Glenmark.  Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Strides, and Teva. Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

183.    Plaintiff Lisa Deckard (for the purpose of this paragraph, "Plaintiff") is a citizen of Missouri.  Plaintiff purchased Ranitidine-Containing Products in Missouri from approximately 2013 to 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 2013 to 2019. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg

generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva. Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

184.     Plaintiff Lorie Kendall-Songer (for the purpose of this paragraph, "Plaintiff") is a citizen of Missouri. Plaintiff purchased Ranitidine-Containing Products from approximately 2016 to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included OTC 150 mg Zantac tablets and capsules from approximately 2016 to 2020 (manufactured by BI and Sanofi). Thus, BI and Sanofi are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

**Nebraska**

185.     Plaintiff Gaylord Stauffer (for the purpose of this paragraph, "Plaintiff") is a citizen of Nebraska. Plaintiff purchased Ranitidine-Containing Products in Nebraska from 1997 to 2010 and 2013 to 2019 while a citizen of Nebraska. The Ranitidine-Containing Products purchased by Plaintiff specifically included OTC 75 mg and 150 mg Zantac tablets and capsules from Nebraska from 1997 to 2010 and 2013 to 2019 while a citizen of Nebraska (manufactured by GSK, Pfizer,

BI, and Sanofi).  Thus, GSK, Pfizer, BI, and Sanofi are "Defendants" for the purposes of Plaintiff's claims.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

### Nevada

186.    Plaintiff Cesar Pinon (for the purpose of this paragraph, "Plaintiff") is a citizen of Nevada.  Plaintiff purchased Ranitidine-Containing Products in Nevada from approximately 2009 to 2020.  The Ranitidine-Containing Products purchased by Plaintiff specifically included OTC 75 mg and 150 mg Zantac tablets and capsules from approximately 2009 to 2015 manufactured by BI.  Thus, BI is a "Defendant" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendant's breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendant's wrongful conduct.

### New Hampshire

187.    Plaintiff David Rice (for the purpose of this paragraph, "Plaintiff") is a citizen of New Hampshire.  Plaintiff purchased Ranitidine-Containing Products in New Hampshire from approximately 2005 to November 2019.  The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 2005 to 2019 manufactured by Strides.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva.  Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are

"Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

### New Jersey

188.    Plaintiff James Adamo (for the purpose of this paragraph, "Plaintiff"), is a citizen of New Jersey.  Plaintiff purchased Ranitidine-Containing Products in New Jersey from approximately 2008 to 2020.  The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription 150 mg generic ranitidine tablets and capsules in or around approximately 2008; and (b) OTC 75 mg and 150 mg Zantac tablets and capsules from approximately 2008 to 2020 manufactured by BI and Sanofi.  Plaintiff also purchased OTC 75 mg and 150 Walmart-branded ranitidine tablets and capsules, purchased from Walmart, from approximately 2011 to 2018 but, based on the limited available sources of information and discovery conducted  to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Dr. Reddy's Perrigo, Strides, and Apotex manufactured OTC 75 mg and 150 mg Walmart-branded ranitidine tablets and capsules for Walmart, and, therefore, Dr. Reddy's, Perrigo, Strides, and Apotex are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva. Thus, BI, Sanofi, Amneal, Apotex, Dr. Reddy's, Glenmark, Perrigo, Sandoz, Strides, Teva, and Walmart are "Defendants" for the purposes of

Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

189.    Plaintiff Lynn White (for the purpose of this paragraph, "Plaintiff"), is a citizen of New Jersey.  Plaintiff purchased Ranitidine-Containing Products in New Jersey from approximately 1987 to October 2019.  The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription 150 mg generic ranitidine tablets and capsules in and around approximately 1997 and November 2019 (manufactured by Glenmark); (b) OTC 150 mg Zantac tablets and capsules from approximately 2015 (manufactured by BI); and (c) prescription 150 mg and 300 mg Zantac tablets and capsules from approximately 1987 to 2019 (manufactured by GSK). Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following defendants: Amneal, Dr. Reddy's, Sandoz, and Strides.  Thus, GSK, BI, Walgreens, Amneal, Dr. Reddy's, Glenmark, Sandoz and Strides are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

190.    Plaintiff Mary McMillan (for the purpose of this paragraph, "Plaintiff"), is a citizen of New Jersey.  Plaintiff purchased Ranitidine-Containing Products in New Jersey from

approximately 2012 to September 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription 150 mg generic ranitidine tablets and capsules from approximately 2012 to 2019; and (b) OTC 150 mg Zantac tablets and capsules from 2012 to 2019 manufactured by BI and Sanofi. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva. Thus, BI, Sanofi, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

191.    Plaintiff Mary Moronski (for the purpose of this paragraph, "Plaintiff"), is a citizen of New Jersey. Plaintiff purchased Ranitidine-Containing Products in New Jersey from approximately 2011 to 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription generic ranitidine tablets and capsules from approximately 2012 to 2019 manufactured by Amneal, Glenmark, and Dr. Reddy's; and (b) OTC 150 mg Zantac tablets and capsules from approximately 2011 to 2019 (manufactured by BI and Sanofi). Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Sandoz, Strides, and Teva. Thus, BI, Sanofi, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff

purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

192.    Plaintiff Sayed Eldomiaty (for the purpose of this paragraph, "Plaintiff"), is a citizen of New Jersey.  Plaintiff purchased Ranitidine-Containing Products in New Jersey from approximately 2009 to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription 300 mg generic ranitidine tablets and capsules from approximately 2012 to 2020 manufactured by Glenmark; and (b) OTC 150 mg Zantac tablets and capsules from 2009 to 2012 manufactured by BI.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants Dr. Reddy's, Sandoz, Strides, and Teva. Thus, BI, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

**New Mexico**

193.    Plaintiff Carrie Martinez (for the purpose of this paragraph, "Plaintiff") is a citizen of New Mexico.  Plaintiff purchased Ranitidine-Containing Products in New Mexico from approximately 2008 to 2016.  The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 2008 to 2016 manufactured by Glenmark.  Further, based on the limited discovery obtained to date, Plaintiff also purchased OTC 75 mg and 150 Walmart-branded ranitidine tablets

and capsules from Walmart, from approximately 2011 to 2016, but, based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Dr. Reddy's Perrigo, and Strides manufactured OTC 75 mg and 150 mg Walmart-branded ranitidine tablets and capsules for Walmart, and, therefore, Dr. Reddy's, Perrigo, and Strides are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Sandoz, Strides, and Teva.   Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, Walmart, Teva, and Perrigo are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

194.   Plaintiff Ernesto Sanchez (for the purpose of this paragraph, "Plaintiff"), is a citizen of New Mexico.  Plaintiff purchased Ranitidine-Containing Products in New Mexico from approximately 2012 to 2020.   The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription 300 mg generic ranitidine tablets and capsules from approximately 2012 to 2020 manufactured by Glenmark; and (b) OTC 150 mg Zantac tablets and capsules from approximately 2012 to 2020 manufactured by BI and Sanofi.  Plaintiff also purchased OTC CVS-branded, Walgreens-branded, and Walmart-branded ranitidine tablets and

capsules from CVS, Walgreens, and Walmart, respectively, in the same time frame as above, but, based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Dr. Reddy's, Strides, and Perrigo manufactured OTC CVS-branded ranitidine tablets and capsules for CVS; Dr. Reddy's Perrigo, Strides, and Apotex manufactured OTC Walgreens-branded ranitidine tablets and capsules for Walgreens; and Dr. Reddy's Perrigo, Strides and Apotex manufactured OTC Walmart-branded ranitidine tablets and capsules for Walmart, therefore, Dr. Reddy's Perrigo, Strides, and Apotex are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Sandoz, Strides, and Teva. Thus, BI, Sanofi, Dr. Reddy's, Glenmark, Sandoz, Strides, Teva, CVS, Walgreens, Walmart, Perrigo, and Apotex are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

195. Plaintiff George Tapia (for the purpose of this paragraph, "Plaintiff"), is a citizen of New Mexico. Plaintiff purchased Ranitidine-Containing Products in New Mexico from approximately 2012 to February 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription 150 mg generic ranitidine tablets and capsules from

approximately 2013 to 2020 manufactured by Strides; and (b) OTC Zantac tablets and capsules from approximately 2013 to 2020 manufactured by BI and Sanofi.  Plaintiff also purchased OTC Walmart-branded ranitidine tablets and capsules from Walmart from approximately 2012 to 2014 but, based on the limited available sources of information and discovery conducted  to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Dr. Reddy's Perrigo, and Strides manufactured OTC Walmart-branded ranitidine tablets and capsules for Walmart, and, therefore, Dr. Reddy's, Perrigo, and Strides are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva.  Thus, BI, Sanofi, Amneal, Dr. Reddy's, Perrigo, Glenmark, Sandoz, Strides, Walmart, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

196.    Plaintiff Inez Mazon (for the purpose of this paragraph, "Plaintiff") is a citizen of New Mexico.  Plaintiff purchased Ranitidine-Containing Products in New Mexico from approximately July 2018 to November 2019.  The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 300 mg generic ranitidine tablets and capsules from approximately 2018 to 2019 manufactured by Strides.  Further, based on the limited discovery

obtained to date, Plaintiff purchased prescription 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Glenmark, and Sandoz. Thus, Dr. Reddy's, Glenmark, Sandoz, and Strides are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

197.    Plaintiff Josefina Griego (for the purpose of this paragraph, "Plaintiff") is a citizen of New Mexico.  Plaintiff purchased Ranitidine-Containing Products in New Mexico from approximately 2018 to November 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 2018 to 2019.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Sandoz, and Strides. Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Strides are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

198.    Plaintiff Phyllis Gallegos (for the purpose of this paragraph, "Plaintiff") is a citizen of New Mexico.  Plaintiff purchased Ranitidine-Containing Products from approximately 2018 to

February 2020 in New Mexico. The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 300 mg generic ranitidine tablets and capsules from approximately 2018 to 2020. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Glenmark, Sandoz, and Strides. Thus, Dr. Reddy's, Glenmark, Sandoz, and Strides are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

### New York

199.    Plaintiff Aida Carlo (for the purpose of this paragraph, "Plaintiff") is a citizen of New York. Plaintiff purchased Ranitidine-Containing Products in New York from approximately April 2019 to July 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules manufactured by Strides. Thus, Strides is a "Defendant" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendant's breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendant's wrongful conduct.

200.    Plaintiff Benny Fazio (for the purpose of this paragraph, "Plaintiff"), is a citizen of New York. Plaintiff purchased Ranitidine-Containing Products in New York from approximately May 2000 to November 2019. The Ranitidine-Containing Products purchased by Plaintiff

specifically included: (a) prescription 150 mg Zantac tablets and capsules from approximately 2000 to 2004 manufactured by GSK; (b) prescription 150 mg generic ranitidine tablets and capsules from approximately 2004 to November 2019 manufactured by Sandoz and Strides; and (c) OTC Zantac tablets and capsules from 2000 to November 2019 manufactured by Pfizer, BI, and Sanofi. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg ranitidine manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, and Teva. Thus, GSK, Pfizer, BI, Sanofi, Sandoz, Strides, Amneal, Dr. Reddy's, Glenmark, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

201.    Plaintiff Francis Neary (for the purpose of this paragraph, "Plaintiff") is a citizen of New York. Plaintiff purchased Ranitidine-Containing Products in New York from approximately 2014 through February 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included OTC Zantac tablets and capsules manufactured by BI and Sanofi. Thus, BI and Sanofi are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

202.    Plaintiff Glorimar Rodriguez (for the purpose of this paragraph, "Plaintiff"), is a citizen of New York.  Plaintiff purchased Ranitidine-Containing Products in New York from approximately 2009 until October 2019.  The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: (a) 150 mg prescription ranitidine tablets and capsules from approximately 2009 to 2019; and (b) OTC Zantac tablets and capsules from approximately 2009 to 2019 manufactured by BI and Sanofi.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine in tablets and manufactured by one or more of the following Defendants:  Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva.  Thus, BI, Sanofi, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

203.    Plaintiff Joseph Mcpheter (for the purpose of this paragraph, "Plaintiff"), is a citizen of New York.  Plaintiff purchased Ranitidine-Containing Products in New York from approximately November 2011 to September 2019.  The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) OTC Zantac tablets and capsules from approximately November 2011 to June 2015 manufactured by BI; and (b) prescription 150 mg and 300 mg ranitidine tablets and capsules from June 2015 to September 2019.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg and 300 ranitidine tablets and capsules manufactured by one or more of the following Defendants:  Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva.  Thus, BI, Amneal, Dr. Reddy's, Glenmark,

Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

204. Plaintiff Mary Lou Wagner (for the purpose of this paragraph, "Plaintiff") is a citizen of New York. Plaintiff purchased Ranitidine-Containing Products in New York from approximately 2009 to 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 300 mg ranitidine tablets and capsules manufactured by Amneal. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva. Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

205. Plaintiff Mary McCullen (for the purpose of this paragraph, "Plaintiff") is a citizen of New York. Plaintiff purchased Ranitidine-Containing Products in New York from approximately 1998 to February 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included (a) OTC Zantac tablets and capsules from approximately 1998 to 2019 (manufactured by Pfizer, BI, and Sanofi); and (b) prescription 150 mg generic ranitidine tablets and capsules manufactured by Amneal. Further, based on the limited discovery obtained to date,

Plaintiff also purchased prescription 150 mg generic ranitidine manufactured by one or more of the following Defendants:  Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva.  Thus, Pfizer, BI, Sanofi, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

206.    Plaintiff Migdalia Kinney (for the purpose of this paragraph, "Plaintiff"), is a citizen of New York.  Plaintiff purchased Ranitidine-Containing Products from approximately 2012 to 2019 in New York.   The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) OTC 150 mg Zantac tablets and capsules from approximately 2012 through 2015 and 2016 to 2019 manufactured by BI and Sanofi; and (b) prescription 150 mg generic ranitidine tablets and capsules from approximately 2015 to 2016 manufactured by Sandoz and Amneal.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants:  Dr. Reddy's, Glenmark, Strides, and Teva.  Thus, BI, Sanofi, Sandoz, Amneal, Dr. Reddy's, Glenmark, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

207.    Plaintiff Nereida Cordero (for the purpose of this paragraph, "Plaintiff") is a citizen of New York.  Plaintiff purchased Ranitidine-Containing Products from approximately 2015 to 2018.   The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg ranitidine tablets and capsules manufactured by Strides.  Further, based on the limited discovery obtained to date, Plaintiff also purchased prescription 150 mg ranitidine tablets manufactured by one of the following Defendants:  Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva.  Thus, Strides, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

208.    Plaintiff Phyllis Spuler (for the purpose of this paragraph, "Plaintiff") is a citizen of New York.   Plaintiff purchased Ranitidine-Containing Products in New York from approximately March 2018 to July 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules manufactured by Dr. Reddy's and Strides.  Further, based on the limited discovery obtained to date, Plaintiff also purchased prescription 150 mg generic tablets and capsules manufactured by one or more of the following Defendants:  Amneal, Glenmark, and Sandoz.  Thus, Dr. Reddy's, Strides, Amneal, Glenmark, and Sandoz are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff

has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

209.    Plaintiff Richard Froehlich (for the purpose of this paragraph, "Plaintiff"), is a citizen of New York.  Plaintiff purchased Ranitidine-Containing Products in New York from approximately 2016 to 2019.   The Ranitidine-Containing Products purchased by Plaintiff specifically included OTC 150 mg Zantac tablets and capsules manufactured by BI and Sanofi. Plaintiff also purchased 150 mg CVS-branded, Rite Aid-branded, and Walmart-branded ranitidine tablets and capsules from CVS, Rite-Aid, and Walmart, respectively, from approximately 2016 to 2019 but, based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Dr. Reddy's, Strides, and Perrigo manufactured 150 mg CVS-branded ranitidine tablets and capsules for CVS; Apotex, Strides, and Perrigo manufactured 150 mg Rite Aid-branded ranitidine tablets and capsules for Rite Aid; and Dr. Reddy's, Apotex, Strides, and Perrigo manufactured 150 mg Walmart-branded ranitidine tablets and capsules for Walmart, and, therefore, Dr. Reddy's, Apotex, Strides, and Perrigo are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Thus, CVS, Rite Aid, Walmart, BI, Sanofi, Dr. Reddy's, Apotex, Strides, and Perrigo are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

210.     Plaintiff Silomie Clarke (for the purpose of this paragraph, "Plaintiff"), is a citizen of New York.  Plaintiff purchased Ranitidine-Containing Products in New York in approximately 2007, 2015, and from approximately 2018 to 2020.  The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription 150 mg generic ranitidine tablets and capsules in 2007 and 2015, and 300 mg prescription generic ranitidine tablets and capsules in approximately 2018 to 2020, manufactured by Glenmark; and (b) OTC Zantac tablets and capsules on a periodic basis from approximately 2018 to 2020 manufactured by Sanofi.  Further, based on the limited discovery obtained to date, Plaintiff also purchased prescription 150 mg and 300 mg generic tablets and capsules manufactured by one or more of the following defendants:  Amneal, Dr. Reddy's, Sandoz, Strides, and Teva.  Thus, Sanofi, Amneal, Glenmark, Dr. Reddy's, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

211.     Plaintiff Steven Murdock (for the purpose of this paragraph, "Plaintiff") is a citizen of New York.  Plaintiff purchased Ranitidine-Containing Products in New York from approximately February 2019 to 2020.  The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules.  Plaintiff purchased 150 mg generic ranitidine tablets and capsules manufactured by Glenmark.  Further, based on the limited discovery obtained to date, Plaintiff also purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, and Strides.  Thus, Glenmark, Amneal, Dr. Reddy's,

Glenmark, Sandoz, and Strides are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

212.    Plaintiff Yesenia Melillo (for the purpose of this paragraph, "Plaintiff"), is a citizen of New York.   Plaintiff purchased Ranitidine-Containing Products in New York from approximately November 2018 to May 2019.  The Ranitidine-Containing Products purchased by Plaintiff specifically included OTC 150 mg Zantac tablets and capsules manufactured by Sanofi. Thus, Sanofi is a "Defendant" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendant's breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

**North Carolina**

213.    Plaintiff Acia D'amore (for the purpose of this paragraph, "Plaintiff") is a citizen of North Carolina.  Plaintiff purchased Ranitidine-Containing Products in North Carolina from approximately July 2018 to November 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules from approximately 2018 to 2019.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, and Strides.  Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Strides are "Defendants" for the purposes of

Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

214.    Plaintiff Dennis Robbins (for the purpose of this paragraph, "Plaintiff"), is a citizen of North Carolina.  Plaintiff purchased Ranitidine-Containing Products in North Carolina from approximately 1985 to October 2019.  The Ranitidine-Containing Products purchased by Plaintiff specifically included (a) prescription 150 mg Zantac tablets and capsules from approximately 1985 to 1997 (manufactured by GSK); (b) OTC Zantac tablets and capsules from approximately 1995 to 2019 (manufactured by GSK, Pfizer, BI, and Sanofi); and (c) prescription 150 mg generic ranitidine tablets and capsules from approximately 1997 to 2019 (manufactured by Amneal). Further, based on the limited discovery obtained to date, Plaintiff also purchased 150 mg prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva.  Thus, GSK, Pfizer, BI, Sanofi, Amneal, BI, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

215.    Plaintiff Julie Turner (for the purpose of this paragraph, "Plaintiff"), is a citizen of North Carolina.  Plaintiff purchased Ranitidine-Containing Products in North Carolina from

approximately 2013 to January 2018.  The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription 150 mg generic ranitidine tablets and capsules from approximately 2013 to 2018 manufactured by Teva and Amneal; and (b) prescription 150 mg Zantac tablets in or around this time manufactured by GSK.  Further, based on the limited discovery obtained to date, Plaintiff also purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following defendants: Dr. Reddy's, Glenmark, Sandoz, and Strides.  Thus, Amneal, Dr. Reddy's, Glenmark, GSK, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

216.    Plaintiff Patricia Frazier (for the purpose of this paragraph, "Plaintiff"), is a citizen of North Carolina.  Plaintiff purchased Ranitidine-Containing Products in North Carolina from approximately 2008 to May 2015.  The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription 150 mg generic ranitidine tablets and capsules from approximately 2008 to 2015; and (b) OTC 150 mg Zantac tablets and capsules from approximately 2008 to 2015 manufactured by BI.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva.  Thus, BI, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing

Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

217.    Plaintiff Sharon Parks (for the purpose of this paragraph, "Plaintiff"), is a citizen of North Carolina. Plaintiff purchased Ranitidine-Containing Products in North Carolina from approximately 2016 to September 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included; (a) prescription 150 mg generic ranitidine tablets and capsules from approximately 2016 to 2019 (manufactured by Amneal); and (b) OTC 150 mg Zantac tablets and capsules from approximately 2016 to 2019 (manufactured by BI and Sanofi). Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following defendants: Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva. Thus, BI, Sanofi, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

218.    Plaintiff Teresa Lee (for the purpose of this paragraph, "Plaintiff") is a citizen of North Carolina. Plaintiff purchased Ranitidine-Containing Products in North Carolina from approximately 2016 to 2020 in North Carolina. The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg and 300 mg generic ranitidine tablets and capsules from approximately 2016 to 2020 manufactured by Strides; and OTC 150 mg Zantac tablets and capsules in or around approximately 2016 manufactured by BI. Further, based on the

limited discovery obtained to date, Plaintiff purchased prescription 150 mg and 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva. Thus, BI, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

**Ohio**

219.    Plaintiff Chris Troyan (for the purpose of this paragraph, "Plaintiff") is a citizen of Ohio.  Plaintiff purchased Ranitidine-Containing Products in Ohio from approximately 2002 to 2020.  The Ranitidine-Containing Products purchased by Plaintiff specifically included OTC Zantac tablets and capsules manufactured by Pfizer, BI, and Sanofi.  Plaintiff also purchased OTC 75 mg and 150 mg CVS-branded ranitidine tablets and capsules from CVS from approximately 2011 to 2020 but, based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules.  During the time period in question, Dr. Reddy's, Strides, and Perrigo manufactured OTC CVS-branded ranitidine tablets and capsules for CVS; and therefore, Dr. Reddy's, Perrigo, and Strides are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Thus, CVS, Pfizer, BI, Sanofi, Dr. Reddy's, Perrigo, and Strides are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were

worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

220.    Plaintiff Michael Galloway (for the purpose of this paragraph, "Plaintiff") is a citizen of Ohio.  Plaintiff purchased Ranitidine-Containing Products in Florida from approximately 1997 through 1999 while a resident of Florida, and in Ohio from approximately 1999 through October 2019 while a resident of Ohio.  The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription 150 mg Zantac tablets and capsules from approximately 1997 through 1999 in Florida while a citizen of Florida (manufactured by GSK); (b) prescription 150 mg generic ranitidine tablets and capsules from approximately 1997 through 1999 in Florida while a citizen of Florida; (c) OTC Zantac tablets and capsules from approximately 1997 through 1999 in Florida while a citizen of Florida (manufactured by GSK and Pfizer); (d) prescription 150 mg Zantac tablets and capsules beginning in approximately 1999 in Ohio while a citizen of Ohio (manufactured by GSK); (e) prescription 150 mg generic ranitidine tablets and capsules from approximately 1999 through October 2019 in Ohio while a citizen of Ohio (manufactured by Teva); and (f) OTC Zantac tablets and capsules from approximately 1999 through October 2019 in Ohio while a citizen of Ohio (manufactured by Pfizer, BI, and Sanofi).  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants:  Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva.  Thus, GSK, Pfizer, Sandoz, and Teva are "Defendants" with respect to purchases made in Florida while a citizen of Florida unless otherwise specified; and  GSK, Pfizer, BI, Sanofi, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" with respect to purchases made in Ohio while a citizen of Ohio unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and

misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

221.    Plaintiff Patricia Hess (for the purpose of this paragraph, "Plaintiff"), is a citizen of Ohio. Plaintiff purchased Ranitidine-Containing Products in Ohio from approximately 2010 to January 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: (a) prescription 150 mg generic ranitidine tablets and capsules manufactured by Dr. Reddy's, Strides, and Sandoz; and (b) OTC Zantac tablets and capsules manufactured by BI. Plaintiff also purchased OTC CVS-branded ranitidine tablets and capsules from CVS from approximately 2010 to January 2019 but, based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Dr. Reddy's, Strides, and Perrigo manufactured OTC CVS-branded ranitidine tablets and capsules for CVS, and, therefore, Dr. Reddy's, Strides, and Perrigo are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff. Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Glenmark, and Teva. Thus, CVS, BI, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, Teva, and Perrigo are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were

worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

### Oklahoma

222.    Plaintiff Billy Naab (for the purpose of this paragraph, "Plaintiff") is a citizen of Oklahoma.  Plaintiff purchased Ranitidine-Containing Products in Oklahoma from approximately 2000 to 2014 and 2017 while residing in Oklahoma, in approximately 2015 while a citizen of Washington, and in approximately 2016 while a citizen of Idaho. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) OTC Zantac tablets and capsules from approximately 2000 to 2014 and 2017 in Oklahoma while a citizen of Oklahoma (manufactured by Pfizer, BI, and Sanofi); (b) prescription 150 mg generic ranitidine tablets and capsules in 2017 in Oklahoma while a citizen of Oklahoma; (c) OTC Zantac tablets and capsules in 2015 in Washington while a citizen of Washington, manufactured by BI; (d) prescription 150 mg generic ranitidine tablets and capsules in 2015 in Washington while a citizen of Washington; (e) OTC Zantac tablets and capsules in 2016 in Idaho while a citizen of Idaho, manufactured by BI; and (f) prescription 150 mg generic ranitidine tablets and capsules in 2016 in Idaho while a citizen of Idaho.  Based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine manufactured by one or more of the following Defendants:  Sandoz, Strides, and Teva.   Thus, Pfizer, BI, Sanofi, Sandoz, Strides and Teva are "Defendants" with respect to purchases made in Oklahoma while a citizen of Oklahoma, unless otherwise specified; BI, Sandoz, and Teva are "Defendants" with respect to purchases made in Washington while a citizen of Washington, unless otherwise specified; and BI, Sandoz, Strides, and Teva are "Defendants" with respect to purchases made in Idaho while a citizen of Idaho, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and,

therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

223.    Plaintiff Demarco Grayson (for the purpose of this paragraph, "Plaintiff"), is a citizen of Oklahoma.  Plaintiff purchased Ranitidine-Containing Products in Oklahoma from approximately 2011 to 2020.   The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription 150 mg generic ranitidine tablets and capsules in the same approximate time frame (manufactured by Amneal); and (b) OTC 150 mg Zantac tablets and capsules in the same approximate time frame as well (manufactured by BI and Sanofi).  Based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following defendants:  Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva.  Thus, BI, Sanofi, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

## Oregon

224.    Plaintiff Kristi Ledbetter (for the purpose of this paragraph, "Plaintiff"), is a citizen of Oregon.  Plaintiff purchased Ranitidine-Containing Products in Oregon from approximately 2011 to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) OTC Zantac 150 mg tablets and capsules from approximately 2011 to 2016 manufactured by BI; and (b) prescription 150 mg generic ranitidine tablets and capsules manufactured by Glenmark and Amneal from approximately 2011 to 2020.  Further, based on the limited discovery obtained to date, Plaintiff also purchased prescription 150 mg generic ranitidine tablets and capsules

manufactured by one or more of the following Defendants:  Dr. Reddy's, Sandoz, Strides, and Teva.  Thus, BI, Glenmark, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

### Pennsylvania

225.    Plaintiff Carol Loggins (for the purpose of this paragraph, "Plaintiff") is a citizen of Pennsylvania.   Plaintiff purchased Ranitidine-Containing Products in Pennsylvania from approximately 2013 to 2020.   The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 15 mg/ml generic ranitidine syrup from approximately 2013 to 2020.  Based on the limited discovery obtained to date, Plaintiff purchased prescription 15 mg/ml generic ranitidine syrup manufactured by one or more of the following Defendants:  Amneal and Teva.  Thus, Amneal and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

226.    Plaintiff Elmer Cook (for the purpose of this paragraph, "Plaintiff") is a citizen of Pennsylvania.   Plaintiff purchased Ranitidine-Containing Products in Pennsylvania from approximately March 2019 to February 2020.  The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules

manufactured by Amneal from 2019 to 2020.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants:  Dr. Reddy's, Glenmark, Sandoz, and Strides.  Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Strides are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

227.    Plaintiff Felicia Ball (for the purpose of this paragraph, "Plaintiff"), is a citizen of Pennsylvania.   Plaintiff purchased Ranitidine-Containing Products in Pennsylvania from approximately 2000 to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription Zantac manufactured by GSK; and (b) prescription 150 mg and 300 generic ranitidine tablets and capsules from approximately manufactured by Strides and Amneal.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Glenmark, Sandoz, and Teva; and prescription 300 mg generic tablets and capsules by one or more of the following Defendants: Dr. Reddy's, Glenmark, and Teva. Thus, GSK, Amneal, Dr. Reddy's, Glenmark, Strides, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the

time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

228.    Plaintiff Nicholas Hazlett (for the purpose of this paragraph, "Plaintiff") is a citizen of Pennsylvania.   Plaintiff purchased Ranitidine-Containing Products in Maryland from approximately 2005 to 2007 while a resident of Maryland and in Pennsylvania from approximately 2007 to 2020 while a resident of Pennsylvania. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription 15 mg/ml Zantac syrup from approximately 2005 to 2007 in Maryland while a resident of Maryland (manufactured by GSK); (b) prescription 15 mg/ml generic ranitidine syrup from approximately 2005 to 2007 in Maryland while a resident of Maryland; (c) prescription Zantac tablets and capsules from approximately 2005 to 2007 in Maryland a resident of Maryland (manufactured by GSK); (d) prescription 150 mg and 300 mg generic ranitidine tablets and capsules from approximately 2005 to 2017 in Maryland while a resident of Maryland; (e) OTC Zantac tablets and capsules from approximately 2005 to 2007 in Maryland while a resident of Maryland (manufactured by Pfizer and BI); (f) prescription 15 mg/ml Zantac syrup beginning in approximately 2007 in Pennsylvania while a resident of Pennsylvania (manufactured by GSK); (g) prescription 15 mg/ml generic ranitidine syrup from approximately 2007 to 2013 in Pennsylvania while a resident of Pennsylvania; (h) prescription Zantac tablets and capsules beginning in approximately 2007 in Pennsylvania while a resident of Pennsylvania (manufactured by GSK); (i) prescription 150 mg and 300 mg generic ranitidine tablets and capsules from approximately 2007 to 2013 in Pennsylvania while a resident of Pennsylvania; and (j) OTC Zantac tablets and capsules from approximately 2007 to 2020 in Pennsylvania while a resident of Pennsylvania (manufactured by BI and Sanofi).  Based on the limited discovery obtained to date, Plaintiff purchased 15 mg/ml prescription generic ranitidine syrup manufactured

by one or more of the following Defendants:  Amneal and Teva; and prescription 150 mg and 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants:  Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva.  Thus, GSK, Pfizer, BI, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" with respect to purchased made in Maryland while a citizen of Maryland unless otherwise specified, and GSK, Pfizer, BI, Sanofi, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" with respect to purchased made in Pennsylvania while a citizen of Pennsylvania, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

## Puerto Rico

229.    Plaintiff Gloria Colon (for the purpose of this paragraph, "Plaintiff"), is a citizen of Puerto Rico.   Plaintiff purchased Ranitidine-Containing Products in Puerto Rico from approximately 1989 to May 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription Zantac tablets and capsules manufactured by GSK; (b) OTC Zantac tablets and capsules manufactured by GSK, Pfizer, BI, and Sanofi; and (c) prescription 150 mg generic ranitidine tablets and capsules.  Further, based on the limited discovery obtained to date, Plaintiff also purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants:  Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides and Teva.  Plaintiff also purchased OTC Walgreens-branded ranitidine tablets and capsules from Walgreens from approximately 2011 through May 2019 but, based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules.  During the time period in

- 118 -

question, Dr. Reddy's, Apotex, Strides, and Perrigo manufactured OTC 150 mg Walgreens-branded ranitidine tablets and capsules for Walgreens, and, therefore, Dr. Reddy's, Apotex, Strides, and Perrigo are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.   Thus, Walgreens, GSK, Pfizer, BI, Sanofi, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, Teva, Apotex, and Perrigo are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

## South Carolina

230.    Plaintiff Annie Johnson (for the purpose of this paragraph, "Plaintiff") is a citizen of South Carolina.  Plaintiff purchased Ranitidine-Containing Products in South Carolina from approximately 2013 to December 2018.   The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules manufactured by Strides.  Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva. Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the

time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

231.    Plaintiff Jeffery Gunwall (for the purpose of this paragraph, "Plaintiff"), is a citizen of South Carolina.  Plaintiff purchased Ranitidine-Containing Products in South Carolina from approximately 1990 to June 2019.  The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription 300 mg Zantac tablets and capsules manufactured by GSK beginning in approximately 1990; and (b) prescription 300 mg generic ranitidine tablets and capsules manufactured by Strides and Glenmark from approximately 1997 to June 2019.  Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Sandoz, and Teva.  Thus, GSK, Strides, Glenmark, Dr. Reddy's, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

232.    Plaintiff Michael Futrell (for the purpose of this paragraph, "Plaintiff"), is a citizen of South Carolina.  Plaintiff purchased Ranitidine-Containing Products in South Carolina from approximately 2015 to 2020 while a resident of South Carolina.  The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription 150 mg generic ranitidine tablets and capsules manufactured by Glenmark and Strides; and (b) OTC 150  mg Zantac tablets and capsules manufactured by BI and Sanofi.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured

by one or more of the following Defendants:  Amneal, Dr. Reddy's, Sandoz, and Teva.  Thus, BI, Sanofi, Glenmark, Strides, Amneal, Dr. Reddy's, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

233.    Plaintiff Sharon Mclellan (for the purpose of this paragraph, "Plaintiff") is a citizen of South Carolina.  Plaintiff purchased Ranitidine-Containing Products in South Carolina from approximately 2005 to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 300 mg generic ranitidine tablets and capsules manufactured by Dr. Reddy's, Glenmark, Sandoz, and Teva.  Further, based on the limited discovery obtained to date, Plaintiff also purchased prescription 300 mg generic ranitidine tablets and capsules manufactured by Strides. Thus, Dr. Reddy's, Glenmark, Sandoz, Teva, and Strides are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

### Tennessee

234.    Plaintiff Billie Walker (for the purpose of this paragraph, "Plaintiff") is a citizen of Tennessee.  Plaintiff purchased Ranitidine-Containing Products in Tennessee from approximately 2008 to December 2019.  The Ranitidine-Containing Products purchased by Plaintiff specifically included prescription 150 mg generic ranitidine tablets and capsules.  Based on the limited

discovery obtained to date, Plaintiffs purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants:  Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva.  Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

235.    Plaintiff Dale Hunter (for the purpose of this paragraph, "Plaintiff"), is a citizen of Tennessee.  Plaintiff purchased Ranitidine-Containing Products in Tennessee from approximately 1995 to October 2019.  The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: (a) OTC 75 mg Zantac tablets and capsules from approximately 2004 or 2005 to 2019 manufactured by Pfizer, BI, and Sanofi; and (b) prescription 150 mg Zantac tablets and capsules in or around this time, manufactured by GSK.  Thus, GSK, Pfizer, BI, and Sanofi are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

236.    Plaintiff Eva Broughton (for the purpose of this paragraph, "Plaintiff"), is a citizen of  Tennessee.    Plaintiff  purchased  Ranitidine-Containing  Products  in  Tennessee  from approximately  2002  to  2015.    The  Ranitidine-Containing  Products  purchased  by  Plaintiff specifically included the following: (a) OTC Zantac tablets and capsules from approximately 2005

to 2015 manufactured by Pfizer and BI; and (b) prescription generic ranitidine tablets and capsules from approximately 2002 to 2005.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva.  Thus, Pfizer, BI, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

237.    Plaintiff Jeffrey Garrett (for the purpose of this paragraph, "Plaintiff") is a citizen of Tennessee.    Plaintiff purchased Ranitidine-Containing Products in Tennessee from approximately 2015 to 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included OTC 150 mg Walmart-branded tablets and capsules from approximately 2015 to 2019 manufactured by Perrigo.  Plaintiff purchased additional OTC 150 mg Walmart-branded ranitidine tablets and capsules from Walmart, from approximately 2015 to 2019, but based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the Walmart-branded ranitidine tablets and capsules.  During the time period in question, Strides, Dr. Reddy's, and Apotex also manufactured OTC 150 mg Walmart-branded ranitidine tablets and capsules for Walmart, and, therefore, Strides, Dr. Reddy's and Apotex are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Thus, Walmart, Perrigo, Dr. Reddy's, Strides, and Apotex are "Defendants" for the

purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

238.    Plaintiff Lisa Lyle (for the purpose of this paragraph, "Plaintiff"), is a citizen of Tennessee.  Plaintiff purchased Ranitidine-Containing Products in Tennessee from approximately March 2006 to February 2020.   The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: (a) prescription Zantac tablets and capsules in approximately 2006 manufactured by GSK; and (b) prescription 15 mg generic ranitidine syrup from approximately March 2006 to February 2020.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 15 mg generic ranitidine syrup manufactured by one or more of the following defendants: Amneal and Teva.  Thus, GSK, Amneal, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

239.    Plaintiff Pam Turner (for the purpose of this paragraph, "Plaintiff") is a citizen of Tennessee.  Plaintiff purchased Ranitidine-Containing Products in Tennessee from approximately 2017 to February 2020.  The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: prescription 300 mg generic ranitidine tablets and capsules from approximately 2017 to February 2020, manufactured by Glenmark and Amneal.  Further, based

on the limited discovery obtained to date, Plaintiff purchased prescription 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Sandoz, and Strides. Thus, Glenmark, Amneal, Dr. Reddy's, Sandoz, and Strides are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

240. Plaintiff Rebecca Howard (for the purpose of this paragraph, "Plaintiff"), is a citizen of Tennessee. Plaintiff purchased Ranitidine-Containing Products in Tennessee from approximately 2010 to 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: (a) prescription generic ranitidine 150 mg tablets and capsules from approximately 2010 through 2019; and (b) OTC Walmart-branded ranitidine tablets and capsules in or around 2010. Plaintiff purchased OTC Walmart-branded ranitidine tablets and capsules from Walmart in or around 2010, but based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the Walmart-branded ranitidine tablets and capsules. During the time period in question, Dr. Reddy's manufactured OTC Walmart-branded ranitidine tablets and capsules for Walmart, and, therefore, Dr. Reddy's is named as a Defendant until adequate information is produced to identify the specific entity(ies) that manufactured the Walmart-branded ranitidine tablets and capsules purchased by Plaintiff. Additionally, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva.

Thus, Walmart, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

241.    Plaintiff Angela Taylor (for the purpose of this paragraph, "Plaintiff"), is a citizen of Georgia.  Plaintiff purchased Ranitidine-Containing Products from approximately 2006 to 2012 while a citizen of Tennessee, and approximately 2012 to 2020 while a citizen of Georgia.  The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: (a) prescription 150 mg generic ranitidine tablets and capsules from approximately 2006 to 2012 in Tennessee while a citizen of Tennessee; and (b) prescription 150 mg generic ranitidine tablets and capsules from approximately 2012 to 2020 in Georgia while a citizen of Georgia (manufactured by Dr. Reddy's).  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Glenmark, Sandoz, Strides, and Teva.  Thus, Dr. Reddy's, Amneal, Glenmark, Sandoz, and Teva are "Defendants" with respect to purchases made in Tennessee while a citizen of Tennessee, unless otherwise specified; and Dr. Reddy's, Amneal, Glenmark, Sandoz, Strides, and Teva are "Defendants" with respect to purchases made in Georgia while a citizen of Georgia, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the

time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

242.    Plaintiff Kenneth Hix (for the purpose of this paragraph, "Plaintiff") is a citizen of Tennessee.  Plaintiff purchased Ranitidine-Containing Products from approximately 2015 to 2016 while a citizen of Tennessee, and from approximately 2000 to 2015 while a citizen of Michigan. The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: (a) prescription 150 mg generic ranitidine tablets and capsules from approximately 2000 to 2015 in Michigan while a citizen of Michigan; (b) prescription 150 mg generic ranitidine tablets and capsules from approximately 2015 to 2016 in Tennessee while a citizen of Tennessee; (c) OTC 75 mg Zantac tablets and capsules from approximately 2000 to 2015 in Michigan while a citizen of Michigan (manufactured by Pfizer and BI); and (d) OTC 75 mg Zantac tablets and capsules from approximately 2015 to 2016 in Tennessee while a citizen of Tennessee, manufactured by BI. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva.  Thus, Pfizer, BI, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva are "Defendants" with respect to purchases made in Michigan while a citizen of Michigan, unless otherwise specified; and BI, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva are "Defendants" with respect to purchases made in Tennessee while a citizen of Tennessee, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

- 127 -

243.    Rodriguez Hampton Sr., both in his personal capacity and as a guardian for Rodriquze Hampton Jr. (for the purpose of this paragraph, "Plaintiff") is a citizen of Minnesota. Plaintiff purchased Ranitidine-Containing Products from approximately 2008 to 2019 while a citizen of Tennessee, and from approximately 2019 to 2020 while a citizen of Minnesota.  The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: (a) prescription Zantac syrup in or around 2008 to 2015 in Tennessee while a citizen of Tennessee (manufactured by GSK); (b) prescription generic ranitidine syrup from approximately 2015 to 2019 Tennessee while a citizen of Tennessee (manufactured by Amneal); and (c) prescription generic ranitidine syrup from approximately 2019 to 2020 in Minnesota while a citizen of Minnesota (manufactured by Amneal).  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine syrup manufactured by one or more of the following Defendants: Teva.  Thus, GSK, Amneal, and Teva are "Defendants" with respect to purchases made in Tennessee while a citizen of Tennessee, unless otherwise specified; and Amneal and Teva are "Defendants" with respect to purchases made in Minnesota while a citizen of Minnesota, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

## Texas

244.    Plaintiff Agapito It Aleman (for the purpose of this paragraph, "Plaintiff") is a citizen of Texas.  Plaintiff purchased Ranitidine-Containing Products in Texas from approximately from 2015 to 2017.  The Ranitidine-Containing Products purchased by Plaintiff specifically included the following OTC Zantac tablets and capsules from approximately 2015 to 2017

manufactured by BI and Sanofi.  Thus, BI and Sanofi are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

245.    Plaintiff Christopher Johnson (for the purpose of this paragraph, "Plaintiff") is a citizen of Texas.  Plaintiff purchased Ranitidine-Containing Products in Texas from approximately 2015 to 2020.  The Ranitidine-Containing Products purchased by Plaintiff specifically included: prescription 150 mg generic ranitidine tablets and capsules from approximately 2015 to 2020 manufactured by Strides.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva.  Thus, Strides, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

246.    Plaintiff Gina Martinez (for the purpose of this paragraph, "Plaintiff"), is a citizen of Texas.  Plaintiff purchased Ranitidine-Containing Products in Texas from approximately 2012 to 2020.  The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: (a) prescription 150 mg generic ranitidine tablets and capsules from approximately

2012 to 2020 manufactured by Glenmark and Strides; and (b) OTC 150 mg Zantac tablets and capsules from approximately 2014 to 2020, manufactured by BI and Sanofi. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Sandoz, and Teva. Thus, BI, Sanofi, Glenmark, Strides, Amneal, Dr. Reddy's, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

247. Plaintiff Gregory Alan Wayland (for the purpose of this paragraph, "Plaintiff") is a citizen of Texas. Plaintiff purchased Ranitidine-Containing Products in Texas from approximately 1993 to 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: prescription 150 mg generic ranitidine tablets and capsules from approximately 1997 to 2019, OTC 75 mg and 150 mg CVS-branded ranitidine tablets and capsules in or around 2009 to approximately 2019 manufactured by Perrigo, and prescription Zantac 150 mg tablets and capsules from approximately 1993 to 1996 manufactured by GSK. Plaintiff purchased additional OTC 75 mg and 150 mg CVS-branded ranitidine tablets and capsules from CVS, in or around 2009 to approximately 2019, but based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the CVS-branded ranitidine tablets and capsules. During the time period in question, Dr. Reddy's and Strides also manufactured OTC 75 mg and 150 mg CVS-branded ranitidine tablets and capsules for CVS, and, therefore, Dr. Reddy's and Strides are named as Defendants until adequate information is produced

to identify the specific entity(ies) that manufactured the additional CVS-branded ranitidine tablets and capsules purchased by Plaintiff.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva.  Thus, Perrigo, GSK, CVS, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

248.    Plaintiff Lilian Del Valle (for the purpose of this paragraph, "Plaintiff") is a citizen of Texas.  Plaintiff purchased Ranitidine-Containing Products in Texas from approximately 2016 to November 2019.  The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: OTC 150 mg Zantac tablets and capsules from approximately 2016 to 2019 manufactured by BI and Sanofi.  Thus, BI and Sanofi are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

249.    Plaintiff Maria Eames (for the purpose of this paragraph, "Plaintiff") is a citizen of Texas.  Plaintiff purchased Ranitidine-Containing Products in Texas from approximately March 2012 to December 2019.  The Ranitidine-Containing Products purchased by Plaintiff specifically

included the following: prescription 150 mg generic ranitidine tablets and capsules from approximately 2012 to 2019 manufactured by Dr. Reddy's and Glenmark and OTC 75 mg Zantac tablets and capsules in or about 2012 manufactured by BI. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Sandoz, Strides, and Teva. Thus, BI, Dr. Reddy's, Glenmark, Amneal, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

250.    Plaintiff Marilyn Abraham (for the purpose of this paragraph, "Plaintiff") is a citizen of Texas. Plaintiff purchased Ranitidine-Containing Products in Texas from approximately July 2017 to November 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: prescription 150 mg generic ranitidine tablets and capsules from approximately 2017 to 2019 manufactured by Dr. Reddy's and Glenmark, OTC 150 mg Walmart-branded ranitidine tablets and capsules from approximately 2017 to 2019, and OTC 150 mg Zantac tablets and capsules from approximately 2017 to 2019 manufactured by Sanofi. Plaintiff purchased OTC 150 mg Walmart-branded ranitidine tablets and capsules from Walmart, from approximately 2017 to 2019 but, based on the limited available sources of information and discovery conducted  to date, does not yet know the specific manufacturer(s) of the Walmart-branded ranitidine tablets and capsules. During the time period in question, Perrigo, Dr. Reddy's, Strides, and Apotex manufactured OTC 150 mg Walmart-branded ranitidine tablets and capsules

for Walmart, and, therefore, Perrigo, Dr. Reddy's, Strides, and Apotex are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Sandoz, and Strides. Thus, Sanofi, GSK, Glenmark, Dr. Reddy's, Walmart, Perrigo, Apotex, Amneal, Sandoz, and Strides are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

251.    Plaintiff Sylvia Yoshida (for the purpose of this paragraph, "Plaintiff") is a citizen of Texas.  Plaintiff purchased Ranitidine-Containing Products in Texas from approximately 2006 to 2017.  The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: prescription generic ranitidine tablets and capsules from approximately 2006 to 2017, and OTC Zantac tablets and capsules from approximately 2006 to 2017 manufactured by Pfizer, BI, and Sanofi.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva.  Thus, Pfizer, BI, Sanofi, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and, Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of

purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

252.     Plaintiff Tina Howard (for the purpose of this paragraph, "Plaintiff") is a citizen of Texas.  Plaintiff purchased Ranitidine-Containing Products in Texas from approximately July 2010 to 2015.  The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: prescription 150 mg generic ranitidine tablets and capsules from approximately 2010 to 2015.  Based on the limited discovery obtained to date, Plaintiff prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva.  Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

253.     Plaintiff Tonya Overstreet (for the purpose of this paragraph, "Plaintiff") is a citizen of Texas.  Plaintiff purchased Ranitidine-Containing Products in Texas from approximately 2010 to 2020.  The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: prescription 150 mg generic ranitidine tablets and capsules from approximately 2010 to 2020 manufactured by Amneal.  Based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Glenmark, Sandoz, Strides and Teva.  Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties,

- 134 -

wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

254.    Plaintiff Tammy Smith (for the purpose of this paragraph, "Plaintiff") is a citizen of Alaska.  Plaintiff purchased Ranitidine-Containing Products from approximately 1991 to 1993 while a citizen of Colorado, from approximately 1994 to 1995 while a citizen of Arizona, from approximately 1995 to 1996 while a citizen of Texas, from approximately 1996 to 1997 while a citizen of Louisiana, from approximately 1993 to 1994 and 1997-1998 while a citizen of Missouri, and from approximately 1998 to 1999 and 2002 to 2019 while a citizen of Alaska.  The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: (a) prescription Zantac tablets and capsules from approximately 1991 to 1993 while a citizen of Colorado (manufactured by GSK); (b) prescription Zantac tablets and capsules from approximately 1993 to 1994 while a citizen of Missouri (manufactured by GSK); (c) prescription Zantac tablets and capsules from approximately 1994 to 1995 while a citizen of Arizona (manufactured by GSK); (d) prescription Zantac tablets and capsules from approximately 1990 to 1991 and 1995 to 1996 while a citizen of Texas (manufactured by GSK); (e) prescription Zantac tablets and capsules from approximately 1996 to 1997 while a citizen of Louisiana (manufactured by GSK); (f) prescription Zantac tablets and capsules in approximately 1999 while a citizen of Alaska (manufactured by GSK); (g) prescription generic ranitidine tablets and capsules from approximately 1997 to 1998 while a citizen of Missouri;   (h) prescription generic ranitidine tablet and capsules from approximately 1998 to 1999 and 2002 to 2019 while a citizen of Alaska (manufactured by Amneal); (i) OTC 75 mg Zantac tablets and capsules from approximately 1995 to 1996 while a

citizen of Texas (manufactured by GSK and Pfizer); (j) OTC 75 mg Zantac tablets and capsules from approximately 1996 to 1997 while a citizen of Louisiana (manufactured by GSK and Pfizer); and (k) OTC 75 mg Zantac tablets and capsules from approximately 1997 to 1998 while a citizen of Missouri (manufactured by GSK and Pfizer).  Further, based on the limited discovery obtained to date, Plaintiff purchased additional prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: BI, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva.  Thus, GSK is a "Defendant" with respect to purchases made in Colorado while a citizen of Colorado, unless otherwise specified; GSK is a "Defendant" with respect to purchases made in Arizona while a citizen of Arizona, unless otherwise specified; GSK and Pfizer  are "Defendants" with respect to purchases made in Texas while a citizen of Texas, unless otherwise specified; GSK and Pfizer are "Defendants" with respect to purchases made in Louisiana while a citizen of Louisiana, unless otherwise specified; GSK, Pfizer, BI, Sandoz, and Teva are "Defendants" with respect to purchases made in Missouri while a citizen of Missouri, unless otherwise specified; and GSK, Amneal, BI, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" with respect to purchases made in Alaska while a citizen of Alaska, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

255.    Plaintiff Ronda Lockett (for the purpose of this paragraph, "Plaintiff") is a citizen of Texas.  Plaintiff purchased Ranitidine-Containing Products in Oklahoma from approximately 1982 to 1990 and 2001 to 2004 while a citizen of Oklahoma, in Missouri from approximately 1990 to 2001 while a citizen of Missouri, and in Texas from approximately 2001 to 2020 while a resident

of Texas. The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) prescription Zantac tablets and capsules from approximately 1983 to 1990 in Oklahoma while a citizen of Oklahoma (manufactured by GSK); (b) prescription Zantac tablets and capsules from approximately 1990 to 1995 in Missouri while a citizen of Missouri (manufactured by GSK); c) OTC Zantac tablets and capsules from approximately 1995 to 2000 in Missouri while a citizen of Missouri (manufactured by GSK and Pfizer); and (d) OTC Zantac tablets and capsules from approximately 2000 to 2020 in Texas while a citizen of Texas (manufactured by Pfizer, BI, and Sanofi). Thus, GSK is a "Defendant" with respect to purchases made in Oklahoma while a citizen of Oklahoma, unless otherwise specified; GSK and Pfizer are "Defendant" with respect to purchases made in Missouri while a citizen of Missouri, unless otherwise specified; and Pfizer, BI, and Sanofi are "Defendants" with respect to purchases made in Texas while a citizen of Texas, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

256.     Plaintiff Marianella Villanueva (for the purpose of this paragraph, "Plaintiff") is a citizen of Texas. Plaintiff purchased Ranitidine-Containing Products from approximately 2005 to 2020 while a citizen of Texas, and in or about 2010 while a citizen of South Carolina. The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: (a) prescription Zantac tablets and capsules beginning in approximately 2005 in Texas while a citizen of Texas (manufactured by GSK); (b) 150 mg generic ranitidine tablets and capsules from approximately 2005 to 2020 in Texas while a citizen of Texas (manufactured by Amneal,

Glenmark, Dr. Reddy's, and Strides); (c) prescription 150 mg generic ranitidine tablets and capsules in or about 2010 in South Carolina while a citizen of South Carolina (manufactured by Amneal, Glenmark, and Dr. Reddy's); (d) OTC 75 mg and 150 mg Zantac tablets and capsules from approximately 2005 2020 in Texas while a citizen of Texas (manufactured by GSK, Pfizer, BI, and Sanofi); (e) OTC 75 mg and 150 mg Zantac tablets and capsules in or about 2010 in South Carolina while a citizen of South Carolina, manufactured by BI; (f) OTC 75 mg and 150 mg Walgreens-branded ranitidine tablets and from approximately 2011 to 2020 capsules in Texas while a citizen of Texas; (g) OTC 75 mg and 150 mg CVS-branded ranitidine tablets and capsules from approximately 2009 to 2020 in Texas while a citizen of Texas; (h) OTC 75 mg and 150 mg Walmart-branded ranitidine tablets and capsules from approximately 2010 to 2020 in Texas while a citizen of Texas; and (i) OTC 75 mg and 150 mg Walmart-branded ranitidine tablets and capsules in or about 2010 in South Carolina while a citizen of Carolina.  While a citizen of Texas, Plaintiff purchased OTC 75 mg and 150 mg Walgreens-branded, CVS-branded, and Walmart-branded ranitidine tablets and capsules from Walgreens, CVS, and Walmart, respectively, in Texas from approximately 2009 to 2020, and while a citizen of South Carolina, Plaintiff purchased OTC 75 mg and 150 mg Walmart-branded ranitidine tablets and capsules from Walmart in South Carolina in or about 2010, but based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules.  During the time period in question, Dr. Reddy's, Apotex, Strides, and Perrigo manufactured OTC 75 mg and 150 mg Walgreens-branded ranitidine tablets and capsules for Walgreens, Dr. Reddy's, Strides, and Perrigo manufactured OTC 75 mg and 150 mg CVS-branded ranitidine tablets and capsules for CVS, and Dr. Reddy's, Apotex, Strides, and Perrigo manufactured OTC 75 mg and 150 mg Walmart-branded ranitidine tablets and capsules for

Walmart, and, therefore, Dr. Reddy's, Apotex, Strides, and Perrigo are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Strides Sandoz, and Teva. Thus, GSK, Pfizer, BI, Sanofi, Amneal, Dr. Reddy's, Glenmark, Strides, Walgreens, CVS, Walmart, Apotex, Perrigo, BI, Sandoz, and Teva are "Defendants" with respect to purchases made in Texas while a citizen of Texas, unless otherwise specified; and Amneal, Glenmark, Dr. Reddy's, BI, Walmart, Sandoz, and Teva are "Defendants" with respect to purchases made in South Carolina while a citizen of South Carolina, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

**Utah**

257. Plaintiff Teresa Waters (for the purpose of this paragraph, "Plaintiff") is a citizen of Utah. Plaintiff purchased Ranitidine-Containing Products in Utah from approximately 2017 to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: prescription 150 mg generic ranitidine tablets and capsules from approximately 2017 to 2020, and OTC 150 mg Zantac tablets and capsules from approximately 2017 to 2020 manufactured by BI and Sanofi. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, and Strides. Thus, BI, Sanofi, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Strides are "Defendants" for the

purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

**Virginia**

258.    Plaintiff Cheryl Banks (for the purpose of this paragraph, "Plaintiff") is a citizen of Virginia.  Plaintiff purchased Ranitidine-Containing Products in Virginia from approximately 2010 to December 2019.  The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: prescription 300 mg generic ranitidine tablets and capsules from approximately 2010 to 2019 manufactured by Amneal and Strides, and OTC Zantac tablets and capsules from approximately 2010 to 2019 manufactured by BI and Sanofi.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Glenmark, Sandoz, and Teva.  Thus, Amneal, Strides, BI, Sanofi, Dr. Reddy's, Glenmark, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

259.    Plaintiff Lynn Costley (for the purpose of this paragraph, "Plaintiff") is a citizen of Virginia.  Plaintiff purchased Ranitidine-Containing Products in Virginia from approximately 2013 to September 2019.  The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: prescription 150 mg generic ranitidine tablets and capsules from

approximately 2013 to 2019 manufactured by Strides.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva.  Thus, Strides, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

260.    Plaintiff Karen Foster (for the purpose of this paragraph, "Plaintiff") is a citizen of Virginia.  Plaintiff purchased Ranitidine-Containing Products from approximately June 2017 to 2020 while a citizen of Virginia, and approximately 2013 to 2017 while a citizen of Florida.  The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: (a) prescription 150 mg generic ranitidine tablets and capsules from approximately 2013 to 2017 in Florida while a citizen of Florida (manufactured by Glenmark); (b) prescription 150 mg generic ranitidine tablets and capsules from approximately 2017 to 2020 in Virginia while a citizen of Virginia (manufactured by Amneal and Sandoz); and (c) OTC 150 mg Zantac tablets and capsules in or around 2013 in Florida while a citizen of Florida, manufactured by BI.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, Sandoz, Glenmark, Strides, and Teva.  Thus, Amneal, Glenmark, Sandoz, Dr. Reddy's, and Strides are "Defendants" with respect to purchases made in Virginia while a citizen of Virginia, unless otherwise specified; and BI, Amneal, Glenmark, Sandoz, Dr. Reddy's, Strides,

and Teva are "Defendants" with respect to purchases made in Florida while a citizen of Florida, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

261.    Plaintiff Dan Zhovtis (for the purpose of this paragraph, "Plaintiff") is a citizen of Virginia.  Plaintiff purchased Ranitidine-Containing Products from approximately 2000 to 2016 New York while a resident of New York; and from 2016 to September of 2019 in Virginia while a resident of Virginia.  The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) OTC Zantac tablets and capsules from approximately 2000 to 2016 in New York while a resident of New York (manufactured by Pfizer and BI);  (b) OTC 150 mg Zantac tablets and capsules from approximately 2016 to September 2019 in Virginia while a resident of Virginia (manufactured by BI and Sanofi); and (c) OTC 150 mg Walmart-branded ranitidine tablets and capsules from Walmart from approximately 2016 to September 2019 in Virginia while a resident of Virginia.  Based on the limited available sources of information and discovery conducted to date, Plaintiff does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules.  During the time period in question, Dr. Reddy's, Perrigo, Strides, and Apotex manufactured OTC 150 mg Walmart-branded ranitidine tablets and capsules for Walmart, and, therefore, Dr. Reddy's, Perrigo, Strides, and Apotex are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Thus, Pfizer and BI, are "Defendants" with respect to purchased made in New York while a citizen of New York, unless otherwise specified;

and Walmart, BI, Sanofi, Dr. Reddy's, Perrigo, Strides, and Apotex are "Defendants" with respect to purchased made in Virginia while a citizen of Virginia, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

### Vermont

262.     Plaintiff Eric Ragis (for the purpose of this paragraph, "Plaintiff") is a citizen of Vermont. Plaintiff purchased Ranitidine-Containing Products in Vermont from approximately 2010 to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: prescription 150 mg generic ranitidine tablets and capsules from approximately 2010 to 2020 manufactured by Strides, Glenmark, and Amneal. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Sandoz, and Teva. Thus, Strides, Glenmark, Amneal, Dr. Reddy's, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

263.     Plaintiff Lisa Ragis (for the purpose of this paragraph, "Plaintiff") is a citizen of Vermont. Plaintiff purchased Ranitidine-Containing Products in Vermont from approximately February 2010 to September 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: prescription 150 mg generic ranitidine tablets and capsules

from approximately 2010 to 2019 manufactured by Strides and Amneal.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Glenmark, Sandoz, and Teva.  Thus, Strides, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

264.    Plaintiff Renee Clark (for the purpose of this paragraph, "Plaintiff") is a citizen of Vermont.  Plaintiff purchased Ranitidine-Containing Products in Vermont from approximately 2011 to 2020.  The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: prescription 150 mg and 300 mg generic ranitidine tablets and capsules from approximately 2011 to 2020 manufactured by Amneal.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg and 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva.  Thus, Amneal, Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

265.    Plaintiff Ronald Ragis (for the purpose of this paragraph, "Plaintiff") is a citizen of Vermont and Florida.  Plaintiff purchased Ranitidine-Containing Products from approximately 1998 to 2016 as a citizen of Vermont, and approximately 1998 to 2016 as a citizen of Florida.  The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: (a) OTC 75 mg and 150 mg Zantac tablets and capsules from approximately 1998 to 2016 in Vermont as a citizen of Vermont (manufactured by GSK, Pfizer, and BI); (b) OTC 75 mg and 150 mg Zantac tablets and capsules from approximately 1998 to 2016 in Florida as a citizen of Florida (manufactured by GSK, Pfizer, and BI); and (c) OTC 75 mg and 150 mg Walgreens-branded ranitidine tablets and capsules from approximately 2011 to 2016 in Florida as a citizen of Florida. Plaintiff purchased additional OTC 75 mg and 150 mg Walgreens-branded ranitidine tablets and capsules from Walgreens in Florida from approximately 2011 to 2016, but based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the Walgreens-branded ranitidine tablets and capsules.  During the time period in question, Dr. Reddy's, Strides, Perrigo, and Apotex manufactured OTC 75 mg and 150 mg Walgreens-branded ranitidine tablets and capsules for Walgreens, and, therefore, Dr. Reddy's, Strides, Perrigo, and Apotex are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff.  Thus, GSK, Pfizer, BI, Walgreens, Apotex, Strides, Perrigo, and Dr. Reddy's are "Defendants" with respect to purchases made in Florida while a citizen of Florida, unless otherwise specified; and GSK, Pfizer, and BI are "Defendants" with respect to purchases made in Vermont while a citizen of Vermont, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore,

were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

### Washington

266.    Plaintiff Bridget Peck (for the purpose of this paragraph, "Plaintiff") is a citizen of Washington.  Plaintiff purchased Ranitidine-Containing Products in Washington from approximately 2012 to 2020.   The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: prescription 150 mg and 300 mg generic ranitidine tablets and capsules from approximately 2012 to 2020 manufactured by Strides, Sandoz, and Teva.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg and 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Dr. Reddy's, and Glenmark.  Thus, Strides, Sandoz, Amneal, Dr. Reddy's, Glenmark, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.  As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

267.    Plaintiff Dave Garber (for the purpose of this paragraph, "Plaintiff") is a citizen of Washington.   Plaintiff purchased Ranitidine-Containing Products in Washington from approximately 1997 to June 2019.  The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: prescription 150 mg generic ranitidine tablets and capsules from approximately 1997 to June 2019 manufactured by Strides, and OTC Zantac tablets and capsules from approximately 2014 to 2019 manufactured by BI and Sanofi.  Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, BI, Dr.

Reddy's, Glenmark, Sandoz, and Teva.   Thus, Strides, BI, Sanofi, Amneal, Dr. Reddy's, Glenmark, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.   As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

268.    Plaintiff Jonathan Ferguson (for the purpose of this paragraph, "Plaintiff") is a citizen of Washington.  Plaintiff purchased Ranitidine-Containing Products in Oregon from approximately 1995 to 1996 and 1999 to 2003 while a citizen of Oregon; in Nevada from approximately 1996 to 1999 while a citizen of Nevada; and in Washington from approximately 2003 to 2007 and 2012 to July 2018 while a citizen of Washington.  The Ranitidine-Containing Products purchased by Plaintiff specifically included: (a) OTC Zantac tablets and capsules from approximately 1995 to 1996 and 1999 to 2003 in Oregon while a citizen of Oregon (manufactured by GSK and Pfizer); (b) OTC Zantac tablets and capsules from approximately 1996 to 1999 in Nevada while a citizen of Nevada (manufactured by GSK and Pfizer); (c) OTC Zantac tablets and capsules from approximately 2003 to 2007 and 2012 to July 2018 in Washington while a citizen of Washington (manufactured by Pfizer, BI, and Sanofi); and (d) OTC Walmart-branded ranitidine tablets from Walmart, and Walgreens-branded ranitidine tablets from Walgreens, from approximately from 2012 to July 2018 in Washington while a citizen of Washington.  Based on the limited available sources of information and discovery conducted to date, Plaintiff does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules.  During the time period in question, Dr. Reddy's, Perrigo, Apotex, and Strides manufactured OTC ranitidine

tablets and capsules for Walmart, and Dr. Reddy's, Apotex, Strides,and Perrigo manufactured OTC ranitidine tablets and capsules for Walgreens, and, therefore, Dr. Reddy's, Apotex, Strides, and Perrigo are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff. Thus, GSK and Pfizer are "Defendants" with respect to purchases made in Oregon while a citizen of Oregon, unless otherwise specified; GSK and Pfizer are "Defendants" with respect to purchases made in Nevada while a citizen of Nevada, unless otherwise specified;; and Pfizer, BI, Sanofi, Walmart, Walgreens, Dr. Reddy's, Strides, Perrigo, and Apotex are "Defendants" with respect to purchases made in Washington while a citizen of Washington, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

269. Steve Fischer (for the purpose of this paragraph, "Plaintiff") is a citizen of Washington. Plaintiff purchased Ranitidine-Containing Products in Washington from approximately 2006 to 2019. The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: prescription 150 mg and 300 mg generic ranitidine tablets and capsules from approximately 2007 to 2019 manufactured by Amneal, and OTC 150 mg Zantac tablets and capsules in or around 2006 manufactured by Pfizer. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 150 mg and 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Glenmark, Sandoz, Strides, and Teva. Thus, Pfizer, Amneal, Dr. Reddy's, Glenmark, Sandoz,

Strides, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

270. Robert Dewitt (for the purpose of this paragraph, "Plaintiff") is a citizen of Washington. Plaintiff purchased Ranitidine-Containing Products in both Washington and Oregon from approximately 2003 to 2020. The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: OTC 75 mg and 150 mg Zantac tablets and capsules in Washington from approximately 2003 to 2020 (manufactured by Pfizer, BI, and Sanofi); and OTC 75 mg and 150 mg Walmart-branded ranitidine tablets and capsules manufactured by Perrigo in Washington from approximately 2010 to 2020. Plaintiff purchased additional OTC 75 mg and 150 mg Walmart-branded ranitidine tablets and capsules from Walmart in Washington from approximately 2010 to 2020, but based on the limited available sources of information and discovery conducted to date, does not yet know the specific additional manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Dr. Reddy's, Strides, and Apotex OTC 75 mg and 150 mg Walmart-branded ranitidine tablets and capsules for Walmart, and, therefore, Dr. Reddy's, Strides, and Apotex are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff. Thus, Pfizer, BI, Sanofi, Walmart, Perrigo, Dr. Reddy's, Strides, and Apotex are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were

unsafe for human ingestion and, therefore, were worthless at the time of purchase.  Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

## Wisconsin

271.   Plaintiff Wendy Quezaire (for the purpose of this paragraph, "Plaintiff") is a citizen of Wisconsin.   Plaintiff purchased Ranitidine-Containing Products in Wisconsin from approximately 2005 to 2020.   The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: prescription 300 mg generic ranitidine tablets and capsules from approximately 2010 to 2020 manufactured by Strides, OTC Zantac tablets and capsules from approximately 2005 to 2010 manufactured Pfizer and BI, and prescription Zantac tablets and capsules in or about this time manufactured by GSK.   Further, based on the limited discovery obtained to date, Plaintiff purchased prescription 300 mg generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Dr. Reddy's, Glenmark, Sandoz, and Teva.  Thus, Strides, Pfizer, BI, GSK, Dr. Reddy's, Glenmark, Sandoz, and Teva are "Defendants" for the purposes of Plaintiff's claims, unless otherwise specified.   As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase.   Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

## West Virginia

272.   Plaintiff Mynetta Hastings (for the purpose of this paragraph, "Plaintiff") is a citizen of West Virginia.  Plaintiff purchased Ranitidine-Containing Products from approximately 2003 to December 2019 as a citizen of West Virginia.   The Ranitidine-Containing Products purchased by Plaintiff specifically included the following: (a) prescription generic ranitidine

tablets and capsules from approximately 2003 to 2019 in West Virginia as a citizen of West Virginia (manufactured by Dr. Reddy's, Strides, and Teva); (b) OTC CVS-branded ranitidine tablets and capsules in or about 2019 in West Virginia as a citizen of Virginia. Plaintiff purchased OTC CVS-branded ranitidine tablets and capsules in West Virginia from CVS in or about 2019, but based on the limited available sources of information and discovery conducted to date, does not yet know the specific manufacturer(s) of the store-branded ranitidine tablets and capsules. During the time period in question, Perrigo, Strides, and Dr. Reddy's manufactured OTC CVS-branded ranitidine tablets and capsules for CVS, and, therefore, Perrigo, Dr. Reddy's, and Strides are named as Defendants until adequate information is produced to identify the specific entity(ies) that manufactured the store-branded ranitidine tablets and capsules purchased by Plaintiff. Further, based on the limited discovery obtained to date, Plaintiff purchased prescription generic ranitidine tablets and capsules manufactured by one or more of the following Defendants: Amneal, Glenmark, and Sandoz. Thus, Dr. Reddy's, Strides, Teva, CVS, Perrigo, Amneal, Glenmark, and Sandoz are "Defendants" with respect to purchases made in West Virginia while a citizen of West Virginia, unless otherwise specified. As a result of Defendants' breaches of warranties, wrongful acts, and misrepresentations and omissions, Plaintiff purchased Ranitidine-Containing Products that were unsafe for human ingestion and, therefore, were worthless at the time of purchase. Thus, Plaintiff has suffered concrete injury in the form of economic damages as a result of Defendants' wrongful conduct.

## III.    JURISDICTION & VENUE

273.    This Court has original subject-matter jurisdiction under 28 U.S.C. §1331 (federal question) and 18 U.S.C. §1964 (civil remedies). This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, as amended by the Class Action Fairness Act of 2005 28 U.S.C. §1332(d)(2), because: (a) there are at least 100 class members; (b) the matter in

controversy exceeds $5 million, exclusive of interests and costs; and (c) at least one Plaintiff is a citizen of a different state than at least one Defendant.  In addition, this Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. §1367.

274.    This Court has personal jurisdiction over Defendants under Fla. Stat. Ann. §48.193 and 18 U.S.C. §1965(b) and (d).  This Court also has pendent personal jurisdiction over Defendants.

275.    In addition and/or in the alternative, Defendants and/or their agents or alter egos each have significant contacts with each of the states and territories of the United States because they designed, manufactured, tested, marketed, labeled, packaged, distributed, stored, and/or sold Ranitidine-Containing Products within each of the states and territories of the United States, and/or they derived revenue from the sale of their Ranitidine-Containing Products in each of the states and territories of the United States, through the purposeful direction of their activities to the states and territories of the United States and purposeful availment of the protections of the laws of the states and territories of the United States, such that personal jurisdiction would be proper in those states and territories under traditional notions of fair play and substantial justice.

276.    In addition and/or in the alternative, the district to which each Plaintiff's action may be remanded upon conclusion of these pretrial proceedings pursuant to 28 U.S.C. §1407(a) will have personal jurisdiction over Defendants who themselves or through an agent or alter ego are incorporated within that district, have a principal place of business in that district, or conduct a substantial amount of business in that district, such that they are essentially at home in that district and, thus, that personal jurisdiction would be proper in that district under traditional notions of fair play and substantial justice.

277.     Venue is proper in this District under 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Defendants designed, manufactured, tested, marketed, labeled, packaged, handled, distributed, stored, and/or sold Ranitidine-Containing Products, and otherwise conducted extensive business, within this District. In addition and/or in the alternative, venue is proper under 28 U.S.C. §1407(a) and the Conditional Transfer Orders of the Judicial Panel on Multidistrict Litigation.

## IV.     BACKGROUND FACTS

### A.     The Science

#### 1.     The Creation of Ranitidine-Containing Products and Their Introduction to the Market

278.     Defendants designed, manufactured, tested, marketed, labeled, packaged, handled, distributed, stored, and/or sold ranitidine under the brand name Zantac or a generic equivalent by either prescription or OTC.

##### a.     GSK Develops Zantac Through a Flurry of Aggressive Marketing Maneuvers

279.     Ranitidine belongs to a class of medications called histamine $H_2$-receptor antagonists (or $H_2$ blockers), which decrease the amount of acid produced by cells in the lining of the stomach.  Other drugs within this class include cimetidine (branded Tagamet), famotidine (Pepcid), and nizatidine (Axid).

280.     GSK-predecessor Smith, Kline & French discovered and developed Tagamet, the first $H_2$ blocker and the prototypical histamine $H_2$ receptor antagonist from which the later members of the class were developed.

281.    GSK[19] developed Zantac specifically in response to the success of cimetidine. Recognizing the extraordinary potential of having its own $H_2$ blocker in the burgeoning anti-ulcer market, GSK was all too willing to ensure its drug succeeded at all costs.

282.    In 1976, scientist John Bradshaw, on behalf of GSK-predecessor Allen & Hanburys Ltd. synthesized and discovered ranitidine.

283.    Allen & Hanburys Ltd., a then-subsidiary of Glaxo Laboratories Ltd., is credited with developing ranitidine and was awarded Patent No. 4,128,658 by the U.S. Patent and Trademark Office in December 1978, which covered the ranitidine molecule.

284.    In 1983, the FDA granted approval to Glaxo to sell Zantac, pursuant to the New Drug Application ("NDA") No. 18-703, and it quickly became GSK's most successful product – a "blockbuster."  Indeed, Zantac became the first prescription drug in history to reach $1 billion in sales.

285.    To accomplish this feat, GSK entered into a joint promotion agreement with Hoffmann-LaRoche, Inc., ███████████████████████████████████ ███.[20]  More salespersons drove more sales and blockbuster profits for GSK.

286.    In June 1986, the FDA approved Zantac for maintenance therapy of duodenal ulcers and for treatment of patients with gastroesophageal reflux disease ("GERD").

287.    In December 1993, GSK (through Glaxo Wellcome plc) entered into a partnership agreement with Pfizer-predecessor company Warner-Lambert Co. to develop and market an OTC

---

[19]   GSK, as it is known today, was created through a series of mergers and acquisitions:  In 1989, Smith, Kline & French merged with the Beecham Group to form SmithKline Beecham plc.  In 1995, Glaxo merged with the Wellcome Foundation to become Glaxo Wellcome plc.  In 2000, Glaxo Wellcome plc merged with SmithKline Beecham plc to form GlaxoSmithKline plc and GlaxoSmithKline LLC.

[20]   GSKZAN0000348881; GSKZAN0000348871.

version of Zantac.[21]  In 1995, the FDA approved OTC Zantac 75 mg tablets through NDA 20-520. In 1998, the FDA approved OTC Zantac 75 mg effervescent tablets through NDA 20-745.

288.    In 1998, GSK (Glaxo Wellcome plc) and Warner-Lambert Co. ended their partnership.  As part of the separation, Warner-Lambert Co. retained control over the OTC NDA for Zantac and the Zantac trademark in the United States and Canada but was required to obtain approval from GSK prior to making any product or trademark improvements or changes.  GSK retained rights to sell OTC Zantac outside of the United States and Canada,[22] and retained control over the Zantac trademark internationally.[23]

289.    In 2000, Pfizer acquired Warner-Lambert Co.  Pfizer controlled the Zantac OTC NDAs until December 2006.

290.    In October 2000, GSK sold to Pfizer the full rights to OTC Zantac in the United States and Canada pursuant to a divestiture and transfer agreement.  As part of that agreement, GSK divested all domestic Zantac OTC assets to Pfizer, including all trademark rights.  The agreement removed the restrictions on Pfizer's ability to seek product line extensions or the approval for higher doses of OTC Zantac.  GSK retained the right to exclusive use of the Zantac name for any prescription Ranitidine-Containing Product in the United States.

291.    In October 2003, Pfizer submitted NDA 21-698 for approval to market OTC Zantac 150 mg.  The FDA approved NDA 21-698 on August 31, 2004.

292.    During the time that Pfizer owned the rights to OTC Zantac, GSK continued to manufacture the product.

---

[21]    GSKZAN0000022775.

[22]    GSK also still held the right to sell prescription Zantac in the United States.

[23]    PFI00245109.

293.     In 2006, pursuant to a Stock and Asset Purchase Agreement, Pfizer sold and divested its entire consumer health division (including employees and documents) to Johnson & Johnson ("J&J").[24]  Because of antitrust issues, however, Zantac was transferred to Boehringer Ingelheim.

294.     Pfizer, through a divestiture agreement, transferred all assets pertaining to its Zantac OTC line of products, including the rights to sell and market all formulations of OTC Zantac in the United States and Canada, as well as all intellectual property, R&D, and customer and supply contracts to Boehringer Ingelheim.  As part of that deal, Boehringer Ingelheim obtained control and responsibility over all of the Zantac OTC NDAs.

295.     GSK continued marketing prescription Zantac in the United States until 2017 and still holds the NDAs for several prescription formulations of Zantac.  GSK continued to maintain manufacturing and supply agreements relating to various formulations of both prescription and OTC Zantac.  According to its recent annual report, GSK claims to have "discontinued making and selling prescription Zantac tablets in 2017 . . . in the U.S."[25]

296.     Boehringer Ingelheim owned and controlled the NDA for OTC Zantac between December 2006 and January 2017, and manufactured, marketed, and distributed the drug in the United States during that period.[26]

297.     In 2017, Boehringer Ingelheim sold the rights of OTC Zantac to Sanofi pursuant to an asset swap agreement.  As part of that deal, Sanofi obtained control and responsibility over Boehringer Ingelheim's entire consumer healthcare business, including the OTC Zantac NDAs.

---

[24]   PFI00191352.

[25]   GlaxoSmithKline, plc, *Annual Report* 37 (2019), https://www.gsk.com/media/5894/annual-report.pdf.

[26]   Boehringer Ingelheim also owned and controlled ANDA 074662.

As part of this agreement, Boehringer Ingelheim and Sanofi entered into a manufacturing agreement wherein Boehringer continued to manufacture OTC Zantac for Sanofi.

298.    Sanofi has controlled the OTC Zantac NDAs and marketed, sold, and distributed Zantac in the United States from January 2017 until 2019 when it issued a global recall and ceased marketing, selling, and distributing OTC Zantac.  In addition, Sanofi has marketed, sold, and distributed ranitidine globally since 1983.[27]

299.    Throughout the time that Sanofi controlled the OTC Zantac NDAs, Boehringer Ingelheim Promeco, S.A. de C.V. and Patheon Manufacturing Services LLC manufactured the finished drug product.

300.    Sanofi voluntarily recalled all brand OTC Zantac and ranitidine on October 18, 2019.

301.    Pfizer and Boehringer Ingelheim have made demands for indemnification per the Stock and Asset Purchase Agreement against J&J for legal claims related to OTC Zantac products.

302.    Sanofi has made a demand for indemnification against J&J pursuant to a 2016 Asset Purchase Agreement between J&J and Sanofi.

303.    The times during which each Brand Manufacturer Defendant manufactured and sold branded Zantac are alleged below:

| Manufacturer/ Repackager | Product | Prescription or Over the Counter | Sale Start Date Year | Sale End Date Year |
|---|---|---|---|---|
| GlaxoSmithKline | Pills, Syrup, and Injection | Prescription | 1983 | 2019 |
| GlaxoSmithKline/Warner Lambert | Pills | OTC | 1995 | 1998 |
| Pfizer | Pills | OTC | 1995 | 2006 |
| Boehringer Ingelheim | Pills | OTC | 2007 | 2016 |

---

[27]   SANOFI_ZAN_MDL_0000208478.

| Sanofi | Pills | OTC | 2017 | 2019 |
|--------|-------|-----|------|------|

**b.** **Patents Expire, Allowing Prescription and Later, OTC Generics (and Store Brands) to Enter the Market**

304. In 1997, GSK's patent on the original prescription Zantac product expired, allowing generic manufacturers to sell prescription ranitidine.

305. When GSK and Pfizer's patent on the original OTC Zantac product expired, generic manufacturers and store-brand retailers were allowed to sell OTC ranitidine.

306. The FDA approved numerous generic and store-brand manufacturers for the sale of prescription and OTC ranitidine through the ANDA process. Those manufacturers who are named as Defendants in this economic loss complaint are:

| ANDA # | ANDA Holder | Strength | Dosage Form/ Route | Date Approved | Sold Until | OTC/RX |
|--------|-------------|----------|---------------------|---------------|------------|--------|
| 76124 | Actavis Mid Atlantic LLC | EQ 15 mg Base/ml | Syrup; Oral | 2/21/07 | 03/2015 | Discontinued |
| 77824 | Amneal Pharmaceuticals of New York, LLC | EQ 150 & 300 mg Base | Tablet; Oral | 10/13/06 | 11/2019 | Discontinued |
| 78312 | Amneal Pharmaceuticals | EQ 150 & 300 mg Base | Syrup; Oral | 9/2/08 | 11/2019 | Rx |
| 200172 | Apotex Inc. | EQ 150 mg Base | Tablet; Oral | 5/31/12 | 09/2019 | OTC |
| 74680 | Apotex Inc. | EQ 150 & 300 mg Base | Tablet; Oral | 9/12/97 | 09/2010 | Rx |
| 75167 | Apotex Inc. | EQ 75 mg Base | Tablet; Oral | 5/4/00 | 09/2019 | OTC |
| 77602 | Apotex Inc. | EQ 15 mg Base/ml | Syrup; Oral | 9/17/07 | 08/2009 | Discontinued |
| 74662 | Boehringer Ingelheim | EQ 150 & 300 mg Base | Tablet; Oral | 8/29/97 | | Discontinued |
| 75294 | Dr Reddy's Laboratories Ltd. | EQ 75 mg Base | Tablet; Oral | 3/28/00 | 09/2019 | OTC |
| 75742 | Dr Reddy's Laboratories Ltd. | EQ 150 & 300 mg | Capsule; Oral | 11/29/00 | 09/2019 | Rx |

| ANDA # | ANDA Holder | Strength | Dosage Form/ Route | Date Approved | Sold Until | OTC/RX |
|---|---|---|---|---|---|---|
| | | Base | | | | |
| 76705 | Dr Reddy's Laboratories Inc. | EQ 150 & 300 mg Base | Tablet; Oral | 7/27/05 | 09/2019 | Rx |
| 78192 | Dr Reddy's Laboratories Ltd. | EQ 150 mg Base | Tablet; Oral | 8/31/07 | 09/2019 | OTC |
| 78542 | Glenmark Pharmaceuticals, Inc., USA | EQ 150 & 300 mg Base | Tablet; Oral | 11/19/08 | Various dates between 08-2019 and 10/2019 | Rx |
| 76195 | L. Perrigo Co. | EQ 75 mg Base | Tablet; Oral | 8/30/02 | Various dates between 04/2007 and 10/2019 | OTC |
| 91429 | Perrigo Research & Development Company | EQ 150 mg Base | Tablet; Oral | 5/11/11 | 10/2019 | OTC |
| 74467 | Sandoz Inc. | EQ 150 & 300 mg Base | Tablet; Oral | 8/29/97 | 09/2017 | Rx |
| 74655 | Sandoz Inc. | EQ 150 & 300 mg Base | Capsule; Oral | 10/22/97 | 09/2019 | Rx |
| 75519 | Sandoz Inc. | EQ 75 mg Base | Tablet; Oral | 9/26/02 | On information and belief, on or before 04/2020 | Discontinued |
| 200536 | Strides Pharma Global Pte Ltd | EQ 150 mg Base | Tablet; Oral | 6/28/11 | 10/2017 | OTC |
| 201745 | Strides Pharma Global Pte. Ltd. | EQ 75 mg Base | Tablet; Oral | 2/29/12 | 12/2017 | OTC |
| 205512 | Strides Pharma Global Pte. Ltd. | EQ 150 & 300 mg Base | Tablet; Oral | 8/22/16 | 03/2020 | Rx |
| 209160 | Strides Pharma Global Pte. Ltd. | EQ 75 mg Base | Tablet; Oral | 3/5/18 | 09/2018 | OTC |

| ANDA # | ANDA Holder | Strength | Dosage Form/ Route | Date Approved | Sold Until | OTC/RX |
|---|---|---|---|---|---|---|
| 209161 | Strides Pharma Global Pte. Ltd. | EQ 150 mg Base | Tablet; Oral | 2/22/18 | 09/2018 | OTC |
| 210010 | Strides Pharma Global Pte Ltd | EQ 150 & 300 mg Base | Tablet; Oral | 8/1/18 | On information and belief, 04/2020 | Rx |
| 74488 | Teva Pharmaceuticals USA, Inc. | 150 mg & 300 mg | Tablet; Oral | | 2/2008 | Rx |
| 074864 | Watson Laboratories, Inc. | 150 mg & 300 mg | Tablet; Oral | | 10/2015 | Rx |
| 075165 | IVAX Pharmaceuticals Inc Sub Teva Pharmaceuticals USA, Inc. | 150 mg & 300 mg | Tablet; Oral | | 9/2016 | Rx |
| 075296 | IVAX Pharmaceuticals Inc Sub Teva Pharmaceuticals USA, Inc. | 75 mg | Tablet; Oral | | 1/2008 | OTC |
| 076124 | Actavis Mid Atlantic LLC | 15 mg/ml | Syrup | | 3/2015 | Rx |

307.    "An abbreviated new drug application (ANDA) contains data which is submitted to FDA for the review and potential approval of a generic drug product.  Once approved, an applicant may manufacture and market the generic drug product to provide a safe, effective, lower cost alternative to the brand-name drug it references."[28]

308.    Generic (and store-brand) drugs must be comparable to the branded drug in dosage form, strength, route of administration, quality, performance characteristics, and intended use.[29]

---

[28] U.S. Food & Drug Admin., Abbreviated New Drug Application (ANDA), https://www.fda.gov/drugs/types-applications/abbreviated-new-drug-application-anda (current as of May 22, 2019).

[29] *Id.*

309.     ANDA applicants generally do not need to establish safety and effectiveness. Instead, applicants must scientifically demonstrate that their product performs in the same manner as the innovator drug, known as "bioequivalence."

310.     Once a manufacturer's ANDA is approved, that manufacturer is subject to post-market obligations.  These obligations include submitting annual reports to the FDA, tracking and reporting adverse events, and tracking and reporting relevant medical literature, among other things.

311.     These ANDA approvals allowed the Generic and Store-Brand Defendants to sell their ranitidine products throughout the country.  And they did so.

312.     All Defendants who have the power of labeling and listing drugs within the United States must obtain a National Drug Code ("NDC").  All NDC holders are required to register all drugs and list them with the FDA.

313.     All Defendants who have registered establishments with the FDA must provide "[c]omplete, accurate and up-to-date establishment registration and drug listing information [which] is essential to promote patient safety.  FDA relies on establishment registration and drug listing information for several key programs, including:

- Drug establishment inspections
- Post market surveillance
- Counterterrorism
- Recalls
- Drug quality reports
- Adverse event reports
- Monitoring of drug shortages and availability
- Supply chain security
- Drug import and export

- Identification of products that are marketed without an approved application[30]

314.    In registering with the FDA to manufacture, label, distribute, and sell Ranitidine-Containing Products within all states and territories of the United States, all Defendants holding an ANDA, NDC Code, or which registered an establishment, had an obligation to comply with federal law.

315.    Based upon the information provided by Defendants to date, the following Generic Prescription and Store-Brand Manufacturer Defendants manufactured Ranitidine-Containing Products during the following date ranges.  Upon information and belief, each Defendant began researching Ranitidine-Containing Products at least one year prior to the date they commenced selling the product and, therefore, knew or should have known of all risks associated with Ranitidine-Containing Products discussed herein from that date onward:

| Manufacturer/ Repackager (by Corporate Family) | Product | Prescription or Over the Counter | Sale Start Date Year | Sale End Date Year |
|---|---|---|---|---|
| Apotex | Pills and Syrup | Prescription | 1997 | 2019 |
| Sandoz | Pills | Prescription | 1997 | 2019 |
| Teva | Pills and Syrup | Both | 1998 | 2016 |
| Perrigo | Pills | OTC | 2000 | 2019 |
| Dr. Reddy's | Pills | Both | 2005 | 2019 |
| Amneal | Pills and Syrup | Prescription | 2009 | 2019 |
| Glenmark | Pills | Prescription | 2009 | 2019 |
| Strides | Pills | Both | 2012 | 2020 |

316.    Despite generic entry, the Brand Manufacturer Defendants continued to sell prescription and OTC Zantac.  Although sales of Zantac declined as a result of generic competition, ranitidine sales remained strong over time.  As recently as 2018, Zantac was one of the top 10

---

[30]   U.S. Food & Drug Admin., *Electronic Drug Registration and Listing System (eDRLS)* (Dec. 18, 2020), https://www.fda.gov/drugs/guidance-compliance-regulatory-information/electronic-drug-registration-and-listing-system-edrls.

antacid tablets in the United States, with sales of OTC Zantac 150 totaling $128.9 million—a 3.1% increase from the previous year.

> **2.**   **NDMA Is a Carcinogen Whose Dangerous Properties Are Well Established**

317.   According to the Environmental Protection Agency ("EPA"), "[N-Nitrosodimethylamine ("NDMA")] is a semivolatile organic chemical that forms in both industrial and natural processes."[31]  It is one of the simplest members of a class of N-nitrosamines, a family of potent carcinogens.  Scientists have long recognized the dangers that NDMA poses to human health.  A 1979 news article noted that "NDMA has caused cancer in nearly every laboratory animal tested so far."[32]  NDMA is no longer produced or commercially used in the United States except for research.  Its only use today is to cause cancer in laboratory animals.

318.   Both the EPA and the International Agency for Research on Cancer ("IARC") classify NDMA as a probable human carcinogen.[33]

319.   The IARC classification is based upon data that demonstrates NDMA "is carcinogenic in all animal species tested: mice, rats, Syrian gold, Chinese and European hamsters,

---

[31]   U.S. Environmental Protection Agency, *Technical Fact Sheet – N-Nitroso-dimethylamine (NDMA)* (Nov. 2017), https://www.epa.gov/sites/production/files/2017-10/documents/ndma_fact_sheet_update_9-15-17_508.pdf.

[32]   Jane Brody, *Bottoms Up: Alcohol in Moderation Can Extend Life*, The Globe & Mail (CANADA) (Oct. 11, 1979); *see* Rudy Platiel, *Anger Grows as Officials Unable to Trace Poison in Reserve's Water*, The Globe & Mail (CANADA) (Jan. 6, 1990) (reporting that residents of Six Nations Indian Reserve "have been advised not to drink, cook or wash in the water because testing has found high levels of N-nitrosodimethylamine (NDMA), an industrial byproduct chemical that has been linked to cancer"); Kyrtopoulos *et al*, *DNA Adducts in Humans After Exposure to Methylating Agents*, 405 Mut. Res. 135 (1998) (noting that "chronic exposure of rats to very low doses of NDMA gives rise predominantly to liver tumors, including tumors of the liver cells (hepatocellular carcinomas), bile ducts, blood vessels and Kupffer cells").

[33]   *See EPA Technical Fact Sheet*, *supra* n.31; Int'l Agency for Research on Cancer (IARC), *Summaries & Evaluations, N-NITROSODIMETHYLAMINE* (1978), http://www.inchem.org/documents/iarc/vol17/n-nitrosodimethylamine.html.

guinea-pigs, rabbits, ducks, mastomys, various fish, newts and frogs.  It induces benign and malignant tumors following its administration by various routes, including ingestion and inhalation, in various organs in various species."  Further, in 1978, IARC stated that NDMA "should be regarded for practical purposes as if it were carcinogenic to humans."[34]

320.    The American Conference of Governmental Industrial Hygienists classifies NDMA as a confirmed animal carcinogen.[35]

321.    The Department of Health and Human Services ("DHHS") states that NDMA is reasonably anticipated to be a human carcinogen.[36]  This classification is based upon DHHS's findings that NDMA caused tumors in numerous species of experimental animals, at several different tissue sites, and by several routes of exposure, with tumors occurring primarily in the liver, respiratory tract, kidney, and blood vessels.[37]

322.    The FDA considers NDMA a carcinogenic impurity[38] and chemical that "could cause cancer" in humans.[39]  The FDA recognizes that NDMA is "known to be toxic."[40]

---

[34]  17 Int'l Agency for Research on Cancer, *IARC Monographs on the Evaluation of the Carcinogenic Risk of Chemicals to Humans, Some N-Nitroso Compounds* 151-52 (May 1978).

[35]  *See EPA Technical Fact Sheet*, *supra* n.31.

[36]  *Id.* at 3.

[37]  *Id.*

[38]  ApotexCorp_0000000786.

[39]  FDA Statement, Janet Woodcock, Director – Ctr. for Drug Evaluation & Research, *Statement Alerting Patients and Health Care Professionals of NDMA Found in Samples of Ranitidine* (Sept. 13, 2019), https://www.fda.gov/news-events/press-announcements/statement-alerting-patients-and-health-care-professionals-ndma-found-samples-ranitidine.

[40]  Amneal_prod 1 _ 0000002938.

323.    The World Health Organization states that there is "conclusive evidence that NDMA is a potent carcinogen" and that there is "clear evidence of carcinogenicity."[41] NDMA belongs to the so-called "cohort of concern" which is a group of highly potent mutagenic carcinogens that have been classified as probable human carcinogens.[42]

324.    NDMA is among the chemicals known to the state of California to cause cancer (Title 27, California Code of Regulations, Section 27001), pursuant to California's Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65).

325.    The European Medicines Agency ("EMA") has referred to NDMA as "highly carcinogenic."  It recommended that "primary attention with respect to risk for patients should be on these highly carcinogenic N-nitrosamines" (including NDMA), and categorized NDMA as "of highest concern with respect to mutagenic and carcinogenic potential."[43]

326.    In 1989, the Agency for Toxic Substances and Disease Registry (ATSDR) stated that it is "reasonable to expect that exposure to NDMA by eating, drinking or breathing could cause cancer in humans" and that the "carcinogenicity of orally-administered NDMA has been demonstrated unequivocally in acute, intermediate and chronic durations studies" in animals and "it is important to recognize that this evidence also indicates that oral exposures of acute and intermediate duration are sufficient to induce cancer."  Moreover, "hepatoxicity has been

---

[41]   World Health Org., *Guidelines for Drinking Water Quality, N-Nitrosodimethylamine (NDMA)* (3d                                    ed.                 chemicals/ndmasummary_2ndadd.pdf.                          2008), https://www.who.int/water_sanitation_health/dwq/chemicals/ndmasummary_2ndadd.pdf.

[42]   International Council for Harmonisation of Technical Requirements for Pharmaceuticals for Human Use (ICH), Assessment and Control of DNA Reactive (Mutagenic) Impurities in Pharmaceuticals to Limit Potential Carcinogenic Risk, M7(R1), March 2017; https://database.ich.org/sites/default/files/M7_R1_Guideline.pdf.

[43]   Nitrosamines EMEA-H-A5(3)-1490 - Assessment Report (europa.eu) (June 25, 2020), https://www.ema.europa.eu/en/documents/referral/nitrosamines-emea-h-a53-1490-assessment-report_en.pdf.

demonstrated in all animal species that have been tested and has been observed in humans who were exposed to NDMA by ingestion or inhalation."[44]

327.    The International Register of Potentially Toxic Chemicals (IRPTC 1988) lists regulations imposed by 13 countries for NDMA for occupational exposure, packing, storing and transport, disposal, and warns of its probable human carcinogenicity and its high level of toxicity by ingestion or inhalation.

328.    The Occupational Safety and Health Administration classifies NDMA as "a carcinogen" that requires special and significant precautions along with specific hazard warnings.[45]

329.    A review of Defendants' own internal documents reveals that there is simply no question of material fact that it has been widely known within the medical and scientific community for over 40 years that NDMA is toxic and a known carcinogen.

330.    In September 2019, Defendant GSK ████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████."[46]  In addition, GSK noted that █████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████████*Id.* GSK concluded that ████████████████████████████████████████████████████ ████████ *Id.*

---

44    ATSDR  Toxicological  Profile  For  N-Nitrosodimethylamine  (December  1989), http://www.atsdr.cdc.gov/toxprofiles/tp141.pdf.

45    29 C.F.R §1910.1003 (2012).

46    GSKZAN0000236640.

331. ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████ ██

████████████████████████████████████████████

███████████████████████████████████████████ ■

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████.[49]

332. ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████.[50] ██████████████

███████████████████████████████████████████ ■

████████████████████████████████████████████

---

[47]  GSKZAN0000369506.

[48]  GSKZAN0000257640.

[49]  *Id*.

[50]  GSKZAN0000163882.

[51]  *See* GSK Dear HCP Letter, (October 3, 2019), publicly available (for example, https://www.hpra.ie/docs/default-source/Safety-Notices/gsk-hcp-letter-03oct2019.pdf).

██████████████████████████████████ ██████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████[53]

333.    Likewise, Defendant Sanofi admitted in its ███████████████████

█████████████████████████████████████████████████████████████ █

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████ █ ████████████████████████████████████████

█████████████████████████████████████████████████████ *Id.*

334.    Dr. Reddy's ███████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████ █ ██████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████ ████████████████████████████████████

███████████████████████████████████████████████████████████████

---

[52]   GSKZAN0000178581.

[53]   GSKZAN0000172037.

[54]   SANOFI_ZAN_MDL_0000169790.

[55]   SANOFI_ZAN_MDL_0000206858.

[56]   DRLMDL0000077291.



335. ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

██████

336.    Defendant  Apotex   ███████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████

337.    Defendant Glenmark admitted in its recall notification letter that "a carcinogenic impurity, NDMA, has been found in ranitidine medications at levels exceeding the FDA allowable limit."[61]

338.    As early as 1980, consumer products containing unsafe levels of NDMA and other nitrosamines have been recalled by manufacturers, either voluntarily or at the direction of the FDA.

_____

[57]  DRLMDL0000070414.

[58]  *Id*.

[59]  DRLMDL0000069991.

[60]  ApotexCorp_0000030734.

[61]  GiantEagle_MDL2924_00000303.

339.    Most recently, beginning in the summer of 2018, there have been recalls of several generic drugs used to treat high blood pressure and heart failure – Valsartan, Losartan, and Irbesartan – because the medications contained nitrosamine impurities that do not meet the FDA's safety standards.  Some of the manufacturers of those contaminated medications also are parties to this case.  They include Sandoz and Teva.

340.    This continued in 2020 when the FDA required recalls of numerous generic manufacturers' metformin, including metformin made by Apotex, Amneal, and Teva.[62]

341.    NDMA is a genotoxin which interacts with DNA and may subsequently induce mutations.  Genotoxins are not considered to have a safe threshold or dose due to their ability to alter DNA.

342.    The FDA has set an acceptable daily intake ("ADI") level for NDMA at 96 ng. That means that consumption of 96 ng of NDMA a day would increase the risk of developing cancer by 0.001% over the course of a lifetime.  That risk increases as the level of NDMA exposure increases.  However, any level above 96 ng is considered unacceptable.[63]

343.    In studies examining carcinogenicity through oral administration, mice exposed to NDMA developed cancer in the kidney, bladder, liver, and lung.  In comparable rat studies, cancers were observed in the liver, kidney, pancreas, and lung.  In comparable hamster studies, cancers were observed in the liver, pancreas, and stomach.  In comparable guinea-pig studies, cancers were

---

[62]   U.S. Food & Drug Admin., FDA Updates and Press Announcements on NDMA in Metformin, https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-ndma-metformin (current as of Jan. 06, 2021).

[63]   U.S. Food & Drug Admin., *FDA Updates and Press Announcements on Angiotensin II Receptor Blocker (ARB) Recalls (Valsartan, Losartan, and Irbesartan)* (Feb. 28, 2019), https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-angiotensin-ii-receptor-blocker-arb-recalls-valsartan-losartan.

observed in the liver and lung.  In comparable rabbit studies, cancers were observed in the liver and lung.

344.    In other long-term animal studies in mice and rats utilizing different routes of exposures – inhalation, subcutaneous injection, and intraperitoneal (abdomen injection) – cancer was observed in the lung, liver, kidney, nasal cavity, and stomach.

345.    Prior to the withdrawal of ranitidine, it was considered a category B drug for birth defects, meaning it was considered safe to take during pregnancy.  Yet animals exposed to NDMA during pregnancy birthed offspring with elevated rates of cancer in the liver and kidneys.

346.    NDMA is a very small molecule.  That allows it to pass through the blood-brain and placental barrier.  This is particularly concerning as ranitidine has been marketed for pregnant women and young children for years.

347.    Exposure to high levels of NDMA has been linked to liver damage in humans.[64]

348.    Numerous *in vitro* studies confirm that NDMA is a mutagen – causing genetic mutations in human and animal cells.

349.    Overall, the animal data demonstrates that NDMA is carcinogenic in all animal species tested: mice; rats; Syrian golden, Chinese and European hamsters; guinea pigs; rabbits; ducks; mastomys; fish; newts; and frogs.

350.    The EPA classified NDMA as a probable human carcinogen "based on the induction of tumors at multiple sites in different mammal species exposed to NDMA by various routes."[65]

---

[64]    *See EPA Technical Fact Sheet*, *supra* n.31.

[65]    *Id.*

351.     Pursuant to EPA cancer guidelines, "tumors observed in animals are generally assumed to indicate that an agent may produce tumors in humans."[66]

352.     In addition to the overwhelming animal data linking NDMA to cancer, there are numerous human epidemiological studies exploring the effects of dietary exposure to various cancers.  These studies consistently show increased risks of various cancers.

353.     In a 1995 epidemiological case-control study looking at NDMA dietary exposure with 220 cases, researchers observed a statistically significant 700% increased risk of gastric cancer in persons exposed to more than 0.51 micrograms/day.[67]

354.     In a 1995 epidemiological case-control study looking at NDMA dietary exposure with 746 cases, researchers observed statistically significant elevated rates of gastric cancer in persons exposed to more than 0.191 micrograms/day.[68]

355.     In another 1995 epidemiological case-control study looking at, in part, the effects of dietary consumption on cancer, researchers observed a statistically significant elevated risk of developing aerodigestive cancer after being exposed to NDMA at 0.179 micrograms/day.[69]

356.     In a 1999 epidemiological cohort study looking at NDMA dietary exposure with 189 cases and a follow up of 24 years, researchers noted that "*N*-nitroso compounds are potent

---

[66]   *See* U.S. Envtl. Protection Agency, Risk Assessment Forum, *Guidelines for Carcinogen Risk Assessment* (Mar. 2005), https://www3.epa.gov/airtoxics/cancer_guidelines_final_3-25-05.pdf.

[67]   Pobel, *et al.*, *Nitrosamine, Nitrate and Nitrite in Relation to Gastric Cancer: A Case-control Study in Marseille, France*, 11 Eur. J. Epidemiol. 67-73 (1995).

[68]   La Vecchia, *et al.*, *Nitrosamine Intake & Gastric Cancer Risk*, 4 Eur. J. Cancer Prev. 469-74 (1995).

[69]   Rogers *et al.*, *Consumption of Nitrate, Nitrite, and Nitrosodimethylamine and the Risk of Upper Aerodigestive Tract Cance*r, 5 Cancer Epidemiol. Biomarkers Prev. 29-36 (1995).

carcinogens" and that dietary exposure to NDMA more than doubled the risk of developing colorectal cancer.[70]

357. In a 2000 epidemiological cohort study looking at occupational exposure of workers in the rubber industry, researchers observed significant increased risks for NDMA exposure for esophagus, oral cavity, and pharynx cancer.[71]

358. In a 2011 epidemiological cohort study looking at NDMA dietary exposure with 3,268 cases and a follow up of 11.4 years, researchers concluded that "[d]ietary NDMA intake was significantly associated with increased cancer risk in men and women" for all cancers, and that "NDMA was associated with increased risk of gastrointestinal cancers" including rectal cancers.[72]

359. In a 2014 epidemiological case-control study looking at NDMA dietary exposure with 1,760 cases, researchers found a statistically significant elevated association between NDMA exposure and rectal cancer.[73]

360. NDMA is also known to be genotoxic – meaning, it can cause DNA damage in human cells. Indeed, multiple studies demonstrate that NDMA is genotoxic both *in vivo* and *in vitro*. However, recent studies have shown that the ability of NDMA to cause mutations in cells

---

[70] Knekt, *et al.*, *Risk of Colorectal and Other Gastro-Intestinal Cancers after Exposure to Nitrate, Nitrite and N-nitroso Compounds: A Follow-Up Study*, 80 Int. J. Cancer 852-56 (1999).

[71] Straif, *et al.*, *Exposure to High Concentrations of Nitrosamines and Cancer Mortality Among a Cohort of Rubber Workers*, 57 Occup. Envtl. Med 180-87 (2000).

[72] Loh, *et al.*, *N-nitroso Compounds and Cancer Incidence: The European Prospective Investigation into Cancer and Nutrition (EPIC)–Norfolk Study*, 93 Am. J. Clinical Nutrition 1053-61 (2011).

[73] Zhu, *et al.*, *Dietary N-nitroso Compounds and Risk of Colorectal Cancer: A Case-control Study in Newfoundland and Labrador and Ontario, Canada*, 111 Brit. J. Nutrition 6, 1109-17 (2014).

is affected by the presence of enzymes typically found in living humans, suggesting that "humans may be especially sensitive to the carcinogenicity of NDMA."[74]

361.    In addition to studies demonstrating that NDMA directly causes cancer, research shows that exposure to NDMA: (a) can exacerbate existing but dormant (*i.e.* not malignant) tumor cells; (b) promote otherwise "initiated cancer cells" to develop into cancerous tumors; and (c) reduce the ability of the body to combat cancer as NDMA is immunosuppressive.  Thus, in addition to NDMA being a direct cause of cancer itself, NDMA can also be a contributing factor to a cancer injury caused by some other source.

### 3.    NDMA Is Discovered In Ranitidine-Containing Products, Leading To Market Withdrawal

362.    On September 9, 2019, pharmacy and testing laboratory Valisure LLC and ValisureRX LLC (collectively, "Valisure") filed a Citizen Petition calling for the recall of all Ranitidine-Containing Products due to detecting exceedingly high levels of NDMA when testing ranitidine pills using gas chromatography-mass spectrometry.  FDA and European regulators started reviewing the safety of ranitidine with specific focus on the presence of NDMA.[75]  This set off a cascade of recalls by Defendants.

363.    On September 13, 2019, the FDA's Director for Drug Evaluation and Research, Dr. Janet Woodcock, issued a statement warning that some ranitidine medicines may contain NDMA.[76]

---

[74]   World Health Org., *supra* n.41.

[75]   FDA Statement, Woodcock, *supra* n.39; Press Release, European Medicines Agency, *EMA to Review Ranitidine Medicines Following Detection of NDMA* (Sept. 13, 2019), https://www.ema.europa.eu/en/news/ema-review-ranitidine-medicines-following-detection-ndma.

[76]   FDA Statement, Woodcock, *supra* n.39.

364.    On September 24, 2019, Defendant Sandoz voluntarily recalled all of its Ranitidine-Containing Products due to concerns of a "nitrosamine impurity, N-nitrosodimethylamine (NDMA), which was found in the recalled medicine."[77]

365.    On September 26, 2019, Defendants Apotex, Walgreens, Walmart, and Rite Aid voluntarily recalled all ranitidine products and removed them from shelves.[78]  Apotex issued a statement, noting that "Apotex has learned from the U.S. Food and Drug Administration and other Global regulators that some ranitidine medicines including brand and generic formulations of ranitidine regardless of the manufacturer, contain a nitrosamine impurity called N-nitrosodimethylamine (NDMA)."[79]

366.    On September 28, 2019, Defendant CVS stated that it would stop selling Zantac and its CVS Store-Brand ranitidine out of concern that it might contain a carcinogen.

367.    On October 2, 2019, the FDA ordered manufacturers of ranitidine to test their products and recommended using a liquid chromatography with high resolution mass spectrometer ("LC-HRMS") testing protocol, which "does not use elevated temperatures."[80]

---

[77]    FDA News Release, U.S. Food & Drug Admin., *FDA Announces Voluntary Recall of Sandoz Ranitidine Capsules Following Detection of an Impurity* (Sept. 24, 2019), https://www.fda.gov/news-events/press-announcements/fda-announces-voluntary-recall-sandoz-ranitidine-capsules-following-detection-impurity.

[78]    U.S. Food & Drug Admin., *FDA Updates and Press Announcements on NDMA in Zantac (ranitidine)* (Sept. 26, 2019), https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-ndma-zantac-ranitidine.

[79]    Company Announcement, U.S. Food & Drug Admin., *Apotex Corp. Issues Voluntary Nationwide Recall of Ranitidine Tablets 75mg and 150mg (All Pack Sizes and Formats) Due to the Potential for Detection of an Amount of Unexpected Impurity, N-nitrosodimethylamine (NDMA) Impurity in the Product* (Sept. 25, 2019), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/apotex-corp-issues-voluntary-nationwide-recall-ranitidine-tablets-75mg-and-150mg-(all-pack-sizes-and-formats).

[80]    U.S. Food & Drug Admin., *FDA Updates and Press Announcements on NDMA in Zantac (ranitidine)* (Oct. 2, 2019), https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-ndma-zantac-ranitidine.

368.    On October 8, 2019, Defendant GSK voluntarily recalled all Ranitidine-Containing Products internationally.[81]   As part of the recall, GSK publicly acknowledged that unacceptable levels of NDMA were discovered in Zantac and noted that "GSK is continuing with investigations into the potential source of the NDMA."[82]

369.    On October 18 and 23, 2019, Defendants Sanofi and Dr. Reddy's voluntarily recalled all of their Ranitidine-Containing Products.[83]

370.    On October 28, 2019, Defendant Perrigo voluntarily recalled all its Ranitidine-Containing Products .[84]

371.    In its recall notice, Perrigo stated, "[a]fter regulatory bodies announced that ranitidine may potentially contain NDMA, Perrigo promptly began testing of its externally sourced ranitidine API (active pharmaceutical ingredient) and ranitidine-based products.  On October 8, 2019, Perrigo halted shipments of the product based upon preliminary results.  Based on the totality of data gathered to date, Perrigo has made the decision to conduct this voluntary recall."[85]

---

[81]    Press Release, Gov. UK, *Zantac – MHRA Drug Alert Issued as GlaxoSmithKline Recalls All Unexpired Stock* (Oct. 8, 2019), https://www.gov.uk/government/news/zantac-mhra-drug-alert-issued-as-glaxosmithkline-recalls-all-unexpired-stock.

[82]    Justin George Varghese, *GSK Recalls Popular Heartburn Drug Zantac Globally After Cancer Scare*, Reuters (Oct. 8, 2019), https://www.reuters.com/article/us-gsk-heartburn-zantac/gsk-recalls-popular-heartburn-drug-zantac-globally-after-cancer-scare-idUSKBN1WN1SL.

[83]    U.S. Food & Drug Admin., *FDA Updates and Press Announcements on NDMA in Zantac (ranitidine)* (Oct. 23, 2019), https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-ndma-zantac-ranitidine.

[84]    *Id.*

[85]    Company Announcement, U.S. Food & Drug Admin., *Perrigo Company plc Issues Voluntary Worldwide Recall of Ranitidine Due to Possible Presence of Impurity, N-nitrosodimethylamine (NDMA) Impurity in the Product* (Oct. 23, 2019), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/perrigo-company-plc-issues-voluntary-worldwide-recall-ranitidine-due-possible-presence-impurity-n.

372.    On November 1, 2019, the FDA announced the results of recent testing, finding unacceptable levels of NDMA in Ranitidine-Containing Products , and requested that drug makers begin to voluntarily recall their Ranitidine-Containing Products if the FDA or manufacturers discovered NDMA levels above the acceptable limits.[86]

373.    On December 4, 2019, the FDA issued a statement notifying consumers who wished to continue taking ranitidine to consider limiting their intake of nitrite-containing foods, *e.g.*, processed meats and preservatives like sodium nitrite.[87] This advice ***mirrored*** an admonition issued by Italian scientists in 1981 after finding that ranitidine reacted with nitrites *in vitro* to form toxic and mutagenic effects in bacteria.  The prudent advice of Dr. de Flora published in October 1981 in *The Lancet* was to "avoid nitrosation as far as possible by, for example, suggesting a diet low in nitrates and nitrites, by asking patients not to take these at times close to (or with) meals or by giving inhibitors of nitrosation such as ascorbic acid."[88]

374.    If GSK had only heeded Dr. de Flora's advice in 1981, millions of people might have avoided exposure to NDMA formed as a result of ranitidine's interaction with the human digestive system.

375.    Between November 1, 2019 and February 27, 2020, Defendants Amneal and Glenmark recalled their products from the market, citing NDMA concerns.[89]

---

[86]   U.S. Food & Drug Admin., Laboratory Tests | Ranitidine, https://www.fda.gov/drugs/drug-safety-and-availability/laboratory-tests-ranitidine (current as of Nov. 1, 2019).

[87]   U.S. Food & Drug Admin., *FDA Updates and Press Announcements on NDMA in Zantac (ranitidine)* (Dec. 4, 2019), https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-ndma-zantac-ranitidine.

[88]   Silvio de Flora, *Cimetidine, Ranitidine and Their Mutagenic Nitroso Derivatives*, The Lancet, Oct. 31, 1981, at 993-94.

[89]   *See generally* U.S. Food & Drug Admin., FDA Updates and Press Announcements on NDMA in Zantac (ranitidine), https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-ndma-zantac-ranitidine (current as of Apr. 16, 2020).

376.    On January 2, 2020, research laboratory, Emery Pharma, submitted a Citizen Petition to the FDA, showing that the ranitidine molecule is heat-liable and under certain temperatures progressively accumulates NDMA.

377.    Emery's Citizen Petition outlined its substantial concern that ranitidine is a time- and temperature-sensitive pharmaceutical product that develops NDMA when exposed to heat, a common occurrence during shipping, handling, and storage.  Emery requested that the FDA issue a directive to manufacturers to clearly label ranitidine with a warning that "by-products that are probable carcinogens can be generated if exposed to heat."  In addition to warning about this condition, Emery requested agency directives to manufacturers and distributors to ship ranitidine products in temperature-controlled vehicles.[90]

378.    In response,[91] on April 1, 2020, the FDA recounted that a recall is an "effective methods[sic] of removing or correcting defective FDA-regulated products . . . particularly when those products present a danger to health."[92]  The FDA sought the voluntary consent of manufacturers to accept the recall "to protect the public health from products that present a risk of injury."[93]  The FDA found that the recall of all Ranitidine-Containing Products and a public warning of the recall was necessary because the "product being recalled presents a serious health

---

[90]    Emery Pharma FDA Citizen Petition (Jan. 2, 2020) https://emerypharma.com/news/emery-pharma-ranitidine-fda-citizen-petition/.

[91]    Letter of Janet Woodcock, U.S. Food & Drug Admin., Docket No. FDA-2020-P-0042 (Apr. 1, 2020), https://emerypharma.com/wp-content/uploads/2020/04/FDA-2020-P-0042-CP-Response-4-1-2020.pdf.

[92]    *Id.* at 5 (citing 21 CFR 7.40(a)).

[93]    *Id.*

risk."[94]  The FDA therefore sent Information Requests to all applicants and pending applicants of Ranitidine-Containing Products "requesting a market withdrawal."[95]

379.    The FDA found its stability testing raised concerns that NDMA levels in some Ranitidine-Containing Products stored at room temperature can increase with time to unacceptable levels.  In the same vein, FDA testing revealed that higher NDMA levels were found as the products approached their expiration dates.  The FDA's testing eroded the agency's confidence that any Ranitidine-Containing Product would remain stable through its labeled expiration date. Consequently, the FDA requested a market withdrawal of all ranitidine products.  The FDA also announced to the public that the Agency's laboratory tests indicate that temperature and time contribute to an increase in NDMA levels in some ranitidine products.  The FDA's decision to withdraw the drug rendered moot Emery's request for temperature-controlled shipping conditions.

380.    The FDA's reaction was consistent with comparable regulatory action throughout the world.  Before the FDA acted, over 43 different countries and jurisdictions restricted or banned Ranitidine-Containing Products.[96]

381.    The European Medicines Agency ("EMA"), the European Union's equivalent to the FDA, through an Article 31 Referral, determined the sale of all Ranitidine-Containing Products should be suspended on September 19, 2019.  On April 30, 2020, the Human Medicines Committee of the EMA "has recommended the suspension of all ranitidine medicines in the EU due to the presence of low levels of an impurity called N-nitrosodimethylamine (NDMA)."   The EMA

---

[94]   *Id.* at 7.

[95]   *Id.* at 10 n.43.

[96]   Margaret Newkirk & Susan Berfield, *FDA Recalls Are Always Voluntary and Sometimes Haphazard-and The Agency Doesn't Want More Authority to Protect Consumers*, Bloomberg Businessweek (Dec. 3, 2019), https://www.bloomberg.com/graphics/2019-voluntary-drug-recalls-zantac/.

recognizes NDMA as a probable human carcinogen and issued a "precautionary suspension of these medicines in the EU" because "NDMA has been found in several ranitidine medicines above levels considered acceptable, and there are unresolved questions about the source of the impurities."[97]

382.    On September 17, 2020, after a ranitidine manufacturer requested that the EMA re-examine its decision and permit ranitidine to be marketed again in the EU, the EMA confirmed its prior recommendation to suspend all ranitidine medicines in the EU due to the presence of NDMA, noting that it is a probable human carcinogen and that there is evidence that NDMA forms from the degradation of ranitidine itself with increasing levels seen over shelf life.[98]

### 4.    How Ranitidine Transforms Into NDMA

383.    The ranitidine molecule itself contains the constituent molecules to form NDMA. *See* Figure 1.



Figure 1 – Diagram of Ranitidine & NDMA Molecules

---

[97]    Eur. Med. Agency, *Suspension of Ranitidine Medicines in the EU* (Apr. 30, 2020), https://www.ema.europa.eu/en/documents/referral/ranitidine-article-31-referral-suspension-ranitidine-medicines-eu_en.pdf.

[98]    Eur. Med. Agency, *EMA Confirms Recommendation to Suspend All Ranitidine Medicines in the EU* (Nov. 24, 2020), https://www.ema.europa.eu/en/documents/referral/ranitidine-article-31-referral-ema-confirms-recommendation-suspend-all-ranitidine-medicines-eu_en.pdf.

384.   The degradation occurs independently in two parts of the ranitidine molecule, with the products of the degradation combining to produce NDMA.

385.   The formation of NDMA by the reaction of DMA and a nitroso source (such as a nitrite) is well characterized in the scientific literature and has been identified as a concern for contamination of the U.S. water supply.[99]  Indeed, in 2003, alarming levels of NDMA in drinking water processed by wastewater-treatment plants were specifically linked to the presence of ranitidine.[100]

386.   The high levels of NDMA observed in Ranitidine-Containing Products are a function of various factors.  The ranitidine molecule internally degrades to form NDMA.  The degradation of ranitidine can increase over time under normal storage conditions, but more so with exposure to heat and/or humidity.  Once in the body, ranitidine continues to degrade and can yield increasing levels of NDMA in the human digestive system, and when it interacts with nitrogenous products.

### a. Early Understandings as to Formation of NDMA in the Environment of the Human Stomach

387.   When the ranitidine molecule is exposed to the acidic environment of the stomach, particularly when accompanied by nitrites (a chemical commonly found in heartburn-inducing foods), the Nitroso molecule (0=N) and the DMA molecule ($H_3C$-N-$CH_3$) break off and reform as NDMA.

388.   In 1981, Dr. Silvio de Flora, an Italian researcher from the University of Genoa, published the results of experiments he conducted on ranitidine in the well-known journal, *The*

---

[99]   Ogawa *et al*., *Purification and Properties of a New Enzyme, NG, NG-dimethylarginine Dimethylaminohydrolase, from Rat Kidney*, 264 J. Bio. Chem. 17, 10205-209 (1989).

[100]   Mitch *et al*., *N-Nitrosodimethylamine (NDMA) as a Drinking Water Contaminant: A Review*, 20 Env. Eng. Sci. 5, 389-404 (2003).

*Lancet*.  When ranitidine was exposed to human gastric fluid in combination with nitrites, his experiment showed "toxic and mutagenic effects."[101]  Dr. de Flora hypothesized that these mutagenic effects could have been caused by the "formation of more than one nitroso derivative [which includes NDMA] under our experimental conditions."  *Id*.  Dr. de Flora cautioned that, in the context of ranitidine ingestion, "it would seem prudent to … suggest[] a diet low in nitrates and nitrites, by asking patients not to take these at times close to (or with) meals."[102] *Id*.

389.    GSK knew of Dr. de Flora's publication because, two weeks later, GSK responded in *The Lancet*,[103] claiming that the levels of nitrite needed to induce the production of nitroso derivatives (*i.e.*, NDMA) were not likely to be experienced by people in the real world.[104]

---

[101]  De Flora, *supra* n.88.

[102]  This admonition came two years before the FDA approved Zantac in 1983.  Notwithstanding, in 1998 GSK applied for and obtained an indication for OTC Zantac "[f]or the prevention of meal-induced heartburn at a dose of 75 mg taken 30 to 60 minutes prior to a meal."  *See* Ctr. for Drug Eval. & Research, *Approval Package* (June 8, 1998), https://www.accessdata.fda.gov/drugsatfda_docs/nda/98/20520s1_Zantac.pdf.  So GSK specifically invited patients to take Zantac shortly before eating heartburn-inducing food.

[103]  R. T., Brittain *et al*., *Safety of Ranitidine*, *The Lancet* 1119 (Nov. 14, 1981).

[104]  This response reflects GSK's reputation for "adopting the most combative, scorched-earth positions in defense of its brands." Jim Edwards, *GSK's Alleged Coverup of Bad Avandia Data: A Snapshot of Its Poisonous Corporate Culture*, Moneywatch (July 13, 2010) https://www.cbsnews.com/news/gsks-alleged-coverup-of-bad-avandia-data-a-snapshot-of-its-poisonous-corporate-culture/.  GSK has no compunction against distorting objective science to maintain lucrative monopoly franchises.  Its egregious conduct surrounding Zantac is no isolated incident.  GSK endangered patient health while reaping billions of dollars in profits from Paxil, Wellbutrin, and Avandia.  It was involved in covering up scientific data, offering illegal kickbacks to prescribing physicians, intimidating witnesses, and defrauding Medicare to profit from these medicines.  After Congressional hearings into this outrageous misbehavior, GSK's actions resulted in a criminal investigation and the then-largest guilty plea by a pharmaceutical company for fraud and failure to report safety data in the country's history. *Staff Report on GlaxoSmithKline and the Diabetes Drug Avandia*, Senate Comm. on Finance, 111th Cong.2d Sess. 1 (Comm. Print Jan. 2010); U.S. Dep't of Justice, *GlaxoSmithKline to Please Guilty and Pay $3 Billion to Resolve Fraud Allegations and Failure to Report Safety Data* (July 2, 2012), https://www.justice.gov/opa/pr/glaxosmithkline-plead-guilty-and-pay-3-billion-resolve-fraud-allegations-and-failure-report. There is currently an open investigation of GSK and Sanofi being conducted by the Department of Justice relating to the failure to disclose to the federal government

390.    GSK attended an FDA Advisory Committee in May 1982 where its representative testified and presented evidence relating to the safety of Zantac, including the potential for ranitidine to form nitrosamines.  However, GSK failed to disclose its new evidence relating to ranitidine and the formation of a nitrosamine, specifically the formation of NDMA.[105]

391.    One month later, in June 1982, GSK submitted its draft Summary Basis of Approval and labeling for Zantac.  Again, GSK failed to submit or otherwise disclose its new evidence relating to ranitidine and the formation of NDMA.[106]

392.    In its submission to the FDA, GSK discussed its findings from internal studies performed in 1980 that ranitidine formed a different nitrosamine, n-nitroso-nitrolic acid, a potent mutagen, but explained that these results had no "practical clinical significance"[107]:

> Although N-nitroso-nitrolic acid was a potent mutagen, it is not likely to be formed in the stomach of a patient ingesting ranitidine, as an unrealistically large amount of nitrite needs to be present to form and maintain the nitrosamine.  For this reason, and also because ranitidine was not carcinogenic in life-span studies in rodents, the in vitro nitrosation of ranitidine to a mutagenic nitrosamine does not seem to have practical clinical significance.

393.    In 1980 – before Zantac was approved by the FDA – GSK conducted another study to examine, among other things, how long-term use of ranitidine could affect the levels of nitrite

---

information about the potential presence of NDMA in Zantac. https://www.sanofi.com/-/media/Project/One-Sanofi-Web/Websites/Global/Sanofi-COM/Home/en/investors/docs/2020_07_29_HY_financial_report_EN.pdf.

[105]  GSKZAN0000050413.

[106]  GSKZNDAA0000071900.

[107]  Excerpted from the Summary Basis of Approval submitted to the FDA to obtain approval of Zantac in the early 1980s.  This document was obtained through a Freedom of Information Act request to the FDA.

in the human stomach.[108]  Remarkably, GSK admitted that ranitidine use caused the proliferation of bacteria in the human stomach that are known to convert nitrates to nitrites, which leads to elevated levels of nitrite in the stomach environment.  GSK acknowledged this could increase the risk of forming nitrosamines and, in turn, cancer, but then dismissed this risk because people were allegedly only expected to use Ranitidine-Containing Products for a short-term period:

> The importance of this finding is not clear.  High levels of nitrite could react with certain organic compounds to form nitrosamines, which are known carcinogens.  To date, however, neither ranitidine nor cimetidine have been carcinogenic in rodents, so the level of human risk cannot be estimated from animal studies.  Ranitidine is recommended only for short-term use and carcinogenic risk, if any, should thus be minimized.

394.    GSK knew – and indeed specifically admitted – that ranitidine could react with nitrite in the human stomach to form nitrosamines and, at the same time, that long-term use of ranitidine could lead to elevated levels of nitrite in the human stomach.  GSK also knew but did not disclose that it had new evidence showing that NDMA was generated by ranitidine under certain conditions.

395.    In response to Dr. de Flora's findings, in 1982, GSK conducted a clinical study specifically investigating gastric contents in human patients.[109]  The study, in part, specifically measured the levels of N-Nitroso compounds in human gastric fluid.  GSK indicated that there were no elevated levels, and even published the results of this study five years later, in 1987.  The study, however, was flawed.  It did not use gold-standard mass spectrometry to test for NDMA, but instead, used a process that could not measure N-nitrosamines efficiently.  And worse, in the

---

[108]  The results of this study are discussed in the Summary Basis of Approval, obtained from the FDA.

[109]  Thomas *et al.*, *Effects of One Year's Treatment with Ranitidine and of Truncal Vagotomy on Gastric Contents*, 6 Gut. Vol. 28, 726-38 (1987).

testing it did do, GSK refused to test gastric samples that contained ranitidine in them out of concern that samples with ranitidine would contain "high concentrations of N-nitroso compounds being recorded."[110]   In other words, GSK intentionally engineered the study to exclude the very samples most likely to contain a dangerous carcinogen.

396.     Given the above information that was disclosed relating to the nitrosation potential and formation of nitrosamines, it is shocking that GSK conducted an internal study to assess the formation of NDMA and found that ranitidine, when exposed to sodium nitrite, formed hundreds of thousands of nanograms of NDMA.  The GSK study was never published or disclosed to the public.

397.     In 1983, the same year GSK started marketing Zantac in the United States, seven researchers from the University of Genoa published a study discussing ranitidine and its genotoxic effects (ability to harm DNA).[111]   The researchers concluded "it appears that reaction of ranitidine with excess sodium nitrite under acid conditions gives rise to a nitroso-derivative (or derivatives) [like NDMA] capable of inducing DNA damage in mammalian cells."  *Id.*

398.     Then, again in 1983, Dr. de Flora, along with four other researchers, published their complete findings.[112]   The results "confirm our preliminary findings on the formation of genotoxic derivatives from nitrite and ranitidine."  Again, the authors noted that, "the widespread clinical use [of ranitidine] and the possibility of a long-term maintenance therapy suggest the prudent adoption of some simple measures, such as a diet low in nitrates and nitrites or the prescription of these anti-ulcer drugs at a suitable interval from meals."  This admonition carries weight considering GSK's

---

[110]  *Id.* at 730.

[111]  Maura *et al.*, *DNA Damage Induced by Nitrosated Ranitidine in Cultured Mammalian Cells*, 18 Tox. Lttrs. 97-102 (1983).

[112]  De Flora *et al.*, *Genotoxicity of Nitrosated Ranitidine*, 4 Carcinogenesis 3, 255-60 (1983).

studies indicate that long-term ranitidine consumption, itself, leads to elevated levels of nitrites in the human gut.

399.   In addition, as multiple Defendants have noted in internal documents and recent submissions to regulatory authorities, a mechanism for ranitidine to form NDMA ███████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████.[113] Therefore, this potential mechanism was disregarded.

400.   ████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████ ████[114]

401.   However, in 1985, GSK ██████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████.[115] ██████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[113] SANOFI_ZAN_MDL-0000033849-SANOFI_ZAN_MDL_0000033891,                    at SANOFI_ZAN_MDL_0000033873.

[114] GSKZNDAA0000072103-GSKZNDAA0000072128.

[115] GSKZAN0000369313, (████████████████████████████████████████ ██████████████████████████████████████████████).



[redacted].[116]

402.    The high instability of the ranitidine molecule was elucidated in scientific studies investigating ranitidine as a source of NDMA in drinking water and specific mechanisms for the breakdown of ranitidine were proposed.[117]  These studies underscore the instability of the NDMA group on the ranitidine molecule and its ability to form NDMA in the environment of water-treatment plants that supply many U.S. cities with water.

403.    In 2002, researchers conducted a controlled study to evaluate the concentration of nitrosamines, including NDMA, in the gastric fluid and urine in children with gastritis before and after four to six weeks of treatment with ranitidine.[118]  The study reported statistically significant increases in the nitrosamine concentration, including NDMA, in the gastric juice and urine in 93.3% of children after taking ranitidine for only four weeks.   The researchers noted that

---

[116]  GSKZNDAA0000636549.

[117]  Le Roux *et al.*, *NDMA Formation by Chloramination of Ranitidine: Kinetics and Mechanism*, 46 Envtl. Sci. Tech. 20, 11095-103 (2012).

[118]  Krawczynski, *et al. Nitrosamines in Children with Chronic Gastritis*, Journal of the Polish Pediatric Society (GSKZAN0000235261).

nitrosamines belong to the most potent known carcinogens and no organisms have been found that would be resistant to the harmful effects, that neoplastic lesions induced by nitroso compounds may develop in any organ, and that nitrosamines induced a wide spectrum of tumors in studies using animal models.[119]   In addition, the authors noted specifically that NDMA induced similar symptoms of acute poisoning in humans and animals.  They advised that prophylactic measures to avoid nitrosamine formation include a diet high in fruits and inclusion of ascorbic acid as well as limiting intake of processed meat.   The conclusion was that ranitidine should only be recommended in children after careful consideration.[120]

404.   Despite the direct evidence that children taking ranitidine were being exposed to dangerously high levels of carcinogenic nitrosamines including NDMA, which each Defendant knew or should have known, Defendants recklessly continued to market and promote Zantac and/or ranitidine as safe and effective for children.

405.   Similarly, in 2016, researchers at Stanford University conducted an experiment on healthy adult volunteers.[121]  They measured the NDMA in urine of healthy individuals over the course of 24 hours, administered one dose of ranitidine, and then measured the NDMA in the urine of the same individuals for another 24 hours.  The study reported that on average, the level of NDMA increased by 400 times, to approximately 47,000 ng.  The only change during that 24-hour period was the consumption of ranitidine.   In the study, the scientists further explained that previous studies have indicated a high metabolic conversion rate of NDMA, meaning it will be

---

[119] *Id*.

[120] *Id*.

[121] Zeng *et al*., *Oral intake of Ranitidine Increases Urinary Excretion of N-nitrosodimethylamine*, 37 Carcinogenesis 625-34 (2016).

processed by the human body.  This study showed that ranitidine generates NDMA in the human body.

406.    Valisure is an online pharmacy that also runs an analytical laboratory that is ISO 17025 accredited by the International Organization for Standardization ("ISO") – an accreditation recognizing the laboratories technical competence for regulatory purposes.  Valisure's mission is to help ensure the safety, quality, and consistency of medications and supplements in the market. In response to rising concerns about counterfeit medications, generics, and overseas manufacturing, Valisure developed proprietary analytical technologies that it uses in addition to FDA standard assays to test every batch of every medication it dispenses.  Valisure tested ranitidine first by subjecting it to higher temperature and also tested it in conditions simulating the stomach.

407.    In its September 9, 2019 Citizen's Petition to the FDA,[122] Valisure disclosed as part of its testing of Ranitidine-Containing Products that in every lot tested there were exceedingly high levels of NDMA.  Valisure's ISO 17025 accredited laboratory used FDA recommended GC/MS headspace analysis method FY19-005-DPA for the determination of NDMA levels.  As per the FDA protocol, this method was validated to a lower limit of detection of 25 ng.[123]  The results of Valisure's testing show levels of NDMA well above 2 million ng per 150 mg Zantac tablet, shown below:

| Table 1 – Ranitidine Samples Tested by Valisure Laboratory Using GC/MS Protocol | | |
|---|---|---|
| **150 mg Tablets or equivalent** | **Lot #** | **NDMA per tablet (ng)** |
| Reference Powder | 125619 | 2,472,531 |

---

[122] Valisure, *Citizen Petition on Ranitidine* (Sept. 9, 2019), https://www.valisure.com/wp-content/uploads/Valisure-Ranitidine-FDA-Citizen-Petition-v4.12.pdf.

[123] U.S. Food & Drug Admin., *Combined N-Nitrosodimethlyamine (NDMA) and N-Nitrosodiethylamine (NDEA) Impurity Assay, FY19-005-DPA-S* (Jan. 28, 2019).

| Zantac, Brand OTC | 18M498M | 2,511,469 |
|---|---|---|
| Zantac (mint), Brand OTC | 18H546 | 2,834,798 |
| Wal-Zan, Walgreens | 79L800819A | 2,444,046 |
| Wal-Zan (mint), Walgreens | 8ME2640 | 2,635,006 |
| Ranitidine, CVS | 9BE2773 | 2,520,311 |
| Zantac (mint), CVS | 9AE2864 | 3,267,968 |
| Ranitidine, Equate | 9BE2772 | 2,479,872 |
| Ranitidine (mint), Equate | 8ME2642 | 2,805,259 |
| Ranitidine, Strides | 77024060A | 2,951,649 |

408.    This testing by GC-MS demonstrates the instability of the ranitidine molecule and its propensity to break down under higher temperatures.

409.    Valisure was concerned that the extremely high levels of NDMA observed in its testing were a product of the modest oven heating parameter of 130 °C in the FDA recommended GC/MS protocol.  So Valisure developed a low temperature GC/MS method that could still detect NDMA but would only subject samples to 37 °C, the average temperature of the human body. This method was validated to a lower limit of detection of 100 ng.

410.    Valisure tested ranitidine tablets by themselves and in conditions simulating the human stomach.  Industry standard "Simulated Gastric Fluid" ("SGF": 50 mM potassium chloride, 85 mM hydrochloric acid adjusted to pH 1.2 with 1.25 g pepsin per liter) and "Simulated Intestinal Fluid" ("SIF": 50 mM potassium chloride, 50 mM potassium phosphate monobasic adjusted to pH 6.8 with hydrochloric acid and sodium hydroxide) were used alone and in combination with various concentrations of nitrite, which is commonly ingested in foods like processed meats and is elevated in the stomach by antacid drugs.  The inclusion of nitrite in gastric fluid testing is commonplace and helps simulate the environment of a human stomach.

411.    Indeed, Ranitidine-Containing Products were specifically advertised to be used when consuming foods containing high levels of nitrates, such as tacos or pizza.[124]

412.    The results of Valisure's tests on ranitidine tablets in biologically relevant conditions demonstrate significant NDMA formation under simulated gastric conditions with nitrite present shown below:

| Table 2 – Valisure Biologically Relevant Tests for NDMA Formation | | |
|---|---|---|
| **Ranitidine Tablet Studies** | **NDMA (ng/mL)** | **NDMA per tablet (ng)** |
| Tablet without Solvent | Not Detected | Not Detected |
| Tablet | Not Detected | Not Detected |
| Simulated Gastric Fluid | Not Detected | Not Detected |
| Simulated Intestinal Fluid | Not Detected | Not Detected |
| SGF with 10 mM Sodium Nitrite | Not Detected | Not Detected |
| SGF with 25 mM Sodium Nitrite | 236 | 23,600 |
| SGF with 50 mM Sodium Nitrite | 3,045 | 304,500 |

413.    Under biologically relevant conditions, when nitrites are present, high levels of NDMA are found in one dose of 150 mg ranitidine, ranging between 245 and 3,100 times above the FDA-allowable limit.  One would need to smoke over 500 cigarettes to achieve the same levels of NDMA found in one dose of 150 mg ranitidine at the 25 nanogram level (over 7,000 for the 50 nanogram level).

414.    Following the release of Valisure Citizen's Petition, the FDA conducted additional laboratory tests, which showed NDMA levels in all ranitidine samples it tested, including API and the finished drug, both tablets and syrup.  The FDA developed SGF and SIF models to use with

---

[124] *See, e.g.*, Zantac television commercial, *Family Taco Night*, https://www.ispot.tv/ad/dY7n/zantac-family-taco-night; Zantac television commercial, *Spicy*, https://youtu.be/jzS2kuB5_wg; Zantac television commercial, *Heartburn,* https://youtu.be/Z3QMwkSUlEg; Zantac television commercial, *Zantac Heartburn Challenge*, https://youtu.be/qvh9gyWqQns.

the LC-MS testing method to estimate the biological significance of *in vitro* findings. These models are intended to detect the formation of NDMA in systems that approximate the stomach and intestine.

415. When the scientific data is assessed overall, the literature demonstrates that the ingestion of ranitidine already containing NDMA combined with the presence of human-relevant levels of nitrite in the stomach – a substance that is commonly found in foods that induce heartburn and that is known to be elevated in people taking ranitidine for longer than a month – the ranitidine molecule transforms into more NDMA which would dramatically increase a person's risk of developing cancer.

### b.   Formation of NDMA in Other Organs of the Human Body

416. In addition to the gastric fluid mechanisms investigated in the scientific literature, Valisure identified a possible enzymatic mechanism for the liberation of ranitidine's DMA group via the human enzyme dimethylarginine dimethylaminohydrolase ("DDAH"), which can occur in other tissues and organs separate from the stomach.

417. Valisure explained that liberated DMA can lead to the formation of NDMA when exposed to nitrite present on the ranitidine molecule, nitrite freely circulating in the body, or other potential pathways, particularly in weak acidic conditions such as that in the kidney or bladder. The original scientific paper detailing the discovery of the DDAH enzyme in 1989 specifically comments on the propensity of DMA to form NDMA: "This report also provides a useful knowledge for an understanding of the endogenous source of dimethylamine as a precursor of a potent carcinogen, dimethylnitrosamine [NDMA]."[125]

---

[125] Ogawa, *et al.*, *supra* n.99.

418.    Valisure reported as illustrated in Figure 2, below, computational modelling demonstrates that ranitidine (shown in green) can readily bind to the DDAH-1 enzyme (shown as a cross-section in grey) in a manner similar to the natural substrate of DDAH-1 known as asymmetric dimethylarginine ("ADMA," shown in blue).



Figure 2 – Computational Modelling of Ranitidine Binding to DDAH-1 Enzyme

419.    Valisure reported that these results suggest that the enzyme DDAH-1 increases formation of NDMA in the human body when ranitidine is present; therefore, the expression of the DDAH-1 gene is useful for identifying organs most susceptible to this action.

420.    Figure 3 below, derived from the National Center for Biotechnology Information, illustrates the expression of the DDAH-1 gene in various tissues in the human body.



Figure 3 – Expression levels of DDAH-1 enzyme by Organ

421.     DDAH-1 is most strongly expressed in the kidneys but also broadly distributed throughout the body, such as in the brain, colon, liver, small intestine, stomach, bladder, and prostate.  Valisure noted that this offers both a general mechanism for NDMA formation in the human body from ranitidine and specifically raises concern for the effects of NDMA on numerous organs.

422.     The possible enzymatic reaction of ranitidine to DDAH-1, or other enzymes, suggests that high levels of NDMA can form throughout the human body.  Indeed, ranitidine metabolizes and circulates throughout the human body, crossing the placental and blood-brain barrier, within 1-2 hours.  When ranitidine interacts with the DDAH-1 enzyme in various organs throughout the body, it breaks down into NDMA.  This observation is validated by the Stanford study, discussed above.

### c.    Formation of NDMA by Exposure to Heat, Moisture, and/or Time

423.    The risk of creating NDMA by exposing ranitidine to heat has been well-known and documented.  Early studies, including the one conducted by GSK in the early 1980s, demonstrated that nitrosamines were formed when ranitidine was exposed to heat.  This point was underscored in the Valisure petition, which initially used a high-heat testing method.

424.    In response to Valisure, on October 2, 2019, the FDA recommended that researchers use the LC-HRMS protocol for detecting NDMA in ranitidine because the "testing method does not use elevated temperatures" and has been proven capable of detecting NDMA.

425.    On January 2, 2020, Emery, an FDA-certified pharmaceutical testing laboratory, conducted a series of tests on ranitidine.  The researchers exposed ranitidine to 70 ˚C for varying periods of time.  The results showed that increasing levels of NDMA formed based on exposure to heat.  As reported by Emery, the following diagram reveals how NDMA accumulates over time when exposed to 70 ˚C:



Figure 4 – Rate of Development of NDMA when Exposed to Heat

426.    The researchers cautioned:

NDMA accumulates in ranitidine-containing drug products on exposure to elevated temperatures, which would be routinely reached during shipment and during storage.    More importantly, these conditions occur post-lot release by the manufacturer.  Hence, while NDMA levels in ranitidine may be acceptable at the source, they may not be so when the drug is purchased and subsequently at the time of consumption by the consumer.[126]

427.    The results of this data demonstrate that in normal transport and storage, and especially when exposed to heat or humidity, the ranitidine molecule systematically breaks down into NDMA, accumulating over time in the finished product.  Considering Ranitidine-Containing Products have an approved shelf life of 36 months, the possibility of the drug accumulating dangerously high levels of NDMA prior to consumption is very real – a point underscored by the FDA's swift removal of the product from the market.

428.    In fact, the FDA acknowledged that testing revealed that NDMA levels in ranitidine products stored at room temperature can increase with time to unacceptable levels.[127]

429.    In 2019, the findings by Valisure unleashed an avalanche of regulatory authorities throughout the world demanding that the manufacturers of Zantac and/or ranitidine conduct testing of their products for the presence of NDMA as well as investigate the root cause as to how NDMA was being generated.  In April 2020, the FDA requested that manufacturers immediately remove all Ranitidine-Containing Products from the market.

430.    In the interim between the Valisure findings being released to the public and the FDA announcement requesting recall of all ranitidine products in April 2020, the manufacturers were investigating the root cause of NDMA in their products.

[126] Emery Pharma, *Emery Pharma Ranitidine: FDA Citizen Petition* (Jan. 2, 2020), https://emerypharma.com/news/emery-pharma-ranitidine-fda-citizen-petition/.

[127] Woodcock Letter, *supra* n.91.

431.    After undertaking an investigation, GSK concluded that "the presence of NDMA in ranitidine drug substance is due to a slow degradation reaction occurring primarily in the solid state.  The two constituent parts of NDMA, the nitroso group and the dimethylamino group, are both derived from internal degradation reactions which occur at slow rates with the ranitidine molecule."[128]  Unsurprisingly, GSK ███████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████[129]  In addition, GSK's testing revealed ███████████

████████████████████████████████████████████████████████████████████

████████████████████████████.[130]

432.    Similarly, Sanofi ██████████████████████████████████████  █████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████.[131]

433.    ███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████

---

[128]  GSKZAN0000052019-GSKZAN0000052127.

[129]  *Id*. at 2.

[130]  *Id*. at 12.

[131]  SANOFI_ZAN_MDL_0000151458.

[132]  SANOFI_ZAN_MDL_0000166517-527, at 11.

434.    Defendants could independently dictate the conditions under which API was transported to them.  The labeling requirements do not apply to transporting API, in part because the finished product and API are packaged differently and may degrade under different conditions.

435.    Based upon the documents produced by Defendants and based upon further information and belief, Defendants failed to ensure that their Ranitidine-Containing Products (in both API and finished dose form) were kept safely from excessive heat and humidity.[133]

### 5.    Evidence Directly Links Ranitidine Exposure to Cancer

436.    In addition to numerous epidemiology studies examining how NDMA causes cancer in humans, researchers have also specifically looked at ranitidine and found an association with cancer.

437.    One epidemiology study, published in 2004, showed that men taking either ranitidine or cimetidine (Tagamet) had increased risks of bladder cancer.[134]

438.    In another epidemiology study, published in 2008, specifically designed to look at breast cancer, ranitidine was shown to more than double the risk, an effect that was even more pronounced in those with specific gene mutations.[135]

---

[133] *See, e.g.*,  BOE_ZAN_MDL_0000203482 ████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████ DRLMDL0000087754 ████████████████
████████████████████████████████████████████
████████████ DRLMDL0000077957 ████████████████
████████████████████████████

[134] D. Michaud *et al*., *Peptic Ulcer Disease and the Risk of Bladder Cancer in a Prospective Study of Male Health Professionals*, 13 Cancer Epi. Biomarkers & Prevention 250-54 (Feb. 2004).

[135] Robert W. Mathes *et al*., *Relationship Between Histamine2-receptor Antagonist Medications and Risk of Invasive Breast Cancer*, 17 Cancer Epi. Biomarkers & Prevention 1, 67-72 (2008).

439.     Another epidemiological study, published in 2000, looking at various cancer risks and histamine $H_2$-receptor antagonists (or $H_2$ blockers), including ranitidine, the data showed that ranitidine consumption increased the risk of prostate, lung, esophageal, pancreatic, and kidney cancer.[136]   Of particular note, the study indicated that people under the age of 60 who took ranitidine were five times more likely to develop prostate cancer.  In addition, there was more than a doubling of the risk of pancreatic cancer with ranitidine use.

440.     A study published in 2018, demonstrated an increased risk of liver cancer associated with use of ranitidine in comparison with other $H_2$ blockers in the class.  The purpose of the study was to determine whether there was an increased risk of liver cancer associated with proton pump inhibitors, a different class of medications indicated for the treatment of GERD.  This finding is particularly notable as the authors adjusted for variables.[137]

441.     In 2018, a study found an increased risk in hepatocellular carcinoma associated with use of $H_2$ blockers.[138]   The authors were evaluating the risk of cancer in association with proton pump inhibitors and looked at $H_2$ blockers as a confounder.  The study only considered use of $H_2$ blockers within one year of cancer diagnosis and still found an increased odds ratio associated with use of $H_2$ blockers and hepatocellular carcinoma, a type of liver cancer.

---

[136] Laurel A Habel *et al*., *Cimetidine Use and Risk of Breast, Prostate, and Other Cancers*, 9 Pharmacoepidemiology & Drug Safety 149-55 (2000).

[137] Kim Tu Tran *et al*., *Proton Pump Inhibitor and Histamine-2 receptor Antagonist Use and Risk of Liver Cancer in Two Population-based Studies*, 48 Alimentary Pharmacology & Therapeutics 1, 55-64 (2018).

[138] Y-H J Shao *et al*., *Association Between Proton Pump Inhibitors and the Risk of Hepatocellular Carcinoma*, 48 Alimentary Pharmacology & Therapeutics 4, 460-68 (2018).

442.    A number of other studies have been published over the years showing an increased risk of various cancers associated with use of ranitidine and/or $H_2$ blockers.[139]  These cancers include breast, gastric, pancreatic, and stomach cancer.  Additional research reports that ranitidine use was associated with a significant increase in the risk of bladder, breast, colorectal/intestinal, esophageal, gastric, kidney, liver, lung, pancreatic, and prostate cancer.[140]

**B.    Defendants' Knowledge of the NDMA Risk**

443.    NDMA has been known to be a probable human carcinogen since the 1970s.[141]

444.    In 1980, GSK, the originator of the ranitidine molecule, studied how the long term use of ranitidine could affect and elevate the levels of nitrates in the human stomach thus increasing risk of forming nitrosamines and turn into cancer. *See supra* ¶¶392-93.

445.    As early as 1981, two years before Zantac entered the market, research showed elevated rates of NDMA, when properly tested.[142]  This was known to GSK and should have been known by each Defendant prior to their manufacturing, marketing, labeling, packaging, handling, distribution, and/or sale of ranitidine as the information was available in medical literature.

---

[139]  Mathes *et al.*, *supra* n.135; *see also* Jeong Soo Ahn *et al.*, *Acid Suppressive Drugs and Gastric Cancer: A Meta-analysis of Observational Studies*, 19 World J. Gastroenterology 16, 2560 (2013); Shih-Wei Lai *et al.*, *Use of Proton Pump Inhibitors Correlates with Increased Risk of Pancreatic Cancer: A Case-control Study in Taiwan*, 46 Kuwait Med J. 1, 44-48 (2014); Poulsen *et al.*, *Proton Pump Inhibitors and Risk of Gastric Cancer – A Population Based Cohort Study*, 100 Brit. J. Cancer 1503-07 (2009); E Wennerström, *Acid-suppressing Therapies and Subsite-specific Risk of Stomach Cancer*, 116 Brit. J. Cancer 9, 1234-38 (2017).

[140]  Richard H. Adamson & Bruce A. Chabne, *The Finding of N-Nitrosodimethylamine in Common Medicines,* The Oncologist, June 2020; 25(6): 460-62, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7288647/.

[141]  *See EPA Technical Fact Sheet*, *supra* n.31; Int'l Agency for Research on Cancer (IARC) *Summaries & Evaluations, N-NITROSODIMETHYLAMINE* (1978), http://www.inchem.org/documents/iarc/vol17/n-nitrosodimethylamine.html.

[142]  *See supra* ¶¶373, 388, 389, 395, 398 (discussing de Flora research).

446.    In 1981, GSK published a study focusing on the metabolites of ranitidine in urine using liquid chromatography.[143]  Many metabolites were listed, though there is no indication that the study looked for NDMA.

447.    Indeed, also in 1981, Dr. de Flora published a note discussing the results of his experiments showing that ranitidine was turning into mutagenic N-nitroso compounds, of which NDMA is one, in human gastric fluid when accompanied by nitrites—a substance commonly found in food and in the body.[144]  GSK was aware of this study because GSK specifically responded to the note and attempted to discredit it.  Defendants knew or should have known about this scientific exchange as it was published in a popular scientific journal.  Manufacturer Defendants were obligated to investigate this issue properly.  None did.

448.    In April 1982, GSK performed a study ████████████████████████████ ████████████████████████████  ███████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████

449.    By 1983, Dr. de Flora published complete findings as to formation of genotoxic derivatives from nitrate and ranitidine and expressed concerns as to long term use of ranitidine without precautionary measures.

---

[143]  Carey, *et al.*, *Determination of Ranitidine and Its Metabolites in Human Urine by Reversed-phase Ion-pair High-performance Liquid Chromatography*, 255 J. Chromatography B: Biomedical Sci. & Appl. 1, 161-68 (1981).

[144]  De Flora, *supra* n.88.

450. ███████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████.[145]

451.    In 1986, GSK extended the market and sale of ranitidine for maintenance therapy. *See* ¶286, *supra.*

452.    By 1987, after numerous studies raised concerns over ranitidine and cancerous nitroso compounds, GSK published a clinical study specifically investigating gastric contents in human patients and N-nitroso compounds.[146]  That study specifically indicated that there were no elevated levels of N-nitroso compounds (of which NDMA is one).  But the study was flawed.  It used an analytical system called a "nitrogen oxide assay" for the determination of N-nitrosamines, which was developed for analyzing food and is a detection method that indirectly and non-specifically measures N-nitrosamines.  Not only is that approach not accurate, but GSK also removed all gastric samples that contained ranitidine out of concern that samples with ranitidine would contain "high concentrations of N-nitroso compounds being recorded."  Without the chemical being present in any sample, any degradation into NDMA could not, by design, be observed.  The inadequacy of that test was knowable in light of its scientific publication in 1987.

453.    All of this was known or available to Defendants before 2000 when Pfizer acquired Warner-Lambert and took over control of the NDA for Zantac in the United States.

454.    All Defendants either knew or should have known about the inadequacy of GSK's studies, the impact and cautionary instructions of independent studies, and should have, through

---

[145] GSKZAN0000369313, (████████████████████████████████████████████
████████████████████████████████████).

[146] Thomas *et al.*, *supra* n.109.

due diligence and/or their own independent testing, investigated the issue properly and/or took action to protect consumers from the NDMA risks in their products.  None did.

### C.   The Federal Regulatory Landscape

455.   Plaintiffs reference federal law herein not in any attempt to enforce it, but only to demonstrate that their state-law claims do not impose any additional obligations on Defendants, beyond what is already required of them under federal law.

### 1.   Generic Drugs

456.   According to the FDA, "[a] generic drug is a medication created to be the same as an already marketed brand-name drug in dosage form, safety, strength, route of administration, quality, performance characteristics, and intended use.  These similarities help to demonstrate bioequivalence, which means that a generic medicine works in the same way and provides the same clinical benefit as its brand-name version.  In other words, you can take a generic medicine as an equal substitute for its brand-name counterpart."[147]

457.   While brand medications undergo a more rigorous review before being approved, generic manufacturers are permitted to submit an ANDA.  As the first "A" in ANDA denotes, the generic approval process is "abbreviated" to serve Congress's intent to expeditiously offer consumers lower-cost, previously approved medicines.  But the abbreviated NDA process does not absolve generic manufacturers of their obligations to ensure that their drugs are safe and effective.  To obtain FDA approval, an ANDA applicant must demonstrate that the generic medicine is the same as the brand version in the following ways:

---

[147] U.S. Food & Drug Admin., Generic Drugs: Questions & Answers U.S. Food and Drug Administration,   https://www.fda.gov/drugs/questions-answers/generic-drugs-questions-answers (current as of June 1, 2018)

     (a)     The active ingredient in the generic medicine is the same as in the brand drug/innovator drug.

     (b)     The generic medicine has the same strength, use indications, form (such as a tablet or an injectable), and route of administration (such as oral or topical).

     (c)     The inactive ingredients of the generic medicine are acceptable.

     (d)     The generic medicine is manufactured under the same strict standards as the brand medicine.

     (e)     The container in which the medicine will be shipped and sold is appropriate.[148]

458.    Because the brand manufacturer previously demonstrated clinical safety and efficacy when the NDA was approved, an ANDA applicant does not need to do so if it can show bioequivalence to the branded, reference listed drug ("RLD").  Bioequivalence is the "absence of a significant difference" in the pharmacokinetic profiles of two pharmaceutical products.[149]

459.    Though an ANDA applicant's drug must be bioequivalent to the RLD, no two manufacturers' drugs will be exactly the same.  For that reason, generic manufacturers are responsible for conducting their ***own, independent*** stability testing, which must be "designed to assess the stability characteristics of drug products."[150]

460.    Because a generic manufacturer's drug must be bioequivalent to the RLD, a compliant generic label should be "the same as the labeling of the reference listed drug" in many respects.[151]  But because a generic drug may not be exactly the same as the RLD, the generic label "may include differences in expiration date, formulation, bioavailability, or pharmacokinetics,

---

[148] U.S. Food & Drug Admin., Generic Drug Facts, https://www.fda.gov/drugs/generic-drugs/generic-drug-facts (current as of June 1, 2018).

[149] 21 C.F.R. §§320.1(e) & 314.3(b).

[150] *Id.* §211.166(a).

[151] *Id.* §314.94(a)(8)(iii).

labeling revisions made to comply with current FDA labeling guidelines or other guidance."[152]

This regulation by its terms does not apply to non-label elements of a generic drug, including the container and number of units.

461.    Pursuant to this regulation, it is common for a generic drug's label to differ from the RLD by setting a different expiration date, requiring the drug to be shipped and stored under different temperature conditions, and/or requiring the drug to receive different (or no) exposure to light.  Several of the Generic Prescription Manufacturer Defendants relied on 21 C.F.R. §314.94(a)(8)(iv) and their independent stability studies to sell approved, generic ranitidine with labels that differed from the RLD label.

### 2.    Federal Law Required the Manufacturer Defendants To Notify the FDA About the Presence of NDMA In Ranitidine-Containing Products

462.    During the time that any Defendants manufactured and sold Ranitidine-Containing Products in the United States, the weight of scientific evidence showed that ranitidine exposed users to unsafe levels of NDMA.  Defendants failed to report these risks to the FDA.

463.    Defendants concealed the ranitidine–NDMA link from ordinary consumers in part by not reporting it to the FDA, which relies on drug manufacturers (or others, such as those who submit citizen petitions) to bring new information about an approved drug like ranitidine to the agency's attention.

464.    Manufacturers (brand and generic) of an approved drug are required by regulation to submit an annual report to the FDA containing, among other things, new information regarding the drug's safety pursuant to 21 C.F.R. §314.81(b)(2):

> The report is required to contain . . . [a] brief summary of significant new information from the previous year that might affect the safety, effectiveness, or

---

[152] *Id.* §314.94(a)(8)(iv).

labeling of the drug product.  The report is also required to contain a brief description of actions the applicant has taken or intends to take as a result of this new information, for example, submit a labeling supplement, add a warning to the labeling, or initiate a new study.

465.    21 C.F.R. §314.81(b)(2)(v) provides that the manufacturer's annual report must also contain:

> Copies of unpublished reports and summaries of published reports of new toxicological findings in animal studies and in vitro studies (*e.g.*, mutagenicity) conducted by, or otherwise obtained by, the [manufacturer] concerning the ingredients in the drug product.

466.    Manufacturer Defendants ignored these regulations and, disregarding the scientific evidence available to them regarding the presence of NDMA in their products and the risks associated with NDMA, did not report to the FDA significant new information affecting the safety or labeling of Ranitidine-Containing Products.

467.    Knowledge regarding the risk of NDMA in ranitidine was sufficiently available in the publicly available scientific literature such that any manufacturer, consistent with its heightened obligations to ensure the safety of its products, also should have known about the potential NDMA risks associated with ranitidine consumption.

468.    Manufacturer Defendants never conducted or provided the relevant studies to the FDA, nor did they present the FDA with a proposed disclosure noting the various ways that ranitidine transforms into NDMA.  Accordingly, because Manufacturer Defendants never properly disclosed the risks to the FDA, they never proposed any labeling or storage / transportation guidelines that would have addressed this risk.  Thus, the FDA was never able to reject any proposed warning or proposal for storage/transport.

469.    When the FDA eventually learned about the NDMA risks posed by Ranitidine-Containing Products, it ordered manufacturers to voluntarily remove the products from the market.

Thus, had any Manufacturer Defendant alerted the FDA to the risks of NDMA, the FDA would have required the manufacturers to remove Ranitidine-Containing Products from the market.

### 3.    Good Manufacturing Practices

470.    Under federal law, a manufacturer must manufacture, store, warehouse, and distribute pharmaceutical drugs in accordance with "Current Good Manufacturing Practices" ("CGMPs") to ensure they meet safety, quality, purity, identity, and strength standards.[153]

471.    21 C.F.R. §210.1(a) states that the CGMPs establish "minimum current good manufacturing practice for methods to be used in, and the facilities or controls to be used for, the manufacture, processing, packing, or holding of a drug to assure that such drug meets the requirements of the act as to safety, and has the identity and strength and meets the quality and purity characteristics that it purports or is represented to possess."  Entities at all phases of the design, manufacture, and distribution chain are bound by these requirements.

472.    Pursuant to 21 C.F.R. §211.142(b), the warehousing of drug products shall provide for "[s]torage of drug products under appropriate conditions of temperature, humidity, and light so that the identity, strength, quality, and purity of the drug products are not affected."  In other words, Defendants had a duty and were obligated to properly store, handle, and warehouse ranitidine.

473.    Testing conducted by the FDA confirms that under accelerated conditions the elevated temperatures can lead to the presence of NDMA in the drug product.[154]  FDA has also concluded that NDMA can increase in ranitidine under storage conditions allowed by the labels, and NDMA has been found to increase significantly in samples stored at higher temperatures,

---

[153]  21 U.S.C. §351(a)(2)(B).

[154]  Woodcock Letter, *supra* n.91.

including temperatures the product may be exposed to during normal distribution and handling. FDA's testing also showed that the level of NDMA in Ranitidine-Containing Products increases with time.  And while Emery's Citizen Petition sought to obtain a directive regarding temperature-controlled shipping of ranitidine, which was necessary given the time and temperature sensitivity of the drug, that request was deemed moot by the FDA because the agency sought to withdraw Ranitidine-Containing Products altogether.

474.    Nothing prevented any Defendant from, on their own, taking actions to prevent accumulation of NDMA in Ranitidine-Containing Products by ensuring that ranitidine was not exposed to heat or moisture over long periods.

## V.    EQUITABLE TOLLING OF APPLICABLE STATUTE OF LIMITATIONS

### A.    Discovery-Rule Tolling

475.    Within the period of any applicable statutes of limitation, Plaintiffs and members of the proposed Classes could not have discovered through the exercise of reasonable diligence that Defendants were not disclosing the high levels of the carcinogen, NDMA, in Ranitidine-Containing Products, including Zantac.

476.    Plaintiffs and the other Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Defendants did not disclose the high levels of NDMA in Ranitidine-Containing Products, including Zantac.  The information linking ranitidine to NDMA was contained exclusively in articles published in scientific journals and intended for the scientific audience.  Plaintiffs and Class members did not have access to these scientific articles because they were behind a paywall.  And even if the articles had been more widely available, the significance of the information in these highly technical articles would not have been apparent to Plaintiffs or Class members.

477.    Plaintiffs and Class members could not have reasonably discovered the true extent of Defendants' deception with regard to the safety of Ranitidine-Containing Products until Valisure filed its citizen petition disclosing the extremely high levels of NDMA in Ranitidine-Containing Products, including Zantac.

478.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule.

### B.    Fraudulent-Concealment Tolling

479.    All applicable statutes of limitation have also been tolled by Defendants' fraudulent concealment of the fact that the ranitidine in Ranitidine-Containing Products, including Zantac, produces high levels of the carcinogen NDMA when ingested.

480.    Instead of disclosing the link between ranitidine and the carcinogen, NDMA, Defendants continued to manufacture and sell Ranitidine-Containing Products without disclosing this information on the drug's label or anywhere else.

### C.    Estoppel

481.    Defendants were under a continuous duty to disclose to Plaintiffs and the other Class members the risk of NDMA exposure associated with Ranitidine-Containing Products, including Zantac.

482.    Defendants knowingly, affirmatively, and actively concealed or recklessly disregarded the true risks of NDMA exposure associated with Ranitidine-Containing Products, including Zantac, and never updated the drug's label to disclose this risk.

483.    Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## VI.     THE RICO CLAIM

484.     Plaintiffs incorporate by reference paragraphs 273 through 277 above, regarding this Court's jurisdiction and venue, as though fully set forth herein.

### A.     Parties

#### 1.     The RICO Defendants

485.     Plaintiffs incorporate by reference paragraphs 1 through 22 above as though fully set forth herein.  For the purposes of this claim, Defendants GSK, Pfizer, BI, and Sanofi are collectively referred to as "RICO Defendant(s)."

486.     The RICO Defendants designed, manufactured, tested, marketed, labeled, packaged, and/or sold ranitidine under the brand name Zantac, and in some cases a generic equivalent, by either prescription or OTC.

#### 2.     The RICO Plaintiffs

487.     For the purposes of this claim, the Plaintiffs identified in the table below are collectively referred to as "RICO Plaintiff(s)."  Each RICO Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*.  Each RICO Plaintiff purchased OTC Zantac manufactured and/or sold by one or more of the RICO Defendants, as indicated in the chart below:

| **Name** | **State(s) of Residence** | **OTC Zantac Purchases From** |
|---|---|---|
| Anthony McGhee | Alabama | BI |
| Tina Culclager | Arkansas | BI; Sanofi |
| Andy Green Jr. | Arkansas | GSK; Pfizer; BI; Sanofi |
| Tangie Sims | Arizona | BI; Sanofi |
| Golbenaz Bakhtiar | California | Pfizer; BI; Sanofi |
| Richard Obrien | California | GSK; Pfizer; Sanofi; BI |
| Virginia Aragon | California | Pfizer; BI; Sanofi |
| Jeffrey Pisano | Colorado | GSK; Pfizer; BI; and Sanofi |
| Ronald Ragan | Colorado | BI; Sanofi |

| Angel Cordero | Connecticut | Pfizer; BI; Sanofi |
| Angel Vega | Connecticut; Montana | BI |
| Clifton McKinnon | Florida | BI |
| Gustavo Velasquez | Florida | Pfizer; BI; Sanofi |
| Jeannie Black | Florida | BI; Sanofi |
| Joshua Winans | Florida | Pfizer; BI; Sanofi |
| Marva Mccall | Florida | BI |
| Michael Tomlinson | Florida | BI; Sanofi |
| Ricardo Moròn | Florida | GSK; Pfizer; BI; Sanofi |
| Sharon Tweg | Florida | BI; Sanofi |
| Karen Foster | Florida | BI |
| Roy Armstrong | Florida; New York; Alaska; Michigan; Minnesota; Georgia | Pfizer; BI; Sanofi |
| Sonia Diaz | Florida; Puerto Rico | BI; Sanofi |
| Tyrone Houston | Georgia | BI; Sanofi |
| Kathy Jeffries | Georgia; Florida | Pfizer; BI; Sanofi |
| Denise Guy | Illinois | BI; Sanofi |
| Heather Re | Illinois | BI; Sanofi |
| Renee Chatman | Illinois | BI; Sanofi |
| Vickie Anderson | Illinois | BI |
| Carol Harkins | Illinois | Pfizer |
| Alyson Humphrey | Indiana | BI; Sanofi |
| Rebecca Sizemore | Indiana | BI; Sanofi |
| Teresa Dowler | Indiana | BI |
| Tracy Wells | Indiana | BI; Sanofi |
| Janet Asbury | Kentucky | Pfizer; BI |
| Jamie Mckay | Louisiana | Sanofi |
| Randy Jones | Louisiana | GSK; Pfizer; BI; Sanofi |
| Michelle Smith | Massachusetts | BI; Sanofi |
| Jennifer Bond | Massachusetts; New Hampshire | BI; Sanofi |

| Rafael Bermudez | Massachusetts; New Hampshire | BI; Sanofi |
|---|---|---|
| Alberta Griffin | Maryland | Pfizer; BI; Sanofi |
| Arthur Gamble | Michigan | Sanofi |
| Jerry Hunt | Michigan | GSK; Pfizer; BI; and Sanofi |
| Jody Beal | Michigan | BI; Sanofi |
| Lakisha Wilson | Michigan | GSK; Pfizer; BI |
| Brad Hoag | Minnesota | BI; Sanofi |
| Donald Northrup | Minnesota | Pfizer; BI; Sanofi |
| John Scholl | Minnesota; North Dakota | Pfizer; BI |
| Antrenise Campbell | Missouri | BI |
| Lorie Kendall-Songer | Missouri | BI; Sanofi |
| Ronda Lockett | Missouri; Oklahoma; Texas | GSK; Pfizer; BI; Sanofi |
| Beverly Crosby | Mississippi | Pfizer; BI |
| John Rachal | Mississippi | Pfizer; BI; Sanofi |
| Dennis Robbins | North Carolina | GSK; Pfizer; BI; Sanofi |
| Patricia Frazier | North Carolina | BI |
| Sharon Parks | North Carolina | BI; Sanofi |
| Teresa Lee | North Carolina | BI |
| Gaylord Stauffer | Nebraska | GSK; Pfizer; BI; Sanofi |
| Charles Longfield | Iowa; Maryland; Wyoming | GSK; Pfizer; BI; Sanofi |
| James Adamo | New Jersey | BI; Sanofi |
| Lynn White | New Jersey | BI |
| Mary McMillan | New Jersey | BI; Sanofi |
| Mary Moronski | New Jersey | BI; Sanofi |
| Sayed Eldomiaty | New Jersey | BI |
| Ernesto Sanchez | New Mexico | BI; Sanofi |
| George Tapia | New Mexico | BI; Sanofi |
| Cesar Pinon | Nevada | BI |
| Benny Fazio | New York | Pfizer; BI; Sanofi |

| Francis Neary | New York | BI; Sanofi |
|---|---|---|
| Glorimar Rodriguez | New York | BI; Sanofi |
| Joseph Mcpheter | New York | BI |
| Mary McCullen | New York | Pfizer; BI; Sanofi |
| Migdalia Kinney | New York | BI; Sanofi |
| Richard Froehlich | New York | BI; Sanofi |
| Silomie Clarke | New York | Sanofi |
| Yesenia Melillo | New York | Sanofi |
| Dan Zhovtis | New York; Virginia | Pfizer; BI; Sanofi |
| Chris Troyan | Ohio | Pfizer BI; Sanofi |
| Patricia Hess | Ohio | BI |
| Michael Galloway | Ohio; Florida | GSK; Pfizer; BI; Sanofi |
| Demarco Grayson | Oklahoma | BI; Sanofi |
| Billy Naab | Oklahoma; Washington; Idaho | Pfizer; BI; Sanofi |
| Kristi Ledbetter | Oregon | BI |
| Jonathan Ferguson | Oregon; California; Washington; Nevada | GSK; Pfizer; BI; Sanofi |
| Nicholas Hazlett | Pennsylvania; Maryland | BI; Sanofi |
| Gloria Colon | Puerto Rico | GSK; Pfizer; BI; Sanofi |
| Michael Futrell | South Carolina | BI; Sanofi |
| Dale Hunter | Tennessee | Pfizer; BI; Sanofi |
| Eva Broughton | Tennessee | Pfizer; BI |
| Kenneth Hix | Tennessee; Michigan | Pfizer; BI |
| Agapito It Aleman | Texas | BI; Sanofi |
| Gina Martinez | Texas | BI; Sanofi |
| Liliana Del Valle | Texas | BI; Sanofi |
| Maria Eames | Texas | BI |
| Marilyn Abraham | Texas | Sanofi |
| Sylvia Yoshida | Texas | Pfizer; BI; Sanofi |
| Tammy Smith | Texas; Louisiana; Missouri | GSK; Pfizer |

| Marianella Villanueva | Texas; South Carolina | Pfizer; BI; Sanofi |
| Teresa Waters | Utah | BI; Sanofi |
| Cheryl Banks | Virginia | BI; Sanofi |
| Ronald Ragis | Vermont; Florida | GSK; Pfizer; BI |
| Dave Garber | Washington | BI; Sanofi |
| Earlene Green | Washington | GSK; Pfizer; BI |
| Steve Fischer | Washington | Pfizer |
| Robert Dewitt | Washington | Pfizer; BI; Sanofi |
| Wendy Quezaire | Wisconsin | Pfizer; BI |
| Ida Adams | West Virginia; Maryland | Pfizer; BI; Sanofi |

**B.      Factual Allegations**

**1.      The RICO Defendants Worked Together to Develop, Manufacture, and Sell Zantac, Catapulting It to Continuing Market Success**

488.    Ranitidine belongs to a class of medications called histamine $H_2$-receptor antagonists (or $H_2$ blockers), which decrease the amount of acid produced by cells in the lining of the stomach.  Other drugs within this class include cimetidine (branded Tagamet), famotidine (Pepcid), and nizatidine (Axid).

489.    GSK-predecessor Smith, Kline & French discovered and developed Tagamet, the first $H_2$ blocker and the prototypical histamine $H_2$ receptor antagonist from which the later members of the class were developed.

490.    GSK[155] developed Zantac specifically in response to the success of cimetidine.  Recognizing the extraordinary potential of having its own $H_2$ blocker in the burgeoning anti-ulcer market, GSK was all too willing to ensure its drug succeeded at all costs.

---

[155]  GSK, as it is known today, was created through a series of mergers and acquisitions: In 1989, Smith, Kline & French merged with the Beecham Group to form SmithKline Beecham plc.  In 1995, Glaxo merged with the Wellcome Foundation to become Glaxo Wellcome plc.  In 2000,

491.    In 1976, scientist John Bradshaw, on behalf of GSK-predecessor Allen & Hanburys Ltd., synthesized and discovered ranitidine.

492.    Allen & Hanburys Ltd., a then-subsidiary of Glaxo Laboratories Ltd., is credited with developing ranitidine and was awarded Patent No. 4,128,658 by the U.S. Patent and Trademark Office in December 1978, which covered the ranitidine molecule.

493.    In 1983, the FDA granted approval to Glaxo to manufacture and sell prescription Zantac in the United States, pursuant to the New Drug Application ("NDA") No. 18-703.

494.    In 1995, as the result of a joint effort between Glaxo and Warner-Lambert,[156] the FDA approved OTC Zantac 75 mg tablets through NDA 20-520.  In 1998, the FDA approved OTC Zantac 75 mg effervescent tablets through NDA 20-745.

495.    On August 31, 2004, the FDA approved Pfizer's NDA 21-698 to market and sell OTC Zantac 150 mg.

496.    Prescription and OTC Zantac (and their generic equivalents) were available for sale in the United States until October 18 and 23, 2019, when GSK and Sanofi, respectively, voluntarily recalled their products.  Thereafter, on April 1, 2020, the FDA requested withdrawal of Zantac and all other Ranitidine-Containing Products from the market.

497.    As fully detailed below, the rights to manufacture and/or sell Zantac changed hands throughout the years (1983-2019) from Glaxo (turned GSK) to Warner-Lambert (turned Pfizer) to Boehringer Ingelheim to Sanofi.

---

Glaxo Wellcome plc merged with SmithKline Beecham plc to form GlaxoSmithKline plc and GlaxoSmithKline LLC.

[156]  Pfizer acquired Warner-Lambert in 2000.

498.    The times during which each RICO Defendant manufactured and/or sold Zantac and other Ranitidine-Containing Products globally are alleged below:

| Manufacturer | Product | Prescription or Over the Counter | Sale Start Date Year | Sale End Date Year |
|---|---|---|---|---|
| GSK | Pills, Syrup, and Injection | Prescription/OTC | 1983 | 2019 |
| Pfizer | Pills | OTC | 1995 | 2006 |
| BI | Pills | OTC | 1997 2006 | 1998 2019 |
| Sanofi | Pills | Prescription/OTC | 1983 | 2019 |

499.    Throughout this long and continuous period of sale, the RICO Defendants entered into numerous mutually beneficial agreements with each other and other co-conspirators regarding the development, marketing, manufacture, and/or sale of Zantac.  For instance, Glaxo joined with Hoffman-LaRoche to sell prescription Zantac and then with Warner-Lambert to secure FDA approval for OTC Zantac sales.  GSK continued to maintain manufacturing and supply agreements relating to various formulations of OTC Zantac, even while Pfizer owned the rights to sell it.  And BI continued to manufacture OTC Zantac for Sanofi even after an asset swap granting Sanofi exclusive rights to sell the product in the United States.

500.    Despite the inevitable OTC generic entry into the market, the RICO Defendants were wildly successful in their marketing and sale of OTC Zantac through its sudden market withdrawal in October 2019.  As recently as 2018, Zantac was one of the top ten antacid tablets in the United States, with sales of OTC Zantac 150 totaling $128.9 million – a 3.1% increase from the previous year.

501.    All the while, the RICO Defendants knew or recklessly disregarded contemporaneous red flags showing that Zantac posed material safety risks: the active ingredient in their Ranitidine-Containing Products – ranitidine – was unstable and degraded to form a dangerous known carcinogen – NDMA – rendering those products dangerous to consumers.  And

for decades, they uniformly omitted the material safety risks from their statements to consumers and the public.

### 2. NDMA Is Discovered in Ranitidine-Containing Products, Leading to Market Withdrawal

502. On September 9, 2019, pharmacy and testing laboratory Valisure LLC and ValisureRX LLC (collectively, "Valisure") filed a Citizen Petition calling for the recall of all Ranitidine-Containing Products due to detecting exceedingly high levels of NDMA when testing ranitidine pills using gas chromatography-mass spectrometry. FDA and European regulators started reviewing the safety of ranitidine with specific focus on the presence of NDMA.[157] This set off a cascade of recalls by the RICO Defendants and others.

503. In its Citizen's Petition to the FDA,[158] Valisure disclosed as part of its testing of Ranitidine-Containing Products that in every lot tested there were exceedingly high levels of NDMA. Valisure's ISO 17025 accredited laboratory used FDA recommended GC/MS headspace analysis method FY19-005-DPA for the determination of NDMA levels. As per the FDA protocol, this method was validated to a lower limit of detection of 25 ng.[159] The results of Valisure's testing show levels of NDMA well above 2 million ng per 150 mg Zantac tablet, shown below in Table 1.

| Table 1 – Ranitidine Samples Tested by Valisure Laboratory Using GC/MS Protocol |
| --- |

---

[157] FDA Statement, Woodcock, *supra* n.39; Press Release, European Medicines Agency, *EMA to Review Ranitidine Medicines Following Detection of NDMA* (Sept. 13, 2019), https://www.ema.europa.eu/en/news/ema-review-ranitidine-medicines-following-detection-ndma.

[158] Valisure, *Citizen Petition on Ranitidine* (Sept. 9, 2019), https://www.valisure.com/wp-content/uploads/Valisure-Ranitidine-FDA-Citizen-Petition-v4.12.pdf.

[159] U.S. Food & Drug Admin., *Combined N-Nitrosodimethylamine (NDMA) and N-Nitrosodiethylamine (NDEA) Impurity Assay, FY19-005-DPA-S* (Jan. 28, 2019).

| 150 mg Tablets or equivalent | Lot # | NDMA per tablet (ng) |
|---|---|---|
| Reference Powder | 125619 | 2,472,531 |
| Zantac, Brand OTC | 18M498M | 2,511,469 |
| Zantac (mint), Brand OTC | 18H546 | 2,834,798 |
| Wal-Zan, Walgreens | 79L800819A | 2,444,046 |
| Wal-Zan (mint), Walgreens | 8ME2640 | 2,635,006 |
| Ranitidine, CVS | 9BE2773 | 2,520,311 |
| Zantac (mint), CVS | 9AE2864 | 3,267,968 |
| Ranitidine, Equate | 9BE2772 | 2,479,872 |
| Ranitidine (mint), Equate | 8ME2642 | 2,805,259 |
| Ranitidine, Strides | 77024060A | 2,951,649 |

504.    This testing by GC/MS demonstrates the instability of the ranitidine molecule and its propensity to break down under higher temperatures.

505.    Valisure was concerned that the extremely high levels of NDMA observed in its testing were a product of the modest oven heating parameter of 130°C in the FDA recommended GC/MS protocol.  So Valisure developed a low temperature GC/MS method that could still detect NDMA but would only subject samples to 37°C, the average temperature of the human body.  This method was validated to a lower limit of detection of 100 ng.

506.    Valisure tested ranitidine tablets by themselves and in conditions simulating the human stomach.  Industry standard "Simulated Gastric Fluid" ("SGF": 50 mM potassium chloride, 85 mM hydrochloric acid adjusted to pH 1.2 with 1.25 g pepsin per liter) and "Simulated Intestinal Fluid" ("SIF": 50 mM potassium chloride, 50 mM potassium phosphate monobasic adjusted to pH 6.8 with hydrochloric acid and sodium hydroxide) were used alone and in combination with various concentrations of nitrite, which is commonly ingested in foods like processed meats and

is elevated in the stomach by antacid drugs.  The inclusion of nitrite in gastric fluid testing is commonplace and helps simulate the environment of a human stomach.

507.    The results of Valisure's tests on ranitidine tablets in biologically relevant conditions demonstrate significant NDMA formation under simulated gastric conditions with nitrite present (*see* Table 2).

| Table 2 – Valisure Biologically Relevant Tests for NDMA Formation | | |
|---|---|---|
| **Ranitidine Tablet Studies** | **NDMA (ng/mL)** | **NDMA per tablet (ng)** |
| Tablet without Solvent | Not Detected | Not Detected |
| Tablet | Not Detected | Not Detected |
| Simulated Gastric Fluid | Not Detected | Not Detected |
| Simulated Intestinal Fluid | Not Detected | Not Detected |
| SGF with 10 mM Sodium Nitrite | Not Detected | Not Detected |
| SGF with 25 mM Sodium Nitrite | 236 | 23,600 |
| SGF with 50 mM Sodium Nitrite | 3,045 | 304,500 |

508.    Under biologically relevant conditions when nitrites are present, high levels of NDMA are found in one dose of 150 mg ranitidine, ranging between 245 and 3,100 times above the FDA-allowable limit.  One would need to smoke over 500 cigarettes to achieve the same levels of NDMA found in one dose of 150 mg ranitidine at the 25 nanogram level (over 7,000 for the 50 nanogram level).

509.    On September 13, 2019, the FDA's Director for Drug Evaluation and Research, Dr. Janet Woodcock, issued a statement warning that some ranitidine medicines may contain NDMA.[160]

---

[160]  FDA Statement, Woodcock, *supra* n.39.

510.     On October 2, 2019, the FDA ordered manufacturers of ranitidine to test their products and recommended using a liquid chromatography with high resolution mass spectrometer ("LC-HRMS") testing protocol, which "does not use elevated temperatures."[161]

511.     On October 8, 2019, GSK recalled all of its Ranitidine-Containing Products internationally.[162]  As part of the recall, GSK publicly acknowledged that unacceptable levels of NDMA were discovered in Zantac and noted that "GSK is continuing with investigations into the potential source of the NDMA[.]"[163]

512.     On October 18 and 23, 2019, Sanofi recalled all of its Ranitidine-Containing Products.[164]

513.     Following the release of Valisure Citizen's Petition, the FDA conducted additional laboratory tests, which showed NDMA levels in all ranitidine samples it tested, including API and the finished drug, both tablets and syrup.  The FDA developed SGF and SIF models to use with the LC-HRMS testing method to estimate the biological significance of *in vitro* findings.  These models are intended to detect the formation of NDMA in systems that approximate the stomach and intestine.

---

[161] U.S. Food & Drug Admin., *FDA Updates and Press Announcements on NDMA in Zantac (ranitidine)* (Oct. 2, 2019), https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-ndma-zantac-ranitidine.

[162] Press Release, Gov. UK, *Zantac – MHRA Drug Alert Issued as GlaxoSmithKline Recalls All Unexpired Stock* (Oct. 8, 2019), https://www.gov.uk/government/news/zantac-mhra-drug-alert-issued-as-glaxosmithkline-recalls-all-unexpired-stock.

[163] Justin George Varghese, *GSK Recalls Popular Heartburn Drug Zantac Globally After Cancer Scare*, REUTERS (Oct. 8, 2019), https://www.reuters.com/article/us-gsk-heartburn-zantac/gsk-recalls-popular-heartburn-drug-zantac-globally-after-cancer-scare-idUSKBN1WN1SL.

[164] U.S. Food & Drug Admin., *FDA Updates and Press Announcements on NDMA in Zantac (ranitidine)* (Oct. 23, 2019), https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-ndma-zantac-ranitidine.

514.    On November 1, 2019, the FDA announced the results of recent testing, finding unacceptable levels of NDMA in Ranitidine-Containing Products, and requested that drug makers begin to recall their Ranitidine-Containing Products if the FDA or manufacturers discovered NDMA levels above the acceptable limits.[165]

515.    On December 4, 2019, the FDA issued a statement notifying consumers who wished to continue taking ranitidine to consider limiting their intake of nitrite-containing foods, *e.g.*, processed meats and preservatives like sodium nitrite.[166]

516.    On January 2, 2020, research laboratory Emery Pharma submitted a Citizen Petition to the FDA showing that the ranitidine molecule is heat-labile and under certain temperatures progressively accumulates NDMA.

517.    Emery's Citizen Petition outlined its substantial concern that ranitidine is a time- and temperature-sensitive pharmaceutical product that develops NDMA when exposed to heat, a common occurrence during shipping, handling, and storage.  Emery requested that the FDA issue a directive to manufacturers to clearly label ranitidine with a warning that "by-products that are probable carcinogens can be generated if exposed to heat."  In addition to warning about this condition, Emery requested agency directives to manufacturers and distributors to ship ranitidine products in temperature-controlled vehicles.[167]

---

[165] U.S. Food & Drug Admin., Laboratory Tests | Ranitidine, Laboratory Analysis of Ranitidine and Nizatidine Products, https://www.fda.gov/drugs/drug-safety-and-availability/laboratory-tests-ranitidine (content current as of Nov. 1, 2019).

[166] U.S. Food & Drug Admin., *FDA Updates and Press Announcements on NDMA in Zantac (ranitidine)* (Dec. 4, 2019), https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-ndma-zantac-ranitidine.

[167] Emery Pharma Ranitidine: FDA Citizen Petition (Jan. 2, 2020) https://emerypharma.com/news/emery-pharma-ranitidine-fda-citizen-petition/.

518.     In response,[168] on April 1, 2020, the FDA recounted that a recall is an "effective methods [sic] of removing or correcting defective FDA-regulated products . . . particularly when those products present a danger to health."[169]   The FDA sought the voluntary consent of manufacturers to accept the recall "to protect the public health from products that present a risk of injury."[170]

519.     The FDA found that the recall of all Ranitidine-Containing Products and a public warning of the recall was necessary because the "product being recalled presents a serious health risk."[171]

520.     The FDA therefore sent Information Requests to all applicants and pending applicants of Ranitidine-Containing Products "requesting a market withdrawal."[172]

521.     The FDA's stability testing raised concerns that NDMA levels in some Ranitidine-Containing Products stored at room temperature can increase with time to unacceptable levels.  In the same vein, the FDA's testing revealed that higher NDMA levels were found as the products approached their expiration dates.  The FDA's testing eroded the agency's confidence that any Ranitidine-Containing Product would remain stable through its labeled expiration date.  Consequently, the FDA requested a market withdrawal of all Ranitidine-Containing Products.  The FDA also announced to the public that the Agency's laboratory tests indicated that temperature and time contribute to an increase in NDMA levels in some Ranitidine-Containing Products.  The

---

[168]  Woodcock Letter, *supra* n.91.

[169]  *Id.* at 5 (citing 21 CFR 7.40(a)).

[170]  *Id.*

[171]  *Id.* at 7.

[172]  *Id.* at 10 n.43.

FDA's decision to withdraw the drug rendered moot Emery's request for temperature-controlled shipping conditions.

522.    The FDA's reaction was consistent with comparable regulatory action throughout the world.  Before the FDA acted, over 43 countries and jurisdictions restricted or banned Ranitidine-Containing Products.[173]

523.    The European Medicines Agency ("EMA"), the European Union's equivalent to the FDA, through an Article 31 Referral, determined the sale of all Ranitidine-Containing Products should be suspended on September 19, 2019.  On April 30, 2020, the Human Medicines Committee of the EMA "recommended the suspension of all ranitidine medicines in the EU due to the presence of low levels of an impurity called N-nitrosodimethylamine (NDMA)."  The EMA recognized NDMA as a probable human carcinogen and issued a "precautionary suspension of these medicines in the EU" because "NDMA has been found in several ranitidine medicines above levels considered acceptable, and there are unresolved questions about the source of the impurities."[174]

524.    On September 17, 2020, after a ranitidine manufacturer requested that the EMA re-examine its decision and permit ranitidine to be marketed again in the EU, the EMA confirmed its prior recommendation to suspend all ranitidine medicines in the EU due to the presence of NDMA,

---

[173] Margaret Newkirk & Susan Berfield, *FDA Recalls Are Always Voluntary and Sometimes Haphazard – and the Agency Doesn't Want More Authority to Protect Consumers*, BLOOMBERG BUSINESSWEEK (Dec. 13, 2019), https://www.bloomberg.com/graphics/2019-voluntary-drug-recalls-zantac/.

[174] Eur. Med. Agency, *Suspension of Ranitidine Medicines in the EU* (Apr. 30, 2020), https://www.ema.europa.eu/en/documents/referral/ranitidine-article-31-referral-suspension-ranitidine-medicines-eu_en.pdf.

noting that it is a probable human carcinogen and that there is evidence that NDMA forms from the degradation of ranitidine itself with increasing levels seen over shelf life.[175]

525.    The FDA's response was also consistent with its own previous actions.  As early as 1980, consumer products containing unsafe levels of NDMA and other nitrosamines have been recalled by manufacturers, either voluntarily or at the direction of the FDA.

526.    Most recently, beginning in the summer of 2018, several generic drugs used to treat high blood pressure and heart failure – Valsartan, Losartan, and Irbesartan – were recalled because the medications contained nitrosamine impurities that did not meet the FDA's safety standards.

527.    This continued in 2020 when the FDA required recalls of numerous generic manufacturers' metformin.[176]

### 3.    The RICO Defendants Knew of or Recklessly Disregarded Contemporaneous Red Flags Pointing to the Material Safety Risks Posed by Their Ranitidine-Containing Products

528.    As much as it surprised consumers, including the RICO Plaintiffs, the knowledge that the RICO Defendants' Ranitidine-Containing Products broke down into NDMA was not a surprise to the RICO Defendants.

529.    During the time that the RICO Defendants manufactured, marketed, and sold their Ranitidine-Containing Products in the United States, the weight of scientific evidence showed that ranitidine exposed users to unsafe levels of NDMA.  Knowledge regarding the risk of NDMA in ranitidine was set forth in the scientific literature such that each RICO Defendant, consistent with

---

[175] Eur. Med. Agency, *EMA Confirms Recommendation to Suspend All Ranitidine Medicines in the EU* (Nov. 24, 2020), https://www.ema.europa.eu/en/documents/referral/ranitidine-article-31-referral-ema-confirms-recommendation-suspend-all-ranitidine-medicines-eu_en.pdf.

[176] U.S. Food & Drug Admin., *FDA Updates and Press Announcements on NDMA in Metformin*, https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-ndma-metformin.

its heightened obligations to ensure the safety of its products, knew about the potential NDMA risks associated with ranitidine consumption or recklessly disregarded contemporaneous red flags.

530.    Numerous and exhaustive scientific studies and published articles, dating back to 1981, established the ranitidine-NDMA-cancer connection and material safety concerns with Ranitidine-Containing Products.  RICO Defendants knew about or recklessly disregarded the material safety risks, and yet, they omitted from disclosure the material safety risks from their communications with consumers and the public, including the RICO Plaintiffs.

531.    Numerous published studies established that ranitidine transforms into NDMA prior to Valisure's discovery.  These studies include:

- De Flora, *Cimetidine, Ranitidine and Their Mutagenic Nitroso Derivatives*, THE LANCET, Oct. 31, 1981;

- Maura et al., *DNA Damage Induced by Nitrosated Ranitidine in Cultured Mammalian Cells*, 18 Tox. Lttrs. 97-102 (1983);

- De Flora et al., *Genotoxicity of Nitrosated Ranitidine*, 4 Carcinogenesis 3, 255-60 (1983);

- Ogawa et al., *Purification and Properties of a New Enzyme, NG, NG-dimethylarginine Dimethylaminohydrolase, from Rat Kidney*, 264 J. Bio. Chem. 17, 10205-209 (1989);

- Krawczynski et al. *Nitrosamines in Children with Chronic Gastritis*, JOURNAL OF THE POLISH PEDIATRIC SOCIETY (2002);[177]

- Mitch et al., *N-Nitrosodimethylamine (NDMA) as a Drinking Water Contaminant: A Review*, 20 Env. Eng. Sci. 5, 389-404 (2003);

- Le Roux et al., *NDMA Formation by Chloramination of Ranitidine: Kinetics and Mechanism*, 46 Envtl. Sci. Tech. 20, 11095-103 (2012); and

- Zeng et al., *Oral intake of Ranitidine Increases Urinary Excretion of N-nitrosodimethylamine*, 37 Carcinogenesis 625-34 (2016).

---

[177] GSKZAN0000235261.

532.    These studies were readily available in medical and scientific literature such that the RICO Defendants knew about or recklessly disregarded the material safety risks, and yet, they omitted from disclosure the material safety risks from their communications with consumers and the public, including RICO Plaintiffs.

533.    NDMA is a carcinogen with well- and long-established dangerous properties and risks to human health, as documented in numerous published studies and other authorities:

- Int'l Agency for Research on Cancer (IARC), *Summaries & Evaluations, N-NITROSODIMETHYLAMINE* (1978);

- 17 Int'l Agency for Research on Cancer, *IARC Monographs on the Evaluation of the Carcinogenic Risk of Chemicals to Humans, Some N-Nitroso Compounds* 151-52 (May 1978);

- Jane Brody, *Bottoms Up: Alcohol in Moderation Can Extend Life*, The Globe & Mail (CANADA) (Oct. 11, 1979);

- ATSDR Toxicological Profile For N-Nitrosodimethylamine (December 1989);

- Rudy Platiel, *Anger Grows as Officials Unable to Trace Poison in Reserve's Water*, The Globe & Mail (CANADA) (Jan. 6, 1990);

- Pobel et al., *Nitrosamine, Nitrate and Nitrite in Relation to Gastric Cancer: A Case-control Study in Marseille, France*, 11 Eur. J. Epidemiol. 67-73 (1995);

- La Vecchia *et al*., *Nitrosamine Intake & Gastric Cancer Risk*, 4 Eur. J. Cancer Prev. 469-74 (1995);

- Rogers et al., *Consumption of Nitrate, Nitrite, and Nitrosodimethylamine and the Risk of Upper Aerodigestive Tract Cance*r, 5 Cancer Epidemiol. Biomarkers Prev. 29-36 (1995);

- Kyrtopoulos et al, *DNA Adducts in Humans After Exposure to Methylating Agents*, 405 Mut. Res. 135 (1998);

- Knekt et al., *Risk of Colorectal and Other Gastro-Intestinal Cancers after Exposure to Nitrate, Nitrite and N-nitroso Compounds: A Follow-Up Study*, 80 Int. J. Cancer 852-56 (1999);

- Straif et al., *Exposure to High Concentrations of Nitrosamines and Cancer Mortality Among a Cohort of Rubber Workers*, 57 Occup. Envtl. Med 180-87 (2000);

- World Health Org., *Guidelines for Drinking Water Quality, N-Nitrosodimethylamine (NDMA)* (3d ed. 2008);

- Loh et al., *N-nitroso Compounds and Cancer Incidence: The European Prospective Investigation into Cancer and Nutrition (EPIC)–Norfolk Study*, 93 Am. J. Clinical Nutrition 1053-61 (2011);

- Zhu et al., *Dietary N-nitroso Compounds and Risk of Colorectal Cancer: A Case-control Study in Newfoundland and Labrador and Ontario, Canada*, 111 Brit. J. Nutrition 6, 1109-17 (2014);

- International Council for Harmonisation of Technical Requirements for Pharmaceuticals for Human Use (ICH), Assessment and Control of DNA Reactive (Mutagenic) Impurities in Pharmaceuticals to Limit Potential Carcinogenic Risk, M7(R1), March 2017; and

- U.S. Environmental Protection Agency, *Technical Fact Sheet – N-Nitroso-dimethylamine (NDMA)* (Nov. 2017).

534.   These studies were readily available in medical literature such that the RICO Defendants knew about or recklessly disregarded the material safety risks, and yet, they omitted from disclosure the material safety risks from their communications with consumers and the public, including RICO Plaintiffs.

535.   Numerous studies that were easily available to RICO Defendants establish that ranitidine use is and has been directly associated with cancer.  These studies included:

- Laurel A Habel et al., *Cimetidine Use and Risk of Breast, Prostate, and Other Cancers*, 9 Pharmacoepidemiology & Drug Safety 149-55 (2000);

- D. Michaud et al., *Peptic Ulcer Disease and the Risk of Bladder Cancer in a Prospective Study of Male Health Professionals*, 13 Cancer Epi. Biomarkers & Prevention 250-54 (Feb. 2004);

- Robert W. Mathes et al., *Relationship Between Histamine2-receptor Antagonist Medications and Risk of Invasive Breast Cancer*, 17 Cancer Epi. Biomarkers & Prevention 1, 67-72 (2008);

- Poulsen et al., *Proton Pump Inhibitors and Risk of Gastric Cancer – A Population Based Cohort Study*, 100 Brit. J. Cancer 1503-07 (2009);

- Jeong Soo Ahn et al., *Acid Suppressive Drugs and Gastric Cancer: A Meta-analysis of Observational Studies*, 19 World J. Gastroenterology 16, 2560 (2013);

- Shih-Wei Lai et al., *Use of Proton Pump Inhibitors Correlates with Increased Risk of Pancreatic Cancer: A Case-control Study in Taiwan*, 46 Kuwait Med J. 1, 44-48 (2014);

- E Wennerström, *Acid-suppressing Therapies and Subsite-specific Risk of Stomach Cancer*, 116 Brit. J. Cancer 9, 1234-38 (2017);

- Kim Tu Tran et al., *Proton Pump Inhibitor and Histamine-2 receptor Antagonist Use and Risk of Liver Cancer in Two Population-based Studies*, 48 Alimentary Pharmacology & Therapeutics 1, 55-64 (2018); and

- Y-H J Shao et al., *Association Between Proton Pump Inhibitors and the Risk of Hepatocellular Carcinoma*, 48 Alimentary Pharmacology & Therapeutics 4, 460-68 (2018).

536. These studies were readily available in medical literature such that the RICO Defendants knew about or recklessly disregarded the material safety risks, and yet, they omitted from disclosure the material safety risks from their communications with consumers and the public, including RICO Plaintiffs.

537. Moreover, GSK/Glaxo conducted its own studies, some with results as early as 1981, confirming its actual knowledge of the material safety risks of Ranitidine-Containing Products, including:



---

178 GSKZAN0000084994.

179 GSKZAN0000369313.

538.     Other, published, studies conducted by GSK/Glaxo that purported to minimize the material safety risks were flawed or deliberately manipulated, including:

- Carey et al., *Determination of Ranitidine and Its Metabolites in Human Urine by Reversed-phase Ion-pair High-performance Liquid Chromatography*, 255 J. Chromatography B: Biomedical Sci. & Appl. 1, 161-68 (1981); and

- Thomas et al., *Effects of One Year's Treatment with Ranitidine and of Truncal Vagotomy on Gastric Contents*, 6 Gut. Vol. 28, 726-38 (1987).

539.     All RICO Defendants either knew about the inadequacy of GSK's studies or recklessly disregarded the material safety risks, and yet they omitted such risks from their statements to consumers and the public.  Defendants were sufficiently aware of red flags they had a duty to investigate and warn consumers from the NDMA risks in their products.  None did.

540.     Notwithstanding the wealth of available studies, including its own, GSK omitted and concealed the material safety risks with its Ranitidine-Containing Products from the public.  As we now know from investigations of GSK's conduct with the drugs Paxil, Wellbutrin, and Avandia, the company has a history of covering up scientific data to maintain its profit from the sale of those drugs.   In the wake of Congressional hearings into the company's outrageous misbehavior,[180] GSK's actions resulted in a criminal investigation and the then-largest guilty plea by a pharmaceutical company for fraud and failure to report safety data in the country's history.[181]

---

[180]  *Staff Report on GlaxoSmithKline and the Diabetes Drug Avandia*, Senate Comm. on Finance, 111th Cong.2d Sess. 1 (Comm. Print Jan. 2010).

[181]  U.S. Dep't of Justice, *GlaxoSmithKline to Plead Guilty and Pay $3 Billion to Resolve Fraud Allegations and Failure to Report Safety Data* (July 2, 2012), https://www.justice.gov/opa/pr/glaxosmithkline-plead-guilty-and-pay-3-billion-resolve-fraud-allegations-and-failure-report.

541.     The Department of Justice's ("DOJ") 2012 criminal investigation and resolution of fraud and failure to report safety data allegations against GSK[182] included, *inter alia*, allegations that GSK failed to disclose unfavorable studies related to its marketing efforts; hired third-party contractors to write medical journal articles for selective favorable studies; influenced the content of studies through threats to withdraw research funding.

542.     In 2010, the Senate Finance Committee released a 334-page report that found GSK failed to promptly alert the FDA about drug risks as far back as 2000.[183]  Specifically, the Senate Finance Committee found that GSK attempted to "downplay scientific findings about the safety" of one of its popular drugs, Avandia.[184]  In addition, the Committee found that GSK utilized a "ghostwriting campaign – a practice by which drug companies initiate authorship of articles, often through a medical education or communications company, that are then marketed to medical journals for publication under the names of doctors without public disclosure that the drug company sought the article in the first place."[185]

543.     Because of the numerous and widespread violations identified by the DOJ, in 2012, GSK entered into a Corporate Integrity Agreement ("CIA") with the Office of Inspector General of the Department of Health and Human Services.  The CIA applied to "all prescription pharmaceutical products" marketed or sold by GSK in the United States that are reimbursed by

---

[182] *Id.*

[183] *See*, U.S. Senate Committee on Finance, *Baucus, Grassley Find Company Failed to Promptly Alert FDA About Drug Risks* (July 13 2010), https://www.finance.senate.gov/imo/media/doc/07132010%20Baucus,%20Grassley%20Find%20Company%20Failed%20to%20Promptly%20Alert%20FDA%20about%20Drug%20Risks.pdf.

[184] *Id.*

[185] *Id.*

federal healthcare programs and required GSK to, *inter alia*, comply with dozens of provisions related to non-promotional activities including, but not limited to, disclosing and reporting all research-related activities, and disclosing and reporting all publication activities, including disclosure of any GSK financial support for the study and any financial relationship with GSK and disclosure of all authors or contributors (including professional writers) associated with a given publication.  The CIA was in effect from June 2012 through December 31, 2017, during which time GSK was manufacturing, marketing, and selling Zantac in the United States and globally.

544.    GSK had been engaging in the same behavior and tactics with Zantac and ranitidine for many years before, during, and after the 2012 Department of Justice criminal case.  Rather than properly investigate its own findings showing ranitidine, and thus Ranitidine-Containing Products including Zantac, had material safety risks, and those of reputable scientists of which it was aware, GSK instead continued its long-standing pattern of deception and manipulation.

545.    Two weeks following Dr. De Flora's 1981 publication showing that ranitidine broke down into NDMA in the human stomach, GSK responded in THE LANCET, claiming that the levels of nitrite needed to induce the production of nitroso derivatives (*i.e.*, NDMA) were not likely to be experienced by people in the real world.[186]

546.    Then, in response to Dr. De Flora's findings, in 1982, GSK conducted a clinical study specifically investigating gastric contents in human patients.[187]  The study, in part, specifically measured the levels of N-Nitroso compounds in human gastric fluid.  GSK indicated that there were no elevated levels, and published the results of this study in 1987.  The study, however, was flawed.  It did not use industry-standard mass spectrometry to test for NDMA but,

---

[186] R. T., Brittain et al., *Safety of Ranitidine*, THE LANCET 1119 (Nov. 14, 1981).

[187] Thomas et al., *supra* n.109.

instead, used a process that could not measure N-nitrosamines efficiently. And worse, in the testing it did conduct, GSK specifically refused to test gastric samples that contained ranitidine out of concern that samples with ranitidine would contain "high concentrations of N-nitroso compounds being recorded."[188] In other words, GSK intentionally engineered the study to exclude the very samples most likely to contain the dangerous carcinogen.

547.     Notwithstanding the above information that was readily available to GSK relating to the nitrosation potential and formation of nitrosamines, GSK conducted an internal study to assess the formation of NDMA and found that ranitidine, when exposed to sodium nitrite, formed hundreds of thousands of nanograms of NDMA. Shockingly, this GSK study was never published or disclosed to the public.

548.     In or around 1989, GSK



---

[188] *Id.*

[189] GSKZAN0000370626.

[190] *Id.*

549.    Pfizer ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████.[191]   A sampling of those studies included:

- M. Robinson, S. Rodriguez-Stanley, A. A. Ciociola, J. Filinto, S. Zubaidi, P. B. Miner, J. D. Gardner, Synergy between low-dose ranitidine and antacid in decreasing gastric and oesophageal acidity and relieving meal induced heartburn, Ovid (September 2001);

- Jerry D. Gardner, Arthur A. Ciociola, Malcolm Robinson, Measurement of meal-stimulated gastric acid secretion by in vivo gastric autotitration, Translational Physiology (September 26, 2001);

- M. Robinson, S. Rodriguez-Stanley, P.B. Miner, A.J. McGuire, K. Fung, A.A. Ciociola, Effects of antacid formulation on postprandial oesophageal acidity in patients with a history of episodic heartburn, Aliment Pharmacol Ther (September 28, 2001);

- A.A. Ciociola, M.A. Sirgo, K.A. Pappa, J.A. McGuire, K. Fung, A Study of the Nonprescription Drug Consumer's Understanding of the Ranitidine Product Label and Actual Product Usage Patterns in the Treatment of Episodic Heartburn, National Center for Biotechnology Information (Nov-Dec. 2001);

- J.D. Gardner, A.A. Ciociola, M. Robinson, R. L. McIsaac, Determination of the time of onset of action of ranitidine and famotidine on intra-gastric acidity, Aliment Pharmacol Ther (March 12, 2002);

- Michael G. Donnelly, Ileana Alexander, Jennifer Clarkson, Wieslaw Bochenek, J. Anthony McGuire, Arthur A. Ciociola, Richard L. McIsaac, Single-Dose Non-Prescription Ranitidine 75mg Is Superior To Single-Dose Omeprazole 20mg For Prevention Of Postprandial And Nighttime Heartburn Following A Provocative Meal, AJG (2003); and

- S. Rodriguez-Stanley, A.A. Ciociola, S. Zubaidi, H.M. Proskin, P.B. Miner Jr., A single dose of ranitidine 150 mg modulates oesophageal acid sensitivity in patients with functional heartburn, Aliment Pharmacol Ther (August 12, 2004).

---

[191]   GSKZAN0000022775; PFI00276866.

550. ██████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████      ██████████████████████

██████████████████████████████████████████████████

██████████████████████████████    ████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████"[192]   Pfizer/Warner-Lambert

clearly understood that safety was material to consumers and to regulators.

551.    In April 1999, Arthur Ciociola ("Ciociola") and others authored a study entitled, "A double-blind, placebo-controlled study of the efficacy and safety of non-prescription ranitidine 75 mg in the prevention of meal-induced heartburn."[193]  Any study into the safety of ranitidine in the environment of the human stomach would have required its authors to read and be familiar with the 1981 De Flora study, and the several other studies that followed establishing that ranitidine transformed into NDMA in the stomach.

552.    ██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████"[194]

---

[192]  PFI00239322.

[193]  National Library of Medicine, https://pubmed.ncbi.nlm.nih.gov/10215730/.

[194]  PFI00276866.

553.   ███████████████████████████████████████████████

████████████████████████████████[195]      ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

554.   In addition, many Pfizer employees who were responsible for safety, marketing, and sales of OTC Zantac followed the drug to BI and then ultimately to Sanofi.

555.   Based on readily available studies in medical literature and their own studies, BI and Sanofi also knew that ranitidine posed material safety risks or recklessly disregarded the material safety risks, and yet, they omitted from disclosure the material safety risks from their statements to consumers and the public.  As a manufacturer of Ranitidine-Containing Products from 1997-1998 and 2006-2019, BI was required to conduct stability testing.  So too was Sanofi, ████████████████████████████████████████████ A sampling of studies conducted and/or funded by BI include:

- Michael L. Cappola, A Better Dissolution Method for Ranitidine Tablets USP, Pharmaceutical Development and Technology (January 25, 2001); and

- Boehringer Ingelheim International, Boehringer Ingelheim BI Trial No. 1144.3 Synopsis, Tabulated Trial report (November 12, 2009).

556.   Moreover, the RICO Defendants each, individually and collectively, actively tracked contemporaneous developments on the science behind ranitidine.

557.   As the RICO Defendants ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[195]  PFI00361767.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████[196]   ████████████████████████

██████████

558.   ███████████████████████████████   there is no

question of material fact that it has been widely known within the medical and scientific

community for over 40 years that NDMA is toxic and a known carcinogen and that the RICO

Defendants themselves knew of the dangers of NDMA.

559.   █████████████   GSK   ████████████████████

████████████████████████████████████████████

███████████████████[197]   ███████████████████

████████████████████████████████████████████

██████████████████████████████████  ██  ████

████████████████████████████████████████████

██████████  *Id.*

560.   ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[196]   SANOFI_ZAN_MDL_0000033849 at 3873.

[197]   GSKZAN0000236640.

████████ ██ ████████████████████████████████

████████████████████████████████████████████

████████ ████ █ ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████ ██

561.  ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ ██ Subsequently, GSK █

██████████████████████████████████████████ ██

████████████████████████████████████████████

██████████████████████████ ,"203 ████████████████

████████████████████████████████████████████

---

[198]  GSKZAN0000369506.

[199]  GSKZAN0000257640.

[200]  *Id.*

[201]  GSKZAN0000163882.

[202]  *See* GSK Letter to Healthcare Professionals (Prescribers and Pharmacists), *Information About the Recent Recalls of Certain Zantac (Ranitidine Hydrochloride) Medicines* (Oct. 3, 2019), https://www.hpra.ie/docs/default-source/Safety-Notices/gsk-hcp-letter-03oct2019.pdf.

[203]  GSKZAN0000178581.

██████████████████████████████████████████████

████████████████████████████████████████ ██

562.    Likewise, Sanofi ████████████████████████████

████████████████████████████████████ ██ Sanofi

██████████████████████████████████████████████

██████████████████████████████████████████████

███████ ██ ██████████████████████████████████

████████████████████████████████████ *Id.*

563.    There is currently an open investigation of GSK and Sanofi being conducted by the DOJ relating to the failure to disclose information about the potential presence of NDMA in Zantac.[207]

564.    Based on the abundance of published studies and other information described above, there can be no doubt about the RICO Defendants' knowledge about the material safety risks of NDMA in Zantac and NDMA's known carcinogenic risks.

565.    ██████████████████████████████████████



██████████████ GSK ████████████████████████████

██████████████████████████████████████████████

███████████ ████████████████████████████████

---

[204]  GSKZAN0000172037.

[205]  SANOFI_ZAN_MDL_0000169790.

[206]  SANOFI_ZAN_MDL_0000206858.

[207]  Sanofi, Half-year Financial Report (2020 ed.), https://www.sanofi.com/-/media/Project/One-Sanofi-Web/Websites/Global/Sanofi-COM/Home/en/investors/docs/2020_07_29_HY_financial_report_EN.pdf.



---

[208] GSKZAN0000240003.

[209] *Id.*

[210] *Id.*

[211] *Id.*

[212] GSKZAN0000170787, *et seq.*

[213] *Id.*

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

568.    There is currently an open investigation of both GSK and Sanofi being conducted by the DOJ relating to the failure to disclose to the federal government information about the potential presence of NDMA in Zantac.[215]

### 4.    The RICO Defendants Conducted an Association-In Fact Enterprise

569.    Having created an inherently unstable, unsafe, and worthless product, the RICO Defendants had to conceal the truth from consumers in order to continue to market and profit off the sale of OTC Zantac.  To do so, each RICO Defendant was employed by or associated with, and conducted or participated in the affairs of, one or several RICO enterprises (the "Zantac OTC Enterprise"), as described below, with the common purpose of increasing sales of OTC Zantac,[216] while omitting the material safety risks posed by ranitidine, which rendered the RICO Defendants' OTC Zantac (and other Ranitidine-Containing Products) worthless.

570.    The Zantac OTC Enterprise consisted of at least the following entities and individuals and likely others:

> (a)    Sanofi S.A. is a French multi-national pharmaceutical company headquartered in Paris and listed on the NASDAQ.  As of June 8, 2020, it had a market capitalization of $63.7 billion.  The other Sanofi Defendants are not publicly traded and thus have no SEC reporting obligations, but they

---

[214]  *Id.*

[215]  Sanofi, Half-year Financial Report, *supra* n.207.

[216]  BOE_ZAN_MDL_0000582699 (████████████████████████████████████████ ████████████████████████████████████████); GSKZAN0000387538 ████████ ███████████████████████████████████

have reporting obligations, protections, and responsibilities unique to their respective home states.

(b)     BI is a German multi-national company and one of the world's largest pharmaceutical companies and the largest private one.  BI operates with 146 affiliates and is owned by the Boehringer, Liebrecht, and von Baumbach families.

(c)     Pfizer is an American multi-national pharmaceutical company headquartered in New York City and listed on the New York Stock Exchange.  As of June 8, 2020, it had a market capitalization of $203 billion. Other Pfizer entities or divisions, such as Warner-Lambert Consumer Healthcare, are not publicly traded and thus have no SEC reporting obligations, but they have reporting obligations, protections, and responsibilities unique to their respective home states.

(d)     GlaxoSmithKline plc is a British multinational pharmaceutical company headquartered in the United Kingdom and listed on the New York Stock Exchange.  As of June 8, 2020, it had a market capitalization of $105 billion. The other GSK Defendants are not publicly traded and thus have no SEC reporting obligations, but they have reporting obligations, protections and responsibilities unique to their respective home states.

571.     Through their contractual and personal relationships, the members of the Zantac OTC Enterprise had the opportunity to form and take actions in furtherance of this common purpose.  Indeed, the RICO Defendants could only achieve their common purpose if they worked together.  Had even one RICO Defendant chosen not to participate in the scheme – to tell the truth and conduct the studies necessary to confirm the presence of NDMA – the entire house of cards would have fallen.  This point is evidenced by the fact that when the FDA learned the truth – that ranitidine transformed into a dangerous known carcinogen, NDMA – it ordered all Ranitidine-Containing Products to be immediately withdrawn.

572.     In order to unlawfully increase the demand for OTC Zantac, the RICO Defendants devised and knowingly carried out a material scheme to defraud consumers and the public by concealing the material safety risks of Ranitidine-Containing Products, including OTC Zantac.

They devised a marketing campaign that was national in scope, spanned decades, and uniformly omitted that ranitidine transforms into NDMA – a known human carcinogen.

573.    The RICO Defendants engaged in pervasive and decades-long campaign of omissions, along with co-conspirators, in messages to consumers and the public to conceal the existence of, and material safety risks posed by, NDMA in OTC Zantac.

574.    The scheme devised, implemented, and conducted by the RICO Defendants was a common course of conduct designed to ensure that the RICO Defendants unlawfully increased their sales and profits through concealment about the dangerous nature of OTC Zantac.  The RICO Defendants acted together for a common purpose and perpetuated the Zantac OTC Enterprise's scheme, including through uniform omissions of OTC Zantac's material safety risks from branded and unbranded marketing, labels, and statements and studies to the public, including a failure to warn consumers through the FDA.

575.    There was regular communication between and among the RICO Defendants directly and through industry groups and key opinion leaders ("KOLs"), in which information was shared, omissions and concealment were coordinated, and payments were exchanged.  Typically, the coordination, communication, and payment occurred through the repeated and continuing use of the wires and mail in which the RICO Defendants shared information.  The RICO Defendants, and their unnamed co-conspirators, functioned as a continuing unit for the purpose of implementing the Zantac OTC Enterprise's scheme and common purpose, and each agreed and took actions to hide the scheme and continue its existence.

576.    The RICO Defendants were willing participants in the Zantac OTC Enterprise, had a common purpose and interest in the object of the scheme, and functioned within a structure designed to effectuate the Enterprise's purpose.

577.     Each participant in the Zantac OTC Enterprise had a systematic linkage to others through corporate ties, contractual relationships, financial ties, and continuing coordination of activities, including promotional activities, through KOLs, industry trade groups, journal articles, medical studies, and continuing medical education.

578.     Following the FDA's 1983 approval for prescription Zantac, it quickly became GSK's most successful product – a "blockbuster."  Indeed, Zantac became the first prescription drug in history to reach $1 billion in sales.  To accomplish this feat, GSK entered into a joint promotion agreement with Hoffmann-LaRoche, Inc. in December 1982.  ████████████████ █████████████████████████████████████████████████.[217] More salespersons drove more sales and blockbuster profits for GSK.

579.     In June 1986, the FDA approved Zantac for maintenance therapy of duodenal ulcers and for treatment of patients with GERD.  █████████████████████████████████ █████████████████████████████████████████████████ █████████████████████████████████████████████████ █████████████████████████████████████████████████ ████████████████.[218]

580.     Recognizing the economic boon of a prescription-to-OTC switch campaign, in █████████████████████████████████████████████████ ███████████████████████████████████.[219] As part of this letter agreement signed in 1993, Glaxo and Warner-Lambert agreed to share development costs

---

[217] GSKZAN0000348881; GSKZAN0000348871.

[218] GSKZAN0000387538.

[219] GSKZAN0000022775.

and profits equally.  Glaxo also was to receive a royalty on all OTC Zantac sales made by the joint venture.  There was going to be a six-member management committee with three representatives from each company, while day-to-day management responsibilities were assigned to Warner-Lambert.[220]

581.    At a July 28, 1993 securities analysts meeting in New York City, Warner-Lambert Consumer Products Sector President John Walsh ("Walsh") noted that OTC Zantac was currently entering Phase III trials and that Warner-Lambert was "just entering into a series of discussions with Glaxo relative to the development plans."  Warner-Lambert, Walsh reported, "is excited by the prospects Zantac has as a next-generation OTC and we have the resources in place to take full advantage of such an opportunity."[221]

582.    On December 19, 1995, Glaxo and Warner-Lambert's joint development garnered the FDA's approval of OTC Zantac 75 mg tablets, through NDA 20-520.

583.    On December 20 1995, Glaxo Wellcome and Warner-Lambert signed a new agreement, wherein Glaxo Wellcome and Warner-Lambert created a new company, Warner Wellcome Consumer Healthcare.  The terms of that deal related to Zantac stay largely the same: a 50/50 split on Zantac and on other Glaxo Rx products coming down the pipe to the OTC market.[222] The joint venture also appeared to include OTC versions of Zovirax and Beconase.[223]

---

[220] The Tan Sheet, *Warner-Lambert Spells Relief Z-A-N-T-A-C: Rx-to-OTC Joint Venture with Glaxo* (Aug. 2, 1993), https://pink.pharmaintelligence.informa.com/PS081757/.

[221] *Id.*

[222] The Associated Press, *Warner-Lambert in a Deal for Rights to 5 Top Drugs*, THE NEW YORK TIMES (Dec. 20, 1995) https://www.nytimes.com/1995/12/20/business/warner-lambert-in-a-deal-for-rights-to-5-top-drugs.html.

[223] *Id.*

584.     In 1998, the FDA approved the OTC Zantac 75 mg effervescent tablets through NDA 20-745.

585.     Having secured OTC Zantac approval and launched it to rapid success, Glaxo Wellcome and Warner-Lambert dissolved their joint development and shared OTC profits-partnership in December 1998.  Of course, this did not spell the end of their ongoing relationship and financial ties, which continued on through GSK and Pfizer.  As part of the dissolution, Warner-Lambert Co. retained control over the OTC NDA for Zantac and the Zantac trademark in the United States and Canada, but it was required to obtain approval from GSK prior to making any product or trademark improvements or changes.  GSK retained rights to sell OTC Zantac outside of the United States and Canada[224] and retained control over the Zantac trademark internationally.[225]  GSK continued to manufacture the product for many years, and many former GSK employees responsible for work on OTC Zantac moved with the product to Warner-Lambert to continue their work, ███████████████.

586.     In 2000, Pfizer acquired Warner-Lambert Co.  Pfizer controlled the Zantac OTC NDAs until December 2006, and during the time that Pfizer owned the rights to OTC Zantac, GSK continued to manufacture the product.

587.     In October 2000, GSK sold Pfizer the full rights to OTC Zantac in the United States and Canada pursuant to a divestiture and transfer agreement.  As part of that agreement, GSK divested all domestic OTC Zantac assets to Pfizer, including all trademark rights.  The agreement removed the restrictions on Pfizer's ability to seek product line extensions or the approval for

---

[224]  GSK also still held the right to sell prescription Zantac in the United States.

[225]  PFI00245109.

higher doses of OTC Zantac.  GSK retained the right to exclusive use of the Zantac name for any prescription Ranitidine-Containing Product in the United States.

588.    GSK continued manufacturing and marketing prescription Zantac in the United States until 2017 and still holds the NDAs for several prescription formulations of Zantac.  GSK continued to maintain manufacturing and supply agreements relating to various formulations of both prescription and OTC Zantac.  According to its recent annual report, GSK claims to have "discontinued making and selling prescription Zantac tablets in 2017 . . . in the U.S."[226]

589.    In October 2003, Pfizer submitted NDA 21-698 for approval to market OTC Zantac 150 mg.  The FDA approved NDA 21-698 on August 31, 2004.

590.



591.

592.    BI owned and controlled the NDA for OTC Zantac between December 2006 and January 2017, and manufactured, marketed, and distributed the drug in the United States during

---

[226] GlaxoSmithKline, plc, Annual Report, at 37 (2019), https://www.gsk.com/media/5894/annual-report.pdf.

[227] PFI00191352.

that period.[228] Additionally, from 1997 through 1999, BI also manufactured generic prescription Ranitidine-Containing Products under the ANDA 24662.

593.    In 2017, BI sold the rights of OTC Zantac to Sanofi pursuant to an asset swap agreement.  As part of that deal, Sanofi obtained control of and responsibility for BI's entire consumer healthcare business, including the OTC Zantac NDAs.  As part of this agreement, BI and Sanofi entered into a manufacturing agreement wherein BI continued to manufacture OTC Zantac for Sanofi.  A number of BI's employees involved in the manufacture, marketing, sale and safety of OTC Zantac followed the product and went to work for Sanofi.

594.    Sanofi controlled the OTC Zantac NDAs and marketed, sold, and distributed OTC Zantac in the United States from January 2017 until late 2019, when it issued a global recall and ceased marketing, selling, and distributing OTC Zantac.  ██████████████████████████████████████████████████████████████████████.[229]

595.    Throughout the time that Sanofi controlled the OTC Zantac NDAs, Boehringer Ingelheim Promeco, S.A. de C.V. and Patheon Manufacturing Services LLC manufactured that finished drug product.

596.    Additionally, the RICO Defendants participated together in, were members of, or funded industry groups where they communicated regularly about scientific studies and messaging related to, among other things, ranitidine, nitrosamines, and Zantac.  Such groups included the Consumer Healthcare Products Association ("CHPA") f/k/a the NonPrescription Drug Manufacturers' Association, the Oklahoma Foundation for Digestive Research ("OFDR"), American College of Gastroenterology ("ACG"), and the Joint Pharmaceutical Analysis Group.

---

[228]  BI also owned and controlled ANDA 074662.

[229]  SANOFI_ZAN_MDL_0000208478.

597.    The CHPA is a national trade association representing the manufacturers and marketers of OTC medicines and dietary supplements.[230]  It is a multi-faceted organization serving over 180 members.[231] ███████████████████████████████████

██████[232] to working groups dedicated to discrete topics[233] – ███████████████████

████.[234]  The CHPA's endeavors have been, and still are, inextricably intertwined with the RICO Defendants.   Indeed, several RICO Defendants have played prominent CHPA roles.  ████████

████████████████████████████████████ ██ ████████████████████

████████████████████ ████ ████████████████████ ██ ████████

███████████████████████████████████████████████████

███████████████ ██ ████████████████████████████████

---

[230] CHPA, https://www.chpa.org/#:~:text=Founded%20in%201881%2C%20the%20Consumer,supplements%2C%20and%20consumer%20medical%20devices (last visited Feb. 21, 2021).

[231] CHPA, https://my.chpa.org/Directories/Member-Companies (last visited Feb. 21, 2021).

[232] BOE_ZAN_MDL_0000816919.

[233] CHPA, https://my.chpa.org/Directories/Our-Committees (last visited Feb. 21, 2021).

[234] SANOFI_ZAN_MDL_0000041077.

[235] PFI00277224.

[236] SANOFI_ZAN_MDL_0000072832.

[237] CHPA, https://my.chpa.org/Directories/Board-of-Directors (last visited Feb. 21, 2021).

[238] BOE ZAN MDL 0000538114;  *see  also*  BOE ZAN MDL 0000528658  (███████ ██ ████████████████████████████████████████████████████).

██████████ ████████ ████████████████████████████████ ██ Each of these functions ensure and collaboration among the RICO Defendants.

598.    The RICO Defendants also participated in and communicated through the Pharmaceutical Research and Manufacturers of America ("PhRMA").  PhRMA is a trade group that represents pharmaceutical companies with a mission to conduct effective advocacy for public policies that benefit the pharmaceutical manufacturing industry.[241]  It engages in lobbying and influencing regulatory agencies to adopt policies that benefit the industry.

599.    The RICO Defendants are all current members of PhrRMA,[242] and their employees participate in PhRMA-led task forces, including ███████████████████████████ ████████████████████████████████████████ ██████████ ████████ ████████████████████████ ██████████████

600.    The RICO Defendants were also participants in several industry advisory groups, including the ███████████████████████████████████ ███████████████████████████████████ ██████████████ Advisory groups like ██████████████████████

---

[239] PFI00322537 ████████████████████████████ ██████████████).

[240] SANOFI_ZAN_MDL_0000040919 (████████████████████████ ████████████████████████████ █████████).

[241] PhRMA, https://www.phrma.org/About/Our-Mission (last visited Feb. 21. 2021).

[242] PhRMA, https://www.phrma.org/about/members (last visited Feb. 21. 2021).

[243] Gee was deposed as the BI Regulatory 30(b)(6) witness in October 2020.

████████████ are made up of employees from member pharmaceutical companies and KOLs. They are convened regularly to discuss information about pharmaceuticals – notably medical study results – and have been criticized as marketing vehicles to sway physician, causing them to become biased in favor of the drugs being discussed. ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████.[244] Such collaboration often culminated in publications or presentations advancing the views of the participants that did not disclose the material safety risks posed by Ranitidine-Containing Products.

601.    The RICO Defendants also worked with and funded studies and speeches by KOLs.[245]   One such KOL is ███████████████████████████████

████████████████████████████████████████

████████████[246] BI, likewise ██████████████████████████

██ ████ ██ ██ ██████ ██ ████ █ ██ ████████ ████

████████████████████████████████████████

---

[244] GSKZAN0000254228; GSKZAN0000230192.

[245] This activity is very similar to the allegations in the 2012 DOJ matter. As outlined in the Section VI of the Complaint, "GSK Paid Kickbacks to Physicians and Others to Induce them to Prescribe and Recommend GSK Drugs" available at https://www.justice.gov/sites/default/files/opa/legacy/2012/07/02/us-complaint.pdf.

[246] PFI00320009.

██████████████████████████████[247] Public records show that ███████ earned speaking

and consulting fees from GSK in at least 2010-2012 and 2017.[248]

602.    Another KOL used by the RICO Defendants is ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████ ██████████████████████████

█████████████████████ ████████ ██████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ ██

603.    Yet another KOL used by the RICO Defendants ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████ ████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████ ██████████████████

████████████████████████████████████████████████████████████

---

[247] BOE_ZAN_MDL_0000676196.

[248] Mike Tigas et al., *Dollars for Docs: How Industry Dollars Reached Your Doctors*, PROPUBLICA (Oct. 17 2019), https://projects.propublica.org/docdollars/.

[249] GSKZAN0000294303.

[250] GSKZINDA0000006780.

[251] PFI00270211.



605.   The Zantac OTC Enterprise began no later than December 1993, when Glaxo Wellcome plc entered into a partnership agreement with Warner-Lambert Co. to develop and market OTC Zantac.  It ended no earlier than September 9, 2019, when Valisure filed its Citizen's Petition and the truth was finally disclosed to the public.

606.   The Zantac OTC Enterprise had a continuous, uninterrupted, decades-long existence that was sufficient to permit the RICO Defendants to pursue the common purpose of the Zantac OTC Enterprise.

### 5.   The RICO Defendants Developed and Implemented a Scheme to Mislead the Public, Including the RICO Plaintiffs

607.   The RICO Defendants, by and through the Zantac OTC Enterprise, concealed the material safety risks of Zantac from consumers and the public, including the RICO Plaintiffs, in

---

[252] BOE_ZAN_MDL_0000676196.

[253] BOE_ZAN_MDL_0000676196.

[254] Tigas, *supra* n.248.

national marketing materials and on labels, in nationally distributed scientific articles, and in regulatory filings and communications with the FDA.

608.    Despite knowing that OTC Zantac and other Ranitidine-Containing Products presented a dangerous and unreasonable risk of injury to consumers through elevated levels of NDMA, the RICO Defendants omitted information in their statements to consumers and the public that would have disclosed OTC Zantac's material safety risks.

### a.    GSK's Early Marketing and Sale of Prescription Zantac Lays the Foundation for OTC Zantac

609.    From its introduction into the market in July 1983, prescription Zantac 150mg tablets rapidly ballooned into the highest grossing pharmaceutical in history at that time. ████

████████████████████████████████████████   ████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████   ████████████████████████████████████

███████████████████████████████████.[255]

610.    Sales pitches and marketing materials to doctors and in industry publications during those early years catapulted prescription Zantac to blockbuster success.  But Glaxo did not disclose that use of ranitidine exposed consumers to unreasonably dangerous levels NDMA.

611.    ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

    •    ████████████████████████████████████████████████████
        ██████████████████████████████████[256]

---

[255]  GSKZAN0000387538.

[256]  GSKZAN0000387451.

- ███████████████████████████████████████████[257]

- █████████████████████████████████████████████
  ████████[258]

612.    In the same memo, GSK ████████████████████

████████████████████████████████████████

- █████████████████████████████████████████████
  █████████████████████

- █████████████████████████████████████████████
  ██████████████████████████

- █████████████████████████████████████████████
  █████████████████████████████

- █████████████████████████████████

- █████████████████████████████████████████████
  █████████████████████

- █████████████████████████████████████████████
  █████████████████████████████████████████████
  █████████████████████████████████[259]

613.    █████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

---

[257] GSKZAN0000387451.

[258] GSKZAN0000387451.

[259] *Id.*



614.

615.     In 1990, GSK ran ads in *Gut*, an international medical journal published by the British Society of Gastroenterology, representing that Zantac was a medication that could be taken "[f]or the lifetime of the disease" that yet again did not disclose the material safety risks.[261]

---

[260] GSKZAN0000387538.

[261] *Advertising*,     31-5     GUT     489     (May     1,     1990), https://gut.bmj.com/content/gutjnl/31/5/local/advertising.pdf; *Advertising*, 31-4 GUT 365 (Apr. 1, 1990), https://gut.bmj.com/content/gutjnl/31/4/local/advertising.pdf; *Advertising*, 31-3 GUT 245 (Mar. 1, 1990), https://gut.bmj.com/content/gutjnl/31/3/local/advertising.pdf.



616.     From at least 1994-1995, GSK placed similar advertisements in *Gut*, touting Zantac

as an effective prophylaxis to prevent duodenal ulcers that omitted the material safety risks:[262]

---

[262] *Advertising*,          35-9          GUT          1155          (Sept.          1,          1994),
https://gut.bmj.com/content/gutjnl/35/9/local/advertising.pdf; *Advertising*, 37-1 GUT 1 (July 1,
1995), https://gut.bmj.com/content/gutjnl/37/1/local/advertising.pdf.



617.    And GSK ran the following newspaper ads in 1995 and 1996, which featured narrative accounts of patients suffering from Acid Reflux Disease visiting their doctors and being prescribed Zantac, which again did not disclose the material safety risks:[263]

---

[263]   BLUEFIELD DAILY TELEGRAPH (Nov. 5, 1995), https://newspaperarchive.com/bluefield-daily-telegraph-nov-05-1995-p-56/ (publication located in Bluefield, WV); ALAMOGORDO DAILY NEWS, (Feb. 25, 1996), https://newspaperarchive.com/alamogordo-daily-news-feb-25-1996-p-40/ (publication located in Alamogordo, NM).



618.   Glaxo's successful marketing of prescription Zantac, which failed to disclose the material safety risks, laid the groundwork for the Zantac OTC Enterprise's public relations and marketing campaign.

**b.      The RICO Defendants Launch OTC Zantac, Uniformly Omitting the Material Safety Risks from Consumer Marketing**

619.   In December 1993, Glaxo partnered with Warner-Lambert to develop and market OTC Zantac.  Such prescription-to-OTC switches were big business at that time, touted by groups like the CHPA as cost-effective healthcare and a matter of patients' right to access.  GSK followed on the footsteps of drugs like Nicorette and Rogaine.

620.   The deal with Warner-Lambert was a huge and necessary boost to Glaxo's plans for a prescription-to-OTC Zantac switch.   Indeed, the OTC market was Warner-Lambert's specialty and an area in which Glaxo itself had little previous experience.[264]

---

[264]  *Warner-Lambert in a Deal for Rights to 5 Top Drugs, supra* n.222.

621.    April 23, 1996 was "Z-Day."  On that day, Glaxo and Warner-Lambert launched OTC Zantac for sale in the United States with a huge advertising blitz.  The launch was a $100 million spend that lit up giant "Z's" on buildings in New York City.[265]

622.    A reporter for THE NEW YORK TIMES wrote at that time, "Z-Day illustrates one of the hottest trends in consumer marketing, so-called Rx to O.T.C. switches, as drug makers rush out nonprescription versions of top-selling prescription drugs, then peddle them through advertising in mass media."[266]

623.    Bob Casale, vice president for gastrointestinal marketing at Warner Wellcome said of the launch, "Zantac on the prescription side was really the product of choice so to speak in the last five years, with more prescriptions than its two competitors combined."  He continued, "The market is primed for Zantac 75 . . . We expect to lead the market very quickly."[267]

624.    By this time, GSK had already positioned Zantac as a safe and effective prescription medication, "trusted by doctors."  Spring boarding on Zantac's safety message from its successful prescription days, Warner Wellcome launched an aggressive marketing campaign that touted the drug as safe and doctor-trusted.  What the direct-to-consumer messaging uniformly concealed, omitted, or failed disclose to consumers is that Zantac carried with it material safety risks established by at least 15 years of scientific research at that time.  That omission was knowing and/or made with reckless indifference to the truth.

---

[265] Stuart Elliot, *THE MEDIA BUSINESS: ADVERTISING; Madison Avenue Girds Itself for Z-Day Today, as a Prescription Drug Goes Over the Counter*, THE NEW YORK TIMES (April 23, 1996), https://www.nytimes.com/1996/04/23/business/media-business-advertising-madison-avenue-girds-itself-for-z-day-today.html.

[266] *Id.*

[267] *Id.*

625.     The 1996 launch began with a national advertising blitz using the tag line: "Zantac 75: The Final Word in Acid Relief."  Brian Dennehy appeared in advertisements for OTC Zantac 75, some of which are still available for view on Youtube.  One such advertisement features Mr. Dennehy standing under the hot sun with a Zantac pill.  He holds up the product and states: "The medicine in Zantac 75 is so trusted that over the last five years, doctors have made it the most prescribed acid-reducing medicine in the world.  It's been a great day."[268]

626.     After Pfizer obtained full rights to the NDAs to sell OTC Zantac in the United States – and while GSK continued to manufacture it – Pfizer continued to omit the material safety risks from its national marketing messages to consumers.

627.     For example, in 2006, Pfizer ran a television advertisement in the United States that depicted a man and a woman standing outside a BBQ restaurant, with the man promising the woman that taking OTC Zantac before their meal would prevent her heartburn.  This advertisement represented that OTC Zantac taken after a meal can provide fast-acting heartburn relief, but it omitted material safety risks in consuming Zantac OTC.

628.     After BI obtained the rights to OTC Zantac NDAs in the United States, it continued to omit the material safety risks from its national marketing messages to consumers.

629.     In 2009, BI ran a television advertisement depicting a woman drinking coffee and eating a burrito at work, with a voiceover saying: "Chug that coffee.  Gulp that burrito.  No matter what life throws at you, you can take the heat.  Until it turns into heartburn.  Good thing you've got what it takes to beat that heat too.  Zantac – it's strong.  Just one pill can knock out the burn."

630.     In 2011, BI also ran a similar television advertisement that depicted a man drinking coffee and eating a hotdog, with a voiceover saying: "Chug that java.  Down that dog.  No matter

---

[268]  YouTube (Sept. 10, 2013), https://www.youtube.com/watch?v=BHxILptxYaM.

what life throws at you, you can take the heat.  Until it turns into heartburn.  Good thing you've got what it takes to beat that heat too.  Zantac – it's strong.  Just one pill can knock out the burn."

631.    From at least 2009-2015, BI represented in OTC Zantac advertisements that the active ingredient ranitidine had been "prescribed by doctors for years to treat millions of patients safely and effectively."[269]



632.    In 2010, BI advertised its "Zantac Beat the Heat Sweepstakes," through both radio[270] and print advertisements.  BI's newspaper advertisements included the slogan, "Zantac BEAT THAT HEARTBURN HEAT," and featured the host of the television program, *Man v.*

---

[269] *See,*      *e.g.*,      Zantacotc.com      (June      8,      2009), https://web.archive.org/web/20090608184215/http://www.zantacotc.com/products/zantac150cool.jsp;      Zantacotc.com      (May      13,      2013), https://web.archive.org/web/20130513180645/http://www.zantacotc.com/products/zantac150cool.jsp.

[270] BI advertised its "Zantac Beat the Heat Sweepstakes" via radio on at least two occasions: in the Cleveland, Ohio market on May 20, 2010, and in the Chicago, Illinois market on June 30, 2010.

*Food*, holding a box of OTC Zantac in front of a basket of buffalo chicken wings.[271]   Another newspaper advertisement[272] placed in the same year showed a pizza with a frowning face and promised that Zantac products would provide "fast and long-lasting heartburn relief":



633.   In each and every one of these advertisements, BI omitted the known safety risk with OTC Zantac or was recklessly indifferent in its representations to consumers.

---

[271]  This advertisement was placed in a Cleveland, Ohio newspaper on May 23, 2010.

[272]  This advertisement was placed in newspapers in Atlanta, Georgia and Dallas, Texas on November 10, 2010.

634.     In 2013, BI announced the introduction of Captain Zantac, "the new face of [the] ZANTAC Brand."[273]   Captain Zantac was a miniature animated fire captain who was used in television, radio, and print advertisements.

635.     In discussing the introduction of Captain Zantac, the first animated character to appear in advertising for OTC heartburn medication, Ross Ullman, the Executive Director of Marketing for BI, stated the use of an "iconic" character serves as a "persuasive and memorable platform to cut through the heartburn advertising clutter and educate consumers on which heartburn solutions are really right for them."[274]   That education omitted the material fact of OTC Zantac's safety risks.

636.     In addition to a prolific presence on American television airways, Captain Zantac was also used and displayed in retail pharmacies to draw attention to Zantac:



---

[273] Boehringer Ingelheim Pharmaceuticals, Inc., *Zantac® Launches Innovative Integrated Marketing Campaign to Educate Consumers on Heartburn Relief*, CISION PR NEWSWIRE (Sept. 9, 2013, 11:00 ET), https://www.prnewswire.com/news-releases/zantac-launches-innovative-integrated-marketing-campaign-to-educate-consumers-on-heartburn-relief-222968201.html.

[274] *Id.*

637.    BI and Sanofi also communicated to consumers via an ostensibly unbranded website without disclosing the instability of ranitidine – the active ingredient in Zantac.

638.    On November 15, 2015, BI bought/registered the domain name rethinkppis.com, which transferred to Sanofi on February 24, 2017.   The unbranded website included data connecting Proton Pump Inhibitors ("PPIs"), a different category of drugs in the antacid market, with increased cardiovascular risks, kidney disease, low magnesium, bone fractures, and gut bacteria, and noted that $H_2$ blockers were not proven to be associated with those same risks:

**PPIs have other safety concerns $H_2$ blockers do not**

- $H_2$ blockers like non-prescription Zantac® have no long-term safety concerns when used as directed or no known clinically significant interactions with other commonly prescribed drugs people may be taking, unlike PPIs such as Nexium®.

- Unlike PPIs, increased risk of fractures of the hip, wrist, and spine have not been reported in clinical studies with $H_2$ blockers.[275]

639.    Neither BI nor Sanofi contemporaneously, or at any time, disclosed on the rethinkppis.com website the dangers of NDMA or that the active ingredient in Zantac – ranitidine – was unstable and broke down into cancer-causing NDMA.

640.    From 2017-2019, Sanofi continued marketing and selling OTC Zantac without disclosing its material safety risks.

641.    In furtherance of these marketing goals, Sanofi retained ownership of the Captain Zantac trademark[276] on or around February 2018 and continued to use Captain Zantac in national television, radio, and print advertisements.

---

[275] RethinkPPIs.com,       *Heartburn       Matters*       (Feb.       19,       2016), https://web.archive.org/web/20160219011903/http://www.rethinkppis.com/.

[276] Justia,   https://trademarks.justia.com/864/26/captain-86426387.html (last visited June 20, 2020).

642.    Captain Zantac (or "Cap Z" as he was colloquially referred to in materials created and used by Sanofi) also maintained an active social media presence, tweeting frequently[277] and inducing consumers to interact with the Twitter account through the use of free giveaways and sweepstakes.



---

[277]  @ZantacOTC, TWITTER, https://twitter.com/.



643.    Cap Z likewise encouraged consumers to purchase OTC Zantac through the use of

social media engagement campaigns.



644.    Captain Zantac was also integrated into Sanofi's other consumer marketing piece,

a branded website called zantacotc.com, which also served to promote the sale of OTC Zantac

without disclosing the material safety risks.

645.    For example, Sanofi presented the following on zantacotc.com:[278]





---

[278] Zantacotc.com (Apr. 5, 2019), https://web.archive.org/web/20190405064719/https:/www.
zantacotc.com/; Zantacotc.com (Feb. 7, 2019), https://web.archive.org/web/20190207202602
/https://www.zantacotc.com/heartburn-relief.html.

646.     Until at least October 8, 2019, Sanofi continued to post Captain Zantac advertisements on ZantacOTC.com and social media, including Twitter and Facebook, without any disclosure of OTC Zantac's material safety risks.

647.     From at least 2018-2019, Sanofi ran a television advertising campaign that featured the slogan, "Eat your way.  Treat your way."  One of these television advertisements depicted a family enjoying "taco night" and a man suffering from heartburn after unexpectedly having pizza for lunch.  Another television advertisement attached to this campaign showed a man and woman at a cookout both rubbing their stomachs in pain in front of a plate of hamburgers, while a voiceover said, "Zantac works in as little as 30 minutes.  Eat your way.  Treat your way."  Neither of these advertisements disclosed the material safety risks with OTC Zantac.

648.     In 2019, Sanofi made the familiar safety representation through its own advertising, which stated that OTC Zantac "has the active ingredient ranitidine, which doctors have prescribed for years to treat millions of patients safely and effectively,"[279] once again omitting the material safety risks.

649.     Indeed, the RICO Defendants ran myriad television, print, radio, and internet ads for OTC Zantac, throughout the United States and to consumers, that uniformly omitted the material safety risks, including:

| First Date | RICO Defendant | Advertising Medium | Title | Market |
|---|---|---|---|---|
| 4/23/1996 | GSK/Pfizer | Television | Zantac 75: The Final Word in Acid Relief | USA |
| 04/17/2006 | Pfizer | Television | MAN OFFERS PEOPLE FAST RELIEF | Salt Lake City, UT |
| 04/28/2006 | Pfizer | Radio | Family Controls Heartburn | Los Angeles, CA |

---

[279] Zantacotc.com (Feb. 7, 2019), https://web.archive.org/web/20190207202602/https://www.zantacotc.com/heartburn-relief.html.

| First Date | RICO Defendant | Advertising Medium | Title | Market |
|---|---|---|---|---|
| 5/4/2006 | Pfizer | Radio | Family Controls Heartburn | Minneapolis, MN |
| 9/9/2006 | Pfizer | Television | MEDICINE DISPLAY | Boston, MA |
| 9/11/2006 | Pfizer | Television | MAN OFFERS PEOPLE MEDICINE | TVL |
| 01/01/2008 | BI | Radio | Woman Calls It Here It Comes Again | Tampa, FL |
| 01/01/2008 | BI | Radio | Woman Calls It Here It Comes Again | New York, NY |
| 01/01/2008 | BI | Radio | Heartburn Isn't Funny | Washington, D.C. |
| 01/01/2008 | BI | Radio | Woman Calls It Here It Comes Again | Baltimore, MD |
| 01/01/2008 | BI | Radio | Man Goes to Bed at Nine | Phoenix, AZ |
| 01/03/2008 | BI | Radio | Heartburn Isn't Funny! | Atlanta, GA |
| 01/03/2008 | BI | Radio | Heartburn! Attack It. Zantac | Tampa, FL |
| 01/03/2008 | BI | Radio | I Will Go to Bed at Nine | Los Angeles, CA |
| 01/04/2008 | BI | Radio | Heartburn! Attack It. Zantac | Orlando, FL |
| 01/04/2008 | BI | Radio | Take Zantac to Relieve Heartburn | Boston, MA |
| 01/07/2008 | BI | Radio | Heartburn! Attack It. Zantac | Los Angeles, CA |
| 01/09/2008 | BI | Radio | The Embarrassing Part of Heartburn | Los Angeles, CA |
| 12/16-17/2008 | BI | Newspaper | Because these days, breakfast while reading the morning paper may be all it takes to trigger heartburn. | Miami, FL |
| 04/08/2009 | BI | Radio | Heartburn Won't Slow You Down | San Francisco, CA |
| 10/12/2009 | BI | Television | Woman Gets Heartburn at Work | USA |
| 11/17/2009 | BI | Television | Woman Gets Heartburn at Work | St. Louis, MO |
| 05/23/2010 | BI | Newspaper | BEAT THAT HEARTBURN HEAT. | Cleveland, OH |
| 09/05/2010 | BI | Television | Beat that Heartburn Heat | Orlando, FL |
| 11/10/2010 | BI | Newspaper | Can't find your usual heartburn remedy? | Atlanta, GA Dallas, TX |
| 08/22/2011 | BI | Television | Fast Relief in a Short Time | USA |
| 01/12/2015 | BI | Magazine | CAPTAIN Zantac IN HEARTBURN RESCUE | USA |

| First Date | RICO Defendant | Advertising Medium | Title | Market |
|---|---|---|---|---|
| 03/02/2015 | BI | Magazine | CAPTAIN Zantac IN HEARTBURN RESCUE | ESPN |
| 06/01/2015 | BI | Radio | Unknown (Spanish) | KLNO-FM (Dallas-Fort Worth) |
| 06/01/2015 | BI | Radio | Unknown (Spanish) | KDXX-FM (Dallas-Fort Worth) |
| 06/01/2015 | BI | Radio | Unknown (Spanish) | KOMR-RM (Phoenix) |
| 06/01/2015 | BI | Radio | Unknown (Spanish) | KHOT-FM (Phoenix) |
| 06/29/2015 | BI | Television | Sabado Gigante | Univision |
| 09/13/2015 | BI | Television | Zantac Heartburn Challenge | LMN |
| 09/27/2015 | BI | Online Video | Take the Challenge | YAHOOENT Video |
| 11/14/2015 | BI | Television | Get Faster Relief | LMN |
| 12/09/2016 | BI | Television | Get the Fast Heartburn Relief | Denver, CO |
| 02/05/2017 | Sanofi | Television | Fast Heartburn Relief | FNEW |
| 03/07/2017 | Sanofi | Online Video | Releases Cooling Sensation in Mouth and Throat | Answers.com Video |
| 06/26/2017 | Sanofi | Television | Better for Heartburn Relief | Portland, OR |
| 11/13/2017 | Sanofi | Television | Best Relief from Heartburn | TVL |
| 04/09/2018 | Sanofi | Television | The Fast Relief | San Francisco, CA |
| 07/03/2018 | Sanofi | Online Video | No Mess Fast Relief Heartburn Night | TLC.com Video |
| 07/27/2018 | Sanofi | Television | Best Relief from Heartburn | Raleigh, NC |
| 03/14/2019 | Sanofi | Online Video | The Fast Relief | Maxpreps.com Video |
| 04/08/2019 | Sanofi | Television | Prevent or Relief Heartburn | San Francisco, CA |
| 04/08/2019 | Sanofi | Online Video | Man & Boy Are Eating Taco in the Dining Table | Xfinity.com Video |
| 04/21/2019 | Sanofi | Television | Relieves It Fast | Atlanta, GA |

      **c.**    **The RICO Defendants Omitted from Disclosure the Material Safety Risks on OTC Zantac Labeling**

650.    The RICO Defendants were required to give adequate directions for the use of OTC Zantac such that a "layman can use [the] drug safely and for the purposes for which it is intended,"[280] and conform to requirements governing the appearance of the label.[281]

651.    "Labeling" encompasses all written, printed, or graphic material accompanying the drug or device,[282] and therefore it broadly encompasses nearly every form of promotional activity, including not only "package inserts" but also advertising.

652.    "Most, if not all, labeling is advertising.  The term 'labeling' is defined in the [FDCA] as including all printed matter accompanying any article.  Congress did not, and we cannot, exclude from the definition printed matter which constitutes advertising."[283]

653.    The RICO Defendants were also responsible for conducting stability testing, that must be "designed to assess the stability characteristics of drug products."[284]  Manufacturers must adopt a written testing program that includes: "(1) Sample size and test intervals based on statistical criteria for each attribute examined to assure valid estimates of stability; (2) Storage conditions for samples retained for testing; (3) Reliable, meaningful, and specific test methods; (4) Testing of the drug product in the same container-closure system as that in which the drug product is marketed; (5) Testing of drug products for reconstitution at the time of dispensing (as directed in the labeling) as well as after they are reconstituted."[285]

---

[280]  21 C.F.R. §201.5.

[281]  *Id.* §201.15.

[282]  *Id.*; 65 Fed. Reg. 14286 (Mar. 16, 2000).

[283]  *United States v. Research Labs., Inc.*, 126 F.2d 42, 45 (9th Cir. 1942) (footnote omitted).

[284]  21 C.F.R. §211.166(a).

[285]  *Id.*

654.    The purpose of stability testing is, in part, to determine the "appropriate storage conditions and expiration dates."[286]  And expiration dates, in turn, must be set to "assure that a drug product meets applicable standards of identity, strength, quality, and purity at the time of use."[287]  An expiration date is "related to any storage conditions stated on the labeling, as determined by stability studies listed in § 211.166."[288]

655.    Each RICO Defendant was required to conduct its own tests to determine and set accurate retest or expiration dates.

656.    The FDA made clear when it first adopted the expiration-date provision that the regulation means what it says.  The purpose of the expiration date is not merely to consider the "stability of a specific active ingredient."  Instead, a compliant expiration date must account for multiple factors, including "the stability of the inactive ingredients, the interaction of active and inactive ingredients, the manufacturing process, the dosage form, the container closure system, the conditions under which the drug product is shipped, stored, and handled by wholesalers and retailers, and the length of time between initial manufacture and final use."[289]

657.    The FDA expressly recognizes that an initial expiration date may not be the final expiration date: "Where data from accelerated studies are used to project a tentative expiration date that is beyond a date supported by actual shelf-life studies, there must be stability studies

---

[286]  *Id.*

[287]  *Id.* §211.137(a).

[288]  *Id.* §211.137(b).

[289]  43 Fed. Reg. 45059 (Sept. 29, 1978).

conducted . . . until the tentative expiration date is verified or the appropriate expiration date determined."[290]

658.    After a drug is approved, a manufacturer (brand or generic) can make changes to its drug application.  To do so, manufacturers must comply with the requirements of §§ 314.70 and 314.71.[291]

659.    Some of the requirements in those regulations require a brand or generic manufacturer of an approved drug to obtain FDA approval before implementing a label change.[292]

660.    But the FDA has long recognized a "changes being effected" ("CBE") supplement that permits a manufacturer to make immediate changes, subject to FDA's post-change review.[293]

661.    A manufacturer of an approved drug can use the CBE supplement to immediately make an "[a]ddition to a specification or changes in the methods or controls to provide increased assurance that the drug substance or drug product will have the characteristics of identity, strength quality, purity, or potency that it purports or is represented to possess."[294]  "A specification is defined as a list of tests, references to analytical procedures, and appropriate acceptance criteria that are numerical limits, ranges, or other criteria for the tests described."[295]

662.    A manufacturer, therefore, need not seek FDA pre-approval to make changes to its stability studies to identify the appropriate expiration date – which must "assure that a drug product

---

[290]  21 C.F.R. §211.166(b).

[291]  *See id.* §314.97(a) (requiring generics to comply with §§314.70, 314.71).

[292]  *Id.* §314.70(b).

[293]  *Id.* §314.70(c)(3), (c)(6).

[294]  *Id.* §314.70(c)(6)(i).

[295]  65 Fed. Reg. 83042 (Dec. 29, 2000).

meets applicable standards of identity, strength, quality, and purity at the time of use"[296] – or to ensure that the drug is shipped and stored under appropriate conditions.

663.    A manufacturer of an approved drug can also use the CBE supplement to make changes "in the labeling to reflect newly acquired information" in order to "add or strengthen a contraindication, warning, precaution, or adverse reaction for which the evidence of a causal association satisfies the standard for inclusion in the labeling under § 201.57(c) of this chapter"; "add or strengthen an instruction about dosage and administration that is intended to increase the safe use of the drug product"; and "delete false, misleading, or unsupported indications for use or claims for effectiveness."[297]

664.    A manufacturer of an approved drug may make minor changes to a label with no approval or notice, so long as that change is described in an annual report.  The illustrative but non-exhaustive list of minor changes includes "[a] change in the labeling concerning the description of the drug product or in the information about how the drug product is supplied, that does not involve a change in the dosage strength or dosage form."[298]

665.    A "minor change" further includes "[a]n extension of an expiration dating period based upon full shelf-life data on production batches obtained from a protocol approved in the NDA."[299]

---

[296] 21 C.F.R. §211.137(a).

[297] *Id.* §314.70(c)(6)(iii)(A), (C), (D).

[298] *Id.* §314.70 (d)(2)(ix).

[299] *Id.* §314.70 (d)(2)(vi); *see also id.* §314.70(d)(2)(vii), (x).

666.     At no time did any RICO Defendant seek to include a warning on the labels for OTC Zantac and other Ranitidine-Containing Products that disclosed to consumers the material safety risks. The FDA never rejected such warnings.

667.     At no time did any RICO Defendant seek to change its label to delete a false or misleading expiration date, or to add a proper expiration date to ensure that OTC Zantac and other Ranitidine-Containing Products would not break down into NDMA prior to human consumption.

668.     Based on the public scientific information, the RICO Defendants knew or recklessly disregarded that NDMA could form in ranitidine.

669.     At no time did any RICO Defendant change its label to disclose the material safety risks by shortening the expiration date.  The RICO Defendants had the ability to unilaterally make such label changes (for both prescription and OTC Zantac) without prior FDA approval pursuant to the CBE regulation.  Had any RICO Defendant attempted such label changes, the FDA would not have rejected them.

670.     Because they failed to include appropriate expiration dates on their products, the RICO Defendants knowingly made false statements in the labeling of their products and knowingly omitted the material safety risks, or made such statements and omissions with reckless disregard to their truth.

671.     No RICO Defendant did so because to include the accurate expiration and thus disclose the material safety risks would have hit their bottom line and frustrated the common purpose of the Zantac OTC Enterprise.

672.     Indeed, if just one of them had disclosed the material safety risks by altering the expiration date, the truth that ranitidine breaks down into NDMA would have quickly become

known to consumers and the public.  The RICO Defendants thus had to work in concert to conceal that risk.

673.    Although ownership of the OTC Zantac NDA's changed hands between the RICO Defendants over the years 1995-2019, GSK continued to manufacture OTC Zantac and to sell prescription Zantac in the U.S. and Zantac OTC internationally, through 2017; GSK and Pfizer shared in profits from OTC Zantac sales for years and GSK continued to manufacture it even after Pfizer owned all the profits from U.S. sales; BI continued to manufacture the OTC Zantac from 2006-2019, both for its own sale and then for Sanofi's; and Sanofi – the last to sell Zantac OTC in the U.S. through 2019 – manufactured generic Ranitidine-Containing Products beginning in 1983, well before it obtained the rights to Zantac OTC.

674.    Thus, at every point in this decades-long sale of OTC Zantac (and other Ranitidine-Containing Products), two or more RICO Defendants mutually profited from the continued and shared concealment of the material safety risks – a profit that would have been lost to all if the truth was disclosed.

> **d.  The RICO Defendants Used KOLS and Industry Groups to Conceal and Omit from Disclosure to the Public the Material Safety Risks**

675.    As described in Section VI.B.3. above and further discussed below, the RICO Defendants controlled and influenced the narrative around the science of ranitidine to conceal the material safety risks.  They designed, funded, and/or published studies, articles, conferences, and speaking engagements, including through KOLs and industry groups, that extolled the virtues of Ranitidine-Containing Products while omitting or recklessly disregarding the material safety risks posed the Ranitidine-Containing Products.

676.    One of the RICO Defendants'



678.    Similarly, on July 19, 2017, the CHPA opposed Citizen Petition #FDA-2017-P-2733, which sought to add a warning label on all OTC products labeled to relieve or prevent heartburn associated with reflux disease, acid indigestion, and sour stomach, that would inform consumers that the products do not eliminate the risk of esophageal cancer.[302]  CHPA's opposition came several months after an article published in the Kidney International linked increased risk of

---

[300]  PFI00277224; BOE_ZAN_MDL_0000762513; PFI00300754.

[301]  BOE_ZAN_MDL_0000822014.

[302]  CHPA, Comments on Citizen's Petition #FDA-2017-P-2733 (July 19, 2017), a.org/sites/default/files/media/docs/2020-10/Comments-to-FDA-CP-Regarding-OTC-Heartburn-Products-07192017.pdf.

kidney damage to prolonged use of heartburn medication.[303]  When reporters reached out to RICO Defendant Pfizer for comments on the article, Pfizer directed them to the CHPA, which provided a statement suggesting the article only pertained to prescription medicines, not OTC products.

679.  ██████████████████████████████████████████

including some RICO Defendants – ███████████████████████████████

████████████████████████████████████████████████████

███████████████████████    ████████████████████████████

████████████████████████████████████████████████████

███████████   █████████████████████   ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████   ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████

680.  The  RICO  Defendants  ███████████████████████████

█████████████████████████████████████   ████████   ██████

████████████████████████████████████████████████████

---

[303] CBS News, *Heartburn Meds Associated with Increased Risk of Kidney Damage, Study Finds* (Feb. 23, 2017), https://www.cbsnews.com/news/heartburn-acid-reflux-drugs-ppi-associated-with-increased-risk-kidney-damage/.

[304] GSKZAN00002524228; GSKZAN0000252753.



681. ███████████████████████████████

682. ███████████████████████████████

683. Additionally, the RICO Defendants ███████████████

---

305 GSKZAN0000254228; *see also* GSKZAN0000253732 (██████████████████████████████████████████ ).

306 GSKZAN0000254228; *see also* GSKZAN0000253732.

307 GSKZAN0000254235.



684.

685.

---

[308] PHRMA0007873.

[309] ███████████████████████████████████

[310] PHRMA0007890.

[311] BOE_ZAN_MDL_0000676196.

[312] BOE_ZAN_MDL_0000613296.



686.   RICO Defendants'

687.   The RICO Defendants'

---

[313] BOE_ZAN_MDL_0000676196.

[314] BOE_ZAN_MDL_0000613296.

[315] BOE_ZAN_MDL_0000676196.

[316] Fass00000005.

[317] GSKZAN0000294303.

[318] *Id.*



688.    Likewise, in a GSK ███████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████████████████████████████████████████[322]

689.    ██████████████████████████████████████████    In  1997,

Obstetrics & Gynecology published a study participated in by Dr. Robinson: "Double-blind,

placebo-controlled study of ranitidine for gastroesophageal reflux symptoms during

pregnancy."[323]   In its conclusion, the study found "the efficacy of ranitidine 150 mg taken twice

---

[319]  *Id.*

[320]  GSKZAN0000342797.

[321]  *Id.*

[322]  GSKZAN0000429010.

[323]  Janet D. Larson, M.D. et al., *Double-blind, Placebo-controlled Study of Ranitidine for Gastroesophageal Reflux Symptoms During Pregnancy*, Obstetrics & Gynecology, Vol. 90, Issue 1, (July 1997), https://www.sciencedirect.com/science/article/abs/pii/S0029784497001269.

daily, rather than once daily, for relief of gastroesophageal reflux symptoms during pregnancy."[324]



[325]

690.    Dr. Robinson also participated in a study and co-authored a manuscript published in 2002 titled "Control of Nocturnal Gastric Acidity: A Role for Low Dose Bedtime Ranitidine to Supplement Daily Omeprazole," which concluded that "[a]lthough the heartburn patients in the present study had nocturnal gastric acidity without accompanying nocturnal esophageal acid reflux, other patients who do have nocturnal esophageal reflux might profit from addition of bedtime ranitidine[.]"[326]

691.



[328]

---

[324]  *Id.*

[325]  BOE_ZAN_MDL_0000018120, BOE_ZAN_MDL_0000018472.

[326]  Malcolm Robinson et al., *Control of Nocturnal Gastric Acidity: A Role for Low Dose Bedtime Ranitidine to Supplement Daily Omeprazole*, SPRINGERLINK (Feb. 2002), https://link.springer.com/article/10.1023/A:1013749501241.

[327]  PFI00358430.

[328]  *Id.*

692.    Finally, the RICO Defendants 

693.

332

694.

---

329 PFI00273106.

330 PFI00429363.

331 *Id.*

332 PFI00358430.

333 BOE_ZAN_MDL_0000676196.



---

[334] BOE_ZAN_MDL_0000613296.

[335] BOE_ZAN_MDL_0000676196.

[336] *Id.*

[337] BOE_ZAN_MDL_0000613296.

[338] BOE_ZAN_MDL_0000603037.

[339] *Id.*

### 6.     Pattern of Racketeering Activity

697.     The RICO Defendants' scheme described herein was perpetrated, in part, through multiple acts of mail fraud and wire fraud, constituting a pattern of racketeering activity as described herein.

698.     The pattern of racketeering activity by the RICO Defendants and the Zantac OTC Enterprise likely involved thousands of separate instances of the use of the U.S. Mail or interstate wire facilities in furtherance of the unlawful Zantac OTC Enterprise, including materially uniform concealments and material omissions in statements to consumers and the public regarding the material safety risks of OTC Zantac, with the goal of profiting from increased sales of the OTC Zantac, induced by consumers and the RICO Plaintiffs' reliance on the RICO Defendants' omissions.

699.     Each of these fraudulent mailings and interstate wire transmissions constitutes racketeering activity and collectively, these violations constitute a pattern of racketeering activity, through which the RICO Defendants defrauded and intended to defraud consumers and other intended victims.

700.     The RICO Defendants devised and knowingly carried out an illegal scheme and artifice to defraud by means of materially false or fraudulent pretenses and omissions of material facts regarding the safety risks of OTC Zantac and other Ranitidine-Containing Products.  The RICO Defendants and members of the Zantac OTC Enterprise knew that the weight of contemporaneous scientific evidence established the existence of the safety risk and that the risk was material to consumers.  They acted with reckless disregard in their statements to consumers and the public, wherein they omitted the material safety risks.  The RICO Defendants intended that that their common purpose and scheme to defraud would, and did, use the U.S. Mail and

interstate wire facilities, intentionally and knowingly with the specific intent to advance, and for the purpose of executing, their illegal scheme.

701.    By intentionally concealing the material risks regarding the safety of Zantac, to consumers and the public, including the RICO Plaintiffs, the RICO Defendants and co-conspirators engaged in a fraudulent and unlawful course of conduct constituting a pattern of racketeering activity.

702.    The RICO Defendants' use of the U.S. Mail and interstate wire facilities to perpetrate the scheme involved thousands of communications, publications, representations, statements, electronic transmissions, payments, including, *inter alia*:

> (a)    Marketing materials about Zantac, and its risks and benefits, which the RICO Defendants transmitted through the internet and television, published, and transmitted to industry groups and KOLs located across the country;

> (b)    Written representations and telephone calls between the RICO Defendants and industry groups regarding the safety and claims about Zantac and/or agreeing to or implementing the marketing scheme;

> (c)    Written representations and telephone calls between the RICO Defendants and KOLs regarding the safety and claims about Zantac and/or agreeing to or implementing the marketing scheme;

> (d)    Written representations and telephone calls between the RICO Defendants and marketing firms regarding the marketing statements and claims about Zantac and/or agreeing to or implementing the marketing scheme;

> (e)    Communications between the RICO Defendants, KOLs, and industry groups regarding messaging around obstacles in scientific literature and emerging studies and the dissemination of the same as part of the Zantac OTC Enterprise;

> (f)    Written and oral communications directed to the FDA that concealed the safety risks of Zantac, thereby preventing the public and consumers from learning the truth; and

> (g)    Receipts of increased profits sent through the U.S. Mail and interstate wire facilities - the wrongful proceeds of the scheme.

703.    In addition to the above-referenced predicate acts, it was intended by and foreseeable to the RICO Defendants that the industry groups and the KOLs would distribute publications about OTC Zantac and ranitidine through the U.S. Mail and by interstate wire facilities, and, in those publications, omit the material safety risks of Zantac and ranitidine.

704.    To achieve the common goal and purpose of the Zantac OTC Enterprise, the RICO Defendants and members of the Zantac OTC Enterprise hid from consumers and the public, including the RICO Plaintiffs: (a) the fraudulent nature of the RICO Defendants' marketing scheme; (b) the fraudulent nature of omissions made by the RICO Defendants and by their co-conspirators and other third parties regarding the safety of OTC Zantac; and (c) the true nature of the relationship between the members of the Zantac OTC Enterprise.

705.    The RICO Defendants, and each member of the Zantac OTC Enterprise agreed, with knowledge and intent, to the overall objective of the RICO Defendants' fraudulent scheme and participated in the common course of conduct.

706.    Indeed, for the RICO Defendants' fraudulent scheme to work, each of them had to agree to implement similar tactics regarding fraudulent marketing of OTC Zantac. This conclusion is supported by the fact that the RICO Defendants each financed, supported, and worked through shared KOLs and industry groups, collaborated on and mutually supported the same publications, presentations, and studies, and disseminated promotional messages about OTC Zantac over the course of the Enterprise that omitted or concealed its material safety risks.

707.    The RICO Defendants' predicate acts all had the purpose of generating billion-dollar revenue and profits for the RICO Defendants. The predicate acts were committed or caused to be committed by the RICO Defendants through their participation in the Zantac OTC Enterprise and in furtherance of its fraudulent scheme. The RICO Plaintiffs have been harmed in their

business or property as a proximate cause of the Zantac OTC Enterprise and the RICO Defendants'
actions taken in furtherance of the same.

### C.     Class Allegations

708.    The RICO Plaintiffs bring this action in their individual capacity and on behalf of
the following RICO Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3),
and/or 23(c)(4):

> **RICO Class:**  All individuals who purchased the RICO Defendants' OTC Zantac
> while a resident of the United States.

709.    Excluded from the RICO Class are Defendants and any of their affiliates, parents,
subsidiaries, officers, and directors; any entity in which Defendants have a controlling interest; all
persons who make a timely election to be excluded from the class; governmental entities; and all
judges assigned to hear any aspect of this litigation, including their immediate family members.

710.    The RICO Plaintiffs reserve the right to modify or amend the definition of the RICO
Class, including to add one or more subclasses, after having the opportunity to conduct discovery.

711.    The RICO Class meets the requirements of Federal Rules of Civil Procedure 23(a),
23(b)(2), 23(b)(3) and/or 23(c)(4).

712.    ***Numerosity.***  The members of the RICO Class are so numerous that joinder is
impracticable.  OTC Zantac has, for decades, been one of the most popular medications for relief
of heartburn, acid reflux, and similar conditions and, thus, it is reasonable to infer that the RICO
Class includes thousands if not millions of members who are geographically dispersed throughout
the country and/or throughout each respective state.

713.    ***Typicality.***  The RICO Plaintiffs' claims are typical of the claims of putative Class
members in that the RICO Plaintiffs' claims arise out of the same common course of conduct that
gives rise to the claims of the other Class members.  Each RICO Plaintiff, like each RICO Class

member, either took or paid money to purchase OTC Ranitidine-Containing Products, including OTC Zantac, manufactured by one or more of the RICO Defendants, which are not safe for human consumption and, thus, the RICO Plaintiffs, like each RICO Class member, suffered loss of the purchase price of OTC Zantac, money lost through overpayment for OTC Zantac, and out-of-pocket loss.  The RICO Plaintiffs, like each Class member, were injured through the RICO Defendants' common course of misconduct, and the RICO Plaintiffs are advancing the same legal theories on behalf of themselves and the Class members.

714.    *Adequacy.*  The RICO Plaintiffs will fairly and adequately protect the interests of the Class members.  The RICO Plaintiffs' interests and the interests of all other members of each respective Class are identical and not antagonistic.  The RICO Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class members' interests.  The RICO Plaintiffs have retained counsel who are competent and experienced in litigating class actions, including litigation of this kind.

715.    *Commonality and Predominance.*  There are numerous questions of law and fact common to the Class, and these common questions predominate over any issues affecting only individual Class members.  Questions common to the Class include, but are not limited to, the following:

> (a)    whether Ranitidine-Containing Products, including OTC Zantac, contain and continue to produce unacceptable levels of NDMA;
>
> (b)    whether the RICO Defendants knew or recklessly disregarded that Ranitidine-Containing Products, including OTC Zantac, pose material safety risks to consumers;
>
> (c)    whether the material safety risk posed by Ranitidine-Containing Products, including OTC Zantac, rendered the drugs worthless;
>
> (d)    whether the RICO Defendants' marketing, advertising, labels, or promotion of ranitidine, including OTC Zantac, omitted, concealed, or failed to

disclose that Ranitidine-Containing Products, including OTC Zantac, posed material safety risks to consumers;

(e)    whether the RICO Defendants' conduct was knowing;

(f)    whether the RICO Defendants conducted an association-in-enterprise in violation of RICO, 18 U.S.C. §1961, *et seq.*;

(g)    whether the RICO Defendants knowingly, willfully, and unlawfully conducted or participated, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§1961(1), 1961(5), and 1962(c);

(h)    whether the racketeering activity was made possible by the regular and repeated use of the facilities, services, distribution channels, and employees of the enterprise;

(i)    whether the racketeering acts were not isolated, but rather were related in that they had the same or similar purposes and results, participants, victims, and methods of commission;

(j)    whether the RICO Defendants committed acts constituting indictable offenses under 18 U.S.C. §§1341 and 1343;

(k)    whether the RICO Defendants used mail and interstate wire communications in furtherance of the enterprise;

(l)    whether there was a common communication network by which the RICO Defendants shared information;

(m)    whether the RICO Defendants engaged in, and its activities affected, interstate and foreign commerce in furtherance of the enterprise;

(n)    whether the RICO Enterprise had an existence separate and distinct form each RICO Defendant;

(o)    whether the RICO Defendants conducted illegitimate business through industry groups;

(p)    whether the RICO Defendants conducted illegitimate business through key opinion leaders;

(q)    whether the members of the RICO Enterprise associated together for the common purpose of concealing the dangers of ranitidine;

(r)    whether the RICO Plaintiffs and the RICO Class members are entitled to recover damages and the appropriate measure of those damages;

(s)    whether the RICO Plaintiffs and the RICO Class members are entitled to recover treble damages; and

(t)      the type and format of injunctive relief that is appropriate.

716.    *Superiority.*  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to an individual plaintiff may not be sufficient to justify individual litigation.  Here, the damages suffered by the RICO Plaintiffs and the RICO Class are relatively small compared to the burden and expense required to individually litigate their claims against the RICO Defendants, and thus, individual litigation to redress the RICO Defendants' wrongful conduct would be impracticable.  Individual litigation by each Class member would also strain the court system, create the potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

717.    *Injunctive and Declaratory Relief.*  Class certification is also appropriate under Rule 23(b)(2) because the RICO Defendants acted and refused to act on grounds generally applicable to the RICO Class as a whole, such that final injunctive relief is appropriate with respect to the Class as a whole.

718.    *Issue Class.*  Particular issues are appropriate for certification under Rule 23(c)(4) because the RICO claim presents particular, common issues, the determination of which would materially advance the resolution of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

(a)      whether the RICO Defendants knew or recklessly disregarded that Ranitidine-Containing Products, including Zantac, pose material safety risks to consumers;

(b)     whether the RICO Defendants concealed the material safety risks posed by Ranitidine-Containing Products, including Zantac, in statements to consumers and the public;

(c)     whether the RICO Defendants' marketing, advertising, labels, or promotion of ranitidine, including Zantac, omitted, concealed, or failed to disclose the material safety risks posed by Ranitidine-Containing Products, including Zantac;

(d)     whether the members of the RICO Enterprise associated together for the common purpose of concealing the dangers of ranitidine; and

(e)     Each RICO Defendant's role in creating and directing the enterprise.

**D.      The RICO Cause of Action**

**COUNT 1**
**Violations of the Racketeer Influenced and Corrupt Organizations Act**
**(18 U.S.C. §1962(c)-(d))**
**(Against RICO Defendants)**

719.    The RICO Plaintiffs incorporate the preceding allegations in paragraphs 484 through 718, as though fully set forth herein.  The RICO Plaintiffs also incorporate by reference paragraphs 475 through 483 above, regarding equitable tolling of the statute of limitations, as though fully set forth herein.

720.    The RICO Plaintiffs bring this Count on behalf of themselves and the RICO Class (for the purpose of this section, the "Class") against the RICO Defendants.

721.    The RICO Plaintiffs and other Class Members are "persons" within the meaning of 18 U.S.C. §1961(3), and each is a "person injured in his [or her] business or property" by reason of the RICO Defendants' violation of RICO within the meaning of 18 U.S.C. §1964(c).

722.    At all relevant times, each RICO Defendant has been a "person" within the meaning of 18 U.S.C. §1961(3) because each was capable of holding "a legal or beneficial interest in property."

723.    The RICO Defendants conduct their business – both legitimate and illegitimate – by and through various affiliates and subsidiaries, each of which is a separate legal entity.

724.    BI operates by and through Boehringer Ingelheim International GmbH, Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Corporation, and Boehringer Ingelheim USA Corporation, among others.

725.    Sanofi operates by and through Sanofi S.A., Sanofi-Aventis U.S. LLC and Sanofi US Services Inc., and Chattem, Inc., among others.

726.    GSK operates by and through GlaxoSmithKline plc, GlaxoSmithKline LLC, and GlaxoSmithKline (America) Inc., among others.

727.    GSK, as it is known today, was created through a series of mergers and acquisitions. In 1989, Smith, Kline & French merged with the Beecham Group to form SmithKline Beecham plc.  In 1995, Glaxo merged with the Wellcome Foundation to become Glaxo Wellcome plc.  In 2000, Glaxo Wellcome plc merged with SmithKline Beecham plc to form GlaxoSmithKline plc and GlaxoSmithKline LLC.  Thus, RICO Defendant GSK, as it is known today, is a continuation of Glaxo and retains all liabilities for the same.

728.    Pfizer also operated by and through various affiliates and subsidiaries at all relevant times.

729.    Pfizer acquired Warner-Lambert, Inc. in 2000 and assumed all assets and liabilities for the same.

730.    The RICO Defendants have also formed joint ventures and other agreements between and among each other at various points in time during the scheme, as detailed herein.

### 1.    The Zantac OTC Enterprise

731.    Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. §1962(c).

732.     Section 1962(d) makes it unlawful for "any person to conspire to violate" Section 1962(c), among other provisions.  *See* 18 U.S.C. §1962(d).

733.     Zantac, the trade name for ranitidine, was for years the world's top selling drug and the first to top $1 billion in annual sales.  The unprecedented success of Zantac was not an accident.  It was the direct result of an aggressive campaign by the RICO Defendants and others to market and sell Zantac to consumers while omitting material safety concerns.  In their quest to reach ever new heights of sales and profits, the RICO Defendants recklessly continued to push Zantac as safe, even as or after they became aware of the NDMA risks associated with ranitidine consumption.

734.     Instead of pulling Zantac from the shelves or warning the public about its safety risks, the RICO Defendants hid the truth.  To do so, each Defendant was employed by or associated with, and conducted or participated in the affairs of, one or several RICO enterprises – the Zantac OTC Enterprise, whose purpose was to conceal or downplay the safety risks of Zantac.  The motivation was simple: to increase the RICO Defendants' revenues and profits from OTC Zantac and minimize their losses from the manufacture and sale of all their Ranitidine-Containing Products.  As a direct and proximate result of their fraudulent scheme and common course of conduct, the RICO Defendants were able to extract billions of dollars from the RICO Plaintiffs and the Class.  It was not until recently that OTC Zantac remained on retail and pharmacy shelves in the United States.  The RICO Defendants' scheme violated Sections 1962(c) and (d) of the RICO statute.

735.     At all relevant times, the RICO Defendants, along with other individuals and entities, including unknown third parties involved in the formulation, manufacture, marketing, and sale of Zantac, operated an association-in-fact enterprise, which was formed for the purpose of

selling OTC Zantac throughout the U.S. and through which enterprise(s) they conducted a pattern of racketeering activity under 18 U.S.C. §1961(4).

736.    At all relevant times, the Zantac OTC Enterprise constituted a single "enterprise" or multiple enterprises within the meaning of 18 U.S.C. §1961(4), as legal entities, as well as individuals and legal entities associated-in-fact for the common purpose of engaging in the RICO Defendants' unlawful profit-making scheme.

737.    The association-in-fact Zantac OTC Enterprise consisted of at least the following entities and individuals, and likely others:

(a)    Sanofi S.A. is a French multinational pharmaceutical company headquartered in Paris and listed on the NASDAQ.  As of June 8, 2020, it had a market capitalization of $63.7 billion.  The other Sanofi Defendants are not publicly traded and thus have no SEC reporting obligations, but they do have reporting obligations, protections and responsibilities unique to their respective home states.

(b)    BI is a German multinational company and one of the world's largest pharmaceutical companies and the largest private one.  BI operates with 146 affiliates and is owned by the Boehringer, Liebrecht, and von Baumbach families.

(c)    Pfizer is an American multinational pharmaceutical company headquartered in New York City and listed on the New York Stock Exchange.  As of June 8, 2020, it had a market capitalization of $203 billion. Other Pfizer entities or divisions, such as Warner-Lambert Consumer Healthcare, are not publicly traded and thus have no SEC reporting obligations but do have reporting obligations, protections and responsibilities unique to their respective home states

(d)    GlaxoSmithKline plc is a British multinational pharmaceutical company headquartered in the United Kingdom and listed on the New York Stock Exchange.  As of June 8, 2020, it had a market capitalization of $105 billion. The other GSK Defendants are not publicly traded and thus have no SEC reporting obligations, but do have reporting obligations, protections and responsibilities unique to their respective home states.

738.    At all relevant times, the Zantac OTC Enterprise:  (a) had an existence separate and distinct from each RICO Defendant; (b) was separate and distinct from the pattern of racketeering

in which the RICO Defendants engaged; and (c) was an ongoing and continuing organization consisting of legal entities, including the Sanofi Defendants, the BI Defendants, the GSK Defendants, Defendant Pfizer, and/or other entities and individuals associated for the common purpose of formulating, manufacturing, distributing, marketing, and selling OTC Zantac to the RICO Plaintiffs and the RICO Class by concealing safety risks and deriving profits and revenues therefrom.

739.    Each member of the Zantac OTC Enterprise shared in the bounty generated by the enterprise, *i.e.*, by sharing the benefit derived from increased sales revenue for OTC Zantac generated by the scheme to defraud Class members nationwide, while concealing the material safety risks that threatened sales of all the RICO Defendants' Ranitidine-Containing Products.  If any member of the Zantac OTC Enterprise had publicly revealed the safety risks, all would lose their revenues and profits from OTC Zantac and their other Ranitidine-Containing Products.

740.    At various points in time, the RICO Defendants entered into joint ventures and/or other agreements concerning the rights to Zantac including for, example, the partnership between GSK and Warner-Lambert resulting in Warner-Lambert Consumer Healthcare; Pfizer's acquisition of Warner-Lambert; BI's acquisition of the rights to OTC Zantac; and Sanofi's acquisition of the rights to OTC Zantac.

741.    The Zantac OTC Enterprise functioned by selling pharmaceutical products.  Many of the products were legitimate, including products that are not known to form NDMA when consumed.  However, the RICO Defendants and their co-conspirators, through their illegal enterprise, engaged in a pattern of racketeering activity, which involves a fraudulent scheme to increase revenues and minimize losses for the RICO Defendants and the other entities and individuals associated-in-fact with the enterprise's activities through their fraudulent scheme.

742.     The Zantac OTC Enterprise engaged in, and its activities affected, interstate and foreign commerce, because it involved commercial activities across both state and national boundaries, such as the marketing, promotion, advertisement, distribution, and sale of Zantac throughout the country and beyond, and the receipt of monies from the sale of the same.

743.     Within the Zantac OTC Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis.  The enterprise used this common communication network for the purpose of formulating, manufacturing, marketing, distributing, and selling Zantac nationwide.

744.     Each participant in the Zantac OTC Enterprise had a systematic linkage to others through corporate ties, contractual relationships, financial ties, and continuing coordination and funding of activities, including promotional activities through KOLs, industry groups, journal articles, medical studies, and continuing medical education programs.  Through the Zantac OTC Enterprise, the RICO Defendants functioned as a continuing unit with the purpose of furthering the illegal scheme and their common purposes of increasing their profits and revenues, as well as minimizing their losses.

745.     The RICO Defendants participated in the operation and management of the Zantac OTC Enterprise by directing its affairs, as described herein.   While the RICO Defendants participated in, and are members of, the enterprise, they have a separate existence from the enterprise, including distinct legal statuses, different offices and roles, bank accounts, officers, directors, employees, individual personhood, reporting requirements, and financial statements.

746.     Each RICO Defendant exerted substantial control over the Zantac OTC Enterprise, and participated in, operated and/or directed the enterprise, by:

    (a)     concealing or downplaying safety risks from the public;

    (b)     formulating, manufacturing, distributing, promoting, and/or selling Zantac;

    (c)      omitting safety risks (or causing such omissions to be made) in promotional materials, advertisements, and other documents;

    (d)      concealing or downplaying safety risks in or through scientific studies;

    (e)      omitting (or causing such omissions to be made) safety risks on communications with regulators, thereby depriving the public of the truth;

    (f)      introducing Zantac into the stream of U.S. commerce with concealed safety risks;

    (g)      entering into joint ventures or agreements concerning the rights to Zantac;

    (h)      persisting in the manufacturing, distribution, marketing, and sale of Zantac even after questions were raised about safety risks;

    (i)      collecting revenues and profits in connection with the sale of Zantac; and/or

    (j)      ensuring that the other RICO Defendants and unnamed co-conspirators complied with the scheme or common course of conduct.

747.    Without the RICO Defendants' willing participation, the Zantac OTC Enterprise's years-long scheme and common course of conduct would have been unsuccessful.

748.    The RICO Defendants directed and controlled the ongoing organization necessary to implement the scheme at meetings and through communications of which the RICO Plaintiffs cannot fully know at present, because such information lies in the RICO Defendants' and others' hands.   Similarly, because the RICO Defendants often refer to themselves as a group (*i.e.*, "Sanofi," "Boehringer Ingelheim," "GSK," etc.), the RICO Plaintiffs cannot fully know the full extent of each individual corporate entity's involvement in the wrongdoing prior to having access to sufficient discovery on this point.

### 2.    Mail and Wire Fraud

749.    To carry out, or attempt to carry out the scheme to defraud, the RICO Defendants, each of whom is a person associated-in-fact with the Zantac OTC Enterprise, did knowingly conduct or participate, directly or indirectly, in the conduct of the affairs of the Zantac OTC Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§1961(1),

1961(5) and 1962(c), and which employed the use of the mail and wire facilities, in violation of 18 U.S.C. §1341 (mail fraud) and §1343 (wire fraud).

750.    Specifically, as alleged herein, the RICO Defendants have committed, conspired to commit, and/or aided and abetted in the commission of, at least two predicate acts of racketeering activity (*i.e.*, violations of 18 U.S.C. §§1341 and 1343).  The multiple acts of racketeering activity that the RICO Defendants committed, or aided or abetted in the commission of, were related to each other, posed a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity."  The racketeering activity was made possible by the RICO Defendants' regular use of the facilities, services, distribution channels, and employees of the RICO Defendants in the Zantac OTC Enterprise.  The RICO Defendants participated in the scheme to defraud by using e-mail, mail, telephone, facsimile, TV, radio, and the internet to transmit mailings and wires in interstate or foreign commerce.

751.    The RICO Defendants used, directed the use of, and/or caused to be used, thousands of interstate mail and wire communications in service of their scheme through identical concealments and material omissions of the safety risk.

752.    In devising and executing the illegal scheme, the RICO Defendants devised and knowingly carried out a material scheme and/or artifice to defraud the RICO Plaintiffs and the RICO Class or to obtain money from them by means of materially false or fraudulent pretenses and omissions of material facts.  For the purpose of executing the illegal scheme, the RICO Defendants committed these racketeering acts, which number in the thousands, intentionally and knowingly with the specific intent to advance the illegal scheme.

753.    The RICO Defendants' predicate acts of racketeering (18 U.S.C. §1961(1)) include, but are not limited to:

      (a)     <u>Mail Fraud</u>: The RICO Defendants violated 18 U.S.C. §1341 by sending or receiving, or by causing to be sent and/or received, materials via U.S. mail or commercial interstate carriers for the purpose of executing their unlawful scheme to manufacture, market, and sell Zantac by concealing or downplaying its safety risks.

      (b)     <u>Wire Fraud</u>: The RICO Defendants violated 18 U.S.C. §1343 by transmitting and/or receiving, or by causing to be transmitted and/or received, materials by wire for the purpose of executing the unlawful scheme to defraud and obtain money by concealing or downplaying the safety risks of Zantac.

754.    The RICO Defendants' use of the mails and wires include, but are not limited to, the transmission, delivery, or shipment of the following, which were foreseeably caused to be sent as a result of the RICO Defendants' illegal scheme:

      (a)     Zantac tablets, capsules, injections, syrup, and/or granules;

      (b)     false or misleading websites containing content regarding ranitidine that omitted the material safety risks;

      (c)     false or misleading industry publications and/or studies about ranitidine that omitted the material safety risks;

      (d)     false or misleading sales and marketing materials, including websites, ads, and brochures that omitted Zantac's material safety risks, such as the multi-media "Captain Zantac" campaign;

      (e)     false or misleading product packaging and labels that concealed material safety risks;

      (f)     false or misleading communications that concealed Zantac's material safety risks from the public;

      (g)     documents and communications that facilitated the scheme, including but not limited to, invoices, shipping records, reports, and correspondence;

      (h)     millions of dollars in compensation to company executives;

      (i)     deposits of proceeds; and/or

      (j)     other documents and things.

755.    The RICO Defendants (or their agents), for the purpose of executing the illegal scheme, transmitted (or caused to be transmitted) in interstate commerce by means of wire

communications, certain writings, signs, signals and sounds, including the items described above
and the following examples:

756.    The RICO Defendants used the internet and other electronic facilities to carry out
the scheme and conceal the ongoing fraudulent activities.  Specifically, the RICO Defendants
omitted the safety risk of Zantac on websites, YouTube, Facebook, Twitter, and other online
advertising, all of which were intended to mislead the public and regulators.

| **From** | **To** | **Date** | **Description** |
|---|---|---|---|
| Sanofi subsidiary, Chattem Inc., Chattenooga, Tennessee | Twitter, San Francisco, California | September 3, 2019 | Twitter feed: "The Captain likes his wings 4-alarm spicy." |
| Sanofi subsidiary, Chattem Inc., Chattenooga, Tennessee | YouTube, San Mateo, California | July 3, 2019 | Online Video Ad: "S. O. Neal: No Mess Fast Relief Heart Burn Night" |
| Sanofi subsidiary, Chattem Inc., Chattenooga, Tennessee | YouTube, San Mateo, California | March 14, 2019 | Zantac TV Commercial, "Family Taco Night" |
| GSK, United Kingdom | US Healthcare Professionals via GSK Direct website | Throughout 2018 | Zantac 150 Tablets 500's product description for US Healthcare professionals online |
| Boehringer Ingelheim Pharmaceuticals, Inc., Ridgefield, Connecticut | YouTube, San Mateo, California | March 7, 2017 | Online Video Ad: "Releases Cooling Sensation in Mouth and Throat" |
| Boehringer Ingelheim Pharmaceuticals, Inc., Ridgefield, Connecticut | Sanofi US, Bridgewater, New Jersey | February 24, 2017 | Transfer of domain ownership of "RethinkPPIs.com" website claiming that non-prescription Zantac has "no long-term safety concerns." |
| Boehringer Ingelheim Pharmaceuticals, Inc., Ridgefield, Connecticut | PR Newswire, New York, New York | September 9, 2013 | Press release re: launch of "Captain Zantac™" 360-degree brand equity campaign with national TV ads, print, online, and retail advertising |

| From | To | Date | Description |
|---|---|---|---|
| Boehringer Ingelheim Pharmaceuticals, Inc., Ridgefield, Connecticut | ESPN Magazine, Bristol, Connecticut | March 2, 2015 | Print Ad: "CAPTAIN Zantac IN HEARTBURN RESCUE: Stop! That heartburn pill can take 24 hours to work! Zantac is different! Zantac rushes relief in as little as 30 minutes. Zantac. No pill relieves heartburn faster!" |
| Pfizer Consumer Healthcare, Richmond, Virginia | Madison Wisconsin State Journal | November 2, 2003 | Print Ad: "Zantac 75 relieves heartburn fast, right when you need it. Prilosec OTC doesn't." |
| Sanofi US, Bridgewater, New Jersey | ZantacOTC.com, Twitter, San Francisco, CA | October 8, 2019 | Social media posts direct to ZantacOTC.com with Captain Zantac picture: "Get fast relief with Zantac! . . . long lasting heartburn relief." |

757.    The RICO Defendants also used the internet and other electronic facilities to carry out the scheme and conceal the ongoing fraudulent activities by sending communications between themselves and industry groups.

| From | To | Date | Description |
|---|---|---|---|
| Pfizer Global Quality Intelligence & Compendial Affairs | Pfizer, GSK, ███████ ███████ ███ and others | June 7, 2019 | ████████████████ |
| Gilead Sciences, ███████ ███ Pfizer, GSK | GSK, BI, Pfizer, Sanofi, and others | July 9, 2018 | ████████████████ |
| GSK | Pfizer and others | October 17, 2019 | ████████████████ |

| | | | |
|---|---|---|---|
| | | | ███████████ |
| | | | ████████████ |
| GSK Safety Evaluation & Risk Management (Japan) | GSK | July 9, 2019 | ██████████ |
| | | | ██████████ |
| | | | ██████████ |
| | | | █████████ |
| | | | █████████████ |
| | | | ████████████ |
| | | | ██████████ |
| | | | ███████ |
| | | | ███████████ |
| | | | █████████████ |
| | | | ██████████ |
| | | | ██████████ |
| | | | ████████ |
| GSK Fellow, Michael McGuire | GSK | December 11, 2018 | ████████████ |
| | | | █████████████ |
| | | | ████ |
| GSK Manufacturing | GSK Risk & Development (R&D) Platform Technology & Science | January 17, 2017 | ██████████ |
| | | | ████████████ |
| | | | ██████████ |
| | | | ███████████ |
| | | | ████ |
| ████████ ████ ████ █████ | Mike Popkin (GSK), Jim Harvey (GSK), Mike Urquhart (GSK), Ron Ogilvie (Pfizer), and others | February 19, 2019 | ████████████ |
| | | | █████████████ |
| | | | █████████ |
| | | | ████████████ |
| | | | █████████████ |
| | | | ██████████ |
| | | | ███████████ |
| | | | █████████ |
| | | | ███ |

758.    The RICO Defendants (or their agents), for the purpose of executing the illegal scheme, sent and/or received (or caused to be sent and/or received) by mail or by private or interstate carrier, shipments of Zantac drugs, and related documents by mail or a private carrier affecting interstate commerce, including the items described above and the following examples:

| From | To | Date | Description |
|------|-----|------|-------------|
| GlaxoSmithKline, Research Triangle Park, North Carolina | U.S. Food & Drug Administration, Silver Spring, Maryland | September 4, 2009 | Zantac FDA Label |
| U.S. Patent & Trademark Office, Alexandria, Virginia | Warner-Lambert Company | February 2, 1996 | Trademark statement of use processing complete |
| Pfizer, New York, New York | Boehringer Ingelheim Pharmaceuticals, Inc., Ridgefield, Connecticut | October 13, 2006 | Agreements and related correspondence re: BI acquisition of OTC rights to Zantac from Pfizer |
| Glaxo Wellcome Inc. | U.S. Food & Drug Administration, Rockville, MD | February 18, 1997 | Annual Report for Zantac, including adverse events |

759.     The RICO Defendants also communicated by U.S. mail, by interstate facsimile, and by interstate electronic mail with various other affiliates, regional offices, divisions, dealerships and other third-party entities in furtherance of the scheme.

760.     The mail and wire transmissions described herein were made in furtherance of the RICO Defendants' scheme and common course of conduct to sell Zantac, which the RICO Defendants knew or recklessly disregarded as forming NDMA in the body.

761.     Many of the precise dates of the fraudulent uses of the U.S. mail and interstate wire facilities have been deliberately hidden and cannot be alleged without access to Defendants' books and records.  However, the RICO Plaintiffs have described the types of, and in some instances, occasions on which the predicate acts of mail and/or wire fraud occurred.  They include thousands of communications to perpetuate and maintain the scheme, including the things and documents described in the preceding paragraphs.

762.     The RICO Defendants have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy.  In violation of 18 U.S.C. §1962(d), the RICO Defendants conspired to violate 18 U.S.C. §1962(c), as described herein.  Various other persons, firms and corporations, including third-party entities and individuals not currently named as defendants, have participated as co-conspirators with the RICO Defendants in these offenses and have performed acts in furtherance of the conspiracy to increase or maintain revenues, increase market share, and/or minimize losses for the RICO Defendants and their unnamed co-conspirators throughout the illegal scheme and common course of conduct.

763.     The RICO Defendants had knowledge of the fraud and aided and abetted others in the violations of the above laws, thereby rendering them indictable as principals in the 18 U.S.C. §§1341 and 1343 offenses.

764.     To achieve their common goals, the RICO Defendants hid or downplayed the dangers of Zantac and obfuscated its true nature even after regulators, scientists, and others raised concerns.  The RICO Defendants suppressed and/or ignored warnings from third parties, whistleblowers, and governmental entities about the safety risks of Zantac.

765.     The RICO Defendants and each member of the conspiracy, with knowledge and intent, have agreed to the overall objectives of the conspiracy and participated in the common course of conduct to commit acts of fraud in formulating, manufacturing, distributing, marketing, and/or selling Zantac.

766.     Indeed, for the conspiracy to succeed each RICO Defendant and their co-conspirators had to agree to implement and use the similar devices and fraudulent tactics—specifically concealing or downplaying the safety risk of Zantac.

767.    The RICO Defendants knew and intended that the public would rely on their material omissions.  The RICO Defendants knew and intended that the RICO Plaintiffs and the RICO Class would incur costs as a result.  In fact, the RICO Plaintiffs, along with the consuming public and others across the country, relied upon the concealment of material facts caused by them. The RICO Plaintiffs' reliance is made obvious by the fact that they bought drugs that were not safe for use and never should have been introduced into the U.S. stream of commerce as made plain by the fact that they have been recalled and pulled from the shelves.

768.    Unbeknownst to the RICO Plaintiffs and the RICO Class, the RICO Defendants engaged in a pattern of related and continuous predicate acts for many years.  The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of obtaining significant monies and revenues from the RICO Plaintiffs and Class members based on the concealment of the truth, while providing Zantac drugs that were worth significantly less than the purchase price paid.  The predicate acts also had the same or similar results, participants, victims, and methods of commission.  The predicate acts were related and not isolated events.

769.    The predicate acts all had the purpose of generating significant revenue and profits for the RICO Defendants (and minimizing their losses) at the expense of the RICO Plaintiffs and Class members.  The predicate acts were committed or caused to be committed by the RICO Defendants through their participation in the Zantac OTC Enterprise and in furtherance of the scheme, and were interrelated in that they involved obtaining the RICO Plaintiffs' and Class members' funds and avoiding the expenses and loss of revenues associated with recalling the worthless drugs.

770.    During the formulation, manufacture, marketing, distribution, and sale of Zantac, the RICO Defendants came across and/or shared information about the material safety risks that

ranitidine formed NDMA. Nevertheless, the RICO Defendants concealed or omitted the material safety risks in information it provided the public about Zantac and ranitidine.

>### 3. The RICO Defendants' Conduct Damaged the RICO Plaintiffs and Class Members

771. By reason of, and as a result of the conduct of the RICO Defendants, and in particular, their pattern of racketeering activity, the RICO Plaintiffs and Class members have been injured in their business and/or property in multiple ways, including, but not limited to:

>(a)    the purchase price of Zantac;

>(b)    overpayment for Zantac; and/or

>(c)    other out-of-pocket expenses.

772. The RICO Defendants' violations of 18 U.S.C. §1962(c) and (d) have directly and proximately caused injuries and damages to the RICO Plaintiffs and Class members. The RICO Plaintiffs and Class members are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c).

773. As a direct and proximate result of the RICO Defendants' concealment, omission, and failure to disclose material facts concerning the material safety risks of their OTC Zantac and Ranitidine-Containing Products generally, the RICO Plaintiffs and the Class members suffered damages through their purchase of OTC Zantac, which is unsafe for human consumption and therefore worthless.

774. The RICO Defendants uniformly omitted the material safety risks of Ranitidine-Containing Products, including their OTC Zantac, in messages to consumers and the public for over 25 years. Specifically, the RICO Defendants omitted the material safety risks of Ranitidine-Containing Products, including their OTC Zantac, in national marketing campaigns for OTC

Zantac, and on the product labels for OTC Zantac, to which every consumer who purchased the product was exposed.

775.    As alleged herein, these material safety omissions were deceptive and misleading when made because the RICO OTC Zantac contained an inherently unstable ranitidine molecule that breaks down into unreasonably dangerous levels of NDMA.

776.    As alleged herein, the RICO Defendants knew or recklessly disregarded that NDMA is a clearly carcinogenic chemical and that the ranitidine molecule in their Ranitidine-Containing Products is unstable and degrades into NDMA.  Thus, the RICO Defendants knew or recklessly disregarded that their Ranitidine-Containing Products, including their OTC Zantac, posed material safety risks to consumers.

777.    Despite having actual knowledge of the foregoing material facts, or recklessly disregarding them, Defendants concealed in their statements to consumers and the public that their OTC Zantac and other Ranitidine-Containing Products contained an unstable ranitidine molecule that breaks down into a carcinogen that made them unfit for human consumption and were, therefore, worthless.

778.    These facts are material as they relate to the safety of a drug intended for human consumption and the propensity of the drug to cause cancer when used as directed.  These facts would be considered important and material by any reasonable consumer.  No reasonable consumer would have purchased the RICO Defendants' OTC Zantac had the RICO Defendants disclosed these material facts.

779.    At the time they purchased the RICO Defendants' OTC Zantac, the RICO Plaintiffs and the Class members did not know, and could not have discovered through reasonable diligence, the material facts regarding the safety risks of Ranitidine-Containing Products that the RICO

Defendants concealed and/or failed to disclose in statements to consumers and the public.  The RICO Plaintiffs and Class members reasonably and justifiably relied on the RICO Defendants' omissions, concealments, and/or failure to disclose materials facts about OTC Zantac.  Had the RICO Defendants disclosed the true facts regarding the material safety risks of OTC Zantac and Ranitidine-Containing Products generally, the RICO Plaintiffs and Class members would not have purchased Defendants' OTC Zantac.

780.    Thus, as a direct and proximate result of the RICO Defendants' unlawful conduct, the RICO Plaintiffs and Class members have suffered damages and out-of-pocket losses, paid for a worthless drug, and/or did not receive the benefit of their bargain in that they paid to purchase deceptively marketed and unreasonably dangerous drugs they otherwise would not have purchased.  The RICO Plaintiff's injuries were directly and thus proximately caused by the RICO Defendants' racketeering activities because they were the logical, substantial, and foreseeable cause of the RICO Plaintiff's injuries.  But for the RICO Defendants omission of material fact in statements to consumers and the public, the RICO Plaintiffs would not have lost money or property.

781.    Thus, the RICO Plaintiffs and Class members have suffered a concrete and particularized harm that is actual and/or imminent, and that is fairly traceable to the RICO Defendants' unlawful conduct.  A favorable decision by this Court is likely to redress the injuries suffered by the RICO Plaintiffs and the Class members.  The RICO Plaintiffs are the most directly harmed individuals, and there are no other plaintiffs better suited to seek a remedy for their economic harms at issue here.

## VII.   THE STATE LAW CLAIMS

### A.   Class Allegations

#### 1.   Class Definition

782.   Plaintiffs bring this action in their individual capacities and on behalf of their respective State Classes (described below), pursuant to Federal Rules of Civil Procedure 23(a), (b)(2)-(3), and/or (c)(4).

##### a.   Brand Manufacturer Defendants (Prescription and OTC)

##### GSK

783.   Plaintiffs identified in the table below bring claims against Defendant GSK on behalf of themselves and their respective State GSK Prescription Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, GSK's prescription Ranitidine-Containing Products while a resident of [State]":

| Plaintiff Name | State(s) of Residence |
|---|---|
| Andy Green Jr. | Arkansas, Tennessee |
| Golbenaz Bakhtiar | California |
| Jeffrey Pisano | Colorado |
| Kristen (POA for Alexander) Monger | Florida |
| Kristen (POA for Laura) Monger | Florida |
| Michael Tomlinson | Florida |
| Kathy Jeffries | Florida |
| Brian Nervig | Iowa |
| Alyson Humphrey | Indiana |
| Randy Jones | Louisiana |
| Ana Guzman | Massachusetts |
| Alberta Griffin | Maryland |
| Jerry Hunt | Michigan |
| Donald Northrup | Minnesota |
| Sandra Erickson-Brown | Minnesota |

| Shirley Magee | Minnesota |
|---|---|
| Dennis Robbins | North Carolina |
| Julie Turner | North Carolina |
| Lynn White | New Jersey |
| Benny Fazio | New York |
| Michael Galloway | Ohio, Florida |
| Ronda Lockett | Oklahoma; Missouri |
| Felicia Ball | Pennsylvania |
| Nicholas Hazlett | Pennsylvania, Maryland |
| Jeffery Gunwall | South Carolina |
| Lisa Lyle | Tennessee |
| Rodriquze Hampton Jr | Tennessee |
| Gregory Alan Wayland | Texas |
| Tammy Smith | Texas, Alaska, Colorado, Arizona, Louisiana, Missouri |
| Wendy Quezaire | Wisconsin |
| Dale Hunter | Tennessee |

784.     Plaintiffs identified in the table below bring claims against Defendant GSK on behalf of themselves and their respective State GSK OTC Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, GSK's OTC Ranitidine-Containing Products while a resident of [State]":

| **<u>Plaintiff Name</u>** | **<u>State(s) of Residence</u>** |
|---|---|
| Andy Green Jr. | Arkansas |
| Richard Obrien | California |
| Jeffrey Pisano | Colorado |
| Ricardo Moròn | Florida |
| Michael Galloway | Florida |
| Charles Longfield | Maryland; Wyoming |
| Randy Jones | Louisiana |

| | |
|---|---|
| Jerry Hunt | Michigan |
| Lakisha Wilson | Michigan |
| Ronda Lockett | Missouri |
| Tammy Smith | Missouri, Louisiana, Texas |
| Dennis Robbins | North Carolina |
| Gaylord Stauffer | Nebraska |
| Jonathan Ferguson | Oregon, Nevada |
| Gloria Colon | Puerto Rico |
| Ronald Ragis | Vermont; Florida |
| Earlene Green | Washington |

**Pfizer**

785.    Plaintiffs identified in the table below bring claims against Defendant Pfizer on behalf of themselves and their respective State Pfizer OTC Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Pfizer's OTC Ranitidine-Containing Products while a resident of [State]":

| **Plaintiff Name** | **State(s) of Residence** |
|---|---|
| Andy Green Jr. | Arkansas |
| Golbenaz Bakhtiar | California |
| Richard Obrien | California |
| Virginia Aragon | California |
| Jeffrey Pisano | Colorado |
| Angel Cordero | Connecticut |
| Gustavo Velasquez | Florida |
| Joshua Winans | Florida |
| Ricardo Moròn | Florida |

| | |
|---|---|
| Kathy Jeffries | Florida; Georgia |
| Carol Harkins | Illinois |
| Janet Asbury | Kentucky |
| Randy Jones | Louisiana |
| Alberta Griffin | Maryland |
| Nicholas Hazlett | Maryland |
| Jerry Hunt | Michigan |
| Kenneth Hix | Michigan |
| Lakisha Wilson | Michigan |
| Donald Northrup | Minnesota |
| Roy Armstrong | Minnesota |
| John Scholl | Minnesota; North Dakota |
| Beverly Crosby | Mississippi |
| John Rachal | Mississippi |
| Dennis Robbins | North Carolina |
| Gaylord Stauffer | Nebraska |
| Dan Zhovtis | New York |
| Mary McCullen | New York |
| Chris Troyan | Ohio |
| Michael Galloway | Ohio, Florida |
| Billy Naab | Oklahoma |
| Jonathan Ferguson | Nevada, Oregon; Washington |
| Gloria Colon | Puerto Rico |
| Sonia Diaz | Puerto Rico |

| Dale Hunter | Tennessee |
| Eva Broughton | Tennessee |
| Marianella Villanueva | Texas |
| Ronda Lockett | Texas, Missouri |
| Sylvia Yoshida | Texas |
| Tammy Smith | Texas, Louisiana, Missouri |
| Ronald Ragis | Vermont; Florida |
| Earlene Green | Washington |
| Robert Dewitt | Washington |
| Steve Fischer | Washington |
| Wendy Quezaire | Wisconsin |
| Ida Adams | West Virginia; Maryland |
| Charles Longfield | Wyoming, Maryland |

**BI**

786.    Plaintiffs identified in the table below bring claims against Defendant BI on behalf of themselves and their respective State BI OTC Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, BI's OTC Ranitidine-Containing Products while a resident of [State]":

| **Plaintiff Name** | **State(s) of Residence** |
| --- | --- |
| Anthony McGhee | Alabama |
| Andy Green Jr. | Arkansas |
| Tina Culclager | Arkansas |
| Tangie Sims | Arizona |
| Golbenaz Bakhtiar | California |
| Richard Obrien | California |

| | |
|---|---|
| Virginia Aragon | California |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Angel Cordero | Connecticut |
| Angel Vega | Connecticut; Montana |
| Clifton McKinnon | Florida |
| Gustavo Velasquez | Florida |
| Jeannie Black | Florida |
| Joshua Winans | Florida |
| Marva Mccall | Florida |
| Michael Tomlinson | Florida |
| Ricardo Moròn | Florida |
| Sharon Tweg | Florida |
| Karen Foster | Florida |
| Kathy Jeffries | Georgia |
| Tyrone Houston | Georgia |
| Charles Longfield | Iowa; Maryland; Wyoming |
| Denise Guy | Illinois |
| Heather Re | Illinois |
| Renee Chatman | Illinois |
| Vickie Anderson | Illinois |
| Alyson Humphrey | Indiana |
| Rebecca Sizemore | Indiana |
| Teresa Dowler | Indiana |
| Tracy Wells | Indiana |
| Janet Asbury | Kentucky |
| Randy Jones | Louisiana |
| Alberta Griffin | Maryland |
| Michelle Smith | Massachusetts |

| | |
|---|---|
| Jennifer Bond | Massachusetts; New Hampshire |
| Rafael Bermudez | Massachusetts; New Hampshire |
| Jerry Hunt | Michigan |
| Jody Beal | Michigan |
| Lakisha Wilson | Michigan |
| Brad Hoag | Minnesota |
| Donald Northrup | Minnesota |
| John Scholl | Minnesota |
| John Rachal | Mississippi |
| Antrenise Campbell | Missouri |
| Lorie Kendall-Songer | Missouri |
| Beverly Crosby | Mississippi |
| Dennis Robbins | North Carolina |
| Patricia Frazier | North Carolina |
| Sharon Parks | North Carolina |
| Teresa Lee | North Carolina |
| Gaylord Stauffer | Nebraska |
| James Adamo | New Jersey |
| Lynn White | New Jersey |
| Mary McMillian | New Jersey |
| Mary Moronski | New Jersey |
| Sayed Eldomiaty | New Jersey |
| Ernesto Sanchez | New Mexico |
| George Tapia | New Mexico |
| Cesar Pinon | Nevada |
| Benny Fazio | New York |
| Francis Neary | New York |
| Glorimar Rodriguez | New York |
| Joseph Mcpheter | New York |

| Mary McCullen | New York |
| Migdalia Kinney | New York |
| Richard Froehlich | New York |
| Roy Armstrong | New York, Alaska, Minnesota, Florida, Georgia |
| Dan Zhovtis | New York; Virginia |
| Chris Troyan | Ohio |
| Michael Galloway | Ohio |
| Patricia Hess | Ohio |
| Demarco Grayson | Oklahoma |
| Billy Naab | Oklahoma; Washington; Idaho |
| Kristi Ledbetter | Oregon |
| Nicholas Hazlett | Pennsylvania, Maryland |
| Gloria Colon | Puerto Rico |
| Sonia Diaz | Puerto Rico |
| Michael Futrell | South Carolina |
| Dale Hunter | Tennessee |
| Eva Broughton | Tennessee |
| Kenneth Hix | Tennessee; Michigan |
| Ronda Lockett | Texas |
| Agapito It Aleman | Texas |
| Gina Martinez | Texas |
| Liliana Del Valle | Texas |
| Maria Eames | Texas |
| Sylvia Yoshida | Texas |
| Marianella Villanueva | Texas; South Carolina |
| Teresa Waters | Utah |
| Cheryl Banks | Virginia |
| Ronald Ragis | Vermont; Florida |
| Earlene Green | Washington |

| Dave Garber | Washington |
| Jonathan Ferguson | Washington |
| Robert Dewitt | Washington |
| Wendy Quezaire | Wisconsin |
| Ida Adams | West Virginia; Maryland |

**Sanofi**

787.    Plaintiffs identified in the table below bring claims against Defendant Sanofi on behalf of themselves and their respective State Sanofi OTC Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Sanofi's OTC Ranitidine-Containing Products while a resident of [State]":

| **Plaintiff Name** | **State(s) of Residence** |
| --- | --- |
| Andy Green Jr. | Arkansas |
| Tina Culclager | Arkansas |
| Tangie Sims | Arizona |
| Golbenaz Bakhtiar | California |
| Richard Obrien | California |
| Virginia Aragon | California |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Angel Cordero | Connecticut |
| Gustavo Velasquez | Florida |
| Jeannie Black | Florida |
| Joshua Winans | Florida |
| Michael Tomlinson | Florida |
| Ricardo Moròn | Florida |
| Sharon Tweg | Florida |
| Sonia Diaz | Florida |

| | |
|---|---|
| Kathy Jeffries | Georgia |
| Tyrone Houston | Georgia |
| Charles Longfield | Iowa |
| Denise Guy | Illinois |
| Heather Re | Illinois |
| Renee Chatman | Illinois |
| Alyson Humphrey | Indiana |
| Rebecca Sizemore | Indiana |
| Tracy Wells | Indiana |
| Jamie Mckay | Louisiana |
| Randy Jones | Louisiana |
| Michelle Smith | Massachusetts |
| Jennifer Bond | Massachusetts |
| Alberta Griffin | Maryland |
| Ida Adams | Maryland |
| Arthur Gamble | Michigan |
| Jerry Hunt | Michigan |
| Jody Beal | Michigan |
| Roy Armstrong | Michigan, Florida |
| Brad Hoag | Minnesota |
| Donald Northrup | Minnesota |
| John Rachal | Mississippi |
| Lorie Kendall-Songer | Missouri |
| Dennis Robbins | North Carolina |
| Sharon Parks | North Carolina |
| Gaylord Stauffer | Nebraska |
| Rafael Bermudez | New Hampshire |
| James Adamo | New Jersey |
| Mary McMillian | New Jersey |

| | |
|---|---|
| Mary Moronski | New Jersey |
| Ernesto Sanchez | New Mexico |
| George Tapia | New Mexico |
| Benny Fazio | New York |
| Francis Neary | New York |
| Glorimar Rodriguez | New York |
| Mary McCullen | New York |
| Migdalia Kinney | New York |
| Richard Froehlich | New York |
| Silomie Clarke | New York |
| Yesenia Melillo | New York |
| Chris Troyan | Ohio |
| Michael Galloway | Ohio |
| Demarco Grayson | Oklahoma |
| Billy Naab | Oklahoma |
| Nicholas Hazlett | Pennsylvania |
| Gloria Colon | Puerto Rico |
| Michael Futrell | South Carolina |
| Dale Hunter | Tennessee |
| Ronda Lockett | Texas |
| Agapito It Aleman | Texas |
| Gina Martinez | Texas |
| Liliana Del Valle | Texas |
| Marilyn Abraham | Texas |
| Sylvia Yoshida | Texas |
| Marianella Villanueva | Texas |
| Teresa Waters | Utah |
| Dan Zhovtis | Virginia |
| Cheryl Banks | Virginia |

| Jonathan Ferguson | Washington |
|---|---|
| Dave Garber | Washington |
| Robert Dewitt | Washington |

**b.**    **Generic Prescription and Store Brand Manufacturer Defendants**

**Amneal**

788.    Plaintiffs identified in the table below bring claims against Defendant Amneal on behalf of themselves and their respective State Amneal Prescription Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Amneal's prescription Ranitidine-Containing Products while a resident of [State]":

| **Plaintiff Name** | **State(s) of Residence** |
|---|---|
| Daffeney Austin | Alabama |
| Lashonnah Gaitor | Alabama |
| Anthony McGhee | Alabama |
| Tammy Smith | Alaska |
| Martha Summers | Arkansas, Mississippi, Missouri |
| Monica Costello | Arizona, Nevada |
| Jennifer Fox | Arizona |
| Armando Tapia | Arizona |
| Virginia Aragon | California |
| Golbenaz Bakhtiar | California |
| Royal Handy | California |
| Angel Cordero | Connecticut |
| Angel Vega | Connecticut |
| Kevin Nelson | District of Columbia |
| Irma Arcaya | Florida |
| Roy Armstrong | Florida, Georgia |
| Michael Fesser | Florida |

| | |
|---|---|
| Karen Foster | Florida, Virginia |
| Hattie Kelley | Florida |
| Clifton McKinnon | Florida |
| Kristen (POA for Laura) Monger | Florida |
| Kristen (POA for Alexander) Monger | Florida |
| Ana Pereira | Florida |
| Daniel Taylor | Florida |
| Joyce Taylor | Florida |
| Michael Tomlinson | Florida |
| Earlene Green | Georgia |
| Leon Greene | Georgia |
| Tyrone Houston | Georgia |
| Kathy Jeffries | Georgia |
| Charlotte Sanders | Georgia |
| Paula Shells | Georgia |
| Cynthia Starr | Georgia |
| Angela Taylor | Georgia, Tennessee |
| Vickie Anderson | Illinois |
| Heather Re | Illinois |
| Teresa Dowler | Indiana |
| Timberly Goble | Indiana, Kentucky, Missouri, Texas |
| Alyson Humphrey | Indiana |
| Rebecca Sizemore | Indiana |
| Charles Longfield | Iowa |
| Janet Asbury | Kentucky |
| Jamie Mckay | Louisiana |
| Alberta Griffin | Maryland |
| Darlene Whittington-Coates | Maryland |
| Jose Amado | Massachusetts |

| | |
|---|---|
| Nicholas Hazlett | Maryland, Pennsylvania |
| Rafael Bermudez | Massachusetts, New Hampshire |
| Ana Guzman | Massachusetts |
| Michelle Smith | Massachusetts |
| Myra Allen | Michigan |
| Jody Beal | Michigan |
| Benny Cope | Michigan |
| Arthur Gamble | Michigan |
| Kenneth Hix | Michigan, Tennessee |
| Jerry Hunt | Michigan |
| Judy Wilmot | Michigan |
| Lakisha Wilson | Michigan |
| Sandra Erickson-Brown | Minnesota |
| Rodriquze Hampton Jr | Minnesota, Tennessee |
| Donald Northrup | Minnesota |
| Beverly Crosby | Mississippi |
| Lora Mauffray | Mississippi |
| Korcis McMillan | Mississippi |
| Michelle Tinker | Mississippi |
| Elaine Aaron | Missouri |
| Lisa Deckard | Missouri |
| Cynthia Gibbs | Missouri |
| Brenda Newcomb | Missouri |
| David Rice | New Hampshire |
| James Adamo | New Jersey |
| Mary McMillian | New Jersey |
| Mary Moronski | New Jersey |
| Lynn White | New Jersey |
| Josefina Griego | New Mexico |

| Carrie Martinez | New Mexico |
| George Tapia | New Mexico |
| Silomie Clarke | New York |
| Nereida Cordero | New York |
| Benny Fazio | New York |
| Migdalia Kinney | New York |
| Mary McCullen | New York |
| Joseph Mcpheter | New York |
| Steven Murdock | New York |
| Glorimar Rodriguez | New York |
| Phyllis Spuler | New York |
| Mary Lou Wagner | New York |
| Acia D'amore | North Carolina |
| Patricia Frazier | North Carolina |
| Teresa Lee | North Carolina |
| Sharon Parks | North Carolina |
| Dennis Robbins | North Carolina |
| Julie Turner | North Carolina |
| Michael Galloway | Ohio |
| Patricia Hess | Ohio |
| Demarco Grayson | Oklahoma |
| Kristi Ledbetter | Oregon |
| Felicia Ball | Pennsylvania |
| Elmer Cook | Pennsylvania |
| Carol Loggins | Pennsylvania |
| Gloria Colon | Puerto Rico |
| Sonia Diaz | Puerto Rico, Florida |
| Annie Johnson | South Carolina |
| Michael Futrell | South Carolina |

| Marianella Villanueva | South Carolina, Texas |
|---|---|
| Eva Broughton | Tennessee |
| Rebecca Howard | Tennessee |
| Lisa Lyle | Tennessee |
| Pam Turner | Tennessee |
| Billie Walker | Tennessee |
| Marilyn Abraham | Texas |
| Maria Eames | Texas |
| Tina Howard | Texas |
| Christopher Johnson | Texas |
| Gina Martinez | Texas |
| Tonya Overstreet | Texas |
| Gregory Alan Wayland | Texas |
| Sylvia Yoshida | Texas |
| Teresa Waters | Utah |
| Renee Clark | Vermont |
| Eric Ragis | Vermont |
| Lisa Ragis | Vermont |
| Cheryl Banks | Virginia |
| Lynn Costley | Virginia |
| Steve Fischer | Washington |
| Dave Garber | Washington |
| Bridget Peck | Washington |
| Mynetta Hastings | West Virginia |

**Apotex**

789. Plaintiffs identified in the table below bring claims against Defendant Apotex on behalf of themselves and their respective State Apotex Equate Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Apotex's Ranitidine-Containing Products sold under the store-brand Equate while a resident of [State]":

| Plaintiff Name | State(s) of Residence |
|---|---|
| Tangie Sims | Arizona |
| Tina Culclager | Arkansas |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Michael Tomlinson | Florida |
| Kathy Jeffries | Georgia |
| Carol Harkins | Illinois |
| Randy Jones | Louisiana |
| Jennifer Bond | Massachusetts |
| Sandra Erickson-Brown | Minnesota |
| Lora Mauffray | Mississippi |
| Shirley Magee | Mississippi |
| James Adamo | New Jersey |
| Ernesto Sanchez | New Mexico |
| Richard Froelich | New York |
| Jeffrey Garrett | Tennessee |
| Marilyn Abraham | Texas |
| Marianella Villanueva | Texas |
| Dan Zhovtis | Virginia |
| Robert Dewitt | Washington |
| Jonathan Ferguson | Washington |

790.    Plaintiffs identified in the table below bring claims against Defendant Apotex on behalf of themselves and their respective State Apotex Wal-Zan Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Apotex's Ranitidine-Containing Products sold under the store-brand Wal-Zan while a resident of [State]":

| Plaintiff Name | State(s) of Residence |
|---|---|

| Tangie Sims | Arizona |
|---|---|
| Tina Culclager | Arkansas |
| Golbenaz Bakhtiar | California |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Ronald Ragis | Florida |
| Renee Chatman | Illinois |
| Brian Nervig | Iowa |
| Sandra Erickson-Brown | Minnesota |
| Ernesto Sanchez | New Mexico |
| Gloria Colon | Puerto Rico |
| Marianella Villanueva | Texas |
| Jonathan Ferguson | Washington |

791.     Plaintiffs identified in the table below bring claims against Defendant Apotex on behalf of themselves and their respective State Apotex Rite-Aid Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Apotex's Ranitidine-Containing Products sold under the store-brand Rite-Aid while a resident of [State]":

| **Plaintiff Name** | **State(s) of Residence** |
|---|---|
| Golbenaz Bakhtiar | California |
| Richard Obrien | California |
| Richard Froehlich | New York |

**Dr. Reddy's**

792.     Plaintiffs identified in the table below bring claims against Defendant Dr. Reddy's on behalf of themselves and their respective State Dr. Reddy's Prescription Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Dr. Reddy's prescription Ranitidine-Containing Products while a resident of [State]":

- 328 -

| Plaintiff Name | State(s) of Residence |
|---|---|
| Daffeney Austin | Alabama |
| Lashonnah Gaitor | Alabama |
| Tammy Smith | Alaska |
| Monica Costello | Arizona, Nevada |
| Jennifer Fox | Arizona |
| Armando Tapia | Arizona |
| Tina Culclager | Arkansas |
| Martha Summers | Arkansas, Mississippi, Missouri |
| Virginia Aragon | California |
| Golbenaz Bakhtiar | California |
| Royal Handy | California |
| Angel Cordero | Connecticut |
| Angel Vega | Connecticut |
| Nicholas Hazlett | Maryland, Pennsylvania |
| Kevin Nelson | District of Columbia |
| Irma Arcaya | Florida |
| Roy Armstrong | Florida, Georgia |
| Jeannie Black | Florida |
| Sonia Diaz | Florida, Puerto Rico |
| Michael Fesser | Florida |
| Karen Foster | Florida, Virginia |
| Hattie Kelley | Florida |
| Marva Mccall | Florida |
| Clifton McKinnon | Florida |
| Ana Pereira | Florida |
| Daniel Taylor | Florida |
| Joyce Taylor | Florida |
| Michael Tomlinson | Florida |

| Earlene Green | Georgia |
|---|---|
| Leon Greene | Georgia |
| Tyrone Houston | Georgia |
| Kathy Jeffries | Georgia |
| Charlotte Sanders | Georgia |
| Paula Shells | Georgia |
| Cynthia Starr | Georgia |
| Angela Taylor | Georgia, Tennessee |
| Billy Naab | Idaho, Oklahoma, Washington |
| Vickie Anderson | Illinois |
| Heather Re | Illinois |
| Teresa Dowler | Indiana |
| Timberly Goble | Indiana, Kentucky, Missouri, Texas |
| Alyson Humphrey | Indiana |
| Rebecca Sizemore | Indiana |
| Tracy Wells | Indiana |
| Charles Longfield | Iowa |
| Tracy Losee | Iowa |
| Janet Asbury | Kentucky |
| Randy Jones | Louisiana |
| Jamie Mckay | Louisiana |
| Alberta Griffin | Maryland |
| Darlene Whittington-Coates | Maryland |
| Jose Amado | Massachusetts |
| Rafael Bermudez | Massachusetts, New Hampshire |
| Ana Guzman | Massachusetts |
| Michelle Smith | Massachusetts |
| Myra Allen | Michigan |
| Jody Beal | Michigan |

| | |
|---|---|
| Benny Cope | Michigan |
| Arthur Gamble | Michigan |
| Kenneth Hix | Michigan, Tennessee |
| Jerry Hunt | Michigan |
| Judy Wilmot | Michigan |
| Lakisha Wilson | Michigan |
| Sandra Erickson-Brown | Minnesota |
| Donald Northrup | Minnesota |
| Beverly Crosby | Mississippi |
| Dorothy King | Mississippi |
| Lora Mauffray | Mississippi |
| Korcis McMillan | Mississippi |
| Michelle Tinker | Mississippi |
| David Weatherly | Mississippi |
| Elaine Aaron | Missouri |
| Antrenise Campbell | Missouri |
| Lisa Deckard | Missouri |
| Cynthia Gibbs | Missouri |
| Brenda Newcomb | Missouri |
| David Rice | New Hampshire |
| James Adamo | New Jersey |
| Sayed Eldomiaty | New Jersey |
| Mary McMillian | New Jersey |
| Mary Moronski | New Jersey |
| Lynn White | New Jersey |
| Phyllis Gallegos | New Mexico |
| Josefina Griego | New Mexico |
| Carrie Martinez | New Mexico |
| Inez Mazon | New Mexico |

| Ernesto Sanchez | New Mexico |
| George Tapia | New Mexico |
| Silomie Clarke | New York |
| Nereida Cordero | New York |
| Benny Fazio | New York |
| Migdalia Kinney | New York |
| Mary McCullen | New York |
| Joseph Mcpheter | New York |
| Steven Murdock | New York |
| Glorimar Rodriguez | New York |
| Phyllis Spuler | New York |
| Mary Lou Wagner | New York |
| Acia D'amore | North Carolina |
| Patricia Frazier | North Carolina |
| Teresa Lee | North Carolina |
| Sharon Parks | North Carolina |
| Dennis Robbins | North Carolina |
| Julie Turner | North Carolina |
| Michael Galloway | Ohio |
| Patricia Hess | Ohio |
| Demarco Grayson | Oklahoma |
| Kristi Ledbetter | Oregon |
| Felicia Ball | Pennsylvania |
| Elmer Cook | Pennsylvania |
| Gloria Colon | Puerto Rico |
| Annie Johnson | South Carolina |
| Michael Futrell | South Carolina |
| Jeffery Gunwall | South Carolina |
| Sharon Mclellan | South Carolina |

| | |
|---|---|
| Marianella Villanueva | South Carolina, Texas |
| Eva Broughton | Tennessee |
| Rebecca Howard | Tennessee |
| Pam Turner | Tennessee |
| Billie Walker | Tennessee |
| Marilyn Abraham | Texas |
| Maria Eames | Texas |
| Tina Howard | Texas |
| Christopher Johnson | Texas |
| Gina Martinez | Texas |
| Tonya Overstreet | Texas |
| Gregory Alan Wayland | Texas |
| Sylvia Yoshida | Texas |
| Teresa Waters | Utah |
| Renee Clark | Vermont |
| Eric Ragis | Vermont |
| Lisa Ragis | Vermont |
| Cheryl Banks | Virginia |
| Lynn Costley | Virginia |
| Steve Fischer | Washington |
| Dave Garber | Washington |
| Bridget Peck | Washington |
| Mynetta Hastings | West Virginia |
| Wendy Quezaire | Wisconsin |

793.    Plaintiffs identified in the table below bring claims against Defendant Dr. Reddy's on behalf of themselves and their respective State Dr. Reddy's Walmart Equate Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Dr. Reddy's Ranitidine-Containing Products sold under the store-brand Equate while a resident of [State]":

| Plaintiff Name | State(s) of Residence |
|---|---|
| Tangie Sims | Arizona |
| Tina Culclager | Arkansas |
| Jonathan Ferguson | Washington |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Michael Tomlinson | Florida |
| Kathy Jeffries | Georgia |
| Carol Harkins | Illinois |
| Vickie Anderson | Illinois |
| Randy Jones | Louisiana |
| Jennifer Bond | Massachusetts |
| Sandra Erickson-Brown | Minnesota |
| Lora Mauffray | Mississippi |
| Shirley Magee | Mississippi |
| James Adamo | New Jersey |
| Ernesto Sanchez | New Mexico |
| Carrie Martinez | New Mexico |
| George Tapia | New Mexico |
| Richard Froelich | New York |
| Marianella Villanueva | South Carolina, Texas |
| Jeffrey Garrett | Tennessee |
| Rebecca Howard | Tennessee |

| Marilyn Abraham | Texas |
|---|---|
| Dan Zhovtis | Virginia |
| Robert Dewitt | Washington |

794.    Plaintiffs identified in the table below bring claims against Defendant Dr. Reddy's on behalf of themselves and their respective State Dr. Reddy's Wal-Zan Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Dr. Reddy's Ranitidine-Containing Products sold under the store-brand Wal-Zan while a resident of [State]":

| **Plaintiff Name** | **State(s) of Residence** |
|---|---|
| Tangie Sims | Arizona |
| Tina Culclager | Arkansas |
| Golbenaz Bakhtiar | California |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Angel Vega | Connecticut |
| Ronald Ragis | Florida |
| Renee Chatman | Illinois |
| Brian Nervig | Iowa |
| Sandra Erickson-Brown | Minnesota |
| Ernesto Sanchez | New Mexico |
| Gloria Colon | Puerto Rico |
| Marianella Villanueva | Texas |
| Jonathan Ferguson | Washington |

795.     Plaintiffs identified in the table below bring claims against Defendant Dr. Reddy's on behalf of themselves and their respective State Dr. Reddy's CVS Health Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Dr. Reddy's Ranitidine-Containing Products sold under the store-brand CVS Health while a resident of [State]":

| Plaintiff Name | State(s) of Residence |
| --- | --- |
| Richard Obrien | California |
| Angel Vega | Connecticut |
| Kathy Jeffries | Georgia |
| Rebecca Sizemore | Indiana |
| Arthur Gamble | Michigan |
| Brad Hoag | Minnesota |
| Ernesto Sanchez | New Mexico |
| Richard Froehlich | New York |
| Chris Troyan | Ohio |
| Patricia Hess | Ohio |
| Gregory Alan Wayland | Texas |
| Marianella Villanueva | Texas |
| Mynetta Hastings | West Virginia |

**Glenmark**

796.     Plaintiffs identified in the table below bring claims against Defendant Glenmark on behalf of themselves and their respective State Glenmark Prescription Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Glenmark's prescription Ranitidine-Containing Products while a resident of [State]":

| Plaintiff Name | State(s) of Residence |
| --- | --- |
| Daffeney Austin | Alabama |

| | |
|---|---|
| Lashonnah Gaitor | Alabama |
| Tammy Smith | Alaska |
| Monica Costello | Arizona, Nevada |
| Jennifer Fox | Arizona |
| Armando Tapia | Arizona |
| Tina Culclager | Arkansas |
| Martha Summers | Arkansas, Mississippi, Missouri |
| Virginia Aragon | California |
| Golbenaz Bakhtiar | California |
| Royal Handy | California |
| Angel Cordero | Connecticut |
| Angel Vega | Connecticut |
| Kevin Nelson | District of Columbia |
| Irma Arcaya | Florida |
| Roy Armstrong | Florida, Georgia |
| Jeannie Black | Florida |
| Sonia Diaz | Florida, Puerto Rico |
| Michael Fesser | Florida |
| Karen Foster | Florida, Virginia |
| Hattie Kelley | Florida |
| Marva Mccall | Florida |
| Clifton McKinnon | Florida |
| Ana Pereira | Florida |
| Daniel Taylor | Florida |
| Joyce Taylor | Florida |
| Michael Tomlinson | Florida |
| Earlene Green | Georgia |
| Leon Greene | Georgia |
| Tyrone Houston | Georgia |

| | |
|---|---|
| Kathy Jeffries | Georgia |
| Charlotte Sanders | Georgia |
| Paula Shells | Georgia |
| Cynthia Starr | Georgia |
| Angela Taylor | Georgia, Tennessee |
| Vickie Anderson | Illinois |
| Heather Re | Illinois |
| Teresa Dowler | Indiana |
| Timberly Goble | Indiana, Kentucky, Missouri, Texas |
| Alyson Humphrey | Indiana |
| Rebecca Sizemore | Indiana |
| Tracy Wells | Indiana |
| Charles Longfield | Iowa |
| Tracy Losee | Iowa |
| Janet Asbury | Kentucky |
| Randy Jones | Louisiana |
| Jamie Mckay | Louisiana |
| Alberta Griffin | Maryland |
| Darlene Whittington-Coates | Maryland |
| Nicholas Hazlett | Maryland, Pennsylvania |
| Jose Amado | Massachusetts |
| Rafael Bermudez | Massachusetts, New Hampshire |
| Ana Guzman | Massachusetts |
| Michelle Smith | Massachusetts |
| Myra Allen | Michigan |
| Jody Beal | Michigan |
| Benny Cope | Michigan |
| Arthur Gamble | Michigan |
| Kenneth Hix | Michigan, Tennessee |

| | |
|---|---|
| Jerry Hunt | Michigan |
| Judy Wilmot | Michigan |
| Lakisha Wilson | Michigan |
| Sandra Erickson-Brown | Minnesota |
| Donald Northrup | Minnesota |
| Beverly Crosby | Mississippi |
| Dorothy King | Mississippi |
| Lora Mauffray | Mississippi |
| Korcis McMillian | Mississippi |
| Michelle Tinker | Mississippi |
| David Weatherly | Mississippi |
| Elaine Aaron | Missouri |
| Lisa Deckard | Missouri |
| Cynthia Gibbs | Missouri |
| Brenda Newcomb | Missouri |
| David Rice | New Hampshire |
| James Adamo | New Jersey |
| Sayed Eldomiaty | New Jersey |
| Mary McMillian | New Jersey |
| Mary Moronski | New Jersey |
| Lynn White | New Jersey |
| Phyllis Gallegos | New Mexico |
| Carrie Martinez | New Mexico |
| Inez Mazon | New Mexico |
| Ernesto Sanchez | New Mexico |
| George Tapia | New Mexico |
| Silomie Clarke | New York |
| Nereida Cordero | New York |
| Benny Fazio | New York |

| | |
|---|---|
| Migdalia Kinney | New York |
| Mary McCullen | New York |
| Joseph Mcpheter | New York |
| Steven Murdock | New York |
| Glorimar Rodriguez | New York |
| Phyllis Spuler | New York |
| Mary Lou Wagner | New York |
| Acia D'amore | North Carolina |
| Patricia Frazier | North Carolina |
| Teresa Lee | North Carolina |
| Sharon Parks | North Carolina |
| Dennis Robbins | North Carolina |
| Julie Turner | North Carolina |
| Michael Galloway | Ohio |
| Patricia Hess | Ohio |
| Demarco Grayson | Oklahoma |
| Kristi Ledbetter | Oregon |
| Felicia Ball | Pennsylvania |
| Elmer Cook | Pennsylvania |
| Gloria Colon | Puerto Rico |
| Annie Johnson | South Carolina |
| Michael Futrell | South Carolina |
| Jeffery Gunwall | South Carolina |
| Sharon Mclellan | South Carolina |
| Marianella Villanueva | South Carolina, Texas |
| Eva Broughton | Tennessee |
| Rebecca Howard | Tennessee |
| Pam Turner | Tennessee |
| Billie Walker | Tennessee |

| | |
|---|---|
| Marilyn Abraham | Texas |
| Maria Eames | Texas |
| Tina Howard | Texas |
| Christopher Johnson | Texas |
| Gina Martinez | Texas |
| Tonya Overstreet | Texas |
| Gregory Alan Wayland | Texas |
| Sylvia Yoshida | Texas |
| Teresa Waters | Utah |
| Renee Clark | Vermont |
| Eric Ragis | Vermont |
| Lisa Ragis | Vermont |
| Cheryl Banks | Virginia |
| Lynn Costley | Virginia |
| Steve Fischer | Washington |
| Dave Garber | Washington |
| Bridget Peck | Washington |
| Mynetta Hastings | West Virginia |
| Wendy Quezaire | Wisconsin |

**Perrigo**

797.    Plaintiffs identified in the table below bring claims against Defendant Perrigo on behalf of themselves and their respective State Perrigo Equate Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Perrigo's Ranitidine-Containing Products sold under the store-brand Equate while a resident of [State]":

| **Plaintiff Name** | **State(s) of Residence** |
|---|---|
| Tangie Sims | Arizona |
| Tina Culclager | Arkansas |
| Jonathan Ferguson | Washington |

| | |
|---|---|
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Michael Tomlinson | Florida |
| Kathy Jeffries | Georgia |
| Carol Harkins | Illinois |
| Vickie Anderson | Illinois |
| Randy Jones | Louisiana |
| Jennifer Bond | Massachusetts |
| Sandra Erickson-Brown | Minnesota |
| Lora Mauffray | Mississippi |
| Shirley Magee | Mississippi |
| James Adamo | New Jersey |
| Ernesto Sanchez | New Mexico |
| Carrie Martinez | New Mexico |
| George Tapia | New Mexico |
| Richard Froelich | New York |
| Jeffrey Garrett | Tennessee |
| Marilyn Abraham | Texas |
| Marianella Villanueva | Texas |
| Dan Zhovtis | Virginia |
| Robert Dewitt | Washington |

798.    Plaintiffs identified in the table below bring claims against Defendant Perrigo on behalf of themselves and their respective State Perrigo Wal-Zan Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Perrigo's Ranitidine-Containing Products sold under the store-brand Wal-Zan while a resident of [State]":

| **Plaintiff Name** | **State(s) of Residence** |
|---|---|
| Tangie Sims | Arizona |

| | |
|---|---|
| Tina Culclager | Arkansas |
| Golbenaz Bakhtiar | California |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Angel Vega | Connecticut |
| Ronald Ragis | Florida |
| Renee Chatman | Illinois |
| Brian Nervig | Iowa |
| Sandra Erickson-Brown | Minnesota |
| Ernesto Sanchez | New Mexico |
| Gloria Colon | Puerto Rico |
| Marianella Villanueva | Texas |
| Jonathan Ferguson | Washington |

799.    Plaintiffs identified in the table below bring claims against Defendant Perrigo on behalf of themselves and their respective State Perrigo CVS Health Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Perrigo's Ranitidine-Containing Products sold under the store-brand CVS Health while a resident of [State]":

| **Plaintiff Name** | **State(s) of Residence** |
|---|---|
| Richard Obrien | California |
| Angel Vega | Connecticut |
| Kathy Jeffries | Georgia |
| Rebecca Sizemore | Indiana |
| Arthur Gamble | Michigan |
| Brad Hoag | Minnesota |
| Ernesto Sanchez | New Mexico |
| Richard Froehlich | New York |
| Chris Troyan | Ohio |

| Patricia Hess | Ohio |
| Gregory Alan Wayland | Texas |
| Marianella Villanueva | Texas |
| Mynetta Hastings | West Virginia |

800.    Plaintiffs identified in the table below bring claims against Defendant Perrigo on behalf of themselves and their respective State Perrigo Rite-Aid Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Perrigo's Ranitidine-Containing Products sold under the store-brand Rite-Aid while a resident of [State]":

| **Plaintiff Name** | **State(s) of Residence** |
| --- | --- |
| Golbenaz Bakhtiar | California |
| Richard Obrien | California |
| Janet Asbury | Kentucky |
| Richard Froehlich | New York |

**Sandoz**

801.    Plaintiffs identified in the table below bring claims against Defendant Sandoz on behalf of themselves and their respective State Sandoz Prescription Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Sandoz's prescription Ranitidine-Containing Products while a resident of [State]":

| **Plaintiff Name** | **State(s) of Residence** |
| --- | --- |
| Daffeney Austin | Alabama |
| Lashonnah Gaitor | Alabama |
| Tammy Smith | Alaska, Missouri |
| Monica Costello | Arizona, Nevada |
| Jennifer Fox | Arizona |
| Armando Tapia | Arizona |

| Tina Culclager | Arkansas |
|---|---|
| Andy Green Jr. | Arkansas |
| Martha Summers | Arkansas, Mississippi, Missouri |
| Virginia Aragon | California |
| Golbenaz Bakhtiar | California |
| Royal Handy | California |
| Angel Cordero | Connecticut |
| Jeffrey Pisano | Colorado |
| Angel Vega | Connecticut |
| Kevin Nelson | District of Columbia |
| Irma Arcaya | Florida |
| Roy Armstrong | Florida, Georgia |
| Jeannie Black | Florida |
| Sonia Diaz | Florida, Puerto Rico |
| Michael Fesser | Florida |
| Karen Foster | Florida, Virginia |
| Michael Galloway | Florida, Ohio |
| Hattie Kelley | Florida |
| Marva Mccall | Florida |
| Clifton McKinnon | Florida |
| Ana Pereira | Florida |
| Daniel Taylor | Florida |
| Joyce Taylor | Florida |
| Michael Tomlinson | Florida |
| Earlene Green | Georgia |
| Leon Greene | Georgia |
| Tyrone Houston | Georgia |
| Kathy Jeffries | Georgia |
| Charlotte Sanders | Georgia |

| Paula Shells | Georgia |
|---|---|
| Cynthia Starr | Georgia |
| Angela Taylor | Georgia, Tennessee |
| Billy Naab | Idaho, Oklahoma, Washington |
| Vickie Anderson | Illinois |
| Heather Re | Illinois |
| Teresa Dowler | Indiana |
| Timberly Goble | Indiana, Kentucky, Missouri, Texas |
| Alyson Humphrey | Indiana |
| Rebecca Sizemore | Indiana |
| Tracy Wells | Indiana |
| Charles Longfield | Iowa |
| Tracy Losee | Iowa |
| Janet Asbury | Kentucky |
| Randy Jones | Louisiana |
| Jamie Mckay | Louisiana |
| Alberta Griffin | Maryland |
| Nicholas Hazlett | Maryland, Pennsylvania |
| Darlene Whittington-Coates | Maryland |
| Jose Amado | Massachusetts |
| Rafael Bermudez | Massachusetts, New Hampshire |
| Ana Guzman | Massachusetts |
| Michelle Smith | Massachusetts |
| Myra Allen | Michigan |
| Jody Beal | Michigan |
| Benny Cope | Michigan |
| Arthur Gamble | Michigan |
| Kenneth Hix | Michigan, Tennessee |
| Judy Wilmot | Michigan |

| | |
|---|---|
| Lakisha Wilson | Michigan |
| Sandra Erickson-Brown | Minnesota |
| Donald Northrup | Minnesota |
| Beverly Crosby | Mississippi |
| Dorothy King | Mississippi |
| Lora Mauffray | Mississippi |
| Korcis McMillian | Mississippi |
| Michelle Tinker | Mississippi |
| David Weatherly | Mississippi |
| Elaine Aaron | Missouri |
| Antrenise Campbell | Missouri |
| Lisa Deckard | Missouri |
| Cynthia Gibbs | Missouri |
| Brenda Newcomb | Missouri |
| David Rice | New Hampshire |
| James Adamo | New Jersey |
| Sayed Eldomiaty | New Jersey |
| Mary McMillian | New Jersey |
| Mary Moronski | New Jersey |
| Lynn White | New Jersey |
| Phyllis Gallegos | New Mexico |
| Josefina Griego | New Mexico |
| Carrie Martinez | New Mexico |
| Inez Mazon | New Mexico |
| Ernesto Sanchez | New Mexico |
| George Tapia | New Mexico |
| Silomie Clarke | New York |
| Nereida Cordero | New York |
| Benny Fazio | New York |

| | |
|---|---|
| Migdalia Kinney | New York |
| Mary McCullen | New York |
| Joseph Mcpheter | New York |
| Steven Murdock | New York |
| Glorimar Rodriguez | New York |
| Phyllis Spuler | New York |
| Mary Lou Wagner | New York |
| Acia D'amore | North Carolina |
| Patricia Frazier | North Carolina |
| Teresa Lee | North Carolina |
| Sharon Parks | North Carolina |
| Dennis Robbins | North Carolina |
| Julie Turner | North Carolina |
| Patricia Hess | Ohio |
| Demarco Grayson | Oklahoma |
| Kristi Ledbetter | Oregon |
| Felicia Ball | Pennsylvania |
| Elmer Cook | Pennsylvania |
| Gloria Colon | Puerto Rico |
| Annie Johnson | South Carolina |
| Michael Futrell | South Carolina |
| Jeffery Gunwall | South Carolina |
| Sharon Mclellan | South Carolina |
| Marianella Villanueva | South Carolina, Texas |
| Eva Broughton | Tennessee |
| Rebecca Howard | Tennessee |
| Pam Turner | Tennessee |
| Billie Walker | Tennessee |
| Marilyn Abraham | Texas |

| Maria Eames | Texas |
| Tina Howard | Texas |
| Christopher Johnson | Texas |
| Gina Martinez | Texas |
| Tonya Overstreet | Texas |
| Gregory Alan Wayland | Texas |
| Sylvia Yoshida | Texas |
| Teresa Waters | Utah |
| Renee Clark | Vermont |
| Eric Ragis | Vermont |
| Lisa Ragis | Vermont |
| Cheryl Banks | Virginia |
| Lynn Costley | Virginia |
| Steve Fischer | Washington |
| Dave Garber | Washington |
| Bridget Peck | Washington |
| Mynetta Hastings | West Virginia |
| Wendy Quezaire | Wisconsin |

**Strides**

802.    Plaintiffs identified in the table below bring claims against Defendant Strides on behalf of themselves and their respective State Strides Prescription Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Strides' prescription Ranitidine-Containing Products while a resident of [State]":

| **Plaintiff Name** | **State(s) of Residence** |
| --- | --- |
| Daffeney Austin | Alabama |
| Lashonnah Gaitor | Alabama |
| Tammy Smith | Alaska |
| Monica Costello | Arizona, Nevada |

| | |
|---|---|
| Jennifer Fox | Arizona |
| Armando Tapia | Arizona |
| Tina Culclager | Arkansas |
| Martha Summers | Arkansas, Mississippi |
| Virginia Aragon | California |
| Golbenaz Bakhtiar | California |
| Royal Handy | California |
| Angel Cordero | Connecticut |
| Kevin Nelson | District of Columbia |
| Irma Arcaya | Florida |
| Jeannie Black | Florida |
| Sonia Diaz | Florida, Puerto Rico |
| Michael Fesser | Florida |
| Karen Foster | Florida, Virginia |
| Hattie Kelley | Florida |
| Marva Mccall | Florida |
| Clifton McKinnon | Florida |
| Ana Pereira | Florida |
| Daniel Taylor | Florida |
| Joyce Taylor | Florida |
| Michael Tomlinson | Florida |
| Earlene Green | Georgia |
| Leon Greene | Georgia |
| Tyrone Houston | Georgia |
| Kathy Jeffries | Georgia |
| Charlotte Sanders | Georgia |
| Paula Shells | Georgia |
| Cynthia Starr | Georgia |
| Angela Taylor | Georgia |

| | |
|---|---|
| Heather Re | Illinois |
| Teresa Dowler | Indiana |
| Timberly Goble | Indiana, Kentucky |
| Alyson Humphrey | Indiana |
| Rebecca Sizemore | Indiana |
| Tracy Wells | Indiana |
| Charles Longfield | Iowa |
| Tracy Losee | Iowa |
| Randy Jones | Louisiana |
| Jamie Mckay | Louisiana |
| Alberta Griffin | Maryland |
| Darlene Whittington-Coates | Maryland |
| Nicholas Hazlett | Maryland, Pennsylvania |
| Jose Amado | Massachusetts |
| Rafael Bermudez | Massachusetts, New Hampshire |
| Ana Guzman | Massachusetts |
| Michelle Smith | Massachusetts |
| Myra Allen | Michigan |
| Jody Beal | Michigan |
| Benny Cope | Michigan |
| Arthur Gamble | Michigan |
| Jerry Hunt | Michigan |
| Judy Wilmot | Michigan |
| Lakisha Wilson | Michigan |
| Sandra Erickson-Brown | Minnesota |
| Donald Northrup | Minnesota |
| Beverly Crosby | Mississippi |
| Dorothy King | Mississippi |
| Lora Mauffray | Mississippi |

| | |
|---|---|
| Korcis McMillan | Mississippi |
| Michelle Tinker | Mississippi |
| David Weatherly | Mississippi |
| Elaine Aaron | Missouri |
| Lisa Deckard | Missouri |
| Cynthia Gibbs | Missouri |
| Brenda Newcomb | Missouri |
| David Rice | New Hampshire |
| Sayed Eldomiaty | New Jersey |
| Mary McMillian | New Jersey |
| Mary Moronski | New Jersey |
| Lynn White | New Jersey |
| Phyllis Gallegos | New Mexico |
| Josefina Griego | New Mexico |
| Carrie Martinez | New Mexico |
| Inez Mazon | New Mexico |
| Ernesto Sanchez | New Mexico |
| George Tapia | New Mexico |
| Aida Carlo | New York |
| Silomie Clarke | New York |
| Nereida Cordero | New York |
| Benny Fazio | New York |
| Migdalia Kinney | New York |
| Mary McCullen | New York |
| Joseph Mcpheter | New York |
| Steven Murdock | New York |
| Glorimar Rodriguez | New York |
| Phyllis Spuler | New York |
| Mary Lou Wagner | New York |

| | |
|---|---|
| Acia D'amore | North Carolina |
| Teresa Lee | North Carolina |
| Sharon Parks | North Carolina |
| Dennis Robbins | North Carolina |
| Julie Turner | North Carolina |
| Michael Galloway | Ohio |
| Patricia Hess | Ohio |
| Demarco Grayson | Oklahoma |
| Kristi Ledbetter | Oregon |
| Felicia Ball | Pennsylvania |
| Elmer Cook | Pennsylvania |
| Gloria Colon | Puerto Rico |
| Michael Futrell | South Carolina |
| Jeffery Gunwall | South Carolina |
| Annie Johnson | South Carolina |
| Sharon Mclellan | South Carolina |
| Rebecca Howard | Tennessee |
| Pam Turner | Tennessee |
| Billie Walker | Tennessee |
| Marilyn Abraham | Texas |
| Maria Eames | Texas |
| Christopher Johnson | Texas |
| Gina Martinez | Texas |
| Tonya Overstreet | Texas |
| Marianella Villanueva | Texas |
| Gregory Alan Wayland | Texas |
| Sylvia Yoshida | Texas |
| Teresa Waters | Utah |
| Renee Clark | Vermont |

| Eric Ragis | Vermont |
| --- | --- |
| Lisa Ragis | Vermont |
| Cheryl Banks | Virginia |
| Lynn Costley | Virginia |
| Steve Fischer | Washington |
| Dave Garber | Washington |
| Bridget Peck | Washington |
| Mynetta Hastings | West Virginia |
| Wendy Quezaire | Wisconsin |

803. Plaintiffs identified in the table below bring claims against Defendant Strides on behalf of themselves and their respective State Strides Equate Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Strides' Ranitidine-Containing Products sold under the store-brand Equate while a resident of [State]":

| **Plaintiff Name** | **State(s) of Residence** |
| --- | --- |
| Tangie Sims | Arizona |
| Tina Culclager | Arkansas |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Michael Tomlinson | Florida |
| Kathy Jeffries | Georgia |
| Carol Harkins | Illinois |
| Vickie Anderson | Illinois |
| Randy Jones | Louisiana |
| Jennifer Bond | Massachusetts |
| Sandra Erickson-Brown | Minnesota |
| Lora Mauffray | Mississippi |
| Shirley Magee | Mississippi |
| James Adamo | New Jersey |

| Ernesto Sanchez | New Mexico |
|---|---|
| Carrie Martinez | New Mexico |
| George Tapia | New Mexico |
| Richard Froelich | New York |
| Jeffrey Garrett | Tennessee |
| Marilyn Abraham | Texas |
| Marianella Villanueva | Texas |
| Dan Zhovtis | Virginia |
| Jonathan Ferguson | Washington |
| Robert Dewitt | Washington |

804.     Plaintiffs identified in the table below bring claims against Defendant Strides on behalf of themselves and their respective State Strides Wal-Zan Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Strides' Ranitidine-Containing Products sold under the store-brand Wal-Zan while a resident of [State]":

| **Plaintiff Name** | **State(s) of Residence** |
|---|---|
| Tangie Sims | Arizona |
| Tina Culclager | Arkansas |
| Golbenaz Bakhtiar | California |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Angel Vega | Connecticut |
| Ronald Ragis | Florida |
| Renee Chatman | Illinois |
| Brian Nervig | Iowa |
| Sandra Erickson-Brown | Minnesota |
| Ernesto Sanchez | New Mexico |
| Gloria Colon | Puerto Rico |

| Marianella Villanueva | Texas |
| Jonathan Ferguson | Washington |

805.    Plaintiffs identified in the table below bring claims against Defendant Strides on behalf of themselves and their respective State Strides CVS Health Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Strides' Ranitidine-Containing Products sold under the store-brand CVS Health while a resident of [State]":

| **Plaintiff Name** | **State(s) of Residence** |
| --- | --- |
| Richard Obrien | California |
| Angel Vega | Connecticut |
| Kathy Jeffries | Georgia |
| Rebecca Sizemore | Indiana |
| Arthur Gamble | Michigan |
| Brad Hoag | Minnesota |
| Ernesto Sanchez | New Mexico |
| Richard Froehlich | New York |
| Chris Troyan | Ohio |
| Patricia Hess | Ohio |
| Gregory Alan Wayland | Texas |
| Marianella Villanueva | Texas |
| Mynetta Hastings | West Virginia |

806.    Plaintiffs identified in the table below bring claims against Defendant Strides on behalf of themselves and their respective State Strides Rite-Aid Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Strides' Ranitidine-Containing Products sold under the store-brand Rite-Aid while a resident of [State]":

- 356 -

| **Plaintiff Name** | **State(s) of Residence** |
|---|---|
| Golbenaz Bakhtiar | California |
| Richard Obrien | California |
| Janet Asbury | Kentucky |
| Richard Froehlich | New York |

**Teva**

807.    Plaintiffs identified in the table below bring claims against Defendant Teva on behalf of themselves and their respective State Teva Prescription Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Teva's prescription Ranitidine-Containing Products while a resident of [State]":

| **Plaintiff Name** | **State(s) of Residence** |
|---|---|
| Daffeney Austin | Alabama |
| Lashonnah Gaitor | Alabama |
| Anthony McGhee | Alabama |
| Tammy Smith | Alaska, Missouri |
| Monica Costello | Arizona, Nevada |
| Armando Tapia | Arizona |
| Tina Culclager | Arkansas |
| Martha Summers | Arkansas, Missouri |
| Virginia Aragon | California |
| Golbenaz Bakhtiar | California |
| Royal Handy | California |
| Jeffrey Pisano | Colorado |
| Angel Vega | Connecticut |
| Irma Arcaya | Florida |
| Roy Armstrong | Florida, Georgia |
| Michael Fesser | Florida |
| Karen Foster | Florida |

| Michael Galloway | Florida, Ohio |
| Hattie Kelley | Florida |
| Marva Mccall | Florida |
| Clifton McKinnon | Florida |
| Kristen (POA for Alexander) Monger | Florida |
| Kristen (POA for Laura) Monger | Florida |
| Daniel Taylor | Florida |
| Joyce Taylor | Florida |
| Michael Tomlinson | Florida |
| Earlene Green | Georgia |
| Leon Greene | Georgia |
| Tyrone Houston | Georgia |
| Kathy Jeffries | Georgia |
| Charlotte Sanders | Georgia |
| Paula Shells | Georgia |
| Angela Taylor | Georgia, Tennessee |
| Billy Naab | Idaho, Washington |
| Vickie Anderson | Illinois |
| Heather Re | Illinois |
| Timberly Goble | Indiana, Missouri, Texas |
| Rebecca Sizemore | Indiana |
| Tracy Wells | Indiana |
| Charles Longfield | Iowa |
| Janet Asbury | Kentucky |
| Randy Jones | Louisiana |
| Alberta Griffin | Maryland |
| Nicholas Hazlett | Maryland, Pennsylvania |
| Jose Amado | Massachusetts |
| Rafael Bermudez | Massachusetts, New Hampshire |

| Ana Guzman | Massachusetts |
| Michelle Smith | Massachusetts |
| Myra Allen | Michigan |
| Jody Beal | Michigan |
| Benny Cope | Michigan |
| Kenneth Hix | Michigan, Tennessee |
| Jerry Hunt | Michigan |
| Lakisha Wilson | Michigan |
| Sandra Erickson-Brown | Minnesota |
| Rodriquze Hampton Jr. | Minnesota |
| Donald Northrup | Minnesota |
| Beverly Crosby | Mississippi |
| Lora Mauffray | Mississippi |
| Korcis McMillan | Mississippi |
| Michelle Tinker | Mississippi |
| Elaine Aaron | Missouri |
| Antrenise Campbell | Missouri |
| Lisa Deckard | Missouri |
| Cynthia Gibbs | Missouri |
| Brenda Newcomb | Missouri |
| David Rice | New Hampshire |
| James Adamo | New Jersey |
| Sayed Eldomiaty | New Jersey |
| Mary McMillian | New Jersey |
| Mary Moronski | New Jersey |
| Carrie Martinez | New Mexico |
| Ernesto Sanchez | New Mexico |
| George Tapia | New Mexico |
| Silomie Clarke | New York |

| | |
|---|---|
| Nereida Cordero | New York |
| Benny Fazio | New York |
| Migdalia Kinney | New York |
| Mary McCullen | New York |
| Joseph Mcpheter | New York |
| Glorimar Rodriguez | New York |
| Mary Lou Wagner | New York |
| Patricia Frazier | North Carolina |
| Teresa Lee | North Carolina |
| Sharon Parks | North Carolina |
| Dennis Robbins | North Carolina |
| Julie Turner | North Carolina |
| Patricia Hess | Ohio |
| Demarco Grayson | Oklahoma |
| Kristi Ledbetter | Oregon |
| Felicia Ball | Pennsylvania |
| Carol Loggins | Pennsylvania |
| Gloria Colon | Puerto Rico |
| Sonia Diaz | Puerto Rico |
| Annie Johnson | South Carolina |
| Michael Futrell | South Carolina |
| Jeffery Gunwall | South Carolina |
| Sharon Mclellan | South Carolina |
| Marianella Villanueva | South Carolina, Texas |
| Eva Broughton | Tennessee |
| Rodriquze Hampton Jr. | Tennessee |
| Rebecca Howard | Tennessee |
| Lisa Lyle | Tennessee |
| Billie Walker | Tennessee |

| | |
|---|---|
| Maria Eames | Texas |
| Tina Howard | Texas |
| Christopher Johnson | Texas |
| Gina Martinez | Texas |
| Tonya Overstreet | Texas |
| Gregory Alan Wayland | Texas |
| Sylvia Yoshida | Texas |
| Renee Clark | Vermont |
| Eric Ragis | Vermont |
| Lisa Ragis | Vermont |
| Cheryl Banks | Virginia |
| Lynn Costley | Virginia |
| Steve Fischer | Washington |
| Dave Garber | Washington |
| Bridget Peck | Washington |
| Mynetta Hastings | West Virginia |
| Wendy Quezaire | Wisconsin |

### c.    Store Brand Defendants

### CVS

808.    Plaintiffs identified in the table below bring claims against Defendant CVS on behalf of themselves and their respective State CVS Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Ranitidine-Containing Products sold under the store-brand CVS Health while a resident of [State]":

| **Plaintiff Name** | **State(s) of Residence** |
|---|---|
| Richard Obrien | California |
| Angel Vega | Connecticut |
| Kathy Jeffries | Georgia |

| Rebecca Sizemore | Indiana |
| Arthur Gamble | Michigan |
| Brad Hoag | Minnesota |
| Ernesto Sanchez | New Mexico |
| Richard Froehlich | New York |
| Chris Troyan | Ohio |
| Patricia Hess | Ohio |
| Gregory Alan Wayland | Texas |
| Marianella Villanueva | Texas |
| Mynetta Hastings | West Virginia |

**Walgreens**

809.    Plaintiffs identified in the table below bring claims against Defendant Walgreens on behalf of themselves and their respective State Walgreens Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Ranitidine-Containing Products sold under the store-brand Walgreens Wal-Zan while a resident of [State]":

| **Plaintiff Name** | **State(s) of Residence** |
| --- | --- |
| Tangie Sims | Arizona |
| Tina Culclager | Arkansas |
| Golbenaz Bakhtiar | California |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Angel Vega | Connecticut |
| Ronald Ragis | Florida |
| Renee Chatman | Illinois |
| Brian Nervig | Iowa |
| Sandra Erickson-Brown | Minnesota |
| Ernesto Sanchez | New Mexico |
| Gloria Colon | Puerto Rico |

| Marianella Villanueva | Texas |
| Jonathan Ferguson | Washington |

**Walmart**

810.    Plaintiffs identified in the table below bring claims against Defendant Walmart on behalf of themselves and their respective State Walmart Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Ranitidine-Containing Products sold under the store-brand Walmart Equate while a resident of [State]":

| **Plaintiff Name** | **State(s) of Residence** |
| --- | --- |
| Tangie Sims | Arizona |
| Tina Culclager | Arkansas |
| Golbenaz Bakhtiar | California |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Angel Vega | Connecticut |
| Ronald Ragis | Florida |
| Renee Chatman | Illinois |
| Brian Nervig | Iowa |
| Sandra Erickson-Brown | Minnesota |
| Ernesto Sanchez | New Mexico |
| Gloria Colon | Puerto Rico |
| Marianella Villanueva | Texas |
| Jonathan Ferguson | Washington |

**Rite-Aid**

811.    Plaintiffs identified in the table below bring claims against Defendant Rite-Aid on behalf of themselves and their respective State Rite-Aid Economic Loss Class, each of which is defined as "All individuals who purchased, for personal, family, or household use, Ranitidine-Containing Products sold under the store-brand Rite-Aid while a resident of [State]":

| Plaintiff Name | State(s) of Residence |
|---|---|
| Golbenaz Bakhtiar | California |
| Richard Obrien | California |
| Janet Asbury | Kentucky |
| Richard Froehlich | New York |

812.     Excluded from the State Classes are Defendants and any of their affiliates, parents, subsidiaries, officers, and directors; any entity in which Defendants have a controlling interest; all persons who make a timely election to be excluded from the class; governmental entities; and all judges assigned to hear any aspect of this litigation, including their immediate family members.

813.     Plaintiffs reserve the right to modify or amend the definitions of State Classes, including to add one or more subclasses, after having the opportunity to conduct discovery.

## 2.     Federal Rule of Civil Procedure 23 Requirements

814.     Each of the proposed State Classes meets the requirements of Federal Rules of Civil Procedure 23(a), (b)(2)-(3) and/or (c)(4).

815.     Numerosity.   The members of each class are so numerous that joinder is impracticable.  Zantac and other Ranitidine-Containing Products haves for decades been one of the most popular medications for relief of heartburn, acid reflux, and similar conditions and, thus, it is reasonable to infer that each State Class includes thousands if not millions of members who are geographically dispersed throughout the country and/or throughout each respective State.

816.     Typicality.  Plaintiffs' claims are typical of the claims of putative Class members in that Plaintiffs' claims arise out of the same common course of conduct that gives rise to the claims of the other State Class members.  Each Plaintiff, like each State Class member, paid money to purchase prescription and/or OTC Zantac or other Ranitidine-Containing Products, including Zantac, manufactured or sold by Defendants, which are not safe for human consumption and, thus,

Plaintiffs, like each Class member, suffered out-of-pocket losses.  Plaintiffs, like each State Class member, were injured through Defendants' common course of misconduct, and Plaintiffs are advancing the same legal theories on behalf of themselves and the Class members.

817.    Adequacy.  Plaintiffs will fairly and adequately protect the interests of the State Class members.  Plaintiffs' interests and the interests of all other members of each respective State Class are identical and not antagonistic.  Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the State Class members' interests.  Plaintiffs have retained counsel who are competent and experienced in litigating class actions, including litigation of this kind.

818.    Commonality and Predominance.  There are numerous questions of law and fact common to the State Classes, and these common questions predominate over any issues affecting only individual State Class members.  Questions common to the State Classes include, but are not limited to, the following:

(a)    whether Zantac and other Ranitidine-Containing Products contain, or are likely to contain, unacceptable levels of NDMA;

(b)    whether Defendants knew or should have known that Zantac and other Ranitidine-Containing Products contains, or are likely to contain, unacceptable levels of NDMA;

(c)    whether Defendants knew or should have known that consumption of Zantac and other Ranitidine-Containing Products increases the risk of developing cancer;

(d)    whether Defendants acted to conceal the fact that Zantac and other Ranitidine-Containing Products expose users to unacceptable quantities of NDMA;

(e)    whether Defendants acted to conceal the fact that Zantac and other Ranitidine-Containing Products contain, or are likely to contain, unacceptable levels of NDMA and increase the risk of developing cancer;

(f)    whether Defendants' labeling, packaging, marketing, advertising, or promotion of Zantac and other Ranitidine-Containing Products misrepresented or omitted the safety of Ranitidine-Containing Products and/or Zantac, or failed to disclose that Zantac and other Ranitidine-

Containing Products contain and continue to produce high levels of the carcinogen NDMA;

(g)     whether Defendants' labeling, packaging, marketing, advertising, or promotion of Zantac and other Ranitidine-Containing Products misrepresented or omitted the safety of Ranitidine-Containing Products and/or Zantac, or failed to disclose that consumption of Ranitidine-Containing Products increases the risk of developing cancer;

(h)     whether Defendants' labeling, packaging, marketing, advertising, or promotion of Zantac and other Ranitidine-Containing Products misrepresented or omitted the safety of Ranitidine-Containing Products and/or Zantac, when used within the expiration dates;

(i)     whether Defendants' labeling, packaging, marketing, advertising, or promotion of Zantac and other Ranitidine-Containing Products misrepresented or omitted the safety of Ranitidine-Containing Products and/or Zantac, when used beyond the expiration dates;

(j)     whether Defendants' conduct was knowing or willful;

(k)     whether Defendants' conduct violated state consumer-protection statutes;

(l)     whether Defendants breached implied warranties;

(m)     whether Defendants have been unjustly enriched;

(n)     whether Plaintiffs and the State Class members are entitled to recover damages and the appropriate measure of those damages;

(o)     the appropriate measure of disgorgement; and

(p)     the type and format of injunctive relief that is appropriate.

819.     Superiority.  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to an individual plaintiff may not be sufficient to justify individual litigation.  Here, the damages suffered by Plaintiffs and the State Class are relatively small compared to the burden and expense required to individually litigate their claims against Defendants, and thus, individual litigation to redress Defendants' wrongful conduct would be impracticable.  Individual litigation by each State Class member would also strain the court system, create the potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

820.     Injunctive and Declaratory Relief. Class certification is also appropriate under Rule 23(b)(2) because Defendants acted and refused to act on grounds generally applicable to the State Class as a whole, such that final injunctive relief is appropriate with respect to the State Class as a whole.

821.     Plaintiffs reserve the right to seek certification under Rule 23(c)(4) of common questions related to Defendants' knowledge, conduct, products, and duties.

   **B.     Additional Factual Allegations**

        **1.     Brand Name Prescription Manufacturer GSK's Misrepresentations or Omissions of Material Fact in the Labeling of Ranitidine-Containing Products**

822.     21 U.S.C. §352(a)(1) provides, in pertinent part,

        A drug or device shall be deemed to be misbranded

        (a) FALSE OR MISLEADING LABEL

(1) If its labeling is false or misleading in any particular. (emphasis in original).

823.    A manufacturer is required to give adequate directions for the use of a pharmaceutical drug such that a "layman can use a drug safely and for the purposes for which it is intended,"[340] and conform to requirements governing the appearance of the label.[341]

824.    "Labeling" encompasses all written, printed, or graphic material accompanying the drug or device,[342] and therefore broadly encompasses nearly every form of promotional activity, including not only "package inserts" but also advertising.

825.    "Most, if not all, labeling is advertising.  The term 'labeling' is defined in the FDCA as including all printed matter accompanying any article.  Congress did not, and we cannot, exclude from the definition printed matter which constitutes advertising."[343]

826.    GSK was responsible for conducting stability testing, which must be "designed to assess the stability characteristics of drug products."[344]  Manufacturers must adopt a written testing program that includes: "(1) Sample size and test intervals based on statistical criteria for each attribute examined to assure valid estimates of stability; (2) Storage conditions for samples retained for testing; (3) Reliable, meaningful, and specific test methods; (4) Testing of the drug product in the same container-closure system as that in which the drug product is marketed; (5) Testing of drug products for reconstitution at the time of dispensing (as directed in the labeling) as well as after they are reconstituted."[345]

---

[340]  21 C.F.R. §201.5.

[341]  *Id.* §201.15.

[342]  *Id.*; 65 Fed. Reg. 14286 (Mar. 16, 2000).

[343]  *United States v. Research Labs.*, 126 F.2d 42, 45 (9th Cir. 1942).

[344]  21 C.F.R. §211.166(a).

[345]  *Id.*

827.    The purpose of stability testing is, in part, to determine the "appropriate storage conditions and expiration dates."[346]  And expiration dates, in turn, must be set to "assure that a drug product meets applicable standards of identity, strength, quality, and purity at the time of use."[347]  An expiration date is "related to any storage conditions stated on the labeling, as determined by stability studies listed in § 211.166."[348]

828.    GSK was required to conduct its own tests to determine and set accurate retest or expiration dates.

829.    The FDA made clear when it first adopted the expiration-date provision that the regulation means what it says.  The purpose of the expiration date is not merely to consider the "stability of a specific active ingredient."  Instead, a compliant expiration date must account for multiple factors, including "the stability of the inactive ingredients, the interaction of active and inactive ingredients, the manufacturing process, the dosage form, the container closure system, the conditions under which the drug product is shipped, stored, and handled by wholesalers and retailers, and the length of time between initial manufacture and final use."[349]

830.    The FDA expressly recognizes that an initial expiration date may not be the final expiration date: "Where data from accelerated studies are used to project a tentative expiration date that is beyond a date supported by actual shelf life studies, there must be stability studies conducted . . . until the tentative expiration date is verified or the appropriate expiration date determined."[350]

---

[346]  *Id.*

[347]  *Id.* §211.137(a).

[348]  *Id.* §211.137(b).

[349]  43 Fed. Reg. 45059 (Sept. 29, 1978).

[350]  21 C.F.R. §211.166(b).

831.     After a drug is approved, a brand manufacturer can make changes to its drug application.  To do so, manufacturers must comply with the requirements of §§ 314.70 and 314.71.[351]

832.     Some of the requirements in those regulations require a brand manufacturer of an approved drug to obtain FDA approval before implementing a label change.[352]

833.     But the FDA has long recognized a "changes being effected" ("CBE") supplement that permits a manufacturer to make immediate changes, subject to the FDA's post-change review.[353]

834.     A manufacturer of an approved drug can use the CBE supplement to immediately make an "[a]ddition to a specification or changes in the methods or controls to provide increased assurance that the drug substance or drug product will have the characteristics of identity, strength quality, purity, or potency that it purports or is represented to possess."[354]  "A specification is defined as a list of tests, references to analytical procedures, and appropriate acceptance criteria that are numerical limits, ranges, or other criteria for the tests described."[355]

835.     A manufacturer, therefore, need not seek FDA pre-approval to make changes to its stability studies to identify the appropriate expiration date – which must "assure that a drug product meets applicable standards of identity, strength, quality, and purity at the time of use"[356] – or to ensure that the drug is shipped and stored under appropriate conditions.

---

[351] *See id.* §314.97(a) (requiring generics to comply with §§314.70, 314.71).

[352] *Id.* §314.70(b).

[353] *Id.* §314.70(c)(3), (c)(6).

[354] *Id.* §314.70(c)(6)(i).

[355] 65 Fed. Reg. 83042 (Dec. 29, 2000).

[356] 21 C.F.R. §211.137(a).

836.    A manufacturer of an approved drug can also use the CBE supplement to make changes "in the labeling to reflect newly acquired information" in order to "add or strengthen a contraindication, warning, precaution, or adverse reaction for which the evidence of a causal association satisfies the standard for inclusion in the labeling under §201.57(c) of this chapter"; "add or strengthen an instruction about dosage and administration that is intended to increase the safe use of the drug product"; and "delete false, misleading, or unsupported indications for use or claims for effectiveness."[357]

837.    A manufacturer of an approved drug may make minor changes to a label with no approval or notice, so long as that change is described in an annual report.  The illustrative but non-exhaustive list of minor changes includes "[a] change in the labeling concerning the description of the drug product or in the information about how the drug product is supplied, that does not involve a change in the dosage strength or dosage form."[358]

838.    A "minor change" further includes "[a]n extension of an expiration dating period based upon full shelf life data on production batches obtained from a protocol approved in the NDA."[359]

839.    At no time did GSK attempt to include a warning on the labels for ranitidine-containing products that consumers were at elevated risk of developing cancer if the products were: (a) exposed to excessive heat; (b) exposed to excessive moisture/humidity; (c) consumed with high-nitrite foods; or (d) consumed daily for a period of greater than a few months.  The FDA never rejected such cancer warnings.

---

[357] *Id.* §314.70(c)(6)(iii)(A), (C), (D).

[358] *Id.* §314.70 (d)(2)(ix).

[359] *Id.* §314.70 (d)(2)(vi); *see also id.* §314.70(d)(2)(vii), (x).

840.    At no time did GSK attempt to change its label to delete a false or misleading expiration date, or to add a proper expiration date to ensure that ranitidine-containing products would not break down into NDMA prior to human consumption.

841.    Based on the public scientific information, GSK knew or should have known that NDMA could form in ranitidine by exposure to heat, humidity, nitrites, the conditions of the human stomach, and/or over time in storage.

842.    At no time did GSK change its label to shorten the expiration date.  GSK had the ability to unilaterally make such label changes (for both prescription and OTC) without prior FDA approval pursuant to the CBE regulation.  Had GSK attempted such label changes, the FDA would not have rejected them.

843.    Because it failed to include appropriate expiration dates on their products, GSK made false statements in the labeling of its products.

844.    Because it failed to include a warning on the labels for ranitidine-containing products that consumers were at elevated risk of developing cancer if the products were: (i) exposed to excessive heat; (ii) exposed to excessive moisture/humidity; (iii) consumed with high-nitrite foods; (iv) consumed daily for a period of greater than a few months, GSK made false statements in the labeling of its products.

> ### 2.     Generic Prescription Manufacturer Defendants' Misrepresentations or Omissions of Material Fact in the Labeling of Prescription Ranitidine-Containing Products

845.    The Generic Prescription Manufacturer Defendants are Amneal, Apotex, Dr. Reddy's, Glenmark, Sandoz, Strides and Teva.

846.    21 U.S.C. §352(a)(1) provides, in pertinent part,

> A drug or device shall be deemed to be misbranded –
>
> (a) FALSE OR MISLEADING LABEL

(1) If its labeling is false or misleading in any particular.

(emphasis in original).

847.    A manufacturer is required to give adequate directions for the use of a pharmaceutical drug such that a "layman can use a drug safely and for the purposes for which it is intended,"[360] and conform to requirements governing the appearance of the label.[361]

848.    "Labeling" encompasses all written, printed, or graphic material accompanying the drug or device,[362] and therefore broadly encompasses nearly every form of promotional activity, including not only "package inserts" but also advertising.

849.    "Most, if not all, labeling is advertising.  The term 'labeling' is defined in the FDCA as including all printed matter accompanying any article.  Congress did not, and we cannot, exclude from the definition printed matter which constitutes advertising."[363]

850.    All drug manufacturers (brand and generic) are also responsible for conducting stability testing, which must be "designed to assess the stability characteristics of drug products."[364]  Manufacturers must adopt a written testing program that includes: "(1) Sample size and test intervals based on statistical criteria for each attribute examined to assure valid estimates of stability; (2) Storage conditions for samples retained for testing; (3) Reliable, meaningful, and specific test methods; (4) Testing of the drug product in the same container-closure system as that

---

[360] 21 C.F.R. §201.5.

[361] *Id.* §201.15.

[362] *Id.*; 65 Fed. Reg. 14286 (Mar. 16, 2000).

[363] *United States v. Research Labs.*, 126 F.2d 42, 45 (9th Cir. 1942).

[364] 21 C.F.R. §211.166(a).

in which the drug product is marketed; (5) Testing of drug products for reconstitution at the time of dispensing (as directed in the labeling) as well as after they are reconstituted."[365]

851.    The purpose of stability testing is, in part, to determine the "appropriate storage conditions and expiration dates."[366]  And expiration dates, in turn, must be set to "assure that a drug product meets applicable standards of identity, strength, quality, and purity at the time of use."[367]  An expiration date is "related to any storage conditions stated on the labeling, as determined by stability studies listed in § 211.166."[368]

852.    Notably, while generic medications must have the same active ingredients as their branded counterparts, the inactive ingredients, or excipients, may not necessarily be identical.  For this reason, the stability of each generic drug may differ from manufacturer to manufacturer, or even from manufacturing process to manufacturing process.

853.    Each generic manufacturer must therefore conduct its own tests to determine and set accurate retest or expiration dates.

854.    The FDA made clear when it first adopted the expiration-date provision that the regulation means what it says.  The purpose of the expiration date is not merely to consider the "stability of a specific active ingredient."  Instead, a compliant expiration date must account for multiple factors, including "the stability of the inactive ingredients, the interaction of active and inactive ingredients, the manufacturing process, the dosage form, the container closure system, the

---

[365] *Id.*

[366] *Id.*

[367] *Id.* §211.137(a).

[368] *Id.* §211.137(b).

conditions under which the drug product is shipped, stored, and handled by wholesalers and retailers, and the length of time between initial manufacture and final use."[369]

855.    The FDA expressly recognizes that an initial expiration date may not be the final expiration date: "Where data from accelerated studies are used to project a tentative expiration date that is beyond a date supported by actual shelf life studies, there must be stability studies conducted . . . until the tentative expiration date is verified or the appropriate expiration date determined."[370]

856.    After a drug is approved, a generic manufacturer can make changes to its drug application.  To do so, manufacturers must comply with the requirements of §§ 314.70 and 314.71.[371]

857.    Some of the requirements in those regulations require the manufacturer of an approved drug to obtain FDA approval before implementing a label change.[372]

858.    But the FDA has long recognized a CBE supplement that permits a manufacturer to make immediate changes, subject to the FDA's post-change review.[373]

859.    A manufacturer of an approved drug can use the CBE supplement to immediately make an "[a]ddition to a specification or changes in the methods or controls to provide increased assurance that the drug substance or drug product will have the characteristics of identity, strength quality, purity, or potency that it purports or is represented to possess."[374]  "A specification is

---

[369] 43 Fed. Reg. 45059 (Sept. 29, 1978).

[370] 21 C.F.R. §211.166(b).

[371] *See id.* §314.97(a) (requiring generics to comply with §§314.70, 314.71).

[372] *Id.* §314.70(b).

[373] *Id.* §314.70(c)(3), (c)(6).

[374] *Id.* §314.70(c)(6)(i).

defined as a list of tests, references to analytical procedures, and appropriate acceptance criteria that are numerical limits, ranges, or other criteria for the tests described."[375]

860.    A manufacturer, therefore, need not seek FDA pre-approval to make changes to its stability studies to identify the appropriate expiration date – which must "assure that a drug product meets applicable standards of identity, strength, quality, and purity at the time of use"[376] – or to ensure that the drug is shipped and stored under appropriate conditions.

861.    A manufacturer of an approved drug can also use the CBE supplement to make changes "in the labeling to reflect newly acquired information" in order to "add or strengthen a contraindication, warning, precaution, or adverse reaction for which the evidence of a causal association satisfies the standard for inclusion in the labeling under § 201.57(c) of this chapter"; "add or strengthen an instruction about dosage and administration that is intended to increase the safe use of the drug product"; and "delete false, misleading, or unsupported indications for use or claims for effectiveness."[377]

862.    A manufacturer of an approved drug may make minor changes to a label with no approval or notice, so long as that change is described in an annual report.  The illustrative but non-exhaustive list of minor changes includes "[a] change in the labeling concerning the description of the drug product or in the information about how the drug product is supplied, that does not involve a change in the dosage strength or dosage form."[378]

---

[375]  65 Fed. Reg. 83042 (Dec. 29, 2000).

[376]  21 C.F.R. §211.137(a).

[377]  *Id.* §314.70(c)(6)(iii)(A), (C), (D).

[378]  *Id.* §314.70 (d)(2)(ix).

863.    A "minor change" further includes "[a]n extension of an expiration dating period based upon full shelf life data on production batches obtained from a protocol approved in the NDA."[379]

864.    At no time did any Generic Manufacturer Defendant attempt to change its label to delete a false or misleading expiration date, or to add a proper expiration date to ensure that ranitidine-containing products would not break down into NDMA prior to human consumption.

865.    Based on the public scientific information, the Generic Manufacturer Defendants knew or should have known that NDMA could form in ranitidine by exposure to heat, humidity, nitrites, the conditions of the human stomach, and/or over time in storage.

866.    At no time did any Generic Manufacturer Defendant change its label to shorten the expiration date.  The Generic Manufacturer Defendants had the ability to unilaterally make such label changes (for both prescription and OTC) without prior FDA approval pursuant to the CBE regulation.  Had any Generic Manufacturer Defendant attempted such label changes, the FDA would not have rejected them.

867.    Because they failed to include appropriate expiration dates on their products, the Generic Manufacturer Defendants made false statements in the labeling of their products.

> **3.     Brand Name OTC Manufacturer Defendants'**
> **Misrepresentations or Omissions of Material Fact in the**
> **Labeling and Packaging of OTC Ranitidine-Containing**
> **Products**

868.    The Brand Name OTC Manufacturer Defendants are GSK, Pfizer, BI, and Sanofi.

869.    Each of these Brand Name OTC Manufacturer Defendants increased OTC Ranitidine–Containing Product demand through a fundamental and uniform message, parlayed

---

[379] *Id.* §314.70 (d)(2)(vi); *see also id.* §314.70(d)(2)(vii), (x).

through a multi-media campaign that OTC Zantac is safe, it can be used frequently, long-term, with high-nitrate and -nitrite foods, and poses no serious health risks such as those associated with the consumption of NDMA—a known human carcinogen.

870.    Examples of this campaign include a series of television, print, radio, and internet ads for OTC Zantac throughout the United States and to consumers that uniformly omitted the material safety risks that the products contained NDMA, that ranitidine was instable, that NDMA content could increase through the lapse of time and when exposed to heat or humidity, and that it should not be used in connection with high-nitrate or -nitrite foods.

871.    At the point of sale, Brand Name OTC Manufacturer Defendants sold Zantac packaged and labeled with misleading information and material omissions.

### a.    Misrepresentations or Omissions of Material Fact on the Labels

872.    21 U.S.C. §352(a)(1) provides, in pertinent part,

A drug or device shall be deemed to be misbranded—

(a) FALSE OR MISLEADING LABEL

(1) If its labeling is false or misleading in any particular.

(emphasis in original).

873.    The Brand Name OTC Manufacturer Defendants were required to give adequate directions for the use of a pharmaceutical drug such that a "layman can use a drug safely and for the purposes for which it is intended,"[380] and conform to requirements governing the appearance of the label.[381]

---

[380]  21 C.F.R. §201.5.

[381]  *Id.* §201.15.

874.   "Labeling" encompasses all written, printed, or graphic material accompanying the drug or device,[382] and therefore broadly encompasses nearly every form of promotional activity, including not only "package inserts" but also advertising.

875.   "Most, if not all, labeling is advertising.  The term 'labeling' is defined in the FDCA as including all printed matter accompanying any article.  Congress did not, and we cannot, exclude from the definition printed matter which constitutes advertising."[383]

876.   The Brand Name OTC Manufacturer Defendants were also responsible for conducting stability testing, which must be "designed to assess the stability characteristics of drug products."[384]  Manufacturers must adopt a written testing program that includes: "(1) Sample size and test intervals based on statistical criteria for each attribute examined to assure valid estimates of stability; (2) Storage conditions for samples retained for testing; (3) Reliable, meaningful, and specific test methods; (4) Testing of the drug product in the same container-closure system as that in which the drug product is marketed; (5) Testing of drug products for reconstitution at the time of dispensing (as directed in the labeling) as well as after they are reconstituted."[385]

877.   The purpose of stability testing is, in part, to determine the "appropriate storage conditions and expiration dates."[386]  And expiration dates, in turn, must be set to "assure that a drug product meets applicable standards of identity, strength, quality, and purity at the time of

---

[382]   *Id.*; 65 Fed. Reg. 14286 (Mar. 16, 2000).

[383]   *United States v. Research Labs.*, 126 F.2d 42, 45 (9th Cir. 1942).

[384]   21 C.F.R. §211.166(a).

[385]   *Id.*

[386]   *Id.*

use."[387]  An expiration date is "related to any storage conditions stated on the labeling, as determined by stability studies listed in §211.166."[388]

878.    Each Brand Name OTC Manufacturer Defendant must conduct its own tests to determine and set accurate retest or expiration dates.

879.    The FDA made clear when it first adopted the expiration-date provision that the regulation means what it says.  The purpose of the expiration date is not merely to consider the "stability of a specific active ingredient."  Instead, a compliant expiration date must account for multiple factors, including "the stability of the inactive ingredients, the interaction of active and inactive ingredients, the manufacturing process, the dosage form, the container closure system, the conditions under which the drug product is shipped, stored, and handled by wholesalers and retailers, and the length of time between initial manufacture and final use."[389]

880.    The FDA expressly recognizes that an initial expiration date may not be the final expiration date: "Where data from accelerated studies are used to project a tentative expiration date that is beyond a date supported by actual shelf life studies, there must be stability studies conducted . . . until the tentative expiration date is verified or the appropriate expiration date determined."[390]

881.    After a drug is approved, a brand manufacturer can make changes to its drug application.  To do so, manufacturers must comply with the requirements of §§ 314.70 and 314.71.[391]

---

[387]  *Id.* §211.137(a).

[388]  *Id.* §211.137(b).

[389]  43 Fed. Reg. 45059 (Sept. 29, 1978).

[390]  21 C.F.R. §211.166(b).

[391]  *See id.* §314.97(a) (requiring generics to comply with §§314.70, 314.71).

882.    Some of the requirements in those regulations require a brand manufacturer of an approved drug to obtain FDA approval before implementing a label change.[392]

883.    But the FDA has long recognized a CBE supplement that permits a manufacturer to make immediate changes, subject to the FDA's post-change review.[393]

884.    A manufacturer of an approved drug can use the CBE supplement to immediately make an "[a]ddition to a specification or changes in the methods or controls to provide increased assurance that the drug substance or drug product will have the characteristics of identity, strength quality, purity, or potency that it purports or is represented to possess."[394]  "A specification is defined as a list of tests, references to analytical procedures, and appropriate acceptance criteria that are numerical limits, ranges, or other criteria for the tests described."[395]

885.    A manufacturer, therefore, need not seek FDA pre-approval to make changes to its stability studies to identify the appropriate expiration date—which must "assure that a drug product meets applicable standards of identity, strength, quality, and purity at the time of use"[396]—or to ensure that the drug is shipped and stored under appropriate conditions.

886.    A manufacturer of an approved drug can also use the CBE supplement to make changes "in the labeling to reflect newly acquired information" in order to "add or strengthen a contraindication, warning, precaution, or adverse reaction for which the evidence of a causal association satisfies the standard for inclusion in the labeling under § 201.57(c) of this chapter"; "add or strengthen an instruction about dosage and administration that is intended to increase the

---

[392] *Id.* §314.70(b).

[393] *Id.* §314.70(c)(3), (c)(6).

[394] *Id.* §314.70(c)(6)(i).

[395] 65 Fed. Reg. 83042 (Dec. 29, 2000).

[396] 21 C.F.R. §211.137(a).

safe use of the drug product"; and "delete false, misleading, or unsupported indications for use or claims for effectiveness."[397]

887.    A manufacturer of an approved drug may make minor changes to a label with no approval or notice, so long as that change is described in an annual report.  The illustrative but non-exhaustive list of minor changes includes "[a] change in the labeling concerning the description of the drug product or in the information about how the drug product is supplied, that does not involve a change in the dosage strength or dosage form."[398]

888.    A "minor change" further includes "[a]n extension of an expiration dating period based upon full shelf life data on production batches obtained from a protocol approved in the NDA."[399]

889.    At no time did any Brand Name OTC Manufacturer Defendant attempt to include a warning on the labels for ranitidine-containing products that consumers were at elevated risk of developing cancer if the products were: (i) exposed to excessive heat; (ii) exposed to excessive moisture/humidity; (iii) consumed with high-nitrite foods; (iv) consumed daily for a period of greater than a few months.  The FDA never rejected such cancer warnings.

890.    At no time did any Brand Name OTC Manufacturer Defendant attempt to change its label to delete a false or misleading expiration date, or to add a proper expiration date to ensure that ranitidine-containing products would not break down into NDMA prior to human consumption.

---

[397]  *Id.* §314.70(c)(6)(iii)(A), (C), (D).

[398]  *Id.* §314.70 (d)(2)(ix).

[399]  *Id.* §314.70 (d)(2)(vi); *see also id.* §314.70(d)(2)(vii), (x).

891.    Based on the public scientific information, the Brand Name OTC Manufacturer Defendants knew or should have known that NDMA could form in ranitidine by exposure to heat, humidity, nitrites, the conditions of the human stomach, and/or over time in storage.

892.    At no time did any Brand Name OTC Manufacturer Defendant change its label to shorten the expiration date.  Brand Name OTC Manufacturer Defendants had the ability to unilaterally make such label changes (for both prescription and OTC) without prior FDA approval pursuant to the CBE regulation.  Had any Brand Name OTC Manufacturer Defendant attempted such label changes, the FDA would not have rejected them.

893.    Because they failed to include appropriate expiration dates on their products, Brand Name OTC Manufacturer Defendants made false statements in the labeling of their products.

894.    Because they failed to include a warning on the labels for ranitidine-containing products that consumers were at elevated risk of developing cancer if the products were: (i) exposed to excessive heat; (ii) exposed to excessive moisture/humidity; (iii) consumed with high-nitrite foods; (iv) consumed daily for a period of greater than a few months, Brand Name OTC Manufacturer Defendants made false statements in the labeling of their products.

### b.    Misrepresentations or Omissions of Material Fact in Packaging

895.    21 U.S.C. §352(i)(1) provides, in pertinent part,

A drug or device shall be deemed to be misbranded—

(i) DRUG; MISLEADING CONTAINER; IMITATION; OFFER FOR SALE

UNDER ANOTHER NAME

(1)  If it is a drug and its container is so made, formed, or filled as to be misleading;

(emphasis in original).

896.     As alleged above, each Brand Name OTC Manufacturer Defendant was required to conduct stability testing, which was required to take the container into account.

897.     As previously alleged, ranitidine degrades into NDMA more quickly at higher temperatures, at higher humidity levels, and under other poor storage or handling conditions.

898.     The Brand Name OTC Manufacturer Defendants knew that ranitidine had an inherent risk of degrading into NDMA because it has both a nitroso (N) and dimethylamine (DMA), which are all the ingredients needed to form NDMA.

899.     The ranitidine-containing products Plaintiffs consumed had excessive levels of NDMA in part because they were subjected to high levels of humidity and were stored for a long period of time (often in humid locations such as bathrooms).

900.     A substantial factor in NDMA formation was the container system manufacturers chose.  Pill bottles with large numbers of units of ranitidine are likely to be stored for long periods by consumers after the seal is broken.  This exposes the remaining units to humidity over time, which produces NDMA.

901.     A different container would have reduced the amount of NDMA Plaintiffs consumed in several ways:

(a)     Placing each unit of ranitidine in a blister pack or similar individually packaged container would ensure humidity control until the consumer used each unit.

(b)     Reducing the number of units of ranitidine in each bottle to a low number would ensure the unused units were subject to humidity for only a shorter time period, since consumers would purchase new bottles more frequently.

(c)     Reinforcing compliance with any labeling instructions to stop use after 14 days.

902.     Each Brand Name OTC Manufacturer Defendant could have unilaterally changed the container system it sold.  FDA guidance specifically allows changing the number of units in a

non-sterile drug under its Changes-Being Effected regulation.  *See* FDA, *Guidance for Industry, Changes to an Approved NDA or ANDA, Revision 1*, at 21 (Apr. 2004), https://www.fda.gov/media/71846/download ("A change in the number of units (e.g., tablets, capsules) or labeled amount (e.g., grams, milliliters) of a nonsterile drug product in a unit-of-use container.").  FDA guidance also would treat changing to a unit-dose container such as a blister-pack to be a moderate change that could be implemented through the Changes-Being Effected regulation.  *See id.* at 20-21 (only requiring pre-approval for *sterile* drug products, when moving *from* unit dose containers to multiple dose containers, rather than non-sterile drug products moving to unit dose containers).

903.    Brand Name OTC Manufacturer Defendants were not required to put their ranitidine in the same type of containers as the other OTC Zantac or OTC Ranitidine-Containing Products, because the duty of sameness does not apply to containers.  It applies only to the drug label.  *See* 21 C.F.R. §314.94(a)(8)(iv) ("Labeling (including the container label, package insert, and, if applicable, Medication Guide) proposed for the drug product must be the same as the labeling approved for the reference listed drug ….").

904.    A reasonably prudent manufacturer would have changed the containers for ranitidine-containing products to protect the products from humidity and reduce the time between manufacture and consumption, both of which would reduce the amount of NDMA produced.

905.    As examples only, beginning in or about December 2006, BI sold Zantac 75 mg under NDC 0597-0122-96 in a bottle containing 96 pills, under NDC 0597-0122-81 in a bottle containing 80 pills, and under NDC 0597-0122-61 in a container containing 100 pills in pouches.

906.    As examples only, beginning in or about December 2006, BI sold Zantac Maximum Strength 150 Cool Mint under NDC 0597-0120-87 in a bottle containing 85 tablets, under NDC

0597-0120-82 in a container containing 80 tablets in pouches, and under NDC 0597-0120-78 in a bottle containing 78 tablets.

907. An example of a BI label for a package of 80 tablets follows:



908.     As examples only, beginning in or about April 2018, Sanofi sold Zantac 150 mg under NDC 41167-0310-6 in a bottle containing 90 tablets, under NDC 41167-0310-9 in a bottle containing 78 pills, and under 41167-0310-8 in two bottles packaged in one carton with each bottle containing 60 tablets (for a 120-tablet package).

909.     An example of a Sanofi label for a package of 90 tablets follows:



910.     Because they failed to package their products in appropriate container sizes, Brand Name OTC Manufacturer Defendants made false statements in the packaging of their products.

911.     Brand Name OTC Manufacturer Defendants' conduct, as described above, was reckless.  Defendants regularly risked the lives of consumers and users of their products, including Plaintiffs, with full knowledge of the dangers of their products.  Brand Name OTC Manufacturer Defendants have made conscious decisions not to change the containers for their ranitidine-containing products.  Brand Name OTC Manufacturer Defendants' reckless conduct therefore warrants an award of punitive damages.

### 4.    Store-Brand Retailer Defendants' Misrepresentations or Omissions of Material Fact in the Labeling and Packaging of OTC Ranitidine-Containing Products

912.     The Store-Brand Retailer Defendants (known as Private-Label Distributors "PLD") are Walmart, Walgreens, CVS, and Rite-Aid.

913.     The FDA considers a firm that does not manufacture or process the drug but instead markets and distributes it under its own trade name, and labels a drug product made by someone else, a PLD.[400]

914.     While a PLD contracts with a contract manufacturing organization (CMO) to manufacture and process a drug, the FDA holds the PLD responsible for ensuring that all of its products comply with CGMPs, are not adulterated for failure to comply with CGMPs, and are not misbranded.

915.     Delegating manufacturing or testing operations for a store-branded product to other companies does not exonerate the PLD from complying with its regulatory and state law requirements.

---

[400]  21 C.F.R. §207.1.

916.     Thus, a PLD that contracts out some or all of its operations must establish a system of production and process controls to ensure its private-label product is not adulterated or misbranded prior to distribution or sale.

### a. Walmart's Misrepresentations or Omissions of Material Fact in the Labeling and Packaging of OTC Ranitidine-Containing Products

#### (i) Walmart is a Private Label Distributor for the Private Label Product Equate Ranitidine

917.     Walmart offers store brands, which are low-priced alternatives to name-brand products. Walmart has numerous store brands, each catering to a different consumer need.

918.     Almost all products offered under Walmart store-brands are private label products, meaning Walmart produces them through subsidized contracts awarded to the lowest bidder.

919.     Equate is Walmart's store brand, or private label, for consumable pharmacy and health and beauty items, including OTC medications.

920.     Walmart contracts with a third-party manufacturer to manufacture its Equate OTC medications.

921.     With respect to OTC medications, Walmart is considered a PLD. As a PLD, Walmart is responsible for ensuring that all of its products comply with cGMPs and are not adulterated for failure to comply with CGMPs and are not misbranded.

922.     Walmart requires all suppliers that provide prescription pharmaceutical products to its Pharmacy Distribution Centers, either directly or indirectly, to abide by its Responsible Sourcing Standards for Suppliers.[401]

---

[401] Wal-Mart Stores, Inc., *Prescription Product Supplier Requirements*, https://cdn.corporate.walmart.com/cc/a8/5def88ed41bd82ece9d82124c4ce/final-02212017-prescription-product-supplier-requirements.pdf (last visited Feb. 21, 2021).

923.    Walmart publishes "Supplier Requirements for Over-the-Counter Drugs, Vitamins, and Dietary & Nutritional Supplements" ("Supplier Requirements").[402]

924.    Walmart's Supplier Requirements demonstrate its knowledge that it is ultimately responsible for ensuring that all of its products comply with cGMPs and are not adulterated for failure to comply with CGMPs and are not misbranded.

925.    The Supplier Requirements mandate that all suppliers must provide "transparency" about the facilities used to produce any materials sold in Walmart stores.[403]

926.    Walmart claims that the transparency "allows Walmart to assess supply chain risk, monitor for compliance…and deploy resources in a risk-based manner."[404]

927.    In order to ship any pharmaceutical product into any of Walmart's Pharmacy Distribution Centers, Walmart claims that the supplier must meet or exceed all applicable laws and requirements, as well as adhere to any additional requirements stated in the agreement.[405]

928.    Walmart also claims that "Facility disclosure is essential to achieving true supply chain transparency."   To this end, Walmart requires that each facility that engages in the manufacture, preparation, propagation, compounding, processing, packaging, labeling, storage,

---

[402] Wal-Mart Stores, Inc., *Supplier Requirements for Over-the-Counter Drugs, Vitamins, and Dietary & Nutritional Supplements*, https://cdn.corporate.walmart.com/ad/a5/af4737574b789a79f0f970a95668/health-wellness-product-safety-requirements.pdf (last accessed Feb. 21, 2021).

[403] Wal-Mart Stores, Inc., Global Ethics & Compliance, *Disclosure Policy and Guidance* (Feb. 2021), https://one.walmart.com/content/dam/responsiblesourcing/guidancedocuments/disclosure_policy_and_guidance-/Resource_DisclosurePolicyGuidance_ENG.pdf.

[404] *Id*.

[405] Wal-Mart Stores, Inc., *supra* n.401.

and distribution of sourced product must be disclosed to Walmart's "Health & Wellness Product Safety" department.[406]

929.     Pursuant to FDA requirements that the PLD is responsible for the manufacture and distribution of its private-label products, Walmart requires its suppliers to provide:

> a third party certification and audit showing conformance with current FDA Good Manufacturing Practices (cGMP) specific for the type of products manufactured, prepared, propagated, compounded, processed, stored, packaged, or labeled in each respective facility or operation. This means that each facility disclosed as outlined under the Factory & Facility Disclosure section must provide cGMP certification and cGMP conformance audit documentation by a Walmart approved third party auditing body annually to Health & Wellness Product Safety. Third party cGMP audits and certifications are in addition to any audits required by Walmart's Responsible Sourcing team.[407]

930.     Audit results containing "[i]tems showing non-conformance to standards will require submission of corrective measures acceptable to Health & Wellness Product Safety in order to receive approval" by Walmart.[408]

931.     As part of its Equate OTC product line, Walmart sold ranitidine.

932.     An example of an Equate label for Walmart's store-brand or private-label ranitidine follows:[409]

---

[406] *Id.*

[407] *Id.* at 7.

[408] *Id.* at 8.

[409] Walmart, https://www.walmart.com/grocery/ip/Equate-Maximum-Strength-Acid-Reducer-Ranitidine-Tablets-150-mg-220-Ct/24548560?athcpid=24548560&athpgid=similaritems&athcgid=null&athznid=null&athieid=null&athstid=CS014&athguid=19f5a29c-716c-4e72-98be-a41483b2e8eb&athena=true (last visited Feb. 21, 2021).



933.    Walmart's Equate ranitidine products can be identified by the unique labeler code assigned to Walmart by the FDA: 49035. Any NDC starting with 49035 is a Walmart private-label product.

934.    A list of the Equate ranitidine products sold by Walmart as the PLD includes, *inter alia*:

| Product | Dosage | Package | NDC | ANDA | ANDA Manufacturer | Start Marketing Approval Date |
|---|---|---|---|---|---|---|
| **Equate Ranitidine (Walmart)** | | | | | | |
| | 150 mg | 24 tablet pack | 49035-608-02 | ANDA091429 | Perrigo | 2/12/2012 |
| | 150 mg | 90 tablet bottle | 49035-608-75 | ANDA091429 | Perrigo | 2/12/2012 |
| | 150 mg | 65 tablet bottle | 49035-800-09 | ANDA091429 | Perrigo | 2/22/2013 |
| | 150 mg | 90 tablet bottle | 49035-800-75 | ANDA091429 | Perrigo | 2/22/2013 |
| | 150 mg | 65 tablet, 2 bottles in 1 carton | 49035-800-81 | ANDA091429 | Perrigo | 2/22/2013 |
| | 75 mg | 150 tablet bottle | 49035-876-47 | ANDA076195 | Perrigo | 5/19/2017 |
| | 150 mg | 65 tablet, 2 bottles in 1 carton | 49035-404-13 | ANDA078192 | Dr. Reddys Labs Ltd | 1/5/2010 |
| | 150 mg | 24 tablet bottle | 49035-404-34 | ANDA078192 | Dr. Reddys Labs Ltd | 1/5/2010 |
| | 150 mg | 65 tablet bottle | 49035-404-61 | ANDA078192 | Dr. Reddys Labs Ltd | 1/5/2010 |
| | 150 mg | 220 tablet bottle | 49035-404-65 | ANDA078192 | Dr. Reddys Labs Ltd | 1/5/2010 |
| | 150 mg | 65 tablet bottle | 49035-117-06 | ANDA200172 | Apotex Inc | 6/29/2017 |
| | 150 mg | 65 tablet bottle | 49035-852-09 | ANDA091429 | Perrigo | 2/12/2012 |
| | 75 mg | 30 tablet bottle | 49035-353-30 | ANDA201745 | Strides Pharma | 7/10/2012 |
| | 75 mg | 150 tablet bottle | 49035-353-55 | ANDA201745 | Strides Pharma | 7/10/2012 |
| | 75 mg | 10 tablet blister pack | 49035-353-69 | ANDA201745 | Strides Pharma | 7/10/2012 |

935.     Walmart contracted with Perrigo, Dr. Reddy's Laboratories, Apotex, and Strides to manufacture its Equate ranitidine products.

936.     Delegating manufacturing or testing operations for Equate ranitidine to other companies did not exonerate Walmart as the PLD from its regulatory requirements to establish a system of production and process controls to ensure its private-label products were not adulterated or misbranded prior to sale.

<div align="center">

**(ii)     Walmart's Misrepresentations or Omissions of Material Fact on the Labels**
</div>

937.     21 U.S.C. §352(a)(1) provides, in pertinent part,

> A drug or device shall be deemed to be misbranded –
>
> (a) FALSE OR MISLEADING LABEL
>
> (1) If its labeling is false or misleading in any particular.

(emphasis in original).

938.     21 C.F.R. §210.1(a) states that the CGMPs establish "minimum current good manufacturing practice for methods to be used in, and the facilities or controls to be used for, the manufacture, processing, packing, or holding of a drug to assure that such drug meets the requirements of the act as to safety, and has the identity and strength and meets the quality and purity characteristics that it purports or is represented to possess."  Entities at all phases of the design, manufacture, and distribution chain are bound by these requirements.

939.     Pursuant to 21 C.F.R. §211.142(b), the warehousing of drug products shall provide for "[s]torage of drug products under appropriate conditions of temperature, humidity, and light so that the identity, strength, quality, and purity of the drug products are not affected."  In other words, Walmart had a duty and was obligated to ensure that its ranitidine was properly stored, handled, and warehoused by Walmart or its suppliers.

940. Testing conducted by the FDA confirms that improper storage of ranitidine has resulted in extremely high levels of NDMA.[410]  The FDA has also concluded that NDMA can increase in ranitidine even under storage conditions allowed by the labels, and NDMA has been found to increase significantly in samples stored at higher temperatures, including temperatures the product may be exposed to during normal distribution and handling.  FDA's testing also showed that the level of NDMA in ranitidine-containing products increases with time.  And while Emery's Citizen Petition sought to obtain a directive regarding temperature-controlled shipping of ranitidine, which was necessary given the time and temperature sensitivity of the drug, that request was deemed moot by the FDA because the agency sought to withdraw ranitidine-containing products altogether.

941. Nothing prevented Walmart from, on its own, taking actions to prevent accumulation of NDMA in ranitidine-containing products by ensuring storage and transport at the lower end of the temperature range contained on the labels. Nothing prevented Walmart from ensuring that ranitidine was not exposed to humidity or moisture.

942. At no time did Walmart attempt to change, or cause its suppliers to attempt to change, the Equate ranitidine label to delete a false or misleading expiration date, or to add a proper expiration date to ensure that Equate ranitidine products would not break down into NDMA prior to human consumption.

943. An example of an Equate label reflecting that expiration dates were included on the packaging follows:

---

[410] Woodcock Letter, *supra* n.91.



944.    Based on the public scientific information, Walmart knew or should have known that NDMA could form in ranitidine by exposure to heat, humidity, nitrites, the conditions of the human stomach, and/or over time in storage.

945.    At no time did Walmart change its Equate ranitidine label to shorten the expiration date.  Walmart had the ability to cause its suppliers to unilaterally make such label changes for Equate ranitidine without prior FDA approval pursuant to the CBE regulation.  Had Walmart attempted such label changes, the FDA would not have rejected them.

946.    Because Walmart failed to include appropriate expiration dates on its products, Walmart made false statements in the labeling of its products.

(iii)    **Walmart's Misrepresentations or Omissions of Material Fact in Packaging**

947.    21 U.S.C. §352(i)(1) provides, in pertinent part,

A drug or device shall be deemed to be misbranded –

(i) **DRUG; MISLEADING CONTAINER; IMITATION; OFFER FOR SALE UNDER ANOTHER NAME**

(1) If it is a drug and its container is so made, formed, or filled as to be misleading;….

(emphasis in original).

948.    As alleged above, each PLD was required to conduct, or cause its contract manufacturer to conduct, stability testing, which was required to take the container into account.

949.    As previously alleged, ranitidine degrades into NDMA more quickly at higher temperatures, at higher humidity levels, and under other poor storage or handling conditions.

950.    Walmart knew or should have known that ranitidine had an inherent risk of degrading into NDMA because it has both a nitroso (N) and dimethylamine (DMA), which are all the ingredients needed to form NDMA.

951.    The ranitidine-containing products Plaintiffs consumed had excessive levels of NDMA in part because they were subjected to high levels of humidity and were stored for a long period of time (often in humid locations such as bathrooms).

952.    A substantial factor in NDMA formation was the container system Walmart chose. Pill bottles with large numbers of units of ranitidine are likely to be stored for long periods by consumers after the seal is broken.  This exposes the remaining units to humidity over time, which produces NDMA.

953.    A different container would have reduced the amount of NDMA Plaintiffs consumed in several ways:

(a)    Placing each unit of ranitidine in a blister pack or similar individually packaged container would ensure humidity control until the consumer used each unit.

(b)    Reducing the number of units of ranitidine in each bottle to a low number would ensure the unused units were subject to humidity for only a shorter time period, since consumers would purchase new bottles more frequently.

(c)    Reinforcing compliance with any labeling instructions to stop use after 14 days.

954.    Walmart could have changed, or caused its contract manufacturers to change, the container system it sold.  FDA guidance specifically allows changing the number of units in a non-sterile drug under its Changes-Being Effected regulation.[411]  FDA guidance also would treat changing to a unit-dose container such as a blister-pack to be a moderate change that could be implemented through the Changes-Being Effected regulation.[412]

955.    Walmart was not required to put its ranitidine in the same type of containers as the other OTC Zantac or OTC Ranitidine-Containing Products, because the duty of sameness does not apply to containers.  It applies only to the drug label.[413]

---

[411]  *See* FDA, *Guidance for Industry, Changes to an Approved NDA or ANDA, Revision 1*, at 21 (Apr. 2004), https://www.fda.gov/media/71846/download ("A change in the number of units (e.g., tablets, capsules) or labeled amount (e.g., grams, milliliters) of a nonsterile drug product in a unit-of-use container.").

[412]  *See id.* at 20-21 (only requiring pre-approval for ***sterile*** drug products, when moving ***from*** unit dose containers to multiple dose containers, rather than non-sterile drug products moving to unit dose containers).

[413]  *See* 21 C.F.R. §314.94(a)(8)(iv) ("Labeling (including the container label, package insert, and, if applicable, Medication Guide) proposed for the drug product must be the same as the labeling approved for the reference listed drug ….").

956.    A reasonably prudent PLD would have changed the containers for ranitidine-containing products to protect the products from humidity and reduce the time between manufacture and consumption, both of which would reduce the amount of NDMA produced.

957.    As reflected in the chart above, and as an example only, Walmart sold its Equate ranitidine product in bottles with as many as 220 tablets.

958.    A copy of the label for the Equate ranitidine product with 220 tablets follows:



959.    Further the demand for large quantity package sizes put Defendant on notice that purchases were made for regular and extended use, and not for a one-time occasion.

960.    Because Walmart failed to package its products in appropriate container sizes, Walmart made false statements in the packaging of its products.

961.    Walmart's conduct, as described above, was reckless.  Defendant regularly risked the lives of consumers and users of their products, including Plaintiffs, with full knowledge of the dangers of its products.  Walmart made conscious decisions not to change the containers for its

ranitidine-containing products. Walmart's reckless conduct therefore warrants an award of punitive damages.

> ### b. Walgreens' Misrepresentations or Omissions of Material Fact in the Labeling and Packaging of OTC Ranitidine-Containing Products
>
> #### (i) Walgreens Is a Private Label Distributor for the Private-Label Product Wal-Zan Ranitidine

962.   Walgreens offers store brands, which are low-priced alternatives to name-brand products. Walgreens has numerous store brands, each catering to a different consumer need.

963.   Almost all products offered under Walgreens store-brands are private label products, meaning Walgreens produces them through subsidized contracts awarded to the lowest bidder.

964.   Walgreens uses the pre-fix "Wal-" together with a portion of the brand-name of an OTC medication to name its private-label OTC products. For example, Wal-Flu is Walgreens' private-label product that competes with Theraflu, Wal-itin is Walgreens' private label product that competes with Claritin, and Wal-Dryl is Walgreens' private-label product that is comparable to Benadryl.

965.   Walgreens contracts with third-party manufacturers to manufacture its "Wal-" OTC medications.

966.   With respect to OTC medications, Walgreens is considered a PLD. As a PLD, Walgreens is responsible for ensuring that all of its products comply with cGMPs and are not adulterated for failure to comply with CGMPs and are not misbranded.

967.     Walgreens states that it understands that consumers "want to feel confident the products they use are safe for their intended purposes."[414]

968.     Walgreens claims it aims to do "business fairly and with integrity" which has led Walgreens to "drive responsible sourcing practices throughout our supply chain, protecting human rights and engaging with suppliers around ethical and environmental issues."[415]

969.     According to Walgreens, "[p]atient safety lies at the heart of our management of pharmacy operations, and we strive to be the industry leader by continuously seeking ways to minimize risks to patients in our dispensing, pharmacy services and advance and pharmacy supply chain operations."[416]

970.     Walgreens claims it engages in "ongoing supplier ethical compliance assessments" which includes "engaging with suppliers to improve when issues are detected."

971.     Walgreens also claims to screen suppliers against a matrix which assesses the suppliers' management systems to discern whether they are operating in any way which violates Walgreens' ethical sourcing commitments.[417]

972.     Walgreens' supplier requirements demonstrate its knowledge that it is ultimately responsible for ensuring that all of its products comply with cGMPs and are not adulterated for failure to comply with CGMPs and are not misbranded.

---

[414] Walgreen Co., Product Integrity, https://www.walgreens.com/topic/sr/sr_product_integrity_home.jsp (last visited Feb. 21, 2021).

[415] Walgreens Boots Alliance, *Corporate Social Responsibility Report 2019* (Jan 27, 2020), https://www.walgreensbootsalliance.com/sites/www/files/asset/Walgreens-Boots-Alliance-2019-Corporate-Social-Responsibility-Report_2.pdf.

[416] *Id*.

[417] *Id*.

973.     As part of its "Wal-" OTC product line, Walgreens sold ranitidine labeled "Wal-Zan," which was intended to compete with brand-name Zantac OTC products.

974.     An example of a Wal-Zan label for Walgreens' store-brand or private-label ranitidine follows:[418]



975.     Walgreens Wal-Zan ranitidine products can be identified by the unique labeler code assigned to Walgreens by the FDA: 0363. Any NDC number starting with 0363 is a Walgreens private-label product.

976.     A list of the Wal-Zan ranitidine products sold by Walgreens as the PLD includes, *inter alia*:

---

[418] upcitemdb, UPC 311917126432, https://www.upcitemdb.com/upc/311917126432 (last visited Feb. 21, 2021).

| Product | Dosage | Package | NDC | ANDA | ANDA Manufacturer | Start Marketing Approval Date |
|---|---|---|---|---|---|---|
| Wal-Zan Ranitidine | | | | | | |
| | 150 mg | 200 tablet bottle | 0363-0010-01 | ANDA078192 | Dr. Reddys | 6/11/2011 |
| | 150 mg | 36 tablet bottle | 0363-0010-23 | ANDA078192 | Dr. Reddys | 6/11/2011 |
| | 150 mg | 65 tablet bottle | 0363-0010-26 | ANDA078192 | Dr. Reddys | 6/11/2011 |
| | 150 mg | 32 tablet bottle | 0363-0010-32 | ANDA078192 | Dr. Reddys | 6/11/2011 |
| | 150 mg | 24 tablet bottle | 0363-0010-34 | ANDA078192 | Dr. Reddys | 6/11/2011 |
| | 150 mg | 50 tablet bottle | 0363-0010-50 | ANDA078192 | Dr. Reddys | 6/11/2011 |
| | 150 mg | 65 tablet bottle | 0363-0010-61 | ANDA078192 | Dr. Reddys | 6/11/2011 |
| | 75 mg | 30 tablet bottle | 0363-0131-30 | ANDA075294 | Dr. Reddys | 1/6/2014 |
| | 75 mg | 45 tablet bottle | 0363-0131-33 | ANDA075294 | Dr. Reddys | 1/6/2014 |
| | 75 mg | 80 tablet bottle | 0363-0131-80 | ANDA075294 | Dr. Reddys | 1/6/2014 |
| | 150 mg | 65 tablet bottle | 0363-1030-01 | ANDA200172 | Apotex | 7/31/2015 |
| | 150 mg | 24 tablet bottle | 0363-1030-02 | ANDA200172 | Apotex | 7/31/2015 |
| | 150 mg | 50 tablet bottle | 0363-1030-05 | ANDA200172 | Apotex | 7/31/2015 |
| | 150 mg | 65 tablet bottle | 0363-1030-06 | ANDA200172 | Apotex | 7/31/2015 |
| | 150 mg | 200 tablet bottle | 0363-1030-07 | ANDA200172 | Apotex | 7/31/2015 |
| | 150 mg | 95 tablet bottle | 0363-1030-09 | ANDA200172 | Apotex | 7/31/2015 |
| | 150 mg | 95 tablet bottle | 0363-0852-01 | ANDA091429 | Perrigo | 1/11/2019 |
| | 150 mg | 65 tablet bottle | 0363-0852-09 | ANDA091429 | Perrigo | 1/11/2019 |
| | 150 mg | 1 tablet in 1 blister pack, 8 blister pack | 0363-0852-51 | ANDA091429 | Perrigo | 1/11/2019 |
| | 150 mg | 1 tablet in 1 blister pack, 24 blister pack | 0363-0852-62 | ANDA091429 | Perrigo | 1/11/2019 |
| | 150 mg | 200 tablet bottle | 0363-0852-82 | ANDA091429 | Perrigo | 1/11/2019 |
| | 75 mg | 80 tablet bottle | 0363-0352-08 | ANDA201745 | Strides | 9/24/2013 |
| | 75 mg | 30 tablet bottle | 0363-0352-30 | ANDA201745 | Strides | 9/24/2013 |
| | 75 mg | 80 tablet bottle | 0363-1876-27 | ANDA076195 | Perrigo | 1/11/2019 |
| | 75 mg | 30 tablet bottle | 0363-1876-65 | ANDA076195 | Perrigo | 1/11/2019 |
| | 75 mg | 80 tablet bottle | 0363-1029-08 | ANDA075167 | Apotex | 7/31/2015 |
| | 75 mg | 80 tablet bottle | 0363-0271-27 | ANDA076760 | Wockhardt | 2/24/2009 |
| | 75 mg | 30 tablet bottle | 0363-0271-39 | ANDA076760 | Wockhardt | 2/24/2009 |
| | 75 mg | 60 tablet bottle | 0363-0271-72 | ANDA076760 | Wockhardt | 2/24/2009 |
| | 150 mg | 24 tablet bottle | 0363-0950-02 | ANDA091429 | Perrigo | 9/17/2011 |
| | 150 mg | 85 tablet bottle | 0363-0950-04 | ANDA091429 | Perrigo | 9/17/2011 |
| | 150 mg | 65 tablet bottle | 0363-0950-09 | ANDA091429 | Perrigo | 9/17/2011 |
| | 150 mg | 32 tablet bottle | 0363-0950-64 | ANDA091429 | Perrigo | 9/17/2011 |
| | 150 mg | 95 tablet bottle | 0363-0047-01 | ANDA078653 | Wockhardt | 2/4/2008 |
| | 150 mg | 24 tablet bottle | 0363-0047-02 | ANDA078653 | Wockhardt | 2/4/2008 |
| | 150 mg | 50 tablet bottle | 0363-0047-71 | ANDA078653 | Wockhardt | 2/4/2008 |
| | 150 mg | 200 tablet bottle | 0363-0362-02 | ANDA200536 | Strides | 6/28/2011 |
| | 150 mg | 24 tablet bottle | 0363-0362-23 | ANDA200536 | Strides | 6/28/2011 |
| | 150 mg | 50 tablet bottle | 0363-0362-50 | ANDA200536 | Strides | 6/28/2011 |
| | 150 mg | 65 tablet bottle | 0363-0362-52 | ANDA200536 | Strides | 6/28/2011 |
| | 150 mg | 95 tablet bottle | 0363-0362-95 | ANDA200536 | Strides | 6/28/2011 |

977.     Walgreens contracted with Defendants Perrigo, Dr. Reddy's Laboratories, Apotex, Strides, as well as third-party Wockhardt to manufacture its Wal-Zan ranitidine products.

978.     Delegating manufacturing or testing operations for Wal-Zan ranitidine to other companies did not exonerate Walgreens as the PLD from its regulatory requirements to establish a system of production and process controls to ensure its private-label products were not adulterated or misbranded prior to sale.

> **(ii)      Walgreens' Misrepresentations or Omissions of Material Fact on the Labels**

979.     21 U.S.C. §352(a)(1) provides, in pertinent part,

> A drug or device shall be deemed to be misbranded –
>
> (a) FALSE OR MISLEADING LABEL
>
> (1) If its labeling is false or misleading in any particular.

(emphasis in original).

980.     21 C.F.R. §210.1(a) states that the CGMPs establish "minimum current good manufacturing practice for methods to be used in, and the facilities or controls to be used for, the manufacture, processing, packing, or holding of a drug to assure that such drug meets the requirements of the act as to safety, and has the identity and strength and meets the quality and purity characteristics that it purports or is represented to possess."  Entities at all phases of the design, manufacture, and distribution chain are bound by these requirements.

981.     Pursuant to 21 C.F.R. §211.142(b), the warehousing of drug products shall provide for "[s]torage of drug products under appropriate conditions of temperature, humidity, and light so that the identity, strength, quality, and purity of the drug products are not affected."  In other words, Walgreens had a duty and was obligated to properly store, handle, and warehouse ranitidine.

982.    Testing conducted by the FDA confirms that improper storage of ranitidine has resulted in extremely high levels of NDMA.[419]   The FDA has also concluded that NDMA can increase in ranitidine even under storage conditions allowed by the labels, and NDMA has been found to increase significantly in samples stored at higher temperatures, including temperatures the product may be exposed to during normal distribution and handling.   FDA's testing also showed that the level of NDMA in ranitidine-containing products increases with time.   And while Emery's Citizen Petition sought to obtain a directive regarding temperature-controlled shipping of ranitidine, which was necessary given the time and temperature sensitivity of the drug, that request was deemed moot by the FDA because the agency sought to withdraw ranitidine-containing products altogether.

983.    Nothing prevented Walgreens from, on its own, taking actions to prevent accumulation of NDMA in ranitidine-containing products by ensuring storage and transport at the lower end of the temperature range contained on the labels. Nothing prevented Walgreens from ensuring that ranitidine was not exposed to humidity or moisture.

984.    At no time did Walgreens attempt to include, or cause its suppliers to attempt to include, a warning on the labels for Wal-Zan ranitidine that consumers were at elevated risk of developing cancer if the products were: (i) exposed to excessive heat; (ii) exposed to excessive moisture/humidity; (iii) consumed with high-nitrite foods; (iv) consumed daily for a period of greater than a few months.  The FDA never rejected such cancer warnings.

985.    At no time did Walgreens attempt to change, or cause its suppliers to attempt to change, the Wal-Zan ranitidine label to delete a false or misleading expiration date, or to add a

---

[419] Woodcock Letter, *supra* n.91.

proper expiration date to ensure that Wal-Zan ranitidine products would not break down into NDMA prior to human consumption.

986.    An example of a Wal-Zan ranitidine label reflecting that expiration dates were included on the packaging follows:



987.    Based on the public scientific information, Walgreens knew or should have known that NDMA could form in ranitidine by exposure to heat, humidity, nitrites, the conditions of the human stomach, and/or over time in storage.

988.     At no time did Walgreens change its Wal-Zan ranitidine label to shorten the expiration date.  Walgreens had the ability to cause its suppliers to unilaterally make such label changes for Wal-Zan ranitidine without prior FDA approval pursuant to the CBE regulation.  Had Walgreens attempted such label changes, the FDA would not have rejected them.

989.     Because Walgreens failed to include appropriate expiration dates on its products, Walgreens made false statements in the labeling of its products.

### (iii)     Walgreens' Misrepresentations or Omissions of Material Fact in Packaging

990.     21 U.S.C. §352(i)(1) provides, in pertinent part,

> A drug or device shall be deemed to be misbranded—
>
> (i) **DRUG; MISLEADING CONTAINER; IMITATION; OFFER FOR SALE UNDER ANOTHER NAME**
>
> (1) If it is a drug and its container is so made, formed, or filled as to be misleading;….

(emphasis in original).

991.     As alleged above, each PLD was required to conduct, or cause its contract manufacturer to conduct, stability testing, which was required to take the container into account.

992.     As previously alleged, ranitidine degrades into NDMA more quickly at higher temperatures, at higher humidity levels, and under other poor storage or handling conditions.

993.     Walgreens knew or should have known that ranitidine had an inherent risk of degrading into NDMA because it has both a nitroso (N) and dimethylamine (DMA), which are all the ingredients needed to form NDMA.

994.    The ranitidine-containing products Plaintiffs consumed had excessive levels of NDMA in part because they were subjected to high levels of humidity and were stored for a long period of time (often in humid locations such as bathrooms).

995.    A substantial factor in NDMA formation was the container system Walgreens chose.  Pill bottles with large numbers of units of ranitidine are likely to be stored for long periods by consumers after the seal is broken.  This exposes the remaining units to humidity over time, which produces NDMA.

996.    A different container would have reduced the amount of NDMA Plaintiffs consumed in several ways:

(a)    Placing each unit of ranitidine in a blister pack or similar individually packaged container would ensure humidity control until the consumer used each unit.

(b)    Reducing the number of units of ranitidine in each bottle to a low number would ensure the unused units were subject to humidity for only a shorter time period, since consumers would purchase new bottles more frequently.

(c)    Reinforcing compliance with any labeling instructions to stop use after 14 days.

997.    Walgreens could have changed, or caused its contract manufacturers to change, the container system it sold.  FDA guidance specifically allows changing the number of units in a non-sterile drug under its Changes-Being Effected regulation.[420]   FDA guidance also would treat

---

[420] *See* FDA, *Guidance for Industry, Changes to an Approved NDA or ANDA, Revision 1*, at 21 (Apr. 2004), https://www.fda.gov/media/71846/download ("A change in the number of units (e.g., tablets, capsules) or labeled amount (e.g., grams, milliliters) of a nonsterile drug product in a unit-of-use container.").

changing to a unit-dose container such as a blister-pack to be a moderate change that could be implemented through the Changes-Being Effected regulation.[421]

998.    Walgreens was not required to put its ranitidine in the same type of containers as the other OTC Zantac OTC Ranitidine-Containing Products, because the duty of sameness does not apply to containers.  It applies only to the drug label.[422]

999.    A reasonably prudent PLD would have changed the containers for ranitidine-containing products to protect the products from humidity and reduce the time between manufacture and consumption, both of which would reduce the amount of NDMA produced.

1000.   As reflected in the chart above, and as an example only, Walgreens sold its Wal-Zan ranitidine product in bottles with as many as 200 tablets.

1001.   A copy of the label for the Wal-Zan ranitidine product with 200 tablets follows:

---

[421] *See id.* at 20-21 (only requiring pre-approval for *sterile* drug products, when moving *from* unit dose containers to multiple dose containers, rather than non-sterile drug products moving to unit dose containers).

[422] *See* 21 C.F.R. §314.94(a)(8)(iv) ("Labeling (including the container label, package insert, and, if applicable, Medication Guide) proposed for the drug product must be the same as the labeling approved for the reference listed drug ….").



1002.  Further the demand for large quantity package sizes put Defendant on notice that purchases were made for regular and extended use, and not for a one-time occasion.

1003.  Because Walgreens failed to package its products in appropriate container sizes, Walgreens made false statements in the packaging of its products.

1004.  Walgreens' conduct, as described above, was reckless.  Defendant regularly risked the lives of consumers and users of their products, including Plaintiffs, with full knowledge of the dangers of its products.  Walgreens made conscious decisions not to change the containers for its ranitidine-containing products. Walgreens' reckless conduct therefore warrants an award of punitive damages.

        **c.**    **CVS's Misrepresentations or Omissions of Material Fact in the Labeling and Packaging of CVS Health Ranitidine**

            **(i)**    **CVS Is a Private Label Distributor for the Private-Label Product CVS Health Ranitidine**

1005.   CVS offers store brands, which are low-priced alternatives to name-brand products. CVS has numerous store brands, each catering to a different consumer need.

1006.   Almost all products offered under CVS store-brands are private label products, meaning CVS produces them through subsidized contracts awarded to the lowest bidder.

1007.   CVS Health is CVS's store brand, or private label, for healthcare needs, including OTC medications.

1008.   CVS represents that "CVS Health® products meet the highest quality standards for your health, wellness and beauty needs."[423]

1009.   CVS contracts with third-party manufacturers to manufacture its CVS Health OTC medications.

1010.   With respect to OTC medications, CVS is considered a PLD. As a PLD, CVS is responsible for ensuring that all of its products comply with cGMPs and are not adulterated for failure to comply with CGMPs and are not misbranded.

1011.   Since at least 1997, CVS has required all suppliers that provide pharmaceutical products to its to abide by its standards and submit to regular audits.

1012.   CVS loftily claims that its "purpose" in helping people on a path to better health means ensuring "a safe working environment" for the "suppliers worldwide."[424]

1013.   To achieve this goal CVS claims it was the first health care retailer to join the "Responsible Factory Initiative" which is dedicated to corporate social responsibility in global supply chains.

---

[423] CVS Pharmacy, Our Brands, https://www.cvs.com/shopbrand/exclusive-brands?stop_mobi=yes (last visited Feb. 21, 2021).

[424] CVS Health, Responcible Factory Initiative, https://cvshealth.com/news-and-insights/articles/strengthening-our-commitment-to-ethical-sourcing-across-our-supply-chain (last visited Feb. 21, 2021).

1014.   This partnership includes training on what CVS purports to be the "most critical risks" in the manufacturing supply chain, including health and safety, chemical management, environmental sustainability, recognizing forced labor, and corrective action planning.

1015.   CVS proclaims that it maintains the "highest level of performance" in the areas of supply chain responsibility.[425]

1016.   CVS claims that this high level of performance extends to the "creation and production" of each of CVS's private-label products to ensure the "highest level of quality and environmental safety."[426]

1017.   CVS touts that its suppliers play an "integral part in our success as a health care leader" and CVS purports to "engage them down to the factor level to better understand the source of our products' raw materials, how and where the products were manufactured, and under what conditions."[427]

1018.   To this end, CVS audits all its suppliers, to ensure that "import suppliers and other store brand suppliers are in compliance with social, legal and trade security standards" in manufacturing OTC products for consumers.[428]

---

[425] CVS Health, 2018 Corporate Social Responsibility Report, https://cvshealth.com/sites/default/files/2018-csr-full-report.pdf. (last visited Feb. 21, 2021).

[426] CVS Health, *Prescription for a Better World,* 2018 Corporate Social Responsibility Report, https://s2.q4cdn.com/447711729/files/doc_downloads/company_documents/2014-CVSCaremark-CSR-Report.pdf. (last visited Feb. 21, 2021).

[427] *Id*.

[428] *Id*.

1019.  CVS requires all suppliers to submit to "Intertek GMP quality audits" to "be performed on all factories producing Store Brand FDA regulated items."[429]

1020.   In or about 2012, CVS launched "an enhanced factory audit program" with an aim "to help ensure our import suppliers and global supply chain partners" comply with "good manufacturing processes". As CVS explained in a training for suppliers:[430]



1021.   To that end, CVS stated in its training that any supplier of a private-label product that was both a "CVS Store Brand Import Item" and "FDA Regulated Import Item" was required to submit to four types of audits: WCA, GSV, GMP, and SQP.[431] Likewise, any supplier of a private-label product that was both a "CVS Store Domestic Purchased Item" and "FDA Regulated Domestic Purchased Item" was required to submit to two types of audits: GMP and SQP.[432]

---

[429]  CVS Caremark / CVS Health, *Direct Import Guide For Product Suppliers* (June 30, 2017), https://www.cvssuppliers.com/sites/default/files/Direct%20Import%20Guide%20For%20Product%20Suppliers%20063017_.pdf.

[430]  CVS Caremark, *Supplier Training on: CVS Factory Audit Program* (May 22, 2012), https://studylib.net/doc/8860947/cvs-factory-audit-program.

[431]  *Id.*

[432]  *Id.*

1022.   These acronyms stand for: Workplace Conditions Audit/Social Audit (WCA); Global Security Verification/Security Audit (GSV); Supplier Qualification Program/Quality Audit (SQP); and Good Manufacturing Practices/ Quality Audit for Regulated Items (GMP).[433]

1023.   CVS's supplier requirements demonstrate its knowledge that it is ultimately responsible for ensuring that all of its products comply with cGMPs and are not adulterated for failure to comply with CGMPs and are not misbranded.

1024.   As part of its CVS Health OTC product line, CVS sold ranitidine.

1025.   An example of a CVS Health label for CVS's store-brand or private-label ranitidine follows:[434]



1026.   CVS's ranitidine products can be identified by the unique labeler code assigned to CVS by the FDA: 69842. Any NDC number starting with 69842 is a CVS private-label product.

---

[433]   *Id.*

[434]   CVS Pharmacy: instacart, https://www.instacart.com/products/2679999-cvs-health-acid-reducer-regular-strength-75-mg-tablets-80-ea (last visited Feb. 21, 2021).

1027.   A list of the CVS Health ranitidine products sold by CVS as the PLD includes, *inter alia:*

| Product | Dosage | Package | NDC | ANDA | ANDA Manufacturer | Start Marketing Approval Date |
|---|---|---|---|---|---|---|
| **CVS Health Ranitidine (CVS)** | | | | | | |
| | 150 mg | 95 tablet bottle | 69842-869-62 | ANDA078192 | Dr. Reddys | 5/1/2010 |
| | 75 mg | 30 tablet bottle | 69842-871-30 | ANDA075294 | Dr. Reddys | 7/1/2009 |
| | 75 mg | 160 tablet bottle | 69842-871-37 | ANDA075294 | Dr. Reddys | 7/1/2009 |
| | 75 mg | 80 tablet bottle | 69842-871-80 | ANDA075294 | Dr. Reddys | 7/1/2009 |
| | 75 mg | 160 tablet bottle | 69842-293-06 | ANDA076195 | Perrigo | 5/25/2018 |
| | 75 mg | 80 tablet bottle | 69842-293-27 | ANDA076195 | Perrigo | 5/25/2018 |
| | 75 mg | 30 tablet bottle | 69842-293-65 | ANDA076195 | Perrigo | 5/25/2018 |
| | 150 mg | 95 tablet bottle | 59779-540-01 | ANDA091429 | Perrigo | 9/14/2015 |
| | 150 mg | 24 tablet bottle | 59779-540-02 | ANDA091429 | Perrigo | 9/14/2015 |
| | 150 mg | 65 tablet bottle | 59779-540-09 | ANDA091429 | Perrigo | 9/14/2015 |
| | 150 mg | 200 tablet bottle | 59779-540-82 | ANDA091429 | Perrigo | 9/14/2015 |
| | 150 mg | 95 tablet bottle | 59779-950-01 | ANDA091429 | Perrigo | 9/21/2011 |
| | 150 mg | 65 tablet bottle | 59779-950-09 | ANDA091429 | Perrigo | 9/21/2011 |
| | 150 mg | 1 tablet in blister pack, 8 blister pack | 59779-950-51 | ANDA091429 | Perrigo | 9/21/2011 |
| | 150 mg | 1 tablet in blister pack, 24 blister pack | 59779-950-62 | ANDA091429 | Perrigo | 9/21/2011 |
| | 150 mg | 32 tablet bottle | 59779-950-64 | ANDA091429 | Perrigo | 9/21/2011 |
| | 75 mg | 80 tablet bottle | 59779-356-08 | ANDA201745 | Strides | 9/9/2013 |
| | 75 mg | 160 tablet bottle | 59779-356-16 | ANDA201745 | Strides | 9/9/2013 |
| | 75 mg | 30 tablet blister pack | 59779-356-31 | ANDA201745 | Strides | 9/9/2013 |
| | 150 mg | 200 tablet bottle | 59779-354-20 | ANDA200536 | Strides | 8/21/2012 |
| | 150 mg | 24 tablet blister pack | 59779-354-24 | ANDA200536 | Strides | 8/21/2012 |
| | 150 mg | 65 tablet bottle | 59779-354-65 | ANDA200536 | Strides | 8/21/2012 |
| | 150 mg | 95 tablet bottle | 59779-354-95 | ANDA200536 | Strides | 8/21/2012 |

1028.   CVS contracted with Perrigo, Dr. Reddy's Laboratories, and Strides to manufacture its CVS Health ranitidine products.

1029.   Delegating manufacturing or testing operations for CVS Health ranitidine to other companies did not exonerate CVS as the PLD from its regulatory requirements to establish a system of production and process controls to ensure its private-label products were not adulterated or misbranded prior to sale.

### (ii)     CVS's Misrepresentations or Omissions of Material Fact on the Labels

1030.   21 U.S.C. §352(a)(1) provides, in pertinent part,

A drug or device shall be deemed to be misbranded –

(a) FALSE OR MISLEADING LABEL

(1) If its labeling is false or misleading in any particular.

(emphasis in original).

1031.   21 C.F.R. §210.1(a) states that the CGMPs establish "minimum current good manufacturing practice for methods to be used in, and the facilities or controls to be used for, the manufacture, processing, packing, or holding of a drug to assure that such drug meets the requirements of the act as to safety, and has the identity and strength and meets the quality and purity characteristics that it purports or is represented to possess."  Entities at all phases of the design, manufacture, and distribution chain are bound by these requirements.

1032.   Pursuant to 21 C.F.R. §211.142(b), the warehousing of drug products shall provide for "[s]torage of drug products under appropriate conditions of temperature, humidity, and light so that the identity, strength, quality, and purity of the drug products are not affected."  In other words, CVS had a duty and was obligated to properly store, handle, and warehouse ranitidine.

1033.  Testing conducted by the FDA confirms that improper storage of ranitidine has resulted in extremely high levels of NDMA.[435]  The FDA has also concluded that NDMA can increase in ranitidine even under storage conditions allowed by the labels, and NDMA has been found to increase significantly in samples stored at higher temperatures, including temperatures the product may be exposed to during normal distribution and handling.  FDA's testing also showed that the level of NDMA in ranitidine-containing products increases with time.  And while Emery's Citizen Petition sought to obtain a directive regarding temperature-controlled shipping of ranitidine, which was necessary given the time and temperature sensitivity of the drug, that request was deemed moot by the FDA because the agency sought to withdraw ranitidine-containing products altogether.

1034.  Nothing prevented CVS from, on its own, taking actions to prevent accumulation of NDMA in ranitidine-containing products by ensuring storage and transport at the lower end of the temperature range contained on the labels. Nothing prevented CVS from ensuring that ranitidine was not exposed to humidity or moisture.

1035.  At no time did CVS attempt to include, or cause its suppliers to attempt to include, a warning on the labels for CVS Health ranitidine that consumers were at elevated risk of developing cancer if the products were: (i) exposed to excessive heat; (ii) exposed to excessive moisture/humidity; (iii) consumed with high-nitrite foods; (iv) consumed daily for a period of greater than a few months.  The FDA never rejected such cancer warnings.

1036.  At no time did CVS attempt to change, or cause its suppliers to attempt to change, the CVS Health ranitidine label to delete a false or misleading expiration date, or to add a proper

---

[435]  Woodcock Letter, *supra* n.91.

expiration date to ensure that CVS Health ranitidine products would not break down into NDMA prior to human consumption.

1037.   An example of a CVS Health ranitidine label reflecting that expiration dates were included on the packaging follows:



1038.   Based on the public scientific information, CVS knew or should have known that NDMA could form in ranitidine by exposure to heat, humidity, nitrites, the conditions of the human stomach, and/or over time in storage.

1039.   At no time did CVS change its CVS Health ranitidine label to shorten the expiration date.  CVS had the ability to cause its suppliers to unilaterally make such label changes for CVS Health ranitidine without prior FDA approval pursuant to the CBE regulation.  Had CVS attempted such label changes, the FDA would not have rejected them.

1040.   Because CVS failed to include appropriate expiration dates on its products, CVS made false statements in the labeling of its products.

### (iii)    CVS's Misrepresentations or Omissions of Material Fact in Packaging

1041.   21 U.S.C. §352(i)(1) provides, in pertinent part,

A drug or device shall be deemed to be misbranded –

(i) DRUG; MISLEADING CONTAINER; IMITATION; OFFER FOR SALE UNDER

ANOTHER NAME

(1) If it is a drug and its container is so made, formed, or filled as to be

misleading;….

(emphasis in original).

1042.   As alleged above, each PLD was required to conduct, or cause its contract manufacturer to conduct, stability testing, which was required to take the container into account.

1043.   As previously alleged, ranitidine degrades into NDMA more quickly at higher temperatures, at higher humidity levels, and under other poor storage or handling conditions.

1044.   CVS knew or should have known that ranitidine had an inherent risk of degrading into NDMA because it has both a nitroso (N) and dimethylamine (DMA), which are all the ingredients needed to form NDMA.

1045.   The ranitidine-containing products Plaintiffs consumed had excessive levels of NDMA in part because they were subjected to high levels of humidity and were stored for a long period of time (often in humid locations such as bathrooms).

1046.   A substantial factor in NDMA formation was the container system CVS chose.  Pill bottles with large numbers of units of ranitidine are likely to be stored for long periods by consumers after the seal is broken.  This exposes the remaining units to humidity over time, which produces NDMA.

1047.  A different container would have reduced the amount of NDMA Plaintiffs consumed in several ways:

(a)  Placing each unit of ranitidine in a blister pack or similar individually packaged container would ensure humidity control until the consumer used each unit.

(b)  Reducing the number of units of ranitidine in each bottle to a low number would ensure the unused units were subject to humidity for only a shorter time period, since consumers would purchase new bottles more frequently.

(c)  Reinforcing compliance with any labeling instructions to stop use after 14 days.

1048.  CVS could have changed, or caused its contract manufacturers to change, the container system it sold.  FDA guidance specifically allows changing the number of units in a non-sterile drug under its Changes-Being Effected regulation.[436]  FDA guidance also would treat changing to a unit-dose container such as a blister-pack to be a moderate change that could be implemented through the Changes-Being Effected regulation.[437]

1049.  CVS was not required to put its ranitidine in the same type of containers as the other OTC Zantac or OTC Ranitidine-Containing Products, because the duty of sameness does not apply to containers.  It applies only to the drug label.[438]

---

[436]  *See* FDA, *Guidance for Industry, Changes to an Approved NDA or ANDA, Revision 1*, at 21 (Apr. 2004), https://www.fda.gov/media/71846/download ("A change in the number of units (e.g., tablets, capsules) or labeled amount (e.g., grams, milliliters) of a nonsterile drug product in a unit-of-use container.").

[437]  *See id.* at 20-21 (only requiring pre-approval for *sterile* drug products, when moving *from* unit dose containers to multiple dose containers, rather than non-sterile drug products moving to unit dose containers).

[438]  *See* 21 C.F.R. §314.94(a)(8)(iv) ("Labeling (including the container label, package insert, and, if applicable, Medication Guide) proposed for the drug product must be the same as the labeling approved for the reference listed drug ….").

1050.   A reasonably prudent PLD would have changed the containers for ranitidine-containing products to protect the products from humidity and reduce the time between manufacture and consumption, both of which would reduce the amount of NDMA produced.

1051.   As reflected in the chart above, and as an example only, CVS sold its CVS Health ranitidine product in bottles with as many as 200 tablets.

1052.   A copy of the label for the CVS Health ranitidine product with 200 tablets follows:



1053.   Further the demand for large quantity package sizes put Defendant on notice that purchases were made for regular and extended use, and not for a one-time occasion.

1054.   Because CVS failed to package its products in appropriate container sizes, CVS made false statements in the packaging of its products.

1055.   CVS's conduct, as described above, was reckless.  Defendant regularly risked the lives of consumers and users of their products, including Plaintiffs, with full knowledge of the

dangers of its products. CVS made conscious decisions not to change the containers for its ranitidine-containing products. CVS's reckless conduct therefore warrants an award of punitive damages.

      **d.**    **Rite-Aid's Misrepresentations or Omissions of Material Fact in the Labeling and Packaging of Rite-Aid Acid Reducer Ranitidine**

      **(i)**    **Rite-Aid Is a Private Label Distributor for the Private-Label Product Rite-Aid Acid Reducer Ranitidine**

1056.  Rite-Aid offers store brands, which are low-priced alternatives to name-brand products. Rite-Aid has numerous store brands, each catering to a different consumer need.

1057.  Almost all products offered under Rite-Aid store-brands are private label products, meaning Rite-Aid produces them through subsidized contracts awarded to the lowest bidder.

1058.  Rite-Aid is Rite-Aid's store brand, or private label, for, *inter alia,* OTC medications.

1059.  Rite-Aid contracts with third-party manufacturers to manufacture its Rite-Aid OTC medications.

1060.  With respect to OTC medications, Rite-Aid is considered a PLD. As a PLD, Rite-Aid is responsible for ensuring that all of its products comply with cGMPs and are not adulterated for failure to comply with CGMPs and are not misbranded.

1061.  As part of its Rite-Aid OTC product line, Rite Aid sold ranitidine.

1062.  An example of a Rite-Aid acid reducer ranitidine label for Rite-Aid's store-brand or private-label ranitidine follows:



1063.   Rite-Aid's ranitidine products can be identified by the unique labeler code assigned to Rite-Aid by the FDA: 11822. Any NDC number starting with 11822 is a Rite-Aid private-label product.

1064.   A list of the Rite-Aid ranitidine products sold by Rite-Aid as the PLD includes, *inter alia:*

| Product | Dosage | Package | NDC | ANDA | ANDA Manufacturer | Start Marketing Approval Date |
|---|---|---|---|---|---|---|
| **Rite Aid Ranitidine** | | | | | | |
| | 150 mg | 1 tablet in 1 blister pack, 24 blister pack | 11822-0852-1 | ANDA091429 | Perrigo | 10/26/2011 |
| | 150 mg | 50 tablet bottle | 11822-0852-2 | ANDA091429 | Perrigo | 10/26/2011 |
| | 150 mg | 65 tablet botlte | 11822-0852-3 | ANDA091429 | Perrigo | 10/26/2011 |
| | 150 mg | 95 tablet bottle | 11822-0852-4 | ANDA091429 | Perrigo | 10/26/2011 |
| | 150 mg | 24 tablet bottle | 11822-0852-5 | ANDA091429 | Perrigo | 10/26/2011 |
| | 150 mg | 24 tablet bottle | 11822-0950-0 | ANDA091429 | Perrigo | 12/7/2011 |
| | 150 mg | 50 tablet bottle | 11822-0950-1 | ANDA091429 | Perrigo | 12/7/2011 |
| | 150 mg | 95 tablet bottle | 11822-4727-3 | ANDA200172 | Apotex | 6/26/2017 |
| | 150 mg | 24 tablet bottle | 11822-6051-8 | ANDA200172 | Apotex | 6/26/2017 |
| | 150 mg | 50 tablet bottle | 11822-6052-1 | ANDA200172 | Apotex | 6/26/2017 |
| | 150 mg | 65 tablet bottle | 11822-6052-2 | ANDA200172 | Apotex | 6/26/2017 |
| | 150 mg | 24 tablet bottle | 11822-6107-4 | ANDA200172 | Apotex | 6/30/2017 |
| | 75 mg | 30 tablet bottle | 11822-6190-0 | ANDA200536 | Strides | 6/15/2013 |
| | 75 mg | 60 tablet bottle | 11822-6190-1 | ANDA200536 | Strides | 6/15/2013 |
| | 75 mg | 80 tablet bottle | 11822-6190-8 | ANDA200536 | Strides | 6/15/2013 |
| | 150 mg | 24 blister pack | 11822-0852-1 | ANDA091429 | Perrigo | 10/26/2011 |
| | 150 mg | 50 tablet bottle | 11822-0852-2 | ANDA091429 | Perrigo | 10/26/2011 |
| | 150 mg | 65 tablet bottle | 11822-0852-3 | ANDA091429 | Perrigo | 10/26/2011 |
| | 150 mg | 95 tablet bottle | 11822-0852-4 | ANDA091429 | Perrigo | 10/26/2011 |
| | 150 mg | 24 tablet bottle | 11822-0852-5 | ANDA091429 | Perrigo | 10/26/2011 |
| | 75 mg | 60 tablet bottle | 11822-0271-1 | ANDA076760 | Wockhardt | 11/4/2011 |
| | 75 mg | 2 bottle carton, 80 tablets per bottle | 11822-0271-2 | ANDA076760 | Wockhardt | 11/4/2011 |
| | 75 mg | 30 tablet bottle | 11822-0271-3 | ANDA076760 | Wockhardt | 11/4/2011 |
| | 150 mg | 50 tablet bottle | 11822-0047-1 | ANDA078653 | Wockhardt | 12/3/2008 |
| | 150 mg | 24 tablet blister pack | 11822-0047-2 | ANDA078653 | Wockhardt | 12/3/2008 |
| | 150 mg | 65 tablet bottle | 11822-0047-3 | ANDA078653 | Wockhardt | 12/3/2008 |
| | 150 mg | 95 tablet bottle | 11822-0047-4 | ANDA078653 | Wockhardt | 12/3/2008 |

1065.   Rite-Aid contracted with Defendants Perrigo, Apotex, and Strides, as well as third-party Wockhardt, to manufacture its Rite-Aid ranitidine products.

1066.   Delegating manufacturing or testing operations for Rite-Aid ranitidine products to other companies did not exonerate Rite-Aid as the PLD from its regulatory requirements to establish a system of production and process controls to ensure its private-label products were not adulterated or misbranded prior to sale.

<div align="center">

**(ii)      Rite-Aid's Misrepresentations or Omissions of Material Fact on the Labels**

</div>

1067.   21 U.S.C. §352(a)(1) provides, in pertinent part,

> A drug or device shall be deemed to be misbranded –
>
> (a) FALSE OR MISLEADING LABEL
>
> (1) If its labeling is false or misleading in any particular.

(emphasis in original).

1068.   21 C.F.R. §210.1(a) states that the CGMPs establish "minimum current good manufacturing practice for methods to be used in, and the facilities or controls to be used for, the manufacture, processing, packing, or holding of a drug to assure that such drug meets the requirements of the act as to safety, and has the identity and strength and meets the quality and purity characteristics that it purports or is represented to possess."  Entities at all phases of the design, manufacture, and distribution chain are bound by these requirements.

1069.   Pursuant to 21 C.F.R. §211.142(b), the warehousing of drug products shall provide for "[s]torage of drug products under appropriate conditions of temperature, humidity, and light so that the identity, strength, quality, and purity of the drug products are not affected."  In other words, Rite-Aid had a duty and was obligated to properly store, handle, and warehouse ranitidine.

1070.  Testing conducted by the FDA confirms that improper storage of ranitidine has resulted in extremely high levels of NDMA.[439]  The FDA has also concluded that NDMA can increase in ranitidine even under storage conditions allowed by the labels, and NDMA has been found to increase significantly in samples stored at higher temperatures, including temperatures the product may be exposed to during normal distribution and handling.  FDA's testing also showed that the level of NDMA in ranitidine-containing products increases with time.  And while Emery's Citizen Petition sought to obtain a directive regarding temperature-controlled shipping of ranitidine, which was necessary given the time and temperature sensitivity of the drug, that request was deemed moot by the FDA because the agency sought to withdraw ranitidine-containing products altogether.

1071.  Nothing prevented Rite-Aid from, on its own, taking actions to prevent accumulation of NDMA in ranitidine-containing products by ensuring storage and transport at the lower end of the temperature range contained on the labels. Nothing prevented Rite-Aid from ensuring that ranitidine was not exposed to humidity or moisture.

1072.  At no time did Rite-Aid attempt to include, or cause its suppliers to attempt to include, a warning on the labels for Rite-Aid ranitidine that consumers were at elevated risk of developing cancer if the products were: (i) exposed to excessive heat; (ii) exposed to excessive moisture/humidity; (iii) consumed with high-nitrite foods; (iv) consumed daily for a period of greater than a few months.  The FDA never rejected such cancer warnings.

1073.  At no time did Rite-Aid attempt to change, or cause its suppliers to attempt to change, the Rite-Aid ranitidine label to delete a false or misleading expiration date, or to add a

---

[439] Woodcock Letter, *supra* n.91.

proper expiration date to ensure that Rite-Aid ranitidine products would not break down into NDMA prior to human consumption.

1074.   An example of a Rite-Aid ranitidine label reflecting that expiration dates were included on the packaging follows:[440]



1075.   Based on the public scientific information, Rite-Aid knew or should have known that NDMA could form in ranitidine by exposure to heat, humidity, nitrites, the conditions of the human stomach, and/or over time in storage.

1076.   At no time did Rite-Aid change its Rite-Aid ranitidine label to shorten the expiration date.  Rite-Aid had the ability to cause its suppliers to unilaterally make such label

---

[440] National Drug Codes List, NDC 11822-0950 COOL MINT ACID REDUCER, https://ndclist.com/ndc/11822-0950 (last visited Feb. 21, 2021).

changes for Rite-Aid ranitidine without prior FDA approval pursuant to the CBE regulation.  Had

Rite-Aid attempted such label changes, the FDA would not have rejected them.

1077.  Because Rite-Aid failed to include appropriate expiration dates on its products,

Rite-Aid made false statements in the labeling of its products.

### (iii)     Rite-Aid Misrepresentations of Omissions of Material Fact in Packaging

1078.  21 U.S.C. §352(i)(1) provides, in pertinent part,

> A drug or device shall be deemed to be misbranded –
>
> (i) **DRUG; MISLEADING CONTAINER; IMITATION; OFFER FOR SALE UNDER ANOTHER NAME**
>
> (1) If it is a drug and its container is so made, formed, or filled as to be misleading;….

(emphasis in original).

1079.  As alleged above, each PLD was required to conduct, or cause its contract

manufacturer to conduct, stability testing, which was required to take the container into account.

1080.  As previously alleged, ranitidine degrades into NDMA more quickly at higher

temperatures, at higher humidity levels, and under other poor storage or handling conditions.

1081.  Rite-Aid knew or should have known that ranitidine had an inherent risk of

degrading into NDMA because it has both a nitroso (N) and dimethylamine (DMA), which are all

the ingredients needed to form NDMA.

1082.  The ranitidine-containing products Plaintiffs consumed had excessive levels of

NDMA in part because they were subjected to high levels of humidity and were stored for a long

period of time (often in humid locations such as bathrooms).

1083.   A substantial factor in NDMA formation was the container system Rite-Aid chose. Pill bottles with large numbers of units of ranitidine are likely to be stored for long periods by consumers after the seal is broken.  This exposes the remaining units to humidity over time, which produces NDMA.

1084.   A different container would have reduced the amount of NDMA Plaintiffs consumed in several ways:

> (a)   Placing each unit of ranitidine in a blister pack or similar individually packaged container would ensure humidity control until the consumer used each unit.
>
> (b)   Reducing the number of units of ranitidine in each bottle to a low number would ensure the unused units were subject to humidity for only a shorter time period, since consumers would purchase new bottles more frequently.
>
> (c)   Reinforcing compliance with any labeling instructions to stop use after 14 days.

1085.   Rite-Aid could have changed, or caused its contract manufacturers to change, the container system it sold.  FDA guidance specifically allows changing the number of units in a non-sterile drug under its Changes-Being Effected regulation.[441]   FDA guidance also would treat changing to a unit-dose container such as a blister-pack to be a moderate change that could be implemented through the Changes-Being Effected regulation.[442]

---

[441]  *See* FDA, *Guidance for Industry, Changes to an Approved NDA or ANDA, Revision 1*, at 21 (Apr. 2004), https://www.fda.gov/media/71846/download ("A change in the number of units (e.g., tablets, capsules) or labeled amount (e.g., grams, milliliters) of a nonsterile drug product in a unit-of-use container.").

[442]  *See id.* at 20-21 (only requiring pre-approval for ***sterile*** drug products, when moving ***from*** unit dose containers to multiple dose containers, rather than non-sterile drug products moving to unit dose containers).

1086.   Rite-Aid was not required to put its ranitidine in the same type of containers as the other OTC Zantac or OTC Ranitidine-Containing Products, because the duty of sameness does not apply to containers.  It applies only to the drug label.[443]

1087.   A reasonably prudent PLD would have changed the containers for ranitidine-containing products to protect the products from humidity and reduce the time between manufacture and consumption, both of which would reduce the amount of NDMA produced.

1088.   As reflected in the chart above, and as an example only, Rite-Aid sold its ranitidine product in bottles with as many as 95 tablets.

1089.   A copy of the label for the Rite-Aid ranitidine product with 95 tablets follows:



1090.   Further the demand for large quantity package sizes put Defendant on notice that purchases were made for regular and extended use, and not for a one-time occasion.

---

[443]  *See* 21 C.F.R. §314.94(a)(8)(iv) ("Labeling (including the container label, package insert, and, if applicable, Medication Guide) proposed for the drug product must be the same as the labeling approved for the reference listed drug ….").

1091.   Because Rite-Aid failed to package its products in appropriate container sizes, Rite-Aid made false statements in the packaging of its products.

1092.   Rite-Aid's conduct, as described above, was reckless.  Defendant regularly risked the lives of consumers and users of their products, including Plaintiffs, with full knowledge of the dangers of its products. Rite-Aid made conscious decisions not to change the containers for its ranitidine-containing products. Rite-Aid's reckless conduct therefore warrants an award of punitive damages.

### 5. Store-Brand Manufacturer Defendants' Misrepresentations or Omissions of Material Fact in the Labeling of Ranitidine-Containing Products

1093.   The Store-Brand Manufacturer Defendants (or CMOs) are Perrigo, Apotex, Dr. Reddy's, and Strides.

1094.   A PLD[444] contracts with a CMO to manufacture and process a drug.

1095.   A CMO, or Store-Brand Manufacturer Defendant for purposes of this complaint, is typically required by contract or supplier agreement with the PLD to comply with cGMPs, ensure that the private-label drugs are not adulterated for failure to comply with CGMPs, and are not misbranded.

1096.   Consumers of the private-label drug are third-party beneficiaries of the contract between the PLD and CMO, i.e., between the Store-Brand Retailer Defendant and Store-Brand Manufacturer Defendant.

---

[444]  21 C.F.R. §207.1.

1097.   A manufacturer is required to give adequate directions for the use of a pharmaceutical drug such that a "layman can use a drug safely and for the purposes for which it is intended,"[445] and conform to requirements governing the appearance of the label.[446]

1098.   "Labeling" encompasses all written, printed or graphic material accompanying the drug or device,[447] and therefore broadly encompasses nearly every form of promotional activity, including not only "package inserts" but also advertising.

1099.   "Most, if not all, labeling is advertising.  The term 'labeling' is defined in the FDCA as including all printed matter accompanying any article.  Congress did not, and we cannot, exclude from the definition printed matter which constitutes advertising."[448]

1100.   All Store-Brand Manufacturer Defendants are also responsible for conducting stability testing, by agreement with the PLDs and pursuant to federal law, which testing must be "designed to assess the stability characteristics of drug products."[449]   Store-Brand Manufacturer Defendants must adopt a written testing program that includes: "(1) Sample size and test intervals based on statistical criteria for each attribute examined to assure valid estimates of stability; (2) Storage conditions for samples retained for testing; (3) Reliable, meaningful, and specific test methods; (4) Testing of the drug product in the same container-closure system as that in which the drug product is marketed; (5) Testing of drug products for reconstitution at the time of dispensing (as directed in the labeling) as well as after they are reconstituted."[450]

---

[445]  21 C.F.R. §201.5.

[446]  *Id.* §201.15.

[447]  *Id.*; 65 Fed. Reg. 14286 (Mar. 16, 2000).

[448]  *United States v. Research Labs.*, 126 F.2d 42, 45 (9th Cir. 1942).

[449]  21 C.F.R. §211.166(a).

[450]  *Id.*

1101.   The purpose of stability testing is, in part, to determine the "appropriate storage conditions and expiration dates."[451]   And expiration dates, in turn, must be set to "assure that a drug product meets applicable standards of identity, strength, quality, and purity at the time of use."[452]   An expiration date is "related to any storage conditions stated on the labeling, as determined by stability studies listed in § 211.166."[453]

1102.   Notably, while generic medications must have the same active ingredients as their branded counterparts, the inactive ingredients, or excipients, may not necessarily be identical.  For this reason, the stability of each generic drug may differ.

1103.   Each manufacturer must therefore conduct its own tests to determine and set accurate retest or expiration dates.

1104.   The FDA made clear when it first adopted the expiration-date provision that the regulation means what it says.  The purpose of the expiration date is not merely to consider the "stability of a specific active ingredient."   Instead, a compliant expiration date must account for multiple factors, including "the stability of the inactive ingredients, the interaction of active and inactive ingredients, the manufacturing process, the dosage form, the container closure system, the conditions under which the drug product is shipped, stored, and handled by wholesalers and retailers, and the length of time between initial manufacture and final use."[454]

1105.   The FDA expressly recognizes that an initial expiration date may not be the final expiration date: "Where data from accelerated studies are used to project a tentative expiration date that is beyond a date supported by actual shelf life studies, there must be stability studies

---

[451]   *Id.*

[452]   *Id.* §211.137(a).

[453]   *Id.* §211.137(b).

[454]   43 Fed. Reg. 45059 (Sept. 29, 1978).

conducted . . . until the tentative expiration date is verified or the appropriate expiration date determined."[455]

1106.   After a drug is approved, a manufacturer can make changes to its drug application.  To do so, manufacturers must comply with the requirements of §§ 314.70 and 314.71.[456]

1107.   Some of the requirements in those regulations require FDA approval before implementing a label change.[457]

1108.   But the FDA has long recognized a CBE supplement that permits a manufacturer to make immediate changes, subject to the FDA's post-change review.[458]

1109.   A manufacturer of an approved drug can use the CBE supplement to immediately make an "[a]ddition to a specification or changes in the methods or controls to provide increased assurance that the drug substance or drug product will have the characteristics of identity, strength quality, purity, or potency that it purports or is represented to possess."[459]  "A specification is defined as a list of tests, references to analytical procedures, and appropriate acceptance criteria that are numerical limits, ranges, or other criteria for the tests described."[460]

1110.   A manufacturer, therefore, need not seek FDA pre-approval to make changes to its stability studies to identify the appropriate expiration date – which must "assure that a drug product

---

[455]  21 C.F.R. §211.166(b).

[456]  *See id.* §314.97(a) (requiring generics to comply with §§314.70, 314.71).

[457]  *Id.* §314.70(b).

[458]  *Id.* §314.70(c)(3), (c)(6).

[459]  *Id.* §314.70(c)(6)(i).

[460]  65 Fed. Reg. 83042 (Dec. 29, 2000).

meets applicable standards of identity, strength, quality, and purity at the time of use"[461] – or to ensure that the drug is shipped and stored under appropriate conditions.

1111.   A manufacturer of an approved drug can also use the CBE supplement to make changes "in the labeling to reflect newly acquired information" in order to "add or strengthen a contraindication, warning, precaution, or adverse reaction for which the evidence of a causal association satisfies the standard for inclusion in the labeling under § 201.57(c) of this chapter"; "add or strengthen an instruction about dosage and administration that is intended to increase the safe use of the drug product"; and "delete false, misleading, or unsupported indications for use or claims for effectiveness."[462]

1112.   A manufacturer of an approved drug may make minor changes to a label with no approval or notice, so long as that change is described in an annual report.  The illustrative but non-exhaustive list of minor changes includes "[a] change in the labeling concerning the description of the drug product or in the information about how the drug product is supplied, that does not involve a change in the dosage strength or dosage form."[463]

1113.   A "minor change" further includes "[a]n extension of an expiration dating period based upon full shelf life data on production batches obtained from a protocol approved in the NDA."[464]

1114.   At no time did any Store-Brand Manufacturer Defendant attempt to include a warning on the labels for ranitidine-containing products that consumers were at elevated risk of developing cancer if the products were: (i) exposed to excessive heat; (ii) exposed to excessive

---

[461]  21 C.F.R. §211.137(a).

[462]  *Id.* §314.70(c)(6)(iii)(A), (C), (D).

[463]  *Id.* §314.70 (d)(2)(ix).

[464]  *Id.* §314.70 (d)(2)(vi); *see also id.* §314.70(d)(2)(vii), (x).

1 of
4459

moisture/humidity; (iii) consumed with high-nitrite foods; (iv) consumed daily for a period of greater than a few months.  The FDA never rejected such cancer warnings.

1115.   At no time did any Store-Brand Manufacturer Defendant attempt to change its label to delete a false or misleading expiration date, or to add a proper expiration date to ensure that ranitidine-containing products would not break down into NDMA prior to human consumption.

1116. Based on the public scientific information, the Store-Brand Manufacturer Defendants knew or should have known that NDMA could form in ranitidine by exposure to heat, humidity, nitrites, the conditions of the human stomach, and/or over time in storage.

1117.   At no time did any Store-Brand Manufacturer Defendant change its label to shorten the expiration date.  Store-Brand Manufacturer Defendants had the ability to unilaterally make such label changes (for both prescription and OTC) without prior FDA approval pursuant to the CBE regulation.  Had any Store-Brand Manufacturer Defendant attempted such label changes, the FDA would not have rejected them.

1118.   Because they failed to include appropriate expiration dates on their products, Store-Brand Manufacturer Defendants made false statements in the labeling of their products.

       **a.**      **Perrigo's Misrepresentations or Omissions of Material Fact in the Labeling and Packaging of Store-Brand Ranitidine Products**

          **(i)**      **Perrigo is a Contract Manufacturing Organization for Private Label Distributors Walmart, Walgreens, CVS and Rite-Aid.**

1119.   Perrigo is a CMO that contracted with multiple PLDs, including Walmart, Walgreens, CVS, and Rite-Aid.

1120.   According to Perrigo, its Consumer Self-Care Americas segment is the "Self-Care Private Label Leader," which "develops, manufactures, and markets over-the-counter (OTC) store

brand products, primarily in the cough, cold, allergy, analgesics, gastrointestinal, smoking cessation, infant formula, and oral care."[465]

1121.   Perrigo admits that store-brand products, or private label products, "must meet the same quality standards for manufacturing and packaging as their costlier brand name counterparts."[466]

1122.   According to Perrigo, the purpose of private label products is to ensure "[c]onsumer confidence in buying OTC medications to prevent and treat acute and chronic conditions," while satisfying retailers for which "[s]tore brand self-care is a major contributor to retailer profits."[467]

1123.   Perrigo explains that its expertise in mass customization for PLDs allows the company to take one SKU (or in this case ANDA) and translate it into hundreds of store-brand SKUs in multiple packaging and promotional configurations:[468]



---

[465] Perrigo, Consumer Self-Care Americas: Self-Care Private Label Leader, https://www.perrigo.com/consumer-self-care-americas-self-care-private-label-leader (last visited Feb. 21, 2021).

[466] *Id.*

[467] *Id*.

[468] *Id*.

1124.   Perrigo maintains a Code of Conduct, which covers, *inter alia*, compliance with applicable laws and regulations. For example, the Code of Conduct provides: "It is critical that we follow all quality, safety and Good Manufacturing policies and procedures," explaining "As a pharmaceutical company, we are governed by Current Good Manufacturing Practices and other country-specific quality requirements for developing, manufacturing and packaging our products."[469]

1125.   Perrigo's Code of Conduct further provides: "We follow rigorous laws, regulations and corporate policies to ensure that our packaging and promotional materials are accurate and adhere to appropriate marketing and advertising practices."[470]

1126.   An excerpt of the Perrigo Code of Conduct follows:

---

[469] The Code of Conduct is available through a link on the page at https://www.perrigo.com/quality-product-safety (last visited Feb. 21, 2021). Code of Conduct, at 7.

[470] *Id.*



1127.   According to Perrigo, its customers "include major global, national, and regional retail drug, supermarket, and mass merchandise chains such as Walmart, CVS, Walgreens Boots Alliance, Rite Aid, Kroger, Target, Dollar General, Sam's Club, Costco, Petco, Petsmart, Aldi, Amazon, and major wholesalers, including McKesson, Cardinal Health, and Amerisource Bergen."[471]

1128.   Within Perrigo's Consumer Self-Care Americas segment, one of Perrigo's focuses is on digestive health, with a range of private label products to relieve upset stomach, diarrhea, heartburn, and indigestion.

1129.   Perrigo contracted with Walmart to manufacture several Equate ranitidine products, including the following:

---

[471]   Perrigo Company LLC, Annual Report (Form 10-K) (Mar. 01, 2018), https://content.edgar-online.com/ExternalLink/EDGAR/0001585364-18-000015.html?hash=97d278562bafad669bc43f3e9c76346345da67d63a6cf1330475b099ac1ff982&dest=CY17Q410KEX1068_HTM#CY17Q410KEX1068_HTM.

| Product | Dosage | Package | NDC | ANDA | ANDA Manufacturer | Start Marketing Approval Date |
|---|---|---|---|---|---|---|
| Equate Ranitidine (Walmart) | | | | | | |
| | 150 mg | 24 tablet pack | 49035-608-02 | ANDA091429 | Perrigo | 2/12/2012 |
| | 150 mg | 90 tablet bottle | 49035-608-75 | ANDA091429 | Perrigo | 2/12/2012 |
| | 150 mg | 65 tablet bottle | 49035-800-09 | ANDA091429 | Perrigo | 2/22/2013 |
| | 150 mg | 90 tablet bottle | 49035-800-75 | ANDA091429 | Perrigo | 2/22/2013 |
| | 150 mg | 65 tablet, 2 bottles in 1 carton | 49035-800-81 | ANDA091429 | Perrigo | 2/22/2013 |
| | 75 mg | 150 tablet bottle | 49035-876-47 | ANDA076195 | Perrigo | 5/19/2017 |
| | 150 mg | 65 tablet bottle | 49035-852-09 | ANDA091429 | Perrigo | 2/12/2012 |

1130.  Perrigo contracted with Walgreens to manufacture several Wal-Zan ranitidine products, including:

| Product | Dosage | Package | NDC | ANDA | ANDA Manufacturer | Start Marketing Approval Date |
|---|---|---|---|---|---|---|
| Wal-Zan Ranitidine | | | | | | |
| | 150 mg | 95 tablet bottle | 0363-0852-01 | ANDA091429 | Perrigo | 1/11/2019 |
| | 150 mg | 65 tablet bottle | 0363-0852-09 | ANDA091429 | Perrigo | 1/11/2019 |
| | 150 mg | 1 tablet in 1 blister pack, 8 blister pack | 0363-0852-51 | ANDA091429 | Perrigo | 1/11/2019 |
| | 150 mg | 1 tablet in 1 blister pack, 24 blister pack | 0363-0852-62 | ANDA091429 | Perrigo | 1/11/2019 |
| | 150 mg | 200 tablet bottle | 0363-0852-82 | ANDA091429 | Perrigo | 1/11/2019 |
| | 75 mg | 80 tablet bottle | 0363-1876-27 | ANDA076195 | Perrigo | 1/11/2019 |
| | 75 mg | 30 tablet bottle | 0363-1876-65 | ANDA076195 | Perrigo | 1/11/2019 |
| | 150 mg | 24 tablet bottle | 0363-0950-02 | ANDA091429 | Perrigo | 9/17/2011 |
| | 150 mg | 85 tablet bottle | 0363-0950-04 | ANDA091429 | Perrigo | 9/17/2011 |
| | 150 mg | 65 tablet bottle | 0363-0950-09 | ANDA091429 | Perrigo | 9/17/2011 |
| | 150 mg | 32 tablet bottle | 0363-0950-64 | ANDA091429 | Perrigo | 9/17/2011 |

1131.  Perrigo contracted with CVS to manufacture CVS Health ranitidine products, including:

| Product | Dosage | Package | NDC | ANDA | ANDA Manufacturer | Start Marketing Approval Date |
|---|---|---|---|---|---|---|
| CVS Health Ranitidine (CVS) | | | | | | |
| | 75 mg | 160 tablet bottle | 69842-293-06 | ANDA076195 | Perrigo | 5/25/2018 |
| | 75 mg | 80 tablet bottle | 69842-293-27 | ANDA076195 | Perrigo | 5/25/2018 |
| | 75 mg | 30 tablet bottle | 69842-293-65 | ANDA076195 | Perrigo | 5/25/2018 |
| | 150 mg | 95 tablet bottle | 59779-540-01 | ANDA091429 | Perrigo | 9/14/2015 |
| | 150 mg | 24 tablet bottle | 59779-540-02 | ANDA091429 | Perrigo | 9/14/2015 |
| | 150 mg | 65 tablet bottle | 59779-540-09 | ANDA091429 | Perrigo | 9/14/2015 |
| | 150 mg | 200 tablet bottle | 59779-540-82 | ANDA091429 | Perrigo | 9/14/2015 |
| | 150 mg | 95 tablet bottle | 59779-950-01 | ANDA091429 | Perrigo | 9/21/2011 |
| | 150 mg | 65 tablet bottle | 59779-950-09 | ANDA091429 | Perrigo | 9/21/2011 |
| | 150 mg | 1 tablet in blister pack, 8 blister pack | 59779-950-51 | ANDA091429 | Perrigo | 9/21/2011 |
| | 150 mg | 1 tablet in blister pack, 24 blister pack | 59779-950-62 | ANDA091429 | Perrigo | 9/21/2011 |
| | 150 mg | 32 tablet bottle | 59779-950-64 | ANDA091429 | Perrigo | 9/21/2011 |

1132.  Perrigo contracted with Rite Aid to manufacture Rite Aid ranitidine products, including:

| Product | Dosage | Package | NDC | ANDA | ANDA Manufacturer | Start Marketing Approval Date |
|---|---|---|---|---|---|---|
| Rite Aid Ranitidine | | | | | | |
| | 150 mg | 1 tablet in 1 blister pack, 24 blister pack | 11822-0852-1 | ANDA091429 | Perrigo | 10/26/2011 |
| | 150 mg | 50 tablet bottle | 11822-0852-2 | ANDA091429 | Perrigo | 10/26/2011 |
| | 150 mg | 65 tablet botlte | 11822-0852-3 | ANDA091429 | Perrigo | 10/26/2011 |
| | 150 mg | 95 tablet bottle | 11822-0852-4 | ANDA091429 | Perrigo | 10/26/2011 |
| | 150 mg | 24 tablet bottle | 11822-0852-5 | ANDA091429 | Perrigo | 10/26/2011 |
| | 150 mg | 24 tablet bottle | 11822-0950-0 | ANDA091429 | Perrigo | 12/7/2011 |
| | 150 mg | 50 tablet bottle | 11822-0950-1 | ANDA091429 | Perrigo | 12/7/2011 |

1133.  Each of the PLDs contracted with Perrigo, and Perrigo agreed, to ensure that each of the private-label ranitidine products it manufactured complied with cGMPs and were not adulterated for failure to comply with CGMPs and were not misbranded.

1134.   Each of the PLDs contracted with Perrigo, and Perrigo agreed, to provide a third-party certification and submit to audits showing conformance with FDA CGMPs specific for the private label ranitidine products.

### (ii)   Despite Perrigo's agreements to comply with cGMPs, Perrigo was repeatedly cited by the FDA.

1135.   Since 2000, Perrigo's manufacturing facilities have been inspected an astounding 31 times, and during each inspection, the FDA issued observations and findings of non-compliance with cGMPs.

1136.   The FDA's observations related to not only issues with the manufacture and testing of the product (including issues related to data integrity and inadequate quality assurance units) but also related to the storage of the product.

1137.   During a 2005 inspection, the FDA noted that Perrigo's Standard Operating Procedures related to the environmental circumstances of where materials were being held were inadequate because it did not "provide instructions for employees to follow in the event an out of specification result is obtained for temperature and/or humidity to ensure that an investigation" is initiated.[472]

1138.   Over ten years later, the FDA noted more temperature related issues at this particular facility, finding that drug products were not being stored "under appropriate conditions of temperature so that their identity, strength, quality and purity are not affected."[473]

---

[472]  FDA Form 483, Perrigo New York (FEI: 2450054), Aug. 31, 2006, released pursuant to FOIA request.

[473]  FDA Form 483, Perrigo New York (FEI: 2450054), Mar. 8, 2017, released pursuant to FOIA request.

1139.   The FDA found that Perrigo's temperature mapping studies in the raw material warehouse were not conducted in a manner that supported the identification of "worst case temperature locations."[474]

1140.   In 2019, the FDA observed that Perrigo's investigations of an "unexplained discrepancy and failure of a batch or any of its components to meet any of its specifications did not extend to other batches of the same drug product."[475]

1141.   As it relates to the ongoing stability of its drug products, the FDA found that Perrigo had not investigated whether the methods used in ongoing stability studies which were validated prior to 2017 "are stability indicating" and whether the method is able to "detect all potential impurities."[476]

1142.   During a 2019 inspection of a facility in Holland, Michigan, the FDA noted that Perrigo lacked procedures and controls to keep and maintain documents containing data generated during GMP activities.[477]

1143.   As an example of this deficiency, the FDA noted that discarded batch packaging records had been seen in "shred bins."[478]

---

[474]  FDA Form 483, Perrigo New York (FEI: 2450054), Mar. 8, 2017, released pursuant to FOIA request.

[475]  FDA Form 483, Perrigo Company PLC (FEI: 1811666), Jan. 17, 2019, released pursuant to FOIA request.

[476]  FDA Form 483, Perrigo Company PLC (FEI: 1811666), Jan. 17, 2019, released pursuant to FOIA request.

[477]  FDA Form 483, L. Perrigo Company (FEI: 1000518646), Oct. 22, 2019, released pursuant to FOIA request.

[478]  FDA Form 483, L. Perrigo Company (FEI: 1000518646), Oct. 22, 2019, released pursuant to FOIA request.

>        **(iii)    Perrigo's Misrepresentations or Omissions of Material Fact on the Labels for the Private-Label Ranitidine Products**

1144.   21 U.S.C. §352(a)(1) provides, in pertinent part,

>    A drug or device shall be deemed to be misbranded –
>
>    (a) FALSE OR MISLEADING LABEL
>
>    (1) If its labeling is false or misleading in any particular.

(emphasis in original).

1145.   21 C.F.R. §210.1(a) states that the CGMPs establish "minimum current good manufacturing practice for methods to be used in, and the facilities or controls to be used for, the manufacture, processing, packing, or holding of a drug to assure that such drug meets the requirements of the act as to safety, and has the identity and strength and meets the quality and purity characteristics that it purports or is represented to possess."  Entities at all phases of the design, manufacture, and distribution chain are bound by these requirements.

1146.   Pursuant to 21 C.F.R. §211.142(b), the warehousing of drug products shall provide for "[s]torage of drug products under appropriate conditions of temperature, humidity, and light so that the identity, strength, quality, and purity of the drug products are not affected."  In other words, Defendant had a duty and was obligated to properly store, handle, and warehouse ranitidine.

1147.   Testing conducted by the FDA confirms that improper storage of ranitidine has resulted in extremely high levels of NDMA.[479]  The FDA has also concluded that NDMA can increase in ranitidine even under storage conditions allowed by the labels, and NDMA has been found to increase significantly in samples stored at higher temperatures, including temperatures the product may be exposed to during normal distribution and handling.  FDA's testing also

---

[479] Woodcock Letter, *supra* n.91.

showed that the level of NDMA in ranitidine-containing products increases with time. And while Emery's Citizen Petition sought to obtain a directive regarding temperature-controlled shipping of ranitidine, which was necessary given the time and temperature sensitivity of the drug, that request was deemed moot by the FDA because the agency sought to withdraw ranitidine-containing products altogether.

1148.   Nothing prevented Perrigo from, on its own, taking actions to prevent accumulation of NDMA in the private-label ranitidine-containing products by ensuring storage and transport at the lower end of the temperature range contained on the labels. Nothing prevented Perrigo from ensuring that ranitidine was not exposed to humidity or moisture.

1149.   At no time did Perrigo attempt to include a warning on the labels for the private-label ranitidine-containing products that consumers were at elevated risk of developing cancer if the products were: (i) exposed to excessive heat; (ii) exposed to excessive moisture/humidity; (iii) consumed with high-nitrite foods; (iv) consumed daily for a period of greater than a few months. The FDA never rejected such cancer warnings.

1150.   At no time did Perrigo attempt to change the private-label ranitidine labels to delete a false or misleading expiration date, or to add a proper expiration date to ensure that the private-label ranitidine products would not break down into NDMA prior to human consumption.

1151.   The labels on the PLD products manufactured by Perrigo or lists referenced above also reflect that Perrigo packaged the store-branded ranitidine in large quantities. Because of the unstable nature of ranitidine, Perrigo knew or should have known that packages containing large quantities were less likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

Further, the demand for large quantity packages caused Perrigo to know that the use of ranitidine was routine for most customers and not a one-time purchase or use.

1152.   Based on the public scientific information, Perrigo knew or should have known that NDMA could form in ranitidine by exposure to heat, humidity, nitrites, the conditions of the human stomach, and/or over time in storage.

1153.   At no time did Perrigo change the private-label ranitidine products to shorten the expiration date.

1154.   Perrigo had the ability to unilaterally, or in conjunction with the PLDs, to make such label changes for the private-label ranitidine products without prior FDA approval pursuant to the CBE regulation.   Had Perrigo attempted such label changes, the FDA would not have rejected them.

1155.   Because it failed to include appropriate expiration dates on PLD ranitidine products, failed to provide proper storage instructions and failed to package the product in a manner that would lead to less risk of degradation and failed to warn of the inherent risks, Perrigo made false statements in the labeling of its private-label ranitidine products.

1156.   Because Perrigo failed to include appropriate expiration dates on the private-label products it manufactured, Perrigo made false statements in the labeling of its products.

### (iv)   Perrigo Misrepresentations of Omissions of Material Fact in Packaging

1157.   21 U.S.C. §352(i)(1) provides, in pertinent part,

> A drug or device shall be deemed to be misbranded –
>
> (i) DRUG; MISLEADING CONTAINER; IMITATION; OFFER FOR SALE UNDER ANOTHER NAME

> (1) If it is a drug and its container is so made, formed, or filled as to be misleading;….

(emphasis in original).

1158.   As alleged above, each contract manufacturer was required pursuant to federal law and contract to conduct stability testing, which was required to take the container into account.

1159.   As previously alleged, ranitidine degrades into NDMA more quickly at higher temperatures, at higher humidity levels, and under other poor storage or handling conditions.

1160.   Perrigo knew or should have known that ranitidine had an inherent risk of degrading into NDMA because it has both a nitroso (N) and dimethylamine (DMA), which are all the ingredients needed to form NDMA.

1161.   The ranitidine-containing products Plaintiffs consumed had excessive levels of NDMA in part because they were subjected to high levels of humidity and were stored for a long period of time (often in humid locations such as bathrooms).

1162.   A substantial factor in NDMA formation was the container system Perrigo chose. Pill bottles with large numbers of units of ranitidine are likely to be stored for long periods by consumers after the seal is broken.  This exposes the remaining units to humidity over time, which produces NDMA.

1163.   A different container would have reduced the amount of NDMA Plaintiffs consumed in several ways:

> (a)   Placing each unit of ranitidine in a blister pack or similar individually packaged container would ensure humidity control until the consumer used each unit.
>
> (b)   Reducing the number of units of ranitidine in each bottle to a low number would ensure the unused units were subject to humidity for only a shorter time period, since consumers would purchase new bottles more frequently.

       (c)      Reinforcing compliance with any labeling instructions to stop use after 14 days.

1164.   Perrigo could have changed, or consulted with its PLD to change, the container system it sold.  FDA guidance specifically allows changing the number of units in a non-sterile drug under its Changes-Being Effected regulation.[480]  FDA guidance also would treat changing to a unit-dose container such as a blister-pack to be a moderate change that could be implemented through the Changes-Being Effected regulation.[481]

1165.   Perrigo was not required to put its ranitidine in the same type of containers as the other OTC Zantac or OTC Ranitidine-Containing Poducts, because the duty of sameness does not apply to containers.  It applies only to the drug label.[482]

1166.   A reasonably prudent contract manufacturer would have changed, or consulted with its PLDs to change, the containers for ranitidine-containing products to protect the products from humidity and reduce the time between manufacture and consumption, both of which would reduce the amount of NDMA produced.

1167.   Further the demand for large quantity package sizes put Defendant on notice that purchases were made for regular and extended use, and not for a one-time occasion.

---

[480]  *See* FDA, *Guidance for Industry, Changes to an Approved NDA or ANDA, Revision 1*, at 21 (Apr. 2004), https://www.fda.gov/media/71846/download ("A change in the number of units (e.g., tablets, capsules) or labeled amount (e.g., grams, milliliters) of a nonsterile drug product in a unit-of-use container.").

[481]  *See id.* at 20-21 (only requiring pre-approval for *sterile* drug products, when moving *from* unit dose containers to multiple dose containers, rather than non-sterile drug products moving to unit dose containers).

[482]  *See* 21 C.F.R. §314.94(a)(8)(iv) ("Labeling (including the container label, package insert, and, if applicable, Medication Guide) proposed for the drug product must be the same as the labeling approved for the reference listed drug ….").

1168.   Because Perrigo failed to package its products in appropriate container sizes, Perrigo made false statements in the packaging of its private-label products.

1169.   Perrigo's conduct, as described above, was reckless.  Defendant regularly risked the lives of consumers and users of their products, including Plaintiffs, with full knowledge of the dangers of its products. Perrigo made conscious decisions not to change the containers for its ranitidine-containing products. Perrigo's reckless conduct therefore warrants an award of punitive damages.

> **b.**   **Apotex's Misrepresentations or Omissions of Material Fact in the Labeling and Packaging of Ranitidine Products**
>
> **(i)**   **Apotex is a Contract Manufacturing Organization for Private Label Distributors Walmart, Walgreens, and Rite-Aid.**

1170.   Apotex is a CMO that contracted with multiple PLDs, including Walmart, Walgreens, and Rite-Aid.

1171.   Apotex launched its "Private Label Division" in 2004, and launched its first OTC private label in the U.S. retail market in 2012. At that time Apotex's Private Label Division renamed the division "Apotex Consumer Products (ACP)."[483]

1172.   The Apotex Consumer Products division is focused on "supporting Private Label strategies to increase retail margins and drive [retail] client retention."[484]

1173.   Apotex maintains a Code of Conduct, which covers, *inter alia*, compliance with applicable laws and regulations. For example, the Code of Conduct provides: "As part of our quality standards, we are fully committed to ensuring our products are in full compliance with our

---

[483]   Apotex Inc., About Us, http://www.apotexconsumerproducts.ca/ (last visited Feb. 21, 2021).

[484]   *Id.*

- 449 -

rigorous internal standards, all application regulations, and GxP[1]. This commitment applies equally to products produced in our facilities and those supplied by third-party manufacturers."[485]

1174.   The footnote to "GxP" explains that "GxP collectively denotes Good Manufacturing Practice (GMP), Good Distribution Practice (GDP), Good Clinical Practice (GCP), Good Laboratory Practice (GLP) and Good Pharmacovigilance Practice (GVP) regulations."

1175.   Apotex's Code of Conduct further provides:



1176.   Apotex contracted with Walmart to manufacture Equate ranitidine products, including the following:

| Product | Dosage | Package | NDC | ANDA | ANDA Manufacturer | Start Marketing Approval Date |
|---------|--------|---------|-----|------|-------------------|-------------------------------|
| Equate Ranitidine (Walmart) | | | | | | |
| | 150 mg | 65 tablet bottle | 49035-117-06 | ANDA200172 | Apotex | 6/29/2017 |

1177.   Apotex contracted with Walgreens to manufacture Wal-Zan ranitidine products, including:

---

[485] Apotex, *Code of Conduct and Business Ethics*, at 13, https://www1.apotex.com/docs/librariesprovider3/business-ethics/code-of-conduct-en.pdf?sfvrsn=3bc170ed_18 (last visited Feb. 21, 2021).

| Product | Dosage | Package | NDC | ANDA | ANDA Manufacturer | Start Marketing Approval Date |
|---|---|---|---|---|---|---|
| Wal-Zan Ranitidine | | | | | | |
| | 150 mg | 65 tablet bottle | 0363-1030-01 | ANDA200172 | Apotex | 7/31/2015 |
| | 150 mg | 24 tablet bottle | 0363-1030-02 | ANDA200172 | Apotex | 7/31/2015 |
| | 150 mg | 50 tablet bottle | 0363-1030-05 | ANDA200172 | Apotex | 7/31/2015 |
| | 150 mg | 65 tablet bottle | 0363-1030-06 | ANDA200172 | Apotex | 7/31/2015 |
| | 150 mg | 200 tablet bottle | 0363-1030-07 | ANDA200172 | Apotex | 7/31/2015 |
| | 150 mg | 95 tablet bottle | 0363-1030-09 | ANDA200172 | Apotex | 7/31/2015 |
| | 75 mg | 80 tablet bottle | 0363-1029-08 | ANDA075167 | Apotex | 7/31/2015 |

1178.  Apotex contracted with Rite Aid to manufacture Rite Aid ranitidine products, including:

| Product | Dosage | Package | NDC | ANDA | ANDA Manufacturer | Start Marketing Approval Date |
|---|---|---|---|---|---|---|
| Rite Aid Ranitidine | | | | | | |
| | 150 mg | 95 tablet bottle | 11822-4727-3 | ANDA200172 | Apotex | 6/26/2017 |
| | 150 mg | 24 tablet bottle | 11822-6051-8 | ANDA200172 | Apotex | 6/26/2017 |
| | 150 mg | 50 tablet bottle | 11822-6052-1 | ANDA200172 | Apotex | 6/26/2017 |
| | 150 mg | 65 tablet bottle | 11822-6052-2 | ANDA200172 | Apotex | 6/26/2017 |
| | 150 mg | 24 tablet bottle | 11822-6107-4 | ANDA200172 | Apotex | 6/30/2017 |

1179.  Each of the PLDs contracted with Apotex, and Apotex agreed, to ensure that each of the private-label ranitidine products it manufactured complied with cGMPs and were not adulterated for failure to comply with CGMPs and were not misbranded.

1180.  Each of the PLDs contracted with Apotex, and Apotex agreed, to provide a third-party certification and submit to audits showing conformance with FDA CGMP specific for the private label ranitidine products.

> **(ii)     Despite Apotex's agreements to comply with cGMPs, Apotex was repeatedly cited by the FDA.**

1181.   The issues with the facility Apotex used to manufacture ranitidine-containing products were documented in a pair of FDA warning letters in 2009 and 2010 regarding Apotex's compliance with cGMPs.[486]

1182.   The FDA stated that its inspection noted a "documented" practice of "repackaging and assigning new batch numbers to products that failed the Acceptable Quality Level ("AQL") test.

1183.   As an example of this practice, the FDA specifically identified ranitidine.  The FDA wrote that:

> For example, desiccant batch #HK8805 was used in approximately 76 different products, 11 of which failed the AQL desiccant leaking test. These 11 lots of contaminated Ranitidine Film Coated tablets 150 mg were initially rejected. However, 10 of these 11 lots were repackaged into 500 count bottles using a new lot of desiccant, and assigned a new batch number. These lots were then released for distribution without assessing the potential impact the leaking desiccant could have on product quality. You stated in your response that examination of retain samples for the 11 lots did not confirm the presence of leaky desiccant. However, it is possible that the absence of defective desiccant may be related to the limited number of retain samples examined. In your response to this letter please include a justification for the sample size and the corrective actions you have implemented to prevent reoccurrence of these types of events.[487]

1184.   This was not the only issue the FDA noted at that time regarding ranitidine.  Indeed, the FDA stated that during a March 2008 inspection, "a yellow contaminant was found during the production of Ranitidine HCL batch #HV9588 that led to the rejection of the batch." However, the

---

[486] FDA   Warning   Letters,   Apotex   Inc.   (Mar.   29,   2010)   http://fda-warning-letters.blogspot.com/2010/03/apotex-inc-32910.html.

[487] *Id*.  While Plaintiffs have included this warning letter here, the warning letter may be applicable to prescription generic ranitidine.  Plaintiffs reserve the right to amend this allegation as further information is learned in discovery.

FDA noted that the investigation into this yellow contaminant was not expanded to other lots manufactured by the same equipment prior to March 31, 2008.[488]

1185.   Apotex continued to have issues with the FDA, and received an astounding four warning letters during the years it was manufacturing ranitidine-containing products.

1186.   For example, in a 2012 Warning Letter, the FDA wrote that the "evidence suggests that Apotex has failed to implement adequate global and sustainable corrective and preventative actions" and that it "continues to manufacture and distribute pharmaceutical product without upholding its legal obligation to comply with CGMP."[489]

1187.   A warning letter issued in 2015 called into question Apotex's stability program, necessary to ensure that drug remained stable and safe throughout the expiration date.  Indeed, the FDA documented multiple incidents of performing "trial" testing of samples, disregarding test results and reporting only those results that were favorable.[490]

1188.   The FDA also found that Apotex "failed to follow written procedures applicable to the quality control unit" and that the "quality control unit failed to review and approve all drug production and control records to determine compliance with all established, approved written procedures before a batch is released or distributed."[491]

---

[488] *Id.*

[489] Dept. of Health & Human Servs., Warning Letter to Apotex Inc. (Jan. 21, 2013), https://www.gmp-navigator.com/mygmp/mikrobiologie-sterilherstellung-hygiene/warning-letters-sterilfertigung?file=files/eca/userFiles/mygmp-guidelines/13-02-21-apotex.PDF.

[490] pharma Manufacturing, *Apotex Receives Warning Letter for India Facility* (Feb. 4, 2015), https://www.pharmamanufacturing.com/industrynews/2015/apotex-receives-warning-letter-for-india-facility/.

[491] *Id.*

1189.   In 2018, Apotex received yet another warning letter, which simply repeated the same observations the FDA had made in its 2008 and 2009 warning letters, which had gone uncorrected for over a decade.  The warning letter included observations that:

> (a)   Apotex failed to thoroughly investigate any unexplained discrepancy or failure of a batch or any of its components to meet any of its specifications, whether or not the batch had already been distributed; and
>
> (b)   Apotex failed to establish valid in-process specifications.[492]

1190.   The FDA also found that the problems were more endemic to the overall corporate operation, finding that Apotex's quality unit did not "fully exercise authority such as ensuring that appropriate investigations are performed with sound conclusions, identifying root causes, and supporting scientific justification."[493]

1191.   The FDA also noted that the company's overall quality systems were "inadequate."[494]

1192.   In this letter, the FDA repeated the history of similar cGMP violations, and the fact that the FDA had previously communicated about the "need for appropriate and global quality oversight and control over the manufacture" of their products.[495]

### (iii)   Apotex's Misrepresentations or Omissions in the Labeling of Ranitidine Products

1193.   21 U.S.C. §352(a)(1) provides, in pertinent part,

> A drug or device shall be deemed to be misbranded –

---

[492] FDA Warning Letter 320-18-69, Apotex Research Private Limited (Aug. 09, 2018) https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/apotex-research-private-limited-547439-08092018.

[493] *Id.*

[494] *Id.*

[495] *Id.*

(a) **FALSE OR MISLEADING LABEL**

(1) If its labeling is false or misleading in any particular.

(emphasis in original).

1194.   21 C.F.R. §210.1(a) states that the CGMPs establish "minimum current good manufacturing practice for methods to be used in, and the facilities or controls to be used for, the manufacture, processing, packing, or holding of a drug to assure that such drug meets the requirements of the act as to safety, and has the identity and strength and meets the quality and purity characteristics that it purports or is represented to possess."  Entities at all phases of the design, manufacture, and distribution chain are bound by these requirements.

1195.   Pursuant to 21 C.F.R. §211.142(b), the warehousing of drug products shall provide for "[s]torage of drug products under appropriate conditions of temperature, humidity, and light so that the identity, strength, quality, and purity of the drug products are not affected."  In other words, Defendant had a duty and was obligated to properly store, handle, and warehouse ranitidine.

1196.   Testing conducted by the FDA confirms that improper storage of ranitidine has resulted in extremely high levels of NDMA.[496]  The FDA has also concluded that NDMA can increase in ranitidine even under storage conditions allowed by the labels, and NDMA has been found to increase significantly in samples stored at higher temperatures, including temperatures the product may be exposed to during normal distribution and handling.  FDA's testing also showed that the level of NDMA in ranitidine-containing products increases with time.  And while Emery's Citizen Petition sought to obtain a directive regarding temperature-controlled shipping of ranitidine, which was necessary given the time and temperature sensitivity of the drug, that request

---

[496] Woodcock Letter, *supra* n.91.

was deemed moot by the FDA because the agency sought to withdraw ranitidine-containing products altogether.

1197.   Nothing prevented Apotex from, on its own, taking actions to prevent accumulation of NDMA in the private-label ranitidine-containing products by ensuring storage and transport at the lower end of the temperature range contained on the labels. Nothing prevented Apotex from ensuring that ranitidine was not exposed to humidity or moisture.

1198.   At no time did Apotex attempt to include a warning on the labels for the private-label ranitidine-containing products that consumers were at elevated risk of developing cancer if the products were: (i) exposed to excessive heat; (ii) exposed to excessive moisture/humidity; (iii) consumed with high-nitrite foods; (iv) consumed daily for a period of greater than a few months. The FDA never rejected such cancer warnings.

1199.   At no time did Apotex attempt to change the private-label ranitidine labels to delete a false or misleading expiration date, or to add a proper expiration date to ensure that the private-label ranitidine products would not break down into NDMA prior to human consumption.

1200.   The labels on the PLD products manufactured by Apotex or lists referenced above also reflect that Apotex packaged the store-branded ranitidine in large quantities.  Because of the unstable nature of ranitidine, Apotex knew or should have known that packages containing large quantities were less likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date. Further, the demand for large quantity packages caused Apotex to know that the use of ranitidine was routine for most customers and not a one-time purchase or use.

1201.  Based on the public scientific information, Apotex knew or should have known that NDMA could form in ranitidine by exposure to heat, humidity, nitrites, the conditions of the human stomach, and/or over time in storage.

1202.  At no time did Apotex change the private-label ranitidine products to shorten the expiration date.

1203.  Apotex had the ability to unilaterally, or in conjunction with the PLDs, to make such label changes for the private-label ranitidine products without prior FDA approval pursuant to the CBE regulation.  Had Apotex attempted such label changes, the FDA would not have rejected them.

1204.  Because it failed to include appropriate expiration dates on PLD ranitidine products, failed to provide proper storage instructions and failed to package the product in a manner that would lead to less risk of degradation and failed to warn of the inherent risks, Apotex made false statements in the labeling of its private-label ranitidine products.

1205.  Because Apotex failed to include appropriate expiration dates on the private-label products it manufactured, Apotex  made false statements in the labeling of its products.

### (iv)    Apotex Misrepresentations of Omissions of Material Fact in Packaging

1206.  21 U.S.C. §352(i)(1) provides, in pertinent part,

> A drug or device shall be deemed to be misbranded –
>
> (i) DRUG; MISLEADING CONTAINER; IMITATION; OFFER FOR SALE UNDER ANOTHER NAME
>
> (1) If it is a drug and its container is so made, formed, or filled as to be misleading;….

(emphasis in original).

1207.   As alleged above, each contract manufacturer was required pursuant to federal law and contract to conduct stability testing, which was required to take the container into account.

1208.   As previously alleged, ranitidine degrades into NDMA more quickly at higher temperatures, at higher humidity levels, and under other poor storage or handling conditions.

1209.   Apotex knew or should have known that ranitidine had an inherent risk of degrading into NDMA because it has both a nitroso (N) and dimethylamine (DMA), which are all the ingredients needed to form NDMA.

1210.   The ranitidine-containing products Plaintiffs consumed had excessive levels of NDMA in part because they were subjected to high levels of humidity and were stored for a long period of time (often in humid locations such as bathrooms).

1211.   A substantial factor in NDMA formation was the container system Apotex chose. Pill bottles with large numbers of units of ranitidine are likely to be stored for long periods by consumers after the seal is broken.  This exposes the remaining units to humidity over time, which produces NDMA.

1212.   A different container would have reduced the amount of NDMA Plaintiffs consumed in several ways:

> (a)   Placing each unit of ranitidine in a blister pack or similar individually packaged container would ensure humidity control until the consumer used each unit.

> (b)   Reducing the number of units of ranitidine in each bottle to a low number would ensure the unused units were subject to humidity for only a shorter time period, since consumers would purchase new bottles more frequently.

> (c)   Reinforcing compliance with any labeling instructions to stop use after 14 days.

1213.   Apotex could have changed, or consulted with its PLD to change, the container system it sold.  FDA guidance specifically allows changing the number of units in a non-sterile

drug under its Changes-Being Effected regulation.[497]  FDA guidance also would treat changing to a unit-dose container such as a blister-pack to be a moderate change that could be implemented through the Changes-Being Effected regulation.[498]

1214.   Apotex was not required to put its ranitidine in the same type of containers as the other OTC Zantac or OTC Ranitidine-Containing Products, because the duty of sameness does not apply to containers.  It applies only to the drug label.[499]

1215.   A reasonably prudent contract manufacturer would have changed, or consulted with its PLDs to change, the containers for ranitidine-containing products to protect the products from humidity and reduce the time between manufacture and consumption, both of which would reduce the amount of NDMA produced.

1216.   Further the demand for large quantity package sizes put Defendant on notice that purchases were made for regular and extended use, and not for a one-time occasion.

1217.   Because Apotex failed to package its products in appropriate container sizes, Apotex made false statements in the packaging of its private-label products.

1218.   Apotex's conduct, as described above, was reckless.  Defendant regularly risked the lives of consumers and users of their products, including Plaintiffs, with full knowledge of the dangers of its products.  Apotex made conscious decisions not to change the containers for its

---

[497]  *See* FDA, *Guidance for Industry, Changes to an Approved NDA or ANDA, Revision 1*, at 21 (Apr. 2004), https://www.fda.gov/media/71846/download ("A change in the number of units (e.g., tablets, capsules) or labeled amount (e.g., grams, milliliters) of a nonsterile drug product in a unit-of-use container.").

[498]  *See id.* at 20-21 (only requiring pre-approval for *sterile* drug products, when moving *from* unit dose containers to multiple dose containers, rather than non-sterile drug products moving to unit dose containers).

[499]  *See* 21 C.F.R. §314.94(a)(8)(iv) ("Labeling (including the container label, package insert, and, if applicable, Medication Guide) proposed for the drug product must be the same as the labeling approved for the reference listed drug ….").

ranitidine-containing products. Apotex's reckless conduct therefore warrants an award of punitive damages.

> ### c.   Dr. Reddy's Misrepresentations or Omissions of Material Fact in the Labeling and Packaging of Ranitidine

> #### (i)   Dr. Reddy's is a Contract Manufacturing Organization for Private Label Distributors Walmart, Walgreens, and CVS.

1219.   Dr. Reddy's is a CMO that contracted with multiple PLDs, including Walmart, Walgreens, and CVS.

1220.   According to Dr. Reddy's, it manufactures and sells "Over-the-counter products: More than 170+ SKUs for private labels packaging presentations."[500]

1221.   According to Dr. Reddy's, its manufacturing facilities comply with regulatory and cGMP requirements of the United States, including quality and safety requirements set by the FDA.[501]

1222.   Dr. Reddy's represents that its product responsibility includes "the assessment of health and safety impacts of products, extends from product development to manufacture, to product release, and to post-launch."[502] The website explains:[503]

---

[500] Dr. Reddy's Laboratories Ltd., *2018 North America Generics Product Catalog*, https://www.drreddys.com/media/107298/otc_catalog.pdf (last visited Feb. 21, 2021).

[501] Dr. Reddy's Dr. Reddy's Laboratories Ltd, Sustainability Report 2009, Regulatory Compliance, https://www.drreddys.com/OurCitizenship/SustainabilityReports/2009/pr-regulatorycompliance.html (last visited Feb. 21, 2021).

[502] Dr. Reddy's Dr. Reddy's Laboratories Ltd, Sustainability Report 2009, Product Safety, https://www.drreddys.com/OurCitizenship/SustainabilityReports/2009/pr-productsafety.html (last visited Feb. 21, 2021).

[503] *Id.*



1223.   Dr. Reddy's maintains a Code of Business Conduct & Ethics. Dr. Reddy's Code provides in part: "To ensure the safe and proper use of our products, information provided to our customers and healthcare professionals on the packaging label, inserts, local prescribing information, or sales and advertising material must be in compliance with all applicable laws, standards and regulations that apply to our products, and supported by scientific evidence where relevant."[504]

1224.   The Code further warrants: "We do not include false or misleading information or any misrepresentation, overstatement of the efficacy of our products, or statements that downplay or minimize the risks associated with our products."[505]

1225.   Dr. Reddy's manufactured Brand Zantac 150®, and as explained in its OTC catalog: "Select Dr. Reddys OTC products are available as private label."[506]

---

[504]   Dr. Reddy's, Code of Business Conduct & Ethics, at 11 (last visited Feb. 21, 2021).

[505]   *Id.*

[506]   Dr. Reddy's Laboratories Ltd., *supra* n.500, at 42.



1226.  Dr. Reddy's contracted with Walmart to manufacture several Equate ranitidine products, including the following:

| Product | Dosage | Package | NDC | ANDA | ANDA Manufacturer | Start Marketing Approval Date |
|---|---|---|---|---|---|---|
| **Equate Ranitidine (Walmart)** | | | | | | |
| | 150 mg | 65 tablet, 2 bottles in 1 carton | 49035-404-13 | ANDA078192 | Dr. Reddys | 1/5/2010 |
| | 150 mg | 24 tablet bottle | 49035-404-34 | ANDA078192 | Dr. Reddys | 1/5/2010 |
| | 150 mg | 65 tablet bottle | 49035-404-61 | ANDA078192 | Dr. Reddys | 1/5/2010 |
| | 150 mg | 220 tablet bottle | 49035-404-65 | ANDA078192 | Dr. Reddys | 1/5/2010 |

1227.  Dr. Reddy's contracted with Walgreens to manufacture several Wal-Zan ranitidine products, including:

| Product | Dosage | Package | NDC | ANDA | ANDA Manufacturer | Start Marketing Approval Date |
|---------|--------|---------|-----|------|-------------------|-------------------------------|
| Wal-Zan Ranitidine | | | | | | |
| | 150 mg | 200 tablet bottle | 0363-0010-01 | ANDA078192 | Dr. Reddys | 6/11/2011 |
| | 150 mg | 36 tablet bottle | 0363-0010-23 | ANDA078192 | Dr. Reddys | 6/11/2011 |
| | 150 mg | 65 tablet bottle | 0363-0010-26 | ANDA078192 | Dr. Reddys | 6/11/2011 |
| | 150 mg | 32 tablet bottle | 0363-0010-32 | ANDA078192 | Dr. Reddys | 6/11/2011 |
| | 150 mg | 24 tablet bottle | 0363-0010-34 | ANDA078192 | Dr. Reddys | 6/11/2011 |
| | 150 mg | 50 tablet bottle | 0363-0010-50 | ANDA078192 | Dr. Reddys | 6/11/2011 |
| | 150 mg | 65 tablet bottle | 0363-0010-61 | ANDA078192 | Dr. Reddys | 6/11/2011 |
| | 75 mg | 30 tablet bottle | 0363-0131-30 | ANDA075294 | Dr. Reddys | 1/6/2014 |
| | 75 mg | 45 tablet bottle | 0363-0131-33 | ANDA075294 | Dr. Reddys | 1/6/2014 |
| | 75 mg | 80 tablet bottle | 0363-0131-80 | ANDA075294 | Dr. Reddys | 1/6/2014 |

1228.   Dr. Reddy's contracted with CVS to manufacture CVS Health ranitidine products, including:

| Product | Dosage | Package | NDC | ANDA | ANDA Manufacturer | Start Marketing Approval Date |
|---------|--------|---------|-----|------|-------------------|-------------------------------|
| CVS Health Ranitidine (CVS) | | | | | | |
| | 150 mg | 95 tablet bottle | 69842-869-62 | ANDA078192 | Dr. Reddys | 5/1/2010 |
| | 75 mg | 30 tablet bottle | 69842-871-30 | ANDA075294 | Dr. Reddys | 7/1/2009 |
| | 75 mg | 160 tablet bottle | 69842-871-37 | ANDA075294 | Dr. Reddys | 7/1/2009 |
| | 75 mg | 80 tablet bottle | 69842-871-80 | ANDA075294 | Dr. Reddys | 7/1/2009 |

1229.   Each of the PLDs contracted with Dr. Reddy's, and Dr. Reddy's agreed, to ensure that each of the private-label ranitidine products it manufactured complied with cGMPs and were not adulterated for failure to comply with CGMPs and were not misbranded.

1230.   Each of the PLDs contracted with Dr. Reddy's, and Dr. Reddy's agreed, to provide a third party certification and submit to audits showing conformance with FDA CGMP specific for the private label ranitidine products.

(ii)     Dr. Reddy's Misrepresentations or Omissions in the Labeling of Ranitidine Products

1231.   21 U.S.C. §352(a)(1) provides, in pertinent part,

A drug or device shall be deemed to be misbranded –

(a) FALSE OR MISLEADING LABEL

(1) If its labeling is false or misleading in any particular.

(emphasis in original).

1232.   21 C.F.R. §210.1(a) states that the CGMPs establish "minimum current good manufacturing practice for methods to be used in, and the facilities or controls to be used for, the manufacture, processing, packing, or holding of a drug to assure that such drug meets the requirements of the act as to safety, and has the identity and strength and meets the quality and purity characteristics that it purports or is represented to possess."  Entities at all phases of the design, manufacture, and distribution chain are bound by these requirements.

1233.   Pursuant to 21 C.F.R. §211.142(b), the warehousing of drug products shall provide for "[s]torage of drug products under appropriate conditions of temperature, humidity, and light so that the identity, strength, quality, and purity of the drug products are not affected."  In other words, Defendant had a duty and was obligated to properly store, handle, and warehouse ranitidine.

1234.   Testing conducted by the FDA confirms that improper storage of ranitidine has resulted in extremely high levels of NDMA.[507]  The FDA has also concluded that NDMA can increase in ranitidine even under storage conditions allowed by the labels, and NDMA has been found to increase significantly in samples stored at higher temperatures, including temperatures the product may be exposed to during normal distribution and handling.  FDA's testing also

---

[507] Woodcock Letter, *supra* n.91.

showed that the level of NDMA in ranitidine-containing products increases with time.  And while Emery's Citizen Petition sought to obtain a directive regarding temperature-controlled shipping of ranitidine, which was necessary given the time and temperature sensitivity of the drug, that request was deemed moot by the FDA because the agency sought to withdraw ranitidine-containing products altogether.

1235.   Nothing prevented Dr. Reddy's from, on its own, taking actions to prevent accumulation of NDMA in the private-label ranitidine-containing products by ensuring storage and transport at the lower end of the temperature range contained on the labels. Nothing prevented Dr. Reddy's from ensuring that ranitidine was not exposed to humidity or moisture.

1236.   At no time did Dr. Reddy's attempt to include a warning on the labels for the private-label ranitidine-containing products that consumers were at elevated risk of developing cancer if the products were: (i) exposed to excessive heat; (ii) exposed to excessive moisture/humidity; (iii) consumed with high-nitrite foods; (iv) consumed daily for a period of greater than a few months.  The FDA never rejected such cancer warnings.

1237.   At no time did Dr. Reddy's attempt to change the private-label ranitidine labels to delete a false or misleading expiration date, or to add a proper expiration date to ensure that the private-label ranitidine products would not break down into NDMA prior to human consumption.

1238.   The labels on the PLD products manufactured by Dr. Reddy's or lists referenced above also reflect that Dr. Reddy's packaged the store-branded ranitidine in large quantities. Because of the unstable nature of ranitidine, Dr. Reddy's knew or should have known that packages containing large quantities were less likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe

and appropriate date.  Further, the demand for large quantity packages caused Dr. Reddy's to know that the use of ranitidine was routine for most customers and not a one-time purchase or use.

1239.   Based on the public scientific information, Dr. Reddy's knew or should have known that NDMA could form in ranitidine by exposure to heat, humidity, nitrites, the conditions of the human stomach, and/or over time in storage.

1240.   At no time did Dr. Reddy's change the private-label ranitidine products to shorten the expiration date.

1241.   Dr. Reddy's had the ability to unilaterally, or in conjunction with the PLDs, to make such label changes for the private-label ranitidine products without prior FDA approval pursuant to the CBE regulation.  Had Dr. Reddy's attempted such label changes, the FDA would not have rejected them.

1242.   Because it failed to include appropriate expiration dates on PLD ranitidine products, failed to provide proper storage instructions and failed to package the product in a manner that would lead to less risk of degradation and failed to warn of the inherent risks, Dr. Reddy's made false statements in the labeling of its private-label ranitidine products.

1243.   Because Dr. Reddy's failed to include appropriate expiration dates on the private-label products it manufactured, Dr. Reddy's made false statements in the labeling of its products.

### (iii)   Dr. Reddy's Misrepresentations of Omissions of Material Fact in Packaging

1244.   21 U.S.C. §352(i)(1) provides, in pertinent part,

> A drug or device shall be deemed to be misbranded –
>
> (i) DRUG; MISLEADING CONTAINER; IMITATION; OFFER FOR SALE UNDER ANOTHER NAME

> (1) If it is a drug and its container is so made, formed, or filled as to be
>
> misleading;….

(emphasis in original).

1245.   As alleged above, each contract manufacturer was required pursuant to federal law and contract to conduct stability testing, which was required to take the container into account.

1246.   As previously alleged, ranitidine degrades into NDMA more quickly at higher temperatures, at higher humidity levels, and under other poor storage or handling conditions.

1247.   Dr. Reddy's knew or should have known that ranitidine had an inherent risk of degrading into NDMA because it has both a nitroso (N) and dimethylamine (DMA), which are all the ingredients needed to form NDMA.

1248.   The ranitidine-containing products Plaintiffs consumed had excessive levels of NDMA in part because they were subjected to high levels of humidity and were stored for a long period of time (often in humid locations such as bathrooms).

1249.   A substantial factor in NDMA formation was the container system Dr. Reddy's chose.  Pill bottles with large numbers of units of ranitidine are likely to be stored for long periods by consumers after the seal is broken.  This exposes the remaining units to humidity over time, which produces NDMA.

1250.   A different container would have reduced the amount of NDMA Plaintiffs consumed in several ways:

(a)   Placing each unit of ranitidine in a blister pack or similar individually packaged container would ensure humidity control until the consumer used each unit.

(b)   Reducing the number of units of ranitidine in each bottle to a low number would ensure the unused units were subject to humidity for only a shorter time period, since consumers would purchase new bottles more frequently.

(c)     Reinforcing compliance with any labeling instructions to stop use after 14 days.

1251.   Dr. Reddy's could have changed, or consulted with its PLD to change, the container system it sold.  FDA guidance specifically allows changing the number of units in a non-sterile drug under its Changes-Being Effected regulation.[508]  FDA guidance also would treat changing to a unit-dose container such as a blister-pack to be a moderate change that could be implemented through the Changes-Being Effected regulation.[509]

1252.   Dr. Reddy's was not required to put its ranitidine in the same type of containers as the other OTC Zantac or OTC Ranitidine-Containing Products, because the duty of sameness does not apply to containers.  It applies only to the drug label.[510]

1253.   A reasonably prudent contract manufacturer would have changed, or consulted with its PLDs to change, the containers for ranitidine-containing products to protect the products from humidity and reduce the time between manufacture and consumption, both of which would reduce the amount of NDMA produced.

1254.   Further the demand for large quantity package sizes put Defendant on notice that purchases were made for regular and extended use, and not for a one-time occasion.

---

[508]  *See* FDA, *Guidance for Industry, Changes to an Approved NDA or ANDA, Revision 1*, at 21 (Apr. 2004), https://www.fda.gov/media/71846/download ("A change in the number of units (e.g., tablets, capsules) or labeled amount (e.g., grams, milliliters) of a nonsterile drug product in a unit-of-use container.").

[509]  *See id.* at 20-21 (only requiring pre-approval for ***sterile*** drug products, when moving ***from*** unit dose containers to multiple dose containers, rather than non-sterile drug products moving to unit dose containers).

[510]  *See* 21 C.F.R. §314.94(a)(8)(iv) ("Labeling (including the container label, package insert, and, if applicable, Medication Guide) proposed for the drug product must be the same as the labeling approved for the reference listed drug ….").

1255.   Because Dr. Reddy's failed to package its products in appropriate container sizes, Dr. Reddy's made false statements in the packaging of its private-label products.

1256.   Dr. Reddy's conduct, as described above, was reckless.  Defendant regularly risked the lives of consumers and users of their products, including Plaintiffs, with full knowledge of the dangers of its products. Dr. Reddy's made conscious decisions not to change the containers for its ranitidine-containing products. Dr. Reddy's reckless conduct therefore warrants an award of punitive damages.

> **d.    Strides' Misrepresentations or Omissions of Material Fact in the Labeling and Packaging of Private-Label Ranitidine**
>
> **(i)    Strides is a Contract Manufacturing Organization for Private Label Distributors Walmart, Walgreens, CVS, and Rite-Aid.**

1257.   Strides is a CMO that contracted with multiple PLDs, including Walmart, Walgreens, CVS, and Rite-Aid.

1258.   Strides contends that it has a "Clear vision of providing quality healthcare products to the market both in Prescription, Private label, OTC, and consumer health markets."[511]

1259.   Strides contracted with Walmart to manufacture several Equate ranitidine products, including the following:

| Product | Dosage | Package | NDC | ANDA | ANDA Manufacturer | Start Marketing Approval Date |
|---|---|---|---|---|---|---|
| Equate Ranitidine (Walmart) | | | | | | |
| | 75 mg | 30 tablet bottle | 49035-353-30 | ANDA201745 | Strides | 7/10/2012 |
| | 75 mg | 150 tablet bottle | 49035-353-55 | ANDA201745 | Strides | 7/10/2012 |
| | 75 mg | 10 tablet blister pack | 49035-353-69 | ANDA201745 | Strides | 7/10/2012 |

---

[511] Strides Pharma Science Limited, Pharma Generics – United States, https://www.strides.com/pharma-united-states.html (last visited Feb. 21, 2021).

1260. Strides contracted with Walgreens to manufacture several Wal-Zan ranitidine products, including:

| Product | Dosage | Package | NDC | ANDA | ANDA Manufacturer | Start Marketing Approval Date |
|---|---|---|---|---|---|---|
| **Wal-Zan Ranitidine** | | | | | | |
| | 75 mg | 80 tablet bottle | 0363-0352-08 | ANDA201745 | Strides | 9/24/2013 |
| | 75 mg | 30 tablet bottle | 0363-0352-30 | ANDA201745 | Strides | 9/24/2013 |
| | 150 mg | 200 tablet bottle | 0363-0362-02 | ANDA200536 | Strides | 6/28/2011 |
| | 150 mg | 24 tablet bottle | 0363-0362-23 | ANDA200536 | Strides | 6/28/2011 |
| | 150 mg | 50 tablet bottle | 0363-0362-50 | ANDA200536 | Strides | 6/28/2011 |
| | 150 mg | 65 tablet bottle | 0363-0362-52 | ANDA200536 | Strides | 6/28/2011 |
| | 150 mg | 95 tablet bottle | 0363-0362-95 | ANDA200536 | Strides | 6/28/2011 |

1261. Strides contracted with CVS to manufacture CVS Health ranitidine products, including:

| Product | Dosage | Package | NDC | ANDA | ANDA Manufacturer | Start Marketing Approval Date |
|---|---|---|---|---|---|---|
| **CVS Health Ranitidine (CVS)** | | | | | | |
| | 75 mg | 80 tablet bottle | 59779-356-08 | ANDA201745 | Strides | 9/9/2013 |
| | 75 mg | 160 tablet bottle | 59779-356-16 | ANDA201745 | Strides | 9/9/2013 |
| | 75 mg | 30 tablet blister pack | 59779-356-31 | ANDA201745 | Strides | 9/9/2013 |
| | 150 mg | 200 tablet bottle | 59779-354-20 | ANDA200536 | Strides | 8/21/2012 |
| | 150 mg | 24 tablet blister pack | 59779-354-24 | ANDA200536 | Strides | 8/21/2012 |
| | 150 mg | 65 tablet bottle | 59779-354-65 | ANDA200536 | Strides | 8/21/2012 |
| | 150 mg | 95 tablet bottle | 59779-354-95 | ANDA200536 | Strides | 8/21/2012 |

1262. Strides contracted with Rite Aid to manufacture Rite Aid ranitidine products, including:

| Product | Dosage | Package | NDC | ANDA | ANDA Manufacturer | Start Marketing Approval Date |
|---|---|---|---|---|---|---|
| Rite Aid Ranitidine | | | | | | |
| | 75 mg | 30 tablet bottle | 11822-6190-0 | ANDA200536 | Strides | 6/15/2013 |
| | 75 mg | 60 tablet bottle | 11822-6190-1 | ANDA200536 | Strides | 6/15/2013 |
| | 75 mg | 80 tablet bottle | 11822-6190-8 | ANDA200536 | Strides | 6/15/2013 |

1263.  Each of the PLDs contracted with Strides, and Strides agreed, to ensure that each of the private-label ranitidine products it manufactured complied with cGMPs and were not adulterated for failure to comply with CGMPs and were not misbranded.

1264.  Each of the PLDs contracted with Strides, and Strides agreed, to provide a third-party certification and submit to audits showing conformance with FDA CGMP specific for the private label ranitidine products.

(ii)      **Despite Strides' agreements to conform to cGMPs, Strides has repeatedly been cited by the FDA.**

1265.  The FDA has repeatedly noted a slew of violations of cGMPs at Strides' manufacturing facilities over the years leading up to a recall of ranitidine-containing products in 2019.

1266.  For example, during a 2014 inspection of one of the facilities used by Strides to manufacture ranitidine-containing products in Bangalore, India, the FDA made four critical observations about issues with Strides' manufacturing practices and compliance with cGMPs.[512]

---

[512]  FDA Form 483, Strides Arcolab Ltd (FEI: 3004554612), Aug. 26, 2014, released pursuant to FOIA request.

1267.   The FDA noted that Strides had not established control procedures to monitor the output and validate the performance of its manufacturing processes, resulting in "variability in the characteristics of in-process material and the drug product."[513]

1268.   The FDA also observed that written procedures were not being followed to conduct annual evaluations of "returned or salvaged drug products and investigations conducted for each drug product."[514]

1269.   With respect to complaints made about the finished dose of its products, the FDA found that Strides' complaint records were "deficient" because they did not include the findings of the investigation and follow-up regarding those investigations.[515]

1270.   The FDA noted that deficient complaint investigations appeared to be a "pattern" of problematic behavior at this Strides facility.[516]

1271.   Upon a return inspection of this particular facility in 2016, the FDA noted that the equipment used in the "manufacture, processing, packing or holding of drug products is not of appropriate design to facilitate operations for its intended use."[517]

1272.   An inspection of this same facility in 2017 yielded even more observations related to Strides' investigations into "unexplained discrepancies" about a drug product which was

---

[513]  FDA Form 483, Strides Arcolab Ltd (FEI: 3004554612), Aug. 26, 2014, released pursuant to FOIA request.

[514]  FDA Form 483, Strides Arcolab Ltd (FEI: 3004554612), Aug. 26, 2014, released pursuant to FOIA request.

[515]  FDA Form 483, Strides Arcolab Ltd (FEI: 3004554612), Aug. 26, 2014, released pursuant to FOIA request.

[516]  FDA Form 483, Strides Arcolab Ltd (FEI: 3004554612), Aug. 26, 2014, released pursuant to FOIA request.

[517]  FDA Form 483, Strides Arcolab Ltd (FEI: 3004554612), Feb. 19, 2016, released pursuant to FOIA request.

"sticking" and "melting" together.  The FDA noted that Strides' investigation "did not arrive at the actual root cause" of the problem which resulted in finished dose product "sticking" and "melting" together, and further that Strides had not taken "appropriate corrective actions."[518]

1273.  Moreover, the FDA found that Strides lacked the "written procedures for production and process controls" designed to assure that the drug products Strides manufactured had the "identity, strength, quality and purity they purport or are represented to possess."[519]

1274.  In 2019, Strides' issues with the FDA came to a head when the FDA issued the company a warning letter, its strongest rebuke.[520]

1275.  In the warning letter, the FDA summarized the "significant" violations of cGMP regulations, which included:

    (a)    Failure to establish an adequate control unit with the responsibility and authority to approve or reject all components, drug product containers, closures, in-process materials, packaging materials, labeling and drug products;

    (b)    Failure to thoroughly investigate any unexplained discrepancies or failures of a batch or any of its components to meet any of its specifications, regardless of whether the batch has already been distributed; and

    (c)    Data integrity issues related to its quality system, which did not adequately ensure the "accuracy and integrity of data to support the safety, effectiveness and quality of the drugs" manufactured by Strides.

### (iii)  Strides' Misrepresentations or Omissions in the Labeling of Ranitidine Products

1276.  21 U.S.C. §352(a)(1) provides, in pertinent part,

---

[518]  FDA Form 483, Strides Arcolab Ltd (FEI: 3004554612), May 26, 2017, released pursuant to FOIA request.

[519]  FDA Form 483, Strides Arcolab Ltd (FEI: 3004554612), May 26, 2017, released pursuant to FOIA request.

[520]  FDA Warning Letter, Strides Pharma Science Limited (July 01, 2019), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/strides-pharma-science-limited-576722-07012019.

A drug or device shall be deemed to be misbranded –

(a) **FALSE OR MISLEADING LABEL**

(1) If its labeling is false or misleading in any particular.

(emphasis in original).

1277.   21 C.F.R. §210.1(a) states that the CGMPs establish "minimum current good manufacturing practice for methods to be used in, and the facilities or controls to be used for, the manufacture, processing, packing, or holding of a drug to assure that such drug meets the requirements of the act as to safety, and has the identity and strength and meets the quality and purity characteristics that it purports or is represented to possess."  Entities at all phases of the design, manufacture, and distribution chain are bound by these requirements.

1278.   Pursuant to 21 C.F.R. §211.142(b), the warehousing of drug products shall provide for "[s]torage of drug products under appropriate conditions of temperature, humidity, and light so that the identity, strength, quality, and purity of the drug products are not affected."  In other words, Defendant had a duty and was obligated to properly store, handle, and warehouse ranitidine.

1279.   Testing conducted by the FDA confirms that improper storage of ranitidine has resulted in extremely high levels of NDMA.[521]  The FDA has also concluded that NDMA can increase in ranitidine even under storage conditions allowed by the labels, and NDMA has been found to increase significantly in samples stored at higher temperatures, including temperatures the product may be exposed to during normal distribution and handling.  FDA's testing also showed that the level of NDMA in ranitidine-containing products increases with time.  And while Emery's Citizen Petition sought to obtain a directive regarding temperature-controlled shipping of ranitidine, which was necessary given the time and temperature sensitivity of the drug, that request

---

[521]  Woodcock Letter, *supra* n.91.

was deemed moot by the FDA because the agency sought to withdraw ranitidine-containing products altogether.

1280.   Nothing prevented Strides from, on its own, taking actions to prevent accumulation of NDMA in the private-label ranitidine-containing products by ensuring storage and transport at the lower end of the temperature range contained on the labels. Nothing prevented Strides from ensuring that ranitidine was not exposed to humidity or moisture.

1281.   At no time did Strides attempt to include a warning on the labels for the private-label ranitidine-containing products that consumers were at elevated risk of developing cancer if the products were: (i) exposed to excessive heat; (ii) exposed to excessive moisture/humidity; (iii) consumed with high-nitrite foods; (iv) consumed daily for a period of greater than a few months. The FDA never rejected such cancer warnings.

1282.   At no time did Strides attempt to change the private-label ranitidine labels to delete a false or misleading expiration date, or to add a proper expiration date to ensure that the private-label ranitidine products would not break down into NDMA prior to human consumption.

1283.   The labels on the PLD products manufactured by Strides or lists referenced above also reflect that Strides packaged the store-branded ranitidine in large quantities.  Because of the unstable nature of ranitidine, Strides knew or should have known that packages containing large quantities were less likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date. Further, the demand for large quantity packages caused Strides to know that the use of ranitidine was routine for most customers and not a one-time purchase or use.

1284.   Based on the public scientific information, Strides knew or should have known that NDMA could form in ranitidine by exposure to heat, humidity, nitrites, the conditions of the human stomach, and/or over time in storage.

1285.   At no time did Strides change the private-label ranitidine products to shorten the expiration date.

1286.   Strides had the ability to unilaterally, or in conjunction with the PLDs, to make such label changes for the private-label ranitidine products without prior FDA approval pursuant to the CBE regulation.  Had Strides attempted such label changes, the FDA would not have rejected them.

1287.   Because it failed to include appropriate expiration dates on PLD ranitidine products, failed to provide proper storage instructions and failed to package the product in a manner that would lead to less risk of degradation and failed to warn of the inherent risks, Strides made false statements in the labeling of its private-label ranitidine products.

1288.   Because Strides failed to include appropriate expiration dates on the private-label products it manufactured, Strides made false statements in the labeling of its products.

<div align="center">

**(iv)    Strides' Misrepresentations or Omissions of Material Fact in Packaging**

</div>

1289.   21 U.S.C. §352(i)(1) provides, in pertinent part,

> A drug or device shall be deemed to be misbranded –
>
> (i) DRUG; MISLEADING CONTAINER; IMITATION; OFFER FOR SALE UNDER ANOTHER NAME
>
> (1) If it is a drug and its container is so made, formed, or filled as to be misleading;….

(emphasis in original).

1290.   As alleged above, each contract manufacturer was required pursuant to federal law and contract to conduct stability testing, which was required to take the container into account.

1291.   As previously alleged, ranitidine degrades into NDMA more quickly at higher temperatures, at higher humidity levels, and under other poor storage or handling conditions.

1292.   Strides knew or should have known that ranitidine had an inherent risk of degrading into NDMA because it has both a nitroso (N) and dimethylamine (DMA), which are all the ingredients needed to form NDMA.

1293.   The ranitidine-containing products Plaintiffs consumed had excessive levels of NDMA in part because they were subjected to high levels of humidity and were stored for a long period of time (often in humid locations such as bathrooms).

1294.   A substantial factor in NDMA formation was the container system Strides chose. Pill bottles with large numbers of units of ranitidine are likely to be stored for long periods by consumers after the seal is broken.  This exposes the remaining units to humidity over time, which produces NDMA.

1295.   A different container would have reduced the amount of NDMA Plaintiffs consumed in several ways:

(a)   Placing each unit of ranitidine in a blister pack or similar individually packaged container would ensure humidity control until the consumer used each unit.

(b)   Reducing the number of units of ranitidine in each bottle to a low number would ensure the unused units were subject to humidity for only a shorter time period, since consumers would purchase new bottles more frequently.

(c)   Reinforcing compliance with any labeling instructions to stop use after 14 days.

1296.   Strides could have changed, or consulted with its PLD to change, the container system it sold.  FDA guidance specifically allows changing the number of units in a non-sterile

drug under its Changes-Being Effected regulation.[522]  FDA guidance also would treat changing to a unit-dose container such as a blister-pack to be a moderate change that could be implemented through the Changes-Being Effected regulation.[523]

1297.   Strides was not required to put its ranitidine in the same type of containers as the other OTC Zantac or OTC Ranitidine-Containing Products, because the duty of sameness does not apply to containers.  It applies only to the drug label.[524]

1298.   A reasonably prudent contract manufacturer would have changed, or consulted with its PLDs to change, the containers for ranitidine-containing products to protect the products from humidity and reduce the time between manufacture and consumption, both of which would reduce the amount of NDMA produced.

1299.   Further the demand for large quantity package sizes put Defendant on notice that purchases were made for regular and extended use, and not for a one-time occasion.

1300.   Because Strides failed to package its products in appropriate container sizes, Strides made false statements in the packaging of its private-label products.

1301.   Strides' conduct, as described above, was reckless.  Defendant regularly risked the lives of consumers and users of their products, including Plaintiffs, with full knowledge of the dangers of its products. Strides made conscious decisions not to change the containers for its

---

[522]  *See* FDA, *Guidance for Industry, Changes to an Approved NDA or ANDA, Revision 1*, at 21 (Apr. 2004), https://www.fda.gov/media/71846/download ("A change in the number of units (e.g., tablets, capsules) or labeled amount (e.g., grams, milliliters) of a nonsterile drug product in a unit-of-use container.").

[523]  *See id.* at 20–21 (only requiring pre-approval for *sterile* drug products, when moving *from* unit dose containers to multiple dose containers, rather than non-sterile drug products moving to unit dose containers).

[524]  *See* 21 C.F.R. §314.94(a)(8)(iv) ("Labeling (including the container label, package insert, and, if applicable, Medication Guide) proposed for the drug product must be the same as the labeling approved for the reference listed drug ….").

ranitidine-containing products. Strides' reckless conduct therefore warrants an award of punitive damages.

## VIII.   CAUSES OF ACTION AGAINST BRAND PRESCRIPTION MANUFACTURER DEFENDANT

### A.   Causes of Action Against GSK

1302.   For the purposes of the subsequent causes of action against Defendant GSK, Plaintiffs are incorporating the following allegations by reference: paragraphs 9-13 (corporate information); 273-277 (jurisdiction and venue); 279-303 (development of brand Zantac); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469 (requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 822-844 (misrepresentations or omissions of material fact in labeling); and 475-483 (equitable tolling).

1303.   Plaintiffs identified in the table below bring claims against Defendant GSK on behalf of themselves and their respective State Classes under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| Plaintiff Name | State(s) of Residence |
|---|---|
| Andy Green Jr. | Arkansas, Tennessee |
| Golbenaz Bakhtiar | California |
| Jeffrey Pisano | Colorado |
| Kristen (POA for Alexander) Monger | Florida |

- 479 -

| | |
|---|---|
| Kristen (POA for Laura) Monger | Florida |
| Michael Tomlinson | Florida |
| Kathy Jeffries | Florida |
| Brian Nervig | Iowa |
| Alyson Humphrey | Indiana |
| Randy Jones | Louisiana |
| Ana Guzman | Massachusetts |
| Alberta Griffin | Maryland |
| Jerry Hunt | Michigan |
| Donald Northrup | Minnesota |
| Sandra Erickson-Brown | Minnesota |
| Shirley Magee | Minnesota |
| Dennis Robbins | North Carolina |
| Julie Turner | North Carolina |
| Lynn White | New Jersey |
| Benny Fazio | New York |
| Michael Galloway | Ohio, Florida |
| Ronda Lockett | Oklahoma; Missouri |
| Felicia Ball | Pennsylvania |
| Nicholas Hazlett | Pennsylvania, Maryland |
| Jeffery Gunwall | South Carolina |
| Lisa Lyle | Tennessee |
| Rodriquze Hampton Jr | Tennessee |
| Gregory Alan Wayland | Texas |
| Tammy Smith | Texas, Alaska, Colorado, Arizona, Louisiana, Missouri |
| Wendy Quezaire | Wisconsin |
| Dale Hunter | Tennessee |

### 1.   Causes of Action on Behalf of the Arizona-GSK Classes

### COUNT 2
### Violation of the Arizona Consumer Fraud Act
### (Ariz. Rev. Stat. Ann. §44-1521, *et esq.*)
### (Against GSK)

1304.   Arizona Class Representative Tammy Smith incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1305.   This cause of action is brought on behalf of the Arizona-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1306.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(6).

1307.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(5).

1308.   The Arizona Consumer Fraud Act ("Arizona CFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." Ariz. Rev. Stat. Ann. §44-1522(A).

1309.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Arizona CFA by recklessly, wantonly, knowingly, and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective,

unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1310.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arizona CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1311.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arizona CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1312.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Arizona CFA.

1313.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1314. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1315. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

1316. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

1317. Plaintiff and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

1318. Plaintiff and the Class members were aggrieved by Defendant's violations of the Arizona CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

1319.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

1320.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1321.   As a result of Defendant's violations of the Arizona CFA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

**COUNT 3**
**Unjust Enrichment**
**(Arizona Law)**
**(Against GSK)**

1322.   Arizona Class Representative Tammy Smith incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1323.   This cause of action is brought on behalf of the Arizona-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1324.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

1325.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members conferred a financial benefit on Defendant but did not receive their expected benefit therefrom.

1326.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and was knowingly enriched by its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1327.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

1328.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

1329.   Plaintiff and Class members do not have an adequate remedy at law.

## 2.    Causes of Action on Behalf of the Alaska-GSK Classes

### COUNT 4
### Violation of the Alaska Unfair Trade Practices and Consumer Protection Act
### (Alaska Stat. Ann. §45.50.471, *et esq.*)
### (Against GSK)

1330.    Alaska Class Representative Tammy Smith incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1331.    This cause of action is brought on behalf of the Alaska-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1332.    Plaintiff and the Class members are "consumer[s]" within the meaning of Alaska Stat. Ann. §45.50.561(a)(4).

1333.    The Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce."  Alaska Stat. Ann. §45.50.471(a).

1334.    The Alaska CPA makes unlawful specific acts, including:

(a)    "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Alaska Stat. Ann. §45.50.471(b)(4));

(b)    "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Alaska Stat. Ann. §45.50.471(b)(6));

(c)    "advertising goods or services with intent not to sell them as advertised" (Alaska Stat. Ann. §45.50.471(b)(8));

(d)    "engaging in any other conduct creating a likelihood of confusion or of misunderstanding and that misleads, deceives, or damages a buyer or a competitor in connection with the sale or advertisement of goods or services" (Alaska Stat. Ann. §45.50.471(b)(11)); and

(e)    "using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression,

- 486 -

or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived, or damaged" (Alaska Stat. Ann. §45.50.471(b)(12)).

1335.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Alaska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1336.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Alaska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1337.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Alaska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1338.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Alaska CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

1339.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1340.   Defendant's misrepresentations and omissions regarding the expiration of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1341.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

1342.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

1343.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Alaska CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

1344.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

1345.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1346.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiff in MDL 2924 sent a notice letter pursuant to Alaska Stat. Ann. §45.50.535(b)(1) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seek all damages and relief to which Plaintiff and the Class members are entitled.

1347.   As a result of Defendant's violations of the Alaska CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Alaska CPA.

**COUNT 5**
**Unjust Enrichment or Quasi-Contract**
**(Alaska Law)**
**(Against GSK)**

1348.   Alaska Class Representatives Tammy Smith incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1349.   This cause of action is brought on behalf of the Alaska-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1350.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

1351.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

1352.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1353.   It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

1354.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

1355.   Plaintiff and Class members do not have an adequate remedy at law.

### 3.   Causes of Action on Behalf of the Arkansas-GSK Classes

### COUNT 6
### Violation of the Arkansas Deceptive Trade Practices Act
### (Ark. Code Ann. §4-88-101, *et esq.*)
### (Against GSK)

1356.   Arkansas Class Representative Andy Green Jr. incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1357.   This cause of action is brought on behalf of the Arkansas-GSK Class (for the purpose of this section, "Class") against Brand Manufacturer Defendant GSK (for purposes of this Count only, "Defendant").

1358.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Ark. Code Ann. §4-88-102(5).

1359.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Ark. Code Ann. §4-88-102(4).

1360.   The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices."  Ark. Code Ann. §4-88-107(a).

1361.   The Arkansas DTPA makes unlawful specific acts, including:

(a)   "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" (Ark. Code Ann. §4-88-107(a)(1));

(b)   "[a]dvertising the goods or services with the intent not to sell them as advertised" (Ark. Code Ann. §4-88-107(a)(3)); and

(c)   "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" (Ark. Code Ann. §4-88-107(a)(10)).

1362.   The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission . . . ."  Ark. Code Ann. §4-88-108(a).

1363.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1364.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products

- 492 -

remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1365.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1366.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Arkansas DTPA, including:

> (a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;
>
> (c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and
>
> (d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

1367.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1368.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1369.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

1370.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

1371.   Plaintiff and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

1372.   Plaintiff and the Class members were aggrieved by Defendant's violations of Arkansas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

1373.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

1374.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1375.   As a result of Defendant's violations of the Arkansas DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

## COUNT 7
### Breach of Implied Warranty
### (Ark. Code Ann. §4-2-314)
### (Against GSK)

1376.  Arkansas Class Representative Andy Green Jr. incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1377.  This cause of action is brought on behalf of the Arkansas-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1378.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arkansas Class Representatives and members of the Arkansas Class and was in the business of selling such products.

1379.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

- 495 -

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1380.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1381.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

1382.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1383.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1384.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

1385.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

1386.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

1387.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 8**
**Unjust Enrichment**
**(Arkansas Law)**
**(Against GSK)**

1388.   Arkansas Class Representative Andy Green Jr. incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1389.   This cause of action is brought on behalf of the Arkansas-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1390.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

1391.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and,

thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

1392.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1393.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

1394.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

1395.   There is no valid, legal, and binding contract governing this dispute.

1396.   Plaintiff and Class members do not have an adequate remedy at law.

### 4. Causes of Action on Behalf of the California-GSK Classes

### COUNT 9
### Violation of the California Unfair Competition Law
### (Cal. Bus. & Prof. Code §17200, *et esq.*)
### (Against GSK)

1397.   California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1398.   This cause of action is brought on behalf of the California-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1399.   Defendant, Plaintiff, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

1400.   Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

1401.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1402.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products

remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1403. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1404. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL. These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

1405. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1406. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1407. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

1408.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

1409.   Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

1410.   Defendant's conduct also consitutes "unfair" business acts or practies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

1411.   Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, *see* Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

1412.   Plaintiff and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

1413.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

1414.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1415.   Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiff and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

<div align="center">

**COUNT 10**
**Violation of the California False Advertising Law**
**(Cal. Bus. & Prof. Code §17500, _et esq._)**
**(Against GSK)**

</div>

1416.   California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1417.   This cause of action is brought on behalf of the California-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1418.   Defendant, Plaintiff, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

1419.   The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code §17500.

1420.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including

<div align="center">- 503 -</div>

that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1421.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1422.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1423.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

      (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

      (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

      (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

1424.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1425.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1426.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

1427.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

1428.   Plaintiff and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

1429.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

1430.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1431.   As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiff and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

**COUNT 11**
**Violation of the California Consumers Legal Remedies Act**
**(Cal. Civ. Code §1750, *et esq.*)**
**(Against GSK)**

1432.   California Class Representatives Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1433.   This cause of action is brought on behalf of the California-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1434.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

1435.   Plaintiff and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

1436.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

1437.   The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code §1770(a).

1438.   The California CLRA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

(c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

(d)     "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

1439.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1440.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by

printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1441.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1442.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

1443.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1444.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1445.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

1446.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

1447.   Plaintiff and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

1448.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

1449.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1450.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by various Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiff in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seeks all damages and relief to which Plaintiff and the Class members are entitled.

1451.   Pursuant to Cal. Civ. Code §1780(a), Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b), Plaintiff seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity,

impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

**COUNT 12**
**Breach of Implied Warranty**
**(Cal. Com. Code §2314)**
**(Against GSK)**

1452.  California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1453.  This cause of action is brought on behalf of the California-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1454.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the California Class Representative and members of the California Class and was in the business of selling such products.

1455.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1456.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1457.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

1458.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1459.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1460.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

1461.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

1462.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

1463.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 13
## Unjust Enrichment or Quasi-Contract
### (California Law)
### (Against GSK)

1464.   California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1465.   This cause of action is brought on behalf of the California-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1466.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

1467.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

1468.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1469.  It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

1470.  Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

1471.  Plaintiff and Class members do not have an adequate remedy at law.

### 5.        Causes of Action on Behalf of the Colorado-GSK Classes

### COUNT 14
### Violation of the Colorado Consumer Protection Act
### (Colo. Rev. Stat. Ann. §6-1-101, *et esq.*)
### (Against GSK)

1472.  Colorado Class Representatives Jeffrey Pisano and Tammy Smith incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1473.  This cause of action is brought on behalf of the Colorado-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1474.  Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Colo. Rev. Stat. Ann. §6-1-102(6).

1475.  The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices "in the course of the person's business, vocation, or occupation."  Colo. Rev. Stat. Ann. §6-1-105(1).

1476.   The Colorado CPA makes unlawful specific acts, including:

(a)   "[e]ither knowingly or recklessly mak[ing] a false representation as to the source, sponsorship, approval, or certification of goods, services, or property" (Colo. Rev. Stat. Ann. §6-1-105(1)(b));

(b)   "[r]epresent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another" (Colo. Rev. Stat. Ann. §6-1-105(1)(g));

(c)   "[a]dvertis[ing] goods, services, or property with intent not to sell them as advertised" (Colo. Rev. Stat. Ann. §6-1-105(1)(i));

(d)   "[f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction" (Colo. Rev. Stat. Ann. §6-1-105(1)(u)); and

(e)   "[e]ither knowingly or recklessly engage[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice" (Colo. Rev. Stat. Ann. §6-1-105(1)(kkk)).

1477.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.  Such conduct was bad faith conduct under the Colorado CPA.

1478.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products

remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1479.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1480.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Colorado CPA, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; and

(e)   failing to disclose the defective Ranitidine-Containing Products in connection with their sale to the public.

1481.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

1482.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

1483.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

1484.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

1485.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

1486.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Colorado CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

1487.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

1488.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1489.   As a result of Defendant's violations of the Colorado CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

<div align="center">

**COUNT 15**
**Unjust Enrichment**
**(Colorado Law)**
**(Against GSK)**

</div>

1490.   Colorado Class Representatives Jeffrey Pisano and Tammy Smith incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1491.   This cause of action is brought on behalf of the Colorado-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1492.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

1493.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

1494.  Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1495.  It is unjust and inequitable for the Defendant to retain these benefits without commensurate compensation because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

1496.  Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

1497.   Plaintiffs and Class members do not have an adequate remedy at law.

**6.      Causes of Action on Behalf of the Florida-GSK Classes**

**COUNT 16**
**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**(Fla. Stat. Ann. §501.201, *et esq.*)**
**(Against GSK)**

1498.   Florida Class Representatives Kristen Monger as parent of A.M. and L.M., Michael Tomlinson, Michael Galloway, and Kathy Jeffries incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1499.   This cause of action is brought on behalf of the Florida-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1500.   The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. Ann. §501.204(1).

1501.   In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017."  Fla. Stat. Ann. §501.204(2).

1502.   Plaintiffs and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA.  *See* Fla. Stat. Ann. §501.203(6)-(7).

1503.   Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA.  *See* Fla. Stat. Ann. §501.203(8).

1504.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to

disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1505.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1506.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1507.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

1508.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

1509.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

1510.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

1511.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

1512.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

1513.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

1514.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1515.   As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

<div style="text-align:center">

**COUNT 17**
**Unjust Enrichment**
**(Florida Law)**
**(Against GSK)**

</div>

1516.   Florida Class Representatives Kristen Monger as parent of A.M. and L.M., Michael Tomlinson, Michael Galloway, and Kathy Jeffries incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1517.   This cause of action is brought on behalf of the Florida-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1518.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

1519.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe

and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members suffered an impoverishment because they purchased worthless medications and did not receive the expected benefit therefrom.

1520.   Defendant voluntarily accepted and retained these benefits from Plaintiffs and Class members and was knowingly enriched by its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1521.   It is unjust and inequitable for the Defendant to retain these benefits without paying the value thereof because the benefits were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

1522.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

1523.   There is no express written contract governing this dispute.

1524.   Plaintiffs and Class members do not have an adequate remedy at law.

7.      **Causes of Action on Behalf of the Indiana-GSK Classes**

**COUNT 18**
**Breach of Implied Warranty**
**(Ind. Code Ann. §26-1-2-314)**
**(Against GSK)**

1525.   Indiana Class Representative Alyson Humphrey incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1526.   This cause of action is brought on behalf of Indiana-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1527.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Indiana Class Representative and members of the Indiana Class and was in the business of selling such products.

1528.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1529.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1530.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

1531.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1532.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1533.   Plaintiff and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

1534.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

1535.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

1536.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 19
## Unjust Enrichment
## (Indiana Law)
## (Against GSK)

1537.   Indiana Class Representative Alyson Humphrey incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1538.   This cause of action is brought on behalf of the Indiana-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1539.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

1540.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

1541.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of

NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1542.  It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

1543.  Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

1544.  Plaintiff and Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

### 8.   Causes of Action on Behalf of the Iowa-GSK Classes

### COUNT 20
### Violation of the Iowa Private Right of Action for Consumer Frauds Act
#### (Iowa Code Ann. §714H.1, *et esq.*)
#### (Against GSK)

1545.  Iowa Class Representative Brian Nervig incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1546.  This cause of action is brought on behalf of the Iowa-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1547.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Iowa Code Ann. §714H.2(7).

1548.   Plaintiff and the Class members are "[c]onsumer[s]" within the meaning of Iowa Code Ann. §714H.2(3).

1549.   The Iowa Private Right of Action for Consumer Frauds Act ("Iowa PRACFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise."  Iowa Code Ann. §714H.3(1).

1550.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Iowa PRACFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1551.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Iowa PRACFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1552.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Iowa PRACFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1553.  Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Iowa PRACFA.

1554.  Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1555.  Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1556.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

1557.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

1558.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Iowa PRACFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

1559.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

1560.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

1561.   As a result of Defendants' violations of the Iowa PRACFA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Iowa PRACFA.

1562.   Additionally, because Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged

herein, were undertaken in willful and wanton disregard for the rights and safety of others, pursuant to Iowa Code Ann. §714H.5(4), Plaintiff and the Class members seek an additonal award of treble damages.

**COUNT 21**
**Breach of Implied Warranty**
**(Iowa Code §554.2314)**
**(Against GSK)**

1563.   Iowa Class Representative Brian Nervig incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1564.   This cause of action is brought on behalf of the Iowa-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1565.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Plaintiff and members of the Iowa Class and was in the business of selling such products.

1566.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1567.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1568.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

1569.   Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1570.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1571.   Plaintiff and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

1572.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

1573.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

1574.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 22**
**Unjust Enrichment**
**(Iowa Law)**
**(Against GSK)**

1575.   Iowa Class Representative Brian Nervig incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1576.   This cause of action is brought on behalf of the Iowa-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1577.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

1578.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

1579.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members'

expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1580.  It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

1581.  Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

1582.  Plaintiff and Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

### 9.    Causes of Action on Behalf of the Louisiana-GSK Classes

### COUNT 23
### Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law
### (La. Stat. Ann. §51:1401, *et esq.*)
### (Against GSK)

1583.  Louisiana Class Representatives Randy Jones and Tammy Smith incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1584.  This cause of action is brought on behalf of the Louisiana-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1585.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of La. Stat. Ann. §51:1402(8).

1586.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of La. Stat. Ann. §51:1402(1).

1587.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of La. Stat. Ann. §51:1402(10).

1588.   The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  La. Stat. Ann. §51:1405(A).

1589.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1590.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1591.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and

failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1592.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Louisiana CPL.

1593.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

1594.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

1595.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

1596.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

1597.  Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

1598.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the Louisiana CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

1599.  Specifically, Plaintiffs and the Class were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

1600.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1601.  As a result of Defendant's violations of the Louisiana CPL, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Louisiana CPL.

## COUNT 24
### Breach of Implied Warranty
### (La. Civ. Code Ann. Art. §2520)
### (Against GSK)

1602.   Louisiana Class Representatives Randy Jones and Tammy Smith incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1603.   This cause of action is brought on behalf of the Louisiana-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1604.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Louisiana Class Representatives and members of the Louisiana Class and was in the business of selling such products.

1605.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1606.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1607.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

1608.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1609.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1610.  Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

1611.  Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

1612.  Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

1613.  As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 25**
**Unjust Enrichment**
**(Louisiana Law)**
**(Against GSK)**

1614.   Louisiana Class Representatives Randy Jones and Tammy Smith incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1615.   This cause of action is brought on behalf of the Louisiana-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1616.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

1617.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

1618.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and was knowingly enriched by its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1619.   Defendant's enrichment – the monies obtained from Plaintiffs for the Ranitidine-Containing Products – was the result of Plaintiffs' impoverishment – the receipt by Plaintiffs of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

1620.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

1621.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

1622.   Plaintiffs and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 10.   Causes of Action on Behalf of the Maryland-GSK Classes

### COUNT 26
### Violation of the Maryland Consumer Protection Act
### (Md. Code Ann., Com. Law §13-101, *et esq.*)
### (Against GSK)

1623.   Maryland Class Representatives Alberta Griffin and Nicholas Hazlett incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1624.   This cause of action is brought on behalf of the Maryland-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1625.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Md. Code Ann., Com. Law §13-101(h).

1626.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Md. Code Ann., Com. Law §13-101(c)(1).

1627.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Md. Code Ann., Com. Law §13-101(f).

1628.   The Maryland Consumer Protection Act ("Maryland CPA") prohibits "[u]nfair, abusive, or deceptive trade practices."  Md. Code Ann., Com. Law §13-301.

1629.   The Maryland CPA makes unlawful specific acts, including:

    (a)   "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" (Md. Code Ann., Com. Law §13-301(1));

    (b)   "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have" (Md. Code Ann., Com. Law §13-301(2)(i));

    (c)   "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not" (Md. Code Ann., Com. Law §13-301(2)(iv));

    (d)   "[f]ailure to state a material fact if the failure deceives or tends to deceive" (Md. Code Ann., Com. Law §13-301(3));

    (e)   "[a]dvertis[ing] or offer[ing] of consumer goods, consumer realty, or consumer services . . . [w]ithout intent to sell, lease, or rent them as advertised or offered" (Md. Code Ann., Com. Law §13-301(5)(i)); and

    (f)   "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with . . . [t]he promotion or sale of any consumer goods" (Md. Code Ann., Com. Law §13-301(9)(i)).

1630.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting,

omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1631.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1632.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1633.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Maryland CPA, including:

   (a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

   (b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)     failing to disclose that the Ranitidine-Containing Products are defective and inherently dangerous in the course of the sale of the Ranitidine-Containing Products; and

(e)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

1634.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

1635.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

1636.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

1637.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

1638.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

1639.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Maryland CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

1640.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

1641.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1642.   As a result of Defendant's violations of the Maryland CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

**COUNT 27**
**Breach of Implied Warranty**
**(Md. Code Ann. §2-314)**
**(Against GSK)**

1643.  Maryland Class Representatives Alberta Griffin and Nicholas Hazlett incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1644.  This cause of action is brought on behalf of the Maryland-GSK Class (for the purpose of this section, "Class") against GSK(for purposes of this Count only, "Defendant").

1645.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Maryland Class Representatives and members of the Maryland Class and was in the business of selling such products.

1646.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1647.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1648.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

1649.  Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1650.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1651.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

1652.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

1653.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

1654.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 28**
**Unjust Enrichment**
**(Maryland Law)**
**(Against GSK)**

1655.   Maryland Class Representatives Alberta Griffin and Nicholas Hazlett incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1656.   This cause of action is brought on behalf of the Maryland-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1657.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

1658.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

1659.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1660.   It would be unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

1661.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

1662.   Plaintiffs and Class members do not have an adequate remedy at law.

## 11.   Causes of Action on Behalf of the Massachusetts-GSK Classes

### COUNT 29
### Violation of the Deceptive Acts or Practices Prohibited by Massachusetts Law
### (Mass. Gen. Laws Ann. ch. 93a, §1, *et esq.*)
### (Against GSK)

1663.   Massachusetts Class Representative Ana Guzman incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1664.   This cause of action is brought on behalf of the Massachusetts-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1665.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(a).

1666.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(b).

1667.  The Massachusetts consumer protection law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws Ann. ch. 93A, §2(a).

1668.  In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1669.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1670.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1671.  Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive business practices prohibited by the Massachusetts Act.

1672.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1673.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1674.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

1675.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

1676.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Massachusetts Act because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

1677.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

1678.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1679.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Mass. Gen. Laws Ann. ch. 93A, §9(3) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seek all damages and relief to which Plaintiff and the Class members are entitled.

1680.   As a result of Defendant's violations of the Massachusetts Act, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Massachusetts Act.

**COUNT 30**
**Breach of Implied Warranty**
**(Mass. Gen. Laws ch. 106 §2-314)**
**(Against GSK)**

1681.   Massachusetts Class Representative Ana Guzman incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1682.   This cause of action is brought on behalf of the Massachusetts-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1683.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Massachusetts Class Representatives and members of the Massachusetts Class and was in the business of selling such products.

1684.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1685.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1686.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

1687.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1688.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1689.   Plaintiff and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

1690.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

1691.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

1692.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 31**
**Unjust Enrichment**
**(Massachusetts Law)**
**(Against GSK)**

1693.   Massachusetts Class Representative Ana Guzman incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1694.   This cause of action is brought on behalf of the Massachusetts-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1695.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

1696.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

1697.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and was knowingly enriched from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1698. Defendant's enrichment – the monies obtained from Plaintiff's and Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiff's and Class members' impoverishment – *i.e.*, Plaintiff's and Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

1699. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

1700. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

1701. Plaintiff and Class members do not have an adequate remedy at law.

### 12. Causes of Action on Behalf of the Michigan-GSK Classes

### COUNT 32
### Violation of the Michigan Consumer Protection Act
### (Mich. Comp. Laws Ann. §445.901, *et esq.*)
### (Against GSK)

1702. Michigan Class Representative Jerry Hunt incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1703. This cause of action is brought on behalf of the Michigan-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1704.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(d).

1705.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(g).

1706.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws Ann. §445.903(1).

1707.   The Michigan CPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Mich. Comp. Laws Ann. §445.903(1)(c));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Mich. Comp. Laws Ann. §445.903(1)(e)); and

(c)     "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented" (Mich. Comp. Laws Ann. §445.903(1)(g)).

1708.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1709.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products

- 558 -

remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1710.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1711.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Michigan CPA, including:

>    (a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
>    (b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;
>
>    (c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and
>
>    (d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

1712.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1713.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1714.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

1715.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

1716.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Michigan CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

1717.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

1718.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1719.   As a result of Defendant's violations of the Michigan CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Michigan CPA.

**COUNT 33**
**Unjust Enrichment**
**(Michigan Law)**
**(Against GSK)**

1720.   Michigan Class Representative Jerry Hunt incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1721.   This cause of action is brought on behalf of the Michigan-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1722.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

1723.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly,

Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

1724. Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1725. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

1726. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

1727. There is no express contract governing this dispute.

1728. Plaintiffs and Class members do not have an adequate remedy at law.

13.    **Causes of Action on Behalf of the Minnesota-GSK Classes**

**COUNT 34**
**Violation of the Minnesota Prevention of Consumer Fraud Act**
**(Minn. Stat. Ann. §325F.68, *et esq.*)**
**(Against GSK)**

1729.   Minnesota Class Representatives Donald Northrup and Sandra Erickson-Brown incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1730.   This cause of action is brought on behalf of the Minnesota-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1731.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

1732.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

1733.   The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged." Minn. Stat. Ann. §325F.69(1). Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

1734.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting,

omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1735.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1736.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1737.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

1738.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

1739.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

1740.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

1741.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

1742.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

1743.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

1744.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

1745.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1746.   As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

**COUNT 35**
**Breach of Implied Warranty**
**(Minn. Stat. Ann. §336.2-314)**
**(Against GSK)**

1747.   Minnesota Class Representatives Donald Northrup and Sandra Erickson-Brown incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1748.   This cause of action is brought on behalf of the Minnesota-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1749.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

1750.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1751.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1752.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

1753.  Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1754.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1755.  Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

1756.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

1757.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

1758.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### COUNT 36
### Unjust Enrichment
### (Minnesota Law)
### (Against GSK)

1759.   Minnesota Class Representatives Donald Northrup and Sandra Erickson-Brown incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1760.   This cause of action is brought on behalf of the Minnesota-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1761.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

1762.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

1763.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1764.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

1765.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

1766.   Plaintiffs and Class members do not have an adequate remedy at law.

**14.   Causes of Action on Behalf of the Mississippi-GSK Classes**

**COUNT 37**
**Breach of Implied Warranty**
**(Miss. Code Ann. §75-2-314)**
**(Against GSK)**

1767.   Mississippi Class Representative Shirley Magee incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1768.   This cause of action is brought on behalf of the Mississippi-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1769.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Mississippi Class Representatives and members of the Mississippi Class and was in the business of selling such products.

1770.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1771.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1772.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

1773.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1774.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1775.   Plaintiff and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

1776.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

1777.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

1778.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 38**
**Unjust Enrichment**
**(Mississippi Law)**
**(Against GSK)**

1779. Mississippi Class Representative Shirley Magee incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1780. This cause of action is brought on behalf of the Mississippi-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1781. Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

1782. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

1783. Defendant readily accepted and retained these benefits from Plaintiff and Class members and was knowingly enriched by its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1784.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

1785.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

1786.   There is no express contract governing this dispute.

1787.   Plaintiff and Class members do not have an adequate remedy at law.

### 15.   Causes of Action on Behalf of the Missouri-GSK Classes

### COUNT 39
### Violation of the Missouri Merchandising Practices Act
### (Mo. Ann. Stat. §407.010, *et esq.*)
### (Against GSK)

1788.   Missouri Class Representatives Ronda Lockett and Tammy Smith incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1789.   This cause of action is brought on behalf of the Missouri-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1790.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mo. Ann. Stat. §407.010(5).

1791.   Defendant was and is engaged in "[t]rade or commerce" within the meaning of Mo. Ann. Stat. §407.010(7).

1792.   The Missouri Merchandising Practices Act ("Missouri MPA") prohibits "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce."  Mo. Ann. Stat. §407.020(1).

1793.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1794.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1795.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1796.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Missouri MPA.

1797.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

1798.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

1799.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

1800.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

1801.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Missouri MPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

1802.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

1803.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

1804.   As a result of Defendant's violations of the Missouri MPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Missouri MPA.

**COUNT 40**
**Breach of Implied Warranty**
**(Mo. Rev. Stat. §400.2-314)**
**(Against GSK)**

1805.   Missouri Class Representatives Ronda Lockett and Tammy Smith incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1806.   This cause of action is brought on behalf of the Missouri-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1807.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Missouri Class Representatives and members of the Missouri Class and was in the business of selling such products.

1808.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1809.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1810.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

1811.  Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1812.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1813.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

1814.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

1815.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

1816.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div style="text-align:center">

**COUNT 41**
**Unjust Enrichment**
**(Missouri Law)**
**(Against GSK)**

</div>

1817.   Missouri Class Representatives Ronda Lockett and Tammy Smith incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1818.   This cause of action is brought on behalf of the Missouri-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1819. Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

1820. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

1821. Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1822. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

1823.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

1824.   There is no express contract governing this dispute.

1825.   Plaintiffs and Class members do not have an adequate remedy at law.

**16.      Causes of Action on Behalf of the New Jersey-GSK Classes**

**COUNT 42**
**Violation of the New Jersey Consumer Fraud Act**
**(N.J. Stat. Ann. §56:8-1, *et esq.*)**
**(Against GSK)**

1826.   New Jersey Class Representative Lynn White incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1827.   This cause of action is brought on behalf of the New Jersey-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1828.   Defendant, Plaintiff, and the Class members are "person[s]" within the meaning of N.J. Stat. Ann. §56:8-1(d).

1829.   The Ranitidine-Containing Products are "merchandise" within the meaning of N.J. Stat. Ann. §56:8-1(c).

1830.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Jersey Consumer Fraud Act ("New Jersey CFA") by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose,

contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.  N.J. Stat. Ann. §56:8-1, *et esq.*

1831.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Jersey CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1832.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Jersey CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1833.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Jersey CFA.

1834.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1835.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1836.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

1837.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

1838.   Plaintiff and the Class members were aggrieved by Defendant's violations of the New Jersey CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

1839.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

1840.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1841.   As a result of Defendant's violations of the New Jersey CFA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Jersey CFA.

<div align="center">

**COUNT 43**
**Breach of Implied Warranty**
**(N.J. Stat. Ann. §12A:2-314)**
**(Against GSK)**

</div>

1842.  New Jersey Class Representative Lynn White incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1843.   This cause of action is brought on behalf of the New Jersey-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1844.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Jersey Class Representatives and members of the New Jersey Class and was in the business of selling such products.

1845.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

<div align="center">

- 583 -

</div>

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1846.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1847.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

1848.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1849.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1850.   Plaintiff and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

1851.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

1852.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

1853.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 44**
**Unjust Enrichment**
**(New Jersey Law)**
**(Against GSK)**

</div>

1854.   New Jersey Class Representative Lynn White incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1855.   This cause of action is brought on behalf of the New Jersey-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1856.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

1857.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and,

thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

1858.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1859.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

1860.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

1861.   Plaintiff and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 17.    Causes of Action on Behalf of the New York-GSK Classes

**COUNT 45**
**Violation of New York Deceptive Acts and Practices Act**
**(N.Y. Gen. Bus. Law §349)**
**(Against GSK)**

1862.   New York Class Representative Benny Fazio incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1863.   This cause of action is brought on behalf of the New York-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1864.   Plaintiff and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

1865.   The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §349(a).

1866.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1867.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by

printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1868.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1869.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

1870.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1871.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1872.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the

inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

1873.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

1874.   Plaintiff and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

1875.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

1876.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1877.   As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

## COUNT 46
### Violation of the New York False Advertising Act
### (N.Y. Gen. Bus. Law §350)
### (Against GSK)

1878.   New York Class Representative Benny Fazio incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1879.   This cause of action is brought on behalf of the New York-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1880.   Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

1881.   The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §350.  False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

1882.   Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiff and the Class members.

1883.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1884.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1885.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1886.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

1887. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1888. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1889. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

1890. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

1891. Plaintiff and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

1892.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

1893.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1894.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seek all damages and relief to which Plaintiff and the Class members are entitled.

1895.   As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

**COUNT 47**
**Breach of Implied Warranty**
**(N.Y. U.C.C. Law §2-314)**
**(Against GSK)**

1896.  New York   Class Representative Benny Fazio incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1897.  This cause of action is brought on behalf of the New York-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1898.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representative and members of the New York Class and was in the business of selling such products.

1899.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1900.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1901.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

1902.  Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1903.  Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1904.  Plaintiff and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

1905.  Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

1906.  Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

1907.  As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 48**
**Unjust Enrichment**
**(New York Law)**
**(Against GSK)**

1908. New York Class Representative Benny Fazio incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1909. This cause of action is brought on behalf of the New York-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1910. Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

1911. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

1912. Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1913.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

1914.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

1915.   Plaintiff and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

1916.   Causes of Action Brought on Behalf of the North Carolina Class

<div align="center">

**COUNT 49**
**Violation of the North Carolina Unfair and Deceptive Trade Practices Act**
**(N.C. Gen. Stat. Ann. §75-1.1, *et esq.*)**
**(Against GSK)**

</div>

1917.   North Carolina Class Representatives Dennis Robbins and Julie Turner incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1918.   This cause of action is brought on behalf of the North Carolina-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1919.   Defendant was and is engaged in "commerce" within the meaning of N.C. Gen. Stat. Ann. §75-1.1(b).

1920.   The North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or

deceptive acts or practices in or affecting commerce," N.C. Gen. Stat. Ann. §75-1.1(a), and provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the law.  N.C. Gen. Stat. Ann. §75-16.

1921.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1922.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1923.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1924.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the North Carolina UDTPA.

1925.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

1926.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

1927.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

1928.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

1929.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the North Carolina UDTPA because they suffered ascertainable loss and actual damages as a direct

and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

1930.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

1931.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1932.   As a result of Defendant's violations of the North Carolina UDTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the North Carolina UDTPA.

<div align="center">

**COUNT 50**
**Breach of Implied Warranty**
**(N.C. Gen. Stat. Ann. §25-2-314)**
**(Against GSK)**

</div>

1933.   North Carolina Class Representatives Dennis Robbins and Julie Turner incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1934.   This cause of action is brought on behalf of the North Carolina-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1935.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to North Carolina Class Representatives and members of the North Carolina Class and was in the business of selling such products.

1936.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1937.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1938.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

1939.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1940.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1941.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

1942.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

1943.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

1944.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### COUNT 51
### Unjust Enrichment
### (North Carolina Law)
### (Against GSK)

1945.   North Carolina Class Representatives Dennis Robbins and Julie Turner incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1946.   This cause of action is brought on behalf of the North Carolina-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1947.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

1948.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

1949.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1950.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

1951.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

1952.   Plaintiff and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 18.   Causes of Action on Behalf of the Ohio-GSK Classes

**COUNT 52**
**Breach of Implied Warranty**
**(Ohio Rev. Code Ann. §1302.27)**
**(Against GSK)**

1953.   Ohio Class Representative Michael Galloway incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1954.   This cause of action is brought on behalf of the Ohio-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1955.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Ohio Class Representative and members of the Ohio Class and was in the business of selling such products.

1956.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warranting on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1957.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1958.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

1959.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1960.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1961.   Plaintiff and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

1962.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

1963.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

1964.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 53**
**Unjust Enrichment**
**(Ohio Law)**
**(Against GSK)**

</div>

1965.   Ohio Class Representative Michael Galloway incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1966.   This cause of action is brought on behalf of the Ohio-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1967.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

1968.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly,

Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

1969. Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1970. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

1971. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

1972. Plaintiffs and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

19.     **Causes of Action on Behalf of the Oklahoma-GSK Classes**

**COUNT 54**
**Violation of the Oklahoma Consumer Protection Act**
**(Okla. Stat. tit. 15, §751, *et esq.*)**
**(Against GSK)**

1973.   Oklahoma Class Representative Ronda Lockett incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1974.   This cause of action is brought on behalf of the Oklahoma-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1975.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Okla. Stat. tit. 15, §752(1).

1976.   Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Okla. Stat. tit. 15, §752(2).

1977.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Okla. Stat. tit. 15, §752(7).

1978.   The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits numerous unlawful acts, including misleading representations, false advertisements, and false statements. Okla. Stat. tit. 15, §753.   The Oklahoma CPA defines "[d]eceptive trade practice" as "a misrepresentation, omission or other practice that has deceived or . . . mislead a person to the detriment of that person."  Okla. Stat. tit. 15, §752(13).  The Oklahoma CPA defines "[u]nfair trade practice" as "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."  Okla. Stat. tit. 15, §752(14).

1979.   The Oklahoma CPA makes unlawful specific acts, including:

(a)  "[m]ak[ing] a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction" (Okla. Stat. tit. 15, §753(5));

(b)  "[r]epresent[ing], knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another" (Okla. Stat. tit. 15, §753(7));

(c)  "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised" (Okla. Stat. tit. 15, §753(8)); and

(d)  "[c]ommit[ing] an unfair or deceptive trade practice as defined in Section 752" (Okla. Stat. tit. 15, §753(20)).

1980.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1981.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

1982.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably

- 609 -

dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

1983.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Oklahoma CPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

1984.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1985.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

1986.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii)

the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

1987.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

1988.   Plaintiff and the Class members were aggrieved by Defendant's violations of Oklahoma CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

1989.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

1990.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1991.   As a result of Defendant's violations of the Oklahoma CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Oklahoma CPA.

**COUNT 55**
**Breach of Implied Warranty**
**(Okla. Stat. tit. 12A §2-314)**
**(Against GSK)**

1992.  Oklahoma Class Representatives Ronda Lockett incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

1993.  This cause of action is brought on behalf of the Oklahoma-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

1994.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Oklahoma Class Representative and members of the Oklahoma Class and was in the business of selling such products.

1995.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1996.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1997.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

1998.  Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

1999.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2000.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

2001.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

2002.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.   Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

2003.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 56**
**Unjust Enrichment**
**(Oklahoma Law)**
**(Against GSK)**

2004.  Oklahoma Class Representative Ronda Lockett incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

2005.  This cause of action is brought on behalf of the Oklahoma-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

2006.  Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2007.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2008.  Defendant readily accepted and retained these benefits from Plaintiff and Class members and was knowingly enriched by its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2009.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2010.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2011.   Plaintiffs and Class members do not have an adequate remedy at law.

## 20.     Causes of Action on Behalf of the Pennsylvania-GSK Classes

### COUNT 57
### Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law
### (73 Pa. C.S. §201-1, *et esq.*)
### (Against GSK)

2012.   Pennsylvania Class Representatives Felicia Ball and Nicholas Hazlett incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

2013.   This cause of action is brought on behalf of the Pennsylvania-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

2014.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of 73 Pa. C.S. §201-2(2).

2015.   Plaintiff and the Class members purchased the Ranitidine-Containing Products "primarily for personal, family or household purposes" within the meaning of 73 Pa. C.S. §201-9.2(a).

2016.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of 73 Pa. C.S. §201-2(3).

2017.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  73 Pa. C.S. §201-3.

2018.   The Pennsylvania CPL makes unlawful specific acts, including:

     (a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (73 Pa. C.S. §201-2(4)(v));

     (b)    "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (73 Pa. C.S. §201-2(4)(vii));

     (c)    "[a]dvertising goods or services with intent not to sell them as advertised" (73 Pa. C.S. §201-2(4)(ix)); and

     (d)    "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" (73 Pa. C.S. §201-2(4)(xxi)).

2019.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2020.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2021.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2022.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Pennsylvania CPL, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)   engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

2023.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2024.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2025.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2026.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2027.  Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

2028.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Pennsylvania CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2029.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2030.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2031.   As a result of Defendant's violations of the Pennsylvania CPL, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Pennsylvania CPL.

**COUNT 58**
**Breach of Implied Warranty**
**(13 Pa. Cons. Stat. §2314)**
**(Against GSK)**

2032.   Pennsylvania Class Representatives Felicia Ball and Nicholas Hazlett incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

2033.   This cause of action is brought on behalf of the Pennsylvania-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

2034.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Pennsylvania Class Representatives and members of the Pennsylvania Class and was in the business of selling such products.

2035.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2036.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2037.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

2038.  Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2039.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2040.  Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

2041.  Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

2042.  Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

2043.  As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 59**
**Unjust Enrichment**
**(Pennsylvania Law)**
**(Against GSK)**

2044.  Pennsylvania Class Representatives Felicia Ball and Nicholas Hazlett incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

2045.   This cause of action is brought on behalf of the Pennsylvania-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

2046.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2047.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2048.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2049.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the

Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2050.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2051.   There is no express contract governing this dispute.

2052.   Plaintiffs and Class members do not have an adequate remedy at law.

### 21.   Causes of Action on Behalf of the South Carolina-GSK Classes

### COUNT 60
### Violation of the South Carolina Unfair Trade Practices Act
### (S.C. Code Ann. §39-5-10, *et esq.*)
### (Against GSK)

2053.   South Carolina Class Representative Jeffery Gunwall incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

2054.   This cause of action is brought on behalf of the South Carolina-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

2055.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of S.C. Code Ann. §39-5-10(a).

2056.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of S.C. Code Ann. §39-5-10(b).

2057.   The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."   S.C. Code Ann. §39-5-20(a).

2058.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2059.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2060.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2061.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the South Carolina UTPA.

2062.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2063.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2064.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2065.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2066.   Plaintiff and the Class members were aggrieved by Defendant's violations of the South Carolina UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2067.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2068.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2069.   As a result of Defendant's violations of the South Carolina UTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the South Carolina UTPA.

## COUNT 61
### Breach of Implied Warranty
### (S.C. Code Ann. §36-2-314)
### (Against GSK)

2070.   South Carolina Class Representative Jeffrey Gunwall incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

2071.   This cause of action is brought on behalf of the South Carolina-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

2072.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the South Carolina Class Representative and members of the South Carolina Class and was in the business of selling such products.

2073. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2074. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2075. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

2076. Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2077. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2078. Plaintiff and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

2079.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

2080.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

2081.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 62**
**Unjust Enrichment**
**(South Carolina Law)**
**(Against GSK)**

2082.   South Carolina Class Representative Jeffrey Gunwall incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

2083.   This cause of action is brought on behalf of the South Carolina-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

2084.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2085.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products,

which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2086.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly realized a benefit from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2087.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2088.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2089.   Plaintiff and Class members do not have an adequate remedy at law.

### 22. Causes of Action on Behalf of the Tennessee-GSK Classes

### COUNT 63
### Violation of the Tennessee Consumer Protection Act of 1977
### (Tenn. Code Ann. §47-18-101, *et esq.*)
### (Against GSK)

2090.   Tennessee Class Representatives Lisa Lyle, Rodriquze Hampton Jr., Dale Hunter, and Andy Green Jr. incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

2091.   This cause of action is brought on behalf of the Tennessee-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

2092.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tenn. Code Ann. §47-18-103(14).

2093.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tenn. Code Ann. §47-18-103(3).

2094.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Tenn. Code Ann. §47-18-103(8).

2095.   Defendant was and is engaged in "[t]rade" or "commerce" or "consumer transaction[s]" within the meaning of Tenn. Code Ann. §47-18-103(20).

2096.   The Tennessee Consumer Protection Act of 1977 ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce."  Tenn. Code Ann. §47-18-104(a).

2097.   The Tennessee CPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tenn. Code Ann. §47-18-104(b)(5));

(b) "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (Tenn. Code Ann. §47-18-104(b)(7)); and

(c) "[a]dvertising goods or services with intent not to sell them as advertised" (Tenn. Code Ann. §47-18-104(b)(9)).

2098.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2099.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2100.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2101.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Tennessee CPA, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

2102.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2103.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2104.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2105.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2106.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Tennessee CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2107.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2108.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2109.   As a result of Defendant's violations of the Tennessee CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Tennessee CPA.

## COUNT 64
### Breach of Implied Warranty
### (Tenn. Code Ann. §47-2-314)
### (Against GSK)

2110.   Tennessee Class Representatives Lisa Lyle, Rodriuze Hampton Jr., Dale Hunter, and Andy Green Jr. incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

2111.   This cause of action is brought on behalf of the Tennessee-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

2112.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Tennessee Class Representatives and members of the Tennessee Class and was in the business of selling such products.

2113.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2114.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2115.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

2116.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2117.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2118.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

2119.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

2120.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

2121.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 65**
**Unjust Enrichment**
**(Tennessee Law)**
**(Against GSK)**

2122.   Tennessee Class Representatives Lisa Lyle, Rodriquze Hampton Jr., Dale Hunter, and Andy Green Jr. incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

2123.   This cause of action is brought on behalf of the Tennessee-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

2124.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2125.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2126.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2127.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2128.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2129.   There is no existing, enforceable contract governing this dispute.

2130.   Plaintiffs and Class members do not have an adequate remedy at law.

### 23.   Causes of Action on Behalf of the Texas-GSK Classes

### COUNT 66
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
### (Tex. Bus. & Com. Code Ann. §17.41, *et esq.*)
### (Against GSK)

2131.   Texas Class Representatives Gregory Alan Wayland and Tammy Smith incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

2132.   This cause of action is brought on behalf of the Texas-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

2133.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

2134.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

2135.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

2136.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

2137.   The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

2138.   The Texas DTPA makes unlawful specific acts, including:

(a)   "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

(b)   "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

(c)   "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

2139.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably

dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2140.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2141.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2142.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

2143.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2144.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2145.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2146.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2147.  Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

2148.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2149.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2150.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2151.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiff and the Class members are entitled.

2152.   As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

## COUNT 67
### Breach of Implied Warranty
### (Tex. Bus. & Com. Code Ann. §2-314)
### (Against GSK)

2153.  Texas Class Representatives Gregory Alan Wayland and   Tammy Smith incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

2154.  This cause of action is brought on behalf of the Texas-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

2155.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

2156.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2157.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2158.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

2159.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2160.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2161.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

2162.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

2163.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

2164.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 68
### Unjust Enrichment
### (Texas Law)
### (Against GSK)

2165.   Texas Class Representatives Gregory Alan Wayland and   Tammy Smith incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

2166.   This cause of action is brought on behalf of the Texas-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

2167.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2168.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2169.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of

NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and
that included expiration dates on the products' labels that exceeded the time period during which
the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of
NDMA as time passed.

2170.  It is unjust and unconscionable for the Defendant to retain these wrongly secured
benefits because they were attained by misrepresenting and fraudulently concealing the true facts
concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not
have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2171.  Equity cannot in good conscience permit Defendant to retain the benefits derived
from Plaintiffs and Class members through its unjust and unlawful acts without paying for said
benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is
required.

2172.  Plaintiffs and Class members do not have an adequate remedy at law, nor is there
an express contract governing this dispute.

### 24.    Causes of Action on Behalf of the Wisconsin-GSK Classes

### COUNT 69
### Violation of the Wisconsin Deceptive Trade Practices Act
### (Wis. Stat. Ann. §100.18, *et esq.*)
### (Against GSK)

2173.  Wisconsin Class Representative Wendy Quezaire incorporates the preceding
allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-
844 as though fully set forth herein.

2174.  This cause of action is brought on behalf of the Wisconsin-GSK Class (for the
purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

2175.   Defendant is a "person, firm, corporation or association" within the meaning of Wis. Stat. Ann. §100.18(1).

2176.   Plaintiff and the Class members are members of "the public" within the meaning of Wis. Stat. Ann. §100.18(1).

2177.   The Ranitidine-Containing Products are "merchandise" within the meaning of Wis. Stat. Ann. §100.18(1).

2178.   The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits any "assertion, representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. Ann. §100.18(1).

2179.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Wisconsin DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2180.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Wisconsin DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2181.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Wisconsin DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and

failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2182.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Wisconsin DTPA.

2183.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2184.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2185.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2186.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2187. Plaintiff and the Class members were aggrieved by Defendant's violations of the Wisconsin DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2188. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2189. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

2190. As a result of Defendant's violations of the Wisconsin DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Wisconsin DTPA.

## COUNT 70
## Breach of Implied Warranty
## (Wis. Stat. Ann. §402.314)
## (Against GSK)

2191.   Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

2192.   This cause of action is brought on behalf of the Wisconsin-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

2193.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Wisconsin Class Representative and members of the Wisconsin Class and was in the business of selling such products.

2194.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2195.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2196.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

2197.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2198.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2199.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

2200.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

2201.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

2202.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 71**
**Unjust Enrichment**
**(Wisconsin Law)**
**(Against GSK)**

2203.   Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 822-844 as though fully set forth herein.

2204.   This cause of action is brought on behalf of the Wisconsin-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

2205.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2206.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2207.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2208. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2209. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2210. There is no express contract governing this dispute.

2211. Plaintiff and Class members do not have an adequate remedy at law.

## IX. CAUSES OF ACTION AGAINST BRAND OTC MANUFACTURER DEFENDANTS

### A. Causes of Actions Against GSK

2212. For the purposes of the subsequent causes of action against Defendant GSK, Plaintiffs are incorporating the following allegations by reference: paragraphs 9-13 (corporate information); 273-277 (jurisdiction and venue); 279-303 (development of brand Zantac); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469 (requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good

Manufacturing Practices); 868-894 (misrepresentations or omissions of material fact in labeling); 895-911 (misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

2213.   Plaintiff identified in the table below bring claims against Defendant GSK with respect to OTC Zantac on behalf of themselves and their respective State Classes under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| **Plaintiff Name** | **State(s) of Residence** |
|---|---|
| Andy Green Jr. | Arkansas |
| Richard Obrien | California |
| Jeffrey Pisano | Colorado |
| Ricardo Moròn | Florida |
| Michael Galloway | Florida |
| Charles Longfield | Maryland; Wyoming |
| Randy Jones | Louisiana |
| Jerry Hunt | Michigan |
| Lakisha Wilson | Michigan |
| Ronda Lockett | Missouri |
| Tammy Smith | Missouri, Louisiana, Texas |
| Dennis Robbins | North Carolina |
| Gaylord Stauffer | Nebraska |
| Jonathan Ferguson | Oregon, Nevada |
| Gloria Colon | Puerto Rico |
| Ronald Ragis | Vermont; Florida |
| Earlene Green | Washington |

1.     **Causes of Action on Behalf of the Arkansas-GSK Classes**

**COUNT 72**
**Violation of the Arkansas Deceptive Trade Practices Act**
**(Ark. Code Ann. §4-88-101, *et seq.*)**
**(Against GSK)**

2214.   Arkansas Class Representative Andy Green Jr. incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2215.   This cause of action is brought on behalf of the Arkansas-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2216.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Ark. Code Ann. §4-88-102(5).

2217.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Ark. Code Ann. §4-88-102(4).

2218.   The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices."  Ark. Code Ann. §4-88-107(a).

2219.   The Arkansas DTPA makes unlawful specific acts, including:

(a)     "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" (Ark. Code Ann. §4-88-107(a)(1));

(b)     "[a]dvertising the goods or services with the intent not to sell them as advertised" (Ark. Code Ann. §4-88-107(a)(3)); and

(c)     "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" (Ark. Code Ann. §4-88-107(a)(10)).

2220.   The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission . . . ." Ark. Code Ann. §4-88-108(a).

2221.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2222.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2223.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2224.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Arkansas DTPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

2225.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2226.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2227.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2228.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members,

about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2229.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2230.   Plaintiff and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

2231.   Plaintiff and the Class members were aggrieved by Defendant's violations of Arkansas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2232.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2233.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2234.   As a result of Defendant's violations of the Arkansas DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

**COUNT 73**
**Breach of Implied Warranty**
**(Ark. Code Ann. §4-2-314)**
**(Against GSK)**

2235.   Arkansas Class Representative Andy Green Jr. incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2236.   This cause of action is brought on behalf of the Arkansas-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2237.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arkansas Class Representatives and members of the Arkansas Class and was in the business of selling such products.

2238.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warranting on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2239.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2240.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

2241.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2242.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2243.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

2244.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

2245.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

2246.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### COUNT 74
### Unjust Enrichment
### (Arkansas Law)
### (Against GSK)

2247.   Arkansas Class Representative Andy Green Jr. incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2248.   This cause of action is brought on behalf of the Arkansas-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2249.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2250.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly,

Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2251.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2252.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2253.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2254.   There is no valid, legal, and binding contract governing this dispute.

2255.   Plaintiff and Class members do not have an adequate remedy at law.

**2.    Causes of Action on Behalf of the California-GSK Classes**

### COUNT 75
### Violation of the California Unfair Competition Law
### (Cal. Bus. & Prof. Code §17200, *et seq.*)
### (Against GSK)

2256.   California Class Representative Richard O'Brien incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2257.   This cause of action is brought on behalf of the California-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2258.   Defendant, Plaintiff, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

2259.   Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

2260.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2261.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by

printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2262.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2263.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL.  These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

2264.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2265.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2266.  Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of

Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2267.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2268.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2269.   Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies

Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

2270.   Defendant's conduct also consitutes "unfair" business acts or practies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

2271.   Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, *see* Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

2272.   Plaintiff and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2273.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2274.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2275.   Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiff and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

**COUNT 76**
**Violation of the California False Advertising Law**
**(Cal. Bus. & Prof. Code §17500, *et seq.*)**
**(Against GSK)**

2276.   California Class Representatives Richard O'Brien incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2277.   This cause of action is brought on behalf of the California-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2278.   Defendant, Plaintiff, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

2279.   The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this

state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code §17500.

2280.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2281.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2282.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2283.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

> (a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;
>
> (c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and
>
> (d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

2284.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2285.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2286.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2287.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the

inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2288.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2289.   Plaintiff and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2290.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2291.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2292.   As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiff and the Class members seek an order providing restitution and disgorgement of all profits

relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

**COUNT 77**
**Violation of the California Consumers Legal Remedies Act**
**(Cal. Civ. Code §1750, *et seq.*)**
**(Against GSK)**

2293.  California Class Representatives Richard O'Brien incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2294.  This cause of action is brought on behalf of the California-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2295.  Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

2296.  Plaintiff and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

2297.  The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

2298.  The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code §1770(a).

2299.  The California CLRA makes unlawful specific acts, including:

  (a)  "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

(c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

(d)     "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

2300.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2301.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2302.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2303.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

> (a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;
>
> (c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and
>
> (d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

2304.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2305.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2306.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2307.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the

inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2308.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2309.   Plaintiff and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

2310.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2311.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2312.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual

notice letters sent by various Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiff and the Class members are entitled.

2313.   Pursuant to Cal. Civ. Code §1780(a), Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

**COUNT 78**
**Breach of Implied Warranty**
**(Cal. Com. Code §2314)**
**(Against GSK)**

2314.  California Class Representatives Richard O'Brien incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2315.   This cause of action is brought on behalf of the California-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2316.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the California Class Representatives and members of the California Class and was in the business of selling such products.

2317.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2318.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2319.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

2320.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2321. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2322. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

2323. Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

2324. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

2325. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 79**
**Unjust Enrichment or Quasi-Contract**
**(California Law)**
**(Against GSK)**

2326. California Class Representatives Richard O'Brien incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2327.   This cause of action is brought on behalf of the California-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2328.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2329.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2330.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2331.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the

Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2332.  Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2333.  Plaintiff and Class members do not have an adequate remedy at law.

### 3.     Causes of Action on Behalf of the Colorado-GSK Classes

### COUNT 80
### Violation of the Colorado Consumer Protection Act
### (Colo. Rev. Stat. Ann. §6-1-101, *et seq.*)
### (Against GSK)

2334.  Colorado Class Representative Jeffrey Pisano incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2335.  This cause of action is brought on behalf of the Colorado -GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2336.  Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Colo. Rev. Stat. Ann. §6-1-102(6).

2337.  The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices "in the course of the person's business, vocation, or occupation."  Colo. Rev. Stat. Ann. §6-1-105(1).

2338.  The Colorado CPA makes unlawful specific acts, including:

(a)     "[e]ither knowingly or recklessly mak[ing] a false representation as to the source, sponsorship, approval, or certification of goods, services, or property" (Colo. Rev. Stat. Ann. §6-1-105(1)(b));

(b)     "[r]epresent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another" (Colo. Rev. Stat. Ann. §6-1-105(1)(g));

(c)     "[a]dvertis[ing] goods, services, or property with intent not to sell them as advertised" (Colo. Rev. Stat. Ann. §6-1-105(1)(i));

(d)     "[f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction" (Colo. Rev. Stat. Ann. §6-1-105(1)(u)); and

(e)     "[e]ither knowingly or recklessly engage[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice" (Colo. Rev. Stat. Ann. §6-1-105(1)(kkk)).

2339.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.  Such conduct was bad faith conduct under the Colorado CPA.

2340.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2341.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and

failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2342. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Colorado CPA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; and

(e) failing to disclose the defective Ranitidine-Containing Products in connection with their sale to the public.

2343. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2344. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2345. Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of

Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2346.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2347.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2348.   Plaintiff and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

2349.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Colorado CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2350.  Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2351.  Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2352.  As a result of Defendant's violations of the Colorado CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

## COUNT 81
### Unjust Enrichment
### (Colorado Law)
### (Against GSK)

2353.  Colorado Class Representative Jeffrey Pisano incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2354.  This cause of action is brought on behalf of the Colorado-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2355.  Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2356.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

2357.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2358.   It is unjust and inequitable for the Defendant to retain these benefits without commensurate compensation because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2359.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2360.   Plaintiff and Class members do not have an adequate remedy at law.

**4.      Causes of Action Brought on Behalf of the Florida Class**

**COUNT 82**
**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**(Fla. Stat. Ann. §501.201, *et seq.*)**
**(Against GSK)**

2361.   Florida Class Representatives Ricardo Moròn, Ronald Ragis, and Michael Galloway incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2362.   This cause of action is brought on behalf of the Florida-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2363.   The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. Ann. §501.204(1).

2364.   In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017."  Fla. Stat. Ann. §501.204(2).

2365.   Plaintiffs and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA.  *See* Fla. Stat. Ann. §501.203(6)-(7).

2366.   Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA.  *See* Fla. Stat. Ann. §501.203(8).

2367.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to

disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2368.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2369.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2370.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

2371.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2372.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2373.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2374.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2375.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2376.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2377.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2378.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2379.   As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

**COUNT 83**
**Unjust Enrichment**
**(Florida Law)**
**(Against GSK)**

2380.   Florida Class Representatives Ricardo Moròn, Ronald Ragis, and Michael Galloway incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2381.   This cause of action is brought on behalf of the Florida-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2382.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2383.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members suffered an impoverishment because they purchased worthless medications and did not receive the expected benefit therefrom.

2384.   Defendant voluntarily accepted and retained these benefits from Plaintiffs and Class members and was knowingly enriched by its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2385.   It is unjust and inequitable for the Defendant to retain these benefits without paying the value thereof because the benefits were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2386.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2387.   There is no express written contract governing this dispute.

2388.   Plaintiffs and Class members do not have an adequate remedy at law.

### 5.    Causes of Action on Behalf of the Louisiana-GSK Classes

**COUNT 84**
**Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law**
**(La. Stat. Ann. §51:1401, *et seq.*)**
**(Against GSK)**

2389.   Louisiana Class Representatives Randy Jones and Tammy Smith incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2390.   This cause of action is brought on behalf of the Louisiana-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2391.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of La. Stat. Ann. §51:1402(8).

2392.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of La. Stat. Ann. §51:1402(1).

2393.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of La. Stat. Ann. §51:1402(10).

2394.   The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  La. Stat. Ann. §51:1405(A).

2395.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-

Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2396.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2397.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2398.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Louisiana CPL.

2399.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2400.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2401.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2402.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2403.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2404.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

2405.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Louisiana CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2406.   Specifically, Plaintiffs and the Class were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2407.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2408.   As a result of Defendant's violations of the Louisiana CPL, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Louisiana CPL.

### COUNT 85
### Breach of Implied Warranty
### (La. Civ. Code Ann. Art. §2520)
### (Against GSK)

2409.   Louisiana Class Representatives Randy Jones and Tammy Smith incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2410.   This cause of action is brought on behalf of the Louisiana-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2411. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Louisiana Class Representatives and members of the Louisiana Class and was in the business of selling such products.

2412. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2413. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2414. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

2415. Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2416. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2417.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

2418.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

2419.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

2420.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### COUNT 86
### Unjust Enrichment
### (Louisiana Law)
### (Against GSK)

2421.   Louisiana Class Representatives Randy Jones and Tammy Smith incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2422.   This cause of action is brought on behalf of the Louisiana-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2423.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2424.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2425.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and was knowingly enriched by its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2426.   Defendant's enrichment – the monies obtained from Plaintiff for the Ranitidine-Containing Products – was the result of Plaintiff's impoverishment – the receipt by Plaintiff of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

2427.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-

Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2428.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2429.   Plaintiffs and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 6.    Causes of Action on Behalf of the Maryland-GSK Classes

### COUNT 87
### Violation of the Maryland Consumer Protection Act
### (Md. Code Ann., Com. Law §13-101, *et seq.*)
### (Against GSK)

2430.   Maryland Class Representative Charles Longfield incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2431.   This cause of action is brought on behalf of the Maryland-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

2432.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Md. Code Ann., Com. Law §13-101(h).

2433.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Md. Code Ann., Com. Law §13-101(c)(1).

2434.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Md. Code Ann., Com. Law §13-101(f).

2435.   The Maryland Consumer Protection Act ("Maryland CPA") prohibits "[u]nfair, abusive, or deceptive trade practices."  Md. Code Ann., Com. Law §13-301.

2436.   The Maryland CPA makes unlawful specific acts, including:

(a)     "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" (Md. Code Ann., Com. Law §13-301(1));

(b)     "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have" (Md. Code Ann., Com. Law §13-301(2)(i));

(c)     "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not" (Md. Code Ann., Com. Law §13-301(2)(iv));

(d)     "[f]ailure to state a material fact if the failure deceives or tends to deceive" (Md. Code Ann., Com. Law §13-301(3));

(e)     "[a]dvertis[ing] or offer[ing] of consumer goods, consumer realty, or consumer services . . . [w]ithout intent to sell, lease, or rent them as advertised or offered" (Md. Code Ann., Com. Law §13-301(5)(i)); and

(f)     "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with . . . [t]he promotion or sale of any consumer goods" (Md. Code Ann., Com. Law §13-301(9)(i)).

2437.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2438.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products

- 697 -

remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2439. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2440. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Maryland CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)     failing to disclose that the Ranitidine-Containing Products are defective and inherently dangerous in the course of the sale of the Ranitidine-Containing Products; and

(e)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

2441. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2442.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2443.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2444.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2445.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2446.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

2447.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Maryland CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2448.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2449.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2450.   As a result of Defendant's violations of the Maryland CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

**COUNT 88**
**Breach of Implied Warranty**
**(Md. Code Ann. §2-314)**
**(Against GSK)**

2451.   Maryland Class Representative Charles Longfield incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2452.   This cause of action is brought on behalf of the Maryland-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

2453.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Maryland Class Representatives and members of the Maryland Class and was in the business of selling such products.

2454.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2455.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2456.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

2457.  Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2458.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2459.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

2460.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

2461.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

2462.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### COUNT 89
### Unjust Enrichment
### (Maryland Law)
### (Against GSK)

2463.   Maryland Class Representative Charles Longfield incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2464.   This cause of action is brought on behalf of the Maryland-GSK Class (for the purpose of this section, "Class") against GSK (for purposes of this Count only, "Defendant").

2465.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2466.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products labels that exceeded the time period during which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2467.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products labels that exceeded the time period during which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2468.   It would be unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2469.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for the value thereof, and therefore restitution or disgorgement of the amount of their unjust enrichment is required.

2470.   Plaintiffs and Class members do not have an adequate remedy at law.

**7.      Causes of Action on Behalf of the Michigan-GSK Classes**

**COUNT 90**
**Violation of the Michigan Consumer Protection Act**
**(Mich. Comp. Laws Ann. §445.901, *et seq.*)**
**(Against GSK)**

2471.   Michigan Class Representatives Jerry Hunt and Lakisha Wilson incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2472.   This cause of action is brought on behalf of the Michigan-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2473.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(d).

2474.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(g).

2475.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws Ann. §445.903(1).

2476.   The Michigan CPA makes unlawful specific acts, including:

(a)  "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Mich. Comp. Laws Ann. §445.903(1)(c));

(b)  "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Mich. Comp. Laws Ann. §445.903(1)(e)); and

(c)  "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented" (Mich. Comp. Laws Ann. §445.903(1)(g)).

2477.  In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2478.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2479.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2480.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Michigan CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

2481.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2482.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2483.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2484.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the

inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2485.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2486.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Michigan CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2487.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.   Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2488.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.   Defendant's unlawful acts and practices complained of herein affect the public interest.

2489.   As a result of Defendant's violations of the Michigan CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Michigan CPA.

**COUNT 91**
**Unjust Enrichment**
**(Michigan Law)**
**(Against GSK)**

2490.   Michigan Class Representatives Jerry Hunt and Lakisha Wilson incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2491.   This cause of action is brought on behalf of the Michigan-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2492.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2493.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2494.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'

expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2495.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2496.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2497.   There is no express contract governing this dispute.

2498.   Plaintiffs and Class members do not have an adequate remedy at law.

### 8.     Causes of Action on Behalf of the Missouri-GSK Classes

### COUNT 92
### Violation of the Missouri Merchandising Practices Act
### (Mo. Ann. Stat. §407.010, *et seq.*)
### (Against GSK)

2499.   Missouri Class Representatives Ronda Lockett and Tammy Smith incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2500.   This cause of action is brought on behalf of the Missouri-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2501.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mo. Ann. Stat. §407.010(5).

2502.   Defendant was and is engaged in "[t]rade or commerce" within the meaning of Mo. Ann. Stat. §407.010(7).

2503.   The Missouri Merchandising Practices Act ("Missouri MPA") prohibits "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce."  Mo. Ann. Stat. §407.020(1).

2504.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2505.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2506.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and

failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2507.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Missouri MPA.

2508.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2509.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2510.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2511.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii)

the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2512. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2513. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Missouri MPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2514. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2515. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

2516. As a result of Defendant's violations of the Missouri MPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Missouri MPA.

## COUNT 93
### Breach of Implied Warranty
### (Mo. Rev. Stat. §400.2-314)
### (Against GSK)

2517.   Missouri Class Representatives Ronda Lockett and Tammy Smith incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2518.   This cause of action is brought on behalf of the Missouri Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2519.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Missouri Class Representative and members of the Missouri Class and was in the business of selling such products.

2520.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2521.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2522.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

2523.  Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2524.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2525.  Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

2526.  Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

2527.  Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

2528.  As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 94**
**Unjust Enrichment**
**(Missouri Law)**
**(Against GSK)**

2529.   Missouri Class Representatives Ronda Lockett and Tammy Smith incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2530.   This cause of action is brought on behalf of the Missouri Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2531.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2532.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2533.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'

expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2534.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2535.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2536.   There is no express contract governing this dispute.

2537.   Plaintiffs and Class members do not have an adequate remedy at law.

### 9.   Causes of Action on Behalf of the Nebraska-GSK Classes

**COUNT 95**
**Violation of the Nebraska Consumer Protection Act**
**(Neb. Rev. Stat. Ann. §59-1601, *et seq.*)**
**(Against GSK)**

2538.   Nebraska Class Representative Gaylord Stauffer incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2539.   This cause of action is brought on behalf of the Nebraska-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2540.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Neb. Rev. Stat. Ann. §59-1601(1).

2541.   The Ranitidine-Containing Products are "[a]ssets" within the meaning of Neb. Rev. Stat. Ann. §59-1601(3).

2542.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Neb. Rev. Stat. Ann. §59-1601(2).

2543.   The Nebraska Consumer Protection Act ("Nebraska CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Neb. Rev. Stat. Ann. §59-1602.

2544.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nebraska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2545.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nebraska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products

remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2546.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nebraska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2547.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Nebraska CPA.

2548.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2549.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2550.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2551.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2552.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2553.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Nebraska CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2554.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2555.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2556.   As a result of Defendant's violations of the Nebraska CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Nebraska CPA.

**COUNT 96**
**Breach of Implied Warranty**
**(Neb. U.C.C. §2-314)**
**(Against GSK)**

2557.   Nebraska Class Representative Gaylord Stauffer incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2558.   This cause of action is brought on behalf of the Nebraska-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2559.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Nebraska Class Representatives and members of the Nebraska Class and was in the business of selling such products.

2560.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2561.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2562.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

2563.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2564.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2565.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

2566.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

2567.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

2568.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 97**
**Unjust Enrichment**
**(Nebraska Law)**
**(Against GSK)**

</div>

2569.   Nebraska Class Representative Gaylord Stauffer incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2570.   This cause of action is brought on behalf of the Nebraska-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2571.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2572.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly,

Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2573.  Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2574.  It is unjust and unfair for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2575.  Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2576.  There is no express contract governing this dispute.

2577.  Plaintiff and Class members do not have an adequate remedy at law.

10.      **Causes of Action on Behalf of the Nevada-GSK Classes**

**COUNT 98**
**Violation of the Nevada Deceptive Trade Practices Act**
**(Nev. Rev. Stat. Ann. §598.0903, *et seq.*)**
**(Against GSK)**

2578.   Nevada Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2579.   This cause of action is brought on behalf of the Nevada-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2580.   The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), prohibits the use of "'deceptive trade practices' . . . in the course of . . . business or occupation." Nev. Rev. Stat. Ann. §598.0915.

2581.   The Nevada DTPA makes unlawful specific acts, including:

(a)     "[k]nowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith" (Nev. Rev. Stat. Ann. §598.0915(5));

(b)     "[r]epresent[ing] that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model" (Nev. Rev. Stat. Ann. §598.0915(7));

(c)     "[a]dvertis[ing] goods or services with intent not to sell or lease them as advertised" (Nev. Rev. Stat. Ann. §598.0915(9));

(d)     "[k]nowingly mak[ing] any other false representation in a transaction" (Nev. Rev. Stat. Ann. §598.0915(15)); and

(e)     "[f]ail[ing] to disclose a material fact in connection with the sale or lease of goods or services" (Nev. Rev. Stat. Ann. §598.0923(2)).

2582.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2583.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2584.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2585.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Nevada DTPA, including:

> (a)   representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)    failing to disclose the NDMA danger in connection with the sale of the Ranitidine-Containing Products; and

(e)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

2586.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2587.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2588.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2589.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2590.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2591.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Nevada DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2592.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2593.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

2594.   As a result of Defendant's violations of the Nevada DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Nevada DTPA.

**COUNT 99**
**Unjust Enrichment**
**(Nevada Law)**
**(Against GSK)**

2595. Nevada Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911as though fully set forth herein.

2596. This cause of action is brought on behalf of the Nevada-GSK Class (for the purpose of this section, "Class") against Brand Manufacturer Defendant GSK with respect to Zantac OTC purchases (for purposes of this Count only, "Defendant").

2597. Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2598. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2599. Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and

that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2600.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2601.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2602.   There is no express contract governing this dispute.

2603.   Plaintiff and Class members do not have an adequate remedy at law.

### 11.     Causes of Action on Behalf of the North Carolina-GSK Classes

### COUNT 100
### Violation of the North Carolina Unfair and Deceptive Trade Practices Act
### (N.C. Gen. Stat. Ann. §75-1.1, *et seq.*)
### (Against GSK)

2604.   North Carolina Class Representative Dennis Robbins incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2605.   This cause of action is brought on behalf of the North Carolina-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2606.   Defendant was and is engaged in "commerce" within the meaning of N.C. Gen. Stat. Ann. §75-1.1(b).

2607.   The North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," N.C. Gen. Stat. Ann. §75-1.1(a), and provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the law.  N.C. Gen. Stat. Ann. §75-16.

2608.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2609.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2610.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2611.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the North Carolina UDTPA.

2612.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2613.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2614.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2615.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2616.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2617.  Plaintiff and the Class members were aggrieved by Defendant's violations of the North Carolina UDTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2618.  Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2619.  Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2620.  As a result of Defendant's violations of the North Carolina UDTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the North Carolina UDTPA.

**COUNT 101**
**Breach of Implied Warranty**
**(N.C. Gen. Stat. Ann. §25-2-314)**
**(Against GSK)**

2621.   North Carolina Class Representative Dennis Robbins incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2622.   This cause of action is brought on behalf of the North Carolina-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2623.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to North Carolina Class Representatives and members of the North Carolina Class and was in the business of selling such products.

2624.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2625.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2626.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

2627.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2628.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2629.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

2630.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

2631.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

2632.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 102**
**Unjust Enrichment**
**(North Carolina Law)**
**(Against GSK)**

2633.  North Carolina Class Representative Dennis Robbins incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2634.  This cause of action is brought on behalf of the North Carolina-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2635.  Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2636.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2637.  Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and

that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2638.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2639.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2640.   Plaintiff and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 12.   Causes of Action on Behalf of Oregon-GSK Classes

### COUNT 103
### Violation of the Oregon Unlawful Trade Practices Act
### (Or. Rev. Stat. Ann. §646.605, *et seq.*)
### (Against GSK)

2641.   Oregon Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2642.   This cause of action is brought on behalf of the Oregon-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2643.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Or. Rev. Stat. Ann. §646.605(4).

2644.   The Ranitidine-Containing Products are "goods" within the meaning of Or. Rev. Stat. Ann. §646.605(6).

2645.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Or. Rev. Stat. Ann. §646.605(8).

2646.   The Oregon Unlawful Trade Practices Act ("Oregon UTPA") prohibits "unlawful practice . . . in the course of the person's business."  Or. Rev. Stat. Ann. §646.608(1).

2647.   The Oregon UTPA makes unlawful specific acts, including:

(a)    "[r]epresent[ing] that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have" (Or. Rev. Stat. Ann. §646.608(1)(e));

(b)    "[r]epresent[ing] that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if the real estate, goods or services are of another" (Or. Rev. Stat. Ann. §646.608(1)(g));

(c)    "[a]dvertis[ing] real estate, goods or services with intent not to provide the real estate, goods or services as advertised" (Or. Rev. Stat. Ann. §646.608(1)(i)); and

(d)    "[e]ngag[ing] in any other unfair or deceptive conduct in trade or commerce" (Or. Rev. Stat. Ann. §646.608(1)(u)).

2648.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oregon UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2649.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oregon UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and

failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2650.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oregon UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2651.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Oregon UTPA, including:

> (a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;
>
> (c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and
>
> (d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

2652.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2653. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2654. Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2655. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2656. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2657. Plaintiff and the Class members were aggrieved by Defendant's violations of the Oregon UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2658.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2659.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2660.   As a result of Defendant's violations of the Oregon UTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Oregon UTPA.

### COUNT 104
### Breach of Implied Warranty
### (Or. Rev. Stat. §72.3140)
### (Against GSK)

2661.   Oregon Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2662.   This cause of action is brought on behalf of the Oregon-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2663.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Oregon Class Representatives and members of the Oregon Class and was in the business of selling such products.

2664.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2665.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2666.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

2667.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2668.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2669.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

2670.  Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

2671.  Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

2672.  As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 105**
**Unjust Enrichment**
**(Oregon Law)**
**(Against GSK)**

2673.  Oregon Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2674.  This cause of action is brought on behalf of the Oregon-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2675.  Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

2676.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2677.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2678.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2679.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2680.  There is no express contract governing this dispute.

2681.  Plaintiff and Class members do not have an adequate remedy at law.

### 13.    Causes of Action on Behalf of Puerto Rico-GSK Classes

**COUNT 106**
**Breach of Implied Warranty**
**(P.R. Laws Ann. tit. 31, §3841)**
**(Against GSK)**

2682.  Puerto Rico Class Representative Gloria Colon incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2683.  This cause of action is brought on behalf of the Puerto Rico-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2684.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Puerto Rico Class Representatives and members of the Puerto Rico Class and was in the business of selling such products.

2685.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2686.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2687.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

2688.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2689.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2690.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

2691.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

2692.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

2693.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 107
## Unjust Enrichment
## (Puerto Rico Law)
## (Against GSK)

2694.   Puerto Rico Class Representative Gloria Colon incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2695.   This cause of action is brought on behalf of the Puerto Rico-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2696.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2697.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2698.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and was knowingly enriched by its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2699.   Defendant's enrichment – the monies obtained from Plaintiff's and Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiff's and Class members' impoverishment – *i.e.*, Plaintiff's and Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

2700.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2701.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2702.   Plaintiff and Class members do not have an adequate remedy at law.

### 14.   Causes of Action on Behalf of the Texas-GSK Classes

### COUNT 108
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
### (Tex. Bus. & Com. Code Ann. §17.41, *et seq.*)
### (Against GSK)

2703.   Texas Class Representative Tammy Smith incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2704.   This cause of action is brought on behalf of the Texas-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2705.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

2706.   Plaintiff and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

2707.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

2708.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

2709.   The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

2710.  The Texas DTPA makes unlawful specific acts, including:

    (a)    "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

    (b)    "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

    (c)    "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

2711.  In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2712.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2713.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2714.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

2715.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2716.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2717.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2718.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii)

the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2719.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2720.   Plaintiff and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

2721.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2722.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2723.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2724.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiff and the Class members are entitled.

2725.   As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

### COUNT 109
### Breach of Implied Warranty
### (Tex. Bus. & Com. Code Ann. §2-314)
### (Against GSK)

2726.   Texas Class Representative Tammy Smith incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2727.   This cause of action is brought on behalf of the Texas-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2728.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

2729.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2730.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2731.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

2732.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2733.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2734.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

2735.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

2736.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

2737.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 110**
**Unjust Enrichment**
**(Texas Law)**
**(Against GSK)**

2738.   Texas Class Representative Tammy Smith incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2739.   This cause of action is brought on behalf of the Texas-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2740.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2741. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2742. Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2743. It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2744. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2745.   Plaintiff and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 15.     Causes of Action on Behalf of Vermont-GSK Classes

### COUNT 111
### Violation of the Vermont Consumer Fraud Act
### (Vt. Stat. Ann. tit. 9, §2451, *et seq.*)
### (Against GSK)

2746.   Vermont Class Representative Ronald Ragis incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2747.   This cause of action is brought on behalf of the Vermont-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2748.   Defendant is a "[s]eller" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(c).

2749.   Plaintiff and the Class members are "[c]onsumer[s]" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(a).

2750.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(b).

2751.   The Vermont consumer fraud act ("Vermont CFA") prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce."  Vt. Stat. Ann. tit. 9, §2453(a).

2752.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Vermont CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably

dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2753. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Vermont CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2754. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Vermont CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2755. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Vermont CFA.

2756. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2757.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2758.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2759.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffsand the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2760.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2761.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Vermont CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2762.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2763.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2764.   As a result of Defendant's violations of the Vermont CFA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Vermont CFA.

## COUNT 112
### Breach of Implied Warranty
### (Vt. Stat. Ann. tit. 9A §2-314)
### (Against GSK)

2765.   Vermont Class Representative Ronald Ragis incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2766.   This cause of action is brought on behalf of the Vermont-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2767.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Vermont Class Representatives and members of the Vermont Class and was in the business of selling such products.

2768.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2769.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2770.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

2771.  Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2772.  Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2773.  Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

2774.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

2775.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

2776.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## 16.    Causes of Action on Behalf of the Washington-GSK Classes

### COUNT 113
### Violation of the Washington Consumer Protection Act
### (Wash. Rev. Code Ann. §19.86.010, *et seq.*)
### (Against GSK)

2777.   Washington Class Representative Earlene Green incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2778.   This cause of action is brought on behalf of the Washington-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2779.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Wash. Rev. Code Ann. §19.86.010(1).

2780.   The Ranitidine-Containing Products are "[a]ssets" within the meaning of Wash. Rev. Code Ann. §19.86.010(3).

2781.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Wash. Rev. Code Ann. §19.86.010(2).

2782.   The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. §19.86.020.

2783.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2784.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2785.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably

- 762 -

dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2786.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington CPA.

2787.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2788.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2789.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2790.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2791.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2792.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Washington CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2793.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2794.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2795.   On June 22, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Wash. Rev. Code Ann. §19.86.095 to the Attorney General of the State of Washington.

2796.   As a result of Defendant's violations of the Washington CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Washington CPA.

**COUNT 114**
**Breach of Implied Warranty**
**(Wash. Rev. Code §62A.2-314)**
**(Against GSK)**

2797.   Washington Class Representative Earlene Green incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2798.   This cause of action is brought on behalf of the Washington-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2799.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Washington Class Representatives and members of the Washington Class and was in the business of selling such products.

2800.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2801.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2802.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

2803.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2804.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2805.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

2806.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

2807.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

2808.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 115
## Unjust Enrichment
## (Washington Law)
## (Against GSK)

2809.   Washington Class Representatives Earlene Green incorporate the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2810.   This cause of action is brought on behalf of the Washington-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2811.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

2812.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2813.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and

that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2814.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2815.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2816.   There is no express contract governing this dispute.

2817.   Plaintiff and Class members do not have an adequate remedy at law.

### 17.    Causes of Action on Behalf of the Wyoming-GSK Classes

<div align="center">

**COUNT 116**
**Breach of Implied Warranty**
**(Wyo. Stat. §34.1-2-314)**
**(Against GSK)**

</div>

2818.   Wyoming Class Representative Charles Longfield incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2819.   This cause of action is brought on behalf of the Wyoming-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2820.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Wyoming Class Representatives and members of the Wyoming Class and was in the business of selling such products.

2821.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2822.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2823.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

2824.  Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2825.  Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2826.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

2827.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

2828.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

2829.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 117**
**Unjust Enrichment**
**(Wyoming Law)**
**(Against GSK)**

2830.   Wyoming Class Representative Charles Longfield incorporates the preceding allegations in paragraphs 9-13, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2831.   This cause of action is brought on behalf of the Wyoming-GSK Class (for the purpose of this section, "Class") against GSK with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

2832.  Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2833.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  ccordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2834.  Defendant readily accepted, retained, and enjoyed these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2835.  Defendant knew that Plaintiff and Class members reasonably expected to receive safe and effective medications.

2836.  It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing

Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2837.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2838.   Plaintiff and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### B.   Causes of Action Against Pfizer

2839.   For the purposes of the subsequent causes of action against Defendant Pfizer, Plaintiffs are incorporating the following allegations by reference: paragraphs 14-15 (corporate information); 273-277 (jurisdiction and venue); 279-303 (development of brand Zantac); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469 (requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 868-894 (misrepresentations or omissions of material fact in labeling); 895-911 (misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

2840.   Plaintiff identified in the table below bring claims against Defendant Pfizer on behalf of themselves and their respective State Classes under the laws of their respective states.

Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*,

into their respective claims below:

| Plaintiff Name | State(s) of Residence |
|---|---|
| Andy Green Jr. | Arkansas |
| Golbenaz Bakhtiar | California |
| Richard Obrien | California |
| Virginia Aragon | California |
| Jeffrey Pisano | Colorado |
| Angel Cordero | Connecticut |
| Gustavo Velasquez | Florida |
| Joshua Winans | Florida |
| Ricardo Moròn | Florida |
| Kathy Jeffries | Florida; Georgia |
| Carol Harkins | Illinois |
| Janet Asbury | Kentucky |
| Randy Jones | Louisiana |
| Alberta Griffin | Maryland |
| Nicholas Hazlett | Maryland |
| Jerry Hunt | Michigan |
| Kenneth Hix | Michigan |
| Lakisha Wilson | Michigan |
| Donald Northrup | Minnesota |
| Roy Armstrong | Minnesota |
| John Scholl | Minnesota; North Dakota |
| Beverly Crosby | Mississippi |
| John Rachal | Mississippi |
| Dennis Robbins | North Carolina |
| Gaylord Stauffer | Nebraska |
| Dan Zhovtis | New York |

| | |
|---|---|
| Mary McCullen | New York |
| Chris Troyan | Ohio |
| Michael Galloway | Ohio, Florida |
| Billy Naab | Oklahoma |
| Jonathan Ferguson | Nevada, Oregon; Washington |
| Gloria Colon | Puerto Rico |
| Sonia Diaz | Puerto Rico |
| Dale Hunter | Tennessee |
| Eva Broughton | Tennessee |
| Marianella Villanueva | Texas |
| Ronda Lockett | Texas, Missouri |
| Sylvia Yoshida | Texas |
| Tammy Smith | Texas, Louisiana, Missouri |
| Ronald Ragis | Vermont; Florida |
| Robert Dewitt | Washington |
| Steve Fischer | Washington |
| Earlene Green | Washington |
| Wendy Quezaire | Wisconsin |
| Ida Adams | West Virginia; Maryland |
| Charles Longfield | Wyoming, Maryland |

**1.** **Causes of Action on Behalf of the Arkansas-Pfizer Classes**

**COUNT 118**
**Violation of the Arkansas Deceptive Trade Practices Act**
**(Ark. Code Ann. §4-88-101, *et seq.*)**
**(Against Pfizer)**

2841. Arkansas Class Representative Andy Green Jr. incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

- 774 -

2842.   This cause of action is brought on behalf of the Arkansas-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

2843.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Ark. Code Ann. §4-88-102(5).

2844.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Ark. Code Ann. §4-88-102(4).

2845.   The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices."  Ark. Code Ann. §4-88-107(a).

2846.   The Arkansas DTPA makes unlawful specific acts, including:

(a)   "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" (Ark. Code Ann. §4-88-107(a)(1));

(b)   "[a]dvertising the goods or services with the intent not to sell them as advertised" (Ark. Code Ann. §4-88-107(a)(3)); and

(c)   "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" (Ark. Code Ann. §4-88-107(a)(10)).

2847.   The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission . . . ." Ark. Code Ann. §4-88-108(a).

2848.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their

intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2849.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2850.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2851.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Arkansas DTPA, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

2852.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2853.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2854.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2855.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2856.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2857.  Plaintiff and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

2858.  Plaintiff and the Class members were aggrieved by Defendant's violations of Arkansas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2859.  Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2860.  Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2861.  As a result of Defendant's violations of the Arkansas DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

# COUNT 119
## Breach of Implied Warranty
## (Ark. Code Ann. §4-2-314)
## (Against Pfizer)

2862.  Arkansas Class Representative Andy Green Jr. incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2863.  This cause of action is brought on behalf of the Arkansas-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

2864.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arkansas Class Representatives and members of the Arkansas Class and was in the business of selling such products.

2865.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2866.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2867.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

2868.  Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2869.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2870.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

2871.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

2872.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.   Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

2873.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 120**
**Unjust Enrichment**
**(Arkansas Law)**
**(Against Pfizer)**

2874.   Arkansas Class Representative Andy Green Jr. incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2875.   This cause of action is brought on behalf of the Arkansas-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

2876.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2877.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2878.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2879.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2880.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2881.   There is no valid, legal, and binding contract governing this dispute.

2882.   Plaintiff and Class members do not have an adequate remedy at law.

### 2.   Causes of Action on Behalf of the California-Pfizer Classes

### COUNT 121
### Violation of the California Unfair Competition Law
### (Cal. Bus. & Prof. Code §17200, *et seq.*)
### (Against Pfizer)

2883.   California Class Representatives Golbenaz Bakhtiar, Richard O'Brien, and Virginia Aragon incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2884.   This cause of action is brought on behalf of the California-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

2885.   Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

2886.   Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

2887.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2888.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2889.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2890.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL.  These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

2891.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2892.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2893.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2894.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2895.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2896.   Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

2897.   Defendant's conduct also consitutes "unfair" business acts or practies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

2898.   Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295,

111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, *see* Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

2899.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2900.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2901.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2902.   Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

**COUNT 122**
**Violation of the California False Advertising Law**
**(Cal. Bus. & Prof. Code §17500, *et seq.*)**
**(Against Pfizer)**

2903.   California Class Representatives Golbenaz Bakhtiar, Richard O'Brien, and Virginia Aragon incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2904.   This cause of action is brought on behalf of the California-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

2905.   Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

2906.   The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code §17500.

2907.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2908.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2909.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2910.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

  (a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

  (b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

  (c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

  (d) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

2911.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2912.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2913.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2914.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2915.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2916.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2917.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2918.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2919.  As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

## COUNT 123
### Violation of the California Consumers Legal Remedies Act
### (Cal. Civ. Code §1750, *et seq.*)
### (Against Pfizer)

2920.  California Class Representatives Golbenaz Bakhtiar, Richard O'Brien, and Virginia Aragon incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2921.  This cause of action is brought on behalf of the California-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

2922.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

2923.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

2924.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

2925.   The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code §1770(a).

2926.   The California CLRA makes unlawful specific acts, including:

    (a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

    (b)    "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

    (c)    "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

    (d)    "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

2927.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their

intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2928.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2929.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2930.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

      (a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

      (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

      (c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

      (d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

2931.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2932.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2933.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

2934.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2935.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2936.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

2937.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2938.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2939.  Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by various Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiff and the Class members are entitled.

2940.  Pursuant to Cal. Civ. Code §1780(a), Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b),

Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

<div align="center">

**COUNT 124**
**Breach of Implied Warranty**
**(Cal. Com. Code §2314)**
**(Against Pfizer)**

</div>

2941.  California Class Representatives Golbenaz Bakhtiar, Richard O'Brien, and Virginia Aragon incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2942.  This cause of action is brought on behalf of the California-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

2943.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the California Class Representatives and members of the California Class and was in the business of selling such products.

2944.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2945.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2946.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

2947.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2948.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

2949.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

2950.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

2951.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

2952.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 125**
**Unjust Enrichment or Quasi-Contract**
**(California Law)**
**(Against Pfizer)**

</div>

2953.   California Class Representatives Golbenaz Bakhtiar, Richard O'Brien, and Virginia Aragon incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2954.   This cause of action is brought on behalf of the California-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

2955.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2956.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the

products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

2957.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2958.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2959.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2960.   Plaintiffs and Class members do not have an adequate remedy at law.

3. **Causes of Action on Behalf of the Colorado-Pfizer Classes**

**COUNT 126**
**Violation of the Colorado Consumer Protection Act**
**(Colo. Rev. Stat. Ann. §6-1-101, *et seq.*)**
**(Against Pfizer)**

2961.   Colorado Class Representative Jeffrey Pisano incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2962.   This cause of action is brought on behalf of the Colorado-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

2963.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Colo. Rev. Stat. Ann. §6-1-102(6).

2964.   The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices "in the course of the person's business, vocation, or occupation."  Colo. Rev. Stat. Ann. §6-1-105(1).

2965.   The Colorado CPA makes unlawful specific acts, including:

(a)   "[e]ither knowingly or recklessly mak[ing] a false representation as to the source, sponsorship, approval, or certification of goods, services, or property" (Colo. Rev. Stat. Ann. §6-1-105(1)(b));

(b)   "[r]epresent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another" (Colo. Rev. Stat. Ann. §6-1-105(1)(g));

(c)   "[a]dvertis[ing] goods, services, or property with intent not to sell them as advertised" (Colo. Rev. Stat. Ann. §6-1-105(1)(i));

(d)   "[f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction" (Colo. Rev. Stat. Ann. §6-1-105(1)(u)); and

(e)  "[e]ither knowingly or recklessly engage[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice" (Colo. Rev. Stat. Ann. §6-1-105(1)(kkk)).

2966.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer. Such conduct was bad faith conduct under the Colorado CPA.

2967.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2968.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2969.  Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Colorado CPA, including:

(a)      representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)      representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)      advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)      engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; and

(e)      failing to disclose the defective Ranitidine-Containing Products in connection with their sale to the public.

2970.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2971.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2972.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2973.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the

inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

2974.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

2975.   Plaintiff and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

2976.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Colorado CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

2977.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

2978.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2979.   As a result of Defendant's violations of the Colorado CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

**COUNT 127**
**Unjust Enrichment**
**(Colorado Law)**
**(Against Pfizer)**

2980.   Colorado Class Representatives Jeffrey Pisano and Tammy Smith incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2981.   This cause of action is brought on behalf of the Colorado-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

2982.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

2983.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly,

Plaintiff and Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

2984.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2985.   It is unjust and inequitable for the Defendant to retain these benefits without commensurate compensation because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

2986.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

2987.   Plaintiff and Class members do not have an adequate remedy at law.

### 4. Causes of Action on Behalf of the Connecticut Class

### COUNT 128
### Violation of the Connecticut Unfair Trade Practices Act
### (Conn. Gen. Stat. Ann. §42-110a, *et seq.*)
### (Against Pfizer)

2988. Connecticut Class Representative Angel Cordero incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

2989. This cause of action is brought on behalf of the Connecticut-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

2990. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Conn. Gen. Stat. Ann. §42-110a(3).

2991. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. §42-110a(4).

2992. The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. §42-110b(a).

2993. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2994. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and

failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

2995.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

2996.  Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Connecticut UTPA.

2997.  Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2998.  Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

2999.  Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of

Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3000.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3001.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3002.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Connecticut UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3003.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3004.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3005.   As a result of Defendant's violations of the Connecticut UTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

**COUNT 129**
**Breach of Implied Warranty**
**(Conn. Gen. Stat. Ann. §42a-2-314)**
**(Against Pfizer)**

3006.   Connecticut Class Representative Angel Cordero incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3007.   This cause of action is brought on behalf of the Connecticut-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3008.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Connecticut Class Representative and members of the Connecticut Class and was in the business of selling such products.

3009.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3010.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3011.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

3012.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3013.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3014.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

3015.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

3016.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

3017.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 130**
**Unjust Enrichment**
**(Connecticut Law)**
**(Against Pfizer)**

3018.   Connecticut Class Representative Angel Cordero incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3019.   This cause of action is brought on behalf of the Connecticut-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3020.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3021.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly,

Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3022.  Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3023.  It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3024.  Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3025.  Plaintiff and Class members do not have an adequate remedy at law.

### 5.    Causes of Action on Behalf of the Florida-Pfizer Classes

### COUNT 131
### Violation of the Florida Deceptive and Unfair Trade Practices Act
### (Fla. Stat. Ann. §501.201, *et seq.*)
### (Against Pfizer)

3026.  Florida Class Representatives Gustavo Velasquez, Joshua Winans, Michael Galloway, Ricardo Moròn, Ronald Ragis, and Kathy Jeffries incorporate the preceding allegations

in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3027.   This cause of action is brought on behalf of the Florida-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3028.   The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. Ann. §501.204(1).

3029.   In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017."  Fla. Stat. Ann. §501.204(2).

3030.   Plaintiffs and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA.  *See* Fla. Stat. Ann. §501.203(6)-(7).

3031.   Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA.  *See* Fla. Stat. Ann. §501.203(8).

3032.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3033.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to

disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3034.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3035.  Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

3036.  Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3037.  Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3038.  Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3039.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3040.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3041.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3042.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3043.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3044.   As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

**COUNT 132**
**Unjust Enrichment**
**(Florida Law)**
**(Against Pfizer)**

3045.   Florida Class Representatives Gustavo Velasquez, Joshua Winans, Michael Galloway, Ricardo Moròn, Ronald Ragis, and Kathy Jeffries incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3046.   This cause of action is brought on behalf of the Florida-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3047.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3048.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and,

thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members suffered an impoverishment because they purchased worthless medications and did not receive the expected benefit therefrom.

3049.   Defendant voluntarily accepted and retained these benefits from Plaintiffs and Class members and was knowingly enriched by its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3050.   It is unjust and inequitable for the Defendant to retain these benefits without paying the value thereof because the benefits were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3051.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3052.   There is no express written contract governing this dispute.

3053.   Plaintiffs and Class members do not have an adequate remedy at law.

### 6.    Causes of Action on Behalf of the Georgia-Pfizer Classes

### COUNT 133
### Violation of the Georgia Fair Business Practices Act
### (Ga. Code Ann. §10-1-390, *et seq.*)
### (Against Pfizer)

3054.   Georgia Class Representative Kathy Jeffries incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3055.   This cause of action is brought on behalf of the Georgia-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3056.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(24).

3057.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(6).

3058.   Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Ga. Code Ann. §10-1-392(a)(28).

3059.   The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."  Ga. Code Ann. §10-1-393(a).

3060.   The Georgia FBPA makes unlawful specific acts, including:

(a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-393(b)(5));

(b)    "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-393(b)(7)); and

(c)    "[a]dvertising goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-393(b)(9)).

3061.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3062.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3063.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3064.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia FBPA, including:

> (a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

3065.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3066.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3067.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3068.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3069.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3070.  Plaintiffs and the Class members reasonably relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

3071.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the Georgia FBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3072.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3073.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3074.  Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs

in MDL 2924 sent a notice letter pursuant to Ga. Code Ann. §10-1-399(b) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

3075.   As a result of Defendant's violations of the Georgia FBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Georgia FBPA.

<div align="center">

**COUNT 134**
**Unjust Enrichment**
**(Georgia Law)**
**(Against Pfizer)**

</div>

3076.   Georgia Class Representative Kathy Jeffries and incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3077.   This cause of action is brought on behalf of the Georgia-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3078.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

3079.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly,

Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3080. Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3081. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3082. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3083. There is no express contract governing this dispute.

3084. Plaintiffs and Class members do not have an adequate remedy at law.

### 7.   Causes of Action on Behalf of the Illinois-Pfizer Classes

### COUNT 135
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (815 Ill. Comp. Stat. Ann. 505/1, *et seq.*)
### (Against Pfizer)

3085.   Illinois Class Representative Carol Harkins incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3086.   This cause of action is brought on behalf of the Illinois-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3087.   Defendant, Plaintiff, and the Class members are "person[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(c).

3088.   Plaintiff and the Class members are "consumer[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(e).

3089.   The Ranitidine-Containing Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(b).

3090.   Defendant was and is engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(f).

3091.   The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade

Practices Act' [815 Ill. Comp. Stat. Ann. 510/2], approved August 5, 1965, in the conduct of any trade or commerce." 815 Ill. Comp. Stat. Ann. 505/2.

3092.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3093.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3094.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3095.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFDBPA.

3096.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3097.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3098.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3099.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3100.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3101.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Illinois CFDBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3102.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3103.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3104.   As a result of Defendant's violations of the Illinois CFDBPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFDBPA.

<div align="center">

**COUNT 136**
**Unjust Enrichment**
**(Illinois Law)**
**(Against Pfizer)**

</div>

3105.   Illinois Class Representative Carol Harkins incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3106. This cause of action is brought on behalf of the Illinois-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3107. Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

3108. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3109. Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3110. It violates the principles of justice, equity, and good conscience for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members,

who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3111.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3112.   Plaintiff and Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

### 8.      Causes of Action on Behalf of the Kentucky-Pfizer Classes

### COUNT 137
### Violation of the Kentucky Consumer Protection Act
### (Ky. Rev. Stat. Ann. §367.110, *et seq.*)
### (Against Pfizer)

3113.   Kentucky Class Representative Janet Asbury incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3114.   This cause of action is brought on behalf of the Kentucky-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3115.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Ky. Rev. Stat. Ann. §367.110(1).

3116.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Ky. Rev. Stat. Ann. §367.110(2).

3117.   The Kentucky Consumer Protection Act ("Kentucky CPA") prohibits "[u]nfair, [unconscionable], false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."  Ky. Rev. Stat. Ann. §367.170(1)-(2).

3118.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3119.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3120.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3121.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Kentucky CPA.

3122.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3123.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3124.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3125.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3126.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3127.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Kentucky CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3128.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3129.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3130.   As a result of Defendant's violations of the Kentucky CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Kentucky CPA.

**COUNT 138**
**Breach of Implied Warranty**
**(Ky. Rev. Stat. Ann. §355.2-314)**
**(Against Pfizer)**

3131.   Kentucky Class Representative Janet Asbury incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3132.   This cause of action is brought on behalf of the Kentucky-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3133.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Kentucky Class Representatives and members of the Kentucy Class and was in the business of selling such products.

3134.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3135.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3136.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

3137.  Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3138.  Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3139. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

3140. Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

3141. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

3142. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 139
### Unjust Enrichment
### (Kentucky Law)
### (Against Brand Manufacturer Defendant Pfizer)

3143. Kentucky Class Representative Janet Asbury incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3144. This cause of action is brought on behalf of the Kentucky-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3145.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3146.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3147.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3148.   It would be inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3149.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3150.   Plaintiff and Class members do not have an adequate remedy at law.

### 9.   Causes of Action on Behalf of the Louisiana-Pfizer Classes

### COUNT 140
### Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law
### (La. Stat. Ann. §51:1401, *et seq.*)
### (Against Pfizer)

3151.   Louisiana Class Representatives, Tammy Smith and Randy Jones incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3152.   This cause of action is brought on behalf of the Louisiana-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3153.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of La. Stat. Ann. §51:1402(8).

3154.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of La. Stat. Ann. §51:1402(1).

3155.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of La. Stat. Ann. §51:1402(10).

3156.   The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  La. Stat. Ann. §51:1405(A).

3157.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3158.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3159.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3160.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Louisiana CPL.

3161.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3162.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3163.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3164.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3165.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3166.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

3167.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Louisiana CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3168.   Specifically, Plaintiffs and the Class were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3169.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3170.   As a result of Defendant's violations of the Louisiana CPL, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Louisiana CPL.

**COUNT 141**
**Breach of Implied Warranty**
**(La. Civ. Code Ann. Art. §2520)**
**(Against Pfizer)**

3171.   Louisiana Class Representatives, Tammy Smith and Randy Jones incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3172.   This cause of action is brought on behalf of the Louisiana-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3173.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Louisiana Class Representatives and members of the Louisiana Class and was in the business of selling such products.

3174.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3175.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3176.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

3177.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3178.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3179.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

3180.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

3181.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

3182.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 142
## Unjust Enrichment
## (Louisiana Law)
## (Against Pfizer)

3183.   Louisiana Class Representatives, Tammy Smith and Randy Jones incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3184.   This cause of action is brought on behalf of the Louisiana-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3185.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3186.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3187.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and was knowingly enriched by its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3188.   Defendant's enrichment – the monies obtained from Plaintiffs for the Ranitidine-Containing Products – was the result of Plaintiffs' impoverishment – the receipt by Plaintiffs of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

3189.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3190.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3191.   Plaintiffs and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**10.    Causes of Action on Behalf of the Maryland-Pfizer Classes**

**COUNT 143**
**Violation of the Maryland Consumer Protection Act**
**(Md. Code Ann., Com. Law §13-101, *et seq.*)**
**(Against Pfizer)**

3192.   Maryland Class Representatives Alberta Griffin, Charles Longfield, Ida Adams and Nicholas Hazlett incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3193.   This cause of action is brought on behalf of the Maryland-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3194.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Md. Code Ann., Com. Law §13-101(h).

3195.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Md. Code Ann., Com. Law §13-101(c)(1).

3196.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Md. Code Ann., Com. Law §13-101(f).

3197.   The Maryland Consumer Protection Act ("Maryland CPA") prohibits "[u]nfair, abusive, or deceptive trade practices."  Md. Code Ann., Com. Law §13-301.

3198.   The Maryland CPA makes unlawful specific acts, including:

(a)   "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" (Md. Code Ann., Com. Law §13-301(1));

(b)   "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have" (Md. Code Ann., Com. Law §13-301(2)(i));

(c)   "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not" (Md. Code Ann., Com. Law §13-301(2)(iv));

(d)   "[f]ailure to state a material fact if the failure deceives or tends to deceive" (Md. Code Ann., Com. Law §13-301(3));

(e)   "[a]dvertis[ing] or offer[ing] of consumer goods, consumer realty, or consumer services . . . [w]ithout intent to sell, lease, or rent them as advertised or offered" (Md. Code Ann., Com. Law §13-301(5)(i)); and

(f)   "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with . . . [t]he promotion or sale of any consumer goods" (Md. Code Ann., Com. Law §13-301(9)(i)).

3199.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting,

omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3200.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3201.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3202.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Maryland CPA, including:

> (a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)   failing to disclose that the Ranitidine-Containing Products are defective and inherently dangerous in the course of the sale of the Ranitidine-Containing Products; and

(e)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

3203.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3204.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3205.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3206.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3207.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3208.  Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

3209.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the Maryland CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3210.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3211.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3212.  As a result of Defendant's violations of the Maryland CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

## COUNT 144
## Breach of Implied Warranty
## (Md. Code Ann. §2-314)
## (Against Pfizer)

3213.   Maryland Class Representatives Alberta Griffin, Charles Longfield, Ida Adams and Nicholas Hazlett incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3214.   This cause of action is brought on behalf of the Maryland-Pfizer Class (for the purpose of this section, "Class") against Pfizer(for purposes of this Count only, "Defendant").

3215.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Maryland Class Representatives and members of the Maryland Class and was in the business of selling such products.

3216.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3217.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3218.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

3219.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3220.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3221.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

3222.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

3223.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

3224.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 145
### Unjust Enrichment
### (Maryland Law)
### (Against Pfizer)

3225.    Maryland Class Representatives Alberta Griffin, Charles Longfield, Ida Adams and Nicholas Hazlett incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3226.    This cause of action is brought on behalf of the Maryland-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3227.    Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3228.    In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products labels that exceeded the time period during which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3229.    Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products labels that exceeded the time period during which

the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3230. It would be unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3231. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for the value thereof, and therefore restitution or disgorgement of the amount of their unjust enrichment is required.

3232. Plaintiffs and Class members do not have an adequate remedy at law.

### 11. Causes of Action on Behalf of the Michigan-Pfizer Classes

### COUNT 146
### Violation of the Michigan Consumer Protection Act
### (Mich. Comp. Laws Ann. §445.901, *et seq.*)
### (Against Pfizer)

3233. Michigan Class Representatives Jerry Hunt, Kenneth Hix, and Lakisha Wilson incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3234. This cause of action is brought on behalf of the Michigan-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3235. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(d).

3236. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(g).

- 850 -

3237.  The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws Ann. §445.903(1).

3238.  The Michigan CPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Mich. Comp. Laws Ann. §445.903(1)(c));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Mich. Comp. Laws Ann. §445.903(1)(e)); and

(c)     "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented" (Mich. Comp. Laws Ann. §445.903(1)(g)).

3239.  In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3240.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3241.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and

failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3242. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Michigan CPA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

3243. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3244. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3245. Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3246.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3247.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3248.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Michigan CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3249.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3250.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3251.  As a result of Defendant's violations of the Michigan CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Michigan CPA.

<div align="center">

**COUNT 147**
**Unjust Enrichment**
**(Michigan Law)**
**(Against Pfizer)**

</div>

3252.  Michigan Class Representatives Jerry Hunt, Kenneth Hix, and Lakisha Wilson incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3253.  This cause of action is brought on behalf of the Michigan-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3254.  Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3255.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly,

Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3256.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3257.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3258.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3259.   There is no express contract governing this dispute.

3260.   Plaintiffs and Class members do not have an adequate remedy at law.

### 12. Causes of Action on Behalf of the Minnesota-Pfizer Classes

### COUNT 148
### Violation of the Minnesota Prevention of Consumer Fraud Act
### (Minn. Stat. Ann. §325F.68, *et seq.*)
### (Against Pfizer)

3261.  Minnesota Class Representatives Donald Northrup, Roy Armstrong, and John Scholl incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3262.  This cause of action is brought on behalf of the Minnesota-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3263.  Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

3264.  The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

3265.  The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged." Minn. Stat. Ann. §325F.69(1). Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

3266.  In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting,

omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3267.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3268.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3269.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

3270.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3271.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3272.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3273.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3274.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3275.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

3276.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3277.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3278.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3279.   As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

**COUNT 149**
**Breach of Implied Warranty**
**(Minn. Stat. Ann. §336.2-314)**
**(Against Pfizer)**

3280.   Minnesota Class Representatives Donald Northrup, Roy Armstrong, and John Scholl incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3281.   This cause of action is brought on behalf of the Minnesota-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3282.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

3283.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3284.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3285.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

3286.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3287.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3288.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

3289.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

3290.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.   Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

3291.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 150**
**Unjust Enrichment**
**(Minnesota Law)**
**(Against Pfizer)**

3292.   Minnesota Class Representatives Donald Northrup, Roy Armstrong, and John Scholl incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3293.   This cause of action is brought on behalf of the Minnesota-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3294.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3295.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3296.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3297.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3298.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3299.   Plaintiffs and Class members do not have an adequate remedy at law.

### 13.   Causes of Action Brought on Behalf of the Mississippi-Pfizer Classes

**COUNT 151**
**Breach of Implied Warranty**
**(Miss. Code Ann. §75-2-314)**
**(Against Pfizer)**

3300.   Mississippi Class Representatives Beverly Crosby and John Rachal incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3301.   This cause of action is brought on behalf of the Mississippi-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3302.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Mississippi Class Representative and members of the Mississippi Class and was in the business of selling such products.

3303.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3304.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3305.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

3306.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3307.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3308.   Plaintiffs and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

3309.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

3310.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

3311.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 152**
**Unjust Enrichment**
**(Mississippi Law)**
**(Against Pfizer)**

3312.   Mississippi Class Representatives Beverly Crosby and John Rachal incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3313.   This cause of action is brought on behalf of the Mississippi-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3314.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3315.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly,

Plaintiffs and Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

3316.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and was knowingly enriched by its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3317.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3318.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3319.   There is no express contract governing this dispute.

3320.   Plaintiffs and Class members do not have an adequate remedy at law.

14.     **Causes of Action on Behalf of the Missouri-Pfizer Classes**

**COUNT 153**
**Violation of the Missouri Merchandising Practices Act**
**(Mo. Ann. Stat. §407.010, *et seq.*)**
**(Against Pfizer)**

3321.   Missouri Class Representatives Tammy Smith and Ronda Lockett incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3322.   This cause of action is brought on behalf of the Missouri-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3323.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mo. Ann. Stat. §407.010(5).

3324.   Defendant was and is engaged in "[t]rade or commerce" within the meaning of Mo. Ann. Stat. §407.010(7).

3325.   The Missouri Merchandising Practices Act ("Missouri MPA") prohibits "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce."  Mo. Ann. Stat. §407.020(1).

3326.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

- 867 -

3327.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3328.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3329.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Missouri MPA.

3330.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3331.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3332.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3333.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3334.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3335.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Missouri MPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3336.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3337.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

3338.   As a result of Defendant's violations of the Missouri MPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Missouri MPA.

**COUNT 154**
**Breach of Implied Warranty**
**(Mo. Rev. Stat. §400.2-314)**
**(Against Pfizer)**

3339.   Missouri Class Representatives Tammy Smith and Ronda Lockett incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3340.   This cause of action is brought on behalf of the Missouri-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3341.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Missouri Class Representative and members of the Missouri Class and was in the business of selling such products.

3342.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3343.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3344.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

3345.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3346.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3347.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

3348.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

3349.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

3350.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 155**
**Unjust Enrichment**
**(Missouri Law)**
**(Against Pfizer)**

</div>

3351.   Missouri Class Representatives Tammy Smith and Ronda Lockett incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3352.   This cause of action is brought on behalf of the Missouri-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3353.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3354.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the

products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3355.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3356.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3357.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3358.   There is no express contract governing this dispute.

3359.   Plaintiffs and Class members do not have an adequate remedy at law.

15.     **Causes of Action on Behalf of the Nebraska-Pfizer Classes**

**COUNT 156**
**Violation of the Nebraska Consumer Protection Act**
**(Neb. Rev. Stat. Ann. §59-1601, *et seq.*)**
**(Against Pfizer)**

3360.   Nebraska Class Representative Gaylord Stauffer incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3361.   This cause of action is brought on behalf of the Nebraska-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3362.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Neb. Rev. Stat. Ann. §59-1601(1).

3363.   The Ranitidine-Containing Products are "[a]ssets" within the meaning of Neb. Rev. Stat. Ann. §59-1601(3).

3364.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Neb. Rev. Stat. Ann. §59-1601(2).

3365.   The Nebraska Consumer Protection Act ("Nebraska CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Neb. Rev. Stat. Ann. §59-1602.

3366.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nebraska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3367.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nebraska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3368.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nebraska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3369.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Nebraska CPA.

3370.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3371.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3372.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3373.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3374.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3375.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Nebraska CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3376.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.   Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3377.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3378.   As a result of Defendant's violations of the Nebraska CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Nebraska CPA.

## COUNT 157
### Breach of Implied Warranty
### (Neb. U.C.C. §2-314)
### (Against Pfizer)

3379.   Nebraska Class Representative Gaylord Stauffer incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3380.   This cause of action is brought on behalf of the Nebraska-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3381.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Nebraska Class Representatives and members of the Nebraska Class and was in the business of selling such products.

3382.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3383.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3384.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

3385.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3386.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3387.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

3388.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

3389.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

3390.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 158**
**Unjust Enrichment**
**(Nebraska Law)**
**(Against Brand Manufacturer Defendant Pfizer)**

</div>

3391.   Nebraska Class Representative Gaylord Stauffer incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3392.   This cause of action is brought on behalf of the Nebraska-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3393.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3394.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and,

thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3395. Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3396. It is unjust and unfair for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3397. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3398. There is no express contract governing this dispute.

3399. Plaintiff and Class members do not have an adequate remedy at law.

**16.      Causes of Action on Behalf of the Nevada-Pfizer Classes**

**COUNT 159**
**Violation of the Nevada Deceptive Trade Practices Act**
**(Nev. Rev. Stat. Ann. §598.0903, *et seq.*)**
**(Against Pfizer)**

3400.   Nevada Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3401.   This cause of action is brought on behalf of the Nevada-Pfizer Class (for the purpose of this section, "Class") against Pfizer with respect to OTC Zantac purchases (for purposes of this Count only, "Defendant").

3402.   The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), prohibits the use of "'deceptive trade practices' . . . in the course of . . . business or occupation."  Nev. Rev. Stat. Ann. §598.0915.

3403.   The Nevada DTPA makes unlawful specific acts, including:

(a)      "[k]nowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith" (Nev. Rev. Stat. Ann. §598.0915(5));

(b)      "[r]epresent[ing] that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model" (Nev. Rev. Stat. Ann. §598.0915(7));

(c)      "[a]dvertis[ing] goods or services with intent not to sell or lease them as advertised" (Nev. Rev. Stat. Ann. §598.0915(9));

(d)      "[k]nowingly mak[ing] any other false representation in a transaction" (Nev. Rev. Stat. Ann. §598.0915(15)); and

(e)      "[f]ail[ing] to disclose a material fact in connection with the sale or lease of goods or services" (Nev. Rev. Stat. Ann. §598.0923(2)).

3404.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3405.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3406.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3407.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Nevada DTPA, including:

>    (a)    representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

      (b)      representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

      (c)      advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

      (d)      failing to disclose the NDMA danger in connection with the sale of the Ranitidine-Containing Products; and

      (e)      engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

3408.  Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3409.  Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3410.  Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3411.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3412.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3413.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Nevada DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3414.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3415.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

3416.   As a result of Defendant's violations of the Nevada DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Nevada DTPA.

## COUNT 160
## Unjust Enrichment
## (Nevada Law)
## (Against Pfizer)

3417.   Nevada Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3418.   This cause of action is brought on behalf of the Nevada-Pfizer Class (for the purpose of this section, "Class") against Brand Manufacturer Defendant Pfizer with respect to Zantac OTC purchases (for purposes of this Count only, "Defendant").

3419.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3420.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products labels that exceeded the time period during which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3421.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and

that included expiration dates on the products labels that exceeded the time period during which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3422.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3423.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and therefore restitution or disgorgement of the amount of their unjust enrichment is required.

3424.   There is no express contract governing this dispute.

3425.   Plaintiff and Class members do not have an adequate remedy at law.

### 17.   Causes of Action on Behalf of the New York-Pfizer Classes

**COUNT 161**
**Violation of New York Deceptive Acts and Practices Act**
**(N.Y. Gen. Bus. Law §349)**
**(Against Pfizer)**

3426.   New York Class Representatives Dan Zhovtis and Mary McCullen incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3427.   This cause of action is brought on behalf of the New York-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3428.   Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

3429.   The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §349(a).

3430.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3431.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3432.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3433.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

3434.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3435.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3436.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3437.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3438.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3439.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3440.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3441.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3442.   As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

<div align="center">

**COUNT 162**
**Violation of the New York False Advertising Act**
**(N.Y. Gen. Bus. Law §350)**
**(Against Pfizer)**

</div>

3443.   New York Class Representatives Dan Zhovtis and Mary McCullen incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911as though fully set forth herein.

3444.   This cause of action is brought on behalf of the New York-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3445.   Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

3446.   The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §350.  False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

3447.   Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

3448.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3449.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and

failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3450.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3451.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

3452.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3453.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3454.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of

Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3455. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3456. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3457. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3458. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3459.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3460.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

3461.   As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

**COUNT 163**
**Breach of Implied Warranty**
**(N.Y. U.C.C. Law §2-314)**
**(Against Pfizer)**

3462.   New York  Class Representatives Dan Zhovtis and Mary McCullen incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3463.   This cause of action is brought on behalf of the New York-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3464.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representative and members of the New York Class and was in the business of selling such products.

3465.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3466.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3467.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

3468.  Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3469.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3470.   Plaintiffs and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

3471.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

3472.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

3473.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 164**
**Unjust Enrichment**
**(New York Law)**
**(Against Pfizer)**

3474.   New York Class Representatives Dan Zhovtis and Mary McCullen incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3475.   This cause of action is brought on behalf of the New York-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3476.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3477.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3478.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3479.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the

Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3480.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3481.   Plaintiffs and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 18. Causes of Action on Behalf of the North Carolina-Pfizer Classes

### COUNT 165
### Violation of the North Carolina Unfair and Deceptive Trade Practices Act
### (N.C. Gen. Stat. Ann. §75-1.1, *et seq.*)
### (Against Pfizer)

3482.   North Carolina Class Representative Dennis Robbins incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3483.   This cause of action is brought on behalf of the North Carolina-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3484.   Defendant was and is engaged in "commerce" within the meaning of N.C. Gen. Stat. Ann. §75-1.1(b).

3485.   The North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," N.C. Gen. Stat. Ann. §75-1.1(a), and provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the law.  N.C. Gen. Stat. Ann. §75-16.

3486.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3487.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3488.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3489.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the North Carolina UDTPA.

3490.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3491.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3492.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3493.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3494.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3495.   Plaintiff and the Class members were aggrieved by Defendant's violations of the North Carolina UDTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3496.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3497.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3498.   As a result of Defendant's violations of the North Carolina UDTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the North Carolina UDTPA.

**COUNT 166**
**Breach of Implied Warranty**
**(N.C. Gen. Stat. Ann. §25-2-314)**
**(Against Pfizer)**

3499.   North Carolina Class Representative Dennis Robbins incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3500.   This cause of action is brought on behalf of the North Carolina-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3501.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to North Carolina Class Representatives and members of the North Carolina Class and was in the business of selling such products.

3502.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3503.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3504.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

3505.  Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3506.  Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3507.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

3508.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

3509.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

3510.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 167**
**Unjust Enrichment**
**(North Carolina Law)**
**(Against Pfizer)**

3511.   North Carolina Class Representatives Dennis Robbins incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3512.   This cause of action is brought on behalf of the North Carolina-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3513.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3514.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3515.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3516.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3517.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3518.   Plaintiff and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 19.   Causes of Action on Behalf of the North Dakota-Pfizer Classes

**COUNT 168**
**Violation of the North Dakota Consumer Fraud Act**
**(N.D. Cent. Code Ann. §51-15-02)**
**(Against Pfizer)**

3519.   North Dakota Class Representative John Scholl incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3520.   This cause of action is brought on behalf of the North Dakota-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3521.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of N.D. Cent. Code Ann. §51-15-01(4).

3522.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of N.D. Cent. Code Ann. §51-15-01(3).

3523.   The North Dakota Consumer Fraud Act ("North Dakota CFA") prohibits "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby."  N.D. Cent. Code Ann. §51-15-02.

3524.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Dakota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3525.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Dakota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3526.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Dakota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3527.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the North Dakota CFA.

3528.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3529.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3530.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3531.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3532.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3533.   Plaintiff and the Class members were aggrieved by Defendant's violations of the North Dakota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3534.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3535.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3536.   As a result of Defendant's violations of the North Dakota CFA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the North Dakota CFA.

<div align="center">

**COUNT 169**
**Unjust Enrichment**
**(North Dakota Law)**
**(Against Pfizer)**

</div>

3537.   North Dakota Class Representative John Scholl incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3538.   This cause of action is brought on behalf of the North Dakota-Pfizer Class (for the purpose of this section, "Class") against Brand Manufacturer Defendant Pfizer (for purposes of this Count only, "Defendant").

3539.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

3540.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3541.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and was knowingly enriched by its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3542.   Defendant's enrichment – the monies obtained from Plaintiff's and Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiff's and Class members'

impoverishment – *i.e.*, Plaintiff's and Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

3543.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3544.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3545.   Plaintiff and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 20.   Causes of Action on Behalf of the Ohio-Pfizer Classes

<div align="center">

**COUNT 170**
**Breach of Implied Warranty**
**(Ohio Rev. Code Ann. §1302.27)**
**(Against Pfizer)**

</div>

3546.   Ohio Class Representatives Michael Galloway and Chris Troyan incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3547.   This cause of action is brought on behalf of the Ohio-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3548.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Ohio Class Representatives and members of the Ohio Class and was in the business of selling such products.

3549.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3550.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3551.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

3552.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3553.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3554.   Plaintiffs and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

3555.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

3556.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

3557.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 171**
**Unjust Enrichment**
**(Ohio Law)**
**(Against Pfizer)**

3558.   Ohio Class Representatives Michael Galloway and Chris Troyan incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3559.   This cause of action is brought on behalf of the Ohio Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3560.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3561.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3562.  Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3563.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3564.  Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3565.   Plaintiffs and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 21.   Causes of Action on Behalf of the Oklahoma-Pfizer Classes

### COUNT 172
### Violation of the Oklahoma Consumer Protection Act
### (Okla. Stat. tit. 15, §751, *et seq.*)
### (Against Pfizer)

3566.   Oklahoma Class Representative Billy Naab incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3567.   This cause of action is brought on behalf of the Oklahoma-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3568.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Okla. Stat. tit. 15, §752(1).

3569.   Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Okla. Stat. tit. 15, §752(2).

3570.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Okla. Stat. tit. 15, §752(7).

3571.   The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits numerous unlawful acts, including misleading representations, false advertisements, and false statements. Okla. Stat. tit. 15, §753.   The Oklahoma CPA defines "[d]eceptive trade practice" as "a misrepresentation, omission or other practice that has deceived or . . . mislead a person to the detriment of that person."   Okla. Stat. tit. 15, §752(13).   The Oklahoma CPA defines "[u]nfair trade practice" as "any practice which offends established public policy or if the practice is

immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Okla. Stat.

tit. 15, §752(14).

3572.   The Oklahoma CPA makes unlawful specific acts, including:

(a)   "[m]ak[ing] a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction" (Okla. Stat. tit. 15, §753(5));

(b)   "[r]epresent[ing], knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another" (Okla. Stat. tit. 15, §753(7));

(c)   "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised" (Okla. Stat. tit. 15, §753(8)); and

(d)   "[c]ommit[ing] an unfair or deceptive trade practice as defined in Section 752" (Okla. Stat. tit. 15, §753(20)).

3573.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3574.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3575.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3576.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Oklahoma CPA, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

3577.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3578.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3579.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of

Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3580.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3581.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3582.   Plaintiff and the Class members were aggrieved by Defendant's violations of Oklahoma CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3583.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3584.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3585.   As a result of Defendant's violations of the Oklahoma CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Oklahoma CPA.

**COUNT 173**
**Breach of Implied Warranty**
**(Okla. Stat. tit. 12A §2-314)**
**(Against Pfizer)**

3586.   Oklahoma Class Representative Billy Naab incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3587.   This cause of action is brought on behalf of the Oklahoma-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3588.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Oklahoma Class Representative and members of the Oklahoma Class and was in the business of selling such products.

3589.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3590.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3591.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

3592.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3593.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3594.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

3595.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

3596.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

3597.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 174**
**Unjust Enrichment**
**(Oklahoma Law)**
**(Against Pfizer)**

3598.   Oklahoma Class Representative Billy Naab incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3599.   This cause of action is brought on behalf of the Oklahoma-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3600.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3601.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly,

Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3602.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and was knowingly enriched by its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3603.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3604.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3605.   Plaintiffs and Class members do not have an adequate remedy at law.

22.   **Causes of Action on Behalf of Oregon-Pfizer Classes**

**COUNT 175**
**Violation of the Oregon Unlawful Trade Practices Act**
**(Or. Rev. Stat. Ann. §646.605, *et seq.*)**
**(Against Pfizer)**

3606.   Oregon Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3607.   This cause of action is brought on behalf of the Oregon-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3608.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Or. Rev. Stat. Ann. §646.605(4).

3609.   The Ranitidine-Containing Products are "goods" within the meaning of Or. Rev. Stat. Ann. §646.605(6).

3610.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Or. Rev. Stat. Ann. §646.605(8).

3611.   The Oregon Unlawful Trade Practices Act ("Oregon UTPA") prohibits "unlawful practice . . . in the course of the person's business."  Or. Rev. Stat. Ann. §646.608(1).

3612.   The Oregon UTPA makes unlawful specific acts, including:

(a)   "[r]epresent[ing] that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have" (Or. Rev. Stat. Ann. §646.608(1)(e));

(b)   "[r]epresent[ing] that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if the real estate, goods or services are of another" (Or. Rev. Stat. Ann. §646.608(1)(g));

     (c)     "[a]dvertis[ing] real estate, goods or services with intent not to provide the real estate, goods or services as advertised" (Or. Rev. Stat. Ann. §646.608(1)(i)); and

     (d)     "[e]ngag[ing] in any other unfair or deceptive conduct in trade or commerce" (Or. Rev. Stat. Ann. §646.608(1)(u)).

3613.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oregon UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3614.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oregon UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3615.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oregon UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3616.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Oregon UTPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

3617.  Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3618.  Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3619.  Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3620.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii)

the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3621.  The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3622.  Plaintiff and the Class members were aggrieved by Defendant's violations of the Oregon UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3623.  Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3624.  Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3625.  As a result of Defendant's violations of the Oregon UTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Oregon UTPA.

**COUNT 176**
**Breach of Implied Warranty**
**(Or. Rev. Stat. §72.3140)**
**(Against Pfizer)**

3626.  Oregon Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3627.  This cause of action is brought on behalf of the Oregon-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3628.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Oregon Class Representatives and members of the Oregon Class and was in the business of selling such products.

3629.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3630.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3631.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

3632.  Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3633.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3634.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

3635.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

3636.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

3637.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 177**
**Unjust Enrichment**
**(Oregon Law)**
**(Against Pfizer)**

3638.   Oregon Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3639.   This cause of action is brought on behalf of the Oregon-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3640.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

3641.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3642.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3643.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3644.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3645.   There is no express contract governing this dispute.

3646.   Plaintiff and Class members do not have an adequate remedy at law.

**23.    Causes of Action Brought on Behalf of Puerto Rico-Pfizer Classes**

**COUNT 178**
**Breach of Implied Warranty**
**(P.R. Laws Ann. tit. 31, §3841)**
**(Against Pfizer)**

3647.   Puerto Rico Class Representatives Gloria Colon and Sonia Diaz incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3648.   This cause of action is brought on behalf of the Puerto Rico-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3649.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Puerto Rico Class Representatives and members of the Puerto Rico Class and was in the business of selling such products.

3650.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3651.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3652.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

3653.  Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3654.  Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3655.  Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

3656. Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

3657. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

3658. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 179
### Unjust Enrichment
### (Puerto Rico Law)
### (Against Brand Manufacturer Defendant Pfizer)

3659. Puerto Rico Class Representatives Gloria Colon and Sonia Diaz incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3660. This cause of action is brought on behalf of the Puerto Rico-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3661. Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3662. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products,

which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3663. Defendant readily accepted and retained these benefits from Plaintiffs and Class members and was knowingly enriched by its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3664. Defendant's enrichment – the monies obtained from Plaintiffs' and Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and Class members' impoverishment – *i.e.*, Plaintiffs' and Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

3665. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3666.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3667.   Plaintiffs and Class members do not have an adequate remedy at law.

### 24.   Causes of Action on Behalf of Tennessee-Pfizer Classes

### COUNT 180
### Violation of the Tennessee Consumer Protection Act of 1977
### (Tenn. Code Ann. §47-18-101, *et seq.*)
### (Against Pfizer)

3668.   Tennessee Class Representatives Dale Hunter and Eva Broughton incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3669.   This cause of action is brought on behalf of the Tennessee-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3670.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tenn. Code Ann. §47-18-103(14).

3671.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tenn. Code Ann. §47-18-103(3).

3672.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Tenn. Code Ann. §47-18-103(8).

3673.   Defendant was and is engaged in "[t]rade" or "commerce" or "consumer transaction[s]" within the meaning of Tenn. Code Ann. §47-18-103(20).

3674.   The Tennessee Consumer Protection Act of 1977 ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce."  Tenn. Code Ann. §47-18-104(a).

3675.  The Tennessee CPA makes unlawful specific acts, including:

(a)  "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tenn. Code Ann. §47-18-104(b)(5));

(b)  "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (Tenn. Code Ann. §47-18-104(b)(7)); and

(c)  "[a]dvertising goods or services with intent not to sell them as advertised" (Tenn. Code Ann. §47-18-104(b)(9)).

3676.  In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3677.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3678.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably

dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3679.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Tennessee CPA, including:

   (a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

   (b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

   (c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

3680.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3681.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3682.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3683.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3684.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3685.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Tennessee CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3686.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3687.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3688.   As a result of Defendant's violations of the Tennessee CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Tennessee CPA.

**COUNT 181**
**Breach of Implied Warranty**
**(Tenn. Code Ann. §47-2-314)**
**(Against Pfizer)**

3689.   Tennessee Class Representatives Dale Hunter and Eva Broughton incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3690.   This cause of action is brought on behalf of the Tennessee-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3691.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Tennessee Class Representatives and members of the Tennessee Class and was in the business of selling such products.

3692.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3693.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3694.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

3695.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3696.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3697.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

3698.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

3699.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

3700.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 182**
**Unjust Enrichment**
**(Tennessee Law)**
**(Against Pfizer)**

3701.   Tennessee Class Representatives Dale Hunter and Eva Broughton incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3702.   This cause of action is brought on behalf of the Tennessee-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3703.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3704.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3705.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of

NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3706.  It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3707.  Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3708.  There is no existing, enforceable contract governing this dispute.

3709.  Plaintiffs and Class members do not have an adequate remedy at law.

### 25.  Causes of Action on Behalf of the Texas-Pfizer Classes

### COUNT 183
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
### (Tex. Bus. & Com. Code Ann. §17.41, *et seq.*)
### (Against Pfizer)

3710.  Texas Class Representatives Marianella Villanueva, Ronda Lockett, Sylvia Yoshida, and Tammy Smith incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3711.  This cause of action is brought on behalf of the Texas-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3712.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

3713.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

3714.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

3715.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

3716.   The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

3717.   The Texas DTPA makes unlawful specific acts, including:

   (a)   "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

   (b)   "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

   (c)   "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

3718.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-

Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3719.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3720.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3721.  Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

> (a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

> (b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

> (c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

3722.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3723.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3724.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3725.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3726.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3727. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

3728. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3729. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3730. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

3731. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public. In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the

requisite time period, Plaintiffs seek all damages and relief to which Plaintiff and the Class members are entitled.

3732.   As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

<div align="center">

**COUNT 184**
**Breach of Implied Warranty**
**(Tex. Bus. & Com. Code Ann. §2-314)**
**(Against Pfizer)**

</div>

3733.   Texas Class Representatives Marianella Villanueva, Ronda Lockett, Sylvia Yoshida, and Tammy Smith incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3734.   This cause of action is brought on behalf of the Texas-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3735.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

3736.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3737.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3738.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

3739.  Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3740.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3741.  Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

3742.  Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

3743.  Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

3744.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 185**
**Unjust Enrichment**
**(Texas Law)**
**(Against Pfizer)**

3745.   Texas Class Representatives Marianella Villanueva, Ronda Lockett, Sylvia Yoshida, and Tammy Smith incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3746.   This cause of action is brought on behalf of the Texas-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3747.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3748.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly,

Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3749.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3750.   It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3751.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3752.   Plaintiffs and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

26.     **Causes of Action on Behalf of Vermont-Pfizer Classes**

### COUNT 186
### Violation of the Vermont Consumer Fraud Act
### (Vt. Stat. Ann. tit. 9, §2451, *et seq.*)
### (Against Pfizer)

3753.   Vermont Class Representative Ronald Ragis incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3754.   This cause of action is brought on behalf of the Vermont-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3755.   Defendant is a "[s]eller" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(c).

3756.   Plaintiff and the Class members are "[c]onsumer[s]" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(a).

3757.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(b).

3758.   The Vermont Consumer Fraud Act ("Vermont CFA") prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce."  Vt. Stat. Ann. tit. 9, §2453(a).

3759.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Vermont CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3760. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Vermont CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3761. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Vermont CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3762. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Vermont CFA.

3763. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3764. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3765. Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3766. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffsand the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3767. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3768. Plaintiff and the Class members were aggrieved by Defendant's violations of the Vermont CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3769. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3770.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3771.   As a result of Defendant's violations of the Vermont CFA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Vermont CFA.

**COUNT 187**
**Breach of Implied Warranty**
**(Vt. Stat. Ann. tit. 9A §2-314)**
**(Against Pfizer)**

3772.   Vermont Class Representative Ronald Ragis incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3773.   This cause of action is brought on behalf of the Vermont-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3774.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Vermont Class Representatives and members of the Vermont Class and was in the business of selling such products.

3775.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3776.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3777.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

3778.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3779.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3780.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

3781.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

3782.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

3783.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 27.   Causes of Action on Behalf of the Washington-Pfizer Classes

### COUNT 188
### Violation of the Washington Consumer Protection Act
### (Wash. Rev. Code Ann. §19.86.010, *et seq.*)
### (Against Pfizer)

3784.   Washington Class Representatives Earlene Green, Robert Dewitt, Steve Fischer, and Jonathan Ferguson incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3785.   This cause of action is brought on behalf of the Washington-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3786.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Wash. Rev. Code Ann. §19.86.010(1).

3787.   The Ranitidine-Containing Products are "[a]ssets" within the meaning of Wash. Rev. Code Ann. §19.86.010(3).

3788.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Wash. Rev. Code Ann. §19.86.010(2).

3789.   The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. §19.86.020.

3790.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3791.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3792.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3793.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington CPA.

3794.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3795.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3796.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3797.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3798.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3799.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Washington CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3800.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3801.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3802.   On June 22, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Wash. Rev. Code Ann. §19.86.095 to the Attorney General of the State of Washington.

3803.   As a result of Defendant's violations of the Washington CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Washington CPA.

**COUNT 189**
**Breach of Implied Warrant**
**(Wash. Rev. Code §62A.2-314)**
**(Against Pfizer)**

3804.   Washington Class Representatives Earlene Green, Robert Dewitt, Steve Fischer, and Jonathan Ferguson incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3805.   This cause of action is brought on behalf of the Washington-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3806.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Washington Class Representatives and members of the Washington Class and was in the business of selling such products.

3807.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3808.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3809.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

3810.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3811.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3812.  Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

3813.  Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

3814.  Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

3815.  As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 190**
**Unjust Enrichment**
**(Washington Law)**
**(Against Pfizer)**

3816.   Washington Class Representatives Earlene Green, Robert Dewitt, Steve Fischer, and Jonathan Ferguson incorporate the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3817.   This cause of action is brought on behalf of the Washington-Pfizer Class (for the purpose of this section, "Class") against Brand Manufacturer Defendant Pfizer (for purposes of this Count only, "Defendant").

3818.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

3819.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3820.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and

that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3821.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3822.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3823.   There is no express contract governing this dispute.

3824.   Plaintiffs and Class members do not have an adequate remedy at law.

### 28.     Causes of Action on Behalf of the West Virginia-Pfizer Classes

### COUNT 191
### Breach of Implied Warranty
### (W. Va. Code §46-2-314)
### (Against Pfizer)

3825.   West Virginia Class Representative Ida Adams incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3826.   This cause of action is brought on behalf of the West Virginia-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3827.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to West Virginia Class Representatives and members of the West Virginia Class and was in the business of selling such products.

3828.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3829.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3830.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

3831.  Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3832.  Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3833.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

3834.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

3835.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### COUNT 192
### Unjust Enrichment
### (West Virginia Law)
### (Against Pfizer)

3836.   West Virginia Class Representative Ida Adams incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3837.   This cause of action is brought on behalf of the West Virginia-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3838.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

3839.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3840.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3841.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3842.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3843.   There is no express contract governing this dispute.

3844.   Plaintiff and Class members do not have an adequate remedy at law.

### 29.     Causes of Action on Behalf of the Wisconsin-Pfizer Classes

### COUNT 193
### Violation of the Wisconsin Deceptive Trade Practices Act
### (Wis. Stat. Ann. §100.18, *et seq.*)
### (Against Pfizer)

3845.   Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3846.   This cause of action is brought on behalf of the Wisconsin-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3847.   Defendant is a "person, firm, corporation or association" within the meaning of Wis. Stat. Ann. §100.18(1).

3848.   Plaintiff and the Class members are members of "the public" within the meaning of Wis. Stat. Ann. §100.18(1).

3849.   The Ranitidine-Containing Products are "merchandise" within the meaning of Wis. Stat. Ann. §100.18(1).

3850.   The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits any "assertion, representation or statement of fact which is untrue, deceptive or misleading."  Wis. Stat. Ann. §100.18(1).

3851. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Wisconsin DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3852. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Wisconsin DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3853. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Wisconsin DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3854. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Wisconsin DTPA.

3855.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3856.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3857.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3858.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3859.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3860.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Wisconsin DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3861.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3862.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3863.   As a result of Defendant's violations of the Wisconsin DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Wisconsin DTPA.

### COUNT 194
### Breach of Implied Warranty
### (Wis. Stat. Ann. §402.314)
### (Against Pfizer)

3864.   Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3865.   This cause of action is brought on behalf of the Wisconsin-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3866.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Wisconsin Class Representative and members of the Wisconsin Class and was in the business of selling such products.

3867.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3868.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3869.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

3870.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3871.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3872.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

3873.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

3874.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

3875.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 195**
**Unjust Enrichment**
**(Wisconsin Law)**
**(Against Pfizer)**

3876.   Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3877.   This cause of action is brought on behalf of the Wisconsin-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

- 969 -

3878.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3879.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3880.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3881.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3882.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3883.   There is no express contract governing this dispute.

3884.   Plaintiff and Class members do not have an adequate remedy at law.

### 30.      Causes of Action on Behalf of the Wyoming-Pfizer Classes

**COUNT 196**
**Breach of Implied Warranty**
**(Wyo. Stat. §34.1-2-314)**
**(Against Pfizer)**

3885.   Wyoming Class Representative Charles Longfield incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3886.   This cause of action is brought on behalf of the Wyoming-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3887.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Wyoming Class Representatives and members of the Wyoming Class and was in the business of selling such products.

3888.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3889.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3890.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

3891.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3892.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

3893.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

3894.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

3895.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

3896.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 197**
**Unjust Enrichment**
**(Wyoming Law)**
**(Against Pfizer)**

3897.   Wyoming Class Representative Charles Longfield incorporates the preceding allegations in paragraphs 14-15, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3898.   This cause of action is brought on behalf of the Wyoming-Pfizer Class (for the purpose of this section, "Class") against Pfizer (for purposes of this Count only, "Defendant").

3899.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3900.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  ccordingly,

Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3901.   Defendant readily accepted, retained, and enjoyed these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3902.   Defendant knew that Plaintiff and Class members reasonably expected to receive safe and effective medications.

3903.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3904.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3905.   Plaintiff and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### C.     Causes of Action Against BI

3906.   For the purposes of the subsequent causes of action against Defendant BI, Plaintiffs are incorporating the following allegations by reference: paragraphs 2-8 (corporate information);

273-277 (jurisdiction and venue); 279-303 (development of brand Zantac); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469 (requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 868-894 (misrepresentations or omissions of material fact in labeling); 895-911 (misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

3907.   Plaintiff identified in the table below bring claims against Defendant BI on behalf of themselves and their respective State Classes under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| **Plaintiff Names** | **State(s) of Residence of Residence** |
|---|---|
| Anthony McGhee | Alabama |
| Andy Green Jr. | Arkansas |
| Tina Culclager | Arkansas |
| Tangie Sims | Arizona |
| Golbenaz Bakhtiar | California |
| Richard Obrien | California |
| Virginia Aragon | California |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Angel Cordero | Connecticut |
| Angel Vega | Connecticut; Montana |
| Clifton McKinnon | Florida |

- 975 -

| | |
|---|---|
| Gustavo Velasquez | Florida |
| Jeannie Black | Florida |
| Joshua Winans | Florida |
| Marva Mccall | Florida |
| Michael Tomlinson | Florida |
| Ricardo Moròn | Florida |
| Sharon Tweg | Florida |
| Karen Foster | Florida |
| Kathy Jeffries | Georgia |
| Tyrone Houston | Georgia |
| Charles Longfield | Iowa; Maryland; Wyoming |
| Denise Guy | Illinois |
| Heather Re | Illinois |
| Renee Chatman | Illinois |
| Vickie Anderson | Illinois |
| Alyson Humphrey | Indiana |
| Rebecca Sizemore | Indiana |
| Teresa Dowler | Indiana |
| Tracy Wells | Indiana |
| Janet Asbury | Kentucky |
| Randy Jones | Louisiana |
| Alberta Griffin | Maryland |
| Michelle Smith | Massachusetts |
| Jennifer Bond | Massachusetts; New Hampshire |
| Rafael Bermudez | Massachusetts; New Hampshire |
| Jerry Hunt | Michigan |
| Jody Beal | Michigan |
| Lakisha Wilson | Michigan |
| Brad Hoag | Minnesota |

| Donald Northrup | Minnesota |
|---|---|
| John Scholl | Minnesota |
| John Rachal | Mississippi |
| Antrenise Campbell | Missouri |
| Lorie Kendall-Songer | Missouri |
| Beverly Crosby | Mississippi |
| Dennis Robbins | North Carolina |
| Patricia Frazier | North Carolina |
| Sharon Parks | North Carolina |
| Teresa Lee | North Carolina |
| Gaylord Stauffer | Nebraska |
| James Adamo | New Jersey |
| Lynn White | New Jersey |
| Mary McMillian | New Jersey |
| Mary Moronski | New Jersey |
| Sayed Eldomiaty | New Jersey |
| Ernesto Sanchez | New Mexico |
| George Tapia | New Mexico |
| Cesar Pinon | Nevada |
| Benny Fazio | New York |
| Francis Neary | New York |
| Glorimar Rodriguez | New York |
| Joseph Mcpheter | New York |
| Mary McCullen | New York |
| Migdalia Kinney | New York |
| Richard Froehlich | New York |
| Roy Armstrong | New York, Alaska, Minnesota, Florida, Georgia |
| Dan Zhovtis | New York; Virginia |
| Chris Troyan | Ohio |

| | |
|---|---|
| Michael Galloway | Ohio |
| Patricia Hess | Ohio |
| Demarco Grayson | Oklahoma |
| Billy Naab | Oklahoma; Washington; Idaho |
| Kristi Ledbetter | Oregon |
| Nicholas Hazlett | Pennsylvania, Maryland |
| Gloria Colon | Puerto Rico |
| Sonia Diaz | Puerto Rico |
| Michael Futrell | South Carolina |
| Dale Hunter | Tennessee |
| Eva Broughton | Tennessee |
| Kenneth Hix | Tennessee; Michigan |
| Ronda Lockett | Texas |
| Agapito It Aleman | Texas |
| Gina Martinez | Texas |
| Liliana Del Valle | Texas |
| Maria Eames | Texas |
| Sylvia Yoshida | Texas |
| Marianella Villanueva | Texas; South Carolina |
| Teresa Waters | Utah |
| Cheryl Banks | Virginia |
| Ronald Ragis | Vermont; Florida |
| Jonathan Ferguson | Washington |
| Earlene Green | Washington |
| Dave Garber | Washington |
| Robert Dewitt | Washington |
| Wendy Quezaire | Wisconsin |
| Ida Adams | West Virginia; Maryland |

1.      **Causes of Action on Behalf of the Alabama-BI Classes**

**COUNT 198**
**Violation of the Alabama Deceptive Trade Practices Act**
**(Ala. Code §8-19-1, *et seq.*)**
**(Against BI)**

3908.   Alabama Class Representative Anthony McGhee incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3909.   This cause of action is brought on behalf of the Alabama-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

3910.   Defendant, Plaintiff, and the Class members are "person[s]" within the meaning of Ala. Code §8-19-3(5).

3911.   Plaintiff and the Class members are "consumer[s]" within the meaning of Ala. Code §8-19-3(2).

3912.   The Ranitidine-Containing Products are "goods" within the meaning of Ala. Code §8-19-3(3).

3913.   Defendant was and is engaged in "trade or commerce" within the meaning of Ala. Code §8-19-3(8).

3914.   The Alabama Deceptive Trade Practices Act ("Alabama DTPA") prohibits "deceptive acts or practices in the conduct of any trade or commerce." Ala. Code §8-19-5.

3915.   The Alabama DTPA makes unlawful specific acts, including:

(a)      "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have" (Ala. Code §8-19-5(5));

(b)      "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Ala. Code §8-19-5(7));

     (c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Ala. Code §8-19-5(9)); and

     (d)     "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce" (Ala. Code §8-19-5(27)).

3916.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Alabama DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3917.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Alabama DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3918.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Alabama DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3919.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive business practices prohibited by the Alabama DTPA, including:

      (a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

      (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

      (c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

      (d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

3920.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3921.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3922.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3923.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii)

the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3924.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3925.  Plaintiff and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

3926.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Alabama DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3927.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3928.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

3929.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Ala. Code §8-19-10(e) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

3930.   As a result of Defendant's violations of the Alabama DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Alabama DTPA.

### COUNT 199
### Unjust Enrichment
### (Alabama Law)
### (Against BI)

3931.   Alabama Class Representative Anthony McGhee incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3932.   This cause of action is brought on behalf of the Alabama-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

3933.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3934.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3935.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3936.   It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3937.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3938.   Plaintiff and Class members do not have an adequate remedy at law.

### 2.    Causes of Action on Behalf of the Alaska-BI Classes

### COUNT 200
### Violation of the Alaska Unfair Trade Practices and Consumer Protection Act
#### (Alaska Stat. Ann. §45.50.471, *et seq.*)
#### (Against BI)

3939.   Alaska Class Representative Roy Armstrong incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3940.   This cause of action is brought on behalf of the Alaska-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

3941.   Plaintiff and the Class members are "consumer[s]" within the meaning of Alaska Stat. Ann. §45.50.561(a)(4).

3942.   The Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce."  Alaska Stat. Ann. §45.50.471(a).

3943.   The Alaska CPA makes unlawful specific acts, including:

(a)    "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Alaska Stat. Ann. §45.50.471(b)(4));

(b)    "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Alaska Stat. Ann. §45.50.471(b)(6));

(c)    "advertising goods or services with intent not to sell them as advertised" (Alaska Stat. Ann. §45.50.471(b)(8));

(d)    "engaging in any other conduct creating a likelihood of confusion or of misunderstanding and that misleads, deceives, or damages a buyer or a competitor in connection with the sale or advertisement of goods or services" (Alaska Stat. Ann. §45.50.471(b)(11)); and

(e)    "using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression,

or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived, or damaged" (Alaska Stat. Ann. §45.50.471(b)(12)).

3944.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Alaska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3945.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Alaska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3946.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Alaska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3947.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Alaska CPA, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

3948.  Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3949.  Defendant's misrepresentations and omissions regarding the expiration of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3950.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3951.  The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3952.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Alaska CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3953.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3954.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3955.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiff in MDL 2924 sent a notice letter pursuant to Alaska Stat. Ann. §45.50.535(b)(1) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seek all damages and relief to which Plaintiff and the Class members are entitled.

3956.   As a result of Defendant's violations of the Alaska CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Alaska CPA.

## COUNT 201
### Unjust Enrichment or Quasi-Contract
### (Alaska Law)
### (Against BI)

3957.   Alaska Class Representative Roy Armstrong incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3958.   This cause of action is brought on behalf of the Alaska-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

3959.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3960.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

3961.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3962. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3963. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3964. Plaintiff and Class members do not have an adequate remedy at law.

### 3. Causes of Action on Behalf of the Arizona-BI Classes

### COUNT 202
### Violation of the Arizona Consumer Fraud Act
### (Ariz. Rev. Stat. Ann. §44-1521, *et seq.*)
### (Against BI)

3965. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3966. This cause of action is brought on behalf of the Arizona-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

3967. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(6).

3968. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(5).

3969. The Arizona Consumer Fraud Act ("Arizona CFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." Ariz. Rev. Stat. Ann. §44-1522(A).

3970. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Arizona CFA by recklessly, wantonly, knowingly, and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3971. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arizona CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3972. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arizona CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably

dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

3973.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Arizona CFA.

3974.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3975.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

3976.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

3977.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

3978.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

3979.   Plaintiff and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

3980.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Arizona CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

3981.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

3982.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

3983.   As a result of Defendant's violations of the Arizona CFA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

<center>**COUNT 203**
**Unjust Enrichment (Arizona Law)**
**(Against BI)**</center>

3984.   Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3985.   This cause of action is brought on behalf of the Arizona-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

3986.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

3987.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members conferred a financial benefit on Defendant but did not receive their expected benefit therefrom.

3988.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and was knowingly enriched by its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and

<center>- 994 -</center>

that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

3989.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

3990.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

3991.   Plaintiff and Class members do not have an adequate remedy at law.

### 4.        Causes of Action on Behalf of the Arkansas-BI Classes

**COUNT 204**
**Violation of the Arkansas Deceptive Trade Practices Act**
**(Ark. Code Ann. §4-88-101, *et seq.*)**
**(Against BI)**

3992.   Arkansas Class Representatives Andy Green Jr. and Tina Culclager incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

3993.   This cause of action is brought on behalf of the Arkansas-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

3994.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ark. Code Ann. §4-88-102(5).

3995.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Ark. Code Ann. §4-88-102(4).

3996.   The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices."  Ark. Code Ann. §4-88-107(a).

3997.   The Arkansas DTPA makes unlawful specific acts, including:

(a)   "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" (Ark. Code Ann. §4-88-107(a)(1));

(b)   "[a]dvertising the goods or services with the intent not to sell them as advertised" (Ark. Code Ann. §4-88-107(a)(3)); and

(c)   "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" (Ark. Code Ann. §4-88-107(a)(10)).

3998.   The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission . . . ." Ark. Code Ann. §4-88-108(a).

3999.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4000.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products

- 996 -

remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4001.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4002.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Arkansas DTPA, including:

     (a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

     (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

     (c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

     (d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

4003.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4004.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4005.  Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4006.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4007.  The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4008.  Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

4009.  Plaintiffs and the Class members were aggrieved by Defendant's violations of Arkansas DTPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4010.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4011.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

4012.   As a result of Defendant's violations of the Arkansas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

## COUNT 205
### Breach of Implied Warranty
### Ark. Code Ann. §4-2-314
### (Against BI)

4013.   Arkansas Class Representative Andy Green Jr. and Tina Culclager incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4014.   This cause of action is brought on behalf of the Arkansas-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4015.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arkansas Class Representatives and members of the Arkansas Class and was in the business of selling such products.

4016.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4017.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4018.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

4019.  Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4020.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4021.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

4022.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

4023.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

4024.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 206**
**Unjust Enrichment**
**(Arkansas Law)**
**(Against BI)**

4025.   Arkansas Class Representative Andy Green Jr. and Tina Culclager incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4026.   This cause of action is brought on behalf of the Arkansas-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4027.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4028.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4029.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4030.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4031.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4032.   There is no valid, legal, and binding contract governing this dispute.

4033.   Plaintiffs and Class members do not have an adequate remedy at law.

**5.      Causes of Action on Behalf of the California-BI Classes**

**COUNT 207**
**Violation of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code §17200, *et seq.*)**
**(Against BI)**

4034.   California Class Representatives Golbenaz Bakhtiar, Richard O'Brien, and Virginia Aragon incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4035.   This cause of action is brought on behalf of the California-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4036.   Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

4037.   Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

4038.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their

intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4039.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4040.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4041.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL.  These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

4042.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4043.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4044.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4045.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4046.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4047.   Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j),

(n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

4048.   Defendant's conduct also consitutes "unfair" business acts or practies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

4049.   Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, *see* Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

4050.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4051.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4052.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

4053.  Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

## COUNT 208
### Violation of the California False Advertising Law
### (Cal. Bus. & Prof. Code §17500, *et seq.*)
### (Against BI)

4054.  California Class Representatives Golbenaz Bakhtiar, Richard O'Brien, and Virginia Aragon incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4055.  This cause of action is brought on behalf of the California-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4056.  Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

4057.   The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code §17500.

4058.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4059.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4060.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-

Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4061.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

4062.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4063.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4064.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4065.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4066.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4067.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4068.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4069.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

4070.   As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

<div align="center">

**COUNT 209**
**Violation of the California Consumers Legal Remedies Act**
**(Cal. Civ. Code §1750, *et seq.*)**
**(Against BI)**

</div>

4071.   California Class Representatives Golbenaz Bakhtiar, Richard O'Brien, and Virginia Aragon incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4072.   This cause of action is brought on behalf of the California-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4073.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

4074.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

4075.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

4076.   The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person

in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §1770(a).

4077.   The California CLRA makes unlawful specific acts, including:

(a)   "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

(b)   "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

(c)   "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

(d)   "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

4078.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4079.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4080.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4081.  Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

(a)  representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)  representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)  advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)  engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

4082.  Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4083.  Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4084.  Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of

Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4085.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4086.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4087.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

4088.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4089.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

4090.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by various Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.   Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiff and the Class members are entitled.

4091.   Pursuant to Cal. Civ. Code §1780(a), Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.   Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity,

impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

<div align="center">

**COUNT 210**
**Breach of Implied Warranty**
**Cal. Com. Code §2314**
**(Against BI)**

</div>

4092.   California Class Representatives Golbenaz Bakhtiar, Richard O'Brien, and Virginia Aragon incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4093.   This cause of action is brought on behalf of the California-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4094.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the California Class Representatives and members of the California Class and was in the business of selling such products.

4095.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4096.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4097.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

4098.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4099.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4100.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

4101.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

4102.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

4103.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 211
### Unjust Enrichment or Quasi-Contract
### (California Law)
### (Against BI)

4104.   California Class Representatives Golbenaz Bakhtiar, Richard O'Brien, and Virginia Aragon incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4105.   This cause of action is brought on behalf of the California-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4106.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4107.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4108.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of

NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4109.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4110.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4111.   Plaintiffs and Class members do not have an adequate remedy at law.

### 6.   Causes of Action on Behalf of the Colorado-BI Classes

**COUNT 212**
**Violation of the Colorado Consumer Protection Act**
**(Colo. Rev. Stat. Ann. §6-1-101, *et seq.*)**
**(Against BI)**

4112.   Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4113.   This cause of action is brought on behalf of the Colorado-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4114.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Colo. Rev. Stat. Ann. §6-1-102(6).

4115.   The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices "in the course of the person's business, vocation, or occupation."  Colo. Rev. Stat. Ann. §6-1-105(1).

4116.   The Colorado CPA makes unlawful specific acts, including:

(a)     "[e]ither knowingly or recklessly mak[ing] a false representation as to the source, sponsorship, approval, or certification of goods, services, or property" (Colo. Rev. Stat. Ann. §6-1-105(1)(b));

(b)     "[r]epresent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another" (Colo. Rev. Stat. Ann. §6-1-105(1)(g));

(c)     "[a]dvertis[ing] goods, services, or property with intent not to sell them as advertised" (Colo. Rev. Stat. Ann. §6-1-105(1)(i));

(d)     "[f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction" (Colo. Rev. Stat. Ann. §6-1-105(1)(u)); and

(e)     "[e]ither knowingly or recklessly engage[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice" (Colo. Rev. Stat. Ann. §6-1-105(1)(kkk)).

4117.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.  Such conduct was bad faith conduct under the Colorado CPA.

4118.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and

failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4119.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4120.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Colorado CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; and

(e)     failing to disclose the defective Ranitidine-Containing Products in connection with their sale to the public.

4121.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4122.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4123.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff sand the Class members in a uniform manner.

4124.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4125.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4126. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

4127. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Colorado CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4128. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4129. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

4130. As a result of Defendant's violations of the Colorado CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

## COUNT 213
## Unjust Enrichment
## (Colorado Law)
## (Against BI)

4131.   Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4132.   This cause of action is brought on behalf of the Colorado-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4133.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4134.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

4135.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4136. It is unjust and inequitable for the Defendant to retain these benefits without commensurate compensation because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4137. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4138. Plaintiffs and Class members do not have an adequate remedy at law.

### 7. Causes of Action on Behalf of the Connecticut-BI Classes

### COUNT 214
### Violation of the Connecticut Unfair Trade Practices Act
### (Conn. Gen. Stat. Ann. §42-110a, *et seq.*)
### (Against BI)

4139. Connecticut Class Representatives Angel Cordero and Angel Vega incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4140. This cause of action is brought on behalf of the Connecticut-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4141. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Conn. Gen. Stat. Ann. §42-110a(3).

4142. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. §42-110a(4).

4143.   The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. Ann. §42-110b(a).

4144.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4145.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4146.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4147.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Connecticut UTPA.

4148.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4149.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4150.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4151.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4152.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4153.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Connecticut UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4154.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4155.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

4156.   As a result of Defendant's violations of the Connecticut UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

**COUNT 215**
**Breach of Implied Warranty**
**Conn. Gen. Stat. Ann. §42a-2-314**
**(Against BI)**

4157.   Connecticut Class Representative Angel Cordero  and Angel Vega incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4158.  This cause of action is brought on behalf of the Connecticut-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4159.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Connecticut Class Representatives and members of the Connecticut Class and was in the business of selling such products.

4160.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4161.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4162.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

4163.  Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4164.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4165.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

4166.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

4167.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

4168.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 216
## Unjust Enrichment
## (Connecticut Law)
## (Against BI)

4169.   Connecticut Class Representative Angel Cordero and Angel Vega incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4170.   This cause of action is brought on behalf of the Connecticut-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4171.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4172.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4173.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4174.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4175.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4176.   Plaintiffs and Class members do not have an adequate remedy at law.

### 8.   Causes of Action on Behalf of the Florida-BI Classes

#### COUNT 217
#### Violation of the Florida Deceptive and Unfair Trade Practices Act
#### (Fla. Stat. Ann. §501.201, *et seq.*)
#### (Against BI)

4177.   Florida Class Representatives Clifton McKinnon, Gustavo Velasquez, Jeannie Black, Joshua Winans, Marva McCall, Michael Tomlinson, Ricardo Moròn, Sharon Tweg, Roy Armstrong, Ronald Ragis, and Karen Foster incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4178.   This cause of action is brought on behalf of the Florida-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4179.   The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. Ann. §501.204(1).

4180.   In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017." Fla. Stat. Ann. §501.204(2).

4181.   Plaintiffs and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA. *See* Fla. Stat. Ann. §501.203(6)-(7).

4182.   Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA. *See* Fla. Stat. Ann. §501.203(8).

4183.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4184.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4185.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to

be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4186.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

4187.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4188.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4189.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4190.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4191.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4192.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4193.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4194.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

4195.   As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

**COUNT 218**
**Unjust Enrichment**
**(Florida Law)**
**(Against BI)**

4196.   Florida Class Representatives Clifton McKinnon, Gustavo Velasquez, Jeannie Black, Joshua Winans, Marva McCall, Michael Tomlinson, Ricardo Moròn, Sharon Tweg, Roy Armstrong, Ronald Ragis, and Karen Foster incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4197.   This cause of action is brought on behalf of the Florida-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4198.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4199.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members suffered an impoverishment because they purchased worthless medications and did not receive the expected benefit therefrom.

4200.   Defendant voluntarily accepted and retained these benefits from Plaintiffs and Class members and was knowingly enriched by its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated

levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4201.   It is unjust and inequitable for the Defendant to retain these benefits without paying the value thereof because the benefits were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4202.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4203.   There is no express written contract governing this dispute.

4204.   Plaintiffs and Class members do not have an adequate remedy at law.

### 9.    Causes of Action on Behalf of the Idaho-BI Classes

### COUNT 219
### Violation of the Idaho Consumer Protection Act
### (Idaho Code Ann. §48-601, *et seq.*)
### (Against BI)

4205.   Idaho Class Representative Billy Naab incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4206.   This cause of action is brought on behalf of the Idaho-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4207.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Idaho Code Ann. §48-602(1).

4208.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Idaho Code Ann. §48-602(6).

4209.   Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Idaho Code Ann. §48-602(2).

4210.   The Idaho Consumer Protection Act ("Idaho CPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Idaho Code Ann. §48-603.

4211.   The Idaho CPA makes unlawful specific acts, including:

(a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Idaho Code Ann. §48-603(5));

(b)    "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Idaho Code Ann. §48-603(7));

(c)    "[a]dvertising goods or services with intent not to sell them as advertised" (Idaho Code Ann. §48-603(9)); and

(d)    "[e]ngaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer" (Idaho Code Ann. §48-603(17)).

4212.   Idaho law also prohibits "[a]ny unconscionable method, act or practice in the conduct of any trade or commerce."  Idaho Code Ann. §48-603C(1).

4213.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Idaho CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to

be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4214.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Idaho CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4215.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Idaho CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4216.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Idaho CPA, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

4217.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4218.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4219.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4220.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4221.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4222.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Idaho CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4223.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4224.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

4225.   As a result of Defendant's violations of the Idaho CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Idaho CPA.

**COUNT 220**
**Unjust Enrichment**
**(Idaho Law)**
**(Against BI)**

4226.   Idaho Class Representative Billy Naab incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4227.   This cause of action is brought on behalf of the Idaho-BI Class (for the purpose of this section, "Class") against Brand Manufacturer Defendant GSK (for purposes of this Count only, "Defendant").

4228.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

4229.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4230.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4231.   It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts

concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4232.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4233.   Plaintiffs and Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

### 10.    Causes of Action on Behalf of the Indiana-BI Classes

<div align="center">

**COUNT 221**
**Breach of Implied Warranty**
**Ind. Code Ann. §26-1-2-314**
**(Against BI)**

</div>

4234.   Indiana Class Representatives Alyson Humphrey, Rebecca Sizemore, Teresa Dowler, and Tracy Wells incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4235.   This cause of action is brought on behalf of Indiana-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4236.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Indiana Class Representatives and members of the Indiana Class and was in the business of selling such products.

4237.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4238.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4239.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

4240.  Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4241.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4242.  Plaintiffs and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

4243.  Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

4244.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

4245.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 222**
**Unjust Enrichment**
**(Indiana Law)**
**(Against BI)**

4246.   Indiana Class Representatives Alyson Humphrey, Rebecca Sizemore, Teresa Dowler, and Tracy Wells incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4247.   This cause of action is brought on behalf of the Indiana-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4248.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4249.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the

products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendant but did not receive their expected benefit therefrom.

4250.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4251.   It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4252.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4253.   Plaintiffs and Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

11.     **Causes of Action on Behalf of the Georgia-BI Classes**

**COUNT 223**
**Violation of the Georgia Fair Business Practices Act**
**(Ga. Code Ann. §10-1-390,** *et seq.***)**
**(Against BI)**

4254.   Georgia Class Representatives Roy Armstrong, Kathy Jeffries and Tyrone Houston incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4255.   This cause of action is brought on behalf of the Georgia-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4256.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(24).

4257.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(6).

4258.   Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Ga. Code Ann. §10-1-392(a)(28).

4259.   The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."  Ga. Code Ann. §10-1-393(a).

4260.   The Georgia FBPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-393(b)(5));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-393(b)(7)); and

(c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-393(b)(9)).

4261. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4262. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4263. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4264. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia FBPA, including:

> (a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

4265.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4266.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4267.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4268.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4269.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4270. Plaintiffs and the Class members reasonably relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

4271.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the Georgia FBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4272.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4273.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

4274.  Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs

in MDL 2924 sent a notice letter pursuant to Ga. Code Ann. §10-1-399(b) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

4275.  As a result of Defendant's violations of the Georgia FBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Georgia FBPA.

<p style="text-align:center"><b>COUNT 224<br>Unjust Enrichment<br>(Georgia Law)<br>(Against BI)</b></p>

4276.  Georgia Class Representatives Roy Armstrong, Kathy Jeffries and Tyrone Houston incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4277.  This cause of action is brought on behalf of the Georgia Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4278.  Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

4279.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly,

Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4280.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4281.   It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4282.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4283.   There is no express contract governing this dispute.

4284.   Plaintiffs and Class members do not have an adequate remedy at law.

### 12.    Causes of Action on Behalf of the Illinois-BI Classes

### COUNT 225
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (815 Ill. Comp. Stat. Ann. 505/1, *et seq.*)
### (Against BI)

4285.   Illinois Class Representatives Denise Guy, Heather Re, Vickie Anderson, and Renee Chatman incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4286.   This cause of action is brought on behalf of the Illinois-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4287.   Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(c).

4288.   Plaintiffs and the Class members are "consumer[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(e).

4289.   The Ranitidine-Containing Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(b).

4290.   Defendant was and is engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(f).

4291.   The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade

Practices Act' [815 Ill. Comp. Stat. Ann. 510/2], approved August 5, 1965, in the conduct of any trade or commerce." 815 Ill. Comp. Stat. Ann. 505/2.

4292.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4293.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4294.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4295.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFDBPA.

4296. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4297. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4298. Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4299. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4300. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4301.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Illinois CFDBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4302.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4303.   Defendant's violations present a continuing risk to Plaintiff sand the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

4304.   As a result of Defendant's violations of the Illinois CFDBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFDBPA.

**COUNT 226**
**Unjust Enrichment**
**(Illinois Law)**
**(Against BI)**

4305.   Illinois Class Representatives Denise Guy, Heather Re, Vickie Anderson, and Renee Chatman incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4306.   This cause of action is brought on behalf of the Illinois -BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4307.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

4308.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4309.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4310.   It violates the principles of justice, equity, and good conscience for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members,

who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4311.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4312.   Plaintiffs and Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

### 13.    Causes of Action on Behalf of the Iowa-BI Classes

### COUNT 227
### Violation of the Iowa Private Right of Action for Consumer Frauds Act
### (Iowa Code Ann. §714H.1, *et seq.*)
### (Against BI)

4313.   Iowa Class Representative Charles Longfield incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4314.   This cause of action is brought on behalf of the Iowa-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4315.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Iowa Code Ann. §714H.2(7).

4316.   Plaintiff and the Class members are "[c]onsumer[s]" within the meaning of Iowa Code Ann. §714H.2(3).

4317.   The Iowa Private Right of Action for Consumer Frauds Act ("Iowa PRACFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment,

suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise."  Iowa Code Ann. §714H.3(1).

4318.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Iowa PRACFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4319.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Iowa PRACFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4320.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Iowa PRACFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4321.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Iowa PRACFA.

4322.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4323.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4324.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4325.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4326. Plaintiff and the Class members were aggrieved by Defendant's violations of the Iowa PRACFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4327. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4328. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

4329. As a result of Defendants' violations of the Iowa PRACFA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Iowa PRACFA.

4330. Additionally, because Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, were undertaken in willful and wanton disregard for the rights and safety of others, pursuant to Iowa Code Ann. §714H.5(4), Plaintiff and the Class members seek an additonal award of treble damages.

## COUNT 228
## Breach of Implied Warranty
## Iowa Code §554.2314
## (Against BI)

4331.   Iowa Class Representative Charles Longfield incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4332.   This cause of action is brought on behalf of the Iowa-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4333.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Plaintiff and members of the Iowa Class and was in the business of selling such products.

4334.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4335.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4336.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

4337.   Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4338.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4339.   Plaintiff and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

4340.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

4341.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.   Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

4342.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 229**
**Unjust Enrichment**
**(Iowa Law)**
**(Against BI)**

4343.   Iowa Class Representative Charles Longfield incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4344.   This cause of action is brought on behalf of the Iowa-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4345.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4346.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4347.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4348.  It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4349.  Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4350.  Plaintiff and Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

### 14.   Causes of Action on Behalf of the Kentucky-BI Classes

### COUNT 230
### Violation of the Kentucky Consumer Protection Act
### (Ky. Rev. Stat. Ann. §367.110, *et seq.*)
### (Against BI)

4351.  Kentucky Class Representative Janet Asbury incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4352.  This cause of action is brought on behalf of the Kentucky-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4353.  Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Ky. Rev. Stat. Ann. §367.110(1).

4354. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Ky. Rev. Stat. Ann. §367.110(2).

4355. The Kentucky Consumer Protection Act ("Kentucky CPA") prohibits "[u]nfair, [unconscionable], false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. Ann. §367.170(1)-(2).

4356. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4357. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4358. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4359.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Kentucky CPA.

4360.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4361.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4362.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4363.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4364.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4365.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Kentucky CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4366.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4367.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

4368.   As a result of Defendant's violations of the Kentucky CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Kentucky CPA.

## COUNT 231
### Breach of Implied Warranty
### Ky. Rev. Stat. Ann. §355.2-314
### (Against BI)

4369.   Kentucky Class Representative Janet Asbury incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4370.   This cause of action is brought on behalf of the Kentucky-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4371.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Kentucky Class Representatives and members of the Kentucy Class and was in the business of selling such products.

4372.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4373.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4374.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

4375.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4376.  Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4377.  Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

4378.  Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

4379.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

4380.  As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 232**
**Unjust Enrichment**
**(Kentucky Law)**
**(Against BI)**

4381.   Kentucky Class Representative Janet Asbury incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4382.   This cause of action is brought on behalf of the Kentucky-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4383.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4384.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4385.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4386.   It would be inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4387.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4388.   Plaintiff and Class members do not have an adequate remedy at law.

### 15.   Causes of Action on Behalf of the Louisiana-BI Classes

### COUNT 233
### Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law
### (La. Stat. Ann. §51:1401, *et seq.*)
### (Against BI)

4389.   Louisiana Class Representative Randy Jones incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4390.   This cause of action is brought on behalf of the Louisiana-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4391.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of La. Stat. Ann. §51:1402(8).

4392.   Plaintiff and the Class members are "[c]onsumer[s]" within the meaning of La. Stat. Ann. §51:1402(1).

4393.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of La. Stat. Ann. §51:1402(10).

4394.   The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  La. Stat. Ann. §51:1405(A).

4395.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4396.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4397.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4398. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Louisiana CPL.

4399. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4400. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4401. Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4402. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4403. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4404. Plaintiff and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

4405. Plaintiff and the Class members were aggrieved by Defendant's violations of the Louisiana CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4406. Specifically, Plaintiff and the Class were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4407. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

4408. As a result of Defendant's violations of the Louisiana CPL, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Louisiana CPL.

## COUNT 234
### Breach of Implied Warranty
### (La. Civ. Code Ann. Art. §2520)
### (Against BI)

4409.   Louisiana Class Representative Randy Jones incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4410.   This cause of action is brought on behalf of the Louisiana-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4411.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Louisiana Class Representatives and members of the Louisiana Class and was in the business of selling such products.

4412.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4413.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4414.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

4415.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4416.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4417.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

4418.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

4419.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

4420.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 235**
**Unjust Enrichment**
**(Louisiana Law)**
**(Against BI)**

4421.   Louisiana Class Representative Randy Jones incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4422.   This cause of action is brought on behalf of the Louisiana-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4423.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4424.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4425.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and was knowingly enriched by its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4426.   Defendant's enrichment – the monies obtained from Plaintiffs for the Ranitidine-Containing Products – was the result of Plaintiff's impoverishment – the receipt by Plaintiff of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

4427.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4428.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4429.   Plaintiff and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 16.    Causes of Action on Behalf of the Maryland-BI Classes

### COUNT 236
### Violation of the Maryland Consumer Protection Act
### (Md. Code Ann., Com. Law §13-101, *et seq.*)
### (Against BI)

4430.   Maryland Class Representatives Alberta Griffin, Ida Adams, Nicholas Hazlett, and Charles Longfield incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein as though fully set forth herein.

4431.   This cause of action is brought on behalf of the Maryland-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4432.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Md. Code Ann., Com. Law §13-101(h).

4433.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Md. Code Ann., Com. Law §13-101(c)(1).

4434.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Md. Code Ann., Com. Law §13-101(f).

4435.   The Maryland Consumer Protection Act ("Maryland CPA") prohibits "[u]nfair, abusive, or deceptive trade practices."  Md. Code Ann., Com. Law §13-301.

4436.   The Maryland CPA makes unlawful specific acts, including:

(a)   "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" (Md. Code Ann., Com. Law §13-301(1));

(b)   "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have" (Md. Code Ann., Com. Law §13-301(2)(i));

(c)   "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not" (Md. Code Ann., Com. Law §13-301(2)(iv));

(d)   "[f]ailure to state a material fact if the failure deceives or tends to deceive" (Md. Code Ann., Com. Law §13-301(3));

(e)   "[a]dvertis[ing] or offer[ing] of consumer goods, consumer realty, or consumer services . . . [w]ithout intent to sell, lease, or rent them as advertised or offered" (Md. Code Ann., Com. Law §13-301(5)(i)); and

(f)   "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with . . . [t]he promotion or sale of any consumer goods" (Md. Code Ann., Com. Law §13-301(9)(i)).

4437.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting,

omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4438.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4439.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4440.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Maryland CPA, including:

      (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

      (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)     failing to disclose that the Ranitidine-Containing Products are defective and inherently dangerous in the course of the sale of the Ranitidine-Containing Products; and

(e)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

4441.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4442.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4443.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4444.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4445.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4446.  Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

4447.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the Maryland CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4448.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4449.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

4450.  As a result of Defendant's violations of the Maryland CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

## COUNT 237
## Breach of Implied Warranty
## Md. Code Ann. §2-314
## (Against BI)

4451.   Maryland Class Representatives Alberta Griffin, Ida Adams, Nicholas Hazlett, and Charles Longfield incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4452.   This cause of action is brought on behalf of the Maryland-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4453.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Maryland Class Representatives and members of the Maryland Class and was in the business of selling such products.

4454.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4455.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4456.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

4457.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4458.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4459.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

4460.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

4461.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

4462.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 238**
**Unjust Enrichment**
**(Maryland Law)**
**(Against BI)**

4463.   Maryland Class Representatives Ida Adams, Nicholas Hazlett, and Charles Longfield incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4464.   This cause of action is brought on behalf of the Maryland-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4465.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4466.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4467.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4468.   It would be unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4469.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4470.   Plaintiffs and Class members do not have an adequate remedy at law.

### 17.   Causes of Action on Behalf of the Massachusetts-BI Classes

### COUNT 239
### Violation of the Deceptive Acts or Practices Prohibited by Massachusetts Law
### (Mass. Gen. Laws Ann. ch. 93a, §1, *et seq.*)
### (Against BI)

4471.   Massachusetts Class Representatives Michelle Smith, Rafael Bermudez, and Jennifer Bond incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4472.   This cause of action is brought on behalf of the Massachusetts-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4473.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(a).

4474.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(b).

4475.  The Massachusetts consumer protection law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws Ann. ch. 93A, §2(a).

4476.  In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4477.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4478.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4479.  Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive business practices prohibited by the Massachusetts Act.

4480.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4481.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4482.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4483.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4484.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Massachusetts Act because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4485.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4486.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

4487.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Mass. Gen. Laws Ann. ch. 93A, §9(3) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiff and the Class members are entitled.

4488.   As a result of Defendant's violations of the Massachusetts Act, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Massachusetts Act.

**COUNT 240**
**Breach of Implied Warranty**
**Mass. Gen. Laws ch. 106 §2-314**
**(Against BI)**

4489.   Massachusetts Class Representatives Michelle Smith, Rafael Bermudez, and Jennifer Bond incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4490.   This cause of action is brought on behalf of the Massachusetts-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4491.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Massachusetts Class Representatives and members of the Massachusetts Class and was in the business of selling such products.

4492.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4493.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4494.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

4495.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4496.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4497.   Plaintiffs and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

4498.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

4499.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

4500.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 241**
**Unjust Enrichment**
**(Massachusetts Law)**
**(Against BI)**

4501.   Massachusetts Class Representatives Michelle Smith, Rafael Bermudez, and Jennifer Bond incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4502.   This cause of action is brought on behalf of the Massachusetts-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4503.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4504.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4505.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and was knowingly enriched from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4506.   Defendant's enrichment – the monies obtained from Plaintiffs' and Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and Class members' impoverishment – *i.e.*, Plaintiffs' and Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

4507.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4508.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4509.   Plaintiffs and Class members do not have an adequate remedy at law.

**18.    Causes of Action on Behalf of the Michigan-BI Classes**

**COUNT 242**
**Violation of the Michigan Consumer Protection Act**
**(Mich. Comp. Laws Ann. §445.901, *et seq.*)**
**(Against BI)**

4510.   Michigan Class Representatives Jerry Hunt, Jody Beal, Kenneth Hix, and Lakisha Wilson incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4511.   This cause of action is brought on behalf of the Michigan-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4512.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(d).

4513.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(g).

4514.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws Ann. §445.903(1).

4515.   The Michigan CPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Mich. Comp. Laws Ann. §445.903(1)(c));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Mich. Comp. Laws Ann. §445.903(1)(e)); and

(c)     "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented" (Mich. Comp. Laws Ann. §445.903(1)(g)).

4516.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4517.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products

remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4518.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4519.  Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Michigan CPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

4520.  Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4521.  Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4522.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4523.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4524.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4525.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Michigan CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4526.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4527.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

4528.   As a result of Defendant's violations of the Michigan CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Michigan CPA.

<div align="center">

**COUNT 243**
**Unjust Enrichment**
**(Michigan Law)**
**(Against BI)**

</div>

4529.   Michigan Class Representatives Jerry Hunt, Jody Beal, Kenneth Hix, and Lakisha Wilson incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4530.   This cause of action is brought on behalf of the Michigan-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4531.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4532.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the

products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4533.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4534.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4535.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4536.   There is no express contract governing this dispute.

4537.   Plaintiffs and Class members do not have an adequate remedy at law.

### 19.     Causes of Action on Behalf of the Minnesota-BI Classes

### COUNT 244
### Violation of the Minnesota Prevention of Consumer Fraud Act
### (Minn. Stat. Ann. §325F.68, *et seq.*)
### (Against BI)

4538.   Minnesota Class Representatives Donald Northrup, John Scholl, Roy Armstrong, and Brad Hoag incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4539.   This cause of action is brought on behalf of the Minnesota-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4540.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

4541.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

4542.   The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged."  Minn. Stat. Ann. §325F.69(1).  Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

4543.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting,

omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4544.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4545.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4546.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

4547.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4548.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4549.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4550.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4551.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4552.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

4553.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4554.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4555.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

4556.   As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

### COUNT 245
### Breach of Implied Warranty
### (Minn. Stat. Ann. §336.2-314)
### (Against BI)

4557.   Minnesota Class Representatives Donald Northrup, John Scholl, Roy Armstrong, and Brad Hoag incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4558.   This cause of action is brought on behalf of the Minnesota-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4559.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

4560.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4561.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4562.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

4563.  Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4564.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4565.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

4566.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

4567.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

4568.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 246**
**Unjust Enrichment**
**(Minnesota Law)**
**(Against BI)**

4569.   Minnesota Class Representatives Donald Northrup, John Scholl, Roy Armstrong, and Brad Hoag incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4570.   This cause of action is brought on behalf of the Minnesota-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4571.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4572.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4573.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4574.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4575.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4576.   Plaintiffs and Class members do not have an adequate remedy at law.

**20.    Causes of Action on Behalf of the Mississippi-BI Classes**

<div align="center">

**COUNT 247**
**Breach of Implied Warranty**
**(Miss. Code Ann. §75-2-314)**
**(Against BI)**

</div>

4577.   Mississippi Class Representatives Beverly Crosby and John Rachal incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4578.   This cause of action is brought on behalf of the Mississippi-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4579.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Mississippi Class Representatives and members of the Mississippi Class and was in the business of selling such products.

4580.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warranting on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4581.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4582.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

4583.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4584.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4585.   Plaintiffs and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

4586.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

4587.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

4588.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 248**
**Unjust Enrichment**
**(Mississippi Law)**
**(Against BI)**

4589.   Mississippi Class Representative Beverly Crosby and John Rachal incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4590.   This cause of action is brought on behalf of the Mississippi-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4591.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4592.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly,

Plaintiffs and Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

4593.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and was knowingly enriched by its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4594.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4595.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4596.   There is no express contract governing this dispute.

4597.   Plaintiffs and Class members do not have an adequate remedy at law.

21.      **Causes of Action on Behalf of the Missouri-BI Classes**

**COUNT 249**
**Violation of the Missouri Merchandising Practices Act**
**(Mo. Ann. Stat. §407.010, *et seq.*)**
**(Against BI)**

4598.   Missouri Class Representatives Lorie Kendall-Singer and Antrenise Campbell incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4599.   This cause of action is brought on behalf of the Missouri-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4600.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mo. Ann. Stat. §407.010(5).

4601.   Defendant was and is engaged in "[t]rade or commerce" within the meaning of Mo. Ann. Stat. §407.010(7).

4602.   The Missouri Merchandising Practices Act ("Missouri MPA") prohibits "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce."  Mo. Ann. Stat. §407.020(1).

4603.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

- 1111 -

4604.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4605.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4606.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Missouri MPA.

4607.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4608.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4609.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4610.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4611.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4612.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Missouri MPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4613.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4614.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

4615.   As a result of Defendant's violations of the Missouri MPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Missouri MPA.

**COUNT 250**
**Breach of Implied Warranty**
**(Mo. Rev. Stat. §400.2-314)**
**(Against BI)**

4616.   Missouri Class Representatives Lorie Kendall-Singer and Antrenise Campbell incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4617.   This cause of action is brought on behalf of the Missouri Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4618.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Missouri Class Representatives and members of the Missouri Class and was in the business of selling such products.

4619.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4620.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4621.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

4622.  Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff sand each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4623.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4624.  Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

4625.  Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

4626.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

4627.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### COUNT 251
### Unjust Enrichment
### (Missouri Law)
### (Against BI)

4628.   Missouri Class Representatives Lorie Kendall-Singer and Antrenise Campbell incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4629.   This cause of action is brought on behalf of the Missouri-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4630.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4631.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the

products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4632.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4633.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4634.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4635.   There is no express contract governing this dispute.

4636.   Plaintiffs and Class members do not have an adequate remedy at law.

### 22.     Causes of Action on Behalf of the Montana-BI Classes

### COUNT 252
### Violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1973
### (Mont. Code Ann. §30-14-101, *et seq.*)
### (Against BI)

4637.   Montana Class Representative Angel Vega incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4638.   This cause of action is brought on behalf of the Montana-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4639.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mont. Code Ann. §30-14-102(6).

4640.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Mont. Code Ann. §30-14-102(1).

4641.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mont. Code Ann. §30-14-102(8).

4642.   The Montana Unfair Trade Practices and Consumer Protection Act of 1973 ("Montana CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mont. Code Ann. §30-14-103.

4643.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Montana CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4644. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Montana CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4645. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Montana CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4646. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Montana CPA.

4647. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4648. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4649.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4650.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4651.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4652.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

4653.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Montana CPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4654. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4655. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

4656. As a result of Defendant's violations of the Montana CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, treble damages pursuant to Mont. Code Ann. §30-14-133(1)(3) and any other just and proper relief available under the Montana CPA.

## COUNT 253
### Unjust Enrichment
### (Montana Law)
### (Against BI)

4657. Montana Class Representative Angel Vega incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4658. This cause of action is brought on behalf of the Montana-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

- 1121 -

4659.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

4660.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

4661.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and was knowingly enriched by its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4662.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4663.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4664.   There is no express contract governing this dispute.

4665.   Plaintiffs and Class members do not have an adequate remedy at law.

### 23.   Causes of Action on Behalf of the Nebraska-BI Classes

### COUNT 254
### Violation of the Nebraska Consumer Protection Act
### (Neb. Rev. Stat. Ann. §59-1601, *et seq.*)
### (Against BI)

4666.   Nebraska Class Representative Gaylord Stauffer incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4667.   This cause of action is brought on behalf of the Nebraska-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4668.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Neb. Rev. Stat. Ann. §59-1601(1).

4669.   The Ranitidine-Containing Products are "[a]ssets" within the meaning of Neb. Rev. Stat. Ann. §59-1601(3).

4670.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Neb. Rev. Stat. Ann. §59-1601(2).

4671.   The Nebraska Consumer Protection Act ("Nebraska CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Neb. Rev. Stat. Ann. §59-1602.

4672.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nebraska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4673.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nebraska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4674.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nebraska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4675.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Nebraska CPA.

4676.    Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4677.    Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4678.    Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4679.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4680.    The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4681.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Nebraska CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4682.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4683.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

4684.   As a result of Defendant's violations of the Nebraska CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Nebraska CPA.

**COUNT 255**
**Breach of Implied Warranty**
**Neb. U.C.C. §2-314**
**(Against BI)**

4685.   Nebraska Class Representative Gaylord Stauffer incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4686.   This cause of action is brought on behalf of the Nebraska-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4687.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Nebraska Class Representatives and members of the Nebraska Class and was in the business of selling such products.

4688.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4689.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4690.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

4691.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4692.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4693.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

4694.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

4695.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

4696.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 256**
**Unjust Enrichment**
**(Nebraska Law)**
**(Against BI)**

</div>

4697.   Nebraska Class Representative Gaylord Stauffer incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4698.   This cause of action is brought on behalf of the Nebraska-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4699.  Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4700.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4701.  Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4702.  It is unjust and unfair for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4703.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4704.   There is no express contract governing this dispute.

4705.   Plaintiff and Class members do not have an adequate remedy at law.

**24.    Causes of Action on Behalf of the Nevada-BI Classes**

**COUNT 257**
**Violation of the Nevada Deceptive Trade Practices Act**
**(Nev. Rev. Stat. Ann. §598.0903, *et seq.*)**
**(Against BI)**

4706.   Nevada Class Representative Cesar Pinon incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4707.   This cause of action is brought on behalf of the Nevada-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4708.   The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), prohibits the use of "'deceptive trade practices' . . . in the course of . . . business or occupation."  Nev. Rev. Stat. Ann. §598.0915.

4709.   The Nevada DTPA makes unlawful specific acts, including:

(a)     "[k]nowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith" (Nev. Rev. Stat. Ann. §598.0915(5));

(b)     "[r]epresent[ing] that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model" (Nev. Rev. Stat. Ann. §598.0915(7));

(c)     "[a]dvertis[ing] goods or services with intent not to sell or lease them as advertised" (Nev. Rev. Stat. Ann. §598.0915(9));

(d)     "[k]nowingly mak[ing] any other false representation in a transaction" (Nev. Rev. Stat. Ann. §598.0915(15)); and

(e)     "[f]ail[ing] to disclose a material fact in connection with the sale or lease of goods or services" (Nev. Rev. Stat. Ann. §598.0923(2)).

4710.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4711.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4712.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4713.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Nevada DTPA, including:

(a)   representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)   failing to disclose the NDMA danger in connection with the sale of the Ranitidine-Containing Products; and

(e)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

4714.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4715.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4716.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4717.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4718.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4719.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Nevada DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4720.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4721.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

4722.   As a result of Defendant's violations of the Nevada DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Nevada DTPA.

**COUNT 258**
**Unjust Enrichment**
**(Nevada Law)**
**(Against BI)**

4723.   Nevada Class Representative Cesar Pinon incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4724.   This cause of action is brought on behalf of the Nevada-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4725.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

4726.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4727.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4728.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4729.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4730.   There is no express contract governing this dispute.

4731.   Plaintiff and Class members do not have an adequate remedy at law.

### 25.   Causes of Action on Behalf of the New Hampshire-BI Classes

<div align="center">

**COUNT 259**
**Violation of the New Hampshire Consumer Protection Act**
**(N.H. Rev. Stat. Ann. §358-A:1, *et seq.*)**
**(Against BI)**

</div>

4732.   New Hampshire Class Representatives Rafael Bermudez and Jennifer Bond incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4733.   This cause of action is brought on behalf of the New Hampshire-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4734.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of N.H. Rev. Stat. Ann. §358-A:1(I).

4735.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of N.H. Rev. Stat. Ann. §358-A:1(II).

4736.   The New Hampshire Consumer Protection Act ("New Hampshire CPA") prohibits "any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce."  N.H. Rev. Stat. Ann. §358-A:2.

4737.   The New Hampshire CPA makes unlawful specific acts, including:

(a)   "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (N.H. Rev. Stat. Ann. §358-A:2(V));

(b)   "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." (N.H. Rev. Stat. Ann. §358-A:2(VII)); and

(c)   "[a]dvertising goods or services with intent not to sell them as advertised." (N.H. Rev. Stat. Ann. §358-A:2(IX)).

4738.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Hampshire CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4739.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Hampshire CPA by knowingly and intentionally misrepresenting, omitting, concealing,

and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4740.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Hampshire CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4741.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Hampshire CPA, including:

> (a)   representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and
>
> (c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

4742.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4743.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4744.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4745.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4746.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4747.   Plaintiffs and the Class members were aggrieved by Defendant's violations of New Hampshire CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4748.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4749.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

4750.  As a result of Defendant's violations of the New Hampshire CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Hampshire CPA.

## COUNT 260
### Breach of Implied Warranty
### (N.H. Rev. Stat. Ann. §382-A:2-314)
### (Against BI)

4751.  New Hampshire Class Representatives Rafael Bermudez and Jennifer Bond incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4752.  This cause of action is brought on behalf of the New Hampshire-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4753.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Hampshire Class Representatives and members of the New Hampshire Class and was in the business of selling such products.

4754.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4755.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4756.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

4757.  Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4758.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4759.  Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

4760. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

4761. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

4762. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 261
### Unjust Enrichment
### (New Hampshire Law)
### (Against BI)

4763. New Hampshire Class Representatives Rafael Bermudez and Jennifer Bond incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4764. This cause of action is brought on behalf of the New Hampshire-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4765. Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4766. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4767. Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4768. It is unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4769. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4770. There is no valid, express contract governing this dispute.

4771.   Plaintiffs and Class members do not have an adequate remedy at law.

**26.     Causes of Action on Behalf of the New Jersey-BI Classes**

**COUNT 262**
**Violation of the New Jersey Consumer Fraud Act**
**(N.J. Stat. Ann. §56:8-1, *et seq.*)**
**(Against BI)**

4772.   New Jersey Class Representatives James Adamo, Mary McMillan, Lynn White, Sayed Eldomiaty, and Mary Moronski incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4773.   This cause of action is brought on behalf of the New Jersey-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4774.   Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.J. Stat. Ann. §56:8-1(d).

4775.   The Ranitidine-Containing Products are "merchandise" within the meaning of N.J. Stat. Ann. §56:8-1(c).

4776.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Jersey Consumer Fraud Act ("New Jersey CFA") by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.  N.J. Stat. Ann. §56:8-1, *et seq.*

4777.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Jersey CFA by knowingly and intentionally misrepresenting, omitting, concealing, and

failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4778.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Jersey CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4779.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Jersey CFA.

4780.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4781.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4782.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4783.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4784.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Jersey CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4785.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4786.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

4787.   As a result of Defendant's violations of the New Jersey CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Jersey CFA.

<div align="center">

**COUNT 263**
**Breach of Implied Warranty**
**(N.J. Stat. Ann. §12A:2-314)**
**(Against BI)**

</div>

4788.   New Jersey Class Representatives James Adamo, Mary McMillan, Lynn White, Sayed Eldomiaty, and Mary Moronski incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4789.   This cause of action is brought on behalf of the New Jersey-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4790.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Jersey Class Representatives and members of the New Jersey Class and was in the business of selling such products.

4791.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4792.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4793.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

4794.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4795.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4796.   Plaintiffs and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

4797.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

4798.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

4799.  As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 264**
**Unjust Enrichment**
**(New Jersey Law)**
**(Against BI)**

4800.  New Jersey Class Representatives James Adamo, Mary McMillan, Lynn White, Sayed Eldomiaty, and Mary Moronski incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4801.  This cause of action is brought on behalf of the New Jersey-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4802.  Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4803.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4804.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4805.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4806.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4807.   Plaintiff sand Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 27.   Causes of Action on Behalf of the New Mexico-BI Classes

### COUNT 265
### Violation of the New Mexico Unfair Trade Practices Act
### (N.M. Stat. Ann. §57-12-1, *et seq.*)
### (Against BI)

4808.   New Mexico Class Representatives Ernesto Sanchez and George Tapia incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4809.  This cause of action is brought on behalf of the New Mexico-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4810.  Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

4811.  Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

4812.  The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person."  N.M. Stat. Ann. §57-12-2(D).  The New Mexico UTPA also makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid."  N.M. Stat. Ann. §57-12-2(E).

4813.  The New Mexico UTPA makes unlawful specific acts, including:

(a)  "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

(b)  "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

(c)  "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

4814.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4815.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4816.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4817.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Mexico UTPA, including:

> (a)     representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

     (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

     (c)     using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and

     (d)     acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.

4818.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4819.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4820.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4821.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4822.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4823.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4824.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4825.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

4826.   As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

**COUNT 266**
**Breach of Implied Warranty**
**(N.M. Stat. Ann. §55-2-314)**
**(Against BI)**

4827.   New Mexico Class Representatives Ernesto Sanchez and George Tapia incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4828.   This cause of action is brought on behalf of the New Mexico-BI Class (for the purpose of this section, "Class") against [Brand Manufacturer Defendant] (for purposes of this Count only, "Defendant").

4829.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

4830.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4831.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4832.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

4833.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4834.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4835.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

4836.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

4837.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

4838.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 267
### Unjust Enrichment
### (New Mexico Law)
### (Against BI)

4839.   New Mexico Class Representatives Ernesto Sanchez and George Tapia incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4840.   This cause of action is brought on behalf of the New Mexico-BI Class (for the purpose of this section, "Class") against Brand Manufacturer Defendant BI (for purposes of this Count only, "Defendant").

4841.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

4842.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4843.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'

expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4844.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4845.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4846.   There is no express contract governing this dispute.

4847.   Plaintiffs and Class members do not have an adequate remedy at law.

### 28.    Causes of Action on Behalf of the New York-BI Classes

### COUNT 268
### Violation of New York Deceptive Acts and Practices Act
### (N.Y. Gen. Bus. Law §349)
### (Against BI)

4848.   New York Class Representatives Benny Fazio, Francis Neary, Glorimar Rodriguez, Mary McCullen, Migdalia Kinney, Richard Froehlich, Roy Armstrong, Dan Zhovtis, and Joseph McPheter incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4849.   This cause of action is brought on behalf of the New York-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4850.   Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

4851.   The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §349(a).

4852.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4853.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4854.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably

dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4855.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

4856.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4857.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4858.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4859.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4860.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4861.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4862.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4863.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

4864.   As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

**COUNT 269**
**Violation of the New York False Advertising Act**
**(N.Y. Gen. Bus. Law §350)**
**(Against BI)**

4865.   New York Class Representatives Benny Fazio, Francis Neary, Glorimar Rodriguez, Mary McCullen, Migdalia Kinney, Richard Froehlich, Roy Armstrong, Dan Zhovtis, and Joseph McPheter incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4866.   This cause of action is brought on behalf of the New York-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4867.   Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

4868.   The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §350.  False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

4869.   Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

4870.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting,

omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4871.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4872.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4873.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

4874.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4875.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4876.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

4877.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4878.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4879.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4880.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4881.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

4882.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

4883.   As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

**COUNT 270**
**Breach of Implied Warranty**
**(N.Y. U.C.C. Law §2-314)**
**(Against BI)**

4884.   New York Class Representatives Benny Fazio, Francis Neary, Glorimar Rodriguez, Mary McCullen, Migdalia Kinney, Richard Froehlich, Roy Armstrong, Dan Zhovtis, and Joseph

McPheter incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4885.   This cause of action is brought on behalf of the New York-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4886.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representative and members of the New York Class and was in the business of selling such products.

4887.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4888.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4889.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

4890.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4891.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4892.  Plaintiffs and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to Defendant or its agents(including  distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

4893.  Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

4894.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

4895.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 271
## Unjust Enrichment
## (New York Law)
## (Against BI)

4896.   New York Class Representatives Benny Fazio, Francis Neary, Glorimar Rodriguez, Mary McCullen, Migdalia Kinney, Richard Froehlich, Roy Armstrong, Dan Zhovtis, and Joseph McPheter incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4897.   This cause of action is brought on behalf of the New York-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4898.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4899.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4900.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and

that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4901.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4902.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4903.   Plaintiffs and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 29.   Causes of Action on Behalf of the North Carolina-BI Classes

**COUNT 272**
**Violation of the North Carolina Unfair and Deceptive Trade Practices Act**
**(N.C. Gen. Stat. Ann. §75-1.1, *et seq.*)**
**(Against BI)**

4904.   North Carolina Class Representatives Dennis Robbins, Patricia Frazier, Teresa Lee, and Sharon Parks incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4905.   This cause of action is brought on behalf of the North Carolina-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4906.   Defendant was and is engaged in "commerce" within the meaning of N.C. Gen. Stat. Ann. §75-1.1(b).

4907.  The North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," N.C. Gen. Stat. Ann. §75-1.1(a), and provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the law.  N.C. Gen. Stat. Ann. §75-16.

4908.  In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4909.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4910.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4911.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the North Carolina UDTPA.

4912.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4913.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4914.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4915.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4916.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4917.   Plaintiff and the Class members were aggrieved by Defendant's violations of the North Carolina UDTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4918.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4919.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

4920.   As a result of Defendant's violations of the North Carolina UDTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the North Carolina UDTPA.

**COUNT 273**
**Breach of Implied Warranty**
**(N.C. Gen. Stat. Ann. §25-2-314)**
**(Against BI)**

4921.   North Carolina Class Representatives Dennis Robbins, Patricia Frazier, Teresa Lee, and Sharon Parks incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4922.   This cause of action is brought on behalf of the North Carolina-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4923.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to North Carolina Class Representatives and members of the North Carolina Class and was in the business of selling such products.

4924.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4925.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4926.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

4927.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4928.  Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4929.  Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

4930.  Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

4931.  Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

4932.  As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 274**
**Unjust Enrichment**
**(North Carolina Law)**
**(Against BI)**

4933.   North Carolina Class Representatives Dennis Robbins, Patricia Frazier, Teresa Lee, and Sharon Parks incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4934.   This cause of action is brought on behalf of the North Carolina-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4935.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4936.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4937.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4938.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4939.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4940.   Plaintiffs and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 30.    Causes of Action on Behalf of the Ohio-BI Classes

### COUNT 275
### Breach of Implied Warranty
### (Ohio Rev. Code Ann. §1302.27)
### (Against BI)

4941.   Ohio Class Representatives Michael Galloway, Patricia Hess, and Chris Troyan incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4942.   This cause of action is brought on behalf of the Ohio-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4943.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Ohio Class Representatives and members of the Ohio Class and was in the business of selling such products.

4944.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4945.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4946.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

4947.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4948.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4949.   Plaintiffs and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

4950.  Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

4951.  Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

4952.  As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 276**
**Unjust Enrichment**
**(Ohio Law)**
**(Against BI)**

</div>

4953.  Ohio Class Representatives Michael Galloway, Patricia Hess, and Chris Troyan incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4954.  This cause of action is brought on behalf of the Ohio-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4955.  Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4956.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4957.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4958.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4959.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

4960.   Plaintiffs and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 31.    Causes of Action on Behalf of the Oklahoma-BI Classes

### COUNT 277
### Violation of the Oklahoma Consumer Protection Act
### (Okla. Stat. tit. 15, §751, *et seq.*)
### (Against BI)

4961.   Oklahoma Class Representatives Billy Naab and Demarco Grayson incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4962.   This cause of action is brought on behalf of the Oklahoma-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4963.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Okla. Stat. tit. 15, §752(1).

4964.   Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Okla. Stat. tit. 15, §752(2).

4965.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Okla. Stat. tit. 15, §752(7).

4966.   The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits numerous unlawful acts, including misleading representations, false advertisements, and false statements. Okla. Stat. tit. 15, §753.   The Oklahoma CPA defines "[d]eceptive trade practice" as "a misrepresentation, omission or other practice that has deceived or . . . mislead a person to the detriment of that person."  Okla. Stat. tit. 15, §752(13).  The Oklahoma CPA defines "[u]nfair trade practice" as "any practice which offends established public policy or if the practice is

immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Okla. Stat.

tit. 15, §752(14).

4967.   The Oklahoma CPA makes unlawful specific acts, including:

(a)   "[m]ak[ing] a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction" (Okla. Stat. tit. 15, §753(5));

(b)   "[r]epresent[ing], knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another" (Okla. Stat. tit. 15, §753(7));

(c)   "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised" (Okla. Stat. tit. 15, §753(8)); and

(d)   "[c]ommit[ing] an unfair or deceptive trade practice as defined in Section 752" (Okla. Stat. tit. 15, §753(20)).

4968.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4969.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4970.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

4971.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Oklahoma CPA, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

4972.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4973.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4974.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of

Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

4975.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

4976.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

4977.   Plaintiff and the Class members were aggrieved by Defendant's violations of Oklahoma CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

4978.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

4979.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

4980.   As a result of Defendant's violations of the Oklahoma CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Oklahoma CPA.

**COUNT 278**
**Breach of Implied Warranty**
**(Okla. Stat. tit. 12A §2-314)**
**(Against BI)**

4981.   Oklahoma Class Representatives Billy Naab and Demarco Grayson incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4982.   This cause of action is brought on behalf of the Oklahoma-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4983.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Oklahoma Class Representative and members of the Oklahoma Class and was in the business of selling such products.

4984.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4985.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4986.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

4987.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4988.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

4989.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

4990.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

4991.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

4992.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 279**
**Unjust Enrichment**
**(Oklahoma Law)**
**(Against BI)**

</div>

4993.   Oklahoma Class Representatives Billy Naab and Demarco Grayson incorporate the the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

4994.   This cause of action is brought on behalf of the Oklahoma-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

4995.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

4996.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly,

Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

4997.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and was knowingly enriched by its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

4998.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

4999.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5000.   Plaintiffs and Class members do not have an adequate remedy at law.

32.      **Causes of Action on Behalf of Oregon-BI Classes**

**COUNT 280**
**Violation of the Oregon Unlawful Trade Practices Act**
**(Or. Rev. Stat. Ann. §646.605, *et seq.*)**
**(Against BI)**

5001.   Oregon Class Representative Kristi Ledbetter incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5002.   This cause of action is brought on behalf of the Oregon-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5003.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Or. Rev. Stat. Ann. §646.605(4).

5004.   The Ranitidine-Containing Products are "goods" within the meaning of Or. Rev. Stat. Ann. §646.605(6).

5005.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Or. Rev. Stat. Ann. §646.605(8).

5006.   The Oregon Unlawful Trade Practices Act ("Oregon UTPA") prohibits "unlawful practice . . . in the course of the person's business."  Or. Rev. Stat. Ann. §646.608(1).

5007.   The Oregon UTPA makes unlawful specific acts, including:

(a)      "[r]epresent[ing] that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have" (Or. Rev. Stat. Ann. §646.608(1)(e));

(b)      "[r]epresent[ing] that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if the real estate, goods or services are of another" (Or. Rev. Stat. Ann. §646.608(1)(g));

(c)     "[a]dvertis[ing] real estate, goods or services with intent not to provide the real estate, goods or services as advertised" (Or. Rev. Stat. Ann. §646.608(1)(i)); and

(d)     "[e]ngag[ing] in any other unfair or deceptive conduct in trade or commerce" (Or. Rev. Stat. Ann. §646.608(1)(u)).

5008.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oregon UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5009.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oregon UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5010.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oregon UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5011.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Oregon UTPA, including:

  (a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

  (b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

  (c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

  (d) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

5012.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5013.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5014.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5015.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii)

the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5016.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5017.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Oregon UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5018.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5019.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5020.   As a result of Defendant's violations of the Oregon UTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Oregon UTPA.

## COUNT 281
### Breach of Implied Warranty
### (Or. Rev. Stat. §72.3140)
### (Against BI)

5021.   Oregon Class Representative Kristi Ledbetter incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5022.   This cause of action is brought on behalf of the Oregon-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5023.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Oregon Class Representatives and members of the Oregon Class and was in the business of selling such products.

5024.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5025.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5026.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

5027.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5028.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5029.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

5030.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

5031.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

5032.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 282
## Unjust Enrichment
## (Oregon Law)
## (Against BI)

5033.   Oregon Class Representative Kristi Ledbetter incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5034.   This cause of action is brought on behalf of the Oregon-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5035.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

5036.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5037.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5038.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5039.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5040.   There is no express contract governing this dispute.

5041.   Plaintiff and Class members do not have an adequate remedy at law.

### 33.   Causes of Action on Behalf of the Pennsylvania-BI Classes

### COUNT 283
### Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law
### (73 Pa. C.S. §201-1, *et seq.*)
### (Against BI)

5042.   Pennsylvania Class Representative Nicholas Hazlett incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5043.   This cause of action is brought on behalf of the Pennsylvania-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5044.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of 73 Pa. C.S. §201-2(2).

5045.   Plaintiff and the Class members purchased the Ranitidine-Containing Products "primarily for personal, family or household purposes" within the meaning of 73 Pa. C.S. §201-9.2(a).

5046.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of 73 Pa. C.S. §201-2(3).

5047.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  73 Pa. C.S. §201-3.

5048.   The Pennsylvania CPL makes unlawful specific acts, including:

> (a)   "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (73 Pa. C.S. §201-2(4)(v));
>
> (b)   "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (73 Pa. C.S. §201-2(4)(vii));
>
> (c)   "[a]dvertising goods or services with intent not to sell them as advertised" (73 Pa. C.S. §201-2(4)(ix)); and
>
> (d)   "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" (73 Pa. C.S. §201-2(4)(xxi)).

5049.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5050. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5051. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5052. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Pennsylvania CPL, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (d)    engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

5053.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5054.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5055.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5056.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5057. Plaintiff and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

5058.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Pennsylvania CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5059.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5060.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5061.   As a result of Defendant's violations of the Pennsylvania CPL, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Pennsylvania CPL.

## COUNT 284
### Breach of Implied Warranty
### (13 Pa. Cons. Stat. §2314)
### (Against BI)

5062.   Pennsylvania Class Representative Nicholas Hazlett incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5063.   This cause of action is brought on behalf of the Pennsylvania-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5064.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Pennsylvania Class Representatives and members of the Pennsylvania Class and was in the business of selling such products.

5065.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5066.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5067.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

5068.  Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5069.  Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5070.   Plaintiff and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

5071.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

5072.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

5073.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 285**
**Unjust Enrichment**
**(Pennsylvania Law)**
**(Against BI)**

</div>

5074.   Pennsylvania Class Representative Nicholas Hazlett incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5075.   This cause of action is brought on behalf of the Pennsylvania-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5076.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

5077.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5078.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5079.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5080.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5081.   There is no express contract governing this dispute.

5082.   Plaintiff and Class members do not have an adequate remedy at law.

### 34.    Causes of Action on Behalf of Puerto Rico-BI Classes

**COUNT 286**
**Breach of Implied Warranty**
**(P.R. Laws Ann. tit. 31, §3841)**
**(Against BI)**

5083.   Puerto Rico Class Representatives Gloria Colon and Sonia Diaz incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5084.   This cause of action is brought on behalf of the Puerto Rico-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5085.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Puerto Rico Class Representatives and members of the Puerto Rico Class and was in the business of selling such products.

5086.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5087.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5088.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

5089.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5090.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5091.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

5092.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

5093.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

5094.  As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 287**
**Unjust Enrichment**
**(Puerto Rico Law)**
**(Against BI)**

</div>

5095.  Puerto Rico Class Representatives Gloria Colon and Sonia Diaz incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5096.  This cause of action is brought on behalf of the Puerto Rico Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5097.  Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

5098.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly,

Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5099.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and was knowingly enriched by its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5100.   Defendant's enrichment – the monies obtained from Plaintiffs' and Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and Class members' impoverishment – *i.e.*, Plaintiffs' and Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

5101.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5102.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5103.   Plaintiffs and Class members do not have an adequate remedy at law.

### 35.   Causes of Action on Behalf of the South Carolina-BI Classes

### COUNT 288
### Violation of the South Carolina Unfair Trade Practices Act
### (S.C. Code Ann. §39-5-10, *et seq.*)
### (Against BI)

5104.   South Carolina Class Representatives Michael Futrell and Marianella Villanueva incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5105.   This cause of action is brought on behalf of the South Carolina-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5106.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of S.C. Code Ann. §39-5-10(a).

5107.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of S.C. Code Ann. §39-5-10(b).

5108.   The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  S.C. Code Ann. §39-5-20(a).

5109.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5110.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing,

- 1206 -

and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5111.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5112.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the South Carolina UTPA.

5113.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5114.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5115.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5116.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5117.   Plaintiff and the Class members were aggrieved by Defendant's violations of the South Carolina UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5118.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5119.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5120.   As a result of Defendant's violations of the South Carolina UTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive

acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the South Carolina UTPA.

**COUNT 289**
**Breach of Implied Warranty**
**(S.C. Code Ann. §36-2-314)**
**(Against BI)**

5121.   South Carolina Class Representatives Michael Futrell and Marianella Villanueva incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5122.   This cause of action is brought on behalf of the South Carolina-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5123.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the South Carolina Class Representative and members of the South Carolina Class and was in the business of selling such products.

5124.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5125.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5126.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

5127.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5128.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5129.   Plaintiff and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

5130.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

5131.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

5132.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 290
## Unjust Enrichment
## (South Carolina Law)
## (Against BI)

5133.  South Carolina Class Representatives Michael Futrell and Marianella Villanueva incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5134.  This cause of action is brought on behalf of the South Carolina-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5135.  Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

5136.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5137.  Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly realized a benefit from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5138.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5139.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5140.   Plaintiff and Class members do not have an adequate remedy at law.

### 36.   Causes of Action on Behalf of Tennessee-BI Classes

<div align="center">

**COUNT 291**
**Violation of the Tennessee Consumer Protection Act of 1977**
**(Tenn. Code Ann. §47-18-101, *et seq.*)**
**(Against BI)**

</div>

5141.   Tennessee Class Representatives Dale Hunter, Eva Broughton, and Kenneth Hix incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5142.   This cause of action is brought on behalf of the Tennessee-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5143.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tenn. Code Ann. §47-18-103(14).

5144.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tenn. Code Ann. §47-18-103(3).

5145.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Tenn. Code Ann. §47-18-103(8).

5146.   Defendant was and is engaged in "[t]rade" or "commerce" or "consumer transaction[s]" within the meaning of Tenn. Code Ann. §47-18-103(20).

5147.   The Tennessee Consumer Protection Act of 1977 ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce."  Tenn. Code Ann. §47-18-104(a).

5148.   The Tennessee CPA makes unlawful specific acts, including:

(a)   "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tenn. Code Ann. §47-18-104(b)(5));

(b)   "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (Tenn. Code Ann. §47-18-104(b)(7)); and

(c)   "[a]dvertising goods or services with intent not to sell them as advertised" (Tenn. Code Ann. §47-18-104(b)(9)).

5149.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5150.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products

remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5151.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5152.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Tennessee CPA, including:

> (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and
>
> (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

5153.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5154.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5155. Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5156. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5157. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5158. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Tennessee CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5159. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5160.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5161.   As a result of Defendant's violations of the Tennessee CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Tennessee CPA.

<div align="center">

**COUNT 292**
**Breach of Implied Warranty**
**(Tenn. Code Ann. §47-2-314)**
**(Against BI)**

</div>

5162.   Tennessee Class Representatives Dale Hunter, Eva Broughton, and Kenneth Hix incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5163.   This cause of action is brought on behalf of the Tennessee-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5164.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Tennessee Class Representatives and members of the Tennessee Class and was in the business of selling such products.

5165.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5166.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5167.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

5168.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5169.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5170.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

5171.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

5172. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

5173. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 293**
**Unjust Enrichment**
**(Tennessee Law)**
**(Against BI)**

5174. Tennessee Class Representatives Dale Hunter, Eva Broughton, and Kenneth Hix incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5175. This cause of action is brought on behalf of the Tennessee-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5176. Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

5177. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the

products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5178.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5179.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5180.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5181.   There is no existing, enforceable contract governing this dispute.

5182.   Plaintiffs and Class members do not have an adequate remedy at law.

**37.** **Causes of Action on Behalf of the Texas-BI Classes**

**COUNT 294**
**Violation of the Texas Deceptive Trade Practices-Consumer Protection Act**
**(Tex. Bus. & Com. Code Ann. §17.41,** *et seq.***)**
**(Against BI)**

5183.   Texas Class Representatives Marianella Villanueva, Ronda Lockett, Sylvia Yoshida, Agapito It Aleman, Gina Martinez, Liliana Del Valle, and Maria Eames incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5184.   This cause of action is brought on behalf of the Texa-BI s Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5185.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

5186.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

5187.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

5188.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

5189.   The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

5190.   The Texas DTPA makes unlawful specific acts, including:

(a)   "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

(b)   "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

(c)   "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

5191.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5192.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5193.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5194.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

5195.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5196.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5197.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5198.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii)

the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5199. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5200. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

5201. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5202. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5203. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

5204.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiff and the Class members are entitled.

5205.   As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

## COUNT 295
## Breach of Implied Warranty
## (Tex. Bus. & Com. Code Ann. §2-314)
## (Against BI)

5206.   Texas Class Representatives Marianella Villanueva, Ronda Lockett, Sylvia Yoshida, Agapito It Aleman, Gina Martinez, Liliana Del Valle, and Maria Eames incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5207.   This cause of action is brought on behalf of the Texas-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5208.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

5209.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5210.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5211.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

5212.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5213.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5214.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

5215.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

5216.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

5217.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 296**
**Unjust Enrichment**
**(Texas Law)**
**(Against BI)**

</div>

5218.   Texas Class Representatives Marianella Villanueva, Ronda Lockett, Sylvia Yoshida, Agapito It Aleman, Gina Martinez, Liliana Del Valle, and Maria Eames incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5219.   This cause of action is brought on behalf of the Texas Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5220.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

5221. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5222. Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5223. It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5224. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5225.   Plaintiffs and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**38.    Causes of Action on Behalf of the Utah-BI Classes**

**COUNT 297**
**Violation of the Utah Consumer Sales Practices Act**
**(Utah. Code Ann. §13-11-1, *et seq.*)**
**(Against BI)**

5226.   Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5227.   This cause of action is brought on behalf of the Utah-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5228.   Defendant is a "[s]upplier" within the meaning of Utah Code Ann. §13-11-3(6).

5229.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Utah Code Ann. §13-11-3(5).

5230.   Defendant was and is engaged in "consumer transactions" within the meaning of Utah Code Ann. §13-11-3(2)(a).

5231.   The Utah Consumer Sales Practices Act ("Utah CSPA") prohibits any "deceptive act or practice by a supplier in connection with a consumer transaction."  Utah Code Ann. §13-11-4(1).  "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA.  Utah Code Ann. §13-11-5(1).

5232.   The Utah CSPA makes unlawful specific acts, including:

(a)     "indicat[ing] that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" (Utah Code Ann. §13-11-4(2)(a)); and

(b)  "indicat[ing] that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not" (Utah Code Ann. §13-11-4(2)(b)).

5233.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah CSPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5234.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah CSPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5235.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah CSPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5236.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Utah CSPA, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have; and

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not.

5237.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5238.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5239.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5240.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5241.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5242.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Utah CSPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5243.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5244.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5245.   As a result of Defendant's violations of the Utah CSPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Utah CSPA.

<div align="center">

**COUNT 298**
**Violation of the Utah Truth in Advertising Law**
**(Utah Code Ann. §13-11a-1, *et seq.*)**
**(Against BI)**

</div>

5246.   Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5247.   This cause of action is brought on behalf of the Utah-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5248.   Defendant is a "[s]upplier" within the meaning of Utah Code Ann. §13-11a-2(17).

5249.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Utah Code Ann. §13-11a-2(7).

5250.   The Ranitidine-Containing Products are "goods" within the meaning of Utah Code Ann. §13-11a-2(4).

5251.   The Utah Truth in Advertising Law ("Utah TAL") prohibits any deceptive practice undertaken "in the course of a person's business."  Utah Code Ann. §13-11a-3(1).

5252.   The Utah TAL makes unlawful specific acts, including:

(a)   "represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have" (Utah Code Ann. §13-11a-3(1)(e));

(b)   "represent[ing] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Utah Code Ann. §13-11a-3(1)(g));

(c)   "advertis[ing] goods or services with intent not to sell them as advertised" (Utah Code Ann. §13-11a-3(1)(i)); and

(d)   "engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding" (Utah Code Ann. §13-11a-3(1)(t)).

5253.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah TAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5254.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah TAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5255.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah TAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5256.  Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Utah TAL, including:

(a) representing that Ranitidine-Containing Products were both safe and effective for the lifetime of the product, when in fact, they were not;

(b) representing that consumption of Ranitidine-Containing Products had characteristics, ingredients, uses, benefits, or qualities that they do not have;

(c) representing that Ranitidine-Containing Products are of a particular standard, quality, or grade when they are not;

(d) advertising Ranitidine-Containing Products with the intent not to sell them as advertised; and

(e) engaging in any other conduct that creates a likelihood of confusion.

5257. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5258. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5259. Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5260. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5261. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5262.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Utah TAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5263.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5264.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5265.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seek all damages and relief to which Plaintiff and the Class members are entitled.

5266.   As a result of Defendant's violations of the Utah TAL, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Utah TAL.

**COUNT 299**
**Breach of Implied Warranty**
**(Utah Code Ann. §70A-2-314)**
**(Against BI)**

5267.   Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5268.   This cause of action is brought on behalf of the Utah-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5269.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Utah Class Representatives and members of the Utah Class and was in the business of selling such products.

5270.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5271.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5272.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

5273.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5274.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5275.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

5276.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

5277.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

5278.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 300
### Unjust Enrichment
### (Utah Law)
### (Against BI)

5279.   Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5280.   This cause of action is brought on behalf of the Utah-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5281.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

5282.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5283.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5284.  It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5285.  Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5286.  Plaintiff and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 39.   Causes of Action on Behalf of Vermont-BI Classes

### COUNT 301
### Violation of the Vermont Consumer Fraud Act
### (Vt. Stat. Ann. tit. 9, §2451, *et seq.*)
### (Against BI)

5287.  Vermont Class Representative Ronald Ragis incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5288.  This cause of action is brought on behalf of the Vermont-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5289.  Defendant is a "[s]eller" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(c).

5290.  Plaintiff and the Class members are "[c]onsumer[s]" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(a).

5291.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(b).

5292.   The Vermont consumer fraud act ("Vermont CFA") prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce."  Vt. Stat. Ann. tit. 9, §2453(a).

5293.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Vermont CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5294.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Vermont CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5295.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Vermont CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5296.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Vermont CFA.

5297.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5298.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5299.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5300.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5301.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5302.  Plaintiff and the Class members were aggrieved by Defendant's violations of the Vermont CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5303.  Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5304.  Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5305.  As a result of Defendant's violations of the Vermont CFA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Vermont CFA.

**COUNT 302**
**Breach of Implied Warranty**
**(Vt. Stat. Ann. tit. 9A §2-314)**
**(Against BI)**

5306.   Vermont Class Representative Ronald Ragis incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5307.   This cause of action is brought on behalf of the Vermont-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5308.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Vermont Class Representatives and members of the Vermont Class and was in the business of selling such products.

5309.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5310.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5311.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

5312.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5313.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5314.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

5315.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

5316.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

5317.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

40.     **Causes of Action on Behalf of the Virginia-BI Classes**

**COUNT 303**
**Violation of the Virginia Consumer Protection Act**
**(Va. Code Ann. §59.1-196, *et seq.*)**
**(Against BI)**

5318.   Virginia Class Representatives Dan Zhovtis and Cheryl Banks incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5319.   This cause of action is brought on behalf of the Virginia-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5320.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Va. Code Ann. §59.1-198.

5321.   Defendant was and is a "[s]upplier" within the meaning of Va. Code Ann. §59.1-198.

5322.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Va. Code Ann. §59.1-198.

5323.   Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Va. Code Ann. §59.1-198.

5324.   The Virginia Consumer Protection Act ("Virginia CPA") prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction."  Va. Code Ann. §59.1-200(A).

5325.   The Virginia CPA makes unlawful specific acts, including:

(a)     "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" (Va. Code Ann. §59.1-200(A)(5));

(b)     "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model" (Va. Code Ann. §59.1-200(A)(6));

- 1245 -

(c)     "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" (Va. Code Ann. §59.1-200(A)(8)); and

(d)     "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" (Va. Code Ann. §59.1-200(A)(14)).

5326.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5327.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5328.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5329.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Virginia CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

5330.  Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5331.  Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5332.  Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5333.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii)

the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5334.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5335.  Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

5336.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Virginia CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5337.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5338.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5339.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

5340.   As a result of Defendant's violations of the Virginia CPA, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Virginia CPA.

<div align="center">

**COUNT 304**
**Breach of Implied Warranty**
**(Va. Code Ann. §8.2-314)**
**(Against BI)**

</div>

5341.   Virginia Class Representatives Dan Zhovtis and Cheryl Banks incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5342.   This cause of action is brought on behalf of the Virginia-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5343.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Virginia Class Representatives and members of the Virginia Class and was in the business of selling such products.

5344.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

<div align="center">

- 1249 -

</div>

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5345.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5346.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

5347.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5348.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5349.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

5350.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

5351.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

5352.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### COUNT 305
### Unjust Enrichment
### (Virginia Law)
### (Against BI)

5353.   Virginia Class Representatives Dan Zhovtis and Cheryl Banks incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5354.   This cause of action is brought on behalf of the Virginia-BI Class (for the purpose of this section, "Class") against Brand Manufacturer Defendant GSK (for purposes of this Count only, "Defendant").

5355.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

5356.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe

and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5357.  Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5358.  It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5359.  Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5360.  There is no express contract governing this dispute.

5361.  Plaintiffs and Class members do not have an adequate remedy at law.

**41.     Causes of Action on Behalf of the Washington-BI Classes**

**COUNT 306**
**Violation of the Washington Consumer Protection Act**
**(Wash. Rev. Code Ann. §19.86.010, *et seq.*)**
**(Against BI)**

5362.   Washington Class Representatives Jonathan Ferguson, Robert Dewitt, Dave Garber, Billy Naab, and Earlene Green incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5363.   This cause of action is brought on behalf of the Washington-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5364.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Wash. Rev. Code Ann. §19.86.010(1).

5365.   The Ranitidine-Containing Products are "[a]ssets" within the meaning of Wash. Rev. Code Ann. §19.86.010(3).

5366.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Wash. Rev. Code Ann. §19.86.010(2).

5367.   The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Wash. Rev. Code Ann. §19.86.020.

5368.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective,

unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5369.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5370.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5371.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington CPA.

5372.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5373.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5374.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5375.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5376.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5377.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Washington CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5378.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5379.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5380.   On June 22, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Wash. Rev. Code Ann. §19.86.095 to the Attorney General of the State of Washington.

5381.   As a result of Defendant's violations of the Washington CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Washington CPA.

**COUNT 307**
**Breach of Implied Warranty**
**(Wash. Rev. Code §62A.2-314)**
**(Against BI)**

5382.   Washington Class Representatives Jonathan Ferguson, Robert Dewitt, Dave Garber, Billy Naab, and Earlene Green incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5383.   This cause of action is brought on behalf of the Washington-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5384.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Washington Class Representatives and members of the Washington Class and was in the business of selling such products.

5385.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5386.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5387.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

5388.  Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5389.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5390.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

5391.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

5392.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

5393.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 308**
**Unjust Enrichment**
**(Washington Law)**
**(Against BI)**

5394.   Washington Class Representatives Jonathan Ferguson, Robert Dewitt, Dave Garber, Billy Naab, and Earlene Green incorporate the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5395.   This cause of action is brought on behalf of the Washington-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5396.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

5397.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5398.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5399.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing

Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5400.  Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5401.  There is no express contract governing this dispute.

5402.  Plaintiffs and Class members do not have an adequate remedy at law.

### 42.  Causes of Action on Behalf of the West Virginia-BI Classes

### COUNT 309
### Breach of Implied Warranty
### (W. Va. Code §46-2-314)
### (Against BI)

5403.  West Virginia Class Representative Ida Adams incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5404.  This cause of action is brought on behalf of the West Virginia-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5405.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to West Virginia Class Representatives and members of the West Virginia Class and was in the business of selling such products.

5406.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5407.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5408.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

5409.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5410.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5411.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

5412.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

5413.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 310**
**Unjust Enrichment**
**(West Virginia Law)**
**(Against BI)**

5414.   West Virginia Class Representative Ida Adams incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5415.   This cause of action is brought on behalf of the West Virginia-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5416.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

5417.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the

products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5418.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5419.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5420.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5421.   There is no express contract governing this dispute.

5422.   Plaintiff and Class members do not have an adequate remedy at law.

43.     **Causes of Action on Behalf of the Wisconsin-BI Classes**

### COUNT 311
### Violation of the Wisconsin Deceptive Trade Practices Act
### (Wis. Stat. Ann. §100.18, *et seq.*)
### (Against BI)

5423.   Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5424.   This cause of action is brought on behalf of the Wisconsin-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5425.   Defendant is a "person, firm, corporation or association" within the meaning of Wis. Stat. Ann. §100.18(1).

5426.   Plaintiff and the Class members are members of "the public" within the meaning of Wis. Stat. Ann. §100.18(1).

5427.   The Ranitidine-Containing Products are "merchandise" within the meaning of Wis. Stat. Ann. §100.18(1).

5428.   The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits any "assertion, representation or statement of fact which is untrue, deceptive or misleading."  Wis. Stat. Ann. §100.18(1).

5429.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Wisconsin DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5430.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Wisconsin DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5431.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Wisconsin DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5432.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Wisconsin DTPA.

5433.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5434.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5435. Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5436. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5437. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5438. Plaintiff and the Class members were aggrieved by Defendant's violations of the Wisconsin DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5439. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5440.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5441.   As a result of Defendant's violations of the Wisconsin DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Wisconsin DTPA.

**COUNT 312**
**Breach of Implied Warranty**
**(Wis. Stat. Ann. §402.314)**
**(Against BI)**

5442. Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5443.   This cause of action is brought on behalf of the Wisconsin-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5444.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Wisconsin Class Representative and members of the Wisconsin Class and was in the business of selling such products.

5445.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5446.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5447.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

5448.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5449.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5450.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

5451.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

5452.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

5453.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 313**
**Unjust Enrichment**
**(Wisconsin Law)**
**(Against BI)**

5454.   Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5455.   This cause of action is brought on behalf of the Wisconsin-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5456.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

5457.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and,

thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5458.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5459.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5460.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5461.   There is no express contract governing this dispute.

5462.   Plaintiff and Class members do not have an adequate remedy at law.

44.    **Causes of Action on Behalf of the Wyoming-BI Classes**

**COUNT 314**
**Breach of Implied Warranty**
**(Wyo. Stat. §34.1-2-314)**
**(Against BI)**

5463.   Wyoming Class Representative Charles Longfield incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5464.   This cause of action is brought on behalf of the Wyoming-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5465.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Wyoming Class Representatives and members of the Wyoming Class and was in the business of selling such products.

5466.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5467.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5468.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

5469.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5470.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5471.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

5472.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

5473.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

5474.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 315**
**Unjust Enrichment**
**(Wyoming Law)**
**(Against BI)**

5475.   Wyoming Class Representative Charles Longfield incorporates the preceding allegations in paragraphs 2-8, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5476.   This cause of action is brought on behalf of the Wyoming-BI Class (for the purpose of this section, "Class") against BI (for purposes of this Count only, "Defendant").

5477.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

5478.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  ccordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5479.   Defendant readily accepted, retained, and enjoyed these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5480.   Defendant knew that Plaintiff and Class members reasonably expected to receive safe and effective medications.

5481.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5482.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5483.   Plaintiff and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### D.     Causes of Action Against Sanofi

5484.   For the purposes of the subsequent causes of action against Defendant Sanofi, Plaintiffs are incorporating the following allegations by reference: paragraphs 16-22 (corporate information); 273-277 (jurisdiction and venue); 279-303 (development of brand Zantac); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469 (requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good

Manufacturing Practices); 868-894 (misrepresentations or omissions of material fact in labeling); 895-911 (misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

5485.   Plaintiff identified in the table below bring claims against Defendant Sanofi on behalf of themselves and their respective State Classes under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| Plaintiff Name | State(s) of Residence |
|---|---|
| Andy Green Jr. | Arkansas |
| Tina Culclager | Arkansas |
| Tangie Sims | Arizona |
| Golbenaz Bakhtiar | California |
| Richard Obrien | California |
| Virginia Aragon | California |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Angel Cordero | Connecticut |
| Gustavo Velasquez | Florida |
| Jeannie Black | Florida |
| Joshua Winans | Florida |
| Michael Tomlinson | Florida |
| Ricardo Moròn | Florida |
| Sharon Tweg | Florida |
| Sonia Diaz | Florida |
| Kathy Jeffries | Georgia |
| Tyrone Houston | Georgia |
| Charles Longfield | Iowa |

| | |
|---|---|
| Denise Guy | Illinois |
| Heather Re | Illinois |
| Renee Chatman | Illinois |
| Alyson Humphrey | Indiana |
| Rebecca Sizemore | Indiana |
| Tracy Wells | Indiana |
| Jamie Mckay | Louisiana |
| Randy Jones | Louisiana |
| Michelle Smith | Massachusetts |
| Jennifer Bond | Massachusetts |
| Alberta Griffin | Maryland |
| Ida Adams | Maryland |
| Arthur Gamble | Michigan |
| Jerry Hunt | Michigan |
| Jody Beal | Michigan |
| Roy Armstrong | Michigan, Florida |
| Brad Hoag | Minnesota |
| Donald Northrup | Minnesota |
| John Rachal | Mississippi |
| Lorie Kendall-Songer | Missouri |
| Dennis Robbins | North Carolina |
| Sharon Parks | North Carolina |
| Gaylord Stauffer | Nebraska |
| Rafael Bermudez | New Hampshire |
| James Adamo | New Jersey |
| Mary McMillian | New Jersey |
| Mary Moronski | New Jersey |
| Ernesto Sanchez | New Mexico |
| George Tapia | New Mexico |

| | |
|---|---|
| Benny Fazio | New York |
| Francis Neary | New York |
| Glorimar Rodriguez | New York |
| Mary McCullen | New York |
| Migdalia Kinney | New York |
| Richard Froehlich | New York |
| Silomie Clarke | New York |
| Yesenia Melillo | New York |
| Chris Troyan | Ohio |
| Michael Galloway | Ohio |
| Demarco Grayson | Oklahoma |
| Billy Naab | Oklahoma |
| Nicholas Hazlett | Pennsylvania |
| Gloria Colon | Puerto Rico |
| Michael Futrell | South Carolina |
| Dale Hunter | Tennessee |
| Ronda Lockett | Texas |
| Agapito It Aleman | Texas |
| Gina Martinez | Texas |
| Liliana Del Valle | Texas |
| Marilyn Abraham | Texas |
| Sylvia Yoshida | Texas |
| Marianella Villanueva | Texas |
| Teresa Waters | Utah |
| Dan Zhovtis | Virginia |
| Cheryl Banks | Virginia |
| Jonathan Ferguson | Washington |
| Dave Garber | Washington |
| Robert Dewitt | Washington |

1.      **Causes of Action on Behalf of the Arizona-Sanofi Classes**

**COUNT 316**
**Violation of the Arizona Consumer Fraud Act**
**(Ariz. Rev. Stat. Ann. §44-1521, *et seq.*)**
**(Against Sanofi)**

5486.   Arizona Class Representative Tangie Sims incorporates the preceding allegations

in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as

though fully set forth herein.

5487.   This cause of action is brought on behalf of the Arizona-Sanofi Class (for the

purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5488.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning

of Ariz. Rev. Stat. Ann. §44-1521(6).

5489.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of

Ariz. Rev. Stat. Ann. §44-1521(5).

5490.   The Arizona Consumer Fraud Act ("Arizona CFA") prohibits "[t]he act, use or

employment by any person of any deception, deceptive or unfair act or practice, fraud, …

misrepresentation, or concealment, suppression or omission of any material fact with intent that

others rely on such concealment, suppression or omission, in connection with the sale … of any

merchandise whether or not any person has in fact been misled, deceived or damaged thereby."

Ariz. Rev. Stat. Ann. §44-1522(A).

5491.   In the course of its business, Defendant, through its agents, employees, and/or

subsidiaries, violated the Arizona CFA by recklessly, wantonly, knowingly, and intentionally

misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its

Ranitidine-Containing Products, including that: such drugs were inherently defective,

unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5492.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arizona CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5493.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arizona CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5494.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Arizona CFA.

5495.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5496. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5497. Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5498. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5499. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5500. Plaintiff and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

5501.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Arizona CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5502.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5503.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5504.   As a result of Defendant's violations of the Arizona CFA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

### COUNT 317
### Unjust Enrichment
### (Arizona Law)
### (Against Sanofi)

5505.   Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5506.   This cause of action is brought on behalf of the Arizona-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5507.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

5508.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members conferred a financial benefit on Defendant but did not receive their expected benefit therefrom.

5509.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and was knowingly enriched by its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5510.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5511.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5512.   Plaintiff and Class members do not have an adequate remedy at law.

## 2.   Causes of Action on Behalf of the Arkansas-Sanofi Classes

### COUNT 318
### Violation of the Arkansas Deceptive Trade Practices Act
### (Ark. Code Ann. §4-88-101, *et seq.*)
### (Against Sanofi)

5513.   Arkansas Class Representatives Andy Green Jr. and Tina Culclager incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5514.   This cause of action is brought on behalf of the Arkansas Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5515.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ark. Code Ann. §4-88-102(5).

5516.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Ark. Code Ann. §4-88-102(4).

5517.   The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices."  Ark. Code Ann. §4-88-107(a).

5518.   The Arkansas DTPA makes unlawful specific acts, including:

> (a)   "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" (Ark. Code Ann. §4-88-107(a)(1));

> (b)   "[a]dvertising the goods or services with the intent not to sell them as advertised" (Ark. Code Ann. §4-88-107(a)(3)); and

(c)    "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" (Ark. Code Ann. §4-88-107(a)(10)).

5519.   The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission . . . ." Ark. Code Ann. §4-88-108(a).

5520.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5521.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5522.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably

dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5523.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Arkansas DTPA, including:

      (a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

      (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

      (c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

      (d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

5524.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5525.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5526.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5527.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein,

had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5528.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5529.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

5530.   Plaintiffs and the Class members were aggrieved by Defendant's violations of Arkansas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5531.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5532.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5533.   As a result of Defendant's violations of the Arkansas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

<div align="center">

**COUNT 319**
**Breach of Implied Warranty**
**(Ark. Code Ann. §4-2-314)**
**(Against Sanofi)**

</div>

5534.   Arkansas Class Representative Andy Green Jr. and Tina Culclager incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5535.   This cause of action is brought on behalf of the Arkansas-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5536.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arkansas Class Representatives and members of the Arkansas Class and was in the business of selling such products.

5537.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5538.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5539.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

5540.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5541.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5542.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

5543.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

5544.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

5545.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 320**
**Unjust Enrichment**
**(Arkansas Law)**
**(Against Sanofi)**

</div>

5546.   Arkansas Class Representative Andy Green Jr. and Tina Culclager incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5547.   This cause of action is brought on behalf of the Arkansas-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5548.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

5549.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the

products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5550.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5551.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5552.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5553.   There is no valid, legal, and binding contract governing this dispute.

5554.   Plaintiffs and Class members do not have an adequate remedy at law.

3.      **Causes of Action on Behalf of the California-Sanofi Classes**

**COUNT 321**
**Violation of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code §17200,** *et seq.***)**
**(Against Sanofi)**

5555.   California Class Representatives Golbenaz Bakhtiar, Richard O'Brien, and Virginia Aragon incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5556.   This cause of action is brought on behalf of the California-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5557.   Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

5558.   Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

5559.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5560.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products

remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5561.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5562.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL.  These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

5563.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5564.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5565.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of

Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5566.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5567.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5568.   Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies

Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

5569.   Defendant's conduct also consitutes "unfair" business acts or practies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

5570.   Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, *see* Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

5571.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5572.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5573.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5574.  Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

<div style="text-align:center">

**COUNT 322**
**Violation of the California False Advertising Law**
**(Cal. Bus. & Prof. Code §17500,** *et seq.***)**
**(Against Sanofi)**

</div>

5575.  California Class Representatives Golbenaz Bakhtiar, Richard O'Brien, and Virginia Aragon incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5576.  This cause of action is brought on behalf of the California-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5577.  Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

5578.  The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising

device, . . . or in any other manner or means whatever, including over the internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code §17500.

5579.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5580.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5581.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5582.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

5583.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5584.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5585.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5586.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii)

the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5587.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5588.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5589.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5590.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5591.   As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

**COUNT 323**
**Violation of the California Consumers Legal Remedies Act**
**(Cal. Civ. Code §1750, *et seq.*)**
**(Against Sanofi)**

5592.   California Class Representatives Golbenaz Bakhtiar, Richard O'Brien, and Virginia Aragon incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5593.   This cause of action is brought on behalf of the California-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5594.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

5595.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

5596.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

5597.   The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §1770(a).

5598.   The California CLRA makes unlawful specific acts, including:

(a)   "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

(b)   "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

(c)   "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

- 1299 -

(d)     "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

5599.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5600.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5601.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5602.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

5603. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5604. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5605. Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5606. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5607.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5608.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

5609.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5610.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5611.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by various Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.  Because

Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiff and the Class members are entitled.

5612.   Pursuant to Cal. Civ. Code §1780(a), Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.   Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.   Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.   Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.   One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

<div align="center">

**COUNT 324**
**Breach of Implied Warranty**
**(Cal. Com. Code §2314)**
**(Against Sanofi)**

</div>

5613.   California Class Representatives Golbenaz Bakhtiar, Richard O'Brien, and Virginia Aragon incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5614.   This cause of action is brought on behalf of the California-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5615.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the California Class Representatives and members of the California Class and was in the business of selling such products.

5616.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5617.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5618.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

5619.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5620.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5621.  Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

5622.  Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

5623.  Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

5624.  As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 325
### Unjust Enrichment or Quasi-Contract
### (California Law)
### (Against Sanofi)

5625.  California Class Representatives Golbenaz Bakhtiar, Richard O'Brien, and Virginia Aragon incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5626.  This cause of action is brought on behalf of the California-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5627.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

5628.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5629.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5630.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5631.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5632.   Plaintiffs and Class members do not have an adequate remedy at law.

### 4.   Causes of Action on Behalf of the Colorado-Sanofi Classes

### COUNT 326
### Violation of the Colorado Consumer Protection Act
### (Colo. Rev. Stat. Ann. §6-1-101, *et seq.*)
### (Against Sanofi)

5633.   Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5634.   This cause of action is brought on behalf of the Colorado-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5635.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Colo. Rev. Stat. Ann. §6-1-102(6).

5636.   The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices "in the course of the person's business, vocation, or occupation."  Colo. Rev. Stat. Ann. §6-1-105(1).

5637.   The Colorado CPA makes unlawful specific acts, including:

  (a)   "[e]ither knowingly or recklessly mak[ing] a false representation as to the source, sponsorship, approval, or certification of goods, services, or property" (Colo. Rev. Stat. Ann. §6-1-105(1)(b));

  (b)   "[r]epresent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another" (Colo. Rev. Stat. Ann. §6-1-105(1)(g));

- 1307 -

(c)     "[a]dvertis[ing] goods, services, or property with intent not to sell them as advertised" (Colo. Rev. Stat. Ann. §6-1-105(1)(i));

(d)     "[f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction" (Colo. Rev. Stat. Ann. §6-1-105(1)(u)); and

(e)     "[e]ither knowingly or recklessly engage[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice" (Colo. Rev. Stat. Ann. §6-1-105(1)(kkk)).

5638.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.  Such conduct was bad faith conduct under the Colorado CPA.

5639.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5640.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably

dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5641.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Colorado CPA, including:

> (a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;
>
> (c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;
>
> (d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; and
>
> (e)   failing to disclose the defective Ranitidine-Containing Products in connection with their sale to the public.

5642.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5643.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5644.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff sand the Class members in a uniform manner.

5645.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5646.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5647.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

5648.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Colorado CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5649.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5650.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5651.   As a result of Defendant's violations of the Colorado CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

<div align="center">

**COUNT 327**
**Unjust Enrichment**
**(Colorado Law)**
**(Against Sanofi)**

</div>

5652.   Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5653.   This cause of action is brought on behalf of the Colorado-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5654.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

5655.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the

products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

5656.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5657.   It is unjust and inequitable for the Defendant to retain these benefits without commensurate compensation because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5658.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5659.   Plaintiffs and Class members do not have an adequate remedy at law.

### 5.     Causes of Action on Behalf of the Connecticut-Sanofi Classes

### COUNT 328
### Violation of the Connecticut Unfair Trade Practices Act
### (Conn. Gen. Stat. Ann. §42-110a, *et seq.*)
### (Against Sanofi)

5660.   Connecticut Class Representative Angel Cordero incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5661.   This cause of action is brought on behalf of the Connecticut-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5662.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Conn. Gen. Stat. Ann. §42-110a(3).

5663.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. §42-110a(4).

5664.   The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. Ann. §42-110b(a).

5665.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5666.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and

failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5667.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5668.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Connecticut UTPA.

5669.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5670.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5671.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of

Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5672.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5673.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5674.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Connecticut UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5675.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5676.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5677.   As a result of Defendant's violations of the Connecticut UTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

**COUNT 329**
**Breach of Implied Warranty**
**(Conn. Gen. Stat. Ann. §42a-2-314)**
**(Against Sanofi)**

5678.   Connecticut Class Representative Angel Cordero incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5679.   This cause of action is brought on behalf of the Connecticut-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5680.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Connecticut Class Representative and members of the Connecticut Class and was in the business of selling such products.

5681.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5682.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5683.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

5684.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5685.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5686.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

5687.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

5688.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

5689.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 330**
**Unjust Enrichment**
**(Connecticut Law)**
**(Against Sanofi)**

</div>

5690.   Connecticut Class Representative Angel Cordero incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5691.   This cause of action is brought on behalf of the Connecticut-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5692.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

5693.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly,

Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5694.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5695.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5696.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5697.   Plaintiff and Class members do not have an adequate remedy at law.

### 6.      Causes of Action on Behalf of the Florida-Sanofi Classes

### COUNT 331
### Violation of the Florida Deceptive and Unfair Trade Practices Act
### (Fla. Stat. Ann. §501.201, *et seq.*)
### (Against Sanofi)

5698.   Florida Class Representatives Gustavo Velasquez, Joshua Winans, Ricardo Moròn, Jeannie Black, Michael Tomlinson, Roy Armstrong, Sonia Diaz, and Sharon Tweg incorporate the

preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5699.   This cause of action is brought on behalf of the Florida-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5700.   The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. §501.204(1).

5701.   In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017." Fla. Stat. Ann. §501.204(2).

5702.   Plaintiffs and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA. *See* Fla. Stat. Ann. §501.203(6)-(7).

5703.   Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA. *See* Fla. Stat. Ann. §501.203(8).

5704.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5705.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to

disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5706.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5707.  Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

5708.  Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5709.  Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5710.  Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5711.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5712.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5713.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5714.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5715.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5716.   As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

**COUNT 332**
**Unjust Enrichment**
**(Florida Law)**
**(Against Sanofi)**

5717.   Florida Class Representatives Gustavo Velasquez, Joshua Winans, Ricardo Moròn, Jeannie Black, Michael Tomlinson, Roy Armstrong, Sonia Diaz, and Sharon Tweg incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5718.   This cause of action is brought on behalf of the Florida-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5719.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

5720.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and,

thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members suffered an impoverishment because they purchased worthless medications and did not receive the expected benefit therefrom.

5721.   Defendant voluntarily accepted and retained these benefits from Plaintiffs and Class members and was knowingly enriched by its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5722.   It is unjust and inequitable for the Defendant to retain these benefits without paying the value thereof because the benefits were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5723.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5724.   There is no express written contract governing this dispute.

5725.   Plaintiffs and Class members do not have an adequate remedy at law.

7.     **Causes of Action on Behalf of the Indiana-Sanofi Classes**

**COUNT 333**
**Breach of Implied Warranty**
**(Ind. Code Ann. §26-1-2-314)**
**(Against Sanofi)**

5726.   Indiana Class Representatives Alyson Humphrey, Rebecca Sizemore, and Tracy Wells incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5727.   This cause of action is brought on behalf of Indiana-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5728.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Indiana Class Representatives and members of the Indiana Class and was in the business of selling such products.

5729.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5730.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5731.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

5732.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5733.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5734.   Plaintiffs and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

5735.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

5736.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

5737.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 334**
**Unjust Enrichment**
**(Indiana Law)**
**(Against Sanofi)**

5738.  Indiana Class Representatives Alyson Humphrey, Rebecca Sizemore, and Tracy Wells incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5739.  This cause of action is brought on behalf of the Indiana-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5740.  Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

5741.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendant but did not receive their expected benefit therefrom.

5742.  Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of

NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5743.   It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5744.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5745.   Plaintiffs and Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

**8.      Causes of Action on Behalf of the Georgia-Sanofi Classes**

**COUNT 335**
**Violation of the Georgia Fair Business Practices Act**
**(Ga. Code Ann. §10-1-390, *et seq.*)**
**(Against Sanofi)**

5746.   Georgia Class Representatives Kathy Jeffries and Tyrone Houston incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5747.   This cause of action is brought on behalf of the Georgia-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5748.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(24).

5749.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(6).

5750.   Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Ga. Code Ann. §10-1-392(a)(28).

5751.   The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."  Ga. Code Ann. §10-1-393(a).

5752.   The Georgia FBPA makes unlawful specific acts, including:

(a)   "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-393(b)(5));

(b)   "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-393(b)(7)); and

(c)   "[a]dvertising goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-393(b)(9)).

5753.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5754.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and

failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5755.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5756.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia FBPA, including:

> (a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;
>
> (c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and
>
> (d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

5757.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5758.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5759.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5760.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5761.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5762.   Plaintiffs and the Class members reasonably relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

5763.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the Georgia FBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5764.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5765.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5766.  Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Ga. Code Ann. §10-1-399(b) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

5767.  As a result of Defendant's violations of the Georgia FBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Georgia FBPA.

## COUNT 336
### Unjust Enrichment
### (Georgia Law)
### (Against Sanofi)

5768.   Georgia Class Representatives Kathy Jeffries and Tyrone Houston incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5769.   This cause of action is brought on behalf of the Georgia-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5770.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

5771.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5772.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5773.  It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5774.  Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5775.  There is no express contract governing this dispute.

5776.  Plaintiffs and Class members do not have an adequate remedy at law.

### 9.    Causes of Action on Behalf of the Illinois-Sanofi Classes

### COUNT 337
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (815 Ill. Comp. Stat. Ann. 505/1, *et seq.*)
### (Against Sanofi)

5777.  Illinois Class Representatives Denise Guy, Heather Re, and Renee Chatman incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5778.  This cause of action is brought on behalf of the Illinois-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5779.  Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(c).

5780.  Plaintiffs and the Class members are "consumer[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(e).

5781.   The Ranitidine-Containing Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(b).

5782.   Defendant was and is engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(f).

5783.   The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 Ill. Comp. Stat. Ann. 510/2], approved August 5, 1965, in the conduct of any trade or commerce."  815 Ill. Comp. Stat. Ann. 505/2.

5784.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5785.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products

remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5786.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5787.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFDBPA.

5788.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5789.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5790.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5791.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5792.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5793.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Illinois CFDBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5794.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5795.   Defendant's violations present a continuing risk to Plaintiff sand the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5796.   As a result of Defendant's violations of the Illinois CFDBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFDBPA.

**COUNT 338**
**Unjust Enrichment**
**(Illinois Law)**
**(Against Sanofi)**

5797.   Illinois Class Representatives Denise Guy, Heather Re, and Renee Chatman incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5798.   This cause of action is brought on behalf of the Illinois-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5799.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

5800.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly,

Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5801.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5802.   It violates the principles of justice, equity, and good conscience for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5803.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5804.   Plaintiffs and Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

10. **Causes of Action on Behalf of the Iowa-Sanofi Classes**

### COUNT 339
### Violation of the Iowa Private Right of Action for Consumer Frauds Act
### (Iowa Code Ann. §714H.1, *et seq.*)
### (Against Sanofi)

5805. Iowa Class Representative Charles Longfield incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5806. This cause of action is brought on behalf of the Iowa-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5807. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Iowa Code Ann. §714H.2(7).

5808. Plaintiff and the Class members are "[c]onsumer[s]" within the meaning of Iowa Code Ann. §714H.2(3).

5809. The Iowa Private Right of Action for Consumer Frauds Act ("Iowa PRACFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise." Iowa Code Ann. §714H.3(1).

5810. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Iowa PRACFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably

dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5811. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Iowa PRACFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5812. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Iowa PRACFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5813. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Iowa PRACFA.

5814. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5815.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5816.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5817.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5818.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Iowa PRACFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5819.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5820.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

5821.   As a result of Defendants' violations of the Iowa PRACFA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Iowa PRACFA.

5822.   Additionally, because Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, were undertaken in willful and wanton disregard for the rights and safety of others, pursuant to Iowa Code Ann. §714H.5(4), Plaintiff and the Class members seek an additonal award of treble damages.

## COUNT 340
### Breach of Implied Warranty
### (Iowa Code §554.2314)
### (Against Sanofi)

5823.   Iowa Class Representative Charles Longfield incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5824.   This cause of action is brought on behalf of the Iowa-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5825.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Plaintiff and members of the Iowa Class and was in the business of selling such products.

5826.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5827.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5828.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

5829.  Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5830.  Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5831.   Plaintiff and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

5832.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

5833.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

5834.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 341**
**Unjust Enrichment**
**(Iowa Law)**
**(Against Sanofi)**

5835.   Iowa Class Representative Charles Longfield incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5836.   This cause of action is brought on behalf of the Iowa-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5837. Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

5838. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5839. Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5840. It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5841.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5842.   Plaintiff and Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

### 11.      Causes of Action on Behalf of the Louisiana-Sanofi Classes

**COUNT 342**
**Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law**
**(La. Stat. Ann. §51:1401, *et seq.*)**
**(Against Sanofi)**

5843.   Louisiana Class Representatives Jamie McKay, and Randy Jones incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5844.   This cause of action is brought on behalf of the Louisiana-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5845.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of La. Stat. Ann. §51:1402(8).

5846.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of La. Stat. Ann. §51:1402(1).

5847.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of La. Stat. Ann. §51:1402(10).

5848.   The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  La. Stat. Ann. §51:1405(A).

5849.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5850.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5851.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5852.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive business practices prohibited by the Louisiana CPL.

5853.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5854.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5855.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5856.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5857.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5858. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

5859. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Louisiana CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5860. Specifically, Plaintiffs and the Class were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5861. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

5862. As a result of Defendant's violations of the Louisiana CPL, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Louisiana CPL.

## COUNT 343
### Breach of Implied Warranty
### (La. Civ. Code Ann. Art. §2520)
### (Against Sanofi)

5863.   Louisiana Class Representatives Jamie McKay and Randy Jones incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5864.   This cause of action is brought on behalf of the Louisiana-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5865.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Louisiana Class Representatives and members of the Louisiana Class and was in the business of selling such products.

5866.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5867.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5868.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

5869.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5870.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5871.  Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

5872.  Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

5873.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

5874.  As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 344
## Unjust Enrichment
## (Louisiana Law)
## (Against Sanofi)

5875.   Louisiana Class Representatives Jamie McKay and Randy Jones incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5876.   This cause of action is brought on behalf of the Louisiana-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5877.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

5878.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5879.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and was knowingly enriched by its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5880.   Defendant's enrichment – the monies obtained from Plaintiffs for the Ranitidine-Containing Products – was the result of Plaintiffs' impoverishment – the receipt by Plaintiffs of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

5881.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5882.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5883.   Plaintiffs and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 12.   Causes of Action on Behalf of the Maryland-Sanofi Classes

### COUNT 345
### Violation of the Maryland Consumer Protection Act
### (Md. Code Ann., Com. Law §13-101, *et seq.*)
### (Against Sanofi)

5884.   Maryland Class Representatives Alberta Griffin and Ida Adams incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5885.   This cause of action is brought on behalf of the Maryland-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5886.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Md. Code Ann., Com. Law §13-101(h).

5887.   Plaintiff and the Class members are "[c]onsumer[s]" within the meaning of Md. Code Ann., Com. Law §13-101(c)(1).

5888.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Md. Code Ann., Com. Law §13-101(f).

5889.   The Maryland Consumer Protection Act ("Maryland CPA") prohibits "[u]nfair, abusive, or deceptive trade practices."  Md. Code Ann., Com. Law §13-301.

5890.   The Maryland CPA makes unlawful specific acts, including:

(a)   "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" (Md. Code Ann., Com. Law §13-301(1));

(b)   "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have" (Md. Code Ann., Com. Law §13-301(2)(i));

(c)   "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not" (Md. Code Ann., Com. Law §13-301(2)(iv));

(d)   "[f]ailure to state a material fact if the failure deceives or tends to deceive" (Md. Code Ann., Com. Law §13-301(3));

(e)   "[a]dvertis[ing] or offer[ing] of consumer goods, consumer realty, or consumer services . . . [w]ithout intent to sell, lease, or rent them as advertised or offered" (Md. Code Ann., Com. Law §13-301(5)(i)); and

(f)   "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with . . . [t]he promotion or sale of any consumer goods" (Md. Code Ann., Com. Law §13-301(9)(i)).

5891.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting,

omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5892.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5893.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5894.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Maryland CPA, including:

> (a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

> (b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)     failing to disclose that the Ranitidine-Containing Products are defective and inherently dangerous in the course of the sale of the Ranitidine-Containing Products; and

(e)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

5895.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5896.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5897.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

5898.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5899.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5900. Plaintiff and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

5901. Plaintiff and the Class members were aggrieved by Defendant's violations of the Maryland CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5902. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5903. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

5904. As a result of Defendant's violations of the Maryland CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

**COUNT 346**
**Breach of Implied Warranty**
**(Md. Code Ann. §2-314)**
**(Against Sanofi)**

5905.   Maryland Class Representatives Alberta Griffin and Ida Adams incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5906.   This cause of action is brought on behalf of the Maryland-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5907.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Maryland Class Representatives and members of the Maryland Class and was in the business of selling such products.

5908.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5909.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5910.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

5911.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5912.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5913.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

5914.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

5915.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.   Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

5916.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 347**
**Unjust Enrichment**
**(Maryland Law)**
**(Against Sanofi)**

5917.   Maryland Class Representatives Alberta Griffin and Ida Adams incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5918.   This cause of action is brought on behalf of the Maryland-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5919.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

5920.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5921.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5922.   It would be unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5923.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5924.   Plaintiff and Class members do not have an adequate remedy at law.

### 13.   Causes of Action on Behalf of the Massachusetts-Sanofi Classes

**COUNT 348**
**Violation of the Deceptive Acts or Practices Prohibited by Massachusetts Law**
**(Mass. Gen. Laws Ann. ch. 93a, §1, *et seq.*)**
**(Against Sanofi)**

5925.   Massachusetts Class Representatives Michelle Smith and Jennifer Bond incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5926.   This cause of action is brought on behalf of the Massachusetts-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5927.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(a).

5928.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(b).

5929.   The Massachusetts consumer protection law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws Ann. ch. 93A, §2(a).

5930.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5931.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5932.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5933.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive business practices prohibited by the Massachusetts Act.

5934.  Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5935.  Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5936.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5937.  The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5938.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the Massachusetts Act because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5939.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5940.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5941.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Mass. Gen. Laws Ann. ch. 93A, §9(3) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiff and the Class members are entitled.

5942.   As a result of Defendant's violations of the Massachusetts Act, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Massachusetts Act.

**COUNT 349**
**Breach of Implied Warranty**
**(Mass. Gen. Laws ch. 106 §2-314)**
**(Against Sanofi)**

5943.   Massachusetts Class Representatives Michelle Smith and Jennifer Bond incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5944.   This cause of action is brought on behalf of the Massachusetts-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5945.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Massachusetts Class Representatives and members of the Massachusetts Class and was in the business of selling such products.

5946.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5947.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5948.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

5949.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5950.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

5951.   Plaintiffs and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

5952.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

5953.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

5954.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 350**
**Unjust Enrichment**
**(Massachusetts Law)**
**(Against Sanofi)**

5955.   Massachusetts Class Representatives Michelle Smith and Jennifer Bond incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5956.   This cause of action is brought on behalf of the Massachusetts-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5957.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

5958.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5959.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and was knowingly enriched from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5960.   Defendant's enrichment – the monies obtained from Plaintiffs' and Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and Class members' impoverishment – *i.e.*, Plaintiffs' and Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

5961.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5962.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5963.   Plaintiffs and Class members do not have an adequate remedy at law.

### 14.    Causes of Action on Behalf of the Michigan-Sanofi Classes

**COUNT 351**
**Violation of the Michigan Consumer Protection Act**
**(Mich. Comp. Laws Ann. §445.901, *et seq.*)**
**(Against Sanofi)**

5964.   Michigan Class Representatives Arthur Gamble, Jerry Hunt, Jody Beal, and Roy Armstrong incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5965.   This cause of action is brought on behalf of the Michigan-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5966.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(d).

5967.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(g).

5968.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws Ann. §445.903(1).

5969.   The Michigan CPA makes unlawful specific acts, including:

    (a)   "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Mich. Comp. Laws Ann. §445.903(1)(c));

    (b)   "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Mich. Comp. Laws Ann. §445.903(1)(e)); and

    (c)   "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented" (Mich. Comp. Laws Ann. §445.903(1)(g)).

5970.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5971.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products

remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5972.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5973.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Michigan CPA, including:

   (a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

   (b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

   (c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

   (d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

5974.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5975.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5976.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

5977.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

5978.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

5979.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Michigan CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

5980.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

5981.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5982.   As a result of Defendant's violations of the Michigan CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Michigan CPA.

<div align="center">

**COUNT 352**
**Unjust Enrichment**
**(Michigan Law)**
**(Against Sanofi)**

</div>

5983.   Michigan Class Representatives Arthur Gamble, Jerry Hunt, Jody Beal, and Roy Armstrong incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5984.   This cause of action is brought on behalf of the Michigan-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5985.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

5986.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the

products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

5987.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5988.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

5989.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

5990.   There is no express contract governing this dispute.

5991.   Plaintiffs and Class members do not have an adequate remedy at law.

15.    **Causes of Action on Behalf of the Minnesota-Sanofi Classes**

**COUNT 353**
**Violation of the Minnesota Prevention of Consumer Fraud Act**
**(Minn. Stat. Ann. §325F.68, *et seq.*)**
**(Against Sanofi)**

5992.   Minnesota Class Representatives Donald Northrup and Brad Hoag incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

5993.   This cause of action is brought on behalf of the Minnesota-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

5994.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

5995.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

5996.   The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged." Minn. Stat. Ann. §325F.69(1). Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

5997.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting,

omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

5998.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

5999.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6000.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

6001.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6002.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6003.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6004.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

6005.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6006.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

6007.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6008.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6009.  Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6010.  As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

### COUNT 354
### Breach of Implied Warranty
### (Minn. Stat. Ann. §336.2-314)
### (Against Sanofi)

6011.  Minnesota Class Representatives Donald Northrup and Brad Hoag incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6012.  This cause of action is brought on behalf of the Minnesota-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6013.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

6014.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6015.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6016.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

6017.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6018.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6019.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

6020.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

6021.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

6022.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 355**
**Unjust Enrichment**
**(Minnesota Law)**
**(Against Sanofi)**

</div>

6023.   Minnesota Class Representatives Donald Northrup and Brad Hoag incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6024.   This cause of action is brought on behalf of the Minnesota-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6025. Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

6026. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6027. Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6028. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6029.  Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6030.  Plaintiffs and Class members do not have an adequate remedy at law.

**16.    Causes of Action on Behalf of the Mississippi-Sanofi Classes**

**COUNT 356**
**Breach of Implied Warranty**
**(Miss. Code Ann. §75-2-314)**
**(Against Sanofi)**

6031.  Mississippi Class Representative John Rachal incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6032.  This cause of action is brought on behalf of the Mississippi-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6033.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Mississippi Class Representative and members of the Mississippi Class and was in the business of selling such products.

6034.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6035.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6036.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

6037.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6038.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6039.   Plaintiff and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

6040.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

6041.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

6042.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 357**
**Unjust Enrichment**
**(Mississippi Law)**
**(Against Sanofi)**

6043.   Mississippi Class Representative John Rachal incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6044.   This cause of action is brought on behalf of the Mississippi-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6045.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

6046.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products labels that exceeded the time period during which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

6047.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and was knowingly enriched by its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products labels that exceeded the time period during which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6048.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6049.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and therefore restitution or disgorgement of the amount of their unjust enrichment is required.

6050.   There is no express contract governing this dispute.

6051.   Plaintiff and Class members do not have an adequate remedy at law.

### 17.   Causes of Action on Behalf of the Missouri-Sanofi Classes

### COUNT 358
### Violation of the Missouri Merchandising Practices Act
### (Mo. Ann. Stat. §407.010, *et seq.*)
### (Against Sanofi)

6052.   Missouri Class Representative Lorie Kendall-Singer incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6053.   This cause of action is brought on behalf of the Missouri-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6054.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Mo. Ann. Stat. §407.010(5).

6055.   Defendant was and is engaged in "[t]rade or commerce" within the meaning of Mo. Ann. Stat. §407.010(7).

6056.   The Missouri Merchandising Practices Act ("Missouri MPA") prohibits "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce."  Mo. Ann. Stat. §407.020(1).

6057.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably

dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6058.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6059.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6060.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Missouri MPA.

6061.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6062.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6063.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6064.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

6065.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6066.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Missouri MPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6067.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6068.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

6069.   As a result of Defendant's violations of the Missouri MPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Missouri MPA.

## COUNT 359
### Breach of Implied Warranty
### (Mo. Rev. Stat. §400.2-314)
### (Against Sanofi)

6070.   Missouri Class Representative Lorie Kendall-Singer incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6071.   This cause of action is brought on behalf of the Missouri-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6072.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Missouri Class Representative and members of the Missouri Class and was in the business of selling such products.

6073.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6074.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6075.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

6076.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6077.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6078.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

6079.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

6080.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

6081.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 360**
**Unjust Enrichment**
**(Missouri Law)**
**(Against Sanofi)**

6082.   Missouri Class Representative Lorie Kendall-Singer incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6083.   This cause of action is brought on behalf of the Missouri-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6084.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

6085.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products,

which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6086.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6087.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6088.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6089.   There is no express contract governing this dispute.

6090.   Plaintiff and Class members do not have an adequate remedy at law.

18.     **Causes of Action on Behalf of the Nebraska-Sanofi Classes**

**COUNT 361**
**Violation of the Nebraska Consumer Protection Act**
**(Neb. Rev. Stat. Ann. §59-1601, *et seq.*)**
**(Against Sanofi)**

6091.   Nebraska Class Representative Gaylord Stauffer incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6092.   This cause of action is brought on behalf of the Nebraska-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6093.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Neb. Rev. Stat. Ann. §59-1601(1).

6094.   The Ranitidine-Containing Products are "[a]ssets" within the meaning of Neb. Rev. Stat. Ann. §59-1601(3).

6095.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Neb. Rev. Stat. Ann. §59-1601(2).

6096.   The Nebraska Consumer Protection Act ("Nebraska CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Neb. Rev. Stat. Ann. §59-1602.

6097.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nebraska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6098.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nebraska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6099.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nebraska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6100.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Nebraska CPA.

6101.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6102.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6103.  Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6104.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

6105.  The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6106.  Plaintiff and the Class members were aggrieved by Defendant's violations of the Nebraska CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6107.  Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6108.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6109.   As a result of Defendant's violations of the Nebraska CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Nebraska CPA.

<div align="center">

**COUNT 362**
**Breach of Implied Warranty**
**(Neb. U.C.C. §2-314)**
**(Against Sanofi)**

</div>

6110.   Nebraska Class Representative Gaylord Stauffer incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6111.   This cause of action is brought on behalf of the Nebraska-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6112.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Nebraska Class Representatives and members of the Nebraska Class and was in the business of selling such products.

6113.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6114.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6115.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

6116.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6117.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6118.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

6119.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

6120.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

6121.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 363**
**Unjust Enrichment**
**(Nebraska Law)**
**(Against Sanofi)**

</div>

6122.   Nebraska Class Representative Gaylord Stauffer incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6123.   This cause of action is brought on behalf of the Nebraska-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6124.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

6125.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and,

thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6126.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6127.   It is unjust and unfair for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6128.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6129.   There is no express contract governing this dispute.

6130.   Plaintiff and Class members do not have an adequate remedy at law.

19.   **Causes of Action on Behalf of the New Hampshire-Sanofi Classes**

**COUNT 364**
**Violation of the New Hampshire Consumer Protection Act**
**(N.H. Rev. Stat. Ann. §358-A:1, *et seq.*)**
**(Against Sanofi)**

6131.   New Hampshire Class Representative Rafael Bermudez incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6132.   This cause of action is brought on behalf of the New Hampshire-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6133.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of N.H. Rev. Stat. Ann. §358-A:1(I).

6134.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of N.H. Rev. Stat. Ann. §358-A:1(II).

6135.   The New Hampshire Consumer Protection Act ("New Hampshire CPA") prohibits "any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce."  N.H. Rev. Stat. Ann. §358-A:2.

6136.   The New Hampshire CPA makes unlawful specific acts, including:

(a)   "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (N.H. Rev. Stat. Ann. §358-A:2(V));

(b)   "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." (N.H. Rev. Stat. Ann. §358-A:2(VII)); and

(c)   "[a]dvertising goods or services with intent not to sell them as advertised." (N.H. Rev. Stat. Ann. §358-A:2(IX)).

6137.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Hampshire CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6138.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Hampshire CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6139.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Hampshire CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6140.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Hampshire CPA, including:

        (a)      representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

        (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

        (c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

6141.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6142.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffsand the Class members in a uniform manner.

6143.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6144.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

6145.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6146.   Plaintiffs and the Class members were aggrieved by Defendant's violations of New Hampshire CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6147.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6148.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6149.   As a result of Defendant's violations of the New Hampshire CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Hampshire CPA.

**COUNT 365**
**Breach of Implied Warranty**
**(N.H. Rev. Stat. Ann. §382-A:2-314)**
**(Against Sanofi)**

6150.   New Hampshire Class Representative Rafael Bermudez incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6151.   This cause of action is brought on behalf of the New Hampshire-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6152.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Hampshire Class Representatives and members of the New Hampshire Class and was in the business of selling such products.

6153.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6154.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6155.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

6156.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6157.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6158.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

6159.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

6160.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

6161.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 366Unjust Enrichment**
**(New Hampshire Law)**
**(Against Sanofi)**

6162.   New Hampshire Class Representative Rafael Bermudez incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6163.   This cause of action is brought on behalf of the New Hampshire-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6164.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

6165.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6166.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6167.   It is unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-

Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6168.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6169.   There is no valid, express contract governing this dispute.

6170.   Plaintiff and Class members do not have an adequate remedy at law.

### 20.   Causes of Action on Behalf of the New Jersey-Sanofi Classes

### COUNT 367
### Violation of the New Jersey Consumer Fraud Act
### (N.J. Stat. Ann. §56:8-1, *et seq.*)
### (Against Sanofi)

6171.   New Jersey Class Representatives James Adamo, Mary McMillan, and Mary Moronski incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6172.   This cause of action is brought on behalf of the New Jersey-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6173.   Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.J. Stat. Ann. §56:8-1(d).

6174.   The Ranitidine-Containing Products are "merchandise" within the meaning of N.J. Stat. Ann. §56:8-1(c).

6175.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Jersey Consumer Fraud Act ("New Jersey CFA") by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were

inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.  N.J. Stat. Ann. §56:8-1, *et seq.*

6176.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Jersey CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6177.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Jersey CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6178.  Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Jersey CFA.

6179.  Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6180.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6181.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

6182.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6183.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Jersey CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6184.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6185.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6186.   As a result of Defendant's violations of the New Jersey CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Jersey CFA.

<div align="center">

**COUNT 368**
**Breach of Implied Warranty**
**(N.J. Stat. Ann. §12A:2-314)**
**(Against Sanofi)**

</div>

6187.   New Jersey Class Representatives James Adamo, Mary McMillan, and Mary Moronski incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6188.   This cause of action is brought on behalf of the New Jersey-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6189.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Jersey Class Representatives and members of the New Jersey Class and was in the business of selling such products.

6190.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6191.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6192.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

6193.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6194.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6195.   Plaintiffs and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

6196.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

6197.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

6198.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### COUNT 369
### Unjust Enrichment
### (New Jersey Law)
### (Against Sanofi)

6199.   New Jersey Class Representatives James Adamo, Mary McMillan, and Mary Moronski incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6200.   This cause of action is brought on behalf of the New Jersey-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6201.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

6202.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the

products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6203.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6204.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6205.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6206.   Plaintiff sand Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

21.     **Causes of Action on Behalf of the New Mexico-Sanofi Classes**

**COUNT 370**
**Violation of the New Mexico Unfair Trade Practices Act**
**(N.M. Stat. Ann. §57-12-1, *et seq.*)**
**(Against Sanofi)**

6207.   New Mexico Class Representatives Ernesto Sanchez and George Tapia incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6208.   This cause of action is brought on behalf of the New Mexico-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6209.   Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

6210.   Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

6211.   The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person." N.M. Stat. Ann. §57-12-2(D). The New Mexico UTPA also makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." N.M. Stat. Ann. §57-12-2(E).

6212.   The New Mexico UTPA makes unlawful specific acts, including:

(a)     "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

(b)     "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

(c)     "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

6213.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6214.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6215.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6216.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Mexico UTPA, including:

      (a)    representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

      (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

      (c)    using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and

      (d)    acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.

6217.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6218.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6219.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6220.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the

inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

6221.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6222.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6223.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6224.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6225.   As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

## COUNT 371
### Breach of Implied Warranty
### (N.M. Stat. Ann. §55-2-314)
### (Against Sanofi)

6226.   New Mexico Class Representatives Ernesto Sanchez and George Tapia incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6227.   This cause of action is brought on behalf of the New Mexico-Sanofi Class (for the purpose of this section, "Class") against [Brand Manufacturer Defendant] (for purposes of this Count only, "Defendant").

6228.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

6229.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6230.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6231.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

6232.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6233.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6234.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

6235.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

6236.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

6237.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 372**
**Unjust Enrichment**
**(New Mexico Law)**
**(Against Sanofi)**

6238.   New Mexico Class Representatives Ernesto Sanchez and George Tapia incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6239.   This cause of action is brought on behalf of the New Mexico-Sanofi Class (for the purpose of this section, "Class") against Brand Manufacturer Defendant Sanofi (for purposes of this Count only, "Defendant").

6240.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

6241.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6242.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6243.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6244.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6245.   There is no express contract governing this dispute.

6246.   Plaintiffs and Class members do not have an adequate remedy at law.

### 22.   Causes of Action on Behalf of the New York-Sanofi Classes

### COUNT 373
### Violation of New York Deceptive Acts and Practices Act
### (N.Y. Gen. Bus. Law §349)
### (Against Sanofi)

6247.   New York Class Representatives Benny Fazio, Francis Neary, Glorimar Rodriguez, Mary McCullen, Migdalia Kinney, Richard Froehlich, Silomie Clarke, and Yesenia Melillo incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6248.   This cause of action is brought on behalf of the New York-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6249.   Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

6250.   The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §349(a).

6251.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6252.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6253.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-

Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6254.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

6255.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6256.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6257.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6258.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii)

the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

6259.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6260.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6261.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6262.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6263.   As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

**COUNT 374**
**Violation of the New York False Advertising Act**
**(N.Y. Gen. Bus. Law §350)**
**(Against Sanofi)**

6264.   New York Class Representatives Benny Fazio, Francis Neary, Glorimar Rodriguez, Mary McCullen, Migdalia Kinney, Richard Froehlich, Silomie Clarke, and Yesenia Melillo incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6265.   This cause of action is brought on behalf of the New York-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6266.   Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

6267.   The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §350.  False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

6268.   Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

6269.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting,

omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6270.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6271.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6272.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

6273.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6274.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6275.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6276.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

6277.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6278.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6279.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6280.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6281.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

6282.   As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

**COUNT 375**
**Breach of Implied Warranty**
**(N.Y. U.C.C. Law §2-314)**
**(Against Sanofi)**

6283.   New York   Class Representatives Benny Fazio, Francis Neary, Glorimar Rodriguez, Mary McCullen, Migdalia Kinney, Richard Froehlich, Silomie Clarke, and Yesenia

Melillo incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6284.   This cause of action is brought on behalf of the New York-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6285.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representative and members of the New York Class and was in the business of selling such products.

6286.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6287.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6288.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

6289.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6290.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6291.   Plaintiffs and each member of the Class has had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

6292.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

6293.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

6294.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 376
## Unjust Enrichment
## (New York Law)
## (Against Sanofi)

6295.   New York Class Representatives Benny Fazio, Francis Neary, Glorimar Rodriguez, Mary McCullen, Migdalia Kinney, Richard Froehlich, Silomie Clarke, and Yesenia Melillo incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6296.   This cause of action is brought on behalf of the New York-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6297.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

6298.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6299.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and

that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6300.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6301.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6302.   Plaintiffs and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 23.   Causes of Action on Behalf of the North Carolina-Sanofi Classes

**COUNT 377**
**Violation of the North Carolina Unfair and Deceptive Trade Practices Act**
**(N.C. Gen. Stat. Ann. §75-1.1, *et seq.*)**
**(Against Sanofi)**

6303.   North Carolina Class Representatives Dennis Robbins and Sharon Parks incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6304.   This cause of action is brought on behalf of the North Carolina Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6305.   Defendant was and is engaged in "commerce" within the meaning of N.C. Gen. Stat. Ann. §75-1.1(b).

6306.   The North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," N.C. Gen. Stat. Ann. §75-1.1(a), and provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the law.  N.C. Gen. Stat. Ann. §75-16.

6307.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6308.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6309.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6310.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the North Carolina UDTPA.

6311.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6312.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6313.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6314.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

6315.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6316.   Plaintiff and the Class members were aggrieved by Defendant's violations of the North Carolina UDTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6317.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6318.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6319.   As a result of Defendant's violations of the North Carolina UDTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the North Carolina UDTPA.

**COUNT 378**
**Breach of Implied Warranty**
**(N.C. Gen. Stat. Ann. §25-2-314)**
**(Against Sanofi)**

6320.   North Carolina Class Representatives Dennis Robbins and Sharon Parks incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6321.   This cause of action is brought on behalf of the North Carolina-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6322.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to North Carolina Class Representatives and members of the North Carolina Class and was in the business of selling such products.

6323.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6324.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6325.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

6326.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6327.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6328.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

6329.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

6330.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

6331.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 379
## Unjust Enrichment
## (North Carolina Law)
## (Against Sanofi)

6332.  North Carolina Class Representatives Dennis Robbins and Sharon Parks incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6333.  This cause of action is brought on behalf of the North Carolina-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6334.  Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

6335.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6336.  Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6337. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6338. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6339. Plaintiff and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 24. Causes of Action on Behalf of the Ohio-Sanofi Classes

**COUNT 380**
**Breach of Implied Warranty**
**(Ohio Rev. Code Ann. §1302.27)**
**(Against Sanofi)**

6340. Ohio Class Representatives Michael Galloway and Chris Troyan incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6341. This cause of action is brought on behalf of the Ohio-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6342. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Ohio Class Representatives and members of the Ohio Class and was in the business of selling such products.

6343.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6344.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6345.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

6346.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6347.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6348.   Plaintiffs and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

6349.  Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

6350.  Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

6351.  As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 381
### Unjust Enrichment
### (Ohio Law)
### (Against Sanofi)

6352.  Ohio Class Representatives Michael Galloway and Chris Troyan incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6353.  This cause of action is brought on behalf of the Ohio-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6354.  Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

6355.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6356.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6357.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6358.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6359.   Plaintiffs and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 25.   Causes of Action on Behalf of the Oklahoma-Sanofi Classes

### COUNT 382
### Violation of the Oklahoma Consumer Protection Act
### (Okla. Stat. tit. 15, §751, *et seq.*)
### (Against Sanofi)

6360.   Oklahoma Class Representatives Billy Naab and Demarco Grayson incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6361.   This cause of action is brought on behalf of the Oklahoma-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6362.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Okla. Stat. tit. 15, §752(1).

6363.   Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Okla. Stat. tit. 15, §752(2).

6364.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Okla. Stat. tit. 15, §752(7).

6365.   The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits numerous unlawful acts, including misleading representations, false advertisements, and false statements. Okla. Stat. tit. 15, §753.   The Oklahoma CPA defines "[d]eceptive trade practice" as "a misrepresentation, omission or other practice that has deceived or . . . mislead a person to the detriment of that person."   Okla. Stat. tit. 15, §752(13).   The Oklahoma CPA defines "[u]nfair trade practice" as "any practice which offends established public policy or if the practice is

immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Okla. Stat.

tit. 15, §752(14).

6366.   The Oklahoma CPA makes unlawful specific acts, including:

> (a)   "[m]ak[ing] a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction" (Okla. Stat. tit. 15, §753(5));

> (b)   "[r]epresent[ing], knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another" (Okla. Stat. tit. 15, §753(7));

> (c)   "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised" (Okla. Stat. tit. 15, §753(8)); and

> (d)   "[c]ommit[ing] an unfair or deceptive trade practice as defined in Section 752" (Okla. Stat. tit. 15, §753(20)).

6367.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6368.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6369.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6370.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Oklahoma CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

6371.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6372.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6373.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of

Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6374.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

6375.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6376.   Plaintiff and the Class members were aggrieved by Defendant's violations of Oklahoma CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6377.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6378.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6379.   As a result of Defendant's violations of the Oklahoma CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Oklahoma CPA.

<div align="center">

**COUNT 383**
**Breach of Implied Warranty**
**(Okla. Stat. tit. 12A §2-314)**
**(Against Sanofi)**

</div>

6380.   Oklahoma Class Representatives Billy Naab and Demarco Grayson incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6381.   This cause of action is brought on behalf of the Oklahoma-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6382.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Oklahoma Class Representative and members of the Oklahoma Class and was in the business of selling such products.

6383.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6384. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6385. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

6386. Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6387. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6388. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

6389. Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

6390. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

6391.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 384**
**Unjust Enrichment**
**(Oklahoma Law)**
**(Against Sanofi)**

</div>

6392.   Oklahoma Class Representatives Billy Naab and Demarco Grayson incorporate the the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6393.   This cause of action is brought on behalf of the Oklahoma-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6394.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

6395.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly,

Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6396.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and was knowingly enriched by its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6397.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6398.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6399.   Plaintiffs and Class members do not have an adequate remedy at law.

26. **Causes of Action on Behalf of the Pennsylvania-Sanofi Classes**

**COUNT 385**
**Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**(73 Pa. C.S. §201-1, *et seq.*)**
**(Against Sanofi)**

6400. Pennsylvania Class Representative Nicholas Hazlett incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6401. This cause of action is brought on behalf of the Pennsylvania-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6402. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of 73 Pa. C.S. §201-2(2).

6403. Plaintiff and the Class members purchased the Ranitidine-Containing Products "primarily for personal, family or household purposes" within the meaning of 73 Pa. C.S. §201-9.2(a).

6404. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of 73 Pa. C.S. §201-2(3).

6405. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. C.S. §201-3.

6406. The Pennsylvania CPL makes unlawful specific acts, including:

(a) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (73 Pa. C.S. §201-2(4)(v));

(b) "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (73 Pa. C.S. §201-2(4)(vii));

- 1451 -

(c)     "[a]dvertising goods or services with intent not to sell them as advertised" (73 Pa. C.S. §201-2(4)(ix)); and

(d)     "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" (73 Pa. C.S. §201-2(4)(xxi)).

6407.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6408.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6409.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6410.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Pennsylvania CPL, including:

     (a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

     (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

     (c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

     (d)     engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

6411.  Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6412.  Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6413.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

6414.  The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6415.   Plaintiff and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

6416.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Pennsylvania CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6417.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6418.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6419.   As a result of Defendant's violations of the Pennsylvania CPL, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Pennsylvania CPL.

## COUNT 386
### Breach of Implied Warranty
### (13 Pa. Cons. Stat. §2314)
### (Against Sanofi)

6420.   Pennsylvania Class Representative Nicholas Hazlett incorporatesthe preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6421.   This cause of action is brought on behalf of the Pennsylvania-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6422.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Pennsylvania Class Representatives and members of the Pennsylvania Class and was in the business of selling such products.

6423.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6424.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6425.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

6426.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6427. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6428. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

6429. Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

6430. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

6431. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 387**
**Unjust Enrichment**
**(Pennsylvania Law)**
**(Against Sanofi)**

6432. Pennsylvania Class Representative Nicholas Hazlett incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6433. This cause of action is brought on behalf of the Pennsylvania-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6434. Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

6435. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6436. Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6437.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6438.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6439.   There is no express contract governing this dispute.

6440.   Plaintiff and Class members do not have an adequate remedy at law.

### 27.   Causes of Action on Behalf of Puerto Rico-Sanofi Classes

**COUNT 388**
**Breach of Implied Warranty**
**(P.R. Laws Ann. tit. 31, §3841)**
**(Against Sanofi)**

6441.   Puerto Rico Class Representative Gloria Colon incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6442.   This cause of action is brought on behalf of the Puerto Rico-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6443.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Puerto Rico Class Representatives and members of the Puerto Rico Class and was in the business of selling such products.

6444. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6445. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6446. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

6447. Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6448. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6449. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

6450.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

6451.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

6452.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 389**
**Unjust Enrichment**
**(Puerto Rico Law)**
**(Against  Sanofi)**

6453.   Puerto Rico Class Representative Gloria Colon incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6454.   This cause of action is brought on behalf of the Puerto Rico-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6455.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

6456.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products,

which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6457.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and was knowingly enriched by its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6458.   Defendant's enrichment – the monies obtained from Plaintiff's and Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiff's and Class members' impoverishment – *i.e.*, Plaintiff's and Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

6459.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6460.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6461.   Plaintiff and Class members do not have an adequate remedy at law.

**28.   Causes of Action on Behalf of the South Carolina-Sanofi Classes**

**COUNT 390**
**Violation of the South Carolina Unfair Trade Practices Act**
**(S.C. Code Ann. §39-5-10, *et seq.*)**
**(Against Sanofi)**

6462.   South Carolina Class Representative Michael Futrell incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6463.   This cause of action is brought on behalf of the South Carolina-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6464.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of S.C. Code Ann. §39-5-10(a).

6465.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of S.C. Code Ann. §39-5-10(b).

6466.   The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  S.C. Code Ann. §39-5-20(a).

6467.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective,

unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6468.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6469.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6470.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the South Carolina UTPA.

6471.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6472.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6473.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

6474.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6475.   Plaintiff and the Class members were aggrieved by Defendant's violations of the South Carolina UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6476.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6477.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6478.   As a result of Defendant's violations of the South Carolina UTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the South Carolina UTPA.

## COUNT 391
### Breach of Implied Warranty
### (S.C. Code Ann. §36-2-314)
### (Against Sanofi)

6479.   South Carolina Class Representative Michael Futrell incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6480.   This cause of action is brought on behalf of the South Carolina-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6481.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the South Carolina Class Representative and members of the South Carolina Class and was in the business of selling such products.

6482.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6483.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6484.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

6485.  Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6486.  Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6487.  Plaintiff and each member of the Class has had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

6488.  Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

6489.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

6490.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### COUNT 392
### Unjust Enrichment
### (South Carolina Law)
### (Against Sanofi)

6491.   South Carolina Class Representative Michael Futrell incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6492.   This cause of action is brought on behalf of the South Carolina Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6493.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

6494.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and,

thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6495.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly realized a benefit from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6496.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6497.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6498.   Plaintiff and Class members do not have an adequate remedy at law.

29.     **Causes of Action on Behalf of Tennessee-Sanofi Classes**

**COUNT 393**
**Violation of the Tennessee Consumer Protection Act of 1977**
**(Tenn. Code Ann. §47-18-101, *et seq.*)**
**(Against Sanofi)**

6499.   Tennessee Class Representative Dale Hunter incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6500.   This cause of action is brought on behalf of the Tennessee-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6501.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Tenn. Code Ann. §47-18-103(14).

6502.   Plaintiff and the Class members are "[c]onsumer[s]" within the meaning of Tenn. Code Ann. §47-18-103(3).

6503.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Tenn. Code Ann. §47-18-103(8).

6504.   Defendant was and is engaged in "[t]rade" or "commerce" or "consumer transaction[s]" within the meaning of Tenn. Code Ann. §47-18-103(20).

6505.   The Tennessee Consumer Protection Act of 1977 ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce."  Tenn. Code Ann. §47-18-104(a).

6506.   The Tennessee CPA makes unlawful specific acts, including:

(a)      "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tenn. Code Ann. §47-18-104(b)(5));

(b)     "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (Tenn. Code Ann. §47-18-104(b)(7)); and

(c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Tenn. Code Ann. §47-18-104(b)(9)).

6507.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6508.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6509.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6510.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Tennessee CPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

6511.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6512.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6513.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6514.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

6515.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6516.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Tennessee CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6517.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6518.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6519.   As a result of Defendant's violations of the Tennessee CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Tennessee CPA.

**COUNT 394**
**Breach of Implied Warranty**
**(Tenn. Code Ann. §47-2-314)**
**(Against Sanofi)**

6520.   Tennessee Class Representative Dale Hunter incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6521.   This cause of action is brought on behalf of the Tennessee-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6522.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Tennessee Class Representatives and members of the Tennessee Class and was in the business of selling such products.

6523.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6524.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6525.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

6526.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6527.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6528.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

6529.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

6530.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

6531.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 395**
**Unjust Enrichment**
**(Tennessee Law)**
**(Against Sanofi)**

6532.   Tennessee Class Representative Dale Hunter incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6533.   This cause of action is brought on behalf of the Tennessee-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6534.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

6535.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6536.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6537.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6538.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6539.   There is no existing, enforceable contract governing this dispute.

6540.   Plaintiff and Class members do not have an adequate remedy at law.

### 30.   Causes of Action on Behalf of the Texas-Sanofi Classes

**COUNT 396**
**Violation of the Texas Deceptive Trade Practices-Consumer Protection Act**
**(Tex. Bus. & Com. Code Ann. §17.41, *et seq.*)**
**(Against Sanofi)**

6541.   Texas Class Representatives Marianella Villanueva, Ronda Lockett, Sylvia Yoshida, Agapito It Aleman, Gina Martinez, Liliana Del Valle, and Marilyn Abraham incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6542.   This cause of action is brought on behalf of the Texas-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6543.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

6544.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

6545.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

6546.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

6547.   The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

6548.   The Texas DTPA makes unlawful specific acts, including:

(a)   "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

(b)   "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

(c)   "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

6549.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably

dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6550. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6551. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6552. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

      (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

      (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

      (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

6553.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6554.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6555.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6556.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

6557.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6558.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

6559.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6560.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6561.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6562.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the

requisite time period, Plaintiffs seek all damages and relief to which Plaintiff and the Class members are entitled.

6563.  As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

## COUNT 397
### Breach of Implied Warranty
### (Tex. Bus. & Com. Code Ann. §2-314)
### (Against Sanofi)

6564.  Texas Class Representatives Marianella Villanueva, Ronda Lockett, Sylvia Yoshida, Agapito It Aleman, Gina Martinez, Liliana Del Valle, and Marilyn Abraham incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6565.  This cause of action is brought on behalf of the Texas-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6566.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

6567.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6568.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6569.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

6570.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6571.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6572.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

6573.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

6574.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

6575.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 398**
**Unjust Enrichment**
**(Texas Law)**
**(Against Sanofi)**

6576.   Texas Class Representatives Marianella Villanueva, Ronda Lockett, Sylvia Yoshida, Agapito It Aleman, Gina Martinez, Liliana Del Valle, and Marilyn Abraham incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6577.   This cause of action is brought on behalf of the Texas-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6578.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

6579.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and,

thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6580. Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6581. It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6582. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6583. Plaintiffs and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

31.     **Causes of Action on Behalf of the Utah-Sanofi Classes**

### COUNT 399
### Violation of the Utah Consumer Sales Practices Act
### (Utah. Code Ann. §13-11-1, *et seq.*)
### (Against Sanofi)

6584.   Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6585.   This cause of action is brought on behalf of the Utah-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6586.   Defendant is a "[s]upplier" within the meaning of Utah Code Ann. §13-11-3(6).

6587.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Utah Code Ann. §13-11-3(5).

6588.   Defendant was and is engaged in "consumer transactions" within the meaning of Utah Code Ann. §13-11-3(2)(a).

6589.   The Utah Consumer Sales Practices Act ("Utah CSPA") prohibits any "deceptive act or practice by a supplier in connection with a consumer transaction." Utah Code Ann. §13-11-4(1). "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. Utah Code Ann. §13-11-5(1).

6590.   The Utah CSPA makes unlawful specific acts, including:

   (a)   "indicat[ing] that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" (Utah Code Ann. §13-11-4(2)(a)); and

   (b)   "indicat[ing] that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not" (Utah Code Ann. §13-11-4(2)(b)).

6591.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah CSPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6592.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah CSPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6593.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah CSPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6594.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Utah CSPA, including:

      (a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have; and

      (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not.

6595.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6596.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6597.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6598.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

6599.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6600.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Utah CSPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6601.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6602.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6603.   As a result of Defendant's violations of the Utah CSPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Utah CSPA.

## COUNT 400
### Violation of the Utah Truth in Advertising Law
### (Utah Code Ann. §13-11a-1, *et seq.*)
### (Against Sanofi)

6604.   Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6605.   This cause of action is brought on behalf of the Utah-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6606.    Defendant is a "[s]upplier" within the meaning of Utah Code Ann. §13-11a-2(17).

6607.    Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Utah Code Ann. §13-11a-2(7).

6608.    The Ranitidine-Containing Products are "goods" within the meaning of Utah Code Ann. §13-11a-2(4).

6609.    The Utah Truth in Advertising Law ("Utah TAL") prohibits any deceptive practice undertaken "in the course of a person's business."  Utah Code Ann. §13-11a-3(1).

6610.    The Utah TAL makes unlawful specific acts, including:

(a)    "represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have" (Utah Code Ann. §13-11a-3(1)(e));

(b)    "represent[ing] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Utah Code Ann. §13-11a-3(1)(g));

(c)    "advertis[ing] goods or services with intent not to sell them as advertised" (Utah Code Ann. §13-11a-3(1)(i)); and

(d)    "engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding" (Utah Code Ann. §13-11a-3(1)(t)).

6611.    In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah TAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6612.    Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah TAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing

expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6613.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah TAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6614.  Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Utah TAL, including:

> (a)  representing that Ranitidine-Containing Products were both safe and effective for the lifetime of the product, when in fact, they were not;
>
> (b)  representing that consumption of Ranitidine-Containing Products had characteristics, ingredients, uses, benefits, or qualities that they do not have;
>
> (c)  representing that Ranitidine-Containing Products are of a particular standard, quality, or grade when they are not;
>
> (d)  advertising Ranitidine-Containing Products with the intent not to sell them as advertised; and
>
> (e)  engaging in any other conduct that creates a likelihood of confusion.

6615.  Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6616.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6617.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6618.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

6619.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6620.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Utah TAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6621.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6622.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6623.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seek all damages and relief to which Plaintiff and the Class members are entitled.

6624.   As a result of Defendant's violations of the Utah TAL, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Utah TAL.

**COUNT 401**
**Breach of Implied Warranty**
**(Utah Code Ann. §70A-2-314)**
**(Against Sanofi)**

6625.   Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6626.   This cause of action is brought on behalf of the Utah-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6627.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Utah Class Representatives and members of the Utah Class and was in the business of selling such products.

6628.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6629.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6630.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

6631.   Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products and knew that Plaintiff and each

member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6632.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6633.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

6634.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

6635.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.   Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

6636.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 402
## Unjust Enrichment
## (Utah Law)
## (Against Sanofi)

6637.   Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6638.   This cause of action is brought on behalf of the Utah-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6639.   Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products or were otherwise in privity with Defendant through said transaction.

6640.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6641.   Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which

the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6642.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6643.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6644.   Plaintiff and Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 32.   Causes of Action on Behalf of the Virginia-Sanofi Classes

### COUNT 403
### Violation of the Virginia Consumer Protection Act
### (Va. Code Ann. §59.1-196, *et seq.*)
### (Against Sanofi)

6645.   Virginia Class Representatives Dan Zhovtis and Cheryl Banks incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6646.   This cause of action is brought on behalf of the Virginia-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6647.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Va. Code Ann. §59.1-198.

6648.   Defendant was and is a "[s]upplier" within the meaning of Va. Code Ann. §59.1-198.

6649.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Va. Code Ann. §59.1-198.

6650.   Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Va. Code Ann. §59.1-198.

6651.   The Virginia Consumer Protection Act ("Virginia CPA") prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Va. Code Ann. §59.1-200(A).

6652.   The Virginia CPA makes unlawful specific acts, including:

(a)   "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" (Va. Code Ann. §59.1-200(A)(5));

(b)   "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model" (Va. Code Ann. §59.1-200(A)(6));

(c)   "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" (Va. Code Ann. §59.1-200(A)(8)); and

(d)   "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" (Va. Code Ann. §59.1-200(A)(14)).

6653.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6654.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6655.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6656.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Virginia CPA, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

6657.  Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6658.  Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6659.  Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6660.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

6661.  The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6662.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

6663.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Virginia CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6664.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6665.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6666.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

6667.   As a result of Defendant's violations of the Virginia CPA, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Virginia CPA.

**COUNT 404**
**Breach of Implied Warranty**
**(Va. Code Ann. §8.2-314)**
**(Against Sanofi)**

6668.   Virginia Class Representatives Dan Zhovtis and Cheryl Banks incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6669.   This cause of action is brought on behalf of the Virginia-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6670.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Virginia Class Representatives and members of the Virginia Class and was in the business of selling such products.

6671.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6672.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6673.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

6674.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6675.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6676.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

6677.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

6678.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

6679.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 405**
**Unjust Enrichment**
**(Virginia Law)**
**(Against Sanofi)**

</div>

6680.   Virginia Class Representatives Dan Zhovtis and Cheryl Banks incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6681.   This cause of action is brought on behalf of the Virginia-Sanofi Class (for the purpose of this section, "Class") against Brand Manufacturer Defendant GSK (for purposes of this Count only, "Defendant").

6682.   Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

6683.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6684.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6685.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6686.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6687.   There is no express contract governing this dispute.

6688.   Plaintiffs and Class members do not have an adequate remedy at law.

### 33.     Causes of Action on Behalf of the Washington-Sanofi Classes

**COUNT 406**
**Violation of the Washington Consumer Protection Act**
**(Wash. Rev. Code Ann. §19.86.010,** *et seq.***)**
**(Against Sanofi)**

6689.   Washington Class Representatives Robert Dewitt, Dave Garber, and Jonathan Ferguson incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6690.   This cause of action is brought on behalf of the Washington-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6691.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Wash. Rev. Code Ann. §19.86.010(1).

6692.   The Ranitidine-Containing Products are "[a]ssets" within the meaning of Wash. Rev. Code Ann. §19.86.010(3).

6693.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Wash. Rev. Code Ann. §19.86.010(2).

6694.   The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Wash. Rev. Code Ann. §19.86.020.

6695.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6696.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6697.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts in its marketing, advertising, and promotions for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

6698.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington CPA.

6699.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6700.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6701.   Defendant's misrepresentations and omissions regarding package size, and resulting misrepresentations and omissions concerning appropriate length of ingestion, of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6702.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about: (i) the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products; (ii) the safety of Ranitidine-Containing Products if used within the expiration dates; and (iii) the safety of Ranitidine-Containing Products when ingesting all doses contained within particular packaging.

6703.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6704.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Washington CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6705.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6706.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6707.   On June 22, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Wash. Rev. Code Ann. §19.86.095 to the Attorney General of the State of Washington.

6708.   As a result of Defendant's violations of the Washington CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Washington CPA.

## COUNT 407
### Breach of Implied Warranty
### (Wash. Rev. Code §62A.2-314)
### (Against Sanofi)

6709.   Washington Class Representatives Robert Dewitt, Dave Garber, and Jonathan Ferguson incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6710.   This cause of action is brought on behalf of the Washington-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6711.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Washington Class Representatives and members of the Washington Class and was in the business of selling such products.

6712.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6713.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6714.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

6715.   Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6716.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6717.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

6718.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

6719.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability.  Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

6720.  As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 408**
**Unjust Enrichment**
**(Washington Law)**
**(Against Sanofi)**

6721.  Washington Class Representatives Robert Dewitt, Dave Garber, and Jonathan Ferguson incorporate the preceding allegations in paragraphs 16-22, 273-277, 279-303, 317-442, 445-456, 462-469, 470-483, and 868-911 as though fully set forth herein.

6722.  This cause of action is brought on behalf of the Washington-Sanofi Class (for the purpose of this section, "Class") against Sanofi (for purposes of this Count only, "Defendant").

6723.  Plaintiffs and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

6724.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and Class members received the Ranitidine-Containing Products, which Defendant did not disclose contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6725.   Defendant readily accepted and retained these benefits from Plaintiffs and Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer, and that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6726.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6727.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6728.   There is no express contract governing this dispute.

6729.   Plaintiffs and Class members do not have an adequate remedy at law.

## X.   CAUSES OF ACTION AGAINST GENERIC PRESCRIPTION MANUFACTURERS

### A.   Causes of Action Against Amneal

6730.   For the purposes of the subsequent causes of action against Defendant Amneal, Plaintiffs are incorporating the following allegations by reference: paragraphs 25-29 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic Zantac); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory

agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469 (requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 845-867 (misrepresentations or omissions of material fact in labeling); and 475-483 (equitable tolling).

6731.   Plaintiffs identified in the table below bring claims against Defendant Amneal with respect to prescription Ranitidine on behalf of themselves and their respective State Classes under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| Plaintiff Name | State(s) of Residence |
| --- | --- |
| Daffeney Austin | Alabama |
| Lashonnah Gaitor | Alabama |
| Anthony McGhee | Alabama |
| Tammy Smith | Alaska |
| Martha Summers | Arkansas, Mississippi, Missouri |
| Monica Costello | Arizona, Nevada |
| Jennifer Fox | Arizona |
| Armando Tapia | Arizona |
| Virginia Aragon | California |
| Golbenaz Bakhtiar | California |
| Royal Handy | California |
| Angel Cordero | Connecticut |
| Angel Vega | Connecticut |
| Kevin Nelson | District of Columbia |

| Irma Arcaya | Florida |
| Roy Armstrong | Florida, Georgia |
| Michael Fesser | Florida |
| Karen Foster | Florida, Virginia |
| Hattie Kelley | Florida |
| Clifton McKinnon | Florida |
| Kristen (POA for Laura) Monger | Florida |
| Kristen (POA for Alexander) Monger | Florida |
| Ana Pereira | Florida |
| Daniel Taylor | Florida |
| Joyce Taylor | Florida |
| Michael Tomlinson | Florida |
| Earlene Green | Georgia |
| Leon Greene | Georgia |
| Tyrone Houston | Georgia |
| Kathy Jeffries | Georgia |
| Charlotte Sanders | Georgia |
| Paula Shells | Georgia |
| Cynthia Starr | Georgia |
| Angela Taylor | Georgia, Tennessee |
| Vickie Anderson | Illinois |
| Heather Re | Illinois |
| Teresa Dowler | Indiana |
| Timberly Goble | Indiana, Kentucky, Missouri, Texas |
| Alyson Humphrey | Indiana |
| Rebecca Sizemore | Indiana |
| Charles Longfield | Iowa |
| Janet Asbury | Kentucky |
| Jamie Mckay | Louisiana |

| | |
|---|---|
| Alberta Griffin | Maryland |
| Darlene Whittington-Coates | Maryland |
| Jose Amado | Massachusetts |
| Nicholas Hazlett | Maryland, Pennsylvania |
| Rafael Bermudez | Massachusetts, New Hampshire |
| Ana Guzman | Massachusetts |
| Michelle Smith | Massachusetts |
| Myra Allen | Michigan |
| Jody Beal | Michigan |
| Benny Cope | Michigan |
| Arthur Gamble | Michigan |
| Kenneth Hix | Michigan, Tennessee |
| Jerry Hunt | Michigan |
| Judy Wilmot | Michigan |
| Lakisha Wilson | Michigan |
| Sandra Erickson-Brown | Minnesota |
| Rodriquze Hampton Jr | Minnesota, Tennessee |
| Donald Northrup | Minnesota |
| Beverly Crosby | Mississippi |
| Lora Mauffray | Mississippi |
| Korcis McMillan | Mississippi |
| Michelle Tinker | Mississippi |
| Elaine Aaron | Missouri |
| Lisa Deckard | Missouri |
| Cynthia Gibbs | Missouri |
| Brenda Newcomb | Missouri |
| David Rice | New Hampshire |
| James Adamo | New Jersey |
| Mary McMillian | New Jersey |

| | |
|---|---|
| Mary Moronski | New Jersey |
| Lynn White | New Jersey |
| Josefina Griego | New Mexico |
| Carrie Martinez | New Mexico |
| George Tapia | New Mexico |
| Silomie Clarke | New York |
| Nereida Cordero | New York |
| Benny Fazio | New York |
| Migdalia Kinney | New York |
| Mary McCullen | New York |
| Joseph Mcpheter | New York |
| Steven Murdock | New York |
| Glorimar Rodriguez | New York |
| Phyllis Spuler | New York |
| Mary Lou Wagner | New York |
| Acia D'amore | North Carolina |
| Patricia Frazier | North Carolina |
| Teresa Lee | North Carolina |
| Sharon Parks | North Carolina |
| Dennis Robbins | North Carolina |
| Julie Turner | North Carolina |
| Michael Galloway | Ohio |
| Patricia Hess | Ohio |
| Demarco Grayson | Oklahoma |
| Kristi Ledbetter | Oregon |
| Felicia Ball | Pennsylvania |
| Elmer Cook | Pennsylvania |
| Carol Loggins | Pennsylvania |
| Gloria Colon | Puerto Rico |

| | |
|---|---|
| Sonia Diaz | Puerto Rico, Florida |
| Annie Johnson | South Carolina |
| Michael Futrell | South Carolina |
| Marianella Villanueva | South Carolina, Texas |
| Eva Broughton | Tennessee |
| Rebecca Howard | Tennessee |
| Lisa Lyle | Tennessee |
| Pam Turner | Tennessee |
| Billie Walker | Tennessee |
| Marilyn Abraham | Texas |
| Maria Eames | Texas |
| Tina Howard | Texas |
| Christopher Johnson | Texas |
| Gina Martinez | Texas |
| Tonya Overstreet | Texas |
| Gregory Alan Wayland | Texas |
| Sylvia Yoshida | Texas |
| Teresa Waters | Utah |
| Renee Clark | Vermont |
| Eric Ragis | Vermont |
| Lisa Ragis | Vermont |
| Cheryl Banks | Virginia |
| Lynn Costley | Virginia |
| Steve Fischer | Washington |
| Dave Garber | Washington |
| Bridget Peck | Washington |
| Mynetta Hastings | West Virginia |

1.    **Causes of Action on Behalf of the Alabama-Amneal Classes**

**COUNT 409**
**Violation of the Alabama Deceptive Trade Practices Act**
**(Ala. Code §8-19-1, *et seq.*)**
**(Against Amneal)**

6732.   Alabama Class Representatives Daffeney Austin, Lashonnah Gaitor, and Anthony McGhee incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

6733.   This cause of action is brought on behalf of the Alabama-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

6734.   Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of Ala. Code §8-19-3(5).

6735.   Plaintiffs and the Class members are "consumer[s]" within the meaning of Ala. Code §8-19-3(2).

6736.   The Ranitidine-Containing Products are "goods" within the meaning of Ala. Code §8-19-3(3).

6737.   Defendant was and is engaged in "trade or commerce" within the meaning of Ala. Code §8-19-3(8).

6738.   The Alabama Deceptive Trade Practices Act ("Alabama DTPA") prohibits "deceptive acts or practices in the conduct of any trade or commerce." Ala. Code §8-19-5.

6739.   The Alabama DTPA makes unlawful specific acts, including:

(a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have" (Ala. Code §8-19-5(5));

    (b)        "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Ala. Code §8-19-5(7));

    (c)        "[a]dvertising goods or services with intent not to sell them as advertised" (Ala. Code §8-19-5(9)); and

    (d)        "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce" (Ala. Code §8-19-5(27)).

6740.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Alabama DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6741.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Alabama DTPA, including:

    (a)        representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)        representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)        advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (d)        engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

6742.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6743.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6744.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

6745.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6746.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

6747.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Alabama DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6748.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6749.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

6750.  Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Ala. Code §8-19-10(e) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

6751.  As a result of Defendant's violations of the Alabama DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Alabama DTPA.

### COUNT 410
### Unjust Enrichment (Alabama Law)
### (Against Amneal)

6752.  Alabama Class Representatives Daffeney Austin, Lashonnah Gaitor, and Anthony McGhee incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

6753.   This cause of action is brought on behalf of the Alabama-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

6754.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

6755.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6756.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6757.   It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6758.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6759.   Plaintiffs and the Class members do not have an adequate remedy at law.

### 2.   Causes of Action on Behalf of the Alaska-Amneal Classes

### COUNT 411
### Violation of the Alaska Unfair Trade Practices and Consumer Protection Act
### (Alaska Stat. Ann. §45.50.471, *et seq.*)
### (Against Amneal)

6760.   Alaska Class Representative Tammy Smith incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

6761.   This cause of action is brought on behalf of the Alaska-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

6762.   Plaintiff and the Class members are "consumer[s]" within the meaning of Alaska Stat. Ann. §45.50.561(a)(4).

6763.   The Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce."  Alaska Stat. Ann. §45.50.471(a).

6764.   The Alaska CPA makes unlawful specific acts, including:

    (a)    "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Alaska Stat. Ann. §45.50.471(b)(4));

    (b)    "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Alaska Stat. Ann. §45.50.471(b)(6));

    (c)    "advertising goods or services with intent not to sell them as advertised" (Alaska Stat. Ann. §45.50.471(b)(8));

(d)     "engaging in any other conduct creating a likelihood of confusion or of misunderstanding and that misleads, deceives, or damages a buyer or a competitor in connection with the sale or advertisement of goods or services" (Alaska Stat. Ann. §45.50.471(b)(11)); and

(e)     "using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived, or damaged" (Alaska Stat. Ann. §45.50.471(b)(12)).

6765.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Alaska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6766.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Alaska CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

6767.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6768.   Defendant's misrepresentations and omissions regarding the expiration of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6769.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

6770.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6771.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Alaska CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6772.  Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6773.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6774.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiff in MDL 2924 sent a notice letter pursuant to Alaska Stat. Ann. §45.50.535(b)(1) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seeks all damages and relief to which Plaintiff and the Class members are entitled.

6775.   As a result of Defendant's violations of the Alaska CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Alaska CPA.

## COUNT 412
### Unjust Enrichment or Quasi-Contract
### (Alaska Law)
### (Against Amneal)

6776.   Alaska Class Representative Tammy Smith incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

6777.   This cause of action is brought on behalf of the Alaska-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

6778.   Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

6779.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6780.   Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6781.   It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6782.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6783.   Plaintiff and the Class members do not have an adequate remedy at law.

3.      **Causes of Action on Behalf of the Arkansas-Amneal Classes**

**COUNT 413**
**Violation of the Arkansas Deceptive Trade Practices Act**
**(Ark. Code Ann. §4-88-101, *et seq.*)**
**(Against Amneal)**

6784.   Arkansas Class Representative Martha Summers incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

6785.   This cause of action is brought on behalf of the Arkansas-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

6786.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Ark. Code Ann. §4-88-102(5).

6787.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Ark. Code Ann. §4-88-102(4).

6788.   The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices."  Ark. Code Ann. §4-88-107(a).

6789.   The Arkansas DTPA makes unlawful specific acts, including:

(a)      "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" (Ark. Code Ann. §4-88-107(a)(1));

(b)      "[a]dvertising the goods or services with the intent not to sell them as advertised" (Ark. Code Ann. §4-88-107(a)(3)); and

(c)      "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" (Ark. Code Ann. §4-88-107(a)(10)).

6790.   The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission . . . ." Ark. Code Ann. §4-88-108(a).

6791.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6792.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Arkansas DTPA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

6793.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

- 1528 -

6794.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6795.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

6796.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6797.   Plaintiff and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

6798.   Plaintiff and the Class members were aggrieved by Defendant's violations of Arkansas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6799.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6800.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6801.   As a result of Defendant's violations of the Arkansas DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

## COUNT 414
### Unjust Enrichment
### (Arkansas Law)
### (Against Amneal)

6802.   Arkansas Class Representative Martha Summers incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

6803.   This cause of action is brought on behalf of the Arkansas-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

6804.   Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

6805.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6806.   Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6807.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6808.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6809.   There is no valid, legal, and binding contract governing this dispute.

6810.   Plaintiff and the Class members do not have an adequate remedy at law.

## COUNT 415
### Breach of Implied Warranty
### (Ark. Code Ann. §4-2-314)
### (Against Amneal)

6811.   Arkansas Class Representative Martha Summers incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

6812.   This cause of action is brought on behalf of the Arkansas-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

6813.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arkansas Class Representatives and members of the Arkansas Class and was in the business of selling such products.

6814.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6815.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6816.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

6817.   Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6818.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6819.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

6820.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

6821.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

6822.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

4.    **Causes of Action on Behalf of the Arizona-Amneal Classes**

**COUNT 416**
**Violation of the Arizona Consumer Fraud Act**
**(Ariz. Rev. Stat. Ann. §44-1521, *et seq.*)**
**(Against Amneal)**

6823.   Arizona Class Representatives Monica Costello, Jennifer Fox, and Armando Tapia incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

6824.   This cause of action is brought on behalf of the Arizona-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

6825.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(6).

6826.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(5).

6827.   The Arizona Consumer Fraud Act ("Arizona CFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." Ariz. Rev. Stat. Ann. §44-1522(A).

6828.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Arizona CFA by recklessly, wantonly, knowingly, and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded

the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed..

6829.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Arizona CFA.

6830.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6831.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6832.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

6833.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6834.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

6835.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Arizona CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6836.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6837.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6838.   As a result of Defendant's violations of the Arizona CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

## COUNT 417
## Unjust Enrichment
## (Arizona Law)
## (Against Amneal)

6839.   Arizona Class Representatives Monica Costello, Jennifer Fox, and Armando Tapia incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

6840.   This cause of action is brought on behalf of the Arizona-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

6841.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

6842.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6843.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6844.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6845.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6846.   Plaintiffs and the Class members do not have an adequate remedy at law.

### 5.      Causes of Action on Behalf of the California-Amneal Classes

### COUNT 418
### Violation of the California Unfair Competition Law
### (Cal. Bus. & Prof. Code §17200, *et seq.*)
### (Against Amneal)

6847.   California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

6848.   This cause of action is brought on behalf of the California-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

6849.   Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

6850.   Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

- 1538 -

6851.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

6852.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL.  These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

6853.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6854.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6855.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

6856.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6857.   Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, CAL. HEALTH & SAFETY CODE §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

6858.   Defendant conduct also consitutes "unfair" business acts or practies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

6859.   Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions

under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, *see* Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

6860.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6861.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.   Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6862.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.   Defendant's unlawful acts and practices complained of herein affect the public interest.

6863.   Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

## COUNT 419
### Violation of the California False Advertising Law
### (Cal. Bus. & Prof. Code §17500, *et seq.*)
### (Against Amneal)

6864.   California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

6865.   This cause of action is brought on behalf of the California-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

6866.   Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

6867.   The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code §17500.

6868.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and

failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6869.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

> (a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;
>
> (c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and
>
> (d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

6870.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6871.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6872.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

6873.  The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6874.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6875.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6876.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6877.  As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

**COUNT 420**
**Violation of the California Consumers Legal Remedies Act**
**(Cal. Civ. Code §1750, *et seq.*)**
**(Against Amneal)**

6878.   California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

6879.   This cause of action is brought on behalf of the California-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

6880.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

6881.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

6882.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

6883.   The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §1770(a).

6884.   The California CLRA makes unlawful specific acts, including:

(a)   "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

(b)   "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

- 1545 -

(c)    "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

(d)    "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

6885.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6886.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

6887.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6888.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6889.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

6890.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6891.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

6892.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6893.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6894.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

6895.   Pursuant to Cal. Civ. Code §1780(a), Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

## COUNT 421
### Unjust Enrichment or Quasi-Contract
### (California Law)
### (Against Amneal)

6896.  California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

6897.  This cause of action is brought on behalf of the California-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

6898.  Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

6899.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6900.  Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6901.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6902.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6903.   Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 422
### Breach of Implied Warranty
### (Cal. Com. Code §2314)
### (Against Amneal)

6904.   California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

6905.   This cause of action is brought on behalf of the California-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

6906.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to California Class Representatives and members of the California Class and was in the business of selling such products.

6907.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6908.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6909.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

6910.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6911.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

6912.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

6913.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

6914.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

6915.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 6.     Causes of Action on Behalf of the Connecticut-Amneal Classes

### COUNT 423
### Violation of the Connecticut Unfair Trade Practices Act
### (Conn. Gen. Stat. Ann. §42-110a, *et seq.*)
### (Against Amneal)

6916.   Connecticut Class Representatives Angel Cordero and Angel Vega incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

6917.   This cause of action is brought on behalf of the Connecticut-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

6918.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Conn. Gen. Stat. Ann. §42-110a(3).

6919.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. §42-110a(4).

6920. The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. §42-110b(a).

6921. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6922. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Connecticut UTPA.

6923. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6924. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6925. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

6926.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6927.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Connecticut UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6928.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.   Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6929.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.   Defendant's unlawful acts and practices complained of herein affect the public interest.

6930.   As a result of Defendant's violations of the Connecticut UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

**COUNT 424**
**Unjust Enrichment**
**(Connecticut Law)**
**(Against Amneal)**

6931.   Connecticut Class Representatives Angel Cordero and Angel Vega incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

6932.   This cause of action is brought on behalf of the Connecticut-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

6933.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

6934.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6935.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6936.  It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6937.  Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6938.  Plaintiffs and the Class members do not have an adequate remedy at law.

### 7.     Causes of Action on Behalf of the District of Columbia-Amneal Classes

### COUNT 425
### Violation of the District of Columbia Consumer Protection Procedures Act
### (D.C. Code Ann. §28-3901, *et seq.*)
### (Against Amneal)

6939.  District of Columbia Class Representative and Kevin Nelson incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

6940.  This cause of action is brought on behalf of the District of Columbia-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

6941.  Defendant, Plaintiff, and the Class members are "person[s]" within the meaning of D.C. Code Ann. §28-3901(a)(1).

6942.  Plaintiff and the Class members are "consumer[s]" within the meaning of D.C. Code Ann. §28-3901(a)(2).

6943.  The Ranitidine-Containing Products are "goods" within the meaning of D.C. Code Ann. §28-3901(a)(7).

6944.   Defendant was and is engaged in "trade practice[s]" within the meaning of D.C. Code Ann. §28-3901(a)(6).

6945.   The District of Columbia Consumer Protection Procedures Act ("District of Columbia CPPA") prohibits "unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby."  D.C. Code Ann. §28-3904.

6946.   The District of Columbia CPPA makes unlawful specific acts, including:

(a)   "represent[ing] that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have" (D.C. Code Ann. §28-3904(a));

(b)   "represent[ing] that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another" (D.C. Code Ann. §28-3904(d));

(c)   "advertis[ing] or offer[ing] goods or services without the intent to sell them or without the intent to sell them as advertised or offered" (D.C. Code Ann. §28-3904(h));

(d)   "misrepresent as to a material fact which has a tendency to mislead" (D.C. Code Ann. §28-3904(e));

(e)   "fail to state a material fact if such failure tends to mislead" (D.C. Code Ann. §28-3904(f)); and

(f)   "[u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead" (D.C. Code Ann. §28-3904(f-1)).

6947.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the District of Columbia CPPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6948.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the District of Columbia CPPA, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)   using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive;

(e)   acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid; and

(f)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

6949.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6950.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

6951.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

6952.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6953.   Plaintiff and the Class members were aggrieved by Defendant's violations of the District of Columbia CPPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6954.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6955.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6956.   As a result of Defendant's violations of the District of Columbia CPPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the District of Columbia CPPA.

**COUNT 426**
**Unjust Enrichment**
**(District of Columbia Law)**
**(Against Amneal)**

6957.   District of Columbia Class Representative and Kevin Nelson incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

6958.   This cause of action is brought on behalf of the District of Columbia-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

6959.   Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

6960.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

6961.   Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6962.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6963.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6964.   There is no express written contract governing this dispute.

6965.   Plaintiff and the Class members do not have an adequate remedy at law.

### 8.    Causes of Action on Behalf of the Florida-Amneal Classes

### COUNT 427
### Violation of the Florida Deceptive and Unfair Trade Practices Act
### (Fla. Stat. Ann. §501.201, *et seq.*)
### (Against Amneal)

6966.   Florida Class Representatives Irma Arcaya, Roy Armstrong, Michael Fesser, Karen Foster, Hattie Kelley, Clifton McKinnon, Kristen (POA for Laura) Monger, Kristen (POA for Alexander) Monger, Ana Pereira, Daniel Taylor, Joyce Taylor, Sonia Diaz, and Michael Tomlinson incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

6967.   This cause of action is brought on behalf of the Florida-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

6968.   The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. Ann. §501.204(1).

6969.   In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017."  Fla. Stat. Ann. §501.204(2).

6970.   Plaintiffs and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA.  *See* Fla. Stat. Ann. §501.203(6)-(7).

6971.   Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA.  *See* Fla. Stat. Ann. §501.203(8).

6972.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6973.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

6974.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6975.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

6976.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

6977.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

6978.   Plaintiffs and the Class members were aggrieved by Defendant's violations of FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

6979.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

6980.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6981.   As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

<div align="center">

**COUNT 428**
**Unjust Enrichment**
**(Florida Law)**
**(Against Amneal)**

</div>

6982.   Florida Class Representatives Irma Arcaya, Roy Armstrong, Michael Fesser, Karen Foster, Hattie Kelley, Clifton McKinnon, Kristen (POA for Laura) Monger, Kristen (POA for Alexander) Monger, Ana Pereira, Daniel Taylor, Joyce Taylor, Sonia Diaz, and Michael Tomlinson incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

6983.   This cause of action is brought on behalf of the Florida-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

6984.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

6985.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered an

impoverishment because they purchased worthless medications and did not receive the expected benefit therefrom.

6986.   Defendant voluntarily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6987.   It is unjust and inequitable for the Defendant to retain these benefits without paying the value thereof because the benefits were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

6988.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

6989.   There is no express written contract governing this dispute.

6990.   Plaintiffs and the Class members do not have an adequate remedy at law.

### 9.   Causes of Action on Behalf of the Georgia-Amneal Classes

**COUNT 429**
**Violation of the Georgia Fair Business Practices Act**
**(Ga. Code Ann. §10-1-390, *et seq.*)**
**(Against Amneal)**

6991.   Georgia Class Representatives Roy Armstrong, Earlene Green, Leon Greene, Tyrone Houston, Kathy Jeffries, Charlotte Sanders, Paula Shells, Cynthia Starr, and Angela Taylor

incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

6992.   This cause of action is brought on behalf of the Georgia-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

6993.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(24).

6994.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(6).

6995.   Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Ga. Code Ann. §10-1-392(a)(28).

6996.   The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."  Ga. Code Ann. §10-1-393(a).

6997.   The Georgia FBPA makes unlawful specific acts, including:

(a)   "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-393(b)(5));

(b)   "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-393(b)(7)); and

(c)   "[a]dvertising goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-393(b)(9)).

6998.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-

Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

6999.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia FBPA, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

7000.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7001.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7002.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7003.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7004. Plaintiffs and the Class members reasonably relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

7005.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Georgia FBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7006.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7007.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7008.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual

notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Ga. Code Ann. §10-1-399(b) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

7009.  As a result of Defendant's violations of the Georgia FBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Georgia FBPA.

<div align="center">

**COUNT 430**
**Unjust Enrichment**
**(Georgia Law)**
**(Against Amneal)**

</div>

7010.  Georgia Class Representatives Roy Armstrong, Earlene Green, Leon Greene, Tyrone Houston, Kathy Jeffries, Charlotte Sanders, Paula Shells, Cynthia Starr, and Angela Taylor incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7011.  This cause of action is brought on behalf of the Georgia-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7012.  Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7013.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7014. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7015. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7016. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7017. There is no express contract governing this dispute.

7018. Plaintiffs and the Class members do not have an adequate remedy at law.

10.    **Causes of Action on Behalf of the Illinois-Amneal Classes**

### COUNT 431
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**(815 Ill. Comp. Stat. Ann. 505/1, *et seq.*)**
**(Against Amneal)**

7019.   Illinois Class Representatives Vickie Anderson and Heather Re incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7020.   This cause of action is brought on behalf of the Illinois-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7021.   Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(c).

7022.   Plaintiffs and the Class members are "consumer[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(e).

7023.   The Ranitidine-Containing Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(b).

7024.   Defendant was and is engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(f).

7025.   The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade

Practices Act' [815 Ill. Comp. Stat. Ann. 510/2], approved August 5, 1965, in the conduct of any trade or commerce." 815 Ill. Comp. Stat. Ann. 505/2.

7026.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7027.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFDBPA.

7028.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7029.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7030.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7031.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7032.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Illinois CFDBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7033.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.   Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7034.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.   Defendant's unlawful acts and practices complained of herein affect the public interest.

7035.   As a result of Defendant's violations of the Illinois CFDBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFDBPA.

**COUNT 432**
**Unjust Enrichment**
**(Illinois Law)**
**(Against Amneal)**

7036.  Illinois Class Representatives Vickie Anderson and Heather Re incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7037.  This cause of action is brought on behalf of the Illinois-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7038.  Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7039.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7040.  Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7041.   It violates the principles of justice, equity, and good conscience for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7042.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7043.   Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

### 11.      Causes of Action on Behalf of the Indiana-Amneal Classes

**COUNT 433**
**Unjust Enrichment**
**(Indiana Law)**
**(Against Amneal)**

7044.   Indiana Class Representatives Teresa Dowler, Timberly Goble, Alyson Humphrey, and Rebecca Sizemore incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7045.   This cause of action is brought on behalf of the Indiana-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7046.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7047. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7048. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7049. It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7050. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7051. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

**COUNT 434**
**Breach of Implied Warranty**
**(Ind. Code. Ann. §26-1-2-314)**
**(Against Amneal)**

7052.   Indiana Class Representatives Teresa Dowler, Timberly Goble, Alyson Humphrey, and Rebecca Sizemore incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7053.   This cause of action is brought on behalf of the Indiana-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7054.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Indiana Class Representatives and members of the Indiana Class and was in the business of selling such products.

7055.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7056.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7057.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7058.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7059.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7060.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

7061.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7062.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7063.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 12.     Causes of Action on Behalf of the Iowa-Amneal Classes

#### COUNT 435
#### Violation of the Iowa Private Right of Action for Consumer Frauds Act
#### (Iowa Code Ann. §714H.1, *et seq.*)
#### (Against Amneal)

7064.   Iowa Class Representative Charles Longfield incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7065.   This cause of action is brought on behalf of the Iowa-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7066.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Iowa Code Ann. §714H.2(7).

7067.   Plaintiff and the Class members are "[c]onsumer[s]" within the meaning of Iowa Code Ann. §714H.2(3).

7068.   The Iowa Private Right of Action for Consumer Frauds Act ("Iowa PRACFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise."  Iowa Code Ann. §714H.3(1).

7069.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Iowa PRACFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Defendant did so with willful and wanton disregard for the rights and safety of others.

7070.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Iowa PRACFA.

7071.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

7072.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

7073.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7074.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7075.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Iowa PRACFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7076.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out- of-pocket loss.

7077.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

7078.   As a result of Defendants' violations of the Iowa PRACFA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Iowa PRACFA.

7079.   Additionally, because Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged

herein, were undertaken in willful and wanton disregard for the rights and safety of others, pursuant to Iowa Code §714H.5(4), Plaintiff and the Class members seek an additonal award of treble damages.

<div align="center">

**COUNT 436**
**Unjust Enrichment**
**(Iowa Law)**
**(Against Amneal)**

</div>

7080.   Iowa Class Representatives Charles Longfield incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7081.   This cause of action is brought on behalf of the Iowa-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7082.   Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7083.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7084.   Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7085.   It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7086.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7087.   Plaintiff and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

<div align="center">

**COUNT 437**
**Breach of Implied Warranty**
**(Iowa Code Ann. §554.2314)**
**(Against Amneal)**

</div>

7088.   Iowa Class Representatives Charles Longfield incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7089.   This cause of action is brought on behalf of the Iowa-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7090.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Iowa Class Representatives and members of the Iowa Class and was in the business of selling such products.

7091.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7092.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7093.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7094.   Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7095.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7096.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

7097.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7098.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7099.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 13.    Causes of Action on Behalf of the Kentucky-Amneal Classes

### COUNT 438
### Violation of the Kentucky Consumer Protection Act
### (Ky. Rev. Stat. Ann. §367.110, *et seq.*)
### (Against Amneal)

7100.   Kentucky Class Representatives Timberly Goble and Janet Asbury incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7101.   This cause of action is brought on behalf of the Kentucky-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7102.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ky. Rev. Stat. Ann. §367.110(1).

7103.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Ky. Rev. Stat. Ann. §367.110(2).

7104.   The Kentucky Consumer Protection Act ("Kentucky CPA") prohibits "[u]nfair, [unconscionable], false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. Ann. §367.170(1)-(2).

7105.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7106.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Kentucky CPA.

7107.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7108.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7109.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7110.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7111.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Kentucky CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7112.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7113.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7114.   As a result of Defendant's violations of the Kentucky CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Kentucky CPA.

**COUNT 439**
**Unjust Enrichment**
**(Kentucky Law)**
**(Against Amneal)**

7115.   Kentucky Class Representatives Timberly Goble and Janet Asbury incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7116.   This cause of action is brought on behalf of the Kentucky-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7117.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7118.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7119.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7120.  It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7121.  Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7122.  Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 440**
**Breach of Implied Warranty**
**(Ky. Rev. Stat. Ann. §355.2-314)**
**(Against Amneal)**

7123.  Kentucky Class Representatives Timberly Goble and Janet Asbury incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7124.  This cause of action is brought on behalf of the Kentucky-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7125.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Kentucky Class Representatives and members of the Kentucky Class and was in the business of selling such products.

7126.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7127.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7128.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7129.  Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7130.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7131.  Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

7132.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7133.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7134.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 14.    Causes of Action on Behalf of the Louisiana-Amneal Classes

**COUNT 441**
**Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law**
**(La. Stat. Ann. §51:1401, *et seq.*)**
**(Against Amneal)**

7135.   Louisiana Class Representative Jamie Mckay incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7136.   This cause of action is brought on behalf of the Louisiana-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7137.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of La. Stat. Ann. §51:1402(8).

7138.   Plaintiff and the Class members are "[c]onsumer[s]" within the meaning of La. Stat. Ann. §51:1402(1).

7139.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of La. Stat. Ann. §51:1402(10).

7140.   The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Stat. Ann. §51:1405(A).

7141.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7142.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Louisiana CPL.

7143.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

7144.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

7145.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7146.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7147.  Plaintiff and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

7148.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Louisiana CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7149.  Specifically,  Plaintiff  and  the  Class  were  deceived  by  Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7150.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7151.   As a result of Defendant's violations of the Louisiana CPL, as alleged herein, Plaintiff and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Louisiana CPL.

### COUNT 442
### Unjust Enrichment
### (Louisiana Law)
### (Against Amneal)

7152.   Louisiana Class Representative Jamie Mckay incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7153.   This cause of action is brought on behalf of the Louisiana-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7154.   Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7155.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7156.   Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

7157.   Defendants' enrichment – the monies obtained from Plaintiff for the Ranitidine Containing Products – was the result of Plaintiff's impoverishment – the receipt by Plaintiff of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

7158.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7159.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7160.   Plaintiff and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

## COUNT 443
### Breach of Implied Warranty
### (La. Civ. Code Ann. art. §2520)
### (Against Amneal)

7161.  Louisiana Class Representative Jamie Mckay incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7162.   This cause of action is brought on behalf of the Louisiana-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7163.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Louisiana Class Representatives and members of the Louisiana Class and was in the business of selling such products.

7164.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7165.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7166.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7167.   Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7168.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7169.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

7170.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7171.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7172.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

15.      **Causes of Action on Behalf of the Maryland-Amneal Classes**

**COUNT 444**
**Violation of the Maryland Consumer Protection Act**
**(Md. Code Ann., Com. Law §13-101, *et seq.*)**
**(Against Amneal)**

7173.   Maryland Class Representatives Nicholas Hazlett, Alberta Griffin, and Darlene Whittington-Coates incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7174.   This cause of action is brought on behalf of the Maryland-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7175.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Md. Code Ann., Com. Law §13-101(h).

7176.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Md. Code Ann., Com. Law §13-101(c)(1).

7177.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Md. Code Ann., Com. Law §13-101(f).

7178.   The Maryland Consumer Protection Act ("Maryland CPA") prohibits "[u]nfair, abusive, or deceptive trade practices."  Md. Code Ann., Com. Law §13-301.

7179.   The Maryland CPA makes unlawful specific acts, including:

(a)      "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" (Md. Code Ann., Com. Law §13-301(1));

(b)      "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have" (Md. Code Ann., Com. Law §13-301(2)(i));

(c)     "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not" (Md. Code Ann., Com. Law §13-301(2)(iv));

(d)     "[f]ailure to state a material fact if the failure deceives or tends to deceive" (Md. Code Ann., Com. Law §13-301(3));

(e)     "[a]dvertis[ing] or offer[ing] of consumer goods, consumer realty, or consumer services . . . [w]ithout intent to sell, lease, or rent them as advertised or offered" (Md. Code Ann., Com. Law §13-301(5)(i)); and

(f)     "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with . . . [t]he promotion or sale of any consumer goods" (Md. Code Ann., Com. Law §13-301(9)(i)).

7180.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7181.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Maryland CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)     failing to disclose that the Ranitidine-Containing Products are defective and inherently dangerous in the course of the sale of the Ranitidine-Containing Products; and

(e)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

7182.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7183.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7184.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7185.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7186.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

7187.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Maryland CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7188.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7189.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7190.   As a result of Defendant's violations of the Maryland CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

**COUNT 445**
**Unjust Enrichment**
**(Maryland Law)**
**(Against Amneal)**

7191.   Maryland Class Representatives Nicholas Hazlett, Alberta Griffin, and Darlene Whittington-Coates incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7192.   This cause of action is brought on behalf of the Maryland-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7193.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7194.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7195.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7196.   It would be unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7197.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the

value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7198.   Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 446**
**Breach of Implied Warranty**
**(Md. Code Ann. §2-314)**
**(Against Amneal)**

7199.   Maryland Class Representatives Nicholas Hazlett, Alberta Griffin, and Darlene Whittington-Coates incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7200.   This cause of action is brought on behalf of the Maryland-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7201.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Maryland Class Representatives and members of the Maryland Class and was in the business of selling such products.

7202.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7203.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7204.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7205.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7206.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7207.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

7208.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7209.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7210.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 16.    Causes of Action on Behalf of the Massachusetts-Amneal Classes

### COUNT 447
### Violation of the Deceptive Acts or Practices Prohibited by Massachusetts Law
### (Mass. Gen. Laws Ann. ch. 93a, §1, *et seq.*)
### (Against Amneal)

7211.   Massachusetts Class Representatives Jose Amado, Rafael Bermudez, Ana Guzman, and Michelle Smith incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7212.   This cause of action is brought on behalf of the Massachusetts-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7213.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(a).

7214.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(b).

7215.   The Massachusetts consumer protection law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ann. ch. 93A, §2(a).

7216.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-

Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7217.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Massachusetts Act.

7218.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7219.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7220.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7221.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7222.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Massachusetts Act because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7223.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7224.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7225.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Mass. Gen. Laws Ann. ch. 93A, §9(3) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

7226.   As a result of Defendant's violations of the Massachusetts Act, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Massachusetts Act.

**COUNT 448**
**Unjust Enrichment**
**(Massachusetts Law)**
**(Against Amneal)**

7227.   Massachusetts Class Representatives Jose Amado, Rafael Bermudez, Ana Guzman, and Michelle Smith incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7228.   This cause of action is brought on behalf of the Massachusetts-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7229.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7230.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7231.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

7232.   Defendant's enrichment – the monies obtained from Plaintiffs' and the Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and the Class members' impoverishment – i.e., Plaintiffs' and the Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

7233.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7234.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7235.   Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 449**
**Breach of Implied Warranty**
**(Mass. Gen. Laws Ann. ch. 106 §2-314)**
**(Against Amneal)**

7236.   Massachusetts Class Representatives Jose Amado, Rafael Bermudez, Ana Guzman, and Michelle Smith incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7237.   This cause of action is brought on behalf of the Massachusetts-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7238.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Massachusetts Class Representatives and members of the Massachusetts Class and was in the business of selling such products.

7239.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7240.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7241.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7242.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7243.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7244.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

7245.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7246.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7247.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 17.    Causes of Action on Behalf of the Michigan-Amneal Classes

### COUNT 450
### Violation of the Michigan Consumer Protection Act
### (Mich. Comp. Laws Ann. §445.901, *et seq.*)
### (Against Amneal)

7248.   Michigan Class Representatives Myra Allen, Jody Beal, Benny Cope, Arthur Gamble, Kenneth Hix, Jerry Hunt, Judy Wilmot, and Lakisha Wilson incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7249.   This cause of action is brought on behalf of the Michigan-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7250.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(d).

7251.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(g).

7252.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws Ann. §445.903(1).

7253.   The Michigan CPA makes unlawful specific acts, including:

(a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Mich. Comp. Laws Ann. §445.903(1)(c));

(b)    "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Mich. Comp. Laws Ann. §445.903(1)(e)); and

(c)    "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented" (Mich. Comp. Laws Ann. §445.903(1)(g)).

7254.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7255.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Michigan CPA, including:

(a)  representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)  representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)  advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)  engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

7256.  Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7257.  Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7258.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7259.  The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7260.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the Michigan CPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7261.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7262.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7263.   As a result of Defendant's violations of the Michigan CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Michigan CPA.

## COUNT 451
### Unjust Enrichment
### (Michigan Law)
### (Against Amneal)

7264.   Michigan Class Representatives Myra Allen, Jody Beal, Benny Cope, Arthur Gamble, Kenneth Hix, Jerry Hunt, Judy Wilmot, and Lakisha Wilson incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7265.   This cause of action is brought on behalf of the Michigan-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7266.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7267.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7268.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7269.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7270.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7271.   There is no express contract governing this dispute.

7272.   Plaintiffs and the Class members do not have an adequate remedy at law.

### 18.   Causes of Action on Behalf of the Minnesota-Amneal Classes

### COUNT 452
### Violation of the Minnesota Prevention of Consumer Fraud Act
### (Minn. Stat. Ann. §325F.68, *et seq.*)
### (Against Amneal)

7273.   Minnesota Class Representatives Sandra Erickson-Brown, Rodriquze Hampton Jr., and Donald Northrup incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7274.   This cause of action is brought on behalf of the Minnesota-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7275.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

7276.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

7277.   The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged."  Minn. Stat. Ann. §325F.69(1).  Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

7278.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7279.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

7280.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7281.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7282.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7283.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7284.  Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

7285.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7286.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7287.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7288.  As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

**COUNT 453**
**Unjust Enrichment**
**(Minnesota Law)**
**(Against Amneal)**

7289.   Minnesota Class Representatives Sandra Erickson-Brown, Rodriquze Hampton Jr., and Donald Northrup incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7290.   This cause of action is brought on behalf of the Minnesota-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7291.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7292.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7293.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7294.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7295.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7296.   Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 454**
**Breach of Implied Warranty**
**(Minn. Stat. Ann. §336.2-314)**
**(Against Amneal)**

</div>

7297.   Minnesota Class Representatives Sandra Erickson-Brown, Rodriquze Hampton Jr., and Donald Northrup incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7298.   This cause of action is brought on behalf of the Minnesota-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7299.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

7300.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7301.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7302.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7303.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7304.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7305.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

7306.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7307.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7308.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 19.     Causes of Action on Behalf of the Mississippi-Amneal Classes

**COUNT 455**
**Unjust Enrichment**
**(Mississippi Law)**
**(Against Amneal)**

7309.   Mississippi Class Representatives Martha Summers, Beverly Crosby, Lora Mauffray, Korcis McMillian, and Michelle Tinker incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7310.   This cause of action is brought on behalf of the Mississippi-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7311.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7312.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

7313.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7314.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7315.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7316.   There is no express contract governing this dispute.

7317.   Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 456**
**Breach of Implied Warranty**
**(Miss. Code Ann. §75-2-314)**
**(Against Amneal)**

7318.   Mississippi Class Representatives Martha Summers, Beverly Crosby, Lora Mauffray, Korcis McMillian, and Michelle Tinker incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7319.   This cause of action is brought on behalf of the Mississippi-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7320.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Mississippi Class Representatives and members of the Mississippi Class and was in the business of selling such products.

7321.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7322.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7323.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7324.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7325.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7326.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

7327.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7328.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7329.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law

### 20.    Causes of Action on Behalf of the Missouri-Amneal Classes

### COUNT 457
### Violation of the Missouri Merchandising Practices Act
### (Mo. Rev. Stat. §407.010, *et seq.*)
### (Against Amneal)

7330.   Missouri Class Representatives Martha Summers, Timberly Goble, Elaine Aaron, Lisa Deckard, Cynthia Gibbs, and Brenda Newcomb incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7331.   This cause of action is brought on behalf of the Missouri-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7332.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mo. Ann. Stat. §407.010(5).

7333.   Defendant was and is engaged in "[t]rade or commerce" within the meaning of Mo. Ann. Stat. §407.010(7).

7334.   The Missouri Merchandising Practices Act ("Missouri MPA") prohibits "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Ann. Stat. §407.020(1).

7335.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-

Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7336.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Missouri MPA.

7337.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7338.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7339.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7340.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7341.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Missouri MPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7342.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7343.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7344.   As a result of Defendant's violations of the Missouri MPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Missouri MPA.

## COUNT 458
### Unjust Enrichment
### (Missouri Law)
### (Against Amneal)

7345.   Missouri Class Representatives Martha Summers, Timberly Goble, Elaine Aaron, Lisa Deckard, Cynthia Gibbs, and Brenda Newcomb incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7346.   This cause of action is brought on behalf of the Missouri-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7347.   This cause of action is brought on behalf of the Missouri Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7348.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7349.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7350.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7351.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the

Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7352.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7353.   There is no express contract governing this dispute.

7354.   Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 459**
**Breach of Implied Warranty**
**(Mo. Rev. Stat. §400.2-314)**
**(Against Amneal)**

</div>

7355.   Missouri Class Representatives Martha Summers, Timberly Goble, Elaine Aaron, Lisa Deckard, Cynthia Gibbs, and Brenda Newcomb incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7356.   This cause of action is brought on behalf of the Missouri-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7357.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Missouri Class Representatives and members of the Missouri Class and was in the business of selling such products.

7358.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7359.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7360.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7361.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7362.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7363.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

7364.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7365.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7366.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 21.    Causes of Action on Behalf of the Nevada-Amneal Classes

### COUNT 460
### Violation of the Nevada Deceptive Trade Practices Act
### (Nev. Rev. Stat. Ann. §598.0903, *et seq.*)
### (Against Amneal)

7367.   Nevada Class Representative Monica Costello incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7368.   This cause of action is brought on behalf of the Nevada-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7369.   The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), prohibits the use of "'deceptive trade practices' . . . in the course of . . . business or occupation."  Nev. Rev. Stat. Ann. §598.0915.

7370.   The Nevada DTPA makes unlawful specific acts, including:

(a)    "[k]nowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for

sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith" (Nev. Rev. Stat. Ann. §598.0915(5));

(b)    "[r]epresent[ing] that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model" (Nev. Rev. Stat. Ann. §598.0915(7));

(c)    "[a]dvertis[ing] goods or services with intent not to sell or lease them as advertised" (Nev. Rev. Stat. Ann. §598.0915(9));

(d)    "[k]nowingly mak[ing] any other false representation in a transaction" (Nev. Rev. Stat. Ann. §598.0915(15)); and

(e)    "[f]ail[ing] to disclose a material fact in connection with the sale or lease of goods or services" (Nev. Rev. Stat. Ann. §598.0923(2)).

7371.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7372.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Nevada DTPA, including:

(a)    representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)     failing to disclose the NDMA danger in connection with the sale of the Ranitidine-Containing Products; and

(e)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

7373.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

7374.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

7375.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7376.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7377.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Nevada DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7378.  Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7379.  Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7380.  As a result of Defendant's violations of the Nevada DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Nevada DTPA.

**COUNT 461**
**Unjust Enrichment**
**(Nevada Law)**
**(Against Amneal)**

7381.  Nevada Class Representative Monica Costello incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7382.  This cause of action is brought on behalf of the Nevada-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7383.  Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7384.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7385.   Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7386.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7387.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7388.   There is no express contract governing this dispute.

7389.   Plaintiff and the Class members do not have an adequate remedy at law.

22.     **Causes of Action on Behalf of the New Hampshire-Amneal Classes**

**COUNT 462**
**Violation of the New Hampshire Consumer Protection Act**
**(N.H. Rev. Stat. Ann. §358-A:1,** *et seq.***)**
**(Against Amneal)**

7390.   New Hampshire Class Representatives Rafael Bermudez and David Rice incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7391.   This cause of action is brought on behalf of the New Hampshire-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7392.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of N.H. Rev. Stat. Ann. §358-A:1(I).

7393.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of N.H. Rev. Stat. Ann. §358-A:1(II).

7394.   The New Hampshire Consumer Protection Act ("New Hampshire CPA") prohibits "any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce."  N.H. Rev. Stat. Ann. §358-A:2.

7395.   The New Hampshire CPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (N.H. Rev. Stat. Ann. §358-A:2(V));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." (N.H. Rev. Stat. Ann. §358-A:2(VII)); and

(c)     "[a]dvertising goods or services with intent not to sell them as advertised." (N.H. Rev. Stat. Ann. §358-A:2(IX)).

- 1637 -

7396.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Hampshire CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7397.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Hampshire CPA, including:

(a)   representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

7398.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7399.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7400.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7401.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7402.   Plaintiffs and the Class members were aggrieved by Defendant's violations of New Hampshire CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7403.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7404.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7405.   As a result of Defendant's violations of the New Hampshire CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Hampshire CPA.

## COUNT 463
## Unjust Enrichment
## (New Hampshire Law)
## (Against Amneal)

7406. New Hampshire Class Representatives Rafael Bermudez and David Rice incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7407. This cause of action is brought on behalf of the New Hampshire-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7408. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7409. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7410. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7411.   It is unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7412.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7413.   There is no valid, express contract governing this dispute.

7414.   Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 464**
**Breach of Implied Warranty**
**(N.H. Rev. Stat. Ann. §382-A:2-314)**
**(Against Amneal)**

7415.   New Hampshire Class Representatives Rafael Bermudez and David Rice incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7416.   This cause of action is brought on behalf of the New Hampshire-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7417.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Hampshire Class Representatives and members of the New Hampshire Class and was in the business of selling such products.

7418.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7419. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7420. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7421. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7422. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7423. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

7424. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7425.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7426.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 23.    Causes of Action on Behalf of the New Jersey-Amneal Classes

### COUNT 465
### Violation of the New Jersey Consumer Fraud Act
### (N.J. Stat. Ann. §56:8-1, *et seq.*)
### (Against Amneal)

7427.   New Jersey Class Representatives James Adamo, Mary McMillian ,         Mary Moronski, and Lynn White incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7428.   This cause of action is brought on behalf of the New Jersey-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7429.   Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.J. Stat. Ann. §56:8-1(d).

7430.   The Ranitidine-Containing Products are "merchandise" within the meaning of N.J. Stat. Ann. §56:8-1(c).

7431.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Jersey Consumer Fraud Act ("New Jersey CFA") by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  N.J. Stat. Ann. §56:8-1, *et seq.*

7432.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Jersey CFA.

7433.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7434.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7435.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7436.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7437.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Jersey CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7438.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7439.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7440.   As a result of Defendant's violations of the New Jersey CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Jersey CFA.

**COUNT 466**
**Unjust Enrichment**
**(New Jersey Law)**
**(Against Amneal)**

7441.   New Jersey Class Representatives James Adamo, Mary McMillian ,          Mary Moronski, and Lynn White incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7442.   This cause of action is brought on behalf of the New Jersey-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7443.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7444.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7445.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7446.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7447.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7448.   Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 467**
**Breach of Implied Warranty**
**(N.J. Stat. Ann. §12A:2-314)**
**(Against Amneal)**

</div>

7449.   New Jersey Class Representatives James Adamo, Mary McMillian ,       Mary Moronski, and Lynn White incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7450.   This cause of action is brought on behalf of the New Jersey-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7451.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Jersey Class Representatives and members of the New Jersey Class and was in the business of selling such products.

7452.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7453.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7454.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7455.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7456.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7457.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

7458.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7459.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7460.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**24.    Causes of Action on Behalf of the New Mexico-Amneal Classes**

**COUNT 468**
**Violation of the New Mexico Unfair Trade Practices Act**
**(N.M. Stat. Ann. §57-12-1, *et seq.*)**
**(Against Amneal)**

7461.   New Mexico Class Representatives Josefina Griego, Carrie Martinez, and George Tapia incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7462.   This cause of action is brought on behalf of the New Mexico-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7463.   Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

7464.   Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

7465.  The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person."  N.M. Stat. Ann. §57-12-2(D).  The New Mexico UTPA also makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid."  N.M. Stat. Ann. §57-12-2(E).

7466.  The New Mexico UTPA makes unlawful specific acts, including:

(a)     "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

(b)     "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

(c)     "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

7467.  In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7468.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Mexico UTPA, including:

(a)   representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)   using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and

(d)   acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.

7469.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7470.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7471.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7472.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7473.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7474.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7475.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7476.   As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

**COUNT 469**
**Unjust Enrichment**
**(New Mexico Law)**
**(Against Amneal)**

7477.   New Mexico Class Representatives Josefina Griego, Carrie Martinez, and George Tapia incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7478.   This cause of action is brought on behalf of the New Mexico-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7479.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7480.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7481.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7482.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7483. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7484. There is no express contract governing this dispute.

7485. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 470**
**Breach of Implied Warranty**
**(N.M. Stat. Ann. §55-2-314)**
**(Against Amneal)**

7486. New Mexico Class Representatives Josefina Griego, Carrie Martinez, and George Tapia incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7487. This cause of action is brought on behalf of the New Mexico-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7488. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

7489. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7490.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7491.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7492.  Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7493.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7494.  Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

7495.  Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7496.  Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7497.  As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 25.    Causes of Action on Behalf of the New York-Amneal Classes

### COUNT 471
### Violation of New York Deceptive Acts and Practices Act
### (N.Y. Gen. Bus. Law §349)
### (Against Amneal)

7498.  New York Class Representatives Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen    , Joseph Mcpheter, Steven Murdock, Glorimar Rodriguez, Phyllis Spuler, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7499.  This cause of action is brought on behalf of the New York-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7500.  Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

7501.  The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §349(a).

7502.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7503.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

7504.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7505.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7506.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7507.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7508.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7509.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7510.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7511.  As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

**COUNT 472**
**Violation of the New York False Advertising Act**
**(N.Y. Gen. Bus. Law §350)**
**(Against Amneal)**

7512.  New York Class Representatives Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen     , Joseph Mcpheter, Steven Murdock, Glorimar Rodriguez,

Phyllis Spuler, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7513.   This cause of action is brought on behalf of the New York-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7514.   Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

7515.   The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

7516.   Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

7517.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time

period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7518.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

7519.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7520.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7521.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7522.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7523.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7524.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7525.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7526.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

7527.   As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the New York Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

**COUNT 473**
**Unjust Enrichment**
**(New York Law)**
**(Against Amneal)**

7528.   New York Class Representatives Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen     , Joseph Mcpheter, Steven Murdock, Glorimar Rodriguez, Phyllis Spuler, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7529.   This cause of action is brought on behalf of the New York-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7530.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7531.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7532.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7533.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7534.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7535.   Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 474**
**Breach of Implied Warranty**
**(N.Y. U.C.C. Law §2-314)**
**(Against Amneal)**

7536.   New York Class Representatives Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen    , Joseph Mcpheter, Steven Murdock, Glorimar Rodriguez, Phyllis Spuler, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7537.   This cause of action is brought on behalf of the New York-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7538.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representatives and members of the New York Class and was in the business of selling such products.

7539.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

- 1663 -

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7540.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7541.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7542.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7543.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7544.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

7545.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7546.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7547.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 26.   Causes of Action on Behalf of the North Carolina-Amneal Classes

### COUNT 475
### Violation of the North Carolina Unfair and Deceptive Trade Practices Act
### (N.C. Gen. Stat. Ann. §75-1.1, *et seq.*)
### (Against Amneal)

7548.   North Carolina Class Representatives Acia D'amore, Patricia Frazier, Teresa Lee, Sharon Parks, Dennis Robbins, and Julie Turner incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7549.   This cause of action is brought on behalf of the North Carolina-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7550.   Defendant was and is engaged in "commerce" within the meaning of N.C. Gen. Stat. Ann. §75-1.1(b).

7551.   The North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," N.C. Gen. Stat. Ann. §75-1.1(a), and provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the law.  N.C. Gen. Stat. Ann. §75-16.

7552.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7553.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the North Carolina UDTPA.

7554.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7555.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7556.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7557.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7558.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the North Carolina UDTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7559.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7560.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7561.   As a result of Defendant's violations of the North Carolina UDTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive

acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the North Carolina UDTPA.

<div align="center">

**COUNT 476**
**Unjust Enrichment**
**(North Carolina Law)**
**(Against Amneal)**

</div>

7562.   North Carolina Class Representatives Acia D'amore, Patricia Frazier, Teresa Lee, Sharon Parks, Dennis Robbins, and Julie Turner incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7563.   This cause of action is brought on behalf of the North Carolina-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7564.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7565.   The benefit provided by Plaintiffs and the Class members was not conferred gratuitously, and in exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7566.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7567.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7568.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7569.   Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 477**
**Breach of Implied Warranty**
**(N.C. Gen. Stat. Ann. §25-2-314)**
**(Against Amneal)**

7570.   North Carolina Class Representatives Acia D'amore, Patricia Frazier, Teresa Lee, Sharon Parks, Dennis Robbins, and Julie Turner incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7571.   This cause of action is brought on behalf of the North Carolina-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7572.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to North Carolina Class Representatives and members of the North Carolina Class and was in the business of selling such products.

7573.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7574.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7575.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7576.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7577.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7578.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

7579. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7580. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7581. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 27. Causes of Action on Behalf of the Ohio-Amneal Classes

**COUNT 478**
**Unjust Enrichment**
**(Ohio Law)**
**(Against Amneal)**

7582. Ohio Class Representatives Michael Galloway and Patricia Hess incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7583. This cause of action is brought on behalf of the Ohio-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7584.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7585.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7586.   Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7587.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7588.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7589.   Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 479**
**Breach of Implied Warranty**
**(Ohio Rev. Code Ann. §1302.27)**
**(Against Amneal)**

</div>

7590.   Ohio Class Representatives Michael Galloway and Patricia Hess incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7591.   This cause of action is brought on behalf of the Ohio-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7592.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Ohio Class Representatives and members of the Ohio Class and was in the business of selling such products.

7593.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7594.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7595.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7596.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7597.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7598.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

7599.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7600.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7601.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 28.   Causes of Action on Behalf of the Oklahoma-Amneal Classes

### COUNT 480
### Violation of the Oklahoma Consumer Protection Act
### (Okla. Stat. tit. 15, §751, *et seq.*)
### (Against Amneal)

7602.   Oklahoma Class Representative Demarco Grayson incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7603.   This cause of action is brought on behalf of the Oklahoma-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7604.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Okla. Stat. tit. 15, §752(1).

7605.   Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Okla. Stat. tit. 15, §752(2).

7606.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Okla. Stat. tit. 15, §752(7).

7607.   The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits numerous unlawful acts, including misleading representations, false advertisements, and false statements. Okla. Stat. tit. 15, §753.   The Oklahoma CPA defines "[d]eceptive trade practice" as "a misrepresentation, omission or other practice that has deceived or . . . mislead a person to the

detriment of that person."  Okla. Stat. tit. 15, §752(13).  The Oklahoma CPA defines "[u]nfair trade practice" as "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."  Okla. Stat. tit. 15, §752(14).

7608.   The Oklahoma CPA makes unlawful specific acts, including:

(a)     "[m]ak[ing] a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction" (Okla. Stat. tit. 15, §753(5));

(b)     "[r]epresent[ing], knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another" (Okla. Stat. tit. 15, §753(7));

(c)     "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised" (Okla. Stat. tit. 15, §753(8)); and

(d)     "[c]ommit[ing] an unfair or deceptive trade practice as defined in Section 752" (Okla. Stat. tit. 15, §753(20)).

7609.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7610.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Oklahoma CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

7611.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

7612.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

7613.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7614.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7615.   Plaintiff and the Class members were aggrieved by Defendant's violations of Oklahoma CPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7616.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7617.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7618.   As a result of Defendant's violations of the Oklahoma CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Oklahoma CPA.

<div align="center">

**COUNT 481**
**Unjust Enrichment**
**(Oklahoma Law)**
**(Against Amneal)**

</div>

7619.   Oklahoma Class Representative Demarco Grayson incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7620.   This cause of action is brought on behalf of the Oklahoma-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7621. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7622. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7623. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7624. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7625. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7626. Plaintiff and the Class members do not have an adequate remedy at law.

**COUNT 482**
**Breach of Implied Warranty**
**(Okla. Stat. tit. 12A §2-314)**
**(Against Amneal)**

7627.   Oklahoma Class Representative Demarco Grayson incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7628.   This cause of action is brought on behalf of the Oklahoma-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7629.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Oklahoma Class Representatives and members of the Oklahoma Class and was in the business of selling such products.

7630.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7631.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7632.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7633.   Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7634.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7635.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

7636.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7637.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7638.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

29.     **Causes of Action on Behalf of the Oregon-Amneal Classes**

**COUNT 483**
**Violation of the Oregon Unlawful Trade Practices Act**
**(Or. Rev. Stat. Ann. §646.605, *et seq.*)**
**(Against Amneal)**

7639.   Oregon Class Representative Kristi Ledbetter incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7640.   This cause of action is brought on behalf of the Oregon-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7641.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Or. Rev. Stat. Ann. §646.605(4).

7642.   The Ranitidine-Containing Products are "goods" within the meaning of Or. Rev. Stat. Ann. §646.605(6).

7643.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Or. Rev. Stat. Ann. §646.605(8).

7644.   The Oregon Unlawful Trade Practices Act ("Oregon UTPA") prohibits "unlawful practice . . . in the course of the person's business." Or. Rev. Stat. Ann. §646.608(1).

7645.   The Oregon UTPA makes unlawful specific acts, including:

(a)     "[r]epresent[ing] that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have" (Or. Rev. Stat. Ann. §646.608(1)(e));

(b)     "[r]epresent[ing] that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if the real estate, goods or services are of another" (Or. Rev. Stat. Ann. §646.608(1)(g));

(c) "[a]dvertis[ing] real estate, goods or services with intent not to provide the real estate, goods or services as advertised" (Or. Rev. Stat. Ann. §646.608(1)(i)); and

(d) "[e]ngag[ing] in any other unfair or deceptive conduct in trade or commerce" (Or. Rev. Stat. Ann. §646.608(1)(u)).

7646. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oregon UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7647. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Oregon UTPA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

7648. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

7649.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

7650.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7651.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7652.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Oregon UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7653.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7654.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7655.   As a result of Defendant's violations of the Oregon UTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Oregon UTPA.

**COUNT 484**
**Unjust Enrichment**
**(Oregon Law)**
**(Against Amneal)**

7656.   Oregon Class Representative Kristi Ledbetter incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7657.   This cause of action is brought on behalf of the Oregon-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7658.   Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7659.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7660.   Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7661.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7662.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7663.   There is no express contract governing this dispute.

7664.   Plaintiff and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 485**
**Breach of Implied Warranty**
**(Or. Rev. Stat. Ann. §72.3140)**
**(Against Amneal)**

</div>

7665.   Oregon Class Representative Kristi Ledbetter incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7666.   This cause of action is brought on behalf of the Oregon-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7667.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Oregon Class Representatives and members of the Oregon Class and was in the business of selling such products.

7668.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7669.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7670.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7671.   Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7672.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7673.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

7674.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7675.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7676.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

30. **Causes of Action on Behalf of the Pennsylvania-Amneal Classes**

### COUNT 486
### Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law
### (73 Pa. Cons. Stat. §201-1, *et seq.*)
### (Against Amneal)

7677.   Pennsylvania Class Representatives Nicholas Hazlett, Felicia Ball, Elmer Cook, and Carol Loggins incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7678.   This cause of action is brought on behalf of the Pennsylvania-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7679.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of 73 Pa. C.S. §201-2(2).

7680.   Plaintiffs and the Class members purchased the Ranitidine-Containing Products "primarily for personal, family or household purposes" within the meaning of 73 Pa. C.S. §201-9.2(a).

7681.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of 73 Pa. C.S. §201-2(3).

7682.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  73 Pa. C.S. §201-3.

7683.   The Pennsylvania CPL makes unlawful specific acts, including:

(a)   "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (73 Pa. C.S. §201-2(4)(v));

(b)    "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (73 Pa. C.S. §201-2(4)(vii));

(c)    "[a]dvertising goods or services with intent not to sell them as advertised" (73 Pa. C.S. §201-2(4)(ix)); and

(d)    "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" (73 Pa. C.S. §201-2(4)(xxi)).

7684.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7685.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Pennsylvania CPL, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)    engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

7686.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

- 1690 -

7687.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7688.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7689.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7690.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

7691.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Pennsylvania CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7692.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7693.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7694.  As a result of Defendant's violations of the Pennsylvania CPL, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Pennsylvania CPL.

<div align="center">

**COUNT 487**
**Unjust Enrichment**
**(Pennsylvania Law)**
**(Against Amneal)**

</div>

7695.  Pennsylvania Class Representatives Nicholas Hazlett, Felicia Ball, Elmer Cook, and Carol Loggins incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7696.  This cause of action is brought on behalf of the Pennsylvania-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7697.  Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7698.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom

7699.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7700.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7701.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7702.   There is no express contract governing this dispute.

7703.   Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 488**
**Breach of Implied Warranty**
**(13 Pa. Cons. Stat. §2314)**
**(Against Amneal)**

7704.   Pennsylvania Class Representatives Nicholas Hazlett, Felicia Ball, Elmer Cook, and Carol Loggins incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7705.   This cause of action is brought on behalf of the Pennsylvania-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7706.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Pennsylvania Class Representatives and members of the Pennsylvania Class and was in the business of selling such products.

7707.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7708.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7709.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7710.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7711.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7712.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

7713.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7714.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7715.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 31.    Causes of Action on Behalf of the Puerto Rico-Amneal Classes

**COUNT 489**
**Unjust Enrichment**
**(Puerto Rico Law)**
**(Against Amneal)**

7716.  Puerto Rico Class Representatives Sonia Diaz and Gloria Colon incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7717.  This cause of action is brought on behalf of the Puerto Rico-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7718.  Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7719.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7720.  Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

7721.   Defendants' enrichment – the monies obtained from Plaintiffs' and the Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and the Class members' impoverishment – i.e., Plaintiffs' and the Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

7722.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7723.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7724.   Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 490**
**Breach of Implied Warranty**
**(P.R. Laws Ann. tit. 31, §3841)**
**(Against Amneal)**

7725.   Puerto Rico Class Representatives Sonia Diaz and Gloria Colon incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7726.   This cause of action is brought on behalf of the Puerto Rico-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7727.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Puerto Rico Class Representatives and members of the Puerto Rico Class and was in the business of selling such products.

7728.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7729.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7730.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7731.  Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7732.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7733.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

7734.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7735.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7736.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 32.    Causes of Action on Behalf of the South Carolina-Amneal Classes

### COUNT 491
### Violation of the South Carolina Unfair Trade Practices Act
### (S.C. Code Ann. §39-5-10, *et seq.*)
### (Against Amneal)

7737.  South Carolina Class Representatives Michael Futrell, Annie Johnson, and Marianella Villanueva incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7738.   This cause of action is brought on behalf of the South Carolina-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7739.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of S.C. Code Ann. §39-5-10(a).

7740.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of S.C. Code Ann. §39-5-10(b).

7741.   The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  S.C. Code Ann. §39-5-20(a).

7742.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7743.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the South Carolina UTPA.

7744.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7745.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7746.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7747.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7748.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the South Carolina UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7749.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7750.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7751.   As a result of Defendant's violations of the South Carolina UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the South Carolina UTPA.

**COUNT 492**
**Unjust Enrichment**
**(South Carolina Law)**
**(Against Amneal)**

7752.   South Carolina Class Representatives Michael Futrell, Annie Johnson, and Marianella Villanueva incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7753.   This cause of action is brought on behalf of the South Carolina-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7754.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7755.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7756.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7757.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7758.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7759.   Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 493**
**Breach of Implied Warranty**
**(S.C. Code Ann. §36-2-314)**
**(Against Amneal)**

</div>

7760.  South Carolina Class Representatives Michael Futrell, Annie Johnson, and Marianella Villanueva incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7761.  This cause of action is brought on behalf of the South Carolina-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7762.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to South Carolina Class Representatives and members of the South Carolina Class and was in the business of selling such products.

7763.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7764.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7765.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7766.  Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7767.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7768.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

7769.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7770.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7771.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 33.    Causes of Action on Behalf of the Tennessee-Amneal Classes

### COUNT 494
### Violation of the Tennessee Consumer Protection Act of 1977
### (Tenn. Code Ann. §47-18-101, *et seq.*)
### (Against Amneal)

7772.   Tennessee Class Representatives Angela Taylor, Kenneth Hix, Rodriquze Hampton Jr., Eva Broughton, Rebecca Howard, Lisa Lyle, Pam Turner, and Billie Walker incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7773.   This cause of action is brought on behalf of the Tennessee-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7774.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tenn. Code Ann. §47-18-103(14).

7775.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tenn. Code Ann. §47-18-103(3).

7776.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Tenn. Code Ann. §47-18-103(8).

7777.   Defendant was and is engaged in "[t]rade" or "commerce" or "consumer transaction[s]" within the meaning of Tenn. Code Ann. §47-18-103(20).

7778.   The Tennessee Consumer Protection Act of 1977 ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce."  Tenn. Code Ann. §47-18-104(a).

7779.   The Tennessee CPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tenn. Code Ann. §47-18-104(b)(5));

(b)     "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (Tenn. Code Ann. §47-18-104(b)(7)); and

(c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Tenn. Code Ann. §47-18-104(b)(9)).

7780.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7781.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Tennessee CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

7782.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7783.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7784.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7785.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7786.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Tennessee CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7787.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7788. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

7789. As a result of Defendant's violations of the Tennessee CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Tennessee CPA.

**COUNT 495**
**Unjust Enrichment**
**(Tennessee Law)**
**(Against Amneal)**

7790. Tennessee Class Representatives Angela Taylor, Kenneth Hix, Rodriquze Hampton Jr., Eva Broughton, Rebecca Howard, Lisa Lyle, Pam Turner, and Billie Walker incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7791. This cause of action is brought on behalf of the Tennessee-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7792. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7793. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7794.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7795.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7796.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7797.   There is no existing, enforceable contract governing this dispute.

7798.   Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 496
### Breach of Implied Warranty
### (Tenn. Code Ann. §47-2-314)
### (Against Amneal)

7799.   Tennessee Class Representatives Angela Taylor, Kenneth Hix, Rodriquze Hampton Jr., Eva Broughton, Rebecca Howard, Lisa Lyle, Pam Turner, and Billie Walker incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7800. This cause of action is brought on behalf of the Tennessee-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7801. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Tennessee Class Representatives and members of the Tennessee Class and was in the business of selling such products.

7802. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7803. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7804. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7805. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7806.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7807.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

7808.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7809.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7810.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 34.    Causes of Action on Behalf of the Texas-Amneal Classes

### COUNT 497
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
### (Tex. Bus. & Com. Code Ann. §17.41, *et seq.*)
### (Against Amneal)

7811.   Texas Class Representatives Timberly Goble, Marianella Villanueva, Marilyn Abraham, Maria Eames, Tina Howard, Christopher Johnson, Gina Martinez, Tonya Overstreet, Gregory Alan Wayland, and Sylvia Yoshida incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7812.   This cause of action is brought on behalf of the Texas-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7813.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

7814.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

7815.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

7816.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

7817.   The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of

the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."

Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

7818.   The Texas DTPA makes unlawful specific acts, including:

(a)   "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

(b)   "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

(c)   "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

7819.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7820.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

7821.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7822.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7823.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7824.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7825.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

7826.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate

result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7827. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7828. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

7829. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public. In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

7830. As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

**COUNT 498**
**Unjust Enrichment**
**(Texas Law)**
**(Against Amneal)**

7831.   Texas Class Representatives Timberly Goble, Marianella Villanueva, Marilyn Abraham, Maria Eames, Tina Howard, Christopher Johnson, Gina Martinez, Tonya Overstreet, Gregory Alan Wayland, and Sylvia Yoshida incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7832.   This cause of action is brought on behalf of the Texas-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7833.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7834.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7835.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7836.   It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7837.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7838.   Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

## COUNT 499
### Breach of Implied Warranty
### (Tex. Bus. & Com. Code Ann. §2-314)
### (Against Amneal)

7839.   Texas Class Representatives Timberly Goble, Marianella Villanueva, Marilyn Abraham, Maria Eames, Tina Howard, Christopher Johnson, Gina Martinez, Tonya Overstreet, Gregory Alan Wayland, and Sylvia Yoshida incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7840.   This cause of action is brought on behalf of the Texas-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7841.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

7842.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7843.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7844.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7845.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7846.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7847.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

7848.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7849.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7850.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**35.     Causes of Action on Behalf of the Utah-Amneal Classes**

**COUNT 500**
**Violation of the Utah Consumer Sales Practices Act**
**(Utah. Code Ann. §13-11-1, *et seq.*)**
**(Against Amneal)**

7851.   Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7852.   This cause of action is brought on behalf of the Utah-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7853.   Defendant is a "[s]upplier" within the meaning of Utah Code Ann. §13-11-3(6).

7854.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Utah Code Ann. §13-11-3(5).

7855.   Defendant was and is engaged in "consumer transactions" within the meaning of Utah Code Ann. §13-11-3(2)(a).

7856.   The Utah Consumer Sales Practices Act ("Utah CSPA") prohibits any "deceptive act or practice by a supplier in connection with a consumer transaction."  Utah Code Ann. §13-11-4(1).  "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA.  Utah Code Ann. §13-11-5(1).

7857.   The Utah CSPA makes unlawful specific acts, including:

(a)   "indicat[ing] that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" (Utah Code Ann. §13-11-4(2)(a)); and

(b)   "indicat[ing] that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not" (Utah Code Ann. §13-11-4(2)(b)).

7858.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah CSPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7859.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Utah CSPA, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have; and

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not.

7860.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

7861.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

7862.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7863.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7864.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Utah CSPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7865.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7866.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7867.   As a result of Defendant's violations of the Utah CSPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Utah CSPA.

<div align="center">

**COUNT 501**
**Violation of the Utah Truth in Advertising Law**
**(Utah Code Ann. §13-11a-1, *et seq.*)**
**(Against Amneal)**

</div>

7868.   Utah Class Representatives Teresa Waters incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7869.   This cause of action is brought on behalf of the Utah-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7870.   Defendant is a "[s]upplier" within the meaning of Utah Code Ann. §13-11a-2(17).

7871.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Utah Code Ann. §13-11a-2(7).

7872.   The Ranitidine-Containing Products are "goods" within the meaning of Utah Code Ann. §13-11a-2(4).

7873.   The Utah Truth in Advertising Law ("Utah TAL") prohibits any deceptive practice undertaken "in the course of a person's business."  Utah Code Ann. §13-11a-3(1).

7874.   The Utah TAL makes unlawful specific acts, including:

(a)   "represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have" (Utah Code Ann. §13-11a-3(1)(e));

(b)   "represent[ing] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Utah Code Ann. §13-11a-3(1)(g));

(c)   "advertis[ing] goods or services with intent not to sell them as advertised" (Utah Code Ann. §13-11a-3(1)(i)); and

(d)   "engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding" (Utah Code Ann. §13-11a-3(1)(t)).

7875.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah TAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7876.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Utah TAL, including:

(a)   representing that Ranitidine-Containing Products were both safe and effective for the lifetime of the product, when in fact, they were not;

(b)   representing that consumption of Ranitidine-Containing Products had characteristics, ingredients, uses, benefits, or qualities that they do not have;

(c)   representing that Ranitidine-Containing Products are of a particular standard, quality, or grade when they are not;

(d)   advertising Ranitidine-Containing Products with the intent not to sell them as advertised; and

(e)    engaging in any other conduct that creates a likelihood of confusion.

7877.  Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

7878.  Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

7879.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7880.  The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7881.  Plaintiff and the Class members were aggrieved by Defendant's violations of the Utah TAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7882.  Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7883.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7884.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiff in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seeks all damages and relief to which Plaintiff and the Class members are entitled.

7885.   As a result of Defendant's violations of the Utah TAL, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Utah TAL.

### COUNT 502
### Unjust Enrichment
### (Utah Law)
### (Against Amneal)

7886.   Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7887.   This cause of action is brought on behalf of the Utah-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7888.   Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7889.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7890.   Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7891.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7892.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7893.   Plaintiff and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 503**
**Breach of Implied Warranty**
**(Utah. Code Ann. §70A-2-314)**
**(Against Amneal)**

7894.   Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7895.   This cause of action is brought on behalf of the Utah-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7896.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Utah Class Representatives and members of the Utah Class and was in the business of selling such products.

7897.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7898.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7899.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7900.   Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7901.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7902.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

7903.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7904.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7905.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

36.     **Causes of Action on Behalf of the Vermont-Amneal Classes**

**COUNT 504**
**Violation of the Vermont Consumer Fraud Act**
**(Vt. Stat. Ann. tit. 9, §2451, *et seq.*)**
**(Against Amneal)**

7906.   Vermont Class Representatives Renee Clark, Eric Ragis, and Lisa Ragis incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7907.   This cause of action is brought on behalf of the Vermont-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7908.   Defendant is a "[s]eller" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(c).

7909.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(a).

7910.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(b).

7911.   The Vermont consumer fraud act ("Vermont CFA") prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce."  Vt. Stat. Ann. tit. 9, §2453(a).

7912.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Vermont CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7913.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Vermont CFA.

7914.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7915.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7916.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7917.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7918.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Vermont CFA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7919. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7920. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

7921. As a result of Defendant's violations of the Vermont CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Vermont CFA.

<div align="center">

**COUNT 505**
**Unjust Enrichment**
**(Vermont Law)**
**(Against Amneal)**

</div>

7922. Vermont Class Representatives Renee Clark, Eric Ragis, and Lisa Ragis incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7923. This cause of action is brought on behalf of the Vermont-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7924.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7925.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7926.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7927.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7928.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7929.   There is no express contract governing this dispute.

7930.   Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 506**
**Breach of Implied Warranty**
**(Vt. Stat. Ann. tit. 9A§2-314)**
**(Against Amneal)**

7931.   Vermont Class Representatives Renee Clark, Eric Ragis, and Lisa Ragis incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7932.   This cause of action is brought on behalf of the Vermont-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7933.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Vermont Class Representatives and members of the Vermont Class and was in the business of selling such products.

7934.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7935.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7936.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7937.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7938.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7939.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

7940.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7941.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7942.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 37.    Causes of Action on Behalf of the Virginia-Amneal Classes

### COUNT 507
### Violation of the Virginia Consumer Protection Act
### (Va. Code Ann. §59.1-196, *et seq.*)
### (Against Amneal)

7943.  Virginia Class Representatives Karen Foster, Cheryl Banks, and Lynn Costley incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7944.  This cause of action is brought on behalf of the Virginia-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7945.  Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Va. Code Ann. §59.1-198.

7946.  Defendant was and is a "[s]upplier" within the meaning of Va. Code Ann. §59.1-198.

7947.  The Ranitidine-Containing Products are "[g]oods" within the meaning of Va. Code Ann. §59.1-198.

7948.  Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Va. Code Ann. §59.1-198.

7949.  The Virginia Consumer Protection Act ("Virginia CPA") prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction."  Va. Code Ann. §59.1-200(A).

7950.  The Virginia CPA makes unlawful specific acts, including:

(a)     "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" (Va. Code Ann. §59.1-200(A)(5));

(b)     "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model" (Va. Code Ann. §59.1-200(A)(6));

(c)     "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" (Va. Code Ann. §59.1-200(A)(8)); and

(d)     "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" (Va. Code Ann. §59.1-200(A)(14)).

7951.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7952.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Virginia CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

7953.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7954.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7955.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7956.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7957.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

7958.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Virginia CPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7959.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7960.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7961.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

7962.   As a result of Defendant's violations of the Virginia CPA, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Virginia CPA.

**COUNT 508**
**Unjust Enrichment**
**(Virginia Law)**
**(Against Amneal)**

7963.   Virginia Class Representatives Karen Foster, Cheryl Banks, and Lynn Costley incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7964.   This cause of action is brought on behalf of the Virginia-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7965.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

7966.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

7967.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7968.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

7969.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

7970.   There is no express contract governing this dispute.

7971.   Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 509**
**Breach of Implied Warranty**
**(Va. Code Ann. §8.2-314)**
**(Against Amneal)**

</div>

7972.   Virginia Class Representatives Karen Foster, Cheryl Banks, and Lynn Costley incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7973.   This cause of action is brought on behalf of the Virginia-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7974.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Virginia Class Representatives and members of the Virginia Class and was in the business of selling such products.

7975.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7976.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7977.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

7978.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7979.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

7980.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

7981.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

7982.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

7983.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 38.   Causes of Action on Behalf of the Washington-Amneal Classes

### COUNT 510
### Violation of the Washington Consumer Protection Act
### (Wash. Rev. Code Ann. §19.86.010, *et seq.*)
### (Against Amneal)

7984.   Washington Class Representatives Steve Fischer, Dave Garber, and Bridget Peck incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

7985.   This cause of action is brought on behalf of the Washington-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

7986.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Wash. Rev. Code Ann. §19.86.010(1).

7987.   The Ranitidine-Containing Products are "[a]ssets" within the meaning of Wash. Rev. Code Ann. §19.86.010(3).

7988.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Wash. Rev. Code Ann. §19.86.010(2).

7989.   The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. §19.86.020.

7990.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

7991.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington CPA.

7992.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7993.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

7994.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

7995.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

7996.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Washington CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

7997.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

7998.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

7999.   On June 22, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Wash. Rev. Code §19.86.095 to the Attorney General of the State of Washington.

8000.   As a result of Defendant's violations of the Washington CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Washington CPA.

## COUNT 511
### Unjust Enrichment
### (Washington Law)
### (Against Amneal)

8001.   Washington Class Representatives Steve Fischer, Dave Garber, and Bridget Peck incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8002.   This cause of action is brought on behalf of the Washington-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8003.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8004.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8005.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8006.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8007.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8008.   There is no express contract governing this dispute.

8009.   Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 512
### Breach of Implied Warranty
### (Wash. Rev. Code §62A.2-314)
### (Against Amneal)

8010.   Washington Class Representatives Steve Fischer, Dave Garber, and Bridget Peck incorporate the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8011.   This cause of action is brought on behalf of the Washington-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8012.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Washington Class Representatives and members of the Washington Class and was in the business of selling such products.

8013.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8014.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8015.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

8016.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8017.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8018.  Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

8019.  Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

8020.  Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

8021.  As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**39.    Causes of Action on Behalf of the West Virginia-Amneal Classes**

**COUNT 513**
**Unjust Enrichment**
**(West Virginia Law)**
**(Against Amneal)**

8022.   West Virginia Class Representative Mynetta Hastings incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8023.   This cause of action is brought on behalf of the West Virginia-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8024.   Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8025.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8026.   Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8027.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8028.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8029.   There is no express contract governing this dispute.

8030.   Plaintiff and the Class members do not have an adequate remedy at law.

## COUNT 514
## Breach of Implied Warranty
### (W. Va. Code §46-2-314)
### (Against Amneal)

8031.   West Virginia Class Representative Mynetta Hastings incorporates the preceding allegations in paragraphs 25-29, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8032.   This cause of action is brought on behalf of the West Virginia-Amneal Class (for the purpose of this section, "Class") against Amneal (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8033.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to West Virginia Class Representatives and members of the West Virginia Class and was in the business of selling such products.

8034.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8035.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8036.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

8037.   Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8038.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8039.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

8040.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

8041.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

8042.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### B.      Causes of Action Against Dr. Reddy's

8043.   For the purposes of the subsequent causes of action against Defendant Dr. Reddy's, Plaintiffs are incorporating the following allegations by reference: paragraphs 36-45 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic Zantac); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469 (requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 845-867 (misrepresentations or omissions of material fact in labeling); and 475-483 (equitable tolling).

8044.   Plaintiffs identified in the table below bring claims against Defendant Dr. Reddy's with respect to prescription Ranitidine on behalf of themselves and their respective State Classes under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| Plaintiff Name | State(s) of Residence |
|---|---|
| Daffeney Austin | Alabama |
| Lashonnah Gaitor | Alabama |
| Tammy Smith | Alaska |
| Monica Costello | Arizona, Nevada |
| Jennifer Fox | Arizona |
| Armando Tapia | Arizona |
| Tina Culclager | Arkansas |
| Martha Summers | Arkansas, Mississippi, Missouri |
| Virginia Aragon | California |
| Golbenaz Bakhtiar | California |
| Royal Handy | California |
| Angel Cordero | Connecticut |
| Angel Vega | Connecticut |
| Nicholas Hazlett | Maryland, Pennsylvania |
| Kevin Nelson | District of Columbia |
| Irma Arcaya | Florida |
| Roy Armstrong | Florida, Georgia |
| Jeannie Black | Florida |
| Sonia Diaz | Florida, Puerto Rico |
| Michael Fesser | Florida |
| Karen Foster | Florida, Virginia |
| Hattie Kelley | Florida |
| Marva Mccall | Florida |

| | |
|---|---|
| Clifton McKinnon | Florida |
| Ana Pereira | Florida |
| Daniel Taylor | Florida |
| Joyce Taylor | Florida |
| Michael Tomlinson | Florida |
| Earlene Green | Georgia |
| Leon Greene | Georgia |
| Tyrone Houston | Georgia |
| Kathy Jeffries | Georgia |
| Charlotte Sanders | Georgia |
| Paula Shells | Georgia |
| Cynthia Starr | Georgia |
| Angela Taylor | Georgia, Tennessee |
| Billy Naab | Idaho, Oklahoma, Washington |
| Vickie Anderson | Illinois |
| Heather Re | Illinois |
| Teresa Dowler | Indiana |
| Timberly Goble | Indiana, Kentucky, Missouri, Texas |
| Alyson Humphrey | Indiana |
| Rebecca Sizemore | Indiana |
| Tracy Wells | Indiana |
| Charles Longfield | Iowa |
| Tracy Losee | Iowa |
| Janet Asbury | Kentucky |
| Randy Jones | Louisiana |
| Jamie Mckay | Louisiana |
| Alberta Griffin | Maryland |
| Darlene Whittington-Coates | Maryland |
| Jose Amado | Massachusetts |

| Rafael Bermudez | Massachusetts, New Hampshire |
|---|---|
| Ana Guzman | Massachusetts |
| Michelle Smith | Massachusetts |
| Myra Allen | Michigan |
| Jody Beal | Michigan |
| Benny Cope | Michigan |
| Arthur Gamble | Michigan |
| Kenneth Hix | Michigan, Tennessee |
| Jerry Hunt | Michigan |
| Judy Wilmot | Michigan |
| Lakisha Wilson | Michigan |
| Sandra Erickson-Brown | Minnesota |
| Donald Northrup | Minnesota |
| Beverly Crosby | Mississippi |
| Dorothy King | Mississippi |
| Lora Mauffray | Mississippi |
| Korcis McMillan | Mississippi |
| Michelle Tinker | Mississippi |
| David Weatherly | Mississippi |
| Elaine Aaron | Missouri |
| Antrenise Campbell | Missouri |
| Lisa Deckard | Missouri |
| Cynthia Gibbs | Missouri |
| Brenda Newcomb | Missouri |
| David Rice | New Hampshire |
| James Adamo | New Jersey |
| Sayed Eldomiaty | New Jersey |
| Mary McMillian | New Jersey |
| Mary Moronski | New Jersey |

| | |
|---|---|
| Lynn White | New Jersey |
| Phyllis Gallegos | New Mexico |
| Josefina Griego | New Mexico |
| Carrie Martinez | New Mexico |
| Inez Mazon | New Mexico |
| Ernesto Sanchez | New Mexico |
| George Tapia | New Mexico |
| Silomie Clarke | New York |
| Nereida Cordero | New York |
| Benny Fazio | New York |
| Migdalia Kinney | New York |
| Mary McCullen | New York |
| Joseph Mcpheter | New York |
| Steven Murdock | New York |
| Glorimar Rodriguez | New York |
| Phyllis Spuler | New York |
| Mary Lou Wagner | New York |
| Acia D'amore | North Carolina |
| Patricia Frazier | North Carolina |
| Teresa Lee | North Carolina |
| Sharon Parks | North Carolina |
| Dennis Robbins | North Carolina |
| Julie Turner | North Carolina |
| Michael Galloway | Ohio |
| Patricia Hess | Ohio |
| Demarco Grayson | Oklahoma |
| Kristi Ledbetter | Oregon |
| Felicia Ball | Pennsylvania |
| Elmer Cook | Pennsylvania |

| | |
|---|---|
| Gloria Colon | Puerto Rico |
| Annie Johnson | South Carolina |
| Michael Futrell | South Carolina |
| Jeffery Gunwall | South Carolina |
| Sharon Mclellan | South Carolina |
| Marianella Villanueva | South Carolina, Texas |
| Eva Broughton | Tennessee |
| Rebecca Howard | Tennessee |
| Pam Turner | Tennessee |
| Billie Walker | Tennessee |
| Marilyn Abraham | Texas |
| Maria Eames | Texas |
| Tina Howard | Texas |
| Christopher Johnson | Texas |
| Gina Martinez | Texas |
| Tonya Overstreet | Texas |
| Gregory Alan Wayland | Texas |
| Sylvia Yoshida | Texas |
| Teresa Waters | Utah |
| Renee Clark | Vermont |
| Eric Ragis | Vermont |
| Lisa Ragis | Vermont |
| Cheryl Banks | Virginia |
| Lynn Costley | Virginia |
| Steve Fischer | Washington |
| Dave Garber | Washington |
| Bridget Peck | Washington |
| Mynetta Hastings | West Virginia |
| Wendy Quezaire | Wisconsin |

1.    **Causes of Action on Behalf of the Alabama-Dr. Reddy's Classes**

**COUNT 515**
**Violation of the Alabama Deceptive Trade Practices Act**
**Ala. Code §8-19-1, *et seq.***
**(Against Dr. Reddy's)**

8045.    Alabama Class Representatives Daffeney Austin and Lashonnah Gaitor incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8046.    This cause of action is brought on behalf of the Alabama-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8047.    Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of Ala. Code §8-19-3(5).

8048.    Plaintiffs and the Class members are "consumer[s]" within the meaning of Ala. Code §8-19-3(2).

8049.    The Ranitidine-Containing Products are "goods" within the meaning of Ala. Code §8-19-3(3).

8050.    Defendant was and is engaged in "trade or commerce" within the meaning of Ala. Code §8-19-3(8).

8051.    The Alabama Deceptive Trade Practices Act ("Alabama DTPA") prohibits "deceptive acts or practices in the conduct of any trade or commerce."  Ala. Code §8-19-5.

8052.    The Alabama DTPA makes unlawful specific acts, including:

(a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have" (Ala. Code §8-19-5(5));

- 1759 -

(b)    "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Ala. Code §8-19-5(7));

(c)    "[a]dvertising goods or services with intent not to sell them as advertised" (Ala. Code §8-19-5(9)); and

(d)    "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce" (Ala. Code §8-19-5(27)).

8053.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Alabama DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of N-Nitrosodimethylamine ("NDMA") as time passed.

8054.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Alabama DTPA, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

8055.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

- 1760 -

8056.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8057.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8058.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8059.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

8060.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Alabama DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8061.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8062.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

8063.   Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Ala. Code §8-19-10(e) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

8064.  As a result of Defendant's violations of the Alabama DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Alabama DTPA.

**COUNT 516**
**Unjust Enrichment**
**(Alabama Law)**
**(Against Dr. Reddy's)**

8065.   Alabama Class Representatives Daffeney Austin and Lashonnah Gaitor incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8066.   This cause of action is brought on behalf of the Alabama-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8067.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8068.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8069.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8070.   It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8071.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8072.   Plaintiffs and the Class members do not have an adequate remedy at law.

### 2.   Causes of Action on Behalf of the Alaska-Dr. Reddy's Classes

### COUNT 517
### Violation of the Alaska Unfair Trade Practices and Consumer Protection Act
### (Alaska Stat. Ann. §45.50.471, *et seq.*)
### (Against Dr. Reddy's)

8073.   Alaska Class Representative Tammy Smith incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8074.   This cause of action is brought on behalf of the Alaska-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8075.   Plaintiff and the Class members are "consumer[s]" within the meaning of Alaska Stat. Ann. §45.50.561(a)(4).

8076.   The Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce."  Alaska Stat. Ann. §45.50.471(a).

8077.   The Alaska CPA makes unlawful specific acts, including:

(a)     "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Alaska Stat. Ann. §45.50.471(b)(4));

(b)     "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Alaska Stat. Ann. §45.50.471(b)(6));

(c)     "advertising goods or services with intent not to sell them as advertised" (Alaska Stat. Ann. §45.50.471(b)(8));

(d)     "engaging in any other conduct creating a likelihood of confusion or of misunderstanding and that misleads, deceives, or damages a buyer or a competitor in connection with the sale or advertisement of goods or services" (Alaska Stat. Ann. §45.50.471(b)(11)); and

(e)     "using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived, or damaged" (Alaska Stat. Ann. §45.50.471(b)(12)).

8078.    In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Alaska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8079.    Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Alaska CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

8080.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

8081.   Defendant's misrepresentations and omissions regarding the expiration of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

8082.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8083.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8084.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Alaska CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8085.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8086.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8087.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiff in MDL 2924 sent a notice letter pursuant to Alaska Stat. Ann. §45.50.535(b)(1) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seeks all damages and relief to which Plaintiff and the Class members are entitled.

8088.   As a result of Defendant's violations of the Alaska CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Alaska CPA.

<div style="text-align:center">

**COUNT 518**
**Unjust Enrichment or Quasi-Contract**
**(Alaska Law)**
**(Against Dr. Reddy's)**

</div>

8089.   Alaska Class Representative Tammy Smith incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8090.   This cause of action is brought on behalf of the Alaska-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8091.   Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8092.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8093.   Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8094.   It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8095.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8096.   Plaintiff and the Class members do not have an adequate remedy at law.

### 3.    Causes of Action on Behalf of the Arizona-Dr. Reddy's Classes

### COUNT 519
### Violation of the Arizona Consumer Fraud Act
### (Ariz. Rev. Stat. Ann. §44-1521, *et seq.*)
### (Against Dr. Reddy's)

8097.   Arizona Class Representatives Monica Costello, Jennifer Fox, and Armando Tapia incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8098.   This cause of action is brought on behalf of the Arizona-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8099.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(6).

8100.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(5).

8101.   The Arizona Consumer Fraud Act ("Arizona CFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." Ariz. Rev. Stat. Ann. §44-1522(A).

8102.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Arizona CFA by recklessly, wantonly, knowingly, and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed..

8103.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Arizona CFA.

8104.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8105.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8106.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8107.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8108.  Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

8109.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the Arizona CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8110.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8111.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8112.  As a result of Defendant's violations of the Arizona CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

**COUNT 520**
**Unjust Enrichment**
**(Arizona Law)**
**(Against Dr. Reddy's)**

8113.   Arizona Class Representatives Monica Costello, Jennifer Fox, and Armando Tapia incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8114.   This cause of action is brought on behalf of the Arizona-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8115.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8116.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8117.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8118.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8119.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8120.   Plaintiffs and the Class members do not have an adequate remedy at law.

### 4.    Causes of Action on Behalf of the Arkansas-Dr. Reddy's Classes

### COUNT 521
### Violation of the Arkansas Deceptive Trade Practices Act
### (Ark. Code Ann. §4-88-101, *et seq.*)
### (Against Dr. Reddy's)

8121.   Arkansas Class Representatives Tina Culclager and Martha Summers incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8122.   This cause of action is brought on behalf of the Arkansas-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8123.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ark. Code Ann. §4-88-102(5).

8124.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Ark. Code Ann. §4-88-102(4).

8125.   The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices."  Ark. Code Ann. §4-88-107(a).

- 1773 -

8126.   The Arkansas DTPA makes unlawful specific acts, including:

(a)   "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" (Ark. Code Ann. §4-88-107(a)(1));

(b)   "[a]dvertising the goods or services with the intent not to sell them as advertised" (Ark. Code Ann. §4-88-107(a)(3)); and

(c)   "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" (Ark. Code Ann. §4-88-107(a)(10)).

8127.   The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission . . . ." Ark. Code Ann. §4-88-108(a).

8128.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8129.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Arkansas DTPA, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

8130.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8131.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8132.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8133.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8134.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and

continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

8135.   Plaintiffs and the Class members were aggrieved by Defendant's violations of Arkansas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8136.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8137.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8138.   As a result of Defendant's violations of the Arkansas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

**COUNT 522**
**Unjust Enrichment**
**(Arkansas Law)**
**(Against Dr. Reddy's)**

8139.   Arkansas Class Representatives Tina Culclager and Martha Summers incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8140.   This cause of action is brought on behalf of the Arkansas-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8141.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8142.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8143.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8144.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8145.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8146.   There is no valid, legal, and binding contract governing this dispute.

8147.   Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 523**
**Breach of Implied Warranty**
**(Ark. Code Ann. §4-2-314)**
**(Against Dr. Reddy's)**

8148.   Arkansas Class Representatives Tina Culclager and Martha Summers incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8149.   This cause of action is brought on behalf of the Arkansas-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8150.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arkansas Class Representatives and members of the Arkansas Class and was in the business of selling such products.

8151.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8152.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8153.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

8154.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8155.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8156.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

8157.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

8158.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

8159.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 5.      Causes of Action on Behalf of the California-Dr. Reddy's Classes

### COUNT 524
### Violation of the California Unfair Competition Law
### (Cal. Bus. & Prof. Code §17200, *et seq.*)
### (Against Dr. Reddy's)

8160.   California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8161.   This cause of action is brought on behalf of the California-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8162.   Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

8163.   Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

8164.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and

failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

8165.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL.  These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

8166.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8167.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8168.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8169.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and
intentionally misrepresented, omitted, concealed, and failed to disclose would be considered
material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class
members, who consider such facts to be important to their purchase decisions with respect to
Ranitidine-Containing Products.

8170.   Moreover, Defendant engaged in "unlawful" business acts or practices by violating
both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d);
adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21
U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j),
(n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and
misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, CAL. HEALTH &
SAFETY CODE §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3),
111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer
Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code
§17500, as alleged herein.

8171.   Defendant conduct also consitutes "unfair" business acts or practies.  Under the
balancing test, the determination of whether a business practice is "unfair" involves examining the
practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of
the alleged wrongdoer.

8172.   Additionally, Defendant's conduct was "unfair" under the tethering test, in that it
violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions
under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b),
(d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21

C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, *see* Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

8173.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8174.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8175.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8176.   Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

**COUNT 525**
**Violation of the California False Advertising Law**
**(Cal. Bus. & Prof. Code §17500, *et seq.*)**
**(Against Dr. Reddy's)**

8177.   California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8178.   This cause of action is brought on behalf of the California-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8179.   Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

8180.   The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code §17500.

8181.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products

- 1784 -

remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8182.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

8183.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8184.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8185.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8186.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8187.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8188.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8189.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8190.   As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

**COUNT 526**
**Violation of the California Consumers Legal Remedies Act**
**(Cal. Civ. Code §1750, *et seq.*)**
**(Against Dr. Reddy's)**

8191.   California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8192.   This cause of action is brought on behalf of the California-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8193.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

8194.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

8195.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

8196.   The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code §1770(a).

8197.   The California CLRA makes unlawful specific acts, including:

   (a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

   (b)    "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

- 1787 -

(c)    "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

(d)    "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

8198.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8199.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

8200.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8201.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8202.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8203.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8204.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

8205.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8206.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8207.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

8208.   Pursuant to Cal. Civ. Code §1780(a), Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

## COUNT 527
### Unjust Enrichment or Quasi-Contract
### (California Law)
### (Against Dr. Reddy's)

8209.   California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8210.   This cause of action is brought on behalf of the California-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8211.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8212.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8213.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8214.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8215.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8216.   Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 528**
**Breach of Implied Warranty**
**(Cal. Com. Code §2314)**
**(Against Dr. Reddy's)**

8217.   California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8218.   This cause of action is brought on behalf of the California-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8219.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to California Class Representatives and members of the California Class and was in the business of selling such products.

8220.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8221.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8222.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

8223.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8224.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8225.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

8226.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

8227.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

8228.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**6.      Causes of Action on Behalf of the Connecticut-Dr. Reddy's Classes**

**COUNT 529**
**Violation of the Connecticut Unfair Trade Practices Act**
**(Conn. Gen. Stat. Ann. §42-110a, *et seq.*)**
**(Against Dr. Reddy's)**

8229.   Connecticut Class Representatives Angel Cordero and Angel Vega incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8230.   This cause of action is brought on behalf of the Connecticut-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8231.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Conn. Gen. Stat. Ann. §42-110a(3).

8232.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. §42-110a(4).

8233.   The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. Ann. §42-110b(a).

8234.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8235.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Connecticut UTPA.

8236.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8237.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8238.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8239.  The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8240.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the Connecticut UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8241.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8242.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8243.  As a result of Defendant's violations of the Connecticut UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

## COUNT 530
## Unjust Enrichment
## (Connecticut Law)
## (Against Dr. Reddy's)

8244.   Connecticut Class Representatives Angel Cordero and Angel Vega incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8245.   This cause of action is brought on behalf of the Connecticut-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8246.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8247.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8248.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8249.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8250.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8251.   Plaintiffs and the Class members do not have an adequate remedy at law.

**7.   Causes of Action on Behalf of the District of Columbia-Dr. Reddy's Classes**

**COUNT 531**
**Violation of the District of Columbia Consumer Protection Procedures Act**
**(D.C. Code Ann. §28-3901, *et seq.*)**
**(Against Dr. Reddy's)**

8252.   District of Columbia Class Representative Kevin Nelson incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8253.   This cause of action is brought on behalf of the District of Columbia-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8254.   Defendant, Plaintiff, and the Class members are "person[s]" within the meaning of D.C. Code Ann. §28-3901(a)(1).

8255.   Plaintiff and the Class members are "consumer[s]" within the meaning of D.C. Code Ann. §28-3901(a)(2).

8256.   The Ranitidine-Containing Products are "goods" within the meaning of D.C. Code Ann. §28-3901(a)(7).

8257.   Defendant was and is engaged in "trade practice[s]" within the meaning of D.C. Code Ann. §28-3901(a)(6).

8258.   The District of Columbia Consumer Protection Procedures Act ("District of Columbia CPPA") prohibits "unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby."  D.C. Code Ann. §28-3904.

8259.   The District of Columbia CPPA makes unlawful specific acts, including:

(a)    "represent[ing] that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have" (D.C. Code Ann. §28-3904(a));

(b)    "represent[ing] that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another" (D.C. Code Ann. §28-3904(d));

(c)    "advertis[ing] or offer[ing] goods or services without the intent to sell them or without the intent to sell them as advertised or offered" (D.C. Code Ann. §28-3904(h));

(d)    "misrepresent as to a material fact which has a tendency to mislead" (D.C. Code Ann. §28-3904(e));

(e)    "fail to state a material fact if such failure tends to mislead" (D.C. Code Ann. §28-3904(f)); and

(f)    "[u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead" (D.C. Code Ann. §28-3904(f-1)).

8260.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the District of Columbia CPPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8261.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the District of Columbia CPPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)     using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive;

(e)     acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid; and

(f)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

8262.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

8263.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

8264.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8265.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8266.   Plaintiff and the Class members were aggrieved by Defendant's violations of the District of Columbia CPPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8267.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8268.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8269.   As a result of Defendant's violations of the District of Columbia CPPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the District of Columbia CPPA.

**COUNT 532**
**Unjust Enrichment**
**(District of Columbia Law)**
**(Against Dr. Reddy's)**

8270.   District of Columbia Class Representative Kevin Nelson incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8271.   This cause of action is brought on behalf of the District of Columbia-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8272.   Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8273.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8274.   Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8275.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8276.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8277.   There is no express written contract governing this dispute.

8278.   Plaintiff and the Class members do not have an adequate remedy at law.

**8.      Causes of Action on Behalf of the Florida-Dr. Reddy's Classes**

**COUNT 533**
**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**(Fla. Stat. Ann. §501.201, *et seq.*)**
**(Against Dr. Reddy's)**

8279.   Florida Class Representatives Irma Arcaya, Roy Armstrong, Jeannie Black, Sonia Diaz, Michael Fesser, Karen Foster, Hattie Kelley, Marva Mccall, Clifton McKinnon, Ana Pereira, Daniel Taylor, Joyce Taylor, and Michael Tomlinson incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8280.   This cause of action is brought on behalf of the Florida-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8281.   The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. §501.204(1).

8282.   In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017."  Fla. Stat. Ann. §501.204(2).

8283.   Plaintiffs and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA.  *See* Fla. Stat. Ann. §501.203(6)-(7).

8284.   Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA.  *See* Fla. Stat. Ann. §501.203(8).

8285.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8286.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

8287.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8288.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8289.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8290.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8291.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8292.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8293.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8294.   As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

<div align="center">

**COUNT 534**
**Unjust Enrichment**
**(Florida Law)**
**(Against Dr. Reddy's)**

</div>

8295.   Florida Class Representatives Irma Arcaya, Roy Armstrong, Jeannie Black, Sonia Diaz, Michael Fesser, Karen Foster, Hattie Kelley, Marva Mccall, Clifton McKinnon, Ana Pereira, Daniel Taylor, Joyce Taylor, and Michael Tomlinson incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8296.   This cause of action is brought on behalf of the Florida-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8297.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8298.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered an impoverishment because they purchased worthless medications and did not receive the expected benefit therefrom.

8299. Defendant voluntarily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8300. It is unjust and inequitable for the Defendant to retain these benefits without paying the value thereof because the benefits were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8301. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8302. There is no express written contract governing this dispute.

8303. Plaintiffs and the Class members do not have an adequate remedy at law.

### 9. Causes of Action on Behalf of the Georgia-Dr. Reddy's Classes

### COUNT 535
### Violation of the Georgia Fair Business Practices Act
### (Ga. Code Ann. §10-1-390, *et seq.*)
### (Against Dr. Reddy's)

8304. Georgia Class Representatives Roy Armstrong, Earlene Green, Leon Greene, Tyrone Houston, Kathy Jeffries, Charlotte Sanders, Paula Shells, Cynthia Starr, and Angela Taylor incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8305.  This cause of action is brought on behalf of the Georgia-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8306.  Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(24).

8307.  Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(6).

8308.  Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Ga. Code Ann. §10-1-392(a)(28).

8309.  The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."  Ga. Code Ann. §10-1-393(a).

8310.  The Georgia FBPA makes unlawful specific acts, including:

(a)  "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-393(b)(5));

(b)  "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-393(b)(7)); and

(c)  "[a]dvertising goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-393(b)(9)).

8311.  In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time

period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8312.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia FBPA, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

8313.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8314.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8315.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8316.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8317.   Plaintiffs and the Class members reasonably relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

8318.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Georgia FBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8319.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8320.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8321.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual

notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Ga. Code Ann. §10-1-399(b) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

8322.   As a result of Defendant's violations of the Georgia FBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Georgia FBPA.

**COUNT 536**
**Unjust Enrichment**
**(Georgia Law)**
**(Against Dr. Reddy's)**

8323.   Georgia Class Representatives Roy Armstrong, Earlene Green, Leon Greene, Tyrone Houston, Kathy Jeffries, Charlotte Sanders, Paula Shells, Cynthia Starr, and Angela Taylor incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8324.   This cause of action is brought on behalf of the Georgia-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8325.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8326.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8327.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8328.   It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8329.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8330.   There is no express contract governing this dispute.

8331.   Plaintiffs and the Class members do not have an adequate remedy at law.

10.    **Causes of Action on Behalf of the Idaho-Dr. Reddy's Classes**

**COUNT 537**
**Violation of the Idaho Consumer Protection Act**
**(Idaho Code Ann. §48-601, *et seq.*)**
**(Against Dr. Reddy's)**

8332.   Idaho Class Representative Billy Naab incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8333.   This cause of action is brought on behalf of the Idaho-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8334.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Idaho Code Ann. §48-602(1).

8335.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Idaho Code Ann. §48-602(6).

8336.   Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Idaho Code Ann. §48-602(2).

8337.   The Idaho Consumer Protection Act ("Idaho CPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Idaho Code Ann. §48-603.

8338.   The Idaho CPA makes unlawful specific acts, including:

(a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Idaho Code Ann. §48-603(5));

(b)    "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Idaho Code Ann. §48-603(7));

(c)    "[a]dvertising goods or services with intent not to sell them as advertised" (Idaho Code Ann. §48-603(9)); and

- 1813 -

(d)     "[e]ngaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer" (Idaho Code Ann. §48-603(17)).

8339.   Idaho law also prohibits "[a]ny unconscionable method, act or practice in the conduct of any trade or commerce."  Idaho Code Ann. §48-603C(1).

8340.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Idaho CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8341.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Idaho CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

8342.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

8343.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

8344.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8345.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8346.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Idaho CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8347.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8348.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8349.   As a result of Defendant's violations of the Idaho CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Idaho CPA.

<div align="center">

**COUNT 538**
**Unjust Enrichment**
**(Idaho Law)**
**(Against Dr. Reddy's)**

</div>

8350.   Idaho Class Representative Billy Naab incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8351.   This cause of action is brought on behalf of the Idaho-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8352.   Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8353.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8354.   Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8355.   It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8356.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8357.   Plaintiff and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

### 11.    Causes of Action on Behalf of the Illinois-Dr. Reddy's Classes

<div align="center">

**COUNT 539**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**(815 Ill. Comp. Stat. Ann. 505/1,** *et seq.***)**
**(Against Dr. Reddy's)**

</div>

8358.   Illinois Class Representatives Vickie Anderson and Heather Re incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8359.   This cause of action is brought on behalf of the Illinois-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8360.   Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(c).

8361.   Plaintiffs and the Class members are "consumer[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(e).

8362.   The Ranitidine-Containing Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(b).

8363.   Defendant was and is engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(f).

8364.   The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 Ill. Comp. Stat. Ann. 510/2], approved August 5, 1965, in the conduct of any trade or commerce."  815 Ill. Comp. Stat. Ann. 505/2.

8365.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time

period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8366.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFDBPA.

8367.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8368.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8369.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8370.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8371.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Illinois CFDBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8372.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8373.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8374.   As a result of Defendant's violations of the Illinois CFDBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFDBPA.

**COUNT 540**
**Unjust Enrichment**
**(Illinois Law)**
**(Against Dr. Reddy's)**

8375.   Illinois Class Representatives Vickie Anderson and Heather Re incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

- 1820 -

8376.   This cause of action is brought on behalf of the Illinois-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8377.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8378.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8379.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8380.   It violates the principles of justice, equity, and good conscience for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8381.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8382.   Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

### 12.    Causes of Action on Behalf of the Indiana-Dr. Reddy's Classes

<div align="center">

**COUNT 541**
**Unjust Enrichment**
**(Indiana Law)**
**(Against Dr. Reddy's)**

</div>

8383.   Indiana Class Representatives Teresa Dowler, Timberly Goble, Alyson Humphrey, Rebecca Sizemore, and Tracy Wells incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8384.   This cause of action is brought on behalf of the Indiana-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8385.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8386.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8387.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8388.   It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8389.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8390.   Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

<div align="center">

**COUNT 542**
**Breach of Implied Warranty**
**(Ind. Code. Ann. §26-1-2-314)**
**(Against Dr. Reddy's)**

</div>

8391.   Indiana Class Representatives Teresa Dowler, Timberly Goble, Alyson Humphrey, Rebecca Sizemore, and Tracy Wells incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8392.   This cause of action is brought on behalf of the Indiana-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8393.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Indiana Class Representatives and members of the Indiana Class and was in the business of selling such products.

8394.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8395.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8396.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

8397.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8398.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8399.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

8400.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

8401.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

8402.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

13.     **Causes of Action on Behalf of the Iowa-Dr. Reddy's Classes**

### COUNT 543
### Violation of the Iowa Private Right of Action for Consumer Frauds Act
### (Iowa Code Ann. §714H.1, *et seq.*)
### (Against Dr. Reddy's)

8403.   Iowa Class Representatives Charles Longfield and Tracy Losee incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8404.   This cause of action is brought on behalf of the Iowa-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8405.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Iowa Code Ann. §714H.2(7).

8406.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Iowa Code Ann. §714H.2(3).

8407.   The Iowa Private Right of Action for Consumer Frauds Act ("Iowa PRACFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise."  Iowa Code Ann. §714H.3(1).

8408.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Iowa PRACFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-

Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Defendant did so with willful and wanton disregard for the rights and safety of others.

8409. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Iowa PRACFA.

8410. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8411. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8412. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8413. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8414.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Iowa PRACFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8415.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out- of-pocket loss.

8416.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

8417.   As a result of Defendants' violations of the Iowa PRACFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Iowa PRACFA.

8418.   Additionally, because Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, were undertaken in willful and wanton disregard for the rights and safety of others, pursuant to Iowa Code §714H.5(4), Plaintiffs and the Class members seek an additonal award of treble damages.

**COUNT 544**
**Unjust Enrichment**
**(Iowa Law)**
**(Against Dr. Reddy's)**

8419.  Iowa Class Representatives Charles Longfield and Tracy Losee incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8420.  This cause of action is brought on behalf of the Iowa-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8421.  Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8422.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8423.  Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8424.   It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8425.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8426.   Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

<div align="center">

**COUNT 545**
**Breach of Implied Warranty**
**(Iowa Code Ann. §554.2314)**
**(Against Dr. Reddy's)**

</div>

8427.   Iowa Class Representatives Charles Longfield and Tracy Losee incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8428.   This cause of action is brought on behalf of the Iowa-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8429.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Iowa Class Representatives and members of the Iowa Class and was in the business of selling such products.

8430.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8431.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8432.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

8433.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8434.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8435.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

8436.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

8437.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

8438.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 14.     Causes of Action on Behalf of the Kentucky-Dr. Reddy's Classes

### COUNT 546
### Violation of the Kentucky Consumer Protection Act
### (Ky. Rev. Stat. Ann. §367.110, *et seq.*)
### (Against Dr. Reddy's)

8439.   Kentucky Class Representatives Timberly Goble and Janet Asbury incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8440.   This cause of action is brought on behalf of the Kentucky-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8441.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ky. Rev. Stat. Ann. §367.110(1).

8442.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Ky. Rev. Stat. Ann. §367.110(2).

8443.   The Kentucky Consumer Protection Act ("Kentucky CPA") prohibits "[u]nfair, [unconscionable], false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. Ann. §367.170(1)-(2).

8444.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8445.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Kentucky CPA.

8446.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8447.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8448.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8449.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8450.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Kentucky CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8451.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8452.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8453.   As a result of Defendant's violations of the Kentucky CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Kentucky CPA.

**COUNT 547**
**Unjust Enrichment**
**(Kentucky Law)**
**(Against Dr. Reddy's)**

8454.   Kentucky Class Representatives Timberly Goble and Janet Asbury incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8455.   This cause of action is brought on behalf of the Kentucky-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8456.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8457.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8458.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8459.   It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8460.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8461.   Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 548**
**Breach of Implied Warranty**
**(Ky. Rev. Stat. Ann. §355.2-314)**
**(Against Dr. Reddy's)**

</div>

8462.   Kentucky Class Representatives Timberly Goble and Janet Asbury incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8463.   This cause of action is brought on behalf of the Kentucky-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8464.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Kentucky Class Representatives and members of the Kentucky Class and was in the business of selling such products.

8465. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8466. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8467. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

8468. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8469. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8470. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

8471.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

8472.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

8473.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 15.    Causes of Action on Behalf of the Louisiana-Dr. Reddy's Classes

### COUNT 549
### Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law
### (La. Stat. Ann. §51:1401, *et seq.*)
### (Against Dr. Reddy's)

8474.   Louisiana Class Representatives Randy Jones and Jamie Mckay incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8475.   This cause of action is brought on behalf of the Louisiana-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8476.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of La. Stat. Ann. §51:1402(8).

8477.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of La. Stat. Ann. §51:1402(1).

8478.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of La. Stat. Ann. §51:1402(10).

8479.   The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  La. Stat. Ann. §51:1405(A).

8480.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8481.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Louisiana CPL.

8482.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8483.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8484.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8485.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8486.  Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

8487.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Louisiana CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8488.  Specifically, Plaintiffs and the Class were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8489.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8490.   As a result of Defendant's violations of the Louisiana CPL, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Louisiana CPL.

### COUNT 550
### Unjust Enrichment
### (Louisiana Law)
### (Against Dr. Reddy's)

8491.   Louisiana Class Representatives Randy Jones and Jamie Mckay incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8492.   This cause of action is brought on behalf of the Louisiana-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8493.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8494.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8495.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

8496.   Defendants' enrichment – the monies obtained from Plaintiffs for the Ranitidine Containing Products – was the result of Plaintiffs' impoverishment – the receipt by Plaintiffs of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

8497.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8498.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8499.   Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 551**
**Breach of Implied Warranty**
**(La. Civ. Code Ann. art. §2520)**
**(Against Dr. Reddy's)**

8500.   Louisiana Class Representatives Randy Jones and Jamie Mckay incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8501.   This cause of action is brought on behalf of the Louisiana-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8502.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Louisiana Class Representatives and members of the Louisiana Class and was in the business of selling such products.

8503.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8504.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8505.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

8506.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8507.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8508.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

8509.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

8510.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

8511.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

16.     **Causes of Action on Behalf of the Maryland-Dr. Reddy's Classes**

### COUNT 552
### Violation of the Maryland Consumer Protection Act
### (Md. Code Ann., Com. Law §13-101, *et seq.*)
### (Against Dr. Reddy's)

8512.   Maryland Class Representatives Nicholas Hazlett, Alberta Griffin, and Darlene Whittington-Coates incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8513.   This cause of action is brought on behalf of the Maryland Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8514.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Md. Code Ann., Com. Law §13-101(h).

8515.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Md. Code Ann., Com. Law §13-101(c)(1).

8516.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Md. Code Ann., Com. Law §13-101(f).

8517.   The Maryland Consumer Protection Act ("Maryland CPA") prohibits "[u]nfair, abusive, or deceptive trade practices."  Md. Code Ann., Com. Law §13-301.

8518.   The Maryland CPA makes unlawful specific acts, including:

(a)     "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" (Md. Code Ann., Com. Law §13-301(1));

(b)     "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have" (Md. Code Ann., Com. Law §13-301(2)(i));

(c)     "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not" (Md. Code Ann., Com. Law §13-301(2)(iv));

(d)     "[f]ailure to state a material fact if the failure deceives or tends to deceive" (Md. Code Ann., Com. Law §13-301(3));

(e)     "[a]dvertis[ing] or offer[ing] of consumer goods, consumer realty, or consumer services . . . [w]ithout intent to sell, lease, or rent them as advertised or offered" (Md. Code Ann., Com. Law §13-301(5)(i)); and

(f)     "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with . . . [t]he promotion or sale of any consumer goods" (Md. Code Ann., Com. Law §13-301(9)(i)).

8519.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8520.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Maryland CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

      (d)    failing to disclose that the Ranitidine-Containing Products are defective and inherently dangerous in the course of the sale of the Ranitidine-Containing Products; and

      (e)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

8521.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8522.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8523.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8524.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8525.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

8526.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Maryland CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8527.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8528.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8529.   As a result of Defendant's violations of the Maryland CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

**COUNT 553**
**Unjust Enrichment**
**(Maryland Law)**
**(Against Dr. Reddy's)**

8530.   Maryland Class Representatives Nicholas Hazlett, Alberta Griffin, and Darlene Whittington-Coates incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8531.   This cause of action is brought on behalf of the Maryland-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8532.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8533.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8534.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8535.   It would be unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8536.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the

value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8537. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 554**
**Breach of Implied Warranty**
**(Md. Code Ann. §2-314)**
**(Against Dr. Reddy's)**

8538. Maryland Class Representatives Nicholas Hazlett, Alberta Griffin, and Darlene Whittington-Coates incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8539. This cause of action is brought on behalf of the Maryland-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8540. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Maryland Class Representatives and members of the Maryland Class and was in the business of selling such products.

8541. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8542. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8543.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

8544.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8545.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8546.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

8547.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

8548.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

8549.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 17.   Causes of Action on Behalf of the Massachusetts-Dr. Reddy's Classes

### COUNT 555
### Violation of the Deceptive Acts or Practices Prohibited by Massachusetts Law
### (Mass. Gen. Laws Ann. ch. 93a, §1, *et seq.*)
### (Against Dr. Reddy's)

8550.   Massachusetts Class Representatives Jose Amado, Rafael Bermudez, Ana Guzman, and Michelle Smith incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8551.   This cause of action is brought on behalf of the Massachusetts-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8552.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(a).

8553.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(b).

8554.   The Massachusetts consumer protection law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ann. ch. 93A, §2(a).

8555.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-

Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8556.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Massachusetts Act.

8557.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8558.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8559.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8560.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8561.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Massachusetts Act because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8562.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8563.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8564.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Mass. Gen. Laws Ann. ch. 93A, §9(3) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

8565.   As a result of Defendant's violations of the Massachusetts Act, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Massachusetts Act.

**COUNT 556**
**Unjust Enrichment**
**(Massachusetts Law)**
**(Against Dr. Reddy's)**

8566.    Massachusetts Class Representatives Jose Amado, Rafael Bermudez, Ana Guzman, and Michelle Smith incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8567.    This cause of action is brought on behalf of the Massachusetts-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8568.    Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8569.    In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8570.    Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

8571.   Defendant's enrichment – the monies obtained from Plaintiffs' and the Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and the Class members' impoverishment – i.e., Plaintiffs' and the Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

8572.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8573.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8574.   Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 557**
**Breach of Implied Warranty**
**(Mass. Gen. Laws Ann. ch. 106 §2-314)**
**(Against Dr. Reddy's)**

8575.   Massachusetts Class Representatives Jose Amado, Rafael Bermudez, Ana Guzman, and Michelle Smith incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8576.   This cause of action is brought on behalf of the Massachusetts-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8577.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Massachusetts Class Representatives and members of the Massachusetts Class and was in the business of selling such products.

- 1856 -

8578. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8579. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8580. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

8581. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8582. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8583. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

8584.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

8585.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

8586.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 18.    Causes of Action on Behalf of the Michigan-Dr. Reddy's Classes

### COUNT 558
### Violation of the Michigan Consumer Protection Act
### (Mich. Comp. Laws Ann. §445.901, *et seq.*)
### (Against Dr. Reddy's)

8587.   Michigan Class Representatives Myra Allen, Jody Beal, Benny Cope, Arthur Gamble, Kenneth Hix, Jerry Hunt, Judy Wilmot, and Lakisha Wilson incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8588.   This cause of action is brought on behalf of the Michigan-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8589.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(d).

8590.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(g).

8591.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws Ann. §445.903(1).

8592.   The Michigan CPA makes unlawful specific acts, including:

(a)   "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Mich. Comp. Laws Ann. §445.903(1)(c));

(b)   "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Mich. Comp. Laws Ann. §445.903(1)(e)); and

(c)   "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented" (Mich. Comp. Laws Ann. §445.903(1)(g)).

8593.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8594.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Michigan CPA, including:

- 1859 -

(a)  representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)  representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)  advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)  engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

8595.  Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8596.  Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8597.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8598.  The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8599.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the Michigan CPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8600.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8601.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8602.  As a result of Defendant's violations of the Michigan CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Michigan CPA.

### COUNT 559
### Unjust Enrichment
### (Michigan Law)
### (Against Dr. Reddy's)

8603.  Michigan Class Representatives Myra Allen, Jody Beal, Benny Cope, Arthur Gamble, Kenneth Hix, Jerry Hunt, Judy Wilmot, and Lakisha Wilson incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8604.  This cause of action is brought on behalf of the Michigan-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8605.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8606.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8607.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8608.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8609.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8610.   There is no express contract governing this dispute.

8611.   Plaintiffs and the Class members do not have an adequate remedy at law.

19.     **Causes of Action on Behalf of the Minnesota-Dr. Reddy's Classes**

**COUNT 560**
**Violation of the Minnesota Prevention of Consumer Fraud Act**
**(Minn. Stat. Ann. §325F.68, *et seq.*)**
**(Against Dr. Reddy's)**

8612.   Minnesota Class Representatives Sandra Erickson-Brown and Donald Northrup incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8613.   This cause of action is brought on behalf of the Minnesota-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8614.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

8615.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

8616.   The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged."  Minn. Stat. Ann. §325F.69(1).  Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

8617.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8618.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

8619.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8620.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8621.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8622.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8623.  Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

8624.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8625.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8626.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8627.  As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

## COUNT 561
## Unjust Enrichment
## (Minnesota Law)
## (Against Dr. Reddy's)

8628.   Minnesota Class Representatives Sandra Erickson-Brown and Donald Northrup incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8629.   This cause of action is brought on behalf of the Minnesota-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8630.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8631.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8632.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8633.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8634.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8635.   Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 562**
**Breach of Implied Warranty**
**(Minn. Stat. Ann. §336.2-314)**
**(Against Dr. Reddy's)**

</div>

8636.   Minnesota Class Representatives Sandra Erickson-Brown and Donald Northrup incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8637.   This cause of action is brought on behalf of the Minnesota-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8638.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

8639.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8640.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8641.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

8642.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8643.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8644.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

8645.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

8646.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

8647.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 20.   Causes of Action on Behalf of the Mississippi-Dr. Reddy's Classes

### COUNT 563
### Unjust Enrichment
### (Mississippi Law)
### (Against Dr. Reddy's)

8648.   Mississippi Class Representatives Martha Summers, Beverly Crosby, Dorothy King, Lora Mauffray, Korcis McMillian, Michelle Tinker, and David Weatherly incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8649.   This cause of action is brought on behalf of the Mississippi-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8650.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8651.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

8652.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8653.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8654.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8655.   There is no express contract governing this dispute.

8656.   Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 564
## Breach of Implied Warranty
## (Miss. Code Ann. §75-2-314)
## (Against Dr. Reddy's)

8657.   Mississippi Class Representatives Martha Summers, Beverly Crosby, Dorothy King, Lora Mauffray, Korcis McMillian, Michelle Tinker, and David Weatherly incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8658.   This cause of action is brought on behalf of the Mississippi-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8659.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Mississippi Class Representatives and members of the Mississippi Class and was in the business of selling such products.

8660.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8661.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8662.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

8663.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8664.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8665.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

8666.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

8667.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

8668.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law

### 21.  Causes of Action on Behalf of the Missouri-Dr. Reddy's Classes

### COUNT 565
### Violation of the Missouri Merchandising Practices Act
### (Mo. Rev. Stat. §407.010, *et seq.*)
### (Against Dr. Reddy's)

8669.   Missouri Class Representatives Martha Summers, Timberly Goble, Elaine Aaron, Antrenise Campbell, Lisa Deckard, Cynthia Gibbs, and Brenda Newcomb incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8670.   This cause of action is brought on behalf of the Missouri-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8671.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mo. Ann. Stat. §407.010(5).

8672.   Defendant was and is engaged in "[t]rade or commerce" within the meaning of Mo. Ann. Stat. §407.010(7).

8673.   The Missouri Merchandising Practices Act ("Missouri MPA") prohibits "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce."  Mo. Ann. Stat. §407.020(1).

8674.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting,

omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8675.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Missouri MPA.

8676.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8677.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8678.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8679.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8680.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Missouri MPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8681.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8682.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8683.   As a result of Defendant's violations of the Missouri MPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Missouri MPA.

**COUNT 566**
**Unjust Enrichment**
**(Missouri Law)**
**(Against Dr. Reddy's)**

8684.   Missouri Class Representatives Martha Summers, Timberly Goble, Elaine Aaron, Antrenise Campbell, Lisa Deckard, Cynthia Gibbs, and Brenda Newcomb incorporate the

preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8685.   This cause of action is brought on behalf of the Missouri-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8686.   This cause of action is brought on behalf of the Missouri Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8687.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8688.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8689.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8690.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8691.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8692.   There is no express contract governing this dispute.

8693.   Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 567**
**Breach of Implied Warranty**
**(Mo. Rev. Stat. §400.2-314)**
**(Against Dr. Reddy's)**

</div>

8694.   Missouri Class Representatives Martha Summers, Timberly Goble, Elaine Aaron, Antrenise Campbell, Lisa Deckard, Cynthia Gibbs, and Brenda Newcomb incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8695.   This cause of action is brought on behalf of the Missouri-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8696.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Missouri Class Representatives and members of the Missouri Class and was in the business of selling such products.

8697.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8698.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8699.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

8700.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8701.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8702.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

8703.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

8704.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

8705.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**22.    Causes of Action on Behalf of the Nevada-Dr. Reddy's Classes**

**COUNT 568**
**Violation of the Nevada Deceptive Trade Practices Act**
**(Nev. Rev. Stat. Ann. §598.0903, *et seq.*)**
**(Against Dr. Reddy's)**

8706.   Nevada Class Representative Monica Costello incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8707.   This cause of action is brought on behalf of the Nevada-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8708.   The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), prohibits the use of "'deceptive trade practices' . . . in the course of . . . business or occupation."  Nev. Rev. Stat. Ann. §598.0915.

8709.   The Nevada DTPA makes unlawful specific acts, including:

(a)   "[k]nowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith" (Nev. Rev. Stat. Ann. §598.0915(5));

(b)   "[r]epresent[ing] that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model" (Nev. Rev. Stat. Ann. §598.0915(7));

(c)   "[a]dvertis[ing] goods or services with intent not to sell or lease them as advertised" (Nev. Rev. Stat. Ann. §598.0915(9));

(d)   "[k]nowingly mak[ing] any other false representation in a transaction" (Nev. Rev. Stat. Ann. §598.0915(15)); and

(e)   "[f]ail[ing] to disclose a material fact in connection with the sale or lease of goods or services" (Nev. Rev. Stat. Ann. §598.0923(2)).

8710.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8711.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Nevada DTPA, including:

(a)     representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)     failing to disclose the NDMA danger in connection with the sale of the Ranitidine-Containing Products; and

(e)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

8712.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

8713.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

8714.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8715.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8716.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Nevada DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8717.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8718.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8719.   As a result of Defendant's violations of the Nevada DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Nevada DTPA.

**COUNT 569**
**Unjust Enrichment**
**(Nevada Law)**
**(Against Dr. Reddy's)**

8720.   Nevada Class Representative Monica Costello incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8721.   This cause of action is brought on behalf of the Nevada-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8722.   Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8723.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8724.   Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8725.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8726.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8727.   There is no express contract governing this dispute.

8728.   Plaintiff and the Class members do not have an adequate remedy at law.

### 23.   Causes of Action on Behalf of the New Hampshire-Dr. Reddy's Classes

### COUNT 570
### Violation of the New Hampshire Consumer Protection Act
### (N.H. Rev. Stat. Ann. §358-A:1, *et seq.*)
### (Against Dr. Reddy's)

8729.   New Hampshire Class Representatives Rafael Bermudez and David Rice incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8730.   This cause of action is brought on behalf of the New Hampshire-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8731.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of N.H. Rev. Stat. Ann. §358-A:1(I).

8732.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of N.H. Rev. Stat. Ann. §358-A:1(II).

8733.   The New Hampshire Consumer Protection Act ("New Hampshire CPA") prohibits "any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce."  N.H. Rev. Stat. Ann. §358-A:2.

8734.   The New Hampshire CPA makes unlawful specific acts, including:

(a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (N.H. Rev. Stat. Ann. §358-A:2(V));

(b)    "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." (N.H. Rev. Stat. Ann. §358-A:2(VII)); and

(c)    "[a]dvertising goods or services with intent not to sell them as advertised." (N.H. Rev. Stat. Ann. §358-A:2(IX)).

8735.  In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Hampshire CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8736.  Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Hampshire CPA, including:

(a)    representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

8737.  Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8738.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8739.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8740.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8741.   Plaintiffs and the Class members were aggrieved by Defendant's violations of New Hampshire CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8742.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8743.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8744.   As a result of Defendant's violations of the New Hampshire CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Hampshire CPA.

<div align="center">

**COUNT 571**
**Unjust Enrichment**
**(New Hampshire Law)**
**(Against Dr. Reddy's)**

</div>

8745.   New Hampshire Class Representatives Rafael Bermudez and David Rice incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8746.   This cause of action is brought on behalf of the New Hampshire-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8747.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8748.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8749.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8750.   It is unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8751.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8752.   There is no valid, express contract governing this dispute.

8753.   Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 572**
**Breach of Implied Warranty**
**(N.H. Rev. Stat. Ann. §382-A:2-314)**
**(Against Dr. Reddy's)**

8754. New Hampshire Class Representatives Rafael Bermudez and David Rice incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8755.   This cause of action is brought on behalf of the New Hampshire-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8756.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Hampshire Class Representatives and members of the New Hampshire Class and was in the business of selling such products.

8757.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8758.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8759.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

8760.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8761.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8762.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

8763.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

8764.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

8765.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

24. **Causes of Action on Behalf of the New Jersey-Dr. Reddy's Classes**

### COUNT 573
### Violation of the New Jersey Consumer Fraud Act
### (N.J. Stat. Ann. §56:8-1, *et seq.*)
### (Against Dr. Reddy's)

8766.   New Jersey Class Representatives James Adamo, Sayed Eldomiaty, Mary McMillian   , Mary Moronski, and Lynn White incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8767.   This cause of action is brought on behalf of the New Jersey-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8768.   Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.J. Stat. Ann. §56:8-1(d).

8769.   The Ranitidine-Containing Products are "merchandise" within the meaning of N.J. Stat. Ann. §56:8-1(c).

8770.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Jersey Consumer Fraud Act ("New Jersey CFA") by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  N.J. Stat. Ann. §56:8-1, *et seq.*

8771.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Jersey CFA.

8772.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8773.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8774.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8775.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8776.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Jersey CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8777.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8778.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8779.  As a result of Defendant's violations of the New Jersey CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Jersey CFA.

### COUNT 574
### Unjust Enrichment
### (New Jersey Law)
### (Against Dr. Reddy's)

8780.  New Jersey Class Representatives James Adamo, Sayed Eldomiaty, Mary McMillian    , Mary Moronski, and Lynn White incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8781.  This cause of action is brought on behalf of the New Jersey-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8782.  Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8783.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8784.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8785.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8786.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8787.  Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 575**
**Breach of Implied Warranty**
**(N.J. Stat. Ann. §12A:2-314)**
**(Against Dr. Reddy's)**

8788.   New Jersey Class Representatives James Adamo, Sayed Eldomiaty, Mary McMillian    , Mary Moronski, and Lynn White incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8789.   This cause of action is brought on behalf of the New Jersey-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8790.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Jersey Class Representatives and members of the New Jersey Class and was in the business of selling such products.

8791.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8792.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8793.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

8794.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8795.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8796.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

8797.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

8798.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

8799.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 25. Causes of Action on Behalf of the New Mexico-Dr. Reddy's Classes

### COUNT 576
### Violation of the New Mexico Unfair Trade Practices Act
### (N.M. Stat. Ann. §57-12-1, *et seq.*)
### (Against Dr. Reddy's)

8800. New Mexico Class Representatives Phyllis Gallegos, Josefina Griego, Carrie Martinez, Inez Mazon, Ernesto Sanchez, and George Tapia incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8801. This cause of action is brought on behalf of the New Mexico-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8802. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

8803. Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

8804. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person." N.M. Stat. Ann. §57-12-2(D). The New Mexico UTPA also makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity

of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received

by a person and the price paid." N.M. Stat. Ann. §57-12-2(E).

8805. The New Mexico UTPA makes unlawful specific acts, including:

(a) "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

(b) "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

(c) "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

8806. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8807. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Mexico UTPA, including:

(a) representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and

(d) acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.

8808.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8809.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8810.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8811.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8812.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8813.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8814.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8815.   As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

<div align="center">

**COUNT 577**
**Unjust Enrichment**
**(New Mexico Law)**
**(Against Dr. Reddy's)**

</div>

8816.   New Mexico Class Representatives Phyllis Gallegos, Josefina Griego, Carrie Martinez, Inez Mazon, Ernesto Sanchez, and George Tapia incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8817.   This cause of action is brought on behalf of the New Mexico-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8818.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8819.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8820. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8821. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8822. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8823. There is no express contract governing this dispute.

8824. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 578**
**Breach of Implied Warranty**
**(N.M. Stat. Ann. §55-2-314)**
**(Against Dr. Reddy's)**

</div>

8825. New Mexico Class Representatives Phyllis Gallegos, Josefina Griego, Carrie Martinez, Inez Mazon, Ernesto Sanchez, and George Tapia incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8826.   This cause of action is brought on behalf of the New Mexico-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8827.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

8828.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8829.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8830.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

8831.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8832.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8833.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

8834.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

8835.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

8836.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

26.    **Causes of Action on Behalf of the New York-Dr. Reddy's Classes**

**COUNT 579**
**Violation of New York Deceptive Acts and Practices Act**
**(N.Y. Gen. Bus. Law §349)**
**(Against Dr. Reddy's)**

8837.   New York Class Representatives Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen, Joseph Mcpheter, Steven Murdock, Glorimar Rodriguez, Phyllis Spuler, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8838.   This cause of action is brought on behalf of the New York-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8839.   Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

8840.   The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §349(a).

8841.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8842.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

8843.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8844.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8845.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8846.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8847.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8848.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8849.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8850.   As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

**COUNT 580**
**Violation of the New York False Advertising Act**
**(N.Y. Gen. Bus. Law §350)**
**(Against Dr. Reddy's)**

8851.   New York Class Representatives Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen, Joseph Mcpheter, Steven Murdock, Glorimar Rodriguez, Phyllis Spuler, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8852.   This cause of action is brought on behalf of the New York-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8853.   Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

8854.   The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §350.  False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

8855.   Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

8856.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8857.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

8858.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8859.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8860.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8861.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8862.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8863.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8864.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8865.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

8866.   As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the New York Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

<div align="center">

**COUNT 581**
**Unjust Enrichment**
**(New York Law)**
**(Against Dr. Reddy's)**

</div>

8867.   New York Class Representatives Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen, Joseph Mcpheter, Steven Murdock, Glorimar Rodriguez, Phyllis Spuler, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8868.   This cause of action is brought on behalf of the New York-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8869.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8870.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8871.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8872.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8873.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8874.   Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 582**
**Breach of Implied Warranty**
**(N.Y. U.C.C. Law §2-314)**
**(Against Dr. Reddy's)**

8875.   New York Class Representatives Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen, Joseph Mcpheter, Steven Murdock, Glorimar Rodriguez, Phyllis Spuler, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8876.   This cause of action is brought on behalf of the New York-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8877.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representatives and members of the New York Class and was in the business of selling such products.

8878.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8879.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8880.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

8881.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8882.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8883.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

8884.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

8885.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

8886.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 27.   Causes of Action on Behalf of the North Carolina-Dr. Reddy's Classes

### COUNT 583
### Violation of the North Carolina Unfair and Deceptive Trade Practices Act
### (N.C. Gen. Stat. Ann. §75-1.1, *et seq.*)
### (Against Dr. Reddy's)

8887.   North Carolina Class Representatives Acia D'amore, Patricia Frazier, Teresa Lee, Sharon Parks, Dennis Robbins, and Julie Turner incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8888.   This cause of action is brought on behalf of the North Carolina-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8889.   Defendant was and is engaged in "commerce" within the meaning of N.C. Gen. Stat. Ann. §75-1.1(b).

8890.   The North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," N.C. Gen. Stat. Ann. §75-1.1(a), and provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the law.  N.C. Gen. Stat. Ann. §75-16.

8891.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8892.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the North Carolina UDTPA.

8893.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8894.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8895.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8896.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8897.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the North Carolina UDTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8898.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8899.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8900.  As a result of Defendant's violations of the North Carolina UDTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the North Carolina UDTPA.

## COUNT 584
### Unjust Enrichment
### (North Carolina Law)
### (Against Dr. Reddy's)

8901.   North Carolina Class Representatives Acia D'amore, Patricia Frazier, Teresa Lee, Sharon Parks, Dennis Robbins, and Julie Turner incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8902.   This cause of action is brought on behalf of the North Carolina-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8903.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8904.   The benefit provided by Plaintiffs and the Class members was not conferred gratuitously, and in exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8905.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8906.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8907.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8908.   Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 585**
**Breach of Implied Warranty**
**(N.C. Gen. Stat. Ann. §25-2-314)**
**(Against Dr. Reddy's)**

8909.   North Carolina Class Representatives Acia D'amore, Patricia Frazier, Teresa Lee, Sharon Parks, Dennis Robbins, and Julie Turner incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8910.   This cause of action is brought on behalf of the North Carolina-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8911.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to North Carolina Class Representatives and members of the North Carolina Class and was in the business of selling such products.

8912.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8913.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8914.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

8915.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8916.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8917.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

8918.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

8919.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

8920.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## 28.    Causes of Action on Behalf of the Ohio-Dr. Reddy's Classes

### COUNT 586
### Unjust Enrichment
### (Ohio Law)
### (Against Dr. Reddy's)

8921.   Ohio Class Representatives Michael Galloway and Patricia Hess incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8922.   This cause of action is brought on behalf of the Ohio-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8923.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8924.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8925.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8926.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8927.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8928.   Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 587**
**Breach of Implied Warranty**
**(Ohio Rev. Code Ann. §1302.27)**
**(Against Dr. Reddy's)**

8929.   Ohio Class Representatives Michael Galloway and Patricia Hess incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8930.   This cause of action is brought on behalf of the Ohio-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8931.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Ohio Class Representatives and members of the Ohio Class and was in the business of selling such products.

8932.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8933.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8934.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

8935.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8936.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8937.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

8938.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

8939.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

8940.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 29.   Causes of Action on Behalf of the Oklahoma-Dr. Reddy's Class

### COUNT 588
### Violation of the Oklahoma Consumer Protection Act
### (Okla. Stat. tit. 15, §751, *et seq.*)
### (Against Dr. Reddy's)

8941.   Oklahoma Class Representatives Billy Naab and Demarco Grayson incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8942.   This cause of action is brought on behalf of the Oklahoma-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8943.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Okla. Stat. tit. 15, §752(1).

8944.   Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Okla. Stat. tit. 15, §752(2).

8945.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Okla. Stat. tit. 15, §752(7).

8946.   The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits numerous unlawful acts, including misleading representations, false advertisements, and false statements. Okla. Stat. tit. 15, §753.   The Oklahoma CPA defines "[d]eceptive trade practice" as "a misrepresentation, omission or other practice that has deceived or . . . mislead a person to the detriment of that person."  Okla. Stat. tit. 15, §752(13).  The Oklahoma CPA defines "[u]nfair trade practice" as "any practice which offends established public policy or if the practice is

immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Okla. Stat.

tit. 15, §752(14).

8947.   The Oklahoma CPA makes unlawful specific acts, including:

(a)   "[m]ak[ing] a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction" (Okla. Stat. tit. 15, §753(5));

(b)   "[r]epresent[ing], knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another" (Okla. Stat. tit. 15, §753(7));

(c)   "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised" (Okla. Stat. tit. 15, §753(8)); and

(d)   "[c]ommit[ing] an unfair or deceptive trade practice as defined in Section 752" (Okla. Stat. tit. 15, §753(20)).

8948.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8949.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Oklahoma CPA, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

8950.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8951.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

8952.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8953.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8954.   Plaintiffs and the Class members were aggrieved by Defendant's violations of Oklahoma CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8955.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8956.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8957.   As a result of Defendant's violations of the Oklahoma CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Oklahoma CPA.

**COUNT 589**
**Unjust Enrichment**
**(Oklahoma Law)**
**(Against Dr. Reddy's)**

8958.   Oklahoma Class Representatives Billy Naab and Demarco Grayson incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8959.   This cause of action is brought on behalf of the Oklahoma-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8960.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8961.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8962.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8963.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

8964.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

8965.   Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 590
## Breach of Implied Warranty
## (Okla. Stat. tit. 12A §2-314)
## (Against Dr. Reddy's)

8966.   Oklahoma Class Representatives Billy Naab and Demarco Grayson incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8967.   This cause of action is brought on behalf of the Oklahoma-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8968.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Oklahoma Class Representatives and members of the Oklahoma Class and was in the business of selling such products.

8969.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8970.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8971.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

8972.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8973.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

8974.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

8975.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

8976.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

8977.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 30.  Causes of Action on Behalf of the Oregon-Dr. Reddy's Class

### COUNT 591
### Violation of the Oregon Unlawful Trade Practices Act
### (Or. Rev. Stat. Ann. §646.605, *et seq.*)
### (Against Dr. Reddy's)

8978.  Oregon Class Representative Kristi Ledbetter incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8979.  This cause of action is brought on behalf of the Oregon-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8980.  Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Or. Rev. Stat. Ann. §646.605(4).

8981.  The Ranitidine-Containing Products are "goods" within the meaning of Or. Rev. Stat. Ann. §646.605(6).

8982.  Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Or. Rev. Stat. Ann. §646.605(8).

8983.  The Oregon Unlawful Trade Practices Act ("Oregon UTPA") prohibits "unlawful practice . . . in the course of the person's business."  Or. Rev. Stat. Ann. §646.608(1).

8984.  The Oregon UTPA makes unlawful specific acts, including:

> (a)  "[r]epresent[ing] that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have" (Or. Rev. Stat. Ann. §646.608(1)(e));

(b)     "[r]epresent[ing] that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if the real estate, goods or services are of another" (Or. Rev. Stat. Ann. §646.608(1)(g));

(c)     "[a]dvertis[ing] real estate, goods or services with intent not to provide the real estate, goods or services as advertised" (Or. Rev. Stat. Ann. §646.608(1)(i)); and

(d)     "[e]ngag[ing] in any other unfair or deceptive conduct in trade or commerce" (Or. Rev. Stat. Ann. §646.608(1)(u)).

8985.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oregon UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

8986.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Oregon UTPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)      representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

8987.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

8988.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

8989.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

8990.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

8991.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Oregon UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

8992.  Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

8993.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8994.   As a result of Defendant's violations of the Oregon UTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Oregon UTPA.

**COUNT 592**
**Unjust Enrichment**
**(Oregon Law)**
**(Against Dr. Reddy's)**

8995.   Oregon Class Representative Kristi Ledbetter incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

8996.   This cause of action is brought on behalf of the Oregon-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

8997.   Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

8998.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

8999.   Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9000.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9001.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9002.   There is no express contract governing this dispute.

9003.   Plaintiff and the Class members do not have an adequate remedy at law.

**COUNT 593**
**Breach of Implied Warranty**
**(Or. Rev. Stat. Ann. §72.3140)**
**(Against Dr. Reddy's)**

9004. Oregon Class Representative Kristi Ledbetter incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9005.   This cause of action is brought on behalf of the Oregon-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9006.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Oregon Class Representatives and members of the Oregon Class and was in the business of selling such products.

9007.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9008.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9009.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

9010.   Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9011.  Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9012.  Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

9013.  Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

9014.  Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

9015.  As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

31.   **Causes of Action on Behalf of the Pennsylvania-Dr. Reddy's Classes**

**COUNT 594**
**Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**(73 Pa. Cons. Stat. §201-1, *et seq.*)**
**(Against Dr. Reddy's)**

9016.   Pennsylvania Class Representatives Nicholas Hazlett, Felicia Ball, and Elmer Cook incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9017.   This cause of action is brought on behalf of the Pennsylvania-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9018.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of 73 Pa. C.S. §201-2(2).

9019.   Plaintiffs and the Class members purchased the Ranitidine-Containing Products "primarily for personal, family or household purposes" within the meaning of 73 Pa. C.S. §201-9.2(a).

9020.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of 73 Pa. C.S. §201-2(3).

9021.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  73 Pa. C.S. §201-3.

9022.   The Pennsylvania CPL makes unlawful specific acts, including:

(a)   "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (73 Pa. C.S. §201-2(4)(v));

- 1937 -

(b)    "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (73 Pa. C.S. §201-2(4)(vii));

(c)    "[a]dvertising goods or services with intent not to sell them as advertised" (73 Pa. C.S. §201-2(4)(ix)); and

(d)    "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" (73 Pa. C.S. §201-2(4)(xxi)).

9023.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9024.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Pennsylvania CPL, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)    engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

9025.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9026.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9027.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9028.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9029.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

9030.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Pennsylvania CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9031.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9032.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9033.   As a result of Defendant's violations of the Pennsylvania CPL, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Pennsylvania CPL.

<div align="center">

**COUNT 595**
**Unjust Enrichment**
**(Pennsylvania Law)**
**(Against Dr. Reddy's)**

</div>

9034.   Pennsylvania Class Representatives Nicholas Hazlett, Felicia Ball, and Elmer Cook incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9035.   This cause of action is brought on behalf of the Pennsylvania-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9036.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9037.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom

9038.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9039.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9040.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9041.   There is no express contract governing this dispute.

9042.   Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 596
### Breach of Implied Warranty
### (13 Pa. Cons. Stat. §2314)
### (Against Dr. Reddy's)

9043.   Pennsylvania Class Representatives Nicholas Hazlett, Felicia Ball, and Elmer Cook incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9044.   This cause of action is brought on behalf of the Pennsylvania-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9045.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Pennsylvania Class Representatives and members of the Pennsylvania Class and was in the business of selling such products.

9046.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9047.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9048.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

9049.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9050.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9051.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

9052.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

9053.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

9054.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**32.      Causes of Action on Behalf of the Puerto Rico-Dr. Reddy's Classes**

**COUNT 597**
**Unjust Enrichment**
**(Puerto Rico Law)**
**(Against Dr. Reddy's)**

9055.   Puerto Rico Class Representatives Sonia Diaz and Gloria Colon incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9056.   This cause of action is brought on behalf of the Puerto Rico-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9057.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9058.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9059.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and,

thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

9060.   Defendants' enrichment – the monies obtained from Plaintiffs' and the Class

members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and the Class

members' impoverishment – i.e., Plaintiffs' and the Class members' receipt of worthless

Ranitidine-Containing Products that were unsafe and unfit for human consumption.

9061.   It is unjustifiable for the Defendant to retain these benefits because they were

attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-

Containing Products from Plaintiffs and the Class members, who would not have purchased the

medications at all, but for the Defendant's misrepresentations and omissions.

9062.   Equity cannot in good conscience permit Defendant to retain the benefits derived

from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore,

restitution or disgorgement of the amount of their unjust enrichment is required.

9063.   Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 598
### Breach of Implied Warranty
### (P.R. Laws Ann. tit. 31, §3841)
### (Against Dr. Reddy's)

9064.   Puerto Rico Class Representatives Sonia Diaz and Gloria Colon incorporate the

preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though

fully set forth herein.

9065.   This cause of action is brought on behalf of the Puerto Rico-Dr. Reddy's Class (for

the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only,

"Defendant") with respect to prescription Ranitidine.

9066.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Puerto Rico Class Representatives and members of the Puerto Rico Class and was in the business of selling such products.

9067.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9068.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9069.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

9070.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9071.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9072.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

9073.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

9074.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

9075.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 33.    Causes of Action on Behalf of the South Carolina-Dr. Reddy's Classes

### COUNT 599
### Violation of the South Carolina Unfair Trade Practices Act
### (S.C. Code Ann. §39-5-10, *et seq.*)
### (Against Dr. Reddy's)

9076.   South Carolina Class Representatives Annie Johnson, Michael Futrell, Jeffery Gunwall, Sharon Mclellan, and Marianella Villanueva incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9077.   This cause of action is brought on behalf of the South Carolina-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9078.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of S.C. Code Ann. §39-5-10(a).

9079.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of S.C. Code Ann. §39-5-10(b).

9080.   The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  S.C. Code Ann. §39-5-20(a).

9081.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9082.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the South Carolina UTPA.

9083.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9084.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9085.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9086.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9087.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the South Carolina UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9088.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9089.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9090.  As a result of Defendant's violations of the South Carolina UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the South Carolina UTPA.

**COUNT 600**
**Unjust Enrichment**
**(South Carolina Law)**
**(Against Dr. Reddy's)**

9091.  South Carolina Class Representatives Michael Futrell, Jeffery Gunwall, Sharon Mclellan, Annie Johnson, and Marianella Villanueva incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9092.  This cause of action is brought on behalf of the South Carolina-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9093.  Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9094.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9095.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9096.   It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9097.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9098.   Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 601**
**Breach of Implied Warranty**
**(S.C. Code Ann. §36-2-314)**
**(Against Dr. Reddy's)**

</div>

9099.   South Carolina Class Representatives Annie Johnson, Michael Futrell, Jeffery Gunwall, Sharon Mclellan, and Marianella Villanueva incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9100. This cause of action is brought on behalf of the South Carolina-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9101. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to South Carolina Class Representatives and members of the South Carolina Class and was in the business of selling such products.

9102. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9103. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9104. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

9105. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9106.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9107.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

9108.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

9109.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

9110.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

34.     **Causes of Action on Behalf of the Tennessee-Dr. Reddy's Classes**

**COUNT 602**
**Violation of the Tennessee Consumer Protection Act of 1977**
**(Tenn. Code Ann. §47-18-101, *et seq.*)**
**(Against Dr. Reddy's)**

9111.   Tennessee Class Representatives Angela Taylor, Kenneth Hix, Eva Broughton, Rebecca Howard, Pam Turner, and Billie Walker incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9112.   This cause of action is brought on behalf of the Tennessee-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9113.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tenn. Code Ann. §47-18-103(14).

9114.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tenn. Code Ann. §47-18-103(3).

9115.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Tenn. Code Ann. §47-18-103(8).

9116.   Defendant was and is engaged in "[t]rade" or "commerce" or "consumer transaction[s]" within the meaning of Tenn. Code Ann. §47-18-103(20).

9117.   The Tennessee Consumer Protection Act of 1977 ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. §47-18-104(a).

9118.   The Tennessee CPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tenn. Code Ann. §47-18-104(b)(5));

(b)    "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (Tenn. Code Ann. §47-18-104(b)(7)); and

(c)    "[a]dvertising goods or services with intent not to sell them as advertised" (Tenn. Code Ann. §47-18-104(b)(9)).

9119.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9120.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Tennessee CPA, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

9121.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9122.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9123.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9124.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9125.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Tennessee CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9126.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9127.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9128.   As a result of Defendant's violations of the Tennessee CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Tennessee CPA.

<div align="center">

**COUNT 603**
**Unjust Enrichment**
**(Tennessee Law)**
**(Against Dr. Reddy's)**

</div>

9129.   Tennessee Class Representatives Angela Taylor, Kenneth Hix, Eva Broughton, Rebecca Howard, Pam Turner, and Billie Walker incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9130.   This cause of action is brought on behalf of the Tennessee-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9131.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9132.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9133.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9134.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9135.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9136.   There is no existing, enforceable contract governing this dispute.

9137.   Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 604**
**Breach of Implied Warranty**
**(Tenn. Code Ann. §47-2-314)**
**(Against Dr. Reddy's)**

</div>

9138.   Tennessee Class Representatives Angela Taylor, Kenneth Hix, Eva Broughton, Rebecca Howard, Pam Turner, and Billie Walker incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9139.   This cause of action is brought on behalf of the Tennessee-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9140.  At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Tennessee Class Representatives and members of the Tennessee Class and was in the business of selling such products.

9141.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9142.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9143.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

9144.  Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9145.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9146.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

9147.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

9148.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

9149.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 35.    Causes of Action on Behalf of the Texas-Dr. Reddy's Classes

### COUNT 605
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
### (Tex. Bus. & Com. Code Ann. §17.41, *et seq.*)
### (Against Dr. Reddy's)

9150.   Texas Class Representatives Timberly Goble, Marianella Villanueva, Marilyn Abraham, Maria Eames, Tina Howard, Christopher Johnson, Gina Martinez, Tonya Overstreet, Gregory Alan Wayland, and Sylvia Yoshida incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9151.   This cause of action is brought on behalf of the Texas-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9152.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

9153.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

9154.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

9155.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

9156.   The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

9157.   The Texas DTPA makes unlawful specific acts, including:

  (a)   "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

  (b)   "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

  (c)   "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

- 1961 -

9158.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9159.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

> (q)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (r)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and
>
> (s)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

9160.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9161.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9162.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9163. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9164. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

9165. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9166. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9167. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

9168.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

9169.   As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

**COUNT 606**
**Unjust Enrichment**
**(Texas Law)**
**(Against Dr. Reddy's)**

9170.   Texas Class Representatives Timberly Goble, Marianella Villanueva, Marilyn Abraham, Maria Eames, Tina Howard, Christopher Johnson, Gina Martinez, Tonya Overstreet, Gregory Alan Wayland, and Sylvia Yoshida incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9171.   This cause of action is brought on behalf of the Texas-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9172.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9173.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9174.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9175.   It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9176.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9177.   Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 607**
**Breach of Implied Warranty**
**(Tex. Bus. & Com. Code Ann. §2-314)**
**(Against Dr. Reddy's)**

9178.   Texas Class Representatives Timberly Goble, Marianella Villanueva, Marilyn Abraham, Maria Eames, Tina Howard, Christopher Johnson, Gina Martinez, Tonya Overstreet, Gregory Alan Wayland, and Sylvia Yoshida incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9179.   This cause of action is brought on behalf of the Texas-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9180.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

9181.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9182.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9183.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

9184.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9185.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9186.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

9187.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

9188.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

9189.  As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 36.      Causes of Action on Behalf of the Utah-Dr. Reddy's Classes

### COUNT 608
### Violation of the Utah Consumer Sales Practices Act
### (Utah. Code Ann. §13-11-1, *et seq.*)
### (Against Dr. Reddy's)

9190.  Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9191.  This cause of action is brought on behalf of the Utah-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9192.  Defendant is a "[s]upplier" within the meaning of Utah Code Ann. §13-11-3(6).

9193.  Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Utah Code Ann. §13-11-3(5).

9194.  Defendant was and is engaged in "consumer transactions" within the meaning of Utah Code Ann. §13-11-3(2)(a).

9195.  The Utah Consumer Sales Practices Act ("Utah CSPA") prohibits any "deceptive act or practice by a supplier in connection with a consumer transaction." Utah Code Ann. §13-11-4(1). "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. Utah Code Ann. §13-11-5(1).

9196.  The Utah CSPA makes unlawful specific acts, including:

(a)    "indicat[ing] that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" (Utah Code Ann. §13-11-4(2)(a)); and

(b)    "indicat[ing] that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not" (Utah Code Ann. §13-11-4(2)(b)).

9197.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah CSPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9198.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Utah CSPA, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have; and

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not.

9199.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

9200.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

9201.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9202.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9203.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Utah CSPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9204.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9205.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9206.   As a result of Defendant's violations of the Utah CSPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Utah CSPA.

### COUNT 609
### Violation of the Utah Truth in Advertising Law
### (Utah Code Ann. §13-11a-1, *et seq.*)
### (Against Dr. Reddy's)

9207.   Utah Class Representatives Teresa Waters incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9208.   This cause of action is brought on behalf of the Utah-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9209.   Defendant is a "[s]upplier" within the meaning of Utah Code Ann. §13-11a-2(17).

9210.   Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Utah Code Ann. §13-11a-2(7).

9211.   The Ranitidine-Containing Products are "goods" within the meaning of Utah Code Ann. §13-11a-2(4).

9212.   The Utah Truth in Advertising Law ("Utah TAL") prohibits any deceptive practice undertaken "in the course of a person's business."  Utah Code Ann. §13-11a-3(1).

9213.   The Utah TAL makes unlawful specific acts, including:

> (a)   "represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have" (Utah Code Ann. §13-11a-3(1)(e));

> (b)   "represent[ing] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Utah Code Ann. §13-11a-3(1)(g));

    (c)    "advertis[ing] goods or services with intent not to sell them as advertised" (Utah Code Ann. §13-11a-3(1)(i)); and

    (d)    "engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding" (Utah Code Ann. §13-11a-3(1)(t)).

9214. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah TAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9215. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Utah TAL, including:

    (a)    representing that Ranitidine-Containing Products were both safe and effective for the lifetime of the product, when in fact, they were not;

    (b)    representing that consumption of Ranitidine-Containing Products had characteristics, ingredients, uses, benefits, or qualities that they do not have;

    (c)    representing that Ranitidine-Containing Products are of a particular standard, quality, or grade when they are not;

    (d)    advertising Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (e)    engaging in any other conduct that creates a likelihood of confusion.

9216. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

9217.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

9218.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9219.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9220.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Utah TAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9221.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9222.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9223.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiff in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seeks all damages and relief to which Plaintiff and the Class members are entitled.

9224.   As a result of Defendant's violations of the Utah TAL, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Utah TAL.

### COUNT 610
### Unjust Enrichment
### (Utah Law)
### (Against Dr. Reddy's)

9225.   Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9226.   This cause of action is brought on behalf of the Utah-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9227.   Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9228.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9229.   Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9230.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9231.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9232.   Plaintiff and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

## COUNT 611
### Breach of Implied Warranty
### (Utah. Code Ann. §70A-2-314)
### (Against Dr. Reddy's)

9233.   Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9234.   This cause of action is brought on behalf of the Utah-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9235.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Utah Class Representatives and members of the Utah Class and was in the business of selling such products.

9236.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9237.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9238.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

9239.   Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9240.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9241.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

9242.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

9243.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

9244.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**37.     Causes of Action on Behalf of the Vermont-Dr. Reddy's Classes**

**COUNT 612**
**Violation of the Vermont Consumer Fraud Act**
**(Vt. Stat. Ann. tit. 9, §2451, *et seq.*)**
**(Against Dr. Reddy's)**

9245.   Vermont Class Representatives Renee Clark, Eric Ragis, and Lisa Ragis incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9246.   This cause of action is brought on behalf of the Vermont-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9247.   Defendant is a "[s]eller" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(c).

9248.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(a).

9249.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(b).

9250.   The Vermont consumer fraud act ("Vermont CFA") prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." Vt. Stat. Ann. tit. 9, §2453(a).

9251.   In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Vermont CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

- 1978 -

9252.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Vermont CFA.

9253.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9254.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9255.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9256.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9257.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Vermont CFA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9258.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9259.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9260.   As a result of Defendant's violations of the Vermont CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Vermont CFA.

## COUNT 613
### Unjust Enrichment
### (Vermont Law)
### (Against Dr. Reddy's)

9261.   Vermont Class Representatives Renee Clark, Eric Ragis, and Lisa Ragis incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9262.   This cause of action is brought on behalf of the Vermont-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9263.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9264.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9265.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9266.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9267.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9268.   There is no express contract governing this dispute.

9269.   Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 614**
**Breach of Implied Warranty**
**(Vt. Stat. Ann. tit. 9A§2-314)**
**(Against Dr. Reddy's)**

9270.   Vermont Class Representatives Renee Clark, Eric Ragis, and Lisa Ragis incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9271.   This cause of action is brought on behalf of the Vermont-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9272.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Vermont Class Representatives and members of the Vermont Class and was in the business of selling such products.

9273.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9274.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9275.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

9276.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9277.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9278.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

9279.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

9280.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

9281.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 38.    Causes of Action on Behalf of the Virginia-Dr. Reddy's Classes

### COUNT 615
### Violation of the Virginia Consumer Protection Act
### (Va. Code Ann. §59.1-196, *et seq.*)
### (Against Dr. Reddy's)

9282.   Virginia Class Representatives Karen Foster, Cheryl Banks, and Lynn Costley incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9283.   This cause of action is brought on behalf of the Virginia-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9284.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Va. Code Ann. §59.1-198.

9285.   Defendant was and is a "[s]upplier" within the meaning of Va. Code Ann. §59.1-198.

9286.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Va. Code Ann. §59.1-198.

9287.   Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Va. Code Ann. §59.1-198.

9288.   The Virginia Consumer Protection Act ("Virginia CPA") prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction."  Va. Code Ann. §59.1-200(A).

9289.   The Virginia CPA makes unlawful specific acts, including:

(a) "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" (Va. Code Ann. §59.1-200(A)(5));

(b) "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model" (Va. Code Ann. §59.1-200(A)(6));

(c) "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" (Va. Code Ann. §59.1-200(A)(8)); and

(d) "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" (Va. Code Ann. §59.1-200(A)(14)).

9290. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9291. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Virginia CPA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

9292.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9293.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9294.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9295.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9296.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

9297.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Virginia CPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9298.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9299.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9300.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

9301.   As a result of Defendant's violations of the Virginia CPA, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Virginia CPA.

# COUNT 616
## Unjust Enrichment
## (Virginia Law)
## (Against Dr. Reddy's)

9302.   Virginia Class Representatives Karen Foster, Cheryl Banks, and Lynn Costley incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9303.   This cause of action is brought on behalf of the Virginia-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9304.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9305.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9306.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9307.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9308.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9309.   There is no express contract governing this dispute.

9310.   Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 617**
**Breach of Implied Warranty**
**(Va. Code Ann. §8.2-314)**
**(Against Dr. Reddy's)**

9311.   Virginia Class Representatives Karen Foster, Cheryl Banks, and Lynn Costley incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9312.   This cause of action is brought on behalf of the Virginia-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9313.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Virginia Class Representatives and members of the Virginia Class and was in the business of selling such products.

9314.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9315.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9316.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

9317.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9318.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9319.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

9320.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

9321.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

9322.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 39.    Causes of Action on Behalf of the Washington-Dr. Reddy's Classes

### COUNT 618
### Violation of the Washington Consumer Protection Act
### (Wash. Rev. Code Ann. §19.86.010, *et seq.*)
### (Against Dr. Reddy's)

9323.   Washington Class Representatives Billy Naab, Steve Fischer, Dave Garber, and Bridget Peck incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9324.   This cause of action is brought on behalf of the Washington-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9325.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Wash. Rev. Code Ann. §19.86.010(1).

9326. The Ranitidine-Containing Products are "[a]ssets" within the meaning of Wash. Rev. Code Ann. §19.86.010(3).

9327. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Wash. Rev. Code Ann. §19.86.010(2).

9328. The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. §19.86.020.

9329. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9330. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington CPA.

9331. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9332. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9333.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9334.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9335.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Washington CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9336.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9337.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9338.   On June 22, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Wash. Rev. Code §19.86.095 to the Attorney General of the State of Washington.

9339.   As a result of Defendant's violations of the Washington CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Washington CPA.

**COUNT 619**
**Unjust Enrichment**
**(Washington Law)**
**(Against Dr. Reddy's)**

9340.   Washington Class Representatives Billy Naab, Steve Fischer, Dave Garber, and Bridget Peck incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9341.   This cause of action is brought on behalf of the Washington-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9342.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9343.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9344. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9345. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9346. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9347. There is no express contract governing this dispute.

9348. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 620**
**Breach of Implied Warranty**
**(Wash. Rev. Code §62A.2-314)**
**(Against Dr. Reddy's)**

</div>

9349. Washington Class Representatives Billy Naab, Steve Fischer, Dave Garber, and Bridget Peck incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9350. This cause of action is brought on behalf of the Washington-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9351. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Washington Class Representatives and members of the Washington Class and was in the business of selling such products.

9352. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9353. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9354. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

9355. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9356.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9357.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

9358.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

9359.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

9360.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

40.     **Causes of Action on Behalf of the West Virginia Class**

**COUNT 621**
**Unjust Enrichment**
**(West Virginia Law)**
**(Against Dr. Reddy's)**

9361.   West Virginia Class Representative Mynetta Hastings incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9362.   This cause of action is brought on behalf of the West Virginia-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9363.   Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9364.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9365.   Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9366.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9367.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9368.   There is no express contract governing this dispute.

9369.   Plaintiff and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 622**
**Breach of Implied Warranty**
**(W. Va. Code §46-2-314)**
**(Against Dr. Reddy's)**

</div>

9370.   West Virginia Class Representative Mynetta Hastings incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9371.   This cause of action is brought on behalf of the West Virginia-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9372.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to West Virginia Class Representatives and members of the West Virginia Class and was in the business of selling such products.

9373.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9374.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9375.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

9376.   Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9377.   Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9378.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

9379.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

9380.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

9381.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 41. Causes of Action on Behalf of the Wisconsin-Dr. Reddy's Classes

### COUNT 623
### Violation of the Wisconsin Deceptive Trade Practices Act
### (Wis. Stat. Ann. §100.18, *et seq.*)
### (Against Dr. Reddy's)

9382.   Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9383.   This cause of action is brought on behalf of the Wisconsin-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9384.   Defendant is a "person, firm, corporation or association" within the meaning of Wis. Stat. Ann. §100.18(1).

9385.   Plaintiff and the Class members are members of "the public" within the meaning of Wis. Stat. Ann. §100.18(1).

9386.   The Ranitidine-Containing Products are "merchandise" within the meaning of Wis. Stat. Ann. §100.18(1).

9387.   The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits any "assertion, representation or statement of fact which is untrue, deceptive or misleading."  Wis. Stat. Ann. §100.18(1).

9388.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Wisconsin DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9389.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Wisconsin DTPA.

9390.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

9391.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

9392.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9393.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9394.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Wisconsin DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9395.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9396.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9397.   As a result of Defendant's violations of the Wisconsin DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Wisconsin DTPA.

## COUNT 624
### Unjust Enrichment
### (Wisconsin Law)
### (Against Dr. Reddy's)

9398.   Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9399.   This cause of action is brought on behalf of the Wisconsin-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9400.   Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9401.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9402.   Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9403.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9404.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9405.   There is no express contract governing this dispute.

9406.   Plaintiff and the Class members do not have an adequate remedy at law.

**COUNT 625**
**Breach of Implied Warranty**
**(Wis. Stat. Ann. §402.314)**
**(Against Dr. Reddy's)**

9407.   Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9408.   This cause of action is brought on behalf of the Wisconsin-Dr. Reddy's Class (for the purpose of this section, "Class") against Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9409. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Wisconsin Class Representatives and members of the Wisconsin Class and was in the business of selling such products.

9410. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9411. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9412. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

9413. Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9414. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9415.   Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

9416.   Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

9417.   Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

9418.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### C.    Causes of Action Against Glenmark

9419.   For the purposes of the subsequent causes of action against Defendant Glenmark, Plaintiffs are incorporating the following allegations by reference: paragraphs 46-52 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic Zantac); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469

(requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 845-867 (misrepresentations or omissions of material fact in labeling); and 475-483 (equitable tolling).

9420.   Plaintiffs identified in the table below bring claims against Defendant Glenmark with respect to prescription Ranitidine on behalf of themselves and their respective State Classes under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| **Plaintiff Name** | **State(s) of Residence** |
| --- | --- |
| Daffeney Austin | Alabama |
| Lashonnah Gaitor | Alabama |
| Tammy Smith | Alaska |
| Monica Costello | Arizona, Nevada |
| Jennifer Fox | Arizona |
| Armando Tapia | Arizona |
| Tina Culclager | Arkansas |
| Martha Summers | Arkansas, Mississippi, Missouri |
| Virginia Aragon | California |
| Golbenaz Bakhtiar | California |
| Royal Handy | California |
| Angel Cordero | Connecticut |
| Angel Vega | Connecticut |
| Kevin Nelson | District of Columbia |
| Irma Arcaya | Florida |
| Roy Armstrong | Florida, Georgia |
| Jeannie Black | Florida |
| Sonia Diaz | Florida, Puerto Rico |
| Michael Fesser | Florida |
| Karen Foster | Florida, Virginia |

| | |
|---|---|
| Hattie Kelley | Florida |
| Marva Mccall | Florida |
| Clifton McKinnon | Florida |
| Ana Pereira | Florida |
| Daniel Taylor | Florida |
| Joyce Taylor | Florida |
| Michael Tomlinson | Florida |
| Earlene Green | Georgia |
| Leon Greene | Georgia |
| Tyrone Houston | Georgia |
| Kathy Jeffries | Georgia |
| Charlotte Sanders | Georgia |
| Paula Shells | Georgia |
| Cynthia Starr | Georgia |
| Angela Taylor | Georgia, Tennessee |
| Vickie Anderson | Illinois |
| Heather Re | Illinois |
| Teresa Dowler | Indiana |
| Timberly Goble | Indiana, Kentucky, Missouri, Texas |
| Alyson Humphrey | Indiana |
| Rebecca Sizemore | Indiana |
| Tracy Wells | Indiana |
| Charles Longfield | Iowa |
| Tracy Losee | Iowa |
| Janet Asbury | Kentucky |
| Randy Jones | Louisiana |
| Jamie Mckay | Louisiana |
| Alberta Griffin | Maryland |
| Darlene Whittington-Coates | Maryland |

| Nicholas Hazlett | Maryland, Pennsylvania |
|---|---|
| Jose Amado | Massachusetts |
| Rafael Bermudez | Massachusetts, New Hampshire |
| Ana Guzman | Massachusetts |
| Michelle Smith | Massachusetts |
| Myra Allen | Michigan |
| Jody Beal | Michigan |
| Benny Cope | Michigan |
| Arthur Gamble | Michigan |
| Kenneth Hix | Michigan, Tennessee |
| Jerry Hunt | Michigan |
| Judy Wilmot | Michigan |
| Lakisha Wilson | Michigan |
| Sandra Erickson-Brown | Minnesota |
| Donald Northrup | Minnesota |
| Beverly Crosby | Mississippi |
| Dorothy King | Mississippi |
| Lora Mauffray | Mississippi |
| Korcis McMillian | Mississippi |
| Michelle Tinker | Mississippi |
| David Weatherly | Mississippi |
| Elaine Aaron | Missouri |
| Lisa Deckard | Missouri |
| Cynthia Gibbs | Missouri |
| Brenda Newcomb | Missouri |
| David Rice | New Hampshire |
| James Adamo | New Jersey |
| Sayed Eldomiaty | New Jersey |
| Mary McMillian | New Jersey |

| | |
|---|---|
| Mary Moronski | New Jersey |
| Lynn White | New Jersey |
| Phyllis Gallegos | New Mexico |
| Carrie Martinez | New Mexico |
| Inez Mazon | New Mexico |
| Ernesto Sanchez | New Mexico |
| George Tapia | New Mexico |
| Silomie Clarke | New York |
| Nereida Cordero | New York |
| Benny Fazio | New York |
| Migdalia Kinney | New York |
| Mary McCullen | New York |
| Joseph Mcpheter | New York |
| Steven Murdock | New York |
| Glorimar Rodriguez | New York |
| Phyllis Spuler | New York |
| Mary Lou Wagner | New York |
| Acia D'amore | North Carolina |
| Patricia Frazier | North Carolina |
| Teresa Lee | North Carolina |
| Sharon Parks | North Carolina |
| Dennis Robbins | North Carolina |
| Julie Turner | North Carolina |
| Michael Galloway | Ohio |
| Patricia Hess | Ohio |
| Demarco Grayson | Oklahoma |
| Kristi Ledbetter | Oregon |
| Felicia Ball | Pennsylvania |
| Elmer Cook | Pennsylvania |

| Gloria Colon | Puerto Rico |
|---|---|
| Annie Johnson | South Carolina |
| Michael Futrell | South Carolina |
| Jeffery Gunwall | South Carolina |
| Sharon Mclellan | South Carolina |
| Marianella Villanueva | South Carolina, Texas |
| Eva Broughton | Tennessee |
| Rebecca Howard | Tennessee |
| Pam Turner | Tennessee |
| Billie Walker | Tennessee |
| Marilyn Abraham | Texas |
| Maria Eames | Texas |
| Tina Howard | Texas |
| Christopher Johnson | Texas |
| Gina Martinez | Texas |
| Tonya Overstreet | Texas |
| Gregory Alan Wayland | Texas |
| Sylvia Yoshida | Texas |
| Teresa Waters | Utah |
| Renee Clark | Vermont |
| Eric Ragis | Vermont |
| Lisa Ragis | Vermont |
| Cheryl Banks | Virginia |
| Lynn Costley | Virginia |
| Steve Fischer | Washington |
| Dave Garber | Washington |
| Bridget Peck | Washington |
| Mynetta Hastings | West Virginia |
| Wendy Quezaire | Wisconsin |

1.     **Causes of Action on Behalf of the Alabama-Glenmark Classes**

**COUNT 626**
**Violation of the Alabama Deceptive Trade Practices Act**
**(Ala. Code §8-19-1, *et seq.*)**
**(Against Glenmark)**

9421.   Alabama Class Representatives Daffeney Austin and Lashonnah Gaitor incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9422.   This cause of action is brought on behalf of the Alabama-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9423.   Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of Ala. Code §8-19-3(5).

9424.   Plaintiffs and the Class members are "consumer[s]" within the meaning of Ala. Code §8-19-3(2).

9425.   The Ranitidine-Containing Products are "goods" within the meaning of Ala. Code §8-19-3(3).

9426.   Defendant was and is engaged in "trade or commerce" within the meaning of Ala. Code §8-19-3(8).

9427.   The Alabama Deceptive Trade Practices Act ("Alabama DTPA") prohibits "deceptive acts or practices in the conduct of any trade or commerce." Ala. Code §8-19-5.

9428.   The Alabama DTPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have" (Ala. Code §8-19-5(5));

- 2013 -

      (b)      "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Ala. Code §8-19-5(7));

      (c)      "[a]dvertising goods or services with intent not to sell them as advertised" (Ala. Code §8-19-5(9)); and

      (d)      "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce" (Ala. Code §8-19-5(27)).

9429.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Alabama DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of N-Nitrosodimethylamine ("NDMA") as time passed.

9430.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Alabama DTPA, including:

      (a)      representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

      (b)      representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

      (c)      advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

      (d)      engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

9431.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9432.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9433.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9434.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9435.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

9436.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Alabama DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9437.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9438.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

9439.  Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Ala. Code §8-19-10(e) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

9440.  As a result of Defendant's violations of the Alabama DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Alabama DTPA.

**COUNT 627**
**Unjust Enrichment**
**(Alabama Law)**
**(Against Glenmark)**

9441.   Alabama Class Representatives Daffeney Austin and Lashonnah Gaitor incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9442.   This cause of action is brought on behalf of the Alabama-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9443.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9444.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9445.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9446.   It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9447.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9448.   Plaintiffs and the Class members do not have an adequate remedy at law.

### 2.      Causes of Action on Behalf of the Alaska-Glenmark Classes

### COUNT 628
### Violation of the Alaska Unfair Trade Practices and Consumer Protection Act
### (Alaska Stat. Ann. §45.50.471, *et seq.*)
### (Against Glenmark)

9449.   Alaska Class Representative Tammy Smith incorporates the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9450.   This cause of action is brought on behalf of the Alaska-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9451.   Plaintiff and the Class members are "consumer[s]" within the meaning of Alaska Stat. Ann. §45.50.561(a)(4).

9452.   The Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce."  Alaska Stat. Ann. §45.50.471(a).

9453.   The Alaska CPA makes unlawful specific acts, including:

(a)  "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Alaska Stat. Ann. §45.50.471(b)(4));

(b)  "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Alaska Stat. Ann. §45.50.471(b)(6));

(c)  "advertising goods or services with intent not to sell them as advertised" (Alaska Stat. Ann. §45.50.471(b)(8));

(d)  "engaging in any other conduct creating a likelihood of confusion or of misunderstanding and that misleads, deceives, or damages a buyer or a competitor in connection with the sale or advertisement of goods or services" (Alaska Stat. Ann. §45.50.471(b)(11)); and

(e)  "using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived, or damaged" (Alaska Stat. Ann. §45.50.471(b)(12)).

9454.  In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Alaska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9455.  Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Alaska CPA, including:

(a)  representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)  representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

      (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

      (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

9456.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

9457.   Defendant's misrepresentations and omissions regarding the expiration of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

9458.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9459.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9460.   Plaintiff and the Class members were aggrieved by Defendant's violations of the Alaska CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9461.   Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9462.   Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9463.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiff in MDL 2924 sent a notice letter pursuant to Alaska Stat. Ann. §45.50.535(b)(1) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seeks all damages and relief to which Plaintiff and the Class members are entitled.

9464.   As a result of Defendant's violations of the Alaska CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Alaska CPA.

## COUNT 629
### Unjust Enrichment or Quasi-Contract
### (Alaska Law)
### (Against Glenmark)

9465.   Alaska Class Representative Tammy Smith incorporates the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9466.   This cause of action is brought on behalf of the Alaska-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9467.   Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9468.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9469.   Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9470.   It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9471.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9472.   Plaintiff and the Class members do not have an adequate remedy at law.

### 3.   Causes of Action on Behalf of the Arizona-Glenmark Classes

### COUNT 630
### Violation of the Arizona Consumer Fraud Act
### (Ariz. Rev. Stat. Ann. §44-1521, *et seq.*)
### (Against Glenmark)

9473.   Arizona Class Representatives Monica Costello, Jennifer Fox, and Armando Tapia incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9474.   This cause of action is brought on behalf of the Arizona-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9475.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(6).

9476.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(5).

9477.   The Arizona Consumer Fraud Act ("Arizona CFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." Ariz. Rev. Stat. Ann. §44-1522(A).

9478.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Arizona CFA by recklessly, wantonly, knowingly, and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed..

9479.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Arizona CFA.

9480.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9481.   Defendant's misreprsentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a unform manner.

9482.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9483.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9484.  Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

9485.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the Arizona CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9486.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9487.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9488.  As a result of Defendant's violations of the Arizona CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

**COUNT 631**
**Unjust Enrichment**
**(Arizona Law)**
**(Against Glenmark)**

9489.   Arizona Class Representatives Monica Costello, Jennifer Fox, and Armando Tapia incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9490.   This cause of action is brought on behalf of the Arizona-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9491.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9492.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9493.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9494.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9495.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9496.   Plaintiffs and the Class members do not have an adequate remedy at law.

### 4.      Causes of Action on Behalf of the Arkansas-Glenmark Classes

**COUNT 632**
**Violation of the Arkansas Deceptive Trade Practices Act**
**(Ark. Code Ann. §4-88-101, *et seq.*)**
**(Against Glenmark)**

9497.   Arkansas Class Representatives Tina Culclager and Martha Summers incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9498.   This cause of action is brought on behalf of the Arkansas-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9499.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ark. Code Ann. §4-88-102(5).

9500.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Ark. Code Ann. §4-88-102(4).

9501.   The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices."  Ark. Code Ann. §4-88-107(a).

9502.   The Arkansas DTPA makes unlawful specific acts, including:

(a)     "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" (Ark. Code Ann. §4-88-107(a)(1));

(b)     "[a]dvertising the goods or services with the intent not to sell them as advertised" (Ark. Code Ann. §4-88-107(a)(3)); and

(c)     "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" (Ark. Code Ann. §4-88-107(a)(10)).

9503.   The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission . . . ." Ark. Code Ann. §4-88-108(a).

9504.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9505.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Arkansas DTPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

9506.  Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9507.  Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9508.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9509.  The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9510.  Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and

continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

9511.  Plaintiffs and the Class members were aggrieved by Defendant's violations of Arkansas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9512.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9513.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9514.  As a result of Defendant's violations of the Arkansas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

## COUNT 633
## Unjust Enrichment
## (Arkansas Law)
## (Against Glenmark)

9515.  Arkansas Class Representatives Tina Culclager and Martha Summers incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9516.   This cause of action is brought on behalf of the Arkansas-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9517.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9518.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9519.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9520.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9521.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9522.   There is no valid, legal, and binding contract governing this dispute.

9523.   Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 634
## Breach of Implied Warranty
## (Ark. Code Ann. §4-2-314)
## (Against Glenmark)

9524.   Arkansas Class Representatives Tina Culclager and Martha Summers incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9525.   This cause of action is brought on behalf of the Arkansas-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9526.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arkansas Class Representatives and members of the Arkansas Class and was in the business of selling such products.

9527.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9528.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9529.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

9530.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9531.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9532.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

9533.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

9534.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

9535.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**5.      Causes of Action on Behalf of the California-Glenmark Classes**

**COUNT 635**
**Violation of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code §17200, *et seq.*)**
**(Against Glenmark)**

9536.   California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9537.   This cause of action is brought on behalf of the California-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9538.   Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

9539.   Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

9540.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and

failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

9541.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL.  These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

9542.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9543.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9544.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9545.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9546.   Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, CAL. HEALTH & SAFETY CODE §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

9547.   Defendant conduct also consitutes "unfair" business acts or practies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

9548.   Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21

C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, *see* Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

9549.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9550.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9551.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9552.   Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

**COUNT 636**
**Violation of the California False Advertising Law**
**(Cal. Bus. & Prof. Code §17500, *et seq.*)**
**(Against Glenmark)**

9553.   California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9554.   This cause of action is brought on behalf of the California-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9555.   Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

9556.   The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code §17500.

9557.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products

remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9558.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

9559.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9560.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9561.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9562.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9563.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9564.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9565.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9566.   As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

## COUNT 637
### Violation of the California Consumers Legal Remedies Act
### (Cal. Civ. Code §1750, *et seq.*)
### (Against Glenmark)

9567.   California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9568.   This cause of action is brought on behalf of the California-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9569.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

9570.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

9571.   The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

9572.   The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code §1770(a).

9573.   The California CLRA makes unlawful specific acts, including:

   (a)   "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

   (b)   "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

     (c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

     (d)     "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

9574.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9575.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

     (a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

     (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

     (c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

     (d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

9576.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9577.  Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9578.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9579.  The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9580.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

9581.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9582.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9583.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.   Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

9584.   Pursuant to Cal. Civ. Code §1780(a), Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

**COUNT 638**
**Unjust Enrichment or Quasi-Contract**
**(California Law)**
**(Against Glenmark)**

9585.   California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9586.   This cause of action is brought on behalf of the California-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9587.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9588.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9589.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9590.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9591.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9592.   Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 639**
**Breach of Implied Warranty**
**(Cal. Com. Code §2314)**
**(Against Glenmark)**

9593.   California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9594.   This cause of action is brought on behalf of the California-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9595.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to California Class Representatives and members of the California Class and was in the business of selling such products.

9596.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9597.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9598.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

9599.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9600.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9601.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

9602.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

9603.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

9604.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**6.      Causes of Action on Behalf of the Connecticut-Glenmark Classes**

**COUNT 640**
**Violation of the Connecticut Unfair Trade Practices Act**
**(Conn. Gen. Stat. Ann. §42-110a, *et seq.*)**
**(Against Glenmark)**

9605.   Connecticut Class Representatives Angel Cordero and Angel Vega incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9606.   This cause of action is brought on behalf of the Connecticut-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9607.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Conn. Gen. Stat. Ann. §42-110a(3).

9608.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. §42-110a(4).

- 2048 -

9609.   The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. Ann. §42-110b(a).

9610.   Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9611.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Connecticut UTPA.

9612.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9613.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9614.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9615.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9616.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Connecticut UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9617.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9618.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9619.   As a result of Defendant's violations of the Connecticut UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

**COUNT 641**
**Unjust Enrichment**
**(Connecticut Law)**
**(Against Glenmark)**

9620.   Connecticut Class Representatives Angel Cordero and Angel Vega incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9621.   This cause of action is brought on behalf of the Connecticut-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9622.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9623.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9624.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9625.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9626.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9627.   Plaintiffs and the Class members do not have an adequate remedy at law.

### 7.     Causes of Action on Behalf of the District of Columbia-Glenmark Classes

### COUNT 642
### Violation of the District of Columbia Consumer Protection Procedures Act
### (D.C. Code Ann. §28-3901, *et seq.*)
### (Against Glenmark)

9628.   District of Columbia Class Representative Kevin Nelson incorporates the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9629.   This cause of action is brought on behalf of the District of Columbia-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9630.   Defendant, Plaintiff, and the Class members are "person[s]" within the meaning of D.C. Code Ann. §28-3901(a)(1).

9631.   Plaintiffs and the Class members are "consumer[s]" within the meaning of D.C. Code Ann. §28-3901(a)(2).

9632.   The Ranitidine-Containing Products are "goods" within the meaning of D.C. Code Ann. §28-3901(a)(7).

9633.   Defendant was and is engaged in "trade practice[s]" within the meaning of D.C. Code Ann. §28-3901(a)(6).

9634.   The District of Columbia Consumer Protection Procedures Act ("District of Columbia CPPA") prohibits "unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby."  D.C. Code Ann. §28-3904.

9635.   The District of Columbia CPPA makes unlawful specific acts, including:

(a)   "represent[ing] that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have" (D.C. Code Ann. §28-3904(a));

(b)   "represent[ing] that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another" (D.C. Code Ann. §28-3904(d));

(c)   "advertis[ing] or offer[ing] goods or services without the intent to sell them or without the intent to sell them as advertised or offered" (D.C. Code Ann. §28-3904(h));

(d)   "misrepresent as to a material fact which has a tendency to mislead" (D.C. Code Ann. §28-3904(e));

(e)   "fail to state a material fact if such failure tends to mislead" (D.C. Code Ann. §28-3904(f)); and

(f)   "[u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead" (D.C. Code Ann. §28-3904(f-1)).

9636.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the District of Columbia CPPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9637.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the District of Columbia CPPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

    (d)    using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive;

    (e)    acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid; and

    (f)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

9638.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9639.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

9640.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9641.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9642.  Plaintiff and the Class members were aggrieved by Defendant's violations of the District of Columbia CPPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9643.  Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9644.  Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9645.  As a result of Defendant's violations of the District of Columbia CPPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the District of Columbia CPPA.

## COUNT 643
## Unjust Enrichment
## (District of Columbia Law)
## (Against Glenmark)

9646.   District of Columbia Class Representative and Kevin Nelson incorporates the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9647.   This cause of action is brought on behalf of the District of Columbia-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9648.   Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9649.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9650.   Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9651.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9652.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9653.   There is no express written contract governing this dispute.

9654.   Plaintiff and the Class members do not have an adequate remedy at law.

### 8.    Causes of Action on Behalf of the Florida-Glenmark Classes

### COUNT 644
### Violation of the Florida Deceptive and Unfair Trade Practices Act
### (Fla. Stat. Ann. §501.201, *et seq.*)
### (Against Glenmark)

9655.   Florida Class Representatives Irma Arcaya, Roy Armstrong, Jeannie Black, Sonia Diaz, Michael Fesser, Karen Foster, Hattie Kelley, Marva Mccall, Clifton McKinnon, Ana Pereira, Daniel Taylor, Joyce Taylor, and Michael Tomlinson incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9656.   This cause of action is brought on behalf of the Florida-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9657.   The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. Ann. §501.204(1).

9658. In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017." Fla. Stat. Ann. §501.204(2).

9659. Plaintiffs and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA. *See* Fla. Stat. Ann. §501.203(6)-(7).

9660. Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA. *See* Fla. Stat. Ann. §501.203(8).

9661. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9662. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

9663. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9664. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9665.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9666.  The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9667.  Plaintiffs and the Class members were aggrieved by Defendant's violations of FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9668.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9669.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9670.  As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

### COUNT 645
### Unjust Enrichment
### (Florida Law)
### (Against Glenmark)

9671.  Florida Class Representatives Irma Arcaya, Roy Armstrong, Jeannie Black, Sonia Diaz, Michael Fesser, Karen Foster, Hattie Kelley, Marva Mccall, Clifton McKinnon, Ana Pereira, Daniel Taylor, Joyce Taylor, and Michael Tomlinson incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9672.  This cause of action is brought on behalf of the Florida-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9673.  Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9674.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered an impoverishment because they purchased worthless medications and did not receive the expected benefit therefrom.

9675.   Defendant voluntarily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9676.   It is unjust and inequitable for the Defendant to retain these benefits without paying the value thereof because the benefits were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9677.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9678.   There is no express written contract governing this dispute.

9679.   Plaintiffs and the Class members do not have an adequate remedy at law.

### 9.      Causes of Action on Behalf of the Georgia-Glenmark Classes

<div align="center">

**COUNT 646**
**Violation of the Georgia Fair Business Practices Act**
**(Ga. Code Ann. §10-1-390, *et seq.*)**
**(Against Glenmark)**

</div>

9680.   Georgia Class Representatives Roy Armstrong, Earlene Green, Leon Greene, Tyrone Houston, Kathy Jeffries, Charlotte Sanders, Paula Shells, Cynthia Starr, and Angela Taylor incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9681.   This cause of action is brought on behalf of the Georgia-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9682.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(24).

9683.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(6).

9684.   Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Ga. Code Ann. §10-1-392(a)(28).

9685.   The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."  Ga. Code Ann. §10-1-393(a).

9686.   The Georgia FBPA makes unlawful specific acts, including:

(a)   "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-393(b)(5));

(b)   "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-393(b)(7)); and

(c)   "[a]dvertising goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-393(b)(9)).

9687.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time

period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9688.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia FBPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

9689.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9690.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9691.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9692.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9693.   Plaintiffs and the Class members reasonably relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

9694.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Georgia FBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9695.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9696.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9697.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual

notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Ga. Code Ann. §10-1-399(b) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

9698.  As a result of Defendant's violations of the Georgia FBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Georgia FBPA.

<div align="center">

**COUNT 647**
**Unjust Enrichment**
**(Georgia Law)**
**(Against Glenmark)**

</div>

9699.  Georgia Class Representatives Roy Armstrong, Earlene Green, Leon Greene, Tyrone Houston, Kathy Jeffries, Charlotte Sanders, Paula Shells, Cynthia Starr, and Angela Taylor incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9700.  This cause of action is brought on behalf of the Georgia-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9701.  Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9702.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9703.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9704.   It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9705.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9706.   There is no express contract governing this dispute.

9707.   Plaintiffs and the Class members do not have an adequate remedy at law.

10.     **Causes of Action on Behalf of the Illinois-Glenmark Classes**

### COUNT 648
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**(815 Ill. Comp. Stat. Ann. 505/1, *et seq.*)**
**(Against Glenmark)**

9708.   Illinois Class Representatives Vickie Anderson and Heather Re incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9709.   This cause of action is brought on behalf of the Illinois-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9710.   Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(c).

9711.   Plaintiffs and the Class members are "consumer[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(e).

9712.   The Ranitidine-Containing Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(b).

9713.   Defendant was and is engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(f).

9714.   The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade

Practices Act' [815 Ill. Comp. Stat. Ann. 510/2], approved August 5, 1965, in the conduct of any trade or commerce." 815 Ill. Comp. Stat. Ann. 505/2.

9715.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9716.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFDBPA.

9717.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9718.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9719.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9720.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9721.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Illinois CFDBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9722.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.   Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9723.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.   Defendant's unlawful acts and practices complained of herein affect the public interest.

9724.   As a result of Defendant's violations of the Illinois CFDBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFDBPA.

**COUNT 649**
**Unjust Enrichment**
**(Illinois Law)**
**(Against Glenmark)**

9725.   Illinois Class Representatives Vickie Anderson and Heather Re incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9726.   This cause of action is brought on behalf of the Illinois-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9727.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9728.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9729.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9730.   It violates the principles of justice, equity, and good conscience for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9731.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9732.   Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

## 11.    Causes of Action on Behalf of the Indiana-Glenmark Classes

### COUNT 650
### Unjust Enrichment
### (Indiana Law)
### (Against Glenmark)

9733.   Indiana Class Representatives Teresa Dowler, Timberly Goble, Alyson Humphrey, Rebecca Sizemore, and Tracy Wells incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9734.   This cause of action is brought on behalf of the Indiana-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9735.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9736.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9737.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9738.   It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9739.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9740.   Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

**COUNT 651**
**Breach of Implied Warranty**
**(Ind. Code. Ann. §26-1-2-314)**
**(Against Glenmark)**

9741.   Indiana Class Representatives Teresa Dowler, Timberly Goble, Alyson Humphrey, Rebecca Sizemore, and Tracy Wells incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9742.   This cause of action is brought on behalf of the Indiana-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9743.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Indiana Class Representatives and members of the Indiana Class and was in the business of selling such products.

9744.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9745.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9746.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

9747.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9748.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9749.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

9750.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

9751.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

9752.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 12.   Causes of Action on Behalf of the Iowa-Glenmark Classes

**COUNT 652**
**Violation of the Iowa Private Right of Action for Consumer Frauds Act**
**(Iowa Code Ann. §714H.1, *et seq.*)**
**(Against Glenmark)**

9753.   Iowa Class Representatives Charles Longfield and Tracy Losee incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9754.   This cause of action is brought on behalf of the Iowa-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9755.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Iowa Code Ann. §714H.2(7).

9756.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Iowa Code Ann. §714H.2(3).

9757.   The Iowa Private Right of Action for Consumer Frauds Act ("Iowa PRACFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise."  Iowa Code Ann. §714H.3(1).

9758.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Iowa PRACFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Defendant did so with willful and wanton disregard for the rights and safety of others.

9759.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Iowa PRACFA.

9760.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9761.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9762.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9763.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9764.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Iowa PRACFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9765.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out- of-pocket loss.

9766.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

9767.   As a result of Defendants' violations of the Iowa PRACFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Iowa PRACFA.

9768.   Additionally, because Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged

herein, were undertaken in willful and wanton disregard for the rights and safety of others, pursuant to Iowa Code §714H.5(4), Plaintiffs and the Class members seek an additonal award of treble damages.

<div align="center">

**COUNT 653**
**Unjust Enrichment**
**(Iowa Law)**
**(Against Glenmark)**

</div>

9769.   Iowa Class Representatives Charles Longfield and Tracy Losee incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9770.   This cause of action is brought on behalf of the Iowa-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9771.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9772.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9773.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9774.   It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9775.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9776.   Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

<div align="center">

**COUNT 654**
**Breach of Implied Warranty**
**(Iowa Code Ann. §554.2314)**
**(Against Glenmark)**

</div>

9777.   Iowa Class Representatives Charles Longfield and Tracy Losee incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9778.   This cause of action is brought on behalf of the Iowa-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9779.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Iowa Class Representatives and members of the Iowa Class and was in the business of selling such products.

9780.  Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9781.  Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9782.  Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

9783.  Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9784.  Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9785.  Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

9786.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

9787.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

9788.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 13.    Causes of Action on Behalf of the Kentucky-Glenmark Classes

**COUNT 655**
**Violation of the Kentucky Consumer Protection Act**
**(Ky. Rev. Stat. Ann. §367.110, *et seq.*)**
**(Against Glenmark)**

9789.   Kentucky Class Representatives Timberly Goble and Janet Asbury incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9790.   This cause of action is brought on behalf of the Kentucky-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9791.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ky. Rev. Stat. Ann. §367.110(1).

9792. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Ky. Rev. Stat. Ann. §367.110(2).

9793. The Kentucky Consumer Protection Act ("Kentucky CPA") prohibits "[u]nfair, [unconscionable], false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. Ann. §367.170(1)-(2).

9794. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9795. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Kentucky CPA.

9796. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9797. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9798. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9799.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9800.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Kentucky CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9801.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9802.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9803.   As a result of Defendant's violations of the Kentucky CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Kentucky CPA.

<div align="center">

**COUNT 656**
**Unjust Enrichment**
**(Kentucky Law)**
**(Against Glenmark)**

</div>

9804.   Kentucky Class Representatives Timberly Goble and Janet Asbury incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9805.   This cause of action is brought on behalf of the Kentucky-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9806.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9807.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9808.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9809.   It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9810.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9811.   Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 657**
**Breach of Implied Warranty**
**(Ky. Rev. Stat. Ann. §355.2-314)**
**(Against Glenmark)**

</div>

9812.   Kentucky Class Representatives Timberly Goble and Janet Asbury incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9813.   This cause of action is brought on behalf of the Kentucky-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9814.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Kentucky Class Representatives and members of the Kentucky Class and was in the business of selling such products.

9815.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9816.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9817.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

9818.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9819.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9820.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

9821.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

9822.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

9823.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 14.   Causes of Action on Behalf of the Louisiana-Glenmark Classes

### COUNT 658
### Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law
### (La. Stat. Ann. §51:1401, *et seq.*)
### (Against Glenmark)

9824.   Louisiana Class Representatives Randy Jones and Jamie Mckay incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9825.   This cause of action is brought on behalf of the Louisiana-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9826.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of La. Stat. Ann. §51:1402(8).

9827.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of La. Stat. Ann. §51:1402(1).

9828.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of La. Stat. Ann. §51:1402(10).

9829.   The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  La. Stat. Ann. §51:1405(A).

9830.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9831.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Louisiana CPL.

9832.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9833.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9834.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9835.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9836.   Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

9837.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Louisiana CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9838.   Specifically, Plaintiffs and the Class were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9839.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9840.   As a result of Defendant's violations of the Louisiana CPL, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Louisiana CPL.

## COUNT 659
### Unjust Enrichment
### (Louisiana Law)
### (Against Glenmark)

9841.   Louisiana Class Representatives Randy Jones and Jamie Mckay incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9842.   This cause of action is brought on behalf of the Louisiana-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9843.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9844.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9845.  Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

9846.  Defendants' enrichment – the monies obtained from Plaintiffs for the Ranitidine Containing Products – was the result of Plaintiffs' impoverishment – the receipt by Plaintiffs of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

9847.  It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9848.  Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9849.  Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div style="text-align:center">

**COUNT 660**
**Breach of Implied Warranty**
**(La. Civ. Code Ann. art. §2520)**
**(Against Glenmark)**

</div>

9850.  Louisiana Class Representatives Randy Jones and Jamie Mckay incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9851.   This cause of action is brought on behalf of the Louisiana-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9852.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Louisiana Class Representatives and members of the Louisiana Class and was in the business of selling such products.

9853.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9854.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9855.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

9856.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9857.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9858.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

9859.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

9860.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

9861.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

15.     **Causes of Action on Behalf of the Maryland-Glenmark Classes**

**COUNT 661**
**Violation of the Maryland Consumer Protection Act**
**(Md. Code Ann., Com. Law §13-101, *et seq.*)**
**(Against Glenmark)**

9862.   Maryland Class Representatives Nicholas Hazlett, Alberta Griffin, and Darlene Whittington-Coates incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9863.   This cause of action is brought on behalf of the Maryland-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9864.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Md. Code Ann., Com. Law §13-101(h).

9865.   Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Md. Code Ann., Com. Law §13-101(c)(1).

9866.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Md. Code Ann., Com. Law §13-101(f).

9867.   The Maryland Consumer Protection Act ("Maryland CPA") prohibits "[u]nfair, abusive, or deceptive trade practices."  Md. Code Ann., Com. Law §13-301.

9868.   The Maryland CPA makes unlawful specific acts, including:

    (a)     "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" (Md. Code Ann., Com. Law §13-301(1));

    (b)     "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have" (Md. Code Ann., Com. Law §13-301(2)(i));

(c)     "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not" (Md. Code Ann., Com. Law §13-301(2)(iv));

(d)     "[f]ailure to state a material fact if the failure deceives or tends to deceive" (Md. Code Ann., Com. Law §13-301(3));

(e)     "[a]dvertis[ing] or offer[ing] of consumer goods, consumer realty, or consumer services . . . [w]ithout intent to sell, lease, or rent them as advertised or offered" (Md. Code Ann., Com. Law §13-301(5)(i)); and

(f)     "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with . . . [t]he promotion or sale of any consumer goods" (Md. Code Ann., Com. Law §13-301(9)(i)).

9869.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9870.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Maryland CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)     failing to disclose that the Ranitidine-Containing Products are defective and inherently dangerous in the course of the sale of the Ranitidine-Containing Products; and

(e)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

9871.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9872.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9873.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9874.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9875.  Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

9876.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the Maryland CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9877.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9878.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9879.  As a result of Defendant's violations of the Maryland CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

**COUNT 662**
**Unjust Enrichment**
**(Maryland Law)**
**(Against Glenmark)**

9880.  Maryland Class Representatives Nicholas Hazlett, Alberta Griffin, and Darlene Whittington-Coates incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9881.   This cause of action is brought on behalf of the Maryland-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9882.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9883.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9884.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9885.   It would be unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9886.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the

value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9887.   Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 663**
**Breach of Implied Warranty**
**(Md. Code Ann. §2-314)**
**(Against Glenmark)**

</div>

9888.   Maryland Class Representatives Nicholas Hazlett, Alberta Griffin, and Darlene Whittington-Coates incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9889.   This cause of action is brought on behalf of the Maryland-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9890.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Maryland Class Representatives and members of the Maryland Class and was in the business of selling such products.

9891.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9892.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9893.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

9894.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9895.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9896.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

9897.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

9898.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

9899.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 16.   Causes of Action on Behalf of the Massachusetts-Glenmark Classes

### COUNT 664
**Violation of the Deceptive Acts or Practices Prohibited by Massachusetts Law**
**(Mass. Gen. Laws Ann. ch. 93a, §1, *et seq.*)**
**(Against Glenmark)**

9900.   Massachussetts Class Representatives Jose Amado, Rafael Bermudez, Ana Guzman, and Michelle Smith incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9901.   This cause of action is brought on behalf of the Massachusetts-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9902.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(a).

9903.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(b).

9904.   The Massachusetts consumer protection law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ann. ch. 93A, §2(a).

9905.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-

Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9906.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Massachusetts Act.

9907.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9908.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9909.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9910.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9911.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Massachusetts Act because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9912.   Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9913.   Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9914.   Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Mass. Gen. Laws Ann. ch. 93A, §9(3) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

9915.   As a result of Defendant's violations of the Massachusetts Act, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Massachusetts Act.

**COUNT 665**
**Unjust Enrichment**
**(Massachusetts Law)**
**(Against Glenmark)**

9916. Massachussetts Class Representatives Jose Amado, Rafael Bermudez, Ana Guzman, and Michelle Smith incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9917.  This cause of action is brought on behalf of the Massachusetts-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9918.  Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9919.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9920.  Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

9921.   Defendant's enrichment – the monies obtained from Plaintiffs' and the Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and the Class members' impoverishment – i.e., Plaintiffs' and the Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

9922.   It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9923.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9924.   Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 666
### Breach of Implied Warranty
### (Mass. Gen. Laws Ann. ch. 106 §2-314)
### (Against Glenmark)

9925.   Massachusetts Class Representatives Jose Amado, Rafael Bermudez, Ana Guzman, and Michelle Smith incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9926.   This cause of action is brought on behalf of the Massachusetts-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9927.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Massachusetts Class Representatives and members of the Massachusetts Class and was in the business of selling such products.

9928.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9929.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9930.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

9931.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9932.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9933.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

9934.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

9935.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

9936.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 17.   Causes of Action on Behalf of the Michigan-Glenmark Classes

**COUNT 667**
**Violation of the Michigan Consumer Protection Act**
**(Mich. Comp. Laws Ann. §445.901, *et seq.*)**
**(Against Glenmark)**

9937.   Michigan Class Representatives Myra Allen, Jody Beal, Benny Cope, Arthur Gamble, Kenneth Hix, Jerry Hunt, Judy Wilmot, and Lakisha Wilson incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9938.   This cause of action is brought on behalf of the Michigan-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9939.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(d).

9940.   Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(g).

9941.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws Ann. §445.903(1).

9942.   The Michigan CPA makes unlawful specific acts, including:

(a)   "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Mich. Comp. Laws Ann. §445.903(1)(c));

(b)   "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Mich. Comp. Laws Ann. §445.903(1)(e)); and

(c)   "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented" (Mich. Comp. Laws Ann. §445.903(1)(g)).

9943.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9944.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Michigan CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

9945.   Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9946.   Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9947.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9948.   The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9949.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Michigan CPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9950.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9951.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9952.  As a result of Defendant's violations of the Michigan CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Michigan CPA.

### COUNT 668
### Unjust Enrichment
### (Michigan Law)
### (Against Glenmark)

9953.  Michigan Class Representatives Myra Allen, Jody Beal, Benny Cope, Arthur Gamble, Kenneth Hix, Jerry Hunt, Judy Wilmot, and Lakisha Wilson incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9954.  This cause of action is brought on behalf of the Michigan-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9955.  Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9956.  In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9957.  Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9958.  It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9959.  Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9960.  There is no express contract governing this dispute.

9961.  Plaintiffs and the Class members do not have an adequate remedy at law.

18.      **Causes of Action on Behalf of the Minnesota-Glenmark Classes**

**COUNT 669**
**Violation of the Minnesota Prevention of Consumer Fraud Act**
**(Minn. Stat. Ann. §325F.68,** *et seq.***)**
**(Against Glenmark)**

9962.   Minnesota Class Representatives Sandra Erickson-Brown and Donald Northrup incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9963.   This cause of action is brought on behalf of the Minnesota-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9964.   Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

9965.   The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

9966.   The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged."  Minn. Stat. Ann. §325F.69(1).  Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

9967. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9968. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

9969. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9970. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

9971. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

9972. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

9973.  Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

9974.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

9975.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

9976.  Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

9977.  As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

**COUNT 670**
**Unjust Enrichment**
**(Minnesota Law)**
**(Against Glenmark)**

9978.   Minnesota Class Representatives Sandra Erickson-Brown and Donald Northrup incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9979.   This cause of action is brought on behalf of the Minnesota-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9980.   Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

9981.   In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

9982.   Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

9983.   It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

9984.   Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

9985.   Plaintiffs and the Class members do not have an adequate remedy at law.

9986.

Breach                              of                    Implied                       Warranty

(Minn.                            Stat.                    Ann.                          §336.2-314)

(Against Glenmark)

9987.   Minnesota Class Representatives Sandra Erickson-Brown and Donald Northrup incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

9988.   This cause of action is brought on behalf of the Minnesota-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

9989.   At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

9990.   Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9991.   Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9992.   Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

9993.   Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9994.   Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

9995.   Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

9996.   Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

9997.   Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

9998.   As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 19.  Causes of Action on Behalf of the Mississippi-Glenmark Classes

### COUNT 671
### Unjust Enrichment
### (Mississippi Law)
### (Against Glenmark)

9999.   Mississippi Class Representatives Martha Summers, Beverly Crosby, Dorothy King, Lora Mauffray, Korcis McMillian, Michelle Tinker, and David Weatherly incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10000. This cause of action is brought on behalf of the Mississippi-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10001. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10002. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

10003. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10004. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10005. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10006. There is no express contract governing this dispute.

10007. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 672**
**Breach of Implied Warranty**
**(Miss. Code Ann. §75-2-314)**
**(Against Glenmark)**

10008. Mississippi Class Representatives Martha Summers, Beverly Crosby, Dorothy King, Lora Mauffray, Korcis McMillian, Michelle Tinker, and David Weatherly incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10009. This cause of action is brought on behalf of the Mississippi-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10010. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Mississippi Class Representatives and members of the Mississippi Class and was in the business of selling such products.

10011. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10012. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10013. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10014. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10015. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10016. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

10017. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10018. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10019. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law

### 20. Causes of Action on Behalf of the Missouri-Glenmark Classes

### COUNT 673
### Violation of the Missouri Merchandising Practices Act
### (Mo. Rev. Stat. §407.010, *et seq.*)
### (Against Glenmark)

10020. Missouri Class Representatives Martha Summers, Timberly Goble, Elaine Aaron, Lisa Deckard, Cynthia Gibbs, and Brenda Newcomb incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10021. This cause of action is brought on behalf of the Missouri-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10022. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mo. Ann. Stat. §407.010(5).

10023. Defendant was and is engaged in "[t]rade or commerce" within the meaning of Mo. Ann. Stat. §407.010(7).

10024. The Missouri Merchandising Practices Act ("Missouri MPA") prohibits "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Ann. Stat. §407.020(1).

10025. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10026. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Missouri MPA.

10027. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10028. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10029. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10030. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10031. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Missouri MPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10032. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10033. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10034. As a result of Defendant's violations of the Missouri MPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Missouri MPA.

**COUNT 674**
**Unjust Enrichment**
**(Missouri Law)**
**(Against Glenmark)**

10035. Missouri Class Representatives Martha Summers, Timberly Goble, Elaine Aaron, Lisa Deckard, Cynthia Gibbs, and Brenda Newcomb incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10036. This cause of action is brought on behalf of the Missouri-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10037. This cause of action is brought on behalf of the Missouri Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10038. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10039. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10040. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10041. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10042. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10043. There is no express contract governing this dispute.

10044. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 675**
**Breach of Implied Warranty**
**(Mo. Rev. Stat. §400.2-314)**
**(Against Glenmark)**

</div>

10045. Missouri Class Representatives Martha Summers, Timberly Goble, Elaine Aaron, Lisa Deckard, Cynthia Gibbs, and Brenda Newcomb incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10046. This cause of action is brought on behalf of the Missouri-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10047. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Missouri Class Representatives and members of the Missouri Class and was in the business of selling such products.

10048. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10049. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10050. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10051. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10052. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10053. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

10054. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10055. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10056. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 21.    Causes of Action on Behalf of the Nevada-Glenmark Classes

**COUNT 676**
**Violation of the Nevada Deceptive Trade Practices Act**
**(Nev. Rev. Stat. Ann. §598.0903, *et seq.*)**
**(Against Glenmark)**

10057. Nevada Class Representative Monica Costello incorporates the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10058. This cause of action is brought on behalf of the Nevada-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10059. The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), prohibits the use of "'deceptive trade practices' . . . in the course of . . . business or occupation." Nev. Rev. Stat. Ann. §598.0915.

10060. The Nevada DTPA makes unlawful specific acts, including:

(a) "[k]nowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith" (Nev. Rev. Stat. Ann. §598.0915(5));

(b) "[r]epresent[ing] that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model" (Nev. Rev. Stat. Ann. §598.0915(7));

(c) "[a]dvertis[ing] goods or services with intent not to sell or lease them as advertised" (Nev. Rev. Stat. Ann. §598.0915(9));

(d) "[k]nowingly mak[ing] any other false representation in a transaction" (Nev. Rev. Stat. Ann. §598.0915(15)); and

(e) "[f]ail[ing] to disclose a material fact in connection with the sale or lease of goods or services" (Nev. Rev. Stat. Ann. §598.0923(2)).

10061. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10062. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Nevada DTPA, including:

> (a)  representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (b)  representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;
>
> (c)  advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;
>
> (d)  failing to disclose the NDMA danger in connection with the sale of the Ranitidine-Containing Products; and
>
> (e)  engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

10063. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

10064. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

10065. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10066. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10067. Plaintiff and the Class members were aggrieved by Defendant's violations of the Nevada DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10068. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10069. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10070. As a result of Defendant's violations of the Nevada DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Nevada DTPA.

**COUNT 677**
**Unjust Enrichment**
**(Nevada Law)**
**(Against Glenmark)**

10071. Nevada Class Representative Monica Costello incorporates the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10072. This cause of action is brought on behalf of the Nevada-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10073. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10074. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10075. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10076. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10077. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10078. There is no express contract governing this dispute.

10079. Plaintiff and the Class members do not have an adequate remedy at law.

### 22.    Causes of Action on Behalf of the New Hampshire-Glenmark Classes

### COUNT 678
### Violation of the New Hampshire Consumer Protection Act
### (N.H. Rev. Stat. Ann. §358-A:1, *et seq.*)
### (Against Glenmark)

10080. New Hampshire Class Representatives Rafael Bermudez and David Rice incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10081. This cause of action is brought on behalf of the New Hampshire-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10082. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of N.H. Rev. Stat. Ann. §358-A:1(I).

10083. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of N.H. Rev. Stat. Ann. §358-A:1(II).

10084. The New Hampshire Consumer Protection Act ("New Hampshire CPA") prohibits "any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce."  N.H. Rev. Stat. Ann. §358-A:2.

10085. The New Hampshire CPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (N.H. Rev. Stat. Ann. §358-A:2(V));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." (N.H. Rev. Stat. Ann. §358-A:2(VII)); and

(c)     "[a]dvertising goods or services with intent not to sell them as advertised." (N.H. Rev. Stat. Ann. §358-A:2(IX)).

10086. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Hampshire CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10087. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Hampshire CPA, including:

(a)     representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

10088. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10089. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10090. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10091. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10092. Plaintiffs and the Class members were aggrieved by Defendant's violations of New Hampshire CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10093. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10094. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10095. As a result of Defendant's violations of the New Hampshire CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Hampshire CPA.

<div align="center">

**COUNT 679**
**Unjust Enrichment**
**(New Hampshire Law)**
**(Against Glenmark)**

</div>

10096. New Hampshire Class Representatives Rafael Bermudez and David Rice incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10097. This cause of action is brought on behalf of the New Hampshire-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10098. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10099. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10100. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10101. It is unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10102. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10103. There is no valid, express contract governing this dispute.

10104. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 680**
**Breach of Implied Warranty**
**(N.H. Rev. Stat. Ann. §382-A:2-314)**
**(Against Glenmark)**

</div>

10105. New Hampshire Class Representatives Rafael Bermudez and David Rice incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10106. This cause of action is brought on behalf of the New Hampshire-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10107. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Hampshire Class Representatives and members of the New Hampshire Class and was in the business of selling such products.

10108. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10109. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10110. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10111. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10112. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10113. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

10114. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10115. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10116. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

23.    **Causes of Action on Behalf of the New Jersey-Glenmark Classes**

### COUNT 681
### Violation of the New Jersey Consumer Fraud Act
### (N.J. Stat. Ann. §56:8-1, *et seq.*)
### (Against Glenmark)

10117. New Jersey Class Representatives James Adamo, Sayed Eldomiaty, Mary McMillian, Mary Moronski, and Lynn White incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10118. This cause of action is brought on behalf of the New Jersey-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10119. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.J. Stat. Ann. §56:8-1(d).

10120. The Ranitidine-Containing Products are "merchandise" within the meaning of N.J. Stat. Ann. §56:8-1(c).

10121. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Jersey Consumer Fraud Act ("New Jersey CFA") by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  N.J. Stat. Ann. §56:8-1, *et seq.*

10122. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Jersey CFA.

10123. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10124. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10125. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10126. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10127. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Jersey CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10128. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10129. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10130. As a result of Defendant's violations of the New Jersey CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Jersey CFA.

<div align="center">

**COUNT 682**
**Unjust Enrichment**
**(New Jersey Law)**
**(Against Glenmark)**

</div>

10131. New Jersey Class Representatives James Adamo, Sayed Eldomiaty, Mary McMillian, Mary Moronski, and Lynn White incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10132. This cause of action is brought on behalf of the New Jersey-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10133. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10134. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10135. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10136. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10137. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10138. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

## COUNT 683
### Breach of Implied Warranty
### (N.J. Stat. Ann. §12A:2-314)
### (Against Glenmark)

10139. New Jersey Class Representatives James Adamo, Sayed Eldomiaty, Mary McMillian, Mary Moronski, and Lynn White incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10140. This cause of action is brought on behalf of the New Jersey-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10141. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Jersey Class Representatives and members of the New Jersey Class and was in the business of selling such products.

10142. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10143. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10144. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10145. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10146. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10147. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

10148. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10149. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10150. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 24. Causes of Action on Behalf of the New Mexico-Glenmark Classes

### COUNT 684
### Violation of the New Mexico Unfair Trade Practices Act
### (N.M. Stat. Ann. §57-12-1, *et seq.*)
### (Against Glenmark)

10151. New Mexico Class Representatives Phyllis Gallegos, Carrie Martinez, Inez Mazon, Ernesto Sanchez, and George Tapia incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10152. This cause of action is brought on behalf of the New Mexico-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10153. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

10154. Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

10155. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person."  N.M. Stat. Ann. §57-12-2(D).  The New Mexico UTPA also makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity

of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." N.M. Stat. Ann. §57-12-2(E).

10156. The New Mexico UTPA makes unlawful specific acts, including:

(a)     "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

(b)     "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

(c)     "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

10157. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10158. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Mexico UTPA, including:

(a)     representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and

(d)     acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.

10159. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10160. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10161. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10162. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10163. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10164. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10165. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

10166. As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

<div align="center">

**COUNT 685**
**Unjust Enrichment**
**(New Mexico Law)**
**(Against Glenmark)**

</div>

10167. New Mexico Class Representatives Phyllis Gallegos, Carrie Martinez, Inez Mazon, Ernesto Sanchez, and George Tapia incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10168. This cause of action is brought on behalf of the New Mexico-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10169. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10170. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10171. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10172. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10173. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10174. There is no express contract governing this dispute.

10175. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 686**
**Breach of Implied Warranty**
**(N.M. Stat. Ann. §55-2-314)**
**(Against Glenmark)**

10176. New Mexico Class Representatives Phyllis Gallegos, Carrie Martinez, Inez Mazon, Ernesto Sanchez, and George Tapia incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10177. This cause of action is brought on behalf of the New Mexico-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10178. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

10179. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10180. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10181. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10182. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10183. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10184. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

10185. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10186. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10187. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

25.    **Causes of Action on Behalf of the New York-Glenmark Classes**

**COUNT 687**
**Violation of New York Deceptive Acts and Practices Act**
**(N.Y. Gen. Bus. Law §349)**
**(Against Glenmark)**

10188. New York Class Representatives Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen, Joseph Mcpheter, Steven Murdock, Glorimar Rodriguez, Phyllis Spuler, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10189. This cause of action is brought on behalf of the New York-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10190. Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

10191. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §349(a).

10192. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10193. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

10194. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10195. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10196. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10197. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10198. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10199. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10200. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10201. As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

## COUNT 688
### Violation of the New York False Advertising Act
### (N.Y. Gen. Bus. Law §350)
### (Against Glenmark)

10202. New York Class Representatives Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen, Joseph Mcpheter, Steven Murdock, Glorimar Rodriguez, Phyllis Spuler, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10203. This cause of action is brought on behalf of the New York-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10204. Defendant was and is engaged in "conduct of business, trade or commerce" within
the meaning of N.Y. Gen. Bus. Law §350.

10205. The New York False Advertising Act ("New York FAA") prohibits "[f]alse
advertising in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §350.  False
advertising includes "advertising, including labeling, of a commodity . . . if such advertising is
misleading in a material respect," taking into account "the extent to which the advertising fails to
reveal facts material in the light of . . . representations [made] with respect to the commodity."
N.Y. Gen. Bus. Law §350-a(1).

10206. Defendant caused to be made or disseminated through New York and the United
States, through advertising, marketing, and other publications, statements that were untrue or
misleading, and which were known, or which by exercise of reasonable care should have been
known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class
members.

10207. In the course of its business, Defendant, directly or through its agents, employees,
and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting,
omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-
Containing Products, including by printing expiration dates on its labels that exceeded the time
period during which the products remained stable and, thus, resulting in higher, undisclosed, and
unsafe levels of NDMA as time passed.

10208. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing,
and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,
Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or
commerce, in violation of the New York FAA.

10209. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10210. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10211. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10212. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10213. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10214. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10215. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

10216. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public. In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

10217. As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the New York Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

**COUNT 689**
**Unjust Enrichment**
**(New York Law)**
**(Against Glenmark)**

10218. New York Class Representatives Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen, Joseph Mcpheter, Steven Murdock, Glorimar Rodriguez, Phyllis Spuler, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10219. This cause of action is brought on behalf of the New York-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10220. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10221. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10222. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10223. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10224. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10225. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 690**
**Breach of Implied Warranty**
**(N.Y. U.C.C. Law §2-314)**
**(Against Glenmark)**

10226. New York Class Representatives Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen, Joseph Mcpheter, Steven Murdock, Glorimar Rodriguez, Phyllis Spuler, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10227. This cause of action is brought on behalf of the New York-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10228. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representatives and members of the New York Class and was in the business of selling such products.

10229. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

- 2160 -

10230. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10231. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10232. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10233. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10234. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

10235. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10236. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10237. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**26.  Causes of Action on Behalf of the North Carolina-Glenmark Classes**

**COUNT 691**
**Violation of the North Carolina Unfair and Deceptive Trade Practices Act**
**(N.C. Gen. Stat. Ann. §75-1.1, *et seq.*)**
**(Against Glenmark)**

10238. North Carolina Class Representatives Acia D'amore, Patricia Frazier, Teresa Lee, Sharon Parks, Dennis Robbins, and Julie Turner incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10239. This cause of action is brought on behalf of the North Carolina-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10240. Defendant was and is engaged in "commerce" within the meaning of N.C. Gen. Stat. Ann. §75-1.1(b).

10241. The North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," N.C. Gen. Stat. Ann. §75-1.1(a), and provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the law.  N.C. Gen. Stat. Ann. §75-16.

10242. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10243. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the North Carolina UDTPA.

10244. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10245. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10246. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10247. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10248. Plaintiffs and the Class members were aggrieved by Defendant's violations of the North Carolina UDTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10249. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10250. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10251. As a result of Defendant's violations of the North Carolina UDTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the North Carolina UDTPA.

**COUNT 692**
**Unjust Enrichment**
**(North Carolina Law)**
**(Against Glenmark)**

10252. North Carolina Class Representatives Acia D'amore, Patricia Frazier, Teresa Lee, Sharon Parks, Dennis Robbins, and Julie Turner incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10253. This cause of action is brought on behalf of the North Carolina-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10254. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10255. The benefit provided by Plaintiffs and the Class members was not conferred gratuitously, and in exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10256. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10257. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10258. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10259. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

## COUNT 693
### Breach of Implied Warranty
### (N.C. Gen. Stat. Ann. §25-2-314)
### (Against Glenmark)

10260. North Carolina Class Representatives Acia D'amore, Patricia Frazier, Teresa Lee, Sharon Parks, Dennis Robbins, and Julie Turner incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10261. This cause of action is brought on behalf of the North Carolina-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10262. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to North Carolina Class Representatives and members of the North Carolina Class and was in the business of selling such products.

10263. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10264. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10265. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10266. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10267. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10268. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

10269. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10270. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10271. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 27.    Causes of Action on Behalf of the Ohio-Glenmark Classes

### COUNT 694
### Unjust Enrichment
### (Ohio Law)
### (Against Glenmark)

10272. Ohio Class Representatives Michael Galloway and Patricia Hess incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10273. This cause of action is brought on behalf of the Ohio-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10274. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10275. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10276. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10277. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10278. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10279. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 695**
**Breach of Implied Warranty**
**(Ohio Rev. Code Ann. §1302.27)**
**(Against Glenmark)**

10280. Ohio Class Representatives Michael Galloway and Patricia Hess incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10281. This cause of action is brought on behalf of the Ohio-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10282. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Ohio Class Representatives and members of the Ohio Class and was in the business of selling such products.

10283. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10284. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10285. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10286. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10287. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10288. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

10289. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10290. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10291. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 28.   Causes of Action on Behalf of the Oklahoma-Glenmark Classes

### COUNT 696
### Violation of the Oklahoma Consumer Protection Act
### (Okla. Stat. tit. 15, §751, *et seq.*)
### (Against Glenmark)

10292. Oklahoma Class Representative Demarco Grayson incorporates the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10293. This cause of action is brought on behalf of the Oklahoma-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10294. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Okla. Stat. tit. 15, §752(1).

10295. Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Okla. Stat. tit. 15, §752(2).

10296. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Okla. Stat. tit. 15, §752(7).

10297. The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits numerous unlawful acts, including misleading representations, false advertisements, and false statements. Okla. Stat. tit. 15, §753.   The Oklahoma CPA defines "[d]eceptive trade practice" as "a misrepresentation, omission or other practice that has deceived or . . . mislead a person to the detriment of that person."   Okla. Stat. tit. 15, §752(13).   The Oklahoma CPA defines "[u]nfair trade practice" as "any practice which offends established public policy or if the practice is

immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Okla. Stat.

tit. 15, §752(14).

10298. The Oklahoma CPA makes unlawful specific acts, including:

(a)     "[m]ak[ing] a false representation, knowingly or with reason to know, as to
        the characteristics, ingredients, uses, benefits, alterations, or quantities of
        the subject of a consumer transaction" (Okla. Stat. tit. 15, §753(5));

(b)     "[r]epresent[ing], knowingly or with reason to know, that the subject of a
        consumer transaction is of a particular standard, style or model, if it is of
        another" (Okla. Stat. tit. 15, §753(7));

(c)     "[a]dvertis[ing], knowingly or with reason to know, the subject of a
        consumer transaction with intent not to sell it as advertised" (Okla. Stat. tit.
        15, §753(8)); and

(d)     "[c]ommit[ing] an unfair or deceptive trade practice as defined in Section
        752" (Okla. Stat. tit. 15, §753(20)).

10299. In the course of its business, Defendant, directly or through its agents, employees,

and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting,

omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-

Containing Products, including by printing expiration dates on its labels that exceeded the time

period during which the products remained stable and, thus, resulting in higher, undisclosed, and

unsafe levels of NDMA as time passed.

10300. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing,

and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or

commerce, in violation of the Oklahoma CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics,
        uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular
        standard, quality, and grade when they are not;

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

10301. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

10302. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

10303. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10304. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10305. Plaintiff and the Class members were aggrieved by Defendant's violations of Oklahoma CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10306. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10307. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10308. As a result of Defendant's violations of the Oklahoma CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Oklahoma CPA.

<div align="center">

**COUNT 697**
**Unjust Enrichment**
**(Oklahoma Law)**
**(Against Glenmark)**

</div>

10309. Oklahoma Class Representative Demarco Grayson incorporates the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10310. This cause of action is brought on behalf of the Oklahoma-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10311. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10312. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10313. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10314. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10315. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10316. Plaintiff and the Class members do not have an adequate remedy at law.

## COUNT 698
### Breach of Implied Warranty
### (Okla. Stat. tit. 12A §2-314)
### (Against Glenmark)

10317. Oklahoma Class Representative Demarco Grayson incorporates the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10318. This cause of action is brought on behalf of the Oklahoma-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10319. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Oklahoma Class Representatives and members of the Oklahoma Class and was in the business of selling such products.

10320. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10321. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10322. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10323. Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10324. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10325. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

10326. Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10327. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10328. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 29.    Causes of Action on Behalf of the Oregon-Glenmark Classes

### COUNT 699
### Violation of the Oregon Unlawful Trade Practices Act
### (Or. Rev. Stat. Ann. §646.605, *et seq.*)
### (Against Glenmark)

10329. Oregon Class Representative Kristi Ledbetter incorporates the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10330. This cause of action is brought on behalf of the Oregon-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10331. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Or. Rev. Stat. Ann. §646.605(4).

10332. The Ranitidine-Containing Products are "goods" within the meaning of Or. Rev. Stat. Ann. §646.605(6).

10333. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Or. Rev. Stat. Ann. §646.605(8).

10334. The Oregon Unlawful Trade Practices Act ("Oregon UTPA") prohibits "unlawful practice . . . in the course of the person's business." Or. Rev. Stat. Ann. §646.608(1).

10335. The Oregon UTPA makes unlawful specific acts, including:

(a)    "[r]epresent[ing] that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have" (Or. Rev. Stat. Ann. §646.608(1)(e));

(b)    "[r]epresent[ing] that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if the real estate, goods or services are of another" (Or. Rev. Stat. Ann. §646.608(1)(g));

(c)    "[a]dvertis[ing] real estate, goods or services with intent not to provide the real estate, goods or services as advertised" (Or. Rev. Stat. Ann. §646.608(1)(i)); and

(d)    "[e]ngag[ing] in any other unfair or deceptive conduct in trade or commerce" (Or. Rev. Stat. Ann. §646.608(1)(u)).

10336. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oregon UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10337. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Oregon UTPA, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

10338. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

10339. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

10340. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10341. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10342. Plaintiff and the Class members were aggrieved by Defendant's violations of the Oregon UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10343. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10344. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10345. As a result of Defendant's violations of the Oregon UTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Oregon UTPA.

**COUNT 700**
**Unjust Enrichment**
**(Oregon Law)**
**(Against Glenmark)**

10346. Oregon Class Representative Kristi Ledbetter incorporates the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10347. This cause of action is brought on behalf of the Oregon-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10348. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10349. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.   Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10350. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10351. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10352. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10353. There is no express contract governing this dispute.

10354. Plaintiff and the Class members do not have an adequate remedy at law.

<div style="text-align:center">

**COUNT 701**
**Breach of Implied Warranty**
**(Or. Rev. Stat. Ann. §72.3140)**
**(Against Glenmark)**

</div>

10355. Oregon   Class   Representative   Kristi   Ledbetter   incorporates   the   preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10356. This cause of action is brought on behalf of the Oregon-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10357. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Oregon Class Representatives and members of the Oregon Class and was in the business of selling such products.

10358. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10359. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10360. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10361. Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10362. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10363. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

10364. Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10365. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10366. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

30.     **Causes of Action on Behalf of the Pennsylvania-Glenmark Classes**

## COUNT 702
**Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**(73 Pa. Cons. Stat. §201-1,** *et seq.***)**
**(Against Glenmark)**

10367. Pennsylvania Class Representatives Nicholas Hazlett, Felicia Ball and Elmer Cook incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10368. This cause of action is brought on behalf of the Pennsylvania-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10369. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of 73 Pa. C.S. §201-2(2).

10370. Plaintiffs and the Class members purchased the Ranitidine-Containing Products "primarily for personal, family or household purposes" within the meaning of 73 Pa. C.S. §201-9.2(a).

10371. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of 73 Pa. C.S. §201-2(3).

10372. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. C.S. §201-3.

10373. The Pennsylvania CPL makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (73 Pa. C.S. §201-2(4)(v));

(b)    "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (73 Pa. C.S. §201-2(4)(vii));

(c)    "[a]dvertising goods or services with intent not to sell them as advertised" (73 Pa. C.S. §201-2(4)(ix)); and

(d)    "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" (73 Pa. C.S. §201-2(4)(xxi)).

10374. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10375. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Pennsylvania CPL, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)    engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

10376. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

- 2187 -

10377. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10378. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10379. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10380. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

10381. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Pennsylvania CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10382. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10383. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10384. As a result of Defendant's violations of the Pennsylvania CPL, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Pennsylvania CPL.

<div align="center">

**COUNT 703**
**Unjust Enrichment**
**(Pennsylvania Law)**
**(Against Glenmark)**

</div>

10385. Pennsylvania Class Representatives Nicholas Hazlett, Felicia Ball and Elmer Cook incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10386. This cause of action is brought on behalf of the Pennsylvania-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10387. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10388. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom

10389. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10390. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10391. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10392. There is no express contract governing this dispute.

10393. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 704
## Breach of Implied Warranty
## (13 Pa. Cons. Stat. §2314)
## (Against Glenmark)

10394. Pennsylvania Class Representatives Nicholas Hazlett, Felicia Ball and Elmer Cook incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10395. This cause of action is brought on behalf of the Pennsylvania-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10396. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Pennsylvania Class Representatives and members of the Pennsylvania Class and was in the business of selling such products.

10397. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10398. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10399. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10400. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10401. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10402. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

10403. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10404. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10405. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 31.    Causes of Action on Behalf of the Puerto Rico-Glenmark Classes

### COUNT 705
### Unjust Enrichment
### (Puerto Rico Law)
### (Against Glenmark)

10406. Puerto Rico Class Representatives Sonia Diaz and Gloria Colon incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10407. This cause of action is brought on behalf of the Puerto Rico-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10408. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10409. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10410. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

10411. Defendants' enrichment – the monies obtained from Plaintiffs' and the Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and the Class members' impoverishment – i.e., Plaintiffs' and the Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

10412. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10413. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10414. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 706**
**Breach of Implied Warranty**
**(P.R. Laws Ann. tit. 31, §3841)**
**(Against Glenmark)**

10415. Puerto Rico Class Representatives Sonia Diaz and Gloria Colon incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10416. This cause of action is brought on behalf of the Puerto Rico-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10417. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Puerto Rico Class Representatives and members of the Puerto Rico Class and was in the business of selling such products.

10418. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10419. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10420. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10421. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10422. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10423. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

10424. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10425. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10426. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 32.   Causes of Action on Behalf of the South Carolina-Glenmark Classes

### COUNT 707
### Violation of the South Carolina Unfair Trade Practices Act
### (S.C. Code Ann. §39-5-10, *et seq.*)
### (Against Glenmark)

10427. South Carolina Class Representatives Annie Johnson, Michael Futrell, Jeffery Gunwall, Sharon Mclellan, and Marianella Villanueva incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10428. This cause of action is brought on behalf of the South Carolina-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10429. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of S.C. Code Ann. §39-5-10(a).

10430. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of S.C. Code Ann. §39-5-10(b).

10431. The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  S.C. Code Ann. §39-5-20(a).

10432. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10433. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the South Carolina UTPA.

10434. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10435. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10436. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10437. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10438. Plaintiffs and the Class members were aggrieved by Defendant's violations of the South Carolina UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10439. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10440. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10441. As a result of Defendant's violations of the South Carolina UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the South Carolina UTPA.

<div align="center">

**COUNT 708**
**Unjust Enrichment**
**(South Carolina Law)**
**(Against Glenmark)**

</div>

10442. South Carolina Class Representatives Annie Johnson, Michael Futrell, Jeffery Gunwall, Sharon Mclellan, and Marianella Villanueva incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10443. This cause of action is brought on behalf of the South Carolina-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10444. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10445. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10446. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10447. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10448. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10449. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 709
### Breach of Implied Warranty
### (S.C. Code Ann. §36-2-314)
### (Against Glenmark)

10450. South Carolina Class Representatives Annie Johnson, Michael Futrell, Jeffery Gunwall, Sharon Mclellan, and Marianella Villanueva incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10451. This cause of action is brought on behalf of the South Carolina-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10452. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to South Carolina Class Representatives and members of the South Carolina Class and was in the business of selling such products.

10453. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10454. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10455. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10456. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10457. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10458. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

10459. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10460. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10461. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

33.     **Causes of Action on Behalf of the Tennessee-Glenmark Classes**

**COUNT 710**
**Violation of the Tennessee Consumer Protection Act of 1977**
**(Tenn. Code Ann. §47-18-101, *et seq.*)**
**(Against Glenmark)**

10462. Tennessee Class Representatives Angela Taylor, Kenneth Hix, Eva Broughton, Rebecca Howard, Pam Turner, and Billie Walker incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10463. This cause of action is brought on behalf of the Tennessee-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10464. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tenn. Code Ann. §47-18-103(14).

10465. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tenn. Code Ann. §47-18-103(3).

10466. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tenn. Code Ann. §47-18-103(8).

10467. Defendant was and is engaged in "[t]rade" or "commerce" or "consumer transaction[s]" within the meaning of Tenn. Code Ann. §47-18-103(20).

10468. The Tennessee Consumer Protection Act of 1977 ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. §47-18-104(a).

10469. The Tennessee CPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tenn. Code Ann. §47-18-104(b)(5));

(b)  "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (Tenn. Code Ann. §47-18-104(b)(7)); and

(c)  "[a]dvertising goods or services with intent not to sell them as advertised" (Tenn. Code Ann. §47-18-104(b)(9)).

10470. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10471. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Tennessee CPA, including:

(a)  representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)  representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)  advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

10472. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10473. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10474. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10475. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10476. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Tennessee CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10477. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10478. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10479. As a result of Defendant's violations of the Tennessee CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Tennessee CPA.

## COUNT 711
### Unjust Enrichment
### (Tennessee Law)
### (Against Glenmark)

10480. Tennessee Class Representatives Angela Taylor, Kenneth Hix, Eva Broughton, Rebecca Howard, Pam Turner, and Billie Walker incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10481. This cause of action is brought on behalf of the Tennessee-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10482. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10483. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10484. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10485. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10486. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10487. There is no existing, enforceable contract governing this dispute.

10488. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 712**
**Breach of Implied Warranty**
**(Tenn. Code Ann. §47-2-314)**
**(Against Glenmark)**

</div>

10489. Tennessee Class Representatives Angela Taylor, Kenneth Hix, Eva Broughton, Rebecca Howard, Pam Turner, and Billie Walker incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10490. This cause of action is brought on behalf of the Tennessee-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10491. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Tennessee Class Representatives and members of the Tennessee Class and was in the business of selling such products.

10492. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10493. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10494. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10495. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10496. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10497. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

10498. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10499. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10500. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 34.    Causes of Action on Behalf of the Texas-Glenmark Classes

### COUNT 713
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
### (Tex. Bus. & Com. Code Ann. §17.41, *et seq.*)
### (Against Glenmark)

10501. Texas Class Representatives Timberly Goble, Marianella Villanueva, Marilyn Abraham, Maria Eames, Tina Howard, Christopher Johnson, Gina Martinez, Tonya Overstreet, Gregory Alan Wayland, and Sylvia Yoshida incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10502. This cause of action is brought on behalf of the Texas-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10503. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

10504. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

10505. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

10506. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

10507. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

10508. The Texas DTPA makes unlawful specific acts, including:

(a)     "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

(b)     "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

(c)     "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

10509. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10510. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

10511. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10512. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10513. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10514. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10515. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

10516. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10517. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10518. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10519. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

10520. As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

**COUNT 714**
**Unjust Enrichment**
**(Texas Law)**
**(Against Glenmark)**

10521. Texas Class Representatives Timberly Goble, Marianella Villanueva, Marilyn Abraham, Maria Eames, Tina Howard, Christopher Johnson, Gina Martinez, Tonya Overstreet, Gregory Alan Wayland, and Sylvia Yoshida incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10522. This cause of action is brought on behalf of the Texas-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10523. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10524. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10525. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10526. It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10527. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10528. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

## COUNT 715
### Breach of Implied Warranty
### (Tex. Bus. & Com. Code Ann. §2-314)
### (Against Glenmark)

10529. Texas Class Representatives Timberly Goble, Marianella Villanueva, Marilyn Abraham, Maria Eames, Tina Howard, Christopher Johnson, Gina Martinez, Tonya Overstreet, Gregory Alan Wayland, and Sylvia Yoshida incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10530. This cause of action is brought on behalf of the Texas-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10531. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

10532. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10533. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10534. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10535. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10536. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10537. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

10538. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10539. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10540. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 35.     Causes of Action on Behalf of the Utah-Glenmark Classes

### COUNT 716
### Violation of the Utah Consumer Sales Practices Act
### (Utah. Code Ann. §13-11-1, *et seq.*)
### (Against Glenmark)

10541. Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10542. This cause of action is brought on behalf of the Utah-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10543. Defendant is a "[s]upplier" within the meaning of Utah Code Ann. §13-11-3(6).

10544. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Utah Code Ann. §13-11-3(5).

10545. Defendant was and is engaged in "consumer transactions" within the meaning of Utah Code Ann. §13-11-3(2)(a).

10546. The Utah Consumer Sales Practices Act ("Utah CSPA") prohibits any "deceptive act or practice by a supplier in connection with a consumer transaction." Utah Code Ann. §13-11-4(1). "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. Utah Code Ann. §13-11-5(1).

10547. The Utah CSPA makes unlawful specific acts, including:

(a)    "indicat[ing] that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" (Utah Code Ann. §13-11-4(2)(a)); and

(b)    "indicat[ing] that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not" (Utah Code Ann. §13-11-4(2)(b)).

10548. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah CSPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10549. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Utah CSPA, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have; and

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not.

10550. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

10551. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

10552. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10553. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10554. Plaintiff and the Class members were aggrieved by Defendant's violations of the Utah CSPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10555. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10556. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10557. As a result of Defendant's violations of the Utah CSPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Utah CSPA.

## COUNT 717
### Violation of the Utah Truth in Advertising Law
### (Utah Code Ann. §13-11a-1, *et seq.*)
### (Against Glenmark)

10558. Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10559. This cause of action is brought on behalf of the Utah-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10560. Defendant is a "[s]upplier" within the meaning of Utah Code Ann. §13-11a-2(17).

10561. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Utah Code Ann. §13-11a-2(7).

10562. The Ranitidine-Containing Products are "goods" within the meaning of Utah Code Ann. §13-11a-2(4).

10563. The Utah Truth in Advertising Law ("Utah TAL") prohibits any deceptive practice undertaken "in the course of a person's business." Utah Code Ann. §13-11a-3(1).

10564. The Utah TAL makes unlawful specific acts, including:

    (a)    "represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have" (Utah Code Ann. §13-11a-3(1)(e));

    (b)    "represent[ing] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Utah Code Ann. §13-11a-3(1)(g));

(c)     "advertis[ing] goods or services with intent not to sell them as advertised" (Utah Code Ann. §13-11a-3(1)(i)); and

(d)     "engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding" (Utah Code Ann. §13-11a-3(1)(t)).

10565. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah TAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10566. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Utah TAL, including:

(a)     representing that Ranitidine-Containing Products were both safe and effective for the lifetime of the product, when in fact, they were not;

(b)     representing that consumption of Ranitidine-Containing Products had characteristics, ingredients, uses, benefits, or qualities that they do not have;

(c)     representing that Ranitidine-Containing Products are of a particular standard, quality, or grade when they are not;

(d)     advertising Ranitidine-Containing Products with the intent not to sell them as advertised; and

(e)     engaging in any other conduct that creates a likelihood of confusion.

10567. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

10568. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

10569. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10570. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10571. Plaintiff and the Class members were aggrieved by Defendant's violations of the Utah TAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10572. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10573. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10574. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiff in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seeks all damages and relief to which Plaintiff and the Class members are entitled.

10575. As a result of Defendant's violations of the Utah TAL, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Utah TAL.

## COUNT 718
### Unjust Enrichment
### (Utah Law)
### (Against Glenmark)

10576. Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10577. This cause of action is brought on behalf of the Utah-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10578. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10579. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10580. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10581. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10582. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10583. Plaintiff and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 719**
**Breach of Implied Warranty**
**(Utah. Code Ann. §70A-2-314)**
**(Against Glenmark)**

</div>

10584. Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10585. This cause of action is brought on behalf of the Utah-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10586. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Utah Class Representatives and members of the Utah Class and was in the business of selling such products.

10587. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10588. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10589. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10590. Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10591. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10592. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

10593. Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10594. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10595. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

36.     **Causes of Action on Behalf of the Vermont-Glenmark Classes**

**COUNT 720**
**Violation of the Vermont Consumer Fraud Act**
**(Vt. Stat. Ann. tit. 9, §2451,** *et seq.***)**
**(Against Glenmark)**

10596. Vermont Class Representatives Renee Clark, Eric Ragis, and Lisa Ragis incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10597. This cause of action is brought on behalf of the Vermont-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10598. Defendant is a "[s]eller" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(c).

10599. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(a).

10600. The Ranitidine-Containing Products are "[g]oods" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(b).

10601. The Vermont consumer fraud act ("Vermont CFA") prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." Vt. Stat. Ann. tit. 9, §2453(a).

10602. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Vermont CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10603. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Vermont CFA.

10604. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10605. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10606. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10607. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10608. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Vermont CFA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10609. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10610. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10611. As a result of Defendant's violations of the Vermont CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Vermont CFA.

<div align="center">

**COUNT 721**
**Unjust Enrichment**
**(Vermont Law)**
**(Against Glenmark)**

</div>

10612. Vermont Class Representatives Renee Clark, Eric Ragis, and Lisa Ragis incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10613. This cause of action is brought on behalf of the Vermont-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10614. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10615. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10616. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10617. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10618. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10619. There is no express contract governing this dispute.

10620. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 722**
**Breach of Implied Warranty**
**(Vt. Stat. Ann. tit. 9A§2-314)**
**(Against Glenmark)**

10621. Vermont Class Representatives Renee Clark, Eric Ragis, and Lisa Ragis incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10622. This cause of action is brought on behalf of the Vermont-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10623. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Vermont Class Representatives and members of the Vermont Class and was in the business of selling such products.

10624. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10625. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10626. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10627. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10628. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10629. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

10630. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10631. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10632. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 37.     Causes of Action on Behalf of the Virginia-Glenmark Classes

**COUNT 723**
**Violation of the Virginia Consumer Protection Act**
**(Va. Code Ann. §59.1-196, *et seq.*)**
**(Against Glenmark)**

10633. Virginia Class Representatives Karen Foster, Cheryl Banks, and Lynn Costley incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10634. This cause of action is brought on behalf of the Virginia-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10635. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Va. Code Ann. §59.1-198.

10636. Defendant was and is a "[s]upplier" within the meaning of Va. Code Ann. §59.1-198.

10637. The Ranitidine-Containing Products are "[g]oods" within the meaning of Va. Code Ann. §59.1-198.

10638. Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Va. Code Ann. §59.1-198.

10639. The Virginia Consumer Protection Act ("Virginia CPA") prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Va. Code Ann. §59.1-200(A).

10640. The Virginia CPA makes unlawful specific acts, including:

(a)   "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" (Va. Code Ann. §59.1-200(A)(5));

(b)   "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model" (Va. Code Ann. §59.1-200(A)(6));

(c)   "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" (Va. Code Ann. §59.1-200(A)(8)); and

(d)   "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" (Va. Code Ann. §59.1-200(A)(14)).

10641. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10642. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Virginia CPA, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

10643. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10644. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10645. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10646. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10647. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

10648. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Virginia CPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10649. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10650. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10651. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

10652. As a result of Defendant's violations of the Virginia CPA, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Virginia CPA.

## COUNT 724
## Unjust Enrichment
## (Virginia Law)
## (Against Glenmark)

10653. Virginia Class Representatives Karen Foster, Cheryl Banks, and Lynn Costley incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10654. This cause of action is brought on behalf of the Virginia-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10655. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10656. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10657. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10658. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10659. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10660. There is no express contract governing this dispute.

10661. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 725**
**Breach of Implied Warranty**
**(Va. Code Ann. §8.2-314)**
**(Against Glenmark)**

</div>

10662. Virginia Class Representatives Karen Foster, Cheryl Banks, and Lynn Costley incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10663. This cause of action is brought on behalf of the Virginia-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10664. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Virginia Class Representatives and members of the Virginia Class and was in the business of selling such products.

10665. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10666. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10667. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10668. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10669. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10670. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

10671. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10672. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10673. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 38.   Causes of Action on Behalf of the Washington-Glenmark Classes

**COUNT 726**
**Violation of the Washington Consumer Protection Act**
**(Wash. Rev. Code Ann. §19.86.010, *et seq.*)**
**(Against Glenmark)**

10674. Washington Class Representatives Steve Fischer, Dave Garber, and Bridget Peck incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10675. This cause of action is brought on behalf of the Washington-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10676. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Wash. Rev. Code Ann. §19.86.010(1).

10677. The Ranitidine-Containing Products are "[a]ssets" within the meaning of Wash. Rev. Code Ann. §19.86.010(3).

10678. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Wash. Rev. Code Ann. §19.86.010(2).

10679. The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Wash. Rev. Code Ann. §19.86.020.

10680. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10681. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington CPA.

10682. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10683. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10684. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10685. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10686. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Washington CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10687. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10688. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10689. On June 22, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Wash. Rev. Code §19.86.095 to the Attorney General of the State of Washington.

10690. As a result of Defendant's violations of the Washington CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Washington CPA.

<div align="center">

**COUNT 727**
**Unjust Enrichment**
**(Washington Law)**
**(Against Glenmark)**

</div>

10691. Washington Class Representatives Steve Fischer, Dave Garber, and Bridget Peck incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10692. This cause of action is brought on behalf of the Washington-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10693. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10694. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10695. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10696. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10697. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10698. There is no express contract governing this dispute.

10699. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 728**
**Breach of Implied Warranty**
**(Wash. Rev. Code §62A.2-314)**
**(Against Glenmark)**

</div>

10700. Washington Class Representatives Steve Fischer, Dave Garber, and Bridget Peck incorporate the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10701. This cause of action is brought on behalf of the Washington-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10702. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Washington Class Representatives and members of the Washington Class and was in the business of selling such products.

10703. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10704. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10705. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10706. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10707. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10708. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

10709. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10710. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10711. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

39.    **Causes of Action on Behalf of the West Virginia-Glenmark Classes**

**COUNT 729**
**Unjust Enrichment**
**(West Virginia Law)**
**(Against Glenmark)**

10712. West Virginia Class Representative Mynetta Hastings incorporates the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10713. This cause of action is brought on behalf of the West Virginia-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10714. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10715. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10716. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10717. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10718. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10719. There is no express contract governing this dispute.

10720. Plaintiff and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 730**
**Breach of Implied Warranty**
**(W. Va. Code §46-2-314)**
**(Against Glenmark)**

</div>

10721. West Virginia Class Representative Mynetta Hastings incorporates the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10722. This cause of action is brought on behalf of the West Virginia-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10723. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to West Virginia Class Representatives and members of the West Virginia Class and was in the business of selling such products.

10724. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10725. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10726. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10727. Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10728. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10729. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

10730. Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10731. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10732. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 40.  Causes of Action on Behalf of the Wisconsin-Glenmark Classes

<div align="center">

**COUNT 731**
**Violation of the Wisconsin Deceptive Trade Practices Act**
**(Wis. Stat. Ann. §100.18, *et seq.*)**
**(Against Glenmark)**

</div>

10733. Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10734. This cause of action is brought on behalf of the Wisconsin-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10735. Defendant is a "person, firm, corporation or association" within the meaning of Wis. Stat. Ann. §100.18(1).

10736. Plaintiff and the Class members are members of "the public" within the meaning of Wis. Stat. Ann. §100.18(1).

10737. The Ranitidine-Containing Products are "merchandise" within the meaning of Wis. Stat. Ann. §100.18(1).

10738. The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits any "assertion, representation or statement of fact which is untrue, deceptive or misleading."  Wis. Stat. Ann. §100.18(1).

10739. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Wisconsin DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10740. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Wisconsin DTPA.

10741. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

10742. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

10743. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10744. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10745. Plaintiff and the Class members were aggrieved by Defendant's violations of the Wisconsin DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10746. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10747. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10748. As a result of Defendant's violations of the Wisconsin DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Wisconsin DTPA.

## COUNT 732
### Unjust Enrichment
### (Wisconsin Law)
### (Against Glenmark)

10749. Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10750. This cause of action is brought on behalf of the Wisconsin-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10751. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10752. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10753. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10754. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10755. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10756. There is no express contract governing this dispute.

10757. Plaintiff and the Class members do not have an adequate remedy at law.

## COUNT 733
## Breach of Implied Warranty
## (Wis. Stat. Ann. §402.314)
## (Against Glenmark)

10758. Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 46-52, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10759. This cause of action is brought on behalf of the Wisconsin-Glenmark Class (for the purpose of this section, "Class") against Glenmark (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10760. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Wisconsin Class Representatives and members of the Wisconsin Class and was in the business of selling such products.

10761. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10762. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10763. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10764. Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10765. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10766. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

10767. Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10768. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10769. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**D.     Causes of Action Against Sandoz**

10770. For the purposes of the subsequent causes of action against Defendant Sandoz, Plaintiffs are incorporating the following allegations by reference: paragraphs 60-62 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic Zantac); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469

(requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 845-867 (misrepresentations or omissions of material fact in labeling); and 475-483 (equitable tolling).

10771. Plaintiffs identified in the table below bring claims against Defendant Sandoz with respect to prescription Ranitidine on behalf of themselves and their respective State Subclasses under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| **Plaintiff Name** | **State(s) of Residence** |
|---|---|
| Daffeney Austin | Alabama |
| Lashonnah Gaitor | Alabama |
| Tammy Smith | Alaska, Missouri |
| Monica Costello | Arizona, Nevada |
| Jennifer Fox | Arizona |
| Armando Tapia | Arizona |
| Tina Culclager | Arkansas |
| Andy Green Jr. | Arkansas |
| Martha Summers | Arkansas, Mississippi, Missouri |
| Virginia Aragon | California |
| Golbenaz Bakhtiar | California |
| Royal Handy | California |
| Angel Cordero | Connecticut |
| Jeffrey Pisano | Colorado |
| Angel Vega | Connecticut |
| Kevin Nelson | District of Columbia |
| Irma Arcaya | Florida |
| Roy Armstrong | Florida, Georgia |
| Jeannie Black | Florida |
| Sonia Diaz | Florida, Puerto Rico |

| | |
|---|---|
| Michael Fesser | Florida |
| Karen Foster | Florida, Virginia |
| Michael Galloway | Florida, Ohio |
| Hattie Kelley | Florida |
| Marva Mccall | Florida |
| Clifton McKinnon | Florida |
| Ana Pereira | Florida |
| Daniel Taylor | Florida |
| Joyce Taylor | Florida |
| Michael Tomlinson | Florida |
| Earlene Green | Georgia |
| Leon Greene | Georgia |
| Tyrone Houston | Georgia |
| Kathy Jeffries | Georgia |
| Charlotte Sanders | Georgia |
| Paula Shells | Georgia |
| Cynthia Starr | Georgia |
| Angela Taylor | Georgia, Tennessee |
| Billy Naab | Idaho, Oklahoma, Washington |
| Vickie Anderson | Illinois |
| Heather Re | Illinois |
| Teresa Dowler | Indiana |
| Timberly Goble | Indiana, Kentucky, Missouri, Texas |
| Alyson Humphrey | Indiana |
| Rebecca Sizemore | Indiana |
| Tracy Wells | Indiana |
| Charles Longfield | Iowa |
| Tracy Losee | Iowa |
| Janet Asbury | Kentucky |

| Randy Jones | Louisiana |
| Jamie Mckay | Louisiana |
| Alberta Griffin | Maryland |
| Nicholas Hazlett | Maryland, Pennsylvania |
| Darlene Whittington-Coates | Maryland |
| Jose Amado | Massachusetts |
| Rafael Bermudez | Massachusetts, New Hampshire |
| Ana Guzman | Massachusetts |
| Michelle Smith | Massachusetts |
| Myra Allen | Michigan |
| Jody Beal | Michigan |
| Benny Cope | Michigan |
| Arthur Gamble | Michigan |
| Kenneth Hix | Michigan, Tennessee |
| Judy Wilmot | Michigan |
| Lakisha Wilson | Michigan |
| Sandra Erickson-Brown | Minnesota |
| Donald Northrup | Minnesota |
| Beverly Crosby | Mississippi |
| Dorothy King | Mississippi |
| Lora Mauffray | Mississippi |
| Korcis McMillian | Mississippi |
| Michelle Tinker | Mississippi |
| David Weatherly | Mississippi |
| Elaine Aaron | Missouri |
| Antrenise Campbell | Missouri |
| Lisa Deckard | Missouri |
| Cynthia Gibbs | Missouri |
| Brenda Newcomb | Missouri |

| | |
|---|---|
| David Rice | New Hampshire |
| James Adamo | New Jersey |
| Sayed Eldomiaty | New Jersey |
| Mary McMillian | New Jersey |
| Mary Moronski | New Jersey |
| Lynn White | New Jersey |
| Phyllis Gallegos | New Mexico |
| Josefina Griego | New Mexico |
| Carrie Martinez | New Mexico |
| Inez Mazon | New Mexico |
| Ernesto Sanchez | New Mexico |
| George Tapia | New Mexico |
| Silomie Clarke | New York |
| Nereida Cordero | New York |
| Benny Fazio | New York |
| Migdalia Kinney | New York |
| Mary McCullen | New York |
| Joseph Mcpheter | New York |
| Steven Murdock | New York |
| Glorimar Rodriguez | New York |
| Phyllis Spuler | New York |
| Mary Lou Wagner | New York |
| Acia D'amore | North Carolina |
| Patricia Frazier | North Carolina |
| Teresa Lee | North Carolina |
| Sharon Parks | North Carolina |
| Dennis Robbins | North Carolina |
| Julie Turner | North Carolina |
| Patricia Hess | Ohio |

| | |
|---|---|
| Demarco Grayson | Oklahoma |
| Kristi Ledbetter | Oregon |
| Felicia Ball | Pennsylvania |
| Elmer Cook | Pennsylvania |
| Gloria Colon | Puerto Rico |
| Annie Johnson | South Carolina |
| Michael Futrell | South Carolina |
| Jeffery Gunwall | South Carolina |
| Sharon Mclellan | South Carolina |
| Marianella Villanueva | South Carolina, Texas |
| Eva Broughton | Tennessee |
| Rebecca Howard | Tennessee |
| Pam Turner | Tennessee |
| Billie Walker | Tennessee |
| Marilyn Abraham | Texas |
| Maria Eames | Texas |
| Tina Howard | Texas |
| Christopher Johnson | Texas |
| Gina Martinez | Texas |
| Tonya Overstreet | Texas |
| Gregory Alan Wayland | Texas |
| Sylvia Yoshida | Texas |
| Teresa Waters | Utah |
| Renee Clark | Vermont |
| Eric Ragis | Vermont |
| Lisa Ragis | Vermont |
| Cheryl Banks | Virginia |
| Lynn Costley | Virginia |
| Steve Fischer | Washington |

| Dave Garber | Washington |
| Bridget Peck | Washington |
| Mynetta Hastings | West Virginia |
| Wendy Quezaire | Wisconsin |

**1.     Causes of Action on Behalf of the Alabama-Sandoz Classes**

**COUNT 734**
**Violation of the Alabama Deceptive Trade Practices Act**
**(Ala. Code §8-19-1, *et seq.*)**
**(Against Sandoz)**

10772. Alabama Class Representatives Daffeney Austin and Lashonnah Gaitor incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10773. This cause of action is brought on behalf of the Alabama-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10774. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of Ala. Code §8-19-3(5).

10775. Plaintiffs and the Class members are "consumer[s]" within the meaning of Ala. Code §8-19-3(2).

10776. The Ranitidine-Containing Products are "goods" within the meaning of Ala. Code §8-19-3(3).

10777. Defendant was and is engaged in "trade or commerce" within the meaning of Ala. Code §8-19-3(8).

10778. The Alabama Deceptive Trade Practices Act ("Alabama DTPA") prohibits "deceptive acts or practices in the conduct of any trade or commerce."  Ala. Code §8-19-5.

10779. The Alabama DTPA makes unlawful specific acts, including:

(a) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have" (Ala. Code §8-19-5(5));

(b) "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Ala. Code §8-19-5(7));

(c) "[a]dvertising goods or services with intent not to sell them as advertised" (Ala. Code §8-19-5(9)); and

(d) "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce" (Ala. Code §8-19-5(27)).

10780. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Alabama DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of N-Nitrosodimethylamine ("NDMA") as time passed.

10781. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Alabama DTPA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

10782. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10783. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10784. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10785. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10786. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

10787. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Alabama DTPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10788. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10789. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

10790. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Ala. Code §8-19-10(e) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

10791. As a result of Defendant's violations of the Alabama DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Alabama DTPA.

**COUNT 735**
**Unjust Enrichment**
**(Alabama Law)**
**(Against Sandoz)**

10792. Alabama Class Representatives Daffeney Austin and Lashonnah Gaitor incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10793. This cause of action is brought on behalf of the Alabama-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10794. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10795. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10796. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10797. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10798. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10799. Plaintiffs and the Class members do not have an adequate remedy at law.

### 2. Causes of Action on Behalf of the Alaska-Sandoz Classes

### COUNT 736
### Violation of the Alaska Unfair Trade Practices and Consumer Protection Act
### (Alaska Stat. Ann. §45.50.471, *et seq.*)
### (Against Sandoz)

10800. Alaska Class Representative Tammy Smith incorporates the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10801. This cause of action is brought on behalf of the Alaska-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10802. Plaintiff and the Class members are "consumer[s]" within the meaning of Alaska Stat. Ann. §45.50.561(a)(4).

10803. The Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce."  Alaska Stat. Ann. §45.50.471(a).

10804. The Alaska CPA makes unlawful specific acts, including:

    (a)    "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Alaska Stat. Ann. §45.50.471(b)(4));

    (b)    "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Alaska Stat. Ann. §45.50.471(b)(6));

    (c)    "advertising goods or services with intent not to sell them as advertised" (Alaska Stat. Ann. §45.50.471(b)(8));

    (d)    "engaging in any other conduct creating a likelihood of confusion or of misunderstanding and that misleads, deceives, or damages a buyer or a competitor in connection with the sale or advertisement of goods or services" (Alaska Stat. Ann. §45.50.471(b)(11)); and

    (e)    "using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived, or damaged" (Alaska Stat. Ann. §45.50.471(b)(12)).

10805. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Alaska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10806. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Alaska CPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

      (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

      (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

10807. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

10808. Defendant's misrepresentations and omissions regarding the expiration of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

10809. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10810. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10811. Plaintiff and the Class members were aggrieved by Defendant's violations of the Alaska CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10812. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10813. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10814. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiff in MDL 2924 sent a notice letter pursuant to Alaska Stat. Ann. §45.50.535(b)(1) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seeks all damages and relief to which Plaintiff and the Class members are entitled.

10815. As a result of Defendant's violations of the Alaska CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Alaska CPA.

<div align="center">

**COUNT 737**
**Unjust Enrichment or Quasi-Contract**
**(Alaska Law)**
**(Against Sandoz)**

</div>

10816. Alaska Class Representative Tammy Smith incorporates the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10817. This cause of action is brought on behalf of the Alaska-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10818. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10819. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10820. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10821. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10822. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10823. Plaintiff and the Class members do not have an adequate remedy at law.

### 3. Causes of Action on Behalf of the Arizona-Sandoz Classes

### COUNT 738
### Violation of the Arizona Consumer Fraud Act
### (Ariz. Rev. Stat. Ann. §44-1521, *et seq.*)
### (Against Sandoz)

10824. Arizona Class Representatives Monica Costello, Jennifer Fox, and Armando Tapia incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10825. This cause of action is brought on behalf of the Arizona-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10826. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(6).

10827. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(5).

10828. The Arizona Consumer Fraud Act ("Arizona CFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." Ariz. Rev. Stat. Ann. §44-1522(A).

10829. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Arizona CFA by recklessly, wantonly, knowingly, and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed..

10830. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Arizona CFA.

10831. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10832. Defendant's misreprsentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a unform manner.

10833. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10834. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10835. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

10836. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Arizona CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10837. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10838. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10839. As a result of Defendant's violations of the Arizona CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

## COUNT 739
## Unjust Enrichment
## (Arizona Law)
## (Against Sandoz)

10840. Arizona Class Representatives Monica Costello, Jennifer Fox, and Armando Tapia incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10841. This cause of action is brought on behalf of the Arizona-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10842. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10843. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10844. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10845. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10846. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10847. Plaintiffs and the Class members do not have an adequate remedy at law.

### 4.     Causes of Action on Behalf of the Arkansas-Sandoz Classes

### COUNT 740
### Violation of the Arkansas Deceptive Trade Practices Act
### (Ark. Code Ann. §4-88-101, *et seq.*)
### (Against Sandoz)

10848. Arkansas Class Representatives Tina Culclager, Andy Green Jr., and Martha Summers incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10849. This cause of action is brought on behalf of the Arkansas-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10850. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ark. Code Ann. §4-88-102(5).

10851. The Ranitidine-Containing Products are "[g]oods" within the meaning of Ark. Code Ann. §4-88-102(4).

10852. The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices."  Ark. Code Ann. §4-88-107(a).

10853. The Arkansas DTPA makes unlawful specific acts, including:

(a)     "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" (Ark. Code Ann. §4-88-107(a)(1));

(b)     "[a]dvertising the goods or services with the intent not to sell them as advertised" (Ark. Code Ann. §4-88-107(a)(3)); and

(c)     "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" (Ark. Code Ann. §4-88-107(a)(10)).

10854. The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission . . . ." Ark. Code Ann. §4-88-108(a).

10855. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10856. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Arkansas DTPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

10857. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10858. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10859. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10860. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10861. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and

continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

10862. Plaintiffs and the Class members were aggrieved by Defendant's violations of Arkansas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10863. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10864. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

10865. As a result of Defendant's violations of the Arkansas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

**COUNT 741**
**Unjust Enrichment**
**(Arkansas Law)**
**(Against Sandoz)**

10866. Arkansas Class Representatives Tina Culclager, Andy Green Jr., and Martha Summers incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10867. This cause of action is brought on behalf of the Arkansas-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10868. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10869. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10870. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10871. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10872. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10873. There is no valid, legal, and binding contract governing this dispute.

10874. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 742**
**Breach of Implied Warranty**
**(Ark. Code Ann. §4-2-314)**
**(Against Sandoz)**

10875. Arkansas Class Representatives Tina Culclager, Andy Green Jr., and Martha Summers incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10876. This cause of action is brought on behalf of the Arkansas-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10877. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arkansas Class Representatives and members of the Arkansas Class and was in the business of selling such products.

10878. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10879. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10880. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10881. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10882. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10883. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

10884. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10885. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10886. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 5.   Causes of Action on Behalf of the California-Sandoz Classes

<div align="center">

**COUNT 743**
**Violation of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code §17200, *et seq.*)**
**(Against Sandoz)**

</div>

10887. California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10888. This cause of action is brought on behalf of the California-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10889. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

10890. Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

10891. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and

failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

10892. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL.  These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

10893. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10894. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10895. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10896. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10897. Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, CAL. HEALTH & SAFETY CODE §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

10898. Defendant conduct also consitutes "unfair" business acts or practies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

10899. Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21

C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, *see* Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

10900. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10901. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10902. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10903. Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

**COUNT 744**
**Violation of the California False Advertising Law**
**(Cal. Bus. & Prof. Code §17500, *et seq.*)**
**(Against Sandoz)**

10904. California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10905. This cause of action is brought on behalf of the California-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10906. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

10907. The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code §17500.

10908. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products

remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10909. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

10910. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10911. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10912. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10913. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10914. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10915. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10916. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10917. As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

## COUNT 745
### Violation of the California Consumers Legal Remedies Act
### (Cal. Civ. Code §1750, *et seq.*)
### (Against Sandoz)

10918. California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10919. This cause of action is brought on behalf of the California-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10920. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

10921. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

10922. The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

10923. The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §1770(a).

10924. The California CLRA makes unlawful specific acts, including:

    (a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

    (b)    "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

(c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

(d)     "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

10925. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10926. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

10927. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10928. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10929. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10930. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10931. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

10932. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10933. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10934. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

10935. Pursuant to Cal. Civ. Code §1780(a), Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

**COUNT 746**
**Unjust Enrichment or Quasi-Contract**
**(California Law)**
**(Against Sandoz)**

10936. California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10937. This cause of action is brought on behalf of the California-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10938. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10939. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10940. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10941. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10942. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10943. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 747
### Breach of Implied Warranty
### (Cal. Com. Code §2314)
### (Against Sandoz)

10944. California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10945. This cause of action is brought on behalf of the California-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10946. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to California Class Representatives and members of the California Class and was in the business of selling such products.

10947. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10948. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10949. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

10950. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10951. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

10952. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

10953. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

10954. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

10955. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 6. Causes of Action on Behalf of the Colorado-Sandoz Classes

### COUNT 748
### Violation of the Colorado Consumer Protection Act
### (Colo. Rev. Stat. Ann. §6-1-101, *et seq.*)
### (Against Sandoz)

10956. Colorado Class Representative Jeffrey Pisano incorporates the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10957. This cause of action is brought on behalf of the Colorado-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant").

10958. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Colo. Rev. Stat. Ann. §6-1-102(6).

10959. The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices "in the course of the person's business, vocation, or occupation." Colo. Rev. Stat. Ann. §6-1-105(1).

10960. The Colorado CPA makes unlawful specific acts, including:

(a)     "[e]ither knowingly or recklessly mak[ing] a false representation as to the source, sponsorship, approval, or certification of goods, services, or property" (Colo. Rev. Stat. Ann. §6-1-105(1)(b));

(b)     "[r]epresent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another" (Colo. Rev. Stat. Ann. §6-1-105(1)(g));

(c)     "[a]dvertis[ing] goods, services, or property with intent not to sell them as advertised" (Colo. Rev. Stat. Ann. §6-1-105(1)(i));

(d)     "[f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction" (Colo. Rev. Stat. Ann. §6-1-105(1)(u)); and

(e)     "[e]ither knowingly or recklessly engage[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice" (Colo. Rev. Stat. Ann. §6-1-105(1)(kkk)).

10961. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Such conduct was bad faith conduct under the Colorado CPA.

10962. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Colorado CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

- 2298 -

<div style="margin-left:2em">

(c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; and

(e) failing to disclose the defective Ranitidine-Containing Products in connection with their sale to the public.

</div>

10963. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

10964. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

10965. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10966. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10967. Plaintiff and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and

continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

10968. Plaintiff and the Class members were aggrieved by Defendant's violations of the Colorado CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10969. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10970. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10971. As a result of Defendant's violations of the Colorado CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

## COUNT 749
### Unjust Enrichment
### (Colo. Rev. Stat. Ann. §6-1-101, *et seq.*)
### (Against Sandoz)

10972. Colorado Class Representative Jeffrey Pisano incorporates the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10973. This cause of action is brought on behalf of the Colorado Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant").

10974. Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10975. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

10976. Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10977. It is unjust and inequitable for the Defendant to retain these benefits without commensurate compensation because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

10978. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

10979. Plaintiff and Class members do not have an adequate remedy at law.

### 7.     Causes of Action on Behalf of the Connecticut-Sandoz Classes

### COUNT 750
### Violation of the Connecticut Unfair Trade Practices Act
### (Conn. Gen. Stat. Ann. §42-110a, *et seq.*)
### (Against Sandoz)

10980. Connecticut Class Representatives Angel Cordero and Angel Vega incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10981. This cause of action is brought on behalf of the Connecticut-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10982. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Conn. Gen. Stat. Ann. §42-110a(3).

10983. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. §42-110a(4).

10984. The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. §42-110b(a).

10985. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by

printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

10986. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Connecticut UTPA.

10987. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10988. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

10989. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

10990. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

10991. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Connecticut UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

10992. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

10993. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

10994. As a result of Defendant's violations of the Connecticut UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

<div align="center">

**COUNT 751**
**Unjust Enrichment**
**(Connecticut Law)**
**(Against Sandoz)**

</div>

10995. Connecticut Class Representatives Angel Cordero and Angel Vega incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

10996. This cause of action is brought on behalf of the Connecticut-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

10997. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

10998. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

10999. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11000. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11001. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11002. Plaintiffs and the Class members do not have an adequate remedy at law.

### 8.   Causes of Action on Behalf of the District of Columbia-Sandoz Classes

**COUNT 752**
**Violation of the District of Columbia Consumer Protection Procedures Act**
**(D.C. Code Ann. §28-3901, *et seq.*)**
**(Against Sandoz)**

11003. District of Columbia Class Representative and Kevin Nelson incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11004. This cause of action is brought on behalf of the District of Columbia-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11005. Defendant, Plaintiff, and the Class members are "person[s]" within the meaning of D.C. Code Ann. §28-3901(a)(1).

11006. Plaintiff and the Class members are "consumer[s]" within the meaning of D.C. Code Ann. §28-3901(a)(2).

11007. The Ranitidine-Containing Products are "goods" within the meaning of D.C. Code Ann. §28-3901(a)(7).

11008. Defendant was and is engaged in "trade practice[s]" within the meaning of D.C. Code Ann. §28-3901(a)(6).

11009. The District of Columbia Consumer Protection Procedures Act ("District of Columbia CPPA") prohibits "unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby." D.C. Code Ann. §28-3904.

11010. The District of Columbia CPPA makes unlawful specific acts, including:

(a) "represent[ing] that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have" (D.C. Code Ann. §28-3904(a));

(b) "represent[ing] that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another" (D.C. Code Ann. §28-3904(d));

(c) "advertis[ing] or offer[ing] goods or services without the intent to sell them or without the intent to sell them as advertised or offered" (D.C. Code Ann. §28-3904(h));

(d) "misrepresent as to a material fact which has a tendency to mislead" (D.C. Code Ann. §28-3904(e));

(e) "fail to state a material fact if such failure tends to mislead" (D.C. Code Ann. §28-3904(f)); and

(f) "[u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead" (D.C. Code Ann. §28-3904(f-1)).

11011. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the District of Columbia CPPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11012. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the District of Columbia CPPA, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)    using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive;

(e)    acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid; and

(f)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

11013. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

11014. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

11015. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11016. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11017. Plaintiff and the Class members were aggrieved by Defendant's violations of the District of Columbia CPPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11018. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11019. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11020. As a result of Defendant's violations of the District of Columbia CPPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the District of Columbia CPPA.

**COUNT 753**
**Unjust Enrichment**
**(District of Columbia Law)**
**(Against Sandoz)**

11021. District of Columbia Class Representative Kevin Nelson incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11022. This cause of action is brought on behalf of the District of Columbia-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11023. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11024. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11025. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11026. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11027. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11028. There is no express written contract governing this dispute.

11029. Plaintiff and the Class members do not have an adequate remedy at law.

### 9.    Causes of Action on Behalf of the Florida-Sandoz Classes

### COUNT 754
### Violation of the Florida Deceptive and Unfair Trade Practices Act
### (Fla. Stat. Ann. §501.201, *et seq.*)
### (Against Sandoz)

11030. Florida Class Representatives Irma Arcaya, Roy Armstrong, Jeannie Black, Sonia Diaz, Michael Fesser, Karen Foster, Michael Galloway, Hattie Kelley, Marva Mccall, Clifton McKinnon, Ana Pereira, Daniel Taylor, Joyce Taylor, and Michael Tomlinson incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11031. This cause of action is brought on behalf of the Florida-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11032. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. Ann. §501.204(1).

11033. In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017."  Fla. Stat. Ann. §501.204(2).

11034. Plaintiffs and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA. *See* Fla. Stat. Ann. §501.203(6)-(7).

11035. Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA. *See* Fla. Stat. Ann. §501.203(8).

11036. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11037. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

11038. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11039. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11040. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11041. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11042. Plaintiffs and the Class members were aggrieved by Defendant's violations of FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11043. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11044. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11045. As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

# COUNT 755
## Unjust Enrichment
### (Florida Law)
### (Against Sandoz)

11046. Florida Class Representatives Irma Arcaya, Roy Armstrong, Jeannie Black, Sonia Diaz, Michael Fesser, Karen Foster, Michael Galloway, Hattie Kelley, Marva Mccall, Clifton McKinnon, Ana Pereira, Daniel Taylor, Joyce Taylor, and Michael Tomlinson incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11047. This cause of action is brought on behalf of the Florida-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11048. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11049. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered an impoverishment because they purchased worthless medications and did not receive the expected benefit therefrom.

11050. Defendant voluntarily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration

dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11051. It is unjust and inequitable for the Defendant to retain these benefits without paying the value thereof because the benefits were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11052. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11053. There is no express written contract governing this dispute.

11054. Plaintiffs and the Class members do not have an adequate remedy at law.

### 10.   Causes of Action on Behalf of the Georgia-Sandoz Classes

<div align="center">

**COUNT 756**
**Violation of the Georgia Fair Business Practices Act**
**(Ga. Code Ann. §10-1-390, *et seq.*)**
**(Against Sandoz)**

</div>

11055. Georgia Class Representatives Roy Armstrong, Earlene Green, Leon Greene, Tyrone Houston, Kathy Jeffries, Charlotte Sanders, Paula Shells, Cynthia Starr, and Angela Taylor incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11056. This cause of action is brought on behalf of the Georgia-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11057. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(24).

11058. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(6).

11059. Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Ga. Code Ann. §10-1-392(a)(28).

11060. The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." Ga. Code Ann. §10-1-393(a).

11061. The Georgia FBPA makes unlawful specific acts, including:

    (a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-393(b)(5));

    (b)    "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-393(b)(7)); and

    (c)    "[a]dvertising goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-393(b)(9)).

11062. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11063. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia FBPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

11064. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11065. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11066. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11067. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11068. Plaintiffs and the Class members reasonably relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

11069. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Georgia FBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11070. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11071. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

11072. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public. In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Ga. Code Ann. §10-1-399(b) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

11073. As a result of Defendant's violations of the Georgia FBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Georgia FBPA.

## COUNT 757
### Unjust Enrichment
### (Georgia Law)
### (Against Sandoz)

11074. Georgia Class Representatives Roy Armstrong, Earlene Green, Leon Greene, Tyrone Houston, Kathy Jeffries, Charlotte Sanders, Paula Shells, Cynthia Starr, and Angela Taylor incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11075. This cause of action is brought on behalf of the Georgia-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11076. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11077. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11078. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11079. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11080. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11081. There is no express contract governing this dispute.

11082. Plaintiffs and the Class members do not have an adequate remedy at law.

**11.    Causes of Action on Behalf of the Idaho-Sandoz Classes**

**COUNT 758**
**Violation of the Idaho Consumer Protection Act**
**(Idaho Code Ann. §48-601, *et seq.*)**
**(Against Sandoz)**

11083. Idaho Class Representative Billy Naab incorporates the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11084. This cause of action is brought on behalf of the Idaho-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11085. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Idaho Code Ann. §48-602(1).

11086. The Ranitidine-Containing Products are "[g]oods" within the meaning of Idaho Code Ann. §48-602(6).

11087. Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Idaho Code Ann. §48-602(2).

11088. The Idaho Consumer Protection Act ("Idaho CPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Idaho Code Ann. §48-603.

11089. The Idaho CPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Idaho Code Ann. §48-603(5));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Idaho Code Ann. §48-603(7));

(c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Idaho Code Ann. §48-603(9)); and

(d)     "[e]ngaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer" (Idaho Code Ann. §48-603(17)).

11090. Idaho law also prohibits "[a]ny unconscionable method, act or practice in the conduct of any trade or commerce."  Idaho Code Ann. §48-603C(1).

11091. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Idaho CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during

which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11092. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Idaho CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

11093. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

11094. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

11095. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11096. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11097. Plaintiff and the Class members were aggrieved by Defendant's violations of the Idaho CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11098. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11099. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11100. As a result of Defendant's violations of the Idaho CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Idaho CPA.

## COUNT 759
## Unjust Enrichment
## (Idaho Law)
## (Against Sandoz)

11101. Idaho Class Representative Billy Naab incorporates the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11102. This cause of action is brought on behalf of the Idaho-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11103. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11104. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11105. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11106. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts

concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11107. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11108. Plaintiff and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

## 12.    Causes of Action on Behalf of the Illinois-Sandoz Classes

### COUNT 760
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (815 Ill. Comp. Stat. Ann. 505/1, *et seq.*)
### (Against Sandoz)

11109. Illinois Class Representatives Vickie Anderson and Heather Re incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11110. This cause of action is brought on behalf of the Illinois-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11111. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(c).

11112. Plaintiffs and the Class members are "consumer[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(e).

11113. The Ranitidine-Containing Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(b).

11114. Defendant was and is engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(f).

11115. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 Ill. Comp. Stat. Ann. 510/2], approved August 5, 1965, in the conduct of any trade or commerce."  815 Ill. Comp. Stat. Ann. 505/2.

11116. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11117. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFDBPA.

11118. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11119. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11120. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11121. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11122. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Illinois CFDBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11123. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11124. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11125. As a result of Defendant's violations of the Illinois CFDBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFDBPA.

<div align="center">

**COUNT 761**
**Unjust Enrichment**
**(Illinois Law)**
**(Against Sandoz)**

</div>

11126. Illinois Class Representatives Vickie Anderson and Heather Re incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11127. This cause of action is brought on behalf of the Illinois-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11128. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11129. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11130. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11131. It violates the principles of justice, equity, and good conscience for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11132. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11133. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

13.     **Causes of Action on Behalf of the Indiana-Sandoz Classes**

**COUNT 762**
**Unjust Enrichment**
**(Indiana Law)**
**(Against Sandoz)**

11134. Indiana Class Representatives Teresa Dowler, Timberly Goble, Alyson Humphrey, Rebecca Sizemore, and Tracy Wells incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11135. This cause of action is brought on behalf of the Indiana-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11136. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11137. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11138. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11139. It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11140. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11141. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

<div align="center">

**COUNT 763**
**Breach of Implied Warranty**
**(Ind. Code. Ann. §26-1-2-314)**
**(Against Sandoz)**

</div>

11142. Indiana Class Representatives Teresa Dowler, Timberly Goble, Alyson Humphrey, Rebecca Sizemore, and Tracy Wells incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11143. This cause of action is brought on behalf of the Indiana-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11144. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Indiana Class Representatives and members of the Indiana Class and was in the business of selling such products.

11145. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11146. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11147. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11148. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11149. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11150. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

11151. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11152. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11153. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 14.    Causes of Action on Behalf of the Iowa-Sandoz Classes

### COUNT 764
### Violation of the Iowa Private Right of Action for Consumer Frauds Act
### (Iowa Code Ann. §714H.1, *et seq.*)
### (Against Sandoz)

11154. Iowa Class Representatives Charles Longfield and Tracy Losee incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11155. This cause of action is brought on behalf of the Iowa-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11156. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Iowa Code Ann. §714H.2(7).

11157. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Iowa Code Ann. §714H.2(3).

11158. The Iowa Private Right of Action for Consumer Frauds Act ("Iowa PRACFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise."  Iowa Code Ann. §714H.3(1).

11159. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Iowa PRACFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Defendant did so with willful and wanton disregard for the rights and safety of others.

11160. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Iowa PRACFA.

11161. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11162. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11163. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11164. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11165. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Iowa PRACFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11166. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out- of-pocket loss.

11167. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

11168. As a result of Defendants' violations of the Iowa PRACFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Iowa PRACFA.

11169. Additionally, because Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, were undertaken in willful and wanton disregard for the rights and safety of others, pursuant to Iowa Code §714H.5(4), Plaintiffs and the Class members seek an additonal award of treble damages.

<div align="center">

**COUNT 765**
**Unjust Enrichment**
**(Iowa Law)**
**(Against Sandoz)**

</div>

11170. Iowa Class Representatives Charles Longfield and Tracy Losee incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11171. This cause of action is brought on behalf of the Iowa-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11172. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11173. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11174. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11175. It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11176. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11177. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

**COUNT 766**
**Breach of Implied Warranty**
**(Iowa Code Ann. §554.2314)**
**(Against Sandoz)**

11178. Iowa Class Representatives Charles Longfield and Tracy Losee incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11179. This cause of action is brought on behalf of the Iowa-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11180. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Iowa Class Representatives and members of the Iowa Class and was in the business of selling such products.

11181. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11182. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11183. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11184. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11185. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11186. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

11187. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11188. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11189. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 15.    Causes of Action on Behalf of the Kentucky-Sandoz Classes

### COUNT 767
### Violation of the Kentucky Consumer Protection Act
### (Ky. Rev. Stat. Ann. §367.110, *et seq.*)
### (Against Sandoz)

11190. Kentucky Class Representatives Timberly Goble and Janet Asbury incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11191. This cause of action is brought on behalf of the Kentucky-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11192. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ky. Rev. Stat. Ann. §367.110(1).

11193. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Ky. Rev. Stat. Ann. §367.110(2).

11194. The Kentucky Consumer Protection Act ("Kentucky CPA") prohibits "[u]nfair, [unconscionable], false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. Ann. §367.170(1)-(2).

11195. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time

period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11196. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Kentucky CPA.

11197. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11198. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11199. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11200. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11201. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Kentucky CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11202. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11203. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11204. As a result of Defendant's violations of the Kentucky CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Kentucky CPA.

**COUNT 768**
**Unjust Enrichment**
**(Kentucky Law)**
**(Against Sandoz)**

11205. Kentucky Class Representatives Timberly Goble and Janet Asbury incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11206. This cause of action is brought on behalf of the Kentucky-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11207. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11208. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11209. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11210. It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11211. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the

value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11212. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 769**
**Breach of Implied Warranty**
**(Ky. Rev. Stat. Ann. §355.2-314)**
**(Against Sandoz)**

11213. Kentucky Class Representatives Timberly Goble and Janet Asbury incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11214. This cause of action is brought on behalf of the Kentucky-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11215. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Kentucky Class Representatives and members of the Kentucky Class and was in the business of selling such products.

11216. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11217. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11218. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11219. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11220. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11221. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

11222. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11223. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11224. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 16.     Causes of Action on Behalf of the Louisiana-Sandoz Classes

### COUNT 770
### Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law
### (La. Stat. Ann. §51:1401, *et seq.*)
### (Against Sandoz)

11225. Louisiana Class Representatives Randy Jones and Jamie Mckay incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11226. This cause of action is brought on behalf of the Louisiana-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11227. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of La. Stat. Ann. §51:1402(8).

11228. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of La. Stat. Ann. §51:1402(1).

11229. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of La. Stat. Ann. §51:1402(10).

11230. The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  La. Stat. Ann. §51:1405(A).

11231. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11232. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Louisiana CPL.

11233. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11234. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11235. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11236. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11237. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

11238. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Louisiana CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11239. Specifically, Plaintiffs and the Class were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11240. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11241. As a result of Defendant's violations of the Louisiana CPL, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Louisiana CPL.

**COUNT 771**
**Unjust Enrichment**
**(Louisiana Law)**
**(Against Sandoz)**

11242. Louisiana Class Representatives Randy Jones and Jamie Mckay incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11243. This cause of action is brought on behalf of the Louisiana-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11244. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11245. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11246. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

11247. Defendants' enrichment – the monies obtained from Plaintiffs for the Ranitidine Containing Products – was the result of Plaintiffs' impoverishment – the receipt by Plaintiffs of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

11248. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11249. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11250. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

## COUNT 772
### Breach of Implied Warranty
### (La. Civ. Code Ann. art. §2520)
### (Against Sandoz)

11251. Louisiana Class Representatives Randy Jones and Jamie Mckay incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11252. This cause of action is brought on behalf of the Louisiana-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11253. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Louisiana Class Representatives and members of the Louisiana Class and was in the business of selling such products.

11254. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11255. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11256. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11257. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11258. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11259. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

11260. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11261. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11262. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 17.   Causes of Action on Behalf of the Maryland-Sandoz Classes

### COUNT 773
### Violation of the Maryland Consumer Protection Act
### (Md. Code Ann., Com. Law §13-101, *et seq.*)
### (Against Sandoz)

11263. Maryland Class Representatives Nicholas Hazlett, Alberta Griffin, and Darlene Whittington-Coates incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11264. This cause of action is brought on behalf of the Maryland-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11265. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Md. Code Ann., Com. Law §13-101(h).

11266. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Md. Code Ann., Com. Law §13-101(c)(1).

11267. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Md. Code Ann., Com. Law §13-101(f).

11268. The Maryland Consumer Protection Act ("Maryland CPA") prohibits "[u]nfair, abusive, or deceptive trade practices."  Md. Code Ann., Com. Law §13-301.

11269. The Maryland CPA makes unlawful specific acts, including:

    (a)    "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" (Md. Code Ann., Com. Law §13-301(1));

    (b)    "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have" (Md. Code Ann., Com. Law §13-301(2)(i));

    (c)    "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not" (Md. Code Ann., Com. Law §13-301(2)(iv));

    (d)    "[f]ailure to state a material fact if the failure deceives or tends to deceive" (Md. Code Ann., Com. Law §13-301(3));

    (e)    "[a]dvertis[ing] or offer[ing] of consumer goods, consumer realty, or consumer services . . . [w]ithout intent to sell, lease, or rent them as advertised or offered" (Md. Code Ann., Com. Law §13-301(5)(i)); and

    (f)    "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with . . . [t]he promotion or sale of any consumer goods" (Md. Code Ann., Com. Law §13-301(9)(i)).

11270. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time

period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11271. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Maryland CPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

    (d)    failing to disclose that the Ranitidine-Containing Products are defective and inherently dangerous in the course of the sale of the Ranitidine-Containing Products; and

    (e)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

11272. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11273. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11274. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11275. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11276. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

11277. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Maryland CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11278. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11279. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11280. As a result of Defendant's violations of the Maryland CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

<div align="center">

**COUNT 774**
**Unjust Enrichment**
**(Maryland Law)**
**(Against Sandoz)**

</div>

11281. Maryland Class Representatives Nicholas Hazlett, Alberta Griffin, and Darlene Whittington-Coates incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11282. This cause of action is brought on behalf of the Maryland-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11283. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11284. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11285. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11286. It would be unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11287. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11288. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 775**
**Breach of Implied Warranty**
**(Md. Code Ann. §2-314)**
**(Against Sandoz)**

</div>

11289. Maryland Class Representatives Nicholas Hazlett, Alberta Griffin, and Darlene Whittington-Coates incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11290. This cause of action is brought on behalf of the Maryland-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11291. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Maryland Class Representatives and members of the Maryland Class and was in the business of selling such products.

11292. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11293. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11294. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11295. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11296. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11297. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

11298. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11299. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11300. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 18.    Causes of Action on Behalf of the Massachusetts-Sandoz Class

**COUNT 776**
**Violation of the Deceptive Acts or Practices Prohibited by Massachusetts Law**
**(Mass. Gen. Laws Ann. ch. 93a, §1, *et seq.*)**
**(Against Sandoz)**

11301. Massachussetts Class Representatives Jose Amado, Rafael Bermudez, Ana Guzman, and Michelle Smith incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11302. This cause of action is brought on behalf of the Massachusetts-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11303. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(a).

11304. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(b).

11305. The Massachusetts consumer protection law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws Ann. ch. 93A, §2(a).

11306. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11307. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Massachusetts Act.

11308. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11309. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11310. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11311. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11312. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Massachusetts Act because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11313. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11314. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11315. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of

Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Mass. Gen. Laws Ann. ch. 93A, §9(3) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

11316. As a result of Defendant's violations of the Massachusetts Act, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Massachusetts Act.

<div align="center">

**COUNT 777**
**Unjust Enrichment**
**(Massachusetts Law)**
**(Against Sandoz)**

</div>

11317. Massachussetts Class Representatives Jose Amado, Rafael Bermudez, Ana Guzman, and Michelle Smith incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11318. This cause of action is brought on behalf of the Massachusetts-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11319. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11320. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11321. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

11322. Defendant's enrichment – the monies obtained from Plaintiffs' and the Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and the Class members' impoverishment – i.e., Plaintiffs' and the Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

11323. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11324. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11325. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 778**
**Breach of Implied Warranty**
**(Mass. Gen. Laws Ann. ch. 106 §2-314)**
**(Against Sandoz)**

11326. Massachusetts Class Representatives Jose Amado, Rafael Bermudez, Ana Guzman, and Michelle Smith incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11327. This cause of action is brought on behalf of the Massachusetts-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11328. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Massachusetts Class Representatives and members of the Massachusetts Class and was in the business of selling such products.

11329. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11330. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11331. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11332. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11333. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11334. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

11335. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11336. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11337. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 19.     Causes of Action on Behalf of the Michigan-Sandoz Classes

### COUNT 779
### Violation of the Michigan Consumer Protection Act
### (Mich. Comp. Laws Ann. §445.901, *et seq.*)
### (Against Sandoz)

11338. Michigan Class Representatives Myra Allen, Jody Beal, Benny Cope, Arthur Gamble, Kenneth Hix, Judy Wilmot, and Lakisha Wilson incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11339. This cause of action is brought on behalf of the Michigan-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11340. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(d).

11341. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(g).

11342. The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws Ann. §445.903(1).

11343. The Michigan CPA makes unlawful specific acts, including:

> (a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Mich. Comp. Laws Ann. §445.903(1)(c));

> (b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Mich. Comp. Laws Ann. §445.903(1)(e)); and

(c)     "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented" (Mich. Comp. Laws Ann. §445.903(1)(g)).

11344. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11345. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Michigan CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

11346. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11347. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11348. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11349. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11350. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Michigan CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11351. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11352. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11353. As a result of Defendant's violations of the Michigan CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Michigan CPA.

## COUNT 780
### Unjust Enrichment
### (Michigan Law)
### (Against Sandoz)

11354. Michigan Class Representatives Myra Allen, Jody Beal, Benny Cope, Arthur Gamble, Kenneth Hix, Judy Wilmot, and Lakisha Wilson incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11355. This cause of action is brought on behalf of the Michigan-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11356. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11357. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11358. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11359. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11360. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11361. There is no express contract governing this dispute.

11362. Plaintiffs and the Class members do not have an adequate remedy at law.

### 20.    Causes of Action on Behalf of the Minnesota-Sandoz Classes

### COUNT 781
### Violation of the Minnesota Prevention of Consumer Fraud Act
### (Minn. Stat. Ann. §325F.68, *et seq.*)
### (Against Sandoz)

11363. Minnesota Class Representatives Sandra Erickson-Brown and Donald Northrup incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11364. This cause of action is brought on behalf of the Minnesota-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11365. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

11366. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

11367. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged." Minn. Stat. Ann. §325F.69(1). Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

11368. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11369. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

11370. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11371. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11372. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11373. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11374. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

11375. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11376. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11377. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11378. As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

<div align="center">

**COUNT 782**
**Unjust Enrichment**
**(Minnesota Law)**
**(Against Sandoz)**

</div>

11379. Minnesota Class Representatives Sandra Erickson-Brown and Donald Northrup incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11380. This cause of action is brought on behalf of the Minnesota-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11381. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11382. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11383. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11384. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11385. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11386. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 783
## Breach of Implied Warranty
## (Minn. Stat. Ann. §336.2-314)
## (Against Sandoz)

11387. Minnesota Class Representatives Sandra Erickson-Brown and Donald Northrup incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11388. This cause of action is brought on behalf of the Minnesota-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11389. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

11390. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11391. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11392. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11393. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11394. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11395. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

11396. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11397. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11398. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 21.     Causes of Action on Behalf of the Mississippi-Sandoz Classes

<p align="center"><strong>COUNT 784</strong><br>
<strong>Unjust Enrichment</strong><br>
<strong>(Mississippi Law)</strong><br>
<strong>(Against Sandoz)</strong></p>

11399. Mississippi Class Representatives Martha Summers, Beverly Crosby, Dorothy King, Lora Mauffray, Korcis McMillian, Michelle Tinker, and David Weatherly incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11400. This cause of action is brought on behalf of the Mississippi-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11401. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11402. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

11403. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11404. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11405. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11406. There is no express contract governing this dispute.

11407. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 785**
**Breach of Implied Warranty**
**(Miss. Code Ann. §75-2-314)**
**(Against Sandoz)**

11408. Mississippi Class Representatives Martha Summers, Beverly Crosby, Dorothy King, Lora Mauffray, Korcis McMillian, Michelle Tinker, and David Weatherly incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11409. This cause of action is brought on behalf of the Mississippi-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11410. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Mississippi Class Representatives and members of the Mississippi Class and was in the business of selling such products.

11411. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11412. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11413. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11414. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11415. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11416. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

11417. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11418. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11419. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law

### 22.     Causes of Action on Behalf of the Missouri-Sandoz Classes

### COUNT 786
### Violation of the Missouri Merchandising Practices Act
### (Mo. Rev. Stat. §407.010, *et seq.*)
### (Against Sandoz)

11420. Missouri Class Representatives Tammy Smith, Martha Summers, Timberly Goble, Elaine Aaron, Antrenise Campbell, Lisa Deckard, Cynthia Gibbs, and Brenda Newcomb incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11421. This cause of action is brought on behalf of the Missouri-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11422. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mo. Ann. Stat. §407.010(5).

11423. Defendant was and is engaged in "[t]rade or commerce" within the meaning of Mo. Ann. Stat. §407.010(7).

11424. The Missouri Merchandising Practices Act ("Missouri MPA") prohibits "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Ann. Stat. §407.020(1).

11425. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11426. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Missouri MPA.

11427. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11428. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11429. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11430. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11431. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Missouri MPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11432. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11433. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11434. As a result of Defendant's violations of the Missouri MPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Missouri MPA.

<div align="center">

**COUNT 787**
**Unjust Enrichment**
**(Missouri Law)**
**(Against Sandoz)**

</div>

11435. Missouri Class Representatives Tammy Smith, Martha Summers, Timberly Goble, Elaine Aaron, Antrenise Campbell, Lisa Deckard, Cynthia Gibbs, and Brenda Newcomb incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11436. This cause of action is brought on behalf of the Missouri-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11437. This cause of action is brought on behalf of the Missouri Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11438. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11439. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11440. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11441. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11442. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11443. There is no express contract governing this dispute.

11444. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 788**
**Breach of Implied Warranty**
**(Mo. Rev. Stat. §400.2-314)**
**(Against Sandoz)**

11445. Missouri Class Representatives Tammy Smith, Martha Summers, Timberly Goble, Elaine Aaron, Antrenise Campbell, Lisa Deckard, Cynthia Gibbs, and Brenda Newcomb incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11446. This cause of action is brought on behalf of the Missouri-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11447. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Missouri Class Representatives and members of the Missouri Class and was in the business of selling such products.

11448. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11449. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11450. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11451. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11452. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11453. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

11454. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11455. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11456. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 23.    Causes of Action on Behalf of the Nevada-Sandoz Classes

### COUNT 789
### Violation of the Nevada Deceptive Trade Practices Act
### (Nev. Rev. Stat. Ann. §598.0903, *et seq.*)
### (Against Sandoz)

11457. Nevada Class Representative Monica Costello incorporates the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11458. This cause of action is brought on behalf of the Nevada-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11459. The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), prohibits the use of "'deceptive trade practices' . . . in the course of . . . business or occupation." Nev. Rev. Stat. Ann. §598.0915.

11460. The Nevada DTPA makes unlawful specific acts, including:

(a)    "[k]nowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith" (Nev. Rev. Stat. Ann. §598.0915(5));

(b)    "[r]epresent[ing] that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model" (Nev. Rev. Stat. Ann. §598.0915(7));

(c)     "[a]dvertis[ing] goods or services with intent not to sell or lease them as advertised" (Nev. Rev. Stat. Ann. §598.0915(9));

(d)     "[k]nowingly mak[ing] any other false representation in a transaction" (Nev. Rev. Stat. Ann. §598.0915(15)); and

(e)     "[f]ail[ing] to disclose a material fact in connection with the sale or lease of goods or services" (Nev. Rev. Stat. Ann. §598.0923(2)).

11461. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11462. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Nevada DTPA, including:

(a)     representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)     failing to disclose the NDMA danger in connection with the sale of the Ranitidine-Containing Products; and

(e)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

11463. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

11464. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

11465. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11466. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11467. Plaintiff and the Class members were aggrieved by Defendant's violations of the Nevada DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11468. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11469. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11470. As a result of Defendant's violations of the Nevada DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Nevada DTPA.

<div style="text-align:center">

**COUNT 790**
**Unjust Enrichment**
**(Nevada Law)**
**(Against Sandoz)**

</div>

11471. Nevada Class Representative Monica Costello incorporates the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11472. This cause of action is brought on behalf of the Nevada-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11473. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11474. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11475. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11476. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11477. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11478. There is no express contract governing this dispute.

11479. Plaintiff and the Class members do not have an adequate remedy at law.

### 24. Causes of Action on Behalf of the New Hampshire-Sandoz Classes

### COUNT 791
### Violation of the New Hampshire Consumer Protection Act
### (N.H. Rev. Stat. Ann. §358-A:1, *et seq.*)
### (Against Sandoz)

11480. New Hampshire Class Representatives Rafael Bermudez and David Rice incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11481. This cause of action is brought on behalf of the New Hampshire-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11482. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of N.H. Rev. Stat. Ann. §358-A:1(I).

11483. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of N.H. Rev. Stat. Ann. §358-A:1(II).

11484. The New Hampshire Consumer Protection Act ("New Hampshire CPA") prohibits "any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce." N.H. Rev. Stat. Ann. §358-A:2.

11485. The New Hampshire CPA makes unlawful specific acts, including:

(a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (N.H. Rev. Stat. Ann. §358-A:2(V));

(b)    "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." (N.H. Rev. Stat. Ann. §358-A:2(VII)); and

(c)    "[a]dvertising goods or services with intent not to sell them as advertised." (N.H. Rev. Stat. Ann. §358-A:2(IX)).

11486. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Hampshire CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11487. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Hampshire CPA, including:

    (a)    representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

11488. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11489. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11490. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11491. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11492. Plaintiffs and the Class members were aggrieved by Defendant's violations of New Hampshire CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11493. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11494. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11495. As a result of Defendant's violations of the New Hampshire CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Hampshire CPA.

<div align="center">

**COUNT 792**
**Unjust Enrichment**
**(New Hampshire Law)**
**(Against Sandoz)**

</div>

11496. New Hampshire Class Representatives Rafael Bermudez and David Rice incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11497. This cause of action is brought on behalf of the New Hampshire-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11498. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11499. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11500. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11501. It is unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11502. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11503. There is no valid, express contract governing this dispute.

11504. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 793**
**Breach of Implied Warranty**
**(N.H. Rev. Stat. Ann. §382-A:2-314)**
**(Against Sandoz)**

11505. New Hampshire Class Representatives Rafael Bermudez and David Rice incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11506. This cause of action is brought on behalf of the New Hampshire-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11507. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Hampshire Class Representatives and members of the New Hampshire Class and was in the business of selling such products.

11508. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11509. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11510. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11511. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11512. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11513. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

11514. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11515. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11516. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 25.    Causes of Action on Behalf of the New Jersey-Sandoz Classes

<div align="center">

**COUNT 794**
**Violation of the New Jersey Consumer Fraud Act**
**(N.J. Stat. Ann. §56:8-1, *et seq.*)**
**(Against Sandoz)**

</div>

11517. New Jersey Class Representatives James Adamo, Sayed Eldomiaty, Mary McMillian, Mary Moronski, and Lynn White incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11518. This cause of action is brought on behalf of the New Jersey-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11519. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.J. Stat. Ann. §56:8-1(d).

11520. The Ranitidine-Containing Products are "merchandise" within the meaning of N.J. Stat. Ann. §56:8-1(c).

11521. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Jersey Consumer Fraud Act ("New Jersey CFA") by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material

facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  N.J. Stat. Ann. §56:8-1, *et seq.*

11522. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Jersey CFA.

11523. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11524. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11525. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11526. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11527. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Jersey CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11528. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11529. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11530. As a result of Defendant's violations of the New Jersey CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Jersey CFA.

<div align="center">

**COUNT 795**
**Unjust Enrichment**
**(New Jersey Law)**
**(Against Sandoz)**

</div>

11531. New Jersey Class Representatives James Adamo, Sayed Eldomiaty, Mary McMillian, Mary Moronski, and Lynn White incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11532. This cause of action is brought on behalf of the New Jersey-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11533. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11534. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11535. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11536. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11537. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11538. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 796**
**Breach of Implied Warranty**
**(N.J. Stat. Ann. §12A:2-314)**
**(Against Sandoz)**

11539. New Jersey Class Representatives James Adamo, Sayed Eldomiaty, Mary McMillian, Mary Moronski, and Lynn White incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11540. This cause of action is brought on behalf of the New Jersey-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11541. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Jersey Class Representatives and members of the New Jersey Class and was in the business of selling such products.

11542. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11543. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11544. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11545. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11546. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11547. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

11548. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11549. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11550. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 26.   Causes of Action on Behalf of the New Mexico-Sandoz Classes

**COUNT 797**
**Violation of the New Mexico Unfair Trade Practices Act**
**(N.M. Stat. Ann. §57-12-1, *et seq.*)**
**(Against Sandoz)**

11551. New Mexico Class Representatives Phyllis Gallegos, Josefina Griego, Carrie Martinez, Inez Mazon, Ernesto Sanchez, and George Tapia incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11552. This cause of action is brought on behalf of the New Mexico-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11553. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

11554. Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

11555. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services

. . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person." N.M. Stat. Ann. §57-12-2(D). The New Mexico UTPA also makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." N.M. Stat. Ann. §57-12-2(E).

11556. The New Mexico UTPA makes unlawful specific acts, including:

(a) "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

(b) "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

(c) "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

11557. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11558. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Mexico UTPA, including:

(a)   representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)   using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and

(d)   acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.

11559. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11560. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11561. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11562. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11563. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11564. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11565. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11566. As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

### COUNT 798
### Unjust Enrichment
### (New Mexico Law)
### (Against Sandoz)

11567. New Mexico Class Representatives Phyllis Gallegos, Josefina Griego, Carrie Martinez, Inez Mazon, Ernesto Sanchez, and George Tapia incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11568. This cause of action is brought on behalf of the New Mexico-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11569. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11570. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11571. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11572. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11573. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11574. There is no express contract governing this dispute.

11575. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 799**
**Breach of Implied Warranty**
**(N.M. Stat. Ann. §55-2-314)**
**(Against Sandoz)**

11576. New Mexico Class Representatives Phyllis Gallegos, Josefina Griego, Carrie Martinez, Inez Mazon, Ernesto Sanchez, and George Tapia incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11577. This cause of action is brought on behalf of the New Mexico-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11578. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

11579. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11580. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11581. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11582. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11583. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11584. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

11585. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11586. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11587. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 27. Causes of Action on Behalf of the New York-Sandoz Classes

### COUNT 800
### Violation of New York Deceptive Acts and Practices Act
### (N.Y. Gen. Bus. Law §349)
### (Against Sandoz)

11588. New York Class Representatives Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen, Joseph Mcpheter, Steven Murdock, Glorimar Rodriguez, Phyllis Spuler, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11589. This cause of action is brought on behalf of the New York-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11590. Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

11591. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §349(a).

11592. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded

the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11593. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

11594. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11595. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11596. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11597. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11598. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11599. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11600. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11601. As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

<div align="center">

**COUNT 801**
**Violation of the New York False Advertising Act**
**(N.Y. Gen. Bus. Law §350)**
**(Against Sandoz)**

</div>

11602. New York Class Representatives Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen    , Joseph Mcpheter, Steven Murdock, Glorimar Rodriguez, Phyllis Spuler, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11603. This cause of action is brought on behalf of the New York-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11604. Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

11605. The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

11606. Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

11607. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11608. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

11609. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11610. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11611. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11612. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11613. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11614. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11615. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

11616. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public. In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

11617. As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the New York Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

**COUNT 802**
**Unjust Enrichment**
**(New York Law)**
**(Against Sandoz)**

11618. New York Class Representatives Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen    , Joseph Mcpheter, Steven Murdock, Glorimar Rodriguez, Phyllis Spuler, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11619. This cause of action is brought on behalf of the New York-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11620. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11621. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11622. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11623. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11624. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11625. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

## COUNT 803
## Breach of Implied Warranty
### (N.Y. U.C.C. Law §2-314)
### (Against Sandoz)

11626. New York Class Representatives Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen   , Joseph Mcpheter, Steven Murdock, Glorimar Rodriguez, Phyllis Spuler, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11627. This cause of action is brought on behalf of the New York-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11628. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representatives and members of the New York Class and was in the business of selling such products.

11629. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11630. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11631. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11632. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11633. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11634. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

11635. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11636. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11637. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 28. Causes of Action on Behalf of the North Carolina-Sandoz Classes

### COUNT 804
### Violation of the North Carolina Unfair and Deceptive Trade Practices Act
### (N.C. Gen. Stat. Ann. §75-1.1, *et seq.*)
### (Against Sandoz)

11638. North Carolina Class Representatives Acia D'amore, Patricia Frazier, Teresa Lee, Sharon Parks, Dennis Robbins, and Julie Turner incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11639. This cause of action is brought on behalf of the North Carolina-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11640. Defendant was and is engaged in "commerce" within the meaning of N.C. Gen. Stat. Ann. §75-1.1(b).

11641. The North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," N.C. Gen. Stat. Ann. §75-1.1(a), and provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the law.  N.C. Gen. Stat. Ann. §75-16.

11642. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11643. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the North Carolina UDTPA.

11644. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11645. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11646. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11647. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11648. Plaintiffs and the Class members were aggrieved by Defendant's violations of the North Carolina UDTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11649. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11650. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11651. As a result of Defendant's violations of the North Carolina UDTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive

acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the North Carolina UDTPA.

### COUNT 805
### Unjust Enrichment
### (North Carolina Law)
### (Against Sandoz)

11652. North Carolina Class Representatives Acia D'amore, Patricia Frazier, Teresa Lee, Sharon Parks, Dennis Robbins, and Julie Turner incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11653. This cause of action is brought on behalf of the North Carolina-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11654. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11655. The benefit provided by Plaintiffs and the Class members was not conferred gratuitously, and in exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11656. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11657. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11658. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11659. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 806**
**Breach of Implied Warranty**
**(N.C. Gen. Stat. Ann. §25-2-314)**
**(Against Sandoz)**

11660. North Carolina Class Representatives Acia D'amore, Patricia Frazier, Teresa Lee, Sharon Parks, Dennis Robbins, and Julie Turner incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11661. This cause of action is brought on behalf of the North Carolina-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11662. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to North Carolina Class Representatives and members of the North Carolina Class and was in the business of selling such products.

11663. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11664. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11665. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11666. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11667. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11668. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

11669. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11670. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11671. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 29. Causes of Action on Behalf of the Ohio-Sandoz Classes

**COUNT 807**
**Unjust Enrichment**
**(Ohio Law)**
**(Against Sandoz)**

11672. Ohio Class Representatives Michael Galloway and Patricia Hess incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11673. This cause of action is brought on behalf of the Ohio-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11674. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11675. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11676. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11677. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11678. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11679. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 808**
**Breach of Implied Warranty**
**(Ohio Rev. Code Ann. §1302.27)**
**(Against Sandoz)**

11680. Ohio Class Representatives Michael Galloway and Patricia Hess incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11681. This cause of action is brought on behalf of the Ohio-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11682. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Ohio Class Representatives and members of the Ohio Class and was in the business of selling such products.

11683. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11684. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11685. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11686. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11687. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11688. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

11689. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11690. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11691. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 30.    Causes of Action on Behalf of the Oklahoma-Sandoz Classes

### COUNT 809
### Violation of the Oklahoma Consumer Protection Act
### (Okla. Stat. tit. 15, §751, *et seq.*)
### (Against Sandoz)

11692. Oklahoma Class Representatives Billy Naab and Demarco Grayson incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11693. This cause of action is brought on behalf of the Oklahoma-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11694. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Okla. Stat. tit. 15, §752(1).

11695. Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Okla. Stat. tit. 15, §752(2).

11696. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Okla. Stat. tit. 15, §752(7).

11697. The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits numerous unlawful acts, including misleading representations, false advertisements, and false statements. Okla. Stat. tit. 15, §753.   The Oklahoma CPA defines "[d]eceptive trade practice" as "a misrepresentation, omission or other practice that has deceived or . . . mislead a person to the

detriment of that person." Okla. Stat. tit. 15, §752(13). The Oklahoma CPA defines "[u]nfair trade practice" as "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Okla. Stat. tit. 15, §752(14).

11698. The Oklahoma CPA makes unlawful specific acts, including:

(a)     "[m]ak[ing] a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction" (Okla. Stat. tit. 15, §753(5));

(b)     "[r]epresent[ing], knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another" (Okla. Stat. tit. 15, §753(7));

(c)     "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised" (Okla. Stat. tit. 15, §753(8)); and

(d)     "[c]ommit[ing] an unfair or deceptive trade practice as defined in Section 752" (Okla. Stat. tit. 15, §753(20)).

11699. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11700. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Oklahoma CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

      (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

      (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

      (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

11701. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11702. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11703. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11704. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11705. Plaintiffs and the Class members were aggrieved by Defendant's violations of Oklahoma CPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11706. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11707. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11708. As a result of Defendant's violations of the Oklahoma CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Oklahoma CPA.

<div align="center">

**COUNT 810**
**Unjust Enrichment**
**(Oklahoma Law)**
**(Against Sandoz)**

</div>

11709. Oklahoma Class Representatives Billy Naab and Demarco Grayson incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11710. This cause of action is brought on behalf of the Oklahoma-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11711. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11712. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11713. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11714. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11715. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11716. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 811
### Breach of Implied Warranty
### (Okla. Stat. tit. 12A §2-314)
### (Against Sandoz)

11717. Oklahoma Class Representatives Billy Naab and Demarco Grayson incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11718. This cause of action is brought on behalf of the Oklahoma-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11719. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Oklahoma Class Representatives and members of the Oklahoma Class and was in the business of selling such products.

11720. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11721. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11722. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11723. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11724. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11725. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

11726. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11727. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11728. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 31.     Causes of Action on Behalf of the Oregon-Sandoz Classes

#### COUNT 812
#### Violation of the Oregon Unlawful Trade Practices Act
#### (Or. Rev. Stat. Ann. §646.605, *et seq.*)
#### (Against Sandoz)

11729. Oregon Class Representative Kristi Ledbetter incorporates the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11730. This cause of action is brought on behalf of the Oregon-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11731. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Or. Rev. Stat. Ann. §646.605(4).

11732. The Ranitidine-Containing Products are "goods" within the meaning of Or. Rev. Stat. Ann. §646.605(6).

11733. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Or. Rev. Stat. Ann. §646.605(8).

11734. The Oregon Unlawful Trade Practices Act ("Oregon UTPA") prohibits "unlawful practice . . . in the course of the person's business."  Or. Rev. Stat. Ann. §646.608(1).

11735. The Oregon UTPA makes unlawful specific acts, including:

(a)     "[r]epresent[ing] that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have" (Or. Rev. Stat. Ann. §646.608(1)(e));

(b)     "[r]epresent[ing] that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if the real estate, goods or services are of another" (Or. Rev. Stat. Ann. §646.608(1)(g));

(c)     "[a]dvertis[ing] real estate, goods or services with intent not to provide the real estate, goods or services as advertised" (Or. Rev. Stat. Ann. §646.608(1)(i)); and

(d)     "[e]ngag[ing] in any other unfair or deceptive conduct in trade or commerce" (Or. Rev. Stat. Ann. §646.608(1)(u)).

11736. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oregon UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11737. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Oregon UTPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

11738. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

11739. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

11740. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11741. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11742. Plaintiff and the Class members were aggrieved by Defendant's violations of the Oregon UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11743. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11744. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11745. As a result of Defendant's violations of the Oregon UTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Oregon UTPA.

<div align="center">

**COUNT 813**
**Unjust Enrichment**
**(Oregon Law)**
**(Against Sandoz)**

</div>

11746. Oregon Class Representative Kristi Ledbetter incorporates the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11747. This cause of action is brought on behalf of the Oregon-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11748. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11749. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11750. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11751. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11752. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11753. There is no express contract governing this dispute.

11754. Plaintiff and the Class members do not have an adequate remedy at law.

**COUNT 814**
**Breach of Implied Warranty**
**(Or. Rev. Stat. Ann. §72.3140)**
**(Against Sandoz)**

11755. Oregon Class Representative Kristi Ledbetter incorporates the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11756. This cause of action is brought on behalf of the Oregon-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11757. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Oregon Class Representatives and members of the Oregon Class and was in the business of selling such products.

11758. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11759. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11760. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11761. Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11762. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11763. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

11764. Further, Plaintiff and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11765. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11766. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

32.     **Causes of Action on Behalf of the Pennsylvania-Sandoz Classes**

**COUNT 815**
**Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**(73 Pa. Cons. Stat. §201-1, *et seq.*)**
**(Against Sandoz)**

11767. Pennsylvania Class Representatives Nicholas Hazlett, Felicia Ball, and Elmer Cook incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11768. This cause of action is brought on behalf of the Pennsylvania-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11769. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of 73 Pa. C.S. §201-2(2).

11770. Plaintiffs and the Class members purchased the Ranitidine-Containing Products "primarily for personal, family or household purposes" within the meaning of 73 Pa. C.S. §201-9.2(a).

11771. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of 73 Pa. C.S. §201-2(3).

11772. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. C.S. §201-3.

11773. The Pennsylvania CPL makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (73 Pa. C.S. §201-2(4)(v));

- 2444 -

(b)     "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (73 Pa. C.S. §201-2(4)(vii));

(c)     "[a]dvertising goods or services with intent not to sell them as advertised" (73 Pa. C.S. §201-2(4)(ix)); and

(d)     "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" (73 Pa. C.S. §201-2(4)(xxi)).

11774. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11775. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Pennsylvania CPL, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

11776. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11777. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11778. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11779. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11780. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

11781. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Pennsylvania CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11782. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11783. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

11784. As a result of Defendant's violations of the Pennsylvania CPL, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Pennsylvania CPL.

<div style="text-align:center">

**COUNT 816**
**Unjust Enrichment**
**(Pennsylvania Law)**
**(Against Sandoz)**

</div>

11785. Pennsylvania Class Representatives Nicholas Hazlett, Felicia Ball, and Elmer Cook incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11786. This cause of action is brought on behalf of the Pennsylvania-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11787. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11788. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom

11789. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11790. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11791. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11792. There is no express contract governing this dispute.

11793. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 817**
**Breach of Implied Warranty**
**(13 Pa. Cons. Stat. §2314)**
**(Against Sandoz)**

11794. Pennsylvania Class Representatives Nicholas Hazlett, Felicia Ball, and Elmer Cook incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11795. This cause of action is brought on behalf of the Pennsylvania-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11796. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Pennsylvania Class Representatives and members of the Pennsylvania Class and was in the business of selling such products.

11797. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11798. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11799. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11800. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11801. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11802. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

11803. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11804. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11805. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 33.   Causes of Action on Behalf of the Puerto Rico-Sandoz Classes

**COUNT 818**
**Unjust Enrichment**
**(Puerto Rico Law)**
**(Against Sandoz)**

11806. Puerto Rico Class Representatives Sonia Diaz and Gloria Colon incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11807. This cause of action is brought on behalf of the Puerto Rico-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11808. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11809. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11810. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

11811. Defendants' enrichment – the monies obtained from Plaintiffs' and the Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and the Class members' impoverishment – i.e., Plaintiffs' and the Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

11812. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11813. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11814. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 819**
**Breach of Implied Warranty**
**(P.R. Laws Ann. tit. 31, §3841)**
**(Against Sandoz)**

11815. Puerto Rico Class Representatives Sonia Diaz and Gloria Colon incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11816. This cause of action is brought on behalf of the Puerto Rico-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11817. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Puerto Rico Class Representatives and members of the Puerto Rico Class and was in the business of selling such products.

11818. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11819. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11820. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11821. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11822. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11823. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

11824. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11825. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11826. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 34. Causes of Action on Behalf of the South Carolina-Sandoz Classes

### COUNT 820
### Violation of the South Carolina Unfair Trade Practices Act
### (S.C. Code Ann. §39-5-10, *et seq.*)
### (Against Sandoz)

11827. South Carolina Class Representatives Annie Johnson, Michael Futrell, Jeffery Gunwall, Sharon Mclellan, and Marianella Villanueva incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11828. This cause of action is brought on behalf of the South Carolina-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11829. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of S.C. Code Ann. §39-5-10(a).

11830. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of S.C. Code Ann. §39-5-10(b).

11831. The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  S.C. Code Ann. §39-5-20(a).

11832. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11833. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the South Carolina UTPA.

11834. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11835. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11836. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11837. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11838. Plaintiffs and the Class members were aggrieved by Defendant's violations of the South Carolina UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11839. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11840. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

11841. As a result of Defendant's violations of the South Carolina UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the South Carolina UTPA.

## COUNT 821
### Unjust Enrichment
### (South Carolina Law)
### (Against Sandoz)

11842. South Carolina Class Representatives Annie Johnson, Michael Futrell, Jeffery Gunwall, Sharon Mclellan, and Marianella Villanueva incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11843. This cause of action is brought on behalf of the South Carolina-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11844. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11845. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11846. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11847. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11848. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11849. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 822**
**Breach of Implied Warranty**
**(S.C. Code Ann. §36-2-314)**
**(Against Sandoz)**

</div>

11850. South Carolina Class Representatives Annie Johnson, Michael Futrell, Jeffery Gunwall, Sharon Mclellan, and Marianella Villanueva incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11851. This cause of action is brought on behalf of the South Carolina-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11852. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to South Carolina Class Representatives and members of the South Carolina Class and was in the business of selling such products.

11853. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11854. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11855. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11856. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11857. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11858. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

11859. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11860. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11861. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

35.     **Causes of Action on Behalf of the Tennessee-Sandoz Classes**

### COUNT 823
### Violation of the Tennessee Consumer Protection Act of 1977
### (Tenn. Code Ann. §47-18-101, *et seq.*)
### (Against Sandoz)

11862. Tennessee Class Representatives Angela Taylor, Kenneth Hix, Eva Broughton, Rebecca Howard, Pam Turner, and Billie Walker incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11863. This cause of action is brought on behalf of the Tennessee-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11864. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tenn. Code Ann. §47-18-103(14).

11865. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tenn. Code Ann. §47-18-103(3).

11866. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tenn. Code Ann. §47-18-103(8).

11867. Defendant was and is engaged in "[t]rade" or "commerce" or "consumer transaction[s]" within the meaning of Tenn. Code Ann. §47-18-103(20).

11868. The Tennessee Consumer Protection Act of 1977 ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce."  Tenn. Code Ann. §47-18-104(a).

11869. The Tennessee CPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tenn. Code Ann. §47-18-104(b)(5));

(b)     "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (Tenn. Code Ann. §47-18-104(b)(7)); and

(c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Tenn. Code Ann. §47-18-104(b)(9)).

11870. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11871. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Tennessee CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

11872. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11873. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11874. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11875. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11876. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Tennessee CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11877. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11878. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11879. As a result of Defendant's violations of the Tennessee CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Tennessee CPA.

<div align="center">

**COUNT 824**
**Unjust Enrichment**
**(Tennessee Law)**
**(Against Sandoz)**

</div>

11880. Tennessee Class Representatives Angela Taylor, Kenneth Hix, Eva Broughton, Rebecca Howard, Pam Turner, and Billie Walker incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11881. This cause of action is brought on behalf of the Tennessee-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11882. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11883. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11884. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11885. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11886. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11887. There is no existing, enforceable contract governing this dispute.

11888. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 825
## Breach of Implied Warranty
## (Tenn. Code Ann. §47-2-314)
## (Against Sandoz)

11889. Tennessee Class Representatives Angela Taylor, Kenneth Hix, Eva Broughton, Rebecca Howard, Pam Turner, and Billie Walker incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11890. This cause of action is brought on behalf of the Tennessee-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11891. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Tennessee Class Representatives and members of the Tennessee Class and was in the business of selling such products.

11892. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11893. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11894. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11895. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11896. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11897. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

11898. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11899. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11900. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 36.     Causes of Action on Behalf of the Texas-Sandoz Classes

### COUNT 826
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
### (Tex. Bus. & Com. Code Ann. §17.41, *et seq.*)
### (Against Sandoz)

11901. Texas Class Representatives Timberly Goble, Marianella Villanueva, Marilyn Abraham, Maria Eames, Tina Howard, Christopher Johnson, Gina Martinez, Tonya Overstreet, Gregory Alan Wayland, and Sylvia Yoshida incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11902. This cause of action is brought on behalf of the Texas-Sandoz Class (for the purpose
of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect
to prescription Ranitidine.

11903. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning
of Tex. Bus. & Com. Code Ann. §17.45(3).

11904. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex.
Bus. & Com. Code Ann. §17.45(4).

11905. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus.
& Com. Code Ann. §17.45(1).

11906. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of
Tex. Bus. & Com. Code Ann. §17.45(6).

11907. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA")
prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or
commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course
of action," which means "an act or practice which, to a consumer's detriment, takes advantage of
the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."
Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

11908. The Texas DTPA makes unlawful specific acts, including:

(a)     "representing that goods or services have sponsorship, approval,
        characteristics, ingredients, uses, benefits, or quantities that they do not
        have" (Tex. Bus. & Com. Code Ann. §17.46(5));

(b)     "representing that goods or services are of a particular standard, quality, or
        grade, or that goods are of a particular style or model, if they are of another"
        (Tex. Bus. & Com. Code Ann. §17.46(7)); and

(c)     "advertising goods or services with intent not to sell them as advertised"
        (Tex. Bus. & Com. Code Ann. §17.46(9)).

11909. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11910. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

11911. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11912. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

11913. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

- 2469 -

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11914. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11915. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

11916. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11917. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11918. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11919. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

11920. As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

## COUNT 827
### Unjust Enrichment
### (Texas Law)
### (Against Sandoz)

11921. Texas Class Representatives Timberly Goble, Marianella Villanueva, Marilyn Abraham, Maria Eames, Tina Howard, Christopher Johnson, Gina Martinez, Tonya Overstreet, Gregory Alan Wayland, and Sylvia Yoshida incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11922. This cause of action is brought on behalf of the Texas-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11923. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11924. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11925. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11926. It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11927. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11928. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### COUNT 828
### Breach of Implied Warranty
### (Tex. Bus. & Com. Code Ann. §2-314)
### (Against Sandoz)

11929. Texas Class Representatives Timberly Goble, Marianella Villanueva, Marilyn Abraham, Maria Eames, Tina Howard, Christopher Johnson, Gina Martinez, Tonya Overstreet, Gregory Alan Wayland, and Sylvia Yoshida incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11930. This cause of action is brought on behalf of the Texas-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11931. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

11932. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11933. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11934. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11935. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11936. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11937. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

11938. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11939. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11940. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 37.     Causes of Action on Behalf of the Utah-Sandoz Classes

### COUNT 829
### Violation of the Utah Consumer Sales Practices Act
### (Utah. Code Ann. §13-11-1, *et seq.*)
### (Against Sandoz)

11941. Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11942. This cause of action is brought on behalf of the Utah-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11943. Defendant is a "[s]upplier" within the meaning of Utah Code Ann. §13-11-3(6).

11944. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Utah Code Ann. §13-11-3(5).

11945. Defendant was and is engaged in "consumer transactions" within the meaning of Utah Code Ann. §13-11-3(2)(a).

11946. The Utah Consumer Sales Practices Act ("Utah CSPA") prohibits any "deceptive act or practice by a supplier in connection with a consumer transaction."  Utah Code Ann. §13-11-4(1).  "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA.  Utah Code Ann. §13-11-5(1).

11947. The Utah CSPA makes unlawful specific acts, including:

(a) "indicat[ing] that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" (Utah Code Ann. §13-11-4(2)(a)); and

(b) "indicat[ing] that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not" (Utah Code Ann. §13-11-4(2)(b)).

11948. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah CSPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11949. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Utah CSPA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have; and

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not.

11950. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

11951. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

11952. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11953. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11954. Plaintiff and the Class members were aggrieved by Defendant's violations of the Utah CSPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11955. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11956. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

11957. As a result of Defendant's violations of the Utah CSPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Utah CSPA.

### COUNT 830
### Violation of the Utah Truth in Advertising Law
### (Utah Code Ann. §13-11a-1, *et seq.*)
### (Against Sandoz)

11958. Utah Class Representatives Teresa Waters incorporates the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11959. This cause of action is brought on behalf of the Utah-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11960. Defendant is a "[s]upplier" within the meaning of Utah Code Ann. §13-11a-2(17).

11961. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Utah Code Ann. §13-11a-2(7).

11962. The Ranitidine-Containing Products are "goods" within the meaning of Utah Code Ann. §13-11a-2(4).

11963. The Utah Truth in Advertising Law ("Utah TAL") prohibits any deceptive practice undertaken "in the course of a person's business."  Utah Code Ann. §13-11a-3(1).

11964. The Utah TAL makes unlawful specific acts, including:

    (a)    "represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have" (Utah Code Ann. §13-11a-3(1)(e));

    (b)    "represent[ing] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Utah Code Ann. §13-11a-3(1)(g));

(c)    "advertis[ing] goods or services with intent not to sell them as advertised" (Utah Code Ann. §13-11a-3(1)(i)); and

(d)    "engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding" (Utah Code Ann. §13-11a-3(1)(t)).

11965. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah TAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11966. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Utah TAL, including:

(a)    representing that Ranitidine-Containing Products were both safe and effective for the lifetime of the product, when in fact, they were not;

(b)    representing that consumption of Ranitidine-Containing Products had characteristics, ingredients, uses, benefits, or qualities that they do not have;

(c)    representing that Ranitidine-Containing Products are of a particular standard, quality, or grade when they are not;

(d)    advertising Ranitidine-Containing Products with the intent not to sell them as advertised; and

(e)    engaging in any other conduct that creates a likelihood of confusion.

11967. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

11968. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

11969. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

11970. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

11971. Plaintiff and the Class members were aggrieved by Defendant's violations of the Utah TAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

11972. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

11973. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

11974. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public. In addition, on May 21, 2020, Plaintiff in MDL 2924 sent a notice letter to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seeks all damages and relief to which Plaintiff and the Class members are entitled.

11975. As a result of Defendant's violations of the Utah TAL, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Utah TAL.

## COUNT 831
### Unjust Enrichment
### (Utah Law)
### (Against Sandoz)

11976. Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11977. This cause of action is brought on behalf of the Utah-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11978. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

11979. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

11980. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

11981. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

11982. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

11983. Plaintiff and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 832**
**Breach of Implied Warranty**
**(Utah. Code Ann. §70A-2-314)**
**(Against Sandoz)**

</div>

11984. Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11985. This cause of action is brought on behalf of the Utah-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11986. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Utah Class Representatives and members of the Utah Class and was in the business of selling such products.

11987. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11988. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11989. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

11990. Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11991. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

11992. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

11993. Further, Plaintiff and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

11994. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

11995. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

38.     **Causes of Action on Behalf of the Vermont-Sandoz Classes**

### COUNT 833
### Violation of the Vermont Consumer Fraud Act
### (Vt. Stat. Ann. tit. 9, §2451, *et seq.*)
### (Against Sandoz)

11996. Vermont Class Representatives Renee Clark, Eric Ragis, and Lisa Ragis incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

11997. This cause of action is brought on behalf of the Vermont-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

11998. Defendant is a "[s]eller" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(c).

11999. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(a).

12000. The Ranitidine-Containing Products are "[g]oods" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(b).

12001. The Vermont consumer fraud act ("Vermont CFA") prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." Vt. Stat. Ann. tit. 9, §2453(a).

12002. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Vermont CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12003. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Vermont CFA.

12004. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12005. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12006. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12007. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12008. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Vermont CFA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12009. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12010. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12011. As a result of Defendant's violations of the Vermont CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Vermont CFA.

## COUNT 834
### Unjust Enrichment
### (Vermont Law)
### (Against Sandoz)

12012. Vermont Class Representatives Renee Clark, Eric Ragis, and Lisa Ragis incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12013. This cause of action is brought on behalf of the Vermont-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12014. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12015. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12016. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12017. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12018. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12019. There is no express contract governing this dispute.

12020. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 835**
**Breach of Implied Warranty**
**(Vt. Stat. Ann. tit. 9A§2-314)**
**(Against Sandoz)**

12021. Vermont Class Representatives Renee Clark, Eric Ragis, and Lisa Ragis incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12022. This cause of action is brought on behalf of the Vermont-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12023. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Vermont Class Representatives and members of the Vermont Class and was in the business of selling such products.

12024. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12025. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12026. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

12027. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12028. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12029. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

12030. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

12031. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

12032. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 39.    Causes of Action on Behalf of the Virginia-Sandoz Classes

### COUNT 836
### Violation of the Virginia Consumer Protection Act
### (Va. Code Ann. §59.1-196, *et seq.*)
### (Against Sandoz)

12033. Virginia Class Representatives Karen Foster, Cheryl Banks, and Lynn Costley incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12034. This cause of action is brought on behalf of the Virginia-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12035. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Va. Code Ann. §59.1-198.

12036. Defendant was and is a "[s]upplier" within the meaning of Va. Code Ann. §59.1-198.

12037. The Ranitidine-Containing Products are "[g]oods" within the meaning of Va. Code Ann. §59.1-198.

12038. Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Va. Code Ann. §59.1-198.

12039. The Virginia Consumer Protection Act ("Virginia CPA") prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Va. Code Ann. §59.1-200(A).

12040. The Virginia CPA makes unlawful specific acts, including:

(a) "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" (Va. Code Ann. §59.1-200(A)(5));

(b) "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model" (Va. Code Ann. §59.1-200(A)(6));

(c) "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" (Va. Code Ann. §59.1-200(A)(8)); and

(d) "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" (Va. Code Ann. §59.1-200(A)(14)).

12041. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12042. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Virginia CPA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

12043. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12044. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12045. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12046. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12047. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

12048. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Virginia CPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12049. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12050. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12051. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

12052. As a result of Defendant's violations of the Virginia CPA, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Virginia CPA.

## COUNT 837
## Unjust Enrichment
## (Virginia Law)
## (Against Sandoz)

12053. Virginia Class Representatives Karen Foster, Cheryl Banks, and Lynn Costley incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12054. This cause of action is brought on behalf of the Virginia-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12055. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12056. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12057. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12058. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12059. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12060. There is no express contract governing this dispute.

12061. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 838**
**Breach of Implied Warranty**
**(Va. Code Ann. §8.2-314)**
**(Against Sandoz)**

</div>

12062. Virginia Class Representatives Karen Foster, Cheryl Banks, and Lynn Costley incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12063. This cause of action is brought on behalf of the Virginia-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12064. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Virginia Class Representatives and members of the Virginia Class and was in the business of selling such products.

12065. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12066. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12067. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

12068. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12069. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12070. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

12071. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

12072. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

12073. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 40.     Causes of Action on Behalf of the Washington-Sandoz Classes

**COUNT 839**
**Violation of the Washington Consumer Protection Act**
**(Wash. Rev. Code Ann. §19.86.010, *et seq.*)**
**(Against Sandoz)**

12074. Washington Class Representatives Billy Naab, Steve Fischer, Dave Garber, and Bridget Peck incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12075. This cause of action is brought on behalf of the Washington-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12076. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Wash. Rev. Code Ann. §19.86.010(1).

12077. The Ranitidine-Containing Products are "[a]ssets" within the meaning of Wash. Rev. Code Ann. §19.86.010(3).

12078. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Wash. Rev. Code Ann. §19.86.010(2).

12079. The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. §19.86.020.

12080. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12081. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington CPA.

12082. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12083. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12084. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12085. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12086. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Washington CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12087. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12088. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12089. On June 22, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Wash. Rev. Code §19.86.095 to the Attorney General of the State of Washington.

12090. As a result of Defendant's violations of the Washington CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Washington CPA.

<div align="center">

**COUNT 840**
**Unjust Enrichment**
**(Washington Law)**
**(Against Sandoz)**

</div>

12091. Washington Class Representatives Billy Naab, Steve Fischer, Dave Garber, and Bridget Peck incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12092. This cause of action is brought on behalf of the Washington-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12093. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12094. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12095. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12096. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12097. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12098. There is no express contract governing this dispute.

12099. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 841**
**Breach of Implied Warranty**
**(Wash. Rev. Code §62A.2-314)**
**(Against Sandoz)**

</div>

12100. Washington Class Representatives Billy Naab, Steve Fischer, Dave Garber, and Bridget Peck incorporate the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12101. This cause of action is brought on behalf of the Washington-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12102. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Washington Class Representatives and members of the Washington Class and was in the business of selling such products.

12103. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12104. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12105. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

12106. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12107. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12108. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

12109. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

12110. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

12111. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

41.     **Causes of Action on Behalf of the West Virginia-Sandoz Class**

**COUNT 842**
**Unjust Enrichment**
**(West Virginia Law)**
**(Against Sandoz)**

12112. West Virginia Class Representative Mynetta Hastings incorporates the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12113. This cause of action is brought on behalf of the West Virginia-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12114. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12115. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12116. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12117. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12118. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12119. There is no express contract governing this dispute.

12120. Plaintiff and the Class members do not have an adequate remedy at law.

<div style="text-align:center">

**COUNT 843**
**Breach of Implied Warranty**
**(W. Va. Code §46-2-314)**
**(Against Sandoz)**

</div>

12121. West Virginia Class Representative Mynetta Hastings incorporates the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12122. This cause of action is brought on behalf of the West Virginia-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12123. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to West Virginia Class Representatives and members of the West Virginia Class and was in the business of selling such products.

12124. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12125. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12126. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

12127. Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12128. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12129. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

12130. Further, Plaintiff and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

12131. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

12132. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 42. Causes of Action on Behalf of the Wisconsin-Sandoz Class

### COUNT 844
### Violation of the Wisconsin Deceptive Trade Practices Act
### (Wis. Stat. Ann. §100.18, *et seq.*)
### (Against Sandoz)

12133. Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12134. This cause of action is brought on behalf of the Wisconsin-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12135. Defendant is a "person, firm, corporation or association" within the meaning of Wis. Stat. Ann. §100.18(1).

12136. Plaintiff and the Class members are members of "the public" within the meaning of Wis. Stat. Ann. §100.18(1).

12137. The Ranitidine-Containing Products are "merchandise" within the meaning of Wis. Stat. Ann. §100.18(1).

12138. The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits any "assertion, representation or statement of fact which is untrue, deceptive or misleading."  Wis. Stat. Ann. §100.18(1).

12139. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Wisconsin DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12140. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Wisconsin DTPA.

12141. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

12142. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

12143. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12144. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12145. Plaintiff and the Class members were aggrieved by Defendant's violations of the Wisconsin DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12146. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12147. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

12148. As a result of Defendant's violations of the Wisconsin DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Wisconsin DTPA.

### COUNT 845
### Unjust Enrichment
### (Wisconsin Law)
### (Against Sandoz)

12149. Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12150. This cause of action is brought on behalf of the Wisconsin-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12151. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12152. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12153. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12154. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12155. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12156. There is no express contract governing this dispute.

12157. Plaintiff and the Class members do not have an adequate remedy at law.

## COUNT 846
### Breach of Implied Warranty
### (Wis. Stat. Ann. §402.314)
### (Against Sandoz)

12158. Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 60-62, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12159. This cause of action is brought on behalf of the Wisconsin-Sandoz Class (for the purpose of this section, "Class") against Sandoz (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12160. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Wisconsin Class Representatives and members of the Wisconsin Class and was in the business of selling such products.

12161. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12162. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12163. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

12164. Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12165. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12166. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

12167. Further, Plaintiff and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

12168. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

12169. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### E.       Causes of Action Against Strides

12170. For the purposes of the subsequent causes of action against Defendant Strides, Plaintiffs are incorporating the following allegations by reference: paragraphs 63-66 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic Zantac); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469

(requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 845-867 (misrepresentations or omissions of material fact in labeling); and 475-483 (equitable tolling).

12171. Plaintiffs identified in the table below bring claims against Defendant Strides with respect to prescription Ranitidine on behalf of themselves and their respective State Classes under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| **Plaintiff Name** | **State(s) of Residence** |
|---|---|
| Daffeney Austin | Alabama |
| Lashonnah Gaitor | Alabama |
| Tammy Smith | Alaska |
| Monica Costello | Arizona, Nevada |
| Jennifer Fox | Arizona |
| Armando Tapia | Arizona |
| Tina Culclager | Arkansas |
| Martha Summers | Arkansas, Mississippi |
| Virginia Aragon | California |
| Golbenaz Bakhtiar | California |
| Royal Handy | California |
| Angel Cordero | Connecticut |
| Kevin Nelson | District of Columbia |
| Irma Arcaya | Florida |
| Jeannie Black | Florida |
| Sonia Diaz | Florida, Puerto Rico |
| Michael Fesser | Florida |
| Karen Foster | Florida, Virginia |
| Hattie Kelley | Florida |
| Marva Mccall | Florida |

| | |
|---|---|
| Clifton McKinnon | Florida |
| Ana Pereira | Florida |
| Daniel Taylor | Florida |
| Joyce Taylor | Florida |
| Michael Tomlinson | Florida |
| Earlene Green | Georgia |
| Leon Greene | Georgia |
| Tyrone Houston | Georgia |
| Kathy Jeffries | Georgia |
| Charlotte Sanders | Georgia |
| Paula Shells | Georgia |
| Cynthia Starr | Georgia |
| Angela Taylor | Georgia |
| Heather Re | Illinois |
| Teresa Dowler | Indiana |
| Timberly Goble | Indiana, Kentucky |
| Alyson Humphrey | Indiana |
| Rebecca Sizemore | Indiana |
| Tracy Wells | Indiana |
| Charles Longfield | Iowa |
| Tracy Losee | Iowa |
| Randy Jones | Louisiana |
| Jamie Mckay | Louisiana |
| Alberta Griffin | Maryland |
| Darlene Whittington-Coates | Maryland |
| Nicholas Hazlett | Maryland, Pennsylvania |
| Jose Amado | Massachusetts |
| Rafael Bermudez | Massachusetts, New Hampshire |
| Ana Guzman | Massachusetts |

| Michelle Smith | Massachusetts |
| --- | --- |
| Myra Allen | Michigan |
| Jody Beal | Michigan |
| Benny Cope | Michigan |
| Arthur Gamble | Michigan |
| Jerry Hunt | Michigan |
| Judy Wilmot | Michigan |
| Lakisha Wilson | Michigan |
| Sandra Erickson-Brown | Minnesota |
| Donald Northrup | Minnesota |
| Beverly Crosby | Mississippi |
| Dorothy King | Mississippi |
| Lora Mauffray | Mississippi |
| Korcis McMillan | Mississippi |
| Michelle Tinker | Mississippi |
| David Weatherly | Mississippi |
| Elaine Aaron | Missouri |
| Lisa Deckard | Missouri |
| Cynthia Gibbs | Missouri |
| Brenda Newcomb | Missouri |
| David Rice | New Hampshire |
| Sayed Eldomiaty | New Jersey |
| Mary McMillian | New Jersey |
| Mary Moronski | New Jersey |
| Lynn White | New Jersey |
| Phyllis Gallegos | New Mexico |
| Josefina Griego | New Mexico |
| Carrie Martinez | New Mexico |
| Inez Mazon | New Mexico |

| Ernesto Sanchez | New Mexico |
|---|---|
| George Tapia | New Mexico |
| Aida Carlo | New York |
| Silomie Clarke | New York |
| Nereida Cordero | New York |
| Benny Fazio | New York |
| Migdalia Kinney | New York |
| Mary McCullen | New York |
| Joseph Mcpheter | New York |
| Steven Murdock | New York |
| Glorimar Rodriguez | New York |
| Phyllis Spuler | New York |
| Mary Lou Wagner | New York |
| Acia D'amore | North Carolina |
| Teresa Lee | North Carolina |
| Sharon Parks | North Carolina |
| Dennis Robbins | North Carolina |
| Julie Turner | North Carolina |
| Michael Galloway | Ohio |
| Patricia Hess | Ohio |
| Demarco Grayson | Oklahoma |
| Kristi Ledbetter | Oregon |
| Felicia Ball | Pennsylvania |
| Elmer Cook | Pennsylvania |
| Gloria Colon | Puerto Rico |
| Michael Futrell | South Carolina |
| Jeffery Gunwall | South Carolina |
| Annie Johnson | South Carolina |
| Sharon Mclellan | South Carolina |

| Rebecca Howard | Tennessee |
|---|---|
| Pam Turner | Tennessee |
| Billie Walker | Tennessee |
| Marilyn Abraham | Texas |
| Maria Eames | Texas |
| Christopher Johnson | Texas |
| Gina Martinez | Texas |
| Tonya Overstreet | Texas |
| Marianella Villanueva | Texas |
| Gregory Alan Wayland | Texas |
| Sylvia Yoshida | Texas |
| Teresa Waters | Utah |
| Renee Clark | Vermont |
| Eric Ragis | Vermont |
| Lisa Ragis | Vermont |
| Cheryl Banks | Virginia |
| Lynn Costley | Virginia |
| Steve Fischer | Washington |
| Dave Garber | Washington |
| Bridget Peck | Washington |
| Mynetta Hastings | West Virginia |
| Wendy Quezaire | Wisconsin |

1.      **Causes of Action on Behalf of the Alabama-Strides Classes**

**COUNT 847**
**Violation of the Alabama Deceptive Trade Practices Act**
**(Ala. Code §8-19-1, *et seq.*)**
**(Against Strides)**

12172. Alabama Class Representatives Daffeney Austin and Lashonnah Gaitor incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12173. This cause of action is brought on behalf of the Alabama-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12174. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of Ala. Code §8-19-3(5).

12175. Plaintiffs and the Class members are "consumer[s]" within the meaning of Ala. Code §8-19-3(2).

12176. The Ranitidine-Containing Products are "goods" within the meaning of Ala. Code §8-19-3(3).

12177. Defendant was and is engaged in "trade or commerce" within the meaning of Ala. Code §8-19-3(8).

12178. The Alabama Deceptive Trade Practices Act ("Alabama DTPA") prohibits "deceptive acts or practices in the conduct of any trade or commerce."  Ala. Code §8-19-5.

12179. The Alabama DTPA makes unlawful specific acts, including:

(a)      "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have" (Ala. Code §8-19-5(5));

    (b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Ala. Code §8-19-5(7));

    (c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Ala. Code §8-19-5(9)); and

    (d)     "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce" (Ala. Code §8-19-5(27)).

12180. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Alabama DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of N-Nitrosodimethylamine ("NDMA") as time passed.

12181. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Alabama DTPA, including:

    (a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

12182. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12183. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12184. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12185. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12186. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

12187. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Alabama DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12188. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12189. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

12190. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Ala. Code §8-19-10(e) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

12191. As a result of Defendant's violations of the Alabama DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Alabama DTPA.

**COUNT 848**
**Unjust Enrichment**
**(Alabama Law)**
**(Against Strides)**

12192. Alabama Class Representatives Daffeney Austin and Lashonnah Gaitor incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12193. This cause of action is brought on behalf of the Alabama-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12194. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12195. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12196. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12197. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12198. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12199. Plaintiffs and the Class members do not have an adequate remedy at law.

### 2. Causes of Action on Behalf of the Alaska-Strides Classes

### COUNT 849
### Violation of the Alaska Unfair Trade Practices and Consumer Protection Act
### (Alaska Stat. Ann. §45.50.471, *et seq.*)
### (Against Strides)

12200. Alaska Class Representative Tammy Smith incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12201. This cause of action is brought on behalf of the Alaska-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12202. Plaintiff and the Class members are "consumer[s]" within the meaning of Alaska Stat. Ann. §45.50.561(a)(4).

12203. The Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce."  Alaska Stat. Ann. §45.50.471(a).

12204. The Alaska CPA makes unlawful specific acts, including:

    (a)     "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Alaska Stat. Ann. §45.50.471(b)(4));

    (b)     "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Alaska Stat. Ann. §45.50.471(b)(6));

    (c)     "advertising goods or services with intent not to sell them as advertised" (Alaska Stat. Ann. §45.50.471(b)(8));

    (d)     "engaging in any other conduct creating a likelihood of confusion or of misunderstanding and that misleads, deceives, or damages a buyer or a competitor in connection with the sale or advertisement of goods or services" (Alaska Stat. Ann. §45.50.471(b)(11)); and

    (e)     "using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived, or damaged" (Alaska Stat. Ann. §45.50.471(b)(12)).

12205. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Alaska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12206. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Alaska CPA, including:

    (a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

12207. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

12208. Defendant's misrepresentations and omissions regarding the expiration of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

12209. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12210. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12211. Plaintiff and the Class members were aggrieved by Defendant's violations of the Alaska CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12212. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12213. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12214. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiff in MDL 2924 sent a notice letter pursuant to Alaska Stat. Ann. §45.50.535(b)(1) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seeks all damages and relief to which Plaintiff and the Class members are entitled.

12215. As a result of Defendant's violations of the Alaska CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Alaska CPA.

**COUNT 850**
**Unjust Enrichment or Quasi-Contract**
**(Alaska Law)**
**(Against Strides)**

12216. Alaska Class Representative Tammy Smith incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12217. This cause of action is brought on behalf of the Alaska-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12218. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12219. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12220. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12221. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12222. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12223. Plaintiff and the Class members do not have an adequate remedy at law.

### 3.    Causes of Action on Behalf of the Arizona-Strides Classes

**COUNT 851**
**Violation of the Arizona Consumer Fraud Act**
**(Ariz. Rev. Stat. Ann. §44-1521, *et seq.*)**
**(Against Strides)**

12224. Arizona Class Representatives Monica Costello, Jennifer Fox, and Armando Tapia incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12225. This cause of action is brought on behalf of the Arizona-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12226. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(6).

12227. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(5).

12228. The Arizona Consumer Fraud Act ("Arizona CFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." Ariz. Rev. Stat. Ann. §44-1522(A).

12229. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Arizona CFA by recklessly, wantonly, knowingly, and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12230. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Arizona CFA.

12231. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12232. Defendant's misreprsentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a unform manner.

12233. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12234. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12235. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

12236. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Arizona CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12237. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12238. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12239. As a result of Defendant's violations of the Arizona CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

**COUNT 852**
**Unjust Enrichment**
**(Arizona Law)**
**(Against Strides)**

12240. Arizona Class Representatives Monica Costello, Jennifer Fox, and Armando Tapia incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12241. This cause of action is brought on behalf of the Arizona-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12242. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12243. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12244. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12245. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12246. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12247. Plaintiffs and the Class members do not have an adequate remedy at law.

### 4.    Causes of Action on Behalf of the Arkansas-Strides Classes

### COUNT 853
### Violation of the Arkansas Deceptive Trade Practices Act
### (Ark. Code Ann. §4-88-101, *et seq.*)
### (Against Strides)

12248. Arkansas Class Representatives Tina Culclager and Martha Summers incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12249. This cause of action is brought on behalf of the Arkansas-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12250. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ark. Code Ann. §4-88-102(5).

12251. The Ranitidine-Containing Products are "[g]oods" within the meaning of Ark. Code Ann. §4-88-102(4).

12252. The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices."  Ark. Code Ann. §4-88-107(a).

12253. The Arkansas DTPA makes unlawful specific acts, including:

(a)     "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" (Ark. Code Ann. §4-88-107(a)(1));

(b)     "[a]dvertising the goods or services with the intent not to sell them as advertised" (Ark. Code Ann. §4-88-107(a)(3)); and

(c)     "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" (Ark. Code Ann. §4-88-107(a)(10)).

12254. The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission . . . ." Ark. Code Ann. §4-88-108(a).

12255. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12256. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Arkansas DTPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

12257. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12258. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12259. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12260. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12261. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and

continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

12262. Plaintiffs and the Class members were aggrieved by Defendant's violations of Arkansas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12263. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12264. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12265. As a result of Defendant's violations of the Arkansas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

<div align="center">

**COUNT 854**
**Unjust Enrichment**
**(Arkansas Law)**
**(Against Strides)**

</div>

12266. Arkansas Class Representatives Tina Culclager and Martha Summers incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12267. This cause of action is brought on behalf of the Arkansas-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12268. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12269. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12270. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12271. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12272. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12273. There is no valid, legal, and binding contract governing this dispute.

12274. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 855**
**Breach of Implied Warranty**
**(Ark. Code Ann. §4-2-314)**
**(Against Strides)**

12275. Arkansas Class Representatives Tina Culclager and Martha Summers incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12276. This cause of action is brought on behalf of the Arkansas-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12277. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arkansas Class Representatives and members of the Arkansas Class and was in the business of selling such products.

12278. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12279. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12280. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

12281. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12282. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12283. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

12284. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

12285. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

12286. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## 5.   Causes of Action on Behalf of the California-Strides Classes

### COUNT 856
**Violation of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code §17200, *et seq.*)**
**(Against Strides)**

12287. California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12288. This cause of action is brought on behalf of the California-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12289. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

12290. Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

12291. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and

failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

12292. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL.  These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

12293. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12294. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12295. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12296. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12297. Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, CAL. HEALTH & SAFETY CODE §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

12298. Defendant conduct also consitutes "unfair" business acts or practies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

12299. Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21

C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, *see* Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

12300. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12301. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12302. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12303. Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

**COUNT 857**
**Violation of the California False Advertising Law**
**(Cal. Bus. & Prof. Code §17500, *et seq.*)**
**(Against Strides)**

12304. California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12305. This cause of action is brought on behalf of the California-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12306. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

12307. The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code §17500.

12308. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products

remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12309. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

> (a)  representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

> (b)  representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

> (c)  advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

> (d)  engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

12310. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12311. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12312. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12313. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12314. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12315. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12316. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12317. As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

**COUNT 858**
**Violation of the California Consumers Legal Remedies Act**
**(Cal. Civ. Code §1750, *et seq.*)**
**(Against Strides)**

12318. California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12319. This cause of action is brought on behalf of the California-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12320. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

12321. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

12322. The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

12323. The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §1770(a).

12324. The California CLRA makes unlawful specific acts, including:

(a) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

(b) "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

(c) "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

(d) "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

12325. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12326. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

12327. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12328. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12329. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12330. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12331. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

12332. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12333. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

12334. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public. In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

12335. Pursuant to Cal. Civ. Code §1780(a), Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA. Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA. Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons. Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person. One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

## COUNT 859
### Unjust Enrichment or Quasi-Contract
### (California Law)
### (Against Strides)

12336. California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12337. This cause of action is brought on behalf of the California-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12338. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12339. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12340. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12341. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12342. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12343. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 860**
**Breach of Implied Warranty**
**(Cal. Com. Code §2314)**
**(Against Strides)**

12344. California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12345. This cause of action is brought on behalf of the California-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12346. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to California Class Representatives and members of the California Class and was in the business of selling such products.

12347. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12348. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12349. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

12350. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12351. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12352. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

12353. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

12354. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

12355. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 6.     Causes of Action on Behalf of the Connecticut-Strides Class

### COUNT 861
### Violation of the Connecticut Unfair Trade Practices Act
### (Conn. Gen. Stat. Ann. §42-110a, *et seq.*)
### (Against Strides)

12356. Connecticut Class Representative Angel Cordero incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12357. This cause of action is brought on behalf of the Connecticut-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12358. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Conn. Gen. Stat. Ann. §42-110a(3).

12359. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. §42-110a(4).

12360. The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. §42-110b(a).

12361. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12362. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Connecticut UTPA.

12363. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

12364. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

12365. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12366. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12367. Plaintiff and the Class members were aggrieved by Defendant's violations of the Connecticut UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12368. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12369. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12370. As a result of Defendant's violations of the Connecticut UTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

## COUNT 862
## Unjust Enrichment
## (Connecticut Law)
## (Against Strides)

12371. Connecticut Class Representative Angel Cordero incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12372. This cause of action is brought on behalf of the Connecticut-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12373. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12374. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12375. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12376. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12377. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12378. Plaintiff and the Class members do not have an adequate remedy at law.

### 7. Causes of Action on Behalf of the District of Columbia-Strides Classes

### COUNT 863
### Violation of the District of Columbia Consumer Protection Procedures Act
### (D.C. Code Ann. §28-3901, *et seq.*)
### (Against Strides)

12379. District of Columbia Class Representative Kevin Nelson incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12380. This cause of action is brought on behalf of the District of Columbia-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12381. Defendant, Plaintiff, and the Class members are "person[s]" within the meaning of D.C. Code Ann. §28-3901(a)(1).

12382. Plaintiff and the Class members are "consumer[s]" within the meaning of D.C. Code Ann. §28-3901(a)(2).

12383. The Ranitidine-Containing Products are "goods" within the meaning of D.C. Code Ann. §28-3901(a)(7).

12384. Defendant was and is engaged in "trade practice[s]" within the meaning of D.C. Code Ann. §28-3901(a)(6).

12385. The District of Columbia Consumer Protection Procedures Act ("District of Columbia CPPA") prohibits "unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby."  D.C. Code Ann. §28-3904.

12386. The District of Columbia CPPA makes unlawful specific acts, including:

(a) "represent[ing] that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have" (D.C. Code Ann. §28-3904(a));

(b) "represent[ing] that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another" (D.C. Code Ann. §28-3904(d));

(c) "advertis[ing] or offer[ing] goods or services without the intent to sell them or without the intent to sell them as advertised or offered" (D.C. Code Ann. §28-3904(h));

(d) "misrepresent as to a material fact which has a tendency to mislead" (D.C. Code Ann. §28-3904(e));

(e) "fail to state a material fact if such failure tends to mislead" (D.C. Code Ann. §28-3904(f)); and

(f) "[u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead" (D.C. Code Ann. §28-3904(f-1)).

12387. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the District of Columbia CPPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12388. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the District of Columbia CPPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

    (d)    using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive;

    (e)    acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid; and

    (f)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

12389. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

12390. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

12391. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12392. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12393. Plaintiff and the Class members were aggrieved by Defendant's violations of the District of Columbia CPPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12394. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12395. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12396. As a result of Defendant's violations of the District of Columbia CPPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the District of Columbia CPPA.

**COUNT 864**
**Unjust Enrichment**
**(District of Columbia Law)**
**(Against Strides)**

12397. District of Columbia Class Representative Kevin Nelson incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12398. This cause of action is brought on behalf of the District of Columbia-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12399. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12400. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12401. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12402. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12403. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12404. There is no express written contract governing this dispute.

12405. Plaintiff and the Class members do not have an adequate remedy at law.

**8.    Causes of Action on Behalf of the Florida-Strides Classes**

**COUNT 865**
**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**(Fla. Stat. Ann. §501.201, *et seq.*)**
**(Against Strides)**

12406. Florida Class Representatives Irma Arcaya, Jeannie Black, Sonia Diaz, Michael Fesser, Karen Foster, Hattie Kelley, Marva Mccall, Clifton McKinnon, Ana Pereira, Daniel Taylor, Joyce Taylor, and Michael Tomlinson incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12407. This cause of action is brought on behalf of the Florida-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12408. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. Ann. §501.204(1).

12409. In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017." Fla. Stat. Ann. §501.204(2).

12410. Plaintiffs and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA. *See* Fla. Stat. Ann. §501.203(6)-(7).

12411. Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA. *See* Fla. Stat. Ann. §501.203(8).

12412. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12413. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

12414. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12415. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12416. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12417. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12418. Plaintiffs and the Class members were aggrieved by Defendant's violations of FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12419. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12420. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12421. As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

<div align="center">

**COUNT 866**
**Unjust Enrichment**
**(Florida Law)**
**(Against Strides)**

</div>

12422. Florida Class Representatives Irma Arcaya, Jeannie Black, Sonia Diaz, Michael Fesser, Karen Foster, Hattie Kelley, Marva Mccall, Clifton McKinnon, Ana Pereira, Daniel Taylor, Joyce Taylor, and Michael Tomlinson incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12423. This cause of action is brought on behalf of the Florida-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12424. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12425. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered an impoverishment because they purchased worthless medications and did not receive the expected benefit therefrom.

12426. Defendant voluntarily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12427. It is unjust and inequitable for the Defendant to retain these benefits without paying the value thereof because the benefits were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12428. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12429. There is no express written contract governing this dispute.

12430. Plaintiffs and the Class members do not have an adequate remedy at law.

### 9.    Causes of Action on Behalf of the Georgia-Strides Classes

**COUNT 867**
**Violation of the Georgia Fair Business Practices Act**
**(Ga. Code Ann. §10-1-390, *et seq.*)**
**(Against Strides)**

12431. Georgia Class Representatives Earlene Green, Leon Greene, Tyrone Houston, Kathy Jeffries, Charlotte Sanders, Paula Shells, Cynthia Starr, and Angela Taylor incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12432. This cause of action is brought on behalf of the Georgia-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12433. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(24).

12434. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(6).

12435. Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Ga. Code Ann. §10-1-392(a)(28).

12436. The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."  Ga. Code Ann. §10-1-393(a).

12437. The Georgia FBPA makes unlawful specific acts, including:

(a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-393(b)(5));

(b)    "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-393(b)(7)); and

(c)    "[a]dvertising goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-393(b)(9)).

12438. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time

period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12439. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia FBPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

12440. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12441. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12442. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12443. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12444. Plaintiffs and the Class members reasonably relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

12445. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Georgia FBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12446. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12447. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12448. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual

notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Ga. Code Ann. §10-1-399(b) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

12449. As a result of Defendant's violations of the Georgia FBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Georgia FBPA.

<div align="center">

**COUNT 868**
**Unjust Enrichment**
**(Georgia Law)**
**(Against Strides)**

</div>

12450. Georgia Class Representatives Earlene Green, Leon Greene, Tyrone Houston, Kathy Jeffries, Charlotte Sanders, Paula Shells, Cynthia Starr, and Angela Taylor incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12451. This cause of action is brought on behalf of the Georgia-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12452. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12453. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12454. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12455. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12456. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12457. There is no express contract governing this dispute.

12458. Plaintiffs and the Class members do not have an adequate remedy at law.

10.     **Causes of Action on Behalf of the Illinois-Strides Classes**

**COUNT 869**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**(815 Ill. Comp. Stat. Ann. 505/1, *et seq.*)**
**(Against Strides)**

12459. Illinois Class Representative Heather Re incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12460. This cause of action is brought on behalf of the Illinois-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12461. Defendant, Plaintiff, and the Class members are "person[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(c).

12462. Plaintiff and the Class members are "consumer[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(e).

12463. The Ranitidine-Containing Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(b).

12464. Defendant was and is engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(f).

12465. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade

Practices Act' [815 Ill. Comp. Stat. Ann. 510/2], approved August 5, 1965, in the conduct of any trade or commerce." 815 Ill. Comp. Stat. Ann. 505/2.

12466. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12467. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFDBPA.

12468. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

12469. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

12470. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12471. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12472. Plaintiff and the Class members were aggrieved by Defendant's violations of the Illinois CFDBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12473. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12474. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12475. As a result of Defendant's violations of the Illinois CFDBPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFDBPA.

**COUNT 870**
**Unjust Enrichment**
**(Illinois Law)**
**(Against Strides)**

12476. Illinois Class Representative Heather Re incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12477. This cause of action is brought on behalf of the Illinois-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12478. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12479. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12480. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12481. It violates the principles of justice, equity, and good conscience for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing

the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12482. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12483. Plaintiff and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

### 11.   Causes of Action on Behalf of the Indiana-Strides Classes

<div align="center">

**COUNT 871**
**Unjust Enrichment**
**(Indiana Law)**
**(Against Strides)**

</div>

12484. Indiana Class Representatives Teresa Dowler, Timberly Goble, Alyson Humphrey, Rebecca Sizemore, and Tracy Wells incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12485. This cause of action is brought on behalf of the Indiana-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12486. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12487. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12488. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12489. It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12490. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12491. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

**COUNT 872**
**Breach of Implied Warranty**
**(Ind. Code. Ann. §26-1-2-314)**
**(Against Strides)**

12492. Indiana Class Representatives Teresa Dowler, Timberly Goble, Alyson Humphrey, Rebecca Sizemore, and Tracy Wells incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12493. This cause of action is brought on behalf of the Indiana-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12494. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Indiana Class Representatives and members of the Indiana Class and was in the business of selling such products.

12495. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12496. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12497. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

12498. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12499. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12500. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

12501. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

12502. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

12503. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 12.    Causes of Action on Behalf of the Iowa-Strides Classes

### COUNT 873
### Violation of the Iowa Private Right of Action for Consumer Frauds Act
### (Iowa Code Ann. §714H.1, *et seq.*)
### (Against Strides)

12504. Iowa Class Representatives Charles Longfield and Tracy Losee incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12505. This cause of action is brought on behalf of the Iowa-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12506. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Iowa Code Ann. §714H.2(7).

12507. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Iowa Code Ann. §714H.2(3).

12508. The Iowa Private Right of Action for Consumer Frauds Act ("Iowa PRACFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise."  Iowa Code Ann. §714H.3(1).

12509. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Iowa PRACFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Defendant did so with willful and wanton disregard for the rights and safety of others.

12510. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Iowa PRACFA.

12511. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12512. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12513. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12514. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12515. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Iowa PRACFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12516. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out- of-pocket loss.

12517. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

12518. As a result of Defendants' violations of the Iowa PRACFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Iowa PRACFA.

12519. Additionally, because Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged

herein, were undertaken in willful and wanton disregard for the rights and safety of others, pursuant to Iowa Code §714H.5(4), Plaintiffs and the Class members seek an additonal award of treble damages.

**COUNT 874**
**Unjust Enrichment**
**(Iowa Law)**
**(Against Strides)**

12520. Iowa Class Representatives Charles Longfield and Tracy Losee incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12521. This cause of action is brought on behalf of the Iowa-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12522. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12523. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12524. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12525. It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12526. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12527. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

### COUNT 875
### Breach of Implied Warranty
### (Iowa Code Ann. §554.2314)
### (Against Strides)

12528. Iowa Class Representatives Charles Longfield and Tracy Losee incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12529. This cause of action is brought on behalf of the Iowa-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12530. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Iowa Class Representatives and members of the Iowa Class and was in the business of selling such products.

12531. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12532. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12533. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

12534. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12535. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12536. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

12537. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

12538. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

12539. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 13.    Causes of Action on Behalf of the Kentucky-Strides Classes

**COUNT 876**
**Violation of the Kentucky Consumer Protection Act**
**(Ky. Rev. Stat. Ann. §367.110,** *et seq.***)**
**(Against Strides)**

12540. Kentucky Class Representative Timberly Goble incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12541. This cause of action is brought on behalf of the Kentucky-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12542. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Ky. Rev. Stat. Ann. §367.110(1).

12543. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Ky. Rev. Stat. Ann. §367.110(2).

12544. The Kentucky Consumer Protection Act ("Kentucky CPA") prohibits "[u]nfair, [unconscionable], false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. Ann. §367.170(1)-(2).

12545. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12546. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Kentucky CPA.

12547. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

12548. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

12549. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12550. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12551. Plaintiff and the Class members were aggrieved by Defendant's violations of the Kentucky CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12552. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12553. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12554. As a result of Defendant's violations of the Kentucky CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Kentucky CPA.

<div align="center">

**COUNT 877**
**Unjust Enrichment**
**(Kentucky Law)**
**(Against Strides)**

</div>

12555. Kentucky Class Representative Timberly Goble incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12556. This cause of action is brought on behalf of the Kentucky-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12557. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12558. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12559. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12560. It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12561. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12562. Plaintiff and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 878**
**Breach of Implied Warranty**
**(Ky. Rev. Stat. Ann. §355.2-314)**
**(Against Strides)**

</div>

12563. Kentucky Class Representative Timberly Goble incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12564. This cause of action is brought on behalf of the Kentucky-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12565. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Kentucky Class Representatives and members of the Kentucky Class and was in the business of selling such products.

12566. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12567. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12568. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

12569. Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12570. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12571. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

12572. Further, Plaintiff and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

12573. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

12574. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 14.    Causes of Action on Behalf of the Louisiana-Strides Classes

### COUNT 879
### Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law
### (La. Stat. Ann. §51:1401, *et seq.*)
### (Against Strides)

12575. Louisiana Class Representatives Randy Jones and Jamie Mckay incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12576. This cause of action is brought on behalf of the Louisiana-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12577. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of La. Stat. Ann. §51:1402(8).

12578. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of La. Stat. Ann. §51:1402(1).

12579. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of La. Stat. Ann. §51:1402(10).

12580. The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Stat. Ann. §51:1405(A).

12581. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12582. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Louisiana CPL.

12583. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12584. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12585. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12586. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12587. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

12588. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Louisiana CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12589. Specifically, Plaintiffs and the Class were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12590. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12591. As a result of Defendant's violations of the Louisiana CPL, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Louisiana CPL.

<div align="center">

**COUNT 880**
**Unjust Enrichment**
**(Louisiana Law)**
**(Against Strides)**

</div>

12592. Louisiana Class Representatives Randy Jones and Jamie Mckay incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12593. This cause of action is brought on behalf of the Louisiana-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12594. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12595. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12596. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

12597. Defendants' enrichment – the monies obtained from Plaintiffs for the Ranitidine Containing Products – was the result of Plaintiffs' impoverishment – the receipt by Plaintiffs of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

12598. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12599. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12600. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 881**
**Breach of Implied Warranty**
**(La. Civ. Code Ann. art. §2520)**
**(Against Strides)**

</div>

12601. Louisiana Class Representatives Randy Jones and Jamie Mckay incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12602. This cause of action is brought on behalf of the Louisiana-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12603. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Louisiana Class Representatives and members of the Louisiana Class and was in the business of selling such products.

12604. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12605. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12606. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

12607. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12608. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12609. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

12610. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

12611. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

12612. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

15.     **Causes of Action on Behalf of the Maryland-Strides Classes**

### COUNT 882
### Violation of the Maryland Consumer Protection Act
### (Md. Code Ann., Com. Law §13-101, *et seq.*)
### (Against Strides)

12613. Maryland Class Representatives Nicholas Hazlett, Alberta Griffin, and Darlene Whittington-Coates incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12614. This cause of action is brought on behalf of the Maryland-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12615. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Md. Code Ann., Com. Law §13-101(h).

12616. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Md. Code Ann., Com. Law §13-101(c)(1).

12617. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Md. Code Ann., Com. Law §13-101(f).

12618. The Maryland Consumer Protection Act ("Maryland CPA") prohibits "[u]nfair, abusive, or deceptive trade practices." Md. Code Ann., Com. Law §13-301.

12619. The Maryland CPA makes unlawful specific acts, including:

(a)     "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" (Md. Code Ann., Com. Law §13-301(1));

(b)     "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have" (Md. Code Ann., Com. Law §13-301(2)(i));

- 2601 -

(c)     "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not" (Md. Code Ann., Com. Law §13-301(2)(iv));

(d)     "[f]ailure to state a material fact if the failure deceives or tends to deceive" (Md. Code Ann., Com. Law §13-301(3));

(e)     "[a]dvertis[ing] or offer[ing] of consumer goods, consumer realty, or consumer services . . . [w]ithout intent to sell, lease, or rent them as advertised or offered" (Md. Code Ann., Com. Law §13-301(5)(i)); and

(f)     "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with . . . [t]he promotion or sale of any consumer goods" (Md. Code Ann., Com. Law §13-301(9)(i)).

12620. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12621. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Maryland CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)     failing to disclose that the Ranitidine-Containing Products are defective and inherently dangerous in the course of the sale of the Ranitidine-Containing Products; and

(e)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

12622. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12623. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12624. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12625. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12626. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

12627. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Maryland CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12628. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12629. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12630. As a result of Defendant's violations of the Maryland CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

<div align="center">

**COUNT 883**
**Unjust Enrichment**
**(Maryland Law)**
**(Against Strides)**

</div>

12631. Maryland Class Representatives Nicholas Hazlett, Alberta Griffin, and Darlene Whittington-Coates incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12632. This cause of action is brought on behalf of the Maryland-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12633. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12634. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12635. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12636. It would be unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12637. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the

value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12638. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 884**
**Breach of Implied Warranty**
**(Md. Code Ann. §2-314)**
**(Against Strides)**

12639. Maryland Class Representatives Nicholas Hazlett, Alberta Griffin, and Darlene Whittington-Coates incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12640. This cause of action is brought on behalf of the Maryland-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12641. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Maryland Class Representatives and members of the Maryland Class and was in the business of selling such products.

12642. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12643. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12644. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

12645. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12646. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12647. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

12648. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

12649. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

12650. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 16. Causes of Action on Behalf of the Massachusetts-Strides Classes

### COUNT 885
### Violation of the Deceptive Acts or Practices Prohibited by Massachusetts Law
(Mass. Gen. Laws Ann. ch. 93a, §1, *et seq.*)
(Against Strides)

12651. Massachusetts Class Representatives Jose Amado, Rafael Bermudez, Ana Guzman, and Michelle Smith incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12652. This cause of action is brought on behalf of the Massachusetts-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12653. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(a).

12654. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(b).

12655. The Massachusetts consumer protection law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ann. ch. 93A, §2(a).

12656. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-

Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12657. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Massachusetts Act.

12658. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12659. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12660. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12661. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12662. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Massachusetts Act because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12663. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12664. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12665. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Mass. Gen. Laws Ann. ch. 93A, §9(3) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

12666. As a result of Defendant's violations of the Massachusetts Act, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Massachusetts Act.

**COUNT 886**
**Unjust Enrichment**
**(Massachusetts Law)**
**(Against Strides)**

12667. Massachusetts Class Representatives Jose Amado, Rafael Bermudez, Ana Guzman, and Michelle Smith incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12668. This cause of action is brought on behalf of the Massachusetts-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12669. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12670. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12671. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

12672. Defendant's enrichment – the monies obtained from Plaintiffs' and the Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and the Class members' impoverishment – i.e., Plaintiffs' and the Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

12673. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12674. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12675. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 887**
**Breach of Implied Warranty**
**(Mass. Gen. Laws Ann. ch. 106 §2-314)**
**(Against Strides)**

</div>

12676. Massachusetts Class Representatives Jose Amado, Rafael Bermudez, Ana Guzman, and Michelle Smith incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12677. This cause of action is brought on behalf of the Massachusetts-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12678. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Massachusetts Class Representatives and members of the Massachusetts Class and was in the business of selling such products.

12679. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12680. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12681. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

12682. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12683. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12684. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

12685. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

12686. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

12687. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 17.    Causes of Action on Behalf of the Michigan-Strides Classes

### COUNT 888
### Violation of the Michigan Consumer Protection Act
### (Mich. Comp. Laws Ann. §445.901, *et seq.*)
### (Against Strides)

12688. Michigan Class Representatives Myra Allen, Jody Beal, Benny Cope, Arthur Gamble, Jerry Hunt, Judy Wilmot, and Lakisha Wilson incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12689. This cause of action is brought on behalf of the Michigan-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12690. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(d).

12691. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(g).

12692. The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws Ann. §445.903(1).

12693. The Michigan CPA makes unlawful specific acts, including:

    (a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Mich. Comp. Laws Ann. §445.903(1)(c));

    (b)    "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Mich. Comp. Laws Ann. §445.903(1)(e)); and

    (c)    "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented" (Mich. Comp. Laws Ann. §445.903(1)(g)).

12694. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12695. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Michigan CPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

12696. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12697. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12698. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12699. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12700. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Michigan CPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12701. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12702. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12703. As a result of Defendant's violations of the Michigan CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Michigan CPA.

<div align="center">

**COUNT 889**
**Unjust Enrichment**
**(Michigan Law)**
**(Against Strides)**

</div>

12704. Michigan Class Representatives Myra Allen, Jody Beal, Benny Cope, Arthur Gamble, Jerry Hunt, Judy Wilmot, and Lakisha Wilson incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12705. This cause of action is brought on behalf of the Michigan-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12706. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12707. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12708. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12709. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12710. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12711. There is no express contract governing this dispute.

12712. Plaintiffs and the Class members do not have an adequate remedy at law.

### 18.    Causes of Action on Behalf of the Minnesota-Strides Classes

### COUNT 890
### Violation of the Minnesota Prevention of Consumer Fraud Act
### (Minn. Stat. Ann. §325F.68, *et seq.*)
### (Against Strides)

12713. Minnesota Class Representatives Sandra Erickson-Brown and Donald Northrup incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12714. This cause of action is brought on behalf of the Minnesota-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12715. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

12716. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

12717. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged."  Minn. Stat. Ann. §325F.69(1).  Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

12718. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12719. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

12720. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12721. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12722. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12723. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12724. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

12725. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12726. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12727. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12728. As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

**COUNT 891**
**Unjust Enrichment**
**(Minnesota Law)**
**(Against Strides)**

12729. Minnesota Class Representatives Sandra Erickson-Brown and Donald Northrup incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12730. This cause of action is brought on behalf of the Minnesota-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12731. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12732. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12733. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12734. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12735. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12736. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 892**
**Breach of Implied Warranty**
**(Minn. Stat. Ann. §336.2-314)**
**(Against Strides)**

12737. Minnesota Class Representatives Sandra Erickson-Brown and Donald Northrup incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12738. This cause of action is brought on behalf of the Minnesota-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12739. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

12740. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12741. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12742. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

12743. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12744. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12745. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

12746. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

12747. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

12748. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 19.    Causes of Action on Behalf of the Mississippi-Strides Classes

**COUNT 893**
**Unjust Enrichment**
**(Mississippi Law)**
**(Against Strides)**

12749. Mississippi Class Representatives Martha Summers, Beverly Crosby, Dorothy King, Lora Mauffray, Korcis McMillan, Michelle Tinker, and David Weatherly incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12750. This cause of action is brought on behalf of the Mississippi-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12751. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12752. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

12753. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12754. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12755. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12756. There is no express contract governing this dispute.

12757. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 894**
**Breach of Implied Warranty**
**(Miss. Code Ann. §75-2-314)**
**(Against Strides)**

12758. Mississippi Class Representatives Martha Summers, Beverly Crosby, Dorothy King, Lora Mauffray, Korcis McMillan, Michelle Tinker, and David Weatherly incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12759. This cause of action is brought on behalf of the Mississippi-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12760. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Mississippi Class Representatives and members of the Mississippi Class and was in the business of selling such products.

12761. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12762. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12763. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

12764. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12765. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12766. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

12767. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

12768. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

12769. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law

### 20.    Causes of Action on Behalf of the Missouri-Strides Classes

### COUNT 895
### Violation of the Missouri Merchandising Practices Act
### (Mo. Rev. Stat. §407.010, *et seq.*)
### (Against Strides)

12770. Missouri Class Representatives Elaine Aaron, Lisa Deckard, Cynthia Gibbs, and Brenda Newcomb incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12771. This cause of action is brought on behalf of the Missouri-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12772. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mo. Ann. Stat. §407.010(5).

12773. Defendant was and is engaged in "[t]rade or commerce" within the meaning of Mo. Ann. Stat. §407.010(7).

12774. The Missouri Merchandising Practices Act ("Missouri MPA") prohibits "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce."  Mo. Ann. Stat. §407.020(1).

12775. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-

Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12776. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Missouri MPA.

12777. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12778. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12779. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12780. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12781. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Missouri MPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12782. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12783. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12784. As a result of Defendant's violations of the Missouri MPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Missouri MPA.

**COUNT 896**
**Unjust Enrichment**
**(Missouri Law)**
**(Against Strides)**

12785. Missouri Class Representatives Elaine Aaron, Lisa Deckard, Cynthia Gibbs, and Brenda Newcomb incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12786. This cause of action is brought on behalf of the Missouri-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12787. This cause of action is brought on behalf of the Missouri Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12788. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12789. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12790. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12791. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the

Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12792. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12793. There is no express contract governing this dispute.

12794. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 897**
**Breach of Implied Warranty**
**(Mo. Rev. Stat. §400.2-314)**
**(Against Strides)**

</div>

12795. Missouri Class Representatives Elaine Aaron, Lisa Deckard, Cynthia Gibbs, and Brenda Newcomb incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12796. This cause of action is brought on behalf of the Missouri-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12797. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Missouri Class Representatives and members of the Missouri Class and was in the business of selling such products.

12798. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12799. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12800. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

12801. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12802. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12803. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

12804. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

12805. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

12806. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 21.    Causes of Action on Behalf of the Nevada-Strides Classes

### COUNT 898
### Violation of the Nevada Deceptive Trade Practices Act
### (Nev. Rev. Stat. Ann. §598.0903, *et seq.*)
### (Against Strides)

12807. Nevada Class Representative Monica Costello incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12808. This cause of action is brought on behalf of the Nevada-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12809. The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), prohibits the use of "'deceptive trade practices' . . . in the course of . . . business or occupation."  Nev. Rev. Stat. Ann. §598.0915.

12810. The Nevada DTPA makes unlawful specific acts, including:

(a)    "[k]nowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for

sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith" (Nev. Rev. Stat. Ann. §598.0915(5));

(b)    "[r]epresent[ing] that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model" (Nev. Rev. Stat. Ann. §598.0915(7));

(c)    "[a]dvertis[ing] goods or services with intent not to sell or lease them as advertised" (Nev. Rev. Stat. Ann. §598.0915(9));

(d)    "[k]nowingly mak[ing] any other false representation in a transaction" (Nev. Rev. Stat. Ann. §598.0915(15)); and

(e)    "[f]ail[ing] to disclose a material fact in connection with the sale or lease of goods or services" (Nev. Rev. Stat. Ann. §598.0923(2)).

12811. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12812. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Nevada DTPA, including:

(a)    representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)     failing to disclose the NDMA danger in connection with the sale of the Ranitidine-Containing Products; and

(e)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

12813. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

12814. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

12815. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12816. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12817. Plaintiff and the Class members were aggrieved by Defendant's violations of the Nevada DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12818. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12819. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12820. As a result of Defendant's violations of the Nevada DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Nevada DTPA.

<div align="center">

**COUNT 899**
**Unjust Enrichment**
**(Nevada Law)**
**(Against Strides)**

</div>

12821. Nevada Class Representative Monica Costello incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12822. This cause of action is brought on behalf of the Nevada-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12823. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12824. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12825. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12826. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12827. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12828. There is no express contract governing this dispute.

12829. Plaintiff and the Class members do not have an adequate remedy at law.

22.     **Causes of Action on Behalf of the New Hampshire-Strides Classes**

**COUNT 900**
**Violation of the New Hampshire Consumer Protection Act**
**(N.H. Rev. Stat. Ann. §358-A:1,** *et seq.***)**
**(Against Strides)**

12830. New Hampshire Class Representatives Rafael Bermudez and David Rice incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12831. This cause of action is brought on behalf of the New Hampshire-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12832. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of N.H. Rev. Stat. Ann. §358-A:1(I).

12833. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of N.H. Rev. Stat. Ann. §358-A:1(II).

12834. The New Hampshire Consumer Protection Act ("New Hampshire CPA") prohibits "any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce."  N.H. Rev. Stat. Ann. §358-A:2.

12835. The New Hampshire CPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (N.H. Rev. Stat. Ann. §358-A:2(V));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." (N.H. Rev. Stat. Ann. §358-A:2(VII)); and

(c)     "[a]dvertising goods or services with intent not to sell them as advertised." (N.H. Rev. Stat. Ann. §358-A:2(IX)).

12836. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Hampshire CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12837. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Hampshire CPA, including:

(a)     representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

12838. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12839. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12840. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

- 2641 -

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12841. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12842. Plaintiffs and the Class members were aggrieved by Defendant's violations of New Hampshire CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12843. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12844. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12845. As a result of Defendant's violations of the New Hampshire CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Hampshire CPA.

**COUNT 901**
**Unjust Enrichment**
**(New Hampshire Law)**
**(Against Strides)**

12846. New Hampshire Class Representatives Rafael Bermudez and David Rice incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12847. This cause of action is brought on behalf of the New Hampshire-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12848. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12849. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12850. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12851. It is unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12852. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12853. There is no valid, express contract governing this dispute.

12854. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 902**
**Breach of Implied Warranty**
**(N.H. Rev. Stat. Ann. §382-A:2-314)**
**(Against Strides)**

12855. New Hampshire Class Representatives Rafael Bermudez and David Rice incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12856. This cause of action is brought on behalf of the New Hampshire-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12857. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Hampshire Class Representatives and members of the New Hampshire Class and was in the business of selling such products.

12858. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12859. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12860. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

12861. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12862. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12863. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

12864. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

12865. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

12866. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 23.    Causes of Action on Behalf of the New Jersey-Strides Classes

**COUNT 903**
**Violation of the New Jersey Consumer Fraud Act**
**(N.J. Stat. Ann. §56:8-1,** *et seq.***)**
**(Against Strides)**

12867. New Jersey Class Representatives Sayed Eldomiaty, Mary McMillian, Mary Moronski, and Lynn White incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12868. This cause of action is brought on behalf of the New Jersey-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12869. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.J. Stat. Ann. §56:8-1(d).

12870. The Ranitidine-Containing Products are "merchandise" within the meaning of N.J. Stat. Ann. §56:8-1(c).

12871. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Jersey Consumer Fraud Act ("New Jersey CFA") by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  N.J. Stat. Ann. §56:8-1, *et seq.*

12872. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Jersey CFA.

12873. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12874. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12875. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12876. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12877. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Jersey CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12878. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12879. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12880. As a result of Defendant's violations of the New Jersey CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Jersey CFA.

**COUNT 904**
**Unjust Enrichment**
**(New Jersey Law)**
**(Against Strides)**

12881. New Jersey Class Representatives Sayed Eldomiaty, Mary McMillian    , Mary Moronski, and Lynn White incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12882. This cause of action is brought on behalf of the New Jersey-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12883. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12884. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12885. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12886. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12887. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12888. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 905**
**Breach of Implied Warranty**
**(N.J. Stat. Ann. §12A:2-314)**
**(Against Strides)**

</div>

12889. New Jersey Class Representatives Sayed Eldomiaty, Mary McMillian   , Mary Moronski, and Lynn White incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12890. This cause of action is brought on behalf of the New Jersey-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12891. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Jersey Class Representatives and members of the New Jersey Class and was in the business of selling such products.

12892. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12893. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12894. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

12895. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12896. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12897. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

12898. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

12899. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

12900. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 24.    Causes of Action on Behalf of the New Mexico-Strides Classes

### COUNT 906
### Violation of the New Mexico Unfair Trade Practices Act
### (N.M. Stat. Ann. §57-12-1, *et seq.*)
### (Against Strides)

12901. New Mexico Class Representatives Phyllis Gallegos, Josefina Griego, Carrie Martinez, Inez Mazon, Ernesto Sanchez, and George Tapia incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12902. This cause of action is brought on behalf of the New Mexico-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12903. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

12904. Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

12905. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person." N.M. Stat. Ann. §57-12-2(D). The New Mexico UTPA also makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." N.M. Stat. Ann. §57-12-2(E).

12906. The New Mexico UTPA makes unlawful specific acts, including:

(a)  "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

(b)  "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

(c)  "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

12907. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12908. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Mexico UTPA, including:

(a) representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and

(d) acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.

12909. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12910. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12911. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12912. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12913. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12914. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12915. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12916. As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

**COUNT 907**
**Unjust Enrichment**
**(New Mexico Law)**
**(Against Strides)**

12917. New Mexico Class Representatives Phyllis Gallegos, Josefina Griego, Carrie Martinez, Inez Mazon, Ernesto Sanchez, and George Tapia incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12918. This cause of action is brought on behalf of the New Mexico-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12919. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12920. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12921. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12922. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12923. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12924. There is no express contract governing this dispute.

12925. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 908**
**Breach of Implied Warranty**
**(N.M. Stat. Ann. §55-2-314)**
**(Against Strides)**

12926. New Mexico Class Representatives Phyllis Gallegos, Josefina Griego, Carrie Martinez, Inez Mazon, Ernesto Sanchez, and George Tapia incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12927. This cause of action is brought on behalf of the New Mexico-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12928. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

12929. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12930. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12931. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

12932. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12933. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12934. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

12935. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

12936. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

12937. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 25.   Causes of Action on Behalf of the New York-Strides Classes

<div align="center">

**COUNT 909**
**Violation of New York Deceptive Acts and Practices Act**
**(N.Y. Gen. Bus. Law §349)**
**(Against Strides)**

</div>

12938. New York Class Representatives Aida Carlo, Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen   , Joseph Mcpheter, Steven Murdock, Glorimar Rodriguez, Phyllis Spuler, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12939. This cause of action is brought on behalf of the New York-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12940. Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

12941. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §349(a).

12942. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12943. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

12944. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12945. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12946. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12947. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12948. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12949. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12950. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12951. As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

## COUNT 910
## Violation of the New York False Advertising Act
### (N.Y. Gen. Bus. Law §350)
### (Against Strides)

12952. New York Class Representatives Aida Carlo, Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen    ,  Joseph  Mcpheter,  Steven  Murdock,

Glorimar Rodriguez, Phyllis Spuler, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12953. This cause of action is brought on behalf of the New York-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12954. Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

12955. The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

12956. Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

12957. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time

period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12958. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

12959. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12960. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12961. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12962. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12963. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12964. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

12965. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

12966. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

12967. As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the New York Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

**COUNT 911**
**Unjust Enrichment**
**(New York Law)**
**(Against Strides)**

12968. New York Class Representatives Aida Carlo, Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen    , Joseph Mcpheter, Steven Murdock, Glorimar Rodriguez, Phyllis Spuler, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12969. This cause of action is brought on behalf of the New York-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12970. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

12971. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

12972. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12973. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

12974. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

12975. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 912**
**Breach of Implied Warranty**
**(N.Y. U.C.C. Law §2-314)**
**(Against Strides)**

12976. New York Class Representatives Aida Carlo, Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen    , Joseph Mcpheter, Steven Murdock, Glorimar Rodriguez, Phyllis Spuler, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12977. This cause of action is brought on behalf of the New York-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12978. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representatives and members of the New York Class and was in the business of selling such products.

12979. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12980. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12981. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

12982. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12983. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

12984. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

12985. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

12986. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

12987. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 26.   Causes of Action on Behalf of the North Carolina-Strides Classes

### COUNT 913
### Violation of the North Carolina Unfair and Deceptive Trade Practices Act
### (N.C. Gen. Stat. Ann. §75-1.1, *et seq.*)
### (Against Strides)

12988. North Carolina Class Representatives Acia D'amore, Teresa Lee, Sharon Parks, Dennis Robbins, and Julie Turner incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

12989. This cause of action is brought on behalf of the North Carolina-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

12990. Defendant was and is engaged in "commerce" within the meaning of N.C. Gen. Stat. Ann. §75-1.1(b).

12991. The North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," N.C. Gen. Stat. Ann. §75-1.1(a), and provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the law. N.C. Gen. Stat. Ann. §75-16.

12992. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

12993. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the North Carolina UDTPA.

12994. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12995. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

12996. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

12997. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

12998. Plaintiffs and the Class members were aggrieved by Defendant's violations of the North Carolina UDTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

12999. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13000. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13001. As a result of Defendant's violations of the North Carolina UDTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive

acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the North Carolina UDTPA.

## COUNT 914
### Unjust Enrichment
### (North Carolina Law)
### (Against Strides)

13002. North Carolina Class Representatives Acia D'amore, Teresa Lee, Sharon Parks, Dennis Robbins, and Julie Turner incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13003. This cause of action is brought on behalf of the North Carolina-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13004. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13005. The benefit provided by Plaintiffs and the Class members was not conferred gratuitously, and in exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13006. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13007. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13008. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13009. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

## COUNT 915
### Breach of Implied Warranty
### (N.C. Gen. Stat. Ann. §25-2-314)
### (Against Strides)

13010. North Carolina Class Representatives Acia D'amore, Teresa Lee, Sharon Parks, Dennis Robbins, and Julie Turner incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13011. This cause of action is brought on behalf of the North Carolina-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13012. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to North Carolina Class Representatives and members of the North Carolina Class and was in the business of selling such products.

13013. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13014. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13015. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

13016. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13017. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13018. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

13019. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

13020. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

13021. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**27.     Causes of Action on Behalf of the Ohio-Strides Classes**

**COUNT 916**
**Unjust Enrichment**
**(Ohio Law)**
**(Against Strides)**

13022. Ohio Class Representatives Michael Galloway and Patricia Hess incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13023. This cause of action is brought on behalf of the Ohio-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13024. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13025. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13026. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13027. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13028. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13029. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 917**
**Breach of Implied Warranty**
**(Ohio Rev. Code Ann. §1302.27)**
**(Against Strides)**

</div>

13030. Ohio Class Representatives Michael Galloway and Patricia Hess incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13031. This cause of action is brought on behalf of the Ohio-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13032. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Ohio Class Representatives and members of the Ohio Class and was in the business of selling such products.

13033. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13034. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13035. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

13036. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13037. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13038. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

13039. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

13040. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

13041. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**28.    Causes of Action on Behalf of the Oklahoma-Strides Classes**

**COUNT 918**
**Violation of the Oklahoma Consumer Protection Act**
**(Okla. Stat. tit. 15, §751, *et seq.*)**
**(Against Strides)**

13042. Oklahoma Class Representative Demarco Grayson incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13043. This cause of action is brought on behalf of the Oklahoma-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13044. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Okla. Stat. tit. 15, §752(1).

13045. Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Okla. Stat. tit. 15, §752(2).

13046. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Okla. Stat. tit. 15, §752(7).

13047. The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits numerous unlawful acts, including misleading representations, false advertisements, and false statements. Okla. Stat. tit. 15, §753.   The Oklahoma CPA defines "[d]eceptive trade practice" as "a misrepresentation, omission or other practice that has deceived or . . . mislead a person to the

detriment of that person." Okla. Stat. tit. 15, §752(13). The Oklahoma CPA defines "[u]nfair trade practice" as "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Okla. Stat. tit. 15, §752(14).

13048. The Oklahoma CPA makes unlawful specific acts, including:

(a)  "[m]ak[ing] a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction" (Okla. Stat. tit. 15, §753(5));

(b)  "[r]epresent[ing], knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another" (Okla. Stat. tit. 15, §753(7));

(c)  "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised" (Okla. Stat. tit. 15, §753(8)); and

(d)  "[c]ommit[ting] an unfair or deceptive trade practice as defined in Section 752" (Okla. Stat. tit. 15, §753(20)).

13049. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13050. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Oklahoma CPA, including:

(a)  representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

13051. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13052. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13053. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13054. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13055. Plaintiff and the Class members were aggrieved by Defendant's violations of Oklahoma CPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13056. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13057. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

13058. As a result of Defendant's violations of the Oklahoma CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Oklahoma CPA.

<div align="center">

**COUNT 919**
**Unjust Enrichment**
**(Oklahoma Law)**
**(Against Strides)**

</div>

13059. Oklahoma Class Representative Demarco Grayson incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13060. This cause of action is brought on behalf of the Oklahoma-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13061. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13062. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13063. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13064. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13065. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13066. Plaintiff and the Class members do not have an adequate remedy at law.

**COUNT 920**
**Breach of Implied Warranty**
**(Okla. Stat. tit. 12A §2-314)**
**(Against Strides)**

13067. Oklahoma Class Representative Demarco Grayson incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13068. This cause of action is brought on behalf of the Oklahoma-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13069. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Oklahoma Class Representatives and members of the Oklahoma Class and was in the business of selling such products.

13070. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13071. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13072. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

13073. Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13074. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13075. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

13076. Further, Plaintiff and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

13077. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

13078. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 29.      Causes of Action on Behalf of the Oregon-Strides Classes

### COUNT 921
### Violation of the Oregon Unlawful Trade Practices Act
### (Or. Rev. Stat. Ann. §646.605, *et seq.*)
### (Against Strides)

13079. Oregon Class Representative Kristi Ledbetter incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13080. This cause of action is brought on behalf of the Oregon-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13081. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Or. Rev. Stat. Ann. §646.605(4).

13082. The Ranitidine-Containing Products are "goods" within the meaning of Or. Rev. Stat. Ann. §646.605(6).

13083. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Or. Rev. Stat. Ann. §646.605(8).

13084. The Oregon Unlawful Trade Practices Act ("Oregon UTPA") prohibits "unlawful practice . . . in the course of the person's business." Or. Rev. Stat. Ann. §646.608(1).

13085. The Oregon UTPA makes unlawful specific acts, including:

   (a)    "[r]epresent[ing] that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have" (Or. Rev. Stat. Ann. §646.608(1)(e));

   (b)    "[r]epresent[ing] that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if the real estate, goods or services are of another" (Or. Rev. Stat. Ann. §646.608(1)(g));

(c)     "[a]dvertis[ing] real estate, goods or services with intent not to provide the real estate, goods or services as advertised" (Or. Rev. Stat. Ann. §646.608(1)(i)); and

(d)     "[e]ngag[ing] in any other unfair or deceptive conduct in trade or commerce" (Or. Rev. Stat. Ann. §646.608(1)(u)).

13086. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oregon UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13087. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Oregon UTPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

13088. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13089. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13090. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13091. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13092. Plaintiff and the Class members were aggrieved by Defendant's violations of the Oregon UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13093. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13094. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

13095. As a result of Defendant's violations of the Oregon UTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Oregon UTPA.

<div align="center">

**COUNT 922**
**Unjust Enrichment**
**(Oregon Law)**
**(Against Strides)**

</div>

13096. Oregon Class Representative Kristi Ledbetter incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13097. This cause of action is brought on behalf of the Oregon-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13098. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13099. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.   Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13100. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13101. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13102. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13103. There is no express contract governing this dispute.

13104. Plaintiff and the Class members do not have an adequate remedy at law.

## COUNT 923
### Breach of Implied Warranty
### (Or. Rev. Stat. Ann. §72.3140)
### (Against Strides)

13105. Oregon Class Representative Kristi Ledbetter incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13106. This cause of action is brought on behalf of the Oregon-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13107. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Oregon Class Representatives and members of the Oregon Class and was in the business of selling such products.

13108. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13109. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13110. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

13111. Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13112. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13113. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

13114. Further, Plaintiff and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

13115. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

13116. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

30.     **Causes of Action on Behalf of the Pennsylvania-Strides Classes**

### COUNT 924
**Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**(73 Pa. Cons. Stat. §201-1, *et seq.*)**
**(Against Strides)**

13117. Pennsylvania Class Representatives Nicholas Hazlett, Felicia Ball, and Elmer Cook incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13118. This cause of action is brought on behalf of the Pennsylvania-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13119. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of 73 Pa. C.S. §201-2(2).

13120. Plaintiffs and the Class members purchased the Ranitidine-Containing Products "primarily for personal, family or household purposes" within the meaning of 73 Pa. C.S. §201-9.2(a).

13121. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of 73 Pa. C.S. §201-2(3).

13122. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. C.S. §201-3.

13123. The Pennsylvania CPL makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (73 Pa. C.S. §201-2(4)(v));

(b)    "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (73 Pa. C.S. §201-2(4)(vii));

(c)    "[a]dvertising goods or services with intent not to sell them as advertised" (73 Pa. C.S. §201-2(4)(ix)); and

(d)    "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" (73 Pa. C.S. §201-2(4)(xxi)).

13124. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13125. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Pennsylvania CPL, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)    engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

13126. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

- 2693 -

13127. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13128. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13129. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13130. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

13131. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Pennsylvania CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13132. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13133. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13134. As a result of Defendant's violations of the Pennsylvania CPL, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Pennsylvania CPL.

<div align="center">

**COUNT 925**
**Unjust Enrichment**
**(Pennsylvania Law)**
**(Against Strides)**

</div>

13135. Pennsylvania Class Representatives Nicholas Hazlett, Felicia Ball, and Elmer Cook incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13136. This cause of action is brought on behalf of the Pennsylvania-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13137. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13138. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom

13139. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13140. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13141. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13142. There is no express contract governing this dispute.

13143. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 926**
**Breach of Implied Warranty**
**(13 Pa. Cons. Stat. §2314)**
**(Against Strides)**

13144. Pennsylvania Class Representatives Nicholas Hazlett, Felicia Ball, and Elmer Cook incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13145. This cause of action is brought on behalf of the Pennsylvania-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13146. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Pennsylvania Class Representatives and members of the Pennsylvania Class and was in the business of selling such products.

13147. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13148. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13149. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

13150. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13151. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13152. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

13153. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

13154. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

13155. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the
law.

### 31.    Causes of Action on Behalf of the Puerto Rico-Strides Classes

**COUNT 927**
**Unjust Enrichment**
**(Puerto Rico Law)**
**(Against Strides)**

13156. Puerto Rico Class Representatives Sonia Diaz and Gloria Colon incorporate the
preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though
fully set forth herein.

13157. This cause of action is brought on behalf of the Puerto Rico-Strides Class (for the
purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant")
with respect to prescription Ranitidine.

13158. Plaintiffs and the Class members conferred a benefit on Defendant in the form of
payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in
privity with Defendant through said transaction.

13159. In exchange for their payment of the purchase price of Defendant's Ranitidine-
Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing
Products, which included expiration dates on the products' labels that exceeded the time period
during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe
levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a
financial benefit on Defendants but did not receive their expected benefit therefrom.

13160. Defendant readily accepted and retained these benefits from Plaintiffs and the Class
members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'
expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

13161. Defendants' enrichment – the monies obtained from Plaintiffs' and the Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and the Class members' impoverishment – i.e., Plaintiffs' and the Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

13162. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13163. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13164. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 928**
**Breach of Implied Warranty**
**(P.R. Laws Ann. tit. 31, §3841)**
**(Against Strides)**

13165. Puerto Rico Class Representatives Sonia Diaz and Gloria Colon incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13166. This cause of action is brought on behalf of the Puerto Rico-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13167. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Puerto Rico Class Representatives and members of the Puerto Rico Class and was in the business of selling such products.

13168. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13169. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13170. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

13171. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13172. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13173. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

13174. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

13175. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

13176. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 32.   Causes of Action on Behalf of the South Carolina-Strides Classes

### COUNT 929
### Violation of the South Carolina Unfair Trade Practices Act
### (S.C. Code Ann. §39-5-10, *et seq.*)
### (Against Strides)

13177. South Carolina Class Representatives Michael Futrell, Jeffery Gunwall, Annie Johnson, and Sharon Mclellan incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13178. This cause of action is brought on behalf of the South Carolina-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13179. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of S.C. Code Ann. §39-5-10(a).

13180. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of S.C. Code Ann. §39-5-10(b).

13181. The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  S.C. Code Ann. §39-5-20(a).

13182. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13183. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the South Carolina UTPA.

13184. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13185. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13186. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13187. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13188. Plaintiffs and the Class members were aggrieved by Defendant's violations of the South Carolina UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13189. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13190. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

13191. As a result of Defendant's violations of the South Carolina UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the South Carolina UTPA.

<div align="center">

**COUNT 930**
**Unjust Enrichment**
**(South Carolina Law)**
**(Against Strides)**

</div>

13192. South Carolina Class Representatives Michael Futrell, Jeffery Gunwall, Annie Johnson, and Sharon Mclellan incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13193. This cause of action is brought on behalf of the South Carolina-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13194. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13195. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13196. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13197. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13198. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13199. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 931**
**Breach of Implied Warranty**
**(S.C. Code Ann. §36-2-314)**
**(Against Strides)**

</div>

13200. South Carolina Class Representatives Michael Futrell, Jeffery Gunwall, Annie Johnson, and Sharon Mclellan incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13201. This cause of action is brought on behalf of the South Carolina-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13202. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to South Carolina Class Representatives and members of the South Carolina Class and was in the business of selling such products.

13203. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13204. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13205. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

13206. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13207. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13208. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

13209. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

13210. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

13211. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

33.     **Causes of Action on Behalf of the Tennessee-Strides Classes**

**COUNT 932**
**Violation of the Tennessee Consumer Protection Act of 1977**
**(Tenn. Code Ann. §47-18-101,** *et seq.***)**
**(Against Strides)**

13212. Tennessee Class Representatives Rebecca Howard, Pam Turner, and Billie Walker incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13213. This cause of action is brought on behalf of the Tennessee-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13214. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tenn. Code Ann. §47-18-103(14).

13215. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tenn. Code Ann. §47-18-103(3).

13216. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tenn. Code Ann. §47-18-103(8).

13217. Defendant was and is engaged in "[t]rade" or "commerce" or "consumer transaction[s]" within the meaning of Tenn. Code Ann. §47-18-103(20).

13218. The Tennessee Consumer Protection Act of 1977 ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. §47-18-104(a).

13219. The Tennessee CPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tenn. Code Ann. §47-18-104(b)(5));

     (b)     "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (Tenn. Code Ann. §47-18-104(b)(7)); and

     (c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Tenn. Code Ann. §47-18-104(b)(9)).

13220. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13221. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Tennessee CPA, including:

     (a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

     (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

     (c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

13222. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13223. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13224. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13225. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13226. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Tennessee CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13227. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13228. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13229. As a result of Defendant's violations of the Tennessee CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Tennessee CPA.

<div align="center">

**COUNT 933**
**Unjust Enrichment**
**(Tennessee Law)**
**(Against Strides)**

</div>

13230. Tennessee Class Representatives Rebecca Howard, Pam Turner, and Billie Walker incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13231. This cause of action is brought on behalf of the Tennessee-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13232. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13233. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13234. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13235. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13236. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13237. There is no existing, enforceable contract governing this dispute.

13238. Plaintiffs and the Class members do not have an adequate remedy at law.

### COUNT 934
### Breach of Implied Warranty
### (Tenn. Code Ann. §47-2-314)
### (Against Strides)

13239. Tennessee Class Representatives Rebecca Howard, Pam Turner, and Billie Walker incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13240. This cause of action is brought on behalf of the Tennessee-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13241. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Tennessee Class Representatives and members of the Tennessee Class and was in the business of selling such products.

13242. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13243. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13244. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

13245. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13246. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13247. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

13248. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

13249. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

13250. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 34. Causes of Action on Behalf of the Texas-Strides Classes

### COUNT 935
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
#### (Tex. Bus. & Com. Code Ann. §17.41, *et seq.*)
#### (Against Strides)

13251. Texas Class Representatives Marilyn Abraham, Maria Eames, Christopher Johnson, Gina Martinez, Tonya Overstreet, Gregory Alan Wayland, Marianella Villanueva, and Sylvia Yoshida incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13252. This cause of action is brought on behalf of the Texas-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13253. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

13254. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

13255. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

13256. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

13257. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

13258. The Texas DTPA makes unlawful specific acts, including:

(a)  "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

(b)  "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

(c)  "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

13259. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13260. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

13261. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13262. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13263. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13264. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13265. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

13266. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13267. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13268. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13269. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

13270. As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

**COUNT 936**
**Unjust Enrichment**
**(Texas Law)**
**(Against Strides)**

13271. Texas Class Representatives Marilyn Abraham, Maria Eames, Christopher Johnson, Gina Martinez, Tonya Overstreet, Gregory Alan Wayland, Marianella Villanueva, and Sylvia Yoshida incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13272. This cause of action is brought on behalf of the Texas-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13273. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13274. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13275. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13276. It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13277. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13278. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 937**
**Breach of Implied Warranty**
**(Tex. Bus. & Com. Code Ann. §2-314)**
**(Against Strides)**

13279. Texas Class Representatives Marilyn Abraham, Maria Eames, Christopher Johnson, Gina Martinez, Tonya Overstreet, Gregory Alan Wayland, Marianella Villanueva, and Sylvia Yoshida incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13280. This cause of action is brought on behalf of the Texas-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13281. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

13282. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13283. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13284. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

13285. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13286. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13287. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

13288. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

13289. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

13290. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 35.     Causes of Action on Behalf of the Utah-Strides Classes

### COUNT 938
### Violation of the Utah Consumer Sales Practices Act
### (Utah. Code Ann. §13-11-1, *et seq.*)
### (Against Strides)

13291. Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13292. This cause of action is brought on behalf of the Utah-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13293. Defendant is a "[s]upplier" within the meaning of Utah Code Ann. §13-11-3(6).

13294. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Utah Code Ann. §13-11-3(5).

13295. Defendant was and is engaged in "consumer transactions" within the meaning of Utah Code Ann. §13-11-3(2)(a).

13296. The Utah Consumer Sales Practices Act ("Utah CSPA") prohibits any "deceptive act or practice by a supplier in connection with a consumer transaction."  Utah Code Ann. §13-11-4(1).  "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA.  Utah Code Ann. §13-11-5(1).

13297. The Utah CSPA makes unlawful specific acts, including:

(a)    "indicat[ing] that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" (Utah Code Ann. §13-11-4(2)(a)); and

(b)    "indicat[ing] that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not" (Utah Code Ann. §13-11-4(2)(b)).

13298. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah CSPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13299. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Utah CSPA, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have; and

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not.

13300. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13301. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13302. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13303. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13304. Plaintiff and the Class members were aggrieved by Defendant's violations of the Utah CSPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13305. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13306. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13307. As a result of Defendant's violations of the Utah CSPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Utah CSPA.

## COUNT 939
### Violation of the Utah Truth in Advertising Law
### (Utah Code Ann. §13-11a-1, *et seq.*)
### (Against Strides)

13308. Utah Class Representatives Teresa Waters incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13309. This cause of action is brought on behalf of the Utah-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13310. Defendant is a "[s]upplier" within the meaning of Utah Code Ann. §13-11a-2(17).

13311. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Utah Code Ann. §13-11a-2(7).

13312. The Ranitidine-Containing Products are "goods" within the meaning of Utah Code Ann. §13-11a-2(4).

13313. The Utah Truth in Advertising Law ("Utah TAL") prohibits any deceptive practice undertaken "in the course of a person's business."  Utah Code Ann. §13-11a-3(1).

13314. The Utah TAL makes unlawful specific acts, including:

  (a)   "represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have" (Utah Code Ann. §13-11a-3(1)(e));

  (b)   "represent[ing] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Utah Code Ann. §13-11a-3(1)(g));

(c)    "advertis[ing] goods or services with intent not to sell them as advertised" (Utah Code Ann. §13-11a-3(1)(i)); and

(d)    "engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding" (Utah Code Ann. §13-11a-3(1)(t)).

13315. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Utah TAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13316. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Utah TAL, including:

(a)    representing that Ranitidine-Containing Products were both safe and effective for the lifetime of the product, when in fact, they were not;

(b)    representing that consumption of Ranitidine-Containing Products had characteristics, ingredients, uses, benefits, or qualities that they do not have;

(c)    representing that Ranitidine-Containing Products are of a particular standard, quality, or grade when they are not;

(d)    advertising Ranitidine-Containing Products with the intent not to sell them as advertised; and

(e)    engaging in any other conduct that creates a likelihood of confusion.

13317. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13318. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13319. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13320. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13321. Plaintiff and the Class members were aggrieved by Defendant's violations of the Utah TAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13322. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13323. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13324. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiff in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seeks all damages and relief to which Plaintiff and the Class members are entitled.

13325. As a result of Defendant's violations of the Utah TAL, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Utah TAL.

## COUNT 940
### Unjust Enrichment
### (Utah Law)
### (Against Strides)

13326. Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13327. This cause of action is brought on behalf of the Utah-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13328. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13329. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13330. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13331. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13332. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13333. Plaintiff and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

## COUNT 941
### Breach of Implied Warranty
### (Utah. Code Ann. §70A-2-314)
### (Against Strides)

13334. Utah Class Representative Teresa Waters incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13335. This cause of action is brought on behalf of the Utah-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13336. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Utah Class Representatives and members of the Utah Class and was in the business of selling such products.

13337. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13338. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13339. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

13340. Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13341. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13342. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

13343. Further, Plaintiff and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

13344. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

13345. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

36.     **Causes of Action on Behalf of the Vermont-Strides Classes**

**COUNT 942**
**Violation of the Vermont Consumer Fraud Act**
**(Vt. Stat. Ann. tit. 9, §2451, *et seq.*)**
**(Against Strides)**

13346. Vermont Class Representatives Renee Clark, Eric Ragis, and Lisa Ragis incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13347. This cause of action is brought on behalf of the Vermont-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13348. Defendant is a "[s]eller" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(c).

13349. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(a).

13350. The Ranitidine-Containing Products are "[g]oods" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(b).

13351. The Vermont consumer fraud act ("Vermont CFA") prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." Vt. Stat. Ann. tit. 9, §2453(a).

13352. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Vermont CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13353. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Vermont CFA.

13354. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13355. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13356. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13357. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13358. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Vermont CFA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13359. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13360. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13361. As a result of Defendant's violations of the Vermont CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Vermont CFA.

<div align="center">

**COUNT 943**
**Unjust Enrichment**
**(Vermont Law)**
**(Against Strides)**

</div>

13362. Vermont Class Representatives Renee Clark, Eric Ragis, and Lisa Ragis incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13363. This cause of action is brought on behalf of the Vermont-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13364. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13365. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13366. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13367. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13368. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13369. There is no express contract governing this dispute.

13370. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 944**
**Breach of Implied Warranty**
**(Vt. Stat. Ann. tit. 9A§2-314)**
**(Against Strides)**

13371. Vermont Class Representatives Renee Clark, Eric Ragis, and Lisa Ragis incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13372. This cause of action is brought on behalf of the Vermont-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13373. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Vermont Class Representatives and members of the Vermont Class and was in the business of selling such products.

13374. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13375. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13376. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

13377. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13378. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13379. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

13380. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

13381. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

13382. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 37.   Causes of Action on Behalf of the Virginia-Strides Classes

### COUNT 945
### Violation of the Virginia Consumer Protection Act
### (Va. Code Ann. §59.1-196, *et seq.*)
### (Against Strides)

13383. Virginia Class Representatives Karen Foster, Cheryl Banks, and Lynn Costley incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13384. This cause of action is brought on behalf of the Virginia-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13385. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Va. Code Ann. §59.1-198.

13386. Defendant was and is a "[s]upplier" within the meaning of Va. Code Ann. §59.1-198.

13387. The Ranitidine-Containing Products are "[g]oods" within the meaning of Va. Code Ann. §59.1-198.

13388. Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Va. Code Ann. §59.1-198.

13389. The Virginia Consumer Protection Act ("Virginia CPA") prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Va. Code Ann. §59.1-200(A).

13390. The Virginia CPA makes unlawful specific acts, including:

(a)    "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" (Va. Code Ann. §59.1-200(A)(5));

(b)    "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model" (Va. Code Ann. §59.1-200(A)(6));

(c)    "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" (Va. Code Ann. §59.1-200(A)(8)); and

(d)    "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" (Va. Code Ann. §59.1-200(A)(14)).

13391. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13392. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Virginia CPA, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

13393. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13394. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13395. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13396. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13397. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

13398. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Virginia CPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13399. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13400. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

13401. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public. In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

13402. As a result of Defendant's violations of the Virginia CPA, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Virginia CPA.

**COUNT 946**
**Unjust Enrichment**
**(Virginia Law)**
**(Against Strides)**

13403. Virginia Class Representatives Karen Foster, Cheryl Banks, and Lynn Costley incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13404. This cause of action is brought on behalf of the Virginia-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13405. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13406. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13407. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13408. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13409. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13410. There is no express contract governing this dispute.

13411. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 947**
**Breach of Implied Warranty**
**(Va. Code Ann. §8.2-314)**
**(Against Strides)**

13412. Virginia Class Representatives Karen Foster, Cheryl Banks, and Lynn Costley incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13413. This cause of action is brought on behalf of the Virginia-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13414. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Virginia Class Representatives and members of the Virginia Class and was in the business of selling such products.

13415. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13416. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13417. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

13418. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13419. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13420. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

13421. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

13422. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

13423. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 38.    Causes of Action on Behalf of the Washington-Strides Classes

**COUNT 948**
**Violation of the Washington Consumer Protection Act**
**(Wash. Rev. Code Ann. §19.86.010, *et seq.*)**
**(Against Strides)**

13424. Washington Class Representatives Steve Fischer, Dave Garber, and Bridget Peck incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13425. This cause of action is brought on behalf of the Washington-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13426. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Wash. Rev. Code Ann. §19.86.010(1).

13427. The Ranitidine-Containing Products are "[a]ssets" within the meaning of Wash. Rev. Code Ann. §19.86.010(3).

13428. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Wash. Rev. Code Ann. §19.86.010(2).

13429. The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. §19.86.020.

13430. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13431. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington CPA.

13432. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13433. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13434. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13435. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13436. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Washington CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13437. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13438. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13439. On June 22, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Wash. Rev. Code §19.86.095 to the Attorney General of the State of Washington.

13440. As a result of Defendant's violations of the Washington CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Washington CPA.

**COUNT 949**
**Unjust Enrichment**
**(Washington Law)**
**(Against Strides)**

13441. Washington Class Representatives Steve Fischer, Dave Garber, and Bridget Peck incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13442. This cause of action is brought on behalf of the Washington-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13443. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13444. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13445. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13446. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13447. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13448. There is no express contract governing this dispute.

13449. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 950**
**Breach of Implied Warranty**
**(Wash. Rev. Code §62A.2-314)**
**(Against Strides)**

</div>

13450. Washington Class Representatives Steve Fischer, Dave Garber, and Bridget Peck incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13451. This cause of action is brought on behalf of the Washington-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13452. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Washington Class Representatives and members of the Washington Class and was in the business of selling such products.

13453. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13454. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13455. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

13456. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13457. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13458. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

13459. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

13460. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

13461. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

39. **Causes of Action on Behalf of the West Virginia-Strides Classes**

### COUNT 951
### Unjust Enrichment
### (West Virginia Law)
### (Against Strides)

13462. West Virginia Class Representative Mynetta Hastings incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13463. This cause of action is brought on behalf of the West Virginia-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13464. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13465. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13466. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13467. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13468. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13469. There is no express contract governing this dispute.

13470. Plaintiff and the Class members do not have an adequate remedy at law.

**COUNT 952**
**Breach of Implied Warranty**
**(W. Va. Code §46-2-314)**
**(Against Strides)**

13471. West Virginia Class Representative Mynetta Hastings incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13472. This cause of action is brought on behalf of the West Virginia-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13473. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to West Virginia Class Representatives and members of the West Virginia Class and was in the business of selling such products.

13474. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13475. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13476. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

13477. Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13478. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13479. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

13480. Further, Plaintiff and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

13481. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

13482. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 40.    Causes of Action on Behalf of the Wisconsin-Strides Classes

**COUNT 953**
**Violation of the Wisconsin Deceptive Trade Practices Act**
**(Wis. Stat. Ann. §100.18, *et seq.*)**
**(Against Strides)**

13483. Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13484. This cause of action is brought on behalf of the Wisconsin-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13485. Defendant is a "person, firm, corporation or association" within the meaning of Wis. Stat. Ann. §100.18(1).

13486. Plaintiff and the Class members are members of "the public" within the meaning of Wis. Stat. Ann. §100.18(1).

13487. The Ranitidine-Containing Products are "merchandise" within the meaning of Wis. Stat. Ann. §100.18(1).

13488. The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits any "assertion, representation or statement of fact which is untrue, deceptive or misleading."  Wis. Stat. Ann. §100.18(1).

13489. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Wisconsin DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13490. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Wisconsin DTPA.

13491. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13492. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13493. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13494. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13495. Plaintiff and the Class members were aggrieved by Defendant's violations of the Wisconsin DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13496. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13497. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

13498. As a result of Defendant's violations of the Wisconsin DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Wisconsin DTPA.

<div align="center">

**COUNT 954**
**Unjust Enrichment**
**(Wisconsin Law)**
**(Against Strides)**

</div>

13499. Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13500. This cause of action is brought on behalf of the Wisconsin-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13501. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13502. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13503. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13504. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13505. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13506. There is no express contract governing this dispute.

13507. Plaintiff and the Class members do not have an adequate remedy at law.

**COUNT 955**
**Breach of Implied Warranty**
**(Wis. Stat. Ann. §402.314)**
**(Against Strides)**

13508. Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13509. This cause of action is brought on behalf of the Wisconsin-Strides Class (for the purpose of this section, "Class") against Strides (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13510. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Wisconsin Class Representatives and members of the Wisconsin Class and was in the business of selling such products.

13511. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13512. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13513. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

13514. Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13515. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13516. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

13517. Further, Plaintiff and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

13518. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

13519. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**F.     Causes of Action Against Teva**

13520. For the purposes of the subsequent causes of action against Defendant Teva, Plaintiffs are incorporating the following allegations by reference: paragraphs 67-75 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic Zantac); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469

(requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 845-867 (misrepresentations or omissions of material fact in labeling); and 475-483 (equitable tolling).

13521. Plaintiffs identified in the table below bring claims against Defendant Teva with respect to prescription Ranitidine on behalf of themselves and their respective State Classes under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| **Plaintiff Name** | **State(s) of Residence** |
|---|---|
| Daffeney Austin | Alabama |
| Lashonnah Gaitor | Alabama |
| Anthony McGhee | Alabama |
| Tammy Smith | Alaska, Missouri |
| Monica Costello | Arizona, Nevada |
| Armando Tapia | Arizona |
| Tina Culclager | Arkansas |
| Martha Summers | Arkansas, Missouri |
| Virginia Aragon | California |
| Golbenaz Bakhtiar | California |
| Royal Handy | California |
| Jeffrey Pisano | Colorado |
| Angel Vega | Connecticut |
| Irma Arcaya | Florida |
| Roy Armstrong | Florida, Georgia |
| Michael Fesser | Florida |
| Karen Foster | Florida |
| Michael Galloway | Florida, Ohio |
| Hattie Kelley | Florida |
| Marva Mccall | Florida |

| | |
|---|---|
| Clifton McKinnon | Florida |
| Kristen (POA for Alexander) Monger | Florida |
| Kristen (POA for Laura) Monger | Florida |
| Daniel Taylor | Florida |
| Joyce Taylor | Florida |
| Michael Tomlinson | Florida |
| Earlene Green | Georgia |
| Leon Greene | Georgia |
| Tyrone Houston | Georgia |
| Kathy Jeffries | Georgia |
| Charlotte Sanders | Georgia |
| Paula Shells | Georgia |
| Angela Taylor | Georgia, Tennessee |
| Billy Naab | Idaho, Washington |
| Vickie Anderson | Illinois |
| Heather Re | Illinois |
| Timberly Goble | Indiana, Missouri, Texas |
| Rebecca Sizemore | Indiana |
| Tracy Wells | Indiana |
| Charles Longfield | Iowa |
| Janet Asbury | Kentucky |
| Randy Jones | Louisiana |
| Alberta Griffin | Maryland |
| Nicholas Hazlett | Maryland, Pennsylvania |
| Jose Amado | Massachusetts |
| Rafael Bermudez | Massachusetts, New Hampshire |
| Ana Guzman | Massachusetts |
| Michelle Smith | Massachusetts |
| Myra Allen | Michigan |

| Jody Beal | Michigan |
|---|---|
| Benny Cope | Michigan |
| Kenneth Hix | Michigan, Tennessee |
| Jerry Hunt | Michigan |
| Lakisha Wilson | Michigan |
| Sandra Erickson-Brown | Minnesota |
| Rodriquze Hampton Jr. | Minnesota |
| Donald Northrup | Minnesota |
| Beverly Crosby | Mississippi |
| Lora Mauffray | Mississippi |
| Korcis McMillan | Mississippi |
| Michelle Tinker | Mississippi |
| Elaine Aaron | Missouri |
| Antrenise Campbell | Missouri |
| Lisa Deckard | Missouri |
| Cynthia Gibbs | Missouri |
| Brenda Newcomb | Missouri |
| David Rice | New Hampshire |
| James Adamo | New Jersey |
| Sayed Eldomiaty | New Jersey |
| Mary McMillian | New Jersey |
| Mary Moronski | New Jersey |
| Carrie Martinez | New Mexico |
| Ernesto Sanchez | New Mexico |
| George Tapia | New Mexico |
| Silomie Clarke | New York |
| Nereida Cordero | New York |
| Benny Fazio | New York |
| Migdalia Kinney | New York |

| Mary McCullen | New York |
| Joseph Mcpheter | New York |
| Glorimar Rodriguez | New York |
| Mary Lou Wagner | New York |
| Patricia Frazier | North Carolina |
| Teresa Lee | North Carolina |
| Sharon Parks | North Carolina |
| Dennis Robbins | North Carolina |
| Julie Turner | North Carolina |
| Patricia Hess | Ohio |
| Demarco Grayson | Oklahoma |
| Kristi Ledbetter | Oregon |
| Felicia Ball | Pennsylvania |
| Carol Loggins | Pennsylvania |
| Gloria Colon | Puerto Rico |
| Sonia Diaz | Puerto Rico |
| Annie Johnson | South Carolina |
| Michael Futrell | South Carolina |
| Jeffery Gunwall | South Carolina |
| Sharon Mclellan | South Carolina |
| Marianella Villanueva | South Carolina, Texas |
| Eva Broughton | Tennessee |
| Rodriquze Hampton Jr. | Tennessee |
| Rebecca Howard | Tennessee |
| Lisa Lyle | Tennessee |
| Billie Walker | Tennessee |
| Maria Eames | Texas |
| Tina Howard | Texas |
| Christopher Johnson | Texas |

| Gina Martinez | Texas |
|---|---|
| Tonya Overstreet | Texas |
| Gregory Alan Wayland | Texas |
| Sylvia Yoshida | Texas |
| Renee Clark | Vermont |
| Eric Ragis | Vermont |
| Lisa Ragis | Vermont |
| Cheryl Banks | Virginia |
| Lynn Costley | Virginia |
| Steve Fischer | Washington |
| Dave Garber | Washington |
| Bridget Peck | Washington |
| Mynetta Hastings | West Virginia |
| Wendy Quezaire | Wisconsin |

**1.      Causes of Action on Behalf of the Alabama-Teva Class**

**COUNT 956**
**Violation of the Alabama Deceptive Trade Practices Act**
**Ala. Code §8-19-1, *et seq.***
**(Against Teva)**

13522. Alabama Class Representatives Daffeney Austin, Lashonnah Gaitor, and Anthony McGheee incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13523. This cause of action is brought on behalf of the Alabama-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13524. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of Ala. Code §8-19-3(5).

13525. Plaintiffs and the Class members are "consumer[s]" within the meaning of Ala. Code §8-19-3(2).

13526. The Ranitidine-Containing Products are "goods" within the meaning of Ala. Code §8-19-3(3).

13527. Defendant was and is engaged in "trade or commerce" within the meaning of Ala. Code §8-19-3(8).

13528. The Alabama Deceptive Trade Practices Act ("Alabama DTPA") prohibits "deceptive acts or practices in the conduct of any trade or commerce." Ala. Code §8-19-5.

13529. The Alabama DTPA makes unlawful specific acts, including:

    (a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have" (Ala. Code §8-19-5(5));

    (b)    "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Ala. Code §8-19-5(7));

    (c)    "[a]dvertising goods or services with intent not to sell them as advertised" (Ala. Code §8-19-5(9)); and

    (d)    "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce" (Ala. Code §8-19-5(27)).

13530. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Alabama DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of N-Nitrosodimethylamine ("NDMA") as time passed.

13531. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive business practices prohibited by the Alabama DTPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

13532. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13533. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13534. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13535. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13536. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

13537. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Alabama DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13538. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13539. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

13540. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Ala. Code §8-19-10(e) to Defendant. Because Defendant failed to adequately remedy its unlawful

conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

13541. As a result of Defendant's violations of the Alabama DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Alabama DTPA.

## COUNT 957
### Unjust Enrichment
### (Alabama Law)
### (Against Teva)

13542. Alabama Class Representatives Daffeney Austin, Lashonnah Gaitor, and Anthony McGheee incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13543. This cause of action is brought on behalf of the Alabama-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13544. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13545. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13546. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13547. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13548. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13549. Plaintiffs and the Class members do not have an adequate remedy at law.

## 2. Causes of Action on Behalf of the Alaska-Teva Class

### COUNT 958
### Violation of the Alaska Unfair Trade Practices and Consumer Protection Act
### (Alaska Stat. Ann. §45.50.471, *et seq.*)
### (Against Teva)

13550. Alaska Class Representative Tammy Smith incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13551. This cause of action is brought on behalf of the Alaska-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13552. Plaintiff and the Class members are "consumer[s]" within the meaning of Alaska Stat. Ann. §45.50.561(a)(4).

13553. The Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce."  Alaska Stat. Ann. §45.50.471(a).

13554. The Alaska CPA makes unlawful specific acts, including:

(a)     "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Alaska Stat. Ann. §45.50.471(b)(4));

(b)     "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Alaska Stat. Ann. §45.50.471(b)(6));

(c)     "advertising goods or services with intent not to sell them as advertised" (Alaska Stat. Ann. §45.50.471(b)(8));

(d)     "engaging in any other conduct creating a likelihood of confusion or of misunderstanding and that misleads, deceives, or damages a buyer or a competitor in connection with the sale or advertisement of goods or services" (Alaska Stat. Ann. §45.50.471(b)(11)); and

(e)     "using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived, or damaged" (Alaska Stat. Ann. §45.50.471(b)(12)).

13555. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Alaska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13556. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Alaska CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

13557. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13558. Defendant's misrepresentations and omissions regarding the expiration of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13559. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13560. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13561. Plaintiff and the Class members were aggrieved by Defendant's violations of the Alaska CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13562. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13563. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13564. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiff in MDL 2924 sent a notice letter pursuant to Alaska Stat. Ann. §45.50.535(b)(1) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seeks all damages and relief to which Plaintiff and the Class members are entitled.

13565. As a result of Defendant's violations of the Alaska CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices

and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Alaska CPA.

## COUNT 959
### Unjust Enrichment or Quasi-Contract
### (Alaska Law)
### (Against Teva)

13566. Alaska Class Representative Tammy Smith incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13567. This cause of action is brought on behalf of the Alaska-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13568. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13569. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13570. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13571. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13572. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13573. Plaintiff and the Class members do not have an adequate remedy at law.

### 3. Causes of Action on Behalf of the Arizona-Teva Class

<div align="center">

**COUNT 960**
**Violation of the Arizona Consumer Fraud Act**
**(Ariz. Rev. Stat. Ann. §44-1521, *et seq.*)**
**(Against Teva)**

</div>

13574. Arizona Class Representatives Monica Costello and Armando Tapia incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13575. This cause of action is brought on behalf of the Arizona-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13576. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(6).

13577. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(5).

13578. The Arizona Consumer Fraud Act ("Arizona CFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." Ariz. Rev. Stat. Ann. §44-1522(A).

13579. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Arizona CFA by recklessly, wantonly, knowingly, and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13580. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Arizona CFA.

13581. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13582. Defendant's misreprsentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a unform manner.

13583. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13584. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13585. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

13586. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Arizona CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13587. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13588. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13589. As a result of Defendant's violations of the Arizona CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

<div align="center">

**COUNT 961**
**Unjust Enrichment**
**(Arizona Law)**
**(Against Teva)**

</div>

13590. Arizona Class Representatives Monica Costello and Armando Tapia incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13591. This cause of action is brought on behalf of the Arizona-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13592. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13593. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13594. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13595. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13596. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13597. Plaintiffs and the Class members do not have an adequate remedy at law.

### 4.     Causes of Action on Behalf of the Arkansas-Teva Classes

<div align="center">

**COUNT 962**
**Violation of the Arkansas Deceptive Trade Practices Act**
**(Ark. Code Ann. §4-88-101, *et seq.*)**
**(Against Teva)**

</div>

13598. Arkansas Class Representatives Tina Culclager and Martha Summers incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13599. This cause of action is brought on behalf of the Arkansas-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13600. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ark. Code Ann. §4-88-102(5).

13601. The Ranitidine-Containing Products are "[g]oods" within the meaning of Ark. Code Ann. §4-88-102(4).

13602. The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices."  Ark. Code Ann. §4-88-107(a).

13603. The Arkansas DTPA makes unlawful specific acts, including:

(a)     "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" (Ark. Code Ann. §4-88-107(a)(1));

(b)     "[a]dvertising the goods or services with the intent not to sell them as advertised" (Ark. Code Ann. §4-88-107(a)(3)); and

(c)     "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" (Ark. Code Ann. §4-88-107(a)(10)).

13604. The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission . . . ." Ark. Code Ann. §4-88-108(a).

13605. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by

printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13606. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Arkansas DTPA, including:

<blockquote>

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

</blockquote>

13607. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13608. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13609. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13610. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13611. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

13612. Plaintiffs and the Class members were aggrieved by Defendant's violations of Arkansas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13613. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13614. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13615. As a result of Defendant's violations of the Arkansas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

**COUNT 963**
**Unjust Enrichment**
**(Arkansas Law)**
**(Against Teva)**

13616. Arkansas Class Representatives Tina Culclager and Martha Summers incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13617. This cause of action is brought on behalf of the Arkansas-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13618. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13619. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13620. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13621. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13622. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13623. There is no valid, legal, and binding contract governing this dispute.

13624. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 964**
**Breach of Implied Warranty**
**(Ark. Code Ann. §4-2-314)**
**(Against Teva)**

</div>

13625. Arkansas Class Representatives Tina Culclager and Martha Summers incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13626. This cause of action is brought on behalf of the Arkansas-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13627. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arkansas Class Representatives and members of the Arkansas Class and was in the business of selling such products.

13628. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13629. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13630. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

13631. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13632. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13633. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

13634. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

13635. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

13636. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**5.** **Causes of Action on Behalf of the California-Teva Classes**

**COUNT 965**
**Violation of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code §17200,** *et seq.***)**
**(Against Teva)**

13637. California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13638. This cause of action is brought on behalf of the California-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13639. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

13640. Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

13641. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

13642. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL.  These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

13643. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13644. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13645. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13646. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13647. Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, CAL. HEALTH & SAFETY CODE §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

13648. Defendant conduct also consitutes "unfair" business acts or practies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the

practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

13649. Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, *see* Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

13650. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13651. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13652. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13653. Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

### COUNT 966
**Violation of the California False Advertising Law**
**(Cal. Bus. & Prof. Code §17500, *et seq.*)**
**(Against Teva)**

13654. California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13655. This cause of action is brought on behalf of the California-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13656. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

13657. The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement .

. . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code §17500.

13658. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13659. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

13660. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13661. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13662. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13663. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13664. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13665. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13666. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13667. As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

<div align="center">

**COUNT 967**
**Violation of the California Consumers Legal Remedies Act**
**(Cal. Civ. Code §1750, *et seq.*)**
**(Against Teva)**

</div>

13668. California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13669. This cause of action is brought on behalf of the California-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13670. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

13671. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

13672. The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

13673. The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §1770(a).

13674. The California CLRA makes unlawful specific acts, including:

    (a)      "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

    (b)      "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

    (c)      "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

    (d)      "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

13675. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13676. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

    (a)      representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)      representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)      advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (d)      engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

13677. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13678. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13679. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13680. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13681. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

13682. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13683. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13684. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

13685. Pursuant to Cal. Civ. Code §1780(a), Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.  One or more Class members who are senior citizens or disabled persons are

substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

**COUNT 968**
**Unjust Enrichment or Quasi-Contract**
**(California Law)**
**(Against Teva)**

13686. California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13687. This cause of action is brought on behalf of the California-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13688. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13689. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13690. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13691. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13692. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13693. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 969**
**Breach of Implied Warranty**
**(Cal. Com. Code §2314)**
**(Against Teva)**

</div>

13694. California Class Representatives Virginia Aragon, Golbenaz Bakhtiar, and Royal Handy incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13695. This cause of action is brought on behalf of the California-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13696. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to California Class Representatives and members of the California Class and was in the business of selling such products.

13697. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13698. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13699. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

13700. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13701. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13702. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

13703. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

13704. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

13705. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 6.      Causes of Action on Behalf of the Colorado-Teva Classes

### COUNT 970
### Violation of the Colorado Consumer Protection Act
### (Colo. Rev. Stat. Ann. §6-1-101, *et seq.*)
### (Against Teva)

13706. Colorado Class Representative Jeffrey Pisano incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13707. This cause of action is brought on behalf of the Colorado Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant").

13708. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Colo. Rev. Stat. Ann. §6-1-102(6).

13709. The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices "in the course of the person's business, vocation, or occupation."  Colo. Rev. Stat. Ann. §6-1-105(1).

13710. The Colorado CPA makes unlawful specific acts, including:

(a)     "[e]ither knowingly or recklessly mak[ing] a false representation as to the source, sponsorship, approval, or certification of goods, services, or property" (Colo. Rev. Stat. Ann. §6-1-105(1)(b));

(b)     "[r]epresent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another" (Colo. Rev. Stat. Ann. §6-1-105(1)(g));

(c)     "[a]dvertis[ing] goods, services, or property with intent not to sell them as advertised" (Colo. Rev. Stat. Ann. §6-1-105(1)(i));

(d)     "[f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction" (Colo. Rev. Stat. Ann. §6-1-105(1)(u)); and

(e)     "[e]ither knowingly or recklessly engage[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice" (Colo. Rev. Stat. Ann. §6-1-105(1)(kkk)).

13711. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Such conduct was bad faith conduct under the Colorado CPA.

13712. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Colorado CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; and

(e)     failing to disclose the defective Ranitidine-Containing Products in connection with their sale to the public.

13713. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13714. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13715. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13716. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13717. Plaintiff and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

13718. Plaintiff and the Class members were aggrieved by Defendant's violations of the Colorado CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13719. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13720. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13721. As a result of Defendant's violations of the Colorado CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

<div align="center">

**COUNT 971**
**Unjust Enrichment**
**(Colo. Rev. Stat. Ann. §6-1-101, *et seq.*)**
**(Against Teva)**

</div>

13722. Colorado Class Representative Jeffrey Pisano incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13723. This cause of action is brought on behalf of the Colorado-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant").

13724. Plaintiff and Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13725. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

13726. Defendant readily accepted and retained these benefits from Plaintiff and Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13727. It is unjust and inequitable for the Defendant to retain these benefits without commensurate compensation because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13728. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and Class members through its unjust and unlawful acts, and therefore restitution or disgorgement of the amount of their unjust enrichment is required.

13729. Plaintiff and Class members do not have an adequate remedy at law.

**7.      Causes of Action on Behalf of the Connecticut-Teva Classes**

**COUNT 972**
**Violation of the Connecticut Unfair Trade Practices Act**
**(Conn. Gen. Stat. Ann. §42-110a, *et seq.*)**
**(Against Teva)**

13730. Connecticut Class Representative Angel Vega incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13731. This cause of action is brought on behalf of the Connecticut-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13732. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Conn. Gen. Stat. Ann. §42-110a(3).

13733. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. §42-110a(4).

13734. The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. §42-110b(a).

13735. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13736. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Connecticut UTPA.

13737. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13738. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13739. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13740. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13741. Plaintiff and the Class members were aggrieved by Defendant's violations of the Connecticut UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13742. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13743. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13744. As a result of Defendant's violations of the Connecticut UTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

**COUNT 973**
**Unjust Enrichment**
**(Connecticut Law)**
**(Against Teva)**

13745. Connecticut Class Representative Angel Vega incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13746. This cause of action is brought on behalf of the Connecticut-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13747. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13748. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13749. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13750. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13751. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13752. Plaintiff and the Class members do not have an adequate remedy at law.

### 8.    Causes of Action on Behalf of the Florida-Teva Classes

### COUNT 974
### Violation of the Florida Deceptive and Unfair Trade Practices Act
### (Fla. Stat. Ann. §501.201, *et seq.*)
### (Against Teva)

13753. Florida Class Representatives Irma Arcaya, Roy Armstrong, Michael Fesser, Karen Foster, Michael Galloway, Hattie Kelley, Marva Mccall, Clifton McKinnon, Kristen (POA for Alexander) Monger, Kristen (POA for Laura) Monger, Daniel Taylor, Joyce Taylor, and Michael Tomlinson incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13754. This cause of action is brought on behalf of the Florida-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13755. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. §501.204(1).

13756. In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017." Fla. Stat. Ann. §501.204(2).

13757. Plaintiffs and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA. *See* Fla. Stat. Ann. §501.203(6)-(7).

13758. Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA. *See* Fla. Stat. Ann. §501.203(8).

13759. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13760. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

13761. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13762. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13763. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13764. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13765. Plaintiffs and the Class members were aggrieved by Defendant's violations of FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13766. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13767. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13768. As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

**COUNT 975**
**Unjust Enrichment**
**(Florida Law)**
**(Against Teva)**

13769. Florida Class Representatives Irma Arcaya, Roy Armstrong, Michael Fesser, Karen Foster, Michael Galloway, Hattie Kelley, Marva Mccall, Clifton McKinnon, Kristen (POA for Alexander) Monger, Kristen (POA for Laura) Monger, Daniel Taylor, Joyce Taylor, and Michael Tomlinson incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13770. This cause of action is brought on behalf of the Florida-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13771. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13772. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered an impoverishment because they purchased worthless medications and did not receive the expected benefit therefrom.

13773. Defendant voluntarily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13774. It is unjust and inequitable for the Defendant to retain these benefits without paying the value thereof because the benefits were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13775. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13776. There is no express written contract governing this dispute.

13777. Plaintiffs and the Class members do not have an adequate remedy at law.

9.      **Causes of Action on Behalf of the Georgia-Teva Classes**

**COUNT 976**
**Violation of the Georgia Fair Business Practices Act**
**(Ga. Code Ann. §10-1-390, *et seq.*)**
**(Against Teva)**

13778. Georgia Class Representatives Roy Armstrong, Earlene Green, Leon Greene, Tyrone Houston, Kathy Jeffries, Charlotte Sanders, Paula Shells, and Angela Taylor incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13779. This cause of action is brought on behalf of the Georgia-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13780. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(24).

13781. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(6).

13782. Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Ga. Code Ann. §10-1-392(a)(28).

13783. The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."  Ga. Code Ann. §10-1-393(a).

13784. The Georgia FBPA makes unlawful specific acts, including:

(a)      "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-393(b)(5));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-393(b)(7)); and

(c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-393(b)(9)).

13785. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13786. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia FBPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

13787. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13788. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13789. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13790. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13791. Plaintiffs and the Class members reasonably relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

13792. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Georgia FBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13793. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13794. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13795. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Ga. Code Ann. §10-1-399(b) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

13796. As a result of Defendant's violations of the Georgia FBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Georgia FBPA.

**COUNT 977**
**Unjust Enrichment**
**(Georgia Law)**
**(Against Teva)**

13797. Georgia Class Representatives Roy Armstrong, Earlene Green, Leon Greene, Tyrone Houston, Kathy Jeffries, Charlotte Sanders, Paula Shells, and Angela Taylor incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13798. This cause of action is brought on behalf of the Georgia-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13799. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13800. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13801. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13802. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13803. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13804. There is no express contract governing this dispute.

13805. Plaintiffs and the Class members do not have an adequate remedy at law.

**10.    Causes of Action on Behalf of the Idaho-Teva Classes**

**COUNT 978**
**Violation of the Idaho Consumer Protection Act**
**(Idaho Code Ann. §48-601, *et seq.*)**
**(Against Teva)**

13806. Idaho Class Representative Billy Naab incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13807. This cause of action is brought on behalf of the Idaho-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13808. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Idaho Code Ann. §48-602(1).

13809. The Ranitidine-Containing Products are "[g]oods" within the meaning of Idaho Code Ann. §48-602(6).

13810. Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Idaho Code Ann. §48-602(2).

13811. The Idaho Consumer Protection Act ("Idaho CPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Idaho Code Ann. §48-603.

13812. The Idaho CPA makes unlawful specific acts, including:

     (a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Idaho Code Ann. §48-603(5));

     (b)    "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Idaho Code Ann. §48-603(7));

     (c)    "[a]dvertising goods or services with intent not to sell them as advertised" (Idaho Code Ann. §48-603(9)); and

     (d)    "[e]ngaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer" (Idaho Code Ann. §48-603(17)).

13813. Idaho law also prohibits "[a]ny unconscionable method, act or practice in the conduct of any trade or commerce." Idaho Code Ann. §48-603C(1).

13814. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Idaho CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13815. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Idaho CPA, including:

     (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

     (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

     (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)       engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

13816. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13817. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13818. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13819. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13820. Plaintiff and the Class members were aggrieved by Defendant's violations of the Idaho CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13821. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13822. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13823. As a result of Defendant's violations of the Idaho CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Idaho CPA.

<div align="center">

**COUNT 979**
**Unjust Enrichment**
**(Idaho Law)**
**(Against Teva)**

</div>

13824. Idaho Class Representative Billy Naab incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13825. This cause of action is brought on behalf of the Idaho-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13826. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13827. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13828. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13829. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13830. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13831. Plaintiff and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

11.     **Causes of Action on Behalf of the Illinois-Teva Class**

**COUNT 980**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**(815 Ill. Comp. Stat. Ann. 505/1, *et seq.*)**
**(Against Teva)**

13832. Illinois Class Representatives Vickie Anderson and Heather Re incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13833. This cause of action is brought on behalf of the Illinois-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13834. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(c).

13835. Plaintiffs and the Class members are "consumer[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(e).

13836. The Ranitidine-Containing Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(b).

13837. Defendant was and is engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(f).

13838. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade

Practices Act' [815 Ill. Comp. Stat. Ann. 510/2], approved August 5, 1965, in the conduct of any trade or commerce." 815 Ill. Comp. Stat. Ann. 505/2.

13839. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13840. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFDBPA.

13841. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13842. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13843. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13844. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13845. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Illinois CFDBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13846. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13847. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13848. As a result of Defendant's violations of the Illinois CFDBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFDBPA.

**COUNT 981**
**Unjust Enrichment**
**(Illinois Law)**
**(Against Teva)**

13849. Illinois Class Representatives Vickie Anderson and Heather Re incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13850. This cause of action is brought on behalf of the Illinois-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13851. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13852. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13853. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13854. It violates the principles of justice, equity, and good conscience for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13855. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13856. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

### 12. Causes of Action on Behalf of the Indiana-Teva Classes

### COUNT 982
### Unjust Enrichment
### (Indiana Law)
### (Against Teva)

13857. Indiana Class Representatives Timberly Goble, Rebecca Sizemore, and Tracy Wells incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13858. This cause of action is brought on behalf of the Indiana-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13859. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13860. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13861. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13862. It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13863. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13864. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

**COUNT 983**
**Breach of Implied Warranty**
**(Ind. Code. Ann. §26-1-2-314)**
**(Against Teva)**

13865. Indiana Class Representatives Timberly Goble, Rebecca Sizemore, and Tracy Wells incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13866. This cause of action is brought on behalf of the Indiana-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13867. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Indiana Class Representatives and members of the Indiana Class and was in the business of selling such products.

13868. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13869. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13870. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

13871. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13872. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13873. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

13874. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

13875. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

13876. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 13.    Causes of Action on Behalf of the Iowa-Teva Classes

### COUNT 984
### Violation of the Iowa Private Right of Action for Consumer Frauds Act
### (Iowa Code Ann. §714H.1, *et seq.*)
### (Against Teva)

13877. Iowa Class Representatives Charles Longfield incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13878. This cause of action is brought on behalf of the Iowa-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13879. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Iowa Code Ann. §714H.2(7).

13880. Plaintiff and the Class members are "[c]onsumer[s]" within the meaning of Iowa Code Ann. §714H.2(3).

13881. The Iowa Private Right of Action for Consumer Frauds Act ("Iowa PRACFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise."  Iowa Code Ann. §714H.3(1).

13882. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Iowa PRACFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Defendant did so with willful and wanton disregard for the rights and safety of others.

13883. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Iowa PRACFA.

13884. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13885. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13886. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13887. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13888. Plaintiff and the Class members were aggrieved by Defendant's violations of the Iowa PRACFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13889. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out- of-pocket loss.

13890. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

13891. As a result of Defendants' violations of the Iowa PRACFA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Iowa PRACFA.

13892. Additionally, because Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged

herein, were undertaken in willful and wanton disregard for the rights and safety of others, pursuant to Iowa Code §714H.5(4), Plaintiff and the Class members seek an additonal award of treble damages.

**COUNT 985**
**Unjust Enrichment**
**(Iowa Law)**
**(Against Teva)**

13893. Iowa Class Representatives Charles Longfield incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13894. This cause of action is brought on behalf of the Iowa-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13895. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13896. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13897. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13898. It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13899. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for the value thereof, and therefore restitution or disgorgement of the amount of their unjust enrichment is required.

13900. Plaintiff and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

<div align="center">

**COUNT 986**
**Breach of Implied Warranty**
**(Iowa Code Ann. §554.2314)**
**(Against Teva)**

</div>

13901. Iowa Class Representatives Charles Longfield incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13902. This cause of action is brought on behalf of the Iowa-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13903. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Iowa Class Representatives and members of the Iowa Class and was in the business of selling such products.

13904. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13905. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13906. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

13907. Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13908. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13909. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

13910. Further, Plaintiff and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

13911. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

13912. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 14.  Causes of Action on Behalf of the Kentucky-Teva Classes

### COUNT 987
### Violation of the Kentucky Consumer Protection Act
### (Ky. Rev. Stat. Ann. §367.110, *et seq.*)
### (Against Teva)

13913. Kentucky Class Representative Janet Asbury incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13914. This cause of action is brought on behalf of the Kentucky-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13915. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Ky. Rev. Stat. Ann. §367.110(1).

13916. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Ky. Rev. Stat. Ann. §367.110(2).

13917. The Kentucky Consumer Protection Act ("Kentucky CPA") prohibits "[u]nfair, [unconscionable], false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. Ann. §367.170(1)-(2).

13918. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13919. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Kentucky CPA.

13920. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13921. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13922. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13923. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13924. Plaintiff and the Class members were aggrieved by Defendant's violations of the Kentucky CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13925. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13926. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13927. As a result of Defendant's violations of the Kentucky CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Kentucky CPA.

**COUNT 988**
**Unjust Enrichment**
**(Kentucky Law)**
**(Against Teva)**

13928. Kentucky Class Representative Janet Asbury incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13929. This cause of action is brought on behalf of the Kentucky-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13930. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13931. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13932. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13933. It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-

Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13934. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13935. Plaintiff and the Class members do not have an adequate remedy at law.

**COUNT 989**
**Breach of Implied Warranty**
**(Ky. Rev. Stat. Ann. §355.2-314)**
**(Against Teva)**

13936. Kentucky Class Representative Janet Asbury incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13937. This cause of action is brought on behalf of the Kentucky-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13938. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Kentucky Class Representatives and members of the Kentucky Class and was in the business of selling such products.

13939. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13940. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13941. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

13942. Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13943. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13944. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

13945. Further, Plaintiff and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

13946. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

13947. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 15.      Causes of Action on Behalf of the Louisiana-Teva Classes

### COUNT 990
### Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law
### (La. Stat. Ann. §51:1401, *et seq.*)
### (Against Teva)

13948. Louisiana Class Representative Randy Jones incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13949. This cause of action is brought on behalf of the Louisiana-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13950. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of La. Stat. Ann. §51:1402(8).

13951. Plaintiff and the Class members are "[c]onsumer[s]" within the meaning of La. Stat. Ann. §51:1402(1).

13952. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of La. Stat. Ann. §51:1402(10).

13953. The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  La. Stat. Ann. §51:1405(A).

13954. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13955. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Louisiana CPL.

13956. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13957. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

13958. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13959. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13960. Plaintiff and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

13961. Plaintiff and the Class members were aggrieved by Defendant's violations of the Louisiana CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

13962. Specifically, Plaintiff and the Class were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

13963. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13964. As a result of Defendant's violations of the Louisiana CPL, as alleged herein, Plaintiff and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Louisiana CPL.

**COUNT 991**
**Unjust Enrichment**
**(Louisiana Law)**
**(Against Teva)**

13965. Louisiana Class Representative Randy Jones incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13966. This cause of action is brought on behalf of the Louisiana-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13967. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

13968. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

13969. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

13970. Defendants' enrichment – the monies obtained from Plaintiff for the Ranitidine Containing Products – was the result of Plaintiff's impoverishment – the receipt by Plaintiff of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

13971. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

13972. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

13973. Plaintiff and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 992**
**Breach of Implied Warranty**
**(La. Civ. Code Ann. art. §2520)**
**(Against Teva)**

</div>

13974. Louisiana Class Representative Randy Jones incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13975. This cause of action is brought on behalf of the Louisiana-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13976. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Louisiana Class Representatives and members of the Louisiana Class and was in the business of selling such products.

13977. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13978. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13979. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

13980. Defendant had reason to know Plaintiff's and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13981. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

13982. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

13983. Further, Plaintiff and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

13984. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

13985. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 16. Causes of Action on Behalf of the Maryland-Teva Classes

### COUNT 993
### Violation of the Maryland Consumer Protection Act
### (Md. Code Ann., Com. Law §13-101, *et seq.*)
### (Against Teva)

13986. Maryland Class Representatives Nicholas Hazlett and Alberta Griffin incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

13987. This cause of action is brought on behalf of the Maryland-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

13988. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Md. Code Ann., Com. Law §13-101(h).

13989. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Md. Code Ann., Com. Law §13-101(c)(1).

13990. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Md. Code Ann., Com. Law §13-101(f).

13991. The Maryland Consumer Protection Act ("Maryland CPA") prohibits "[u]nfair, abusive, or deceptive trade practices."  Md. Code Ann., Com. Law §13-301.

13992. The Maryland CPA makes unlawful specific acts, including:

(a)     "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" (Md. Code Ann., Com. Law §13-301(1));

(b)     "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have" (Md. Code Ann., Com. Law §13-301(2)(i));

(c)     "[r]epresent[ing] that . . . [c]onsumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not" (Md. Code Ann., Com. Law §13-301(2)(iv));

(d)     "[f]ailure to state a material fact if the failure deceives or tends to deceive" (Md. Code Ann., Com. Law §13-301(3));

(e)     "[a]dvertis[ing] or offer[ing] of consumer goods, consumer realty, or consumer services . . . [w]ithout intent to sell, lease, or rent them as advertised or offered" (Md. Code Ann., Com. Law §13-301(5)(i)); and

(f)     "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with . . . [t]he promotion or sale of any consumer goods" (Md. Code Ann., Com. Law §13-301(9)(i)).

13993. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time

period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

13994. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Maryland CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)     failing to disclose that the Ranitidine-Containing Products are defective and inherently dangerous in the course of the sale of the Ranitidine-Containing Products; and

(e)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

13995. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13996. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

13997. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

13998. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

13999. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

14000. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Maryland CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14001. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14002. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

14003. As a result of Defendant's violations of the Maryland CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

<div align="center">

**COUNT 994**
**Unjust Enrichment**
**(Maryland Law)**
**(Against Teva)**

</div>

14004. Maryland Class Representatives Nicholas Hazlett and Alberta Griffin incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14005. This cause of action is brought on behalf of the Maryland-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14006. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14007. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14008. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14009. It would be unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14010. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14011. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 995**
**Breach of Implied Warranty**
**(Md. Code Ann. §2-314)**
**(Against Teva)**

</div>

14012. Maryland Class Representatives Nicholas Hazlett and Alberta Griffin incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14013. This cause of action is brought on behalf of the Maryland-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14014. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Maryland Class Representatives and members of the Maryland Class and was in the business of selling such products.

14015. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14016. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14017. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14018. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14019. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14020. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14021. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14022. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14023. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 17.    Causes of Action on Behalf of the Massachusetts-Teva Classes

#### COUNT 996
#### Violation of the Deceptive Acts or Practices Prohibited by Massachusetts Law
#### (Mass. Gen. Laws Ann. ch. 93a, §1, *et seq.*)
#### (Against Teva)

14024. Massachusetts Class Representatives Jose Amado, Rafael Bermudez, Ana Guzman, and Michelle Smith incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14025. This cause of action is brought on behalf of the Massachusetts-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14026. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(a).

14027. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(b).

14028. The Massachusetts consumer protection law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws Ann. ch. 93A, §2(a).

14029. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14030. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Massachusetts Act.

14031. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14032. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14033. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14034. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14035. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Massachusetts Act because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14036. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14037. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

14038. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of

Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Mass. Gen. Laws Ann. ch. 93A, §9(3) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

14039. As a result of Defendant's violations of the Massachusetts Act, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Massachusetts Act.

<div align="center">

**COUNT 997**
**Unjust Enrichment**
**(Massachusetts Law)**
**(Against Teva)**

</div>

14040. Massachusetts Class Representatives Jose Amado, Rafael Bermudez, Ana Guzman, and Michelle Smith incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14041. This cause of action is brought on behalf of the Massachusetts-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14042. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14043. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14044. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

14045. Defendant's enrichment – the monies obtained from Plaintiffs' and the Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and the Class members' impoverishment – i.e., Plaintiffs' and the Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

14046. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14047. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14048. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 998
### Breach of Implied Warranty
### (Mass. Gen. Laws Ann. ch. 106 §2-314)
### (Against Teva)

14049. Massachusetts Class Representatives Jose Amado, Rafael Bermudez, Ana Guzman, and Michelle Smith incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14050. This cause of action is brought on behalf of the Massachusetts-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14051. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Massachusetts Class Representatives and members of the Massachusetts Class and was in the business of selling such products.

14052. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14053. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14054. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14055. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14056. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14057. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14058. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14059. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14060. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 18.    Causes of Action on Behalf of the Michigan-Teva Classes

### COUNT 999
### Violation of the Michigan Consumer Protection Act
### (Mich. Comp. Laws Ann. §445.901, *et seq.*)
### (Against Teva)

14061. Michigan Class Representatives Myra Allen, Jody Beal, Benny Cope, Kenneth Hix, Jerry Hunt, and Lakisha Wilson incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14062. This cause of action is brought on behalf of the Michigan-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14063. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(d).

14064. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(g).

14065. The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws Ann. §445.903(1).

14066. The Michigan CPA makes unlawful specific acts, including:

   (a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Mich. Comp. Laws Ann. §445.903(1)(c));

   (b)    "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Mich. Comp. Laws Ann. §445.903(1)(e)); and

(c)     "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented" (Mich. Comp. Laws Ann. §445.903(1)(g)).

14067. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14068. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Michigan CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

14069. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14070. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14071. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14072. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14073. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Michigan CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14074. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14075. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

14076. As a result of Defendant's violations of the Michigan CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Michigan CPA.

<div align="center">

**COUNT 1000**
**Unjust Enrichment**
**(Michigan Law)**
**(Against Teva)**

</div>

14077. Michigan Class Representatives Myra Allen, Jody Beal, Benny Cope, Kenneth Hix, Jerry Hunt, and Lakisha Wilson incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14078. This cause of action is brought on behalf of the Michigan-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14079. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14080. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14081. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14082. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14083. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14084. There is no express contract governing this dispute.

14085. Plaintiffs and the Class members do not have an adequate remedy at law.

### 19.    Causes of Action on Behalf of the Minnesota-Teva Classes

### COUNT 1001
### Violation of the Minnesota Prevention of Consumer Fraud Act
### (Minn. Stat. Ann. §325F.68, *et seq.*)
### (Against Teva)

14086. Minnesota Class Representatives Sandra Erickson-Brown, Rodriquze Hampton Jr., and Donald Northrup incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14087. This cause of action is brought on behalf of the Minnesota-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14088. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

14089. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

14090. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged."  Minn. Stat. Ann. §325F.69(1).  Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

14091. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14092. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

14093. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14094. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14095. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14096. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14097. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

14098. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14099. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14100. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

14101. As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

**COUNT 1002**
**Unjust Enrichment**
**(Minnesota Law)**
**(Against Teva)**

14102. Minnesota Class Representatives Sandra Erickson-Brown, Rodriquze Hampton Jr., and Donald Northrup incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14103. This cause of action is brought on behalf of the Minnesota-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14104. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14105. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14106. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14107. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14108. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14109. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1003**
**Breach of Implied Warranty**
**(Minn. Stat. Ann. §336.2-314)**
**(Against Teva)**

14110. Minnesota Class Representatives Sandra Erickson-Brown, Rodriquze Hampton Jr., and Donald Northrup incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14111. This cause of action is brought on behalf of the Minnesota-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14112. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

14113. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14114. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14115. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14116. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14117. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14118. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14119. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14120. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14121. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 20. Causes of Action on Behalf of the Mississippi-Teva Classes

**COUNT 1004**
**Unjust Enrichment**
**(Mississippi Law)**
**(Against Teva)**

14122. Mississippi Class Representatives Beverly Crosby, Lora Mauffray, Korcis McMillan, and Michelle Tinker incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14123. This cause of action is brought on behalf of the Mississippi-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14124. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14125. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

14126. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14127. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14128. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14129. There is no express contract governing this dispute.

14130. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1005**
**Breach of Implied Warranty**
**(Miss. Code Ann. §75-2-314)**
**(Against Teva)**

14131. Mississippi Class Representatives Beverly Crosby, Lora Mauffray, Korcis McMillan, and Michelle Tinker incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14132. This cause of action is brought on behalf of the Mississippi-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14133. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Mississippi Class Representatives and members of the Mississippi Class and was in the business of selling such products.

14134. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14135. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14136. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14137. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14138. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14139. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14140. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14141. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14142. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law

### 21. Causes of Action on Behalf of the Missouri-Teva Classes

**COUNT 1006**
**Violation of the Missouri Merchandising Practices Act**
**(Mo. Rev. Stat. §407.010, *et seq.*)**
**(Against Teva)**

14143. Missouri Class Representatives Tammy Smith, Timberly Goble, Elaine Aaron, Antrenise Campbell, Lisa Deckard, Cynthia Gibbs, Martha Summers, and Brenda Newcomb incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14144. This cause of action is brought on behalf of the Missouri-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14145. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mo. Ann. Stat. §407.010(5).

14146. Defendant was and is engaged in "[t]rade or commerce" within the meaning of Mo. Ann. Stat. §407.010(7).

14147. The Missouri Merchandising Practices Act ("Missouri MPA") prohibits "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce."  Mo. Ann. Stat. §407.020(1).

14148. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14149. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Missouri MPA.

14150. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14151. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14152. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14153. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14154. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Missouri MPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14155. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14156. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

14157. As a result of Defendant's violations of the Missouri MPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Missouri MPA.

<div align="center">

**COUNT 1007**
**Unjust Enrichment**
**(Missouri Law)**
**(Against Teva)**

</div>

14158. Missouri Class Representatives Tammy Smith, Timberly Goble, Elaine Aaron, Antrenise Campbell, Lisa Deckard, Cynthia Gibbs, Martha Summers, and Brenda Newcomb incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14159. This cause of action is brought on behalf of the Missouri-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14160. This cause of action is brought on behalf of the Missouri Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14161. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14162. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14163. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14164. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14165. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14166. There is no express contract governing this dispute.

14167. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1008**
**Breach of Implied Warranty**
**(Mo. Rev. Stat. §400.2-314)**
**(Against Teva)**

14168. Missouri Class Representatives Tammy Smith, Timberly Goble, Elaine Aaron, Antrenise Campbell, Lisa Deckard, Cynthia Gibbs, Martha Summers, and Brenda Newcomb incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14169. This cause of action is brought on behalf of the Missouri-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14170. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Missouri Class Representatives and members of the Missouri Class and was in the business of selling such products.

14171. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14172. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14173. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

- 2885 -

14174. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14175. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14176. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14177. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14178. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14179. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the

law.

### 22.      Causes of Action on Behalf of the Nevada-Teva Classes

### COUNT 1009
### Violation of the Nevada Deceptive Trade Practices Act
### (Nev. Rev. Stat. Ann. §598.0903, *et seq.*)
### (Against Teva)

14180. Nevada Class Representative Monica Costello incorporates the preceding

allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth

herein.

14181. This cause of action is brought on behalf of the Nevada-Teva Class (for the purpose

of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect

to prescription Ranitidine.

14182. The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), prohibits the use of

"'deceptive trade practices' . . . in the course of . . . business or occupation."  Nev. Rev. Stat. Ann.

§598.0915.

14183. The Nevada DTPA makes unlawful specific acts, including:

(a)      "[k]nowingly mak[ing] a false representation as to the characteristics,
ingredients, uses, benefits, alterations or quantities of goods or services for
sale or lease or a false representation as to the sponsorship, approval, status,
affiliation or connection of a person therewith" (Nev. Rev. Stat. Ann.
§598.0915(5));

(b)      "[r]epresent[ing] that goods or services for sale or lease are of a particular
standard, quality or grade, or that such goods are of a particular style or
model, if he or she knows or should know that they are of another standard,
quality, grade, style or model" (Nev. Rev. Stat. Ann. §598.0915(7));

(c)      "[a]dvertis[ing] goods or services with intent not to sell or lease them as
advertised" (Nev. Rev. Stat. Ann. §598.0915(9));

(d)      "[k]nowingly mak[ing] any other false representation in a transaction"
(Nev. Rev. Stat. Ann. §598.0915(15)); and

> (e)    "[f]ail[ing] to disclose a material fact in connection with the sale or lease of goods or services" (Nev. Rev. Stat. Ann. §598.0923(2)).

14184. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14185. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Nevada DTPA, including:

> (a)    representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;
>
> (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;
>
> (d)    failing to disclose the NDMA danger in connection with the sale of the Ranitidine-Containing Products; and
>
> (e)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

14186. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

14187. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

14188. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14189. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14190. Plaintiff and the Class members were aggrieved by Defendant's violations of the Nevada DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14191. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14192. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

14193. As a result of Defendant's violations of the Nevada DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Nevada DTPA.

<div align="center">

**COUNT 1010**
**Unjust Enrichment**
**(Nevada Law)**
**(Against Teva)**

</div>

14194. Nevada Class Representative Monica Costello incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14195. This cause of action is brought on behalf of the Nevada-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14196. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14197. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.   Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14198. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14199. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14200. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14201. There is no express contract governing this dispute.

14202. Plaintiff and the Class members do not have an adequate remedy at law.

### 23.    Causes of Action on Behalf of the New Hampshire-Teva Classes

### COUNT 1011
### Violation of the New Hampshire Consumer Protection Act
### (N.H. Rev. Stat. Ann. §358-A:1, *et seq.*)
### (Against Teva)

14203. New Hampshire Class Representatives Rafael Bermudez and David Rice incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14204. This cause of action is brought on behalf of the New Hampshire-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14205. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of N.H. Rev. Stat. Ann. §358-A:1(I).

14206. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of N.H. Rev. Stat. Ann. §358-A:1(II).

14207. The New Hampshire Consumer Protection Act ("New Hampshire CPA") prohibits "any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce."  N.H. Rev. Stat. Ann. §358-A:2.

14208. The New Hampshire CPA makes unlawful specific acts, including:

(a) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (N.H. Rev. Stat. Ann. §358-A:2(V));

(b) "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." (N.H. Rev. Stat. Ann. §358-A:2(VII)); and

(c) "[a]dvertising goods or services with intent not to sell them as advertised." (N.H. Rev. Stat. Ann. §358-A:2(IX)).

14209. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Hampshire CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14210. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Hampshire CPA, including:

    (a)    representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

14211. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14212. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14213. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14214. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14215. Plaintiffs and the Class members were aggrieved by Defendant's violations of New Hampshire CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14216. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14217. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

14218. As a result of Defendant's violations of the New Hampshire CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Hampshire CPA.

**COUNT 1012**
**Unjust Enrichment**
**(New Hampshire Law)**
**(Against Teva)**

14219. New Hampshire Class Representatives Rafael Bermudez and David Rice incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

- 2894 -

14220. This cause of action is brought on behalf of the New Hampshire-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14221. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14222. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14223. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14224. It is unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14225. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14226. There is no valid, express contract governing this dispute.

14227. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1013**
**Breach of Implied Warranty**
**(N.H. Rev. Stat. Ann. §382-A:2-314)**
**(Against Teva)**

</div>

14228. New Hampshire Class Representatives Rafael Bermudez and David Rice incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14229. This cause of action is brought on behalf of the New Hampshire-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14230. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Hampshire Class Representatives and members of the New Hampshire Class and was in the business of selling such products.

14231. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14232. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14233. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14234. Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14235. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14236. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14237. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14238. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14239. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**24.     Causes of Action on Behalf of the New Jersey-Teva Classes**

**COUNT 1014**
**Violation of the New Jersey Consumer Fraud Act**
**(N.J. Stat. Ann. §56:8-1, *et seq.*)**
**(Against Teva)**

14240. New Jersey Class Representatives James Adamo, Sayed Eldomiaty, Mary McMillian    , and Mary Moronski incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14241. This cause of action is brought on behalf of the New Jersey-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14242. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.J. Stat. Ann. §56:8-1(d).

14243. The Ranitidine-Containing Products are "merchandise" within the meaning of N.J. Stat. Ann. §56:8-1(c).

14244. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Jersey Consumer Fraud Act ("New Jersey CFA") by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material

facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  N.J. Stat. Ann. §56:8-1, *et seq.*

14245. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Jersey CFA.

14246. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14247. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14248. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14249. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14250. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Jersey CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14251. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14252. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

14253. As a result of Defendant's violations of the New Jersey CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Jersey CFA.

## COUNT 1015
### Unjust Enrichment
### (New Jersey Law)
### (Against Teva)

14254. New Jersey Class Representatives James Adamo, Sayed Eldomiaty, Mary McMillian     , and Mary Moronski incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14255. This cause of action is brought on behalf of the New Jersey-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14256. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14257. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14258. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14259. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14260. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14261. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 1016**
**Breach of Implied Warranty**
**(N.J. Stat. Ann. §12A:2-314)**
**(Against Teva)**

14262. New Jersey Class Representatives James Adamo, Sayed Eldomiaty, Mary McMillian , and Mary Moronski incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14263. This cause of action is brought on behalf of the New Jersey-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14264. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Jersey Class Representatives and members of the New Jersey Class and was in the business of selling such products.

14265. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14266. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14267. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14268. Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14269. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14270. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14271. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14272. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of

the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14273. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 25.     Causes of Action on Behalf of the New Mexico-Teva Classes

**COUNT 1017**
**Violation of the New Mexico Unfair Trade Practices Act**
**(N.M. Stat. Ann. §57-12-1, *et seq.*)**
**(Against Teva)**

14274. New Mexico Class Representatives Carrie Martinez, Ernesto Sanchez, and George Tapia incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14275. This cause of action is brought on behalf of the New Mexico-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14276. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

14277. Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

14278. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services

. . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person." N.M. Stat. Ann. §57-12-2(D). The New Mexico UTPA also makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." N.M. Stat. Ann. §57-12-2(E).

14279. The New Mexico UTPA makes unlawful specific acts, including:

(a) "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

(b) "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

(c) "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

14280. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14281. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Mexico UTPA, including:

- 2905 -

(a) representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and

(d) acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.

14282. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14283. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14284. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14285. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14286. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14287. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14288. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

14289. As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

## COUNT 1018
### Unjust Enrichment
### (New Mexico Law)
### (Against Teva)

14290. New Mexico Class Representatives Carrie Martinez, Ernesto Sanchez, and George Tapia incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14291. This cause of action is brought on behalf of the New Mexico-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14292. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14293. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14294. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14295. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14296. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14297. There is no express contract governing this dispute.

14298. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1019**
**Breach of Implied Warranty**
**(N.M. Stat. Ann. §55-2-314)**
**(Against Teva)**

14299. New Mexico Class Representatives Carrie Martinez, Ernesto Sanchez, and George Tapia incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14300. This cause of action is brought on behalf of the New Mexico-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14301. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

14302. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14303. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14304. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14305. Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14306. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14307. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14308. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14309. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14310. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 26.    Causes of Action on Behalf of the New York-Teva Classes

### COUNT 1020
### Violation of New York Deceptive Acts and Practices Act
### (N.Y. Gen. Bus. Law §349)
### (Against Teva)

14311. New York Class Representatives Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen    , Joseph Mcpheter, Glorimar Rodriguez, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14312. This cause of action is brought on behalf of the New York-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14313. Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

14314. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §349(a).

14315. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded

the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14316. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

14317. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14318. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14319. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14320. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14321. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14322. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14323. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

14324. As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

**COUNT 1021**
**Violation of the New York False Advertising Act**
**(N.Y. Gen. Bus. Law §350)**
**(Against Teva)**

14325. New York Class Representatives Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen   , Joseph Mcpheter, Glorimar Rodriguez, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14326. This cause of action is brought on behalf of the New York-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14327. Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

14328. The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

14329. Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

14330. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14331. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

14332. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14333. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14334. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14335. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14336. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14337. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14338. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

14339. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

14340. As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the New York Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

## COUNT 1022
## Unjust Enrichment
## (New York Law)
## (Against Teva)

14341. New York Class Representatives Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen , Joseph Mcpheter, Glorimar Rodriguez, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14342. This cause of action is brought on behalf of the New York-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14343. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14344. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14345. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14346. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14347. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14348. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 1023**
**Breach of Implied Warranty**
**(N.Y. U.C.C. Law §2-314)**
**(Against Teva)**

</div>

14349. New York Class Representatives Silomie Clarke, Nereida Cordero, Benny Fazio, Migdalia Kinney, Mary McCullen    , Joseph Mcpheter, Glorimar Rodriguez, and Mary Lou Wagner incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14350. This cause of action is brought on behalf of the New York-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14351. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representatives and members of the New York Class and was in the business of selling such products.

14352. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14353. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14354. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14355. Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14356. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14357. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14358. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14359. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14360. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 27.　　　Causes of Action on Behalf of the North Carolina-Teva Classes

### COUNT 1024
### Violation of the North Carolina Unfair and Deceptive Trade Practices Act
### (N.C. Gen. Stat. Ann. §75-1.1, *et seq.*)
### (Against Teva)

14361. North Carolina Class Representatives Patricia Frazier, Teresa Lee, Sharon Parks, Dennis Robbins, and Julie Turner incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14362. This cause of action is brought on behalf of the North Carolina-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14363. Defendant was and is engaged in "commerce" within the meaning of N.C. Gen. Stat. Ann. §75-1.1(b).

14364. The North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," N.C. Gen. Stat. Ann. §75-1.1(a), and provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the law. N.C. Gen. Stat. Ann. §75-16.

14365. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14366. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the North Carolina UDTPA.

14367. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14368. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14369. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14370. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14371. Plaintiffs and the Class members were aggrieved by Defendant's violations of the North Carolina UDTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14372. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14373. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

14374. As a result of Defendant's violations of the North Carolina UDTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive

acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the North Carolina UDTPA.

<div align="center">

**COUNT 1025**
**Unjust Enrichment**
**(North Carolina Law)**
**(Against Teva)**

</div>

14375. North Carolina Class Representatives Patricia Frazier, Teresa Lee, Sharon Parks, Dennis Robbins, and Julie Turner incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14376. This cause of action is brought on behalf of the North Carolina-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14377. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14378. The benefit provided by Plaintiffs and the Class members was not conferred gratuitously, and in exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14379. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

<div align="center">

- 2923 -

</div>

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14380. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14381. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14382. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 1026**
**Breach of Implied Warranty**
**(N.C. Gen. Stat. Ann. §25-2-314)**
**(Against Teva)**

</div>

14383. North Carolina Class Representatives Patricia Frazier, Teresa Lee, Sharon Parks, Dennis Robbins, and Julie Turner incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14384. This cause of action is brought on behalf of the North Carolina-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14385. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to North Carolina Class Representatives and members of the North Carolina Class and was in the business of selling such products.

14386. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14387. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14388. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14389. Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14390. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14391. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14392. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14393. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14394. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 28.   Causes of Action on Behalf of the Ohio-Teva Classes

**COUNT 1027**
**Unjust Enrichment**
**(Ohio Law)**
**(Against Teva)**

14395. Ohio Class Representatives Michael Galloway and Patricia Hess incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14396. This cause of action is brought on behalf of the Ohio-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14397. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14398. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14399. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14400. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14401. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14402. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

## COUNT 1028
## Breach of Implied Warranty
## (Ohio Rev. Code Ann. §1302.27)
## (Against Teva)

14403. Ohio Class Representatives Michael Galloway and Patricia Hess incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14404. This cause of action is brought on behalf of the Ohio-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14405. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Ohio Class Representatives and members of the Ohio Class and was in the business of selling such products.

14406. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14407. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14408. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14409. Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14410. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14411. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14412. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14413. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14414. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 29.     Causes of Action on Behalf of the Oklahoma-Teva Classes

### COUNT 1029
### Violation of the Oklahoma Consumer Protection Act
### (Okla. Stat. tit. 15, §751, *et seq.*)
### (Against Teva)

14415. Oklahoma Class Representative and Demarco Grayson incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14416. This cause of action is brought on behalf of the Oklahoma-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14417. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Okla. Stat. tit. 15, §752(1).

14418. Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Okla. Stat. tit. 15, §752(2).

14419. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Okla. Stat. tit. 15, §752(7).

14420. The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits numerous unlawful acts, including misleading representations, false advertisements, and false statements. Okla. Stat. tit. 15, §753.   The Oklahoma CPA defines "[d]eceptive trade practice" as "a misrepresentation, omission or other practice that has deceived or . . . mislead a person to the

detriment of that person."  Okla. Stat. tit. 15, §752(13).  The Oklahoma CPA defines "[u]nfair trade practice" as "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."  Okla. Stat. tit. 15, §752(14).

14421. The Oklahoma CPA makes unlawful specific acts, including:

> (a)  "[m]ak[ing] a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction" (Okla. Stat. tit. 15, §753(5));
>
> (b)  "[r]epresent[ing], knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another" (Okla. Stat. tit. 15, §753(7));
>
> (c)  "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised" (Okla. Stat. tit. 15, §753(8)); and
>
> (d)  "[c]ommit[ing] an unfair or deceptive trade practice as defined in Section 752" (Okla. Stat. tit. 15, §753(20)).

14422. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14423. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Oklahoma CPA, including:

> (a)  representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

14424. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

14425. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

14426. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14427. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14428. Plaintiff and the Class members were aggrieved by Defendant's violations of Oklahoma CPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14429. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14430. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

14431. As a result of Defendant's violations of the Oklahoma CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Oklahoma CPA.

**COUNT 1030**
**Unjust Enrichment**
**(Oklahoma Law)**
**(Against Teva)**

14432. Oklahoma Class Representative Demarco Grayson incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14433. This cause of action is brought on behalf of the Oklahoma-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14434. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14435. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14436. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14437. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14438. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14439. Plaintiff and the Class members do not have an adequate remedy at law.

**COUNT 1031**
**Breach of Implied Warranty**
**(Okla. Stat. tit. 12A §2-314)**
**(Against Teva)**

14440. Oklahoma Class Representative Demarco Grayson incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14441. This cause of action is brought on behalf of the Oklahoma-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14442. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Oklahoma Class Representative and members of the Oklahoma Class and was in the business of selling such products.

14443. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14444. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14445. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14446. Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14447. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14448. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

14449. Further, Plaintiff and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14450. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14451. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

30.      **Causes of Action on Behalf of the Oregon-Teva Classes**

**COUNT 1032**
**Violation of the Oregon Unlawful Trade Practices Act**
**(Or. Rev. Stat. Ann. §646.605, *et seq.*)**
**(Against Teva)**

14452. Oregon Class Representative Kristi Ledbetter incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14453. This cause of action is brought on behalf of the Oregon-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14454. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Or. Rev. Stat. Ann. §646.605(4).

14455. The Ranitidine-Containing Products are "goods" within the meaning of Or. Rev. Stat. Ann. §646.605(6).

14456. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Or. Rev. Stat. Ann. §646.605(8).

14457. The Oregon Unlawful Trade Practices Act ("Oregon UTPA") prohibits "unlawful practice . . . in the course of the person's business." Or. Rev. Stat. Ann. §646.608(1).

14458. The Oregon UTPA makes unlawful specific acts, including:

(a)      "[r]epresent[ing] that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have" (Or. Rev. Stat. Ann. §646.608(1)(e));

(b)      "[r]epresent[ing] that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if the real estate, goods or services are of another" (Or. Rev. Stat. Ann. §646.608(1)(g));

(c)     "[a]dvertis[ing] real estate, goods or services with intent not to provide the real estate, goods or services as advertised" (Or. Rev. Stat. Ann. §646.608(1)(i)); and

(d)     "[e]ngag[ing] in any other unfair or deceptive conduct in trade or commerce" (Or. Rev. Stat. Ann. §646.608(1)(u)).

14459. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Oregon UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14460. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Oregon UTPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

14461. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

14462. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

14463. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14464. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14465. Plaintiff and the Class members were aggrieved by Defendant's violations of the Oregon UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14466. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14467. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

14468. As a result of Defendant's violations of the Oregon UTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Oregon UTPA.

<div align="center">

**COUNT 1033**
**Unjust Enrichment**
**(Oregon Law)**
**(Against Teva)**

</div>

14469. Oregon Class Representative Kristi Ledbetter incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14470. This cause of action is brought on behalf of the Oregon-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14471. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14472. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.   Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14473. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14474. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14475. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14476. There is no express contract governing this dispute.

14477. Plaintiff and the Class members do not have an adequate remedy at law.

**COUNT 1034**
**Breach of Implied Warranty**
**(Or. Rev. Stat. Ann. §72.3140)**
**(Against Teva)**

14478. Oregon Class Representative Kristi Ledbetter incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14479. This cause of action is brought on behalf of the Oregon-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14480. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Oregon Class Representatives and members of the Oregon Class and was in the business of selling such products.

14481. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14482. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14483. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14484. Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14485. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14486. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

14487. Further, Plaintiff and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14488. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14489. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

31.     **Causes of Action on Behalf of the Pennsylvania-Teva Classes**

**COUNT 1035**
**Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**(73 Pa. Cons. Stat. §201-1, *et seq.*)**
**(Against Teva)**

14490. Pennsylvania Class Representatives Nicholas Hazlett, Felicia Ball, and Carol Loggins incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14491. This cause of action is brought on behalf of the Pennsylvania-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14492. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of 73 Pa. C.S. §201-2(2).

14493. Plaintiffs and the Class members purchased the Ranitidine-Containing Products "primarily for personal, family or household purposes" within the meaning of 73 Pa. C.S. §201-9.2(a).

14494. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of 73 Pa. C.S. §201-2(3).

14495. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. C.S. §201-3.

14496. The Pennsylvania CPL makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (73 Pa. C.S. §201-2(4)(v));

(b) "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (73 Pa. C.S. §201-2(4)(vii));

(c) "[a]dvertising goods or services with intent not to sell them as advertised" (73 Pa. C.S. §201-2(4)(ix)); and

(d) "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" (73 Pa. C.S. §201-2(4)(xxi)).

14497. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14498. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Pennsylvania CPL, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d) engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

14499. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

- 2945 -

14500. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14501. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14502. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14503. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

14504. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Pennsylvania CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14505. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14506. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

14507. As a result of Defendant's violations of the Pennsylvania CPL, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Pennsylvania CPL.

<div align="center">

**COUNT 1036**
**Unjust Enrichment**
**(Pennsylvania Law)**
**(Against Teva)**

</div>

14508. Pennsylvania Class Representatives Nicholas Hazlett, Felicia Ball, and Carol Loggins incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14509. This cause of action is brought on behalf of the Pennsylvania-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14510. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14511. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom

14512. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14513. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14514. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14515. There is no express contract governing this dispute.

14516. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1037**
**Breach of Implied Warranty**
**(13 Pa. Cons. Stat. §2314)**
**(Against Teva)**

14517. Pennsylvania Class Representatives Nicholas Hazlett, Felicia Ball, and Carol Loggins incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14518. This cause of action is brought on behalf of the Pennsylvania-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14519. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Pennsylvania Class Representatives and members of the Pennsylvania Class and was in the business of selling such products.

14520. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14521. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14522. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14523. Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14524. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14525. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14526. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14527. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14528. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 32.    Causes of Action on Behalf of the Puerto Rico-Teva Classes

**COUNT 1038**
**Unjust Enrichment**
**(Puerto Rico Law)**
**(Against Teva)**

14529. Puerto Rico Class Representatives Sonia Diaz and Gloria Colon incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14530. This cause of action is brought on behalf of the Puerto Rico-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14531. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14532. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14533. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

14534. Defendants' enrichment – the monies obtained from Plaintiffs' and the Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and the Class members' impoverishment – *i.e.*, Plaintiffs' and the Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

14535. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14536. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14537. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1039**
**Breach of Implied Warranty**
**(P.R. Laws Ann. tit. 31, §3841)**
**(Against Teva)**

14538. Puerto Rico Class Representatives Sonia Diaz and Gloria Colon incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14539. This cause of action is brought on behalf of the Puerto Rico-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14540. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Puerto Rico Class Representatives and members of the Puerto Rico Class and was in the business of selling such products.

14541. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14542. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14543. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14544. Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14545. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14546. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14547. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14548. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14549. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 33.     Causes of Action on Behalf of the South Carolina-Teva Classes

### COUNT 1040
### Violation of the South Carolina Unfair Trade Practices Act
### (S.C. Code Ann. §39-5-10, *et seq.*)
### (Against Teva)

14550. South Carolina Class Representatives Annie Johnson, Michael Futrell, Jeffery Gunwall, Sharon Mclellan, and Marianella Villanueva incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14551. This cause of action is brought on behalf of the South Carolina-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14552. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of S.C. Code Ann. §39-5-10(a).

14553. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of S.C. Code Ann. §39-5-10(b).

14554. The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  S.C. Code Ann. §39-5-20(a).

14555. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14556. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the South Carolina UTPA.

14557. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14558. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14559. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14560. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14561. Plaintiffs and the Class members were aggrieved by Defendant's violations of the South Carolina UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14562. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14563. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

14564. As a result of Defendant's violations of the South Carolina UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the South Carolina UTPA.

<div align="center">

**COUNT 1041**
**Unjust Enrichment**
**(South Carolina Law)**
**(Against Teva)**

</div>

14565. South Carolina Class Representatives Annie Johnson, Michael Futrell, Jeffery Gunwall, Sharon Mclellan, and Marianella Villanueva incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14566. This cause of action is brought on behalf of the South Carolina-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14567. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14568. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14569. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14570. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14571. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14572. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 1042
### Breach of Implied Warranty
### (S.C. Code Ann. §36-2-314)
### (Against Teva)

14573. South Carolina Class Representatives Annie Johnson, Michael Futrell, Jeffery Gunwall, Sharon Mclellan, and Marianella Villanueva incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14574. This cause of action is brought on behalf of the South Carolina-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14575. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to South Carolina Class Representatives and members of the South Carolina Class and was in the business of selling such products.

14576. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14577. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14578. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14579. Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14580. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14581. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14582. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14583. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14584. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

34.     **Causes of Action on Behalf of the Tennessee-Teva Classes**

**COUNT 1043**
**Violation of the Tennessee Consumer Protection Act of 1977**
**(Tenn. Code Ann. §47-18-101,** *et seq.***)**
**(Against Teva)**

14585. Tennessee Class Representatives Angela Taylor, Rodriquze Hampton Jr., Kenneth Hix, Eva Broughton, Rebecca Howard, Lisa Lyle, and Billie Walker incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14586. This cause of action is brought on behalf of the Tennessee-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14587. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tenn. Code Ann. §47-18-103(14).

14588. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tenn. Code Ann. §47-18-103(3).

14589. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tenn. Code Ann. §47-18-103(8).

14590. Defendant was and is engaged in "[t]rade" or "commerce" or "consumer transaction[s]" within the meaning of Tenn. Code Ann. §47-18-103(20).

14591. The Tennessee Consumer Protection Act of 1977 ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce."  Tenn. Code Ann. §47-18-104(a).

14592. The Tennessee CPA makes unlawful specific acts, including:

(a) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tenn. Code Ann. §47-18-104(b)(5));

(b) "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (Tenn. Code Ann. §47-18-104(b)(7)); and

(c) "[a]dvertising goods or services with intent not to sell them as advertised" (Tenn. Code Ann. §47-18-104(b)(9)).

14593. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14594. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Tennessee CPA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

14595. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14596. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14597. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14598. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14599. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Tennessee CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14600. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14601. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

14602. As a result of Defendant's violations of the Tennessee CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Tennessee CPA.

**COUNT 1044**
**Unjust Enrichment**
**(Tennessee Law)**
**(Against Teva)**

14603. Tennessee Class Representatives Angela Taylor, Rodriquze Hampton Jr., Kenneth Hix, Eva Broughton, Rebecca Howard, Lisa Lyle, and Billie Walker incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14604. This cause of action is brought on behalf of the Tennessee-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14605. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14606. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14607. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14608. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14609. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14610. There is no existing, enforceable contract governing this dispute.

14611. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 1045
### Breach of Implied Warranty
### (Tenn. Code Ann. §47-2-314)
### (Against Teva)

14612. Tennessee Class Representatives Angela Taylor, Rodriquze Hampton Jr., Kenneth Hix, Eva Broughton, Rebecca Howard, Lisa Lyle, and Billie Walker incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14613. This cause of action is brought on behalf of the Tennessee-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14614. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Tennessee Class Representatives and members of the Tennessee Class and was in the business of selling such products.

14615. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14616. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14617. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14618. Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14619. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14620. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14621. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14622. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14623. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

35.     **Causes of Action on Behalf of the Texas-Teva Classes**

**COUNT 1046**
**Violation of the Texas Deceptive Trade Practices-Consumer Protection Act**
**(Tex. Bus. & Com. Code Ann. §17.41, *et seq.*)**
**(Against Teva)**

14624. Texas Class Representatives Timberly Goble, Marianella Villanueva, Maria Eames, Tina Howard, Christopher Johnson, Gina Martinez, Tonya Overstreet, Gregory Alan Wayland, and Sylvia Yoshida incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14625. This cause of action is brought on behalf of the Texas-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14626. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

14627. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

14628. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

14629. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

14630. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of

the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."

Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

14631. The Texas DTPA makes unlawful specific acts, including:

(a)  "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

(b)  "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

(c)  "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

14632. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14633. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

(a)  representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)  representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)  advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

14634. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14635. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14636. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14637. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14638. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

14639. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate

result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14640. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14641. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

14642. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

14643. As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

**COUNT 1047**
**Unjust Enrichment**
**(Texas Law)**
**(Against Teva)**

14644. Texas Class Representatives Timberly Goble, Marianella Villanueva, Maria Eames, Tina Howard, Christopher Johnson, Gina Martinez, Tonya Overstreet, Gregory Alan Wayland, and Sylvia Yoshida incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14645. This cause of action is brought on behalf of the Texas-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14646. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14647. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14648. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14649. It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14650. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14651. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 1048**
**Breach of Implied Warranty**
**(Tex. Bus. & Com. Code Ann. §2-314)**
**(Against Teva)**

</div>

14652. Texas Class Representatives Timberly Goble, Marianella Villanueva, Maria Eames, Tina Howard, Christopher Johnson, Gina Martinez, Tonya Overstreet, Gregory Alan Wayland, and Sylvia Yoshida incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14653. This cause of action is brought on behalf of the Texas-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14654. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

14655. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14656. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14657. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14658. Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14659. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14660. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14661. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14662. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14663. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**36.     Causes of Action on Behalf of the Vermont-Teva Classes**

**COUNT 1049**
**Violation of the Vermont Consumer Fraud Act**
**(Vt. Stat. Ann. tit. 9, §2451, *et seq.*)**
**(Against Teva)**

14664. Vermont Class Representatives Renee Clark, Eric Ragis, and Lisa Ragis incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14665. This cause of action is brought on behalf of the Vermont-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14666. Defendant is a "[s]eller" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(c).

14667. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(a).

14668. The Ranitidine-Containing Products are "[g]oods" within the meaning of Vt. Stat. Ann. tit. 9, §2451a(b).

14669. The Vermont consumer fraud act ("Vermont CFA") prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." Vt. Stat. Ann. tit. 9, §2453(a).

14670. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Vermont CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14671. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Vermont CFA.

14672. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14673. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14674. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14675. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14676. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Vermont CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14677. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14678. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

14679. As a result of Defendant's violations of the Vermont CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Vermont CFA.

<div align="center">

**COUNT 1050**
**Unjust Enrichment**
**(Vermont Law)**
**(Against Teva)**

</div>

14680. Vermont Class Representatives Renee Clark, Eric Ragis, and Lisa Ragis incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14681. This cause of action is brought on behalf of the Vermont-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14682. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14683. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14684. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14685. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14686. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14687. There is no express contract governing this dispute.

14688. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1051**
**Breach of Implied Warranty**
**(Vt. Stat. Ann. tit. 9A§2-314)**
**(Against Teva)**

</div>

14689. Vermont Class Representatives Renee Clark, Eric Ragis, and Lisa Ragis incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14690. This cause of action is brought on behalf of the Vermont-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14691. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Vermont Class Representatives and members of the Vermont Class and was in the business of selling such products.

14692. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14693. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14694. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14695. Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14696. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14697. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14698. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14699. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14700. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 37.        Causes of Action on Behalf of the Virginia-Teva Classes

**COUNT 1052**
**Violation of the Virginia Consumer Protection Act**
**(Va. Code Ann. §59.1-196, *et seq.*)**
**(Against Teva)**

14701. Virginia Class Representatives Cheryl Banks and Lynn Costley incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14702. This cause of action is brought on behalf of the Virginia-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14703. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Va. Code Ann. §59.1-198.

14704. Defendant was and is a "[s]upplier" within the meaning of Va. Code Ann. §59.1-198.

14705. The Ranitidine-Containing Products are "[g]oods" within the meaning of Va. Code Ann. §59.1-198.

14706. Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Va. Code Ann. §59.1-198.

14707. The Virginia Consumer Protection Act ("Virginia CPA") prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Va. Code Ann. §59.1-200(A).

14708. The Virginia CPA makes unlawful specific acts, including:

(a)     "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" (Va. Code Ann. §59.1-200(A)(5));

(b)     "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model" (Va. Code Ann. §59.1-200(A)(6));

(c)     "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" (Va. Code Ann. §59.1-200(A)(8)); and

(d)     "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" (Va. Code Ann. §59.1-200(A)(14)).

14709. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14710. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Virginia CPA, including:

> (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;
>
> (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and
>
> (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

14711. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14712. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14713. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14714. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14715. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

14716. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Virginia CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14717. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14718. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

14719. Defendant was provided notice of the issues raised in this Count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public. In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

14720. As a result of Defendant's violations of the Virginia CPA, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Virginia CPA.

**COUNT 1053**
**Unjust Enrichment**
**(Virginia Law)**
**(Against Teva)**

14721. Virginia Class Representatives Cheryl Banks and Lynn Costley incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14722. This cause of action is brought on behalf of the Virginia-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14723. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14724. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14725. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14726. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14727. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14728. There is no express contract governing this dispute.

14729. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1054**
**Breach of Implied Warranty**
**(Va. Code Ann. §8.2-314)**
**(Against Teva)**

14730. Virginia Class Representatives Cheryl Banks and Lynn Costley incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14731. This cause of action is brought on behalf of the Virginia-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14732. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Virginia Class Representatives and members of the Virginia Class and was in the business of selling such products.

14733. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14734. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14735. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14736. Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14737. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14738. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14739. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14740. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14741. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 38.   Causes of Action on Behalf of the Washington-Teva Classes

**COUNT 1055**
**Violation of the Washington Consumer Protection Act**
**(Wash. Rev. Code Ann. §19.86.010, *et seq.*)**
**(Against Teva)**

14742. Washington Class Representatives Billy Naab, Steve Fischer, Dave Garber, and Bridget Peck incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14743. This cause of action is brought on behalf of the Washington-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14744. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Wash. Rev. Code Ann. §19.86.010(1).

14745. The Ranitidine-Containing Products are "[a]ssets" within the meaning of Wash. Rev. Code Ann. §19.86.010(3).

14746. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Wash. Rev. Code Ann. §19.86.010(2).

14747. The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Wash. Rev. Code Ann. §19.86.020.

14748. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its

Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14749. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington CPA.

14750. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14751. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14752. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14753. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14754. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Washington CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14755. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14756. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

14757. On June 22, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Wash. Rev. Code §19.86.095 to the Attorney General of the State of Washington.

14758. As a result of Defendant's violations of the Washington CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Washington CPA.

**COUNT 1056**
**Unjust Enrichment**
**(Washington Law)**
**(Against Teva)**

14759. Washington Class Representatives Billy Naab, Steve Fischer, Dave Garber, and Bridget Peck incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14760. This cause of action is brought on behalf of the Washington-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14761. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14762. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14763. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14764. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14765. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14766. There is no express contract governing this dispute.

14767. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1057**
**Breach of Implied Warranty**
**(Wash. Rev. Code §62A.2-314)**
**(Against Teva)**

</div>

14768. Washington Class Representatives Billy Naab, Steve Fischer, Dave Garber, and Bridget Peck incorporate the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14769. This cause of action is brought on behalf of the Washington-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14770. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Washington Class Representatives and members of the Washington Class and was in the business of selling such products.

14771. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14772. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14773. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14774. Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14775. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14776. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14777. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14778. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14779. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 39. Causes of Action on Behalf of the West Virginia-Teva Classes

**COUNT 1058**
**Unjust Enrichment**
**(West Virginia Law)**
**(Against Teva)**

14780. West Virginia Class Representative Mynetta Hastings incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14781. This cause of action is brought on behalf of the West Virginia-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14782. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14783. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14784. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14785. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14786. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14787. There is no express contract governing this dispute.

14788. Plaintiff and the Class members do not have an adequate remedy at law.

**COUNT 1059**
**Breach of Implied Warranty**
**(W. Va. Code §46-2-314)**
**(Against Teva)**

14789. West Virginia Class Representative Mynetta Hastings incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14790. This cause of action is brought on behalf of the West Virginia-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14791. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to West Virginia Class Representatives and members of the West Virginia Class and was in the business of selling such products.

14792. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14793. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14794. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

- 2997 -

14795. Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14796. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14797. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

14798. Further, Plaintiff and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14799. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14800. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

40.     **Causes of Action on Behalf of the Wisconsin-Teva Classes**

### COUNT 1060
### Violation of the Wisconsin Deceptive Trade Practices Act
### (Wis. Stat. Ann. §100.18, *et seq.*)
### (Against Teva)

14801. Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14802. This cause of action is brought on behalf of the Wisconsin-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14803. Defendant is a "person, firm, corporation or association" within the meaning of Wis. Stat. Ann. §100.18(1).

14804. Plaintiff and the Class members are members of "the public" within the meaning of Wis. Stat. Ann. §100.18(1).

14805. The Ranitidine-Containing Products are "merchandise" within the meaning of Wis. Stat. Ann. §100.18(1).

14806. The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits any "assertion, representation or statement of fact which is untrue, deceptive or misleading."  Wis. Stat. Ann. §100.18(1).

14807. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Wisconsin DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products

remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14808. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Wisconsin DTPA.

14809. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

14810. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

14811. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14812. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14813. Plaintiff and the Class members were aggrieved by Defendant's violations of the Wisconsin DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14814. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14815. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

14816. As a result of Defendant's violations of the Wisconsin DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Wisconsin DTPA.

**COUNT 1061**
**Unjust Enrichment**
**(Wisconsin Law)**
**(Against Teva)**

14817. Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14818. This cause of action is brought on behalf of the Wisconsin-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14819. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14820. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14821. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14822. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14823. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said

benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14824. There is no express contract governing this dispute.

14825. Plaintiff and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1062**
**Breach of Implied Warranty**
**(Wis. Stat. Ann. §402.314)**
**(Against Teva)**

</div>

14826. Wisconsin Class Representative Wendy Quezaire incorporates the preceding allegations in paragraphs 67-75, 273-277, 304-442, 445-483, and 845-867 as though fully set forth herein.

14827. This cause of action is brought on behalf of the Wisconsin-Teva Class (for the purpose of this section, "Class") against Teva (for purposes of this Count only, "Defendant") with respect to prescription Ranitidine.

14828. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Wisconsin Class Representatives and members of the Wisconsin Class and was in the business of selling such products.

14829. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14830. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14831. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14832. Defendant had reason to know Plaintiff and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiff and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14833. Plaintiff and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing Products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

14834. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

14835. Further, Plaintiff and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

14836. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and the members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14837. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## XI.  CAUSES OF ACTION AGAINST OTC STORE-BRAND DEFENDANTS

### A.      Causes of Action Against CVS

14838. For the purposes of the subsequent causes of action against Defendant CVS, Plaintiffs are incorporating the following allegations by reference: paragraphs 76-77 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic ranitidine); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469 (requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 912-916, 1005-1029 (CVS's Store-Brand Ranitidine); 1093-1118 (CVS's Store-Brand contract manufacturers); 1119-1143 (Perrigo); 1219-1230 (Dr. Reddy's); 1257-1275 (Strides); 1030-1040, 1144-1156, 1231-1243, 1276-1288 (misrepresentations or omissions of material fact in labeling); 1041-1055, 1157-1169, 1244-1256, 1289-1301 (misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

14839. Plaintiffs identified in the table below bring claims against Defendant CVS on behalf of themselves and their respective State Classes under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

- 3005 -

| **Plaintiff Name** | **State(s) of Residence** |
| --- | --- |
| Richard Obrien | California |
| Angel Vega | Connecticut |
| Kathy Jeffries | Georgia |
| Rebecca Sizemore | Indiana |
| Arthur Gamble | Michigan |
| Brad Hoag | Minnesota |
| Ernesto Sanchez | New Mexico |
| Richard Froehlich | New York |
| Chris Troyan | Ohio |
| Patricia Hess | Ohio |
| Gregory Alan Wayland | Texas |
| Marianella Villanueva | Texas |
| Minetta Hastings | West Virginia |

1.      **Causes of Action on Behalf of the California-CVS Classes**

**COUNT 1063**
**Violation of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code §17200, *et seq.*)**
**(Against Store-Brand Retailer Defendant CVS**

14840. California Class Representative Plaintiff Richard Obrien incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

14841. This cause of action is brought on behalf of the California-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

14842. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

14843. Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

14844. As a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14845. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL.  These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

14846. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14847. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14848. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14849. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14850. Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

14851. Defendant conduct also consitutes "unfair" business acts or practies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the

practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

14852. Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, see Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

14853. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14854. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14855. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

14856. Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

<div align="center">

**COUNT 1064**
**Violation of the California False Advertising Law**
**(Cal. Bus. & Prof. Code §17500, *et seq.*)**
**(Against Store-Brand Retailer Defendant CVS)**

</div>

14857. California Class Representative Plaintiff Richard Obrien incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

14858. This cause of action is brought on behalf of the California-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

14859. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

14860. The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement .

. . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code §17500.

14861. As a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14862. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

14863. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14864. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14865. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14866. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14867. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14868. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14869. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

14870. As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

<div align="center">

**COUNT 1065**
**Violation of the California Consumers Legal Remedies Act**
**(Cal. Civ. Code §1750, *et seq.*)**
**(Against Store-Brand Retailer Defendant CVS)**

</div>

14871. California Class Representative Plaintiff Richard Obrien incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

14872. This cause of action is brought on behalf of the California-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

14873. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

14874. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

14875. The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

14876. The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person

in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §1770(a).

14877. The California CLRA makes unlawful specific acts, including:

(a) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

(b) "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

(c) "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

(d) "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

14878. As a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14879. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

- 3014 -

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

14880. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14881. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14882. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14883. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14884. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions,

concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

14885. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14886. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

14887. Defendant was provided notice of the issues raised in this count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

14888. Pursuant to Cal. Civ. Code §1780(a), Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior

citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

<div align="center">

**COUNT 1066**
**Breach of Implied Warranty**
**(Cal. Com. Code §2314)**
**(Against Store-Brand Retailer Defendant CVS)**

</div>

14889. California Class Representatives Plaintiff Richard Obrien the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

14890. This cause of action is brought on behalf of the California-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

14891. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to California Class Representatives and members of the California Class and was in the business of selling such products.

14892. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Cal. Com. Code §2314.

14893. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

14894. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14895. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14896. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14897. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 1067
### Unjust Enrichment or Quasi-Contract
### (California Law)
### (Against Store-Brand Retailer Defendant CVS)

14898. California Class Representatives Richard Obrien incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

14899. This cause of action is brought on behalf of the California-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

14900. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14901. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14902. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14903. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14904. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14905. Plaintiffs and the Class members do not have an adequate remedy at law.

### 2. Causes of Action on Behalf of the Connecticut-CVS Classes

### COUNT 1068
### Violation of the Connecticut Unfair Trade Practices Act
### (Conn. Gen. Stat. Ann. §42-110a, *et seq.*)
### (Against Store-Brand Retailer Defendant CVS)

14906. Connecticut Class Representative Plaintiff Angel Vega incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

14907. This cause of action is brought on behalf of the Connecticut-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

14908. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Conn. Gen. Stat. Ann. §42-110a(3).

14909. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. §42-110a(4).

14910. The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. §42-110b(a).

14911. As a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14912. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Connecticut UTPA.

14913. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14914. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14915. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein,

had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14916. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14917. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Connecticut UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14918. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14919. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

14920. As a result of Defendant's violations of the Connecticut UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

**COUNT 1069**
**Breach of Implied Warranty**
**(Conn. Gen. Stat. Ann. §42a-2-314)**
**(Against Store-Brand Retailer Defendant CVS)**

14921. Connecticut Class Representative Plaintiff Angel Vega incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

14922. This cause of action is brought on behalf of the Connecticut-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

14923. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Connecticut Class Representatives and members of the Connecticut Class and was in the business of selling such products.

14924. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Conn. Gen. Stat. Ann. §42a-2-314.

14925. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

- 3023 -

14926. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14927. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14928. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14929. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 1070**
**Unjust Enrichment**
**(Connecticut Law)**
**(Against Store-Brand Retailer Defendant CVS)**

14930. Connecticut Class Representative Plaintiff Angel Vega incorporate the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

14931. This cause of action is brought on behalf of the Connecticut-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

14932. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14933. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14934. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14935. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14936. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14937. Plaintiffs and the Class members do not have an adequate remedy at law.

3. **Causes of Action on Behalf of the Georgia-CVS Classes**

**COUNT 1071**
**Violation of the Georgia Fair Business Practices Act**
**(Ga. Code Ann. §10-1-390, *et seq.*)**
**(Against Store-Brand Retailer Defendant CVS)**

14938. Georgia Class Representatives Plaintiff Kathy Jeffries incorporate the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

14939. This cause of action is brought on behalf of the Georgia-CVS Class (for the purpose of this section, "Class") against  Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

14940. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(24).

14941. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(6).

14942. Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Ga. Code Ann. §10-1-392(a)(28).

14943. The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."  Ga. Code Ann. §10-1-393(a).

14944. The Georgia FBPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-393(b)(5));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-393(b)(7)); and

(c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-393(b)(9)).

14945. In the course of its business, as a Private Label Distributor, Defendant, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14946. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia FBPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

14947. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

- 3027 -

14948. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

14949. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

14950. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

14951. Plaintiffs and the Class members reasonably relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

14952. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Georgia FBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

14953. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

14954. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

14955. Defendant was provided notice of the issues raised in this count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Ga. Code Ann. §10-1-399(b) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

14956. As a result of Defendant's violations of the Georgia FBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Georgia FBPA.

**COUNT 1072**
**Breach of Implied Warranty**
**(Ga. Code. Ann. §11-2-314)**
**(Against Store-Brand Retailer Defendant CVS)**

14957. Georgia Class Representative Plaintiff Kathy Jeffries incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

14958. This cause of action is brought on behalf of the Georgia-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

14959. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Georgia Class Representatives and members of the Georgia Class and was in the business of selling such products.

14960. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ga. Code. Ann. §11-2-314.

14961. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

14962. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14963. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14964. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14965. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 1073**
**Unjust Enrichment**
**(Georgia Law)**
**(Against Store-Brand Retailer Defendant CVS)**

</div>

14966. Georgia Class Representative Plaintiff Kathy Jeffries incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

14967. This cause of action is brought on behalf of the Georgia-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

14968. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14969. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14970. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14971. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14972. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14973. There is no express contract governing this dispute.

14974. Plaintiffs and the Class members do not have an adequate remedy at law.

4.        Causes of Action on Behalf of the Indiana-CVS Classes

**COUNT 1074**
**Breach of Implied Warranty**
**(Ind. Code Ann. §26-1-2-314)**
**(Against Store-Brand Retailer Defendant CVS)**

14975. Indiana Class Representative Plaintiff Rebecca Sizemore incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

14976. This cause of action is brought on behalf of the Indiana-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

14977. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Indiana Class Representatives and members of the Indiana Class and was in the business of selling such products.

14978. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ind. Code Ann. §26-1-2-314.

14979. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

14980. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

14981. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

14982. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

14983. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

14984. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 1075**
**Unjust Enrichment**
**(Indiana Law)**
**(Against Store-Brand Retailer Defendant CVS)**

</div>

14985. Indiana Class Representative Rebecca Sizemore incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

14986. This cause of action is brought on behalf of the Indiana-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

14987. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

14988. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

14989. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

14990. It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

14991. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the

value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

14992. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

### 5.    Causes of Action on Behalf of the Michigan-CVS Classes

### COUNT 1076
### Violation of the Michigan Consumer Protection Act
### (Mich. Comp. Laws Ann. §445.901, *et seq.*)
### (Against Store-Brand Retailer Defendant CVS)

14993. Michigan Class Representative Arthur Gamble incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

14994. This cause of action is brought on behalf of the Michigan-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

14995. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(d).

14996. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(g).

14997. The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws Ann. §445.903(1).

14998. The Michigan CPA makes unlawful specific acts, including:

> (a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Mich. Comp. Laws Ann. §445.903(1)(c));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Mich. Comp. Laws Ann. §445.903(1)(e)); and

(c)     "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented" (Mich. Comp. Laws Ann. §445.903(1)(g)).

14999. In the course of its business, as a Private Label Distributor, Defendant, through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15000. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Michigan CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

15001. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15002. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15003. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15004. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15005. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Michigan CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15006. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15007. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15008. As a result of Defendant's violations of the Michigan CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Michigan CPA.

**COUNT 1077**
**Unjust Enrichment**
**(Michigan Law)**
**(Against  Store-Brand Retailer Defendant CVS)**

15009. Michigan Class Representative Plaintiff Arthur Gamble incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

15010. This cause of action is brought on behalf of the Michigan-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

15011. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15012. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15013. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15014. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15015. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15016. There is no express contract governing this dispute.

15017. Plaintiffs and the Class members do not have an adequate remedy at law.

     **6.**         **Causes of Action on Behalf of the Minnesota-CVS Classes**

<div align="center">

**COUNT 1078**
**Violation of the Minnesota Prevention of Consumer Fraud Act**
**(Minn. Stat. Ann. §325F.68, *et seq.*)**
**(Against Store-Brand Retailer Defendant CVS)**

</div>

15018. Minnesota Class Representative Plaintiff Brad Hoag incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

15019. This cause of action is brought on behalf of the Minnesota-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

15020. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

15021. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

15022. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged." Minn. Stat. Ann. §325F.69(1). Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

15023. In the course of its business, as a Private Label Distributor, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing

expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15024. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

15025. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15026. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15027. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15028. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15029. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

15030. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15031. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15032. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15033. As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

**COUNT 1079**
**Breach of Implied Warranty**
**(Minn. Stat. Ann. §336.2-314)**
**(Against Store-Brand Retailer Defendant CVS)**

15034. Minnesota Class Representative Plaintiff Brad Hoag incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

15035. This cause of action is brought on behalf of the Minnesota-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

15036. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

15037. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Minn. Stat. Ann. §336.2-314.

15038. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15039. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15040. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

15041. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15042. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 1080**
**Unjust Enrichment**
**(Minnesota Law)**
**(Against  Store-Brand Retailer Defendant CVS)**

15043. Minnesota Class Representative Plaintiff Brad Hoag incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

15044. This cause of action is brought on behalf of the Minnesota-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

- 3045 -

15045. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15046. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15047. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15048. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15049. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15050. Plaintiffs and the Class members do not have an adequate remedy at law.

## 7.    Causes of Action on Behalf of the New Mexico-CVS Classes

### COUNT 1081
### Violation of the New Mexico Unfair Trade Practices Act
### (N.M. Stat. Ann. §57-12-1, *et seq.*)
### (Against Store-Brand Retailer Defendant CVS)

15051. New Mexico Class Representative Plaintiff Ernesto Sanchez incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

15052. This cause of action is brought on behalf of the New Mexico-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

15053. Defendant, Plaintiff, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

15054. Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

15055. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person."  N.M. Stat. Ann. §57-12-2(D).  The New Mexico UTPA also makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid."  N.M. Stat. Ann. §57-12-2(E).

15056. The New Mexico UTPA makes unlawful specific acts, including:

(a) "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

(b) "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

(c) "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

15057. In the course of its business, as a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15058. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Mexico UTPA, including:

(a) representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and

(d)     acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.

15059. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

15060. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

15061. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15062. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15063. Plaintiff and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15064. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15065. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15066. As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

### COUNT 1082
### Breach of Implied Warranty
### (N.M. Stat. Ann. §55-2-314)
### (Against Store-Brand Retailer Defendant CVS)

15067. New Mexico Class Representative Plaintiff Ernesto Sanchez incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

15068. This cause of action is brought on behalf of the New Mexico-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

15069. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

15070. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.M. Stat. Ann. §55-2-314.

15071. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15072. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15073. Plaintiff and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

15074. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15075. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 1083**
**Unjust Enrichment**
**(New Mexico Law)**
**(Against Store-Brand Retailer Defendant CVS)**

15076. New Mexico Class Representative Plaintiff Ernesto Sanchez incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

15077. This cause of action is brought on behalf of the New Mexico-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

15078. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15079. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15080. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15081. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15082. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15083. There is no express contract governing this dispute.

15084. Plaintiff and the Class members do not have an adequate remedy at law.

**8.      Causes of Action on Behalf of the New York-CVS Classes**

**COUNT 1084**
**Violation of New York Deceptive Acts and Practices Act**
**(N.Y. Gen. Bus. Law §349)**
**(Against Store-Brand Retailer Defendant CVS)**

15085. New York Class Representatives Richard Froehlich incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

15086. This cause of action is brought on behalf of the New York-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

15087. Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

15088. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §349(a).

15089. In the course of its business, as a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15090. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

15091. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15092. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15093. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15094. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15095. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15096. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15097. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15098. As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

<div align="center">

**COUNT 1085**
**Violation of the New York False Advertising Act**
**(N.Y. Gen. Bus. Law §350)**
**(Against Store-Brand Retailer Defendant CVS)**

</div>

15099. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

15100. This cause of action is brought on behalf of the New York-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

15101. Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

15102. The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §350.  False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

15103. Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

15104. In the course of its business, as a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15105. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

15106. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15107. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15108. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15109. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15110. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15111. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15112. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15113. Defendant was provided notice of the issues raised in this count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

15114. As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the New York Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

<div align="center">

**COUNT 1086**
**Breach of Implied Warranty**
**(N.Y. U.C.C. Law §2-314)**
**(Against Store-Brand Retailer Defendant CVS)**

</div>

15115. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

15116. This cause of action is brought on behalf of the New York-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

15117. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representatives and members of the New York Class and was in the business of selling such products.

15118. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.Y. U.C.C. Law §2-314.

15119. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15120. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15121. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

15122. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15123. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 1087
## Unjust Enrichment
## (New York Law)
## (Against Store-Brand Retailer Defendant CVS)

15124. New York Class Representative Plaintiff Richard Froehlich incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

15125. This cause of action is brought on behalf of the New York-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

15126. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15127. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15128. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15129. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15130. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15131. Plaintiffs and the Class members do not have adequate remedy at law, nor is there an express contract governing dispute.

### 9.      Causes of Action on Behalf of the Ohio-CVS Classes

### COUNT 1088
### Breach of Implied Warranty
### (Ohio Rev. Code Ann. §1302.27)
### (Against Store-Brand Retailer Defendant CVS)

15132. Ohio Class Representatives Plaintiff Patricia Hess and Plaintiff Chris Troyan incorporate the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

15133. This cause of action is brought on behalf of the Ohio-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

15134. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Ohio Class Representatives and members of the Ohio Class and was in the business of selling such products.

15135. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ohio Rev. Code Ann. §1302.27

15136. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15137. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15138. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

15139. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15140. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 1089**
**Unjust Enrichment**
**(Ohio Law)**
**(Against Store-Brand Retailer Defendant CVS)**

</div>

15141. Ohio Class Representatives Plaintiff Patricia Hess and Plaintiff Chris Troyan incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

15142. This cause of action is brought on behalf of the Ohio-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

15143. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15144. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15145. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15146. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15147. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15148. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 10.        Causes of Action on Behalf of the Texas-CVS Classes

### COUNT 1090
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
### (Tex. Bus. & Com. Code Ann. §17.41, *et seq.*)
### (Against Store-Brand Retailer Defendant CVS)

15149. Texas Class Representatives Plaintiff Gregory Alan Wayland and Plaintiff Marianella Villanueva incorporate the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

15150. This cause of action is brought on behalf of the Texas-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

15151. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

15152. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

15153. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

15154. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

15155. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

15156. The Texas DTPA makes unlawful specific acts, including:

(a) "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

(b) "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

(c) "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

15157. In the course of its business, as a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when

the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15158. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

15159. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15160. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15161. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15162. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15163. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

15164. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15165. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15166. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15167. Defendant was provided notice of the issues raised in this count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual

notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

15168. As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

### COUNT 1091
### Breach of Implied Warranty
### (Tex. Bus. & Com. Code Ann. §2-314)
### (Against Store-Brand Retailer Defendant CVS)

15169. Texas Class Representatives Gregory Alan Wayland and Marianella Villlanueva incorporate the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

15170. This cause of action is brought on behalf of the Texas-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

15171. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

15172. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Tex. Bus. & Com. Code Ann. §2-314.

15173. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15174. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15175. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

15176. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15177. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 1092**
**Unjust Enrichment (Texas Law)**
**(Against Store-Brand Retailer Defendant CVS)**

15178. Texas Class Representatives Plaintiff Gregory Alan Wayland and Marianella Villanueva incorporate the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

15179. This cause of action is brought on behalf of the Texas-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

15180. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15181. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15182. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15183. It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts

concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15184. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15185. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 11. Causes of Action on Behalf of the West Virginia-CVS Classes

### COUNT 1093
### Violation of the West Virginia Consumer Credit and Protection Act
### (W. Va. Code Ann. §46A-1-101, *et seq.*)
### (Against Store-Brand Retailer CVS)

15186. West Virginia Class Representative Plaintiff Mynetta Hastings incorporates the preceding allegations in the paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

15187. This cause of action is brought on behalf of the West Virginia-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS for purposes of this Count only, "Defendant").

15188. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of W. Va. Code Ann. §46A-1-102(31).

15189. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of W. Va. Code Ann. §§46A-1-102(12) and 46A-6-102(2).

15190. The OTC Ranitidine-Containing Products are "[g]oods" within the meaning of W. Va. Code Ann. §46A-1-102(21).

15191. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of W. Va. Code Ann. §46A-6-102(6).

15192. The West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts of practices in the conduct of any trade or commerce." W. Va. Code Ann. §46A-6-104.

15193. The West Virginia CCPA makes unlawful specific acts, including:

(a)  "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (W. Va. Code Ann. §46A-6-102(7)(E));

(b)  "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (W. Va. Code Ann. §46A-6-102(7)(G));

(c)  "[a]dvertising goods or services with intent not to sell them as advertised" (W. Va. Code Ann. §46A-6-102(7)(I));

(d)  "[e]ngaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding" (W. Va. Code Ann. §46A-6-102(7)(L)); and

(e)  "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby" (W. Va. Code Ann. §46A-6-102(7)(M)).

15194. In the course of its business, as a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the West Virginia CCPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its OTC Ranitidine-Containing Products, including (i) packaging quantities of tablets

in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15195. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding OTC Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the West Virginia CCPA, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)    engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

15196. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of OTC Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15197. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15198. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were

likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of OTC Ranitidine-Containing Products.

15199. The facts regarding OTC Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to OTC Ranitidine-Containing Products.

15200. Plaintiffs and the Class members were aggrieved by Defendant's violations of the West Virginia CCPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15201. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding OTC Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15202. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15203. Defendant was provided notice of the issues raised in this count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of OTC Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs

in MDL 2924 sent a notice letter pursuant to W. Va. Code Ann. §46A-6-106(c) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

15204. As a result of Defendant's violations of the West Virginia CCPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the West Virginia CCPA.

<div align="center">

**COUNT 1094**
**Breach of Implied Warranty**
**(W. Va. Code §46-2-314)**
**(Against Store-Brand Retailer Defendant CVS)**

</div>

15205. West Virginia Class Representative Plaintiff Mynetta Hastings incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

15206. This cause of action is brought on behalf of the West Virginia-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

15207. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to West Virginia Class Representatives and members of the West Virginia Class and was in the business of selling such products.

15208. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. W. Va. Code §46-2-314.

15209. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15210. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15211. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

15212. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15213. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 1095
## Unjust Enrichment
## (West Virginia Law)
## (Against Store-Brand Retailer Defendant CVS)

15214. West Virginia Class Representatives Plaintiff Mynetta Hastings incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1169, and 1219-1301 as though fully set forth herein.

15215. This cause of action is brought on behalf of the West Virginia-CVS Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant CVS (for purposes of this Count only, "Defendant").

15216. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15217. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15218. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15219. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15220. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15221. There is no express contract governing this dispute.

15222. Plaintiffs and the Class members do not have an adequate remedy at law.

## B.    Causes of Action Against Rite Aid

15223. For the purposes of the subsequent causes of action against Defendant Rite Aid, Plaintiffs are incorporating the following allegations by reference: paragraphs 78-79 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic ranitidine); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469 (requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 912-916, 1056-1066 (Rite-Aid's Store-Brand Ranitidine); 1093-1118 (Rite-Aid's Store-Brand contract manufacturers); 1119-1143 (Perrigo); 1170-1192 (Apotex); 1257-1275 (Strides); 1067-1077, 1144-1156, 1193-1205, 1231-1243, 1276-1288 (misrepresentations or omissions of material fact in labeling); 1078-1092, 1157-1169, 1206-1218,

1289-1301 (misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

15224. Plaintiffs identified in the table below bring claims against Defendant Rite Aid on behalf of themselves and their respective State Classes under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| Plaintiff Name | State(s) of Residence |
|---|---|
| Golbenaz Bakhtiar | California |
| Richard Obrien | California |
| Janet Asbury | Kentucky |
| Richard Froehlich | New York |

### 1. Causes of Action on Behalf of the California-Rite Aid Classes

**COUNT 1096**
**Violation of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code §17200, *et seq.*)**
**(Against Store-Brand Retailer Defendant Rite Aid**

15225. California Class Representatives Plaintiff Golbenz Bakhtiar and Richard Obrien incorporate the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1041-1218, and 1257-1301 as though fully set forth herein.

15226. This cause of action is brought on behalf of the California-Rite Aid Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Rite Aid (for purposes of this Count only, "Defendant").

15227. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

15228. Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

15229. As a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15230. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL. These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

15231. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15232. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15233. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15234. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15235. Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

15236. Defendant's conduct also consitutes "unfair" business acts or practies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the

practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

15237.  Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, see Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

15238.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15239.  Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15240. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15241. Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

<div align="center">

**COUNT 1097**
**Violation of the California False Advertising Law**
**(Cal. Bus. & Prof. Code §17500, *et seq.*)**
**(Against Store-Brand Retailer Defendant Rite Aid)**

</div>

15242. California Class Representatives Plaintiff Golbenz Bakhtiar and Richard Obrien incorporate the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1041-1218, and 1257-1301 as though fully set forth herein.

15243. This cause of action is brought on behalf of the California-Rite Aid Class (for the purpose of this section, "Class") against  Store-Brand Retailer Defendant Rite Aid (for purposes of this Count only, "Defendant").

15244. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

15245. The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement .

- 3084 -

. . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code §17500.

15246. As a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15247. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

15248. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15249. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15250. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15251. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15252. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15253. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15254. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15255. As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

<div align="center">

**COUNT 1098**
**Violation of the California Consumers Legal Remedies Act**
**(Cal. Civ. Code §1750,** *et seq.***)**
**(Against Store-Brand Retailer Defendant Rite Aid)**

</div>

15256. California Class Representatives Plaintiff Golbenz Bakhtiar and Richard Obrien incorporate the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1041-1218, and 1257-1301 as though fully set forth herein.

15257. This cause of action is brought on behalf of the California-Rite Aid Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Rite Aid (for purposes of this Count only, "Defendant").

15258. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

15259. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

15260. The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

15261. The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person

in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §1770(a).

15262. The California CLRA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

(c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

(d)     "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

15263. As a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15264. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

15265. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15266. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15267. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15268. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15269. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions,

concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

15270. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15271. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15272. Defendant was provided notice of the issues raised in this count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

15273. Pursuant to Cal. Civ. Code §1780(a), Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior

citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

<div align="center">

**COUNT 1099**
**Breach of Implied Warranty**
**(Cal. Com. Code §2314)**
**(Against Store-Brand Retailer Defendant Rite Aid)**

</div>

15274. California Class Representatives Plaintiff Golbenaz Bakhtiar and Plaintiff Richard Obrien incorporate the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1041-1218, and 1257-1301 as though fully set forth herein.

15275. This cause of action is brought on behalf of the California-Rite Aid Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Rite Aid (for purposes of this Count only, "Defendant").

15276. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to California Class Representatives and members of the California Class and was in the business of selling such products.

15277. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Cal. Com. Code §2314.

15278. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15279. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15280. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

15281. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15282. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 1100**
**Unjust Enrichment or Quasi-Contract**
**(California Law)**
**(Against Store-Brand Retailer Defendant Rite Aid)**

15283. California Class Representatives Plaintiff Golbenz Bakhtiar and Plaintiff Richard Obrien incorporate the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1041-1218, and 1257-1301 as though fully set forth herein.

15284. This cause of action is brought on behalf of the California-Rite Aid Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Rite Aid (for purposes of this Count only, "Defendant").

15285. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15286. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15287. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15288. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15289. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15290. Plaintiffs and the Class members do not have an adequate remedy at law.

### 2.    Causes of Action on Behalf of the Kentucky-Rite Aid Classes

### COUNT 1101
### Violation of the Kentucky Consumer Protection Act
### (Ky. Rev. Stat. Ann. §367.110, *et seq.*)
### (Against Store-Brand Retailer Defendant Rite Aid)

15291. Kentucky Class Representative Janet Asbury incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1041-1218, and 1257-1301 as though fully set forth herein.

15292. This cause of action is brought on behalf of the Kentucky-Rite Aid Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Rite Aid (for purposes of this Count only, "Defendant").

15293. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ky. Rev. Stat. Ann. §367.110(1).

15294. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Ky. Rev. Stat. Ann. §367.110(2).

15295. The Kentucky Consumer Protection Act ("Kentucky CPA") prohibits "[u]nfair, [unconscionable], false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. Ann. §367.170(1)-(2).

15296. In the course of its business, as a Private Label Distributor, Defendant, through its agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including by printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15297. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Kentucky CPA.

15298. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15299. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15300. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were

likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15301. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15302. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Kentucky CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15303. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15304. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15305. As a result of Defendant's violations of the Kentucky CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Kentucky CPA.

**COUNT 1102**
**Breach of Implied Warranty**
**(Ky. Rev. Stat. Ann. §355.2-314)**
**(Against Store-Brand Retailer Defendant Rite Aid)**

15306. Kentucky Class Representative Plaintiff Janet Asbury incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1041-1218, and 1257-1301 as though fully set forth herein.

15307. This cause of action is brought on behalf of the Kentucky-Rite Aid Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Rite Aid (for purposes of this Count only, "Defendant").

15308. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Kentucky Class Representatives and members of the Kentucky Class and was in the business of selling such products.

15309. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ky. Rev. Stat. Ann. §355.2-314.

15310. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15311. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15312. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

15313. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15314. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 1103**
**Unjust Enrichment**
**(Kentucky Law)**
**(Against Store-Brand Retailer Defendant Rite Aid)**

15315. Kentucky Class Representative Plaintiff Janet Asbury incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1041-1218, and 1257-1301 as though fully set forth herein.

15316. This cause of action is brought on behalf of the Kentucky-Rite Aid Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Rite Aid (for purposes of this Count only, "Defendant").

15317. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15318. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15319. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15320. It would be inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15321. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15322. Plaintiffs and the Class members do not have an adequate remedy at law.

3.      **Causes of Action on Behalf of the New York-Rite Aid Classes**

**COUNT 1104**
**Violation of New York Deceptive Acts and Practices Act**
**(N.Y. Gen. Bus. Law §349)**
**(Against Store-Brand Retailer Defendant Rite Aid)**

15323. New York Class Representatives Richard Froehlich incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1041-1218, and 1257-1301 as though fully set forth herein.

15324. This cause of action is brought on behalf of the New York-Rite Aid Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Rite Aid (for purposes of this Count only, "Defendant").

15325. Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

15326. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §349(a).

15327. In the course of its business, as a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the

products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15328. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

15329. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15330. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15331. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15332. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15333. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15334. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15335. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15336. As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

<div align="center">

**COUNT 1105**
**Violation of the New York False Advertising Act**
**(N.Y. Gen. Bus. Law §350)**
**(Against Store-Brand Retailer Defendant Rite Aid)**

</div>

15337. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1041-1218, and 1257-1301 as though fully set forth herein.

15338. This cause of action is brought on behalf of the New York-Rite Aid Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Rite Aid (for purposes of this Count only, "Defendant").

15339. Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

15340. The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

15341. Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

15342. In the course of its business, as a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing

expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15343. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

15344. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15345. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15346. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15347. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15348. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15349. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15350. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

15351. Defendant was provided notice of the issues raised in this count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public. In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

15352. As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the New York Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

## COUNT 1106
## Breach of Implied Warranty
## (N.Y. U.C.C. Law §2-314)
## (Against Store-Brand Retailer Defendant Rite Aid)

15353. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1041-1218, and 1257-1301 as though fully set forth herein.

15354. This cause of action is brought on behalf of the New York-Rite Aid Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Rite Aid (for purposes of this Count only, "Defendant").

15355. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representatives and members of the New York Class and was in the business of selling such products.

15356. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.Y. U.C.C. Law §2-314.

15357. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15358. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15359. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

15360. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15361. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 1107**
**Unjust Enrichment**
**(New York Law)**
**(Against Store-Brand Retailer Defendant Rite Aid)**

15362. New York Class Representative Plaintiff Richard Froehlich incorporates the preceding allegations in paragraphs 76-77, 273-277, 304-442, 445-483, 912-916, 1041-1218, and 1257-1301 as though fully set forth herein.

15363. This cause of action is brought on behalf of the New York-Rite Aid Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Rite Aid (for purposes of this Count only, "Defendant").

- 3107 -

15364. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15365. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15366. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15367. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15368. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15369. Plaintiffs and the Class members do not have adequate remedy at law, nor is there an express contract governing dispute.

C.      **Causes of Action Against Walgreens**

15370. For the purposes of the subsequent causes of action against Defendant Walgreens, Plaintiffs are incorporating the following allegations by reference: paragraphs 80-85 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic ranitidine); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469 (requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 912-916, 962-978 (Walgreens' Store-Brand Ranitidine); 1093-1118 (Walgreens' Store-Brand contract manufacturing); 1119-1143 (Perrigo); 1170-1192 (Apotex); 1219-1230 (Dr. Reddy's); 1257-1275 (Strides); 979-989, 1144-1156, 1193-1205, 1231-1243, 1276-1288 (misrepresentations or omissions of material fact in labeling); 990-1004, 1157-1169, 1206-1218, 1244-1256, 1289-1301 (misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

15371. Plaintiffs identified in the table below bring claims against Defendant Walgreens on behalf of themselves and their respective State Classes under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| Plaintiff Name | State(s) of Residence |
| --- | --- |
| Tangie Sims | Arizona |
| Tina Culclager | Artkansas |
| Golbenaz Bakhtiar | California |

| Jeffrey Pisano | Colorado |
|---|---|
| Ronald Ragan | Colorado |
| Angel Vega | Connecticut |
| Ronald Ragis | Florida |
| Renee Chatman | Illinois |
| Brian Nervig | Iowa |
| Sandra Erickson-Brown | Minnesota |
| Ernesto Sanchez | New Mexico |
| Gloria Colon | Puerto Rico |
| Marianella Villanueva | Texas |
| Jonathan Ferguson | Washington |

1.   **Causes of Action on Behalf of the Arizona- Walgreens Classes**

**COUNT 1108**
**Violation of the Arizona Consumer Fraud Act**
**(Ariz. Rev. Stat. Ann. §44-1521, *et seq.*)**
**(Against Store-Brand Retailer Defendant Walgreens)**

15372. Arizona Class Representative Plaintiff Tangie Sims incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15373. This cause of action is brought on behalf of the Arizona-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15374. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(6).

15375. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(5).

15376. The Arizona Consumer Fraud Act ("Arizona CFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, …

misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." Ariz. Rev. Stat. Ann. §44-1522(A).

15377. In the course of its business, as a Private Label Distributor, Defendant, through its agents, employees, and/or subsidiaries, violated the Arizona CFA by recklessly, wantonly, knowingly, and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15378. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Arizona CFA.

15379. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15380. Defendant's misreprsentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a unform manner.

15381. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15382. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15383. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

15384. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Arizona CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15385. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15386. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15387. As a result of Defendant's violations of the Arizona CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

**COUNT 1109**
**Breach of Implied Warranty**
**(Ariz. Rev. Stat. Ann. §47-2314)**
**(Against Store-Brand Retailer Defendant Walgreens)**

15388. Arizona Class Representative Plaintiff Tangie Sims incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15389. This cause of action is brought on behalf of the Arizona-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15390. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arizona Class Representatives and members of the Arizona Class and was in the business of selling such products.

15391. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ariz. Rev. Stat. Ann. §47-2314.

15392. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15393. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15394. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

15395. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15396. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 1110
## Unjust Enrichment
## (Arizona Law)
## (Against Store-Brand Retailer Defendant Walgreens)

15397. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15398. This cause of action is brought on behalf of the Arizona-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15399. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15400. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15401. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15402. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15403. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15404. Plaintiffs and the Class members do not have an adequate remedy at law.

### 2. Causes of Action on Behalf of the Arkansas-Walgreens Classes

### COUNT 1111
### Violation of the Arkansas Deceptive Trade Practices Act
### (Ark. Code Ann. §4-88-101, *et seq.*)
### (Against Store-Brand Retailer Defendant Walgreens)

15405. Arkansas Class Representative Plaintiff Tina Culclager incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15406. This cause of action is brought on behalf of the Arkansas-Walgreens Class (for the purpose of this section, "Class") against Defendant Walgreens (for purposes of this Count only, "Defendant").

15407. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ark. Code Ann. §4-88-102(5).

15408. The Ranitidine-Containing Products are "[g]oods" within the meaning of Ark. Code Ann. §4-88-102(4).

15409. The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices."  Ark. Code Ann. §4-88-107(a).

15410. The Arkansas DTPA makes unlawful specific acts, including:

15411. "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" (Ark. Code Ann. §4-88-107(a)(1));

15412. "[a]dvertising the goods or services with the intent not to sell them as advertised" (Ark. Code Ann. §4-88-107(a)(3)); and

15413. "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" (Ark. Code Ann. §4-88-107(a)(10)).

15414. The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission . . . ." Ark. Code Ann. §4-88-108(a).

15415. As a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15416. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Arkansas DTPA, including:

      (a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

      (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

      (c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

      (d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

15417. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15418. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15419. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15420. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15421. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

15422. Plaintiffs and the Class members were aggrieved by Defendant's violations of Arkansas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15423. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15424. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15425. As a result of Defendant's violations of the Arkansas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

## COUNT 1112
## Breach of Implied Warranty
## (Ark. Code. Ann. §4-2-314)
## (Against Store-Brand Retailer Defendant Walgreens)

15426. Arkansas Class Representative Plaintiff Tina Culclager incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15427. This cause of action is brought on behalf of the Arkansas-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15428. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arkansas Class Representatives and members of the Arkansas Class and was in the business of selling such products.

15429. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ark. Code. Ann. §4-2-314.

15430. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15431. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15432. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

15433. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15434. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 1113**
**Unjust Enrichment**
**(Arkansas Law)**
**(Against Store-Brand Retailer Defendant Walgreens)**

15435. Arkansas Class Representative Plaintiff Tina Culclager incorporate the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15436. This cause of action is brought on behalf of the Arkansas-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

- 3121 -

15437. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15438. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15439. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15440. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15441. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15442. There is no valid, legal, and binding contract governing this dispute.

15443. Plaintiffs and the Class members do not have an adequate remedy at law.

3.   **Causes of Action on Behalf of the California-Walgreens Classes**

**COUNT 1114**
**Violation of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code §17200, *et seq.*)**
**(Against Store-Brand Retailer Defendant Walgreens**

15444. California Class Representative Plaintiff Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15445. This cause of action is brought on behalf of the California-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15446. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

15447. Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

15448. As a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15449. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL.  These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

15450. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15451. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15452. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15453. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15454. Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

15455. Defendant conduct also consitutes "unfair" business acts or practies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

15456. Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, see Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's

policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

15457. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15458. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15459. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15460. Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

## COUNT 1115
### Violation of the California False Advertising Law
(Cal. Bus. & Prof. Code §17500, *et seq.*)
(Against Store-Brand Retailer Defendant Walgreens)

15461. California Class Representative Plaintiff Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15462. This cause of action is brought on behalf of the California-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15463. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

15464. The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code §17500.

15465. As a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15466. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

15467. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15468. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15469. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15470. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15471. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15472. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15473. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

15474. As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

<div align="center">

**COUNT 1116**
**Violation of the California Consumers Legal Remedies Act**
**(Cal. Civ. Code §1750, *et seq.*)**
**(Against Store-Brand Retailer Defendant Walgreens)**

</div>

15475. California Class Representative Plaintiff Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15476. This cause of action is brought on behalf of the California-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15477. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

15478. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

15479. The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

15480. The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §1770(a).

15481. The California CLRA makes unlawful specific acts, including:

(a) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

(b) "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

(c) "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

(d) "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

15482. As a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally

misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15483. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

15484. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15485. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15486. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15487. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15488. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

15489. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15490. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15491. Defendant was provided notice of the issues raised in this count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual

notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

15492. Pursuant to Cal. Civ. Code §1780(a), Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

**COUNT 1117**
**Breach of Implied Warranty**
**(Cal. Com. Code §2314)**
**(Against Store-Brand Retailer Defendant Walgreens)**

15493. California Class Representative Plaintiff Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15494. This cause of action is brought on behalf of the California-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15495. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to California Class Representatives and members of the California Class and was in the business of selling such products.

15496. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Cal. Com. Code §2314.

15497. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15498. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15499. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

15500. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15501. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 1118**
**Unjust Enrichment or Quasi-Contract**
**(California Law)**
**(Against Store-Brand Retailer Defendant Walgreens)**

</div>

15502. California Class Representative Plaintiff Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15503. This cause of action is brought on behalf of the California-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15504. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15505. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15506. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15507. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15508. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15509. Plaintiffs and the Class members do not have an adequate remedy at law.

### 4.  Causes of Action on Behalf of the Colorado-Walgreens Classes

### COUNT 1119
### Violation of the Colorado Consumer Protection Act
### (Colo. Rev. Stat. Ann. §6-1-101, *et seq.*)
### (Against Store-Brand Retailer Defendant Walgreens)

15510. Colorado Class Representatives Plaintiff Jeffrey Pisano and Plaintiff Ronald Ragan incorporate the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15511. This cause of action is brought on behalf of the Colorado-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15512. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Colo. Rev. Stat. Ann. §6-1-102(6).

15513. The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices "in the course of the person's business, vocation, or occupation."  Colo. Rev. Stat. Ann. §6-1-105(1).

15514. The Colorado CPA makes unlawful specific acts, including:

(a)     "[e]ither knowingly or recklessly mak[ing] a false representation as to the source, sponsorship, approval, or certification of goods, services, or property" (Colo. Rev. Stat. Ann. §6-1-105(1)(b));

(b)     "[r]epresent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another" (Colo. Rev. Stat. Ann. §6-1-105(1)(g));

(c)     "[a]dvertis[ing] goods, services, or property with intent not to sell them as advertised" (Colo. Rev. Stat. Ann. §6-1-105(1)(i));

(d)     "[f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction" (Colo. Rev. Stat. Ann. §6-1-105(1)(u)); and

(e)     "[e]ither knowingly or recklessly engage[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice" (Colo. Rev. Stat. Ann. §6-1-105(1)(kkk)).

15515. As a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than

could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Such conduct was bad faith conduct under the Colorado CPA.

15516. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Colorado CPA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; and

(e) failing to disclose the defective Ranitidine-Containing Products in connection with their sale to the public.

15517. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15518. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15519. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15520. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15521. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

15522. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Colorado CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15523. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15524. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15525. As a result of Defendant's violations of the Colorado CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

<div align="center">

**COUNT 1120**
**Unjust Enrichment**
**(Colorado Law)**
**(Against Store-Brand Retailer Defendant Walgreens)**

</div>

15526. This cause of action is brought on behalf of the Colorado-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15527. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15528. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

15529. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15530. It is unjust and inequitable for the Defendant to retain these benefits without commensurate compensation because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15531. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15532. Plaintiffs and the Class members do not have an adequate remedy at law.

5. **Causes of Action on Behalf of the Connecticut-Walgreens Classes**

**COUNT 1121**
**Violation of the Connecticut Unfair Trade Practices Act**
**(Conn. Gen. Stat. Ann. §42-110a, *et seq.*)**
**(Against Store-Brand Retailer Defendant Walgreens)**

15533. Connecticut Class Representative Plaintiff Angel Vega incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15534. This cause of action is brought on behalf of the Connecticut-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15535. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Conn. Gen. Stat. Ann. §42-110a(3).

15536. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. §42-110a(4).

15537. The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. Ann. §42-110b(a).

15538. As a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15539. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Connecticut UTPA.

15540. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15541. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15542. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15543. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15544. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Connecticut UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15545. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15546. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15547. As a result of Defendant's violations of the Connecticut UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

**COUNT 1122**
**Breach of Implied Warranty**
**(Conn. Gen. Stat. Ann. §42a-2-314)**
**(Against Store-Brand Retailer Defendant Walgreens)**

15548. Connecticut Class Representative Plaintiff Angel Vega incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15549. This cause of action is brought on behalf of the Connecticut-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15550. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Connecticut Class Representatives and members of the Connecticut Class and was in the business of selling such products.

15551. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Conn. Gen. Stat. Ann. §42a-2-314.

15552. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15553. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15554. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

15555. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15556. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 1123
## Unjust Enrichment
## (Connecticut Law)
## (Against Store-Brand Retailer Defendant Walgreens)

15557. Connecticut Class Representative Plaintiff Angel Vega incorporate the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15558. This cause of action is brought on behalf of the Connecticut-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15559. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15560. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15561. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15562. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15563. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15564. Plaintiffs and the Class members do not have an adequate remedy at law.

### 6.     Causes of Action on Behalf of the Florida-Walgreens Classes

### COUNT 1124
### Violation of the Florida Deceptive and Unfair Trade Practices Act
### (Fla. Stat. Ann. §501.201, *et seq.*)
### (Against Store-Brand Retailer Defendant Walgreens)

15565. Florida Class Representative Plaintiff Ronald Ragis incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15566. This cause of action is brought on behalf of the Florida-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15567. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. Ann. §501.204(1).

15568. In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts

relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017." Fla. Stat. Ann. §501.204(2).

15569. Plaintiff and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA. *See* Fla. Stat. Ann. §501.203(6)-(7).

15570. Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA. *See* Fla. Stat. Ann. §501.203(8).

15571. As a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15572. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

15573. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15574. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

15575. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15576. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15577. Plaintiff and the Class members were aggrieved by Defendant's violations of FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15578. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15579. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15580. As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

**COUNT 1125**
**Breach of Implied Warranty**
**(Fla. Stat. Ann. §672.314)**
**(Against Store-Brand Retailer Defendant Walgreens)**

15581. Florida Class Representative Plaintiff Ronald Ragis incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15582. This cause of action is brought on behalf of the Florida-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15583. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Florida Class Representatives and members of the Florida Class and was in the business of selling such products.

15584. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Fla. Stat. Ann. §672.314.

15585. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15586. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15587. Plaintiff and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

15588. Further, Plaintiff and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

15589. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15590. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 1126**
**Unjust Enrichment**
**(Florida Law)**
**(Against Store-Brand Retailer Defendant Walgreens)**

15591. Florida Class Representative Plaintiff Ronald Ragis incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15592. This cause of action is brought on behalf of the Florida-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15593. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15594. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members suffered an impoverishment because they purchased worthless medications and did not receive the expected benefit therefrom.

15595. Defendant voluntarily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15596. It is unjust and inequitable for the Defendant to retain these benefits without paying the value thereof because the benefits were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15597. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15598. There is no express written contract governing this dispute.

15599. Plaintiff and the Class members do not have an adequate remedy at law

### 7.   Causes of Action on Behalf of the Illinois-Walgreens Classes

### COUNT 1127
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (815 Ill. Comp. Stat. Ann. 505/1, *et seq.*)
### (Against Store-Brand Retailer Defendant Walgreens)

15600. Illinois Class Representative Plaintiff Renee Chatman incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15601. This cause of action is brought on behalf of the Illinois-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15602. Defendant, Plaintiff, and the Class members are "person[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(c).

15603. Plaintiff and the Class members are "consumer[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(e).

15604. The Ranitidine-Containing Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(b).

15605. Defendant was and is engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(f).

15606. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 Ill. Comp. Stat. Ann. 510/2], approved August 5, 1965, in the conduct of any trade or commerce."  815 Ill. Comp. Stat. Ann. 505/2.

15607. In the course of its business, as a Private Label Distributor, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15608. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFDBPA.

15609. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

15610. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

15611. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15612. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15613. Plaintiff and the Class members were aggrieved by Defendant's violations of the Illinois CFDBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15614. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15615. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15616. As a result of Defendant's violations of the Illinois CFDBPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFDBPA.

## COUNT 1128
### Breach of Implied Warranty
### (810 Ill. Comp. Stat. Ann. 5/2-314)
### (Against Store-Brand Retailer Defendant Walgreens)

15617. Illinois Class Representative Plaintiff Renee Chatman incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15618. This cause of action is brought on behalf of the Illinois-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15619. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Illinois Class Representatives and members of the Illinois Class and was in the business of selling such products.

15620. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. 810 Ill. Comp. Stat. Ann. 5/2-314.

15621. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15622. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15623. Plaintiff and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

15624. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15625. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 1129**
**Unjust Enrichment**
**(Illinois Law)**
**(Against Store-Brand Retailer Defendant Walgreens)**

</div>

15626. Illinois Class Representative Renee Chatman incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15627. This cause of action is brought on behalf of the Illinois-Walgreens Class (for the purpose of this section, "Class") against Store Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15628. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15629. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15630. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15631. violates the principles of justice, equity, and good conscience for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15632. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15633. Plaintiff and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

### 8.      Causes of Action on Behalf of the Iowa-Walgreens Classes

### COUNT 1130
### Violation of the Iowa Private Right of Action for Consumer Frauds Act
### (Iowa Code Ann. §714H.1, *et seq.*)
### (Against Store-Brand Retailer Defendant Walgreens)

15634. Iowa Class Representative Plaintiff Brian Nervig incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15635. This cause of action is brought on behalf of the Iowa-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15636. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Iowa Code Ann. §714H.2(7).

15637. Plaintiff and the Class members are "[c]onsumer[s]" within the meaning of Iowa Code Ann. §714H.2(3).

15638. The Iowa Private Right of Action for Consumer Frauds Act ("Iowa PRACFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise."  Iowa Code Ann. §714H.3(1).

15639. In the course of its business, as a Private Label Distributor, Defendant, through its agents, employees, and/or subsidiaries, violated the Iowa PRACFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Defendant did so with willful and wanton disregard for the rights and safety of others.

15640. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive business practices prohibited by the Iowa PRACFA.

15641. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

15642. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

15643. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15644. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15645. Plaintiff and the Class members were aggrieved by Defendant's violations of the Iowa PRACFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15646. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out- of-pocket loss.

15647. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

15648. As a result of Defendants' violations of the Iowa PRACFA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Iowa PRACFA.

15649. Additionally, because Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, were undertaken in willful and wanton disregard for the rights and safety of others, pursuant to Iowa Code §714H.5(4), Plaintiff and the Class members seek an additonal award of treble damages.

**COUNT 1131**
**Breach of Implied Warranty**
**(Iowa Code §554.2314)**
**(Against Store Brand Retailer Defendant Walgreens)**

15650. Iowa Class Representative Plaintiff Brian Nervig incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15651. This cause of action is brought on behalf of the Iowa-Walgreens Class (for the purpose of this section, "Class") against Store Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15652. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Iowa Class Representative and members of the Iowa Class and was in the business of selling such products.

15653. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. IA. Code §554.2314.

15654. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15655. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15656. Plaintiff and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

15657. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15658. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div style="text-align:center">

**COUNT 1132**
**Unjust Enrichment**
**(Iowa Law)**
**(Against Store Brand Retailer Defendant Walgreens)**

</div>

15659. Iowa Class Representative Plaintiff Brian Nervig incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15660. This cause of action is brought on behalf of the Iowa-Walgreens Class (for the purpose of this section, "Class") against Store Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15661. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15662. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15663. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15664. It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15665. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15666. Plaintiff and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

### 9. Causes of Action on Behalf of the Minnesota-Walgreens Classes

### COUNT 1133
### Violation of the Minnesota Prevention of Consumer Fraud Act
### (Minn. Stat. Ann. §325F.68, *et seq.*)
### (Against Store-Brand Retailer Defendant Walgreens)

15667. Minnesota Class Representative Plaintiff Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15668. This cause of action is brought on behalf of the Minnesota-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15669. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

15670. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

15671. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged."  Minn. Stat. Ann. §325F.69(1).  Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

15672. In the course of its business, as a Private Label Distributor, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing

expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15673. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

15674. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

15675. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

15676. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15677. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15678. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

15679. Plaintiff and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15680. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15681. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

15682. As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

## COUNT 1134
### Breach of Implied Warranty
### (Minn. Stat. Ann. §336.2-314)
### (Against Store-Brand Retailer Defendant Walgreens)

15683. Minnesota Class Representative Plaintiff Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15684. This cause of action is brought on behalf of the Minnesota Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15685. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

15686. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Minn. Stat. Ann. §336.2-314.

15687. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15688. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15689. Plaintiff and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

15690. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15691. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 1135**
**Unjust Enrichment**
**(Minnesota Law)**
**(Against Store-Brand Retailer Defendant Walgreens)**

15692. Minnesota Class Representative Plaintiff Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15693. This cause of action is brought on behalf of the Minnesota-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15694. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15695. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15696. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15697. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15698. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15699. Plaintiff and the Class members do not have an adequate remedy at law.

10.     **Causes of Action on Behalf of the New Mexico-Walgreens Classes**

**COUNT 1136**
**Violation of the New Mexico Unfair Trade Practices Act**
**(N.M. Stat. Ann. §57-12-1, *et seq.*)**
**(Against Store-Brand Retailer Defendant Walgreens)**

15700. New Mexico Class Representative Plaintiff Ernesto Sanchez incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15701. This cause of action is brought on behalf of the New Mexico-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15702. Defendant, Plaintiff, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

15703. Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

15704. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person."  N.M. Stat. Ann. §57-12-2(D).  The New Mexico UTPA also makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid."  N.M. Stat. Ann. §57-12-2(E).

15705. The New Mexico UTPA makes unlawful specific acts, including:

(a) "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

(b) "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

(c) "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

15706. In the course of its business, as a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15707. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Mexico UTPA, including:

(a) representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and

15708.         acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

15709. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

15710. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15711. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15712. Plaintiff and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15713. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

- 3174 -

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15714. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15715. As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

<div align="center">

**COUNT 1137**
**Breach of Implied Warranty**
**(N.M. Stat. Ann. §55-2-314)**
**(Against Store-Brand Retailer Defendant Walgreens)**

</div>

15716. New Mexico Class Representative Plaintiff Ernesto Sanchez incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15717. This cause of action is brought on behalf of the New Mexico-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15718. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

15719. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.M. Stat. Ann. §55-2-314.

15720. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15721. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15722. Plaintiff and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

15723. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15724. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 1138**
**Unjust Enrichment**
**(New Mexico Law)**
**(Against Store-Brand Retailer Defendant Walgreens)**

15725. New Mexico Class Representative Plaintiff Ernesto Sanchez incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15726. This cause of action is brought on behalf of the New Mexico-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15727. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15728. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15729. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15730. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15731. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15732. There is no express contract governing this dispute.

15733. Plaintiffs and the Class members do not have an adequate remedy at law.

**11.    Causes of Action on Behalf of the Puerto Rico-Walgreens Classes**

**COUNT 1139**
**Breach of Implied Warranty**
**(P.R. Laws. Ann. Tit. 31, §3841)**
**(Against Store Brand Retailer Defendant Walgreens)**

15734. Puerto Rico Class Representative Plaintiff Gloria Colon incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15735. This cause of action is brought on behalf of the Puerto Rico-Walgreens Class (for the purpose of this section, "Class") against Store Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15736. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to the Puerto Rico Class Representative and members of the Puerto Rico Class and was in the business of selling such products.

15737. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. P.R. Laws. Ann. Tit. 31, §3841.

15738. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15739. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15740. Plaintiff and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

15741. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffsand members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15742. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 1140
### Unjust Enrichment
### (Puerto Rico Law)
### (Against Store Brand Retailer Defendant Walgreens)

15743. Puerto Rico Class Representative Plaintiff Gloria Colon incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15744. This cause of action is brought on behalf of the Puerto Rico-Walgreens Class (for the purpose of this section, "Class") against Store Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15745. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15746. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15747. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

15748. Defendants' enrichment – the monies obtained from Plaintiff's and the Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiff's and the Class members' impoverishment – i.e., Plaintiff's and the Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

15749. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15750. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15751. Plaintiff and the Class members do not have an adequate remedy at law.

## 12. Causes of Action on Behalf of the Texas-Walgreens Classes

### COUNT 1141
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
(Tex. Bus. & Com. Code Ann. §17.41, *et seq.*)
(Against Store-Brand Retailer Defendant Walgreens)

15752. Texas Class Representative Plaintiff Marianella Villanueva incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15753. This cause of action is brought on behalf of the Texas-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15754. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

15755. Plaintiff and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

15756. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

15757. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

15758. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

15759. The Texas DTPA makes unlawful specific acts, including:

(a)     "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

(b)     "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

(c)     "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

15760. In the course of its business, as a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when

the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15761. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

(a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

15762. advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

15763. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

15764. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15765. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15766. Plaintiff and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

15767. Plaintiff and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15768. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15769. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15770. Defendant was provided notice of the issues raised in this count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiff

in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seeks all damages and relief to which Plaintiff and the Class members are entitled.

15771. As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

<div style="text-align:center">

**COUNT 1142**
**Breach of Implied Warranty**
**(Tex. Bus. & Com. Code Ann. §2-314)**
**(Against Store-Brand Retailer Defendant Walgreens)**

</div>

15772. Texas Class Representative Plaintiff Marianella Villlanueva incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15773. This cause of action is brought on behalf of the Texas-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15774. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

15775. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Tex. Bus. & Com. Code Ann. §2-314.

15776. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15777. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15778. Plaintiff and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

15779. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15780. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 1143**
**Unjust Enrichment**
**(Texas Law)**
**(Against Store-Brand Retailer Defendant Walgreens)**

15781. Texas Class Representative Plaintiff Marianella Villanueva incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15782. This cause of action is brought on behalf of the Texas Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15783. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15784. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15785. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15786. It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15787. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15788. Plaintiff and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 13.    Causes of Action on Behalf of the Washington-Walgreens Classes

**COUNT 1144**
**Violation of the Washington Consumer Protection Act**
**(Wash. Rev. Code Ann. §19.86.010, *et seq.*)**
**(Against Store-Brand Retailer Defendant Walgreens)**

15789. Washington Class Representative Plaintiff Johnathan Ferguson incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15790. This cause of action is brought on behalf of the Washington-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15791. Defendant, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Wash. Rev. Code Ann. §19.86.010(1).

15792. The Ranitidine-Containing Products are "[a]ssets" within the meaning of Wash. Rev. Code Ann. §19.86.010(3).

15793. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Wash. Rev. Code Ann. §19.86.010(2).

15794. The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. §19.86.020.

15795. In the course of its business, as a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15796. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington CPA.

15797. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

15798. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

15799. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15800. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15801. Plaintiff and the Class members were aggrieved by Defendant's violations of the Washington CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15802. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15803. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15804. On June 22, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Wash. Rev. Code §19.86.095 to the Attorney General of the State of Washington.

15805. As a result of Defendant's violations of the Washington CPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Washington CPA.

## COUNT 1145
### Breach of Implied Warranty
### (Wash. Rev. Code §62A 2-314)
### (Against Store-Brand Retailer Defendant Walgreens)

15806. Washington Class Representative Plaintiff Jonathan Ferguson incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15807. This cause of action is brought on behalf of the Washington-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15808. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Washington Class Representative and members of the Washington Class and was in the business of selling such products.

15809. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Wash. Rev. Code §62A 2-314.

15810. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15811. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15812. Plaintiff and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

15813. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15814. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 1146
## Unjust Enrichment
## (Washington Law)
## (Against Store-Brand Retailer Defendant Walgreens)

15815. Washington Class Representative Plaintiff Jonathan Ferguson incorporates the preceding allegations in paragraphs 80-85, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1119-1301 as though fully set forth herein.

15816. This cause of action is brought on behalf of the Washington-Walgreens Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walgreens (for purposes of this Count only, "Defendant").

15817. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15818. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15819. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15820. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15821. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15822. There is no express contract governing this dispute.

15823. Plaintiffs and the Class members do not have an adequate remedy at law.

### D.      Causes of Action Against Walmart

15824. For the purposes of the subsequent causes of action against Defendant Walmart, Plaintiffs are incorporating the following allegations by reference: paragraphs 86-90 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic ranitidine); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469 (requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 912-916, 912-936 (Walmart's Store-Brand Ranitidine); 1093-1118 (Walmart's Store-Brand contract manufacturing); 1119-1143 (Perrigo); 1170-1192 (Apotex); 1219-1230 (Dr. Reddy's); 1257-1275 (Strides); 937-946, 1144-1156, 1193-1205, 1231-1243, 1276-1288 (misrepresentations or omissions of material fact in labeling); 947-961, 1157-

1169, 1206-1218, 1244-1256, 1289-1301 (misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

15825. Plaintiffs identified in the table below bring claims against Store-Brand Retailer Defendant Walmart on behalf of themselves and their respective State Classes under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| **Plaintiff Name** | **State(s) of Residence** |
|---|---|
| Tangie Sims | Arizona |
| Tina Culclager | Arkansas |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Michael Tomlinson | Florida |
| Kathy Jeffries | Georgia |
| Carol Harkins | Illinois |
| Vickie Anderson | Illinois |
| Randy Jones | Louisiana |
| Jennifer Bond | Massachusetts |
| Sandra Erickson-Brown | Minnesota |
| Lora Mauffray | Mississippi |
| Shirely Magee | Mississippi |
| James Adamo | New Jersey |
| Ernesto Sanchez | New Mexico |
| Carrie Martinez | New Mexico |
| George Tapia | New Mexico |
| Richard Froelich | New York |
| Rebecca Howard | Tennessee |
| Jeffrey Garrett | Tennessee |
| Marilyn Abraham | Texas |
| Marianella Villanueva | Texas, South Carolina |

| Dan Zhovtis | Virginia |
| Robert Dewitt | Washington |
| Jonathan Ferguson | Washington |

### 1. Causes of Action on Behalf of the Arizona-Walmart Classes

**COUNT 1147**
**Violation of the Arizona Consumer Fraud Act**
**(Ariz. Rev. Stat. Ann. §44-1521, *et seq.*)**
**(Against Store-Brand Retailer Defendant Walmart)**

15826. Arizona Class Representative Plaintiff Tangie Sims incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

15827. This cause of action is brought on behalf of the Arizona-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

15828. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(6).

15829. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(5).

15830. The Arizona Consumer Fraud Act ("Arizona CFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." Ariz. Rev. Stat. Ann. §44-1522(A).

15831. In the course of its business, as a Private Label Distributor, Defendant, through its agents, employees, and/or subsidiaries, violated the Arizona CFA by recklessly, wantonly, knowingly, and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15832. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Arizona CFA.

15833. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15834. Defendant's misreprsentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a unform manner.

15835. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were

likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15836. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15837. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

15838. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Arizona CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15839. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15840. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15841. As a result of Defendant's violations of the Arizona CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

<div align="center">

**COUNT 1148**
**Unjust Enrichment**
**(Arizona Law)**
**(Against Store-Brand Retailer Defendant Walmart)**

</div>

15842. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

15843. This cause of action is brought on behalf of the Arizona-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

15844. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15845. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15846. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15847. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15848. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15849. Plaintiffs and the Class members do not have an adequate remedy at law.

## 2. Causes of Action on Behalf of the Arkansas-Walmart Classes

### COUNT 1149
### Violation of the Arkansas Deceptive Trade Practices Act
### (Ark. Code Ann. §4-88-101, *et seq.*)
### (Against Store-Brand Retailer Defendant Walmart)

15850. Arkansas Class Representative Plaintiff Tina Culclager incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

15851. This cause of action is brought on behalf of the Arkansas-Walmart Class (for the purpose of this section, "Class") against Defendant Walmart (for purposes of this Count only, "Defendant").

15852. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ark. Code Ann. §4-88-102(5).

15853. The Ranitidine-Containing Products are "[g]oods" within the meaning of Ark. Code Ann. §4-88-102(4).

15854. The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices."  Ark. Code Ann. §4-88-107(a).

15855. The Arkansas DTPA makes unlawful specific acts, including:

15856. "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" (Ark. Code Ann. §4-88-107(a)(1));

15857. "[a]dvertising the goods or services with the intent not to sell them as advertised" (Ark. Code Ann. §4-88-107(a)(3)); and

15858. "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" (Ark. Code Ann. §4-88-107(a)(10)).

15859. The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission . . . ." Ark. Code Ann. §4-88-108(a).

15860. As a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the

expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15861. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Arkansas DTPA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

15862. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15863. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15864. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15865. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15866. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

15867. Plaintiffs and the Class members were aggrieved by Defendant's violations of Arkansas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15868. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15869. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15870. As a result of Defendant's violations of the Arkansas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

<div align="center">

**COUNT 1150**
**Breach of Implied Warranty**
**(Ark. Code. Ann. §4-2-314)**
**(Against Store-Brand Retailer Defendant Walmart)**

</div>

15871. Arkansas Class Representative Plaintiff Tina Culclager incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

15872. This cause of action is brought on behalf of the Arkansas-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

15873. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arkansas Class Representatives and members of the Arkansas Class and was in the business of selling such products.

15874. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ark. Code. Ann. §4-2-314.

15875. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15876. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15877. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

15878. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15879. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 1151**
**Unjust Enrichment**
**(Arkansas Law)**
**(Against Store-Brand Retailer Defendant Walmart)**

15880. Arkansas Class Representative Plaintiff Tina Culclager incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

15881. This cause of action is brought on behalf of the Arkansas-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

15882. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15883. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15884. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15885. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15886. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15887. There is no valid, legal, and binding contract governing this dispute.

15888. Plaintiffs and the Class members do not have an adequate remedy at law.

3. **Causes of Action on Behalf of the Colorado-Walmart Classes**

**COUNT 1152**
**Violation of the Colorado Consumer Protection Act**
**(Colo. Rev. Stat. Ann. §6-1-101, *et seq.*)**
**(Against [Defendants])**

15889. Colorado Class Representatives Plaintiff Jeffrey Pisano and Plaintiff Ronald Ragan incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

15890. This cause of action is brought on behalf of the Colorado-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

15891. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Colo. Rev. Stat. Ann. §6-1-102(6).

15892. The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices "in the course of the person's business, vocation, or occupation." Colo. Rev. Stat. Ann. §6-1-105(1).

15893. The Colorado CPA makes unlawful specific acts, including:

    (a)    "[e]ither knowingly or recklessly mak[ing] a false representation as to the source, sponsorship, approval, or certification of goods, services, or property" (Colo. Rev. Stat. Ann. §6-1-105(1)(b));

    (b)    "[r]epresent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another" (Colo. Rev. Stat. Ann. §6-1-105(1)(g));

    (c)    "[a]dvertis[ing] goods, services, or property with intent not to sell them as advertised" (Colo. Rev. Stat. Ann. §6-1-105(1)(i));

    (d)    "[f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the

consumer to enter into a transaction" (Colo. Rev. Stat. Ann. §6-1-105(1)(u)); and

(e)     "[e]ither knowingly or recklessly engage[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice" (Colo. Rev. Stat. Ann. §6-1-105(1)(kkk)).

15894. As a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Such conduct was bad faith conduct under the Colorado CPA.

15895. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Colorado CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; and

(e)     failing to disclose the defective Ranitidine-Containing Products in connection with their sale to the public.

- 3208 -

15896. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15897. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15898. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15899. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15900. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

15901. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Colorado CPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15902. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15903. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15904. As a result of Defendant's violations of the Colorado CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

### COUNT 1153
### Unjust Enrichment
### (Colorado Law)
### (Against Store-Brand Retailer Defendant Walmart)

15905. This cause of action is brought on behalf of the Colorado-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

15906. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15907. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

15908. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15909. It is unjust and inequitable for the Defendant to retain these benefits without commensurate compensation because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15910. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15911. Plaintiffs and the Class members do not have an adequate remedy at law.

4.     **Causes of Action on Behalf of the Florida-Walmart Classes**

**COUNT 1154**
**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**(Fla. Stat. Ann. §501.201,** *et seq.***)**
**(Against Store-Brand Retailer Defendant Walmart)**

15912. Florida Class Representative Plaintiff Michael Tomlinson incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

15913. This cause of action is brought on behalf of the Florida-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

15914. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. §501.204(1).

15915. In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017." Fla. Stat. Ann. §501.204(2).

15916. Plaintiffs and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA. *See* Fla. Stat. Ann. §501.203(6)-(7).

15917. Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA. *See* Fla. Stat. Ann. §501.203(8).

15918. As a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its

Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15919. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

15920. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15921. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15922. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15923. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15924. Plaintiffs and the Class members were aggrieved by Defendant's violations of FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15925. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15926. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15927. As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

<div align="center">

**COUNT 1155**
**Breach of Implied Warranty**
**(Fla. Stat. Ann. §672.314)**
**(Against Store-Brand Retailer Defendant Walmart)**

</div>

15928. Florida Class Representatives Plaintiff Michael Tomlinson incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

15929. This cause of action is brought on behalf of the Florida-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

15930. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Florida Class Representatives and members of the Florida Class and was in the business of selling such products.

15931. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Fla. Stat. Ann. §672.314.

15932. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15933. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15934. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

15935. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

15936. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15937. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 1156**
**Unjust Enrichment**
**(Florida Law)**
**(Against Store-Brand Retailer Defendant Walmart)**

</div>

15938. Florida Class Representative Plaintiff Michael Tomlinson incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

15939. This cause of action is brought on behalf of the Florida-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

15940. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15941. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered an impoverishment because they purchased worthless medications and did not receive the expected benefit therefrom.

15942. Defendant voluntarily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15943. It is unjust and inequitable for the Defendant to retain these benefits without paying the value thereof because the benefits were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15944. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15945. There is no express written contract governing this dispute.

15946. Plaintiffs and the Class members do not have an adequate remedy at law

5.      **Causes of Action on Behalf of the Georgia-Walmart Classes**

**COUNT 1157**
**Violation of the Georgia Fair Business Practices Act**
**(Ga. Code Ann. §10-1-390, *et seq.*)**
**(Against Store-Brand Retailer Defendant Walmart)**

15947. Georgia Class Representatives Plaintiff Kathy Jeffries incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

15948. This cause of action is brought on behalf of the Georgia-Walmart Class (for the purpose of this section, "Class") against  Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

15949. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(24).

15950. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(6).

15951. Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Ga. Code Ann. §10-1-392(a)(28).

15952. The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."  Ga. Code Ann. §10-1-393(a).

15953. The Georgia FBPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-393(b)(5));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-393(b)(7)); and

(c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-393(b)(9)).

15954. In the course of its business, as a Private Label Distributor, Defendant, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15955. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia FBPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

15956. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15957. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15958. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15959. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15960. Plaintiffs and the Class members reasonably relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

15961. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Georgia FBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15962. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15963. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

15964. Defendant was provided notice of the issues raised in this count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public. In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Ga. Code Ann. §10-1-399(b) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

15965. As a result of Defendant's violations of the Georgia FBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Georgia FBPA.

## COUNT 1158
### Breach of Implied Warranty(Ga. Code. Ann. §11-2-314)
### (Against Store-Brand Retailer Defendant Walmart)

15966. Georgia Class Representative Plaintiff Kathy Jeffries incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

15967. This cause of action is brought on behalf of the Georgia-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

15968. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Georgia Class Representatives and members of the Georgia Class and was in the business of selling such products.

15969. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ga. Code. Ann. §11-2-314.

15970. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

15971. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

15972. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

15973. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

15974. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 1159**
**Unjust Enrichment**
**(Georgia Law)**
**(Against Store-Brand Retailer Defendant Walmart)**

</div>

15975. Georgia Class Representative Plaintiff Kathy Jeffries incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

15976. This cause of action is brought on behalf of the Georgia-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

15977. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

15978. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

15979. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15980. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

15981. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

15982. There is no express contract governing this dispute.

15983. Plaintiffs and the Class members do not have an adequate remedy at law.

6.      **Causes of Action on Behalf of the Illinois-Walmart Classes**

### COUNT 1160
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**(815 Ill. Comp. Stat. Ann. 505/1, *et seq.*)**
**(Against Store-Brand Retailer Defendant Walmart)**

15984. Illinois Class Representatives Plaintiff Carol Harkins and Plaintiff Vickie Anderson incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

15985. This cause of action is brought on behalf of the Illinois-Walmart Class (for the purpose of this section, "Class") against  Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

15986. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(c).

15987. Plaintiffs and the Class members are "consumer[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(e).

15988. The Ranitidine-Containing Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(b).

15989. Defendant was and is engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(f).

15990. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade

Practices Act' [815 Ill. Comp. Stat. Ann. 510/2], approved August 5, 1965, in the conduct of any trade or commerce." 815 Ill. Comp. Stat. Ann. 505/2.

15991. In the course of its business, as a Private Label Distributor, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

15992. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFDBPA.

15993. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15994. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

15995. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were

likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

15996. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

15997. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Illinois CFDBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

15998. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

15999. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16000. As a result of Defendant's violations of the Illinois CFDBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFDBPA.

**COUNT 1161**
**Breach of Implied Warranty**
**(810 Ill. Comp. Stat. Ann. 5/2-314)**
**(Against Store-Brand Retailer Defendant Walmart)**

16001. Illinois Class Representatives Plaintiff Carol Harkins and Plaintiff Vickie Anderson incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16002. This cause of action is brought on behalf of the Illinois-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16003. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Illinois Class Representatives and members of the Illinois Class and was in the business of selling such products.

16004. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. 810 Ill. Comp. Stat. Ann. 5/2-314.

16005. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16006. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16007. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16008. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16009. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 1162**
**Unjust Enrichment**
**(Illinois Law)**
**(Against Store-Brand Retailer Defendant Walmart)**

16010. Illinois Class Representative Plaintiff Carol Harkins and Plaintiff Vickie Anderson incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16011. This cause of action is brought on behalf of the Illinois-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16012. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16013. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16014. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16015. violates the principles of justice, equity, and good conscience for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16016. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16017. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

### 7.     Causes of Action on Behalf of the Louisiana-Walmart Classes

### COUNT 1163
### Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law
### (La. Stat. Ann. §51:1401, *et seq.*)
### (Against Store-Brand Retailer Defendant Walmart)

16018. Louisiana Class Representative Plaintiff Randy Jones incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16019. This cause of action is brought on behalf of the Louisiana-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16020. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of La. Stat. Ann. §51:1402(8).

16021. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of La. Stat. Ann. §51:1402(1).

16022. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of La. Stat. Ann. §51:1402(10).

16023. The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  La. Stat. Ann. §51:1405(A).

16024. In the course of its business, as a Private Label Distributor, Defendant, through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its

Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16025. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Louisiana CPL.

16026. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16027. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16028. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16029. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16030. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

16031. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Louisiana CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16032. Specifically, Plaintiffs and the Class were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16033. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16034. As a result of Defendant's violations of the Louisiana CPL, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Louisiana CPL.

**COUNT 1164**
**Breach of Implied Warranty**
**(La. Civ. Code Ann. Art. §2520)**
**(Against Store-Brand Retailer Defendant Walmart)**

16035. Louisiana Class Representative Plaintiff Randy Jones incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16036. This cause of action is brought on behalf of the Louisiana-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16037. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Louisiana Class Representatives and members of the Louisiana Class and was in the business of selling such products.

16038. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. La. Civ. Code Ann. §2520.

16039. Defendant breached its implied warranty because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16040. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16041. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16042. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties against redhibitory defect. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of redhibitory defect because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16043. As a result of Defendant's breaches of implied warranties against redhibitory defect, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 1165**
**Unjust Enrichment**
**(Louisiana Law)**
**(Against Store-Brand Retailer Defendant Walmart)**

16044. Louisiana Class Representative Plaintiff Randy Jones incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16045. This cause of action is brought on behalf of the Louisiana-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16046. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16047. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16048. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

16049. Defendants' enrichment – the monies obtained from Plaintiffs for the Ranitidine Containing-Drugs – was the result of Plaintiffs' impoverishment – the receipt by Plaintiffs of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

16050. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16051. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16052. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 8. Causes of Action on Behalf of the Massachusetts-Walmart Classes

### COUNT 1166
### Violation of the Deceptive Acts or Practices Prohibited by Massachusetts Law
### (Mass. Gen. Laws Ann. ch. 93a, §1, *et seq.*)
### (Against Store-Brand Retailer Defendant Walmart)

16053. Massachussetts Class Representative Jennifer Bond incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16054. This cause of action is brought on behalf of the Massachusetts-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16055. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(a).

16056. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(b).

16057. The Massachusetts consumer protection law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws Ann. ch. 93A, §2(a).

16058. In the course of its business, as a Private Label Distributor, Defendant, through its agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and

intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16059. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Massachusetts Act.

16060. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16061. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16062. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16063. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16064. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Massachusetts Act because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16065. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16066. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16067. Defendant was provided notice of the issues raised in this count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Mass. Gen. Laws Ann. ch. 93A, §9(3) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

16068. As a result of Defendant's violations of the Massachusetts Act, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Massachusetts Act.

## COUNT 1167
### Breach of Implied Warranty
### (Mass. Gen. Law Ch. 106 §2-314)
### (Against Store-Brand Retailer Defendant Walmart)

16069. Massachusetts Class Representative Plaintiff Jennifer Bond incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16070. This cause of action is brought on behalf of the Massachusetts-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16071. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Massachusetts Class Representatives and members of the Massachusetts Class and was in the business of selling such products.

16072. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Mass. Gen. Law Ch. 106 §2-314.

16073. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used

completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16074. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16075. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16076. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16077. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 1168**
**Unjust Enrichment**
**(Massachusetts Law)**
**(Against Store-Brand Retailer Defendant Walmart**

16078. Massachusetts Class Representative Plaintiff Jennifer Bond incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16079. This cause of action is brought on behalf of the Massachusetts-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16080. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16081. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16082. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

16083. Defendant's enrichment – the monies obtained from Plaintiffs' and the Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and the Class members' impoverishment – i.e., Plaintiffs' and the Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

16084. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-

Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16085. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16086. Plaintiffs and the Class members do not have an adequate remedy at law.

### 9.      Causes of Action on Behalf of the Minnesota-Walmart Classes

### COUNT 1169
### Violation of the Minnesota Prevention of Consumer Fraud Act
### (Minn. Stat. Ann. §325F.68, *et seq.*)
### (Against Store-Brand Retailer Defendant Walmart)

16087. Minnesota Class Representative Plaintiff Sandra Erickson Brown incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16088. This cause of action is brought on behalf of the Minnesota-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16089. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

16090. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

16091. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been

misled, deceived, or damaged." Minn. Stat. Ann. §325F.69(1). Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

16092. In the course of its business, as a Private Label Distributor, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16093. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

16094. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16095. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16096. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16097. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16098. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

16099. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16100. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16101. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

16102. As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

**COUNT 1170**
**Breach of Implied Warranty**
**(Minn. Stat. Ann. §336.2-314)**
**(Against Store-Brand Retailer Defendant Walmart)**

16103. Minnesota Class Representative Plaintiff Sandra Erickson Brown incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16104. This cause of action is brought on behalf of the Minnesota-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16105. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

16106. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Minn. Stat. Ann. §336.2-314.

16107. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16108. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16109. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16110. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16111. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 1171**
**Unjust Enrichment**
**(Minnesota Law)**
**(Against Store-Brand Retailer Defendant Walmart)**

16112. Minnesota Class Representative Plaintiff Sandra Erickson Brown incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16113. This cause of action is brought on behalf of the Minnesota-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16114. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16115. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16116. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16117. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16118. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16119. Plaintiffs and the Class members do not have an adequate remedy at law.

### 10. Causes of Action on Behalf of the Mississippi-Walmart Classes

### COUNT 1172
### Breach of Implied Warranty
### (Miss. Code Ann. §75-2-314)
### (Against Store-Brand Retailer Defendant Walmart)

16120. Mississippi Class Representatives Plaintiff Lora Mauffray and Plaintiff Shirley Magee incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16121. This cause of action is brought on behalf of the Mississippi-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16122. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Mississippi Class Representatives and members of the Mississippi Class and was in the business of selling such products.

16123. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Miss. Code Ann. §75-2-314.

16124. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16125. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16126. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16127. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16128. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 1173
## Unjust Enrichment
## (Mississippi Law)
## (Against Store-Brand Retailer Defendant Walmart)

16129. Mississippi Class Representatives Plaintiff Lora Mauffray and Plaintiff Shirley Magee incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16130. This cause of action is brought on behalf of the Mississippi-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16131. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16132. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

16133. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16134. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16135. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16136. There is no express contract governing this dispute.

16137. Plaintiffs and the Class members do not have an adequate remedy at law.

### 11.    Causes of Action on Behalf of the New Jersey-Walmart Classes

### COUNT 1174
### Violation of the New Jersey Consumer Fraud Act
### (N.J. Stat. Ann. §56:8-1, *et seq.*)
### (Against Store-Brand Retailer Defendant Walmart)

16138. New Jersey Class Representative Plaintiff James Adamo incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16139. This cause of action is brought on behalf of the New Jersey-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16140. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.J. Stat. Ann. §56:8-1(d).

16141. The Ranitidine-Containing Products are "merchandise" within the meaning of N.J. Stat. Ann. §56:8-1(c).

16142. In the course of its business, as a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Jersey Consumer Fraud Act ("New Jersey CFA") by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  N.J. Stat. Ann. §56:8-1, *et seq.*

16143. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Jersey CFA.

16144. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16145. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16146. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were

likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16147. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16148. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Jersey CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16149. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16150. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16151. As a result of Defendant's violations of the New Jersey CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Jersey CFA.

**COUNT 1175**
**Breach of Implied Warranty**
**(N.J. Stat. Ann. §12A:2-314)**
**(Against Store-Brand Retailer Defendant Walmart)**

16152. New Jersey Class Representative Plaintiff James Adamo incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16153. This cause of action is brought on behalf of the New Jersey-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16154. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Jersey Class Representatives and members of the New Jersey Class and was in the business of selling such products.

16155. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.J. Stat. Ann. §12A:2-314.

16156. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16157. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16158. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16159. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

16160. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16161. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**COUNT 1176**
**Unjust Enrichment**
**(New Jersey Law)**
**(Against Store-Brand Retailer Defendant Walmart)**

16162. New Jersey Class Representative Plaintiff James Adamo incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16163. This cause of action is brought on behalf of the New Jersey-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16164. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16165. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16166. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16167. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16168. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16169. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 12.    Causes of Action on Behalf of the New Mexico-Walmart Classes

### COUNT 1177
### Violation of the New Mexico Unfair Trade Practices Act
### (N.M. Stat. Ann. §57-12-1, *et seq.*)
### (Against Store-Brand Retailer Defendant Walmart)

16170. New Mexico Class Representatives Plaintiff Ernesto Sanchez and Plaintiff Carrie Martinez incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16171. This cause of action is brought on behalf of the New Mexico-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16172. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

16173. Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

16174. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person."  N.M. Stat. Ann. §57-12-2(D).  The New Mexico UTPA also

makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid."  N.M. Stat. Ann. §57-12-2(E).

16175. The New Mexico UTPA makes unlawful specific acts, including:

(a)  "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

(b)  "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

(c)  "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

16176. In the course of its business, as a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16177. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Mexico UTPA, including:

     (a)    representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

     (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

     (c)    using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and

     (d)    acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.

16178. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16179. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16180. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16181. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16182. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16183. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16184. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16185. As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

<div align="center">

**COUNT 1178**
**Breach of Implied Warranty**
**(N.M. Stat. Ann. §55-2-314)**
**(Against Store-Brand Retailer Defendant Walmart)**

</div>

16186. New Mexico Class Representatives Plaintiff Ernesto Sanchez and Plaintiff Carrie Martinez incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16187. This cause of action is brought on behalf of the New Mexico-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16188. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

16189. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.M. Stat. Ann. §55-2-314.

16190. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16191. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16192. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16193. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16194. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 1179**
**Unjust Enrichment**
**(New Mexico Law)**
**(Against Store-Brand Retailer Defendant Walmart)**

</div>

16195. New Mexico Class Representatives Plaintiff Ernesto Sanchez and Plaintiff Carrie Martinez incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16196. This cause of action is brought on behalf of the New Mexico-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16197. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16198. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16199. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16200. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16201. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16202. There is no express contract governing this dispute.

16203. Plaintiffs and the Class members do not have an adequate remedy at law.

### 13.   Causes of Action on Behalf of the New York-Walmart Classes

### COUNT 1180
### Violation of New York Deceptive Acts and Practices Act
### (N.Y. Gen. Bus. Law §349)
### (Against Store-Brand Retailer Defendant Walmart)

16204. New York Class Representatives Richard Froehlich incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16205. This cause of action is brought on behalf of the New York-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16206. Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

16207. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §349(a).

16208. In the course of its business, as a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16209. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

16210. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16211. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16212. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16213. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16214. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16215. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16216. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16217. As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

<div align="center">

**COUNT 1181**
**Violation of the New York False Advertising Act**
**(N.Y. Gen. Bus. Law §350)**
**(Against Store-Brand Retailer Defendant Walmart)**

</div>

16218. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16219. This cause of action is brought on behalf of the New York-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16220. Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

16221. The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §350.  False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to

reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

16222. Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

16223. In the course of its business, as a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16224. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

16225. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16226. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16227. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16228. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16229. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16230. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16231. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16232. Defendant was provided notice of the issues raised in this count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

16233. As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the New York Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

**COUNT 1182**
**Breach of Implied Warranty**
**(N.Y. U.C.C. Law §2-314)**
**(Against Store-Brand Retailer Defendant Walmart)**

16234. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16235. This cause of action is brought on behalf of the New York-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16236. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representatives and members of the New York Class and was in the business of selling such products.

16237. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.  N.Y. U.C.C. Law §2-314.

16238. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16239. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16240. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16241. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability

because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16242. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 1183**
**Unjust Enrichment**
**(New York Law)**
**(Against Store-Brand Retailer Defendant Walmart)**

</div>

16243. New York Class Representative Plaintiff Richard Froehlich incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16244. This cause of action is brought on behalf of the New York-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16245. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16246. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16247. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16248. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16249. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16250. Plaintiffs and the Class members do not have adequate remedy at law, nor is there an express contract governing dispute.

### 14. Causes of Action on Behalf of the South Carolina-Walmart Classes

### COUNT 1184
### Violation of the South Carolina Unfair Trade Practices Act
### (S.C. Code Ann. §39-5-10, *et seq.*)
### (Against Store-Brand Retailer Defendant Walmart)

16251. South Carolina Class Representative Plaintiff Marianella Villanueva incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16252. This cause of action is brought on behalf of the South Carolina-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16253. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of S.C. Code Ann. §39-5-10(a).

16254. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of S.C. Code Ann. §39-5-10(b).

16255. The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  S.C. Code Ann. §39-5-20(a).

16256. In the course of its business, as a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16257. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the South Carolina UTPA.

16258. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16259. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16260. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16261. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16262. Plaintiffs and the Class members were aggrieved by Defendant's violations of the South Carolina UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16263. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16264. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16265. As a result of Defendant's violations of the South Carolina UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the South Carolina UTPA.

**COUNT 1185**
**Breach of Implied Warranty**
**(S.C. Code Ann. §36-2-314)**
**(Against Store-Brand Retailer Defendant Walmart)**

16266. South Carolina Class Representative Plaintiff Marianella Villanueva incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16267. This cause of action is brought on behalf of the South Carolina-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16268. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to South Carolina Class Representatives and members of the South Carolina Class and was in the business of selling such products.

16269. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. S.C. Code Ann. §36-2-314.

16270. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16271. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16272. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16273. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16274. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## COUNT 1186
## Unjust Enrichment
## (South Carolina Law)
## (Against Store-Brand Retailer Defendant Walmart)

16275. South Carolina Class Representatives Plaintiff Marianella Villanueva incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16276. This cause of action is brought on behalf of the South Carolina-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16277. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16278. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16279. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16280. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16281. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16282. Plaintiffs and the Class members do not have an adequate remedy at law.

### 15.    Causes of Action on Behalf of the Tennessee-Walmart Classes

### COUNT 1187
### Violation of the Tennessee Consumer Protection Act of 1977
### (Tenn. Code Ann. §47-18-101, *et seq.*)
### (Against Store-Brand Retailer Defendant Walmart)

16283. Tennessee Class Representatives Plaintiff Rebecca Howard and Plaintiff Jeffrey Garrett incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16284. This cause of action is brought on behalf of the Tennessee-Walmart Class (for the purpose of this section, "Class") against  Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16285. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tenn. Code Ann. §47-18-103(14).

16286. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tenn. Code Ann. §47-18-103(3).

16287. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tenn. Code Ann. §47-18-103(8).

16288. Defendant was and is engaged in "[t]rade" or "commerce" or "consumer transaction[s]" within the meaning of Tenn. Code Ann. §47-18-103(20).

16289. The Tennessee Consumer Protection Act of 1977 ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. §47-18-104(a).

16290. The Tennessee CPA makes unlawful specific acts, including:

(a)   "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tenn. Code Ann. §47-18-104(b)(5));

(b)   "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (Tenn. Code Ann. §47-18-104(b)(7)); and

(c)   "[a]dvertising goods or services with intent not to sell them as advertised" (Tenn. Code Ann. §47-18-104(b)(9)).

16291. In the course of its business, as a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16292. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Tennessee CPA, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

16293. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16294. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16295. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16296. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16297. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Tennessee CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16298. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16299. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16300. As a result of Defendant's violations of the Tennessee CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Tennessee CPA.

16301. Tennessee Class Representatives Plaintiff Jeffrey Howard and Plaintiff Rebecca Garrett incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16302. This cause of action is brought on behalf of the Tennessee Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16303. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Tennessee Class Representatives and members of the Tennessee Class and was in the business of selling such products.

16304. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Tenn. Code Ann. §47-2-314.

16305. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16306. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16307. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16308. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability

because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products,
they would not have purchased such drugs.

16309. As a result of Defendant's breaches of implied warranties of merchantability, as
alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and
punitive damages, costs, attorneys' fees, and any other just and proper relief available under the
law.

<div align="center">

**COUNT 1188**
**Unjust Enrichment**
**(Tennessee Law)**
**(Against Store-Brand Retailer Defendant Walmart**

</div>

16310. Tennessee Class Representatives Plaintiff Rebecca Howard and Plaintiff Jeffrey
Garrett incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483,
912-961, and 1093-1301 as though fully set forth herein.

16311. This cause of action is brought on behalf of the Tennessee-Walmart Class (for the
purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of
this Count only, "Defendant").

16312. Plaintiffs and the Class members conferred a benefit on Defendant in the form of
payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were
otherwise in privity with Defendant through said transaction.

16313. In exchange for their payment of the purchase price of Defendant's Ranitidine-
Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing
Products, which included expiration dates on the products' labels that exceeded the time period
during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe
levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a
financial benefit on Defendants but did not receive their expected benefit therefrom.

16314. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16315. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16316. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16317. There is no existing, enforceable contract governing this dispute.

16318. Plaintiffs and the Class members do not have an adequate remedy at law.

### 16.     Causes of Action on Behalf of the Texas-Walmart Classes

### COUNT 1189
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
### (Tex. Bus. & Com. Code Ann. §17.41, *et seq.*)
### (Against Store-Brand Retailer Defendant Walmart)

16319. Texas Class Representatives Plaintiff Marilyn Abraham and Plaintiff Marianella Villanueva incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16320. This cause of action is brought on behalf of the Texas-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16321. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

16322. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

16323. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

16324. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

16325. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

16326. The Texas DTPA makes unlawful specific acts, including:

(a) "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

(b) "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

(c) "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

16327. In the course of its business, as a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16328. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

16329. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16330. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16331. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16332. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16333. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

16334. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16335. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16336. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16337. Defendant was provided notice of the issues raised in this count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

16338. As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

### COUNT 1190
### Breach of Implied Warranty
### (Tex. Bus. & Com. Code Ann. §2-314)
### (Against Store-Brand Retailer Defendant Walmart)

16339. Texas Class Representatives Marilyn Abraham and Marianella Villlanueva incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16340. This cause of action is brought on behalf of the Texas-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16341. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

16342. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Tex. Bus. & Com. Code Ann. §2-314.

16343. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16344. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16345. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16346. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability

because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16347. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 1191**
**Unjust Enrichment**
**(Texas Law)**
**(Against Store-Brand Retailer Defendant Walmart**

</div>

16348. Texas Class Representatives Plaintiff Marilyn Abraham and Marianella Villanueva incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16349. This cause of action is brought on behalf of the Texas-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16350. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16351. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16352. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16353. It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16354. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16355. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### 17. Causes of Action on Behalf of the Virginia-Walmart Classes

**COUNT 1192**
**Violation of the Virginia Consumer Protection Act**
**(Va. Code Ann. §59.1-196, *et seq.*)**
**(Against Store-Brand Retailer Defendant Walmart)**

16356. Virginia Class Representative Plaintiff Dan Zhovtis incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16357. This cause of action is brought on behalf of the Virginia-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16358. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Va. Code Ann. §59.1-198.

16359. Defendant was and is a "[s]upplier" within the meaning of Va. Code Ann. §59.1-198.

16360. The Ranitidine-Containing Products are "[g]oods" within the meaning of Va. Code Ann. §59.1-198.

16361. Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Va. Code Ann. §59.1-198.

16362. The Virginia Consumer Protection Act ("Virginia CPA") prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Va. Code Ann. §59.1-200(A).

16363. The Virginia CPA makes unlawful specific acts, including:

(a)  "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" (Va. Code Ann. §59.1-200(A)(5));

(b)  "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model" (Va. Code Ann. §59.1-200(A)(6));

(c)  "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" (Va. Code Ann. §59.1-200(A)(8)); and

(d)  "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" (Va. Code Ann. §59.1-200(A)(14)).

16364. In the course of its business, as a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16365. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Virginia CPA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

16366. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16367. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16368. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16369. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16370. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

16371. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Virginia CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16372. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16373. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16374. Defendant was provided notice of the issues raised in this count and this Complaint by the FDA investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

16375. As a result of Defendant's violations of the Virginia CPA, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Virginia CPA.

**COUNT 1193**
**Breach of Implied Warranty**
**(Va. Code §8.2-314)**
**(Against Store-Brand Retailer Defendant Walmart)**

16376. Virginia Class Representatives Plaintiff Dan Zhovtis incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16377. This cause of action is brought on behalf of the Virginia-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16378. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Virginia Class Representatives and members of the Virginia Class and was in the business of selling such products.

16379. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Va. Code §8.2-314.

16380. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16381. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16382. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16383. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability

because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16384. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div align="center">

**COUNT 1194**
**Unjust Enrichment**
**(Virginia Law)**
**(Against Store-Brand Retailer Defendant Walmart)**

</div>

16385. Virginia Class Representative Plaintiff Dan Zhovtis incorporates the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16386. This cause of action is brought on behalf of the Virginia-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16387. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16388. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16389. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16390. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16391. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16392. There is no express contract governing this dispute.

16393. Plaintiffs and the Class members do not have an adequate remedy at law.

**18.    Causes of Action on Behalf of the Washington-Walmart Classes**

**COUNT 1195**
**Violation of the Washington Consumer Protection Act**
**(Wash. Rev. Code Ann. §19.86.010, *et seq.*)**
**(Against Store-Brand Retailer Defendant Walmart)**

16394. Washington Class Representatives Plaintiff Johnathan Ferguson and Plaintiff Robert Dewitt incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16395. This cause of action is brought on behalf of the Washington-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16396. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Wash. Rev. Code Ann. §19.86.010(1).

16397. The Ranitidine-Containing Products are "[a]ssets" within the meaning of Wash. Rev. Code Ann. §19.86.010(3).

16398. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Wash. Rev. Code Ann. §19.86.010(2).

16399. The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. §19.86.020.

16400. In the course of its business, as a Private Label Distributor, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16401. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington CPA.

16402. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16403. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16404. Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16405. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16406. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Washington CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16407. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16408. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16409. On June 22, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Wash. Rev. Code §19.86.095 to the Attorney General of the State of Washington.

16410. As a result of Defendant's violations of the Washington CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Washington CPA.

**COUNT 1196**
**Breach of Implied Warranty**
**(Wash. Rev. Code §62A 2-314)**
**(Against Store-Brand Retailer Defendant Walmart)**

16411. Washington Class Representatives Plaintiff Jonathan Ferguson and Plaintiff Robert Dewitt incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16412. This cause of action is brought on behalf of the Washington-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

- 3302 -

16413. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Washington Class Representatives and members of the Washington Class and was in the business of selling such products.

16414. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Wash. Rev. Code §62A 2-314.

16415. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16416. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16417. Plaintiffs and each member of the Class purchased Defendant's private-label ranitidine product directly from Defendant and, thus, there is privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16418. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability

because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16419. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

<div style="text-align:center">

**COUNT 1197**
**Unjust Enrichment**
**(Washington Law)**
**(Against Store-Brand Retailer Defendant Walmart)**

</div>

16420. Washington Class Representatives Plaintiff Jonathan Ferguson and Plaintiff Robert Dewitt incorporate the preceding allegations in paragraphs 86-90, 273-277, 304-442, 445-483, 912-961, and 1093-1301 as though fully set forth herein.

16421. This cause of action is brought on behalf of the Washington-Walmart Class (for the purpose of this section, "Class") against Store-Brand Retailer Defendant Walmart (for purposes of this Count only, "Defendant").

16422. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless private-label Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16423. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16424. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16425. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16426. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16427. There is no express contract governing this dispute.

16428. Plaintiffs and the Class members do not have an adequate remedy at law.

## XII. CAUSES OF ACTION AGAINST OTC STORE-BRAND MANUFACTURERS

### A. Causes of Action Against Apotex with Respect to Private-Label Product Rite-Aid Ranitidine

16429. For the purposes of the subsequent causes of action against Defendant Apotex, Plaintiffs are incorporating the following allegations by reference: paragraphs 30-35 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic ranitidine); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422

(NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469 (requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 912-916, 1056-1066 (Rite-Aid's Store-Brand Ranitidine); 1093-1118, 1170-1192 (Apotex's Store-Brand contract manufacturing); 1067-1077, 1193-1205 (misrepresentations or omissions of material fact in labeling); 1078-1092, 1206-1218 (misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

16430. Plaintiffs identified in the table below bring claims against Defendant Apotex on behalf of themselves and their respective State Classes under the laws of their respective state. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| Plaintiff Name | State(s) |
| --- | --- |
| Golbenaz Bakhtiar | California |
| Richard Obrien | California |
| Richard Froehlich | New York |

**1.      Causes of Action on Behalf of the California-Apotex Classes**

**COUNT 1198**
**Violation of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code §17200, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

16431. California Class Representatives Golbenaz Bakhtiar and Richard Obrien incorporate the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 1056-1118, and 1170-1218 as though fully set forth herein.

16432. This cause of action is brought on behalf of the California-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for

purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

16433. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

16434. Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

16435. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

16436. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL.  These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

16437. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16438. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16439. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16440. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16441. Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, CAL. HEALTH & SAFETY CODE §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3),

111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

16442. Defendant conduct also consitutes "unfair" business acts or praties.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

16443. Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, *see* Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

16444. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16445. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16446. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16447. Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

<div align="center">

**COUNT 1199**
**Violation of the California False Advertising Law**
**(Cal. Bus. & Prof. Code §17500, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

16448. California Class Representatives Golbenaz Bakhtiar and Richard Obrien incorporate the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 1056-1118, and 1170-1218 as though fully set forth herein.

16449. This cause of action is brought on behalf of the California-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

16450. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

16451. The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code §17500.

16452. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16453. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

      (c)      advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

      (d)      engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

16454. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16455. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16456. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16457. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16458. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16459. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16460. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16461. As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

<div align="center">

**COUNT 1200**
**Violation of the California Consumers Legal Remedies Act**
**(Cal. Civ. Code §1750, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

16462. California Class Representatives Golbenaz Bakhtiar and Richard Obrien incorporate the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 1056-1118, and 1170-1218 as though fully set forth herein.

16463. This cause of action is brought on behalf of the California-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

16464. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

16465. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

16466. The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

16467. The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §1770(a).

16468. The California CLRA makes unlawful specific acts, including:

    (a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

    (b)    "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

    (c)    "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

    (d)    "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

16469. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on

its labels that exceeded the time period during which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16470. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

> (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;
>
> (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and
>
> (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

16471. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16472. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16473. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16474. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16475. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

16476. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16477. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16478. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal.

Civ. Code §1782 to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

16479. Pursuant to Cal. Civ. Code §1780(a), Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

<div align="center">

**COUNT 1201**
**Unjust Enrichment or Quasi-Contract**
**(California Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

16480. California Class Representatives Golbenaz Bakhtiar and Richard Obrien incorporate the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 1056-1118, and 1170-1218 as though fully set forth herein.

16481. This cause of action is brought on behalf of the California-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for

purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

16482. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16483. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products labels that exceeded the time period during which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16484. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products labels that exceeded the time period during which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16485. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16486. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and therefore restitution or disgorgement of the amount of their unjust enrichment is required.

16487. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1202**
**Breach of Implied Warranty**
**(Cal. Com. Code § 2314)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

16488. California Class Representatives Golbenaz Bakhtiar and Richard Obrien incorporate the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 1056-1118, and 1170-1218 as though fully set forth herein.

16489. This cause of action is brought on behalf of the California-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

16490. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to California Class Representatives and members of the California Class and was in the business of selling such products.

16491. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Cal. Com. Code. §2314.

16492. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16493. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16494. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16495. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

16496. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16497. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 2.    Causes of Action on Behalf of the New York-Apotex Classes

### COUNT 1203
### Violation of New York Deceptive Acts and Practices Act
### (N.Y. Gen. Bus. Law §349)
### (Against Store-Brand Manufacturer Defendant Apotex)

16498. New York Class Representative Richard Froehlich incorporates the preceding
allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 1056-1118, and 1170-1218
as though fully set forth herein.

16499. This cause of action is brought on behalf of the New York-Apotex Class (for the
purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for
purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid
Ranitidine.

16500. Plaintiff and the Class members are "person[s]" within the meaning of N.Y. Gen.
Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning
of N.Y. Gen. Bus. Law §349(b).

16501. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits
"[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus.
Law §349(a).

16502. In the course of its business, Defendant, directly or through its agents, employees,
and/or subsidiaries, violated the New York DAPA by knowingly and intentionally
misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the
private-label Ranitidine-Containing Products it manufactured, including by (i) packaging
quantities of tablets in bottles greater than could be used completely and stored properly by the
expiration date, particularly when the expiration date on the label was extended beyond a safe and
appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during

which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16503. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

16504. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

16505. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

16506. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16507. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16508. Plaintiff and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16509. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16510. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16511. As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

## COUNT 1204
### Violation of the New York False Advertising Act
### (N.Y. Gen. Bus. Law §350)
### (Against Store-Brand Manufacturer Defendant Apotex)

16512. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 1056-1118, and 1170-1218 as though fully set forth herein.

16513. This cause of action is brought on behalf of the New York-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for

purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

16514. Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

16515. The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

16516. Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiff and the Class members.

16517. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the

products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16518. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

16519. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

16520. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiff and the Class members in a uniform manner.

16521. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16522. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16523. Plaintiff and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16524. Specifically, Plaintiff and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16525. Defendant's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16526. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiff within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seek all damages and relief to which Plaintiff and the Class members are entitled.

16527. As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the New York Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

**COUNT 1205**
**Unjust Enrichment**
**(New York Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

16528. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 1056-1118, and 1170-1218 as though fully set forth herein.

16529. This cause of action is brought on behalf of the New York-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

16530. Plaintiff and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16531. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiff and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products labels that exceeded the time period during which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiff and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16532. Defendant readily accepted and retained these benefits from Plaintiff and the Class members and knowingly benefitted from its unjust conduct – at Plaintiff's and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products labels that exceeded the time period during which the products remained stable and thus resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16533. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiff and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16534. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiff and the Class members through its unjust and unlawful acts, and therefore restitution or disgorgement of the amount of their unjust enrichment is required.

16535. Plaintiff and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 1206**
**Breach of Implied Warranty**
**(N.Y. U.C.C. Law § 2-314)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

16536. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 1056-1118, and 1170-1218 as though fully set forth herein.

16537. This cause of action is brought on behalf of the New York-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

16538. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representatives and members of the New York Class and was in the business of selling such products.

16539. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.Y. U.C.C. Law §2-314.

16540. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16541. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16542. Plaintiff and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each member of the Class, on the other hand.

16543. Further, Plaintiff and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

16544. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiff and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16545. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**B.      Causes of Action Against Apotex with Respect to Private-Label Product Walgreens Wal-Zan**

16546. For the purposes of the subsequent causes of action against Defendant Apotex, Plaintiffs are incorporating the following allegations by reference: paragraphs 30-35 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic ranitidine); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469 (requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 912-916, 962-978 (Walgreens' Store-Brand Ranitidine); 1093-1118, 1170-1192 (Apotex's Store-Brand contract manufacturing); 979-989, 1193-1205 (misrepresentations or omissions of material fact in labeling); 990-1004, 1206-1218 (misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

16547. Plaintiffs identified in the table below bring claims against Defendant Apotex on behalf of themselves and their respective State Classes under the laws of their respective state. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| **Plaintiff Name** | **State(s) of Residence** |
| --- | --- |
| Tangie Sims | Arizona |

| Tina Culclager | Arkansas |
| Golbenaz Bakhtiar | California |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Ronald Ragis | Florida |
| Renee Chatman | Illinois |
| Brian Nervig | Iowa |
| Sandra Erickson-Brown | Minnesota |
| Ernesto Sanchez | New Mexico |
| Gloria Colon | Puerto Rico |
| Marianella Villanueva | Texas |
| Jonathan Ferguson | Washington |

**1.    Causes of Action on Behalf of the Arizona-Apotex Classes**

**COUNT 1207**
**Violation of the Arizona Consumer Fraud Act**
**(Ariz. Rev. Stat. Ann. §44-1521, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

16548. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16549. This cause of action is brought on behalf of the Arizona-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16550. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(6).

16551. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(5).

16552. The Arizona Consumer Fraud Act ("Arizona CFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." Ariz. Rev. Stat. Ann. §44-1522(A).

16553. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Arizona CFA by recklessly, wantonly, knowingly, and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16554. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Arizona CFA.

16555. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16556. Defendant's misreprsentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a unform manner.

16557. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16558. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16559. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

16560. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Arizona CFA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16561. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16562. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16563. As a result of Defendant's violations of the Arizona CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

**COUNT 1208**
**Unjust Enrichment**
**(Arizona Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

16564. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16565. This cause of action is brought on behalf of the Arizona-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

- 3334 -

16566. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16567. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16568. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16569. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16570. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16571. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1209**
**Breach of Implied Warranty**
**(Ariz. Rev. State. Ann. §47-2314)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

16572. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16573. This cause of action is brought on behalf of the Arizona-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16574. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arizona Class Representatives and members of the Arizona Class and was in the business of selling such products.

16575. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ariz. Rev. Stat. Ann. §47-2314.

16576. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16577. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16578. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16579. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

16580. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16581. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

2.      **Causes of Action on Behalf of the Arkansas-Apotex Classes**

**COUNT 1210**
**Violation of the Arkansas Deceptive Trade Practices Act**
**(Ark. Code Ann. §4-88-101, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

16582. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16583. This cause of action is brought on behalf of the Arkansas-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16584. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ark. Code Ann. §4-88-102(5).

16585. The Ranitidine-Containing Products are "[g]oods" within the meaning of Ark. Code Ann. §4-88-102(4).

16586. The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices."  Ark. Code Ann. §4-88-107(a).

16587. The Arkansas DTPA makes unlawful specific acts, including:

(a)     "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" (Ark. Code Ann. §4-88-107(a)(1));

(b)     "[a]dvertising the goods or services with the intent not to sell them as advertised" (Ark. Code Ann. §4-88-107(a)(3)); and

(c)     "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" (Ark. Code Ann. §4-88-107(a)(10)).

16588. The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission . . . ." Ark. Code Ann. §4-88-108(a).

16589. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16590. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Arkansas DTPA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

16591. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16592. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16593. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16594. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16595. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

16596. Plaintiffs and the Class members were aggrieved by Defendant's violations of Arkansas DTPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16597. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16598. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16599. As a result of Defendant's violations of the Arkansas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

<div align="center">

**COUNT 1211**
**Unjust Enrichment**
**(Arkansas Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

16600. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16601. This cause of action is brought on behalf of the Arkansas-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16602. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16603. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16604. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16605. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16606. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16607. There is no valid, legal, and binding contract governing this dispute.

16608. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1212**
**Breach of Implied Warranty**
**(Ark. Code Ann. §4-2-314)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

16609. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16610. This cause of action is brought on behalf of the Arkansas-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16611. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arkansas Class Representatives and members of the Arkansas Class and was in the business of selling such products.

16612. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ark. Code. Ann. §4-2-314.

16613. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16614. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16615. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16616. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

16617. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16618. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

3.    **Causes of Action on Behalf of the California-Apotex Classes**

**COUNT 1213**
**Violation of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code §17200, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

16619. California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16620. This cause of action is brought on behalf of the California-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16621. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

16622. Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

16623. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus,

resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

16624. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL.  These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

16625. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16626. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16627. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16628. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16629. Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, CAL. HEALTH & SAFETY CODE §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

16630. Defendant conduct also consitutes "unfair" business acts or practies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

16631. Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400,

111440, 111445, 111450; the Consumer Legal Remedies Act, *see* Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

16632. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16633. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16634. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16635. Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

**COUNT 1214**
**Violation of the California False Advertising Law**
**(Cal. Bus. & Prof. Code §17500, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

16636. California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16637. This cause of action is brought on behalf of the California-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16638. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

16639. The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code §17500.

16640. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be

used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16641. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

16642. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16643. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16644. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16645. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16646. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16647. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16648. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16649. As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

**COUNT 1215**
**Violation of the California Consumers Legal Remedies Act**
**(Cal. Civ. Code §1750, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

16650. California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16651. This cause of action is brought on behalf of the California-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16652. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

16653. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

16654. The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

16655. The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §1770(a).

16656. The California CLRA makes unlawful specific acts, including:

(a)　　"[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

(b)  "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

(c)  "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

(d)  "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

16657. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16658. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

(a)  representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)  representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)  advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)  engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

16659. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16660. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16661. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16662. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16663. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

16664. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16665. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16666. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

16667. Pursuant to Cal. Civ. Code §1780(a), Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or

disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

<div align="center">

**COUNT 1216**
**Unjust Enrichment or Quasi-Contract**
**(California Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

16668. California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16669. This cause of action is brought on behalf of the California-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16670. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16671. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16672. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16673. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16674. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16675. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 1217
### Breach of Implied Warranty
### (Cal. Com. Code §2314)
### (Against Store-Brand Manufacturer Defendant Apotex)

16676. California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16677. This cause of action is brought on behalf of the California-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16678. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to California Class Representatives and members of the California Class and was in the business of selling such products.

16679. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Cal. Com. Code. §2314.

16680. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16681. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16682. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16683. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

16684. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16685. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**4.      Causes of Action on Behalf of the Colorado-Apotex Classes**

**COUNT 1218**
**Violation of the Colorado Consumer Protection Act**
**(Colo. Rev. Stat. Ann. §6-1-101, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

16686. Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16687. This cause of action is brought on behalf of the Colorado-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16688. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Colo. Rev. Stat. Ann. §6-1-102(6).

16689. The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices "in the course of the person's business, vocation, or occupation." Colo. Rev. Stat. Ann. §6-1-105(1).

16690. The Colorado CPA makes unlawful specific acts, including:

(a)     "[e]ither knowingly or recklessly mak[ing] a false representation as to the source, sponsorship, approval, or certification of goods, services, or property" (Colo. Rev. Stat. Ann. §6-1-105(1)(b));

(b)     "[r]epresent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another" (Colo. Rev. Stat. Ann. §6-1-105(1)(g));

(c)     "[a]dvertis[ing] goods, services, or property with intent not to sell them as advertised" (Colo. Rev. Stat. Ann. §6-1-105(1)(i));

(d)     "[f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction" (Colo. Rev. Stat. Ann. §6-1-105(1)(u)); and

(e)     "[e]ither knowingly or recklessly engage[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice" (Colo. Rev. Stat. Ann. §6-1-105(1)(kkk)).

16691. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16692. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Colorado CPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

    (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; and

    (e)    failing to disclose the defective Ranitidine-Containing Products in connection with their sale to the public.

16693. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16694. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16695. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16696. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16697. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

16698. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Colorado CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16699. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16700. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

16701. As a result of Defendant's violations of the Colorado CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

**COUNT 1219**
**Unjust Enrichment**
**(Colorado Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

16702. Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16703. This cause of action is brought on behalf of the Colorado-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16704. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16705. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

16706. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16707. It is unjust and inequitable for the Defendant to retain these benefits without commensurate compensation because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16708. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16709. Plaintiffs and the Class members do not have an adequate remedy at law.

### 5.    Causes of Action on Behalf of the Florida-Apotex Classes

### COUNT 1220
### Violation of the Florida Deceptive and Unfair Trade Practices Act
### (Fla. Stat. Ann. §501.201, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Apotex)

16710. Florida Class Representative Ronald Ragis incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16711. This cause of action is brought on behalf of the Florida-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16712. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. Ann. §501.204(1).

16713. In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. §45(a)(1) as of July 1, 2017." Fla. Stat. Ann. §501.204(2).

16714. Plaintiffs and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA.  *See* Fla. Stat. Ann. §501.203(6)-(7).

16715. Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA.  *See* Fla. Stat. Ann. §501.203(8).

16716. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16717. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

16718. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16719. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16720. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16721. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16722. Plaintiffs and the Class members were aggrieved by Defendant's violations of FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16723. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16724. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16725. As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

<div align="center">

**COUNT 1221**
**Unjust Enrichment**
**(Florida Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

16726. Florida Class Representative Ronald Ragis incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16727. This cause of action is brought on behalf of the Florida-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16728. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16729. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered an impoverishment because they purchased worthless medications and did not receive the expected benefit therefrom.

16730. Defendant voluntarily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16731. It is unjust and inequitable for the Defendant to retain these benefits without paying the value thereof because the benefits were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16732. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16733. There is no express written contract governing this dispute.

16734. Plaintiffs and the Class members do not have an adequate remedy at law.

### 6.      Causes of Action on Behalf of the Illinois-Apotex Classes

### COUNT 1222
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (815 Ill. Comp. Stat. Ann. 505/1, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Apotex)

16735. Illinois Class Representative Renee Chatman incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16736. This cause of action is brought on behalf of the Illinois-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16737. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(c).

16738. Plaintiffs and the Class members are "consumer[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(e).

16739. The Ranitidine-Containing Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(b).

16740. Defendant was and is engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(f).

16741. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the

use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 Ill. Comp. Stat. Ann. 510/2], approved August 5, 1965, in the conduct of any trade or commerce."  815 Ill. Comp. Stat. Ann. 505/2.

16742. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16743. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFDBPA.

16744. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16745. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16746. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16747. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16748. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Illinois CFDBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16749. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16750. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16751. As a result of Defendant's violations of the Illinois CFDBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFDBPA.

<div align="center">

**COUNT 1223**
**Unjust Enrichment**
**(Illinois Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

16752. Illinois Class Representative Renee Chatman incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16753. This cause of action is brought on behalf of the Illinois-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16754. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16755. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16756. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16757. It violates the principles of justice, equity, and good conscience for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16758. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16759. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

### 7. Causes of Action on Behalf of the Iowa-Apotex Classes

### COUNT 1224
### Violation of the Iowa Private Right of Action for Consumer Frauds Act
### (Iowa Code Ann. §714H.1, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Apotex)

16760. Iowa Class Representative Brian Nervig incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16761. This cause of action is brought on behalf of the Iowa-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16762. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Iowa Code Ann. §714H.2(7).

16763. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Iowa Code Ann. §714H.2(3).

16764. The Iowa Private Right of Action for Consumer Frauds Act ("Iowa PRACFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise."  Iowa Code Ann. §714H.3(1).

16765. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Iowa PRACFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA

as time passed.  Defendant did so with willful and wanton disregard for the rights and safety of others.

16766. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Iowa PRACFA.

16767. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16768. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16769. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16770. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16771. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Iowa PRACFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16772. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out- of-pocket loss.

16773. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

16774. As a result of Defendants' violations of the Iowa PRACFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Iowa PRACFA.

16775. Additionally, because Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, were undertaken in willful and wanton disregard for the rights and safety of others, pursuant to Iowa Code §714H.5(4), Plaintiffs and the Class members seek an additonal award of treble damages.

**COUNT 1225**
**Unjust Enrichment**
**(Iowa Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

16776. Iowa Class Representative Brian Nervig incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16777. This cause of action is brought on behalf of the Iowa-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16778. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16779. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16780. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16781. It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16782. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16783. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

<div align="center">

**COUNT 1226**
**Breach of Implied Warranty**
**(Iowa Code Ann. §554.2314)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

16784. Iowa Class Representative Brian Nervig incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16785. This cause of action is brought on behalf of the Iowa-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16786. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Iowa Class Representatives and members of the Iowa Class and was in the business of selling such products.

16787. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. IA Code §554.2314.

16788. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16789. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16790. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16791. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

16792. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16793. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 8.   Causes of Action on Behalf of the Michigan-Apotex Classes

### COUNT 1227
### Violation of the Michigan Consumer Protection Act
### (Mich. Comp. Laws Ann. §445.901, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Apotex)

16794. Michigan Class Representative Jerry Hunt incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16795. This cause of action is brought on behalf of the Michigan-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16796. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(d).

16797. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(g).

16798. The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws Ann. §445.903(1).

16799. The Michigan CPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Mich. Comp. Laws Ann. §445.903(1)(c));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Mich. Comp. Laws Ann. §445.903(1)(e)); and

(c)     "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented" (Mich. Comp. Laws Ann. §445.903(1)(g)).

16800. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16801. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Michigan CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

16802. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16803. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16804. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16805. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16806. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Michigan CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16807. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16808. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16809. As a result of Defendant's violations of the Michigan CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Michigan CPA.

**COUNT 1228**
**Unjust Enrichment**
**(Michigan Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

16810. Michigan Class Representative Jerry Hunt incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16811. This cause of action is brought on behalf of the Michigan-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16812. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16813. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16814. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16815. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16816. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16817. There is no express contract governing this dispute.

16818. Plaintiffs and the Class members do not have an adequate remedy at law.

9.      **Causes of Action on Behalf of the Minnesota-Apotex Classes**

**COUNT 1229**
**Violation of the Minnesota Prevention of Consumer Fraud Act**
**(Minn. Stat. Ann. §325F.68, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

16819. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16820. This cause of action is brought on behalf of the Minnesota-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16821. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

16822. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

16823. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged." Minn. Stat. Ann. §325F.69(1). Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

16824. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16825. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

16826. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16827. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16828. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16829. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16830. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

16831. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16832. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16833. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16834. As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

## COUNT 1230
### Unjust Enrichment
### (Minnesota Law)
### (Against Store-Brand Manufacturer Defendant Apotex)

16835. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16836. This cause of action is brought on behalf of the Minnesota-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16837. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16838. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16839. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16840. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16841. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16842. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1231**
**Breach of Implied Warranty**
**(Minn. Stat. Ann. §336.2-314)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

16843. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16844. This cause of action is brought on behalf of the Minnesota-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16845. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

16846. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Minn. Stat. Ann. §336.2-314

16847. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16848. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16849. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16850. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

16851. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16852. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 10.     Causes of Action on Behalf of the New Mexico-Apotex Classes

**COUNT 1232**
**Violation of the New Mexico Unfair Trade Practices Act**
**(N.M. Stat. Ann. §57-12-1, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

16853. New Mexico Class Representative Ernesto Sanchez incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16854. This cause of action is brought on behalf of the New Mexico-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16855. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

16856. Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

16857. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person." N.M. Stat. Ann. §57-12-2(D). The New Mexico UTPA also makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." N.M. Stat. Ann. §57-12-2(E).

16858. The New Mexico UTPA makes unlawful specific acts, including:

(a)     "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

(b)     "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

(c)     "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

16859. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during

which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16860. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Mexico UTPA, including:

> (a)   representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;
>
> (c)   using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and
>
> (d)   acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.

16861. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16862. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16863. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16864. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16865. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16866. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16867. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16868. As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

## COUNT 1233
## Unjust Enrichment
### (New Mexico Law)
### (Against Store-Brand Manufacturer Defendant Apotex)

16869. New Mexico Class Representative Ernesto Sanchez incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16870. This cause of action is brought on behalf of the New Mexico-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16871. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16872. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16873. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16874. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16875. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16876. There is no express contract governing this dispute.

16877. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1234**
**Breach of Implied Warranty**
**(N.M. Stat. Ann. §55-2-314)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

16878. New Mexico Class Representatives Ernesto Sanchez incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16879. This cause of action is brought on behalf of the New Mexico-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16880. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

16881. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.M. Stat. Ann. §55-2-314.

16882. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16883. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16884. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16885. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

16886. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16887. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 11.     Causes of Action on Behalf of the Puerto Rico-Apotex Classes

<div align="center">

**COUNT 1235**
**Unjust Enrichment**
**(Puerto Rico Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

16888. South Carolina Class Representative Gloria Colon incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16889. This cause of action is brought on behalf of the South Carolina-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16890. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16891. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16892. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

16893. Defendants' enrichment – the monies obtained from Plaintiffs' and Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and Class members' impoverishment – i.e., Plaintiffs' and Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

16894. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16895. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16896. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1236**
**Breach of Implied Warranty**
**(P.R. Laws Ann. Tit. 31, §3841)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

16897. South Carolina Class Representative Gloria Colon incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16898. This cause of action is brought on behalf of the South Carolina-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16899. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Puerto Rico Class Representatives and members of the Puerto Rico Class and was in the business of selling such products.

16900. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. P.R. Laws. Ann. Tit. 31, §3841.

16901. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16902. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16903. Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to establish

privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16904. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

16905. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16906. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 12.   Causes of Action on Behalf of the Texas-Apotex Classes

### COUNT 1237
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
### (Tex. Bus. & Com. Code Ann. §17.41, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Apotex)

16907. Texas Class Representative Marianella Villanueva incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16908. This cause of action is brought on behalf of the Texas-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16909. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

16910. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

16911. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

16912. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

16913. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

16914. The Texas DTPA makes unlawful specific acts, including:

(a)     "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

(b)     "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

(c)     "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

16915. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label

Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16916. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

> (a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and
>
> (c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

16917. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16918. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16919. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16920. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16921. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

16922. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16923. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16924. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16925. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

16926. As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

<div align="center">

**COUNT 1238**
**Unjust Enrichment**
**(Texas Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

16927. Texas Class Representative Marianella Villanueva incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16928. This cause of action is brought on behalf of the Texas-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16929. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16930. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16931. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16932. It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16933. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16934. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 1239**
**Breach of Implied Warranty**
**(Tex. Bus. & Com. Code Ann. §2-314)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

16935. Texas Class Representative Marianella Villanueva incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16936. This cause of action is brought on behalf of the Texas-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16937. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

16938. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Tex. Bus. & Com. Code Ann. §2-314.

16939. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16940. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16941. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16942. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

16943. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16944. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 13.      Causes of Action on Behalf of the Washington-Apotex Classes

### COUNT 1240
### Violation of the Washington Consumer Protection Act
### (Wash. Rev. Code Ann. §19.86.010, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Apotex)

16945. Washington Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16946. This cause of action is brought on behalf of the Washington-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16947. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Wash. Rev. Code Ann. §19.86.010(1).

16948. The Ranitidine-Containing Products are "[a]ssets" within the meaning of Wash. Rev. Code Ann. §19.86.010(3).

16949. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Wash. Rev. Code Ann. §19.86.010(2).

16950. The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Wash. Rev. Code Ann. §19.86.020.

16951. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging

quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16952. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington CPA.

16953. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16954. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16955. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16956. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16957. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Washington CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16958. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16959. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16960. On June 22, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Wash. Rev. Code §19.86.095 to the Attorney General of the State of Washington.

16961. As a result of Defendant's violations of the Washington CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Washington CPA.

## COUNT 1241
## Unjust Enrichment
## (Washington Law)
## (Against Store-Brand Manufacturer Defendant Apotex)

16962. Washington Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16963. This cause of action is brought on behalf of the Washington-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16964. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

16965. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

16966. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16967. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

16968. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

16969. There is no express contract governing this dispute.

16970. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1242**
**Breach of Implied Warranty**
**(Wash. Rev. Code Ann. §62A 2-314)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

16971. Washington Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1170-1218 as though fully set forth herein.

16972. This cause of action is brought on behalf of the Washington-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

16973. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Washington Class Representatives and members of the Washington Class and was in the business of selling such products.

16974. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Wash. Rev. Code §62A 2-314.

16975. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

16976. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

16977. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

16978. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

16979. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability

because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

16980. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**C.   Causes of Action Against Apotex with Respect to Private-Label Product Walmart Equate Ranitidine**

16981. For the purposes of the subsequent causes of action against Defendant Apotex, Plaintiffs are incorporating the following allegations by reference: paragraphs 30-35 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic ranitidine); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469 (requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 912-916, 917-936 (Walmart's Store-Brand Ranitidine); 1093-1118, 1170-1192 (Apotex's Store-Brand contract manufacturing); 937-946, 1193-1205 (misrepresentations or omissions of material fact in labeling); 947-961, 1206-1218 (misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

16982. Plaintiffs identified in the table below bring claims against Defendant Apotex on behalf of themselves and their respective State Classes under the laws of their respective states.

Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| **Plaintiff Name** | **State(s) of Residence** |
| --- | --- |
| Tangie Sims | Arizona |
| Tina Culclager | Arkansas |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Michael Tomlinson | Florida |
| Kathy Jeffries | Georgia |
| Carol Harkins | Illinois |
| Randy Jones | Louisiana |
| Jennifer Bond | Massachusetts |
| Sandra Erickson-Brown | Minnesota |
| Lora Mauffray | Mississippi |
| Shirley Magee | Mississippi |
| James Adamo | New Jersey |
| Ernesto Sanchez | New Mexico |
| Richard Froelich | New York |
| Jeffrey Garrett | Tennessee |
| Marilyn Abraham | Texas |
| Marianella Villanueva | Texas |
| Dan Zhovtis | Virginia |
| Robert Dewitt | Washington |
| Jonathan Ferguson | Washington |

1. **Causes of Action on Behalf of the Arizona-Apotex Classes**

**COUNT 1243**
**Violation of the Arizona Consumer Fraud Act**
**(Ariz. Rev. Stat. Ann. §44-1521, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

16983. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

16984. This cause of action is brought on behalf of the Arizona-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

16985. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(6).

16986. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(5).

16987. The Arizona Consumer Fraud Act ("Arizona CFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." Ariz. Rev. Stat. Ann. §44-1522(A).

16988. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Arizona CFA by recklessly, wantonly, knowingly, and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the

private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

16989. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Arizona CFA.

16990. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16991. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

16992. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

16993. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

16994. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

16995. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Arizona CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

16996. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

16997. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

16998. As a result of Defendant's violations of the Arizona CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

**COUNT 1244**
**Unjust Enrichment**
**(Arizona Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

16999. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17000. This cause of action is brought on behalf of the Arizona-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17001. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17002. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17003. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17004. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17005. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17006. Plaintiffs and the Class members do not have an adequate remedy at law.

### 2. Causes of Action on Behalf of the Arkansas-Apotex Classes

### COUNT 1245
### Violation of the Arkansas Deceptive Trade Practices Act
### (Ark. Code Ann. §4-88-101, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Apotex)

17007. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17008. This cause of action is brought on behalf of the Arkansas-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17009. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ark. Code Ann. §4-88-102(5).

17010. The Ranitidine-Containing Products are "[g]oods" within the meaning of Ark. Code Ann. §4-88-102(4).

17011. The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices." Ark. Code Ann. §4-88-107(a).

17012. The Arkansas DTPA makes unlawful specific acts, including:

(a)    "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" (Ark. Code Ann. §4-88-107(a)(1));

(b)    "[a]dvertising the goods or services with the intent not to sell them as advertised" (Ark. Code Ann. §4-88-107(a)(3)); and

(c)    "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" (Ark. Code Ann. §4-88-107(a)(10)).

17013. The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission . . . ." Ark. Code Ann. §4-88-108(a).

17014. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17015. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Arkansas DTPA, including:

> (a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;
>
> (c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and
>
> (d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

17016. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17017. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17018. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17019. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17020. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

17021. Plaintiffs and the Class members were aggrieved by Defendant's violations of Arkansas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17022. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17023. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

17024. As a result of Defendant's violations of the Arkansas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

**COUNT 1246**
**Unjust Enrichment**
**(Arkansas Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

17025. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17026. This cause of action is brought on behalf of the Arkansas-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17027. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17028. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17029. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17030. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17031. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17032. There is no valid, legal, and binding contract governing this dispute.

17033. Plaintiffs and the Class members do not have an adequate remedy at law.

### COUNT 1247
### Breach of Implied Warranty
### (Ark. Code Ann. §4-2-314)
### (Against Store-Brand Manufacturer Defendant Apotex)

17034. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17035. This cause of action is brought on behalf of the Arkansas-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17036. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arkansas Class Representatives and members of the Arkansas Class and was in the business of selling such products.

17037. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ark. Code. Ann. §4-2-314.

17038. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

17039. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

17040. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

17041. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

17042. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

17043. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 3.   Causes of Action on Behalf of the Colorado-Apotex Classes

**COUNT 1248**
**Violation of the Colorado Consumer Protection Act**
**(Colo. Rev. Stat. Ann. §6-1-101, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

17044. Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17045. This cause of action is brought on behalf of the Colorado-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17046. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Colo. Rev. Stat. Ann. §6-1-102(6).

17047. The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices "in the course of the person's business, vocation, or occupation." Colo. Rev. Stat. Ann. §6-1-105(1).

17048. The Colorado CPA makes unlawful specific acts, including:

(a)   "[e]ither knowingly or recklessly mak[ing] a false representation as to the source, sponsorship, approval, or certification of goods, services, or property" (Colo. Rev. Stat. Ann. §6-1-105(1)(b));

(b)   "[r]epresent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model,

if he knows or should know that they are of another" (Colo. Rev. Stat. Ann. §6-1-105(1)(g));

(c) "[a]dvertis[ing] goods, services, or property with intent not to sell them as advertised" (Colo. Rev. Stat. Ann. §6-1-105(1)(i));

(d) "[f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction" (Colo. Rev. Stat. Ann. §6-1-105(1)(u)); and

(e) "[e]ither knowingly or recklessly engage[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice" (Colo. Rev. Stat. Ann. §6-1-105(1)(kkk)).

17049. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17050. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Colorado CPA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; and

(e)     failing to disclose the defective Ranitidine-Containing Products in connection with their sale to the public.

17051. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17052. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17053. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17054. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17055. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

17056. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Colorado CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17057. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17058. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17059. As a result of Defendant's violations of the Colorado CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

**COUNT 1249**
**Unjust Enrichment**
**(Colorado Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

17060. Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17061. This cause of action is brought on behalf of the Colorado-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for

purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17062. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17063. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

17064. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17065. It is unjust and inequitable for the Defendant to retain these benefits without commensurate compensation because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17066. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17067. Plaintiffs and the Class members do not have an adequate remedy at law.

### 4.      Causes of Action on Behalf of the Florida-Apotex Classes

### COUNT 1250
### Violation of the Florida Deceptive and Unfair Trade Practices Act
### (Fla. Stat. Ann. §501.201, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Apotex)

17068. Florida Class Representative Michael Tomlinson incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17069. This cause of action is brought on behalf of the Florida-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17070. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. Ann. §501.204(1).

17071. In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. §45(a)(1) as of July 1, 2017." Fla. Stat. Ann. §501.204(2).

17072. Plaintiffs and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA.  *See* Fla. Stat. Ann. §501.203(6)-(7).

17073. Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA. *See* Fla. Stat. Ann. §501.203(8).

17074. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17075. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

17076. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17077. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17078. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17079. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17080. Plaintiffs and the Class members were aggrieved by Defendant's violations of FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17081. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17082. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17083. As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

**COUNT 1251**
**Unjust Enrichment**
**(Florida Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

17084. Florida Class Representative Michael Tomlinson incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17085. This cause of action is brought on behalf of the Florida-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17086. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17087. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered an impoverishment because they purchased worthless medications and did not receive the expected benefit therefrom.

17088. Defendant voluntarily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration

dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17089. It is unjust and inequitable for the Defendant to retain these benefits without paying the value thereof because the benefits were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17090. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17091. There is no express written contract governing this dispute.

17092. Plaintiffs and the Class members do not have an adequate remedy at law.

### 5.   Causes of Action on Behalf of the Georgia-Apotex Classes

### COUNT 1252
### Violation of the Georgia Fair Business Practices Act
### (Ga. Code Ann. §10-1-390, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Apotex)

17093. Georgia Class Representative Kathy Jeffries incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17094. This cause of action is brought on behalf of the Georgia-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17095. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(24).

17096. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(6).

17097. Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Ga. Code Ann. §10-1-392(a)(28).

17098. The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."  Ga. Code Ann. §10-1-393(a).

17099. The Georgia FBPA makes unlawful specific acts, including:

(a)  "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-393(b)(5));

(b)  "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-393(b)(7)); and

(c)  "[a]dvertising goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-393(b)(9)).

17100. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the

products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17101. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia FBPA, including:

   (a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

   (b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

   (c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

   (d)   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

17102. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17103. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17104. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17105. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17106. Plaintiffs and the Class members reasonably relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

17107. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Georgia FBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17108. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17109. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17110. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous

complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Ga. Code Ann. §10-1-399(b) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

17111. As a result of Defendant's violations of the Georgia FBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Georgia FBPA.

<div align="center">

**COUNT 1253**
**Unjust Enrichment**
**(Georgia Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

17112. Georgia Class Representative Kathy Jeffries incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17113. This cause of action is brought on behalf of the Georgia-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17114. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17115. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17116. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17117. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17118. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17119. There is no express contract governing this dispute.

17120. Plaintiffs and the Class members do not have an adequate remedy at law.

6.      **Causes of Action on Behalf of the Illinois-Apotex Classes**

**COUNT 1254**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**(815 Ill. Comp. Stat. Ann. 505/1, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

17121. Illinois Class Representative Carol Harkins incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17122. This cause of action is brought on behalf of the Illinois-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17123. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(c).

17124. Plaintiffs and the Class members are "consumer[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(e).

17125. The Ranitidine-Containing Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(b).

17126. Defendant was and is engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(f).

17127. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the

use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 Ill. Comp. Stat. Ann. 510/2], approved August 5, 1965, in the conduct of any trade or commerce." 815 Ill. Comp. Stat. Ann. 505/2.

17128. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17129. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFDBPA.

17130. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17131. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17132. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17133. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17134. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Illinois CFDBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17135. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17136. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17137. As a result of Defendant's violations of the Illinois CFDBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFDBPA.

<div align="center">

**COUNT 1255**
**Unjust Enrichment**
**(Illinois Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

17138. Illinois Class Representative Carol Harkins incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17139. This cause of action is brought on behalf of the Illinois-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17140. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17141. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17142. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17143. It violates the principles of justice, equity, and good conscience for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17144. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17145. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

**7.      Causes of Action on Behalf of the Louisiana-Apotex Classes**

**COUNT 1256**
**Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law**
**(La. Stat. Ann. §51:1401, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

17146. Louisiana Class Representative Randy Jones incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17147. This cause of action is brought on behalf of the Louisiana-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17148. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of La. Stat. Ann. §51:1402(8).

17149. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of La. Stat. Ann. §51:1402(1).

17150. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of La. Stat. Ann. §51:1402(10).

17151. The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Stat. Ann. §51:1405(A).

17152. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17153. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Louisiana CPL.

17154. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17155. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17156. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17157. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17158. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and

continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

17159. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Louisiana CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17160. Specifically, Plaintiffs and the Class were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17161. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17162. As a result of Defendant's violations of the Louisiana CPL, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Louisiana CPL.

## COUNT 1257
## Unjust Enrichment
## (Louisiana Law)
## (Against Store-Brand Manufacturer Defendant Apotex)

17163. Louisiana Class Representative Randy Jones incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17164. This cause of action is brought on behalf of the Louisiana-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17165. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17166. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17167. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

17168. Defendants' enrichment – the monies obtained from Plaintiffs for the Ranitidine Containing-Drugs – was the result of Plaintiffs' impoverishment – the receipt by Plaintiffs of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

17169. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-

Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17170. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17171. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 1258**
**Breach of Implied Warranty**
**(La. Stat. Ann. Art. §2520)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

17172. Louisiana Class Representative Randy Jones incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17173. This cause of action is brought on behalf of the Louisiana-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17174. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Louisiana Class Representatives and members of the Louisiana Class and was in the business of selling such products.

17175. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. La. Civ. Code. Ann. §2520.

17176. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

17177. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

17178. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

17179. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

17180. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

17181. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**8.    Causes of Action on Behalf of the Massachusetts-Apotex Classes**

**COUNT 1259**
**Violation of the Deceptive Acts or Practices Prohibited by Massachusetts Law**
**(Mass. Gen. Laws Ann. ch. 93a, §1, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

17182. Massachusetts Class Representative Jennifer Bond incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17183. This cause of action is brought on behalf of the Massachusetts-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17184. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(a).

17185. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(b).

17186. The Massachusetts consumer protection law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ann. ch. 93A, §2(a).

17187. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting,

omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17188. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Massachusetts Act.

17189. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17190. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17191. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17192. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17193. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Massachusetts Act because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17194. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17195. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17196. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Mass. Gen. Laws Ann. ch. 93A, §9(3) to Defendant.  Because Defendant failed to adequately remedy its

unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

17197. As a result of Defendant's violations of the Massachusetts Act, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Massachusetts Act.

<div align="center">

**COUNT 1260**
**Unjust Enrichment**
**(Massachusetts Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

17198. Massachusetts Class Representative Jennifer Bond incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17199. This cause of action is brought on behalf of the Massachusetts-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17200. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17201. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17202. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

17203. Defendant's enrichment – the monies obtained from Plaintiffs' and Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and Class members' impoverishment – i.e., Plaintiffs' and Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

17204. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17205. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17206. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 1261
## Breach of Implied Warranty
## (Mass. Gen. Laws Ch. 106 §2-314)
## (Against Store-Brand Manufacturer Defendant Apotex)

17207. Massachusetts Class Representative Jennifer Bond incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17208. This cause of action is brought on behalf of the Massachusetts-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17209. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Massachusetts Class Representatives and members of the Massachusetts Class and was in the business of selling such products.

17210. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Mass. Gen. Law Ch. 106 §2-314.

17211. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

17212. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

17213. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

17214. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

17215. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

17216. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

9.      **Causes of Action on Behalf of the Minnesota-Apotex Classes**

### COUNT 1262
### Violation of the Minnesota Prevention of Consumer Fraud Act
### (Minn. Stat. Ann. §325F.68, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Apotex)

17217. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17218. This cause of action is brought on behalf of the Minnesota-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17219. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

17220. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

17221. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged."  Minn. Stat. Ann. §325F.69(1).  Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

17222. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17223. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

17224. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17225. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17226. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17227. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17228. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

17229. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17230. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17231. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17232. As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

## COUNT 1263
### Unjust Enrichment
### (Minnesota Law)
### (Against Store-Brand Manufacturer Defendant Apotex)

17233. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17234. This cause of action is brought on behalf of the Minnesota-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17235. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17236. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17237. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17238. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17239. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17240. Plaintiffs and the Class members do not have an adequate remedy at law.

<div style="text-align:center">

**COUNT 1264**
**Breach of Implied Warranty**
**(Minn. Stat. Ann. §336.2-314)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

17241. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17242. This cause of action is brought on behalf of the Minnesota-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17243. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

17244. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Minn. Stat. Ann. §336.2-314

17245. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

17246. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

17247. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

17248. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

17249. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

17250. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 10.    Causes of Action on Behalf of the Mississippi-Apotex Classes

### COUNT 1265
### Unjust Enrichment
### (Mississippi Law)
### (Against Store-Brand Manufacturer Defendant Apotex)

17251. Mississippi Class Representatives Lora Mauffray and Shirley Magee incorporate the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17252. This cause of action is brought on behalf of the Mississippi-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17253. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17254. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

17255. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17256. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17257. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17258. There is no express contract governing this dispute.

17259. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1266**
**Breach of Implied Warranty**
**(Miss. Code Ann. §75-2-314)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

17260. Mississippi Class Representatives Lora Mauffray and Shirley Magee incorporate the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17261. This cause of action is brought on behalf of the Mississippi-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17262. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Mississippi Class Representatives and members of the Mississippi Class and was in the business of selling such products.

17263. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Miss. Code Ann. §75-2-314.

17264. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

17265. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

17266. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

17267. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

17268. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

17269. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

11.     **Causes of Action on Behalf of the New Jersey-Apotex Classes**

**COUNT 1267**
**Violation of the New Jersey Consumer Fraud Act**
**(N.J. Stat. Ann. §56:8-1, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

17270. New Jersey Class Representative James Adamo incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17271. This cause of action is brought on behalf of the New Jersey-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17272. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.J. Stat. Ann. §56:8-1(d).

17273. The Ranitidine-Containing Products are "merchandise" within the meaning of N.J. Stat. Ann. §56:8-1(c).

17274. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Jersey Consumer Fraud Act ("New Jersey CFA") by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  N.J. Stat. Ann. §56:8-1, *et seq.*

17275. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Jersey CFA.

17276. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17277. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17278. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17279. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17280. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Jersey CFA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17281. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17282. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17283. As a result of Defendant's violations of the New Jersey CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Jersey CFA.

## COUNT 1268
### Unjust Enrichment
### (New Jersey)
### (Against Store-Brand Manufacturer Defendant Apotex)

17284. New Jersey Class Representative James Adamo incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17285. This cause of action is brought on behalf of the New Jersey-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17286. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17287. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17288. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17289. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17290. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17291. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 1269**
**Breach of Implied Warranty**
**(N.J. Stat. Ann. §12A:2-314)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

17292. New Jersey Class Representative James Adamo incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17293. This cause of action is brought on behalf of the New Jersey-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17294. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Jersey Class Representatives and members of the New Jersey Class and was in the business of selling such products.

17295. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.J. Stat. Ann. §12A:2-314.

17296. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

17297. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

17298. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

17299. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

17300. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

17301. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

12.     **Causes of Action on Behalf of the New Mexico-Apotex Classes**

**COUNT 1270**
**Violation of the New Mexico Unfair Trade Practices Act**
**(N.M. Stat. Ann. §57-12-1, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

17302. New Mexico Class Representative Ernesto Sanchez incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17303. This cause of action is brought on behalf of the New Mexico-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17304. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

17305. Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

17306. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person."  N.M. Stat. Ann. §57-12-2(D).  The New Mexico UTPA also makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity

of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." N.M. Stat. Ann. §57-12-2(E).

17307. The New Mexico UTPA makes unlawful specific acts, including:

(a)     "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

(b)     "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

(c)     "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

17308. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17309. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Mexico UTPA, including:

(a)     representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

      (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

      (c)     using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and

      (d)     acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.

17310. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17311. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17312. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17313. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17314. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17315. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17316. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

17317. As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

<div align="center">

**COUNT 1271**
**Unjust Enrichment**
**(New Mexico Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

17318. New Mexico Class Representative Ernesto Sanchez incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17319. This cause of action is brought on behalf of the New Mexico-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17320. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17321. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17322. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17323. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17324. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17325. There is no express contract governing this dispute.

17326. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1272**
**Breach of Implied Warranty**
**(N.M. Stat. Ann. §55-2-314)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

17327. New Mexico Class Representative Ernesto Sanchez incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17328. This cause of action is brought on behalf of the New Mexico-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17329. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

17330. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.M. Stat. Ann. §55-2-314.

17331. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

17332. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

17333. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

17334. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

17335. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

17336. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 13.      Causes of Action on Behalf of the New York-Apotex Classes

### COUNT 1273
### Violation of New York Deceptive Acts and Practices Act
### (N.Y. Gen. Bus. Law §349)
### (Against Store-Brand Manufacturer Defendant Apotex)

17337. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17338. This cause of action is brought on behalf of the New York-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17339. Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

17340. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §349(a).

17341. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during

which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17342. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

17343. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17344. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17345. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17346. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17347. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17348. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17349. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17350. As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

<div align="center">

**COUNT 1274**
**Violation of the New York False Advertising Act**
**(N.Y. Gen. Bus. Law §350)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

17351. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17352. This cause of action is brought on behalf of the New York-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for

purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17353. Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

17354. The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

17355. Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

17356. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the

products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17357. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

17358. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17359. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17360. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17361. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17362. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17363. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17364. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17365. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

17366. As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the New York Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

## COUNT 1275
## Unjust Enrichment
## (New York Law)
## (Against Store-Brand Manufacturer Defendant Apotex)

17367. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17368. This cause of action is brought on behalf of the New York-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17369. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17370. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17371. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17372. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17373. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17374. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

## COUNT 1276
### Breach of Implied Warranty
### (N.Y. U.C.C. Law §2-314)
### (Against Store-Brand Manufacturer Defendant Apotex)

17375. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17376. This cause of action is brought on behalf of the New York-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17377. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representatives and members of the New York Class and was in the business of selling such products.

17378. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.Y. U.C.C. Law §2-314.

17379. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

17380. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

17381. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

17382. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

17383. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

17384. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 14. Causes of Action on Behalf of the Tennessee-Apotex Classes

### COUNT 1277
### Violation of the Tennessee Consumer Protection Act of 1977
### (Tenn. Code Ann. §47-18-101, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Apotex)

17385. Tennessee Class Representative Jeffrey Garrett incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17386. This cause of action is brought on behalf of the Tennessee-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17387. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tenn. Code Ann. §47-18-103(14).

17388. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tenn. Code Ann. §47-18-103(3).

17389. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tenn. Code Ann. §47-18-103(8).

17390. Defendant was and is engaged in "[t]rade" or "commerce" or "consumer transaction[s]" within the meaning of Tenn. Code Ann. §47-18-103(20).

17391. The Tennessee Consumer Protection Act of 1977 ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. §47-18-104(a).

17392. The Tennessee CPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tenn. Code Ann. §47-18-104(b)(5));

(b)     "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (Tenn. Code Ann. §47-18-104(b)(7)); and

(c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Tenn. Code Ann. §47-18-104(b)(9)).

17393. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17394. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Tennessee CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

      (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

      (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

17395. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17396. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17397. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17398. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17399. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Tennessee CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17400. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17401. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17402. As a result of Defendant's violations of the Tennessee CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Tennessee CPA.

## COUNT 1278
### Unjust Enrichment
### (Tennessee Law)
### (Against Store-Brand Manufacturer Defendant Apotex)

17403. Tennessee Class Representative Jeffrey Garrett incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17404. This cause of action is brought on behalf of the Tennessee-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17405. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17406. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17407. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17408. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17409. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17410. There is no existing, enforceable contract governing this dispute.

17411. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1279**
**Breach of Implied Warranty**
**(Tenn. Code Ann. §47-2-314)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

17412. Tennessee Class Representative Jeffrey Garrett incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17413. This cause of action is brought on behalf of the Tennessee-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17414. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Tennessee Class Representatives and members of the Tennessee Class and was in the business of selling such products.

17415. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Tenn. Code Ann. §47-2-314.

17416. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

17417. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

17418. Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

17419. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

17420. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

17421. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 15.    Causes of Action on Behalf of the Texas-Apotex Classes

### COUNT 1280
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
### (Tex. Bus. & Com. Code Ann. §17.41, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Apotex)

17422. Texas Class Representatives Marianella Villanueva and Marilyn Abraham incorporate the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17423. This cause of action is brought on behalf of the Texas-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17424. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

17425. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

17426. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

17427. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

17428. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

17429. The Texas DTPA makes unlawful specific acts, including:

    (a)    "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

    (b)    "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

    (c)    "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

17430. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17431. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

17432. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17433. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17434. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17435. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17436. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

17437. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate

result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17438. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17439. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17440. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

17441. As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

**COUNT 1281**
**Unjust Enrichment**
**(Texas Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

17442. Texas Class Representatives Marianella Villanueva and Marilyn Abraham incorporate the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17443. This cause of action is brought on behalf of the Texas-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17444. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17445. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17446. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17447. It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17448. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17449. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 1282**
**Breach of Implied Warranty**
**(Tex. Bus. & Com. Code Ann. §2-314)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

17450. Texas Class Representatives Marianella Villanueva and Marilyn Abraham incorporate the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17451. This cause of action is brought on behalf of the Texas-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17452. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

17453. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Tex. Bus. & Com. Code Ann. §2-314.

17454. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

17455. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

17456. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

17457. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

17458. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability

because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

17459. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 16.    Causes of Action on Behalf of the Virginia-Apotex Classes

### COUNT 1283
### Violation of the Virginia Consumer Protection Act
### (Va. Code Ann. §59.1-196, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Apotex)

17460. Virginia Class Representative Dan Zhovtis incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17461. This cause of action is brought on behalf of the Virginia-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17462. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Va. Code Ann. §59.1-198.

17463. Defendant was and is a "[s]upplier" within the meaning of Va. Code Ann. §59.1-198.

17464. The Ranitidine-Containing Products are "[g]oods" within the meaning of Va. Code Ann. §59.1-198.

17465. Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Va. Code Ann. §59.1-198.

17466. The Virginia Consumer Protection Act ("Virginia CPA") prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction."  Va. Code Ann. §59.1-200(A).

17467. The Virginia CPA makes unlawful specific acts, including:

(a)    "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" (Va. Code Ann. §59.1-200(A)(5));

(b)    "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model" (Va. Code Ann. §59.1-200(A)(6));

(c)    "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" (Va. Code Ann. §59.1-200(A)(8)); and

(d)    "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" (Va. Code Ann. §59.1-200(A)(14)).

17468. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17469. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Virginia CPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

17470. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17471. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17472. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17473. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17474. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

17475. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Virginia CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17476. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17477. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17478. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.

Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

17479. As a result of Defendant's violations of the Virginia CPA, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Virginia CPA.

<div align="center">

**COUNT 1284**
**Unjust Enrichment**
**(Virginia Law)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

</div>

17480. Virginia Class Representative Dan Zhovtis incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17481. This cause of action is brought on behalf of the Virginia-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17482. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17483. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17484. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17485. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17486. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17487. There is no express contract governing this dispute.

17488. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1285**
**Breach of Implied Warranty**
**(Va. Code Ann. §8.2-314)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

17489. Virginia Class Representative Dan Zhovtis incorporates the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17490. This cause of action is brought on behalf of the Virginia-Apotex Class (for the purpose this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for

purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17491. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Virginia Class Representatives and members of the Virginia Class and was in the business of selling such products.

17492. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Va. Code §8.2-314.

17493. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

17494. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

17495. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

17496. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

17497. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

17498. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 17.     Causes of Action on Behalf of the Washington-Apotex Classes

### COUNT 1286
### Violation of the Washington Consumer Protection Act
### (Wash. Rev. Code Ann. §19.86.010, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Apotex)

17499. Washington Class Representatives Robert Dewitt and Jonathan Ferguson incorporate the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17500. This cause of action is brought on behalf of the Washington-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17501. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Wash. Rev. Code Ann. §19.86.010(1).

17502. The Ranitidine-Containing Products are "[a]ssets" within the meaning of Wash. Rev. Code Ann. §19.86.010(3).

17503. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Wash. Rev. Code Ann. §19.86.010(2).

17504. The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. §19.86.020.

17505. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17506. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington CPA.

17507. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17508. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17509. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17510. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17511. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Washington CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17512. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17513. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

17514. On June 22, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Wash. Rev. Code §19.86.095 to the Attorney General of the State of Washington.

17515. As a result of Defendant's violations of the Washington CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Washington CPA.

## COUNT 1287
### Unjust Enrichment
### (Washington Law)
### (Against Store-Brand Manufacturer Defendant Apotex)

17516. Washington Class Representatives Robert Dewitt and Jonathan Ferguson incorporate the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17517. This cause of action is brought on behalf of the Washington-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17518. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17519. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17520. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17521. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17522. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17523. There is no express contract governing this dispute.

17524. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1288**
**Breach of Implied Warranty**
**(Wash. Rev. Code Ann. §62A 2-314)**
**(Against Store-Brand Manufacturer Defendant Apotex)**

17525. Washington Class Representatives Robert Dewitt and Jonathan Ferguson incorporate the preceding allegations in paragraphs 30-35, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1170-1218 as though fully set forth herein.

17526. This cause of action is brought on behalf of the Washington-Apotex Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Apotex (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

17527. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Washington Class Representatives and members of the Washington Class and was in the business of selling such products.

17528. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Wash. Rev. Code §62A 2-314.

17529. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

17530. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

17531. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

17532. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

17533. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

17534. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### D.    Causes of Action Against Dr. Reddy's with Respect to Private-Label Product CVS Health Ranitidine

17535. For the purposes of the subsequent causes of action against Defendant Dr. Reddy's, Plaintiffs are incorporating the following allegations by reference: paragraphs 36-45 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic

ranitidine); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469 (requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 912-916, 1005-1029 (CVS's Store-Brand Ranitidine); 1093-1118, 1219-1230 (Dr. Reddy's Store-Brand contract manufacturing); 1030-1040, 1231-1243 (misrepresentations or omissions of material fact in labeling); 1041-1055, 1244-1256 (misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

17536. Plaintiffs identified in the table below bring claims against Defendant Dr. Reddy's on behalf of themselves and their respective State Classes under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| **Plaintiff Name** | **State(s) of Residence** |
| --- | --- |
| Richard Obrien | California |
| Angel Vega | Connecticut |
| Kathy Jeffries | Georgia |
| Rebecca Sizemore | Indiana |
| Arthur Gamble | Michigan |
| Brad Hoag | Minnesota |
| Ernesto Sanchez | New Mexico |
| Richard Froehlich | New York |
| Chris Troyan | Ohio |
| Patricia Hess | Ohio |
| Gregory Alan Wayland | Texas |

| Marianella Villanueva | Texas |
| Mynetta Hastings | West Virginia |

1.      **Causes of Action on Behalf of the California-Dr. Reddy's Classes**

**COUNT 1289**
**Violation of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code §17200, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

17537. California Class Representative Richard Obrien incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17538. This cause of action is brought on behalf of the California-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17539. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

17540. Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

17541. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on

its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

17542. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL.  These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

17543. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17544. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17545. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17546. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17547. Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, CAL. HEALTH & SAFETY CODE §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

17548. Defendant conduct also consitutes "unfair" business acts or pracies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

17549. Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400,

111440, 111445, 111450; the Consumer Legal Remedies Act, *see* Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

17550. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17551. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17552. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17553. Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

**COUNT 1290**
**Violation of the California False Advertising Law**
**(Cal. Bus. & Prof. Code §17500, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

17554. California Class Representative Richard Obrien incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17555. This cause of action is brought on behalf of the California-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17556. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

17557. The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code §17500.

17558. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be

used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17559. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

> (a)  representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (b)  representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;
>
> (c)  advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and
>
> (d)  engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

17560. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17561. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17562. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17563. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17564. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17565. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17566. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17567. As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

**COUNT 1291**
**Violation of the California Consumers Legal Remedies Act**
**(Cal. Civ. Code §1750, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

17568. California Class Representative Richard Obrien incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17569. This cause of action is brought on behalf of the California-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17570. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

17571. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

17572. The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

17573. The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §1770(a).

17574. The California CLRA makes unlawful specific acts, including:

    (a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

- 3529 -

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

(c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

(d)     "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

17575. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17576. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

17577. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17578. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17579. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17580. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17581. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

17582. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17583. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17584. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

17585. Pursuant to Cal. Civ. Code §1780(a), Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or

disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

### COUNT 1292
### Unjust Enrichment or Quasi-Contract
### (California Law)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

17586. California Class Representative Richard Obrien incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17587. This cause of action is brought on behalf of the California-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17588. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17589. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17590. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17591. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17592. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17593. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1293**
**Breach of Implied Warranty**
**(Cal. Com. Code §2314)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

17594. California Class Representative Richard Obrien incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17595. This cause of action is brought on behalf of the California-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17596. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to California Class Representatives and members of the California Class and was in the business of selling such products.

17597. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Cal. Com. Code. §2314.

17598. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

17599. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

17600. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

17601. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

17602. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

17603. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**2. Causes of Action on Behalf of the Connecticut-Dr. Reddy's Classes**

**COUNT 1294**
**Violation of the Connecticut Unfair Trade Practices Act**
**(Conn. Gen. Stat. Ann. §42-110a, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

17604. Connecticut Class Representative Angel Vega incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17605. This cause of action is brought on behalf of the Connecticut-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17606. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Conn. Gen. Stat. Ann. §42-110a(3).

17607. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. §42-110a(4).

17608. The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. §42-110b(a).

17609. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17610. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Connecticut UTPA.

17611. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17612. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17613. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17614. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17615. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Connecticut UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17616. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17617. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17618. As a result of Defendant's violations of the Connecticut UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief
available under the Connecticut UTPA.

<div align="center">

**COUNT 1295**
**Unjust Enrichment**
**(Connecticut Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

17619. Connecticut Class Representative Angel Vega incorporates the preceding
allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and
1219-1256 as though fully set forth herein.

17620. This cause of action is brought on behalf of the Connecticut-Dr. Reddy's Class (for
the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for
purposes of this Count only, "Defendant") with respect to private-label product CVS Health
Ranitidine.

17621. Plaintiffs and the Class members conferred a benefit on Defendant in the form of
payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in
privity with Defendant through said transaction.

17622. In exchange for their payment of the purchase price of Defendant's Ranitidine-
Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing
Products, which included expiration dates on the products' labels that exceeded the time period
during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe
levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a
financial benefit on Defendants but did not receive their expected benefit therefrom.

17623. Defendant readily accepted and retained these benefits from Plaintiffs and the Class
members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'
expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17624. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17625. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17626. Plaintiffs and the Class members do not have an adequate remedy at law.

### 3. Causes of Action on Behalf of the Georgia-Dr. Reddy's Classes

### COUNT 1296
### Violation of the Georgia Fair Business Practices Act
### (Ga. Code Ann. §10-1-390, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

17627. Georgia Class Representative Kathy Jeffries incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17628. This cause of action is brought on behalf of the Georgia-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17629. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(24).

17630. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(6).

17631. Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Ga. Code Ann. §10-1-392(a)(28).

17632. The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." Ga. Code Ann. §10-1-393(a).

17633. The Georgia FBPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-393(b)(5));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-393(b)(7)); and

(c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-393(b)(9)).

17634. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

- 3541 -

17635. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia FBPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

17636. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17637. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17638. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17639. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17640. Plaintiffs and the Class members reasonably relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

17641. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Georgia FBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17642. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17643. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17644. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Ga.

Code Ann. §10-1-399(b) to Defendant.   Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

17645. As a result of Defendant's violations of the Georgia FBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Georgia FBPA.

## COUNT 1297
## Unjust Enrichment
## (Georgia Law)
## (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

17646. Georgia Class Representative Kathy Jeffries incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17647. This cause of action is brought on behalf of the Georgia-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17648. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17649. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17650. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17651. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17652. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17653. There is no express contract governing this dispute.

17654. Plaintiffs and the Class members do not have an adequate remedy at law.

### 4.    Causes of Action on Behalf of the Indiana-Dr. Reddy's Classes

### COUNT 1298
### Unjust Enrichment
### (Indiana Law)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

17655. Indiana Class Representative Rebecca Sizemore incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17656. This cause of action is brought on behalf of the Indiana-Dr. Reddy's Class (for the purposes of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17657. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17658. In exchange for their payment of the purchase prices of Defendant's Raniditine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in high, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17659. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17660. It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17661. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the

value thereof, and, therefore, restitution and disgorgement of the amount of their unjust enrichment is required.

17662. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

## COUNT 1299
### Breach of Implied Warranty
### (Ind. Code Ann. §26-1-2-314.)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

17663. Indiana Class Representative Rebecca Sizemore incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17664. This cause of action is brought on behalf of Indiana-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17665. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Indiana Class Representatives and members of the Indiana Class and was in the business of selling such products.

17666. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

17667. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

17668. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

17669. Defendant had reason to know Plaintiffs and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

17670. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

17671. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

17672. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

17673. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the

Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

17674. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**5.      Causes of Action on Behalf of the Michigan-Dr. Reddy's Classes**

**COUNT 1300**
**Violation of the Michigan Consumer Protection Act**
**(Mich. Comp. Laws Ann. §445.901, _et seq._)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

17675. Michigan Class Representative Arthur Gamble incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17676. This cause of action is brought on behalf of the Michigan-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17677. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(d).

17678. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(g).

17679. The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws Ann. §445.903(1).

17680. The Michigan CPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Mich. Comp. Laws Ann. §445.903(1)(c));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Mich. Comp. Laws Ann. §445.903(1)(e)); and

(c)     "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented" (Mich. Comp. Laws Ann. §445.903(1)(g)).

17681. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17682. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Michigan CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

17683. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17684. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17685. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17686. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17687. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Michigan CPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17688. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17689. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17690. As a result of Defendant's violations of the Michigan CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Michigan CPA.

## COUNT 1301
### Unjust Enrichment
### (Michigan Law)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

17691. Michigan Class Representative Arthur Gamble incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17692. This cause of action is brought on behalf of the Michigan-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17693. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17694. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17695. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17696. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17697. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17698. There is no express contract governing this dispute.

17699. Plaintiffs and the Class members do not have an adequate remedy at law.

6.    **Causes of Action on Behalf of the Minnesota-Dr. Reddy's Classes**

## COUNT 1302
### Violation of the Minnesota Prevention of Consumer Fraud Act
### (Minn. Stat. Ann. §325F.68, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

17700. Minnesota Class Representative Brad Hoag incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17701. This cause of action is brought on behalf of the Minnesota-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17702. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

17703. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

17704. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged."  Minn. Stat. Ann. §325F.69(1).  Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

17705. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17706. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

17707. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17708. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17709. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17710. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17711. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

17712. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17713. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17714. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

- 3556 -

17715. As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

### COUNT 1303
### Unjust Enrichment
### (Minnesota Law)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

17716. Minnesota Class Representative Brad Hoag incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17717. This cause of action is brought on behalf of the Minnesota-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17718. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17719. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17720. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17721. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17722. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17723. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1304**
**Breach of Implied Warranty**
**(Minn. Stat. Ann. §336.2-314)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

17724. Minnesota Class Representative Brad Hoag incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17725. This cause of action is brought on behalf of the Minnesota-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17726. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

17727. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Minn. Stat. Ann. §336.2-314

17728. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

17729. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

17730. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

17731. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

17732. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

17733. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**7. Causes of Action on Behalf of the New Mexico-Dr. Reddy's Classes**

**COUNT 1305**
**Violation of the New Mexico Unfair Trade Practices Act**
**(N.M. Stat. Ann. §57-12-1, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

17734. New Mexico Class Representative Ernesto Sanchez incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17735. This cause of action is brought on behalf of the New Mexico-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17736. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

17737. Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

17738. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person." N.M. Stat. Ann. §57-12-2(D). The New Mexico UTPA also makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." N.M. Stat. Ann. §57-12-2(E).

17739. The New Mexico UTPA makes unlawful specific acts, including:

(a)     "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

(b)     "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

(c)     "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

17740. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during

- 3561 -

which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17741. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Mexico UTPA, including:

   (a)   representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

   (b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

   (c)   using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and

   (d)   acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.

17742. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17743. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17744. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17745. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17746. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17747. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17748. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17749. As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

**COUNT 1306**
**Unjust Enrichment**
**(New Mexico Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

17750. New Mexico Class Representative Ernesto Sanchez incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17751. This cause of action is brought on behalf of the New Mexico-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17752. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17753. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17754. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17755. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17756. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17757. There is no express contract governing this dispute.

17758. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1307**
**Breach of Implied Warranty**
**(N.M. Stat. Ann. §55-2-314)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

17759. New Mexico Class Representatives Ernesto Sanchez incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17760. This cause of action is brought on behalf of the New Mexico-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17761. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

17762. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.M. Stat. Ann. §55-2-314.

17763. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

17764. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

17765. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

17766. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

17767. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

17768. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

8. **Causes of Action on Behalf of the New York-Dr. Reddy's Classes**

**COUNT 1308**
**Violation of New York Deceptive Acts and Practices Act**
**(N.Y. Gen. Bus. Law §349)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

17769. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17770. This cause of action is brought on behalf of the New York-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17771. Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

17772. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §349(a).

17773. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the

private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17774. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

17775. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17776. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17777. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17778. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17779. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17780. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17781. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17782. As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

**COUNT 1309**
**Violation of the New York False Advertising Act**
**(N.Y. Gen. Bus. Law §350)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

17783. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17784. This cause of action is brought on behalf of the New York-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17785. Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

17786. The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

17787. Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

17788. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17789. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

17790. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17791. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17792. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17793. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17794. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17795. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17796. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17797. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became

public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

17798. As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the New York Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

**COUNT 1310**
**Unjust Enrichment**
**(New York Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

17799. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17800. This cause of action is brought on behalf of the New York-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17801. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17802. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17803. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17804. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17805. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17806. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 1311**
**Breach of Implied Warranty**
**(N.Y. U.C.C. Law §2-314)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

17807. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17808. This cause of action is brought on behalf of the New York-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for

purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17809. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representatives and members of the New York Class and was in the business of selling such products.

17810. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.Y. U.C.C. Law §2-314.

17811. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

17812. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

17813. Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

17814. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

17815. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

17816. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**9.     Causes of Action on Behalf of the Ohio-Dr. Reddy's Classes**

**COUNT 1312**
**Unjust Enrichment**
**(Ohio Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

17817. Ohio Class Representatives Chris Troyan and Patricia Hess incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17818. This cause of action is brought on behalf of the Ohio-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17819. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17820. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17821. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17822. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17823. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17824. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

## COUNT 1313
### Breach of Implied Warranty
### (Ohio Rev. Code Ann. §1302.27)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

17825. Ohio Class Representatives Chris Troyan and Patricia Hess incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17826. This cause of action is brought on behalf of the Ohio-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17827. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Ohio Class Representatives and members of the Ohio Class and was in the business of selling such products.

17828. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ohio Rev. Code Ann. §1302.27.

17829. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used

- 3578 -

completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

17830. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

17831. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

17832. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

17833. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

17834. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

10. **Causes of Action on Behalf of the Texas-Dr. Reddy's Classes**

**COUNT 1314**
**Violation of the Texas Deceptive Trade Practices-Consumer Protection Act**
**(Tex. Bus. & Com. Code Ann. §17.41,** *et seq.***)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

17835. Texas Class Representatives Gregory Alan Wayland and Marianella Villanueva incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17836. This cause of action is brought on behalf of the Texas-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17837. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

17838. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

17839. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

17840. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

17841. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of

the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."

Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

17842. The Texas DTPA makes unlawful specific acts, including:

(a) "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

(b) "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

(c) "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

17843. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17844. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

17845. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17846. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17847. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17848. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17849. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

17850. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17851. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17852. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17853. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

17854. As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

**COUNT 1315**
**Unjust Enrichment**
**(Texas Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

17855. Texas Class Representatives Gregory Alan Wayland and Marianella Villanueva incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17856. This cause of action is brought on behalf of the Texas-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17857. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17858. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17859. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17860. It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17861. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17862. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### COUNT 1316
### Breach of Implied Warranty
### (Tex. Bus. & Com. Code Ann. §2-314)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

17863. Texas Class Representatives Gregory Alan Wayland and Marianella Villanueva incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17864. This cause of action is brought on behalf of the Texas-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17865. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

17866. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Tex. Bus. & Com. Code Ann. §2-314.

17867. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

17868. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

17869. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

17870. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

17871. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

17872. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**11.     Causes of Action on Behalf of the West Virginia-Dr. Reddy's Classes**

**COUNT 1317**
**Violation of the West Virginia Consumer Credit and Protection Act**
**(W. Va. Code Ann. §46A-1-101, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

17873. West Virginia Class Representative Mynetta Hastings incorporates the preceding allegations in the paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17874. This cause of action is brought on behalf of the West Virginia-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17875. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of W. Va. Code Ann. §46A-1-102(31).

17876. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of W. Va. Code Ann. §§46A-1-102(12) and 46A-6-102(2).

17877. The OTC Ranitidine-Containing Products are "[g]oods" within the meaning of W. Va. Code Ann. §46A-1-102(21).

17878. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of W. Va. Code Ann. §46A-6-102(6).

17879. The West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts of practices in the conduct of any trade or commerce." W. Va. Code Ann. §46A-6-104.

17880. The West Virginia CCPA makes unlawful specific acts, including:

(a)  "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (W. Va. Code Ann. §46A-6-102(7)(E));

(b)  "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (W. Va. Code Ann. §46A-6-102(7)(G));

(c)  "[a]dvertising goods or services with intent not to sell them as advertised" (W. Va. Code Ann. §46A-6-102(7)(I));

(d)  "[e]ngaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding" (W. Va. Code Ann. §46A-6-102(7)(L)); and

(e)  "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby" (W. Va. Code Ann. §46A-6-102(7)(M)).

17881. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the West Virginia CCPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products, including (i) packaging quantities of tablets in

- 3588 -

bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17882. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding OTC Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the West Virginia CCPA, including:

   (a)   representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

   (b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

   (c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

   (d)   engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

17883. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of OTC Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17884. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17885. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of OTC Ranitidine-Containing Products.

17886. The facts regarding OTC Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to OTC Ranitidine-Containing Products.

17887. Plaintiffs and the Class members were aggrieved by Defendant's violations of the West Virginia CCPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17888. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding OTC Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17889. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17890. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of OTC Ranitidine-Containing Products' defects

became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to W. Va. Code Ann. §46A-6-106(c) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

17891. As a result of Defendant's violations of the West Virginia CCPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the West Virginia CCPA.

<div align="center">

**COUNT 1318**
**Unjust Enrichment**
**(West Virginia Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

17892. West Virginia Class Representative Mynetta Hastings incorporates the preceding allegations in the paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17893. This cause of action is brought on behalf of the West Virginia-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17894. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17895. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17896. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17897. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17898. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17899. There is no express contract governing this dispute.

17900. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1319**
**Breach of Implied Warranty**
**(W. Va. Code Ann. §46A-2-314)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

17901. West Virginia Class Representative Mynetta Hastings incorporates the preceding allegations in the paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1219-1256 as though fully set forth herein.

17902. This cause of action is brought on behalf of the West Virginia-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

17903. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to West Virginia Class Representatives and members of the West Virginia Class and was in the business of selling such products.

17904. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. W. Va. Code §46-2-314.

17905. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

17906. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

17907. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish

privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

17908. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

17909. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

17910. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

E.    **Causes of Action Against Dr. Reddy's with Respect to Private-Label Product Walgreens Wal-Zan**

17911. For the purposes of the subsequent causes of action against Defendant Dr. Reddy's, Plaintiffs are incorporating the following allegations by reference: paragraphs 36-45 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic ranitidine); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469

(requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 912-916, 962-978 (Walgreens' Store-Brand Ranitidine); 1093-1118, 1219-1230 (Dr. Reddy's Store-Brand contract manufacturing); 979-989, 1231-1243 (misrepresentations or omissions of material fact in labeling); 990-1004, 1244-1256 (misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

17912. Plaintiffs identified in the table below bring claims against Defendant Dr. Reddy's on behalf of themselves and their respective State Classes under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| **Plaintiff Name** | **State(s) of Residence** |
|---|---|
| Tangie Sims | Arizona |
| Tina Culclager | Arkansas |
| Golbenaz Bakhtiar | California |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Angel Vega | Connecticut |
| Ronald Ragis | Florida |
| Renee Chatman | Illinois |
| Brian Nervig | Iowa |
| Sandra Erickson-Brown | Minnesota |
| Ernesto Sanchez | New Mexico |
| Gloria Colon | Puerto Rico |
| Marianella Villanueva | Texas |
| Jonathan Ferguson | Washington |

1.     **Causes of Action on Behalf of the Arizona-Dr. Reddy's Classes**

**COUNT 1320**
**Violation of the Arizona Consumer Fraud Act**
**(Ariz. Rev. Stat. Ann. §44-1521, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

17913. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

17914. This cause of action is brought on behalf of the Arizona-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

17915. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(6).

17916. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(5).

17917. The Arizona Consumer Fraud Act ("Arizona CFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." Ariz. Rev. Stat. Ann. §44-1522(A).

17918. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Arizona CFA by recklessly, wantonly, knowingly, and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the

private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17919. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Arizona CFA.

17920. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17921. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17922. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17923. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17924. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

17925. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Arizona CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17926. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17927. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17928. As a result of Defendant's violations of the Arizona CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

## COUNT 1321
## Unjust Enrichment
## (Arizona Law)
## (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

17929. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

17930. This cause of action is brought on behalf of the Arizona-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

17931. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17932. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17933. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17934. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17935. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17936. Plaintiffs and the Class members do not have an adequate remedy at law.

### 2.     Causes of Action on Behalf of the Arkansas-Dr. Reddy's Classes

### COUNT 1322
### Violation of the Arkansas Deceptive Trade Practices Act
### (Ark. Code Ann. §4-88-101, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

17937. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

17938. This cause of action is brought on behalf of the Arkansas-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

17939. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ark. Code Ann. §4-88-102(5).

17940. The Ranitidine-Containing Products are "[g]oods" within the meaning of Ark. Code Ann. §4-88-102(4).

17941. The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices."  Ark. Code Ann. §4-88-107(a).

17942. The Arkansas DTPA makes unlawful specific acts, including:

    (a)    "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" (Ark. Code Ann. §4-88-107(a)(1));

    (b)    "[a]dvertising the goods or services with the intent not to sell them as advertised" (Ark. Code Ann. §4-88-107(a)(3)); and

    (c)    "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" (Ark. Code Ann. §4-88-107(a)(10)).

17943. The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission . . . ." Ark. Code Ann. §4-88-108(a).

17944. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17945. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Arkansas DTPA, including:

     (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

     (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

     (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

     (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

17946. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17947. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17948. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17949. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17950. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

17951. Plaintiffs and the Class members were aggrieved by Defendant's violations of Arkansas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17952. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17953. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17954. As a result of Defendant's violations of the Arkansas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

**COUNT 1323**
**Unjust Enrichment**
**(Arkansas Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

17955. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

17956. This cause of action is brought on behalf of the Arkansas-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

17957. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

17958. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

17959. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17960. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

17961. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

17962. There is no valid, legal, and binding contract governing this dispute.

17963. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 1324
### Breach of Implied Warranty
### (Ark. Code Ann. §4-2-314)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

17964. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

17965. This cause of action is brought on behalf of the Arkansas-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

17966. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arkansas Class Representatives and members of the Arkansas Class and was in the business of selling such products.

17967. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ark. Code. Ann. §4-2-314.

17968. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

17969. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

17970. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

17971. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

17972. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

17973. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

3. **Causes of Action on Behalf of the California-Dr. Reddy's Classes**

**COUNT 1325**
**Violation of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code §17200,** *et seq.***)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

17974. California Class Representative Golbenaz Bakhtiar incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

17975. This cause of action is brought on behalf of the California-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

17976. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

17977. Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

17978. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be

- 3607 -

used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

17979. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL.  These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

17980. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17981. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17982. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

17983. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

17984. Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, CAL. HEALTH & SAFETY CODE §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

17985. Defendant conduct also consitutes "unfair" business acts or practies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

17986. Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21

C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, *see* Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

17987. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

17988. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

17989. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

17990. Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

**COUNT 1326**
**Violation of the California False Advertising Law**
**(Cal. Bus. & Prof. Code §17500, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

17991. California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

17992. This cause of action is brought on behalf of the California-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

17993. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

17994. The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code §17500.

17995. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be

used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

17996. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

17997. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17998. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

17999. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18000. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18001. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18002. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18003. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18004. As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

**COUNT 1327**
**Violation of the California Consumers Legal Remedies Act**
**(Cal. Civ. Code §1750, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18005. California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18006. This cause of action is brought on behalf of the California-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18007. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

18008. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

18009. The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

18010. The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §1770(a).

18011. The California CLRA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

(b)    "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

(c)    "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

(d)    "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

18012. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18013. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

18014. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18015. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18016. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18017. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18018. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

18019. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18020. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18021. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

18022. Pursuant to Cal. Civ. Code §1780(a), Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or

disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

<div align="center">

**COUNT 1328**
**Unjust Enrichment or Quasi-Contract**
**(California Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18023. California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18024. This cause of action is brought on behalf of the California-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18025. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18026. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18027. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18028. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18029. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18030. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 1329
### Breach of Implied Warranty
### (Cal. Com. Code §2314)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18031. California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18032. This cause of action is brought on behalf of the California-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18033. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to California Class Representatives and members of the California Class and was in the business of selling such products.

18034. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Cal. Com. Code. §2314.

18035. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18036. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18037. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18038. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18039. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18040. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**4.     Causes of Action on Behalf of the Colorado-Dr. Reddy's Classes**

**COUNT 1330**
**Violation of the Colorado Consumer Protection Act**
**(Colo. Rev. Stat. Ann. §6-1-101, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18041. Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18042. This cause of action is brought on behalf of the Colorado-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18043. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Colo. Rev. Stat. Ann. §6-1-102(6).

18044. The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices "in the course of the person's business, vocation, or occupation." Colo. Rev. Stat. Ann. §6-1-105(1).

18045. The Colorado CPA makes unlawful specific acts, including:

(a) "[e]ither knowingly or recklessly mak[ing] a false representation as to the source, sponsorship, approval, or certification of goods, services, or property" (Colo. Rev. Stat. Ann. §6-1-105(1)(b));

(b) "[r]epresent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another" (Colo. Rev. Stat. Ann. §6-1-105(1)(g));

(c) "[a]dvertis[ing] goods, services, or property with intent not to sell them as advertised" (Colo. Rev. Stat. Ann. §6-1-105(1)(i));

(d) "[f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction" (Colo. Rev. Stat. Ann. §6-1-105(1)(u)); and

(e) "[e]ither knowingly or recklessly engage[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice" (Colo. Rev. Stat. Ann. §6-1-105(1)(kkk)).

18046. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18047. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Colorado CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; and

(e)     failing to disclose the defective Ranitidine-Containing Products in connection with their sale to the public.

18048. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18049. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18050. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18051. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18052. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

18053. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Colorado CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18054. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18055. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18056. As a result of Defendant's violations of the Colorado CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

<div align="center">

**COUNT 1331**
**Unjust Enrichment**
**(Colorado Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18057. Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18058. This cause of action is brought on behalf of the Colorado-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18059. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18060. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

18061. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18062. It is unjust and inequitable for the Defendant to retain these benefits without commensurate compensation because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18063. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18064. Plaintiffs and the Class members do not have an adequate remedy at law.

### 5. Causes of Action on Behalf of the Connecticut-Dr. Reddy's Classes

**COUNT 1332**
**Violation of the Connecticut Unfair Trade Practices Act**
**(Conn. Gen. Stat. Ann. §42-110a, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18065. Connecticut Class Representative Angel Vega incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18066. This cause of action is brought on behalf of the Connecticut-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18067. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Conn. Gen. Stat. Ann. §42-110a(3).

18068. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. §42-110a(4).

18069. The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. §42-110b(a).

18070. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18071. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Connecticut UTPA.

18072. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18073. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18074. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18075. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18076. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Connecticut UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18077. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18078. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18079. As a result of Defendant's violations of the Connecticut UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

<div style="text-align:center">

**COUNT 1333**
**Unjust Enrichment**
**(Connecticut Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18080. Connecticut Class Representative Angel Vega incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18081. This cause of action is brought on behalf of the Connecticut-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18082. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18083. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18084. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18085. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18086. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18087. Plaintiffs and the Class members do not have an adequate remedy at law.

### 6.  Causes of Action on Behalf of the Florida-Dr. Reddy's Classes

### COUNT 1334
### Violation of the Florida Deceptive and Unfair Trade Practices Act
### (Fla. Stat. Ann. §501.201, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18088. Florida Class Representative Ronald Ragis incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18089. This cause of action is brought on behalf of the Florida-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for

purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18090. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. §501.204(1).

18091. In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017." Fla. Stat. Ann. §501.204(2).

18092. Plaintiffs and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA. *See* Fla. Stat. Ann. §501.203(6)-(7).

18093. Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA. *See* Fla. Stat. Ann. §501.203(8).

18094. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18095. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

18096. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18097. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18098. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18099. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18100. Plaintiffs and the Class members were aggrieved by Defendant's violations of FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18101. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18102. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18103. As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

<div align="center">

**COUNT 1335**
**Unjust Enrichment**
**(Florida Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18104. Florida Class Representative Ronald Ragis incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18105. This cause of action is brought on behalf of the Florida-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18106. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18107. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered an impoverishment because they purchased worthless medications and did not receive the expected benefit therefrom.

18108. Defendant voluntarily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18109. It is unjust and inequitable for the Defendant to retain these benefits without paying the value thereof because the benefits were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18110. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18111. There is no express written contract governing this dispute.

18112. Plaintiffs and the Class members do not have an adequate remedy at law.

### 7.    Causes of Action on Behalf of the Illinois-Dr. Reddy's Classes

### COUNT 1336
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (815 Ill. Comp. Stat. Ann. 505/1, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18113. Illinois Class Representative Renee Chatman incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18114. This cause of action is brought on behalf of the Illinois-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18115. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(c).

18116. Plaintiffs and the Class members are "consumer[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(e).

18117. The Ranitidine-Containing Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(b).

18118. Defendant was and is engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(f).

18119. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception fraud, false pretense, false

promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 Ill. Comp. Stat. Ann. 510/2], approved August 5, 1965, in the conduct of any trade or commerce." 815 Ill. Comp. Stat. Ann. 505/2.

18120. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18121. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFDBPA.

18122. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18123. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18124. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18125. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18126. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Illinois CFDBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18127. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18128. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18129. As a result of Defendant's violations of the Illinois CFDBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFDBPA.

<div align="center">

**COUNT 1337**
**Unjust Enrichment**
**(Illinois Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18130. Illinois Class Representative Renee Chatman incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18131. This cause of action is brought on behalf of the Illinois-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18132. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18133. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18134. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18135. It violates the principles of justice, equity, and good conscience for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18136. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18137. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

8.   **Causes of Action on Behalf of the Iowa-Dr. Reddy's Classes**

**COUNT 1338**
**Violation of the Iowa Private Right of Action for Consumer Frauds Act**
**(Iowa Code Ann. §714H.1, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18138. Iowa Class Representative Brian Nervig incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18139. This cause of action is brought on behalf of the Iowa-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18140. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Iowa Code Ann. §714H.2(7).

18141. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Iowa Code Ann. §714H.2(3).

18142. The Iowa Private Right of Action for Consumer Frauds Act ("Iowa PRACFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise."  Iowa Code Ann. §714H.3(1).

18143. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Iowa PRACFA by knowingly and intentionally misrepresenting,

omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Defendant did so with willful and wanton disregard for the rights and safety of others.

18144. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Iowa PRACFA.

18145. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18146. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18147. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18148. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18149. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Iowa PRACFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18150. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out- of-pocket loss.

18151. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

18152. As a result of Defendants' violations of the Iowa PRACFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Iowa PRACFA.

18153. Additionally, because Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged

herein, were undertaken in willful and wanton disregard for the rights and safety of others, pursuant to Iowa Code §714H.5(4), Plaintiffs and the Class members seek an additonal award of treble damages.

<div align="center">

**COUNT 1339**
**Unjust Enrichment**
**(Iowa Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18154. Iowa Class Representative Brian Nervig incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18155. This cause of action is brought on behalf of the Iowa-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18156. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18157. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18158. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18159. It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18160. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18161. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

<div align="center">

**COUNT 1340**
**Breach of Implied Warranty**
**(Iowa Code Ann. §554.2314)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18162. Iowa Class Representative Brian Nervig incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18163. This cause of action is brought on behalf of the Iowa-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18164. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Iowa Class Representatives and members of the Iowa Class and was in the business of selling such products.

18165. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. IA Code §554.2314.

18166. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18167. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18168. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18169. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18170. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18171. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 9.    Causes of Action on Behalf of the Minnesota-Dr. Reddy's Classes

### COUNT 1341
### Violation of the Minnesota Prevention of Consumer Fraud Act
### (Minn. Stat. Ann. §325F.68, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18172. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18173. This cause of action is brought on behalf of the Minnesota-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18174. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

18175. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

18176. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged." Minn. Stat. Ann. §325F.69(1). Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

18177. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18178. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

18179. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18180. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18181. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18182. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18183. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

18184. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18185. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18186. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

18187. As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

<div align="center">

**COUNT 1342**
**Unjust Enrichment**
**(Minnesota Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18188. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18189. This cause of action is brought on behalf of the Minnesota-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18190. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18191. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18192. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18193. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18194. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18195. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 1343
### Breach of Implied Warranty
### (Minn. Stat. Ann. §336.2-314)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18196. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18197. This cause of action is brought on behalf of the Minnesota-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18198. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

18199. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Minn. Stat. Ann. §336.2-314

18200. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18201. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18202. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18203. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18204. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18205. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

10.     **Causes of Action on Behalf of the New Mexico-Dr. Reddy's Classes**

**COUNT 1344**
**Violation of the New Mexico Unfair Trade Practices Act**
**(N.M. Stat. Ann. §57-12-1, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18206. New Mexico Class Representative Ernesto Sanchez incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18207. This cause of action is brought on behalf of the New Mexico-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18208. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

18209. Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

18210. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person."  N.M. Stat. Ann. §57-12-2(D).  The New Mexico UTPA also makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity

of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." N.M. Stat. Ann. §57-12-2(E).

18211. The New Mexico UTPA makes unlawful specific acts, including:

(a) "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

(b) "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

(c) "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

18212. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18213. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Mexico UTPA, including:

(a) representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and

(d)     acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.

18214. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18215. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18216. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18217. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18218. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18219. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18220. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18221. As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

**COUNT 1345**
**Unjust Enrichment**
**(New Mexico Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18222. New Mexico Class Representative Ernesto Sanchez incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18223. This cause of action is brought on behalf of the New Mexico-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18224. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18225. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18226. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18227. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18228. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18229. There is no express contract governing this dispute.

18230. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 1346
### Breach of Implied Warranty
### (N.M. Stat. Ann. §55-2-314)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18231. New Mexico Class Representatives Ernesto Sanchez incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18232. This cause of action is brought on behalf of the New Mexico-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18233. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

18234. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.M. Stat. Ann. §55-2-314.

18235. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18236. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18237. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18238. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18239. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18240. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

11.   **Causes of Action on Behalf of the Puerto Rico-Dr. Reddy's Classes**

**COUNT 1347**
**Unjust Enrichment**
**(Puerto Rico Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18241. South Carolina Class Representative Gloria Colon incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18242. This cause of action is brought on behalf of the South Carolina-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18243. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18244. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18245. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

18246. Defendants' enrichment – the monies obtained from Plaintiffs' and Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and Class members' impoverishment – i.e., Plaintiffs' and Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

18247. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18248. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18249. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1348**
**Breach of Implied Warranty**
**(P.R. Laws Ann. Tit. 31, §3841)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18250. South Carolina Class Representative Gloria Colon incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18251. This cause of action is brought on behalf of the South Carolina-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18252. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Puerto Rico Class Representatives and members of the Puerto Rico Class and was in the business of selling such products.

18253. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. P.R. Laws. Ann. Tit. 31, §3841.

18254. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18255. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18256. Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18257. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18258. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18259. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 12.      Causes of Action on Behalf of the Texas-Dr. Reddy's Classes

### COUNT 1349
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
### (Tex. Bus. & Com. Code Ann. §17.41, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18260. Texas Class Representative Marianella Villanueva incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18261. This cause of action is brought on behalf of the Texas-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18262. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

18263. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

18264. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

18265. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

18266. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

18267. The Texas DTPA makes unlawful specific acts, including:

(a)    "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

(b)    "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

(c)    "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

18268. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the

- 3664 -

products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18269. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

18270. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18271. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18272. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18273. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18274. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

18275. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18276. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18277. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18278. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became

public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

18279. As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

## COUNT 1350
### Unjust Enrichment
### (Texas Law)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18280. Texas Class Representative Marianella Villanueva incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18281. This cause of action is brought on behalf of the Texas-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18282. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18283. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18284. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18285. It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18286. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18287. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 1351**
**Breach of Implied Warranty**
**(Tex. Bus. & Com. Code Ann. §2-314)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18288. Texas Class Representative Marianella Villanueva incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18289. This cause of action is brought on behalf of the Texas-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18290. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

18291. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Tex. Bus. & Com. Code Ann. §2-314.

18292. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18293. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18294. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18295. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18296. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18297. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

13.    **Causes of Action on Behalf of the Washington-Dr. Reddy's Classes**

**COUNT 1352**
**Violation of the Washington Consumer Protection Act**
**(Wash. Rev. Code Ann. §19.86.010, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18298. Washington Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18299. This cause of action is brought on behalf of the Washington-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18300. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Wash. Rev. Code Ann. §19.86.010(1).

18301. The Ranitidine-Containing Products are "[a]ssets" within the meaning of Wash. Rev. Code Ann. §19.86.010(3).

18302. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Wash. Rev. Code Ann. §19.86.010(2).

18303. The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. §19.86.020.

18304. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging

quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18305. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington CPA.

18306. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18307. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18308. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18309. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18310. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Washington CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18311. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18312. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18313. On June 22, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Wash. Rev. Code §19.86.095 to the Attorney General of the State of Washington.

18314. As a result of Defendant's violations of the Washington CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Washington CPA.

**COUNT 1353**
**Unjust Enrichment**
**(Washington Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18315. Washington Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18316. This cause of action is brought on behalf of the Washington-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18317. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18318. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18319. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18320. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18321. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18322. There is no express contract governing this dispute.

18323. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1354**
**Breach of Implied Warranty**
**(Wash. Rev. Code Ann. §62A 2-314)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18324. Washington Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1219-1256 as though fully set forth herein.

18325. This cause of action is brought on behalf of the Washington-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

18326. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Washington Class Representatives and members of the Washington Class and was in the business of selling such products.

18327. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Wash. Rev. Code §62A 2-314.

18328. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18329. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18330. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18331. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18332. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability

because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18333. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### F.   Causes of Action Against Dr. Reddy's with Respect to Private-Label Product Walmart Equate Ranitidine

18334. For the purposes of the subsequent causes of action against Defendant Dr. Reddy's, Plaintiffs are incorporating the following allegations by reference: paragraphs 36-45 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic ranitidine); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469 (requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 912-916, 917-936 (Walmart's Store-Brand Ranitidine); 1093-1118, 1219-1230 (Dr. Reddy's Store-Brand contract manufacturing); 937-946, 1231-1243 (misrepresentations or omissions of material fact in labeling); 947-961, 1244-1256 (misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

18335. Plaintiffs identified in the table below bring claims against Defendant Dr. Reddy's on behalf of themselves and their respective State Classes under the laws of their respective states.

Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*,

into their respective claims below:

| Plaintiff Name | State(s) of Residence |
|---|---|
| Tangie Sims | Arizona |
| Tina Culclager | Arkansas |
| Jonathan Ferguson | Washington |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Michael Tomlinson | Florida |
| Kathy Jeffries | Georgia |
| Carol Harkins | Illinois |
| Vickie Anderson | Illinois |
| Randy Jones | Louisiana |
| Jennifer Bond | Massachusetts |
| Sandra Erickson-Brown | Minnesota |
| Lora Mauffray | Mississippi |
| Shirley Magee | Mississippi |
| James Adamo | New Jersey |
| Ernesto Sanchez | New Mexico |
| Carrie Martinez | New Mexico |
| George Tapia | New Mexico |
| Richard Froelich | New York |
| Marianella Villanueva | South Carolina, Texas |
| Jeffrey Garrett | Tennessee |
| Rebecca Howard | Tennessee |
| Marilyn Abraham | Texas |
| Dan Zhovtis | Virginia |
| Robert Dewitt | Washington |

1.   **Causes of Action on Behalf of the Arizona-Dr. Reddy's Classes**

**COUNT 1355**
**Violation of the Arizona Consumer Fraud Act**
**(Ariz. Rev. Stat. Ann. §44-1521, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18336. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18337. This cause of action is brought on behalf of the Arizona-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18338. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(6).

18339. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(5).

18340. The Arizona Consumer Fraud Act ("Arizona CFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." Ariz. Rev. Stat. Ann. §44-1522(A).

18341. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Arizona CFA by recklessly, wantonly, knowingly, and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the

- 3679 -

private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18342. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Arizona CFA.

18343. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18344. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18345. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18346. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18347. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

18348. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Arizona CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18349. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18350. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18351. As a result of Defendant's violations of the Arizona CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

## COUNT 1356
## Unjust Enrichment
## (Arizona Law)
## (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18352. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18353. This cause of action is brought on behalf of the Arizona-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18354. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18355. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18356. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18357. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18358. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18359. Plaintiffs and the Class members do not have an adequate remedy at law.

### 2. Causes of Action on Behalf of the Arkansas-Dr. Reddy's Classes

### COUNT 1357
**Violation of the Arkansas Deceptive Trade Practices Act
(Ark. Code Ann. §4-88-101, *et seq.*)
(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18360. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18361. This cause of action is brought on behalf of the Arkansas-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18362. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ark. Code Ann. §4-88-102(5).

18363. The Ranitidine-Containing Products are "[g]oods" within the meaning of Ark. Code Ann. §4-88-102(4).

18364. The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices."  Ark. Code Ann. §4-88-107(a).

18365. The Arkansas DTPA makes unlawful specific acts, including:

    (a)    "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" (Ark. Code Ann. §4-88-107(a)(1));

    (b)    "[a]dvertising the goods or services with the intent not to sell them as advertised" (Ark. Code Ann. §4-88-107(a)(3)); and

    (c)    "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" (Ark. Code Ann. §4-88-107(a)(10)).

18366. The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission . . . ." Ark. Code Ann. §4-88-108(a).

18367. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18368. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Arkansas DTPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

18369. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18370. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18371. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18372. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18373. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

18374. Plaintiffs and the Class members were aggrieved by Defendant's violations of Arkansas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18375. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18376. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18377. As a result of Defendant's violations of the Arkansas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

## COUNT 1358
## Unjust Enrichment
## (Arkansas Law)
## (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18378. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18379. This cause of action is brought on behalf of the Arkansas-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18380. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18381. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18382. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18383. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18384. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18385. There is no valid, legal, and binding contract governing this dispute.

18386. Plaintiffs and the Class members do not have an adequate remedy at law.

<div style="text-align:center">

**COUNT 1359**
**Breach of Implied Warranty**
**(Ark. Code Ann. §4-2-314)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18387. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18388. This cause of action is brought on behalf of the Arkansas-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18389. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arkansas Class Representatives and members of the Arkansas Class and was in the business of selling such products.

18390. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ark. Code. Ann. §4-2-314.

18391. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18392. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18393. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18394. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18395. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18396. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 3. Causes of Action on Behalf of the Colorado-Dr. Reddy's Classes

**COUNT 1360**
**Violation of the Colorado Consumer Protection Act**
**(Colo. Rev. Stat. Ann. §6-1-101, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18397. Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18398. This cause of action is brought on behalf of the Colorado-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18399. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Colo. Rev. Stat. Ann. §6-1-102(6).

18400. The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices "in the course of the person's business, vocation, or occupation."  Colo. Rev. Stat. Ann. §6-1-105(1).

18401. The Colorado CPA makes unlawful specific acts, including:

(a)     "[e]ither knowingly or recklessly mak[ing] a false representation as to the source, sponsorship, approval, or certification of goods, services, or property" (Colo. Rev. Stat. Ann. §6-1-105(1)(b));

(b)     "[r]epresent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another" (Colo. Rev. Stat. Ann. §6-1-105(1)(g));

(c)     "[a]dvertis[ing] goods, services, or property with intent not to sell them as advertised" (Colo. Rev. Stat. Ann. §6-1-105(1)(i));

(d)     "[f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction" (Colo. Rev. Stat. Ann. §6-1-105(1)(u)); and

(e)     "[e]ither knowingly or recklessly engage[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice" (Colo. Rev. Stat. Ann. §6-1-105(1)(kkk)).

18402.  Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18403.  Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Colorado CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; and

(e)     failing to disclose the defective Ranitidine-Containing Products in connection with their sale to the public.

18404. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18405. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18406. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18407. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18408. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and

continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

18409. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Colorado CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18410. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18411. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18412. As a result of Defendant's violations of the Colorado CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

<div align="center">

**COUNT 1361**
**Unjust Enrichment**
**(Colorado Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18413. Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18414. This cause of action is brought on behalf of the Colorado-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18415. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18416. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

18417. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18418. It is unjust and inequitable for the Defendant to retain these benefits without commensurate compensation because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the

Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18419. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18420. Plaintiffs and the Class members do not have an adequate remedy at law.

### 4.      Causes of Action on Behalf of the Florida-Dr. Reddy's Classes

### COUNT 1362
### Violation of the Florida Deceptive and Unfair Trade Practices Act
### (Fla. Stat. Ann. §501.201, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18421. Florida Class Representative Michael Tomlinson incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18422. This cause of action is brought on behalf of the Florida-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18423. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. Ann. §501.204(1).

18424. In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017."  Fla. Stat. Ann. §501.204(2).

18425. Plaintiffs and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA.  *See* Fla. Stat. Ann. §501.203(6)-(7).

18426. Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA.  *See* Fla. Stat. Ann. §501.203(8).

18427. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18428. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

18429. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18430. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18431. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18432. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18433. Plaintiffs and the Class members were aggrieved by Defendant's violations of FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18434. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18435. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18436. As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

<div align="center">

**COUNT 1363**
**Unjust Enrichment**
**(Florida Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18437. Florida Class Representative Michael Tomlinson incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18438. This cause of action is brought on behalf of the Florida-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18439. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18440. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered an impoverishment because they purchased worthless medications and did not receive the expected benefit therefrom.

18441. Defendant voluntarily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18442. It is unjust and inequitable for the Defendant to retain these benefits without paying the value thereof because the benefits were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18443. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18444. There is no express written contract governing this dispute.

18445. Plaintiffs and the Class members do not have an adequate remedy at law.

### 5.      Causes of Action on Behalf of the Georgia-Dr. Reddy's Classes

### COUNT 1364
### Violation of the Georgia Fair Business Practices Act
### (Ga. Code Ann. §10-1-390, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18446. Georgia Class Representative Kathy Jeffries incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18447. This cause of action is brought on behalf of the Georgia-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for

purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18448. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(24).

18449. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(6).

18450. Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Ga. Code Ann. §10-1-392(a)(28).

18451. The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." Ga. Code Ann. §10-1-393(a).

18452. The Georgia FBPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-393(b)(5));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-393(b)(7)); and

(c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-393(b)(9)).

18453. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date;

and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18454. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia FBPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

18455. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18456. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18457. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18458. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18459. Plaintiffs and the Class members reasonably relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

18460. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Georgia FBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18461. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18462. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18463. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous

complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Ga. Code Ann. §10-1-399(b) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

18464. As a result of Defendant's violations of the Georgia FBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Georgia FBPA.

### COUNT 1365
### Unjust Enrichment
### (Georgia Law)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18465. Georgia Class Representative Kathy Jeffries incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18466. This cause of action is brought on behalf of the Georgia-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18467. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18468. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18469. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18470. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18471. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18472. There is no express contract governing this dispute.

18473. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1366**
**Breach of Implied Warranty**
**(Ga. Code Ann. §11-2-314)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18474. Georgia Class Representative Kathy Jeffries incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18475. This cause of action is brought on behalf of the Georgia-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18476. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Georgia Class Representatives and members of the Georgia Class and was in the business of selling such products.

18477. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ga. Code. Ann. §11-2-314.

18478. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18479. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18480. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18481. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18482. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18483. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

6.        **Causes of Action on Behalf of the Illinois-Dr. Reddy's Classes**

**COUNT 1367**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**(815 Ill. Comp. Stat. Ann. 505/1, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18484. Illinois Class Representatives Carol Harkins and Vickie Anderson incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18485. This cause of action is brought on behalf of the Illinois-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18486. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(c).

18487. Plaintiffs and the Class members are "consumer[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(e).

18488. The Ranitidine-Containing Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(b).

18489. Defendant was and is engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(f).

18490. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the

use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 Ill. Comp. Stat. Ann. 510/2], approved August 5, 1965, in the conduct of any trade or commerce." 815 Ill. Comp. Stat. Ann. 505/2.

18491. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18492. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFDBPA.

18493. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18494. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18495. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18496. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18497. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Illinois CFDBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18498. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18499. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18500. As a result of Defendant's violations of the Illinois CFDBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFDBPA.

<div align="center">

**COUNT 1368**
**Unjust Enrichment**
**(Illinois Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18501. Illinois Class Representatives Carol Harkins and Vickie Anderson incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18502. This cause of action is brought on behalf of the Illinois-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18503. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18504. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18505. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18506. It violates the principles of justice, equity, and good conscience for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18507. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18508. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

### 7. Causes of Action on Behalf of the Louisiana-Dr. Reddy's Classes

### COUNT 1369
### Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law
### (La. Stat. Ann. §51:1401, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18509. Louisiana Class Representative Randy Jones incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18510. This cause of action is brought on behalf of the Louisiana-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18511. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of La. Stat. Ann. §51:1402(8).

18512. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of La. Stat. Ann. §51:1402(1).

18513. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of La. Stat. Ann. §51:1402(10).

18514. The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Stat. Ann. §51:1405(A).

18515. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18516. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Louisiana CPL.

18517. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18518. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18519. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18520. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18521. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and

continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

18522. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Louisiana CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18523. Specifically, Plaintiffs and the Class were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18524. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18525. As a result of Defendant's violations of the Louisiana CPL, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Louisiana CPL.

**COUNT 1370**
**Unjust Enrichment**
**(Louisiana Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18526. Louisiana Class Representative Randy Jones incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18527. This cause of action is brought on behalf of the Louisiana-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18528. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18529. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18530. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

18531. Defendants' enrichment – the monies obtained from Plaintiffs for the Ranitidine Containing-Drugs – was the result of Plaintiffs' impoverishment – the receipt by Plaintiffs of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

18532. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-

Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18533. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18534. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 1371**
**Breach of Implied Warranty**
**(La. Stat. Ann. Art. §2520)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18535. Louisiana Class Representative Randy Jones incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18536. This cause of action is brought on behalf of the Louisiana-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18537. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Louisiana Class Representatives and members of the Louisiana Class and was in the business of selling such products.

18538. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the

products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. La. Civ. Code. Ann. §2520.

18539. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18540. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18541. Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18542. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18543. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18544. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 8. Causes of Action on Behalf of the Massachusetts-Dr. Reddy's Classes

### COUNT 1372
### Violation of the Deceptive Acts or Practices Prohibited by Massachusetts Law
### (Mass. Gen. Laws Ann. ch. 93a, §1, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18545. Massachusetts Class Representative Jennifer Bond incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18546. This cause of action is brought on behalf of the Massachusetts-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18547. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(a).

18548. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(b).

18549. The Massachusetts consumer protection law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ann. ch. 93A, §2(a).

18550. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting,

omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18551. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Massachusetts Act.

18552. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18553. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18554. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18555. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18556. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Massachusetts Act because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18557. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18558. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18559. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Mass. Gen. Laws Ann. ch. 93A, §9(3) to Defendant.  Because Defendant failed to adequately remedy its

unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which

Plaintiffs and the Class members are entitled.

18560. As a result of Defendant's violations of the Massachusetts Act, as alleged herein,

Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief

available under the Massachusetts Act.

<div align="center">

**COUNT 1373**
**Unjust Enrichment**
**(Massachusetts Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18561. Massachusetts Class Representative Jennifer Bond incorporates the preceding

allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256

as though fully set forth herein.

18562. This cause of action is brought on behalf of the Massachusetts-Dr. Reddy's Class

(for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's

(for purposes of this Count only, "Defendant") with respect to private-label product Walmart

Equate Ranitidine.

18563. Plaintiffs and the Class members conferred a benefit on Defendant in the form of

payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in

privity with Defendant through said transaction.

18564. In exchange for their payment of the purchase price of Defendant's Ranitidine-

Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18565. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

18566. Defendant's enrichment – the monies obtained from Plaintiffs' and Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and Class members' impoverishment – i.e., Plaintiffs' and Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

18567. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18568. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18569. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 1374
### Breach of Implied Warranty
### (Mass. Gen. Laws Ch. 106 §2-314)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18570. Massachusetts Class Representative Jennifer Bond incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18571. This cause of action is brought on behalf of the Massachusetts-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18572. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Massachusetts Class Representatives and members of the Massachusetts Class and was in the business of selling such products.

18573. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Mass. Gen. Law Ch. 106 §2-314.

18574. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18575. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18576. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18577. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18578. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18579. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

9.    **Causes of Action on Behalf of the Minnesota-Dr. Reddy's Classes**

**COUNT 1375**
**Violation of the Minnesota Prevention of Consumer Fraud Act**
**(Minn. Stat. Ann. §325F.68, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18580. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18581. This cause of action is brought on behalf of the Minnesota-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18582. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

18583. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

18584. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged."  Minn. Stat. Ann. §325F.69(1).  Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

- 3725 -

18585. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18586. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

18587. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18588. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18589. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18590. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18591. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

18592. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18593. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18594. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18595. As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

<div align="center">

**COUNT 1376**
**Unjust Enrichment**
**(Minnesota Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18596. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18597. This cause of action is brought on behalf of the Minnesota-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18598. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18599. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18600. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18601. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18602. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18603. Plaintiffs and the Class members do not have an adequate remedy at law.

<div style="text-align:center">

**COUNT 1377**
**Breach of Implied Warranty**
**(Minn. Stat. Ann. §336.2-314)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18604. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18605. This cause of action is brought on behalf of the Minnesota-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18606. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

18607. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Minn. Stat. Ann. §336.2-314

18608. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18609. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18610. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18611. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18612. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18613. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**10.   Causes of Action on Behalf of the Mississippi-Dr. Reddy's Classes**

**COUNT 1378**
**Unjust Enrichment**
**(Mississippi Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18614. Mississippi Class Representatives Lora Mauffray and Shirley Magee incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18615. This cause of action is brought on behalf of the Mississippi-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18616. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18617. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

18618. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18619. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18620. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18621. There is no express contract governing this dispute.

18622. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1379**
**Breach of Implied Warranty**
**(Miss. Code Ann. §75-2-314)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18623. Mississippi Class Representatives Lora Mauffray and Shirley Magee incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18624. This cause of action is brought on behalf of the Mississippi-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18625. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Mississippi Class Representatives and members of the Mississippi Class and was in the business of selling such products.

18626. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Miss. Code Ann. §75-2-314.

18627. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18628. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18629. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18630. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18631. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18632. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

11.     **Causes of Action on Behalf of the New Jersey-Dr. Reddy's Classes**

## COUNT 1380
### Violation of the New Jersey Consumer Fraud Act
### (N.J. Stat. Ann. §56:8-1, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18633. New Jersey Class Representative James Adamo incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18634. This cause of action is brought on behalf of the New Jersey-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18635. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.J. Stat. Ann. §56:8-1(d).

18636. The Ranitidine-Containing Products are "merchandise" within the meaning of N.J. Stat. Ann. §56:8-1(c).

18637. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Jersey Consumer Fraud Act ("New Jersey CFA") by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  N.J. Stat. Ann. §56:8-1, *et seq.*

18638. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Jersey CFA.

18639. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18640. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18641. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18642. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18643. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Jersey CFA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18644. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18645. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18646. As a result of Defendant's violations of the New Jersey CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Jersey CFA.

**COUNT 1381**
**Unjust Enrichment**
**(New Jersey)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18647. New Jersey Class Representative James Adamo incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18648. This cause of action is brought on behalf of the New Jersey-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18649. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18650. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18651. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18652. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18653. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18654. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

## COUNT 1382
### Breach of Implied Warranty
### (N.J. Stat. Ann. §12A:2-314)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18655. New Jersey Class Representative James Adamo incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18656. This cause of action is brought on behalf of the New Jersey-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18657. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Jersey Class Representatives and members of the New Jersey Class and was in the business of selling such products.

18658. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.J. Stat. Ann. §12A:2-314.

18659. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18660. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18661. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18662. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18663. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18664. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

12.     **Causes of Action on Behalf of the New Mexico-Dr. Reddy's Classes**

**COUNT 1383**
**Violation of the New Mexico Unfair Trade Practices Act**
**(N.M. Stat. Ann. §57-12-1,** *et seq.***)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18665. New Mexico Class Representatives Ernesto Sanchez, Carrie Martinez, and George Tapia incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18666. This cause of action is brought on behalf of the New Mexico-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18667. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

18668. Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

18669. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person."  N.M. Stat. Ann. §57-12-2(D).  The New Mexico UTPA also makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity

of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received

by a person and the price paid." N.M. Stat. Ann. §57-12-2(E).

18670. The New Mexico UTPA makes unlawful specific acts, including:

(a) "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

(b) "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

(c) "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

18671. In the course of its business, Defendant, directly or through its agents, employees,

and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally

misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the

private-label Ranitidine-Containing Products it manufactured, including by (i) packaging

quantities of tablets in bottles greater than could be used completely and stored properly by the

expiration date, particularly when the expiration date on the label was extended beyond a safe and

appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during

which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels

of NDMA as time passed.

18672. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing,

and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or

commerce, in violation of the New Mexico UTPA, including:

(a) representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and

(d)    acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.

18673. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18674. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18675. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18676. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18677. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18678. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18679. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18680. As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

<div align="center">

**COUNT 1384**
**Unjust Enrichment**
**(New Mexico Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18681. New Mexico Class Representatives Ernesto Sanchez, Carrie Martinez, and George Tapia incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18682. This cause of action is brought on behalf of the New Mexico-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18683. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18684. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18685. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18686. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18687. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18688. There is no express contract governing this dispute.

18689. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1385**
**Breach of Implied Warranty**
**(N.M. Stat. Ann. §55-2-314)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18690. New Mexico Class Representatives Ernesto Sanchez, Carrie Martinez, and George Tapia incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18691. This cause of action is brought on behalf of the New Mexico-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18692. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

18693. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.M. Stat. Ann. §55-2-314.

18694. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18695. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18696. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18697. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18698. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18699. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

13. **Causes of Action on Behalf of the New York-Dr. Reddy's Classes**

**COUNT 1386**
**Violation of New York Deceptive Acts and Practices Act**
**(N.Y. Gen. Bus. Law §349)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18700. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18701. This cause of action is brought on behalf of the New York-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18702. Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

18703. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §349(a).

18704. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during

which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18705. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

18706. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18707. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18708. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18709. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18710. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18711. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18712. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18713. As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

**COUNT 1387**
**Violation of the New York False Advertising Act**
**(N.Y. Gen. Bus. Law §350)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18714. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18715. This cause of action is brought on behalf of the New York-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for

purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18716. Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

18717. The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §350.  False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

18718. Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

18719. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the

products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18720. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

18721. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18722. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18723. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18724. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18725. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18726. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18727. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18728. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

18729. As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the New York Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

**COUNT 1388**
**Unjust Enrichment**
**(New York Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18730. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18731. This cause of action is brought on behalf of the New York-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18732. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18733. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18734. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18735. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18736. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18737. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

## COUNT 1389
### Breach of Implied Warranty
### (N.Y. U.C.C. Law §2-314)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18738. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18739. This cause of action is brought on behalf of the New York-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18740. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representatives and members of the New York Class and was in the business of selling such products.

18741. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.Y. U.C.C. Law §2-314.

18742. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18743. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18744. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18745. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18746. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18747. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 14. Causes of Action on Behalf of the South Carolina-Dr. Reddy's Classes

### COUNT 1390
### Violation of the South Carolina Unfair Trade Practices Act
### (S.C. Code Ann. §39-5-10, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18748. South Carolina Class Representative Marianella Villanueva incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18749. This cause of action is brought on behalf of the South Carolina-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18750. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of S.C. Code Ann. §39-5-10(a).

18751. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of S.C. Code Ann. §39-5-10(b).

18752. The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. §39-5-20(a).

18753. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally

misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18754. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the South Carolina UTPA.

18755. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18756. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18757. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18758. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18759. Plaintiffs and the Class members were aggrieved by Defendant's violations of the South Carolina UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18760. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18761. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18762. As a result of Defendant's violations of the South Carolina UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the South Carolina UTPA.

**COUNT 1391**
**Unjust Enrichment**
**(South Carolina)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18763. South Carolina Class Representative Marianella Villanueva incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18764. This cause of action is brought on behalf of the South Carolina-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18765. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18766. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18767. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18768. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18769. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18770. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1392**
**Breach of Implied Warranty**
**(S.C. Code Ann. §36-2-314)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18771. South Carolina Class Representative Marianella Villanueva incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18772. This cause of action is brought on behalf of the South Carolina-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18773. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to South Carolina Class Representatives and members of the South Carolina Class and was in the business of selling such products.

18774. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. S.C. Code Ann. §36-2-314.

18775. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18776. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18777. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18778. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18779. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18780. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 15. Causes of Action on Behalf of the Tennessee-Dr. Reddy's Classes

### COUNT 1393
### Violation of the Tennessee Consumer Protection Act of 1977
### (Tenn. Code Ann. §47-18-101, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18781. Tennessee Class Representatives Jeffrey Garrett and Rebecca Howard incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18782. This cause of action is brought on behalf of the Tennessee-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18783. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tenn. Code Ann. §47-18-103(14).

18784. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tenn. Code Ann. §47-18-103(3).

18785. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tenn. Code Ann. §47-18-103(8).

18786. Defendant was and is engaged in "[t]rade" or "commerce" or "consumer transaction[s]" within the meaning of Tenn. Code Ann. §47-18-103(20).

18787. The Tennessee Consumer Protection Act of 1977 ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. §47-18-104(a).

18788. The Tennessee CPA makes unlawful specific acts, including:

    (a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tenn. Code Ann. §47-18-104(b)(5));

    (b)    "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (Tenn. Code Ann. §47-18-104(b)(7)); and

    (c)    "[a]dvertising goods or services with intent not to sell them as advertised" (Tenn. Code Ann. §47-18-104(b)(9)).

18789. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18790. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Tennessee CPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

18791. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18792. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18793. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18794. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18795. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Tennessee CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18796. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18797. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18798. As a result of Defendant's violations of the Tennessee CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Tennessee CPA.

### COUNT 1394
### Unjust Enrichment
### (Tennessee Law)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18799. Tennessee Class Representatives Jeffrey Garrett and Rebecca Howard incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18800. This cause of action is brought on behalf of the Tennessee-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18801. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18802. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18803. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18804. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18805. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18806. There is no existing, enforceable contract governing this dispute.

18807. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1395**
**Breach of Implied Warranty**
**(Tenn. Code Ann. §47-2-314)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18808. Tennessee Class Representative Jeffrey Garrett and Rebecca Howard incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18809. This cause of action is brought on behalf of the Tennessee-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18810. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Tennessee Class Representatives and members of the Tennessee Class and was in the business of selling such products.

18811. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Tenn. Code Ann. §47-2-314.

18812. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18813. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18814. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18815. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18816. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18817. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

16.     **Causes of Action on Behalf of the Texas-Dr. Reddy's Classes**

**COUNT 1396**
**Violation of the Texas Deceptive Trade Practices-Consumer Protection Act**
**(Tex. Bus. & Com. Code Ann. §17.41,** *et seq.***)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18818. Texas Class Representatives Marianella Villanueva and Marilyn Abraham incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18819. This cause of action is brought on behalf of the Texas-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18820. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

18821. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

18822. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

18823. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

18824. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of

the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."

Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

18825. The Texas DTPA makes unlawful specific acts, including:

    (a)    "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

    (b)    "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

    (c)    "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

18826. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18827. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

      (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

      (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

18828. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18829. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18830. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18831. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18832. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

18833. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18834. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18835. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

18836. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public. In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

18837. As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

<div align="center">

**COUNT 1397**
**Unjust Enrichment**
**(Texas Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18838. Texas Class Representatives Marianella Villanueva and Marilyn Abraham incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18839. This cause of action is brought on behalf of the Texas-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18840. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18841. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18842. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18843. It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18844. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18845. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

## COUNT 1398
### Breach of Implied Warranty
### (Tex. Bus. & Com. Code Ann. §2-314)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18846. Texas Class Representatives Marianella Villanueva and Marilyn Abraham incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18847. This cause of action is brought on behalf of the Texas-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18848. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

18849. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Tex. Bus. & Com. Code Ann. §2-314.

18850. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18851. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18852. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18853. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18854. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18855. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 17. Causes of Action on Behalf of the Virginia-Dr. Reddy's Classes

**COUNT 1399**
**Violation of the Virginia Consumer Protection Act**
**(Va. Code Ann. §59.1-196,** *et seq.***)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

18856. Virginia Class Representative Dan Zhovtis incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18857. This cause of action is brought on behalf of the Virginia-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18858. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Va. Code Ann. §59.1-198.

18859. Defendant was and is a "[s]upplier" within the meaning of Va. Code Ann. §59.1-198.

18860. The Ranitidine-Containing Products are "[g]oods" within the meaning of Va. Code Ann. §59.1-198.

18861. Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Va. Code Ann. §59.1-198.

18862. The Virginia Consumer Protection Act ("Virginia CPA") prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Va. Code Ann. §59.1-200(A).

18863. The Virginia CPA makes unlawful specific acts, including:

> (a) "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" (Va. Code Ann. §59.1-200(A)(5));
>
> (b) "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model" (Va. Code Ann. §59.1-200(A)(6));
>
> (c) "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" (Va. Code Ann. §59.1-200(A)(8)); and
>
> (d) "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" (Va. Code Ann. §59.1-200(A)(14)).

18864. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the

products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18865. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Virginia CPA, including:

> (a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;
>
> (c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and
>
> (d) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

18866. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18867. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18868. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18869. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18870. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

18871. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Virginia CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18872. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18873. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18874. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous

complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

18875. As a result of Defendant's violations of the Virginia CPA, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Virginia CPA.

<div align="center">

**COUNT 1400**
**Unjust Enrichment**
**(Virginia Law)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18876. Virginia Class Representative Dan Zhovtis incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18877. This cause of action is brought on behalf of the Virginia-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18878. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18879. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18880. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18881. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18882. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18883. There is no express contract governing this dispute.

18884. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1401**
**Breach of Implied Warranty**
**(Va. Code Ann. §8.2-314)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18885. Virginia Class Representative Dan Zhovtis incorporates the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18886. This cause of action is brought on behalf of the Virginia-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18887. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Virginia Class Representatives and members of the Virginia Class and was in the business of selling such products.

18888. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Va. Code §8.2-314.

18889. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18890. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18891. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish

privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18892. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18893. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18894. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 18.    Causes of Action on Behalf of the Washington-Dr. Reddy's Classes

### COUNT 1402
### Violation of the Washington Consumer Protection Act
### (Wash. Rev. Code Ann. §19.86.010, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18895. Washington Class Representatives Robert Dewitt and Jonathan Ferguson incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18896. This cause of action is brought on behalf of the Washington-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for

purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18897. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Wash. Rev. Code Ann. §19.86.010(1).

18898. The Ranitidine-Containing Products are "[a]ssets" within the meaning of Wash. Rev. Code Ann. §19.86.010(3).

18899. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Wash. Rev. Code Ann. §19.86.010(2).

18900. The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. §19.86.020.

18901. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18902. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington CPA.

18903. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18904. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18905. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18906. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18907. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Washington CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18908. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18909. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18910. On June 22, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Wash. Rev. Code §19.86.095 to the Attorney General of the State of Washington.

18911. As a result of Defendant's violations of the Washington CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Washington CPA.

### COUNT 1403
### Unjust Enrichment
### (Washington Law)
### (Against Store-Brand Manufacturer Defendant Dr. Reddy's)

18912. Washington Class Representatives Robert Dewitt and Jonathan Ferguson incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18913. This cause of action is brought on behalf of the Washington-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for

purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18914. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18915. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18916. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18917. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18918. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said

benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18919. There is no express contract governing this dispute.

18920. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1404**
**Breach of Implied Warranty**
**(Wash. Rev. Code Ann. §62A 2-314)**
**(Against Store-Brand Manufacturer Defendant Dr. Reddy's)**

</div>

18921. Washington Class Representatives Robert Dewitt and Jonathan Ferguson incorporate the preceding allegations in paragraphs 36-45, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1219-1256 as though fully set forth herein.

18922. This cause of action is brought on behalf of the Washington-Dr. Reddy's Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

18923. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Washington Class Representatives and members of the Washington Class and was in the business of selling such products.

18924. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Wash. Rev. Code §62A 2-314.

18925. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the

expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18926. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18927. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18928. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18929. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18930. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**G.**     **Causes of Action Against Perrigo with Respect to Private-Label Product CVS Health Ranitidine**

18931. For the purposes of the subsequent causes of action against Defendant Perrigo, Plaintiffs are incorporating the following allegations by reference: paragraphs 53-59 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic ranitidine); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469 (requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 912-916, 1005-1029 (CVS's Store-Brand Ranitidine); 1093-1118, 1119-1143 (Perrigo's Store-Brand contract manufacturing); 1030-1040, 1144-1156 (misrepresentations or omissions of material fact in labeling); 1041-1055, 1157-1169 (misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

18932. Plaintiffs identified in the table below bring claims against Defendant Perrigo on behalf of themselves and their respective State Classes under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| Plaintiff Name | State(s) of Residence |
| --- | --- |
| Richard Obrien | California |
| Angel Vega | Connecticut |
| Kathy Jeffries | Georgia |
| Rebecca Sizemore | Indiana |
| Arthur Gamble | Michigan |

| Brad Hoag | Minnesota |
|---|---|
| Ernesto Sanchez | New Mexico |
| Richard Froehlich | New York |
| Chris Troyan | Ohio |
| Patricia Hess | Ohio |
| Gregory Alan Wayland | Texas |
| Marianella Villanueva | Texas |
| Mynetta Hastings | West Virginia |

### 1.    Causes of Action on Behalf of the California-Perrigo Classes

**COUNT 1405**
**Violation of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code §17200, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

18933. California Class Representative Richard Obrien incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

18934. This cause of action is brought on behalf of the California-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

18935. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

18936. Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

18937. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

18938. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL.  These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

18939. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18940. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18941. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18942. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18943. Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, CAL. HEALTH & SAFETY CODE §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

18944. Defendant conduct also consitutes "unfair" business acts or practies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

18945. Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, *see* Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

18946. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18947. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18948. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18949. Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

<div align="center">

**COUNT 1406**
**Violation of the California False Advertising Law**
**(Cal. Bus. & Prof. Code §17500, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

18950. California Class Representative Richard Obrien incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

18951. This cause of action is brought on behalf of the California-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

18952. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

18953. The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code §17500.

18954. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18955. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

18956. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18957. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18958. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18959. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18960. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

18961. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18962. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18963. As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

## COUNT 1407
### Violation of the California Consumers Legal Remedies Act
### (Cal. Civ. Code §1750, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Perrigo)

18964. California Class Representative Richard Obrien incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

18965. This cause of action is brought on behalf of the Californi-Perrigo a Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

18966. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

18967. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

18968. The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

18969. The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code §1770(a).

18970. The California CLRA makes unlawful specific acts, including:

(a) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

(b) "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

(c) "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

(d) "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

18971. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18972. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

18973. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18974. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

18975. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

18976. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

18977. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

18978. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

18979. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

18980. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

18981. Pursuant to Cal. Civ. Code §1780(a), Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or

disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person. One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

## COUNT 1408
### Unjust Enrichment or Quasi-Contract
### (California Law)
### (Against Store-Brand Manufacturer Defendant Perrigo)

18982. California Class Representative Richard Obrien incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

18983. This cause of action is brought on behalf of the California-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

18984. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

18985. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

18986. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

18987. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

18988. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

18989. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1409**
**Breach of Implied Warranty**
**(Cal. Com. Code §2314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

18990. California Class Representative Richard Obrien incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

18991. This cause of action is brought on behalf of the California-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for

purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

18992. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to California Class Representatives and members of the California Class and was in the business of selling such products.

18993. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Cal. Com. Code. §2314.

18994. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

18995. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

18996. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

18997. Further, Plaintiffs and each member of the Class was the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

18998. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

18999. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 2.     Causes of Action on Behalf of the Connecticut-Perrigo Classes

### COUNT 1410
### Violation of the Connecticut Unfair Trade Practices Act
### (Conn. Gen. Stat. Ann. §42-110a, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Perrigo)

19000. Connecticut Class Representative Angel Vega incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19001. This cause of action is brought on behalf of the Connecticut-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19002. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Conn. Gen. Stat. Ann. §42-110a(3).

19003. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. §42-110a(4).

19004. The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. §42-110b(a).

19005. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19006. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Connecticut UTPA.

19007. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19008. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19009. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19010. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19011. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Connecticut UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19012. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19013. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

19014. As a result of Defendant's violations of the Connecticut UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

<div align="center">

**COUNT 1411**
**Unjust Enrichment**
**(Connecticut Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19015. Connecticut Class Representative Angel Vega incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19016. This cause of action is brought on behalf of the Connecticut-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19017. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19018. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19019. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19020. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19021. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19022. Plaintiffs and the Class members do not have an adequate remedy at law.

### 3.    Causes of Action on Behalf of the Georgia-Perrigo Classes

<div align="center">

**COUNT 1412**
**Violation of the Georgia Fair Business Practices Act**
**(Ga. Code Ann. §10-1-390, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19023. Georgia Class Representative Kathy Jeffries incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19024. This cause of action is brought on behalf of the Georgia-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for

purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19025. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(24).

19026. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(6).

19027. Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Ga. Code Ann. §10-1-392(a)(28).

19028. The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." Ga. Code Ann. §10-1-393(a).

19029. The Georgia FBPA makes unlawful specific acts, including:

(a) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-393(b)(5));

(b) "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-393(b)(7)); and

(c) "[a]dvertising goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-393(b)(9)).

19030. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date;

- 3811 -

and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19031. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia FBPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

19032. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19033. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19034. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19035. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19036. Plaintiffs and the Class members reasonably relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

19037. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Georgia FBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19038. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19039. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19040. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous

complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Ga. Code Ann. §10-1-399(b) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

19041. As a result of Defendant's violations of the Georgia FBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Georgia FBPA.

<div align="center">

**COUNT 1413**
**Unjust Enrichment**
**(Georgia Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19042. Georgia Class Representative Kathy Jeffries incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19043. This cause of action is brought on behalf of the Georgia-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19044. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19045. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19046. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19047. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19048. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19049. There is no express contract governing this dispute.

19050. Plaintiffs and the Class members do not have an adequate remedy at law.

4.     **Causes of Action on Behalf of the Indiana-Perrigo Classes**

**COUNT 1414**
**Unjust Enrichment**
**(Indiana Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19051. Indiana Class Representative Rebecca Sizemore incorporates the preceding allegaitons in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19052. This cause of action is brought on behalf of the Indiana-Perrigo Class (for the purposes of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19053. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19054. In exchange for their payment of the purchase prices of Defenadnt's Raniditine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in hight, undisclosied, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19055. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19056. It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19057. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution and disgorgement of the amount of their unjust enrichment is required.

19058. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

<div align="center">

**COUNT 1415**
**Breach of Implied Warranty**
**(Ind. Code Ann. §26-1-2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19059. Indiana Class Representative Rebecca Sizemore incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19060. This cause of action is brought on behalf of Indiana-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19061. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Indiana Class Representatives and members of the Indiana Class and was in the business of selling such products.

19062. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

19063. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

19064. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19065. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

19066. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

19067. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19068. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

19069. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19070. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 5.   Causes of Action on Behalf of the Michigan-Perrigo Classes

### COUNT 1416
### Violation of the Michigan Consumer Protection Act
### (Mich. Comp. Laws Ann. §445.901, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Perrigo)

19071. Michigan Class Representative Arthur Gamble incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19072. This cause of action is brought on behalf of the Michigan-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19073. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(d).

19074. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(g).

19075. The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws Ann. §445.903(1).

19076. The Michigan CPA makes unlawful specific acts, including:

 (a)   "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Mich. Comp. Laws Ann. §445.903(1)(c));

 (b)   "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Mich. Comp. Laws Ann. §445.903(1)(e)); and

 (c)   "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented" (Mich. Comp. Laws Ann. §445.903(1)(g)).

19077. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19078. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Michigan CPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

19079. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19080. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19081. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19082. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

- 3821 -

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19083. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Michigan CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19084. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19085. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19086. As a result of Defendant's violations of the Michigan CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Michigan CPA.

<div align="center">

**COUNT 1417**
**Unjust Enrichment**
**(Michigan Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19087. Michigan Class Representative Arthur Gamble incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19088. This cause of action is brought on behalf of the Michigan-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19089. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19090. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19091. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19092. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19093. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19094. There is no express contract governing this dispute.

19095. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1418**
**Breach of Implied Warranty**
**(Mich. Comp. Laws Ann. §440.2314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19096. Michigan Class Representative Arthur Gamble incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19097. This cause of action is brought on behalf of the Michigan-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19098. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Michigan Class Representatives and members of the Michigan Class and was in the business of selling such products.

19099. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Mich. Comp. Laws Ann. §440.2314.

19100. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19101. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19102. Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19103. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19104. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19105. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 6.   Causes of Action on Behalf of the Minnesota-Perrigo Classes

**COUNT 1419**
**Violation of the Minnesota Prevention of Consumer Fraud Act**
**(Minn. Stat. Ann. §325F.68, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19106. Minnesota Class Representative Brad Hoag incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19107. This cause of action is brought on behalf of the Minnesota-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19108. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

19109. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

19110. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged." Minn. Stat. Ann. §325F.69(1). Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann.

§325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

19111. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19112. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

19113. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19114. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19115. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19116. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19117. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

19118. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19119. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19120. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

19121. As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

<div align="center">

**COUNT 1420**
**Unjust Enrichment**
**(Minnesota Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19122. Minnesota Class Representative Brad Hoag incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19123. This cause of action is brought on behalf of the Minnesota-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19124. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19125. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19126. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19127. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19128. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19129. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1421**
**Breach of Implied Warranty**
**(Minn. Stat. Ann. §336.2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19130. Minnesota Class Representative Brad Hoag incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19131. This cause of action is brought on behalf of the Minnesota-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for

purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19132. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

19133. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Minn. Stat. Ann. §336.2-314

19134. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19135. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19136. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19137. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19138. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19139. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 7.     Causes of Action on Behalf of the New Mexico-Perrigo Classes

#### COUNT 1422
**Violation of the New Mexico Unfair Trade Practices Act
(N.M. Stat. Ann. §57-12-1, *et seq.*)
(Against Store-Brand Manufacturer Defendant Perrigo)**

19140. New Mexico Class Representative Ernesto Sanchez incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19141. This cause of action is brought on behalf of the New Mexico-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19142. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

19143. Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

19144. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person."  N.M. Stat. Ann. §57-12-2(D).  The New Mexico UTPA also makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid."  N.M. Stat. Ann. §57-12-2(E).

19145. The New Mexico UTPA makes unlawful specific acts, including:

(a)     "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

(b)     "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

(c)     "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

19146. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the

private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19147. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Mexico UTPA, including:

(a) representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and

(d) acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.

19148. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19149. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19150. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19151. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19152. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19153. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19154. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19155. As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

## COUNT 1423
### Unjust Enrichment
### (New Mexico Law)
### (Against Store-Brand Manufacturer Defendant Perrigo)

19156. New Mexico Class Representative Ernesto Sanchez incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19157. This cause of action is brought on behalf of the New Mexico-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19158. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19159. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19160. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19161. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19162. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19163. There is no express contract governing this dispute.

19164. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1424**
**Breach of Implied Warranty**
**(N.M. Stat. Ann. §55-2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19165. New Mexico Class Representatives Ernesto Sanchez incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19166. This cause of action is brought on behalf of the New Mexico-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19167. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

19168. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.M. Stat. Ann. §55-2-314.

19169. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19170. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19171. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19172. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19173. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19174. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**8.    Causes of Action on Behalf of the New York-Perrigo Classes**

**COUNT 1425**
**Violation of New York Deceptive Acts and Practices Act**
**(N.Y. Gen. Bus. Law §349)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19175. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19176. This cause of action is brought on behalf of the New York-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19177. Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

19178. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §349(a).

19179. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19180. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

19181. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19182. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19183. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19184. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19185. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19186. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19187. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19188. As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

## COUNT 1426
### Violation of the New York False Advertising Act
### (N.Y. Gen. Bus. Law §350)
### (Against Store-Brand Manufacturer Defendant Perrigo)

19189. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19190. This cause of action is brought on behalf of the New York-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19191. Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

19192. The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

19193. Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or

misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

19194. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19195. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

19196. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19197. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19198. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19199. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19200. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19201. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19202. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19203. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

19204. As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the New York Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

<div align="center">

**COUNT 1427**
**Unjust Enrichment**
**(New York Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19205. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19206. This cause of action is brought on behalf of the New York-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19207. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19208. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19209. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19210. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19211. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19212. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

## COUNT 1428
### Breach of Implied Warranty
### (N.Y. U.C.C. Law §2-314)
### (Against Store-Brand Manufacturer Defendant Perrigo)

19213. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19214. This cause of action is brought on behalf of the New York-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19215. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representatives and members of the New York Class and was in the business of selling such products.

19216. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.Y. U.C.C. Law §2-314.

19217. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19218. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19219. Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19220. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19221. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19222. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

9.      **Causes of Action on Behalf of the Ohio-Perrigo Classes**

**COUNT 1429**
**Unjust Enrichment**
**(Ohio Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19223. Ohio Class Representatives Chris Troyan and Patricia Hess incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19224. This cause of action is brought on behalf of the Ohio-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19225. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19226. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19227. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19228. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19229. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19230. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 1430**
**Breach of Implied Warranty**
**(Ohio Rev. Code Ann. §1302.27)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19231. Ohio Class Representatives Chris Troyan and Patricia Hess incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19232. This cause of action is brought on behalf of the Ohio-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19233. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Ohio Class Representatives and members of the Ohio Class and was in the business of selling such products.

19234. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ohio Rev. Code Ann. §1302.27.

19235. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19236. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19237. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19238. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19239. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19240. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 10.    Causes of Action on Behalf of the Texas-Perrigo Classes

### COUNT 1431
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
### (Tex. Bus. & Com. Code Ann. §17.41, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Perrigo)

19241. Texas Class Representatives Gregory Alan Wayland and Marianella Villanueva incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19242. This cause of action is brought on behalf of the Texas-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19243. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

19244. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

19245. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

19246. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

19247. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or

commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

19248. The Texas DTPA makes unlawful specific acts, including:

(a)　"representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

(b)　"representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

(c)　"advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

19249. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19250. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

    (a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

    (c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

19251. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19252. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19253. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19254. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19255. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and

continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

19256. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19257. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19258. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19259. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

19260. As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

<div align="center">

**COUNT 1432**
**Unjust Enrichment**
**(Texas Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19261. Texas Class Representatives Gregory Alan Wayland and Marianella Villanueva incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19262. This cause of action is brought on behalf of the Texas-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19263. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19264. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19265. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19266. It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19267. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19268. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

## COUNT 1433
### Breach of Implied Warranty
### (Tex. Bus. & Com. Code Ann. §2-314)
### (Against Store-Brand Manufacturer Defendant Perrigo)

19269. Texas Class Representatives Gregory Alan Wayland and Marianella Villanueva incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19270. This cause of action is brought on behalf of the Texas-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19271. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

19272. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Tex. Bus. & Com. Code Ann. §2-314.

19273. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19274. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19275. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19276. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19277. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19278. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 11.    Causes of Action on Behalf of the West Virginia-Perrigo Classes

### COUNT 1434
### Violation of the West Virginia Consumer Credit and Protection Act
### (W. Va. Code Ann. §46A-1-101, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Perrigo)

19279. West Virginia Class Representative Mynetta Hastings incorporates the preceding allegations in the paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19280. This cause of action is brought on behalf of the West Virginia-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19281. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of W. Va. Code Ann. §46A-1-102(31).

19282. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of W. Va. Code Ann. §§46A-1-102(12) and 46A-6-102(2).

19283. The OTC Ranitidine-Containing Products are "[g]oods" within the meaning of W. Va. Code Ann. §46A-1-102(21).

19284. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of W. Va. Code Ann. §46A-6-102(6).

19285. The West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts of practices in the conduct of any trade or commerce." W. Va. Code Ann. §46A-6-104.

19286. The West Virginia CCPA makes unlawful specific acts, including:

(a) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (W. Va. Code Ann. §46A-6-102(7)(E));

(b) "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (W. Va. Code Ann. §46A-6-102(7)(G));

(c) "[a]dvertising goods or services with intent not to sell them as advertised" (W. Va. Code Ann. §46A-6-102(7)(I));

(d) "[e]ngaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding" (W. Va. Code Ann. §46A-6-102(7)(L)); and

(e) "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby" (W. Va. Code Ann. §46A-6-102(7)(M)).

19287. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the West Virginia CCPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products, including (i) packaging quantities of tablets in

bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19288. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding OTC Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the West Virginia CCPA, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)    engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

19289. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of OTC Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19290. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19291. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of OTC Ranitidine-Containing Products.

19292. The facts regarding OTC Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to OTC Ranitidine-Containing Products.

19293. Plaintiffs and the Class members were aggrieved by Defendant's violations of the West Virginia CCPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19294. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding OTC Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19295. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19296. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of OTC Ranitidine-Containing Products' defects

became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to W. Va. Code Ann. §46A-6-106(c) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

19297. As a result of Defendant's violations of the West Virginia CCPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the West Virginia CCPA.

## COUNT 1435
## Unjust Enrichment
## (West Virginia Law)
## (Against Store-Brand Manufacturer Defendant Perrigo)

19298. West Virginia Class Representative Mynetta Hastings incorporates the preceding allegations in the paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19299. This cause of action is brought on behalf of the West Virginia-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19300. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19301. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period

during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19302. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19303. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19304. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19305. There is no express contract governing this dispute.

19306. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1436**
**Breach of Implied Warranty**
**(W. Va. Code Ann. §46A-2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19307. West Virginia Class Representative Mynetta Hastings incorporates the preceding allegations in the paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1005-1055, and 1093-1169 as though fully set forth herein.

19308. This cause of action is brought on behalf of the West Virginia-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

19309. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to West Virginia Class Representatives and members of the West Virginia Class and was in the business of selling such products.

19310. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. W. Va. Code §46-2-314.

19311. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19312. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19313. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish

privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19314. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19315. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19316. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### H.  Causes of Action Against Perrigo with Respect to Private-Label Product Rite-Aid Ranitidine

19317. For the purposes of the subsequent causes of action against Defendant Perrigo, Plaintiffs are incorporating the following allegations by reference: paragraphs 53-59 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic ranitidine); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469

(requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 912-916, 1056-1066 (Rite Aid's Store-Brand Ranitidine); 1093-1118, 1119-1143 (Perrigo's Store-Brand contract manufacturing); 1067-1077, 1144-1156 (misrepresentations or omissions of material fact in labeling); 1078-1092, 1157-1169 (misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

19318. Plaintiffs identified in the table below bring claims against Defendant Perrigo on behalf of themselves and their respective State Classes under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| Plaintiff Name | State(s) of Residence |
|---|---|
| Golbenaz Bakhtiar | California |
| Richard Obrien | California |
| Janet Asbury | Kentucky |
| Richard Froehlich | New York |

### 1.    Causes of Action on Behalf of the California-Perrigo Classes

### COUNT 1437
**Violation of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code §17200, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19319. California Class Representatives Golbenaz Bakhtiar and Richard Obrien incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1056-1092, and 1093-1169 as though fully set forth herein.

19320. This cause of action is brought on behalf of the California-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

19321. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

19322. Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

19323. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

19324. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL.  These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

19325. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19326. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19327. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19328. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19329. Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, CAL. HEALTH & SAFETY CODE §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

19330. Defendant conduct also consitutes "unfair" business acts or practies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

19331. Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, *see* Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

19332. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19333. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19334. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19335. Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

<div align="center">

**COUNT 1438**
**Violation of the California False Advertising Law**
**(Cal. Bus. & Prof. Code §17500, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19336. California Class Representatives Golbenaz Bakhtiar and Richard Obrien incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1056-1092, and 1093-1169 as though fully set forth herein.

19337. This cause of action is brought on behalf of the California-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

19338. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

19339. The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this

state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code §17500.

19340. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19341. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

19342. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19343. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19344. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19345. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19346. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19347. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19348. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

19349. As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

<div align="center">

**COUNT 1439**
**Violation of the California Consumers Legal Remedies Act**
**(Cal. Civ. Code §1750,** *et seq.***)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19350. California Class Representatives Golbenaz Bakhtiar and Richard Obrien incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1056-1092, and 1093-1169 as though fully set forth herein.

19351. This cause of action is brought on behalf of the California-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

19352. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

19353. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

19354. The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

19355. The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §1770(a).

19356. The California CLRA makes unlawful specific acts, including:

    (a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

    (b)    "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

    (c)    "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

    (d)    "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

19357. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19358. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

19359. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19360. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19361. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19362. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19363. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

19364. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19365. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19366. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

19367. Pursuant to Cal. Civ. Code §1780(a), Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

## COUNT 1440
### Unjust Enrichment or Quasi-Contract
### (California Law)
### (Against Store-Brand Manufacturer Defendant Perrigo)

19368. California Class Representatives Golbenaz Bakhtiar and Richard Obrien incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1056-1092, and 1093-1169 as though fully set forth herein.

19369. This cause of action is brought on behalf of the California-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

19370. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19371. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19372. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19373. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19374. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19375. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1441**
**Breach of Implied Warranty**
**(Cal. Com. Code §2314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19376. California Class Representatives Golbenaz Bakhtiar and Richard Obrien incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1056-1092, and 1093-1169 as though fully set forth herein.

19377. This cause of action is brought on behalf of the California-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

19378. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to California Class Representatives and members of the California Class and was in the business of selling such products.

19379. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Cal. Com. Code. §2314.

19380. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19381. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19382. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19383. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19384. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19385. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

2.      **Causes of Action on Behalf of the Kentucky-Perrigo Classes**

**COUNT 1442**
**Violation of the Kentucky Consumer Protection Act**
**(Ky. Rev. Stat. Ann. §367.110, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19386. Kentucky Class Representative Janet Asbury incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1056-1092, and 1093-1169 as though fully set forth herein.

19387. This cause of action is brought on behalf of the Kentucky-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

19388. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ky. Rev. Stat. Ann. §367.110(1).

19389. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Ky. Rev. Stat. Ann. §367.110(2).

19390. The Kentucky Consumer Protection Act ("Kentucky CPA") prohibits "[u]nfair, [unconscionable], false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. Ann. §367.170(1)-(2).

19391. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date;

and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19392. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Kentucky CPA.

19393. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19394. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19395. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19396. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19397. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Kentucky CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19398. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19399. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19400. As a result of Defendant's violations of the Kentucky CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Kentucky CPA.

### COUNT 1443
### Unjust Enrichment
### (Kentucky Law)
### (Against Store-Brand Manufacturer Defendant Perrigo)

19401. Kentucky Class Representative Janet Asbury incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1056-1092, and 1093-1169 as though fully set forth herein.

19402. This cause of action is brought on behalf of the Kentucky-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for

purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

19403. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19404. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19405. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19406. It would be inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19407. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the

value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19408. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1444**
**Violation of the Kentucky Consumer Protection Act**
**(Ky. Rev. Stat. Ann. §367.110, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19409. Kentucky Class Representative Janet Asbury incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1056-1092, and 1093-1169 as though fully set forth herein.

19410. This cause of action is brought on behalf of the Kentucky-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

19411. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Kentucky Class Representatives and members of the Kentucky Class and was in the business of selling such products.

19412. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ky. Rev. Stat. Ann. §355.2-314.

19413. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used

completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19414. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19415. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19416. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19417. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19418. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

3.     **Causes of Action on Behalf of the New York Class**

**COUNT 1445**
**Violation of New York Deceptive Acts and Practices Act**
**(N.Y. Gen. Bus. Law §349)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19419. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1056-1092, and 1093-1169 as though fully set forth herein.

19420. This cause of action is brought on behalf of the New York-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

19421. Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

19422. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §349(a).

19423. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during

which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19424. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

19425. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19426. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19427. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19428. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19429. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19430. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19431. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19432. As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

<div align="center">

**COUNT 1446**
**Violation of the New York False Advertising Act**
**(N.Y. Gen. Bus. Law §350)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19433. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1056-1092, and 1093-1169 as though fully set forth herein.

19434. This cause of action is brought on behalf of the New York-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for

purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

19435. Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

19436. The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

19437. Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

19438. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the

products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19439. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

19440. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19441. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19442. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19443. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19444. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19445. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19446. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19447. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

19448. As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the New York Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

## COUNT 1447
## Unjust Enrichment
## (New York Law)
## (Against Store-Brand Manufacturer Defendant Perrigo)

19449. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1056-1092, and 1093-1169 as though fully set forth herein.

19450. This cause of action is brought on behalf of the New York-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

19451. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19452. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19453. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19454. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19455. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19456. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 1448**
**Breach of Implied Warranty**
**(N.Y. U.C.C. Law §2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19457. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 1056-1092, and 1093-1169 as though fully set forth herein.

19458. This cause of action is brought on behalf of the New York-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

19459. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representatives and members of the New York Class and was in the business of selling such products.

19460. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.Y. U.C.C. Law §2-314.

19461. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19462. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19463. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19464. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19465. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19466. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

I.      **Causes of Action Against Perrigo with Respect to Private-Label Product Walgreens Wal-Zan**

19467. For the purposes of the subsequent causes of action against Defendant Perrigo, Plaintiffs are incorporating the following allegations by reference: paragraphs 53-59 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic ranitidine); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469 (requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 912-916, 962-978 (Walgreens' Store-Brand Ranitidine); 1093-1118, 1119-1143 (Perrigo's Store-Brand contract manufacturing); 979-989, 1144-1156 (misrepresentations or omissions of material fact in labeling); 990-1004, 1157-1169 (misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

19468. Plaintiffs identified in the table below bring claims against Defendant Perrigo on behalf of themselves and their respective State Classes under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| Plaintiff Name | State(s) of Residence |
|----------------|----------------------|
| Tangie Sims | Arizona |
| Tina Culclager | Arkansas |
| Golbenaz Bakhtiar | California |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Angel Vega | Connecticut |
| Ronald Ragis | Florida |
| Renee Chatman | Illinois |
| Brian Nervig | Iowa |
| Sandra Erickson-Brown | Minnesota |
| Ernesto Sanchez | New Mexico |
| Gloria Colon | Puerto Rico |
| Marianella Villanueva | Texas |
| Jonathan Ferguson | Washington |

**1.    Causes of Action on Behalf of the Arizona-Perrigo Classes**

**COUNT 1449**
**Violation of the Arizona Consumer Fraud Act**
**(Ariz. Rev. Stat. Ann. §44-1521, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19469. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19470. This cause of action is brought on behalf of the Arizona-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19471. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(6).

19472. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(5).

19473. The Arizona Consumer Fraud Act ("Arizona CFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." Ariz. Rev. Stat. Ann. §44-1522(A).

19474. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Arizona CFA by recklessly, wantonly, knowingly, and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19475. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Arizona CFA.

19476. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19477. Defendant's misreprsentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a unform manner.

19478. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19479. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19480. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

19481. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Arizona CFA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19482. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19483. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19484. As a result of Defendant's violations of the Arizona CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

## COUNT 1450
### Unjust Enrichment
### (Arizona Law)
### (Against Store-Brand Manufacturer Defendant Perrigo)

19485. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19486. This cause of action is brought on behalf of the Arizona-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19487. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19488. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19489. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19490. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19491. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19492. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1451**
**Breach of Implied Warranty**
**(Ariz. Rev. State. Ann. §47-2314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19493. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19494. This cause of action is brought on behalf of the Arizona-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19495. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arizona Class Representatives and members of the Arizona Class and was in the business of selling such products.

19496. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ariz. Rev. Stat. Ann. §47-2314.

19497. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19498. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19499. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19500. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19501. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19502. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

2.  **Causes of Action on Behalf of the Arkansas-Perrigo Classes**

**COUNT 1452**
**Violation of the Arkansas Deceptive Trade Practices Act**
**(Ark. Code Ann. §4-88-101, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19503. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19504. This cause of action is brought on behalf of the Arkansas-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19505. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ark. Code Ann. §4-88-102(5).

19506. The Ranitidine-Containing Products are "[g]oods" within the meaning of Ark. Code Ann. §4-88-102(4).

19507. The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices."  Ark. Code Ann. §4-88-107(a).

19508. The Arkansas DTPA makes unlawful specific acts, including:

(a)   "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" (Ark. Code Ann. §4-88-107(a)(1));

(b)   "[a]dvertising the goods or services with the intent not to sell them as advertised" (Ark. Code Ann. §4-88-107(a)(3)); and

(c)   "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" (Ark. Code Ann. §4-88-107(a)(10)).

19509. The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission . . . ." Ark. Code Ann. §4-88-108(a).

19510. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19511. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Arkansas DTPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

19512. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19513. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19514. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19515. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19516. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

19517. Plaintiffs and the Class members were aggrieved by Defendant's violations of Arkansas DTPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19518. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19519. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19520. As a result of Defendant's violations of the Arkansas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

<div align="center">

**COUNT 1453**
**Unjust Enrichment**
**(Arkansas Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19521. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19522. This cause of action is brought on behalf of the Arkansas-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19523. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19524. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19525. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19526. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19527. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19528. There is no valid, legal, and binding contract governing this dispute.

19529. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1454**
**Breach of Implied Warranty**
**(Ark. Code Ann. §4-2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19530. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19531. This cause of action is brought on behalf of the Arkansas-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19532. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arkansas Class Representatives and members of the Arkansas Class and was in the business of selling such products.

19533. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ark. Code. Ann. §4-2-314.

19534. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19535. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19536. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19537. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19538. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19539. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 3.    Causes of Action on Behalf of the California-Perrigo Classes

### COUNT 1455
### Violation of the California Unfair Competition Law
### (Cal. Bus. & Prof. Code §17200, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Perrigo)

19540. California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19541. This cause of action is brought on behalf of the California-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19542. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

19543. Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

19544. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus,

resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

19545. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL.  These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

19546. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19547. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19548. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19549. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19550. Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, CAL. HEALTH & SAFETY CODE §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

19551. Defendant conduct also consitutes "unfair" business acts or practies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

19552. Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400,

111440, 111445, 111450; the Consumer Legal Remedies Act, *see* Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

19553. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19554. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19555. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19556. Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

**COUNT 1456**
**Violation of the California False Advertising Law**
**(Cal. Bus. & Prof. Code §17500, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19557. California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19558. This cause of action is brought on behalf of the California-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19559. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

19560. The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code §17500.

19561. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be

used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19562. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

  (a)  representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

  (b)  representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

  (c)  advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

  (d)  engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

19563. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19564. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19565. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19566. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19567. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19568. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19569. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19570. As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

## COUNT 1457
### Violation of the California Consumers Legal Remedies Act
### (Cal. Civ. Code §1750, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Perrigo)

19571. California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19572. This cause of action is brought on behalf of the California-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19573. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

19574. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

19575. The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

19576. The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §1770(a).

19577. The California CLRA makes unlawful specific acts, including:

(a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

(c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

(d)     "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

19578. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19579. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

19580. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19581. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19582. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19583. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19584. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

19585. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19586. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19587. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

19588. Pursuant to Cal. Civ. Code §1780(a), Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or

disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

<div align="center">

**COUNT 1458**
**Unjust Enrichment or Quasi-Contract**
**(California Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19589. California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19590. This cause of action is brought on behalf of the California-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19591. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19592. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19593. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19594. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19595. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19596. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1459**
**Breach of Implied Warranty**
**(Cal. Com. Code §2314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19597. California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19598. This cause of action is brought on behalf of the California-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19599. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to California Class Representatives and members of the California Class and was in the business of selling such products.

19600. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Cal. Com. Code. §2314.

19601. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19602. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19603. Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19604. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19605. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19606. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 4. Causes of Action on Behalf of the Colorado-Perrigo Classes

### COUNT 1460
### Violation of the Colorado Consumer Protection Act
### (Colo. Rev. Stat. Ann. §6-1-101, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Perrigo)

19607. Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19608. This cause of action is brought on behalf of the Colorado-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19609. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Colo. Rev. Stat. Ann. §6-1-102(6).

19610. The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices "in the course of the person's business, vocation, or occupation."  Colo. Rev. Stat. Ann. §6-1-105(1).

19611. The Colorado CPA makes unlawful specific acts, including:

(a)     "[e]ither knowingly or recklessly mak[ing] a false representation as to the source, sponsorship, approval, or certification of goods, services, or property" (Colo. Rev. Stat. Ann. §6-1-105(1)(b));

(b)     "[r]epresent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another" (Colo. Rev. Stat. Ann. §6-1-105(1)(g));

(c)     "[a]dvertis[ing] goods, services, or property with intent not to sell them as advertised" (Colo. Rev. Stat. Ann. §6-1-105(1)(i));

(d)     "[f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction" (Colo. Rev. Stat. Ann. §6-1-105(1)(u)); and

(e)     "[e]ither knowingly or recklessly engage[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice" (Colo. Rev. Stat. Ann. §6-1-105(1)(kkk)).

19612. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19613. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Colorado CPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; and

(e)     failing to disclose the defective Ranitidine-Containing Products in connection with their sale to the public.

19614. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19615. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19616. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19617. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19618. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

19619. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Colorado CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19620. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19621. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19622. As a result of Defendant's violations of the Colorado CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

<div align="center">

**COUNT 1461**
**Unjust Enrichment**
**(Colorado Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19623. Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19624. This cause of action is brought on behalf of the Colorado-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19625. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19626. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

19627. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19628. It is unjust and inequitable for the Defendant to retain these benefits without commensurate compensation because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19629. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19630. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1462**
**Breach of Implied Warranty**
**(Colo. Rev. Stat. Ann. §4-2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19631. Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19632. This cause of action is brought on behalf of the Colorado-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19633. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19634. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

19635. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19636. It is unjust and inequitable for the Defendant to retain these benefits without commensurate compensation because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19637. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19638. Plaintiffs and the Class members do not have an adequate remedy at law.

**5.      Causes of Action on Behalf of the Connecticut-Perrigo Classes**

**COUNT 1463**
**Violation of the Connecticut Unfair Trade Practices Act**
**(Conn. Gen. Stat. Ann. §42-110a, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19639. Connecticut Class Representative Angel Vega incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19640. This cause of action is brought on behalf of the Connecticut-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19641. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Conn. Gen. Stat. Ann. §42-110a(3).

19642. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. §42-110a(4).

19643. The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. §42-110b(a).

19644. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date

on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19645. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Connecticut UTPA.

19646. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19647. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19648. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19649. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19650. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Connecticut UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19651. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19652. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19653. As a result of Defendant's violations of the Connecticut UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

### COUNT 1464
### Unjust Enrichment
### (Connecticut Law)
### (Against Store-Brand Manufacturer Defendant Perrigo)

19654. Connecticut Class Representative Angel Vega incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19655. This cause of action is brought on behalf of the Connecticut-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for

purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19656. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19657. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19658. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19659. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19660. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19661. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1465**
**Breach of Implied Warranty**
**(Conn. Gen. Stat. Ann. §42a-2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19662. Connecticut Class Representative Angel Vega incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19663. This cause of action is brought on behalf of the Connecticut-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19664. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Connecticut Class Representatives and members of the Connecticut Class and was in the business of selling such products.

19665. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Conn. Gen. Stat. Ann. §42a-2-314.

19666. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19667. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19668. Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19669. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19670. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19671. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

6.      **Causes of Action on Behalf of the Florida-Perrigo Classes**

### COUNT 1466
### Violation of the Florida Deceptive and Unfair Trade Practices Act
### (Fla. Stat. Ann. §501.201, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Perrigo)

19672. Florida Class Representative Ronald Ragis incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19673. This cause of action is brought on behalf of the Florida-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19674. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. Ann. §501.204(1).

19675. In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017."  Fla. Stat. Ann. §501.204(2).

19676. Plaintiffs and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA.  *See* Fla. Stat. Ann. §501.203(6)-(7).

19677. Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA.  *See* Fla. Stat. Ann. §501.203(8).

19678. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to

disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19679. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

19680. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19681. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19682. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19683. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19684. Plaintiffs and the Class members were aggrieved by Defendant's violations of FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19685. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19686. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19687. As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

**COUNT 1467**
**Unjust Enrichment**
**(Florida Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19688. Florida Class Representative Ronald Ragis incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19689. This cause of action is brought on behalf of the Florida-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19690. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19691. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members suffered an impoverishment because they purchased worthless medications and did not receive the expected benefit therefrom.

19692. Defendant voluntarily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration

dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19693. It is unjust and inequitable for the Defendant to retain these benefits without paying the value thereof because the benefits were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19694. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19695. There is no express written contract governing this dispute.

19696. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1468**
**Breach of Implied Warranty**
**(Fla. Stat. Ann. §672.314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19697. Florida Class Representative Ronald Ragis incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19698. This cause of action is brought on behalf of the Florida-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19699. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Florida Class Representatives and members of the Florida Class and was in the business of selling such products.

19700. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Fla. Stat. Ann. §672.314.

19701. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19702. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19703. Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19704. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19705. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19706. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 7.      Causes of Action on Behalf of the Illinois-Perrigo Classes

### COUNT 1469
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (815 Ill. Comp. Stat. Ann. 505/1, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Perrigo)

19707. Illinois Class Representative Renee Chatman incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19708. This cause of action is brought on behalf of the Illinois-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19709. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(c).

19710. Plaintiffs and the Class members are "consumer[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(e).

19711. The Ranitidine-Containing Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(b).

19712. Defendant was and is engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(f).

19713. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 Ill. Comp. Stat. Ann. 510/2], approved August 5, 1965, in the conduct of any trade or commerce."  815 Ill. Comp. Stat. Ann. 505/2.

19714. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19715. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFDBPA.

19716. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19717. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19718. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19719. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19720. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Illinois CFDBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19721. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19722. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19723. As a result of Defendant's violations of the Illinois CFDBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFDBPA.

**COUNT 1470**
**Unjust Enrichment**
**(Illinois Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19724. Illinois Class Representative Renee Chatman incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19725. This cause of action is brought on behalf of the Illinois-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19726. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19727. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19728. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19729. It violates the principles of justice, equity, and good conscience for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19730. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19731. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

### COUNT 1471
### Breach of Implied Warranty
### (810 Ill. Comp. Stat. Ann. 5/2-314)
### (Against Store-Brand Manufacturer Defendant Perrigo)

19732. Illinois Class Representative Renee Chatman incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19733. This cause of action is brought on behalf of the Illinois-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19734. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Illinois Class Representatives and members of the Illinois Class and was in the business of selling such products.

19735. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. 810 Ill. Comp. Stat. Ann. 5/2-314.

19736. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used

completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19737. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19738. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19739. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19740. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19741. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

8.   **Causes of Action on Behalf of the Iowa-Perrigo Classes**

**COUNT 1472**
**Violation of the Iowa Private Right of Action for Consumer Frauds Act**
**(Iowa Code Ann. §714H.1, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19742. Iowa Class Representative Brian Nervig incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19743. This cause of action is brought on behalf of the Iowa-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19744. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Iowa Code Ann. §714H.2(7).

19745. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Iowa Code Ann. §714H.2(3).

19746. The Iowa Private Right of Action for Consumer Frauds Act ("Iowa PRACFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise."  Iowa Code Ann. §714H.3(1).

19747. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Iowa PRACFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label

Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Defendant did so with willful and wanton disregard for the rights and safety of others.

19748. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Iowa PRACFA.

19749. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19750. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19751. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19752. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19753. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Iowa PRACFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19754. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out- of-pocket loss.

19755. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

19756. As a result of Defendants' violations of the Iowa PRACFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Iowa PRACFA.

19757. Additionally, because Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged

herein, were undertaken in willful and wanton disregard for the rights and safety of others, pursuant to Iowa Code §714H.5(4), Plaintiffs and the Class members seek an additonal award of treble damages.

<div align="center">

**COUNT 1473**
**Unjust Enrichment**
**(Iowa Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19758. Iowa Class Representative Brian Nervig incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19759. This cause of action is brought on behalf of the Iowa-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19760. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19761. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19762. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19763. It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19764. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19765. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

<div align="center">

**COUNT 1474**
**Breach of Implied Warranty**
**(Iowa Code Ann. §554.2314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19766. Iowa Class Representative Brian Nervig incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19767. This cause of action is brought on behalf of the Iowa-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19768. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Iowa Class Representatives and members of the Iowa Class and was in the business of selling such products.

19769. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. IA Code §554.2314.

19770. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19771. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19772. Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19773. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19774. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability

because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19775. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 9.   Causes of Action on Behalf of the Minnesota-Perrigo Classes

### COUNT 1475
### Violation of the Minnesota Prevention of Consumer Fraud Act
### (Minn. Stat. Ann. §325F.68, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Perrigo)

19776. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19777. This cause of action is brought on behalf of the Minnesota-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19778. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

19779. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

19780. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely

thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged." Minn. Stat. Ann. §325F.69(1). Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

19781. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19782. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

19783. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19784. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19785. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19786. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19787. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

19788. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19789. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19790. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19791. As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

**COUNT 1476**
**Unjust Enrichment**
**(Minnesota Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19792. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19793. This cause of action is brought on behalf of the Minnesota-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19794. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19795. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19796. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19797. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19798. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19799. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1477**
**Breach of Implied Warranty**
**(Minn. Stat. Ann. §336.2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19800. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19801. This cause of action is brought on behalf of the Minnesota-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19802. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

19803. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Minn. Stat. Ann. §336.2-314

19804. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19805. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19806. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19807. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19808. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19809. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

10.     **Causes of Action on Behalf of the New Mexico-Perrigo Classes**

**COUNT 1478**
**Violation of the New Mexico Unfair Trade Practices Act**
**(N.M. Stat. Ann. §57-12-1, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19810. New Mexico Class Representative Ernesto Sanchez incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19811. This cause of action is brought on behalf of the New Mexico-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19812. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

19813. Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

19814. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person."  N.M. Stat. Ann. §57-12-2(D).  The New Mexico UTPA also makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity

of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid."  N.M. Stat. Ann. §57-12-2(E).

19815. The New Mexico UTPA makes unlawful specific acts, including:

(a)    "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

(b)    "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

(c)    "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

19816. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19817. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Mexico UTPA, including:

(a)    representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and

(d)     acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.

19818. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19819. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19820. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19821. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19822. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19823. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19824. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19825. As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

<div align="center">

**COUNT 1479**
**Unjust Enrichment**
**(New Mexico Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19826. New Mexico Class Representative Ernesto Sanchez incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19827. This cause of action is brought on behalf of the New Mexico-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19828. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19829. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19830. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19831. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19832. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19833. There is no express contract governing this dispute.

19834. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1480**
**Breach of Implied Warranty**
**(N.M. Stat. Ann. §55-2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19835. New Mexico Class Representatives Ernesto Sanchez incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19836. This cause of action is brought on behalf of the New Mexico-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19837. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

19838. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.M. Stat. Ann. §55-2-314.

19839. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19840. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19841. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19842. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19843. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19844. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 11.     Causes of Action on Behalf of the Puerto Rico-Perrigo Classes

### COUNT 1481
### Unjust Enrichment
### (Puerto Rico Law)
### (Against Store-Brand Manufacturer Defendant Perrigo)

19845. South Carolina Class Representative Gloria Colon incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19846. This cause of action is brought on behalf of the South Carolina-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19847. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19848. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19849. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

19850. Defendants' enrichment – the monies obtained from Plaintiffs' and Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and Class members' impoverishment – i.e., Plaintiffs' and Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

19851. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19852. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19853. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1482**
**Breach of Implied Warranty**
**(P.R. Laws Ann. Tit. 31, §3841)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19854. South Carolina Class Representative Gloria Colon incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19855. This cause of action is brought on behalf of the South Carolina-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19856. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Puerto Rico Class Representatives and members of the Puerto Rico Class and was in the business of selling such products.

19857. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. P.R. Laws. Ann. Tit. 31, §3841.

19858. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19859. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19860. Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19861. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19862. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19863. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 12.    Causes of Action on Behalf of the Texas-Perrigo Classes

### COUNT 1483
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
### (Tex. Bus. & Com. Code Ann. §17.41, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Perrigo)

19864. Texas Class Representative Marianella Villanueva incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19865. This cause of action is brought on behalf of the Texas-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19866. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

19867. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

19868. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

19869. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

19870. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

19871. The Texas DTPA makes unlawful specific acts, including:

(a)     "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

(b)     "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

(c)     "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

19872. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the

products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19873. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

19874. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19875. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19876. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19877. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19878. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

19879. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19880. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19881. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19882. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became

public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

19883. As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

<div align="center">

**COUNT 1484**
**Unjust Enrichment**
**(Texas Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19884. Texas Class Representative Marianella Villanueva incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19885. This cause of action is brought on behalf of the Texas-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19886. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19887. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19888. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19889. It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19890. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19891. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 1485**
**Breach of Implied Warranty**
**(Tex. Bus. & Com. Code Ann. §2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19892. Texas Class Representative Marianella Villanueva incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19893. This cause of action is brought on behalf of the Texas-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19894. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

19895. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Tex. Bus. & Com. Code Ann. §2-314.

19896. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19897. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19898. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19899. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19900. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19901. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 13.    Causes of Action on Behalf of the Washington-Perrigo Classes

**COUNT 1486**
**Violation of the Washington Consumer Protection Act**
**(Wash. Rev. Code Ann. §19.86.010, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19902. Washington Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19903. This cause of action is brought on behalf of the Washington-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19904. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Wash. Rev. Code Ann. §19.86.010(1).

19905. The Ranitidine-Containing Products are "[a]ssets" within the meaning of Wash. Rev. Code Ann. §19.86.010(3).

19906. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Wash. Rev. Code Ann. §19.86.010(2).

19907. The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. §19.86.020.

19908. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19909. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington CPA.

19910. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19911. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19912. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19913. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19914. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Washington CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19915. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19916. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19917. On June 22, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Wash. Rev. Code §19.86.095 to the Attorney General of the State of Washington.

19918. As a result of Defendant's violations of the Washington CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Washington CPA.

<div style="text-align:center">

**COUNT 1487**
**Unjust Enrichment**
**(Washington Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19919. Washington Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19920. This cause of action is brought on behalf of the Washington-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19921. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19922. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19923. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19924. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19925. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19926. There is no express contract governing this dispute.

19927. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1488**
**Breach of Implied Warranty**
**(Wash. Rev. Code Ann. §62A 2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19928. Washington Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-916, 962-1004, and 1093-1169 as though fully set forth herein.

19929. This cause of action is brought on behalf of the Washington-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

19930. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Washington Class Representatives and members of the Washington Class and was in the business of selling such products.

19931. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Wash. Rev. Code §62A 2-314.

19932. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19933. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19934. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19935. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19936. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

19937. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### J.    Causes of Action Against Perrigo with Respect to Private-Label Product Walmart Equate Ranitidine

19938. For the purposes of the subsequent causes of action against Defendant Perrigo, Plaintiffs are incorporating the following allegations by reference: paragraphs 53-59 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic

ranitidine); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469 (requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 912-916, 917-936 (Walmart's Store-Brand Ranitidine); 1093-1118, 1119-1143 (Perrigo's Store-Brand contract manufacturing); 937-946, 1144-1156 (misrepresentations or omissions of material fact in labeling); 947-961, 1157-1169 (misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

19939. Plaintiffs identified in the table below bring claims against Defendant Perrigo on behalf of themselves and their respective State Classes under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| Plaintiff Name | State(s) of Residence |
| --- | --- |
| Tangie Sims | Arizona |
| Tina Culclager | Arkansas |
| Jonathan Ferguson | Washington |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Michael Tomlinson | Florida |
| Kathy Jeffries | Georgia |
| Carol Harkins | Illinois |
| Vickie Anderson | Illinois |
| Randy Jones | Louisiana |
| Jennifer Bond | Massachusetts |

| Sandra Erickson-Brown | Minnesota |
| Lora Mauffray | Mississippi |
| Shirley Magee | Mississippi |
| James Adamo | New Jersey |
| Ernesto Sanchez | New Mexico |
| Carrie Martinez | New Mexico |
| George Tapia | New Mexico |
| Richard Froelich | New York |
| Jeffrey Garrett | Tennessee |
| Marilyn Abraham | Texas |
| Marianella Villanueva | Texas |
| Dan Zhovtis | Virginia |
| Robert Dewitt | Washington |

### 1.    Causes of Action on Behalf of the Arizona-Perrigo Classes

**COUNT 1489**
**Violation of the Arizona Consumer Fraud Act**
**(Ariz. Rev. Stat. Ann. §44-1521, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19940. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

19941. This cause of action is brought on behalf of the Arizona-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

19942. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(6).

19943. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(5).

19944. The Arizona Consumer Fraud Act ("Arizona CFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." Ariz. Rev. Stat. Ann. §44-1522(A).

19945. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Arizona CFA by recklessly, wantonly, knowingly, and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19946. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Arizona CFA.

19947. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19948. Defendant's misreprsentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a unform manner.

19949. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19950. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19951. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

19952. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Arizona CFA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19953. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19954. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19955. As a result of Defendant's violations of the Arizona CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

<div align="center">

**COUNT 1490**
**Unjust Enrichment**
**(Arizona Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19956. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

19957. This cause of action is brought on behalf of the Arizona-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

19958. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19959. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19960. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19961. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19962. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19963. Plaintiffs and the Class members do not have an adequate remedy at law.

2.     **Causes of Action on Behalf of the Arkansas-Perrigo Classes**

**COUNT 1491**
**Violation of the Arkansas Deceptive Trade Practices Act**
**(Ark. Code Ann. §4-88-101,** *et seq.***)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19964. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

19965. This cause of action is brought on behalf of the Arkansas-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

19966. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ark. Code Ann. §4-88-102(5).

19967. The Ranitidine-Containing Products are "[g]oods" within the meaning of Ark. Code Ann. §4-88-102(4).

19968. The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices."  Ark. Code Ann. §4-88-107(a).

19969. The Arkansas DTPA makes unlawful specific acts, including:

(a)     "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" (Ark. Code Ann. §4-88-107(a)(1));

(b)     "[a]dvertising the goods or services with the intent not to sell them as advertised" (Ark. Code Ann. §4-88-107(a)(3)); and

(c)     "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" (Ark. Code Ann. §4-88-107(a)(10)).

19970. The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission . . . ." Ark. Code Ann. §4-88-108(a).

19971. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19972. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Arkansas DTPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

19973. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19974. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

19975. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

19976. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

19977. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

19978. Plaintiffs and the Class members were aggrieved by Defendant's violations of Arkansas DTPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

19979. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

19980. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

19981. As a result of Defendant's violations of the Arkansas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

<div align="center">

**COUNT 1492**
**Unjust Enrichment**
**(Arkansas Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

19982. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

19983. This cause of action is brought on behalf of the Arkansas-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

19984. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

19985. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

19986. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

19987. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

19988. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

19989. There is no valid, legal, and binding contract governing this dispute.

19990. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1493**
**Breach of Implied Warranty**
**(Ark. Code Ann. §4-2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

19991. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

19992. This cause of action is brought on behalf of the Arkansas-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

19993. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arkansas Class Representatives and members of the Arkansas Class and was in the business of selling such products.

19994. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ark. Code. Ann. §4-2-314.

19995. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

19996. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

19997. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

19998. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

19999. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20000. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

3.      **Causes of Action on Behalf of the Colorado-Perrigo Classes**

**COUNT 1494**
**Violation of the Colorado Consumer Protection Act**
**(Colo. Rev. Stat. Ann. §6-1-101, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

20001. Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20002. This cause of action is brought on behalf of the Colorado-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20003. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Colo. Rev. Stat. Ann. §6-1-102(6).

20004. The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices "in the course of the person's business, vocation, or occupation." Colo. Rev. Stat. Ann. §6-1-105(1).

20005. The Colorado CPA makes unlawful specific acts, including:

(a)      "[e]ither knowingly or recklessly mak[ing] a false representation as to the source, sponsorship, approval, or certification of goods, services, or property" (Colo. Rev. Stat. Ann. §6-1-105(1)(b));

(b)      "[r]epresent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another" (Colo. Rev. Stat. Ann. §6-1-105(1)(g));

(c)      "[a]dvertis[ing] goods, services, or property with intent not to sell them as advertised" (Colo. Rev. Stat. Ann. §6-1-105(1)(i));

(d)      "[f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or

sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction" (Colo. Rev. Stat. Ann. §6-1-105(1)(u)); and

(e) "[e]ither knowingly or recklessly engage[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice" (Colo. Rev. Stat. Ann. §6-1-105(1)(kkk)).

20006. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20007. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Colorado CPA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; and

(e) failing to disclose the defective Ranitidine-Containing Products in connection with their sale to the public.

20008. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20009. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20010. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20011. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20012. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

20013. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Colorado CPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20014. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20015. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20016. As a result of Defendant's violations of the Colorado CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

**COUNT 1495**
**Unjust Enrichment**
**(Colorado Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

20017. Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20018. This cause of action is brought on behalf of the Colorado-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20019. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20020. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

20021. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20022. It is unjust and inequitable for the Defendant to retain these benefits without commensurate compensation because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20023. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20024. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1496**
**Breach of Implied Warranty**
**(Colo. Rev. Stat. Ann. §4-2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

20025. Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20026. This cause of action is brought on behalf of the Colorado-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20027. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20028. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

20029. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20030. It is unjust and inequitable for the Defendant to retain these benefits without commensurate compensation because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20031. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20032. Plaintiffs and the Class members do not have an adequate remedy at law.

### 4.    Causes of Action on Behalf of the Florida-Perrigo Classes

<div align="center">

**COUNT 1497**
**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**(Fla. Stat. Ann. §501.201, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

20033. Florida Class Representative Michael Tomlinson incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20034. This cause of action is brought on behalf of the Florida-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20035. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. §501.204(1).

20036. In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017." Fla. Stat. Ann. §501.204(2).

20037. Plaintiffs and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA. *See* Fla. Stat. Ann. §501.203(6)-(7).

20038. Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA. *See* Fla. Stat. Ann. §501.203(8).

20039. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20040. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

- 4009 -

20041. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20042. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20043. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20044. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20045. Plaintiffs and the Class members were aggrieved by Defendant's violations of FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20046. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20047. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20048. As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

<div align="center">

**COUNT 1498**
**Unjust Enrichment**
**(Florida Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

20049. Florida Class Representative Michael Tomlinson incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20050. This cause of action is brought on behalf of the Florida-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20051. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20052. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered an impoverishment because they purchased worthless medications and did not receive the expected benefit therefrom.

20053. Defendant voluntarily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20054. It is unjust and inequitable for the Defendant to retain these benefits without paying the value thereof because the benefits were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20055. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20056. There is no express written contract governing this dispute.

20057. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 1499
## Breach of Implied Warranty
## (Fla. Stat. Ann. §672.314)
## (Against Store-Brand Manufacturer Defendant Perrigo)

20058. Florida Class Representative Michael Tomlinson incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20059. This cause of action is brought on behalf of the Florida-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20060. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Florida Class Representatives and members of the Florida Class and was in the business of selling such products.

20061. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Fla. Stat. Ann. §672.314.

20062. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20063. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20064. Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20065. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20066. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20067. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

5.      **Causes of Action on Behalf of the Georgia-Perrigo Classes**

**COUNT 1500**
**Violation of the Georgia Fair Business Practices Act**
**(Ga. Code Ann. §10-1-390, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

20068. Georgia Class Representative Kathy Jeffries incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20069. This cause of action is brought on behalf of the Georgia-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20070. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(24).

20071. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(6).

20072. Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Ga. Code Ann. §10-1-392(a)(28).

20073. The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." Ga. Code Ann. §10-1-393(a).

20074. The Georgia FBPA makes unlawful specific acts, including:

(a)      "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-393(b)(5));

(b)      "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-393(b)(7)); and

(c)      "[a]dvertising goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-393(b)(9)).

20075. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20076. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia FBPA, including:

(a)      representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)      representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)      advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)      engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

20077. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20078. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20079. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20080. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20081. Plaintiffs and the Class members reasonably relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

20082. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Georgia FBPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20083. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20084. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

20085. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public. In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Ga. Code Ann. §10-1-399(b) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

20086. As a result of Defendant's violations of the Georgia FBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Georgia FBPA.

**COUNT 1501**
**Unjust Enrichment**
**(Georgia Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

20087. Georgia Class Representative Kathy Jeffries incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20088. This cause of action is brought on behalf of the Georgia-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20089. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20090. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20091. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20092. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20093. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20094. There is no express contract governing this dispute.

20095. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1502**
**Breach of Implied Warranty**
**(Ga. Code Ann. §11-2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

20096. Georgia Class Representative Kathy Jeffries incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20097. This cause of action is brought on behalf of the Georgia-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20098. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Georgia Class Representatives and members of the Georgia Class and was in the business of selling such products.

20099. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ga. Code. Ann. §11-2-314.

20100. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20101. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20102. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20103. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20104. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability

because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20105. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 6.    Causes of Action on Behalf of the Illinois-Perrigo Classes

### COUNT 1503
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (815 Ill. Comp. Stat. Ann. 505/1, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Perrigo)

20106. Illinois Class Representatives Carol Harkins and Vickie Anderson incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20107. This cause of action is brought on behalf of the Illinois-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20108. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(c).

20109. Plaintiffs and the Class members are "consumer[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(e).

20110. The Ranitidine-Containing Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(b).

20111. Defendant was and is engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(f).

20112. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 Ill. Comp. Stat. Ann. 510/2], approved August 5, 1965, in the conduct of any trade or commerce."  815 Ill. Comp. Stat. Ann. 505/2.

20113. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20114. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFDBPA.

20115. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20116. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20117. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20118. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20119. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Illinois CFDBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20120. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20121. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20122. As a result of Defendant's violations of the Illinois CFDBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFDBPA.

<div align="center">

**COUNT 1504**
**Unjust Enrichment**
**(Illinois Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

20123. Illinois Class Representatives Carol Harkins and Vickie Anderson incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20124. This cause of action is brought on behalf of the Illinois-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20125. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20126. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20127. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20128. It violates the principles of justice, equity, and good conscience for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20129. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20130. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

**COUNT 1505**
**Breach of Implied Warranty**
**(810 Ill. Comp. Stat. Ann. 5/2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

20131. Illinois Class Representatives Carol Harkins and Vickie Anderson incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20132. This cause of action is brought on behalf of the Illinois-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20133. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Illinois Class Representatives and members of the Illinois Class and was in the business of selling such products.

20134. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. 810 Ill. Comp. Stat. Ann. 5/2-314.

20135. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20136. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20137. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20138. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20139. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20140. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

7.      **Causes of Action on Behalf of the Louisiana-Perrigo Classes**

**COUNT 1506**
**Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law**
**(La. Stat. Ann. §51:1401, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

20141. Louisiana Class Representative Randy Jones incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20142. This cause of action is brought on behalf of the Louisiana-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20143. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of La. Stat. Ann. §51:1402(8).

20144. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of La. Stat. Ann. §51:1402(1).

20145. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of La. Stat. Ann. §51:1402(10).

20146. The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  La. Stat. Ann. §51:1405(A).

20147. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets

in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20148. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Louisiana CPL.

20149. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20150. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20151. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20152. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20153. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

20154. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Louisiana CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20155. Specifically, Plaintiffs and the Class were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20156. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

20157. As a result of Defendant's violations of the Louisiana CPL, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Louisiana CPL.

**COUNT 1507**
**Unjust Enrichment**
**(Louisiana Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

20158. Louisiana Class Representative Randy Jones incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20159. This cause of action is brought on behalf of the Louisiana-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20160. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20161. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20162. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

20163. Defendants' enrichment – the monies obtained from Plaintiffs for the Ranitidine Containing-Drugs – was the result of Plaintiffs' impoverishment – the receipt by Plaintiffs of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

20164. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20165. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20166. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 1508**
**Breach of Implied Warranty**
**(La. Stat. Ann. Art. §2520)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

20167. Louisiana Class Representative Randy Jones incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20168. This cause of action is brought on behalf of the Louisiana-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20169. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Louisiana Class Representatives and members of the Louisiana Class and was in the business of selling such products.

20170. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. La. Civ. Code. Ann. §2520.

20171. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20172. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20173. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20174. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20175. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20176. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**8.   Causes of Action on Behalf of the Massachusetts-Perrigo Classes**

**COUNT 1509**
**Violation of the Deceptive Acts or Practices Prohibited by Massachusetts Law**
**(Mass. Gen. Laws Ann. ch. 93a, §1, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

20177. Massachussetts Class Representative Jennifer Bond incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20178. This cause of action is brought on behalf of the Massachusetts-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20179. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(a).

20180. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(b).

20181. The Massachusetts consumer protection law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws Ann. ch. 93A, §2(a).

20182. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20183. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Massachusetts Act.

20184. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20185. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20186. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20187. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20188. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Massachusetts Act because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20189. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20190. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20191. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Mass. Gen. Laws Ann. ch. 93A, §9(3) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

20192. As a result of Defendant's violations of the Massachusetts Act, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Massachusetts Act.

<div align="center">

**COUNT 1510**
**Unjust Enrichment**
**(Massachusetts Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

20193. Massachussetts Class Representative Jennifer Bond incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20194. This cause of action is brought on behalf of the Massachusetts-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20195. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20196. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20197. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

20198. Defendant's enrichment – the monies obtained from Plaintiffs' and Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and Class members' impoverishment – i.e., Plaintiffs' and Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

20199. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20200. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20201. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1511**
**Breach of Implied Warranty**
**(Mass. Gen. Laws Ch. 106 §2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

20202. Massachussetts Class Representative Jennifer Bond incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20203. This cause of action is brought on behalf of the Massachusetts-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20204. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Massachusetts Class Representatives and members of the Massachusetts Class and was in the business of selling such products.

20205. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Mass. Gen. Law Ch. 106 §2-314.

20206. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the

expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20207. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20208. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20209. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20210. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20211. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

9.      **Causes of Action on Behalf of the Minnesota-Perrigo Classes**

**COUNT 1512**
**Violation of the Minnesota Prevention of Consumer Fraud Act**
**(Minn. Stat. Ann. §325F.68,** *et seq.***)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

20212. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20213. This cause of action is brought on behalf of the Minnesota-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20214. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

20215. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

20216. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged."  Minn. Stat. Ann. §325F.69(1).  Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

20217. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20218. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

20219. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20220. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20221. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20222. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20223. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

20224. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20225. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20226. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20227. As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

## COUNT 1513
### Unjust Enrichment
### (Minnesota Law)
### (Against Store-Brand Manufacturer Defendant Perrigo)

20228. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20229. This cause of action is brought on behalf of the Minnesota-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20230. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20231. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20232. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20233. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20234. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20235. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1514**
**Breach of Implied Warranty**
**(Minn. Stat. Ann. §336.2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

20236. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20237. This cause of action is brought on behalf of the Minnesota-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20238. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

20239. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Minn. Stat. Ann. §336.2-314

20240. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20241. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20242. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20243. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20244. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20245. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 10.     Causes of Action on Behalf of the Mississippi-Perrigo Classes

**COUNT 1515**
**Unjust Enrichment**
**(Mississippi Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

20246. Mississippi Class Representatives Lora Mauffray and Shirley Magee incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20247. This cause of action is brought on behalf of the Mississippi-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20248. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20249. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

20250. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20251. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20252. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20253. There is no express contract governing this dispute.

20254. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1516**
**Breach of Implied Warranty**
**(Miss. Code Ann. §75-2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

20255. Mississippi Class Representatives Lora Mauffray and Shirley Magee incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20256. This cause of action is brought on behalf of the Mississippi-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20257. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Mississippi Class Representatives and members of the Mississippi Class and was in the business of selling such products.

20258. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Miss. Code Ann. §75-2-314.

20259. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20260. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20261. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20262. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20263. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20264. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

11.     **Causes of Action on Behalf of the New Jersey-Perrigo Classes**

**COUNT 1517**
**Violation of the New Jersey Consumer Fraud Act**
**(N.J. Stat. Ann. §56:8-1, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

20265. New Jersey Class Representative James Adamo incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20266. This cause of action is brought on behalf of the New Jersey-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20267. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.J. Stat. Ann. §56:8-1(d).

20268. The Ranitidine-Containing Products are "merchandise" within the meaning of N.J. Stat. Ann. §56:8-1(c).

20269. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Jersey Consumer Fraud Act ("New Jersey CFA") by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  N.J. Stat. Ann. §56:8-1, *et seq.*

20270. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Jersey CFA.

20271. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20272. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20273. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20274. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20275. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Jersey CFA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20276. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20277. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20278. As a result of Defendant's violations of the New Jersey CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Jersey CFA.

<div align="center">

**COUNT 1518**
**Unjust Enrichment**
**(New Jersey)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

20279. New Jersey Class Representative James Adamo incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20280. This cause of action is brought on behalf of the New Jersey-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20281. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20282. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20283. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20284. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20285. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20286. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

## COUNT 1519
### Breach of Implied Warranty
### (N.J. Stat. Ann. §12A:2-314)
### (Against Store-Brand Manufacturer Defendant Perrigo)

20287. New Jersey Class Representative James Adamo incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20288. This cause of action is brought on behalf of the New Jersey-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20289. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Jersey Class Representatives and members of the New Jersey Class and was in the business of selling such products.

20290. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.J. Stat. Ann. §12A:2-314.

20291. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20292. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20293. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20294. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20295. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20296. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

12.     **Causes of Action on Behalf of the New Mexico-Perrigo Classes**

**COUNT 1520**
**Violation of the New Mexico Unfair Trade Practices Act**
**(N.M. Stat. Ann. §57-12-1, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

20297. New Mexico Class Representatives Ernesto Sanchez, Carrie Martinez, and George Tapia incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20298. This cause of action is brought on behalf of the New Mexico-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20299. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

20300. Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

20301. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person." N.M. Stat. Ann. §57-12-2(D). The New Mexico UTPA also makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity

of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." N.M. Stat. Ann. §57-12-2(E).

20302. The New Mexico UTPA makes unlawful specific acts, including:

(a) "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

(b) "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

(c) "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

20303. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20304. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Mexico UTPA, including:

(a) representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

     (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

     (c)     using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and

     (d)     acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.

20305. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20306. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20307. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20308. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20309. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20310. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20311. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

20312. As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

<div align="center">

**COUNT 1521**
**Unjust Enrichment**
**(New Mexico Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

20313. New Mexico Class Representatives Ernesto Sanchez, Carrie Martinez, and George Tapia incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20314. This cause of action is brought on behalf of the New Mexico-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20315. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20316. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20317. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20318. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20319. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20320. There is no express contract governing this dispute.

20321. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 1522
### Breach of Implied Warranty
### (N.M. Stat. Ann. §55-2-314)
### (Against Store-Brand Manufacturer Defendant Perrigo)

20322. New Mexico Class Representatives Ernesto Sanchez, Carrie Martinez, and George Tapia incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20323. This cause of action is brought on behalf of the New Mexico-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20324. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

20325. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.M. Stat. Ann. §55-2-314.

20326. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20327. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20328. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20329. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20330. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20331. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 13.     Causes of Action on Behalf of the New York-Perrigo Classes

### COUNT 1523
### Violation of New York Deceptive Acts and Practices Act
### (N.Y. Gen. Bus. Law §349)
### (Against Store-Brand Manufacturer Defendant Perrigo)

20332. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20333. This cause of action is brought on behalf of the New York-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20334. Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

20335. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §349(a).

20336. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during

which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20337. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

20338. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20339. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20340. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20341. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20342. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20343. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20344. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20345. As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

<div align="center">

**COUNT 1524**
**Violation of the New York False Advertising Act**
**(N.Y. Gen. Bus. Law §350)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

20346. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20347. This cause of action is brought on behalf of the New York-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for

purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20348. Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

20349. The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

20350. Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

20351. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the

products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20352. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

20353. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20354. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20355. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20356. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20357. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20358. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20359. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20360. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

20361. As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the New York Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

## COUNT 1525
## Unjust Enrichment
## (New York Law)
## (Against Store-Brand Manufacturer Defendant Perrigo)

20362. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20363. This cause of action is brought on behalf of the New York-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20364. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20365. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20366. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20367. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20368. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20369. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 1526**
**Breach of Implied Warranty**
**(N.Y. U.C.C. Law §2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

20370. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20371. This cause of action is brought on behalf of the New York-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20372. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representatives and members of the New York Class and was in the business of selling such products.

20373. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.Y. U.C.C. Law §2-314.

20374. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20375. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20376. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20377. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20378. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20379. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 14.    Causes of Action on Behalf of the Tennessee-Perrigo Classes

### COUNT 1527
### Violation of the Tennessee Consumer Protection Act of 1977
### (Tenn. Code Ann. §47-18-101, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Perrigo)

20380. Tennessee Class Representative Jeffrey Garrett incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20381. This cause of action is brought on behalf of the Tennessee-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20382. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tenn. Code Ann. §47-18-103(14).

20383. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tenn. Code Ann. §47-18-103(3).

20384. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tenn. Code Ann. §47-18-103(8).

20385. Defendant was and is engaged in "[t]rade" or "commerce" or "consumer transaction[s]" within the meaning of Tenn. Code Ann. §47-18-103(20).

20386. The Tennessee Consumer Protection Act of 1977 ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce."  Tenn. Code Ann. §47-18-104(a).

20387. The Tennessee CPA makes unlawful specific acts, including:

    (a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tenn. Code Ann. §47-18-104(b)(5));

    (b)    "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (Tenn. Code Ann. §47-18-104(b)(7)); and

    (c)    "[a]dvertising goods or services with intent not to sell them as advertised" (Tenn. Code Ann. §47-18-104(b)(9)).

20388. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20389. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Tennessee CPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)   representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)   advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

20390. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20391. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20392. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20393. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20394. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Tennessee CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20395. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20396. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20397. As a result of Defendant's violations of the Tennessee CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Tennessee CPA.

**COUNT 1528**
**Unjust Enrichment**
**(Tennessee Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

20398. Tennessee Class Representative Jeffrey Garrett incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20399. This cause of action is brought on behalf of the Tennessee-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20400. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20401. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20402. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20403. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20404. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20405. There is no existing, enforceable contract governing this dispute.

20406. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1529**
**Breach of Implied Warranty**
**(Tenn. Code Ann. §47-2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

20407. Tennessee Class Representative Jeffrey Garrett incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20408. This cause of action is brought on behalf of the Tennessee-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20409. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Tennessee Class Representatives and members of the Tennessee Class and was in the business of selling such products.

20410. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Tenn. Code Ann. §47-2-314.

20411. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20412. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20413. Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20414. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20415. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20416. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 15.    Causes of Action on Behalf of the Texas-Perrigo Classes

### COUNT 1530
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
### (Tex. Bus. & Com. Code Ann. §17.41, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Perrigo)

20417. Texas Class Representatives Marianella Villanueva and Marilyn Abraham incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20418. This cause of action is brought on behalf of the Texas-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20419. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

20420. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

20421. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

20422. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

20423. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

20424. The Texas DTPA makes unlawful specific acts, including:

(a)     "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

(b)     "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

(c)     "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

20425. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20426. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

20427. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20428. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20429. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20430. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20431. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

20432. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate

result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20433. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20434. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

20435. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public. In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

20436. As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

**COUNT 1531**
**Unjust Enrichment**
**(Texas Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

20437. Texas Class Representatives Marianella Villanueva and Marilyn Abraham incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20438. This cause of action is brought on behalf of the Texas-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20439. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20440. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20441. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20442. It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20443. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20444. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div style="text-align:center">

**COUNT 1532**
**Breach of Implied Warranty**
**(Tex. Bus. & Com. Code Ann. §2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

20445. Texas Class Representatives Marianella Villanueva and Marilyn Abraham incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20446. This cause of action is brought on behalf of the Texas-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20447. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

20448. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Tex. Bus. & Com. Code Ann. §2-314.

20449. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20450. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20451. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20452. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20453. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability

because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20454. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 16.    Causes of Action on Behalf of the Virginia-Perrigo Classes

### COUNT 1533
### Violation of the Virginia Consumer Protection Act
### (Va. Code Ann. §59.1-196, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Perrigo)

20455. Virginia Class Representative Dan Zhovtis incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20456. This cause of action is brought on behalf of the Virginia-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20457. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Va. Code Ann. §59.1-198.

20458. Defendant was and is a "[s]upplier" within the meaning of Va. Code Ann. §59.1-198.

20459. The Ranitidine-Containing Products are "[g]oods" within the meaning of Va. Code Ann. §59.1-198.

20460. Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Va. Code Ann. §59.1-198.

20461. The Virginia Consumer Protection Act ("Virginia CPA") prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Va. Code Ann. §59.1-200(A).

20462. The Virginia CPA makes unlawful specific acts, including:

(a)     "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" (Va. Code Ann. §59.1-200(A)(5));

(b)     "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model" (Va. Code Ann. §59.1-200(A)(6));

(c)     "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" (Va. Code Ann. §59.1-200(A)(8)); and

(d)     "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" (Va. Code Ann. §59.1-200(A)(14)).

20463. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20464. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Virginia CPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

20465. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20466. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20467. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20468. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20469. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

20470. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Virginia CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20471. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20472. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20473. Defendant was provided notice of the issues raised in this count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.

Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

20474. As a result of Defendant's violations of the Virginia CPA, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Virginia CPA.

<div align="center">

**COUNT 1534**
**Unjust Enrichment**
**(Virginia Law)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

</div>

20475. Virginia Class Representative Dan Zhovtis incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20476. This cause of action is brought on behalf of the Virginia-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20477. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20478. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20479. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20480. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20481. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20482. There is no express contract governing this dispute.

20483. Plaintiffs and the Class members do not have an adequate remedy at law.

### COUNT 1535
### Breach of Implied Warranty
### (Va. Code Ann. §8.2-314)
### (Against Store-Brand Manufacturer Defendant Perrigo)

20484. Virginia Class Representative Dan Zhovtis incorporates the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20485. This cause of action is brought on behalf of the Virginia-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for

purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20486. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Virginia Class Representatives and members of the Virginia Class and was in the business of selling such products.

20487. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Va. Code §8.2-314.

20488. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20489. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20490. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20491. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20492. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20493. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 17.     Causes of Action on Behalf of the Washington-Perrigo Classes

### COUNT 1536
### Violation of the Washington Consumer Protection Act
### (Wash. Rev. Code Ann. §19.86.010, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Perrigo)

20494. Washington Class Representatives Robert Dewitt and Jonathan Ferguson incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20495. This cause of action is brought on behalf of the Washington-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20496. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Wash. Rev. Code Ann. §19.86.010(1).

20497. The Ranitidine-Containing Products are "[a]ssets" within the meaning of Wash. Rev. Code Ann. §19.86.010(3).

20498. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Wash. Rev. Code Ann. §19.86.010(2).

20499. The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. §19.86.020.

20500. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20501. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington CPA.

20502. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20503. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20504. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20505. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20506. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Washington CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20507. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20508. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20509. On June 22, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Wash. Rev. Code §19.86.095 to the Attorney General of the State of Washington.

20510. As a result of Defendant's violations of the Washington CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Washington CPA.

## COUNT 1537
### Unjust Enrichment
### (Washington Law)
### (Against Store-Brand Manufacturer Defendant Perrigo)

20511. Washington Class Representatives Robert Dewitt and Jonathan Ferguson incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20512. This cause of action is brought on behalf of the Washington-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20513. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20514. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20515. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20516. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20517. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20518. There is no express contract governing this dispute.

20519. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1538**
**Breach of Implied Warranty**
**(Wash. Rev. Code Ann. §62A 2-314)**
**(Against Store-Brand Manufacturer Defendant Perrigo)**

20520. Washington Class Representatives Robert Dewitt and Jonathan Ferguson incorporate the preceding allegations in paragraphs 53-59, 273-277, 304-442, 445-483, 912-961, 1093-1169 as though fully set forth herein.

20521. This cause of action is brought on behalf of the Washington-Perrigo Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Perrigo (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

20522. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Washington Class Representatives and members of the Washington Class and was in the business of selling such products.

20523. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Wash. Rev. Code §62A 2-314.

20524. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20525. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20526. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20527. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20528. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20529. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### K. Causes of Action Against Strides with Respect to Private-Label Product CVS Health Ranitidine

20530. For the purposes of the subsequent causes of action against Defendant Strides, Plaintiffs are incorporating the following allegations by reference: paragraphs 63-66 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic

ranitidine); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469 (requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 912-916, 1005-1029 (CVS's Store-Brand Ranitidine); 1093-1118, 1257-1275 (Strides' Store-Brand contract manufacturing); 1030-1040, 1276-1288 (misrepresentations or omissions of material fact in labeling); 1041-1055, 1289-1301 (misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

20531. Plaintiffs identified in the table below bring claims against Defendant Strides on behalf of themselves and their respective State Classes under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| **Plaintiff Name** | **State(s) of Residence** |
| --- | --- |
| Richard Obrien | California |
| Angel Vega | Connecticut |
| Kathy Jeffries | Georgia |
| Rebecca Sizemore | Indiana |
| Arthur Gamble | Michigan |
| Brad Hoag | Minnesota |
| Ernesto Sanchez | New Mexico |
| Richard Froehlich | New York |
| Chris Troyan | Ohio |
| Patricia Hess | Ohio |
| Gregory Alan Wayland | Texas |

| Marianella Villanueva | Texas |
|---|---|
| Mynetta Hastings | West Virginia |

## 1.    Causes of Action on Behalf of the California-Strides Classes

### COUNT 1539
### Violation of the California Unfair Competition Law
### (Cal. Bus. & Prof. Code §17200, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Strides)

20532. California Class Representative Richard Obrien incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20533. This cause of action is brought on behalf of the California-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20534. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

20535. Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

20536. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on

its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

20537. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL. These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

20538. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20539. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20540. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20541. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20542. Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, CAL. HEALTH & SAFETY CODE §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

20543. Defendant conduct also consitutes "unfair" business acts or practies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

20544. Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400,

111440, 111445, 111450; the Consumer Legal Remedies Act, *see* Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

20545. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20546. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plainitffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20547. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20548. Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plainitffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

**COUNT 1540**
**Violation of the California False Advertising Law**
**(Cal. Bus. & Prof. Code §17500, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Strides)**

20549. California Class Representative Richard Obrien incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20550. This cause of action is brought on behalf of the California-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20551. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

20552. The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code §17500.

20553. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be

used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20554. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

> (a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;
>
> (c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and
>
> (d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

20555. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20556. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20557. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20558. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20559. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20560. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20561. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20562. As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

## COUNT 1541
### Violation of the California Consumers Legal Remedies Act
#### (Cal. Civ. Code §1750, *et seq.*)
#### (Against Store-Brand Manufacturer Defendant Strides)

20563. California Class Representative Richard Obrien incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20564. This cause of action is brought on behalf of the California-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20565. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

20566. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

20567. The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

20568. The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §1770(a).

20569. The California CLRA makes unlawful specific acts, including:

(a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

- 4110 -

(b)  "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

(c)  "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

(d)  "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

20570. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20571. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

(a)  representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)  representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)  advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)  engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

20572. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20573. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20574. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20575. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20576. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

20577. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20578. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20579. Defendant was provided notice of the issues raised in this Count and this Complaint by the United Stated Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

20580. Pursuant to Cal. Civ. Code §1780(a), Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or

disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

**COUNT 1542**
**Unjust Enrichment or Quasi-Contract**
**(California Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

20581. California Class Representative Richard Obrien incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20582. This cause of action is brought on behalf of the California-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20583. Plainitffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20584. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plainitffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20585. Defendant readily accepted and retained these benefits from Plainitffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20586. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plainitffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20587. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plainitffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20588. Plainitffs and the Class members do not have an adequate remedy at law.

**COUNT 1543**
**Breach of Implied Warranty**
**(Cal. Com. Code §2314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

20589. California Class Representative Richard Obrien incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20590. This cause of action is brought on behalf of the California-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20591. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to California Class Representatives and members of the California Class and was in the business of selling such products.

20592. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Cal. Com. Code. §2314.

20593. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20594. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20595. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20596. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20597. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20598. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 2. Causes of Action on Behalf of the Connecticut-Strides Classes

### COUNT 1544
### Violation of the Connecticut Unfair Trade Practices Act
### (Conn. Gen. Stat. Ann. §42-110a, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Strides)

20599. Connecticut Class Representative Angel Vega incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20600. This cause of action is brought on behalf of the Connecticut-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20601. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Conn. Gen. Stat. Ann. §42-110a(3).

20602. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. §42-110a(4).

20603. The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. §42-110b(a).

20604. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20605. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Connecticut UTPA.

20606. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20607. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20608. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or

- 4118 -

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20609. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20610. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Connecticut UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20611. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plainitffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20612. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

20613. As a result of Defendant's violations of the Connecticut UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

## COUNT 1545
### Unjust Enrichment
### (Connecticut Law)
### (Against Store-Brand Manufacturer Defendant Strides)

20614. Connecticut Class Representative Angel Vega incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20615. This cause of action is brought on behalf of the Connecticut-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20616. Plainitffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20617. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plainitffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20618. Defendant readily accepted and retained these benefits from Plainitffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20619. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plainitffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20620. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plainitffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20621. Plainitffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1546**
**Breach of Implied Warranty**
**(Conn. Gen. Stat. Ann. §42a-2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

20622. Connecticut Class Representative Angel Vega incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20623. This cause of action is brought on behalf of the Connecticut-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20624. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Connecticut Class Representatives and members of the Connecticut Class and was in the business of selling such products.

20625. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Conn. Gen. Stat. Ann. §42a-2-314.

20626. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20627. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20628. Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20629. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20630. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability

because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20631. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 3.      Causes of Action on Behalf of the Georgia-Strides Classes

**COUNT 1547**
**Violation of the Georgia Fair Business Practices Act**
**(Ga. Code Ann. §10-1-390, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Strides)**

20632. Georgia Class Representative Kathy Jeffries incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20633. This cause of action is brought on behalf of the Georgia-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20634. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(24).

20635. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(6).

20636. Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Ga. Code Ann. §10-1-392(a)(28).

20637. The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." Ga. Code Ann. §10-1-393(a).

20638. The Georgia FBPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-393(b)(5));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-393(b)(7)); and

(c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-393(b)(9)).

20639. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20640. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia FBPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

20641. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20642. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20643. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20644. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20645. Plaintiffs and the Class members reasonably relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products

by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

20646. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Georgia FBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20647. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plainitffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20648. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20649. Defendant was provided notice of the issues raised in this Count and this Complaint by the United Stated Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Ga. Code Ann. §10-1-399(b) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

20650. As a result of Defendant's violations of the Georgia FBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Georgia FBPA.

<div align="center">

**COUNT 1548**
**Unjust Enrichment**
**(Georgia Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

20651. Georgia Class Representative Kathy Jeffries incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20652. This cause of action is brought on behalf of the Georgia-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20653. Plainitffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20654. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plainitffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20655. Defendant readily accepted and retained these benefits from Plainitffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20656. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plainitffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20657. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plainitffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20658. There is no express contract governing this dispute.

20659. Plainitffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1549**
**Breach of Implied Warranty**
**(Ga. Code Ann. §11-2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

20660. Georgia Class Representative Kathy Jeffries incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20661. This cause of action is brought on behalf of the Georgia-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for

purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20662. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Georgia Class Representatives and members of the Georgia Class and was in the business of selling such products.

20663. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ga. Code. Ann. §11-2-314.

20664. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20665. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20666. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20667. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20668. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20669. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 4.     Causes of Action on Behalf of the Indiana-Strides Classes

**COUNT 1550**
**Unjust Enrichment**
**(Indiana Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

20670. Indiana Class Representative Rebecca Sizemore incorporates the preceding allegaitons in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20671. This cause of action is brought on behalf of the Indiana-Strides Class (for the purposes of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20672. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20673. In exchange for their payment of the purchase prices of Defenadnt's Raniditine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in hight, undisclosied, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20674. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20675. It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20676. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution and disgorgement of the amount of their unjust enrichment is required.

20677. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

## COUNT 1551
## Breach of Implied Warranty
## (Ind. Code Ann. §26-1-2-314
## (Against Store-Brand Manufacturer Defendant Strides)

20678. Indiana Class Representative Rebecca Sizemore incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20679. This cause of action is brought on behalf of Indiana-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Dr. Reddy's (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20680. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Indiana Class Representatives and members of the Indiana Class and was in the business of selling such products.

20681. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

20682. Defendant breached its implied warranty of merchantability because its products cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

20683. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20684. Defendant had reason to know Plaintiffs' and each member of the Class's particular purpose in buying Defendant's Ranitidine-Containing Products, and knew that Plaintiffs and each member of the Class relied on Defendant's skill or judgment in furnishing appropriate goods that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

20685. Plaintiffs and the Class did, in fact, rely on Defendant's skill and judgment in manufacturing Ranitidine-Containing products that did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.

20686. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including  distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20687. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to purchasers of its Ranitidine-Containing Products.

20688. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20689. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and

punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 5.    Causes of Action on Behalf of the Michigan-Strides Classes

**COUNT 1552**
**Violation of the Michigan Consumer Protection Act**
**(Mich. Comp. Laws Ann. §445.901, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Strides)**

20690. Michigan Class Representative Arthur Gamble incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20691. This cause of action is brought on behalf of the Michigan-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20692. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(d).

20693. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(g).

20694. The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws Ann. §445.903(1).

20695. The Michigan CPA makes unlawful specific acts, including:

(a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Mich. Comp. Laws Ann. §445.903(1)(c));

    (b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Mich. Comp. Laws Ann. §445.903(1)(e)); and

    (c)     "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented" (Mich. Comp. Laws Ann. §445.903(1)(g)).

20696. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20697. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Michigan CPA, including:

    (a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

20698. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20699. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20700. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20701. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20702. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Michigan CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20703. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plainitffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20704. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20705. As a result of Defendant's violations of the Michigan CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Michigan CPA.

### COUNT 1553
### Unjust Enrichment
### (Michigan Law)
### (Against Store-Brand Manufacturer Defendant Strides)

20706. Michigan Class Representative Arthur Gamble incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20707. This cause of action is brought on behalf of the Michigan-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20708. Plainitffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20709. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plainitffs and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plainitffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20710. Defendant readily accepted and retained these benefits from Plainitffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20711. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plainitffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20712. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plainitffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20713. There is no express contract governing this dispute.

20714. Plainitffs and the Class members do not have an adequate remedy at law.

**COUNT 1554**
**Breach of Implied Warranty**
**(Mich. Comp. Laws Ann. §440.2314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

20715. Michigan Class Representative Arthur Gamble incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20716. This cause of action is brought on behalf of the Michigan-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20717. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Michigan Class Representatives and members of the Michigan Class and was in the business of selling such products.

20718. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Mich. Comp. Laws Ann. §440.2314.

20719. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20720. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20721. Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to establish

privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20722. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20723. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20724. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**6.      Causes of Action on Behalf of the Minnesota-Strides Classes**

**COUNT 1555**
**Violation of the Minnesota Prevention of Consumer Fraud Act**
**(Minn. Stat. Ann. §325F.68, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Strides)**

20725. Minnesota Class Representative Brad Hoag incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20726. This cause of action is brought on behalf of the Minnesota-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for

purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20727. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

20728. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

20729. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged."  Minn. Stat. Ann. §325F.69(1).  Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

20730. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the

products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20731. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

20732. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20733. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20734. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20735. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20736. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

20737. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20738. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20739. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20740. As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

**COUNT 1556**
**Unjust Enrichment**
**(Minnesota Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

20741. Minnesota Class Representative Brad Hoag incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20742. This cause of action is brought on behalf of the Minnesota-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20743. Plainitffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20744. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plainitffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20745. Defendant readily accepted and retained these benefits from Plainitffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20746. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plainitffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20747. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plainitffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20748. Plainitffs and the Class members do not have an adequate remedy at law.

**COUNT 1557**
**Breach of Implied Warranty**
**(Minn. Stat. Ann. §336.2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

20749. Minnesota Class Representative Brad Hoag incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20750. This cause of action is brought on behalf of the Minnesota-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20751. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

20752. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Minn. Stat. Ann. §336.2-314

20753. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20754. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20755. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20756. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20757. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20758. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 7.     Causes of Action on Behalf of the New Mexico-Strides Classes

### COUNT 1558
### Violation of the New Mexico Unfair Trade Practices Act
### (N.M. Stat. Ann. §57-12-1, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Strides)

20759. New Mexico Class Representative Ernesto Sanchez incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20760. This cause of action is brought on behalf of the New Mexico-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20761. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

20762. Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

20763. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person."  N.M. Stat. Ann. §57-12-2(D).  The New Mexico UTPA also

makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid."  N.M. Stat. Ann. §57-12-2(E).

20764. The New Mexico UTPA makes unlawful specific acts, including:

(a) "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

(b) "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

(c) "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

20765. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20766. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Mexico UTPA, including:

    (a)    representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and

    (d)    acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.

20767. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20768. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20769. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20770. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20771. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20772. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20773. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20774. As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

<div align="center">

**COUNT 1559**
**Unjust Enrichment**
**(New Mexico Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

20775. New Mexico Class Representative Ernesto Sanchez incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20776. This cause of action is brought on behalf of the New Mexico-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for

purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20777. Plainitffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20778. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plainitffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plainitffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20779. Defendant readily accepted and retained these benefits from Plainitffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20780. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plainitffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20781. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plainitffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20782. There is no express contract governing this dispute.

20783. Plainitffs and the Class members do not have an adequate remedy at law.

### COUNT 1560
### Breach of Implied Warranty
### (N.M. Stat. Ann. §55-2-314)
### (Against Store-Brand Manufacturer Defendant Strides)

20784. New Mexico Class Representatives Ernesto Sanchez incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20785. This cause of action is brought on behalf of the New Mexico-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20786. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

20787. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.M. Stat. Ann. §55-2-314.

20788. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used

completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20789. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20790. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20791. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20792. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20793. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

8. **Causes of Action on Behalf of the New York-Strides Classes**

**COUNT 1561**
**Violation of New York Deceptive Acts and Practices Act**
**(N.Y. Gen. Bus. Law §349)**
**(Against Store-Brand Manufacturer Defendant Strides)**

20794. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20795. This cause of action is brought on behalf of the New York-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20796. Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

20797. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §349(a).

20798. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during

which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20799. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

20800. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20801. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20802. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20803. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20804. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20805. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plainitffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20806. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20807. As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

**COUNT 1562**
**Violation of the New York False Advertising Act**
**(N.Y. Gen. Bus. Law §350)**
**(Against Store-Brand Manufacturer Defendant Strides)**

20808. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20809. This cause of action is brought on behalf of the New York-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for

purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20810. Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

20811. The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

20812. Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

20813. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the

products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20814. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

20815. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20816. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20817. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20818. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20819. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20820. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20821. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20822. Defendant was provided notice of the issues raised in this Count and this Complaint by the United Stated Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

20823. As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the New York Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

**COUNT 1563**
**Unjust Enrichment**
**(New York Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

20824. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20825. This cause of action is brought on behalf of the New York-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20826. Plainitffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20827. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plainitffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plainitffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20828. Defendant readily accepted and retained these benefits from Plainitffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20829. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plainitffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20830. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plainitffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20831. Plainitffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 1564**
**Breach of Implied Warranty**
**(N.Y. U.C.C. Law §2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

20832. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20833. This cause of action is brought on behalf of the New York-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20834. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representatives and members of the New York Class and was in the business of selling such products.

20835. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.Y. U.C.C. Law §2-314.

20836. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20837. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20838. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20839. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20840. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20841. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 9.    Causes of Action on Behalf of the Ohio-Strides Classes

**COUNT 1565**
**Unjust Enrichment**
**(Ohio Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

20842. Ohio Class Representatives Chris Troyan and Patricia Hess incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20843. This cause of action is brought on behalf of the Ohio-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20844. Plainitffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20845. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plainitffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20846. Defendant readily accepted and retained these benefits from Plainitffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20847. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plainitffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20848. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plainitffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20849. Plainitffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

## COUNT 1566
### Breach of Implied Warranty
### (Ohio Rev. Code Ann. §1302.27)
### (Against Store-Brand Manufacturer Defendant Strides)

20850. Ohio Class Representatives Chris Troyan and Patricia Hess incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20851. This cause of action is brought on behalf of the Ohio-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20852. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Ohio Class Representatives and members of the Ohio Class and was in the business of selling such products.

20853. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ohio Rev. Code Ann. §1302.27.

20854. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20855. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20856. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20857. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20858. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20859. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 10.      Causes of Action on Behalf of the Texas-Strides Classes

### COUNT 1567
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
### (Tex. Bus. & Com. Code Ann. §17.41, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Strides)

20860. Texas Class Representatives Gregory Alan Wayland and Marianella Villanueva incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20861. This cause of action is brought on behalf of the Texas-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20862. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

20863. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

20864. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

20865. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

20866. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

20867. The Texas DTPA makes unlawful specific acts, including:

   (a)   "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

   (b)   "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

   (c)   "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

20868. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the

products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20869. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

20870. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20871. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20872. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20873. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20874. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

20875. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20876. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20877. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20878. Defendant was provided notice of the issues raised in this Count and this Complaint by the United Stated Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became

public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

20879. As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

<div align="center">

**COUNT 1568**
**Unjust Enrichment**
**(Texas Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

20880. Texas Class Representatives Gregory Alan Wayland and Marianella Villanueva incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20881. This cause of action is brought on behalf of the Texas-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20882. Plainitffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20883. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.  Accordingly, Plainitffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20884. Defendant readily accepted and retained these benefits from Plainitffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20885. It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20886. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plainitffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20887. Plainitffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 1569**
**Breach of Implied Warranty**
**(Tex. Bus. & Com. Code Ann. §2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

20888. Texas Class Representatives Gregory Alan Wayland and Marianella Villanueva incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20889. This cause of action is brought on behalf of the Texas-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20890. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

20891. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Tex. Bus. & Com. Code Ann. §2-314.

20892. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20893. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20894. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20895. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20896. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20897. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 11. Causes of Action on Behalf of the West Virginia-Strides Classes

**COUNT 1570**
**Violation of the West Virginia Consumer Credit and Protection Act**
**(W. Va. Code Ann. §46A-1-101, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Strides)**

20898. West Virginia Class Representative Mynetta Hastings incorporates the preceding allegations in the paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20899. This cause of action is brought on behalf of the West Virginia-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20900. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of W. Va. Code Ann. §46A-1-102(31).

20901. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of W. Va. Code Ann. §§46A-1-102(12) and 46A-6-102(2).

20902. The OTC Ranitidine-Containing Products are "[g]oods" within the meaning of W. Va. Code Ann. §46A-1-102(21).

20903. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of W. Va. Code Ann. §46A-6-102(6).

20904. The West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts of practices in the conduct of any trade or commerce."  W. Va. Code Ann. §46A-6-104.

20905. The West Virginia CCPA makes unlawful specific acts, including:

(a)   "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (W. Va. Code Ann. §46A-6-102(7)(E));

(b)   "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (W. Va. Code Ann. §46A-6-102(7)(G));

(c)   "[a]dvertising goods or services with intent not to sell them as advertised" (W. Va. Code Ann. §46A-6-102(7)(I));

(d)   "[e]ngaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding" (W. Va. Code Ann. §46A-6-102(7)(L)); and

(e)   "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby" (W. Va. Code Ann. §46A-6-102(7)(M)).

20906. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the West Virginia CCPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products, including (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20907. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding OTC Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the West Virginia CCPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

20908. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of OTC Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20909. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20910. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of OTC Ranitidine-Containing Products.

20911. The facts regarding OTC Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to OTC Ranitidine-Containing Products.

20912. Plaintiffs and the Class members were aggrieved by Defendant's violations of the West Virginia CCPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20913. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding OTC Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plainitffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20914. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

20915. Defendant was provided notice of the issues raised in this Count and this Complaint by the United State Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of OTC Ranitidine-Containing Products' defects became public. In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to W. Va. Code Ann. §46A-6-106(c) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

20916. As a result of Defendant's violations of the West Virginia CCPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the West Virginia CCPA.

## COUNT 1571
## Unjust Enrichment
### (West Virginia Law)
### (Against Store-Brand Manufacturer Defendant Strides)

20917. West Virginia Class Representative Mynetta Hastings incorporates the preceding allegations in the paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20918. This cause of action is brought on behalf of the West Virginia-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for

purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20919. Plainitffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20920. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plainitffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plainitffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20921. Defendant readily accepted and retained these benefits from Plainitffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20922. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plainitffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20923. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plainitffs and the Class members through its unjust and unlawful acts without paying for said

benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20924. There is no express contract governing this dispute.

20925. Plainitffs and the Class members do not have an adequate remedy at law.

## COUNT 1572
### Breach of Implied Warranty
### (W. Va. Code Ann. §46A-2-314)
### (Against Store-Brand Manufacturer Defendant Strides)

20926. West Virginia Class Representative Mynetta Hastings incorporates the preceding allegations in the paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1005-1055, 1093-1118, and 1257-1301 as though fully set forth herein.

20927. This cause of action is brought on behalf of the West Virginia-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product CVS Health Ranitidine.

20928. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to West Virginia Class Representatives and members of the West Virginia Class and was in the business of selling such products.

20929. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. W. Va. Code §46-2-314.

20930. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the

expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

20931. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

20932. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

20933. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

20934. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

20935. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**L.      Causes of Action Against Strides with Respect to Private-Label Product Rite-Aid Ranitidine**

20936. For the purposes of the subsequent causes of action against Defendant Strides, Plaintiffs are incorporating the following allegations by reference: paragraphs 63-66 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic ranitidine); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA); 387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422 (NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat, moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469 (requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with current Good Manufacturing Practices); 912-916, 1056-1066 (Rite Aid's Store-Brand Ranitidine); 1093-1118, 1257-1275 (Strides' Store-Brand contract manufacturing); 1067-1077, 1276-1288 (misrepresentations or omissions of material fact in labeling); 1078-1092, 1289-1301 (misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

20937. Plaintiffs identified in the table below bring claims against Defendant Strides on behalf of themselves and their respective State Classes under the laws of their respective states. Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*, into their respective claims below:

| Plaintiff Name | State(s) of Residence |
|---|---|
| Golbenaz Bakhtiar | California |
| Richard Obrien | California |
| Janet Asbury | Kentucky |
| Richard Froehlich | New York |

1.      **Causes of Action on Behalf of the California-Strides Classes**

**COUNT 1573**
**Violation of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code §17200, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Strides)**

20938. California Class Representatives Golbenaz Bakhtiar and Richard Obrien incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1056-1118, and 1257-1301 as though fully set forth herein.

20939. This cause of action is brought on behalf of the California-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

20940. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

20941. Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

20942. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus,

resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

20943. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL.  These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

20944. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20945. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20946. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20947. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20948. Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, CAL. HEALTH & SAFETY CODE §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

20949. Defendant conduct also consitutes "unfair" business acts or practies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

20950. Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400,

111440, 111445, 111450; the Consumer Legal Remedies Act, *see* Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

20951. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20952. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintitffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20953. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20954. Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintitffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

## COUNT 1574
### Violation of the California False Advertising Law
### (Cal. Bus. & Prof. Code §17500, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Strides)

20955. California Class Representatives Golbenaz Bakhtiar and Richard Obrien incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1056-1118, and 1257-1301 as though fully set forth herein.

20956. This cause of action is brought on behalf of the California-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

20957. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

20958. The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code §17500.

20959. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be

used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20960. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

20961. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20962. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20963. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20964. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20965. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

20966. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20967. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20968. As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

**COUNT 1575**
**Violation of the California Consumers Legal Remedies Act**
**(Cal. Civ. Code §1750, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Strides)**

20969. California Class Representatives Golbenaz Bakhtiar and Richard Obrien incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1056-1118, and 1257-1301 as though fully set forth herein.

20970. This cause of action is brought on behalf of the California-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

20971. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

20972. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

20973. The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

20974. The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §1770(a).

20975. The California CLRA makes unlawful specific acts, including:

> (a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

(b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

(c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

(d)     "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

20976. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20977. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

- 4190 -

20978. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20979. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

20980. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

20981. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

20982. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

20983. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

20984. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

20985. Defendant was provided notice of the issues raised in this count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

20986. Pursuant to Cal. Civ. Code §1780(a), Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or

disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

### COUNT 1576
### Unjust Enrichment or Quasi-Contract
### (California Law)
### (Against Store-Brand Manufacturer Defendant Strides)

20987. California Class Representatives Golbenaz Bakhtiar and Richard Obrien incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1056-1118, and 1257-1301 as though fully set forth herein.

20988. This cause of action is brought on behalf of the California-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

20989. Plainitffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

20990. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plainitffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

20991. Defendant readily accepted and retained these benefits from Plainitffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

20992. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plainitffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

20993. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plainitffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

20994. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 1577
### Breach of Implied Warranty
### (Cal. Com. Code §2314)
### (Against Store-Brand Manufacturer Defendant Strides)

20995. California Class Representatives Golbenaz Bakhtiar and Richard Obrien incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1056-1118, and 1257-1301 as though fully set forth herein.

20996. This cause of action is brought on behalf of the California-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

20997. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to California Class Representatives and members of the California Class and was in the business of selling such products.

20998. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Cal. Com. Code. §2314.

20999. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21000. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21001. Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21002. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21003. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21004. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 2.     Causes of Action on Behalf of the Kentucky-Strides Classes

### COUNT 1578
### Violation of the Kentucky Consumer Protection Act
### (Ky. Rev. Stat. Ann. §367.110, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Strides)

21005. Kentucky Class Representative Janet Asbury incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1056-1118, and 1257-1301 as though fully set forth herein.

21006. This cause of action is brought on behalf of the Kentucky-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

21007. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ky. Rev. Stat. Ann. §367.110(1).

21008. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Ky. Rev. Stat. Ann. §367.110(2).

21009. The Kentucky Consumer Protection Act ("Kentucky CPA") prohibits "[u]nfair, [unconscionable], false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. Ann. §367.170(1)-(2).

21010. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21011. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Kentucky CPA.

21012. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21013. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21014. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21015. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21016. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Kentucky CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21017. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plainitffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21018. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21019. As a result of Defendant's violations of the Kentucky CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Kentucky CPA.

## COUNT 1579
### Unjust Enrichment
### (Kentucky Law)
### (Against Store-Brand Manufacturer Defendant Strides)

21020. Kentucky Class Representative Janet Asbury incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1056-1118, and 1257-1301 as though fully set forth herein.

21021. This cause of action is brought on behalf of the Kentucky-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

21022. Plainitffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21023. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plainitffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21024. Defendant readily accepted and retained these benefits from Plainitffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21025. It would be inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plainitffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21026. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plainitffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21027. Plainitffs and the Class members do not have an adequate remedy at law.

## COUNT 1580
### Violation of the Kentucky Consumer Protection Act
### (Ky. Rev. Stat. Ann. §367.110, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Strides)

21028. Kentucky Class Representative Janet Asbury incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1056-1118, and 1257-1301 as though fully set forth herein.

21029. This cause of action is brought on behalf of the Kentucky-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

21030. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Kentucky Class Representatives and members of the Kentucky Class and was in the business of selling such products.

21031. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ky. Rev. Stat. Ann. §355.2-314.

21032. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21033. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21034. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21035. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21036. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21037. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 3. Causes of Action on Behalf of the New York-Strides Classes

<div align="center">

**COUNT 1581**
**Violation of New York Deceptive Acts and Practices Act**
**(N.Y. Gen. Bus. Law §349)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21038. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1056-1118, and 1257-1301 as though fully set forth herein.

21039. This cause of action is brought on behalf of the New York-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

21040. Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h). Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

21041. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §349(a).

21042. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21043. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

21044. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21045. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21046. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21047. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21048. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21049. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plainitffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21050. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21051. As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

**COUNT 1582**
**Violation of the New York False Advertising Act**
**(N.Y. Gen. Bus. Law §350)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21052. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1056-1118, and 1257-1301 as though fully set forth herein.

21053. This cause of action is brought on behalf of the New York-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

21054. Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

21055. The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

21056. Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or

misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

21057. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21058. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

21059. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21060. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21061. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21062. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21063. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21064. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plainitffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21065. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21066. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

21067. As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the New York Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

<div style="text-align:center">

**COUNT 1583**
**Unjust Enrichment**
**(New York Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21068. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1056-1118, and 1257-1301 as though fully set forth herein.

21069. This cause of action is brought on behalf of the New York-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

21070. Plainitffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21071. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21072. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21073. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21074. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21075. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 1584**
**Breach of Implied Warranty**
**(N.Y. U.C.C. Law §2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21076. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 1056-1118, and 1257-1301 as though fully set forth herein.

21077. This cause of action is brought on behalf of the New York-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Rite-Aid Ranitidine.

21078. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representatives and members of the New York Class and was in the business of selling such products.

21079. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.Y. U.C.C. Law §2-314.

21080. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21081. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21082. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21083. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21084. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21085. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

M.     **Causes of Action Against Strides with Respect to Private-Label Product Walgreens Wal-Zan**

21086. For the purposes of the subsequent causes of action against Defendant Strides, Plaintiffs are incorporating the following allegations by reference: paragraphs 63-66 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic

ranitidine); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory

agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA);

387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422

(NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat,

moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469

(requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with

current Good Manufacturing Practices); 912-916, 962-978 (Walgreen's Store-Brand Ranitidine);

1093-1118, 1257-1275 (Strides' Store-Brand contract manufacturing); 979-989, 1276-1288

(misrepresentations or omissions of material fact in labeling); 990-1004, 1289-1301

(misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

21087. Plaintiffs identified in the table below bring claims against Defendant Strides on

behalf of themselves and their respective State Classes under the laws of their respective states.

Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*,

into their respective claims below:

| Plaintiff Name | State(s) of Residence |
|---|---|
| Tangie Sims | Arizona |
| Tina Culclager | Arkansas |
| Golbenaz Bakhtiar | California |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Angel Vega | Connecticut |
| Ronald Ragis | Florida |
| Renee Chatman | Illinois |
| Brian Nervig | Iowa |
| Sandra Erickson-Brown | Minnesota |
| Ernesto Sanchez | New Mexico |

| Gloria Colon | Puerto Rico |
| Marianella Villanueva | Texas |
| Jonathan Ferguson | Washington |

### 1. Causes of Action on Behalf of the Arizona-Strides Classes

**COUNT 1585**
**Violation of the Arizona Consumer Fraud Act**
**(Ariz. Rev. Stat. Ann. §44-1521, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21088. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21089. This cause of action is brought on behalf of the Arizona-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21090. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(6).

21091. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(5).

21092. The Arizona Consumer Fraud Act ("Arizona CFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." Ariz. Rev. Stat. Ann. §44-1522(A).

21093. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Arizona CFA by recklessly, wantonly, knowingly, and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21094. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Arizona CFA.

21095. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21096. Defendant's misreprsentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21097. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21098. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21099. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

21100. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Arizona CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21101. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21102. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21103. As a result of Defendant's violations of the Arizona CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

## COUNT 1586
### Unjust Enrichment
### (Arizona Law)
### (Against Store-Brand Manufacturer Defendant Strides)

21104. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21105. This cause of action is brought on behalf of the Arizona-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21106. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21107. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21108. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21109. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21110. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21111. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 1587
### Breach of Implied Warranty
### (Ariz. Rev. State. Ann. §47-2314)
### (Against Store-Brand Manufacturer Defendant Strides)

21112. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21113. This cause of action is brought on behalf of the Arizona-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

- 4217 -

21114. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arizona Class Representatives and members of the Arizona Class and was in the business of selling such products.

21115. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ariz. Rev. Stat. Ann. §47-2314.

21116. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21117. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21118. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21119. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21120. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21121. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 2.    Causes of Action on Behalf of the Arkansas-Strides Classes

**COUNT 1588**
**Violation of the Arkansas Deceptive Trade Practices Act**
**(Ark. Code Ann. §4-88-101, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21122. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21123. This cause of action is brought on behalf of the Arkansas-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21124. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ark. Code Ann. §4-88-102(5).

21125. The Ranitidine-Containing Products are "[g]oods" within the meaning of Ark. Code Ann. §4-88-102(4).

21126. The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices." Ark. Code Ann. §4-88-107(a).

21127. The Arkansas DTPA makes unlawful specific acts, including:

(a) "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" (Ark. Code Ann. §4-88-107(a)(1));

(b) "[a]dvertising the goods or services with the intent not to sell them as advertised" (Ark. Code Ann. §4-88-107(a)(3)); and

(c) "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" (Ark. Code Ann. §4-88-107(a)(10)).

21128. The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission . . . ." Ark. Code Ann. §4-88-108(a).

21129. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21130. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Arkansas DTPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

21131. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21132. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21133. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21134. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21135. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

21136. Plaintiffs and the Class members were aggrieved by Defendant's violations of Arkansas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21137. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21138. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21139. As a result of Defendant's violations of the Arkansas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

## COUNT 1589
## Unjust Enrichment
## (Arkansas Law)
## (Against Store-Brand Manufacturer Defendant Strides)

21140. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21141. This cause of action is brought on behalf of the Arkansas-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21142. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21143. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21144. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21145. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21146. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21147. There is no valid, legal, and binding contract governing this dispute.

21148. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1590**
**Breach of Implied Warranty**
**(Ark. Code Ann. §4-2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21149. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21150. This cause of action is brought on behalf of the Arkansas-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21151. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arkansas Class Representatives and members of the Arkansas Class and was in the business of selling such products.

21152. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ark. Code. Ann. §4-2-314.

21153. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21154. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21155. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21156. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21157. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21158. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 3. Causes of Action on Behalf of the California-Strides Classes

<div align="center">

**COUNT 1591**
**Violation of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code §17200, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21159. California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21160. This cause of action is brought on behalf of the California-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21161. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

21162. Cal. Bus. & Prof. Code §17200 ("California UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

21163. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California UCL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be

used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

21164. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California UCL.  These acts also constitute "fraudulent" business acts and practices under the California UCL in that Defendant's conduct is false, misleading, and has a tendency to deceive the Class and the general public.

21165. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21166. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21167. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21168. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21169. Moreover, Defendant engaged in "unlawful" business acts or practices by violating both federal and California laws, including: the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21 C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, CAL. HEALTH & SAFETY CODE §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, Cal. Civ. Code §1750; and the California FAL, Cal. Bus. & Prof. Code §17500, as alleged herein.

21170. Defendant conduct also consitutes "unfair" business acts or practies.  Under the balancing test, the determination of whether a business practice is "unfair" involves examining the practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.

21171. Additionally, Defendant's conduct was "unfair" under the tethering test, in that it violated the federal RICO statute, 18 U.S.C. §1962(c)-(d); adulteration and misbranding provisions under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§331(a), (c), (g), 351(a)(2)(B), (b), (d), 352(a)(1), (c), (e)(1)(A)(ii), (f)-(g), (i)(2)-(3), (j), (n), (p); Good Manufacturing Practices, 21

C.F.R. 210.1(a), 211.142(b); adulteration and misbranding provisions under the Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code §§111260, 111280, 111290, 111295, 111305, 111330, 111345, 111355(a)(3), 111360(b), 111375, 111380, 111395(a)-(b), 111400, 111440, 111445, 111450; the Consumer Legal Remedies Act, *see* Cal. Civ. Code §1760; and the California FAL, Cal. Bus. & Prof. Code §17500, which reflect the United States' and California's policy of protecting consumers against unfair and deceptive business practices and adulterated and misbranded drugs.

21172. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California UCL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21173. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21174. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21175. Pursuant to Cal. Bus. & Prof. Code §§17200 and 17203, Plaintiffs and the Class members seek an order providing restitution relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

**COUNT 1592**
**Violation of the California False Advertising Law**
**(Cal. Bus. & Prof. Code §17500, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21176. California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21177. This cause of action is brought on behalf of the California-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21178. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Cal. Bus. & Prof. Code §17506.

21179. The California False Advertising Law ("California FAL") prohibits "any person, . . . corporation . . . or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code §17500.

21180. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be

used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21181. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California FAL, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

21182. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21183. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21184. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21185. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21186. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California FAL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21187. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21188. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21189. As a result of Defendant's violations of the California FAL, as alleged herein, Plaintiffs and the Class members seek an order providing restitution and disgorgement of all profits relating to the above-described business acts or practices, and other appropriate relief, including injunctive and declaratory relief as may be appropriate under the California FAL.

**COUNT 1593**
**Violation of the California Consumers Legal Remedies Act**
**(Cal. Civ. Code §1750, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21190. California Class Representative Golbenaz Bakhtiar and incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21191. This cause of action is brought on behalf of the California-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21192. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Cal. Civ. Code §1761(c).

21193. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Cal. Civ. Code §1761(d).

21194. The Ranitidine-Containing Products are "[g]oods" within the meaning of Cal. Civ. Code §1761(a).

21195. The California Consumers Legal Remedies Act ("California CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §1770(a).

21196. The California CLRA makes unlawful specific acts, including:

    (a)    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Cal. Civ. Code §1770(a)(5));

    (b)     "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code §1770(a)(7));

    (c)     "[a]dvertising goods or services with intent not to sell them as advertised" (Cal. Civ. Code §1770(a)(9)); and

    (d)     "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (Cal. Civ. Code §1770(a)(16)).

21197. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the California CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21198. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the California CLRA, including:

    (a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (d)     engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

21199. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21200. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21201. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21202. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21203. Plaintiffs and the Class members were aggrieved by Defendant's violations of the California CLRA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products, as set forth above.

21204. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21205. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21206. Defendant was provided notice of the issues raised in this count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Cal. Civ. Code §1782 to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

21207. Pursuant to Cal. Civ. Code §1780(a), Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the California CLRA.  Under Cal. Civ. Code §1780(b), Plaintiffs seek an additional award against Defendant of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the California CLRA.  Defendant knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons.  Defendant's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or

disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendant's conduct.

<div align="center">

**COUNT 1594**
**Unjust Enrichment or Quasi-Contract**
**(California Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21208. California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21209. This cause of action is brought on behalf of the California-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21210. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21211. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21212. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21213. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21214. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21215. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1595**
**Breach of Implied Warranty**
**(Cal. Com. Code §2314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21216. California Class Representative Golbenaz Bakhtiar incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21217. This cause of action is brought on behalf of the California-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21218. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to California Class Representatives and members of the California Class and was in the business of selling such products.

21219. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Cal. Com. Code. §2314.

21220. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21221. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21222. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21223. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21224. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21225. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 4.      Causes of Action on Behalf of the Colorado-Strides Classes

**COUNT 1596**
**Violation of the Colorado Consumer Protection Act**
**(Colo. Rev. Stat. Ann. §6-1-101, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21226. Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21227. This cause of action is brought on behalf of the Colorado-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21228. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Colo. Rev. Stat. Ann. §6-1-102(6).

21229. The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices "in the course of the person's business, vocation, or occupation."  Colo. Rev. Stat. Ann. §6-1-105(1).

21230. The Colorado CPA makes unlawful specific acts, including:

(a)    "[e]ither knowingly or recklessly mak[ing] a false representation as to the source, sponsorship, approval, or certification of goods, services, or property" (Colo. Rev. Stat. Ann. §6-1-105(1)(b));

(b)    "[r]epresent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another" (Colo. Rev. Stat. Ann. §6-1-105(1)(g));

(c)    "[a]dvertis[ing] goods, services, or property with intent not to sell them as advertised" (Colo. Rev. Stat. Ann. §6-1-105(1)(i));

(d)    "[f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction" (Colo. Rev. Stat. Ann. §6-1-105(1)(u)); and

(e)    "[e]ither knowingly or recklessly engage[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice" (Colo. Rev. Stat. Ann. §6-1-105(1)(kkk)).

21231. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21232. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Colorado CPA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b) representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c) advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; and

(e) failing to disclose the defective Ranitidine-Containing Products in connection with their sale to the public.

21233. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21234. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21235. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21236. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21237. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

21238. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Colorado CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21239. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21240. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21241. As a result of Defendant's violations of the Colorado CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or

practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

<div align="center">

**COUNT 1597**
**Unjust Enrichment**
**(Colorado Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21242. Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21243. This cause of action is brought on behalf of the Colorado-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21244. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21245. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

21246. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members'

expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21247. It is unjust and inequitable for the Defendant to retain these benefits without commensurate compensation because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21248. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21249. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1598**
**Breach of Implied Warranty**
**(Colo. Rev. Stat. Ann. §4-2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21250. Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21251. This cause of action is brought on behalf of the Colorado-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21252. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21253. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

21254. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21255. It is unjust and inequitable for the Defendant to retain these benefits without commensurate compensation because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21256. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21257. Plaintiffs and the Class members do not have an adequate remedy at law.

**5.      Causes of Action on Behalf of the Connecticut-Strides Classes**

**COUNT 1599**
**Violation of the Connecticut Unfair Trade Practices Act**
**(Conn. Gen. Stat. Ann. §42-110a, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21258. Connecticut Class Representative Angel Vega incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21259. This cause of action is brought on behalf of the Connecticut-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21260. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Conn. Gen. Stat. Ann. §42-110a(3).

21261. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. §42-110a(4).

21262. The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. §42-110b(a).

21263. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date

on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21264. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Connecticut UTPA.

21265. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21266. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21267. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21268. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21269. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Connecticut UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21270. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21271. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21272. As a result of Defendant's violations of the Connecticut UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

## COUNT 1600
### Unjust Enrichment
### (Connecticut Law)
### (Against Store-Brand Manufacturer Defendant Strides)

21273. Connecticut Class Representative Angel Vega incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21274. This cause of action is brought on behalf of the Connecticut-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for

purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21275. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21276. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21277. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21278. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21279. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21280. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1601**
**Breach of Implied Warranty**
**(Conn. Gen. Stat. Ann. §42a-2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21281. Connecticut Class Representative Angel Vega incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21282. This cause of action is brought on behalf of the Connecticut-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21283. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Connecticut Class Representatives and members of the Connecticut Class and was in the business of selling such products.

21284. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Conn. Gen. Stat. Ann. §42a-2-314.

21285. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21286. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21287. Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21288. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21289. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21290. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

6.    **Causes of Action on Behalf of the Florida-Strides Classes**

**COUNT 1602**
**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**(Fla. Stat. Ann. §501.201,** *et seq.***)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21291. Florida Class Representative Ronald Ragis incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21292. This cause of action is brought on behalf of the Florida-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21293. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. Ann. §501.204(1).

21294. In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017."  Fla. Stat. Ann. §501.204(2).

21295. Plaintiffs and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA.  *See* Fla. Stat. Ann. §501.203(6)-(7).

21296. Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA.  *See* Fla. Stat. Ann. §501.203(8).

21297. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to

disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21298. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

21299. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21300. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21301. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21302. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21303. Plaintiffs and the Class members were aggrieved by Defendant's violations of FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21304. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21305. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21306. As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

**COUNT 1603**
**Unjust Enrichment**
**(Florida Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21307. Florida Class Representative Ronald Ragis incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21308. This cause of action is brought on behalf of the Florida-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21309. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21310. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered an impoverishment because they purchased worthless medications and did not receive the expected benefit therefrom.

21311. Defendant voluntarily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration

dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21312. It is unjust and inequitable for the Defendant to retain these benefits without paying the value thereof because the benefits were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21313. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21314. There is no express written contract governing this dispute.

21315. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1604**
**Breach of Implied Warranty**
**(Fla. Stat. Ann. §672.314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21316. Florida Class Representative Ronald Ragis incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21317. This cause of action is brought on behalf of the Florida-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21318. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Florida Class Representatives and members of the Florida Class and was in the business of selling such products.

21319. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Fla. Stat. Ann. §672.314.

21320. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21321. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21322. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21323. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21324. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21325. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 7. Causes of Action on Behalf of the Illinois-Strides Classes

### COUNT 1605
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (815 Ill. Comp. Stat. Ann. 505/1, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Strides)

21326. Illinois Class Representative Renee Chatman incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21327. This cause of action is brought on behalf of the Illinois-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21328. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(c).

21329. Plaintiffs and the Class members are "consumer[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(e).

21330. The Ranitidine-Containing Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(b).

21331. Defendant was and is engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(f).

21332. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 Ill. Comp. Stat. Ann. 510/2], approved August 5, 1965, in the conduct of any trade or commerce."  815 Ill. Comp. Stat. Ann. 505/2.

21333. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21334. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above,

Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFDBPA.

21335. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21336. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21337. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21338. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21339. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Illinois CFDBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21340. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21341. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21342. As a result of Defendant's violations of the Illinois CFDBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFDBPA.

## COUNT 1606
### Unjust Enrichment
### (Illinois Law)
### (Against Store-Brand Manufacturer Defendant Strides)

21343. Illinois Class Representative Renee Chatman incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21344. This cause of action is brought on behalf of the Illinois-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21345. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21346. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21347. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21348. It violates the principles of justice, equity, and good conscience for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21349. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21350. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

### COUNT 1607
### Breach of Implied Warranty
### (810 Ill. Comp. Stat. Ann. 5/2-314)
### (Against Store-Brand Manufacturer Defendant Strides)

21351. Illinois Class Representative Renee Chatman incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21352. This cause of action is brought on behalf of the Illinois-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21353. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Illinois Class Representatives and members of the Illinois Class and was in the business of selling such products.

21354. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. 810 Ill. Comp. Stat. Ann. 5/2-314.

21355. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used

completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21356. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21357. Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21358. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21359. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21360. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

8.     **Causes of Action on Behalf of the Iowa-Strides Classes**

**COUNT 1608**
**Violation of the Iowa Private Right of Action for Consumer Frauds Act**
**(Iowa Code Ann. §714H.1, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21361. Iowa Class Representative Brian Nervig incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21362. This cause of action is brought on behalf of the Iowa-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21363. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Iowa Code Ann. §714H.2(7).

21364. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Iowa Code Ann. §714H.2(3).

21365. The Iowa Private Right of Action for Consumer Frauds Act ("Iowa PRACFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise."  Iowa Code Ann. §714H.3(1).

21366. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Iowa PRACFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label

Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Defendant did so with willful and wanton disregard for the rights and safety of others.

21367. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Iowa PRACFA.

21368. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21369. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21370. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21371. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21372. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Iowa PRACFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21373. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out- of-pocket loss.

21374. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

21375. As a result of Defendants' violations of the Iowa PRACFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Iowa PRACFA.

21376. Additionally, because Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged

herein, were undertaken in willful and wanton disregard for the rights and safety of others, pursuant to Iowa Code §714H.5(4), Plaintiffs and the Class members seek an additonal award of treble damages.

<div align="center">

**COUNT 1609**
**Unjust Enrichment**
**(Iowa Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21377. Iowa Class Representative Brian Nervig incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21378. This cause of action is brought on behalf of the Iowa-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21379. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21380. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21381. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21382. It would be unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21383. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21384. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

<div align="center">

**COUNT 1610**
**Breach of Implied Warranty**
**(Iowa Code Ann. §554.2314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21385. Iowa Class Representative Brian Nervig incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21386. This cause of action is brought on behalf of the Iowa-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21387. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Iowa Class Representatives and members of the Iowa Class and was in the business of selling such products.

21388. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. IA Code §554.2314.

21389. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21390. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21391. Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21392. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21393. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability

because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21394. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 9. Causes of Action on Behalf of the Minnesota-Strides Classes

### COUNT 1611
### Violation of the Minnesota Prevention of Consumer Fraud Act
### (Minn. Stat. Ann. §325F.68, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Strides)

21395. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21396. This cause of action is brought on behalf of the Minnesota-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21397. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

21398. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

21399. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely

thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged." Minn. Stat. Ann. §325F.69(1). Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

21400. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21401. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

21402. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21403. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21404. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21405. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21406. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

21407. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21408. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21409. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21410. As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

**COUNT 1612**
**Unjust Enrichment**
**(Minnesota Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21411. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21412. This cause of action is brought on behalf of the Minnesota-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21413. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21414. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21415. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21416. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21417. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21418. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 1613
### Breach of Implied Warranty
### (Minn. Stat. Ann. §336.2-314)
### (Against Store-Brand Manufacturer Defendant Strides)

21419. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21420. This cause of action is brought on behalf of the Minnesota-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21421. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

21422. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Minn. Stat. Ann. §336.2-314

21423. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21424. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21425. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21426. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21427. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21428. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

10.       **Causes of Action on Behalf of the New Mexico-Strides Classes**

**COUNT 1614**
**Violation of the New Mexico Unfair Trade Practices Act**
**(N.M. Stat. Ann. §57-12-1, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21429. New Mexico Class Representative Ernesto Sanchez incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21430. This cause of action is brought on behalf of the New Mexico-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21431. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

21432. Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

21433. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person." N.M. Stat. Ann. §57-12-2(D). The New Mexico UTPA also makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity

of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." N.M. Stat. Ann. §57-12-2(E).

21434. The New Mexico UTPA makes unlawful specific acts, including:

    (a)    "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

    (b)    "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

    (c)    "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

21435. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21436. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Mexico UTPA, including:

    (a)    representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and

    (d)    acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.

21437. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21438. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21439. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21440. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21441. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21442. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21443. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

21444. As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

## COUNT 1615
### Unjust Enrichment
### (New Mexico Law)
### (Against Store-Brand Manufacturer Defendant Strides)

21445. New Mexico Class Representative Ernesto Sanchez incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21446. This cause of action is brought on behalf of the New Mexico-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21447. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21448. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21449. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21450. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21451. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21452. There is no express contract governing this dispute.

21453. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1616**
**Breach of Implied Warranty**
**(N.M. Stat. Ann. §55-2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21454. New Mexico Class Representatives Ernesto Sanchez incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21455. This cause of action is brought on behalf of the New Mexico-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21456. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

21457. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.M. Stat. Ann. §55-2-314.

21458. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21459. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21460. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21461. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21462. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21463. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

11.     **Causes of Action on Behalf of the Puerto Rico-Strides Classes**

### COUNT 1617
### Unjust Enrichment
### (Puerto Rico Law)
### (Against Store-Brand Manufacturer Defendant Strides)

21464. Puerto Rico Class Representative Gloria Colon incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21465. This cause of action is brought on behalf of the Puerto Rico-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21466. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21467. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.  Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels

that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21468. Defendants' enrichment – the monies obtained from Plaintiffs' and Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and Class members' impoverishment – i.e., Plaintiffs' and Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

21469. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21470. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21471. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1618**
**Breach of Implied Warranty**
**(P.R. Laws Ann. Tit. 31, §3841)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21472. Puerto Rico Class Representative Gloria Colon incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21473. This cause of action is brought on behalf of the Puerto Rico-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21474. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Puerto Rico Class Representatives and members of the Puerto Rico Class and was in the business of selling such products.

21475. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. P.R. Laws. Ann. Tit. 31, §3841.

21476. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21477. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21478. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21479. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21480. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21481. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 12.    Causes of Action on Behalf of the Texas-Strides Classes

### COUNT 1619
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
### (Tex. Bus. & Com. Code Ann. §17.41, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Strides)

21482. Texas Class Representative Marianella Villanueva incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21483. This cause of action is brought on behalf of the Texas-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21484. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

21485. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

21486. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

21487. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

21488. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

21489. The Texas DTPA makes unlawful specific acts, including:

(a)     "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

(b)     "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

(c)     "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

21490. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the

- 4290 -

products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21491. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

> (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;
>
> (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and
>
> (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

21492. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21493. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21494. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21495. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered

material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21496. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

21497. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21498. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21499. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21500. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became

public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

21501. As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

<div align="center">

**COUNT 1620**
**Unjust Enrichment**
**(Texas Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21502. Texas Class Representative Marianella Villanueva incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21503. This cause of action is brought on behalf of the Texas-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21504. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21505. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe

levels of NDMA as time passed.   Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21506. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21507. It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21508. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21509. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

<div align="center">

**COUNT 1621**
**Breach of Implied Warranty**
**(Tex. Bus. & Com. Code Ann. §2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21510. Texas Class Representative Marianella Villanueva incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21511. This cause of action is brought on behalf of the Texas-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21512. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

21513. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Tex. Bus. & Com. Code Ann. §2-314.

21514. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21515. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21516. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21517. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21518. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21519. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 13.    Causes of Action on Behalf of the Washington-Strides Classes

### COUNT 1622
### Violation of the Washington Consumer Protection Act
### (Wash. Rev. Code Ann. §19.86.010, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Strides)

21520. Washington Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21521. This cause of action is brought on behalf of the Washington-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21522. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Wash. Rev. Code Ann. §19.86.010(1).

21523. The Ranitidine-Containing Products are "[a]ssets" within the meaning of Wash. Rev. Code Ann. §19.86.010(3).

21524. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Wash. Rev. Code Ann. §19.86.010(2).

21525. The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Wash. Rev. Code Ann. §19.86.020.

21526. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21527. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington CPA.

21528. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21529. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21530. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21531. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21532. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Washington CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21533. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21534. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

21535. On June 22, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Wash. Rev. Code §19.86.095 to the Attorney General of the State of Washington.

21536. As a result of Defendant's violations of the Washington CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Washington CPA.

<div align="center">

**COUNT 1623**
**Unjust Enrichment**
**(Washington Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21537. Washington Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21538. This cause of action is brought on behalf of the Washington-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21539. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21540. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21541. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21542. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21543. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21544. There is no express contract governing this dispute.

21545. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1624**
**Breach of Implied Warranty**
**(Wash. Rev. Code Ann. §62A 2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21546. Washington Class Representative Jonathan Ferguson incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-916, 962-1004, 1093-1118, and 1257-1301 as though fully set forth herein.

21547. This cause of action is brought on behalf of the Washington-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walgreens Wal-Zan.

21548. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Washington Class Representatives and members of the Washington Class and was in the business of selling such products.

21549. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Wash. Rev. Code §62A 2-314.

21550. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21551. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21552. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21553. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21554. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21555. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### N.   Causes of Action Against Strides with Respect to Private-Label Product Walmart Equate Ranitidine

21556. For the purposes of the subsequent causes of action against Defendant Strides, Plaintiffs are incorporating the following allegations by reference: paragraphs 63-66 (corporate information); 273-277 (jurisdiction and venue); 304-316, 455-461 (development of generic

ranitidine); 317-361 (knowledge that NDMA is carcinogenic); 362-382 (discovery by regulatory

agencies that ranitidine contained NDMA); 383-386 (transformation of ranitidine into NDMA);

387-415, 445-456 (knowledge that ranitidine had the potential to transform into NDMA); 416-422

(NDMA formation in organs of the human body); 423-435 (NDMA formation by exposure to heat,

moisture and/or time); 436-442 (link between ranitidine exposure and cancer); 462-469

(requirement to notify the FDA of presence of NDMA in ranitidine); 470-474 (compliance with

current Good Manufacturing Practices); 912-916, 917-936 (Walmart's Store-Brand Ranitidine);

1093-1118, 1257-1275 (Strides' Store-Brand contract manufacturing); 937-946, 1276-1288

(misrepresentations or omissions of material fact in labeling); 947-961, 1289-1301

(misrepresentations or omissions of material fact in packaging); and 475-483 (equitable tolling).

21557. Plaintiffs identified in the table below bring claims against Defendant Strides on

behalf of themselves and their respective State Classes under the laws of their respective states.

Each Plaintiff incorporates by reference the allegations specific to them from Section II.B., *supra*,

into their respective claims below:

| **Plaintiff Name** | **State(s) of Residence** |
|---|---|
| Tangie Sims | Arizona |
| Tina Culclager | Arkansas |
| Jonathan Ferguson | Washington |
| Jeffrey Pisano | Colorado |
| Ronald Ragan | Colorado |
| Michael Tomlinson | Florida |
| Kathy Jeffries | Georgia |
| Carol Harkins | Illinois |
| Vickie Anderson | Illinois |
| Randy Jones | Louisiana |
| Jennifer Bond | Massachusetts |

| Sandra Erickson-Brown | Minnesota |
| Lora Mauffray | Mississippi |
| Shirley Magee | Mississippi |
| James Adamo | New Jersey |
| Ernesto Sanchez | New Mexico |
| Carrie Martinez | New Mexico |
| George Tapia | New Mexico |
| Richard Froelich | New York |
| Jeffrey Garrett | Tennessee |
| Marilyn Abraham | Texas |
| Marianella Villanueva | Texas |
| Dan Zhovtis | Virginia |
| Robert Dewitt | Washington |

### 1.     Causes of Action on Behalf of the Arizona-Strides Classes

### COUNT 1625
### Violation of the Arizona Consumer Fraud Act
### (Ariz. Rev. Stat. Ann. §44-1521, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Strides)

21558. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21559. This cause of action is brought on behalf of the Arizona-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21560. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(6).

21561. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Ariz. Rev. Stat. Ann. §44-1521(5).

21562. The Arizona Consumer Fraud Act ("Arizona CFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." Ariz. Rev. Stat. Ann. §44-1522(A).

21563. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Arizona CFA by recklessly, wantonly, knowingly, and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21564. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Arizona CFA.

21565. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21566. Defendant's misreprsentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a unform manner.

21567. Defendant's unfair or deceptive acts or practices, inlcuding its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21568. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21569. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

21570. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Arizona CFA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21571. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21572. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21573. As a result of Defendant's violations of the Arizona CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

<div align="center">

**COUNT 1626**
**Unjust Enrichment**
**(Arizona Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21574. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21575. This cause of action is brought on behalf of the Arizona-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21576. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21577. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21578. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21579. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21580. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21581. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1627**
**Breach of Implied Warranty**
**(Ariz. Rev. State. Ann. §47-2314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21582. Arizona Class Representative Tangie Sims incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21583. This cause of action is brought on behalf of the Arizona-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21584. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arizona Class Representatives and members of the Arizona Class and was in the business of selling such products.

21585. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ariz. Rev. Stat. Ann. §47-2314.

21586. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21587. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21588. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21589. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21590. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21591. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

2.      **Causes of Action on Behalf of the Arkansas-Strides Classes**

**COUNT 1628**
**Violation of the Arkansas Deceptive Trade Practices Act**
**(Ark. Code Ann. §4-88-101, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21592. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21593. This cause of action is brought on behalf of the Arkansas-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21594. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ark. Code Ann. §4-88-102(5).

21595. The Ranitidine-Containing Products are "[g]oods" within the meaning of Ark. Code Ann. §4-88-102(4).

21596. The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices."  Ark. Code Ann. §4-88-107(a).

21597. The Arkansas DTPA makes unlawful specific acts, including:

(a)      "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model" (Ark. Code Ann. §4-88-107(a)(1));

(b)      "[a]dvertising the goods or services with the intent not to sell them as advertised" (Ark. Code Ann. §4-88-107(a)(3)); and

(c)      "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" (Ark. Code Ann. §4-88-107(a)(10)).

- 4311 -

21598. The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; [or] (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission . . . ." Ark. Code Ann. §4-88-108(a).

21599. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21600. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Arkansas DTPA, including:

(a)     representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)          engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

21601. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21602. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21603. Defendant's unfair or deceptive acts or practices, inlcuding its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21604. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21605. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

21606. Plaintiffs and the Class members were aggrieved by Defendant's violations of Arkansas DTPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21607. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21608. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

21609. As a result of Defendant's violations of the Arkansas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

<div align="center">

**COUNT 1629**
**Unjust Enrichment**
**(Arkansas Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21610. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21611. This cause of action is brought on behalf of the Arkansas-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21612. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21613. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21614. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21615. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21616. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21617. There is no valid, legal, and binding contract governing this dispute.

21618. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1630**
**Breach of Implied Warranty**
**(Ark. Code Ann. §4-2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21619. Arkansas Class Representative Tina Culclager incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21620. This cause of action is brought on behalf of the Arkansas-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21621. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Arkansas Class Representatives and members of the Arkansas Class and was in the business of selling such products.

21622. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ark. Code. Ann. §4-2-314.

21623. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21624. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21625. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21626. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21627. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21628. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

3.      **Causes of Action on Behalf of the Colorado-Strides Classes**

**COUNT 1631**
**Violation of the Colorado Consumer Protection Act**
**(Colo. Rev. Stat. Ann. §6-1-101, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21629. Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21630. This cause of action is brought on behalf of the Colorado-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21631. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Colo. Rev. Stat. Ann. §6-1-102(6).

21632. The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices "in the course of the person's business, vocation, or occupation."  Colo. Rev. Stat. Ann. §6-1-105(1).

21633. The Colorado CPA makes unlawful specific acts, including:

(a)      "[e]ither knowingly or recklessly mak[ing] a false representation as to the source, sponsorship, approval, or certification of goods, services, or property" (Colo. Rev. Stat. Ann. §6-1-105(1)(b));

(b)      "[r]epresent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another" (Colo. Rev. Stat. Ann. §6-1-105(1)(g));

(c)      "[a]dvertis[ing] goods, services, or property with intent not to sell them as advertised" (Colo. Rev. Stat. Ann. §6-1-105(1)(i));

(d)      "[f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or

sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction" (Colo. Rev. Stat. Ann. §6-1-105(1)(u)); and

(e)  "[e]ither knowingly or recklessly engage[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice" (Colo. Rev. Stat. Ann. §6-1-105(1)(kkk)).

21634. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21635. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Colorado CPA, including:

(a)  representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)  representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)  advertising the Ranitidine-Containing Products with the intent not to sell them as advertised;

(d)  engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; and

(e)  failing to disclose the defective Ranitidine-Containing Products in connection with their sale to the public.

- 4319 -

21636. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21637. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21638. Defendant's unfair or deceptive acts or practices, inlcuding its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21639. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21640. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

21641. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Colorado CPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21642. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21643. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21644. As a result of Defendant's violations of the Colorado CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

**COUNT 1632**
**Unjust Enrichment**
**(Colorado Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21645. Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21646. This cause of action is brought on behalf of the Colorado-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21647. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21648. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

21649. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21650. It is unjust and inequitable for the Defendant to retain these benefits without commensurate compensation because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21651. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21652. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1633**
**Breach of Implied Warranty**
**(Colo. Rev. Stat. Ann. §4-2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21653. Colorado Class Representatives Jeffrey Pisano and Ronald Ragan incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21654. This cause of action is brought on behalf of the Colorado-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21655. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21656. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

21657. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on

the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21658. It is unjust and inequitable for the Defendant to retain these benefits without commensurate compensation because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21659. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21660. Plaintiffs and the Class members do not have an adequate remedy at law.

### 4.  Causes of Action on Behalf of the Florida-Strides Classes

### COUNT 1634
### Violation of the Florida Deceptive and Unfair Trade Practices Act
### (Fla. Stat. Ann. §501.201, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Strides)

21661. Florida Class Representative Michael Tomlinson incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21662. This cause of action is brought on behalf of the Florida-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21663. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. Ann. §501.204(1).

21664. In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017."  Fla. Stat. Ann. §501.204(2).

21665. Plaintiffs and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA.  *See* Fla. Stat. Ann. §501.203(6)-(7).

21666. Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA.  *See* Fla. Stat. Ann. §501.203(8).

21667. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21668. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

21669. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21670. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21671. Defendant's unfair or deceptive acts or practices, inlcuding its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21672. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21673. Plaintiffs and the Class members were aggrieved by Defendant's violations of FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21674. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21675. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21676. As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

<div align="center">

**COUNT 1635**
**Unjust Enrichment**
**(Florida Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21677. Florida Class Representative Michael Tomlinson incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21678. This cause of action is brought on behalf of the Florida-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21679. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21680. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members suffered an impoverishment because they purchased worthless medications and did not receive the expected benefit therefrom.

21681. Defendant voluntarily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21682. It is unjust and inequitable for the Defendant to retain these benefits without paying the value thereof because the benefits were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21683. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21684. There is no express written contract governing this dispute.

21685. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1636**
**Breach of Implied Warranty**
**(Fla. Stat. Ann. §672.314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21686. Florida Class Representative Michael Tomlinson incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21687. This cause of action is brought on behalf of the Florida-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21688. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Florida Class Representatives and members of the Florida Class and was in the business of selling such products.

21689. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Fla. Stat. Ann. §672.314.

21690. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21691. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21692. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21693. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21694. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21695. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

5.      **Causes of Action on Behalf of the Georgia-Strides Classes**

**COUNT 1637**
**Violation of the Georgia Fair Business Practices Act**
**(Ga. Code Ann. §10-1-390, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21696. Georgia Class Representative Kathy Jeffries incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21697. This cause of action is brought on behalf of the Georgia-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21698. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(24).

21699. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(6).

21700. Defendant was and is engaged in "[t]rade" and "commerce" within the meaning of Ga. Code Ann. §10-1-392(a)(28).

21701. The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."  Ga. Code Ann. §10-1-393(a).

21702. The Georgia FBPA makes unlawful specific acts, including:

(a)     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-393(b)(5));

(b)    "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-393(b)(7)); and

(c)    "[a]dvertising goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-393(b)(9)).

21703. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21704. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia FBPA, including:

(a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

(d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

- 4332 -

21705. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21706. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21707. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21708. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21709. Plaintiffs and the Class members reasonably relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

21710. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Georgia FBPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21711. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21712. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

21713. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public. In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Ga. Code Ann. §10-1-399(b) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

21714. As a result of Defendant's violations of the Georgia FBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Georgia FBPA.

**COUNT 1638**
**Unjust Enrichment**
**(Georgia Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21715. Georgia Class Representative Kathy Jeffries incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21716. This cause of action is brought on behalf of the Georgia-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21717. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21718. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21719. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21720. It is inequitable and unconscionable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21721. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21722. There is no express contract governing this dispute.

21723. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1639**
**Breach of Implied Warranty**
**(Ga. Code Ann. §11-2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21724. Georgia Class Representative Kathy Jeffries incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21725. This cause of action is brought on behalf of the Georgia-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21726. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Georgia Class Representatives and members of the Georgia Class and was in the business of selling such products.

21727. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Ga. Code. Ann. §11-2-314.

21728. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21729. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21730. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21731. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21732. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability

because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21733. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 6.    Causes of Action on Behalf of the Illinois-Strides Classes

### COUNT 1640
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (815 Ill. Comp. Stat. Ann. 505/1, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Strides)

21734. Illinois Class Representatives Carol Harkins and Vickie Anderson incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21735. This cause of action is brought on behalf of the Illinois-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21736. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(c).

21737. Plaintiffs and the Class members are "consumer[s]" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(e).

21738. The Ranitidine-Containing Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(b).

21739. Defendant was and is engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. Ann. 505/1(f).

21740. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 Ill. Comp. Stat. Ann. 510/2], approved August 5, 1965, in the conduct of any trade or commerce."  815 Ill. Comp. Stat. Ann. 505/2.

21741. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21742. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFDBPA.

21743. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21744. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21745. Defendant's unfair or deceptive acts or practices, inlcuding its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21746. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21747. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Illinois CFDBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21748. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21749. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21750. As a result of Defendant's violations of the Illinois CFDBPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFDBPA.

<div align="center">

**COUNT 1641**
**Unjust Enrichment**
**(Illinois Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21751. Illinois Class Representatives Carol Harkins and Vickie Anderson incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21752. This cause of action is brought on behalf of the Illinois-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21753. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21754. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing

Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21755. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21756. It violates the principles of justice, equity, and good conscience for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21757. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for the value thereof, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21758. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing the dispute.

**COUNT 1642**
**Breach of Implied Warranty**
**(810 Ill. Comp. Stat. Ann. 5/2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21759. Illinois Class Representatives Carol Harkins and Vickie Anderson incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21760. This cause of action is brought on behalf of the Illinois-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21761. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Illinois Class Representatives and members of the Illinois Class and was in the business of selling such products.

21762. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. 810 Ill. Comp. Stat. Ann. 5/2-314.

21763. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21764. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21765. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21766. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21767. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21768. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 7.     Causes of Action on Behalf of the Louisiana-Strides Classes

### COUNT 1643
### Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law
### (La. Stat. Ann. §51:1401, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Strides)

21769. Louisiana Class Representative Randy Jones incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21770. This cause of action is brought on behalf of the Louisiana-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21771. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of La. Stat. Ann. §51:1402(8).

21772. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of La. Stat. Ann. §51:1402(1).

21773. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of La. Stat. Ann. §51:1402(10).

21774. The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  La. Stat. Ann. §51:1405(A).

21775. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets

in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21776. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Louisiana CPL.

21777. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21778. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21779. Defendant's unfair or deceptive acts or practices, inlcuding its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21780. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21781. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

21782. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Louisiana CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21783. Specifically, Plaintiffs and the Class were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21784. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21785. As a result of Defendant's violations of the Louisiana CPL, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Louisiana CPL.

**COUNT 1644**
**Unjust Enrichment**
**(Louisiana Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21786. Louisiana Class Representative Randy Jones incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21787. This cause of action is brought on behalf of the Louisiana-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21788. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21789. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21790. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

21791. Defendants' enrichment – the monies obtained from Plaintiffs for the Ranitidine Containing-Drugs – was the result of Plaintiffs' impoverishment – the receipt by Plaintiffs of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

21792. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21793. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21794. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

## COUNT 1645
### Breach of Implied Warranty
### (La. Stat. Ann. Art. §2520)
### (Against Store-Brand Manufacturer Defendant Strides)

21795. Louisiana Class Representative Randy Jones incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21796. This cause of action is brought on behalf of the Louisiana-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21797. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Louisiana Class Representatives and members of the Louisiana Class and was in the business of selling such products.

21798. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. La. Civ. Code. Ann. §2520.

21799. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21800. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21801. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21802. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21803. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21804. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**8. Causes of Action on Behalf of the Massachusetts-Strides Classes**

**COUNT 1646**
**Violation of the Deceptive Acts or Practices Prohibited by Massachusetts Law**
**(Mass. Gen. Laws Ann. ch. 93a, §1, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21805. Massachussetts Class Representative Jennifer Bond incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21806. This cause of action is brought on behalf of the Massachusetts-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21807. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(a).

21808. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Mass. Gen. Laws Ann. ch. 93A, §1(b).

21809. The Massachusetts consumer protection law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws Ann. ch. 93A, §2(a).

21810. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21811. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Massachusetts Act.

21812. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21813. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21814. Defendant's unfair or deceptive acts or practices, inlcuding its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21815. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21816. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Massachusetts Act because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21817. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21818. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21819. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public. In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Mass. Gen. Laws Ann. ch. 93A, §9(3) to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

21820. As a result of Defendant's violations of the Massachusetts Act, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Massachusetts Act.

<div align="center">

**COUNT 1647**
**Unjust Enrichment**
**(Massachusetts Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21821. Massachussetts Class Representative Jennifer Bond incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21822. This cause of action is brought on behalf of the Massachusetts-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21823. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21824. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21825. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed

21826. Defendant's enrichment – the monies obtained from Plaintiffs' and Class members' purchases of Ranitidine-Containing Products – was the result of Plaintiffs' and Class members' impoverishment – i.e., Plaintiffs' and Class members' receipt of worthless Ranitidine-Containing Products that were unsafe and unfit for human consumption.

21827. It is unjustifiable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21828. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21829. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 1648
### Breach of Implied Warranty
### (Mass. Gen. Laws Ch. 106 §2-314)
### (Against Store-Brand Manufacturer Defendant Strides)

21830. Massachussetts Class Representative Jennifer Bond incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21831. This cause of action is brought on behalf of the Massachusetts-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21832. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Massachusetts Class Representatives and members of the Massachusetts Class and was in the business of selling such products.

21833. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Mass. Gen. Law Ch. 106 §2-314.

21834. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the

expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21835. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21836. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21837. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21838. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21839. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 9. Causes of Action on Behalf of the Minnesota-Strides Classes

### COUNT 1649
### Violation of the Minnesota Prevention of Consumer Fraud Act
### (Minn. Stat. Ann. §325F.68, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Strides)

21840. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21841. This cause of action is brought on behalf of the Minnesota-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21842. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Minn. Stat. Ann. §325F.68(3).

21843. The Ranitidine-Containing Products are "[m]erchandise" within the meaning of Minn. Stat. Ann. §325F.68(2).

21844. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged." Minn. Stat. Ann. §325F.69(1). Prohibited practices include: (i) deceptive practices concerning the quality of goods or services pursuant to Minn. Stat. Ann. §325D.44; (ii) fraud in connection with the sale of any merchandise pursuant to Minn. Stat. Ann. §325F.69; and (iii) misrepresentation of product ingredients or quality pursuant to Minn. Stat. Ann. §325D.13.

21845. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21846. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

21847. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21848. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21849. Defendant's unfair or deceptive acts or practices, inlcuding its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21850. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21851. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

21852. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21853. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21854. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

21855. As a result of Defendant's violations of the Minnesota CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

## COUNT 1650
### Unjust Enrichment
### (Minnesota Law)
### (Against Store-Brand Manufacturer Defendant Strides)

21856. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21857. This cause of action is brought on behalf of the Minnesota-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21858. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21859. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21860. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21861. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21862. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21863. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1651**
**Breach of Implied Warranty**
**(Minn. Stat. Ann. §336.2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21864. Minnesota Class Representative Sandra Erickson-Brown incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21865. This cause of action is brought on behalf of the Minnesota-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21866. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Minnesota Class Representatives and members of the Minnesota Class and was in the business of selling such products.

21867. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Minn. Stat. Ann. §336.2-314

21868. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21869. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21870. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21871. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21872. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21873. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 10.    Causes of Action on Behalf of the Mississippi-Strides Classes

<div align="center">

**COUNT 1652**
**Unjust Enrichment**
**(Mississippi Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21874. Mississippi Class Representatives Lora Mauffray and Shirley Magee incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21875. This cause of action is brought on behalf of the Mississippi-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21876. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21877. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members suffered a detriment because they purchased worthless medications and did not receive the expected benefit therefrom.

21878. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21879. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21880. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21881. There is no express contract governing this dispute.

21882. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1653**
**Breach of Implied Warranty**
**(Miss. Code Ann. §75-2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21883. Mississippi Class Representatives Lora Mauffray and Shirley Magee incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21884. This cause of action is brought on behalf of the Mississippi-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21885. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Mississippi Class Representatives and members of the Mississippi Class and was in the business of selling such products.

21886. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Miss. Code Ann. §75-2-314.

21887. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21888. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21889. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21890. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21891. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21892. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 11. Causes of Action on Behalf of the New Jersey-Strides Classes

### COUNT 1654
### Violation of the New Jersey Consumer Fraud Act
### (N.J. Stat. Ann. §56:8-1, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Strides)

21893. New Jersey Class Representative James Adamo incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21894. This cause of action is brought on behalf of the New Jersey-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21895. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.J. Stat. Ann. §56:8-1(d).

21896. The Ranitidine-Containing Products are "merchandise" within the meaning of N.J. Stat. Ann. §56:8-1(c).

21897. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Jersey Consumer Fraud Act ("New Jersey CFA") by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  N.J. Stat. Ann. §56:8-1, *et seq.*

21898. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Jersey CFA.

21899. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21900. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21901. Defendant's unfair or deceptive acts or practices, inlcuding its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21902. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21903. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Jersey CFA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21904. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21905. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21906. As a result of Defendant's violations of the New Jersey CFA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Jersey CFA.

<div align="center">

**COUNT 1655**
**Unjust Enrichment**
**(New Jersey)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21907. New Jersey Class Representative James Adamo incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21908. This cause of action is brought on behalf of the New Jersey-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21909. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21910. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21911. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21912. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21913. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21914. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 1656**
**Breach of Implied Warranty**
**(N.J. Stat. Ann. §12A:2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21915. New Jersey Class Representative James Adamo incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21916. This cause of action is brought on behalf of the New Jersey-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21917. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Jersey Class Representatives and members of the New Jersey Class and was in the business of selling such products.

21918. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.J. Stat. Ann. §12A:2-314.

21919. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21920. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21921. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21922. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21923. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21924. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

12.     **Causes of Action on Behalf of the New Mexico-Strides Classes**

**COUNT 1657**
**Violation of the New Mexico Unfair Trade Practices Act**
**(N.M. Stat. Ann. §57-12-1, *et seq.*)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21925. New Mexico Class Representatives Ernesto Sanchez, Carrie Martinez, and George Tapia incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21926. This cause of action is brought on behalf of the New Mexico-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21927. Defendant, Plaintiffs, and the Class members are "person[s]" within the meaning of N.M. Stat. Ann. §57-12-2(A).

21928. Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. §57-12-2(C).

21929. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person." N.M. Stat. Ann. §57-12-2(D). The New Mexico UTPA also makes unlawful "an act or practice in connection with the sale, lease, rental, or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity

of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." N.M. Stat. Ann. §57-12-2(E).

21930. The New Mexico UTPA makes unlawful specific acts, including:

(a) "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (N.M. Stat. Ann. §57-12-2(D)(5));

(b) "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" (N.M. Stat. Ann. §57-12-2(D)(7)); and

(c) "using exaggeration, innuendo or ambiguity as to a material fact . . . if doing so deceives or tends to deceive" (N.M. Stat. Ann. §57-12-2(D)(14)).

21931. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21932. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New Mexico UTPA, including:

(a) representing that Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

(b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

(c)    using exaggeration and/or failing to state the material facts concerning the Ranitidine-Containing Products in a manner that tended to deceive; and

(d)    acting in a manner that resulted in a gross disparity between the true value of the Ranitidine-Containing Products and the price paid.

21933. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21934. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21935. Defendant's unfair or deceptive acts or practices, inlcuding its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21936. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21937. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21938. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21939. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21940. As a result of Defendant's violations of the New Mexico UTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

<div align="center">

**COUNT 1658**
**Unjust Enrichment**
**(New Mexico Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

21941. New Mexico Class Representatives Ernesto Sanchez, Carrie Martinez, and George Tapia incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21942. This cause of action is brought on behalf of the New Mexico-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21943. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21944. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21945. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21946. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21947. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21948. There is no express contract governing this dispute.

21949. Plaintiffs and the Class members do not have an adequate remedy at law.

## COUNT 1659
### Breach of Implied Warranty
### (N.M. Stat. Ann. §55-2-314)
### (Against Store-Brand Manufacturer Defendant Strides)

21950. New Mexico Class Representatives Ernesto Sanchez, Carrie Martinez, and George Tapia incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21951. This cause of action is brought on behalf of the New Mexico-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21952. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New Mexico Class Representatives and members of the New Mexico Class and was in the business of selling such products.

21953. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.M. Stat. Ann. §55-2-314.

21954. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

21955. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

21956. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

21957. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

21958. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

21959. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

13.     **Causes of Action on Behalf of the New York-Strides Classes**

**COUNT 1660**
**Violation of New York Deceptive Acts and Practices Act**
**(N.Y. Gen. Bus. Law §349)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21960. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21961. This cause of action is brought on behalf of the New York-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21962. Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h).  Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

21963. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §349(a).

21964. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during

which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21965. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

21966. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21967. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21968. Defendant's unfair or deceptive acts or practices, inlcuding its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21969. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21970. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21971. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21972. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21973. As a result of Defendant's violations of the New York DAPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York DAPA.

**COUNT 1661**
**Violation of the New York False Advertising Act**
**(N.Y. Gen. Bus. Law §350)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21974. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21975. This cause of action is brought on behalf of the New York-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for

purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21976. Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law §350.

21977. The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a(1).

21978. Defendant caused to be made or disseminated through New York and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

21979. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the

products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21980. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the New York FAA.

21981. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21982. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

21983. Defendant's unfair or deceptive acts or practices, inlcuding its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

21984. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

21985. Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

21986. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

21987. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

21988. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant. Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

21989. As a result of Defendant's violations of the New York FAA, as alleged herein, Plaintiffs and the New York Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York FAA.

**COUNT 1662**
**Unjust Enrichment**
**(New York Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

21990. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21991. This cause of action is brought on behalf of the New York-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

21992. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

21993. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

21994. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

21995. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

21996. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

21997. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

### COUNT 1663
### Breach of Implied Warranty
### (N.Y. U.C.C. Law §2-314)
### (Against Store-Brand Manufacturer Defendant Strides)

21998. New York Class Representative Richard Froehlich incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

21999. This cause of action is brought on behalf of the New York-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

22000. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to New York Class Representatives and members of the New York Class and was in the business of selling such products.

22001. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used,

including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. N.Y. U.C.C. Law §2-314.

22002. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

22003. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

22004. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

22005. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

22006. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

22007. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 14. Causes of Action on Behalf of the Tennessee-Strides Classes

### COUNT 1664
### Violation of the Tennessee Consumer Protection Act of 1977
### (Tenn. Code Ann. §47-18-101, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Strides)

22008. Tennessee Class Representative Jeffrey Garrett incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

22009. This cause of action is brought on behalf of the Tennessee-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

22010. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tenn. Code Ann. §47-18-103(14).

22011. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tenn. Code Ann. §47-18-103(3).

22012. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tenn. Code Ann. §47-18-103(8).

22013. Defendant was and is engaged in "[t]rade" or "commerce" or "consumer transaction[s]" within the meaning of Tenn. Code Ann. §47-18-103(20).

22014. The Tennessee Consumer Protection Act of 1977 ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce."  Tenn. Code Ann. §47-18-104(a).

22015. The Tennessee CPA makes unlawful specific acts, including:

(a) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tenn. Code Ann. §47-18-104(b)(5));

(b) "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (Tenn. Code Ann. §47-18-104(b)(7)); and

(c) "[a]dvertising goods or services with intent not to sell them as advertised" (Tenn. Code Ann. §47-18-104(b)(9)).

22016. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

22017. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Tennessee CPA, including:

(a) representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

       (b)     representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

       (c)     advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

22018. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

22019. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

22020. Defendant's unfair or deceptive acts or practices, inlcuding its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

22021. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

22022. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Tennessee CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

22023. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

22024. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

22025. As a result of Defendant's violations of the Tennessee CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Tennessee CPA.

<div align="center">

**COUNT 1665**
**Unjust Enrichment**
**(Tennessee Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

22026. Tennessee Class Representative Jeffrey Garrett incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

22027. This cause of action is brought on behalf of the Tennessee-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

22028. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

22029. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

22030. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

22031. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

22032. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

22033. There is no existing, enforceable contract governing this dispute.

22034. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1666**
**Breach of Implied Warranty**
**(Tenn. Code Ann. §47-2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

22035. Tennessee Class Representative Jeffrey Garrett incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

22036. This cause of action is brought on behalf of the Tennessee-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

22037. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Tennessee Class Representatives and members of the Tennessee Class and was in the business of selling such products.

22038. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Tenn. Code Ann. §47-2-314.

22039. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

22040. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

22041. Plaintiffs and each member of the Class have had sufficient direct dealings with either  Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

22042. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

22043. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

22044. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 15.    Causes of Action on Behalf of the Texas-Strides Classes

### COUNT 1667
### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act
### (Tex. Bus. & Com. Code Ann. §17.41, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Strides)

22045. Texas Class Representatives Marianella Villanueva and Marilyn Abraham incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

22046. This cause of action is brought on behalf of the Texas-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

22047. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(3).

22048. Plaintiffs and the Class members are "[c]onsumer[s]" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(4).

22049. The Ranitidine-Containing Products are "[g]oods" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(1).

22050. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. §17.45(6).

22051. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code Ann. §17.46(a), and an "[u]nconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. §§17.45(5) and 17.50(a)(3).

22052. The Texas DTPA makes unlawful specific acts, including:

    (a)    "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tex. Bus. & Com. Code Ann. §17.46(5));

    (b)    "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Tex. Bus. & Com. Code Ann. §17.46(7)); and

    (c)    "advertising goods or services with intent not to sell them as advertised" (Tex. Bus. & Com. Code Ann. §17.46(9)).

22053. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

22054. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Texas DTPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not; and

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised.

22055. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

22056. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

22057. Defendant's unfair or deceptive acts or practices, inlcuding its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

22058. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

22059. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

22060. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTPA because they suffered ascertainable loss and actual damages as a direct and proximate

result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

22061. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

22062. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

22063. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter pursuant to Tex. Bus. & Com. Code Ann. §17.505(a) to Defendant.  Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

22064. As a result of Defendant's violations of the Texas DTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

**COUNT 1668**
**Unjust Enrichment**
**(Texas Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

22065. Texas Class Representatives Marianella Villanueva and Marilyn Abraham incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

22066. This cause of action is brought on behalf of the Texas-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

22067. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

22068. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

22069. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

22070. It is unjust and unconscionable for the Defendant to retain these wrongly secured benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

22071. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

22072. Plaintiffs and the Class members do not have an adequate remedy at law, nor is there an express contract governing this dispute.

**COUNT 1669**
**Breach of Implied Warranty**
**(Tex. Bus. & Com. Code Ann. §2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

22073. Texas Class Representatives Marianella Villanueva and Marilyn Abraham incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

22074. This cause of action is brought on behalf of the Texas-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

22075. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Texas Class Representatives and members of the Texas Class and was in the business of selling such products.

22076. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Tex. Bus. & Com. Code Ann. §2-314.

22077. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

22078. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

22079. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

22080. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

22081. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability

because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

22082. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 16.    Causes of Action on Behalf of the Virginia-Strides Classes

### COUNT 1670
### Violation of the Virginia Consumer Protection Act
### (Va. Code Ann. §59.1-196, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Strides)

22083. Virginia Class Representative Dan Zhovtis incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

22084. This cause of action is brought on behalf of the Virginia-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

22085. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Va. Code Ann. §59.1-198.

22086. Defendant was and is a "[s]upplier" within the meaning of Va. Code Ann. §59.1-198.

22087. The Ranitidine-Containing Products are "[g]oods" within the meaning of Va. Code Ann. §59.1-198.

22088. Defendant was and is engaged in "[c]onsumer transaction[s]" within the meaning of Va. Code Ann. §59.1-198.

22089. The Virginia Consumer Protection Act ("Virginia CPA") prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Va. Code Ann. §59.1-200(A).

22090. The Virginia CPA makes unlawful specific acts, including:

(a) "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" (Va. Code Ann. §59.1-200(A)(5));

(b) "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model" (Va. Code Ann. §59.1-200(A)(6));

(c) "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" (Va. Code Ann. §59.1-200(A)(8)); and

(d) "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" (Va. Code Ann. §59.1-200(A)(14)).

22091. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

22092. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Virginia CPA, including:

    (a)    representing that the Ranitidine-Containing Products have characteristics, uses, benefits, and qualities which they do not have;

    (b)    representing that the Ranitidine-Containing Products are of a particular standard, quality, and grade when they are not;

    (c)    advertising the Ranitidine-Containing Products with the intent not to sell them as advertised; and

    (d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

22093. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

22094. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

22095. Defendant's unfair or deceptive acts or practices, inlcuding its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

22096. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class

members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

22097. Plaintiffs and the Class members relied on Defendant's misrepresentations, omissions, and concealments with respect to Ranitidine-Containing Products by purchasing and continuing to purchase Ranitidine-Containing Products after Defendant's misrepresentations, omissions, and concealments were made.

22098. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Virginia CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

22099. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

22100. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

22101. Defendant was provided notice of the issues raised in this Count and this Complaint by the United States Food and Drug Administration ("FDA") investigations, the numerous complaints filed against it, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Ranitidine-Containing Products' defects became public.  In addition, on May 21, 2020, Plaintiffs in MDL 2924 sent a notice letter to Defendant.

Because Defendant failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Class members are entitled.

22102. As a result of Defendant's violations of the Virginia CPA, as alleged herein, Plaintiffs and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Virginia CPA.

**COUNT 1671**
**Unjust Enrichment**
**(Virginia Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

22103. Virginia Class Representative Dan Zhovtis incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

22104. This cause of action is brought on behalf of the Virginia-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

22105. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

22106. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.  Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

22107. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

22108. It is unjust and inequitable for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

22109. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

22110. There is no express contract governing this dispute.

22111. Plaintiffs and the Class members do not have an adequate remedy at law.

<div align="center">

**COUNT 1672**
**Breach of Implied Warranty**
**(Va. Code Ann. §8.2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

22112. Virginia Class Representative Dan Zhovtis incorporates the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

22113. This cause of action is brought on behalf of the Virginia-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for

purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

22114. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Virginia Class Representatives and members of the Virginia Class and was in the business of selling such products.

22115. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Va. Code §8.2-314.

22116. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

22117. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

22118. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

22119. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

22120. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

22121. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### 17.    Causes of Action on Behalf of the Washington-Strides Classes

### COUNT 1673
### Violation of the Washington Consumer Protection Act
### (Wash. Rev. Code Ann. §19.86.010, *et seq.*)
### (Against Store-Brand Manufacturer Defendant Strides)

22122. Washington Class Representatives Robert Dewitt and Jonathan Ferguson incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

22123. This cause of action is brought on behalf of the Washington-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

22124. Defendant, Plaintiffs, and the Class members are "[p]erson[s]" within the meaning of Wash. Rev. Code Ann. §19.86.010(1).

22125. The Ranitidine-Containing Products are "[a]ssets" within the meaning of Wash. Rev. Code Ann. §19.86.010(3).

22126. Defendant was and is engaged in "[t]rade" or "commerce" within the meaning of Wash. Rev. Code Ann. §19.86.010(2).

22127. The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. §19.86.020.

22128. In the course of its business, Defendant, directly or through its agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for the private-label Ranitidine-Containing Products it manufactured, including by (i) packaging quantities of tablets in bottles greater than could be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date; and (ii) printing expiration dates on its labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

22129. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Ranitidine-Containing Products, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington CPA.

22130. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

22131. Defendant's misrepresentations and omissions regarding the expiration dates of Ranitidine-Containing Products were disseminated to Plaintiffs and the Class members in a uniform manner.

22132. Defendant's unfair or deceptive acts or practices, inlcuding its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the safety of Ranitidine-Containing Products if used within the expiration dates.

22133. The facts regarding Ranitidine-Containing Products that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Ranitidine-Containing Products.

22134. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Washington CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

22135. Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Ranitidine-Containing Products.  Had Defendant not engaged in the deceptive acts and practices

alleged herein, Plaintiffs and the Class members would not have purchased the drug, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

22136. Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

22137. On June 22, 2020, Plaintiffs in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924-RLR (S.D. Fla.) ("MDL 2924") sent a notice letter pursuant to Wash. Rev. Code §19.86.095 to the Attorney General of the State of Washington.

22138. As a result of Defendant's violations of the Washington CPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Washington CPA.

<div align="center">

**COUNT 1674**
**Unjust Enrichment**
**(Washington Law)**
**(Against Store-Brand Manufacturer Defendant Strides)**

</div>

22139. Washington Class Representatives Robert Dewitt and Jonathan Ferguson incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

22140. This cause of action is brought on behalf of the Washington-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

22141. Plaintiffs and the Class members conferred a benefit on Defendant in the form of payment of monies to purchase worthless Ranitidine-Containing Products, or were otherwise in privity with Defendant through said transaction.

22142. In exchange for their payment of the purchase price of Defendant's Ranitidine-Containing Products, Plaintiffs and the Class members received the Ranitidine-Containing Products, which included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed. Accordingly, Plaintiffs and the Class members conferred a financial benefit on Defendants but did not receive their expected benefit therefrom.

22143. Defendant readily accepted and retained these benefits from Plaintiffs and the Class members and knowingly benefitted from its unjust conduct – at Plaintiffs' and the Class members' expense – by selling worthless Ranitidine-Containing Products that included expiration dates on the products' labels that exceeded the time period during which the products remained stable and, thus, resulting in higher, undisclosed, and unsafe levels of NDMA as time passed.

22144. It is unjust for the Defendant to retain these benefits because they were attained by misrepresenting and fraudulently concealing the true facts concerning the Ranitidine-Containing Products from Plaintiffs and the Class members, who would not have purchased the medications at all, but for the Defendant's misrepresentations and omissions.

22145. Equity cannot in good conscience permit Defendant to retain the benefits derived from Plaintiffs and the Class members through its unjust and unlawful acts without paying for said benefits, and, therefore, restitution or disgorgement of the amount of their unjust enrichment is required.

22146. There is no express contract governing this dispute.

22147. Plaintiffs and the Class members do not have an adequate remedy at law.

**COUNT 1675**
**Breach of Implied Warranty**
**(Wash. Rev. Code Ann. §62A 2-314)**
**(Against Store-Brand Manufacturer Defendant Strides)**

22148. Washington Class Representatives Robert Dewitt and Jonathan Ferguson incorporate the preceding allegations in paragraphs 63-66, 273-277, 304-442, 445-483, 912-961, 1093-1118, and 1257-1301 as though fully set forth herein.

22149. This cause of action is brought on behalf of the Washington-Strides Class (for the purpose of this section, "Class") against Store-Brand Manufacturer Defendant Strides (for purposes of this Count only, "Defendant") with respect to private-label product Walmart Equate Ranitidine.

22150. At all relevant times, Defendant was a merchant with respect to Ranitidine-Containing Products which were sold to Washington Class Representatives and members of the Washington Class and was in the business of selling such products.

22151. Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels. Wash. Rev. Code §62A 2-314.

22152. Defendant breached its implied warranty of merchantability because the products it manufactured for PLDs cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels, or used in the quantities packaged which were not likely to be used completely and stored properly by the expiration date, particularly when the expiration date on the label was extended beyond a safe and appropriate date.

22153. Defendant's Ranitidine-Containing Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended or within their expiration dates on the labels, and their use carries an increased risk of developing cancer.

22154. Plaintiffs and each member of the Class have had sufficient direct dealings with either Defendant or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each member of the Class, on the other hand.

22155. Further, Plaintiffs and each member of the Class were the intended third-party beneficiaries of the implied warranties made by Defendant to the PLDs for which it manufactured private-label Ranitidine-Containing Products.

22156. Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendant's breaches of implied warranties of merchantability. Plaintiffs and members of the Class were damaged as a result of Defendant's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Ranitidine-Containing Products, they would not have purchased such drugs.

22157. As a result of Defendant's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## XIII.   PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and the proposed Classes, respectfully request that the Court:

A.      Determine that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2)-(3), and/or (c)(4), direct that reasonable notice of this action

be given to the Classes, appoint Plaintiffs as named representatives of the Classes, and appoint Plaintiffs' counsel as Class Counsel;

     B.     Require Defendants to pay for sending notice to the certified Classes;

     C.     Enter judgment against Defendants and in favor of Plaintiffs and the Classes;

     D.     Award damages (including actual, nominal, trebled, presumed, and statutory damages as provided by law) and restitution to the Classes in an amount to be determined at trial, plus pre- and post-judgment interest, in accordance with law;

     E.     Award punitive damages based on Defendants' conduct,

     F.     Order disgorgement of Defendants' profits;

     G.     Award reasonable attorneys' fees and costs; and,

     H.     For all such further relief as may be just and proper.

## XIV.   JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs, on behalf of themselves and the Class(es), demand a trial by jury on all issues so triable.

DATED:  February 22, 2021

*/s/ Tracy A. Finken*
Tracy A. Finken
Email: tfinken@anapolweiss.com
ANAPOL WEISS
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Tel: (215) 735-1130

By: */s/ Robert C. Gilbert*
Robert C. Gilbert, FBN 561861
Email: gilbert@kolawyers.com
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Tel: (305) 384-7270

*/s/ Michael L. McGlamry*
Michael L. McGlamry
Email: efile@pmkm.com
POPE McGLAMRY, P.C.
3391 Peachtree Road NE, Suite 300
Atlanta, GA 30326
Tel: (404) 523-7706

*/s/ Adam Pulaski*
Adam Pulaski
Email: adam@pulaskilawfirm.com
PULASKI KHERKHER, PLLC
2925 Richmond Avenue, Suite 1725
Houston, TX 77098
Tel: (713) 664-4555

*Plaintiffs' Co-Lead Counsel*

Rosemarie R. Bogden
Email:  Rosemarie.bogdan@1800law1010.com
MARTIN, HARDING & MAZZOTTI
1222 Troy-Schenectady Road
Niskayuna, NY 12309
Tel: (518) 862-1200

*/s/ Mark J. Dearman*
Mark J. Dearman, FBN 0982407
Email: mdearman@rgrdlaw.com
ROBBINS GELLER RUDMAN
   & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Tel: (561) 750-3000

Elizabeth A. Fegan
Email: beth@feganscott.com
FEGAN SCOTT, LLC
1456 Sycamore Rd.
Yorkville, IL 60560
Tel: (312) 741-1019

Marlene J. Goldenberg
Email: mjgoldenberg@goldenberglaw.com
GOLDENBERG LAW, PLLC
800 LaSalle Avenue, Suite 2150
Minneapolis, MN  55402
Tel: (855) 333-4662

Ashley Keller
Email: ack@kellerlenkner.com
KELLER | LENKNER
150 N. Riverside Plaza, Suite 4270
Chicago, IL 60606
Tel: (312) 741-5222

Frederick Longer
Email: flonger@lfsblaw.com
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500

Roopal P. Luhana
Email: luhana@chaffinluhana.com
CHAFFIN LUHANA LLP
600 Third Avenue, 12th Floor
New York, NY 10016
Tel: (888) 480-1123

Francisco R. Maderal, FBN 0041481
Email: frank@colson.com
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Tel: (305) 476-7400

Ricardo M. Martinez-Cid, FBN 383988
Email: RMartinez-Cid@Podhurst.com
PODHURST ORSECK, P.A.
SunTrust International Center
One S.E. 3rd Avenue, Suite 3200
Miami, FL 33130
Tel: (305) 358-2800

Lauren S. Miller
Email: lmiller@corywatson.com
CORY WATSON, P.C.
2131 Magnolia Ave S
Birmingham, AL 35205
Tel: (205) 271-7168

Melanie H. Muhlstock
Email: mmuhlstock@yourlawyer.com
PARKER WAICHMAN LLP
9 Evelyn Road
Port Washington, NY 11050
Tel: (516) 723-4629

Daniel A. Nigh, FBN 30905
Email: dnigh@levinlaw.com
LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Tel: (888) 435-7001

Carmen S. Scott
Email: cscott@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9160

Mikal C. Watts
Email: mcwatts@wattsguerra.com
WATTS GUERRA LLP
4 Dominion Drive
Building 3, Suite 100
San Antonio, TX 78257
Tel: (800) 294-0055

Sarah N. Westcot, FBN 1018272
Email: swestcot@bursor.com
BURSOR & FISHER, P.A.
2665 S. Bayshore Drive, Suite 220
Miami, FL 33133
Tel: (305) 330-5512

Conlee S. Whiteley
Email: c.whiteley@kanner-law.com
KANNER & WHITELEY, L.L.C.
701 Camp Street
New Orleans, LA 70130
Tel: (504) 524-5777

Frank Woodson
Email: Frank.Woodson@BeasleyAllen.com
BEASLEY ALLEN LAW FIRM
234 Commerce St
Montgomery, AL 36103
Tel: (334) 269-2343

*Plaintiffs' Steering Committee*
*Plaintiffs' Law and Briefing Committee Co-Chairs*
*Plaintiffs' Liaison Counsel*

Paige Boldt
Email: pboldt@wattsguerra.com
WATTS GUERRA LLP
1815 Windsong Circle
Keller, TX 76248
Tel: (210) 447-1534

Je Yon Jung
Email: JJung@maylightfootlaw.com
MAY LIGHTFOOT PLLC
2579 N. Avalon Avenue
Orange, CA 92867
Tel: (202) 506-3591

Adam W. Krause
Email: adam@krauseandkinsman.com
KRAUSE AND KINSMAN, LLC
4717 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 760-2700

Nicola Larmond-Harvey, FBN 0105312
Email: nicola@saunderslawyers.com
SAUNDERS & WALKER, P.A.
3491 Gandy Boulevard North, Suite 200
Pinellas Park, FL 33781
Tel: (727) 579-4500

Bradford B. Lear
Email: Lear@learwerts.com
LEAR WERTS LLP
103 Ripley Street
Columbia, MO 65203
Tel: (573) 875-1992

*Plaintiffs' Leadership Development Committee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 22, 2021, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF and that the foregoing document is being served on all

counsel of record or parties registered to receive CM/ECF Electronic Filings.


<div align="right">

*s/ Mark J. Dearman*
_____
MARK J. DEARMAN

</div>