UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION | MDL NO. 2924<br>20-MD-2924<br><br>JUDGE ROBIN L. ROSENBERG<br>MAGISTRATE JUDGE BRUCE E. REINHART |

_____/

**THIS DOCUMENT RELATES TO:**

20-CV-82312-RLR

### ORDER GRANTING THE PLAINTIFF'S MOTION TO REMAND

**THIS CAUSE** is before the Court on the Plaintiff's Motion to Remand [DE 2649]. The Motion has been fully briefed. For the reasons set forth below, the Motion is granted.

### I. Introduction

At the center of this MDL is a molecule known as ranitidine. 20-82312, DE 1. Ranitidine, commonly known as Zantac, alleviates heartburn. *Id.* The Plaintiff alleges that ranitidine is defective—the Plaintiff alleges that while ranitidine alleviates heartburn, it also promotes the growth of cancer. *Id.* In this suit, the Plaintiff names as Defendants the manufacturers and retailers who profited from the sale of ranitidine. DE 1-1 at 12. The Plaintiff has brought claims for negligence, unfair and deceptive practices, false advertising, and public nuisance. *Id.* at 10.

This case was filed in New Mexico state court, and the Plaintiff is the State of New Mexico. All of the Plaintiff's claims arise under New Mexico law; indeed, the Complaint expressly disavows any reliance upon federal law. *Id.* at 16. Thus, at least as a facial matter, this case may not be removed to federal court. *E.g.*, *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005); *see also* 28 U.S.C. § 1332(a).

Nonetheless, the Defendants removed this case to federal court, arguing that although the

Plaintiff's claims do not invoke federal law, the federal issues implicated in the Complaint are so significant this Court may exercise jurisdiction over the case. This basis for jurisdiction, although rarely encountered, has been recognized for over one hundred years. *Grable & Sons Metal Prods., Inc. v. Darue Eng. & Mfg.*, 545 U.S. 308, 312 (2005). The doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* Under this doctrine, federal-court jurisdiction will lie over state-law claims if a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). The dispute before the Court turns upon these factors—do the Plaintiffs' state-law claims satisfy the factors listed above, such that there is federal court jurisdiction over the Plaintiff's claims?

## II.     The Legal Standard for Cases Removed from State Court

A party may remove a civil action from state court to federal district court if the action is one over which the federal district court had original jurisdiction. 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1331(b), district courts have original jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on

2

state law." *Id.* at 393. "Therefore, in general terms, removal is improper if based solely upon a plaintiff's allegation of an anticipated defense or if based upon a defendant's responsive pleading." *Lazuka v. FDIC*, 931 F.2d 1530, 1534 (11th Cir. 1991) (citing *Merrell Dow Pharms. Inc. v. Thompson,* 478 U.S. 804, 808, 809 n.6 (1986)).

On the other hand, "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for So. Cal.*, 463 U.S. 1, 22 (1983). The "artful-pleading" doctrine, thus, provides exceptions to the well-pleaded complaint rule. Under one of these exceptions, even if it appears from the complaint that only state-law causes of action are actually pled, a federal question will be inferred where "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrel Dow*, 478 U.S. at 808. Under this analysis, "in limited circumstances, federal-question jurisdiction may be … available if a substantial, disputed, question of federal law is a necessary element of a state cause of action." *Jairath v. Dyer*, 154 F.3d 1280, 1282 (11th Cir. 1998). In making this determination, "[t]he removing court looks to the substance of the complaint, not the labels used in it." *In re Carter*, 618 F.2d 1093, 1101 (5th Cir. 1980).

The removing defendant bears the burden of establishing that federal jurisdiction is proper. *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002). Additionally, federal courts are directed to construe removal statutes strictly, and "all doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of So. Ala. v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).[1]

---

[1] The Court notes, without deciding, that the Plaintiff has cited authority for the proposition that the standard for removal in this case is even higher than normal because the case was instituted by a sovereign State. "[C]onsiderations of comity make [courts] reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd.*, 463 U.S. at 21 n.22. When a state attorney general "alleges only state law

