**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IN RE: ZANTAC (RANITIDINE)                                     MDL NO. 2924
PRODUCTS LIABILITY                                            20-MD-2924
LITIGATION

                                                  JUDGE ROBIN L. ROSENBERG
                                MAGISTRATE JUDGE BRUCE E. REINHART

   _____/

**THIS DOCUMENT RELATES TO ALL CASES IN WHICH**
**ANY GENERIC MANUFACTURER IS NAMED**

_____

**MOTION FOR PROTECTIVE ORDER FROM PORTIONS OF PLAINTIFFS' NOTICE**
**OF ORAL AND VIDEO DEPOSITION OF GENERIC DEFENDANT PURSUANT TO**
**RULE 30(b)(6) (STORAGE AND TRANSPORTATION)**
**FILED ON BEHALF OF ALL GENERIC MANUFACTURERS**

_____

1

Pursuant to Federal Rules of Civil Procedure 26 and 30 and PTOs 32, 54, and 60, the Generic Manufacturers move for a protective order from certain portions of the "Notice of Oral and Video Deposition of Generic Defendant Pursuant to Fed. R. Civ. P. Rule 30(b)(6)" that were deemed served as of February 9, 2021 relating to storage and transportation (the "Notice").[1]

## I.        Introduction (For all Three Motions Set in for March 2, 2021 Hearing)

Only a handful of claims remain against the Generic Manufacturers in this MDL. Ruling on the parties' initial motions to dismiss, the Court dismissed all claims against the Generic Manufacturers as preempted, including dismissal with prejudice of design, warnings, and misbranding claims. The Court allowed repleading only on narrow grounds, including storage or transport of ranitidine-containing products ("RCPs"), expiration dates, failure-to-warn-the-FDA, and manufacturing defect. DE 2512. Importantly, the Court noted that such claims well may also be preempted, but that it could not decide due to Plaintiffs' own shotgun pleading deficiencies.

Plaintiffs have now repleaded claims on some of these grounds.  Plaintiffs did not plead a manufacturing defect claim. Plaintiffs' fundamental theory of the case remains the same: they assert that ranitidine had an intrinsic flaw, namely, its susceptibility to forming an allegedly carcinogenic compound, N-Nitrosodimethylamine ("NDMA") over time and under certain conditions. Given the Court's preemption rulings, Plaintiffs cannot state a claim against Generic Manufacturers for that alleged design flaw, or for failing to warn consumers of it. Instead, they allege that the breakdown of ranitidine into NDMA was "worse" when the products were exposed to heat or humidity, and that Generic Manufacturers can be held liable for not tweaking their expiry dates or storage/transport policies aimed at reducing the products' exposure to heat or humidity, or for not reporting certain information about ranitidine and cancer to FDA.

Generic Manufacturers believe that these claims are also federally preempted or otherwise fail to state a claim on which relief can be granted. Nonetheless, the Generic Manufacturers have heard loud and clear the Court's directives that discovery on these claims must proceed contemporaneously with next-round motions to dismiss. Generic Manufacturers have completed core discovery productions and Phase 2 disclosures that collectively include hundreds of thousands (if not over a million) pages of documents relevant to the remaining claims. These productions include extensive data on the stability of the ranitidine molecule, post-withdrawal testing directed to the presence of NDMA, and pertinent standard operating policies. Counsel have also spent hundreds of hours meeting and conferring regarding the scope and timing of additional discovery into Plaintiffs' repleaded claims. These sessions have achieved much: the parties have agreed to focus near-term discovery efforts on Fed. R. Civ. P. 30(b)(6) depositions and custodial document discovery into the subjects of storage and transportation, manufacturing, and pharmacovigilance, have agreed to the timing of depositions on those subjects, have formalized that agreement in a new pretrial order (PTO 60), and have agreed in principle to a list of search terms for custodial document discovery.[2] Generic Manufacturers have also recently disclosed to Plaintiffs the identities of initial custodians.

---

[1] All Generic Manufacturers were served with identical notices. A copy of the Notice is attached as Exhibit 1.

[2] Global search term negotiations appear to be completed, but PTO 60 expressly contemplates that there may need to be modifications to search terms for individual generics. *See* DE 2877, B.3.

Despite the substantial progress that has been made, the parties have been unable to agree on the propriety of certain topics within the 30(b)(6) deposition notices. The disagreement boils down to relevance and proportionality and Plaintiffs' refusal to limit their questioning to the claims they chose to replead. Plaintiffs insist on including broadly worded definitions or topics unrelated to their remaining claims, which would impose a substantial and unnecessary cost and hardship on the Generic Manufacturers to prepare witnesses to address to those topics.[3]

Below, Generic Manufacturers summarize their primary objections to Plaintiffs' storage and transportation notice (the "S&T Notice"). Concurrently with this motion, Generic Manufacturers are also filing separate motions for protective order addressing, respectively, Plaintiffs' 30(b)(6) notices on manufacturing and pharmacovigilance.

