**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IN RE: ZANTAC (RANITIDINE)                                  MDL NO. 2924
PRODUCTS LIABILITY                                           20-MD-2924
LITIGATION

                                          **JUDGE ROBIN L. ROSENBERG**
                                **MAGISTRATE JUDGE BRUCE E. REINHART**
_____

THIS DOCUMENT RELATES TO:

*Mayor and City Council of Baltimore*
*v. GlaxoSmithKline, et al*.
No. 9:21-cv-80245-RLR

**THE MAYOR AND CITY COUNCIL OF BALTIMORE'S MOTION TO REMAND AND**
**INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ....................................................................................................1

I.      Legal Standards............................................................................................7

II.     There Is Not Complete Diversity Among The Parties........................................9

III.    Defendants Have Not Proven With Clear And Convincing Evidence That The City's
        Claims Against The Maryland-Based Store Brand Defendants Are Impossible ..............10

        A.      Baltimore Has More Than A Possibility Of Succeeding On Its Negligence Claim
                Against the Maryland-Based Store Brand Defendants .........................................10

        B.      Baltimore Has More Than A Possibility Of Succeeding On Its Public Nuisance
                Claim Against the Maryland-Based Store Brand Defendants ..............................14

IV.     The City Is Entitled To An Award of Attorney's Fees And Costs Due To Defendant's
        Insistence On Unnecessary Motion Practice....................................................16

CONCLUSION ....................................................................................................17

CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(3) ...................................................19

CERTIFICATE OF SERVICE ......................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adventure Outdoors, Inc. v. Bloomberg*,
    552 F.3d 1290 (11th Cir. 2008) ............................................................................7

*Burgess v. Montgomery Ward & Co*.,
    264 F.2d 495 (10th Cir. 1959) ............................................................................13

*Cantrell v. Wirtgen Am. Inc*.,
    Civil Action No. CCB-07-2778, 2011 WL 915324 (D. Md. 2011) ..................13, 14

*City of Arab v. Arab Elec. Co-op, Inc.*,
    No. CV-92-N-0379-M, 1992 WL 695226 (N.D. Ala. July 6, 1992) .......................8

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. For So. Cal.*,
    463 U.S. 1 (1983) ................................................................................................7

*Frericks v. General Motors Corp*.,
    274 Md. 288 (1975) ...........................................................................................13

*Henderson v. Washington Nat'l Ins. Co*.,
    454 F.3d 1278 (11th Cir. 2006) ............................................................................8

*Imperial Fund I, LLC v. Orukotan*,
    No. 21-CV-60162-RAR, 2021 WL 752577 (S.D. Fla. Feb. 25, 2021) ..................16

*James v. Arms Tech., Inc.*,
    820 A.2d 27 (N.J. App. Div. 2003) ....................................................................14

*JBG/JER Shady Grove, LLC v. Eastman Kodak Co*.,
    127 F. Supp. 2d 700 (D. Md. 2001) ...................................................................10

*City of Gary ex rel. King v. Smith & Wesson Corp.*,
    801 N.E.2d 1222 (Ind. 2003) .............................................................................14

*Kokkonen v. Guardian Life Ins. Co.*,
    511 U.S. 375 (1994) .............................................................................................7

*In re Lead Paint Litigation*,
    191 N.J. 405 (2008) ...........................................................................................15

*Lloyd v. Gen. Motors Corp*.,
    916 A.2d 257 (Md. Ct. App. 2007) ....................................................................12

*Martin v. Franklin Cap. Corp.*,
   546 U.S. 132 (2005)................................................................................16

*Mayor & City Council of Baltimore v. Monsanto Co.*,
   No. RDB-19-0483, 2020 WL 1529014 (D. Md. Mar. 31, 2020) ........................................8, 15

*State of W. Va. ex rel. McGraw v. CVS Pharm., Inc.*,
   646 F.3d 169 (4th Cir. 2011) ................................................................7

*Murphy v. Secretary, U.S. Dep't of Army*,
   769 Fed. Appx. 779 (11th Cir. 2019).........................................................7

*Pacheco de Perez v. AT&T Co.*,
   139 F.3d 1369 (11th Cir. 1998) .............................................................9

*Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*,
   374 F.3d 1020 (11th Cir. 2004) .........................................................9, 10

*State of Nevada v. Bank of Am. Corp.*,
   672 F.3d 661 (9th Cir. 2012) .............................................................7, 8

*Stillwell v. Allstate Ins. Co.*,
   663 F.3d 1329 (11th Cir. 2011) ........................................................4, 8, 9

*Tadjer v. Montgomery Cty.*,
   300 Md. 539 (1983) ........................................................................15

*Univ. of S. Alabama v. Am. Tobacco Co.*,
   168 F.3d 405 (11th Cir. 1999) .............................................................7

