**IN THE UNITED STATES DISTRICT COURT OF FLORIDA**
**WEST PALM BEACH**

| | |
|---|---|
| In RE: Zantac (Ranitidine) Products Liability Litigation | MDL No. 2924<br>20-MD-2924 |
| This Document Relates To:<br>All Actions | Judge Robin L. Rosenberg<br>Magistrate Judge Bruce E. Reinhart |

**Plaintiffs' Response to GSK's Motion to Extend Deadlines in PTO 47**

On March 12, 2021, GSK filed a motion to extend its March 15, 2021 PTO 47 deadline for substantial completion of non-custodial document production including, but not limited to, preclinical, clinical, nonclinical, and study-related materials as well as manufacturing, sales/marketing, and regulatory documents [DE 3044]. Given "the discovery delays that have occurred and that continue, and further recognizing the impact these delays have had on Plaintiffs," GSK agreed not to oppose Plaintiffs' request for an extension of deadlines and/or modification of PTO 30. *See* GSK Motion at p. 1. On the same date, the Court entered a paperless order that granted GSK's motion and directed Plaintiffs to file a response by March 17, 2020 [DE 3045].

Plaintiffs do not object to GSK's request for an extension however Plaintiffs now submit their response for the Court's consideration with the factual and procedural history, as well as a request for relief and modification of PTO 30, or vacating PTO 30 and entry of an Order setting forth a new schedule and deadlines. Plaintiffs seek this relief due, in substantial part, to GSK's

1

delayed and incomplete custodial file production due December 31, 2020, as required by PTO 47 and the continued delayed noncustodial productions that were the subject of GSK's motion.[1]

## Introduction

Since the inception of this MDL, all parties recognized the formidable task of a truncated 18-month discovery schedule. To satisfy such an expedited case management schedule, all parties agreed to work together cooperatively and efficiently to conduct discovery and meet court-imposed deadlines. Plaintiffs have stressed, early and often, the importance of a complete and maintainable discovery schedule for non-custodial and custodial productions and depositions. Unfortunately, there has been consistent and widespread delayed productions of critical non-custodial and custodial documents necessary for liability and general causation that have handicapped Plaintiffs' ability to efficiently and timely review, evaluate, prepare for and schedule depositions, to the point that the current PTO 30 schedule is no longer viable. Now, close to a year after the Court's first discovery directive was issued, and only four and a half months before the deadline for submission of expert reports, GSK has now, after multiple problems with both its custodial and noncustodial productions, had to finally concede that it cannot meet the PTO 47 document production deadlines.

## Legal Argument

Fed.R.Civ.P. 37(b) provides authority for the Court to order just relief and/or the imposition of sanctions against a party who fails to obey an order to provide or permit discovery. As the Eleventh Circuit has warned, "there is no requirement that the opposing party moves for this order

---

[1] GSK is not the only Brand Defendant that is, or has been, delinquent in its production of documents in accordance with the PTO 47 deadlines. As discussed during prior Discovery Conferences and Status Conferences, Sanofi and BI have also been delayed in productions and have incomplete productions of categories of non-custodial documents and/or Tranche 1 custodial files. Plaintiffs anticipate similar delays by the Generic Defendants moving forward, as has already been discussed in the context of the PTO 60 negotiations and subsequent discovery hearings.

2

- only that it be issued and disobeyed." *Properties Int'l, Ltd. v. Turner*, 706 F.2d 308, 310 (11th Cir.1983).

Plaintiffs seek just relief consisting of modification to PTO 30 to effectuate a fair and reasonable timeframe for Plaintiffs to conduct and complete the *essential* discovery in this case. Despite exhaustive efforts to maintain the discovery schedule under PTO 30, GSK has failed to adhere to PTO 47 which has had a ripple effect on the entire scheduling Order. Due to GSK's and other Brand Defendants' ongoing failures to meet PTO 47 deadlines, Plaintiffs request that the Court vacate PTO 30 and enter the proposed Order attached as Exhibit "A" that sets forth new deadlines that allow Plaintiffs the ability to conduct essential discovery necessary to fully develop their case, while simultaneously advancing the individual cases in such a way that Bellwether trials are not delayed for years. Plaintiffs believe the proposed schedule attached as Exhibit "A" is fair and equitable considering the circumstances and delays that have occurred through no fault of Plaintiffs. Alternatively, Plaintiffs request that the Court modify the case management deadlines in PTO 30. *See* Plaintiffs' Proposed Variations of Modified PTO 30 Orders, attached as Exhibits "B" and "C".

