# EXHIBIT E

**Plaintiffs' Memorandum regarding Status of Discovery with Brand Manufacturers**

Plaintiffs are committed to the deadlines set forth in PTO 30.  Plaintiffs' Proposed Schedule makes that possible. *See* Exhibit A. Working backwards from the deadlines—as Your Honor directed—Plaintiffs' Schedule provides realistic dates to produce noncustodial files, finalize search terms, a soft cap on custodial-file requests from the Brand Defendants and a production schedule in four waves. Plaintiffs' Schedule builds in the review time needed between the production of custodial files and subsequent depositions. It also contemplates the time needed for Plaintiffs' experts to review data and prepare reports.  The deadlines in PTO 30 are uniform as to all parties and specific.  To meet them, the schedule announcing production timelines should also be uniform and specific.

**I.     Status of Discovery with Brand Manufacturers**

As part of the Initial Census discussions, the Brand Defendants ("Brands") insisted on general causation *Daubert* motion practice starting 18 months from the opening bell of discovery. In return, Plaintiffs agreed to an 18-month deadline for filing *Daubert* and Class Certification motions in exchange for "*full non-bifurcated discovery*" until December 20, 2021. There was no ambiguity about what this meant.  It included discovery relating to ALL personal injury/wrongful death and class action claims asserted in Plaintiffs' Master Complaints with the exception of case specific *Bellwether* discovery.

Defendants further insisted that Plaintiffs provide, by January 8, 2021, the full list of cancers for which they intend to submit expert reports. Plaintiffs agreed contingent on "full non-bifurcated discovery," as memorialized by PTO 30.  Yet certain Defendants now seek to phase discovery in a way that allows them to achieve in practice what they intentionally bargained away in negotiations.

Plaintiffs have less than a year left to complete full discovery, obtain evidence and documents, take depositions and submit expert reports and an additional 3 months beyond that to complete expert discovery and depositions, for the personal injury claims.. The discovery conducted by Plaintiffs must address every claim pled in the Master Complaints for multiple cancers caused by a drug manufactured and sold over a 40-year period by numerous Defendants. The Court aptly referred to this case as "one of the largest MDLs in history."  The task Plaintiffs face is immense.  We are up to the challenge, but only if Defendants abide by the letter and spirit of the negotiations memorialized in PTO 30. Plaintiffs' proposed schedule hews most closely to the deal the parties struck.

Plaintiffs are frustrated with the discovery progress to date.  Six-and-a-half months into discussions with the Brands, Plaintiffs have barely scratched the surface of the discovery needed to prove their claims and submit expert reports.  To date, the Brands have only produced their regulatory files and some foundational documents such as standard operating procedures and organizational charts. On March 4, 2020, Plaintiffs met with Co-Lead Defense Counsel and Special Master Dodge and provided a Proposed Order for an initial production of documents to move the case forward in an expedited manner. See Exhibit B.  This Order was based upon Judge Fallon's initial CMO in *Xarelto* and specifically requested regulatory and scientific documents and data. *Id*. In early April, pursuant to PTO 16, Plaintiffs provided additional initial disclosure requests and engaged in multiple discussions with the Brands related to discovery which could be produced in the near term.  *None of this discovery is complete.*

The Brands only started producing regulatory documents on June 18, 2020.  *See* Production Log attached as Exhibit C.[1]  Otherwise, the non-regulatory productions are minimal and consist mostly of incomplete foundational documents such as SOP's and Organizational Charts.  *Id*.

---

[1] As the Court is aware, per the Joint Dispute Resolution Memorandum submitted on September 11, 2020, GSK's documents were largely redacted. After two months of meet and confers between the parties, GSK agreed to correct its production and reproduce it next week. Unfortunately, this type of substantial delay was not only inefficient but required hundreds of hours of attorney and consultant time to address. Disputes such

On June 16, 2020, Plaintiffs served formal Interrogatories and Requests for Production of Documents.  Plaintiffs provided the Brands with multiple extensions with the understanding that informal discovery would proceed at a quick pace.  Formal discovery responses were served this week by Boehringer Ingelheim ("BI").  The remaining Brands are due to serve their responses within the next two weeks.  Meanwhile, Plaintiffs have attempted to work with the Brands informally, and have met and conferred extensively about the scope of non-custodial[2] and custodial[3] productions, and next steps. Non-custodial data sources are important because they represent the institutional knowledge and sources of information from each Brand related to Zantac. Plaintiffs have not yet received complete noncustodial productions from key functional departments including the majority of evidence critical to our claims relating to pharmacovigilance and safety; clinical and preclinical testing with underlying data, documents and histopathology; epidemiology; adverse event reports; communications with medical professionals; manufacturing, storage, and shipping documents relating to temperature controls and degradation; NDMA testing; and global safety communications and testing relating to NDMA; sales, marketing, pricing, formulary, and transactional non-custodial sources as well.

