EXHIBIT G

**_In Re_ Zantac Case No. 9:20-md-02924- Plaintiffs' PTO 32 Memorandum (2/26/2021)**

This dispute involves GSK's continuous and repeated failure to comply with Pretrial Orders Nos. 47 and 54 requiring timely production of custodial files. GSK's actions have caused the cancellation and delay of multiple depositions, in an already tight discovery schedule. Plaintiffs reserve argument on whether GSK's actions are intentional; regardless of intent, the result is the same--prejudicial delay.[1] Accordingly, Plaintiffs request that the Court order GSK to produce (1) the scheduled deponents on their currently scheduled deposition dates; and (2) the deponents a second time thirty (30) days after the **complete** production of its long-overdue custodial productions. Plaintiffs further request that the second day of depositions not be included in the "soft cap" on the number of depositions under PTO 54. This relief is the only hope of keeping discovery remotely on track as it will enable Plaintiffs to move the case forward under the schedule without prejudicing their right to fully question deponents on GSK's late-produced discovery.[2]

Plaintiffs certify that they complied PTO #32. Good faith efforts to resolve differences failed, and require resolution by the Court.

1. **GSK Violated Amended PTOs #47("Document Discovery Schedule") and PTO #54 ("Deposition Protocol")**

After careful deliberation and input from the parties, this Court issued Amended Pretrial Order #47 on October 3, 2020 which set forth a document production schedule. The Court noted that its intervention was necessary to ensure the (18) eighteen-month discovery schedule. To balance Plaintiffs' "need for the expeditious production of certain documents" with Defendants' need for time to comply, this Court ordered GSK's Tranche 1 custodial file productions to start by November 24, 2020 and be substantially completed by December 31, 2020. Unfortunately, GSK has repeatedly violated the PTO #47 deadlines; it failed to even start production by November 24 and then failed to substantially complete custodial file production by December 31st.[3]

On June 16, 2020, Plaintiffs served six Notices for 30(b)(6) Depositions upon GSK. After attempting to get dates scheduled cooperatively for months, on November 20, Plaintiffs finally received a date for the GSK Regulatory 30(b)(6) deposition which was set for January 21, 2021; GSK designated Leslie Driver as the witness.[4] Due to GSK's multiple delays, Ms. Driver's deposition has been rescheduled three (3) times. The chronology of this behavior is outlined in the attached chronology of Driver deposition and related discovery at Exhibit B.

Given the rescheduling of the Driver deposition three (3) times due to GSK's discovery delays, as we are now seven (7) months into discovery without a single GSK deposition being completed, the Driver deposition must go forward on March 3. Unfortunately, GSK notified Plaintiffs that it intends to produce 1,100 Driver documents today, February 26, less than 5 days before the deposition and almost two months after GSK was required to substantially complete Ms. Driver's custodial file under Amended PTO #47. It will take Plaintiffs'

---

[1] This Court has often spoken and ruled upon burden and proportionality. In this instance, the disproportionate burden is on the Plaintiffs. Every time we have to reschedule, time, resources and manpower are wasted. For every production, we have to load, review, analyze, prepare generally and then specifically with regard to a particular deposition. Every time there is "glitch" or "hiccup" that requires a reschedule, restart, redo or do-over, there is a real cost in lawyer, staff and vendor time, cost and delay. In a case of this magnitude and scope, that cost is magnified and the effect exponential. Because of 3 reschedulings thus far, Plaintiffs have incurred more than triple the time, cost and manpower that would have been necessary had GSK complied with the Court's orders and its agreements. GSK'S remedy, i.e., to reschedule and push it down the road again, is not fair, proportional or recoverable for Plaintiffs.

[2] At least 2 other Brand Defendants have agreed to this process and remedy, Boehringer Ingelheim (BI) and Sanofi.

[3] *See* Ex. A, Table of Custodial File Productions.

[4] Plaintiffs were told in August and again in September 2020 that the noncustodial Regulatory production was completed.

1

vendor time to upload the documents and time for Plaintiffs to review the late production. As such, Plaintiffs seek an Order compelling GSK to produce Leslie Driver for a second day of deposition in April so that Plaintiffs do not continue to be prejudiced by GSK's repetitive substantial discovery delays in violation of PTO 47[5]. Plaintiffs further seek an Order compelling all currently scheduled depositions, including Graham Carey and Andrew Searle proceed as scheduled with a subsequent deposition date to take place of each witness within thirty (30) days of completion of their custodial files.

## 2. GSK Arbitrarily and Unilaterally Limited the Dates of Custodial File Searches

On October 22, 2020, Plaintiffs sent a letter to Defendants requesting specific information about the search methodology employed to collect custodial files. (*See* Ex. C, Plaintiffs Oct. 22, 2020 Letter to GSK "10/22/20 Letter.") Plaintiffs asked: "For each custodian, please identify the date range that you are conducting the search for and provide the dates that they worked on Zantac as this information is necessary to access whether GSK is searching an appropriate time frame. **PTO 29 requires that you confirm with us regarding date restrictions.**" (*See* Ex. C, 10/22/20 Letter, emphasis added.) Plaintiffs' position was reconfirmed on a November 13, 2020 meet-and-confer and email on November 16, 2020. (*See* Ex. D, Plaintiffs' November 16, 2020 Email.) On November 25, GSK responded that they would only agree to search and produce documents based on the dates of a custodian's involvement with Zantac and not based on the date of employment; GSK informed us that Ms. Driver was involved with Zantac from 2017 to present, and that would be the period of its search. The required date range was further confirmed in the parties' joint PTO 47 Memo where GSK specifically represented that they would do the same. (*See* Ex. E, GSK 11/25/2020 Email and Ex. G, PTO 47 Memo with GSK.) At no point did the parties discuss or did GSK reveal that it was secretly limiting its custodial searches to only documents created before September 13, 2019 dates. In fact, GSK represented the opposite on November 25, 2020, GSK represented that it was searching current employee custodial files "until present." Then on February 4, 2021, GSK sent an email following up on a meet and confer and attached a chart regarding GSK custodians. (*See* Ex. F, GSK February 4, 2021 Email and Attachment.) At no point in the email did GSK mention it arbitrarily and unilaterally restricted custodial searches to pre-September 13, 2019 dates.[6] In fact, the only way that Plaintiffs learned of GSK's underhanded action was when reviewing the attached chart. GSK restricted and changed the dates it searched for custodial files without notifying Plaintiffs.

