### IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

IN RE:  ZANTAC (RANITIDINE)                                    MDL NO. 2924

PRODUCTS LIABILITY                                            20-MD-2924

LITIGATION

JUDGE ROBIN L. ROSENBERG

MAG. JUDGE BRUCE REINHART


THIS DOCUMENT RELATES TO ALL CASES

---

### GENERIC DEFENDANTS' RESPONSE TO THE
### MARCH 9, 2021, ORDER TO SHOW CAUSE

---

## <u>TABLE OF CONTENTS</u>

**Page**

I.   BACKGROUND ..................................................................................................... 2

    A.   The January Generic Discovery Agreement Precluded Discovery on Topics Performed by Foreign Affiliates .............................................................................. 2

    B.   Plaintiffs' Conduct Confirms that the Generic Defendants Did Not Need to Provide a Date for a Deposition on Manufacturing if the Company Did Not Manufacture Ranitidine ............................................................................................. 4

    C.   Crafting Pretrial Order 60 to Capture the Generic Discovery Agreement ............... 5

    D.   Plaintiffs Rush to a Pretrial Order 32 Hearing ........................................................ 7

II.   CERTAIN PARTIES SUBJECT TO THIS COURT'S ORDER TO SHOW CAUSE .......... 8

    A.   APUI ...................................................................................................................... 8

    B.   Apotex Corp. .......................................................................................................... 9

    C.   Aurobindo U.S. Entities ......................................................................................... 10

    D.   Granules ................................................................................................................ 11

    E.   Heritage ................................................................................................................. 12

    F.   Sun Pharmaceuticals ............................................................................................. 13

    G.   Torrent ................................................................................................................... 14

    H.   Wockhardt ............................................................................................................. 15

III.   THE GENERIC DEFENDANTS' CONDUCT DOES NOT WARRANT A FINDING OF CONTEMPT OR SANCTIONS ...................................................................................... 16

    A.   The Generic Defendants' Understanding of Pretrial Order 60 Was Reasonable ... 17

    B.   The Generic Defendants Did Not Willfully Disregard the Court's Authority ....... 18

IV.   CONCLUSION .................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*,
 2004 WL 7340355 (S.D. Fla. Feb. 27, 2004), *report and recomm. adopted*,
 2004 WL 7340357 (S.D. Fla. Mar. 17, 2004) .........................................................................19

*E&C Copiers Exp. Imp. Corp. v. Arizas Fotocoiadoras S.A.S.*,
 2017 WL 10186603 (S.D. Fla. Dec. 29, 2017) ......................................................................18

*E&C Copiers Exp. Imp. Corp. v. Arizas Fotocopiadoras S.A.S.*,
 2017 WL 10186627 (S.D. Fla. Nov. 8, 2017) .........................................................................18

*EEOC v. Guardian Pools, Inc.*,
 828 F.2d 1507 (11th Cir. 1987) .............................................................................................18

*Georgia Power Co. v. NLRB*,
 484 F.3d 1288 (11th Cir. 2007) .......................................................................................16, 17

*Guimaraes v. NORS*,
 366 Fed. Appx. 51 (11th Cir. 2010) .......................................................................................18

*Jordan v. Wilson*,
 851 F.2d 1290 (11th Cir. 1988) .............................................................................................16

*McGregor v. Chierico*,
 206 F.3d 1378 (11th Cir. 2000) .............................................................................................16

*NLRB v. Crockett-Bradley, Inc.*,
 598 F.2d 971 (5th Cir. 1979) .................................................................................................16

*Smith Barney, Inc. v. Hyland*,
 969 F. Supp. 719 (M.D. Fla. 1997), *aff'd*, 148 F.3d 1070 (11th Cir. 1998) ...........................18

*Tivo, Inc. v. Echostar Corp.*,
 646 F.3d 869, 882 (Fed. Cir. 2011)), *report and recomm. adopted*, 2014 WL
 12495257 (S.D. Fla. June 13, 2014) ......................................................................................18

*Tracfone Wireless, Inc. v. Technopark Co.*,
 313 F.R.D. 680 (S.D. Fla. 2016) ............................................................................................17

*Ultimate Combustion Co. v. Fuecotech, Inc.*,
 2014 WL 12493339 (S.D. Fla. May 6, 2014) ....................................................................18, 19

*United States v. Samaniego*,
 345 F.3d 1280 (11th Cir. 2003) .............................................................................................18

ii

*United States v. Straub,*
    508 F.3d 1003 (11th Cir. 2007) ............................................................................17

Defendants Ajanta Pharma USA Inc. ("APUI"), Apotex Corp. ("Apotex"), Aurobindo Pharma USA, Inc. and Aurohealth LLC ("Aurobindo U.S. Entities"), Granules USA, Inc., Heritage Pharmaceuticals, Inc. ("Heritage"),[1] Ranbaxy Inc., Sun Pharmaceuticals Industries, Inc. f/k/a Ranbaxy Pharmaceuticals Inc., and Taro Pharmaceuticals USA Inc. ("Sun Pharmaceuticals"), Torrent Pharma Inc. ("Torrent"), and Wockhardt USA LLC and Wockhardt USA, Inc. ("Wockhardt USA") (collectively "Generic Defendants") submit this response to the Court's March 9, 2021, *sua sponte* Order to Show Cause.

The Generic Defendants should not be held in contempt and sanctions are not warranted for the following reasons:

- There was no "non-compliance" with Pretrial Order 60, pursuant to its plain language;

- The Generic Defendants did not intend, at any time, to violate Pretrial Order 60, nor did they believe they were doing so; instead, the Generic Defendants believed they were appropriately complying with the Court's dispute resolution procedures by seeking protection relating to the deposition after Plaintiffs disputed the Generic Defendants' position on the manufacturing 30(b)(6) notice;

- Plaintiffs stated that they understood that the Generic Defendants would not provide witnesses for subjects outside their business operations—such as manufacturing—when that business function is performed instead by a foreign entity that is not yet subject to the Court's jurisdiction or is challenging that jurisdiction, and the Generic Defendants relied upon Plaintiffs' acknowledgements;

- Plaintiffs have suffered no prejudice by the delay of only a few days of having received dates for depositions that are scheduled for more than two months away; and,

- The Generic Defendants have not engaged in a pattern of noncompliance and total disregard of the court's pretrial orders and deadlines.

For these reasons, the Generic Defendants respectfully state that there has been no violation of Pretrial Order 60, they should not be held in contempt, and sanctions are not warranted.

---

[1] Heritage Pharma Labs Inc. was improperly included by Plaintiffs in their March 8 notice to the Court. On September 11, 2020, the Court granted the Plaintiffs' Unopposed Motion to Drop Heritage Pharma Labs Inc. from the Master Complaints. *See* Docket Entry ("DE") 1732. Heritage Pharma Labs Inc. therefore had no obligations under PTO 60.

## I. BACKGROUND

### A. The January Generic Discovery Agreement Precluded Discovery on Topics Performed by Foreign Affiliates

Before there was Pretrial Order 60 (DE 2877), the parties engaged in meaningful and detailed negotiating sessions about how discovery as to the Generic Defendants would be conducted. Ultimately, the parties came to an agreement, referred to as the Generic Discovery Agreement ("Agreement"). The Agreement was meant to address the tension arising from Plaintiffs' desire to begin scheduling depositions of corporate witnesses and the Generic Defendants' position that, at that time, no claims were pending against them because Plaintiffs' master pleadings had been dismissed and amended pleadings had not yet been filed.

