# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

IN RE: ZANTAC (RANITIDINE)                                        MDL NO. 2924
PRODUCTS LIABILITY                                            20-MD-2924
LITIGATION

                                                 JUDGE ROBIN L. ROSENBERG
                       MAGISTRATE JUDGE BRUCE E. REINHART

_____/

THIS DOCUMENT RELATES TO: ALL CASES

---

### DISTRIBUTOR DEFENDANTS' MOTION TO DISMISS
### AMENDED MASTER PERSONAL INJURY COMPLAINT
### AND INCORPORATED MEMORANDUM OF LAW

---

## **TABLE OF CONTENTS**

I.      INTRODUCTION..................................................................................................1

II.     FACTUAL BACKGROUND RELEVANT TO DISTRIBUTORS ............................2

        A.      Relevant Allegations Against Distributors .........................................2

III.    PROCEDURAL HISTORY ...................................................................................4

IV.     ARGUMENT .......................................................................................................5

        A.      Legal Standard on Motion to Dismiss Pursuant to Rule 12(b)(6) .......................5

        B.      The AMPIC is an Improper Shotgun Pleading that Fails to Meet
                the Requirements of Rule 8.......................................................................7

        C.      In Addition to Improper Shotgun Pleading, Plaintiffs Failed to
                Allege Factual Allegations to Demonstrate a Plausible Negligence
                Claim Against Distributors ........................................................................9

                1.      Plaintiffs Do Not Plausibly Allege a Breach of Any Duty
                        Owed to Plaintiffs by Distributors ............................................9

                2.      Plaintiffs Fail to Plausibly Allege Causation Against
                        Distributors .................................................................................16

        D.      Plaintiffs' Conclusory State Law Sub-Counts Against Distributors
                Must Also Be Dismissed...........................................................................17

        E.      Because Plaintiffs Fail to State a Claim Against Distributors for
                Negligence, Plaintiffs' Derivative Claims Against Distributors
                Also Fail.....................................................................................................19

        F.      Plaintiffs Improperly Plead Count XIV Unjust Enrichment Against
                Distributors as it was Dismissed with Prejudice in the Court's
                Order ..........................................................................................................19

        G.      Plaintiffs Have Not Pled a Claim for Punitive Damages ...................20

V.      CONCLUSION ....................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................*passim*

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................*passim*

*Brown v. Air Line Pilots Ass'n*,
  813 F. App'x 353 (11th Cir. 2020) ................................................................................6

*Chiron Recovery Ctr., LLC v. United Healthcare Servs., Inc.*,
  No. 9:18-CV-81761, 2020 WL 3547047 (S.D. Fla. June 30, 2020)..........................7

*Clooney v. Geeting*,
  352 So.2d 1216 (Fla. 2d DCA 1977) ..........................................................................20

*Dapeer v. Neutrogena Corp.*,
  95 F.Supp.3d 1366 (S.D. Fla. 2015) ............................................................................6

*In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*,
  756 F.3d 917 (6th Cir. 2014) ................................................................................19, 20

*De La Cruz v. Nordstrom, Inc.*,
  No. 19-80109-CIV, 2019 WL 3412172 (S.D. Fla. May 2, 2019)..............................7

*Diverse Power, Inc. v. City of LaGrange*,
  934 F.3d 1270 (11th Cir. 2019) ................................................................................17

*Fox v. Loews Corp.*,
  309 F.Supp.3d 1241 (S.D. Fla. 2018) ........................................................................8

*Gallardo v. FedEx Kinko's Office & Print Servs., Inc.*,
  No. 08–cv–00392, 2008 WL 2143011 (D. Md. May 12, 2008) ................................18

*Giter v. United States*,
  No. 3:08-CV-622, 2010 WL 375929 (M.D. Fla. Jan. 25, 2010) ................................18

*Gray v. MacArthur Co.*,
  No. CIV. 16-5095, 2020 WL 999007 (D.S.D. Mar. 2, 2020)..................................19

*Jackson v. Bank of Am. N.A.*,
  898 F.3d 1348 (11th Cir. 2018) ................................................................................9

*Lane v. Cap. Acquisitions & Mgmt. Co.*,
    No. 04-60602 CIV, 2006 WL 4590705 (S.D. Fla. Apr. 14, 2006) ...........................................7

*Lewis v. City of St. Petersburg*,
    260 F.3d 1260 (11th Cir. 2001) ...........................................................................................9

*Mann v. Palmer*,
    713 F.3d 1306 (11th Cir. 2013) .....................................................................................6, 11

*McCoy v. Biomet Orthopedics, LLC*,
    No. CV ELH-12-1436, 2021 WL 252556 (D. Md. Jan. 25, 2021) .........................................18

*Mutual Pharmaceutical Co. v. Bartlett*,
    570 U.S. 472 (2013)................................................................................................5, 16, 19

*Nat'l Fire Ins. Co. of Hartford v. Johnson Controls Fire Prot. LP*,
    No. 2:19-CV-14050, 2019 WL 5079673 (S.D. Fla. Oct. 10, 2019) .......................................9

*Petrovic v. Princess Cruise Lines, Ltd.*,
    No. 12-21588-CIV, 2012 WL 3026368 (S.D. Fla. July 20, 2012) ...........................................7

*Pliva, Inc. v. Mensing*,
    564 U.S. 604 (2011)................................................................................................5, 15, 19

*Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*,
    917 F.3d 1249 (11th Cir. 2019) ...........................................................................................6

*Regenicin, Inc. v. Lonza Walkersville, Inc.*,
    997 F.Supp.2d 1304 (N.D. Ga. 2014) ...................................................................................8

