**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IN RE: ZANTAC (RANITIDINE)                           MDL   NO.   2924
PRODUCTS LIABILITY                                       20-MD-2924
LITIGATION

                                          **JUDGE ROBIN L. ROSENBERG**
                              **MAGISTRATE JUDGE BRUCE E. REINHART**

_____/

**THIS DOCUMENT RELATES TO ALL CASES**

_____

**SPECIALLY-APPEARING NON-U.S. GENERIC MANUFACTURER
DEFENDANTS' RENEWED MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION AND INCORPORATED MEMORANDUM OF LAW**
_____

# TABLE OF CONTENTS

Page

I.     FACTUAL AND PROCEDURAL BACKGROUND..........................................................1

    A.     Procedural Status ..................................................................................................1

        1.     Plaintiffs' Original Complaints Contained Insufficient Jurisdictional Allegations ...................................................................................................1

        2.     Plaintiffs Sought and Received Jurisdictional Discovery...........................2

        3.     Plaintiffs' Amended Complaints Contain the Same Insufficient Jurisdictional Allegations..........................................................................2

    B.     Foreign Defendants ...............................................................................................4

        1.     Apotex Inc.................................................................................................4

        2.     Ajanta Pharma Ltd. ("APL") ....................................................................5

        3.     Aurobindo Pharma Ltd. .............................................................................5

        4.     Cadila Healthcare Ltd. ("Cadila")..............................................................6

        5.     Wockhardt Ltd. .........................................................................................6

II.     LEGAL STANDARD..................................................................................................7

III.     ARGUMENT ..............................................................................................................8

    A.     Foreign Defendants Are Not Subject to General Personal Jurisdiction in the United States .........................................................................................................8

        1.     Foreign Defendants Are Not "at Home" in the United States ....................8

        2.     Foreign Defendants' Relationship with a U.S. Entity Does Not Allow this Court to Exercise General Jurisdiction .................................................9

    B.     Foreign Defendants Are Not Subject to Specific Personal Jurisdiction in the United States .......................................................................................................10

        1.     Plaintiffs' Claims Do Not Arise out of or Relate to Foreign Defendants' Contacts with the Forum .......................................................11

        2.     Foreign Defendants Did Not Purposefully Avail Themselves of Any Specific State's Laws................................................................................13

        3.     Exercising Personal Jurisdiction over Foreign Defendants Would Violate Traditional Notions of Fair Play and Substantial Justice .............18

    C.     No Additional Jurisdictional Discovery Is Permitted or Necessary .....................19

IV.     CONCLUSION.........................................................................................................20

i

## **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*,
817 F.3d 755 (Fed. Cir. 2016)..........................................................................................12, 13

*Aronson v. Celebrity Cruises, Inc.*,
30 F. Supp. 3d 1379 (S.D. Fla. 2014) .....................................................................................9

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
480 U.S. 102 (1987)................................................................................................................15

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty*,
137 S. Ct. 1773 (2017)..................................................................................................8, 11, 14

*Buckman Co. v. Plaintiffs' Legal Comm.*
531 U.S. 341 (2001)................................................................................................................13

*Cannon Manuf.Co. v. Cudahy Packing Co.*,
267 U.S. 333 (1925)..................................................................................................................9

*Consol. Dev. Corp. v. Sherritt, Inc.*,
216 F.3d 1286 (11th Cir. 2000) ....................................................................................7, 9, 10

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)......................................................................................................*passim*

*D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*,
566 F.3d 94 (3d Cir. 2009)......................................................................................................14

*Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.*,
2020 WL 5757083 (S.D. Fla. Sept. 28, 2020) .......................................................................10

*Garcia v. Wells Fargo Bank Northwest NA Trustee*,
2011 WL 3439530 (S.D. Fla. Aug. 5, 2011)..........................................................................19

*Goodyear Dunlop v. Brown*,
564 U.S. 915 (2011)........................................................................................................8, 9, 11

*Hanson v. Denckla*,
357 U.S. 235 (1958)................................................................................................................19

*In re Takata Airbag Prod. Liab. Litig.*,
396 F. Supp. 3d 1101 (S.D. Fla. 2019) .............................................................................13, 15

ii

*Intern'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)...................................................................................................18

*Internet Sols. Corp. v. Marshall*,
   557 F.3d 1293 (11th Cir. 2009) ...................................................................................8

*J. McIntyre Machinery, Ltd. v. Nicastro*,
   564 U.S. 873 (2011)........................................................................................... *passim*

*Kernel Recs. Oy v. Mosley*,
   2010 WL 2812565 (S.D. Fla. July 5, 2010)...............................................................10

*Koziol v. Bombardier-Rotax GmbH*,
   2004 WL 5563674 (S.D. Fla. Mar. 23, 2004), *aff'd sub nom. Kozial v.*
   *Bombardier-Rotax GmbH*, 129 F. App'x 543 (11th Cir. 2005)...............................19

*Leon v. Cont'l AG*,
   301 F. Supp. 3d 1203 (S.D. Fla. 2017) .......................................................................14

*Lipsig v. Ramlawi*,
   760 So. 2d 170 (Fla. Dist. Ct. App. 2000) .................................................................10

*Louis Vuitton Malletier, S.A. v. Mosseri*,
   736 F.3d 1339 (11th Cir. 2013) ................................................................7, 8, 11, 18

*Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*,
   288 F.3d 1264 (11th Cir. 2002) ...................................................................................8

*Miller v. Gizmodo Media Grp., LLC*,
   383 F. Supp. 3d 1365 (S.D. Fla. 2019) ................................................................8, 19

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
   558 F.3d 1210 (11th Cir. 2009) ............................................................................11, 18

*Oticon, Inc. v. Sebotek Hearing Sys., LLC*,
   865 F. Supp. 2d 501 (D.N.J. 2011) ............................................................................14

*Pharmacare Health Serv., Inc. v. Wenrich*,
   No. 07-60113-CIV, 2007 WL 9701077 (S.D. Fla. Sept. 7, 2007)...........................10

*Shuker v. Smith & Nephew, PLC*,
   885 F.3d 760 (3d Cir. 2018)........................................................................................14

*Smith v. Poly Expert, Inc.*,
   186 F. Supp. 3d 1297 (N.D. Fla. 2016)......................................................................15

*Smith-Russo v. NCL (Bahamas) Ltd.*,
 2017 WL 5565613 (S.D. Fla. July 26, 2017), report and recommendation
 adopted, 2017 WL 5591639 (S.D. Fla. Aug. 22, 2017) ............................................................9

*Thompson v. Carnival Corp.*,
 174 F. Supp. 3d 1327 (M.D. Fla. 2016) ...................................................................................8

*United Techs. Corp. v. Mazer*,
 556 F.3d 1260 (11th Cir. 2009) ...............................................................................................7

*Viega GmbH v. Eighth Judicial Dist. Court*,
 328 P.3d 1152 (Nev. 2014) .....................................................................................................16

*Waite v. All Acquisition Corp.*,
 901 F.3d 1307 (11th Cir. 2018) ..........................................................................................9, 11

*Walden v. Fiore*,
 571 U.S. 277 (2014) ..............................................................................................7, 8, 11, 18

*Williams v. Romarm, SA*,
 756 F.3d 777 (D.C. Cir. 2014) ....................................................................................14, 15, 16

*Williams v. Yamaha Motor Co.*,
 851 F.3d 1015 (9th. Cir. 2017) ..............................................................................................16

*Woods v. Claris Lifesciences Ltd.*,
 2013 WL 11359141 (D. Ark. 2013) .......................................................................................15

