UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE: ZANTAC (RANITIDINE)  MDL No. 2924
PRODUCTS LIABILITY  20-MD-2924
LITIGATION

JUDGE ROBIN L. ROSENBERG
MAGISTRATE JUDGE BRUCE E. REINHART

_____/

THIS DOCUMENT RELATES TO: ALL CASES

BRAND-NAME MANUFACTURERS' MOTION TO DISMISS INNOVATOR-
LIABILITY CLAIMS (COUNTS XII AND XIII)
IN AMENDED MASTER PERSONAL INJURY COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW

1

## TABLE OF CONTENTS

                                                                                                        **Page**

I.    THE INNOVATOR-LIABILITY CLAIMS BROUGHT UNDER CALIFORNIA AND MASSACHUSETTS LAW FAIL FOR LACK OF PERSONAL JURISDICTION. ............................................................................................................... 2

        A.    Plaintiffs' "Judicial Admission" Assertions Are Meritless. ................................. 2

        B.    Plaintiffs Have Not Plausibly Alleged That The Brand-Name Manufacturers' In-State Activities Were A But-For Cause Of Their Alleged Injuries. ...................................................................................................... 5

        C.    Plaintiffs Have Not Plausibly Alleged That The Brand-Name Manufacturers Should Have Foreseen Their In-State Activities Would Expose Them To Liability For Injuries Resulting From Generic Ranitidine. ............................................................................................................... 6

II.   CALIFORNIA AND MASSACHUSETTS LACK LEGISLATIVE JURISDICTION OVER PLAINTIFFS' INNOVATOR-LIABILITY CLAIMS. ............ 10

III.  INNOVATOR-LIABILITY CLAIMS AGAINST PATHEON MANUFACTURING SERVICES SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM. ................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Charities for Reasonable Fundraising Reg., Inc. v. Pinellas Cnty.*,
 221 F.3d 1211 (11th Cir. 2000) ...................................................................................................10

*Bristol–Myers Squibb Co. v. Sup. Ct. of Cal.*,
 137 S. Ct. 1773 (2017)...................................................................................................................5

*Carruth v. Michot*,
 2015 WL 6506550 (W.D. Tex. Oct. 26, 2015) ............................................................................11

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014).................................................................................................................3, 4

*In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*,
 756 F.3d 917 (6th Cir. 2014) .........................................................................................................9

*Fraser v. Smith*,
 594 F.3d 842 (11th Cir. 2010) ...............................................................................................6, 8, 9

*Gerling Global Reinsurance Corp. of Am. v. Gallagher*,
 267 F.3d 1228 (11th Cir. 2001) ...................................................................................................10

*Knepfle v. J-Tech Corp.*,
 419 F. Supp. 3d 1281 (M.D. Fla. 2019) ...................................................................................3, 4

*Oldfield v. Pueblo de Bahia Lora, S.A.*,
 558 F.3d 1210 (11th Cir. 2009) ...........................................................................................4, 7, 8, 9

*Rafferty v. Merck & Co.*,
 92 N.E.3d 1205 (Mass. 2018) .................................................................................................8, 11

*T.H. v. Novartis Pharm. Corp.*,
 407 P.3d 18 (Cal. 2017) ............................................................................................................8, 11

*Waite v. All Acquisition Corp.*,
 901 F.3d 1307 (11th Cir. 2018) ...............................................................................................5, 6, 7

*World–Wide Volkswagen Corp. v. Woodson*,
 444 U.S. 286 (1980)......................................................................................................................3

**Other Authorities**

Fed. R. Civ. P. 12(b) .........................................................................................................................2

In the Court's order dismissing the innovator-liability claims in the first Master Personal Injury Complaint ("MPIC"), the Court explained what users of generic ranitidine would have to allege to establish specific personal jurisdiction over the Brand-Name Manufacturers in California or Massachusetts, the only two states that recognize any form of innovator liability.  First, Plaintiffs must allege that "Defendants' activities in a particular state . . . were the 'but-for' cause of Plaintiffs' ingestion of generic ranitidine products."  Dkt. 2516 at 20.  Second, Plaintiffs must allege facts showing "that Defendants should have foreseen that their activities regarding their brand-name products . . . could expose them to liability for injuries sustained from the ingestion of generic ranitidine products."  *Id*.

