## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

IN RE: ZANTAC (RANITIDINE)                                    MDL No. 2924
PRODUCTS LIABILITY                                            20-MD-2924
LITIGATION

                                          JUDGE ROBIN L. ROSENBERG
                          MAGISTRATE JUDGE BRUCE E. REINHART

_____/

THIS DOCUMENT RELATES TO: ALL CASES


### DEFENDANTS' OMNIBUS MOTION TO DISMISS AND/OR STRIKE
### AMENDED MASTER PERSONAL INJURY COMPLAINT, AND INCORPORATED
### MEMORANDUM OF LAW

# **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................1

BACKGROUND ......................................................................................................................2

ARGUMENT AND CITATION OF AUTHORITY ................................................................5

I.     The AMPIC Remains an Improper Shotgun Pleading.........................................................5
       A.     The AMPIC Violates Rule 8 by Lumping Defendants Together. ..........................6
       B.     The AMPIC Violates Rule 9(b) by Lumping Defendants Together......................11

II.    Numerous Counts Asserted in the AMPIC Also Fail to State a Claim. .............................12
       A.     Certain AMPIC Counts Fail to State a Viable Claim Due to Factual
              Inconsistencies Within Each Count. ....................................................................13
       B.     Plaintiffs Plead No Facts Showing that Defendants Were on Notice that
              Ranitidine Would Degrade to Form NDMA. .......................................................14
              1.     Plaintiffs' Claims for Failure to Warn Through Proper Expiration
                     Dates (Counts III and IV) Are Not Properly Pleaded. .............................15
              2.     Plaintiffs Fail to Plead Sufficient Facts to Support a Claim of
                     Design Defect Through Improper Expiration Dates (Count VII)..............18
              3.     Plaintiffs Fail to Plead Sufficient Facts to Support a Negligent
                     Container Claim (Count IX). ....................................................................20
       C.     The AMPIC Fails to State a Claim for Negligent Storage and
              Transportation (Counts X and XI). ......................................................................21
              1.     The Court Permitted Plaintiffs to Plead a "Heating" Theory of
                     Liability, but Only if Plaintiffs Addressed the Court's Concerns
                     with That Theory........................................................................................21
              2.     The AMPIC Fails to Address the Court's Concerns or Provide
                     Proper Notice to Defendants......................................................................22
       D.     The AMPIC Does Not State a Claim for Failure to Warn the FDA (Count
              V). .......................................................................................................................25
              1.     The Jurisdictions at Issue Do Not Recognize Claims for Failure to
                     Warn the FDA in Pharmaceutical Cases....................................................26
              2.     Even if These Jurisdictions Recognized Claims for Failure to Warn
                     the FDA, Plaintiffs Have Not Adequately Pleaded Them. ........................30
       E.     The AMPIC Does Not State a Claim for Negligent Failure to Test (Count
              VIII). ...................................................................................................................33
       F.     The AMPIC Does Not State a Claim for Unjust Enrichment (Count XIV). .........36
              1.     Plaintiffs Have Adequate Legal Remedies and Therefore Cannot
                     Claim Unjust Enrichment. ........................................................................36
              2.     Plaintiffs Do Not Plead That They Conferred an Actionable
                     Benefit on Defendants...............................................................................40
              3.     Plaintiffs Do Not Plead That Defendants Took Undue Advantage. ..........42
       G.     The AMPIC Does Not Plausibly Allege Entitlement to Punitive Damages..........43

CONCLUSION........................................................................................................................45

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*A.F.A.B., Inc. v. Town of Old Orchard Beach*,
   639 A.2d 103 (Me. 1994) ........................................................................................40

*Abante, LLC v. Premier Fighter, L.L.C.*,
   836 N.W.2d 374 (Neb. Ct. App. 2013) ...................................................................40

*Abbott Labs. v. Norse Chem. Corp.*,
   147 N.W.2d 529 (Wis. 1967) ..................................................................................43

*Adams v. Nissan N. Am., Inc.*,
   395 F. Supp. 3d 838 (S.D. Tex. 2018) ....................................................................42

*AGTC Inc. v. CoBon Energy LLC*,
   447 P.3d 123 (Utah 2019) .......................................................................................37

*Airlines Reporting Corp. v. Mundo Travel Corp.*,
   2012 WL 13018971 (E.D. Va. May 8, 2012) ..........................................................37

*Am. Fam. Care, Inc. v. Fox*,
   642 So. 2d 486 (Ala. Civ. App. 1994) ....................................................................40

*Am. Tobacco Co. v. Grinnell*,
   951 S.W. 2d 420 (Tex. 1997) ..................................................................................35

*Angeles v. Medtronic, Inc.*,
   863 N.W.2d 404 (Minn. Ct. App. 2015) .................................................................30

*Annon v. Lucas*,
   185 S.E.2d 343 (W. Va. 1971) ................................................................................42

*Apache Corp. v. MDU Res. Grp., Inc.*,
   603 N.W.2d 891 (N.D. 1999) .................................................................................42

*Aquilina v. Certain Underwriters at Lloyd's*,
   407 F. Supp. 3d 978 (D. Haw. 2019) ......................................................................37

*Archer v. Holmes*,
   2018 WL 534475 (N.D. Ga. Jan. 23, 2018) ............................................................41

*Ascente Bus. Consulting, LLC v. DR MyCommerce*,
   2019 WL 1513896 (D. Minn. Apr. 8, 2019) ...........................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................*passim*

*Atkinson v. Luitpold Pharms., Inc.*,
   2020 WL 4518022 (E.D. Pa. Aug. 6, 2020) ...............................................35

*Atkinson v. Luitpold Pharms., Inc.*,
   448 F. Supp. 3d 441 (E.D. Pa. 2020) .........................................................35

*Axen v. Am. Home Prod. Corp. ex rel. Wyeth-Ayerst Lab'ys*,
   974 P.2d 224 (Or. Ct. App. 1999)...............................................................28

*B & M Die Co. v. Ford Motor Co.*,
   421 N.W.2d 620 (Mich. Ct. App. 1988) .....................................................40

*Barker v. Dicicco*,
   2002 WL 31956978 (Mich. Ct. App. Dec. 20, 2002) ..................................42

*Estate of Bass v. Regions Bank, Inc.*,
   947 F.3d 1352 (11th Cir. 2020) .............................................................43, 44

*Bates v. Dow Agrosciences, LLC*,
   544 U.S. 431 (2005)................................................................................35, 36

*Bayer Corp. v. Leach*,
   153 N.E.3d 1168 (Ind. Ct. App. 2020).......................................................27

*Beavers-Gabriel v. Medtronic, Inc.*,
   2015 WL 143944 (D. Haw. Jan. 9, 2015) ...................................................29

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................8, 24, 32

*Bennett v. Artus*,
   20 P.3d 560 (Alaska 2001)..........................................................................40

*Billetts v. Mentor Worldwide, LLC*,
   2019 WL 4038218 (C.D. Cal. Aug. 27, 2019), *aff'd sub nom. Billetts v.
   Mentor Worldwide, LLC*, 2021 WL 406313 (9th Cir. Feb. 5, 2021) .......33

*Bland v. Abbott Labs., Inc.*,
   2012 WL 32577 (W.D. Ky. Jan. 6, 2012) ...................................................42

*Blankenship v. Medtronic, Inc.*,
   6 F. Supp. 3d 979 (E.D. Mo. 2014).............................................................30

*Booe v. Shadrick*,
   369 S.E.2d 554 (N.C. 1988)........................................................................40

*Boring v. Google Inc.*,
   362 F. App'x 273 (3d Cir. 2010) ........................................................................43

*Branham v. Ford Motor Co.*,
   701 S.E.2d 5 (S.C. 2010) ....................................................................................19

*Brooks v. Blue Cross & Blue Shield*,
   116 F.3d 1364 (11th Cir. 1997) ..........................................................................12

*Brown v. Brown*,
   136 P.3d 745 (Or. Ct. App. 2006).......................................................................37

*Buckman Co. v. Plaintiffs' Legal Comm.*,
   531 U.S. 341 (2001)......................................................................................26, 30

*Burlington N. R.R. Co. v. Sw. Elec. Power Co.*,
   925 S.W.2d 92 (Tex. Ct. App. 1996) .................................................................43

*Burton v. R.J. Reynolds Tobacco Co.*,
   397 F.3d 906 (10th Cir. 2005) ............................................................................34

*Bytemark, Inc. v. Xerox Corp.*,
   342 F. Supp. 3d 496 (S.D.N.Y. 2018).................................................................37

*Cablevision of Breckenridge, Inc. v. Tannhauser Condo. Ass'n*,
   649 P.2d 1093 (Colo. 1982) ...............................................................................40

*Carlin v. Super. Ct.*,
   920 P.2d 1347 (Cal. 1996) .................................................................................15

*Ceran v. Reisch*,
   2020 WL 6074114 (N.D. Iowa Sept. 9, 2020) ..............................................37, 40

*Certified Fire Prot. Inc. v. Precision Constr.*,
   283 P.3d 250 (Nev. 2012) ..................................................................................40

*Chicken Kitchen USA, LLC v. Maiden Specialty Ins. Co.*,
   2015 WL 7294824 (S.D. Fla. Nov. 19, 2015).....................................................43

*Chiron Recovery Ctr., LLC v. United Healthcare Servs., Inc.*,
   2020 WL 3547047 (S.D. Fla. June 30, 2020) .......................................................6

*City of Neodesha v. BP Corp. N. Am.*,
   334 P.3d 830 (Kan. Ct. App. 2014) ...............................................................37, 39

*City of Rockford v. Mallinckrodt ARD, Inc.*,
   360 F. Supp. 3d 730 (N.D. Ill. 2019) .................................................................42

*Clark Off. Bldg., LLC v. MCM Cap. Partners, LLLP*,
   2021 WL 302667 (Md. Ct. Spec. App. Jan. 29, 2021) ..........................................................40

*United States ex rel. Clausen v. Lab. Corp. of Am.*,
   290 F.3d 1301 (11th Cir. 2002) ...........................................................................................12

*Cline v. Adv. Neuromodulation Sys., Inc.*,
   17 F. Supp. 3d 1275 (N.D. Ga. 2014) ..................................................................................33

*Cohen v. Frank Devs., Inc.*,
   389 A.2d 933 (N.H. 1978) ....................................................................................................40

*Coleman v. Medtronic, Inc.*,
   167 Cal. Rptr. 3d 300 (Cal. Ct. App. 2014) .........................................................................30

*Conklin v. Medtronic, Inc.*,
   431 P.3d 571 (Ariz. 2018) ..............................................................................................26, 30

*Conley v. St. Jude Med., LLC*,
   482 F. Supp. 3d 268 (M.D. Pa. 2020) ..................................................................................28

*Crawford v. ITW Food Equip. Grp., LLC*,
   977 F.3d 1331 (11th Cir. 2020) ...........................................................................................19

*Cruz v. Kate Spade & Co., LLC*,
   2020 WL 5848095 (D. Nev. Sept. 30, 2020) .......................................................................37

*Cunningham Prop. Mgmt. Tr. v. Ascent Res. - Utica, LLC*,
   351 F. Supp. 3d 1056 (S.D. Ohio 2018) ..............................................................................37

*In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*,
   756 F.3d 917 (6th Cir. 2014) .................................................................................................9

*DCB Constr. Co., Inc. v. Central City Dev. Co.*,
   965 P.2d 115 (Colo. 1998) ...................................................................................................42

*Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.*,
   972 F. Supp. 665 (N.D. Ga. 1997) .......................................................................................36

*Desai v. Franklin*,
   895 N.E.2d 875 (Ohio Ct. App. 2008) .................................................................................40

*Doe v. Celebrity Cruises, Inc.*,
   389 F. Supp. 3d 1109 (S.D. Fla. May 9, 2019) ....................................................................44

*Dow Agrosciences LLC v. Bates*,
   332 F.3d 323 (5th Cir. 2003), *vacated and remanded on other grounds*, 544
   U.S. 431 (2005) ....................................................................................................................36

*Ducote Jax Holdings, L.L.C. v. Bradley*,
  2007 WL 2008505 (E.D. La. July 5, 2007) ...............................................................37, 39

*Dunn v. Genzyme Corp.*,
  161 N.E.3d 390 (Mass. 2021) .........................................................................................28

*Durette v. Aloha Plastic Recycling, Inc.*,
  100 P.3d 60 (Haw. 2004) ................................................................................................40

*Effler v. Pyles*,
  380 S.E.2d 149 (N.C. Ct. App. 1989) .............................................................................42

*Ehlers v. Ben & Jerry's Homemade Inc.*,
  2020 WL 2218858 (D. Vt. May 7, 2020) ........................................................................37

*Embree Constr. Grp., Inc. v. Rafcor, Inc.*,
  411 S.E.2d 916 (N.C. 1992).............................................................................................37

*English v. Bayer Corp.*,
  468 F. Supp. 3d 573 (W.D.N.Y. 2020) ...........................................................................28

*Engram v. Engram*,
  463 S.E.2d 12 (Ga. 1995)................................................................................................40

*Erwin v. Mendenhall*,
  433 P.3d 1090 (Alaska 2018)..........................................................................................36

*Fail Safe LLC v. A.O. Smith Corp.*,
  762 F. Supp. 2d 1126 (E.D. Wis. 2011), *aff'd*, 674 F.3d 889 (7th Cir. 2012) ........................37

*Fireworks Lady & Co., LLC v. Firstrans Int'l Co.*,
  2019 WL 6448943 (C.D. Cal. Aug. 8, 2019).........................................................................42

*Fisher v. Harley-Davidson Motor Grp., LLC*,
  2019 WL 8014364 (S.D. Fla. Oct. 18, 2019)........................................................................11

*Fox v. Loews Corp.*,
  309 F. Supp. 3d 1241 (S.D. Fla. 2018) .............................................................................6

*Francis v. Mead Johnson & Co.*,
  2010 WL 5313540 (D. Colo. Dec. 17, 2010)................................................................36, 39

*Franklin v. Curry*,
  738 F.3d 1246 (11th Cir. 2013) .......................................................................................23

*Freed v. St. Jude Med., Inc.*,
  364 F. Supp. 3d 343 (D. Del. 2019)................................................................................29

*Freeman Indus., LLC v. Eastman Chem. Co.*,
    172 S.W.3d 512 (Tenn. 2005) ............................................................................. 41

*Gavin v. Medtronic, Inc.*,
    2013 WL 3791612 (E.D. La. July 19, 2013) ....................................................... 29

*Gissendaner v. Comm'r, Ga. Dep't of Corr.*,
    803 F.3d 565 (11th Cir. 2015) ........................................................................... 21

*Gourdine v. Crews*,
    955 A.2d 769 (Md. 2008) ............................................................................ 27, 28

*Gov't of Puerto Rico v. Carpenter Co.*,
    442 F. Supp. 3d 464 (D.P.R. 2020) ............................................................... 37, 40

*Greager v. McNeil-PPC, Inc.*,
    414 F. Supp. 3d 1137 (N.D. Ill. 2019) ............................................................... 10

*Greene v. Bank of Am., N.A.*,
    2014 WL 11497812 (D.N.M. Jan. 15, 2014) ...................................................... 11

*Grynberg v. Total S.A.*,
    538 F.3d 1336 (10th Cir. 2008) ......................................................................... 38

*Guinn v. Hoskins Chevrolet*,
    836 N.E.2d 681 (Ill. Ct. App. 2005) .................................................................. 37

*Gulfport Energy Corp. v. Harbert Priv. Equity Partners, LP*,
    851 S.E.2d 817 (W. Va. 2020) ........................................................................... 37

*Haggard Drilling, Inc. v. Greene*,
    236 N.W.2d 841 (Neb. 1975) ............................................................................. 41

*Haines v. Comfort Keepers, Inc.*,
    393 P.3d 422 (Alaska 2017) ............................................................................... 38

*Hartness v. Nuckles*,
    475 S.W.3d 558 (Ark. 2015) .............................................................................. 40

*Hatcher v. Hatcher*,
    158 N.E.3d 326 (Ill. Ct. App. 2020) .................................................................. 40

*Hawaiian Ass'n of Seventh-Day Adventists v. Wong*,
    305 P.3d 452 (Haw. 2013) ................................................................................. 42

*Hayden v. Medcenter One, Inc.*,
    828 N.W.2d 775 (N.D. 2013) ....................................................................... 37, 40

*Hayes v. Endologix, Inc.*,
   449 F. Supp. 3d 676 (E.D. Ky. 2020) ..............................................................27

*Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*,
   910 P.2d 839 (Kan. 1996) ..............................................................40

*Heldenfels Bros. v. City of Corpus Christi*,
   832 S.W.2d 39 (Tex. 1992)..............................................................41

*Henderson v. Sun Pharm. Indus., Ltd.*,
   2011 WL 4024656 (N.D. Ga. June 9, 2011) ..............................................................44

*Hillman Constr. Corp. v. Wainer*,
   636 So. 2d 576 (Fla. Dist. Ct. App. 1994) ..............................................................40

*Hofeldt v. Mehling*,
   658 N.W.2d 783 (S.D. 2003) ..............................................................41

*Hollenshead v. New Penn Fin., LLC*,
   447 F. Supp. 3d 283 (E.D. Pa. 2020) ..............................................................37

*Howard v. Turnbull*,
   316 S.W.3d 431 (Mo. Ct. App. 2010)..............................................................40

*Howell v. Rhoades*,
   547 So. 2d 1087 (La. Ct. App. 1989) ..............................................................40

