**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION | MDL NO. 2924<br>20-MD-2924<br><br>**JUDGE ROBIN L. ROSENBERG**<br>**MAGISTRATE JUDGE BRUCE E. REINHART** |

THIS DOCUMENT RELATES TO:

*Mayor and City Council of Baltimore v. GlaxoSmithKline, et al.*
No. 9:21-cv-80245-RLR

**THE MAYOR AND CITY COUNCIL OF BALTIMORE'S REPLY IN SUPPORT OF ITS MOTION TO REMAND**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I. There Is Not Complete Diversity Among The Parties ............................................1

II. Federal Law Does Not Preempt the City's Negligence and Public Nuisance Claims Against the Maryland-Based Store Brand Defendants ..........................................2

III. The City's Negligence and Public Nuisance Claims Are Viable Under State Law ............7

IV. The City Is Entitled To An Award of Attorney's Fees And Costs Due To Defendants' Insistence On Unnecessary Motion Practice ..........................................................9

CONCLUSION AND PRAYER FOR RELIEF ..........................................................................10

CERTIFICATE OF SERVICE ................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adventure Outdoors, Inc. v. Bloomberg*,
    552 F.3d 1290 (11th Cir. 2008) ...................................................................................................7

*Berber v. Wells Fargo Bank, N.A.*,
    No. 16-24918-CIV-MARTINEZ/GOODMAN, 2018 WL 10436232 (S.D. Fla.
    May 2, 2018) ................................................................................................................................7

*Bujanowski v. Kocontes*,
    359 F. App'x 112 (11th Cir. 2009) ............................................................................................10

*Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*,
    591 F.3d 1337 (11th Cir. 2009) ...................................................................................................7

*Cook v. Bradley*,
    No. 2245, Sept. Term, 2016, 2018 WL 824318 (Md. Ct. Spec. App. Feb. 8,
    2018) ............................................................................................................................................6

*Eagle-Picher Industries, Inc. v. Balbos*,
    326 Md. 179 (1992) .....................................................................................................................8

*Ferguson v. Easton Technical Prods., Inc.*,
    No. 5:13-cv-01931-SGC, 2015 WL 9268149 (N.D. Ala. Dec. 21, 2015) ..................................7

*Frericks v. Gen. Motors Corp.*,
    336 A.2d 118 (Md. 1975) ............................................................................................................5

*Henderson v. Goodyear Dunlop Tires N. Am.*,
    No. 3:11-CV-295-WKW, 2011 WL 3503171 (M.D. Ala. Aug. 10, 2011) .................................7

*Mayes v. Rapoport*,
    198 F.3d 457 (4th Cir. 1999) .......................................................................................................1

*McKenzie v. Janssen Biotech, Inc.*,
    C.A. 17-0111-WS-B, 2017 WL 2670738 (S.D. Ala. June 21, 2017) ....................................4, 5

*Nelson v. Whirlpool Corp.*,
    727 F. Supp. 2d 1294 (S.D. Ala. 2010) .......................................................................................7

*Scott v. Jenkins*,
    690 A.2d 1000 (Md. 1997) ..........................................................................................................6

*St. John's Deliverance Temple v. Frontier Adjusters*,
    No. C.A. 11-0624-KD-C, 2012 WL 629056 (S.D. Ala. Feb. 27, 2012) ...................................7

*Stillwell v. Allstate Ins. Co.*,
    663 F.3d 1329 (11th Cir. 2011) ...............................................................................................4

*Ullah v. BAC Home Loans Servicing LP*,
    538 Fed. Appx 844 (11th Cir. Aug. 16, 2013) ........................................................................4

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
    20-MD-2924, 2020 WL 7864585 (S.D. Fla. Dec. 31, 2020) ....................................................3

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
    20-MD-2924, 2021 WL 650608 (S.D. Fla. Feb. 19, 2021) (Rosenberg, J.) .............................2

**Other Authorities**

Md. Rule 2-341(c) .............................................................................................................................6

U.S. Pharmacopoeia Convention, Ch. 1079, *Good Storage & Distribution
    Practices for Drug Products* ...................................................................................................5

The Mayor and City Council of Baltimore ("Baltimore" or the "City") respectfully submits its reply in further support of its Motion to Remand and Incorporated Memorandum of Law, Dkt. 3015 ("Motion" or "Mot.").[1]

