# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

IN RE: ZANTAC (RANITIDINE)　　　　　　　　　　　MDL NO. 2924
PRODUCTS LIABILITY　　　　　　　　　　　　　　　　20-MD-2924
LITIGATION

　　　　　　　　　　　　　　　　　　　　JUDGE ROBIN L. ROSENBERG
　　　　　　　　　　　　　MAGISTRATE JUDGE BRUCE E. REINHART


_____/

**THIS DOCUMENT RELATES TO: ALL ACTIONS**




**PLAINTIFFS' OPPOSITION TO BRAND-NAME MANUFACTURER DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' INNOVATOR-LIABILITY CLAIMS (COUNTS
XII AND XIII) IN AMENDED MASTER PERSONAL INJURY COMPLAINT**




DATED:　April 23, 2021

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ............................................................................................................1

FACTUAL BACKGROUND ............................................................................................3

PROCEDURAL HISTORY ...............................................................................................5

ARGUMENT .....................................................................................................................7

     I.     Under the Rule Laid Down in *Ford Motor*, this Court Has
Personal Jurisdiction Over These Claims .......................................................7

          A.  Ford Motor Made Clear That in-Forum Contacts Need Not
Be the But-For Cause of a Plaintiff's Injuries .........................................7

          B.  A Court Has Personal Jurisdiction If the Defendant Conducted
Activities in the Forum and Those Activities "Relate to" the
Plaintiff's Claims ....................................................................................8

          C.  These Claims Relate to Defendants' Purposeful Contacts with
California and Massachusetts .................................................................9

          D.  It Is Irrelevant That Defendants Did Not Sell Generic Ranitidine
in California and Massachusetts ...........................................................11

          E.  Defendants Are Wrong That They Could Not Have Foreseen
Litigation in California and Massachusetts...........................................13

     II.    Other State Courts Can Constitutionally Apply the Laws of California
and Massachusetts.........................................................................................15

     III.    Plaintiffs Have Stated a Claim Against Patheon............................................17

CONCLUSION................................................................................................................19

i

## TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Am. Charities for Reasonable Fundraising Regul., Inc. v. Pinellas Cty.,*
   221 F.3d 1211 (11th Cir. 2000) ........................................................................ 2, 16

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.,*
   137 S.Ct. 1773 (2017) ................................................................................................. 1

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985) .................................................................................................... 6

*Carruth v. Michot,*
   No. A-15-CA-189, 2015 WL 6506550 (W.D. Tex. Oct. 26, 2015) .................................. 18, 19

*Exhibit Icons, LLC v. XP Cos., LLC,*
   609 F. Supp. 2d 1282 (S.D. Fla. 2009) ...................................................................... 12

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,*
   141 S. Ct. 1017 (2021) ..................................................................................... *passim*

*Gerling Glob. Reinsurance Corp. of Am. v. Gallagher,*
   267 F.3d 1228 (11th Cir. 2001) ............................................................................ 16, 17

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
   564 U.S. 915 (2011) .................................................................................................. 18

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
   466 U.S. 408 (1984) .................................................................................................. 12

*Hellenic Lines Ltd. v. Rhoditis,*
   398 U.S. 306 (1970) .................................................................................................. 16

*Keeton v. Hustler Mag., Inc.,*
   465 U.S. 770 (1984) .................................................................................................. 14

*Oldfield v. Pueblo De Bahia Lora, S.A.,*
   558 F.3d 1210 (11th Cir. 2009) ................................................................................ 6, 7

*Purchasing Power, LLC v. Bluestem Brands, Inc.,*
   851 F.3d 1218 (11th Cir. 2017) ................................................................................ 18

*Rafferty v. Merck & Co.,*
   92 N.E.3d 1205 (Mass. 2018) ........................................................................... *passim*

*Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.,*
   374 F.3d 1020 (11th Cir. 2004) ................................................................................ 18

*Stephens v. Dep't of Health & Hum. Servs.*,
　901 F.2d 1571 (11th Cir. 1990) .......................................................................... 4, 17

*T.H. v. Novartis Pharms. Corp.*,
　407 P.3d 18 (Cal. 2017) .................................................................................. *passim*

*Tucker v. Hous. Auth.*,
　507 F. Supp. 2d 1240 (N.D. Ala. 2006) ............................................................... 5, 6

*Waite v. All Acquisition Corp.*,
　901 F.3d 1307 (11th Cir. 2018) .......................................................................... 6, 7

*Walden v. Fiore*,
　571 U.S. 277 (2014) .............................................................................................. 1

*Watson v. Lockette*,
　379 Fed. App'x 822 (11th Cir. May 12, 2010) ........................................................ 5

*Wendt v. Horowitz*,
　822 So.2d 1252 (Fla. 2002) ................................................................................. 12

*Young & Vann Supply Co. v. Gulf, F. & A. Ry. Co.*,
　5 F.2d 421 (5th Cir. 1925) ..................................................................................... 5

Plaintiffs submit the following memorandum of law in opposition to Brand-Name Manufacturers' Motion to Dismiss Innovator-Liability Claims.  *See* D.E. 3109 (Innovator Mot.).

