UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-MD-2924

IN RE: ZANTAC (RANITIDINE)
PRODUCT LIABILITY LITIGATION
_____/

**ORDER DISCHARGING ORDER TO SHOW CAUSE [ECF NO. 3000]**

On February 25, 2021, the Court entered Pretrial Order #60 ("PTO 60") (ECF No. 2877) to address procedures relating to discovery between Plaintiffs and the following Defendants:

    Ajanta Pharma USA Inc.
    Amneal Pharmaceuticals LLC
    Amneal Pharmaceuticals of New York, LLC
    Apotex Corporation
    Aurobindo Pharma USA, Inc.
    Auro Health LLC
    Dr. Reddy's Laboratories, Inc.
    Dr. Reddy's Laboratories LLC
    Glenmark Pharmaceuticals, Inc., USA
    Granules USA, Inc.
    Heritage Pharmaceuticals, Inc.
    Lannett Co., Inc.
    Nostrum Laboratories, Inc.
    Novitium Pharma LLC
    PAI Holdings, LLC
    Par Pharmaceutical Inc.
    L. Perrigo Co.
    Perrigo Research & Development Company
    Sandoz Inc.
    Strides Pharma, Inc.
    Sun Pharmaceutical Industries, Inc.
    Teva Pharmaceuticals U.S.A., Inc.
    Actavis Mid Atlantic LLC

>   Watson Laboratories, Inc.
>   Torrent Pharma Inc.
>   Wockhardt USA LLC
>   Zydus Pharmaceuticals (USA) Inc.

PTO 60 contained provisions relating to upcoming depositions pursuant to Federal Rule of Civil Procedure 30(b)(6). It ordered:

>   No later than February 28, 2021, all Generic Manufacturer Defendants will provide Plaintiffs a list of proposed initial custodians, which shall include: (a) the custodian's full name, (b) job title(s), (c) department the custodian worked in, and (d) years employed. This list does not represent a complete list of all custodians for this case but should represent Generic Manufacturer Defendants' proposal for all custodians they deem relevant, taking into account the allegations in the Master Pleadings, the discovery requests at issue, and the three Rule 30(b)(6) deposition notices served to date. Custodians should span the relevant time period in Plaintiffs' requests for production. Generic Manufacturer Defendants will meet and confer with Plaintiffs individually to determine the sufficiency of their custodial lists in light of the amended class pleadings and Defendants' document productions, understanding that Plaintiffs presently do not have sufficient information to identify all relevant custodians from any Generic Manufacturer Defendant.

PTO 60 §II(B)(2).

>   No later than February 28, 2021, each Generic Manufacturer Defendant will provide to Plaintiffs the number of witnesses it expects to produce for each deposition notice and tentative dates on which it will present each witness for deposition in accordance with the below scheduling requirements, such dates and witnesses being subject to revision up to three days after the Court's order on the Pretrial Order # 32 hearing issues. Notwithstanding this deadline, this Court encourages Generic Manufacturer Defendants to provide dates as soon as possible in light of the number of depositions to be scheduled and the limited number of depositions that can be scheduled on the same date.
>
>   a) Each Generic Manufacturer Defendant will provide a date in April 2021 to produce its witnesses on the issues of storage and transport.

    b) Each Generic Manufacturer Defendant will provide a date in May 2021 to produce its witnesses on the issues of manufacturing.

    c) Each Generic Manufacturer Defendant will provide a date in May 2021 or prior to June 15, 2021 to produce its witnesses on the issues of pharmacovigilance.

PTO 60 §II(C)(2).

At a discovery dispute hearing on March 4, 2021, Plaintiffs represented that the following defendants ("the Non-Manufacturing Generic Defendants") had not timely provided the information required by PTO 60 §II(C)(2):

    Ajanta Pharma USA Inc.
    Apotex Corporation
    Aurobindo Pharma USA, Inc.
    Aurobindo Health LLC
    Granules USA, Inc.
    Heritage Pharmaceuticals, Inc.
    Heritage Pharma Labs Inc.
    Ranbaxy Inc.
    Sun Pharmaceutical Industries, Inc f/k/a Ranbaxy Pharmaceuticals Inc.
    Taro Pharmaceuticals U.S.A., Inc.
    Torrent Pharma Inc,
    Wockhardt USA LLC
    Wockhardt USA, Inc.

