**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IN RE: ZANTAC (RANITIDINE)                            MDL   NO.   2924
PRODUCTS LIABILITY                                    20-MD-2924
LITIGATION

                              **JUDGE ROBIN L. ROSENBERG**
                    **MAGISTRATE JUDGE BRUCE E. REINHART**

_____/

**THIS DOCUMENT RELATES TO ALL CASES**

_____

**GENERIC MANUFACTURERS' SUBMISSION ON PLAINTIFFS' PROPOSED
AMENDMENTS TO PRETRIAL ORDERS 54 AND 60**
_____

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

       A.     Generic Discovery ................................................................................. 2

       B.     The April 20 Case Management Conference and Plaintiff's Issue ...................... 4

       C.     The Parties April 28 Submissions .......................................................... 5

III.   PLAINTIFFS' PROPOSED AMENDMENTS TO PRETRIAL ORDERS 54 AND 60
       SEEK TO REVISE THE STRUCTURE OF DISCOVERY ........................................... 7

       A.     Plaintiffs Seek Certification of "Complete" Document Production ..................... 7

       B.     Plaintiffs Seek Right to Recall Witnesses at Will ................................................ 8

       C.     Plaintiffs Seek to Take a Second, Separate Deposition of Corporate
              Representatives as Fact Witnesses ................................................................... 10

       D.     Plaintiffs Seek to Alter Length and Counting of Depositions ........................... 11

       E.     Plaintiffs Seek to Shorten Deposition Notice Time ........................................... 11

       F.     Plaintiffs Seek to Limit the Negotiated Objections to Corporate Depositions ..... 13

       G.     Plaintiffs Entirely Re-Wrote Section H of Pretrial Order 54, But Only
              Disclose Limited Edits ..................................................................................... 14

       H.     Plaintiffs Seek a Discovery Order that Applies to Foreign Defendants Not
              Yet Subject to this Court's Jurisdiction. .......................................................... 15

IV.    CONCLUSION ................................................................................................. 17

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Moore v. Publicis Groupe*,
    287 F.R.D. 182 (S.D.N.Y. 2012)....................................................................................8

*United States v. Fresenius Medical Care Holdings, Inc.*,
    No. 1:10-CV-1614-AT, 2014 WL 11517841 (N.D. Ga. May 13, 2014).........................8

**Rules**

Federal Rule of Civil Procedure 26(e) .........................................................................................8

Federal Rule of Civil Procedure 30(b)(6)...........................................................................12, 14

Federal Rule of Civil Procedure 26(a) (l)...................................................................................8

Federal Rule of Civil Procedure 26(g) ........................................................................................8

## I.   <u>INTRODUCTION</u>

In accordance with the instructions this Court issued during the May 26, 2021 status conference, Generic Manufacturers identify Plaintiffs' proposed revisions to Pretrial Orders 54 and 60 that go beyond the issue Plaintiffs first raised during the April 20, 2021 Case Management Conference and referred to Magistrate Judge Reinhart for resolution: Setting a date by which Generic Manufacturers must produce non-custodial documents in advance of a related 30(b)(6) deposition.

On the narrow issue raised by Plaintiffs at the April Case Management Conference, the parties have agreement: Generic Manufacturers will use their best efforts to substantially complete production of non-custodial documents twenty-one days in advance of a related deposition, but no later than fourteen days before the deposition. But in their most recent submissions and proposals, Plaintiffs go far beyond the narrow issue they raised to the Court in April and seek modifications that are simply unwarranted and serve only to complicate discovery unnecessarily. Rather than simply setting a deadline for disclosure or production of non-custodial documents in advance of depositions – a point on which the parties reached agreement – Plaintiffs now seek to entirely restructure discovery against the Generic Defendants. Plaintiffs propose changes beyond those needed to address this narrow issue, which include:

- Certifying "complete" document production, a discovery obligation untethered to any requirement of the Federal Rules of Civil Procedure
- Securing the right to re-depose witnesses at will
- Invalidating the provision of Pretrial Order 54 prohibiting second depositions of corporate representatives in their individual capacity
- Shortening the time for service of deposition notices from that which is required in Pretrial Order 54 (despite document production obligations)
- Eliminate Pretrial Order 54's waiver provision where Plaintiffs elect to proceed with a deposition despite notification of potential future document production on related topics
- Re-writing Section H of Pretrial Order 50, without disclosing to the Court the extent of these re-writes
- Imposing a discovery order on Foreign Defendants who are not subject to this Court's jurisdiction.

None of Plaintiffs' additional proposals address Plaintiffs' stated goal – to obtain documents sufficiently in advance of a deposition so that Plaintiffs can prepare properly. Plaintiffs saw the opportunity to amend Pretrial Order 60 to address one narrow issue as an opportunity to undo provisions of other Pretrial Orders and seek unfair advantage in discovery disputes Plaintiffs speculate may arise in the future. The modifications Plaintiffs seek to both Pretrial Orders 54 and 60 would overturn hard bargained-for provisions that were the result of long negotiations with **all** parties making compromises to put in place a workable discovery process.

## II.    BACKGROUND

### A.    Generic Discovery

By the end of December 2020, the Generic Manufacturers had produced significant amounts of information and documents as directed by Pretrial Order 34 (the Core Discovery Agreement) in return for the Plaintiffs' agreement that formal discovery involving the Generic Manufacturers could not begin until early 2021. When the year ended with the Court dismissing all claims against the Generic Manufacturers, Plaintiffs had no claims pending and no allegations to which they could anchor their discovery requests to the Generic Manufacturers.

Nevertheless, Plaintiffs and Generic Manufacturers engaged in a series of meetings that resulted in a Generic Discovery Agreement for certain depositions and written discovery. *See*, Exhibit A. The primary focus of the Generic Discovery Agreement was that Generic Manufacturers were to prepare and present witnesses on three general topics – storage and transportation, manufacturing and pharmacovigilance – after having time to first collect, review, and produce documents relevant to those topics and deponents. *See*, Henry Declaration, Exhibit B, ¶ 6. These depositions were to be scheduled between April 1 and June 15 so that Plaintiffs could meet their Pretrial Order 30 deadline of August 2 for disclosure of expert reports. *Id.*

The parties also agreed that Plaintiffs were to provide their requests for production of documents, interrogatories and deposition notices to Generic Defendants in advance of filing their amended pleadings, but that the discovery would be deemed served February 9, 2021, the day after

2

Plaintiffs filed their amended pleadings. *Id*. at ¶ 7.   At 11:14 p.m. on January 29, 2021, a Friday evening, Plaintiffs provided the required discovery to the Generic Manufacturers' leadership, which they then provided to the remaining Generic Manufacturers.  *Id*. *See also*, January 31, 2021 Goldenberg email, Exhibit C.[1]  Given the late weekend hour, the Generic Manufacturers could not meaningfully review with their clients the discovery templates until Monday, February 1.

The parties reduced these key components of the Generic Discovery Agreement to Pretrial Order 60, which the Court entered on February 25, 2021.  The parties acknowledged that Pretrial Order 54 governed the timing of production for witness custodial files,[2] but no Pretrial Order set the timing for production of non-custodial documents in advance of a deposition and Plaintiffs' 30(b)(6) Notices of Deposition only required production of materials on which the witness would rely and the witness' CV (if applicable) three days prior to the deposition.  Exhibit B, Henry Dec., ¶ 9.  Because of the broad scope of Plaintiffs' 111 document requests, the parties agreed that a deadline for non-custodial document production was not feasible in light of the aggressive deposition schedule, and that Generic Manufacturers would produce documents on a rolling basis, first prioritizing non-custodial documents related to the deposition notices.  *See*, Henry Dec., Exhibit B, ¶ 10; Pretrial Order 60, DE 2877 at II.A.1.

By agreement then, it was not until February at the earliest that Generic Manufacturers were obligated to begin searching in earnest for non-custodial documents responsive to Plaintiffs' 111 document requests, and not until March 1, after the parties agreed to search terms and Generic Manufacturers identified custodians, that custodial discovery could begin.  Nevertheless, by May

---

[1] Plaintiffs' assertions that they served these discovery requests "in January" or "two to three weeks prior to" February 9th is untrue; they may have previewed them to Defendants, but they were *not* served. *See*, Exhibit D, Transcript of April 20 Hearing, page 38:8-16, and Exhibit C.  Note also that Plaintiffs styled the previewed discovery as "Template" because the parties intended to further negotiate the scope of the written discovery.

[2]  All defendants are required to produce the witness' custodial file "fifteen (15) days before the scheduled deposition and will make best efforts to produce custodial files twenty-one (21) days before the scheduled deposition." Pretrial Order 54, DE 2260, Section H, page 20.  The parties agreed on ESI search terms on February 29, 2021, in accordance with Pretrial Order 60.II.2.

11, 2021 (about twelve weeks), the Generic Manufacturers had already produced over a million documents consisting of over seven and a half million pages, a figure that continues to grow nearly every day.  *See*, Henry Dec., Exhibit B, ¶ 14; *see also*, Exhibit D, Transcript at 28:13-29:6 (Plaintiffs' Co-Lead states: "[I]n the past three weeks, we have received 1.3 million documents which has totaled -- which totaled 6.8 million pages. So these are not -- this is not a small document production that we are talking about, it is a lot of documents, it is a significant amount.").  At the time of the May 11 status conference, Generic Defendants had presented witnesses at ten depositions.  *Id*. at ¶ 15.  Between May 11 and May 21, while the parties attempted to negotiate amendments to Pretrial Order 60,[3] Generic Manufacturers continued to produce documents, with at least eleven Generic Manufacturers making twenty-two productions consisting of over 300,000 pages of additional documents.  *Id*. at ¶ 16.  Since resumption of depositions on May 24, Plaintiffs have taken the deposition of two additional Generic Manufacturer witnesses and there are thirty-four Generic Manufacturer depositions scheduled through the end of June, while document production continues apace.[4] *Id*. at ¶ 17.

This is all to say that while compressed by time, Generic Manufacturers are: (i) working extremely hard to meet their discovery obligations; (ii) producing voluminous amounts of information and documents; (iii) presenting witnesses for depositions; and (iv) consuming a significant amount of resources.  In other words, the Generic Manufacturers are providing to Plaintiffs the discovery they requested and continuing to meet and confer with Plaintiffs to understand those documents most important to Plaintiffs and facilitate their timely production.

**B.**     **The April 20 Case Management Conference and Plaintiffs' Issue**

When asked by the Court at the April 20 Case Management Conference to provide an update on the status of discovery with the Generic Manufacturers, Plaintiffs described a very

---

[3]  During the parties' meetings regarding document production timing issues, Plaintiffs requested and Generic Manufacturers agreed to a ten-day stay of depositions (May 11-21).

[4]  Even over the Memorial Day holiday weekend, Generic Manufacturers continued to make document productions.  *See*, Henry Dec., Exhibit B, ¶16.

narrow issue – one they had not raised with the Generic Manufacturers or attempted to resolve prior to the Case Management Conference. The Court understood the issue as Plaintiffs' belief that they were receiving too many documents too late before taking depositions. Exhibit D, Transcript at 31:4-6. Plaintiffs confirmed what they sought was a deadline for production of non-custodial documents in advance of depositions. *Id*. at 27:2-7; 31:224-32:1; and 39:23-40:2. The solution, as Plaintiffs explained it to the Court, would be if Generic Manufacturers would produce "most of the documents" twenty days in advance of the deposition, with fourteen days as the hard cutoff. *Id*. at 27:9-13. As the Plaintiffs continued their discussion,[5] they conceded that in every instance they had been able to work amicably through the issue and either agree to leave commenced depositions open or reschedule to a mutually agreeable date. *Id*. 39:6-17.

To resolve the issue, the Court instructed the parties to first work together to amend the relevant Pretrial Orders as necessary, "whether it is 54 and 60" or another as well. *Id*. 43:3-8. If the parties could not agree on a solution, the Court stated it would take submissions from the parties by 5:00 p.m. on Wednesday, April 28, 2021. *Id*.43:9-22. Importantly, at a later point in the Case Management Conference, the Court vacated Plaintiffs' deadline to disclose experts by August 2, 2021 in anticipation of the Court entering a new schedule for completion of discovery. *Id*.76:18-22. All parties have completed their Court directed submissions on modifying Pretrial Order 30.

C.      **The Parties' April 28 Submissions**

Despite meeting and conferring at length, Plaintiffs and Generic Manufacturers have not come to agreement on amending Pretrial Order 60. The differences, however, were not with respect to the fairly narrow issue Plaintiffs raised during the Case Management Conference – setting a number of days in advance by which Generic Manufacturers are to produce non-custodial documents related to a corporate representative deposition. On that issue, the parties agreed that Generic Manufacturers would use best efforts to substantially complete production of non-

---

[5] The entire discussion can be found at page 22:4 through 49:18 of the April 20, 2021 Case Management Conference transcript, Exhibit C

custodial documents twenty-one days in advance of a related deposition, but no later than fourteen days before the deposition. *See*, Generic Manufacturer's submission, Exhibit E, pp. 6-7; Plaintiffs' submission, Exhibit F, p.6. The parties also agreed that no later than fourteen days before a scheduled deposition, the Generic Manufacturers would disclose any responsive documents related to the topic of the deposition that the Generic Manufacturer had not yet produced. Finally, to provide additional time to reschedule depositions and to complete necessary document production in advance, the parties agreed to lift the June 15 date in Pretrial Order 60 by which all depositions had to be scheduled, allowing the parties additional time to produce documents and take depositions.[6]

The Generic Manufacturers' submission on April 28 included only the edits to Pretrial Order 60 needed to accomplish the agreement of the parties on the issues discussed at the April 20 Case Management Conference. *See*, Exhibit E. Plaintiffs' submission on April 28 included edits to Pretrial Order 60 that went far beyond curing the modest issue they raised at the April 20 Case Management Conference, proposed revisions to Pretrial Order 54 that would impact all parties, and sought to set document production deadlines that the parties had not discussed. *See*, Exhibit F. Following the parties' appearance before the Court on May 11, 2021 for a status conference, Plaintiffs proposed completely new language that doubled down on the extensive changes to discovery they originally proposed in in their revisions to Pretrial Orders 54 and 60, and added even more changes that were not previously raised to the Court. *See* Exhibit G. Plaintiffs acknowledge they have done this—it is set forth clearly in their Reply in support of their motion to modify Pretrial Order 30. DE 3533.[7]

---

[6]  The parties did not formally agree on a new date by which the depositions must be concluded. However, the Generic Manufacturers do not object to the most recent "end date" proposed by Plaintiffs of September 15, 2021. *See*, Plaintiffs' May 17 supplemental proposal, Exhibit G, p. 2.

[7]  In their Reply, Plaintiffs reference a dispute as to production of batch records. Although Plaintiffs have preliminarily raised production of batch records in meet and confer discussions, Plaintiffs did not seek any changes to Pretrial Orders 54 or 60 related to batch records and the Court's consideration of that issue is premature. In any event, Plaintiffs appeared to have only first issued their "request" relating to batch records on Wednesday, May 26, 2021.

### III. **PLAINTIFFS' PROPOSED AMENDMENTS TO PRETRIAL ORDERS 54 AND 60 SEEK TO REVISE THE STRUCTURE OF DISCOVERY**

#### A. **Plaintiffs Seek Certification of "Complete" Document Production**

At the April 20 Case Management Conference, Plaintiffs explained that their goal was "to get – we understand that there is no such thing as perfect production, but a substantially complete production from the Defendants before we move forward with the deposition." Exhibit D, Transcript 26:4-7. *See also*, Transcript 27:11-13 ("[A] goal of most of the documents being produced 20 days in advance of the deposition, with 14 days as a hard cutoff."). But Plaintiffs departed from "substantially complete" when proposing their edits to Pretrial Order 60, suddenly insisting upon complete production from Generic Manufacturers within the agreed time frames, despite their earlier representations. *See* Exhibit F, p.6. If there were any doubt about Plaintiffs' use of the word complete, they resolved that doubt when they sent Generic Manufacturers a new proposal on May 17 requiring "a certification of completion," a concept unknown in the Federal Rules of Civil Procedure. *See* Exhibit G, p.2, bullet 1, red font in original.[8]

To properly prepare to take the deposition of a corporate witness, Plaintiffs do not need the Generic Manufacturers to certify the completeness of their entire document production responsive to the 111 Requests for Production, or even to the Requests associated with the deposition topics. The Federal Rules of Civil Procedure do not require a certification of completion when producing documents. The Federal Rules, like courts generally, recognize that parties may subsequently discover documents that were not part of an original production and impose on parties an obligation to timely disclose and supplement their production with any newly discovered materials. Fed. R. Civ. Pro. 26(e). The comments to subsection (g)(l) tell us that Rule 26(g) "imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the

---

[8]  In addition, Plaintiffs propose imposing the unduly burdensome requirement that Generic Manufacturers "must supply Plaintiffs with a production log, containing at a minimum, the information contained in the Template Production Log. This log must contain information for all productions made to date and must be supplemented each time a production is made (i.e., at least weekly) and should be sent in Excel format along with the production cover letter." Exhibit G, pp.2-3.

spirit and the purposes of Rules 26-37." Fed. R. Civ. P. 26(g) advisory committee's note. Additionally, "the signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." *Id.* Although there is a duty to make a reasonable inquiry to ensure that discovery responses are complete, there is no duty to certify complete discovery. *United States v. Fresenius Medical Care Holdings, Inc.,* No. 1:10-CV-1614-AT, 2014 WL 11517841, at *18-19 (N.D. Ga. May 13, 2014). The "complete and correct" language applies only to initial disclosures required by Rule 26(a) (l).  *Moore v. Publicis Groupe*, 287 F.R.D. 182, 188 (S.D.N.Y. 2012). Given the scope and pace of this litigation, Generic Manufacturers cannot agree to discovery requirements more onerous than the Federal Rules that could subject them to punitive measures should they later discover and timely produce responsive materials that escaped prior diligent search efforts.

**B.      Plaintiffs Seek Right to Recall Witnesses at Will**

In their proposed edits to Pretrial Orders 54 and 60, Plaintiffs sought to eliminate ¶ E.5. of Pretrial Order 54.  *See* Exhibit F, p.6 ("This provision therefore overrides section (E)(5) of Pretrial Order 54.") and p. 26.  Plaintiffs now seek to excise language from Pretrial Order 54, to which they previously agreed, that reflects the realities of document production in a large complex MDL:

> To the extent responsive documents are produced or custodial documents are identified after the deposition of any witness, a supplemental deposition may be requested, and the parties agree to meet and confer in good faith on the issue. Any subsequent deposition shall be limited to issues arising from supplemental productions or identification of custodial documents. A party seeking to take a second deposition of a witness shall provide the opposing party its basis for an exception. ~~This provision does not apply if the noticing counsel has been informed at least five (5) days in advance of the deposition that the production of custodial documents relating to that witness is not yet complete and provides a date certain by which such production will be completed. If noticing counsel nevertheless elects to proceed with a deposition, the subsequent production of documents shall not be a valid basis for requesting a supplemental deposition. This provision also does not apply if the noticing counsel serves additional document requests after the witness's deposition that could have reasonably been requested prior to the deposition.~~

8

Plaintiffs' proposed edits to Pretrial Order 54.E.5, Exhibit F, p. 26. *See also* Exhibit G, p. 2, bullet 5. Plaintiffs previously agreed to this language in negotiations and have not shown a reason why its continued application would impose any hardship upon them. But eliminating this language, as Plaintiffs suggest, would allow Plaintiffs to take second depositions of corporate representatives anytime they receive any further documents, solely at their discretion. This would impose a significant hardship on defendants.

Giving Plaintiffs the ability to re-depose witnesses also does not help to resolve the timing of document production or the timely completion of depositions of Generic defendants' corporate representatives. Production of non-custodial documents and the custodial file of the witness at least fourteen days prior to the deposition will ensure that Plaintiffs have the documents needed to take a substantive deposition and that the witness has the necessary information to prepare. Pretrial Order 54.E.5 encourages timely disclosure of anticipated future production of responsive documents and protects the rights of all parties where ongoing investigation and unforeseeable circumstances cause a Generic Manufacturer to timely supplement its production with newly discovered documents. This carefully negotiated provision: (i) allows Plaintiffs to decide whether to postpone a deposition to review additional documents; (ii) protects witnesses from sitting for unnecessary further depositions once they have completed their initial seven hour deposition; and (iii) keeps discovery burdens proportionate and tailored to the needs of this litigation.

Additionally, Plaintiffs' intent is to impose the double-deposition rule on all parties, given they propose to modify *both* Pretrial Orders 60 and 54. While Pretrial Order 60 applies to the Generic Manufacturers only, Pretrial Order 54 applies to all parties. Plaintiffs have not suggested or attempted to justify applying a separate rule governing depositions for Generic Manufacturers, but they also have not either sought consent from all defendants to their proposed modifications to Pretrial Order 54 (to which the other groups of defendants also do not agree), nor have they provided any justification for changing Pretrial Order 54 for all parties.

### C.    Plaintiffs Seek to Take a Second, Separate Deposition of Corporate Representatives as Fact Witnesses

Plaintiffs want the ability to depose corporate witnesses more than once, taking a second deposition in the deponent's role as a fact witness as to personal knowledge, yet they want to have it count as just one deposition under the previously negotiated five deposition cap in Pretrial Order 54. Plaintiffs demand the following edits to Pretrial Order 54:

> If a corporate representative for a 30(b)(6) deposition is asked a question thought to be outside the scope of the notice, counsel for the tendering Defendant shall state merely "scope," and the witness shall answer the question. This testimony may later be adjudicated by the Court to be either testimony as the Defendant's corporate representative or as testimony given in the witness's individual capacity. If the parties seek to Absent good cause shown, Plaintiffs should not take a subsequent separate individual deposition of a witness designated as a corporate representative for a 30(b)(6) deposition, they will meet and confer in good faith to reach agreement. In the event they do not reach agreement so, the parties will seek resolution in accordance with PTO 32. If the separate individual deposition of a witness is taken, it shall not count as an additional deposition for purposes of this section;

Plaintiffs' suggested edits to Pretrial Order 54, Exhibit F, p. 16.  As their suggested edits make clear, Plaintiffs seek the right to take a second deposition of a witness, yet not have the second deposition count against the soft caps to which they agreed.  Those caps and the time limits imposed for depositions by Pretrial Order 54 were negotiated between the parties to ensure Plaintiffs were able to take the depositions they required while limiting the burden on individual witnesses and ensuring discovery was tailored and proportional to the needs of the litigation. Plaintiffs have not provided any facts that would suggest they have been precluded from discovering any relevant information over the course of the Brand or Generic Manufacturer depositions to date either by being limited to seven hours of time or by not being able to take a second deposition of the same witness without it impacting the cap. Nor has any Generic Manufacturer asserted that the soft cap in Pretrial Order 54 precludes the taking of any deposition.

This requested modification is improper because: (i) it is unrelated to the timing of document production, the concern the Plaintiffs put before the Court at the April 20 Case

Management Conference; (ii) Pretrial Order 54 applies to all parties, not just Generic Manufacturers; and (iii) any proposed modifications to Pretrial Order 54 must include input from and agreement of all parties, which Plaintiffs have not even attempted to obtain.

### D.   Plaintiffs Seek to Alter Length and Counting of Depositions

Plaintiffs seek to insert into Pretrial Order 60 the following language:

> If a Defendant determines that two or more witnesses are necessary, then two separate depositions with the full time allotted under PTO 54 for each witness, will take place, and the second or additional witnesses' deposition will not count against the "soft cap" on depositions of Generic Manufacturers.

Plaintiffs' proposed edits to Pretrial Order 60, Exhibit F, p.9.

In the negotiations leading to Pretrial Order 54, Plaintiffs, the Brand Manufacturers, the Generic Manufacturers and other parties discussed the scope of discovery and the appropriate number of depositions, agreeing after many weeks of negotiations to soft-caps that are tailored to each defense group and proportional to the needs of this litigation.  *See*, DE 2260, Pretrial Order 54.A.6.  This language would alter the negotiated cap on depositions set out in Pretrial Order 54. Plaintiffs also seek to expand the agreed upon caps before any Generic defendant has even attempted to impose the five-deposition soft cap of Pretrial Order 54.  Pretrial Order 54 requires that Plaintiffs must show good cause on a deposition-by-deposition basis as to any such modification regarding limitations on depositions. Plaintiffs have not demonstrated a need to modify a provision that they negotiated and agreed to months prior.

### E.   Plaintiffs Seek to Shorten Deposition Notice Time

Inexplicably, Plaintiffs also look to shorten the time required for service of deposition notices prior to the noticed deposition date.  Their suggested edits to Pretrial Order 54 include:

> **Adequacy of Notice.** All deposition notices shall be noticed at least fourteen (14) ~~twenty-one (21)~~ days in advance. If the deponent is requested to bring documents to the deposition or produce them in advance of the deposition, the notice with incorporated request to produce shall be served at least twenty-one (21) ~~thirty (30) calendar~~ days before a scheduled deposition, unless otherwise agreed to by counsel. This provision shall not apply to custodial productions related

11

to the deponent or any non-custodial productions required to be provided in conjunction with the deposition prior to the deposition. Any request for production of witness custodial files is governed by Section H *infra*.

Plaintiffs' suggested edits to Pretrial Order 54, Exhibit F, pp. 21-22.[9]

Plaintiffs have provided no justification for shortening an already fairly brief notice requirement from 21 days to 14 days or explained how this will assist the orderly completion of depositions of Generic defendants. This is not a modification needed to resolve the timing of document production and would run contrary to the notice periods in Pretrial Order 54 to which the parties agreed. Because Pretrial Order 54 requires production of a witness's custodial file *fifteen* days prior to the deposition and related non-custodial documents *fourteen* days prior, providing notice of a deposition just *fourteen* days prior to the deposition would clearly make it impossible for a Generic Manufacturer to comply with this proposed modification to Pretrial Order 54. Plaintiffs provide no reasoned explanation for how the proffered qualifying language would protect a witness's ability to search for and review documents to adequately prepare for such deposition.

Similarly, this provision would violate Pretrial Order 60.III.A.2 that requires the parties to meet and confer in good faith at least twenty-one days in advance of a deposition to resolve the issues discussed in Federal Rule of Civil Procedure 30(b)(6). It would also make it impossible for the parties to have timely resolved any disputes no later than fourteen days prior to the deposition, either by agreement or Pretrial Order 32, if depositions could first be noticed just fourteen days before they are to occur. DE 2877, Pretrial Order 60.III.A.2.

Plaintiffs' proposed shorter notice period would place every defendant in the difficult position of being unable to negotiate the scope of a 30(b)(6) deposition, timely produce related documents, or prepare the witness for deposition in the two weeks of notice that would now be

---

[9] Like other parts of Plaintiffs' proposed edits to Pretrial Orders 54 and 60 (*see* Section G, *infra*), the unedited portion of the text reproduced by Plaintiffs in not faithful to the as-entered Pretrial Order. For example, in Plaintiffs' edits of Paragraph C.10 of Pretrial Order 54, they fail to include the highlighted text, which appears in the as-entered Pretrial Order.

required. Therefore, any proposed modifications to Pretrial Order 54, including shortening the notice period, must include input from and agreement of all parties.

### F.   Plaintiffs Seek to Limit the Negotiated Objections to Corporate Depositions

Plaintiffs' suggested edits to Pretrial Order 54 also seek to limit the agreed objections that permit a party to instruct a witness to not answer questions beyond the scope of a deposition. Plaintiffs propose altering Pretrial Order 54 as follows:

> Counsel shall not direct or request that a witness refuse to answer a question, unless that counsel has objected on the ground that the question seeks privileged information, the question seeks information that the Court has ordered may not be discovered, ~~the question exceeds the scope of the 30(b)(6) notice,~~ or a deponent seeks to present a motion to the Court for termination or limitation of the deposition on the ground that it is being conducted in bad faith or in such a manner as to unreasonably annoy, embarrass, harass, or oppress the party or deponent. For non-United States witnesses, a witness may be instructed not to answer where the question necessarily calls for information governed by the foreign country's data privacy protections. Unless otherwise specified, an instruction not to answer by one Defendant should not be deemed an instruction not to answer by all Defendants, and an instruction not to answer by one Plaintiff should not be deemed an instruction not to answer by all Plaintiffs at risk for sanctions should he/she instruct a witness in bad faith.

Plaintiffs' proposed edits to Pretrial Order 54, Exhibit F, p. 33. This would be another fundamental change to the discovery process negotiated by and applying to all parties in this litigation, and one that is inconsistent with the Federal Rules of Civil Procedure. This bargained-for provision was included in Pretrial Order 54 to ensure that a defendant could designate and prepare its representatives on specific deposition topic areas and preclude Plaintiffs from seeking testimony on those topics from other witnesses who were designated to cover entirely different topics, without Plaintiffs straying into off-topic areas for which the witness was not prepared to or designated to testify. Objections that questions are outside the scope of a Rule 30(b)(6) corporate representative's designated topics are not new to this type of litigation and reasonably require the questioning attorney to tailor their questions to the topics on which a corporation has chosen to

designate them. Plaintiffs knew this when they agreed to the original language of Pretrial Order 54 that they now seek to modify.

Plaintiffs' proposed removal of this language permitting objections on scope has nothing to do with the timing of document production, the issue they raised to the Court. Eliminating this important guardrail during depositions would also affect the rights of every defendant in this litigation, not just the Generic Manufacturers. Thus, every defendant must be heard on the issue.

### G.    Plaintiffs Entirely Re-Wrote Section H of Pretrial Order 54, But Only Disclose Limited Edits

Plaintiffs' proposal to entirely revise Paragraph H of Pretrial Order 54 is troubling. This provision of the Pretrial Order discusses a defendant's obligation to produce the custodial file of a witness in advance of the witness's deposition. Below are Plaintiffs' suggested edits to Paragraph H of Pretrial Order 54.

In the MDL Proceeding, Defendants have begun producing custodial files for certain present and former employees. In the event Provided that Plaintiffs notify counsel for a Defendant of an intent to depose a present or former employee whose custodial file has not been produced, Defendant will have a reasonable time to produce the custodial file. In such case, Plaintiffs shall notify counsel for Defendant at least forty-five (45) days in advance of the intended deposition of any of Defendants' present employees or sixty (60) days in advance of the intended deposition of a former company employee of a Defendant. For witnesses whose custodial files were previously produced, file has been properly requested and the production has not been completed, the Defendant will provide a supplemental production as to that witness. Defendant will conduct a good faith good faith reasonable search for supplemental additional custodial documents if requested that have not been produced. Any additional custodial documents will be produced subject to the Pretrial Orders PTOs in place in this case, including Pretrial Order PTO #26 (Confidentiality Order). Defendants will produce supplemental custodial files at least fifteen (15) days before the scheduled deposition and will make best efforts to produce supplemental custodial files twenty-one (21) days before the scheduled deposition. Counsel must meet and confer regarding an appropriate deposition date, giving due consideration to the current production schedule and the potential volume of the documents at issue. If a Defendant is unable to complete its custodial production in accordance with these timeframes, they will notify Plaintiffs at

14

least fifteen (15) days in advance of the deposition and the parties will meet and confer to determine whether to proceed as scheduled or postpone the deposition for a date certain that is mutually convenient for the parties but no later than 14 days after the original noticed date. If the parties cannot reach agreement, they will submit the issue to the Court in accordance with PTO 32.

Redline of Plaintiffs' suggested edits to Pretrial Order 54 (Exhibit F, pp. 30-31) against the as-entered Pretrial Order 54, DE 2260.  Importantly, the yellow highlighted portions of the above redline are edits to Pretrial Order 54 that *are not* reflected in Plaintiffs' proposed edits, but which had already been made to the language of Pretrial Order 54 before Plaintiffs applied their other edits in redline.  In other words, Plaintiffs' proposed revisions make it look as though they are only recommending adding the last sentence – set off in blue text above – while hiding from the Court that their rewrite of this provision is far more extensive.

Were the Court to adopt Plaintiffs' proposed Section H. as written, it would adopt substantive wholesale changes not disclosed (or justified) by Plaintiffs.  As the Court knows, every sentence and word in Pretrial Order 54 was debated at length, with each side preserving or bargaining away rights or protections to ensure the scope, timing and burdens of deposition practice in this MDL were tailored and proportional to each group of defendants, and to each party. As Plaintiffs' undisclosed edits to Section H demonstrate, they seek changes without attempting to justify why the language they now demand is necessary.

Like Plaintiffs other suggested edits to Pretrial Order 54, these edits – disclosed and undisclosed – affect the deposition procedures for all parties.  Thus, the Court must hear from all parties before considering this and other changes to Pretrial Order 54.

H.     **Plaintiffs Seek a Discovery Order that Applies to Foreign Defendants Not Subject to this Court's Jurisdiction.**

In the supplemental materials Plaintiffs shared with the Generic Manufacturers on May 17 (Exhibit G), Plaintiffs attempted to include deadlines for document production and depositions from those foreign defendants that have challenged the Court's jurisdiction.  With respect to

document production deadlines, Plaintiffs propose placing the following requirement on foreign defendants:

> For any Generic Defendant who appears later as a result of the Court's rulings as to personal jurisdiction, the deadline for those Defendants will be extended to July 30, 2021.

Exhibit G, page 2. Similarly, Plaintiffs propose setting deadlines for depositions for those foreign defendants who are not yet subject to the Court's jurisdiction by stating:

> For any Defendant who appears later as a result of the Court's rulings as to personal jurisdiction, the deadline for depositions as to those Defendants will be extended to September 15, 2021.

*Id*. Plaintiffs offer these changes in their separate supplemental offering to the Generic Manufacturers because Pretrial Order 60 precludes discovery against the foreign defendants unless and until those defendants become subject to the jurisdiction of this Court. Attempting to set fast-approaching deadlines for discovery from parties not yet under this Court's jurisdiction is clearly not needed to achieve the document production cutoff Plaintiffs raised at the Case Management Conference, which applied solely to the Generic Defendants who are already subject to jurisdiction in this Court.

Those foreign defendants challenging the Court's jurisdiction are not subject to discovery, nor can a current Court order govern their conduct. And, as a practical matter, these parties have not participated in the case, have not reviewed Plaintiffs' discovery requests, and have not assessed the burden in responding to Plaintiffs' discovery requests nor attempted to estimate their ability to timely produce documents. They also do not know when the Court will rule on pending jurisdictional challenges. It makes no sense to set deadlines for completion of discovery from these foreign defendants when they do not know whether or when they will be subject to jurisdiction. Plaintiffs would have this Court impose deadlines that are just six weeks away when the Court may not have even ruled by then, or if it has and if motions are denied, then would provide thirty days or less for determining custodians, collecting and producing all custodial and non-custodial

documents, and completing depositions on the three current topics. This is practically impossible, and completely unjustified.

## IV.   <u>CONCLUSION</u>

In light of the above, this Court should reject Plaintiffs' requests, as outlined in Section III above, to modify Pretrial Orders 54 and 60 beyond the agreed upon terms that address the narrow issue Plaintiffs identified for the Court during the April 20, 2021 Case Management Conference: Setting a date by which Generic Manufacturers must produce non-custodial documents in advance of a related 30(b)(6) deposition.

Dated: June 1, 2021                    Respectfully submitted,

*Generic Defendants' Co-Liaison Counsel:*

<u>/s/ Richard M. Barnes</u>
Richard M. Barnes
Kamil Ismail
Sean Gugerty
**Goodell, DeVries, Leech & Dann, LLP**
One South Street, 20th Floor
Baltimore, Maryland 21202
Tel: (410)783-4000
rmb@gdldlaw.com
kxi@gdldlaw.com
sgugerty@gdldlaw.com

*Attorneys for Defendant*
*L. Perrigo Company*

<u>/s/ Thomas J. Yoo</u>
Thomas J. Yoo
**HOLLAND & KNIGHT LLP**
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
T: 213.896.2400
F: 213.896.2450
Thomas.Yoo@hklaw.com

Philip E. Rothschild
Fla. Bar No.: [0088536]
515 East Las Olas Boulevard, Ste  1200
Fort Lauderdale, Florida 33301
T: 954.525.1000
F: 954.463.2030
Phil.Rothschild@hklaw.com

Daniel Mateo
Amy McVeigh
2929 Arch Street
Philadelphia, PA  19104
T: 215.252.9600
Daniel.Mateo@hklaw.com
Amy.McVeigh@hklaw.com

17

Daniel Winters
31 West 52nd Street, 12th Floor
New York, NY  10019
T: 212.513.3200
Daniel.Winters@hklaw.com
*Attorneys for Glenmark Pharmaceuticals Inc., USA, f/k/a Glenmark Generics Inc., USA and Glenmark Pharmaceuticals Ltd. (f/k/a Glenmark Generics Ltd.)*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2021, I electronically filed the foregoing **GENERIC MANUFACTURER DEFENDANTS' SUBMISSION ON PLAINTIFFS' PROPOSED AMENDMENTS TO PRETRIAL ORDERS 54 AND 60** with the Clerk of Court using the CM/ECF system, which will provide automatic notification to all counsel of record.

/s/ Terry M. Henry
Terry M. Henry

**Exhibit A**

## Henry, Terry M.

| | |
|---|---|
| **From:** | Henry, Terry M. |
| **Sent:** | Thursday, January 28, 2021 4:33 PM |
| **To:** | DODGE, JAIME LYNNE |
| **Cc:** | Mike McGlamry; Finken, Tracy; thompsons@gtlaw.com |
| **Subject:** | RE: [External] Zantac Litigation - Generic Discovery Agreement |
| **Attachments:** | (125102555)_(1)_Draft Generic Discovery Agreement.DOCX |

Just sent it to you, but since Mike and Tracy are on this one, here it is for everyone.


**Terry M. Henry** (he/him)│ BLANKROME
One Logan Square | 130 North 18th Street | Philadelphia, PA 19103
O: 215.569.5644 | M: 215.694.5136 | thenry@blankrome.com
BLANKROME COVID-19 Task Force Page


**From:** DODGE, JAIME LYNNE
**Sent:** Thursday, January 28, 2021 4:32 PM
**To:** Henry, Terry M.
**Cc:** Mike McGlamry ; Finken, Tracy ; thompsons@gtlaw.com
**Subject:** Re: [External] Zantac Litigation - Generic Discovery Agreement

Can we also get a clean copy of the agreement? If someone wants to send it to me, I can paste it into an email so it's from me to you all; or one of you can send it to the others and cc me – I just want a clean record for you all of what the final agreement between you all is, without threads showing the whole negotiation!

Jaime Dodge
Director, Emory Institute for Complex Litigation
C: (415) 515-7911

**From:** Terry Henry <THenry@blankrome.com>
**Date:** Thursday, January 28, 2021 at 4:29 PM
**To:** Jaime Dodge <jdodge@emory.edu>
**Cc:** Mike McGlamry <mmcglamry@pmkm.com>, Tracy Finken <tfinken@anapolweiss.com>,
"thompsons@gtlaw.com" <thompsons@gtlaw.com>
**Subject:** [External] Zantac Litigation - Generic Discovery Agreement

Jaime:

Below is the list of 23 defendants served notices of deposition for a storage and transportation witness. As you can see, the only "no" vote was from Hikma, who claimed that Adam Pulaski has promised to dismiss Hikma from the MPIC. I spoke briefly with Adam, who was not at his desk. He promised to follow up with me later today to confirm, or not.

We would appreciate receiving as soon as possible, the Notices of Deposition, Interrogatories and Requests for Production of Documents. This will enable us to provide to Mike and Tracy an initial report on how each defendant

envisions responding to the deposition notices (which topics apply), and whether the generic defendants believe that the scope of the topics should be counted as more that three witnesses.

Let us know if there are any questions or concerns regarding these issues.

**Terry M. Henry** (he/him)| BLANK**ROME**
One Logan Square | 130 North 18th Street | Philadelphia, PA 19103
O: 215.569.5644 | M: 215.694.5136 | thenry@blankrome.com
BLANK**ROME** COVID-19 Task Force Page

| Defendant Family | Disc Agr. |
|---|---|
| Ajanta | Yes |
| Amneal | Yes |
| Apotex | Yes |
| Aurobindo | Yes |
| Dr. Reddys | Yes |
| Glenmark | Yes |
| Granules | Yes |
| Heritage | Yes |
| Hikma | No |
| Lannett | Yes |
| Mylan | Yes |
| Nostrum | Yes |
| Novitium | Yes |
| PAI | Yes |
| PAR | Yes |
| Perrigo | Yes |
| Sandoz | Yes |
| Strides | Yes |
| Sun-Ranbaxy | Yes |
| Teva | Yes |
| Torrent | Yes |
| Wockardt | Yes |
| Zydus | Yes |

************************************************************************************************************

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the Blank Rome LLP or Blank Rome Government Relations LLC sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

1. Plaintiffs will provide at the earliest opportunity notices of deposition, interrogatories and requests for production of documents, but the "service" date will be calculated from February 9 for purposes of calculating the response date for written discovery.  Specifically:

    a) Plaintiffs will provide to the Generic Manufacturers requests for production of documents on or soon after January 28, 2021.  However, Generic Manufacturers' time to provide written responses will be 30 days from February 9, the date on which plaintiffs will be deemed to have made service.

    b) Plaintiffs will provide to the Generic Manufacturers written interrogatories on the issue of storage, distribution and transportation on or soon after January 28, 2021.  However, Generic Manufacturers' time to respond will be 30 days from February 9, the date on which plaintiffs will be deemed to have made service.

    c) Plaintiffs will provide to the Generic Manufacturers Notices of Deposition on the issues of: (i) storage, distribution and transportation; (ii) manufacturing; and (iii) pharmacovigilance on or soon after January 28, 2021.  Any dates stated in deposition notices will be subject to the other terms of this proposal.

2. Custodial Discovery – Plaintiffs and Generic Manufacturers through good faith negotiations will agree on one set of search terms for targeted non-custodial and limited custodial production, along with designations of select custodians in key areas (targeted to the discovery requests and deposition notices) by February 19, 2021.  In the absence of agreement, the parties agree to use PTO 32 for the court to resolve the search term and custodian issues at a February 23, 2021 hearing.

3. Generic Manufacturers agree to produce corporate representatives in response to Notices of 30(b)(6) Deposition on the general categories of: (i) Storage, Distribution and Transport; (ii) Pharmacovigilance; and (iii) Manufacturing Depositions, with all depositions completed by June 15.

4. In agreeing to produce witnesses for these categories, Generic Manufacturers do not waive and specifically reserve their right to raise any objections related to scope, relevance, or proportionality in accordance with paragraph 5.

5. The parties will engage in good faith meet and confer meetings to narrowly tailor the scope, relevance and proportionality of the deposition notices to the allegations raised in plaintiffs' amended pleading and to the proportionality of this litigation and must reach agreement by February 19, 2021. In the absence of agreement, the parties agree to use PTO 32 for the court to resolve the issues of scope, relevance and proportionality at a February 23, 2021 hearing.  No later than February 28, 2021 (or three days after the Court's order, whichever is later), each Generic Manufacturer will provide to plaintiffs the number of witnesses it expects to produce for each deposition notice and tentative dates on which it will present each witness for deposition in accordance with the below scheduling requirements.

    a) Each Generic Manufacturer will provide a date in April 2021 to produce its witnesses on the issue of storage, distribution and transport and to endeavor to complete all designated representatives for the storage and transportation issues before April 30.

    b) Each Generic Manufacturer will provide a date in May 2021 to produce its witnesses on the issue of manufacturing and to endeavor to complete all designated representatives as to a still to be served notice before May 31.

c) Each Generic Manufacturer will provide a date in May 2021 to produce its witnesses on the issue of pharmacovigilance and to endeavor to complete all designated representatives as to a still to be served notice before June 15.

d) All dates provided by Generic Manufacturers are subject to scheduling issues that may arise on individual defendant and witness basis. Any depositions that require rescheduling will be reset for a date prior to June 15, 2021. If the parties cannot agree on a reschedule date prior to June 15, they will meet and confer with the special master, who will have the sole authority to permit a rescheduled deposition to occur between June 16 and June 30. In no event will a deposition occur after June 30.

e) Nothing in this agreement precludes plaintiffs and individual Generic Manufacturers from agreeing to schedule depositions in an order and on topics applicable to the individual Generic Manufacturer.

6. This agreement on scheduling of depositions does not apply to those foreign defendants not subject to this court's jurisdiction. Specifically, the Generic Manufacturers that fall outside of this agreement are those that have moved the court for dismissal for lack of personal jurisdiction, on whom plaintiffs have not yet formally served the summons and complaint on the foreign affiliate, or whose foreign affiliates have been dropped by agreement from the master complaints without a stipulation as to participation in discovery. Generic Manufacturers with foreign affiliates not subject to the court's jurisdiction will not be required to respond to written discovery or deposition notices on topics that fall within the role of their foreign affiliate.

**Exhibit B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION | MDL   NO.   2924 20-MD-2924 |
| | JUDGE ROBIN L. ROSENBERG MAGISTRATE JUDGE BRUCE E. REINHART |

_____/

THIS DOCUMENT RELATES TO ALL CASES

---

DECLARATION OF TERRY M. HENRY
IN SUPPORT OF GENERIC MANUFACTURERS' SUBMISSION ON PLAINTIFFS'
PROPOSED AMENDMENTS TO PRETRIAL ORDERS 54 AND 60

---

I, Terry M. Henry, hereby declare as follows:

1.      I am a Partner at Blank Rome LLP, which is counsel for Apotex Corporation ("Apotex Corp.") in this above-captioned litigation.

2.      I make this declaration in support of Generic Manufacturers' Submission on Plaintiffs' Proposed Amendments to Pretrial Orders 54 (DE 2260) and 60 (DE 2877) ("Generic Manufacturers' Submission").

3.      I was asked to work on behalf of the Generic Defendants, a group of over twenty defendants identified as "Generic Manufacturers" in the Amended Master Personal Injury Complaint, to resolve with Plaintiffs a number of discovery-related issues.

4.      One of the tasks I undertook was a series of negotiating sessions about how discovery as to the Generic Defendants would be conducted, which resulted in an agreement informally referred to as the Generic Discovery Agreement ("Agreement").  *See,* Exhibit A to Generic Manufacturers' Submission.

5.      The Agreement was meant to address the tension arising from Plaintiffs' desire to begin scheduling depositions of corporate witnesses and the Generic Defendants' position that, at that time, no claims were pending against them because Plaintiffs' master pleadings had been dismissed and amended pleadings had not yet been filed.

6.      The primary focus of the Agreement was that Generic Manufacturers were to prepare and present witnesses on three general topics – storage and transportation, manufacturing and pharmacovigilance – after time to first produce documents relevant to those topics and deponents.  These depositions were to be scheduled between April 1 and June 15 so that Plaintiffs could meet their Pretrial Order 30 deadline of August 2 for disclosure of expert reports.

7.      As required by that Agreement, on January 29, 2021, Plaintiffs provided three 30(b)(6) deposition notices, 111 requests for production of documents and a set of interrogatories, which were later deemed served as of February 9, 2021.  *See* Exhibit C, January 29, 2021 email from M. Goldenberg sent at 11;14 p.m., attached to Generic Manufacturers' Submission.

8.      In mid-February, the Generic Defendants were advised that the Court wanted the Agreement reduced to a Pretrial Order.

9.      In discussing converting the Agreement to a pretrial order, the parties acknowledged that Pretrial Order 54 governed the timing of production for witness custodial files, but no Pretrial Order set the timing for production of non-custodial documents in advance of a deposition.  Plaintiffs' 30(b)(6) Notices of Deposition only required production of materials on which the witness would rely and the witness' CV (if applicable) three days prior to the deposition.

10.      Because of the broad scope of Plaintiffs' 111 document requests, the parties agreed that a deadline for non-custodial document production was not feasible in light of the aggressive

deposition schedule, and that Generic Manufacturers would produce documents on a rolling basis, first prioritizing non-custodial documents related to the deposition notices.

11.     During the April 20, 2021 Case Management Conference, Plaintiffs raised a concern that Pretrial Order 60 did not include a deadline for production of non-custodial documents in advance of a deposition, which lead Plaintiffs to reschedule several depositions of Generic Manufacturer corporate representatives.

12.     When the Court directed the parties to discuss possible amendments to Pretrial Order 60 to resolve this issue, the Generic Manufacturers asked me to participate in those discussions.

13.     To meaningfully engage with Plaintiffs' Co-Leads during the discussions to amend Pretrial Order 60, I routinely surveyed the Generic Manufacturers regarding the general status of their document production, the scheduling of witnesses for deposition and the postponement of scheduled depositions.

14.     During those surveys, I learned that by May 11, 2021, the Generic Manufacturers had already produced over a million documents consisting of over seven and a half million pages.

15.     In addition, by May 11, 2021, the Generic Defendants had presented witnesses at ten depositions.

16.     During the parties' meetings regarding document production timing issues, Plaintiffs requested and Generic Manufacturers agreed to a ten-day stay of depositions (May 11-21).  Although no depositions took place over these ten days, eleven Generic Manufacturers made twenty-two productions consisting of over 300,000 pages of additional documents.  Even over the Memorial Day holiday weekend, Generic Manufacturers continued to make document productions, with two manufacturers making three productions.

17.     Since resumption of depositions on May 24, Plaintiffs have taken the deposition of two additional Generic Manufacturer witnesses and there are thirty-four Generic Manufacturer depositions scheduled through the end of June, while document production continues apace. *See* attached May 28, 2021 master deposition schedule, filtered for Generic Manufacturers only.


I declare under penalty of perjury under 28 U.S.C. § 1746 and the laws of the United States of America that the foregoing is true and correct.

Dated:  June 1, 2021

_____
TERRY M. HENRY

| DATE | TIME | PARTY | DEPO TYPE | DEPONENT | LOCATION | DEADLINE TO INFORM R. CARMONY RE ATTENDANCE (rcarmony@wattsguerra.com) | STATUS |
|---|---|---|---|---|---|---|---|
| Tuesday, June 1, 2021 | 10:00 AM CST | Plaintiff | In Extremis/Trial Preservation | Dian Sharma | Veritext Zoom Conference | Tuesday, May 25, 2021 | |
| Tuesday, June 1, 2021 | 9:00 AM EST | Lannett | 30(b)(6) - Storage & Transport | TBA | Video Conference | Tuesday, May 25, 2021 | DROPPED |
| Tuesday, June 1, 2021 | 9:00 AM EST | Strides | 30(b)(6) - Storage & Transport | TBA | Video Conference | Tuesday, May 25, 2021 | |
| Wednesday, June 2, 2021 | 10:00 AM EST | Glenmark | 30(b)(6) - Pharmacovigilance | TBA | Video Conference | Friday, May 28, 2021 | |
| Wednesday, June 2, 2021 | 9:00 AM EST | Granules | 30(b)(6) - Pharmacovigilance | TBA | Video Conference | Friday, May 28, 2021 | |
| Thursday, June 3, 2021 | 10:00 AM EST | Novitium | 30(b)(6) - Pharmacovigilance | TBA | Video Conference | Friday, May 28, 2021 | |
| Thursday, June 3, 2021 | 10:00 AM EST | Amneal | 30(b)(6) - Pharmacovigilance | TBA | Video Conference | Friday, May 28, 2021 | |
| Thursday, June 3, 2021 | 9:00 AM EST | Lannett | 30(b)(6) - Manufacturing | TBA | Video Conference | Friday, May 28, 2021 | DROPPED |
| Friday, June 4, 2021 | 9:00 AM EST | Granules | 30(b)(6) - Manufacturing | TBA | Video Conference | Friday, May 28, 2021 | |
| Monday, June 7, 2021 | 9:00 AM EST | Strides | 30(b)(6) - Pharmacovigilance | TBA | Video Conference | Wednesday, June 2, 2021 | |
| Monday, June 7, 2021 | 9:00 AM EST | Perrigo | 30(b)(6) - Manufacturing | TBA | Video Conference | Wednesday, June 2, 2021 | |
| Tuesday, June 8, 2021 | 10:00 AM EST | Ajanta | 30(b)(6) - Pharmacovigilance | TBA | Video Conference | Thursday, June 3, 2021 | |
| Tuesday, June 8, 2021 | 10:00 AM EST | Teva | 30(b)(6) - Manufacturing | TBA | Video Conference | Thursday, June 3, 2021 | |
| Wednesday, June 9, 2021 | 10:00 AM EST | Aurobindo | 30(b)(6) - Pharmacovigilance | TBA | Video Conference | Friday, June 4, 2021 | |
| Wednesday, June 9, 2021 | 10:00 AM EST | Teva | 30(b)(6) - Pharmacovigilance | TBA | Video Conference | Friday, June 4, 2021 | |
| Thursday, June 10, 2021 | 10:00 AM EST | PAR | 30(b)(6) - Pharmacovigilance | TBA | Video Conference | Friday, June 4, 2021 | |
| Thursday, June 10, 2021 | 10:00 AM EST | Teva | 30(b)(6) - Manufacturing | TBA | Video Conference | Friday, June 4, 2021 | |
| Thursday, June 10, 2021 | 9:00 AM EST | Lannett | 30(b)(6) - Pharmacovigilance | TBA | Video Conference | Friday, June 4, 2021 | |
| Thursday, June 10, 2021 | 9:00 AM EST | Publix | 30(b)(6) - Distribution & Storage | TBA | Video Conference | Friday, June 4, 2021 | |
| Thursday, June 10, 2021 | 9:00 AM EST | PAR | 30(b)(6) - Storage & Transport | TBA | Video Conference | Friday, June 4, 2021 | |
| Friday, June 11, 2021 | 10:00 AM EST | PAI | 30(b)(6) - Pharmacovigilance | TBA | Video Conference | Friday, June 4, 2021 | |
| Friday, June 11, 2021 | 9:00 AM EST | Wockhardt | 30(b)(6) - Storage & Transport | TBA | Video Conference | Friday, June 4, 2021 | |
| Monday, June 14, 2021 | 9:00 AM EST | Granules | 30(b)(6) - Manufacturing | TBA | Video Conference | Wednesday, June 9, 2021 | |
| Wednesday, June 16, 2021 | 10:00 AM EST | Torrent | 30(b)(6) - Pharmacovigilance | TBA | Video Conference | Friday, June 11, 2021 | |
| Wednesday, June 16, 2021 | 10:00 AM EST | Glenmark | 30(b)(6) - Storage & Transport | TBA | Video Conference | Friday, June 11, 2021 | |
| Thursday, June 17, 2021 | 9:00 AM EST | Nostrum | 30(b)(6) - Storage & Transport | TBA | Video Conference | Friday, June 11, 2021 | |
| Thursday, June 17, 2021 | 9:00 AM EST | Wockhardt | 30(b)(6) - Pharmacovigilance | TBA | Video Conference | Friday, June 11, 2021 | |
| Friday, June 18, 2021 | 9:00 AM EST | Sandoz | 30(b)(6) - Manufacturing | TBA | Video Conference | Friday, June 11, 2021 | |
| Wednesday, June 23, 2021 | 7:00 AM EST | Teva | Fact Witness | Raphael Nudelman | Video Conference | Friday, June 18, 2021 | |
| Wednesday, June 23, 2021 | 9:00 AM EST | Nostrum | 30(b)(6) - Manufacturing | TBA | Video Conference | Friday, June 18, 2021 | |
| Thursday, June 24, 2021 | 9:00 AM EST | Sandoz | 30(b)(6) - Pharmacovigilance | TBA | Video Conference | Friday, June 18, 2021 | |
| Friday, June 25, 2021 | 9:00 AM EST | Perrigo | 30(b)(6) - Storage & Transport | TBA | Video Conference | Friday, June 18, 2021 | |
| Friday, June 25, 2021 | 9:00 AM EST | PAI | 30(b)(6) - Storage & Transport; Manufacturing | TBA | Video Conference | Friday, June 18, 2021 | |
| Wednesday, June 30, 2021 | 9:00 AM EST | Nostrum | 30(b)(6) - Pharmacovigilance | TBA | Video Conference | Friday, June 25, 2021 | |
| Wednesday, June 30, 2021 | 9:30 PM EST | Glenmark | 30(b)(6) - Manufacturing | TBA | Video Conference | Friday, June 11, 2021 | |

**Exhibit C**

**Henry, Terry M.**

---

| | |
|---|---|
| **From:** | Marlene Goldenberg <mjgoldenberg@goldenberglaw.com> |
| **Sent:** | Friday, January 29, 2021 11:14 PM |
| **To:** | thompsons@gtlaw.com; Henry, Terry M. |
| **Cc:** | jdodge@emory.edu; mmcglamry@pmkm.com; tfinken@anapolweiss.com; frank@colson.com |
| **Subject:** | Re: Zantac - Draft 30(b)(6) Notices for Generics |
| **Attachments:** | 2021-01-29 First Set of Generic Interrogatories - TEMPLATE.pdf; 2021-01-29 First RFPs - TEMPLATE.pdf |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Terry and Sara,

Attached please find the courtesy copies of the interrogatories and the RFPs.

Have a nice weekend,

Marlene



**Marlene J. Goldenberg • Partner**
GOLDENBERGLAW, PLLC
800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402
Direct: (612) 436-5028 • Toll-Free: (855) 333-4662 X528 • Fax: (612) 367-8107
email • website • bio

---

**From:** Marlene Goldenberg
**Sent:** Friday, January 29, 2021 2:05 PM
**To:** thompsons@gtlaw.com ; THenry@blankrome.com
**Cc:** jdodge@emory.edu ; mmcglamry@pmkm.com ; tfinken@anapolweiss.com ; frank@colson.com
**Subject:** Re: Zantac - Draft 30(b)(6) Notices for Generics

Hi Sara,

Yes, we should treat these three notices as the operative copies.

Thanks,

Marlene



**Marlene J. Goldenberg • Partner**
GOLDENBERGLAW, PLLC
800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402
Direct: (612) 436-5028 • Toll-Free: (855) 333-4662 X528 • Fax: (612) 367-8107
email • website • bio

---

**From:** thompsons@gtlaw.com
**Sent:** Friday, January 29, 2021 2:04 PM
**To:** Marlene Goldenberg ; THenry@blankrome.com

1

**Cc:** jdodge@emory.edu ; mmcglamry@pmkm.com ; tfinken@anapolweiss.com ; frank@colson.com
**Subject:** RE: Zantac - Draft 30(b)(6) Notices for Generics
Thanks Marlene. Just for sake of clarity in case we are asked (and we likely will be), this storage and transportation notice is intended to replace the prior notices served on the generic defendants on 1/18 and the prior notices are now pulled down, correct?
Have a good weekend,
-Sara
**Sara K. Thompson**
Shareholder; Vice Chair, Pharmaceutical, Medical Device
& Healthcare Litigation Practice Group
Greenberg Traurig, LLP
Terminus 200
3333 Piedmont Road NE | Suite 2500 | Atlanta, GA 30305
T 678-553-2392   |   F 678-553-2393   |   C 404.775.5833
thompsons@gtlaw.com   |   www.gtlaw.com   |   View GT Biography

**GT** GreenbergTraurig

---

**From:** Marlene Goldenberg
**Sent:** Friday, January 29, 2021 2:42 PM
**To:** Henry, Terry M. ; Thompson, Sara K. (Shld-Atl-LT)
**Cc:** Jaime Dodge (jdodge@emory.edu) ; Mike McGlamry ; Tracy Finken ; MADERAL, FRANK
**Subject:** Zantac - Draft 30(b)(6) Notices for Generics
**\*EXTERNAL TO GT\***

Terry and Sara,
Attached please find the draft 30(b)(6) notices for the three agreed upon categories of storage and transportation, pharmacovigilance, and manufacturing.
Thank you,
Marlene



**Marlene J. Goldenberg • Partner**
**GoldenbergLaw, PLLC**
800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402
Direct: (612) 436-5028 • Toll-Free: (855) 333-4662 X528 • Fax: (612) 367-8107
email • website • bio

---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

**Exhibit D**



```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA
 2                WEST PALM BEACH DIVISION

 3              CASE NO. 20-md-02924-ROSENBERG

 4   IN RE: ZANTAC (RANITIDINE)        .
     PRODUCTS LIABILITY                . West Palm Beach, FL
 5   LITIGATION.                       . April 20, 2021

 6

 7   _____

 8

 9           STATUS CONFERENCE (through Zoom)
        BEFORE THE HONORABLE ROBIN L. ROSENBERG
10        UNITED STATES DISTRICT JUDGE and
            THE HONORABLE BRUCE REINHART
11        UNITED STATES MAGISTRATE JUDGE

12
     FOR THE PLAINTIFFS:  TRACY A. FINKEN, ESQ.
13                        Anapol Weiss
                          One Logan Square
14                        130 N. 18th Street Suite 1600
                          Philadelphia, PA 19103
15                        215-735-1130

16                        ADAM PULASKI, ESQ.
                          Pulaski Kherkher PLLC
17                        2925 Richmond Avenue Suite 1725
                          Houston, TX 77098
18                        713-664-4555

19                        MICHAEL L. McGLAMRY, ESQ.
                          Pope McGlamry P.C.
20                        3391 Peachtree Road NE
                          Suite 300
21                        Atlanta, GA 30326
                          404-523-7706
22
                          MARLENE J. GOLDENBERG, ESQ.
23                        Goldenberg Law, PLLC
                          800 LaSalle Avenue
24                        Suite 2150
                          Minneapolis, MN 55402
25                        612-238-3150
```

Pauline A. Stipes, Official Federal Reporter



```
 1                        ROBERT C. GILBERT, ESQ.
                          Kopelowitz Ostrow Ferguson
 2                        Weiselberg Gilbert
                          2800 Ponce de Leon Boulevard
 3                        Suite 1100
                          Miami, FL 33134
 4                        305-384-7270

 5                        MIKAL WATTS, ESQ.
                          Watts Guerra LLP
 6                        4 Dominion Drive
                          Suite 100
 7                        San Antonio, TX 78257
                          2104470500
 8

 9   FOR THE DEFENDANTS:  WILL SACHSE, ESQ.
                          Dechert LLP
10                        Cira Centre
                          2929 Arch Street
11                        Philadelphia, PA 19104
                          215-994-4000
12
                          TERRY M. HENRY, ESQ.
13                        Blank Rome LLP
                          One Logan Square
14                        130 N. 18th Street
                          Philadelphia, PA 19103
15                        215-569-5644

16                        ANDREW T. BAYMAN, ESQ.
                          King & Spalding LLP
17                        1180 Peachtree Street Suite 1600
                          Atlanta, GA 30309
18                        404-572-4600

19                        JOSEPH G. PETROSINELLI, ESQ.
                          Williams & Connolly
20                        725 12th Street NW
                          Washington, D.C. 20005
21                        202-434-5567

22                        ANAND AGNESHWAR, ESQ.
                          OLOUMA KAS-OSOKA, ESQ.
23                        Arnold & Porter Kaye Scholer LLP
                          250 West 55th Street
24                        New York, NY 10019
                          212-836-8011
25
```

Pauline A. Stipes, Official Federal Reporter

```
 1                        THOMAS J. YOO, ESQ.
                          Holland & Knight LLP
 2                        400 Hope Street 8th Floor
                          Los Angeles, CA 90071
 3                        213-896-2400

 4
                          RICHARD M. BARNES, ESQ.
 5                        Goodell, DeVries, Leech & Dann LLP
                          One South Street
 6                        Baltimore, MD 21202
                          410-783-4000

 7

 8

 9   Official Court Reporter:  Pauline A. Stipes
                          HON. ROBIN L. ROSENBERG
10                        Ft. Pierce/West Palm Beach, Fl
                          772.467.2337
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Pauline A. Stipes, Official Federal Reporter

```
 1   THE COURT:  Okay, good afternoon.

 2        Good afternoon, everyone.  We are here with the case

 3   management conference in the Zantac MDL, and we are ready to

 4   get started.

 5        I am just going to get right into the agenda.

 6        I would like to ask if Ms. Finken and Mr. Sachse could

 7   put your videos on.  You are the first item on the agenda, that

 8   is the issue regarding GSK discovery issues.  So, without any

 9   further ado, let me let you both say hello for the record and

10   state your presence for the record.

11        MS. FINKEN:  Good afternoon, your Honor, Tracy Finken

12   on behalf of Plaintiffs.

13        MR. SACHSE:  Good afternoon, your Honor, this is Will

14   Sachse on behalf of GSK.

15        THE COURT:  Good afternoon.  How are you both doing?

16        MR. SACHSE:  Well, your Honor, thank you.

17        MS. FINKEN:  Fine, thank you, your Honor.

18        THE COURT:  Good.  Okay.  I would like to first ask

19   you -- I know that there have been a number of issues relating

20   to GSK, which is why I wanted to start with you.  We discussed

21   GSK to some extent at the last case management/discovery

22   conference.  I know you have had hearings in front of Judge

23   Reinhart March 23rd and April 12th, and in anticipation of

24   today's case management conference I went back and I reviewed

25   the transcripts of those hearings in front of Judge Reinhart.
```

Pauline A. Stipes, Official Federal Reporter

5

```
 1          I also reviewed the original motion that GSK had filed
 2   seeking the extension of certain discovery deadlines that the
 3   Court had previously set in an earlier PTO, and I guess I would
 4   like to just share with you my observations from what I have
 5   reviewed of those transcripts and certainly let you address
 6   anything that you would like to relating to my observations.
 7          My observations are that there is a great degree of
 8   confusion and lack of clarity and inability to even establish
 9   what page the parties are on with respect to what they have,
10   that is, what the Plaintiffs have, what they don't have, what
11   exists, what doesn't exist, what will be produced, what won't
12   be produced, perhaps because of the legal objection, and that
13   is how the transcript read to me.
14          I know that there have been efforts put forth in these
15   two hearings, I know that there have been representations made
16   as to additional communications that need to take place.  At
17   one point, I understood that there was a universe of 600 or so
18   studies, and 420 had been produced, and another 200 still
19   needed to be produced.
20          I then see discussion of the PIER report, I see
21   references to 23,000 lines of information.  I see discussions
22   about what is in production as it relates to 35 documents that
23   are being uploaded for review.  I see references to database
24   that were referenced as PIER, and it reads to me in a confusing
25   way, to be honest, and my sense is that there still remains
```

Pauline A. Stipes, Official Federal Reporter

6

```
 1   confusion as to what exists, what has been produced, and if
 2   something hasn't been produced, when it is going to be
 3   produced.
 4          So, let me ask, Ms. Finken, what is your position with
 5   respect to where the Plaintiffs stand vis-a-vis GSK?  I am
 6   talking about the studies, so we are limiting the discussion
 7   right now because, to me, that was the essence of what the
 8   hearings were all about, and quite frankly, the underpinning
 9   for the request for the extension and the basis on which the
10   extension was given.
11          I understand the studies are important in this case,
12   and I understand that GSK's studies are particularly important
13   given the duration of time that GSK has had the product.
14          Let me let Ms. Finken respond to my comments and my
15   observations.
16          MS. FINKEN:  Thank you, your Honor.  This is Tracy
17   Finken on behalf of Plaintiffs.  I am hoping that Ms. Stipes
18   can hear me okay.
19          THE COURT:  You are coming in and out, you are fading.
20   You are loud and then it softens.
21          MS. FINKEN:  I will try to keep my voice up, but if
22   she has an issue with hearing me, just let me know and I will
23   try to do better.
24          Thank you, your Honor, for that intro regarding the
25   GSK production, I appreciate that.  We did actually have a
```

Pauline A. Stipes, Official Federal Reporter

7

```
 1   status conference last week with Judge Reinhart last week on
 2   this particular update where we discussed some of these issues,
 3   clinical study production and the PIER production and trying to
 4   wrap our own head around --
 5          MR. GILBERT:  Judge, forgive me, this is Robert
 6   Gilbert.  There is a number here that is overriding
 7   Ms. Finken's voice, it's a 10.150, it sounds like there is
 8   obstruction on that number.  If somebody mutes that number I
 9   think it will solve that problem.
10          THE COURT:  Everybody who is not speaking should be
11   muted.  Let's see if that helps.
12          MR. GILBERT:  Now it has been muted, Judge.
13          THE COURT:  Thanks.  You want to try again,
14   Ms. Finken.
15          MS. FINKEN:  Okay.  I actually think, your Honor, it
16   might have been your speakers who were picking something up in
17   the background.  Now that your speaker has been muted, I don't
18   hear the background noise anymore.
19          I wanted to just thank you for bringing that up.  We
20   did discuss this with Judge Reinhart last week regarding the
21   clinical study production.  We had discussed that we had found
22   a med track spreadsheet that had 764 human clinical trials
23   listed on it, and had asked Mr. Sachse and GSK if they would be
24   willing to tell us what has been produced from that
25   spreadsheet, what is in the queue to be produced from that
```

Pauline A. Stipes, Official Federal Reporter

8

```
 1   spreadsheet, and what they were objecting to produce.
 2          We had asked if they could identify the Bate numbers
 3   where those studies had been produced, and Magistrate Reinhart
 4   had encouraged that as well, which we had a discussion about
 5   this.
 6          My understanding at this point in time, and Mr. Sachse
 7   can correct me if I am wrong, is that they are not willing to
 8   do that and identify where those studies are in the production,
 9   but I will let him speak for himself on that issue.
10          In relation to the PIER index that you had identified,
11   your Honor, there was a PIER indices that showed 23,000 lines
12   of information, the majority of which pertained to Zantac or
13   Ranitidine, largely animal studies and nonclinical type
14   studies, some pharmacovigilance documents that we have
15   identified.
16          We have been identifying, out of that index, those
17   items in terms of the animal studies that we have not been able
18   to find in the production.
19          Mr. Sachse has gotten back to us on some of those to
20   identify where those summaries were in the production or if
21   there are full reports in the production.  Then there are
22   others that I guess had not been pulled or produced, and we are
23   trying to wrap our arms around whether or not there is a
24   dispute as to those items.
25          There are certain indices -- from that PIER index,
```

Pauline A. Stipes, Official Federal Reporter

**Page 9**

1  there are certain entries that Mr. Sachse has identified that
2  they have pulled to produce, I think there was maybe 2,300 of
3  the 23,000 that they had identified, and we are trying to work
4  through the remainder of that index and what still needs to be
5  produced that is relevant to Zantac or Ranitidine, the animal
6  studies or the nonclinical studies.
7       I believe that we might be at an impasse on that
8  specific discussion as well because I don't believe, at this
9  point in time, that Mr. Sachse is planning to pull any other
10  PIER index session numbers, that is what they are called, for
11  review and production unless we make a showing of relevance,
12  which is difficult to do based on a spreadsheet entry that
13  doesn't provide much information other than Zantac or
14  Ranitidine, or the compound number for those products.
15       Those are two issues that I believe pertain to the
16  studies specifically that your Honor is requesting.  Like I
17  said, we did talk to Judge Reinhart about this last week.  He
18  did provide guidance to GSK to provide us with that
19  information, but I don't have an understanding that that is
20  going to be forthcoming.
21       THE COURT:  Thank you, Ms. Finken.  Mr. Sachse.
22       MR. SACHSE:  Thank you, your Honor.  Again, this is
23  Will Sachse for GSK.
24       I, frankly, don't know where to start.  I am a little
25  bit disappointed because we did have a meet and confer this

**Page 10**

1  morning for about an hour and a half, we talked about these
2  studies, we talked about the requests that the Plaintiffs have
3  made, and at that time I explained to Ms. Finken that we were
4  working on those requests; that we were looking for, you know,
5  sort of an easy way to identify within the productions what has
6  been produced and what has not.
7       I also explained to Ms. Finken that, in terms of
8  materials that have not been produced, that we were willing to
9  have followup discussions and certainly some of those
10  materials, I think we have already looked at them -- or some of
11  those entries, I should say, we've looked at and said that is a
12  good catch, let's go collect that and take a closer look.
13       Others we, frankly, scratch our heads and say we are
14  not sure why this is something that we should be tracking down
15  because it is going to take time and cost and burden, and then
16  there is sort of a collection in the middle that I think is
17  worthy of sort of further discussion both in terms of, you
18  know, whether we want to go to the expense and the time of
19  collecting and reviewing those, and also within that sort of --
20  that middle set, how to go about prioritizing that, and whether
21  there is information already available to the Plaintiffs in the
22  productions.
23       So, I'm just disappointed at the report that we just
24  heard from Ms. Finken because I think it is very much at odds
25  with the discussion we had this morning.

**Page 11**

1       So, with that, let me just be very clear about what we
2  have been doing and what we are willing to do.  And the way I
3  think about this, Judge, is to think about different
4  categories, and I appreciate that it gets confusing because
5  we've talked about studies that have appeared in -- that were
6  submitted to the regulators, to the FDA, and those studies have
7  been produced and identified.
8       In the course of working through our productions,
9  which remain ongoing and which have been very, very voluminous,
10  we have identified this archive called PIER where there are
11  other materials, and I think your Honor and Judge Reinhart are
12  both very familiar with PIER at this point.  This is what I
13  call the problem archive.  It is you have to go in the room one
14  at a time and pull the documents, and that is the thing that
15  has been delayed because of COVID, but nonetheless, we have
16  gone looking at the materials in that archive that we think are
17  reasonably likely to be responsive.
18       We have been producing materials, I think it is more
19  than 600.  I think we are talking about thousands of materials
20  that we have been producing from those archives, and we are
21  continuing to make those productions which, as your Honor is
22  well aware, we have -- we are working towards a deadline of the
23  middle of May to complete that, or substantially complete that,
24  and I think we are on track, if not a little bit ahead.
25       Then there is what I will call the new category, which

**Page 12**

1  is, as the Plaintiffs have been reviewing the information they
2  have, and as the Plaintiffs have been reviewing the PIER
3  reports that they have, they have been identifying other
4  materials that are of potential interest, and so this has been
5  very much an iterative process.
6       We actually asked them in February to identify
7  materials that they thought -- additional materials that they
8  thought might be responsive, and they have been doing that.  It
9  has taken some time to get those followup lists from the
10  Plaintiffs, but we now have -- I couldn't tell you how many
11  additional entries the Plaintiffs have identified, but it is
12  probably in the order of a couple of hundred that we are
13  evaluating and we are -- like I said, for some of those
14  materials we have looked at it and said, good catch,
15  Plaintiffs, we are going to go ahead and collect that and take
16  a look at it, and if it is responsive, produce it, and then
17  there are others that I think merit some further discussion.
18       That is sort of where we are in this process.
19       The last piece -- not to be too granular, but the last
20  piece is what Ms. Finken referenced as the med track.  This is,
21  in essence, just a list of studies, and we are trying to come
22  up with, as I mentioned, an elegant way to kind of cross
23  reference the studies on that list with what we have already
24  produced, and I am hoping that we are going to come up with a
25  solution.

13

```
 1         If we don't come up with a solution, then I think we
 2   need to have a conversation with the Plaintiffs in terms of
 3   sort of burden and division of labor, and is there some way we
 4   can work cooperatively to figure out what is there in these
 5   productions, because the burden on us would be the same as the
 6   burden on the Plaintiffs.  It would be kind of going through
 7   doing search by search search to look for the studies that
 8   are on that list.
 9         But in terms of whether or not we are agreeing to --
10   you know, if there are studies missing, or that have not been
11   produced that are on that list, whether or not we are going to
12   produce that, I don't think we are even close to that point
13   yet.  I think we need to get this -- see if we can figure out
14   what is actually in the productions first, and it has been a
15   challenge for us.
16         THE COURT:  Thank you, Mr. Sachse.
17         Ms. Finken, did you want to respond briefly?
18         MS. FINKEN:  Yes, your Honor.  Thank you.
19         One of the challenges that we have faced was
20   determining what has not been produced versus what has been
21   produced, and we have asked for that several times.  In fact, I
22   asked Mr. Sachse for that last week via email and I asked again
23   this morning, and we were told that they don't know what has
24   been produced and what has not been produced.
25         So, I am not sure how they can identify what is yet to
```

Pauline A. Stipes, Official Federal Reporter

14

```
 1   be produced and what isn't.  We requested that information
 2   again this morning and we were told you will get it when you
 3   get it, and when it is done.  That was the attitude that we
 4   received, unfortunately, on our call about that.  That is in
 5   relation to the clinical studies from the med track spreadsheet
 6   that was identified just six weeks ago in this litigation.
 7         The other part of this that Mr. Sachse is discussing
 8   is the PIER index which is a separate index from the med track
 9   index.
10         The PIER index, the 23,000 entries that are on the
11   spreadsheet -- and that is not a full listing, it is just a
12   query as far as what Mr. Sachse has told me.  23,000 listings
13   that are mostly related to Ranitidine or Zantac in some form.
14   From what we have been told, there have been approximately ten
15   percent of those that have been pulled, reviewed, and produced,
16   and I am at a loss as to what the methodology was on why the
17   remainder of those entries were discarded or not viewed as
18   relevant when they reference Zantac or Ranitidine, or
19   compounds, metabolites, or degradation products from Zantac or
20   Ranitidine.
21         We have asked for that methodology as well because,
22   from our perspective, the burden is on GSK to identify
23   responsive material or object to producing it because of it
24   being disproportionate or whatever their reasoning is.  We
25   can't get a clear answer on what the methodology was for
```

Pauline A. Stipes, Official Federal Reporter

15

```
 1   choosing those entries and whether or not they are objecting or
 2   not objecting to producing others from that list.
 3         I don't think the burden should be on us to go through
 4   the list that they produced and say, okay, you produced 23,000
 5   entries related to Zantac or Ranitidine.  We need to go with a
 6   fine tooth comb through each one with a very limited entry that
 7   doesn't provide a lot of descriptive information and determine
 8   whether or not we think they should take a look at it or not.
 9         I just don't know that that burden should be on us.
10   The burden is on GSK to determine what is responsive to our
11   requests or object to them.  That is where we are at in terms
12   of the PIER index.
13         THE COURT:  When you say request, specifically which
14   request and when was it served?
15         MS. FINKEN:  We had served a request for production
16   and interrogatories last July, either late June or early July.
17   The responses were received in late November.  There was an
18   amendment in terms of clinical studies listing in relation to
19   an interrogatory that I think we received in October, maybe mid
20   October.
21         Since that time we have been trying to run down what
22   has been actually in the production or what has been to be
23   produced.
24         That particular interrogatory that identifies clinical
25   studies does not contain the universe of studies.  It is a
```

Pauline A. Stipes, Official Federal Reporter

16

```
 1   listing of studies, and I believe there is approximately 600 on
 2   there, but they are between clinical -- human clinical trials,
 3   there is animal studies, and then there are some nonclinical
 4   studies or in vitro studies on there as well.
 5         Since that point in time, we, on our own, have been
 6   able to identify 764 human clinical trials.  In addition to --
 7   there are several hundred that we found of animal studies and
 8   then there is another additional grouping of animal studies we
 9   have identified from the PIER index that we have not received,
10   and that is not to say the chemistry and analytical and in
11   vitro type studies as well.
12         So, the number is quite a bit more than 600 that
13   exist.  We are not sure of the universe, we haven't been able
14   to get an answer on that, but that is when we requested them
15   and it has been an ongoing discussion.
16         THE COURT:  Okay.  So, what I am going to do is --
17         MS. FINKEN:  You are muted, your Honor.
18         THE COURT:  Someone magically muted me.  Can you hear
19   me now?  Okay.
20         All right.  So, my hunch reading over the transcripts
21   and, quite frankly, having listened in to the hearings
22   themselves, is, I think, borne out by what I am hearing today,
23   and that is that there needs to be a reckoning of what exists
24   in the field of studies that GSK has, what it has produced,
25   whether it has produced the study or just a summary of the
```

Pauline A. Stipes, Official Federal Reporter

17

```
 1   study, what is in the pipeline to be produced, what has been
 2   identified as a study, but GSK simply can't find, doesn't exist
 3   even though it has been referenced somewhere, and perhaps there
 4   are a number of studies that GSK believes it shouldn't produce,
 5   that there is actually a legal objection to the request for
 6   production that was served last June or July.
 7         That has to be established now, that universe.  I gave
 8   an extension about a month ago and we have about a month until
 9   full production is required, and in that period we need to make
10   sure that all objections have been heard and ruled on and that
11   the Plaintiffs once and for all know what they have, what they
12   don't have, can fight the fight about what they think they
13   should have, and either win or lose on it and move on.
14         So, I am going to have representatives from the
15   Plaintiff and GSK meeting with Judge Reinhart on Thursday with
16   computers, working documents, representatives from the company
17   if needed, IT people if needed, whoever you need to make sure
18   that any question that Judge Reinhart may have about does this
19   exist or not, has this been produced or not, is this a summary
20   or is this the full report, is established.
21         And he is not going to end his working session with
22   you until all of the questions have been answered so you can
23   leave the conference knowing what the landscape looks like, and
24   then decide whether you want to fight about anything that
25   shouldn't be turned over or should be turned over, which you
```

18

```
 1   have every right to do.  Burdensome arguments, relevancy
 2   arguments, perfectly appropriate, but we can't seem to get
 3   there.
 4         That is what I was gleaning from listening to the
 5   hearings and reading the transcripts and hearing what you are
 6   saying today, and we need to be there and we should be there.
 7         So, Judge Reinhart will send out an order.  Clear your
 8   calendars for Thursday, that is what you are doing on Thursday.
 9   It is very important that it get done, it is important that it
10   gets done now, because I know so much else can't get done until
11   you reach this marker.
12         Do you have any questions about that?
13         MS. FINKEN:  Thank you, your Honor.
14         MR. SACHSE:  No, your Honor, thank you.
15         THE COURT:  So, please make sure that the right people
16   join you and I will leave any followup communications that you
17   want to have with Judge Reinhart.  We certainly don't want you
18   to be left in the dark about who needs to be there and what do
19   I need to bring.
20         I am being very specific, but you might have more
21   specific questions as you get closer to Thursday, but -- Mr.
22   Sachse, you may not know all of the answers, and you are not to
23   be blamed for not necessarily knowing the universe of questions
24   that Judge Reinhart may have, but I will hold you responsible
25   for knowing who the people are on your team, lawyers or
```

19

```
 1   nonlawyers alike, who will be there with you to be able to
 2   answer the questions, and we will move on.
 3         We will clear the air, get the contours of the issue
 4   of studies of GSK and the Plaintiffs, we will get it complete
 5   on Thursday and then we will go from there.
 6         If there are disputes, Judge Reinhart is going to set
 7   them right away so that he can take up those disputes and hear
 8   them on the merits.  We haven't even gotten there yet, and it
 9   is time to be there.
10         That is where I would like to end my remarks, but
11   certainly, if there is anything you would like to say, any
12   questions you have, any comments you have, this is your
13   opportunity.  You will, obviously, meet with Judge Reinhart,
14   but you have me, I am all ears.  If you want to say anything
15   more, please say it.
16         MR. SACHSE:  Sure, Judge, thank you.  I hear you loud
17   and clear.  I promise you I do not have all of the answers, but
18   I also assure you I will make sure that the people who do have
19   those answers, that I work with them and/or make sure they are
20   available so that we can just get through this.  I agree with
21   you, we need to get past the cataloging and get to the
22   substance and see if there are any disputes here.  I am happy
23   to work with Judge Reinhart and with Ms. Finken to get that
24   done.
25         THE COURT:  Great, I appreciate that.
```

20

```
 1         Ms. Finken, anything else that you think I have
 2   omitted as it relates to GSK and the studies --
 3         MS. FINKEN:  No, your Honor.  The only --
 4         THE COURT:  -- and then what I would expect for
 5   Thursday?
 6         MS. FINKEN:  Sorry.  The only other question that is
 7   pending relating to the studies specifically is whether or not
 8   there are any other databases or places where these studies
 9   could be located, whether it is a legacy or current.  That is
10   an outstanding question that we have, so I would just
11   appreciate responses to those questions as well on Thursday.
12         THE COURT:  I would ask Mr. Sachse to bring, again --
13   and it sounds like what I said would encompass those people,
14   but less they don't, those people that can answer that question
15   as well.
16         MR. SACHSE:  Yes, your Honor.  This is Will Sachse
17   again.  I did tell Ms. Finken this morning that we would -- I
18   believe there are no other databases, but that I would confirm
19   that information and I will do that on or before the hearing on
20   Thursday.
21         THE COURT:  Right.  I can appreciate the words "I
22   believe" I am -- you know, "it is my understanding" but
23   Thursday is about this is what we know, this is what we have
24   done to find out, and it would be the exception, it would be
25   the oversight, it would be the mistake, it would be the error
```

---

**21**

1  that something would show up that hadn't otherwise been
2  discussed on Thursday.  It wouldn't be for lack of I have done
3  everything I can to ascertain within the universe of documents
4  available to our company to represent what fulfills the
5  entirety of the list responsive to this particular request
6  relating to studies.
7       MR. SACHSE:  Understood, your Honor, thank you.
8       THE COURT:  Okay, thank you.
9       Judge Reinhart, you will get an order out to that
10 effect, should the parties expect to see an order?
11      THE MAGISTRATE JUDGE:  Yes.  As soon as this
12 proceeding is over I will sit down and get an order out.
13      THE COURT:  Okay.  Thank you so much.  That takes care
14 of the first issue on the agenda.  I appreciate it, Mr. Sachse
15 and Ms. Finken.
16      The second item is also related to discovery, focused
17 on the generic discovery matters.  If I could ask
18 Ms. Goldenberg and Ms. Finken, and I understand if Mr. Barnes
19 and Mr. Yoo as well want to put your comments on, please do so.
20      Hi, Ms. Goldenberg, how are you?
21      MS. GOLDENBERG:  I am well, your Honor, thank you.
22      THE COURT:  Hi, Mr. Barnes, hi, Mr. Yoo, how are you?
23      MR. YOO:  Good afternoon, your Honor.
24      THE COURT:  Okay.  Please tell me what is happening
25 with generic discovery.  Are there any issues that need to

---

**22**

1  discuss, at least flag then and come up with a plan about how
2  to deal with them?  Tell me how it is going from all of your
3  perspectives.
4       MS. GOLDENBERG:  Sure, your Honor, I will jump in.  I
5  apologize, I sound like Mickey Mouse today, my voice is going,
6  but let me know if you can't hear me.
7       As the Court is aware, we have a schedule right now
8  that contemplates three 30(b)(6) depositions being taken place
9  for each of the generic families, with the storage and
10 transport depositions to be first, and I wanted to let you know
11 that those are under way, in some cases without issue, but in
12 many cases with issues that have been, you know, simmering
13 below the surface and have now really come to light.
14      To get to this point all of the generic manufacturers
15 have served responses to Plaintiffs' Rule 34 requests, as well
16 as the interrogatories, and the Plaintiffs have spent a great
17 deal of time working through objections that Defendants served
18 to those, as well as looking at the custodians that were
19 selected by each Defendant and now getting ready for these
20 depositions.
21      In many instances now what we are finding is that
22 sometimes as a product of things coming up, but at other times
23 as a result of gamesmanship by the Defendants, we have had to
24 push a number of these depositions back and take others and
25 hold them open -- pushing things back because we have to

---

**23**

1  take another -- (inaudible.)
2       THE COURT:  Ms. Goldenberg, you kind of broke there
3  for a moment.
4       After you said, you have taken some, you have had to
5  push some back and hold open, maybe pick up from there so we
6  make sure the record is complete, and maybe speak a little
7  slower.
8       MS. GOLDENBERG:  Sure.  And hold them open because of
9  documents that have been produced at the last minute.  So, we
10 have been doing everything in our power to meet the Court's
11 schedule.  We have a team of people who are ready to go and take
12 the depositions, but because this plays into the larger
13 question of the schedule, we just wanted to make the Court
14 aware that there certainly are some depositions that are going
15 to have to take place at a later time because of these document
16 issues.
17      Just to give your Honor some specifics, we have had in
18 some cases thousands of documents get dumped on the Plaintiffs
19 within days of the deposition being taken.  We have had other
20 Defendants interpret some of the PTOs in a way that is making
21 it difficult to move forward with the depositions.
22      And to give you a couple of specific examples, we have
23 had certain generic Defendants invoke section E, paragraph five
24 of PTO 54, which provides that if a Defendant provides a
25 custodial production, you know, close to the date of the

---

**24**

1  deposition, but lets the Plaintiffs know that there are
2  additional documents coming, that the Plaintiff, if they choose
3  to move forward with that deposition, is then stuck not being
4  able to hold it open.
5       Of course, with the 30(b)(6) depositions, though, we
6  are dealing with much more than just a custodial deposition.
7  We have someone who is being put up on behalf of the company to
8  testify to a number of different issues, and so, that is a
9  provision that we are going to have to work through and figure
10 out if we can resolve that issue or if that needs to be the
11 subject of a motion.
12      I just wanted to flag that for your Honor today to let
13 you know that is something that has come up.
14      THE COURT:  I know what you are referring to, but I am
15 a visual person, I like to look at it at the same time.  I have
16 the PTO open.  What page on the PTO or what paragraph?
17      MS. GOLDENBERG:  I don't have the page number, I think
18 it's 16 or 17, but it's paragraph five under section E.
19      THE COURT:  E, 5.  The provision that says, "This
20 provision does not apply if the noticing counsel has been
21 informed at least five days in advance of the deposition that
22 the production of custodial documents relating to that witness
23 is not yet complete and provides a date certain by which such
24 production will be completed."
25      That is just one sentence out of that paragraph, but

25

```
 1    that is the right place?
 2         MS. GOLDENBERG:  It is, your Honor.
 3         THE COURT:  So, are you saying that on a regular
 4    and/or routine basis when you are setting a deposition with a
 5    generic Defendant that you are getting massive amounts of
 6    documents within a five-day period of the deposition?  Has it
 7    happened only occasionally?  What is the sense of this issue
 8    that you are raising?
 9         MS. GOLDENBERG:  It is certainly a frequent issue,
10    your Honor, and candidly, I hear more about the problems
11    because I am the one who gets called when something comes up,
12    but I have been getting a lot of phone calls, so it is not an
13    isolated issue where this is just one or two Defendants.  We
14    have been getting a lot of documents very close to the
15    deposition.  Whenever possible, we are reviewing those, and if
16    we can get through them, we are moving forward.
17         But these productions are not small and, again,
18    because these are 30(b)(6) depositions, this isn't just one
19    custodial file that is getting produced; it is, in many cases,
20    thousands of documents that are coming to multiple deposition
21    teams within just a couple days of the deposition.
22         THE COURT:  What would be your proposal as to how to
23    ameliorate this problem?
24         MS. GOLDENBERG:  I am going to defer to Ms. Finken on
25    the schedule, your Honor.  I think that really is the larger
```

Pauline A. Stipes, Official Federal Reporter

26

```
 1    conversation that needs to happen here.  I will say that we
 2    need some relief in order to take meaningful depositions, which
 3    is, I think, what all the parties want.
 4         Our goal would be to get -- we understand that there
 5    is no such thing as a perfect production, but a substantially
 6    complete production from the Defendants before we move forward
 7    with the deposition.
 8         I see Ms. Finken is on screen, so I wanted to invite
 9    her to chime in on the scheduling component to this.
10         THE COURT:  Well, if by "scheduling" you mean the
11    larger case management schedule of PTO 30, we do have that on
12    the agenda and I do intend to address it.  Perhaps I will hear,
13    whether it be today or at a subsequent date, what degree of
14    pressure the schedule is putting on this particular issue.
15         It would seem to me that regardless of what schedule
16    you have, if part of the problem as you are articulating it is
17    you don't have enough time from the date you set a
18    deposition -- between the time you receive all of the documents
19    and the date of the deposition, whether you have a cutoff date
20    of August, or November, or December, or in 2023, it seems to me
21    that, yes, maybe with an adjustment of a schedule you can feel
22    greater latitude to move your deposition, but I want to drill
23    down and better understand whether the problem has more to
24    do -- or has much to do with getting a lot of documents before
25    the deposition regardless of the schedule.
```

Pauline A. Stipes, Official Federal Reporter

27

```
 1         Is that an independent issue?
 2         MS. GOLDENBERG:  It is, your Honor.  It would be very
 3    helpful if there was a cutoff date by which Defendants had to
 4    produce their documents in advance of the deposition so that
 5    Plaintiffs could have a set amount of time to ensure that we
 6    can meaningfully review that production before we need to move
 7    forward with the deposition.
 8         THE COURT:  What is that meaningful amount of time?
 9         MS. GOLDENBERG:  The way that we had been reading
10    pretrial order 54, the way that it interacted with PTO 60, was
11    that there would be a goal of most of the documents being
12    produced 20 days in advance of the deposition, with 14 days as
13    a hard cutoff.
14         THE COURT:  You are reading PTO 54 in conjunction with
15    which PTO?
16         MS. GOLDENBERG:  PTO 60, your Honor.
17         MS. FINKEN:  Your Honor, can I chime in at one point?
18         THE COURT:  Yes.
19         MS. FINKEN:  I had to raise this at a conference -- a
20    case management conference a few months ago, you might recall,
21    where this PTO 54 provision was becoming problematic because
22    your Honor and Judge Reinhart had given us some advice in terms
23    of document production, to move forward with depositions, and
24    if we get documents after, or delayed documents, that we can
25    take a second deposition if we feel that we need to do so.
```

Pauline A. Stipes, Official Federal Reporter

28

```
 1         I had raised this provision of PTO 54, and the fact
 2    that there was that line in there that if you received it
 3    within five days of the deposition and didn't reschedule, you
 4    waived the ability to do that.
 5         So, this has become -- it has arisen again in the
 6    context of the generic depositions moving forward and it has
 7    become somewhat problematic for us in terms of what we have
 8    been doing as these issues arise, and it varies from Defendant
 9    to Defendant in terms of the generics.  We have been trying to
10    move forward and take the depositions with the understanding
11    that we may need to come back if we can't get through the
12    documents in a timely manner.
13         There are also productions where they are so large
14    that we are -- feasibly there is no way we can get through the
15    productions in a timely manner and adequately take a deposition
16    and do the job that we were hired to do, frankly.
17         Just to put it into context a little further, in terms
18    of the document production we received, in the past three
19    weeks, three weeks, we have received 1.3 million documents
20    which has totaled -- which totaled 6.8 million pages.  So these
21    are not -- this is not a small document production that we are
22    talking about, it is a lot of documents, it is a significant
23    amount.
24         Some of those, of course, are brand documents where we
25    have had a significant document production in the past three
```

Pauline A. Stipes, Official Federal Reporter

29

```
1   weeks from GSK where we received from them 180 some thousand
2   documents that totaled like 1.6 million pages in the past three
3   weeks.  So, some of it is brand produced documents, but from --
4   overall, we have received a significant document dump in the
5   past three weeks that we are really trying to wrap our arms
6   around and get through.
7        Some people might say, well, just hire more reviewers,
8   and that is something that, if it were only that easy.  This is
9   a case that is so complex that there is a little bit of a
10  learning curve in order to do that, and you can't just bring
11  people in fresh to dive into these documents to prepare for
12  these types of depositions that are taking place.  There is a
13  learning curve, people need to learn the case, and we just
14  don't have adequate time to do that in advance of a deposition.
15       I just wanted to make that clear.
16       THE COURT:  Is it the Plaintiffs' position that the
17  parties have been complying with PTO -- let me see which one I
18  have pulled up here -- 60 insofar as 3, A, 2, and I don't
19  expect you to have it in front of you, but requiring the
20  parties -- and again I will point out that these were agreed
21  upon, generally, joint proposed PTOs submitted to the Court,
22  so, certainly the Court has to assume there was much meet and
23  confer that went into preparing the order that the Court
24  ultimately entered.
25       But it provides that "the parties shall meet and
```

30

```
1   confer in good faith at least 21 days in advance of the
2   deposition in accordance with Federal Rule of Civil Procedure
3   30(b)(6) about these particular matters.  The parties will
4   agree upon or have resolved by way of the PTO 32 process the
5   scope of these particular depositions no later than 14 days
6   prior to the scheduled deposition."
7        I take it, Ms. Goldenberg, that was the provision you
8   were just referring to, that you were believing that that is
9   what the parties should be operating on.
10       If I am correct, are the parties, in the Plaintiffs'
11  view -- and then I want to hear from the Defense -- operating
12  under the mandate of the order that you all jointly prepared
13  for the Court's review and endorsement and entry?
14       MS. GOLDENBERG:  Sure, your Honor.  Sorry, I wasn't
15  sure if Tracy was going to chime in.
16       Yes, we have been meeting and conferring with each of
17  the individual Defendants, and to the extent issues have come
18  up, we have been able to work through most of those.  I
19  understand that there are still additional meet and confers to
20  happen about especially the manufacturing and pharmacovigilance
21  depositions, but we, so far, have not had any that needed to be
22  elevated to the Court at this point.
23       THE COURT:  Except that you have presented to the
24  Court a problem, a problem that you are not getting documents
25  in time, that too many documents are -- again, you are -- this
```

31

```
1   isn't a hearing, so I am not ruling on anything, but I am
2   trying to sort of identify problems and come up with a plan on
3   how to move forward.
4        I heard you articulate what I construed as a problem,
5   that the Plaintiffs were receiving too many documents too late
6   before taking a deposition, so --
7        MS. GOLDENBERG:  Yes.
8        THE COURT:  And so I came back to, well, how do we
9   address that problem.  If it hasn't been brought to the Court's
10  attention through a PTO 32, now the Court is inviting you to
11  articulate what is it that can be done to -- you know, short of
12  just magically moving a date, which can be done for discovery,
13  but I really do see these as two separate issues.
14       I do see that if you didn't feel you had the cutoff
15  date then maybe you wouldn't take the depo, but that seems to
16  be kind of a short term solution and maybe short sighted
17  solution to what I am sensing perhaps is a larger problem,
18  which is too many documents coming too late.
19       Maybe I'm misreading it, but you can clarify.
20       MS. GOLDENBERG:  Yes, your Honor, and I think I
21  misunderstood your question originally, so I appreciate you
22  clarifying that.
23       We do have a problem, and I think the way to remedy
24  that is what I had previously suggested, which is to impose
25  deadlines for the production of documents in advance of
```

32

```
1   depositions.  That probably comes through the modification of
2   these PTOs to make sure that that is clear on all sides.
3        THE COURT:  So the parties --
4        MR. YOO:  Your Honor, may I be heard?
5        THE COURT:  Yes.  I just want to be clear.  The
6   parties are not operating on a document production 14 days in
7   advance; they are simply agreeing to resolve any issues no
8   later than 14 days prior to the scheduled deposition, but there
9   is also PTO 54 which says custodial files must be produced 15
10  days in advance.
11       MS. FINKEN:  Your Honor, can I just say one thing
12  about this?  We have been meeting and conferring often, daily,
13  multiple times a day with different Defendants about these
14  particular issues.
15       One of the problems that we are facing because of
16  when -- the timing of when the documents are produced, it is
17  hard to have a meaningful meet and confer about any
18  deficiencies in the production or about the scope of what is
19  going to be covered at that deposition.  That is just one
20  issue.
21       One of the other issues that is holding us up, and
22  this is not specific to one generic manufacturer, is that we
23  are seeing the same global issues that were argued in front of
24  Judge Reinhart between Mr. Barnes and I a month ago being
25  raised by individual generic manufacturers again, and that is
```

33

```
 1   somewhat problematic as well because it causes us to spend a
 2   lot of time and hours trying to address those issues, and we
 3   may have to tee them up for another PTO 32 dispute resolution
 4   when they were addressed at length during a hearing back in
 5   March.
 6            So, it is two-fold, but I do agree with Ms. Goldenberg
 7   that one of the remedies that would be helpful would be
 8   imposing a deadline for production of the noncustodial
 9   documents in advance of the deposition, and amending PTO 54 to
10   remove the provision that if we move forward with the
11   deposition, we are not waiving our ability to take a second
12   deposition later pending additional documents being produced,
13   or pending our ability to get through significant amounts of
14   documents that were produced the few days or a week leading up
15   to the deposition.
16            THE COURT:  Okay.  Let me hear from the Defense
17   generally, and then also in response to what Ms. Goldenberg and
18   Ms. Finken indicated and suggested, in particular the last two
19   comments that -- with respect to some kind of a deadline for
20   noncustodial production prior to a deposition and the issue of
21   if they go forward with the deposition, what that means in
22   terms of waiver or not.
23            MR. YOO:  Thomas Yoo for the generics, thank you very
24   much, your Honor.
25            It is really quite shocking and incredible what we are
```

34

```
 1   hearing from the Plaintiffs.  Your Honor, we got here --
 2   forgive me for doing this, but I think it is important to
 3   remind your Honor and Judge Reinhart how we got here with
 4   respect to the generics.
 5            You heard earlier in the discussion between Ms. Finken
 6   and Mr. Sachse that GSK got served with requests for production
 7   last July.  We got 111 requests for production from the
 8   Plaintiffs in February of this year.
 9            We didn't negotiate search terms with the Plaintiffs
10   until February 28th, and your Honors will recall that the
11   Plaintiffs came to the Court a few months ago and said we need
12   30(b)(6) depositions of the generics in April, May, and June,
13   and our response was, it is premature because we haven't even
14   discussed documents, custodial documents and search terms.  The
15   Plaintiffs said to you, we don't need documents, we just want
16   to take the depositions, we need them to commit to these dates.
17            So, we ended up giving them dates, all 25 or so
18   generics provided dates for at least three deponents each
19   across three topics, and those depositions got set between
20   April and mid June, and then the Plaintiffs served us with 111
21   document requests in February, and then they negotiated search
22   terms with us which, frankly, are so broad that the generics
23   are collecting tons of data which the generics have to review
24   and produce.
25            So, what we are talking about is, we have had about 45
```

35

```
 1   days to get them responsive documents based on the 111 document
 2   requests they gave us in February with these deposition dates
 3   hanging over our heads.
 4            We are working as hard as we can, certainly in good
 5   faith, not in bad faith, there is no gamesmanship on our side,
 6   to get them all of the responsive documents as quickly as we
 7   can, prioritizing storage and transportation, which is the
 8   subject of the first 30(b)(6) deposition.
 9            We are fully compliant with PTO 54 and PTO 60.  There
10   are no deadlines under those PTOs that require us to produce
11   all of our storage and transport documents to their
12   satisfaction 15 days, or 20 days, or any other number of days
13   before the deposition.  It is not anywhere in those orders.  It
14   certainly was never discussed or negotiated with us.
15            These deposition dates were required of us with the
16   understanding that they just wanted the depositions, and then
17   they overlay these document requests on us, and we are doing
18   everything we can to comply with our obligations and we are
19   doing so and in good faith.
20            So, for them to come to you now and accuse us of
21   gamesmanship, and to say that we've given them too many
22   documents in response to their 111 document requests, and that
23   they are not coming sooner than -- what are we, 45, 50 days now
24   that we have had to find, review, screen, produce responsive
25   non-privileged documents, and that they didn't have this weeks
```

36

```
 1   ago, is just ridiculous.
 2            And so, we are happy to discuss with your Honor and
 3   the Plaintiffs some solution to the situation that the
 4   Plaintiffs and we find ourselves in, but this situation is
 5   absolutely not of our making, and we certainly have not done
 6   anything in bad faith.
 7            THE COURT:  What do you think a solution would be, Mr.
 8   Yoo?
 9            MR. YOO:  Well, what we told the Plaintiffs when they
10   insisted on these commitments to these deposition dates was
11   that it is premature, that it would behoove both sides to
12   provide additional time so that witnesses could review
13   information and come informed to testify, and that the
14   Plaintiffs will probably want these documents.  We were met
15   with rhetoric about how they didn't need any documents.
16            I think we find ourselves back to square one, and so
17   what we have had to do and what we felt in good faith we needed
18   to do -- now, the situation is a little bit different from
19   generic to generic.  Some generics probably have fewer
20   documents, but for those of us who are finding that there is a
21   lot of data in response to the massive document requests we got
22   from Plaintiffs, we have told them, look, we have given you 1
23   through 20 types of storage and transport documents, but we
24   can't certify that there are not more.  We are still getting
25   more documents from our client, sometimes from abroad.
```

37

```
 1        So, you can proceed with the deposition as you have
 2   noticed it, but if you do that, then we are not going to bring
 3   the same witness back because you find more documents.  You
 4   should think about whether it makes sense to postpone some of
 5   these depositions and do it at a time when you are comfortable
 6   that you have enough information to take these deposition.
 7        So, on that platform, we are happy to discuss with the
 8   Plaintiffs something that works for both sides, but it
 9   is totally unfair to say -- having put us in this situation, to
10   say, well, we want a freebie deposition and then we reserve all
11   rights to recall the witness when we get more documents
12   because you didn't give it to us within, what, five, ten days
13   of us asking.
14        MS. FINKEN:  Your Honor, can I please respond to that?
15        THE COURT:  Yes.
16        MS. FINKEN:  Okay.  First and foremost, I do agree
17   with Mr. Yoo on one point, this is a tight schedule.  The
18   overriding schedule is what is driving a lot of these problems.
19   I just want the Court to be aware of that because if we did not
20   have looming deadlines coming up, we could work through these
21   issues with the individual generics and postpone a deposition
22   for a couple of weeks, or whatever it would take to get it
23   done.  That is one.
24        I also have to correct the record here because there
25   were some inaccurate representations made.
```

Pauline A. Stipes, Official Federal Reporter

38

```
 1        One, we initially requested a foundational
 2   informational 30(b)(6) deposition back in December that we
 3   could use to tailor our discovery requests.  Mr. Yoo
 4   specifically objected to that and said that we needed documents
 5   to take the depositions.  We therefore then entered into very
 6   lengthy negotiations with the generic Defendants about how that
 7   would proceed.  That ultimately ended up in PTO 60.
 8        We provided the generics with our document requests
 9   and interrogatories in January so that they would have time to
10   review them and start collecting documents while we were
11   negotiating PTO 60.
12        We had an agreement that the official service date
13   wouldn't be until February 9th, but we gave them to them two
14   weeks prior to that, if not more, two to three weeks prior to
15   that, so they could review and start collecting responsive
16   documents in advance of needing to produce them.  That is one.
17        Two, in terms of scheduling, we are bound by PTO 60
18   which provides dates certain that certain depositions need to
19   be done.  We are also bound by PTO 54, which provides a
20   specific period of time in which custodial files need to be
21   produced in advance of the deposition.  Those custodial files
22   need to be produced at a minimum of 15 days.  They are supposed
23   to be produced closer to 21 days in advance of the deposition,
24   and that Mr. Yoo has indicated that the generics have been
25   fully compliant with, and that is just simply not true.
```

Pauline A. Stipes, Official Federal Reporter

39

```
 1        We have received many custodial files with -- less
 2   than 15 days in advance of the deposition, but I am not here to
 3   argue about that today.
 4        THE COURT:  Have you brought that to the Court's
 5   attention through a PTO 32?
 6        MS. FINKEN:  What we have done is, we have met with
 7   the particular generic Defendant as that comes up, and we have
 8   either reached an agreement with that specific generic as to
 9   whether or not we would reschedule the deposition depending on
10   the volume of the documents, or whether we would leave the
11   deposition open in the event that we needed it to be open and
12   take a second date later.
13        So far, we have not had to raise that specific issue
14   with a particular Defendant, as far as I am aware, under a PTO
15   32 process to Judge Reinhart.  We have been trying to work
16   through those issues within the confines of the PTOs that we
17   have in place.
18        Ms. Goldenberg might correct me because I might not be
19   aware of others that might be pending to go in front of a PTO
20   32 process, but we have been, I think, relatively successful in
21   working those issues out in a reasonable way with the generics
22   as they come up.
23        But to take the position that a noncustodial document
24   production that is relevant to a 30(b)(6) deposition can be
25   produced -- significant production can be produced five or ten
```

Pauline A. Stipes, Official Federal Reporter

40

```
 1   days in advance of the deposition is just an unreasonable
 2   position to take.  Unfortunately, the PTO 54 provision with
 3   that -- there are some timeframes in there that acts as a
 4   waiver to us if we move forward with the deposition.
 5        So, we are kind of in a bind here.  We have PTO 54 on
 6   one side, we have PTO 30 on the other side, and PTO 60 where we
 7   are trying to meet all of these obligations and that does
 8   confine us to some degree in our ability to be flexible in
 9   rescheduling with the generics.
10        I have to correct the record in terms of what we said
11   in terms of taking depositions without documents.  That was in
12   reference -- because it is being taken out of context.  It was
13   in reference to a foundational informational 30(b)(6)
14   deposition that we were going to use to narrowly tailor and
15   focus our discovery and the generic Defendants refused to do
16   that.  They preferred that we wait and take it with documents,
17   which is how we got to the schedule that we are in.
18        Mr. Yoo said that we should sit back and wait and
19   review the documents, but we have deadlines, in three and a
20   half months we have a deadline for expert reports as it stands
21   right now.  We have a full discovery deadline in December as it
22   stands right now, and that is something that we are, very, very
23   conscious of.  We do not have the luxury of just waiting and,
24   okay, we will reschedule this for a later date and being
25   flexible as we normally would be with different Defendants as
```

Pauline A. Stipes, Official Federal Reporter

41

```
 1   these issues arise.
 2          So, I just needed to put that out there for your Honor
 3   and correct the record.
 4          THE COURT:  Okay.  I have a message from the Marshals.
 5   I am going to put you on -- I am going to turn my video off for
 6   a moment and tend to this matter and I'll be right back.  Sorry
 7   to interrupt.
 8          MS. FINKEN:  Thank you, your Honor.
 9          (Pause.)
10          THE COURT:  Okay.  I heard -- I think Ms. Goldenberg
11   had to get off, but if we want to bring our other counsel back
12   on the screen.
13          Okay.  Did we hear correctly that Ms. Goldenberg was
14   leaving?
15          MS. FINKEN:  Yes, your Honor, she was in her office in
16   Minneapolis, so she needed --
17          THE COURT:  Right.  We got notice, and I apologize for
18   the delay, we got notice from our U.S. Marshals that it is
19   advisable that we leave the courthouses throughout the
20   district.  Judge Reinhart and I are going to stay, so we are
21   going to proceed.
22          I am sorry if I cut anybody off who was speaking and
23   continue if anyone was in the middle of saying something.  I
24   apologize.
25          I do get the gist.  I would like to kind of summarize
```

Pauline A. Stipes, Official Federal Reporter

42

```
 1   my understanding -- no, that is always a dangerous thing.  I
 2   get the gist of this issue, which seems to be on many levels,
 3   one of which is the schedule, and as you know, PTO 30 is an
 4   agenda item.  I am not telling you anything is going to be
 5   resolved today.  I brought it up last time and I have put it on
 6   the agenda for today.
 7          But separately, I am hearing that there are other
 8   issues of production, and timing of production, and
 9   reasonableness of production, from the Defense standpoint,
10   whether they feel they have enough time to produce, and from
11   the Plaintiffs' standpoint, whether they are receiving the
12   documents in enough time and whether it is reasonable to assume
13   that they should be receiving it -- them in enough time.  There
14   were negotiated PTOs, deadlines for custodial, no deadlines for
15   noncustodial.
16          We will be taking up PTO 30, but what I am going to
17   require, separate and apart from anything that may or may not
18   change with respect to PTO 30 -- it seems like we need to
19   address this in a much more holistic way because I don't
20   believe that even if I just moved a date, that that somehow is
21   going to magically take care -- maybe it will, but I am going
22   to err on the side of caution and think that maybe it won't.
23          So, I am going to send counsel back to the drawing
24   board.  You will be able to monitor the PTO 30 issue, which I
25   hope to have resolved shortly, but I am going to say that
```

Pauline A. Stipes, Official Federal Reporter

43

```
 1   within one week from today I would like proposals from counsel
 2   for the Plaintiff and counsel for the generics on what --
 3   either new PTO or what amendments to the PTOs that are
 4   currently affecting this issue, whether it is 54 and 60, or if
 5   there is another one as well, what modifications and amendments
 6   may be necessary.  I would like you to work together and see if
 7   you can jointly agree, and if you can't, I will consider two
 8   different proposals.
 9          What I would say is you take an existing PTO, whether
10   it is 54, or 60, or if there is another one, and you redline it
11   with your proposed changes that you think, having lived and
12   breathed whatever problems from both sides you are
13   experiencing, you think would help alleviate it, separate and
14   apart from any amendment to PTO 30 that deals with a more
15   global scheduling issue.
16          So, why don't we say by five o'clock next Wednesday it
17   can be emailed to the Zantac email.  It can be either one as a
18   joint, or two separate emails where you are emailing it to the
19   Court, but then you are also emailing it to each other.  Just
20   redline an existing PTO and tell me what the change is.  Don't
21   give me comments in it, no notes or anything, just the redline,
22   and let's see if we can't holistically address this issue.
23          Unless there is anything more that anyone wants to say
24   with respect to generics, I would like to see what you propose.
25   The goal is to get a workable situation so that neither side is
```

Pauline A. Stipes, Official Federal Reporter

44

```
 1   feeling strained, neither side is incentivized to do anything
 2   that is inappropriate or improper, documents are produced in a
 3   reasonable manner, in a forthcoming way to allow the Plaintiffs
 4   to have them in enough time to be prepared to take meaningful
 5   depositions so they don't need to go back to the drawing board
 6   and take them again.  In a perfect world that is what we would
 7   all want.
 8          So, anything further from Plaintiffs?
 9          I will hear from Defense in a second and certainly if
10   Mr. Barnes wants to be heard.  Anything from Ms. Finken?
11          MS. FINKEN:  No, your Honor, thank you.  We will work
12   with the Defendants to try to work through these issues.
13          THE COURT:  From Mr. Yoo or Mr. Barnes?
14          MR. BARNES:  Thank you, your Honor.  I will start.
15   There is one practical problem here, and I am speaking not only
16   just behalf of my client, but on behalf of other generics.
17   Many of us would be working with the Plaintiffs on this new
18   PTO, which is probably necessary and appropriate, but we are
19   also in the process of preparing witnesses for these
20   depositions.
21          Before May 10th, I have three 30(b)(6) depositions, I
22   think Mr. Yoo is tied-up in deposition prep and depositions,
23   others that are on the generic leadership team have similar
24   commitments.  So, I think everyone is more than willing to do
25   this.  I think the practicality is many of us are, I'd say,
```

Pauline A. Stipes, Official Federal Reporter

45

```
1    pretty well booked in complying with the existing schedule on
2    the depositions that are on the books.  So, there is a
3    practical problem of producing a witness Thursday of this week,
4    or Monday of next week, or Friday of this week, and in fact,
5    given the process that you have outlined, our fair and full
6    attention so that we can avoid further problems.
7        This may tie into PTO 30 discussions, but I think
8    there is a bit of a bandwidth issue, I would say, for all
9    concerned to get this done and do appropriate prep and
10   appearance at depositions.
11       THE COURT:  I appreciate that.  I don't want to over
12   tax anyone, but I do want to try to address any potential
13   problems that are holding the process up.  I am not envisioning
14   a whole new PTO, by the way, I am envisioning tweaks and
15   possible one or two-line modifications to existing PTOs, just
16   so you know.
17       A lot of work was put into those initial PTOs, they
18   were well thought out, you negotiated them, but sometimes you
19   learn when you put things in practice that maybe they don't
20   work as well as you thought they might.
21       So, I hope that that goes a way toward alleviating
22   concerns about this being a major, major undertaking.  It is
23   allowing you to have some input.  I can take pen to paper
24   myself and do it, but I always like to seek input first.  I
25   would like to set a deadline that is workable, but not so far
```

Pauline A. Stipes, Official Federal Reporter

46

```
1    out that you continue to have these problems longer than you
2    need to, and I am not anticipating that this is going to be a
3    major rewrite.  I could be wrong, but that is not what I am
4    envisioning based on what I am hearing and based on my
5    familiarity with these two PTOs.
6        With that being said, would Friday or the following
7    Monday be a better date than next Wednesday?
8        MR. BARNES:  Your Honor, if that is the Court's
9    expectation, unless Mr. Yoo disagrees, I think we can meet that
10   deadline.
11       THE COURT:  You can meet the Wednesday deadline?
12       MR. YOO:  Your Honor, this is Thomas Yoo.  If I could
13   just add, I think one of the issues Mr. Barnes was raising is
14   that, I don't know how many, but there are numerous generic
15   depositions set over the next several days before the next
16   Wednesday deadline for the redline PTO.  So, it presents a
17   practical question of what the generics and Plaintiffs will do
18   about the depositions given that this issue and this potential
19   solution hasn't been addressed yet.
20       I imagine your Honor will probably want the parties to
21   get together and figure out what the best triage method is for
22   these upcoming depositions.
23       THE COURT:  Well, we have two issues; we have the more
24   long-term issue and we have what you are explaining as the
25   immediate issue.  So, as the more long-term issue, does
```

Pauline A. Stipes, Official Federal Reporter

47

```
1    Wednesday work at 5:30, or five o'clock?
2        MR. YOO:  It does, your Honor.
3        THE COURT:  Ms. Finken, does that work for you?
4        MS. FINKEN:  Yes, your Honor.
5        THE COURT:  Do you have a proposal as to the upcoming
6    depositions before any potential change in either PTO 30, or
7    any amendments to PTO 54 or 60, as to how to manage your
8    depositions in the interim?  Do you feel comfortable proceeding
9    with your depositions, Ms. Finken?  Do you feel you have had
10   ample opportunity to review ample documents to go into these
11   depositions in a way that has prepared you?
12       MS. FINKEN:  Well, your Honor, it is really fact
13   specific to each manufacturer.  There is no one size fits all
14   rule that would apply here.  I think that there are depositions
15   that we will be able to move forward with and be fine.  I think
16   there are depositions where we may need to either reschedule or
17   move forward with a second deposition as we have been doing.  I
18   anticipate we can work with counsel the way that we have been
19   to try to work through those issues.
20       The only request that I would have is that, if we do
21   move forward with the deposition, that that PTO 54 provision
22   that has us waive a second deposition not apply.
23       That would be my only request, unless it would be your
24   Honor's preference, until we get it worked out, to postpone or
25   reschedule the depositions where there has been that provision
```

Pauline A. Stipes, Official Federal Reporter

48

```
1    in play, the five-day -- production of the custodial file
2    within five days in advance of the deposition, which I believe
3    Mr. Yoo -- it is one of his that falls within that category
4    from my understanding.
5        MR. YOO:  Your Honor, this is Thomas Yoo.  We would
6    not agree to that.  We don't want to do these depositions if we
7    are going to come back and ask for a second deposition of the
8    witness because they get some more documents.
9        We have been transparent about what the situation is,
10   again, it is not of our making.  We are willing to work it out
11   with them, but we are not going to let them take a deposition,
12   only to ask for another one later.
13       I would suggest, if that is the situation the
14   Plaintiffs are in with regard to a particular generic, that we
15   agree to put that deposition off at least until after the
16   parties have submitted the redline PTO proposals to the Court.
17       THE COURT:  Ms. Finken, how many depositions fall
18   within that category?
19       MS. FINKEN:  Your Honor, honestly, I don't know off
20   the top of my head.  Ms. Goldenberg would have that
21   information, but she is not available right now to ask.
22       I don't think it is many at all.  So, there are a
23   few.  I think that, for the most part, we have been managing to
24   work through these issues with each generic manufacturer.  I
25   know that Mr. Yoo is probably the only one who has taken a very
```

Pauline A. Stipes, Official Federal Reporter

49

```
 1    hard position about PTO 54 and that waiver provision, so we
 2    anticipate we might have an issue there.
 3            My concern with just postponing it indefinitely is
 4    that it is just going to get pushed back longer and longer, and
 5    without having an end date in sight that concerns me, but we
 6    will try to work through it.
 7            In terms of going forward with the deposition despite
 8    getting late documents, that is a directive that we have
 9    received from the Court to do that to keep the case moving
10    forward, and that is what we have been endeavoring to do.
11            I am happy to have a discussion, we will try to work
12    through it with each individual generic manufacturer that it is
13    applicable to.  In the meantime, though, pushing the
14    depositions off indefinitely I don't think would be the way to
15    go.  We still have deadlines under PTO 60 in terms of when
16    these depositions need to get done.  So, that is my preference.
17            THE COURT:  I concur, and I think the depositions
18    should go forward.  Okay?
19            MS. FINKEN:  Thank you, your Honor.
20            THE COURT:  Okay, thank you very much.
21            MR. YOO:  Thank you, your Honor.
22            MR. BARNES:  Thank you, your Honor.
23            THE COURT:  The next matter on the agenda is PTO 30.
24    We have Mr. McGlamry, Ms. Finken, and Mr. Bayman.
25            MR. McGLAMRY:  Good afternoon, your Honor.
```

Pauline A. Stipes, Official Federal Reporter

50

```
 1            MR. BAYMAN:  Good afternoon.
 2            THE COURT:  Good afternoon.
 3            So, I brought up PTO 30 last month at our conference,
 4    I brought it up both in my opening remarks and in my closing
 5    remarks.  It wasn't on the agenda, and I asked that it be put
 6    on the agenda today.  I thought with the remarks that I made,
 7    it being about a month, I might have seen some activity in
 8    terms of perhaps a proposal, joint proposal, but I haven't seen
 9    anything, so I put it on the agenda this time because I clearly
10    understand that PTO 30 remains a point of discussion, and
11    interest, and stress, and potential contention between either
12    the Court and the parties, or the parties between themselves,
13    so let me let you be heard.
14            We are not getting into, you know, substantive
15    discussions today as it relates to what exactly an amended PTO
16    30 would look like.  I guess I would like to invite you to
17    discuss with the Court what process you think might be useful,
18    helpful, appropriate to address PTO 30.
19            I have my own ideas, but I would like to hear from you
20    first on the process end of contending with what I referred to
21    last time as the elephant in the room, PTO 30.  I can hear from
22    the Plaintiffs first and then the Defense.
23            Ms. Finken or Mr. McGlamry.
24            MR. McGLAMRY:  Thank you, your Honor.  Mike McGlamry
25    on behalf of the Plaintiffs.
```

Pauline A. Stipes, Official Federal Reporter

51

```
 1            As you have sort of seen today, particularly in this
 2    last section, and even with the first section with GSK, there
 3    are issues that have pushed out our timeframes and you, know, I
 4    think at some level one of our difficulties has been -- and you
 5    have picked up on it -- that when we look at an issue with any
 6    particular Defendant in terms of this discovery, you have that
 7    issue with the Defendant and how do you try to resolve that
 8    issue, but then it has sort of a ripple effect of how does that
 9    then impact maybe that group of Defendants, whether it is a
10    brand or generic or whatever, and then you have sort of an even
11    wider ripple, which is the schedule as a whole.
12            I think that we have all been trying -- and let me
13    just start by saying I am not going to say anything negative
14    about the Defendants, and surely not Andy Bayman, but for
15    purposes of this let's assume that everybody is doing a hundred
16    percent plus good faith.  I think it is just a matter of just
17    the realities of timing.
18            But all those things have an effect, and it sort of
19    forced us to have to fight sort of at every foxhole.  We can't
20    retreat any to fight because to retreat, we get to the beach,
21    if you will.
22            So, I think we have -- over the last several months
23    have had a lot of discussions with the special master and with
24    the Defendants, and I think I mentioned this on maybe our last
25    conference, and the reason why I think Andy and I have been in
```

Pauline A. Stipes, Official Federal Reporter

52

```
 1    discussions about this issue particularly is that as it relates
 2    to BI and us, Andy and I talked some time ago where we decided
 3    not to fight at that foxhole level because we would agree we
 4    wouldn't fight at the outside level, knowing that we would sort
 5    that out at some point, and they would agree and we would agree
 6    to work that out.
 7            And because of that, it has given us an opportunity to
 8    work through these discovery issues without having to sort of
 9    fight every battle.  I think that, unfortunately, in a lot of
10    instances that is not available or it is just not workable with
11    everybody, but I think because of, you know, the fact that Andy
12    and I are two old guys that have known each other a long time,
13    and I am older, that we can sort of have that kind of
14    discussion.
15            As it relates, then, to this sort of PTO 30 issue, we
16    have had numerous discussions about that, and the difficulty on
17    our side with the PTO 30 discussion is, you know, I think --
18    and without trying to go back and recreate all the dates of
19    everything, the first time we said something or whatever, as
20    things have happened, we see further what I will just call
21    slippage, again, not attributable to anybody's good or bad
22    faith, but just that it slips out because documents come in
23    late or something happens, COVID, whatever it is that push
24    things out, and every time something pushes out, it has that
25    ripple effect.
```

Pauline A. Stipes, Official Federal Reporter

53

```
 1          And for example, when you all were talking about the
 2   generics piece about trying to reschedule something later, if
 3   your Honor were to look at just on our side, because I don't
 4   know how it is set up on their side, we have a group of lawyers
 5   that are sort of assigned to those depositions.  It is easy to
 6   say, well, just move that deposition out, but those lawyers and
 7   their review staff and ESI, and all of that, they already have
 8   things set now in this PTO 60 timeframe.  So, like you said, it
 9   puts a lot of pressure on everybody to deal with this.
10          And also, from our perspective, as we see more of
11   that, it makes us even more nervous about even the date that we
12   have proposed as sort of an extension date and --
13          THE COURT:  Mr. McGlamry, I don't want to put anyone
14   on the spot of getting into dates specific or -- I guess what I
15   am trying to elicit is, do you have any proposal for a process
16   by which the parties, together or independently, and the Court
17   can revisit PTO 30?  I do have an idea, but I wanted to hear
18   from the parties first succinctly.
19          We have other matters I want to tend to, and I don't
20   want anyone to be in a position of being caught off guard about
21   talking about something that wasn't, you know, sufficiently
22   noticed, so I am not talking about dates today.  I am really
23   talking about what process do you think would make sense to
24   arrive at a result that is -- that addresses the concerns that
25   some share about PTO 30.  What do you think?
```

54

```
 1          MR. McGLAMRY:  Quite frankly, your Honor, I think we
 2   are at an impasse in our discussions as to being able to work
 3   out a schedule between us and the Defendants, and I would
 4   suggest that we start -- we will file a motion and they can
 5   respond and we can obviously have discussions in the meantime.
 6          You know, I think we are at that point and, again, the
 7   difficulty is the further that goes out, the more it impacts
 8   trying to resolve these other things.
 9          I know we have been working on it, and I know
10   Ms. Finken has spent a lot of time on that because she lives
11   with these issues more than anybody on our side, at least, on a
12   day-to-day basis.
13          So, I think we would be ready to file that in the next
14   couple of days, give us a chance to file it, and then them to
15   respond, and then however the Court wants us to go from there.
16          THE COURT:  Thank you.  Mr. Bayman.
17          MR. BAYMAN:  Thank you, your Honor.  I agree with much
18   of what Mr. McGlamry said about our efforts to work things out
19   and I -- the Plaintiffs made a proposal, we made a counter
20   proposal, and we weren't able to bridge the gap, although we
21   moved a long way.
22          Your Honor, I think the concept makes sense for the
23   Plaintiffs to file a motion and then the Defendants to respond
24   and we would file -- as your Honor sees, the PTO 30 issues
25   impact a number of different groups of Defendants.  We could
```

55

```
 1   file one consolidated response on behalf of all the Defendants.
 2          I think it important that the sequence occur in this
 3   order because we would like to know why the Plaintiffs need as
 4   much time as they think they need for -- really what the
 5   triggering event is here is their general causation, the
 6   deadline for their expert reports on general causation, and we
 7   think that is much more narrower than, I think, the Plaintiffs
 8   think it is.
 9          So, we would like to hear and see why they need as
10   much time as they think they need, and I will continue to
11   dialogue with Mr. McGlamry in the interim, as we have been, but
12   they have not shared that with us at this point, and we would
13   like to see that so we can respond and see what is a reasonable
14   time.
15          We feel we offered more than enough time, they didn't
16   think so, but we did that in the spirit of compromise to try to
17   resolve it short of Court intervention.  We went a long way, we
18   just couldn't bridge the gap at the end, but we would like the
19   opportunity -- this doesn't need to be a long submission, your
20   Honor.
21          To pick up on Mr. McGlamry's point at the beginning, I
22   think we would all be well served not to get into why we are
23   where we are, but rather, given where we are now, what do we
24   need to be doing going forward.  If this is about all the things that
25   Mr. McGlamry and I agreed he and I weren't going to argue
```

56

```
 1   about, like this should have been produced back in December and
 2   why it wasn't, we have been working on what do we need to do
 3   going forward.
 4          If this submission can be about, hey, here is where we
 5   are now, here is what we need to do to get to where we need to
 6   be, I think that can be no more than ten pages.  We can -- they
 7   can file their motion and then we can respond.  That would be
 8   my proposal.
 9          THE COURT:  Okay.  Ms. Finken, did you want to say
10   anything or was Mr. McGlamry taking this issue?
11          MS. FINKEN:  Sure, I can chime in if you can hear me,
12   your Honor.
13          We would request the opportunity, if we are going to
14   brief this, to fully brief it, because the delays that have
15   occurred up until this point collectively impact our ability to
16   get things done in a timely manner, and this is something we
17   have explained to the Defendants multiple times.  We have asked
18   for a four-month extension, which is not a significant
19   extension in the grand scheme of an MDL of this size during a
20   pandemic.
21          The reason that we have reached an impasse is because
22   the Defendants have expressed to us they have a concern about
23   the JCCP getting ahead of us in this litigation.  From our
24   perspective, that is just the wrong reason to not reach an
25   agreement on a schedule change.  It should not have an
```

57

```
1    impact -- what the JCCP is doing should not have an impact on
2    what happens in this MDL.
3            We need the ability to properly work with our experts,
4    to take discovery, conduct discovery, and do it in a way that
5    is adequate, not just adequate, but do it well.  That is what
6    we were hired to do, and that is something that I feel very
7    strongly about.
8            You sat here today and you listened to the exchange
9    with GSK where we discussed the clinical trials and how we
10   can't even get a straight answer on what we have or don't have.
11   So, that is just one issue.
12           There is a multitude of issues similar to that, some
13   we have worked through and some we have not yet and we are
14   trying to work through with different Defendants.  It all has a
15   collective impact on our ability to get things done in the
16   timeframe that we need to get it done.  This is no secret to
17   Mr. Bayman or anybody on the Defendants side.
18           From my perspective, and I have told this to Mr.
19   McGlamry, I don't know that four months is going to be enough
20   given some of the delays that keep continuing to occur as we
21   move forward.  However, that is what our good faith request was
22   so that we can still keep this moving along and moving forward.
23           Unfortunately, we have reached an impasse on that, and
24   I don't know if Mr. McGlamry has anything he wants to add to
25   that.  I would ask for the full page limits under the local
```

Pauline A. Stipes, Official Federal Reporter

58

```
1    rules so that we could fully brief it.
2            THE COURT:  Okay.  Did you have anything further to
3    add to what Ms. Finken or Mr. Bayman have said?
4            MR. McGLAMRY:  No.
5            MR. BAYMAN:  Could I respond, your Honor, to something
6    Ms. Finken just said?  I don't think it would be productive to
7    go back and try to cast blame on why we are where we are.  We
8    concede that there have been delays in productions for a
9    variety of reasons.  I think what we should focus on is what
10   needs to be done, what the Plaintiffs need to do going forward.
11           Ms. Finken said they asked for four months.  They
12   actually asked for 140 days, and we agreed to 90 days.  We are
13   not very far apart, your Honor, but we need some articulation
14   by the Plaintiffs of this is what we need to do and why we need
15   this long to do it and what we plan to do.
16           We, obviously, will consider that and continue to
17   dialogue with Mr. McGlamry, but I don't think it needs to be
18   full briefing.  I think it could be a short submission and
19   short response, like ten pages.
20           THE COURT:  Okay.  I appreciate hearing from
21   everybody, very helpful.
22           Here is what I was thinking.  I was thinking that I
23   would hold a hearing next Wednesday and I would let the parties
24   present to me the basis for needing the additional time.
25           I am sensing that certainly the Plaintiffs want
```

Pauline A. Stipes, Official Federal Reporter

59

```
1    additional time.  I don't know whether the Defendants want
2    additional time or not.  It doesn't matter, I don't need to
3    know that right now, but I do know the Plaintiffs need more
4    time because you have made that very clear, and I am sensing
5    the Defendants are willing to give some time, but maybe not as
6    much time.  Whether they actually need it or that is a
7    compromise, I don't know and I don't have to really know at
8    this particular point.
9            I am very interactive and I like to ask questions and
10   I like to understand.
11           It seems to me that one of the primary reasons that
12   the Plaintiffs, at a minimum -- maybe this applies to the
13   Defendants as well, so don't take it that I am not considering
14   the Defendants need this as well, but I know, at a minimum, the
15   Plaintiffs need more time because of discovery and discovery as
16   it relates to, among other things, experts getting proper
17   information, studies, testing, and things that go along with
18   properly preparing experts, to be able to identify the experts,
19   give the expert reports, go into the depositions, and then
20   ultimately get to a point where we -- you know, you file your
21   motions based on what the experts say.
22           And, you know, we never had a science day, we never
23   really have had, other than our opening conference, any details
24   about what is going on with the science, that would help the
25   Court.
```

Pauline A. Stipes, Official Federal Reporter

60

```
1            So, sensing that that is what is driving much of why
2    at least the Plaintiffs need additional time is that August 2nd
3    date, and maybe as a result subsequent dates just won't work,
4    you know, what does it look like going forward and why.
5            So, it would be an opportunity for the Court to have a
6    better understanding of what needs to be done from this point
7    forward, how much time needs to take place, and to educate the
8    Court without disclosing your work product.  I don't need to
9    know the particulars of who the experts are and what the tests
10   are, but what the game plan is.
11           Rather than put it in a motion where I don't have the
12   ability to ask questions and make sure I understand it, and
13   also it's very time consuming, you are briefing -- maybe it is
14   a different team, but you are briefing Motions to Dismiss right
15   now.  Quite frankly, I am working on the Motions to Dismiss
16   right now.
17           So, I had thought that we could have a hearing, say
18   next Wednesday, and perhaps the Plaintiffs could give me a
19   proposed schedule in advance of the hearing, much of what looks
20   like in PTO 30 format wise, but I would suspect that the dates
21   on the left-hand column would be different because you would
22   want them moved.  Maybe the events would be the same or maybe
23   you would change the wording or maybe you would add different
24   dates and different events on the chart that you had included
25   in PTO 30 for the Court's consideration and ultimate entry.
```

Pauline A. Stipes, Official Federal Reporter

61

```
 1          So, I would know what that proposed schedule looks
 2   like going into the hearing, the Defendants would know what it
 3   looks like going into the hearing, and picking up on Mr.
 4   Bayman's point that he wants to understand why the Plaintiffs
 5   feel they need the amount of time they need, just tell me at
 6   the hearing.
 7          Maybe have Mr. Nye, who is chair of the science
 8   committee, explain to the Court what it is that needs to be
 9   done and how much time is needed to get it done so the Court
10   like understands it, so if the Court entertains amending PTO 30
11   and putting new dates in, that the Court has a level of
12   confidence and isn't just relying upon a piece of paper, a
13   motion, pick have a chance to delve in to ask questions.
14          And then, maybe coming out of that it could be the
15   Defense agrees once they hear what you have to say.  Maybe they
16   have already heard it, but certainly the Court hasn't heard it.
17   To this date, the Court hasn't fully heard anything about the
18   particulars of what needs to be done and what length of time it
19   would take to have it done.
20          Then maybe I would request after that, that after the
21   Defendants have had the benefit of hearing what the Plaintiffs
22   have presented -- and certainly the Defendants can participate
23   in the hearing and present their version of what they think
24   they need to do to either support extensions that they need or
25   to support reasons why perhaps they think the extension that is
```

62

```
 1   being sought is too long, and then coming out of that, the
 2   Court would ultimately have the benefit of a proposal from the
 3   Plaintiff, a proposal from the Defendant, the ability to hear
 4   what needs to take place from this point forward, from
 5   August 2nd forward, unless you are looking -- that is the
 6   next -- well, I am not sure if you are looking to change other
 7   dates as well because we have talked so much about the August
 8   2nd date.
 9          But we'd have a chance to look at all of the different
10   dates that you are proposing, can ask questions, and ultimately
11   consider the entry of a new PTO 30, an amended PTO 30.
12          The Court doesn't want the parties to be operating
13   under an unworkable structure, that doesn't do anyone any good,
14   just for the sake of adhering to a structure that was once put
15   in place.  I tried to say it as clearly as I could last time,
16   which is that we entered it in the beginning, this is what you
17   thought worked, the Court relied upon it, maybe some things
18   have changed, certainly COVID has interfered, but other things
19   have gone on as well.
20          So, the Court was open to hearing what it is that you
21   need, what would work.  That was intended to be a road map for
22   this case.  If we don't have the road map right, how is
23   anything else going to work?
24          So, that was my view of it, is that -- I hadn't really
25   contemplated, quite honestly, motion practice.  It doesn't seem
```

63

```
 1   like it lends itself -- usually when I get a motion for an
 2   extension of time, it is fairly -- you know, I need an
 3   extension of time, the other side either agrees or disagrees,
 4   and I ultimately have a hearing anyway because I always want to
 5   understand how much time, why do you need the time, and let's
 6   make sure that if the Court is going to amend deadlines, it
 7   tries to amend it properly so it doesn't have to amend those
 8   deadlines again.
 9          So, is that a concept that seems to make sense to the
10   parties?
11          You have your ability to present to the Court, it is
12   an opportunity to make sure the Court is educated and informed.
13   Lest you think that maybe the Court is just not understanding
14   what is going on, it is your opportunity to make sure the Court
15   does understand what is going on.  It is not to reveal trade
16   secrets, it is not to uncover anything that you wouldn't
17   otherwise feel comfortable putting in a written motion, quite
18   honestly, and a response, but it saves you the time of writing
19   a motion and a response.
20          You put a chart together and you let the Court
21   visualize it, understand it, and then when you are presenting
22   the Court has a context in which to understand what you are
23   presenting.
24          What do the Plaintiffs say about that?
25          MR. McGLAMRY:  Well, your Honor, number one, we are
```

64

```
 1   almost finished writing it, so it is not a matter of difficulty
 2   putting one together.  I think, from our perspective, we think
 3   it is important that it is in writing and there is a record of
 4   it and that you have an opportunity to see it.
 5          We are happy to present a proposed PTO in advance
 6   along with it, and the Defendants can see our position and we
 7   can lay out some of those things that you are talking about.
 8   We can ultimately have Mr. Nye and then whoever on their side
 9   that can talk about their science available at the same time,
10   but it is important for us to file something.
11          Look, this is too big of an issue for us.  You heard
12   Ms. Finken earlier and we are, on our side, in a constant
13   battle with her on a day-to-day basis because she is the one
14   that sees this time slipping away.
15          There are reasons why it is slipping away and you need
16   to see those reasons and you need to factor those reasons in as
17   to how we move forward because before this, when we talked
18   about things that happened, they not only affect what somebody
19   did or didn't do, but they affect the schedule, and when we
20   work to change the schedule, hopefully from then on, when we
21   have another schedule, then we are just talking about
22   somebody's conduct, not its affect on the overall schedule.
23          You are not going to understand that unless you look
24   at this from the perspective that Ms. Finken and others on our
25   side have lived through to get us to this point.  Otherwise,
```

65

```
 1   what it would force us to do is spend a bunch of time on the
 2   conference next week building a record rather than discussing
 3   these issues.  So, we would ask to be able to file a motion.
 4        THE COURT:  Okay.  Mr. Bayman.
 5        MR. BAYMAN:  Your Honor, I don't think a motion needs
 6   to be filed.  I think they should do what the Court suggested,
 7   which is to make a submission of a new proposed schedule and
 8   then we can hear them articulate, because they have not
 9   articulated to us why they need the time that they need.
10        I think briefing will delay things, number one.  If
11   this is a long brief, we are going to need the right to
12   respond, particularly if there are allegations about things
13   that should have been produced in the past that weren't
14   produced, things like that.  I don't think that is productive.
15        We are where we are.  There have been delays for
16   various reasons.  We have agreed to an extension.  It is a
17   short gap between the two of us.  We can hear why they think
18   they need the time that they need.  I don't think we need to
19   prolong this by lengthy briefing that will require us to file a
20   lengthy response.  We are where we are.
21        We all, I think, say that the schedule needs to be
22   amended.  The triggering date is August 2nd, and other dates
23   flow from that, so they are going to have to change.  We are
24   trying to keep the schedule as close as we can to the one that
25   was entered in PTO 30, and it's not about -- it is about the
```

Pauline A. Stipes, Official Federal Reporter

66

```
 1   primacy of the MDL, and it is about getting this schedule as
 2   close as we can to what was already entered, and that is what
 3   we want to do.
 4        We would like to hear why they need the time they
 5   need.  I think the time is more productive hearing that than it
 6   is about this should have been produced then, etc., etc.  We
 7   are where we are.
 8        THE COURT:  Thank you, Mr. Bayman.  Ms. Finken.
 9        MS. FINKEN:  Your Honor, I am going to repeat what Mr.
10   McGlamry said, which is that the briefing on our side is
11   probably 85 percent done at this point.
12        I think it is critical that your Honor review this
13   request in the context of everything that has occurred up until
14   this point because that is how we got here and so behind today,
15   was because of the delays in the discovery, the delays that are
16   still ongoing, and if we are not going to be able to lay that
17   out, I am not sure that your Honor will get a full appreciation
18   of how we got to where we are, and the issues that still arise
19   every single day with Defendants across the board in terms of
20   discovery, and that is something that we need to address.
21        It is not to necessarily cast blame; it is for your
22   Honor to see a full and complete picture of how we got to where
23   we are and what we are requesting.  This isn't just about what
24   we need to do moving forward, it is how we make up the lost
25   time that we lost, which is significant.
```

Pauline A. Stipes, Official Federal Reporter

67

```
 1        For context, we are still getting tranche one
 2   custodial file documents from the brand Defendants, this week,
 3   last week, we are still getting them.  No one requested a
 4   motion for an extension of time to produce those documents.
 5        That is the reality of what we are facing, and that is
 6   a separate issue, but there are a number of those tiny little
 7   pieces that make the whole picture for your Honor to see and to
 8   see why we are requesting four months, which is essentially --
 9   from the perspective of an MDL, it is a very short period of
10   time, given the fact there have been four-month delays in some
11   of the document production that was due by December 31st under
12   PTO 47.
13        So, from my perspective, and respectfully, your Honor,
14   I would request that we have the ability to file the brief
15   under the page limits under the local rules so you can see the
16   full and complete picture of why we are requesting the
17   extension that we are requesting, which, in our view, is a
18   modest one.  Thank you.
19        THE COURT:  Okay, I appreciate that.  Let me say that
20   I am going to honor the request if you want to file a motion.
21   The Court has never to this day, that it can recall, prohibited
22   anybody from filing a motion, and even my hearing wouldn't have
23   precluded the filing of a motion.  I thought that it might save
24   time and move things along a little more quickly, but they were
25   not necessarily mutually exclusive.
```

Pauline A. Stipes, Official Federal Reporter

68

```
 1        If the Plaintiffs desire to file a motion, they are
 2   always able to file a motion.  If you want to file a motion and
 3   you want to file it under the local rules with the full page
 4   limit, it would seem to me that it would be only the right and
 5   fair thing to allow the Defendants to utilize the full page
 6   limit and the full time that they need, and then to allow the
 7   Plaintiffs to then allow the full time and the full page for
 8   the reply.
 9        So everybody is aware, that puts us about three weeks
10   down the road.  Then, if the Court wants to hold a hearing, I
11   am not even sure -- let's see, if we are April 20th, we are
12   looking at the end of May, so it does postpone what the Court
13   was thinking was maybe a more expedited way to be able to
14   arrive at the same place.
15        I really want you to understand, Ms. Finken, that this
16   is really less about whether you are deserving of an extension
17   and more about the Court understanding, tell me what you need
18   and why.  So, maybe there is a misunderstanding of what you
19   feel you have to prove to the Court.
20        I mean, the Court -- your words are not falling on
21   deaf ears, and so, you should know that.  You absolutely can
22   lay out everything that brought us to this place, but I
23   certainly want to know also where you want to go and why, and I
24   understand it, so it does delay things.
25        Is that preferable, to kind of really kind of put a
```

Pauline A. Stipes, Official Federal Reporter

```
 1   month down the road the Court's entry -- potential entry of an
 2   amended PTO 30?  What I am hearing is that PTO 30 is going to
 3   be amended.  I am the one who has to sign the order, but I have
 4   generally operated with consensus, so I think you would be hard
 5   pressed to find me working against the winds of what both sides
 6   want.
 7           Now, if there is a difference in a number of days, or
 8   weeks, or months, and if that is what it is coming down to and
 9   that is what the briefing would enlighten the Court, I can wait
10   a month.
11           PTO 30 is not really -- it is affecting your daily
12   lives is what I am understanding, and it is making you unhappy,
13   it is making this unpleasant.  It doesn't have to be that way.
14   The litigation is hard enough.
15           So, I guess what I am saying is, I am here to help.  I
16   don't know how else to say it, I am here to help.  The
17   structure has to work.  I am not going to preside over an MDL
18   that doesn't work, like sticking a circle into a square.  If it
19   is not working, it is not working.  How you want to tell me
20   that I guess is up to you.  It is fine, we have local rules,
21   motion, response, reply.  If I still have questions I can have
22   a hearing.  It does put it down a month, I can tell you, with
23   sort of ripening, and that is fine if that is the way you want
24   to go.
25           Is that the way you want to go?
```

```
 1           MS. FINKEN:  I think that, from our perspective, we do
 2   want to brief the issue if it is going to go in front of your
 3   Honor.  It is not to delay it, and I fully appreciate what you
 4   have messaged to us about trying to get to a resolution
 5   quicker.
 6           It is just a matter of the ability to see the complete
 7   picture and how we got to where we are in terms of what we are
 8   asking for, because the request from the Defendants that we are
 9   supposed to show them what we need to do to get an additional
10   six weeks from beyond what they have proposed, which is
11   nothing, is disingenuous at best, frankly.
12           We have told them what we needed, we have told them
13   what is deficient, we have told them what has been delayed.
14   They know what has been delayed, they have asked for
15   extensions.  We have had issues that we have worked out in
16   terms of the delay in production.
17           So, it is very hard for us to listen to that plea by
18   Mr. Bayman on the record to the Court and trust that we can
19   come in front of the Court next week at a hearing and address
20   this adequately without fully laying out the positions and what
21   has occurred up until this point and what still needs to occur
22   before we get to expert report deadlines moving forward.
23           THE COURT:  Okay.  Let me go over a couple of things.
24           Let me know the date by which you will be filing your
25   motion, and what I will say is that in both the motion and the
```

```
 1   response I nevertheless do want the chart.
 2           So, you can use your page limits for your explanation
 3   and narrative, but I want a replication of something that looks
 4   like PTO 30, like a map, like a schedule, and I want the
 5   Plaintiffs' version of it.  So, I guess, Mr. Bayman, you will
 6   just get it in a different version, you won't have it right up
 7   front from the hearing, but you will have a motion and you will
 8   have the chart.
 9           Hopefully the motion will explain in ways that maybe
10   the communication hasn't quite done, the oral communication or
11   email communication, what the Plaintiffs need and why.  And
12   please, I ask the Plaintiffs to please explain to the Court
13   with as much detail as you can why the dates are as you
14   propose.  You know, anticipate questions I might have, try to
15   answer them in your motion.
16           And then the Defense will file its response and it
17   will also include a chart.  It may say it agrees with the
18   Plaintiffs' chart and it may have a different chart, and then
19   the Plaintiff will have a reply, and then we will see whether a
20   hearing is necessary.
21           So, I guess all I need to know at this point is, by
22   what date will the Plaintiffs file their motion?
23           It is important that we have a known date,
24   particularly since you have started the motion, so is not as if
25   it is something coming out of -- from scratch.
```

```
 1           When would the motion be filed?
 2           MS. FINKEN:  Your Honor, I think we could file it
 3   relatively quickly, I would say by Friday.  But in the
 4   meantime, if it would be helpful, we can submit to you our
 5   proposed schedule in advance of filing the motion.  It is
 6   something that we have been discussing and working on.
 7           We could put that piece of it together fairly quickly
 8   for your Honor's consideration in the meantime so you can see
 9   exactly what we have proposed to the Defendants and how we have
10   adjusted the schedule.  We could do it relatively quickly and
11   then file our briefing.
12           I don't know if Mr. McGlamry agrees with that
13   timeframe or not, I was speaking out of turn, but I think that
14   that is a doable timeframe for us.
15           MR. McGLAMRY:  Yes, your Honor, I totally agree with
16   that, and I was going to suggest myself we can go ahead and
17   probably by tomorrow send you a proposed schedule, essentially
18   a draft, if you will, of PTO 30, whatever it is now kind of
19   thing, yes, and then we can brief that issue, but you will
20   already have that in advance.
21           THE COURT:  Thanks, I appreciate it, but if you are
22   filing your motion on Friday, you do not need to send me a
23   draft beforehand.  I actually don't want a draft, I want the
24   real thing.  I would like to see the chart in connection with
25   what you have to say.  That will be most illuminating for the
```

73

```
 1   Court, by all means.
 2        So, you do not need to get me anything.  Just go ahead
 3   and file it as a motion on the docket, just make sure part of
 4   the motion -- and I will do an order to that effect, by no
 5   later than Friday at 5:00 -- again, I am using Friday because
 6   you said Friday, I am not using Friday as your drop dead date.
 7   If Friday is the date that you want to file it, I want to
 8   memorialize it so we have a reasonable expectation.  If that
 9   puts too much pressure on you, do you want Monday instead?
10        MR. McGLAMRY:  No, Friday is fine.
11        THE COURT:  So, Friday at 5:00, I will do an order and
12   it will be for Plaintiffs to file any motion it so desires
13   relating to PTO 30.  Should such a motion be filed, it shall
14   include a chart in the same format with dates and events as
15   that contained within PTO 30, and that the Defendants will file
16   their response under the timeframe allowed for under the local
17   rules and Defendants shall as well include a chart.
18        So, we will proceed that way.  I will decide whether I
19   need a hearing after I receive your submissions.
20        So, let me just ask you, then, in the interim, is
21   there agreement among the parties, you know, because obviously
22   I am not at your negotiating table, is there at least agreement
23   that, for example, the August 2nd deadline -- do all sides, is
24   everybody in universal agreement, collective agreement that
25   August 2nd is not a viable date?
```

Pauline A. Stipes, Official Federal Reporter

74

```
 1        I know the answer for the Plaintiffs would be yes.
 2   Can I ask Mr. Bayman, like, is that something that the parties
 3   have agreed to, it is just that some of the later dates are
 4   where the differences have arisen?
 5        MR. BAYMAN:  I think our disagreement, your Honor, has
 6   been how long they need from August 2nd.  We made a proposal in
 7   which we offered to extend that deadline by 90 days, and again,
 8   your Honor, not because we thought they need 90 days, we did it
 9   to more than meet them halfway to try to get a compromise.  We
10   don't think they need that long for something as narrow as
11   general causation.
12        THE COURT:  Okay.  And the Plaintiffs, again, without
13   previewing the other dates, is that where you were saying you
14   were one month apart in terms of the August 2nd date?  So, the
15   Defense is saying 90 days and you are saying 120 days?
16        MR. McGLAMRY:  No, your Honor, that is not exactly
17   correct.
18        THE COURT:  Ms. Finken was nodding yes, but you can't
19   see her, I can.
20        MS. FINKEN:  Sorry.  Go ahead, Mike.
21        MR. McGLAMRY:  The Court I thought said 120 and 90.
22   It is 140 and 90 in terms of moving out August 2nd, in terms of
23   that deadline for the close of general causation, discovery,
24   and the general causation expert reports.  Then -- so, that has
25   been the essential talking point between us and Andy about the
```

Pauline A. Stipes, Official Federal Reporter

75

```
 1   schedule.
 2        Sort of the other parts of the schedule we really have
 3   not sort of had to, at some level, necessarily get down to, you
 4   know, brass tacks, if you will, about because that movement
 5   from August 2nd to whenever is the driving piece.
 6        THE COURT:  Okay.  So, I think what we can do is, we
 7   can accomplish a small step today, but actually it is a big
 8   step.  Since we know that we are waiting at least a month for
 9   there to be any kind of final resolution on ultimate
10   scheduling, let me ask the parties this.
11        Is there any objection to the Court, for purposes of
12   coming out of today's conference, lifting the August 2nd date
13   by 90 days, since that is an agreed upon date, and then the
14   rest will be worked out with the briefing and perhaps a
15   hearing, but lifting the August 2nd and the dates that flow
16   from there as an interim measure for 90 days at this point?
17        Let me hear from the Plaintiff and then from Defense.
18        MR. McGLAMRY:  Your Honor, I think, obviously, it is
19   sort of in their court in terms of that, but yes.  Obviously
20   that is something they proposed.  If that is there, then at
21   least we would not have the pressure of that August 2nd piece
22   and we would have a chance then to work the rest of this out.
23        MR. BAYMAN:  Sorry, your Honor.  I think we agree that
24   it should not be August 2nd, and I guess my view would be that
25   you just vacate that date until we have a new date, as opposed
```

Pauline A. Stipes, Official Federal Reporter

76

```
 1   to extending it 90 days now.
 2        THE COURT:  Okay.  Plaintiffs' response.
 3        MR. McGLAMRY:  Your Honor, that is up to you, but I
 4   think we are just as happy to go forward with the motion and
 5   talk about whatever dates that might go to, and if they don't
 6   want to make it 90 days, that is fine.  We can just lift it and
 7   see how the motion goes.
 8        THE COURT:  Ms. Finken.
 9        MR. BAYMAN:  Your Honor, a lot of other dates are
10   triggered off of that which may need to be adjusted.  So, I
11   would like, obviously, the ability to see what they think they
12   need and how long they need, but certainly vacate so that they
13   don't feel a pressure of an August 2nd deadline.
14        THE COURT:  Okay.  Ms. Finken.
15        MS. FINKEN:  Your Honor, we would ask if your Honor
16   would vacate the August 2nd deadline in the interim (inaudible)
17   and the new deadlines will be moving forward.
18        THE COURT:  Okay.  I will do an order vacating the
19   August 2nd date in PTO 30 at the Plaintiffs' request and
20   Plaintiffs' agreement to have the motion filed by 5:00 on
21   Friday, with the contours that I have outlined, and then the
22   response and reply, and then we will go from there.
23        Okay.  Anything more on PTO 30?
24        MR. BAYMAN:  No, your Honor.
25        MR. McGLAMRY:  No, your Honor, thank you.
```

Pauline A. Stipes, Official Federal Reporter

```
 1              THE COURT:  Thank you very much.
 2         All right.  Registry, Mr. Petrosinelli and Mr.
 3    Pulaski.
 4              MR. PETROSINELLI:  Good afternoon, your Honor.
 5              THE COURT:  Good afternoon.
 6              MR. PULASKI:  Good afternoon, your Honor.
 7              THE COURT:  Good afternoon.  Nice to see both of you.
 8    Let me turn it over to you.
 9              MR. PULASKI:  Joe, I will jump in unless you have
10    anything else.
11         Let me just give you a quick update.  We have 93,000
12    current claims in the registry, a little over 93,000, I
13    believe.  That is a little lower than last time because we
14    exited some claimants from the registry.  We have 80,000 of the
15    93 from there completely non-deficient and filled out
16    completely, the other 13,000 are being worked on, and
17    everything seems to be going well with the registry to date.
18         As part of the registry process, as your Honors know,
19    we had PTO 50 and 52 put in place.  PTO 50 allowed us
20    information so that we could create a sales and data chart or a
21    Defendant mapping chart that would allow Plaintiffs to be able
22    to name Defendants that possibly could have been involved in
23    the case, and so that we weren't naming some Defendants that
24    may not have possibly been involved.
25         PTO 52 laid out a process by which the Defendants
```

```
 1    could argue that perhaps Defendants were improperly named or
 2    inadvertently named, and certain short form complaints and a
 3    process by which to give them notice to cure those problems.
 4    Since November we have been working on the PTO 52 issue where
 5    notice has been given, and by the 21st day of the month a
 6    response was supposed to be given to my office either through
 7    me or Ms. Marlo Fisher where we take all those notices and
 8    provide them to Defense counsel to let them know who has
 9    complied with and who has not complied with the PTO 52
10    dismissal process.
11         PTO 52 then provides for another process by which
12    Special Master Dodge may get involved if need be to clean up
13    the final few that may have issues for reasons that we don't
14    know yet as to why it wasn't cured, the problem wasn't cured.
15         I will tell you that there have been hundreds and
16    hundreds of notices sent out by the Defense.  As
17    of today, there are only 16 cases from all those months that
18    the -- there wasn't an agreement as to the process where
19    Defendants were dismissed and life moved on.  So, we are
20    talking about literally 16 out of 3 or 400.
21         Of those 16, there is a process in place right now
22    that myself or Special Master Dodge, or through or with Special
23    Master Dodge can reach out to those final 16 law firms and try
24    and resolve these issues, which I think probably would occur
25    within ten days once that process started.
```

```
 1         We never really implemented that process until now
 2    when we had a call with Mr. Henry to discuss how we would
 3    proceed from there because it wasn't brought up until just now.
 4         In my opinion, the process is working splendidly, the
 5    registry is working great, the CPFs are all cured, they are not
 6    deficient for the most part.  The ones that aren't cured are
 7    being cured.  The Plaintiffs are using the Defendant mapping to
 8    its fullest potential.
 9         The claims that were being made by the Defendants
10    regarding the Defendants that were named that shouldn't have
11    been named weren't an overall shotgun approach by the
12    Defendants.  It was like, hey, there is one Defendant that you
13    accidentally named, or a name that shouldn't be here, or there
14    are three Defendants.  It wasn't, hey, there are 30 Defendants
15    that you named that shouldn't be involved.
16         So, Plaintiffs' firms are using the Defendant mapping
17    to properly name Defendants in their short form complaints.
18    The Defendant mapping, or the sales and data chart, is not that
19    easy to follow, it is detailed, and that information was
20    provided by the Defense, but there are numerous formulations,
21    be it syrup, or pill, or tablet, or injection, then there are
22    numerous dosages, 75 milligrams, 150 milligrams, 300
23    milligrams, etc., and then there are different start and stop
24    times for each one of those.
25         So, one Defendant may have a hundred different NDC
```

```
 1    codes for products that are being sold, and on occasion there
 2    may be inadvertently a Defendant that is named, and as soon as
 3    notice is given, it gets cured, or in this case there are 16
 4    out of 3 or 400 that are not, and the process is working
 5    perfectly well at this point.
 6         To begin, I will tell you that I don't think that we
 7    are needing to use Special Master Dodge's time in any
 8    significant way.  In fact, I don't even think we needed to use
 9    her time much at all so far, but she will be asked to help
10    correct these last 16 firms' problems pursuant to the PTO that
11    we agreed to after much deliberation between Defense and
12    Plaintiffs.  And again, I think the process is working well,
13    and that is kind of it as it relates to PTO 52 and the
14    dismissal process.
15         I will say, just for the benefit of anybody that is
16    listening, if you do get a notice, please reach out to myself
17    or Ms. Fisher if you have any problems or suggestions or
18    concerns about why you shouldn't have someone dismissed.
19    Again, your Honor, everyone has been reaching out to us but for
20    this very small handful of people.
21              THE COURT:  So I understand, Mr. Pulaski, in PTO 52,
22    in paragraph F of section two, dismissal process, you are
23    saying 16 Plaintiffs remain identified who have not complied
24    with either filing an amended short form complaint dismissing
25    the requesting Defendants or providing a brief response with
```

```
1    the basis for refusing to dismiss the Defendant, 16?
2          MR. PULASKI:  I think there are just 16 at this point
3    which is -- 16 from 11 different firms.  There are only 11
4    firms involved out of the hundreds of law firms, and again, I
5    am beyond confident that once myself and Special Master Dodge
6    get involved for a very brief period of time, send an email out
7    to these people, 95 to a hundred percent of those will be
8    resolved almost immediately.
9          THE COURT:  How many dismissals have there been?  You
10   mentioned hundreds.  Is there a more particular number?
11         MR. PULASKI:  I have 500 on a dismissal list.  The
12   problem is some of those were cumulative where they were on two
13   different lists.  So, I don't know the exact number, but
14   I know it is between probably 3 and 500 where there was an
15   instance where one or more Defendants should not have been
16   named and either there was an agreement later that they should
17   have been named, or there was an agreement that they shouldn't
18   have been named and it was just missed.  I don't know the
19   outcome of every single one.
20         Sometimes the Defendants were in error as to what they
21   wanted, sometimes they were correct in what they wanted,
22   sometimes there was an ambiguity and it was discussed and
23   resolved.
24         But to answer your question, there are 3 to 500 -- I
25   am guessing more between 3 and 400 individual cases where
```

```
1    notices were sent out to Plaintiffs.
2          THE COURT:  And they either filed an amended short
3    form complaint dismissing the requested Defendants or provided
4    a brief response?
5          MR. PULASKI:  That is correct.
6          THE COURT:  Okay.  Did most of them fall into one
7    category or the other, filing the amended short form or --
8          MR. PULASKI:  I would -- I'm sorry, your Honor, I
9    didn't mean to interrupt you.  I would guess that at the
10   beginning more of them would have been in the category of we
11   named the wrong person, and we changed this because we were
12   cleaning up stuff from before PTO 52 was entered, older filed
13   cases.
14         I think now it is probably more of the one off, one
15   Defendant or two Defendants may have been improperly named
16   because it really is hard to follow that chart because there
17   are so many variations of what is going on, and this process
18   was put in place to clean that up, and that is what it is
19   doing.  It is a perfect process.
20         Everything is provided through the CPS allowing LMI to
21   print out the names and the matching possible Defendants based
22   on what we gathered from PTO 50, and then PTO 52 was put in
23   place, and to be honest, I can't imagine a system where it is
24   going to work any smoother than it is running right now.
25         THE COURT:  Thank you very much.  Mr. Petrosinelli.
```

```
1          MR. PETROSINELLI:  Good afternoon, your Honor.  Nice
2    to see you and Judge Reinhart.  I will be quick because I know
3    it is late in the day.
4          Just a couple of things differently to add just so
5    your Honor knows what is going on in the coming months with the
6    registry.  I would say two things, mainly.
7          One is that we are now -- for the claimants who
8    corrected their deficiencies and remain in the registry and who
9    allege one of the ten injuries that the Plaintiffs' leadership
10   is pursuing, we are now in the process of collecting the proof
11   of use and proof of injury records.
12         In other words, our records vendor is now collecting
13   that, and at some point down the road we will talk about what
14   we do when we see a record that is not consistent with what is
15   on the form in terms of the product that was taken, and that is
16   sort of more -- I guess more granular defense mapping and
17   trying to figure out where we need to amend forms to allege
18   different products that are there or the like.
19         The second thing is, we are now starting with the sort
20   of -- I call them tranche two census plus forms, we need to
21   start that deficiency process.  In other words, the large
22   process we just went through were for folks whose census plus
23   forms were due I think by the end of September of last year,
24   maybe October, one or the other.
25         Now we have had a bunch more forms come in over the
```

```
1    last several months and now LMI is starting the process of
2    looking at those forms to figure out where there are
3    deficiencies, for sure there will be, and then working with the
4    special master, we will put in place a process to get those
5    corrected or exited if people can't correct them.  And so, I
6    think those are the two next things on the horizon.
7          There are other little things that Mr. Pulaski and I
8    are working on.  Your Honor, you should have -- one thing that
9    is very good from a data analytics standpoint is LMI, now that
10   we went through this tranche one deficiency process and we now
11   have this corpus of Plaintiffs who allege one of the ten
12   injuries and have a non-deficient form, those data analytics
13   can be applied to those.  LMI has just provided us, I call them
14   aggregate data reports for that body of people.
15         If the Court doesn't have those, we should get those
16   to your Honor because they are very interesting to look at
17   because that really shows you what this MDL is made up of, at
18   least at the moment.  Now, that number changes because people
19   exit, people enter, and so on, but at least at this point in
20   time, it is a pretty good snapshot from an analytic snapshot of
21   where we are in the MDL.
22         THE COURT:  I haven't seen that report, I am looking
23   at other LMI reports.  That particular report, and I will get
24   it, but can you give me a preview?  It is the non-deficient top
25   ten cancer census plus forms.  What is an example of the
```

information or the data analytics that you are saying you are seeing that are very interesting?

*MR. PETROSINELLI:* Dates of use, age, state of residence, generic use versus brand use, OTC use versus prescription use, number of cases that involve decedents, all sorts of data that really give you a good picture of what the demographics of the claimants are and when -- the usage in question, and those kinds of details that I think are particularly interesting.

*MR. PULASKI:* Your Honor, if I may --

*THE COURT:* I am sorry, I have one more question.

How many claimants fall into the category of non-deficient top ten for which these reports have run?

*MR. PETROSINELLI:* 71,000.

*THE COURT:* I thought there were more deficient forms than that. So, you are saying there are 71,000 non-deficient top ten cancers?

*MR. PETROSINELLI:* According to the reports we got from LMI just a couple of days ago, there are 71,000 non-deficient forms with one of the top ten injuries, yes.

*THE COURT:* Thank you. Did you agree with Mr. Pulaski about the procedure under PTO 52, that it is working as well as Mr. Pulaski reported, hundreds have sort of complied, Defendants have been dismissed through short form complaints or they filed -- or the Plaintiff has filed a brief response, and





that there are only 16 who have not responded, and that you see that as being a de minimus number, and that the next step should be to have the special master try to find out what is going on with those 16 before -- what paragraph J provides for is that the special master recommends a procedure to request the assistance of the Court in resolving the dispute.

*MR. PETROSINELLI:* I would defer to my colleague, Mr. Henry, on that because that really involves the generics. That really has not been a brand issue, so I personally have not been much involved in that. Mr. Henry, I see him on the screen, would be happy to answer your Honor's question.

*THE COURT:* Thank you. Mr. Henry.

*MR. HENRY:* Terry Henry for Apotex Corporation speaking on behalf of the generic manufacturers.

Your Honor, we have had some hiccups in this process on the way, and while we have worked pretty hard with Mr. Pulaski and the special master, those 16 remaining cases that need dismissals, that is only from the February and the March list. We still have a backlog of deficiencies from November, December, and January that we need to fix, and we are working with Mr. Pulaski to get those fixed.

The two big problems that we see are, number one, individual Plaintiffs' counsels who don't undertake what they are supposed to under PTO 52, they either don't dismiss the case or they don't respond and provide a reason, which leaves





those cases hanging, which is why we have these deficiencies.

We believe now we do have a process to begin cleaning up those deficiencies month to month. We still have to go back and fix those prior months.

But the second problem we have is that from the PTO 50 disclosures that the generic manufactures provided in the fall, Plaintiffs' counsel were supposed to have product identification information from which they were to identify the proper generic manufacturers or manufacturers generally.

Our lists month to month are not getting shorter, right, because if they were using that data, using that information in order to name the proper Defendants then those lists would get shorter and ultimately this PTO 50 process would be very simple, as Mr. Pulaski says, but that is not happening. Our lists are continuing to be long lists, and in some cases month-to-month they actually get longer.

Those are the two problems we are working with Mr. Pulaski to try to resolve in this PTO 52 process with the help of the special master.

*THE COURT:* When you say you have a process in place right now, are you speaking about the process being the special master reaching out trying to find these Plaintiff firms and find out what is happening, like paragraph I?

"It is anticipated that where a Defendant requests removal based on information submitted for the first time the





special master may grant the extension. In addition, as the MDL continues to develop it is anticipated the process for dismissal may also evolve to meet the changing needs of the parties. The parties are directed to continue to meet and confer from time to time with the special master about whether any changes to this process would be useful."

And then I guess in the paragraph before it says the special master can extend the time.

I guess I just want to understand what it is that the parties have agreed to as the process, short of asking the Court for assistance in resolving the dispute. Are we not at a stage where the Court should be involved; and if not, when will I know that you need the Court?

*MR. HENRY:* Your Honor, I think we are still a step away. The process, as Mr. Pulaski explained it, by the 21st of the month they are supposed to have either cases dismissed or responses from Plaintiffs' attorneys. Then Mr. Pulaski's office puts together a report for us of those consolidated cases that did not get dismissed.

In fact, what happens is, Mr. Pulaski provides to us now a list of cases in which the Plaintiffs' counsel just didn't respond, and what we do is, we actually verify that list because sometimes, as Mr. Pulaski said, a case did get dismissed and Plaintiffs' counsel just didn't respond to anybody.

1    So, we verify the list and then that goes to the
2  special master, who then reaches out to those firms.  That is
3  the stage we are at now and it is our hope that Special Master
4  Dodge will be able to get those resolved.  If not, then we will
5  be at the stage where we need to come to the Court for
6  assistance.
7       THE COURT:  Great, I appreciate that clarification.
8       Anybody want to say anything more on the registry?
9       MR. PULASKI:  Your Honor, if I may, just quickly.  Mr.
10 Petrosinelli was accurate in explaining to you what the
11 aggregate reports were showing and hopefully you will get a
12 copy of that soon.
13      In addition to the items that it showed you, it also
14 showed duration of use, how long particular clients and the
15 averages of how long, did they use it for five years, ten
16 years, 15 years, three years, and the frequency of use, did
17 they take it daily, did they take it weekly, and a bunch of
18 other issues, even ones that are deterrents or negative
19 factors, such as preexisting conditions and compounders that
20 may exist for types of cancers, specific types of cancers.
21      What I will say that we didn't touch on, and that I
22 know is a PTO 30 issue that will be raised by Ms. Finken and
23 Mr. McGlamry, and other issues, and by Defense as well, is kind
24 of the purpose for why we did this.
25      One was to clean up the docket, to make this

1  transparent, to give the Defendants notice of the types of
2  claims they may be facing, the alleged claims that were being
3  placed against them, and to allow for a process down the road
4  that would make the bellwether process more seamless and easy
5  to adhere to, and to create a bellwether process that works,
6  especially with a litigation that is cumbersome like this one
7  with so many Defendants and so many different types of
8  Defendants and so many Plaintiffs that used the drug for years.
9       I think now that we have this put together with 71,000
10 designated cancer non-deficient Plaintiffs, we are at a
11 position where -- I know we were supposed to start the
12 bellwether process next month, where we can actually start
13 sitting down with the Defense and work out a process by which
14 to create the bellwether process, and then to move down the
15 road to where we get to a point where we have a filtering of
16 cases that we go through.
17      Then we have Plaintiffs picks, Defendants picks, and
18 Court's picks, and start working through that process at the
19 same time and on a parallel path as we go through discovery, so
20 that when we end discovery we are far down the road with the
21 bellwether process and we are not starting from scratch after
22 discovery has finished because at this point we have all the
23 data, the Defense has all of the information, the Plaintiffs
24 have all of the information, and it should make for a very
25 seamless bellwether process starting next month and moving on

1  down the road and actually working through bellwether cases to
2  some degree over the next six months.
3       I think that in and of itself is really the greatest
4  benefit of the registry process, in addition to forcing
5  everybody to understand the 30,000-foot view of the claim,
6  which in my mind makes everything worthwhile, and all the time
7  we spent both on the Plaintiffs side and the Defense side and
8  special master's side to get all this done.
9       Down the road, I would say it will be significantly
10 beneficial for some type of settlement procedure if and when we
11 get there.  For now, the bellwether process, we are really
12 ready to go as far as I can tell.
13      THE COURT:  Well, I'm a little confused.  I don't want
14 to rehash PTO 30 and what I did with the previous group, but it
15 probably bears clarifying.  I was going to memorialize it in an
16 order, but in essence, vacated the August 2nd date, which would
17 seem to lend itself to the dates that follow it, particularly
18 the ones that, for example, bear on the expert reports that
19 would come out of -- you know, the Defendant's expert reports,
20 things that flow from August 2nd.
21      So, I want to be clear, Mr. Pulaski, are you working
22 on the premise, then, that even though part of your team has
23 agreed to the vacating of the August 2nd date, and really the
24 dates that flow from it, that the August 16th date would
25 nevertheless remain in effect?  And if so, we should probably

1  be very clear on that is what everyone wants.
2       MR. PULASKI:  I think what I am saying is, one, I will
3  get with Mike and Tracy just to make sure that we are on the
4  same page, but in my mind, as I see it, the actual sitting down
5  and speaking with Special Master Dodge and the Defense to
6  discuss a bellwether process, how are we going to handle it,
7  what types of cases are we looking for, how would we want to
8  choose these, do we want to start with a group of 500 cases and
9  whittle it down to a hundred; out of those hundred, do we want
10 to group it into different types of cancer, and do we want
11 different stages, do we want different use, such as daily use
12 versus weekly use versus someone that used it for 20 years
13 versus 10 years, and that process I don't think needs to be
14 held up.
15      Now, when we start talking about discovery and other
16 issues, that is a matter that I need to get with Mike and Tracy
17 about, and we need to discuss in PTO 30, but just sitting down
18 and discussing how we are going to start moving along and start
19 picking the actual cases, to me, that is a no brainer, and that
20 can start whenever we want to start.  That is non-specific to
21 discovery being done, it is really just a procedure to put in
22 place so that when we are ready to go, we go.
23      MR. PETROSINELLI:  Your Honor, may I be heard on that?
24      THE COURT:  Yes.
25      MR. PETROSINELLI:  I think perhaps your Honor was

93

```
 1    thinking the same thing I was thinking, which is they can't
 2    have their cake and eat it too.  PTO 30 was done as a whole
 3    compromise that had in it deadlines for expert disclosures and
 4    discovery, and deadlines for, as Mr. Pulaski said, starting to
 5    talk about a bellwether process.
 6          If PTO 30 is going to be extended, it has to be
 7    extended entirely, and that would include the dates up front
 8    that dealt with discussing bellwether cases because, as Mr.
 9    Pulaski said, the idea and the compromise was that those things
10    would happen in parallel.  So, if we are pushing back the
11    deadlines relating to the Plaintiffs' general causation expert
12    reports, as you heard from Mr. Bayman, our position was we were
13    willing to entertain some extension, but only if all the other
14    concomitant deadlines were extended.
15          I agree with you, your Honor, I don't want to go
16    backwards to a half hour ago, but if the Plaintiffs' proposal
17    is going to be let's push back our expert disclosure deadlines,
18    but let's keep all the bellwether deadlines, then we have a
19    very different position and you will see a very different set
20    of motion papers, I think.
21          Just to be clear, and I think Mr. Bayman, if he were
22    on the screen, would agree with me, we were willing to
23    entertain an extension that they have requested, that we don't
24    think they need, but they think they do, on the expert
25    disclosure deadline assuming all the deadlines are pushed,
```

Pauline A. Stipes, Official Federal Reporter

94

```
 1    which would include the deadlines in PTO 30 relating to
 2    bellwether discussion.
 3          And so, I think that was the gist of your Honor's
 4    question and that is our view of that, but obviously we can
 5    wait and see what they propose, I guess on Friday when they
 6    file their motion.
 7          Thank you, your Honor, for clarifying that, because
 8    that is a key feature of our position on the overall subject.
 9          THE COURT:  Okay, thank you.
10          I know Mr. Bayman and Mr. McGlamry came on.  Unless
11    there is something you want to add that is different from what
12    has been said --
13          MR. McGLAMRY:  Your Honor, all I would say is, you
14    know, we had made a proposal that included issues related to
15    bellwether, and that was part of the discussion.  As Mr.
16    Petrosinelli (inaudible) here is our
17    proposal (inaudible) we didn't work it out because we didn't
18    have an agreement.
19          From our perspective, PTO 30, as you talked about
20    earlier, with both the two columns, you have the one -- the
21    dates on one side and the events on the other, obviously those
22    things have to have some correlation and probably tweaking, as
23    we have learned how we need to do in tweaking these orders, and
24    so we'll address it all when we file our motion.
25          THE COURT:  I think that makes sense.  So, maybe I was
```

Pauline A. Stipes, Official Federal Reporter

95

```
 1    to -- I have to look back to the transcript to exactly what I
 2    said.  The vacating should be as to the entirety of PTO 30,
 3    pending the submissions, which will include the charts, and
 4    then the Court will know where you stand with respect to the
 5    sequencing and whether you have the same vision of all dates
 6    moving back equally, or perhaps one date remaining the same,
 7    even though others are.
 8          I didn't want to get off track, but I did want to pick
 9    up on how I heard Mr. Pulaski speaking, and it didn't quite
10    comport with what I meant to say when I spoke of the vacating.
11          So, the vacating is, obviously, not a ruling, it is
12    not with prejudice to anybody.  It is entirely without
13    prejudice to sort of pause, relieve the stress, relieve the
14    panic, give wiggle room to make things work properly, and give
15    the Court an opportunity to hear from you through your
16    submissions as to what you think a revised amended PTO 30
17    should look like, and then armed with that information, the
18    Court will make its ultimate determination.
19          Okay.  Unless there is anything more to say about the
20    registry, I thank you very much for that update.  We will move
21    on to the last -- the second to last agenda.  Thank you.
22          MR. PULASKI:  Thank you.
23          MR. PETROSINELLI:  Thank you and Judge Reinhart.
24          THE COURT:  State/Federal, Mr. Agneshwar and Mr.
25    Pulaski for Plaintiffs if that is needed.
```

Pauline A. Stipes, Official Federal Reporter

96

```
 1          MR. AGNESHWAR:  Thank you, your Honor.  Good evening,
 2    I should say, instead of good afternoon anymore.  Good to see
 3    you.  Good to see you, Judge Reinhart.
 4          Very quickly, your Honor, the one thing that is new
 5    since the last time we were before you is that there has been
 6    argument on the Tennessee Motions to Dismiss in Hamilton County
 7    and a decision, basically, on our Motion to Dismiss design
 8    defect.  The Court granted it insofar as the theories were
 9    based on the design of the product and allowed Plaintiffs to
10    replead if they were making a labeling claim or a manufacturing
11    claim.
12          On the pleading issues, the Court did not dismiss the
13    case outright, but gave Plaintiffs 60 days to provide more
14    clarity as to what they were really saying, the who, what,
15    where, why of their theory.
16          So, it kind of paralleled a little bit what the Court
17    did, but that is the sum and substance of it.
18          The Court also entered a scheduling order that takes
19    us through April of 2022, when expert reports are due, but in
20    those cases, there are a lot less cases, there will be other
21    discovery going on in the meantime.
22          As to California, we are negotiating with the
23    Plaintiffs on some of the standard orders that will be issued
24    once the JCCP gets off the ground, but we are still waiting for
25    the Chief Justice to affirm the assignment to Orange County for
```

Pauline A. Stipes, Official Federal Reporter

```
 1    a judge to be assigned.  This is the normal timeframe, we are
 2    expecting that any day now over the next couple of weeks.
 3          Beyond that, your Honor, nothing else to report.  I'm
 4    glad to keep it short and sweet.
 5          THE COURT:  Just one question.  You said that in the
 6    Hamilton County there is repleading 60 days from now, or
 7    whenever the orders came out.  It sounds like they came out
 8    fairly recently.  But April 22 is when Plaintiffs would put
 9    forth their expert reports?
10          MR. AGNESHWAR:  Yes, I believe that is right.  Let me
11    very quickly look at my notes here.
12          THE COURT:  So, kind of discovery between now and then
13    and expert deadlines by a year from now?
14          MR. AGNESHWAR:  Actually, it is not really expert
15    reports, it is more interrogatory responses.  So, the
16    Plaintiffs are due on February 18, 2002, and ours are due --
17    deadline for Defendants' expert rog answers are due on
18    April 29, 2002.
19          In that case, at least the way the Court entered the
20    order, there is other discovery taking place between now and
21    then, including written discovery and depositions of the
22    Plaintiffs and the like.
23          THE COURT:  I think you said 2002, but you meant 2022,
24    right, just for the record.
25          MR. AGNESHWAR:  Yes, correct.
```

```
 1          THE COURT:  Do you want to add anything, Mr. Pulaski?
 2          MR. PULASKI:  No.  I think Mr. Agneshwar covered it.
 3          THE COURT:  Perfect.  All right.  Mr. Watts, then, the
 4    next matter on the agenda, how are depositions going,
 5    international brand, non-international?  If any Defendant needs
 6    to be heard on this, by all means come on to the platform.
 7          MR. WATTS:  It is not letting me start a video.
 8          THE COURT:  Oh dear.  I can hear you okay, so you can
 9    report without your video on.
10          There you are.  Hello.
11          MR. WATTS:  As the joke goes, I have a face built for
12    radio, so here we are.
13          The status of the international depositions kind of
14    reminds me of that 1966 spaghetti western The Good, the Bad and
15    the Ugly, we've got a little bit of each.  The good is that Rob
16    Friedman, playing Clint Eastwood, and I started a long time ago
17    on this and blocked out two weeks of time.  I think we have
18    June 14 through June 25 blocked out for Boehringer Ingelheim in
19    Brussels.
20          The bad is, you know, Lee Van Cleef is Will Sachse, he
21    got started late, but he has made a lot of progress.  I don't
22    mean to criticize it.  And then the ugly is my buddy, Anand,
23    who is bringing up the tail, but we are close.  Let me tell you
24    where we are.
25          I am going to get on an Air France flight on May 31,
```

```
 1    and I will be in Europe with our team for about eight weeks.
 2    We have two weeks blocked out for Sanofi.  From June 1st,
 3    effectively, through the 11th is the block that we are trying
 4    to do with Sanofi.  We don't have any witnesses pinned down
 5    yet, but that is the block that my friend Anand and I have
 6    agreed to.  We don't know whether those depositions are going
 7    to be in London or in Brussels, and we are working on that, and
 8    he is working diligently.
 9          Then we go to Brussels or we stay in Brussels to do
10    two weeks of Boehringer Ingelheim depositions from June 14th
11    through June 25th.  Then lastly, from about the 28th of June
12    through about July 16th, we have England and Ireland for Mr.
13    Sachse's witnesses on behalf of GlaxoSmithKline.
14          We asked for six Sanofi witnesses, we got dates for
15    zero, but I am confident that Mr. Agneshwar is going to get
16    them pretty quick.  We asked for eleven international witnesses
17    from Boehringer Ingelheim, so far we have four.  Actually it's
18    more like five because one of the ones we asked for in Europe
19    is actually in Mexico and I will get back to that.
20          Then with respect to GSK, we have asked for 15 and so
21    far we got six, but I don't want to suggest that we are only
22    40 percent there.  I see progress every day, and hopefully we
23    will have you a full update by the end of next week as to what
24    is going on.
25          Our challenges are as follows:  Number one, we have a
```

```
 1    set of depositions that we need to do in Mexico City, and those
 2    are the Promeco Mexico depositions.  I have an office in Puerto
 3    Rico where people are reading a bunch of Spanish language
 4    documents right now.  So, we have to get through those
 5    documents, and there are more than 10,000 of them as I recall,
 6    before we can give Mr. Friedman the final list of whom we want
 7    to depose in Mexico.
 8          I think he has three people already that we have asked
 9    for that happened to be stationed there.  My guess is we will
10    add two or three more and we will get them all done in a week.
11          From the standpoint of scheduling, think in terms of
12    June 1 through June 11 for Sanofi, June 14 to June 25 for
13    Boehringer Ingelheim, June 28 through July 15, 16 for GSK, and
14    then immediately we go to Mexico City, probably a week there,
15    sometime the 18th through the 22nd.
16          So, our goal is that we have to be done by the 22nd,
17    and the reason is, I am in a final pretrial conference in front
18    of Judge Lee Rosenthal in Houston on the 23rd, and I start a
19    trial shortly thereafter.
20          You brought up a lot about how you would tweak PTO 30.
21    I am reminded of the phrase from P. T. Barnum that comfort is
22    the enemy of progress and, frankly, I was a little relieved
23    about the briefing, that this might take a month.  What I don't
24    want to have happen is, I don't want to go to Europe twice.  I
25    am going to be there a long time, my people are going to be
```

1   there a long time.

2        What I would like is an international depo protocol

3   order, that I am happy to submit to the Court, that basically

4   says, look, I may have just pushed PTO 30 back 90 days, or 140

5   days, whatever it is going to be, but I want all of these

6   international depositions done by July 22nd, or you have to

7   bring them to the United States.

8        The two things that I need is, number one, they

9   designate these witnesses.  I need to know who needs an

10  interpreter so that we can figure out how long these respective

11  depositions are going to take place.  I advocated for and I

12  think your generic depo protocol assumes a one-day deposition.

13  Obviously, if something is interpreted it takes twice as long

14  and sometimes four times as long.

15       The second thing is, and this is where I really want

16  to focus my conversations to, the need for the custodial

17  documents for the witnesses that we have asked for -- I will

18  tell you that I sent out lists for Sanofi, for Boehringer

19  Ingelheim, and for GSK the first part of this month.  Everybody

20  got them by April the 6th, and the reason for that is, I need

21  those documents by May the 7th, and that gives us two or three

22  weeks to put our document -- our document review teams in and

23  get them all done.

24       The logistics of traveling international and getting

25  all the documents over there and getting everything set up are

1   three times as difficult as a domestic deposition.  I need the

2   documents for all these witnesses produced to me by May the

3   7th.  Why did I get them all the list by April the 6th?  So

4   that they had 30 days just like you would in a normal 30(b)(6)

5   situation.

6        So, I don't want any of this stuff like what we've

7   seen in some of these domestic depositions where we fly all the

8   way to England or Cork, Ireland or Brussels and then we get

9   documents produced two days out.  We won't have access to copy

10  machines, we won't have access to interpreters and the like.

11  We need them by May the 7th, which gives us three weeks to get

12  them all ready, boxed up, copied, and the like.

13       So, that is kind of where we are on the international

14  depos.  I think it is a story that the glass is half full, I

15  really think we are getting there.  I commend Special Master

16  Dodge for her assistance in that regard.

17       You asked also for a little bit of information on

18  brand non-international issues.  Would you like me to handle

19  that first?

20       THE COURT:  Let me go back to this very elaborate,

21  detailed oriented, deadline driven protocol for international

22  depositions.

23       What is the game plan?  When are you going to submit a

24  proposal to the Court after conferring?

25       I want to leave enough time for the Court to be able

1   to assist in getting the parties what they need so that they

2   can proceed with this whole schedule that you have outlined on

3   track.

4       MR. WATTS:  I will have a draft to the Defendants by

5   tomorrow --

6       THE COURT:  I'm sorry, can you repeat that?  I didn't

7   turn my audio off.

8       You start with you will have a draft, and then I

9   didn't hear what you said.

10      MR. WATTS:  I will have a draft to them by tomorrow.

11  I will be in depositions with Cardinal and Rite-Aid Thursday or

12  Friday.  If they get it back to me over the weekend, that is

13  fine.  We can submit it to you early next week.  It's very

14  simple, interpreter, how long is it going to take, am I going

15  to get the custodial documents by May 7th in time to get them

16  organized before we get on the plane May 31st.

17      THE COURT:  Is Mr. Agneshwar the person you are

18  dealing with on this?

19      No.  Who from the Defense could represent that

20  submitting a proposed protocol next week is acceptable to the

21  Defense?

22      MR. WATTS:  To be fair to the Defense, the issue of

23  custodial documents by May the 7th is something that I just

24  thought of during the course of this from the standpoint of we

25  have had these problems domestically that I am about to tell

1   you about.  I will get Mr. Agneshwar, Mr. Friedman, and Mr.

2   Sachse a draft, it's very short, a page and a half.  It

3   basically says by X date you tell me whether they are

4   interpreted, and by Y date you get me the documents, and then

5   we will come up with whatever else we need to do.

6       THE COURT:  I am not hearing from any Defense

7   objecting to -- it is not that the Defense is agreeing to

8   anything.  I haven't ruled on any date, I am talking about

9   getting a proposal, which will either be an agreed to proposal

10  or competing proposals.

11      Can we say by next -- a week from now, the 27th, that

12  there be a proposal -- a proposed PTO for international depo

13  protocol submitted to the Zantac email address by 5:00 on the

14  27th?  Is that acceptable to both sides?

15      MR. AGNESHWAR:  Your Honor this is Anand Agneshwar

16  representing Sanofi.  I hadn't heard of a proposal for an

17  international deposition protocol that is separate protocol

18  from the pretty elaborate protocol we already have in place,

19  but I am happy to take a look at it.  Before I see what Mr.

20  Watts has in mind I would rather not commit to a particular

21  date.

22      We can be sure to let your Honor know by next Friday

23  either, A, we have agreement, B, we have competing proposals,

24  or C, we need more time to evaluate, if that is okay.

25      THE COURT:  How does that work for the Plaintiff?

1   MR. WATTS:  I think as long as we get it handled by
2   May 1st --
3   THE COURT:  That is the very next day.  You are not
4   going to have an order by May 1st, which is a Saturday, if I
5   don't have a proposal by the 30th of April.
6   MR. WATTS:  You are right about the weekends, Judge, I
7   am sorry.  I have deposition on the 5th, 6th, and 7th.  If
8   there is a way we could get it set Monday if there is any
9   disagreement.  I don't think there will be, everything we
10  negotiated so far was fine, they are doing good.
11  I will get them a draft late next week.  If we have a
12  disagreement, I will submit it to you.  If we have it Monday or
13  Tuesday we --
14  THE COURT:  Okay.  I am going to say a week from now
15  so we know what is going on.  I don't want to get too close up
16  to these dates.  It gives you the latitude, Mr. Agneshwar, to
17  say you don't need one, or we disagree, but let's set April
18  27th at 5:00 as an email submission to the Zantac email with
19  either a jointly agreed proposed protocol, a joint submission
20  telling the Court you have decided you don't need one, you
21  worked it out, or competing proposals, or we need more time.
22  It leaves all options open, but it pins it to a date and time.
23  MR. AGNESHWAR:  That is fine, your Honor.  May I
24  respond to one thing on the Sanofi depositions?  I will just be
25  a minute.

1   Mr. Watts is right that we are trying to work these
2   out and not committed to get these done in the first couple of
3   weeks in June.  I will say we got the list on Friday.  I don't
4   know how long he has been working with the other Defendants, so
5   I am doing the best I can to figure that out.
6   Some of these are former employees, so it is not so
7   easy to get in touch with them, but I am doing the best.  As
8   your Honor is aware, they are not all in France, they are in
9   various countries, in Europe, and one is even in South Africa.
10  The COVID situation, we have to check the comfort level of
11  individuals to travel.  I am sure we will be able to work this
12  out.
13  I wanted the Court to understand that I am working
14  hard on it.  We don't have it exactly pinned down, but I am
15  hoping to have it pinned down later this week.
16  THE COURT:  Terrific, thank you so much.
17  Anything further, Mr. Watts?
18  MR. WATTS:  With respect to the status of
19  non-international depositions with the brands, our big
20  challenge has been the Sanofi email situation.  Let me give you
21  the one that kind of stuck in my craw.  Not complaining, Mr.
22  Agneshwar has been a gentleman.
23  The Sanofi regulatory deposition was originally
24  scheduled for December the 10th, then we had the big document
25  destruction brouhaha that resulted in it being delayed, I think

1   it was four months, until April the 9th.  I took a Wal-Mart
2   deposition, two of them, on April the 7th, and I got out at
3   about five o'clock, and at 6:52 p.m. I got an email that said
4   11,753 new documents were being produced less than 36 hours
5   before this deposition.  Obviously that did not please me.
6   I offered to stay up all night, but it took us the
7   morning to load them.  We found hundreds and hundreds of
8   documents that were directly relevant to Bailey so we pumped it
9   to May 7th.  The consequence of that, together with the
10  deposition I took of Sanofi's storage and distribution guy, a
11  guy named Matt Lotstanfor (phon) I took his deposition for six
12  or seven hours and then had several hundred documents from his
13  custodial file produced after the deposition was over.
14  This has led to things being backed up.  I think my
15  schedule May 5th is a GSK deposition of Mr. Eschelman (phon),
16  the 6th is Sanofi, Sandy Flori (phon), and the 7th is Mr.
17  Bailey.  I am happy to do that, but my point is, that is an
18  example of how things are getting backed up by this late
19  production.
20  I will tell you, on the retailer and distribution side
21  it's a glass is half full kind of thing.  We took the
22  deposition of Wal-Mart and CVS on the 15th.  I have Cardinal on
23  the 22nd, Rite-Aid on the 23rd, and Walgreens on the 29th.  We
24  had a little trouble with Publix, but we will get that worked
25  out.

1   Same thing with the distributors, Cardinal, Kaplan,
2   AmeriSource, they are all scheduled for the 22nd of April, May
3   13th, and May 26the.  So, I think the news is good domestically
4   with respect to the retailers and the distributors.  I think we
5   will continue to work through production on the brands, and you
6   heard everything you need to hear about the generics, we are
7   working through that.
8   THE COURT:  Thank you, Mr. Watts.  Anything further,
9   Mr. Agneshwar?
10  MR. AGNESHWAR:  Sanofi was raised again, so just to
11  briefly respond.  Mr. Watts was absolutely right, there was a
12  mixup with some documents for Mr. Bailey and apparently there
13  was a secondary review and certain documents were produced the
14  day before the deposition.
15  As soon as I learned about it I got on the phone with
16  Mr. Watts and we worked it out.  I am not aware of any issues
17  with domestic depositions.  If there were, Mr. Watts can give
18  me a call about it, but this is the first time I am hearing
19  about it.
20  As you can imagine, we are trying to be very
21  cooperative, I was on the phone with Mr. Watts yesterday,
22  talked to him last week about the international depositions.  I
23  have been trying to get them what they need as quickly as I can
24  and when I hear about issues, to try to resolve them.  I always
25  pick up my cell if Mr. Watts wants to call me about the

```
 1   Lotstanfor deposition.
 2        MR. WATTS:  If I could respond.  The only reason I
 3   bring it up -- and I don't mean to suggest that Anand has done
 4   everything he said he would do times two.  What I mean to
 5   suggest is, those are two examples of why I need that provision
 6   in the international protocol that the custodial produced by a
 7   hard date and I need three weeks to get them organized.  We are
 8   going to go over and take 15 GSK depositions, 11 Boehringer
 9   Ingelheim depositions, and seven Sanofi, and if there is any
10   sort of maneuvering with respect to late production we are just
11   cooked and we'll never get it done.  We will all have to go
12   back again, and we don't want to do that.
13        THE COURT:  Thank you so much for the update.  Was
14   there anything further you wanted to say or anything further
15   you needed from the Court?
16        MR. WATTS:  No.  They have been working hard with me
17   and our progress is a result of that mutual effort.  Thank you.
18        THE COURT:  Thank you so much, Mr. Watts.
19        All right.  We get to conclude with our Next Gen
20   representative from Arnold and Porter.  Is it Oluoma Kas-Osoka?
21        MS. KAS-OSOKA:  Oluoma Kas-Osoka.
22        THE COURT:  Okay.  How are you?
23        MS. KAS-OSOKA:  Good.  How are you?
24        THE COURT:  Good.  Sorry I did not pronounce your name
25   exactly right, and I apologize that you have had to wait until
```

```
 1   6:03.  I will turn my audio off and turn it to you because I am
 2   most interested in getting to know you.
 3        MS. KAS-OSOKA:  Hi, everyone.  I don't want to take up
 4   too much of everyone's time, I know it's getting late.  I am a
 5   fifth year associate at Arnold and Porter.  I first wanted to
 6   thank you, your Honor, for the opportunity to speak before the
 7   Court.  I sincerely appreciate your interest in associate
 8   development and I am grateful for the opportunity to be here
 9   today.
10        So, a little bit of background about me, I went to
11   Washington University, in St. Louis, Law School, and prior to
12   joining Arnold and Porter, I was at another firm, and I have
13   been at Arnold and Porter for two and a half years, it will be
14   three years in November.  I have been on Zantac since the
15   outset of the litigation, so I have been able to really
16   understand firsthand exactly how the BGML process works, how
17   the MDL process works, and it has been a really excellent
18   opportunity for me.
19        The opportunities I have had working on this case have
20   ranged from working on the census and registry, which has
21   allowed me to work very closely with and collaborate with the
22   other co-defendants in the case, and I have been able to attend
23   multiple discovery hearings much like this one today, and it
24   has allowed me to stay engaged and involved with various
25   discovery issues in the case.
```

```
 1        I worked directly with Anand in preparation for the
 2   California coordination argument, which ended up very favorable
 3   for us, so we were really excited about that outcome, and I
 4   worked as --
 5        (No audio.)
 6        THE COURT:  It froze there.  Is that on
 7   Ms. Kas-Osoka's end?
 8        MR. AGNESHWAR:  I believe it is, your Honor, because
 9   nobody else is frozen.
10        THE COURT:  It must be an internet issue on her end.
11   I am assuming that maybe Ms. Kas-Osoka can hear me.
12   Mr. Agneshwar, maybe if you could stay on so we could -- if for
13   some reason she is not able to hear me, could we have her
14   present again at the next conference?
15        MR. AGNESHWAR:  Absolutely, your Honor, apologies for
16   this.
17        THE COURT:  No, I feel badly for her.  She shouldn't
18   feel badly at all.  Please communicate that.  This happens, it
19   happened to me the other day actually, completely went off the
20   screen in the middle of a sentencing.  Please convey that it is
21   to be expected in this age of technology when we can count on
22   it only up to a certain point.  You will put her back on the
23   schedule for the next conference?
24        MR. AGNESHWAR:  I absolutely will.
25        THE COURT:  We will start off with her, we won't end.
```

```
 1   Okay?  Meanwhile -- can you hear me okay?
 2        MS. KAS-OSOKA:  Yes.  Sorry, my internet just cut off.
 3        THE COURT:  No, perfect.  We were going to put you on
 4   the next conference, but you cut out when you were saying that
 5   you had been successful in the California case.
 6        MS. KAS-OSOKA:  Okay.  All that was left was I was
 7   talking about how -- a fun fact about myself, which was that I
 8   have seven brothers and sisters, and we have all graduated from
 9   college and we are either doctors, lawyers, teachers,
10   professors.  That is my fun fact.
11        THE COURT:  That is more than a fun fact, that is like
12   an awe inspiring, your parents must be over the moon,
13   incredibly proud of seven children all professionals.  That is
14   incredible.  Thank you so much for sharing that with us, and
15   thank you for your participation in this litigation.
16        I know that you and the other members of the Next Gen
17   and LDC group are absolutely contributing and making this a
18   better case because of your contribution.  Thank you so much.
19        MS. KAS-OSOKA:  Thank you, your Honor.
20        THE COURT:  Okay, take care.
21        With that, I want to thank everyone for their
22   patience, I found it to be productive, we covered a lot of
23   diverse ground from discovery to scheduling and everything in
24   between.  I don't want to keep anyone longer than we have
25   already kept you.
```

113

```
 1            Have a nice evening, stay safe, be well, and we will
 2      look forward to seeing everybody again soon.  Take care.
 3            (Thereupon, the hearing was concluded.)
 4                              *  *  *
 5            I certify that the foregoing is a correct transcript
 6      from the record of proceedings in the above matter.
 7
 8            Date:  April 22, 2021
 9                   /s/ Pauline A. Stipes, Official Federal Reporter
10                   Signature of Court Reporter
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Pauline A. Stipes, Official Federal Reporter

---

114

MR. AGNESHWAR: [10]  95/25
9/7/9 97/1/3 97/24 104/14
105/22 108/9 111/7 111/14
111/21
MR. BARNES: [3]  44/13 46/7
46/8
MR. BAYMAN: [8]  49/25 54/16
58/4 65/4 74/4 75/22 76/8
76/23
MR. GILBERT: [2]  7/4 7/11
MR. HENRY: [2]  86/12 88/13
MR. McGLAMRY: [13]  49/24
50/23 53/25 58/3 63/24 72/14
73/9 74/15 74/20 75/17 76/2
76/24 94/12
MR. PETROSINELLI: [9]  77/3
82/25 85/2 85/13 85/17 86/5
92/22 92/24 95/22
MR. PULASKI: [11]  77/5 77/8
81/1 81/10 82/4 82/7 85/9
89/8 92/1 95/21 98/1
MR. SACHSE: [7]  4/12 4/15
9/21 18/13 19/15 20/5 23/18
MR. WATTS: [10]  98/6 98/10
103/3 103/9 103/21 104/25
105/5 106/17 109/1 109/15
MR. YOO: [8]  21/22 32/3
33/22 36/8 46/11 47/1 48/4
49/20
MS. TINKEN: [30]  4/10 4/16
6/15 6/20 7/14 13/13 15/14
16/16 18/12 20/2 20/5 27/16
27/18 32/19 32/10 37/15 39/25
41/7 41/14 44/10 47/3 47/11
48/18 49/18 56/10 66/8 69/25
72/1 74/19 76/14
MS. GOLDENBERG: [13]  21/20
22/3 23/7 24/16 25/1 25/8
25/23 27/1 27/8 27/15 30/13
31/6 31/19
MS. KAS-OSOKA: [6]  109/20
109/22 112/2 112/1 112/5
112/18
THE COURT: [116]
THE MAGISTRATE JUDGE: [1]
21/10

/

/ /s [1]  113/9

1

1.3 [1]  28/19
1.6 million [1]  29/2
10 [1]  92/13
10,000 [1]  10/5
10,150 [1]  7/7
100 [1]  2/6
10019 [1]  2/24
10th [2]  44/12 106/24
11 [3]  81/3 81/3 109/8
11,753 [1]  107/4
1100 [1]  2/3
111 [4]  34/7 34/20 35/1
35/22
1130 [1]  1/15
1180 [1]  2/17

11th [1]  99/3
12 [2]  74/15 74/21
12th [2]  2/20 4/23
13,000 [1]  77/4
130 [2]  1/14 2/14
13th [1]  108/3
14 [6]  27/12 30/5 32/6 32/8
98/18 100/12
140 [3]  58/12 74/22 101/4
14th [1]  99/10
15 [8]  32/9 35/12 38/22 39/2
89/16 99/20 100/13 109/8
15th [1]  107/22
16 [14]  24/18 78/17 78/20
78/21 78/23 80/3 80/10 80/23
81/1 81/2 81/3 86/11 86/17
100/13
16 before [1]  86/4
160 [2]  1/14 2/17
16th [2]  91/24 99/12
17 [1]  24/18
1725 [1]  1/17
180 [1]  29/1
18th [3]  1/14 2/14 100/15
19103 [2]  1/14 2/14
19104 [1]  2/11
1966 [1]  98/14
1st [3]  99/2 105/2 105/4

2

2,300 [1]  9/2
20 [5]  1/5 27/12 35/12 36/23
83/25 108/8
20-md-02924-ROSENBERG [1]
1/3
200 [1]  5/18
2000s [1]  27/20
2002 [3]  97/16 97/18 97/23
202-434-5567 [1]  2/21
2021 [2]  1/5 113/8
2022 [2]  96/19 97/23
2023 [1]  24/20
20th [1]  68/11
21 [2]  30/1 38/23
2104470500 [1]  2/17
212-836-8011 [1]  2/24
21202 [1]  3/6
215-896-2400 [1]  3/3
215-569-5644 [1]  2/15
215-735-1130 [1]  1/15
215-994-4000 [1]  2/11
22 [2]  97/8 113/8
22nd [5]  100/15 100/16 101/6
107/23 108/2
23,000 [6]  9/21 8/11 9/3
14/10 14/12 15/4
23rd [3]  4/23 100/18 107/23
2400 [1]  3/3
25 [3]  34/17 98/18 100/12
250 [1]  2/23
25th [1]  99/11
26the [1]  108/3
27th [3]  104/11 104/14
106/13
28 [2]  97/16 100/13

2800 [1]  2/2
29 [1]  97/18
2925 [1]  1/17
2929 [1]  2/10
29th [1]  107/23
2nd [20]  60/2 62/5 62/8
65/22 73/23 73/25 74/6 74/14
74/22 75/5 75/12 75/15 75/21
75/24 76/13 76/16 76/19
91/16 91/20 91/23

3

30 [59]  22/8 24/5 25/18
26/11 30/3 34/12 35/8 38/2
39/24 40/6 40/13 42/3 42/16
42/18 42/24 43/14 44/25 47/7
47/6 49/23 50/3 50/10 50/16
50/18 50/21 52/15 52/17
53/17 53/25 54/24 60/20
60/25 61/2 62/11 62/11
65/25 69/2 69/17 69/11 71/4
71/18 71/24 73/15 76/20
76/23 79/14 89/22 92/18
95/2 95/16 102/20 101/4
102/4 102/4

4

per cent [1]  99/22
400 [4]  3/2 78/20 80/4 81/25
4000 [2]  2/11 3/4
404-523-7706 [1]  1/21
404-572-4600 [1]  2/18
410-783-4000 [1]  3/6
45 [1]  51/18
47 [1]  67/12

5

50 [6]  35/23 77/19 77/19
82/22 87/5 87/13
50th [1]  81/11 81/14 81/24
500 [1]  51/18
5000 [1]  7/18

---

115

5
54... [8]  38/19 40/2 40/5
43/4 43/10 47/7 47/21 49/1
55402 [1]  1/24
5567 [1]  2/21
55th [1]  2/23
5644 [1]  2/15
5:00 [5]  73/5 73/11 76/20
104/15 105/18
5:30 [1]  47/1
9th [2]  105/7 107/15

6

6.8 million [1]  28/20
60 [15]  27/10 27/16 29/18
35/9 38/7 38/12 38/17 40/6
43/4 43/10 47/7 49/15 53/8
96/13 97/6
600 [4]  5/17 11/19 16/1
16/12
612-230-3150 [1]  1/25
6:03 [1]  110/1
6:52 [1]  107/3
6th [1]  101/20 102/3 105/7
107/9 107/16

7

71,000 [4]  85/14 85/16 85/19
90/3
713-664-4555 [1]  1/18
725 [1]  2/20
7270 [1]  2/4
75 [2]  79/22
764 [2]  7/22 16/6
7706 [1]  1/21
77098 [1]  1/17
772.467.2337 [1]  3/10
78257 [1]  2/7
7th [9]  101/21 102/3 102/11
103/15 103/23 105/7 107/2
107/9 107/16

8

8 [9]  4/1
80,000 [1]  77/14
800 [1]  1/23
8011 [2]  2/24
85 percent [1]  66/11
8th [1]  3/2

9

90 [11]  58/12 74/7 74/8
74/15 74/21 74/22 75/13
75/16 76/1 76/6 101/4
9001 [1]  3/2
93 [1]  77/15
93,000 [2]  77/11 77/12
95 [1]  81/7
9th [2]  38/13 107/1

A

ability [13]  28/4 33/11
33/13 40/8 56/15 57/3 57/15
60/12 62/3 63/1 67/14 70/6
76/12
able [22]  8/17 16/6 16/13
19/1 24/4 30/18 42/24 47/15
54/2 54/20 59/18 63/5 66/16

68/2 68/13 77/21 89/4 102/25
106/11 110/15 110/22 111/13
about [113]  5/22 6/6 6/8 9/4
9/17 10/1 10/1 10/2 10/20
11/1 11/13 11/3 11/5 11/9
14/4 17/8 17/8 17/12 17/18
17/24 18/12 18/18 20/23 22/1
25/10 26/22 30/3 30/20 32/12
32/13 32/17 32/18 34/9 34/20
34/25 36/15 37/4 38/6 39/3
45/22 46/19 48/9 49/1 50/7
51/14 52/1 52/16 53/1 53/2
53/11 53/20 53/21 53/22 53/24
53/25 54/25 54/18 55/24 56/1
56/4 56/22 57/7 59/24 61/17
62/7 63/24 64/7 64/9 64/18
64/21 65/12 65/25 65/25 66/1
66/6 66/23 68/9 68/16 68/17
70/4 74/25 75/4 76/5 76/20
80/18 83/13 85/22 87/21 89/5
92/15 92/17 93/5 94/19 95/19
95/21 95/24 97/6 99/22 102/5
102/23 103/25 104/1 104/8
105/6 107/3 108/6 108/16
108/25 110/1 110/11 111/3 111/7
112/7
about any [1]  32/17
about whether [1]  37/4
above [1]  113/6
abroad [1]  34/25
absolutely [6]  36/5 48/25
108/11 111/15 111/24 112/17
acceptable [2]  103/20 104/14
access [2]  102/9 102/10
accidentally [1]  79/13
accomplish [1]  75/7
accordance [1]  30/2
According [1]  61/8
accurate [1]  89/10
accuse [1]  35/20
across [2]  34/19 66/19
activity [1]  50/7
acts [1]  40/7
actual [2]  92/14 92/24
actually [18]  6/25 7/15 12/6
13/14 15/22 17/5 58/12 59/6
72/23 75/7 83/6 84/22 85/13
89/13 96/18 102/17
adamant [1]  33/4 46/19
address [21]  5/5 26/12 31/9
33/2 42/19 43/22 45/12 50/18
50/20 53/14 56/24 104/3
70/9
ADAM [1]  1/16
add [8]  46/13 57/24 58/3
60/23 83/4 94/1 98/1 100/10
addition [4]  16/6 88/1 89/13
91/4
additional [13]  5/16 12/7
12/11 16/8 24/2 30/17 33/12
36/12 58/24 59/1 59/2 60/22
70/9
adequately [2]  28/15 70/20
adhere [1]  62/14

adjusted [2]  72/10 76/10
adjustment [1]  24/21
ado [1]  4/9
advance [19]  24/21 27/4
27/12 29/14 30/1 31/25 32/7
32/10 33/9 38/16 38/21 38/23
39/2 40/1 40/2 60/19 64/5
72/5 72/20
advice [1]  27/22
advisable [1]  41/19
advocated [1]  101/11
affect [3]  64/18 64/19 64/22
affecting [2]  43/9 69/7
affirm [1]  96/25
afford [1]  106/9
after [10]  23/4 27/24 48/15
61/20 61/20 73/19 80/11
90/21 102/24 107/13
afternoon [15]  4/1 4/2 4/11
4/13 4/15 21/23 49/25 50/1
50/2 77/4 77/5 77/6 77/7
83/1 96/2
again [24]  7/13 9/22 13/22
13/22 22/17 23/2 25/17 28/6
29/20 30/25 31/25 44/6 48/10
52/21 54/6 63/8 73/5 74/7
74/12 80/12 84/4 84/14 93/3
95/6
age [2]  85/3 111/21
agency [2]  47/5 47/21/14
agenda [12]  4/5 4/7 21/14
26/12 42/4 42/6 49/23 50/1
50/6 50/9 95/21 96/4
agent [1]  41/14
agile [2]  97/13 9/22 13/22
17/4 20/23 20/23 22/6 25/17
29/20 30/25 32/25 35/8 35/11
41/22 42/4 42/9 42/16 42/21
46/11 46/12 47/3 48/15 49/15
45/14 45/14 46/23 54/9 64/9
51/13 52/13 53/15 53/22
53/22 58/25 59/9 59/13 62/3
60/15 62/6 66/9 66/17 67/20
68/11 69/3 69/21 69/25 69/25
72/23 72/25 73/25 88/5 88/8
89/10 96/18 102/17
agree [16]  19/20 34/3 36/6
37/16 43/7 48/6 48/15 53/9
53/19 53/20 60/4 69/25 71/21
71/21 72/2 75/3
ahead [6]  11/24 12/15 56/23
56/25 78/9 108/15
Aid [2]  103/11 107/23
air [2]  19/3 98/25
alike [1]  19/1
all [73]  6/8 16/20 17/10
17/11 17/25 18/8 19/4 19/10
19/17 22/22 22/14 24/1 24/4
28/6 29/14 30/4 30/15 31/22
33/7 34/4 34/12 47/6 47/8
47/9 47/16 54/23 57/18 57/13
51/12 51/20 52/13 53/13 57/3
110/8 111/11

---

116

A
all... [46]  55/1 55/22 55/24
55/24 62/5 62/15 71/21 73/1
73/23 77/2 78/7 78/17 79/5
80/9 85/3 90/13 90/22 90/24
91/6 91/8 93/3 97/3 98/9 98/25
94/17 97/4 97/24 98/3 98/5
100/10 101/5 101/23 101/23
102/2 102/3 104/1 105/3
105/22 108/18 107/6 108/2
109/19 111/8 111/12 111/18
111/21
allegations [1]  65/12
allege [3]  65/13 65/14
alleged [1]  90/12
alleviate [1]  43/13
alleviating [1]  45/21
alley [1]  47/12 48/18 48/19
68/7 77/21 90/7
allowed [5]  73/16 77/19 96/7
110/21 110/24
allowing [2]  45/23 82/20
almost [2]  64/1 81/8
along [5]  77/22 59/17 64/6
67/24 92/18
already [10]  10/10 10/21
12/23 53/7 61/24 66/6 97/20
100/8 104/18 112/25
also [20]  5/8 5/1 10/7 10/19
19/18 21/16 28/13 32/9 37/11
37/24 38/19 43/19 44/19
53/10 60/18 61/3 65/8 66/6
69/21 96/18 102/7
although [1]  34/20
always [5]  42/1 45/24 63/4
68/2 105/2 108/25
am [96]  4/5 6/5 6/17 8/7
10/21 11/24 14/16 16/14
16/22 17/14 18/20 19/14
19/22 20/22 21/21 22/12 24/2
25/11 25/24 33/10 35/12 37/1
39/17 39/2 39/4 41/5 41/22
41/22 42/15 48/12 49/15 50/6
51/5 51/20 51/13 59/23 62/13
72/4 76/10 80/3 82/13 84/19
85/14 85/16 85/19 90/3 99/18
105/18 105/23 107/14 112/1
amendment [2]  13/4 43/14
amendment [2]  15/18 43/14

amendments [3]  43/3 43/5
47/7
AmeriSource [1]  108/2
among [2]  59/16 73/21
amount [4]  27/5 27/8 28/23
51/5
amounts [2]  25/5 33/13
Angle [2]  37/14 47/10
analgesic [1]  41/25
analytical [1]  16/10
analysis [3]  84/9 94/12
95/1
ANAND [6]  2/22 98/22 99/5
104/15 109/3 111/1
Anapol [1]  1/13
Angie [1]  17/22
and/or [2]  19/19 25/4
ANDREW [1]  2/16
Andy [5]  51/14 51/25 52/2
52/11 74/23
Angeles [1]  3/2
animal [6]  6/13 8/17 9/5
14/3 16/7 16/8
another [10]  5/18 16/8 23/1
33/3 43/5 43/10 48/12 64/21
78/11 78/11 110/12
answer [9]  14/12 16/14 19/2
20/14 57/10 71/15 74/1 81/24
96/11
answered [1]  17/22
answers [4]  18/22 19/11
19/19 97/17
anticipate [3]  47/18 49/2
71/14
anticipated [2]  87/24 88/2
anticipating [1]  46/2
anticipation [1]  4/23
Antonio [1]  2/7
any [40]  4/8 9/9 17/18 18/14
18/19 20/13 28/9 32/15 33/22
21/25 26/22 29/7 32/17 35/1
36/5 44/25 47/14 48/25 50/17
55/15 59/22 60/15 62/23 70/2
73/25 77/11 78/22 79/16 81/7
82/24 88/6 97/2 98/9 98/25
99/4 99/25 105/16 107/25
108/16
anybody [1]  52/21
anyone [3]  7/18 96/2
anyplace [2]  58/20 63/19
anything [33]  5/6 17/24
19/11 19/14 20/7 21/1 36/6
42/4 48/17 49/13 53/18 56/5
54/25 56/23 57/14 63/8 76/23
57/24 58/12 63/12 88/14
79/24 81/20 94/22 95/3 95/13
96/25 98/2 98/20 100/9 103/23
105/1 112/19
anyway [3]  37/13 70/8 80/10
apart [4]  42/17 43/14 58/13
78/23
apologies [1]  111/15
apologize [4]  22/5 41/17

41/24 109/25
Apotex [1]  86/13
apparently [1]  108/12
appearance [1]  45/18
appeared [1]  11/5
applicable [1]  49/13
applied [1]  84/13
applies [1]  59/12
apply [3]  24/20 47/14 47/22
appreciate [14]  6/25 11/4
19/25 20/1 20/22 21/14
31/21 45/11 58/20 67/19 70/3
72/21 89/7 110/7
appreciation [1]  66/17
approach [1]  73/1
approaches [1]  18/2 44/18
45/9 50/18
approximately [2]  14/14 16/1
April [6]  1/5 104/12 104/13
104/20 104/22 105/9 113/8
April 20th [1]  48/11
April 21 [1]  97/18
April 22 [1]  97/18
April the 22nd [1]  100/23
Arch [1]  2/10
archive [1]  11/10 11/13
Ardea [2]  86/1
aren't [1]  79/6
argue [3]  39/3 55/25 70/1
argued [1]  32/23
argument [2]  96/6 111/2
arguments [2]  18/3 18/7
arise [3]  26/9 41/1 66/18
arisen [2]  63/8 70/9
armed [1]  95/7
arms [2]  8/25 29/6
arose [2]  74/14 74/17
arrive [2]  53/21 108/17
articulate [3]  31/4 31/11
65/9
articulated [1]  45/9
associated [4]  86/6 88/11
89/6 102/16
asked [20]  6/20 8/22 16/21
13/21 13/22 13/22 24/4 50/25
53/2 60/5 63/8 66/13 70/15
87/23 88/13 88/24 94/8 95/6
96/1 111/19
asking [6]  4/6 4/18 6/4 20/2
21/17 40/15 48/6 57/12 59/14
59/9 60/12 62/10 72/7 76/23
asks [2]  58/9 96/4
aspect [1]  108/4
aspects [2]  18/2 31/7
assigned [1]  26/13
assist [1]  17/10
associate [4]  86/6 88/11
89/6 102/16

**Exhibit E**

## Henry, Terry M.

| | |
|---|---|
| **From:** | Henry, Terry M. |
| **Sent:** | Wednesday, April 28, 2021 5:17 PM |
| **To:** | 'zantac_mdl@flsd.uscourts.gov' |
| **Cc:** | 'DODGE, JAIME LYNNE (jdodge@emory.edu)'; Andrew T Bayman (abayman@kslaw.com); Agneshwar, Anand; 'Mark.cheffo@dechert.com'; 'JPetrosinelli@wc.com'; Robert C. Gilbert; Tracy Finken; Adam Pulaski; mmcglamry@pmkm.com; rmb@gdldlaw.com; thomas.yoo@hklaw.com; Johnston, Sarah; 'AKaplan@crowell.com'; Chomentowski, Stephanie |
| **Subject:** | Zantac Litigation - Proposed Amended PTO 60 |
| **Attachments:** | (125765250)_(1)_Generic Manufacturers Proposed Amended PTO 60 (2).DOCX |

Honorable Robin L. Rosenberg
Honorable Bruce Reinhart
United States District Judge
Southern District of Florida

*In re: Zantac (Ranitidine) Products Liability Litigation, Case No. 9:20-md-02924-RLR*

Dear Judge Rosenberg and Judge Reinhart,

To the extent the redlines were stripped out of the attached proposed amended PTO 60, I am resending.  My apologies for any inconvenience or confusion.

Respectfully,

**Terry M. Henry** (he/him) | BLANK**ROME**
One Logan Square | 130 North 18th Street | Philadelphia, PA 19103
O: 215.569.5644 | M: 215.694.5136 | thenry@blankrome.com

---

**From:** Henry, Terry M.
**Sent:** Wednesday, April 28, 2021 4:50 PM
**To:** 'zantac_mdl@flsd.uscourts.gov' <zantac_mdl@flsd.uscourts.gov>
**Cc:** 'DODGE, JAIME LYNNE (jdodge@emory.edu)' <jdodge@emory.edu>; Andrew T Bayman (abayman@kslaw.com) <abayman@kslaw.com>; Agneshwar, Anand <Anand.Agneshwar@arnoldporter.com>; 'Mark.cheffo@dechert.com' <Mark.cheffo@dechert.com>; 'JPetrosinelli@wc.com' <JPetrosinelli@wc.com>; Robert C. Gilbert <gilbert@kolawyers.com>; Tracy Finken <tfinken@anapolweiss.com>; Adam Pulaski <adam@pulaskilawfirm.com>; mmcglamry@pmkm.com; rmb@gdldlaw.com; thomas.yoo@hklaw.com; Johnston, Sarah <Sarah.Johnston@btlaw.com>; 'AKaplan@crowell.com' <AKaplan@crowell.com>; Chomentowski, Stephanie <Chomentowski@BlankRome.com>
**Subject:** Zantac Litigation - Proposed Amended PTO 60

Honorable Robin L. Rosenberg
Honorable Bruce Reinhart
United States District Judge
Southern District of Florida

*In re: Zantac (Ranitidine) Products Liability Litigation, Case No. 9:20-md-02924-RLR*

Dear Judge Rosenberg and Judge Reinhart,

We attach the Generic Manufacturers' proposed amendments to PTO 60 designed to address the narrow issue raised by plaintiffs during the Court's April 20 Case Management Conference; the absence of a clear deadline for production of non-custodial documents prior to a related deposition.   We did not understand the Court's Order to open up the entire deposition process for amendment.

The Generic Manufacturer Defendants do not believe any amendments to PTO 54 are necessary to resolve the narrow issue raised by plaintiffs during the Case Management Conference.  Moreover, PTO 54 affects the rights and obligations of all parties and, thus, any proposed amendments to address the issue plaintiffs raised with respect to Generic Manufacturers is inappropriate.  Amendments to PTO 54 must include input from all parties.

Monday evening, when the Generic Manufacturers shared their proposed amended PTO 60 with plaintiffs, they advised plaintiffs of their objection to amending PTO 54.  The Generic Manufacturers scheduled a meet and confer with the necessary stake holders Tuesday morning to discuss PTOs 60 and 54.  Plaintiffs unilaterally cancelled that meet and confer.  Based on our discussions with the Brand Defendants, the Generic Manufacturer Defendants understand that the Brand Manufacturers also object to any amendments to PTO 54 at this time.

Please do not hesitate to contact me if you have any questions or concerns.

Respectfully submitted,


**Terry M. Henry** (he/him)| BLANKROME
One Logan Square | 130 North 18th Street | Philadelphia, PA 19103
O: 215.569.5644 | M: 215.694.5136 | thenry@blankrome.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IN RE: ZANTAC (RANITIDINE)                                    MDL NO 2924
PRODUCTS LIABILITY                                              20-MD-2924
LITIGATION

**JUDGE ROBIN L ROSENBERG**
**MAGISTRATE JUDGE BRUCE REINHART**

_____/

THIS DOCUMENT RELATES TO: ALL CASES

[PROPOSED] AMENDED PRETRIAL ORDER # 60

Generic Manufacturer Defendant Supplemental Discovery Agreement

This Order shall govern Plaintiffs and Generic Manufacturer Defendants in relation to certain discovery provisions as set forth more fully herein.

I.   **GENERAL PROVISIONS AND OBJECTIVES**

A.  **Order Applicable to all Cases in MDL Proceedings.**

1.       This Order applies to all cases currently pending in MDL No. 2924 and to all related actions that have been or will be originally filed in, transferred to, or removed to this Court and assigned hereto (collectively "the MDL Proceedings"). Nothing in this Order shall preclude the parties from engaging in additional discovery beyond the scope of this Order at any time between the entry of this Order and the close of fact discovery.

2.       This Order is binding on all Plaintiffs, Generic Manufacturer Defendants, and their counsel in all cases currently pending or subsequently made part of the MDL Proceedings and will govern each case in the MDL Proceedings, including claims solely on behalf of individually named Plaintiffs and purported class actions (or class type presentative actions) that are

transferred to or filed in this District.

3.       This Supplemental Discovery Agreement was negotiated amongst, and represents compromises by, the many parties based upon the unique facts, circumstances, and needs of the MDL Proceedings. The Court expressly emphasizes that, not only should this Supplemental Discovery Agreement not be taken to bind any party here to these or similar provisions in future litigation, but also that the provisions here were negotiated by the parties in light of the very uniquecircumstances of the MDL Proceedings, and thus may not be well-suited to other litigation.

**B. Scope.**

1.       This Order shall apply to Plaintiffs' first set of interrogatories and requests for production of documents and the following three categories of Rule 30(b)(6) depositions of Generic Manufacturer Defendants: 1) manufacturing, 2) pharmacovigilance, and 3) storage and transportation.

2.       Certain Generic Manufacturer Defendants have entered into stipulations relating todiscovery of foreign affiliates (Dr. Reddy's (DE 2029), Strides (DE 1676), and Perrigo (DE 1555)),which are not limited by this Order. As to all other foreign affiliates who are now or were previously named as Defendants in any Master Complaint in the MDL Proceedings, the parties have indicated to the Court their agreement that the obligations of Generic Manufacturer Defendants with respect to the foreign affiliates shall be treated as though the foreign affiliate was an independent corporation for purposes of this Order.  This agreement shall not act as a waiver of Plaintiffs' arguments or position regarding the U.S. entities and foreign affiliates relating to jurisdiction, however in the interest of moving initial discovery and depositions forward, Plaintiffs

have agreed to this compromise. Alternatively stated, the existence of an affiliation shall neither expand nor limit the obligations of Generic Manufacturer Defendants under the Federal Rules of Civil Procedure.  Thus, to the extent the U.S. entity has responsive documents or information from or about the foreign affiliate within its possession, custody, or control, it will be provided consistent with its obligations to provide responsive information in accordance with the Federal Rules of Civil Procedure. This agreement is for a limited purpose. Therefore, the agreement and provision extend only to the discovery specified in this Order.  The Court adopts this understanding between the parties into this Order to aid in clarifying the obligations of these foreign Generic Manufacturer Defendants

3.       For those Generic Manufacturer Defendants that have moved the Court for dismissal for lack of personal jurisdiction, or Generic Manufacturer Defendant entities on whom Plaintiffs have not yet formally served the summons and complaint, the parties have further indicated that, if these foreign Generic Manufacturer Defendants are later determined to be properly within the jurisdiction of this Court, they will be subject to this Order with the exception that the parties will meet and confer with the assistance of the Special Master as to the appropriate timelines for those newly-entering Defendants, recognizing that some dates may have passed or otherwise may not be feasible depending upon the date on which the Defendant is determined to be within the jurisdiction of the Court.

## II.    PROCESS AND TIMING OF DISCOVERY

### A.  Service and Timing of Responses to Formal Discovery

1.    On January 29, 2021, Plaintiffs provided to Generic Manufacturer Defendants their anticipated interrogatories and requests for production of documents. Those interrogatories and

requests for production of documents were deemed served as of February 9, 2021, and Generic Manufacturer Defendants' time to provide written responses will be 30 days following service, or March 11, 2021. Generic Manufacturer Defendants will substantively respond to Plaintiffs' interrogatories and requests for production of documents pursuant to Federal Rules of Civil Procedure 33 and 34 and Section II of Pretrial Order # 32 on or before March 11, 2021, and the parties agree to use Pretrial Order # 32 for the Court to resolve any of Generic Manufacturer Defendants' objections to these requests or interrogatories based on scope, relevance, or proportionality.

2.      Pursuant to Pretrial Order # 32, Section II.D., Generic Manufacturer Defendants shall prioritize their document production to produce storage and transportation documents first, followed by manufacturing documents, then pharmacovigilance documents, and then any documents responsive to Plaintiffs' requests for production of documents. Consistent with their obligations under the Federal Rules of Civil Procedure and the Pretrial Orders of this Court, Generic Manufacturer Defendants shall make a reasonable effort consistent with Pretrial Order # 32, Section II.D. and Pretrial Order # 54, Sections E.5 and H to substantially complete production of the following documents as agreed or ordered to be produced: (1) storage and transportation custodial and non-custodial documents identified in Requests for Production Nos. 77-82 at least fourteen (14) days prior, to the deposition of their storage and transportation corporate representative(s); (2) manufacturing custodial and non-custodial documents identified in Requests for Production Nos. 50-76 at least fourteen (14) days prior, to the deposition of their manufacturing corporate representative(s); and (3) pharmacovigilance custodial and non-custodial documents identified in Requests for Production Nos. 2, 5-8, 17-20, and 42-49 at least

fourteen (14) days prior to the deposition of their pharmacovigilance corporate representative(s). Plaintiffs may not require earlier production than as outlined in this paragraph through the instructions or terms of any document requests within their Notices of Deposition. The parties may mutually agree to allow for additional time to produce documents by shortening these time periods in individual circumstances in their discretion.

3.      Where a Generic Manufacturer Defendant is producing more than one corporate representative in response to a 30(b)(6) deposition notice, these time periods apply from the date of each deposition and those documents responsive to the specific subjects covered by each corporate representative. Nothing in the preceding paragraph shall alter the applicability or terms of Pretrial Order #54 Section E.5.

4.      On January 29, 2021, Plaintiffs provided to Generic Manufacturer Defendants notices of deposition on the issues of: (i) storage and transportation (in amended form); (ii) manufacturing; and (iii) pharmacovigilance. Those notices were deemed served on February 9, 2021.

5.      Deposition dates stated in deposition notices are subject to Section II.C. of this Order. Generic Manufacturer Defendants have agreed and are now ordered to provide deposition dates occurring in April or May, but in no event later than June July 3015, 2021, for corporate representatives in response to Plaintiffs' notices of Rule 30(b)(6) deposition, with depositions occurring as outlined in Part III.C.2.[1]

---

[1]  The Court acknowledges that Generic Manufacturer Defendants complied with Paragraphs II.A.5 and III.C.2 when the Court originally entered Pretrial Order 60 and need not provide new dates.  To the extent the parties need to reschedule dates as contemplated by III.C.2(d), the Court understands those discussions are ongoing and will be scheduled as set forth in this Amended Pretrial Order 60.

6.      Notwithstanding the foregoing provision intended to set forth a timeline for certain depositions, the Court expects the parties to resolve Generic Manufacturer Defendants' objections related to scope, relevance, or proportionality in accordance with Section II.C. of this Order.

## B. Custodial Discovery

1.      Plaintiffs and Generic Manufacturer Defendants through good faith negotiations will agree on one set of search terms for custodial productions, along with designations of custodians in key areas (targeted to the discovery requests and deposition notices), by February 28, 2021.

2.      No later than February 28, 2021, all Generic Manufacturer Defendants will provide Plaintiffs a list of proposed initial custodians, which shall include: (a) the custodian's full name, (b) job title(s), (c) department the custodian worked in, and (d) years employed. This list does not represent a complete list of all custodians for this case but should represent Generic Manufacturer Defendants' proposal for all custodians they deem relevant, taking into account the allegations in the Master Pleadings, the discovery requests at issue, and the three Rule 30(b)(6) deposition notices served to date. Custodians should span the relevant time period in Plaintiffs' requests for production. Generic Manufacturer Defendants will meet and confer with Plaintiffs individually to determine the sufficiency of their custodial lists in light of the amended class pleadings and Defendants' document productions, understanding that Plaintiffs presently do not have sufficient information to identify all relevant custodians from any Generic Manufacturer Defendant.

3.      Notwithstanding the parties' agreement on general search terms, or the Court's order setting general search terms, any individual Generic Manufacturer Defendant may

advise Plaintiffs that they intend to use technology assisted review ("TAR") to search or prioritize documents for review, or request to modify or delete any search term(s) based upon that individual Generic Manufacturer Defendant's circumstance. For example, if the terms are generating too many unresponsive documents because of specific facts relevant to that particular GenericManufacturer Defendants, the parties will engage in good faith meet and confer meetings to address those issues.

4.        In the absence of agreement, the parties agree to use Pretrial Order # 32 for the Court to resolve the search term and custodian issues.

**C. Scope and Timing of Depositions**

1.        The parties will engage in good faith meet and confer meetings to work through objections to the deposition notices raised by Defendants. To the extent any disputes remain by February 28, 2021, the parties agree to use Pretrial Order # 32 for the Court to resolve the issues of scope, relevance, and proportionality.

2.        No later than February 28, 2021, each Generic Manufacturer Defendant will provide to Plaintiffs the number of witnesses it expects to produce for each deposition notice and tentative dates on which it will present each witness for deposition in accordance with the below scheduling requirements, such dates and witnesses being subject to revision up to three days after the Court's order on the Pretrial Order # 32 hearing issues. Notwithstanding this deadline, this Court encourages Generic Manufacturer Defendants to provide dates as soon as possible in light of the number of depositions to be scheduled and the limited number of depositions that can be scheduled on the same date.

a)        Each Generic Manufacturer Defendant will provide a date in April 2021 to

produce its witnesses on the issues of storage and transport.

b)      Each Generic Manufacturer Defendant will provide a date in May 2021 to produce its witnesses on the issues of manufacturing.

c)      Each Generic Manufacturer Defendant will provide a date in May 2021 or prior to June 15, 2021 to produce its witnesses on the issues of pharmacovigilance.

d)      All dates provided by Generic Manufacturer Defendants are subject to scheduling issues that may arise on an individual Defendant, ~~or~~ witness or document production basis. If a deposition requires rescheduling and the parties cannot agree on a date prior to ~~June~~ July 30~~15~~ on which they can reschedule the deposition, they shall meet and confer with the Special Master, who shall have the sole authority to permit a rescheduled deposition to occur after ~~June~~ July 30~~15~~.

e)      Nothing in this agreement precludes Plaintiffs and individual Generic Manufacturer Defendants from agreeing to schedule depositions at an earlier date, in a different sequence, or on a narrower set of topics applicable to the individual Generic Manufacturer Defendant.

## III.    COORDINATION ON INDIVIDUAL GENERIC MANUFACTURER DEFENDANT ISSUES

### A. Generic Manufacturer Defendant Specific Notices

1.      The notices served as referenced in Section II.A.2. of this Order, with any changes agreed upon by and between Plaintiffs and Generic Manufacturer Defendants and any rulings made by the Court per Section II.C. herein, will constitute the applicable notice for each of the three depositions referenced in Section I.B.1. herein. However, even after following the procedure set forth in Section II.C.1., a Generic Manufacturer Defendant may have a concern or

objection to the scope of the notice as it applies to it.

2.     The parties shall meet and confer in good faith at least twenty-one (21 days) in advance of the deposition in accordance with Federal Rule of Civil Procedure 30(b)(6) about these particular matters.  The parties will agree upon or have resolved by way of the Pretrial Order # 32 process the scope of these particular depositions no later than fourteen (14) days prior to the scheduled deposition.

**B.  Responding to Notices of Deposition by Written Interrogatory**

1.     Plaintiffs acknowledge that numerous topics identified in their deposition notices may be addressed more efficiently by use of interrogatories prior to deposition testimony. Plaintiffs will designate topics in their deposition notices that may be answered as interrogatories, and Generic Manufacturer Defendants will have the option of initially answering those topics fully as verified answers to interrogatories pursuant to Federal Rule of Civil Procedure 33 and Section II of Pretrial Order # 32 or by producing a witness to give testimony on the topic.

2.     To the extent a Generic Manufacturer Defendant chooses initially to respond to a designated topic by answering as an interrogatory response, that Generic Manufacturer Defendant will serve its verified answers to those interrogatories no later than fifteen (15) days prior to the related deposition.

3.     Even where a Generic Manufacturer Defendant elects to respond to a notice topic by responding with a verified interrogatory answer pursuant to Federal Rule of Civil Procedure 33 and Section II of Pretrial Order # 32, Plaintiffs may engage in reasonable follow-up inquiry during the subsequent related deposition on the same topic(s).

4.       The limitation on interrogatories set out in Federal Rule of Civil Procedure 33 willnot preclude Generic Manufacturer Defendants from voluntarily responding to designated deposition topics as interrogatories. However, in so responding, a Generic Manufacturer Defendant does not waive the right to object to future interrogatories as duplicative, irrelevant, or not proportional to the needs of this litigation.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 25th  th day of February    April, 2021.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

**Exhibit F**

## Henry, Terry M.

| | |
|---|---|
| **From:** | Mike McGlamry <mmcglamry@pmkm.com> |
| **Sent:** | Wednesday, April 28, 2021 1:19 PM |
| **To:** | 'zantac_mdl@flsd.uscourts.gov' |
| **Cc:** | 'DODGE, JAIME LYNNE (jdodge@emory.edu)'; Andrew T Bayman (abayman@kslaw.com); Agneshwar, Anand; 'Mark.cheffo@dechert.com'; 'JPetrosinelli@wc.com'; Robert C. Gilbert; Tracy Finken; Adam Pulaski; Henry, Terry M.; rmb@gdldlaw.com; thomas.yoo@hklaw.com; Johnston, Sarah; 'AKaplan@crowell.com' |
| **Subject:** | Zantac |
| **Attachments:** | Plaintiffs' Proposed Modified PTO 60_.docx; Plaintiffs' Proposed Modified PTO 54.docx; RE: [External] Zantac--PTOs 54 and 60; Re: Zantac Litigation - PTO 60 Discussion |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Dear Judge Rosenberg,

During the CMC on April 21, 2021 where the subject of proposed modifications to PTOs 54 and 60 were discussed, Your Honor directed the parties that "I would like you to work together and see if you can jointly agree, and if you can't, I will consider two different proposals." (4/21/21 Transcript, p. 43, l. 6-8).  Following the CMC, the Court issued a paperless order [DE 3303] (copied below) directing the parties to meet and confer and to submit, by 5:00 pm on April 28th their respective proposals (or an agreed single proposal) for modifications to PTOs 54 and 60, specifying the manner in which the proposed modifications should be submitted.

In an effort to generate discussions, Plaintiffs emailed the Generics' liaison counsel, Thomas Yoo and Rick Barnes, on Monday morning April 26, 2021, rejecting the Generics' request for a 2 week extension for compliance with this Order. Instead, Plaintiffs attached our proposed red line edits to both PTOs 54 and 60 and solicited the Generics' edits and a meet and confer. Liaison counsel responded and said Mr. Henry would respond for the Generics, but only on PTO 60, and copied and solicited response from the remaining defendants (Brands, Retailers and Distributors) because PTO 54 is the deposition protocol for all defendant witness' depositions.

On Monday evening April 26th Plaintiffs received an email from Mr. Henry with edits only to PTO 60 that were not final, saying that he was "still circulating among our side, but I believe this is in a form to share it with you all.  Please understand we may still have a few additional edits." Plaintiffs responded that once we receive all constituents' final edits, we should have a meet and confer to discuss. Since Monday evening, Plaintiffs have not heard anything back from the Generics on these issues and have not heard anything from any of the copied defendant group lead and liaison counsel.

Therefore, in accordance with the Court's Order, Plaintiffs attach our proposed red line edits to PTOs 54 and 60, as originally submitted to the defendants on Monday April 26th.

Respectfully submitted,

Michael L. McGlamry

ccs:

Special Master Jaime Dodge
Plaintiffs' Co-Lead Counsel
Defendants' Co-Lead Counsel
Terry Henry
Thomas Yoo Rick Barnes
Sarah Johnston
Andrew Kaplan


**PAPERLESS ORDER. By 5:00 p.m. on April 28, the Plaintiffs and the Generic Manufacturer Defendants shall submit to the Court at zantac_mdl@flsd.uscourts.gov their proposals for any amendments to Pretrial Order # 54 and/or # 60, as discussed during the Case Management Conference on April 20. The proposals shall be in the form of redline changes made to the existing Pretrial Orders. If the parties do not have any proposals, they shall submit a notice to the Court indicating that there are no proposed changes. The parties shall exchange their proposals with each other upon submission to the Court. Signed by Judge Robin L. Rosenberg on 4/21/2021.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:  ZANTAC (RANITIDINE)                          MDL NO. 2924
PRODUCTS LIABILITY                                    20-MD-2924
LITIGATION
                                                     JUDGE ROBIN L. ROSENBERG
                                                     MAGISTRATE JUDGE BRUCE E. REINHART

_____/

PRETRIAL ORDER XX

(Generic Manufacturer Defendant Supplemental Discovery Agreement)

This Order shall govern Plaintiffs and Generic Manufacturer Defendants in relation to

certain discovery provisions as set forth more fully herein.

I.    GENERAL PROVISIONS AND OBJECTIVES

      A.  Order Applicable to all Cases in MDL Proceedings.

           1.    This Order applies to all cases currently pending in MDL No. 2924 and to all related

actions that have been or will be originally filed in, transferred to, or removed to this Court and

assigned hereto (collectively "the MDL proceedings"). Nothing in this Order shall preclude the

parties from engaging in additional discovery beyond the scope of this Order at any time between

the entry of this Order and the close of fact discovery.

           2.    This Order is binding on all Plaintiffs, Generic Manufacturer Defendants and their

counsel in all cases currently pending or subsequently made part of the MDL Proceedings and will

govern each case in these MDL Proceedings, including claims solely on behalf of individually

named plaintiffs and purported class action (or class type presentative actions) that are transferred

to or filed in this District.

           3.    This Supplemental Discovery Agreement was negotiated amongst, and represents

compromises by, the many parties based upon the unique facts, circumstances, and needs of the

1

*Error! Unknown document property name.* 143357.00616/125209469v.8

Field Code Changed

MDL Proceeding.  The Court also expressly emphasizes that not only should this Supplemental Agreement not be taken to bind any party here to these or similar provisions in future litigation, but it cautions that the provisions here were negotiated by the parties in light of the very unique circumstances of the MDL Proceeding and thus may not be well-suited to other litigation.

**B. Scope.**

1.      This Order shall apply to Plaintiffs' first set of interrogatories and requests for production of documents and the following three 30(b)(6) depositions of Generic Manufacturer Defendants: 1) manufacturing, 2) pharmacovigilance, and 3) storage and transportation.

2.      Certain Generic Manufacturer Defendants have entered into stipulations relating to discovery of foreign affiliates (Dr. Reddy's (DE 2029), Strides (DE 1676), and Perrigo (DE 1555)), which are not limited by this PTO.  As to all other foreign affiliates who are now or were previously named as defendants in any Master Complaint in this MDL proceeding, the parties have indicated to the Court their agreement that the obligations of the Generic Manufacturer Defendants with respect to the foreign affiliates shall be treated as though the foreign affiliate was an independent corporation for purposes of this Order.  This agreement shall not act as a waiver of Plaintiffs' arguments or position regarding the US entities and foreign affiliates relating to jurisdiction, however in the interest of moving initial discovery and depositions forward, Plaintiffs have agreed to this compromise.  Alternatively stated, the existence of an affiliation shall neither expand nor limit the obligations of the Generic Defendants under the Federal Rules of Civil Procedure. Thus, to the extent the U.S. entity has responsive documents or information from or about the foreign affiliate within its possession, custody or control, it will be provided consistent with its obligations to provide responsive information in accordance with the Federal Rules of Civil Procedure. This agreement is for a limited purpose. Therefore the agreement and provision extend only to the

2

Field Code Changed

discovery specified in this Order. The Court adopts this understanding between the Parties into this Order to aid in clarifying the obligations of these foreign Generic Manufacturer Defendants

3.      For those Generic Manufacturer Defendants that have moved the Court for dismissal for lack of personal jurisdiction, or Generic Manufacturer Defendant entities on whom plaintiffs have not yet formally served the summons and complaint, the Parties have further indicated that if these foreign Generic Manufacturer Defendants are later determined to be properly within the jurisdiction of this Court, they will be subject to this Order with the exception that the parties will meet and confer with the assistance of the Special Master as to the appropriate timelines for those newly-entering Defendants, recognizing that some dates may have passed or otherwise not be feasible depending upon the date at which the Defendant is determined to be within the jurisdiction of the Court.

## II.   PROCESS AND TIMING OF DISCOVERY

### A.  Service and Timing of Responses to Formal Discovery

1.      On January 29, 2021, Plaintiffs provided to Generic Manufacturer Defendants their anticipated interrogatories and requests for production of documents.  Those interrogatories and requests for production of documents were deemed served as of February 9, 2021 and the Generic Manufacturers' time to provide written responses will be 30 days following service, or March 11, 2021. Generic Manufacturer Defendants will substantively respond to Plaintiffs' interrogatories and requests for production of documents pursuant to Fed. R. Civ. P. 33 and 34 and Section II of PTO 32, on or before March 11, 2021 and the parties agree to use PTO 32 for the Court to resolve any of the Defendants' objections to objections to these requests or interrogatories, based on scope, relevance or proportionality, at a March 25, 2021 hearing.  Generic Manufacturer Defendants, pursuant to PTO 32, Section II.D. shall prioritize their document production to produce storage

3

Field Code Changed

and transportation documents first, followed by manufacturing documents, then pharmacovigilance documents, and then any documents responsive to Plaintiffs' requests for production of documents.  To the extent depositions are not taken in this order, Generic Manufacturer Defendants will prioritize their document productions in the order in which their depositions will proceed.

1.2.   The Parties recognize that because these depositions are all 30(b)(6) depositions, Plaintiffs will need to review more than just the custodial file of the deponent.  This provision therefore overrides section (E)(5) of PTO 54. Generic Manufacturer Defendants will act in good faith and make best efforts to complete its noncustodial document production for both custodial *and* noncustodial sources of information responsive to each of the three 30(b)(6) depositions at least fourteen (14) days in advance of the deposition.  If a Generic Manufacturer Defendant is unable to complete its noncustodial document production responsive to the scheduled deposition within this timeframe, the Generic Manufacturer Defendant will notify the Plaintiffs at at least fourteen (14) days in advance of the scheduled deposition and the parties shall meet in good faith to determine whether the deposition will proceed as scheduled or will be rescheduled to a later date not to exceed fourteen (14) days after the date of the originally scheduled deposition absent express agreement between the parties.  Under no circumstance, absent consent from Plaintiffs, shall Plaintiffs be required to take a deposition without having received a substantially complete document production fourteen (14) days before the deposition. If the parties are unable to reach agreement, they will seek resolution of the issue in accordance with PTO 32.

2.3.   On January 29, 2021, Plaintiffs provided to the Generic Manufacturers Notices of Deposition on the issues of: (i) storage and transportation (in amended form); (ii) manufacturing; and (iii) pharmacovigilance.  Those notices were deemed served on February 9, 2021.

4

| Field Code Changed |
| --- |

~~3.~~4.    Deposition dates stated in deposition notices are subject to Section II.C. Generic Manufacturer Defendants have agreed and are now ordered to provide deposition dates occurring in April or May but in no event later than June 15, 2021 for corporate representatives in response to Plaintiffs' Notices of 30(b)(6) Deposition.  In the event that a deposition is rescheduled by agreement of the parties or Court Order, it will be completed no later than July 15, 2021.

~~4.~~5.    Notwithstanding the foregoing provision intended to set forth a timeline for certain depositions, the Court expects the Parties to resolve Generic Manufacturer Defendants' objections related to scope, relevance, or proportionality in accordance with Section II.C. of this Order below.

**B. Custodial Discovery**

1.    Plaintiffs and Generic Manufacturer Defendants through good faith negotiations will agree on one set of search terms for custodial productions, along with designations of custodians in key areas (targeted to the discovery requests and deposition notices) by February 28, 2021. Any deposition, and custodial file production associated therewith, taken of a Generic Manufacturer Defendant's current or former employee, including, but not limited to, custodians and corporate representatives designated for 30(b)(6) depositions referenced herein, shall be subject to ~~governed by~~ PTO 54, or any amendment or modification by the Court thereof.

2.    No later than February 28, 2021, all Generic Manufacturer Defendants will provide Plaintiffs a list of proposed initial custodians, which shall include: (a) the custodian's full name, (b) job title(s); (c) department the custodian worked in, and (d) years employed. This list does not represent a complete list of all custodians for this case but should represent the Generic Defendants' proposal for all custodians they deem relevant taking into account the allegations in the Master Pleadings, the discovery requests at issue and the three 30(b)(6) deposition notices served to date. Custodians should span the relevant time period in plaintiffs' requests for

Field Code Changed

production. Generic Manufacturer Defendants and will meet and confer with Plaintiffs individually to determine the sufficiency of their custodial list in light of the amended class pleadings and Defendants' document productions, understanding that Plaintiffs presently do not have sufficient information to identify all relevant custodians from any Generic Defendant.

3.     Notwithstanding the parties' agreement on general search terms, or the Court's order setting general search terms, any individual Generic Manufacturer Defendant may advise plaintiffs that they intend to use technology assisted review (TAR) to search or prioritize documents for review, or request to modify or delete any search term(s) based upon that individual Generic Manufacturer Defendant's circumstance.  For example, if the terms are generating too many unresponsive documents because of specific facts relevant to that particular Generic Manufacturer Defendants, the parties will engage in good faith meet and confer meetings to address those issues.

4.     In the absence of agreement, the parties agree to use PTO 32 for the Court to resolve the search term and custodian issues at a March 1, 2021 hearing.

**C. Scope and Timing of Depositions**

1.     The parties will engage in good faith meet and confer meetings to work through objections to the deposition notices raised by Defendants.  To the extent any disputes remain by February 28, 2021, the parties agree to use PTO 32 for the Court to resolve the issues of scope, relevance and proportionality at a March 1, 2021 hearing.

2.     No later than February 28, 2021, each Generic Manufacturer Defendant will provide to plaintiffs the number of witnesses it expects to produce for each deposition notice and tentative dates on which it will present each witness for deposition in accordance with the below scheduling requirements, such dates and witnesses being subject to revision up to three days after

Field Code Changed

the Court's order on the PTO 32 hearing issues. If a Defendant determines that two or more witnesses are necessary, then two separate depositions with the full time allotted under PTO 54 for each witness, will take place, and the second or additional witnesses' deposition will not count against the "soft cap" on depositions of Generic Manufacturers. Notwithstanding this deadline, this Court encourages Generic Manufacturer Defendants to provide dates as soon as possible in light of the number of depositions to be scheduled and the limited number of depositions that can be scheduled on the same date.

a) Each Generic Manufacturer Defendant will provide a date in April 2021 to produce its witnesses on the issues of storage and transport.

b) Each Generic Manufacturer Defendant will provide a date in May 2021 to produce its witnesses on the issues of manufacturing.

c) Each Generic Manufacturer Defendant will provide a date in May 2021 or prior to June 15, 2021 to produce its witnesses on the issues of pharmacovigilance.

d) All dates provided by Generic Manufacturer Defendants are subject to scheduling issues that may arise on individual defendant and witness basis. If a deposition requires rescheduling and the parties cannot agree on a date prior to July 15 on which they can reschedule the deposition, they will meet and confer with the Special Master, who will have the sole authority to permit a rescheduled deposition to occur after July 15.

e) Nothing in this agreement precludes Plaintiffs and individual Generic Manufacturer Defendants from agreeing to schedule depositions at an earlier date, in a different sequence or on a narrower set of topics applicable to the individual Generic Manufacturer.

7

Field Code Changed

III.   **COORDINATION ON INDIVIDUAL GENERIC MANUFACTURER DEFENDANT ISSUES**

   **A.  Generic Manufacturer Defendant Specific Notices**

   1.       The notices served as referenced in Section II.A.2 with any changes agreed upon by and between the Plaintiffs and the Generic Manufacturer Defendants and any rulings made by the Court as per Section II.C. herein, will constitute the applicable notice for each of the 3 depositions referenced in Section IB.1 herein.  However, even after following the procedure set forth in Section II.C.1 a Generic Manufacturer Defendant may have a concern or objection to the scope of the notice as it applies to them.

   2.       The parties shall meet and confer in good faith at least twenty-one (21) days in advance of the deposition in accordance with Fed. R. Civ. Pro. 30(b)(6), about these particular matters.  The parties will agree upon or have resolved by way of the PTO 32 process the scope of these particular depositions no later than fourteen (14) days prior to the scheduled deposition.

   **B.  Responding to Notices of Deposition by Written Interrogatory**

   1.       Plaintiffs acknowledge that numerous topics identified in their deposition notices may be addressed more efficiently by use of interrogatories prior to deposition testimony. Plaintiffs will designate topics in their deposition notices that may be answered as interrogatories and Generic Manufacturer Defendants will have the option of initially answering those topics fully as verified answers to interrogatories pursuant to Fed. R. Civ. P. 33 and Section II of PTO 32 or by producing a witness to give testimony on the topic.

   2.       To the extent a Generic Manufacturer Defendant chooses initially to respond to a designated topic by answering as an interrogatory response, the Generic Manufacturer Defendant will serve its verified answers to those interrogatories no later than fifteen days prior to the related deposition.

8

Field Code Changed

3.      Even where a Generic Manufacturer Defendant elects to respond to a notice topic by responding with a verified interrogatory answer pursuant to Fed. R. Civ. P. 33 and Section II of PTO 32, Plaintiffs may engage in reasonable follow-up inquiry during the subsequent related deposition on the same topic(s).

4.      The limitation on interrogatories set out in Fed. R. Civ. P. 33 will not preclude Generic Manufacturer Defendants from voluntarily responding to designated deposition topics as interrogatories.  However, in so responding, a Generic Manufacturer Defendant does not waive the right to object to future interrogatories as duplicative, irrelevant or not proportional to the needs of this litigation.

**SO ORDERED,** on this _____ day of _____, 2021.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

9

*Error! Unknown document property name.* ~~143357.00616/125209469v.8~~

Field Code Changed

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IN RE:  ZANTAC (RANITIDINE)                               MDL NO. 2924
PRODUCTS LIABILITY                                        20-MD-2924
LITIGATION
                                              JUDGE ROBIN L. ROSENBERG
                                     MAGISTRATE JUDGE BRUCE E. REINHART

_____/

**PRETRIAL ORDER**
**(Deposition Protocol for Defendants' Witnesses & Third Parties)**

This Order shall govern the conduct of depositions of witnesses who are Defendants'
current or former employees and who are under the control of Defendants, and third parties
unaffiliated with Plaintiffs.  A separate Order will be entered that applies to depositions of
Plaintiffs and Plaintiffs' witnesses.

A.     **GENERAL PROVISIONS AND OBJECTIVES**

1.     **Order Applicable to all Cases in MDL Proceeding.**  This Order applies to all
cases currently pending in MDL No. 2924 and to all related actions that have been or will be
originally filed in, transferred to, or removed to this Court and assigned hereto (collectively "the
MDL Proceeding").  This Order is binding on all Parties and their counsel in all cases currently
pending or subsequently made part of the MDL Proceeding and will govern each case in these
MDL Proceeding, including claims solely on behalf of individually named plaintiffs and purported
class actions (or class-type representative actions) that are transferred to or filed in this District.

2.     The MDL Proceeding involves Plaintiffs bringing individual and putative class
action claims, and many defendants who are differently situated from each other.  This Protocol
was negotiated amongst, and represents compromises by, the many Parties based upon the unique
facts, circumstances, and needs of this MDL Proceeding, recognizing the diversity and number of

1

Parties in this MDL Proceeding.  The Court also expressly emphasizes that in light of these unique circumstances, not only should this Protocol not be taken to bind any Party here to these or similar provisions in future litigation, but it cautions that the provisions here were negotiated by the Parties in light of the very unique circumstances of this MDL Proceeding and thus may not be well-suited to other litigations.

3.     **Scope.** This Order shall apply to: (i) all fact depositions of witnesses who are currently or were formerly employees of MDL Defendants, including any depositions pursuant to Rule 30(b)(6); and (ii) all general discovery of party and non-party deponents other than party or non-party deponents whose testimony is relevant only to the claims of a particular Plaintiff, *i.e.* case-specific witnesses. For the avoidance of doubt, this Order shall not apply to: (i) fact depositions of any MDL Plaintiffs, class representatives, Plaintiffs' representatives, employees, family members, personal acquaintances, healthcare providers, and all other Bellwether trial or case-specific fact witnesses; and (ii) expert depositions.

4.     **Cooperation.** Counsel are expected to cooperate with and be courteous to each other and deponents in both scheduling and conducting depositions.  Counsel are reminded that this Court considers depositions to be official court proceedings and the conduct of all participants in depositions shall be in accordance with the customs and practices expected of lawyers and witnesses appearing before this Court, as if each was appearing personally before the Court at the time of the depositions. Counsel shall not at any time conduct himself or herself in a manner not becoming an officer of the Court and not in full compliance with the civil rules of practice and all other orders of the Court. Neither counsel nor witnesses shall, at any time, engage in conduct that impedes, delays, or frustrates the examination of the witness. All counsel and the deponent must be treated with civility and respect.

5.      **Disputes.** Disputes arising during depositions that cannot be resolved by agreement and that, if not immediately resolved, will significantly disrupt the discovery schedule or require rescheduling of the deposition, or might result in the need to conduct a supplemental deposition, shall be presented to the MDL Magistrate Judge Bruce Reinhart by telephone (xxx-xx-xxxx). If the Magistrate is not available, the deposition shall continue with full reservation of rights of the examiner for a ruling at the earliest possible time. Nothing in this Order shall deny counsel the right to suspend a deposition pursuant to Fed. R. Civ. P. 30(d)(3), file an appropriate motion with the Court at the conclusion of the deposition, and appear personally before the Court.

6.      **Number of Depositions**[1]

a.   The Parties are encouraged to work together to resolve any disputes concerning a request to take depositions in excess of the below presumptive limit to the number of party depositions and the length thereof.  This litigation is complex and involves a considerable number of Defendants, witnesses who have worked for multiple Defendants over the time Ranitidine-Containing products were sold, causes of action, and allegations of injury, so should the Parties have a dispute concerning the numbers of examining attorneys or the numbers of or length of depositions, MDL Lead Counsel, or their designees for Plaintiffs, shall have the sole authority to meet and confer with counsel for the Defendant(s) affected by the dispute in an attempt to resolve the issue before engaging the Special Master, the Magistrate or the Court.

b.   The Parties have agreed to a "soft cap" presumptive limit on the number of depositions Plaintiffs, as a group, can take of Defendants in this litigation. These "soft cap"

---

[1] For purposes of this provision, any corporation and its affiliated entities (e.g. subsidiaries, parent companies, etc.) shall be deemed one "Defendant" without regard to whether the Defendant is named in any Complaint in more than one category of Defendant.

numbers of depositions are subject to the following conditions and agreement between the Parties:

1. The numbers do not include any depositions sought by Plaintiffs related to jurisdictional disputes;

2. The numbers are soft caps, presumptive numbers subject to discussions between counsel for the Parties to allow for additional depositions if there is good cause for such depositions, taking into account discovery already obtained, and whether or not additional depositions would be unreasonably cumulative or duplicative. The numbers below are not meant to be an absolute cut off of depositions and are intended to allow for the flexibility for additional depositions as dictated by the discovery process generally, including, but not limited to, the scope of discovery, document productions and supplementation thereto and the ability of Defendants' witnesses to adequately cover the timeframes and issues relevant to this litigation;

3. In the event a witness is or was employed by more than one Defendant in this litigation, the Parties will meet and confer to determine how to allocate the witness's deposition against the soft cap numbers of the Defendants, taking into consideration factors such as who defends the witness, who produces the witness's custodial file, and the focus of the deposition.

4. If a corporate representative for a 30(b)(6) deposition is asked a question thought to be outside the scope of the notice, counsel for the tendering Defendant shall state merely "scope," and the witness shall answer the question. This testimony may later be adjudicated by the Court to be either testimony as

4

the Defendant's corporate representative or as testimony given in the witness's individual capacity. If the parties seek to Absent good cause shown, Plaintiffs should not take a subsequent separate individual deposition of a witness designated as a corporate representative for a 30(b)(6) deposition, they will meet and confer in good faith to reach agreement. In the event they do not reach agreementso, the parties will seek resolution in accordance with PTO 32. If the separate individual deposition of a witness is taken, it shall not count as an additional deposition for purposes of this section.

5. The numbers in no way affect, limit, restrict or condition, in any way, the number of custodial files sought by or produced to Plaintiffs.

6. The numbers in Paragraph c. below include 30(b)(6) depositions; however any 30(b)(6) notice of deposition addressing the same subject matter, i.e., manufacturing, marketing/sales, regulatory, etc., shall be considered as one deposition, regardless of the numbers of witnesses designated by the respective Defendant in response thereto.

c. Absent agreement of the Parties or Order of the Court, Plaintiffs as a group will be limited to the following presumptive number of witnesses:

1. 35 depositions for Defendant GSK, of which up to 8 may be allocated for depositions limited to issues unique to the class actions; 19 depositions for Defendant BI; 14 depositions for Defendant Pfizer; and 14 depositions for Defendant Sanofi of (i) fact witnesses currently or formerly employed by the above respective Brand Manufacturer Defendants; and (ii) witnesses designated

5

by Brand Manufacturer Defendants pursuant to Federal Rule of Civil Procedure 30(b)(6), combined.

2.  Absent agreement of the Parties or Order of the Court, Plaintiffs as a group will be limited to 5 depositions for each Generic Defendant of (i) fact witnesses currently or formerly employed by the Generic Defendants; and (ii) witnesses designated by the Generic Defendants pursuant to Federal Rule of Civil Procedure 30(b)(6), combined.

3.  Regarding depositions of the Retailer and Pharmacy Defendants and Distributor Defendants (collectively, the "Non-Manufacturing Defendants") the Plaintiffs and the Non-Manufacturing Defendants agree that Paragraph 6(b) herein applies to their depositions, but that there is no presumptive "soft cap" limit of depositions per Defendant.  Instead, the parties will meet and confer in good faith before the Plaintiffs issue any deposition notices.  Any depositions of Non-Manufacturing Defendants will be requested pursuant to the factors as set forth in Rule 26(b)(1) of the Federal Rules of Civil Procedure.

B.  **CROSS-NOTICING DEPOSITIONS**

1.  **Cross-Notices**. The Parties and the Court desire to minimize the expense and inconvenience of this litigation by, inter alia, providing for a single deposition of witnesses within the time limits set forth in this Order in all litigations relating to Zantac/ranitidine. Any witness deposition in this litigation subject to this Order may be cross-noticed by any Party in any related action pending in any state or federal court.

2.  **Coordination of Depositions**. MDL Lead Counsel shall take reasonable steps and engage in good-faith efforts to coordinate the scheduling of depositions to minimize the number of

6

times a witness shall appear for deposition. The Parties wish to minimize the expense and inconvenience of this litigation by minimizing the depositions of any common witness. To the extent practicable, the Parties shall endeavor to allow for the opportunity for participation by state court litigants.  To the extent a state-court litigant has an interest in participating in a cross-noticed deposition, the Parties shall meet and confer concerning said participation and the coordination thereof. The desire to include state-court litigants in a specific deposition will not delay the deposition in MDL 2924.

3. **Questioning Attorneys**.  The allocated time on the record pursuant to Section E *infra* shall be divided by no more than two examining attorneys for Plaintiffs in MDL 2924 for depositions of Defendants' current/former employees or 30(b)(6) designees. The Parties will make good-faith efforts to meet and confer seven (7) days prior to the deposition to discuss the number of MDL examiners and potential categories anticipated to examine the witness. To the extent a second examiner from the MDL questions the witness, MDL counsel may examine the deponent with non-duplicative questions.  Counsel for state-court litigants may examine the deponent with non-duplicative questions.  Questioning by state-court litigants in a cross-noticed deposition shall not count against the deposition time limits for MDL Plaintiffs.

4. **Subsequent Depositions**. If a deposition originally noticed in this MDL proceeding has been cross-noticed in another state court proceeding, then any Plaintiffs' PSC member and any other Plaintiffs' counsel who appear at the deposition  may not seek to take a subsequent deposition of the same witness except upon a motion filed in these MDL proceedings for good cause shown.  Any subsequent deposition permitted by this Court shall be restricted to such additional inquiry stipulated to by the Parties or as permitted by the Court.  Any Plaintiffs' PSC member and any other Plaintiffs' counsel who appear at a deposition of a witness in this case

may not subsequently seek to depose the same witness in a state-court proceeding. Notwithstanding this provision, a witness may voluntarily agree to appear for a subsequent deposition in another proceeding.

**C.    NOTICES / SCHEDULING**

1.    **Content of Notice.** Each deposition notice and subpoena shall include the name, address and telephone number of an attorney point of contact designated by the Party noticing the deposition (the "Deposition Liaison") as well as the date, time and place of the deposition.  The Deposition Liaison will be responsible for all logistical issues related to the noticed deposition, including coordinating the time, place, and manner of the deposition with the deponent and other Parties, as well as tracking expected attendance for the deposition and ensuring there is adequate space for all attendees.  This order in its entirety shall be attached to any subpoena or deposition notice that pertains to a third-party witness covered by its terms.

2.    **Cooperation in Scheduling.** The Deposition Liaison, counsel for the deponent, and where appropriate, Lead and Liaison counsel for the Parties, shall use best efforts to coordinate in the scheduling and taking of depositions. Prior to issuing a deposition notice or subpoena, absent extraordinary circumstances, the Deposition Liaison must consult with counsel for the deponent and designees for all Lead and Liaison Counsel (as listed in Exhibit A) prior to noticing a deposition in an effort to schedule depositions at mutually convenient times and locations. Counsel are expected to cooperate and coordinate the scheduling of depositions on a good faith basis.

3.    Unless otherwise agreed by the Parties or ordered by the Court, depositions may not be taken on Saturdays, Sundays, federal court holidays, or official holidays of the country where the deponent is located.

8

4.      The Parties will make their best effort to schedule no more than one (1) deposition on a given day but recognize that dual track depositions may be necessary in some instances.  In the event multiple tracks become necessary, witnesses affiliated with the same individual Defendant shall not be scheduled for the same day absent order of this Court.

5.      Each deposition notice shall comply with Fed. R. Civ. P. 30(b).  In addition to the Deposition Liaison, the notice must include the identity of the deponent, as well as the date, time, and location of the deposition, including whether the deposition shall be taken in-person or by remote means, and the identity of the court reporter designated by the noticing party to record the deposition.[2]  All deposition notices shall also request that no later than fifteen (15) days prior to the date noticed for any deposition, the deponent or his or her representative notify the Deposition Liaison whether an interpreter will be required.

6.      **Location.** The Court expects counsel to mutually agree upon deposition locations. To the extent reasonably possible, depositions of witnesses located in the United States will take place in the deponent's home district or, if counsel for the deponent agrees, in another district convenient to the deponent, counsel and the Parties.

7.      All Parties are responsible for their own travel expenses in attending depositions.

8.      To the extent foreign witnesses are noticed for deposition, the Parties agree that to the extent possible, and if in compliance with local law, all foreign depositions shall take place in London, England; Brussels, Belgium; Toronto, Canada; New Delhi, Mumbai or Hyderabad, India; Zurich, Switzerland; or Tel Aviv, Israel. Upon agreement of the Parties, the deposition may occur in another location most convenient to the witness, or in other locations if public health and safety regulations or conditions or local governing law make those locations unsuitable.  Or such

---

[2] PTO 48 governs the procedures for scheduling, noticing, and conducting remote depositions, including any additional information required to be set forth in the notice for any remote deposition.

depositions may occur remotely by video conference in accordance with Pretrial Order #48.  The Parties agree to meet and confer in good faith to determine an alternate location as needed or if the foreign deposition shall occur remotely by video conference in accordance with Pretrial Order #48, taking into account travel restrictions or other exigencies related to Covid-19.  Nothing in this Order shall be construed to abrogate the Federal Rules of Civil Procedure, the Local Rules of the Southern District of Florida, international law governing the noticing and taking of depositions of foreign nationals or the laws of the country in which a deposition will be held.  Nothing in this Order shall be construed as prohibiting a Party from objecting to a Notice, including but not limited to objecting based on violation of international law or the laws of the country in which the proposed deponent resides, or undue burden or harassment.  Nothing in this Order will prevent the Parties from entering separate agreements regarding the deposition location for its foreign deponents.

9.      In the event the Parties request or require the attendance of a judicial officer at an international deposition, all travel expenses for that officer will be shared by Plaintiffs and the Defendant whose witness is deposed. Regardless, all rules concerning such depositions will be governed by this Protocol and the Federal Rules of Civil Procedure.

10.      **Third Party Subpoenas.**  Third-party witnesses subpoenaed to produce documents at their oral deposition shall be served with the document subpoena at least thirty (30) calendar days before a scheduled deposition.  The subpoena shall set forth the date and time for production of any records, which in most cases should not be less than ten (10) days prior to the deposition. The Deposition Liaison shall make any records produced in response to the subpoena available in accordance with Pretrial Order #45 governing Service of Discovery Requests and Responses.

11.      **Adequacy of Notice.**  All deposition notices shall be noticed at least fourteen (14) twenty-one (21) days in advance.  If the deponent is requested to bring documents to the deposition

10

or produce them in advance of the deposition, the notice with incorporated request to produce shall be served at least twenty-one (21)~~thirty (30) calendar~~ days before a scheduled deposition, unless otherwise agreed to by counsel. This provision shall not apply to custodial productions related to the deponent or any non-custodial productions required to be provided in conjunction with the deposition, prior to the ~~deposition,~~deposition.

12.     **Date or Time Change.**  If the date or time of a deposition is changed following the initial service of the Deposition Notice, the noticing party shall serve an amended notice reflecting the revised date, location, and/or means of taking the deposition, as applicable; said notice shall not be filed on the Court docket. Once the Parties have agreed upon the date, time and location of a deposition, the deposition shall not be taken off the calendar, except for good cause. A Party taking a deposition off the calendar shall notify opposing counsel in writing with the reason for the need to do so, and, within a reasonable time following any such notice, provide alternative dates for rescheduling the deposition.  If a cancellation occurs less than three (3) days in advance of the scheduled date, the cancelling Party should also contact opposing counsel by telephone and email.

13.     **Remote Participation.** In the event that a Party wishes to participate in a deposition remotely, that is, either by telephone or internet, that Party shall notify the Deposition Liaison ~~five~~ two (~~5~~2) days in advance of the start of the deposition. Any Party seeking to participate remotely must agree to be bound by applicable Protective Orders and shall not re-record the deposition, by video or audio means.  The Party seeking to participate remotely is responsible for coordinating with the Deposition Liaison and/or court reporter to arrange the necessary telephone lines or internet connections.  Depositions that are noticed as "remote depositions" shall be governed by PTO 48.

14.   **Means of Recording.**

(a) <u>Stenographic Recording</u>. A certified court reporter shall stenographically record all deposition proceedings and testimony with "real time feed" capabilities. The court reporter shall administer the oath or affirmation to the deponent. A written transcript by the court reporter shall constitute the official record of the deposition for purposes of Fed. R. Civ. P. 30(e) and similar state-court rules addressing filing, retention, certification and the like. The noticing party shall bear the expense of recording the deposition.  Each party shall bear its own costs in securing copies of the deposition transcript, exhibits and video recording. Subject to the terms of the Confidentiality Order entered in these proceedings, any party in these MDL proceedings may at its own expense obtain a copy of the video recording, exhibits and the stenographic transcript by contacting the court reporter.

(b) <u>Videotaping</u>. The deposition notice or subpoena shall state whether the deposition is to be videotaped.  The notice or subpoena shall state the name, firm and address of the certified legal videographer firm.  All videotape depositions shall proceed pursuant to the provisions of section L, infra.

D.   <u>**ATTENDANCE**</u>

1.   **Permitted Attendees.** Unless otherwise agreed to by the Parties or ordered under Fed. R. Civ. P. 26(c), depositions may be attended only by the Parties or the representatives of a Party (including in-house counsel), the deponent, the deponent's attorney, attorneys of record in MDL 2924 or in cross-noticed state cases, members and employees of their firms, and court reporters and videographers.  Upon application, and for good cause shown, the Court may permit attendance by a person who does not fall within any of the categories set forth above.

2.    **Pretrial Order #26 (Confidentiality Order) Applies.** All Permitted Attendees to any deposition are explicitly bound by the terms of this Order and Pretrial Order #26 (Confidentiality Order).   Any portion of the deposition transcript containing confidential information shall be sealed so as not to waive confidentiality.

3.    **Notice of Intent to Attend by Individuals Not Permitted to View Highly Confidential Documents.**  To the extent a Party seeks to have an individual attend a deposition who is not authorized pursuant to Pretrial Order #26 or any other Order entered by the Court ("Unauthorized Attendee") to view Highly Confidential materials, the Party must notify Plaintiff and Defendants' Lead Counsel of any Unauthorized Attendees, at least ten (10) days before the deposition.   Defendants shall work with all Defendants for an agreement allowing any Unauthorized Attendee(s) to attend such deposition and have access to Highly Confidential testimony and documents. If such agreement cannot be reached prior to the scheduled deposition, such Unauthorized Attendee(s) shall not be allowed to attend the deposition.  If an agreement to allow an Unauthorized Attendee to attend a deposition is reached, the fact that the Unauthorized Attendee may view Confidential or Highly Confidential documents does not constitute a waiver of the confidentiality designations.

4.    **Unnecessary Attendance by Counsel.**  Unnecessary attendance by counsel is discouraged and may not be compensated in any fee application to the Court. Counsel who have only marginal interest in a proposed deposition or who expect their interests to be adequately represented by other counsel may elect not to attend.

5.    **Notice of Intent to Attend a Deposition.** In order to make arrangements for adequate deposition space and obtain appropriate security clearances (where necessary), any person who intends to attend a deposition noticed in this MDL in person shall advise the court

13

reporter and the Deposition Liaison identified in the deposition notice of their intent to attend the deposition at least five (5) days prior to the deposition.  Three (3) days prior to the deposition, the Deposition Liaison shall identify the attendees for Plaintiffs and Defendants to MDL Lead Counsel.

6.      **Examination Regarding Confidential and Highly Confidential Documents.** Permitted Attendees, as defined above, in attendance of any deposition, or part of any deposition, are bound by this Pretrial Order and Pretrial Order #26 (Confidentiality Order). No objection shall be interposed at deposition directing a witness not to answer based on the fact that an answer would elicit, address, or relate to Confidential or Highly Confidential Information.  This subsection applies whether the Permitted Attendee appears at the deposition in-person or by remote means.

E.      <u>**LENGTH OF DEPOSITIONS**</u>

1.      Unless otherwise ordered by the Court or agreed to by the Parties and counsel for any deponent, the following provisions shall govern depositions subject to this Order.

2.      A deposition day shall be seven (7) hours of testimony and shall ordinarily commence at 9:00 a.m. and terminate at 5:30 p.m.[3] including a one-hour break for lunch, and a morning break of no more than fifteen minutes and afternoon break of no more than fifteen minutes plus any necessary restroom breaks.  A deposition may continue to 7:30 p.m. only when the long deposition day will make it possible to conclude the deposition in a single day by agreement of the Parties. No breaks shall be taken while a question is pending, except to confer about an issue relating to privilege.  If a witness has a documented medical condition that affects his or her ability to testify for seven (7) consecutive hours, the Parties agree to work in good faith to accommodate an alternative schedule for that witness.

---

[3] All times refer to the time zone where the deponent will be located during the deposition.

3.      The noticing Party shall be entitled to utilize 85% of the time allocated for a deposition, with the non-noticing Parties having the remaining 15% of the time allocated for a deposition, regardless of the length prescribed or otherwise agreed upon. Otherwise, unless agreed between the parties as referenced in Section A(5)(a) infra, each deposition of a current or former Party employee witness, 30(b)(6) designee, or non-Party witness shall last seven (7) hours on the record.

4.      In the event that the deposition involves a translator, the maximum length of the deposition shall be increased as is reasonably necessary to conduct the examination, but not to exceed a total of 10.5 hours on the record, absent agreement of the Parties.

5.      To the extent responsive documents are produced or custodial documents are identified after the deposition of any witness, a supplemental deposition may be requested, and the Parties agree to meet and confer in good faith on the issue.  Any subsequent deposition shall be limited to issues arising from supplemental productions or identification of custodial documents. A Party seeking to take a second deposition of a witness shall provide the opposing Party its basis for an exception.  ~~This provision does not apply if the noticing counsel has been informed at least five (5) days in advance of the deposition that the production of custodial documents relating to that witness is not yet complete and provides a date certain by which such production will be completed.  If noticing counsel nevertheless elects to proceed with a deposition, the subsequent production of documents shall not be a valid basis for requesting a supplemental deposition.  This provision also does not apply if the noticing counsel serves additional document requests after the witness's deposition that could have reasonably been requested prior to the deposition.~~

6.      If a Deposition Liaison believes additional time may be necessary to explore the corporate and personal knowledge of a deponent, the Deposition Liaison will meet and confer,

pursuant to Paragraph A(5)(a) with the deponent's counsel regarding adding to the length of the deposition to accommodate reasonable additional time.

7.      The above time limits shall be the actual time spent examining the witness. Time spent on breaks or lunch shall not be counted toward the time limits.

8.      Nothing in this Order is intended to limit the ability of the Parties, for good cause shown, to seek, prior to the time of the deposition, modification of these time limits for limited key deponents.

### F.  EXHIBITS

1.      **Marking of Deposition Exhibits.** Each document referred to at a deposition shall be referred to by its alpha-numeric production number except in the case of documents that have not yet received production numbering at the time of the deposition. Documents that are produced in native format shall have the slip sheet with the Bates number affixed to the front of the document. The court reporter for each deposition will include in each deposition transcript a list of the exhibits referenced in the deposition. The court reporter shall assign exhibit number blocks for each deposition and shall make sure that duplicative or overlapping exhibit numbers are not assigned.  Counsel shall attempt to use the previously marked exhibit number in subsequent depositions rather than re-marking the same exhibit with different exhibit numbers.

2.      Any document shown to a deponent shall be the complete, unaltered, and free-standing document as it was produced in this litigation. Each email shall be considered such a document.

16

3.    **Copies.**  At the time a document is used, all deposition attendees shall receive copies  of the document being used by the examining attorney.

4.    **Objections to Documents.** Objections to the relevance or admissibility of documents used as deposition exhibits are not waived and are reserved for later ruling by the Court or by the trial judge.  The lack of an obvious connection between a document and a witness shall not prevent a witness from being asked questions about the document at a deposition.

G.    <u>**EXHIBITS: EVIDENTIARY CHALLENGES**</u>

1.    **Hearsay and Authenticity Challenges.** Any Party-Produced Evidence marked as an exhibit in a deposition of that producing Party and/or its employees or former employees will be deemed to be a business record of that Party within the meaning of Federal Rule of Evidence 803(6) and authentic within the meaning of Federal Rule of Evidence 902(11) subject to the following paragraphs:

2.    "Party-Produced Evidence" is defined as (i) documents other than email that a Party produces; and (ii) any email produced by a Party that the Party and/or its employees or former employees authors or receives and produces.

3.    The exhibit marked at the deposition must bear a production number from that Party's production.

4.    The Parties may not mark deposition exhibits *en masse* for the sole purpose of bringing those exhibits within the scope of this section.

5.    Within 30 days of receipt of the transcript in which the evidence or a copy of the evidence was first marked as an exhibit in a deposition, the Producing Party seeking to challenge the business record status or authenticity of an exhibit must provide written notice to the Plaintiffs' Lead Counsel of the specific, non-boilerplate, objection(s) to the business record status of the

document, specifying the legal and factual basis for the objection. Any timely objection will be deemed to have been made for all depositions for which the exhibit is subsequently used. Absent good cause, failure to provide written notice of objection within the timeframe listed here constitutes waiver of the objection by the Producing Party at trial to the business record status pursuant to Federal Rule of Evidence 803(6) and authenticity of an exhibit within the meaning of Federal Rule of Evidence 902(11). Once waived, an objection cannot be raised as to that exhibit marked again in a later deposition.

6.      The Parties will make a genuine effort to meet and confer to resolve the written objection or undertake discovery solely to cure the objection.

7.      If a dispute remains, MDL Lead Counsel may request an *in limine* hearing on the objections by the Producing Party. Absent exigent circumstances or Court Order, *in limine* hearings may only occur every 90 days or after the accumulation of 50 or more unresolved written objections, whichever is sooner. All objected to exhibits will be presented in one filing per corporate Defendant. Any ruling shall be treated as any other pre-trial ruling *in limine.*

8.      In the event 90 days has passed from the previous *in limine* hearing or 50 or more written objections have accumulated, MDL Lead Counsel may request an *in limine* hearing by sending an email to [Zantac_MDL@flsd.uscourts.gov]. The subject line of the email shall be "Request for *In Limine* Hearing." The email shall provide the Court with three (3) afternoons in the following ten (10) business days where all Parties directly involved in the evidentiary dispute are available. The email shall state the amount of time that the Parties anticipate needing for the hearing and the number of pending written objections. The email shall also attach a joint evidentiary memorandum of two pages or less per written objection (1) specifying the substance of the evidentiary matter to be heard, and (2) stating with specificity the nature of the dispute with

citations to the particular subsections of Rules 801-807 and/or 901-903 of the Federal Rules of Evidence at issue. The memorandum should attach a copy of all deposition exhibits at issue. Only issues addressed in the joint evidentiary memorandum may be raised at the hearing, and any ruling shall be treated as any other pre-trial ruling *in limine*.

9.      In the event any written objection to the business record status of a document within the meaning of Federal Rule of Evidence 803(6) or authenticity within the meaning of Federal Rule of Evidence 902(11) is made near or after the close of fact discovery, the Objecting Party agrees to allow for additional discovery for up to thirty (30) days after written objection is received by Plaintiffs' Lead Counsel, regardless if the discovery period is closed, for the sole purpose of establishing the business records status or authenticity of documents that are the subject of an objection under this paragraph, including but not limited to additional deposition(s) of appropriate witnesses.

10.     Any additional discovery taken for the purpose of establishing the document's business record status within the meaning of Federal Rule of Evidence 803(6) or authenticity within the meaning of Federal Rule of Evidence 902(11) will not count against any discovery caps including presumptive deposition limits to the number of Party depositions.

11.     The Parties are reminded that the Court requires the Parties to act in good faith and to avoid, to the extent possible, the need for advance rulings from the Court on admissibility of evidence. It is the Parties' expectation that earlier rulings on document admissibility issues will provide guidance to the Parties and limit the occurrence of repetitive disputes.

**H.      CUSTODIAL FILES**

Provided that Plaintiffs notify counsel for Defendant at least forty-five (45) days in advance of the intended deposition of any of Defendants' present employees or sixty (60) days in advance

of the intended deposition of a former company employee of a Defendant whose custodial file has been properly requested and the production has not been completed, the Defendant will provide a supplemental production as to that witness.  Defendant will conduct a good faith reasonable search for additional custodial documents that have not been produced.   Any additional custodial documents will be produced subject to the PTOs in place in this case, including PTO #26 (Confidentiality Order).  Defendants will produce supplemental custodial files at least fifteen (15) days before the scheduled deposition and will make best efforts to produce supplemental custodial files twenty-one (21) days before the scheduled deposition.   Counsel must meet and confer regarding an appropriate deposition date giving due consideration to the current production schedule and the potential volume of the documents at issue.  If a Defendant is unable to complete its custodial production in accordance with these timeframes, they will notify Plaintiffs at least fifteen (15) days in advance of the deposition and the parties will meet and confer to determine whether to proceed as scheduled or postpone the deposition for a date certain that is mutually convenient for the parties but no later than 14 days after the original noticed date. If the parties cannot reach agreement, they will submit the issue to the Court in accordance with PTO 32.

## I. <u>TRANSLATION OF DOCUMENTS</u>

Any document shown to a deponent in a language other than English shall also be translated into English and copies made available to the witness and other counsel pursuant to the provisions of this Order.  Objections as to the accuracy of any translations of deposition exhibits shall be preserved unless a stipulation is reached by the Parties in advance of the deposition.

## J. <u>TRANSLATORS</u>

1.       If a witness indicates his or her intention to respond to questions in a language other than English, neutral translators will be employed to interpret and translate between the foreign

language and English.  If the translator is required for an employee of Defendant, then Defendant will engage and pay for the translator.  Each translator will swear under oath or affirm prior to each deposition to provide honest and truthful translations.  A monitor displaying "real time" transcription will be placed in front of the translator to assist in the translation at the Defendant's expense.

2.      Defense counsel will notify the Deposition Liaison at least fifteen (15) days in advance of the deposition of any present or former employee of Defendants' whose examination will require the involvement of a translator.  Subject to their being informed of the terms of this Order, counsel for third-Party witnesses will notify the Deposition Liaison at least fifteen (15) days in advance of the deposition that the examination will require the involvement of a translator. In the event the Deposition Liaison receives such notice from a third Party or his/her counsel, then the Deposition Liaison shall inform opposing counsel within twenty-four (24) hours of receiving such notice.  The noticing Party shall pay for the services of a translator necessary for the deposition of a third-Party witness.  When a deposition involves the use of a translator, any other Party shall have the right to bring his or her own translator to provide a check on the translation. Objections as to the accuracy of any translation of deposition testimony should be raised at the time of the deposition; however, if necessary, objections may be asserted within forty-five (45) days of the transcript being published.

### K.      COPIES OF TRANSCRIPTS AND RECORDINGS

1.      Each side shall bear its own costs in securing copies of the deposition transcript or video.

2.      Subject to the terms of the Confidentiality Order entered in these proceedings, any Party may at its own expense obtain a copy of the videotape and the stenographic transcript by contacting the court reporter.

**L.      VIDEO RECORDINGS**

1.      Any depositions may be videotaped at the request of any Party pursuant to the following terms and conditions:

a. **Simultaneous Stenographic Recording**. All videotaped depositions shall be simultaneously stenographically recorded in accordance with paragraph B(7), above.

b. **Cost of the Deposition**. The party requesting videotaping of the deposition shall bear the expense of both the videotaping and the stenographic recording. Requests for the taxation of these costs and expenses may be made at the conclusion of the litigation in accordance with applicable law.

c. **Videotape Operator**. The operator(s) of the videotape recording equipment shall be a neutral certified videographer subject to the applicable provisions of FED. R. CIV. P. 28(c) and similar state-court rules.

d. **Index.** The videotape operator shall use a counter on the recording equipment and after completion of the deposition shall prepare a log, cross-referenced to counter numbers, that identifies the depositions on the tape at which examination by different counsel begins and ends, at which objections are made and examination resumes, at which exhibits are identified, and at which an interruption of continuous tape-recording occurs, whether for recesses, "off-the-record" discussions, mechanical failure, or otherwise.

e. **Court Reporter To Be Sworn.**  At the commencement of the deposition the operator(s) shall swear or affirm to record the proceedings fairly and accurately. The operator shall produce both video and DVD formats of each deposition.

f. **Appearances.**  Each deponent and examining attorney attending the deposition shall be identified on the record at the commencement of the deposition.  The videographer will read a statement on the record that all persons attending the deposition will be identified in the final stenographic transcript.  Counsel attending the deposition will provide their identifying information to the stenographer in advance of the deposition.

g. **Standards.** Unless physically incapacitated, the deponent shall be seated at a table except when reviewing or presenting demonstrative materials for which a change in position is needed. To the extent practicable, the deposition will be conducted in a neutral setting, against a solid background, with only such lighting as is required for accurate video recording. Lighting, camera angle, lens setting, and field of view will be changed only as necessary to record accurately the natural body movements of the deponent or to portray exhibits and materials used during the deposition. Sound levels will be altered only as necessary to record satisfactorily the voices of counsel and the deponent.  The witness shall appear in ordinary business attire (as opposed to, for instance, a lab coat) and without extraneous objects.

h. **Additional Cameras.** Any party, at its own expense and with seventy (72) hours' notice in advance of the deposition to Deposition Liaison, counsel for the deponent, and court reporter, may arrange for an additional camera to film the examining attorney and/or defending attorney. If more than one camera is employed, the party

arranging for the additional camera shall pay for the expense of synchronization of the videotapes from the additional camera if the party intends to show videotape from the additional camera at trial. Nothing in this order shall be construed as a ruling whether the videotapes of the lawyers may be shown at trial. Counsel's objections to showing the videotape of counsel at the time of trial are reserved.

i.   **Filing.** After the deposition is completed, the video operator shall certify on camera the correctness, completeness, and accuracy of the videotape recording in the same manner as a stenographic court reporter, and file a true copy of the videotape, the transcript, and certificate with Liaison Counsel for whomever noticed the deposition.

j.   **Recording Objections & Instructions Not to Answer.**   Objections and instructions not to answer at videotape depositions are subject to the provisions herein. If the objection involves matters peculiar to the videotaping, a copy of the videotape and equipment for viewing the tape shall also be provided to the Court.

1.   **Technical Data.** Technical data such as recording speeds and other information needed to replay or copy the tape shall be included on copies of the videotaped deposition.

M.   <u>**OBJECTIONS AND DIRECTIONS NOT TO ANSWER**</u>

1.   Unless otherwise agreed by the Parties, and noted on the record, the following stipulations shall apply to all depositions in this action:

2.   Unless otherwise specified by any Defendant, an objection by a single Defendant shall be deemed an objection by all Defendants without regard to whether the Defendant attended

the deposition and, unless otherwise specified by any Plaintiff, an objection by a single Plaintiff shall be deemed an objection by all Plaintiffs.

3.      All objections are reserved until trial or other use of the deposition, except those objections regarding the form of the question or the existence of a privilege.  When a privilege is claimed, the witness should nevertheless answer questions relevant to the existence, extent, or waiver of the privilege, such as the date of the communication, who made the statement, to whom and in whose presence the statement was made, other persons to whom the contents of the statement have been disclosed, and the general subject matter of the statement, unless such information is itself privileged.   Privilege objections must be on a question-by-question basis, consistent with Paragraph II(F) in PTO #32 (Order Concerning the Discovery Process and Dispute Resolution).

4.      Counsel shall not direct or request that a witness refuse to answer a question, unless that counsel has objected on the ground that the question seeks privileged information, information that the Court has ordered may not be discovered, the question exceeds the scope of the 30(b)(6) notice, or a deponent seeks to present a motion to the Court for termination or limitation of the deposition on the ground that it is being conducted in bad faith or in such a manner as to unreasonably annoy, embarrass, harass or oppress the party or deponent.  For non-United States witnesses, a witness may be instructed not to answer where the question necessarily calls for information governed by the foreign country's data privacy protections.– Unless otherwise specified, an instruction not to answer by one Defendant should not be deemed an instruction not to answer by all Defendants and an instruction not to answer by one Plaintiff should not be deemed an instruction not to answer by all Plaintiffs at risk for sanctions should he/she instruct a witness in bad faith.

5.      If during a deposition a party in good faith intends to present an issue to the Court by telephone pursuant to Section A(5), and if the Court is not immediately available, the Party may instruct the witness temporarily to defer answering the question until the Court is available to issue a ruling.

6.      Counsel shall refrain from engaging in colloquy during depositions, and counsel shall comply with Fed. Rule Civ. P. 30(c)(2) concerning objections at depositions. Counsel shall refrain from all comments that could be perceived as instructive to a witness, such as "you can answer if you understand the question" or "you can answer if you know."  The phrase "objection as to form," or similar language shall be sufficient to preserve all objections as to form until the deposition is sought to be used. Counsel may ask what specific defect in form is referenced in the objection in order to decide if there is a need to cure the alleged defect.

7.      Private consultations between deponents and their attorneys when a question is pending are improper, except for the purpose of determining whether a privilege should be asserted. Unless prohibited by the Court for good cause shown, consultations may be held during normal recesses and adjournments, or if there is a break in the normal course of interrogation and no questions are pending. If a question is pending, the deponent shall answer the question prior to taking a break or adjournment, except to consult regarding whether a privilege protects the testimony.

8.      Objections other than as to form, addressed above, are not waived, and are reserved for later ruling by the trial judge.

**N.      <u>USE OF DEPOSITIONS</u>**

1.      Under the conditions prescribed in Fed. R. Civ. P. 32(a) (1)-(4) or as otherwise permitted by the Federal Rules of Evidence, depositions may be used by any Party who has

submitted, or been found subject, to the jurisdiction of any court in any case covered by this order who:

      a)  was present or represented at the deposition; or

      b)  had reasonable notice thereof; or

      c)  absent a showing of excusable delay, within thirty (30) days after the deposition is taken or within forty-five (45) days after becoming a party in state actions or MDL-2924 fails to file a motion and obtain an order concluding that just cause exists such that the deposition should not be used in that case.

2.     This Order does not address the admissibility for trial purposes of any testimony taken by deposition. Determinations on the admissibility of any such testimony shall be made by the trial court.

3.     This Order does not envision that a separate trial preservation deposition must be taken in order for the deposition to be introduced at trial.

**O.**     **CORRECTING AND SIGNING DEPOSITIONS**

1.     Unless waived by the deponent, the transcript of a deposition shall be submitted to the deponent for correction and signature and shall be corrected and signed within thirty (30) days after receiving the final transcript of the completed deposition.

2.     If no corrections are made during this time, the transcript will be presumed accurate.

**P.**     **FEDERAL RULES OF CIVIL PROCEDURE APPLICABLE**

1.     The Federal Rules of Civil Procedure and Federal Rules of Evidence shall apply in all proceedings unless specifically modified herein.

2.       This Order and the Federal Rules of Civil Procedure and Federal Rules of Evidence shall apply to all depositions taken pursuant to this Order in this case, including those taken of foreign witnesses or in foreign countries.

**SO ORDERED,** on this _____ day of November, 2020.

_____

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

**Henry, Terry M.**

| | |
|---|---|
| **From:** | Mike McGlamry <mmcglamry@pmkm.com> |
| **Sent:** | Monday, April 26, 2021 2:01 PM |
| **To:** | Richard Barnes; DODGE, JAIME LYNNE; thomas.yoo@hklaw.com |
| **Cc:** | Finken, Tracy; Marlene Goldenberg (mjgoldenberg@goldenberglaw.com); frank@colson.com; Henry, Terry M.; Joseph G. Petrosinelli (jpetrosinelli@wc.com); Andrew Bayman; Johnston, Sarah; Kaplan, Andrew |
| **Subject:** | RE: [External] Zantac--PTOs 54 and 60 |

Thanks Rick. Y'all send me your edits and we can set up a meet and confer. Thanks, Mike.

---

**From:** Richard Barnes <rmb@gdldlaw.com>
**Sent:** Monday, April 26, 2021 1:58 PM
**To:** Mike McGlamry <mmcglamry@pmkm.com>; DODGE, JAIME LYNNE <jdodge@emory.edu>; thomas.yoo@hklaw.com
**Cc:** Finken, Tracy <tfinken@anapolweiss.com>; Marlene Goldenberg (mjgoldenberg@goldenberglaw.com) <mjgoldenberg@goldenberglaw.com>; frank@colson.com; Henry, Terry M. <thenry@blankrome.com>; Joseph G. Petrosinelli (jpetrosinelli@wc.com) <jpetrosinelli@wc.com>; Andrew Bayman <abayman@kslaw.com>; Johnston, Sarah <Sarah.Johnston@btlaw.com>; Kaplan, Andrew <AKaplan@crowell.com>
**Subject:** RE: [External] Zantac--PTOs 54 and 60

Thanks Mike.

Terry will be taking lead for the generics on the PTO 60 amendments.  As PTO 54 implicates all defendants I forwarded the plaintiffs proposal to the other groups for their consideration.  We are working on our version of PTO 60 and Terry and perhaps others from our team will reach out for a meet and confer.  Others will need to weigh in on PTO  54.

Rick

---

**From:** Mike McGlamry <mmcglamry@pmkm.com>
**Sent:** Monday, April 26, 2021 1:28 PM
**To:** DODGE, JAIME LYNNE <jdodge@emory.edu>; Richard Barnes <rmb@gdldlaw.com>; thomas.yoo@hklaw.com
**Cc:** Finken, Tracy <tfinken@anapolweiss.com>; Marlene Goldenberg (mjgoldenberg@goldenberglaw.com) <mjgoldenberg@goldenberglaw.com>; frank@colson.com
**Subject:** RE: [External] Zantac--PTOs 54 and 60

Thanks Jaime. We are happy to meet once we receive the Generics' proposed changes. On our side, it will be me, Tracy and Marlene. Mike

---

**From:** DODGE, JAIME LYNNE <jdodge@emory.edu>
**Sent:** Monday, April 26, 2021 1:10 PM
**To:** Mike McGlamry <mmcglamry@pmkm.com>; rmb@gdldlaw.com; Thomas.Yoo@hklaw.com
**Cc:** Finken, Tracy <tfinken@anapolweiss.com>; Marlene Goldenberg (mjgoldenberg@goldenberglaw.com) <mjgoldenberg@goldenberglaw.com>; frank@colson.com
**Subject:** Re: [External] Zantac--PTOs 54 and 60

Good afternoon everyone!

I know we have always talked about Zantac-time, but having taken just a Friday off, I feel like I've missed a month of events – so I'm just trying to figure out what all is going on and wrap my head around it!

I'd like to check in with whomever the right folks are, but I do think it would be helpful to get a time to meet on this – just to have a time to talk through these and figure out how much can be joint and if there is any way to work through those on which there are different views would be good – and if Rick/Thomas surprise me and take all edits without need for discussion, there are also a few procedural things on this I'd like to work through anyway!

Jaime Dodge
Director, Emory Institute for Complex Litigation
C: (415) 515-7911

---

**From:** Mike McGlamry <mmcglamry@pmkm.com>
**Date:** Monday, April 26, 2021 at 10:35 AM
**To:** "rmb@gdldlaw.com" <rmb@gdldlaw.com>, "Thomas.Yoo@hklaw.com" <Thomas.Yoo@hklaw.com>
**Cc:** Jaime Dodge <jdodge@emory.edu>, Tracy Finken <tfinken@anapolweiss.com>, Marlene Goldenberg <mjgoldenberg@goldenberglaw.com>, "frank@colson.com" <frank@colson.com>
**Subject:** [External] Zantac--PTOs 54 and 60

Rick and Thomas,

I received a text from Andy Bayman Friday that said, "the generics would like a two week extension to file their PTO#54 and 60 motions…" First, the Court did not order us or allow us to file motions; in fact, she only wanted redline edits, and no comments, notes, etc., to the PTOs. Secondly, we do not need an extension to provide the edits requested and do not agree to any extension. The issues discussed at the CMC and the subject of our redlines cannot wait any longer with depositions taking place as we speak and others scheduled every day going forward. We need to have this resolved now.

Attached are our proposed changes to PTOs 54 and 60 (edits were made to the Word versions submitted to the Court prior to entry). If you have any edits to these, please send them to me. At that point, we can either have a discussion or each submit our separate edits on Wednesday. Thanks, Mike.

**From:** Mike McGlamry
**Sent:** Thursday, April 22, 2021 9:38 AM
**To:** rmb@gdldlaw.com
**Subject:** Zantac--PTO 30 Modification

Rick, do you have a minute to discuss the PTO 30 issues? Thanks, Mike.

---

This e-mail message (including any attachments) is for the sole use of the intended recipient(s) and may contain confidential and privileged information. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this message (including any attachments) is strictly prohibited.

If you have received this message in error, please contact the sender by reply e-mail message and destroy all copies of the original message (including attachments).

**Henry, Terry M.**

| | |
|---|---|
| **From:** | Mike McGlamry <mmcglamry@pmkm.com> |
| **Sent:** | Monday, April 26, 2021 6:51 PM |
| **To:** | Henry, Terry M. |
| **Cc:** | Finken, Tracy; Marlene Goldenberg (mjgoldenberg@goldenberglaw.com); DODGE, JAIME LYNNE; Joseph G. Petrosinelli (jpetrosinelli@wc.com); Andrew Bayman; sjohnston@btlaw.com; Kaplan, Andrew |
| **Subject:** | Re: Zantac Litigation - PTO 60 Discussion |
| **Attachments:** | (125765250)_(1)_Generic Manufacturers Proposed Amended PTO 60.DOCX |

Thanks Terry. Then let's wait on the meet and confer until you are finished and we have any other constituencies' edits too.

Sent from my iPhone

> On Apr 26, 2021, at 6:49 PM, Henry, Terry M. <THenry@blankrome.com> wrote:
>
> I am opening this invite up to others on Mike's emails, to the extent you would like to participate in this discussion relative to proposed edits to PTO 54.
>
> I am attaching the Generic Manufacturers' proposed amended PTO 60.  This is still circulating among our side, but I believe this is in a form to share it with you all.  Please understand we may still have a few additional edits.
>
> Join Zoom Meeting
> https://us02web.zoom.us/j/81726976645?pwd=MVBvazRuNGU3MXJ3QWFpUm1YRkhmdz09<https://urldefense.proofpoint.com/v2/url?u=https-3A__us02web.zoom.us_j_81726976645-3Fpwd-3DMVBvazRuNGU3MXJ3QWFpUm1YRkhmdz09&d=DwMFAg&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=bKfZ-1kPL3dEtawPokql37Qy9ygWUcxtXNpYPFxR5vY&m=A8a6gDZ87CPxcGb6WG3xZ98FdtmPMcRB1YFQZKwcAXM&s=V4RvTi9F9Tj4EY6qu8o0CZ5QGhAdJ0WaLT9S_JLQDSk&e=>
>
> Meeting ID: 817 2697 6645
> Passcode: 056235
> One tap mobile
> +16465588656,,81726976645#,,,,*056235# US (New York)
> +13017158592,,81726976645#,,,,*056235# US (Washington DC)
>
> Dial by your location
>         +1 646 558 8656 US (New York)
>         +1 301 715 8592 US (Washington DC)
>         +1 312 626 6799 US (Chicago)
>         +1 669 900 9128 US (San Jose)
>         +1 253 215 8782 US (Tacoma)
>         +1 346 248 7799 US (Houston)
> Meeting ID: 817 2697 6645
> Passcode: 056235
> Find your local number:

https://us02web.zoom.us/u/kISmUuMj3<https://urldefense.proofpoint.com/v2/url?u=https-3A__us02web.zoom.us_u_kISmUuMj3&d=DwMFAg&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=bKfZ-1kPL3dEtawPokql37Qy9ygWUcxtXNpYPFxR5vY&m=A8a6gDZ87CPxcGb6WG3xZ98FdtmPMcRB1YFQZKwcAXM&s=UaiKtPlFap-atzpoBdwkHN9V6NKfF5eNoZimB7Al-CU&e=>


******************************************************************************************

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the Blank Rome LLP or Blank Rome Government Relations LLC sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

******************************************************************************************

**Exhibit G**

**Henry, Terry M.**

| | |
|---|---|
| **From:** | Mike McGlamry <mmcglamry@pmkm.com> |
| **Sent:** | Monday, May 17, 2021 11:52 AM |
| **To:** | thompsons@gtlaw.com; Henry, Terry M. |
| **Cc:** | 'DODGE, JAIME LYNNE (jdodge@emory.edu)'; Finken, Tracy; Marlene Goldenberg (mjgoldenberg@goldenberglaw.com) |
| **Subject:** | Zantac-Generics' discovery schedule/PTO 60 modifications |
| **Attachments:** | Plaintiffs' Proposal for Generics' Schedule.docx |

Sara and Terry, attached is Plaintiffs' proposal regarding outstanding discovery schedule issues and PTO 60 modifications for the Generics. We would like to set a meet and confer sometime tomorrow that is convenient for both of you. Please let us know what time works for you. Thanks, Mike.

This agreement is predicated on the recognition that the vast majority of documents that encompass the Generic Defendants' productions in response to the Requests for Production served on January 29, 2021 that are also responsive to Plaintiffs' PV, Manufacturing, and Storage & Transport notices of deposition have already been produced by nearly all of the Generic Defendants and substantial completion of all such productions will be made by June 18, 2021. It is further predicated on the Generic Defendants' agreement to continue to make substantial rolling productions on an ongoing, weekly basis hereafter and well in advance of the following production deadline. Plaintiffs propose the following terms to be incorporated in a modified PTO 60 or, if necessary, a new PTO:

- **July 15:** Deadline to complete production for all documents responsive to Plaintiffs' RFPs served on 01/29/2021 as well as the Notices of Depositions relating to PV, Manufacturing, and Storage & Transport. For any Generic Defendant who appears later as a result of the Court's rulings as to personal jurisdiction, the deadline for those Defendants will be extended to July 30, 2021. On or before the deadline, each Generic Defendant must serve a certification of completion, as described in Plaintiffs' motion to modify PTO 30, ECF No. 3412.

- **August 31, 2021:** Deadline to complete depositions on PV, Manufacturing, and Storage & Transport.  The parties expressly agree and expect that other depositions will be noticed and may be taken during this time. For any Defendant who appears later as a result of the Court's rulings as to personal jurisdiction, the deadline for depositions as to those Defendants will be extended to September 15, 2021.  Plaintiffs do not waive any rights by choosing to move forward with depositions.

- While the final deadline for production of documents responsive to Plaintiffs RFPs served on January 29, 2021 and deposition notices is July 15, 2021, Generic Defendants should not wait until this date (or any date close to it) to complete their productions. Defendants are expected to make substantial rolling productions on at least a weekly basis until their productions are complete.

- Generic Defendants' productions must be substantially complete (as to both custodial and noncustodial sources of data) at least 14 days in advance of a deposition being scheduled and that the vast majority of documents should have been produced well in advance of that date (i.e., 21 days or before).

- Plaintiffs and Generic Defendants shall meet and confer regarding the depositions currently scheduled, and Plaintiffs may decide to move forward with taking the depositions as scheduled, in advance of the production deadline, at their election.  In the event Generic Defendants do not produce as per the preceding paragraph for any deposition, Plaintiffs will have the right to decide to move forward and take the scheduled deposition and have the right to take a second deposition of the scheduled deponent or elect to reschedule the deposition to allow for the productions to be completed timely and properly prepare for the deposition. (PTO 54, Section E(5) shall not apply.)

- Beginning on May 28, 2021, each Defendant must supply Plaintiffs with a production log, containing at a minimum, the information contained in the Template Production Log.  This log must contain information for all productions made to date and must be supplemented

each time a production is made (i.e., at least weekly) and should be sent in Excel format along with the production cover letter. The Special Master should be copied on all production letters.

- The Special Master retains the ability to audit the status of any Generic Defendant's production, including weekly meet and confers or other supervisory assistance, and impose additional deadlines or benchmarks if a Generic Defendant appears not to be producing documents in good faith or quickly enough to allow the parties to comply with any deadlines or scheduling orders imposed by the court.