# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

IN RE: ZANTAC (RANITIDINE)                          MDL No. 2924
PRODUCTS LIABILITY                                   20-MD-2924
LITIGATION

                                    JUDGE ROBIN L. ROSENBERG
                          MAGISTRATE JUDGE BRUCE E. REINHART

_____/

THIS DOCUMENT RELATES TO: ALL CASES


### THE BRAND OTC DEFENDANTS' RULE 12 PARTIAL MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED ECONOMIC LOSS CLASS COMPLAINT AS PREEMPTED BY FEDERAL LAW AND INCORPORATED MEMORANDUM OF LAW

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................2

    A.    The Defendants' Most Recent Motion to Dismiss on Express and Implied
Preemption and the Court's Rulings ................................................................3

    B.    The Current Economic Loss Class Complaint ................................................6

ARGUMENT AND CITATION OF AUTHORITY ..........................................................7

    A.    Implied Preemption Bars Claims That Hinge on Allegations That
Federally Regulated Companies Misled the FDA ..........................................8

    B.    In an Attempt to Avoid Express Preemption of Their OTC Claims,
Plaintiffs Have Pled State-Law Claims That Are Barred by Implied
Preemption ....................................................................................................12

CONCLUSION ................................................................................................................16

i

## **TABLE OF AUTHORITIES**

**Cases**                                                                                              **Page(s)**

*Buckman Co. v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001) ................................................................................................ *passim*

*Caplinger v. Medtronic, Inc.*,
    784 F.3d 1335 (10th Cir. 2015) ...................................................................................12

*Hafer v. Medtronic, Inc.*,
    99 F. Supp. 3d 844 (W.D. Tenn. 2015)........................................................................12

*Leonard v. Medtronic, Inc.*,
    No. 10-CV-03787, 2011 WL 3652311 (N.D. Ga. Aug. 19, 2011) ...........................12

*Markland v. Insys Therapeutics, Inc.*,
    758 F. App'x 777 (11th Cir. 2018) ..............................................................................11

*Marsh v. Genentech, Inc.*,
    693 F.3d 546 (6th Cir. 2012) .........................................................................................8

*Medtronic, Inc. Sprint Fidelis Leads Prod. Liab. Litig., In re*,
    592 F. Supp. 2d 1147 (D. Minn. 2009).......................................................................12

*Mink v. Smith & Nephew, Inc.*,
    860 F.3d 1319 (11th Cir. 2017) ......................................................................... *passim*

*Mut. Pharm. Co. v. Bartlett*,
    570 U.S. 472 (2013).....................................................................................................15

*PLIVA, Inc. v. Mensing*,
    564 U.S. 604 (2011).....................................................................................................15

*Tinkler v. Mentor Worldwide, LLC*,
    No. 19-CV-23372, 2019 WL 7291239 (S.D. Fla. Dec. 30, 2019)............................14

*Trasylol Products Liability Litigation, In re*,
    763 F. Supp. 2d 1312 (S.D. Fla. 2010) ..........................................................11, 12

*Tsavaris v. Pfizer, Inc.*,
    717 F. App'x 874 (11th Cir. 2017) ..............................................................................11

### **Statutes and Regulations**

21 U.S.C. § 337...............................................................................................................2, 8, 12

21 U.S.C. § 355.....................................................................................................................6, 7

21 U.S.C. § 379r .................................................................................................................1

21 C.F.R. § 314.50 ....................................................................................................8, 9, 16

21 C.F.R. § 314.70 ..........................................................................................................8, 9

21 C.F.R. § 314.80 ......................................................................................................8, 16

21 C.F.R. § 314.81 ................................................................................................ *passim*

## INTRODUCTION

All of Plaintiffs' remaining claims contained in the Second Amended Consolidated Economic Loss Class Action Complaint ("Economic Loss Class Complaint") against the Defendants that sold over-the-counter ("OTC") Zantac (the "OTC Defendants") are impliedly preempted under well-established Supreme Court and Eleventh Circuit precedent and this Court's rulings.  Plaintiffs have conceded that their claims in the Economic Loss Class Complaint are tied together by one unifying allegation: "when the [Food and Drug Administration ("FDA")] approved ranitidine, it did not have full and accurate information about ranitidine because, at that time, the Defendants had withheld information about the dangers of ranitidine from the FDA," including the risk of NDMA formation.  *See* June 30, 2021 Order ("Order"), Dkt. 3715, at 31.  Plaintiffs thus claim that it was the OTC Defendants' failure to provide safety information to the FDA that rendered the OTC Zantac label "false and misleading."  Indeed, that is the only allegation that this Court found to have survived *express* preemption under 21 U.S.C. § 379r.  Order, Dkt. 3715, at 36 ("The Court therefore grants the Defendants' Motion in part insofar as any OTC claim not based upon a false or misleading label is dismissed with prejudice as pre-empted.").

Although the OTC Defendants respectfully disagree with this Court's June 30, 2021 ruling that claims premised on this narrow "false-and-misleading" labeling theory survive *express* preemption, that is of no moment.  Straightforward application of this Court's June 30 ruling demonstrates that these remaining claims against the OTC Defendants are *impliedly* preempted because they necessarily hinge upon the contention that the OTC Defendants allegedly hid information from the FDA about the risk of NDMA formation and, thus, deceived the agency.  Order, Dkt. 3715, at 32; *see Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1327–30 (11th Cir. 2017).  Plaintiffs further allege that, had the OTC Defendants disclosed information about the risk of NDMA formation to FDA, then FDA would not have approved OTC Zantac or would have

required OTC Zantac to be removed from the market.  Federal law preempts such private efforts to enforce the FDCA and instead assigns exclusive authority to the federal government to enforce FDCA requirements, as this Court recognized in dismissing the failure-to-warn the FDA claims from this litigation, 21 U.S.C. § 337(a).  *See* Order, Dkt. 3715, at 43–49 (relying on *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348–53 (2001), and *Mink*, 860 F.3d at 1327–30).  Plaintiffs, moreover, have abandoned any other theories of liability.[1]  *Id.* at 29; *see id.* at 36 ("Plaintiffs have abandoned any defense of OTC claims that are not premised upon a false or misleading label.").  Accordingly, this Court should dismiss with prejudice Counts 1 to 385 to the extent they relate to OTC Zantac.[2]

## BACKGROUND

Zantac (ranitidine) is a medication that, for nearly four decades, was approved by the FDA and widely used in prescription and OTC form to treat stomach ulcers, gastroesophageal reflux disease, and other conditions of the stomach and esophagus.  *See, e.g.*, Economic Loss Class Compl. ¶ 318.  FDA has exhaustively and repeatedly reviewed the safety and efficacy of Zantac throughout its lifecycle, and closely regulates the OTC Defendants' sale of the product.  Despite the lack of real-world evidence that Zantac use increases the risk of cancer, Plaintiffs commenced this litigation after a private laboratory's test results allegedly detected the presence of excess NDMA in certain ranitidine products.  Specifically, Plaintiffs claim that scientific studies have

---

[1] Plaintiffs acknowledge that the operative complaint "is drafted and organized based on the Court's recent Orders."  Economic Loss Class Compl., Introduction 4.

[2] Defendants Boehringer Ingelheim Pharmaceuticals, Inc., GlaxoSmithKline LLC, Pfizer Inc., Sanofi US Services Inc., Sanofi-Aventis U.S. LLC, Chattem, Inc., and Patheon Manufacturing Services LLC move only as to OTC products, not prescription Zantac, because of the nature of Plaintiffs' judicial admissions about the narrow scope of their OTC-related claims.  Therefore, this motion would resolve all claims in the Economic Loss Class Complaint as to all defendants named except for GlaxoSmithKline LLC.

demonstrated that ranitidine can transform into a cancer-causing molecule called N-nitrosodimethylamine ("NDMA").  *Id.* ¶¶ 235, 238, 248, 253, 255.

**A.    The Defendants' Most Recent Motion to Dismiss on Express and Implied Preemption and the Court's Rulings**

In March 2021, the Brand Defendants moved to dismiss the then-operative master complaints on preemption grounds.  Dkt. 3114.  At the time, Plaintiffs had not made clear that, as to OTC products, they were presenting a narrow set of claims premised solely on the theory that the OTC Defendants had failed to disclose information to FDA and that FDA would not have approved OTC Zantac (or would have withdrawn approval) had the OTC Defendants done so.  Thus, Defendants' most recent motion to dismiss addressed Plaintiffs' scattershot claims, which made no effort to state a non-preempted claim for refunds of the purchase price of OTC Zantac.  Motion to Dismiss, Dkt. 3114, at 1 ("Plaintiffs have failed to [plead state-law misbranding claims], abandoning any pretense of a 'misbranding' claim or any other state-law claim that remotely 'parallels' federal law.").  When Plaintiffs filed their opposition brief and made concessions at the June 3 and 4, 2021 motions hearing, however, it became apparent that the predicate for *every* OTC claim pursued by Plaintiffs is the allegation that "ranitidine products should never have been approved for OTC status, and were therefore misbranded, because the FDA-approved label was false and misleading and caused harm when taken as directed due to the Defendants' deception."  Order, Dkt. 3715, at 32.  This Court subsequently and correctly held that Plaintiffs had waived or abandoned any other theories of liability, including container-related claims.  *See id.* at 36.

On June 30, 2021, this Court dismissed as expressly preempted all OTC-related claims except for claims in the Amended Consumer Economic Loss Class Complaint premised on the assertion that Zantac was "misbranded" as a matter of federal law because the OTC Defendants allegedly failed to disclose certain information to the FDA.  *Id.* at 50.  The Court found that

3

Plaintiffs' refund claims could be considered parallel to the federal misbranding statute because they alleged that the labeling for Zantac was false and misleading by virtue of information that Defendants did not share with FDA. *Id.* at 31 ("Plaintiffs' allegations . . . are that when the FDA approved ranitidine, it did not have full and accurate information about ranitidine because, at that time, the Defendants had withheld information about the dangers of ranitidine from the FDA").

In concluding that Plaintiffs' claims paralleled the federal misbranding statute, the Court relied upon Plaintiffs' characterization of their claims:

> [T]he Plaintiffs have met the standard [to avoid express preemption] as (i) they have alleged the Defendants withheld information about ranitidine's propensity to form NDMA from the FDA, (ii) they have alleged that the FDA recently learned about ranitidine's propensity to form NDMA, and (iii) they have alleged that the FDA issued a voluntary recall of ranitidine as a result of its receipt of that information.

*Id.* at 32. This Court thus held that the only remaining claims that survived ***express*** preemption were Plaintiffs' claims that the OTC Defendants "withheld information about ranitidine's propensity to form NDMA from the FDA" and, had FDA not been deceived by the OTC Defendants, FDA would never have permitted Zantac to be approved or sold. *Id.*

In the same motion to dismiss, Defendants also moved to dismiss Plaintiffs' failure-to-warn the FDA claims in each of the operative complaints on grounds of implied preemption. Dkt. 3114. Plaintiffs opposed, arguing that their failure-to-warn-through-the-FDA claims were based on duties owed to consumers, not duties owed to the FDA, and that they were merely bringing traditional state-law claims. Order, Dkt. 3715, at 46. This Court rejected Plaintiffs' contentions because they were foreclosed by binding precedent, including the Eleventh Circuit's decision in *Mink*, 860 F.3d 1319, that demonstrated Plaintiffs' failure-to-warn-through-the-FDA claims were

impliedly preempted.  Order, Dkt. 3715, at 46–49.  In particular, this Court explained that *Mink* controlled and required dismissal of the claims premised on failure to disclose information to FDA:

> As in *Mink*, the Plaintiffs seek to hold the Defendants liable for failing to provide product safety information to the FDA.  As in *Mink*, the Plaintiffs fault the Defendants for failing to provide information that is required under federal regulations.  As in *Mink*, the Plaintiffs contend that they are enforcing state common-law duties that the Defendants owe to them.  And as in *Mink*, the Plaintiffs allege that, had the Defendants provided the safety information to the FDA, the FDA would have taken action that would have prevented the Plaintiffs' injuries.
>
> The Eleventh Circuit ruled in *Mink* that claims such as the Plaintiffs' claims are pre-empted because they are "very much" like the claims that the Supreme Court held were pre-empted in *Buckman*.

Order, Dkt. 3715, at 43 (quoting *Mink*, 860 F.3d at 1330).  The Court thus held that implied preemption barred not only Plaintiffs claims that depend on mandatory federal reporting obligations, but also claims based "on failures to communicate with the FDA in ways additional to what the FDA requires."  *Id.* at 48.  This Court reasoned that "such a state-law claim poses an obstacle to the FDA's accomplishment of its objectives" by "deter[ring] drug manufacturers from applying for FDA approval of drugs with potentially beneficial uses out of fear of unpredictable civil liability under state law, and [also] incentiviz[ing] drug manufacturers who have gained market approval to submit to the FDA a 'deluge' of information that the FDA has not said that it wants or needs out of fear of liability under state law, burdening the FDA's ability to evaluate drug safety post-approval."  *Id.* (citing *Buckman*, 531 U.S. at 350–51).  The Court thus dismissed as impliedly preempted Plaintiffs' claims for failure to warn consumers through the FDA.  *Id.* at 49.

B.      **The Current Economic Loss Class Complaint**

The Economic Loss Class Complaint includes two categories of defendants: the Brand Prescription Defendant (GSK) and the Brand OTC Defendants.[3]  Economic Loss Class Compl., ¶¶ 2–23.  Plaintiffs challenge OTC Zantac's labeling as false and misleading and claim that the FDA never would have approved the label had it been apprised of information that the OTC Defendants withheld.  Economic Loss Class Compl. ¶¶ 305–11; *see also id.* ¶¶ 355, 359–60, 382.

Although styled as alleged violations of various state-law consumer protection and deceptive trade practices statutes, common law fraud, and warranty claims, at bottom, each count is merely a refund claim that seeks to impose state-law liability for the OTC Defendants' alleged deceptive conduct toward the FDA.  Order, Dkt. 3715, at 28–32.  "The Plaintiffs contend that there is one fundamental premise underpinning all of their claims: the ranitidine label needed to warn about the risk of NDMA and cancer in order to avoid misleading consumers about the true nature of the product they were purchasing."  *Id.* at 28.  Plaintiffs claim that "ranitidine products should never have been approved for OTC status, and were therefore misbranded, because the FDA-approved label was false and misleading and caused harm when taken as directed due to the Defendants' deception."  *Id.* at 32.  The deception alleged in the complaint is, by necessity, directed at the FDA because that agency repeatedly approved every word contained in each iteration of the OTC Zantac label.  21 U.S.C. § 355(d).  Those agency actions entail a finding, based on

_____

[3] The 110 putative class Plaintiffs seek to represent state-wide classes of plaintiffs under the laws of various states.  Relying on conclusory allegations in the Economic Loss Class Complaint, Plaintiffs seek to hold the OTC Defendants liable for purportedly failing to "disclose material facts on the labels for [their] Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer."  *See, e.g.*, Economic Loss Class Compl. ¶ 406.  Plaintiffs seek refunds of the purchase price for OTC formulations of Zantac.  Economic Loss Class Compl., Counts 1 to 385.

information submitted to FDA, that the label was *not* false or misleading.  *Id.* § 355(d)(7) (providing that the FDA must "issue an order refusing to approve" a new drug application if "based on a fair evaluation of all material facts, *such labeling is false or misleading in any particular*" (emphasis added)).

Indeed, Plaintiffs explicitly base their claims on the OTC Defendants' alleged failure to submit truthful, complete information to the FDA as the "deception" that purportedly renders the label "false and misleading."  They claim that the OTC Defendants "failed to report [the following] risks to the FDA": (1) "that ranitidine exposed users to unsafe levels of NDMA," (2) "the ranitidine-NDMA link," and (3) "significant new information affecting the safety or labeling of Ranitidine-Containing Products."  Economic Loss Class Compl. ¶¶ 305–09.  Plaintiffs further claim that the Defendants failed to report this information to the FDA using various reporting mechanisms, including annual reports and unspecified "disclosures."  *Id.* ¶ 307 (citing 21 C.F.R. §314.81(b)(2)).

## ARGUMENT AND CITATION OF AUTHORITY

The OTC Defendants respectfully disagree with the Court's express preemption ruling,  but they do not seek to relitigate it here.  That is because Plaintiffs' repleaded claims are impliedly preempted: they are based entirely on the theory that the OTC Defendants deceived FDA and, because of that purported deception, FDA approved OTC Zantac labels and, ultimately, consumers were not warned.  Under *Buckman*, *Mink*, and this Court's June 30 Order, implied preemption bars Plaintiffs' remaining refund claims against the OTC Defendants because all of the claims require an allegation that the OTC Defendants misled the FDA, a federal duty upon which private plaintiffs may not rely.  *See* Order, Dkt. 3715, at 30–32.

Specifically, Plaintiffs allege that the OTC Defendants violated *federal* regulations by purportedly failing to include information about NDMA formation and risks in submissions to the FDA. Economic Loss Class Compl. ¶ 305 (alleging that defendants failed to report to the FDA that "ranitidine exposed users to unsafe levels of NDMA"). These claims seek to enforce federal regulations that require submission of risk information in connection with a New Drug Application ("NDA"), 21 C.F.R. § 314.50, to supplement that risk information to FDA after approval, *id.* § 314.80, § 314.81, and to change a product label under certain circumstances, *id.* § 314.70. Specifically, Plaintiffs claims that the OTC Defendants "engaged in a national, pervasive, and decades-long campaign to conceal the inherent dangers and risks associated with ranitidine use." *Id.*, Introduction 3. The refund claims are thus predicated on enforcement of federal requirements and the alleged failure to tell the *FDA* information about the risk of NDMA formation. Such claims are impliedly preempted and should be dismissed with prejudice. *Buckman*, 531 U.S. at 348–53.

## A.    Implied Preemption Bars Claims That Hinge on Allegations That Federally Regulated Companies Misled the FDA

In enacting the FDCA, Congress declined to create a private cause of action of the type Plaintiffs assert here, and moreover, affirmatively required that any action to enforce the FDCA "shall be by and in the name of the United States." 21 U.S.C. § 337(a). The statute unequivocally mandates that the FDCA and its implementing regulations be "enforced exclusively by the Federal Government." *Buckman*, 531 U.S. at 352. Through § 337(a), Congress impliedly preempted any private action seeking to enforce the FDCA and its implementing regulations. Therefore, any claim that relies on the FDCA or its regulations "'[a]s a critical element'" is barred by § 337(a). *Marsh v. Genentech, Inc.*, 693 F.3d 546, 553 (6th Cir. 2012) (quoting *Buckman*, 531 U.S. at 353). Plaintiffs' claims predicated on the OTC Defendants' purported failure to meet an obligation to

8

submit information to the FDA, before or after NDA approval, are impliedly preempted because these claims seek to enforce federal law.

For example, FDA regulations require any manufacturer seeking approval by an NDA (the mechanism through which OTC Zantac was approved) to submit detailed information, such as a summary that "discuss[es] all aspects of the NDA," the "proposed text of the labeling," and "the potential clinical benefits of the drug product." 21 C.F.R. § 314.50(c). The regulations also require disclosures regarding the medication's chemistry, stability, manufacturing, containers, quality, purity, nonclinical pharmacology, toxicology, human pharmacokinetics and bioavailability, clinical data, the benefit and risk considerations related to the drug, proposed postmarketing studies or surveillance, and proposed expiration dating. *Id.* § 314.50(c)–(d). Federal regulations further require manufacturers to supplement the information provided to FDA in annual reports and other post-marketing reports. *See, e.g.*, *id.* § 314.70, § 314.81. Plaintiffs' allegations seek to enforce these federal regulations that require manufacturers to provide safety information to the FDA before and after approval. *See* Economic Loss Class Compl. ¶¶ 305–11.

This Court's June 30 Order explained why claims relying on failure-to-warn FDA theories are impliedly preempted under *Buckman* and *Mink*. Order, Dkt. 3715, at 39–43. In *Buckman*, patients who claimed that they were injured by a medical device brought state-law fraud claims against a company for misrepresentations that it allegedly made to the FDA in the course of assisting the device's manufacturer in obtaining FDA approval to market the device. *Buckman*, 531 U.S. at 343. The patients contended the defendant had represented to the FDA that the device would be marketed for use in bones in the arms and legs, and the FDA approved it on that basis, when in fact the device was intended for the spine. *Id.* at 346–47. The Supreme Court held the claims impliedly preempted for five reasons. First, FDA has the congressionally created and

9

exclusive power to punish companies that make misrepresentations to it.  *Id.* at 348–49 & n.4. Second, giving the FDA the discretion and flexibility to employ its enforcement options was "a critical component of the statutory and regulatory framework under which the FDA pursues difficult (and often competing) objectives."  *Id.* at 349–50.  Third, permitting state-law claims premised upon alleged misrepresentations to the FDA would "dramatically increase the burdens" that applicants for FDA approval face and could discourage and deter potential applicants from seeking FDA approval out of fear of exposure to unpredictable civil liability.  *Id.* at 350–51. Fourth, permitting state-tort liability would result in the FDA being deluged with "information that [it] neither wants nor needs" out of fear that disclosures to the FDA may later be judged by a jury to be insufficient under state law.  *Id.* at 351.  Fifth, a state-law claim relating to fraud on the FDA existed "solely by virtue of the FDCA disclosure requirements" and did not rely on "traditional state tort law which had predated" the FDCA.  *Id.* at 352–53.

In *Mink*, the Eleventh Circuit applied the reasoning in *Buckman* to hold that federal law impliedly preempted a state-law negligence claim based on failure to report information about a medical device to the FDA.  860 F.3d at 1330.  As this Court explained in its June 30 Order, the plaintiff's "negligence claim was based in part on the manufacturer's alleged failure to report known or knowable safety information about the device to the FDA, including through the submission of annual reports, adverse event reports, and device defect reports required under federal regulations."  Order, Dkt. 3715, at 41.  The plaintiff argued that his state common-law claim was merely parallel to federal requirements, but the Eleventh Circuit flatly rejected that contention.  *Mink*, 860 F.3d at 1330.  Construing his claim as a negligent failure-to-warn claim, the court reasoned that the plaintiff's "theory of liability [was] based on a duty to file a report with the FDA" and was "very much like the 'fraud-on-the-FDA' claim the Supreme Court held was

impliedly preempted in *Buckman*." *Id.* The Eleventh Circuit recognized that the plaintiff's claim was a failure-to-warn-through-the-FDA claim in disguise. *See id.* ("In both cases, a plaintiff alleged a manufacturer failed to tell the FDA those things required by federal law."). Such claims are not within the traditional province of state law. *See id.*

The Eleventh Circuit has repeatedly applied and reaffirmed *Mink* and found that implied preemption forecloses similar efforts by individuals to enforce FDA reporting requirements and other FDCA regulations. *See, e.g.*, *Markland v. Insys Therapeutics, Inc.*, 758 F. App'x 777 (11th Cir. 2018) (per curiam) (claim premised on violation of FDCA's off-label marketing regulations preempted); *Tsavaris v. Pfizer, Inc.*, 717 F. App'x 874, 877 (11th Cir. 2017) (per curiam) (federal law preempts plaintiff's claim that drug manufacturer "was negligent for failing to fulfill its duty to report findings about its product to the [FDA]" and thereby "seeks to enforce a duty owed to a federal agency" without which "her cause of action would not exist").[4]

That a claim might be styled as a state-law tort claim is immaterial because, in substance, the allegations amount to an effort to enforce purported requirements of federal law and improperly interferes with the relationship between FDA and the regulated manufacturers. *See Mink*, 860 F.3d at 1329; *Markland*, 758 F. App'x at 779–80 (holding plaintiff's claim "styled as a 'negligent marketing' claim" was impliedly preempted where "the substance of [plaintiff's] complaint" was that the manufacturer "violated federal law" that prohibited off-label marketing). Judge Middlebrooks carefully evaluated this issue in *In re Trasylol Products Liability Litigation*, 763 F. Supp. 2d 1312 (S.D. Fla. 2010), and concluded that preemption applies not only where plaintiffs assert a "separate fraud-on-the-FDA claim but also where a plaintiff seeks to prove fraud on the

---

[4] District courts within the Eleventh Circuit have similarly applied *Mink*'s reasoning to find analogous claims barred by preemption. *See* Order, Dkt. 3715, at 42–43 (collecting cases).

FDA in order to bring a traditional state-law torts suit." *Id.* at 1325. Judge Middlebrooks further observed, "[i]f the Court were to find fraud-on-the-FDA when the FDA itself has not made such a finding, the Court would be intruding upon the FDA's right to police itself and second-guessing what the FDA would have done had it received the information that was allegedly withheld from it by the defendant-company." *Id.* at 1325.[5] Thus, implied preemption does not depend on whether the state law recognizes a duty to warn through the FDA; rather, federal preemption prohibits states from enforcing federal requirements under the common law or state statutory claims, especially where the claim hinges on alleged deception of the FDA. *Buckman*, 531 U.S. at 348–53.

## B.   In an Attempt to Avoid Express Preemption of Their OTC Claims, Plaintiffs Have Pled State-Law Claims That Are Barred by Implied Preemption

This Court decided that claims based on deceiving the FDA survived *express* preemption, but it did not consider whether implied preemption barred these remaining claims in the Economic Loss Complaint. Just as in *Mink* and *Buckman*, Plaintiffs impermissibly seek to hold the OTC Defendants liable for failing to provide federally required product-safety information to the FDA. *See* Order, Dkt. 3715, at 28–32. Plaintiffs make numerous allegations regarding Defendants' alleged failures to make fulsome and timely disclosures to FDA. Economic Loss Class Compl.

---

[5] *See also Leonard v. Medtronic, Inc.*, No. 10-CV-03787, 2011 WL 3652311, at *7 (N.D. Ga. Aug. 19, 2011) ("[A] private litigant cannot bring a state-law claim against a defendant when the state-law claim is in substance (even if not in form) a claim for violating the FDCA." (quoting *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009)); *accord, e.g.*, *Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1339 (10th Cir. 2015) ("[Section] 337(a) preempts any state tort claim that exists 'solely by virtue' of an FDCA violation[.]"); *Hafer v. Medtronic, Inc.*, 99 F. Supp. 3d 844, 856 (W.D. Tenn. 2015) ("A plaintiff cannot bring a state-law claim that is in substance a claim to enforce the FDCA."). In other words, "[p]laintiffs cannot make an end run around [§ 337(a)] by recasting violations of the FDCA as violations of state common law." *In re Medtronic, Inc. Sprint Fidelis Leads Prod. Liab. Litig.*, 592 F. Supp. 2d 1147, 1161 (D. Minn. 2009).

¶¶ 305–11 ("Defendants failed to report these risks to the FDA.").  Plaintiffs cite annual reporting obligations, *id.* ¶ 307 (citing 21 C.F.R. §314.81(b)(2)), and FDA's reliance on manufacturers "to bring new information about an approved drug like ranitidine to the agency's attention," *id.* ¶ 306. Plaintiffs go further to claim that "the FDA was never able to reject any proposed warning or proposal for storage/transport [of Ranitidine-Containing Products]."  *Id.* ¶ 311.  These allegations undergird each of Plaintiffs' various causes of action, including state consumer protection statutes, common-law unjust enrichment, common-law breach of quasi-contract, and breach of implied warranty.  *See, e.g.*, Economic Loss Class Compl. ¶ 406 (claiming, under Arizona Consumer Fraud Act, defendant "conceal[ed] and fail[ed] to disclose material facts on the labels for its Ranitidine-Containing Products"); *id.* ¶ 422 (alleging "Defendant did not disclose [Ranitidine-Containing Products] contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption" to support Arizona unjust enrichment theory); *id.* ¶ 448 (same allegation supporting Alaska quasi-contract claim); *id.* ¶ 476 ("Each Ranitidine-Containing Product sold by Defendant comes with an implied warranty . . . , including impliedly warrantying on the labels for its Ranitidine-Containing Products that the products were safe and/or did not cause cancer or cause an unreasonable risk of cancer if used within the expiration dates on its labels.") (Arkansas implied warranty claim).

Plaintiffs' claims fail for the same reason as those at issue in *Mink* and *Buckman*.  *See Mink*, 860 F.3d at 1330.  At bottom, Plaintiffs' claims are grounded in the allegation that the OTC Defendants failed to submit information to the FDA—an allegation that the Supreme Court, the Eleventh Circuit, and this Court have rejected as impliedly preempted.  *See Buckman*, 531 U.S. at 350.  Just as in *Buckman*, Plaintiffs here are trying to get past the motion-to-dismiss stage based on an identical theory about deceptive submissions to the FDA.  *See, e.g.*, Economic Loss Class

Compl. ¶¶ 305–09 ("Defendants concealed the ranitidine-NDMA link from ordinary consumers in part by not reporting it to the FDA, which relies on drug manufacturers (or others, such as those who submit citizen petitions) to bring new information about an approved drug like ranitidine to the agency's attention."). But, as this Court aptly explained, the "Eleventh Circuit declined to draw a distinction between claims for telling the FDA something that was wrong (the fraud claims in *Buckman*) and claims for not telling the FDA something (the failure-to-warn claim in *Mink*)." Order, Dkt. 3715, at 43–44.

Plaintiffs' claims cannot piggyback on duties owed to the FDA by attempting to invoke the agency's gatekeeping role between the manufacturer and the public. A manufacturer's obligation to be truthful to the FDA only exists by virtue of federal regulations that private plaintiffs have no right to enforce. *See Tinkler v. Mentor Worldwide, LLC*, No. 19-CV-23372, 2019 WL 7291239, at *5 (S.D. Fla. Dec. 30, 2019). To the extent Plaintiffs attempt to argue that their claims are premised on a duty owed directly to them (thus, side-stepping the FDA), the Eleventh Circuit in *Mink* found that to be a hollow distinction. Order, Dkt. 3715, at 46 (citing *Mink*, 0:15-cv-61210-BB, DE 29 at 12–13); *see also Mink*, 860 F.3d at 1330. Rather, these claims hinge entirely upon alleged deficiencies in information submitted to FDA.

Another flaw in Plaintiffs' theory is its dependence on an improper and speculative inference that, had the OTC Defendants disclosed additional information to FDA, OTC Zantac would not have received FDA approval as both safe and effective. *See, e.g.*, Economic Loss Class Compl. ¶¶ 305–09, 355, 382. This is a variant of the "stop-selling" rationale that the Supreme

14

Court has rejected.  *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 488 (2013).  Just as a defendant need not "stop selling" an FDA-approved product to avoid state-tort liability, defendants should not have to refrain from starting to sell a medication authorized by federal law and approved by FDA as safe and effective, merely in an effort to avoid state-law liability.  *See id.*  Plaintiffs' theory of liability also would intrude directly into discretionary recall decisions committed to the FDA exclusively, not private litigants.  *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 623 (2011) ("To consider in our pre-emption analysis the contingencies inherent in these cases—in which the Manufacturers' ability to comply with state law depended on uncertain federal agency and third-party decisions—would be inconsistent with the . . . the Supremacy Clause.").

In fact, the very essence of the Plaintiffs' Economic Loss Class Complaint is that if the FDA had been warned of the purported risk of NDMA formation, the agency would not have approved OTC Zantac, would have required that it stopped being sold, or would have required a change to the FDA-approved label.  Economic Loss Class Compl. ¶¶ 305–09 (claiming that the OTC Defendants misled and deceived the FDA); *id.* ¶¶ 355, 382 (alleging that expiration dates on Zantac reflected that the OTC Defendants had misled the FDA because "FDA expressly recognizes that an initial expiration date may not be the final expiration date") (citing 1 C.F.R. § 211.166(b)); *id.* ¶ 395 ("Because they failed to include appropriate expiration dates on their products, Defendants made false statements in the labeling of their products."); *id.* ¶ 397 ("Because they failed to package their products in appropriate container sizes, [the OTC Defendants] made false statements in the packaging of their products.").

In addition to the similarity of the claims here to the claims in *Buckman* and *Mink*, the FDA's interest in exercising its own authority was critical to the holding in each case.  The FDA is empowered before and after approving an NDA to detect, deter, and punish a drug

manufacturer's failure to comply with federally imposed reporting requirements. *See Buckman*, 531 U.S. at 348–49. This regulatory framework—not state-court tort actions—is what permits the FDA to "use its discretion and judgment to determine how to respond to a reporting violation, taking into consideration such factors as the magnitude of the violation, the safety and effectiveness of the drug at issue, and the consequences of removing the drug from the market." Order, Dkt. 3715, at 44–45 (citing 21 C.F.R. § 314.80(k), § 314.81(d)); *see also* 21 C.F.R. § 314.50. As the Court held in *Buckman*, allowing Plaintiffs' claims to proceed would undermine this carefully crafted federal framework. 531 U.S. at 350–51.

In short, Plaintiffs' remaining claims against the OTC Defendants—those that the Court has not already found barred by express preemption—"exist solely by virtue of [federal law]" and are therefore impliedly preempted. *Buckman*, 531 U.S. at 353.

## <u>CONCLUSION</u>

For the foregoing reasons, the OTC Defendants respectfully request that the Court dismiss with prejudice as impliedly preempted all Counts in the Economic Loss Class Complaint against the OTC Defendants.

Dated:  August 23, 2021

Respectfully submitted,

By:    */s/ Anand Agneshwar*
Anand Agneshwar
**ARNOLD & PORTER**
**KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
Fax: (212) 836-8689
anand.agneshwar@arnoldporter.com

Daniel S. Pariser
Paige H. Sharpe
601 Massachusetts Avenue, NW
Washington, DC  20001
Tel: (202) 942-5000
Fax: (202) 942-5999
daniel.pariser@arnoldporter.com
paige.sharpe@arnoldporter.com

Loren Brown
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
Tel: (212) 335-4500
Fax: (212) 884-8543
loren.brown@dlapiper.com

Ilana H. Eisenstein
Rachel A.H. Horton
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Tel: (215) 656-3300
ilana.eisenstein@dlapiper.com
rachel.horton@dlapiper.com

Matthew A. Holian
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Tel: (617) 406-6009
Fax: (617) 406-6109
matt.holian@dlapiper.com

*Attorneys for Defendants Sanofi US Services*
*Inc., Sanofi-Aventis U.S. LLC, and Chattem, Inc.*

17

*/s/ Andrew T. Bayman*
Andrew T. Bayman
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, Georgia 30309
Tel: (404) 572-3583
Fax: (404) 572-5100
abayman@kslaw.com

*Attorney for Defendant Boehringer Ingelheim*
*Pharmaceuticals, Inc.*

*/s/ Mark Cheffo*
Mark Cheffo
Judy Leone
Will Sachse
Lindsey Cohan
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10019
Tel: (212) 689-3500
Fax: (212) 689-3590
mark.cheffo@dechert.com
judy.leone@dechert.com
will.sachse@dechert.com
lindsey.cohan@dechert.com

*Attorneys for GlaxoSmithKline LLC*

*/s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli
M. Elaine Horn
Jessica B. Rydstrom
**WILLIAMS & CONNOLLY LLP**
725 12th Street NW
Washington, DC 20005
Tel: (202)-434-5000
Fax: (202)-434-5029
jpetrosinelli@wc.com
ehorn@wc.com
jrydstrom@wc.com

*Attorneys for Defendant Pfizer Inc.*

18

*/s/ Christopher R. Carton*
Christopher R. Carton, Esq.
Erica S. Mekles, Esq.
**BOWMAN AND BROOKE LLP**
317 George Street, Suite 320
New Brunswick, NJ 08901
Tel: (201) 577-5176
christopher.carton@bowmanandbrooke.com
erica.mekles@bowmanandbrooke.com

*Attorneys for Defendant Patheon*
*Manufacturing Services LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of August, 2021, the foregoing Brand OTC Defendants' Rule 12 Partial Motion To Dismiss Plaintiffs' Second Amended Economic Loss Class Complaint As Preempted By Federal Law And Incorporated Memorandum Of Law was filed electronically through the Court's CM/ECF system, which will send notice of filing to all CM/ECF participants.

*/s/ Anand Agneshwar*
Anand Agneshwar