**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IN RE: ZANTAC (RANITIDINE)                                MDL NO 2924
PRODUCTS LIABILITY                                        20-MD-2924
LITIGATION

                                                JUDGE ROBIN L. ROSENBERG
                                        MAGISTRATE JUDGE BRUCE E. REINHART

_____/

**THIS DOCUMENT RELATES TO:  ALL CASES**


**PLAINTIFFS' OPPOSITION TO THE BRAND OTC DEFENDANTS' RULE 12**
**PARTIAL MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED ECONOMIC**
**LOSS CLASS COMPLAINT AS PREEMPTED BY FEDERAL LAW**



DATED: September 9, 2021

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT .......................................................................................................................... 4

    I.    Legal Overview ........................................................................................................ 4

        A.    Motion to Dismiss Standard........................................................................ 4

        B.    Preemption ................................................................................................... 4

    II.    The SELC's Claims Easily Avoid Implied Preemption. ......................................... 5

        A.    Claims Based on a Product Itself Are Nothing Like the Claims in *Buckman*. .... 5

        B.    The Claims Are Not "Very Much Like" Fraud-On-The-FDA Claims. ............... 7

    III.    Defendants' Motion Relies on Misunderstanding Plaintiffs' Theories. ........................ 9

        A.    Defendants Ignore the Pleading. ........................................................................ 10

        B.    Defendants Mischaracterize This Court's Order. ............................................. 11

    IV.    Defendants' Contrary Interpretation Nullifies Preemption Case Law......................... 13

    V.    Defendants Have Not Sufficiently Briefed Any State-Specific Arguments ................. 14

CONCLUSION...................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .......................................................................................................4

*Bates v. Dow Agrosciences LLC,*
    544 U.S. 431 (2005) ................................................................................................7, 13

*Buckman Co. v. Plaintiffs' Legal Comm.,*
    531 U.S. 341 (2001) ........................................................................................... *passim*

*Desiano v. Warner-Lambert & Co.,*
    467 F.3d 85 (2d Cir. 2006) ..........................................................................................9

*Garcia v. Wyeth-Ayerst Lab'ys,*
    385 F.3d 961 (6th Cir. 2004) .......................................................................................9

*Merck Sharp & Dohme v. Albrecht,*
    139 S. Ct. 1668 (2019) .................................................................................................4

*Mink v. Smith & Nephew, Inc.,*
    860 F.3d 1319 (11th Cir. 2017) ........................................................................ *passim*

*PLIVA, Inc. v. Mensing,*
    564 U.S. 604 (2011) ...................................................................................................13

*Quiller v. Barclays Am./Credit, Inc.,*
    727 F.2d 1067 (11th Cir. 1984) ...................................................................................4

*Tamayo v. Blagojevich,*
    526 F.3d 1074 (7th Cir. 2008) .....................................................................................4

*Wyeth v. Levine.*
    555 U.S. 555 (2009) ........................................................................................... *passim*

**Statutes**

21 U.S.C. § 352(a)(1) ..........................................................................................................3

21 U.S.C. § 379r(e) .........................................................................................................4, 7

Ark. Code Ann. §4-88-101, *et seq.* ..........................................................................8, 11, 14

Mich. Comp. Laws § 600.2946(5)(a) .................................................................................9

**Other Authorities**

73 FR 49603-01 ...................................................................................................................14

Fed. R. Civ. P. 12...........................................................................................................1, 15

Plaintiffs submit this memorandum of law in opposition to the Brand OTC Defendants' Rule 12 Partial Motion to Dismiss Plaintiffs' Second Amended Economic Loss Class Complaint (SELC) as preempted by federal law.  *See* D.E. 4107 (OTC Mot.).

## INTRODUCTION

Under well-pleaded allegations this Court has already scrutinized, Plaintiffs asserted the ***label*** for OTC Zantac was inadequate, in violation of both state and federal law.  That is so because the ***label*** violates state-law standards and the federal misbranding statute.  Plaintiffs' theory is that state-law liability flows from the inadequate label, OTC Defendants *could have* changed their label (avoiding impossibility preemption), and that doing so was *mandatory* under federal law (avoiding the OTC express preemption provision).  That is sufficient to avoid each type of preemption asserted by Defendants.

Defendants' contrary argument is that Plaintiffs' claims intrinsically rely on an allegation that Defendants deceived the FDA during the Zantac approval process, and because such an allegation can be made to sound like implied preemption, the claims fail.  The first problem is that Plaintiffs did not plead any such claims.  The information the FDA had is relevant because it defeats Defendants' affirmative defense.  The second problem is this Court did not rule that Plaintiffs must show deception or a tainted approval process.  It ruled only that Plaintiffs' claims were parallel because the pleading properly alleged that the Zantac label was false or misleading. With those distortions shorn away, Defendants' argument is simply that they should prevail because the FDA approved their label, and the agency's judgment cannot be impeached.

What Defendants are really saying is this: "Where the FDA determines, in accordance with its statutory mandate, that a drug is on balance 'safe,' our conflict pre-emption cases prohibit any State from countermanding that determination.  *See*, *e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*,

531 U.S. 341, 348 (2001)." That statement—complete with its *Buckman* citation—comes from the *dissent* in *Wyeth v. Levine*. 555 U.S. 555, 609 (2009) (Alito, J. dissenting). The *majority* opinion criticized "the dissent's reliance on *Buckman*" as "especially curious, as that case involved state-law fraud-on-the-agency claims, and the Court distinguished state regulation of health and safety." 555 U.S. at 565 n.3. The critical line is not, and cannot be, between cases that do involve compliance with FDA regulations on which the FDA has enforcement discretion and cases that do not. That contention sweeps too broadly. Essentially *every* valid claim under *Wyeth* will involve some kind of violation of FDA regulations (at minimum, for example, that the label is false or misleading). Not all such claims could possibly be "fraud-on-the-FDA" claims.

Instead, as the Eleventh Circuit has explained, courts should assess whether a Plaintiff's claims fall within a "narrow gap." "To make it through, a plaintiff has to sue for conduct that violates a federal requirement (avoiding express preemption), but cannot sue only because the conduct violated that federal requirement (avoiding implied preemption)." *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1327 (11th Cir. 2017). The SELC Plaintiffs have sued because the Zantac label was false, misleading, and deceptive, and for that reason Defendants are liable under state law regulating advertising, sales, and so forth. False or misleading labels *also* violate federal law (which defeats any preemption defense), but federal law is not the basis of the claims. Regulation of deceptive advertising and labels are areas of traditional state control, and the presumption against preemption applies in full.

## BACKGROUND

This multidistrict litigation commenced after the FDA, each Defendant, and regulators worldwide withdrew OTC Zantac from the market. Most recently, this Court denied Defendants' motion to dismiss the OTC claims in the Second Amended Consolidated Economic Loss Class

Action Complaint (SELC) on express preemption grounds.  D.E. 3715 (Order).  Plaintiffs argued that the express preemption provision did not apply because "the parallel duty in this case is the duty to create a non-misleading label, a label that would have warned the Plaintiffs about the risk of cancer associated with the consumption of ranitidine."  *Id.* at 19.

The Court noted that "Plaintiffs contend that there is one fundamental premise underpinning all of their claims: the ranitidine label needed to warn about the risk of NDMA and cancer in order to avoid misleading consumers about the true nature of the product they were purchasing."  *Id.* at 28.  The state law duties were diverse, but "the federal duty at issue is only the duty to have an accurate label," which "is sourced in 21 U.S.C. § 352(a)(1), which prohibits a drug label that is 'false or misleading in any particular,' as well as § 352(f), which requires adequate warnings on a label."  *Id.* at 29.  The Court ruled that "Plaintiffs' interpretation of federal law is grounded in the plain wording of the misbranding statute."  *Id.* at 30.

However, the Court determined it "need not decide whether the definition of federal misbranding is limited to § 352 or, alternatively, consists of the higher standard articulated in *Bartlett*." *Id.* at 32.  That was because Plaintiffs prevailed on either theory.  Plaintiffs alleged that the FDA never considered "ranitidine's propensity to form NDMA," "the FDA recently learned about ranitidine's propensity to form NDMA," and "that the FDA issued a voluntary recall of ranitidine as a result of its receipt of that information."  *Id.* at 32.  The Court agreed with "the common-sense statement" in *Wyeth*:

> Initial approval of a label amounts to a finding by the FDA that the label is safe for purposes of gaining federal approval to market the drug.  It does not represent a finding that the drug, as labeled, can

> never be deemed unsafe by later federal action, or . . . the application
> of state law.

*Id.* (quoting 555 U.S. at 592 (Thomas, J., concurring)).  The Court concluded that "the Plaintiffs'

OTC claims are sufficiently parallel to § 379r that the claims may proceed against the Defendants."

*Id.* at 36.

**ARGUMENT**

## I.      Legal Overview

### A.      Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citation omitted).  When a defendant raises a "demanding" affirmative

defense like preemption, *Merck Sharp & Dohme v. Albrecht*, 139 S. Ct. 1668, 1678 (2019) (quoting

*Wyeth*, 555 U.S. at 573), "a complaint may be dismissed" only "when its own allegations indicate

the existence of an affirmative defense," *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069

(11th Cir. 1984); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008).

### B.      Preemption

Implied objects and purposes preemption may apply when state law attempts to regulate a

"relationship" that is "inherently federal in character because [it] originates from, is governed by,

and terminates according to federal law." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341,

347 (2001).  When state-law claims seek to impose liability on a manufacturer for committing

"fraud-on-the-FDA," those claims "inevitably conflict with the FDA's responsibility to police

fraud consistently with the Administration's judgment and objectives." *Id.* at 350.  This is so

because actual "fraud-on-the-FDA" claims "exist *solely* by virtue" of the federal regulations

regulating the disclosures that manufacturers must make to the FDA.  *Id.* at 352–53 (emphasis

4

added).  By contrast, when a state-law claim relies on "traditional state tort law which had predated the federal enactments in question," the claim is *not* preempted.  *Id.* at 353.

## II.    The SELC's Claims Easily Avoid Implied Preemption.

The claims at issue here fit squarely within the gap allowed by Eleventh Circuit precedent. As the Eleventh Circuit explained, express and implied "preemption, operating in tandem, have created what some federal courts have described as a 'narrow gap' for pleadings.  To make it through, a plaintiff has to sue for conduct that *violates* a federal requirement (avoiding express preemption), but cannot sue *only because* the conduct violated that federal requirement (avoiding implied preemption)."  *Mink*, 860 F.3d at 1327 (emphasis added, citation omitted).  This Court already ruled that the SELC's claims plausibly violate the federal misbranding requirement.  Now the question: do Plaintiffs sue *only because* Defendants violated the misbranding statute?  The answer is plainly no, since they are suing due to misrepresentations on the product's label that violate traditional state law.

### A.    Claims Based on a Product Itself Are Nothing Like the Claims in *Buckman*.

The Eleventh Circuit has set forth a functional standard for implied preemption.  It has explained that a failure "to file a report with the FDA . . . is very much like the 'fraud-on-the FDA' claim the Supreme Court held was impliedly preempted in *Buckman*."  *Mink*, 860 F.3d at 1330. The fraud-on-the-FDA claims in *Buckman* had a number of unusual features.  The Brief for the United States articulated those features well in distinguishing the case from *Medtronic*:

> The situation here is fundamentally different. Respondents' fraud-on-the-FDA claims do not depend on any showing that the device had a defective design, was negligently manufactured, or did not bear adequate warnings under state law. Instead, respondents simply contend that, but for petitioner's alleged misrepresentations to FDA, the agency would not have cleared the device for marketing, the device would not have been marketed, and they would not have been injured. Respondents' claim therefore does not focus on the device

> itself, on the manner in which it was designed, produced, and distributed, or on a State's legitimate interest in those subjects. It focuses, rather, on the relationship between the federal government and the entities it regulates.

Brief for the United States as Amicus Curiae Supporting Petitioner, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) (No. 98-1768), 2000 WL 1364441, at *17-18.  The Supreme Court picked up on these factors:

> [I]t is clear that the *Medtronic* claims arose from the manufacturer's alleged failure to use reasonable care in the production of the product, not solely from the violation of FDCA requirements. In the present case, however, the fraud claims exist solely by virtue of the FDCA disclosure requirements. Thus, although *Medtronic* can be read to allow certain state-law causes of actions that parallel federal safety requirements, it does not and cannot stand for the proposition that any violation of the FDCA will support a state-law claim.

*Buckman*, 531 U.S. at 352–53.

Clearly, the most important factor in both discussions is a defect in the *product* versus in the *process*.  The rest flows from this core.  Regulating products that reach consumers is the ordinary province of states, while regulating a process involving an agency is novel, and not an area of core state concern.  This dichotomy is reflected in *Mink's* discussion of claims "very much like" the fraud-on-the-FDA claims at issue in *Buckman*.  *Mink*, 860 F.3d at 1330.  Mink's "failure to report theory is impliedly preempted" because, first, it was not about the *product*, but was "based on a duty to file a *report* with the FDA."  *Id.*  Second, as in *Buckman*, the substantive law governing the claim turned on what a manufacturer was obligated "to tell the FDA . . . [under] *federal* law."  *Id.*  Third, the claim "is not one that state tort law has traditionally occupied."  *Id.*  By contrast, a "manufacturing defect theory" survived, even though it was based on negligence per se, incorporating federal standards.  *Id.*

*Buckman* also discusses the FDA's sole authority to enforce the FDCA and the risks of excess paperwork, but that section is not freestanding, and is especially inapplicable here. It makes good sense to say that where a claim is based *only* on a defendants' relationship with the FDA (not any issue with the product), a good reason to preempt such non-traditional claims is the mischief they could cause. But where a claim is *not* about the FDA process, the mere effect of incentivizing extra filings with the FDA or producing regulatory uncertainty is not sufficient to produce preemption because, as *Bates* explains, that amounts to an "occurrence that merely motivates an optional decision" and imposing preemption would "greatly overstate the degree of uniformity and centralization" required by federal law. *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 443, 450 (2005). This case is much more like *Wyeth*. While it is no doubt true that *Wyeth* has increased the number of CBE submissions (especially as Defendants may repeatedly seek similar changes to establish a record that the FDA rejected a warning), that has never been considered a reason to preempt such claims.[1] The discussion in *Buckman* of increased burdens and enforcement priorities must be viewed in the context of a claim *predicated* on the FDA process, rather than one involving preemption as an affirmative defense. Both may produce incentives for Defendants to communicate more with the FDA, but the latter provides no basis for preemption.

### B.     The Claims Are Not "Very Much Like" Fraud-On-The-FDA Claims.

A crucial difference between the claims here and the preempted claims in any prior case is that the drug label was defective. That means liability flows from the product itself, not an aspect of the process of approving or regulating it. That was not true in *Buckman*. *See* 531 U.S. at 352–53. That was not true in *Mink*. *See* 860 F.3d at 1330. This Court ruled that was not true for Count

---

[1] For OTC claims, it is relevant that Congress broadly exempted product liability claims from the OTC express preemption clause, which is inconsistent with an intention that the FDA solely regulate drugs. *See* 21 U.S.C. § 379r(e).

V of the AMPIC.  Order at 43.  Defendants cite no case in which a Court has ever dismissed a claim on *Buckman* grounds where liability turned on the product itself or its label.  Even *Mink* is to the contrary, since the manufacturing defect claim—about an issue with the product, not communication with the FDA—survived.

Second, the substantive law governing each claim in the SELC does not turn on what federal law requires a manufacturer to tell the FDA.  Instead, the key questions will be the *adequacy* of the label, the *safety* of the product, the *deceptiveness* of the advertising and warnings, and so forth.  That does not entangle state law in the relationship of manufacturers and the FDA.

Third, the claims here are all classic, core state concerns: deceptive advertising, unjust enrichment, warranties, and so forth.  The claims here predated the FDCA and would exist in the absence of the FDA.  The only difference would be that the Defendants would have one fewer potential defense.  By contrast, in *Buckman*, if the FDA did not exist, the claim would not either.

To see these three factors in more detail, consider "a claim brought under a single state's law: Arkansas."  Order at 27.  The SELC alleges violations of the Arkansas Deceptive Trade Practices Act (ADTPA), SELC ¶¶ 1253–73, breach of implied warranty, SELC ¶¶ 1274–1285, and unjust enrichment, ¶¶ 1286–94.  The ADTPA claim is based on GSK's actions of:

> knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the **labels** for its Ranitidine-Containing Products, including that: such drugs were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, contained elevated levels of NDMA that rendered them unsafe and unfit for human consumption, and/or caused cancer.

SELC ¶ 1260 (emphasis added).  A reader looking through these claims would not get any sense that the claims are about GSK's relationship with the FDA.  In fact, it does not appear to be mentioned at all except in atmospheric ways.

### III.   Defendants' Motion Relies on Mischaracterizing Plaintiffs' Theories.

Defendants do not seem to disagree with the summary of the law or its application above. They seem primarily to disagree on what the claims actually are.  For example: "Plaintiffs thus claim that it was the OTC Defendants' failure to provide safety information to the FDA that rendered the OTC Zantac label 'false and misleading.' Indeed, that is the only allegation that this Court found to have survived *express* preemption . . . ."  OTC Mot. at 1.  This statement has no citation to the complaint, because it is not remotely true.  As the Arkansas paragraph quoted above states plainly, what made the labels false and misleading is primarily that they did not disclose Zantac's "elevated levels of NDMA."  Defendants know this.  To state the obvious, if Zantac did not degrade into NDMA, Plaintiffs would not have sued these Defendants, no matter what they had failed to tell the FDA.[2]  And yet, that is not the only place Defendants misstate Plaintiffs' claims.  With *no* citations to the complaint, Defendants declare that "at bottom, each count is

---

[2] It is true that Defendants could defeat the claim by demonstrating, with clear evidence, that the FDA was fully informed of ranitidine's risks and nonetheless rejected a labeling change, or that state law requirements are different from federal law.  But the way in which Defendants can establish an affirmative defense is not the *basis of any plaintiff's claim*.  No one would say that a plaintiff arguing a product liability action is basing her claim on fraud just because she plans to invoke equitable tolling if the defendant uses a statute of limitations defense.  There is a circuit split over the applicability of a fraud-on-the-FDA exception to a defense, but even that does not apply.  Michigan's statutory scheme grants a statutory compliance defense to drug manufacturers, with an exception if the plaintiff could prove the manufacturer "intentionally withholds from or misrepresents to the [FDA] information concerning the drug that is required to be submitted" which was the but-for cause of approval.  Mich. Comp. Laws § 600.2946(5)(a).  The Sixth Circuit nullified the fraud exception, ruling that "*Buckman* teaches that state tort remedies requiring proof of fraud committed against the FDA are foreclosed."  *Garcia v. Wyeth-Ayerst Lab'ys*, 385 F.3d 961, 966 (6th Cir. 2004).  The Second Circuit—in an opinion affirmed by an equally divided Supreme Court—ruled that *Buckman* did not apply for several reasons.  *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 93 (2d Cir. 2006), *aff'd* 552 U.S. 440 (2008).  This Court need not decide this question for three reasons.  First, whatever is true of a *state* law, surely preemption doctrine does not bar *Congress* from creating whatever exceptions it wishes.  Second, even *Garcia* recognized that if the FDA itself acted, preemption would not apply—here, the FDA has withdrawn the product from the market.  Third, no one argues that parallel claims require a showing of *fraud*, and the enforcement concerns raised by *Garcia* do not apply.

merely a refund claim that seeks to impose state-law liability for the OTC Defendants' alleged deceptive conduct toward the FDA." OTC Mot. at 6.[3] Defendants' *ipse dixit* does not control the interpretation of the allegations in the SELC.

Defendants' principal argument is rooted not in the pleadings, but a peculiar view of past motion practice:

> Defendants' most recent motion to dismiss addressed Plaintiffs' scattershot claims, which made no effort to state a non-preempted claim for refunds of the purchase price of OTC Zantac. Motion to Dismiss, Dkt. 3114, at 1 ("Plaintiffs have failed to [plead state-law misbranding claims], abandoning any pretense of a 'misbranding' claim or any other state-law claim that remotely 'parallels' federal law.").[4] When Plaintiffs filed their opposition brief and made concessions at the June 3 and 4, 2021 motions hearing, however, it became apparent that the predicate for every OTC claim pursued by Plaintiffs is the allegation that "ranitidine products should never have been approved for OTC status, and were therefore misbranded, because the FDA-approved label was false and misleading and caused harm when taken as directed due to the Defendants' deception." Order, Dkt. 3715, at 32. This Court subsequently and correctly held that Plaintiffs had waived or abandoned any other theories of liability, including container-related claims.

OTC Mot. at 3. This quotation is Defendants' entire argument, and is entirely misguided.

## A.    Defendants Ignore the Pleading.

Defendants attempt to argue that fraud-on-the-FDA-style allegations pervade each claim, but their citations show that even their cherry-picked best paragraphs say nothing of the sort. For

---

[3] Again with no citation to the complaint: "The deception alleged in the complaint is, by necessity, directed at the FDA . . . ." OTC Mot. at 6.

[4] This statement is false. The real reason for that sentence was to make an argument that this Court rejected: "Defendants argue that the Plaintiffs have not pled any state-law claims that parallel federal misbranding law." Order at 19. The Court correctly found the lack of the word "misbranding" irrelevant since "a plaintiff need not 'invoke magic words in their complaints' for claims to be parallel," *id.* at 28 (quoting *Godelia v. Doe 1*, 881 F.3d 1309, 1319 (11th Cir. 2018)). Plaintiffs not only "made an effort" to state non-preempted claims—they persuaded the Court they had done so. Moreover, Plaintiffs argued misbranding and parallel claims in every round of motions, pleaded it in every complaint, and the Court even clarified that the issue was live, as Plaintiffs summarized in their Motion to Strike. *See* D.E. 4151.

example, Defendants repeatedly cite paragraphs 305–12, which discuss Defendants' reporting obligations and failure to do so, but do not identify any Count where those paragraphs are even incorporated. *See, e.g.*, SELC ¶ 1251 (incorporating ¶¶ 279–303 and skipping to ¶¶ 317–361); ¶ 1253 (the Arkansas ADTPA count, incorporating ¶¶ 167–291 and skipping to ¶¶ 313–32). They *were* incorporated into the failure-to-warn-through-the-FDA counts of the original complaint, but those were removed in the SELC. This makes sense. Those paragraphs are *true*, and properly pleaded, but they are not part of any Plaintiff's affirmative case for any remaining cause of action. They are certainly not the *sine qua non* of all claims in the SELC. When Defendants twice promise to "specifically" show what they mean, they simply cite again to paragraph 305 and page 3 of the Introduction, which does not even mention any failure to submit information to the FDA. OTC Mot. at 8. Defendants' long string cite of supposed "numerous allegations" again cites 305–11, then jumps to entirely unrelated allegations. OTC Mot. at 13 (citing ¶¶ 406, 422, 448, 476, none of which mention the FDA at all).

### B.      Defendants Mischaracterize This Court's Order.

Ultimately, Defendants rely not on the pleadings but their misguided argument that any claims that survive express preemption *must*, by definition, be impliedly preempted. To get there, they mischaracterize this Court's rulings in a number of respects.

First, they assert that this Court *did* resolve what it held it "need not decide"—namely, whether "misbranding" tracks "§ 352, or, alternatively, consists of the higher standard articulated in *Bartlett*." Order at 31–32 (that is, "misbranded due to new, scientifically significant information that the FDA did not previously possess"). Defendants ignored that the holding was *alternative*: "This Court thus held that the only remaining claims that survived **express** preemption were Plaintiffs' claims that the OTC Defendants 'withheld information about ranitidine's propensity to form NDMA from the FDA'. . ." OTC Mot. at 4. This Court held that *at least* such claims

survived, because the complaint met the "higher standard." But if section 352 controls rather than the "higher standard," no withholding is necessary to show a parallel violation, which is a live option since "*Wyeth* resolved that the FDA's determination may be reviewed by state juries." Order at 34.

Second, Defendants persistently import an irrelevant *fraud* or *deception* standard, which is not what any party argued for or court held. OTC Mot. at 4 ("This Court thus held that the only remaining claims [were that] had FDA not been deceived by the OTC Defendants, FDA would never have permitted Zantac to be approved or sold."). *Bartlett*, Plaintiffs, and this Court all eschewed language of "fraud," instead saying "when the FDA approved ranitidine, it did not have full and accurate information," or that Zantac was "misbranded due to new, scientifically significant information that the FDA did not previously possess." Order at 31. For preemption purposes, the focus is not on Defendants' behavior in concealing information, but the information the FDA had at the time (which we now know was incomplete, since the FDA withdrew the drug).

Third, Defendants fixate on the theory that the "FDA would never have permitted Zantac to be approved," but that is not Plaintiffs' only theory. As the Court explained, "Plaintiffs' more persuasive position is grounded in the common-sense statement by Justice Thomas in *Wyeth*":

> Initial approval of a label amounts to a finding by the FDA that the label is safe for purposes of gaining federal approval to market the drug. It does not represent a finding that the drug, as labeled, can never be deemed unsafe by later federal action, or . . . the application of state law.

Order at 32 (quoting 555 U.S. at 592). Plaintiffs need not challenge the *initial* approval as invalid *ab initio*. Plaintiffs can defeat Defendants' affirmative defense of preemption by showing new information became available.

IV.     **Defendants' Contrary Interpretation Nullifies Preemption Case Law.**

Defendants' position must be rejected for yet another reason: it nullifies *Mink* and *Wyeth*.
As this Court previously ruled, "[t]he Court cannot adopt a position that would render pre-emption
caselaw meaningless."  D.E. 2512 at 28.

Begin with *Mink*.  That case held that a "narrow gap" allows claims that evade both express
and implied preemption.  860 F.3d at 1327.  If Defendants are correct, no such gap exists for OTC
drugs.  That is because they say that the *only* way a state-law claim can avoid express preemption
is by "deceiv[ing] the agency," and any attempt to *prove* deception of the FDA triggers implied
preemption.  OTC Mot. at 1.  What would be the point of the particular wording of the OTC express
preemption clause if a parallel claim would always fail?  As the Supreme Court explained in *Bates*
for a similarly worded provision, parallel claims must be possible, otherwise the language of the
preemption provision would simply say *all* state law requirements are preempted (not only the
different ones):

> This amputated version of § 136v(b) would no doubt have clearly
> and succinctly commanded the pre-emption of all state requirements
> concerning labeling. That Congress added the remainder of the
> provision is evidence of its intent to draw a distinction between state
> labeling requirements that are pre-empted and those that are not.
> Even if Dow had offered us a plausible alternative reading of
> § 136v(b)—indeed, even if its alternative were just as plausible as
> our reading of that text—we would nevertheless have a duty to
> accept the reading that disfavors pre-emption.

*Bates*, 544 U.S. at 449.

*Wyeth v. Levine* would be similarly nullified.  There, the Supreme Court held that
impossibility preemption did not bar a failure-to-warn claim, largely because the manufacturer
could have changed the label using the CBE process.  555 U.S. at 573.  The FDA has made clear
strengthening a label using the CBE process is mandatory.  *E.g.*, Brief for the United States as
Amicus Curiae Supporting Respondents, *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011) (Nos. 09-

993, 09-1039, and 09-1501), 2011 WL 741927, at *6 (stating that "[this] regulation implements the FDCA's provision that a drug that lacks 'adequate warnings' is misbranded").[5]  Presumably, then, when a plaintiff alleges any economic loss claim under *Wyeth*, she also alleges that the drug at issue is misbranded, that the manufacturer withheld information from the FDA, and so forth. That is precisely the same thing being alleged here—in fact, the claims against GSK for prescription Zantac are similar, if not identical, to the claims against the OTC Defendants. *Compare, e.g.*, SELC ¶¶ 473–84 (ADTPA claim against GSK, including prescription claims) *with* ¶¶ 1253–73 (ADTPA claim against GSK, OTC).

One might distinguish *Wyeth* by noting that the *Plaintiff* need not allege deception, lack of knowledge by the FDA, or any other facts about the CBE process, because it is not part of her affirmative case and the Defendants bear the burden of showing impossibility preemption.  But that response equally applies here.  Preemption under *Buckman* is an affirmative defense that Defendants bear the burden of proving.  Defendants' argument stretches so far it would render prior preemption case law meaningless.

## V.      Defendants Have Not Sufficiently Briefed Any State-Specific Arguments.

Defendants at times emphasize state-specific allegations and law, but because they ultimately seek dismissal of every OTC claim and do not argue any particular state law in a clear way, this Court should decline to consider state-law-specific preemption theories.  Defendants hint that *Buckman* applies "where a plaintiff seeks to prove fraud on the FDA in order to bring a traditional state-law torts suit."  OTC Mot. at 11–12 (quoting *In re Trasylol Products Liability*

---

[5] The FDA's brief and responses to comments about this proposed regulation make clear that the FDA views this regulation as *requiring* a manufacturer to change the label under these circumstances.  *See* 73 FR 49603-01 ("FDA has previously stated and reiterates here that it 'interprets the Act to establish both a "floor" and a "ceiling."' . . . FDA, therefore, declines to set different standards for when a sponsor must warn, as opposed to when it may warn of a particular risk or adverse event.").

*Litigation*, 763 F. Supp. 2d 1312 (S.D. Fla. 2010)).  Defendants also cite a smattering of allegations throughout their Motion, at times suggesting that *certain* state law claims *as pleaded* might allege concealment from the FDA or the like, and so are preempted.  The citations do not support their argument, since the alleged concealment is from consumers (not the FDA), but in any case this argument is, at best, inchoate and does not adequately provide anything to which Plaintiffs can respond.

In addressing express preemption, this Court properly limited its rulings to the broad-brush arguments presented in Defendants' motions.  It explained:

> Should a Defendant believe that the elements of a specific state's law could not be satisfied by a mere violation of federal labeling duties alone, and would therefore impose a duty "in addition to" the duties imposed by federal law, such an argument may be raised in the future, but no such argument is brought before the Court in the instant Motion to Dismiss.

Order at 36.  Here, that same approach counsels considering only Defendants' broad theory that every OTC claim is preempted.  That theory fails.  Plaintiffs are prepared to respond to state-specific arguments on other points at an appropriate time in the litigation when Defendants sufficiently raise them.[6]

## CONCLUSION

For the foregoing reasons, Brand OTC Defendants' Motion to Dismiss on preemption grounds should be denied.

---

[6] For the avoidance of doubt, Plaintiffs oppose any attempt to raise more arguments at the Rule 12 stage.  *Cf.* D.E. 4151 (Motion to Strike).  As this Court recognized, the time has long since passed to move beyond technical challenges to the pleadings.  Defendants may raise these new arguments at summary judgment.

Dated: September 9, 2021

*/s/ Tracy A. Finken*
Tracy A. Finken
Email: tfinken@anapolweiss.com
ANAPOL WEISS
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Tel: (215) 735-1130


*/s/ Michael L. McGlamry*
Michael L. McGlamry
Email: efile@pmkm.com
POPE McGLAMRY, P.C.
3391 Peachtree Road NE, Suite 300
Atlanta, GA 30326
Tel: (404) 523-7706

Respectfully submitted,

By: */s/ Robert C. Gilbert*
Robert C. Gilbert, FBN 561861
Email: gilbert@kolawyers.com
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, FL 33134
Tel: (305) 384-7270


*/s/ Adam Pulaski*
Adam Pulaski
Email: adam@pulaskilawfirm.com
PULASKI KHERKHER, PLLC
2925 Richmond Avenue, Suite 1725
Houston, TX 77098
Tel: (713) 664-4555

*Plaintiffs' Co-Lead Counsel*

Rosemarie R. Bogdan
Email: Rosemarie.bogdan@1800law1010.com
MARTIN, HARDING & MAZZOTTI
1222 Troy-Schenectady Road
Niskayuna, NY 12309
Tel: (518) 862-1200


Elizabeth A. Fegan
Email: beth@feganscott.com
FEGAN SCOTT, LLC
1456 Sycamore Rd.
Yorkville, IL 60560
Tel: (312) 741-1019


Ashley Keller
Email: ack@kellerlenkner.com
KELLER | LENKNER
150 N. Riverside Plaza, Suite 4270

Mark J. Dearman, FBN 0982407
Email: mdearman@rgrdlaw.com
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Tel: (561) 750-3000


Marlene J. Goldenberg
Email: mjgoldenberg@goldenberglaw.com
GOLDENBERG LAW, PLLC
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Tel: (855) 333-4662


Frederick S. Longer
Email: flonger@lfsblaw.com
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500

16

Chicago, IL 60606
Tel: (312) 741-5222

Philadelphia, PA 19106
Tel: (215) 592-1500

Roopal P. Luhana
Email:  luhana@chaffinluhana.com
CHAFFIN LUHANA LLP
600 Third Avenue, 12th Floor
New York, NY  10016
Tel: (888) 480-1123

Francisco R. Maderal, FBN 0041481
Email: frank@colson.com
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Tel: (305) 476-7400

Ricardo M. Martinez-Cid, FBN 383988
Email: RMartinez-Cid@Podhurst.com
PODHURST ORSECK, P.A.
SunTrust International Center
One S.E. 3rd Avenue, Suite 3200
Miami, FL 33130
Tel: (305) 358-2800

Lauren S. Miller
Email: lmiller@corywatson.com
CORY WATSON, P.C.
2131 Magnolia Ave S
Birmingham, AL 35205
Tel: (205) 271-7168

Melanie H. Muhlstock
Email: mmuhlstock@yourlawyer.com
PARKER WAICHMAN LLP
9 Evelyn Road
Port Washington, NY 11050
Tel: (516) 723-4629

Daniel A. Nigh, FBN 30905
Email: dnigh@levinlaw.com
LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL  32502
Tel: (888) 435-7001

Carmen S. Scott
Email: cscott@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9160

Mikal C. Watts
Email: mcwatts@wattsguerra.com
WATTS GUERRA LLP
4 Dominion Drive
Building 3, Suite 100
San Antonio, TX  78257
Tel: (800) 294-0055

Sarah N. Westcot, FBN 1018272
Email: swestcot@bursor.com
BURSOR & FISHER, P.A.
701 Brickell Ave., Suite 1420
Miami, FL 33131-2800
Tel: (305) 330-5512

Conlee S. Whiteley
Email: c.whiteley@kanner-law.com
KANNER & WHITELEY, L.L.C.
701 Camp Street
New Orleans, LA  70130
Tel: (504) 524-5777

17

Frank Woodson
Email: Frank.Woodson@BeasleyAllen.com
BEASLEY ALLEN LAW FIRM
234 Commerce St
Montgomery, AL 36103
Tel: (334) 269-2343

*Plaintiffs' Steering Committee*
*Plaintiffs' Law and Briefing Committee Co-Chairs*
*Plaintiffs' Liaison Counsel*

Paige Boldt
Email: pboldt@wattsguerra.com
WATTS GUERRA LLP
1815 Windsong Circle
Keller, TX 76248
Tel: (210) 447-1534

Je Yon Jung
Email: JJung@maylightfootlaw.com
MAY LIGHTFOOT PLLC
3200 Martin Luther King Jr. Avenue,
S.E., 3rd Floor,
Washington DC 20032
Tel: (202) 918-1824

Adam W. Krause
Email: adam@krauseandkinsman.com
KRAUSE AND KINSMAN, LLC
4717 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 760-2700

Nicola Larmond-Harvey, FBN 0105312
Email: nicola@saunderslawyers.com
SAUNDERS & WALKER, P.A.
3491 Gandy Boulevard North, Suite 200
Pinellas Park, FL 33781
Tel: (727) 579-4500

Bradford B. Lear
Email: Lear@learwerts.com
LEAR WERTS LLP
103 Ripley Street
Columbia, MO 65203
Tel: (573) 875-1992

*Plaintiffs' Leadership Development Committee*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that the foregoing document is being served on all counsel of record or parties registered to receive CM/ECF Electronic Filings.

*/s/ Robert C. Gilbert*
Robert C. Gilbert