**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IN RE: ZANTAC (RANITIDINE)                          MDL NO. 2924
PRODUCTS LIABILITY                                    20-MD-2924
LITIGATION

JUDGE ROBIN L. ROSENBERG
MAGISTRATE JUDGE BRUCE E. REINHART

_____/

**ORDER GRANTING IN PART AND DENYING IN PART THE**
**DEFENDANTS' MOTIONS REQUESTING ENTRY OF FINAL JUDGMENT**

The motions before the Court are the Distributor, Retailer, and Pharmacy Defendants'

Motion for Entry of Final Judgment in all Cases Naming Distributor, Retailer, and Pharmacy

Defendants [3934] (the "Retailers" and the "Retailers' Motion") and the Generic Manufacturers'

Motion for Entry of Final Judgment in Mixed-Defendant Cases [3933] (the "Generics" and the

"Generics' Motion").[1] Both Motions have been fully briefed. For the reasons set forth below, the

Motions are granted in part and denied in part insofar as the Court will enter final judgment in

favor of the Generics and the Retailers, but the Court's entry of judgment is not as broad as the

Retailers have requested.

This litigation arises from alleged defects in the formulation of the heartburn medication

ranitidine, commonly known as Zantac.[2] In prior orders of dismissal, the Court dismissed all

claims against the Generics (and most of the claims against the Retailers) with prejudice but

permitted claims against the Brands to proceed. Because most of the Plaintiffs have brought claims

against the Brands, most of the individual Plaintiffs' cases have survived the Defendants' motions

---

1 In addition to shorthand references to the movants, the Retailers and the Generics, the Court will also refer to
Defendants Boehringer Ingelheim Pharmaceuticals, Inc., Chattem, Inc., Sanofi US Services Inc., Sanofi-Aventis U.S.
LLC, Patheon Manufacturing Services, LLC, Pfizer Inc., and GlaxoSmithKline LLC as the "Brands."
2 For the purposes of this Order, the Court presumes a certain level of general familiarity with the history of this MDL.

to dismiss and are now at issue.  Since most of the Plaintiffs' cases have survived, the dispute before the Court is whether the Court's partial dismissal of the Plaintiffs' claims may be appealed immediately through the Court's entry of final judgment and, if so, whether the judgment should be a full, unqualified final judgment (entered under Federal Rule of Civil Procedure 58), a partial final judgment (entered under Rule 54(b)), or both.

The parties' dispute focuses primarily on the process the Court should follow to perfect the Plaintiffs' appeals, not on whether the Plaintiffs are entitled to appeal.  To explain the parties' dispute as to the appropriate process, however, the Court divides the individual cases at issue in the Motions into two categories.  First, there are cases in which the Plaintiffs have named only the Generics—no other Defendants are named.  The Court refers to this category of cases as "Generic-Only" cases.  Second, there are cases in which the Plaintiffs have named other Defendants in addition on the Generics.  The Court refers to this category as "Mixed-Generic" cases.

Turning to specifics, despite their agreement on the ultimate result—the Plaintiffs' pending appeals, perfected—the parties' positions on *how* the Plaintiffs' appeals should be perfected could not be more varied or more confusing.  As for the Plaintiffs, they have taken the position that the Court's orders of dismissal were final and appealable at the time of entry and that no further order of the Court is necessary to perfect their appeals.[3]  In the alternative, the Plaintiffs argue that Rule 58 final judgment should be entered in the Generic-Only cases, but that no final judgment should be entered in any other case, including the Mixed-Generic cases.  Most of the Generics agree that the Plaintiffs should receive final judgment in the Generic-Only cases,[4] but they argue that the

---

3 "It is our belief that . . . the order itself standing on its own is clearly appealable as a final order." DE 3900 at 14.
4 The Court construes Defendant Apotex's reply at docket entry 4143 as an objection to the entry of Rule 58 final judgment in any individual Plaintiff's case.

Court should also enter partial final judgment under Rule 54(b) in the Mixed-Generic cases. Generic Defendant Apotex Corp. argues that only a single partial final judgment (under Rule 54(b)) should be entered in the MDL—not in any individual case. The Retailers seek entry of Rule 54(b) judgment in any case in which they are named as Defendants. Finally, the Brands argue that final judgment must be entered in order to perfect the Plaintiffs' appeals, but the Court should enter judgment without delving into why or how the judgment should be entered so as to permit the Eleventh Circuit to have the first say on the matter.[5] The Plaintiffs oppose the entry of a Rule 54(b) partial final judgment in any case.

Who, then, is correct and how is the Court to sort through the parties' varied, nuanced positions? The Court concludes that the answer to this question lies in how this MDL was organized and, more specifically, how the Court structured the Plaintiffs' master pleadings in Pretrial Order # 31. Accordingly, the Court first considers (A) the relevant procedural history of this MDL and the specifics of Pretrial Order # 31. Viewing all subsequent analysis through the prism of Pretrial Order # 31, the Court then addresses a disputed premise underpinning the parties' competing legal positions. That disputed premise is the threshold question of whether, consistent with the Pretrial Order # 31, the individual cases in this MDL have temporarily merged and lost their individual appellate rights for the duration of the MDL. This concept of merger and the corresponding loss of appellate rights frames the parties' competing legal positions, with some of the parties arguing that the individual cases in this MDL do not have a right to immediate appeal, and other parties arguing that the individual cases have retained their right to appeal. To resolve this dispute, the Court (B) summarizes the applicable law on the temporary merger of cases in an

---

[5] The Brands represent that the Eleventh Circuit will ultimately rule on the finality of the Plaintiffs' appeals when it decides the Brands' pending motion to dismiss the appeals. DE 3894.

MDL and then (C) applies that law to Pretrial Order # 31 and the structure of this MDL.  Because the Court ultimately concludes that the individual cases in this MDL *have not* lost their individual identities and corresponding appellate rights, the Court utilizes that premise in its subsequent analysis of (D) the parties' competing requests for entry of Rule 58 final judgment in the Generic-Only cases.  The Court must also address the Mixed-Generic cases and cases involving the Retailers, and thus, the Court then turns to the question of whether a partial final judgment under Rule 54(b) should be entered in any case in the MDL.  The Court's analysis on this topic is preceded by (E) a summary of the law applicable to the Retailers' and Generics' requests for entry of partial judgment under Rule 54(b) before finally turning to (F) the Generics' Motion for Entry of Judgment, (G) the Retailers' Motion for Entry of Judgment, and (H) the specifics of the Court's forthcoming entry of final judgment.

### A.  Relevant Procedural History and Pretrial Order # 31

<u>The Court's Pretrial Order # 31</u>

In mid-June 2020, a few months into the MDL, the parties submitted to the Court a proposed order, that they had negotiated and agreed upon, to address the filing of a master pleading on behalf of all individual Plaintiffs who assert personal injury claims in this MDL.  The Court entered the proposed order as Pretrial Order # 31.[6] DE 876.  Pretrial Order # 31 explains that the parties agreed to the procedures in the Order due to the number of complaints filed, and likely to continue to be filed, in the MDL and due to the inefficiencies in drafting unique complaints and individual answers to those complaints.  To avoid those inefficiencies, Pretrial Order # 31 required the Plaintiffs to file one Master Personal Injury Complaint on behalf of all Plaintiffs asserting

---

6 The Court thereafter entered an Amended Pretrial Order # 31. *See* DE 1496.  The differences between the original and the amended Pretrial Order # 31 are irrelevant for the purpose of this Order.

personal injury claims related to the use of ranitidine.  The Order states that, "All claims pleaded in the Master Personal Injury Complaint will supersede and replace all claims pleaded in any complaint previously filed in or transferred to MDL No. 2924, to the extent applicable under the procedural and substantive law that applies to previously filed actions, including this Order." *Id.* at 2.  In addition to the filing of a Master Personal Injury Complaint, the Order required individual Plaintiffs to file "Short Form Complaints" to provide certain information specific to each Plaintiff. Among this information, each Plaintiff was required to list the Defendant(s) against whom he or she asserted claims and to specify the causes of action in the Master Personal Injury Complaint that the Plaintiff adopted.  The Short Form Complaints also could contain "[a]dditional allegations or causes of action not pleaded in the Master Personal Injury Complaint." *Id.* at 3.  The Order explained that, "For each action directly filed in or transferred to MDL No. 2924 subject to this Order, the Master Personal Injury Complaint together with the Short Form Complaint shall be deemed the operative Complaint." *Id.*

Each of the three provisions in Pretrial Order # 31 are important to the Court's ultimate analysis of the Motions for Entry of Judgment, *infra.*  First, consistent with the parties' agreement the master pleadings are, for the most part, the only operative pleadings for personal injury claims in this MDL—the master pleadings supersede all prior pleadings in individual cases.  Second, the Short Form Complaints that each individual Plaintiff files are also operative pleadings insofar as the Short Form Complaints select (in each individual case) the various parts of the master complaints that an individual Plaintiff incorporates into his or her individual case.  Third and finally, the Short Form Complaints are a theoretical vehicle[7] for an individual Plaintiff to plead

---

7 At this time, the Court is unaware of any individual case where a Plaintiff has exercised his or her right under Pretrial Order # 31 to plead a claim not pled in the master complaints.

claims not pled in the master complaints.  These three provisions will be discussed below in the context of the Court's analysis of the Defendants' Motions, but the Court first summarizes in more detail its prior rulings and the parties' competing positions.

<u>The Court's Rulings on the Master Complaints and the Defendants' Motions to Dismiss</u>

The Plaintiffs, thus far, have filed three rounds of master complaints in this MDL, including three versions of the Master Personal Injury Complaint.  In the first round of master complaints, the Plaintiffs brought claims against brand-name manufacturers, generic manufacturers, retailers, and distributors of ranitidine that were premised on defective design and on inadequate labeling. *See* DEs 887, 888, 889.  The Court then issued an Order setting a schedule for the filing and briefing of motions to dismiss directed to these master complaints,[8] and the various groups of Defendants filed motions to dismiss under that schedule. DE 1346.  In their motion to dismiss, the Brands argued that the design-defect claims pled against them in the master complaints were pre-empted because federal law prohibited them from changing ranitidine's design absent the approval of the U.S. Food and Drug Administration ("FDA"). DE 1580.  The Generics and Retailers filed motions to dismiss in which they argued that all of the claims brought against them in the master complaints were pre-empted because federal law prohibited them from changing ranitidine's design and its labeling. DEs 1582, 1583, 1584.

The Plaintiffs responded to all of these motions to dismiss by asserting, in part, that their design and labeling claims in the master complaints were not pre-empted because ranitidine was "misbranded" as that term is defined under federal law and because the claims asserted in the

---

8 Although the parties disagreed as to the precise timetable that would apply to the motions to dismiss, the parties were in agreement that the motions to dismiss would be directed to the consolidated master pleadings.  As a result, no motions to dismiss were filed against the Plaintiffs' Short Form Complaints.

master complaints were "parallel" to—and therefore did not conflict with—federal law prohibiting the sale of misbranded drugs. DE 1976, 1977, 1978 (citing 21 U.S.C. §§ 331, 352).  The Plaintiffs further responded that, despite the fact that the Retailers did not design or label ranitidine, state law could hold them absolutely liable for distributing and selling defective ranitidine products. DE 1977.

This Court rejected the Plaintiffs' misbranding argument as contrary to Supreme Court precedent. *See* DE 2512, 2513, 2532 (citing *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011) and *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472 (2013)); *see also* DE 3715.  The Court ruled that a claim is pre-empted if it is based on an alleged product defect that a defendant could not have remedied without FDA approval while remaining in compliance with federal law. *See, e.g.*, DE 2512.  Thus, claims that the Brands should have changed ranitidine's FDA-approved design were pre-empted while, under Supreme Court precedent, claims that the Brands should have changed ranitidine's labeling were not necessarily pre-empted and could proceed through the pleading stage of the MDL. DE 2532 (citing *Wyeth v. Levine*, 555 U.S. 555 (2009)).

As to the claims against the Generics, the Court held that both design-defect and labeling claims were pre-empted because federal law requires generic drug manufacturers to emulate the design and labeling of brand-name drugs, and therefore the Generics could not change ranitidine's design or labeling. DE 2512.  The Court explained that the Generics could take certain actions with respect to generic ranitidine under federal law, such as printing a correct expiration date on a drug's packaging and properly storing a drug.  The Court, therefore, granted the Plaintiffs leave to replead claims against the Generics that were based on alleged deficiencies they could have remedied while remaining compliant with federal law.

7

Finally, with respect to the Retailers, the Court rejected the Plaintiffs' argument about absolute liability as contrary to Supreme Court precedent. *See* DE 2513 (citing *Bartlett*, 570 U.S. 472). The Court ruled that both design-defect and labeling claims were pre-empted because drug retailers and distributors have no ability to alter drug design or labeling. However, the Court granted the Plaintiffs leave to replead claims against the Retailers that were based on alleged negligent storage of the ranitidine products in their possession.

Following these rulings, at least one individual Plaintiff appealed the Court's Orders on pre-emption. *See* Case No. 9:20-cv-80512 (S.D. Fla.). The Defendants named in the appeal moved to dismiss for lack of appellate jurisdiction. *See* Case No. 21-10306 (11th Cir.). That appeal, together with the motion to dismiss, remain pending before the Eleventh Circuit.

The Plaintiffs subsequently filed the second round of master complaints, including an Amended Master Personal Injury Complaint. *See* DE 2759, 2832-1, 2835. The Plaintiffs renewed their claims against the Brands that were based on inadequate labeling. The Plaintiffs also raised claims against both the Brands and Generics that were premised on failure to warn consumers through the FDA of ranitidine's alleged defects, inaccurate expiration dates, failure to appropriately package ranitidine pills, failure to store ranitidine under correct conditions, and failure to test ranitidine. The Plaintiffs raised claims against the Retailers that were premised on the storage and shipment of ranitidine products under excessively hot and humid conditions. The Court issued an Order setting a schedule for the filing and briefing of motions to dismiss directed at this round of master complaints. DE 2968. The Brands then moved to dismiss as pre-empted the claims in the master complaints for failure to warn consumers through the FDA; the Generics moved to dismiss as pre-empted all of the claims brought against them in the master complaints;

and the Retailers moved to dismiss all of the claims raised against them in the master complaints as both pre-empted and implausibly pled. DE 3105, 3107, 3112, 3114.

The Court ruled that the claims against the Brands and Generics for failure to warn consumers through the FDA were pre-empted under Supreme Court and Eleventh Circuit precedent. DE 3715, 3750 (citing *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) and *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319 (11th Cir. 2017)). The Court further determined that, although the Plaintiffs purported to premise all of their remaining claims against the Generics on actions that they could have taken while remaining compliant with federal law, those remaining claims were pre-empted. DE 3750. The Court ruled as such because the legal claims pled against the Generics were based on failure to warn and negligence, and the Generics could not satisfy the legal duties for those claims—the duty to warn of the risks of ranitidine and the duty to use reasonable care—in accordance with federal law. Because the Plaintiffs alleged that the ranitidine molecule was inherently dangerous to consumers from the moment it was manufactured and that the Generics knew or should have known of the danger, the Generics could not satisfy the legal duties absent redesigning the molecule or relabeling ranitidine products, which federal law prohibited. The Court, therefore, dismissed all claims against the Generics without leave to amend.

The Court also ruled that the Plaintiffs' sole remaining claim against the Retailers—a negligence claim pertaining to storage and shipment—was implausibly pled. DE 3716. The Court's ruling was based on a number of reasons, including that (1) the claim was pled "upon information and belief" without supporting factual allegations; and (2) the Plaintiffs did not identify the incorrect condition(s), such as some high temperature or level of humidity for some period of time, to which any ranitidine products had been exposed. The Court, therefore, dismissed

the negligence claim against the Retailers without leave to amend and did not address the issue of whether the claim was pre-empted.[9]

Subsequent to these rulings, multiple individual Plaintiffs appealed the Court's Orders. The cases on appeal include Generic-Only cases. *See, e.g.*, Case Nos. 9:21-cv-80683, 9:21-cv-81169 (S.D. Fla.). The cases on appeal also include Mixed-Generic cases. *See, e.g.*, Case Nos. 9:20-cv-81204, 9:21-cv-80001 (S.D. Fla.). These appeals remain pending before the Eleventh Circuit. The Plaintiffs have filed the third and latest round of master complaints, which raise claims only against the Brands. *See* DE 3883, 3884, 3887. The third round of master complaints survived the Brands' motions to dismiss. DE 4487, 4488.

<u>The Plaintiffs' Motion for Entry of Judgment</u>

Following the Court's Orders on the second round of motions to dismiss, the Plaintiffs moved for entry of judgment in all cases wherein individual Plaintiffs named Generics and/or Retailers as the only Defendants in their Short Form Complaints. DE 3863. The Plaintiffs asserted in their motion that the individual Plaintiffs' cases retained their separate identities—that is, that they had not "merged"—for the purpose of appeal. Among their arguments, the Plaintiffs maintained that (1) although the Master Personal Injury Complaints were filed on behalf of all Plaintiffs, the Short Form Complaints also remained operative complaints in the individual cases; (2) consolidation of cases for MDL purposes could not impair a Plaintiff's right to appeal when his or her own case had been fully resolved; and (3) merger would deprive this Court of subject matter jurisdiction by destroying diversity of citizenship. The Plaintiffs asserted that, because the

_____

9 The Court also did not rule on the question of whether a negligent storage and transportation claim against the Generics would be pre-empted, because the Court treated the Plaintiffs' count facially styled as a negligent storage and transportation claim (Count XI in the Amended Master Personal Injury Complaint) as a negligent manufacturing claim that was sourced in design defect. *See* DE 3750 at 40-42.

Court had dismissed without leave to amend all claims against the Generics and Retailers in the master complaints, no claims remained pending in, and the Plaintiffs could therefore appeal, the individual cases with Short Form Complaints naming Generics and/or Retailers as the only Defendants.  Therefore, the Plaintiffs sought entry of final judgments under Fed. R. Civ. P. 58(a) in those cases to remove any doubt about their appellate rights.

All but one of the Generics, together with all of the Retailers, responded by joining the Plaintiffs' request for entry of Rule 58 judgments in the individual cases with Short Form Complaints naming Generics and/or Retailers as the only Defendants. DE 3895.  The remaining Generic, Apotex, responded that there had been a merger, as evidenced by the fact that, under Pretrial Order # 31, the Master Personal Injury Complaints superseded and replaced all claims pled in the individual cases. DE 3893.  Apotex further asserted that, because of this merger and because claims against the Brands remained pending in the merged proceeding, the proper procedural vehicle to secure any appeal was a certification and judgment under Fed. R. Civ. P. 54(b) as to all claims against the Generics and Retailers in the master complaints.   Apotex argued in the alternative that, if the Court were to disagree that there had been merger and were to enter Rule 58 judgments in any individual cases, the Court should then enter Rule 54(b) judgments as to the claims against the Generics and Retailers in any cases with pending claims against the Brands. According to Apotex, either of these alternative procedures would ensure that the Court's rulings as to the Generics and Retailers would be reviewed once by one appellate court, avoiding piecemeal appeals.

The Brands argued that the Plaintiffs are not entitled to entry of Rule 58 judgments in any individual cases. DE 3894.  The Brands maintained that this was so because there had been a

merger and because the Court has not ruled on any Short Form Complaints, such that the Short Form Complaints, as operative complaints, remain pending in the individual cases. But the Brands suggested that it was unnecessary for the Court to resolve whether the Plaintiffs were entitled to entry of Rule 58 judgments because the Court could both enter final judgments and make a Rule 54(b) certification, to the extent it might be necessary, to ensure appellate jurisdiction in appropriate individual cases.

The Court denied the Plaintiffs' Motion for Rule 58 judgments. DE 3913. The Court explained that its Order dismissing the claims against the Retailers without leave to amend had rejected as implausible the Plaintiffs' attempt, through the master complaints, to "impose *global* MDL liability on the [Retailers] without any concrete, particularized, or individualized allegation of negligence." *Id.* at 3. But the Court did not intend to preclude individual Plaintiffs, in their own cases, from seeking to plead "a negligence claim on case-specific facts, provided an individual Plaintiff has a factual basis to do so." *Id.* at 4. And the Court suggested that such case-specific claims could be addressed outside of this MDL. Thus, the Court determined that entry of Rule 58 judgments in individual cases naming the Retailers was inappropriate. As to Generic-Only cases, the Court explained that its dismissal of the claims in the master complaints against the Generics, unlike the Retailers, "had nothing to do with the need for individualized, case-specific facts" and that it was "the Court's intent that, at the proper time and upon proper motion, the Court could enter a final order of dismissal or a final judgment in an individual case" against one or more Generics. *Id.* at 5. The Court could not enter any such final orders, however, because the Plaintiffs had not provided a list of Generic-Only cases.[10] The Court stated that, "[s]hould the Plaintiffs

---

10 Approximately 1,600 cases were filed in the MDL at the time of the Plaintiffs' Motion, and the Court could not easily identify the subset of Generic-Only cases.

identify all individual Plaintiffs who have named only a Generic Defendant and seek a final order of dismissal as to those cases, nothing in this Order shall preclude the Plaintiffs from filing a more specific renewed motion." *Id.* at 5-6.  Of importance to the instant Order, the Court did not decide the question of whether the Plaintiffs' individual cases had merged through the usage of consolidated master pleadings.  The Court decides that question in this Order in Section (C).

<u>The Generics' and Retailers' Motions for Entry of Judgment</u>

Two motions for entry of judgment are currently before the Court.  One of the motions is brought by all of the Generics except Apotex and requests two forms of relief.[11] DE 3933.  First, the Generics seek entry of judgments (without specifying whether the applicable Rule is 54(b) or 58) in the Generic-Only cases.  The Generics provide a list of such cases and ask that Plaintiffs' Lead Counsel be ordered to identify any cases that should be added to the list.  Second, the Generics seek entry of Rule 54(b) judgments in the Mixed-Generic cases.  According to the Generics, granting both forms of relief in tandem will ensure that the Court's rulings as to the Generics will be reviewed once by one appellate court, avoiding piecemeal appeals.  In the alternative to Rule 54(b) judgments, the Generics propose that the Court sever the claims against them from the Mixed-Generic cases and enter Rule 58 judgments as to those severed claims.

The Retailers filed the second motion that is currently before the Court. DE 3934.  The Retailers seek entry of Rule 54(b) judgments in all individual cases naming them among the Defendants.  They argue that they are entitled to judgment because no claim remains pending against them in any Master or Short Form Complaint.  Although the Court stated in its previous Order that it did not intend to preclude individual Plaintiffs from seeking to plead negligence

---

11 Apotex continues to maintain that there has been a merger and that the Court should enter one Rule 54(b) judgment as to all claims against the Generics in the master complaints. DE 4143.

claims based on case-specific facts, the Retailers argue that no such individualized claims have been pled.

The Plaintiffs oppose entry of Rule 54(b) judgments, asserting that a Rule 54(b) judgment is an extraordinary form of relief that is unwarranted here. DE 4092.  The Plaintiffs argue that granting the Generics' and Retailers' motions would result in judgments in perhaps over one thousand cases and would burden the Plaintiffs by requiring them to pursue appeals in those cases now while continuing to litigate claims against the Brands that remain pending before this Court. The Plaintiffs contend that the filing fees alone for these appeals would be exorbitant.  The Plaintiffs further argue that the judgments the Retailers seek are inappropriate for the additional reason that an individual Plaintiff may in the future choose to plead a case-specific negligence claim against a Retailer.

### B.  The Merger of Individual Cases in an MDL through Consolidated Master Pleadings

In *Gelboim v. Bank of America Corp.*, the Supreme Court considered an MDL in which the district court dismissed one of several complaints against some, but not all, of the Defendants—consolidated master pleadings were not utilized in the MDL. 574 U.S. 405, 411-12 (2015).  The plaintiffs whose complaint had been dismissed appealed pursuant to 28 U.S.C. § 1291, reasoning that the district court's decision was final and therefore appealable. *Id.*  Other, non-dismissed defendants were affected by the district court's legal conclusions supporting dismissal, even though they continued to face live claims in the MDL. *Id.*  As to those defendants, the district court granted a Rule 54(b) final judgment so that they could participate in the pending appeal. *Id.* at 412.

The Second Circuit dismissed the § 1291 appeal, holding that the appeal was improper because the "orde[r] appealed from did not dispose of all claims in the consolidated action." *Id.*[12] The plaintiffs appealed the dismissal of their appeal to the Supreme Court, arguing that once their underlying claims were dismissed in their entirety, their action was no longer consolidated in the MDL and they did not need a Rule 54(b) certification. *Id.* at 413.  The Supreme Court agreed with the plaintiffs and reversed the Second Circuit's dismissal. *Id.*  The Supreme Court's reasoning is of particular importance to the instant MDL.  The Supreme Court contrasted the complaints in the *Gelboim* MDL—which were distinct and separate—with an MDL where the parties file one consolidated, master pleading:

> Parties may elect to file a "master complaint" and a corresponding "consolidated answer," which supersede prior individual pleadings. In such a case, the transferee court may treat the master pleadings as merging the discrete actions for the duration of the MDL pretrial proceedings. No merger occurs, however, when "the master complaint is not meant to be a pleading with legal effect but only an administrative summary of the claims brought by all the plaintiffs."

*Id.* n.3 (citations omitted) (hereinafter referred to as the "**merger doctrine**").  In addition to noting the possibility of such consolidation, the Supreme Court cited with approval the Sixth Circuit's decision in *In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 590-92 (2013).

In *Refrigerant*, the Sixth Circuit considered the appealability of partial dismissals in MDL actions where the parties filed one consolidated master complaint. *Id.*  The Sixth Circuit reasoned that under such a scenario a plaintiff *would* need a Rule 54(b) certification to appeal, even when all of a plaintiff's individual claims had been dismissed. *Id.*  Important to the Sixth Circuit's decision was the difference between a master complaint that serves as an administrative document

---

12 Subsequent to the Second Circuit's dismissal of the § 1291 appeal, the *Gelboim* district court withdrew its 54(b) certifications for the other defendants "given the reaction of the Second Circuit." 574 U.S. at 411-12.

and a master complaint that consolidates pleadings.  As for the former—an administrative master complaint:

> In many cases, the master complaint is not meant to be a pleading with legal effect but only an administrative summary of the claims brought by all the plaintiffs. When plaintiffs file a master complaint of this variety, each individual complaint retains its separate legal existence. *See, e.g., In re Nuvaring Prods. Liab. Litig.*, No. 4:08MD1964 RWS, 2009 WL 2425391, at *2 (E.D. Mo. Aug. 6, 2009) ("[T]he filing of the master consolidated complaint in this action was simply meant to be an administrative tool to place in one document all of the claims at issue in this litigation. Neither Plantiffs ... nor I ... contemplated that Rule 12(b) motion practice would be pursued ... against the master complaint."); *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 142 (E.D. La. 2002) ("[T]he master complaint [filed in this case] should not be given the same effect as an ordinary complaint. Instead, it should be considered as only an administrative device to aid efficiency and economy.").

*Id.* at 590.  Compared to an administrative summary of claims which would not have the effect of consolidation, the Sixth Circuit described a master complaint which *would* have the effect of consolidation and the application of the merger doctrine:

> But, in other cases, the court and the parties go further. They treat the master complaint as an operative pleading that supersedes the individual complaints. The master complaint, not the individual complaints, is served on defendants. The master complaint is used to calculate deadlines for defendants to file their answers. And the master complaint is examined for its sufficiency when the defendants file a motion to dismiss. *See, e.g., In re Katrina Canal Breaches Litig.*, 309 F. App'x 836, 838 (5th Cir. 2009) ("[The plaintiff's] individual complaint was superseded, and ... any arguments or claims that appear in [the] individual complaint but not in the Master Complaint were waived."); *In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, No. MDL 2272, 2012 WL 3582708, at *4 (N.D. Ill. Aug. 16, 2012) ("MDL courts have entertained motions to dismiss 'master' or 'consolidated' complaints...."); *see generally* Diana E. Murphy, *Unified and Consolidated Complaints in Multidistrict Litigation*, 132 F.R.D. 597 (1991).

*Id.* at 590-91.

Subsequent to *Refrigerant* and *Gelboim*, the Seventh Circuit in *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468 (2020), endorsed the view that, pursuant to *Gelboim*, consolidated

master pleadings in MDLs require a Rule 54(b) certification to appeal.[13]  The Seventh Circuit

noted that the default rule (absent master pleading consolidation) is that every individual case

retains its separate identity and ability to appeal. *Id.* at 489.  Yet in large MDLs, when "each

transferred case comes with its own pleadings, a multidistrict transfer threatens to submerge the

transferee district court in paper." *Refrigerant*, 731 F.3d at 590.  As a result, "transferee courts and

parties may choose to manage those cases in ways that can change that default rule and give up

the separate identities of the original suits transferred to the MDL litigation." *Bell*, 982 F.3d at 489.

When determining whether a master complaint was merely an administrative summary of claims

or an actual consolidated pleading, the Seventh Circuit adopted a "pragmatic approach" that

focuses on "the behavior of the district court and the parties to determine whether they treated the

consolidated complaint as the 'operative pleading' or merely 'an administrative summary.'" *Id.* at

490.  As explained by the Sixth Circuit in *Refrigerant*, to treat a consolidated master pleading as

anything else simply makes no sense:

> What at any rate would be the alternative? The [plaintiffs] suggest looking at their
> original individual complaints rather than at the new consolidated complaint. But
> the new complaint superseded the old ones, and it makes little sense to ascertain
> appellate jurisdiction by looking at the ghosts of departed pleadings. Besides, when
> deciding whether the district court properly granted a motion to dismiss, we would
> have to look at the new complaint anyway. How odd it would be to write an opinion
> that talks about one complaint in the jurisdiction section and another in the merits
> section.

731 F.3d at 591.  The *Bell* court, therefore, considered the following five factors to determine

whether a master complaint was an administrative summary or a consolidated pleading: the label

on the complaint, whether the complaint was served, whether key deadlines were set in relation to

---

13 It is also arguable that the Tenth Circuit has recognized the validity of the merger doctrine as well. *See In re Cox Enter. Set-Top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1208 n.4 (2016).

the complaint, whether the court entertained motions to dismiss the complaint, and whether the parties and the court looked solely to the allegations in the complaint when arguing and deciding motions to dismiss. *Bell*, 982 F.3d at 490.  When the foregoing factors indicate the pleadings in a case have been consolidated, the parties forego "the default rule" and instead require Rule 54(b) certifications to appeal prior to the complete disposal of a complaint. *See id.*

### C.  The Application of the Merger Doctrine to this MDL

The *Bell* and *Refrigerant* factors are objective factors based upon the parties' actions and the Court's governance of the MDL.  These objective factors favor the conclusion that the master pleadings were merged, consolidated pleadings, not mere administrative summaries of claims.  The Court analyzes these objective factors below. In resisting the application of the merger doctrine, the Plaintiffs primarily rely upon their subjective intent to preserve their appellate rights.  The Court considers the Plaintiffs' arguments regarding their subjective intent as well.

As to the objective *Bell* and *Refrigerant* factors, the Plaintiffs served the master pleadings. The key deadlines in this case were set in relation to the filing of the master pleadings. *E.g.,* DE 2968 (setting forth deadlines for motions to dismiss on the second round of master pleadings).  The Court has entertained three rounds of motions to dismiss directed at the master pleadings—a total of twenty motions to dismiss.  Finally, the Court looked solely to the allegations in the master complaints when ruling on the motions to dismiss, and the parties relied solely upon the master complaints when arguing the same.  The Court's Pretrial Order # 31 which set forth the process for the filing of the master complaints clarified that they would be consolidated pleadings, not administrative summaries: "All claims pleaded in the Master Personal Injury Complaint will supersede and replace all claims pleaded in any complaint previously filed in or transferred to

MDL No. 2924, to the extent applicable under the procedural and substantive law that applies to previously filed actions, including this Order." DE 876 at 2.  The parties agreed to the Court's entry of Pretrial Order # 31. *Id.* at 1.

In response, the Plaintiffs make four arguments why the merger doctrine does not apply to this MDL. First, the Plaintiffs argue without citation to any authority that a consolidated master pleading would deprive this Court of subject matter jurisdiction by destroying diversity. DE 3904 at 8.  The Court fails to see how this could be true. *See, e.g.*, *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 256 F. Supp. 2d 884, 890 (S.D. Ind. 2003) (finding that the filing of a master complaint had "no effect" on potential subject-matter jurisdiction arguments).  The Court has not permanently merged the individual cases in this MDL—it has merely consolidated them, temporarily, for pretrial purposes consistent with its mandate under 28 U.S.C. § 1407.  The temporary merger of pleadings through a master complaint was necessitated by the fact that there currently are over 1,800 individual cases in this MDL.

Second, the Plaintiffs' argument that the merger doctrine is inapposite with the Supreme Court case of *Hall v. Hall* is unavailing. 138 S. Ct. 1118 (2018).  *Hall* stands for the proposition that cases consolidated under Rule 42(a) retain their individual identities for appellate purposes, *id.* at 1122, but the cases in this MDL were consolidated pursuant to § 1407.  Further, *Hall* expressly does not apply to cases that have been merged; *Hall* does nothing to disturb the Supreme Court's prior decision in *Gelboim*; *Hall* does not address master consolidated pleadings; and, moreover, the individual cases in this MDL *do* ultimately retain their individual identities; they will eventually be remanded to their home districts. *See id.*

Third, the Plaintiffs point out that pursuant to Pretrial Order # 31, the master pleadings are not the only operative pleadings in this MDL—the Short Form Complaints are also operative pleadings.  The Plaintiffs argue that the existence of a second type of operative pleading undercuts the idea that the master pleadings were intended to merge and consolidate the pleadings.  The primary purpose of the Short Form Complaints, however, is merely to provide a small amount of Plaintiff-specific information and incorporate select counts in the master pleadings.  That is no barrier to the conclusion that, at least during the pendency of this MDL, the individual cases have merged through their usage of the master pleadings.  Relatedly, while it is true that, at least in theory, a Short Form Complaint may bring a claim not brought in a master pleading, that too is no barrier to the merger and corresponding waiver of appellate rights for claims brought in the master complaints.  In summary, the Plaintiff's argument that Short Form Complaints are operative pleadings, standing alone, is unpersuasive to resist the merger doctrine.  However, the Plaintiffs' argument warrants greater consideration when the Court considers Pretrial Order # 31's usage of Short Form Complaints in conjunction with the Plaintiffs' fourth argument, as discussed below.

Fourth and finally, the Plaintiffs' best argument against the merger doctrine is that in lieu of focusing on the objective *Bell* and *Refrigerant* factors, the Court instead should focus on the Plaintiffs' subjective intent to preserve their individual appellate rights which, according to Plaintiffs, was memorialized in the following text  in their master complaints:

> This SAMPIC does not necessarily include all claims asserted in all of the transferred actions to this Court, and it is not intended to consolidate for any purpose the separate claims of the individual Plaintiffs in this MDL. Each Plaintiff in this MDL will adopt this SAMPIC and specific causes of action alleged herein against specific Defendants through a separate Short Form Complaint – Version 3 ("SFC"), attached hereto as Exhibit A. Any individual facts, jurisdictional allegations, additional legal claims, and/or requests for relief of an individual Plaintiff may be set forth as necessary in the SFC filed by the respective Plaintiff.

20

> This SAMPIC does not constitute a waiver or dismissal of any actions or claims asserted in those individual actions, and no Plaintiff relinquishes the right to amend his or her individual claims to include additional claims as discovery proceeds and facts and other circumstances may warrant pursuant to PTO No. 31 or the appropriate Federal Rules of Civil Procedure.

*E.g.*, DE 3887 at 2.  This language cannot be squared with how the parties and the Court have conducted this litigation.  Indeed, the Plaintiffs' assertion that the master complaints were "not intended to consolidate for any purpose the separate claims of the individual Plaintiffs in this MDL" is simply not true—that was the precise purpose of the master complaints and at all times the Court and the parties conducted themselves in accordance therewith.[14]  Further, it is the Court's Pretrial Orders—entered with the Plaintiffs' consent—that govern the creation of the master pleadings and corresponding merger, not the Plaintiffs' unilaterally inserted language.  Finally, any appellate review of the Court's decisions will necessarily turn on the master complaints and not the individual cases, which belies the assertion that the master pleadings were not intended to consolidate "**for any purpose**" the various claims of the individual Plaintiffs.

However, the Court believes that the merger doctrine is ultimately founded on the common-sense principle that if a party elects to waive an individual right, the party may do so.  It is hornbook law that the waiver of a fundamental right must be knowing and intelligent, *Miranda v. Arizona*, 384 U.S. 436, 492 (1966), and the contractual waiver of a right must be knowing and voluntary, *Brookhart v. Janis*, 384 U.S. 1, 4-5 (1966).  Thus, the *Bell* court "urge[d] district judges and MDL plaintiffs to indicate clearly whether a consolidated MDL complaint is to be treated as the operative pleading for purposes of judgment and appeal." *Bell*, 982 F.3d at 490.  When the

---

14 In *Bell*, the appellate court noted that the merger doctrine prevents the parties from "springing traps by treating a consolidated complaint as the operative complaint" in the district court but then, later, "denying its importance and effect" at the time of appeal. 982 F.3d at 490.

Court considers both the usage of Short Form Complaints in Pretrial Order # 31 and the Plaintiffs' express disavowal of the merger doctrine in their master pleadings, the Court concludes that there is room for doubt in this MDL as to the intent of the Plaintiffs to preserve their individual appellate rights.  This doubt was not present in *Bell* and *Refrigerant*, as neither case utilized Short Form Complaints nor had an express disavowal of merger in the master pleadings.

The Court is therefore presented with the situation where the objective actions of the parties and the Court favor the application of the merger doctrine, but certain procedures (in the form of the Short Form Complaints) and subjective disclaimers by the Plaintiffs do not necessarily favor the application of the merger doctrine.  In perfect hindsight, the undersigned, like other MDL judges who have entered agreed-upon pretrial orders,[15] wishes that she had a better appreciation of the significance of the language in Pretrial Order # 31 and the governing law as to the merger doctrine at the time the pretrial order was entered.  The Court resolves this situation by concluding that, in the presence of doubt and the general presumption against a finding of waiver of individual rights, the Court should not find that any right to appeal was waived by a Plaintiff and, instead, the "default rule" applies.  *Id.* at 489 ("The default rule is that separate actions transferred for . . . pretrial proceedings retain their separate identities, especially for purposes of entering final judgments and pursuing appeals.").  As a result, the merger doctrine discussed in the *Gelboim* footnote does not apply to this MDL.  The Court therefore analyzes the parties' Motions from the perspective that each individual Plaintiff in this MDL has not waived his or her right to appeal through the usage of the master pleadings.

---

15 "And to be candid, this Court did not adequately scrutinize lead counsel's proposal—the motion was unopposed at the time, and the Court was not very familiar with the nuances of MDL proceedings." *In re Roundup*, No. 16-MD-02741, 2021 WL 3161590, at *2 (N.D. Cal. June 22, 2021).

### D. Rule 58 Final Judgment and the Generic-Only Cases

Under Rule 58, a Court must enter final judgment when all of the relief that a plaintiff seeks has been denied and, as set forth in Pretrial Order # 31, the Plaintiffs' master pleadings were to be the operative pleadings to determine whether they were entitled to relief as a matter of law.  As to those master pleadings, the Court denied all relief against the Generic.  Through that denial, the Plaintiffs are at least facially entitled to the entry of a Rule 58 final judgments in Generic-Only individual cases, but Pretrial Order # 31 clarifies that the master pleadings are not the *only* operative pleadings.  Another operative pleading exists in the form of the Plaintiffs' Short Form Complaints, filed in their individual cases.  True, Short Form Complaints choose which portions of the master complaints are incorporated into the individual cases and, through that incorporation, the Court's orders of dismissal of the master pleadings apply with full force to the individual cases and individual Plaintiffs.  But it is also true that Pretrial Order # 31 permitted the Plaintiffs to bring claims not pled in the master complaints in their Short Form Complaints, and it is equally true that the deadline for the individual Plaintiffs to amend their Short Form Complaints has not passed.[16] As a result, the Court's orders of dismissal of the master complaints did not necessarily deny all relief sought in the individual Short Form Complaints and individual cases—an individual Plaintiff could, in theory, bring other claims in the Short Form Complaint or could exercise his or her right to amend and incorporate a previously un-pled claim (such as a claim against a Brand Defendant) that was not dismissed by the Court's orders of dismissal.

An opportunity to amend, however, can be waived.  Waiver occurs when a Plaintiff foregoes the opportunity to amend and proceeds directly to appeal. *E.g., Van Poyck v. Singletary*,

---

16 Under Pretrial Order # 31, the Plaintiffs possess the unilateral authority to amend their Short Form Complaints at any time, and there is no deadline for the Plaintiffs to exercise that authority.

11 F.3d 146, 148 (11th Cir. 1994).  Once a plaintiff elects to appeal in lieu of amendment, the plaintiff waives the right to amend his or her pleading at a later time. *Briehler v. City of Miami*, 926 F.2d 1001, 1003 (11th Cir. 1991).  Here, in some of the Generic-Only cases,[17] the Plaintiffs have filed notices of appeal and in some of the Generic-Only cases,[18] the Plaintiffs have not.

In Generic-Only cases where the Plaintiffs have declined to amend their Short Form Complaints and have instead proceeded directly to appeal, the standard for Rule 58 is met and the Court will enter Rule 58 final judgment.  In Generic-Only cases where the Plaintiffs have not filed a notice of appeal, however, there is still a theoretical possibility that the individual Plaintiff could obtain relief in this MDL.  The Court will not enter Rule 58 judgment in those cases until such time as it is clear (1) that all of the relief sought in the Short Form Complaint was addressed in the Court's orders of dismissal on the master complaints, and (2) that the Plaintiff foregoes the right to amend the Short Form Complaint.  The Court leaves to the Plaintiffs' discretion how the foregoing may be accomplished, such as through a stipulation.

The Court now addresses the Mixed-Generic cases, cases involving the Retailers, and the parties' dispute about the applicability of Rule 54(b) to the Court's prior orders of dismissal.  The Court therefore summarizes Rule 54(b) and federal law interpreting the same.

### E.  Rule 54(b) and Applicable Legal Standards

Federal Rule of Civil Procedure 54(b) provides:

> When more than one claim for relief is presented in an action, ... or when multiple parties are involved, the [district] court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

---

17 21-CV-80201; *see* 20-MD-2924, DE 3921.
18 21-CV-81169.

The Rule provides an exception to the general principle that a final judgment is proper only after the rights and liabilities of all the parties to the action have been adjudicated. *Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1024-25 (2d Cir. 1992).

"A district court must follow a two-step analysis in determining whether a partial final judgment may properly be certified under Rule 54(b)." *Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 777 (11th Cir. 2007). "First, the court must determine that its final judgment is, in fact, both 'final' and a 'judgment.'" *Id.* "That is, the court's decision must be 'final' in the sense that it is an ultimate disposition of an individual claim entered in the course of a multiple claims action, and a 'judgment' in the sense that it is a decision upon a cognizable claim for relief." *Id.* (quotation marks omitted). "Second, having found that the decision was a final judgment, the district court must then determine that there is no 'just reason for delay' in certifying it as final and immediately appealable." *Id.* (quotation marks omitted). This question requires the district court to balance judicial administrative interests and relevant equitable concerns. *See id.* When weighing judicial administrative interests, courts may consider any judicial advantage that might be served through entry of judgment. *In re Fontainebleau Las Vegas Cont. Litig.*, No. 09-MD-2106, 2011 WL 13115470, at *3 (S.D. Fla. Jan. 13, 2011). Consideration of judicial administrative interests is necessary to ensure that application of the Rule effectively "preserves the historic federal policy against piecemeal appeals." *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956). As for the second factor—consideration of equitable concerns—such a consideration is necessary to limit Rule 54(b) certification to instances in which immediate appeal would alleviate some danger of hardship or injustice associated with delay. *Se. Banking Corp. v. Bassett*, 69 F.3d 1539, 1547 n.2 (11th Cir. 1995).

Rule 54(b) certifications "must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties." *Morrison–Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981).  Recognizing that such circumstances will be encountered only rarely, the Eleventh Circuit has counseled district courts to exercise the limited discretion afforded by Rule 54(b) conservatively. *Se. Banking*, 69 F.3d at 1550; *see also Ebrahimi v. Huntsville Bd. of Educ.*, 114 F.3d 162, 165-66 (11th Cir. 1997) (collecting the cases cited above and below).

A district court's Rule 54(b) certification is not conclusive on an appellate court. *Se. Banking*, 69 F.3d at 1546.  To the contrary, courts of appeals must review such determinations to ensure that they fit within the scope of the rule. *Id.*  Consequently, although the decision to certify is committed to the sound judicial discretion of the district court, an appellate court must review the conclusion that there is "no just reason for delay" in the interest of sound judicial administration. *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980).  The abuse of discretion standard reflects a recognition that "the task of weighing and balancing the contending factors is peculiarly one for the trial judge, who can explore all the facets of a case." *Id.* at 12.

When, after considering, the relevant factors, a district court is persuaded that Rule 54(b) certification is appropriate, the court should support that conclusion by clearly and cogently articulating its reasoning, together with the supporting factual and legal determinations. *Se. Banking*, 69 F.3d at 1546.  The expression of clear and cogent findings of fact is crucial because it not only facilitates appellate review of a Rule 54(b) certification, but also

assists the district court itself in analyzing the interrelatedness of the claims and the equities of the situation. *Id.*

## F. The Court's Analysis and Conclusion as to the Generics' Request under Rule 54(b)

A concern for courts overseeing MDLs is the possibility that, upon remand, the court's various rulings will be appealed in piecemeal fashion to appellate courts across the federal judicial system. This precise concern is the reason that courts have entered Rule 54(b) judgments in MDLs, such as in the case of *In re: Fontainebleau Las Vegas Contract Litigation*.

In *Las Vegas Contract*, the district court faced a procedural question similar to the instant case. After a partial summary judgment ruling adverse to the plaintiffs, a bankruptcy trustee voluntarily dismissed certain claims in order to render the partial summary judgment ruling final and appealable. 2011 WL 13115470, at *2.[19] As a result of the dismissals, the court entered a Rule 58 final judgment, thereby permitting the trustee to appeal the summary judgment ruling. *Id.* Remaining in the MDL, however, were parties with a vested interest in the results of the appeal— the appeal by the trustee would resolve rulings on legal issues that were identical to the issues remaining in the active MDL. *Id.* at *3.

The district court decided in favor of entering Rule 54(b) judgment so that the active defendants in the MDL affected by the same ruling on appeal could join the appeal. *Id.* at *4. The court reasoned that if the Eleventh Circuit wanted to resolve the trustee's appeal at such time as the MDL concluded, the Eleventh Circuit do so, but by granting Rule 54(b) judgment, the district

---

19 The procedural posture of *Las Vegas Contract* is similar to the instant case insofar as the Plaintiffs have, during the course of this MDL, also sought to perfect appeals through voluntary dismissals of claims subsequent to the Court's partially dispositive rulings. *E.g.*, 20-CV-80512, DE 12, 13, 14. In the event those appeals were properly taken then the possibility exists that, like *Las Vegas Contract*, not all of the cases impacted by the Court's legal rulings would be before the Eleventh Circuit.

court would afford the Eleventh Circuit the option to rule upon the issue as soon as possible, should it elect to do so. *Id.* The district court further reasoned that by giving the Eleventh Circuit the option to resolve certain legal questions with all of the parties before it, the possibility of duplicative, piecemeal appeals was foreclosed—a primary purpose of Rule 54(b) certification. *Id.* In reaching its decision, the district court emphasized that the purpose of an MDL was to centralize proceedings and eliminate duplicative and inconsistent rulings. *Id.* Were the *Las Vegas Contract* district court to deny Rule 54(b) judgment, the legal rulings of the district court would have been disseminated to multiple circuits across the United States, thereby leading to the possibility of inconsistent rulings. *Id.* Concluding that such a result would be contrary to the goal and purposes of an MDL, the district court granted Rule 54(b) judgment. *Id.* at *5. The Eleventh Circuit accepted the Rule 54(b) certification[20] and affirmed the district court's decision.

Applying *Las Vegas Contract* to the instant case, the Plaintiffs have already filed an appeal of an important, dispositive legal issue in this MDL—the Court's conclusion that the Plaintiffs' claims against the Generics were pre-empted by federal law. Also like *Las Vegas Contract*, the Court's ruling was completely dispositive for a small portion of the cases consolidated in the MDL. However, despite the Court's ruling applying equally to all of the cases against the Generics in this MDL, only a small number of the cases brought against the Generics are on appeal—a subset of the Generic-Only cases.[21] Just as in *Las Vegas Contract*, should this Court deny Rule 54(b) certification, there is a possibility that eventually the parties could receive different, inconsistent

---

20 The Court's review of the appellate docket did not uncover an appellate decision that directly addressed the propriety of the district court's certification; however, the Eleventh Circuit consolidated the Rule 54(b) appeals with the Rule 58 appeal and affirmed the district court's summary judgment decision on the merits as to all of the appellants. *Ave. Clo Fund Ltd. v. Bank of Am., NA*, 709 F.3d 1072 (2013).

21 While there are approximately fifty individual cases on appeal, there are likely over one thousand cases in the MDL in which Generics as well as some other Defendant are named in the case.

rulings on federal pre-emption in every circuit court in the United States.  The Fourth Circuit Court

of Appeals addressed such a problem in *In re Food Lion, Inc.*, 73 F.3d 528 (1996).

In *Food Lion*, an MDL court dismissed approximately half of the cases in the MDL at

summary judgment.  *Id.* at 530-31.  Toward the conclusion of the MDL, the cases were remanded

to the transferor courts. *Id.* at 531.  Upon remand, some of the dismissed plaintiffs filed appeals of

their dismissal. *Id.*  The Fourth Circuit declined to consider the merits of the dismissal, and instead

held that any consideration of the merits would frustrate the very purpose of an MDL:

> [I]t would be improper to permit a transferor judge to overturn orders of a transferee
> judge even though error in the latter might result in reversal of the final judgment
> of the transferor court. If transferor judges were permitted to upset rulings of
> transferee judges, the result would be an undermining of the purposes and
> usefulness of transfer under Section 1407 for coordinated or consolidated pretrial
> proceedings because those proceedings would then lack the finality (at the trial
> court level) requisite to the convenience of witnesses and parties and the efficient
> conduct of actions.

*Id.* (citing Weigle, S.A., The Judicial Panel on Multidistrict Litigation, Transferor Courts and

Transferee Courts, 78 F.R.D. 575, 577 (1977)).  The Fourth Circuit held that, prior to remand, the

dismissed defendants *should* have moved for Rule 54(b) certification in the MDL so that all of the

dismissals could be heard by a single appellate court.  *Id.* at 533.  The Fourth Circuit transferred

the cases back to the MDL district so that the plaintiffs could seek a Rule 54(b) certification. *Id.*

The *Food Lion* court's reasoning applies with equal force in MDLs involving pharmaceuticals,

such as *In re Fosamax*, 751 F.3d 150 (3d Cir. 2014).

In *Fosamax*, the district court dismissed claims against a generic drug manufacturer as

pre-empted pursuant to the Supreme Court's decision in *Mensing*, much like the instant case. *Id.*

at 155.  The *Fosamax* MDL continued against the brand manufacturer, also like the instant case.

*Id.*  The plaintiffs appealed the district court's partial dismissal. *Id.*  On appeal, the Third Circuit

held that the plaintiffs should have sought a Rule 54(b) certification. *Id.* at 156.  The plaintiffs thereafter sought and received a Rule 54(b) certification from the district court, and the Third Circuit proceeded to rule upon the merits of the district court's dismissal. *Id.*

In light of the possibility that, barring Rule 54(b) certification, there could be piecemeal, inconsistent appeals stemming from the Court's rulings on federal pre-emption, the instant case is similar to *Fosamax*, *Food Lion*, and *Las Vegas Contract*.  The Plaintiffs have not made an argument that the foregoing cases are distinguishable or are otherwise unpersuasive.[22]  Just as a Rule 54(b) certification was appropriate in those cases, certification is appropriate here.  The only question is *when* and *where*.  As for when, should a 54(b) judgment be entered prior to the resolution of the claims brought against the Brands, who face claims very similar to the claims brought against the Generics?  As for where, should Rule 54(b) final judgment be entered on the MDL docket or should it be entered in individual cases?

Addressing "when," the Court concludes that its rulings on federal pre-emption as to the Generics, Brands, and Retailers are of such great importance that the entry of partial judgment should not be delayed, even though other claims remain pending in this MDL.  All of the parties affected by the Court's federal pre-emption rulings—not just a subset of the Generics—should have the opportunity to argue the propriety of that ruling in a single, binding appellate forum, consistent with the purpose of centralized MDL proceedings.

Addressing "where," the Court believes that it makes administrative sense to docket a single Rule 54(b) final judgment on the MDL docket, and believes that it is administratively unnecessary to docket more than one thousand separate Rule 54(b) judgments in the individual

---

[22] Despite the Generics' reliance upon *Fosamax*, *Food Lion*, and *Las Vegas Contract* in their Motion, the Plaintiffs' Response does not cite or discuss the cases.

cases.  In reaching this conclusion, the Court notes that the Plaintiffs filed their individual notices of appeal on the main MDL docket,[23] and that the active cases for which the judgment is intended remain consolidated in the MDL.  Should any party disagree and seek the entry of over one thousand separate Rule 54(b) judgments, that party may move for the same and explain why it is administratively necessary to do so.

Finally, notwithstanding the Court's conclusion that the Brands would be entitled to Rule 54(b) judgment for claims dismissed with prejudice on federal pre-emption grounds,[24] the Brands have not yet moved for the same.  Therefore, at this time the Court will not enter a Rule 54(b) judgment in favor of the Brands.

## G.  The Court's Analysis and Conclusion as to the Retailers' Motion

The Retailers request the entry of Rule 54(b) judgments in every individual case in the MDL where they are named as Defendants in a Short Form Complaint.  The Court first addresses the Plaintiffs' general negligence claims against the Retailers and then turns to the Plaintiffs' other, non-negligence claims.

<u>The Plaintiffs' General Negligence Claims Against the Retailers</u>

The Retailers' request for entry of Rule 54(b) judgments as to the Plaintiffs' general negligence claims fails under the first prong of a Rule 54(b) analysis, wherein the Court must determine that it has rendered a final decision. *Lloyd Noland Found.*, 483 F.3d at 777.  The Court has not done so.  As the Court has already explained above in Section (A), the Court has not entered a final decision on the Plaintiffs' general negligence claims against the Retailers.  True, there are

---

23 *E.g.*, DEs 3921-23, 26-29.
24 Not every ruling on federal pre-emption as to the Generics and Retailers applied to the Brands, but many did, such as the Court's conclusions on the Plaintiffs' misbranding theory.

no pending claims against the Retailers in any operative *master* pleading in this MDL, but that is because the Court previously dismissed without leave to amend the Plaintiffs' attempt to plead negligence claims against the Retailers without any supporting, concrete allegations of negligence by a particular Defendant.[25] DE 3716.  Labeling the claims as "global" claims (for seeking to impose liability on all Retailers, for all sales of ranitidine, for all time), the Court dismissed the claims as implausibly pled due to the lack of supporting factual allegations and analogized the Plaintiffs' negligence claims to medical malpractice claims:

> The Plaintiffs sought to impose *global* MDL liability on the Defendants without any concrete, particularized, or individualized allegation of negligence.  The Court's dismissal rejected this global theory.  Such a theory would be akin to Plaintiffs alleging medical malpractice claims against thousands of doctors who prescribed ranitidine.  As with negligence claims, medical malpractice claims are highly individualized, highly case-specific claims that do not necessarily lend themselves easily to resolution in an MDL setting.  The Court's dismissal of medical malpractice claims from a master pleading (just as the dismissal of Plaintiffs' negligence claims without leave to amend) would not preclude the individual Plaintiffs from *ever* bringing a medical malpractice claim—they simply could not press such a claim in the MDL.

DE 3913 at 3.  The type of negligence claim that the Plaintiffs might be able to plead would, like a medical malpractice claim, be necessarily case-specific and Plaintiff-specific.  As discussed by the Plaintiffs at the hearing on the first round of motions to dismiss:

> Thus, it is the Plaintiffs' contention that the Defendants should be held liable under state law because the Defendants should have used "cooled storage and transport." At the Hearing, the Court inquired about this allegation. . . . The Plaintiffs also responded by explaining that they believed a Defendant could be held liable for overheating a drug in its possession, such as "le[aving] Ranitidine on a hot truck in the Arizona desert during the summer for extensive periods of time creating temperature ranges that vastly exceeded those on the label."

---

25 Prior to the Court's decision at docket entry 3716, the individual Plaintiffs would not have been on notice of the need to plead individualized negligence claims in their Short Form Complaints.

DE 2513 at 35 (citations omitted). If a Plaintiff has a good faith basis to plead a "hot truck in the Arizona desert" negligence claim based upon the particulars of an individual Plaintiff's factual allegations, the Court previously explained that such a claim (like a medical malpractice claim) does not easily lend itself to adjudication in an MDL setting. Instead, the question of whether an individual Plaintiff has pled an individualized, case-specific negligence claim would ordinarily be resolved by a judge upon remand that can give individual cases individual attention:

> Upon remand, the individual Plaintiffs should have the option to seek through amendment a negligence claim on case-specific facts, provided an individual Plaintiff has a factual basis to do so. That is a matter for the judge upon remand, and in light of the fact that the Court has not dismissed any individual case, the Court declines to enter a final order of dismissal in individual cases as to claims against Retailer and Distributor Defendants.

DE 3913 at 4.

At present, the Court has not decided precisely when and how[26] individualized negligence claims against Retailers could be remanded, but the Retailers have requested clarification from the Court on this issue. DE 4177 at 10 ("[C]larification from the Court about the intended effect of its suggestion that individual Plaintiffs may later re-file individualized negligence claims against the Distributors and Retailers would benefit all parties and promote the efficiencies that this MDL, like all MDLs, was created to accomplish."). Although the Court will not reach a final determination on this subject until the parties have had a chance to brief and argue the same, the Court provides clarification as follows.

Because the Court will not permit the Plaintiffs to bring a global negligence claim in the master complaints that is devoid of individualized allegations of negligence, the only operative

---

26 The Court notes that it possesses the power to sever individualized negligence claims from this MDL pursuant to Rule 21.

pleading in this MDL for an individualized negligence claim to be pled is the Short Form Complaint, as discussed above in Sections (A), (C), and (D).  Yet no Short Form Complaint, at this time, contains any individualized allegations of negligence.[27]  And while the Court has noted that individualized negligence claims do not "easily" lend themselves to adjudication in an MDL setting, the Court will entertain discussion at a future status conference on how individualized negligence claims should be addressed in this MDL in light of this Court's mandate to complete pretrial proceedings. 28 U.S.C. § 1407.

At the forthcoming status conference, the Court has a number of questions that the parties may address on this topic.  For example: Should the individual Plaintiffs plead an individualized negligence claim in their Short Form Complaint by a date certain?  Such a claim has yet to be seen by this Court—a claim wherein an individual Plaintiff alleges that his or her cancer was proximately caused by a specific delivery truck or a specific warehouse utilizing temperatures that "vastly exceeded" the ranitidine label.[28]  It may be that, once such claims are pled, the Court can decide whether case-specific negligence claims *can* be addressed in this MDL prior to remand through the same pretrial proceedings applicable to master complaints.  As the Court previously explained:

> The Court does not mean to suggest that this MDL is no longer relevant to the negligence claims against the Retailer and Distributor Defendants.  For example, the Court will adjudicate a common issue that is highly relevant to the Plaintiffs' negligence claims—general causation.  If the Plaintiffs lose on general causation, they will necessarily lose on every claim, including any individualized negligence claim.  Similarly, the Court's *Daubert* rulings may limit the number of cancers that

---

[27] The Retailers have represented that no Short Form Complaint contains an individualized claim of general negligence. *See* DE 4177 at 10 ("No individualized negligence claims are currently asserted against the Distributors or Retailers in this MDL.").  The Court has not undertaken an independent review to verify the Retailers' representation.

[28] Throughout the entirety of this MDL the Plaintiffs have represented to the Court that they have a good-faith basis to plead such claims.

34

an individual Plaintiff may bring.  Should only a subset of cancers survive *Daubert*, only some of the individual Plaintiffs could litigate an individualized negligence claim.  Should the Plaintiffs survive the Defendants' *Daubert* challenges, then, at the proper time, an individual Plaintiff may seek to pursue his or her individualized negligence claim against a Retailer or Distributor Defendant.  They simply cannot do so now for all of the reasons set forth in the Court's orders of dismissal.

*Id.* at 4-5.

In summary, the master complaints are not a procedural vehicle for individual Plaintiffs' individual allegations of negligence.  The Court will hear from the parties at a forthcoming status conference whether individualized negligence claims should be pled in the Short Form Complaints, whether the Court should utilize a case management procedure to address individualized negligence claims, and how and when, if at all, the claims should be remanded.  As for the Retailers' request for Rule 54(b) judgment on the Plaintiffs' negligence claims, the request is denied.

<u>All Other Claims Brought Against the Retailers</u>

In the Plaintiffs' initial master pleadings, the Retailers faced many claims besides negligence.  By way of example, the Plaintiffs brought a strict liability failure to warn claim against the Retailers. DE 887 at 105.  The Court dismissed almost all[29] of the Plaintiffs' non-negligence claims with prejudice, utilizing a similar federal pre-emption analysis that the Court applied to the claims brought against the Generics. DE 2513.  Therefore, for the same reason the Generics are entitled to a Rule 54(b) judgment—to avoid piecemeal appeals of the Court's prior rulings on federal pre-emption—the Retailers are also entitled to a Rule 54(b) judgment.  Stated another way, because the Court's entry of Rule 58 judgments in favor of the Generics will permit the Plaintiffs

---

29 The Court dismissed certain derivative claims (such as loss of consortium) without prejudice. DE 2513 at 44.

to raise an issue on appeal that implicates the Court's pre-emption rulings as to the Retailers, the Retailers are granted Rule 54(b) judgment so that they may join and be heard in the appeal.

### H. The Court's Entry of Judgment

For the reasons set forth above, the Court will enter Rule 58 judgments in Generic-Only cases with a notice of appeal. The Court will also enter Rule 54(b) partial final judgment as to the Generics and the Retailers on the main MDL docket. The Court clarifies its intent in entering Rule 54(b) judgment on three points. First, it is the Court's intent to perfect any appeal that the Plaintiffs may seek to bring against the Generics flowing from the Court's rulings on the master complaints. Second, it is the Court's intent to perfect any appeal that the Plaintiffs may seek to bring against the Retailers for claims the Court dismissed with prejudice, but the Court does not certify for 54(b) judgment the Plaintiffs' general negligence count against the Retailers. Third and finally, the Court does not certify any ruling specific to the class complaints because (1) it appears that no party has sought such a certification,[30] (2) the class complaints remain pending, and (3) any appellate ruling on conflict pre-emption or obstacle pre-emption in the context of the personal injury complaints would necessarily have the same effect in the context of the class action complaints.

Having clarified its intent, the Court will enter Rule 54(b) judgment as follows:

<u>The Generics</u>

The Court will enter Rule 54(b) judgment as to the Generics for all claims dismissed with prejudice from the master personal injury complaints.

<u>The Retailers</u>

---

30 *E.g.,* DE 3904 at 3 (Plaintiffs stating: "[T]he instant Motion is not about the class action complaints in this MDL.").

As to the original Master Personal Injury Complaint at docket entry 887, the Court will enter Rule 54(b) final judgment as to the Retailers for Counts I though VI, and Counts VIII through XII, which the Court dismissed with prejudice on conflict pre-emption grounds at docket entry 2513.

The Court addresses one final matter.  A primary basis for the Plaintiffs' objection to Rule 54(b) judgment is that the entry of the judgment would require them to pay excessive appellate filing fees.  If the Plaintiffs are correct, that is a ramification that flows from the way the Plaintiffs have prosecuted their appeals.  First, the Plaintiffs have taken the position that, master pleadings notwithstanding, each individual case in this MDL has retained its full identity and corresponding appellate rights; were the Plaintiffs to adopt the opposite position and conclude that the more efficient merger doctrine applies, there would be no need to take many appeals from many individual cases.  Second, the Plaintiffs have elected to take appeals and seek Rule 58 final judgments in only a very few, select cases.  For the reasons set forth in this Order, the Plaintiffs' decision to seek individual appeals in this manner is the **reason** the Defendants are entitled to Rule 54(b) judgment; had the Plaintiffs sought to appeal through another avenue—such as through a 28 U.S.C. § 1292(b) interlocutory appeal—there would be no need to take many appeals from many individual cases.

In summary, the Plaintiffs' appellate filing fees are not grounds to deny the Defendants what they are entitled to—a Rule 54(b) judgment—particularly when the fees flow from the Plaintiffs' unilateral decisions.  Even so, the Court stands ready to issue any order that the Plaintiffs may identify as a valid option to reduce or eliminate filing fees, such as the procedural avenues identified by the Generics at docket entry 4149.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that the Distributor, Retailer, and Pharmacy Defendants' Motion for Entry of Final Judgment in all Cases Naming Distributor, Retailer, and Pharmacy Defendants [3934] is **GRANTED IN PART AND DENIED IN PART** and the Generic Manufacturer's Motion for Entry of Final Judgment in Mixed-Defendant Cases [3933] is **GRANTED IN PART AND DENIED IN PART** as more fully set forth in this Order.

The parties shall confer and submit joint proposed final judgments that conforms to the Court's rulings herein.    The    proposed    final    judgment    shall    be    sent    to zantac_mdl@flsd.uscourts.gov in Microsoft Word format and shall be due within four (4) business days of the date of rendition of this Order.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 1st day of November, 2021.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record