UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-MD-2924

IN RE: ZANTAC
(RANITIDINE)
PRODUCTS LIABILITY
LITIGATION
_____/

**ORDER ON MOTION TO COMPEL [ECF No. 4600]**

Defendants served the 10 named class-action plaintiffs ("the Class Plaintiffs") with Requests for Production and Interrogatories related to the Second Amended Consolidated Economic Loss Class Action Complaint ("ELC Complaint") and the Amended Consolidated Medical Monitoring Class Action Complaint ("MM Complaint"). The Class Plaintiffs have agreed to collect and produce evidence from some electronic sources, including social media accounts, but not from all the sources identified by Defendants. Defendants move to compel more rigorous searches. That motion is DENIED.

I have reviewed Defendants' Motion to Compel and all of its exhibits. ECF No. 4600. I have also reviewed the Class Plaintiffs' Response and all of its exhibits. ECF No. 4633. I held oral argument on November 10, 2021. I am fully advised and this matter is ripe for decision.

Defendants' Requests for Production (RFP) 41-52, 56-59, and 70 and Interrogatories 13 and 21 (collectively "the Discovery Requests") seek evidence of:

- communications prepared or received by the Class Plaintiffs related to the allegations in the complaints (RFPs 41-42)

1

- communications prepared or received by the Class Plaintiffs related to over-the-counter brand-name Zantac, prescription brand-name Zantac, or other ranitidine-containing products (RFPs 43-48)
- documents prepared or received by the Class Plaintiffs related to this MDL (RFPs 49-50)
- communications between the Class Plaintiffs and the Defendants (RFP 56)
- communications between the Class Plaintiffs and any manufacturer, distributor, retailer, or supplier of over-the-counter brand-name Zantac, prescription brand-name Zantac, or other ranitidine-containing products (RFP 57-59)
- any websites the Class Plaintiffs maintain(ed), contributed to, or visited related to over-the-counter brand-name Zantac, prescription brand-name Zantac, or other ranitidine-containing products (RFP 60)
- any online website, forum, or platform where the Class Plaintiff has sent, received, or viewed any content or communication concerning the allegations in the complaint, this MDL, or related to the claims and defenses in this litigation (Interrogatory 21, RFP 52)
- All usernames or handles that the Class Plaintiff has used online or in social media to post information or commentary related to ranitidine-containing products, ranitidine, NDMA, any Defendant, or any lawsuit related to any ranitidine-containing product.  (Interrogatory 13)

The Discovery Requests seek evidence from "emails, social media posts, blog posts or other written communications."

The Class Plaintiffs responded in writing to the Discovery Requests. They lodged objections based on relevance, proportionality, and privilege. The parties have conferred and have narrowed the issues in dispute. The remaining disputes for me to resolve now are:[1]

1. Is evidence of risky behavior by the Class Plaintiffs (such as smoking, drinking, obesity, poor diet, etc.) relevant to the claims and defenses in the ELC and MM Complaints? Tr. at 11.

2. Are the discovery requests proportional to the needs of the case insofar as they seek more rigorous searches for evidence of risky behavior, cancer risk factors, economic loss, other cancer-related lawsuits, and the statute of limitations? Tr. at 7-12.

3. Does the evidence collection protocol used (and to be used) by the Class Plaintiffs satisfy their obligation under Federal Rule of Civil Procedure 26(g)(1) to perform a "reasonable inquiry" before representing to the Defendants that they have complied with the discovery requests?

---

[1] The parties presented two additional issues that I deferred pending further conferral: (1) which search terms must be used as part of the search protocol and (2) how the Class Plaintiffs should certify their compliance with the discovery requests.

A. *Relevance of Risky Behaviors*

For the reasons argued by Defendant's Counsel at the oral argument, I find that evidence of risky behavior is relevant to the claims and defenses in this MDL, including whether the Class Plaintiff meet the typicality and adequacy requirements to be class representatives. *See* Hrg. Tr. at 12-19. At a minimum, for the ELC Complaint, this evidence is relevant to detrimental reliance and materiality; for the MM Complaint, it is relevant (at least) to establishing a baseline cancer risk that was (allegedly) significantly increased by the use of ranitidine products.

B. *Discovery Scope*

The substantive scope of discovery is limited to evidence relevant to the claims and defenses asserted by the parties *and* proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In evaluating proportionality, the Court looks to (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to the relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs the likely benefit. Fed. R. Civ. P. 26(b)(1).

Class Plaintiffs do not object to searching email accounts, text messages, document repositories (e.g., computers, tablets, external storage media, cloud-based storage), Facebook profiles, Twitter profiles, and WhatsApp communications.[2] They

---

[2] It is my understanding that the Class Plaintiffs' references to the social media account owner's "profile" means the information that would be visible on the account

object, on proportionality grounds, to searching Instagram, Snapchat, TikTok, Facebook Messenger, Twitter Direct Messages, and Facebook Activity. With regard to Facebook Messenger and Twitter Direct Messages, counsel for the Class Plaintiffs represent that they queried their clients, individually, and have learned that these platforms were not used for communications that would be relevant. Tr. at 34. They therefore argue that the burden of searching these additional platforms outweighs the likely benefit. *Id.* at 34-35, 39-41. Defendants respond that these sources can be readily searched and that Defendants should not be limited to relying on deposition testimony or other after-the-fact evidence.

I now turn to the proportionality factors. The amount in controversy in this MDL is substantial, which militates in favor of more expansive discovery. The Plaintiffs have more access to information about their own backgrounds and behaviors, which cuts in favor of more expansive discovery. Both sides have ample resources, so this factor is neutral. That being said, I give these factors collectively much less weight than the remaining factors.

The requested discovery goes primarily to the issue of class certification, and more specifically whether the currently-named Class Plaintiffs satisfy the typicality and adequacy requirements of Federal Rule of Civil Procedure 23(a)(3) and (a)(4).

---

owner's own social media page(s). It would not include items posted by the account owner on other pages (or elsewhere) that do not simultaneously appear on the account owner's page(s). Similarly, it would not include postings by third parties that cross-reference or mention the account owner but do not appear on the account owner's page(s). It is my understanding that some of these excluded items might be captured on Facebook Activity. *See* Tr. at 56, 58-59.

These issues, while important to the litigation, are not significant hurdles that warrant exhaustive discovery. As Judge Rosenberg has explained elsewhere:

> A court examining the typicality requirement should determine whether a "sufficient nexus exists between the claims of the named representatives and those of the class at large." *Vega [v. T-Mobile USA, Inc.*,] 564 F.3d [1256,] 1275 [(11th Cir. 2009)]. A named plaintiff's claims are "typical" when they arise from the same "event or pattern or practice and are based on the same legal theory" as the claims of the remainder of the class. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *Prado–Steiman v. Bush*, 221 F.3d 1266, 1269 (11th Cir. 2000). "The test for typicality, like commonality, is not demanding." *Hicks v. Client Servs., Inc.*, Case No. 07-61822, 2008 WL 5479111 (S.D. Fla. Dec. 11, 2008) (quoting *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996)).
>
> . . .
>
> "[T]he typicality requirements is permissive: representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 674 (S.D. Fla. 2011). "To defeat typicality, a defendant must show that conflict between the named representatives and the class members is 'such that the interests of the class are placed in significant jeopardy.'" *Id.* (quoting *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996)).

*Alderman v. GC Services Ltd. P'ship,* 2:16-CV-14508, 2018 WL 542455, at *5 (S.D. Fla. Jan. 19, 2018). Likewise, adequacy "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) *cited in Alderman*, 2018 WL 542455, at *6. Given these relatively permissive legal standards and the large number of available class members, it appears likely that even if the current Class Representatives fail to satisfy Rule 23(a), an adequate

substitute could be found. Additionally, the Class Plaintiffs have agreed to conduct searches of sources that are likely to produce evidence probative of these issues. For these reasons, I find that this proportionality factor does not weigh in favor of the broader discovery advocated by Defendants.

Similarly, I do not give great weight to the importance of the requested discovery in resolving the issues of typicality and adequacy. Defendants seek text messages and digital evidence of risky behaviors, cancer risk factors, economic loss, other cancer-related lawsuits, and knowledge of facts that might trigger the statute of limitations. It is certainly more probative of these issues if a Class Plaintiff has engaged in systematic risky behaviors or has an extended history of cancer risk factors. It is less probative if there are merely isolated incidents. As Defendants note, there are numerous alternative sources of equally or more probative evidence (such as the sources they have agreed to search, medical records, court filings, and financial records) that do not require granular ESI searching of these additional platforms. Put simply, it is not worth the candle to search these additional social media platforms for pictures or posts of individualized incidents of someone smoking or eating bacon or drinking to excess. If that person is a long-term smoker, eats badly, or drinks excessively, there are other ways to prove it that are readily available to Defendants.

Finally, because the requested additional evidence is not integral to proving an important issue in the litigation, the burden of searching for it outweighs the likely benefit. Even assuming that Defendants are correct that inexpensive and readily-

7

usable tools exist that would simplify searching for this evidence, Class Plaintiffs have agreed to search other sources and have engaged in a reasonable inquiry that indicates it is unlikely that relevant material will be found in the sources that they are declining to search.

In sum, I find that searching the Class Plaintiffs' accounts on Instagram, Snapchat, TikTok, Facebook Messenger, Twitter Direct Messages, and Facebook Activity is not proportional to the needs of the case.

C. *Search Protocol*

Once the substantive scope of discovery is defined (i.e., after any objections are resolved) a party is required to conduct a "reasonable inquiry" to identify responsive materials. Fed. R. Civ. P. 26(g)(1)(B). Here, Class Plaintiffs propose to limit their searches as follows:

- They will not search 48 email accounts that the Class Plaintiffs have identified as being used solely for receiving spam, doing work, or being inaccessible

- They will not search 75 depositories that the Class Plaintiffs have identified as only being used for work and/or not being used to save documents

- They will conduct "linear searches" of the Facebook and Twitter profiles.

*See generally,* DE 4600-4 at 2-3, Tr. at 21-25. I find that the proposed search protocol complies with Rule 26(g)(1)'s requirement that a party conduct a "reasonable inquiry" to locate materials responsive to a discovery request. Rule 26(g) does not require a

comprehensive search of all possible locations where responsive evidence may be found.  Nor does it require a perfect or even optimal search.  It requires a "reasonable" inquiry.  Plaintiffs' proposed protocol meets that standard.

**WHEREFORE,** Defendants' Motion to Compel is DENIED without prejudice to seeking additional discovery for good cause shown.  On or before **November 19, 2021, at noon EDT**, the parties shall agree on search terms or shall submit their individual proposed search terms to the Court.  *If the parties cannot agree, the Court will select, in full, one proposal or the other.*  Plaintiffs shall begin a rolling production of materials responsive to the Discovery Requests no later than November 29, 2021.

**DONE and ORDERED** in Chambers this 15th day of November, 2021, at West Palm Beach in the Southern District of Florida.

_____
  BRUCE E. REINHART
  UNITED STATES MAGISTRATE JUDGE