# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

IN RE: ZANTAC (RANITIDINE)                    MDL NO 2924
PRODUCTS LIABILITY                            20-MD-2924
LITIGATION

JUDGE ROBIN L. ROSENBERG
MAGISTRATE JUDGE BRUCE E. REINHART

_____/

**THIS DOCUMENT RELATES TO:**

*Brian Wormley v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.* 2:21-cv-4475
*Roberto Jimenez v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.* 5:21-cv-04481


## PLAINTIFF BRIAN WORMLEY & PLAINTIFF ROBERTO JIMENEZ'S MOTION TO REMAND



DATED: November 23, 2021

Plaintiffs Wormley and Jimenez file this Motion to Remand as permitted by this Court's Order at D.E. 4692.

## INTRODUCTION

Defendants know that this case is "due to be remanded."  D.E. 3156 at 4.  Yet, because they want to delay, they removed anyway.  Brian Wormley and Roberto Jimenez both suffer from bladder cancer.  *See Wormley*, Compl. ¶ 16; *Jimenez*, Compl. ¶ 16.  They are citizens of Pennsylvania, as are Rite Aid and Patheon.  *See Wormley*, Compl. ¶¶ 13, 23; *Jimenez*, Compl. ¶¶ 13, 32, 37.  There is thus no diversity jurisdiction.  *See Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806).  When, as here, the "district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

To dodge this statutory command, Defendants rely on the registry agreement.  No legal authority supports the notion that a private agreement (or a court order memorializing it) can justify removing an action to federal court.  Whether complied with or not, the registry agreement's forum selection clause cannot create federal jurisdiction.  Defendants cite not one case in which such an agreement has made any difference to a court's removal jurisdiction, and none exist.  Notwithstanding its irrelevance to jurisdiction, Plaintiffs *complied* with the registry agreement.  That agreement requires plaintiffs "to name only those defendants that they have a good faith belief marketed or manufactured Zantac or … that they in *good faith* believe they *may* have a valid claim against for other reasons."  PTO 15 at 11 (emphasis added).  "The requirement to file in a federal court shall not be applicable to actions as to which a federal court would lack diversity jurisdiction."  *Id.*  That is this case.

Both Plaintiffs purchased branded Zantac from Rite Aid locations. *Wormley*, Compl. ¶ 15; *Jimenez*, Compl. ¶ 15. They have a good-faith belief that Rite Aid is—let alone "may" be—liable for their injuries under Pennsylvania law. Plaintiff Jimenez also purchased and consumed Zantac that Patheon "manufactured." *Jimenez*, Compl. ¶¶ 14-15 (Plaintiff consumed OTC Zantac from 2000 through 2019); 60-61 (Patheon manufactured OTC Zantac from 2017 through 2019 for Sanofi, the sole NDA holder and seller of OTC Zantac during that time). Defendants do not dispute that Patheon-manufactured OTC Zantac was sold in Pennsylvania during the period Plaintiff consumed it.

Defendants work around this by pretending to find pleading deficiencies regarding Patheon, asserting without support that "marketed" means holding an NDA, and *further* arguing that Plaintiffs lack a good faith basis for suing Rite Aid because of MDL rulings regarding some (but not all) of the claims against retailers. The meaning of PTO 15 is not a moving target, and the terms "marketed", and "good faith" are well understood. Marketed does not mean "held the NDA"; and counsel and state-court jurists of reason are free, *in good faith,* to respectfully disagree with this Court's orders, especially on complex matters of preemption.

Yet even if it were possible to maintain that disagreeing with this Court's decisions meets the definition of "bad faith," this Court has made crystal clear that it has *not* dismissed negligence claims against retailers. *See* D.E. 4595 at 8–10, 31-35. And that is precisely one of the claims Plaintiffs bring against Rite Aid in their complaints, with sufficient detail to satisfy this Court's interpretation of Rule 8. *See Wormley*, Compl. ¶ 293u; *Jimenez*, Compl. ¶ 311u (same). And even if *that* were not true, a pleading deficiency is never sufficient to disregard a non-diverse defendant on a motion to remand for the sensible reasons that it may be cured.

The registry to one side, Defendants' only legal argument against jurisdiction is so-called "fraudulent joinder," under which a Defendant against whom a plaintiff *could not possibly* recover can be disregarded.  This argument does not fit, since Plaintiffs *purchased* a harmful drug from Rite Aid, a long-time Pennsylvania company.  Rite Aid is not an obscure shell company or individual.  In Jimenez's case, *even if* the registry were relevant, and *even if* the Court found that Jimenez fraudulently joined Rite Aid, Patheon "manufactured" branded Zantac consumed by Jimenez, and so is a proper (and non-diverse) defendant.

Preemption cannot help Defendants for two independent reasons.  First, Plaintiffs allege negligence that this Court *declined to dismiss,* and a New Mexico court already accepted. Second, Plaintiffs have a powerful argument that preemption does not bar parallel claims against retailers based on the federal misbranding provision, an argument that has been accepted by two Illinois courts and two Pennsylvania courts, and that is genuinely unsettled.  Accepting both the facts *and the law* in Plaintiffs' favor—as is required under Eleventh Circuit precedent—it is obvious that a state court could *possibly* accept Plaintiffs' arguments.  Multiple cases have ruled that joinder of retailers *is not* fraudulent, including multiple orders from this Court.  *See* D.E. 2824 (California plaintiffs); 2870 (New Mexico); 3156 (Baltimore).  This Court explained that even complaints that *did not* adequately allege negligence claims against a retailer must be remanded because they would automatically do so once they were filed within the MDL.  D.E. 3156 at 4 ("One way or another, this case is due to be remanded.").

Congress specifically authorized "requir[ing] payment of just costs . . . including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  This Court previously declined to award fees due to "the lack of clarity in the Plaintiff's Complaint." D.E. 3156 at 4, n.1.  Defendants have no such excuse now.  Both complaints name a brand-name manufacturer; both complaints

name Rite Aid, and *specifically* plead a negligent storage claim based on high temperatures. Defendants were on clear notice, yet removed anyways.  Fees are warranted.

## LEGAL OVERVIEW

Under Eleventh Circuit precedent, "federal courts are directed to construe removal statutes strictly" and "all doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).  Defendants bear a heavy burden: to show by "clear and convincing evidence" that "there is no possibility the plaintiff can establish a cause of action against the resident defendant." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (internal quotation marks omitted).  "The standard for evaluating whether the plaintiff can establish a cause of action against the resident defendant is very lenient." *Ullah v. BAC Home Loans Servicing LP*, 538 F. App'x 844, 846 (11th Cir. 2013).  On the facts, Defendants cannot point to a pleading defect to meet their "clear and convincing evidence" burden, since "a pleading issue [] may be remedied via leave to amend, and even conclusory allegations in a complaint are sufficient for a Plaintiff to survive a fraudulent joinder challenge."  D.E. 3156 at 3.  And a court must resolve any "uncertainties" of *law* or fact in favor of remand.  *Stillwell*, 663 F.3d at 1333; *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (same).  "Supreme Court precedent is clear that a plaintiff's motivation for joining a defendant is not important . . . ." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1291 (11th Cir. 1998).

## ARGUMENT

I.    **Participating in the Registry Is Not Remotely a Basis for a Finding of Fraudulent Joinder.**

No court has ever retained jurisdiction over a case on the basis of a registry agreement. Indeed, in a similar case Judge McGlynn in the Southern District of Illinois considered precisely the same argument Defendants make here, and promptly remanded the case.  *See* Ex. 1, (*Bayer, et*

*al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.*, S.D. Illinois, Cause No. 21-01084 (Sept. 15, 2021)). That Order correctly noted that the complaint "include[d] allegations of actions that the non-diverse Defendants could have taken under federal law," then concluded that "is all that is required that at least some possibility exists that an Illinois state court would find that the claims against the non-diverse defendants are not preempted." *Id.* Judge McGlynn appropriately did not separately discuss the registry argument because it is not a basis for federal jurisdiction.

>    **A.    The Registry Cannot Convey Federal Jurisdiction.**

Nonetheless, with no mention of that ruling, Defendants' notices of removal each invoke the "registry" more than twenty times, suggesting that Plaintiffs here must meet a different standard. Such an argument is without any legal support. All must agree that "jurisdiction cannot exist by mere consent of the parties." *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1279 (11th Cir. 2012). *See also  Warnaco Inc. v. VF Corp.*, 844 F. Supp. 940, 950 (S.D.N.Y. 1994) ("Parties cannot create subject matter jurisdiction through a contract[].."); *Licensed Practical Nurses, Technicians and Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc.*, 131 F. Supp. 2d 393, 402–03 (S.D.N.Y. 2000) ("Private parties cannot defeat the subject matter jurisdiction of the federal courts by means of a forum-selection clause, any more than they could, by the same means, confer such jurisdiction on this court in a case in which diversity or a federal question were lacking."). Ignoring that basic point, Defendants extensively argue that this Court must decide in the first instance whether the registry compels filing in the MDL, but this improperly jumps to the merits before addressing jurisdiction.

Even if Defendants were right that the registry *required* these cases to be filed in federal court, then, as in any case involving a forum selection clause, that would be a basis to seek dismissal (or perhaps the nullification of the tolling benefit) before the state court or a breach of contract action—it is no reason to decide anything in federal court. The registry is not encoded

into Title 28 of the United States Code; it is not an article of the Constitution; it does not convey subject matter jurisdiction to any federal court. Defendants have cited not a single legal authority for their contrary position. *See Wormley*, NOR at 9-13; *Jimenez*, NOR at 16-20.

**B.** **The Registry Allows the Suit Here, and *a fortiori* a State Court Could So Find.**

The terms of the registry reflect an agreement for which "both parties have *negotiated* in good faith and made *concessions*." PTO 15 at 3 (emphasis added). The aim was to enable persons (like Plaintiffs) who have not filed cases—and so are not subject to the jurisdiction of the MDL court—to submit information that may be helpful to Defendants, Plaintiffs' Leadership, and the potential Plaintiffs themselves. *See id.* at 2 (registry would provide "transparency for the Court and leadership counsel into the claims that are still being investigated and developed"). All plaintiffs "with potential claims related to Zantac . . . are encouraged to" join the registry. *Id.* at 10. This agreement did *not* commit anyone who joined to agree with the MDL court or have all claims adjudicated by it. In fact, the agreement contemplated that "cases that could be properly filed in *either federal or state courts* can be registered." *Id.* at 11 (emphasis added). And claimants may "exit[] the registry," with the consequence that tolling would end thereafter. *Id.* at 11.

One of the "negotiated" terms was that "Claimants within the Registry either shall file their complaints in any federal court . . . or may file their complaints directly in the MDL." *Id.* at 11. However, a "negotiated" exception was that any "requirement to file in a federal court shall not be applicable to actions as to which a federal court would lack diversity jurisdiction." *Id.* at 12. This provision does not restrict a claimant's ability to file against defendants that would destroy diversity jurisdiction, though it could have. It does not even mention "good faith," though other provisions did. This case fits squarely within that exception. Plaintiffs could not bring their claims against Rite Aid (and, in Jimenez's case, against Patheon too) in federal court, and so exercised

their unambiguous right to file in state court.  Unable to rely on the forum selection clause itself—since it has an unequivocal exception—Defendants try to argue that a *separate* section limiting who can be named in *any action* serves as a bank-shot that blocks a Claimant from using the no-jurisdiction exception.

This argument ignores the context of the "name only" provision, which does not address non-diverse Defendants.  *After* saying Claimants shall file in the MDL, but *before* giving the no-jurisdiction exception, PTO 15 states that Claimants "commit, *to the extent they file an action*, to name only those defendants that they have a good faith belief marketed or manufactured Zantac or ranitidine products that such Claimants ingested or that they in good faith believe they may have a valid claim against for other reasons."  *Id.* at 11 (emphasis added).  On Defendants' argument, the purpose of the "name only" section is to limit the naming of "non-diverse defendants," *Wormley*, NOR at 10; *Jimenez*, NOR at 17, but that is not what the text says, and such a tortured reading conflicts with the context, which is *filing actions in any court*.  An officer of the court has an obligation to only sue parties it believes in good faith may be liable for the claims alleged.  That is plainly what the language codifies.  The ordinary reading of this provision is to constrain naming extraneous Defendants in general, not a limitation on particular types of Defendants, and certainly not a limitation on Defendants who also happen to be citizens from the same state as a Plaintiff.

1.    *Each Defendant "Marketed" or "Manufactured" Zantac.*

Plaintiffs did not violate the "name-only" clause. Patheon is, of course, a manufacturer. Defendants object to Jimenez's suit against Patheon, but that is a factual dispute; it has nothing to do with the registry agreement.  Defendants admit that Patheon was a contract manufacturer for Sanofi (it worked for the prior NDA-holder before that, which would be sufficient on its own), and manufactured "finished product Zantac."  *Jimenez*, NOR at 22.  That admission makes clear that a state court *could possibly* find that Jimenez, who consumed OTC Zantac through 2019,

consumed Patheon's Zantac. *Jimenez*, Compl. ¶ 15 (Plaintiff consumed OTC Zantac from 2000 through 2019). This also means Patheon was not fraudulently joined.

Rite Aid "marketed" Zantac. Assuming Florida contract law governs PTO 15, courts "commonly adopt the plain meaning of words contained in legal and non-legal dictionaries" in interpreting contracts. *Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1221 (11th 2015). According to Merriam-Webster, "marketed" is the past tense of the transitive verb "market," which means "1: to expose for sale in a market" or "2: sell."[1] The pleadings allege *sale*, and also allege affirmative advertising. *E.g.*, *Wormley*, Compl. ¶ 25 ("Rite Aid derived substantial revenue from marketing . . . and selling Zantac"); *Jimenez*, Compl. ¶ 39 (same). No reasonable reader would suspect that "marketed" means the NDA-holder alone, because the text does not say that. Constraining Registry Claimants to this meaning would be tantamount to an ambush. By contrast, the ordinary meaning matches the parties' course of dealing, since retailers have been sued in virtually all ranitidine-related cases in every court. Defendants have never suggested that new cases filed in the MDL that name a retailer are violating the Registry. But, if Defendants are right, any action filed in the MDL—or anywhere—that names a retailer necessarily violates the Registry.

> 2. *Plaintiffs in Good Faith Believe They Have a "Valid Claim for Other Reasons" Against Rite Aid.*

Even if marketing and manufacturing were not enough, the language "valid claim against for other reasons" encompasses Rite Aid. Claimants can sue any Defendant who "marketed" ranitidine, but also *any* Defendant Claimants "in good faith *believe* they *may* have a valid claim against." This is nothing like the clause one would draft if the intent were to limit named Defendants to *fewer* than those being sued in the MDL—it allows naming *more* Defendants than

---

[1] "Market," *Merriam-Webster Online*, https://www.merriam-webster.com/dictionary/marketed (visited November 23, 2021). Note that this definition does not make "manufactured" superfluous because some entities make ranitidine but do not sell it (for example, because an affiliate sells it).

have been named in the MDL.[2]  And the Registry signatories obviously believed a Claimant "may have a valid claim" against retailers and distributors, since Plaintiffs' leadership have steadfastly argued for such liability at every stage.  The "name only" clause applies to them just as much.

The key premise of Defendants' argument is that suing retailers *would have been* in good faith under this provision *before* this Court ruled on Plaintiffs' preemption arguments but is bad faith afterwards.   That premise is false.  Plaintiffs can file in Pennsylvania because they have colorable claims against Rite Aid *notwithstanding* the partial disagreement of this Court.  There is nothing unusual about disagreeing with courts.  Plaintiffs who filed in the MDL are even now appealing to the Eleventh Circuit and could not do so (consistent with ethical rules) if they lacked a good faith argument that the orders were erroneous.  Defendants appear to concede that plaintiffs who joined the registry, filed suit, and are currently ***appealing*** can disagree with this Court in good faith; they concede that people who ***never joined*** the registry can disagree with this Court in good faith; but strenuously assert that anyone who joined the registry but did not file suit yet cannot. The premise must be that such people are in some sense bound by this Court's rulings, and that binding is what *makes* any filing outside the MDL bad faith.  *See Wormley*, NOR at 12 ("Plaintiff has no good faith basis to bring claims against Rite Aid, since the MDL Court has already held that identical claims filed against other retailers are preempted and not viable.") (internal citation omitted); *Jimenez*, NOR at 16 (Plaintiffs lack any good faith basis to sue a retailer *because* "the MDL Court has already ruled that claims against retailers—including Rite Aid—such as those Plaintiff asserts here are invalid because they are preempted by federal law.").

---

[2] Such as, for example, a medical malpractice claim.  Notably, this phrase also is necessary to allow innovator liability claims, since the Brand Manufacturer did not manufacture or market a drug "such Claimants ingested."

The premise that Plaintiffs are bound is often said, but never defended.  Is the doctrine law of the case?  Res judicata?  Judicial estoppel?  Defendants do not say, because, of course, they cannot qualify for any relevant doctrine that actually would bind Plaintiffs to this Court's rulings. Any argument for an expansion of these doctrines dead-ends into longstanding limits rooted in history and due process: "A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit," and so "'one is not bound by a judgment in personam in a litigation in which he is not designated as a party.'"  *Taylor v. Sturgell*, 553 U.S. 880, 892–93 (2008) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)) (rejecting res judicata based on "virtual representation").

Defendants' argument would require a peculiar expansion of these doctrines, because on their theory *non-party* registry members are more strictly bound by an MDL Court's rulings than those who *actually* filed suit and lost.  A litigant who filed suit in the MDL and was remanded after pretrial matters could move to reconsider any non-final ruling without Defendants' arguing that disagreement with the MDL Court is *bad faith* and violates a tolling agreement.  A party whose case was dismissed rather than remanded could appeal, again without Defendants arguing that disagreement with the MDL Court is in bad faith.  But here, Plaintiffs cannot appeal, and cannot seek post-remand reconsideration of the order dismissing retailers.  In fact, Plaintiffs would have no avenue to challenge this Court's ruling if Defendants were correct, since the precise same registry agreement term that Defendants argue precludes filing against Rite Aid and Patheon in *state* court also would bar filing against Rite Aid and Patheon in *this* Court (and, of course, without ever filing a pleading naming Rite Aid or Patheon, Plaintiffs could never appeal an order holding that claims against either are preempted).  *Could* a private agreement produce these remarkable results?  The question is uncertain, but surely an agreement that does not even mention these

dramatic and legally consequential effects should not be read to imply them.  Substantial rights are not abandoned by implication.

The poverty of Defendants' arguments is obvious from their contradictory positions in *Wormley* and *Jimenez*.  Wormley did not name Patheon, a manufacturer, and so Defendants argued that Wormley was "not required to forego claims [he] may have against any branded or generic manufacturers whose products [he] took in order to preserve federal jurisdiction[.]"  *Wormley*, NOR at 12.  Yet Defendants contradicted their own argument when they removed in *Jimenez*, even though Roberto Jimenez had named Patheon as a "branded . . . manufactuer[] whose products [he] had taken]."  *Jimenez*, NOR at 18.  Defendants' only principle is to remove every case.

### C.    Even If Defendants Were Correct, the Registry Would Be a Common Defense.

Independently, Defendants' registry argument fails to show fraudulent joinder because it is not really about *joinder*, but about the action itself:

> [A] plaintiff can defeat the fraudulent-joinder exception to the requirement of complete diversity of citizenship by proving that his claim against the nondiverse defendant is ***no weaker than*** his claim against the diverse defendants. Especially if the claims are identical, the diverse defendants ***really are just arguing that the suit has no merit***, period. And that is a ground not for removal but for asking the court in which the suit was filed—the state court—to dismiss the suit.

*Walton v. Bayer Corp.*, 643 F.3d 994, 1001 (7th Cir. 2011) (emphasis added).  The common defense doctrine "draws on a century-old Supreme Court case, *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146 (1914) that was resurrected by the Third and Fifth Circuits in the past decades."  *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1282 (11th Cir. 2006) (citing *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574–76 (5th Cir. 2004); *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 112–13 (3d Cir.1990)).  The Eleventh Circuit has not yet accepted or rejected it, but "a number of lower courts in the Eleventh Circuit have accepted and applied the common

defense rule." *Skelton v. Saia*, 2018 WL 1784381, at *4 (N.D. Ala. Apr. 13, 2018).[3]  To Plaintiffs' knowledge, no district court in the Eleventh Circuit nor any court of appeals has rejected the rule.

The common defense rule applies here because nothing about Defendants' registry argument is specific to Rite Aid or Patheon.  If Defendants are right that Plaintiffs was obligated *not* to name Rite Aid or Patheon, and instead to file in this MDL, that is a defense that *all* defendants can assert in state court.  If correct, a Pennsylvania court would be obligated to dismiss the *entire action*—dismissing Rite Aid and Patheon would not cure the problem.

## II.    Plaintiffs Have Valid Claims Against Rite Aid and Patheon.

Defendants' make two arguments for fraudulent joinder: (1) that Wormley's claims against Rite Aid, and Jimenez's claims against Rite Aid and Patheon, are preempted by federal law, *see Wormley*, NOR at 9, *Jimenez*, NOR at 8.  Just as there is a presumption against removal, there is a presumption against *preemption*.  *Wyeth v. Levine*, 555 U.S. 555, 575 (2009).  "Impossibility pre-emption is a demanding defense."  *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1678 (2019) (quoting *Wyeth*, 555 U.S. at 573).  Here, the Defendants' heavy burden of showing *removal* is appropriate is made heavier by their burden to show impossibility preemption, and that burden is crushing when one recalls that a Plaintiff need not plead around an affirmative defense like preemption, but can survive even dismissal under Rule 12 (a much easier standard than removal) unless Plaintiff "plead[ed] itself out of court by pleading facts that establish an impenetrable defense to its claims."  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008).

---

[3] *Skelton* cites the following cases: *Brown v. Endo Pharms., Inc.*, 38 F. Supp. 3d 1312, 1324 (S.D. Ala. 2014) ("the common defense doctrine precludes a finding of fraudulent joinder"); *Mannsfeld v. Evonik Degussa Corp.*, 2011 WL 53098, *13 (S.D. Ala. Jan 5, 2011); *Feldman v. AXA Equitable Life Ins. Co.*, 2009 WL 2486899, *4 n.6 (S.D. Ga. Aug. 10, 2009); *Loop v. Allianz Life Ins. Co. of N. Am.*, 2009 WL 981988, *5 (S.D. Ala. Apr. 13, 2009) ("the common defense rule requires that the federal court reject the fraudulent joinder arguments and remand"); *Cherry v. AIG Sun Am. Life Assurance Co.*, 2008 WL 508428, *2 (M.D. Ala. Feb. 21, 2008).

Where facts are unclear, it is Defendants who fail to carry their double burden. Where a pleading could be amended, Defendants once again fail to demonstrate federal jurisdiction. Defendants fail to satisfy the heavy burden of fraudulent joinder on both negligence and strict liability claims.

### A. Plaintiffs' Negligence Claims Are Not Preempted Because Rite Aid and Patheon Could Have Acted to Reduce the Dangers of Ranitidine.

Ranitidine degrades into NDMA over time and in the presence of heat and moisture. Therefore, to the extent Defendants' negligently allowed ranitidine to overheat, it is liable. Defendants acknowledge this, *see Wormley*, NOR at 17, *Jimenez*, NOR at 12, but argue the claim is "***not*** pleaded." While Plaintiffs believe it was not necessary (in light of the arguments in the next section), Plaintiffs alleged sufficient allegations to state their negligence claims.

Plaintiffs' complaints plead extensively that Defendants knew or should have known that ranitidine degrades into NDMA, that NDMA is dangerous, how NDMA forms, and other facts about NDMA based on selling ranitidine under its own brand. *See Wormley*, Compl. ¶¶ 112-22, 163-65; *Jimenez*, Compl. ¶¶ 133-42, 181-84. Rite Aid sold private label ranitidine, meaning it contracted with manufacturers to make it, and knew quite a lot about it. Nonetheless, Rite Aid "failed to ensure that their Zantac (in both API and finished dose form) were kept safe[] from excessive heat and humidity." *Wormley*, Compl. ¶ 122; *Jimenez*, Compl. ¶ 142 (same). Jimenez also pleads that Patheon "failed to exercise ordinary care in the . . . handling, distribution [and] storage" of ranitidine. *Jimenez*, Compl. ¶ 306.

#### 1. *This Court's Orders Confirm the Negligence Claim Is Not Frivolous.*

This Court has not conclusively dismissed storage and transportation negligence claims against retailers, much less deemed them frivolous. Last year, this Court granted leave to plead such a theory because "the Court is not prepared to conclude it would be futile," though the Court had substantial concerns that it would not be suitable for resolution in the MDL. D.E. 2513 at 35.

Next, this Court remanded dozens of actions, that pleaded retailers "failed to adhere to and/or follow its established practices and procedures in storing Ranitidine-Containing Drugs supplied to Plaintiff." D.E. 2824 at 4. Though this could have had "greater clarity," *id.*, it sufficed in the fraudulent joinder context, and so the cases were remanded because "it may not be impossible for the Plaintiffs to plead" an overheating claim, *id.* at 5. The next cases were even less clearly pleaded, but this Court rejected Defendants' "mischaracteriz[ation]" of the claims as "'merely stock[ing]' ranitidine," and explained a court could not "assume that the Plaintiffs' case is *limited* to" passive activities, but must instead "decide whether the Defendants have established, through clear and convincing evidence, that a negligence claim is impossible." D.E. 2824 at 4, D.E. 3156 at 4.

The Court acknowledge that the complaint "failed to plead a temperature-based negligence claim with any degree of clarity," but that was irrelevant because it "is a pleading issue that may be remedied via leave to amend." D.E. 3156 at 3. A mere "pleading issue" cannot support fraudulent joinder, and, in any case, given Defendants' "heavy burden to establish impossibility, even conclusory allegations in a complaint are sufficient for a Plaintiff to survive a fraudulent joinder challenge." D.E. 2824 at 5. This Court went further:

> Even if the Court were to deny the Plaintiff's Motion to Remand, pursuant to Amended Pretrial Order # 31, the Plaintiff would then be required to file a short form complaint. The short form complaint adopts the operative Master Personal Injury Complaint by reference. The operative Master Personal Injury Complaint does clearly allege a temperature-based negligence theory which, pursuant to the Court's prior rulings, is a pleading that should be remanded to state court in the absence of diversity or federal-question jurisdiction. Thus, even if the Court were to deny the Plaintiff's Motion to Remand, the case would then immediately qualify for remand pursuant to Amended Pretrial Order # 31 and the Plaintiff's docketing of a short form complaint. **One way or another, this case is due to be remanded.**

D.E. 3156 at 4 (emphasis added).

Defendants may argue that these clear rulings are superseded by this Court's subsequent dismissal of the retailer claims, but the later rulings are entirely consistent.  True, this Court dismissed overheating claims from the MDL, but only because the global theory was "implausibly pled." D.E. 3716 at 6.  This Court did "not address the [Retailers'] pre-emption arguments."  *Id.* at 6–7.[4]  That is fully consistent with the prior rulings noting that such claims are possible.  Later, this Court made its reasoning explicit, and declined to enter judgment against retailer defendants:

> It would only be appropriate for the Court to . . . enter a final order of dismissal as to the Retailer and Distributor Defendants in every individual case if the Court intended (through its prior rulings) to preclude the individual Plaintiffs from the future opportunity to bring a negligence claim against the Retailer and Distributor Defendants. **That is not what the Court intended**. The Plaintiffs sought to impose global MDL liability on the Defendants . . . [and the] Court's dismissal rejected this global theory. Such a theory would be akin to Plaintiffs alleging medical malpractice claims against thousands of doctors who prescribed ranitidine. . . . The Court's dismissal of medical malpractice claims from a master pleading (just as the dismissal of Plaintiffs' negligence claims without leave to amend) would not preclude the individual Plaintiffs from ever bringing a medical malpractice claim—**they simply could not press such a claim in the MDL**. . . . [N]egligence is even more appropriate for adjudication upon remand. Upon remand, the individual Plaintiffs **should have the option** to seek through amendment a negligence claim on case-specific facts, provided an individual Plaintiff has a factual basis to do so. That is a matter for the judge upon remand, and in light of the fact that the Court has not dismissed any individual case, the Court declines to enter a final order of dismissal in individual cases as to claims against Retailer and Distributor Defendants.

D.E. 3913 (Order Denying Motion for Judgment) at 3–4 (emphasis added).  This Court has held time after time that negligence claims against retailers are possible in individual cases.  Applying that consistent rule here requires remand.

---

[4] Even if later rulings *had* relied on preemption, that would only mean the claims failed on *de novo* review, **not** that they are so groundless that there is no possibility a state court would accept them.

2.      *A New Mexico Court's Ruling Illustrates the Same Result.*

If this Court's orders were not enough, there is also a recent ruling by a New Mexico court

that rejected the retailers' identical preemption defense.  *See* Ex. 2 at 230–37, Transcript of August

17, 2021 Hearing, *New Mexico v. GlaxoSmithKline, LLC, et al.*, Case No. D-101-cv-2020-01289

(5th J. Cir. Ct. N.M., Aug. 17, 2021).  Judge Bryan Biedscheid explained:

> With respect to the generic and retailers, because of this doctrine of
> sameness, the scope of control, and thus I think resulting duty that
> they had, and I guess this would be true of the retailers as well, was
> much more limited. But the complaint does state areas in which they
> had control and could have done something consistent with federal
> law. And so, to the extent that in the sort of [Venn] diagram of these
> various levels of regulatory control there is sort of an overlap where
> state interests and federal meet such as, you know, these continuing
> duties, also possible acts related to changing expiration dates or
> noting additional packaging that's required or the like, those are
> areas where a valid claim has been stated. And so, it is not dismissed
> on those grounds.

*Id.* at 233.  It is plainly *possible* that a Pennsylvania court would agree with Judge Biedscheid.

**B.      Plaintiff's Claims Are Not Preempted Because They Are Parallel.**

In *Mutual Pharmaceutical Co., Inc. v. Bartlett*, 570 U.S. 472 (2013), the Supreme Court

held that state design-defect claims are preempted when they would require a defendant to stop

selling a drug that the FDA has found safe and effective based on the available scientific evidence.

But the Court's holding explicitly did "not address state design-defect claims that parallel the

federal misbranding statute," which "requires a manufacturer to pull even an FDA-approved drug

from the market when it is 'dangerous to health.'"  *Id.* at 487, n.4 (quoting 21 U.S.C. § 352(j)).

Where, as here, a plaintiff pleads a design defect in a drug based on post-approval scientific

evidence the FDA never considered, that claim is not preempted because *even federal law* requires

everyone in the supply chain to stop selling.  The FDA *did* require everyone in the supply chain to

stop selling after new information it had never considered came to light: ranitidine's propensity to

degrade into the dangerous carcinogen NDMA. Wormley's and Jimenez's respective complaints detail the cancer-causing properties of the drug and its recall exhaustively. *Wormley*, Compl. ¶¶ 73-84 (detailing the withdrawal from the worldwide market); *Jimenez*, Compl. ¶¶ 92-104 (same). That distinguishes Wormley's and Jimenez's cases from *Bartlett* and *Mensing*.

This Court rejected that reasoning, but never suggested it was frivolous or entirely beyond question. Ultimately, in the course of grappling with this issue, the Court concluded that *Mensing* must have "concluded that the Plaintiffs' misbranding arguments do not overcome an impossibility preemption defense" but noted it "does not know [why], because the Supreme Court did not explain." D.E. 3715 at 25. This conclusion raised a conundrum: why did *Bartlett's* footnote 4 purport to reserve the question if it was already decided? The Court was unsure, because "this footnote is confusing" and, quoting the Sixth Circuit, "[a]cademics, commentators, and even the parties to this case are not clear on what precisely Footnote 4 means and what its impact might be." *Id.* at 26. These are not the words of a Court dismissing a *frivolous* argument. The misbranding argument this Court rejected has not been considered by many courts, and it is far too soon to conclude that *no court could possibly accept it.*

To the contrary, several courts have. A Pennsylvania court discussed at length a variant of the argument Plaintiffs make here, and tentatively accepted it:

> The *Bartlett* Court expressly left open the issue of whether § 402A strict products liability design defect claims would be pre-empted. It did not address, or reject, the argument Mr. Hassett asserts herein: that under § 402A strict products liability, it is unnecessary for a plaintiff to demonstrate that a defendant should or could have altered the design or the warnings. . . . Thus, Mr. Hassett's argument that Mensing does not pre-empt strict liability design defect claims under those states' laws which subject distributors and retailers of defective products to strict liability even though they have no control

> over the design of the product appears to have some vitality after
> *Mensing* and *Bartlett*.

*Hassett v. Dafoe*, 74 A.3d 202, 213 (Pa. Super. Ct. 2013) (three-judge panel); *In re Reglan/Metoclopramide Litig.*, 81 A.3d 80, 90 (Pa. Super. Ct. 2013) (same). That court "agree[d] that state negligence claims based upon the misbranding of drugs under the federal statute . . . are not foreclosed by *Mensing*" or *Bartlett*, which declined "to address state design-defect claims that parallel the federal misbranding statute." *Id.* at 216–217; *see also In re Reglan*, 81 A.3d at 90 (same).

An Illinois court of appeals cited *Hassett* and ruled similarly. Unlike the drugs at issue in *Bartlett* and *Mensing*, ranitidine is off the market. That matches *Guvenoz v. Target Corp.*, 30 N.E.3d 404, 418 (Ill. App. 1 Dist. 2015) (citing *Hassett*), which explained that while *Bartlett* and *Mensing* "presume that a plaintiff has identified 'remedial measures' which could have reduced the drug's risks" in "the case at bar, the FDA concluded that no remedial measures were, in fact, possible and ordered its manufacturers to withdraw it from the market." For that reason, the Court rejected preemption:

> While it made little sense in *Bartlett* and *Mensing* to require a company to withdraw from the market a drug which is still actively used and which is safe and effective for the vast majority of consumers, that logic has no application to plaintiff's claims, which are that this drug is not effective and that its risks do not outweigh its benefits for the public at large. Thus, while withdrawing the drug in *Bartlett* and *Mensing* would not have resulted in a net public benefit, plaintiff alleges that withdrawal will result in a net public benefit and, in fact, the FDA agreed and ordered the drug pulled from the market.
>
> The issue in the case at bar is not whether the drug companies should have stopped selling. They should have, and they did. However, defendants argue that federal law provided them with a safe harbor

> for failing to stop earlier. Unfortunately for defendants, the *Bartlett*
> Court has already rejected that idea.

*Id.* at 419.  An Illinois *federal* court also ruled similarly, flagging *Bartlett's* "exception for state law claims that parallel the federal misbranding statute" and finding that "to the extent the plaintiff's design defect claim parallels the federal misbranding statute, it is not foreclosed by Bartlett."  *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 309MD02100DRHPMF, 2014 WL 1632149, at *10 (S.D. Ill. Apr. 24, 2014).

Four cases that accept Plaintiff's theory is *irrefutable* evidence that there is at least a *possibility* that a Pennsylvania court might grant relief.

### C.    Fraudulent Joinder May Not Be Predicated on *Mensing* Preemption.

In January 2021, one of the first motions to remand threw down a gauntlet: "[T]he Drug Company Defendants have not cited[] a single case in which the Eleventh Circuit (or any Circuit) allowed consideration of a preemption defense in the context of fraudulent joinder."  D.E. 2569 at 18.  Defendants here found none—they simply argued that *some* affirmative defenses could ground fraudulent joinder, and therefore *impossibility preemption* must be able to ground fraudulent joinder outside the Ninth Circuit (Which supposedly has an "idiosyncratic rule."  D.E. 2702 at 13.[5]).  Plaintiffs pose the same challenge: has any court *ever* found fraudulent joinder based on impossibility preemption?  A legion of cases declines to find fraudulent joinder based on

---

[5] There are indeed a vast number of cases in the Ninth Circuit confirming this rule, but *Hunter v. Philip Morris USA*, 582 F.3d 1039 (9th Cir. 2009)—a published, court of appeals decision—is sufficiently strong authority that Plaintiffs will not cite the rest.

impossibility preemption.[6]  Indeed, just this month a federal district court remanded a Zantac case, rejecting preemption and fraudulent joinder arguments.  *See Garretson v. Dr. Reddy's Lab'ys, Inc., et al.*, Case No. 3:21-CV-01366-NJR (S.D. Ill. Nov. 16, 2021) (attached as Ex. 3).  There is wisdom in this uniform rule.  The burden of showing impossibility preemption is so high, and the inquiry so in-depth, that it always morphs into a merits inquiry.  "[P]reemption goes to the merits of the plaintiff's case and entails a degree of analysis that does not render a state law claim obviously barred or frivolous for fraudulent joinder purposes."  *Geisse v. Bayer HealthCare Pharmaceuticals Inc.*, 2019 WL 1239854, at *3 (N.D. Cal., Mar. 18, 2019).  No federal court can be *certain* that a state court could not disagree.  This Court should not be the first to reject this consensus.

---

[6] Not including California cases, at least the following fraudulent joinder cases rejected a *Mensing* argument and remanded.  *E.g.*, *Garretson v. Dr. Reddy's Lab'ys, Inc., et al.*, Case No. 3:21-CV-01366-NJR, at 1 (S.D. Ill. Nov. 16, 2021); *Hawkins, v. Boehringer Ingelheim Pharms., Inc.*, 2021 WL 4498652, at *4 (N.D. Ill. Jan. 19, 2021) (ruling, in a Zantac case against Walgreens, that Mensing preemption "is immaterial here because removal cannot be based on [it]"); *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, 2018 WL 6258903, at *6 (N.D. Fla. Nov. 8, 2018) ("Defendants' impossibility preemption argument . . . [though] framed within the context of fraudulent joinder, . . . goes to the merits of Plaintiffs' state law claims" and so "conflict preemption arguments McKesson seeks to raise must be decided in state court"); *In re Darvocet*, 106 F. Supp. 3d 849, 855 (E.D. Ky. 2015) ("Because preemption goes to the merits of an action, it cannot be used to demonstrate that a defendant is fraudulently joined."); *In Re Plavix Prod. Liab. & Mktg. Litig.*, 2014 WL 4954654, at *8 (D.N.J. Oct. 1, 2014) ("whether McKesson is fraudulent joined, partly, turns on whether Plaintiffs' state claims are preempted by the FDCA" and so "the fraudulent joinder analysis necessarily involves making a merit determination" which "is not permitted"); *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 2013 WL 6050627, at *2 (E.D. Pa. Nov. 14, 2013) ("A preemption defense goes to the merits of a plaintiff's case and does not overcome the strong presumption against removal jurisdiction."); *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 257 F. Supp. 3d 717, 721 (E.D. Pa. 2017) (adhering to its 2013 ruling); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 905 F. Supp. 2d 644, 647–648 (E.D. Pa. 2012) ("focus . . . must be solely the allegations in the complaint and not . . . [an] affirmative defense" and so "reliance on a federal preemption defense to support their assertion that McKesson [a distributor] has been fraudulently joined fails"); *In re Darvocet, Darvon and Propoxyphene Prods. Liab. Litig.*, 889 F. Supp. 2d 931, 938 (E.D. Ky. 2012) ("Preemption is a federal defense that goes to the merits of a claim. As such, it does not support a finding of fraudulent joinder."); *Hughes v. Mylan Inc.*, 2011 WL 5075133, at *6 (E.D. Pa. Oct. 25, 2011) ("*Mensing* is a legal issue based on preemption that can be addressed by a state court," it is "not a hook that lands these cases in federal court.").

## CONCLUSION

For the foregoing reasons, the Motion to Remand should be granted.

### Local Rule 7.1 Certification

Pursuant to Local Rule 7.1(a)(3), the undersigned certify that prior to filing this Motion, they met and conferred with the Defense Co-Leads in a good faith effort to resolve the issues raised in the Motion and have been unable to do so.  Defendants indicated that they would oppose the Motion.


Dated: November 23, 2021                    Respectfully submitted,


                                            */s/ Ashley Keller*
                                            Ashley Keller
                                            ack@kellerlenkner.com
                                            Nicole Berg
                                            ncb@kellerlenkner.com
                                            **KELLER LENKNER LLC**
                                            150 N. Riverside Plaza, Suite 4270
                                            Chicago, Illinois 60606
                                            (312) 741-5220

                                            Tracy Finken
                                            tfmken@anapolweiss.com
                                            Thomas R. Anapol
                                            tanapol@anapolweiss.com
                                            Shayna Slater
                                            sslater@anapolweiss.com
                                            Emily B. Ashe
                                            eashe@anapolweiss.com
                                            **ANAPOL WEISS**
                                            130 N. 18th Street, Suite 1600
                                            Philadelphia, PA 19103
                                            (215) 735-1130

                                            *Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 23, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that the foregoing document is being served on all counsel of record or parties registered to receive CM/ECF Electronic Filings.

*/s/ Ashley C. Keller*
Ashley C. Keller
