**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IN RE:  ZANTAC (RANITIDINE)                                    MDL NO. 2924
PRODUCTS LIABILITY                                            20-MD-2924
LITIGATION

                                        JUDGE ROBIN L. ROSENBERG
                            MAGISTRATE JUDGE BRUCE E. REINHART

_____/

**THIS DOCUMENT RELATES TO:  ALL CASES**


**DEFENDANTS' EXPEDITED MOTION TO COMPEL DEPOSITION TESTIMONY OF**
**EMERY PHARMA AND RON NAJAFI**

**TABLE OF CONTENTS**

I.   BASIS FOR EXPEDITED TREATMENT. ...............................................................................1

II.  JURISDICTION. ....................................................................................................................2

III. BACKGROUND. ...................................................................................................................3

IV. LEGAL STANDARD. ..........................................................................................................10

V.  ARGUMENT. .......................................................................................................................10

    A.  The Discovery is Relevant. .........................................................................................10

    B.  The Discovery is Not Burdensome. .............................................................................12

    C.  The Discovery Sought is Distinct from Expert Witness Testimony. ...............................14

    D.  Defendants Have Tendered Fees for Attendance at the Deposition. .................................18

CONCLUSION ...............................................................................................................................19

CERTIFICATE OF COUNSEL ......................................................................................................19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 3M Combat Arms Earplug Prod. Liab. Litig.*,
　No. 3:19-MD-2885, 2020 WL 8673437 (N.D. Fla. Nov. 18, 2020)..........................................2

*In re Abilify (Aripiprazole) Products Liab. Litig.*,
　3:16-MD-2734, 2017 WL 2225614 (N.D. Fla. May 15, 2017) .......................................15, 16

*Adelman v. Boy Scouts of Am.*,
　276 F.R.D. 681 (S.D. Fla. 2011).............................................................................................15

*In re Blue Cross Blue Shield Antitrust Litig.*,
　No. 2:13-CV-20000-RDP, 2017 WL 11539487 (N.D. Ala. Oct. 27, 2017)...........................15

*In Re: Blue Cross Blue Shield Antitrust Litigation*,
　2017 WL 11539533 (N.D. Ala. 2017) ......................................................................................2

*Coleman v. Lennar Corp.*,
　No. 18-MC-20182, 2018 WL 3672251 (S.D. Fla. June 14, 2018) ...................................10, 12

*Coty Inc. v. C Lenu, Inc.*,
　No. 10-21812-CIV, 2010 WL 5392887 ..................................................................................14

*In re Deposito Centralizado de Compensacion y Liquidacion de Valores Decevale, S.A.*,
　No. 20-25212-MC, 2021 WL 2323226 (S.D. Fla. June 1, 2021) ...........................................13

*In re Disposable Contact Lens Antitrust Litig.*,
　306 F. Supp. 3d 372 (D.D.C. 2017).........................................................................................2

*In re Duque*,
　154 B.R. 93 (Bankr. S.D. Fla. 1993).......................................................................................12

*Indep. Mktg. Grp., Inc. v. Keen*,
　No. 3:11-CV-447-J-25MCR, 2012 WL 512948 (M.D. Fla. Feb. 16, 2012)...........................14

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
　No. CV14MD2542VSBSLC, 2020 WL 9065791 (S.D.N.Y. May 8, 2020) ...........................2

*Klockner Namasco Holdings Corp. v. Daily Access.Com, Inc.*,
　211 F.R.D. 685 (N.D. Ga. 2002)..............................................................................................19

*Plouffe v. GEICO Gen. Ins. Co.*,
　No. 16-25145-CIV, 2017 WL 7796323 (S.D. Fla. Aug. 8, 2017) ...........................................14

*Rainey v. Taylor*,
No. 18-24802-MC, 2019 WL 1922000 (S.D. Fla. Apr. 30, 2019) .........................................18

*Retractable Technologies, Inc. v. Int'l Healthcare Worker Safety Ctr.*,
No. 3:11-mc-28, 2011 WL 3555848 (W.D. Va. Aug. 11, 2011) ...........................................14

*In re Rule 45 Subpoenas Issued to Dr. Ron Najafi and Emery Pharma*,
3:21-mc-80304 (N.D. Cal.), Dkt. 1 ............................................................................8, 9

*In re Rule 45 Subpoenas Issued to Dr. Ron Najafi and Emery Pharma*,
3:21-mc-80304 (N.D. Cal.), Dkt. 9 ...........................................................................1

*Sony Computer Ent. Am., Inc. v. Nasa Elecs. Corp.*,
No. 07-20819-CIV, 2008 WL 11333427 (S.D. Fla. Feb. 22, 2008) ......................................10

*State Farm Mut. Auto. Ins. Co. v. Maistrenko*,
No. CV 19-20850-MC, 2020 WL 486271 (S.D. Fla. Jan. 30, 2020) ...............................10, 11

*In Re: Zantac (Ranitidine) Products Liability Litigation*,
MDL No. 2924 (J.P.M.L.), Dkt. 950 .......................................................................3

*In Re: Zantac (Ranitidine) Products Liability Litigation*,
MDL No. 2924 (J.P.M.L.), Dkt. 963 .......................................................................9

*In Re: Zantac (Ranitidine) Products Liability Litigation*,
MDL No. 2924 (J.P.M.L.), Dkt. 968 .......................................................................10

**Statutes**

28 U.S.C. § 1407 ...........................................................................................2. 3

28 U.S.C. § 1821 ...........................................................................................18

**Other Authorities**

Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed. 2021 update)...................................12

Fed. R. Civ. P. 45 .......................................................................................9, 18

S.D. Fla. L.R. 7.1 ........................................................................................19

Defendants Boehringer Ingelheim Pharmaceuticals, Inc., GlaxoSmithKline LLC, Pfizer Inc., Sanofi US Services Inc., and Sanofi-Aventis U.S. LLC, and Chattem, Inc. (collectively, the "Defendants"), by and through the undersigned counsel, hereby move the Court for an Order requiring third-parties, Najafi Pharma, Inc. d/b/a Emery Pharma and Ron Najafi, Ph.D. (collectively, "Emery") to provide deposition testimony pursuant to Defendants' Rule 45 subpoenas served on November 17, 2021 (the "Subpoenas").

## I.    BASIS FOR EXPEDITED TREATMENT.

The instant motion is brought by the Defendants, as an expedited motion according to S.D. Fla. Local Rule 7.1(d)(2).  Defendants respectfully request this Court enter an expedited briefing schedule and set the motion for hearing as soon after the previously scheduled **January 5, 2022** omnibus discovery conference as the Court can be available.  This expedited timeline is necessary to conserve judicial resources in light of Emery's motion to quash the Subpoenas now pending in the Northern District of California, and to ensure timely resolution of this motion  prior to the requested depositions which are sought to be scheduled soon after the January 24 expert reports are served by Plaintiffs.  The necessity for expedited briefing was not caused by Defendants who have worked diligently and in good faith through the meet and confer process, including with the Special Master, on potential resolution of these issues without Court intervention.  In addition, an expedited briefing schedule should not present an undue burden to Emery or Plaintiffs because Defendants provided notice to Emery and Plaintiffs on December 23rd that the motion was forthcoming, Emery has already briefed its motion to quash on these issues in the Northern District of California, and Emery also requested an expedited briefing schedule in the Northern District of California (specifically noting it wished to avoid this Court's jurisdiction).[1]    Additionally,

---

[1] *In re Rule 45 Subpoenas Issued to Dr. Ron Najafi and Emery Pharma,* 3:21-mc-80304 (N.D. Cal.), Dkt. 9.  Plaintiffs are also well aware of the issues raised in this Motion since they have been involved in several meet and confer

1

Defendants have already provided to Plaintiffs and Emery the primary case law cited in this motion during the meet-and-confer process and have repeatedly agreed to delay filing this motion on Plaintiffs' request.  This request to expedite is made in good faith and the information sought is necessary for preparing Defendants' defense.

## II.    JURISDICTION.

MDL courts have jurisdiction to decide motions to compel deposition testimony in any district.  28 U.S.C.A. § 1407 (b) (MDL judges "may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings."); *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19-MD-2885, 2020 WL 8673437, at *3 (N.D. Fla. Nov. 18, 2020) (noting the multidistrict litigation statute, 28 U.S.C. § 1407, gives district court judges the power to compel compliance with deposition subpoenas); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. CV14MD2542VSBSLC, 2020 WL 9065791, at *2 (S.D.N.Y. May 8, 2020)  ("[T]he Court finds that it has authority both to adjudicate motions relating to enforcement of subpoenas against non-parties outside this District, and to centralize all such motions in this District. . . . This Court will centrally enforce all subpoenas issued in this MDL litigation.  Any motions to compel compliance with, objections to or motions to quash subpoenas issued in this MDL shall be filed in this MDL."); *In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d 372, 378 (D.D.C. 2017) (collecting cases holding that MDL courts have jurisdiction under 28 U.S.C. § 1407 to enforce subpoenas against parties outside the courts' districts); *In Re: Blue Cross Blue Shield Antitrust Litigation*, 2017 WL 11539533 (N.D. Ala. 2017) ("The import of this statute is clear, and has been

---

discussions with Defendants' counsel and Special Master Dodge since December 6th and have cooperated with Emery in supporting its Motion to Quash in the Northern District of California.  See accompanying Declaration of Eva Canaan, dated January 3, 2022 ("Canaan Decl."), Ex. 1 ¶¶ 9, 12, 15, 16; *see also* Bogdan Decl., attached as Ex. 6 to Canaan Decl.

resoundingly recognized by districts throughout the country: the [MDL] court has exclusive power to handle all pretrial proceedings, which necessarily includes the power to enforce a deposition subpoena . . . .").

Additionally, the JPML has already held this Court has the power to resolve discovery disputes related to third-parties pursuant to Section 1407:

> [The non-party] also argues that transferring his motion to quash is contrary to the intent of Federal Rule of Civil Procedure 45 because it would result in the motion to quash being heard in the issuing court, as opposed to the court where the subpoena was served, and would impose an undue burden upon a non-party. At its root, this is an objection to transfer of any subpoena action under Section 1407. As explained in our order transferring the Spaulding subpoena, transfer of a motion to quash is not inconsistent with Rule 45. *See id.* at 3. And, while it might impose some burden on [the non-party] to litigate his motion to quash outside his home forum, it would be inefficient and a waste of judicial resources to require the transferor court to learn the particulars of the MDL litigation so as to be able to adjudicate the motion to quash. Furthermore, Judge Rosenberg has conducted numerous conferences and hearings in the MDL using videoconferencing technology.

*In Re: Zantac (Ranitidine) Products Liability Litigation*, MDL No. 2924 (J.P.M.L.), Dkt. 950. Therefore, this Court has jurisdiction to decide the instant motion.

### III.    BACKGROUND.

Emery is a "litigation support lab" significantly involved with investigations regarding the relationship between ranitidine and NDMA.[2] Emery markets itself for hire as an expert in pharmaceutical litigation related to NDMA, and advertises that it has been retained as an expert in the valsartan, ranitidine, and metformin litigations.[3] Either at the direction of Plaintiffs or on their

---

[2] *Scientific Litigation Support*, Emery Pharma, https://emerypharma.com/services/litigation-support/ (last visited Dec. 29, 2021) ("Emery Pharma is a litigation support lab with expertise in pharmaceutical, chemical, and medical device industries.").

[3] Eshani Nandita & Neelanjan Bose, *N-nitrosodimethylamine (NDMA) in Ranitidine: Emery Pharma's Perspective, the road to filing the company's first Citizen Petition, CBS News coverage, and the FDA's response*, EMERY PHARMA, https://emerypharma.com/blog/n-nitrosodimethylamine-ndma-in-ranitidine-emery-pharmas-perspective-the-road-to-filing-the-companys-first-citizen-petition-cbs-news-coverage-and-the-fdas-response/ (Apr. 6, 2020) ("From Emery Pharma's business standpoint, we are now offering . . . expert witness support to several Clients to help mitigate risk associated with the presence of NDMA in drug products such as Valsartan, Zantac, and Metformin.").

own accord, Emery has repeatedly conducted and publicly disseminated results of ranitidine testing, purporting to show that ranitidine breaks down into NDMA under conditions of ordinary transport and storage. Yet, despite launching a public relations campaign against ranitidine, Emery now seeks to shield its publicly touted testing from discovery: (i) under the guise of being a neutral non-party bystander who would be too burdened to participate in the MDL proceedings; and (ii) by hiding behind assertions of privilege because Emery is also serving as Plaintiffs' retained expert.

On January 2, 2020, Emery filed a Citizen Petition with the United States Food and Drug Administration ("FDA") requesting, among other things, ranitidine's removal from the market.[4] The Citizen Petition included data purportedly indicating that "while seemingly stable at room temperature, the ranitidine molecule is heat-labile and under elevated temperatures (e.g., 70ºC) progressively accumulates NDMA."[5]  Emery also speculated that "elevated temperatures . . . would be routinely reached during shipment and during storage."[6]  Shortly after Emery's Citizen Petition, on January 13, 2020, Plaintiffs retained Emery Pharma as an expert witness in this matter.[7]

Since retention, Emery has engaged in a public campaign to generate alarm about ranitidine's claimed potential to form NDMA under conditions that purportedly could be achieved during transport and storage.  For instance, Emery's CEO, Ron Najafi, presented new (*i.e.*, generated after the Citizen Petition) ranitidine data in a conference where he spoke about ranitidine

---

[4] Emery Pharma Citizen Petition to the United States Food and Drug Administration (Jan. 2, 2020), available at https://www.regulations.gov/document/FDA-2020-P-0042-0001.

[5] *Id.* at 2.

[6] *Id.* at 3.

[7] Letter from William Egan, counsel for Emery Pharma, to Paige Sharpe, counsel for Sanofi-Aventis U.S. LLC (Nov. 11, 2020), attached as Ex. 8 to the Declaration of Eva Canaan.

and NDMA.[8] A then-Emery employee, Eshani Nandita, presented new data in a video uploaded to YouTube claiming NDMA forming in ranitidine "is a global health concern."[9]  Ron Najafi has engaged in numerous news interviews with high-profile news agencies such as USA Today, Bloomberg, and CBS News about Emery's ranitidine testing.[10]  Despite releasing this information on public platforms, Emery, in concert with Plaintiffs, has since resisted fact depositions relating to these same matters.

Initially, Defendants issued a subpoena duces tecum dated June 22, 2020 seeking document production by Emery.[11]  At that time, Emery indicated that they would move this Court to quash the subpoena on grounds that Emery had been retained as Plaintiffs' expert.[12]  In the spirit of cooperation, Defendants agreed to limit the subpoena to certain topics.[13]  After Emery produced documents in response to the subpoena, Defendants identified significant gaps in Emery's production.[14]  Accordingly, Defendants served a second subpoena on April 27, 2021 to obtain both

---

[8] *See Editors' Series: Genotoxic Impurities and Drug Quality: Lessons from the Nitrosamine Contamination Crisis*, PHARMTECH (July 14, 2020), https://www.pharmtech.com/view/editors-series-genotoxic-impurities-and-drug-quality-lessons-nitrosamine-contamination-crisis-0.

[9] Emery Pharma, *Dr. Eshani Nandita of Emery Pharma shares the results of the stability study of Ranitidine*, YOUTUBE (July 23, 2020), https://www.youtube.com/watch?v=yptaLtg2yj0.

[10] Nathan Bomey & Ken Alltucker, *More generic Zantac drugs recalled as fears linger over cancer risk*, USA TODAY (Jan. 10, 2020), https://www.usatoday.com/story/money/2020/01/10/generic-versions-zantac-recalled-cancer-fda/4429631002/;  Michelle Cortez, *Carcinogen in Heartburn Drug May Build in Storage, Lab Finds*, BLOOMBERG L.P. (Jan. 2, 2020), https://www.bloombergquint.com/business/carcinogen-in-heartburn-drug-may-build-during-storage-lab-finds;  *California lab finds new clues in popular heartburn drug's possible cancer risk*, CBS NEWS (Jan. 10, 2020), https://www.cbsnews.com/news/zantac-heartburn-drug-ranitidine-possible-link-to-cancer-california-lab-emery-parma-investigating/.

[11] Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action to Keeper of the Records, Emery Pharma (June 22, 2020), attached as Ex. 9 to the Declaration of Eva Canaan.

[12] Correspondence between William Egan, counsel for Emery Pharma, and Paige Sharpe, counsel for Sanofi (July 2-28, 2020), attached as Ex. 10 to the Declaration of Eva Canaan.

[13] *Id*.

[14] Letter from Paige Sharpe, counsel for Sanofi, to William Egan, counsel for Emery (Oct. 15, 2020), attached as Ex. 11 to the Declaration of Eva Canaan.

newly generated, non-privileged data[15] and to cure the prior document deficiencies.[16] Despite the new requests and sizable gaps in Emery's prior production, Emery supplemented its production with only 39 documents (totaling 205 *total* pages).

On July 16, 2021, Defendants raised concerns related to these discovery deficiencies with counsel for Emery.[17] In that correspondence, Defendants provided specific examples, by Bates numbers, where obvious discovery deficiencies existed, such as testing protocols that had no associated data, data that had no associated testing protocols, and—even worse—data which was recorded *only* within PowerPoint presentations (*i.e.*, where Emery produced no associated raw data, reports, laboratory notebooks, or any other records).[18] When confronted with these discovery gaps, Emery responded that "Emery Pharma is not withholding any other documents on the basis of its stated objections" other than one document that Emery withheld on the basis of claimed legal privilege.[19]

On November 17, 2021, Defendants served a 30(b)(6) subpoena on counsel for Emery compelling Emery's deposition related to both substantive fact issues related to Emery's non-privileged testing and communications, as well as Emery's purported compliance with the prior

---

[15] After Sanofi served its subpoena, Emery continued to conduct additional, non-privileged testing including *in vivo* testing with Dr. William Mitch. *See e.g.*, Emery Pharma, *supra* note 9.

[16] To reduce the burden of Emery on responding, Defendants' subpoena explicitly noted that Emery did not need to produce any documents already produced pursuant to Sanofi's subpoena, even if those materials were also responsive to Defendants' subpoena. Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action to Keeper of the Records, Emery Pharma (Apr. 26, 2021), attached as Ex. 1 to the Declaration of Eva Canaan.

[17] Letter from Eva Canaan, counsel for Boehringer Ingelheim Pharmaceuticals, Inc. to Sami Sedghani, counsel for Emery Pharma (July 16, 2021), attached as Ex. 12 to the Declaration of Eva Canaan.

[18] *Id.*

[19] Correspondence from Sami Sedghani to Eva Canaan (August 4, 2021), attached as Ex. 13 to the Declaration of Eva Canaan.

subpoenas.[20]  On the same day, Defendants served on counsel for Emery a subpoena directed to Ron Najafi as a fact witness.[21]

On November 22, Defendants' counsel and Emery's counsel conferred.  Emery's counsel agreed to accept service of the subpoenas provided that Defendants would not interpose timeliness objections to Emery's anticipated motion to quash.  The parties agreed to postpone discussing the briefing on Emery's anticipated motion to quash until after the Thanksgiving holiday, on December 3.[22]

On December 3, counsel for Emery claimed a meet-and-confer was "no longer necessary" because Plaintiffs had already reached out to meet with Defendants and Special Master Dodge with respect to the Emery subpoenas in an attempt to resolve the dispute without court intervention.[23]

At the December 6 conference with Special Master Dodge, Plaintiffs agreed that Defendants were entitled to a fact deposition of Emery.  However, Plaintiffs expressed the view that the fact-expert issues were too intertwined and that Emery should be deposed after the January 24, 2022, expert report deadline.[24]  To address this concern, Special Master Dodge suggested that the fact and 30(b)(6) depositions occur after filing expert witness reports on January 24, 2022.[25]  Defendants agreed with the Special Master's suggestion but noted that: (i) Emery's 30(b)(6) deposition would have to occur early enough to permit defense experts to incorporate the elicited testimony into their expert reports (due on March 7, 2022); and (ii) Ron

---

[20] Subpoena to Testify at a Deposition in a Civil Action to Najafi Pharma, Inc. dba Emery Pharma (Nov. 17, 2021), Ex. 2 to the Declaration of Eva Canaan.
[21] Subpoena to Testify at a Deposition in a Civil Action to Ramin ("Ron") Najafi (Nov. 17, 2021), Ex. 3 to the Declaration of Eva Canaan.
[22] Canaan Decl. ¶ 6, *supra* note 1.
[23] *Id.* ¶ 7.
[24] *Id.* ¶ 9.
[25] *Id.*

Najafi's expert deposition could be combined with his fact deposition (all in a single day) after the deadline for rebuttal expert reports. Plaintiffs, however, did not commit to this agreement and said they needed to confer with others on Plaintiffs' Steering Committee.[26]

On December 14, Defendants' counsel followed up with counsel for Plaintiffs and reiterated the proposed compromise to alleviate Plaintiffs' concerns regarding the timing of Emery's deposition.  Specifically, counsel wrote:

> "We are amenable to taking a 30(b)(6) deposition of Emery soon after January 24th (so that our experts have sufficient time to incorporate the information into their expert reports due on March 7th). We will then take a separate expert/fact deposition of Ron Najafi in his personal capacity. Of course, as with all Plaintiffs' experts who may serve a rebuttal report, we will need to take a deposition after any rebuttal report from Emery in order to explore and understand the opinions that may be presented at trial. In lieu of deposing Dr. Najafi before and after a rebuttal report, we propose a single deposition after the expert rebuttal deadline of March 28th."[27]

Plaintiffs never responded to the proposed compromise.[28]

Instead, on December 16, counsel for Emery re-entered the negotiations and threatened to file a motion to quash in the Northern District of California "before Christmas."[29]  During a meet-and-confer on December 17, Emery's counsel claimed that he was not coordinating with Plaintiffs and that he was not aware of Defendants' proposed compromise to take the depositions on an agreeable date after January 24, 2022.[30]

Shortly thereafter, counsel for Emery filed the motion to quash, which included his own declaration and a declaration by Plaintiffs' counsel, Rosemarie Riddell Bogdan.[31]  The motion and both declarations misrepresented that Defendants were seeking an immediate deposition of Emery

---

[26] *Id.*

[27] Correspondence from E. Canaan, counsel for BIPI, to Mike McGlamry, counsel for Plaintiffs, et al., (Dec. 14, 2021), Exhibit 5 to the Declaration of Eva Canaan.

[28] Canaan Decl. ¶ 10, *supra* note 1.

[29] *Id.* ¶ 11.

[30] *Id.*

[31] *In re Rule 45 Subpoenas Issued to Dr. Ron Najafi and Emery Pharma*, 3:21-mc-80304 (N.D. Cal.), Dkt. 1.

and failed to mention the ongoing negotiations between Plaintiffs' and Defendants' counsel, and the Special Master, or Defendants' multiple offers to delay the depositions until after January 24, 2022.[32]

On December 21, the day after the motion to quash was filed, BIPI tagged the action with the Judicial Panel for Multidistrict Litigation ("JPML").[33]   In response to the tag, counsel for Emery noted that he intended to file an objection to the transfer, which would prompt a months-long briefing schedule before the JPML.   Notably, counsel for Emery took this position despite being shown JPML's recent orders rejecting nearly identical arguments seeking to prevent the MDL Court from exercising jurisdiction over motions to quash.[34]   Then, at approximately 8:41 p.m. EST on December 23, without conferring (despite it being required under the local rules), counsel for Emery served their motion to expedite briefing in the Northern District of California, where local rules required BIPI to respond on Monday, December 27. [35]   In their motion, Emery represented to the Northern District of California that the issues related to Emery's testing of ranitidine for NDMA are "wholly distinct" from the issues in the MDL.   On December 28, 2021, the Northern District Court denied Emery's ex parte application, and BIPI's opposition to the motion to quash is due on January 5, 2021.   On January 29 and 30, Plaintiffs in the MDL requested Defendants to forgo filing the Motion to Compel offering to present a proposal which would satisfy Defendants' requests (i.e.,   a 30(b)(6) deposition of Emery shortly after January 24th and a combined fact and expert witness deposition of Ron Najafi after the deadline for rebuttal reports).   Instead, Plaintiffs proposed a 2-hour deposition, where Defendants can only explore topics agreed-

---

[32] *See id.*

[33] *In Re: Zantac (Ranitidine) Products Liability Litigation*, MDL No. 2924 (J.P.M.L.), Dkt. 963.

[34] *See* Canaan Decl. ¶ 13 *supra* note 1; Correspondence from Sami Sedghani to Eva Canaan (December 22, 2021), attached as Ex. 14 to the Declaration of Eva Canaan.

[35] In the response, BIPI explained that the Court could and should *sua sponte* transfer the Motion to Compel to the MDL pursuant to Fed. R. Civ. P. 45(f).

to in advance with Plaintiffs, where the topics of the deposition would be foreclosed from further exploration during expert discovery, where no additional discovery of Emery Pharma's personnel would be allowed, and where Defendants (who have already paid the statutory fees for a fact deposition) must also cover Emery's hourly billing rate.  Defendants rejected this proposal.  Lastly, on January 3, the JPML issued a Conditional Transfer Order conditionally designating Emery's Motion to Quash as appropriate for transfer to this MDL.[36]

## IV.   LEGAL STANDARD.

Federal Rule of Civil Procedure 45 authorizes the use of subpoenas to compel a non-party's attendance for a deposition.  "A Rule 45 subpoena should be enforced unless it is clear that the evidence sought can have no possible bearing on the issues."  *State Farm Mut. Auto. Ins. Co. v. Maistrenko*, No. CV 19-20850-MC, 2020 WL 486271, at *3 (S.D. Fla. Jan. 30, 2020) (citing *Benavides v. Velocity IQ, Inc.*, No. 05-cv-1536-T-30, 2006 WL 680656, at *2 (M.D. Fla. Mar. 15, 2006)).  Additionally, the scope of discovery under Rule 45 is the same scope as established in Rule 26, allowing a party to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.  *Coleman v. Lennar Corp.*, No. 18-MC-20182, 2018 WL 3672251, at *2 (S.D. Fla. June 14, 2018) ("[C]ourts treat the scope of discovery under a subpoena the same as the scope of discovery under Rule 26."); *Sony Computer Ent. Am., Inc. v. Nasa Elecs. Corp.*, No. 07-20819-CIV, 2008 WL 11333427, at *2 (S.D. Fla. Feb. 22, 2008) ("[T]he scope of a non-party subpoena under Federal Rule of Civil Procedure 45 must be judged in light of the other discovery rules, such as Federal Rules 26 and 34.").

## V.   ARGUMENT.

### A.   The Discovery is Relevant.

---

[36] *In Re: Zantac (Ranitidine) Products Liability Litigation*, MDL No. 2924 (J.P.M.L.), Dkt. 968.

This Court should enforce the deposition subpoenas because they seek information relevant to the claims in this MDL. In the context of Rule 45, "relevance is to be broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case." *State Farm Mut. Auto. Ins. Co. v. Maistrenko*, No. CV 19-20850-MC, 2020 WL 486271, at *3 (S.D. Fla. Jan. 30, 2020) (citing *Auto-Owner Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 430 (M.D. Fla. 2005)).

In the instant case, the relevance of the topics of these depositions is beyond any serious dispute. Plaintiffs have relied repeatedly and consistently on Emery's data in their Master Complaints and submissions to the MDL Court. *See, e.g.*, Dkts. 3424, pp. 17, 19, 20, 25 (relying on Emery's testing in response to a motion to dismiss); 3429, p. 32 (same); 3887 ¶¶ 336, 337, 339, 387, 393, 449 (citing Emery's Citizen Petition and testing in the Second Amended Master Personal Injury Complaint). In fact, as noted above, during the December 3 meet-and-confer with Plaintiffs and Special Master Jamie Dodge, ***Plaintiffs agreed that Defendants were entitled to a fact deposition of Emery*** and only disputed the timing of the deposition.[37] Plaintiffs have since changed their position and instead claim that no fact deposition of Emery should be permitted under any circumstances.[38]

This Court has already rejected similar arguments made by Plaintiffs and/or third parties related to the relevance of testing of ranitidine. Instead, this Court found that discovery of another third-party's analytical data on ranitidine was "vitally important" to this MDL. Dkt. 4566 ("The Valisure study and the scientific linkage between NDMA and ranitidine are vitally important issues in this litigation. The origins and motivation of the study . . . is important to the resolution of this

[37] Canaan Decl. ¶ 9, *supra* note 1.
[38] Bogdan Decl. attached as Exhibit 6 to the Declaration of Eva Canaan.

issue.").  In short, the information sought by these subpoenas is squarely relevant and necessary to the claims in this MDL and Defendants' ability to prepare its defense.

   **B.     The Discovery is Not Burdensome.**

   This Court should enforce the deposition subpoenas because Emery has not, and cannot, demonstrate that compliance with the subpoenas would cause an undue burden.  "[T]he burden of proof in demonstrating that compliance with a subpoena presents an undue burden lies with the party opposing the subpoena."  *Coleman v. Lennar Corp.*, No. 18-MC-20182, 2018 WL 3672251, at *3 (S.D. Fla. June 14, 2018); *In re Duque*, 154 B.R. 93, 95 (Bankr. S.D. Fla. 1993) ("[T]he party seeking to quash a subpoena has a heavy burden of proof."); WRIGHT & MILLER, 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed. 2021 update) ("The burden of proving that a subpoena duces tecum imposes an undue burden is on the person who seeks to have it quashed as unreasonable or oppressive.").  Moreover, an argument of undue burden must be made with specificity.  *Id.* ("The objecting party must demonstrate with specificity how the objected-to request is unreasonable or otherwise unduly burdensome.")

   In their motion to quash filed in the Northern District of California, Emery advanced a kitchen-sink collection of arguments that the subpoenas are "unnecessary, unduly burdensome, oppressive, and constitute annoyance and harassment."  Emery's motion makes a variety of contradictory statements such as arguing that the subpoenas contain "irrelevant categories" while also arguing the categories "will likely be redundant" of the expert witness testimony Plaintiffs intend to proffer.  Emery also complains about the prospect of appearing for deposition on January 4 noting it was "mere days after the new year's holiday" even though Defendants noted when serving the Subpoenas that these are placeholder dates which would be modified on agreement, and Defendants have repeatedly offered to delay the depositions until after January 24,

2022 (a fact Emery's motion completely ignores).[39]  Finally, the irony should not be lost that Emery argues that it is too burdensome for it to be involved or testify in the MDL proceedings, despite inserting itself into this litigation by repeated publicly-disseminated testing and other activities, as well as serving as a designated expert.

Emery also argues that "any relevant discovery sought from Emery Pharma has already been produced."  As explained above, Defendants have noted many instances of gaps in Emery's document productions.  For instance, there are no records for some data other than the final test results appearing in a slide deck presentation.  If Emery scientists, in fact, enter analytical data directly into PowerPoint, without any corresponding record in a lab notebook, report, or other documentation, Defendants are certainly entitled to explore this at a deposition.  In other words, if Emery conducts analytical testing without following standard laboratory reporting protocols and procedures, Defendants have a right to discover this as it bears on the reliability of Emery's methods and findings as alleged in the Master Complaints.  Similarly, even if Emery's document production were complete (which it decidedly was not), Defendants are entitled to question Emery about all of its pre-retention ranitidine testing results, as well as all the new testing data that Emery has shared publicly on YouTube, on its website, and/or with third parties.

Lastly, in another spurious argument, Emery claims that the deposition would constitute "uncompensated taking of intellectual property."  As a threshold issue, Emery cannot publicly disseminate testing on ranitidine and then attempt to thwart discovery claiming the information is "intellectual property."  Moreover, Emery provides no specifics to support this argument, does not claim to own any ranitidine patents, and does not articulate any cognizable property interest related to the scope of the subpoenas, making the argument insufficient on its face.  *In re Deposito*

---

[39]  Exhibit 5 to the Declaration of Eva Canaan.

*Centralizado de Compensacion y Liquidacion de Valores Decevale, S.A.*, No. 20-25212-MC, 2021 WL 2323226, at *11 (S.D. Fla. June 1, 2021) ("It is well settled that '[t]he litigant seeking the protective order must articulate the injury with specificity.'"); *see also Indep. Mktg. Grp., Inc. v. Keen*, No. 3:11-CV-447-J-25MCR, 2012 WL 512948, at *2 (M.D. Fla. Feb. 16, 2012) ("[A] non-party moving to quash a subpoena is in the same position as a party moving for a protective order.").   Nevertheless, for sake of argument, even assuming Emery possessed some property interest (which Defendants do not believe to be the case), the deposition will occur pursuant to a confidentiality order (Dkt. 780), which is sufficient to protect intellectual property interests. *Coty Inc. v. C Lenu, Inc.*, No. 10-21812-CIV, 2010 WL 5392887, at *3  (granting motion to compel disclosure of trade secrets); *Plouffe v. GEICO Gen. Ins. Co.*, No. 16-25145-CIV, 2017 WL 7796323, at *3 (S.D. Fla. Aug. 8, 2017) (denying motion to quash subpoena seeking confidential information where requesting party was not a direct competitor and agreed to enter a confidentiality agreement); *Retractable Technologies, Inc. v. Int'l Healthcare Worker Safety Ctr.*, No. 3:11-mc-28, 2011 WL 3555848, at *3 (W.D. Va. Aug. 11, 2011) ("[Q]uashing a subpoena is inappropriate where confidentiality interests can be safeguarded by means of a protective order.").

Despite Emery's laundry list of grievances, Emery has not articulated, whether in its motion to quash or during meet-and-confers, any valid argument that the information sought is irrelevant or unduly burdensome.  To the contrary, the repeated reliance by Plaintiffs on Emery's work illustrates that these factual issues are central to the claims in the MDL.  Thus, the need for such discovery outweighs any hypothetical burden on Emery of having to present a witness for deposition.

## C.    The Discovery Sought is Distinct from Expert Witness Testimony.

The deposition topics identified in the Subpoenas relate to Emery's investigation that occurred outside the scope of Emery's or Najafi's retention as a testifying expert.  In such

instances, where studies are conducted outside the scope of retention, it is well-established that parties may conduct fact depositions of the opposing parties' retained experts. *In re Abilify (Aripiprazole) Products Liab. Litig.*, 3:16-MD-2734, 2017 WL 2225614, at *2 (N.D. Fla. May 15, 2017); *see also In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2017 WL 11539487, at *2 (N.D. Ala. Oct. 27, 2017) ("Plaintiffs are not improperly seeking expert testimony. The Plaintiffs 'are simply seeking his personal knowledge as a leading adviser on the purchase of health coverage by large companies.'"); *Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 698 (S.D. Fla. 2011) ("Schmidt cannot immunize discoverable documents by later designating the recipient as an expert witness who will be providing trial testimony."). In *Abilify*, plaintiffs' expert, Dr. Etminan, conducted an epidemiological study prior to being retained by plaintiffs. *Id.* at *1. Outside the scope of expert discovery, defendants sought to depose Dr. Etminan as a fact witness. In support of their motion, defendants argued that the fact deposition was necessary, in part, because plaintiffs' counsel communicated with and potentially influenced Dr. Etminan and his work. Against plaintiffs' opposition, the *Abilify* court allowed defendants to take a fact deposition related to the methodology used by Dr. Etminan, and to determine whether plaintiffs' communications had influenced the study.[40]

Here, based on Emery's counsel's own representations, Emery was communicating with Plaintiffs about other matters while Emery was preparing its Citizen Petition, and Defendants have a good faith belief that Plaintiffs communicated with Emery about ranitidine prior to the filing of the Emery Citizen Petition (in other words, well before Emery/Najafi were retained as a litigation expert). Moreover, after retention, Emery continued to conduct non-privileged testing and released

---

[40] "Defendants' counsel are permitted to inquire whether Dr. Etminan made any changes to the timing, methodology, or other relevant aspect of the study following communications with Plaintiffs' counsel. To the extent that Dr. Etminan initiated contact with Plaintiffs' counsel, Defendants are free to inquire into his motive and the timing of such contact." *Id.* at *4, n. 3.

this information to the public and/or shared it with a third parties, including Dr. William Mitch.[41] Emery has conducted webinars – apparently intended to market its litigation support business – in which it revealed results of its ranitidine testing and touted its purported expertise.  The details of this publicly-disseminated testing, as well as whether it was influenced by Plaintiffs or other sources of bias, are factual issues ripe for discovery outside the confines of expert witness discovery.  All of these sources of data, including Emery's motivations and biases, are the appropriate subjects for deposition testimony.

Moreover, the deposition topics include matters related to Emery's compliance with the subpoena—an issue well beyond the scope of expert witness testimony.  Indeed, Emery's failure to produce responsive documents indicates at least one of two things: Emery does not maintain reliable records of its analytical testing, or Emery has been less than forthright about how it searched for and produced documents responsive to the subpoenas.  Defendants are entitled to inquire into these critical issues at deposition.

Plaintiffs and Emery have both previously taken the position that all three depositions must fit into a single expert witness deposition and that anything more is a "second bite at the expert."[42]  Now, Plaintiffs propose a single 2-hour deposition to cover the myriad of factual issues presented here by Emery's pre-retention testing and extensive post-retention testing shared publicly or with third-parties.  Both positions are plainly an attempt to incumber proper discovery.  As a threshold matter, Emery's testing contains information and data generated by multiple employees of Emery Pharma, necessitating the need for a Rule 30(b)(6) deposition as opposed to a simple fact or expert witness deposition.  Additionally, as noted above, the subpoena topics seek information related to

---

[41] Emery Pharma, *supra* note 9.
[42] Bogdan Decl. Exhibit 6 to the Declaration of Eva Canaan.

Emery's record-keeping and its public campaign against ranitidine (as well as the extent to which it may have been influenced by Plaintiffs' counsel). These are not issues that typically arise in expert discovery because, to state the obvious, expert witnesses typically do not file Citizen Petitions, conduct testing that they post on YouTube and other public sites, or give interviews to the news media. Because Emery is wearing two hats in this litigation – an expert hat and a fact witness hat – multiple depositions are appropriate and necessary.

In their motion to quash filed in the Northern District of California, Emery argued that the deposition subpoenas invaded protections afforded counsel's communications with experts. As a threshold matter, it is questionable whether Emery has standing to make this argument since Emery does not hold the privilege.[43] Nevertheless, although Defendants agree that communications between counsel and retained expert witnesses are generally protected, that is not the issue here. As the court noted in *Abilify*, communications that take place before retention can be discoverable if the communications may have influenced the expert's work. Additionally, neither Plaintiffs nor Emery can plausibly claim that these materials, or facts related to them, are protected when Emery has disclosed the information online for the public to view.

Moreover, to the extent some deposition topics may include information that may be privileged is not a reason to quash or even modify the subpoena. Rather, counsel for Plaintiffs can raise privilege objections in response to specific questions asked at deposition. To the extent the witness chooses not to answer, Defendants may then move to compel answers to specific questions which were improperly objected to during the deposition.

---

[43] This argument further illustrates that counsel for Plaintiffs appear to be coordinating with counsel for Emery to lodge these objections.

Therefore, the issues sought in these deposition subpoenas are clearly distinct from any forthcoming expert witness opinion, and Emery has not articulated any reason that would justify quashing or modifying these subpoenas.

**D.  Defendants Have Tendered Fees for Attendance at the Deposition.**

Formal service on a non-party requires personal service and tendering of fees.  Fed. R. Civ. P. 45.  However, Emery's counsel accepted service of the Subpoenas via email on Emery's behalf, thereby waiving formal service.  After having an opportunity to review the Subpoenas served by email (which clearly did not also contain a check with witness fees), counsel for Emery accepted service in consideration for Defendants agreeing to additional time to meet and confer on the scope of the Subpoenas.  Emery then engaged in several meet and confer discussions over the course of weeks where Emery's counsel never raised an objection relating to witness fees.  Nevertheless, *after waiving formal service and accepting service*, weeks later when seeking to evade the depositions sought, Emery (which is also a retained testifying expert) now claims for the first time that service was defective for not tendering $60 in witness attendance fees.

While Defendants believe the right to fees was waived by mutual agreement, in the spirit of cooperation, Defendants tendered the appropriate fees for a fact witness ($40.00/day for deposition testimony, $20.00/day for approximately 12 miles of travel to King & Spalding's San Francisco office).[44]  Although this tender was made after service of the Subpoenas, courts allow parties to cure this defect and proceed with enforcement of the subpoena in a timely manner. *Rainey v. Taylor*, No. 18-24802-MC, 2019 WL 1922000, at *3 (S.D. Fla. Apr. 30, 2019) (allowing plaintiff "an opportunity to timely cure [the failure to tender fees], so as to enforce the existing

---

[44] 28 U.S.C. § 1821 requires "an attendance fee of $40 per day for each day's attendance" plus travel expenses.  The travel expenses amount to $15.21, but Defendants rounded up to $20.00, for a witness fee of $120.00 ($60.00 per day).  Counsel for Defendants are not aware of any third party who has testified in this litigation pursuant to subpoena that has requested or been paid the statutory witness attendance fee.  Canaan Decl. ¶ 12, *supra* note 1.

18

subpoena"); *Klockner Namasco Holdings Corp. v. Daily Access.Com, Inc.*, 211 F.R.D. 685, 687 (N.D. Ga. 2002) ("[L]ate tender may justify compelling [witness] to attend his deposition subsequent to the tender.").

## CONCLUSION

For the foregoing reasons, Defendants request that this Court enter an order compelling Ron Najafi and Emery Pharma to appear for their fact and Rule 30(b)(6) depositions within two weeks of serving their expert report on January 24, 2022.

## CERTIFICATE OF COUNSEL

In accordance with S.D. Fla. L.R. 7.1, Counsel for Defendants, Eva Canaan and Michael Shortnacy, have conferred with Lead Counsel for Plaintiffs, Michael McGlamry, and with Emery's Counsel, Sami Sedghani, and have been advised that both Plaintiffs and Emery oppose the relief sought.

Dated: January 3, 2022                                    Respectfully submitted,


                                                         */s/ Andrew T. Bayman*
                                                         Andrew T. Bayman
                                                         KING & SPALDING LLP
                                                         1180 Peachtree Street, NE, Suite 1600
                                                         Atlanta, Georgia  30309
                                                         abayman@kslaw.com
                                                         Tel.:  (404) 572-3583
                                                         Fax:  (404) 572-5100

                                                         *Counsel for Defendant Boehringer*
                                                         *Ingelheim Pharmaceuticals, Inc.,*
                                                         *Boehringer Ingelheim Corporation,*
                                                         *Boehringer Ingelheim USA Corporation*

                                                         */s/ Joseph G. Petrosinelli*
                                                         Joseph G. Petrosinelli
                                                         **WILLIAMS & CONNOLLY LLP**
                                                         725 12th Street, NW
                                                         Washington, DC 20005

Tel.: (202) 434-5000
Fax: (202) 434-5029
jpetrosinelli@wc.com

*Counsel for Defendant Pfizer Inc.*

/s/ Mark Cheffo
Mark Cheffo
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10019
Tel.: (212) 689-3500
Fax: (212) 689-3590
mark.cheffo@dechert.com

*Counsel for GlaxoSmithKline LLC,*
*GlaxoSmithKline Holdings (Americas) Inc.*

/s/ Anand Agneshwar
Anand Agneshwar
**ARNOLD & PORTER**
**KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
Fax: (212) 836-8689
anand.agneshwar@arnoldporter.com

*Counsel for Sanofi US Services Inc., Sanofi-*
*Aventis U.S. LLC, and Chattem, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system, which will send notice of filing to all CM/ECF participants, and was served on the parties listed below via email and UPS Overnight on January 3, 2022:

Sami Sedghani
Synergist Law, P.C.
1299 4th St Suite 301
San Rafael, CA 94901
4153263708
Email: sami@synergistlaw.com

**Counsel for Najafi Pharma, Inc. d/b/a Emery Pharma and Ron Najafi, Ph.D.**

<u>/s/ Andrew T. Bayman</u>
Andrew T. Bayman

1