UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE ZANTAC (RANITIDINE)
PRODUCTS LIABILITY LITIGATION        CASE NO. 20-MD-2924-RLR/BER

_____/

MICHAEL BRETHOLZ,

v.                                   CASE NO. 21-MC-82184-RLR/BER

GLAXOSMITHKLINE, LLC
_____/

## ORDER GRANTING NON-PARTIES VALISURE LLC AND MICHAEL BRETHOLZ'S MOTIONS TO QUASH

Defendants seek discovery from third parties Valisure LLC and Michael Bretholz, both of whom seek to quash Defendants' subpoenas and/or move for protective orders. On January 19, 2022, I held a hearing on these pending motions. After full briefing and oral argument, the third parties' requests are GRANTED. The subpoenas are QUASHED IN FULL.

### BACKGROUND

Valisure is an independent laboratory. Mr. Bretholz is a lawyer who is also an investor in Valisure. He has provided legal services to Valisure in the past. In 2019, Valisure conducted testing that concluded that ranitidine-containing products caused cancer ("the Valisure Study"). Based on this testing, Valisure filed a Citizen's Petition with the FDA in September 2019. That Citizen's Petition ultimately helped lead to a

voluntary halt in sales of Zantac[1] and to this consolidated multidistrict litigation. The reliability of the Valisure Study has been called into question.

As most relevant here, the Plaintiffs allege that Zantac degrades into a carcinogen that causes multiple kinds of cancer. The parties have engaged in extensive "general causation" discovery directed to that hypothesis. The parties are in the process of exchanging expert analyses that test the hypothesis.

The Defendants theorize that Valisure engages in concerted efforts to generate false lab results for the purpose of furthering its financial interests and the financial interests of potential litigants, their lawyers, and their litigation funders. They assert that the Valisure Study and the Citizen's Petition in this case exemplify that strategy. To try to develop this theory, Defendants served third party subpoenas on Valisure and Mr. Bretholz.

At the hearing, the Plaintiffs represented that they do not intend to rely on the Valisure Study to establish general causation or any other part of their claims. Instead, they will rely on other published studies and their experts' own analyses.

A. *The Valisure Subpoena*

The subpoena to Valisure asked for 23 categories of evidence relating to, among other things, (1) the genesis and development of the Valisure Study and the Citizen's

---

[1] I use the term "Zantac" to refer to, collectively, prescription Zantac, OTC Zantac, and generic equivalents of prescription Zantac.

2

Petition, (2) how Valisure is funded, (3) Valisure's relationship and communications with Plaintiffs' lawyers, (4) Valisure's lobbying efforts with Congress and the FDA.

Valisure initially produced some documents in response to its subpoena. When Defendants later requested a more robust production, Valisure objected.

Valisure objects that the subpoena asks for information that is irrelevant and/or disproportionate the needs of the case. It seeks a protective order either (1) quashing the subpoena in full or (2) limiting the scope of further document production but allowing for facts to be addressed through sworn declarations. Valisure also asks that Defendants be ordered to pay its internal and external legal expenses.

Defendants ask me to compel Valisure to produce all responsive documents in its possession, custody, and control, and produce a privilege log for any documents withheld on that basis.

I have serious questions whether the evidence covered by the subpoena is relevant to the claims and defenses in this MDL. Assume that Defendants are correct that Valisure is part of a widespread joint undertaking to generate false testing results for the purpose of financially benefitting itself and its co-conspirators. That evidence would be relevant only to show that test results generated by Valisure are unreliable. It would be classic bias impeachment. But, if (as Plaintiffs represented at the hearing) Valisure's test results will not be used to prove the Plaintiffs' claims, then Valisure's bias does not tend to show that any fact in issue is more or less likely to be true. *See* Fed. R. Evid. 401. It is irrelevant.

Defendants offer two other theories of relevance. First, they argue that the Valisure Study and the Citizens Petition are specifically mentioned in the Plaintiffs' Master Complaints. That is true. But, complaints often allege background facts that are not probative of the claims being asserted. Rather, those facts (and the evidence to support them) are solely offered to show context or to explain other actions by the parties. Here, the Master Complaints reference the Valisure Study and the Citizens Petition solely as part of the historical chronology explaining how the alleged dangerousness of Zantac was publicly disclosed. That chronology is not meaningfully disputed here.

Second, Defendants argue that Valisure's test results other than the Valisure Study will be used to support Plaintiffs' experts and/or scientific studies that Plaintiffs will use to litigate *Daubert* motions. After all, they say, Valisure is in the business of offering laboratory services. An expert or a researcher might hire Valisure to conduct lab testing. So, the argument continues, Defendants should be able to impeach that expert or study by showing Valisure's bias.

I acknowledge the hypothetical situation where this second relevance theory would be applicable. Right now, however, there is no evidence that this situation is occurring or is likely to occur.

Even if the subpoenaed evidence were relevant, it is disproportionate to the needs of the case. At the hearing, Defendants produced a demonstrative timeline supported by 58 exhibits. These exhibits show that Defendants have obtained evidence in support of their conspiracy theory from multiple third parties and from

4

Valisure's partial response to the subpoena. Taken together, this evidence allows Defendants to make an adequate circumstantial showing that their theory is factually supported.

At the hearing, counsel for Defendants argued that the other evidence sought from Valisure might reveal direct evidence in support of the Defendant's conspiracy theory. This argument is speculative. Regardless, applying the Rule 26(b)(1) factors shows that requiring Valisure to produce additional materials is disproportionate to the needs of the case. It is not clear that Plaintiffs will rely on Valisure testing, directly or indirectly, to prove their claims. Therefore, the additional requested evidence has limited, if any, importance to the issues at stake in this MDL. Even if Valisure's bias is at issue, the requested evidence has limited importance to proving that bias. Defendants already have substantial circumstantial evidence to impeach any Valisure test results for bias. It is not certain that enforcing the subpoena will yield direct evidence, at all, or even direct evidence that is more probative than the existing circumstantial evidence. And, requiring Valisure to search, produce and/or log the materials sought in the subpoena would impose significant burden and expense. This burden outweighs the likely benefit that would be gained from enforcing the subpoena.

For all these reasons, Valisure's request to quash the subpoena in full and/or for protective order is GRANTED.

B. *The Bretholz Subpoena*

The subpoena to Mr. Bretholz called for 29 categories of evidence. ECF No. 2-1 in Case No. 21-MC-82184. They included Mr. Bretholz's communications with, on behalf of, and related to Valisure. *Id.* The subpoena required compliance in the Southern District of New York. Mr. Bretholz moved to quash in that jurisdiction. ECF No. 2-1 in Case No. 21-MC-82184. On the Defendants' motion, the motion to quash was transferred to this Court.

Mr. Bretholz objects that the subpoena to him seeks information that is irrelevant, disproportional to the needs of the case, cumulative of other discovery, harassing, and creates an undue compliance burden. He seeks a protective order quashing the subpoena in full. Here, too, Defendants ask me to compel Mr. Bretholz to comply with the full scope of the subpoena.[2] They once again argue that Mr. Bretholz may have direct evidence of communications in furtherance of the alleged conspiracy.

The Bretholz subpoena must be quashed for the same reasons as the Valisure subpoena. It seeks information that is of marginal, if any, relevance. Requiring Mr. Bretholz to comply with the full subpoena is disproportionate to the needs of the case.

---

[2] At the hearing, Defendants' counsel first asked to have the subpoena enforced in full, but later proposed that Mr. Bretholz be required only to provide documents not already produced by Valisure. As discussed at the hearing, the parties are free to negotiate that kind of compromise, but it is not feasible, nor appropriate, for the Court to order it at this procedural juncture.

6

For all these reasons, Mr. Bretholz's request to quash the subpoena in full and/or for protective order is GRANTED.

## FEES AND COSTS

Valisure and Mr. Bretholz ask me to award them fees and costs. If they persist in that request, they should file a separate motion that (1) clearly cites the legal authority under which fees and costs are sought and (2) specifies the categories of fees and costs for which reimbursement is sought. The motion need not list the amount of fees or costs being sought, nor must it append materials to support any such amount. Defendants shall respond within the time limits set forth in the Local Rules. Should the Court determine that there is an entitlement to fees and/or costs, the parties shall then comply with the procedures in Local Rule 7.3 before further litigation about the amount of fees and costs to be awarded.

**DONE AND ORDERED** in Chambers this 27th day of January 2022, at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE