# Exhibit 6

EXECUTION COPY

## VALISURECL, LLC
## DATA AND ANALYTICAL SERVICES AGREEMENT

This **DATA AND ANALYTICAL SERVICES AGREEMENT** (this "Agreement") is effective as of March 21, 2018 ("Effective Date") and is by and between ValisureCL, LLC and its affiliates ("ValisureCL"), on the one hand, and Dr. Adam Bretholz, M.D., on the other hand, (the "Client"). This Agreement constitutes the complete agreement of the parties relating to the subject matter hereof and supersedes any prior representations or agreements. Any reproduction of this Agreement made by reliable means, whether signed manually or electronically, shall have the same effect as an original. No amendment to this Agreement or any exhibit hereto, or waiver of any terms hereof, shall be effective unless agreed by the parties in writing.

**1. ANALYTICAL SERVICES**

Dr. Adam Bretholz wishes to investigate the properties of ranitidine (AKA ranitidine hydrochloride), which is an important pharmaceutical used in his practice area of paediatrics and which has been reported in the scientific literature to be associated with N-nitrosodimethylamine, a known and potent carcinogen.

ValisureCL will conduct and provide Client with Valisure analytics relating to ranitidine, which is to include analysis of its United States Pharmacopeia Monographs, an investigation of ranitidine degradation in physiological conditions and any link between the pharmaceutical and carcinogenic toxins like NDMA, and relevant reports prepared by Valisure, on the terms and subject to the conditions set forth in this Agreement ("Analytical Services").

**2. FEES**

Client shall pay ValisureCL $1,000 in consideration for the Analytical Services.

**3. RESTRICTIONS ON USE; INTELLECTUAL PROPERTY**

Client shall not publish, resell or disclose any portion of the materials provided to Client to any third party without prior consent from ValisureCL.

Client acknowledges and agrees that (i) the Licensed Products and all deliverables provided hereunder are licensed, not sold, to Client, and Client does not and will not have or acquire under or in connection with this Agreement any ownership interest in the Licensed Products or any deliverables provided hereunder; and (ii) as between Client and ValisureCL, ValisureCL is and will remain the sole and exclusive owner of all right, title and interest in and to the Licensed Products and all deliverables provided hereunder, including all intellectual property rights relating thereto.

Client shall not, and shall not permit any other person to, access or use the Licensed Products and any deliverables provided hereunder except as expressly permitted by this Agreement, subject to Section 4 – Confidential Information. For purposes of clarity and without limiting the generality of the foregoing, Client shall not, except as this Agreement expressly permits: (a) copy, modify or create derivative works or improvements of the Licensed Products or of any reports or other deliverables provided hereunder; (b) rent, lease, lend, sell, sublicense, assign, distribute, publish, transfer or otherwise make available any Licensed Products, reports or other deliverables provided hereunder to any person; or (c) otherwise use the Licensed Products, reports or other deliverables provided hereunder beyond the scope of the authorization granted under this Agreement.

**4. CONFIDENTIAL INFORMATION**

From time to time during the Term of this Agreement, either party (as the "Disclosing

Party") may disclose or make available to the other party (as the "Receiving Party"), non-public proprietary and confidential information of Disclosing Party ("Confidential Information"). "Confidential Information" does not include any information that: (i) is or becomes generally available to the public other than as a result of Receiving Party's breach of this Section 4; (ii) is or becomes available to Receiving Party on a non-confidential basis from a third-party source, provided that, to the knowledge of the Receiving Party, such third party is not and was not prohibited from disclosing such Confidential Information; (iii) was in Receiving Party's possession prior to Disclosing Party's disclosure hereunder; or (iv) was or is independently developed by Receiving Party without using any Confidential Information. The terms, but not the existence, of this Agreement are Confidential Information of both parties. Subject to the Client's right to use the information as expressly set forth herein, the Receiving Party shall: (a) protect and safeguard the confidentiality of the Disclosing Party's Confidential Information with at least the same degree of care as the Receiving Party would protect its own Confidential Information, but in no event with less than a commercially reasonable degree of care; (b) not use the Disclosing Party's Confidential Information, or permit it to be accessed or used, for any purpose other than to exercise its rights or perform its obligations under this Agreement; and (c) not disclose any such Confidential Information to any person or entity, except to the Receiving Party's representatives who need to know the Confidential Information to assist the Receiving Party, or act on its behalf, to exercise its rights or perform its obligations under this Agreement.

If the Receiving Party is required by applicable law, rule or regulation, or legal process to disclose any Confidential Information, it shall, prior to making such disclosure, use commercially reasonable efforts to notify the Disclosing Party of such requirements to afford the Disclosing Party the opportunity to seek, at the Disclosing Party's sole cost and expense, a protective order or other remedy.

This Section 4 shall survive termination of this Agreement for a period of 2 years, even after the destruction of Confidential Information by Receiving Party, provided that for any and all trade secrets of the Disclosing Party, the survival Period shall last for as long as such Confidential Information qualifies as a trade secret under applicable federal, state and/or local law.

5. NOTICES

All notices or other communications to or upon either party shall be in writing delivered by reputable same day or overnight courier or email to the addresses set forth on the signature page hereto or such other address as a party may specify in writing. Any notice so sent shall be deemed given when delivered.

6. RELATIONSHIP OF PARTIES

The relationship of the parties under this Agreement is that of independent contractors. Neither ValisureCL nor Client can bind the other, and nothing in this Agreement creates any relationship of principal or agent.

7. PUBLICITY

Neither party shall issue or release any announcement, statement, press release or other publicity or marketing material relating to this Agreement or otherwise use the other party's trademarks, service marks, trade names, logos, domain names or other indicia of source, affiliation or sponsorship, in each case, without the prior written consent of the other party.

8. DISCLAIMER OF WARRANTIES

ValisureCL makes no warranties or representations, express or implied, with respect to any actions or strategies pursued by Client as a result of information or services provided by ValisureCL. THE ANALYTICAL SERVICES ARE PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS WITHOUT ANY WARRANTY NOT EXPRESSLY SET FORTH HEREIN. ALL WARRANTIES NOT EXPRESSLY SET FORTH HEREIN, EXPRESS OR IMPLIED, INCLUDING, BUT NOT

VAL-BI  01435

LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE HEREBY DISCLAIMED. VALISURECL DOES NOT WARRANT THAT THE ANALYTICAL SERVICES WILL BE ERROR FREE.

ValisureCL shall not be liable for any failure or inability to provide the Analytical Services due to any event, condition or circumstances beyond ValisureCL's reasonable control. Except in the case of ValisureCL's gross negligence, or intentional misconduct, ValisureCL will not in any way be liable to the Client or any other person for any inaccuracies, errors, omissions, delays, damages, claims, liabilities or losses, regardless of cause, in or arising from the use of the Analytical Services.

### 9. INDEMNIFICATION

ValisureCL shall defend, indemnify and hold harmless Client from and against all third party claims resulting from any material breach of any representation, or warranty of ValisureCL set forth in this Agreement. Client shall defend, indemnify and hold harmless ValisureCL from and against all third party claims (a) resulting from any material breach of any representation, warranty or obligation of Client as set forth in this Agreement, (b) relating to the use of the Analytical Services and any decisions or analyses made by Client or others using the Analytical Services; or (c) resulting from any unauthorized use or disclosure of the Analytical Services, except, in each case, to the extent such claims arise from the gross negligence or intentional misconduct of ValisureCL.

### 10. LIMITATION OF LIABILITY

IN NO EVENT SHALL VALISURECL'S AGGREGATE LIABILITY ARISING OUT OF OR BASED UPON THIS AGREEMENT REGARDLESS OF THE FORM IN WHICH ANY LEGAL OR EQUITABLE ACTION MAY BE BROUGHT, INCLUDING WITHOUT LIMITATION, ANY ACTION IN TORT OR CONTRACT, EXCEED THE SUM OF ALL FEES PAID BY CLIENT PURSUANT TO THIS AGREEMENT FOR THE TWELVE (12) MONTH PERIOD PRECEDING THE CLAIM. IN NO EVENT SHALL VALISURECL BE LIABLE FOR LOSS OF PROFITS, PUNITIVE, INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR OTHER INDIRECT DAMAGES ARISING OUT OF OR RELATING TO CLIENT'S USE OF OR INABILITY TO USE THE ANALYTICAL SERVICES.

### 11. ASSIGNMENT

Neither this Agreement nor any rights or obligations hereunder, in whole or in part, are assignable by Client without the prior written consent of ValisureCL; and any attempt to assign the rights, duties or obligations under this Agreement without such consent shall be a breach of this Agreement and be null and void.

### 12. GOVERNING LAW; VENUE

This Agreement shall be deemed to have been made in, and shall be construed pursuant to the laws of, the State of Connecticut, without regard to conflict of law principles. The parties agree that any action or proceeding arising out of or related to this Agreement shall be brought exclusively in the state or federal courts of the State of Connecticut located in New Haven County, and each of ValisureCL and Client hereby irrevocably accepts the exclusive personal jurisdiction and venue of those courts for the purpose of any suit, action or proceeding.

VAL-BI 01436

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be signed by their duly authorized representatives as of the date first set forth above.

| **VALISURECL, LLC** | **DR ADAM BRETHOLZ** |
|---|---|
| By: *(signed)* David Light | By: *(signed)* Adam Bretholz |
| Name: David Light | Name: Dr. Adam Bretholz, MD |
| Title: CEO, Valisure | Title: Doctor |
| | |
| Address for Notices: | Address for Notices: |
| | |
| 5 Science Park | 52 Forden Cres. |
| New Haven, CT 06511 | Westmount, QC Canada |
| Attn: Jessica | Attn: Dr. Adam Bretholz |
| Email: Jessica@valisure.com | Email: adambretholzmd@gmail.com |