UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: ZANTAC (RANITIDINE) <br> PRODUCTS LIABILITY LITIGATION | MDL NO. 2924 <br> 20-MD-2924 <br> JUDGE ROBIN L. ROSENBERG <br> MAGISTRATE JUDGE BRUCE E. REINHART |

THIS DOCUMENT RELATES TO: ALL ACTIONS

**BRAND DEFENDANTS' EXPEDITED MOTION TO COMPEL
PRODUCTION OF FACTS AND DATA CONSIDERED BY PLAINTIFFS' EXPERTS
RAMIN (RON) NAJAFI, PH.D. AND CHARLES S. DAVIS, PH.D.**

Defendants Boehringer Ingelheim Pharmaceuticals, Inc., GlaxoSmithKline LLC, Pfizer Inc., Sanofi US Services Inc., Sanofi-Aventis U.S. LLC, and Chattem, Inc. (collectively, the "Defendants") move the Court for an Order to compel complete production pursuant to Federal Rule of Civil Procedure 26 of the facts and data considered, but not produced, by Plaintiffs' experts Ramin (Ron) Najafi, Ph.D., and Charles S. Davis, Ph.D., with respect to testing of ranitidine samples upon which multiple Plaintiffs' experts have relied and/or considered. Such withheld facts and data include conditions of storage of all samples upon taking custody, full study protocols and standard operating procedures, lab notebooks, and complete study results for the experiments described in Dr. Najafi's report, as well as facts and data (i.e., additional analyses) that Dr. Najafi considered but chose not to include in his report or included only in summary form. In addition, Plaintiffs should have produced the underlying data sets, code, and full statistical output considered, prepared, and/or generated by Dr. Davis. Defendants further request that the Court extend the deadline for the disclosure of Defense expert reports that respond to Dr. Najafi's and Dr. Davis' reports to two weeks after Plaintiffs produce the requested information. Plaintiff's delay in providing complete disclosures constitutes good cause for the limited extension.

1

Defendants will disclose expert reports that do not address Dr. Najafi's and Dr. Davis' opinions by the current March 7 deadline. Defendants respectfully request expedited briefing and a hearing on this matter.

On January 24, 2022, Plaintiffs served the Rule 26 expert report of Dr. Najafi, the founder and CEO of Emery Pharma. Plaintiffs had retained Dr. Najafi and Emery Pharma to conduct various analyses on samples of Zantac and ranitidine hydrochloride provided by Defendants and apparently purchased on eBay for the potential presence of NDMA under various conditions. Based on that testing, Dr. Najafi offers numerous broad conclusions related to ranitidine and NDMA formation, tying several of his conclusions to summary tables of data sets or their averages, without providing the underlying information. (*E.g.*, Najafi Report ¶¶ 125, 167, 188.) Other of Plaintiffs' general causation experts—most notably Dr. Davis—offer opinions based on Dr. Najafi's findings and the testing conducted by Emery Pharma at Plaintiffs' direction. Dr. Najafi has not provided the complete facts and data he considered in forming his opinions, in violation of Federal Rule of Civil Procedure 26(a)(2)(B)(ii). The omissions from Dr. Najafi's Rule 26 disclosure include:

    1)  complete data that he and Emery Pharma generated when testing samples, and lab notebooks for all testing (including testing conducted but not reported in Dr. Najafi's report);

    2)  all photographs and images, including SEM images, of samples;

    3)  complete validation and calibration documentation for that testing (including testing conducted but not disclosed in Dr. Najafi's report);

    4)  full protocols, standard operating procedures, and/or lab notebooks for all experiments performed (including testing conducted but not disclosed in Dr. Najafi's report); and

2

5) a complete inventory or chain-of-custody records for physical samples obtained by Emery from any source, including storage conditions.

Likewise, Dr. Davis's report is deficient because he did not provide a copy of the data sets, the statistical code he wrote, and full statistical outputs from his analysis of Dr. Najafi's testing.

Dr. Najafi's testing, and Dr. Davis's corresponding analyses, are central to Plaintiffs' expert opinions and theory of the litigation. Selective disclosure of the underlying data and facts related to that testing and analyses impedes Defendants' experts as they evaluate the test results chosen for disclosure by Drs. Najafi and Davis. Just as important, Defendants and their experts are entitled to analyze whether and how Drs. Najafi and Davis selectively relied on testing data that support their opinions, while discarding, minimizing, or ignoring those data that might undermine their conclusions. Without a complete record of the testing performed, Defendants will be hamstrung in their ability to critique Dr. Najafi's and Dr. Davis's methodologies, results, and reliability in Defendants' expert reports, and to adequately prepare for their depositions. The information sought in this motion is routinely maintained by laboratories and should be readily available to Plaintiffs. Disclosure is not governed by Rule 26(b) discovery considerations; it is a requirement of Rule 26(a) and should be provided immediately to avoid further prejudice to Defendants.

## BASIS FOR EXPEDITED TREATMENT

Defendants file this expedited motion according to Local Rule 7.1(d)(2). Defendants respectfully ask this Court to enter an expedited briefing schedule and set a hearing as soon as possible following the close of briefing. This request is made in good faith, and the information sought is necessary so Defendants and their experts can have an opportunity to completely evaluate and challenge the testing that serves as a foundation for the general causation opinions of Plaintiffs'

experts. Defendants' expert reports are due on March 7, 2022, and the parties are in the process of scheduling depositions of Plaintiffs' experts. Defendants already have been prejudiced by Plaintiffs' failure to produce this information contemporaneously with their expert reports in compliance with Rule 26. Defendants have met and conferred with Plaintiffs' counsel in an effort to resolve these issues without Court intervention. An expedited briefing schedule is not unfair to Plaintiffs, for counsel have been on notice since last year of Defendants' need for the expert disclosures at issue in this motion.

## BACKGROUND

In September 2021, the Court ordered Defendants to provide hundreds of samples of ranitidine API and finished product requested for testing by Plaintiffs' experts. Order Memorializing Discovery Rulings, ECF 4262 (Sept. 14, 2021). After shipping these samples to Emery Pharma, Defendants served interrogatories in October 2021 seeking: (1) storage and chain-of-custody data for the ranitidine samples in Plaintiffs' possession for purposes of testing or potential testing; and (2) testing conducted by Plaintiffs or their experts on ranitidine, including design and testing protocols, methodologies, specifications for each test, testing parameters, and the results of those tests. Plaintiffs refused to answer the interrogatories. Among other reasons, Plaintiffs objected that the discovery was premature because it related to work to be performed by Plaintiffs' experts. (**Exhibit A**, Plaintiffs' Co-Lead Counsel's Objections to First Set of Interrogatories, Nov. 22, 2021.)

During a December 23, 2021 meet and confer, Plaintiffs' counsel again raised prematurity as an objection to the Interrogatories, but invited Defendants to make a specific request for the testing materials they expected to accompany the Rule 26 expert disclosures. In response, on

December 24th, Defendants asked Plaintiffs' counsel to commit that they would provide, by January 24, 2022:

    1)    The results of any testing of ranitidine-containing products performed on behalf of Plaintiffs in this litigation, whether or not those results are reproduced or summarized in your expert reports, including testing methodology and storage conditions/handling/chain of custody of the samples from date of receipt to date of testing;

    2)    An inventory identifying the samples you tested, the samples you did not test, any remaining inventory (whether provided by Defendants or obtained by Plaintiffs' counsel or their consultants/experts for purposes of this litigation), and the storage conditions for that inventory.

(**Exhibit B**, Emails Re: Follow-up on Defendants' Testing/Inventory Discovery.) Plaintiffs' counsel did not answer. Defendants reached out again to Plaintiffs' counsel regarding this request on January 5, 2022. (*Id.*) Again, Plaintiffs' counsel did not answer. Defendants wrote Plaintiffs' counsel a third time on January 21, 2022. Plaintiffs did not respond. (**Exhibit C**, Email Re: Zantac; Follow-up on Defendants' Testing/Inventory Discovery.)

Upon receiving Plaintiffs' Rule 26 expert disclosures three days later, Defendants found that Dr. Najafi's disclosure does not include complete testing data or related analytical information central to understanding the basis for his opinions, and that Plaintiffs' other experts relied on Dr. Najafi's tests when forming their general causation opinions. When Defendants shared with Plaintiffs' counsel a detailed list of deficiencies, (**Exhibit D**, Letter from Brands to Plaintiffs re: Deficiencies in Plaintiffs' Expert Witness Disclosures, Feb. 7, 2022), counsel refused to provide complete data for all testing performed but not disclosed in their expert reports, and instead responded that Plaintiffs would provide only "lab notebooks for testing represented in the [Dr. Najafi] report," and only if Defendants agreed to allow additional fact discovery related to

5

Defendants' own non-litigation testing.  (**Exhibit E**, Emails re: Zantac – Letter to PSC re Rule 26 Disclosure Deficiencies at 3–4.)

## ARGUMENT

I. **THE NAJAFI REPORT VIOLATES RULE 26(a)(2)(B)(ii) BECAUSE IT OMITS FACTS AND DATA CONSIDERED AND GENERATED BY DR. NAJAFI.**

An expert report submitted under Federal Rule of Civil Procedure 26(a)(2)(B) must include, among other items, "the facts or data considered by the witness in forming" her or his opinions.  Fed. R. Civ. P. 26(a)(2)(B)(ii).  The Eleventh Circuit has endorsed the Advisory Committee's broad application of the Rule "to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1195 (11th Cir. 2013) (quoting Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note).  Rule 26(a)(2)(B) is "a bright-line rule requiring disclosure of all information provided to testifying experts." *Id.* at 1193.

Consistent with this broad interpretation, experts must disclose information "generated . . . in connection with the formulation of [their] opinions." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 6504419, at *4 (N.D. Fla. Nov. 5, 2020).  The rules require disclosure of these materials "whether or not ultimately relied upon by the expert." Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note.  "A majority of courts," including those in this District, "have held that [Rule 26(a)(2)(B)] requires disclosure of all materials . . . that have been provided to a testifying expert, whether or not the expert actually relied on the materials to form an opinion." *Suppa v. Costa Crociere S.p.A*, 2008 WL 11401796, at *2 (S.D. Fla. March 7, 2008); *accord Advocate Comms., Inc. v. Town Foundation, Inc.*, 2005 WL 8155324, at *6 (S.D. Fla. Sept. 13, 2005).  An expert who selectively relies on certain results while disregarding others is subject to a Rule 702 challenge for failing to use a reliable scientific methodology.  *In re Denture Cream Prods. Liab.*

6

*Litig.*, 2015 WL 392021, at *26 (S.D. Fla. Jan. 28, 2015), *aff'd*, 652 Fed. App'x 848 (11th Cir. 2016) (deeming inadmissible expert opinion derived from "cherry-picked data and flawed methodology"); *Finestone v. Fla. Power & Light Co.*, 2006 WL 267330, at *12–13 (S.D. Fla. Jan. 6, 2006) (excluding testimony where expert was unable to "adequately explain why he chose [certain data]," and concluding that the court "may properly consider whether the expert's methodology has been contrived to reach a particular result.") (quotation omitted). Without complete disclosure of the materials considered and data generated, as required by the Rules, Dr. Najafi's methodology is a prejudicial black box that Defendants cannot examine and the Court cannot evaluate.

Dr. Najafi's disclosure is deficient in four ways.

**<u>Undisclosed Testing Performed by Dr. Najafi and Emery</u>**. Most critical, Dr. Najafi has not disclosed all of the testing Emery did in connection with this report. Dr. Najafi admits as much; according to the report, Emery completed at least two sets of additional experiments, but Dr. Najafi failed to disclose protocols, results or other information about the experiments beyond conclusory comments. (*E.g.*, Najafi Report ¶ 186 (stating that testing was done under a range of nitrite concentrations with many of the results appearing nowhere in the report), ¶ 215 (stating Emery studied "'high-nitrate' food products, e.g., Arugula[,] . . . a possible correlation between NDMA and dimethylamine (DMA) in study samples, . . . [and] the stability of ranitidine as well as NDMA in other biological fluids such as plasma and urine.")

There may well be other testing done by Emery and disregarded or minimized by Dr. Najafi. Indeed, although the Court required Defendants to produce thousands of samples, Dr. Najafi reported testing only 254 samples. (Najafi Report ¶ 130.) Following the meet and confer, Plaintiffs' offer to provide lab notebooks was extended only so far as Dr. Najafi had

7

"relied" on the analysis contained therein. Defendants have no way of verifying whether Dr. Najafi and his lab performed other tests unless the Court orders Plaintiffs to produce full Rule 26 disclosure for *all* ranitidine testing performed by Dr. Najafi and Emery in connection with the report, not simply the testing upon which Dr. Najafi relies. It is no solution to make Defendants wait until the depositions to discover what data are missing, as Plaintiffs' counsel have suggested. First, without disclosure well in advance of the depositions, as required by Rule 26, Defendants will not be able to effectively cross-examine the witnesses about the nature and extent of any undisclosed testing that was done, or to impeach the witnesses with that testing. Second, if forced to wait for deposition, Defendants would then have to seek leave to file supplemental reports accounting for that undisclosed testing, which is inefficient and disrupts the expert schedule. To avoid the prejudice caused by this timing, Defendants have sought diligently—since October 2021—to obtain this information, but Plaintiffs who first objected on grounds the requests were premature, then ignored subsequent requests when it was clear the data was missing from their expert reports.

**<u>Complete Facts and Data for Testing Results Relied on by Dr. Najafi</u>**. Dr. Najafi refers to and relies on facts and data not concurrently produced with his report. Most notably, Dr. Najafi's disclosure includes graphs that, by his own admission, summarize the data or provide only averages of data, but the underlying information is not included. (*E.g.*, Najafi Report ¶ 125 (long-term refrigeration study summary results), ¶ 167 (NAP test summary results), ¶ 188 (simulated gastric fluid pH and nitrite testing summary results).) Similarly, although Dr. Najafi opines that ranitidine tablets "exhibited changes in color" and that "odor was noticeable" during experimentation, he provides no documentation to substantiate those statements. (Najafi Report ¶¶ 78, 80.) Likewise, one of the few disclosed protocols specifically required the analyst to

8

"[v]isually inspect samples for . . . distinctive changes in color and/or odor prior to NDMA analysis" but no such documentation of any such visual inspections has been provided. (Najafi Report App'x A.)

Other expert reports underscore the incompleteness of Dr. Najafi's testing disclosures. Dr. Davis reports that he analyzed data from Dr. Najafi's "simulated consumer experience testing" that tested ranitidine samples exposed to temperature fluctuation "cycles." (*See* Najafi Report ¶ 244 *et seq*; Davis Report at 5, App'x 2.) Dr. Davis reports analyzing NDMA readings measured at 6 cycles, 15 cycles, 30 cycles, and 50 cycles. Dr. Najafi's report, however, only discloses results for 15 cycles, 30 cycles, and 50 cycles—Dr. Najafi makes no mention of NDMA readings at 6 cycles. (*Id.*, *see also* Najafi Report App'x B.) Had it not been for Dr. Davis' mention of the 6-cycles reading, Defendants would have no way of knowing that Dr. Najafi's report disregarded an entire category of testing and is cherry-picking results in reaching his opinions.

***Testing Protocols and Validations***. Central to Dr. Najafi's opinions are laboratory testing results that measure the amounts of NDMA in various samples, yet Dr. Najafi's disclosure does not contain complete information on validation and/or calibration—i.e., proof that a test method measures what it purports to measure—for each experimental procedure used. Instead, Dr. Najafi discloses summary protocols and "Validation Summary Table[s]," which lack the necessary data to evaluate the way the testing was conducted. (*See* Najafi Report, App'x A.) Dr. Najafi's summary tables do not provide sufficient information to allow Defense experts to determine whether the studies were properly validated. (*See* **Exhibit F,** Declaration of Leonard J. Chyall, Ph.D. ("Chyall Decl.") ¶¶ 32–33.)

Beyond critical test results, Dr. Najafi has not disclosed laboratory-level records required to analyze whether Emery appropriately conducted the experiments Dr. Najafi relies upon

9

following generally accepted laboratory practices and methodologies, such as complete lab notebooks, lab instrument readouts, and standard operating procedures. (*See, e.g.*, *Id.* ¶¶ 27–30.)

Without full protocols and validations, Defendants cannot fully explore at depositions whether Emery and Dr. Najafi used a reliable scientific methodology, and whether the results Dr. Najafi generated are valid or replicable. These questions are at the heart of the gatekeeping inquiry Rule 702 demands. *See McClain* v. *Metabolife Int'l, Inc.*, 401 F.3d, 1233, 1246 (11th Cir. 2005) ("The Daubert 'requirement that the expert testify to scientific knowledge—conclusions supported by good grounds for each step in the analysis—means that *any* step that renders the analysis unreliable under the *Daubert factors renders the expert's testimony inadmissible*.'") (quoting *Amorgianos v. AMTRAK*, 303 F.3d 256, 267 (2d Cir. 2002)) (emphasis in original).

***<u>Inventory and Chain of Custody for Samples held by Emery</u>***. Finally, considering the importance of storage conditions and how they may impact the testing at issue, Defendants requested a complete inventory of product samples held by Emery, whether part of the testing or not, along with chain-of-custody details for those samples. Dr. Najafi has failed to provide chain-of-custody logs detailing, for example, date of sample receipt, storage containers used, storage conditions, and records of any testing for all ranitidine samples received by Emery Pharma, including those not subject to testing or whose results Dr. Najafi may not have relied upon and those that were not tested at all.

There are two reasons for Defendants' request. First, a complete inventory will allow Defendants to cross-check the samples held and the samples tested, to understand whether and why certain samples may have been omitted from testing and whether those selections result in bias (or are the result of bias). Second, at the heart of Plaintiffs' case is their theory that the storage and transportation of ranitidine contributes to NDMA formation. For that reason, when obtaining

samples from Defendants, Plaintiffs' counsel insisted on chain-of-custody information, which Defendants provided. Defendants therefore are entitled to reciprocal chain-of-custody information for the samples held and tested by Emery—something Defendants have requested from Plaintiffs since October 2021.

## II. THE DAVIS DISCLOSURE VIOLATES RULE 26(a)(2)(B)(ii) BECAUSE IT OMITS FACTS AND DATA CONSIDERED AND GENERATED BY DR. DAVIS.

Dr. Davis's disclosure is similarly deficient because it does not provide the full data sets, the statistical code he wrote for his analysis, or complete statistical outputs. These materials were necessarily prepared for purposes of Dr. Davis's disclosure and are part of the facts and data he considered, requiring disclosure under Rule 26. *In re 3M Combat Arms Earplug*, 2020 WL 6504419 at *4. The Reference Manual on Scientific Evidence urges disclosure of precisely this type of information. David Kaye & David Freedman, *Reference Guide on Statistics, in Reference Manual on Scientific Evidence* 211, 216 (Fed. Jud. Ctr., 3d Ed. 2011) ("Reference Manual"). In a section titled, "Disclosing data and analytical methods before trial," the Reference Manual recommends:

> The collection of data often is expensive and subject to errors and omissions. Moreover, careful exploration of the data can be time-consuming. To minimize debates at trial over the accuracy of data and the choice of analytical techniques, ***pretrial discovery procedures should be used, particularly with respect to the quality of the data and the method of analysis***."

*Id.* at 216 (emphasis added).

## III. THE DEFICIENCIES IN THE NAJAFI AND DAVIS REPORTS HAVE CAUSED AND WILL CAUSE UNFAIR PREJUDICE TO DEFENDANTS.

Dr. Najafi's and Dr. Davis's opinions are central to Plaintiffs' case and the reliability of their methodology is critical to the litigation. As Dr. Najafi states, he aims to "quantify the amount of potential exposure to NDMA from ranitidine drug products." (Najafi Report ¶ 9.) In many

11

ways, Dr. Najafi is Plaintiffs' keystone expert and Defendants are entitled to test whether his wide array of opinions and the data his lab generated satisfy Rule 702.

The significant deficiencies in Dr. Najafi's Rule 26 disclosures, however, preclude meaningful analysis of Dr. Najafi's methodology. Without complete testing results, Defendants' experts cannot determine whether Dr. Najafi's conclusions are based on a reliable assessment of all relevant data. (*See generally* Chyall Decl.) Without lab notebooks, Defense experts cannot confirm adherence to the protocols or identify experimental conditions that could impact the testing results. (*See, e.g.*, *Id.* ¶¶ 27–31.) Without complete protocols, Defense experts cannot assess the appropriateness of testing procedures or attempt to replicate testing to confirm reliability. (*See, e.g.*, *id.* ¶ 29.) Moreover, Dr. Najafi reports testing done on purchased Zantac to which Defendants have no access at all. Limiting Defendants to Dr. Najafi's curated summary tables and graphs also prevents defendants from effectively preparing for Dr. Najafi's deposition and Rule 702 briefing. For instance, to probe why Dr. Najafi chose not to include certain data in his expert report, Defendants need to time to analyze the excluded data prior to deposition. Just as Dr. Najafi's opinions are critical to the litigation, they are central in assessing the reliability of Plaintiffs' other experts, as six of eleven other experts consider and/or rely upon Dr. Najafi's report.

Plaintiffs' refusal to provide the information required by Rule 26 has no legitimate basis, and Defendants are not asking Plaintiffs' counsel or their experts to create any new information. Likewise, Defendants are ***not*** asking for every scrap of paper ever generated but rather are seeking materials specifically requested by the experts because such material is necessary for a proper analysis. The materials requested by Defendants should exist and be easily accessible because the documentation for analytical testing is generated during testing, and labs should maintain

documents such as procedures, laboratory notebooks, and validation reports as a matter of course. (Chyall Decl. ¶¶ 27, 38–41.) Additionally, Dr. Najafi's report states that "Emery Pharma is a FDA registered and Inspected, cGMP/GLP compliant Contract Research Laboratory." (Najafi report ¶ 6.) Under cGMP/GLP, which refers to "Current Good Manufacturing Practices and Good Laboratory Practices," Emery already must maintain the complete protocols, lab notebooks, and testing results that should have been disclosed with Dr. Najafi's report. (Chyall Decl. ¶ 38.) If the documentation does not exist, potential data integrity issues arise, which would be important information to consider when interpreting analytical results and would call into question the reliability of Dr. Najafi's methodology and the testing results.

Defendants must produce expert reports by March 7 and must complete all expert depositions by May 31. Plaintiffs' continued refusal to produce Dr. Najafi's and Dr. Davis's materials substantially prejudices Defendants' ability to conduct thorough and timely expert discovery. Considering the short window for deposing all experts by May 31, Defendants continue to be unfairly disadvantaged by Plaintiffs' continued refusal to disclose the experts' materials. The prejudice is all the more stark in light of the fact that Plaintiffs have known since October 2021 that Defendants sought this information. In short, Defendants require all information reviewed, considered, or generated by Dr. Najafi and Dr. Davis, including materials they chose to exclude from their expert reports, in accordance with the expert disclosure requirements of Rule 26. To alleviate the prejudice Plaintiffs have already created, Defendants request that the deadline for disclosure of Defense expert reports that respond to the opinions offered by Dr. Najafi and Dr. Davis be extended to two weeks from the date of production.

## CONCLUSION

For the foregoing reasons, the Defendants request that this Court enter an order compelling the disclosure of the aforementioned facts and data considered by Plaintiffs' expert Ramin (Ron) Najafi, Ph.D. and Charles S. Davis, Ph.D. and extending the deadline for Defendants to disclose expert reports responding to the opinions of Drs. Najafi and Davis to two weeks after the date of complete production.

## CERTIFICATE OF COUNSEL

In accordance with S.D. Fla. L.R. 7.1(a)(3), Counsel for Defendants have conferred with Counsel for Plaintiffs and have been advised that Plaintiffs oppose the relief sought.

Dated: February 22, 2022

/s/Mark Cheffo
Mark Cheffo
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10019
Tel: (212) 689-3500
Fax: (212) 689-3590
mark.cheffo@dechert.com

*Counsel for GlaxoSmithKline LLC*

/s/Anand Agneshwar
Anand Agneshwar
**ARNOLD & PORTER
KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
Fax: (212) 836-8689
anand.agneshwar@arnoldporter.com

*Counsel for Sanofi US Services Inc., Sanofi-Aventis U.S. LLC, and Chattem, Inc.*

/s/*Andrew T. Bayman*
Andrew T. Bayman
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: (404) 572-3583
Fax: (404) 572-5100
abayman@kslaw.com

*Counsel for Defendant Boehringer Ingelheim Pharmaceuticals, Inc.*

/s/*Joseph G. Petrosinelli*
Joseph G. Petrosinelli
**WILLIAMS & CONNOLLY LLP**
725 12th Street, NW
Washington, DC 20005
Tel.: (202) 434-5000
Fax: (202) 434-5029
jpetrosinelli@wc.com

*Counsel for Defendant Pfizer Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system on February 22, 2022, which will send notice of filing to all CM/ECF participants.

/s/ Will W. Sachse