# EXHIBIT E

| | |
|---|---|
| **Subject:** | FW: Zantac - Letter to PSC re Rule 26 Disclosure Deficiencies |

**From:** Steven B. Rotman <srotman@hausfeld.com>
**Sent:** Sunday, February 13, 2022 3:15 PM
**To:** Michael Shortnacy <MShortnacy@KSLAW.com>
**Cc:** Finken, Tracy <tfinken@anapolweiss.com>; jronca@anapolweiss.com
**Subject:** Re: Zantac - Letter to PSC re Rule 26 Disclosure Deficiencies

**CAUTION: MAIL FROM OUTSIDE THE FIRM**

Michael:

This is in response to your request for a written response prior to our Zoom meeting on 2/14.

First, the Najafi and Davis reports comply with Rule 26. We have provided the facts and data that both considered as well as numerous exhibits. However, we do not have a problem with providing additional information, subject to the usual standards that apply to expert discovery (balancing cost and burden, work product, etc.) and subject to mutuality, as explained below.

The additional material that you are requesting falls under the category of expert report back-up and supporting information, supplementary materials, and expert workpapers. These are typically handled as part of expert discovery requests and production in connection with expert witness depositions and should be treated as such in this case.

Regarding the facts or data, and exhibits, which were provided with the reports a few examples (not exhaustive) should be illustrative. Regarding exhibits, there were numerous figures, graphs, charts, and tables in Najafi's report.

1. Par. 121 of Dr. Najafi's report discusses methods of quantifying NDMA content in ranitidine. The LC-MS/MS method for quantification of NDMA that Emery Pharma developed, validated, and utilized is set forth in Appendix B to Dr. Najafi's report.

2. A summary of validation parameters also is provided in Appendix B.  *See* Najafi Rept., par. 122.

3. Page 62 of Dr. Najafi's report addresses refrigeration, and Figure A provides
NDMA levels during refrigeration storage in ranitidine tablets. Figure A is also one of the exhibits that were provided with the report.

4. Par. 131 of Dr. Najafi's report states that the "results of Emery Pharma's baseline testing of the tablets is shown on the Master Baseline Tablet Data Spreadsheet" attached to the report. Par. 131 also sets forth the range of NDMA levels found in the expired and unexpired tablets. The Master Baseline Tablet Data Spreadsheet is also an exhibit.

5. The different variables pertaining to the tablets that Emery Pharma received from defendants for testing came in a variety of different finished dose
containers with varying numbers of tablets, that were either retained, unsold or returned, and that came from a variety of storage locations, and which were stored before being shipped to Emery in either controlled, monitored or ambient conditions. These different variables are reflected on the Master Baseline Tablet testing spreadsheet. See Najafi Rept., par. 132.

6. The specific document production numbers for the documents that set forth the date of manufacture and date of delivery to the warehouse for different batches are set forth in par. 134 of Najafi's report.

7. The drug substance lots tested and the results of the baseline NDMA are set forth on the API Baseline Testing spreadsheet.  See Najafi's Rept., par. 135.

8. The Najafi report also identifies facts or data that were provided by defendants.  For example, the report states that the details of the temperature and humidity conditions for the tablets provided by defendants to Emery for testing were set forth in Defendants' Answers to Interrogatory 14 and Defendants' Sanofi's Supplemental and Amended Answer to Interrogatory 14.  See Najafi Rept., par. 135.  Other examples of facts or data provided by defendants and identified in Dr. Najafi's report are noted above. See, e.g., pars. 5-7, above.

9. Par. 135 of Dr. Najafi's report also provides the baseline average NDMA levels expressed in terms of a 150 mg dose of ranitidine, and paragraph 136 provides the testing results for syrup.

10. Dr. Najafi's report also addresses testing by Emery to assess NDMA content uniformity and sets forth the results of that testing in Table B.  See Najafi Rept. pars. 137-38, and Table B.  Table B is also an exhibit provided with the report.

11. Dr. Najafi's report also addresses testing by Emery Pharma to assess the stability of ranitidine.  See Najafi Rept., par 149. The results of this stability testing were provided in Figures C, D, and E, which are also exhibits provided with the report.

12. The results of the initial simulated gastric fluid (SGF) trials conducted on March 2nd, 2021, evaluating the pH and nitrite concentration effect on NDMA formation from ranitidine are summarized in several graphs included in the Najafi Report. Figures K, L, M, N, O P, and Q provide results for the pH effect on NDMA formation with various specified µM nitrite levels in 150 mg ranitidine tablets.  All of these are exhibits.

13. Emery Pharma also performed a preliminary assessment to evaluate if the presence of potassium thiocyanate facilitates NDMA formation from ranitidine. A description of the experimental method is described in Appendix A.  Par. 232, Fig II sets forth the results. Fig. II is also an exhibit.

14. The Najafi report also conducted SGF studies with food. The protocol for the SGF studies can be found in Appendix A

15. Paragraph 239 of the report addresses purported difference in morphology and identifies the specific samples of drug substance by manufacturer lot number and NDMA level that Emery Pharma examined by SEM.

16. The SEM Protocol for Ranitidine API Crystal Morphology Characterization is provided in Appendix B. Sample identification and corresponding SEM Images are provided in Appendix C.

17. Emery Pharma also conducted a study of simulated climatic zones stability based on International Council for Harmonization (ICH) Q1A(R2)162 guidelines to resemble the temperature and humidity

conditions across the United States. The conditions for these studies are described in the Stability Assessment of Ranitidine toward NDMA formation by LC-MS/MS Protocol provided in Appendix B.

18. Results from simulated stability of ranitidine stored in a car or a bathroom medicine cabinet are summarized at pages 116-118 of Dr. Najafi's report and in Figures JJ, KK, and LL, which are additional examples of exhibits.

19. Par. 257 of Dr. Najafi's report specified the product that was used for evaluating the stability of ranitidine in different climatic zones, and paragraph 258 describes the temperature and relative humidity conditions.

20. Figures MM, NN, OO, and OP provide results of testing under various storage conditions. These are also exhibits.

As stated above, these are just examples of facts and data and exhibits provided in the Najafi report and are not exhaustive.  In addition, the Najafi report contains over 160 footnotes with citations to medical literature and other sources of information.  We also provided along with the reports and Appendices an extensive materials-considered list that is 14 pages long.  See Najafi Rept., Exhibit 3.

The Davis report and the nine (9) Appendices to that report, and the "sun shade shower zones testing" spreadsheet that we provided, provide the facts or data that Dr. Davis considered. (Given the limited time to respond to your email sent Friday afternoon we are not providing the various examples as we did above with respect to Dr. Davis's report.)  Accordingly, we reject any suggestion that we did not comply with the requirements of Rule 26 with respect to providing facts or data considered by the Dr. Najafi and exhibits that summarize or support his opinions.

As stated above, the additional information that you are requesting should be treated as discovery requests.  Your letter dated 2/7/22 lists 17 items that you claim as information you should be provided in connection with the Najafi report.  Our specific responses are below:

1. Numbered references in Dr. Najafi's report.
    a. We do not understand what you are asking for.  Are you asking for print outs of the publicly available information?

2. Full protocol for "real world storage" conditions (i.e., car in sun, car in shade, bathroom, climate zones), including sample preparation, rate of heating, exposure to light and or other ambient conditions, rest period between cycles, maintenance of volume/concentration of sample during testing, volume of reaction flask, etc.
    a. We provided the protocol and are willing to provide additional detail, including at a deposition on in response to interrogatories, if defendants provide the same information for any testing by or on behalf of defendants.   We object to a different standard applying to discovery pertaining to testing by Emery Pharma. All discovery with respect to testing should be mutual.

3. Full protocols for SGF/food analysis, including storage and reaction conditions, results for each sample tested, mass of each food "serving," final reaction volume, level of nitrite/nitrate/NDMA in each food and ranitidine sample and ranitidine sample, and mass of food sample;
    a. The serving size is already in the report on the labels and Table GG. See also "sun shade shower zones testing" spreadsheet which lists all of the test results.

4. Full validation protocols and validation reports for all experimental procedures and analytical methods used; We provided validation Summary tables for each test which is customary in this field.

   a. This will take a significant amount of time, effort, and expense (it is not customary to provide validation protocols and reports as requested, case in point, the GSK RCA did not have any, the publications don't include any).  The summary tables already provided contain substantial and sufficient information. We would consider providing more information if the defendants provide the same for any testing already performed or to be performed.

5. Complete method descriptions for all sample preparation and analytical methods used, including details regarding HPLC injection sequences, frequencies of blank and standard solution injections, and QC check frequencies.
   a. We have provided complete method descriptions. We would consider providing the injection sequences which contain the frequencies of blank and standard solutions, etc., subject to mutuality.

6. Complete raw data files for each sample at each testing point for all analyses, including any analyses performed but not included in Dr. Najafi's report or appendices;
   a. This is a very burdensome request. A file containing complete PDF reports of all analyses would be too large (in the tens of thousands of pages) and would take weeks/months to compile and generate.  Perhaps if this request was significantly narrowed, we would consider this, subject to mutuality.  Notably, the defendants have not produced equivalent data or reports for NDMA testing performed.

7. Signed, countersigned, and dated lab notebooks for all analyses, including any analyses performed but not included in Dr. Najafi's report or appendices.
   a. We will consider providing these, subject to mutuality.

8. Instrument readout and complete report files in .pdf, .png, .jpeg, or other common file format of all HPLC chromatograms, calibration plots, and MS/MS analyte ion intensity measurements for all analyses performed, including any analyses performed but not included in Dr. Najafi's report or appendices;
   a. Same as #6.

9. All reports/catalogs of instrument failures, injection failures, SOP deviations, and sample analyses with results that fell below the limits of detection;
   a. There were no instrument or injection failures. Samples that fell below the limit of detection were provided in the report.

10. Complete results of all calibration and validation experiments, including calibration curves, for all protocols, including any analyses performed but not included in Dr. Najafi's report or appendices;
    a. Same as #6

11. All applicable Standard Operating Procedures or policies governing analyses and testing;
    a. This request is extremely broad, every SOP is to some extent related to testing.

12. All records concerning the calibration and performance qualification of the instruments used in all analyses, including any analyses performed but not included in Dr. Najafi's report or appendices;
    a. Same as #6

13. Chain/conditions of custody documentation by Plaintiffs/Emery for all samples from receipt to testing, including date of receipt, type of storage/exposure (i.e., type of container, sealed container, exposure to ambient conditions including light, temperature, humidity, etc.) even if no analyses were performed on the sample;
    a. We will consider providing this, subject to mutuality.

14. Source, composition, and NDMA levels in SGF, water, and other solvents used in all analyses, including any analyses performed but not included in Dr. Najafi's report or appendices.
    a. We will consider providing this, subject to mutuality.

15. Certificates of Analysis for all solvents, reagents, calibration standards, and other materials used in all analyses, including any analyses performed but not included in Dr. Najafi's report or appendices;
    a. Subject to mutuality, we will consider making a "good faith" effort to compile this, however, it is going to be quite time consuming, and we cannot guarantee that the list will be comprehensive. Such request is highly uncommon for R&D work, all materials were bought from reputable qualified vendors.

16. Any supporting data generated for the selection of conditions and protocols for all analyses, including any analyses performed but not included in Dr. Najafi's report or appendices;
    a. This is vague and burdensome, and subject to attorney work product

17. Any photographs or other images Emery took of any reagents, products, experimental apparatus and/or samples used in any analyses, including any analyses performed but not included in Dr. Najafi's report or appendices.
    a. We will consider providing this, subject to mutuality.

Regarding the six Davis requests in your 2/7/ letter:

1. The entire SAS (or any other statistical software) codes/input used;
    a. Dr. Davis wrote six SAS programs and there are six corresponding SAS outputs.  We would consider providing these, and the statistical programming codes, subject to mutuality.
2. The entire SAS (or any other statistical software) outputs/printouts of the final analyses;
    a. See #1.
3. Any statistical programming code(s) used in any way in connection with his analyses;
    a. See #1
4. The data dictionary, variable lists, or any other glossary of terms, or annotations, necessary to interpret the SAS (or any other statistical software) codes or output/printout generated;
    a. We will consider providing this if they exist, subject to mutuality; however, we understand that he used the spreadsheet column headings, which we already provided.
5. All spreadsheets and data provided to Dr. Davis in native format.
    a. We will consider producing this, subject to mutuality.

The above should expedite our efforts to reach a resolution regarding additional discovery pertaining to testing.

Steve Rotman and Jim Ronca

5

**STEVEN B. ROTMAN**
Of Counsel
srotman@hausfeld.com
+1 617-207-0602 direct

# HAUSFELD

One Marina Park Drive
Suite 14010
Boston, MA 02210
+1 617 207 0600

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

**From:** Michael Shortnacy <MShortnacy@KSLAW.com>
**Date:** Friday, February 11, 2022 at 6:10 PM
**To:** "Finken, Tracy" <tfinken@anapolweiss.com>
**Cc:** "jronca@anapolweiss.com" <jronca@anapolweiss.com>, "Steven B. Rotman" <srotman@hausfeld.com>, "Finken, Tracy" <tfinken@anapolweiss.com>
**Subject:** Re: Zantac - Letter to PSC re Rule 26 Disclosure Deficiencies

Thank you, Tracy.  It will be very helpful for a complete discussion on Monday if your side can send us something in writing in advance as to categories of info you think we have, or that you think don't exist, etc.  we tried to be specific in our letter.  Please get us something in advance as I think it will assist our discussion.  Enjoy the weekend.  Michael

**From:** Finken, Tracy <tfinken@anapolweiss.com>
**Sent:** Friday, February 11, 2022 2:46 PM
**To:** Michael Shortnacy
**Cc:** Ronca, James R.; Steve Rotman; Finken, Tracy
**Subject:** RE: Zantac - Letter to PSC re Rule 26 Disclosure Deficiencies

**CAUTION: MAIL FROM OUTSIDE THE FIRM**

Michael,

The information in the attached document was provided to defense counsel on 1/24/22 as part of the Najafi report and attachments.   It was also provided to Mr. Davis in the form that is attached here. We look forward to our meeting on Monday at 1 pm to address your letter dated 2/7/22.

Have a good weekend!

Tracy A. Finken, Esquire

**ANAPOLWEISS**

**One Logan Square
130 N. 18th Street
Suite 1600
Philadelphia, PA 19103
(215) 735-1130**
(215) 735-0773 (Direct Dial)
tfinken@anapolweiss.com

---

**From:** Michael Shortnacy <MShortnacy@KSLAW.com>
**Sent:** Thursday, February 10, 2022 8:36 PM
**To:** Finken, Tracy <tfinken@anapolweiss.com>
**Cc:** Mike McGlamry <mmcglamry@pmkm.com>; Adam Pulaski <adam@pulaskilawfirm.com>; gilbert@kolawyers.com; DODGE, JAIME LYNNE <jdodge@emory.edu>; Andy Bayman <ABayman@KSLAW.com>; jpetrosinelli@wc.com; Mark.Cheffo@dechert.com; anand.agneshwar@arnoldporter.com; Robert Friedman <RFriedman@KSLAW.com>; ehorn@wc.com; will.sachse@dechert.com; Sharpe, Paige H. <Paige.Sharpe@arnoldporter.com>
**Subject:** Re: Zantac - Letter to PSC re Rule 26 Disclosure Deficiencies

Tracy- could you please include Eva, me, Luke, Tom Sheehan, and Kimberley Penner for the 1 pm.  Thank you,  Michael

---

**From:** Finken, Tracy <tfinken@anapolweiss.com>
**Sent:** Thursday, February 10, 2022 5:19:30 PM
**To:** Michael Shortnacy <MShortnacy@KSLAW.com>
**Cc:** Mike McGlamry <mmcglamry@pmkm.com>; Adam Pulaski <adam@pulaskilawfirm.com>; gilbert@kolawyers.com <gilbert@kolawyers.com>; DODGE, JAIME LYNNE <jdodge@emory.edu>; Andy Bayman <ABayman@KSLAW.com>; jpetrosinelli@wc.com <jpetrosinelli@wc.com>; Mark.Cheffo@dechert.com <Mark.Cheffo@dechert.com>; anand.agneshwar@arnoldporter.com <anand.agneshwar@arnoldporter.com>; Robert Friedman <RFriedman@KSLAW.com>; ehorn@wc.com <ehorn@wc.com>; will.sachse@dechert.com <will.sachse@dechert.com>; Sharpe, Paige H. <Paige.Sharpe@arnoldporter.com>
**Subject:** Re: Zantac - Letter to PSC re Rule 26 Disclosure Deficiencies

**CAUTION: MAIL FROM OUTSIDE THE FIRM**

No one ever confirmed the 1 pm for tomorrow. I said that on the call yesterday.  I will see if they are still available.  Who should be on the call from your side?

Tracy Finken, Esq.
Shareholder
Anapol Weiss
Sent from my iPhone

> On Feb 10, 2022, at 6:34 PM, Michael Shortnacy <MShortnacy@kslaw.com> wrote:
>
> Tracy,
>
> I think there was some confusion as we ended our Emery M&C yesterday about which call would go first tomorrow, and which time was which.  But regardless, we believe the following should be the order of business tomorrow:

1. 12 Noon ET – follow up on Emery motion to compel deposition testimony and the compromise proposal on the table; and

2. 1 ET – M&C on Defendants' letter regarding expert materials Plaintiffs failed to provide as required under Rule 26.

We understood from you yesterday that these calls needed to be separate because different members of your team needed to be included for item No. 2. We are not sure who they are but would expect they will be prepared during the call to address the specific categories of material and data identified in our letter from Monday. Days are melting off the clock, as you know, and we have been asking for testing and data for months in the lead up the reports and are surprised this very basic information from the reports has not already been produced to us.

I am happy to set invites for these calls, but appreciate that Zoom is always better for everyone. Please let me know if you cannot send them – and I will send placeholders.

Look forward to speaking with you tomorrow.

Michael

---

**From:** Finken, Tracy <tfinken@anapolweiss.com>
**Sent:** Thursday, February 10, 2022 2:30 PM
**To:** Michael Shortnacy <MShortnacy@KSLAW.com>; Mike McGlamry <mmcglamry@pmkm.com>; Adam Pulaski <adam@pulaskilawfirm.com>; gilbert@kolawyers.com
**Cc:** DODGE, JAIME LYNNE <jdodge@emory.edu>; Andy Bayman <ABayman@KSLAW.com>; jpetrosinelli@wc.com; Mark.Cheffo@dechert.com; anand.agneshwar@arnoldporter.com; Robert Friedman <RFriedman@KSLAW.com>; ehorn@wc.com; will.sachse@dechert.com; Sharpe, Paige H. <Paige.Sharpe@arnoldporter.com>
**Subject:** Re: Zantac - Letter to PSC re Rule 26 Disclosure Deficiencies

**CAUTION: MAIL FROM OUTSIDE THE FIRM**

Michael,

I am assuming since we have not received a response that we are not meeting and conferring tomorrow regarding your letter from Monday. I can see what our availability is like early next week if you are interested. Let me know. Have a good evening.

Tracy Finken, Esq.
Shareholder
Anapol Weiss
Sent from my iPhone

> On Feb 8, 2022, at 3:50 PM, Finken, Tracy <tfinken@anapolweiss.com> wrote:
>
> Michael, et al.
>
> I am writing in response to your letter regarding Plaintiffs' Rule 26 disclosures that you sent last evening. While we disagree with your assertions that our disclosures were not in compliance with Rule 26, we are happy to meet and confer regarding the information you are requesting. We have availability on Friday afternoon between 1 and 4

EST.  Please let us know what time works for you and who will attend so we can send a zoom invite.

Thanks,
Tracy

Tracy A. Finken, Esquire

**ANAPOL**WEISS

**One Logan Square**
**130 N. 18th Street**
**Suite 1600**
**Philadelphia, PA 19103**
**(215) 735-1130**
(215) 735-0773 (Direct Dial)
tfinken@anapolweiss.com

---

**From:** Michael Shortnacy <MShortnacy@KSLAW.com>
**Sent:** Monday, February 7, 2022 6:54 PM
**To:** Mike McGlamry <mmcglamry@pmkm.com>; Finken, Tracy <tfinken@anapolweiss.com>; Adam Pulaski <adam@pulaskilawfirm.com>; gilbert@kolawyers.com
**Cc:** DODGE, JAIME LYNNE <jdodge@emory.edu>; Andy Bayman <ABayman@KSLAW.com>; jpetrosinelli@wc.com; mark.cheffo@dechert.com; anand.agneshwar@arnoldporter.com; Robert Friedman <RFriedman@KSLAW.com>; ehorn@wc.com; will.sachse@dechert.com; Sharpe, Paige H. <Paige.Sharpe@arnoldporter.com>
**Subject:** Zantac - Letter to PSC re Rule 26 Disclosure Deficiencies
**Importance:** High

Counsel,

Please see the attached correspondence sent on behalf of the Brand Defendants.

This is a time sensitive letter, and we appreciate your prompt response.

Sincerely,

Michael

---

**Michael B. Shortnacy**
*Partner*

T: +1 213 443 4344  |  E: mshortnacy@kslaw.com  |  www.kslaw.com

**BIO**  |  **vCARD**

King & Spalding LLP
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071

KING & SPALDING

9

King & Spalding Confidentiality Notice:

This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message. Click here to view our Privacy Notice.