# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 2924<br><br>Civil Action No. 9:20-md-2924<br><br>JUDGE ROBIN L. ROSENBERG<br>MAGISTRATE JUDGE BRUCE E. REINHART |

**THIS DOCUMENT RELATES TO:**

*IN RE RULE 45 SUBPOENAS ISSUED TO DR. RON NAJAFI AND EMERY PHARMA*
Case No. 3:21-mc-80304 (N.D. Cal.)  .

**NON-PARTIES DR. RON NAJAFI AND EMERY PHARMA'S
MOTION FOR FEES AND COSTS REGARDING DEFENDANTS' MULTIPLE
SUBPOENAS**

Non-parties Ron Najafi and Emery Pharma (collectively "Emery" or "Emery Deponents") by and through its undersigned counsel, respectfully submits this Motion for Fees and Costs pursuant to Rules 26(c)(1)(B), 37(a)(5)(B), and 45(d) of the Federal Rules of Civil Procedure. This Motion and incorporated Memorandum in Support thereof is also filed in connection with this Court's Order granting Ron Najafi's Motion to Quash and for Protective Order and taking Emery Pharma's request for reimbursement of their fees and costs, "under advisement" (Case 9:22-mc-80208-RLR ECF No: 36), dated February 15, 2022 ("Order").

## I. INTRODUCTION

Emery moves for an order for the payment of the fees and costs that it incurred in response to Defendants' deposition and document subpoenas served by Eva Canaan, counsel for defendant Boehringer Ingelheim Pharmaceuticals, Inc. ("BIP") in the MDL action. Given BIP's overly broad and unduly burdensome subpoenas which were meant not to obtain discoverable information but rather to harass Dr. Najafi and his company for daring to speak out against Defendants regarding the dangers of their product. Though the Court explicitly quashed the subpoena to Dr. Najafi, the Order specifically limited the scope of BIP's subpoena and explicitly noted that it would take Emery's request for reimbursement under advisement. Given the fact that Defendants' litigation tactics failed "to take reasonable steps to avoid imposing undue burden or expense" on Emery as required by Fed. R. Civ. P. 45(d)(1), Emery had to expend considerable resources both on litigation costs, attorneys' fees, and loss to its business. Accordingly, Emery renews its prior request for costs and fees.

## II. FACTS

### A. Total Costs Incurred to Date

The Court is familiar with the factual background involving the Defendants' four subpoenas to the Emery non-parties. Though Defendants disingenuously asserted that their subpoenas were "not burdensome" or impose an economic burden, the individual costs to Dr. Najafi in responding to Defendants' four subpoenas have been considerable. To date, Defendants' subpoenas have cost Dr. Najafi over $100,000 including out-of-pocket costs, attorney fees, and the

1

loss of productivity of his staff and hindrance on his business. Sedghani Decl. ¶ 11. The latest two Deposition subpoenas to Emery and Dr. Najafi specifically cost in excess of $55,000 of which $35,000 was attributed to legal fees to resolve multiple rounds of motion practice, meet and confers, and preparing and defending a 30(b)6 witness on Defendants broad topics. Sedghani Decl. ¶8. The preparation and cost to Emery and Dr. Najafi in preparing for the deposition included over 60 hours of employee time including the time of the witness, time consulting with senior scientists and other employees in the preparation of the deposition. *Id.* at ¶ 9. Even at a very conservative rate of $350 per hour, the internal cost to Emery was in excess of $21,000 not including any staff time previously spent on document searches and production of the prior two document production subpoenas. *Id.* As noted in the table below, the fees and costs sought include the following.

| Category of Cost | Internal Costs | Attorney's Fees | Total Cost |
| --- | --- | --- | --- |
| Defendants' First two document request subpoenas requiring Emery Pharma to search for and produce a broad selection of document | $10,000 | $35,000 | $45,000 |
| Motion Practice and Hearing related to Motion to Quash and Motion to Compel | N/A | $20,000 | $20,000 |
| Cost of preparing a 30(b)6 witness to be deposed on the broad deposition topics to Emery Pharma | $21,000 | $15,000 | $ 36,000 |
| **TOTALS for all Subpoenas** | **$ 31,000** | **$ 70,000** | **$101,000** |

### B. Specific Request for Reimbursement

First, Emery seeks an award of all outside legal expenses, and Emery's internal costs for its personnel's time, incurred in responding to Defendants' four subpoenas to Emery and Dr. Najafi. This award is to include the fees and costs incurred by Emery for its multiple search and production of documents and also for its subsequent negotiations with the Defendants regarding the same. As such the total expenses to Emery and Dr. Najafi resulting from Defendants' four subpoenas is in excess of $100,000. Sedghani Decl. ¶ 11.

Second, as an alternative, if the Court is not willing to grant the foregoing award in its entirety, Emery seeks the award of all the foregoing costs and expenses resulting from Defendants' subsequent two depositions and request for document subpoenas which were the subject of Emery's motion to quash and Defendants' motion to compel. The Order to Quash granted Dr. Najafi's request and quashed the subpoena and further limited the scope of Defendants' broad topics to non-retained experiments by Emery. As a result, Emery and Dr. Najafi have spent a considerable about of resources to comply with the request. The total cost attributable to the two deposition subpoenas and motion practice is conservatively around $56,000.

And third, if the Court is not willing to grant either the first or second option, Emery seeks, at a minimum, an award of half of the expense incurred as a result of Defendants' four separate subpoenas, split equally amongst them. The total cost to Defendants would be $50,000 split amongst them. Though the cost to Defendant would be negligible in proportion to the case (as noted by the Court during the hearing), the cost to Dr. Najafi is substantial and exceedingly burdensome. Prior to brining the instant motion, Defendants rejected an offer to compromise the fee dispute requesting $40,000. Defendants failed to offer any good faith compromise and countered Emery's demand with zero dollars.

### III.   LEGAL AUTHORITY TO AWARD FEES AND COSTS

Under Rule 45(d)(2)(B), "when a non-party is going to incur significant expense from compliance with the subpoena and that non-party has timely objected on those grounds, the Court's order ***must*** protect the non-party from significant expense resulting from compliance." *Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co.*, No. 12-CIV-81397, 2016 WL 1658765, at *4 (S.D. Fla. Apr. 26, 2016) (emphasis added); *see also In re Law Firms of McCourts & McGrigor Donald*, No. M. 19-96 (JSM), 2001 WL 345233, at *1 (S.D.N.Y. Apr. 9, 2001) ("The discretion which the district court had to alleviate non-party costs under the old Rule [45] became mandatory under the 1991 amendments."). Civil procedure rules "were not intended to burden a non-party with a duty to suffer excessive or unusual expenses in order to comply with a subpoena duces tecum. The

3

inconvenience and burden to a non-party under the current construction of Rule 45(b)(2) violate the spirit of Rule 26(c)." *Cantaline v. Raymark Indus., Inc.*, 103 F.R.D. 447, 452 (S.D. Fla. 1984).

In the Southern District of Florida, courts "have used a balancing approach to examine the equities in each particular case in order to determine how much cost to shift from the non-party to the requesting party, including whether the non-party actually has an interest in the outcome of the case, whether the non-party can more readily bear its cost than the requesting party, and whether the litigation is of public importance." *In re Hornbeam Corp.*, No. 14-CV-24887, 2019 WL 5106768 (S.D. Fla. Sept. 27, 2019) (emphasis added; citations omitted). But even if third-party subpoena recipients are "not 'classic disinterested parties,' that would not deprive the Court of the discretion to apportion some of the costs to the propounding party." *Id*. and cases cited therein (emphasis added). Here, given the broad resources of Defendants who comprise several multi-billion-dollar pharmaceutical companies whose revenues dwarf that of non-parties Dr. Najafi and Emery Pharma, it would be unjust to force him to bear the cost of almost $90,000 when he has absolutely no stake in the outcome of the case. The relative financial positions of the issuer of the subpoena and the respondent are also relevant. *See, e.g., In re Seroquel Products Liability Litigation*, No. 606MD1769ORL22DAB, 2007 WL 4287676 (M.D. Fla. Dec. 6, 2007). Third-party subpoena recipients are also entitled to reimbursement of compliance costs already incurred prior to a court ordering the requesting party to pay some or all of the responding party's costs. *See In re Gladstone Consulting, Inc.*, No. 17-80845-CIV, 2018 WL 7820218, at *3 (S.D. Fla. Sept. 21, 2018) (Fed. R. Civ. P. 45(d)(2)(B)(ii) "draws no distinction between compliance costs incurred before the court's order and those incurred after.").

### IV. ARGUMENT

#### A. Emery And Dr. Najafi Are Entitled to Their Fees

Defendants have relentlessly pursued several non-parties in this case who first shed light on Defendants' dangerous products including Emery and Valisure. Prior to Defendants' most recent Deposition and Document subpoenas, Sanofi and BPI have previously served two other expansive document requests which were disproportionate requests given the issues of the case and the FDA

4

conclusions about Defendants' products. Sedghani Decl. ¶¶ 2-6. After several rounds of negotiation and in an effort to avoid incurring needless attorney's fees, Emery acquiesced to the Defendants' demands and produced all responsive documents in its possession. *Id.* In fact, even though several categories of requests had no bearing on any issue in the case, Emery did not fight the subpoena and instead produced all of its documents in order to avoid further entanglements with Defense counsel. However once, the Plaintiffs revealed that Dr. Najafi would be testifying as a causation expert, Defendants doubled down on their harassment of Emery and its CEO by issuing two more subpoenas for depositions and documents. Despite Emery's prior assurances that all responsive documents had been produced, Defendants convinced the Court to allow a further deposition of a corporate representative. During the deposition, it was abundantly clear, that Defendants' sole purpose for the deposition was not to obtain any facts but rather a mission to denigrate the prior work of Emery and its CEO. Emery sought to informally resolve the fee issues informally, but the negotiations were fruitless as Defendants maintained that they would not offer a single dollar to compensate Emery's costs. They noted that they would oppose any motion by Emery and despite clear statutory authority otherwise, they maintained that Emery deponents were not entitled to any of their fees. Sedghani Decl. ¶ 13.

Emery has worked at great expense and time to produce more than 2500 pages of documents, emails, lab notebooks and massive amounts of raw data only to have Defendants harass Emery with additional pointless discovery requests. As a non-party, Emery is entitled to an award of its fees and costs in responding to the Brand Defendants' overburdensome, disproportionate, and ultimately quashed or narrowed subpoena. See Fed. R. Civ. P 37(a)(5)(b), 45(d)(2)(B).

The Emery Deponents promptly notified BIP of their intent to Quash the overbroad and invalid subpoenas and promptly moved pursuant to FRCP 45 to Quash the subpoenas on December 20, 2021 (almost two weeks prior to the deadline to comply and more than four weeks prior to the close of fact discovery). *See In re Rule 45 Subpoenas Issued to Dr. Ron Najafi and Emery Pharma,* NDCA, Case No. 21-mc-80304, ECF No. 1 ("California Proceeding"). Thereafter, BIP multiplied the California Proceedings and engaged in procedural gymnastics to avoid having the California

5

court from issuing a ruling on Emery's Motion to Quash, including 1) Opposing Emery's motion for expedited briefing in the California proceeding 2) filing a Notice of Potential Tag-Along Action to join the Motion To Quash with the greater MDL litigation 3) Requesting that the California Court sua sponte transfer the action to the MDL 4) filing a Motion to Transfer pursuant to FRCP 45(f) and additionally 3) filing the instant expedited Motion to Compel with the MDL where Emery is not a party while all of the other motions are still pending resolution.

It is beyond dispute that Emery's Motion to Quash was properly and timely filed before the Northern District of California and did not need to be filed in the MDL. Irrespective of whether Defendants believed this Court also had concurrent jurisdiction to resolve the dispute, BIP's vexatious conduct subsequent to Emery's Motion exemplifies the type of activity that courts have found to be sanctionable and motivated by an improper purpose. Rule 45(c)(1) places a direct obligation on an attorney to take "reasonable steps to avoid imposing undue burden or expense" on the subpoenaed party. *See, e.g., Mattel, Inc. v. Walking Mountain Products*, 353 F.3d 792, 813-814 (Fed. Cir. 2003) (affirming award of fees for a subpoena that was "overly burdensome and served for an improper purpose").

Even though Emery had hoped for a quick resolution and had even sought expedited briefing of its Motion to Quash given the impending deadlines for expert disclosures, BIP outrageously opposed Emery's request for expedited briefing and thereafter filed its own expedited Motion before in the MDL, thereby needlessly multiplying the proceedings. Defendants'[1] motion practice was in part based on their desire to inundate the Emery Deponents and substantially

---

[1] Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. 28 U.S.C. § 1927. Counsel for BIP has repeatedly failed to carry out his good faith duty in this case, instead repeating his misleading allegations in both his opposition to Emery's Motion To Quash and in Defendants' Motion to Compel before the MDL. "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Riddle & Associates, P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005).

increase their cost of defense as has been Defendants' *modus operandi* with other non-parties in the MDL including Valisure. Defendants were sitting on Emery's production for years and only filed a Motion to Compel on the eve of the close of fact discovery. Defendants' unreasonable demand at multiple depositions of Plaintiffs' expert notwithstanding, the manner and timing of Defendants actions run afoul of Rule 45.

Furthermore, contrary to the Defendants' claims, neither of the Emery Deponents has any direct financial interest in this case. The test for analyzing a motion for fees and costs is whether the entity has "an interest in the outcome of the case, whether the non-party can more readily bear its cost than the requesting party, and whether the litigation is of public importance." *In re Hornbeam Corp.*, No. 14-CV-24887, 2019 WL 5106768 (S.D. Fla. Sept. 27, 2019). Here, Emery and Dr. Najafi are not parties, nor was either retained by either party with regard to the citizen's petition and R&D testing they independently performed on Zantac. Neither stands to share in any judgment for any plaintiff in this case. In fact, the cost of all pre-engagement testing was borne solely by Dr. Najafi without contribution from any other third party in order to bring to public attention a great matter of public health. If the Court were to set a precedent that good Samaritans like Dr. Najafi should be penalized for his contributions, it would have a chilling effect on other scientists who would be silenced for fear of incurring tens of thousands of dollars in litigation costs if they speak out against the pharmaceutical companies.

The question is not whether Dr. Najafi has adequate resources to respond to this particular third-party discovery without bankrupting himself or his company, but rather all future subpoenas from other would-be Defendants in the future. As part of their scope of work and business Emery routinely performs testing of drug substances for a variety of companies that may later become involved in litigation. It would be devastating to him to have to suffer the burden of discovery for each tangential case that he is a non-party simply because of his non-retained testing. If the Court were to side with the Defendants, Dr. Najafi and Emery would have to shut down their doors as the subject matter of their work is often cutting edge and proprietary testing that any future litigant would be free to misappropriate without any compensation. Accordingly, the question before the

7

Court is to determine who is in a better position to absorb such costs. *See e.g., Sun Cap. Partners, Inc.*, 2016 WL1658765, at *7. Here, that factor weighs decisively in favor of awarding Dr. Najafi and Emery their fees and costs.

### B. Dr. Najafi Is Entitled to the Costs incurred for Quashing Defendants' Subpoena

Neither Dr. Najafi nor Emery Pharma is a party to the MDL and neither party has any stake in the outcome of the case. Dr. Najafi is not a party to the MDL and is neither a manufacturer, seller nor distributor of Zantac. The Emery Deponents previously sought fees and costs in its opposition to the Defendants' motion to Compel and its Motion to Quash filed before the Northern District of California. Per this Court's Order, and instructions during the hearing on the same, Dr. Najafi ask the court to issue a ruling on his previous fee requests.

BIP's conduct exemplifies the type of activity that courts have found to be sanctionable and motivated by an improper purpose. Rule 45(d)(1) places a direct obligation on an attorney to take "reasonable steps to avoid imposing undue burden or expense" on the subpoenaed party. *See e.g., Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003) (affirming award of fees for a subpoena that was "overly burdensome and served for an improper purpose"). Under 45(d) 1, "the court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which ***may include lost earnings and reasonable attorney's fees***—on a party or attorney who fails to comply. Per the advisory committee notes on the Federal Rules of Civil Procedure, "Paragraph (c)(1) gives specific application to the principle stated in Rule 26(g) and specifies liability for earnings lost by a non-party witness as a result of misuse of the subpoena. Abuse of a subpoena is an actionable tort, and the duty of the attorney to the non-party is also embodied in Model Rule of Professional Conduct 4.4. The liability of the attorney is correlative to the expanded power of the attorney to issue subpoenas. The liability may include the cost of fees to collect attorneys' fees owed as a result of a breach of this duty." Notes of Advisory Committee on Rules—1991 Amendment.

Here, BIP served broad discovery topics and multiple depositions from non-party Emery Pharma and Dr. Najafi days before the expert disclosure reports were due. BIP's subpoenas were for the purpose of harassing Emery Pharma and its CEO from properly preparing for their expert reports and imposing needless attorney's fees incurred in defeating the various motions related to the subpoenas. As such, the Emery Pharma Deponents respectfully request that this Court require Defendants and their counsel pursuant to Fed. R. Civ. P. R. 45(d)(1) to reimburse the movant for the cost of quashing BIP's subpoenas.

In *Walking Mountain*, Mattel had issued 30(b)6 subpoenas to non-party SFMOMA, demanding that the SFMOMA produce a witness or witnesses to testify at a deposition on various topics that had no relation to the litigation or to Dr. Nickel (an expert retained in the case who was employed by SFMOMA). *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813–14 (9th Cir. 2003). The court quashed the subpoenas and held that the topics were "very broad"—indeed, "way too broad for the explanation given by [Mattel's counsel]"—and "abusively drawn." *Id*. The court found that "[n]o attempt had been made to try to tailor the information request to the immediate needs of the case." *Id*. The overbreadth of the SFMOMA Subpoena and the fact that the museums' only relation to this litigation was as employers of Forsythe's witnesses led the court to conclude that the two subpoenas were served for the purpose of getting the museums to exert pressure on the witnesses not to testify. *Id.* The district court ultimately found that the subpoena was "served for the purpose of annoying and harassment and not really for the purpose of getting information." *Id.* Similarly, the overly broad deposition topics to Emery Pharma are served for the purpose of imposing a burden on any testing lab that dares speak out against defendant pharmaceutical companies or tries to warn the FDA of the potential dangers of certain pharmaceutical products.

Though BIP opposed Emery Pharma's request for expedited briefing in the California Proceeding, it, in turn, filed its own expedited Motion to Compel before this MDL court, thereby instigating a series of briefings related to the jurisdiction and duplicative briefing of the earlier California proceeding. BIP's forum shopping and excessive motion practice are in part based on

9

its desire to inundate Plaintiffs' experts and substantially increase their personal cost of defense until they relent.

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. 28 U.S.C. § 1927. Counsel for BIP has repeatedly failed to carry out their good faith duty in this case, instead of repeating misleading allegations in both his opposition to Emery's Motion to Quash and in Defendants' Motion to Compel before the MDL. "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Riddle & Associates, P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005).

The Court granted Dr. Najafi Motion to Quash and therefore denied Brand Defendants' Cross-Motions to Compel. In addition to the authority provided in Rule 45, the Court should award Dr. Najafi its costs under Fed. R. Civ. P. 37 which states that the Court

> must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(B) (emphasis added).

The Defendants' vexatious litigation conduct was designed to force Dr. Najafi to spend his limited resources on repeated subpoenas and motion practice, despite being a non-party. These resources are not limited to Emery's outside counsel fees but include considerable time spent by Emery employees and senior scientists in order to comply with the preparation of a witness for the 30(b)6 deposition.

### C. Emery is entitled to Costs and Fees for Narrowing the Broad Subpoena and Preparing a 30(b)6 Witness

Though Emery believed that a 30(b)6 deposition of a corporate witness was wholly unnecessary given the issues in dispute and the disproportionate costs that would be incurred by

10

Dr. Najafi as a result, Defendants claimed that they "needed" the testimony and the Court took Emery's request for fees under advisement. As part of this case, Emery has already spent many employee hours searching, reviewing, and producing documents for the Defendants. They similarly spent many employee hours preparing a witness on each of those documents and pre-engagement testing. This preparation involved several senior scientists at Emery to educate the witness on the various topics. This additionally included time spent with outside counsel to prepare the witness on the topics noticed. After repeatedly claiming that the Emery Deposition was crucial to their case, it was readily apparent that Defendants' sole purpose for the deposition was to try to discredit Emery as Defendants were neither interested in nor prepared to ask any questions related to the actual lab notebooks containing the experiment protocols. It was very clear that Defendants had not even attempted a cursory review of the documents produced and instead focused their efforts on their make-believe conspiracy theories about Emery's connection with other third parties and or with the Plaintiff's counsel. Defendants' entire misconception about the R&D nature of the pre-engagement testing and their confusion about the wholly inapplicable GCMP protocols necessary for drug approval was abundantly clear during the deposition. Despite being repeatedly told that Emery's citizen petition testing was an R&D internal project, Defendants insisted on wholly inapplicable GCMP protocols. Defendants' misconception about the category of testing resulted in their false narrative that certain records were not produced, or that the results were not scientifically reliable as a result. Instead, it was clear that the Defendants had no clue as to the appropriate type of records that would be kept for an internal R&D project that was not prepared for litigation nor for an FDA drug approval. As a result of Defendants' ignorance, Emery had to absorb another $36,000 in preparing a witness for the Defendants' wild goose chase. Per Fed. R. Civ. P. 45 and 37, Defendant must compensate Emery for the losses incurred. Defendants forced Emery to retask several senior scientists from their normal duties in order to prepare a corporate witness. The Employees routinely charge between $400-700 an hour for similar work for paying clients. Sedghani Decl. ¶ 10. As such Defendants improperly utilized the subpoena mechanism of the court to avoid having to incur these costs with their own experts.

### D. Defendants' Refusal to Compromise Necessitated the Filing Of The Instant Motion

In an effort to resolve this dispute amicably and forgo having to file the instant motion, Emery's counsel reached out to Defendants in order to discuss a compromise. Sedghani Decl. ¶ 13 As a gesture of good faith and in order to avoid taking up the Court's time, Emery offered to cover half of the cost burden, including the costs incurred in the several document productions, if Defendants collectively covered the other half. Sedghani Decl. ¶ 13. The defendants' representative categorically rejected Emery's offer to take $40,000 out of the total $86,000 it had cost them. *Id.* Defendants' counterproposal was $0 dollars claiming that Emery was not entitled to anything despite the Federal Rules' declaration otherwise. *Id.* As such Defendants' obstinate position has forced Emery to seek judicial intervention in order to recover its costs and fees.

### E. Request For Hearing

The non-parties believe that an oral hearing would be helpful to further articulate to the Court why Emery's motion should be granted. Counsel contends that a 30-minute hearing would sufficiently allow for oral argument.

## V. CONCLUSION

For the reasons set forth above, Emery Pharma and Dr. Najafi respectfully request that it be awarded its costs and external legal fees incurred as a result of Defendant's burdensome and wholly unnecessary subpoenas through and including the costs of filing this motion.

Respectfully submitted,

**SYNERGIST LAW, P.C**.

Dated: April 1, 2022     By:     /s/ *Sami Sedghani*

Sami Sedghani
1299 Fourth Street Suite 301
San Rafael, CA, 94901
Telephone:   (415) 326-3708
sami@synergistlaw.com

***Attorney for Dr. Najafi and Emery Pharma***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Motion was filed electronically through the Court's CM/ECF system, which will send notice of filing to all CM/ECF participants on April 1, 2022:

                                                By:     /s/ *Sami Sedghani*
                                                      Sami Sedghani