3

### III.     Analysis

Before the Court turns to the parties' specific arguments, the Court first considers a recent Supreme Court case decided in 2013 describing the circumstances upon which this Court may exercise federal-question jurisdiction over state-law claims. The case is *Gunn v. Minton*. In *Gunn*, a plaintiff secured a patent for a computer trading program. *Gunn*, 568 U.S. at 253-54. Believing that a competitor was infringing upon his patent, the plaintiff sued the competitor for patent infringement. *Id.* at 254. The case was litigated, and, at summary judgment, the district court concluded that the plaintiff's patent was invalid—the plaintiff lost both the case and the patent. *Id.* Convinced that he had lost his patent because of his attorneys' incompetence, the plaintiff sued his attorney for malpractice in state court. *Id.* at 255. The plaintiff lost that case but, on appeal, the plaintiff argued that the state court had no jurisdiction to enter judgment against him—he argued that federal courts had the exclusive jurisdiction to decide patent law issues and patent law was so significant to his state-based malpractice claim that the only proper court to exercise jurisdiction over his case was federal court, not state court. *Id.* A divided appellate court rejected the plaintiff's jurisdictional argument, but a divided state supreme court accepted it and ruled that the patent issues in the malpractice case were so significant that the plaintiff's case could only be decided in federal court. *Id.* at 255-56. The Supreme Court granted certiorari to resolve the question. *Id.*

The Supreme Court clarified that the category of state-law claims that qualify for federal-question jurisdiction are "special and small," and "slim." *Id.* at 258. The Court then considered whether the plaintiff's malpractice claim would necessarily raise federal questions, whether those issues were actually in dispute, whether the issues were substantial, and whether the issues were

---

causes of action, brought to protect" its state residents, then "the 'claim of sovereign protection from removal arises in its most powerful form.'" *Nevada v. Bank of Am.*, 672 F.3d 661, 675 (9th Cir. 2012).

capable of resolution without disrupting a federal-state balance. *Id.* The Court acknowledged that the litigation of the plaintiff's patent-law issues was necessary to his malpractice claim and that the issues were actually in dispute. *Id.* at 259. As to the importance of the issues, however, the Court clarified that the question is not whether the issues were important to the *parties*, but rather whether the issues were important to the federal system *as a whole*. *Id.* The Court gave two examples of cases where state-law claims raised significant federal issues. First, in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, the entity being sued was the Internal Revenue Service; that case considered whether the IRS had the power to seize certain property. 545 U.S. 308. Second, in *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921), a state-law claim necessarily raised the question of whether federal bonds had been properly issued by the United States. Comparing the plaintiff's malpractice claim in *Gunn* to *Grable* and *Smith*, the Court held that the plaintiff's claim was merely "backward-looking." *Gunn*, 568 U.S. at 261. If the plaintiff prevailed, it would mean that his attorney should have acted differently, and it would have had no effect on the prior, federal patent litigation case. *Id.* Distilled down, the Supreme Court held that what courts should focus on is whether the state decision would be "controlling in numerous other cases." *Id.* at 262. Thus, in *Grable* the wider and potentially controlling impact of the case was the invalidation of powers of the IRS within the state court's jurisdiction. *See id.* And in *Smith*, the potentially controlling, broader impact of the case was the invalidation of issued federal bonds. *See id.* With this guidance from the Supreme Court in mind, the Court turns to the specifics of the parties' arguments.

The Plaintiff argues that none of the applicable factors support federal jurisdiction—federal questions are not necessarily raised in this case, are not actually in dispute, are not substantial, and

5

are not capable of resolution in federal court without disrupting federal-state balance. For their part, the Defendants argue the opposite. The Court sets aside any questions about whether the federal issues in this case are necessarily raised or actually in dispute because the Court need not decide such questions. Instead, the Court focuses its analysis on the third and fourth factors—substantiality and federal-state balance—because those factors are dispositive of the Court's ruling.

Substantiality

The Defendants contend that the federal issues in this case pertain to the Food and Drug Administration's approval of ranitidine. Because of that approval, the Defendants argue that they cannot be liable for the manufacture and sale of ranitidine. The Defendants put forth two reasons[2] why these issues are substantial. First, "the federal issues raised here . . . are dispositive of the respective claims." 20-2924, DE 2758 at 22. But that argument is focused on the federal issues in *this* case. The Court knows from *Gunn* that "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raise[s]' a disputed federal issue." *Gunn*, 568 U.S. at 260. As to the federal system as a whole, the Defendants can make no argument that this case will bind the United States Government because no Government agency is a defendant in this case, as was the circumstance in *Grable*. Relatedly, the Defendants can make no argument that there could be any invalidation of past Government decisions or any invalidation of Government property, as there was in *Smith*, or that a state court decision would somehow bind a federal court or a federal agency. Thus, the Defendants have not put forth an explanation as to how this case would impact the federal system

---

[2] The Defendants do provide a third reason pertaining to the applicability of this Court's rulings to other cases in this MDL, but that is an argument that courts reject as more fully discussed below in connection with federal-state balance.

as a whole under the framework of Supreme Court cases describing the same.[3]

As a second basis for substantiality, the Defendants make the curious argument that the FDA "has a clear interest" in "vindicating its approvals of ranitidine" and "policing any alleged fraud," in this case, but the FDA is not a party. *See* 20-2924, DE 2758 at 24. The Plaintiff has alleged no wrongdoing by the FDA, and the Defendants do not explain how a non-party's interest in "vindication" can render the federal issues in a case substantial, nor do the Defendants explain how the FDA could not obtain vindication from a decision in state court or "police" alleged fraud pursuant to its own independent power. The Defendants have provided no citation to authority for the proposition that a non-party federal agency's interest in a case may render the issues in the case so substantial that it may be removed to federal court.

The Plaintiff argues that the federal issues in this case are not substantial pursuant to binding, controlling precedent, citing to Supreme Court caselaw as well as a case decided by the Fourth Circuit. The Fourth Circuit case, *Burrell v. Bayer Corporation*, 918 F.3d 372 (2019), is particularly analogous and persuasive. In *Burrell*, the plaintiff brought a strict product liability claim stemming from a contraceptive medical device. *Id.* at 376-77. The product was regulated by the FDA. *Id.* at 377. After the plaintiff allegedly suffered injuries from the product, the plaintiff filed suit in state court. *Id.* at 378. The manufacturer removed the case to federal court, arguing that the federal issues (the federal regulation of the product) were so substantial that there was federal jurisdiction over the state-law claims. *Id.* The district court agreed and denied a motion to remand the case back to state court. *Id.* On appeal, however, the Fourth Circuit reversed. *Id.*

---

[3] The Defendants cite to *Edwards v. Deloitte & Touche, LLP*, for the proposition that this Court should deny the Motion to Remand because in that case a similar motion to remand was denied, but in *Edwards* the plaintiff alleged that federal agencies had engaged in wrongdoing and had breached fiduciary duties. No. 16-CV-21221, 2017 WL 1291994 (S.D. Fla. Jan. 18, 2017). Those allegations are not present in the instant case.

7

The Fourth Circuit emphasized that courts should be cautious in the exercise of jurisdiction of this type because, in the absence of such caution, "innumerable claims traditionally heard in state court would be funneled into federal court instead." *Id.* As a result, the Fourth Circuit noted that "a substantial majority" of district courts to consider the intersection of state-law claims and federal regulation of the products at the center of those claims conclude that there is no federal jurisdiction. *Id.* (collecting cases). The Fourth Circuit, although skeptical that the plaintiff could satisfy the first and second factors, ultimately ruled that the plaintiff failed on the third and fourth factors—the substantiality of the federal issues and the federal-state balance. *Id.*

The Fourth Circuit emphasized that the "high bar" for federal jurisdiction generally requires the construction or constitutionality of a federal statute, and that the bar will normally only be met when the question presented is one of pure law; fact-specific cases do not lend themselves to substantial federal issues. *See id.* at 385. In contrast to cases such as the IRS litigation in *Grable*, the *Burrell* case was backward-looking—the case focused on monetary relief for the defendant's alleged past non-compliance with federal requirements. *Id.* The plaintiff in *Burrell* countered, however, by arguing to the Fourth Circuit that even though the case concerned monetary damages and was fact-specific, the federal issues were nonetheless substantial because of the "numerous other cases" brought by plaintiffs for the same medical device. *Id.* at 386. The Fourth Circuit rejected that argument, stating:

> The Supreme Court considered and rejected that very argument in *Merrell Dow*, holding that even a strong interest in uniformity of results is not enough to make a federal question "substantial" so that it may be heard in federal court. 478 U.S. at 815–16. State courts are fully capable of resolving federal issues that arise in connection with the state claims before them, and the "possibility that a state court will incorrectly resolve a state claim is not, by itself, enough to trigger the federal courts' ... jurisdiction, even if the potential error finds its root in a misunderstanding of [federal] law." *Gunn*, 568 U.S. at 263; *see also Merrell Dow*, 478 U.S. at

8

>816 (noting that uniformity concerns are "considerably mitigated" by Supreme Court authority to review decisions of federal issues in state-court actions).

*Id.* Importantly for the instant case, the Fourth Circuit also considered the fourth factor for federal-question jurisdiction over state-law claims, the federal-state balance implicated by the removal of state-law claims.

### Federal-State Balance

The Fourth Circuit reasoned that a federal-state balance was not disturbed in cases such as *Grable* (which revolved around the powers of the IRS) because *Grable* was a quiet title action, which is a cause of action that rarely invokes federal law. *Id.* at 387. By contrast, strict product liability suits for medical devices or pharmaceuticals would almost always involve federal law in the form of federal regulation of those products. *See id.* Turning to Supreme Court precedent in the context of pharmaceutical litigation, the Supreme Court has discerned an intent by Congress *not* to create a federal-question pathway to federal court for plaintiffs bringing state-law claims, reasoning:

>Th[is] Court saw the missing [federal] cause of action [for pharmaceutical litigation] not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues. For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases.

*Grable*, 545 U.S. at 318. The Supreme Court's understanding of its own cases is controlling on this Court, and that understanding is that Congress intended for state courts to be able to hear cases involving federally-regulated, pharmaceutical products. *Burrell*, 918 F.3d at 387 (citing, quoting, and discussing *Merrell Dow*, 478 U.S. 804).

9

The Defendants' Response contains no discussion of *Merrell Dow*, *Burrell*, or *Gunn*; the Defendants devote only three paragraphs to the federal-state balance factor and cite only three decisions. Two of those citations are from the same district court and predate *Gunn*,[4] but numerous district court decisions subsequent to *Gunn* have found that the removal of state-law claims involving federally-regulated products would upset the federal-state balance. *E.g.*, *Steed v. Bos. Sci. Corp.*, No. 17-CV-0824, 2017 WL 2984854, at *4 (N.D. Ohio July 12, 2017) (noting that decisions reaching the opposite conclusion were decided prior to *Gunn*). Indeed, one district court collected eight post-*Gunn* decisions reaching the same conclusion. *Waitz v. Yoon*, No.14-CV-2875, 2015 WL 1151157, at *3 (N.D. Ga. June 20, 2015). The Defendants' third and final citation is to the Supreme Court's decision in *Grable*, but the Defendants selectively quote that decision. The Defendants quote *Grable* for the proposition that a federal, private right of action is not always required for entrance into federal court, but the Defendants omit any discussion of the sentences subsequent to that quotation which explain that the congressional decision not to pre-empt state tort claims (for pharmaceutical litigation) means that Congress did intend to permit cases involving pharmaceuticals to be heard in state court. *See Burrell*, 918 F.3d at 387. For its part, the Plaintiff relies upon *Burrell* and the many district court decisions decided since *Gunn* which found that federal-question jurisdiction over state-law claims involving federally-regulated products was improper.

### IV.   Conclusion

This case is not like *Grable*, where the powers of the IRS were in dispute. This case is not like *Smith*, where the validity of federally-issued bonds were in dispute. Instead, like the attorney

---

[4] *McGraw v. Eli Lilly & Co.*, 476 F. Supp. 2d 230 (E.D.N.Y. 2007); *In re Zypexia Prod. Liab. Litig.*, No. 07-CV-1933, 2008 WL 398378 (E.D.N.Y. Feb. 12, 2008).

malpractice claims in *Gunn*, the issues in this case, while important to the parties, do not raise substantial issues of federal law that would impact the federal system as a whole. This is a fact-specific case focused on the question of whether ranitidine was defectively designed or manufactured. This fact-specific case is therefore like the medical device litigation in *Burrell*, where the Fourth Circuit rejected the notion that manufacturers of regulated products may remove state-law claims under federal-question jurisdiction. This Court aligns itself with the reasoning of the *Burrell* court and the many district court decisions decided since *Gunn*, and concludes that the Defendants have not met their burden to show (i) that the federal-state balance of cases is satisfied by permitting the removal of cases bringing claims involving federally-regulated products and (ii) that the federal issues in this case are substantial to the federal system as a whole, consistent with binding, controlling precedent decided by the Supreme Court.

Accordingly, it is **ORDERED AND ADJUDGED** that the Plaintiff's Motion to Remand [DE 2649] is **GRANTED**. The Plaintiff shall provide a proposed order to the Court to accomplish the removal of the above-referenced case to the appropriate state court within three business days of the date of rendition of this Order. The proposed order shall be in Microsoft Word format and shall be sent to rosenberg@flsd.uscourts.gov.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 25th day of February, 2021.

                                                    ROBIN L. ROSENBERG
                                                  UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record