## II.   Generic Manufacturers Have Agreed to Many Storage and Transportation Topics

The Generic Manufacturers have agreed to provide witnesses (or written declarations or interrogatory responses) regarding the active pharmaceutical ingredient ("API") supply chain, finished RCP supply chain, and finished RCP distribution chain, to the extent applicable to a specific generic defendant.  The Generic Manufacturers have also offered to present witnesses to generally testify as to their Quality Management efforts in the storage and transportation of ranitidine API and finished RCPs throughout the supply and distribution chain, and the specific practices, policies, and procedures for Quality Management as they relate to the storage and transportation of API and finished RCPs. The Generic Manufacturers are also willing to testify to deviations from practices, policies, and procedures in the supply chain as it relates to storage and transportation of ranitidine API or RCPs.

## III.   Global Issues with the Storage and Transportation Notice

Unhappy with Generic Manufacturers' offers, Plaintiffs instead demand that the Generic Manufacturers also prepare and present witnesses regarding RCPs distributed outside of the U.S. During the meet and confer process, the Generic Manufacturers sought to limit this Notice to address ranitidine activities directed at the U.S. market. Plaintiffs have refused to do so.

Requiring Generic Manufacturers to locate and then educate a witness on all aspects of storage and transportation issues for their RCPs worldwide goes well beyond the proportionate needs of this case, which focuses on products purchased and used only in the U.S. To require a Generic Manufacturer to testify about its ranitidine practices and history on a global level would require identifying documents and preparing witnesses on foreign requirements of dozens of regulatory jurisdictions across the globe.  It may well also require more deponents. For instance,

---

[3] A party may obtain discovery on any non-privileged matter relevant to any party's claim or defense, so long as the discovery is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In making proportionality determinations, the Court must consider the importance of the issues at stake, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving issues in the case, and whether the burden or expense of the proposed discovery outweighs its likely benefits. *Id.* The proportionality concept requires the parties and Court to rely on "commonsense" in determining whether a discovery request is proportional to the needs of the case. *Reilly v. Chipotle Mexican Grill, Inc.*, 2016 WL 10644064, at *1 (S.D. Fla. Sept. 26, 2016). Moreover, the Court "must limit the…extent of discovery" if it determines that the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

while U.S. shipping and transportation may relate to only one or a few hubs of transport in the U.S., shipping and transportation globally would encompass many other cities and countries, modes of transportation, and practices, policies, and procedures designed to meet foreign standards that have no bearing on the claims by plaintiffs residing only in the U.S. In addition, RCPs manufactured for or distributed outside the U.S. are subject to foreign regulatory requirements. To investigate, produce documents, and then educate corporate witnesses to testify about these activities on a global scale would present an overwhelmingly onerous burden for Generic Manufacturers—one that could not be met under the current timetable. This burden is not justified, because any information Plaintiffs discovered about foreign activities has no bearing on their claims, which are focused on product sold and used in the U.S. *See* Pls.' Amended Personal Injury Compl., Dkt. 2759 at ¶¶ 2433-59.

Plaintiffs' attempt to set a global scope for the Notices is found in their definitions, which, if modified, would solve this disproportionality problem. Specifically, Plaintiffs' refusal to incorporate a U.S. focus in their definitions for "QUALITY," "QUALITY MANAGEMENT," and "RANITIDINE-CONTAINING PRODUCT(S) or RCPs" results in those definitions imposing a global reach. A definition for "Your RCPs" that limits it to products manufactured, marketed, distributed, or sold in the U.S. would properly cabin this Notice to only those issues related to the U.S. market. In other words, the topics of "QUALITY" and "QUALITY MANAGEMENT" should be limited to the discrete claims Plaintiffs replead involving U.S.-marketed products.

The Generic Manufacturers incorporate by reference the arguments made in the contemporaneously filed Motion relating to the Pharmacovigilance Notice. And, Generic Manufacturers also identify specific objections to topics listed in this Notice and incorporate by reference those objections as set forth in the chart attached hereto as Exhibit 2.

Respectfully submitted,

/s/ Richard M. Barnes
Richard M. Barnes
Kamil Ismail
Sean Gugerty
**Goodell, DeVries, Leech & Dann, LLP**
One South Street, 20th Floor
Baltimore, Maryland 21202
Tel: (410)783-4000
rmb@gdldlaw.com
kxi@gdldlaw.com
sgugerty@gdldlaw.com

*Attorneys for Defendant*
*L. Perrigo Company*

/s/ Thomas J. Yoo
Thomas J. Yoo
**HOLLAND & KNIGHT LLP**
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
T: 213.896.2400
F: 213.896.2450
Thomas.Yoo@hklaw.com

*Attorneys for Glenmark Pharmaceuticals Inc.,*
*USA, f/k/a Glenmark Generics Inc., USA and*
*Glenmark Pharmaceuticals Ltd. (f/k/a*
*Glenmark Generics Ltd.)*

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IN RE:  ZANTAC (RANITIDINE)<br>PRODUCTS LIABILITY<br>LITIGATION | MDL NO. 2924<br>20-MD-2924 |

**JUDGE ROBIN L. ROSENBERG
MAGISTRATE JUDGE BRUCE E. REINHART**

_____/

**THIS DOCUMENT RELATES TO: ALL ACTIONS**

<u>NOTICE OF ORAL AND VIDEO DEPOSITION OF
GENERIC DEFENDANT
PURSUANT TO FED. R. CIV. P. RULE 30(b)(6)</u>

**TO: [Counsel for Generic Manufacturer]**

*Attorney for Defendant Generic Manufacturer,*

PLEASE TAKE NOTICE that pursuant to Rule 26 and Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs, by and through their undersigned attorneys, the Plaintiffs will take the oral videotaped deposition of Generic Manufacturer on February 23, 2021 at 2 PM EST, via video conferencing through US Legal Support.  Pursuant to Fed. R. Civ. P. 30(b)(6), Defendants shall designate and produce a representative or representatives, as may be required, to testify on behalf of Generic Manufacturer, concerning the topics identified in Exhibit A attached hereto. The deposition shall be recorded by stenographic and audiovisual means, as well as a webcast to a remote location, and taken before a person authorized by law to administer oaths, pursuant to Fed. R. Civ. P. 28, and will continue from day-to-day, excluding Sundays and court-recognized holidays, until the examination is completed.

PLEASE TAKE FURTHER NOTICE that we will be conducting this deposition utilizing the secure, web-based deposition option afforded by US Legal Support, or in the alternative,

1

video teleconferencing (VTC) services offered by US Legal Support.  Also take notice that the court reporter may also be remote via one of the options above for the purposes of the proceeding, as well as swearing in the deponent, and may or may not be in the presence of the deponent.  The deposition shall have been deemed to have been taken before an appropriate court officer despite the court reporter not being in the same physical location as the witness.  The oral examination is to be taken for purposes of discovery, for use at trial, or for such other purposes as are permitted under the Federal Rules of Civil Procedure and/or the local rules of the United States District Court for the Southern District of Florida.  The witness, questioning and defending attorneys, and documents will be recorded by video.  Any deposition noticed to take place remotely and recorded remotely may be admitted at trial with the same effect of one recorded in person.  Please contact the noticing attorney at least five (5) calendar days prior to the deposition to advise that it is your desire to appear via this remote participating means so that the necessary credentials, call-in numbers, testing and information, if necessary, can be provided to you prior to the proceedings.

Dated:  January 29, 2021

/s/ Michael L. McGlamry
Michael L. McGlamry
POPE McGLAMRY, P.C.
3391 Peachtree Road NE, Suite 300
Atlanta, GA 30326
Ph: (404) 523-7706
Email: efile@pmkm.com

Tracy A. Finken
ANAPOL WEISS
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Ph: (215) 735-1130
Email: tfinken@anapolweiss.com

Adam Pulaski
PULASKI KHERKHER, PLLC
2925 Richmond Avenue, Suite 1725
Houston, TX 77098
Ph: (713) 664-4555
Email: adam@pulaskilawfirm.com

Robert C. Gilbert
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Ph: (305) 384-7269
Email: gilbert@kolawyers.com

### CERTIFICATE OF SERVICE

The undersigned herby certifies that a copy of the foregoing was served via electronic mail, on January 29, 2021 to Counsel for Defendants.

*/s/ Marlene J. Goldenberg*
Marlene J. Goldenberg

3

**EXHIBIT A**

**INSTRUCTIONS**

To the extent You determine that one or more topics is inapplicable and expect the witness to testify to that effect, please notify Plaintiffs in writing at least 14 days prior to the deposition.

**DEFINITIONS**

1.  "YOU" or "YOUR" refers to [Generic Family], and any of its predecessor companies, successor companies, members, partners, directors, officers, employees, servants, agents, attorneys, joint venturers, licensors, third party contractors, or other representatives, including all parent entities.

2.  "PERSON(s)" means any individual or entity.

3.  "API" means active pharmaceutical agreement.

4.  "QUALITY" refers to any physical, chemical, microbiological, biological, bioavailability, and stability attributes that a drug product should maintain in order to be deemed suitable for therapeutic or diagnostic use.

5.  "QUALITY MANAGEMENT" refers to the identification, measurement, control, and improvement of the distribution and storage of a drug product, with regard to quality, including, but not limited to, any program, practice, policy or procedure regarding: (1) used to control storage of drug products; (2) that covers the movement, including storage and transportation, of drug products; (3) that allows for the identification of quality critical environmental aspects (such as temperature, humidity, and/or other environmental factors) for a drug product and/or ensures that the adequate processes to maintain that environment are in place; (4) used to assess, control, communicate, and review risks to the quality of a drug product across the product lifecycle; or (5) relating to 21 U.S.C. s. 501(a)(2), 21 C.F.R. Parts 210 & 211, or USP [1079] Good Storage and Distribution Packages for Drug Products

6.  "RANITIDINE-CONTAINING PRODUCT(S)" of "RCPs" means any product in which an active ingredient is ranitidine, including but not limited to Zantac or ranitidine, whether or not the product was brought to market, including any branded, unbranded (i.e. generic), prescription, and over-the-counter ("OTC") product, that was or is in development, and used to treat, among other things, heartburn, gastroesophageal reflux disease, ulcers in the stomach or intestines, or Zollinger-Ellison syndrome.

## DEPOSITION TOPICS

**API Supply Chain**

1. The source(s) of the API for any Ranitidine-Containing Product:

    a. The person(s) from whom You purchased the API, and Your related contracts and agreements with that person(s).

    b. The manufacturer(s) of the API.

    c. The location(s) and/or facilities where the API is manufactured.

2. The transportation and delivery of API to You:

    a. The location(s) where the API You purchased was/is delivered from and received by You, including intermediate locations.

    b. The modes by which the API you purchased is transported to You.

    c. The person(s) involved in the transport/delivery of API to You, and Your related contracts and agreements with that person(s).

    d. The documentation accompanying ranitidine-containing products you receive, and the ranitidine-containing products you ship (e.g., shipping documents, bills of lading, invoices, certificates of analysis, package inserts, etc.).

3. Your storage of API:

    a. The location(s) where You store/stored API. The person(s) involved in Your storage of API, and Your related contracts and agreements with that person(s).

4. Your API Quality Management:

    a. Your practices, policies, and procedures for Quality Management as they relate to the sourcing, transportation, and storage of API.

    b. Any temperature and/or humidity mapping systems, monitoring reports, alarms, or similar data logs as they relate to API.

    c. Any known or discovered deviations or nonconformities from the Quality Management System or investigations of possible deviations, nonconformities, or violations.

    d. Any instances in which API was destroyed, returned, rejected, refunded, or otherwise not used for its intended purpose for reasons relating to quality.

**Finished-Product Supply Chain**

5. The source(s) of Ranitidine-Containing Products You sell, but do not manufacture:

    a. The person(s) from whom You purchase the Ranitidine-Containing Product, and Your related contracts and agreements with that person(s).

    b. The manufacturer(s) of that Ranitidine-Containing Product and related NDA, ANDA, and NDC.

    c. The location(s) where that Ranitidine-Containing Product is manufactured.

6. The transportation and delivery to You of Ranitidine-Containing Products You sell, but do not manufacture:

    a. The location(s) and/or facilities where that Ranitidine-Containing Product is delivered from and received by You, including intermediate locations.

    b. The modes by which that Ranitidine-Containing Product is transported to You.

    c. The person(s) involved in the transport/delivery of that Ranitidine-Containing Product to You, and Your related contracts and agreements with that person(s).

    d. The person(s) responsible for ensuring compliance with, or satisfaction of, the legal requirements to import that Ranitidine-Containing Product into the United States.

    e. The documentation accompanying ranitidine-containing products you receive (e.g., shipping documents, bills of lading, invoices, certificates of analysis, package inserts, etc).

7. Your storage of Ranitidine-Containing Product You sell, but do not manufacture:

    a. The locations and/or facilities where You store that Ranitidine-Containing Product.

    b. The person(s) involved in Your storage of that Ranitidine-Containing Product, and Your related contracts and agreements with that person(s).

8. Quality Management of Ranitidine-Containing Product You sell, but do not manufacture:

    a. Your practices, policies, and procedures for Quality Management as they relate to the sourcing, transportation, and storage of that Ranitidine-Containing Product.

    b. Any temperature and/or humidity mapping systems, monitoring reports, alarms, or similar data logs as they relate to that Ranitidine-Containing Product.

c. Any known or discovered deviations or nonconformities from the Quality Management System or investigations of possible deviations, nonconformities, or violations.

d. Any instances in which that Ranitidine-Containing Product was destroyed, returned, rejected, refunded, or otherwise not used or marketed for its intended purpose for reasons relating to quality.

**Finished-Product Distribution Chain**

9. Your manufacture of Ranitidine-Containing Product:

a. The forms of Ranitidine-Containing Product You manufacture and the related NDA, ANDA, and NDC.

b. The location(s) where that Ranitidine-Containing Product is manufactured.

10. Your storage and internal transportation of Ranitidine-Containing Product You manufacture:

a. The location(s) where You store that Ranitidine-Containing Product.

b. The person(s) involved in Your storage of that Ranitidine-Containing Product, and Your related contracts and agreements with that person(s).

c. The modes by which that Ranitidine-Containing Product is transported from the place of manufacture to the place of storage.

d. The person(s) involved in the transport/delivery of that Ranitidine-Containing Product to its place of storage, and Your related contracts and agreements with that person(s).

e. The documentation accompanying ranitidine-containing products you receive, and the ranitidine-containing products you ship (e.g., shipping documents, bills of lading, invoices, certificates of analysis, package inserts, etc).

11. The transportation and delivery of Ranitidine-Containing Product You sell:

a. The person(s) to whom You sell Ranitidine-Containing Products, and Your related contracts and agreements with that person;

b. The documentation accompanying ranitidine-containing products you receive (e.g., shipping documents, bills of lading, invoices, certificates of analysis, package inserts, etc);

c. The location(s) and/or facilities from, and to which, You transport and deliver Ranitidine Containing Products;

7

d.  The modes by which You transport Ranitidine-Containing Product to those location(s);

e.  The person(s) involved in the transport/delivery of that Ranitidine-Containing Product to those locations, and Your related contracts and agreements with that person(s).

f.  The documentation accompanying ranitidine-containing products you ship (e.g., shipping documents, bills of lading, invoices, certificates of analysis, package inserts, etc).

12. Quality Management of Ranitidine-Containing Product You sell:

a.  Your practices, policies and procedures for Quality Management as they relate to the sourcing, transportation, and storage of that Ranitidine-Containing Product.

b.  The location and existence of any temperature and/or humidity mapping systems, monitoring reports, alarms, or similar data logs as they relate to that Ranitidine-Containing Product.

c.  Any instances in which that Ranitidine-Containing Product was destroyed, returned, rejected, refunded, or otherwise not used or marketed for its intended purpose for reasons relating to quality.

**Identity of Your Witnesses and Documents**

13. With respect to each of the above topics:

a.  Your current (and any prior) corporate organization, and structure of departments or divisions responsible for any related practices, policies, and procedures.

b.  The identity of Your corporate officers and managers responsible for, or having any knowledge thereof.

c.  The existence, name, location, and nature of any related informational database.

d.  The location, storage, and organization of Your related documents.

## DOCUMENTS TO BE PRODUCED

Deponent shall produce the following documents three (3) business days prior to the deposition:

1.  Current resume and curriculum vitae of deponent.

2.  All documents reviewed by the deponent in preparing for this deposition.

3.   All documents in the deponent's possession, custody, or control related to the deposition's topics listed above.

# EXHIBIT 2

**DEFENDANTS' OBJECTIONS AND PLAINTIFFS' POSITION ON OBJECTIONS TO STORAGE AND TRANSPORT DEPOSITION NOTICE**

| Definition | Generic Defendants' Objection(s) | Plaintiffs' Position |
|---|---|---|
| 1. "YOU" or "YOUR" refers to [Generic Family], and any of its predecessor companies, successor companies, members, partners, directors, officers, employees, servants, agents, attorneys, joint venturers, licensors, third party contractors, or other representatives, including parent entities. | The definition of "YOU" or "YOUR" is overly broad and purports to require a response on behalf of separate corporate entities, including some that are not subject to jurisdiction here, and it purports to require testimony regarding information that is not within a Generic Defendants' possession, custody, or control, especially as it relates to third party contractors. | |
| 4. "QUALITY" refers to any physical, chemical, microbiological, biological, bioavailability, and stability attributes that a drug product should maintain in order to be deemed suitable for therapeutic or diagnostic use. | The definition of "QUALITY" is overly broad to the extent it expands the noticed topics beyond issues relating to storage and transportation and to the extent it purports to require testimony regarding claims that have been dismissed with prejudice. | |
| 5. "QUALITY MANAGEMENT" refers to the identification, measurement, control, and improvement of the distribution and storage of a drug product, with regard to quality, including, but not limited to, any program, practice, policy or procedure regarding: (1) used to control storage of drug products; (2) that covers the movement, including storage and transportation, of drug products; (3) that allows for the identification of quality critical environmental aspects (such as temperature, humidity, and/or other environmental factors) for a drug product and/or ensures that the | 1. The definition of "QUALITY MANAGEMENT" is overly broad to the extent it expands the noticed topics beyond issues relating to storage and transportation and to the extent it purports to require testimony regarding claims that have been dismissed with prejudice. 2. The definition is vague and overbroad in that it seeks to incorporate USP standards that have changed over time, without specifying which version(s) or time period is relevant. | |

| | | |
|---|---|---|
| adequate processes to maintain that environment are in place; (4) used to assess, control, communicate, and review risks to the quality of a drug product across the product lifecycle; or (5) relating to 21 U.S.C. s. 501(a)(2), 21 C.F.R. Parts 210 & 211, or USP [1079] Good Storage and Distribution Packages for Drug Products. | | |
| 6. "RANITIDINE-CONTAINING PRODUCT(S)" of "RCPs" means any product in which an active ingredient is ranitidine, including but not limited to Zantac or ranitidine, whether or not the product was brought to market, including any branded, unbranded (i.e. generic), prescription, and over-the-counter ("OTC") product, that was or is in development, and used to treat, among other things, heartburn, gastroesophageal reflux disease, ulcers in the stomach or intestines, or Zollinger-Ellison syndrome. | 1. The definition of "RANITIDINE-CONTAINING PRODUCT(S)" or "RCPs" seeks information that is irrelevant to any claim against some Generic Defendants in that it seeks testimony including those products that were never marketed and therefore never received or used by any consumer.<br>2. The definition is overbroad and disproportionate because only ranitidine-containing products made and/or sold in the United States are relevant to plaintiffs' claims. To the extent the definition refers to products made and/or sold in other countries, it is outside the scope of plaintiffs' allegations and claims and is therefore disproportionate. | |

| Topic | Generic Defendants' Objection(s) | Plaintiffs' Position |
|---|---|---|
| 1. The source(s) of the API for any Ranitidine-Containing Product:<br>  a. The person(s) from whom You purchased the API, and of Your related contracts and agreement(s) with that person(s).<br>  b. The manufacturer(s) of the API.<br>  c. The location(s) and/or facilities where the API is manufactured. | 1. This topic does not apply to all Generic Defendants, who can confirm their role in the manufacture and distribution chain through other, less expensive and intrusive means.<br>2. To the extent the topic applies to a Generic Defendant, it is duplicative of information provided in the Core Discovery Agreement and PTO 50 disclosures, and could be reduced to written interrogatory requests.<br>3. This topic can be reduced to an interrogatory or request for production. | |
| 2. The transportation and delivery of API to You:<br>  a. The location(s) where the API You purchased was/is delivered from and received by You, including intermediate locations.<br>  b. The modes by which the API you purchased is transported to You.<br>  c. The person(s) involved in the transport/delivery of API to You, and Your related contracts and agreements with that person(s).<br>  d. The documentation accompanying ranitidine-containing products you receive, and the ranitidine- | 1. This topic does not apply to all Generic Defendants, who can confirm their role in the manufacture and distribution chain through other, less expensive and intrusive means.<br>2. To the extent the topic applies to a Generic Defendant, it is not proportional to the needs of the case. A deposition topic calling for the identities of every person and entities involved in transporting API over an unlimited period of time is not proportional, because it could be reduced to a written discovery and because requiring a witness to memorize such a list is unreasonable, and may not even be possible | |

| | | |
|---|---|---|
| containing products you ship (e.g., shipping documents, bills of lading, invoices, certificates of analysis, package inserts, etc.). | depending on how long a Generic Defendant was on the market.<br>3. This topic can be reduced to an interrogatory or request for production. | |
| 3. Your storage of API:<br>   a. The location(s) where You store/stored API. The person(s) involved in Your storage of API, and Your related contracts and agreements with that person(s). | 1. This topic does not apply to all Generic Defendants, who can confirm their role in the manufacture and distribution chain through other, less expensive and intrusive means.<br>2. To the extent the topic applies to a Generic Defendant, it could be reduced to an interrogatory or request for production. | |
| 4. Your API Quality Management:<br>   a. Your practices, policies, and procedures for Quality Management as they relate to the sourcing, transportation, and storage of API.<br>   b. Any temperature and/or humidity mapping systems, monitoring reports, alarms, or similar data logs as they relate to API.<br>   c. Any known or discovered deviations or nonconformities from the Quality Management System or investigations of possible deviations, nonconformities, or violations.<br>   d. Any instances in which API was destroyed, returned, | 1. This topic does not apply to all Generic Defendants, who can confirm their role in the manufacture and distribution chain through other, less expensive and intrusive means.<br>2. To the extent the topic applies to a Generic Defendant, sub-topic (c) is not proportional and calls for information broader than the narrow claims plaintiffs were permitted to re-plead in their amended complaints.<br>3. Sub-topic (d) seeks information that is irrelevant because no one ingested a product with API that was ultimately destroyed, returned, rejected, refunded, or not otherwise used. | |

| | | |
|---|---|---|
| rejected, refunded, or otherwise not used for its intended purpose for reasons relating to quality. | | |
| 5. The source(s) of Ranitidine-Containing Products You sell, but do not manufacture:<br>   a. The person(s) from whom You purchase the Ranitidine-Containing Product, and Your related contracts and agreement(s) with that person(s).<br>   b. The manufacturer(s) of that Ranitidine-Containing Product and related NDA, ANDA, and NDC.<br>   c. The location(s) and/or facilities where that Ranitidine-Containing Product is manufactured. | 1. This topic and its subparts seek information that is duplicative of information the Generic Defendants previously provided in accordance with PTO 50.  This topic can be reduced to an interrogatory or request for production.<br>2. Topic 5(b), is insufficiently precise to allow the Generic Defendants to identify an appropriate corporate designee(s) and adequately evaluate the relevance of the proposed topic.  As plaintiffs already know, the Generic Defendants do not own any NDAs, and therefore it is unclear what plaintiffs intended to cover by this topic.<br>3. The Generic Defendants' ANDAs are tens of thousands of pages long, contain details regarding many different topics, and were approved up years ago. | |
| 6. The transportation and delivery to You of Ranitidine-Containing Products You sell, but do not manufacture:<br>   a. The location(s) and/or facilities where that Ranitidine-Containing Product is delivered from and | 1. The information sought can be reduced to an interrogatory or request for production.<br>2. Topic 6(c) is disproportionate to the needs of the case to the extent plaintiffs are seeking the name of a person or persons, whose identity/ies | |

5

| | | |
|---|---|---|
| received by You, including intermediate locations.<br><br>b.  The modes by which that Ranitidine-Containing Product is transported to You.<br><br>c.  The person(s) involved in the transport/delivery of that Ranitidine-Containing Product to You, and Your related contracts and agreements with that person(s).<br><br>d.  The person(s) responsible for ensuring compliance with, or satisfaction of, the legal requirements to import that Ranitidine-Containing Product into the United States.<br><br>e.  The documentation accompanying ranitidine-containing products you receive (e.g., shipping documents, bills of lading, invoices, certificates of analysis, package inserts, etc). | can be produced in response to interrogatories.<br><br>3.  Topic 6(c) is disproportionate to the needs of the case to the extent plaintiffs are seeking information about any person ever involved in transporting finished drug products, including employees, over the many years during which Generic Defendants formulations of ranitidine-containing products were on the market.<br><br>4.  Topic 6(d) is disproportionate to the needs of the case to the extent plaintiffs are seeking the name of a person or persons, whose identity/ies can be produced in response to interrogatories.<br><br>5.  Topic 6(d) is vague in its use of the undefined terms "compliance" and "legal requirements," which could implicate multiple departments within the company.<br><br>6.  Topic 6(d) is outside the scope of claims the Court has permitted plaintiffs to attempt to replead.<br><br>7.  Topic 6(e) is overly broad and disproportionate to the needs of the case to the extent plaintiffs are seeking testimony regarding individual shipping documentation such as bills of lading, invoices, or other similar documents.<br><br>8.  Topic 6(e) is disproportionate to the needs of the case based on the scope | |

| | | |
|---|---|---|
| | of claims the Court has permitted plaintiffs to attempt to replead. | |
| 7. Your storage of Ranitidine-Containing Products You sell, but do not manufacture:<br>   a. The location(s) and/or facilities where You store/stored that Ranitidine-Containing Product.<br>   b. The person(s) involved in Your storage of that Ranitidine-Containing Product, and Your related contracts and agreements with that person(s). | 1. The information sought can be reduced to an interrogatory or request for production.<br>2. Topic 7(b) is disproportionate to the needs of the case to the extent plaintiffs are seeking the name of a person or persons, whose identity/ies can be produced in response to interrogatories.<br>3. Topic 7(b) is disproportionate to the needs of the case to the extent plaintiffs are seeking information about any person ever involved in the storage of finished drug products, including employees, over the many years during which each Generic Defendants' formulations of ranitidine-containing products were on the market. | |
| 8. Quality Management of Ranitidine-Containing Product You sell, but do not manufacture:<br>   a. Your practices, policies, and procedures for Quality Management as they relate to the sourcing, transportation, and storage of that Ranitidine-Containing Product. | 1. As plaintiffs have defined "Quality Management" and "Quality" this topic expands beyond written standard operating procedures and the definitions are vague. As a result, topic 8(a) is not specific enough to allow the Generic Defendants to prepare a witness on this topic.<br>2. Topic 8(b) is overly broad and disproportionate to the needs of the | |

| | | |
|---|---|---|
| b. Any temperature and/or humidity mapping systems, monitoring reports, alarms, or similar data logs as they relate to that Ranitidine-Containing Product.<br>c. Any known or discovered deviations or nonconformities from the Quality Management System or investigations of possible deviations, nonconformities, or violations.<br>d. Any instances in which that Ranitidine-Containing Product was destroyed, returned, rejected, refunded, or otherwise not used or marketed for its intended purpose for reasons relating to quality. | case to the extent plaintiffs seek testimony regarding the data generated by or contained in any temperature and/or humidity mapping systems, monitoring reports, alarms, or similar data logs, especially because plaintiffs have included no relevant time frame.<br>3. Topics 8(c) and 8(d) seek irrelevant information and are disproportional to the needs of the case, because the testimony they seek is not limited to quality issues relating to NDMA, and is beyond the scope of plaintiffs' claims and the MDL consolidation order.<br>4. Topic 8(d) also seeks information that is irrelevant and not proportional to the needs of this case, because no one ingested any ranitidine-containing product that was destroyed, returned, rejected, refunded, or otherwise not used or marketed for its intended purpose. | |
| 9. Your manufacture of Ranitidine-Containing Product:<br>a. The forms of Ranitidine-Containing Product You manufacture and the related NDA, ANDA, and NDC.<br>b. The location(s) where that Ranitidine-Containing Product is manufactured. | 1. This topic does not apply to all Generic Defendants, who can confirm their role in the manufacture and distribution chain through other, less expensive and intrusive means.<br>2. To the extent the topic applies to a Generic Defendant, requiring a deposition on topic 9(a) is not proportional to the needs of the case. | |

| | | |
|---|---|---|
| | The requested information may be obtained through less expensive and less burdensome means because it has already been provided pursuant to PTO 50.<br>3. Topic 9(b) is not proportional to the needs of the case because it may be obtained through less expensive and less burdensome means because it has already been provided pursuant to Core Discovery Agreement. | |
| 10. Your storage and internal transportation of Ranitidine-Containing Product You manufacture:<br>   a. The location(s) where You store that Ranitidine-Containing Product.<br>   b. The person(s) involved in Your storage of that Ranitidine-Containing Product, and Your related contracts and agreements with that person(s).<br>   c. The modes by which that Ranitidine-Containing Product is transported from the place of manufacture to the place of storage.<br>   d. The person(s) involve in the transport/delivery of that Ranitidine-Containing Product to its place of storage, and Your related contracts and agreements with that person(s). | 1. This topic does not apply to all Generic Defendants, who can confirm their role in the manufacture and distribution chain through other, less expensive and intrusive means.<br>2. To the extent the topic applies to a Generic Defendant, the topic is not proportional because it can be reduced to an interrogatory or request for production.<br>3. The topic is disproportionate to the needs of the case because it would require a witness to memorize the lists of names and contents of documents when that information is more easily obtainable in written discovery. | |

| | | |
|---|---|---|
| e. The documentation accompanying ranitidine-containing products you receive, and the ranitidine-containing products you ship (e.g., shipping documents, bills of lading, invoices, certificates of analysis, package inserts, etc). | | |
| 11. The transportation and delivery of Ranitidine-Containing Product You sell:<br>a. The person(s) to whom You sell Ranitidine-Containing Products, and Your related contracts and agreements with that person;<br>b. The documentation accompanying ranitidine-containing products you receive (e.g., shipping documents, bills of lading, invoices, certificates of analysis, package inserts, etc);<br>c. The location(s) and/or facilities from, and to which, You transport and deliver Ranitidine-Containing Products;<br>d. The modes by which You transport Ranitidine-Containing Products to those location(s);<br>e. The person(s) involved in the transport/delivery of that | 1. The information sought can be reduced to an interrogatory or request for production.<br>2. Topics 11(b) and (e) are disproportionate in seeking testimony on individual shipping documents and lists of the names of individuals involved in purchasing ranitidine products over an unlimited period of time. | |

| | | |
|---|---|---|
| Ranitidine-Containing Product to those locations, and Your related contracts and agreements with that person(s).<br>f. The documentation accompanying ranitidine-containing products you ship (e.g., shipping documents, bills of lading, invoices, certificates of analysis, package inserts, etc). | | |
| 12. Quality Management of Ranitidine-Containing Product You sell:<br>a. Your practices, policies, and procedures for Quality Management as they relate to the sourcing, transportation, and storage of that Ranitidine-Containing Product.<br>b. The location and existence of any temperature and/or humidity mapping systems, monitoring reports, alarms, or similar data logs as they relate to that Ranitidine-Containing Product.<br>c. Any instances in which that Ranitidine-Containing Product was destroyed, returned, rejected, refunded, or otherwise not used for its intended purpose for reasons relating to quality. | 1. As plaintiffs have defined "Quality Management" and "Quality" this topic expands beyond written standard operating procedures and the definitions are vague. As a result, topic 12(a) is not specific enough to allow the Generic Defendants to prepare a witness on this topic.<br>2. Topic 12(b) also is overly broad and disproportionate to the needs of the case to the extent plaintiffs seek testimony regarding the data generated by or contained in any temperature and/or humidity mapping systems, monitoring reports, alarms, or similar data logs, especially because plaintiffs have included no relevant time frame.<br>3. Topic 12(c) seeks information that is irrelevant and not proportional to the needs of this case, because there is no allegation that any plaintiff actually ingested any ranitidine-containing | |

| | | |
|---|---|---|
| | product that was destroyed, returned, rejected, refunded, or otherwise not used or marketed for its intended purpose. | |
| 13. With respect to each of the above topics:<br><br>   a. Your current (and any prior) corporate organization, and structure of departments or divisions responsible for any related practices, policies, and procedures.<br><br>   b. The identity of Your corporate officers and managers responsible for, or having knowledge thereof.<br><br>   c. The existence, name, location, and nature of any related informational database.<br><br>   d. The location, storage, and organization of Your related documents. | 1. This topic is overly broad in that it would require a witness to testify regarding (i) the corporate organization and structure of many different departments and divisions over many years; (ii) each and every corporate officer and manager having any knowledge of any topic implicated in this Notice over that same time period; and (iii) the location, storage, and organization of every single document related to each of the Topics contained in the Notice.<br>2. The term "informational database" is also undefined and not reasonably particular such that the Generic Defendants are unable to prepare a witness.<br>3. Requiring a witness to testify to this topic is not proportional to the needs of this case, particularly where the Generic Defendants can provide this information – to the extent it exists and is not otherwise objectionable – through other, less expensive and intrusive means, like a response to a written discovery request. | |