*In re: Zantac (Ranitidine) Prods. Liab. Litig.*,
   No. 20-MD-2924, 2020 WL 7864213 (S.D. Fla. Dec. 31, 2020) ...........................................11

*In re: Zantac (Ranitidine) Prods. Liab. Litig.*,
   No. 20-MD-2924, 2020 WL 7864585 (S.D. Fla. Dec. 31, 2020) ...........................................11

**Statutes**

28 U.S.C. § 1447(c) ......................................................................16

**Other Authorities**

Pattern Jury Instructions MPJI-CV-26:3 ..................................................12

The Mayor and City Council of Baltimore ("Baltimore" or the "City") respectfully requests that the Court remand this matter to the Circuit Court of Maryland for Baltimore City because Perrigo Research & Development Company ("Perrigo") and the other Defendants (collectively, "Defendants")[1] have failed to show any basis for federal jurisdiction.  This Motion is filed with leave of Court pursuant to the Court's March 5, 2021 Order (Dkt. 2967).

## INTRODUCTION

The City brought this action in Maryland state court in its governmental capacity, through an exercise of its chartered police power to regulate conduct within the City and its legislative responsibility to protect the health and well-being of its residents, to remedy Defendants' violations of state law and the harm to its residents caused by Defendants' alleged conduct.  The City's Complaint seeks no relief under federal law, and expressly disavows any claims arising under federal law.[2]  The Complaint asserts claims against foreign and Maryland-based defendants, such that diversity is lacking.

Baltimore named three categories of defendants: (1) the Brand Manufacturer Defendants, who the City alleges knowingly engaged in unlawful trade practices in the regular course of their trade or commerce by making representations that were false or misleading in connection with the sale of their Zantac products, contributing to a public nuisance, and breaching their duties of care to the City and its residents; (2) the Generic Manufacturer Defendants, who contributed to the public nuisance and breached their duties of care to the City and its residents; and (3) the Store

---

[1] In Perrigo's Notice of Removal ("Notice"), Perrigo represented that "each of the named Defendants properly joined and served to date has consented to Perrigo's Notice of Removal, as indicated by their signing below."  No. 1:21-cv-00041-GLR (D. Md.), Dkt. 1 ¶ 114.

[2] *See* No. 1:21-cv-00041-GLR (D. Md.), Dkt. 1-1 ("Complaint" or "Compl.") ¶¶ 1, 6, 7, 174, 175; *see also id.* ¶¶ 317, 320, 322, 324, 326, 328, 330, 332, 334, 336, 338, 341, 344, 346, 348, 350, 352, 354, 356, 358, 360.

Brand Defendants, who, exactly like the Generic Manufacturer Defendants, contributed to the public nuisance and breached their duties of care to the City and its residents. Although categories (2) and (3) are distinguished in the Complaint for ease of reference, the only substantive difference between those groups of defendants is that the Generic Manufacturer Defendants may have never sold a product under their own names, while the Store Brand Defendants did sell their products under their own names. Both groups are, effectively, generic/non-brand pharmaceutical company defendants. No claim is predicated simply on any defendant's role as a passive conduit in the chain of commerce; instead, all Store Brand Defendants sold their own store-brand ranitidine products in Baltimore.

The Store Brand Defendants include national companies that sold their own store-brand ranitidine products, including CVS, Kroger, Harris Teeter, Rite Aid, Target, and Walgreens, as well as Maryland-based companies with operations in Baltimore that also sold their own store-brand ranitidine products. The three Store Brand Defendants falling into the latter group (Giant of Maryland, LLC, Shoprite of Perring Parkway, LLC and Shoprite of Liberty Heights, LLC) are residents of Maryland (the "Maryland-Based Store Brand Defendants"). In an attempt to confuse the issues, Defendants refer to this subset of Store Brand Defendants as "Local Retailer Defendants," a term not found in the Complaint. Defendants contend that the Maryland-Based Store Brand Defendants have been fraudulently joined. Defendants fail to acknowledge that Baltimore's allegations and claims with respect to the Maryland-Based Store Brand Defendants are identical to those asserted with respect to the other national Store Brand Defendants, and of course, Defendants do not allege that Baltimore has fraudulently joined *all* Store Brand Defendants—only those based in Maryland.

The Maryland-Based Store Brand Defendants, like the other Store Brand Defendants, sold their dangerous, carcinogenic products to the City and its residents and caused harm to the City and its residents.  All Defendants, including the Maryland-Based Store Brand Defendants, are joined in the Complaint's public nuisance and negligence counts.

On January 6, 2021, Defendants removed this case to federal court and invoked diversity jurisdiction and federal question jurisdiction,[3] even though both are absent on the face of the Complaint.[4]  The City promptly moved to remand, and the City's motion to remand was fully briefed in the U.S. District Court for the District of Maryland.  On February 1, 2021, the U.S. District Court for the District of Maryland denied without prejudice the City's motion to remand and granted Defendants' motion to stay all proceedings pending transfer to multidistrict litigation. *See* Dkt. 75, *Mayor & City Council of Baltimore v. GlaxoSmithKline LLC, et al.*, No. 1:21-cv-00041-GLR (D. Md. Feb. 1, 2021).  The following day, the City withdrew its opposition to the pending conditional transfer order and the case was transferred to this Court.

This Court has already examined and resolved the issues to be addressed in this motion. On February 19, 2021, the Court rejected Defendants' fraudulent-joinder arguments in the context of claims asserted by numerous individual California-based plaintiffs.[5]  On February 25, 2021, the Court then rejected Defendants' substantial federal question arguments in the context of a

---

[3] As described below, on March 4, 2021, Perrigo filed a notice of partial withdrawal of its notice of removal and withdrew federal question jurisdiction as one of the bases for removal of this action. Dkt. 81 in 9:21-cv-80245-RLR ("Notice of Withdrawal").

[4] Compl. ¶¶ 1, 6, 174, 175, 304; *see also id.* ¶¶ 368-98.

[5] Order Granting the Plaintiffs' Motion to Remand, Dkt. 2824 in MDL-2924-RLR (Feb. 19, 2021) ("California Remand Order").

governmental action initiated by the State of New Mexico.[6]  To maximize judicial efficiency and preserve court and party resources, the City, by counsel, sought Defendants' agreement to remand this action to Maryland state court, on February 25, 2021.  Defendants refused to stipulate and thus required the City to file this motion.  The City informed Defendants that, because the substantive issues raised in this motion have **already been resolved** by this Court, the motion is unnecessary, and the City will include a request for attorneys' fees if required to proceed in this inefficient and wasteful manner.

As set forth herein, diversity jurisdiction does not exist here because the City and three of the defendants are Maryland citizens.[7]  In its Notice, Perrigo concedes that the Maryland-Based Store Brand Defendants "share Maryland citizenship with the City[.]"[8]  Thus, it is uncontested that complete diversity of citizenship is lacking on the face of the Complaint.

Notwithstanding this admitted lack of complete diversity, Defendants removed the case to federal court, claiming the citizenship of the Maryland-Based Store Brand Defendants should be ignored for jurisdictional purposes because of the doctrine of fraudulent joinder.  Under the doctrine of fraudulent joinder, a court can ignore the citizenship of certain parties only if the removing parties prove, with clear and convincing evidence and with all factual and legal uncertainties resolved against them, that it would be *impossible* to establish any claim against

---

[6] Order Granting the Plaintiff's Motion to Remand, Dkt. 2870 in MDL-2924-RLR (Feb. 25, 2021) ("New Mexico Remand Order").

[7] Compl. ¶¶ 142, 159, 162.

[8] Notice ¶¶ 3, 8, 19, 58.

them.[9]  If even a single claim is colorable, the Court may not set aside any party's citizenship and this case must be remanded.

The City seeks to hold the Maryland-Based Store Brand Defendants liable under Maryland law for (1) contributing to the creation of a public nuisance and (2) acting negligently by contributing to the public health danger, pursuant to the City's chartered authority.  Defendants have failed to meet—and cannot meet—their heavy burden of proving that each of these causes of action is, by clear and convincing evidence, impossible under Maryland law.

The City alleged that all Defendants, including the Maryland-Based Store Brand Defendants, "failed to exercise ordinary care" in connection with their sales of ranitidine in Baltimore.  *E.g.*, Compl. ¶ 392.  The City also alleged a variety of general facts regarding the mechanism of action of ranitidine, the presence or formation of NDMA in ranitidine and/or ranitidine consumption, and that NDMA concentrations in ranitidine increase when stored at higher than room temperatures.  Compl. ¶¶ 222, 230-244, 255-266, 269-272, 274-276, 280-281, 287, 288.  The City also alleged that Defendants withheld material information from the FDA and that, once discovered, the FDA requested the withdrawal of all ranitidine products from the U.S. market immediately, after "determin[ing] that the impurity in some ranitidine products increases over time and when stored at higher than room temperatures and may result in consumer exposure to unacceptable levels of this impurity" (*id.* ¶ 272), and that Defendants' packaging advised users to store products within a specific temperature range.  *Id.* ¶¶ 307, 311, 323, 325, 327, 329, 331, 333, 335, 345, 347, 349, 351, 353, 355, 357, 359, 361.

Notwithstanding these allegations, Defendants argue the City's negligence and public nuisance claims against Maryland-Based Store Brand Defendants are "impossible" because of

---

[9] *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1333 (11th Cir. 2011).

federal preemption, the absence of a mere retailer's duty to guard against latent defects in products they sell, and the absence of knowledge on the part of retailers regarding dangers inherent in ranitidine.[10]

As an initial matter, the merits of Defendants' preemption argument, which is a defense theory, may be ably considered by the Maryland state court.  That argument is not relevant to this analysis.  Second, Defendants' arguments that the City's claims against Maryland-Based Store Brand Defendants are impossible because the only way such mere retailers could have known about the grave health risks associated with ranitidine consumption is to have "conduct[ed] detailed scientific investigations of every pharmaceutical product they sell to guarantee its safety" and "conduct[ed] extensive testing of ***all*** of their products to discover any latent dangers and warn against them,"[11] completely misrepresents the City's allegations and confuses the law.  The City has not randomly chosen a handful of in-state retailers who merely peddled other Defendants' products to unsuspecting consumers; the City has deliberately asserted claims against three Maryland-based companies that **sold their own ranitidine products in Baltimore**.

In addition, as explained below, the cases Defendants cite for their argument that "[t]here is no possibility that the City could prevail on its public nuisance claim against the [Maryland-Based Store Brand Defendants] under Maryland law because the [Maryland-Based Store Brand Defendants'] mere sale of an FDA-approved pharmaceutical did not unreasonably interfere with a public right"[12] show why such arguments must fail.

_____

[10] Notice ¶ 60; *see also id.* ¶ 3.

[11] Notice ¶ 75 (emphasis in original).

[12] Notice ¶ 78.

Thus, Defendants have failed to prove, with clear and convincing evidence, and with all factual and legal uncertainties going against them, that it would be impossible for the City to plead any claim against a Maryland-Based Store Brand Defendants. Thus, there is no fraudulent joinder and this Court lacks subject-matter jurisdiction over this case.

## ARGUMENT

### I.   LEGAL STANDARDS

Courts presume that federal jurisdiction does not exist over a removed case unless the defendant can affirmatively show otherwise. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citation omitted); *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)(citations omitted) (explaining "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue"). "[I]t is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377; *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294-95 (11th Cir. 2008). Simply put, "all doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Alabama*, 168 F.3d at 411 (citations omitted); California Remand Order at 6. Because federal courts are courts of limited jurisdiction, the Eleventh Circuit has ruled that courts must deny such jurisdiction if not affirmatively apparent on the record. *Murphy v. Secretary, U.S. Dep't of Army*, 769 Fed. Appx. 779, 782 (11th Cir. 2019) (citing *United States v. Rojas*, 429 F.3d 1317, 1320 (11th Cir. 2005)).

These strict restrictions, applicable to all attempts to remove state-court actions to federal court, are heightened where, as here, the action is brought by a governmental plaintiff. In such cases, "considerations of comity make [courts] reluctant to snatch cases which a State [or other

sovereign government entity] has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. For So. Cal.*, 463 U.S. 1, 21 n.22 (1983); *see also State of W. Va. ex rel. McGraw v. CVS Pharm., Inc.*, 646 F.3d 169, 179 (4th Cir. 2011); *State of Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012)); *City of Arab v. Arab Elec. Co-op, Inc.*, No. CV-92-N-0379-M, 1992 WL 695226, at **1-3 (N.D. Ala. July 6, 1992) (holding the court lacked subject matter jurisdiction over the action where the plaintiff municipalities' claims were based on Alabama law and the plaintiffs had merely anticipated a federal defense). When a sovereign entity "alleges only state law causes of action, brought to protect" its residents, then "the 'claim of sovereign protection from removal arises in its most powerful form.'" *Bank of Am.*, 672 F.3d at 676 (quoting *CVS Pharm.*, 646 F.3d at 178). Baltimore's chartered governmental authority, including its ability to act as *parens patriae*, has been well established. *See, e.g.*, *Mayor & City Council of Baltimore v. Monsanto Co.*, No. RDB-19-0483, 2020 WL 1529014, at **11-12 (D. Md. Mar. 31, 2020) (acknowledging that "the City is proceeding in its *parens patriae* capacity" and sustaining common-law claims).

"When a defendant removes a case to federal court on diversity grounds, a court must remand the matter back to state court if any of the properly joined parties in interest are citizens of the state in which the suit was filed." *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006) (explaining "[s]uch a remand is the necessary corollary of a federal district court's diversity jurisdiction"). "The burden upon a removing party to establish fraudulent joinder is high." California Remand Order at 3. "To establish fraudulent joinder, 'the removing party has the burden of proving by clear and convincing evidence that … there is no possibility the plaintiff can establish a cause of action." *Id.* (quoting *Stillwell*, 663 F.3d at 1332). "This burden is a heavy one." *Stillwell*, 663 F.3d at 1332 (internal citations and quotations omitted). "Doubts about the

8

Court's jurisdiction over a removed action must be resolved in favor of remand."  California

Remand Order at 3 (citing *Univ. of S. Alabama*, 168 F.3d at 411).

As the Eleventh Circuit has explained:

> To determine whether the case should be remanded, *the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff*."  In making this determination, "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law."  "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court."  In other words, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate."[13]

Moreover, in assessing whether a claim is "possible," the Court "must necessarily look to

the pleading standards applicable in state court, not the plausibility pleading standards prevailing

in federal court."  *Stillwell*, 663 F.3d at 1334.  Similarly, "[n]othing in [Eleventh Circuit]

precedents concerning fraudulent joinder requires anything more than conclusory allegations."  *Id*.

"Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper

and the case should be remanded for lack of subject matter jurisdiction."  *Pacheco de Perez v.

AT&T Co.*, 139 F.3d 1369, 1380 (11th Cir. 1998).

## II.   THERE IS NOT COMPLETE DIVERSITY AMONG THE PARTIES

Where Defendants, as the removing party, have invoked diversity jurisdiction, it is their

burden to demonstrate that diversity is "complete," *i.e.* that no defendant in the case is a citizen of

the same state as the plaintiff.  Specifically, "to sufficiently allege the citizenships of []

unincorporated business entities, a party must list the citizenships of all the members of the limited

liability company and all the partners of the limited partnership," and by failing to do so, the

---

[13] *Stillwell*, 663 F.3d at 1333 (internal citations omitted) (emphasis added).

removing party "fail[s] to carry its burden of establishing diversity of citizenship." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (holding the removing party failed to adequately allege in its notice of removal the citizenship of itself or of its co-defendant and nothing in the record establishes citizenship). Here, as Defendants concede, Baltimore and all three of the Maryland-Based Store Brand Defendants are citizens of Maryland for purposes of diversity jurisdiction. Notice ¶¶ 3, 8, 19, 58; *see also* Notice (failing to list the citizenship of all of the members of the Store Brand Defendants); *Rolling Greens MHP*, 374 F.3d at 1022; *see JBG/JER Shady Grove, LLC v. Eastman Kodak Co.*, 127 F. Supp. 2d 700, 701 (D. Md. 2001) (citing cases) (remanding to state court where one of the plaintiff-LLC's member's principal places of business was located in the same state as one of the defendants, and a survey of circuits in the United States shows "an overwhelming holding that a limited liability company is a citizen of the state or states of which its members are citizens"). This Court has previously decided this very issue on analogous facts, and concluded "the parties are not diverse and, at least as a facial matter, the cases (which are devoid of federal claims) may not be removed to federal court." California Remand Order at 2. Thus, jurisdiction based on diversity of citizenship is lacking here.

## III.   DEFENDANTS HAVE NOT PROVEN WITH CLEAR AND CONVINCING EVIDENCE THAT THE CITY'S CLAIMS AGAINST THE MARYLAND-BASED STORE BRAND DEFENDANTS ARE IMPOSSIBLE

### A.   Baltimore Has More Than A Possibility Of Succeeding On Its Negligence Claim Against the Maryland-Based Store Brand Defendants

Defendants do not attempt to prove with clear and convincing evidence that Baltimore's negligence claims against the Maryland-Based Store Brand Defendants are impossible. Baltimore has shown more than a possibility of succeeding on its negligence claims. This Court recently dismissed three Master Complaints against the Generic Manufacturers, *i.e.* parties that "allegedly

manufactured generic ranitidine products," and Repackagers, *i.e.* parties that "allegedly repackaged ranitidine products into different containers and changed the 'content on an original manufacturer's label to note the drug [was] distributed or sold under the relabeler's own name,' 'without manipulating, changing, or affecting the composition or formulation of the drug,'"[14] on the grounds of preemption.  However, this Court also:

> granted [Plaintiffs] leave to replead claims against Defendants based on expiration dates, testing, storage and transportation conditions, warning the FDA, manufacturing defects, and the [Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*].….[15]

Specifically, this Court ruled that bringing a negligence claim against a defendant for negligent storage and transport is possible:

> With respect to the "heating" theory—that the [Retailer] Defendants should be held liable for storing ranitidine at an elevated temperature prohibited by both federal and state law—the Plaintiffs have leave in an amended complaint to plead this theory because, at this juncture, the Court is not prepared to conclude it would be futile for the Plaintiffs to so plead[.][16]

This Court's ruling that plaintiffs may replead such claims against the Generic Manufacturers and Repackagers supports Baltimore's request for remand because that ruling presupposes that such claims would not be futile—*i.e.*, that there is at least a "possibility" that the claims may be established.  Nothing more is required to rebut Defendants' unsupported fraudulent joinder argument.  This fact alone is dispositive of the fraudulent-joinder issue.

---

[14] *In re: Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-MD-2924, 2020 WL 7864213, at *3 (S.D. Fla. Dec. 31, 2020).

[15] *Id*. at *25; *In re: Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-MD-2924, 2020 WL 7864585, at **14, 16-19 (S.D. Fla. Dec. 31, 2020).

[16] *Zantac*, 2020 WL 7864585, at *18.

Defendants incorrectly argue that "the City cannot state a negligence or public nuisance claim against [the Maryland-Based Store Brand Defendants] because they had no duty to discover any purported latent danger in the Zantac/ranitidine products they simply stocked on their shelves." Notice ¶ 3; *see also id.* ¶¶ 70-83. It is not clear that Defendants have bothered to read the City's Complaint, because at no point does the City allege that any Defendant is liable because they simply acted as a mere conduit. Instead, the City alleged that all the Store Brand Defendants—the national companies and the Maryland-based companies—actively sold their own ranitidine products in Baltimore. Moreover, this Court has already rejected similar arguments raised by Defendants where they also mischaracterized the numerous California-based plaintiffs' negligence claims. *See* California Remand Order at 3-6.

In Maryland, the elements a plaintiff must prove to succeed on a negligence claim are well established: "'(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'" *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 270-71 (Md. Ct. App. 2007) (quoting *Valentine v. On Target*, 353 Md. 544, 549, 727 A.2d 947, 949 (1999)). "[T]he standard for whether an allegation states a claim upon which relief can be granted does not require the petitioner to assert facts sufficient to *prove* the claim, but rather those necessary to *allege* a claim." *Id.* (emphasis in original). In Maryland, "[a] supplier of a product must give adequate warnings of those dangers which are known to it or by the use of reasonable care should be known to it and which would not be obvious to users. A failure to fulfill that duty is negligence." Maryland Pattern Jury Instructions MPJI-CV-26:3,

Supplier's Duty to Warn (5th ed. 2020).[17]  The City alleged that the Store Brand Defendants—the national companies and the Maryland-based companies—knew or should have known about the presence and formation of dangerous NDMA in their ranitidine products under certain storage, temperature, and other conditions, but sold those products anyway.

Defendants' argument that "the City could not prevail on its negligence [and public nuisance] claim[s] against the [Maryland-Based Store Brand Defendants] under Maryland law because a seller of a product does not have a duty to investigate or test products stocked on its shelves for unforeseen risks"[18] again misconstrues the City's claims.  The cases Defendants cite as prohibiting the City's negligence claims are inapposite.[19]  In *Eagle-Picher Indus., Inc. v. Balbos*, the court found that there was no direct evidence that the defendants knew of the dangers of asbestos prior to 1944 and rejected circumstantial evidence, such as that one issue of *Asbestos*

---

[17] According to the Maryland Pattern Jury Instructions, "[t]his instruction is applicable to all persons supplying chattels for the use of others, whether as manufacturer, seller, lessor, or bailor, either for hire or gratuitously."  Maryland Pattern Jury Instructions MPJI-CV-26:3, Supplier's Duty to Warn, cmt. 1 (5th ed. 2020) (quoting *Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633, *recons. denied*, 602 A.2d 1182 (Md. Ct. App. 1992)).

[18] Notice ¶¶ 70-76; *see also* Notice ¶¶ 78, 81-83 (making the same arguments related to the City's public nuisance claims).

[19] In *Frericks v. General Motors Corp.*, 274 Md. 288, 305 (1975), the court explained that for an automobile dealer to be held liable in negligence for a design defect, "it is necessary that such knowledge be specifically alleged."  *See also Cantrell v. Wirtgen Am. Inc.*, Civil Action No. CCB-07-2778, 2011 WL 915324, at *10 (D. Md. 2011) (quoting *Frericks*).  Contrary to Defendants' claim that Baltimore cannot show that the Maryland-Based Store Brand Defendants "'should have known' of an NDMA or cancer risk associated with Zantac/ranitidine" (Notice ¶ 76), Baltimore alleged that "in November 1981, Glaxo Group Research Ltd. researchers acknowledged Dr. de Flora's study in their own study described in *The Lancet*.  Yet, … Store Brand Defendants continued to sell ranitidine products."  Compl. ¶ 286; *see also id.* ¶¶ 255-91.  *See also Burgess v. Montgomery Ward & Co.*, 264 F.2d 495, 497 (10th Cir. 1959) (holding store was not liable based on the theory of warranty for defective ladder where the ladder was "not inherently dangerous like an unwholesome food [or] a poison … such danger arises from the defect not the device itself," and denying request to amend to add a claim for negligence where there was no evidence of negligence).

magazine in 1930 contained an advertisement for an asbestos manufacturer, a happy birthday wish

to the president of a wholly-owned subsidiary of the installer, and a notation referring to the U.S.

Bureau of Labor & Statistics' interest in asbestosis and "some general-knowledge encyclopedias

[that] included notes on asbestosis."[20]  Similarly, Defendants cite *Cantrell v. Wirtgen Am., Inc.*,[21]

for the unremarkable proposition that a "dealer who had nothing to do with the design of the

[product] cannot be presumed to know of the defective design."  In contrast, the Maryland-Based

Store Brand Defendants are not mere "dealers" but sold their own store-brand ranitidine products

to City residents, and they knew or had reason to know about the extremely unsafe levels of NDMA

contained in those products.[22]

## B. Baltimore Has More Than A Possibility Of Succeeding On Its Public Nuisance Claim Against the Maryland-Based Store Brand Defendants

There is more than a "possibility" that the City may prevail on its public nuisance claim

against the Maryland-Based Store Brand Defendants under Maryland law.  *See*, *e.g.*, *City of Gary*

*ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1232-33 (Ind. 2003) (holding that if an

activity meets the requirements of an unreasonable interference with a public right, it may

constitute a public nuisance) (citing cases from other jurisdiction reaching similar conclusions in

the context of handgun cases); *James v. Arms Tech., Inc.*, 820 A.2d 27, 51 (N.J. App. Div. 2003)

(refusing to dismiss the city's public nuisance count where the city "at the very least pled an

unreasonable interference with a right common to the general public," the defendants' conduct

was of a "continuing nature" and had a "long-lasting effect," and that defendants knew or had

---

[20] 604 A.2d 445, 453-57 (Md. 1992).

[21] No. 07-CV-2778 (CCB), 2011 WL 915324, at *10 (D. Md. Mar. 15, 2011) (internal citations and quotations omitted).

[22] *See* Compl. ¶¶ 255-291.

reason to know the "significant effect" their conduct would have upon the city and its residents). Despite Defendants' citation to these and similar cases (Notice ¶ 80), they disingenuously represent to the Court that "[t]here is no possibility that the City could prevail on its public nuisance claim against the [Maryland-Based Store Brand Defendants] under Maryland law because [their] mere sale of an FDA-approved pharmaceutical did not unreasonably interfere with a public right." Notice ¶ 78. This is simply not so.

Unlike in *In re Lead Paint Litigation*, 191 N.J. 405, 433-34 (2008), where the state court concluded that the distribution of lead paint (at the time it was distributed) did not bear the necessary link to the alleged health crisis sufficient to state a cause of action for public nuisance, here the City alleges, *inter alia*, "all Defendants actually knew and/or, at a minimum, should have known about Dr. de Flora's study described in October 1981 in *The Lancet*, his later study published in January 1983 in *The Lancet*, and the 1983 study by the researchers from the Institute of Pharmacology at the University of Genoa." Compl. ¶ 285; *see also id.* ¶¶ 255-284, 286-291.

In short, Baltimore has shown more than a "possibility" that it can establish a cause of action against the Maryland-Based Store Brand Defendants for public nuisance. *See Tadjer v. Montgomery Cty.*, 300 Md. 539, 552 (1983) ("Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following: (a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience….") (quoting Restatement (Second) of Torts § 821B); *see also Monsanto*, 2020 WL 1529014, at **9-10 (recognizing "Maryland courts have found that a defendant who created or substantially participated in the creation of the nuisance may be held liable even though he (or it) no longer has control over the nuisance-causing instrumentality," and

holding that the City had sufficiently alleged that the defendants created or substantially participated in the creation of public nuisance).

## IV.    THE CITY IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES AND COSTS DUE TO DEFENDANT'S INSISTENCE ON UNNECESSARY MOTION PRACTICE

After determining to remand a state-court action that was improperly removed to federal court, a court is authorized to require the removing party to pay "just costs and any actual expenses, including attorneys fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Such an award is proper "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). The rationale for awarding such costs and fees is to deter removals sought solely to prolong or delay litigation and impose costs on the non-removing party. *Imperial Fund I, LLC v. Orukotan*, No. 21-CV-60162-RAR, 2021 WL 752577, at *6 (S.D. Fla. Feb. 25, 2021) (awarding plaintiff costs and attorneys' fees where defendant removed action based on theories unsupported by established precedent). Here, an award of costs and attorneys' fees is particularly appropriate because this Court, in this very litigation, has already rejected the bases on which Defendants removed the City's case (substantial federal question jurisdiction and diversity jurisdiction based on alleged fraudulent joinder), and the City gave Defendants a clear opportunity to stipulate to remand this action to Maryland state court after both of those issues were resolved. Defendants declined to stipulate to remand the action solely for the purpose of defending their utterly meritless fraudulent joinder argument, which as explained above is predicated entirely on a misreading—or non-reading—of the actual allegations in the Complaint. Whatever the explanation, when the City sought in good faith to avoid unnecessary motion practice and avoid burdening this Court, Defendants flatly rejected the City's proposal. Defendants' vexatious refusal to take the reasonable course merits an award of costs and fees to the City, partly to ensure the Defendants do not continue to waste this Court's

time and resources on unfounded jurisdictional arguments that this Court has already addressed with sufficient clarity.

## CONCLUSION

For the foregoing reasons, Baltimore respectfully requests that this Court promptly remand the action to the Circuit Court of Maryland for Baltimore City.  Defendants' removal is wholly lacking basis and merit and depends entirely on fundamental mischaracterizations of Baltimore's Complaint and controlling law.  Because Defendants have unnecessarily caused this action to remain in federal court after this Court had already rejected the grounds for removal at issue here, and refused the opportunity to avoid further motion practice, the City respectfully seeks an award of attorneys' fees and costs associated with Defendants' removal and this motion practice.

Dated:  March 10, 2021

RESPECTFULLY SUBMITTED,

**GRANT & EISENHOFER P.A.**

  */s/ Kyle J. McGee*
Kyle J. McGee (DE # 5558)
kmcgee@gelaw.com
Laina M. Herbert (DE # 4717)
lherbert@gelaw.com
123 S. Justison Street
Wilmington, DE 19801
Tel.: (302) 622-7000
Fax.: (302) 622-7100

**BALTIMORE CITY DEPARTMENT OF LAW**
James L. Shea (No. 00142)
City Solicitor
James.Shea@baltimorecity.gov
Sara Gross (No. 27704)
Chief Solicitor, Litigation
Sara.Gross@baltimorecity.gov
100 N. Holiday Street, Suite 109
Baltimore, MD 21202
Tel.: (410) 396-3947
Fax: (410) 547-1025

**GORDON WOLF & CARNEY, CHTD.**
Richard S. Gordon (No. 06882)
rgordon@gwcfirm.com
Martin Wolf (No. 09425)
mwolf@gwcfirm.com
Benjamin H. Carney (No. 27984)
bcarney@gwcfirm.com
100 W. Pennsylvania Avenue, Suite 100
Townson, MD 21204
Tel. (410) 825-2300
Fax.: (410) 825-0066

17

*Attorneys for Plaintiff Mayor & City Council of Baltimore*

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(3)**

Pursuant to Local Rule 7.1(a)((3), the undersigned, on behalf of Plaintiff, conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised and the Motion and Defendants' Lead Counsel indicated that they do not object to the City filing a Motion to Remand.

Dated:  March 10, 2021

RESPECTFULLY SUBMITTED,

**GRANT & EISENHOFER P.A.**

  */s/ Kyle J. McGee*
Kyle J. McGee (DE # 5558)
kmcgee@gelaw.com
Laina M. Herbert (DE # 4717)
lherbert@gelaw.com
123 S. Justison Street
Wilmington, DE 19801
Tel.: (302) 622-7000
Fax.: (302) 622-7100

**BALTIMORE CITY DEPARTMENT OF LAW**
James L. Shea (No. 00142)
City Solicitor
James.Shea@baltimorecity.gov
Sara Gross (No. 27704)
Chief Solicitor, Litigation
Sara.Gross@baltimorecity.gov
100 N. Holiday Street, Suite 109
Baltimore, MD 21202
Tel.: (410) 396-3947
Fax: (410) 547-1025

**GORDON WOLF & CARNEY, CHTD.**
Richard S. Gordon (No. 06882)
rgordon@gwcfirm.com
Martin Wolf (No. 09425)
mwolf@gwcfirm.com
Benjamin H. Carney (No. 27984)
bcarney@gwcfirm.com
100 W. Pennsylvania Avenue, Suite 100
Townson, MD 21204
Tel. (410) 825-2300
Fax.: (410) 825-0066

*Attorneys for Plaintiff Mayor & City Council of Baltimore*

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2021, I filed the foregoing **The Mayor and City Council of Baltimore's Motion to Remand and Incorporated Memorandum of Law** and this **Certificate of Service** electronically through the CM/ECF system, which will send notice of filing to all CM/ECF participants.

Dated:  March 10, 2021                                   RESPECTFULLY SUBMITTED,

**GRANT & EISENHOFER P.A.**

 */s/ Kyle J. McGee*
Kyle J. McGee (DE # 5558)
kmcgee@gelaw.com
Laina M. Herbert (DE # 4717)
lherbert@gelaw.com
123 S. Justison Street
Wilmington, DE 19801
Tel.: (302) 622-7000
Fax.: (302) 622-7100

*Attorneys for Plaintiff Mayor & City Council of Baltimore*