### Pre-Trial Orders Governing Discovery

On July 22, 2020, the Court entered Amended PTO 24, which provided for full non-bifurcated discovery that began on June 15, 2020. The full non-bifurcated discovery period would "continue[s] for 18 months culminating in the filing of Daubert motions relating to general causation, as well as motions for class certification…." *See* PTO 24 at p.2. During the 18-month discovery period provided under PTO 24, Plaintiffs would be required "to complete all fact discovery of all Defendants, including document discovery and fact depositions, and the parties shall complete expert discovery necessary to prepare general causation Daubert motions within that 18-month period." *Id.* In addition, PTO 24 provides that Plaintiffs' motions for class

3

certification shall also be filed 18 months following the initiation of discovery. During that 18-month period, the parties shall engage in all fact discovery, including document discovery and depositions, to prepare for the filing of the class certification motions."[2] *Id.*

On June 18, 2020, the Court entered PTO 30 and provides the following deadlines consistent with PTO 24:

1) the opening of fact discovery would occur on June 15, 2020;
2) the completion of fact discovery of Defendants on issues related to general causation and expert reports would be due by August 2, 2021;
3) completion of all fact discovery of Defendants and fact discovery related to class certification would be by December 20, 2021; and
4) Daubert motions and Plaintiff's class certification motions and expert reports would be due by December 20, 2021.

PTO 30 at 3-4. The parties were instructed to provide their respective vision on how to accomplish the discovery that needed to be completed to maintain the schedule in PTO 30. In the interim, Plaintiffs entered into Core Discovery Agreements ("CDAs") with the Generic Defendants and Retailer Defendants.

After weeks of discussions, proposals and counterproposals working with the Special Master, the Court entered Amended PTO 47 on October 3, 2020, pertaining only to the Brand Defendants ("Brands"), that ordered the Brands to produce the first tranche of custodial files (beginning on 11/24/20 with substantial completion by 12/31/20) and the substantial completion of non-custodial document production on a rolling basis by specific deadlines varying among the Brands: 10/30/2020 for Pfizer, 12/20/2020 for Sanofi, 12/31/2020 for BI and 3/15/21 for GSK.

---

[2] This was also consistent with the representations made to the Court at the May 12th conference, during which Sanofi's counsel advised the Court of the schedule that had been agreed upon indicating: "Between now and then, we will engage in non-bifurcated discovery. In other words, we, the Defendants, have agreed not to insist on case discovery or bifurcated discovery such that general causation discovery will go first. We will agree that ***all discovery*** against the Defendants will happen within that 18-month period." 05/12/2020 Transcript, p. 377.

4

The Court noted that its intervention was "***necessary to ensure the 18-month discovery schedule is maintained***." Amended PTO 47, p. 1.

### Discovery Timeline and Status

On May 13, 2020, during the very first discovery conference, Plaintiffs advised the Court that "we came to the Court yesterday with essentially our schedule that we have sort of in concept agreed to, being able to move this quickly along is a huge piece, to be able to accomplish all this in the time we have discussed." 05/13/20 Transcript, p. 12. At that same conference, Plaintiffs advised the Court that in March 2020 they had informally provided the Brands with initial categories of documents that could be collected and produced in the short term while foundational Orders were being negotiated. These documents included the Brands' Regulatory files, Adverse Event Reports, Clinical Studies, and other foundational documents such as SOP's and organizational charts.  Mr. Friedman, speaking on behalf of the Brands, represented that "[a]ll four brand manufacturers have agreed to produce and to prioritize the production of those files (referring to the regulatory files) with the goal of getting those productions in the next three to six weeks." *Id.* at p. 33:18-20[3]

On July 9, 2020, Plaintiffs informed the Court that formal written discovery and 30(b)(6) deposition notices had been served on each of the Brands (service date of June 16, 2020) and that Plaintiffs were working with the Brands to secure dates, as well the production of non-custodial and custodial documents and search terms. 07/09/20 Transcript, pp. 122-123. The parties agreed that they did not need the Court's intervention at that point as they were meeting and conferring to reach a resolution. *Id*. p. 122-123.

---

[3] Despite Mr. Friedman's representations in May 2020 and prior representations by GSK and BI that the regulatory productions were complete in the Fall of 2020, GSK and BI were still producing regulatory files in February 2021.

5

GSK's initial document production was problematic right from the beginning in the Summer of 2020, because it contained 74,000 documents, of which over 60,000 documents were improperly redacted including 47,000 documents (1 million pages) that were completely redacted. After filing a PTO 32 dispute resolution memorandum on September 11, 2020, GSK agreed to reproduce the documents with the redactions removed.[4] The unredacted documents in their entirety were not produced until November and December 2020.

After difficulty making progress on discovery with all Brands, the parties had a Status Conference on September 30th, where the Court indicated:

> [O]ne overarching impetus for today's conference is the need to discuss the development of the discovery process between the Plaintiffs and the Brand Defendants…[W]e are at a time in the litigation, over seven months since the inception of the MDL and about three months since PTO 30 was entered setting forth the case management schedule for the case, that the topic of discovery is of paramount importance to the parties. I recognize that. And particularly for discussion today is a timeline of discovery between the Plaintiffs and the Brand Defendants. Each party, I believe, has reason to meet deadlines by which productions will be made and received to ensure that the 18-month discovery period that the parties set out for themselves, again contained within PTO 30, can be maintained.

09/30/20 Transcript, p. 6.

As a result, Plaintiffs requested entry of a proposed schedule that provided deadlines for:

1) completion of 4 separate tranches of custodial files throughout the entirety of the discovery period,
2) noncustodial document production with prioritization of certain specific categories of high priority science and pharmacovigilance information in November, and
3) completion of 30(b)(6) depositions in certain functional departments pertinent to the claims in this case by December 31, 2020.

*See* Plaintiffs' Proposed Schedule submitted to the Court in advance of the 9/30/2020 Status Conference, attached as Exhibit E.

---

[4] *See* Plaintiffs' Joint PTO 32 Dispute Resolution Memorandum submitted on September 11, 2020, attached as Exhibit D.

6

During discussions with the Brands and the Court at the September 30th Status Conference, Plaintiffs noted that there were certain categories of information that were needed in advance of the January 8th deadline to designate cancers and expert report deadlines:

> We need these types of categories and documents in order to do our job that we agreed to under PTO 30. … We know what categories of documents we need to get this done not just by January 8th, but to get this done by expert report deadlines next year and the close of discovery, which is a very, very tight deadline. This is a complex case, as your Honor is aware, with a product that contains a known carcinogen. That specific carcinogen, NDMA, is implicated in multiple cancer types in multiple organs in all species. In addition to that, we have conduct of a Defendant that spans almost 50 years with complex scientific issues and different theories of liability here that you don't typically see in your run of the mill pharma cases, and that includes the manufacturing, storage, and handling, that the NDMA levels increase over time when exposed to heat and humidity. This is a complex case and the discovery it entails would typically, if we are going to be candid, take two or two and a half years, but we agreed as part of an overall negotiation with Defendants to a very aggressive discovery deadline of 18 months. In exchange for that, we agreed that we would be able to take full non-bifurcated discovery during that 18-month timeframe and that the Defendants would cooperate and produce documents and witnesses in a timely manner so we can meet those goals.

09/30/20 Transcript, pp. 72-73.

Thereafter, Plaintiffs proposed a schedule with the intent of "keeping all of us on pace for the next 16 months now that we have left in this discovery…" *Id.* Amended PTO 47 was subsequently entered, recognizing that the "Court's intervention at this stage is necessary to ensure that the eighteen-month discovery schedule is maintained and providing a production schedule for the Brand Manufacturers to produce non-custodial documents and the first tranche of custodial files as well as "reaffirming the need for each Defendant to make ***substantial rolling productions*** as quickly as possible." [5] *See* PTO 47, p. 3. PTO 47 also contemplated that the first tranche of custodial files would not be the only tranche, recognizing that additional tranches of custodial files

---

[5] Plaintiffs requested deadlines for the completion of initial Rule 30(b)(6) depositions however Defendants objected, and the Court declined to include these deadlines in the Order.

7

would be forthcoming. In accordance with PTO 47, the Brands were required to make the initial production of the Tranche 1 custodial files ***on November 24, 2020***, with substantial completion by December 31, 2020.[6]

The Court held an in-chambers hearing on December 17, 2020 and a Status Conference on December 18, 2020. During those two conferences, Plaintiffs expressed serious concerns over the delays in the Brands' production of non-custodial and custodial documents that were required on a rolling basis between the entry of PTO 47 and December 31st, as well as the several month delay in producing 30(b)(6) witnesses for deposition and the impact this would have on Plaintiffs' ability to conduct discovery necessary to stay on track with the deadlines set forth in PTO 30.[7]

---

[6] The only Brand that complied with this deadline was Pfizer. GSK, Sanofi, and BI did not produce any Tranche 1 custodial files on November 24th. BI produced its first custodial files on December 4, 2020, consisting of 5 of the 27 custodial files that were part of Tranche 1. BI's second batch of custodial files was produced on December 16th, consisting of another 5 custodians from the 27 custodial files included in Tranche 1. The remainder were produced on December 23rd. During January and February 2021, BI continued to produce custodial and noncustodial documents that were due no later than December 31, 2020. Sanofi has yet to complete its Tranche 1 custodial file production due to the failure to preserve evidence and improper deletion of custodial file emails in violation of three separate preservation orders. GSK has yet to complete its Tranche 1 custodial file productions that were due by 12/31/2020.

[7] Except for the BI regulatory 30(b)(6) deposition taken on 10/01/2020, and the Sanofi regulatory 30(b)(6) deposition that was subsequently postponed due to Sanofi's destruction of custodial documents, the Brands did not provide dates for the 30(b)(6) depositions on topics that Plaintiffs originally noticed in June 2020 until days before the December 18, 2020 Status Conference and only after Plaintiffs threatened to file a motion to compel. The dates provided by the Brands began in late January with regulatory depositions of Sanofi, Pfizer and GSK. The remainder of the 30(b)(6) depositions were scheduled to continue through February and March and set to conclude in April. However, the GSK regulatory deposition scheduled for January 21st was postponed multiple times, and ultimately rescheduled for March due to GSK's failure to timely produce regulatory documents and the Sanofi regulatory deposition scheduled for January 22nd was postponed pending investigation into the destruction of documents including the custodial file of the proposed witness.

In fact, Plaintiffs specifically challenged the Brands in open Court and stated:

> [I] would like to again just emphasize that we are fully committed to the schedule set forth in PTO 30. ***It is incumbent, though, on the Defendants to produce documents and witnesses in a timely manner, and I would suggest that if the Defendants cannot do that, if they cannot produce witnesses and documents in a timely manner, it is their responsibility to notify the Court and us that they cannot meet their obligations under PTO 30 so that we can deal with it***.

12/18/20 Transcript, p. 46:10-18 (emphasis added).

GSK's counsel, speaking on behalf of all the Brands, stated: "I think we are on track to either meet or get very close to getting all these documents out the door by the end of the year…" *Id.* at p. 54:12-15. On that same day, counsel notified Plaintiffs that GSK was likely unable to produce the adverse event reporting information prior to Plaintiffs' January 8th deadline to designate cancers. ***Four days later***, on December 22nd, counsel notified Plaintiffs that GSK was unable to produce its custodial files by December 31$^{st,}$ and they would "bleed into the week of January 4th." Notwithstanding those statements, GSK has yet to complete its production of Tranche 1 custodial files.

During the December 18, 2020 Status Conference, Plaintiffs advised the Court that the Brands' document productions thus far paled in comparison to other comparable MDLs, and Plaintiffs anticipated that "we are going to get a significant document dump of millions of documents on the eve of December 31st" which did not comply with the spirit or intent of PTO 47.[8] *Id*. at p. 44:5-13. Plaintiffs also advised the Court that, "after six months of trying to get dates on the books, we are now scheduled to take those 30(b)(6) depositions in late January and going through April." *Id*. at p. 45:22-46:25. Plaintiffs also stated that they "anticipate we will be getting

---

[8] Plaintiffs noted that PTO 47 ordered a rolling robust production of documents so Plaintiffs could review them as they came in but, unfortunately, it did not happen. *See* 12/18/2020 Transcript, p. 44:9-13.

9

the custodial files by the end of the year, significant documents produced and we will be reviewing them. We will be requesting depositions of witnesses from those custodial files, and if it is going to take six to nine months to schedule a deposition, then that is obviously going to be problematic under the deadlines set forth in PTO 30." *Id.* p. 46:19-47:6.

In response, GSK, speaking on behalf of all Brands, stated "the brands have been working incredibly hard, making good progress to meeting the aggressive discovery schedule in this case" and that they were "on track to either meet or get very close to getting all these documents out the door by the end of the year." *Id*. p. 49:7-9; 54:7-15. The Court acknowledged the statements by the Brands' counsel but expressed its expectation that "PTO 47 would be complied with." *Id*. p. 61:6-18.

At the January 6, 2021 Discovery Conference, Plaintiffs notified the Court that "the parties agreed that GSK would produce a total of 38 custodial files, with 30 custodial files by December 31st, and the remaining 8 would be produced in January 2021. GSK hasn't complied with PTO 47. It was required to produce 30 custodial files by December 31st and they produced 13 custodial files." 01/06/21 Transcript, pp. 14-15. Plaintiffs also expressed serious concerns at that conference that the noncustodial document production for all Brands was lacking due to the small quantity of documents that had been produced thus far, with only 101,000 total documents for Sanofi, BI and Pfizer, of which 75,000 were produced in the two weeks prior to the Discovery Conference. Yet, representations were made by the Brands that the productions were complete. *Id*. p. 13-14. Notably, Plaintiffs pointed out that Pfizer, ***which had not had any responsibility for the product since 2006***, ***had produced more custodial file documents than GSK, BI and Sanofi combined***. 01/06/21 Transcript, p. 17:6-9, *emphasis added*.

10

Again, speaking on behalf of all of the Brands, GSK made the following representation:

> [W]e have a couple more documents that are in review now that we expect to be getting out early – end of this week, early next week…[W]e have some additional custodial files, GSK has some additional custodial files, paper documents, and I believe Sanofi does as well, that we are hoping to get out the door in relatively short order. The other important thing here, and I really took Judge Rosenberg's guidance to heart at the last case management conference, communication is really key here. And we did, 'we' GSK, did tell the Plaintiffs before the holidays that we thought we were not going to quite make it, but that we expected to be able to complete our custodial productions by the first or second week of January. We remain on track to do that.

01/06/21 Transcript, pp. 18-19. As of March 17, 2021, GSK still has not completed these productions.

Because GSK is the innovator of Zantac and has done the bulk of the preclinical and clinical study work over the development and history of the product, GSK's ongoing delay in production of these types of documents and going forward into mid-May has caused Plaintiffs to also be substantially delayed in reviewing critical liability and causation documents, identifying custodians for custodial productions, and designating and taking depositions in advance of deadlines set forth under PTO 30.

### **GSK's Repeated Violations of Court-Ordered Deadlines**

Despite GSK's narrative in its March 12th Motion to Extend Discovery Deadlines, GSK has repeatedly violated this Court's discovery deadlines for multiple reasons, some related to the impact of COVID-19 and others related to a variety of non-COVID related issues,[9] that have

---

[9] For example, GSK notified Plaintiffs in early February that it had inadvertently failed to run key search terms, including Zantac and NDMA, that the parties had agreed upon across the custodial files and therefore the custodial files were all incomplete and there were over 250,000 documents that needed to be reviewed and produced. Then, in mid-February, Plaintiffs learned that GSK had unilaterally stopped collecting documents from custodial files on September 13, 2019 (the date of the Valisure citizen's petition filed with the FDA notifying the FDA that it found NDMA in Zantac). Prior to this, GSK had represented to Plaintiffs in an email dated 11/25/2020, that the

11

rendered it *impossible* to comply with an 18-month discovery schedule. Judging by the repeated failure to comply with Pretrial Orders and the gradual trickle of document production, Plaintiffs find it hard to believe that GSK, BI and Sanofi really intended to cooperate with Plaintiffs to satisfy the agreed upon 18-month expedited discovery schedule providing for full, non-bifurcated discovery.

As stated previously, 80% of GSK's initial document production in the Summer of 2020 was improperly redacted. After filing a PTO 32 dispute resolution memorandum on September 11, 2020, GSK agreed to reproduce the documents with the redactions removed but it took months for this to be completed.[10] GSK also failed to even begin any custodial file production by November 24th pursuant to PTO 47, and failed to substantially complete custodial file production by December 31st.[11] Plaintiffs wrote to GSK inquiring of the status of the Tranche 1 custodial file production due on November 24th, as well as the lack of rolling production of non-custodial documents.[12] GSK only produced its first but very minimal, partial custodial files on December 2, 2020; a second production with only one partial custodial file on December 7th; and a single

---

custodial files were being produced "until present." Recently, GSK agreed to produce the custodial file documents that were generated from 9/13/2019 through 12/31/2020.

[10] *See* Exhibit D.

[11] As noted previously, GSK's Tranche 1 custodial file production remains incomplete.

[12] Plaintiffs also wrote to Sanofi and BI on November 24th advising them of the failure to comply with PTO 47 by not producing any custodial files on or before November 24th and failing to engage in a rolling production of non-custodial documents. Plaintiffs had a meet and confer with Sanofi on December 4th regarding the failure to comply with PTO 47 and Sanofi did not mention the fact that Sanofi had failed to disable its autodelete function related to emails in violation of its litigation hold and the preservation orders. This is very concerning because Plaintiffs later learned that Sanofi had allegedly discovered its failure to preserve documents in mid-November. Sanofi did not notify Plaintiffs of the destruction of evidence until December 22, 2020.

partial custodial file on December 11th, such that by December 31st, GSK had produced 10% or less of the custodial files required under PTO 47.[13]

On January 6, 2021, GSK advised the Court that, although delayed, it would produce the Tranche 1 custodial files during the month of January. Subsequently, *on January 15th*, GSK notified Plaintiffs that its noncustodial regulatory production was not yet complete, despite GSK's previous representations to the contrary. Counsel indicated that the additional regulatory production would be made "hopefully" on January 18th and advised that it would affect the Regulatory 30(b)(6) deposition scheduled on January 21, 2021. Therefore, the deposition was postponed until February 4th. Another incomplete regulatory production was made on the evening of January 20th.[14]

GSK notified Plaintiffs in early February that it had inadvertently failed to run key search terms, including Zantac and NDMA, that the parties had agreed upon, across the custodial files and therefore the custodial files were all incomplete with over 250,000 documents that needed to be reviewed and produced. Then, in mid-February, Plaintiffs learned that GSK had unilaterally decided to stop collecting, reviewing or producing documents from custodial files that post-dated September 13, 2019 (the date of the Valisure Citizen's Petition filed with the FDA notifying the

---

[13] Sanofi and BI produced its first custodial files on December 4, 2020 and the next set of custodial files on December 23, 2020. In relation to noncustodial productions that were due by December 20th, Sanofi continued to produce, noncustodial documents on January 11th and January 18th and January 24th. BI continued to produce custodial and noncustodial documents that were due by December 31st, in January and February 2021. BI also failed to produce its noncustodial files related to its NDMA investigation, its Form 483 FDA investigation reports and documents relating to Zantac that had occurred in December 2019, and other noncustodial documents from its IDEA4CON and Trackwise databases.

[14] Similarly, *four days after the December 18th Status Conference*, on the eve of when the Court told all counsel to stand down for the holidays, on December 22nd, Sanofi notified Plaintiffs' counsel for the first time that there was a significant problem with Sanofi's litigation hold involving the widespread deletion of custodial file emails.

13

FDA that it found NDMA in Zantac). Prior to this, GSK had represented to Plaintiffs in an email dated 11/25/2020, that the custodial files were being produced "until present." The parties notified the Court of the search term issue first at the February 5th in-chambers conference. Plaintiffs also notified the Court again in Plaintiffs' submission in advance of the February 5th conference, as well as in PTO 32 Dispute resolution submission on February 26th.

On February 2, 2021, GSK produced another 18,879 pages of Regulatory documents on the eve of the February 4th deposition in violation of PTO 54.[15] In addition, GSK also notified Plaintiffs that key search terms were "inadvertently" never run across the custodial files and that over 250,000 custodial file documents had not been reviewed or produced. Again, the Regulatory 30(b)(6) deposition was postponed until March 3, 2021. On the eve of the March 3rd deposition, GSK produced another 1,100 custodial documents for the 30(b)(6) witness and advised that the updated custodial documents from 2020 would not be produced in advance of the deposition. Plaintiffs subsequently filed a PTO 32 Dispute Resolution Memorandum. *See* Exhibit G.

In addition to the Regulatory 30(b)(6) deposition, GSK's failure to produce noncustodial and custodial documents in a timely manner, notwithstanding the reasons, caused delay in conducting the depositions of the 30(b)(6) Pharmacovigilance witness and the 30(b)(6) Clinical/Preclinical trial witness both of which had been scheduled in February 2021. These have not yet been rescheduled due to the lack of custodial and noncustodial document production necessary to take these depositions.

GSK admits that it knew and advised Plaintiffs of its inability to meet its deadlines as set forth in PTO 47 on February 17th. *See* GSK Motion, p. 8, [DE 3044]. At the March 2nd dispute resolution hearing, the Court inquired: "While I have you, let me ask one other question. In going

---

[15] *See* Letter from GSK attached as Exhibit H.

back over the submission in my materials, I see there is a significant deadline on March 15th for production from GSK, and as I recall at the last – one of our the [sic] last hearings, the indication was that GSK was working valiantly to meet their deadline. Mr. Oot, does it still look like you are you going to land the plane on time on the 15th?" 03/02/21 Transcript, p. 8:2-9. GSK replied: "We are working on that right now, your Honor. I'd say that there are issues that we are working through with Plaintiffs. That will be a discussion, perhaps, that we could have on Monday. Right now, I couldn't say with certainty that we are going to meet the full completion of everything on the 15th." *Id.* at 8:10-15. Thereafter, Plaintiffs advised the Court that, contrary to GSK's statement, they had already "been advised that they [GSK] will not meet the March 15th deadline." *Id.* at p. 9:5-8.

GSK filed its Motion for Extension of PTO 47 deadlines on March 12th. In filing its motion, Defendants noted that "the discovery delays that have occurred and that continue, and further recognizing the impact these delays have had on Plaintiffs, GSK agrees not to oppose Plaintiffs' request for any extension of deadlines and/or modification of PTO 30." *See* GSK Motion, p. 1 [DE 3044]. Plaintiffs therefore do not oppose GSK's Motion for an Extension of the PTO 47 deadlines as they relate to GSK's noncustodial document production but respectfully seek such relief and remedy set forth below due to GSK's (and other Brands) consistent and ongoing failure to comply with the directives and deadlines set forth in PTO 30 and PTO 47.[16] These

---

[16] Plaintiffs' counsel and counsel for BI have had several meaningful discussions over the past several weeks concerning BI's PTO 47 productions and depositions and the delays in producing hard copy documents from BI's manufacturing facility in Promeco, Mexico due to Covid-19 and otherwise and agreed to work together to accomplish the necessary discovery. Counsel for BI has acknowledged in those discussions that an extension of time may be needed to complete the hard copy document production and for plaintiffs to complete related discovery and a modification to PTO 30 may also be needed and so has agreed that BI would not oppose a reasonable extension sought by Plaintiffs. Similarly, counsel for Pfizer has indicated a recognition of the need by Plaintiffs for an extension of the PTO 30 deadlines.

15

violations include the failure to: 1) produce custodial and non-custodial documents on a rolling basis as directed in PTO 47, 2) produce Tranche 1 custodial files by December 31, 2020, as required under PTO 47, 3) produce noncustodial documents as required under the deadlines set forth for each Brand Manufacturer in PTO 47.

### Relief Sought by Plaintiffs

Plaintiffs have been unduly prejudiced by the ongoing discovery delays such that we cannot feasibly timely conduct and complete essential discovery to meet the deadlines set forth in PTO 30. The discovery delays have caused the cancellation and postponement of multiple depositions, in an already aggressive and tight discovery schedule, as well as the inability to review highly relevant scientific and safety documents as well as clinical, preclinical and nonclinical testing and studies and conduct meaningful depositions. These delays have substantially impacted Plaintiffs' ability to work with experts in a timely manner in advance of the August 2nd deadline, resulting in irreparable prejudice and harm to Plaintiffs under PTO 30. Even if the Court were to deny GSK's motion and order GSK to produce the delayed documents within one day or one week, Plaintiffs would still require the relief requested in this response due to the recurrent and ongoing delays in production of noncustodial and custodial documents.

Plaintiffs therefore seek relief in the form of an Order Vacating PTO 30 and entry of an Amended PTO 30. Plaintiffs propose several alternatives in the context of this requested relief. Each of the alternatives seeks to modify PTO 30 to extend the August 2, 2021, deadline to December 20, 2021 (the current date for completion of all fact discovery presently in PTO 30). Therefore, instead of having 2 separate deadlines, all fact discovery, including general causation discovery, would now end on December 20, 2021, and expert reports, expert depositions and *Daubert* motions and briefing would be correspondingly extended thereafter.

This modification would allow Plaintiffs and Defendants approximately four and one-half months of additional time to complete fact discovery relating to general causation, along with completing all other discovery. General fact discovery is already scheduled to close on December 20, 2021, and the additional time requested for submission of expert reports roughly corresponds to the effect of the discovery delays to date on Plaintiffs' ability to timely, efficiently, and meaningfully sequence and manage discovery in this MDL. A proposed Order making only those modifications is attached as Exhibit "C" setting forth a new schedule.

This Court has previously acknowledged that this may be one of the largest MDL's in history. Granting the requested relief is clearly warranted in light of the facts and circumstances that have been presented to the Court. Moreover, the additional time is relatively minor in the grand scale of this litigation. Although Plaintiffs have not caused this delay, we are mindful of the impact the delay and a modification of the schedule has on the overall management of this litigation, so we would respectfully ask the Court to consider how we address the schedule moving forward and how to make the best use of the time we have built into the schedule and address next steps. As such, we also believe that PTO 30 is ripe for modification to address this litigation beyond general fact discovery, general causation, *Daubert* and class certification motions.

Currently, PTO 30 does not extend beyond the scheduling of general fact discovery, general causation, *Daubert* and class certification motions. The parties did not submit a complete schedule including Bellwether selection, discovery, expert submissions and trial(s) because Defendants refused to include anything beyond general discovery, *Daubert* and class certification motions and we could not reach agreement. Plaintiffs originally proposed a full schedule through Bellwether discovery and trials, including disclosure of specific causation expert reports, timing

17

of specific causation *Daubert* motions, class trials and dispositive motions;[17] however, the Defendants opposed the inclusion of any Bellwether discovery or Bellwether trial dates because they wanted to wait until after the *Daubert* and class certification rulings contemplated by PTO 30.

PTO 30 dictates that by May 14, 2021, "the parties begin discussions regarding process for selection of potential bellwether personal injury cases,' and by August 16, 2021, "Completion of process and plan for selecting potential bellwether personal injury cases, to be refined and amended for good cause as appropriate until final bellwether selection following the Court's general causation Daubert ruling." However, with the current discovery delays combined with the prospect of multiple types of cancer injuries; multiple Brands and Generic Manufacturer Defendants; significant case specific issues including timeframe, product usage, potential latency periods, NDMA levels/exposure; and over 80,000 filed cases and registered claims; the process of selecting Bellwether trial pools and conducting initial core discovery to reduce the pool and select cases for trial, completing the discovery, specific causation expert disclosures, and *Daubert* and dispositive motions' practice associated therewith, is a monumental project, requiring enormous time and resources. If a path forward is not considered and planned now, the first trials in this MDL cannot happen for many years. This issue must be addressed now on behalf of our clients who have cancer, many of whom may not live to see the end of this litigation. Therefore, we would respectfully request the Court address this in the context of Plaintiffs' Response to

---

[17] The Court recently asked about dispositive motions with the parties and Plaintiffs' counsel advised that under the typical MDL process and procedure, dispositive motions are dealt with in the context of individual Bellwether cases where the individual facts and law can properly be considered. Defendants did not offer a response.

GSK's Motion for an Extension of deadlines contained in this Court's Order and Plaintiffs' prayer for relief in accordance with the Federal Rules of Civil Procedure and applicable case law.

To address the reality of any timing as it pertains to the case specific issues outlined above, Plaintiffs respectfully offer two alternative proposals setting forth a vision to address the present discovery concerns. The first results in Bellwether trials beginning in late 2022, and the second results in Bellwether trials beginning in early 2023. *See* Exhibits "A" and "B." Each option contains brief summaries of the rationale for the proposal and a corresponding timeline. By way of comparison, Exhibit "A" requires Plaintiffs to almost concurrently designate and submit general causation and case specific expert reports, and thereafter expert depositions and *Daubert* motions. In contrast, Exhibit "C" maintains a staggered approach between general causation and specific causation, including expert reports, depositions and *Daubert* motions and briefing. If the Court compares the schedules contained in Exhibits "A" and "B" with Exhibit "C" which contains solely an extension of current deadlines under PTO 30, it is apparent that any Bellwether will not occur until mid to late 2023 if we solely extend the current deadlines as set forth in Exhibit "C." Last, Plaintiffs attached as Exhibit "I" a comparison chart, comparing current PTO 30 with the three alternative proposed schedules/prayers for relief.

Plaintiffs believe this relief is fair and equitable given the broad and ongoing failures of GSK and other Brands to meet PTO 47 deadlines, the complexities of the issues in the case, the ongoing COVID-19 pandemic and the unfair prejudice that will result if Plaintiffs are unable to obtain critical discovery necessary to appropriately develop their case.

DATED: March 17, 2021

Respectfully submitted,

  /s/ Michael L. McGlamry
Michael L. McGlamry
POPE McGLAMRY, P.C.
3391 Peachtree Road, NE, Suite 300
Atlanta, GA  30326
Ph: 404-523-7706
Fx: 404-524-1648
efile@pmkm.com

Tracy A. Finken
ANAPOL WEISS
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Ph: (215) 735-1130
tfinken@anapolweiss.com

Robert C. Gilbert
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Ph: (305) 384-7269
gilbert@kolawyers.com

Adam Pulaski
PULASKI KHERKHER, PLLC
2925 Richmond Avenue, Suite 1725
Houston, TX 77098
(713) 664-4555
adam@pulaskilawfirm.com