In addition, the parties have been negotiating search terms. It is a relatively complex process; exchanging and testing search terms; and discussing the pros and cons of particular searches. The idea is to determine the most effective mechanism to generate the most robust, responsive and relevant production.

## II.   Plaintiffs' Proposed Schedule

Plaintiffs Schedule demonstrates fidelity to PTO 30.  A steady yet aggressive pace is the *only* way to meet the current deadlines while allowing Plaintiffs a full and fair opportunity to analyze information to develop and prove their case.

The current pace of discovery is incompatible with PTO 30.  For Plaintiffs to provide the initial disclosures on specific cancers by early January 2020 requires extensive review and expert analysis of materials we do not yet have. The Brands have not produced the following noncustodial documents that relate directly to science and safety: pharmacovigilance departmental documents, adverse event reports, clinical and preclinical trial documents including the underlying data, post-marketing study documents, epidemiology, signal detection or analyses, NDMA testing and analyses, and complete manufacturing, chemistry, stability, storage and handling documents.  These types of documents are not useful, nice-to-have materials (though "full, non-bifurcated discovery" unquestionably entitles Plaintiffs to such documents).  They are the very core of the discovery Plaintiffs and their experts require to meet the January 2020 deadline.  Recently, the Brands have engaged in testing their ranitidine products and responding to a variety of regulatory inquiries globally.  These global regulatory findings too go to the very heart of Plaintiffs' case, so Plaintiffs' Schedule provides for dates when noncustodial documents must be produced to keep the parties on course. *See* Exhibit A.

### A. Search Terms

---

as these cause the parties to veer off course from the schedule outlined in PTO 30. This is precisely why the parties need a specific and detailed uniform production schedule.

[2] Non-custodial sources include databases, sharefiles, folders, and other central or departmental data sources maintained by the Brands or documents or segregated sections dedicated to Zantac. Certain of the Brands have identified some of their non-custodial data sources, and others have not. These data sources can either be produced in whole because all are Zantac-related, and to the extent they include other products, would require using search terms to identify the related documents.

[3] Custodial files are documents associated with particular employees. In order to search and produce a custodial file, a search methodology must be selected, i.e., search terms or TAR (Technology Assisted Review).

The parties have also not been able to reach agreement on search terms that will be used to collect documents from custodial files that will ultimately be requested by Plaintiffs once the necessary departmental documents are produced and Plaintiffs has had an opportunity to review them and identify potential witnesses for deposition and trial. The parties have exchanged proposed lists of search terms.  The Brands have represented that they are testing Plaintiffs' terms across a small subset of custodial files they have collected. However, to conclude this discussion, Plaintiffs are awaiting the production of "hit count" reports that will provide clarity and transparency into the amount of hits each term landed upon within a sampling of custodial files such that the parties can meet and confer in a meaningful manner on the narrowing and/or modification of the search term list to be used.  Thus far, two Defendants, BI and Sanofi, have agreed to produce this information. Sanofi has already provided the requested information, by way of a detailed report, two days ago. We anticipate being able to meet and confer with Sanofi and BI in short order and resolve the search term list with them. Pfizer has refused to produce this information, which is delaying the ability of the parties to follow the process and reach agreement as required by PTO 29 (§VI) while we still await GSK's response. Plaintiffs' Schedule asks this Court to force the issue. *See* Exhibit A.

**B. Deposition Protocol**

Finally, the parties have engaged in multiple meet and confers over the past two months to discuss a general Deposition Protocol for the Defendants' current and former employees and non-party witnesses (a remote deposition protocol is near completion as well). Defendants initiated a proposal on July 1, 2020, and the parties have been in discussions since then. After multiple meet and confers and letter and draft exchanges, the predominant provisions at issue include: (1) a mechanism to address document authenticity and business records presumptions during the period of discovery; (2) the length of depositions, including 30(b)(6) depositions; (3) the protocol to address attendee participation when documents or testimony are designated various levels of confidentiality pursuant to PTO 26; and (4) a soft cap on the number of depositions. The parties have discussed the need to address issue (1) which would affect issues (2) and (4) because if there were presumptions as to authenticity and business records exceptions, the depositions could proceed more efficiently and may allow for fewer and shorter depositions. At this point, before significant document production and formal discovery responses, Plaintiffs believe it is premature and also impossible to fairly determine a presumptive limit on the number of depositions.[4]

Depositions begin October 1, 2020 with a Regulatory 30(b)(6) deposition of BI. Plaintiffs have served additional 30(b)(6) notices and are presently seeking to schedule ESI/Data Source 30(b)(6) depositions of each Brand. Plaintiffs requested that each Brand provide by September 16 a deposition date in October 2020, and none of the Brands have responded with a date. It is imperative that we start these depositions.

**C. Depositions and Custodial File Requests**

As part of the discussions surrounding the deposition protocol, Defendants have insisted upon including limitations on the number of depositions that Plaintiffs can take of each Defendant's witnesses.  That suggestion is untenable.[5] It is premature to place limitations upon the numbers of custodial files or depositions that Plaintiffs can request. Significantly restricting the ability to conduct discovery and take depositions will severely prejudice Plaintiffs' ability to fully establish the elements of their theories of liability as well as provide necessary information to support the class claims.

---

[4] Neither the Manual for Complex Litigation, 4th nor the Guidelines and Best Practices for Large and Mass-Tort MDLs, Bolch Judicial Institute, Duke Law School (Second Edition) recommend or suggest limitations on the numbers of depositions in a litigation of this magnitude.

[5] Moreover, all Brands have not identified all individuals or employees who are most knowledgeable about this litigation nor produced complete organizational charts to define the relevant universe for Plaintiffs.

Defendants were unable to point to a single MDL where depositions were limited to 10.  In addition, Defendants' proposed schedules appear to suggest that Plaintiffs are only entitled to receive the custodial files and take depositions of <u>a limited number of witnesses that *Defendants* identify as relevant</u>. This would be highly prejudicial to Plaintiffs' ability to prepare their case and contravene the Federal Rules.  The Rules do not permit Defendants to unilaterally dictate what discovery or witnesses they will produce based upon <u>their</u> perception of relevance and otherwise ignore or limit Plaintiffs' ability to request discovery or depositions.[6] Given the applicable factors, Defendants cannot genuinely argue that proportionality dictates the need for extreme limitations on the scope of discovery in this case.

As set forth herein, Plaintiffs believe a discovery schedule, closely monitored and managed by the Court or, alternatively, a Special Master with expertise in MDL pharmaceutical litigation discovery who can dedicate significant time to work with the parties on a weekly basis, is critical to maintain the deadlines set forth in PTO 30.[7]

---

[6] To provide context, Plaintiffs have provided information relating to discovery conducted in other MDLs. *See* Exhibit D. The majority of MDLs involving pharmaceutical litigation have <u>not</u> limited the number of custodial files or depositions that Plaintiffs can take.

[7] In preparation for the August 14 *in camera* session with the Court, Plaintiffs' Co-Lead Counsel raised with Special Master Dodge our request for the appointment of a discovery special master to assist the parties with the complex discovery issues and disputes.  However, the matter was not included on the agenda for discussion with the Court. This past Monday, during the discovery hearing, Judge Reinhart expressed his expectation that there would "be very few discovery issues in the future that need to be pushed all the way to their legal limits" and that before we request a discovery hearing, we should have "met, conferred, and negotiated both bilaterally and with the help of the special master." *See* 9/14/2020 Transcript Discovery Hearing, p. 49. Judge Reinhart's suggestion causes us concern. In the absence of an experienced discovery master dedicated solely to discovery, it will be nearly impossible for the parties to achieve the vision that the Court discussed for this litigation at its outset. The parties have been working diligently for months, but the current construct of a Special Master, who is wearing many hats including shuttle diplomacy on census, miscellaneous orders, data and discovery, among other things, is not resulting in resolution of issues in a productive manner that will allow the Plaintiffs to obtain discovery on the timeline set forth in Court Orders. Plaintiffs respectfully request that a separate, independent and dedicated Discovery Special Master be appointed. This will allow the parties to gain guidance from a dedicated and experienced Discovery Master, and simultaneously allow Special Master Dodge to focus on facilitating non-discovery orders, the census, data analytics and continue to play a role in this case census and other necessary issues in the case. There is substantial precedent for this as well. *See* *Exhibit E*  The discovery disputes in complex litigation are high-stakes, every bit as much as dispositive motions, class certification and *Daubert*.  Special Master Dodge does not have specialized experience in complex discovery matters. This point takes nothing away from Special Master Dodge's contributions and commitment to this case. Plaintiffs' request for a discovery master is simply aimed at ensuring that a professional *experienced* in complex discovery disputes will assist the parties in an informed and meaningful way without exerting a burden on judicial resources and/or before approaching the Court with formal motion practice.

EXHIBIT A

In re Zantac, MDL 2924
Plaintiffs' Proposed Discovery Schedule

| DEADLINE | EVENT |
|---|---|
| Immediate | **BRAND DEFENDANTS:**<br><br>• Each Defendant will begin immediate rolling productions of all noncustodial documents with prioritization of pharmacovigilance files; adverse event reports and data; preclinical, clinical and post-marketing studies with underlying documents and data conducted or sponsored by the manufacturer defendant; stability, chromatography, and other testing related to NDMA, impurities or degradation of Zantac; U.S. and, to the extent applicable, worldwide regulatory submissions, including all underlying correspondence, relating to NDMA; documents and data relating to evaluation or analysis of NDMA or nitrosamines in Zantac or formed from Zantac; and documents and data relating to evaluation or analysis of the risk of cancer associated with NDMA, nitrosamines or Zantac; ***to be complete no later than 11/25/2020*** and the remainder of noncustodial document production including, ***but not limited to,*** discovery pertaining to sales and marketing, manufacturing, shipping and storage,  consulting and lobbying agreements, pricing and distribution, and communications to consumers and health care professionals, including institutions; ***to be complete no later than 12/31/2020***.<br><br>• Bearing in mind that Plaintiffs will require certain discovery to identify cancers as set forth in PTO 30 and for preparation of expert reports, a Defendant shall not unreasonably withhold any discovery that falls within the specific categories stated above.  If a Defendant objects to the production of any category of information specified herein or intends to limit the scope of its production for any category herein, it shall notify Plaintiffs in writing by 9/23/2020.  The parties shall meet and confer to attempt to resolve any disputes. If the parties cannot reach agreement, they may seek resolution in accordance with PTO 32. |

**In re Zantac, MDL 2924**
**Plaintiffs' Proposed Discovery Schedule**

| DEADLINE | EVENT |
|---|---|
| 9/23/2020 | **BRAND DEFENDANTS:**<br><br>• As contemplated in PTO 29 (§VI), a search term list generated by open discussion between the parties is the fairest way to establish trust, increase the relative precision of the search or proportion of relevant and responsive documents. Transparency and a cooperative approach will limit challenges to the scope of the productions in the future.  Therefore, each Defendant will provide a hit count report relating to each proposed search term provided by the PSC such that the parties can engage in meaningful discussion and modification of search terms for custodial file productions. Hit reports are the only way to ensure complete transparency about the number of documents that the search terms generate and engage in a meaningful, iterative and cooperative approach. There is no legitimate reason to withhold them except to unilaterally limit production of relevant documents.<br><br>• Each Brand Defendant will identify the *specific* sources of information it commits to search for collection of custodial files including any limitations on timeframe or sources of information that it intends to exclude from custodial file searches. If Plaintiffs object to the scope a Defendant has identified, Plaintiff will notify the Defendant within twenty-four (24) hours. The parties shall meet and confer in a good faith attempt to resolve any dispute. If the parties cannot reach an agreement regarding the scope of custodial file searches, they may invoke the dispute resolution process as outlined in PTO 32 no later than 10/1/2020.<br><br>• Plaintiffs will notify Defendants of the departmental and/or topic areas for which they seek 30(b)(6) depositions pursuant to the notices that have already been served and have been the subject of meet and confers to date.<br><br>• In addition, Plaintiffs will *informally* provide Defendants with amended notices of deposition clarifying the subject matter and scope of testimony they seek.<br><br>• If a Defendant objects to providing a witness or witnesses to testify at a 30(b)(6) deposition for any of the departments or topics identified, it will notify Plaintiffs within twenty-four (24) hours such that the parties can engage in a final meet and confer subject to PTO 32. |

**In re Zantac, MDL 2924**
**Plaintiffs' Proposed Discovery Schedule**

| DEADLINE | EVENT |
|---|---|
| 10/1/2020 | **BRAND DEFENDANTS:**<br><br>• Deadline to finalize search terms.  Recognizing that search terms will differ depending on each Defendant and its unique circumstances, the Plaintiffs and ***each Brand Manufacturer*** shall finalize the list of search terms to be used for searching and subsequent production of custodial files.  If the parties cannot agree to a final set of search terms by 10/1/2020, the parties may seek immediate resolution by the Court in accordance with PTO 32 so as not to delay the production of custodial files. A joint submission shall be sent to the Court by 5 pm EST on 10/1/2020 in accordance with PTO 32.<br><br>• Plaintiffs shall identify an initial list of witnesses for which they seek custodial files for each Brand Defendant not to exceed 25 per defendant. Defendants shall ***begin*** a rolling production of the requested custodial files within forty-five (45) days. If Defendants are unable to begin the rolling production of these files within this timeframe, they should notify Plaintiffs in writing and provide the reasons they are unable to do so.  The parties shall meet and confer to discuss a timeline for the rolling production to begin however the parties shall bear in mind the deadline for completion of production set forth in this Order.<br><br>• Defendants shall provide two (2) dates upon which they are able produce witnesses to testify in response to the 30(b)(6) deposition notices served informally by plaintiffs bearing in mind the deadlines for completion of 30(b)(6) depositions set forth in this Order. Plaintiffs shall notify Defendants of which date they will proceed with the deposition and serve amended notices of deposition confirming the date and details no later than 5 pm EST on 10/3/2020. |

**In re Zantac, MDL 2924**
**Plaintiffs' Proposed Discovery Schedule**

| DEADLINE | EVENT |
|---|---|
| 11/25/2020 | **BRAND DEFENDANTS:**<br><br>• Deadline for completion of production of pharmacovigilance departmental files; adverse event reports and data; preclinical, clinical and post-marketing studies with underlying documents and data conducted or sponsored by the manufacturer defendant; stability, chromatography, and any other testing related to NDMA, impurities or degradation of Zantac; U.S. and, to the extent applicable, worldwide regulatory submissions, including all underlying correspondence, relating to NDMA; company documents relating to evaluation or analysis of NDMA or nitrosamines in or formed from Zantac.<br><br>• Thereafter, Defendants will provide updated productions related to these topic areas on a rolling basis at a minimum of every ninety (90) days until the close of discovery on 12/31/2021. |
| 12/31/2020 | **BRAND DEFENDANTS:**<br><br>• Deadline for completion of production of initial custodial files requested by Plaintiffs.<br><br>• Deadline for completion of production of documents from non-custodial sources. Thereafter, Defendants will provide any updated productions on a rolling basis no later than every ninety (90) days until the close of fact discovery on 12/20/21.<br><br>• On or before 12/31/2020, Plaintiffs shall identify the 2nd tranche of custodians for which they seek custodial files for each Brand Defendant not to exceed 25 per defendant.<br><br>• Deadline to complete 30(b)(6) depositions for each Brand Defendant<br><br>**GENERIC DEFENDANTS:**<br><br>• Deadline for completion of production of documents by Generic Defendants in accordance with the CDA.<br><br>• Plaintiffs shall identify the initial witnesses for which they seek custodial files from the Generic Defendants not to exceed 15 per Defendant.<br><br>**ALL OTHER DEFENDANTS:**<br>• Plaintiffs shall identify the initial witnesses for which they seek custodial files from the Defendants not to exceed 20 per Defendant. |

**In re Zantac, MDL 2924**
**Plaintiffs' Proposed Discovery Schedule**

| DEADLINE | EVENT |
|---|---|
| 1/30/2021 | **BRAND DEFENDANTS**:<br><br>• Plaintiffs shall identify the 3rd tranche of witnesses for which they seek custodial files from each Brand Defendant not to exceed 25 per defendant. |
| 3/1/2021 | **BRAND DEFENDANTS:**<br><br>• Deadline for completion of production of 2nd tranche of Brand Defendant custodial files<br><br>• Plaintiffs shall identify the 4th tranche of witnesses for which they seek custodial files from each Brand Defendant not to exceed 25 per defendant.<br><br>**ALL OTHER DEFENDANTS**<br><br>• Deadline for completion of production of initial custodial file requests for all other non-brand Defendants |
| 4/5/2021 | **BRAND DEFENDANTS:**<br><br>• Deadline for completion of production of 3rd tranche of custodial files<br><br>**ALL OTHER DEFENDANTS**<br><br>• Plaintiffs shall identify the 2nd tranche of witnesses for which they seek custodial files from all other Defendants not to exceed 15 per Defendant. |
| 5/30/21 | **BRAND DEFENDANTS**<br><br>• Deadline for completion of production of 4th tranche of custodial files<br><br>**ALL OTHER DEFENDANTS**<br><br>• Deadline for completion of production of 2nd tranche of custodial files |

**In re Zantac, MDL 2924**
**Plaintiffs' Proposed Discovery Schedule**

| DEADLINE | EVENT |
|---|---|
| 7/31/21 | **ALL DEFENDANTS**<br><br>• Plaintiffs shall identify the final tranche of custodians for which they seek custodial files not to exceed 10 per Defendant.  If Plaintiffs require any additional custodial files from any individual Defendant, they shall meet and confer in attempt to reach agreement.  If they are unable to reach agreement, Plaintiffs may seek leave of Court. |
| 9/30/21 | **ALL DEFENDANTS**<br><br>• Deadline for completion of production of final tranche of custodial files. |
| 12/20/21 | **Close of Fact Discovery** |

EXHIBIT B

RE: Zantac Early Orders

Wisner, R. Brent <rbwisner@baumhedlundlaw.com>

Tue 3/3/2020 2:17 AM

**To:** DODGE, JAIME LYNNE <jdodge@emory.edu>; Mikal Watts <mcwatts@wattsguerra.com>; Robert C. Gilbert <gilbert@kolawyers.com>; Roopal Luhana <Luhana@chaffinluhana.com>; Cheffo, Mark <Mark.Cheffo@dechert.com>; Bayman, Andy <ABayman@KSLAW.com>; Petrosinelli, Joe <JPetrosinelli@wc.com>; paige.sharpe@arnoldporter.com <paige.sharpe@arnoldporter.com>

 6 attachments (167 KB)

CMO (Proposed) - Initial Disclosures, Opening Discovery & Science Day.docx; CMO (Proposed) - Preservation Order.docx; PTO (Proposed) - Confidentiality Order.docx; PTO (Proposed) - Direct Filing.docx; PTO (Proposed) - Procedures for Resolution of Discovery Disputes.docx; PTO (Proposed) - Protocol for Treatment of Privileged and Work Product Materials.docx;

Counsel,

We are looking forward to meeting with you on Wednesday.  In anticipation, the Practices & Procedures Team prepared several proposed Pretrial and Case Management Orders that we would like to discuss with you and, hopefully, reach agreement about prior to the CMC.  We will also be sending you a streamlined service order tomorrow.

During our meeting, we would also like to discuss:

1. Creating incentives for Plaintiffs to file in MDL as opposed to state court (i.e., bundling of complaints)
2. Agenda for the CMC (including a potential science primer for the Court)
3. General timelines for case schedule
4. Logistics of putting together joint statement (due Mar. 16)

Best,

R. Brent Wisner | Partner

**BAUM HEDLUND ARISTEI GOLDMAN** PC

10940 Wilshire Boulevard, 17th Floor | Los Angeles, CA 90024

baumhedlundlaw.com | (310) 207-3233 | rbwisner@baumhedlundlaw.com



*CONFIDENTIALITY NOTICE -- This electronic mail message may contain confidential information belonging to the sender which is protected by the attorney-client and/or work product privilege. The information is intended only for the use of the individual(s) or entity(ies) named above. If you are not the intended recipient, you are notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please purge the received information from your system and immediately notify the sender by telephone and by return e-mail. Thank you. IRS DISCLAIMER: Communications from our firm may contain or incorporate federal tax advice.  Under recently promulgated US Internal Revenue Service standards (Circular 230), we are required to inform you that only formal, written tax opinions meeting the requirements of Circular 230 may be relied upon by taxpayers for the purpose of avoiding tax-related penalties.  Accordingly, this communication is not intended or written to be used, and it cannot be used, for the purpose of avoiding tax-related penalties under the Internal Revenue Code.*

**From:** DODGE, JAIME LYNNE <jdodge@emory.edu>
**Sent:** Wednesday, February 26, 2020 2:45 PM

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IN RE:  ZANTAC (RANITIDINE)                                      MDL NO. 2924
PRODUCTS LIABILITY                                                 20-MD-2924
LITIGATION

                                        **JUDGE ROBIN L. ROSENBERG**
                              **MAGISTRATE JUDGE BRUCE E. REINHART**

_____/

**THIS DOCUMENT RELATES TO:  ALL CASES**

**[PROPOSED] CASE MANAGEMENT ORDER # XX**
**Initial Disclosures, Opening Discovery & Science Day**

**I.      Voluntary Disclosure and Production by Defendants:**

1.      By March 31, 2020, Defendants will voluntarily produce to Plaintiffs without a formal discovery request, the following documents subject to entry of the agreed upon protective order:

> a.   All New Drug Applications ("NDA") files, including all clinical trial reports, animal bioassays, and the underlying SAS transport files therein, for Zantac or any other ranitidine-containing product, whether prescription or over-the-counter;

> b.   All Investigational New Drug Application ("IND") files, including SAS transport files therein, for Zantac or any other ranitidine-containing product, whether prescription or over-the-counter;

> c.   All final agreements concerning the transfer, control, or sale of a Zantac NDA, IND, trademark or license, whether prescription or over the counter.

> d.   All final agreements concerning the distribution of Zantac or other ranitidine-containing products, whether prescription or over-the-counter.

1

2.      By March 31, 2020, Defendants will disclose to Plaintiffs any readily obtainable corporate organizational charts for each Defendant and the name and title and subject matter of each employee and former employee likely to have discoverable information, that the Defendants may use to support their claims or defenses, unless the use would be solely for impeachment. Defendants shall also provide the telephone numbers and address of any former employees disclosed above. Defendants' voluntary disclosure and production shall be made to the best of the Defendants' knowledge, information and belief and are subject to additional or different information that further investigation may disclose. Discovery and investigation are ongoing in this matter. This voluntary disclosure and production are made without prejudice to Defendants' right to amend or supplement.  In light of this voluntary disclosure and production by the Defendants, as well as the discovery obligations undertaken by both Plaintiffs and Defendants, as set forth in this Order, the disclosure requirements of Fed. R. Civ. P. 26(a) are hereby suspended for both Plaintiffs and Defendants.

## II.    Opening Discovery

1.      General discovery on all Defendants and third-parties shall commence within 14 days after the entry of an order establishing the leadership for Plaintiffs.  Any and all previously-served and unanswered discovery requests are stricken and the Defendants are under no obligation to respond to those requests.

2.      Within 14 days after the entry of an order establishing Plaintiffs' leadership, the Parties shall meet-and-confer and submit a deposition protocol.  No depositions will be permitted until such protocol is established.  Disputes concerning the deposition protocol shall be resolved through the procedures outlined in PTO # XX.

3.      Discovery on Plaintiffs shall be limited, until otherwise ordered by the Court, to the information being collected by the Census.

## III.   Science Day

1.      A formal Science Day will be set by Court order approximately 90 days following the entry of an order establishing the leadership for Plaintiffs.

2.      At least 30 days prior to the scheduled Science Day, the Parties shall submit a proposed Science Day agenda and protocol, proposed date, and a disclosure of those experts each side intends to present.  Additionally, each side is permitted to submit up to twenty publications for the Court to review.

DONE and ORDERED in Chambers, West Palm Beach, Florida, this __ day of March, 2020.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

EXHIBIT C

EXHIBIT C

| Defendant | Production Date | Defendant Description of Production | No. of Documents |
|---|---|---|---|
| **Boehringer Ingelheim** | 6/26/2020 | Regulatory files | 2,616 |
| | 7/10/2020 | Regulatory files, SOP's<br>CHC Org Charts | 2707 |
| | 8/28/2020 | 2010 CHC Org Chart<br>Labeling and packaging | 1435 |
| | 9/1/2020 | SOP's | 97 |
| **TOTAL BI production** | | | **6433** |
| **GSK** | 6/26/2020 | INDs | 1,207 |
| | 7/6/2020 | NDAs | 70,634 |
| | 7/10/2020 | Additional IND | 213 |
| | 7/17/2020 | Additional NDA | 62 |
| | 7/31/2020 | Annual Reports & Summary Basis of Approval | 136 |
| | 8/13/2020 | Additional NDA | 678 |
| | 8/21/2020 | Medical information letters | 669 |
| | 8/27/2020 | Additional NDA | 852 |
| | 9/4/2020 | SOPs and Organizational Charts | 1,028 |
| | 9/11/2020 | SOPs and Organizational Charts | 1,863 |
| **TOTAL GSK Production** | | | **77,342** |
| **Sanofi** | 6/29/2020 | "[R]egulatory files" | 5,216 |
| | 8/14/2020 | Historical BI regulatory documents, Organizational charts, SOP indices, Retailer agreements | 1,527 |
| | 9/2/2020 | Retailer agreements, product labeling, EMA documents, insurance information | 191 |
| | 9/8/2020 | Tax Records | |
| | 8/14/2020 | The CHC Global Manufacturing and Supply Agreement | 4 |
| **TOTAL SANOFI:** | | | **6,950** |
| **Pfizer** | 6/18/2020 | Relevant contracts, FDA correspondence, and NDA/ANDA documents. | 222 |
| | 8/3/2020 | 2006 APA between J&J/Pfizer/BI and the 2006 SAPA between J&J/ Pfizer<br>Studies produced in the PPI litigation where ranitidine was used as a comparator | 123 |
| | 9/4/2020 | None given | 1,364 |
| | 9/11/2020 | None given | |
| **TOTAL PFIZER:** | | | **2597** |

# EXHIBIT D

## MDL Examples of Custodial Files and Depositions

| MDL Litigation | Time product was on the market at the start of the MDL | Number of Custodial Files Produced per Defendant | Number of Depositions |
|---|---|---|---|
| Xarelto | 4 years | 194 | 50 depositions per defendant (CMO 2) |
| Pradaxa | 2 years | 259 | No limit |
| Yaz | 3 years | 122 | No limit |
| Actos | 12 years | 285 | 8 depositions **per month,** no cap and 1 defendant (Amended CMO 1) |
| Invokana | 3 years | 87+ | No limit |
| Seroquel | 6 years | 80 | No limit |
| Protonix (PPI) | 15 years | 80 custodial files **agreed to** by Pfizer and the PSC | Soft cap of 30 depositions (*exclusive of 30(b)(6) depositions*) **agreed to** by Pfizer and the PSC (CMO 19) |
| Prilosec/Nexium (PPI) | 27 years | 140 custodial files | Soft cap of 55 (*exclusive of 30(b)(6) depositions*) (CMO 17) |

# EXHIBIT E

| MDL's with Appointed Special Discovery Master |
| --- |
| *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, MDL No. 3885, 3:19-md-02885-MCR-GRJ (N.D. Fl. Oct. 15, 2019): Judge Rogers appointed retired Judge David Herndon as the Special Master to help manage discovery from the United States Department of Defense and Department of Justice. The MDL had a separate Magistrate Judge assigned yet appointed Judge Herndon "for the purpose of assisting the Court in moving the affirmative defenses into a posture for dispositive motion practice and to do so as efficiently and expediently as possible." |
| *In re Avandia Marketing, Sales Practices and Prods. Liab. Litig.*, MDL, No. 1871, 2:07-MD-1871 (E.D. Pa. June 10, 2008) (appointing a discovery master to handle scheduling issues with respect to depositions and document production and to mediate discovery-related disputes). |
| *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, MDL No. 1358,  Master File No. 00-1898 (S.D.N.Y. June 18, 2004) (appointing special master where due to the "complexity of this case, no district or magistrate judge of this Court could resolve every pretrial matter that might arise from discovery, effectively and in a timely manner, and still pay adequate attention to the remainder of his or her docket"). |
| *Additional Support:*<br><br>Honorable Shira A. Scheindlin, Jonathan M. Redgrave, *Special Masters and E-Discovery: The Intersection of Two Recent Revisions to the Federal Rules of Civil Procedure,* 30 Cardozo L. Rev. 347, 388 (2008)<br><br>Barbara J. Rothstein, Ronald J. Hedges & Elizabeth C. Wiggins, MANAGING MULTIDISTRICT LITIGATION IN PRODUCTS LIABILITY CASES: A POCKET GUIDE FOR TRANSFEREE JUDGES § 11 (2011). |