Finally, GSK notified Plaintiffs yesterday, February 25, that GSK stopped collecting custodial documents, including documents for the Driver custodial file, on August 24, 2020, despite the fact that regulatory communications and work on NDMA-related issues continued for months after. Plaintiffs request that GSK produce the documents from September 19, 2019 through August 24, 2020 immediately and that GSK produce the August 24, 2020 through February 1, 2021 documents, as well.

## 3. PTO #54, Section E.5 Does Not Apply

Contrary to GSK's position, PTO #54, Sect. E.5 should not apply here. First, GSK's behavior has caused the parties to reschedule the Driver deposition *three* times. GSK must be deterred from continuing its abject failure to meet this Court's deadlines. Second, Plaintiffs' only agreed to the March deposition date for Driver based on

---

[5] GSK has also notified Plaintiffs that it will not meet the PTO 47 deadlines in relation to noncustodial production currently set for March 15th. GSK's repeated noncompliance with PTO 47 will be the subject of a separate motion.

[6] Just the fact that GSK has unilaterally cut off its custodial productions as of when litigation started concerning Zantac is a red herring, is contrary to the federal rules, unsupported and borders on a fraud on the Court. Every other Brand Defendant has produced custodial and non-custodial documents that date all the way through 2020. It only makes sense, particularly with GSK and Sanofi, both the last owners of Brand Rx and OTC Zantac and subject to ongoing investigations from the FDA and all over the world that has required them to conduct all sorts of business, regulatory, PV and other non-litigation reports, tests, analyses, investigations, etc.

GSK's representation that the Driver custodial file was complete. Third, Plaintiffs are under significant time constraints to complete discovery under PTO #30 and will be unable to meet those obligation or move the litigation forward without depositions starting immediately. GSK's continued failures have caused significant prejudice to Plaintiffs.  Finally, GSK restricted the ESI timeframe without consulting or notifying Plaintiffs.  This is directly contrary to the spirit of cooperation urged by this Court.

### 4.  Relief Sought by Plaintiffs

Plaintiffs maintain that the thrice-rescheduled Driver deposition must proceed next week for Plaintiffs to meet their obligations to this Court; however, Plaintiffs move to compel a second deposition of Ms. Driver within thirty days of GSK's complete production of her custodial file.  This is warranted given GSK's unapologetic continued violations of PTO 47, which have unfairly prejudiced Plaintiffs. Plaintiffs further request that GSK be compelled to produce the custodial documents from September 19, 2019 through August 24, 2020 immediately and that GSK produce the August 24, 2020 through February 1, 2021 documents within fourteen (14) days. Last, Plaintiffs request GSK be compelled to produce Graham Carey for deposition as scheduled on March 17th and Andrew Searle for deposition as scheduled on March 31st with a second deposition within 30 days of complete production of their delayed custodial files.

# Exhibit A

GSK Discovery Summary-High Level Overview 2-26-2021

| Discovery Category | GSK |
|---|---|
| Non-Custodial | Incomplete |
| Tranche 1 Custodial | Incomplete |
| 30(b)(6) depositions | None completed<br>2 to reschedule (production delay)<br>3 scheduled (wks of 3/3, 3/16, 4/16) |
| Tranche 2 Custodial | **Agreed** but need to discuss timing of production |
| Fact Depositions | 2 scheduled (3/17 &3/31); **2 requested in January – still waiting on dates.** |
| PTO 54 Soft Caps Depos **#s** | **35 depositions – none taken yet** |

| Status of Non-Custodial Document Production GSK Per PTO 47 - Substantial completion by 3/15 | |
|---|---|
| 6/1-10/2 | 78,087 |
| 10/3-11/24 | 5,778 |
| 11/25-12/31 | 1,876 |
| 1/1-1/15 | 1,591 |
| 1/16-1/31 | 2,292 |
| 2/1-2/15 | 2,163 |
| 2/16-present | 643 |
| TOTAL: | 92,430 |

| Noncustodial PTO 47 Due by 3/15 | GSK |
|---|---|
| Regulatory | **Need to confirm it was finally completed with the production made on 2/24** |
| Pharmacovigilance/Adverse Event | Incomplete |
| Studies (Clinical, Preclinical, etc) | Incomplete |
| NDMA investigation/testing | Incomplete |
| Manufacturing, Storage, Shipping | Incomplete |
| Stability Testing/Chromatograms | Incomplete |
| Sales & Marketing | Incomplete |

In Re Zantac MDL No. 2924
GSK Discovery Summary-High Level Overview 2-26-2021

| Status of Custodial File Productions GSK PTO 47: Tranche 1 Custodial Document Production<br>Begin by 11/24<br>substantial completion by 12/31 | |
|---|---|
| # of custodial documents produced **between 10/2-11/24** | 0 |
| # of custodial documents produced **between 11/25-12/31** | 4,355 |
| # of custodial documents produced **between 1/1-1/31** | 6,343 |
| # of custodial documents produced **2/1-present** | 20,863 |

In Re Zantac MDL No. 2924
GSK Discovery Summary-High Level Overview 2-26-2021

| Custodian | Deposition Date | Status of Custodial File Productions PTO 47 DUE DATE 12/31/2020 |
|---|---|---|
| Leslie Driver (30b6 witness) | ~~Scheduled 1/21 – cancelled~~ ~~Scheduled 2/4 – cancelled~~ Scheduled 3/3 | Completed for documents 2017-9/13/2019 Incomplete 9/13/2019-present Documents from 9/13/2019-8/2020 allegingwill be produced  2/26/2021 |
| Steve Hobbiger (30b6 witness) | ~~Scheduled 2/18 – cancelled~~ Needs to be rescheduled | Incomplete all timeframes |
| Jim Harvey (30b6 witness) | ~~Scheduled 2/25 – cancelled~~ Needs to be rescheduled | Incomplete all timeframes |
| Graham Carey Fact witness | Scheduled 3/17 | Incomplete all timeframes |
| Andrew Searle Fact Witness | Scheduled 3/31 | Incomplete all timeframes |
| Steve McNeish (30b6 witness) | Original offered date 3/19 GSK wants to reschedule | Incomplete all timeframes |
| Fred Eshelman Fact Witness | Date requested 1/18 No dates offered | Complete? |
| David McFarlane Fact witness | Date requested 1/18 No dates offered | Complete? |
| Unknown (30b6 sales & marketing) | Original offered date 4/16 GSK wants to reschedule | Unknown |

# Exhibit B

<u>**Timeline Regarding Driver Deposition and Related Discovery**</u>

- **November 25, 2020**: GSK's counsel informed us that it had searched Ms. Driver's custodial file from 2017 to present.
- **December 2, 2020**: GSK produced the first 98 documents from the Leslie Driver custodial file.
- **January 4 and 7, 2021**: Additional Driver productions were made on January 4th and January 7th (***14 days before the scheduled deposition in violation of PTO 54).***
- **January 15, 2021**: counsel for GSK notified Plaintiffs that they ***just learned*** that the regulatory file production was actually incomplete and there were additional documents that would be produced January 18th. It was recommended that the deposition be rescheduled so that Plaintiffs would have an opportunity to review the documents. Plaintiffs agreed to postpone the deposition for two (2) weeks until February 4th.
- **January 18, 2021**: A regulatory production made by GSK.
- **February 2, 2021** at 12:09 am: Less than 48 hours prior to the rescheduled deposition, GSK produced an additional 18,000 pages of regulatory documents.
- **February 2, 2021**, at 4:15 pm, GSK notified Plaintiffs for the first time that it inadvertently failed to run all agreed upon search terms across the custodial files, including key terms like Zantac, Ranitidine, and NDMA. As a result, *all* GSK custodial file productions to date were incomplete[1], including Leslie Driver's. Again, counsel for GSK notified Plaintiffs that the deposition rescheduled for February 4th should be taken down until they could determine how many documents were still to be produced. Plaintiffs agreed.
- In addition, two additional 30(b)(6) depositions (pharmacovigilance and clinical/preclinical) had been scheduled since early December for February 18th and February 25th. GSK notified counsel that those two custodial files would also be impacted and that the combined deficiency in custodial production for these two witnesses was roughly 140,000 documents. GSK requested that these be postponed as well. Plaintiffs did not agree but said they would consider after additional information became available relating to the timing of the additional custodial productions.
- **February 4, 2021**: During a meet and confer with the Special Master, GSK stated that there were approximately 7000 documents from the Leslie Driver custodial file under review.
- **February 8, 2021**: GSK indicated that there were 5472 documents from the Driver custodial file under review AND there were still additional Driver documents tied up in privilege/redaction review from the initial collection based upon the incomplete search terms. Additionally, due to the reported size of the pending custodial productions for the other witnesses, Plaintiffs agreed to postpone the February depositions until the documents were produced.[2]
- Plaintiffs also identified a list of key GSK clinical, regulatory and PV documents, including GSK's NDMA studies and investigation, that had still not been produced (and which are pertinent to the Driver and other scheduled 30(b)(6) depositions). GSK indicated that these documents would be produced as well in advance of the deposition per the Deposition Protocol.

---

[1] Counsel for GSK represented that there were approximately 285,000 documents that would need to be reviewed and produced as a result of this failure to run search terms.
[2] GSK also notified Plaintiffs that the noncustodial productions in these functional categories were incomplete and would also not be completed prior to these depositions.

- **February 17, 2021**: Counsel for GSK notified Plaintiffs via email that the Leslie Driver custodial file was **now complete** with only an *additional 670 documents* having been produced on February 12th. Prior to this, only 273 total custodial documents had been produced for Leslie Driver in December and January. GSK also stated that the regulatory production would be updated by Friday February 19th or early the next week (February 22nd or 23rd).
- Plaintiffs questioned the completeness of the production because of the prior representations that there were between 5000-7000 Driver documents.
- GSK again assured Plaintiffs that the Driver custodial file was complete. ***Based upon these representations***, Plaintiffs agreed to reschedule the deposition for March 3rd.[3]
- GSK and Plaintiffs then had a meet and confer with the Special Master at which point GSK told Plaintiffs that the Driver custodial documents had only been collected until September 13, 2019.
- This was contrary to prior representations by GSK counsel on November 25, 2020, that Ms. Driver's documents were searched from "2017 to present." Plaintiffs were surprised to hear this as the September 13, 2019 would be unlikely to capture highly relevant documents as this date is *before* the GSK global recall of Zantac, the related regulatory inquiries and GSK's investigation of NDMA; and 6 months *before* this MDL was formed and *over a year before* PTO 47 was entered.
- During that call, Plaintiffs were told that Ms. Driver's updated custodial production ***would be completed*** early the following week by Feb. 22-23.
- **February 23, 2021**: Plaintiffs asked about the updated regulatory production as it still was not produced and we needed it immediately for the upcoming March 3rd rescheduled deposition.
- In response, GSK now advised Plaintiffs that the updated regulatory production had not even been reviewed yet but that they had requested it be prioritized along with the Driver updated custodial file post 9/13/2019.
- Plaintiffs notified GSK that this was disappointing as this was completely contrary to what they had been told the prior week.
- Plaintiffs advised GSK that they intended to proceed with the deposition that had now been rescheduled for the 3rd time and requested that the documents be produced by close of business on February 24, 2021 and, if they were not, they would proceed with the deposition as scheduled and request that the witness be produced a 2nd day at GSK's expense and without counting against the soft deposition cap under PTO 54.
- GSK advised that the updated Regulatory production would be produced by close of business on February 24th and that the custodial file would be produced on Friday, if not sooner and both would be "modest in size."
- Further, GSK did not agree to a second deposition.  Plaintiffs thereafter requested that the documents be produced sooner so they could be loaded and reviewed; Ms. Driver's deposition had been rescheduled the third time for March 3rd based upon GSK's representation that the documents would be produced on February 19th or the beginning of the week of February 22nd.

---

[3] We are now over 9 months from when we initially served our notice for this deposition and there are just over 5 months left before August 2. The significance of this delay cannot be underestimated and that's why Plaintiffs began sounding this alarm 6 months ago. GSK is the most "discoverable" Defendant in this litigation, as recognized by them and the Court in PTO 54 which sets "soft cap" of 38 depositions of GSK, double the next largest number.  So, 9 months to get to one deposition with 37 more arguable due in 5 months.  That is not fair to Plaintiffs. By contrast, BI put up its Regulatory witness for deposition on October 30, 2020, and, just recently, because of its delays in production, has agreed to put their witnesses up for a 2nd deposition after production is complete and at their expense.

- In addition, Plaintiffs asked how large the productions were and requested a PTO 32 final meet and confer.
- GSK has indicated that the custodial production would be approximately 1100 documents and would not be produced until Friday February 26, 2021, however the custodial file cut off date was now 8/2020, again a date unilaterally set by GSK.
- **February 25, 2021**: A final meet and confer took place, during which GSK notified Plaintiffs that the custodial files of the upcoming fact witnesses whose depositions are currently scheduled for March 17 and March 31, would not be complete until March 31st so those depositions should be rescheduled for April.
- The dispute is now properly before the Court for resolution.

# Exhibit C



**600 THIRD AVENUE**
**12TH FLOOR**
**NEW YORK, NEW YORK 10016**

TOLL FREE: (888) 480-1123
FAX: (888) 499-1123

www.ChaffinLuhana.com

October 22, 2020

***Sent Via E-Mail***
Will Sachse
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104
will.sachse@dechert.com

***Sent Via E-Mail***
Patrick Oot
Shook, Hardy & Bacon
1800 K Street NW, Suite 1000
Washington, D.C. 20006
oot@shb.com

**Re:**     **Zantac/Ranitidine Litigation – GSK Discovery**

Dear Will and Patrick:

In anticipation of GSK's initial Tranche 1 custodial file productions, Plaintiffs request information regarding the search methodology that you are employing to collect the custodial files.

The ESI Protocol mandates that GSK make reasonable searches for reasonably accessible information in its ESI systems, removable media, and cloud-based accounts. *See In re: Zantac (Ranitidine) Prods. Liab. Litig.,* MDL NO. 2924 (S.D. Fla.), Pretrial Order No. 29 ("ESI Protocol"), VI.1. Further, GSK is required to confer with Plaintiffs' counsel regarding the identification and collection of ESI sources, search methodologies, search terms, dates restrictions, and custodian restrictions, including custodial documents. *Id.* at VI.4-5. The PTO outlines an iterative and cooperative approach, requiring meet and confers between the parties. *Id.* at VI.5.

---

FEBRUARY 26, 2021
PAGE | 2

To this end, for each custodial file that you intend to produce, Plaintiffs request that you provide the below information by October 29, 2020 or immediately schedule a meet and confer to discuss same.

1. <u>Identity and role of custodians</u>.  For each custodian, please identify the dates that they worked for GSK and on Zantac specifically.

2. <u>Data sources</u>.  For each custodian, please identify the specific data sources that you are searching for each custodial file, including but not limited to current or legacy systems.  *Id.* at VI.2. (requires GSK to diligently search the data sources within their custody and/or control to collect responsive and reasonable accessible ESI, including but not limited to: (i) email accounts; (ii) electronic devices; (iii) any other hardware storage devices; (iv) social media; (v) any website where a Party made online postings; and (vi) cloud storage.) Please disclose data sources which you believe will have responsive custodial file information but are no longer active and what steps, if any, you intend to take to reactivate the data source for search and production of relevant discovery.

3. <u>Date restrictions</u>.  For each custodian, please identify the date range that you are conducting the search for and provide the dates that they worked on Zantac as this information is necessary to assess whether GSK is searching an appropriate time frame.  PTO 29 requires that you confer with us regarding date restrictions.  *Id.* at VI.5.

4. <u>Legacy systems</u>. For each custodian, please identify what legacy system(s), if any, GSK is searching for custodial document.  PTO 29 specifically states that your client must perform reasonably diligent searches across all data sources, including sources that are not currently in use.  *Id.* at PTO 29, VI.2.

Please provide the requested information, which comports with Defendant's obligations that are outlined in the ESI Protocol.  Plaintiffs would like to resolve these matters utilizing the iterative process described in PTO 29; however, if GSK intends not to collaborate on these issues, please advise so we may address these issues with the Special Master.

Very truly yours,

Roopal P. Luhana

cc:    Tracy Finken, Esq. (*via* Email)
       Mike McGlamry, Esq. (*via* Email)
       Evan Montgomery, Esq. (*via* Email)
       Valerie Blevins, Esq. (*via* Email)
       Lindsay Cohan, Esq. (*via* Email)

# Exhibit D

**From:** Roopal Luhana
**Sent:** Monday, November 16, 2020 10:24 PM
**To:** Davis, Melissa Nott (SHB) <mndavis@shb.com>
**Cc:** Courtney Griffin <griffin@chaffinluhana.com>; Sachse, Will <will.sachse@dechert.com>; Oot, Patrick
L. (SHB) <OOT@shb.com>; Tracy Finken <tfinken@anapolweiss.com>; Mike McGlamry
<mmcglamry@pmkm.com>; Ricardo Martinez-Cid <RMartinez-Cid@podhurst.com>; Behram Parekh
<behram.parekh@drlawllp.com>; Evan Montgomery <EMONTGOMERY@shb.com>; Roopal Luhana
<Luhana@chaffinluhana.com>

**Subject:** Re: Zantac/Ranitidine Litigation – GSK Discovery

Melissa, thank you for discussing GSK's Tranche 1 custodial file production with our
team on Friday evening.  I wanted to follow-up on what was discussed.

You agreed that you will produce the following information early this week: identified
custodians; dates of GSK employment; and dates custodians worked on
Zantac/Ranitidine products.  Additionally, you agreed that you would provide answers to
the following:

- Data sources you're searching for the Tranche 1 custodians
- Timeline for when GSK began using e-mail.  You provided that GSK currently
  uses Microsoft Exchange, and previously used Lotus Notes.  Please provide
  dates of use for each.
- Email retention and deletion policies during all relevant time frames
- Internal messaging systems GSK used and when.
- Internal messaging retention and deletion policies during all relevant time
  frames.

During Friday's M&C you mentioned that the date restrictions you plan to use for
custodial searches will be based on the custodians' time working on Zantac/ranitidine
products.  We prefer you use the broader timeline based on employment dates.  The
concern, as you raised, is that it is difficult to pinpoint exact dates custodians worked on
Zantac/Ranitidine and therefore we'd want you to liberally apply such timelines based
on employment.  You also stated that, at this time, your team has not identified any
legacy data source systems.  Additionally, the data sources you identified you plan to
search include e-mail, OneDrive, personal share drives, team sites, and team shared
drives.  Please let us know if there are any other sources being searched per my
10.22.20 Letter including e-devices, other hardware storage devices, social media,
cloud storage or any other data sources.  Lastly, you noted that many custodians may
be paper based (e.g., Stan Hall's 1992-1996 tenure).

We look forward to hearing from you this week about the issues referenced above.

Best,
Roopal

# Exhibit E

## Zantac -- Information regarding GSK Custodian ESI

### Davis, Melissa Nott (SHB) <mndavis@shb.com>
Wed 11/25/2020 2:09 PM

**To:** Roopal Luhana <Luhana@chaffinluhana.com>; Courtney Griffin <griffin@chaffinluhana.com>; Tracy Finken <tfinken@anapolweiss.com>; Mike McGlamry <mmcglamry@pmkm.com>; Ricardo Martinez-Cid <RMartinez-Cid@podhurst.com>; Behram Parekh <behram.parekh@drlawllp.com>
**Cc:** Oot, Patrick L. (SHB) <OOT@shb.com>; Montgomery Evan (SHB) <EMONTGOMERY@shb.com>; Blevins, Valerie (SHB) <VBLEVINS@shb.com>; Sachse, Will <will.sachse@dechert.com>; Cohan, Lindsey <Lindsey.Cohan@dechert.com>

Roopal,

I'm writing to respond to your questions regarding the custodian ESI and to follow up on our meet and confer regarding same.

To be clear, these are not the first tranche of custodians, rather these are the only custodians the parties have agreed to. We agreed to produce custodial files by December 31,2020 for 30 of the custodians and for the 8 custodians GSK continues to investigate, we'll produce documents by the end of January 2021 to the extent there are documents to be produced. As we mentioned during our meet and confer, GSK is making its best efforts to meet these agreed to deadlines, however the vagaries of Covid 19 and the current situation in the UK may require us to revisit them.

We do not agree to search a custodian's entire ESI file without regard to when they worked on Zantac. To the extent Plaintiffs have concerns about the date ranges for a custodian identified on the chart, we can address them on a custodian by custodian basis.

As I told you during our meet and confer, GSK intends to search the following sources for the agreed upon custodians: Outlook email (including any available for former employees), OneDrive, employee Personal Share and Hard Drive data, team sites and file share data identified for the custodians. At this time we are not aware of other sources of ESI or legacy sources that would need to be reactivated for any custodian. As we discussed, some of the custodians will have limited ESI based on the dates they were GSK employees and the technology in use at the time.

As we also discussed, to the extent Plaintiffs are concerned about the documents produced for a specific custodian we can meet and confer further regarding the sources of ESI and any retention policies that might impact the available ESI for the specific custodian.

The information for the 30 agreed to custodians is:

| Custodian | Hire Date | Leave Date | Zantac Involvement | ESI Search Date Range |
|---|---|---|---|---|
| Bradshaw, John | | | | 3/22/1999 to 4/19/2002 |
| Brittain, Roy | | | | 1972 to 1990 |
| Carey, Graham | | | | 2015 2019 to present |
| Conner, Ethnie | | | | 2014 to present |
| Curnow, Randall | | | | 12/1/90 to 9/21/95 |
| Driver, Leslie | | | | 2017 to present |
| Eshelman, Fred | | | | 1972 to 1985 1988 to 1990 |

| | |
|---|---|
| Gerding, Thomas | 1984-1993 1996-1998 |
| Harvey, Jim | 2019 to present |
| Hobbinger, Steve | 2009 to present |
| Hull, Stan | 1992-1996 1999-2002 |
| Jack, David | 1972-1987 |
| MacDonald, Gordon | 2012 to present |
| Martin, Leslie | |
| MacFarlane, David | 1981-1989 |
| McGhie, Steve | 2019 to present |
| Mohammed, Hlack | 2019 to present |
| Pipkin, Graham | Under investigation |
| Poynter, Desmond | Under investigation |
| Price, Barry | Under investigation |
| Richards, David | Under investigation |
| Ruvane, Joseph | Under investigation |
| Searle, Andrew | 2010 to present |
| Sirgo, Mark | Under investigation |
| Steel, Helen | 2019 to present |
| Steigrod, Alan | Under investigation |
| Summers, Karen | 1984 to 1987 |
| Whelan, Giuseppe | 2016 to present |
| Wise, Peter | Under investigation |
| Wood, John | 1983 to 2000 |

REDACTED

Of the 8 custodians GSK continues to investigate, we have the following information to share:

| Custodian | Hire Date | Leave Date | Zantac Involvement | ESI Search Date Range |
|---|---|---|---|---|
| Daly, Jim | | | | Under investigation |
| Dixon, Jon | | | | 1987-1992 |
| Mills, Jane | | | | 1986 to 2001 |

REDACTED

As you can see from the chart, many of these custodians were with the company a very long time ago and the likelihood of there being ESI for them is remote. We have been looking for hard copy files for

them separately. For some custodians we have used their entire time they were with the company where their tenure was shorter and we have not determined their Zantac involvement timeline.

You also asked when GSK began using Microsoft office as an email program. By 1999 Glaxo Wellcome standardized its email system on Microsoft Exchange. In 2002 Glaxo Wellcome began migrating to Lotus Notes, version 5; the migration was completed in 2004. In 2009-2010 GSK transitioned to Office 365, its current email system.

We will continue to move forward with collecting the ESI for these custodians based on the dates of Zantac involvement we have identified for each custodian . Where we are still investigating, we'll provide additional information when we have it.

Have a safe and happy Thanksgiving.


**Melissa Nott Davis**
*Of Counsel*
Shook, Hardy & Bacon L.L.P.

o: 617-531-1673 | cell: 617-697-0137 | [mndavis@shb.com](mailto:mndavis@shb.com)



CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited . If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

# Exhibit F

## Fw: Call with GSK re Search Terms, Custodial Files and Depositions

Roopal Luhana  <Luhana@chaffinluhana.com>

Thu 2/25/2021 4:55 PM

**To:** Courtney Griffin <griffin@chaffinluhana.com>

@ 1 attachments (87 KB)

GSK Custodian Production Information Provided to Plaintiffs 2.4.2021.pdf;

---

**From:** Davis, Melissa Nott (SHB) <mndavis@shb.com>
**Sent:** Thursday, February 4, 2021 9:53 PM
**To:** Roopal Luhana <Luhana@chaffinluhana.com>; Egli, Gabe (SHB) <GEGLI@shb.com>; Tracy Finken <tfinken@anapolweiss.com>; Mike McGlamry <mmcglamry@pmkm.com>; Eric Chaffin <chaffin@chaffinluhana.com>; Oot, Patrick L. (SHB) <OOT@shb.com>; Sachse, Will <will.sachse@dechert.com>; Dave Stanoch <d.stanoch@kanner-law.com>
**Subject:** RE: Call with GSK re Search Terms, Custodial Files and Depositions

Following up on our meet and confer today, we have attached a chart containing information regarding the GSK custodians for whom we have produced documents to date. We have included information regarding the hit counts for the provisional terms within the date range and included the families. The GSK review team is reviewing that set now.

Also, we have a total of 101 reviewers assigned so far.  We have 53 now, 16 starting tomorrow and 32 on Monday.

Please let us know if you would like to discuss this before our 10am status conference.

**Melissa Nott Davis**

*Of Counsel*

Shook, Hardy & Bacon L.L.P.

o: 617-531-1673 | cell: 617-697-0137

-----Original Appointment-----
**From:** Oot, Patrick L.(SHB)<00T@shb.com> **On Behalf Of** Roopal Luhana
**Sent:** Thursday, February 4, 2021 2:28 PM
**To:** Egli, Gabe (SHB); Davis, Melissa Nott (SHB)
**Subject:** FW: Call with GSK re Search Terms, Custodial Files and Depositions
**When:** Thursday, February 4, 2021 3:00 PM-4:00 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:**

-----Original Appointment-----
**From:** Roopal Luhana <Lyhana@chaffinluhana.com>
**Sent:** Thursday, February 4, 2021 10:19 AM
**To:** Roopal Luhana; Tracy Finken; Mike McGlamry; Eric Chaffin; Oot, Patrick L. (SHB); Sachse, Will; Dave Stanoch

**Subject:** Call with GSK re Search Terms, Custodial Files and Depositions
**When:** Thursday, February 4, 2021 3:00 PM-4:00 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:**

**EXTERNAL**

Roopal Luhana is inviting you to a scheduled Zoom meeting.

Topic : Call with GSK re Search Terms, Custodial Files and Depositions
Time: Feb 4, 2021 03:00 PM Eastern Time {US and Canada)

Join Zoom Meeting
https://us02web.zoom.us/j/81298698894?pwd=NEZxMkNXb0plTXIHN09zM3NCUXpudz09

Meeting ID: 812 9869 8894
Pass code: 378588
One tap mobile
+16465588656,,81298698894#,,,,*378588# US (New York)
+13017158592,,81298698894#,,,,*378588# US (Washington DC)

Dial by your location
+1 646 558 8656 US (New York)
+1301 715 8592 US (Washington DC)
+1 312 626 6799 US {Chicago)
+l  253 215 8782 US (Tacoma)
+1346 248 7799 US (Houston)
+1669 900 9128 US (San Jose)
Meeting ID: 812 9869 8894
Passc ode: 378588
Find your local number: https://us02web.zoom.us/u/kmw5U3uZy

| Custodian | Date of Departure | ESI Date Range Searched | Documents Produced as of 2/3/21 | Documents in Priv/Redaction Review | Expected Production Date for Priv/Redaction Documents | Provisional Terms with Date Range and Families |
|---|---|---|---|---|---|---|
| Bradshaw, John | REDACTED 2 | 3/22/1999 to 4/19/2002 | 0 | Yes | 2/5/2021 | 455 |
| Brittain, Roy | REDACTED | No ESI | 0 | Yes | 2/5/2021 | No |
| Carey, Graham | | 9/1/1985 to 9/13/2019 | 143 | Yes | 2/19/2021 | 44,136 |
| Conner, Ethnie | | 8/13/1990 to 9/13/2019 | 290 | Yes | 2/19/2021 | 30,570 |
| Cook, John (Plaintiffs' J Cook?) | | No ESI | 0 | No | n/a | No |
| Curnow, Randall | | No ESI | 0 | No | n/a | No |
| Daly, Jim | | No ESI | 707 | Yes | 2/12/2021 | No |
| Dixon, Jon | | 1/1/1987 to 12/31/1992 | 0 | No | n/a | 417 |
| Driver, Leslie | | 1/1/2017 to 9/13/2019 | 237 | Yes | 2/12/2021 | 5,472 |
| Eshelman, Fred | | No ESI | 91 | Yes | 2/12/2021 | No |
| Gerding, Thomas | | 10/1/1983 to 1/8/2010 | 9 | Yes | 2/12/2021 | 428 |
| Harvey, Jim | | 1/1/2019 to 9/13/2019 | 1,912 | Yes | 2/19/2021 | 73,518 |
| Hobbiger, Steve | | 1/1/2009 to 9/13/2019 | 516 | Yes | 2/19/2021 | 12,154 |
| Hull, Stan | | 1/1/1992 to 12/31/1996 1/1/1999 to 9/13/2019 | 3,073 | Yes | 2/19/2021 | 3 |
| Hunt, John H. | | No ESI | 0 | No | n/a | No |
| Jack, David | | No ESI | 0 | No | n/a | No |
| Lewis, James | | No ESI | 0 | No | n/a | No |
| MacDonald, Gordon | | 9/6/1999 to 9/13/2019 | 126 | Yes | 2/19/2021 | 28,020 |
| MacFarlane, David | | No ESI | 0 | Yes | 2/12/2021 | No |
| Martin, Leslie E. | | No ESI | 0 | No | n/a | No |
| McGhie, Steve | | 1/1/2019 to 9/13/2019 | 238 | Yes | 2/12/2021 | 2,598 |
| McIsaac, Richard | | No ESI | 0 | No | n/a | No |
| Mills, Jane | | No ESI | 0 | No | n/a | No |
| Mohammed, Hlack | | 6/14/1993 to 9/13/2019 | 71 | Yes | n/a | 16,362 |
| Pick, CR | | 6/3/1974 to 6/31/2007 | 0 | No | n/a | 192 |
| Pipkin, Graham | | No ESI | 6 | No | n/a | No |
| Poynter, Desmond | | No ESI | 0 | No | n/a | No |
| Price, Barry | | No ESI | 0 | No | n/a | No |
| Richards, David | | 7/10/1989 to 1/4/2010 | 0 | Yes | 2/12/2021 | 208 |
| Ruvane, Joseph | | No ESI | 11 | Yes | 2/12/2021 | No |
| Searle, Andrew | | 9/13/1992 to 9/13/2019 | 1,276 | Yes | 2/12/2021 | 19,586 |
| Sirgo, Mark | | No ESI | 250 | Yes | 2/12/2021 | No |
| Steel, Helen | | 10/1/1992 to 9/13/2019 | 47 | Yes | 2/12/2021 | 4,997 |
| Steigrod, Alan | | No ESI | 50 | Yes | 2/12/2021 | No |
| Summers, Karen | | No ESI | 0 | No | n/a | No |
| Sutherland, MF | | No ESI | 0 | No | n/a | No |
| Whelan, Giuseppe | | 9/29/1997 to 9/13/2019 | 32 | Yes | 2/12/2021 | 14,917 |
| Wise, Peter | | No ESI | 45 | No | 2/12/2021 | No |
| Wood, John | | No ESI | 0 | No | n/a | No |

# Exhibit G

MEMORANDUM

DATE: October 9, 2020

RE: Memorialization of Agreement re Custodial Search Terms & First Tranche of Custodians Between Plaintiffs and GlaxoSmithKline, LLC per Amended PTO No. 47

Pursuant to Amended PTO No. 47, the Plaintiffs and GlaxoSmithKline, LLC ("GSK") (collectively, "the Parties") have met and conferred on the issue of search terms and custodians, and have agreed to the following:

**Search Terms:**

- As stated in PTO 29, the compromises and negotiations regarding key word searching should not be used to evidence practices by GSK in any future litigation.  "The Court also expressly emphasizes that in light of these unique circumstances, not only should this Protocol not be taken to bind any Party here to these or similar provisions in future litigation, but it cautions that the provisions here were negotiated by the Parties in light of the very unique circumstances of this Litigation and thus may not be well-suited to other litigations."

- We will select a set of custodians to run search terms on.  Those "Test Custodians" will be dependent on negotiations underway between Will and Tracy and (of course) actual custodial ESI inventory. For example, as we discussed, it is unlikely custodial ESI exists from the 90s.  The parties will meet and confer to assure that the "Test Custodians" will be representative in number and custodian type/functionality and an appropriate sample to use for the search term process.  The parties will choose the "Test Custodians" by October 13 provided that GSK provide the size of the custodial files and time frame they cover including the specific time frame each Custodian worked on Zantac.  The parties, however, recognize that as custodians change the operation of the proposed search terms will vary and recognize the need to make adjustments going forward.  Further, the parties recognize as additional information becomes available as discovery continues, the Parties can work together and agree to add, subtract or refine search terms and queries.  Per the ESI Protocol, this is meant to be an iterative and cooperative process.

- In our 9/18 letter, we described GSK's anchor and issue search term process; Plaintiffs have countered with a list of standalone terms and a separate list of terms with modifiers ("Plaintiffs'

1

Set"). In an effort to compromise and start the custodial review, GSK will run its own proposed search terms and Plaintiffs' Set against the Test Custodians with the respective set of Search Terms. We understand that Plaintiffs are still refining that set with other Defendants and would want Plaintiffs' further input on that as well – in other words, GSK would like the benefit of the refinement work of search terms completed by Plaintiffs and the other Parties but understand it is differently situated then the other Defendants and different search terms may be applicable to it than other Defendants. GSK has reviewed Plaintiffs' standalone terms and will confirm these by October 16th; GSK will use its best efforts to ensure that the data for the Test custodians can be processed and searchable in time and the parties agree to extend the deadline if necessary despite best efforts. The parties will come to an agreement on the final search terms, the remaining terms with modifiers, by October 19.

- If GSK identifies terms or queries that lack precision, GSK will provide plaintiffs' the requested keyword search term hit reports for the terms or queries lacking precision, the Parties will meet and confer to refine the search terms to resolve the issue. If search terms are found to be ineffective at capturing the requested information, whether it is due to lack of substantial document hits or false hits, GSK will alert Plaintiffs and the Parties will meet and confer to modify the search terms or queries as deemed necessary. The Parties will also meet and confer regarding the appropriateness and process of sampling for the document set that do not hit on the search terms. For search terms and queries lacking agreement or those terms and queries that have less than 50 hits, GSK will provide hit count reports by October 14 for the standalone terms and terms with modifiers and additional hit count reports once Plaintiffs refine above by October 15 that include:
    - the number of documents that hit on each term;
    - the number of unique documents that hit on each term (docs that hit on a particular term and no other term on the list); and
    - the total number of documents that would be returned by using the proposed search term list, including families (and without families).

- The Parties will meet and confer in good faith before October 16 to refine the terms further with the intent of running the standalone terms and terms with modifiers against GSK's custodial files. In the event the dispute cannot be resolved regarding specific search terms and queries by October 19, discovery dispute procedures apply.

- In the event that the Parties disagree on certain search terms by October 16, that disagreement will not delay the document review process. Review for relevance, confidentiality and privilege can continue on agreed terms to develop preliminary production sets while the parties continue to refine the documents eligible for review and the subset identified for production.

- GSK will continue to undertake efforts to isolate responsive and non-responsive documents in the search set that will improve the precision of the search terms and will discuss those efforts with Plaintiffs. We anticipate that continued discussion down the line. Once the custodial document review starts and we have a better understanding of the documents, we may identify documents that are irrelevant and will confer with Plaintiffs and agree on the best pathway to address those upcoming document sets which may include Plaintiffs proposing modifications to the search terms and queries. The parties agree that it is the intent of the parties to review search term hit documents, parent e-mail messages and family member documents in responsive families identified by the search terms and queries in their entirety for relevance, confidentiality and privilege. There may be instances where documents can be evaluated categorically for relevance, confidentially and privilege and those currently unknown categories do not need review. In such instances, GSK will identify for Plaintiffs how the categorical evaluation is being conducted and the parties will meet and confer to discuss and agree on the appropriateness of it. As stated above, the parties recognize as additional information becomes available as discovery continues, the Parties can work together identify these categories. Per the ESI Protocol, this is meant to be an iterative and cooperative process.

**Custodians:**

During the week of October 5, 2020, counsel for Plaintiffs and counsel for GSK met and conferred several times to discuss custodial file production. The Parties exchanged initial lists of proposed custodians in accordance with the instructions set forth in PTO No. 47. The combined lists totaled 50 custodians, including 12 current employees proposed by GSK as having historic or recent involvement in Zantac-related issues and 38 former employees that Plaintiffs believe had significant involvement with Zantac in the 1980's and early 1990's. Counsel for GSK explained that with respect to former employees, GSK is unlikely to have traditional "custodial files" that would include electronic data/emails and correspondence, and that the archived GSK documents are not organized by "custodian." Rather, GSK could look for archived documents that are reasonably likely to include hard-copy documents associated with a particular custodian. The Parties agreed that it made sense to gather additional preliminary information and continue

the discussion.  The Parties agreed to a general principle of reasonableness and ongoing communication with respect to custodial identification and file production.  The Parties will work together to use a "funnel down" approach that targets additional custodians in the relevant areas.  At the same time, should investigation disclose that GSK is unlikely to have responsive archived documents for a requested custodian in a particular subject area, the Parties will use a flexible and cooperative approach to determine whether the parties can substitute another custodian in the same relevant area.

After investigation, GSK informed Plaintiffs that 12 of the 50 potential custodians do not appear to have custodial documents based upon a preliminary search of the indices of archival documents.  This table identifies the status of GSK's custodial investigation.

| No. | Custodian | Status | No. | Custodian | Status |
|-----|-----------|--------|-----|-----------|--------|
| 1 | Ainge, G | No hits | 26 | Pick, CR | Investigating |
| 2 | Bradshaw, John | Hits | 27 | Poynter, Desmond | Hits |
| 3 | Brittain, Roy | Hits | 28 | Price, Barry | Hits |
| 4 | Carey, PF | No hits | 29 | Richards, David | Hits |
| 5 | Clitherow, John | No hits | 30 | Ruvane, Joseph | Hits |
| 6 | Collin, David T. | No hits | 31 | Sirgo, Mark | Hits |
| 7 | Cook, J | Investigating | 32 | Sisto, Frank | No hits |
| 8 | Curnow, MD Randall | Hits | 33 | Spurling, Neville W. | No hits |
| 9 | Daly, Mike | No hits | 34 | Steigrod, Alan | Hits |
| 10 | Eshelman, Fred | Hits | 35 | Sutherland, MF | Investigating |
| 11 | Gatehouse, David | No hits | 36 | Tanner, RW | No hits |
| 12 | Gerding, Thomas | Hits | 37 | Wise, Peter | Hits |
| 13 | Harcourt, RA | No hits | 38 | Carey, Graham | Current employee |
| 14 | Hull, Stan | Hits | 39 | MacDonald, Gordon | Current employee |
| 15 | Hunt, John H. | Investigating | 40 | McGhie, Steve | Current employee |
| 16 | Jack, David | Hits | 41 | Whelan, Giuseppe | Current employee |
| 17 | Lewis, James | Investigating | 42 | Conner, Ethnie | Current employee |
| 18 | Martin, Leslie E. | Hits | 43 | Driver, Leslie | Current employee |
| 19 | McFarlane, David | Hits | 44 | Hobbinger, Steve | Current employee |
| 20 | Cholerton, Trevor | No hits | 45 | Steel, Helen | Current employee |
| 21 | Harvey, Jim | Current employee | 46 | Dixon, Jon | Investigating (current) |
| 22 | Mohammed, Hlack | Current employee | 47 | McIsaac, Richard | No hits |
| 23 | Searle, Andrew | Current employee | 48 | Mills, Jane | Investigating |
| 24 | Summers, Karen | Hits | 49 | Pipkin, Graham | Hits |
| 25 | Daly, Jim | Investigating | 50 | Wood, John | Hits |

GSK committed to produce 30 custodial files by December 31, 2020.  Plaintiffs and GSK agree that GSK will continue to investigate the reasonable likelihood that custodial materials exist for the individuals on the combined list, with the understanding that if custodial file materials are reasonably likely to exist for all 38 custodians, GSK will produce relevant documents from 30 custodial files by December 31, 2020 and relevant documents from  the other 8 in January 2021.  The Parties agreed that they would continue to meet and confer regarding the combined list and the results of GSK's investigation on the existence of custodial materials for individuals on the combined list.