The Generic Defendants engaged in nearly thirty hours of discussions with Plaintiffs over the last two weeks in January about the timeline and intended circumstances of depositions, while knowing very little about Plaintiffs' claims or intended deposition topics. There is no dispute that the Generic Defendants were essentially blind to key facts and what Plaintiffs would allege in the amended master pleadings (or that Plaintiffs intended to file appeals of certain of the Court's dismissal orders). Plaintiffs did not disclose the claims they would attempt to plead in their amended pleadings or the topics they intended to list for depositions. The Generic Defendants asked for that information (repeatedly), which Plaintiffs refused to provide, and Plaintiffs did not provide a proposed notice of deposition relating to manufacturing at that time. Nonetheless, the Generic Defendants recognized the importance of assisting Plaintiffs in moving the case forward and engaged in these discussions in good faith.[2]

In this information vacuum, the Generic Defendants nonetheless explained to Plaintiffs that the "generic" parties were uniquely positioned and may not have witnesses on every discovery subject. While Plaintiffs were undoubtedly well-versed on their discovery issues after having made progress with the four brand defendants, the Generic Defendants were much different, not just in size (and legal obligations) but in business operations. In response to these concerns, Plaintiffs assured the Generic Defendants that: (i) they would work with each Generic Defendant regarding which topics applied and which did not; and (ii) they had no intention of wasting their own time

---

[2] Counsel for Apotex Corp., Terry M. Henry, was lead negotiator for the Generic Defendants during those discussions, and his Declaration at Exhibit A, with attachments, supports these factual assertions.

taking depositions on subjects about which the company has no knowledge. The Generic Defendants relied upon these assurances.

The Agreement contained two provisions that reflected the parties' understanding that a Generic Defendant may not produce witnesses on topics that are not within its business operations. *See* T. Henry Decl., Ex. A, Tab 1.

First, the parties agreed that deposition topics would have to be ***applicable*** to each Generic Defendant:

> Nothing in this agreement precludes plaintiffs and individual Generic Manufacturers from agreeing to schedule depositions in an order and **on topics applicable to the individual Generic Manufacturer**.

Agreement, Ex. A, Tab 1, ¶ 5(e) (emphasis added).

Second, the Agreement acknowledged that some entities that Plaintiffs named in their first complaints were foreign companies that had challenged jurisdiction but were affiliated with U.S. entities. Some foreign affiliates had manufactured finished drug product, which was then distributed by a Generic Defendant in the United States. Therefore, the Agreement expressly stated that it did not apply to foreign affiliates challenging jurisdiction, and—more importantly—**the Generic Defendants would not have to respond to** *any discovery*, including deposition notices, on topics that fall within the role of the foreign affiliates:

> This agreement on scheduling of depositions **does not apply to those foreign defendants not subject to this court's jurisdiction**. Specifically, the Generic Manufacturers that fall outside of this agreement are those that have moved the court for dismissal for lack of personal jurisdiction, on whom plaintiffs have not yet formally served the summons and complaint on the foreign affiliate, or whose foreign affiliates have been dropped by agreement from the master complaints without a stipulation as to participation in discovery. **Generic Manufacturers with foreign affiliates not subject to the court's jurisdiction will not be required to respond to written discovery or deposition notices on topics that fall within the role of their foreign affiliate.**

Agreement, Exhibit A, Tab 1, ¶ 6 (emphasis added). These two provisions confirmed the parties' agreement and commonsense understanding that, for example, a Generic Defendant that did not manufacturer ranitidine would not have to identify, prepare, or present a witness to be deposed on the issue of manufacturing or even otherwise respond to written discovery on that point.

Even though the Agreement contained this express language, counsel for Apotex Corp. also conveyed these understandings to the Generic Defendants on several occasions. For one example, following a long weekend of negotiations over the Agreement's terms, on Monday,

3

January 25, 2021, counsel for Apotex Corp. reported to all Generic Defendants that the Agreement was nearly finalized and provided detailed information on many of the provisions, including specifically addressing the two paragraphs cited above (paragraphs 5(e) and 6), because of their importance to non-manufacturing Generic Defendants. In addition, counsel for Apotex Corp. hosted a telephone conference on January 26, 2021 to answer specific questions from the Generic Defendants about the Agreement. During that call, Apotex's counsel confirmed the agreement reached with Plaintiffs—that, as outlined in the Agreement, as an example, non-manufacturing Generic Defendants would not be required to present a witness on manufacturing issues. Following these group discussions and others with individual Generic Defendants, the entire Generic Defendants defense group consented to entry into the Agreement.

**B. Plaintiffs' Conduct Confirms that the Generic Defendants Did Not Need to Provide a Date for a Deposition on Manufacturing if the Company Did Not Manufacture <u>Ranitidine</u>**

In accordance with the Agreement and just days after it was finalized, on January 29, 2021, Plaintiffs provided three 30(b)(6) deposition notices on January 29, 2021, which were deemed served as of February 9, 2021. *See* Ex. A, Tabs 2-4. Those deposition notices were directed to each "Generic Family" and were titled with three different categories: storage and transportation; pharmacovigilance; and manufacturing. Under the Agreement, the parties were to provide dates to Plaintiffs on or before February 28 for depositions under these three notices.

On February 10, 2021, nearly three weeks before it was required to do so under the Agreement, counsel for Apotex advised Plaintiffs by email that it could produce witnesses on storage and transportation on April 27 and 29 and on pharmacovigilance on May 20. Apotex's counsel also advised Plaintiffs that it did not have a witness to testify on manufacturing: "Because Apotex Corp. is not involved in either API or [finished drug product] manufacturing, it has no one to speak on those topics." February 10, 2021 email thread, Ex. A, Tab 5. In response, Plaintiffs' counsel indicated this would be acceptable: "we will be happy to discuss scope applicable and specific to your client." Ex. A, Tab 5. This communication, in conjunction with statements made during the Agreement negotiations, confirmed the understanding that Plaintiffs had no objection to Generic Defendants not presenting witnesses on topics beyond their business operations.

As other Generic Defendants planned for providing deposition dates under the Agreement, several called counsel for Apotex directly for questions or guidance. When a non-manufacturing Generic Defendant questioned whether it was required to provide a manufacturing date, Counsel

for Apotex would refer to paragraphs 5(e) and 6 of the Agreement, and the February 10 email response from Plaintiffs.

**C.  Crafting Pretrial Order 60 to Capture the Generic Discovery Agreement**

In mid-February, the Generic Defendants were advised that the Court wanted the Generic Discovery Agreement reduced to a Pretrial Order. This effort required additional time and negotiations between the parties. The parties again discussed the Generic Defendants' right to not present witnesses on topics beyond their business operations. Plaintiffs signaled their acceptance of this position by proposing language in a draft of the Pretrial Order. Plaintiffs' counsel sent to Generic Defendants a revised draft of the Pretrial Order on February 17, 2021, where Plaintiffs acknowledged that some of the deposition topics would not apply to every Generic Defendant:

> Therefore, even after following the procedure set forth in Section II.C.1 the deposition notices may still include certain topics to which some **do not apply to** Generic Manufacturer Defendants cannot respond. By way of example, **not every Generic Defendant manufactured API. In that instance, the Generic Defendant will notify Plaintiffs in writing no later than February 28, 2021 if there are any topics which may be inapplicable to that Generic Defendant. This will allow both Plaintiffs and Defendants to appropriately prepare for the deposition.**

February 17, 2021 email thread and attached redlines, Ex. A, Tab 6, § III.A (red bolded text and strikethroughs represent plaintiffs' revisions). Through the many iterations of negotiations, this language did not survive to the final version, but it demonstrates that at least until February 17, 2021, Plaintiffs' understanding of the parties' agreement was the same as the Generic Defendants'.[3]

---

[3] When Plaintiffs appeared to suggest they would alter the parties' prior agreement and would demand that the Generic Defendants provide witnesses on topics a party did not perform, the Generic Defendants noted this and explained the burdens with Plaintiffs' new demand:

> This is problematic and runs counter to our negotiations over the last several weeks and runs counter to agreed upon terms in our prior agreement that are set forth in this draft Pretrial Order. See II.C.2 (e) above. [provision mirroring Agreement at 5(e)]
>
> *          *          *
>
> Preparing and presenting a witness just to confirm a generic is not covered by certain topics actually increases the burden on generics, it does not relieve the burden.

February 22, 2021 email thread and attached redline, A14, Ex. A, Tab 7, p. 8, comment. Plaintiffs never responded to this email, leading to the conclusion that they accepted these propositions, as they had before.

While Plaintiffs' position may have waivered (although never explicitly), the final version of the Pretrial Order, later entered by the Court as Pretrial Order 60, contained three provisions that provided flexibility to the Generic Defendants to not identify a date for witnesses on topics beyond their business operations.

First, Pretrial Order 60 reiterated the agreement that Plaintiffs would pursue only those topics that are applicable to an individual Generic Defendant—adopted nearly word-for-word from paragraph 5(e) of the Generic Discovery Agreement:

> Nothing in this agreement precludes Plaintiffs and individual Generic Manufacturer Defendants from agreeing to schedule depositions at an earlier date, in a different sequence, or **on a narrower set of topics applicable to the individual Generic Manufacturer Defendant**.

DE 2877, Pretrial Order 60, § II.C.2(e) (emphasis added).

Second, Pretrial Order 60 preserved the protections afforded to foreign affiliates challenging the Court's jurisdiction, in that the foreign affiliate is separate from any related U.S. entity and would not be subject to this discovery:

> As to all other foreign affiliates who are now or were previously named as Defendants in any Master Complaint in the MDL Proceedings, **the parties have indicated to the Court their agreement that the obligations of Generic Manufacturer Defendants with respect to the foreign affiliates shall be treated as though the foreign affiliate was an independent corporation for purposes of this Order.** This agreement shall not act as a waiver of Plaintiffs' arguments or position regarding the U.S. entities and foreign affiliates relating to jurisdiction, however in the interest of moving initial discovery and depositions forward, Plaintiffs have agreed to this compromise. Alternatively stated, the existence of an affiliation shall neither expand nor limit the obligations of Generic Manufacturer Defendants under the Federal Rules of Civil Procedure. Thus, to the extent the U.S. entity has responsive documents or information from or about the foreign affiliate within its possession, custody, or control, it will be provided consistent with its obligations to provide responsive information in accordance with the Federal Rules of Civil Procedure. This agreement is for a limited purpose. Therefore, the agreement and provision extend only to the discovery specified in this Order. **The Court adopts this understanding between the parties into this Order** to aid in clarifying the obligations of these foreign Generic Manufacturer Defendants.

*Id*. at § I.B.2 (emphasis added).  The Generic Defendants understood the phrase—"The Court adopts the understanding between the parties into this Order"—as carrying into Pretrial Order 60 that part of the Generic Discovery Agreement that a Generic Defendant was not required to respond to deposition notices on topics that fall within the role of their foreign affiliate or other

third party. This had always been the parties' understanding and had not been explicitly rejected by Plaintiffs.

Finally, Pretrial Order 60 confirmed that a Generic Defendant could object to the notices "as it applies to" that Generic Defendant—such as, by not providing a deponent on operations (like manufacturing) that are outside of the company's business:

> The notices served as referenced in Section II.A.2. of this Order, with any changes agreed upon by and between Plaintiffs and Generic Manufacturer Defendants and any rulings made by the Court per Section II.C. herein, will constitute the applicable notice for each of the three depositions referenced in Section I.B.1. herein. However, even after following the procedure set forth in Section II.C.1., **a Generic Manufacturer Defendant may have a concern or objection to the scope of the notice *as it applies to it***.

*Id*. at § III.A.1 (emphasis added).

### D.  Plaintiffs Rush to a Pretrial Order 32 Hearing

On February 25, 2021, the Court entered Pretrial Order 60, which contained the same date for disclosures as in the Agreement—February 28, 2021.

Less than 16 hours after that deadline, Plaintiffs emailed the Court, raising for the first time *that, contrary to their prior Agreement and all of the discussions held over the prior two months, Plaintiffs believed that Pretrial Order 60 required non-manufacturing Generic Defendants to produce a manufacturing witness and required individual Generic Defendants to produce witnesses for subjects outside their business operations.* Plaintiffs' email—sent nearly at the end of the day on March 1, 2021—requested a Court hearing on: (1) "PTO 54 deposition scheduling"; (2) "[p]roduction of corporate witness to testify regarding manufacturing 30(b)(6) deposition per PTO 60"; and (3) a "Potential ESI dispute". March 1, 2021 email, Ex. A, Tab 9. Plaintiffs did not first notify the Generic Defendants of these "issues." Plaintiffs did not seek to hold a meet-and-confer with the Generic Defendants. Plaintiffs did not seek to involve the Special Master with any meet-and-confer. (This violated Pretrial Order 32, which requires meet-and-confer sessions, plus 24-hours' notice.). Plaintiffs' email to the Court was *the first time Plaintiffs "notified" the Generic Defendants* of these issues. The Court then set a Pretrial Order 32 hearing on this issue for Thursday, March 4.

In their Pretrial Order 32 submission, which the Generic Defendants received on March 3, 2021 at 1:50 p.m., Plaintiffs stated that "8 out of the twenty Generic Defendants have refused to provide witnesses for one or more depositions."  DE 2938.  This was incorrect, as no Generic

Defendant "refused" to provide witnesses. This mischaracterized the Generic Defendants' Pretrial Order 60 disclosures and omitted critical context. In response, Generic Defendants provided substantive reasons why the Court should protect the non-manufacturing defendants from Plaintiffs' deposition topics relating to solely to manufacturing. *See* DE 2955.

At the March 4, 2021 hearing, the Court heard Plaintiffs on this issue, and Plaintiffs represented that 15 defendants had not complied with Pretrial Order 60. The Court ruled that it would enter an Order to Show Cause why the Generic Defendants should not be sanctioned for not complying with Pretrial Order 60. The Generic Defendants were not heard on the issue before the Court made its ruling from the bench. *See* March 4, 2021 Hearing Transcript, Ex. B.

The Order to Show Cause was then entered on March 8 and granted the Generic Defendants the ability to timely file this submission. *See* DE 3000.

## II.  CERTAIN PARTIES SUBJECT TO THIS COURT'S ORDER TO SHOW CAUSE

### A.  <u>APUI</u>

APUI is a small U.S. entity that imports ranitidine drug products from India and independently determines its distribution in the United States. *See* Decl. of John Adams, Ex. C, at ¶ 2.  Ajanta Pharma Ltd. is the Indian entity that developed, manufactured, tested, packaged, and labeled ranitidine products in facilities outside the United States. *See id.* at ¶ 3.  Ajanta Pharma Ltd. was the entity that, through a third party, handled the pharmacovigilance associated with its ranitidine containing products. *See id.* at ¶ 5.  Plaintiffs named both APUI and Ajanta Pharma Ltd. as Defendants, but Ajanta Pharma Ltd. has challenged, and is continuing to challenge, personal jurisdiction.  Only APUI is subject to PTO 60.  Plaintiffs have been aware since early on that APUI does not manufacture ranitidine and that APUI's role is limited to sales and distribution in the United States. *See id.* at ¶ 4.  These facts were reiterated in APUI's written discovery responses served on March 11, 2021, where APUI explained it did not manufacture, store, warehouse, label, or distribute API for ranitidine products and did not manufacture, store, warehouse, or label finished ranitidine products.  Defendant's finished ranitidine products were stored and warehoused by a third party, LifeScience Logistics." *See id.* at ¶¶ 4, 6.

Based upon the representations made by Plaintiffs to counsel for Apotex, APUI provided its PTO 60 disclosures on February 28, 2021 and explained to Plaintiffs that: (1) APUI sold a prescription ranitidine tablet from September 2018 to April 2020; (2) APUI did not manufacture the product; and (3) storage and transportation and pharmacovigilance were handled by third

parties. *See* Feb. 28, 2021 letter to Plaintiffs from APUI, Ex. D (Pretrial 60 Disclosures), Tab 1. At no time prior to the March 4 hearing did Plaintiffs reach out to counsel for APUI to confer on the PTO 60 disclosures. Once the Court clarified the requirements under PTO 60, APUI proposed dates for all three depositions to Plaintiffs and worked with them to find dates that were mutually agreeable. *See* March 5, 2021 email from C. Weinstein to T. Finken, Ex. E.

## B.  Apotex Corp.

Apotex Corp. is a U.S. entity that imports ranitidine drug products from Canada that it distributes in the United States. *See* Declaration of Michael Bohling, Vice President, Sales & Marketing for Apotex Corp., ¶ 5, Ex. F.  Apotex Inc. is a Canadian company that researched, developed, manufactured, tested, packaged, and labeled ranitidine products at facilities *outside* the United States. *See id.* at ¶¶ 4, 6. Plaintiffs named both Apotex Inc. and Apotex Corp. as defendants. Apotex Inc. has challenged and is continuing to challenge jurisdiction in this Court and will be filing a second motion to dismiss based on lack of jurisdiction. *See* DE 2877, Pretrial Order 60, § I.B.2. Only Apotex Corp. is subject to Pretrial Order 60. Apotex Corp. made Plaintiffs aware of these facts on many occasions, including by way of its Pretrial Order 34 Core Discovery production and Pretrial Order 50 disclosures.

At no time did Plaintiffs advise Apotex Corp. that they interpreted Pretrial Order 60 as mandating every Generic Defendant to provide a witness on every deposition topic. On February 10, 2021 (three weeks before the Pretrial Order 60 deadline), Apotex Corp. provided Plaintiffs three dates for depositions of witnesses to address the deposition notices for storage and transport and pharmacovigilance. In that same communication, Apotex Corp. again stated that it does not do any manufacturing, and Plaintiffs responded: "***we will be happy to discuss scope applicable and specific to your client***." Ex. A, Tab 5. Apotex Corp. relied upon these communications with Plaintiffs in ensuring that it was appropriate to not provide a date for a manufacturing deposition because it did not manufacture ranitidine.

On February 27, 2021, Apotex Corp. served its Pretrial Order 60 disclosures, providing four dates for its corporate representative depositions along with the other required information. *See* Apotex Corp.'s Pretrial Order 60 disclosure, Ex. D, Tab 2. On March 4, 2021, within minutes of the conclusion of the Court's hearing on Plaintiffs' Pretrial Order 32 issues, Apotex Corp. provided Plaintiffs a date for a manufacturing representative deposition. *See* March 4, 2021 email, Ex. A, Tab 10.

**C. <u>Aurobindo U.S. Entities</u>**

The Aurobindo U.S. Entities are the two domestic Aurobindo entities named in the Amended Master Personal Injury Complaint ("AMPIC"). DE 2759. A separate entity, Aurobindo Pharma Ltd. ("Aurobindo India"), also is named in the AMPIC. Aurobindo India manufactures ranitidine-containing products and then ships certain of those products to the Aurobindo U.S. Entities for eventual sale and distribution in the United States. *See* Decl. of Gorla Phaneemdra Prasad, submitted in support of Aurobindo Pharma Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction, Ex. G.[4] The Aurobindo U.S. Entities **do not** manufacture ranitidine-containing products. Aurobindo India moved to dismiss the original Complaints in this MDL for lack of personal jurisdiction (*see* DE 2040; DE 2041) and intends to move to dismiss the AMPIC for lack of personal jurisdiction in accordance with the Court's scheduling orders.[5]

On February 27, 2021, *two days after the Court issued Pretrial Order 60 and even before the Court-ordered deadline*, the Aurobindo U.S. Entities offered deposition dates for storage and transportation and pharmacovigilance 30(b)(6) depositions, and it offered dates within the timeframes scheduled by Pretrial Order 60. *See* Ex. D, Tab 3; Decl. of Joshua A. Klarfeld, Ex. H, ¶ 2 (attaching 2/27/2021 Letter from Joshua A. Klarfeld to Tracy A. Finken, et al., as transmitted via email by Kevin M. Bandy). In that letter, the Aurobindo U.S. Entities explained that they "did not manufacture ranitidine-containing products or API and, therefore," did not intend to present a witness on the manufacturing notice. In light of Aurobindo India's jurisdictional defense and carve-out from Pretrial Order 60 until resolution of its jurisdictional motion, and because the Aurobindo U.S. Entities did not manufacture ranitidine-containing products, the Aurobindo U.S. Entities did not offer a date for a manufacturing witness as part of its Pretrial Order 60 disclosure, and explained that position to Plaintiffs.

Before Plaintiffs' March 3 Pretrial Order 32 submission they did not attempt to meet and confer with the Aurobindo U.S. Entities over this issue. *See* Ex. H at ¶ 4. Instead, they mischaracterized the Aurobindo U.S. Entities as "refusing" to provide a date for a manufacturing 30(b)(6) deposition without providing any context for the Aurobindo U.S. Entities' position, or their explanation for how they are situated differently from other generic defendants. Regardless,

---

[4] The Aurobindo U.S. Entities are submitting this previously-filed declaration in support of this Response. Aurobindo India is not part of this Response, and the submission of the declaration is immaterial to Aurobindo India's jurisdictional defense, which is preserved.

[5] None of the Aurobindo entities are named in any of the Class Complaints in this MDL.

the issue was raised promptly through the Pretrial Order 32 process and resulted in the Court hearing argument on certain Defendants' objections to producing manufacturing witnesses when those defendants (including the Aurobindo U.S. Entities) do not manufacture ranitidine-containing products.

In accordance with the Court's oral rulings at the March 4, 2021, Pretrial Order 32 hearing, and subject to the limitations set forth at that hearing, the Aurobindo U.S. Entities immediately offered "manufacturing" deposition dates to Plaintiffs, which Plaintiffs have now accepted. *See* Ex. H at ¶ 5 (attaching 3/4/2021 Email exchange between Joshua A. Klarfeld and Tracy A. Finken). Thus, at present, the Aurobindo U.S. Entities have offered deposition dates for all three depositions, and the parties have agreed on scheduling for all three depositions.[6] The totality of the Aurobindo U.S. Entities' conduct—including the early transmittal of their Pretrial Order 60 disclosures—evidences anything but a willful disregard of the Court's authority.

### D. **Granules**

Granules USA, Inc. is the U.S. based subsidiary of Granules India Ltd.  Granules USA, Inc. sold over-the-counter ranitidine in the United States from approximately November 2018 through September 2019 and at no time did it manufacture ranitidine, as noted in the Amended Affidavit pursuant to Pretrial Order 50 submitted on behalf of Granules USA, Inc., a copy of which is attached hereto as Exhibit I.  Granules India Ltd. has not yet been served with a Complaint in this litigation and therefore the Court does not yet have jurisdiction over it.  On February 28, 2021, counsel for Granules USA Inc. timely made disclosures to Plaintiffs pursuant to Pretrial Order 60.  These disclosures included, *inter alia*, available dates for the Storage and Transportation 30(b)(6) Deposition and Pharmacovigilance 30(b)(6) Deposition.  Granules USA, Inc. did not provide a date for the Manufacturing 30(b)(6) Deposition, but instead reminded Plaintiffs' counsel that as noted in Granules USA, Inc.'s Pretrial Order 50 Affidavit, Granules USA, Inc. did not manufacture ranitidine.  Granules USA, Inc.'s February 28, 2021 disclosure to Plaintiffs pursuant to Pretrial Order 60 is attached hereto as Exhibit D, Tab 4.

On the morning of March 4, 2021 prior to the discovery hearing before the Court, and after hearing that the Plaintiffs had requested some generic defendants to change some deposition dates

---

[6] Even before the Pretrial Order 32 hearing, the Aurobindo Entities also voluntarily agreed to reschedule one of the depositions from their requested dates to accommodate plaintiffs' preferences.  *See* Ex. H at ¶ 5.

due to over-scheduling on certain dates, counsel for Granules USA, Inc. sent an email to Plaintiffs' counsel offering to reschedule the dates for Granules USA, Inc. for the Storage and Transportation 30(b)(6) Deposition and the Pharmacovigilance 30(b)(6) Deposition. A true and correct copy of the March 4, 2021 email exchange is attached hereto as Exhibit J. In response to this correspondence, Plaintiffs' counsel, Tracy Finken, responded "I changed your S&T and PV dates accordingly. If you would like to secure a tentative MFRing date while you await a ruling on this issue, please let me know. I can pencil you in." *Id*. At no time did Ms. Finken state that Granules USA, Inc. had not complied with Pretrial Order 60 or alert counsel for Granules USA, Inc. that Plaintiffs would be raising with the Court that Granules USA, Inc. had failed to adhere to Pretrial Order 60. Instead, it was the understanding of counsel of Granules USA, Inc. from Ms. Finken's email that if the Court ruled that Non-Manufacturing Defendants were required to present a witness in response to the Manufacturing 30(b)(6) Deposition Notice, then Plaintiffs' counsel would meet and confer with counsel for Granules USA, Inc. Promptly after the hearing on March 4, 2021, counsel for Granules USA, Inc. again contacted Ms. Finken and advised her that based upon the Court's ruling, counsel for Granules USA, Inc. was obtaining a date from counsel for Granules USA, Inc. for the Manufacturing 30(b)(6) Deposition and later that day, the date of May 21, 2021 was secured for Granules USA, Inc. for that deposition. *See id.*

   E. **Heritage**

As explained in two affidavits submitted to Plaintiffs on September 17 and October 29, 2020, Heritage entered into an agreement with Bio-Pharm, Inc. ("BioPharm") in which Bio-Pharm owned the ANDA and Heritage was granted an exclusive license to sell a prescription ranitidine syrup in the U.S. *See* Sept. 17, 2020 Aff. of Daniel Lukasiewicz, Ex. K, at ¶¶ 4-5 (Exhibit A omitted therein). Under the agreement, Bio-Pharm was solely responsible for the manufacture of the product and supplied the finished ranitidine products to Heritage only for sale and distribution. *See id.* at ¶ 6. Heritage sold these finished ranitidine products from July 2013 to October 2015. *See id.* at ¶ 7. Heritage had no communications with the FDA and did not conduct any studies related to ranitidine containing products. *See id.* at ¶¶ 12-13.

On February 28, 2021, Heritage provided deposition availability for storage and transportation and pharmacovigilance and, again referring to the previously-submitted affidavits, reminded Plaintiffs that Heritage did not manufacture any ranitidine products, did not hold an ANDA for the product, and therefore had no witness who could provide any relevant testimony in

connection with product manufacturing (similar to other Generic Defendants in this matter).  *See* Ex. L, Email between Heritage and Plaintiffs regarding deposition dates, at pp. 4-6.  After the March 4 hearing, counsel for Heritage reached out to Plaintiffs to discuss the requested manufacturing deposition, and at that time, Heritage nonetheless provided dates for manufacturing, in addition to the dates for storage and transportation and pharmacovigilance.  *See id.* at pp. 1-3.

### F. Sun Pharmaceuticals

There are only two "Sun" entities presently involved in the *Zantac* MDL: (i) Ranbaxy Inc. ("RI") and (ii) Sun Pharmaceuticals Industries, Inc. f/k/a Ranbaxy Pharmaceuticals Inc. ("RPI"). A third Sun entity, Sun Pharmaceutical Industries, Ltd., is named as a Defendant in the AMPIC, *see* DE 2759 ¶ 122, but it is a foreign entity that has not been served with process, *see* DE 2033, and, therefore, it is beyond the scope of Pretrial Order 60, *see* § I.B.3. A fourth entity, Taro Pharmaceuticals USA Inc., which is a wholly owned indirect subsidiary of Sun Pharmaceutical Industries, Ltd., was named in Plaintiffs' original set of master complaints but was subsequently dropped via agreed order because it played no role in the manufacture, sale, or distribution of ranitidine-containing medications in the United States. *See* DE 1983, Mot. ¶ 2; DE 1985, Or. Thus, although the Court's show-cause order makes reference to this entity, *see* DE 3000 at p. 3, Taro Pharmaceuticals USA Inc. was not carried forward into the AMPIC and it is not subject to Pretrial Order 60. Non-party Taro Pharmaceuticals USA Inc. therefore respectfully requests that the Court discharge its show-cause order and refrain from imposing sanctions or other penalties.

With respect to RPI and RI—the two "Sun" Defendants named in the AMPIC that have been served—neither entity has manufactured ranitidine API or finished-dose product at any time. *See* Ex. M, Decl. of A. Salem, at ¶ 3. Based on presently available information, it appears that RPI's role was limited to the distribution of certain ranitidine-containing medications manufactured by other entities, whereas RI's involvement was limited to serving as a U.S. agent for an ANDA held by foreign Defendant Sun Pharmaceutical Industries, Ltd. *See id.* at ¶ 4. Neither RPI nor RI have had any involvement whatsoever with the distribution of ranitidine-containing medications since RPI ceased distributing a prescription-only syrup formulation in 2012. *See id.* at ¶ 5.

On February 28, 2021, RPI and RI served their initial Pretrial Order 60 disclosure. *See* Ex. D, Tab 5. RPI and RI indicated to Plaintiffs that they were not identifying "a 30(b)(6) witness on the manufacturing topics because neither [RPI nor RI] manufactured RCPs." Ex. M at ¶ 6. At that

time, RPI and RI were operating under the good-faith understanding—based on the background and history described above, in conjunction with communications with generics leadership counsel—that non-manufacturing defendants were not required under Pretrial Order 60 to produce a witness to testify on issues of manufacturing. *See id.*

At no point in time before their submission of the March 3, 2021 Pretrial Order 32 submission did Plaintiffs suggest that RPI and RI's Pretrial Order 60 disclosure was inadequate, nor did Plaintiffs seek to meet and confer on the issue. *See id.* at ¶ 7. Quite the contrary, Plaintiffs' counsel responded to the February 28 transmittal email from RPI and RI by confirming proposed dates for the Storage & Transportation and Pharmacovigilance depositions. *See id.* In accordance with the Court's oral rulings at the March 4 Pretrial Order 32 hearing, and subject to the limitations the Court set forth at that hearing, RPI and RI immediately accepted Plaintiffs' proposed date for the deposition of a "manufacturing" witness. *See id.* at ¶ 8. In sum, RPI and RI did not intend at any time to violate a Court order, nor did they believe they were doing so. RPI and RI believed they were, in good faith, complying with Pretrial Order 60. *See id.* at ¶ 9.

### G. **Torrent**

As reflected in the documents produced under the Core Discovery Agreement, Torrent had no role in the manufacture or sale of ranitidine containing products and merely acquired a company **three years after it ceased manufacturing ranitidine containing products**. *See* Decl. of Kristy Zielny, Ex. N, ¶ 2. From 2013 to 2015, Bio-Pharm manufactured a prescription ranitidine syrup that was sold in the United States by Heritage. *See id.* at ¶ 3. Torrent acquired Bio-Pharm in 2018. *See id.* at ¶ 4. Apart from the documents produced in this litigation, Torrent has no specific knowledge pertinent to the storage and transportation, manufacturing, and pharmacovigilance of Bio-Pharm's ranitidine containing products. *See id.* at ¶ 5.

On February 28, based upon the representations made by Plaintiffs to counsel for Apotex, Torrent reiterated this information in its Pretrial Order 60 disclosures and stated that it had no corporate representatives who could testify regarding the deposition topics. *See* Feb. 28, 2021 letter to Plaintiffs from Torrent, Ex. D, Tab 6. Plaintiffs did not reach out to counsel for Torrent prior to the March 4 hearing. Once the Court clarified the requirements under Pretrial Order 60, Torrent proposed dates for all three depositions to Plaintiffs and worked with them to find dates that were mutually agreeable. *See* March 5, 2021 email from C. Weinstein to T. Finken, Ex. O.

14

### H. **Wockhardt**

Wockhardt USA is a company in New Jersey that sold ranitidine finished ranitidine drug products in 2014 and earlier that were manufactured by its indirect parent company, Wockhardt Ltd. in India. *See* Decl. of R. Debski, Ex. P, ¶¶ 4-9. Wockhardt USA never manufactured ranitidine finished drug products, ranitidine API or any other drug products. *See id.* at ¶¶ 5-6. Indeed, Wockhardt USA has no manufacturing facility, laboratory or warehouse. *See id.* at ¶ 5. The ranitidine drug products manufactured by Wockhardt Ltd. in India were shipped directly to Wockhardt USA's third-party logistics providers, located in Louisville, Kentucky ("3PLs"). *Id.* at ¶ 9. Wockhardt USA directly sold the ranitidine drug products to customers, and the 3PLs transported the drugs to the customers. *See id.* Though Wockhardt USA has had access to Wockhardt Ltd.'s ANDAs for the ranitidine drug products, Wockhardt Ltd., not Wockhardt USA, prepared the content of these ANDAs relating to the manufacturing processes. *See id.* at ¶ 10.

Wockhardt Ltd. has challenged jurisdiction in this Court and will be filing a second motion to dismiss based on lack of personal jurisdiction. *See* DE 2877, Pretrial Order 60, § I.B.2. Only Wockhardt USA is subject to Pretrial Order 60. Wockhardt USA has informed Plaintiffs that Wockhardt USA has not manufactured drugs and that Wockhardt Ltd. manufactured the drugs sold by Wockhardt USA. *See* Decl. of C. Katz, Ex. Q, at Ex. A thereto.

As described above, Wockhardt understood from liaison counsel that it was not required to provide a date for the manufacturing 30(b)(6) notice. *See* Ex. P at ¶¶ 11-13; Ex. Q at ¶¶ 4-10. Accordingly, on February 28, 2021, Wockhardt USA timely made disclosures to Plaintiffs pursuant to Pretrial Order 60, which included, *inter alia*, two available dates for the Storage and Transportation 30(b)(6) Notice and two available dates for the Pharmacovigilance 30(b)(6) Notice. *See* Ex. D, Tab 7; Ex. Q at ¶ 11 & Ex. A thereto. Wockhardt USA did not provide a date for the Manufacturing 30(b)(6) Notice but explained that it "does not manufacture finished ranitidine-containing products, nor does it purchase, manufacture, transport, receive delivery of, or store API." Ex. Q at ¶ 11 & Ex. A thereto. At this time, Wockhardt USA did not believe it was obligated to provide a date for the Manufacturing 30(b)(6) Notice. *See* Ex. P at ¶¶ 11-13; Ex. Q at ¶¶ 5, 10.

Plaintiffs' counsel did not communicate directly to Wockhardt USA's counsel that they believed that Wockhardt USA's Pretrial Order 60 Disclosures were deficient. *See* Ex. Q at ¶ 12. Instead, on March 1, 2021, plaintiffs' counsel communicated directly to the Court that Plaintiffs believed that Pretrial Order 60 required Non-Manufacturing Generic Defendants to produce a

witness on the manufacturing 30(b)(6) notice. *See id*. On March 3, 2021, Generic Defendants' liaison counsel responded on behalf of Wockhardt USA and other Non-Manufacturing Generic Defendants by seeking protection relating to the manufacturing (30(b)(6) depositions. *See* DE 2955.

At the March 4, 2021 hearing, the Court overruled the objections of the Non-Manufacturing Generic Defendants and denied their application relating to the Manufacturing 30(b)(6) Notice. Upon receiving this guidance from the Court, within about three hours of the court hearing, Wockhardt USA accepted plaintiffs' proposed date of May 13, 2021 for a manufacturing 30(b)(6) deposition. *See* Ex. Q at ¶ 13 & Ex. B thereto; Ex. P at ¶ 14. Plaintiffs' counsel informed Wockhardt USA that the May 13 date was no longer available and offered May 14 instead. *See* Ex. Q at ¶ 13 & Ex. B thereto. On the same day, Wockhardt USA accepted that date. *See id*.

In sum, Wockhardt USA did not intend at any time to violate a Court order, nor did it believe it was doing so. By working with liaison counsel and seeking protection relating to the deposition, Wockhardt USA believed it was, in good faith, complying with the Court's orders. *See* Ex. P at ¶ 15.

## III.  THE GENERIC DEFENDANTS' CONDUCT DOES NOT WARRANT A FINDING OF CONTEMPT OR SANCTIONS

Findings of civil contempt require proof by clear and convincing evidence of a "willful disregard of the authority of [the] Court…." *Georgia Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007) (citing *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000)); *NLRB v. Crockett-Bradley, Inc.*, 598 F.2d 971, 975 (5th Cir. 1979)). The burden of proof required for a finding of civil contempt "is more exacting than the 'preponderance of the evidence' standard…." *Id.* (quoting *Jordan v. Wilson*, 851 F.2d 1290, 1292 (11th Cir. 1988)). "The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Id.* (citing *McGregor*, 206 F.3d at 1383). As demonstrated above, the Generic Defendants' conduct was guided by a reasonable interpretation of Pretrial Order 60. And, even if the Court were to find clear and convincing evidence that the Generic Defendants willfully violated a clear and unambiguous order, the Generic Defendants have demonstrated diligence and good faith efforts in complying with that order, which also warrants a finding of no contempt.

### A.   The Generic Defendants' Understanding of Pretrial Order 60 Was Reasonable

The "clear and unambiguous" standard necessitates a finding that the order contained "specific and definite" language. *Tracfone Wireless, Inc. v. Technopark Co*., 313 F.R.D. 680, 688 (S.D. Fla. 2016) ("The Court . . . finds the Permanent Injunction to be specific and definite. It permanently enjoins [the defendant] from engaging in the conduct described above."). This includes providing clear notice of what conduct is required or prohibited under the order. *See id*. (citation omitted). "Determining whether an order is reasonably specific involves a factual inquiry that must consider the *context* in which the order was entered and the *audience* to which the order was addressed." *United States v. Straub*, 508 F.3d 1003, 1011 (11th Cir. 2007) (emphasis added) (citation omitted).  "In determining whether a party is in contempt of a court order, the order is subject to reasonable interpretation, though it may not be expanded beyond the meaning of its terms absent notice and an opportunity to be heard." *Georgia Power Co. v. N.L.R.B*., 484 F.3d 1288, 1291 (11th Cir. 2007) (citation omitted). Ambiguities are construed in favor of the party being charged with contempt. *See id*. (citation omitted).

Pretrial Order 60 states that "each Generic Manufacturer Defendant will provide to Plaintiffs the number of witnesses it expects to produce for each deposition notice and tentative dates on which it will present each witness for deposition." Pretrial Order 60, § II.C.2. The Generic Defendants did not understand this language to mean they needed to produce witnesses on every topic—only that they were obligated to identify the number of witnesses they would produce on topics that applied to them. Because certain Generic Defendants did not manufacture ranitidine drugs or API, they did not read the Order to require them to provide deposition dates for the 30(b)(6) notice on manufacturing, or other topics outside their business operations.

This view is consistent with the parties' negotiations and with the scope of the three deposition notices provided by Plaintiffs.  While the three notices were called "manufacturing," "pharmacovigilance," and "storage and transportation," the notices totaled 80 topics covering broad areas including product sourcing, testing, quality assurance, drug safety, and regulatory. Plaintiffs intended that their three notices would count as just three depositions under Pretrial Order 54, but given the broad scope and number of topics, the parties understood that Generic Defendants may name more than one individual for some notices, but none for others.  This commonsense approach was included in the parties' Generic Discovery Agreement and, based on the parties' negotiations and emails (Exhibit A, Tab 5), carried over to Pretrial Order 60.  In light

17

of the parties' discussions leading up to the Agreement and Pretrial Order 60, the Generic Defendants' understanding of their obligations under Pretrial Order 60 was reasonable.

**B.  <u>The Generic Defendants Did Not Willfully Disregard the Court's Authority</u>**

"[C]ontempt is a severe remedy which should not be resorted to where there is doubt as to the wrongfulness of the defendant's conduct." *Ultimate Combustion Co. v. Fuecotech, Inc.*, 2014 WL 12493339, at *7 (S.D. Fla. May 6, 2014) (citing *Tivo, Inc. v. Echostar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011)), *report and recomm. adopted*, 2014 WL 12495257 (S.D. Fla. June 13, 2014). Further, "[t]he purpose of a civil contempt sanction is to coerce compliance with a court order, and to compensate the complainant for losses sustained." *Id*. (citing *EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1515 (11th Cir. 1987)).[7]

Courts also consider a party's diligence and good faith efforts when assessing penalties, despite the fact that these do not categorically excuse noncompliance. *See id; Smith Barney, Inc. v. Hyland*, 969 F. Supp. 719, 723 (M.D. Fla. 1997), *aff'd*, 148 F.3d 1070 (11th Cir. 1998) ("conduct that evinces substantial . . . compliance with a court's order may be excused in a contempt proceeding if it was made as part of a good-faith effort at compliance." (citation omitted)).  As the Eleventh Circuit has recognized, "a pattern of delay or a deliberate refusal to comply with court orders . . . justifies a sanction." *United States v. Samaniego*, 345 F.3d 1280, 1284 (11th Cir. 2003); *see also Guimaraes v. NORS*, 366 Fed. Appx. 51, 54 (11th Cir. 2010) (applying same analysis). Here, there has been no showing of "a pattern of delay" or, as outlined above, "a deliberate refusal" to comply with Pretrial Order 60 (or any other court order).

This Court's prior decisions are instructive in how that standard is applied. In *E&C Copiers Exp. Imp. Corp. v. Arizas Fotocopiadoras S.A.S.*, for example, several defendants were ordered to produce documents, but none complied. 2017 WL 10186627, at *1 (S.D. Fla. Nov. 8, 2017), *report*

---

[7] Consistent with Eleventh Circuit law, at two recent hearings, the Court noted that it did not intend its Pretrial Orders to devolve into a game of "gotcha."  *See* 2/18/2021 Status Conference Tr., Ex. R, at pp. 23-24; 3/10/2021 Discovery Status Conference Tr., Ex. S, at p. 11.  Respectfully, given the totality of the circumstances here, a finding of contempt or the imposition of sanctions would be not only unwarranted, but also could trigger a race to the bottom, with parties looking for "gotcha" purported Pretrial Order violations of minimal to no consequence in the hopes of seeking sanctions, rather than collaboratively and cooperatively navigating through the discovery process. Notably, Plaintiffs did not seek sanctions or request the order to show cause here, likely because they recognize that they too have not been entirely compliant with their own Pretrial Order obligations, which the parties continue to work through collaboratively and without Court intervention.

18

*and recomm. adopted sub nom. E&C Copiers Exp. Imp. Corp. v. Arizas Fotocoiadoras S.A.S.*, 2017 WL 10186603 (S.D. Fla. Dec. 29, 2017). The Court ordered them all to show cause why they should not be held in contempt for noncompliance. Upon learning of the order, defendant Mr. Valencia immediately traveled to the forum to obtain counsel to respond to the order. He then produced all responsive documents in his possession and asserted there was no evidence to suggest his companies acted in bad faith, and argued the contempt sanctions were unnecessary. *See id.* at *1-2. The court spared Mr. Valencia from sanctions, explaining that not only were there outstanding questions about when Mr. Valencia received notice, but also that he had "taken reasonable steps to comply with the documents requested," even though "Plaintiff believe[d] that the documents produced [were] inadequate." *Id.* at *4. Further, "Mr. Valencia appear[ed] willing to do whatever [was] necessary so that Plaintiff receive[d] all the documents previously ordered." *Id.* at *4. The court also reasoned that "Mr. Valencia's actions suggest[ed] that contempt sanctions [were] unwarranted because he immediately flew back to [the forum], hired a law firm on an emergency basis, timely filed his response to the Court's Order to Show Cause, and remain[ed] ready to participate in a Judgment Debtor examination to remedy his prior failures to comply with the Court's Orders." *Id.* at *4. Because "these actions *undermine[d] a finding of contempt*," the court recommended against imposing a finding of contempt. *Id.* at *4 (emphasis added).

In *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, the magistrate judge ordered the plaintiff to produce its database and software. 2004 WL 7340355, at *1 (S.D. Fla. Feb. 27, 2004), *report and recomm. adopted*, 2004 WL 7340357 (S.D. Fla. Mar. 17, 2004). Two days before the deadline for production, the plaintiff advised the defendants that it expected its production to exceed two million pages. On the deadline date, plaintiff's counsel suggested its technical personnel meet with defendants' experts to discuss a feasible method of making the production, but the defendants were unwilling to provide contact information for their experts. After further discussions following the order's production deadline, the plaintiff produced some documents, but the parties continued to disagree about various matters relating to the production. The defendants eventually asked the Court to hold the the plaintiff in contempt. *See id.* at *1-3. The Court considered the plaintiff's diligence and good faith efforts as part of its analysis. *See id.* at *4. The Court then reasoned that the plaintiff had made attempts to comply with the order but its interactions with the defendants ultimately caused delay. *See id.* at *5-6. The Court found the plaintiff was reasonably diligent in attempting to comply and held that an order of contempt was unwarranted. *Id.*

As the facts here demonstrate, the Generic Defendants did not willfully disregard the Court's authority, nor have they engaged in a pattern of such behavior. On the contrary, expressly recognizing the Court's authority, they complied with Pretrial Order 60 as they understood it, based on the month of negotiations and discussions that preceded the Court's entry of the Order. As this Court explained at the February 18, 2021 case management conference, "if someone has been prejudiced and there is a need for a judicial remedy, we stand ready and able to give the remedy that people are entitled to, but on the other hand, we are not looking to hang people high for simple mistakes." Ex. R at 57:20-23.

These Generic Defendants provided Plaintiffs with proposed deposition dates for those activities relevant to their U.S. operations, such as for storage and transportation and pharmacovigilance. *See* Ex. D, Tabs 1-7. Relying on Pretrial Order 60's carve out for defendants challenging personal jurisdiction (Pretrial Order 60, § I.B.3), and because these Generic Defendants do not manufacture ranitidine-containing products, they did not initially offer dates for the manufacturing deposition or those subjects outside their business operations. However, immediately after the Court's oral ruling at the March 4, 2021, Pretrial Order 32 hearing, in which the issue of non-manufacturing defendants' requirement to produce 30(b)(6) witnesses on manufacturing topics was argued, Generic Defendants offered dates for depositions, and the parties have since agreed on dates for those depositions. *See* Exs. A, Tab 10; E; H at ¶ 5; J; L; M at ¶ 8; O; P at ¶ 14; Q at ¶ 13 & Ex. B thereto. Thus, the Generic Defendants acted diligently and in good faith to rectify any unintended violation of Pretrial Order 60. Plaintiffs suffered no harm or prejudice and all depositions have since been scheduled.

## IV.    CONCLUSION

The Generic Defendants did not willfully disregard the Court's authority based on their reasonable reading of Pretrial Order 60, and, to the extent the Court were to hold that their conduct did amount to a willful violation, any such violation has since been remedied without prejudice or loss to Plaintiffs. Accordingly, neither a finding of contempt nor sanctions are warranted here. Therefore, the Generic Defendants respectfully ask this Court to not find them in contempt or issue sanctions.

Dated: March 24, 2021                                  Respectfully submitted,


*/s/ Terry M. Henry*
Terry M. Henry, Esquire
**BLANK ROME LLP**
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Phone: 215-569-5564
THenry@BlankRome.com


Jane Thomas, Esquire
**BLANK ROME LLP**
International Square
1825 Eye Street NW
Washington, DC 20003-5403
202-420-2577
JThomas@BlankRome.com


*Attorneys for Defendant Apotex Corp.*


*/s/ Joshua A. Klarfeld*
Joshua A. Klarfeld
**ULMER & BERNE LLP**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113
Tel: 216-583-7000
jklarfeld@ulmer.com

*Attorney for Defendants Aurobindo
Pharma USA, Inc., and Aurohealth LLC*


*/s/ Walter H. Swayze, III*
Walter H. Swayze, III
Megan E. Grossman
**LEWIS BRISBOIS BISGAARD &
SMITH**
550 E. Swedesford Road, Suite 270
Wayne, Pennsylvania 19087
Tel: 215-977-4100
**Pete.Swayze@lewisbrisbois.com**
**Megan.Grossman@lewisbrisbois.com**

*Attorneys for Defendant Granules USA,
Inc.*


*s/ Clifford Katz*
Clifford Katz
Neil Merkl
Sojin Yoon
Kelley Drye & Warren LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
(212) 808-7800
ckatz@kelleydrye.com
nmerkl@kelleydrye.com
**syoon@kelleydrye.com**

*Attorneys for Defendant Wockhardt USA
LLC (f/k/a Wockhardt USA, Inc.)*


*/s/ Neal Seth*
Neal Seth
Corey Weinstein
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
Tel:  202.719.4179
nseth@wiley.law
cweinstein@wiley.law

*Attorneys for Ajanta Pharma USA Inc.,
Heritage Pharmaceuticals, Inc., and
Torrent Pharma Inc.*

*/s/ Jason M. Reefer*
Jason M. Reefer
PIETRAGALLO GORDON ALFANO BOSICK &
RASPANTI, LLP
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
Tel: 412-263-1840
Fax: 412-263-2001
jmr@pietragallo.com

*Attorney for Defendants Sun*
*Pharmaceutical Industries, Inc. and*
*Ranbaxy Inc., and Former Defendant*
*Taro Pharmaceuticals U.S.A., Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 24, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will provide automatic notification to all counsel of record.

*/s/ Terry M. Henry*
Terry M. Henry