*Scott v. Experian Info. Sols., Inc.*,
    No. 18-CV-60178, 2018 WL 3360754 (S.D. Fla. June 29, 2018) ...........................................7

*Smith v. Teva Pharms. USA, Inc.*,
    437 F.Supp.3d 1159 (S.D. Fla. 2020) .................................................................................16

*Weiland v. Palm Beach Cty. Sheriff's Office*,
    792 F.3d 1313 (11th Cir. 2015) ...........................................................................................8

*White Constr. Co. v. DuPont*,
    455 So.2d 1026 (Fla. 1984)................................................................................................20

**Statutes**

SDCL § 20-9-2 ...................................................................................................................19

**Other Authorities**

21 C.F.R. § 211.1 ...............................................................................................................10

21 C.F.R. § 211.142 ................................................................................................................10

Fed. R. Civ. P. 8 ...........................................................................................................1, 7, 8

Fed. R. Civ. P. 11 ...............................................................................................................11

Fed. R. Civ. P. 12 ...........................................................................................................1, 5

Pursuant to Pretrial Order Nos. 36 and 61, AmerisourceBergen Corporation, Amerisource Health Services, LLC, Cardinal Health, Inc., Geri-Care Pharmaceuticals, Corp., Golden State Medical Supply, Inc., and McKesson Corporation ("Distributors") move this Court under Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims against them in Plaintiffs' Amended Master Personal Injury Complaint, ECF No. 2759, ("AMPIC") with prejudice.

## I.     <u>INTRODUCTION</u>

On February 8, 2021, Plaintiffs filed the AMPIC against Distributors alleging personal injury on behalf of themselves based on alleged exposure to N-Nitrosodimethylamine ("NDMA") in Zantac and generic ranitidine. But, Plaintiffs' AMPIC suffers the same infirmities as the prior Master Personal Injury Complaint, ECF No. 887 ("MPIC"), that was dismissed by this Court on December 31, 2020, ECF No. 2513, and the factual allegations against Distributors remain sparse, conclusory, and insufficient.

In the AMPIC, Plaintiffs attempt to plead only one substantive count against Distributors, namely, Count X Negligent Storage and Transportation Outside the Labeled Range. Plaintiffs' claim against Distributors fails for several reasons. First, Plaintiffs' allegations impermissibly lump together Retailers, Pharmacies, and Distributors in contravention of Rule 8 by failing to allege specifically which Defendant did what alleged action. Second, Plaintiffs' conclusory allegations fail to allege sufficient facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Third, and significantly, Plaintiffs fail to address the concerns this Court expressed in its prior Order dismissing Distributors about Plaintiffs' ability or lack thereof to replead any viable claim against Distributors. ECF No. 2513. The Court expressly directed Plaintiffs to address certain issues; for example, the tension between their original claims that ranitidine is inherently defective and their effort to salvage a claim against Distributors by alleging that ranitidine

becomes defective if improperly stored or transported. But Plaintiffs failed to explain how any such claim is plausible against Distributors, or how such a claim raises a global issue for this MDL. Because the AMPIC contains bare conclusions—*without an*y plausible supporting factual allegations and without addressing the Court's concerns—Plaintiffs' only substantive claim against Distributors must be dismissed.

Plaintiffs' state-law based sub-counts to Count X also fail and must be dismissed. The fifty-two (52) sub-counts cover all states, the District of Columbia, and Puerto Rico—including states in which no Plaintiff has filed a short form complaint against Distributors—and consist of conclusory statements of law that are repeated fifty-two times verbatim without any connection to the actual law of each state.

As Plaintiffs failed to plead a viable negligence claim against Distributors, the derivative counts of Loss of Consortium (Count XIV), Survival Actions (Count XV), and Wrongful Death (Count XVI) must also be dismissed because they must be predicated on a viable underlying substantive count. Here, there is none. Plaintiffs' final count against Distributors, Count XIV: Unjust Enrichment, must also be dismissed as identical allegations were previously dismissed with prejudice by this Court. In sum, Plaintiffs' amended claims against Distributors are nothing more than a failed attempt to cure the deficiencies for which this Court dismissed Plaintiffs' original claims.

## II.   FACTUAL BACKGROUND RELEVANT TO DISTRIBUTORS

As the Court is aware of the general factual background of this litigation, *see* Court's Order at 2-3, ECF No. 2513 (the "Order"), Distributors will not repeat that here.

### A.   Relevant Allegations Against Distributors

Distributors are named as Defendants only in the AMPIC. AMPIC ¶¶ 156-66. There are no claims against Distributors in the Consolidated Amended Consumer Economic Loss Class

Action Complaint, ECF No. 2835, or the Consolidated Medical Monitoring Class Action Complaint, ECF No. 2832-1.

The AMPIC arises out of a series of voluntary recalls related to Zantac and ranitidine. Plaintiffs allege that Zantac and ranitidine inherently contain unacceptable levels of NDMA, which is a potential human carcinogen, and that those inherently unacceptable levels "can increase over time under normal storage conditions, but more so with exposure to heat and/or humidity." *See* AMPIC ¶¶ 5-6.

But Plaintiffs do not plausibly allege factual allegations *against Distributors* that could support a claim *against Distributors*. Plaintiffs allege merely that the Distributors purchase bulk ranitidine-containing products from manufacturers and then distribute them to retailers and pharmacies as requested. *Id*. ¶ 155. That is because most Distributors have a unique role in the supply chain in that they serve as a pass-through, distributing product between pharmaceutical manufacturers and retailers/pharmacies, with no authority to control the design, manufacture, packaging, or labeling of the products.[1]

Instead, Plaintiffs' allegations improperly lump all Distributors, Retailers, and Pharmacies together and merely state "upon information and belief" that: (1) those groups "systematically exposed ranitidine to excessive levels of heat and humidity that violated the instructions on the products' labels"; and (2) those groups "failed to implement rigorous policies to ensure substantial compliance with the heat and humidity requirements on product labels." *Id*. ¶¶ 2214-15. Plaintiffs do not allege, however, which Distributor, if any, systematically exposed

---

[1] Repackagers Amerisource Health Services, LLC, Geri-Care Pharmaceuticals, Corp. and Golden State Medical Supply, Inc., categorized as Distributors in the AMPIC, fill a slightly different role in the supply chain; however, the claims against them as pled are equally susceptible to dismissal as described herein.

ranitidine to "excessive" levels of heat and humidity or how such systematic exposure purportedly occurred. And Plaintiffs do not allege which Distributor allegedly failed to implement rigorous policies or how that was done. Plaintiffs' only attempt at purported factual support is the undifferentiated speculation against all Distributors, all Retailers, and all Pharmacies that, upon information and belief, some ranitidine may have been shipped via the mail and such mailing may have failed to guarantee temperature and humidity. *Id*. ¶ 2216. Plaintiffs do not allege which Distributor, if any, engaged in any of the conduct in the allegations or which of the potential Plaintiffs were affected by the conduct. Instead they conclude only that "Retailer and Distributor Defendants, directly or indirectly, transported, stored, handled, and/or sold ranitidine-containing products that were used by Plaintiffs." *Id*. ¶ 2217.

At bottom, Plaintiffs allege no facts that give rise to a cause of action against Distributors. The Court should dismiss Plaintiffs' claims against Distributors with prejudice.

## III.   __PROCEDURAL HISTORY__

Pursuant to Pretrial Order No. 36, ECF No. 1346, Defendants at all levels of the supply chain filed two rounds of motions to dismiss in Fall 2020. Distributors filed their Motion to Dismiss on Preemption Grounds ("Round 1 Motion") on August 24, 2020, ECF No. 1583.[2]

On December 31, 2020, the Court issued its Order granting Distributors' Round 1 Motion. In the Order, the Court dismissed all of Plaintiffs' claims against Distributors in the MPIC, and the Consolidated Consumer Class Action Complaint, ECF No. 889. The vast majority of Plaintiffs' claims, which were based on the design, manufacture, and labeling of ranitidine, were dismissed with prejudice on preemption grounds because the Court recognized that such

---

[2] Distributors filed their Motion to Dismiss on Various State Law Grounds ("Round 2 Motion") on October 8, 2020, ECF No. 2045. After the Court granted Distributors' Round 1 Motion, the Round 2 Motion was denied as moot. ECF No. 2513.

claims cannot stand against Distributors. The Court held that "plain reading[s]" of *Pliva, Inc. v. Mensing*, 564 U.S. 604 (2011) and *Mutual Pharmaceutical Co. v. Bartlett*, 570 U.S. 472 (2013) supported Distributors' three primary preemption arguments: (1) that any state-law claim based on a faulty label was preempted under *Mensing*; (2) that any state-law claim based on drug design was preempted under *Bartlett*; and (3) that Plaintiffs' stop-selling argument was rejected in *Bartlett*. *See* Order at 24-25. The Court allowed Plaintiffs only a limited opportunity to replead their general negligence count and derivative counts (Loss of Consortium, Survival Actions, and Wrongful Death) and a count pursuant to the Magnuson-Moss Warranty Act. *See id.* at 40-44. But the Court specifically directed Plaintiffs to explain how any repleaded claims against the Distributors could be consistent with their overall theory of liability that ranitidine is defectively designed, manufactured and labeled—a theory of liability that the Court dismissed with prejudice against Distributors. *Id.* at 36-37.

Plaintiffs filed the AMPIC on February 8, 2021, ECF No. 2759. The AMPIC alleges seventeen counts against various groups of Defendants. The only counts that include Distributors are Count X: Negligent Storage and Transportation Outside the Labeled Range, and four counts against all Defendants, Count XIV: Unjust Enrichment; Count XV: Loss of Consortium; Count XVI: Survival Actions; and Count XVII: Wrongful Death. Each of the counts includes fifty-two state law-based "sub-counts" alleging violations under the laws of each state, the District of Columbia, and Puerto Rico. AMPIC ¶¶ 2207-2432, 2722-3267. Distributors were not named as defendants in either of the putative class action complaints.

## IV.   ARGUMENT

### A.   Legal Standard on Motion to Dismiss Pursuant to Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, the Supreme Court has made clear that a complaint must contain sufficient facts to state

a claim for relief against the specific defendant that is plausible on its face. *Dapeer v. Neutrogena Corp.*, 95 F.Supp.3d 1366, 1372 (S.D. Fla. 2015) (citing *Iqbal*, 556 U.S. at 678); *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint's factual allegations must be enough to raise a right to relief above speculative level. *Twombly*, 550 U.S. at 555. Without sufficient factual allegations in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests. *Id.* at 555 n.3; *see also Brown v. Air Line Pilots Ass'n*, 813 F. App'x 353, 355 (11th Cir. 2020).

A complaint must contain sufficient allegations to "state a claim for relief that is plausible, not merely possible." *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court ruling on a motion to dismiss need not accept mere conclusions as factual allegations. *Quality Auto Painting Ctr. of Roselle*, 917 F.3d at 1260 (citing *Iqbal*, 556 U.S. at 678).

The Eleventh Circuit has determined that courts do not have to take as true allegations based upon information and belief. *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (rejecting plaintiff's allegations based "upon information and belief" as insufficient under *Twombly*). "Factually unsupported allegations based 'on information and belief' are not entitled

to the assumption of truth." *See De La Cruz v. Nordstrom, Inc.*, No. 19-80109-CIV, 2019 WL 3412172, at *2 (S.D. Fla. May 2, 2019) (Reinhart, M.J.), *report & recommendation adopted*, 2019 WL 3408923 (S.D. Fla. May 24, 2019) (Rosenberg, J.) (citation omitted); *see also Scott v. Experian Info. Sols., Inc.*, No. 18-CV-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and **allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard**.") (emphasis added) (citation omitted).

### B. The AMPIC is an Improper Shotgun Pleading that Fails to Meet the Requirements of Rule 8

As this Court and other courts within the District have repeatedly held, group pleading does not "satisfy the minimum standard of Rule 8*." Lane v. Cap. Acquisitions & Mgmt. Co.*, No. 04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006); *see also* Order on Defendants' Motion to Dismiss on Grounds of Impermissible Shotgun Pleading at 19, ECF No. 2515 (finding Plaintiffs failed to satisfy Rule 8 by lumping Defendants together without any factual basis to distinguish their conduct); *Chiron Recovery Ctr., LLC v. United Healthcare Servs., Inc.*, No. 9:18-CV-81761, 2020 WL 3547047, at *5 (S.D. Fla. June 30, 2020) (Rosenberg, J.); *Petrovic v. Princess Cruise Lines, Ltd.*, No. 1-21588-CIV, 2012 WL 3026368, at *3 (S.D. Fla. July 20, 2012) ("[A] complaint that 'lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct' fails to satisfy Rule 8.") (citation omitted). Because the AMPIC's claims do not distinguish between the individual Defendants' conduct, it violates Rule 8.

"Rule 8(a) requires that any claim for relief contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" ECF No. 2515 at 17 (quoting Fed. R. Civ. P. 8(a)(2)). A shotgun pleading fails "to give the defendants adequate notice of the claims against

them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).

The AMPIC "indiscriminately lumps all defendants together" in its allegations and claims, and accordingly does not satisfy Rule 8. *Fox v. Loews Corp.*, 309 F.Supp.3d 1241, 1249 (S.D. Fla. 2018). Plaintiffs assert Count X "[a]gainst All Retailer and Distributor Defendants," AMPIC ¶¶ 2207-24, which includes close to thirty distinct Defendants who have different roles in the pharmaceutical supply chain, and none of the AMPIC's factual allegations "specif[y] which Defendant engaged in what conduct." *Regenicin, Inc. v. Lonza Walkersville, Inc.*, 997 F.Supp.2d 1304, 1313 (N.D. Ga. 2014). Indeed, this Court previously recognized the Distributors' unique role, having found: "The Court is particularly concerned by the way in which the MPIC lumps MPIC Shotgun Defendants across entire groups (*e.g.,* Retailers grouped with Distributors[]). The Court understands certain groups to conduct fundamentally different activities than others[.]" ECF No. 2515 at 19.

Plaintiffs make no specific allegations against any of the Distributors individually. Indeed, the only time that Plaintiffs even substantively refer to each Distributor by name and not the "Distributor Defendants" is in the paragraphs describing the parties to the litigation. *See* AMPIC ¶¶ 155-67. The only substantive count against Distributors (Count X) is against "All Retailer and Distributor Defendants," and includes no allegations about what any individual Retailer or Distributor purportedly did or did not do or how that alleged action or inaction affected any Plaintiff. The Count only contains broad assertions that lump all Retailers and Distributors together and conclude that all Retailers and Distributors potentially took any number of alleged actions "directly or indirectly." *See id.* ¶ 2217.

Plaintiffs' allegations against Distributors do not satisfy Rule 8 and the AMPIC must be

dismissed. Having twice failed to comply with the Court's direction and clear case law prohibiting shotgun pleading, it is evident that Plaintiffs cannot plead the requisite facts against each Distributor and Plaintiffs should not be allowed a third bite at the apple. The Court should dismiss all claims against Distributors with prejudice. *See Jackson v. Bank of Am. N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018) (dismissing amended complaint with prejudice because plaintiffs failed to correct shotgun pleading deficiencies from initial complaint).

> **C.     In Addition to Improper Shotgun Pleading, Plaintiffs Failed to Allege Factual Allegations to Demonstrate a Plausible Negligence Claim Against Distributors**

To plead negligence, "a plaintiff must allege that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages." *Nat'l Fire Ins. Co. of Hartford v. Johnson Controls Fire Prot. LP*, No. 2:19-CV-14050, 2019 WL 5079673, at *2 (S.D. Fla. Oct. 10, 2019) (Rosenberg, J.)[3] (citing *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001)). Plaintiffs do not plausibly allege each element of a negligence claim, and accordingly, the claim must be dismissed.

> 1.     Plaintiffs Do Not Plausibly Allege a Breach of Any Duty Owed to Plaintiffs by Distributors

> a.     Plaintiffs Have Not Plausibly Alleged Negligence Against Distributors Based on a "Heating Theory"

The Court permitted Plaintiffs to attempt to replead a claim related to their "heating theory," *i.e.*, that Distributors "should be held liable for storing ranitidine at an elevated temperature prohibited by *both* federal law and state law[.]" Order at 35. But Plaintiffs do not allege sufficient facts showing that Distributors breached any duty owed to Plaintiffs as is

---

[3] This case was decided under Florida law, but the primary elements are typical of negligence claims everywhere.

required to plausibly plead a negligence claim. There are no plausible factual allegations that Distributors had a duty to Plaintiffs, no plausible factual allegations that Distributors failed to comply with some duty, and no plausible factual allegations that Plaintiffs were injured as a result. *See generally* AMPIC. Simply, there are no factual allegations sufficient to fulfill the requirements of *Twombly* and *Iqbal*.

Instead, Plaintiffs attempt to bootstrap a claim with a single purported "example" of alleged negligence against this large group of Defendants, namely, an allegation that "Retailer and Distributor Defendants shipped ranitidine-containing products through the mail," and that this purportedly allowed the ranitidine to be "systematically exposed [] to excessive levels of heat and humidity that violated the instructions on the products' labels." *See* AMPIC ¶¶ 2214, 2216. But, Plaintiffs do not allege any facts to support this conclusion specific to any Distributor; thus, the allegation fails to meet the *Twombly* and *Iqbal* pleading standards.[4]

These first allegations against Distributors do not occur until *436 pages* into the AMPIC, and state, "[u]pon information and belief, Retailer and Distributor Defendants systematically exposed ranitidine to excessive levels of heat and humidity that violated the instructions on the products' labels." *Id.* ¶ 2214. Plaintiffs' only purported support for this conclusory allegation is another conclusion that "Retailer and Distributor Defendants" allegedly shipped product through the mail. *Id.* ¶ 2216. First, this allegation is impermissible shotgun pleading, as it attempts to

---

[4] Plaintiffs allege, "Pursuant to 21 C.F.R. § 211.142(b), the warehousing of drug products shall provide for '[s]torage of drug products under appropriate conditions of temperature, humidity, and light so that the identity, strength, quality, and purity of the drug products are not affected.' In other words, Defendants had a duty and were obligated to properly store, handle, and warehouse ranitidine." AMPIC ¶ 448. Plaintiffs are incorrect to the extent that they assert that all "Defendants" had an obligation under § 211, which provides requirements for drug *manufacturers*. 21 C.F.R. § 211.1 (providing the scope of section 211: "The regulations in this part contain the minimum current good manufacturing practice for preparation of drug products (excluding positron emission tomography drugs) for administration to humans or animals.").

wrap every Distributor and every Retailer into the same allegation without differentiation. This is particularly egregious here where Plaintiffs do not specifically allege, nor can they do so under Rule 11, *that any Distributor actually ever shipped ranitidine through the mail*. And this lack of plausibility is enhanced by the absence of any facts showing that a specific shipment of ranitidine was ever exposed to excessive heat or humidity because of mail deliveries, deficient policies, or otherwise (let alone which Distributor, Retailer, or Pharmacy, if any, shipped that specific shipment of ranitidine). Second, as the allegation is based only "upon information and belief," this Court has no obligation to assume that it is true. *See Mann*, 713 F.3d at 1315. And, third, to plausibly allege a violation based on shipping product through the mail, Plaintiffs are required to plead not only that use of mail or other alleged practices caused the ranitidine to exceed the temperature and humidity range, but did so for an amount of time exceeding the tolerance prescribed by the US Pharmacopeia, which sets limits for permissible excursions outside of the labeled range.[5] There are no such allegations in the AMPIC.

Rather than put forth specific factual allegations supporting the conclusory assertion that Distributors had a global policy or practice to "systematically expose" ranitidine to temperature and humidity levels outside of the FDA-approved range (AMPIC ¶ 2214), the AMPIC merely engages in circular reasoning to conclude that Distributors must have exposed ranitidine to excessive heat and humidity because samples of tested products allegedly have shown different levels of NDMA. *See id.* ¶¶ 2212, 2214-15. That argument does nothing to make the allegations

---

[5] USP <659> Packaging and Storage Requirements provides the allowable excursion information for controlled room temperature products like ranitidine: "The temperature maintained thermostatically that encompasses the usual and customary working environment of 20°–25° (68°–77° F). MKT [Mean Kinetic Temperature] may be used during an excursion provided: 1) MKT does not exceed 25° (77° F); 2) excursion between 15° and 30° (59° and 86° F); 3) transient excursions are NMT 40° (104° F); and 4) excursion time is NMT 24 h."

against Distributors plausible as ranitidine was not under the Distributors' exclusive possession and control during all phases of the supply chain—a fact which Plaintiffs concede. *See, e.g.*, *id.* ¶ 155 ("Distributors purchase bulk ranitidine-containing products from the Brand-Name Manufacturer Defendants and Generic Manufacturer Defendants and then sell to the Retailer Defendants.").

The lack of any plausible claim against Distributors is further highlighted by the reasons identified by the Court in its Order. The Court laid out several "concerns" that Plaintiffs needed to address to be able to plausibly plead this type of negligence theory against Distributors. Order at 37-39. The Court instructed Plaintiffs to address the following:

> [1] Can the Plaintiffs plead in good faith that any Defendant had a *policy* to store ranitidine products at temperatures above those approved by the FDA?

> [2] If *individual* stores negligently stored ranitidine at unsafe, heated temperatures, how is that a global, MDL-based issue?

> [3] Finally, how is a high-temperature allegation consistent with the Plaintiffs' core theory of the case? . . . Stated differently, it is the Plaintiffs' theory that the Plaintiffs' harm was caused at the very moment ranitidine was manufactured—the Plaintiffs have not alleged that, for some period of time, the ranitidine molecule was safe to consume but, because the Defendants negligently overheated the drug, the drug became unsafe to consume and therefore caused injury to a Plaintiff . . . Should the Plaintiffs proceed with a high-temperature theory, the Plaintiffs must explain how that *specific* theory of liability is compatible with the Plaintiffs' *global* theory of liability.

*Id.* at 36-37. Plaintiffs failed to address any of the Court's concerns in the AMPIC.

Plaintiffs have abandoned their theory that any Distributor had a policy to store ranitidine at temperatures above those approved by the FDA, and raise no allegations to that effect in the AMPIC. That is because no such policies exist.

Similarly, rather than attempt to explain how individual stores (or, for Distributors, individual distribution facilities) negligently stored ranitidine at heated temperatures would be a

global, MDL-based issue, Plaintiffs attempted to sidestep the Court's second question by alleging another hollow conclusion, namely an alleged failure to adopt "rigorous" policies to "ensure substantial compliance with the heat and humidity requirements on product labels." AMPIC ¶ 2215. But this fails under *Twombly* and *Iqbal* for the reasons given above. Indeed, Plaintiffs do not allege any specific facts to show that even a single dose of ranitidine was improperly stored by a single Distributor and exposed to heated temperatures that led to NDMA formation.

Finally, there are also no allegations demonstrating how Plaintiffs' theory that heat causes NDMA formation is consistent with Plaintiffs' overall theory that NDMA naturally forms under normal conditions or when ingested. Plaintiffs instead maintain the incongruous and unreconciled allegations that ranitidine is inherently defective and that certain storage conditions cause ranitidine to become defective. *Compare, e.g.*, AMPIC ¶ 390 ("[T]he FDA acknowledged that testing revealed that NDMA levels in ranitidine products stored at room temperature can increase with time to unacceptable levels") *with* ¶ 2212 ("The best inference must be that substantial variation in heat and humidity is causing differing amounts of NDMA to form."). Plaintiffs' failure to address this inconsistency violates the Court's directive that "Plaintiffs must explain how" any heating theory of liability "is compatible with" their global theory that ranitidine is harmful at the moment of manufacture. Order at 36-37.

  b. <u>Plaintiffs Have Not Plausibly Alleged Negligence Against Distributors Based on a "Cooling" Theory</u>

The Court also permitted Plaintiffs to attempt to replead a "cooling theory", *i.e.*, that Distributors "should be held liable for not storing ranitidine at the low-end of a federally-approved range[.]" But Plaintiffs also have not plausibly alleged negligence against Distributors under a cooling theory, and their lack of facts fails to address the Court's order that they respond

to specific concerns the Court raised regarding any "cooling theory" against the Distributors.

First, it is unclear whether Plaintiffs even attempted to plead such a theory. The only allegations that could arguably be construed as attempting to plead a "cooling" theory are two sentences at the end of Paragraph 2210 of the AMPIC: "Pharmaceutical transportation companies are well aware of the importance of precise temperature control down to the degree, and advertise on their ability to provide precise, quality service. More precise, colder transportation is, of course, more expensive than less precise, warmer transportation." That single, vague assertion cannot be construed as a factual allegation or legal authority that Distributors breached a duty owed to Plaintiffs to store ranitidine at the low-end of the *federally-approved* temperature range, or that such an alleged breach caused any injury. But, to the extent that Plaintiffs may argue (erroneously) that it does, it also fails to address any of the Court's concerns about this theory of liability.[6] These throw-away sentences come nowhere close to making the necessary plausible allegations to state a negligence claim under the *Twombly* and *Iqbal* pleading standard.

Similar to the heating theory concerns, the Court instructed Plaintiffs to respond to several concerns with respect to Plaintiffs' "cooling theory" of liability to support a negligence claim against Distributors:

> [1] How can a Defendant be found liable for storing a drug in accordance with a drug's label? . . . The Plaintiffs should provide authority for the proposition that (i) if a federally-approved label permits a party to store a drug at a specific temperature, nonetheless (ii) a state may impose liability for storing a drug at that temperature.

---

[6] Indeed, Plaintiffs' own title for the only substantive count against Distributors confirms that Plaintiffs are not making the argument that Distributors should have stored it at the low-end of the federally-approved range as the count refers only to "*outside the labeled range*." *See* AMPIC Count X, Negligent Storage and Transportation Outside the Labeled Range.

> [2] How were the Defendants to arrive at the conclusion that they should store ranitidine at the low-end of a federally-approved range? . . . The Plaintiffs have provided no authority for the proposition that Defendants had a duty under state law to hire independent scientists to determine where, in a federally-approved temperature range, a drug should be stored.
>
> [3] Finally, if the Plaintiffs challenge the appropriateness of the upper-range of a federally-approved label, does that amount to the charge that Defendants may have a burden, imposed by state law, to deviate from the conditions *permitted* on a federally-approved label?

Order at 38-39. Again, Plaintiffs entirely failed to address the Court's concerns.

There are no allegations that Distributors had an obligation to store and ship product at the cooler end of the approved labeled temperature range, and Plaintiffs offer no authority that Distributors can be held liable for following the ranges approved by the FDA.

Plaintiffs' two vague sentences do not show "how a Defendant can be found liable for storing a drug in accordance with the drug's label," and do not provide any support for such a contention. Nor do these allegations show how Defendants were to "arrive at the conclusion that they should store ranitidine at the low-end of the federally-approved range." Plaintiffs offer no authority to support and make no allegations that Distributors have an obligation to conduct testing to determine where in the federally-approved range a drug should be stored.

Finally, to the extent Plaintiffs seek to make the argument that Distributors have a burden under state law to deviate from the federally-approved label requirements that they receive from manufacturers, they have failed. They do not show what state law may have required Distributors to deviate from the label—to the extent any exists—and do not demonstrate how Plaintiffs could make such an argument based on this Court's prior ruling on federal preemption under *Mensing*

and *Bartlett*.[7] And, as this Court previously explained, Distributors have no ability to alter an FDA-approved label, and accordingly, such claims are preempted. *See* Order at 30-32; *see also Smith v. Teva Pharms. USA, Inc.*, 437 F.Supp.3d 1159, 1165-67 (S.D. Fla. 2020) (determining that federal law prohibited distributors from changing labels and, accordingly, failure to warn claims against them were preempted).

2.      Plaintiffs Fail to Plausibly Allege Causation Against Distributors

Even if Plaintiffs could plausibly plead that Distributors had a duty to Plaintiffs, which they have not done in the AMPIC, Plaintiffs fail to allege causation against Distributors as required for a viable negligence claim. Plaintiffs' allegations do not meet the *Twombly* and *Iqbal* standard that requires allegations to show that a claim is not merely possible; it must be plausible. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557.

Plaintiffs have not alleged *any* plausible facts suggesting that Distributors' conduct caused any individual Plaintiff's alleged harm, or caused with substantial likelihood the alleged harm. At best, Plaintiffs allege only a theoretical possibility, namely that it is possible that some action of some Distributor (or Retailer, as they are lumped together) may have increased by some unidentified amount the level of NDMA in some shipment of ranitidine. But, that is not sufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (explaining that plaintiffs must plead more than a possibility that defendants have acted unlawfully). To the extent that Plaintiffs allege that any ranitidine was exposed to temperatures outside of the labeled range (which they have not done) and that NDMA formed because of that exposure (which they have not done), that alleged exposure could have occurred during any phase of manufacture,

---

[7] As permitted by the Court's Order Granting Leave to Incorporate Certain Arguments, ECF No. 3085, Distributors incorporate and adopt the preemption arguments related to the storage and transportation claims at Section III.D.1 of the Generics' Motion to Dismiss on Preemption.

distribution, or sale of the product. Or, any alleged exposure could have occurred because the Plaintiff stored the product incorrectly. No matter, there are no allegations that any specific Plaintiff ingested any ranitidine that had increased NDMA to a harmful level due to conditions the product was subjected to by Distributors.

For this additional reason, the Court should dismiss with prejudice Plaintiffs' Count X Negligent Storage and Transportation Outside the Labeled Range.

### D.     Plaintiffs' Conclusory State Law Sub-Counts Against Distributors Must Also Be Dismissed

Plaintiffs allege fifty-two state law-based sub-counts under Count X Negligent Storage and Transportation Outside the Labeled Range. None of those sub-counts can survive Distributors' Motion to Dismiss.

The allegations in all 52 sub-counts are identical other than changing the state name in each count. *Compare, e.g.*, AMPIC ¶¶ 2253-56 (Delaware) *with* ¶¶ 2329-32 (Montana). There are no state-specific factual allegations addressing the specifics of each state law. Rather each sub-count contains the same conclusory and barren legal assertions of duty, breach, and causation. And, as this Court has previously noted, there is no obligation to "accept legal conclusions couched as factual allegations." ECF No. 2515 at 15 (citing *Diverse Power, Inc. v. City of LaGrange*, 934 F.3d 1270, 1273 (11th Cir. 2019)).

Thus, the sub-counts suffer the same deficiencies as the primary count, Count X, in that there are no factual allegations plausibly alleged against any Distributor that demonstrate negligence. For example, there are no allegations that any Distributor shipped a specific shipment to Arizona and that specific shipment was the direct cause of any single Arizona Plaintiff's alleged injury. There are similarly no allegations that any Distributor shipped a specific shipment to Wyoming that was the direct cause of any single Wyoming Plaintiff's

alleged injury. The same is true for each of the remaining forty-eight states, the District of Columbia, and Puerto Rico. Indeed, Plaintiffs' allegations are so perfunctory that they even plead sub-counts under state laws in numerous states for which *no Plaintiff has filed a short form complaint against Distributors to their knowledge* (*e.g.*, Alaska (¶¶ 2229-32), New Hampshire (¶¶ 2341-44), and West Virginia (¶¶ 2421-24)).

Even if Plaintiffs' copied and pasted sub-counts were sufficient as a general matter, which they are not, those sub-counts still fail. Every state requires duty, breach, causation, and damages as part of a general negligence claim, and therefore for all of the reasons that the general negligence claims fails, so do all state law claims. As discussed above, Plaintiffs have not plausibly alleged any duty owed by Distributors to the Plaintiffs, that the Distributors breached, that was the cause for Plaintiffs' alleged injuries.

Moreover, Plaintiffs have not actually pled state claims as required by the Court's Order because they have not demonstrated specific state-law based violations for each individual Plaintiff. While every negligence claim requires the same basic elements, many states have nuances that Plaintiffs' allegations entirely fail to address.

For example, under Florida law, comparative negligence "allows a court to apportion liability between a negligent defendant and a negligent plaintiff." *Giter v. United States*, No. 3:08-CV-622, 2010 WL 375929, at *4 (M.D. Fla. Jan. 25, 2010) (finding for defendant on negligence claim because plaintiff failed to prove that defendant's negligence was proximate cause of accident). But Maryland does not recognize comparative negligence, and a plaintiff's negligence creates a complete bar to recovery. *McCoy v. Biomet Orthopedics, LLC*, No. CV ELH-12-1436, 2021 WL 252556, at *31 (D. Md. Jan. 25, 2021) (citation omitted); *see also Gallardo v. FedEx Kinko's Office & Print Servs., Inc.*, No. 08–cv–00392, 2008 WL 2143011,

at *2-3 (D. Md. May 12, 2008) (granting defendant's motion to dismiss in part on grounds that plaintiff was contributorily negligent). Different still is South Dakota, which permits a plaintiff to recover despite his contributory negligence *if* his contributory negligence was "slight" in comparison with the negligence of the defendant. *Gray v. MacArthur Co.*, No. CIV. 16-5095, 2020 WL 999007, at *4-5 (D.S.D. Mar. 2, 2020) (citing SDCL § 20-9-2). Plaintiffs have alleged no facts to plead causes of action under these states, or any of the other forty-nine jurisdictions for which they allege sub-counts.

### E.   Because Plaintiffs Fail to State a Claim Against Distributors for Negligence, Plaintiffs' Derivative Claims Against Distributors Also Fail

Counts XV, Loss of Consortium, XVI, Survival Actions, and XVII, Wrongful Death are also alleged against Distributors. Each of those claims is a derivative claim that cannot survive without an underlying viable substantive claim. *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 936 (6th Cir. 2014) (affirming lower court's dismissal of "derivative claims" for wrongful death, survivorship, loss of consortium, and punitive damages because the underlying claims were dismissed); *see also* Order at 44. As explained above, Plaintiffs have failed to plausibly allege any viable negligence claim against Distributors in the AMPIC. Thus, because Plaintiffs have not plausibly alleged an underlying substantive claim against Distributors, Counts XV, XVI, and XVII must also be dismissed with prejudice.

### F.   Plaintiffs Improperly Plead Count XIV Unjust Enrichment Against Distributors as it was Dismissed with Prejudice in the Court's Order

Plaintiffs improperly allege Count XIV Unjust Enrichment against "all Defendants." The paragraph of the Order permitting Plaintiffs to replead derivative counts does not include unjust enrichment (MPIC Count XII). Order at 44. It refers only to MPIC Counts XIII (Loss of Consortium), XIV (Survival Actions), and XV (Wrongful Death). *Id*. The relevant discussion of MPIC Count XII, Unjust Enrichment, is in the *Mensing* and *Bartlett* analysis that concludes that

the claims are dismissed *with prejudice*. *See id*. at 26-28 ("The Plaintiffs' twelfth count, Unjust Enrichment, alleges that the Defendants omitted disclosures that ranitidine consumption presented an unreasonable risk. *Id*. ¶ 631."). Plaintiffs have included precisely the same allegations in Count XIV in the AMPIC as were included as MPIC Count XII. *Compare* AMPIC ¶¶ 2723-30 *with* ECF No. 887 ¶¶ 629-36. Thus, Plaintiffs improperly repleaded Unjust Enrichment against the Distributors and the Court should again dismiss Count XIV Unjust Enrichment with prejudice.

      **G.**    **Plaintiffs Have Not Pled a Claim for Punitive Damages**

      Plaintiffs seek punitive damages from all Defendants for all harms "where available," AMPIC ¶ 475, but, once again, Plaintiffs did not plead any facts to support that claim. First, punitive damages are a derivative claim that relies on an underlying substantive claim to be viable. *See In re Darvocet*, 756 F.3d at 936. Here there is none. Second, even if a viable underlying claim existed, Plaintiffs have not alleged any facts necessary to support punitive damages. For example, to plead punitive damages under Florida law, courts require a showing of "wanton, wilful, or outrageous conduct." *Clooney v. Geeting*, 352 So.2d 1216, 1219 (Fla. 2d DCA 1977). The Florida Supreme Court characterized this as conduct equivalent to the culpability "necessary to sustain a conviction for [criminal] manslaughter." *White Constr. Co. v. DuPont*, 455 So.2d 1026, 1028-29 (Fla. 1984) (internal quotation marks omitted). The allegations in the AMPIC do not allege such conduct by Distributors. Because Plaintiffs have made no effort to plead any facts that could support punitive damages against Distributors, that claim must be dismissed.

**V.**    **<u>CONCLUSION</u>**

      Accordingly, for the foregoing reasons, Distributors respectfully request the dismissal of all claims against them with prejudice.

Dated: March 24, 2021

Respectfully submitted,

*/s/ Andrew D. Kaplan*
Andrew D. Kaplan
*Acting Liaison Counsel for Distributor*
*Defendants*

Spencer H. Silverglate
Craig Salner
Trevor J. Gillum
Shannon P. McKenna
Clarke Silverglate, P.A.
799 Brickell Plaza, 9th Floor
Miami, FL 33131
(t) (305) 377-0700
(f) (305) 377-3001
SSilverglate@cspalaw.com
CSalner@cspalaw.com
SMcKenna@cspalaw.com
TGillum@cspalaw.com

*Counsel for Defendant McKesson*
*Corporation*

Larry R. Wood, Jr.
Lauren E. O'Donnell
Blank Rome LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
(t) (215) 569-5659
(f) (215) 832-5735
LWood@BlankRome.com
ODonnell@BlankRome.com

*Counsel for Defendants AmerisourceBergen*
*Corporation and Amerisource Health*
*Services, LLC*

Andrew D. Kaplan
Daniel T. Campbell
Lyndsay A. Gorton
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(t) (202) 624-2500
(f) (202) 628-5116
AKaplan@crowell.com
DCampbell@crowell.com
LGorton@crowell.com

*Counsel for Defendant Cardinal Health, Inc.*

Julie Bork Glassman
Eduardo Cosio
COSIO LAW GROUP
1430 S. Dixie Hwy., Suite 202
Coral Gables, FL 33146
Tel: 305-567-0503
j.glassman@cosiolaw.com
ecosio@cosiolaw.com

*Counsel for Defendant Geri-Care*
*Pharmaceuticals Corporation*

Richards H. Ford
WICKER SMITH O'HARA MCCOY &
FORD, P.A.
390 N. Orange Ave., Suite 1000
Orlando, FL 32801
Tel: (407) 843-3939
ORLcrtpleadings@wickersmith.com
rford@wickersmith.com

*Counsel for Defendant Golden State Medical*
*Supply, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of March 2021, a true and correct copy of the

foregoing Distributor Defendants' Motion to Dismiss for Failure to State a Claim and

Memorandum of Law in Support of Same was filed electronically through the CM/ECF system,

which will send notice of filing to all CM/ECF participants.

*/s/ Andrew D. Kaplan*
_____
Andrew D. Kaplan