*World-Wide Volkswagen Corp. v. Woodson*,
 444 U.S. 286 (1980) ...............................................................................................................19

*Yepez v. Seven Seas Cruises*,
 2011 WL 3439943 (S.D. Fla. Aug. 5, 2011) ..........................................................................20

*Zanakis v. Scanreco, Inc.*,
 2019 WL 2211872 (S.D. Fla. Feb. 6, 2019) ......................................................11, 13, 15, 19

**Statutes**

21 U.S.C. § 355(j) ...................................................................................................................11

**Other Authorities**

21 C.F.R. § 207.69 ..................................................................................................................15

Fed. R. Civ. P. 11 ....................................................................................................................17

Fed. R. Civ. P. 12(b)(2) .......................................................................................................1, 7

Pursuant to this Court's Pretrial Order #61 and Rule 12(b)(2) of the Federal Rules of Civil Procedure, by special appearance and only for purposes of challenging personal jurisdiction Non-U.S. Manufacturer Defendants, Ajanta Pharma Ltd., Apotex Inc., Aurobindo Pharma Ltd., Cadila Healthcare Ltd., and Wockhardt Ltd. [together, "Foreign Defendants"], submit this Renewed Motion to Dismiss For Lack of Personal Jurisdiction and incorporated memorandum of law. Foreign Defendants responded to jurisdictional discovery months ago (and their U.S. affiliates produced documents relevant to Foreign Defendants in response to the Core Discovery Agreement), and yet Plaintiffs' jurisdictional allegations remain deficient, showing no Court can exercise personal jurisdiction over Foreign Defendants. This issue is ripe for immediate adjudication.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Procedural Status

#### 1.     Plaintiffs' Original Complaints Contained Insufficient Jurisdictional Allegations

Plaintiffs originally named Foreign Defendants and their U.S. counterparts[1] as defendants in one or more of the Master Personal Injury Complaint [Dkt. 887, "MPIC"], Consolidated Consumer Class Action Complaint [Dkt. 889, the "Consumer Compl."], and Consolidated Third Party Payor Class Complaint [Dkt. 888, the "TPP Compl."] [together, "Complaints"] in this multi-district litigation. In their original Complaints, Plaintiffs asserted claims against all Generic Defendants, including Foreign Defendants, related to prescription and/or over-the-counter ranitidine-containing products in states and territories in the United States from 1997 to April 1, 2020. *See*, *e.g.*, MPIC p. 9, ¶ 13; pp. 14-31, ¶¶ 33-144, pp. 48-53, ¶ 251, p. 59, ¶ 301.[2]

Plaintiffs incorrectly alleged that each Foreign Defendant had significant contacts with each of the states and territories of the United States identified in Plaintiffs' Short-Form Complaints or received some financial benefit from their sale of the ranitidine-containing products within each U.S. State and territory. *See*, *e.g.*, MPIC p. 43, ¶ 220; Consumer Compl. p. 43, ¶ 18; TPP Compl. p. 14, ¶ 17. Because these allegations were insufficient to allow a Court to exercise

---

[1] All of the Foreign Defendants are foreign affiliates of U.S. entities.

[2] Page citations are to the page numbers in the official Pacer version on the upper right-hand corner of the page.

personal jurisdiction over Foreign Defendants, Foreign Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction. [Dkt. 2040].

### 2. Plaintiffs Sought and Received Jurisdictional Discovery

Rather than respond to the merits of the Motion to Dismiss, Plaintiffs sought jurisdictional discovery. [Dkt. 2094]. The Court found that the allegations in Plaintiffs' Personal Injury Complaint "alone do not establish a prima facie case of personal jurisdiction because they do not plead facts with any specificity and are not tailored to any of the dozens of Defendants named in the Master Personal Injury Complaint, much less to any [Foreign] Defendant." [Dkt. 2185 p. 4]. Nevertheless, the Court permitted Plaintiffs "to engage in limited and narrowly tailored jurisdictional discovery" as to only four Foreign Defendants who are holders of ANDAs for ranitidine products, to "enable Plaintiffs to respond to the challenge of personal jurisdiction." [Dkt. 2185 pp. 4, 6]. After Magistrate Judge Reinhart defined the permissible scope of jurisdictional discovery [Dkt. 2330], Foreign Defendants responded to Plaintiffs' interrogatories and document requests (over Plaintiffs' objections that they needed more discovery).[3]

At the same time, the other Generic Defendants produced documents and information pursuant to the Core Discovery Agreement and PTO 50, including but not limited to ANDAs, customer lists, FDA communications, NDC information, and storage and shipping standard operating procedures—all showing that Foreign Defendants have insufficient contacts with the United States to subject them to personal jurisdiction here. The jurisdictional and core discovery related to Foreign Defendants was all completed before or days after the numerous opinions the Court issued on December 31, 2020 that ultimately dismissed Plaintiffs' claims against Generic Defendants (including Foreign Defendants). [Dkts. 2512, 2515].

### 3. Plaintiffs' Amended Complaints Contain the Same Insufficient Jurisdictional Allegations

On February 8 and February 22, 2021, Plaintiffs' filed the Amended Master Personal Injury Complaint [Dkt. 2759, the "AMPIC"], the Amended Consolidated Consumer Class Action Complaint [Dkt. 2835, the "Am. Consumer Compl."], and a Consolidated Medical Monitoring Class Action Complaint [Dkt. 2832, the "Med. Monitor. Compl."], respectively.[4] The Amended

---

[3] Magistrate Judge Reinhart denied Plaintiffs' request to take jurisdictional discovery from foreign defendant Cadila Healthcare, Ltd. [Dkt. 2330].

[4] Plaintiffs opted not to file an amended Consolidated Third Party Payor Class Complaint.

Personal Injury Complaint again asserts claims against all Generic Defendants, including Foreign Defendants, related to prescription and/or over-the-counter ranitidine-containing products in states and territories in the United States from 1997 to April 1, 2020. *See, e.g.*, AMPIC ¶¶ 932-62, 1734-64, 1371-1405, 1949-71, 1984-98, 2433-2459. Plaintiffs also assert claims against Apotex, Inc. in the Amended Consumer Complaint and the Medical Monitoring Complaint.[5] *See, e.g.,* Am. Consumer Compl. pp. 43, 49-50, 3367-3557; Med. Monitor. Compl. pp. 1732-2004.

Despite Plaintiffs having the benefit of the jurisdictional discovery and the core discovery produced by Generic Defendants, the jurisdictional allegations remain incorrect and wholly insufficient. Plaintiffs did not attempt to improve their jurisdictional allegations: the jurisdictional allegations in the current Complaints are substantially the same as those in the original Complaints. *Compare* MPIC ¶¶ 220-23, *with* AMPIC ¶¶ 224-27; *compare* Consumer Compl. ¶ 18, *with* Am. Consumer Compl. ¶ 275; Med. Monitor. Compl. ¶¶ 3-4. The substantive changes related to the jurisdiction of Foreign Defendants are limited to additional allegations in the "Parties" section of the Amended Consumer Complaint. For all Foreign Defendants except Cadila, Plaintiffs added two nearly identical allegations: (1) that each Foreign Defendant's U.S. affiliate was the appointed agent in the United States for selling and distributing ranitidine products and for fulfilling a regulatory compliance role for the Foreign Defendant by filing materials with the FDA;[6] and (2) Foreign Defendants "applied to the FDA for the power and privilege of listing and labeling Ranitidine-Containing Products for sale in all states and territories within the United States" and "registered an establishment with the FDA, allowing it to manufacture, repack, or relabel drug products within the United States." AMPIC ¶¶ 42, 44, 54, 56, 62, 64, 142, 144.[7]

---

[5] The other Foreign Defendants are not named in the Amended Consumer Complaint or the Medical Monitoring Complaint.

[6] For Wockhardt Ltd., Plaintiffs also allege that an employee who had responsibility for regulatory filings with the FDA wrote to the FDA in 2004 informing it that Wockhardt Ltd. had an office in Maryland for regulatory purposes. AMPIC ¶ 145. This employee was solely responsible for liaising with the FDA as Wockhardt Ltd.'s U.S. agent at the time. Since no later than 2008, however, Wockhardt Ltd. has had no employee acting as its U.S. agent and Wockhardt USA LLC has served as Wockhardt Ltd.'s U.S. agent for purposes of communication with the FDA. *See* Revised Decl. of Debolina Partap ¶¶ 6-7, attached as Exhibit A.

[7] Plaintiffs make similar allegations as to Apotex in the class complaints. *See* Am. Consumer Compl. ¶ 33; Med. Monitor. Compl. ¶ 35.

Notably, some of Plaintiffs' additional allegations are factually wrong. No Foreign Defendant registered an "establishment" or facility with the FDA that manufactured, repacked, or relabeled drug products *within* the United States. AMPIC ¶¶ 44, 56, 64, 144. All Foreign Defendants' manufacturing facilities are outside the United States—as explained in the declarations and information produced during jurisdictional discovery. Plaintiffs also did not correct statements that the information produced in jurisdictional discovery unequivocally disproves. For instance, all three Complaints still claim that "Defendant Apotex Corporation is a subsidiary of Defendant Apotex Inc.," (AMPIC ¶ 57; Am. Consumer Compl. ¶ 34; Med. Monitor. Compl. ¶ 36), notwithstanding Apotex, Inc.'s production of an organizational chart in jurisdictional discovery demonstrating no parent-subsidiary relationship exists between Apotex, Inc. and Apotex Corp. *See* ApotexInc_0000000038.

Plaintiffs allege only that each Foreign Defendant has significant contacts with each of the states and territories of the United States identified in Plaintiffs' Short-Form Complaints or received some financial benefit from their sale of the ranitidine-containing products within each of the states and territories of the United States. *See*, *e.g.*, AMPIC ¶ 224; Am. Consumer Compl. ¶ 275; Med. Monitor. Compl. ¶ 3. Such generalized shotgun allegations cannot support this Court exercising personal jurisdiction over Foreign Defendants.

### B.      Foreign Defendants

#### 1.      Apotex Inc.

Apotex Inc. is a Canadian company headquartered in Toronto, Ontario, Canada. AMPIC ¶ 55; *see* Decl. of Gordon Fahner, Senior Vice President, Global Finance of Apotex Inc. ¶¶ 2-3, attached as Exhibit B. All Apotex Inc. facilities and officers are located outside of the United States, in Canada and other countries. *See* G. Fahner Decl. ¶ 4. Apotex Inc. is not registered or licensed to do business in any state in the United States. *Id*. at ¶ 5. Apotex Inc. does not maintain offices, facilities, local telephone listings or bank accounts, or lease any real property, or employ any persons anywhere in the United States. *Id*. at ¶ 4. Apotex Inc. did all research, development, and manufacturing for ranitidine products outside the United States. *Id*. at ¶ 6. Apotex Inc. holds four ranitidine Abbreviated New Drug Applications (ANDAs) that it prepared in Canada. *Id*. Apotex Corp. commercialized ranitidine-containing products in the United States. *Id*. at ¶ 7.

Although Apotex Inc. and Apotex Corp. have a common parent, Apotex Inc. and Apotex Corp. operate independently of each other. *Id*. at ¶¶ 11, 13-16. Apotex Corp. imports ranitidine drug products from Canada and determines its distribution in the United States. *Id*. at ¶¶ 8, 14. Because Apotex Corp. is responsible for ranitidine related actives in the United States, Apotex Inc. engaged Apotex Corp. as its authorized agent for purposes of communication with the FDA. *Id*. at ¶ 10.

### 2.    Ajanta Pharma Ltd. ("APL")

APL is an Indian company with its principal place of business in Mumbai, India. AMPIC ¶ 43; Decl. of Mahalaxmi Andheria ¶ 2, attached as Exhibit C. APL's facilities and officers are located outside of the United States. *Id*. at ¶ 3. APL is not registered or licensed to do business in any state in the United States and does not maintain offices, facilities, local telephone listings or bank accounts, or lease any real property, or employ any persons anywhere in the United States. *Id*. Although APL holds the ANDA for generic ranitidine, APL has not directly sold or otherwise commercialized any products - including ranitidine products - in the United States. *Id*., at ¶ 4.

Ajanta Pharma USA Inc. ("APUI") is a subsidiary of APL. *Id*. at ¶ 5. APUI is a New Jersey corporation and is a wholly separate entity from APL. AMPIC ¶ 41; Decl. M. Andheria ¶ 5. APUI imports all ranitidine products to the U.S. and independently determines sales and distribution. *Id*.

### 3.    Aurobindo Pharma Ltd.

Aurobindo Pharma Ltd. is a corporation organized and existing under the laws of the Republic of India, having its principal place of business in Hyderabad, Telangana, India. Decl. of Gorla Phaneemdra Prasad ¶¶ 2, 4, attached as Exhibit D. Aurobindo Pharma Ltd. has never been incorporated under Florida law or under the laws of any state within the United States, nor has it maintained its principal place of business anywhere in the United States at any time. *Id*. at ¶¶ 3, 5. Aurobindo Pharma Ltd. did not manufacture, sell, or distribute any ranitidine products (or any other products) in Florida, or anywhere in the United States. *Id.* at ¶ 6. Aurobindo Pharma Ltd. has not directly sold or otherwise commercialized any ranitidine products in the United States, nor has it sold any of its ranitidine (or any other) products directly to any physician or end-user anywhere in the United States. *Id.* at ¶ 7. Aurobindo Pharma USA, Inc., and Aurohealth LLC, both of which

are separate entities from Aurobindo Pharma Ltd. and both of which are parties to cases pending in this MDL, distributed the ranitidine finished products within the United States.[8] *Id.* at ¶¶ 7-8.

### 4.     Cadila Healthcare Ltd. ("Cadila")

Cadila is a company organized under the laws of India with its headquarters in Gujarat, India and principal place of business in Ahmedabad, India. Decl. of Michael Keenley, attached as Exhibit E. Cadila has never been incorporated in, or had a principal place of business in, the United States. *Id.* at ¶ 3. The ANDA for the ranitidine products at issue are held by Cadila's U.S. subsidiary, Zydus Pharmaceuticals USA, Inc. ("Zydus"), that is headquartered in New Jersey. *Id.* at ¶¶ 10-11. The submission of the ANDA and all supporting materials submitted to the FDA for the ranitidine products at issue were prepared in India. *Id.* at ¶ 11. All research, development and manufacturing of the ranitidine drug products was conducted in India, not the United States.

All of Cadila's manufacturing of ranitidine-containing products is conducted at two manufacturing facilities located in Gujarat, India. *Id.* at ¶ 12. Once manufactured, Zydus orders the ranitidine-containing products to be shipped from India directly to a warehouse in Memphis, Tennessee. *Id.* at ¶ 15. Zydus makes all decisions regarding the commercialization, sale, and distribution of the ranitidine finished drug product in the U.S. *Id.* at ¶ 17. Cadila does not control the ordering of finished ranitidine drug products to the U.S. and has no involvement in the commercialization, sale, and distribution of ranitidine throughout the U.S. *Id.* at ¶ 18.

### 5.     Wockhardt Ltd.

Wockhardt Ltd. is organized under the laws of India with its headquarters in Mumbai, India. Exhibit A, Rev. Decl. of D. Partap ¶ 1. Wockhardt Ltd. is not registered or licensed to do business in the United States. *Id.* at ¶ 4. Wockhardt Ltd. currently does not maintain offices, facilities, local telephone listings or bank accounts, or lease any real property anywhere in the United States, and it has not done so for over thirteen years. *Id.* at ¶ 5. Prior to 2008, Wockhardt Ltd. may have had one or two employees or agents in the United States serving as U.S. agents for

---

[8] Additionally, as set forth in Aurobindo Pharma Ltd.'s jurisdictional discovery responses, it had no employees located in or with job responsibilities in the United States (*see* Aurobindo Pharma Ltd.'s Answers to Plaintiffs' Interrogatories Regarding Jurisdictional Issues, at 2, attached as Exhibit E), and it shared no employees with any U.S.-based entities. *See* Aurobindo Pharma Ltd.'s Responses to Plaintiffs' Requests for Production Regarding Jurisdictional Issues, at 2, attached as Exhibit F. Nor did Aurobindo Pharma Ltd. have any insurance coverage or policy issued by a United States insurance company covering events within the United States related to ranitidine-containing products. *Id.* at 3.

purposes of communication with the FDA, but since no later than 2008 it has had no employees or agents in the United States serving as U.S. agents for regulatory purposes; Wockhardt USA LLC has served as Wockhardt Ltd.'s authorized U.S. agent for purposes of communication with the FDA. *Id*. at ¶¶ 6-7. Wockhardt Ltd. manufactured all of its ranitidine products at its facilities located in India. *Id*. at ¶ 9. Wockhardt Ltd. did not sell, market, distribute or otherwise commercialize any ranitidine drug products to any consumer, pharmacy or third-party payor in the United States. *Id*. at ¶ 10. At certain points in time, Wockhardt Ltd. supplied its ranitidine products to Wockhardt USA LLC and other third-party pharmaceutical companies in the United States. *Id*. ¶¶ 11-14. Once the products were shipped from India to those entities, Wockhardt Ltd. had no control over the sales, marketing and distribution of the products by those entities in the U.S. *Id*

Wockhardt USA LLC is an indirect subsidiary of Wockhardt Ltd. that is organized under the laws of Delaware and has its principal place of business in New Jersey. Decl. of Ryan Debski ¶ 4, attached as Exhibit H. Wockhardt USA LLC is a separate legal entity that operates independently of Wockhardt Ltd. *Id*. at ¶¶ 4-6. At certain points in time, Wockhardt USA LLC imported Wockhardt Ltd.'s ranitidine drug products from India and independently determined the sale, marketing and distribution of these products in the United States. *Id*. at ¶¶ 7-9.

## II.   LEGAL STANDARD

A defendant may move to dismiss an action if the court lacks personal jurisdiction over that defendant. *See* Fed. R. Civ. P. 12(b)(2). Once a jurisdictional defense has been raised, plaintiffs bear the burden of establishing with reasonable particularity that sufficient minimum contacts exist between the moving defendant(s) and the forum to support jurisdiction, and to satisfy this burden, the plaintiffs must establish either specific or general jurisdiction. *Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir. 2009)). General jurisdiction is based on a defendant's substantial activity in [a state] without regard to where the cause of action arose." *Id*. at 1352 (alterations added; citations omitted). Specific jurisdiction, on the other hand, "depends on an affiliatio[n] between the forum and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014) (internal quotations omitted).

It is Plaintiffs' burden to establish a *prima facie* case of personal jurisdiction over Foreign Defendants. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). If a

plaintiff pleads sufficient facts to support the exercise of personal jurisdiction, the burden shifts to the defendant to make a *prima facie* showing that the court lacks specific personal jurisdiction. *Miller v. Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365, 1370 (S.D. Fla. 2019). The defendant then must "raise, through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction." *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293 (11th Cir. 2009). "If the defendant does so, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." *Id*. at 1295; *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1269 (11th Cir. 2002).

As "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons," plaintiffs must satisfy the forum state's requirements for personal jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Courts in Florida may exercise personal jurisdiction over a defendant only to the extent that doing so is consistent with due process. *See Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1333 (M.D. Fla. 2016) (quoting *Louis Vuitton*, 736 F.3d at 1350). "The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant." *Goodyear Dunlop v. Brown*, 564 U.S. 915, 923 (2011); *see also Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty*, 137 S. Ct. 1773, 1779 (2017) ("[I]t has long been established that the Fourteenth Amendment limits the personal jurisdiction of state courts."). Here, due process precludes the Court from exercising jurisdiction over Foreign Defendants.

## III.   **ARGUMENT**

Despite the benefit of jurisdictional and core discovery, Plaintiffs have failed to establish how the Court can exercise either general or specific jurisdiction over any Foreign Defendants.

### A.   **Foreign Defendants Are Not Subject to General Personal Jurisdiction in the United States**

#### 1.   **Foreign Defendants Are Not "at Home" in the United States**

This Court cannot exercise general personal jurisdiction over Foreign Defendants because they are not incorporated in or maintain their principal places of business in the United States. Where the cause of action does not arise out of the defendant's contacts with the forum, the plaintiff must establish general jurisdiction. General jurisdiction is based on "a forum connection unrelated to the underlying suit . . . ." *Walden*, 571 U.S. at 283 n.6 (quotations omitted). Due Process requires a defendant subject to general jurisdiction to have such "continuous and systematic" affiliations with the forum State that the defendant is "essentially at home in the forum State." *Goodyear*, 564

U.S. at 919. A defendant is at home only in its place of incorporation and principal place of business. *Daimler,* 571 U.S. at n.19. Foreign Defendants are not "at home" in Florida or anywhere in the United States. Indeed, "those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011).

Plaintiffs allege, and jurisdictional discovery has confirmed, Foreign Defendants were formed under the laws of foreign countries and maintain their principal places of business outside of the United States. This Court has recognized that "[p]laintiffs do not contend in the briefing [directed to the Original Complaints] that their allegations establish general personal jurisdiction." [Dkt. 2185, at 2 n.2]. The Amended Complaints contain no new allegations to alter that conclusion. Because Foreign Defendants are not "at home" in Florida or anywhere else in the United States, this Court cannot exercise general personal jurisdiction over them.[9]

### 2.    Foreign Defendants' Relationship with a U.S. Entity Does Not Allow this Court to Exercise General Jurisdiction

Plaintiffs will likely argue that Foreign Defendants are subject to general jurisdiction because their related U.S. entities are mere alter egos. Plaintiffs cannot succeed under this theory. A foreign corporation is not subject to general personal jurisdiction based on its subsidiaries' contacts unless the parent itself is "at home" in the jurisdiction. *Daimler*, 571 U.S. at 134-35 (quoting *Goodyear*, 564 U.S. at 919); *see also Aronson*, 30 F. Supp. 3d at 1386. "It is well established that as long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other." *Consol. Dev. Corp.*, 216 F.3d at 1293 (citing *Cannon Manuf.Co. v. Cudahy Packing Co*., 267 U.S. 333, 337 (1925)). Thus, "a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there." *Id.*

Additionally, Plaintiffs have not pled—and despite jurisdictional discovery cannot show— that any Foreign Defendants was the alter ego of any related U.S. entity or that the U.S. entities

---

[9] The Eleventh Circuit have found general jurisdiction lacking for defendants with far greater contacts than Foreign Defendants have here. *See, e.g., Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1316 (11th Cir. 2018); *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1386-87 (S.D. Fla. 2014); *Smith-Russo v. NCL (Bahamas) Ltd.*, 2017 WL 5565613, at *4 (S.D. Fla. July 26, 2017), report and recommendation adopted, 2017 WL 5591639 (S.D. Fla. Aug. 22, 2017) (finding no general jurisdiction where defendant's CEO conducted business in an office in Florida and defendant derived 100% of its business through sales directed at the State of Florida).

were established for a wrongful purpose. To pierce the corporate veil for purposes of personal jurisdiction and thereby subject a foreign party to jurisdiction based upon its related entity's contacts, the foreign entity "must be a mere instrumentality or alter ego of the defendant, and the defendant must have intentionally engaged in improper conduct in the formation or use of the corporation." *See Kernel Recs. Oy v. Mosley*, 2010 WL 2812565, at \*7-8 (S.D. Fla. July 5, 2010)*; Floridians for Solar Choice, Inc. v. PCI Consultants, Inc*., 2020 WL 5757083, at \*3 (S.D. Fla. Sept. 28, 2020) (citation omitted). "Even if a corporation is merely an alter ego of its dominant shareholder or shareholders, the corporate veil cannot be pierced so long as the corporation's separate identity was lawfully maintained." *Pharmacare Health Serv., Inc. v. Wenrich*, No. 07-60113-CIV, 2007 WL 9701077, at \*2 (S.D. Fla. Sept. 7, 2007) (quoting *Lipsig v. Ramlawi*, 760 So. 2d 170, 187 (Fla. Dist. Ct. App. 2000)).

Here, Plaintiffs allege only that Foreign Defendants appointed their U.S. affiliates—some of which are subsidiaries of Foreign Defendants—to act as their agents to sell or distribute ranitidine products or communicate with the FDA. Am. PI. Compl. ¶¶ 42, 54, 62, 142. Plaintiffs have not alleged that any Foreign Defendant acted as the alter ego of its U.S. affiliate (or vice-a-versa) and certainly have not alleged any improper conduct, nor could they. All U.S. affiliates were established for legitimate purposes and properly maintained their separate identities.   And jurisdictional discovery has shown that the Foreign Defendants operated independently from the U.S. entities not as alter egos.   The allegations Plaintiffs actually pled acknowledge that Foreign Defendants are organized and exist under the laws of foreign countries, that their principal places of business are outside of the United States, and that they are distinct entities from their U.S. affiliates. Therefore, it is undisputed that Foreign Defendants are not "at home" in Florida or anywhere else in the United States and that the Foreign Defendants did not operate as the alter egos of their U.S. affiliates for jurisdictional (or any other) purposes. Any relationship between Foreign Defendants and their U.S. affiliates does not subject Foreign Defendants to general jurisdiction in this or any other court in the United States.

**B.     Foreign Defendants Are Not Subject to Specific Personal Jurisdiction in the United States**

"Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." *Consol. Dev. Corp.*, 216 F.3d at 1291. Specific jurisdiction arises only if the plaintiff shows the defendant's activities were "purposefully" directed to the forum *and* the litigation involves injuries that allegedly "arise out of or relate to

those activities." *Daimler*, 571 U.S. at 126; *see also Walden*, 571 U.S. at 284; *Goodyear*, 564 U.S. at 924; *J. McIntyre*, 564 U.S. at 880. Put differently, the exercise of specific jurisdiction must "comport with the Due Process Clause of the Fourteenth Amendment." *Zanakis v. Scanreco, Inc*., 2019 WL 2211872 (S.D. Fla. Feb. 6, 2019).

In specific personal jurisdiction cases, the Eleventh Circuit applies a three-part due process test as to each defendant, examining whether:  (1) the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thereby invoking the benefit of the forum state's laws; and (3) the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Louis Vuitton*, 736 F.3d at 1355. The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, the defendants must show that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. *Id.*

### 1.     Plaintiffs' Claims Do Not Arise out of or Relate to Foreign Defendants' Contacts with the Forum

Specific jurisdiction requires "an affiliation between the forum and the underlying controversy." *Bristol–Myers Squibb Co.*, 137 S. Ct. at 1780. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the [s]tate." *Id*. at 1780-81 (citation omitted). In the Eleventh Circuit, "a tort 'arise[s] out of or relate[s] to' the defendant's activity in a state only if the activity is a 'but-for' cause of the tort." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1314 (11th Cir. 2018) (quoting *Oldfield v. Pueblo De Bahia Lora, S.A*., 558 F.3d 1210, 1222-23 (11th Cir. 2009)).

Here, "[t]o establish specific personal jurisdiction based on Defendants' activities in a particular state, Plaintiffs must allege that those activities were the 'but-for' cause of Plaintiffs' ingestion of generic ranitidine products and injuries." [Dkt. 2516 p. 16 (Order Granting Brand-Name Manufacturer Defendants' Motion to Dismiss Plaintiffs' Innovator-Liability Claims)]. Plaintiffs fail to allege specific, non-conclusory facts demonstrating that any Foreign Defendant's actions took place in any state or territory. Plaintiffs allege only that four Foreign Defendants— Ajanta Pharma Ltd., Apotex Inc., Aurobindo Pharma Ltd., and Wockhardt Ltd.—had contact with the FDA when they applied for approval to market a generic version of ranitidine in the United States. *See* 21 U.S.C. § 355(j). AMPIC ¶¶ 44, 56, 64, 144. But there is no affiliation—let alone a "but for" relationship—between Foreign Defendants applying for and obtaining ANDAs for

11

ranitidine products and Plaintiffs' claims. In granting Plaintiffs' previous request for jurisdictional discovery, the Court declined to hold that "an ANDA is itself sufficient to establish personal jurisdiction within the United States." [Dkt. 2185, p. 5].

In their Amended Master Personal Injury Complaint, Plaintiffs allege that Generic Defendants (i) failed to conduct tests that would have led to shorter expiration periods (AMPIC 2759 ¶¶ 932-62, 1734-64); (ii) failed to submit adverse event reports and/or other notifications to the FDA regarding a risk for cancer related to the presence of NDMA in ranitidine products (AMPIC ¶¶ 1371-1405); (iii) failed to conduct tests that would have indicated heightened levels of NDMA in ranitidine produces (AMPIC ¶¶ 1949-71); and (iv) negligently stored and transported ranitidine (AMPIC ¶¶1984-98, 2433-59).[10] Because Foreign Defendants' development and manufacturing of finished ranitidine product occurred outside the United States—the activities that form the basis of Plaintiffs' claims—there is no alleged in-forum conduct out of which Plaintiffs' claims arise. To the extent Foreign Defendants made decisions on reporting adverse events to the FDA, testing ranitidine, fixing expiration dates, and setting storage and transportation conditions, those activities occurred (if at all) at Foreign Defendants' headquarters or manufacturing facilities, all outside the United States.

Despite jurisdictional and core discovery, Plaintiffs cannot tie any relevant alleged conduct by Foreign Defendants to any state or territory. This Court has already held that Plaintiffs' similar conclusory jurisdictional allegations failed to demonstrate that the Brand Defendants' marketing and labeling decisions took place in any state or territory were insufficient to establish specific personal jurisdiction. [Dkt. 2516 p. 20]. The same is true here, and Foreign Defendants' possession of ANDAs does not alter that conclusion. Thus, Foreign Defendants are entitled to dismissals on personal jurisdiction grounds.

Foreign Defendants anticipate that Plaintiffs will rely on *Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*, 817 F.3d 755 (Fed. Cir. 2016), to support their argument for jurisdiction. However, unlike in *Acorda Therapeutics*, none of Plaintiffs' claims here arises out of Foreign Defendants' administrative acts of preparing and submitting its ANDAs to FDA. In *Acorda*, the plaintiffs claimed the defendant's ANDA infringed on the brand-name drug manufacturers' patents. *Id.* at 757. Therefore, the plaintiffs' claim—patent infringement—directly arose out of the

---

[10] Plaintiffs assert similar claims in the Amended Consumer Complaint and Medical Monitoring Complaint. *See* Am. Consumer Compl. pp. 3367-3557; Med. Monitor. Compl. pp. 1732-2004.

defendant's contact with the forum—the ANDA filing and marketing its generic drug to the forum. *Id.* at 759. The Federal Circuit Court of Appeals thus held that filing an ANDA, together with the defendant's intent to market the drug within the forum established specific personal jurisdiction over the defendant because the defendant's "ANDA conduct is 'suit-related' and has a 'substantial connection' with [the forum state]." *Id.* at 760. The same is not true here, as Foreign Defendants' filing of the ANDA is not the "but for" cause of any of Plaintiffs' claims nor could they be because then Plaintiffs' claims would be impliedly preempted under *Buckman Co. v. Plaintiffs' Legal Comm.* 531 U.S. 341 (2001).

### 2.      Foreign Defendants Did Not Purposefully Avail Themselves of Any Specific State's Laws

For the Court to exercise jurisdiction, Plaintiffs must show more than that ranitidine-containing products reached this country. When the Supreme Court most recently addressed purposeful availment in *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011), a plurality applied the "stream of commerce plus" test and found no personal jurisdiction over a foreign "defendant [who] had 'directed marketing and sales efforts at the United States,'" because "the defendant had not sufficiently directed any action at [the state] to warrant the exercise of personal jurisdiction." *Nicastro*, 564 U.S. at 885-86. The controlling opinion in *Nicastro*, a concurrence issued by Justice Breyer, conducted a similar "plus" analysis. *Zanakis*, 2019 WL 2211872 at *8-9 ("[I]n the absence of guidance from the Eleventh Circuit, Justice Breyer's concurrence in *Nicastro* as the narrowest and most recent decision from the Supreme Court, controls.").

Justice Breyer explicitly stated that placement of goods into the stream of commerce, desiring that they would enter the United States and by extension the state at issue, was an insufficient basis for the exercise of personal jurisdiction. *See Nicastro*, 564 U.S. at 888-89. He then looked to the "stream of commerce plus" factors to determine if there was "something more," such as state-related design, advertising, advice, or marketing, that indicated the foreign manufacturer had made specific effort to sell in the state. *See Nicastro*, 564 U.S. at 889 (Breyer, J. concurring). Thus, purposeful availment still requires "'something more' than the mere placement of a good into the stream of commerce with awareness that it could end up in the forum state." *Zanakis*, 2019 WL 2211872 at *9 (collecting cases); *see also In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1153 (S.D. Fla. 2019) (applying the "plus" test after determining it to be the "Supreme Court's existing stream-of-commerce analysis").

Justice Breyer also explained that purposeful availment of the United States market

13

generally does not equal purposeful availment in any specific state. *J. McIntyre,* 564 U.S. at 891 (Breyer, J., concurring). Efforts to exploit a national market which necessarily includes a forum state are insufficient. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018); *see also Williams v. Romarm, SA,* 756 F.3d 777, 785, (D.C. Cir. 2014) ("*Nicastro* makes clear that a manufacturer's broad desire to target the United States through a distributor will not suffice" and thus, "Appellants' argu[ment] [that] their burden is met here because they alleged [Defendant] sold its products to an American distributor, fully aware the distributor would sell these products in the United States" was insufficient to constitute purposeful availment of Washington D.C.); *see also Leon v. Cont'l AG,* 301 F. Supp. 3d 1203, 1228 (S.D. Fla. 2017) ("The Complaint alleges only that Airbag Manufacturer Defendants distributed their respective products 'in the United States,' which is insufficient to confer personal jurisdiction [in Florida]."); *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.,* 566 F.3d 94, 104 (3d Cir. 2009) ("[Defendant's] efforts to exploit a national market necessarily included Pennsylvania as a target, but those efforts simply do not constitute the type of deliberate contacts within Pennsylvania that could amount to purposeful availment of the privilege of conducting activities in that state. Rather, any connection of [Defendant] to Pennsylvania merely was a derivative benefit of its successful attempt to exploit the United States as a national market."); *Oticon, Inc. v. Sebotek Hearing Sys., LLC,* 865 F. Supp. 2d 501, 515 (D.N.J. 2011) ("Plaintiff further points to a strategic alliance agreement . . . to help develop and market Sebotek's products to the United States markets . . . . The problem with Plaintiff's reliance on this agreement, however, is that it makes no reference to New Jersey. Thus, it fails to demonstrate any purposeful availment of the New Jersey forum.").[11]

Even after jurisdictional and core discovery, Plaintiffs fail to allege that any Foreign Defendant purposefully availed itself of the laws or engaged in specific suit-related activities in any of the states identified in their Jurisdiction Supplement, or in any of the states (or federal districts) alleged in their Short Form Complaints, and the jurisdictional discovery already provided does not support any such allegations. *Williams,* 756 F.3d at 785*; see also Bristol-Myers Squibb*, 137 S. Ct. at 1783 ("The bare fact that BMS contracted with a California distributor is not enough to establish personal jurisdiction in the State."). Foreign Defendants had United States distributors but did not engage in conduct specific to a United States forum sufficient to confer jurisdiction.

---

[11] Consistent with the plurality in *McIntyre*, Plaintiffs already have conceded that "ultimately the specific jurisdiction [inquiry requires a] state by state" analysis. [Dkt. 2391-1, at 44:12-14].

*See Williams*, 756 F.3d at 785. That is, no Foreign Defendant advertised directly toward any jurisdiction; designed a product specifically for a jurisdiction; regularly communicated with customers from a jurisdiction; held offices, bank accounts, or phone numbers in a jurisdiction,[12] or distributed the ranitidine products into a jurisdiction. *See In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d at 1153-56 (applying the "plus" test and concluding that exercising specific jurisdiction over foreign defendants would offend due process); *Zanakis*, 2019 WL 2211872 at *11-14 (analyzing factors that could establish purposeful availment under the "plus" test); *Smith v. Poly Expert, Inc.*, 186 F. Supp. 3d 1297, 1300-06 (N.D. Fla. 2016) (finding no personal jurisdiction in Florida under the "plus" test where the defendant did not design its products for the forum state, "pour its products" into a distributor serving the forum state, or direct advertising at the forum state). Because Plaintiffs fail to allege any these factors of forum specific conduct, Foreign Defendants did not purposefully avail themselves of the laws of any United States jurisdiction and this Court cannot exercise specific personal jurisdiction over them.

In a case with facts remarkably similar to those here, plaintiffs in Arkansas attempted to sue the Indian drug manufacturer Claris. *Woods v. Claris Lifesciences Ltd.*, 2013 WL 11359141 (D. Ark. 2013). The court found that the only contact between Claris India and Arkansas was that some of Claris India's product was distributed there by Pfizer. Like the defendant in *McIntyre*, Claris India may have intended to serve the U.S. market, but it did not purposefully direct its product toward the State of Arkansas. The court concluded:

> Although the State of Arkansas has an interest in providing a forum for its citizens who are injured by pharmaceuticals sold here, and although this forum obviously would be convenient to them, those considerations are insufficient to establish personal jurisdiction over Claris India. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders[.]"

*Id.* at *6 (citing *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 114 (1987)). And the same is true for Foreign Defendants here.

Foreign Defendants' U.S. affiliates acting as their agents for FDA communications also does not qualify as the "something more" to provide for specific jurisdiction. Agency relationships

---

[12] As discussed below, Wockhardt Ltd. may have had one or two employees or agents in the United States more than thirteen years ago serving solely as U.S. agents for purposes of communication with the FDA, pursuant to 21 C.F.R. § 207.69.

can vary widely in scope and purpose. *Daimler AG,* 571 U.S. at 135 ("Agencies, we note, come in many sizes and shapes: 'One may be an agent for some business purposes and not others so that the fact that one may be an agent for one purpose does not make him or her an agent for every purpose.'" (quoting 2A C.J.S. *Agency* § 43 (2013) (footnote omitted)). The Supreme Court has "found fault with the [agency] standard's own internal logic, and therefore applies with equal force regardless of whether the standard is used to establish general or specific jurisdiction." *See, e.g.*, *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th. Cir. 2017) (citing *Daimler*, 571 U.S. at 134) (*Daimler's* criticism of agency "applies no less in the context of specific jurisdiction than in that of general jurisdiction"). Likewise, in *Viega GmbH v. Eighth Judicial Dist. Court*, 328 P.3d 1152, 1160 (Nev. 2014), the court declined to exercise specific jurisdiction over the German parent because it had created American subsidiaries to conduct business in Nevada, even though the parent sent representatives to attend meetings and grand openings. *Id.* at 1158–61 ("[E]ven if, as the [plaintiff] asserts, American Viega is German Viega's agent for American operations and the face of American marketing, [plaintiff] has not shown that that particular agency has resulted in the basis for the claims at issue here.").

In *Daimler*, *Williams* and *Viega* the alleged in-forum agent was a subsidiary of the foreign affiliate. Here, the relevant U.S. affiliates do not provide a sufficient nexus to allow this Court to exercise jurisdiction over Foreign Defendants. That Foreign Defendants are alleged to have engaged their U.S. affiliates for the sale and distribution of ranitidine products and for FDA regulatory purposes is insufficient to show that Foreign Defendants purposefully availed themselves of the privileges of doing business in Florida or any other specific states within the United States.

### a. *Apotex, Inc. did not purposefully avail itself to a state*

Plaintiffs still have not pled (and cannot show) that Apotex Inc. purposefully availed itself of the privilege of conducting activities in any United States forum. Apotex Inc. has no employees, offices, bank accounts, or telephone numbers in the United States. It is true that Apotex Inc.'s finished ranitidine drug products arrived in the United States, but its ranitidine arrived here and was distributed and sold by Apotex Corp.—a separate U.S. based company—set. *See* Exhibit B, Decl. G. Fahner ¶¶ 7-8, 14. But jurisdiction cannot attach if the connection to the litigation was caused by an entity other than Apotex Inc. That is precisely the fact pattern in which the Supreme Court found that the manufacturer J. McIntyre Machinery could not be liable for the injuries Mr.

Nicastro sustained when using its product in New Jersey. *See McIntyre, supra.* Apotex Inc. placed its ranitidine products into the stream of commerce through its U.S. distributor, Apotex Corp. Apotex Inc. did not purposefully avail itself to the laws of any state and cannot be subject to personal jurisdiction.

        b.      *Ajanta Pharma Ltd. did not purposefully avail itself to a state*

Plaintiffs have similarly failed to establish that APL purposefully availed itself of the laws of any state. To the contrary, APL has no suit-related activities in the United States. APL did not purposely direct any ranitidine-related activities to the United States. Exhibit C, Decl. M. Andheria ¶ 4. Although APL's ranitidine product arrived in the United States, it was imported, distributed, and sold at the direction of APUI, a U.S. subsidiary. *Id.* at ¶ 5. Indeed, APL has no involvement with ranitidine products in the United States. *Id.* Thus, no basis exists for this Court to exercise specific personal jurisdiction over APL in any of the Amended Complaints. *See McIntyre, supra.*

        c.      *Aurobindo Pharma Ltd. did not purposefully avail itself to a state*

Plaintiffs again do not allege any facts that Aurobindo Pharma Ltd. purposefully availed itself of the privilege of conducting activity in any United States jurisdiction. Plaintiffs do not allege that Aurobindo Pharma Ltd. undertook any conduct in any specific U.S. jurisdiction, that Aurobindo Pharma Ltd. directed any activity to any U.S. jurisdiction, or that Aurobindo Pharma Ltd. is connected in any way to any U.S. jurisdiction. In fact, even after jurisdictional discovery, Plaintiffs still could not have made any such allegations within the confines of Rule 11 because the discovery shows that Aurobindo Pharma Ltd. does not manufacture, sell, or distribute any products in any jurisdiction in the United States. Exhibit D, Decl. G. Prassad ¶ 6. Moreover, plaintiffs learned through jurisdictional discovery that Aurobindo Pharma Ltd. has no employees located in or with job responsibilities in the United States and shared no employees with any of its U.S.-based affiliated entities. *See* Ex. E, at 2; Ex. F, at 2. Thus, information Plaintiffs already have confirms that Aurobindo Pharma Ltd. did not target any specific jurisdiction in the United States for the sale of ranitidine-containing products, much less that Aurobindo Pharma Ltd. undertook "something more" to ensure its product ultimately ended up in any specific U.S. jurisdiction.

        d.      *Cadila Healthcare Ltd. did not purposefully avail itself to a state*

The same flaws in Plaintiffs' Amended Pleadings exist as to Cadila. Plaintiffs have not pled (and cannot show) that Cadila purposefully availed itself of the privilege of conducting activities in any United States jurisdiction. The terms on which Cadila's finished ranitidine drug

products arrived in the United States, were distributed and sold by Zydus. Cadila had no impact or involvement in Zydus's decisions on where and how to distribute ranitidine products. Absent facts showing Cadila directed its ranitidine to any specific forum, no court in the United States can exercise jurisdiction over it. *See McIntyre, supra.*

e.   *Wockhardt Ltd. did not purposefully avail itself to a state*

Plaintiffs have similarly failed to establish that Wockhardt Ltd. purposefully availed itself of the laws of any state. Wockhardt Ltd. is not registered or licensed to do business in the United States. Nor does it currently have any employees, offices, facilities, bank accounts or telephone numbers in the United States. Although Wockhardt Ltd. may have had, more than thirteen years ago, one or two employees or agents in the United States serving as U.S. agents for purposes of communication with the FDA, Wockhardt Ltd. never controlled the sales, marketing and distribution of ranitidine in the United States. At all times, Wockhardt Ltd.'s U.S. subsidiary, Wockhardt USA LLC (formerly known as Wockhardt USA, Inc.), independently determined the sales, marketing and distribution of the ranitidine drug products in the United States. Similarly, the fact that Wockhardt Ltd. supplied its ranitidine products to other third-party pharmaceutical companies in the United States does not give rise to specific jurisdiction as Wockhardt Ltd. had no control over the sales, marketing and distribution of the products by those entities in the United States. Accordingly, Plaintiffs cannot establish specific jurisdiction over Wockhardt Ltd.

3.   **Exercising Personal Jurisdiction over Foreign Defendants Would Violate Traditional Notions of Fair Play and Substantial Justice**

Aside from a lack of contacts between Foreign Defendants and the forum, or individual states at issue, this Court's exercise of personal jurisdiction over Foreign Defendants would offend traditional notions of fair play and substantial justice. The Due Process clause of the United States Constitution permits courts to exercise personal jurisdiction only if doing so does not offend traditional notions of "fair play and substantial justice." *Walden*, 571 U.S. at 283 (quoting *Intern'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also Oldfield v. Pubelo de Bahia Lora, S.A.*, 558 F.3d 1210, 1221 (11th Cir. 2009) (explaining that fair play and substantial justice must be established even if there are sufficient "minimum contacts"). To satisfy that requirement, the relationship between the defendant and the forum state must be such that it is reasonable to require the corporation to defend the particular suit. *Walden*, 571 U.S. at 287; *Louis Vuitton*, 736 F.3d at 1357. "The Court looks to five factors in evaluating whether exercising jurisdiction comports with fair play and substantial justice: the burden on the defendant, the forum state's interest in

18

adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of several states in advancing fundamental substantive social policies." *Miller*, 383 F. Supp. 3d at 1375; *Garcia v. Wells Fargo Bank Northwest NA Trustee*, 2011 WL 3439530, at *6 (S.D. Fla. Aug. 5, 2011) (weighing each of these factors and determining that the plaintiff had failed to provide adequate evidence that would confer jurisdiction over the defendant).

In making assessments of reasonableness, fair play, and substantial justice, the Supreme Court has emphasized that the exercise of personal jurisdiction over a foreign defendant must be made cautiously. *Daimler*, 571 U.S. at 123, 136, 141-42 (holding exercise of general jurisdiction over a foreign-based defendant in California, on the basis that its domestic-based subsidiary and exclusive U.S. distributor had several in-state facilities and sales, would violate due process, in the name of preserving international rapport). Courts should be very hesitant to conclude that "serious burdens on an alien defendant [are] outweighed by minimal interests on the part of the plaintiff or the forum State." *Koziol v. Bombardier-Rotax GmbH*, 2004 WL 5563674, at *1 (S.D. Fla. Mar. 23, 2004), *aff'd sub nom. Kozial v. Bombardier-Rotax GmbH*, 129 F. App'x 543 (11th Cir. 2005). A state's interest in "protecting its citizens from defective products" by providing a forum "cannot supersede either the mandate of the Due Process Clause or the limits on judicial authority that Clause ensures." *McIntyre*, 564 U.S. at 886–87 (internal quotation marks omitted).

> Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980) (citing *Hanson v. Denckla*, 357 U.S. 235, 251, 254 (1958)). It violates the due process clause to subject Foreign Defendants to jurisdiction where they had no control over where their products would eventually land. *Zanakis*, 2019 WL 2211872 at *15-16. Where, as here, the product did not enter the forum at Foreign Defendants' direction, but through an attenuated chain of distribution, the exercise of personal jurisdiction fails to meet the minimum requirements of fair play and substantial justice. *Id*.

### C.    No Additional Jurisdictional Discovery Is Permitted or Necessary

Plaintiffs have stated that they intend to seek additional jurisdictional discovery, beyond the jurisdictional discovery Foreign Defendants alreay have produced. This Court should reject

any attempt to delay ruling on this Motion by permitting jursidictional discovery. Plaintiffs already petitioned this Court for, and received, jurisdictional discovery when Foreign Defendants filed their original Motion to Dismiss for Lack of Jurisdiction that later became moot after this Court dismissed all Plaintiffs' claims against Generic Defendants. After extensive briefing and argument on whether jurisdictional discovery was appropriate, the Court permitted "limited and narrowly tailored jurisdictional discovery." [Dkt. 2185 pp. 4, 6]. In a well-reasoned opinion, Magistrate Judge Reinhart defined the appropriate scope of jurisdictional discovery, with which Foreign Defendants complied. [Dkt. 2330]. Plaintiffs objected to the limitations Magistrate Judge Reinhart set [Dkt. 2391 p. 4], but the objections were deemed moot upon the Court's dismissal of Plaintiffs' claims against Generic Defendants.

By the time Plaintiffs filed their Amended Complaints, they already had the benefit of Foreign Defendants' previously served jurisdictional discovery responses, as well as the additional information contained in the Core Discovery Agreement productions. They did not assert jurisdictional allegations in their Amended Complaints "on information or belief," but instead took what they learned in prior discovery and (insufficiently) pled jurisdiction accordingly. They should not be permitted to further delay ruling on this issue by seeking yet more discovery. *See Yepez v. Seven Seas Cruises*, 2011 WL 3439943, at *2 (S.D. Fla. Aug. 5, 2011) ("the failure of a plaintiff to investigate jurisdictional issues prior to filing suit does not give rise to a genuine jurisdictional dispute" that would warrant jurisdictional discovery).

## IV.   <u>CONCLUSION</u>

For the above stated reasons, Foreign Defendants respectfully ask that the Court dismiss Ajanta Pharma Ltd., Apotex Inc., Aurobindo Pharma Ltd., Cadila Healthcare Ltd., and Wockhardt Ltd. for lack of personal jurisdiction.

Dated: March 24, 2021                              Respectfully submitted,


*/s/ Terry M. Henry*
Terry M. Henry
**BLANK ROME LLP**
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Tel: (215) 569-5644
THenry@BlankRome.com

Jane Thomas
**BLANK ROME LLP**
1825 Eye Street NW
Washington, D.C. 20006
Tel: (202) 420-2577
JThomas@BlankRome.com

*Attorneys for Defendant Apotex Inc.*

*/s/ Clifford E. Katz*
Clifford E. Katz
Neil Merkl
Sojin Yoon
**KELLEY DRYE & WARREN LLP**
101 Park Avenue
New York, NY 10178
Tel: 212-808-7811
ckatz@kelleydrye.com
nmerkl@kelleydrye.com
syoon@kelleydrye.com

*Attorneys for Wockhardt Ltd.*

*/s/ Neal Seth*
Neal Seth
Corey Weinstein
**WILEY REIN LLP**
1776 K Street NW
Washington, DC 20006
Tel: 202.719.4179
nseth@wiley.law
cweinstein@wiley.law

*Attorneys for Ajanta Pharma Ltd.*

*/s/ Joshua A. Klarfeld*
Joshua A. Klarfeld
**ULMER & BERNE LLP**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113
Tel: 216-583-7000
jklarfeld@ulmer.com

Kevin M. Bandy
**ULMER & BERNE LLP**
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
Tel: (513) 698-5166
Email: kbandy@ulmer.com

*Attorney for Defendants Aurobindo Pharma Ltd.*

*/s/ Arthur J. Liederman*
Arthur J. Liederman
Nicole Battisti
**MORRISON MAHONEY LLP**
88 Pine Street
Suite 1900
New York, NY 10005
Tel: 212- 825-1212
aliederman@morrisonmahoney.com
nbattisti@morrisonmahoney.com

Nichole M. Mooney
**DEAN, MEAD, EGERTON, BLOODWORTH, CAPOUANO & BOZARTH, P.A.**
Florida Bar No. 057908
Post Office Box 2346
Orlando, Florida 32802-2346
Tel: 407-841-1200
nmooney@deanmead.com

*Attorneys for Defendant Cadila Healthcare Ltd.*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 24, 2021, I electronically filed the foregoing

**SPECIALLY-APPEARING NON-U.S. GENERIC MANUFACTURER DEFENDANTS'
RENEWED MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND
INCORPORATED MEMORANDUM OF LAW** with the Clerk of Court using the CM/ECF

system, which will provide automatic notification to all counsel of record.

*/s/ Terry M. Henry*
Terry M. Henry