Plaintiffs' Amended Master Personal Injury Complaint ("AMPIC") meets neither requirement.  The AMPIC includes new allegations relating to Brand-Name Manufacturers' "sales and marketing activities" in California and Massachusetts, but Plaintiffs do not allege that any of those promotional activities were the "but-for" cause of any Plaintiff's ingestion of generic ranitidine.  *See* AMPIC ¶¶ 228–32.  Plaintiffs also do not (and could not) allege that the Brand-Name Manufacturers should have foreseen that, by promoting *their own* products, they were exposing themselves to liability for defects in the products of *generic competitors*.  Plaintiffs' highly attenuated theory of liability leaves them with no basis for specific jurisdiction over the Brand-Name Manufacturers in California or Massachusetts.  It follows that California and Massachusetts also lack legislative jurisdiction over the Brand-Name Manufacturers, and thus that a court with general jurisdiction over a Brand-Name Manufacturer could not apply California and Massachusetts law to Plaintiffs' claims.  In short, while California and Massachusetts may choose to adopt their own novel tort principles governing companies based there, due process forbids them

from applying those laws extraterritorially to hold the out-of-state Brand-Name Manufacturers liable for the sales of other companies' products.

The innovator-liability claims that Plaintiffs attempted to re-plead—Count XII (Negligent Misrepresentation) and Count XIII (Reckless Misrepresentation) of the AMPIC—are not viable in any forum, and the Court should dismiss them with prejudice from the MDL pursuant to Rule 12(b)(2) and Rule 12(b)(6).

## I.  The Innovator-Liability Claims Brought Under California And Massachusetts Law Fail For Lack Of Personal Jurisdiction.

### A.  Plaintiffs' "Judicial Admission" Assertions Are Meritless.

Four of the five paragraphs Plaintiffs added to the AMPIC make no specific allegations about activities by the Brand-Name Manufacturers in California or Massachusetts. *See* AMPIC ¶¶ 228-231. Instead, Plaintiffs use this portion of the complaint to argue that, because the Brand-Name Manufacturers have made a "judicial admission" that they are subject to personal jurisdiction in California and Massachusetts in connection with their own products, they must also be subject to personal jurisdiction in connection with generic products they did not make or sell. *Id*. ¶ 231. Plaintiffs contend that, in both cases, the Brand-Name Manufacturers' "sales and marketing activities" are the basis for personal jurisdiction. *Id*. Just as those activities "spur[red] consumption of branded Zantac in California and Massachusetts," they supposedly also "spur[red] consumption of generic ranitidine." *Id*. If the sales and marketing activities are sufficient to establish personal jurisdiction with respect to branded products, Plaintiffs reason, they are also sufficient for generic products.

Plaintiffs misapprehend the basis for personal jurisdiction in a case where a consumer actually ingested a Brand-Name Manufacturer's product. As in any traditional product-liability case, it is the sale of the allegedly defective product ***to the plaintiff*** that provides the basis for

2

personal jurisdiction in the plaintiff's home state, not marketing activities that may or may not have influenced the plaintiff or her doctor.

Plaintiffs suggest that the in-state sale is irrelevant, and thus the Brand-Name Manufacturers' advertising is the true basis for specific jurisdiction, because "drug manufacturers do not directly sell their products to consumers," but rather to "distributors, which sell them to retailers, pharmacies, or hospitals, which sell them to consumers." AMPIC ¶ 230. That fact has no effect on personal jurisdiction.

As the Brand-Name Manufacturers explained in the last round of briefing, Dkt. 2132 at 6, a state "does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980). The use of third-party distributors does not present a jurisdictional obstacle, so long as the out-of-state defendant intended "to serve, directly or indirectly, the market for its product" in the forum state. *Id*. at 297. But this "stream of commerce" theory of jurisdiction applies when there is an expectation that ***the defendant's*** product will be purchased in the forum. When that is true, advertising in the forum state can be relevant insofar as it demonstrates "the defendant intended to access the benefits of the forum's marketplace" when it placed its product into the stream of commerce, but advertising is not an independent basis for jurisdiction. *Knepfle v. J-Tech Corp.*, 419 F. Supp. 3d 1281, 1289 (M.D. Fla. 2019); *see Daimler AG v. Bauman*, 571 U.S. 117, 128 n.7 (2014) (noting that "specific jurisdiction may lie over a foreign defendant that places a product into the 'stream of commerce' *while also* . . . 'advertising

in the forum State'") (emphasis added) (quoting *Asahi Metal Indus. Co. v. Sup. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 112 (1987) (plurality opinion)).

This "stream of commerce" theory of personal jurisdiction cannot apply in an innovator-liability context because the Brand-Name Manufacturers did not place the generic products that Plaintiffs consumed into the stream of commerce. Nor did the sale of competitors' generic ranitidine give the Brand-Name Manufacturers "access [to] the benefits of the forum's marketplace."[1] *Knepfle*, 419 F. Supp. 3d at 1289. Without a sale of a brand-name product in the forum state and the resulting commercial benefit to a Brand-Name Manufacturer, there cannot be any "'tacit quid pro quo' between the out-of-state resident and the forum" to support personal jurisdiction. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1223 (11th Cir. 2009) (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 322 (3d Cir. 2007)).

Plaintiffs' innovator-liability claims in California and Massachusetts fail for lack of personal jurisdiction because they cannot allege the *sine qua non* of specific jurisdiction in a product-liability case—the defendant's placement of the allegedly defective product into the stream of commerce. Plaintiffs' sales and marketing allegations are simply not a recognized substitute for the stream-of-commerce doctrine, which looks to the flow of the specific product manufactured by the defendant into the state. *See Daimler AG*, 571 U.S. at 128 n.7. The Brand-Name Manufacturers' efforts to sell their own products in California and Massachusetts cannot

---

[1] The clear absence of personal jurisdiction in this context is a product of the divergence between a traditional product-liability claim and an innovator-liability claim. The act that forms the basis for specific jurisdiction in a traditional product-liability case—placing products into the stream of commerce with the intent that they reach the forum state—is absent in a case based on an innovator-liability theory. The unique and unprecedented feature of innovator liability is that it holds a defendant responsible for a product made and sold by another company—the very reason that only two states have recognized it.

4

subject them to jurisdiction in those states in connection with claims resulting from the ingestion of competing generic products from which they derive no benefit.

**B.     Plaintiffs Have Not Plausibly Alleged That The Brand-Name Manufacturers' In-State Activities Were A But-For Cause Of Their Alleged Injuries.**

California and Massachusetts courts have jurisdiction to adjudicate Plaintiffs' innovator-liability claims only if they "arise out of or relate to" actions that the Brand-Name Manufacturers took in or directed towards those states. *Bristol–Myers Squibb Co. v. Sup. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017). The Eleventh Circuit has held that, for purposes of specific jurisdiction, "a tort 'arises out of or relates to' the defendant's activity in a state only if the activity is a 'but-for' cause of the tort." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1314 (11th Cir. 2018) (quoting *Oldfield*, 558 F.3d at 1222–23) (alterations omitted). In this case, therefore, Plaintiffs must allege facts plausibly showing that specific activities by the Brand-Name Manufacturers in California and Massachusetts "were the 'but-for' cause of Plaintiffs' ingestion of generic ranitidine products." Dkt. 2516 at 20.

Plaintiffs have not met this burden with their new allegations about the Brand-Name Manufacturers' "sales and marketing activities" in California and Massachusetts. The AMPIC identifies seven categories of "sales and marketing activities" in which some of the Brand-Name Manufacturers allegedly engaged in California and Massachusetts: (1) maintaining salesforces in those states; (2) conducting market research; (3) contracting with social-media outreach firms; (4) organizing seminars and other forms of outreach to the medical profession; (5) advertising on television, radio, and in print; (6) contracting with retailers and wholesalers; and (7) "targeting" California's Medicaid program. *See* AMPIC ¶ 232.

None of these alleged promotional activities could plausibly be a "'but-for' cause of Plaintiffs' ingestion of generic ranitidine products." Dkt. 2516 at 20. The AMPIC contains no

5

factual allegations of how the Brand-Name Manufacturers' marketing in California and Massachusetts caused Plaintiffs to take generic ranitidine or caused their doctors to prescribe it. That omission is fatal. A general allegation that an out-of-state defendant advertised in the forum state, without an allegation that the advertising influenced the plaintiff, cannot support specific jurisdiction. *See Fraser v. Smith*, 594 F.3d 842, 850–51 (11th Cir. 2010) (affirming dismissal for lack of personal jurisdiction because "if the [plaintiffs] were never exposed to [defendant's] advertising in the United States, then its efforts to solicit business there could not have led to their injuries").

Plaintiffs' attenuated theory of liability has created an insurmountable jurisdictional hurdle. Plaintiffs cannot rely on the Brand-Name Manufacturers' manufacture and sale of the allegedly defective generic product—the obvious but-for cause of the alleged injury in any product-liability case—so they must rely on the Brand-Name Manufacturers' sales and marketing activities as to their products. But Plaintiffs do not allege that any of these promotional activities actually reached them or their doctors, much less that the marketing made the difference between taking ranitidine or something else. Plaintiffs' new marketing allegations would require this Court to make an unsupported inferential leap to find causation. A review of the AMPIC demonstrates that any plaintiff who has taken a generic product could make such boilerplate marketing allegations in any product-liability case, and that approach does not meet the Eleventh Circuit's requirements. *See Waite*, 901 F.3d at 1314. For this reason as well, the Court should dismiss Plaintiffs' innovator-liability claims for lack of personal jurisdiction.

> **C. Plaintiffs Have Not Plausibly Alleged That The Brand-Name Manufacturers Should Have Foreseen Their In-State Activities Would Expose Them To Liability For Injuries Resulting From Generic Ranitidine.**

Even if Plaintiffs could somehow attribute their ingestion of generic ranitidine to specific advertisements from a Brand-Name Manufacturer, that showing alone would not be sufficient.

Plaintiffs would also have to allege facts demonstrating that "the causal nexus between the tortious conduct and the purposeful contact must be such that the out-of-state resident will have 'fair warning that a particular activity will subject [it] to the jurisdiction of a foreign sovereign.'" *Oldfield*, 558 F.3d at 1223 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). In this case, as the Court has explained, Plaintiffs must allege "Defendants should have foreseen that their activities regarding their brand-name products . . . could expose them to liability for injuries sustained from the ingestion of generic ranitidine products." Dkt. 2516 at 20.

Defendants could not have foreseen that their efforts to promote their own products in California and Massachusetts would expose them to liability for injuries suffered by consumers of their competitors' products. In assessing whether a defendant's in-state activities made litigation in the forum reasonably foreseeable, the question is whether the activities gave rise to a "tacit quid pro quo" between the defendant and the forum. *Oldfield*, 558 F.3d at 1223 (quoting *O'Connor*, 496 F.3d at 322). When a defendant does business in a state, it enjoys the benefits and protection of that state's laws. "In return for these benefits and protections, a defendant must—as a quid pro quo—submit to the burdens of litigation in that forum." *Id*. at 1221 n.30 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). When the Brand-Name Manufacturers sold and advertised their products in California and Massachusetts, they received the protection of those state's laws and tacitly consented to the possibility of litigation in connection with their own products and advertisements. But the Brand-Name Manufacturers did not, by promoting their own products, consent to litigate claims brought by ***all*** users of ranitidine, no matter what company produced or sold the medication, for as long as it stayed on the market. The Brand-Name Manufacturers received no benefit from the sale and consumption of generic

ranitidine in California and Massachusetts, so the "quid pro quo" necessary to support specific jurisdiction is absent.[2]

The Eleventh Circuit has held that in-state activities far more closely related to the alleged torts than the Brand-Name Manufacturers' advertising were insufficient to support specific jurisdiction. In *Oldfield*, a tourist filed suit in Florida against a Costa Rican resort to recover for injuries he sustained on a chartered boat. 558 F.3d at 1214. The plaintiff argued that specific jurisdiction was appropriate because the defendant had made its website available in Florida, which was how the plaintiff learned about the resort and booked the trip. *Id*. at 1217. The Eleventh Circuit acknowledged that the website was a but-for cause of plaintiffs' injuries because, if not for the website, the plaintiff "would not have gone to Costa Rica, boarded the fishing boat, and suffered an injury." *Id*. at 1223. But the Eleventh Circuit held that this causal connection between the website and the tortious conduct at issue—the "negligence of the captain" who operated the boat—was "too remote to satisfy the relatedness requirement." *Id*.

The Eleventh Circuit addressed a similar case in *Fraser v. Smith*, in which the family of a tourist who died when a Caribbean tour boat exploded sued the foreign tour company for negligent maintenance. *See* 594 F.3d at 845. The tour company had purchased the boat in Florida and hired an agent of the Florida seller to repair the boat in the Turks & Caicos, but the Eleventh Circuit found those connections insufficient. *Id.* at 845, 851–52. The court acknowledged that "injuries arising from the [Florida mechanic's] negligent repairs may have been foreseeable in some sense,"

---

[2] The Brand-Name Manufacturers also could not have foreseen that their advertising would expose them to these suits because no court had recognized innovator liability until 2008. *See T.H. v. Novartis Pharm. Corp.*, 407 P.3d 18, 29 (Cal. 2017) (noting that "the first case to recognize warning label liability" was *Conte v. Wyeth, Inc.*, 168 Cal. App. 4th 89 (2008)). The California and Massachusetts high courts only endorsed some form of the theory as recently as 2017 and 2018, respectively. *See id*.; *Rafferty v. Merck & Co.*, 92 N.E.3d 1205 (Mass. 2018).

8

but nonetheless the court held the tour company could not have foreseen it was consenting to litigate in Florida any personal-injury suits resulting from the mechanic's negligence. *Id*. at 851–52. Although the tour company's contacts with Florida "may very well be constitutionally sufficient to establish specific jurisdiction over claims adequately related to those contacts," they provided no support for "the unrelated tort claims of a third party." *Id*.

*Oldfield* and *Fraser* leave no doubt that California and Massachusetts lack personal jurisdiction over Plaintiffs' innovator-liability claims. In those cases, because the plaintiffs' claims concerned alleged negligent conduct out of state, the defendants' independent contacts with the forum state were irrelevant. Here, Plaintiffs' innovator-liability claims are based on the contents of the label of generic products, and all of the Brand-Name Manufacturers' labeling decisions presumably took place at their headquarters in other states (certainly Plaintiffs do not allege otherwise).[3] The only conduct in California and Massachusetts alleged by Plaintiffs—the Brand-Name Manufacturers' promotion of their own products—had no effect on the allegedly deficient generic label on products that Plaintiffs ingested.

Again, Plaintiffs' attempt to close the jurisdictional gap opened by their expansive theory of liability falls short. A company marketing its own product cannot foresee that it will have to answer for defects in its competitors' products. The Brand-Name Manufacturers' advertising of Zantac in California and Massachusetts bears no legally significant relationship to the injuries

---

[3] Even if the Brand-Name Manufacturers had made labeling decisions in California and Massachusetts, which Plaintiffs have not alleged, the Brand-Name Manufacturers still could not have foreseen that they would face liability in connection with generic products. The Brand-Name Manufacturers made labeling decisions for their own products; those decisions affected the generic label only through the operation of federal regulations. As the Sixth Circuit put it in *In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*, "the generic consumers' injuries are not the foreseeable result of the brand manufacturers' conduct, but of the laws over which the brand manufacturers have no control." 756 F.3d 917, 944 (6th Cir. 2014).

9

Plaintiffs allegedly suffered from generic ranitidine. The advertising, then, cannot support specific jurisdiction over Plaintiffs' innovator-liability claims.

## II. California And Massachusetts Lack Legislative Jurisdiction Over Plaintiffs' Innovator-Liability Claims.

For the same reasons that California and Massachusetts courts cannot assert specific jurisdiction over Plaintiffs' innovator-liability claims, California and Massachusetts law cannot apply in the courts of other states. The Due Process Clause prevents a state's law from applying outside its borders unless there is "at least some minimal contact between [the] [s]tate and the regulated subject." *Am. Charities for Reasonable Fundraising Reg., Inc. v. Pinellas Cnty.*, 221 F.3d 1211, 1216 (11th Cir. 2000) (quoting *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 314 n.2 (1970) (Harlan, J., dissenting)). Here, the "subject matter" that California and Massachusetts tort law purport to regulate is the Brand-Name Manufacturers' decision-making regarding the label for Zantac, which affected these Plaintiffs only because federal law required generic ranitidine to have the same label. *Gerling Global Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1236 (11th Cir. 2001).

As Plaintiffs have conceded, and as this Court recognized in its order dismissing Plaintiffs' initial innovator-liability claims, a state's law cannot apply to a defendant's out-of-state conduct if the state could not assert personal jurisdiction over that defendant in one of its own courts. *See* Dkt. 2516 at 22 (noting Plaintiffs' concession that "the same personal jurisdictional analyses apply to Defendants' due process arguments directed to legislative jurisdiction"). It follows that, just as there are insufficient contacts between the Brand-Name Manufacturers and California or Massachusetts to support specific jurisdiction in those states in an innovator-liability context, there are insufficient contacts to support the extraterritorial application of California or Massachusetts law in any forum. *See id.* at 22–23 (holding that "for the same reasons that Plaintiffs failed to establish a prima facie case of specific personal jurisdiction . . . Plaintiffs have not established

10

sufficient minimum contacts between Defendants and the states of Massachusetts or California, such that neither state may apply their substantive law extraterritorially in accordance with the Due Process Clause").[4]

### III. Innovator-Liability Claims Against Patheon Manufacturing Services Should Be Dismissed For Failure To State A Claim.

Patheon Manufacturing Services is the only Brand-Name Manufacturer named in the AMPIC that may be subject to general jurisdiction in Massachusetts based on the citizenship of its sole member Thermo Fisher Scientific, Inc. *See* AMPIC ¶ 36.[5] The innovator-liability claims against Patheon nonetheless fail as a matter of law because the AMPIC does not allege that Patheon ever "control[led] the contents of the label on [the] generic drug." *Rafferty v. Merck & Co.*, 92 N.E.3d 1205, 1219 (Mass. 2018). The sole premise of an innovator-liability claim is the requirement that generic companies copy the brand-name label, so that the brand-name company is effectively responsible for the contents of the generic label. *See id.*; *T.H. v. Novartis Pharm. Corp.*, 407 P.3d 18, 31 (Cal. 2017). As the AMPIC alleges, Patheon simply "manufactured the finished drug product" for Sanofi, which controlled the label for Zantac from 2017 to 2019. *See* AMPIC ¶¶ 254–55. Sanofi merely contracted with—and was not a corporate affiliate of—

---

[4] The Court observed in its order that a choice-of-law analysis will also ask "the precise question that must be considered in a due process challenge to legislative jurisdiction . . . 'that [a] State must have a significant contact or significant aggregation of contracts, creating state interests, such that its choice of law is neither arbitrary nor fundamentally unfair.'" Dkt. 2516 at 22 (quoting *Am. Charities for Reasonable Fundraising Reg., Inc.*, 221 F.3d at 1216). Thus, for the same reasons that California and Massachusetts lack specific and legislative jurisdiction over the innovator-liability claims, the choice of either state's law would violate the Due Process Clause.

[5] Whether the citizenship of Thermo Fisher Scientific, Inc. confers general jurisdiction over Patheon in Massachusetts is itself the subject of disputed law. *See Carruth v. Michot*, 2015 WL 6506550, at *7 (W.D. Tex. Oct. 26, 2015) (holding that the court "may not exercise general personal jurisdiction over [an LLC] based solely on the citizenship of one of its members" and that "the Court must decide whether [the members] have sufficient contacts with the state of Texas to support the exercise of personal jurisdiction").

Patheon. *See* AMPIC ¶¶ 36, 39. Patheon therefore is not a proper innovator-liability defendant because it never had responsibility for the label that Plaintiffs allege was deficient.

## CONCLUSION

For the foregoing reasons, the Brand-Name Manufacturers respectfully ask this Court to dismiss with prejudice all innovator-liability claims asserted by Plaintiffs (Counts XII and XIII of the AMPIC).

Dated: March 24, 2021                                Respectfully submitted,

 */s/ Mark S. Cheffo*
Mark S. Cheffo
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Tel:    (212) 698-3500
Fax:    (212) 698-3599
mark.cheffo@dechert.com

*Counsel for Defendant GlaxoSmithKline, LLC*


 */s/ Andrew T. Bayman*
Andrew T. Bayman
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA 30309
Tel:    (404) 572-4600
Fax:    (404) 572-5100
abayman@kslaw.com

*Counsel for Defendant Boehringer Ingelheim Pharmaceuticals, Inc.*

*/s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel:    (202) 434-5000
Fax:    (202) 434-5029
jpetrosinelli@wc.com

*Counsel for Defendant Pfizer Inc.*


*/s/ Anand Agneshwar*
Anand Agneshwar
ARNOLD & PORTER
KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel:    (212) 836-8000
Fax:    (212) 836-8689
anand.agneshwar@arnoldporter.com

*Counsel for Defendants Sanofi US Services Inc., Sanofi-Aventis U.S. LLC, and Chattem, Inc.*


*/s/ Christopher R. Carton*
Christopher R. Carton, Esq.
Erica S. Mekles, Esq.
**BOWMAN AND BROOKE LLP**
317 George Street, Suite 320
New Brunswick, NJ 08901
Tel:    (201) 577-5176
Fax:    (804) 649-1762
christopher.carton@bowmanandbrooke.com
erica.mekles@bowmanandbrooke.com

*Counsel for Defendant Patheon Manufacturing Services LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed on March 24, 2021 using the Court's CM/ECF system, which will provide automatic notification to all counsel of record.

*/s/ Mark Cheffo*
Mark S. Cheffo