*Hydro Turf, Inc. v. Int'l Fid. Ins. Co.*,
   91 P.3d 667 (Okla. Ct. App. 2004) ..............................................................37, 39

*Inglese v. Beal*,
   742 S.E.2d 687 (S.C. Ct. App. 2013)..............................................................40

*Jackson v. Bank of Am. N.A.*,
   898 F.3d 1348 (11th Cir. 2018) ..............................................................2, 21, 22, 25

*Jackson v. Fischer*,
   2013 WL 6732872 (N.D. Cal. Dec. 20, 2013) ..............................................................11

*James G. Davis Constr. Corp. v. FTJ, Inc.*,
   841 S.E.2d 642 (Va. 2020) ..............................................................41

*Jarrett v. Panasonic Corp. of N. Am.*,
   8 F. Supp. 3d 1074 (E.D. Ark. 2013) ..............................................................37

*Jeffs v. Stubbs*,
   970 P.2d 1234 (Utah 1998)..............................................................41

*Jerry Harmon Motors, Inc. v. Heth.*,
    316 N.W.2d 324 (N.D. 1982) ..........................................................................42

*Johnson v. CitiMortgage, Inc.*,
    2013 WL 6632108 (W.D. Wash. Dec. 17, 2013) ...........................................37

*Kelley v. Rambus, Inc.*,
    384 F. App'x 570 (9th Cir. 2010) ...................................................................11

*Kopel v. Kopel*,
    229 So. 3d 812 (Fla. 2017)..............................................................................41

*Kubicki ex rel. Kubicki v. Medtronic*,
    2013 WL 1739580 (D.D.C. Mar. 21, 2013).....................................................27

*Kubicki ex rel. Kubicki v. Medtronic, Inc.*,
    293 F. Supp. 3d 129 (D.D.C. 2018) ................................................................27

*Lane v. Cap. Acquisitions & Mgmt. Co.*,
    2006 WL 4590705 (S.D. Fla. Apr. 14, 2006) .................................................11

*Lapkin v. Garland Bloodworth, Inc.*,
    23 P.3d 958 (Okla. Ct. App. 2000) .................................................................42

*Lindquist v. Ayerst Lab., Inc.*,
    607 P.2d 1339 (Kan. 1980).............................................................................34

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*,
    185 F. Supp. 3d 761 (D.S.C. 2016)................................................................10

*Magluta v. Samples*,
    256 F.3d 1282 (11th Cir. 2001) ........................................................................9

*Mann v. Palmer*,
    713 F.3d 1306 (11th Cir. 2013) ........................................................................8

*Mannos v. Moss*,
    155 P.3d 1166 (Idaho 2007)...........................................................................37

*Mantiply v. Mantiply*,
    951 So. 2d 638 (Ala. 2006)..............................................................................42

*Martin v. Medtronic, Inc.*,
    32 F. Supp. 3d 1026 (D. Ariz. 2014) ..............................................................32

*Martis v. Grinnell Mut. Reinsurance Co.*,
    905 N.E.2d 920 (Ill. Ct. App. 2009) ...............................................................38

ix

*Marzullo v. Crosman Corp.*,
  289 F. Supp. 2d 1337 (M.D. Fla. 2003) ....................................................................15

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011) ......................................................................................................32

*McAfee v. Medtronic, Inc.*,
  2015 WL 3617755 (N.D. Ind. June 4, 2015) ...........................................................27

*McCarthy Improvement Co. v. Manning & Sons Trucking & Utilities, LLC*,
  2018 WL 3009021 (D.S.C. June 14, 2018) ..............................................................37

*McGrath v. Bayer HealthCare Pharm. Inc.*,
  393 F. Supp. 3d 161 (E.D.N.Y. 2019) ......................................................................18

*McLaren v. Gabel*,
  229 A.3d 422 (Vt. 2020) ............................................................................................41

*Med. Recovery Servs., LLC v. Bonneville Billing & Collections, Inc.*,
  336 P.3d 802 (Idaho 2014) ........................................................................................41

*In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*,
  623 F.3d 1200 (8th Cir. 2010) ..................................................................................30

*Melchior v. New Line Prods., Inc.*,
  131 Cal. Rptr. 2d 347 (Cal. Ct. App. 2003) ............................................................38

*Metro. Gov't of Nashville & Davidson Cty. v. Cigna Healthcare of Tenn., Inc.*,
  195 S.W.3d 28 (Tenn. Ct. App. 2005) ......................................................................37

*Miller v. Pfizer, Inc.*,
  196 F. Supp. 2d 1095 (D. Kan. 2002) ..................................................................34, 35

*Mitchell v. Moore*,
  729 A.2d 1200 (Pa. Super. Ct. 1999) ........................................................................40

*Mont. Dig., LLC v. Trinity Lutheran Church*,
  473 P.3d 1009 (Mont. 2020) ................................................................................37, 40

*Moore v. Mylan Inc.*,
  840 F. Supp. 2d 1337 (N.D. Ga. 2012) ....................................................................44

*MT Prop., Inc. v. Ira Weinstein & Larry Weinstein, LLC*,
  855 N.Y.S.2d 627 (N.Y. App. Div. 2008) ................................................................40

*N.C. Corff P'ship, Ltd. v. OXY USA, Inc.*,
  929 P.2d 288 (Okla. Ct. App. 1996) .........................................................................40

*Nautica Int'l, Inc. v. Intermarine USA, L.P.*,
  5 F. Supp. 2d 1333 (S.D. Fla. 1998) ...................................................................38

*Nemec v. Shrader*,
  991 A.2d 1120 (Del. 2010) .......................................................................36, 40

*New v. CitiFinancial Auto Credit, Inc.*,
  2012 WL 2415532 (M.D. Ala. June 26, 2012) ...................................................36

*News World Commc'ns, Inc. v. Thompsen*,
  878 A.2d 1218 (D.C. Ct. App. 2005).................................................................42

*Norabuena v. Medtronic, Inc.*,
  86 N.E.3d 1198 (Ill. App. Ct. 2017) .................................................................26

*Ontiveros Insulation Co. v. Sanchez*,
  3 P.3d 695 (N.M. Ct. App. 2000).......................................................................40

*Outdoor Cent., Inc. v. GreatLodge.com, Inc.*,
  2009 WL 10671349 (W.D. Mo. Aug. 21, 2009)...............................................37

*Owens-Illinois, Inc. v. Zenobia*,
  601 A.2d 633 (Md. 1992) .................................................................................28

*Pacheco v. Boar's Head Provisions Co.*,
  2010 WL 1323785 (W.D. Mich. Mar. 30, 2010) ................................................37

*Paschall's, Inc. v. Dozier*,
  407 S.W.2d 150 (Tenn. 1966)...........................................................................42

*Paturzo v. Bos. Sci. Corp.*,
  2017 WL 8220600 (C.D. Cal. Apr. 21, 2017) ....................................................31

*Pearsall v. Medtronic, Inc.*,
  147 F. Supp. 3d 188 (E.D.N.Y. 2015) .............................................................28

*Pender v. Bank of Am. Corp.*,
  2017 WL 1536234 (W.D.N.C. Apr. 27, 2017) ...................................................42

*Pernice v. Bovim*,
  2015 WL 5063378 (D.D.C. Aug. 26, 2015) .................................................36, 40

*Peterson v. Cellco P'ship*,
  80 Cal. Rptr. 3d 316 (Cal. Ct. App. 2008).........................................................40

*Petrovic v. Princess Cruise Lines, Ltd.*,
  2012 WL 3026368 (S.D. Fla. July 20, 2012).......................................................6

*Piguet v. JP Morgan Chase Bank*,
    2014 WL 11350229 (S.D. Fla. Apr. 29, 2014) ...................................................................6

*Pilot Inv. Grp. Ltd. v. Hofarth*,
    550 N.W.2d 27 (Neb. 1996)....................................................................................................37

*Pinnsonneault v. St. Jude Med., Inc.*,
    953 F. Supp. 2d 1006 (D. Minn. 2013).................................................................................30

*Pixler v. Huff*,
    2011 WL 5597327 (W.D. Ky. Nov. 17, 2011) ......................................................................41

*PLIVA, Inc. v. Mensing*,
    564 U.S. 604 (2011)..................................................................................................................3

*Plourde v. Sorin Grp. USA, Inc.*,
    2021 WL 736153 (D. Mass. Feb. 5, 2021) ...........................................................................28

*Ponzio v. Mercedes-Benz USA, LLC*,
    447 F. Supp. 3d 194 (D.N.J. 2020) .......................................................................................37

*Porpora v. Louisville Ladder, Inc.*,
    2006 WL 8431483 (S.D. Fla. June 16, 2006) ......................................................................15

*Portofino Seaport Vill., LLC v. Welch*,
    4 So. 3d 1095 (Ala. 2008).....................................................................................................41

*Price v. L'Oreal USA, Inc.*,
    2017 WL 4480887 (S.D.N.Y. Oct. 5, 2017) .........................................................................39

*Prof'l Elec. Contractors of Conn., Inc. v. Stamford Hosp.*,
    230 A.3d 773 (Conn. App. Ct. 2020).....................................................................................42

*Prohias v. Pfizer, Inc.*,
    490 F. Supp. 2d 1228 (S.D. Fla. 2007) ..........................................................................36, 39

*Prudential Ins. Co. of Am. v. Couch*,
    376 S.E.2d 104 (W. Va. 1988)...............................................................................................41

*Puttkammer v. Minth*,
    266 N.W.2d 361 (Wis. 1978).................................................................................................41

*Qualichem v. Xelera, Inc.*,
    62 Va. Cir. 179 (Va. Cir. Ct. 2003).......................................................................................43

*R.M. Dudley Constr. Co. v. Dawson*,
    258 S.W.3d 694 (Tex. Ct. App. 2008) ..................................................................................38

*Randolph v. Peterson, Inc. v. J.R. Simplot Co.*,
   778 P.2d 879 (Mont. 1989) ..................................................................................42

*Re v. O'Connor*,
   2016 WL 7315161 (D.N.J. Oct. 5, 2016) ..............................................................42

*Redland v. Redland*,
   288 P.3d 1173 (Wyo. 2012) ..................................................................................41

*Rhynes v. Stryker Corp.*,
   2011 WL 2149095 (N.D. Cal. May 31, 2011) ........................................................44

*Richter v. Limax Int'l*,
   45 F.3d 1464 (10th Cir. 1995) ..............................................................................34

*Riegel v. Medtronic, Inc.*,
   552 U.S. 312 (2008) ..............................................................................................30

*Rindal v. Sohler*,
   658 N.W.2d 769 (S.D. 2003) ................................................................................37

*Romano v. Site Acquisitions, LLC*,
   2017 WL 2634643 (D.N.H. June 19, 2017) .....................................................37, 38

*Romero v. Wyeth LLC*,
   2012 WL 12547449 (E.D. Tex. Aug. 31, 2012) ....................................................35

*Russell v. Johnson & Johnson, Inc.*,
   610 S.W.3d 233 (Ky. 2020) ..................................................................................27

*S & J, Inc. v. McLoud & Co.*,
   108 S.W.3d 765 (Mo. Ct. App. 2003) ...................................................................42

*S. Cty. Post & Beam, Inc. v. McMahon*,
   116 A.3d 204 (R.I. 2015) ................................................................................37, 40

*S. Fresh, LLC v. Breschro & Co., Inc.*,
   2015 WL 12881165 (S.D. Fla. Oct. 5, 2015) ........................................................42

*Samuels v. Hendricks*,
   445 A.2d 1273 (Pa. Super. Ct. 1982) ....................................................................42

*In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Practices & Prod. Liab. Litig.*,
   288 F. Supp. 3d 1087 (D.N.M. 2017) ...................................................................37

*Schechner v. Whirlpool Corp.*,
   237 F. Supp. 3d 601 (E.D. Mich. 2017) ................................................................41

*Schechter v. Hyundai Motor Am.*,
  2019 WL 3416902 (D.N.J. July 29, 2019)............................................................41

*Scovil v. Medtronic Inc.*,
  2015 WL 880614 (D. Nev. Mar. 2, 2015) .............................................................29

*ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*,
  544 N.W.2d 302 (Minn. 1996)..............................................................................42

*Sewell v. Mentor Worldwide, LLC*,
  __ F. App'x __, 2012 WL 406623 (9th Cir. Feb. 5, 2021) ...................................31

*Simmons v. Bos. Sci. Corp.*,
  2013 WL 1207421 (C.D. Cal. Mar. 25, 2013)......................................................31

*Skotak v. Tenneco Resins, Inc.*,
  953 F.2d 909 (5th Cir. 1992) ................................................................................36

*Smith v. Teva Pharm. USA, Inc.*,
  437 F. Supp. 3d 1159 (S.D. Fla. 2020) ...............................................................3, 9

*In re Sony PS3 Other OS Litig.*,
  551 F. App'x 916 (9th Cir. 2014) ..........................................................................36

*Sperry v. Crompton Corp.*,
  810 N.Y.S.2d 498 (N.Y. App Div. 2006) ..............................................................42

*Stark v. Soteria Imaging Servs., Inc.*,
  276 F. Supp. 2d 989 (D. Neb. 2003*)*....................................................................42

*State of Sao Paulo of Fed. Rep. of Brazil v. Am. Tobacco Co.*,
  919 A.2d 1116 (Del. 2007) ...................................................................................38

*State v. Philip Morris Inc.*,
  1997 WL 540913 (Md. Cir. Ct. May 21, 1997).....................................................37

*Stengel v. Medtronic Inc.*,
  704 F.3d 1224 (9th Cir. 2013) ..............................................................................30

*Stevenson v. Windermere Real Est./Cap. Grp., Inc.*,
  275 P.3d 839 (Idaho 2012)....................................................................................40

*Stratton v. Am. Med. Sec., Inc.*,
  266 F.R.D. 340 (D. Ariz. 2009) ................................................................36, 39, 40

*Summerlin v. Shellpoint Mortg. Servs.*,
  165 F. Supp. 3d 1099 (N.D. Ala. 2016).................................................................44

*Tatum v. Takeda Pharm. N. Am., Inc.*,
   2012 WL 5182895 (E.D. Pa. Oct. 19, 2012)..........................................................41

*Territory of U.S. V.I. v. Goldman, Sachs & Co.*,
   937 A.2d 760 (Del. Ch. 2007).............................................................................42

*Tex. Carpenters Health Ben. Fund v. Philip Morris, Inc.*,
   21 F. Supp. 2d 664 (E.D. Tex. 1998), *aff'd*, 199 F.3d 788 (5th Cir. 2000) ............................37

*Three Way, Inc. v. Burton Enters., Inc.*,
   177 P.3d 219 (Wyo. 2008)...................................................................................37

*Tomasella v. Nestle USA, Inc.*,
   962 F.3d 60 (1st Cir. 2020)......................................................................37, 39, 40

*Torkie-Tork v. Wyeth*,
   757 F. Supp. 2d 567 (E.D. Va. 2010) ..................................................................15

*Total Off. Sols., Inc. v. Grimstad*,
   2019 WL 2721216 (Ohio Ct. App. June 27, 2019)..............................................42

*Town of Plainville v. Almost Home Animal Rescue & Shelter, Inc.*,
   187 A.3d 1174 (Conn. Ct. App. 2018).............................................................36, 40

*Tupper v. Roan*,
   243 P.3d 50 (Or. 2010) .......................................................................................42

*United States v. Stevens*,
   605 F. Supp. 2d 863 (W.D. Ky. 2008)............................................................37, 40

*Utts v. Bristol-Myers Squibb Co.*,
   226 F. Supp. 3d 166 (S.D.N.Y. 2016), *aff'd Gibbons*, 919 F.3d 699 ...................................10

*Vancrest Mgmt. Corp. v. Mullenhour*,
   140 N.E.3d 1051 (Ohio Ct. App. 2019)...............................................................42

*Ventura v. Kyle*,
   825 F.3d 876 (8th Cir. 2016) ..............................................................................37

*Vichi v. Koninklijke Philips Electr. N.V.*,
   62 A.3d 26 (Del. Ch. 2012)..................................................................................41

*VRG Corp. v. GKN Realty Corp.*,
   641 A.2d 519 (N.J. 1994).....................................................................................40

*Wahlcometroflex, Inc. v. Baldwin*,
   991 A.2d 44 (Me. 2010).......................................................................................37

*Waltenburg v. St. Jude Med., Inc.*,
  33 F. Supp. 3d 818 (W.D. Ky. 2014)......................................................................27

*Waste Mgmt. of Miss. Inc. v. Jackson Ramelli Waste LLC*,
  301 So. 3d 635 (Miss. 2020)...............................................................................40

*Weaver v. Ethicon, Inc.*,
  2017 WL 680725 (S.D. Cal. Feb. 21, 2017), *aff'd*, 737 F. App'x 315 (9th Cir.
  2018) ..............................................................................................................31

*Weiland v. Palm Beach Cty. Sheriff's Office*,
  792 F.3d 1313 (11th Cir. 2015) .......................................................................5, 21

*White v. Volkswagen Grp. of Am., Inc.*,
  2013 WL 685298 (W.D. Ark. Feb. 25, 2013)........................................................41

*White v. White*,
  2019 WL 7876654 (Miss. Ct. App. May 21, 2019) ................................................37

*Williams v. Bayer Corp.*,
  541 S.W.3d 594 (Mo. Ct. App. 2017).................................................................30

*Williams v. Pfizer, Inc.*,
  2009 WL 1362783 (W.D. La. May 14, 2009) .......................................................39

*Williams v. Smith & Nephew, Inc.*,
  123 F. Supp. 3d 733 (D. Md. 2015)....................................................................28

*Williams v. St. Jude Med., S.C., Inc.*,
  2017 WL 11113322 (N.D. Ga. Oct. 19, 2017) ....................................................33

*Wilson v. Gutierrez*,
  323 P.3d 974 (Or. Ct. App. 2014)......................................................................40

*Witt v. Howmedica Osteonics Corp.*,
  2013 WL 6858395 (S.D. Fla. Dec. 30, 2013) ......................................................17

*Witt v. Stryker Corp. of Mich.*,
  648 F. App'x 867 (11th Cir. 2016) .....................................................................18

*Wong v. Chan*,
  2012 WL 1557240 (Mass. Ct. App. May 4, 2012) ...............................................42

*Wyeth v. Levine*,
  555 U.S. 555 (2009)........................................................................................30

*Young v. Young*,
  191 P.3d 1258 (Wash. 2008)............................................................................41

*Zafarana v. Pfizer, Inc.*,
    724 F. Supp. 2d 545 (E.D. Pa. 2010) ..............................................................39, 41

*Zinter v. Univ. of Minn.*,
    799 N.W.2d 243 (Minn. Ct. App. 2011) ................................................................40

*Zoeller v. E. Chicago Second Century, Inc.*,
    904 N.E.2d 213 (Ind. 2009) ..........................................................................13, 40

*Indiana ex rel. Zoeller v. Pastrick*,
    696 F. Supp. 2d 970 (N.D. Ind. 2010) ..................................................................37

**Statutes**

21 U.S.C. § 337 ................................................................................................................26

21 U.S.C. § 355 ..................................................................................................................3

**Other Authorities**

21 C.F.R. § 314.80 ..........................................................................................................32

Fed. R. Civ. P. 8 ....................................................................................................... *passim*

Restatement (Second) of Torts § 388 ..............................................................................15

Restatement (Second) of Torts § 402A ............................................................................19

Restatement (Third) of Torts § 2 ..........................................................................15, 18, 19

Defendants move to dismiss or strike the Amended Master Personal Injury Complaint ("AMPIC") for shotgun pleading and for failure to state a claim, pursuant to Rules 8(a), 9(b), 12(b)(6), and 12(f), and this Court's Pretrial Orders #31, 36, and 61. Defendants submit this memorandum in support.

## <u>INTRODUCTION</u>

The AMPIC is a failed attempt to cure the deficiencies for which this Court dismissed Plaintiffs' original Master Personal Injury Complaint ("MPIC"). The MPIC, this Court held, was a "shotgun pleading" that improperly and confusingly "lump[ed]" the "Defendants together" without a sufficient "factual basis to distinguish their conduct." Dkt. No. 2515 at 19 (internal quotation marks omitted). The AMPIC fails for the same reasons. Like the MPIC, it lumps together groups of distinct Defendants that, as this Court has recognized, "conduct[ed] fundamentally different activities." *Id.* And the AMPIC, like its predecessor, does not allege sufficient facts to allow the Court or Defendants to determine what alleged conduct supports Plaintiffs' claims against each individual Defendant. More than that, the AMPIC's allegations make clear that, in many instances, no such facts *could* exist, because the identified Defendants could not possibly have engaged in the alleged conduct. The AMPIC should thus be dismissed or stricken as a shotgun pleading.

Even if the AMPIC were not a shotgun pleading, it fails to state a plausible claim as to Counts III, IV, V, VII, VIII, IX, X, XI, and XIV. Numerous counts fail because Plaintiffs do not plausibly allege that, prior to September 2019, any Defendant knew or should have known that ranitidine could degrade to form NDMA over time or due to exposure to heat or humidity, or that any Defendant stored or transported the product outside of the labeled conditions. Plaintiffs' claim for failure to warn the FDA should be dismissed because the relevant states' laws do not create

any such claim against drug manufacturers and, even if they did, Plaintiffs do not allege any actual adverse event that Defendants failed to report or plead that any such failure to warn caused their injuries. Moreover, Plaintiffs' claim for negligent failure to test should be dismissed because neither Kansas nor Texas—the two states under whose laws Plaintiffs bring this count—have recognized such a cause of action as an independent tort. Plaintiffs' claim for unjust enrichment should be dismissed because Plaintiffs have an adequate legal remedy for all of their alleged injuries and do not allege the essential elements of an unjust enrichment claim. Finally, Plaintiffs' request for punitive damages should be dismissed because Plaintiffs do not plead the necessary factual support for punitive damages.

The AMPIC utterly fails to allege sufficient facts to put specific Defendants on notice of any plausible claim against them. For that reason, and others discussed below, it should be dismissed. Because this Court already provided Plaintiffs an opportunity to cure the shotgun pleading infirmities clearly identified in the Court's prior order, Dkt. No. 2515, Plaintiffs' failure to do so warrants dismissal *with prejudice* under this Circuit's precedent. *See Jackson v. Bank of Am. N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018) ("What matters is function, not form: the key is whether the plaintiff had fair notice of the defects and a meaningful chance to fix them. If that chance is afforded and the plaintiff fails to remedy the defects, the district court does not abuse its discretion in dismissing the case with prejudice on shotgun pleading grounds.").

## BACKGROUND

Like the MPIC, the AMPIC asserts claims on behalf of Plaintiffs who claim they used and were injured by medications containing ranitidine. AMPIC ¶ 1. Ranitidine was "synthesized and discovered" in 1976. *Id.* ¶ 238. According to the AMPIC, in September 2019, 43 years after that discovery, testing of certain Defendants' products revealed the presence of an allegedly

carcinogenic chemical called NDMA. *Id.* ¶ 322. Based on those "recent revelations," *id.* ¶ 5, and a cherry-picked sampling of "studies" published over a nearly 40-year period, *id.* ¶¶ 348–404, Plaintiffs claim that more than 100 differently situated Defendants in the ranitidine supply chain—including some whose products were not tested for NDMA—somehow knew (or should have known) that ranitidine was dangerous from the day it was placed on the market in 1983. *Id.* ¶ 405.

Defendants, however, were not acting identically at any point in time, much less over *the entire 40-year period* covered by Plaintiffs' allegations. To the contrary, Defendants played different roles with respect to different versions, dosages, and formulations of the medication, and at different points in time. Defendants were accordingly governed by different regulatory schemes, with different legal obligations and pathways available to them.[1] For example, Defendant GlaxoSmithKline manufactured *prescription* Zantac from 1983 to 2017. *Id.* ¶ 252. Defendants Pfizer, Boehringer Ingelheim, and Sanofi manufactured and sold exclusively over-the-counter ("OTC") Zantac, at entirely different times. *Id.* ¶ 259.

The differences between Defendants are equally, if not more, pronounced with respect to the Generic Manufacturer Defendants. According to the AMPIC, "numerous generic manufacturers" sold a variety of prescription and OTC generic formulations of ranitidine between 1997 and 2018. *Id.* ¶ 262. As with the brand-name Zantac manufacturers, the generic manufacturers named in the AMPIC manufactured or sold their formulations at different times. *Id.* ¶¶ 262, 272. The five-page, seven-column table describing the history of ANDA approvals

---

[1] Generic medication companies seeking to market copies of previously approved medications may file an Abbreviated New Drug Application ("ANDA"). *See* 21 U.S.C. § 355(j)(2)(A). Generic manufacturers cannot alter generic medications' labeling or design without prior FDA approval. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 618 (2011). Likewise, Retailer and Distributor Defendants that do not hold a New Drug Application ("NDA") or ANDA have no power to alter any aspect of the medication. *See Smith v. Teva Pharm. USA, Inc.*, 437 F. Supp. 3d 1159, 1165 (S.D. Fla. 2020).

demonstrates the differences among the generic manufacturers; for example, many generic Defendants sold only prescription or only OTC generic medications, and the dosage form and route of administration for the generic medications varied widely. *Id.* ¶ 262. The AMPIC implausibly treats the generic manufacturers as interchangeable with each other and Defendants anywhere else in the supply chain, and does not acknowledge the transfer or discontinuation history of certain of the listed ANDAs.

Plaintiffs also name (1) six "distributor" Defendants that allegedly purchased unspecified ranitidine products, *id.* ¶¶ 155–67, and (2) thirty "retailer" Defendants that allegedly marketed, handled, distributed, stored, and sold ranitidine products, *id.* ¶¶ 155–219. The AMPIC provides no detail or factual allegations as to what ranitidine products these Defendants purchased, distributed, or sold. Nor do Plaintiffs say when or where these Defendants did what they allegedly did, or under what circumstances. Plaintiffs offer no allegations as to how these Defendants acquired their alleged "knowledge" about the otherwise unidentified products they allegedly sold. In many instances, nothing is alleged about a particular Defendant other than its state of incorporation and principal place of business. *Id.*

The AMPIC's allegations about individual Plaintiffs' injuries are equally unhelpful. Plaintiffs allege generally that they have been "diagnosed with various cancers and their sequelae." *Id.* ¶ 20. And while individual Plaintiffs' short-form complaints add some information about medication use and diagnosis, *see* AMPIC Ex. A, they do not even attempt to clarify which Defendant engaged in what conduct. Nor do they require each Plaintiff to specify the Defendants whose ranitidine products they believe they used. Some short-form complaints name every or almost every Defendant, *e.g.*, Dkt. No. 3036, regardless of whether those Plaintiffs actually have a good-faith belief that they used a particular Defendant's ranitidine product—and even where the

dates of use and types of use are plainly incompatible with many of the Defendants' product histories. The unwieldy and implausible nature of the AMPIC fuels Plaintiffs' ability to file these deficient short-form complaints.

**ARGUMENT AND CITATION OF AUTHORITY**

## I.     The AMPIC Remains an Improper Shotgun Pleading.

This Court dismissed the original MPIC as an improper shotgun pleading, but Plaintiffs have not cured many of the flaws that led to its dismissal. The Court held that the MPIC improperly "lump[ed]" the "Defendants together" without a sufficient "factual basis to distinguish their conduct." *Id*. at 19 (internal quotation marks omitted). The MPIC "lump[ed]" Defendants "across entire groups (*e.g.*, Retailers grouped with Distributors, Brands grouped with Repackagers)," even though each group "conduct[ed] fundamentally different activities than others, such that grouping them together throughout the MPIC might create confusion." *Id.* This shotgun pleading, the Court concluded, "led to allegations that the Court has had difficulty understanding with sufficient clarity." *Id.*

The AMPIC repeats this "sin" of shotgun pleading. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). Like the MPIC, the AMPIC combines distinct groups of Defendants without sufficiently distinguishing each individual Defendant's alleged conduct. Plaintiffs' decision to lump so many distinct parties together denies Defendants adequate notice of Plaintiffs' claims under Rule 8 and falls far short of Rule 9's requirement that Plaintiffs plead their fraud-based claims with particularity. Plaintiffs' shotgun pleading repeats the MPIC's "inconsistencies," Dkt. No. 2515 at 19, seeking to hold entire groups of Defendants liable for alleged conduct they could not possibly have committed. The AMPIC's failure to cure the shotgun-pleading problems is all the more striking given that it was drafted with the benefit of the substantial discovery that has taken place to date. Notwithstanding millions of pages of documents

5

produced, Plaintiffs refused to sufficiently distinguish between Defendants and put them on notice of which purportedly wrongful conduct is plausibly attributable to them. As with the MPIC, therefore, the AMPIC should be stricken or dismissed.

> **A.      The AMPIC Violates Rule 8 by Lumping Defendants Together.**

As this Court held when dismissing the MPIC, group pleading "does not satisfy Rule 8." Dkt. No. 2515 at 19 (citing *Lane v. Cap. Acquisitions & Mgmt. Co.*, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006)); *see also Chiron Recovery Ctr., LLC v. United Healthcare Servs., Inc.*, 2020 WL 3547047, at *5 (S.D. Fla. June 30, 2020) (Rosenberg, J.); *Fox v. Loews Corp.*, 309 F. Supp. 3d 1241, 1249 (S.D. Fla. 2018) ("When a complaint indiscriminately lumps all defendants together, it fails to comply with Rule 8."); *Piguet v. JP Morgan Chase Bank*, 2014 WL 11350229, at *2 (S.D. Fla. Apr. 29, 2014) (same); *Petrovic v. Princess Cruise Lines, Ltd.*, 2012 WL 3026368, at *3 (S.D. Fla. July 20, 2012) ("[A] complaint that 'lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct' fails to satisfy Rule 8."). Despite this Court's clear directives, the AMPIC once again violates Rule 8 by not adequately distinguishing the conduct of each individual Defendant.

Like the MPIC, the majority of the AMPIC's counts lump Brand-Name and Generic Manufacturer Defendants together. Others lump together "All Defendants" (Counts XIV, XV, XVI, and XVII), all the Brand-Name Manufacturer Defendants (Counts I, II, VI, XII, and XIII), or all Retailer and Distributor Defendants (Count X). None of these counts distinguishes any individual Defendant from any other individual Defendant. But the groups of Defendants that the AMPIC lumps together "conduct[ed] fundamentally different activities." Dkt. No. 2515 at 19. Even within each group, individual Defendants did not act uniformly when manufacturing, marketing, or selling ranitidine products. The AMPIC, like the MPIC, improperly erases these obvious and material differences between both individual Defendants and categories of

Defendants.

The AMPIC's shotgun nature is evident from its first paragraph, which asserts claims based on all Defendants' "design, testing, marketing, labeling, packaging, handling, distribution, storage and sale of brand-name and generic ranitidine-containing products," without acknowledging that no two Defendants conducted these activities in the same way, and some Defendants did not conduct many of those activities at all.[2] For example, the vast majority of Defendants did not design ranitidine products. *See* AMPIC ¶¶ 237–39 (alleging only GSK "develop[ed] ranitidine"). Generic manufacturers largely did not choose their labels or market their ranitidine products. *Id.* ¶ 436. Retailers did not test, label, or package ranitidine products. *Id.* ¶ 168. Distributors did not test, market, or label ranitidine products, nor sell those products to consumers. *Id.* ¶ 155. And the manufacturers carried out their different activities at different times. *Id.* ¶¶ 259, 262, 272.

Because of these differences, Plaintiffs' group pleading makes it nearly impossible to discern how Plaintiffs allege any individual Defendant theoretically gained knowledge of ranitidine's alleged safety risks. For example, Plaintiffs generally allege that all 100+ Defendants "knew or should have known" about various risks related to ranitidine. *E.g.*, AMPIC ¶¶ 272, 939, 2219. In support of their request for punitive damages, Plaintiffs go even further and allege that *literally all* "Defendants were fully aware of the safety risks of ranitidine" and "deliberately crafted

---

[2] Perhaps one of the more glaring examples of Plaintiffs' shotgun pleading strategy in the AMPIC is in reference to Brand Defendant Patheon Manufacturing Services LLC ("Patheon"). Even after the Court granted a motion to dismiss based on improper shotgun pleading, the AMPIC mentions Patheon only twice. First, Plaintiffs identify Patheon as a defendant, AMPIC ¶ 36, and then state that Patheon will be "collectively" referred to as "Sanofi," *id.* ¶ 39. The AMPIC's only other reference to Patheon is in the factual background section, where Plaintiffs allege that Patheon manufactured OTC Zantac for Sanofi. *Id.* ¶ 255. Aside from those two references, there is not a single allegation directed specifically towards Patheon in the entire AMPIC. As a consequence, Patheon is left to guess which allegations made against Sanofi might pertain to it, a completely untenable position prohibited by Rule 8. The claims against Patheon should be dismissed.

their label and marketing to mislead consumers."[3] *Id.* ¶ 473. But different Defendants entered the ranitidine supply chain at different times and played fundamentally different roles. And Plaintiffs do not specify which Defendants knew (or even could have known) what information at any particular time or how they could have acquired that information. For instance, Pfizer stopped marketing Zantac in 2006, *id.*, but the AMPIC alleges that it should have responded to studies published between 2009 and 2020, *e.g.*, *id.* ¶¶ 403–04. This makes it impossible for individual Defendants to know which specific studies they should address in their answers to the AMPIC.[4]

As for Generic Manufacturer Defendants, Plaintiffs merely guess (upon information and belief) that each one "began researching Ranitidine-Containing Products at least one year prior to the date they commenced selling the product and therefore knew or should have known of all risks . . . from that date onward." *Id.* ¶ 272. But Plaintiffs allege no actual *facts* to support that vague speculation with respect to *any* Generic Manufacturer. *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (holding "upon information and belief" allegations insufficient under *Twombly* where there were no corresponding facts to support them). In addition, as with the Brand-Name Manufacturers, Plaintiffs allege that the Generic Manufacturer Defendants should have responded to information published outside of the timeframes in which they allegedly sold their products. Plaintiffs allege that those Defendants "knew or should have known of all risks" disclosed after "one year prior to the date they commenced selling" ranitidine products, even though many generic

---

[3] This allegation even includes Defendants, like the Retailer and Distributor Defendants, that did not create any labels or conduct any marketing.

[4] Plaintiffs largely do not even attempt to explain how specific Defendants had knowledge of specific studies. To the extent the AMPIC does allege knowledge of specific studies, however, its allegations confirm the implausibility of Plaintiffs' theory. For example, Plaintiffs allege that *all* Manufacturer Defendants somehow should have known about the alleged "inadequacy" of a study that *they did not perform*. AMPIC ¶ 408.

manufacturers had *stopped* selling ranitidine products before some of the studies Plaintiffs cite were published. AMPIC ¶ 272.

These allegations defy both logic and "temporal realit[y]." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). Despite the AMPIC's allegations about the various studies that supposedly revealed links between ranitidine, NDMA, and cancer, Plaintiffs never allege specific Defendants' knowledge of any specific study for the vast majority of Defendants, instead alleging knowledge generally for "all" members of various Defendant groups. For these reasons, Plaintiffs cannot avoid dismissal simply by claiming that they are asserting claims against Defendants "as to the time during which each sold ranitidine." *E.g.*, AMPIC ¶ 271. That shortcut does nothing to explain how any individual Defendant allegedly gained knowledge of ranitidine's alleged risks during the relevant time period. Plaintiffs' threadbare allegations are especially implausible because they lump so many Defendants together.

The fact that different Defendants entered and left the market at different times also means they did not share the same legal duties. Many courts have held that a former NDA holder may not be held liable for products liability or common-law negligence claims arising after transfer or withdrawal of the NDA because it no longer had the power to change the medication's label. *See, e.g.*, *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 940 (6th Cir. 2014) (failure to warn claim preempted against former NDA holder that no longer had power to make label changes). Similarly, courts have held that a company that did not hold the NDA or ANDA for the product at issue during the relevant time period may not be held liable for products liability or negligence claims. *Smith v. Teva Pharm. USA, Inc.*, 437 F. Supp. 3d 1159, 1165–66 (S.D. Fla. 2020) (dismissing as preempted claims against defendant that never held the NDA for the drug, even though its corporate affiliates did hold the NDA and it distributed the product,

because defendant lacked power to change the label); *Greager v. McNeil-PPC, Inc.*, 414 F. Supp. 3d 1137, 1143 (N.D. Ill. 2019) (dismissing as preempted claims against retailer defendant that never held ANDA for over-the-counter generic drug sold to plaintiff's family and taken by plaintiff). Courts also regularly hold that claims premised on evidence pre-dating approval of an NDA are not viable because manufacturers cannot unilaterally change a medication's initial label. *See, e.g.*, *Utts v. Bristol-Myers Squibb Co.*, 226 F. Supp. 3d 166, 179 (S.D.N.Y. 2016) ("[F]ederal law preempts *all pre-FDA approval* failure to warn and design defect claims for branded prescription medication." (emphasis added)), *aff'd Gibbons*, 919 F.3d 699; *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, 185 F. Supp. 3d 761, 769–70 (D.S.C. 2016) ("To the extent that Plaintiffs claim Lipitor's label should have included different statements about Lipitor's efficacy for primary prevention based on the ASCOT [pre-approval] data . . . those claims are preempted."). In pleading these claims uniformly against all Manufacturer Defendants, Plaintiffs necessarily seek to hold manufacturers categorically liable for acts and omissions that allegedly occurred before or after their involvement with ranitidine. This is precisely the kind of improper tactic the shotgun pleading doctrine was intended to prevent.

The problems of shotgun pleading are equally pronounced for the Generic Manufacturer Defendants. For example, the AMPIC names 42 different generic manufacturers that it alleges hold ANDA approvals for ranitidine products. But the AMPIC does not mention the date each Defendant acquired the ANDA, the date it transferred or withdrew the ANDA, or whether each ANDA was ever transferred from one manufacturer to another. AMPIC ¶ 262. This basic information is not even acknowledged for the generics, even though transfers are at least as common in the generic industry. To make matters worse, the AMPIC does not acknowledge that (1) some ANDAs were never used to manufacture product, (2) many of the ANDAs were owned

by other entities at points in time since their first approval, and (3) some of the ANDAs were no longer being used to manufacture ranitidine at the time of the 2019–2020 events alleged in the AMPIC—all information that has been provided to Plaintiffs in discovery. Even the AMPIC's allegations about when generic manufacturers sold their products do not provide this essential information. *Id*. ¶ 272. It is thus not possible to determine which Plaintiffs allegedly used and were injured by a particular ranitidine product, or which Defendant is purportedly liable.

Because of these and similar pleading deficiencies, Defendants "cannot determine from the face of the Complaint [for] which acts or omissions the Plaintiffs seek to hold each of them liable." *Lane*, 2006 WL 4590705, at \*5.

### B.   The AMPIC Violates Rule 9(b) by Lumping Defendants Together.

Plaintiffs' improper shotgun pleading also dooms their fraud-based claims, which are subject to the heightened pleading standard of Rule 9(b). Plaintiffs rely on assertions of fraud for (at a minimum) their misrepresentation claims and their allegations related to tolling by fraudulent concealment. AMPIC ¶¶ 471–72, 2684–92, 2709–21. Those claims, therefore, must satisfy Rule 9(b)'s heightened standard. *See, e.g.*, *Kelley v. Rambus, Inc.*, 384 F. App'x 570, 573 (9th Cir. 2010) (dismissing California negligent misrepresentation claim under Rule 9(b)); *Jackson v. Fischer*, 2013 WL 6732872, at \*17 (N.D. Cal. Dec. 20, 2013) (recognizing "majority view" that Rule 9(b) "applies to a claim for negligent misrepresentation under California law"); *Ascente Bus. Consulting, LLC v. DR MyCommerce*, 2019 WL 1513896, at \*3 (D. Minn. Apr. 8, 2019) (applying Rule 9(b) to reckless misrepresentation claim); *Greene v. Bank of Am., N.A.*, 2014 WL 11497812, at \*7 (D.N.M. Jan. 15, 2014) (same); *Fisher v. Harley-Davidson Motor Grp., LLC*, 2019 WL 8014364, at \*2 (S.D. Fla. Oct. 18, 2019) (Rosenberg, J.) ("[F]raudulent concealment must be pled with particularity under [Rule] 9(b)."). And to satisfy Rule 9(b), Plaintiffs must plead for each Defendant "(1) precisely what statements were made in what documents or oral representations or

what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (internal quotation marks and citation omitted); *see also Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1381 (11th Cir. 1997) (dismissing complaint under Rule 9(b) where plaintiffs did not specify each defendant's fraudulent acts).

Plaintiffs' fraud-based claims fall far short of this standard. Plaintiffs generally allege that Defendants made false representations "via the media, advertising, website, social media, packaging, and promotions, among other misrepresentations." AMPIC ¶¶ 2684, 2709. But Plaintiffs do not identify the specific statements, advertisements, websites, social media posts, packages, or promotions through which any specific Defendant made any alleged misrepresentation. Nor does the AMPIC describe with particularity any individual misrepresentation or omission by any specific Defendant, much less identify "the time and place" of those statements or who made each statement. *Clausen*, 290 F.3d at 1310. Under Rule 9(b), each individual Defendant is entitled to understand which specific representations constitute the claimed fraud, who made the alleged statement or omission, when it was made, and to whom. Because the AMPIC lacks all of these critical facts—despite the voluminous discovery Plaintiffs have received—its fraud-based claims and allegations must be dismissed.

## II.     Numerous Counts Asserted in the AMPIC Also Fail to State a Claim.

Even if the AMPIC were not a shotgun pleading (and it is), numerous counts would nonetheless fail to state a claim. In order to state a claim, the AMPIC must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The AMPIC falls far short of satisfying these pleading requirements. Many of its claims are unavailable under the various state laws asserted. And even some claims that are theoretically available are not plausibly pleaded, because the AMPIC is rife with conclusory assertions and non-specific factual allegations. Counts III, IV, V, VII, VIII, IX, X, XI, and XIV should be dismissed for these reasons.

### A.    Certain AMPIC Counts Fail to State a Viable Claim Due to Factual Inconsistencies Within Each Count.

The Court has held that while "[p]leading in the alternative is permissible . . . a party may not plead internally inconsistent facts within a count." Dkt. No. 2512 at 34–35. Several counts in the AMPIC contain internally inconsistent facts and, accordingly, must be dismissed.

*First*, in their counts calling for shorter expiration dates, Plaintiffs also allege that NDMA forms in ranitidine "as the drug breaks down in the human digestive system and interacts with various enzymes in the human body[,]" AMPIC  ¶¶ 935, 1150, 1737, that "NDMA is a potent carcinogen in humans," *id.* ¶¶ 936, 1151, 1738, and (via incorporation) that "[b]ased on prevailing scientific evidence, exposure to NDMA caused by *consuming* Defendants' ranitidine-containing products causes cancer in humans," *id.* ¶ 459 (emphasis added). These allegations are fundamentally inconsistent. *See* Dkt. No. 2512 at 34 ("Plaintiffs' allegations that expiration dates for ranitidine products should have been shortened because the products became dangerous over time are inconsistent with their allegations that the products were dangerous upon being manufactured.").

*Second*, Plaintiffs' claims for Negligent Product Containers (Count XI), Negligent Storage and Transportation as to Retailer and Distributor Defendants (Count X), and Negligent Storage and Transportation as to Manufacturer Defendants (Count XI) assert that Defendants could have

met a state-law duty of reasonable care to "ensure the [ranitidine] products were not unreasonably dangerous to consumers and users" by changing either container design or storage and transportation practices. *See, e.g.*, AMPIC ¶¶ 2218, 2453. But these counts also allege (via incorporation) that "[b]ased on prevailing scientific evidence, exposure to NDMA caused by consuming Defendants' ranitidine-containing products causes cancer in humans." *Id.* ¶¶ 459, 1986, 2208, 2435. As such, they are internally inconsistent; per Plaintiffs' own incorporated facts, the container and/or storage and transportation practices at issue in these counts would be insufficient to meet the state-law duty.

**B.      Plaintiffs Plead No Facts Showing that Defendants Were on Notice that Ranitidine Would Degrade to Form NDMA.**

Plaintiffs assert four different claims grounded in their theory that ranitidine "internally degrades to form NDMA," and that those NDMA levels "increase over time and under normal storage conditions, but more so with respect to heat or humidity." *See, e.g.*, AMPIC ¶¶ 935, 937 (Count III); *id*. ¶¶ 1150, 1152 (Count IV); *id*. ¶¶ 1737, 1739 (Count VII); *id*. ¶ 1990 (Count IX). In the relevant counts, Plaintiffs claim that Manufacturer Defendants either failed to provide expiration dates that properly accounted for degradation, *see* Counts III, IV, and VII, or that Manufacturer Defendants failed to utilize container designs that would minimize degradation to form NDMA, *see* Count IX. None of those claims meets federal pleading standards. Although Plaintiffs have obtained millions of pages of discovery from various Defendants to date, Plaintiffs' allegations with respect to degradation are "mere conclusory statements" or facts that "do not permit th[is] [C]ourt to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678. This Court should, therefore, dismiss Counts III, IV, VII, and IX because Plaintiffs have not provided a "statement of the claim showing [their] entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2).

      1.      **Plaintiffs' Claims for Failure to Warn Through Proper Expiration Dates (Counts III and IV) Are Not Properly Pleaded.**

Plaintiffs' failure to warn through expiration date claims, contained in Counts III and IV, allege that Defendants are liable for failing to shorten the medication's expiration date to prevent "accumulation of more and more unsafe levels of NDMA." AMPIC ¶¶ 938, 1153. Count IV sounds in negligence and Count III sounds in strict liability. AMPIC at pp. 197, 238. However couched, a fundamental prerequisite to liability for failure to warn is "notice" of the allegedly undisclosed danger.

To plead their negligence claim, Plaintiffs must accordingly allege that Defendants failed to warn of the risk of degradation for reasons that fell below the standard of care, *i.e.*, that the risk is one a reasonably prudent manufacturer would have known (or had reason to know) and warned about. *See* Restatement (Second) of Torts § 388 (negligent failure to warn attaches when the supplier of a good "*knows or has reason to know* that the chattel is or is likely to be dangerous for the use for which it is supplied") (emphasis added); *see also Torkie-Tork v. Wyeth*, 757 F. Supp. 2d 567, 573 (E.D. Va. 2010); *Porpora v. Louisville Ladder, Inc.*, 2006 WL 8431483 at \*4 (S.D. Fla. June 16, 2006); *Carlin v. Super. Ct.*, 920 P.2d 1347, 1351 (Cal. 1996). To plead a cognizable claim for strict liability, Plaintiffs must allege that Defendants did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution. *See* Restatement (Third) of Torts § 2(c) ("[a] product . . . is defective because of inadequate instructions or warnings when *the foreseeable risks of harm* posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor") (emphasis added); *see also Marzullo v. Crosman Corp.*, 289 F. Supp. 2d 1337, 1347 (M.D. Fla.

2003). Whatever the specific standard, Plaintiffs fail to plausibly allege notice because they allege virtually *nothing* that could put Defendants on notice of potential degradation of ranitidine.

First, Plaintiffs have not plausibly alleged that Defendants *knew* about the alleged risk of degradation to form NDMA due to time, heat, or humidity. Only one allegation of the thousands in the AMPIC purports to demonstrate knowledge about degradation that predates this lawsuit. Specifically, Plaintiffs allege that "[e]arly studies, including one conducted by GSK in the early 1980s, demonstrated that nitrosamines were formed when ranitidine was exposed to heat." AMPIC ¶ 385. Plaintiffs' vague reference to "early studies," which is not clarified in the AMPIC, does not satisfy Rule 8; rather, it is just the sort of conclusory allegation not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 681 (rejecting as conclusory allegations "that Ashcroft was the 'principal architect' of th[e] invidious policy" of discrimination).

Nor is Plaintiffs' passing reference to an unidentified GSK study sufficient. That unsupported allegation, albeit nominally factual, does not plausibly suggest a known risk of degradation because the study allegedly demonstrated the formation of nitrosamines generally, *not* NDMA specifically. AMPIC ¶ 385; *see Iqbal*, 556 U.S. at 678 (noting that an allegation "'merely consistent with' a defendant's liability, . . . 'stops short of the line between possibility and plausibility.'"). In addition, the allegation is opaque regarding the conditions under which nitrosamines allegedly form, or whether those conditions have any relevance to actual use. For example, the allegation refers only generally to "heat"—but does not assert that this nameless study observed degradation of ranitidine during routine shipping and handling conditions, which is Plaintiffs' theory of liability. And even if Plaintiffs' single paragraph *did* plausibly allege a link to NDMA formation (and it does not), Plaintiffs do not allege that this unidentified study was public or that the information was otherwise provided to any Defendant besides GSK, and

therefore it cannot support a claim against any other Defendant. Thus, Plaintiffs have not alleged sufficient facts to support a plausible claim that Defendants knew of the risk of degradation.

Nor have Plaintiffs pleaded sufficient facts to demonstrate that Defendants *should have known* about the alleged degradation risk, whether one considers what a reasonable manufacturer knew or had reason to know (negligence) or what was knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution (strict liability). Although Counts III and IV both incorporate the factual allegations in Section VI of the AMPIC, entitled "Manufacturer Defendants Knew or Should Have Known of the NDMA Risk," *none* of the allegations in that section relate to degradation into NDMA due to time, heat, or humidity; rather, that section concerns the alleged endogenous formation of NDMA in the stomach, an entirely different mechanism of action. The only other incorporated allegations that could relate to degradation concern the very recent testing done by Valisure, AMPIC ¶¶ 385–86, Emery, *id.* ¶¶ 387–89, FDA, *id.* ¶ 390, and Defendants themselves, *id.* ¶¶ 393–95. Importantly, in *none* of these allegations do Plaintiffs plead that the testing done by the online pharmacies—or by the FDA and Defendants in response—reflects what was knowable in light of the generally recognized and prevailing best scientific and medical knowledge and practice *at the time of manufacture*, which for many Defendants was decades earlier.[5] As such, the claims are not plausible even under the higher strict liability standard. *See Witt v. Howmedica Osteonics Corp.*, 2013 WL 6858395, at *3 (S.D. Fla. Dec. 30, 2013)

---

[5] Plaintiffs' allegation in the expiration date counts that "simple, widely available and cost-effective tests" would have revealed the presence of NDMA does nothing to cure the defect because Plaintiffs say nothing about *when* those tests became available or *whether* they represented the best prevailing scientific and medical knowledge. *See* AMPIC ¶¶ 939, 1154, 1741. And without reason to suspect that there was a risk of internal degradation into NDMA over time, or due to excessive heat or humidity, Manufacturer Defendants had no reason to conduct such tests.

(dismissing strict liability failure to warn claim for failure to plead supporting facts); *Witt v. Stryker Corp. of Mich.*, 648 F. App'x 867, 871 (11th Cir. 2016) (same); *see also McGrath v. Bayer HealthCare Pharm. Inc.*, 393 F. Supp. 3d 161, 172 (E.D.N.Y. 2019) (same).

### 2.    Plaintiffs Fail to Plead Sufficient Facts to Support a Claim of Design Defect Through Improper Expiration Dates (Count VII).

In Count VII, Plaintiffs assert a strict liability design defect claim based on Defendants' alleged failure to shorten the medication's expiration date. For strict liability claims, state laws generally fall into two camps: those that follow the "risk-utility" test set out in the Third Restatement[6] and those that follow the "consumer expectations" test embraced by the Second Restatement.[7] Plaintiffs do not state a claim under either test.

Most states have implemented some version of the risk-utility test in the Restatement (Third) of Torts § 2(b), under which a product is not defectively designed unless "the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller . . . and the omission of the alternative design renders the product not reasonably safe." The commentary is explicit that "plaintiff should bear the burden of establishing that the risk in question was known or should have been known to the relevant manufacturing community," *id.*, but Plaintiffs have not pleaded that the risk of ranitidine degrading to form NDMA "over time and under normal storage conditions, but more so with respect to heat or humidity" was reasonably foreseeable, AMPIC ¶ 1737. As discussed above, Plaintiffs have not

---

[6] The Third Restatement states include, for example, Colorado, Georgia, Michigan, New York, South Carolina, and Texas.

[7] The Second Restatement states include, for example, Connecticut, Florida, Kansas, Nevada, and Wisconsin. Defendants note that, because Plaintiffs' claims are not sufficient under either the Second or Third Restatement tests, they will similarly fail under the laws of those states—like Pennsylvania—that take a hybrid approach and allow a plaintiff to utilize either theory.

adequately pleaded either that Defendants knew or that Defendants should have known of the risk of NDMA formation through degradation.

Additionally, the risk-utility test requires Plaintiffs to plead that there exists a reasonable alternative design and that its omission "render[ed] the product not reasonably safe." Restatement (Third) of Torts § 2(b). Plaintiffs' only allegations on this element are unacceptably vague. Plaintiffs allege that "ranitidine-containing products had expiration dating periods of one or two years, allowing gradual accumulation of more and more NDMA." AMPIC ¶ 1740. In support of Count VII, Plaintiffs plead that "[a] much shorter period of a matter of months would have ensured that ranitidine contained far lower levels of NDMA when consumed." *Id.* But, tellingly, Plaintiffs do not allege that the "lower levels" of NDMA that would have formed over "a matter of months" would in fact be "reasonably safe," or below the threshold level for NDMA exposure set by FDA. In fact, Plaintiffs do not allege that there is *any* expiration date for ranitidine products at which the products would be reasonably safe for consumer use. They thus have not proposed a reasonable alternative design, and fail to state a claim. *See* Restatement (Third) of Torts § 2(b); *see also, e.g.*, *Branham v. Ford Motor Co.*, 701 S.E.2d 5, 16 (S.C. 2010) (noting that "in a product liability design defect action . . . [t]he plaintiff will be required to point to a design flaw in the product and show how his alternative design would have prevented the product from being unreasonably dangerous").

States that have not adopted the Third Restatement approach will generally follow the consumer expectations test set out in the Restatement (Second) of Torts § 402A. That test "considers whether a product is unreasonably dangerous in design because it failed to perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner." Restatement (Second) of Torts § 402A; *see also Crawford v. ITW Food Equip. Grp.*,

*LLC*, 977 F.3d 1331, 1334 (11th Cir. 2020) (applying the consumer expectations test). Plaintiffs have not adequately pleaded causation as to states that follow this approach. Plaintiffs' allegation that the "lack of adequate warnings and instructions accompanying their ranitidine-containing products were a substantial factor in causing Plaintiffs' injuries," AMPIC ¶ 1763, is nothing more than a "threadbare recital[] of the elements of [the] cause of action," *see Iqbal*, 556 U.S. at 678. Notably, Plaintiffs do not allege that a shorter expiry period of "a matter of months," AMPIC ¶ 1740, would cause the product to "perform as safely as an ordinary consumer would expect" as opposed to the labeled expiration date. Indeed, Plaintiffs do not even allege that they ingested ranitidine at some point *between* (i) their preferred "matter of months" expiration date and (ii) the "one or two years" expiration date. *Id*. Thus, Plaintiffs offer no factual allegations to support the proposition that the incremental NDMA formation that allegedly occurred after Plaintiffs' preferred (unspecified) expiration date caused their injuries, whereas any NDMA levels that existed before that date would not have caused injuries.

### 3.    Plaintiffs Fail to Plead Sufficient Facts to Support a Negligent Container Claim (Count IX).

The crux of Count IX is that, had Defendants been reasonably prudent, they "would have changed the containers for the ranitidine-containing products to protect the products from humidity and reduce the time between manufacture and consumption, both of which would reduce the amount of NDMA produced." *Id*. ¶ 1994. As explained above, Plaintiffs have not adequately pleaded that the risk of degradation into NDMA was reasonably foreseeable.[8] As a result, Count

---

[8] In Count IX, Plaintiffs assert that "Defendants knew that ranitidine had an inherent risk of degrading into NDMA because it has both a nitroso (N) and dimethylamine (DMA), which are all the ingredients needed to form NDMA." AMPIC ¶ 1989. That allegation is, quite plainly, conclusory; Plaintiffs provide no explanation within Count IX or any of its incorporated allegations as to why the molecular structure of ranitidine would be sufficient to provide notice of a risk of degradation occurring outside the stomach. Thus, the new allegation cannot save Count IX.

IX should be dismissed.

**C.** **The AMPIC Fails to State a Claim for Negligent Storage and Transportation (Counts X and XI).**[9]

In Counts X and XI, instead of alleging facts that put Defendants on notice of who did what to harm whom, Plaintiffs allege an industry-wide failure to ensure that ranitidine was never overheated while stored or transported—anywhere in the country over several decades. Such sweeping allegations without factual support do not satisfy Rule 8, under which a plaintiff must plausibly allege that a specific defendant harmed a specific plaintiff before the claim can proceed. "A plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 803 F.3d 565, 568 (11th Cir. 2015) (internal citation omitted).

Here, Plaintiffs must plead facts to show which Defendant, if any, improperly stored and transported its ranitidine products, under what circumstances, and who was harmed. The Court has told Plaintiffs what they must do to cure their shotgun pleading, and—despite significant pre-amendment discovery on storage and transportation—they have not done it. *Weiland*, 792 F.3d at 1323. Because these claims run afoul of the Eleventh Circuit's shotgun-pleading prohibition and fail to pass muster under *Twombly/Iqbal*, the storage and transportation claims should be dismissed. *See Jackson*, 898 F.3d at 1358.

**1.** **The Court Permitted Plaintiffs to Plead a "Heating" Theory of Liability, but Only if Plaintiffs Addressed the Court's Concerns with That Theory.**

Finding almost every negligence claim in the three original master complaints preempted as to the Retailer/Pharmacy, Distributor, and Generic Manufacturer Defendants, the Court wrote

---

[9] This section makes arguments applicable to all Defendants related to Counts X and XI. For additional Distributor Defendant-specific arguments, see Distributors' Motion to Dismiss for Failure to State a Claim.

(in its preemption opinion for the Retailer, Pharmacy, and Distributor Defendants) that it "will permit the Plaintiffs to re-plead a general negligence claim, subject to certain rulings contained in this Order." Dkt. No. 2513 at 9. The Court detailed its concerns if Plaintiffs, in amended complaints, pursued "the 'heating' theory—that the Defendants should be held liable for storing ranitidine at an elevated temperature prohibited by *both* federal law and state law." *See id*. at 35–39; *see also* Dkt. No. 2512 at 40–41. In language equally applicable to all Defendant groups, the Court began its analysis by instructing Plaintiffs that any amendment to pursue the heating claim should "address the Court's concerns" and concluded its analysis by advising Plaintiffs to be "responsive to the Court's concerns." Dkt. No. 2513 at 35, 39.

The Court's concerns were substantial. Noting its "serious reservations as to whether the Plaintiffs can plead that the Defendants had a global policy or practice to" store ranitidine at excessive temperatures, the Court asked, "Can the Plaintiffs plead in good faith that any Defendant had a *policy* to store ranitidine products at temperatures above those approved by the FDA?" *Id.* at 36. Then, invoking a hypothetical example of a "rogue truck overheating ranitidine in a desert," the Court asked, if "*individual* stores negligently stored ranitidine at unsafe, heated temperatures, how is that a global, MDL-based issue?" *Id.* And, after asking if related causation questions were appropriate for an MDL, it asked, "how is a high-temperature allegation consistent with the Plaintiffs' core theory of the case?" *Id.* at 37.

### 2. The AMPIC Fails to Address the Court's Concerns or Provide Proper Notice to Defendants.

Although the AMPIC now contains two counts alleging negligent storage and transportation of ranitidine, one against Retailer/Pharmacy Defendants and Distributor Defendants, and another against Generic Manufacturer and Brand-Name Defendants, the AMPIC again violates the rule against shotgun pleading and fails to give the required notice under Rule 8.

Fundamentally, the allegations regarding storage and transportation of products fail to disclose who allegedly did what to whom. Instead, they generally plead that exposing ranitidine to excess heat and humidity is one of several mechanisms that can generate NDMA, and then conclude generally that all Defendants somehow failed to ensure that ranitidine never overheated and was never stored or transported in humid conditions. That is not sufficient notice pleading. *See Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (finding error in denial of motion to dismiss when plaintiff "merely recited an element of a claim without providing the facts from which one could draw such a conclusion").

Instead of presenting necessary factual allegations to put Defendants on notice, the AMPIC's storage and transportation allegations try to flip Plaintiffs' burden. In Count X (against Retailer and Distributor Defendants) and Count XI (against Brand-Name and Generic Manufacturer Defendants), Plaintiffs conclude that excessive NDMA formed because the respective groups of Defendants allegedly either "systematically exposed ranitidine" or "systematically caused Ranitidine-Containing Products to be exposed to" what the AMPIC calls "excessive levels of heat and/or humidity." AMPIC ¶¶ 2214, 2447. Plaintiffs now base their claims on unspecified and hypothetical "widespread noncompliance" with the instructions for storage of ranitidine appearing on product labels. Plaintiffs allege that Retailer and Distributor Defendants "failed to implement rigorous policies to ensure substantial compliance with the heat and humidity requirements on product labels," causing "widespread noncompliance," and "did not ensure ranitidine-containing products were stored at low humidity or within the temperature range on the label." *Id.* ¶¶ 2215, 2220. Similarly, Plaintiffs allege that the Manufacturer Defendants "failed to ensure that their finished Ranitidine-Containing Products were stored and transported safely and were not exposed to excessive heat and humidity" and "failed to implement rigorous policies to

ensure substantial compliance with the heat and/or humidity requirements in product labels," causing "widespread noncompliance." *Id.* ¶¶ 2247, 2249. But Plaintiffs allege no facts to support these claims.

This is the same shotgun pleading problem that the Court ordered Plaintiffs to avoid. A year into this litigation, Defendants have produced a large number of documents to Plaintiffs— including their storage and transportation policies and related documents. Yet, Plaintiffs still have no specific allegations as to *how* any Defendant's policies fell short. Nor do Plaintiffs have any specific allegations linking any individual Defendant's purportedly negligent practices to any shipments of ranitidine or any Plaintiff's harm. Most significantly, despite asserting "widespread noncompliance," Plaintiffs do not allege any specific examples of noncompliance to support those naked conclusions. In both counts, Plaintiffs observe that some ranitidine is sent through the U.S. Mail, which they speculate does not guarantee temperature and humidity control. *Id.* ¶¶ 2216, 2450. But they do not identify a single mail delivery, let alone allege that any such delivery was damaged under their theory. Nor do Plaintiffs ever identify, for example, a hot delivery truck stuck in the desert (or anywhere else) with a ranitidine shipment from or to a specific Defendant. Instead, Plaintiffs offer only their bare conclusion that all Plaintiffs have purportedly been injured by all Defendants' "failure to store and transport ranitidine-containing products properly." *Id.* ¶¶ 2224, 2459. *Twombly* and *Iqbal* reject such conclusory pleading.

Instead of alleging facts that put Defendants on notice of who did what to harm whom, Plaintiffs broadly allege an industry-wide failure to *ensure* that ranitidine was *never* overheated while stored or transported anywhere in the country. Plaintiffs take this path because they cannot plausibly allege that each individual Defendant *always* stored and/or transported ranitidine in a manner that led to excessive levels of heat and/or humidity. But Plaintiffs cannot sidestep Rule 8's

individualized pleading requirements by claiming in a conclusory fashion that there were "systemic," industry-wide failings without also pleading specific *facts*. Imagine hypothetical personal injury plaintiffs alleging that, over the last thirty years, all producers, distributors, and sellers of milk and poultry systematically exposed their products to excessive heat while storing and transporting them because they "did not ensure" that the milk and poultry were always properly refrigerated. The claim would be promptly dismissed with instructions to either identify who did what to harm whom or face dismissal with prejudice. The same principles apply here.

The Court has told Plaintiffs what they must do, but they have not done it. As noted above, the Eleventh Circuit has held that a "district court does not abuse its discretion in dismissing the case with prejudice on shotgun pleading grounds" if the "plaintiff had fair notice of the defects and a meaningful chance to fix them" but "fails to remedy the defects." *Jackson*, 898 F.3d at 1358. Because Plaintiffs have not identified any facts to show that ranitidine products were in fact improperly stored or transported, which Defendants (if any) improperly stored and transported their ranitidine products, or how specific storage or transport omissions caused Plaintiffs' alleged injuries, their storage and transportation claims should be dismissed with prejudice. *See id.*

### D.    The AMPIC Does Not State a Claim for Failure to Warn the FDA (Count V).

Plaintiffs also bring a claim for "failure to warn consumers through the FDA" based on Defendants' purported failure to submit adverse event reports regarding ranitidine. AMPIC ¶¶ 1371–1405. According to the AMPIC, Defendants "failed to adhere to their pharmacovigilance obligations to collect, analyze, and report adverse events to consumers and physicians through the FDA." *Id.* ¶¶ 1394–95, 1405. Plaintiffs bring identical "failure to warn the FDA" claims against the Brand-Name and Generic Manufacturer Defendants under the laws of California, Delaware, the District of Columbia, Hawaii, Indiana, Kentucky, Louisiana, Maryland, Massachusetts, Minnesota, Missouri, Nevada, New York, Oregon, and Pennsylvania. *Id.* ¶¶ 1406–1510. These

claims should be dismissed because (1) these states do not recognize an independent claim for failure to warn the FDA (at least in the pharmaceutical context), and (2) even if such a claim were viable, Plaintiffs have not alleged sufficient facts to support it.

> **1.     The Jurisdictions at Issue Do Not Recognize Claims for Failure to Warn the FDA in Pharmaceutical Cases.**[10]

Plaintiffs cannot rely on a state's general duty-to-warn requirement to support their claims that Defendants failed to warn the FDA by allegedly failing to submit adverse event reports. Instead, as numerous courts have recognized, the state must specifically recognize an affirmative duty to warn the FDA. *See Norabuena v. Medtronic, Inc.*, 86 N.E.3d 1198, 1207 (Ill. App. Ct. 2017) ("Although Illinois recognizes that a manufacturer may satisfy its duty to warn by conveying information to third-party learned intermediaries, this is not synonymous with an affirmative duty to warn a federal regulatory body." (citations omitted)); *see also, e.g.*, *Conklin v. Medtronic, Inc.*, 431 P.3d 571, 577 (Ariz. 2018) (same). The AMPIC cites cases that purportedly recognize standalone failure-to-warn-the-FDA claims in the jurisdictions at issue. *See* AMPIC ¶¶ 1406–1510.  But these cases do not support Plaintiffs' claims. As explained below, (1) the District of Columbia, Indiana, Kentucky, Maryland, Massachusetts, New York, Oregon, and Pennsylvania do not recognize such claims, (2) the cited federal district court decisions from Delaware, Nevada, Hawaii, and Louisiana make unpersuasive *Erie* predictions on this issue, and (3) it is not clear that California, Missouri, and Minnesota recognize such claims in the pharmaceutical context.

Contrary to Plaintiffs' allegations, most of the jurisdictions at issue do not recognize

---

[10] This argument is related to, but distinct from, the issue of whether Plaintiffs' failure-to-warn-the-FDA claims are impliedly preempted under 21 U.S.C. § 337(a) as applied by the U.S. Supreme Court in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001). That issue is addressed in the Brand-Name Manufacturer Defendants' motion on preemption, filed contemporaneously herewith.

failure-to-warn-the-FDA claims, which means the following claims should be dismissed:

- **District of Columbia**: While Plaintiffs cite *Kubicki ex rel. Kubicki v. Medtronic*, 2013 WL 1739580 (D.D.C. Mar. 21, 2013), to support their failure-to-warn-the-FDA claim under District of Columbia law, they fail to mention that the *Kubicki* court later reversed its decision on *the exact point for which Plaintiffs cite it*, *Kubicki ex rel. Kubicki v. Medtronic, Inc.*, 293 F. Supp. 3d 129, 183 (D.D.C. 2018) (noting the "undisputed fact that there is no D.C. common law claim that imposes liability for a manufacturer's failure to report to the FDA adverse incidents concerning an approved medical device," and rejecting the plaintiffs' "creative effort to craft a D.C. common law claim").

- **Indiana**: Plaintiffs rely on *McAfee v. Medtronic, Inc.*, 2015 WL 3617755 (N.D. Ind. June 4, 2015), but an Indiana state court later held that the Indiana products liability statute at issue in that case did *not* encompass a "viable claim for a failure to warn" through any means other than the labeling and packaging on the product, *Bayer Corp. v. Leach*, 153 N.E.3d 1168, 1187 (Ind. Ct. App. 2020).

- **Kentucky**: Kentucky has not recognized a failure-to-warn-the-FDA claim. *See Russell v. Johnson & Johnson, Inc.*, 610 S.W.3d 233, 238 (Ky. 2020) (never expressly recognizing a claim for failure to warn the FDA under Kentucky law; not clear that plaintiffs pleaded such a claim). The contrary Kentucky federal district court cases Plaintiffs rely upon do not cite any binding Kentucky state court decisions recognizing a standalone failure-to-warn-the-FDA claim. *See Waltenburg v. St. Jude Med., Inc.*, 33 F. Supp. 3d 818, 839 (W.D. Ky. 2014); *see also Hayes v. Endologix, Inc.*, 449 F. Supp. 3d 676, 680 (E.D. Ky. 2020) (citing *Waltenburg*).

- **Maryland**: The cases Plaintiffs cite do not involve failure-to-warn-the-FDA claims. *See Gourdine v. Crews*, 955 A.2d 769, 772–73 (Md. 2008) (holding that drug manufacturer did not

owe duty to third-party bystander injured in a car accident caused by driver who suffered from drug-induced loss of consciousness); *Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633 (Md. 1992) (asbestos case that did not involve the FDA). Plaintiffs' reliance on *Williams v. Smith & Nephew, Inc.*, 123 F. Supp. 3d 733 (D. Md. 2015), is misplaced because that case relied on *Gourdine* and *Owens-Illinois*.

- **Massachusetts**: In *Dunn v. Genzyme Corp.*, 161 N.E.3d 390, 398 (Mass. 2021), the plaintiff did not plead a claim based on failure to warn the FDA of adverse events. In fact, just last month, a federal district court held that there is no failure-to-warn-the-FDA claim under Massachusetts law. *Plourde v. Sorin Grp. USA, Inc.*, 2021 WL 736153, at *11 (D. Mass. Feb. 5, 2021) (collecting cases).

- **New York**: Courts have held that even if New York requires manufacturers "to warn the medical profession, that is not the same as a duty to report to the FDA." *Pearsall v. Medtronic, Inc.*, 147 F. Supp. 3d 188, 201 (E.D.N.Y. 2015); *see also English v. Bayer Corp.*, 468 F. Supp. 3d 573, 580 (W.D.N.Y. 2020) (holding similarly and collecting cases).

- **Oregon**: Plaintiffs' citation to *Axen v. Am. Home Prod. Corp. ex rel. Wyeth-Ayerst Lab'ys*, 974 P.2d 224, 234 (Or. Ct. App. 1999), is inapposite because that case addressed whether certain FDA regulations could establish the standard of care in a negligence case—it did not hold that Oregon law recognizes a standalone claim for failure to warn the FDA.

- **Pennsylvania**: In prescription drug and device cases, Pennsylvania's duty to warn runs to the physician, not other third parties. *See Conley v. St. Jude Med., LLC*, 482 F. Supp. 3d 268, 279 n.5, 6 (M.D. Pa. 2020) (rejecting failure-to-warn-the-FDA claim).

Moreover, Plaintiffs cite a series of federal district court cases to show that Delaware, Hawaii, Louisiana, and Nevada recognize failure-to-warn-the-FDA claims. But those opinions do

not rest on authoritative state-court precedent and instead make *Erie* predictions as to whether states recognize such claims. As this Court previously cautioned, "when a federal court is called upon to recognize a cause of action under a state's laws that the state itself has yet to recognize, considerations of comity and federalism counsel that the federal court proceed gingerly when venturing into uncharted waters of state substantive law." Dkt. No. 2516 at 11 (citations and quotation marks omitted).

The need for caution is particularly acute where, as here, Plaintiffs ask this Court to recognize entirely new causes of action based on federal district court cases that do not cite proper state court authority. The court in *Freed v. St. Jude Med., Inc.*, 364 F. Supp. 3d 343, 359–60 (D. Del. 2019), relied on Pennsylvania law to conclude that Delaware would recognize a failure-to-warn-the-FDA claim, but failed to cite any Delaware law on this point. Moreover, the case that Plaintiffs cite for Nevada relied on a misinterpretation of Arizona law (discussed further below) and inapposite state court authority. *See Scovil v. Medtronic Inc.*, 2015 WL 880614, at *7 (D. Nev. Mar. 2, 2015) (citing several Nevada state court decisions addressing general duty-to-warn principles, such as the role of compliance with federal standards in assessing punitive damages, but never recognizing a failure-to-warn-the-FDA claim); *see also Beavers-Gabriel v. Medtronic, Inc.*, 2015 WL 143944, at *11 (D. Haw. Jan. 9, 2015) (similar, for Hawaii law). Finally, *Gavin v. Medtronic, Inc.*, 2013 WL 3791612, at *14 (E.D. La. July 19, 2013), does not cite any Louisiana caselaw for the prediction that Louisiana would recognize failure-to-warn-the-FDA claims.

Finally, the AMPIC cites California, Minnesota, and Missouri state court cases to show that these states recognize failure-to-warn-the-FDA claims. But these opinions do not show that the states have recognized such claims in the pharmaceutical context. Instead, the Ninth Circuit first recognized these claims in the medical device context based on the preemption rules specific

to medical devices. *See Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1226–32 (9th Cir. 2013) (addressing "central question" of whether the Medical Device Amendments ("MDA") to the FDCA preempt a state-law claim based on failure to warn the FDA). The MDA's preemption rules do not apply to pharmaceutical cases. *See, e.g.*, *Wyeth v. Levine*, 555 U.S. 555, 574 (2009) ("[D]espite its 1976 enactment of an express pre-emption provision for medical devices . . . Congress has not enacted such a provision for prescription drugs.") (citation omitted); *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 327 (2008) (similar).

Despite those different preemption rules, Plaintiffs cite *Coleman v. Medtronic, Inc.*, 167 Cal. Rptr. 3d 300 (Cal. Ct. App. 2014), which involved medical devices and relied heavily on the Ninth Circuit's belief in *Stengel* that Arizona recognized claims for failure to warn the FDA, *see* 704 F.3d at 1233. But the Arizona Supreme Court later emphatically rejected *Stengel*, declining to follow it on the grounds that it was based on "unsupported premises" about Arizona law. *Conklin*, 431 P.3d at 579. *Coleman* is therefore unpersuasive authority given that it is a medical device case and Arizona later invalidated *Stengel*'s central premise. For the same reason, the Minnesota and Missouri caselaw relying on *Stengel* and involving medical devices is not persuasive here either.[11]

### 2.    Even if These Jurisdictions Recognized Claims for Failure to Warn the FDA, Plaintiffs Have Not Adequately Pleaded Them.

Even if the reasoning of these outlier medical device cases could somehow be extended to the pharmaceutical context (despite the vastly different preemption rules and reporting

---

[11] *See Angeles v. Medtronic, Inc.*, 863 N.W.2d 404, 416–19 (Minn. Ct. App. 2015); *Williams v. Bayer Corp.*, 541 S.W.3d 594, 606 (Mo. Ct. App. 2017). And, while not dispositive, federal courts have held that Minnesota and Missouri law does *not* support claims for failure to warn the FDA. *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1205–06 (8th Cir. 2010); *Blankenship v. Medtronic, Inc.*, 6 F. Supp. 3d 979, 989 (E.D. Mo. 2014) ("[E]ven if plaintiff based this claim on [defendant's] failure to file an adverse event report with the FDA, the Eighth Circuit has held that such a claim is preempted under *Buckman*."); *Pinnsonneault v. St. Jude Med., Inc.*, 953 F. Supp. 2d 1006, 1015–16 & n.4 (D. Minn. 2013).

requirements at issue), Plaintiffs' failure-to-warn allegations here bear no resemblance to those cases. Where failure-to-warn-the-FDA claims have been recognized, courts require plaintiffs to plead *specific facts* that "the defendant failed to report adverse events" and "the failure to warn caused the plaintiff's injuries." *Weaver v. Ethicon, Inc.*, 2017 WL 680725, at *7 (S.D. Cal. Feb. 21, 2017), *aff'd*, 737 F. App'x 315 (9th Cir. 2018). Plaintiffs do not satisfy either element.

To survive a motion to dismiss, a complaint "must include allegations of actual adverse events that Defendants did not report." *Id.* (quotation marks omitted). Plaintiffs fail this threshold requirement because—even with the benefit of all the discovery they have received—they do not specifically identify any actual adverse events tied to ranitidine products that Defendants should have reported. Instead, they merely plead that "[u]pon information and belief, at all relevant times, Manufacturer Defendants failed to adhere to their pharmacovigilance obligations to collect, analyze, and report adverse events to consumers and physicians through the FDA." AMPIC ¶ 1393. Numerous courts have held that such "bald[] assert[ions]" that the manufacturer failed to submit adverse event reports are insufficient to state a claim. *See Simmons v. Bos. Sci. Corp.*, 2013 WL 1207421, at *5 (C.D. Cal. Mar. 25, 2013) ("[T]he bare allegation that Defendants did not report the malfunctioning of [the] device to the FDA does not support an inference that Defendants violated their federal obligations[.]"); *see also, e.g.*, *Sewell v. Mentor Worldwide, LLC*, __ F. App'x __, 2012 WL 406623, at *2 (9th Cir. Feb. 5, 2021) (affirming dismissal with prejudice of failure-to-warn-the-FDA claims when plaintiffs failed to identify the "actual adverse events that [defendant] did not report to the FDA"); *Paturzo v. Bos. Sci. Corp.*, 2017 WL 8220600, at *6 (C.D. Cal. Apr. 21, 2017) ("Plaintiffs vaguely allege that Defendants failed to report 'accurate and truthful research' regarding the 'known problems' with the [device] and Defendants' failure to warn Plaintiffs and Plaintiffs' health care providers. Neither allegation falls within the scope of

what is required in an adverse event report." (citation omitted)). Plaintiffs neither identify a single adverse event that Defendants allegedly failed to report nor specify which individual Defendants would have had the obligation to report that event.

Plaintiffs also do not plead facts establishing a "causal nexus" between the failure to submit adverse event reports and their purported injuries.[12] *Martin v. Medtronic, Inc.*, 32 F. Supp. 3d 1026, 1043 (D. Ariz. 2014). To wit, Plaintiffs merely allege that, had the Manufacturer Defendants disclosed to the FDA the unspecified adverse event reports they supposedly omitted, then (1) unnamed "physicians conducting studies" would have been better able to report the safety profile of ranitidine, AMPIC ¶ 1396; (2) "the FDA would have acted similarly by publicizing and investigating the concerns, and, ultimately, ordering a recall," *id*. ¶ 1399; and (3) in turn, the "medical community" *as a whole* would have known about the risks and Plaintiffs' doctors would have made a different prescribing decision, *id.* This series of inferential leaps does not comport with *Twombly*. *See* 550 U.S. at 555 (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level").

Significantly, while Plaintiffs allege in passing that the FDA collected adverse event reports in its Adverse Events Reporting System ("FAERS"), AMPIC ¶ 1391, they never allege that their physicians—much less the Plaintiffs themselves[13]—viewed that database and would

---

[12] Notably, "the fact that a user of a drug has suffered an adverse event, standing alone, does not mean that the drug caused that event." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011); 21 C.F.R. § 314.80(l) (noting that adverse event reports do "not necessarily reflect a conclusion by the [manufacturer] or FDA that the report or information constitutes an admission that the drug caused or contributed to an adverse effect").

[13] Plaintiffs' causation theory is even more attenuated with respect to OTC ranitidine, as to which they simply baldly assert that adverse event reporting to the FDA would, somehow, have led Plaintiffs to "not have purchased and ingested ranitidine." AMPIC ¶ 1399. Plaintiffs have not cited a single case, in any state or jurisdiction, recognizing such a failure-to-warn-the-FDA theory with respect to an OTC product sold directly to consumers.

have acted in reliance on any allegedly omitted information (or even that the FDA would have communicated any specific adverse events to consumers and physicians). Such vague and conclusory allegations cannot plausibly support their claims. *See, e.g.*, *Williams v. St. Jude Med., S.C., Inc.*, 2017 WL 11113322, at *9 (N.D. Ga. Oct. 19, 2017) (granting motion to dismiss where the plaintiff did not "explain if or how the FDA would disclose the … Defendants' reportable information to the decedent or his physician" and made "no allegations that the decedent ever consulted FDA disclosures in making his decision about implantation"); *Cline v. Adv. Neuromodulation Sys., Inc.*, 17 F. Supp. 3d 1275, 1286 (N.D. Ga. 2014) (finding that plaintiff failed to plead causation in part because it is "not guaranteed" that FDA will release adverse event reports to public and because such reports do not "necessarily provide [p]laintiff with specific, actionable information").[14] Thus, Plaintiffs' failure to plead any facts establishing a causal link between Defendants' alleged failure to submit adverse event reports and Plaintiffs' alleged injuries further mandates dismissal of these claims.

### E. The AMPIC Does Not State a Claim for Negligent Failure to Test (Count VIII).

Plaintiffs bring a claim for negligent failure to test under the laws of two states: Kansas and Texas. Because neither of those states recognizes such a claim as an independent tort, this count also must be dismissed.

---

[14] *See also Billetts v. Mentor Worldwide, LLC*, 2019 WL 4038218, at *8 (C.D. Cal. Aug. 27, 2019) (dismissing failure-to-warn claim at pleading stage where plaintiffs failed to "allege facts showing that the FDA would have exercised its discretion to include additional adverse events in its publicly-accessible adverse-event database [for medical devices] had Mentor reported the events" and failed to show "that their physicians relied on information in the adverse-event database when making decisions"), *aff'd sub nom. Billetts v. Mentor Worldwide, LLC*, 2021 WL 406313 (9th Cir. Feb. 5, 2021).

Kansas recognizes a duty on the part of manufacturers to test and inspect their products, but only as part of a broader duty to avoid producing a defective product. *See Lindquist v. Ayerst Lab., Inc.*, 607 P.2d 1339, 1349–50 (Kan. 1980) (citing treatise statement that a "manufacturer who negligently fails to use reasonable care in making such tests and inspections, and thereby produces a defective article which causes damage while being put to an ordinary, anticipated use, is liable for such damage"). The Tenth Circuit has explained that "Kansas law recognizes only three ways in which a product may be defective: (1) a manufacturing defect; (2) a warning defect; and (3) a design defect. . . . Accordingly, a plaintiff alleging a breach of the duty to test must prove that one of these three types of product defects caused the claimed injury." *Burton v. R.J. Reynolds Tobacco Co.*, 397 F.3d 906, 920 (10th Cir. 2005). Thus, the prevailing caselaw shows that Kansas does not recognize failure to test as an independent cause of action.[15]

The same is true of Texas law. In an earlier opinion, this Court observed that a Pennsylvania federal court had "cit[ed] Texas case law for the proposition that 'in Texas there is an independent cause of action based on negligent failure to test.'" Dkt. No. 2512 at 34 (citing *Atkinson v. Luitpold Pharms., Inc.*, 448 F. Supp. 3d 441, 453–54 (E.D. Pa. 2020) ("*Atkinson I*")). But a close examination of Texas law shows that failure to test is *not* an independent cause of action.

Where a state's highest court has spoken on a matter of state substantive law, a federal court sitting in diversity must apply it. *E.g.*, Dkt. No. 2516 at 10 (citing authorities).[16] On this

---

[15] *See also Richter v. Limax Int'l*, 45 F.3d 1464, 1467 (10th Cir. 1995) (holding similarly); *Miller v. Pfizer, Inc.*, 196 F. Supp. 2d 1095, 1124 n.97 (D. Kan. 2002) (in products liability action against drug manufacturer, noting plaintiffs' concession that "the duty to warn and the duty to test are, for all practical purposes, coextensive," and citing *Lindquist*'s holding that "any obligation to test is part of the duty to . . . secure the production of a safe product").

[16] Further, as previously discussed, "when a federal court is called upon to recognize a cause of action under a state's laws that the state itself has yet to recognize, 'considerations of comity and federalism counsel that [the federal court] proceed gingerly when venturing into unchartered waters of state substantive law.'" Dkt. No. 2516 at 11 (quoting authority; brackets in original).

matter, the Texas Supreme Court *has* spoken, holding that a "negligent testing claim is inextricably intertwined with the . . . negligent failure to warn claim." *Am. Tobacco Co. v. Grinnell*, 951 S.W. 2d 420, 437 (Tex. 1997).

> The Grinnells' negligent testing claim is predicated on American's duty to test and ascertain the dangers inherent in its products *about which it must warn consumers.* Because the negligent testing claim *is inextricably intertwined with the Grinnells' negligent failure to warn claim*, we hold that summary judgment was also proper on this claim to the extent it relates to the general health risks of cigarettes.

*Id.* (emphasis added). In concluding otherwise, *Atkinson I* relied on an unreported opinion that misconstrued *Grinnell* having "allowed [a] failure to test theory *unrelated to inadequate warnings* to proceed to trial." *Romero v. Wyeth LLC*, 2012 WL 12547449, at *4 & n.6 (E.D. Tex. Aug. 31, 2012) (emphasis added). In this, *Romero* was mistaken, as *Grinnell* had concluded that negligent testing and failure-to-warn claims were inextricably intertwined both as to claims on which it affirmed summary judgment and some it allowed to proceed; the distinction *Grinnell* drew, instead, was between claims related to the "general health risks of cigarettes," which it held were precluded by the common-knowledge defense, and claims related to the "addictive qualities of cigarettes," which were not. *See Grinnell*, 951 S.W. 2d at 437.

The *Atkinson* court, in a subsequent opinion, *Atkinson v. Luitpold Pharms., Inc.*, 2020 WL 4518022, at *3 (E.D. Pa. Aug. 6, 2020) ("*Atkinson II*"), made the same mistake that the *Romero* court made in misreading *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 444 (2005). In *Bates*, the Supreme Court analyzed the scope of FIFRA preemption, not the viability of failure to test as an independent claim. The Court explained that it could not even discern what claims were at issue and expressly stated that it had "no view as to whether any of these claims are viable as a matter

---

Where state courts are silent, it is "generally presume[d] that [state] courts would adopt the majority view on a legal issue in the absence of indications to the contrary." *Id*.

of Texas law." *Id*. at 443 n.15. The Court of Appeals decision below, however, *had* recognized

that a "negligent testing claim is, as a matter of Texas law, a variation of an action for failure to

warn." *Dow Agrosciences LLC v. Bates*, 332 F.3d 323, 333 (5th Cir. 2003), *vacated and remanded*

*on other grounds*, 544 U.S. 431. In addition to its opinion in *Bates*, the Fifth Circuit has held that

Texas law does *not* recognize failure-to-test claims as an independent cause of action in at least

one other reported case. *See Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912 & n.5 (5th Cir.

1992) (noting that "negligence claims, such as the alleged failure to adequately test [the product],

are subsumed within" a failure-to-warn claim).

Thus, because neither of the states at issue recognizes negligent failure to test as an

independent claim, Count VIII must be dismissed.

### F.     The AMPIC Does Not State a Claim for Unjust Enrichment (Count XIV).

Plaintiffs' claims for unjust enrichment must be dismissed for several reasons: (1) they

have adequate remedies at law in the form of tort claims, (2) they cannot plead that they conferred

a benefit on Defendants, much less a direct benefit (as required under the laws of numerous states),

and (3) they cannot plead any affirmative wrongdoing by Defendants.

#### 1.     Plaintiffs Have Adequate Legal Remedies and Therefore Cannot Claim Unjust Enrichment.

Under the laws of nearly every jurisdiction at issue, unjust enrichment claims must be

dismissed if the plaintiffs "do not plead that they lack an adequate legal remedy" for the purported

harms. *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236 (S.D. Fla. 2007).[17] Plaintiffs nowhere

---

[17] *See New v. CitiFinancial Auto Credit, Inc.*, 2012 WL 2415532, at *5 (M.D. Ala. June 26, 2012); *Erwin v. Mendenhall*, 433 P.3d 1090, 1096 n.18 (Alaska 2018); *Stratton v. Am. Med. Sec., Inc.*, 266 F.R.D. 340, 353–54 (D. Ariz. 2009); *In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 923 (9th Cir. 2014) (California); *Francis v. Mead Johnson & Co.*, 2010 WL 5313540, at *9 (D. Colo. Dec. 17, 2010); *Town of Plainville v. Almost Home Animal Rescue & Shelter, Inc.*, 187 A.3d 1174, 1183 (Conn. Ct. App. 2018); *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010); *Pernice v. Bovim*, 2015 WL 5063378, at *6 (D.D.C. Aug. 26, 2015); *Deerskin Trading Post, Inc. v. United*

*Parcel Serv. of Am., Inc.*, 972 F. Supp. 665, 673 n.10 (N.D. Ga. 1997); *Aquilina v. Certain Underwriters at Lloyd's*, 407 F. Supp. 3d 978, 1011 (D. Haw. 2019); *Mannos v. Moss*, 155 P.3d 1166, 1173 (Idaho 2007); *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. Ct. App. 2005); *Indiana ex rel. Zoeller v. Pastrick*, 696 F. Supp. 2d 970, 981 n.7 (N.D. Ind. 2010); *Ceran v. Reisch*, 2020 WL 6074114, at \*9 (N.D. Iowa Sept. 9, 2020); *City of Neodesha v. BP Corp. N. Am.*, 334 P.3d 830, 863 (Kan. Ct. App. 2014); *United States v. Stevens*, 605 F. Supp. 2d 863, 869–70 (W.D. Ky. 2008); *Ducote Jax Holdings, L.L.C. v. Bradley*, 2007 WL 2008505, at \*11 (E.D. La. July 5, 2007); *Wahlcometroflex, Inc. v. Baldwin*, 991 A.2d 44, 49–50 (Me. 2010); *State v. Philip Morris Inc.*, 1997 WL 540913, at \*15 (Md. Cir. Ct. May 21, 1997); *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 82–83 (1st Cir. 2020) (Massachusetts); *Pacheco v. Boar's Head Provisions Co.*, 2010 WL 1323785, at \*4–5 (W.D. Mich. Mar. 30, 2010); *Ventura v. Kyle*, 825 F.3d 876, 887 (8th Cir. 2016) (Minnesota); *White v. White*, 2019 WL 7876654, at \*5 (Miss. Ct. App. May 21, 2019); *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 2009 WL 10671349, at \*6 (W.D. Mo. Aug. 21, 2009); *Mont. Dig., LLC v. Trinity Lutheran Church*, 473 P.3d 1009, 1012 (Mont. 2020); *Pilot Inv. Grp. Ltd. v. Hofarth*, 550 N.W.2d 27, 33 (Neb. 1996); *Cruz v. Kate Spade & Co., LLC*, 2020 WL 5848095, at \*4 (D. Nev. Sept. 30, 2020); *Romano v. Site Acquisitions, LLC*, 2017 WL 2634643, at \*9 (D.N.H. June 19, 2017); *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 259 (D.N.J. 2020); *In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Practices & Prod. Liab. Litig.*, 288 F. Supp. 3d 1087, 1193 (D.N.M. 2017); *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 512 (S.D.N.Y. 2018); *Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 411 S.E.2d 916, 920 (N.C. 1992); *Hayden v. Medcenter One, Inc.*, 828 N.W.2d 775, 781 (N.D. 2013); *Cunningham Prop. Mgmt. Tr. v. Ascent Res. - Utica, LLC*, 351 F. Supp. 3d 1056, 1065 (S.D. Ohio 2018); *Hydro Turf, Inc. v. Int'l Fid. Ins. Co.*, 91 P.3d 667, 673 (Okla. Ct. App. 2004); *Brown v. Brown*, 136 P.3d 745, 752 (Or. Ct. App. 2006); *Hollenshead v. New Penn Fin., LLC*, 447 F. Supp. 3d 283, 293 (E.D. Pa. 2020); *Gov't of Puerto Rico v. Carpenter Co.*, 442 F. Supp. 3d 464, 476–77 (D.P.R. 2020); *McCarthy Improvement Co. v. Manning & Sons Trucking & Utilities, LLC*, 2018 WL 3009021, at \*5 (D.S.C. June 14, 2018); *Rindal v. Sohler*, 658 N.W.2d 769, 772 (S.D. 2003); *Metro. Gov't of Nashville & Davidson Cty. v. Cigna Healthcare of Tenn., Inc.*, 195 S.W.3d 28, 33 (Tenn. Ct. App. 2005); *Tex. Carpenters Health Ben. Fund v. Philip Morris, Inc.*, 21 F. Supp. 2d 664, 678 (E.D. Tex. 1998), *aff'd*, 199 F.3d 788 (5th Cir. 2000); *AGTC Inc. v. CoBon Energy LLC*, 447 P.3d 123, 129–30 (Utah 2019); *Ehlers v. Ben & Jerry's Homemade Inc.*, 2020 WL 2218858, at \*9 (D. Vt. May 7, 2020); *Airlines Reporting Corp. v. Mundo Travel Corp.*, 2012 WL 13018971, at \*6 (E.D. Va. May 8, 2012); *Johnson v. CitiMortgage, Inc.*, 2013 WL 6632108, at \*7 (W.D. Wash. Dec. 17, 2013); *Gulfport Energy Corp. v. Harbert Priv. Equity Partners, LP*, 851 S.E.2d 817, 823 (W. Va. 2020); *Three Way, Inc. v. Burton Enters., Inc.*, 177 P.3d 219, 226 (Wyo. 2008).

The only three states where the lack of an adequate remedy does not clearly bar an unjust enrichment claim are Rhode Island, Arkansas, and Wisconsin. In Rhode Island, however, the lack of an adequate remedy is still a factor to consider. *See S. Cty. Post & Beam, Inc. v. McMahon*, 116 A.3d 204, 213 (R.I. 2015). And caselaw from the other two states shows that unjust enrichment claims should be dismissed where other legal remedies exist. *See Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1086 (E.D. Ark. 2013) (dismissing unjust enrichment claim where contract provided remedy); *Fail Safe LLC v. A.O. Smith Corp.*, 762 F. Supp. 2d 1126, 1136 (E.D. Wis. 2011) (unjust enrichment claim cannot be used to circumvent contract or intellectual property law), *aff'd*, 674 F.3d 889 (7th Cir. 2012).

allege that they lack an adequate legal remedy. *See, e.g.*, AMPIC ¶¶ 2731–2734 (unjust enrichment claim under Alabama law). As several courts in this district have held, this pleading failure alone mandates dismissal. *See, e.g.*, *Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1342 (S.D. Fla. 1998) (collecting cases).[18]

Plaintiffs have adequate legal remedies in the form of their tort claims. As one court has observed, "in the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim (*i.e.*, if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched)." *State of Sao Paulo of Fed. Rep. of Brazil v. Am. Tobacco Co.*, 919 A.2d 1116, 1124–25 (Del. 2007) (quotation marks omitted); *see also Grynberg v. Total S.A.*, 538 F.3d 1336, 1352 (10th Cir. 2008) (observing that unjust enrichment claims based on allegations that defendant was unjustly enriched through tortious conduct were "identical" to a tort claim predicated on the same conduct). That is especially true here, where Plaintiffs' unjust enrichment claims are based on the *exact same allegations of wrongdoing* as their tort claims. *See, e.g.*, AMPIC ¶ 2725 ("Defendants were unjustly enriched as a result of their wrongful conduct, including through the false and misleading marketing, promotions, and advertisements that omitted disclosure that the products presented an unreasonable risk of substantial bodily injury resulting

---

[18] Additionally, under several states' laws, unjust enrichment is a theory of recovery, not a standalone cause of action. *See Haines v. Comfort Keepers, Inc.*, 393 P.3d 422, 428 (Alaska 2017) ("Unjust enrichment is not a cause of action but a prerequisite to recovery under the doctrine of restitution.") (quotation marks omitted); *Melchior v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d 347, 357 (Cal. Ct. App. 2003) ("[T]here is no cause of action in California for unjust enrichment."); *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. Ct. App. 2009) ("Unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery."); *Romano*, 2017 WL 2634643, at *9 ("Unjust enrichment generally does not form an independent basis for a cause of action [in New Hampshire]." (quotation marks and alterations omitted)); *R.M. Dudley Constr. Co. v. Dawson*, 258 S.W.3d 694, 703 (Tex. Ct. App. 2008) ("Unjust enrichment, itself, is not an independent cause of action . . . ."). The claims under these states' laws should be dismissed for this reason as well.

from their use."). As a result, the unjust enrichment claims must be dismissed because Plaintiffs

have already alleged legal remedies, including common-law tort claims, that duplicate and take

precedence over unjust enrichment. *See, e.g.*, *Prohias*, 490 F. Supp. 2d at 1236–37 (dismissing

unjust enrichment claim where plaintiffs sought "recovery for the exact same wrongful conduct"

as other causes of action, since allegations of misleading marketing could be addressed by their

negligent misrepresentation or consumer fraud claims); *Hydro Turf, Inc.*, 91 P.3d at 673

(dismissing unjust enrichment claim under Oklahoma law where plaintiff had "adequate remedy

at law" through negligence claim).[19]

      This analysis does not change even if Plaintiffs' tort claims fail. What matters is the

*availability* of an adequate legal remedy, not whether that remedy ultimately succeeds. *See, e.g.*,

*Tomasella*, 962 F.3d at 82–83 ("It is the availability of a remedy at law, not the viability of that

remedy, that prohibits a claim for unjust enrichment." (quotation marks and alterations omitted));

*Zafarana v. Pfizer, Inc.*, 724 F. Supp. 2d 545, 560 (E.D. Pa. 2010) ("unjust enrichment is not a

substitute for failed tort claims"); *Williams v. Pfizer, Inc.*, 2009 WL 1362783, at *3 (W.D. La. May

14, 2009) (ruling that if plaintiff could not "establish that Chantix contained an actionable defect

sufficient to warrant relief under" a product liability statute and redhibition, then he could not "use

---

[19] *See also, e.g.*, *Stratton*, 266 F.R.D. at 353–54 (unjust enrichment claim under Arizona law did not lie where plaintiff's claim sounded in fraud); *Francis*, 2010 WL 5313540, at *9 (no unjust enrichment claim under Colorado law where plaintiff sought "recovery for the same wrongful conduct as in her" consumer protection claims); *City of Neodesha*, 334 P.3d at 863 (no unjust enrichment claim under Kansas law where plaintiff pleaded various tort claims); *Ducote Jax Holdings, L.L.C.*, 2007 WL 2008505, at *11 (no unjust enrichment claim under Louisiana law where plaintiff pleaded tort claims); *Price v. L'Oreal USA, Inc.*, 2017 WL 4480887, at *5 (S.D.N.Y. Oct. 5, 2017) ("This is not the unusual situation where there is no adequate remedy at law. Plaintiff asserts both conventional contract and tort claims based on the same set of facts. All of the claims in the Complaint are based on the same alleged misrepresentation by Defendants that the Products contain keratin. Accordingly, Plaintiffs' New York unjust enrichment claim is dismissed as duplicative.").

unjust enrichment to circumvent the result dictated by the specifically applicable rule(s) of law").

Because their unjust enrichment claims are based on the same allegations as their tort claims, Plaintiffs have pleaded themselves out of their unjust enrichment claims regardless of whether their tort claims succeed.

### 2. Plaintiffs Do Not Plead That They Conferred an Actionable Benefit on Defendants.

Plaintiffs' unjust enrichment claims should also be dismissed because Plaintiffs do not plead that they conferred an actionable benefit on Defendants, as required under the laws of every jurisdiction.[20] Plaintiffs allege that Defendants were unjustly enriched because Defendants

---

[20] *E.g.*, *Am. Fam. Care, Inc. v. Fox*, 642 So. 2d 486, 488 (Ala. Civ. App. 1994); *Bennett v. Artus*, 20 P.3d 560, 563 (Alaska 2001); *Stratton*, 266 F.R.D. at 353 (Arizona); *Hartness v. Nuckles*, 475 S.W.3d 558, 564 (Ark. 2015); *Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316, 323 (Cal. Ct. App. 2008); *Cablevision of Breckenridge, Inc. v. Tannhauser Condo. Ass'n*, 649 P.2d 1093, 1096–97 (Colo. 1982); *Town of Plainville*, 187 A.3d at 1183 (Connecticut); *Nemec*, 991 A.2d at 1130 (Delaware); *Pernice*, 2015 WL 5063378, at *6 (District of Columbia); *Hillman Constr. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. Dist. Ct. App. 1994); *Engram v. Engram*, 463 S.E.2d 12, 15 (Ga. 1995); *Durette v. Aloha Plastic Recycling, Inc.*, 100 P.3d 60, 72 (Haw. 2004); *Stevenson v. Windermere Real Est./Cap. Grp., Inc.*, 275 P.3d 839, 842 (Idaho 2012); *Hatcher v. Hatcher*, 158 N.E.3d 326, 330 (Ill. Ct. App. 2020); *Zoeller v. E. Chicago Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009); *Ceran*, 2020 WL 6074114, at *9 (Iowa); *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 910 P.2d 839, 847 (Kan. 1996); *Stevens*, 605 F. Supp. 2d at 869–70 (Kentucky); *Howell v. Rhoades*, 547 So. 2d 1087, 1089 (La. Ct. App. 1989); *A.F.A.B., Inc. v. Town of Old Orchard Beach*, 639 A.2d 103, 104 (Me. 1994); *Clark Off. Bldg., LLC v. MCM Cap. Partners, LLLP*, 2021 WL 302667, at *9 (Md. Ct. Spec. App. Jan. 29, 2021); *Tomasella*, 962 F.3d at 82–83 (Massachusetts); *B & M Die Co. v. Ford Motor Co.*, 421 N.W.2d 620, 622 (Mich. Ct. App. 1988); *Zinter v. Univ. of Minn.*, 799 N.W.2d 243, 247 (Minn. Ct. App. 2011); *Waste Mgmt. of Miss. Inc. v. Jackson Ramelli Waste LLC*, 301 So. 3d 635, 641 (Miss. 2020); *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010); *Mont. Dig., LLC*, 473 P.3d at 1012 (Montana); *Abante, LLC v. Premier Fighter, L.L.C.*, 836 N.W.2d 374, 376 (Neb. Ct. App. 2013); *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012); *Cohen v. Frank Devs., Inc.*, 389 A.2d 933, 937 (N.H. 1978); *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994); *Ontiveros Insulation Co. v. Sanchez*, 3 P.3d 695, 698 (N.M. Ct. App. 2000); *MT Prop., Inc. v. Ira Weinstein & Larry Weinstein, LLC*, 855 N.Y.S.2d 627, 628 (N.Y. App. Div. 2008); *Booe v. Shadrick*, 369 S.E.2d 554, 556 (N.C. 1988); *Hayden*, 828 N.W.2d at 781 (North Dakota); *Desai v. Franklin*, 895 N.E.2d 875, 882 (Ohio Ct. App. 2008); *N.C. Corff P'ship, Ltd. v. OXY USA, Inc.*, 929 P.2d 288, 295 (Okla. Ct. App. 1996); *Wilson v. Gutierrez*, 323 P.3d 974, 978 (Or. Ct. App. 2014); *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999); *Gov't of Puerto Rico*, 442 F. Supp. 3d at 476–77 (Puerto Rico); *S. Cty. Post & Beam, Inc.*, 116 A.3d at 213 (Rhode Island); *Inglese v. Beal*,

"requested and received a measurable benefit at the expense of Plaintiffs in the form of payment for their ranitidine-containing products." AMPIC ¶ 2726. That rote allegation is insufficient. As courts have held, unjust enrichment is not a proper theory in pharmaceutical cases like this one, where the plaintiffs allege that the defendants "misled [them] into desiring a product, which [d]efendants then provided to [p]laintiffs in exchange for payment." *Zafarana*, 724 F. Supp. 2d at 561. This situation "simply is not an appropriate circumstance in which to create quasi-contract liability" under an unjust enrichment theory since plaintiffs received a product in return for their payment. *Id.*; *see also Tatum v. Takeda Pharm. N. Am., Inc.*, 2012 WL 5182895, at *4–5 (E.D. Pa. Oct. 19, 2012) (dismissing unjust enrichment claim where there was "no allegation that defendants refused to provide a service or goods after [plaintiff] provided defendants with a benefit").

Numerous states also require that a plaintiff confer a benefit *directly* on the defendant to recover under an unjust enrichment theory. *See, e.g.*, *Schechter v. Hyundai Motor Am.*, 2019 WL 3416902, at *11 (D.N.J. July 29, 2019) ("A claim of unjust enrichment . . . requires that the plaintiff allege a sufficiently direct relationship with the defendant to support the claim."); *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 618 (E.D. Mich. 2017) ("Michigan law requires a direct benefit or some sort of direct interaction between Plaintiffs and Whirlpool.").[21] Insofar as Plaintiffs

---

742 S.E.2d 687, 690 (S.C. Ct. App. 2013); *Hofeldt v. Mehling*, 658 N.W.2d 783, 788 (S.D. 2003); *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005); *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *Jeffs v. Stubbs*, 970 P.2d 1234, 1248 (Utah 1998); *McLaren v. Gabel*, 229 A.3d 422, 432 (Vt. 2020); *James G. Davis Constr. Corp. v. FTJ, Inc.*, 841 S.E.2d 642, 650 (Va. 2020); *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008); *Prudential Ins. Co. of Am. v. Couch*, 376 S.E.2d 104, 109 (W. Va. 1988); *Puttkammer v. Minth*, 266 N.W.2d 361, 363 (Wis. 1978); *Redland v. Redland*, 288 P.3d 1173, 1205–06 (Wyo. 2012).

[21] *See also Portofino Seaport Vill., LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008); *White v. Volkswagen Grp. of Am., Inc.*, 2013 WL 685298, at *9 (W.D. Ark. Feb. 25, 2013); *Vichi v. Koninklijke Philips Electr. N.V.*, 62 A.3d 26, 59–60 (Del. Ch. 2012); *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017); *Archer v. Holmes*, 2018 WL 534475, at *5 (N.D. Ga. Jan. 23, 2018); *Med. Recovery Servs., LLC v. Bonneville Billing & Collections, Inc.*, 336 P.3d 802, 806 (Idaho 2014); *Pixler v. Huff*, 2011 WL 5597327, at *11–12 (W.D. Ky. Nov. 17, 2011); *Haggard Drilling, Inc. v.*

did not confer a direct benefit upon a particular Defendant, such as the Manufacturer and Distributor Defendants that Plaintiffs did not directly pay or interact with, their unjust enrichment claims should be dismissed for this reason as well.

### 3.     Plaintiffs Do Not Plead That Defendants Took Undue Advantage.

Unjust enrichment is an equitable claim, which means that recovery is appropriate only if "in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." *Lapkin v. Garland Bloodworth, Inc.*, 23 P.3d 958, 961 (Okla. Ct. App. 2000). Numerous states thus require plaintiffs to plead some level of affirmative wrongdoing on the part of the defendant, which means that the plaintiff must plead that the "party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996).[22]

---

*Greene*, 236 N.W.2d 841, 846 (Neb. 1975); *Sperry v. Crompton Corp.*, 810 N.Y.S.2d 498, 499–400 (N.Y. App Div. 2006); *Effler v. Pyles*, 380 S.E.2d 149, 151 (N.C. Ct. App. 1989); *Apache Corp. v. MDU Res. Grp., Inc.*, 603 N.W.2d 891, 895 (N.D. 1999); *Vancrest Mgmt. Corp. v. Mullenhour*, 140 N.E.3d 1051, 1068 (Ohio Ct. App. 2019); *Samuels v. Hendricks*, 445 A.2d 1273, 1276 (Pa. Super. Ct. 1982); *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966); *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 856 (S.D. Tex. 2018).

[22] *Accord Mantiply v. Mantiply*, 951 So. 2d 638, 654–55 (Ala. 2006); *Fireworks Lady & Co., LLC v. Firstrans Int'l Co.*, 2019 WL 6448943, at *6 (C.D. Cal. Aug. 8, 2019); *DCB Constr. Co., Inc. v. Central City Dev. Co.*, 965 P.2d 115, 120–21 (Colo. 1998); *Prof'l Elec. Contractors of Conn., Inc. v. Stamford Hosp.*, 230 A.3d 773, 783 (Conn. App. Ct. 2020); *Territory of U.S. V.I. v. Goldman, Sachs & Co.*, 937 A.2d 760, 796 n.161 (Del. Ch. 2007); *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1225 (D.C. Ct. App. 2005); *S. Fresh, LLC v. Breschro & Co., Inc.*, 2015 WL 12881165, at *7 (S.D. Fla. Oct. 5, 2015); *Hawaiian Ass'n of Seventh-Day Adventists v. Wong*, 305 P.3d 452, 465 (Haw. 2013); *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 771 (N.D. Ill. 2019); *Bland v. Abbott Labs., Inc.*, 2012 WL 32577, at *2 (W.D. Ky. Jan. 6, 2012); *Wong v. Chan*, 2012 WL 1557240, at *1 (Mass. Ct. App. May 4, 2012); *Barker v. Dicicco*, 2002 WL 31956978, at *1 (Mich. Ct. App. Dec. 20, 2002); *S & J, Inc. v. McLoud & Co.*, 108 S.W.3d 765, 768 (Mo. Ct. App. 2003); *Randolph v. Peterson, Inc. v. J.R. Simplot Co.*, 778 P.2d 879, 883 (Mont. 1989); *Stark v. Soteria Imaging Servs., Inc.*, 276 F. Supp. 2d 989, 993–94 (D. Neb. 2003*)*; *Re v. O'Connor*, 2016 WL 7315161, at *3 (D.N.J. Oct. 5, 2016); *Pender v. Bank of Am. Corp.*, 2017 WL 1536234, at *16 (W.D.N.C. Apr. 27, 2017); *Jerry Harmon Motors, Inc. v. Heth.*, 316 N.W.2d 324, 328 (N.D. 1982); *Total Off. Sols., Inc. v. Grimstad*, 2019 WL 2721216, *4 (Ohio Ct. App. June 27, 2019); *Tupper v. Roan*, 243 P.3d 50, 59 (Or. 2010); *Annon v. Lucas*,

Plaintiffs do not adequately plead that Defendants knew of the alleged NDMA contamination or otherwise took undue advantage of them, which means they cannot satisfy the affirmative wrongdoing requirement of the relevant states. *See, e.g.*, *Burlington N. R.R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. Ct. App. 1996) ("Unjust enrichment is typically found under circumstances in which one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."); *Qualichem v. Xelera, Inc.*, 62 Va. Cir. 179, 183 (Va. Cir. Ct. 2003) (unjust enrichment under Virginia law applies where "undue advantage taken of the claiming party's situation"). For the Retailer and Distributor Defendants, Plaintiffs do not allege *any* facts showing whether, when, or how those Defendants became aware of ranitidine's alleged risks.[23] And for the Manufacturer Defendants, Plaintiffs do not explain when or how specific Defendants became aware of any specific piece of information about those risks. *See* Section I.A, *supra*. The AMPIC's unjust enrichment claims should be dismissed for this additional reason.

## G.   The AMPIC Does Not Plausibly Allege Entitlement to Punitive Damages.

Lastly, the AMPIC's request for punitive damages fails under the pleading requirements of *Twombly/Iqbal*. Those requirements apply to allegations supporting a request for punitive damages, *see Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1356 n.5 (11th Cir. 2020), so such allegations must allege "sufficient *factual* matter" to plausibly entitle the plaintiff to punitive damages, *Iqbal*, 556 U.S. at 678 (emphasis added). A "formulaic recitation of the elements" of punitive damages is not enough. *Chicken Kitchen USA, LLC v. Maiden Specialty Ins. Co.*, 2015 WL 7294824, at *7 (S.D. Fla. Nov. 19, 2015); *accord Boring v. Google Inc.*, 362 F. App'x 273,

---

185 S.E.2d 343, 352 (W. Va. 1971); *Abbott Labs. v. Norse Chem. Corp.*, 147 N.W.2d 529, 541 (Wis. 1967).

[23] The unjust enrichment claim against Distributor Defendants was dismissed with prejudice previously and, therefore, should not have been repleaded. Dkt. No. 2513 at 26–28.

283 (3d Cir. 2010) (dismissing conclusory punitive damages request); *Doe v. Celebrity Cruises, Inc.*, 389 F. Supp. 3d 1109, 1116 (S.D. Fla. May 9, 2019) (same); *Summerlin v. Shellpoint Mortg. Servs.*, 165 F. Supp. 3d 1099, 1117 (N.D. Ala. 2016) (same); *Moore v. Mylan Inc.*, 840 F. Supp. 2d 1337, 1353 (N.D. Ga. 2012) (same); *Henderson v. Sun Pharm. Indus., Ltd.*, 2011 WL 4024656, at *8 (N.D. Ga. June 9, 2011) (same); *Rhynes v. Stryker Corp.*, 2011 WL 2149095, at *5 (N.D. Cal. May 31, 2011) (same).

The AMPIC does not plausibly allege specific facts to support its request for punitive damages. It generally asserts that *all* "Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice" because *all* Defendants allegedly "were fully aware of the safety risks of ranitidine" but "deliberately crafted their label and marketing to mislead consumers." AMPIC ¶ 473. *All* Defendants, the AMPIC asserts, "knew they could profit by convincing consumers that ranitidine was harmless," so *all* Defendants allegedly executed "a comprehensive scheme of selective misleading research and testing, false advertising, and deceptive omissions." *Id.* ¶ 474. But these allegations do not identify any specific factual allegations related to any specific Defendant; instead, they rely wholly upon generalized and vague references to "Defendants' conduct as alleged herein" and conduct "more fully alleged throughout this pleading." *Id.* ¶¶ 473–74. These general "assertions result in the obvious question—what 'conduct' is [the AMPIC] referring to?" *Estate of Bass*, 947 F.3d at 1356 n.5. The "answer," Plaintiffs essentially say, is "'everything that the plaintiff has previously mentioned anywhere in the complaint.'" *Id.* Such allegations "clearly run afoul of the specificity required by Rule 8(a)(2) and *Iqbal*" and are, therefore, "unacceptable in this Circuit." *Id.* Plaintiffs' shotgun allegations are especially deficient in light of the millions of pages of discovery they have received to date— Plaintiffs cannot marshal any plausible facts that rise to the level of warranting punitive damages

to allege against any specific Defendant.

Even if the Court attempted to "sift out the irrelevancies" Plaintiffs incorporate into their punitive damages request, *Strategic Income Fund*, 305 F.3d at 1295, the AMPIC lacks factual allegations identifying the specific wrongdoing each Defendant allegedly committed. The punitive damages allegations focus exclusively on Defendants' alleged *misleading* conduct, AMPIC ¶¶ 473–75, but the AMPIC does not allege *any* misleading conduct by *any* Retailer or Distributor Defendant. *See id.* ¶¶ 2207–24. And Plaintiffs' allegations related to the Manufacturer Defendants are totally undifferentiated, accusing all manufacturers—whether brand-name or generic, prescription or OTC—of the exact same conduct, without any attempt to identify (among other things) which specific manufacturers were aware of what information at what time, or what specific misleading statements any specific manufacturer made in any specific advertisement. *See* Section I.A, *supra*. Defendants have produced over a million pages of documents, and Plaintiffs still are unable to provide this required information to support their claim. Thus, not only is it clear that the assertions in Plaintiffs' punitive damages allegations cannot possibly apply to all 100+ Defendants, the AMPIC's factual allegations give the Court and Defendants no way to discern which Defendants the assertions *do* apply to, or on what grounds. Plaintiffs' request for punitive damages should, therefore, be dismissed or stricken.

## <u>CONCLUSION</u>

For the foregoing reasons, the AMPIC should be dismissed or stricken with prejudice.

Dated: March 24, 2021                              Respectfully submitted,

**<u>Lead Counsel:</u>**

*/s/ Andrew T. Bayman*
Andrew T. Bayman
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600

Atlanta, GA 30309-3521
Tel: (404) 572-4600
Fax: (404) 572-5100
abayman@kslaw.com

*Counsel for Defendant*
*Boehringer Ingelheim Pharmaceuticals, Inc.*

/s/ *Anand Agneshwar*
Anand Agneshwar
ARNOLD & PORTER
KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
Fax: (212) 836-8689
anand.agneshwar@arnoldporter.com

*Counsel for Defendants*
*Sanofi US Services Inc., Sanofi-Aventis U.S.*
*LLC, and Chattem, Inc.*

/s/ *Mark Cheffo*
Mark S. Cheffo
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3500
Fax: (212) 698-3599
mark.cheffo@dechert.com

*Counsel for Defendant GlaxoSmithKline*
*LLC*

/s/ *Joseph G. Petrosinelli*
Joseph G. Petrosinelli
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
jpetrosinelli@wc.com

*Counsel for Defendant Pfizer Inc.*

**Additional Counsel for Brand-Name**
**Manufacturer Defendants:**

*/s/ Christopher R. Carton*
Christopher R. Carton, Esq.
Erica S. Mekles, Esq.
BOWMAN AND BROOKE LLP
317 George Street, Suite 320
New Brunswick, NJ 08901
Tel: (201) 577-5176
christopher.carton@bowmanandbrooke.com
erica.mekles@bowmanandbrooke.com

*Counsel for Defendant Patheon*
*Manufacturing Services LLC*

**Liaison Counsel for Generic**
**Manufacturer Defendants:**

*/s/ Richard M. Barnes*
Richard M. Barnes
GOODELL, DEVRIES, LEECH & DANN,
LLP
One South Street, 20th Floor
Baltimore, MD 21202
Tel: (410) 783-4000
rmb@gdldlaw.com

*/s/ Thomas J. Yoo*
Thomas J. Yoo
HOLLAND & KNIGHT LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: (213) 896-2400
thomas.yoo@hklaw.com

**Liaison Counsel for**
**Retailer Defendants:**

*/s/ Sarah E. Johnston*
Sarah E. Johnston
BARNES & THORNBURG LLP
2029 Century Park East, Suite 300
Los Angeles, CA 90067
Tel: (310) 284-3798
sarah.johnston@btlaw.com

**Counsel for Distributor**
**Defendants:**

/s/ Andrew D. Kaplan
Andrew D. Kaplan
Daniel T. Campbell
Lyndsay A. Gorton
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 624-2500
Fax: (202) 628-5116
AKaplan@crowell.com
DCampbell@crowell.com
LGorton@crowell.com

*Counsel for Defendant Cardinal Health, Inc.*

/s/ Spencer H. Silverglate
Spencer H. Silverglate
Craig Salner
Shannon P. McKenna
Trevor J. Gillum
Alexandra C. Hayes
CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, 9th Floor
Miami, FL 33131
Tel: (305) 377-0700
Fax: (305) 377-3001
SSilverglate@cspalaw.com
CSalner@cspalaw.com
SMcKenna@cspalaw.com
TGillum@cspalaw.com

*Counsel for Defendant McKesson*
*Corporation*

/s/ Larry R. Wood, Jr.
Larry R. Wood, Jr.
Lauren E. O'Donnell
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
Tel: (215) 569-5659

Fax: (215) 832-5735
LWood@BlankRome.com
ODonnell@BlankRome.com

*Counsel for Defendants AmerisourceBergen*
*Corporation and Amerisource Health*
*Services, LLC*

*/s/ Richards Huff Ford*
Richards Huff Ford
WICKER SMITH O'HARA MCCOY &
FORD, PA
390 N Orange Avenue
Suite 1000
Orlando, FL 32802
Tel: (407) 843-3939
Fax: (407) 649-8118
rford@wickersmith.com

*Counsel for Golden State Medical Supply,*
*Inc.*

*/s/ Julie B. Glassman*
Julie Bork Glassman
Florida Bar No. 014104
Eduardo Cosio
Florida Bar No. 714331
COSIO LAW GROUP
1430 S. Dixie Hwy., Suite 202
Coral Gables, FL 33146
Tel: 305-567-0503
j.glassman@cosiolaw.com
ecosio@cosiolaw.com

*Counsel for Defendant*
*Geri-Care Pharmaceuticals Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 24, 2021, I electronically filed the foregoing DEFENDANTS' OMNIBUS MOTION TO DISMISS AND/OR STRIKE AMENDED MASTER PERSONAL INJURY COMPLAINT, AND INCORPORATED MEMORANDUM OF LAW with the Clerk of Court using the CM/ECF system, which will provide automatic notification to all counsel of record.

*/s/ Andrew T. Bayman*
Andrew T. Bayman