## I. THERE IS NOT COMPLETE DIVERSITY AMONG THE PARTIES

Jurisdiction based on diversity of citizenship is lacking here. Despite each of the three Maryland-Based Store Brand Defendants submitting affidavits in support of Defendants' Opposition,[2] none of them list the citizenship of any of their members,[3] and none of them contest the allegation that they are Maryland entities. By failing to do so, Defendants have failed to carry their burden of establishing diversity of citizenship.[4] Thus, this action must be remanded to Maryland state court unless the Court determines that it would be *impossible* for the City to proceed against any of them.

Defendants' arguments in opposition to the Motion conflate the fraudulent joinder standard with the motion to dismiss standard, maintaining that the City's claims as presently pleaded would be preempted, and are thus impossible to sustain.[5] However, the pertinent standard is "more lenient than that for a motion to dismiss."[6] In particular, "[t]o establish fraudulent joinder, 'the removing party has the burden of proving by clear and convincing

---

[1] Capitalized terms used herein shall have the same meaning as ascribed to them in the Motion.

[2] Defendants' Opp. to Mot. to Remand ("Opposition" or "Opp."), Dkt. 3099.

[3] *See* Opp. at Exs. A-C, Dkts. 3099-1, 3099-2, 3099-3, respectively.

[4] *See* Mot. § II (citing cases).

[5] Opp. at 1.

[6] *Mayes v. Rapoport*, 198 F.3d 457, 466 n.15 (4th Cir. 1999).

evidence that … there is no possibility the plaintiff can establish a cause of action.'"[7]  Further, "even conclusory allegations in a complaint are sufficient for a [p]laintiff to survive a fraudulent joinder challenge," since even the mere possibility that the state court would sustain a claim suffices.[8]  As explained in the Motion, and below, Maryland law supports the common-law negligence and nuisance claims asserted against the Store Brand Defendants, including those based in Maryland.  Although Defendants' merits defenses (such as preemption) should not factor into the fraudulent joinder analysis, moreover, the City has alleged that each of the Maryland-Based Store Brand Defendants engaged in actionable conduct that would not be subject to preemption, including breaches of duty in connection with their sales practices.  The Complaint alleges that certain conditions relating to the storage, handling, and transport of ranitidine products, including those sold by the Maryland-Based Store Brand Defendants, cause or promote the formation of NDMA, supporting the reasonable inference that the Maryland-Based Store Brand Defendants' sales practices caused or contributed to the injuries asserted in the Complaint.  Thus, those Maryland-based Defendants are not fraudulently joined and this case should promptly be remanded to Maryland state court.

## II. FEDERAL LAW DOES NOT PREEMPT THE CITY'S NEGLIGENCE AND PUBLIC NUISANCE CLAIMS AGAINST THE MARYLAND-BASED STORE BRAND DEFENDANTS

Defendants effectively disregard the Complaint and simply lump the Maryland-Based Store Brand Defendants in with unrelated passive retailers identified by other plaintiffs in the MDL, contending that claims against those Defendants are impossible because they were, at

---

[7] *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 20-MD-2924, 2021 WL 650608, at *1 (S.D. Fla. Feb. 19, 2021) (Rosenberg, J.) (citing *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011)).

[8] *Id.* at *2.

most, mere conduits lacking authority to change drug labels. But this is simply not what has been alleged in this case. Instead, each of the Store Brand Defendants (including those resident in Maryland) is alleged to have put its name behind its own ranitidine products, and to have failed in its duty to exercise ordinary care in conducting its sales practices, including with respect to the conditions known to cause or enhance NDMA formation.[9] No Defendant has been named in the City's case merely as a result of a wholly passive commercial role.

Defendants gloss over the nature of the claims at issue and instead analyze them under a design defect and failure to warn framework.[10] The cases Defendants cite, holding that claims against non-manufacturing parties in the chain of distribution of FDA-approved products are preempted,[11] are inapposite because the City's claims are not premised on alleged defects but on malfeasance in connection with sales practices, including breaches of duty relating to conditions producing or increasing the formation of NDMA in the products. Defendants' attempt to draw a parallel between the City's negligence and public nuisance claims and claims this Court dismissed in the MDL Master Personal Injury Complaint fails.[12] In that case, this Court dismissed design defect claims and claims for inadequate labels and warnings, while permitting those plaintiffs to replead their general negligence claim "provided the amended claim was not based upon (i) the adequacy of an FDA-approved label or (ii) the design of ranitidine."[13] Moreover, because the City is not asserting design defect and/or failure to warn claims against

---

[9] *See* Mot. at 5 (collecting citations to relevant Complaint paragraphs).

[10] *See* Opp. at 1-2 & § I.

[11] Opp. at 5 & n.5.

[12] Opp. at 8-9.

[13] *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 20-MD-2924, 2020 WL 7864585, at *19 (S.D. Fla. Dec. 31, 2020); *see also id.* at **16-19.

3

the Maryland-Based Store Brand Defendants, the affidavits submitted by the latter neither support Defendants' preemption defense nor help them meet their heavy burden of establishing fraudulent joinder.[14]

Simply put, Defendants fail to establish fraudulent joinder.[15] The City's Complaint need only support a *possibility* that it can establish a cause of action against the Maryland-Based Store Brand Defendants,[16] and it does. Contrary to Defendants' contention,[17] the City has more than a mere possibility of stating valid negligence and nuisance claims, particularly regarding the handling of the products in light of the risk of NDMA production, against all Defendants, including the Maryland-Based Store Brand Defendants. As alleged in the Complaint, the risk of creating NDMA by prolonged storage or by exposing ranitidine to heat is well documented. For example, the City's Complaint alleges NDMA in ranitidine "increases over time and when stored at higher than room temperatures,"[18] and that Defendants created or contributed to a public nuisance and breached their duties of care in connection with the sale of their ranitidine products,

---

[14] Opp. at Exs. A-C.

[15] *See, e.g.*, *McKenzie v. Janssen Biotech, Inc.*, C.A. 17-0111-WS-B, 2017 WL 2670738, at *4 (S.D. Ala. June 21, 2017) (citing cases); *see also Ullah v. BAC Home Loans Servicing LP*, 538 Fed. Appx 844, 846 (11th Cir. Aug. 16, 2013) (adopting the "even a possibility" formulation and explaining that "[t]he standard for evaluating whether the plaintiff can establish a cause of action against the resident defendant is very lenient").

[16] *McKenzie*, 2017 WL 2670738, at *5 (recognizing that the plaintiffs' allegations, "albeit patchy, would appear to support a colorable claim of negligence against [the doctor], and thereby preclude a determination that it is beyond doubt that [they] can prove no set of facts entitling them to relief from [the doctor]"); *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1333 (11th Cir. 2011) ("If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court.") (internal citations and quotations omitted).

[17] Opp. at 1, 3, 6-7.

[18] Compl. ¶ 272.

supporting the reasonable inference that Defendants' negligent sales practices played a causal role in distributing dangerous products in Baltimore. Nothing more is required to defeat Defendants' fraudulent joinder argument. Thus, the "very lenient" hurdle of fraudulent joinder is easily cleared, precluding a determination that the City can prove no set of facts entitling it to relief from the Maryland-Based Store Brand Defendants.[19]

Contrary to Defendants' assertions otherwise, the City's negligence and public nuisance theories do not turn on whether the Maryland-Based Store Brand Defendants hold NDAs or ANDAs for ranitidine and/or have authority to alter the products' labeling or design without prior FDA approval.[20] Instead, the City's negligence theory is based on Defendants' (including the Maryland-Based Store Brand Defendants') breaches of their duties of care to the City and its residents, including with respect to their sales practices, such as their duties to comply with proper storage, shipping, and temperature specifications. Specifically, the Store Brand Defendants (including the Maryland-Based Store Brand Defendants) were responsible for "[g]ood storage and distribution practices," including "for ensuring that they handle drug products within adequate storage and distribution parameters that will not affect the drug product identity, strength, quality, purity, or safety."[21]

Moreover, this Court's prior ruling that plaintiffs may replead negligent storage and transport claims against the Generic Manufacturers and Repackagers supports the City's request

---

[19] *McKenzie*, 2017 WL 2670738, at *5.

[20] Opp. at 2, 8-9; *see also id.* at Exs. A-C.

[21] U.S. Pharmacopoeia Convention, Ch. 1079, *Good Storage & Distribution Practices for Drug Products* at 1, 2. Defendants' citation to *Frericks v. Gen. Motors Corp.*, 336 A.2d 118 (Md. 1975), Opp. at 11 n.9, again mischaracterizes the City's allegations and ignores that the Maryland-Based Store Brand Defendants had this responsibility.

5

for remand because that ruling presupposes that there is at least a "possibility" that the claims may be established.[22] Under Maryland law, in a negligence action, a complaint must allege facts and circumstances sufficient to set forth (a) a duty owed by the defendant to the plaintiff, (b) a breach of that duty, and (c) injury proximately resulting from that breach.[23] The City has done so here.

Defendants lean heavily on the point that the Complaint's articulation of the negligence and nuisance claims do not specify the precise manner in which Defendants' (including the Maryland-Based Store Brand Defendants') sales practices constitute a breach of duty. But those counts incorporate all factual allegations in the Complaint,[24] which indisputably include allegations concerning the storage and handling of ranitidine and the production of NDMA as a result of deficiencies in storage and handling. Thus, although the Court may clearly draw the reasonable inference that Defendants' breaches of duty regarding their sales practices encompass all the conditions addressed in the Complaint as it stands (including negligence in the storage and handling of their ranitidine products), the City need only amend its Complaint to more specifically articulate its negligent storage and transport claims and dispose of this ground for jurisdiction. Of course, "[i]t is settled law that leave to amend 'should be granted freely to serve the ends of justice and that it is the rare situation in which a court should not grant leave to amend.'"[25] The cases Defendants cite for the proposition that the City "cannot escape" federal

---

[22] *See* Mot. at 10-11.

[23] *See, e.g., Scott v. Jenkins*, 690 A.2d 1000, 103 (Md. 1997); *see also* Mot. at 12-14.

[24] Compl., ¶¶ 382, 390.

[25] *Cook v. Bradley*, No. 2245, Sept. Term, 2016, 2018 WL 824318, at *5 (Md. Ct. Spec. App. Feb. 8, 2018) (quoting *RRC Northeast, LLC v BAA Maryland, Inc.*, 413 Md. 638, 673 (2010)); *see also* Md. Rule 2-341(c).

6

jurisdiction on the basis of a potential "future claim" that avoids preemption[26] are inapposite, as such amendment would merely clarify the nature of the negligent sales practices *already* alleged in the Complaint.[27] A purported lack of clarity in the pleading is not sufficient to support fraudulent joinder and to confer federal jurisdiction where it is otherwise lacking.

### III. THE CITY'S NEGLIGENCE AND PUBLIC NUISANCE CLAIMS ARE VIABLE UNDER STATE LAW

Despite Defendants' refusal to acknowledge this fact,[28] "at no point does the City allege that any Defendant is liable because they simply acted as a mere conduit" or as mere "dealers."[29]

---

[26] Opp. at 8.

[27] *Nelson v. Whirlpool Corp.*, 727 F. Supp. 2d 1294, 1305 (S.D. Ala. 2010), stands for the unremarkable proposition that "the post-removal assertion of a viable cause of action against a fraudulently joined defendant does not strip the Court of subject matter jurisdiction that existed at the time of removal." Unlike in *Ferguson v. Easton Technical Prods., Inc.*, No. 5:13-cv-01931-SGC, 2015 WL 9268149, at **8-9 (N.D. Ala. Dec. 21, 2015), and *St. John's Deliverance Temple v. Frontier Adjusters*, No. C.A. 11-0624-KD-C, 2012 WL 629056, at *5 n.2 (S.D. Ala. Feb. 27, 2012), where the plaintiffs sought to amend to assert new causes of action or theories of liability against the defendants, here the City has alleged negligence claims against the Maryland-Based Store Brand Defendants and any amendment of the City's Complaint would only clarify these negligence claims, not assert entirely new causes of action against them. *See also Henderson v. Goodyear Dunlop Tires N. Am.*, No. 3:11-CV-295-WKW, 2011 WL 3503171, at **4-5 (M.D. Ala. Aug. 10, 2011) (concluding the plaintiff was not seeking to clarify an existing claim nor correct a drafting error, but to insert an entirely new theory of recovery against a fraudulently joined defendant where the plaintiff originally alleged the motorcycle tires were defective and then sought to amend to allege that the motorcycle itself was defective); *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1295-98 (11th Cir. 2008) (explaining to meet their burden, "the defendants must show that the plaintiffs' complaint, as it existed at the time of removal, provides an adequate basis for the exercise of federal jurisdiction" and concluding that the plaintiffs' negligence-related claims did not provide a sufficient basis for the exercise of federal jurisdiction); *Berber v. Wells Fargo Bank, N.A.*, No. 16-24918-CIV-MARTINEZ/GOODMAN, 2018 WL 10436232, at *4 (S.D. Fla. May 2, 2018), *report and recommendation adopted*, 2018 WL 10436233 (S.D. Fla. May 9, 2018) (explaining to decide the amended remand motion, the court was required to determine whether subject-matter jurisdiction was proper at the time of removal); *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1350 n.9 (11th Cir. 2009) (explaining "removal jurisdiction is determined at the time of removal").

[28] Opp. at 9-10.

7

Instead, the City alleges all of the Store Brand Defendants actively sold their own ranitidine products in Baltimore, and knew, should have known, or had reason to know about (a) the presence and formation of dangerous NDMA in their ranitidine products under certain storage, temperature and other conditions and (b) the extremely unsafe levels of NDMA contained in, or formed in these products when subjected to certain conditions and over time.[30]  This Court has previously rejected similar arguments raised by Defendants where they also mischaracterized the numerous California-based plaintiffs' negligence claims,[31] and should do so again here.  As in the California-based plaintiffs' case, the nondiverse defendants here were "*actively* negligent" in their sales practices.[32]  The cases Defendants cite,[33] like *Eagle-Picher Industries*, are inapposite for the reasons explained in the Motion.[34]

---

[29] Mot. at 12-14.

[30] *Id*.

[31] Order Granting the Plaintiffs' Motion to Remand, Dkt. 2824 in MDL-2924-RLR at 3-6 (Feb. 19, 2021) ("California Remand Order").

[32] *Id.* at 5 (emphasis in original).

[33] Opp. at 10 (citing *Eagle-Picher Industries, Inc. v. Balbos*, 326 Md. 179 (1992) (citing *State v. Feldstein*, 207 Md. 20 (1955); *State v. Consol. Gas, Elec. Light & Power Co. of Baltimore*, 126 A. 105 (1924); *Flaccomio v. Eysink*, 129 Md. 367 (1916)); *id*. at 11 n.11 (citing *ACandS, Inc. v. Abate*, 710 A.2d 944 (Md. Ct. Spec. App. 1998), *abrogated on other grounds by John Crane, Inc. v. Scribner*, 800 A.2d 727 (Md. 2002) (quoting and discussing *Eagle-Picher Indus*.).  These cases stand for the proposition that "when a seller or other nonmanufacturing supplier is nothing more than a conduit between a manufacturer and a customer, the retailer ordinarily has no duty in negligence to discover the defects or dangers of a particular product." *Eagle-Picher Indus*., 326 Md. at 202.  But, again, the City does not allege the Maryland-Based Store Brand Defendants are mere "dealers" or "conduits," and therefore these cases are irrelevant to this Court's decision.

[34] *See* Mot. at 13-14 & n.19 (distinguishing cases).

Moreover, Defendants' claim that no Maryland-Based Store Brand Defendant "design[ed], manufacture[d], or label[ed] any ranitidine products"[35] is inaccurate. The two Maryland-based ShopRite defendants participated in the labeling of their store-brand ranitidine products through a cooperative. According to the drug facts and label for ShopRite's Acid Reducer ranitidine tablets, Defendant Wakefern Food Corporation ("Wakefern"), the wholesale purchasing and distributing cooperative for the two ShopRite defendants, is the labeler and the distributor of ShopRite's ranitidine products. "To provide goods at competitive wholesale prices for its member stores, the co-op [Wakefern] purchases foods and other items both at home and abroad and distributes them from its warehouses in New Jersey, where it maintains its corporate headquarters. … Wakefern distributes goods, some packaged under its own label, to its member stores. … Wakefern also offers centralized services to its member stores, including advertising, group insurance, and marketing."[36] "All ShopRite grocery companies [including the two ShopRite stores named as defendants here] are Wakefern members and, regardless of the number of stores each owns, they all have an equal voice in the governance of the cooperative."[37]

## IV. THE CITY IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES AND COSTS DUE TO DEFENDANTS' INSISTENCE ON UNNECESSARY MOTION PRACTICE

The City is entitled to an award of attorney's fees and costs because Defendants did not have an "objectively reasonable" basis for continuing to object to the City's Motion after this

---

[35] Opp. at 11 & Ex. A ¶¶ 7, 8, 10, Ex. B ¶ 7, 8, 10.

[36] Wakefern Food Corporation – Company Profile, Information, Business Description, History, Background Information, available at https://www.referenceforbusiness.com/history2/45/Wakefern-Food-Corporation.html, last visited Mar. 29, 2021.

[37] *Id*.

Court rejected the bases on which Defendants removed the City's case.[38] As explained in the City's Motion, after this Court, in this very litigation, rejected the bases on which Defendants removed the City's case (substantial federal question jurisdiction and diversity jurisdiction based on alleged fraudulent joinder), the City gave Defendants the opportunity to stipulate to remand this action to Maryland state court. Nevertheless, Defendants insisted on going forward with their meritless fraudulent joinder argument.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons and the reasons stated in the Motion, the City respectfully requests that this Court promptly remand the action to the Circuit Court of Maryland for Baltimore City. Defendants' removal depends entirely on fundamental mischaracterizations of Baltimore's Complaint, the facts and claims asserted, and controlling law. Because Defendants have unnecessarily caused this action to remain in federal court after this Court had already rejected the grounds for removal at issue here, and refused the opportunity to avoid further motion practice, the City respectfully seeks an award of attorneys' fees and costs associated with Defendants' removal and this motion practice, both in recompense for the unnecessary expenditure of time and money and as a deterrent to Defendants' improper removal of future actions.

---

[38] *See* Mot. § IV; *see also Bujanowski v. Kocontes*, 359 F. App'x 112, 113 (11th Cir. 2009).

Dated: March 31, 2021

RESPECTFULLY SUBMITTED,

**GRANT & EISENHOFER P.A.**

  /s/ Kyle J. McGee
Kyle J. McGee (DE # 5558)
kmcgee@gelaw.com
Laina M. Herbert (DE # 4717)
lherbert@gelaw.com
123 S. Justison Street
Wilmington, DE 19801
Tel.: (302) 622-7000
Fax.: (302) 622-7100

**BALTIMORE CITY DEPARTMENT OF LAW**
James L. Shea (No. 00142)
City Solicitor
James.Shea@baltimorecity.gov
Sara Gross (No. 27704)
Chief Solicitor, Litigation
Sara.Gross@baltimorecity.gov
100 N. Holiday Street, Suite 109
Baltimore, MD 21202
Tel.: (410) 396-3947
Fax: (410) 547-1025

**GORDON WOLF & CARNEY, CHTD.**
Richard S. Gordon (No. 06882)
rgordon@gwcfirm.com
Martin Wolf (No. 09425)
mwolf@gwcfirm.com
Benjamin H. Carney (No. 27984)
bcarney@gwcfirm.com
100 W. Pennsylvania Avenue, Suite 100
Townson, MD 21204
Tel. (410) 825-2300
Fax.: (410) 825-0066

*Attorneys for Plaintiff Mayor & City Council of Baltimore*

11

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2021, I filed the foregoing **The Mayor and City Council of Baltimore's Reply in Support of Its Motion to Remand** and this **Certificate of Service** electronically through the CM/ECF system, which will send notice of filing to all CM/ECF participants.

Dated:  March 31, 2021 RESPECTFULLY SUBMITTED,

**GRANT & EISENHOFER P.A.**

 /s/ Kyle J. McGee
Kyle J. McGee (DE # 5558)
kmcgee@gelaw.com
Laina M. Herbert (DE # 4717)
lherbert@gelaw.com
123 S. Justison Street
Wilmington, DE 19801
Tel.: (302) 622-7000
Fax.: (302) 622-7100

*Attorneys for Plaintiff Mayor & City Council of Baltimore*

12