## INTRODUCTION

Defendants argue that "the innovator-liability claims brought under California and Massachusetts law fail for lack of personal jurisdiction."  Innovator Mot. at 2.  The crux of their argument is that Plaintiffs failed to allege facts showing that Defendants' "in-state activities were a but-for cause of [Plaintiffs'] alleged injuries."  *Id.* at 5.  That is no longer the controlling test for personal jurisdiction, however, as the Supreme Court unequivocally announced not 24 hours after Defendants filed their brief.  *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).  "None of our precedents," the Court held, "has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do."  *Id.* at 1026.  To the contrary, the "causation-only approach" advanced by Ford (and these Defendants) "finds no support in [the] Court's requirement of a 'connection' between a plaintiff's suit and a defendant's activities."  *Id.*

Instead, the Supreme Court reaffirmed that the proper jurisdictional test is far more permissive.  There is personal jurisdiction, the Court held, if the defendant "deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State," *id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)), so long as those contacts at least "relate to" the plaintiff's claim *in some way*.  *Id.* at 1026 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S.Ct. 1773, 1779 (2017)); *see also id.* (holding that "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation") (internal quotation marks omitted).

Under that rule, there is no question that this Court has personal jurisdiction over these Defendants. Plaintiffs detail numerous examples of Defendants' attempts to "exploit" the California and Massachusetts markets via the advertising, marketing, and sale of branded Zantac in those two states. *See* Amended Master Personal Injury Complaint (AMPIC) ¶¶ 228–31. And those contacts certainly "relate to" the claims at issue here. Although Defendants describe these claims as "innovator liability" claims, as this Court has recognized, the claims simply seek to hold Defendants accountable for misrepresentations about the safety profile of Zantac—representations that the generic manufacturers of ranitidine were forced to rely upon to the detriment of consumers. *See* Order Granting Brand-Name Manufacturer Defendants' Motion to Dismiss Plaintiffs' Innovator-Liability Claim (Innovator Order) at 5 (noting that it is "undisputed" that California and Massachusetts recognize these claims, and that they are based on negligent-misrepresentation principles found in the Restatement); *T.H. v. Novartis Pharms. Corp.*, 407 P.3d 18, 27 (Cal. 2017); *Rafferty v. Merck & Co.*, 92 N.E.3d 1205, 1219 (Mass. 2018). Defendants made those representations in California and Massachusetts, specifically by advertising, marketing, and selling Zantac in those states with no warning about cancer or NDMA in the label. *See* AMPIC ¶¶ 228–31, 2668–2721. As a result, Defendants' in-forum contacts are the precise conduct giving rise to these claims. At a bare minimum, these contacts certainly "relate to" the claims. *Ford Motor*, 141 S. Ct. at 1025. And that is all *Ford Motor* requires.

Defendants also argue that, under legislative-jurisdiction principles, the Due Process Clause forbids "courts of other states" from applying "California and Massachusetts law" even if those courts have *general* jurisdiction over Defendants. Innovator Mot. at 10. But for a court to constitutionally apply the law of another state, there needs only be "at least some minimal contact between a State and the regulated subject." *Am. Charities for Reasonable Fundraising Regul.,*

2

*Inc. v. Pinellas Cty.*, 221 F.3d 1211, 1216 (11th Cir. 2000).  And the "regulated subject" here consists of Defendants' misrepresentations about Zantac, which they made in California and Massachusetts.  *See* AMPIC ¶¶ 228–31, 2668–92.  That is enough for any state court to constitutionally apply the law of California or Massachusetts if required by that state's choice-of-law rules.

Moreover, this Court previously held that legislative and personal jurisdiction rise and fall together.  Innovator Order at 22 ("[T]he same personal jurisdictional analyses apply to Defendants' due process arguments directed to legislative jurisdiction"); *see also* Innovator Mot. at 10 ("[A] state's law cannot apply to a defendant's out-of-state conduct if the state could not assert personal jurisdiction over that defendant in one of its own courts.").  As explained above (and in more detail below), Defendants had enough contacts with California and Massachusetts to support personal jurisdiction over these claims.  And that means other states' courts could constitutionally select California and Massachusetts law as well.

Finally, one of the Defendants (Patheon Manufacturing Services) makes a last-ditch effort to escape this claim on other grounds, namely that it simply "manufactured the finished drug product" for another Defendant (Sanofi) and therefore did not "control the contents of the [ranitidine] label."  Innovator Mot. at 11.  But the complaint actually alleges that "Sanofi," a term defined to include Patheon, AMPIC ¶ 39, "controlled the OTC Zantac NDAs."  AMPIC ¶ 254.  For purposes of a motion to dismiss, that is enough to hold Patheon liable for the negligent misrepresentations contained in the Zantac label.  Defendants' motion should be denied.

## FACTUAL BACKGROUND

The allegations of the AMPIC demonstrate activity engaged in by the Brand-name manufacturers occurring in California and Massachusetts that relate to Plaintiffs' claims.  The parties are bound by the jurisdictional and factual allegations of the complaint.  *See* AMPIC ¶¶

228–232.  And all reasonable inferences must be drawn in Plaintiffs' favor.  *See Stephens v. Dep't of Health & Hum. Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

Plaintiffs set out a plethora of activity demonstrating a connection between Defendants' misrepresentations and the forum states.  In both California and Massachusetts, Defendants 1) employed salespersons "to educate physicians about the Zantac label and promote prescriptions of the drug"; 2) conducted market research; 3) contracted with social media outreach firms for targeted advertising and marketing in the forum states; 4) conducted medical studies to influence the medical profession; 5) advertised on the internet, television, radio, and print to promote the sale of ranitidine products; 6) contracted with retailers and wholesalers to expand the Zantac business; and 7) targeted the California Medical Formulary and Medicaid Department to obtain access to the lucrative market.  AMPIC ¶ 232.

Plaintiffs also allege that Defendants' knowledge about generic freeriding made it foreseeable that their sales and marketing efforts in the forum states would encourage generic usage.  On that point, the AMPIC alleges as follows:

> Brand-Name Defendants are well aware that (i) generic manufacturers do not engage in much, if any, sales and marketing activity directed toward consumers; (ii) that most third-party payors encourage or require generic use once generics enter the market; (iii) that generic manufacturers' product labels must match the branded label in many material respects; and (iv) that generic manufacturers—offering bioequivalent medicines with the same safety and efficacy profile—free ride off of the sales and marketing activities of brand-name manufacturers.  It was thus entirely foreseeable that the sales and marketing activities of Brand-Name Defendants in California and Massachusetts would cause providers and consumers in California and Massachusetts to switch to generic ranitidine once generic manufacturers entered the market.

AMPIC ¶ 232(g).  Finally, the AMPIC alleges that the Brand-Name Manufacturer Defendants were aware that their liability exposure to Innovator Liability claims existed because of the

common law principles espoused in § 311 of the Restatement (Second) of Torts. AMPIC ¶¶ 2670, 2695.

Moreover, Defendants have already admitted that they "purposely availed themselves of the privilege of selling Zantac in Plaintiffs' home States and [that] the claims arise out of that activity," such that specific personal jurisdiction can attach to them for the sale of their own products. AMPIC ¶ 228 (quoting Brand-Name Manufacturer Defendants' Motion to Dismiss Plaintiffs' Innovator-Liability Claims, D.E. 1585 at 10–11).[1] These are the same activities that foreseeably led to the sale of generic ranitidine. *See* AMPIC ¶ 229. As the AMPIC states: "The same sales and marketing activities that spur consumption of branded Zantac in California and Massachusetts also spur consumption of generic ranitidine in California and Massachusetts. In other words, the Brand-Name Manufacturer Defendants sent sales and marketing professionals to California and Massachusetts providers to persuade them to prescribe Zantac. They sent sales and marketing professionals to California and Massachusetts third-party payors to persuade them to cover prescription Zantac. And they marketed to California and Massachusetts to encourage them to purchase OTC Zantac." AMPIC ¶ 231.

As discussed below, these allegations amply satisfy the minimum contacts required for personal jurisdiction under *Ford Motor*.

### PROCEDURAL HISTORY

In its previous order, the Court held that Plaintiffs "failed to allege a prima facie case of specific personal jurisdiction" with respect to the so-called innovator-liability claims. Innovator

---

[1] The law in the Eleventh Circuit is clear: a court may consider a statement in a party's brief as an admission of fact. *See Watson v. Lockette*, 379 Fed. App'x 822, 825 (11th Cir. 2010) (citing *Young & Vann Supply Co. v. Gulf, F. & A. Ry. Co.*, 5 F.2d 421, 423 (5th Cir. 1925)); *Tucker v. Hous. Auth.*, 507 F. Supp. 2d 1240, 1275 (N.D. Ala. 2006) ("[T]his court can appropriately treat even unsworn statements in motions and briefs as binding admissions."), *aff'd*, 229 Fed. App'x 820 (11th Cir. 2007).

Order at 20.  In reaching that conclusion, the Court correctly recognized that "[s]pecific personal jurisdiction over a defendant is established when a plaintiff's claims arise out of or relate to the defendant's contacts with the forum, the defendant purposefully availed itself of the privilege of conducting activities in the forum, and the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice."  Innovator Order at 17 (ultimately citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).  But in defining what it means to "arise out of" or "relate to," the Court held that "a tort arise[s] out of or relate[s] to the defendant's activity in a state only if the activity is a but-for cause of the tort."  Innovator Order at 17 (quoting *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1314 (11th Cir. 2018) and *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1223 (11th Cir. 2009)).

Applying that test to this case, the Court stated that "[t]o establish specific personal jurisdiction based on Defendants' activities in a particular state, Plaintiffs must allege that those activities were the 'but-for' cause of Plaintiffs' ingestion of generic ranitidine products and injuries."  Innovator Order at 20 (citing *Waite*, 901 F.3d at 1314).  As a result, the Court held that Plaintiffs had not established personal jurisdiction, because "Plaintiffs fail[ed] to allege specific, non-conclusory facts demonstrating that any of Defendants' actions, including marketing and labeling decisions, took place in . . . California or Massachusetts"—necessary facts, in the Court's view, for demonstrating that Defendants' in-forum contacts were the but-for cause of Plaintiffs' injuries.  Innovator Order at 20.  The Court required plaintiffs to replead to address Defendants' activities in those states.  Plaintiffs were told to "allege that those activities were the 'but-for' cause of Plaintiffs' ingestion of generic ranitidine products and injuries."  *Id.*[2]

---

[2] The Court's recitation of the "but for" test for personal jurisdiction was undoubtedly correct in light of then-prevailing Eleventh Circuit law.  *See Waite*, 901 F.3d at 1314; *Oldfield*, 558 F.3d at 1223.  But after this Court's ruling, that law has now been entirely overruled by *Ford*

With respect to the claims against Patheon, the Court properly recognized that Patheon is "a brand-name manufacturer subject to general personal jurisdiction in Massachusetts." Innovator Order at 23. Thus, the Court held that "Plaintiffs have met their burden to allege a basis for personal jurisdiction" against Patheon. *Id.* The Court therefore declined to dismiss the claims brought against Patheon in Massachusetts on either personal- or legislative-jurisdiction grounds. *See id.* at 24 ("All claims brought by Plaintiffs against Defendants, *with the exception of Patheon Manufacturing Services, LLC*, in Massachusetts courts fail for lack of personal jurisdiction and are [dismissed without prejudice].") (emphasis added).

## ARGUMENT

I.  **Under the Rule Laid Down in *Ford Motor*, this Court Has Personal Jurisdiction Over These Claims.**

   A.  **Ford Motor Made Clear That in-Forum Contacts Need Not Be the But-For Cause of a Plaintiff's Injuries.**

In *Ford Motor*, a products-liability case involving defective cars, Ford "did substantial business in the [forum] State—among other things, advertising, selling, and servicing the model of vehicle the suit claims is defective." *Ford Motor*, 141 S. Ct. at 1022. Nevertheless, Ford argued "that jurisdiction [was] improper because the *particular car* involved in the crash was not first sold in the forum State, nor was it designed or manufactured there." *Id.* In other words, Ford argued for a personal-jurisdiction test based on but-for causation. Because Ford did not design, manufacture, and sell the *particular car* that had injured the plaintiffs in the forum state, Ford argued, the plaintiffs would *still* have been injured even if Ford did not do "substantial business"—

---

*Motor*. *Compare Waite*, 901 F.3d at 1314 (holding that there is personal jurisdiction only if defendant's in-forum activity "is a 'but for' cause of the tort") and *Oldfield*, 558 F.3d at 1222–23 ("Necessarily, the [defendant's in-forum] contact must be a 'but-for' cause of the tort . . . .") *with Ford Motor*, 141 S. Ct. at 1025 ("None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do.").

7

the advertising, selling, and so on—in the forum state.  And thus, in Ford's view, there was no personal jurisdiction over the claims.  The Court rejected that argument, holding that "[n]one of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do."  *Id.* at 1026.

### B. A Court Has Personal Jurisdiction If the Defendant Conducted Activities in the Forum and Those Activities "Relate to" the Plaintiff's Claims.

Instead, the Court held, it is enough that a defendant takes "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State," which Ford did by marketing and selling its cars in the forum state.  *Id.* at 1024; *see also id.* at 1028 ("By every means imaginable—among them, billboards, TV and radio spots, print ads, and direct mail—Ford urges [residents of the forum state] to buy its vehicles.").  To be sure, not just *any* contact with a state is enough to support personal jurisdiction for *any* claim.  The claim must still "arise out of *or relate to* the defendant's contacts with the forum."  *Id.* at 1025 (emphasis added).  But a claim can "relate to" a defendant's forum contacts even "without a causal showing" demonstrating that a plaintiff would not have been injured but-for those contacts.  *Id.* at 1026.  So long as there is at least some "affiliation between the forum and the underlying controversy," a defendant cannot complain that allowing a court to exercise personal jurisdiction over it "offend[s] traditional notions of fair play and substantial justice."  *Id.*

After all, the Court held, if a defendant does not wish to be sued in a certain state, it can "structure [its] primary conduct to lessen or avoid exposure to a given State's courts," *id.* at 1025, for example by declining to do any business in that state.  But when a company "exercises the privilege of conducting activities within a state—thus enjoy[ing] the benefits and protection of [its] laws—the State may hold the company to account for related misconduct."  *Id.*

### C.    These Claims Relate to Defendants' Purposeful Contacts with California and Massachusetts.

Under those principles, the Court here has personal jurisdiction over these claims.  As in *Ford Motor*, there is no question that Defendants "purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State." *Ford Motor*, 141 S. Ct. at 1024.  For example, Defendants "targeted the California and Massachusetts markets by" employing a "large salesforce of salespersons in both California and Massachusetts to educate physicians about the Zantac label and promote prescriptions of the drug," "[c]onducting research and studying market share and consumer purchasing of branded Zantac and generic ranitidine . . . in California and Massachusetts," "[c]ontracting with social media outreach firms to target advertising and marketing in California and Massachusetts," "[c]onducting medical studies, scientific seminars and/or attempting to influence the medical profession" in California and Massachusetts, "[r]egularly and systemically advertising" Zantac in California and Massachusetts, and "[c]ontracting with retailers and wholesalers" in Massachusetts.  AMPIC ¶ 232.  In these numerous ways, and others detailed in the AMPIC, Defendants "exercise[d] the privilege of conducting activities within" California and Massachusetts—thus "enjoy[ing] the benefits and protection of [their] laws." *Ford Motor*, 141 S. Ct. at 1025.

The only remaining question is whether these claims at least "relate to" those contacts with Massachusetts and California.  *Id.* at 1025.  Given the nature of these claims, there is no question that they do.  Under California and Massachusetts law, so-called "innovator liability" claims are not products liability claims.  *See Rafferty*, 92 N.E.3d at 1219  ("[T]his is the rare (perhaps the only) type of case involving a manufactured product where the requirements of general negligence may be satisfied even where the requirements of products liability are not.").  Instead, they are claims alleging negligent misrepresentation—that a defendant "negligently [gave] false

information to another" and therefore "is subject to liability for physical harm caused [to third parties] by action taken by the other in reasonable reliance upon such information." *T.H.*, 407 P.3d at 27 (quoting the Restatement § 311(1)(b)); *see also* AMPIC ¶ 2670 ("The common law has long recognized that one who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results to the other, or to such third persons as the actor should expect to be put in peril by the action taken.  This principle is stated in Section 311 of the Restatement (Second) of Torts.").

That is why the AMPIC explicitly refers to these claims as "Count XII: Negligent Misrepresentation," AMPIC ¶ 2668, and "Count XIII: Reckless Misrepresentation," AMPIC ¶ 2693.  Via these claims, Plaintiffs are not seeking to hold Defendants accountable for any "place[ment] [of] the generic products that Plaintiffs consumed into the stream of commerce." Innovator Mot. at 4.  For that is not the conduct forming the basis of these claims.  Instead, Plaintiffs are seeking to hold Defendants accountable for misrepresentations they made about Zantac—representations that failed to inform doctors and patients that ranitidine contains NDMA and causes cancer.  *See* AMPIC ¶¶ 2684–85; 2709–10 ("Brand-Name Manufacturer Defendants represented to Plaintiffs via the media, advertising, website, social media, packaging, and promotions, among other misrepresentations described herein that . . . ranitidine-containing products were both safe and effective for the lifetime of the product, [that] consumption of ranitidine-containing products would not result in excessive amounts of NDMA being formed in their bodies; [and that] ranitidine-containing products were safe for their intended use.").  In turn, those misrepresentations foreseeably led to *generic* consumers being misled about the cancer risk from *generic* ranitidine.  *See T.H.*, 407 P.3d at 30 (holding that it is "entirely foreseeable that the

warnings included (or not included) on the brand-name drug label would influence the dispensing of the generic drug"); *Rafferty*, 92 N.E.3d at 1215 ("[I]t is not merely foreseeable but certain that the warning label provided by the brand-name manufacturer will be identical to the warning label provided by the generic manufacturer, and moreover that it will be relied on, not only by users of its own product, but also by users of the generic product."); AMPIC ¶ 2687 ("The Brand-Name Manufacturer Defendants, as the only manufacturers with the ability under FDA regulations to initiate labeling changes to the warning and precautions section of the label, had a duty to accurately provide this information to all users of drugs marketed under the FDA-approved label, including the Plaintiff users of generic equivalents.").  And those misrepresentations occurred in California and Massachusetts.  *See* AMPIC ¶ 232 (detailing the myriad statements about Zantac that were distributed in those states).  As a result, the claims at a bare minimum "relate to" Defendants' contacts with those states, which means this Court has personal jurisdiction over those claims.

> **D.    It Is Irrelevant That Defendants Did Not Sell Generic Ranitidine in California and Massachusetts.**

To be sure, the individual *products* sold by these Defendants in California and Massachusetts were not the ones that caused the injuries relevant for this claim, as Defendants repeatedly point out.  *See* Innovator Mot. at 4 ("The Brand Name Manufacturers' efforts to sell their own products in California and Massachusetts cannot subject them to jurisdiction in those states in connection with claims resulting from the ingestion of competing generic products from which they derive no benefit."); *id.* (stating that Defendants "did not place the generic products that Plaintiffs consumed into the stream of commerce").  But that does not matter for two reasons.

To begin with, the exact same thing was true in *Ford Motor*.  The specific products that Ford sold in the forum did not injure the plaintiffs.  *See Ford Motor*, 141 S. Ct. at 1023 (stating

that "Ford had designed the [cars] [outside the forum state] . . . had manufactured the cars [outside the forum state] [and had] originally sold the cars at issue outside the forum States").  And yet the Court still concluded that personal jurisdiction was proper based on Ford's *other* contacts with the forum state.  *See id.* at 1028 ("Ford had systematically served a market in [the forum states] for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States.  So there is a strong 'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction.") (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

In addition, the claims at issue here are not product-liability claims, contrary to Defendants' misguided understanding.  *See* Innovator Mot. at 2 (describing the standard in terms used in "any traditional product-liability case").  These claims are instead negligent misrepresentation claims, as the state-court cases make clear.  *T.H.*, 407 P.3d at 28; *Rafferty*, 92 N.E.3d at 1219.  As a result, Plaintiffs' misrepresentation claims are *not* based on particular products the defendants put into the stream of commerce.  What Plaintiffs' claims relate to are the *misrepresentations* associated with ranitidine-containing products.  It is contacts related to those *misrepresentations* that control the jurisdictional inquiry.  *See Exhibit Icons, LLC v. XP Cos., LLC*, 609 F. Supp. 2d 1282, 1297 (S.D. Fla. 2009) ("[N]egligent misrepresentation [claims] are torts that can establish personal jurisdiction" especially "where an out-of-state defendant [makes] 'telephonic, electronic, or written communications into [the forum]' and the cause of action arose from those communications") (quoting *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002)).  Plaintiffs are not holding Defendants responsible for how another company's product was manufactured; it is the false information that Defendants *exclusively* are responsible for that makes them liable for the physical harm caused to Plaintiffs who used generic products.  *See T.H.*, 407 P.3d at 29; *Rafferty,*

92 N.E.3d at 1215.  And Plaintiffs make chapter-and-verse allegations that Defendants made these misrepresentations—*i.e.*, distributed this false information—in California and Massachusetts, leaving no question that the claims at least "relate to" Defendants' contacts with those states.  *Ford Motor*, 141 S. Ct. at 1026.

In the end, by "conducting so much business in [Massachusetts] and [California], [Defendants] enjoy[ed] the benefits and protection of [their] laws—the enforcement of contracts, the defense of property, the resulting formation of effective markets."  *Id.* at 1030.  Those benefits give rise to "reciprocal obligations for the Defendants under state law," notably the obligation not to make negligent misrepresentations; breaching those obligations "relates to" the negligent misrepresentation claims, allowing California and Massachusetts courts to hold Defendants accountable consistent with the Constitution.  *Id.*

## E.     Defendants Are Wrong That They Could Not Have Foreseen Litigation in California and Massachusetts.

Aside from arguing that Plaintiffs must allege that in-forum conduct is a "but for cause of Plaintiffs' ingestion of generic ranitidine products," Innovator Mot. at 1—an argument explicitly foreclosed by *Ford Motor*, as explained above—Defendants' only other argument is that the claims were not foreseeable to them.  In its previous order, this Court held that Plaintiffs needed to allege facts showing "that Defendants should have foreseen that their activities regarding their brand-name products . . . could expose them to liability for injuries sustained from the ingestion of generic ranitidine products."  Innovator Order at 20.  And according to Defendants, they "could not have foreseen that their efforts to promote their own products in California and Massachusetts would expose them to liability for injuries suffered by consumers of their competitors' products."  Innovator Mot. at 7; *see id.* at 1 ("Plaintiffs also do not (and could not) allege that the Brand Name Manufacturers should have foreseen that, by promoting their own products, they were exposing

themselves to liability for defects in the products of generic competitors.").

There are at least two problems with that argument. For starters, the personal-jurisdiction rule laid down in *Ford Motor* in no way turned on whether Ford could have foreseen being sued in the relevant forum states for *the specific claims* that Plaintiffs brought. After all, those claims would have arisen even if Ford did nothing at all in the forum state, and Ford argued vigorously that it could not have foreseen those plaintiffs' *specific claims*, because its in-forum activities "[did] not sufficiently connect to the suits." *Ford Motor*, 141 S. Ct. at 1026. Nevertheless, the Court rejected Ford's argument because when "a corporation has continuously and deliberately exploited [a State's] market, it must reasonably anticipate being haled into [that State's] court[s] to defend actions based on products causing injury there." *Id.* at 1027 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 780 (1984)). The only difference between that case and this one is that the claims here are not based on Defendants' *products* causing injury in the forum state, but rather on their negligent *misrepresentations* doing so.

Moreover, it is simply untrue that Defendants could not have foreseen being haled into court for these specific claims. As sophisticated parties, Defendants and their lawyers are no doubt aware of the Restatement of Torts, which dates from 1965, and which states that "[o]ne who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results . . . to such third persons as the actor should expect to be put in peril by the action taken." *T.H.*, 407 P.3d at 27 (Cal. 2017) (quoting the Restatement). So it was entirely foreseeable that Defendants could be held liable for making such statements in California and Massachusetts.

At bottom, that is why Defendants' "quid pro quo" argument is entirely non-responsive. In Defendants' view, because they "received no benefit from the sale and consumption of generic

ranitidine in California and Massachusetts . . . the 'quid pro quo' necessary to support specific jurisdiction is absent."  Innovator Mot. at 8.  But that simply misunderstands the nature of this claim.  A defendant who spews falsehoods for sport, with no expectation of any benefit, is still liable for his misdeeds.  Regardless, Defendants are not liable because they *sold* generic ranitidine in California and Massachusetts.  As branded manufacturers, they obviously did not do this.  They are liable instead because *they made misrepresentations* about ranitidine in those states, misrepresentations in support of their branded versions of ranitidine that took the form of marketing, advertisements, and sales that distributed the misleading labels for that drug in those states.  There is no question that they received substantial "benefit" in those states as a result of that marketing, those advertisements, and those sales.  The *quo* to that *quid* is that Defendants now have to answer for the damage caused to third parties by their misrepresentations in those states.

## II.     Other State Courts Can Constitutionally Apply the Laws of California and Massachusetts.

Defendants also argue that California and Massachusetts lack legislative jurisdiction over Defendants with respect to Plaintiffs' innovator-liability claims.  In their view, the Due Process Clause forbids courts in other states to apply California and Massachusetts law to Plaintiffs' claims *even if* those courts have "general jurisdiction over [Defendants]."  Innovator Mot. at 1; *id.* at 10. Not so.  It is notable that Defendants are not arguing that courts in other states might choose not to apply California or Massachusetts law based on that state's choice-of-law principles.  Instead, they are making the much more sweeping argument that it would be *unconstitutional* for *their home-state courts* to apply California or Massachusetts law *even if* those laws were the ones the *home-state courts'* choice-of-law rules directed them to apply.  Understandably, state courts are limited in this way only in a narrow set of circumstances.  So long as there is "at least some *minimal contact* between a State and the regulated subject," that state's law can be constitutionally applied

in other courts.  *See Am. Charities*, 221 F.3d at 1216 (quoting *Hellenic Lines Ltd. v. Rhoditis*, 398

U.S. 306, 308 n.2 (1970) (Harlan, J., dissenting)).  Defendants concede as much in their motion.

Innovator Mot. at 10 (quoting *Am. Charities*, 2213 F.3d at 1216).

      Here, the "regulated subject" is the series of misrepresentations that Defendants made

about Zantac when advertising, marketing, and selling Zantac.  *See* AMPIC ¶ 2684 (describing the

various misrepresentations that Defendants made "via the media, advertising, website, social

media, packaging, and promotions, among other misrepresentations").  And Defendants made

those misrepresentations in California and Massachusetts.  *See* AMPIC ¶ 232 (detailing numerous

specific examples of Defendants' advertising, marketing, and sales efforts in those states).  In

doing so, Defendants "purposefully [availed themselves] of the privilege of conducting activities

within" California and Massachusetts.  *Gerling Glob. Reinsurance Corp. of Am. v. Gallagher*, 267

F.3d 1228, 1235 (11th Cir. 2001).  As a result, there is at least "minimal contact" between "the

regulated subject matter" and the states of California and Massachusetts.  That means a state-court

exercising general jurisdiction over Defendants can constitutionally choose to apply the law of

California or Massachusetts if doing so is proper under that state's choice-of-law rules.

      Indeed, Defendants concede (and this Court previously held) that legislative and personal

jurisdiction rise and fall together.  *See* Innovator Mot. at 10 ("[A] state's law cannot apply to a

defendant's out-of-state conduct if the state could not assert personal jurisdiction over that

defendant in one of its own courts."); Innovator Order at 22 ("[T]he same personal jurisdictional

analyses apply to Defendants' due process arguments directed to legislative jurisdiction."); *id.* at

22–23 ("For the same reasons that Plaintiffs failed to establish a prima facie case of specific

personal jurisdiction over Defendants in any state or territory, the Court similarly holds that

Plaintiffs have not established sufficient minimum contacts between Defendants and the states of

Massachusetts or California, such that neither state may apply their substantive law extraterritorially in accordance with the Due Process Clause."); *Gerling Glob.*, 267 F.3d at 1235 ("The inquiry into whether sufficient legislative jurisdiction exists is similar to that explored in determining sufficient minimum contacts for the purposes of assessing whether a court can exercise personal jurisdiction consistent with due process."); *id.* ("[J]udicial and legislative jurisdiction are determined pursuant to like guidelines.").  As explained above, California and Massachusetts courts could properly exercise personal jurisdiction over Defendants with respect to these claims.  *See supra*, Section I.  It follows that courts in other states could constitutionally choose to apply those states' laws as well.

III.    **Plaintiffs Have Stated a Claim Against Patheon.**

Patheon's primary argument has nothing to do with jurisdiction.  Instead, Patheon argues that "[t]he innovator-liability claims against Patheon . . . fail as a matter of law because the AMPIC does not allege that Patheon ever 'control[led] the contents of the label on [the] generic drug.'" Innovator Mot. at 11 (quoting *Rafferty*, 92 N.E.3d at 1219).  Because Patheon "simply manufactured the finished drug product" for Sanofi, Patheon argues, Patheon cannot be responsible for negligent misrepresentations made about Zantac on which the generic manufacturers relied.  *Id.* at 11.

Patheon is simply disputing the truth of the allegations in the complaint, something it cannot do on a motion to dismiss.  *See Stephens*, 901 F.2d at 1573 ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").  The complaint first defines the term "Sanofi" to include Patheon.  *See* AMPIC ¶ 39 ("Defendants Sanofi-Aventis U.S. LLC and Sanofi US Services Inc. are subsidiaries of Defendant Sanofi SA. Defendants *Patheon Manufacturing Services LLC* and Boehringer Ingelheim Promeco, S.A. de

17

C.V. packaged and manufactured the finished Zantac product for Sanofi.  *Collectively, these entities shall be referred to as "Sanofi*." (emphasis added)).  The complaint then goes on to allege that "Sanofi" "controlled the OTC Zantac NDAs and marketed, sold, and distributed Zantac in the United States from January 2017 until 2019 when it issued a global recall and ceased marketing, selling, and distributing OTC Zantac."  AMPIC ¶ 254.  As a result, contrary to Defendants' assertion, Plaintiffs *have* alleged that Patheon (as part of Sanofi) controlled the label for branded Zantac—and thus for generic ranitidine as well.  For purposes of a motion to dismiss, that is enough to state a claim against Patheon.

Patheon also makes a passing argument that Massachusetts might not have general jurisdiction over it.  Specifically, Patheon argues that "[w]hether the citizenship of [its sole member] Thermo Fisher Scientific, Inc. confers general jurisdiction over Patheon in Massachusetts is itself the subject of disputed law."  Innovator Mot. at 11 n.5 (citing *Carruth v. Michot*, No. A-15-CA-189, 2015 WL 6506550, at *7 (W.D. Tex. Oct. 26, 2015)).  But this Court has already rejected that argument, holding that "Patheon is a brand-name manufacturer subject to general personal jurisdiction in Massachusetts" and that "Plaintiffs have met their burden to allege a basis for personal jurisdiction" over Patheon as a result.  Innovator Order at 23.

Rightly so.  "The citizenship of an LLC is the citizenship of each member."  *Purchasing Power, LLC v. Bluestem Brands, Inc*., 851 F.3d 1218, 1221 (11th Cir. 2017); *see also Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("[A] limited liability company is a citizen of any state of which a member of the company is a citizen.").  And a state court has general jurisdiction over a defendant if it is "at home" in a state.  *Ford Motor*, 141 S. Ct. at 1024 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011)).  Patheon is a "limited liability company" whose "sole member," "Thermo Fisher

Scientific, Inc." has "its principal place of business in Massachusetts."  AMPIC ¶ 36.  As a result, Massachusetts courts have general jurisdiction over Patheon.  *See Ford Motor*, 141 S. Ct at 1024 (holding that general jurisdiction is proper wherever a defendant has its "principal place of business").  That makes this case different (and far easier) than the case on which Defendants rely, in which the LLC had multiple members with different citizenships.  *See Carruth*, 2015 WL 650650, at *7.  Here, Patheon has only one member, and that member is headquartered in Massachusetts.  General jurisdiction is therefore proper there.

**CONCLUSION**

For the reasons set forth above, the Defendants' Motion to Dismiss should be denied.

DATED:  April 23, 2021                              Respectfully submitted,


*/s/ Tracy A. Finken*                            By: */s/ Robert C. Gilbert*
Tracy A. Finken                                  Robert C. Gilbert, FBN 561861
Email: tfinken@anapolweiss.com                   Email: gilbert@kolawyers.com
ANAPOL WEISS                                     KOPELOWITZ OSTROW FERGUSON
One Logan Square                                 WEISELBERG GILBERT
130 North 18th Street, Suite 1600                2800 Ponce de Leon Boulevard, Suite 1100
Philadelphia, PA 19103                           Coral Gables, FL 33134
Tel: (215) 735-1130                              Tel: (305) 384-7270

*/s/ Michael L. McGlamry*                        */s/ Adam Pulaski*
Michael L. McGlamry                              Adam Pulaski
Email: efile@pmkm.com                            Email: adam@pulaskilawfirm.com
POPE McGLAMRY, P.C.                              PULASKI KHERKHER, PLLC
3391 Peachtree Road NE, Suite 300                2925 Richmond Avenue, Suite 1725
Atlanta, GA 30326                                Houston, TX 77098
Tel: (404) 523-7706                              Tel: (713) 664-4555


*Plaintiffs' Co-Lead Counsel*

Rosemarie R. Bogdan
Email: Rosemarie.bogdan@1800law1010.com
MARTIN, HARDING & MAZZOTTI
1222 Troy-Schenectady Road
Niskayuna, NY 12309
Tel: (518) 862-1200

Elizabeth A. Fegan
Email: beth@feganscott.com
FEGAN SCOTT, LLC
1456 Sycamore Rd.
Yorkville, IL 60560
Tel: (312) 741-1019

Ashley Keller
Email: ack@kellerlenkner.com
KELLER | LENKNER
150 N. Riverside Plaza, Suite 4270
Chicago, IL 60606
Tel: (312) 741-5222

Roopal P. Luhana
Email: luhana@chaffinluhana.com
CHAFFIN LUHANA LLP
600 Third Avenue, 12th Floor
New York, NY 10016
Tel: (888) 480-1123

Ricardo M. Martinez-Cid, FBN 383988
Email: RMartinez-Cid@Podhurst.com
PODHURST ORSECK, P.A.
SunTrust International Center
One S.E. 3rd Avenue, Suite 3200
Miami, FL 33130
Tel: (305) 358-2800

Melanie H. Muhlstock
Email: mmuhlstock@yourlawyer.com
PARKER WAICHMAN LLP
9 Evelyn Road
Port Washington, NY 11050
Tel: (516) 723-4629

Mark J. Dearman, FBN 0982407
Email: mdearman@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Tel: (561) 750-3000

Marlene J. Goldenberg
Email: mjgoldenberg@goldenberglaw.com
GOLDENBERG LAW, PLLC
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Tel: (855) 333-4662

Frederick S. Longer
Email: flonger@lfsblaw.com
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500

Francisco R. Maderal, FBN 0041481
Email: frank@colson.com
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Tel: (305) 476-7400

Lauren S. Miller
Email: lmiller@corywatson.com
CORY WATSON, P.C.
2131 Magnolia Ave S
Birmingham, AL 35205
Tel: (205) 271-7168

Daniel A. Nigh, FBN 30905
Email: dnigh@levinlaw.com
LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Tel: (888) 435-7001

Carmen S. Scott
Email: cscott@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9160

Sarah N. Westcot, FBN 1018272
Email: swestcot@bursor.com
BURSOR & FISHER, P.A.
2665 S. Bayshore Drive, Suite 220
Miami, FL 33133
Tel: (305) 330-5512

Frank Woodson
Email: Frank.Woodson@BeasleyAllen.com
BEASLEY ALLEN LAW FIRM
234 Commerce St
Montgomery, AL 36103
Tel: (334) 269-2343

Mikal C. Watts
Email: mcwatts@wattsguerra.com
WATTS GUERRA LLP
4 Dominion Drive
Building 3, Suite 100
San Antonio, TX 78257
Tel: (800) 294-0055

Conlee S. Whiteley
Email: c.whiteley@kanner-law.com
KANNER & WHITELEY, L.L.C.
701 Camp Street
New Orleans, LA 70130
Tel: (504) 524-5777

*Plaintiffs' Steering Committee*
*Plaintiffs' Law and Briefing Committee Co-Chairs*
*Plaintiffs' Liaison Counsel*

Paige Boldt
Email: pboldt@wattsguerra.com
WATTS GUERRA LLP
1815 Windsong Circle
Keller, TX 76248
Tel: (210) 447-1534

Adam W. Krause
Email: adam@krauseandkinsman.com
KRAUSE AND KINSMAN, LLC
4717 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 760-2700

Je Yon Jung
Email: JJung@maylightfootlaw.com
MAY LIGHTFOOT PLLC
3200 Martin Luther King, Jr. Avenue
S.E., 3rd Floor,
Washington, DC 20032
Tel: (202) 918-1824

Nicola Larmond-Harvey, FBN 0105312
Email: nicola@saunderslawyers.com
SAUNDERS & WALKER, P.A.
3491 Gandy Boulevard North, Suite 200
Pinellas Park, FL 33781
Tel: (727) 579-4500

Bradford B. Lear
Email: Lear@learwerts.com
LEAR WERTS LLP
103 Ripley Street
Columbia, MO 65203
Tel: (573) 875-1992

*Plaintiffs' Leadership Development Committee*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that the foregoing document is being served on all counsel of record or parties registered to receive CM/ECF Electronic Filings.

*/s/ Robert C. Gilbert*
Robert C. Gilbert