ECF No. 2938-1. The Non-Manufacturing Generic Defendants agreed that they had not provided this information on or before February 28. Hrg. Transcript at 8-11 (ECF No. 3067). The Plaintiffs thereafter clarified that two defendants (Ajanta Pharma USA Inc. and Torrent Pharma Inc) had not provided any deposition dates and that the remainder had not provided dates for a manufacturing deposition. *See* Exhibit 1 to this Order.

    Plaintiffs also represented that the following Generic Manufacturer

Defendants had not timely provided the list of initial proposed custodians required by PTO 60 §II(B)(2):

> Nostrum Laboratories Inc.
> Novitium Pharma LLC

Hrg. Transcript at 7-8. These two defendants complied with PTO #60 on March 1 and 2, 2021, respectively. Ex. 1.

On March 9, 2021, I entered an order to show cause why the Non-Manufacturing Generic Defendants, Nostrum, and Novitium should not be sanctioned for their non-compliance with PTO 60. ECF No. 3000. The defendants filed Responses. ECF Nos. 3104 (Non-Manufacturing Generic Defendants), 3106 (Nostrum and Novitium). Plaintiffs did not file a Reply.

The Non-Manufacturing Generic Defendants argue:

1. There was no non-compliance;

2. If there was non-compliance, it was not intentional;

3. They relied on Plaintiffs' acknowledgement that "the Generic Defendants would not provide witnesses for subjects outside their business operations – such as manufacturing – when that business function is performed instead by a foreign entity that is not yet subject to the Court's jurisdiction or is challenging that jurisdiction";

4. Plaintiffs have not been prejudiced by any non-compliance;

5. These defendants have not engaged in a pattern of non-compliance or total disregard of the Court's orders.

ECF No. 3104 at 5. Novitium and Nostrum argue that they acted in good faith but

ran out of time to comply or to seek an extension of time. ECF No. 3106.

## THE COURT'S AUTHORITY TO SANCTION

"[I]n order to ensure the orderly administration of justice, [a district court] has the authority and responsibility to set and enforce reasonable deadlines." *Lowe's Home Centers, Inc. v. Olin Corp.*, 313 F.3d 1307, 1315 (11th Cir. 2002). "[C]ase management depends on enforceable deadlines. . . . In managing their caseloads, district courts are entitled to—'indeed they must—enforce deadlines.'" *Flint v. City of Belvidere*, 791 F.3d 764, 768 (7th Cir. 2015) (citations omitted). The Court's authority to sanction parties and/or their counsel for non-compliance with a discovery-related order includes (1) criminal contempt, (2) the Court's inherent authority, (3) 28 U.S.C. § 1927, (4) Federal Rule of Civil Procedure 37(b)(2), (5) civil contempt, and (6) Federal Rule of Civil Procedure 16(f).

**1.      Criminal Contempt/Inherent Authority/28 U.S.C. § 1927**

The first three sanctions require a finding of willful disobedience or bad faith. *United States v. Baldwin*, 770 F.2d 1550, 1557 (11th Cir. 1985) (criminal contempt requires willful disobedience of a court order); *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) (Invocation of a court's inherent power requires a finding of bad faith.); *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) (28 U.S.C. § 1927 requires bad faith). Here, the record does not support a finding of willfulness or bad faith, so no sanctions are appropriate under the Court's criminal contempt power, its inherent authority, or § 1927.

**2.  Federal Rule of Civil Procedure 37(b)**

Rule 37(b)(2) authorizes sanctions against a party who "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2). Here, PTO #60 did not require these defendants to provide or permit particular discovery; §II(B)(2) required each of them to provide "a list of proposed initial custodians, which shall include: (a) the custodian's full name, (b) job title(s), (c) department the custodian worked in, and (d) years employed;" §II(C)(2) required each of them to specify "the number of witnesses it expects to produce for each deposition notice and tentative dates on which it will present each witness for deposition." Therefore, Rule 37(b)(2) does not apply.

**3.  Federal Rule of Civil Procedure 16(f)**

Rule 16(f)(1)(C) states, "On motion or on its own, the court may issue any just orders . . . if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). "Rule 16(f) sanctions were 'designed to punish lawyers and parties for conduct which unreasonably delays or otherwise interferes with the expeditious management of trial preparation.' *United States v. Samaniego*, 345 F.3d 1280, 1284 (11th Cir. 2003). As the 1983 Advisory Committee Notes point out, the court 'has discretion to impose whichever sanction it feels is appropriate under the circumstances' and the decision to award sanctions is 'reviewable under the abuse-of-discretion standard.'" *In re Sanctions Hearing: Remer*, No. 11-23592-CIV, 2012 WL 12888409, at *8 (S.D. Fla. Dec. 20, 2012) (J. Goodman), *report and recommendation adopted sub nom. Dammar-Fletcher v. Baptist Health S. Fla., Inc.*,

No. 12-2298-CIV, 2013 WL 12131602 (S.D. Fla. Jan. 11, 2013) (J. Graham). Rule 16(f) sanctions can be "imposed to vindicate the integrity of the court and deter future violations" of court orders. *Pinero v. Corp. Cts. At Miami Lakes*, 389 F. App'x 886, 889 (11th Cir. 2010).

A finding of bad faith is not a prerequisite to sanctions under Rule 16(f). *Giovanno v. Fabec*, 804 F.3d 1361, 1366 n.5 (11th Cir. 2015). Sanctions under Rule 16(f) "are appropriate for negligent failure to comply with court orders." *Ross v. Lamberti*, No. No. 09-61123-CIV, 2010 WL 11505214, at *5 (S.D. Fla. July 16, 2010) (J. Snow) (citations omitted). "Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses— including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2).

Although not expressly required by Rule 16(f), in deciding whether to impose sanctions, the Court can look to whether the conduct in question is part of a pattern of behavior. *See, e.g., Giovanno,* 804 F.3d at 1365 (party failed to communicate with his counsel for over a year, then failed to appear for pretrial conference); *Samaniego,* 345 F.3d at 1284 ("district courts have discretion to decide if there is a pattern of delay or a deliberate refusal to comply with court orders or directions that justifies a sanction."); *see also Goforth v. Owens,* 766 F.2d 1533, 1535 (11th Cir. 1985) (affirming sanctions where trial court found that counsel engaged in a "pattern of delay and deliberately refused to comply with the directions of the court."); *Castle v.*

7

*Appalachian Tech. Coll.*, 430 F. App'x 840, 842 (11th Cir. 2011) (noting three separate acts as basis for Rule 16(f) sanctions).

**4.     Civil Contempt**

"Civil contempt is a remedial sanction designed and intended to obtain compliance with a court order or to compensate for damages sustained as a result of noncompliance." *Piambino v. Bestline Prod., Inc.*, 645 F. Supp. 1210, 1212 (S.D. Fla. 1986) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S. Ct. 497, 93 L. Ed. 599 (1949); *N. L. R. B. v. Blevins Popcorn Co.*, 659 F.2d 1173, 1184 (D.C. Cir. 1981)). It requires proof by clear and convincing evidence that the alleged contemnor (1) violated a valid and lawful court order, (2) that was clear, definite, and unambiguous, and (3) the alleged violator had the ability to comply with the order." *Jordan v. Wilson*, 851 F.2d 1290, 1292 n.2 (11th Cir. 1988) (citing *United States v. Koblitz*, 803 F.2d 1523, 1527 (11th Cir. 1986)); *Blanco GmbH+Co. KG v. Vlanco Indus., LLC*, 992 F. Supp. 2d 1225 (S.D. Fla. 2014) (J. Rosenbaum), *on reconsideration in part* (May 21, 2014), *aff'd sub nom. Blanco GmbH+Co. KG v. Laera*, 620 F. App'x 718 (11th Cir. 2015). Any ambiguity in the order must be construed in favor of the alleged contemnor. *Peery v. City of Miami*, 977 F.3d 1061, 1077 (11th Cir. 2020) (citing *F.T.C. v. Leshin*, 618 F.3d 1221, 1231 (11th Cir. 2010)). "Clear and convincing evidence" is evidence that "place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are [sic] 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S. Ct. 2433, 81 L. Ed. 2d 247 (1984); *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 599 F. Supp. 2d 1307, 1313 (S.D. Fla.) (J.

Ryskamp), *aff'd in part, vacated in part*, 589 F.3d 1233 (Fed. Cir. 2009) (citations omitted); *Powell v. Home Depot U.S.A., Inc.*, No. 07-80435-CIV, 2009 WL 1515073, at *8 (S.D. Fla. June 1, 2009) (J. Hurley), *aff'd,* 663 F.3d 1221 (Fed. Cir. 2011).

It is not necessary to show that the alleged contemnor intended to violate the order. *Tracfone Wireless, Inc. v. Technopark Co.*, 313 F.R.D. 680, 687 (S.D. Fla. 2016) (J. Ungaro) ("The Supreme Court has made clear that the absence of willfulness is not a defense to a charge of civil contempt.") (quoting *Leshin*, 618 F.3d at 1232) (internal quotation marks omitted). Nonetheless, the willfulness of the alleged contemnor may factor into a court's considerations in other ways. The Supreme Court's "cases suggest, for example, that civil contempt sanctions may be warranted when a party acts in bad faith," leading to the conclusion in one case "that a party's 'record of continuing and persistent violations' and 'persistent contumacy' justified placing 'the burden of any uncertainty in the decree…on [the] shoulders' of the party who violated the court order." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802, 204 L. Ed. 2d 129 (2019) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)) (quoting *McComb*, 336 U.S. at 192–93). "On the flip side of the coin, a party's good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction." *Taggart*, 139 S. Ct. at 1802.

Once there has been a prima facie showing that the alleged contemnors violated a previous court order, the alleged contemnors may defend against contempt by showing they were "unable to comply" with the court order. *Tracfone Wireless, Inc.*, 313 F.R.D. at 687 (quoting *Commodity Futures Trading Comm'n v. Wellington*

9

*Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992) (internal quotation marks omitted)). *See also S.E.C. v. Solow*, 682 F. Supp. 2d 1312, 1326 (S.D. Fla. 2010) (quoting *Wellington Precious Metals*, 950 F.2d at 1529) ("A defendant is in civil contempt when: (1) it is shown by 'clear and convincing evidence that the alleged contemnor has violated an outstanding court order;' and, (2) the defendant fails to show that 'he has made "in good faith all reasonable efforts" to meet the terms of the court order he is seeking to avoid.'"). This defense requires "detailed evidence specifically explaining" the impossibility of compliance. *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 740 (11th Cir. 2006).

## DISCUSSION

### 1.   The Non-Manufacturing Generic Defendants

As the above discussion shows, defendants' arguments that (1) any non-compliance was unintentional and (2) Plaintiffs have not been prejudiced, even if true, do not negate the Court's authority to impose sanctions. These factors may, however, affect if and how the Court exercises its discretion to impose sanctions.

I now turn to Defendants' remaining arguments. They argue that they did not fail to comply with PTO #60. They explain that during pre-PTO #60 negotiations with Plaintiffs over a protocol for Rule 30(b)(6) depositions, the Plaintiffs said that they would not require these defendants to produce witnesses "on subjects about which the company had no knowledge." ECF No. 3104 at 6-7. The parties specifically agreed that the Rule 30(b)(6) depositions would be limited to "topics applicable to the individual Generic Manufacturer." They further agreed that Generic Manufacturers

with foreign affiliates outside the Court's personal jurisdiction would not have to respond to discovery or provide a 30(b)(6) witness "on topics that fall within the role of their foreign affiliate." *Id.* at 7.

> Paragraph 5(e) of PTO #60 contained the following language:
>
> Nothing in this agreement precludes Plaintiffs and individual Generic Manufacturer Defendants from agreeing to schedule depositions at an earlier date, in a different sequence, or on a narrower set of topics applicable to the individual Generic Manufacturing Defendant.

PTO #60 also adopted the parties' agreement that foreign affiliates who were challenging personal jurisdiction would be treated as independent corporations, except insofar as documents of those affiliates were in the possession, custody, or control of the Generic Manufacturing Defendant. PTO #60 § I(B)(2). In other words, a Generic Defendant was not required to produce discovery (including a 30(b)(6) witness) related to the foreign affiliate's activities except insofar as that discovery was in the Generic Defendant's possession, custody, or control. Finally, PTO #60 preserved the defendants' right to object to the scope of a 30(b)(6) deposition notice. *Id.* § III(A)(1). The Court entered PTO #60 on February 25, 2021.

Two weeks prior to the entry of PTO #60, Apotex informed Plaintiffs by email on February 10, 2021, that it "could produce witnesses on storage and transportation on April 27 and 29 and on pharmacovigilance on May 20." ECF No. 3104 at 8. It also informed Plaintiffs, "Because Apotex Corp. is not involved in either API or [finished drug product] manufacturing, it has no one to speak on those topics." ECF No. 3104-1 at 48. That same day, Plaintiffs acknowledged the April 27 and 29 dates. Plaintiffs did not request a manufacturing deposition date, nor expressly object to Apotex's

11

position that it would not produce a manufacturing witness. *Id.* Based on this series of communications, Apotex took the position that it was not required to schedule a manufacturing witness for deposition. Apotex directed other non-manufacturer Generic Defendants to the relevant documents. All reached the same conclusion – if they were not able to produce a manufacturing witness, they were not required to provide a date for a manufacturing deposition. *See generally* ECF No. 3104-1 at 2-10 (Affidavit of T. Henry)

Plaintiffs first advised the Non-Manufacturing Generic Defendants on March 1 that Plaintiffs believed the Generic Defendants were required to provide dates for manufacturing depositions. ECF No. 3104 at 11-12; Henry Affidavit ¶¶ 31-32. Plaintiffs presented this issue to the Court without first meeting and conferring as required by PTO #32. *Id.* at 11; Henry Affidavit ¶ 36. As noted above, Plaintiffs have not offered any contradictory evidence.

## 2. Novitium and Nostrum

It is undisputed that these Defendants provided the identity of their proposed custodians on March 1, 2021, one day after the PTO #60 deadline. They assert that because their Ranitidine Containing Products were last manufactured several years ago, they had to try to locate former employees as potential custodians; they also had to verify when those potential custodians could be available. ECF No. 3106 at 3-4. They noted that the deadline was three days after PTO #60 was entered, and two of those days were a Saturday and a Sunday. They assert that they acted diligently. Here, too, Plaintiffs have not offered any contrary evidence.

12

**FINDINGS**

**1.      Non-Manufacturing Defendants**

I find that the record does not establish that the Non-Manufacturing Generic Defendants violated § II(C)(2) of PTO #60 as applied to the manufacturing deposition notices.  On or about January 29, 2021, Plaintiffs served three Rule 30(b)(6) notices on each of the Non-Manufacturing Generic Defendants – one for storage and transportation, one for manufacturing, and one for pharmacovigilence.  ECF No. 3104 at 17-45.  Section II(C)(2) required the Non-Manufacturing Generic Defendants to provide Plaintiffs, by February 28, 2021, "the number of witnesses it expects to produce for each deposition notice and tentative dates on which it will present each witness for deposition in accordance with the below scheduling requirements."  The Non-Manufacturing Generic Defendants complied with the requirement to provide the number of their manufacturing witnesses; that number was zero.  ECF No. 3104-1 at 48 ("Because Apotex Corp. is not involved in either API or FDP manufacturing, it has no one to speak on those topics."); *id.* at 140 (As we have previously advised, Apotex Corp. has no one to speak on topics relating to API or finished drug product manufacturing and therefore we will not be providing witnesses in response to the manufacturing deposition notice, although there may be subtopics within the manufacturing deposition notice that other witnesses may address."); *id.* at 137 (Ajanta Pharma USA, Inc. "has no corporate representatives who can testify about the storage and transportation, manufacturing, or pharmacovigilance of its ranitidine products."); *id.* at 145 ("Aurobindo did not manufacture ranitidine-containing

13

products or API and, therefore, does not intend to present a witness to testify in response to plaintiffs' manufacturing deposition notice."); *id.* at 148 ("Granules USA, Inc. does not manufacture ranitidine, therefore it will not be presenting a witness in relation to Plaintiffs' Manufacturing deposition notice."); *id.* at 152 ("Neither [Sun Pharmaceutical Industries, Inc.] nor Ranbaxy, [Inc.] intend to identify a 30(b)(6) witness on the manufacturing topics because neither SPII nor Ranbaxy manufactured RCPs."); *id.* at 155 ("Torrent has no . . .corporate representatives who can testify about the storage and transportation, manufacturing, or pharmacovigilance regarding the ranitidine-containing products that were manufactured years before Torrent's acquisition of Bio-Pharm."); *id.* at 158 (Wokhardt USA LLC "will not be presenting a corporate representative on the manufacturing topic as it does not manufacture finished ranitidine-containing products, nor does it purchase, manufacture, transport, receive delivery of, or store API."); *id.* at 195 ("Given that [Heritage Pharmaceutical, Inc.] does not manufacture any ranitidine product, nor does sell ranitidine product manufactured by an affiliate, it does not have a corporate representative that can address any of the topics that have been identified in the manufacturing deposition notice."). Having taken the position that they did not have a witness who could testify to the matters listed in the manufacturing deposition notice, the Non-Manufacturing Generic Defendants reasonably concluded that there was no reason to schedule a deposition date for the non-existent witness. Notably, the issue Plaintiffs presented to the Court was the procedural failure to provide a deposition date as required by PTO #60, not the

substantive question of whether these defendants should be compelled to provide a witness on the topics listed in the manufacturing deposition notice.

Even if I were to conclude that the Non-Manufacturing Generic Defendants failed to comply with PTO #60 by not providing deposition dates, I would not impose sanctions under Rule 16(f) nor would I certify the facts to the District Court for contempt proceedings. These defendants have not engaged in a pattern of non-compliance or total disregard of the Court's orders. At worst, any non-compliance appears to have resulted from a good faith misunderstanding rather than from an intentional or willful disobedience of a court order. Finally, Plaintiffs have not alleged that the non-compliance prejudiced them, created an unreasonable delay, or otherwise interfered with the expeditious management of this MDL. Taking all those factors into account, I conclude that a sanctions order under Rule 16(f) would not be just.

The Non-Manufacturing Generic Defendants have now provided manufacturing deposition dates to Plaintiffs. ECF No. 3104 at 24. As such, there is no need for coercive sanctions. There is no evidence in the record that the alleged non-compliance caused damages to Plaintiffs. Therefore, there is no factual basis for a remedial civil contempt sanction.

**2.** **Nostrum and Novitium**

I find that these defendants' failure to comply with the PTO #60 deadlines or to seek a pre-deadline extension resulted from excusable neglect. Fed. R. Civ. P. 6(b)(1)(B). Alternatively, sanctions under Rule 16(f) would be unjust given the short

time frame to comply, the one day of alleged non-compliance, the lack of evidence of intent, and the lack of prejudice to Plaintiffs. Finally, the record does not support a prima facie finding of civil contempt. *See Lapinski v. St. Croix Condo. Ass'n, Inc.*, No. 616CV1418ORL40GJK, 2018 WL 4381168, at *2 (M.D. Fla. Aug. 1, 2018) (role of Magistrate Judge under 28 U.S.C. § 636(e) is to "determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt."). Here, there is not sufficient evidence to support a finding by clear and convincing evidence that these defendants were able to comply with the deadline set by PTO #60.

**WHEREFORE, it is ORDERED** that the Order to Show Cause [ECF No. 3000] is **DISCHARGED.**

**DONE AND SUBMITTED** in Chambers this 4th day of May, 2021 at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE